**PlnDue, DsclsDue, COMPLX, LEAD, COMPLX, APPEAL, APPEAL_NAT**

# U.S. Bankruptcy Court
## Southern District of Texas (Houston)
### Bankruptcy Petition #: 21-32351
#### Internal Use Only

|  |  |
|---|---|
| *Date filed:* | 07/12/2021 |
| *341 meeting:* | 09/13/2021 |
| *Deadline for filing claims (govt.):* | 01/10/2022 |

*Assigned to:* Bankruptcy Judge David R Jones
Chapter 11
Voluntary
Asset

---

**Debtor**
**Limetree Bay Services, LLC**
11100 Brittmoore Park Drive
Houston, TX 77041
HARRIS-TX
Tax ID / EIN: 84-3141866

represented by **Elizabeth A Green**
Baker & Hostetler LLP
200 S. Orange Ave.
SunTrust Center, Suite 2300
Orlando, FL 32801
407-649-4000
Fax : 407-841-0168
Email: egreen@bakerlaw.com

**Jimmy D. Parrish**
Baker & Hostetler LLP
200 S Orange Ave
Ste 2300
Orlando, FL 32801
407-649-4000
Email: jparrish@bakerlaw.com

**Jorian L. Rose**
Baker Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
212-589-4681
Fax : 212-589-4201
Email: jrose@bakerlaw.com

**Debtor**
**Limetree Bay Refining Holdings, LLC**
1 Estate Hope
Christiansted, VI 00820
ST. CROIX-VI
Tax ID / EIN: 66-0901776

represented by **Elizabeth A Green**
(See above for address)

**Debtor**

represented by **Marty L Brimmage**

**Limetree Bay Refining Holdings II, LLC**
1 Estate Hope
Christiansted, VI 00820
ST. CROIX-VI
Tax ID / EIN: 66-0901815

Akin Gump Strauss Hauer & Feld
LLP
2300 N. Field Street
Suite 1800
Dallas, TX 75201
214-969-2885
Fax : 214-969-4343
Email: mbrimmage@akingump.com

**Elizabeth A Green**
(See above for address)

*Debtor*
**Limetree Bay Refining, LLC**
1 Estate Hope
Christiansted, VI 00820
ST. CROIX-VI
Tax ID / EIN: 66-0898671

represented by **Elizabeth A Green**
(See above for address)

*Debtor*
**Limetree Bay Refining Operating, LLC**
1 Estate Hope
Christiansted, VI 00820
ST. CROIX-VI
Tax ID / EIN: 66-0899067

represented by **Elizabeth A Green**
(See above for address)

*Debtor*
**Limetree Bay Refining Marketing, LLC**
1 Estate Hope
Christiansted, VI 00820
ST. CROIX-VI
Tax ID / EIN: 66-0899222

represented by **Elizabeth A Green**
(See above for address)

*U.S. Trustee*
**US Trustee**
Office of the US Trustee
515 Rusk Ave
Ste 3516
Houston, TX 77002
(713) 718-4650

represented by **Hector Duran, Jr**
U.S. Trustee
515 Rusk
Ste 3516
Houston, Tx 77002
7137184650
Email: Hector.Duran.Jr@usdoj.gov

**Jana Smith Whitworth**
Office of United States Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
(713) 718-4650
Fax : (713) 718-4670
Email: jana.whitworth@usdoj.gov

*Creditor Committee*
**Official Committee of Unsecured Creditors**

represented by **Steven William Golden**
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue
34th Floor
New York, NY 10017
212-561-7700
Email: sgolden@pszjlaw.com

**Michael D Warner**
Pachulski Stang Ziehl & Jones LLP
440 Louisiana Street
Suite 900
Houston, TX 77002
713-691-9385
Email: mwarner@pszjlaw.com

| Filing Date | # | Docket Text |
|---|---|---|
| 07/12/2021 | 🔵 1 (20 pgs) | Chapter 11 Voluntary Petition Non-Individual Fee Amount $1738 Filed by Limetree Bay Services, LLC. (Green, Elizabeth) (Entered: 07/12/2021) |
| 07/12/2021 | | Receipt of Voluntary Petition (Chapter 11)(21-32351) [misc,volp11] (1738.00) Filing Fee. Receipt number 23142100. Fee amount $1738.00. (U.S. Treasury) (Entered: 07/12/2021) |
| 07/12/2021 | 🔵 2 (3 pgs; 2 docs) | Notice of Designation as Complex Chapter 11 Bankruptcy Case (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Proposed Order) (Green, Elizabeth) (Entered: 07/12/2021) |
| 07/12/2021 | 🔵 3 (2 pgs) | Notice of Appearance and Request for Notice Filed by Steven Ordaz Filed by on behalf of BMC Group, Inc. (Ordaz, Steven) (Entered: 07/12/2021) |
| 07/12/2021 | 🔵 4 (12 pgs; 2 docs) | Motion for Joint Administration, Emergency Motion Filed by Debtor Limetree Bay Services, LLC Hearing scheduled for 7/13/2021 at 03:00 PM at telephone and video conference. (Attachments: # 1 Exhibit A - Proposed Order) (Green, Elizabeth) (Entered: 07/12/2021) |
| 07/12/2021 | 🔵 5 (1 pg) | Motion to Appear pro hac vice *Jorian L. Rose*. Filed by Debtor Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 07/12/2021) |
| | 🔵 6 (1 pg) | Motion to Appear pro hac vice *Michael T. Delaney*. Filed by Debtor Limetree Bay Services, LLC (Green, Elizabeth) |

| 07/12/2021 | | (Entered: 07/12/2021) |
|---|---|---|
| 07/12/2021 | 7 (48 pgs) | Complex Case Creditor Matrix (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 07/12/2021) |
| 07/12/2021 | 8 (46 pgs; 3 docs) | Declaration re: *Declaration of Mark Shapiro in Support of Chapter 11 Petitions and First Day Motions* (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit A - Corporate Organization Chart # 2 Exhibit B - Pully Resume) (Green, Elizabeth) (Entered: 07/12/2021) |
| 07/12/2021 | 9 (37 pgs; 4 docs) | Emergency Motion , Application to Employ BMC Group, Inc. as Claims, Noticing, Solicitation and Administrative Agent. Objections/Request for Hearing Due in 21 days. Filed by Debtor Limetree Bay Services, LLC Hearing scheduled for 7/13/2021 at 03:00 PM at telephone and video conference. (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Claims Agent Agreement # 3 Exhibit C - Declaration of Tinamaire Feil) (Green, Elizabeth) (Entered: 07/12/2021) |
| 07/12/2021 | 10 (19 pgs; 2 docs) | Emergency Motion , Motion for Continuation of Utility Service and Approval of Adequate Assurance of Payment to Utility Company Under Section 366(b) Filed by Debtor Limetree Bay Services, LLC Hearing scheduled for 7/13/2021 at 03:00 PM at telephone and video conference. (Attachments: # 1 Exhibit A - Proposed Order) (Green, Elizabeth) (Entered: 07/12/2021) |
| 07/12/2021 | 11 (10 pgs; 2 docs) | Motion to Reject Lease or Executory Contract *Debtors' Motion to Reject Unexpired Lease of Real Property (842 West Sam Houston Parkway North, Houston, TX 77024)* Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order) (Green, Elizabeth) (Entered: 07/12/2021) |
| 07/12/2021 | 12 (20 pgs; 3 docs) | Motion for Approval *Authorizing (I) the Continued Use of the Debtors' Pre-Petition Cash Management System, including Existing Bank Accounts, Business Forms, and Company Credit Cards; (II) Continued Use of Intercompany Arrangements and Historical Practices; and (III) Opening New Debtor-in-Possession Accounts, if Necessary*. Objections/Request for Hearing Due in 21 days., Emergency Motion Filed by Debtor Limetree Bay Services, LLC Hearing scheduled for 7/13/2021 at 03:00 PM at telephone and video conference. (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Summary of Bank Accounts) (Green, Elizabeth) (Entered: 07/12/2021) |
| | 13 (16 pgs; 2 docs) | Motion for Approval *Debtors' Motion for Authority to (I) Pay Pre-Petition Wages, Benefits, and Employee Business Expenses; and (II) Continue the Post-Petition Maintenance* |

| | | |
|---|---|---|
| 07/12/2021 | | *of Employee Benefit Programs, Policies, and Procedures in the Ordinary Course*. Objections/Request for Hearing Due in 21 days., Emergency Motion Filed by Debtor Limetree Bay Services, LLC Hearing scheduled for 7/13/2021 at 03:00 PM at telephone and video conference. (Attachments: # 1 Exhibit A - Proposed Order) (Green, Elizabeth) (Entered: 07/12/2021) |
| 07/12/2021 | 14 (225 pgs; 3 docs) | Motion to Use Cash Collateral, Emergency Motion Filed by Debtor Limetree Bay Services, LLC Hearing scheduled for 7/13/2021 at 03:00 PM at telephone and video conference. (Attachments: # 1 Exhibit A - Proposed Interim Order # 2 Exhibit B - Summary of Bank Accounts) (Green, Elizabeth) (Entered: 07/12/2021) |
| 07/12/2021 | 15 (4 pgs) | Notice *of Electronic First Day Hearing*. (Related document(s):4 Motion for Joint Administration, Emergency Motion (with hearing date), 9 Emergency Motion (with hearing date), Application to Employ, 10 Emergency Motion (with hearing date), Motion for Continuation of Utility Service, 12 Motion for Approval, Emergency Motion (with hearing date), 13 Motion for Approval, Emergency Motion (with hearing date), 14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)) Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 07/12/2021) |
| 07/12/2021 | 16 (3 pgs) | Exhibit List, Witness List (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 07/12/2021) |
| 07/12/2021 | 17 (3 pgs) | Agenda for Hearing on 7/13/2021 (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 07/12/2021) |
| 07/13/2021 | 18 (2 pgs) | Notice of Appearance and Request for Notice Filed by Timothy Alvin Davidson II Filed by on behalf of Limetree Bay Terminals, LLC (Davidson, Timothy) (Entered: 07/13/2021) |
| 07/13/2021 | 19 (1 pg) | Notice and Order regarding exchanging of exhibits and witness lists in all contested matters and adversary proceedings. (Entered: 07/13/2021) |
| 07/13/2021 | 20 (4 pgs) | Order for Joint Administration Signed on 7/13/2021 (Related Doc # 4). (aaloadi) (Entered: 07/13/2021) |
| 07/13/2021 | | (private) Motion for Joint Administration terminated. (aaloadi) (Entered: 07/13/2021) |
| 07/13/2021 | 21 (1 pg) | Order Granting Complex Chapter 11 Bankruptcy Case Treatment Signed on 7/13/2021 (Related document(s):2 Notice of Designation as Complex Chapter 11 Bankruptcy Case) (aalo) (Entered: 07/13/2021) |

| | | |
|---|---|---|
| 07/13/2021 | 22 (3 pgs) | Notice of Appearance and Request for Notice Filed by Jason S Brookner Filed by on behalf of Arena Investors, LP, 405 Sentinel LLC (Brookner, Jason) (Entered: 07/13/2021) |
| 07/13/2021 | 23 (6 pgs) | Order Granting Emergency Application to Appoint BMC Group, Inc as Claims, Noticing, Solicitation, and Administrative Agent (Related Doc # 9) Signed on 7/13/2021. (aalo) (Entered: 07/13/2021) |
| 07/13/2021 | 24 (4 pgs) | Notice of Appearance and Request for Notice Filed by Henry Flores Filed by on behalf of Ad Hoc Group of Terminal Lenders (Flores, Henry) (Entered: 07/13/2021) |
| 07/13/2021 | 25 (46 pgs; 3 docs) | Exhibit List, Witness List (Filed By Limetree Bay Services, LLC ).(Related document(s):16 Exhibit List, Witness List) (Attachments: # 1 Exhibit 1 - Shapiro Declaration # 2 Exhibit 2 - Budget) (Green, Elizabeth) (Entered: 07/13/2021) |
| 07/13/2021 | 26 (50 pgs; 3 docs) | Exhibit List, Witness List (Filed By Limetree Bay Services, LLC ).(Related document(s):25 Exhibit List, Witness List) (Attachments: # 1 Exhibit 1 - Declaration of Mark Shapiro # 2 Exhibit 2 - Budget) (Green, Elizabeth) (Entered: 07/13/2021) |
| 07/13/2021 | 27 (5 pgs) | Notice of Appearance and Request for Notice Filed by Marty L Brimmage Filed by on behalf of Ad Hoc Term Lender Group (Brimmage, Marty) (Entered: 07/13/2021) |
| 07/13/2021 | 28 (1 pg) | Order Granting Motion To Appear pro hac vice - Jorian L. Rose (Related Doc # 5) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 29 (1 pg) | Order Granting Motion To Appear pro hac vice - Michael T. Delaney (Related Doc # 6) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 30 (1 pg) | Motion to Appear pro hac vice *Robin Spigel*. Filed by Creditor J. Aron & Company LLC (Prince, James) (Entered: 07/13/2021) |
| 07/13/2021 | 31 (1 pg) | Motion to Appear pro hac vice *Chris Newcomb*. Filed by Creditor J. Aron & Company LLC (Prince, James) (Entered: 07/13/2021) |
| 07/13/2021 | 32 (1 pg) | Motion to Appear pro hac vice *Ira S. Dizengoff*. Filed by Interested Party Ad Hoc Term Lender Group (Brimmage, Marty) (Entered: 07/13/2021) |
| 07/13/2021 | 33 (1 pg) | Motion to Appear pro hac vice *Jacob R. Herz*. Filed by Creditor J. Aron & Company LLC (Prince, James) (Entered: 07/13/2021) |

| 07/13/2021 | 🌐 34<br>(3 pgs) | Notice of Appearance and Request for Notice Filed by James R Prince Filed by on behalf of J. Aron & Company LLC (Prince, James) (Entered: 07/13/2021) |
|---|---|---|
| 07/13/2021 | 🌐 35<br>(1 pg) | Motion to Appear pro hac vice *Scott L. Alberino*. Filed by Interested Party Ad Hoc Term Lender Group (Brimmage, Marty) (Entered: 07/13/2021) |
| 07/13/2021 | 🌐 36<br>(1 pg) | Motion to Appear pro hac vice *Kevin M. Eide*. Filed by Interested Party Ad Hoc Term Lender Group (Brimmage, Marty) (Entered: 07/13/2021) |
| 07/13/2021 | 🌐 37<br>(1 pg) | Motion to Appear pro hac vice *Benjamin L. Taylor*. Filed by Interested Party Ad Hoc Term Lender Group (Brimmage, Marty) (Entered: 07/13/2021) |
| 07/13/2021 | 🌐 38<br>(5 pgs) | Statement *Verified Statement of the Ad Hoc Term Lender Group Pursuant to Bankruptcy Rule 2019* (Filed By Ad Hoc Term Lender Group ). (Brimmage, Marty) (Entered: 07/13/2021) |
| 07/13/2021 | 🌐 39<br>(1 pg) | Motion to Appear pro hac vice *for Sean A. O'Neal*. Filed by Creditor Goldman Sachs Bank USA (O'Neal, Sean) (Entered: 07/13/2021) |
| 07/13/2021 | 🌐 40<br>(5 pgs) | Notice of Appearance and Request for Notice Filed by Christopher M Odell Filed by on behalf of BP Corporation North America Inc., an Indiana corporation, BP Products North America Inc., a Maryland corporation (Odell, Christopher) (Entered: 07/13/2021) |
| 07/13/2021 | 🌐 41<br>(1 pg) | Motion to Appear pro hac vice *by Rosa J. Evergreen*. Filed by Creditors BP Corporation North America Inc., an Indiana corporation, BP Products North America Inc., a Maryland corporation (Odell, Christopher) (Entered: 07/13/2021) |
| 07/13/2021 | 🌐 42<br>(1 pg) | Motion to Appear pro hac vice *for Jane VanLare*. Filed by Creditor Goldman Sachs Bank USA (VanLare, Jane) (Entered: 07/13/2021) |
| 07/13/2021 | 🌐 43<br>(1 pg) | Motion to Appear pro hac vice *by D. Tyler Nurnberg*. Filed by Creditors BP Corporation North America Inc., an Indiana corporation, BP Products North America Inc., a Maryland corporation (Odell, Christopher) (Entered: 07/13/2021) |
| 07/13/2021 | 🌐 44<br>(1 pg) | Motion to Appear pro hac vice *by Michael Messersmith*. Filed by Creditors BP Corporation North America Inc., an Indiana corporation, BP Products North America Inc., a Maryland corporation (Odell, Christopher) (Entered: 07/13/2021) |

| | | |
|---|---|---|
| 07/13/2021 | 45 (1 pg) | Motion to Appear pro hac vice *by Gerado Mijares-Shafai*. Filed by Creditors BP Corporation North America Inc., an Indiana corporation, BP Products North America Inc., a Maryland corporation (Odell, Christopher) (Entered: 07/13/2021) |
| 07/13/2021 | | (private) Motions terminated. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 46 (1 pg) | Order Granting Motion To Appear pro hac vice - Robin Spigel (Related Doc # 30) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 47 (1 pg) | Order Granting Motion To Appear pro hac vice - Chris Newcomb (Related Doc # 31) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 48 (1 pg) | Order Granting Motion To Appear pro hac vice - Ira S. Dizengoff (Related Doc # 32) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 49 (1 pg) | Order Granting Motion To Appear pro hac vice - Jacob R. Herz (Related Doc # 33) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 50 (1 pg) | Order Granting Motion To Appear pro hac vice - Scott L. Alberino (Related Doc # 35) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 51 (1 pg) | Order Granting Motion To Appear pro hac vice - Kevin M. Eide (Related Doc # 36) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 52 (1 pg) | Order Granting Motion To Appear pro hac vice - Benjamin L. Taylor (Related Doc # 37) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 53 (1 pg) | Order Granting Motion To Appear pro hac vice - Sean A. O'Neal (Related Doc # 39) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 54 (1 pg) | Order Granting Motion To Appear pro hac vice - Rosa J. Evergreen (Related Doc # 41) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 55 (1 pg) | Order Granting Motion To Appear pro hac vice - Jane VanLare (Related Doc # 42) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| | 56 (1 pg) | Order Granting Motion To Appear pro hac vice - D. Tyler Nurnberg (Related Doc # 43) Signed on 7/13/2021. (emiller |

| | | |
|---|---|---|
| 07/13/2021 | | (Entered: 07/13/2021) |
| 07/13/2021 | 🌑 57<br>(1 pg) | Order Granting Motion To Appear pro hac vice - Michael Messersmith (Related Doc # 44) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 🌑 58<br>(1 pg) | Order Granting Motion To Appear pro hac vice - Gerardo Mijares-Shafai (Related Doc # 45) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 🌑 | Notice of Appearance and Request for Notice Filed by Hector Duran Jr (Duran, Hector) (Entered: 07/13/2021) |
| 07/13/2021 | 🌑 59<br>(1 pg) | Motion to Appear pro hac vice *for Damian S. Schaible*. Filed by Interested Party Ad Hoc Group of Terminal Lenders (Flores, Henry) (Entered: 07/13/2021) |
| 07/13/2021 | 🌑 60<br>(1 pg) | Motion to Appear pro hac vice *for Elliot Moskowitz*. Filed by Interested Party Ad Hoc Group of Terminal Lenders (Flores, Henry) (Entered: 07/13/2021) |
| 07/13/2021 | 🌑 61<br>(1 pg) | Motion to Appear pro hac vice *for Jonah A. Peppiatt*. Filed by Interested Party Ad Hoc Group of Terminal Lenders (Flores, Henry) (Entered: 07/13/2021) |
| 07/13/2021 | 🌑 62<br>(1 pg) | Motion to Appear pro hac vice *for Aryeh Ethan Falk*. Filed by Interested Party Ad Hoc Group of Terminal Lenders (Flores, Henry) (Entered: 07/13/2021) |
| 07/13/2021 | 🌑 63<br>(3 pgs) | Exhibit List, Witness List (Filed By J. Aron & Company LLC ). (Prince, James) (Entered: 07/13/2021) |
| 07/13/2021 | 🌑 64<br>(1 pg) | Motion to Appear pro hac vice *by David S. Meyer*. Filed by Interested Party AMP Capital Investors, Ltd. (Spears, Trevor) (Entered: 07/13/2021) |
| 07/13/2021 | 🌑 65<br>(1 pg) | Motion to Appear pro hac vice *by George R. Howard*. Filed by Interested Party AMP Capital Investors, Ltd. (Spears, Trevor) (Entered: 07/13/2021) |
| 07/13/2021 | 🌑 66<br>(1 pg) | Motion to Appear pro hac vice *by Steven Zundell*. Filed by Interested Party AMP Capital Investors, Ltd. (Spears, Trevor) (Entered: 07/13/2021) |
| 07/13/2021 | 🌑 67<br>(5 pgs) | Notice of Appearance and Request for Notice Filed by Trevor Grant Spears Filed by on behalf of AMP Capital Investors, Ltd. (Spears, Trevor) (Entered: 07/13/2021) |
| | 🌑 68<br>(12 pgs; 6 docs) | Exhibit List, Witness List (Filed By Ad Hoc Group of Terminal Lenders ). (Attachments: # 1 Exhibit 1 # 2 Exhibit |

| | | |
|---|---|---|
| 07/13/2021 | | 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5) (Flores, Henry) (Entered: 07/13/2021) |
| 07/13/2021 | 69 (4 pgs) | Notice of Appearance and Request for Notice Filed by Katherine A Preston Filed by on behalf of The Government of the United States Virgin Islands (Preston, Katherine) (Entered: 07/13/2021) |
| 07/13/2021 | 70 (1 pg) | Motion to Appear pro hac vice *for Daniel J. McGuire*. Filed by Creditor The Government of the United States Virgin Islands (Preston, Katherine) (Entered: 07/13/2021) |
| 07/13/2021 | 71 (1 pg) | Motion to Appear pro hac vice *for Geoffrey P. Eaton*. Filed by Creditor The Government of the United States Virgin Islands (Preston, Katherine) (Entered: 07/13/2021) |
| 07/13/2021 | 72 (1 pg) | Order Granting Motion To Appear pro hac vice - Damian S. Schaible (Related Doc # 59) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 73 (1 pg) | Order Granting Motion To Appear pro hac vice - Elliot Moskowitz (Related Doc # 60) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 74 (1 pg) | Order Granting Motion To Appear pro hac vice - Jonah A. Peppiatt (Related Doc # 61) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 75 (1 pg) | Order Granting Motion To Appear pro hac vice - Aryeh Ethan Falk (Related Doc # 62) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 76 (1 pg) | Order Granting Motion To Appear pro hac vice - David S. Meyer (Related Doc # 64) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 77 (12 pgs) | Objection *to the Debtors Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-Petition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (IV) Approving Adequate Protection to Pre-Petition Secured Creditors, (V) Modifying the Automatic Stay and (VI) Scheduling a Final Hearing* (related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)). Filed by Ad Hoc Group of Terminal Lenders (Flores, Henry) (Entered: 07/13/2021) |
| 07/13/2021 | 78 (1 pg) | Order Granting Motion To Appear pro hac vice - George R. Howard (Related Doc # 65) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |

| | | |
|---|---|---|
| 07/13/2021 | 🌐 79<br>(1 pg) | Order Granting Motion To Appear pro hac vice - Steven Zundell (Related Doc # 66) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 🌐 80<br>(1 pg) | Order Granting Motion To Appear pro hac vice - Daniel J. McGuire (Related Doc # 70) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 🌐 81<br>(1 pg) | Order Granting Motion To Appear pro hac vice - Geoffrey P. Eaton (Related Doc # 71) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 🌐 82<br>(1 pg) | Motion to Appear pro hac vice *for Gregory F. Pesce*. Filed by Interested Party EIG Management Company, LLC (Pesce, Gregory) (Entered: 07/13/2021) |
| 07/13/2021 | 🌐 83<br>(1 pg) | Motion to Appear pro hac vice *for William Guerrieri*. Filed by Interested Party EIG Management Company, LLC (Pesce, Gregory) (Entered: 07/13/2021) |
| 07/13/2021 | 🌐 84<br>(1 pg) | Motion to Appear pro hac vice *for Nicolas Abbattista*. Filed by Interested Party EIG Management Company, LLC (Pesce, Gregory) (Entered: 07/13/2021) |
| 07/13/2021 | 🌐 85<br>(4 pgs) | Notice of Appearance and Request for Notice Filed by Gregory F Pesce Filed by on behalf of EIG Management Company, LLC (Pesce, Gregory) (Entered: 07/13/2021) |
| 07/13/2021 | 🌐 86<br>(3 pgs) | Notice of Appearance and Request for Notice Filed by Robert P Franke Filed by on behalf of Flowserve US Inc. (Franke, Robert) (Entered: 07/13/2021) |
| 07/13/2021 | 🌐 87<br>(1 pg) | Order Granting Motion To Appear pro hac vice - Gregory F. Pesce (Related Doc # 82) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 🌐 88<br>(1 pg) | Order Granting Motion To Appear pro hac vice - William Guerrieri (Related Doc # 83) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 🌐 89<br>(1 pg) | Order Granting Motion To Appear pro hac vice - Nicolas Abbattista (Related Doc # 84) Signed on 7/13/2021. (emiller) (Entered: 07/13/2021) |
| | 🌐 90<br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by J. Aron / Jacob R. Herz. This is to order a transcript of First Day Hearing, 7/13/2021 before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By J. Aron & Company LLC ). (Prince, James) Electronically forwarded to Judicial Transcribers of Texas on 7-19-2021. Estimated completion date: 7-20-2021. Modified |

| | | |
|---|---|---|
| 07/13/2021 | | on 7/19/2021 (MelissaMorgan). (Entered: 07/13/2021) |
| 07/13/2021 | 🔘 91 (2 pgs) | Notice of Appearance and Request for Notice Filed by Richard A. Kincheloe Filed by on behalf of United States of America (Kincheloe, Richard) (Entered: 07/13/2021) |
| 07/13/2021 | 🔘 | Notice of Appearance and Request for Notice Filed by Jana Smith Whitworth (Whitworth, Jana) (Entered: 07/13/2021) |
| 07/13/2021 | 🔘 92 (3 pgs) | Courtroom Minutes. Time Hearing Held: 3:00 pm. Appearances: SEE ATTACHED. (Related document(s):10 Emergency Motion (with hearing date), Motion for Continuation of Utility Service, 12 Motion for Approval, Emergency Motion (with hearing date), 13 Motion for Approval, Emergency Motion (with hearing date), 14 Motion to Use Cash Collateral, Emergency Motion (with hearing date) The Court approved the Cash Collateral Motion 14 on an interim basis. **A continued hearing on the motion is scheduled for 08/02/2021 at 3:30 PM.** The parties to submit a revised order. The Court approved the Wages Motion 13. The parties to submit a revised proposed final order. The Court approved the Utilities Motion as modified on the record 10. The parties to submit a revised proposed order. The Court approved the Cash Management Motion 12 on an interim basis. **A continued hearing on the motion is scheduled for 08/25/2021 at 9:30 AM.** The parties to submit a revised proposed order. (emiller) (Entered: 07/13/2021) |
| 07/13/2021 | 🔘 93 (1 pg) | 🔊 PDF with attached Audio File. Court Date & Time [ 7/13/2021 3:00:51 PM ]. File Size [ 54467 KB ]. Run Time [ 01:53:28 ]. (First Day Hearings). (admin). (Entered: 07/13/2021) |
| 07/13/2021 | 🔘 94 (16 pgs; 2 docs) | Proposed Order Submission After Hearing (Filed By Limetree Bay Services, LLC ).(Related document(s):12 Motion for Approval, Emergency Motion (with hearing date)) (Attachments: # 1 Exhibit A- Redlined Version) (Green, Elizabeth) (Entered: 07/13/2021) |
| 07/13/2021 | 🔘 95 (15 pgs; 2 docs) | Proposed Order Submission After Hearing (Filed By Limetree Bay Services, LLC ).(Related document(s):10 Emergency Motion (with hearing date), Motion for Continuation of Utility Service) (Attachments: # 1 Exhibit A - Redlined Version) (Green, Elizabeth) (Entered: 07/13/2021) |
| 07/13/2021 | 🔘 96 (10 pgs; 2 docs) | Proposed Order Submission After Hearing (Filed By Limetree Bay Services, LLC ).(Related document(s):13 Motion for Approval, Emergency Motion (with hearing date)) (Attachments: # 1 Exhibit A - Redlined Version) (Green, Elizabeth) (Entered: 07/13/2021) |

| | | |
|---|---|---|
| 07/13/2021 | 🔵 97<br>(372 pgs; 2 docs) | Proposed Order Submission After Hearing (Filed By Limetree Bay Services, LLC ).(Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)) (Attachments: # 1 Exhibit A - Redlined Version) (Green, Elizabeth) (Entered: 07/13/2021) |
| 07/13/2021 | 🔵 98<br>(13 pgs; 2 docs) | Proposed Order Submission After Hearing (Filed By Limetree Bay Services, LLC ).(Related document(s):10 Emergency Motion (with hearing date), Motion for Continuation of Utility Service) (Attachments: # 1 Exhibit A - Redlined Version) (Green, Elizabeth) (Entered: 07/13/2021) |
| 07/14/2021 | 🔵 99<br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Marty L. Brimmage, Jr.. This is to order a transcript of the July 13, 2021 Hearing before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Ad Hoc Term Lender Group ). (Brimmage, Marty) Copy request was electronically forwarded to Judicial Transcribers of Texas on 7-19-2021. Estimated completion date: 7-20-2021. Modified on 7/19/2021 (MelissaMorgan). (Entered: 07/14/2021) |
| 07/14/2021 | 🔵 100<br>(2 pgs) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Jason S. Brookner. This is to order a transcript of Hearing on 7.13.21 before Judge David R. Jones. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By 405 Sentinel LLC, Arena Investors, LP ). (Brookner, Jason) Copy request was electronically forwarded to the original transcriber: Judicial Transcribers of Texas on 7-19-2021. Estimated completion date: 7-20-2021. Modified on 7/19/2021 (MelissaMorgan). (Entered: 07/14/2021) |
| 07/14/2021 | 🔵 101<br>(6 pgs) | Order Granting Motion for Continuation of Utility Service and Approval of Adequate Assurance of Payment to Utility Company (Related Doc # 10) Signed on 7/14/2021. (aalo) (Entered: 07/14/2021) |
| 07/14/2021 | 🔵 102<br>(8 pgs) | Interim Cash Management Order Signed on 7/14/2021 (Related document(s):12 Motion for Approval, Emergency Motion (with hearing date)) **Hearing scheduled for 8/25/2021 at 09:30 AM by telephone and video conference.** (aalo) (Entered: 07/14/2021) |
| 07/14/2021 | 🔵 103<br>(5 pgs) | Order Granting Motion for Authority to (I) Pay Pre-Petition Wages, Benefits, and Employee Business Expenses; and (II) Continue the Post-Petition Maintenance of Employee Benefit Programs, Policies, and Procedures in the Ordinary Course. (Related Doc # 13) Signed on 7/14/2021. (aalo) (Entered: 07/14/2021) |
| | 🔵 104 | Interim Order on Cash Collateral Signed on 7/14/2021 |

| | | |
|---|---|---|
| 07/14/2021 | (185 pgs) | (Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)) **Hearing scheduled for 8/2/2021 at 03:30 PM by telephone and video conference** (aalo) (Entered: 07/14/2021) |
| 07/14/2021 | 🌐 105 (2 pgs) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Limetree Bay Terminals, LLC. This is to order a transcript of first day hearing 7/13/2021 before Judge David R. Jones. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By Limetree Bay Terminals, LLC ). (Guffy, Philip) Copy request was electronically forwarded to the original transcriber: Judicial Transcribers of Texas on 7-19-2021. Estimated completion date: 7-20-2021. Modified on 7/19/2021 (MelissaMorgan). (Entered: 07/14/2021) |
| 07/14/2021 | 🌐 106 (2 pgs) | Meeting of Creditors Chapter 11 for Non-Individual Debtor Set 341(a) meeting to be held on 8/17/2021 at 10:00 AM at US Trustee Houston Teleconference. Proofs of Claims due by 11/15/2021. Government Proof of Claim due by 1/10/2022. (Duran, Hector) (Entered: 07/14/2021) |
| 07/14/2021 | 🌐 107 (3 pgs) | Notice of Appearance and Request for Notice Filed by William E. Steffes Filed by on behalf of LMMVI, LLC (Steffes, William) (Entered: 07/14/2021) |
| 07/14/2021 | 🌐 108 (3 pgs) | Notice of Appearance and Request for Notice Filed by Trinitee Gale Green Filed by on behalf of Dyonyx, L.P. (Green, Trinitee) (Entered: 07/14/2021) |
| 07/14/2021 | 🌐 109 (3 pgs) | Notice of Appearance and Request for Notice Filed by Millard A Johnson Filed by on behalf of Reactor Resources, LLC (Johnson, Millard) (Entered: 07/14/2021) |
| 07/14/2021 | 🌐 110 (3 pgs) | Notice of Appearance and Request for Notice Filed by Sara Jamieson Sherman Filed by on behalf of Reactor Resources, LLC (Sherman, Sara) (Entered: 07/14/2021) |
| 07/14/2021 | 🌐 111 (3 pgs) | Notice of Appearance and Request for Notice Filed by Elizabeth Nicolle Boydston Filed by on behalf of Dyonyx, L.P. (Boydston, Elizabeth) (Entered: 07/14/2021) |
| 07/15/2021 | 🌐 112 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Henry Flores. This is to order a transcript of July 13, 2021 Hearing before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Ad Hoc Group of Terminal Lenders ). (Flores, Henry) Copy request electronically forwarded to Judicial Transcribers of Texas on 7-19-2021. Estimated completion date: 7-20-2021. Modified on 7/19/2021 (MelissaMorgan). (Entered: 07/15/2021) |

| | | |
|---|---|---|
| 07/15/2021 | 🌐 113 (11 pgs) | Redacted Document By Limetree Bay Services, LLC. (Filed By Limetree Bay Services, LLC ).(Related document(s):12 Motion for Approval, Emergency Motion (with hearing date)) (Green, Elizabeth) Modified on 7/15/2021 (aalo). (Entered: 07/15/2021) |
| 07/15/2021 | 🌐 114 (3 pgs) | Redacted Document By Limetree Bay Services, LLC. (Filed By Limetree Bay Services, LLC ).(Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)) (Green, Elizabeth) Modified on 7/15/2021 (aalo). (Entered: 07/15/2021) |
| 07/15/2021 | 🌐 115 (8 pgs) | Certificate of Service - Re: Docket Nos. 2, 4, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 (Filed By BMC Group, Inc. ). (Ordaz, Steven) (Entered: 07/15/2021) |
| 07/15/2021 | 🌐 116 (5 pgs) | Certificate of Supplemental Service - RE: Docket Nos. 2, 4, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 (Filed By BMC Group, Inc. ). (Ordaz, Steven) (Entered: 07/15/2021) |
| 07/15/2021 | 🌐 117 (6 pgs) | Debtors Master Service List (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 07/15/2021) |
| 07/15/2021 | 🌐 118 (3 pgs) | Notice of Appearance and Request for Notice Filed by Duston K McFaul Filed by on behalf of Universal Plant Services (VI), LLC (McFaul, Duston) (Entered: 07/15/2021) |
| 07/15/2021 | 🌐 119 (3 pgs) | BNC Certificate of Mailing. (Related document(s):19 Order Regarding the Exchange of Exhibits and Witness lists in all contested matters and adversary proceedings) No. of Notices: 2. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | 🌐 120 (6 pgs) | BNC Certificate of Mailing. (Related document(s):20 Order for Joint Administration) No. of Notices: 2. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | 🌐 121 (3 pgs) | BNC Certificate of Mailing. (Related document(s):21 Generic Order) No. of Notices: 2. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | 🌐 122 (8 pgs) | BNC Certificate of Mailing. (Related document(s):23 Order on Emergency Motion) No. of Notices: 2. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | 🌐 123 (3 pgs) | BNC Certificate of Mailing. (Related document(s):28 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | 🌐 124 (3 pgs) | BNC Certificate of Mailing. (Related document(s):29 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |

| | | |
|---|---|---|
| 07/15/2021 | 125 (3 pgs) | BNC Certificate of Mailing. (Related document(s):46 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | 126 (3 pgs) | BNC Certificate of Mailing. (Related document(s):47 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | 127 (3 pgs) | BNC Certificate of Mailing. (Related document(s):48 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | 128 (3 pgs) | BNC Certificate of Mailing. (Related document(s):49 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | 129 (3 pgs) | BNC Certificate of Mailing. (Related document(s):50 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | 130 (3 pgs) | BNC Certificate of Mailing. (Related document(s):51 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | 131 (3 pgs) | BNC Certificate of Mailing. (Related document(s):52 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | 132 (3 pgs) | BNC Certificate of Mailing. (Related document(s):53 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | 133 (3 pgs) | BNC Certificate of Mailing. (Related document(s):54 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | 134 (3 pgs) | BNC Certificate of Mailing. (Related document(s):55 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | 135 (3 pgs) | BNC Certificate of Mailing. (Related document(s):56 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | 136 (3 pgs) | BNC Certificate of Mailing. (Related document(s):57 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| | 137 (3 pgs) | BNC Certificate of Mailing. (Related document(s):58 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice |

| 07/15/2021 | | Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
|---|---|---|
| 07/15/2021 | ⚫ 138 (3 pgs) | BNC Certificate of Mailing. (Related document(s):72 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | ⚫ 139 (3 pgs) | BNC Certificate of Mailing. (Related document(s):73 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | ⚫ 140 (3 pgs) | BNC Certificate of Mailing. (Related document(s):74 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | ⚫ 141 (3 pgs) | BNC Certificate of Mailing. (Related document(s):75 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | ⚫ 142 (3 pgs) | BNC Certificate of Mailing. (Related document(s):76 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | ⚫ 143 (3 pgs) | BNC Certificate of Mailing. (Related document(s):78 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | ⚫ 144 (3 pgs) | BNC Certificate of Mailing. (Related document(s):79 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | ⚫ 145 (3 pgs) | BNC Certificate of Mailing. (Related document(s):80 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | ⚫ 146 (3 pgs) | BNC Certificate of Mailing. (Related document(s):81 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | ⚫ 147 (4 pgs) | BNC Certificate of Mailing. (Related document(s):87 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | ⚫ 148 (4 pgs) | BNC Certificate of Mailing. (Related document(s):88 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |
| 07/15/2021 | ⚫ 149 (4 pgs) | BNC Certificate of Mailing. (Related document(s):89 Order on Motion to Appear pro hac vice) No. of Notices: 3. Notice Date 07/15/2021. (Admin.) (Entered: 07/17/2021) |

| | | |
|---|---|---|
| 07/16/2021 | 🌐 150 (5 pgs) | BNC Certificate of Mailing - Meeting of Creditors. (Related document(s):106 Meeting of Creditors Chapter 11 for Non-Individual Debtor Set) No. of Notices: 19. Notice Date 07/16/2021. (Admin.) (Entered: 07/17/2021) |
| 07/16/2021 | 🌐 151 (8 pgs) | BNC Certificate of Mailing. (Related document(s):103 Order on Motion for Approval) No. of Notices: 3. Notice Date 07/16/2021. (Admin.) (Entered: 07/17/2021) |
| 07/16/2021 | 🌐 152 (9 pgs) | BNC Certificate of Mailing. (Related document(s):101 Order on Motion for Continuation of Utility Service) No. of Notices: 3. Notice Date 07/16/2021. (Admin.) (Entered: 07/17/2021) |
| 07/16/2021 | 🌐 153 (11 pgs) | BNC Certificate of Mailing. (Related document(s):102 Order Setting Hearing) No. of Notices: 3. Notice Date 07/16/2021. (Admin.) (Entered: 07/17/2021) |
| 07/16/2021 | 🌐 154 (188 pgs) | BNC Certificate of Mailing. (Related document(s):104 Order Setting Hearing) No. of Notices: 3. Notice Date 07/16/2021. (Admin.) (Entered: 07/17/2021) |
| 07/18/2021 | 🌐 155 (3 pgs) | Notice of Appearance and Request for Notice Filed by David Samuel Rubin Filed by on behalf of Excel Construction and Maintenance V.I., Inc. (Rubin, David) (Entered: 07/18/2021) |
| 07/19/2021 | 🌐 156 (1 pg) | Notice of Appearance and Request for Notice Filed by John P Dillman Filed by on behalf of Harris County, et al. (Dillman, John) (Entered: 07/19/2021) |
| 07/19/2021 | 🌐 157 (2 pgs) | Notice of Appearance and Request for Notice Filed by Simon W Hendershot III Filed by on behalf of VIVOT EQUIPMENT CORPORATION (Hendershot, Simon) (Entered: 07/19/2021) |
| 07/19/2021 | 🌐 158 (2 pgs) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Vivot/Hendershot. This is to order a transcript of Entire Hearing on 7/13/21 before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By VIVOT EQUIPMENT CORPORATION ). (Hendershot, Simon) Copy request was electronically forwarded to Judicial Transcribers of Texas on 7-19-2021. Estimated completion date: 7-20-2021. Modified on 7/19/2021 (MelissaMorgan). (Entered: 07/19/2021) |
| 07/19/2021 | 🌐 159 (1 pg) | Motion to Appear pro hac vice *for Kirk B. Burkley*. Filed by Creditor H&K Engineering LLC (Ebeck, Keri) (Entered: 07/19/2021) |
| | 🌐 160 (1 pg) | Notice of Appearance and Request for Notice Filed by John P Dillman Filed by on behalf of City of La Porte (Dillman, |

| 07/20/2021 | | John) (Entered: 07/20/2021) |
|---|---|---|
| 07/20/2021 | 🌐 161 (3 pgs) | Notice of Appearance and Request for Notice Filed by Vincent P Slusher Filed by on behalf of AltairStrickland V.I. LLC (Slusher, Vincent) (Entered: 07/20/2021) |
| 07/20/2021 | 🌐 162 (11 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):20 Order for Joint Administration, 21 Generic Order, 23 Order on Emergency Motion, Order on Application to Employ, 101 Order on Motion for Continuation of Utility Service, 102 Order Setting Hearing, 103 Order on Motion for Approval, 104 Order Setting Hearing) (Ordaz, Steven) (Entered: 07/20/2021) |
| 07/20/2021 | 🔗 🌐 163 (79 pgs) | Transcript RE: First Day Hearings (Via Zoom) held on July 13, 2021 before Judge David R. Jones. Transcript is available for viewing in the Clerk's Office. Filed by Transcript access will be restricted through 10/18/2021. (mhen) (Entered: 07/20/2021) |
| 07/21/2021 | 🌐 164 (1 pg) | Notice of Filing of Official Transcript as to 163 Transcript. Parties notified (Related document(s):163 Transcript) (dhan) (Entered: 07/21/2021) |
| 07/21/2021 | 🌐 165 (3 pgs) | Notice of Appearance and Request for Notice Filed by Scott Robert Cheatham Filed by on behalf of Honeywell International Inc., Honeywell Enraf Americas, Inc. (Cheatham, Scott) (Entered: 07/21/2021) |
| 07/21/2021 | 🌐 166 (7 pgs; 2 docs) | Emergency Motion , Motion to Extend Deadline to File Schedules or Provide Required Information Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order) (Parrish, Jimmy) (Entered: 07/21/2021) |
| 07/22/2021 | 🌐 167 (2 pgs) | AO 435 TRANSCRIPT ORDER FORM (First Copy) by James McNamara. This is to order a transcript of hearing held 7/13/2021 before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By James McNamara ). (jdav) Copy order forwarded to Judicial Transcribers of Texas 7/27/2021. Estimated Transcript Completion Date: 7/28/2021. Modified on 7/27/2021 (JacquelineMata). (Entered: 07/22/2021) |
| 07/22/2021 | 🌐 168 (4 pgs) | Notice of Appearance and Request for Notice Filed by Demetra Liggins Filed by on behalf of Crowley Caribbean Services, LLC (Liggins, Demetra) (Entered: 07/22/2021) |
| 07/22/2021 | 🌐 169 (6 pgs) | Debtors Master Service List (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 07/22/2021) |
| | 🌐 170 | Motion to Appear pro hac vice . Filed by Attorney Stephanie |

| | | |
|---|---|---|
| 07/22/2021 | (1 pg) | J. Bentley Hearing scheduled for 8/16/2021 at 01:30 PM at Houston, Courtroom 400 (DRJ). (Liggins, Demetra) (Entered: 07/22/2021) |
| 07/22/2021 | 171 (1 pg) | Motion to Appear pro hac vice . Filed by Attorney John H. Maddock III Hearing scheduled for 8/16/2021 at 01:30 PM at Houston, Courtroom 400 (DRJ). (Liggins, Demetra) (Entered: 07/22/2021) |
| 07/22/2021 | 172 (13 pgs; 2 docs) | Motion for Relief from Stay *Common Carrier Lien*. Fee Amount $188. Filed by Creditor Crowley Caribbean Services, LLC Hearing scheduled for 8/16/2021 at 01:30 PM at Houston, Courtroom 400 (DRJ). (Attachments: # 1 Proposed Order) (Liggins, Demetra) (Entered: 07/22/2021) |
| 07/22/2021 | | Receipt of Motion for Relief From Stay( 21-32351) [motion,mrlfsty] ( 188.00) Filing Fee. Receipt number A23167146. Fee amount $ 188.00. (U.S. Treasury) (Entered: 07/22/2021) |
| 07/22/2021 | | Receipt of Motion for Relief From Stay( 21-32351) [motion,mrlfsty] ( 188.00) Filing Fee. Receipt number A23167146. Fee amount $ 188.00. (U.S. Treasury) (Entered: 07/22/2021) |
| 07/23/2021 | 173 (2 pgs) | Notice of Appearance and Request for Notice Filed by Robert Prentice Vining Filed by on behalf of Mammoet USA South, Inc. (Vining, Robert) (Entered: 07/23/2021) |
| 07/23/2021 | 174 (3 pgs) | Notice of Appearance and Request for Notice Filed by Dale E Barney Filed by on behalf of VWNA Caribbean LLC (Barney, Dale) (Entered: 07/23/2021) |
| 07/23/2021 | 175 (3 pgs) | Amended Notice *of Chapter 11 Bankruptcy Case*. (Related document(s):106 Meeting of Creditors Chapter 11 for Non-Individual Debtor Set) Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 07/23/2021) |
| 07/23/2021 | 176 (2 pgs) | Order Granting Debtors' Motion for an Extension of Time to File Schedules and Statements of Financial Affairs (Related Doc # 166) Signed on 7/23/2021. (VrianaPortillo) (Entered: 07/23/2021) |
| 07/23/2021 | 177 (3 pgs) | Notice of Appearance and Request for Notice Filed by David N Crapo Filed by on behalf of VWNA Caribbean LLC (Crapo, David) (Entered: 07/23/2021) |
| 07/23/2021 | 178 (4 pgs) | BNC Certificate of Mailing. (Related document(s):164 Notice of Filing of Official Transcript (Form)) No. of Notices: 7. Notice Date 07/23/2021. (Admin.) (Entered: 07/23/2021) |

| 07/23/2021 | 🔵 183<br>(1 pg) | Notice of Appearance and Request for Notice Filed by Kevin F. D'Amour Filed by on behalf of National Industrial Services, LLC (sgue) (Entered: 07/26/2021) |
| 07/25/2021 | | (private) Motions terminated. (emiller) (Entered: 07/25/2021) |
| 07/25/2021 | 🔵 179<br>(6 pgs) | BNC Certificate of Mailing. (Related document(s):176 Order on Motion to Extend Deadline to File Schedules) No. of Notices: 10. Notice Date 07/25/2021. (Admin.) (Entered: 07/25/2021) |
| 07/26/2021 | 🔵 180<br>(3 pgs) | Notice of Appearance and Request for Notice Filed by David A Wender Filed by on behalf of Wilmington Trust, National Association (Wender, David) (Entered: 07/26/2021) |
| 07/26/2021 | 🔵 181<br>(1 pg) | Order Granting Motion To Appear pro hac vice - Stephanie J. Bentley (Related Doc # 170) Signed on 7/26/2021. (emiller) (Entered: 07/26/2021) |
| 07/26/2021 | 🔵 182<br>(1 pg) | Order Granting Motion To Appear pro hac vice - John H. Maddock (Related Doc # 171) Signed on 7/26/2021. (emiller) (Entered: 07/26/2021) |
| 07/26/2021 | 🔵 184<br>(1 pg) | Order Granting Motion To Appear pro hac vice - Kirk B. Burkley (Related Doc # 159) Signed on 7/26/2021. (emiller) (Entered: 07/26/2021) |
| 07/26/2021 | 🔵 185<br>(25 pgs; 2 docs) | Adversary case 21-03791. Nature of Suit: (72 (Injunctive relief - other)) Complaint *for Declaratory and Injunctive Relief* by Limetree Bay Refining, LLC against Beecher Cotton, Pamela Colon, Sirdina Isaac-Joseph, Esther Clifford, Sylvia Browne, Alvina Jean-Marie Ilarraza, Francis E. Charles, Theresa J. Charles, Helen Shirley, Anisha Hendricks, Cristel Rodriguez, Josie Barnes, Arleen Miller, Rosalba Estevez, Isidore Jules, John Sonson, Virginie George, Clifford Boynes, Christopher Christian, Margaret Thompson, Delia Almestica, Carlos Christian, Anna Rexach-Constantine, Mervyn Constantine, Neal Davis, Edna Santiago, Guidrycia Wells, O'Shay Wells, Aaron G. Maynard, Verne McSween, Rochelle Gomez, Myrna Mathurin, Joan Mathurin, Leoba John Baptiste, Warrington Chapman, Anne Marie John Baptiste. Fee Amount $350 (Attachments: # 1 Adversary Case Cover Sheet) (Green, Elizabeth) (Entered: 07/26/2021) |
| 07/26/2021 | 🔵 186<br>(1 pg) | Motion to Appear pro hac vice . Filed by Creditor Generator and Motor Services of Pennsylvania, LLC d/b/a BRUSH Americas (Shiner, Michael) (Entered: 07/26/2021) |
| | 🔵 187<br>(3 pgs) | Notice of Appearance and Request for Notice Filed by Michael A Shiner Filed by on behalf of Generator and Motor |

| 07/26/2021 | | Services of Pennsylvania, LLC d/b/a BRUSH Americas (Shiner, Michael) (Entered: 07/26/2021) |
|---|---|---|
| 07/26/2021 | 🔵 188 (1 pg) | Motion to Appear pro hac vice *for Dale E. Barney*. Filed by Creditor VWNA Caribbean LLC (Barney, Dale) (Entered: 07/26/2021) |
| 07/26/2021 | 🔵 189 (4 pgs) | Notice of Appointment of Creditors' Committee (Duran, Hector) (Entered: 07/26/2021) |
| 07/26/2021 | 🔵 190 (1 pg) | Notice *of Organizational Meeting of the Official Unsecured Creditors' Committee scheduled via telephone conference call on Tuesday, July 27, 2021, at 1:00 p.m. (Houston Time)..* Filed by US Trustee (Duran, Hector) (Entered: 07/26/2021) |
| 07/26/2021 | 🔵 191 (72 pgs; 2 docs) | Emergency Motion *to (I) Establish Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief*, Motion For Sale of *All or Substantially All Assets* Free and Clear of Liens as Described in Section 363(f). Objections/Request for Hearing Due in 21 days. Fee Amount $188. Filed by Debtor Limetree Bay Services, LLC Hearing scheduled for 8/2/2021 at 03:30 PM at telephone and video conference. (Attachments: # 1 Exhibit A - Proposed Order) (Green, Elizabeth) (Entered: 07/26/2021) |
| 07/26/2021 | | Receipt of Motion for Sale of Property( 21-32351) [motion,msale363] ( 188.00) Filing Fee. Receipt number A23173053. Fee amount $ 188.00. (U.S. Treasury) (Entered: 07/26/2021) |
| 07/27/2021 | 🔵 192 (3 pgs) | Notice of Appearance and Request for Notice Filed by John D Clayman Filed by on behalf of Integrated Service Company, LLC (Clayman, John) (Entered: 07/27/2021) |
| 07/27/2021 | 🔵 193 (1 pg) | Motion to Appear pro hac vice *Samuel S. Ory*. Filed by Interested Party Integrated Service Company, LLC (Clayman, John) (Entered: 07/27/2021) |
| 07/27/2021 | 🔵 194 (3 pgs) | Notice of Appearance and Request for Notice Filed by Tristan E Manthey Filed by on behalf of Christopher Boynes, et al "Class Action Plaintiffs" (Manthey, Tristan) (Entered: 07/27/2021) |
| 07/27/2021 | 🔵 195 (4 pgs) | Declaration re: *Declaration of Mark Shapiro in Support of Debtors' Emergency Motion for Entry of Order: (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief* (Filed By Limetree Bay Services, LLC ).(Related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property) (Green, Elizabeth) (Entered: 07/27/2021) |

| 07/27/2021 | 🌐 196<br>(8 pgs) | Certificate *of Service re: Dkt 166 - Debtors Emergency Motion for an Extension of Time to File Schedules and Statements of Financial Affairs* (Filed By BMC Group, Inc. ). (Ordaz, Steven) (Entered: 07/27/2021) |
| 07/27/2021 | 🌐 197<br>(15 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):175 Notice, 176 Order on Motion to Extend Deadline to File Schedules) (Ordaz, Steven) (Entered: 07/27/2021) |
| 07/27/2021 | 🌐 198<br>(16 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property) (Ordaz, Steven) (Entered: 07/27/2021) |
| 07/27/2021 | 🌐 199<br>(12 pgs; 2 docs) | Motion to Assume/Reject *Terminal Services Agreement (Included Locations)*. Objections/Request for Hearing Due in 21 days. Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order) (Green, Elizabeth) (Entered: 07/27/2021) |
| 07/27/2021 | 🌐 200<br>(11 pgs; 2 docs) | Motion to Assume/Reject *Terminal Services Agreement*. Objections/Request for Hearing Due in 21 days. Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order) (Green, Elizabeth) (Entered: 07/27/2021) |
| 07/28/2021 | 🌐 201<br>(1 pg) | Motion to Appear pro hac vice *for James C. Thoman*. Filed by Creditor Coral Management Group, LLC (Thoman, James) (Entered: 07/28/2021) |
| 07/28/2021 | 🌐 202<br>(1 pg) | Motion to Appear pro hac vice . Filed by Creditor Analytic Stress Relieving Inc. (Cerone, Rudy) (Entered: 07/28/2021) |
| 07/28/2021 | 🌐 203<br>(2 pgs) | AO 435 TRANSCRIPT ORDER FORM (Expedited (7 days)) by Catherine Hodges. This is to order a transcript of Hearing on 7/13/2021 before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas. (MarcelleLaBee) Copy electronically forwarded to Judicial Transcribers of Texas on 07/29/2021. Estimated completion date: 08/05/2021. Modified on 7/29/2021 (ClaudiaGutierrez). (Entered: 07/28/2021) |
| 07/28/2021 | 🌐 204<br>(2 pgs) | Notice of Appearance and Request for Notice Filed by Vianey Garza Filed by on behalf of Cameron, A Schlumberger Company (Garza, Vianey) (Entered: 07/28/2021) |
| 07/28/2021 | 🌐 205<br>(1 pg) | Motion to Appear pro hac vice *Joseph N. Argentina, Jr.*. Filed by Creditor AltairStrickland V.I. LLC (Slusher, Vincent) (Entered: 07/28/2021) |

| | | |
|---|---|---|
| 07/28/2021 | 206<br>(18 pgs; 3 docs) | Motion to Assume Lease or Executory Contract *with Duke Given* Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Shapiro Declaration) (Green, Elizabeth) (Entered: 07/28/2021) |
| 07/28/2021 | 207<br>(18 pgs; 3 docs) | Motion to Assume Lease or Executory Contract *with Gary Morrow* Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Shapiro Declaration) (Green, Elizabeth) (Entered: 07/28/2021) |
| 07/28/2021 | 208<br>(17 pgs; 3 docs) | Motion to Assume Lease or Executory Contract *with Adrian Kubran* Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Shapiro Declaration) (Green, Elizabeth) (Entered: 07/28/2021) |
| 07/28/2021 | 209<br>(18 pgs; 3 docs) | Motion to Assume Lease or Executory Contract *with Fermin Rodriguez, d/b/a FR Consulting, LLC* Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Shapiro Declaration) (Green, Elizabeth) (Entered: 07/28/2021) |
| 07/28/2021 | 210<br>(1 pg) | Motion to Appear pro hac vice *by Robert T. Francisovich*. Filed by Creditors BP Corporation North America Inc., an Indiana corporation, BP Products North America Inc., a Maryland corporation (Odell, Christopher) (Entered: 07/28/2021) |
| 07/28/2021 | 211<br>(1 pg) | Motion to Appear pro hac vice *by Lori B. Leskin*. Filed by Creditors BP Corporation North America Inc., an Indiana corporation, BP Products North America Inc., a Maryland corporation (Odell, Christopher) (Entered: 07/28/2021) |
| 07/28/2021 | 212<br>(18 pgs; 3 docs) | Motion to Assume Lease or Executory Contract *with Sloan Schoyer* Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Shapiro Declaration) (Green, Elizabeth) (Entered: 07/28/2021) |
| 07/28/2021 | 213<br>(1 pg) | Motion to Appear pro hac vice *by Rhonda R. Trotter*. Filed by Creditors BP Corporation North America Inc., an Indiana corporation, BP Products North America Inc., a Maryland corporation (Odell, Christopher) (Entered: 07/28/2021) |
| 07/28/2021 | 214<br>(3 pgs) | BNC Certificate of Mailing. (Related document(s):181 Order on Motion to Appear pro hac vice) No. of Notices: 10. Notice Date 07/28/2021. (Admin.) (Entered: 07/28/2021) |

| | | |
|---|---|---|
| 07/28/2021 | 🔵 215<br>(3 pgs) | BNC Certificate of Mailing. (Related document(s):182 Order on Motion to Appear pro hac vice) No. of Notices: 10. Notice Date 07/28/2021. (Admin.) (Entered: 07/28/2021) |
| 07/28/2021 | 🔵 216<br>(5 pgs) | BNC Certificate of Mailing. (Related document(s):184 Order on Motion to Appear pro hac vice) No. of Notices: 11. Notice Date 07/28/2021. (Admin.) (Entered: 07/28/2021) |
| 07/29/2021 | 🔵 217<br>(13 pgs) | Objection *Debtors' Emergency Motion For Entry Of Interim And Final Orders (I) Authorizing The Debtors To Obtain Post-Petition Financing, (II) Authorizing The Debtors To Use Cash Collateral, (III) Granting Liens And Providing Claims With Superpriority Administrative Expense Status, (IV) Approving Adequate Protection To Pre-Petition Secured Creditors, (V) Modifying The Automatic Stay, And (VI) Scheduling A Final Hearing (I) Motion to Enter Into Consulting Agreement and (II) Motion to Use Cash Collateral* (related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)). Filed by AltairStrickland V.I. LLC (Slusher, Vincent) (Entered: 07/29/2021) |
| 07/29/2021 | 🔵 218<br>(4 pgs) | Exhibit List, Witness List (Filed By Ad Hoc Group of Terminal Lenders ). (Flores, Henry) (Entered: 07/29/2021) |
| 07/29/2021 | 🔵 219<br>(3 pgs) | Notice of Appearance and Request for Notice Filed by Melissa E Valdez Filed by on behalf of CITY OF LA PORTE, LA PORTE INDEPENDENT SCHOOL DISTRICT, AND GALENA INDEPENDENT SCHOOL DISTRICT (Valdez, Melissa) (Entered: 07/29/2021) |
| 07/29/2021 | 🔵 220<br>(11 pgs; 9 docs) | Witness List, Exhibit List (Filed By Limetree Bay Terminals, LLC ). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8) (Davidson, Timothy) (Entered: 07/29/2021) |
| 07/29/2021 | 🔵 221<br>(53 pgs; 3 docs) | Exhibit List, Witness List (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit 1 - First Day Declaration of Mark Shapiro # 2 Exhibit 2 - Declaration of Mark Shapiro in Support of Bid Procedures Motion) (Green, Elizabeth) (Entered: 07/29/2021) |
| 07/29/2021 | 🔵 222<br>(4 pgs) | Notice of Appearance and Request for Notice Filed by Michael D Warner Filed by on behalf of Official Committee of Unsecured Creditors (Warner, Michael) (Entered: 07/29/2021) |
| | 🔵 223<br>(1 pg) | Motion to Appear pro hac vice *for Robert J. Feinstein*. Filed by Creditor Committee Official Committee of Unsecured |

| | | |
|---|---|---|
| 07/29/2021 | | Creditors (Warner, Michael) (Entered: 07/29/2021) |
| 07/29/2021 | 224<br>(1 pg) | Motion to Appear pro hac vice *for Jeffrey N. Pomerantz*. Filed by Creditor Committee Official Committee of Unsecured Creditors (Warner, Michael) (Entered: 07/29/2021) |
| 07/29/2021 | 225<br>(1 pg) | Motion to Appear pro hac vice *for Shirley S. Cho*. Filed by Creditor Committee Official Committee of Unsecured Creditors (Warner, Michael) (Entered: 07/29/2021) |
| 07/29/2021 | 226<br>(3 pgs) | Witness List, Exhibit List (Filed By Official Committee of Unsecured Creditors ).(Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date), 104 Order Setting Hearing, 191 Emergency Motion (with hearing date), Motion for Sale of Property) (Warner, Michael) (Entered: 07/29/2021) |
| 07/29/2021 | 227<br>(3 pgs) | Exhibit List, Witness List (Filed By J. Aron & Company LLC ). (Prince, James) (Entered: 07/29/2021) |
| 07/29/2021 | 228<br>(3 pgs) | Notice of Appearance and Request for Notice Filed by Lee J Rohn Filed by on behalf of Alvina Jean Marie Illarraza, Sylvia Browne, Esther Clifford, Sirdina Issac-Joseph, Pamela Colon, Beecher Cotton (Rohn, Lee) (Entered: 07/29/2021) |
| 07/29/2021 | 229<br>(3 pgs) | Notice of Appearance and Request for Notice Filed by J Mark Chevallier Filed by on behalf of Dresser-Rand Co. (Chevallier, J) (Entered: 07/29/2021) |
| 07/29/2021 | 230<br>(2 pgs) | Witness List, Exhibit List (Filed By Universal Plant Services (VI), LLC ). (Quejada, Maegan) (Entered: 07/29/2021) |
| 07/29/2021 | 231<br>(3 pgs) | Exhibit List, Witness List (Filed By Goldman Sachs Bank USA ). (O'Neal, Sean) (Entered: 07/29/2021) |
| 07/29/2021 | 232<br>(4 pgs) | Witness List, Exhibit List (Filed By AltairStrickland V.I. LLC ).(Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date), 104 Order Setting Hearing) (Slusher, Vincent) (Entered: 07/29/2021) |
| 07/29/2021 | 233<br>(1 pg) | Motion to Appear pro hac vice *Arlene N. Gelman*. Filed by Creditor Dresser-Rand Co. (Chevallier, J) (Entered: 07/29/2021) |
| 07/29/2021 | 234<br>(6 pgs) | Debtors Master Service List (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 07/29/2021) |

| 07/29/2021 | 235 (4 pgs) | Witness List, Exhibit List (Filed By Ad Hoc Term Lender Group ). (Brimmage, Marty) (Entered: 07/29/2021) |
|---|---|---|
| 07/30/2021 | 236 (2 pgs) | Witness List (Filed By Excel Construction and Maintenance V.I., Inc. ).(Related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property) (Rubin, David) (Entered: 07/30/2021) |
| 07/30/2021 | 237 (110 pgs) | Witness List, Exhibit List (Filed By AltairStrickland V.I. LLC ).(Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date), 104 Order Setting Hearing, 232 Witness List, Exhibit List) (Slusher, Vincent) (Entered: 07/30/2021) |
| 07/30/2021 | 238 (12 pgs; 2 docs) | Objection (related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)). Filed by Universal Plant Services (VI), LLC (Attachments: # 1 Exhibit A) (McFaul, Duston) (Entered: 07/30/2021) |
| 07/30/2021 | 239 (4 pgs; 2 docs) | Witness List (Filed By Universal Plant Services (VI), LLC ).(Related document(s):230 Witness List, Exhibit List) (Attachments: # 1 Exhibit A) (McFaul, Duston) (Entered: 07/30/2021) |
| 07/30/2021 | 240 (2 pgs) | Witness List (Filed By Excel Construction and Maintenance V.I., Inc. ).(Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date), 191 Emergency Motion (with hearing date), Motion for Sale of Property) (Rubin, David) (Entered: 07/30/2021) |
| 07/30/2021 | 241 (22 pgs; 2 docs) | Notice *John Crane, Inc.'s Notice of Reclamation Demand*. Filed by John Crane, Inc. (Attachments: # 1 Exhibit A - Reclamation Demand Letter) (Humeniuk, Stephen) (Entered: 07/30/2021) |
| 07/30/2021 | 242 (4 pgs) | Witness List, Exhibit List (Filed By AMP Capital Investors, Ltd. ). (Spears, Trevor) (Entered: 07/30/2021) |
| 07/30/2021 | 243 (7 pgs) | Objection *(Limited)* (related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)). Filed by United States of America (Kincheloe, Richard) (Entered: 07/30/2021) |
| 07/30/2021 | 244 (50 pgs; 3 docs) | Exhibit List, Witness List (Filed By Limitree Bay Services, LLC ).(Related document(s):221 Exhibit List, Witness List) (Attachments: # 1 Exhibit 1 - Declaration of Mark Shapiro # 2 Exhibit 2 - Budget) (Green, Elizabeth) (Entered: 07/30/2021) |
| 07/30/2021 | 245 (3 pgs) | Agenda for Hearing on 8/2/2021 (Filed By Limitree Bay Services, LLC ). (Green, Elizabeth) (Entered: 07/30/2021) |

| | | |
|---|---|---|
| 07/30/2021 | 246<br>(3 pgs) | Notice *of Rescheduled Hearing*. (Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date), 191 Emergency Motion (with hearing date), Motion for Sale of Property) Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 07/30/2021) |
| 07/30/2021 | 247<br>(53 pgs; 3 docs) | Application to Employ Jefferies LLC as Investment Banker. Objections/Request for Hearing Due in 21 days. Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order with Engagement Letter # 2 Exhibit B - O'Hara Declaration) (Rose, Jorian) (Entered: 07/30/2021) |
| 07/30/2021 | 248<br>(1 pg) | Order Granting Motion To Appear pro hac vice - Michael A. Shiner (Related Doc # 186) Signed on 7/30/2021. (emiller) (Entered: 07/30/2021) |
| 07/30/2021 | 249<br>(1 pg) | Order Granting Motion To Appear pro hac vice - Dale E. Barney (Related Doc # 188) Signed on 7/30/2021. (emiller) (Entered: 07/30/2021) |
| 07/30/2021 | 250<br>(1 pg) | Order Granting Motion To Appear pro hac vice - Samuel S. Ory (Related Doc # 193) Signed on 7/30/2021. (emiller) (Entered: 07/30/2021) |
| 07/30/2021 | 251<br>(1 pg) | Motion to Appear pro hac vice *of Joel M. Walker*. Filed by Creditors Sylvia Browne, Esther Clifford, Pamela Colon, Beecher Cotton, Alvina Jean Marie Illarraza, Sirdina Issac-Joseph (Walker, Joel) (Entered: 07/30/2021) |
| 07/31/2021 | 252<br>(11 pgs) | Response *Objection and Reservation of Rights of Terminal Entities to Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-Petition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (IV) Approving Adequate Protection to Pre-Petition Secured Creditors, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* (related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)). Filed by Limetree Bay Terminals, LLC (Davidson, Timothy) (Entered: 07/31/2021) |
| 07/31/2021 | 253<br>(12 pgs) | Response - *Joinder to the Terminal Entities Objection* (related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)). Filed by Ad Hoc Group of Terminal Lenders (Flores, Henry) (Entered: 07/31/2021) |
| | 254<br>(6 pgs; 2 docs) | Notice *of Filing Proposed Order for Hearing on August 2, 2021*. (Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)) Filed by |

| 08/01/2021 | | Limetree Bay Services, LLC (Attachments: # 1 Exhibit 1 - Proposed Order for August 2 Hearing) (Green, Elizabeth) (Entered: 08/01/2021) |
|---|---|---|
| 08/01/2021 | 255 (1 pg) | Order Granting Motion To Appear pro hac vice - Joel M. Walker (Related Doc # 251) Signed on 8/1/2021. (emiller) (Entered: 08/01/2021) |
| 08/01/2021 | 256 (1 pg) | Order Granting Motion To Appear pro hac vice - James C. Thoman (Related Doc # 201) Signed on 8/1/2021. (emiller) (Entered: 08/01/2021) |
| 08/01/2021 | 257 (1 pg) | Order Granting Motion To Appear pro hac vice - Rudy J. Cerone (Related Doc # 202) Signed on 8/1/2021. (emiller) (Entered: 08/01/2021) |
| 08/01/2021 | 258 (1 pg) | Order Granting Motion To Appear pro hac vice - Joseph N. Argentina, Jr. (Related Doc # 205) Signed on 8/1/2021. (emiller) (Entered: 08/01/2021) |
| 08/01/2021 | 259 (1 pg) | Order Granting Motion To Appear pro hac vice - Robert J. Francisovich (Related Doc # 210) Signed on 8/1/2021. (emiller) (Entered: 08/01/2021) |
| 08/01/2021 | 260 (1 pg) | Order Granting Motion To Appear pro hac vice - Lori B. Leskin (Related Doc # 211) Signed on 8/1/2021. (emiller) (Entered: 08/01/2021) |
| 08/01/2021 | 261 (1 pg) | Order Granting Motion To Appear pro hac vice - Rhonda R. Trotter (Related Doc # 213) Signed on 8/1/2021. (emiller) (Entered: 08/01/2021) |
| 08/01/2021 | 262 (1 pg) | Order Granting Motion To Appear pro hac vice - Robert J. Feinstein (Related Doc # 223) Signed on 8/1/2021. (emiller) (Entered: 08/01/2021) |
| 08/01/2021 | 263 (1 pg) | Order Granting Motion To Appear pro hac vice - Jeffrey N. Pomerantz (Related Doc # 224) Signed on 8/1/2021. (emiller) (Entered: 08/01/2021) |
| 08/01/2021 | 264 (1 pg) | Order Granting Motion To Appear pro hac vice - Shirley S. Cho (Related Doc # 225) Signed on 8/1/2021. (emiller) (Entered: 08/01/2021) |
| 08/01/2021 | 265 (1 pg) | Order Granting Motion To Appear pro hac vice - Arlene N. Gelman (Related Doc # 233) Signed on 8/1/2021. (emiller) (Entered: 08/01/2021) |
| | 266 (3 pgs) | Notice of Appearance and Request for Notice Filed by Rudy J Cerone Filed by on behalf of Analytic Stress |

| 08/02/2021 | | Relieving Inc. (Cerone, Rudy) (Entered: 08/02/2021) |
|---|---|---|
| 08/02/2021 | 🔘 267 (3 pgs) | Notice of Appearance and Request for Notice Filed by Simon W Hendershot III Filed by on behalf of VIVOT EQUIPMENT CORPORATION (Hendershot, Simon) (Entered: 08/02/2021) |
| 08/02/2021 | 🔘 268 (4 pgs) | Notice *Verified Rule 2019*. Filed by Complan USA, LLC, Worley Pan-American Corp., Total Safety Virgin Islands, LLC (Mintz, Mark) (Entered: 08/02/2021) |
| 08/02/2021 | 🔘 doc (8 pgs; 2 docs) | Courtroom Minutes. Time Hearing Held: 3:30 PM. Appearances: see attached (Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)) For the reasons stated on the record, the Court has approved the bridge order regarding the use of cash collateral. Order to be entered. (aalo) Additional attachment(s) added on 8/2/2021 (aalo). Additional attachment(s) added on 8/2/2021 (aalo). (Entered: 08/02/2021) |
| 08/02/2021 | 🔘 | Certificate of Email Notice. Contacted Elizabeth Green. Movant to notice all interested parties and file a certificate of service with the court (Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date), 191 Emergency Motion (with hearing date), Motion for Sale of Property) **Hearing scheduled for 8/6/2021 at 10:30 AM by telephone and video conference.** (aalo) (Entered: 08/02/2021) |
| 08/02/2021 | 🔘 269 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Limetree Bay Terminals, LLC. This is to order a transcript of Hearing 8.2.21 before Judge David R. Jones. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By Limetree Bay Terminals, LLC ). (Guffy, Philip) Electronically forwarded to Veritext Legal Solutions on 08/02/2021. Estimated completion date: 08/03/2021. Modified on 8/2/2021 (RachelWillborg). (Entered: 08/02/2021) |
| 08/02/2021 | 🔘 270 (1 pg) | 🔊 PDF with attached Audio File. Court Date & Time [ 8/2/2021 3:29:27 PM ]. File Size [ 17871 KB ]. Run Time [ 00:37:14 ]. (admin). (Entered: 08/02/2021) |
| 08/02/2021 | 🔘 271 (4 pgs) | Second Interim Order Signed on 8/2/2021 (Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)) **Final Hearing scheduled for 8/6/2021 at 10:30 AM by telephone and video conference.** (aalo) (Entered: 08/02/2021) |
| 08/02/2021 | 🔘 272 (9 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):195 Declaration) (Ordaz, Steven) (Entered: |

| 08/02/2021 | | 08/02/2021) |
|---|---|---|
| 08/02/2021 | 273 (10 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):199 Motion to Assume/Reject, 200 Motion to Assume/Reject, 206 Motion to Assume Lease or Executory Contract, 207 Motion to Assume Lease or Executory Contract, 208 Motion to Assume Lease or Executory Contract, 209 Motion to Assume Lease or Executory Contract, 212 Motion to Assume Lease or Executory Contract) (Ordaz, Steven) (Entered: 08/02/2021) |
| 08/02/2021 | 274 (17 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):244 Exhibit List, Witness List, 245 Agenda, 246 Notice, 247 Application to Employ) (Ordaz, Steven) (Entered: 08/02/2021) |
| 08/03/2021 | 275 (3 pgs) | Notice of Appearance and Request for Notice Filed by Elizabeth M Guffy Filed by on behalf of Elite Turnaround Specialists, Ltd. (Guffy, Elizabeth) (Entered: 08/03/2021) |
| 08/03/2021 | 276 (4 pgs) | Notice *OF LIEN PURSUANT TO SECTION 546(B) OF THE BANKRUPTCY CODE*. Filed by HKA Enterprises, LLC ("HKA") (Rochester, Lacey) (Entered: 08/03/2021) |
| 08/03/2021 | 277 (1 pg) | Motion to Appear pro hac vice *for Joseph M. Esmont*. Filed by Debtor Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 08/03/2021) |
| 08/04/2021 | 278 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Elizabeth A. Green. This is to order a transcript of Hearing on 8/2/2021 before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) Copy Request Electronically Forwarded to Original Transcription Company - Veritext Legal Solutions on 8/4/2021. Estimated Completion Date: 8/5/2021. Modified on 8/4/2021 (SamanthaWarda). (Entered: 08/04/2021) |
| 08/04/2021 | 279 (3 pgs) | Exhibit List, Witness List (Filed By Official Committee of Unsecured Creditors ).(Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date), 191 Emergency Motion (with hearing date), Motion for Sale of Property) (Golden, Steven) (Entered: 08/04/2021) |
| 08/04/2021 | 280 (4 pgs) | Witness List, Exhibit List (Filed By AMP Capital Investors, Ltd. ). (Spears, Trevor) (Entered: 08/04/2021) |
| | 281 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Trevor Spears, Esq.. This is to order a transcript of Hearing on August 2, 2021 before Judge David R. Jones. |

| | | |
|---|---|---|
| 08/04/2021 | | Court Reporter/Transcriber: Veritext Legal Solutions (Filed By AMP Capital Investors, Ltd. ). (Spears, Trevor) Copy request was electronically forwarded to Veritext on 8-4-2021. Estimated completion date: 8-5-2021 Modified on 8/4/2021 (SamanthaWarda). (Entered: 08/04/2021) |
| 08/04/2021 | 282 (48 pgs; 2 docs) | Opposition Emergency Motion *Objection to Emergency Motion* Filed by Creditor VIVOT EQUIPMENT CORPORATION (Attachments: # 1 Exhibit Exhibit A) (Hendershot, Simon) (Entered: 08/04/2021) |
| 08/04/2021 | 283 (3 pgs) | Exhibit List, Witness List (Filed By Ad Hoc Group of Terminal Lenders ). (Flores, Henry) (Entered: 08/04/2021) |
| 08/04/2021 | 284 (3 pgs) | Exhibit List, Witness List (Filed By J. Aron & Company LLC ). (Newcomb, Christopher) (Entered: 08/04/2021) |
| 08/04/2021 | 285 (4 pgs; 2 docs) | Witness List, Exhibit List (Filed By Universal Plant Services (VI), LLC ). (Attachments: # 1 Exhibit A) (McFaul, Duston) (Entered: 08/04/2021) |
| 08/04/2021 | 286 (164 pgs; 10 docs) | Exhibit List, Witness List (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit 1 - First Day Declaration # 2 Exhibit 2 - Budget # 3 Exhibit 3 - Terminal Services Agreement # 4 Exhibit 4 - Terminal Services Agreement # 5 Exhibit 5 - Bailee's Letter # 6 Exhibit 6 - Shared Services Systems Agreement # 7 Exhibit 7 - Monetization Master Agreement # 8 Exhibit 8 - DIP Credit Agreement # 9 Exhibit 9 - Bid Procedures Declaration) (Green, Elizabeth) (Entered: 08/04/2021) |
| 08/04/2021 | 287 (4 pgs) | Exhibit List, Witness List (Filed By Ad Hoc Term Lender Group ).(Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date), 191 Emergency Motion (with hearing date), Motion for Sale of Property) (Brimmage, Marty) (Entered: 08/04/2021) |
| 08/04/2021 | 288 (3 pgs) | Notice of Appearance and Request for Notice Filed by Simon W Hendershot III Filed by on behalf of Virgin Islands Industrial LLC (Hendershot, Simon) (Entered: 08/04/2021) |
| 08/04/2021 | 289 (61 pgs; 2 docs) | Opposition Emergency Motion *Objection to Emergency Motion for Entry of Interim and Final Orders* Filed by Creditor Virgin Islands Industrial LLC (Attachments: # 1 Exhibit Exhibit A) (Hendershot, Simon) (Entered: 08/04/2021) |
| | 290 (5 pgs; 2 docs) | Notice *of Filing Proposed Budget*. (Related document(s):286 Exhibit List, Witness List) Filed by Limetree Bay Services, LLC (Attachments: # 1 Exhibit 1 - Proposed Budget) (Green, |

| | | |
|---|---|---|
| 08/04/2021 | | Elizabeth) (Entered: 08/04/2021) |
| 08/04/2021 | 🔵 291 (3 pgs) | Exhibit List, Witness List (Filed By Goldman Sachs Bank USA ).(Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date), 191 Emergency Motion (with hearing date), Motion for Sale of Property) (O'Neal, Sean) (Entered: 08/04/2021) |
| 08/04/2021 | 🔵 292 (2 pgs) | Notice of Appearance and Request for Notice Filed by Shanon Jude Carson Filed by on behalf of Sylvia Browne, Esther Clifford, Pamela Colon, Beecher Cotton, Alvina Jean Marie Illarraza, Sirdina Issac-Joseph (Carson, Shanon) (Entered: 08/04/2021) |
| 08/04/2021 | 🔒 🔵 293 (30 pgs) | Transcript RE: hearing held on 8/2/21 before Judge DAVID R. JONES. Transcript is available for viewing in the Clerk's Office. Filed by Transcript access will be restricted through 11/2/2021. (VeritextLegalSolutions) (Entered: 08/04/2021) |
| 08/04/2021 | 🔵 294 (1 pg) | Order Granting Motion To Appear pro hac vice - Joseph M. Esmont (Related Doc # 277) Signed on 8/4/2021. (emiller) (Entered: 08/04/2021) |
| 08/04/2021 | 🔵 295 (3 pgs) | BNC Certificate of Mailing. (Related document(s):248 Order on Motion to Appear pro hac vice) No. of Notices: 18. Notice Date 08/04/2021. (Admin.) (Entered: 08/04/2021) |
| 08/04/2021 | 🔵 296 (3 pgs) | BNC Certificate of Mailing. (Related document(s):249 Order on Motion to Appear pro hac vice) No. of Notices: 18. Notice Date 08/04/2021. (Admin.) (Entered: 08/04/2021) |
| 08/04/2021 | 🔵 297 (3 pgs) | BNC Certificate of Mailing. (Related document(s):250 Order on Motion to Appear pro hac vice) No. of Notices: 18. Notice Date 08/04/2021. (Admin.) (Entered: 08/04/2021) |
| 08/04/2021 | 🔵 298 (3 pgs) | BNC Certificate of Mailing. (Related document(s):255 Order on Motion to Appear pro hac vice) No. of Notices: 18. Notice Date 08/04/2021. (Admin.) (Entered: 08/04/2021) |
| 08/04/2021 | 🔵 299 (3 pgs) | BNC Certificate of Mailing. (Related document(s):256 Order on Motion to Appear pro hac vice) No. of Notices: 18. Notice Date 08/04/2021. (Admin.) (Entered: 08/04/2021) |
| 08/04/2021 | 🔵 300 (3 pgs) | BNC Certificate of Mailing. (Related document(s):257 Order on Motion to Appear pro hac vice) No. of Notices: 18. Notice Date 08/04/2021. (Admin.) (Entered: 08/04/2021) |
| 08/04/2021 | 🔵 301 (3 pgs) | BNC Certificate of Mailing. (Related document(s):258 Order on Motion to Appear pro hac vice) No. of Notices: 18. Notice Date 08/04/2021. (Admin.) (Entered: 08/04/2021) |

| | | |
|---|---|---|
| 08/04/2021 | 🌐 302 (8 pgs) | BNC Certificate of Mailing. (Related document(s):259 Order on Motion to Appear pro hac vice) No. of Notices: 18. Notice Date 08/04/2021. (Admin.) (Entered: 08/04/2021) |
| 08/04/2021 | 🌐 303 (3 pgs) | BNC Certificate of Mailing. (Related document(s):260 Order on Motion to Appear pro hac vice) No. of Notices: 18. Notice Date 08/04/2021. (Admin.) (Entered: 08/04/2021) |
| 08/04/2021 | 🌐 304 (3 pgs) | BNC Certificate of Mailing. (Related document(s):261 Order on Motion to Appear pro hac vice) No. of Notices: 18. Notice Date 08/04/2021. (Admin.) (Entered: 08/04/2021) |
| 08/04/2021 | 🌐 305 (3 pgs) | BNC Certificate of Mailing. (Related document(s):262 Order on Motion to Appear pro hac vice) No. of Notices: 18. Notice Date 08/04/2021. (Admin.) (Entered: 08/04/2021) |
| 08/04/2021 | 🌐 306 (3 pgs) | BNC Certificate of Mailing. (Related document(s):263 Order on Motion to Appear pro hac vice) No. of Notices: 18. Notice Date 08/04/2021. (Admin.) (Entered: 08/04/2021) |
| 08/04/2021 | 🌐 307 (8 pgs) | BNC Certificate of Mailing. (Related document(s):264 Order on Motion to Appear pro hac vice) No. of Notices: 18. Notice Date 08/04/2021. (Admin.) (Entered: 08/04/2021) |
| 08/04/2021 | 🌐 308 (3 pgs) | BNC Certificate of Mailing. (Related document(s):265 Order on Motion to Appear pro hac vice) No. of Notices: 18. Notice Date 08/04/2021. (Admin.) (Entered: 08/04/2021) |
| 08/04/2021 | 🌐 309 (11 pgs) | BNC Certificate of Mailing. (Related document(s):271 Order Setting Hearing) No. of Notices: 21. Notice Date 08/04/2021. (Admin.) (Entered: 08/04/2021) |
| 08/04/2021 | 🌐 333 (1 pg) | Motion to Appear pro hac vice *(Yohana Manning)*. Filed by Creditor VI Industrial Services, LLC (sgue) (Entered: 08/06/2021) |
| 08/04/2021 | 🌐 334 (1 pg) | Motion to Appear pro hac vice *(Yohana Manning)*. Filed by Creditor Computer Solutions Inc (sgue) (Entered: 08/06/2021) |
| 08/04/2021 | 🌐 335 (1 pg) | Motion to Appear pro hac vice *(Yohana Manning)*. Filed by Creditor WDI USVI LLC (sgue) (Entered: 08/06/2021) |
| 08/05/2021 | 🌐 310 (3 pgs) | Notice *of Maintenance of Lien Pursuant to Section 546(B) of the Bankruptcy Code*. Filed by Excel Construction and Maintenance V.I., Inc. (Rubin, David) (Entered: 08/05/2021) |
| 08/05/2021 | 🌐 311 (1 pg) | Notice of Filing of Official Transcript as to 293 Transcript. Parties notified (Related document(s):293 Transcript) (GabrielleClair) (Entered: 08/05/2021) |

| | | |
|---|---|---|
| 08/05/2021 | 🔵 312<br>(95 pgs; 3 docs) | Exhibit List, Witness List (Filed By VIVOT EQUIPMENT CORPORATION, Virgin Islands Industrial LLC ). (Attachments: # 1 Exhibit Exhibit 1 # 2 Exhibit Exhibit 2) (Hendershot, Simon) (Entered: 08/05/2021) |
| 08/05/2021 | 🔵 313<br>(2 pgs) | Notice *of Reconstituted Board of Managers of the Terminal Entities*. Filed by Limetree Bay Terminals, LLC (Davidson, Timothy) (Entered: 08/05/2021) |
| 08/05/2021 | 🔵 314<br>(5 pgs) | Agenda for Hearing on 8/6/2021 (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 08/05/2021) |
| 08/05/2021 | 🔵 315<br>(11 pgs) | Response *J. Aron & Company LLC's Response and Reservation of Rights with Respect to (a) Objection and Reservation of Rights Filed by Terminal Entities and (b) Joinder Filed by Terminal Lenders to the Debtors' Emergency Motion for Entry of Interim and Final Orders (i) Authorizing the Debtors to Obtain Post-Petition Financing, (ii) Authorizing the Debtors to Use Cash Collateral, (iii) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (iv) Approving Adequate Protection to Pre-Petition Secured Creditors, (v) Modifying the Automatic Stay, and (vi) Scheduling a Final Hearing (REDACTED).* Filed by J. Aron & Company LLC (Newcomb, Christopher) (Entered: 08/05/2021) |
| 08/05/2021 | 🔵 316<br>(14 pgs) | Response *to Objection and Reservation of Rights of Terminal Entities to Debtors Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-Petition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (IV) Approving Adequate Protection to Pre-Petition Secured Creditors, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing and Joinder of Terminal Lenders' Joinder Therein.* Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 08/05/2021) |
| 08/05/2021 | 🔵 317<br>(6 pgs) | Omnibus Response *to Construction Lien Claimants' Objections to DIP Financing*. Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 08/05/2021) |
| 08/05/2021 | 🔵 318<br>(7 pgs; 4 docs) | Exhibit List, Witness List (Filed By J. Aron & Company LLC ). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3) (Newcomb, Christopher) (Entered: 08/05/2021) |
| | 🔵 319<br>(24 pgs; 3 docs) | Motion to Seal *J. Aron & Company LLC's Motion to File Under Seal: (a) The Response to the Terminal Objection and the Joinder, and (b) Exhibits to the Witness and Exhibit List File in Relation to the August 6, 2021 Hearing* Filed by Creditor J. Aron & Company LLC (Attachments: # 1 Exhibit A, Proposed Order # 2 Exhibit B) (Newcomb, Christopher) |

| | | |
|---|---|---|
| 08/05/2021 | | (Entered: 08/05/2021) |
| 08/05/2021 | 🔵 320<br>(11 pgs) | Sealed Document *J. Aron & Company LLC's Response and Reservation of Rights with Respect to (a) Objection and Reservation of Rights Filed by Terminal Entities and (b) Joinder Filed by Terminal Lenders to the Debtors' Emergency Motion for Entry of Interim and Final Orders (i) Authorizing the Debtors to Obtain Post-Petition Financing, (ii) Authorizing the Debtors to Use Cash Collateral, (iii) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (iv) Approving Adequate Protection to Pre-Petition Secured Creditors, (v) Modifying the Automatic Stay, and (vi) Scheduling a Final Hearing* (Filed By J. Aron & Company LLC ). (Newcomb, Christopher) (Entered: 08/05/2021) |
| 08/05/2021 | 🔵 321<br>(142 pgs; 4 docs) | Sealed Document *J. Aron & Company LLC's Amended Exhibit and Witness List for August 6, 2021 Hearing* (Filed By J. Aron & Company LLC ). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3) (Newcomb, Christopher) (Entered: 08/05/2021) |
| 08/05/2021 | 🔵 322<br>(2 pgs) | Notice of Appearance and Request for Notice Filed by Pinnacle Services, LLC (Jennings, Paul) (Entered: 08/05/2021) |
| 08/05/2021 | 🔵 323<br>(3 pgs) | Notice of Appearance and Request for Notice Filed by John D Clayman Filed by on behalf of InServ Field Services USVI, LLC (Clayman, John) (Entered: 08/05/2021) |
| 08/05/2021 | 🔵 324<br>(9 pgs; 2 docs) | Emergency Motion , Motion to Seal *Certain Exhibits for the Hearing on August 6, 2021* Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order) (Parrish, Jimmy) (Entered: 08/05/2021) |
| 08/05/2021 | 🔵 325<br>(4 pgs) | Notice *OF LIEN PURSUANT TO SECTION 546(B) OF THE BANKRUPTCY CODE*. Filed by InServ Field Services USVI, LLC (Clayman, John) (Entered: 08/05/2021) |
| 08/05/2021 | 🔵 326<br>(459 pgs; 7 docs) | Sealed Document *Debtors' and Terminal Entities Joint Confidential Exhibit List for August 6, 2021 Hearing* (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Joint Exhibit 1 # 2 Joint Exhibit 2 # 3 Joint Exhibit 3 # 4 Joint Exhibit 4 # 5 Joint Exhibit 5 # 6 Joint Exhibit 6) (Green, Elizabeth) (Entered: 08/05/2021) |
| 08/05/2021 | 🔵 327<br>(108 pgs) | Objection *of the Official Committee of Unsecured Creditors to Debtors Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-Petition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (IV) Approving* |

| | | |
|---|---|---|
| 08/05/2021 | | *Adequate Protection to the Pre-Petition Secured Creditors, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* (related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)). Filed by Official Committee of Unsecured Creditors (Warner, Michael) (Entered: 08/05/2021) |
| 08/05/2021 | 🔵 328 (6 pgs) | Debtors Master Service List (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 08/05/2021) |
| 08/05/2021 | 🔵 329 (3 pgs) | Notice *of Rescheduled Hearing*. (Related document(s):246 Notice) Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 08/05/2021) |
| 08/05/2021 | 🔵 | Certificate of Telephone Notice. Contacted Elizabeth Green. Movant to notice all interested parties and file a certificate of service with the court (Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date), 191 Emergency Motion (with hearing date), Motion for Sale of Property) **Hearing rescheduled for 8/9/2021 at 03:30 PM by telephone and video conference.** (aalo) (Entered: 08/05/2021) |
| 08/05/2021 | | (private) Deadlines terminated. (aalo) (Entered: 08/05/2021) |
| 08/05/2021 | 🔵 330 (6 pgs) | Objection *(Limited)* (related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property). Filed by United States of America (Kincheloe, Richard) (Entered: 08/05/2021) |
| 08/05/2021 | 🔵 332 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Ordinary (30 days)) by Catherine Hodges. This is to order a transcript of Hearing held on August 2, 2021 before Judge David R. Jones. Court Reporter/Transcriber: Veritext Legal Solutions. (than) Copy request electronically forwarded to Veritext Legal Solutions on 8/9/2021. Estimated completion date: 9/8/2021. Modified on 8/9/2021 (RachelWillborg). (Entered: 08/06/2021) |
| 08/06/2021 | 🔵 331 (6 pgs; 2 docs) | Certificate of No Objection *to Debtors' Motion to Reject Unexpired Lease of Real Property (842 West Sam Houston Parkway North, Houston, Texas 77024)* (Filed By Limetree Bay Services, LLC ).(Related document(s):11 Motion to Reject Lease or Executory Contract) (Attachments: # 1 Exhibit A - Proposed Order) (Green, Elizabeth) (Entered: 08/06/2021) |
| 08/06/2021 | 🔵 336 (3 pgs) | Notice of Appearance and Request for Notice Filed by Lloyd A. Lim Filed by on behalf of Sedgwick Claims Management Services, Inc. (Lim, Lloyd) (Entered: 08/06/2021) |
| | | |

| | | |
|---|---|---|
| 08/06/2021 | 337 (3 pgs) | Notice of Appearance and Request for Notice Filed by Stephen Jacob Humeniuk Filed by on behalf of John Crane, Inc. (Humeniuk, Stephen) (Entered: 08/06/2021) |
| 08/06/2021 | 338 (1 pg) | Motion to Appear pro hac vice *for Brian A. Raynor*. Filed by Creditor John Crane, Inc. (Humeniuk, Stephen) (Entered: 08/06/2021) |
| 08/06/2021 | 339 (5 pgs) | Agenda for Hearing on 8/9/2021 (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 08/06/2021) |
| 08/06/2021 | 368 (2 pgs) | Motion to Appear pro hac vice *David S. Rubin*. Filed by Creditor Excel Construction and Maintenance V.I., Inc. (dnor) (Entered: 08/10/2021) |
| 08/07/2021 | 340 (64 pgs; 2 docs) | Proposed Order RE: *Bid Procedures* (Filed By Limetree Bay Services, LLC ).(Related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property) (Attachments: # 1 Exhibit A - Redlined Version) (Green, Elizabeth) (Entered: 08/07/2021) |
| 08/07/2021 | 341 (3 pgs) | BNC Certificate of Mailing. (Related document(s):311 Notice of Filing of Official Transcript (Form)) No. of Notices: 22. Notice Date 08/07/2021. (Admin.) (Entered: 08/07/2021) |
| 08/07/2021 | 342 (9 pgs) | BNC Certificate of Mailing. (Related document(s):294 Order on Motion to Appear pro hac vice) No. of Notices: 22. Notice Date 08/07/2021. (Admin.) (Entered: 08/07/2021) |
| 08/08/2021 | 343 (4 pgs; 2 docs) | Notice *Filing Proposed Budget*. (Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)) Filed by Limetree Bay Services, LLC (Attachments: # 1 Exhibit 1 - Budget) (Green, Elizabeth) (Entered: 08/08/2021) |
| 08/09/2021 | 344 (5 pgs) | Amended Agenda for Hearing on 8/9/2021 (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 08/09/2021) |
| 08/09/2021 | 345 (1 pg) | Motion to Appear pro hac vice *for David J. Richardson*. Filed by Debtor Limetree Bay Services, LLC (Rose, Jorian) (Entered: 08/09/2021) |
| 08/09/2021 | 346 (11 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):175 Notice, 191 Emergency Motion (with hearing date), Motion for Sale of Property, 246 Notice, 271 Order Setting Hearing) (Ordaz, Steven) (Entered: 08/09/2021) |
| | 347 | Order Granting Debtors' Motion to Reject Unexpired Lease |

| | | |
|---|---|---|
| 08/09/2021 | (3 pgs) | of Real Property (842 West Sam Houston Parkway North, Houston, Texas 77024) (Related Doc # 11) Signed on 8/9/2021. (VrianaPortillo) (Entered: 08/09/2021) |
| 08/09/2021 | 348 (10 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):339 Agenda) (Ordaz, Steven) (Entered: 08/09/2021) |
| 08/09/2021 | 349 (5 pgs) | Supplemental Response *Supplemental Objection of the Terminal Entities to Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (IV) Approving Adequate Protection to Pre-Petition Secured Creditors, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* (related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)). Filed by Limetree Bay Terminals, LLC (Davidson, Timothy) (Entered: 08/09/2021) |
| 08/09/2021 | 350 (10 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):286 Exhibit List, Witness List, 314 Agenda, 316 Response, 317 Response) (Ordaz, Steven) (Entered: 08/09/2021) |
| 08/09/2021 | 351 (10 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):324 Emergency Motion, Motion to Seal, 329 Notice) (Ordaz, Steven) (Entered: 08/09/2021) |
| 08/09/2021 | 352 (9 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):344 Agenda) (Ordaz, Steven) (Entered: 08/09/2021) |
| 08/09/2021 | 353 (3 pgs) | Notice *of Rescheduled Hearing*. (Related document(s):172 Motion for Relief From Stay) Filed by Crowley Caribbean Services, LLC (Liggins, Demetra) (Entered: 08/09/2021) |
| 08/09/2021 | 354 | Courtroom Minutes. Time Hearing Held: 3:30 PM. Appearances: see attached. (Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date), 191 Emergency Motion (with hearing date), Motion for Sale of Property). For the reasons stated on the record, todays hearing on cash collateral has been continued to August 10, 20201 at 1:00 PM by telephone and video conference. (VrianaPortillo) (Entered: 08/09/2021) |
| 08/09/2021 | 355 (5 pgs; 2 docs) | Notice *of Reservation of Rights Letter under DIP Financing Documents by 405 Sentinel LLC*. Filed by 405 Sentinel LLC (Attachments: # 1 Exhibit Exhibit A) (Brookner, Jason) (Entered: 08/09/2021) |

| | | |
|---|---|---|
| 08/09/2021 | 🔵 356<br>(8 pgs; 2 docs) | Second Motion to Extend Deadline to File Schedules or Provide Required Information , Emergency Motion Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order) (Green, Elizabeth) (Entered: 08/09/2021) |
| 08/09/2021 | 🔵 357<br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Limetree Bay Terminals, LLC. This is to order a transcript of hearing on 8/9/2021 before Judge David R. Jones. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By Limetree Bay Terminals, LLC ). (Guffy, Philip) Electronically Forwarded to Veritext on 8/11/2021. Estimated Completion Date: 8/12/2021. Modified on 8/11/2021 (SamanthaWarda). (Entered: 08/09/2021) |
| 08/10/2021 | 🔵 358<br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Elizabeth A. Green. This is to order a transcript of Hearing on August 9, 2021 before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) Forwarded to Initial Transcriber - Veritext on 8/11/2021. Estimated Completion Date: 8/12/2021 Modified on 8/11/2021 (SamanthaWarda). (Entered: 08/10/2021) |
| 08/10/2021 | 🔵 359<br>(2 pgs) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Jason S. Brookner. This is to order a transcript of hearing on 8/9/2021 before Judge David R. Jones. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By Arena Investors, LP ). (Brookner, Jason) Forwarded Copy Request to Veritext on 8/11/2021. Estimated Completion Date: 8/12/2021. Modified on 8/11/2021 (SamanthaWarda). (Entered: 08/10/2021) |
| 08/10/2021 | 🔵 360<br>(3 pgs) | Notice *of Rescheduled Hearing*. (Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date), 191 Emergency Motion (with hearing date), Motion for Sale of Property, 354 Courtroom Minutes) Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 08/10/2021) |
| 08/10/2021 | 🔵 361<br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by J.R. Herz / J. Aron. This is to order a transcript of Hearing 8.9.2021 before Judge David R. Jones. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By J. Aron & Company LLC ). (Newcomb, Christopher) Modified on 8/11/2021 Forwarded Copy Request to Veritext on 8/11/2021. Estimated Completion Date: 8/12/2021 (SamanthaWarda). (Entered: 08/10/2021) |
| | 🔵 362<br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Trevor Spears, Esq.. This is to order a transcript of Hearing on August 9, 2021 before Judge David R. Jones. |

| | | |
|---|---|---|
| 08/10/2021 | | Court Reporter/Transcriber: Veritext Legal Solutions (Filed By AMP Capital Investors, Ltd. ). (Spears, Trevor) Forwarded Copy Request to Veritext on 8/11/2021. Estimated Completion Date: 8/12/2021. Modified on 8/11/2021 (SamanthaWarda). (Entered: 08/10/2021) |
| 08/10/2021 | 🌑 | Certificate of Email Notice. By agreement of all parties, the hearing set for 8/10/2021 has been adjourned. Movant to notice all interested parties and file a certificate of service with the court (Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date), 191 Emergency Motion (with hearing date), Motion for Sale of Property) **Hearing rescheduled for 8/11/2021 at 01:00 PM by telephone and video conference.** (aalo) (Entered: 08/10/2021) |
| 08/10/2021 | | (private) Deadlines terminated. (aalo) (Entered: 08/10/2021) |
| 08/10/2021 | 🌑 363 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Marty L. Brimmage, Jr.. This is to order a transcript of Hearing on August 2, 2021 before Judge David R. Jones. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By Ad Hoc Term Lender Group ). (Brimmage, Marty) Copy request electronically forwarded to Veritext Legal Solutions on 8/11/2021. Estimated date of completion: 8/12/2021. Modified on 8/11/2021 (RachelWillborg). (Entered: 08/10/2021) |
| 08/10/2021 | 🌑 364 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Marty L. Brimmage, Jr.. This is to order a transcript of Hearing on August 9, 2021 before Judge David R. Jones. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By Ad Hoc Term Lender Group ). (Brimmage, Marty) Forwarded Copy Request to Veritext on 8/11/2021. Estimated Completion Date: 8/12/2021 Modified on 8/11/2021 (SamanthaWarda). (Entered: 08/10/2021) |
| 08/10/2021 | 🌑 365 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Christopher Odell. This is to order a transcript of Hearing on August 9, 2021 before Judge David R. Jones. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By BP Corporation North America Inc., an Indiana corporation, BP Products North America Inc., a Maryland corporation). (Odell, Christopher) Forwarded Copy Request to Veritext on 8/11/2021. Estimated Completion Date: 8/12/2021. Modified on 8/11/2021 (SamanthaWarda). (Entered: 08/10/2021) |
| 08/10/2021 | 🌑 366 (2 pgs) | Notice of Appearance and Request for Notice Filed by Donald K Ludman Filed by on behalf of SAP America, Inc. (Ludman, Donald) (Entered: 08/10/2021) |
| | 🌑 367 | Motion to Appear pro hac vice *for Donald K. Ludman,* |

| | | |
|---|---|---|
| 08/10/2021 | (1 pg) | *Esquire*. Filed by Creditor SAP America, Inc. (Ludman, Donald) (Entered: 08/10/2021) |
| 08/11/2021 | 369<br>(4 pgs) | Response / *Joinder of Total Safety Virgin Islands, LLC in the Objection of the Official Committee of Unsecured Creditors to Debtors Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-petition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Claims with Superpriority Administrative Status, (IV) Approving Adequate Protection to Pre-petition Secured Creditors, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* (related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)). Filed by Total Safety Virgin Islands, LLC (Mintz, Mark) (Entered: 08/11/2021) |
| 08/11/2021 | 370<br>(1 pg) | Motion to Appear pro hac vice *by John Mills*. Filed by Creditors Total Safety Virgin Islands, LLC, Worley Pan-American Corp. (Mintz, Mark) (Entered: 08/11/2021) |
| 08/11/2021 | 371<br>(1 pg) | Order Granting Motion To Appear pro hac vice - Yohana Manning (Related Doc # 333) Signed on 8/11/2021. (emiller) (Entered: 08/11/2021) |
| 08/11/2021 | 372<br>(1 pg) | Order Granting Motion To Appear pro hac vice - Yohana Manning (Related Doc # 334) Signed on 8/11/2021. (emiller) (Entered: 08/11/2021) |
| 08/11/2021 | 373<br>(1 pg) | Order Granting Motion To Appear pro hac vice - Yohana Manning (Related Doc # 335) Signed on 8/11/2021. (emiller) (Entered: 08/11/2021) |
| 08/11/2021 | 374<br>(1 pg) | Order Granting Motion To Appear pro hac vice - Brian A. Raynor (Related Doc # 338) Signed on 8/11/2021. (emiller) (Entered: 08/11/2021) |
| 08/11/2021 | 375<br>(1 pg) | Order Granting Motion To Appear pro hac vice - David J. Richardson (Related Doc # 345) Signed on 8/11/2021. (emiller) (Entered: 08/11/2021) |
| 08/11/2021 | 376<br>(1 pg) | Order Granting Motion To Appear pro hac vice - Donald K. Ludman (Related Doc # 367) Signed on 8/11/2021. (emiller) (Entered: 08/11/2021) |
| 08/11/2021 | 377<br>(2 pgs) | Order Granting Motion To Appear pro hac vice - David S. Rubin (Related Doc # 368) Signed on 8/11/2021. (emiller) (Entered: 08/11/2021) |
| | 378<br>(1 pg) | Order Granting Motion To Appear pro hac vice - John Mills (Related Doc # 370) Signed on 8/11/2021. (emiller |

| 08/11/2021 | | (Entered: 08/11/2021) |
|---|---|---|
| 08/11/2021 | 🌐 379 (2 pgs) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Simon W. Hendershot. This is to order a transcript of Entire Hearing 8/9/2021 before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By VIVOT EQUIPMENT CORPORATION ). (Hendershot, Simon) Forwarded Copy Request to Initial Transcriber - Veritext on 8/11/2021. Estimated Completion Date: 8/12/2021 Modified on 8/11/2021 (SamanthaWarda). (Entered: 08/11/2021) |
| 08/11/2021 | 🌐 | Certificate of Telephone Notice. At the request of the Debtor, today's hearing time has been moved back. Movant to notice all interested parties and file a certificate of service with the court (Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date), 191 Emergency Motion (with hearing date), Motion for Sale of Property) Hearing rescheduled for 8/11/2021 at **02:00 PM** by telephone and video conference. (aalo) (Entered: 08/11/2021) |
| 08/11/2021 | 🌐 380 (3 pgs) | Notice *of Rescheduled Hearing from 1:00 p.m. to 2:00 p.m. on August 11, 2021*. (Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date), 191 Emergency Motion (with hearing date), Motion for Sale of Property) Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 08/11/2021) |
| 08/11/2021 | 🌐 381 (66 pgs; 2 docs) | Proposed Order RE: *Bid Procedures* (Filed By Limetree Bay Services, LLC ).(Related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property) (Attachments: # 1 Exhibit A - Redline Version) (Green, Elizabeth) (Entered: 08/11/2021) |
| 08/11/2021 | 🌐 382 (5 pgs; 2 docs) | Notice *of Filing Proposed Budget*. (Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)) Filed by Limetree Bay Services, LLC (Attachments: # 1 Exhibit 1 - Proposed Budget) (Green, Elizabeth) (Entered: 08/11/2021) |
| 08/11/2021 | 🌐 383 (28 pgs; 2 docs) | Notice *of Filing Proposed Third Interim Order on DIP and Cash Collateral Motion*. (Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)) Filed by Limetree Bay Services, LLC (Attachments: # 1 Proposed Third Interim Order on DIP and Cash Collateral Motion) (Green, Elizabeth) (Entered: 08/11/2021) |
| 08/11/2021 | 🌐 384 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by J.. Aron, J.R. Herz. This is to order a transcript of Hearing, 8/11/2021 before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By J. Aron & Company LLC ). (Newcomb, Christopher) |

| 08/11/2021 | | Electronically forwarded to Judicial Transcribers of Texas on 8/11/2021. Estimated date of completion: 8/12/2021. Modified on 8/11/2021 (RachelWillborg). (Entered: 08/11/2021) |
|---|---|---|
| 08/11/2021 | 385 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Limetree Bay Terminals, LLC. This is to order a transcript of hearing on 8/11/2021 before Judge David R. Jones. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By Limetree Bay Terminals, LLC ). (Guffy, Philip) Copy request forwarded to Judicial Transcribers of Texas on 8/12/2021. Estimated date of completion: 8/13/2021. Modified on 8/12/2021 (RachelWillborg). (Entered: 08/11/2021) |
| 08/11/2021 | 386 (2 pgs) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Jason S. Brookner. This is to order a transcript of hearing on 8/11/2021 before Judge David R. Jones. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By Arena Investors, LP ). (Brookner, Jason) Copy request electronically forwarded to Judicial Transcribers of Texas on 8/12/2021. Estimated date of completion: 8/13/2021. Modified on 8/12/2021 (RachelWillborg). (Entered: 08/11/2021) |
| 08/11/2021 | 387 (8 pgs) | Courtroom Minutes. Time Hearing Held: 2:00 PM. Appearances: SEE ATTACHED. (Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date), 191 Emergency Motion (with hearing date), Motion for Sale of Property) For the reasons stated on the record, the Court approved the continued use of cash collateral on an interim basis. The revised proposed order submitted at docket no. 383 was signed on the record. **A continued hearing on the motion is scheduled for 08/31/2021 at 9:30 by telephone and video conference.** Additionally, the court approved the BID procedures motion. The revised order submitted at docket no 381 was signed on the record. **The Court shall hold a hearing to consider the approval of the Sale on 10/19/2021 at 2:30 PM by telephone and video conference..** (VrianaPortillo) (Entered: 08/11/2021) |
| 08/11/2021 | 388 (2 pgs) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Vivot Equipment Corporation/Simon W. Hendershot. This is to order a transcript of Entire hearing (8/11/2021) before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By VIVOT EQUIPMENT CORPORATION ). (Hendershot, Simon) Copy request electronically forwarded to Judicial Transcribers of Texas on 8/12/2021. Estimated date of completion: 8/13/2021. Modified on 8/12/2021 (RachelWillborg). (Entered: 08/11/2021) |

| | | |
|---|---|---|
| 08/11/2021 | 389<br>(1 pg) | PDF with attached Audio File. Court Date & Time [ 8/11/2021 2:00:04 PM ]. File Size [ 31679 KB ]. Run Time [ 01:06:00 ]. (admin). (Entered: 08/11/2021) |
| 08/11/2021 | 390<br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Marty L. Brimmage, Jr.. This is to order a transcript of Hearing on August 11, 2021 before Judge David R. Jones. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By Ad Hoc Term Lender Group ). (Brimmage, Marty) Copy request electronically forwarded to Judicial Transcribers of Texas on 8/12/2021. Estimated completion date: 8/13/2021. Modified on 8/12/2021 (RachelWillborg). (Entered: 08/11/2021) |
| 08/11/2021 | 391<br>(2 pgs) | Order Granting Debtors' Second Motion for an Extension of Time to File Schedules and Statements of Financial Affairs (Related Doc # 356) Signed on 8/11/2021. (VrianaPortillo) (Entered: 08/11/2021) |
| 08/11/2021 | 392<br>(32 pgs) | Order Granting Debtors' Emergency Motion for Entry of Order: (I)Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief Signed on 8/11/2021 (Related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property **Sale Hearing scheduled for 10/19/2021 at 02:30 PM by telephone and video conference.** (VrianaPortillo) (Entered: 08/11/2021) |
| 08/11/2021 | 393<br>(25 pgs) | Third Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling A Final Hearing, and (V) Granting Related Relief Signed on 8/11/2021 (Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)) Hearing scheduled for 8/31/2021 at 09:30 AM at telephone and video conference. (VrianaPortillo) (Entered: 08/11/2021) |
| 08/11/2021 | 394<br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Elizabeth A. Green. This is to order a transcript of Hearing on August 11, 2021 before Judge David R. Jones. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) Copy request electronically forwarded to Judicial Transcribers of Texas on 8/12/2021. Estimated date of completion: 8/13/2021. Modified on 8/12/2021 (RachelWillborg). (Entered: 08/11/2021) |
| | 395<br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Christopher Odell. This is to order a transcript of Hearing on August 11, 2021 before Judge David R. Jones. Court |

| | | |
|---|---|---|
| 08/11/2021 | | Reporter/Transcriber: Veritext Legal Solutions (Filed By BP Corporation North America Inc., an Indiana corporation, BP Products North America Inc., a Maryland corporation ). (Odell, Christopher) Copy request electronically forwarded to Judicial Transcribers of Texas on 8/12/2012. Estimated date of completion: 8/13/2021. Modified on 8/12/2021 (RachelWillborg). (Entered: 08/11/2021) |
| 08/11/2021 | 396 (26 pgs; 3 docs) | Application to Employ Baker & Hostetler LLP as Debtors' Attorneys. Objections/Request for Hearing Due in 21 days. Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Green Declaration) (Green, Elizabeth) (Entered: 08/11/2021) |
| 08/11/2021 | 397 (16 pgs; 2 docs) | Motion *Debtors' Motion to Establish Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order) (Green, Elizabeth) (Entered: 08/11/2021) |
| 08/11/2021 | 398 (36 pgs; 4 docs) | Application to Employ Mark Shapiro of GlassRatner Advisory & Capital Group LLC d/b/a B. Riley Advisory Services as Chief Restructuring Officer. Objections/Request for Hearing Due in 21 days. Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - B. Riley Engagement Letter # 2 Exhibit B - Shapiro Declaration # 3 Exhibit C - Proposed Order) (Green, Elizabeth) (Entered: 08/11/2021) |
| 08/11/2021 | 399 (5 pgs) | BNC Certificate of Mailing. (Related document(s):347 Order on Motion to Reject Lease or Executory Contract) No. of Notices: 25. Notice Date 08/11/2021. (Admin.) (Entered: 08/11/2021) |
| 08/12/2021 | 400 (3 pgs) | Notice of Appearance and Request for Notice Filed by Lynn Hamilton Butler Filed by on behalf of Team Industrial Services, Inc. (Butler, Lynn) (Entered: 08/12/2021) |
| 08/12/2021 | 401 (71 pgs) | Transcript RE: held on 08/09/2021 before Judge David R. Jones. Transcript is available for viewing in the Clerk's Office. Filed by Transcript access will be restricted through 11/10/2021. (VeritextLegalSolutions) (Entered: 08/12/2021) |
| | 402 (29 pgs; 4 docs) | Application to Employ /Application of the Official Committee of Unsecured Creditors Pursuant to Sections 327, 328, 330, and 1103 of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure 2014(a) and 2016, and Local Rules 2014-1 and 2016-1 For Authorization to Retain and Employ Pachulski Stang Ziehl & Jones LLP as Counsel Effective as of July 27, 2021. Objections/Request for Hearing Due in 21 days. Filed by Creditor Committee Official Committee of Unsecured Creditors (Attachments: # 1 Exhibit A - Warner |

| 08/12/2021 | | Declaration # 2 Exhibit B - Declaration of Co-Chair # 3 Proposed Order) (Warner, Michael) (Entered: 08/12/2021) |
|---|---|---|
| 08/12/2021 | 403 (44 pgs; 4 docs) | Application to Employ /Official Committee of Unsecured Creditor Application for an Order Authorizing the Retention and Employment of Conway MacKenzie, LLC. as Financial Advisor Effective as of July 29, 2021. Objections/Request for Hearing Due in 21 days. Filed by Creditor Committee Official Committee of Unsecured Creditors (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Young Declaration # 3 Exhibit C - Idemnification) (Warner, Michael) (Entered: 08/12/2021) |
| 08/12/2021 | 404 (2 pgs) | Notice of Appearance and Request for Notice Filed by William L Siegel Filed by on behalf of Strategic Contract Resources, LLC (Siegel, William) (Entered: 08/12/2021) |
| 08/12/2021 | 405 (17 pgs; 2 docs) | Motion *of the Official Committee of Unsecured Creditors for an Order (I) Establishing Information Sharing Procedures and (II) Granting Related Relief* Filed by Creditor Committee Official Committee of Unsecured Creditors (Attachments: # 1 Proposed Order) (Warner, Michael) (Entered: 08/12/2021) |
| 08/12/2021 | 406 (7 pgs) | Debtors Master Service List (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 08/12/2021) |
| 08/12/2021 | 407 (53 pgs) | Transcript RE: Various Motions Hearings (Via Zoom) held on August 11, 2021 before Judge David R. Jones. Transcript is available for viewing in the Clerk's Office. Filed by Transcript access will be restricted through 11/10/2021. (mhen) (Entered: 08/12/2021) |
| 08/13/2021 | 408 (8 pgs; 2 docs) | Third Motion to Extend Deadline to File Schedules or Provide Required Information Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order) (Parrish, Jimmy) (Entered: 08/13/2021) |
| 08/13/2021 | 409 (1 pg) | Notice of Filing of Official Transcript as to 401 Transcript, 407 Transcript. Parties notified (Related document(s):401 Transcript, 407 Transcript) (dhan) (Entered: 08/13/2021) |
| 08/13/2021 | 410 (1 pg) | Notice of Appearance and Request for Notice Filed by Stephen R. Butler Filed by on behalf of TN Dept of Revenue (Butler, Stephen) (Entered: 08/13/2021) |
| | 411 (46 pgs; 3 docs) | Motion to Amend (related document(s):393 Order Setting Hearing)., Emergency Motion *to Amend Third Interim DIP and Cash Collateral Order* Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Amended Order # 2 Exhibit B - Redline) (Green, Elizabeth |

| 08/13/2021 | | (Entered: 08/13/2021) |
|---|---|---|
| 08/13/2021 | 412 (3 pgs) | Notice of Rescheduled Hearing. (Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)) Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 08/13/2021) |
| 08/13/2021 | 413 (2 pgs) | Notice of Appearance and Request for Notice Filed by James William Henges Filed by on behalf of Process Technical Services, Inc. (Henges, James) (Entered: 08/13/2021) |
| 08/13/2021 | 414 (20 pgs; 3 docs) | Application to Employ Beckstedt & Kuczynski LLP as Special Counsel to the Debtors. Objections/Request for Hearing Due in 21 days. Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Beckstedt Declaration) (Green, Elizabeth) (Entered: 08/13/2021) |
| 08/13/2021 | 415 (10 pgs) | BNC Certificate of Mailing. (Related document(s):391 Order on Motion to Extend Deadline to File Schedules) No. of Notices: 29. Notice Date 08/13/2021. (Admin.) (Entered: 08/13/2021) |
| 08/13/2021 | 416 (4 pgs) | BNC Certificate of Mailing. (Related document(s):371 Order on Motion to Appear pro hac vice) No. of Notices: 25. Notice Date 08/13/2021. (Admin.) (Entered: 08/13/2021) |
| 08/13/2021 | 417 (4 pgs) | BNC Certificate of Mailing. (Related document(s):372 Order on Motion to Appear pro hac vice) No. of Notices: 25. Notice Date 08/13/2021. (Admin.) (Entered: 08/13/2021) |
| 08/13/2021 | 418 (4 pgs) | BNC Certificate of Mailing. (Related document(s):373 Order on Motion to Appear pro hac vice) No. of Notices: 25. Notice Date 08/13/2021. (Admin.) (Entered: 08/13/2021) |
| 08/13/2021 | 419 (4 pgs) | BNC Certificate of Mailing. (Related document(s):374 Order on Motion to Appear pro hac vice) No. of Notices: 25. Notice Date 08/13/2021. (Admin.) (Entered: 08/13/2021) |
| 08/13/2021 | 420 (4 pgs) | BNC Certificate of Mailing. (Related document(s):375 Order on Motion to Appear pro hac vice) No. of Notices: 25. Notice Date 08/13/2021. (Admin.) (Entered: 08/13/2021) |
| 08/13/2021 | 421 (4 pgs) | BNC Certificate of Mailing. (Related document(s):376 Order on Motion to Appear pro hac vice) No. of Notices: 25. Notice Date 08/13/2021. (Admin.) (Entered: 08/13/2021) |
| 08/13/2021 | 422 (5 pgs) | BNC Certificate of Mailing. (Related document(s):377 Order on Motion to Appear pro hac vice) No. of Notices: 25. Notice Date 08/13/2021. (Admin.) (Entered: 08/13/2021) |

| | | |
|---|---|---|
| 08/13/2021 | 🌐 423<br>(4 pgs) | BNC Certificate of Mailing. (Related document(s):378 Order on Motion to Appear pro hac vice) No. of Notices: 25. Notice Date 08/13/2021. (Admin.) (Entered: 08/13/2021) |
| 08/13/2021 | 🌐 424<br>(35 pgs) | BNC Certificate of Mailing. (Related document(s):392 Order Setting Hearing) No. of Notices: 25. Notice Date 08/13/2021. (Admin.) (Entered: 08/13/2021) |
| 08/13/2021 | 🌐 425<br>(33 pgs) | BNC Certificate of Mailing. (Related document(s):393 Order Setting Hearing) No. of Notices: 25. Notice Date 08/13/2021. (Admin.) (Entered: 08/13/2021) |
| 08/15/2021 | 🌐 426<br>(4 pgs) | BNC Certificate of Mailing. (Related document(s):409 Notice of Filing of Official Transcript (Form)) No. of Notices: 26. Notice Date 08/15/2021. (Admin.) (Entered: 08/15/2021) |
| 08/16/2021 | 🌐 | Certificate of Email Notice. By agreement of the parties, the hearing on the motion for relief from stay has been adjourned. Movant to notice all interested parties and file a certificate of service with the court (Related document(s):172 Motion for Relief From Stay) **Hearing rescheduled for 9/7/2021 at 02:00 PM by telephone and video conference.** (aalo) (Entered: 08/16/2021) |
| 08/16/2021 | | (private) Deadlines terminated. (aalo) (Entered: 08/16/2021) |
| 08/16/2021 | 🌐 | Notice of Reset of Meeting of Creditors *There are no bankruptcy schedules and statements on file and the Debtors have a pending Third Motion to extent the current deadline.* 341(a) meeting to be held on 9/13/2021 at 10:00 AM at US Trustee Houston Teleconference. (Duran, Hector) (Entered: 08/16/2021) |
| 08/16/2021 | 🌐 427<br>(3 pgs) | Notice *of Rescheduled Hearing.* (Related document(s):172 Motion for Relief From Stay) Filed by Crowley Caribbean Services, LLC (Liggins, Demetra) (Entered: 08/16/2021) |
| 08/16/2021 | 🌐 | Notice of Reset of Meeting of Creditors 341(a) meeting to be held on 9/13/2021 at 11:30 AM at US Trustee Houston Teleconference. (Duran, Hector) (Entered: 08/16/2021) |
| 08/16/2021 | 🌐 428<br>(2 pgs) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Henry Flores. This is to order a transcript of hearing on 08/09/2021 before Judge David R. Jones. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By Ad Hoc Group of Terminal Lenders ). (Flores, Henry) Copy request was electronically forwarded to Veritext Legal Solutions on 8-17-2021. Estimated completion date: 8-18-2021.Modified on 8/17/2021 (MelissaMorgan). (Entered: 08/16/2021) |

| | | |
|---|---|---|
| 08/16/2021 | 429 (2 pgs) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Henry Flores. This is to order a transcript of hearing on 08/11/2021 before Judge David R. Jones. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By Ad Hoc Group of Terminal Lenders ). (Flores, Henry) Copy request was electronically forwarded to the original transcriber: Judicial Transcribers of Texas on 8-17-2021. Estimated completion date: 8-18-2021. Modified on 8/17/2021 (MelissaMorgan). (Entered: 08/16/2021) |
| 08/16/2021 | 430 (25 pgs) | Amended Third Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief Signed on 8/16/2021 (Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date), 393 Order Setting Hearing, 411 Motion to Amend, Emergency Motion) **Final Hearing scheduled for 8/27/2021 at 10:00 AM by telephone and video conference.** (emiller) (Entered: 08/16/2021) |
| 08/17/2021 | 431 (12 pgs) | Objection *Omnibus Objection of Limetree Bay Terminals, LLC to Debtors' Motions to Reject the Terminal Services Agreements* (related document(s):199 Motion to Assume/Reject, 200 Motion to Assume/Reject). Filed by Limetree Bay Terminals, LLC (Davidson, Timothy) (Entered: 08/17/2021) |
| 08/18/2021 | 432 (2 pgs) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Patricia B. Tomasco. This is to order a transcript of Hearing held on August 2, 2021 before Judge David R. Jones. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By Interested Party ). (Tomasco, Patricia) Copy request electronically forwarded to Veritext Legal Solutions on 8/18/2021. Estimated completion date: 8/19/2021. Modified on 8/18/2021 (RachelWillborg). (Entered: 08/18/2021) |
| 08/18/2021 | 433 (2 pgs) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Patricia B. Tomasco. This is to order a transcript of Hearing held on August 9, 2021 before Judge David R. Jones. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By Interested Party ). (Tomasco, Patricia) Copy request electronically forwarded to Veritext Legal Solutions on 8/20/2021. Estimated date of completion: 8/21/2021. Modified on 8/20/2021 (RachelWillborg). (Entered: 08/18/2021) |
| 08/18/2021 | 434 (2 pgs) | Notice *of Rescheduled Section 341 Meeting of Creditors*. Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 08/18/2021) |

| | | |
|---|---|---|
| 08/18/2021 | 🌐 435<br>(19 pgs; 2 docs) | Application for Administrative Expenses *The Terminal Entities' Motion to Allow and Compel Payment of Administrative Expenses*. Objections/Request for Hearing Due in 21 days. Filed by Creditor Limetree Bay Terminals, LLC (Attachments: # 1 Proposed Order) (Davidson, Timothy) (Entered: 08/18/2021) |
| 08/19/2021 | 🌐 436<br>(10 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):360 Notice) (Ordaz, Steven) (Entered: 08/19/2021) |
| 08/19/2021 | 🌐 437<br>(20 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):380 Notice, 391 Order on Motion to Extend Deadline to File Schedules, 392 Order Setting Hearing, 393 Order Setting Hearing, 396 Application to Employ, 397 Generic Motion, 398 Application to Employ) (Ordaz, Steven) (Entered: 08/19/2021) |
| 08/19/2021 | 🌐 438<br>(4 pgs) | Certificate *of Supplemental Service* (Filed By BMC Group, Inc. ).(Related document(s):392 Order Setting Hearing) (Ordaz, Steven) (Entered: 08/19/2021) |
| 08/19/2021 | 🌐 439<br>(10 pgs) | Certificate *of Service (for the Committee of Unsecured Creditors* (Filed By BMC Group, Inc. ).(Related document (s):402 Application to Employ, 403 Application to Employ, 405 Generic Motion) (Ordaz, Steven) (Entered: 08/19/2021) |
| 08/19/2021 | 🌐 440<br>(10 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):408 Motion to Extend Deadline to File Schedules, 411 Motion to Amend, Emergency Motion, 412 Notice, 414 Application to Employ) (Ordaz, Steven) (Entered: 08/19/2021) |
| 08/19/2021 | 🌐 441<br>(28 pgs) | BNC Certificate of Mailing. (Related document(s):430 Order Setting Hearing) No. of Notices: 27. Notice Date 08/19/2021. (Admin.) (Entered: 08/19/2021) |
| 08/20/2021 | 🌐 442<br>(3 pgs) | Notice of Appearance and Request for Notice Filed by Timothy Alvin Davidson II Filed by on behalf of Limetree Bay Terminals, LLC (Davidson, Timothy) (Entered: 08/20/2021) |
| 08/20/2021 | 🌐 443<br>(1 pg) | Motion to Appear pro hac vice *Benjamin I. Finestone*. Filed by Creditor Limetree Bay Terminals, LLC (Harper, Ashley) (Entered: 08/20/2021) |
| | 🌐 444<br>(4 pgs; 2 docs) | Certificate of No Objection *to Motion to Assume Ordinary Course Consulting Agreement with Adrian Kubran* (Filed By Limetree Bay Services, LLC ).(Related document(s):208 Motion to Assume Lease or Executory Contract) (Attachments: # 1 Exhibit 1 - Proposed Order) (Green, |

| 08/21/2021 | | Elizabeth) (Entered: 08/21/2021) |
|---|---|---|
| 08/21/2021 | 445 (4 pgs; 2 docs) | Certificate of No Objection *to Motion to Assume Ordinary Course Consulting Agreement with Duke Given* (Filed By Limetree Bay Services, LLC ).(Related document(s):206 Motion to Assume Lease or Executory Contract) (Attachments: # 1 Exhibit 1 - Proposed Order) (Green, Elizabeth) (Entered: 08/21/2021) |
| 08/21/2021 | 446 (5 pgs; 2 docs) | Certificate of No Objection *to Motion to Assume Ordinary Course Consulting Agreement with Fermin Rodriguez dba FR Consulting, LLC* (Filed By Limetree Bay Services, LLC ).(Related document(s):209 Motion to Assume Lease or Executory Contract) (Attachments: # 1 Exhibit 1 - Proposed Order) (Green, Elizabeth) (Entered: 08/21/2021) |
| 08/21/2021 | 447 (4 pgs; 2 docs) | Certificate of No Objection *to Motion to Assume Ordinary Course Consulting Agreement with Gary Morrow* (Filed By Limetree Bay Services, LLC ).(Related document(s):207 Motion to Assume Lease or Executory Contract) (Attachments: # 1 Exhibit 1 - Proposed Order) (Green, Elizabeth) (Entered: 08/21/2021) |
| 08/21/2021 | 448 (4 pgs; 2 docs) | Certificate of No Objection *to Motion to Assume Ordinary Course Consulting Agreement with Sloan Schoyer* (Filed By Limetree Bay Services, LLC ).(Related document(s):212 Motion to Assume Lease or Executory Contract) (Attachments: # 1 Exhibit 1 - Proposed Order) (Green, Elizabeth) (Entered: 08/21/2021) |
| 08/23/2021 | 449 (3 pgs) | Witness List, Exhibit List (Filed By Official Committee of Unsecured Creditors ).(Related document(s):12 Motion for Approval, Emergency Motion (with hearing date), 102 Order Setting Hearing) (Warner, Michael) (Entered: 08/23/2021) |
| 08/23/2021 | 450 (4 pgs) | Declaration re: *First Supplemental Declaration of Michael O'Hara in Support of the Application to Employ Jefferies LLC as Investment Banker for the Debtors* (Filed By Limetree Bay Services, LLC ).(Related document(s):247 Application to Employ) (Green, Elizabeth) (Entered: 08/23/2021) |
| 08/23/2021 | 451 (49 pgs; 2 docs) | Exhibit List, Witness List (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit 1 - First Day Declaration of Mark Shapiro) (Green, Elizabeth) (Entered: 08/23/2021) |
| 08/23/2021 | 452 (1 pg) | Order Granting Motion To Appear pro hac vice - Benjamin I. Finestone (Related Doc # 443) Signed on 8/23/2021. (emiller) (Entered: 08/23/2021) |
| | 453 | Notice *of Rescheduled Hearing*. (Related document(s):12 |

| | | |
|---|---|---|
| 08/23/2021 | (3 pgs) | Motion for Approval, Emergency Motion (with hearing date), 102 Order Setting Hearing) Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 08/23/2021) |
| 08/23/2021 | 454 (2 pgs) | Order Granting Debtors' Motion for Entry of Order and Authorizing Limetree Bay Refining, LLC's Assumption of Ordinary Course Consulting Agreement with Adrian Kubran (Related Doc # 208) Signed on 8/23/2021. (emiller) (Entered: 08/23/2021) |
| 08/23/2021 | 455 (2 pgs) | Order Granting Debtors' Motion for Entry of Order Pursuant to 11 U.S.C. § 365(a) and (B) Authorizing Limetree Bay Refining, LLC's Cure and Assumption of Ordinary Course Consulting Agreement with Duke Given (Related Doc # 206) Signed on 8/23/2021. (emiller) (Entered: 08/23/2021) |
| 08/23/2021 | 456 (2 pgs) | Order Granting Debtors' Motion for Entry of Order Pursuant to 11 U.S.C. § 365(a) and (B) Authorizing Limetree Bay Refining, LLC's Cure and Assumption of Ordinary Course Consulting Agreement with Fermin Rodriguez, DBA FR Consulting, LLC (Related Doc # 209) Signed on 8/23/2021. (emiller) (Entered: 08/23/2021) |
| 08/23/2021 | 457 (2 pgs) | Order Granting Debtors' Motion for Entry of Order Pursuant to 11 U.S.C. § 365(s) and (B) Authorizing Limetree Bay Refining, LLC's Cure and Assumption of Ordinary Course Consulting Agreement with Gary Morrow (Related Doc # 207) Signed on 8/23/2021. (emiller) (Entered: 08/23/2021) |
| 08/23/2021 | 458 (2 pgs) | Order Granting Debtors' Motion for Entry of Order Pursuant to 11 U.S.C. § 365(a) and (B) Authorizing Limetree Refining, LLC's Cure and Assumption of Ordinary Course Consulting Agreement with Sloan Schoyer (Related Doc # 212) Signed on 8/23/2021. (emiller) (Entered: 08/23/2021) |
| 08/24/2021 | ● | Certificate of Email Notice. Contacted Elizabeth Green. Movant to notice all interested parties and file a certificate of service with the court (Related document(s):12 Motion for Approval, Emergency Motion (with hearing date)) **Hearing rescheduled for 8/27/2021 at 10:00 AM by telephone and video conference.** (aalo) (Entered: 08/24/2021) |
| 08/24/2021 | | (private) Deadlines terminated. (aalo) (Entered: 08/24/2021) |
| 08/24/2021 | 459 (3 pgs) | Notice of Appearance and Request for Notice Filed by Jason S Brookner Filed by on behalf of 405 Sentinel LLC, Arena Investors, LP (Brookner, Jason) (Entered: 08/24/2021) |
| 08/24/2021 | 460 (5 pgs; 2 docs) | Notice of Filing Proposed Budget. Filed by Limetree Bay Services, LLC (Attachments: # 1 Exhibit 1 - Proposed Budget) (Green, Elizabeth) (Entered: 08/24/2021) |

| Date | Document | Description |
|---|---|---|
| 08/24/2021 | 461 (174 pgs; 3 docs) | Notice *of Filing Proposed Final DIP Order*. (Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)) Filed by Limetree Bay Services, LLC (Attachments: # 1 Exhibit 1 - Proposed Final DIP Order # 2 Exhibit 2 - Redlined Version) (Green, Elizabeth) (Entered: 08/24/2021) |
| 08/24/2021 | 502 (1 pg) | Motion to Appear pro hac vice . Filed by Creditor Rev 1 Energy, Inc. (gkel) (Entered: 08/31/2021) |
| 08/25/2021 | 462 (3 pgs) | Exhibit List, Witness List (Filed By Official Committee of Unsecured Creditors ).(Related document(s):12 Motion for Approval, Emergency Motion (with hearing date), 14 Motion to Use Cash Collateral, Emergency Motion (with hearing date), 430 Order Setting Hearing) (Warner, Michael) (Entered: 08/25/2021) |
| 08/25/2021 | 463 (4 pgs) | Exhibit List, Witness List (Filed By Ad Hoc Term Lender Group ).(Related document(s):12 Motion for Approval, Emergency Motion (with hearing date), 14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)) (Brimmage, Marty) (Entered: 08/25/2021) |
| 08/25/2021 | 464 (4 pgs) | Exhibit List, Witness List (Filed By Ad Hoc Group of Terminal Lenders ). (Flores, Henry) (Entered: 08/25/2021) |
| 08/25/2021 | 465 (3 pgs) | Exhibit List (Filed By Limetree Bay Terminals, LLC ).(Related document(s):411 Motion to Amend, Emergency Motion) (Tomasco, Patricia) (Entered: 08/25/2021) |
| 08/25/2021 | 466 (242 pgs; 6 docs) | Sealed Document *Exhibits 1 - 6 for the Exhibit List ECF No. 465* (Filed By Limetree Bay Terminals, LLC ). (Attachments: # 1 Exhibit 2 # 2 Exhibit 3 # 3 Exhibit 4 # 4 Exhibit 5 # 5 Exhibit 6) (Tomasco, Patricia) (Entered: 08/25/2021) |
| 08/25/2021 | 467 (3 pgs) | Exhibit List, Witness List (Filed By J. Aron & Company LLC ). (Newcomb, Christopher) (Entered: 08/25/2021) |
| 08/25/2021 | 468 (52 pgs; 3 docs) | Exhibit List, Witness List (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit 1 - First Day Declaration of Mark Shapiro # 2 Exhibit 2 - Proposed Budget) (Green, Elizabeth) (Entered: 08/25/2021) |
| 08/25/2021 | 469 (3 pgs) | Exhibit List, Witness List (Filed By Goldman Sachs Bank USA ).(Related document(s):12 Motion for Approval, Emergency Motion (with hearing date), 14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)) (VanLare, Jane) (Entered: 08/25/2021) |
| | 470 | BNC Certificate of Mailing. (Related document(s):452 Order |

| | | |
|---|---|---|
| 08/25/2021 | (4 pgs) | on Motion to Appear pro hac vice) No. of Notices: 27. Notice Date 08/25/2021. (Admin.) (Entered: 08/25/2021) |
| 08/25/2021 | 471 (10 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):430 Order Setting Hearing) (Ordaz, Steven) (Entered: 08/25/2021) |
| 08/25/2021 | 472 (19 pgs) | Certificate *of Service re Notice of Rescheduled Section 341 Meeting of Creditors* (Filed By BMC Group, Inc. ).(Related document(s):434 Notice) (Ordaz, Steven) (Entered: 08/25/2021) |
| 08/25/2021 | 473 (10 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):450 Declaration, 451 Exhibit List, Witness List, 453 Notice) (Ordaz, Steven) (Entered: 08/25/2021) |
| 08/25/2021 | 474 (11 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):454 Order on Motion to Assume Lease or Executory Contract, 455 Order on Motion to Assume Lease or Executory Contract, 456 Order on Motion to Assume Lease or Executory Contract, 457 Order on Motion to Assume Lease or Executory Contract, 458 Order on Motion to Assume Lease or Executory Contract, 460 Notice, 461 Notice) (Ordaz, Steven) (Entered: 08/26/2021) |
| 08/26/2021 | 475 (21 pgs) | Second Objection *Second Supplemental Objection of Terminal Entities to Debtors' Motion to Approve Post-Petition Financing (relates to ECF Nos. 14, 252, 349, 461)* (related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)). Filed by Limetree Bay Terminals, LLC (Tomasco, Patricia) (Entered: 08/26/2021) |
| 08/26/2021 | 476 (22 pgs; 3 docs) | Agreed Order and Certificate of Counsel (Filed By Limetree Bay Services, LLC ).(Related document(s):12 Motion for Approval, Emergency Motion (with hearing date), 102 Order Setting Hearing) (Attachments: # 1 Exhibit 1 - Proposed Order # 2 Exhibit 2 - Redlined Version) (Green, Elizabeth) (Entered: 08/26/2021) |
| 08/26/2021 | 477 (6 pgs) | Agenda for Hearing on 8/27/2021 (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 08/26/2021) |
| 08/26/2021 | 478 (4 pgs; 2 docs) | Notice *of Filing Exhibit to Proposed Budget for August 27, 2021 Hearing.* Filed by Limetree Bay Services, LLC (Attachments: # 1 Exhibit 1 - Exhibit to Proposed Budget) (Green, Elizabeth) (Entered: 08/26/2021) |
| | 479 (4 pgs) | Notice *Of Filing Of Issues List In Further Support Of Objection Of The Official Committee Of Unsecured Creditors To Debtors Emergency Motion For Entry Of* |

| | | |
|---|---|---|
| 08/26/2021 | | *Interim And Final Orders Authorizing The Debtors To Obtain Post-Petition Financing, Etc..* (Related document (s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date), 327 Objection) Filed by Official Committee of Unsecured Creditors (Warner, Michael) (Entered: 08/26/2021) |
| 08/26/2021 | 480 (5 pgs) | Supplemental Response *to Objection and Reservation of Rights of Terminal Entities to Debtors' Post-Petition Financing and Cash Collateral Motion and Terminal Lenders' Joinder Therein (Related to Doc. Nos. 14, 252, 253, 316).* Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 08/26/2021) |
| 08/26/2021 | 481 (5 pgs) | BNC Certificate of Mailing. (Related document(s):454 Order on Motion to Assume Lease or Executory Contract) No. of Notices: 27. Notice Date 08/26/2021. (Admin.) (Entered: 08/26/2021) |
| 08/26/2021 | 482 (5 pgs) | BNC Certificate of Mailing. (Related document(s):455 Order on Motion to Assume Lease or Executory Contract) No. of Notices: 27. Notice Date 08/26/2021. (Admin.) (Entered: 08/26/2021) |
| 08/26/2021 | 483 (5 pgs) | BNC Certificate of Mailing. (Related document(s):456 Order on Motion to Assume Lease or Executory Contract) No. of Notices: 27. Notice Date 08/26/2021. (Admin.) (Entered: 08/26/2021) |
| 08/26/2021 | 484 (5 pgs) | BNC Certificate of Mailing. (Related document(s):457 Order on Motion to Assume Lease or Executory Contract) No. of Notices: 27. Notice Date 08/26/2021. (Admin.) (Entered: 08/26/2021) |
| 08/26/2021 | 485 (5 pgs) | BNC Certificate of Mailing. (Related document(s):458 Order on Motion to Assume Lease or Executory Contract) No. of Notices: 27. Notice Date 08/26/2021. (Admin.) (Entered: 08/26/2021) |
| 08/27/2021 | 486 (7 pgs) | Amended Agenda for Hearing on 8/27/2021 (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 08/27/2021) |
| 08/27/2021 | 487 (171 pgs; 2 docs) | Proposed Order RE: *Proposed Final DIP Order* (Filed By Limetree Bay Services, LLC ).(Related document(s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)) (Attachments: # 1 Exhibit 1 - Redline Version) (Green, Elizabeth) (Entered: 08/27/2021) |
| | 488 (3 pgs) | Notice of Appearance and Request for Notice Filed by Patricia Baron Tomasco Filed by on behalf of Limetree Bay |

| 08/27/2021 | | Terminals, LLC (Tomasco, Patricia) (Entered: 08/27/2021) |
|---|---|---|
| 08/27/2021 | 489 (2 pgs) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Patricia B. Tomasco on behalf of the Terminal Entities. This is to order a transcript of DIP hearing held on August 27, 2021 before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Limetree Bay Terminals, LLC ). (Tomasco, Patricia) Electronically forwarded to Judicial Transcribers of Texas on 8/30/2021. Estimated date of completion: 8/31/2021. Modified on 8/30/2021 (RachelWillborg). (Entered: 08/27/2021) |
| 08/27/2021 | 490 | Courtroom Minutes. Time Hearing Held: 10:00 AM. Appearances: (to be attached on 8/30). (Related document (s):14 Motion to Use Cash Collateral, Emergency Motion (with hearing date)) The Court has approved the emergency motion to compel in Adversary case 21-3791. With respect to the DIP and Cash Collateral motion, the Court heard from Mark Shapiro and Ryan Omohundro and for the reasons stated on the record the Court will approve the DIP as proposed. Order to be entered. (aalo) (Entered: 08/27/2021) |
| 08/27/2021 | 491 (2 pgs) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by J. Aron & Company LLC. This is to order a transcript of Full hearing 8/27/21 before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By J. Aron & Company LLC ). (Newcomb, Christopher) Copy request electronically forwarded to Judicial Transcribers of Texas on 8/30/2021. Estimated date of completion: 8/31/2021. Modified on 8/30/2021 (RachelWillborg). (Entered: 08/27/2021) |
| 08/27/2021 | 492 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Elizabeth A. Green. This is to order a transcript of Hearing on 8/27/2021 before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) Copy request electronically forwarded to Judicial Transcribers of Texas on 8/30/2021. Estimated date of completion: 8/31/2021. Modified on 8/30/2021 (RachelWillborg). (Entered: 08/27/2021) |
| 08/27/2021 | 493 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Marty L. Brimmage, Jr.. This is to order a transcript of the August 27, 2021 Hearing before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Ad Hoc Term Lender Group ). (Brimmage, Marty) Copy request electronically forwarded to Judicial Transcribers of Texas on 8/30/2021. Estimated date of completion: 8/31/2021. Modified on 8/30/2021 (RachelWillborg). (Entered: 08/27/2021) |

| | | |
|---|---|---|
| 08/27/2021 | 494 (2 pgs) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Jason S. Brookner. This is to order a transcript of Hearing held 8/27/21 before Judge David R. Jones. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By 405 Sentinel LLC, Arena Investors, LP ). (Brookner, Jason) Copy request electronically forwarded to original transcription company Judicial Transcribers of Texas on 8/30/2021. Estimated date of completion: 8/31/2021. Modified on 8/30/2021 (RachelWillborg). (Entered: 08/27/2021) |
| 08/27/2021 | 495 (87 pgs) | Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief (Related Doc # 14), Granting Emergency Motion (Related Doc # 14) Signed on 8/27/2021. (emiller) (Entered: 08/27/2021) |
| 08/30/2021 | 496 (2 pgs) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Henry Flores. This is to order a transcript of 08/27/2021 Hearing before Judge David R. Jones. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By Ad Hoc Group of Terminal Lenders ). (Flores, Henry) Copy request electronically forwarded to original transcription company Judicial Transcribers of Texas on 8/30/2021. Estimated date of completion: 8/31/2021. Modified on 8/30/2021 (RachelWillborg). (Entered: 08/30/2021) |
| 08/30/2021 | 497 (1 pg) | PDF with attached Audio File. Court Date & Time [ 8/27/2021 9:57:31 AM ]. File Size [ 73709 KB ]. Run Time [ 02:33:34 ]. (admin). (Entered: 08/30/2021) |
| 08/30/2021 | 498 (7 pgs) | Debtors Master Service List (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 08/30/2021) |
| 08/30/2021 | 499 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (3-Day) by Catherine Hodges. This is to order a transcript of DIP hearing held on August 27, 2021 before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By BP Corporation North America Inc., an Indiana corporation, BP Products North America Inc., a Maryland corporation ). (Odell, Christopher) Copy request electronically forwarded to Judicial Transcribers of Texas on 8/31/2021. Estimated date of completion: 9/3/2021. Modified on 8/31/2021 (RachelWillborg). (Entered: 08/30/2021) |
| 08/31/2021 | 500 (2 pgs) | Notice of Appearance and Request for Notice Filed by Meagan Martin Powers Filed by on behalf of Embark Consulting, LLC (Martin Powers, Meagan) (Entered: 08/31/2021) |
| | 501 | Application to Employ Hughes Arrell Kinchen LLP as |

| | | |
|---|---|---|
| 08/31/2021 | (20 pgs; 3 docs) | Special Counsel. Objections/Request for Hearing Due in 21 days. Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Declaration of John B. Kinchen # 2 Exhibit B - Proposed Order) (Green, Elizabeth) (Entered: 08/31/2021) |
| 08/31/2021 | 503 (4 pgs) | Notice *of Rescheduled Hearing*. (Related document(s):172 Motion for Relief From Stay) Filed by Crowley Caribbean Services, LLC (Liggins, Demetra) (Entered: 08/31/2021) |
| 08/31/2021 | 504 (114 pgs) | Transcript RE: Cash Collateral Hearing (Via Zoom) held on August 27, 2021 before Judge David R. Jones. Transcript is available for viewing in the Clerk's Office. Filed by Transcript access will be restricted through 11/29/2021. (mhen) (Entered: 08/31/2021) |
| 09/01/2021 | 505 (1 pg) | Notice of Filing of Official Transcript as to 504 Transcript. Parties notified (Related document(s):504 Transcript) (dhan) (Entered: 09/01/2021) |
| 09/01/2021 | 506 (11 pgs; 3 docs) | Motion for Turnover of Property *Debtor, Limetree Bay Refining LLC's Emergency Motion for Turnover of Records from Sedgwick Claims Management Services, Inc.*, Emergency Motion Filed by Debtor Limetree Bay Services, LLC Hearing scheduled for 9/2/2021 at 03:15 PM at telephone and video conference. (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Declaration of Mark Shapiro) (Green, Elizabeth) (Entered: 09/01/2021) |
| 09/01/2021 | 507 (5 pgs; 2 docs) | Exhibit List, Witness List (Filed By Limetree Bay Services, LLC ).(Related document(s):506 Motion for Turnover of Property, Emergency Motion (with hearing date)) (Attachments: # 1 Exhibit 1 - Declaration of Mark Shapiro) (Green, Elizabeth) (Entered: 09/01/2021) |
| 09/01/2021 | 508 (3 pgs) | Agenda for Hearing on 9/2/2021 (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 09/01/2021) |
| 09/01/2021 | 509 (10 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):476 Agreed Order and Certificate of Counsel, 477 Agenda, 478 Notice, 480 Response) (Ordaz, Steven) (Entered: 09/01/2021) |
| 09/01/2021 | 510 (10 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):495 Order on Motion to Use Cash Collateral, Order on Emergency Motion) (Ordaz, Steven) (Entered: 09/01/2021) |
| 09/01/2021 | 511 (90 pgs) | BNC Certificate of Mailing. (Related document(s):495 Order on Motion to Use Cash Collateral) No. of Notices: 27. Notice Date 09/01/2021. (Admin.) (Entered: 09/01/2021) |

| | | |
|---|---|---|
| 09/01/2021 | 513<br>(9 pgs) | Final Order Granting Debtors' Emergency Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a), 345(b), 363, and 364 Authorizing (I) the Continued Use of the Debtors' Prepetition Cash Management System, Including Existing Bank Accounts, Business Forms, and Company Credit Cards; (II) Continued Use of Intercompany Arrangements and Historical Practices; and (III) Opening New Debtor in Possession Accounts, if Necessary (Related Doc # 12) Signed on 9/1/2021. (emiller) (Entered: 09/02/2021) |
| 09/02/2021 | 512<br>(1 pg) | Order Granting Motion To Appear pro hac vice - Steven M. Berman (Related Doc # 502) Signed on 9/2/2021. (emiller) (Entered: 09/02/2021) |
| 09/02/2021 | ● | Certificate of Email Notice. By agreement of the parties, the hearing on the motion for relief form stay has been scheduled for 9/14/2021 at 9:15 AM. Movant to notice all interested parties and file a certificate of service with the court (Related document(s):172 Motion for Relief From Stay) **Hearing scheduled for 9/14/2021 at 09:15 AM by telephone and video conference.** (aalo) (Entered: 09/02/2021) |
| 09/02/2021 | 514<br>(3 pgs) | Amended Agenda for Hearing on 9/2/2021 (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 09/02/2021) |
| 09/02/2021 | 515<br>(5 pgs; 2 docs) | Exhibit List, Witness List (Filed By Limetree Bay Services, LLC ).(Related document(s):507 Exhibit List, Witness List) (Attachments: # 1 Exhibit 1 - Declaration of Mark Shapiro) (Green, Elizabeth) (Entered: 09/02/2021) |
| 09/02/2021 | 516<br>(25 pgs; 3 docs) | Objection *to Debtor's Emergency Motion for Turnover of Records* (related document(s):506 Motion for Turnover of Property, Emergency Motion (with hearing date)). Filed by Sedgwick Claims Management Services, Inc. (Attachments: # 1 Exhibit A # 2 Exhibit B) (Lim, Lloyd) (Entered: 09/02/2021) |
| 09/02/2021 | 517<br>(5 pgs) | Proposed Order RE: *Revised Proposed Order re: Motion for Turnover* (Filed By Limetree Bay Services, LLC ).(Related document(s):506 Motion for Turnover of Property, Emergency Motion (with hearing date)) (Green, Elizabeth) (Entered: 09/02/2021) |
| 09/02/2021 | 518<br>(2 pgs) | Courtroom Minutes. Time Hearing Held: 3:15 PM. Appearances: SEE ATTACHED. (Related document(s):506 Motion for Turnover of Property, Emergency Motion (with hearing date)) The parties have reached an agreement. The revised proposed order submitted at docket no. 517 was modified on the record. (VrianaPortillo) (Entered: 09/02/2021) |

| | | |
|---|---|---|
| 09/02/2021 | 519 (1 pg) | PDF with attached Audio File. Court Date & Time [ 9/2/2021 3:15:13 PM ]. File Size [ 4672 KB ]. Run Time [ 00:09:44 ]. (admin). (Entered: 09/02/2021) |
| 09/02/2021 | 520 (5 pgs) | Order Compelling Turnover of the Sedgwick Data (Related Doc # 506) Signed on 9/2/2021. (VrianaPortillo) (Entered: 09/02/2021) |
| 09/02/2021 | 521 (8 pgs; 2 docs) | Fourth Motion to Extend Deadline to File Schedules or Provide Required Information Filed by Debtor Limitree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order) (Green, Elizabeth) (Entered: 09/02/2021) |
| 09/02/2021 | 522 (21 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):501 Application to Employ) (Ordaz, Steven) (Entered: 09/02/2021) |
| 09/02/2021 | 523 (10 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):506 Motion for Turnover of Property, Emergency Motion (with hearing date), 507 Exhibit List, Witness List, 508 Agenda) (Ordaz, Steven) (Entered: 09/02/2021) |
| 09/03/2021 | 524 (11 pgs; 3 docs) | Certificate of No Objection *to Debtors' Application to Employ Baker & Hostetler LLP as Attorneys for the Debtors* (Filed By Limitree Bay Services, LLC ).(Related document (s):396 Application to Employ) (Attachments: # 1 Exhbit 1 - Revised Proposed Order # 2 Exhibit 2 - Redlined Version) (Green, Elizabeth) (Entered: 09/03/2021) |
| 09/03/2021 | 525 (16 pgs; 3 docs) | Certificate of No Objection *to Application to Employ Mark Shapiro of GlassRatner Advisory & Capital Group LLC d/b/a B. Riley Advisory Services as Chief Restructuring Officer* (Filed By Limitree Bay Services, LLC ).(Related document(s):398 Application to Employ) (Attachments: # 1 Exhibit 1 - Revised Proposed Order # 2 Exhibit B - Redlined Version) (Green, Elizabeth) (Entered: 09/03/2021) |
| 09/03/2021 | 526 (9 pgs; 2 docs) | Certificate of No Objection *to Debtors' Motion to Establish Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (Filed By Limitree Bay Services, LLC ).(Related document(s):397 Generic Motion) (Attachments: # 1 Exhibit 1 - Proposed Order) (Green, Elizabeth) (Entered: 09/03/2021) |
| | 527 (12 pgs; 3 docs) | Certificate of No Objection */Application of the Official Committee of Unsecured Creditors Pursuant to Sections 327, 328, 330, and 1103 of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure 2014(a) and 2016, and Local Rules 2014-1 and 2016-1 For Authorization to Retain and Employ Pachulski Stang Ziehl & Jones LLP as Counsel Effective as* |

| | | |
|---|---|---|
| 09/03/2021 | | *of July 27, 2021* (Filed By Official Committee of Unsecured Creditors ).(Related document(s):402 Application to Employ) (Attachments: # 1 Proposed Order # 2 Redline to Proposed Order) (Warner, Michael) (Entered: 09/03/2021) |
| 09/03/2021 | 🌐 528 (16 pgs; 3 docs) | Certificate of No Objection */Application of the Official Committee of Unsecured Creditors Pursuant to Sections 328 (a), 330, and 1103 of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure 2014(a) and 2016, and Local Rules 2014-1 and 2016-1 For Authorization to Retain and Employ Conway MacKenzie, LLC as Financial Advisor Effective as of July 29, 2021* (Filed By Official Committee of Unsecured Creditors ).(Related document(s):403 Application to Employ) (Attachments: # 1 Proposed Order # 2 Redline to Proposed Order) (Warner, Michael) (Entered: 09/03/2021) |
| 09/03/2021 | 🌐 529 (4 pgs) | BNC Certificate of Mailing. (Related document(s):505 Notice of Filing of Official Transcript (Form)) No. of Notices: 28. Notice Date 09/03/2021. (Admin.) (Entered: 09/03/2021) |
| 09/04/2021 | 🌐 530 (4 pgs) | BNC Certificate of Mailing. (Related document(s):512 Order on Motion to Appear pro hac vice) No. of Notices: 28. Notice Date 09/04/2021. (Admin.) (Entered: 09/04/2021) |
| 09/04/2021 | 🌐 531 (18 pgs) | BNC Certificate of Mailing. (Related document(s):513 Order on Motion for Approval) No. of Notices: 28. Notice Date 09/04/2021. (Admin.) (Entered: 09/04/2021) |
| 09/04/2021 | 🌐 532 (8 pgs) | BNC Certificate of Mailing. (Related document(s):520 Order on Emergency Motion) No. of Notices: 28. Notice Date 09/04/2021. (Admin.) (Entered: 09/04/2021) |
| 09/07/2021 | 🌐 533 (10 pgs; 3 docs) | Certificate of No Objection *to Application to Employ Beckstedt & Kuczynski LLP as Special Counsel to the Debtors* (Filed By Limetree Bay Services, LLC ).(Related document(s):414 Application to Employ) (Attachments: # 1 Exhibit 1 - Revised Proposed Order # 2 Exhibit 2 - Redlined Version) (Parrish, Jimmy) (Entered: 09/07/2021) |
| 09/07/2021 | 🌐 534 (4 pgs) | Order Authorizing the Employment and Retention of Baker & Hostetler LLP as Attorneys for the Debtors Effective July 12, 2021 (Related Doc # 396) Signed on 9/7/2021. (VrianaPortillo) (Entered: 09/07/2021) |
| 09/07/2021 | 🌐 535 (6 pgs) | Order (I) Authorizing the Retention of Glassratner Advisory & Capital Group LLC DBA B. Riley Advisory Services to Provide Chief Restructuring Officer and Certain Additional Personnel, (II) Designating Mark Shapiro Chief Restructuring Officer Effective as of the Petition Date, and (III) Granting Related Relief (Related Doc # 398) Signed on 9/7/2021. (VrianaPortillo) (Entered: 09/07/2021) |

| | | |
|---|---|---|
| 09/07/2021 | 🔵 536<br>(6 pgs) | Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals (Related Doc # 397) Signed on 9/7/2021. (VrianaPortillo) (Entered: 09/07/2021) |
| 09/07/2021 | 🔵 537<br>(4 pgs) | Order Authorizing and Approving the Employment of Pachulski Stang Ziehl & Jones LLP as Counsel to the Official Committee of Unsecured Creditors of the Debtors Effective as of July 27, 2021 (Related Doc # 402) Signed on 9/7/2021. (VrianaPortillo) (Entered: 09/07/2021) |
| 09/07/2021 | 🔵 538<br>(20 pgs; 3 docs) | Certificate of No Objection *to Application to Employ Jefferies LLC as Investment Banker* (Filed By Limetree Bay Services, LLC ).(Related document(s):247 Application to Employ) (Attachments: # 1 Exhibit 1 - Revised Order # 2 Exhibit 2 - Redline) (Rose, Jorian) (Entered: 09/07/2021) |
| 09/07/2021 | 🔵 539<br>(6 pgs) | Order Authorizing the Retention and Employment of Conway Mackenzie, LLC as Financial Advisor for the Official Committee of Unsecured Creditors (Related Doc # 403) Signed on 9/7/2021. (VrianaPortillo) (Entered: 09/07/2021) |
| 09/07/2021 | 🔵 540<br>(23 pgs) | Schedule A/B: Property Non-Individual , Schedule D Non-Individual- Creditors Having Claims Secured by Property , Schedule E/F: Creditors Who Have Unsecured Claims Non-Individual , Schedule G Non-Individual- Executory Contracts and Unexpired Leases , Schedule H Non-Individual- Codebtors *and Summary of Assets and Liabilities for Non-Individuals, and Declaration Under Penalty of Perjury for Non-Individual Debtors for Limetree Bay Services, LLC - Case No. 21-32351* (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 09/07/2021) |
| 09/07/2021 | 🔵 541<br>(8 pgs) | Statement of Financial Affairs for Non-Individual *for Limetree Bay Services, LLC - Case No. 21-32351* (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 09/07/2021) |
| 09/07/2021 | 🔵 542<br>(14 pgs) | Schedule A/B: Property Non-Individual , Schedule D Non-Individual- Creditors Having Claims Secured by Property , Schedule E/F: Creditors Who Have Unsecured Claims Non-Individual , Schedule G Non-Individual- Executory Contracts and Unexpired Leases , Schedule H Non-Individual- Codebtors *and Summary of Assets and Liabilities for Non-Individuals, and Declaration Under Penalty of Perjury for Non-Individual Debtors for Limetree Bay Refining Holdings, LLC - Case No. 21-32352* (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 09/07/2021) |
| | 🔵 543 | Statement of Financial Affairs for Non-Individual *for* |

| 09/07/2021 | (7 pgs) | *Limetree Bay Refining Holdings, LLC - Case No. 21-32352* (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 09/07/2021) |
| --- | --- | --- |
| 09/07/2021 | 544 (16 pgs) | Schedule A/B: Property Non-Individual , Schedule D Non-Individual- Creditors Having Claims Secured by Property , Schedule E/F: Creditors Who Have Unsecured Claims Non-Individual , Schedule G Non-Individual- Executory Contracts and Unexpired Leases , Schedule H Non-Individual- Codebtors *and Summary of Assets and Liabilities for Non-Individuals, and Declaration Under Penalty of Perjury for Non-Individual Debtors for Limitree Bay Refining Holdings II, LLC - Case No. 21-32353* (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 09/07/2021) |
| 09/07/2021 | 545 (7 pgs) | Statement of Financial Affairs for Non-Individual *for Limetree Bay Refining Holdings II, LLC - Case No. 21-32353* (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 09/07/2021) |
| 09/07/2021 | 546 (156 pgs) | Schedule A/B: Property Non-Individual , Schedule D Non-Individual- Creditors Having Claims Secured by Property , Schedule E/F: Creditors Who Have Unsecured Claims Non-Individual , Schedule G Non-Individual- Executory Contracts and Unexpired Leases , Schedule H Non-Individual- Codebtors *and Summary of Assets and Liabilities for Non-Individuals, and Declaration Under Penalty of Perjury for Non-Individual Debtors for Limetree Bay Refining, LLC - Case No. 21-32354* (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 09/07/2021) |
| 09/07/2021 | 547 (44 pgs) | Statement of Financial Affairs for Non-Individual *for Limetree Bay Refining, LLC - Case No. 21-32354* (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 09/07/2021) |
| 09/07/2021 | 548 (88 pgs) | Schedule A/B: Property Non-Individual , Schedule D Non-Individual- Creditors Having Claims Secured by Property , Schedule E/F: Creditors Who Have Unsecured Claims Non-Individual , Schedule G Non-Individual- Executory Contracts and Unexpired Leases , Schedule H Non-Individual- Codebtors *and Summary of Assets and Liabilities for Non-Individuals, and Declaration Under Penalty of Perjury for Non-Individual Debtors for Limetree Bay Refining Operating, LLC - Case No. 21-32355* (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 09/07/2021) |
| | 549 (7 pgs) | Statement of Financial Affairs for Non-Individual *for Limetree Bay Refining Operating, LLC - Case No. 21-32355* (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth |

| 09/07/2021 | | (Entered: 09/07/2021) |
|---|---|---|
| 09/07/2021 | 🔵 550<br>(40 pgs) | Schedule A/B: Property Non-Individual , Schedule D Non-Individual- Creditors Having Claims Secured by Property , Schedule E/F: Creditors Who Have Unsecured Claims Non-Individual , Schedule G Non-Individual- Executory Contracts and Unexpired Leases , Schedule H Non-Individual- Codebtors *and Summary of Assets and Liabilities for Non-Individuals, and Declaration Under Penalty of Perjury for Non-Individual Debtors for Limetree Bay Refining Marketing, LLC - Case No. 21-32356* (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 09/07/2021) |
| 09/07/2021 | 🔵 551<br>(9 pgs) | Statement of Financial Affairs for Non-Individual *for Limetree Bay Refining Marketing, LLC - Case No. 21-32356* (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 09/07/2021) |
| 09/08/2021 | 🔵 552<br>(9 pgs) | Certificate *of Supplemental Service* (Filed By BMC Group, Inc. ).(Related document(s):106 Meeting of Creditors Chapter 11 for Non-Individual Debtor Set, 434 Notice) (Ordaz, Steven) (Entered: 09/08/2021) |
| 09/09/2021 | 🔵 553<br>(7 pgs) | Certificate *of Supplemental Service* (Filed By BMC Group, Inc. ).(Related document(s):106 Meeting of Creditors Chapter 11 for Non-Individual Debtor Set, 434 Notice) (Ordaz, Steven) (Entered: 09/09/2021) |
| 09/09/2021 | 🔵 554<br>(14 pgs; 3 docs) | Certificate of No Objection */Certificate of Counsel to the Motion of the Official Committee of Unsecured Creditors for an Order Clarifying the Requirements to Provide Access to Confidential or Privileged Information* (Filed By Official Committee of Unsecured Creditors ).(Related document (s):405 Generic Motion) (Attachments: # 1 Proposed Order # 2 Redline Copy of Proposed Order) (Warner, Michael) (Entered: 09/09/2021) |
| 09/09/2021 | 🔵 555<br>(10 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):534 Order on Application to Employ, 535 Order on Application to Employ, 536 Generic Order) (Ordaz, Steven) (Entered: 09/09/2021) |
| 09/09/2021 | 🔵 556<br>(7 pgs) | BNC Certificate of Mailing. (Related document(s):534 Order on Application to Employ) No. of Notices: 28. Notice Date 09/09/2021. (Admin.) (Entered: 09/09/2021) |
| 09/09/2021 | 🔵 557<br>(9 pgs) | BNC Certificate of Mailing. (Related document(s):535 Order on Application to Employ) No. of Notices: 28. Notice Date 09/09/2021. (Admin.) (Entered: 09/09/2021) |

| | | |
|---|---|---|
| 09/09/2021 | 🌐 558<br>(9 pgs) | BNC Certificate of Mailing. (Related document(s):536 Generic Order) No. of Notices: 28. Notice Date 09/09/2021. (Admin.) (Entered: 09/09/2021) |
| 09/09/2021 | 🌐 559<br>(13 pgs) | BNC Certificate of Mailing. (Related document(s):537 Order on Application to Employ) No. of Notices: 28. Notice Date 09/09/2021. (Admin.) (Entered: 09/09/2021) |
| 09/09/2021 | 🌐 560<br>(9 pgs) | BNC Certificate of Mailing. (Related document(s):539 Order on Application to Employ) No. of Notices: 28. Notice Date 09/09/2021. (Admin.) (Entered: 09/09/2021) |
| 09/10/2021 | 🌐 561<br>(3 pgs) | Exhibit List, Witness List (Filed By Official Committee of Unsecured Creditors ).(Related document(s):172 Motion for Relief From Stay) (Warner, Michael) (Entered: 09/10/2021) |
| 09/10/2021 | 🌐 562<br>(3 pgs) | Order Authorizing the Employment and Retention of Beckstedt & Kuczynski LLP as Special Counsel to Debtors Effective as of July 14, 2021 (Related Doc # 414) Signed on 9/10/2021. (VrianaPortillo) (Entered: 09/10/2021) |
| 09/10/2021 | 🌐 563<br>(8 pgs) | Order Authorizing the Retention and Employment of Jefferies LLC as Investment Banker for the Debtors and Debtors in Possession Pursuant to 11 U.S.C. Section 327(a) and 328(a), Nunc Pro Tunc to July 16, 2021 (Related Doc # 247) Signed on 9/10/2021. (VrianaPortillo) (Entered: 09/10/2021) |
| 09/10/2021 | 🌐 564<br>(3 pgs) | Notice *of Rescheduled Hearing*. (Related document(s):172 Motion for Relief From Stay) Filed by Crowley Caribbean Services, LLC (Liggins, Demetra) (Entered: 09/10/2021) |
| 09/10/2021 | 🌐 565<br>(13 pgs; 2 docs) | Emergency Motion *to Amend Milestones and Bid Procedures Deadlines (Related Doc. Nos. 392 and 495)* Filed by Debtor Limetree Bay Services, LLC Hearing scheduled for 9/15/2021 at 09:30 AM at telephone and video conference. (Attachments: # 1 Exhibit A - Proposed Order) (Green, Elizabeth) (Entered: 09/10/2021) |
| 09/12/2021 | 🌐 566<br>(12 pgs) | BNC Certificate of Mailing. (Related document(s):562 Order on Application to Employ) No. of Notices: 28. Notice Date 09/12/2021. (Admin.) (Entered: 09/12/2021) |
| 09/12/2021 | 🌐 567<br>(11 pgs) | BNC Certificate of Mailing. (Related document(s):563 Order on Application to Employ) No. of Notices: 28. Notice Date 09/12/2021. (Admin.) (Entered: 09/12/2021) |
| | 🌐 568<br>(49 pgs; 2 docs) | Exhibit List, Witness List (Filed By Limetree Bay Services, LLC ).(Related document(s):565 Emergency Motion (with hearing date)) (Attachments: # 1 Exhibit 1 - First Day Declaration of Mark Shapiro) (Green, Elizabeth) (Entered: |

| 09/13/2021 | | 09/13/2021) |
|---|---|---|
| 09/13/2021 | ● | Meeting of Creditors Held. Debtor appeared. Hearing concluded on 9/13/2021. (Related document(s): Notice of Reset of Meeting of Creditors) (Duran, Hector) (Entered: 09/13/2021) |
| 09/13/2021 | ● 569 (8 pgs; 3 docs) | Notice *of Construction Lien Pursuant To 11 U.S.C. § 546(b)*. Filed by Universal Plant Services (VI), LLC (Attachments: # 1 Exhibit A # 2 Exhibit B) (Quejada, Maegan) (Entered: 09/13/2021) |
| 09/13/2021 | ● | Certificate of Email Notice. By agreement of the parties, the hearing on the motion for relief from stay has been adjourned. Movant to notice all interested parties and file a certificate of service with the court (Related document(s):172 Motion for Relief From Stay) **Hearing scheduled for 10/20/2021 at 09:30 AM by telephone and video conference.** (aalo) (Entered: 09/13/2021) |
| 09/13/2021 | | (private) Deadlines terminated. (aalo) (Entered: 09/13/2021) |
| 09/13/2021 | ● 570 (172 pgs; 2 docs) | Notice */ Worley Pan-American Corporation's Notice of Perfection of Lien Under 11 U.S.C. § 546(b)*. Filed by Worley Pan-American Corp. (Attachments: # 1 Exhibit A - Notice of Lien) (Mintz, Mark) (Entered: 09/13/2021) |
| 09/13/2021 | ● 571 (7 pgs) | Debtors Master Service List (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 09/13/2021) |
| 09/14/2021 | ● 572 (2 pgs) | Certificate of No Objection *by Prepetition Secured Parties, DIP Agent, and the Committee to Debtors' Emergency Motion to Amend Milestones and Bid Procedures Deadlines* (Filed By Limetree Bay Services, LLC ).(Related document(s):565 Emergency Motion (with hearing date)) (Green, Elizabeth) (Entered: 09/14/2021) |
| 09/14/2021 | ● 573 (3 pgs) | Agenda for Hearing on 9/15/2021 (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 09/14/2021) |
| 09/14/2021 | ● 574 (1 pg) | Notice of Appearance and Request for Notice Filed by Steven M. Berman Filed by on behalf of Rev 1 Energy, Inc. (Berman, Steven) (Entered: 09/14/2021) |
| 09/14/2021 | ● 575 (4 pgs) | Notice of Appearance and Request for Notice Filed by Gregg M Galardi Filed by on behalf of St. Croix Energy, LLLP (Galardi, Gregg) (Entered: 09/14/2021) |
| 09/14/2021 | ● 576 (1 pg) | Motion to Appear pro hac vice *of Gregg M. Galardi*. Filed by Interested Party St. Croix Energy, LLLP (Galardi, Gregg) (Entered: 09/14/2021) |

| | | |
|---|---|---|
| 09/14/2021 | 577 (1 pg) | Motion to Appear pro hac vice *of Matthew M. Roose*. Filed by Interested Party St. Croix Energy, LLLP (Galardi, Gregg) (Entered: 09/14/2021) |
| 09/14/2021 | 578 (1 pg) | Motion to Appear pro hac vice *of Stephen L. Iacovo*. Filed by Interested Party St. Croix Energy, LLLP (Galardi, Gregg) (Entered: 09/14/2021) |
| 09/15/2021 | 579 (10 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):562 Order on Application to Employ, 563 Order on Application to Employ, 565 Emergency Motion (with hearing date)) (Ordaz, Steven) (Entered: 09/15/2021) |
| 09/15/2021 | 580 (10 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):568 Exhibit List, Witness List) (Ordaz, Steven) (Entered: 09/15/2021) |
| 09/15/2021 | 581 (11 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):573 Agenda) (Ordaz, Steven) (Entered: 09/15/2021) |
| 09/15/2021 | 582 (2 pgs) | Courtroom Minutes. Time Hearing Held: 9:30 AM. Appearances: SEE ATTACHED. (Related document(s):565 Emergency Motion (with hearing date)) For the reasons stated on the record, the Court granted the Emergency Motion to Amend Milestones and Bid Procedures Deadlines 565. Order to be entered. (VrianaPortillo) (Entered: 09/15/2021) |
| 09/15/2021 | 583 (3 pgs) | Order Granting Debtors' Emergency Motion to Amend Milestones and BID Procedures Deadlines (Related Doc # 565) Signed on 9/15/2021. (VrianaPortillo) (Entered: 09/15/2021) |
| 09/15/2021 | 584 (1 pg) | PDF with attached Audio File. Court Date & Time [ 9/15/2021 9:30:21 AM ]. File Size [ 11361 KB ]. Run Time [ 00:23:40 ]. (admin). (Entered: 09/15/2021) |
| 09/15/2021 | 585 (1 pg) | Order Granting Motion To Appear pro hac vice - Gregg M. Galardi (Related Doc # 576) Signed on 9/15/2021. (emiller) (Entered: 09/15/2021) |
| 09/15/2021 | 586 (1 pg) | Order Granting Motion To Appear pro hac vice - Matthew M. Roose (Related Doc # 577) Signed on 9/15/2021. (emiller) (Entered: 09/15/2021) |
| 09/15/2021 | 587 (1 pg) | Order Granting Motion To Appear pro hac vice - Stephen L. Iacovo (Related Doc # 578) Signed on 9/15/2021. (emiller) (Entered: 09/15/2021) |

| | | |
|---|---|---|
| 09/15/2021 | 🔵 588<br>(21 pgs) | Response *Debtors' Response and Reservation of Rights to The Terminal Entities' Motion to Allow and Compel Payment of Administrative Expenses (REDACTED)* (related document (s):435 Application for Administrative Expenses). Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 09/15/2021) |
| 09/15/2021 | 🔵 589<br>(29 pgs; 3 docs) | Motion to Seal *Debtors' Motion for Entry of Order Authorizing the Filing Under Seal of the Debtors' Response and Reservation of Rights to The Terminal Entities' Motion to Allow and Compel Payment of Administrative Expenses* Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Redacted Version) (Green, Elizabeth) (Entered: 09/15/2021) |
| 09/15/2021 | 🔵 590<br>(21 pgs) | Sealed Document *Debtors' Response and Reservation of Rights to The Terminal Entities' Motion to Allow and Compel Payment of Administrative Expenses* (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 09/15/2021) |
| 09/15/2021 | 🔵 591<br>(3 pgs) | Response */Official Committee Of Unsecured Creditors Joinder To Debtors Response And Reservation Of Rights To The Terminal Entities Motion To Allow And Compel Payment Of Administrative Expenses [Docket No. 588]* (related document(s):435 Application for Administrative Expenses). Filed by Official Committee of Unsecured Creditors (Warner, Michael) (Entered: 09/15/2021) |
| 09/16/2021 | 🔵 592<br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Elizabeth A. Green. This is to order a transcript of Hearing on 9/15/2021 before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) Electronically forwarded to Judicial Transcribers of Texas on 9/17/2021. Estimated date of completion: 9/18/2021. Modified on 9/17/2021 (RachelWillborg). (Entered: 09/16/2021) |
| 09/16/2021 | 🔵 593<br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Catherine R. Hodges. This is to order a transcript of 9/15/2021 before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By BP Corporation North America Inc., an Indiana corporation, BP Products North America Inc., a Maryland corporation ). (Odell, Christopher) Copy request electronically forwarded to Judicial Transcribers of Texas on 9/17/2021. Estimated date of completion: 9/18/2021. Modified on 9/17/2021 (RachelWillborg). (Entered: 09/16/2021) |
| | 🔵 594<br>(2 pgs) | Notice of Appearance and Request for Notice Filed by Tyler William Greenwood Filed by on behalf of Control System |

| 09/16/2021 | | Technologies, LLC (Greenwood, Tyler) (Entered: 09/16/2021) |
| --- | --- | --- |
| 09/16/2021 | 🌐 595 (2 pgs) | Notice of Appearance and Request for Notice Filed by Jarrod B. Martin Filed by on behalf of Control System Technologies, LLC (Martin, Jarrod) (Entered: 09/16/2021) |
| 09/16/2021 | 🌐 596 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Henry Flores. This is to order a transcript of Hearing on September 15, 2021 before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Ad Hoc Group of Terminal Lenders ). (Flores, Henry) Copy request electronically forwarded to Judicial Transcribers of Texas on 9/17/2021. Estimated date of completion: 9/18/2021. Modified on 9/17/2021 (RachelWillborg). (Entered: 09/16/2021) |
| 09/17/2021 | 🌐 597 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Marty L. Brimmage, Jr.. This is to order a transcript of the September 15, 2021 Hearing before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Ad Hoc Term Lender Group ). (Brimmage, Marty) Copy request electronically forwarded to Judicial Transcribers of Texas on 9/17/2021. Estimated date of completion: 9/18/2021. Modified on 9/17/2021 (RachelWillborg). (Entered: 09/17/2021) |
| 09/17/2021 | 🌐 598 (8 pgs; 2 docs) | Declaration re: /Supplemental Declaration Of John T. Young, Jr. In Support Of The Official Committee Of Unsecured Creditors Application For An Order Authorizing The Retention And Employment Of Riveron RTS, LLC, As Financial Advisor [Dkt No. 403] (Filed By Official Committee of Unsecured Creditors ). (Attachments: # 1 Schedule A - Parties in Interest) (Warner, Michael) (Entered: 09/17/2021) |
| 09/17/2021 | 🌐 599 (11 pgs) | Certificate of Service (Filed By BMC Group, Inc. ).(Related document(s):583 Order on Emergency Motion, 589 Motion to Seal) (Ordaz, Steven) (Entered: 09/17/2021) |
| 09/17/2021 | 🌐 600 (6 pgs) | BNC Certificate of Mailing. (Related document(s):583 Order on Emergency Motion) No. of Notices: 28. Notice Date 09/17/2021. (Admin.) (Entered: 09/17/2021) |
| 09/17/2021 | 🌐 601 (4 pgs) | BNC Certificate of Mailing. (Related document(s):585 Order on Motion to Appear pro hac vice) No. of Notices: 28. Notice Date 09/17/2021. (Admin.) (Entered: 09/17/2021) |
| 09/17/2021 | 🌐 602 (4 pgs) | BNC Certificate of Mailing. (Related document(s):586 Order on Motion to Appear pro hac vice) No. of Notices: 28. Notice Date 09/17/2021. (Admin.) (Entered: 09/17/2021) |

| | | |
|---|---|---|
| 09/17/2021 | 🔵 603<br>(4 pgs) | BNC Certificate of Mailing. (Related document(s):587 Order on Motion to Appear pro hac vice) No. of Notices: 28. Notice Date 09/17/2021. (Admin.) (Entered: 09/17/2021) |
| 09/18/2021 | 🔓🔵 604<br>(22 pgs) | Transcript RE: Motion Hearing (Via Zoom) held on September 15, 2021 before Judge David R. Jones. Transcript is available for viewing in the Clerk's Office. Filed by Transcript access will be restricted through 12/17/2021. (mhen) (Entered: 09/18/2021) |
| 09/20/2021 | 🔵 605<br>(1 pg) | Notice of Filing of Official Transcript as to 604 Transcript. Parties notified (Related document(s):604 Transcript) (hcar) (Entered: 09/20/2021) |
| 09/20/2021 | 🔵 606<br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Limetree Bay Terminals, LLC. This is to order a transcript of Hearing 9/15/2021 before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Limetree Bay Terminals, LLC ). (Guffy, Philip) Copy request electronically forwarded to Judicial Transcribers of Texas on 9/21/2021. Estimated date of completion: 9/22/2021. Modified on 9/21/2021 (RachelWillborg). (Entered: 09/20/2021) |
| 09/22/2021 | 🔵 607<br>(17 pgs; 6 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 7/31/2021, $0 disbursed (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Cash Receipts and Disbursements # 3 Attachment 3 - Unaudited Financial Statement # 4 Attachment 4 - Bank Statements & Reconciliations # 5 Attachment 5 - Schedule of Insurance) (Green, Elizabeth) (Entered: 09/22/2021) |
| 09/22/2021 | 🔵 608<br>(10 pgs; 3 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 7/31/2021, $0 disbursed (Filed By Limetree Bay Refining Holdings, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Schedule of Insurance) (Green, Elizabeth) (Entered: 09/22/2021) |
| 09/22/2021 | 🔵 609<br>(17 pgs; 6 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 7/31/2021, $0 disbursed (Filed By Limetree Bay Refining Holdings II, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Cash Receipts and Disbursements # 3 Attachment 3 - Unaudited Financial Statement # 4 Attachment 4 - Bank Statements & Reconciliations # 5 Attachment 5 - Schedule of Insurance) (Green, Elizabeth) (Entered: 09/22/2021) |
| 09/22/2021 | 🔵 610<br>(54 pgs; 7 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 7/31/2021, $5708893 disbursed (Filed By Limetree Bay Refining, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Cash |

| | | |
|---|---|---|
| 09/22/2021 | | Receipts and Disbursements # 3 Attachment 3 - Unaudited Financial Statements # 4 Attachment 4 - Bank Statement Schedule # 5 Attachment 5 - Bank Statements & Reconciliations # 6 Attachment 6 - Schedule of Insurance) (Green, Elizabeth) (Entered: 09/22/2021) |
| 09/22/2021 | 611 (21 pgs; 7 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 7/31/2021, $2656923 disbursed (Filed By Limetree Bay Refining Operating, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Cash Receipts and Disbursements # 3 Attachment 3 - Unaudited Financial Statements # 4 Attachment 4 - Bank Statement Schedule # 5 Attachment 5 - Bank Statements & Reconciliations # 6 Attachment 6 - Schedule of Insurance) (Green, Elizabeth) (Entered: 09/22/2021) |
| 09/22/2021 | 612 (43 pgs; 7 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 7/31/2021, $119210 disbursed (Filed By Limetree Bay Refining Marketing, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Cash Receipts and Disbursements # 3 Attachment 3 - Unaudited Financial Statements # 4 Attachment 4 - Bank Statement Schedule # 5 Attachment 5 - Bank Statements & Reconciliations # 6 Attachment 6 - Schedule of Insurance) (Green, Elizabeth) (Entered: 09/22/2021) |
| 09/22/2021 | 613 (11 pgs; 3 docs) | Certificate of No Objection *to Application to Employ Hughes Arrell Kinchen LLP as Special Counsel* (Filed By Limetree Bay Services, LLC ).(Related document(s):501 Application to Employ) (Attachments: # 1 Exhibit 1 - Revised Proposed Order # 2 Exhibit 2 - Redlined Version) (Green, Elizabeth) (Entered: 09/22/2021) |
| 09/22/2021 | 614 (11 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):598 Declaration) (Ordaz, Steven) (Entered: 09/22/2021) |
| 09/22/2021 | 615 (52 pgs) | Notice *of Monthly Fee Statement Of Pachulski Stang Ziehl & Jones LLP For Compensation For Services And Reimbursement Of Expenses As Counsel To The Official Committee Of Unsecured Creditors For The Period From July 27, 2021 Through August 31, 2021.* Filed by Official Committee of Unsecured Creditors (Warner, Michael) (Entered: 09/22/2021) |
| 09/22/2021 | 616 (35 pgs) | Notice *of First Monthly Fee Statement Of Riveron RTS, LLC For Payment Of Interim Compensation And Reimbursement Of Expenses For The Period July 29, 2021 Through August 31, 2021.* Filed by Official Committee of Unsecured Creditors (Warner, Michael) (Entered: 09/22/2021) |
| | 617 | Statement *First Monthly Fee Statement of Baker & Hostetler* |

| | | |
|---|---|---|
| 09/22/2021 | (123 pgs; 2 docs) | *LLP for Services Rendered and Reimbursement of Expenses incurred from July 12, 2021 through July 31, 2021* (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit A - July 2021 Invoices) (Green, Elizabeth) (Entered: 09/22/2021) |
| 09/22/2021 | 618 (5 pgs) | Order Clarifying the Requirements to Provide Access to Confidential or Privileged Information (Related Doc # 405) Signed on 9/22/2021. (VrianaPortillo) (Entered: 09/22/2021) |
| 09/22/2021 | 619 (10 pgs) | BNC Certificate of Mailing. (Related document(s):605 Notice of Filing of Official Transcript (Form)) No. of Notices: 29. Notice Date 09/22/2021. (Admin.) (Entered: 09/22/2021) |
| 09/23/2021 | 620 (53 pgs; 2 docs) | Notice *of Lien Pursuant to 11 U.S.C. § 546(b)*. Filed by EnerMech Mechanical Services, Inc. (Attachments: # 1 Exhibit A) (Pham, Jacqueline) (Entered: 09/23/2021) |
| 09/23/2021 | 621 (9 pgs) | Stipulation By Official Committee of Unsecured Creditors and /Stipulation Between Committee And Prepetition Agents Clarifying Certain Committee Challenge Rights Pursuant To Final Postpetition Financing Order. Does this document include an agreed order or otherwise request that the judge sign a document? No. (Filed By Official Committee of Unsecured Creditors ).(Related document(s):495 Order on Motion to Use Cash Collateral, Order on Emergency Motion) (Warner, Michael) (Entered: 09/23/2021) |
| 09/24/2021 | 622 (3 pgs) | Certificate (Filed By BMC Group, Inc. ).(Related document (s):615 Notice, 616 Notice) (Ordaz, Steven) (Entered: 09/24/2021) |
| 09/24/2021 | 623 (219 pgs; 7 docs) | *Motion OF VWNA CARIBBEAN, LLC FOR ENTRY OF AN ORDER: (A)AUTHORIZING AND DIRECTING DEBTOR LIMETREE BAY REFINING, LLC TO REJECT AN EXECUTORY CONTRACT EFFECTIVE JULY 27, 2021; (B) AUTHORIZING VNWA CARIBBEAN, LLC TO TERMINATE SAID CONTRACT AND REMOVE PROPERTY AND MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1) AS NECESSARY; AND (C) APPROVING SALE OF PROPERTY TO LIMETREE BAY REFINING, LLC* Filed by Creditor VWNA Caribbean LLC (Attachments: # 1 Declaration of Van A. Cates # 2 Exhibit A to Declaration of Van A. Cates # 3 Exhibit B to Declaration of Van A. Cates # 4 Exhibit C to Declaration of Van A. Cates # 5 Exhibit D to Declaration of Van A. Cates # 6 Proposed Order) (Crapo, David) (Entered: 09/24/2021) |
| 09/24/2021 | 624 (2 pgs) | Notice of Appearance and Request for Notice Filed by Brian A. Baker Filed by on behalf of DNOW L.P. d/b/a DistributionNOW (Baker, Brian) (Entered: 09/24/2021) |

| 09/24/2021 | 625<br>(8 pgs) | BNC Certificate of Mailing. (Related document(s):618 Generic Order) No. of Notices: 34. Notice Date 09/24/2021. (Admin.) (Entered: 09/24/2021) |
| 09/25/2021 | 626<br>(30 pgs; 3 docs) | Application to Employ The Claro Group, LLC as Insurance Consultant. Objections/Request for Hearing Due in 21 days. Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Van Epps Declaration # 2 Exhibit B - Proposed Order) (Green, Elizabeth) (Entered: 09/25/2021) |
| 09/27/2021 | 627<br>(11 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):626 Application to Employ) (Ordaz, Steven) (Entered: 09/27/2021) |
| 09/27/2021 | 628<br>(2 pgs) | Order Granting Debtors' Fourth Motion for an Extension of Time to File Schedules and Statements of Financials Affairs (Related Doc # 521) Signed on 9/27/2021. (VrianaPortillo) (Entered: 09/27/2021) |
| 09/27/2021 | 629<br>(2 pgs) | Order Granting Debtors' Motion for Entry of Order Authorizing the Filing Under Seal of the Debtors' Response and Reservation of Rights to the Terminal Entities' Motion to Allow and Compel Payment of Administrative Expenses (Related Doc # 589) Signed on 9/27/2021. (VrianaPortillo) (Entered: 09/27/2021) |
| 09/27/2021 | 630<br>(4 pgs) | Order Authorizing the Employment and Retention of Hughes Arrell Kinchen LLP as Special Counsel to Debtors Nun Pro Tunc to July 13, 2021 (Related Doc # 501) Signed on 9/27/2021. (VrianaPortillo) (Entered: 09/27/2021) |
| 09/27/2021 | 631<br>(59 pgs; 4 docs) | Application for Administrative Expenses . Objections/Request for Hearing Due in 21 days. Filed by Creditor Comdata Inc. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Proposed Order) (Edson, Andrew) (Entered: 09/27/2021) |
| 09/27/2021 | 632<br>(11 pgs; 2 docs) | Statement *First Monthly Fee Statement of Hughes Arrell Kinchen LLP for Services Rendered and Reimbursement of Expenses Incurred from July 13, 2021 through August 31, 2021* (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit A - Time and Expense Records) (Green, Elizabeth) (Entered: 09/27/2021) |
| 09/28/2021 | 633<br>(1 pg) | Creditor Request for Notices (Filed By Weldship Industries, Inc. ). (Smillie, Douglas) (Entered: 09/28/2021) |
| 09/28/2021 | 634<br>(7 pgs) | Debtors Master Service List (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 09/28/2021) |
| | 635 | Statement *Second Monthly Fee Statement of Baker &* |

| | | |
|---|---|---|
| 09/29/2021 | (168 pgs; 2 docs) | *Hostetler LLP for Services Rendered and Reimbursement of Expenses Incurred from August 1, 2021 through August 31, 2021* (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit A - Time and Expense Records) (Green, Elizabeth) (Entered: 09/29/2021) |
| 09/29/2021 | 636 (5 pgs) | BNC Certificate of Mailing. (Related document(s):628 Order on Motion to Extend Deadline to File Schedules) No. of Notices: 49. Notice Date 09/29/2021. (Admin.) (Entered: 09/29/2021) |
| 09/29/2021 | 637 (7 pgs) | BNC Certificate of Mailing. (Related document(s):630 Order on Application to Employ) No. of Notices: 35. Notice Date 09/29/2021. (Admin.) (Entered: 09/29/2021) |
| 09/29/2021 | 638 (3 pgs) | BNC Certificate of Mailing. (Related document(s):629 Order on Motion to Seal) No. of Notices: 6. Notice Date 09/29/2021. (Admin.) (Entered: 09/29/2021) |
| 10/05/2021 | 639 (10 pgs; 2 docs) | Statement *First Monthly Fee Statement of Beckstedt & Kuczynski LLP for Services Rendered from July 14, 2021 through August 31, 2021* (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit A - Time and Expense Records) (Green, Elizabeth) (Entered: 10/05/2021) |
| 10/05/2021 | 640 (83 pgs) | Notice *of Request of Rule 2004 Production of Documents*. Filed by Control System Technologies, LLC (Greenwood, Tyler) (Entered: 10/05/2021) |
| 10/06/2021 | 641 (10 pgs) | Stipulation By Official Committee of Unsecured Creditors and Debtors/Agreed Protective Order. Does this document include an agreed order or otherwise request that the judge sign a document? Yes. (Filed By Official Committee of Unsecured Creditors ). (Warner, Michael) (Entered: 10/06/2021) |
| 10/06/2021 | 642 (15 pgs; 6 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 8/31/2021, $5103 disbursed (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Statement of Cash Receipts & Disbursements # 3 Attachment 3 - Unaudited Financial Statement # 4 Attachment 4 - Bank Statements & Reconciliations # 5 Attachment 5 - Schedule of Insurance) (Green, Elizabeth) (Entered: 10/06/2021) |
| 10/06/2021 | 643 (8 pgs; 3 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 8/31/2021, $0 disbursed (Filed By Limetree Bay Refining Holdings, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Schedule of Insurance) (Green, Elizabeth) (Entered: 10/06/2021) |
| | | |

| | | |
|---|---|---|
| 10/06/2021 | 644<br>(15 pgs; 6 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 8/31/2021, $0 disbursed (Filed By Limetree Bay Refining Holdings II, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Statement of Cash Receipts & Disbursements # 3 Attachment 3 - Unaudited Financial Statement # 4 Attachment 4 - Bank Statements & Reconciliations # 5 Attachment 5 - Schedule of Insurance) (Green, Elizabeth) (Entered: 10/06/2021) |
| 10/06/2021 | 645<br>(51 pgs; 7 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 8/31/2021, $8589399 disbursed (Filed By Limetree Bay Refining, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Summary of Cash Receipts & Disbursements # 3 Attachment 3 - Unaudited Financial Statement # 4 Attachment 4 - Schedule of Bank Accounts # 5 Attachment 5 - Bank Statements & Reconciliations # 6 Attachment 6 - Schedule of Insurance) (Green, Elizabeth) (Entered: 10/06/2021) |
| 10/06/2021 | 646<br>(19 pgs; 7 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 8/31/2021, $2830442 disbursed (Filed By Limetree Bay Refining Operating, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Statement of Cash Receipts & Disbursements # 3 Attachment 3 - Unaudited Financial Statement # 4 Attachment 4 - Schedule of Bank Accounts # 5 Attachment 5 - Bank Statements & Reconciliations # 6 Attachment 6 - Schedule of Insurance) (Green, Elizabeth) (Entered: 10/06/2021) |
| 10/06/2021 | 647<br>(38 pgs; 7 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 8/31/2021, $78911 disbursed (Filed By Limetree Bay Refining Marketing, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Statement of Cash Receipts & Disbursements # 3 Attachment 3 - Unaudited Financial Statement # 4 Attachment 4 - Schedule of Bank Accounts # 5 Attachment 5 - Bank Statements & Reconciliations # 6 Attachment 6 - Schedule of Insurance) (Green, Elizabeth) (Entered: 10/06/2021) |
| 10/06/2021 | 648<br>(11 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):628 Order on Motion to Extend Deadline to File Schedules, 629 Order on Motion to Seal, 630 Order on Application to Employ) (Ordaz, Steven) (Entered: 10/06/2021) |
| 10/11/2021 | 649<br>(83 pgs) | Amended Notice *of Request of Rule 2004 Production of Documents*. (Related document(s):640 Notice) Filed by Control System Technologies, LLC (Greenwood, Tyler) (Entered: 10/11/2021) |
| | 650<br>(6 pgs; 2 docs) | Notice *of Defaults and Forbearance Agreement Under DIP Financing Documents*. Filed by 405 Sentinel LLC |

| | | |
|---|---|---|
| 10/11/2021 | | (Attachments: # 1 Exhibit A - Notice of Defaults and Forbearance Agreement) (Brookner, Jason) (Entered: 10/11/2021) |
| 10/12/2021 | 651 (3 pgs) | Notice *of Partial Withdrawal of Subpoena for 2004 Examinations.* (Related document(s):640 Notice, 649 Notice) Filed by Control System Technologies, LLC (Greenwood, Tyler) (Entered: 10/12/2021) |
| 10/12/2021 | 652 (25 pgs; 2 docs) | Statement *First Monthly Fee Statement of B. Riley Advisory Services for Services Rendered and Reimbursement of Expenses Incurred from July 12, 2021 through July 31, 2021* (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit A - Time and Expense Records) (Green, Elizabeth) (Entered: 10/12/2021) |
| 10/13/2021 | | Certificate of Telephone Notice. At the request of the Debtor, the Court will hold a status hearing on Monday, October 18, 2021 at 9:30 AM. Movant to notice all interested parties and file a certificate of service with the court (Related document(s):1 Voluntary Petition (Chapter 11)) **Virtual Status Hearing scheduled for 10/18/2021 at 09:30 AM** (aalo) (Entered: 10/13/2021) |
| 10/13/2021 | 653 (2 pgs) | Notice *of Second Partial Withdrawal of Subpoena for Rule 2004 Examination.* (Related document(s):640 Notice, 649 Notice) Filed by Control System Technologies, LLC (Martin, Jarrod) (Entered: 10/13/2021) |
| 10/13/2021 | 654 (3 pgs) | Notice *of Status Hearing at 9:30 a.m. on October 18, 2021.* Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 10/13/2021) |
| 10/13/2021 | 655 (7 pgs) | Debtors Master Service List (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 10/13/2021) |
| 10/15/2021 | 656 (34 pgs) | Notice *of Monthly Fee Statement Of Pachulski Stang Ziehl & Jones LLP For Compensation For Services And Reimbursement Of Expenses As Counsel To The Official Committee Of Unsecured Creditors For The Period From September 1, 2021 Through September 30, 2021.* Filed by Official Committee of Unsecured Creditors (Warner, Michael) (Entered: 10/15/2021) |
| 10/15/2021 | 657 (5 pgs; 2 docs) | Notice *of Default and Reservation of Rights under DIP Financing Documents.* Filed by 405 Sentinel LLC (Attachments: # 1 Exhibit A) (Brookner, Jason) (Entered: 10/15/2021) |
| | 658 (3 pgs) | Notice *of Response to Notice of Default and Reservation of Rights under DIP Financing Documents.* (Related document |

| 10/17/2021 | | (s):657 Notice) Filed by J. Aron & Company LLC (Newcomb, Christopher) (Entered: 10/17/2021) |
|---|---|---|
| 10/18/2021 | 🔵 659 (2 pgs) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Jason S. Brookner. This is to order a transcript of October 18, 2021- Status Conference before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By 405 Sentinel LLC, Arena Investors, LP ). (Brookner, Jason) Electronically forwarded to Judicial Transcribers of Texas on 10-19-2021. Estimated completion date: 10-20-2021. Modified on 10/19/2021 (MelissaMorgan). (Entered: 10/18/2021) |
| 10/18/2021 | 🔵 660 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Henry Flores. This is to order a transcript of October 18, 2021 Status Conference before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Ad Hoc Group of Terminal Lenders ). (Flores, Henry) Copy request was forwarded to original transcriber: Judicial Transcribers of Texas on 10-19-2021. Estimated completion date: 10-20-2021. Modified on 10/19/2021 (MelissaMorgan). (Entered: 10/18/2021) |
| 10/18/2021 | 🔵 661 (3 pgs) | Notice of Rescheduled Hearing. (Related document(s):172 Motion for Relief From Stay) Filed by Crowley Caribbean Services, LLC (Liggins, Demetra) (Entered: 10/18/2021) |
| 10/18/2021 | 🔵 662 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Grace Ojionuka. This is to order a transcript of 10/18/2021 Status Conference before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By BP Corporation North America Inc., an Indiana corporation, BP Products North America Inc., a Maryland corporation ). (Odell, Christopher) Copy request electronically forwarded to Judicial Transcribers of Texas on 10/18/2021. Estimated completion date: 10/19/2021. Modified on 10/19/2021 (ClaudiaGutierrez). (Entered: 10/18/2021) |
| 10/18/2021 | 🔵 663 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by J. Aron / Chris Newcomb. This is to order a transcript of Hearing 10.18.2021 before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By J. Aron & Company LLC ). (Newcomb, Christopher) Copy request electronically forwarded to Judicial Transcribers of Texas on 10/18/2021. Estimated completion date: 10/19/2021. Modified on 10/19/2021 (ClaudiaGutierrez). (Entered: 10/18/2021) |
| 10/18/2021 | | (private) Deadlines terminated. (aalo) (Entered: 10/18/2021) |
| | 🔵 664 | Courtroom Minutes. Time Hearing Held: 9:30 AM. |

| | | |
|---|---|---|
| 10/18/2021 | (3 pgs) | Appearances: SEE ATTACHED. (Related document(s): Certificate of Notice) Status Conference held. The parties a status report. **Status conference is continued to 10/21/2021 at 12:30 PM by telephone and video conference.** (VrianaPortillo) (Entered: 10/18/2021) |
| 10/18/2021 | ⬤ | Certificate of Email Notice. Contacted Elizabeth Green. Movant to notice all interested parties and file a certificate of service with the court (Related document(s):583 Order on Emergency Motion) **Sale Hearing scheduled for 11/23/2021 at 09:00 AM by telephone and video conference.** (aalo) (Entered: 10/18/2021) |
| 10/18/2021 | ⬤ 665 (11 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):654 Notice) (Ordaz, Steven) (Entered: 10/18/2021) |
| 10/18/2021 | ⬤ 666 (3 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):656 Notice) (Ordaz, Steven) (Entered: 10/18/2021) |
| 10/19/2021 | ⬤ 667 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Marty L. Brimmage, Jr.. This is to order a transcript of the October 18, 2021 Hearing before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Ad Hoc Term Lender Group ). (Brimmage, Marty) Copy request was electronically forwarded to Judicial Transcribers of Texas on 10/19/2021. Expected completion date 10/20/2021. Modified on 10/19/2021 (MelissaMorgan). (Entered: 10/19/2021) |
| 10/19/2021 | ⬤ | Certificate of Email Notice. Contacted Danielle Merola. Movant to notice all interested parties and file a certificate of service with the court (Related document(s):172 Motion for Relief From Stay) **Hearing rescheduled for 11/2/2021 at 03:30 PM by telephone and video conference.** (aalo) (Entered: 10/19/2021) |
| 10/19/2021 | | (private) Deadlines terminated. (aalo) (Entered: 10/19/2021) |
| 10/19/2021 | ⬤ 668 (24 pgs) | Notice *of Second Monthly Fee Statement Of Riveron RTS, LLC For Payment Of Interim Compensation And Reimbursement Of Expenses For The Period September 1, 2021 Through September 30, 2021*. Filed by Official Committee of Unsecured Creditors (Warner, Michael) (Entered: 10/19/2021) |
| | ⬤ 669 (75 pgs; 16 docs) | Adversary case 21-03933. Nature of Suit: (14 (Recovery of money/property - other)) Complaint by Sedgwick Claims Management. Services, Inc. against Limetree Bay Terminals, LLC. Fee Amount $350 (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 |

| | | |
|---|---|---|
| 10/19/2021 | | Exhibit F # 7 Exhibit G # 8 Exhibit H # 9 Exhibit I # 10 Exhibit J # 11 Exhibit K # 12 Exhibit L # 13 Exhibit M # 14 Exhibit N # 15 Adversary Proceeding Cover Sheet) (Lim, Lloyd) (Entered: 10/19/2021) |
| 10/19/2021 | 670 (9 pgs; 3 docs) | Certificate of No Objection *to Debtors' Application to Employ The Claro Group, LLC as Insurance Consultant* (Filed By Limetree Bay Services, LLC ).(Related document(s):626 Application to Employ) (Attachments: # 1 Exhibit 1 - Revised Proposed Order # 2 Exhibit 2 - Redlined Version) (Green, Elizabeth) (Entered: 10/19/2021) |
| 10/20/2021 | 671 (38 pgs) | Transcript RE: Status Conference (Via Zoom) held on October 18, 2021 before Judge David R. Jones. Transcript is available for viewing in the Clerk's Office. Filed by Transcript access will be restricted through 01/18/2022. (mhen) (Entered: 10/20/2021) |
| 10/21/2021 | 672 (107 pgs; 2 docs) | Statement *Third Monthly Fee Statement of Baker & Hostetler LLP for Services Rendered and Reimbursement of Expenses Incurred from September 1, 2021 through September 30, 2021* (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit A - Time and Expense Records) (Green, Elizabeth) (Entered: 10/21/2021) |
| 10/21/2021 | 673 (8 pgs; 2 docs) | Statement *Second Monthly Fee Statement of Beckstedt & Kuczynski LLP for Services Rendered from September 1, 2021 through September 30, 2021* (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit A - Time and Expense Records) (Green, Elizabeth) (Entered: 10/21/2021) |
| 10/21/2021 | 674 (1 pg) | Notice of Filing of Official Transcript as to 671 Transcript. Parties notified (Related document(s):671 Transcript) (GabrielleClair) (Entered: 10/21/2021) |
| 10/21/2021 | ◔ | Certificate of Telephone Notice. Contacted Elizabeth Green. The Status Hearing set for 10/21/2021 at 12:30 PM has been adjourned. Movant to notice all interested parties and file a certificate of service with the court (Related document(s):664 Courtroom Minutes) **Status Hearing rescheduled for 10/25/2021 at 09:30 AM by telephone and video conference.** (aalo) (Entered: 10/21/2021) |
| 10/21/2021 | | (private) Deadlines terminated. (aalo) (Entered: 10/21/2021) |
| 10/21/2021 | 675 (3 pgs) | Notice *of Rescheduled Status Conference from October 21, 2021 at 12:30 p.m. CDT to October 25, 2021 at 9:30 a.m. CDT.* (Related document(s):664 Courtroom Minutes, Certificate of Notice) Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 10/21/2021) |
| | | |

| | | |
|---|---|---|
| 10/21/2021 | 676 (3 pgs) | Order Authorizing the Employment and Retention of the Claro Group, LLC as Insurance Consultant Effective August 26, 2021 (Related Doc # 626) Signed on 10/21/2021. (VrianaPortillo) (Entered: 10/21/2021) |
| 10/21/2021 | 677 (36 pgs; 2 docs) | Statement *Second Monthly Fee Statement of B. Riley Advisory Services for Services Rendered and Reimbursement of Expenses Incurred from August 1, 2021 through August 31, 2021* (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit A - Time and Expense Records) (Green, Elizabeth) (Entered: 10/21/2021) |
| 10/21/2021 | 678 (81 pgs; 2 docs) | Application for Compensation */First Interim Fee Application Of Pachulski Stang Ziehl & Jones, LLP For Allowance Of Compensation For Services Rendered As Counsel To The Official Committee Of Unsecured Creditors For The Period From July 27, 2021 Through September 30, 2021* for Official Committee of Unsecured Creditors, Creditor Comm. Aty, Period: 7/27/2021 to 9/30/2021, Fee: $797,719.50, Expenses: $4,669.18. Objections/Request for Hearing Due in 21 days. Filed by Creditor Committee Official Committee of Unsecured Creditors (Attachments: # 1 Proposed Order) (Warner, Michael) (Entered: 10/21/2021) |
| 10/21/2021 | 679 (60 pgs; 2 docs) | Application for Compensation */First Interim Application Of Riveron RTS, LLC For Allowance Of Compensation For Services Rendered And Reimbursement Of Expenses Incurred As Financial Advisor To The Official Committee Of Unsecured Creditors For The Period Of July 29, 2021 Through September 30, 2021* for Official Committee of Unsecured Creditors, Financial Advisor, Period: 7/29/2021 to 9/30/2021, Fee: $723617.00, Expenses: $7,102.66. Objections/Request for Hearing Due in 21 days. Filed by Creditor Committee Official Committee of Unsecured Creditors (Attachments: # 1 Proposed Order) (Warner, Michael) (Entered: 10/21/2021) |
| 10/21/2021 | 680 (24 pgs; 5 docs) | Interim Application for Compensation *First Interim Fee Application of Hughes Arrell Kinchen LLP as Special Counsel for the Debtors for the period July 13, 2021 through September 30, 2021* for Limetree Bay Services, LLC, Special Counsel, Period: 7/13/2021 to 9/30/2021, Fee: $38,545.00, Expenses: $3,129.05. Objections/Request for Hearing Due in 21 days. Filed by Attorney Elizabeth A Green (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Kinchen Declaration # 3 Exhibits C-1 thru C-2 - Summary of Compensation and Expenses # 4 Exhibit D - Time Records) (Green, Elizabeth) (Entered: 10/21/2021) |
| | 681 (413 pgs; 11 docs) | Interim Application for Compensation *First Interim Fee Application of Baker & Hostetler LLP as Attorneys for the Debtors for the period July 12, 2021 through September 30,* |

| | | |
|---|---|---|
| 10/21/2021 | | *2021* for Elizabeth A Green, Debtor's Attorney, Period: 7/12/2021 to 9/30/2021, Fee: $2,449,294.50, Expenses: $14,953.98. Objections/Request for Hearing Due in 21 days. Filed by Attorney Elizabeth A Green (Attachments: # 1 Exhibit A - Customary and Comparable Compensation Disclosures # 2 Exhibit B - Summary of Timekeepers # 3 Exhibit C-1 - Budget # 4 Exhibit C-2 - Staffing Plan # 5 Exhibit D-1 - Summary of Compensation by Project Category # 6 Exhibit D-2 - Summary of Expenses # 7 Exhibit E-1 - July 2021 Invoices # 8 Exhibit E-2 - August 2021 Invoices # 9 Exhibit E-3 - September 2021 Invoices # 10 Exhibit F - Proposed Order) (Green, Elizabeth) (Entered: 10/21/2021) |
| 10/21/2021 | 🔵 682 (32 pgs; 2 docs) | Statement *Third Monthly Fee Statement of B. Riley Advisory Services for Services Rendered and Reimbursement of Expenses Incurred from September 1, 2021 through September 30, 2021* (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit A - Time and Expense Records) (Green, Elizabeth) (Entered: 10/21/2021) |
| 10/21/2021 | 🔵 683 (27 pgs; 5 docs) | Interim Application for Compensation *First Interim Fee Application of The Claro Group, LLC, as Insurance Consultant for the Debtors, for the period August 26, 2021 through September 30, 2021* for Limetree Bay Services, LLC, Consultant, Period: 8/26/2021 to 9/30/2021, Fee: $73,009.00, Expenses: $125.00. Objections/Request for Hearing Due in 21 days. Filed by Attorney Elizabeth A Green (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Van Epps Declaration # 3 Exhibits C-1 thru C-2 - Summary of Compensation and Expenses # 4 Exhibit D - Time Records) (Green, Elizabeth) (Entered: 10/21/2021) |
| 10/21/2021 | 🔵 684 (104 pgs; 5 docs) | Interim Application for Compensation *First Interim Fee Application of GlassRatner Advisory & Capital LLC d/b/a B. Riley Advisory Services as Chief Restructuring Officer for the Debtors from July 12, 2021 through September 30, 2021* for Limetree Bay Services, LLC, Other Professional, Period: 7/12/2021 to 9/30/2021, Fee: $1,244,553.00, Expenses: $24,386.24. Objections/Request for Hearing Due in 21 days. Filed by Attorney Elizabeth A Green (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Shapiro Declaration # 3 Exhibits C-1 thru C-4 - Summary of Compensation and Expenses # 4 Exhibit D - Time Records) (Green, Elizabeth) (Entered: 10/21/2021) |
| | 🔵 685 (30 pgs; 5 docs) | Interim Application for Compensation *First Interim Fee Application of Beckstedt & Kuczynski LLP as Special Counsel to the Debtors for the period July 14, 2021 through September 30, 2021* for Limetree Bay Services, LLC, Special Counsel, Period: 7/14/2021 to 9/30/2021, Fee: $10,215.00, Expenses: $0.00. Objections/Request for Hearing Due in 21 days. Filed by Attorney Elizabeth A |

| | | |
|---|---|---|
| 10/21/2021 | | Green (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Beckstedt Declaration # 3 Exhibits C-1 thru C-4 - Summary of Compensation # 4 Exhibit D - Time Records) (Green, Elizabeth) (Entered: 10/21/2021) |
| 10/21/2021 | 686 (50 pgs; 4 docs) | Interim Application for Compensation *First Interim Fee Application of Jefferies LLC as Investment Banker to the Debtors for the period July 12, 2021 through September 30, 2021* for Limetree Bay Services, LLC, Other Professional, Period: 7/12/2021 to 9/30/2021, Fee: $300,000.00, Expenses: $32,876.78. Objections/Request for Hearing Due in 21 days. Filed by Attorney Elizabeth A Green (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Time Records # 3 Exhibit C - Expense Detail) (Green, Elizabeth) (Entered: 10/21/2021) |
| 10/23/2021 | 687 (4 pgs) | BNC Certificate of Mailing. (Related document(s):674 Notice of Filing of Official Transcript (Form)) No. of Notices: 36. Notice Date 10/23/2021. (Admin.) (Entered: 10/23/2021) |
| 10/23/2021 | 688 (6 pgs) | BNC Certificate of Mailing. (Related document(s):676 Order on Application to Employ) No. of Notices: 36. Notice Date 10/23/2021. (Admin.) (Entered: 10/23/2021) |
| 10/25/2021 | 689 (1 pg) | PDF with attached Audio File. Court Date & Time [ 10/25/2021 9:30:19 AM ]. File Size [ 4880 KB ]. Run Time [ 00:10:10 ]. (admin). (Entered: 10/25/2021) |
| 10/25/2021 | 690 (3 pgs) | Courtroom Minutes. Time Hearing Held: 9:30 AM. Appearances: SEE ATTACHED. (Related document(s): Certificate of Notice) **Today's Status conference is continued to 10/29/2021 at 09:00 AM by telephone and video conference.** A hearing on a to be filed emergency motion to approve compromise is scheduled for **10/29/2021 at 9:00 AM by telephone and video conference.** (VrianaPortillo) (Entered: 10/25/2021) |
| 10/26/2021 | 691 (3 pgs) | Certificate *of* Service (Filed By BMC Group, Inc. ).(Related document(s):668 Notice) (Ordaz, Steven) (Entered: 10/26/2021) |
| 10/26/2021 | 692 (8 pgs) | Certificate *of* Service (Filed By BMC Group, Inc. ).(Related document(s):678 Application for Compensation, 679 Application for Compensation) (Ordaz, Steven) (Entered: 10/26/2021) |
| | 693 (20 pgs) | Certificate *of* Service (Filed By BMC Group, Inc. ).(Related document(s):675 Notice, 680 Application for Compensation, 681 Application for Compensation, 683 Application for Compensation, 684 Application for |

| | | |
|---|---|---|
| 10/26/2021 | | Compensation, 685 Application for Compensation, 686 Application for Compensation) (Ordaz, Steven) (Entered: 10/26/2021) |
| 10/27/2021 | 694 (3 pgs) | Notice *of Rescheduled Hearing*. (Related document(s):172 Motion for Relief From Stay) Filed by Crowley Caribbean Services, LLC (Liggins, Demetra) (Entered: 10/27/2021) |
| 10/28/2021 | 695 (6 pgs) | Declaration re: *Supplemental Declaration of Elizabeth A. Green in Support of Application to Employ Baker & Hostetler LLP as Attorneys for the Debtors* (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 10/28/2021) |
| 10/28/2021 | 696 (3 pgs; 2 docs) | Notice *of Extension of Milestones and Bid Procedures Deadlines*. (Related document(s):583 Order on Emergency Motion) Filed by Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Extension of Milestones and Bid Procedures Deadlines) (Green, Elizabeth) (Entered: 10/28/2021) |
| 10/29/2021 | 697 (73 pgs; 4 docs) | Emergency Motion , Motion to Approve Compromise under Rule 9019 Filed by Debtor Limetree Bay Services, LLC Hearing scheduled for 10/29/2021 at 09:00 AM at telephone and video conference. (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Stipulation # 3 Exhbiit C - Shapiro Declaration) (Green, Elizabeth) (Entered: 10/29/2021) |
| 10/29/2021 | 698 (1 pg) | PDF with attached Audio File. Court Date & Time [ 10/29/2021 9:00:24 AM ]. File Size [ 6288 KB ]. Run Time [ 00:13:06 ]. (admin). (Entered: 10/29/2021) |
| 10/29/2021 | 699 | Courtroom Minutes. Time Hearing Held: 9:00 AM. Appearances: TO BE ATTACHED. (Related document (s):690 Courtroom Minutes, 697 Emergency Motion (with hearing date), Motion to Approve Compromise under Rule 9019) A Status Conference held. **A Hearing on the Emergency Motion, Motion to Approve Compromise under Rule 9019 697 is scheduled for 11/3/2021 at 08:00 AM at Houston, Courtroom 400 (DRJ).** (VrianaPortillo) (Entered: 10/29/2021) |
| 10/29/2021 | 700 (3 pgs) | Notice *of Rescheduled Hearing on Motion to Approve Compromise Under Rule 9019 to November 3, 2021 at 8:00 a.m. Central Time*. (Related document(s):697 Emergency Motion (with hearing date), Motion to Approve Compromise under Rule 9019) Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 10/29/2021) |
| | 701 | Motion For Sale of *Debtors' Motion to (I) Approve Sales of* |

| | | |
|---|---|---|
| 10/29/2021 | (166 pgs; 6 docs) | *Goods Free and Clear of All Claims, Liens, and Encumbrances by NRI Industrial Sales, LLC and (II) Approve NRI's Commission for Sales* Free and Clear of Liens as Described in Section 363(f). Objections/Request for Hearing Due in 21 days. Fee Amount $188. Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Shapiro Declaration # 3 Exhibit C - NRI Contract Part 1 # 4 Exhibit C - NRI Contract Part 2 # 5 Exhibit C - NRI Contract Part 3) (Green, Elizabeth) (Entered: 10/29/2021) |
| 10/29/2021 | | Receipt of Motion for Sale of Property( 21-32351) [motion, msale363] ( 188.00) Filing Fee. Receipt number A23337330. Fee amount $ 188.00. (U.S. Treasury) (Entered: 10/29/2021) |
| 11/01/2021 | 702 (20 pgs; 4 docs) | Objection *Limited Objection to the Debtors' Emergency Motion for Approval of Stipulation between the Debtors, J. Aron & Company, LLC, BP Products North America, Inc., and the Committee under Bankruptcy Rule 9019* (related document(s):697 Emergency Motion (with hearing date), Motion to Approve Compromise under Rule 9019). Filed by 405 Sentinel LLC, Arena Investors, LP (Attachments: # 1 Exhibit A (filed under seal) # 2 Exhibit B # 3 Exhibit C) (Brookner, Jason) (Entered: 11/01/2021) |
| 11/01/2021 | 703 (9 pgs; 2 docs) | Motion to Seal *Emergency Motion to Seal Exhibit to the DIP Lenders Limited Objection to the Debtors Emergency Motion for Approval of Stipulation between the Debtors, J. Aron & Company, LLC, BP Products North America, Inc, and The Committee under Bankruptcy Rule 9019* Filed by Creditors 405 Sentinel LLC, Arena Investors, LP (Attachments: # 1 Proposed Order) (Brookner, Jason) (Entered: 11/01/2021) |
| 11/01/2021 | 704 (1 pg) | Sealed Document *Relating to DIP Lender's Emergency Motion to Seal Exhibit to the DIP Lenders Limited Objection to the Debtors Emergency Motion for Approval of Stipulation between the Debtors, J. Aron & Company, LLC, BP Products North America, Inc, and The Committee under Bankruptcy Rule 9019* (Filed By 405 Sentinel LLC, Arena Investors, LP ). (Brookner, Jason) (Entered: 11/01/2021) |
| 11/02/2021 | 705 (17 pgs; 4 docs) | Witness List, Exhibit List (Filed By 405 Sentinel LLC, Arena Investors, LP ).(Related document(s):702 Objection) (Attachments: # 1 Exhibit A (filed under seal) # 2 Exhibit B # 3 Exhibit C) (Brookner, Jason) (Entered: 11/02/2021) |
| | 706 (4 pgs) | Exhibit List, Witness List (Filed By Ad Hoc Term Lender Group ).(Related document(s):697 Emergency Motion (with hearing date), Motion to Approve Compromise under Rule |

| | | |
|---|---|---|
| 11/02/2021 | | 9019) (Brimmage, Marty) (Entered: 11/02/2021) |
| 11/02/2021 | 🌐 707<br>(7 pgs; 2 docs) | Exhibit List, Witness List (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit 1 - Shapiro 9019 Declaration) (Green, Elizabeth) (Entered: 11/02/2021) |
| 11/02/2021 | 🌐 708<br>(3 pgs) | Agenda for Hearing on 11/3/2021 (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 11/02/2021) |
| 11/02/2021 | 🌐 709<br>(3 pgs) | Certificate of No Objection (Filed By Limetree Bay Services, LLC ).(Related document(s):697 Emergency Motion (with hearing date), Motion to Approve Compromise under Rule 9019) (Green, Elizabeth) (Entered: 11/02/2021) |
| 11/02/2021 | 🌐 710<br>(3 pgs) | Exhibit List, Witness List (Filed By J. Aron & Company LLC ). (Newcomb, Christopher) (Entered: 11/02/2021) |
| 11/02/2021 | 🌐 711<br>(34 pgs; 2 docs) | Proposed Order RE: *Debtors' Emergency Motion for Approval of Stipulation between the Debtors, J. Aron & Company, LLC, BP Products North America, Inc., and the Committee under Bankruptcy Rule 9019* (Filed By Limetree Bay Services, LLC ).(Related document(s):697 Emergency Motion (with hearing date), Motion to Approve Compromise under Rule 9019) (Attachments: # 1 Exhibit A - Redline) (Green, Elizabeth) (Entered: 11/02/2021) |
| 11/02/2021 | 🌐 712<br>(30 pgs) | Order Granting Debtors' Emergency Motion for Approval of Stipulation Between the Debtors, J. Aron & Company, LLC, BP Products North America, INC., Pursuant to Bankruptcy Rule 9019 Signed on 11/2/2021 (Related document(s):697 Emergency Motion (with hearing date), Motion to Approve Compromise under Rule 9019) (VrianaPortillo) (Entered: 11/02/2021) |
| 11/02/2021 | 🌐 713<br>(4 pgs; 2 docs) | Notice *of Filing Proposed Two-Week Budget*. (Related document(s):495 Order on Motion to Use Cash Collateral, Order on Emergency Motion) Filed by Limetree Bay Services, LLC (Attachments: # 1 Exhibit 1 - Proposed Two-Week Budget) (Green, Elizabeth) (Entered: 11/02/2021) |
| 11/02/2021 | 🌐 714<br>(4 pgs) | Notice *of Cancellation of Hearing at 8:00 a.m. on November 3, 2021 and Rescheduling Status Conference to 1:00 p.m. on November 5, 2021.* Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 11/02/2021) |
| | 🌐 715<br>(19 pgs; 7 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 9/30/2021, $0 disbursed (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Statement of Cash Receipts & Disbursements # 3 Attachment 3 - Unaudited |

| | | |
|---|---|---|
| 11/03/2021 | | Financial Statement # 4 Attachment 4 - Schedule of Bank Accounts # 5 Attachment 5 - Bank Statements & Reconciliations # 6 Attachment 6 - Schedule of Insurance) (Green, Elizabeth) (Entered: 11/03/2021) |
| 11/03/2021 | 🌐 716 (8 pgs; 3 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 9/30/2021, $0 disbursed (Filed By Limetree Bay Refining Holdings, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Schedule of Insurance) (Green, Elizabeth) (Entered: 11/03/2021) |
| 11/03/2021 | 🌐 717 (15 pgs; 6 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 9/30/2021, $0 disbursed (Filed By Limetree Bay Refining Holdings II, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Summary of Cash Receipts & Disbursements # 3 Attachment 3 - Unaudited Financial Statement # 4 Attachment 4 - Bank Statements & Reconciliations # 5 Attachment 5 - Schedule of Insurance) (Green, Elizabeth) (Entered: 11/03/2021) |
| 11/03/2021 | 🌐 718 (50 pgs; 7 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 9/30/2021, $7276945 disbursed (Filed By Limetree Bay Refining, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Statement of Cash Receipts & Disbursements # 3 Attachment 3 - Unaudited Financial Statement # 4 Attachment 4 - Schedule of Bank Accounts # 5 Attachment 5 - Bank Statements & Reconciliations # 6 Attachment 6 - Schedule of Insurance) (Green, Elizabeth) (Entered: 11/03/2021) |
| 11/03/2021 | 🌐 719 (19 pgs; 7 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 9/30/2021, $2628662 disbursed (Filed By Limetree Bay Refining Operating, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Summary of Cash Receipts & Disbursements # 3 Attachment 3 - Unaudited Financial Statement # 4 Attachment 4 - Schedule of Bank Accounts # 5 Attachment 5 - Bank Statements & Reconciliations # 6 Attachment 6 - Schedule of Insurance) (Green, Elizabeth) (Entered: 11/03/2021) |
| 11/03/2021 | 🌐 720 (38 pgs; 7 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 9/30/2021, $112 disbursed (Filed By Limetree Bay Refining Marketing, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Summary of Cash Receipts & Disbursements # 3 Attachment 3 - Unaudited Financial Statement # 4 Attachment 4 - Schedule of Bank Accounts # 5 Attachment 5 - Bank Statements & Reconciliations # 6 Attachment 6 - Schedule of Insurance) (Green, Elizabeth) (Entered: 11/03/2021) |
| | 🌐 721 | Certificate of No Objection *to Comdata Inc's Application* |

| | | |
|---|---|---|
| 11/03/2021 | (8 pgs; 3 docs) | *for Allowance and Payment of Administrative Expense Claim* (Filed By Comdata Inc. ).(Related document(s):631 Application for Administrative Expenses) (Attachments: # 1 Exhibit A # 2 Exhibit B) (Edson, Andrew) (Entered: 11/03/2021) |
| 11/03/2021 | 722 (2 pgs) | Proposed Order RE: (Filed By Comdata Inc. ).(Related document(s):721 Certificate of No Objection) (Edson, Andrew) (Entered: 11/03/2021) |
| 11/04/2021 | 723 (3 pgs) | Notice *of Cancellation of Status Conference on November 5, 2021 and Setting Rescheduled Status Conference for November 10, 2021 at 1:00 p.m. Central Time*. Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 11/04/2021) |
| 11/04/2021 | 724 (10 pgs; 2 docs) | Emergency Motion *for Authority to Pay Forbearance Fee* Filed by Debtor Limetree Bay Services, LLC Hearing scheduled for 11/10/2021 at 01:00 PM at Houston, Courtroom 400 (DRJ). (Attachments: # 1 Exhibit A - Proposed Order) (Green, Elizabeth) (Entered: 11/04/2021) |
| 11/05/2021 | 725 (1 pg) | Motion to Appear pro hac vice . Filed by Creditor Gulf Oil Limited Partnership (Mazzoli, Julio) (Entered: 11/05/2021) |
| 11/05/2021 | 726 (9 pgs; 2 docs) | Emergency Motion *Debtors' Emergency Motion for Authority to Install Non-Debtor Assets on Debtors' Property* Filed by Debtor Limetree Bay Services, LLC Hearing scheduled for 11/10/2021 at 01:00 PM at telephone and video conference. (Attachments: # 1 Exhibit A - Proposed Order) (Green, Elizabeth) (Entered: 11/05/2021) |
| 11/05/2021 | 727 (33 pgs) | BNC Certificate of Mailing. (Related document(s):712 Generic Order) No. of Notices: 36. Notice Date 11/05/2021. (Admin.) (Entered: 11/05/2021) |
| 11/08/2021 | 728 (3 pgs) | Exhibit List, Witness List (Filed By Limetree Bay Services, LLC ).(Related document(s):724 Emergency Motion (with hearing date), 726 Emergency Motion (with hearing date)) (Green, Elizabeth) (Entered: 11/08/2021) |
| 11/08/2021 | 729 (42 pgs) | Stipulation By United States of America and the Debtors. Does this document include an agreed order or otherwise request that the judge sign a document? Yes. (Filed By United States of America ). (Kincheloe, Richard) (Entered: 11/08/2021) |
| | 730 (2 pgs) | Agreed Order Granting Comdata INC.'s Application for Allowance and Payment of Administrative Expense Claim Signed on 11/8/2021 (Related document(s):631 Application for Administrative Expenses) (VrianaPortillo) (Entered: |

| 11/08/2021 | | 11/08/2021) |
|---|---|---|
| 11/08/2021 | 🌐 731 (42 pgs) | Stipulation and Agreed Order Signed on 11/8/2021 (Related document(s):729 Stipulation) (VrianaPortillo) (Entered: 11/08/2021) |
| 11/08/2021 | 🌐 732 (9 pgs; 2 docs) | Motion to Extend Exclusivity Period for Filing a Chapter 11 Plan and Disclosure Statement. Objections/Request for Hearing Due in 21 days. Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order) (Parrish, Jimmy) (Entered: 11/08/2021) |
| 11/09/2021 | 🌐 733 (11 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):695 Declaration) (Ordaz, Steven) (Entered: 11/09/2021) |
| 11/09/2021 | 🌐 734 (33 pgs) | Certificate *of Service re: Docket Nos. 697, 700 and 701* (Filed By BMC Group, Inc. ). (Ordaz, Steven) (Entered: 11/09/2021) |
| 11/09/2021 | 🌐 735 (10 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):707 Exhibit List, Witness List, 708 Agenda, 709 Certificate of No Objection, 711 Proposed Order, 712 Generic Order, 713 Notice, 714 Notice) (Ordaz, Steven) (Entered: 11/09/2021) |
| 11/09/2021 | 🌐 736 (25 pgs) | Certificate *of Service (Supplemental)* (Filed By BMC Group, Inc. ).(Related document(s):712 Generic Order, 714 Notice) (Ordaz, Steven) (Entered: 11/09/2021) |
| 11/09/2021 | 🌐 737 (11 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):723 Notice, 724 Emergency Motion (with hearing date)) (Ordaz, Steven) (Entered: 11/09/2021) |
| 11/09/2021 | 🌐 738 (11 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):726 Emergency Motion (with hearing date)) (Ordaz, Steven) (Entered: 11/09/2021) |
| 11/09/2021 | 🌐 739 (3 pgs) | Agenda for Hearing on 11/10/2021 (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 11/09/2021) |
| 11/09/2021 | 🌐 740 (2 pgs) | Creditor Request for Notices (Filed By Oracle America, Inc. ). (Christianson, Shawn) (Entered: 11/09/2021) |
| 11/10/2021 | 🌐 741 (2 pgs) | Notice *of Rescheduled Auction to Monday, November 15, 2021*. Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 11/10/2021) |
| | 🌐 742 (8 pgs) | Stipulation By Limetree Bay Refining, LLC and Official Committee of Unsecured Creditors, Defendants Cotton, |

| | | |
|---|---|---|
| 11/10/2021 | | Colon, Browne, Illaraza, Clifford, Isaac-Joseph, Shirtley, Hendricks, Barnes, Miller, Estevez, Jules, Sonson, George, Clifford Boynes, Chris Christian, Margaret Thompson, Delia Almestica, Carlos Christian, minor child "J.M.M.", minor child "V.M.", minor child "Z.R.C.", minorchild "M.M.", minor child "O.N.", Anna Rexach-Constantine, Mervyn Constantine, Neal Davis, Edna Santiago, Guidrycia Wells, O'Shay Wells, Aaron G. Maynard, Verne McSween. Rochelle Gomez, Joan Mathurin, Myrna Mathurin, Ann Marie John-Baptitste, Warrington Chapman and Leoba John-Baptitse-Pelle. Does this document include an agreed order or otherwise request that the judge sign a document? Yes. (Filed By Limetree Bay Refining, LLC ). (Green, Elizabeth) (Entered: 11/10/2021) |
| 11/10/2021 | 🌐 743 (1 pg) | Order Granting Motion To Appear pro hac vice - Julio Mazzoli (Related Doc # 725) Signed on 11/10/2021. (emiller) (Entered: 11/10/2021) |
| 11/10/2021 | 🌐 744 (2 pgs) | Proposed Order RE: *Debtors' Emergency Motion for Authority to Pay Forbearance Fee* (Filed By Limetree Bay Services, LLC ).(Related document(s):724 Emergency Motion (with hearing date)) (Parrish, Jimmy) (Entered: 11/10/2021) |
| 11/10/2021 | 🌐 745 (1 pg) | 🔊 PDF with attached Audio File. Court Date & Time [ 11/10/2021 1:02:43 PM ]. File Size [ 9905 KB ]. Run Time [ 00:20:38 ]. (admin). (Entered: 11/10/2021) |
| 11/10/2021 | 🌐 746 (4 pgs) | Courtroom Minutes. Time Hearing Held: 1:00 PM. Appearances: SEE ATTACHED. (Related document(s):724 Emergency Motion (with hearing date), 726 Emergency Motion (with hearing date)) Status Conference held. The Parties provided a status report. For the reasons stated on the record, the Court approved the Emergency Motion for Authority to Pay Forbearance Fee 724. A revised proposed order to be submitted. The Court approved the Emergency Motion Debtors' Emergency Motion for Authority to Install Non-Debtor Assets on Debtors' Property 726. Order to be entered. (VrianaPortillo) (Entered: 11/10/2021) |
| 11/10/2021 | 🌐 747 (2 pgs) | Order Granting Emergency Motion to Seal Exhibit to the DIP Lender's Limited Objection to the Debtors' Emergency Motion for Approval of Stipulation Between the Debtors, J. Aron & Company, LLC, BP Products North America, INC, and the Committee Under Bankruptcy Rule 9019 (Related Doc # 703) Signed on 11/10/2021. (VrianaPortillo) (Entered: 11/10/2021) |
| 11/10/2021 | 🌐 748 (2 pgs) | Order Granting Debtors' Emergency Motion for Authority to Install Non-Debtor assets on Debtors' Property (Related Doc # 726) Signed on 11/10/2021. (VrianaPortillo) |

| | | |
|---|---|---|
| 11/10/2021 | | (Entered: 11/10/2021) |
| 11/10/2021 | 🌐 749<br>(3 pgs; 2 docs) | Second Notice *of Extension of Milestones and Bid Procedures Deadlines*. (Related document(s):583 Order on Emergency Motion) Filed by Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Second Extension to Milestones and Bid Procedures Deadlines) (Green, Elizabeth) (Entered: 11/10/2021) |
| 11/10/2021 | 🌐 750<br>(24 pgs; 2 docs) | Notice *of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts*. (Related document(s):392 Order Setting Hearing, 583 Order on Emergency Motion) Filed by Limetree Bay Services, LLC (Attachments: # 1 Schedule A - Contract List) (Green, Elizabeth) (Entered: 11/10/2021) |
| 11/10/2021 | 🌐 751<br>(5 pgs) | BNC Certificate of Mailing. (Related document(s):730 Generic Order) No. of Notices: 36. Notice Date 11/10/2021. (Admin.) (Entered: 11/11/2021) |
| 11/10/2021 | 🌐 752<br>(45 pgs) | BNC Certificate of Mailing. (Related document(s):731 Generic Order) No. of Notices: 36. Notice Date 11/10/2021. (Admin.) (Entered: 11/11/2021) |
| 11/10/2021 | 🌐 792<br>(2 pgs) | Motion to Appear pro hac vice *Kevin F. D'Amour*. Filed by Creditor National Industrial Services, LLC (SamanthaWarda) (Entered: 11/17/2021) |
| 11/11/2021 | 🌐 753<br>(2 pgs) | Stipulation By US Trustee and Baker & Hostetler, LLP. Does this document include an agreed order or otherwise request that the judge sign a document? Yes. (Filed By US Trustee ).(Related document(s):681 Application for Compensation) (Whitworth, Jana) (Entered: 11/11/2021) |
| 11/12/2021 | 🌐 754<br>(4 pgs; 2 docs) | Certificate of No Objection *to First Interim Fee Application Of Pachulski Stang Ziehl & Jones, LLP For Allowance Of Compensation For Services Rendered As Counsel To The Official Committee Of Unsecured Creditors For The Period From July 27, 2021 Through September 30, 2021* (Filed By Official Committee of Unsecured Creditors ).(Related document(s):678 Application for Compensation) (Attachments: # 1 Exhibit A - Proposed Order) (Warner, Michael) (Entered: 11/12/2021) |
| | 🌐 755<br>(4 pgs; 2 docs) | Certificate of No Objection *to First Interim Application Of Riveron RTS, LLC For Allowance Of Compensation For Services Rendered And Reimbursement Of Expenses Incurred As Financial Advisor To The Official Committee Of Unsecured Creditors For The Period Of July 29, 2021 Through September 30, 2021* (Filed By Official Committee of Unsecured Creditors ).(Related document(s):679 Application for Compensation) (Attachments: # 1 Exhibit A |

| | | |
|---|---|---|
| 11/12/2021 | | - Proposed Order) (Warner, Michael) (Entered: 11/12/2021) |
| 11/12/2021 | 🌑 756 (7 pgs) | Debtors Master Service List (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 11/12/2021) |
| 11/12/2021 | 🌑 757 (4 pgs) | BNC Certificate of Mailing. (Related document(s):743 Order on Motion to Appear pro hac vice) No. of Notices: 36. Notice Date 11/12/2021. (Admin.) (Entered: 11/12/2021) |
| 11/12/2021 | 🌑 758 (5 pgs) | BNC Certificate of Mailing. (Related document(s):748 Order on Emergency Motion) No. of Notices: 36. Notice Date 11/12/2021. (Admin.) (Entered: 11/12/2021) |
| 11/12/2021 | 🌑 759 (3 pgs) | BNC Certificate of Mailing. (Related document(s):747 Order on Motion to Seal) No. of Notices: 6. Notice Date 11/12/2021. (Admin.) (Entered: 11/12/2021) |
| 11/14/2021 | 🌑 760 (13 pgs; 2 docs) | Emergency Motion *Debtors' Emergency Motion to Amend Bid Procedures Order and Other Related Relief* Filed by Debtor Limetree Bay Services, LLC Hearing scheduled for 11/15/2021 at 03:30 PM at Houston, Courtroom 400 (DRJ). (Attachments: # 1 Exhibit A - Proposed Order) (Green, Elizabeth) (Entered: 11/14/2021) |
| 11/14/2021 | 🌑 761 (3 pgs; 2 docs) | Third Notice *of Extension of Milestones and Bid Procedures Deadlines*. (Related document(s):696 Notice) Filed by Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Extension of Milestones and Bid Procedures Deadlines) (Green, Elizabeth) (Entered: 11/14/2021) |
| 11/14/2021 | 🌑 762 (3 pgs) | Declaration re: *Declaration of Michael O'Hara in Support of Debtors' Emergency Motion to Amend Bid Procedures Order and Other Related Relief* (Filed By Limetree Bay Services, LLC ).(Related document(s):760 Emergency Motion (with hearing date)) (Green, Elizabeth) (Entered: 11/14/2021) |
| 11/14/2021 | 🌑 763 (6 pgs; 2 docs) | Exhibit List, Witness List (Filed By Limetree Bay Services, LLC ).(Related document(s):760 Emergency Motion (with hearing date)) (Attachments: # 1 Exhibit 1 - Declaration of Michael O'Hara in Support of Motion) (Green, Elizabeth) (Entered: 11/14/2021) |
| 11/14/2021 | 🌑 764 (3 pgs) | Agenda for Hearing on 11/15/2021 (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 11/14/2021) |
| | 🌑 765 (17 pgs; 4 docs) | Application for Administrative Expenses *Pursuant to 11 U.S.C. 503(b)(9)*. Objections/Request for Hearing Due in 21 days. Filed by Creditor Gulf Oil Limited Partnership (Attachments: # 1 Exhibit A - Claim Summary # 2 Exhibit |

| 11/15/2021 | | B - Invoices and BOLs # 3 Exhibit C - Proposed Order) (Mazzoli, Julio) (Entered: 11/15/2021) |
|---|---|---|
| 11/15/2021 | 766 (5 pgs; 2 docs) | Proposed Order RE: *Debtors' Emergency Motion to Amend Bid Procedures Order and Other Related Relief* (Filed By Limetree Bay Services, LLC ).(Related document(s):760 Emergency Motion (with hearing date)) (Attachments: # 1 Exhibit A - Redline) (Green, Elizabeth) (Entered: 11/15/2021) |
| 11/15/2021 | 767 (13 pgs; 3 docs) | Certificate of No Objection *to Motion of VWNA Caribbean, LLC for Entry of an Order* (Filed By VWNA Caribbean LLC ).(Related document(s):623 Generic Motion) (Attachments: # 1 Exhibit A # 2 Exhibit B) (Crapo, David) (Entered: 11/15/2021) |
| 11/15/2021 | 768 (2 pgs) | Notice of Appearance and Request for Notice Filed by Gregg R Kronenberger Filed by on behalf of Virgin Islands Paving, Inc., (Kronenberger, Gregg) (Entered: 11/15/2021) |
| 11/15/2021 | | Certificate of Email Notice. By agreement of the parties, the hearing on the motion for relief from stay has been adjourned. Movant to notice all interested parties and file a certificate of service with the court (Related document (s):172 Motion for Relief From Stay) **Hearing rescheduled for 12/8/2021 at 02:30 PM at Houston, Courtroom 400 (DRJ).** (aalo) (Entered: 11/15/2021) |
| 11/15/2021 | 769 (8 pgs) | Stipulation and Agreed Order Concerning Bar Date Signed on 11/15/2021 (Related document(s):742 Stipulation) (aalo) (Entered: 11/15/2021) |
| 11/15/2021 | 770 (2 pgs) | Notice *of Extension of Claims Bar Date*. Filed by Limetree Bay Refining, LLC (Green, Elizabeth) (Entered: 11/15/2021) |
| 11/15/2021 | 771 (2 pgs) | Courtroom Minutes. Time Hearing Held: 3:30 PM. Appearances: SEE ATTACHED. (Related document(s):760 Emergency Motion (with hearing date)) For the reasons stated on the record, the Court approved the Debtors' Emergency Motion to Amend Bid Procedures Order 760. The parties to submit a revised proposed order. (VrianaPortillo) (Entered: 11/15/2021) |
| 11/15/2021 | 772 (1 pg) | PDF with attached Audio File. Court Date & Time [ 11/15/2021 3:30:09 PM ]. File Size [ 13441 KB ]. Run Time [ 00:28:00 ]. (admin). (Entered: 11/15/2021) |
| 11/15/2021 | 773 (4 pgs; 2 docs) | Certificate of No Objection *to First Interim Fee Application of Jefferies LLC as Investment Banker to the Debtors for the period July 12, 2021 through September 30, 2021* (Filed By |

| | | |
|---|---|---|
| 11/15/2021 | | Limetree Bay Services, LLC ).(Related document(s):686 Application for Compensation) (Attachments: # 1 Proposed Order) (Green, Elizabeth) (Entered: 11/15/2021) |
| 11/15/2021 | 774 (5 pgs; 2 docs) | Certificate of No Objection *to First Interim Fee Application of GlassRatner Advisory & Capital LLC d/b/a B. Riley Advisory Services as Chief Restructuring Officer for the Debtors from July 12, 2021 through September 30, 2021* (Filed By Limetree Bay Services, LLC ).(Related document(s):684 Application for Compensation) (Attachments: # 1 Proposed Order) (Green, Elizabeth) (Entered: 11/15/2021) |
| 11/15/2021 | 775 (4 pgs; 2 docs) | Certificate of No Objection *to First Interim Fee Application of Hughes Arrell Kinchen LLP as Special Counsel for the Debtors for the period July 13, 2021 through September 30, 2021* (Filed By Limetree Bay Services, LLC ).(Related document(s):680 Application for Compensation) (Attachments: # 1 Proposed Order) (Green, Elizabeth) (Entered: 11/15/2021) |
| 11/15/2021 | 776 (4 pgs; 2 docs) | Certificate of No Objection *to First Interim Fee Application of Beckstedt & Kuczynski LLP as Special Counsel to the Debtors for the period July 14, 2021 through September 30, 2021* (Filed By Limetree Bay Services, LLC ).(Related document(s):685 Application for Compensation) (Attachments: # 1 Proposed Order) (Green, Elizabeth) (Entered: 11/15/2021) |
| 11/15/2021 | 777 (3 pgs) | Notice *of Rescheduled Hearing.* (Related document(s):172 Motion for Relief From Stay) Filed by Crowley Caribbean Services, LLC (Liggins, Demetra) (Entered: 11/15/2021) |
| 11/15/2021 | 778 (4 pgs; 2 docs) | Certificate of No Objection *to First Interim Fee Application of The Claro Group, LLC, as Insurance Consultant for the Debtors, for the period August 26, 2021 through September 30, 2021* (Filed By Limetree Bay Services, LLC ).(Related document(s):683 Application for Compensation) (Attachments: # 1 Proposed Order) (Green, Elizabeth) (Entered: 11/15/2021) |
| 11/16/2021 | 779 (2 pgs) | Order Approving First Interim Fee Application of the Claro Group, LLC as Insurance Consultant for the Debtors for the Period August 26, 2021 through September 30, 2021 (Related Doc # 683) Signed on 11/16/2021. (emiller) (Entered: 11/16/2021) |
| 11/16/2021 | 780 (1 pg) | Order Allowing Interim Compensation and Reimbursement of Expenses of Pachulski Stang Ziehl & Jones, LLP for the Period of July 27, 2021 through September 30, 2021 (Related Doc # 678) Signed on 11/16/2021. (emiller) (Entered: 11/16/2021) |

| | | |
|---|---|---|
| 11/16/2021 | 🌐 781<br>(1 pg) | Order Allowing Interim Compensation for Services Rendered and Reimbursement of Expenses of Riveron RTS, LLC as Financial Advisor to the Official Committee of Unsecured Creditors for the Period of July 29, 2021 through September 30, 2021 (Related Doc # 679) Signed on 11/16/2021. (emiller) (Entered: 11/16/2021) |
| 11/16/2021 | 🌐 782<br>(4 pgs) | Agreed Order Granting Motion of VWNA Caribbean, LLC for Entry of an Order (Related Doc # 623) Signed on 11/16/2021. (emiller) (Entered: 11/16/2021) |
| 11/16/2021 | 🌐 783<br>(2 pgs) | Order Approving First Interim Fee Application of Jefferies LLC (Related Doc # 686) Signed on 11/16/2021. (emiller) (Entered: 11/16/2021) |
| 11/16/2021 | 🌐 784<br>(2 pgs) | Order Approving First Interim Fee Application of GlassRatner Advisory Group LLC (Related Doc # 684) Signed on 11/16/2021. (emiller) (Entered: 11/16/2021) |
| 11/16/2021 | 🌐 785<br>(2 pgs) | Order Approving First Interim Fee Application of Hughes Arrell Kinchen LLP (Related Doc # 680) Signed on 11/16/2021. (emiller) (Entered: 11/16/2021) |
| 11/16/2021 | 🌐 786<br>(2 pgs) | Order Approving First Interim Fee Application of Beckstedt & Kuczynski LLP (Related Doc # 685) Signed on 11/16/2021. (emiller) (Entered: 11/16/2021) |
| 11/17/2021 | 🌐 787<br>(11 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):732 Motion to Extend Exclusivity Period) (Ordaz, Steven) (Entered: 11/17/2021) |
| 11/17/2021 | 🌐 788<br>(11 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):728 Exhibit List, Witness List, 730 Generic Order, 731 Generic Order, 739 Agenda) (Ordaz, Steven) (Entered: 11/17/2021) |
| 11/17/2021 | 🌐 789<br>(11 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):741 Notice, 748 Order on Emergency Motion, 749 Notice) (Ordaz, Steven) (Entered: 11/17/2021) |
| 11/17/2021 | 🌐 790<br>(6 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):750 Notice) (Ordaz, Steven) (Entered: 11/17/2021) |
| 11/17/2021 | 🌐 791<br>(10 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):760 Emergency Motion (with hearing date), 761 Notice, 762 Declaration, 763 Exhibit List, Witness List, 764 Agenda) (Ordaz, Steven) (Entered: 11/17/2021) |
| 11/17/2021 | | (private) Motions terminated. (emiller) (Entered: 11/17/2021) |

| 11/17/2021 | | (private) Motions terminated. (emiller) (Entered: 11/17/2021) |
|---|---|---|
| 11/17/2021 | 793<br>(7 pgs; 2 docs) | Proposed Order RE: *Debtors' Emergency Motion to Amend Bid Procedures Order and Other Related Relief* (Filed By Limetree Bay Services, LLC ).(Related document(s):760 Emergency Motion (with hearing date)) (Attachments: # 1 Exhibit A - Redline of Proposed Order) (Green, Elizabeth) (Entered: 11/17/2021) |
| 11/17/2021 | 794<br>(11 pgs) | BNC Certificate of Mailing. (Related document(s):769 Generic Order) No. of Notices: 36. Notice Date 11/17/2021. (Admin.) (Entered: 11/17/2021) |
| 11/18/2021 | 795<br>(5 pgs) | BNC Certificate of Mailing. (Related document(s):779 Order on Application for Compensation) No. of Notices: 36. Notice Date 11/18/2021. (Admin.) (Entered: 11/18/2021) |
| 11/19/2021 | 796<br>(22 pgs) | Notice *of Monthly Fee Statement Of Pachulski Stang Ziehl & Jones LLP For Compensation For Services And Reimbursement Of Expenses As Counsel To The Official Committee Of Unsecured Creditors For The Period From October 1, 2021 Through October 31, 2021.* Filed by Official Committee of Unsecured Creditors (Warner, Michael) (Entered: 11/19/2021) |
| 11/19/2021 | 797<br>(17 pgs) | Notice *of Third Monthly Fee Statement Of Riveron RTS, LLC For Payment Of Interim Compensation And Reimbursement Of Expenses For The Period October 1, 2021 Through October 31, 2021.* Filed by Official Committee of Unsecured Creditors (Warner, Michael) (Entered: 11/19/2021) |
| 11/19/2021 | 798<br>(2 pgs) | Notice *of Harris County's Notice of Secured Lien on Sale Proceeds Secured Lien on Sale Proceeds.* (Related document(s):701 Motion for Sale of Property) Filed by Harris County, et al. (Grundemeier, Tara) (Entered: 11/19/2021) |
| 11/19/2021 | 799<br>(3 pgs; 2 docs) | Fourth Notice *of Extension of Milestones and Bid Procedures Deadlines (Related to Doc. Nos. 696 and 761).* Filed by Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Extensions of Milestones and Bid Procedures Deadlines) (Green, Elizabeth) (Entered: 11/19/2021) |
| 11/19/2021 | 800<br>(4 pgs) | BNC Certificate of Mailing. (Related document(s):780 Order on Application for Compensation) No. of Notices: 36. Notice Date 11/19/2021. (Admin.) (Entered: 11/19/2021) |
| | | |

| | | |
|---|---|---|
| 11/19/2021 | 🔵 801<br>(4 pgs) | BNC Certificate of Mailing. (Related document(s):781 Order on Application for Compensation) No. of Notices: 36. Notice Date 11/19/2021. (Admin.) (Entered: 11/19/2021) |
| 11/19/2021 | 🔵 802<br>(7 pgs) | BNC Certificate of Mailing. (Related document(s):782 Generic Order) No. of Notices: 36. Notice Date 11/19/2021. (Admin.) (Entered: 11/19/2021) |
| 11/19/2021 | 🔵 803<br>(5 pgs) | BNC Certificate of Mailing. (Related document(s):783 Order on Application for Compensation) No. of Notices: 36. Notice Date 11/19/2021. (Admin.) (Entered: 11/19/2021) |
| 11/19/2021 | 🔵 804<br>(5 pgs) | BNC Certificate of Mailing. (Related document(s):784 Order on Application for Compensation) No. of Notices: 36. Notice Date 11/19/2021. (Admin.) (Entered: 11/19/2021) |
| 11/19/2021 | 🔵 805<br>(5 pgs) | BNC Certificate of Mailing. (Related document(s):785 Order on Application for Compensation) No. of Notices: 36. Notice Date 11/19/2021. (Admin.) (Entered: 11/19/2021) |
| 11/19/2021 | 🔵 806<br>(5 pgs) | BNC Certificate of Mailing. (Related document(s):786 Order on Application for Compensation) No. of Notices: 36. Notice Date 11/19/2021. (Admin.) (Entered: 11/19/2021) |
| 11/22/2021 | 🔵 807<br>(126 pgs; 2 docs) | Statement *Fourth Monthly Fee Statement of Baker & Hostetler LLP for Services Rendered and Reimbursement of Expenses Incurred from October 1, 2021 through October 31, 2021* (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit A - Time and Expense Records) (Green, Elizabeth) (Entered: 11/22/2021) |
| 11/22/2021 | 🔵 808<br>(6 pgs; 2 docs) | Statement *Third Monthly Fee Statement of Beckstedt & Kuczynski LLP for Services Rendered from October 1, 2021 through October 31, 2021* (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit A - Time and Expense Records) (Green, Elizabeth) (Entered: 11/22/2021) |
| 11/22/2021 | 🔵 809<br>(7 pgs; 2 docs) | Statement *Second Monthly Fee Statement of Hughes Arrell Kinchen LLP for Services Rendered from October 1, 2021 through October 31, 2021* (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit A - Time and Expense Records) (Green, Elizabeth) (Entered: 11/22/2021) |
| | 🔵 810<br>(23 pgs; 3 docs) | Motion for Relief from Stay *Pursuant to 11 U.S.C. §362(d) and for Waiver of Fourteen-Day Stay Pursuant to Fed. R. Bankr. P. 4001(a)(3); (Dresser-Rand Co. provided* |

| | | |
|---|---|---|
| 11/22/2021 | | *equipment, components, parts, material, repairs, storage, and related services to Debtor).* Fee Amount $188. Filed by Creditor Dresser-Rand Co. Hearing scheduled for 12/17/2021 at 10:00 AM at Houston, Courtroom 400 (DRJ). (Attachments: # 1 Exhibit 1 # 2 Proposed Order) (Chevallier, J) (Entered: 11/22/2021) |
| 11/22/2021 | | Receipt of Motion for Relief From Stay( 21-32351) [motion,mrlfsty] ( 188.00) Filing Fee. Receipt number A23392279. Fee amount $ 188.00. (U.S. Treasury) (Entered: 11/22/2021) |
| 11/22/2021 | 🔘 811 (4 pgs) | Proposed Order RE: (Filed By Dresser-Rand Co. ).(Related document(s):810 Motion for Relief From Stay) (Chevallier, J) (Entered: 11/22/2021) |
| 11/22/2021 | 🔘 812 (2 pgs) | Stipulation and Agreed Order Regarding Objection Deadline to Baker & Hostetler's First Interim Fee Application Signed on 11/22/2021 (Related document (s):753 Stipulation) (VrianaPortillo) (Entered: 11/22/2021) |
| 11/22/2021 | 🔘 813 (3 pgs) | Order Granting Debtors' Emergency Motion to Amend BID Procedures Order and Other Related Relief (Related Doc # 760) Signed on 11/22/2021. (VrianaPortillo) (Entered: 11/22/2021) |
| 11/22/2021 | 🔘 814 (2 pgs) | Proposed Order RE: *[CORRECTED]* (Filed By Dresser-Rand Co. ).(Related document(s):810 Motion for Relief From Stay) (Chevallier, J) (Entered: 11/22/2021) |
| 11/22/2021 | 🔘 815 (5 pgs; 2 docs) | Notice *of Filing Three-Week Budget.* (Related document (s):495 Order on Motion to Use Cash Collateral, Order on Emergency Motion) Filed by Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Three-Week Budget) (Green, Elizabeth) (Entered: 11/22/2021) |
| 11/24/2021 | 🔘 816 (14 pgs; 2 docs) | Statement *Monthly Fee Statement of The Claro Group, LLC for Services Rendered and Reimbursement of Expenses Incurred from October 1, 2021 through October 31, 2021* (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit A - Time and Expense Records) (Green, Elizabeth) (Entered: 11/24/2021) |
| 11/24/2021 | 🔘 817 (26 pgs; 2 docs) | Statement *Monthly Fee Statement of B. Riley Advisory Services for Services Rendered and Reimbursement of Expenses Incurred from October 1, 2021 through October 31, 2021* (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit A - Time and Expense Records) (Green, Elizabeth) (Entered: 11/24/2021) |
| | 🔘 818 | Notice of Appearance and Request for Notice Filed by |

| 11/24/2021 | (4 pgs) | Patrick L Hughes Filed by on behalf of Bay, Ltd (Hughes, Patrick) (Entered: 11/24/2021) |
|---|---|---|
| 11/24/2021 | 819 (3 pgs; 2 docs) | Fifth Notice *of Extension of Milestones and Bid Procedures Deadlines (Doc. Nos. 696 and 761)*. Filed by Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Extensions of Milestones and Bid Procedures Deadlines) (Green, Elizabeth) (Entered: 11/24/2021) |
| 11/24/2021 | 820 (5 pgs) | BNC Certificate of Mailing. (Related document(s):812 Generic Order) No. of Notices: 36. Notice Date 11/24/2021. (Admin.) (Entered: 11/24/2021) |
| 11/24/2021 | 821 (6 pgs) | BNC Certificate of Mailing. (Related document(s):813 Order on Emergency Motion) No. of Notices: 36. Notice Date 11/24/2021. (Admin.) (Entered: 11/24/2021) |
| 11/26/2021 | 822 (4 pgs) | Statement *The Terminal Entities' Statement and Reservation of Rights Concerning Proposed Sale* (Filed By Limetree Bay Terminals, LLC ).(Related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property) (Davidson, Timothy) (Entered: 11/26/2021) |
| 11/29/2021 | 823 (5 pgs; 2 docs) | Objection *to Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts*. Filed by F&M Mafco Inc (Attachments: # 1 Proposed Order) (Brown, pllc, Deirdre) (Entered: 11/29/2021) |
| 11/29/2021 | 824 (4 pgs) | Objection *of Universal Plant Services (VI), LLC To Proposed Cure Amount*. Filed by Universal Plant Services (VI), LLC (Quejada, Maegan) (Entered: 11/29/2021) |
| 11/29/2021 | 825 (81 pgs; 2 docs) | Objection *(Limited) to Notice of Assumption and Assignment and Cure Costs [ECF Doc. 750]*. Filed by Analytic Stress Relieving Inc. (Attachments: # 1 Exhibit 1) (Cerone, Rudy) (Entered: 11/29/2021) |
| 11/30/2021 | 826 (15 pgs; 3 docs) | Certificate of No Objection *to Motion for Adequate Protection of Common Carrier Lien, or in the Alternative, Relief from Automatic Stay to Preserve, Continue, Perfection of, and Enforce Common Carrier Lien in Goods in Transit and Waiver of the Fourteen Day Stay Pursuant to Fed. R. Bankr. P. 4001(A)(3)* (Filed By Crowley Caribbean Services, LLC ).(Related document(s):172 Motion for Relief From Stay) (Attachments: # 1 Exhibit A # 2 Exhibit B) (Liggins, Demetra) (Entered: 11/30/2021) |
| 11/30/2021 | 827 (1 pg) | Motion to Appear pro hac vice . Filed by Creditors Christiansted Equipment Ltd, F&M Mafco Inc (Brown, pllc, Deirdre) (Entered: 11/30/2021) |

| | | |
|---|---|---|
| 11/30/2021 | 🌐 828<br>(2 pgs) | Order Granting Motion To Appear pro hac vice - Kevin F. D'Amour (Related Doc # 792) Signed on 11/30/2021. (emiller) (Entered: 11/30/2021) |
| 11/30/2021 | 🌐 829<br>(72 pgs; 4 docs) | Notice *of (I) Designation of Winning Bid and Back-Up Bids and (II) Sixth Notice of Extension of Milestones and Bid Procedures Deadlines.* Filed by Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Designation of Winning Bid and Back-Up Bids # 2 Exhibit B - Winning Bid Asset Purchase Agreement # 3 Exhibit C - Amended Milestones and Bid Procedures Deadlines) (Green, Elizabeth) (Entered: 11/30/2021) |
| 11/30/2021 | 🌐 830<br>(4 pgs) | Notice *of Emergency Sale Hearing on December 7, 2021 at 4:00 p.m. Central Time.* Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 11/30/2021) |
| 11/30/2021 | 🌐 831<br>(2 pgs) | Order Granting Debtors' Emergency Motion for Authority to Pay Forbearance Fee (Related Doc # 724) Signed on 11/30/2021. (VrianaPortillo) (Entered: 12/01/2021) |
| 11/30/2021 | 🌐 832<br>(5 pgs) | Agreed Order Granting Crowley Caribbean Services, LLC's and Crowley Logistics INC.'s Motion for Adequate Protection of Common Carrier Lein, or in the Alternative, Relief from Automatic Stay to Preserve, Continue Perfection of, and Enforce Common Carrier Lien in Goods in Transit and Waiver of the Fourteen Day Stay Pursuant to FED. R. BANKR. P. 4001(a)(3) Signed on 11/30/2021 (Related document(s):172 Motion for Relief From Stay) (VrianaPortillo) (Entered: 12/01/2021) |
| 12/01/2021 | 🌐 833<br>(4 pgs; 2 docs) | Certificate of No Objection *to Motion to Extend Exclusivity Period for Filing a Chapter 11 Plan and Disclosure Statement.* (Filed By Limetree Bay Services, LLC ). (Related document(s):732 Motion to Extend Exclusivity Period) (Attachments: # 1 Proposed Order) (Green, Elizabeth) (Entered: 12/01/2021) |
| 12/01/2021 | 🌐 834<br>(4 pgs; 2 docs) | Certificate of No Objection *to First Interim Fee Application of Baker & Hostetler LLP as Attorneys for the Debtors for the period July 12, 2021 through September 30, 2021* (Filed By Limetree Bay Services, LLC ).(Related document(s):681 Application for Compensation) (Attachments: # 1 Proposed Order) (Green, Elizabeth) (Entered: 12/01/2021) |
| 12/01/2021 | 🌐 835<br>(40 pgs; 5 docs) | Emergency Motion *Bay, Ltd.'s Preliminary Objection to the Proposed Sale to St. Croix Energy, LLLP and Emergency Motion to Delay the December 7 Sale Hearing to Permit Limited Discovery* Filed by Interested Party Bay, Ltd (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Proposed Order) (Hughes, Patrick) (Entered: 12/01/2021) |

| | | |
|---|---|---|
| 12/01/2021 | 🌐 836<br>(14 pgs; 2 docs) | Certificate *of Service of Discovery on Debtors* (Filed By Bay, Ltd ). (Attachments: # 1 Exhibit A) (Hughes, Patrick) (Entered: 12/01/2021) |
| 12/01/2021 | 🌐 837<br>(38 pgs; 4 docs) | Application to Compromise Controversy *Debtors' Motion for Entry of an Order (I) Authorizing and Approving the Settlement Agreement By and Among The Debtors, Official Committee of Unsecured Creditors, and BP Products North America Inc., and (II) Granting Related Relief.* Objections/Request for Hearing Due in 21 days. Filed by Debtor Limetree Bay Services, LLC Hearing scheduled for 12/7/2021 at 04:00 PM at telephone and video conference. (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Settlement Agreement # 3 Exhibit C - Declaration of Mark Shapiro) (Green, Elizabeth) (Entered: 12/01/2021) |
| 12/02/2021 | 🌐 838<br>(6 pgs) | Objection (related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property). Filed by CITY OF LA PORTE, LA PORTE INDEPENDENT SCHOOL DISTRICT, AND GALENA INDEPENDENT SCHOOL DISTRICT (Valdez, Melissa) (Entered: 12/02/2021) |
| 12/02/2021 | 🌐 839<br>(2 pgs) | Order Granting Debtors' Motion for Entry of Order Extending the Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof (Related Doc # 732) Signed on 12/2/2021. (VrianaPortillo) (Entered: 12/02/2021) |
| 12/02/2021 | 🌐 840<br>(1 pg) | Order Allowing Interim Compensation and Reimbursement of Expenses (Related Doc # 681). Signed on 12/2/2021. (VrianaPortillo) (Entered: 12/02/2021) |
| 12/02/2021 | 🌐 841<br>(5 pgs) | BNC Certificate of Mailing. (Related document(s):828 Order on Motion to Appear pro hac vice) No. of Notices: 36. Notice Date 12/02/2021. (Admin.) (Entered: 12/02/2021) |
| 12/03/2021 | 🌐 842<br>(3 pgs) | Exhibit List, Witness List (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 12/03/2021) |
| 12/03/2021 | 🌐 843<br>(3 pgs) | Witness List, Exhibit List (Filed By 405 Sentinel LLC, Arena Investors, LP ).(Related document(s):830 Notice) (Brookner, Jason) (Entered: 12/03/2021) |
| 12/03/2021 | 🌐 844<br>(2 pgs) | Witness List, Exhibit List (Filed By Limetree Bay Terminals, LLC ). (Davidson, Timothy) (Entered: 12/03/2021) |
| | 🌐 845<br>(3 pgs) | Exhibit List, Witness List (Filed By Official Committee of Unsecured Creditors ). (Warner, Michael) (Entered: |

| 12/03/2021 | | 12/03/2021) |
|---|---|---|
| 12/03/2021 | 846<br>(608 pgs; 33 docs) | Witness List, Exhibit List (Filed By Bay, Ltd ).(Related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property) (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22 # 23 Exhibit 23 # 24 Exhibit 24 # 25 Exhibit 25 # 26 Exhibit 26 # 27 Exhibit 27 # 28 Exhibit 28 # 29 Exhibit 29 # 30 Exhibit 30 # 31 Exhibit 31 # 32 Exhibit 32) (Hughes, Patrick) (Entered: 12/03/2021) |
| 12/03/2021 | 847<br>(4 pgs) | Response (Filed By VIVOT EQUIPMENT CORPORATION ).(Related document(s):750 Notice) (Hendershot, Simon) (Entered: 12/03/2021) |
| 12/03/2021 | 848<br>(4 pgs) | Response (Filed By Virgin Islands Industrial LLC ).(Related document(s):750 Notice) (Hendershot, Simon) (Entered: 12/03/2021) |
| 12/03/2021 | 849<br>(7 pgs; 2 docs) | Response (Filed By VIVOT EQUIPMENT CORPORATION ).(Related document(s):750 Notice) (Attachments: # 1 Exhibit Proof of Claim) (Hendershot, Simon) (Entered: 12/03/2021) |
| 12/03/2021 | 850<br>(65 pgs; 2 docs) | Response (Filed By Virgin Islands Industrial LLC ).(Related document(s):750 Notice) (Attachments: # 1 Exhibit Proof of Claim) (Hendershot, Simon) (Entered: 12/03/2021) |
| 12/03/2021 | 851<br>(6 pgs; 2 docs) | Objection *and Reservation of Rights* (related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property). Filed by HKA Enterprises, LLC ("HKA") (Attachments: # 1 Exhibit A) (Rochester, Lacey) (Entered: 12/03/2021) |
| 12/03/2021 | 852<br>(4 pgs) | Notice of Appearance and Request for Notice Filed by Jermaine Jermaine Watson Filed by on behalf of Axens North America, Inc. (Watson, Jermaine) (Entered: 12/03/2021) |
| 12/03/2021 | 853<br>(1 pg) | Motion to Appear pro hac vice *Melissa A. Pena, Esq*. Filed by Creditor Axens North America, Inc. (Watson, Jermaine) (Entered: 12/03/2021) |
| | 854<br>(5 pgs) | Objection *of Axens North America, Inc. to Proposed Cure Amount and Possible Assumption of Contract (Relates to* |

| 12/03/2021 | | *Dkt. No. 750)*. Filed by Axens North America, Inc. (Watson, Jermaine) (Entered: 12/03/2021) |
| --- | --- | --- |
| 12/03/2021 | 855 (5 pgs) | BNC Certificate of Mailing. (Related document(s):831 Order on Emergency Motion) No. of Notices: 36. Notice Date 12/03/2021. (Admin.) (Entered: 12/03/2021) |
| 12/03/2021 | 856 (15 pgs) | BNC Certificate of Mailing. (Related document(s):832 Generic Order) No. of Notices: 36. Notice Date 12/03/2021. (Admin.) (Entered: 12/03/2021) |
| 12/03/2021 | 857 (124 pgs; 5 docs) | Notice *of Filing Proposed Sale Order and Transactional Documents*. (Related document(s):829 Notice) Filed by Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Sale Order # 2 Exhibit B - Schedules to Asset Purchase Agreement # 3 Exhibit C - Transition Services Agreement # 4 Exhibit D - Seller Disclosure Letter) (Green, Elizabeth) (Entered: 12/03/2021) |
| 12/04/2021 | 858 (12 pgs) | BNC Certificate of Mailing. (Related document(s):839 Order on Motion to Extend/Limit Exclusivity Period) No. of Notices: 36. Notice Date 12/04/2021. (Admin.) (Entered: 12/04/2021) |
| 12/04/2021 | 859 (4 pgs) | BNC Certificate of Mailing. (Related document(s):840 Order on Application for Compensation) No. of Notices: 36. Notice Date 12/04/2021. (Admin.) (Entered: 12/04/2021) |
| 12/06/2021 | 860 (15 pgs; 3 docs) | Emergency Motion *to Quash and For Protective Order Regarding Bay Ltd.'s Notice of Deposition of Limetree Bay Services et al. and Subpoena Duces Tecum*, Motion for Protective Order, Motion to Quash Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Preliminary Responses and Objections to Discovery Requests) (Green, Elizabeth) (Entered: 12/06/2021) |
| 12/06/2021 | 861 (1 pg) | Motion to Appear pro hac vice *Vincent F. Alexander*. Filed by Creditor Intertek USA Inc. (Alexander, Vincent) (Entered: 12/06/2021) |
| 12/06/2021 | 862 (154 pgs; 8 docs) | Emergency Motion *to (I) Reopen Auction Pursuant to Bidding Procedures, (II) Approve Schedule and Procedures for Continued Auction, and (III) Grant Related Relief* Filed by Debtor Limetree Bay Services, LLC Hearing scheduled for 12/6/2021 at 04:30 PM at telephone and video conference. (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Declaration of Mark Shapiro # 3 Exhibit C - Declaration of Michael O'Hara # 4 Exhibit D - Part 1 - Asset Purchase Agreement # 5 Exhibit D - Part 2 - Asset Purchase Agreement # 6 Exhibit D - Part 3 - Asset Purchase |

| 12/06/2021 | | Agreement # 7 Exhibit D - Part 4 - Asset Purchase Agreement) (Green, Elizabeth) (Entered: 12/06/2021) |
|---|---|---|
| 12/06/2021 | 863 (45 pgs; 5 docs) | Objection *(Limited) and Reservation of Rights of SAP America, Inc. and Concur Technologies, Inc. to the Debtors' Motion to Sell Substantially All of Their Assets* (related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property). Filed by Concur Technologies, Inc., SAP America, Inc. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit B) (Ludman, Donald) (Entered: 12/06/2021) |
| 12/06/2021 | 864 (1 pg) | Order Granting Motion To Appear pro hac vice - Joseph E. Lehnert (Related Doc # 827) Signed on 12/6/2021. (emiller) (Entered: 12/06/2021) |
| 12/06/2021 | 865 (1 pg) | Order Granting Motion To Appear pro hac vice - Melissa A. Pena (Related Doc # 853) Signed on 12/6/2021. (emiller) (Entered: 12/06/2021) |
| 12/06/2021 | 866 (1 pg) | Order Granting Motion To Appear pro hac vice - Vincent F. Alexander (Related Doc # 861) Signed on 12/6/2021. (emiller) (Entered: 12/06/2021) |
| 12/06/2021 | 867 (7 pgs; 3 docs) | Objection *Limited Objection and Reservation of Rights to Sale*. Filed by Intertek USA Inc. (Attachments: # 1 Exhibit A # 2 Exhibit B) (Alexander, Vincent) (Entered: 12/06/2021) |
| 12/06/2021 | 868 (11 pgs; 4 docs) | Motion for Relief from Stay . Fee Amount $188. Filed by Creditor Intertek USA Inc. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Proposed Order Proposed Order) (Alexander, Vincent) (Entered: 12/06/2021) |
| 12/06/2021 | 869 (4 pgs) | Objection (related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property). Filed by Harris County, et al. (Grundemeier, Tara) (Entered: 12/06/2021) |
| 12/06/2021 | | Receipt of Motion for Relief From Stay( 21-32351) [motion,mrlfsty] ( 188.00) Filing Fee. Receipt number A23412347. Fee amount $ 188.00. (U.S. Treasury) (Entered: 12/06/2021) |
| 12/06/2021 | 870 (13 pgs) | Objection *Limited Objection of Flowserve US Inc. to Notice of Assumption and Assignment and Cure Costs [Relates to Dkt. No. 750]*. Filed by Flowserve US Inc. (Franke, Robert) (Entered: 12/06/2021) |
| | 871 (3 pgs) | Exhibit List, Witness List (Filed By Limetree Bay Services, LLC ).(Related document(s):862 Emergency Motion (with |

| 12/06/2021 | | hearing date)) (Green, Elizabeth) (Entered: 12/06/2021) |
|---|---|---|
| 12/06/2021 | 872 (2 pgs) | Notice *of Transfer of Claim filed in Case No. 21-32354.* Filed by Bay, Ltd (Hughes, Patrick) (Entered: 12/06/2021) |
| 12/06/2021 | 873 (14 pgs) | Response *Debtors' Response to Bay, Ltd.'s Preliminary Objection to the Proposed Sale to St. Croix Energy, LLLP and Emergency Motion to Delay the December 7 Sale Hearing to Permit Limited Discovery* (related document (s):835 Emergency Motion). Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 12/06/2021) |
| 12/06/2021 | 874 (46 pgs) | Objection *(Limited Objection of Axens North America, Inc. to Sale of Debtors' Assets and Reservation of Rights).* Filed by Axens North America, Inc. (Watson, M.) (Entered: 12/06/2021) |
| 12/06/2021 | 875 (11 pgs) | Objection *The Terminal Entities' Limited Objection and Reservation of Rights to Debtors' Emergency Motion for Entry of Order; (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief* (related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property). Filed by Limetree Bay Terminals, LLC (Davidson, Timothy) (Entered: 12/06/2021) |
| 12/06/2021 | 876 (82 pgs) | Witness List (Filed By Axens North America, Inc. ). (Related document(s):829 Notice, 830 Notice, 874 Objection) (Watson, M.) (Entered: 12/06/2021) |
| 12/06/2021 | 877 (36 pgs) | Notice *of Filing of License Agreement (Job #7719) By Axens North America, Inc. In Support of Objection to Proposed Cure and Assumption of Contract.* (Related document(s):854 Objection) Filed by Axens North America, Inc. (Watson, M.) (Entered: 12/06/2021) |
| 12/06/2021 | 878 (3 pgs) | Notice of Appearance and Request for Notice Filed by Robert Kent Love Filed by on behalf of Vesta Housing Solutions, LLC (Love, Robert) (Entered: 12/06/2021) |
| 12/06/2021 | 879 (50 pgs; 2 docs) | Entered in Error *of Filing Plan Supplement.* Filed by (Parrish, Jimmy) Modified on 12/13/2021 (aalo). (Entered: 12/06/2021) |
| 12/06/2021 | 880 (3 pgs) | Response *Joinder of Vesta Housing Solutions, LLC in Debtors' Emergency Motion to Reopen Auction Pursuant to Bidding Procedures.* Filed by Vesta Housing Solutions, LLC (Love, Robert) (Entered: 12/06/2021) |
| | 881 (3 pgs) | Objection *to Gulf Oil Limited Partnership's Application for Allowance and Payment of Administrative Expense Claim* |

| | | |
|---|---|---|
| 12/06/2021 | | *Pursuant to 11 U.S.C. Section 503(b)(9)* (related document (s):765 Application for Administrative Expenses). Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 12/06/2021) |
| 12/07/2021 | 882 (1 pg) | PDF with attached Audio File. Court Date & Time [ 12/6/2021 4:32:15 PM ]. File Size [ 62790 KB ]. Run Time [ 02:10:49 ]. (admin). (Entered: 12/07/2021) |
| 12/07/2021 | 883 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Trevor Spears, Esq.. This is to order a transcript of Hearing on December 6, 2021 before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By AMP Capital Investors, Ltd. ). (Spears, Trevor) Electronically forwarded to Judicial Transcribers of Texas on 12/7/2021. Estimated date of completion: 12/8/2021. Modified on 12/7/2021 (RachelWillborg). (Entered: 12/07/2021) |
| 12/07/2021 | 884 (3 pgs) | Notice *of Rescheduled Sale Hearing to 10:00 a.m. CST December 21, 2021.*. Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 12/07/2021) |
| 12/07/2021 | 885 (3 pgs) | Agenda for Hearing on 12/7/2021 (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 12/07/2021) |
| 12/07/2021 | 886 (2 pgs) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Elizabeth A. Green/Limetree Bay Services LLC, et al.. This is to order a transcript of 12/6/2021 Hearing before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) Copy request electronically forwarded to Judicial Transcribers of Texas on 12/7/2021. Estimated date of completion: 12/8/2021. Modified on 12/7/2021 (RachelWillborg). (Entered: 12/07/2021) |
| 12/07/2021 | 887 (2 pgs) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Catherine Hodges. This is to order a transcript of 12/6/2021 before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By BP Corporation North America Inc., an Indiana corporation, BP Products North America Inc., a Maryland corporation ). (Odell, Christopher) Copy request electronically forwarded to Judicial Transcribers of Texas on 12/8/2021. Estimated date of completion: 12/9/2021. Modified on 12/8/2021 (RachelWillborg). (Entered: 12/07/2021) |
| | 888 (2 pgs) | Notice *of Withdrawal of: (I) Notice of Designation of Winning Bid and Back-Up Bids and Sixth Notice of Extension of Milestones and Bid Procedures Deadlines; and (II) Notice of Emergency Sale Hearing.* Filed by |

| | | |
|---|---|---|
| 12/07/2021 | | Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 12/07/2021) |
| 12/07/2021 | 889 (2 pgs) | Withdrawal of Claim: 2 (Valdez, Melissa) (Entered: 12/07/2021) |
| 12/07/2021 | 890 (2 pgs) | AO 435 TRANSCRIPT ORDER FORM (Expedited (7 days)) by Jason S. Brookner. This is to order a transcript of Entire Proceeding 12-6-2021 before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By 405 Sentinel LLC, Arena Investors, LP ). (Brookner, Jason) Copy request electronically forwarded to Judicial Transcribers of Texas on 12/8/2021. Estimated date of completion: 12/15/2021. Modified on 12/8/2021 (RachelWillborg). (Entered: 12/07/2021) |
| 12/07/2021 | 891 (1 pg) | PDF with attached Audio File. Court Date & Time [ 12/7/2021 4:00:07 PM ]. File Size [ 5287 KB ]. Run Time [ 00:11:01 ]. (admin). (Entered: 12/07/2021) |
| 12/07/2021 | 892 (1 pg) | Courtroom Minutes. Time Hearing Held: 4:00 PM. Appearances: SEE ATTACHED. (Related document(s):837 Application to Compromise Controversy) For the reasons stated on the record, the Court approved the Application to Compromise 837. The parties to submit a revised form of order. (VrianaPortillo) (Entered: 12/07/2021) |
| 12/07/2021 | 893 (11 pgs) | Certificate of Service (Filed By BMC Group, Inc. ).(Related document(s):884 Notice, 885 Agenda, 888 Notice) (Ordaz, Steven) (Entered: 12/07/2021) |
| 12/07/2021 | 931 (1 pg) | Motion to Appear pro hac vice for Thomas V. Eagan. Filed by Interested Parties St. Croix Refining and Transportation, LLLP, West Indies Petroleum Ltd (Olin) (Entered: 12/16/2021) |
| 12/07/2021 | 932 (1 pg) | Motion to Appear pro hac vice for Jaime B. Leggett. Filed by Interested Parties St. Croix Refining and Transportation, LLLP, West Indies Petroleum Ltd (Olin) (Entered: 12/16/2021) |
| 12/08/2021 | 894 (25 pgs; 2 docs) | Proposed Order Submission After Hearing (Filed By Limetree Bay Services, LLC ).(Related document(s):837 Application to Compromise Controversy) (Attachments: # 1 Redlined Version) (Rose, Jorian) (Entered: 12/08/2021) |
| 12/08/2021 | 895 (4 pgs) | Response/Objection Filed by Wunderlich-Malec Engineering, Inc.. (Related document(s):750 Notice) (Faria, Ian) (Entered: 12/08/2021) |
| | | |

| | | |
|---|---|---|
| 12/08/2021 | 🌐 896<br>(20 pgs) | Order (I) Authorizing and Approving the Settlement Agreement by and Among the Debtors, Official Committee of Unsecured Creditors, and BP Products North America INC. and (II) Granting Related Relief (Related Doc # 837) Signed on 12/8/2021. (VrianaPortillo) (Entered: 12/08/2021) |
| 12/08/2021 | 🌐 897<br>(7 pgs; 2 docs) | Proposed Order Submission After Hearing (Filed By Limetree Bay Services, LLC ).(Related document(s):862 Emergency Motion (with hearing date)) (Attachments: # 1 Redlined Version) (Green, Elizabeth) (Entered: 12/08/2021) |
| 12/08/2021 | 🌐 898<br>(11 pgs) | Certificate of Service (Filed By BMC Group, Inc. ).(Related document(s):779 Order on Application for Compensation, 783 Order on Application for Compensation, 784 Order on Application for Compensation, 785 Order on Application for Compensation, 786 Order on Application for Compensation) (Ordaz, Steven) (Entered: 12/08/2021) |
| 12/08/2021 | 🌐 899<br>(3 pgs) | Certificate of Service (Filed By BMC Group, Inc. ).(Related document(s):796 Notice, 797 Notice) (Ordaz, Steven) (Entered: 12/08/2021) |
| 12/08/2021 | 🌐 900<br>(11 pgs) | Certificate of Service (Filed By BMC Group, Inc. ).(Related document(s):799 Notice) (Ordaz, Steven) (Entered: 12/08/2021) |
| 12/08/2021 | 🌐 901<br>(11 pgs) | Certificate of Service (Filed By BMC Group, Inc. ).(Related document(s):815 Notice) (Ordaz, Steven) (Entered: 12/08/2021) |
| 12/08/2021 | 🌐 902<br>(11 pgs) | Certificate of Service (Filed By BMC Group, Inc. ).(Related document(s):813 Order on Emergency Motion, 819 Notice) (Ordaz, Steven) (Entered: 12/08/2021) |
| 12/08/2021 | 🔒 903<br>(98 pgs) | Transcript RE: Emergency Motion Hearing (Via Zoom) held on December 6, 2021 before Judge David R. Jones. Transcript is available for viewing in the Clerk's Office. Filed by Transcript access will be restricted through 03/8/2022. (mhen) (Entered: 12/08/2021) |
| 12/08/2021 | 🌐 904<br>(22 pgs) | Certificate of Service (Electronic) (Filed By BMC Group, Inc. ).(Related document(s):829 Notice, 830 Notice) (Ordaz, Steven) (Entered: 12/08/2021) |
| 12/08/2021 | 🌐 905<br>(18 pgs) | Certificate of Service (First Class) (Filed By BMC Group, Inc. ).(Related document(s):829 Notice, 830 Notice) (Ordaz, Steven) (Entered: 12/08/2021) |
| | 🌐 906<br>(38 pgs) | Certificate of Service RE: Document 837 (Filed By BMC Group, Inc. ).(Related document(s):831 Order on |

| 12/08/2021 | | Emergency Motion) (Ordaz, Steven) (Entered: 12/08/2021) |
| --- | --- | --- |
| 12/08/2021 | 907 (11 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):839 Order on Motion to Extend/Limit Exclusivity Period, 840 Order on Application for Compensation) (Ordaz, Steven) (Entered: 12/08/2021) |
| 12/08/2021 | 908 (10 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):860 Emergency Motion, Motion for Protective Order, Motion to Quash, 862 Emergency Motion (with hearing date)) (Ordaz, Steven) (Entered: 12/08/2021) |
| 12/08/2021 | 909 (4 pgs) | BNC Certificate of Mailing. (Related document(s):864 Order on Motion to Appear pro hac vice) No. of Notices: 38. Notice Date 12/08/2021. (Admin.) (Entered: 12/08/2021) |
| 12/08/2021 | 910 (4 pgs) | BNC Certificate of Mailing. (Related document(s):865 Order on Motion to Appear pro hac vice) No. of Notices: 38. Notice Date 12/08/2021. (Admin.) (Entered: 12/08/2021) |
| 12/08/2021 | 911 (4 pgs) | BNC Certificate of Mailing. (Related document(s):866 Order on Motion to Appear pro hac vice) No. of Notices: 38. Notice Date 12/08/2021. (Admin.) (Entered: 12/08/2021) |
| 12/09/2021 | 912 (1 pg) | Notice of Filing of Official Transcript as to 903 Transcript. Parties notified (Related document(s):903 Transcript) (hcar) (Entered: 12/09/2021) |
| 12/10/2021 | 913 (3 pgs) | Order Granting Emergency Motion to Reopen Auction (Related Doc # 862) Signed on 12/10/2021. **Sale Hearing set for December 21, 2021, at 10:00 a.m.** (aalo) (Entered: 12/10/2021) |
| 12/10/2021 | 914 (4 pgs) | Notice *of Emergency Sale Hearing on December 21, 2021 at 10:00 a.m. prevailing Central Time*. Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 12/10/2021) |
| 12/10/2021 | 915 (7 pgs) | Objection *Debtors' Opposition to Dresser-Rand Company's Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. Section 362(d) and for Waiver of Fourteen-Day Stay Pursuant to Fed. R. Bankr. P. 4001(a)(3)* (related document(s):810 Motion for Relief From Stay). Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 12/10/2021) |
| 12/10/2021 | 916 (24 pgs) | BNC Certificate of Mailing. (Related document(s):896 Order on Application to Compromise Controversy) No. of |

| | | |
|---|---|---|
| 12/10/2021 | | Notices: 80. Notice Date 12/10/2021. (Admin.) (Entered: 12/10/2021) |
| 12/11/2021 | 917 (4 pgs) | BNC Certificate of Mailing. (Related document(s):912 Notice of Filing of Official Transcript (Form)) No. of Notices: 38. Notice Date 12/11/2021. (Admin.) (Entered: 12/11/2021) |
| 12/12/2021 | 918 (14 pgs) | BNC Certificate of Mailing. (Related document(s):913 Order on Emergency Motion) No. of Notices: 38. Notice Date 12/12/2021. (Admin.) (Entered: 12/12/2021) |
| 12/13/2021 | 919 (7 pgs) | Debtors Master Service List (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 12/13/2021) |
| 12/13/2021 | 920 (4 pgs; 2 docs) | Notice *of Filing One-Week Budget*. (Related document(s):495 Order on Motion to Use Cash Collateral, Order on Emergency Motion) Filed by Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - One-Week Budget) (Green, Elizabeth) (Entered: 12/13/2021) |
| 12/14/2021 | 921 (12 pgs; 2 docs) | Proposed Order RE: *Debtors' Motion to (I) Approve Sales of Goods Free and Clear of All Claims, Liens, and Encumbrances by NRI Industrial Sales, LLC and (II) Approve NRI's Commission for Sales* (Filed By Limetree Bay Services, LLC ).(Related document(s):701 Motion for Sale of Property) (Attachments: # 1 Redlined Version) (Green, Elizabeth) (Entered: 12/14/2021) |
| 12/14/2021 | 922 (6 pgs) | Statement */The Committees Reservation Of Rights With Respect To The Debtors 4th Budget* (Filed By Official Committee of Unsecured Creditors ).(Related document (s):920 Notice) (Warner, Michael) (Entered: 12/14/2021) |
| 12/15/2021 | 923 (3 pgs) | Exhibit List, Witness List (Filed By Limetree Bay Services, LLC ).(Related document(s):810 Motion for Relief From Stay) (Green, Elizabeth) (Entered: 12/15/2021) |
| 12/15/2021 | 924 (11 pgs) | Amended Schedule E/F: Creditors Who Have Unsecured Claims for Non-Individual *and Amended Summary of Assets and Liabilities for Non-Individuals, with Declaration Under Penalty of Perjury for Non-Individual Debtors* (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 12/15/2021) |
| 12/15/2021 | 925 (71 pgs) | Amended Schedule E/F: Creditors Who Have Unsecured Claims for Non-Individual *and Amended Summary of Assets and Liabilities for Non-Individual Debtors* (Filed By Limetree Bay Refining Operating, LLC ). (Green, Elizabeth) (Entered: 12/15/2021) |

| | | |
|---|---|---|
| 12/15/2021 | 🔵926<br>(23 pgs; 4 docs) | Exhibit List, Witness List (Filed By Dresser-Rand Co. ). (Related document(s):810 Motion for Relief From Stay) (Attachments: # 1 Exhibit 1 Proof of Claim # 2 Exhibit 2 Purchase Order # 3 Exhibit 3 Purchase Order) (Chevallier, J) (Entered: 12/15/2021) |
| 12/15/2021 | 🔵927<br>(39 pgs) | Certificate of Service (Filed By BMC Group, Inc. ).(Related document(s):896 Order on Application to Compromise Controversy) (Ordaz, Steven) (Entered: 12/15/2021) |
| 12/15/2021 | 🔵928<br>(36 pgs) | Certificate of Service (Filed By BMC Group, Inc. ).(Related document(s):913 Order on Emergency Motion, 914 Notice) (Ordaz, Steven) (Entered: 12/15/2021) |
| 12/16/2021 | 🔵929<br>(11 pgs) | Response (Filed By 405 Sentinel LLC, Arena Investors, LP ).(Related document(s):922 Statement) (Brookner, Jason) (Entered: 12/16/2021) |
| 12/16/2021 | 🔵930<br>(3 pgs) | Agenda for Hearing on 12/17/2021 (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 12/16/2021) |
| 12/16/2021 | 🔵 | Certificate of Email Notice. Contacted Claudia Pena. Movant to notice all interested parties and file a certificate of service with the court (Related document(s):868 Motion for Relief From Stay) **Hearing scheduled for 12/21/2021 at 10:00 AM by telephone and video conference.** (aalo) (Entered: 12/16/2021) |
| 12/16/2021 | 🔵933<br>(3 pgs) | Witness List, Exhibit List (Filed By 405 Sentinel LLC, Arena Investors, LP ).(Related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property, 868 Motion for Relief From Stay) (Brookner, Jason) (Entered: 12/16/2021) |
| 12/16/2021 | 🔵934<br>(7 pgs) | Proposed Order RE: *AGREED ORDER* (Filed By Dresser-Rand Co., Limetree Bay Services, LLC ).(Related document(s):810 Motion for Relief From Stay) (Chevallier, J) (Entered: 12/16/2021) |
| 12/16/2021 | 🔵935<br>(3 pgs) | Notice *Seventh Notice of Extension of Milestones and Bid Procedures Deadlines*. (Related document(s):696 Notice) Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 12/16/2021) |
| 12/16/2021 | 🔵936<br>(10 pgs) | Objection *Debtors' Opposition to Intertek USA Inc.'s Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d) and for Waiver of the 14-Day Stay Pursuant to Fed. R. Bankr. P. 4001(a)(3)* (related document(s):868 Motion for Relief From Stay). Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 12/16/2021) |

| | | |
|---|---|---|
| 12/17/2021 | 937<br>(2 pgs) | Courtroom Minutes. Time Hearing Held: 10:40 AM. Appearances: SEE ATTACHED. (Related document(s):810 Motion for Relief From Stay) The Court signed the proposed agreed order submitted at docket no. 934. (VrianaPortillo) (Entered: 12/17/2021) |
| 12/17/2021 | 938<br>(191 pgs; 10 docs) | Witness List, Exhibit List (Filed By Bay, Ltd ). (Attachments: # 1 Exhibit 33 # 2 Exhibit 34 # 3 Exhibit 35 # 4 Exhibit 36 # 5 Exhibit 37 # 6 Exhibit 38 # 7 Exhibit 39 # 8 Exhibit 40 # 9 Exhibit 41) (Hughes, Patrick) (Entered: 12/17/2021) |
| 12/17/2021 | 939<br>(4 pgs) | Exhibit List, Witness List (Filed By Ad Hoc Group of Terminal Lenders). (Brimmage, Marty) (Entered: 12/17/2021) |
| 12/17/2021 | 940<br>(2 pgs) | Notice *of Hearing on December 21, 2021 at 10:00 a.m. prevailing Central Time.* Filed by Intertek USA Inc. (Alexander, Vincent) (Entered: 12/17/2021) |
| 12/17/2021 | 941<br>(2 pgs) | Witness List, Exhibit List (Filed By Limetree Bay Terminals, LLC ). (Davidson, Timothy) (Entered: 12/17/2021) |
| 12/17/2021 | 942<br>(3 pgs) | Exhibit List, Witness List (Filed By Official Committee of Unsecured Creditors ). (Warner, Michael) (Entered: 12/17/2021) |
| 12/17/2021 | 943<br>(7 pgs) | Agreed Order Signed on 12/17/2021 (Related document (s):810 Motion for Relief From Stay) (VrianaPortillo) (Entered: 12/17/2021) |
| 12/17/2021 | 944<br>(1 pg) | PDF with attached Audio File. Court Date & Time [ 12/17/2021 10:40:48 AM ]. File Size [ 1856 KB ]. Run Time [ 00:03:52 ]. (admin). (Entered: 12/17/2021) |
| 12/17/2021 | 945<br>(21 pgs) | Motion to Allow Claims *Christiansted Equipment LTD's Application for Allowance and Payment of Administrative Expense Claim.* Objections/Request for Hearing Due in 21 days. Filed by Creditor Chirstiansted Equipment Ltd (Prostok, Jeffrey) (Entered: 12/17/2021) |
| 12/17/2021 | 946<br>(2 pgs) | Proposed Order RE: (Filed By Chirstiansted Equipment Ltd ).(Related document(s):945 Motion to Allow Claims) (Prostok, Jeffrey) (Entered: 12/17/2021) |
| | 947<br>(5 pgs) | Stipulation By Official Committee of Unsecured Creditors and /Stipulation Between Committee And Prepetition Holdco Agent Clarifying Certain Committee Challenge Rights Pursuant To Final Postpetition Financing Order. |

| | | |
|---|---|---|
| 12/17/2021 | | Does this document include an agreed order or otherwise request that the judge sign a document? No. (Filed By Official Committee of Unsecured Creditors ).(Related document(s):495 Order on Motion to Use Cash Collateral, Order on Emergency Motion) (Warner, Michael) (Entered: 12/17/2021) |
| 12/17/2021 | 961 (1 pg) | Motion to Appear pro hac vice *Jeffrey P Bast*. Filed by Interested Parties St. Croix Refining and Transportation, LLLP, West Indies Petroleum Ltd (BrendaLacy) (Entered: 12/20/2021) |
| 12/18/2021 | 948 (3 pgs) | Notice *Notice of Designation of Winning Bid and Back-up Bid*. (Related document(s):392 Order Setting Hearing) Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 12/18/2021) |
| 12/18/2021 | 949 (3 pgs) | Witness List, Exhibit List (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 12/18/2021) |
| 12/19/2021 | 950 (353 pgs; 4 docs) | Objection *(Limited)* (related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property). Filed by United States of America (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C) (Kincheloe, Richard) (Entered: 12/19/2021) |
| 12/19/2021 | 951 (9 pgs; 2 docs) | Supplemental Objection *and Reservation of Rights of SAP America, Inc. to the Debtors Motion to Sell Substantially All of Their Assets* (related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property). Filed by SAP America, Inc. (Attachments: # 1 Exhibit A) (Ludman, Donald) (Entered: 12/19/2021) |
| 12/19/2021 | 952 (8 pgs; 2 docs) | Objection *Bay, Ltd's Supplemental Objection to the Proposed Sale and Reservation of Rights* (related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property, 835 Emergency Motion). Filed by Bay, Ltd (Attachments: # 1 Proposed Order) (Hughes, Patrick) (Entered: 12/19/2021) |
| 12/19/2021 | 953 (1 pg) | Order Granting Motion To Appear pro hac vice - Thomas V. Eagan (Related Doc # 931) Signed on 12/19/2021. (emiller) (Entered: 12/19/2021) |
| 12/19/2021 | 954 (3 pgs) | Statement */Official Committee Of Unsecured Creditors Statement Regarding Sale Of Debtors Assets* (Filed By Official Committee of Unsecured Creditors ).(Related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property, 835 Emergency Motion, 935 Notice) (Warner, Michael) (Entered: 12/19/2021) |
| | | |

| | | |
|---|---|---|
| 12/19/2021 | ● 955<br>(1 pg) | Order Granting Motion To Appear pro hac vice - Jaime B. Leggett (Related Doc # 932) Signed on 12/19/2021. (emiller) (Entered: 12/19/2021) |
| 12/19/2021 | ● 956<br>(8 pgs) | Objection *to, Request to Adjourn Hearing on, and Reservation of Rights of St. Croix Energy, LLLP to Debtors' Motion for Entry of an Order Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Liabilities, Rights, Interests, and Encumbrances* (related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property). Filed by St. Croix Energy, LLLP (Galardi, Gregg) (Entered: 12/19/2021) |
| 12/19/2021 | ● 957<br>(8 pgs) | Corrected Objection *to, Request to Adjourn Hearing On, and Reservation of Rights of St. Croix Energy, LLLP to Debtors' Motion for Entry of an Order Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Liabilities, Rights, Interests, and Encumbrances* (related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property). Filed by St. Croix Energy, LLLP (Galardi, Gregg) (Entered: 12/19/2021) |
| 12/19/2021 | ● 958<br>(4 pgs) | Witness List, Exhibit List (Filed By St. Croix Energy, LLLP ). (Galardi, Gregg) (Entered: 12/19/2021) |
| 12/19/2021 | ● 959<br>(10 pgs) | BNC Certificate of Mailing. (Related document(s):943 Generic Order) No. of Notices: 40. Notice Date 12/19/2021. (Admin.) (Entered: 12/19/2021) |
| 12/20/2021 | ● 960<br>(24 pgs) | Notice */Monthly Fee Statement Of Pachulski Stang Ziehl & Jones LLP For Compensation For Services And Reimbursement Of Expenses As Counsel To The Official Committee Of Unsecured Creditors For The Period From November 1, 2021 Through November 30, 2021*. Filed by Official Committee of Unsecured Creditors (Warner, Michael) (Entered: 12/20/2021) |
| 12/20/2021 | ● 962<br>(3 pgs; 2 docs) | Notice *Notice of Filing Five-Week Budget*. (Related document(s):495 Order on Motion to Use Cash Collateral, Order on Emergency Motion) Filed by Limetree Bay Services, LLC (Attachments: # 1 Exhibit Five-Week Budget) (Green, Elizabeth) (Entered: 12/20/2021) |
| 12/20/2021 | ● 963<br>(4 pgs; 2 docs) | Corrected Notice *Notice of Filing Five-Week Budget*. (Related document(s):495 Order on Motion to Use Cash Collateral, Order on Emergency Motion) Filed by Limetree Bay Services, LLC (Attachments: # 1 Exhibit Corrected Five-Week Budget) (Green, Elizabeth) (Entered: 12/20/2021) |

| | | |
|---|---|---|
| 12/20/2021 | ● 964 (4 pgs) | Agenda for Hearing on 12/21/2021 (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 12/20/2021) |
| 12/20/2021 | ● 965 (3 pgs) | Witness List, Exhibit List (Filed By Intertek USA Inc. ). (Alexander, Vincent) (Entered: 12/20/2021) |
| 12/20/2021 | ● 966 (4 pgs) | Exhibit List, Witness List (Filed By St. Croix Energy, LLLP ).(Related document(s):958 Witness List, Exhibit List) (Galardi, Gregg) (Entered: 12/20/2021) |
| 12/20/2021 | ● 967 (142 pgs) | Notice *Notice of Filing of (I) Proposed Sale Order and (II) Asset Purchase Agreement for Winning Bid*. (Related document(s):948 Notice) Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 12/20/2021) |
| 12/20/2021 | ● 968 (36 pgs) | Notice *of Filing Laboratory Services Agreement, designated Contract No. LTR-242*. (Related document (s):868 Motion for Relief From Stay) Filed by Intertek USA Inc. (Alexander, Vincent) (Entered: 12/20/2021) |
| 12/21/2021 | ● 969 (8 pgs) | Response *Debtors' Response to Intertek USA Inc.'s Limited Objection and Reservation of Rights to Sale*. Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 12/21/2021) |
| 12/21/2021 | ● 970 (13 pgs) | Omnibus Response *Debtors' Omnibus Response to: (I) Bay, Ltd.'s Supplemental Objection to the Proposed Sale and Reservation of Rights; and (II) St. Croix Energy, LLLP's Objection to, Request to Adjourn Hearing on, and Reservation of Rights to Debtors' Motion for Entry of an Order Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Liabilities, Rights, Interests, and Encumbrances*. Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 12/21/2021) |
| 12/21/2021 | ● 971 (7 pgs; 2 docs) | Exhibit List, Witness List (Filed By 405 Sentinel LLC, Arena Investors, LP ).(Related document(s):933 Witness List, Exhibit List) (Attachments: # 1 Exhibit 1) (Brookner, Jason) (Entered: 12/21/2021) |
| 12/21/2021 | ● 972 (3 pgs) | Response *Debtors' Reservation of Rights with Respect to the Objections to the Debtors' Emergency Motion for Entry of Order: (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief*. Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 12/21/2021) |
| | ● 973 (35 pgs; 2 docs) | Notice *Winning Bidders' Notice of Filing In Support of Debtors' Emergency Motion for Entry of Order: (I) Establishing Bidding and Sale Procedures; (II) Approving* |

| | | |
|---|---|---|
| 12/21/2021 | | *the Sale of Assets; and (III) Granting Related Relief and Debtors' Emergency Notices of Sale Hearing.* (Related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property) Filed by West Indies Petroleum Ltd (Attachments: # 1 Exhibit A) (Sparacino, John) (Entered: 12/21/2021) |
| 12/21/2021 | doc (4 pgs) | Courtroom Minutes. Time Hearing Held: 10:00 AM - 5:30 PM. Appearances: see attached (Related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property) Witness: Michael O'Hara, Mark Shapiro, Charles Chambers. For the reasons stated on the record, the Court has approved the sale. Order to be uploaded for final approval. **A Hearing should it needed has been set for 1/11/2022 at 2:30 PM** (aalo) Additional attachment(s) added on 12/21/2021 (aalo). (Entered: 12/21/2021) |
| 12/21/2021 | 974 (1 pg) | PDF with attached Audio File. Court Date & Time [ 12/21/2021 9:56:32 AM ]. File Size [ 174653 KB ]. Run Time [ 06:03:52 ]. (admin). (Entered: 12/21/2021) |
| 12/21/2021 | 975 (140 pgs) | Proposed Order RE: *Debtors' Emergency Motion for Entry of Order: (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief* (Filed By Limetree Bay Services, LLC ). (Related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property) (Green, Elizabeth) (Entered: 12/21/2021) |
| 12/21/2021 | 976 (38 pgs) | Proposed Order RE: .(Related document(s):191 Emergency Motion (with hearing date), Motion for Sale of Property) (aalo) (Entered: 12/21/2021) |
| 12/21/2021 | 977 (141 pgs; 2 docs) | Order (Related Doc # 191) Signed on 12/21/2021. (Attachments: # 1 Exhibit) (aalo) (Entered: 12/21/2021) |
| 12/22/2021 | 978 (77 pgs) | Sealed Document / *St. Croix Energy, LLLP's Notice of Admitted Exhibits for December 21, 2021 Sale Hearing* (Filed By St. Croix Energy, LLLP ). (Galardi, Gregg) (Entered: 12/22/2021) |
| 12/22/2021 | 979 (19 pgs) | Notice *of St. Croix Energy, LLLP's Notice of Admitted Exhibits for December 21, 2021 Sale Hearing (Public Version)*. Filed by St. Croix Energy, LLLP (Galardi, Gregg) (Entered: 12/22/2021) |
| 12/22/2021 | 980 (4 pgs) | BNC Certificate of Mailing. (Related document(s):953 Order on Motion to Appear pro hac vice) No. of Notices: 40. Notice Date 12/22/2021. (Admin.) (Entered: 12/22/2021) |

| | | |
|---|---|---|
| 12/22/2021 | 🌐 981<br>(4 pgs) | BNC Certificate of Mailing. (Related document(s):955 Order on Motion to Appear pro hac vice) No. of Notices: 40. Notice Date 12/22/2021. (Admin.) (Entered: 12/22/2021) |
| 12/23/2021 | 🌐 982<br>(4 pgs) | Notice of Appeal filed. (related document(s):913 Order on Emergency Motion). Fee Amount $298. Appellant Designation due by 01/6/2022. (Hughes, Patrick) (Entered: 12/23/2021) |
| 12/23/2021 | 🌐 983 | Election to Appeal to District Court . (Hughes, Patrick) (Entered: 12/23/2021) |
| 12/23/2021 | | Receipt of Notice of Appeal( 21-32351) [appeal,ntcapl] ( 298.00) Filing Fee. Receipt number A23458483. Fee amount $ 298.00. (U.S. Treasury) (Entered: 12/23/2021) |
| 12/24/2021 | 🌐 984<br>(5 pgs) | Notice *Notice of Designation of Assumption and Assignment of Executory Contract*. (Related document (s):977 Order on Motion for Sale of Property under Section 363(b)) Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 12/24/2021) |
| 12/24/2021 | 🌐 985<br>(41 pgs) | BNC Certificate of Mailing. (Related document(s):977 Order on Motion for Sale of Property under Section 363(b)) No. of Notices: 40. Notice Date 12/24/2021. (Admin.) (Entered: 12/24/2021) |
| 12/28/2021 | 🌐 986<br>(5 pgs; 2 docs) | Clerk's Notice of Filing of an Appeal. On 12/23/2021, Berry Contracting LP filed a notice of appeal. The appeal has been assigned to U.S. District Judge Lee Rosenthal, Civil Action 4:21-cv-4187. Parties notified (Related document (s):982 Notice of Appeal) (Attachments: # 1 Notice of Appeal) (ShoshanaArnow) (Entered: 12/28/2021) |
| 12/28/2021 | 🌐 987<br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Trevor Spears, Esq.. This is to order a transcript of Hearing on December 21, 2021 before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By AMP Capital Investors, Ltd. ). (Spears, Trevor)Electronically forwarded to Judicial Transcribers of Texas on 12/29/2021. Estimated completion date: 12/30/2021 Modified on 12/29/2021 (ShannonHolden). (Entered: 12/28/2021) |
| 12/28/2021 | 🌐 988<br>(2 pgs) | Notice of Appearance and Request for Notice Filed by John James Sparacino Filed by on behalf of West Indies Petroleum Ltd (Sparacino, John) (Entered: 12/28/2021) |
| | 🌐 989<br>(2 pgs) | Notice of Appearance and Request for Notice Filed by S. Margie Venus Filed by on behalf of West Indies Petroleum |

| | | |
|---|---|---|
| 12/28/2021 | | Ltd (Venus, S.) (Entered: 12/28/2021) |
| 12/29/2021 | 🌐 990 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Marty L. Brimmage, Jr.. This is to order a transcript of the December 21, 2021 Hearing before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Ad Hoc Term Lender Group ). (Brimmage, Marty) Electronically forwarded to Judicial Transcribers of Texas on 12/30/2021. Estimated completion date: 12/31/2021. Modified on 12/30/2021 (DMcKinnieRichardson). (Entered: 12/29/2021) |
| 12/29/2021 | 🌐 991 (14 pgs) | Notice /Summary Of Fourth Monthly Fee Statement Of Riveron RTS, LLC For Payment Of Interim Compensation And Reimbursement Of Expenses For The Period November 1, 2021 Through November 30, 2021. Filed by Official Committee of Unsecured Creditors (Warner, Michael) (Entered: 12/29/2021) |
| 12/30/2021 | 🌐 992 (134 pgs; 2 docs) | Notice /Fifth Monthly Fee Statement of Baker & Hostetler LLP for Services Rendered and Reimbursement of Expenses Incurred from November 1, 2021 through November 30, 2021. Filed by Limetree Bay Services, LLC (Attachments: # 1 Exhibit Exhibit A - Time and Expense Records) (Green, Elizabeth) (Entered: 12/30/2021) |
| 12/30/2021 | 🌐 993 (20 pgs) | Notice /Third Monthly Fee Statement of Hughes Arrell Kinchen LLP for Services Rendered and Reimbursement of Expenses Incurred from November 1, 2021 through November 30, 2021. Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 12/30/2021) |
| 12/30/2021 | 🌐 994 (14 pgs) | Notice /Monthly Fee Statement of The Claro Group, LLC for Services Rendered and Reimbursement of Expenses Incurred from November 1, 2021 through November 30, 2021. Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 12/30/2021) |
| 12/30/2021 | 🌐 995 (6 pgs) | Notice /Fourth Monthly Fee Statement of Beckstedt & Kuczynski LLP for Services Rendered from November 1, 2021 through November 30, 2021. Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 12/30/2021) |
| 12/30/2021 | 🌐 996 (1 pg) | Motion to Appear pro hac vice of Andrew G. Devore. Filed by Interested Party St. Croix Energy, LLLP (Galardi, Gregg) (Entered: 12/30/2021) |
| 12/30/2021 | 🌐 997 (1 pg) | Motion to Appear pro hac vice of Uchechi Egeonuigwe. Filed by Interested Party St. Croix Energy, LLLP (Galardi, Gregg) (Entered: 12/30/2021) |
| | | |

| | | |
|---|---|---|
| 12/30/2021 | 998<br>(151 pgs) | Notice of Appeal filed. (related document(s):913 Order on Emergency Motion, 977 Order on Motion for Sale of Property under Section 363(b)). Fee Amount $298. Appellant Designation due by 01/13/2022. (Galardi, Gregg) (Entered: 12/30/2021) |
| 12/30/2021 | 999 | Election to Appeal to District Court . (Galardi, Gregg) (Entered: 12/30/2021) |
| 12/30/2021 | 1000<br>(5 pgs) | Stipulation By Limetree Bay Services, LLC and West Indies Petroleum Limited and Port Hamilton Refining and Transportation, LLLP and the United States Virgin Islands. Does this document include an agreed order or otherwise request that the judge sign a document? Yes., Agreed Order and Certificate of Counsel (Filed By Limetree Bay Services, LLC ).(Related document(s):977 Order on Motion for Sale of Property under Section 363(b)) (Green, Elizabeth) (Entered: 12/30/2021) |
| 12/30/2021 | 1001<br>(247 pgs) | Transcript RE: Sale Hearing held on December 21, 2021 before Judge David R. Jones. Transcript is available for viewing in the Clerk's Office. Filed by Transcript access will be restricted through 03/30/2022. (mhen) (Entered: 12/30/2021) |
| 12/30/2021 | 1002<br>(5 pgs) | Stipulation and Agreed Order to Extend the Deadline to Object to the Assumption and Assignment of Designated Contract Signed on 12/30/2021 (Related document(s):1000 Stipulation, Agreed Order and Certificate of Counsel) (VrianaPortillo) (Entered: 12/30/2021) |
| 12/30/2021 | 1003<br>(4 pgs) | BNC Certificate of Mailing. (Related document(s):986 Clerk's Notice of Filing of an Appeal) No. of Notices: 40. Notice Date 12/30/2021. (Admin.) (Entered: 12/30/2021) |
| 01/01/2022 | 1004<br>(8 pgs) | BNC Certificate of Mailing. (Related document(s):1002 Generic Order) No. of Notices: 40. Notice Date 01/01/2022. (Admin.) (Entered: 01/01/2022) |
| 01/03/2022 | | Receipt of Notice of Appeal( 21-32351) [appeal,ntcapl] ( 298.00) Filing Fee. Receipt number A23468960. Fee amount $ 298.00. (U.S. Treasury) (Entered: 01/03/2022) |
| 01/03/2022 | 1005<br>(1 pg) | Notice of Filing of Official Transcript as to 1001 Transcript. Parties notified (Related document(s):1001 Transcript) (Olin) (Entered: 01/03/2022) |
| | 1006<br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Jorian L. Rose - Limetree Bay Services, LLC. This is to order a transcript of Hearing on 12/21/2021 before Judge David R. Jones. Court Reporter/Transcriber: Judicial |

| | | |
|---|---|---|
| 01/03/2022 | | Transcribers of Texas (Filed By Limetree Bay Services, LLC ). (Rose, Jorian) Copy request electronically forwarded to Judicial Transcribers of Texas on 1/3/2022. Estimated date of completion: 1/4/2022. Modified on 1/3/2022 (RachelWillborg). (Entered: 01/03/2022) |
| 01/04/2022 | 1007<br><br>(4 pgs) | Notice of Appeal filed. (related document(s):977 Order on Motion for Sale of Property under Section 363(b)). Fee Amount $298. Appellant Designation due by 01/18/2022. (Hughes, Patrick) (Entered: 01/04/2022) |
| 01/04/2022 | 1008 | Election to Appeal to District Court . (Hughes, Patrick) (Entered: 01/04/2022) |
| 01/04/2022 | | Receipt of Notice of Appeal( 21-32351) [appeal,ntcapl] ( 298.00) Filing Fee. Receipt number A23472439. Fee amount $ 298.00. (U.S. Treasury) (Entered: 01/04/2022) |
| 01/04/2022 | 1009<br><br>(18 pgs; 7 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 10/31/2021, $0 disbursed (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Statement of Cash Receipts and Disbursements # 3 Attachment 3 - Unaudited Financial Statements # 4 Attachment 4 - Schedule of Bank Accounts # 5 Attachment 5 - Bank Statements & Reconciliations # 6 Attachment 6 - Schedule of Insurance) (Green, Elizabeth) (Entered: 01/04/2022) |
| 01/04/2022 | 1010<br><br>(7 pgs; 3 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 10/31/2021, $0 disbursed (Filed By Limetree Bay Refining Holdings, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Schedule of Insurance) (Green, Elizabeth) (Entered: 01/04/2022) |
| 01/04/2022 | 1011<br><br>(14 pgs; 6 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 10/31/2021, $0 disbursed (Filed By Limetree Bay Refining Holdings II, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Statement of Cash Receipts and Disbursements # 3 Attachment 3 - Unaudited Financial Statements # 4 Attachment 4 - Bank Statements & Reconciliations # 5 Attachment 5 - Schedule of Insurance) (Green, Elizabeth) (Entered: 01/04/2022) |
| 01/04/2022 | 1012<br><br>(49 pgs; 7 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 10/31/2021, $2934926 disbursed (Filed By Limetree Bay Refining, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Statement of Cash Receipts and Disbursements # 3 Attachment 3 - Unaudited Financial Statements # 4 Attachment 4 - Schedule of Bank Accounts # 5 Attachment 5 - Bank Statements & Reconciliations # 6 Attachment 6 - Schedule of Insurance) (Green, Elizabeth) (Entered: 01/04/2022) |

| | | |
|---|---|---|
| 01/04/2022 | 🌐 [1013](#)<br><br>(18 pgs; 7 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 10/31/2021, $347865 disbursed (Filed By Limetree Bay Refining Operating, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Statement of Cash Receipts and Disbursements # 3 Attachment 3 - Unaudited Financial Statements # 4 Attachment 4 - Schedule of Bank Accounts # 5 Attachment 5 - Bank Statements & Reconciliations # 6 Attachment 6 - Schedule of Insurance) (Green, Elizabeth) (Entered: 01/04/2022) |
| 01/04/2022 | 🌐 [1014](#)<br><br>(38 pgs; 7 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 10/31/2021, $89 disbursed (Filed By Limetree Bay Refining Marketing, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Statement of Cash Receipts and Disbursements # 3 Attachment 3 - Unaudited Financial Statements # 4 Attachment 4 - Schedule of Bank Accounts # 5 Attachment 5 - Bank Statements & Reconciliations # 6 Attachment 6 - Schedule of Insurance) (Green, Elizabeth) (Entered: 01/04/2022) |
| 01/04/2022 | 🌐 [1015](#)<br><br>(1 pg) | Order Granting Motion To Appear pro hac vice - Andrew G. Devore (Related Doc # 996) Signed on 1/4/2022. (emiller) (Entered: 01/04/2022) |
| 01/04/2022 | 🌐 [1016](#)<br><br>(1 pg) | Order Granting Motion To Appear pro hac vice - Uchechi Egeonuigwe (Related Doc # 997) Signed on 1/4/2022. (emiller) (Entered: 01/04/2022) |
| 01/04/2022 | 🌐 [1017](#)<br><br>(1 pg) | Order Granting Motion To Appear pro hac vice - Jeffrey P. Bast (Related Doc # 961) Signed on 1/4/2022. (emiller) (Entered: 01/04/2022) |
| 01/05/2022 | 🌐 [1018](#)<br><br>(21 pgs; 2 docs) | Emergency Motion / *St. Croix Energy, LLLP's Emergency Motion for a Stay Pending Appeal of the Orders Reopening the Auction and Approving the Sale of Substantially All of the Debtors' Assets and Other Related Relief* Filed by Interested Party St. Croix Energy, LLLP (Attachments: # 1 Proposed Order) (Galardi, Gregg) (Entered: 01/05/2022) |
| 01/05/2022 | 🌐 [1019](#)<br><br>(4 pgs) | BNC Certificate of Mailing. (Related document(s):1005 Notice of Filing of Official Transcript (Form)) No. of Notices: 40. Notice Date 01/05/2022. (Admin.) (Entered: 01/05/2022) |
| | 🌐 [1020](#)<br><br>(2 pgs) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Patrick L. Hughes. This is to order a transcript of hearing held on 12-21-21 (COPY Order) before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Bay, Ltd ). (Hughes, Patrick) Copy request electronically forwarded to Judicial Transcribes of Texas. Estimated completion time: 01/07/2022. Modified on |

| 01/06/2022 | | 1/6/2022 (ShannonHolden). (Entered: 01/06/2022) |
|---|---|---|
| 01/06/2022 | 🌐 1021 (5 pgs) | Statement of Issues on Appeal (related document(s):982 Notice of Appeal)., Appellant Designation of Contents For Inclusion in Record On Appeal (related document(s):982 Notice of Appeal). (Hughes, Patrick) (Entered: 01/06/2022) |
| 01/06/2022 | 🌐 1022 (1 pg) | Clerk's Notice of Filing of an Appeal. On 12/30/2021, St. Croix Energy, LLLP filed a notice of appeal. The appeal has been assigned to U.S. District Judge Lee H Rosenthal, Civil Action 4:22-cv-00041. Parties notified (Related document(s):998 Notice of Appeal) (SamanthaWarda) (Entered: 01/06/2022) |
| 01/06/2022 | 🌐 1023 (1 pg) | Clerk's Notice of Filing of an Appeal. On 1/4/2022, Berry Contracting LP filed a notice of appeal. The appeal has been assigned to U.S. District Judge Lee H Rosenthal, Civil Action 4:22-cv-00040. Parties notified (Related document (s):1007 Notice of Appeal) (SamanthaWarda) (Entered: 01/06/2022) |
| 01/06/2022 | 🌐 1024 (5 pgs) | Stipulation and Agreed Order to Extend the Deadline to Object to the Assumption and Assignment of Designated Contract Signed on 1/6/2022 (Related document(s):1000 Stipulation, Agreed Order and Certificate of Counsel) (VrianaPortillo) (Entered: 01/06/2022) |
| 01/06/2022 | 🌐 1025 (4 pgs) | Notice *of Hearing on Emergency Motion for a Stay Pending Appeal of the Orders Reopening the Auction and Approving the Sale of Substantially All of the Debtors' Assets and Other Related Relief*. (Related document(s):1018 Emergency Motion) Filed by St. Croix Energy, LLLP (Galardi, Gregg) (Entered: 01/06/2022) |
| 01/06/2022 | 🌐 | Certificate of Email Notice. Contacted Gregg Galardi. Movant to notice all interested parties and file a certificate of service with the court (Related document(s):1018 Emergency Motion) Hearing scheduled for 1/11/2022 at 12:00 PM by telephone and video conference. (aalo) (Entered: 01/06/2022) |
| 01/06/2022 | 🌐 1026 (3 pgs) | Notice *of Withdrawal as Counsel*. Filed by BP Corporation North America Inc., an Indiana corporation, BP Products North America Inc., a Maryland corporation (Odell, Christopher) (Entered: 01/06/2022) |
| 01/06/2022 | 🌐 1027 (4 pgs) | BNC Certificate of Mailing. (Related document(s):1015 Order on Motion to Appear pro hac vice) No. of Notices: 40. Notice Date 01/06/2022. (Admin.) (Entered: 01/06/2022) |
| | | |

| | | |
|---|---|---|
| 01/06/2022 | 🌐 1028<br><br>(4 pgs) | BNC Certificate of Mailing. (Related document(s):1016 Order on Motion to Appear pro hac vice) No. of Notices: 40. Notice Date 01/06/2022. (Admin.) (Entered: 01/06/2022) |
| 01/06/2022 | 🌐 1029<br><br>(4 pgs) | BNC Certificate of Mailing. (Related document(s):1017 Order on Motion to Appear pro hac vice) No. of Notices: 40. Notice Date 01/06/2022. (Admin.) (Entered: 01/06/2022) |
| 01/07/2022 | 🌐 1030<br><br>(11 pgs) | Certificate of Service (Filed By BMC Group, Inc. ).(Related document(s):923 Exhibit List, Witness List) (Ordaz, Steven) (Entered: 01/07/2022) |
| 01/07/2022 | 🌐 1031<br><br>(11 pgs) | Certificate of Service (Filed By BMC Group, Inc. ).(Related document(s):930 Agenda) (Ordaz, Steven) (Entered: 01/07/2022) |
| 01/07/2022 | 🌐 1032<br><br>(11 pgs) | Certificate of Service (Filed By BMC Group, Inc. ).(Related document(s):935 Notice, 936 Objection) (Ordaz, Steven) (Entered: 01/07/2022) |
| 01/07/2022 | 🌐 1033<br><br>(11 pgs) | Certificate of Service (Filed By BMC Group, Inc. ).(Related document(s):948 Notice, 963 Notice, 964 Agenda, 967 Notice) (Ordaz, Steven) (Entered: 01/07/2022) |
| 01/07/2022 | 🌐 1034<br><br>(4 pgs) | Statement *Bay, Ltd.'s Joinder in Support of St. Croix Energy LLLP's Emergency Motion for a Stay Pending Appeal of the Orders Reopening the Auction and Approving the Sale of Substantially All of the Debtors' Assets and Other Related Relief* (Filed By Bay, Ltd ).(Related document(s):1018 Emergency Motion) (Hughes, Patrick) (Entered: 01/07/2022) |
| 01/07/2022 | 🌐 1035<br><br>(11 pgs) | Certificate of Service (Filed By BMC Group, Inc. ).(Related document(s):969 Response, 970 Response, 972 Response, 975 Proposed Order) (Ordaz, Steven) (Entered: 01/07/2022) |
| 01/07/2022 | 🌐 1036<br><br>(11 pgs) | Certificate of Service (Filed By BMC Group, Inc. ).(Related document(s):984 Notice) (Ordaz, Steven) (Entered: 01/07/2022) |
| 01/07/2022 | 🌐 1037<br><br>(588 pgs; 7 docs) | Exhibit List, Witness List (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit 1 - Hearing Transcript of 12-6-2021 # 2 Exhibit 2 - Hearing Transcript of 12-21-2021 # 3 Exhibit 3 - Auction Transcript of 11-18-2021 (part 1) # 4 Exhibit 4 - Auction Transcript of 11-18-2021 (part 2) # 5 Exhibit 5 - Auction Transcript 12-17-2021 # 6 Exhibit 6 - Auction Transcript 12-18-2021) (Green, Elizabeth) (Entered: 01/07/2022) |

| | | |
|---|---|---|
| 01/07/2022 | 🔵 1038<br><br>(8 pgs) | Stipulation By Limetree Bay Services, LLC and Limetree Bay Refining, LLC, the Official Committee of Unsecured Creditors, and the Named Plaintiffs in the Class Actions. Does this document include an agreed order or otherwise request that the judge sign a document? Yes. (Filed By Limetree Bay Services, LLC ).(Related document(s):769 Generic Order) (Green, Elizabeth) (Entered: 01/07/2022) |
| 01/07/2022 | 🔵 1039<br><br>(4 pgs) | Statement /The Committees Request For An Order Addressing Distribution Of Sale Proceeds (Filed By Official Committee of Unsecured Creditors ).(Related document(s):963 Notice, 977 Order on Motion for Sale of Property under Section 363(b)) (Warner, Michael) (Entered: 01/07/2022) |
| 01/07/2022 | 🔵 1040<br><br>(12 pgs; 2 docs) | Second Motion to Extend Exclusivity Period for Filing a Chapter 11 Plan and Disclosure Statement. Objections/Request for Hearing Due in 21 days. Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order) (Green, Elizabeth) (Entered: 01/07/2022) |
| 01/08/2022 | 🔵 1041<br><br>(8 pgs) | BNC Certificate of Mailing. (Related document(s):1024 Generic Order) No. of Notices: 40. Notice Date 01/08/2022. (Admin.) (Entered: 01/08/2022) |
| 01/08/2022 | 🔵 1042<br><br>(4 pgs) | BNC Certificate of Mailing. (Related document(s):1022 Clerk's Notice of Filing of an Appeal) No. of Notices: 40. Notice Date 01/08/2022. (Admin.) (Entered: 01/08/2022) |
| 01/08/2022 | 🔵 1043<br><br>(4 pgs) | BNC Certificate of Mailing. (Related document(s):1023 Clerk's Notice of Filing of an Appeal) No. of Notices: 40. Notice Date 01/08/2022. (Admin.) (Entered: 01/08/2022) |
| 01/10/2022 | 🔵 1044<br><br>(31 pgs; 3 docs) | Response Debtors' Opposition to St. Croix Energy, LLLP's Emergency Motion for a Stay Pending Appeal of the Orders Reopening the Auction and Approving the Sale of Substantially All of the Debtors' Assets and Other Related Relief (related document(s):1018 Emergency Motion). Filed by Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Declaration of Mark Shapiro # 2 Exhibit B - Projection of Damages from Stay Pending Appeal) (Green, Elizabeth) (Entered: 01/10/2022) |
| | 🔵 1045<br><br>(3 pgs) | Objection /Official Committee Of Unsecured Creditors Joinder To Debtors Opposition To St. Croix Energy, LLLPs Emergency Motion For A Stay Pending Appeal Of The Orders Reopening The Auction And Approving The Sale Of Substantially All Of The Debtors Assets And Other Related Relief [Docket No. 1044] (related document(s):1018 Emergency Motion). Filed by Official Committee of Unsecured Creditors (Warner, Michael) (Entered: |

| 01/10/2022 | | 01/10/2022) |
|---|---|---|
| 01/10/2022 | 🔵 1046<br><br>(2 pgs) | Notice *of Hearing on The Committees Request for an Order Addressing Distribution of Sale Proceeds*. (Related document(s):1039 Statement) Filed by Official Committee of Unsecured Creditors (Warner, Michael) (Entered: 01/10/2022) |
| 01/10/2022 | 🔵 1047<br><br>(3 pgs) | Exhibit List, Witness List (Filed By Official Committee of Unsecured Creditors ).(Related document(s):1018 Emergency Motion, 1039 Statement, 1045 Objection) (Warner, Michael) (Entered: 01/10/2022) |
| 01/10/2022 | 🔵 1048<br><br>(3 pgs) | Agenda for Hearing on 1/11/2022 (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 01/10/2022) |
| 01/10/2022 | 🔵 1049<br><br>(3 pgs) | Objection *Purchasers' Joinder To Debtors' Opposition to St. Croix Energy, LLLP's Emergency Motion For A Stay Pending Appeal Of The Orders Reopening The Auction And Approving The Sale Of Substantially All Of The Debtors Assets And Other Related Relief [Docket No. 1044]* (related document(s):1018 Emergency Motion). Filed by Port Hamilton Refining and Transportation, LLLP, West Indies Petroleum Ltd (Bast, Jeffrey) (Entered: 01/10/2022) |
| 01/10/2022 | 🔵 1050<br><br>(678 pgs; 13 docs) | Exhibit List, Witness List (Filed By St. Croix Energy, LLLP ). (Attachments: # 1 Exhibit 1 - Auction - November 18, 2021 (Part 1) # 2 Exhibit 2 - Auction - November 18, 2021 (Part 2) # 3 Exhibit 3 - Transcript of Hearing, December 6, 2021 # 4 Exhibit 4 - Auction Transcript - December 17, 2021 # 5 Exhibit 5 - Auction Transcript - December 18, 2021 # 6 Exhibit 6 - Declaration of Mark Shapiro in Support of Motion to Reopen Auction # 7 Exhibit 7 - Declaration of Michael O'Hara in Support of Motion to Reopen Auction # 8 Exhibit 8 - APA dated December 5, 2021 # 9 Exhibit 9 - WIPL Articles of Incorporation # 10 Exhibit 10 - West Indies Limited Articles Notice of General Meeting (Redacted) # 11 Exhibit 11 - West Indies Petroleum Limited Financial Statements [Redacted] # 12 Exhibit 12 - Transcript of Hearing, December 21, 2021) (Galardi, Gregg) (Entered: 01/10/2022) |
| 01/11/2022 | 🔵 1051<br><br>(3 pgs) | Amended Agenda for Hearing on 1/11/2022 (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 01/11/2022) |
| | 🔵 1052<br><br>(6 pgs) | Objection */Limited Objection and Reservation of Rights of the Government of the U.S. Virgin Islands with Respect to the Debtors Notice of Designation of Assumption and Assignment of Executory Contract*. Filed by The |

| | | |
|---|---|---|
| 01/11/2022 | | Government of the United States Virgin Islands (McGuire, Daniel) (Entered: 01/11/2022) |
| 01/11/2022 | 🌐 1053<br><br>(22 pgs; 2 docs) | Statement *Fifth Monthly Fee Statement of B. Riley Advisory Services for Services Rendered and Reimbursement of Expenses Incurred from November 1, 2021 through November 30, 2021* (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit A - Time and Expense Records) (Green, Elizabeth) (Entered: 01/11/2022) |
| 01/11/2022 | 🌐 1054<br><br>(1 pg) | 🔊 PDF with attached Audio File. Court Date & Time [ 1/11/2022 11:57:34 AM ]. File Size [ 51547 KB ]. Run Time [ 01:47:23 ]. (admin). (Entered: 01/11/2022) |
| 01/11/2022 | 🌐 1055<br><br>(3 pgs) | Courtroom Minutes. Time Hearing Held: 12:00 PM. Appearances: SEE ATTACHED. (Related document (s):1018 Emergency Motion, 1039 Statement) Witness: Mark Shapiro. The Court denied the stay on the merits. Bond amount stated on the record. Parties to submit a proposed order as stated on the record. The Court and parties addressed the distributions of sale proceeds 1039. (VrianaPortillo) (Entered: 01/11/2022) |
| 01/11/2022 | 🌐 1056<br><br>(8 pgs) | Supplement to Stipulation and Agreed Order Concerning Bar Date Signed on 1/11/2022 (Related document(s):742 Stipulation, 769 Generic Order) (VrianaPortillo) (Entered: 01/11/2022) |
| 01/11/2022 | 🌐 1057<br><br>(3 pgs) | Order Authorizing J. Aron & Company LLC to File Under Seal: (A) The Response to the Terminal Objection and the Joinder, and (B) Exhibits to the Witness and Exhibit List Filed in Relation to the August 6, 2021 Hearing (Related Doc # 319) Signed on 1/11/2022. (VrianaPortillo) (Entered: 01/11/2022) |
| 01/11/2022 | 🌐 1058<br><br>(2 pgs) | Order Granting Debtors' Emergency Motion for Entry of Order Authorizing them to File Certain Exhibits Under Seal for Hearing on August 6, 2021 at 10:30 A.M. CST (Related Doc # 324) Signed on 1/11/2022. (VrianaPortillo) (Entered: 01/11/2022) |
| 01/12/2022 | 🌐 1059<br><br>(3 pgs) | Proposed Order Submission After Hearing (Filed By Limetree Bay Services, LLC ).(Related document(s):1018 Emergency Motion) (Green, Elizabeth) (Entered: 01/12/2022) |
| | 🌐 1060<br><br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Limetree Bay Services, LLC, et al./Elizabeth A. Green. This is to order a transcript of Hearing on January 11, 2022 before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Limetree Bay |

| | | |
|---|---|---|
| 01/12/2022 | | Services, LLC ). (Green, Elizabeth)Electronically forwarded to Judicial Transcribers of Texas. Estimated completion date:01/13/2022. Modified on 1/12/2022 (ShannonHolden). (Entered: 01/12/2022) |
| 01/13/2022 | 🌐 1061<br><br>(7 pgs; 2 docs) | Proposed Order Submission After Hearing (Filed By Limetree Bay Services, LLC ).(Related document(s):1018 Emergency Motion) (Attachments: # 1 Redlined Version) (Green, Elizabeth) (Entered: 01/13/2022) |
| 01/13/2022 | 🌐 1062<br><br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by St. Croix Energy, LLLP. This is to order a transcript of November 15, 2021 before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By St. Croix Energy, LLLP ). (Galardi, Gregg) Electronically forwarded to Judicial Transcribers of Texas 1/13/2022. Estimated Transcript Completion Date: 1/14/2022. Modified on 1/13/2022 (JacquelineMata). (Entered: 01/13/2022) |
| 01/13/2022 | 🌐 1063<br><br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Marty L. Brimmage, Jr.. This is to order a transcript of the January 11, 2022 Hearing before Judge David R. Jones. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Ad Hoc Term Lender Group ). (Brimmage, Marty) Copy request electronically forwarded to Judicial Transcribers of Texas 1/13/2022. Estimated Transcript Completion Date: 1/14/2022. Modified on 1/13/2022 (JacquelineMata). (Entered: 01/13/2022) |
| 01/13/2022 | 🌐 1064<br><br>(3 pgs) | Declaration re: *Supplemental Declaration of Elizabeth A. Green* (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 01/13/2022) |
| 01/13/2022 | 🌐 1065<br><br>(7 pgs) | Statement of Issues on Appeal (related document(s):1022 Clerk's Notice of Filing of an Appeal)., Appellant Designation of Contents For Inclusion in Record On Appeal (related document(s):1022 Clerk's Notice of Filing of an Appeal). (Galardi, Gregg) (Entered: 01/13/2022) |
| 01/13/2022 | 🌐 1066<br><br>(3 pgs) | Order (Related Doc # 1018) Signed on 1/13/2022. (aalo) (Entered: 01/13/2022) |
| 01/13/2022 | 🌐 1067<br><br>(6 pgs) | Order (Related Doc # 701) Signed on 1/13/2022. (aalo) (Entered: 01/13/2022) |
| 01/13/2022 | 🌐 1068<br><br>(8 pgs) | Statement of Issues on Appeal (related document(s):1007 Notice of Appeal)., Appellant Designation of Contents For Inclusion in Record On Appeal (related document(s):1007 Notice of Appeal). (Hughes, Patrick) (Entered: 01/13/2022) |

| | | |
|---|---|---|
| 01/13/2022 | 🌐 1069<br><br>(11 pgs) | BNC Certificate of Mailing. (Related document(s):1056 Generic Order) No. of Notices: 40. Notice Date 01/13/2022. (Admin.) (Entered: 01/13/2022) |
| 01/13/2022 | 🌐 1070<br><br>(4 pgs) | BNC Certificate of Mailing. (Related document(s):1057 Order on Motion to Seal) No. of Notices: 6. Notice Date 01/13/2022. (Admin.) (Entered: 01/13/2022) |
| 01/13/2022 | 🌐 1071<br><br>(3 pgs) | BNC Certificate of Mailing. (Related document(s):1058 Order on Motion to Seal) No. of Notices: 6. Notice Date 01/13/2022. (Admin.) (Entered: 01/13/2022) |
| 01/14/2022 | 🔒 1072<br><br>(78 pgs) | Transcript RE: Motion Hearing (Via Zoom) held on January 11, 2022 before Judge David R. Jones. Transcript is available for viewing in the Clerk's Office. Filed by Transcript access will be restricted through 04/14/2022. (mhen) (Entered: 01/14/2022) |
| 01/14/2022 | 🔒 1073<br><br>(24 pgs) | Transcript RE: Motion Hearing (Via Zoom) held on November 15, 2021 before Judge David R. Jones. Transcript is available for viewing in the Clerk's Office. Filed by Transcript access will be restricted through 04/14/2022. (mhen) (Entered: 01/14/2022) |
| 01/16/2022 | 🌐 1074<br><br>(6 pgs) | BNC Certificate of Mailing. (Related document(s):1066 Order on Emergency Motion) No. of Notices: 40. Notice Date 01/16/2022. (Admin.) (Entered: 01/16/2022) |
| 01/16/2022 | 🌐 1075<br><br>(9 pgs) | BNC Certificate of Mailing. (Related document(s):1067 Order on Motion for Sale of Property under Section 363(b)) No. of Notices: 40. Notice Date 01/16/2022. (Admin.) (Entered: 01/16/2022) |
| 01/17/2022 | 🌐 1076<br><br>(134 pgs; 2 docs) | Statement *Fifth (Amended) Fee Statement of Baker & Hostetler LLP for Services Rendered and Reimbursement of Expenses Incurred from November 1, 2021 through November 30, 2021* (Filed By Limetree Bay Services, LLC ). (Related document(s):992 Notice) (Attachments: # 1 Exhibit A - Time and Expense Records) (Green, Elizabeth) (Entered: 01/17/2022) |
| 01/18/2022 | 🌐 1077<br><br>(1 pg) | Notice of Filing of Official Transcript as to 1072 Transcript, 1073 Transcript. Parties notified (Related document(s):1072 Transcript, 1073 Transcript) (dhan) (Entered: 01/18/2022) |
| | 🌐 1078<br><br>(29 pgs) | Notice */Monthly Fee Statement Of Pachulski Stang Ziehl & Jones LLP For Compensation For Services And Reimbursement Of Expenses As Counsel To The Official Committee Of Unsecured Creditors For The Period From December 1, 2021 Through December 31, 2021.* Filed by Official Committee of Unsecured Creditors (Warner, |

| 01/18/2022 | | Michael) (Entered: 01/18/2022) |
|---|---|---|
| 01/18/2022 | 🔵 1079<br><br>(15 pgs) | Notice /*Fifth Monthly Fee Statement Of Riveron RTS, LLC For Payment Of Interim Compensation And Reimbursement Of Expenses For The Period December 1, 2021 Through December 31, 2021.* Filed by Official Committee of Unsecured Creditors (Warner, Michael) (Entered: 01/18/2022) |
| 01/18/2022 | 🔵 1080<br><br>(1 pg) | Withdrawal of Claim: 6 (Lawrence, Rhea) (Entered: 01/18/2022) |
| 01/18/2022 | 🔵 1081<br><br>(1 pg) | Withdrawal of Claim: 7 (Lawrence, Rhea) (Entered: 01/18/2022) |
| 01/18/2022 | 🔵 1082<br><br>(2 pgs) | Notice of Appearance and Request for Notice Filed by Joseph Lehnert Filed by on behalf of Chirstiansted Equipment Ltd, F&M Mafco Inc (Lehnert, Joseph) (Entered: 01/18/2022) |
| 01/19/2022 | 🔵 1083<br><br>(2 pgs) | Notice *of Hearing on Emergency Motion for Relief From automatic Stay.* Filed by Intertek USA Inc. (Alexander, Vincent) (Entered: 01/19/2022) |
| 01/19/2022 | 🔵 1084<br><br>(9 pgs) | Opposition Response *Debtors' Opposition to Christiansted Equipment Ltd.'s Application for Allowance and Payment of Administrative Expense Claim* (related document(s):945 Motion to Allow Claims). Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 01/19/2022) |
| 01/20/2022 | 🔵 1085<br><br>(6 pgs) | Stipulation By Limetree Bay Services, LLC and West Indies Petroleum Limited and Port Hamilton Refining and Transportation Company, LLLP and the United States Virgin Islands. Does this document include an agreed order or otherwise request that the judge sign a document? Yes. (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 01/20/2022) |
| 01/20/2022 | 🔵 1086<br><br>(8 pgs) | Addendum to Record on Appeal (related document(s):1021 Statement of Issues on Appeal, Appellant Designation)., Appellee Designation of Contents for Inclusion in Record of Appeal (related document(s):1021 Statement of Issues on Appeal, Appellant Designation). (Green, Elizabeth) (Entered: 01/20/2022) |
| 01/20/2022 | 🔵 1087<br><br>(4 pgs) | BNC Certificate of Mailing. (Related document(s):1077 Notice of Filing of Official Transcript (Form)) No. of Notices: 40. Notice Date 01/20/2022. (Admin.) (Entered: 01/20/2022) |

| | | |
|---|---|---|
| 01/21/2022 | 🌐 1088<br><br>(126 pgs; 2 docs) | Statement *Sixth Monthly Fee Statement of Baker & Hostetler LLP for Services Rendered and Reimbursement of Expenses Incurred from December 1, 2021 through December 31, 2021* (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit A - Time and Expense Records) (Green, Elizabeth) (Entered: 01/21/2022) |
| 01/21/2022 | 🌐 1089<br><br>(65 pgs) | Application for Compensation */Second Interim Compensation And Reimbursement Of Expenses Of Pachulski Stang Ziehl & Jones, LLP For The Period Of October 1, 2021 Through December 31, 2021* for Official Committee of Unsecured Creditors, Creditor Comm. Aty, Period: 10/1/2021 to 12/31/2021, Fee: $490,756.00, Expenses: $874.10. Objections/Request for Hearing Due in 21 days. Filed by Creditor Committee Official Committee of Unsecured Creditors (Warner, Michael) (Entered: 01/21/2022) |
| 01/21/2022 | 🌐 1090<br><br>(38 pgs) | Application for Compensation */Second Interim Application Of Riveron RTS, LLC For Allowance Of Compensation For Services Rendered And Reimbursement Of Expenses Incurred As Financial Advisor To The Official Committee Of Unsecured Creditors For The Period Of October 1, 2021 Through December 31, 2021* for Official Committee of Unsecured Creditors, Financial Advisor, Period: 10/1/2021 to 12/31/2021, Fee: $399,668.50, Expenses: $5,891.25. Objections/Request for Hearing Due in 21 days. Filed by Creditor Committee Official Committee of Unsecured Creditors (Warner, Michael) (Entered: 01/21/2022) |
| 01/21/2022 | 🌐 1091<br><br>(32 pgs; 8 docs) | Application for Compensation *Second Interim Fee Application of Baker & Hostetler LLP* for Elizabeth A Green, Debtor's Attorney, Period: 10/1/2021 to 12/31/2021, Fee: $2,376,412.50, Expenses: $21,648.78. Objections/Request for Hearing Due in 21 days. Filed by Attorney Elizabeth A Green (Attachments: # 1 Exhibit A - Customary and Comparable Compensation Disclosures # 2 Exhibit B - Summary of Timekeepers # 3 Exhibit C-1 - Budget # 4 Exhibit C-2 - Staffing Plan # 5 Exhibit D-1 - Summary of Compensation Requested by Project Category # 6 Exhibit D-2 - Summary of Expense Reimbursement Requested by Category # 7 Exhibit E - Proposed Order) (Green, Elizabeth) (Entered: 01/21/2022) |
| 01/21/2022 | 🌐 1092<br><br>(8 pgs; 2 docs) | Statement *Fourth Monthly Fee Statement of Hughes Arrell Kinchen LLP for Services Rendered and Reimbursement of Expenses Incurred from December 1, 2021 through December 31, 2021* (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit A - Time and Expense Records) (Green, Elizabeth) (Entered: 01/21/2022) |
| | 🌐 1093 | Statement *Fifth Monthly Fee Statement of Beckstedt & Kuczynski LLP for Services Rendered from December 1,* |

| | | |
|---|---|---|
| 01/21/2022 | (8 pgs; 2 docs) | *2021 through December 31, 2021* (Filed By Limetree Services, LLC ). (Attachments: # 1 Exhibit A - Time and Expense Records) (Green, Elizabeth) (Entered: 01/21/2022) |
| 01/21/2022 | 1094<br><br>(18 pgs; 4 docs) | Interim Application for Compensation *Second Interim Fee Application of Hughes Arrell Kinchen LLP as Special Counsel for the Debtors for the Period October 1, 2021 through December 31, 2021* for Limetree Bay Services, LLC, Special Counsel, Period: 10/1/2021 to 12/31/2021, Fee: $61,100.00, Expenses: $6,167.86. Objections/Request for Hearing Due in 21 days. Filed by Attorney Elizabeth A Green (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Declaration of John B. Kinchen # 3 Exhibit C1-C4 - Summary of Compensation by Professional and Expenses) (Green, Elizabeth) (Entered: 01/21/2022) |
| 01/21/2022 | 1095<br><br>(20 pgs; 4 docs) | Interim Application for Compensation *Second Interim Fee Application of Beckstedt & Kuczynski LLP, as Special Counsel for the Debtors, for the Period October 1, 2021 through December 31, 2021* for Limetree Bay Services, LLC, Special Counsel, Period: 10/1/2021 to 12/31/2021, Fee: $3,015.00, Expenses: $0.00. Objections/Request for Hearing Due in 21 days. Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Declaration of Carl A. Beckstedt, III # 3 Exhibits C1-C4 - Summary of Compensation by Professional and Expenses) (Green, Elizabeth) (Entered: 01/21/2022) |
| 01/21/2022 | 1096<br><br>(13 pgs; 2 docs) | Statement *Third Monthly Fee Statement of The Claro Group, LLC for Services Rendered and Reimbursement of Expenses Incurred from December 1, 2021 through December 31, 2021* (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit A - Fee/Expense Detail) (Green, Elizabeth) (Entered: 01/21/2022) |
| 01/21/2022 | 1097<br><br>(28 pgs; 5 docs) | Interim Application for Compensation *Second Interim Fee Application of The Claro Group, LLC, as Insurance Consultant for the Debtors, for the Period October 1, 2021 through December 31, 2021* for Limetree Bay Services, LLC, Other Professional, Period: 10/1/2021 to 12/31/2021, Fee: $125,331.50, Expenses: $375.00. Objections/Request for Hearing Due in 21 days. Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Declaration of Ronald Van Epps # 3 Exhibits C-1-C-2 - Summary of Compensation by Professional and Expenses # 4 Exhibit D - Fee Detail) (Green, Elizabeth) (Entered: 01/21/2022) |
| 01/21/2022 | 1098<br><br>(26 pgs; 7 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 11/30/2021, $0 disbursed (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Statement of Cash Receipts and Disbursements # 3 Attachment 3 - Unaudited |

| | | |
|---|---|---|
| 01/24/2022 | | Financial Statement # 4 Attachment 4 - Schedule of Bank Accounts # 5 Attachment 5 - Bank Statements & Reconciliations # 6 Attachment 6 - Schedule of Insurance) (Green, Elizabeth) (Entered: 01/24/2022) |
| 01/24/2022 | ☉ 1099 <br><br> (15 pgs; 3 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 11/30/2021, $0 disbursed (Filed By Limetree Bay Refining Holdings, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Schedule of Insurance) (Green, Elizabeth) (Entered: 01/24/2022) |
| 01/24/2022 | ☉ 1100 <br><br> (22 pgs; 6 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 11/30/2021, $0 disbursed (Filed By Limetree Bay Refining Holdings II, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Statement of Cash Receipts and Disbursements # 3 Attachment 3 - Unaudited Financial Statement # 4 Attachment 4 - Bank Statement & Reconciliation # 5 Attachment 5 - Schedule of Insurance) (Green, Elizabeth) (Entered: 01/24/2022) |
| 01/24/2022 | ☉ 1101 <br><br> (54 pgs; 7 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 11/30/2021, $7019645 disbursed (Filed By Limetree Bay Refining, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Statement of Cash Receipts and Disbursements # 3 Attachment 3 - Unaudited Financial Statement # 4 Attachment 4 - Schedule of Bank Accounts # 5 Attachment 5 - Bank Statements & Reconciliations # 6 Attachment 6 - Schedule of Insurance) (Green, Elizabeth) (Entered: 01/24/2022) |
| 01/24/2022 | ☉ 1102 <br><br> (26 pgs; 7 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 11/30/2021, $129954 disbursed (Filed By Limetree Bay Refining Operating, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Statement of Cash Receipts and Disbursements # 3 Attachment 3 - Unaudited Financial Statement # 4 Attachment 4 - Schedule of Bank Accounts # 5 Attachment 5 - Bank Statements & Reconciliations # 6 Attachment 6 - Schedule of Insurance) (Green, Elizabeth) (Entered: 01/24/2022) |
| 01/24/2022 | ☉ 1103 <br><br> (45 pgs; 7 docs) | Debtor-In-Possession Monthly Operating Report for Filing Period ending 11/30/2021, $89 disbursed (Filed By Limetree Bay Refining Marketing, LLC ). (Attachments: # 1 Attachment 1 - Notes to MOR # 2 Attachment 2 - Statement of Cash Receipts and Disbursements # 3 Attachment 3 - Unaudited Financial Statement # 4 Attachment 4 - Schedule of Bank Accounts # 5 Attachment 5 - Bank Statements & Reconciliations # 6 Attachment 6 - Schedule of Insurance) (Green, Elizabeth) (Entered: 01/24/2022) |
| | ☉ 1104 | Notice *Of Increase Of The Hourly Rates Of Professionals*. (Related document(s):537 Order on Application to Employ) |

| 01/24/2022 | (3 pgs) | Filed by Official Committee of Unsecured Creditors (Warner, Michael) (Entered: 01/24/2022) |
|---|---|---|
| 01/24/2022 | 🔘 1105 (10 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):175 Notice, 924 Schedule E/F, 925 Schedule E/F) (Ordaz, Steven) (Entered: 01/24/2022) |
| 01/24/2022 | 🔘 1106 (11 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):1000 Stipulation, Agreed Order and Certificate of Counsel) (Ordaz, Steven) (Entered: 01/24/2022) |
| 01/24/2022 | 🔘 1107 (12 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):1037 Exhibit List, Witness List) (Ordaz, Steven) (Entered: 01/24/2022) |
| 01/24/2022 | 🔘 1108 (12 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):1040 Motion to Extend Exclusivity Period, 1048 Agenda) (Ordaz, Steven) (Entered: 01/24/2022) |
| 01/24/2022 | 🔘 1109 (10 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):1051 Agenda) (Ordaz, Steven) (Entered: 01/24/2022) |
| 01/24/2022 | 🔘 1110 (12 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):1066 Order on Emergency Motion, 1067 Order on Motion for Sale of Property under Section 363(b)) (Ordaz, Steven) (Entered: 01/24/2022) |
| 01/24/2022 | 🔘 1111 (12 pgs) | Certificate *of Service* (Filed By BMC Group, Inc. ).(Related document(s):1084 Response) (Ordaz, Steven) (Entered: 01/24/2022) |
| 01/25/2022 | 🔘 1112 (2 pgs) | Notice *of Closing of Sale*. (Related document(s):977 Order on Motion for Sale of Property under Section 363(b)) Filed by Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 01/25/2022) |
| 01/25/2022 | 🔘 | Certificate of Email Notice. Contacted Vincent Alexander. Movant to notice all interested parties and file a certificate of service with the court (Related document(s):868 Motion for Relief From Stay **Hearing scheduled for 2/1/2022 at 10:00 AM by telephone and video conference** (aalo) (Entered: 01/25/2022) |
| 01/25/2022 | 🔘 1113 (2 pgs) | Notice *of Withdrawal of Appearance and Request for Removal from Service Lists*. Filed by J. Aron & Company LLC (Chiu, Kevin) (Entered: 01/25/2022) |
| 01/25/2022 | 🔘 1114 (2 pgs) | Corrected Notice *of Withdrawal of Appearance and Request for Removal from Service Lists*. Filed by J. Aron & Company LLC (Chiu, Kevin) (Entered: 01/25/2022) |

| | | |
|---|---|---|
| 01/25/2022 | 🔘 1115<br><br>(6 pgs) | Stipulation By Limetree Bay Services, LLC and West Indies Petroleum Limited and Port Hamilton Refining and Transportation Company, LLLP and the United States Virgin Islands. Does this document include an agreed order or otherwise request that the judge sign a document? Yes. (Filed By Limetree Bay Services, LLC ).(Related document(s):1085 Stipulation) (Green, Elizabeth) (Entered: 01/25/2022) |
| 01/25/2022 | 🔘 1116<br><br>(3 pgs) | Certificate of Service (Filed By BMC Group, Inc. ).(Related document(s):1078 Notice, 1079 Notice) (Ordaz, Steven) (Entered: 01/25/2022) |
| 01/25/2022 | 🔘 1117<br><br>(9 pgs) | Certificate of Service (Filed By BMC Group, Inc. ).(Related document(s):1089 Application for Compensation, 1090 Application for Compensation) (Ordaz, Steven) (Entered: 01/26/2022) |
| 01/26/2022 | 🔘 1118<br><br>(12 pgs) | Certificate of Service (Filed By BMC Group, Inc. ).(Related document(s):1091 Application for Compensation, 1094 Application for Compensation, 1095 Application for Compensation, 1097 Application for Compensation) (Ordaz, Steven) (Entered: 01/26/2022) |
| 01/26/2022 | 🔘 1119<br><br>(3 pgs) | Declaration re: *Supplemental Declaration of John B. Kinchen* (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 01/26/2022) |
| 01/26/2022 | 🔘 1120<br><br>(2 pgs) | Certificate of Service (Filed By Intertek USA Inc. ). (Alexander, Vincent) (Entered: 01/26/2022) |
| 01/27/2022 | 🔘 1121<br><br>(18 pgs; 2 docs) | Statement *Sixth Monthly Fee Statement of B. Riley Advisory Services for Services Rendered and Reimbursement of Expenses Incurred from December 1, 2021 through December 31, 2021* (Filed By Limetree Bay Services, LLC ). (Attachments: # 1 Exhibit A - Time and Expense Records) (Green, Elizabeth) (Entered: 01/27/2022) |
| 01/27/2022 | 🔘 1122<br><br>(73 pgs; 5 docs) | Application for Compensation *Second Interim Fee Application of GlassRatner Advisory & Capital LLC d/b/a B. Riley Advisory Services, as Chief Restructuring Officer for the Debtors, from October 1, 2021 through December 31, 2021* for Limetree Bay Services, LLC, Other Professional, Period: 10/1/2021 to 12/31/2021, Fee: $791,758.50, Expenses: $9,749.60. Objections/Request for Hearing Due in 21 days. Filed by Debtor Limetree Bay Services, LLC (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Shapiro Declaration # 3 Exhibit C1-C-3 - Summary of Compensation by Professional and Expenses # 4 Exhibit D - Time Records) (Green, Elizabeth) (Entered: 01/27/2022) |
| | 🔘 1123 | Application for Compensation *Second Interim and Final Fee* |

| | | |
|---|---|---|
| 01/27/2022 | (54 pgs; 4 docs) | *Application of Jefferies LLC, as Investment Banker to the Debtors, for Allowance of Compensation and Reimbursement of Expenses for the Period from July 6, 2021 through January 21, 2022* for Limetree Bay Services, LLC, Other Professional, Period: 7/6/2021 to 1/21/2022, Fee: $1,766,495.56, Expenses: $52,588.83. Objections/Request for Hearing Due in 21 days. (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Time Records # 3 Exhibit C - Expense Detail) (Green, Elizabeth) (Entered: 01/27/2022) |
| 01/27/2022 | 1124 (3 pgs) | Exhibit List, Witness List (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 01/27/2022) |
| 01/27/2022 | 1125 (11 pgs) | Addendum to Record on Appeal (related document(s):1065 Statement of Issues on Appeal, Appellant Designation)., Appellee Designation of Contents for Inclusion in Record of Appeal (related document(s):1065 Statement of Issues on Appeal, Appellant Designation). (Green, Elizabeth) (Entered: 01/27/2022) |
| 01/27/2022 | 1126 (9 pgs) | Addendum to Record on Appeal (related document(s):1068 Statement of Issues on Appeal, Appellant Designation)., Appellee Designation of Contents for Inclusion in Record of Appeal (related document(s):1068 Statement of Issues on Appeal, Appellant Designation). (Green, Elizabeth) (Entered: 01/27/2022) |
| 01/27/2022 | 1127 (1 pg) | Motion to Appear pro hac vice *Scott E. Prince*. Filed by Debtor Limetree Bay Services, LLC (Green, Elizabeth) (Entered: 01/27/2022) |
| 01/28/2022 | 1128 (3 pgs) | Witness List, Exhibit List (Filed By Intertek USA Inc ). (Alexander, Vincent) (Entered: 01/28/2022) |
| 01/31/2022 | 1129 (3 pgs) | Agenda for Hearing on 2/1/2022 (Filed By Limetree Bay Services, LLC ). (Green, Elizabeth) (Entered: 01/31/2022) |

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF TEXAS

Case number *(if known)* _____   Chapter __11__

☐ Check if this an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

04/20

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | Debtor's name | **Limetree Bay Services, LLC** |
| 2. | All other names debtor used in the last 8 years<br><br>Include any assumed names, trade names and *doing business as* names | |
| 3. | Debtor's federal Employer Identification Number (EIN) | **84-3141866** |

4. Debtor's address

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| **11100 Brittmoore Park Drive**<br>**Houston, TX 77041** | |
| Number, Street, City, State & ZIP Code | P.O. Box, Number, Street, City, State & ZIP Code |
| **Harris** | Location of principal assets, if different from principal place of business |
| County | |
| | Number, Street, City, State & ZIP Code |

| | | |
|---|---|---|
| 5. | Debtor's website (URL) | **limetreebayenergy.com** |

6. Type of debtor

■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

Debtor **Limetree Bay Services, LLC**
Name

Case number (*if known*) _____

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor.
See http://www.uscourts.gov/four-digit-national-association-naics-codes.

__3241__

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

■ Chapter 11. *Check **all** that apply:*

　☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

　☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

　☐ A plan is being filed with this petition.

　☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

　☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

　☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**
If more than 2 cases, attach a separate list.

■ No.

☐ Yes.

District _____ When _____ Case number _____

District _____ When _____ Case number _____

Debtor    **Limetree Bay Services, LLC**                                    Case number (*if known*) _____
          Name

**10.  Are any bankruptcy cases**        ☐ No
**pending or being filed by a**          ■ Yes.
**business partner or an**
**affiliate of the debtor?**

List all cases. If more than 1,          Debtor    **See Attachment**                    Relationship _____
attach a separate list                   District  _____ When _____  Case number, if known _____

**11.  Why is the case filed in**        *Check all that apply:*
**this district?**
                                         ■   Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately
                                             preceding the date of this petition or for a longer part of such 180 days than in any other district.

                                         ☐   A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12.  Does the debtor own or**          ■ No
**have possession of any**               ☐ Yes.   Answer below for each property that needs immediate attention. Attach additional sheets if needed.
**real property or personal**
**property that needs**
**immediate attention?**                 **Why does the property need immediate attention?** (*Check all that apply.*)

                                         ☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
                                             What is the hazard? _____

                                         ☐ It needs to be physically secured or protected from the weather.

                                         ☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example,
                                             livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

                                         ☐ Other _____
                                         **Where is the property?**  _____
                                                                     Number, Street, City, State & ZIP Code

                                         **Is the property insured?**
                                         ☐ No
                                         ☐ Yes.   Insurance agency  _____
                                                  Contact name      _____
                                                  Phone             _____

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**■■■  Statistical and administrative information**

**13.  Debtor's estimation of**     .    *Check one:*
**available funds**
                                         ■  Funds will be available for distribution to unsecured creditors.

                                         ☐  After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14.  Estimated number of**        ■ 1-49              ☐ 1,000-5,000          ☐ 25,001-50,000
**creditors**                       ☐ 50-99             ☐ 5001-10,000          ☐ 50,001-100,000
                                    ☐ 100-199           ☐ 10,001-25,000        ☐ More than100,000
                                    ☐ 200-999

**15.  Estimated Assets**           ☐ $0 - $50,000              ■ $1,000,001 - $10 million      ☐ $500,000,001 - $1 billion
                                    ☐ $50,001 - $100,000        ☐ $10,000,001 - $50  million    ☐ $1,000,000,001 - $10 billion
                                    ☐ $100,001 - $500,000       ☐ $50,000,001 - $100 million    ☐ $10,000,000,001 - $50 billion
                                    ☐ $500,001 - $1 million     ☐ $100,000,001 - $500 million   ☐ More than $50 billion

**16.  Estimated liabilities**      ■ $0 - $50,000              ☐ $1,000,001 - $10 million      ☐ $500,000,001 - $1 billion

Official Form 201               **Voluntary Petition for Non-Individuals Filing for Bankruptcy**                  page 3

Debtor    **Limetree Bay Services, LLC**                                    Case number (*if known*)
          Name

☐ $50,001 - $100,000            ☐ $10,000,001 - $50  million      ☐ $1,000,000,001 - $10 billion
☐ $100,001 - $500,000           ☐ $50,000,001 - $100 million      ☐ $10,000,000,001 - $50 billion
☐ $500,001 - $1 million         ☐ $100,000,001 - $500 million     ☐ More than $50 billion

| Debtor | Limetree Bay Services, LLC | | Case number (*if known*) | |
|---|---|---|---|---|
| | Name | | | |

## Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **July 12, 2021**
                MM / DD / YYYY

**X** **/s/ Mark Shapiro**                                     **Mark Shapiro**
Signature of authorized representative of debtor              Printed name

Title    **Chief Restructuring Officer**

**18. Signature of attorney**

**X** **/s/ Elizabeth A. Green - So. Dist. Fed ID 903144**        Date **July 12, 2021**
Signature of attorney for debtor                                       MM / DD / YYYY

**Elizabeth A. Green - So. Dist. Fed ID 903144**
Printed name

**Baker & Hostetler LLP**
Firm name

**200 S. Orange Avenue**
**Suite 2300**
**Orlando, FL 32801**
Number, Street, City, State & ZIP Code

Contact phone    **407-649-4000**        Email address   **egreen@bakerlaw.com**

**#903144 TX**
Bar number and State

Debtor    **Limetree Bay Services, LLC**
_____    Case number (*if known*) _____
Name

---

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF TEXAS
_____

Case number (*if known*) _____    Chapter    **11**

☐  Check if this an
     amended filing

---

## FORM 201. VOLUNTARY PETITION

### Pending Bankruptcy Cases Attachment

| | | |
|---|---|---|
| Debtor    **Limetree Bay Refining Holdings II, LLC** | Relationship to you | **Affiliate** |
| District    **Southern District of Texas**    When | Case number, if known | |
| Debtor    **Limetree Bay Refining Holdings, LLC** | Relationship to you | **Affiliate** |
| District    **Southern District of Texas**    When | Case number, if known | |
| Debtor    **Limetree Bay Refining Marketing, LLC** | Relationship to you | **Affiliate** |
| District    **Southern District of Texas**    When | Case number, if known | |
| Debtor    **Limetree Bay Refining Operating, LLC** | Relationship to you | **Affiliate** |
| District    **Southern District of Texas**    When | Case number, if known | |
| Debtor    **Limetree Bay Refining, LLC** | Relationship to you | **Affiliate** |
| District    **Southern District of Texas**    When | Case number, if known | |

# United States Bankruptcy Court
## Southern District of Texas

In re   **Limetree Bay Services, LLC**

Debtor(s)

Case No.

Chapter   **11**

## LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with rule 1007(a)(3) for filing in this Chapter 11 Case

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|
| **Limetree Bay Energy, LLC** | | | **100% ownership interest** |

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the **Chief Restructuring Officer** of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing List of Equity Security Holders and that it is true and correct to the best of my information and belief.

Date   **July 12, 2021**

Signature   **/s/ Mark Shapiro**

**Mark Shapiro**

*Penalty for making a false statement of concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

# United States Bankruptcy Court
## Southern District of Texas

In re   <u>Limetree Bay Services, LLC</u>                             Case No.

                                          Debtor(s)          Chapter      **11**

## CORPORATE OWNERSHIP STATEMENT (RULE 7007.1)

Pursuant to Federal Rule of Bankruptcy Procedure 7007.1 and to enable the Judges to evaluate possible disqualification or recusal, the undersigned counsel for   **Limetree Bay Services, LLC**   in the above captioned action, certifies that the following is a (are) corporation(s), other than the debtor or a governmental unit, that directly or indirectly own(s) 10% or more of any class of the corporation's(s') equity interests, or states that there are no entities to report under FRBP 7007.1:

**Limetree Bay Energy, LLC**

☐ None [*Check if applicable*]

<u>**July 12, 2021**</u>                          **/s/ Elizabeth A. Green - So. Dist. Fed ID 903144**

Date                                     **Elizabeth A. Green - So. Dist. Fed ID 903144**

Signature of Attorney or Litigant

Counsel for   **Limetree Bay Services, LLC**

**Baker & Hostetler LLP**

**200 S. Orange Avenue**
**Suite 2300**
**Orlando, FL 32801**
**407-649-4000 Fax:407-841-0168**
**egreen@bakerlaw.com**

| Fill in this information to identify the case: | |
|---|---|
| Debtor name **Limetree Bay Services, LLC., et al.** | |
| United States Bankruptcy Court for the: **SOUTHERN DISTRICT OF TEXAS** | ☐ Check if this is an |
| Case number (if known): _____ | amended filing |

## Official Form 204

## Chapter 11 or Chapter 9 Cases: CONSOLIDATED List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

**12/15**

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31).   Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim<br>If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **Universal Plant Services, (VI), LLC 806 Seaco Court Deer Park, TX 77536** | **1-281-479-6000 remittance@universalplant.com** | **Trade Debt (Construction Lien filed 6/15/2021)** | **Disputed** | | | **$24,423,282.42** |
| **Excel Construction & Maintenance VI 8641 United Plaza Blvd. Baton Rouge, LA 70809** | **1-225-408-1300 wbyrd@excelusa.com** | **Trade Debt (Construction Lien filed 6/2021)** | **Disputed** | | | **$22,325,200.82** |
| **Elite Turnaround Specialists 225 S.16th Street LaPorte, TX 77571** | **281-867-1125 AR@eliteturnaround.com** | **Trade Debt** | | | | **$15,330,475.03** |
| **BP Oil Supply 501 Westlake Park Blvd Houston, TX 77079** | | **Trade Debt** | **Disputed** | | | **$13,367,887.38** |
| **Inserv Field Services USVI LLC 1900 N 161st East Avenue Tulsa, OK 74116** | **918-234-4150 ar@inservusa.com** | **Trade Debt (Construction Lien filed 5/12/2021)** | | | | **$12,625,547.64** |
| **National Industrial Services, LLC PO Box 1545 Kingshill, St. Croix VI 00851** | **340-277-1071 sjagrup@nisstx.com** | **Trade Debt** | | | | **$12,052,033.76** |

| Debtor | **Limetree Bay Services, Inc., et al.** | | Case number *(if known)* | |
|---|---|---|---|---|
| | Name | | | |

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **Vivot Equipment Corporation**<br>**9010 Estate Cottage**<br>**Christiansted, VI**<br>**00820** | **370-713-1100**<br>**ar@vivot.vi** | **Trade Debt (Construction Lien filed 6/21/2021)** | **Disputed** | | | **$9,692,396.67** |
| **Cust-O-Fab, LLC**<br>**8888 West 21st Street**<br>**Sand Springs, OK 74063** | **918-245-6685**<br>**mwood@custofab. com** | **Trade Debt (Construction Lien filed 6/22/2021)** | | | | **$5,253,834.87** |
| **Versa Integrity Group, Inc.**<br>**4301 Hwy 27 South**<br>**Sulphur, LA 70665** | **337-558-6071**<br>**payments@versain tegrity.com** | **Trade Debt** | **Disputed** | | | **$4,196,472.15** |
| **Altair Strickland V.I., LLC**<br>**1605 S. Battleground Road**<br>**La Porte, TX 77571** | **281-478-6200**<br>**rramirez@altairstri ckland.com** | **Trade Debt (Construction Lien filed 5/14/2021)** | **Disputed** | | | **$4,106,717.19** |
| **Christiansted Equipment Ltd.**<br>**PO Box 368**<br>**Christiansted, St Croix, VI 00820** | **tmoore@fmmafco. com** | **Trade Debt (Construction Lien filed 7/2021)** | | | | **$3,159,175.11** |
| **Dresser-Rand Company**<br>**100 E. Chemung St**<br>**Painted Post, NY 14870** | **716-375-3000**<br>**yric.scott.ext@sie mens.com** | **Trade Debt** | | | | **$3,065,097.49** |
| **Pinnacle Services, LLC**<br>**6002 Diamond Ruby**<br>**Christiansted, VI 00820** | **canderson@pinnac levi.com** | **Trade Debt** | | | | **$2,986,320.12** |
| **Savage St. Croix, LLC**<br>**Dept. 418**<br>**Salt Lake City, UT 84130** | **1-801-944-6655**<br>**accountsreceivable @savageservices.c om** | **Trade Debt** | | | | **$2,936,593.60** |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                                                Best Case Bankruptcy

| Debtor | **Limetree Bay Services, Inc., et al.** | Case number *(if known)* | |
| | Name | | |

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| V.I. Industrial Services, LLC PMB #6002 Est. Diamond Ruby Christiansted, VI 00820 | **561-267-7138** mhenry@viisllc.com | **Trade Debt (Construction Lien filed 6/21/2021)** | **Disputed** | | | $2,891,802.30 |
| Worley Pan American 5995 Rogerdale Road Houston, TX 77072 | **1-832-351-6000** dave.wyvill@worley.com | **Trade Debt (Construction Lien filed 6/24/2021)** | | | | $2,630,761.00 |
| Analytic Stress Relieving, Inc. 3118 W. Pinhook Road Lafayette, LA 70505 | **337-237-8790** sarah@analyticstress.com | **Trade Debt** | | | | $1,864,538,62 |
| Baker Hughes Oilfield Operations, Inc. PO Box 301057 Dallas, TX 75303-1057 | **281-276-5400** arcccashapplication@bakerhughes.com | **Trade Debt** | | | | $1,762,761.01 |
| Complan USA LLC 16417 Squyres Road Spring, TX 77379 | **281-957-5777** jfuhrman@complan.net | **Trade Debt (Construction Lien filed 7/7/2021)** | | | | $1,689.410.13 |
| Coral Management Group LLC 435 N. 2nd Street Lewiston, NY 14092 | **716-754-5400** mwurst@wtsonline.com | **Trade Debt** | | | | $1,634,277.00 |
| Reactor Resources LLC 3000 FM 517 W. Alvin, TX 77511 | **1-832-544-1163** accounts@reactor-resources.com | **Trade Debt** | | | | $1,544,407.79 |
| Intertek USA, Inc. 200 Westlake Park Blvd, Suite 400 Houston, TX 77079 | **1-713-543-3600** receivables@intertek.com | **Trade Debt** | | | | $1,508,767.76 |
| Dynamic Innovative Corporation 306 Williams Delight Frederiksted, VI 00840 | jsamuel@dynamicorpvi.com | **Trade Debt** | | | | $1,408,232.41 |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

Debtor   **Limetree Bay Services, Inc., et al.**

Name

Case number *(if known)* _____

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Sedgwick Claims Mgmt. Services, Inc. 1833 Centre Point Circle Suite 139 Naperville, IL 60639 | 630-245-7000 Roland.Riviere@sedgwick.com | Trade Debt | | | | $1,155,000.00 |
| Englobal U.S. Inc. 225 Portwall Street Houston, TX 77029 | 281-831-0534 rocky.medina@englobal.com | Trade Debt | | | | $1,148,092.17 |
| Flowserve US Inc. 4179 Collections Center Drive Chicago, IL 60693 | 205-657-1918 creditcentral@flowserve.com | Trade Debt | | | | $1,079,400.67 |
| Rockwell Automation Puerto Rico, Inc. Calle 1 Metro Office 6, Suite 304 Guayabo, PR 00968 | 1-787-300-6200 dbromme@ra.rockwell.com | Trade Debt | | | | $1,046,534.14 |
| Stroock & Stroock & Lavan LLP 180 Maiden Lane New York, NY 10038-4982 | 1-212-806-5400 dazrilen@stroock.com | Legal Fees | | | | $1,045,427.65 |
| Gibson, Dunn & Crutcher LLP 811 Main Street Houston, TX 77002 | 1-213-229-7333 cbilling@gibsondunn.com | Legal Fees | | | | $1,010,485.57 |
| Control Associates Caribe 475 Street C Guayabo, PR 00969-4272 | 787-783-9200 plee@control-associates.com | Trade Debt | | | | $982,846.19 |

**Fill in this information to identify the case:**

Debtor name    __Limetree Bay Services, LLC__

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF TEXAS

Case number (if known)   _____

☐ Check if this is an amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☐ *Schedule H: Codebtors* (Official Form 206H)
☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐ Amended *Schedule*
☑ *Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
☑ Other document that requires a declaration    **Corporate Ownership Statement**

I declare under penalty of perjury that the foregoing is true and correct. Executed

on   __July 12, 2021__     X __/s/ Mark Shapiro__
                       Signature of individual signing on behalf of debtor

                           **Mark Shapiro**
                           Printed name

                           **Chief Restructuring Officer**
                           Position or relationship to debtor

# ACTION BY WRITTEN CONSENT OF
# THE MEMBER AND INDEPENDENT MANAGER OF
# LIMETREE BAY SERVICES, LLC

## July 9, 2021

Limetree Bay Energy, LLC (the "Member"), being the sole Member of Limetree Bay Services, LLC, a Delaware Limited Liability Company (the "Company"), does hereby adopt the following resolutions, effective as of the first date written above, and Steven J. Pully (the "Independent Manager"), having been appointed as Independent Manager and empowered to act on behalf of the Company with respect to certain "Conflict Matters" (as defined in the Action by Written Consent dated July 4, 2021 (the "Action")), does hereby consent to the adoption of the below resolutions, effective as of the first date written above:

### Authorized Persons

**WHEREAS**, pursuant to the Action, the authority to act on behalf of the Company with respect to Conflict Matters (as defined in the Action) has been delegated to the Independent Manager.

**NOW, THEREFORE, BE IT RESOLVED**, that, for the purposes of the following resolutions, the officers of the Company and their delegates, if any, shall be "Authorized Officers" empowered to act with respect to matters that are not Conflict Matters.

**FURTHER RESOLVED**, that, for the purposes of the following resolutions, Steven J. Pully and his delegates (including any Authorized Persons to the extent determined by Mr. Pully), if any, shall be "Authorized Independent Persons" (together with the Authorized Officers, the "Authorized Persons") empowered to act with respect to Conflict Matters, and nothing herein shall derogate or limit the authority delegated to the Independent Manager by the Action.

### Chapter 11 Filing and Retention of Professionals

**WHEREAS,** the Member has considered, among other things, the financial and operational condition of the Company and the Company's business on the date hereof, the assets of the Company, the current and long-term liabilities of the Company, the liquidity situation of the Company, the strategic alternatives available to it, the effect of the foregoing on the Company's business, and the advice of management and the Company's legal advisors and the Independent Manager.

**WHEREAS**, the Company has had the opportunity to consult with the management and legal advisors of the Company and the Independent Manager and to fully consider each of the strategic alternatives available to the Company.

**NOW, THEREFORE, BE IT RESOLVED**, that, in the judgment of the Member, it is desirable and in the best interests of the Company, its creditors, and other parties in interest, that the Company shall be, and hereby is, authorized to file, or cause to be filed, a voluntary petition for relief (together with the chapter 11 cases of the Company's affiliates, the "Chapter 11 Cases")

under the provisions of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") and any other petition for relief or recognition or other order that may be desirable under applicable law in the United States.

**FURTHER RESOLVED**, that the Authorized Officers and Authorized Independent Persons, as applicable, be, and each of them hereby are, authorized and directed to execute and file on behalf of the Company all petitions, schedules, lists, and other motions, papers, or documents, and to take any and all action that they deem necessary or proper to obtain such relief, including, without limitation, any action necessary to maintain the ordinary course operation of the Company's business.

**FURTHER RESOLVED**, that the Company and each of the Authorized Officers and Authorized Independent Persons, as applicable, is hereby authorized, directed, and empowered, on behalf of the Company, to employ the law firm of Baker & Hostetler LLP as general bankruptcy counsel to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations, including filing any motions, objections, replies, applications, or pleadings; and in connection therewith, each of the Authorized Officers and Authorized Independent Persons, as applicable, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain the services of Baker & Hostetler LLP.

**FURTHER RESOLVED**, that the Company and each of the Authorized Officers and Authorized Independent Persons, as applicable, is hereby authorized, directed, and empowered, on behalf of the Company, to employ B. Riley Financial, Inc. as restructuring advisor to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations; and in connection therewith, each of the Authorized Officers and Authorized Independent Persons, as applicable, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain the services of B. Riley Financial, Inc.

**FURTHER RESOLVED**, that the Company and each of the Authorized Officers and Authorized Independent Persons, as applicable, is hereby authorized, directed, and empowered, on behalf of the Company, to employ [BMC Group, Inc.] as notice and claims agent to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations; and in connection therewith, each of the Authorized Officers and Authorized Independent Persons, as applicable, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain the services of BMC Group, Inc.

**FURTHER RESOLVED**, that each of the Authorized Officers and Authorized Independent Persons, as applicable, be, and they hereby are, authorized and directed to employ any other professionals to assist the Company in carrying out its duties under the Bankruptcy Code; and in connection therewith, each of each of the Authorized Officers and Authorized Independent Persons, as applicable, is hereby authorized and directed to execute appropriate retention

2

agreements, pay appropriate retainers and fees, and to cause to be filed an appropriate application for authority to retain the services of any other professionals as necessary.

### Debtor-in-Possession Financing

**WHEREAS**, the Company requires immediate access to additional liquidity.

**WHEREAS**, the Company, through the Independent Manager and Chief Restructuring Officer, has engaged with multiple potential lenders in the solicitation and negotiation of terms of a superpriority debtor-in-possession term loan facility (each, collectively including any related term sheets, credit agreements, security agreements, interim and final orders, and other related documents, a "Proposed DIP Credit Agreement"), which would be used to fund the operations of the Company and its affiliates that are debtors and debtors in possession in the ordinary course, fund the administration of the Chapter 11 Cases, and pay the claims of certain vendors, employees, tenants, and other stakeholders in the ordinary course of business during the Chapter 11 Cases.

**WHEREAS**, the Independent Manager has been advised of the material terms of the Proposed DIP Credit Agreements.

**NOW, THEREFORE, BE IT RESOLVED**, that the Independent Manager is authorized and empowered on behalf of the Company to finalize, execute, and deliver the Proposed DIP Credit Agreement that the Independent Manager selects as being in the best interests of the Company, its creditors, and other parties in interest (such Proposed DIP Credit Agreement, the "DIP Credit Agreement").

**FURTHER RESOLVED**, that the Company's execution and delivery of, and its performance of its obligations (including guarantees) in connection with the DIP Credit Agreement, are hereby, in all respects, authorized and approved.

**FURTHER RESOLVED**, that each of the Authorized Officers and Authorized Independent Persons, as applicable, is hereby authorized, empowered, and directed, in the name and on behalf of the Company, to take such actions as in its discretion is determined to be necessary, desirable, proper, or advisable to give effect to these resolutions and to negotiate, execute, deliver, file, perform, and cause the performance of the DIP Credit Agreement, the transactions contemplated thereby, and any and all other documents, certificates, instruments, real estate filings, recordings, security assignments, agreements, intercreditor agreements, petitions, motions, or other papers or documents to which the Company is or will be a party or any order entered into in connection with the Chapter 11 Cases, including, without limitation, any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions thereof (collectively with the DIP Credit Agreement, the "Financing Documents") necessary to consummate the transactions contemplated by the DIP Credit Agreement, including providing for adequate protection to the Company's existing secured lenders in accordance with section 363 of the Bankruptcy Code, in the form approved, with such changes therein and modifications and amendments thereto as any of the Authorized Officers or Authorized Independent Persons, as applicable, may in their sole and absolute discretion approve, which approval shall be conclusively evidenced by his or her execution thereof. Such execution by any

4839-8300-2865.1

of the Authorized Officers or Authorized Independent Persons, as applicable, is hereby authorized to be by facsimile, engraved or printed as deemed necessary and preferable.

**FURTHER RESOLVED**, that each of the Authorized Officers and Authorized Independent Persons, as applicable, be, and hereby is, authorized and directed to seek authorization to enter into the DIP Credit Agreement and to seek approval of the use of collateral pursuant to a postpetition financing order in interim and final form with such changes therein, additions, deletions, amendments, or other modifications thereto as any Authorized Officer or Authorized Independent Person, as applicable, may in their sole and absolute discretion approve.

**FURTHER RESOLVED**, that the Company, as debtor and debtor-in-possession under the Bankruptcy Code be, and hereby is, authorized and directed to incur any and all obligations and to undertake any and all related transactions on substantially the same terms as contemplated under the Financing Documents (collectively, the "Financing Transactions"), including granting liens, guarantees, and providing equity pledges to secure such obligations.

**FURTHER RESOLVED**, that each of the Authorized Officers and Authorized Independent Persons, as applicable, be, and hereby is, authorized and directed to take all such further actions, including, without limitation, to pay or approve the payment of all fees and expenses payable in connection with the Financing Transactions and all fees and expenses incurred by or on behalf of each Company in connection with the foregoing resolutions, in accordance with the terms of the Financing Documents, which shall in their reasonable business judgment be necessary, proper, or advisable to perform the Company's obligations under or in connection with the Financing Documents or any of the Financing Transactions and to fully carry out the intent of the foregoing resolutions.

**FURTHER RESOLVED**, that the Independent Manager hereby ratifies and confirms all of the acts and transactions relating to matters contemplated by the foregoing resolutions, which acts and transactions would have been authorized and approved by the foregoing resolutions except that such acts and transactions were taken prior to the adoption of such resolutions, be, and they hereby are, in all respects confirmed, approved, and ratified.

## General

**NOW, THEREFORE, BE IT RESOLVED**, that, in addition to the specific authorizations heretofore conferred upon the Authorized Persons, each of the Authorized Officers and Authorized Independent Persons, as applicable, be, and hereby is, authorized and directed to do and perform all such other acts, deeds and things and to make, negotiate, execute, deliver and file, or cause to be made, negotiated, executed, delivered and filed, all such agreements, undertakings, documents, plans, instruments, certificates, registrations, notices or statements as such Authorized Person may deem necessary or advisable to effectuate or carry out fully the purpose of the foregoing resolutions, and the taking of such actions or the execution of such documents by any such Authorized Person shall be conclusive evidence that such Authorized Person deems such action or the execution and delivery of such document to be necessary or advisable and to be conclusive evidence that the same is within the authority conferred by the resolutions herein, and that any and all actions taken heretofore and hereafter to accomplish such

purposes, all or singular, be, and they hereby are, approved, ratified and confirmed, provided that nothing herein authorizes an Authorized Officer to act on a Conflict Matter without delegation from the Independent Manager.

**FURTHER RESOLVED**, that the Member has received sufficient notice of the actions and transactions relating to the matters contemplated by the resolutions herein, as may be required by the organizational documents the Company, or hereby waive any right to have received such notice.

**FURTHER RESOLVED**, that this written consent may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together will constitute one and the same instrument, and that this written consent may be delivered via facsimile or electronic transmission with the same force and effect as if it had been delivered manually.

**FURTHER RESOLVED**, that the Member hereby ratifies and confirms all of the acts and transactions relating to matters contemplated by the foregoing resolutions, which acts and transactions would have been authorized and approved by the foregoing resolutions except that such acts and transactions were taken prior to the adoption of such resolutions, be, and they hereby are, in all respects confirmed, approved, and ratified.

*[Remainder of Page Intentionally Left Blank]*

4839-8300-2865.1

0154

*Execution Version*

**IN WITNESS WHEREOF**, the undersigned Member and Independent Manager of the Company have executed this Action by Written Consent of the Member and Independent Manager of Limetree Bay Services, LLC as of and effective on July 9, 2021.

Limetree Bay Energy, LLC

By: _____

Its: _____CEO_____

_____
Steven J. Pully, as Independent Manager

[Signature Page to Action by Written Consent]

**IN WITNESS WHEREOF**, the undersigned Member and Independent Manager of the Company have executed this Action by Written Consent of the Member and Independent Manager of Limetree Bay Services, LLC as of and effective on July 9, 2021.

Limetree Bay Energy, LLC

By: _____

Its: _____

_____

Steven J. Pully, as Independent Manager

[Signature Page to Action by Written Consent]

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC,** *et al.*,[1] | **CASE NO.: 21-32351** |
| **Debtors.** | **(Joint Administration Requested)** |

### DECLARATION OF MARK SHAPIRO IN SUPPORT OF
### CHAPTER 11 PETITIONS AND FIRST DAY MOTIONS

I, Mark Shapiro, declare as follows:

1.      I am a Senior Managing Director for GlassRatner Advisory & Capital Group LLC, d/b/a B. Riley Advisory Services ("**B. Riley**" or the "**CRO**").  On or about June 17, 2021, Limetree Bay Services,  LLC, Limetree Bay Refining Holdings, LLC, Limetree Bay Refining Holdings II, LLC, Limetree Bay Refining, LLC, Limetree Bay Refining Operating, LLC, and Limetree Bay Refining Marketing, LLC (collectively, the "**Debtors**") retained B. Riley as chief restructuring officer.  I am the principal representative of B. Riley in its capacity as CRO.

2.      I am a duly authorized representative of the Debtors for purposes of executing any and all documents in connection with the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**"), including, without limitation, the Debtors' respective chapter 11 bankruptcy petitions filed contemporaneously herewith (collectively, the "**Petitions**"), and representing the Debtors in the course of these Chapter 11 Cases and any related proceedings.  I am authorized to submit this Declaration on behalf of the Debtors.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

3.     On July 12, 2021 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Court**")—thereby commencing the Chapter 11 Cases.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4.     I submit this Declaration in support of the Debtors' Petitions and the First Day Motions (defined below).  I am familiar with the Debtors' businesses, day-to-day operations, and financial affairs.  Except as otherwise indicated, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents and records created and maintained by the Debtors in the ordinary course of business, information provided to me by employees and consultants working under my supervision with personal knowledge of the veracity of such information, and/or my opinion based on experience, knowledge, and information concerning the Debtors' operations and financial condition.  If called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

5.     Part I of this Declaration provides a basic overview of the Chapter 11 Cases.  Part II of this Declaration describes the Debtors' businesses and organizational structure.  Part III of this Declaration describes the circumstances that led to the Debtors' filing of these Chapter 11 Cases.  Part IV of this Declaration pertains to the relief sought in the First Day Motions.

## I.     OVERVIEW OF CHAPTER 11 CASES

6.     The Debtors own and operate an oil refinery (the "**Refinery**") located on the island of St. Croix in the United States Virgin Islands ("**USVI**").  The Refinery is part of a 2,000-acre industrial complex located on the southern coast of St. Croix comprised of (a) the Refinery and

2

(b)  an oil storage facility (or terminal) and docks (the "**Terminal**") owned and operated by non-debtor affiliates of the Debtors (the "**Terminal Entities**").[2]  For the avoidance of doubt, the Terminal Entities are not debtors in these Chapter 11 Cases.

7.      The Debtors and the Terminal Entities acquired the Refinery and Terminal, respectively, in or about December 2015.  Since acquiring the Refinery, the Debtors have invested approximately $4.1 billion in repairing, refurbishing and modernizing the Refinery to bring the operation into compliance with existing regulations.  The Debtors restarted Refinery operations on or about February 1, 2021 following a preliminary restart in December 2020.

8.      Despite years of planning and preparation, the Debtors began experiencing operational issues shortly after restarting the Refinery, which prompted investigations by the United States Environmental Protection Agency (the "**EPA**") and Virgin Islands Department of Planning and National Resources (the "**DPNR**"), as well as a request from the United States Attorney for the Virgin Islands (the "**U.S. Attorney**") to visit and tour certain operations at the Refinery.  Then, on May 12, 2021, an incident occurred at the Refinery—causing a small amount of oil to disperse in certain areas downwind of the Refinery.  In response, on May 13, 2021, the Debtors voluntarily ceased all refining operations at the Refinery on a temporary basis to investigate and remedy potential issues prior to any further incidences.  Despite the voluntary cessation of operations, on May 14, 2021, the Debtors received an order from the EPA directing the Debtors to immediately cease any and all Refinery operations for a period of 60 days pending the completion of certain operational and compliance audits (as discussed further below).

---

[2]  The Terminal Entities include Limetree Bay Terminal Holdings, LLC, Limetree Bay Terminal Holdings II, LLC, Limetree Bay Cayman, Ltd., and Limetree Bay Terminals, LLC.

4819-4445-7457.1

9.      As a result of the foregoing, and the Debtors' deteriorating liquidity position, the Debtors retained professionals to advise on potential strategies to address any compliance issues identified in the audits, address the Debtors' liquidity position, explore options to attract new capital, and restructure existing obligations in light of the shutdown and contemplated remediation efforts and expenses.  Additionally, each of the Debtors also appointed an independent board member, who has extensive experience as a director for distressed companies, including in the context of evaluating strategies for maximizing stakeholder value, navigating potential stakeholder conflicts, and raising debtor in possession financing and other capital.  On or about July 9, 2021, the Debtors' members and boards of directors, as applicable, adopted resolutions approving the commencement of the Chapter 11 Cases.

10.      The Debtors filed these Chapter 11 Cases in an effort to maintain the *status quo* while pursuing the following key objectives:  (1) obtaining new liquidity through the DIP Financing (as defined below) that will avoid the need for an immediate liquidation and that will be used to satisfy certain environmental, community, safety, employee, and administrative obligations of the Debtors; (2) pursuing other potential sources of financing and (3) in consultation with the EPA and DPNR, devising a plan to address the findings of the audits required under the EPA Order (defined below) and the Debtors' internal investigations.  The successful accomplishment of these objectives should provide the Debtors with an opportunity to attract, develop, and hopefully effectuate a chapter 11 exit strategy that will be in the best interests of the Debtors' bankruptcy estates and their creditors.

## II.      DEBTORS' ORGANIZATIONAL STRUCTURE AND BUSINESSES

### A.      Debtors' Organizational Structure

11.     A true and correct copy of the organizational chart for the Debtors is attached hereto as **Exhibit A** and incorporated herein by reference.

12.     Limetree Bay Energy, LLC ("**LBE**") is a Delaware limited liability company.  LBE is the parent company of each of the Debtors (directly or indirectly through subsidiaries) as well as the Terminal Entities (directly or indirectly through subsidiaries).  LBE, however, is not a debtor in these Chapter 11 Cases.  From January 7, 2016 up until April 20, 2021, LBR (defined below) and its affiliates were sponsored by certain parties, which had acquired the Refinery through the 2015 Hovensa Chapter 11 Cases (as defined below).  Because LBR was unable to complete the Refinery restart under prior ownership, a number of preferred equity investors were forced to equitize their interests pursuant to a consensual restructuring process that resulted in a new owner consortium acquiring a majority interest in the Refinery Entities and the Terminal Entities through LBE on April 20, 2021.

13.     Limetree Bay Ventures, LLC ("**LBV**"), is a Delaware limited liability company.  LBV is not a debtor in these Chapter 11 Cases.  Prior to April 2021, LBS and LBC II (defined below) were wholly owned subsidiaries of LBV and, as such, LBV was the parent company of the Limetree Bay entities identified in Paragraphs 15 to 21 of this Declaration (collectively, the "**Refinery Entities**").  In April 2021, in conjunction with the restructuring, LBE replaced LBV as the holding company for the Refinery Entities through the acquisition of LBV's interest in LBS and LBC II, as well as other assets and interests associated with the Refinery Entities, pursuant to the terms of that certain Share Transfer Agreement dated as of April 20, 2021 (the "**April 2021 Equity Restructuring**").

5

14. Limetree Bay Services, LLC ("**LBS**"), is a Delaware limited liability company with its principal place of business at 842 West Sam Houston Parkway North, Houston, Texas 77024. LBS is a wholly owned subsidiary of LBE.

15. Limetree Bay Cayman II, Ltd. ("**LBC II**") is a Cayman Islands exempted company. LBC II is a wholly owned subsidiary of LBE.  LBC II is not a debtor in these Chapter 11 Cases.

16. Limetree Bay Refining Holdings, LLC ("**LBRH**") is a limited liability company formed under the laws of the United States Virgin Islands with its principal place of business at 1 Estate Hope Christiansted, Virgin Islands 00820.  LBRH is a wholly owned subsidiary of LBC II.

17. Limetree Bay Refining Holdings II, LLC ("**LBRH  II**") is a limited liability company formed under the laws of the United States Virgin Islands with its principal place of business at 1 Estate Hope Christiansted, Virgin Islands 00820.  LBRH II is a wholly owned subsidiary of LBRH.

18. Limetree Bay Refining, LLC ("**LBR**") is a limited liability company formed under the laws of the United States Virgin Islands with its principal place of business at 1 Estate Hope Christiansted, Virgin Islands 00820.  LBR is a wholly owned subsidiary of LBRH II.

19. Limetree Bay Refining Marketing, LLC ("**LBRM**") is a limited liability company formed under the laws of the United States Virgin Islands with its principal place of business at 1 Estate Hope Christiansted, Virgin Islands 00820.  LBRM is a wholly owned subsidiary of LBR.

20. Limetree Bay Refining Operating, LLC ("**LBRO**") is a limited liability company formed under the laws of the United States Virgin Islands with its principal place of business at 1 Estate Hope Christiansted, Virgin Islands 00820.  LBRO is a wholly owned subsidiary of LBR.

21. I am informed and believe that the Debtors constitute affiliates, as that term is defined in Section 101(2) of the Bankruptcy Code and used in Bankruptcy Rule 1015(b).

4819-4445-7457.1

### B.     Acquisition and Historical Business Operations

22.     Based on my review of relevant documents, including documents filed in the HOVENSA Chapter 11 Case (defined below), I believe the following to be true and correct:

a.     In or about September 1965, the USVI and Hess Oil Virgin Islands Corp. ("**HOVIC**"), a subsidiary of Hess Corporation (f/k/a Amerada Hess Corporation), entered into a Concession Agreement dated September 1, 1965 providing for the construction and operation of the Refinery and Terminal facilities on St. Croix.  HOVIC continued operating the Refinery and Terminal until 1998, at which time HOVIC assigned its interests to HOVENSA—a joint venture of HOVIC and PDVSA V.I., Inc. ("**PDVSA**"), a subsidiary of the national oil company of Venezuela, Petróleos de Venezuela, S.A.

b.     Since commencing operations, the Refinery has been an integral part of the St. Croix community and economy—providing hundreds of jobs (at times employing up to 25% of St. Croix's workforce) and generating upwards of $125 million per year in tax revenues for the USVI.

c.     While the Refinery and Terminal have brought economic prosperity, the operation of an industrial oil refinery on a tropical island created dissonance with residents, federal and local environmental agencies, and non-governmental organizations concerned about the impacts of the operation on the local ecosystem and environment at large—a dissonance only amplified in recent decades as the Refinery aged amidst increasingly stringent environmental regulation.

d.     Ultimately, adverse economic and regulatory climates, as well as increased competition in the region, resulted in HOVENSA's refinery operations suffering losses totaling approximately $1.3 billion between 2009 and 2011.

e.      On or about February 16, 2012, HOVENSA idled the Refinery operations due to mounting losses and, in or about 2013, began marketing the Refinery and Terminal for sale.

f.      In September 2015, HOVENSA and Limetree Bay Holdings, LLC ("**LBH**") entered into a purchase and sale agreement for the Terminal, pursuant to which LBH agreed to serve as the stalking horse bidder for a sale through bankruptcy.

g.      On September 15, 2015, HOVENSA filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**HOVENSA Chapter 11 Case**") in the United States District Court for the Virgin Islands, Bankruptcy Division (the "**HOVENSA Court**").

h.      On or about December 1, 2015, the HOVENSA Court entered an order approving the sale of substantially all assets of HOVENSA to LBH, or its assignee, including, without limitation, the Terminal and Refinery.  As consideration for the acquisition, LBH paid $190 million in cash and assumed certain liabilities of HOVENSA.

23.     In conjunction with the acquisition of the Refinery and Terminal, LBR and Limetree Bay Terminals, LLC ("**LBT**") entered into operating agreements with USVI (as amended and supplemented, the "**Operating Agreements**"), which, among other things, granted the USVI certain entitlements and financial incentives in exchange for the right to acquire and operate the Refinery and Terminal; however, if the Refinery did not restart operations, the Operating Agreements obligated LBR to dismantle or deconstruct portions of the Refinery.  Under the terms of the Operating Agreements, the USVI asserts a security interest in "all personal property of [LBR] required to operate" the Refinery "and Related Facilities…."

24.     Following the sale of the Refinery and Terminal to LBH, Arclight and Freepoint, through their investment in LBH, acquired a majority equity interest in LBV, the former parent company of LBH, and began seeking other investors to finance the refurbishment and

8

recommissioning of the Refinery and modernization of the Terminal. Arclight obtained commitments to invest approximately $3 billion into the Refinery and Terminal, with the goal of processing 210,000 barrels of crude oil per day into gasoline, diesel and fuel oil to serve a variety of sectors, with a focus on South and Central America and an emerging market for low-sulfur fuels for the maritime transportation industry.

### C.   The Refinery

25.     The Refinery occupies 1,500 acres of the Limetree Bay facility. The Refinery operations are principally conducted at the East Refinery, which includes the crude units, a vacuum unit, a delayed coker unit, platformers, and hydrotreaters. In addition to facilities related to the refining operations, the Refinery includes office space, onsite housing for certain employees, as well as facilities ancillary to the refining operations, including a power generation complex, which provides power to the Refinery and related facilities. The Terminal occupies the remaining portions of the Limetree Bay facility.

26.     In connection with the Refinery and Terminal operations, LBR and LBRM, on the one hand, and LBT, on the other hand, have entered into a series of agreements governing the use and occupancy of the Limetree Bay facility and business dealings between the Refinery and Terminal, including, without limitation, the Shared Services Systems Agreement dated as of November 30, 2018 (as amended and supplemented, the "**Shared Services Agreement**"). The Shared Services Agreement provides, in pertinent part, that the Refinery Entities and Terminal Entities authorize each other, subject to certain restrictions to avoid business interruption, to access and use the properties and facilities of the other for purposes of conducting the parties' respective business operations. The Shared Services Agreement further provides that the Refinery Entities and Terminal Entities share certain services (e.g., water, power, wastewater, etc.), facilities (e.g.,

9

on-site office space, employee housing, parking lots, etc.), employees, and insurance coverage (some of which is maintained by LBE),[3] and allocate the costs of such services and facilities between the Refinery Entities and Terminal Entities.  The Debtors and LBT are evaluating potential amendments and modifications to the Shared Services Agreement that would be appropriate in light of the suspension of operations at the Refinery.[4]  Based on such discussions, the Debtors anticipate filing a motion to authorize certain amendments and modifications to the Shared Services Agreement following the Petition Date.

**D.    Efforts to Refurbish the Refinery and Restart Operations**

27.    Beginning in 2018, the Debtors began refurbishing the Refinery and preparing to restart operations.  At the time, the Refinery was more than 50 years old and had been dormant since February 2012, following its idling by HOVENSA—rendering the task of restarting the Refinery a substantial undertaking by any measure.

28.    Initially, the Debtors anticipated restarting operations of the Refinery in early 2020 with an investment of approximately $2.1 billion.  The projected completion date served one of the principal objectives of the Refinery refurbishment—establishing a Caribbean-based oil refinery capable of producing low-sulfur transportation fuels compliant with emerging International Marine Organization standards that were expected to come into full force and effect in the beginning of 2020.

29.    As the project progressed, the Debtors encountered unanticipated impediments to completion, including, without limitation, issues with infrastructure and certain foundational

---

[3] As of the Petition Date, the Debtors are current on all obligations owing under its insurance policies and, as such, the Debtors do not anticipate having to make any postpetition payment on account of prepetition insurance obligations.

[4] It is my understanding that the Terminal Entities intend to appoint one or more independent directors with authority to address issues related to the Debtors and these Chapter 11 Cases.

4819-4445-7457.1

systems.  Identifying and correcting these issues caused the timeline to expand and budget for completion of the Refinery refurbishment to swell.  The emergence of the COVID-19 virus in early 2020 only exacerbated the delay due to restrictions on available workers, access to the island and the Refinery, and the need to implement protocols to ensure the health and safety of employees.

30.     Ultimately, the Debtors completed the refurbishment of the main process units of the Refinery in or about December 2020—nearly a year later than projected and more than $1 billion over-budget.  Shortly thereafter, the Refinery began producing small amounts of refined petroleum products, including, without limitation, approximately 216,000 barrels of naphtha, to test the facilities' operational capabilities.  The operational outlook based on the preliminary production runs was promising; accordingly, the Debtors continued to move forward preparing for a relaunch of the facility in early 2021.  In January 2021, the Debtors began readying the Refinery to begin production of additional refined products—testing the operational capabilities of additional processes necessary to produce more refined products, such as gasoline.

E.  **Funding of the Refinery Refurbishment Project and Existing Capital Structure**

31.     Ultimately, the Debtors invested approximately $4.1 billion into refurbishing the Refinery.  The Debtors funded the project through a combination of equity contributions and debt financing.  Between 2018 and 2021, the Debtors raised approximately $2.5 billion from equity through capital contributions, issuance of membership interests, as well as subordinated shareholder loans.  In addition to equity contributions, the Debtors incurred approximately $1.6 billion in debt financing under three principal facilities—(a) a $900 million term loan facility (the "**LBR Term Loan**") from a consortium of lenders (collectively, the "**Term Lenders**") with Goldman Sachs Bank USA ("**Goldman Sachs**") serving as administrative agent and project collateral agent, (b) a $50 million revolving line of credit (the "**Revolving LOC**") from certain

11

lenders, with Goldman Sachs serving as administrative agent and project collateral agent, and (c) the LBRH II Holdco Loan (defined below).[5]

32.     Under the LBR Term Loan, the lenders committed to lend to LBR, as borrower, up to $900 million (after giving effect to the LBR Debt Restructuring referred to below).  The LBR Term Loan is comprised of five (5) tranches—tranches A through E.  Access to each tranche is dependent on satisfying certain conditions related to the Refinery refurbishment and restarting.  As of the Petition Date, the Debtors have drawn the following amounts on the LBR Term Loan: (a) Tranche A, approximately $518 million; (b) Tranche B, approximately $110.47 million; (c) Tranche C, approximately $29.46 million; and (d) Tranche D, approximately $111 million. The Debtors have not drawn on Tranche E of the LBR Term Loan.  In sum, the Debtors owe approximately $768.9 million under the LBR Term Loan—leaving approximately $131 million of committed capital available under Tranche E; however, the conditions precedent to accessing Tranche E of the LBR Term Loan have not been satisfied and the Debtors do not expect to be able to satisfy such conditions precedent.  The obligations of LBR, as borrower, due under the LBR Term Loan are guaranteed by LBRM and LBRO.  The LBR Term Loan matures on November 20, 2025.

33.     LBR entered into certain hedging arrangements, including an ISDA Master Agreement dated as of January 18, 2019 (the "**J. Aron ISDA Agreement**") with J. Aron & Company LLC ("**J. Aron**") and certain transactions thereunder, to hedge interest rate risk associated with the LBR Term Loan.  The J. Aron ISDA Agreement is a "Secured Hedge Agreement" under the terms LBR Term Loan.  The J. Aron ISDA Agreement is not a J. Aron

---

[5] The loan balances stated herein account for the principal due under the facilities as of July 9, 2021, based upon available information.  To the extent necessary, the Debtors will update these balances prior to or during the hearing on the First Day Motions.

Transaction Document described below.  On or about June 28, 2021, J. Aron averred that one or more "Events of Default" had occurred with respect to LBR under the terms of the J. Aron ISDA Agreement and designated June 29, 2021 as the "Early Termination Date" under the J. Aron ISDA Agreement.  On or about July 1, 2021, J. Aron submitted to LBR a notice stating that J. Aron had calculated that the amount due and payable by LBR in respect of the Early Termination Date was no less than $1,804,000.00 (the "**J. Aron Early Termination Payment**").  The Debtors are evaluating the alleged Events of Default and calculation of the J. Aron Early Termination Payment. As of the Petition Date, the Debtors have not paid the J. Aron Early Termination Payment.

34.     Under the Revolving LOC, the lenders committed to lend to LBRM, as borrower, up to $50 million on a revolving line of credit.  As of the Petition Date, the Debtors have drawn $50 million on the Revolving LOC.  The obligations due under the Revolving LOC are guaranteed by LBR and LBRO.  The Revolving LOC matures on November 20, 2023.

35.     In addition to the LBR Term Loan and Revolving LOC, the Debtors also borrowed funds via intercompany unsecured and subordinated loan transactions memorialized in certain subordinated promissory notes—classified in the Debtors' records as the Original LBV Subordinated Notes and Supplemental LBV Subordinated Notes (collectively, the "**LBV Subordinated Notes**").  LBV was the promisee and LBR was the borrower under the LBV Subordinated Notes.

36.     In December 2020, the Term Lenders, LBV and the Debtors agreed to a consensual restructuring of certain of LBR's outstanding debt (the "**LBR Debt Restructuring**"), pursuant to which (a) approximately $402 million of LBV Subordinated Notes, and (b) approximately $349 million of then-outstanding LBR Term Loans, were, in each case, assigned by LBR to LBRH II and evidenced under a separate loan agreement with Wilmington Trust, National Association

("**Wilmington Trust**") serving as administrative agent and project collateral agent (the "**LBRH II Holdco Loan**").   In connection with (and prior to) the April 2021 Equity Restructuring, LBV assigned all of its interests as a lender under the LBRH II Holdco Loan to LBC II.  As of the Petition Date, the lenders under the LBRH II Holdco Loan include the Term Lenders and LBC II (collectively, the "**Holdco Lenders**"). The LBR Debt Restructuring was consummated and became effective on February 25, 2021.  Since the effectiveness of the LBR Debt Restructuring, certain cash contributions made by the members of LBE to fund liquidity needs of the Debtors in connection with the Refinery have been via LBC II as advances to LBRH II under the LBRH II Holdco Loan. As of the Petition Date, LBRH II owes approximately $782.56 million under the LBRH II Holdco Loan.  The LBRH II Holdco Loan matures on November 20, 2025.

37.     Goldman Sachs and the Term Lenders contend that the indebtedness under the LBR Term Loan, Secured Hedge Agreements (as defined therein), and Revolving LOC are secured by assets of the Debtors (the "**Senior Lenders' Collateral**") pursuant to that certain Security Agreement dated as of November 20, 2018 (the "**General Security Agreement**") and that certain Pledge Agreement dated as of November 20, 2018 (the "**Pledge Agreement**").  Per the General Security Agreement, the Senior Lenders' Collateral is comprised of certain tangible and intangible personal property assets of LBR and LBRM, including, without limitation, certain accounts, chattel paper, deposit accounts, documents, equipment, fixtures, general intangibles, instruments, intellectual property, investment property, letters of credit, commercial tort claims, and any supporting obligations or proceeds of any Senior Lenders' Collateral.  Per the Pledge Agreement, the Senior Lenders' Collateral includes the equity interests of LBRH II in LBR, the wholly owned subsidiary of LBRH II.

4819-4445-7457.1

38.     Wilmington Trust contends that the obligations under the LBRH II Holdco Loan are secured by assets of LBRH II (the "**Holdco Lenders' Collateral**") pursuant to that certain Security Agreement dated as of April 6, 2021 (the "**Holdco Security Agreement**") and that certain Pledge Agreement dated as of February 22, 2021 (the "**Holdco Pledge Agreement**").  Per the Holdco Security Agreement, the Holdco Lenders' Collateral is comprised of the tangible and intangible personal property assets of LBRH II, including, without limitation, all accounts, chattel paper, deposit accounts, documents, equipment, fixtures, general intangibles, instruments, intellectual property, investment property, letters of credit, commercial tort claims, and any supporting obligations or proceeds of any Holdco Lenders' Collateral.  Per the Holdco Pledge Agreement, the Holdco Lenders' Collateral includes the equity interests of LBRH in LBRH II, the wholly owned subsidiary of LBRH.

39.     In the course of the Refinery project, the Debtors used the services of numerous vendors and contractors.  Several vendors and contractors have asserted certain common law and statutory liens (e.g., construction liens) against certain assets of the LBR and LBT based on amounts purportedly due and owing for services rendered (collectively, the "**Construction Liens**"), including, without limitation, the following:

    a.    On or about February 2, 2021, Cleaver-Brooks Sales and Service, Inc. filed a construction lien (the "**Cleaver Lien**") against certain assets of LBR in the amount of $120,738.00;

    b.    On or about May 7, 2021, Great Southern Technologies, LLC filed a construction lien against certain assets of LBR and/or LBT in the amount of $393,206.53;

    c.    On or about May 12, 2021, InServ Field Services USVI, LLC filed a construction lien against certain assets of LBR "and its affiliates" in the amount of $19,670,362.10;

    d.    On or about May 14, 2021, AltairStrickland V.I., LLC filed a construction lien against certain assets of LBR in the amount of $4,106,717.42;

e.    On or about June 8, 2021, Universal Plant Services (VI), LLC filed a construction lien against certain assets of LBR in the amount of $26,263,226.16;

f.    On or about June 10, 2021, Computer Solutions, Inc. (d/b/a CosTrack Project Controls) filed a construction lien against certain assets of LBR in the amount of $376,100.91;

g.    On or about June 21, 2021, Vivot Equipment Corporation filed a construction lien against certain assets of LBR and/or LBT in the amount of $9,765,557.08;

h.    On or about June 21, 2021, Virgin Islands Industrial Services, LLC filed a construction lien against certain assets of LBR and/or LBT in the amount of $4,466,993.76;

i.    On or about June 21, 2021, Panametrics LLC filed a construction lien against certain assets of LBR in the amount of $21,844.00;

j.    On or about June 21, 2021, EXCEL Construction & Maintenance VI, Inc. (f/k/a Sun Constructors, Inc.) filed a construction lien against certain assets of LBR, LBT and LBE in the amount of $24,943,041.69;

k.    On or about June 22, 2021, Cust-O-Fab, LLC filed a construction lien against certain assets of LBR and LBT in the amount of $2,064,855.00;

l.    On or about June 22, 2021, Cust-O-Fab Specialty Services, LLC filed a construction lien against certain assets of LBR and LBT in the amount of $3,284,871.07;

m.    On or about June 22, 2021, Enermech Mechanical Services, Inc. filed a construction lien against certain assets of LBR in the amount of $501,059.41;

n.    On or about June 24, 2021, Worley Pan-American Corporation (f/k/a Jacobs Pan-American Corporation) filed a construction lien against certain assets of LBR in the amount of $2,664,105.61;

o.    On or about June 24, 2021, Christiansted Equipment Ltd. filed a construction lien against certain assets of LBR in the amount of $3,780,074.66;

p.    On or about June 29, 2021, Strategic Contract Resources, LLC filed a construction lien against certain assets of LBR in the amount of $830,079.50;

q.    On or about July 6, 2021, HKA Enterprises, LLC filed a construction lien against certain assets of LBR in the amount of $450,172.78; and

16

r.    On or about July 7, 2021, Complan USA LLC filed a construction lien against certain assets of LBR in the amount of $1,409,410.13.

The obligations associated with the alleged Construction Liens total approximately $105.11 million.  The Debtors are investigating the validity of the alleged Construction Liens.  While the investigation remains ongoing, it is my understanding that, with limited exception for the Cleaver Lien, (i) each of the Construction Liens was asserted after the Debtors incurred the obligations under the LBR Term Loan, Revolving LOC, LBRH II Holdco Loan, J. Aron Transaction Documents (defined below) with J. Aron (defined below), and LBV Subordinated Notes[6] and (ii) each of the Construction Liens was asserted in the 90-day period immediately preceding the Petition Date.

F.  **Funding for Refinery Operations**

40.    In addition to the funding required to completed the Refinery refurbishment and relaunch, the Debtors secured capital and certain liquidity arrangements to fund existing Refinery operations and future expansions thereof, obtain a stable source of and competitive price for feedstock and the off-take of refined products under commodity purchase and sale and marketing agreements, and to provide liquidity for the purchase of materials essential to Refinery operations, including, without limitation, catalysts used in the processing of refined products under an inventory financing agreement.  This liquidity was secured through a series of agreements with BP Products North America Inc. ("**BP**") as well as a supply and offtake agreement and other agreements relating to the purchase and sale by J. Aron of Feedstock (as defined below) and Product (as defined below) (collectively, the "**Safe Harbor Agreements**"), a monetization master agreement and a financing agreement (collectively, together with the Safe Harbor Agreements and

---

[6] The Cleaver Lien was asserted prior to the consummation of the LBR Debt Restructuring, but after the Debtors incurred the other obligations identified.

all other transaction documents associated therewith, the "**J. Aron Transaction Documents**") with J. Aron.

41.     In or about November 2018, the Debtors entered into a series of agreements with BP governing the supply of crude oil and additional investments in the Refinery, including a feedstock agreement (the "**BP Feedstock Agreement**"), a product off-take agreement (the "**BP Off-Take Agreement**"), and a tolling agreement (the "**BP Tolling Agreement**").  Under the terms of the BP Feedstock Agreement, BP agreed to provide crude oil (i.e., feedstock) and other materials to the Refinery.  Per the BP Off-Take Agreement, BP agreed to market refined petroleum products from the Refinery.  As consideration for a share in the net margin of the Refinery, BP agreed to invest up to $533 million in the Refinery to complete improvements and expansions related to the manufacture of certain petroleum products, including low-sulfur transportation fuel.  BP would recoup its investment under the Tolling Agreement via its share in the net margin generation of the Refinery.  BP's obligation to invest funds pursuant to the Tolling Agreement was subject to certain operational benchmarks.

42.     On February 22, 2021, LBRM, LBR, and BP entered into an Amended and Restated Tolling Agreement (the "**A&R Tolling Agreement**" and, together with the BP Feedstock Agreement and BP Off-Take Agreement, each as amended, the "**BP Agreements**") reflecting a renegotiation of certain operational benchmarks for the financing commitments and a further discounted price for the refined petroleum products available to BP under the BP Off-Take Agreement.  BP's investment obligation remains subject to those modified operational benchmarks contained in the BP Agreements. The Debtors do not believe that these conditions precedent have been satisfied as of the Petition Date.

43.     On or about March 3, 2020, LBRM entered into the J. Aron Transaction Documents, pursuant to which:  (a) J. Aron agreed to purchase and sell crude oil, crude oil blends, fuel oil, naphtha, debutanized natural gasoline and certain other feedstocks (each as more fully defined in the J. Aron Monetization Master Agreement (as defined below), the "**Feedstock**"), and certain refined hydrocarbon products (each as more fully defined in the J. Aron Transaction Documents, the "**Product**") to LBRM (and LBRM agreed to purchase and sell Feedstock and Product from and to J. Aron, as applicable) pursuant to the Safe Harbor Agreements, and which also governed certain terms of purchases and sales of Feedstock and Product between J. Aron and third parties (including BP), in each case, subject to additional terms and conditions set forth in the J. Aron Transaction Documents; and (b) J. Aron advanced to LBRM a one-time term loan based on certain catalyst units that contain certain base metals and certain catalyst units that contain certain precious metals, which were, in each case, designed for use in refining or processing activities, pursuant to a financing agreement (the "**J. Aron Financing Agreement**").

44.     As of the Petition Date, the applicable Debtors were indebted to J. Aron in an amount of approximately $24.97 million under the J. Aron Financing Agreement[7].  In addition, J. Aron has commenced the process of liquidating certain Feedstock and Products owned by it in connection with the J. Aron Transaction Documents.  If J. Aron is unable to liquidate such Feedstock and Products, and/or incurs losses or costs as a result of such liquidation and termination of J. Aron's rights and obligations under the Safe Harbor Agreements, LBRM, LBR and LBRO may be liable to J. Aron for such losses under the J. Aron Transaction Documents.  Given that the liquidation of the Feedstock and Products has only recently commenced, the Debtors are unable to

---

[7] The amount due under the J. Aron Financing Agreement accounts for the principal due under the facilities as of July 9, 2021, based upon available information.  To the extent necessary, the Debtors will update these balances prior to or during the hearing on the First Day Motions.  The Debtors estimate that the potential liability under the Safe Harbor Agreements may be as much as $221.95 million.

4819-4445-7457.1

determine whether any additional amounts will be due on account of such liquidation.  Further, under the J. Aron Transaction Documents, the Debtors may be liable to and owe J. Aron accrued (both before and after the Petition Date) and unpaid interest, fees, expenses and certain other obligations under the J. Aron Transaction Documents, to the extent permitted under such documents and the Bankruptcy Code. LBR and LBRO are guarantors under the J. Aron Transaction Documents.

45.    J. Aron contends that the indebtedness due under the J. Aron Transaction Documents is secured by assets of LBRM (the "**J. Aron Collateral**") pursuant to that certain Security Agreement dated as of March 3, 2020 (the "**J. Aron Security Agreement**").  Per the J. Aron Security Agreement, the J. Aron Collateral is comprised of certain tangible and intangible personal property assets of LBRM, including accounts, accounts receivable, hydrocarbons and other inventory, deposit accounts, instruments, chattel paper, documents, tax refunds, commercial tort claims, and replacements and proceeds of the J. Aron Collateral.

46.    On or about June 25, 2021, J. Aron asserted that the Debtors were in default under the J. Aron Transaction Agreements and, as a result, J. Aron was no longer required to perform thereunder and, moreover, that J. Aron has the right to liquidate, and has commenced liquidation of, the Feedstock and Product purchased and owned by J. Aron pursuant to or in connection with any Safe Harbor Agreements.

**G.  The Debtors' Cash Management System**

47.    The Debtors maintain a decentralized cash management system (the "**Cash Management System**"), which principally utilizes twenty (20) bank accounts (collectively, the

"**Bank Accounts**") maintained by LBR, LBRM and LBRO[8] with Deutsche Bank Trust Company Americas ("**Deutsche Bank**"), Oriental Bank ("**Oriental Bank**"), and Citibank ("**Citibank**" and, together with Deutsche Bank and Oriental Bank, the "**Depositors**").

48.     The Cash Management System is maintained in accordance with the terms of (a) that certain Amended and Restated Depositary and Intercreditor Agreement, dated as of March 3, 2020 (as amended, amended and restated, waived, supplemented and/or modified from time to time, the "**Prepetition Depositary Agreement**") between the LBR, LBRM, LBRO, LBRH II, Goldman Sachs (as (i) administrative agent for the Term Lenders (as defined therein), (ii) the Revolving Administrative Agent, and (iii) as collateral agent for the Project Secured Parties (as defined therein) (in such capacity, together with its successors and permitted assigns in such capacity, the "**Project Collateral Agent**")), Deutsche Bank (the "**Depositary Agent**"), and J. Aron, (b) that certain Deposit Account Control Agreement dated as of January 24, 2019 (the "**Oriental Bank DACA**"), between LBR and LBRO, as grantors, the Bank of Nova Scotia (as predecessor to Oriental Bank), as depositary bank, and Goldman Sachs, as Project Collateral Agent; (c) that certain Deposit Account Control Agreement dated as of March 3, 2020 (the "**J. Aron DACA**"), among LBRM, as grantor, Oriental Bank, as depositary bank, and J. Aron, as secured party; and (d) a certain deposit account control agreement (the "**Citibank DACA**") with Citibank, as depositary bank, and LBRH II, as the grantor, pertaining to an account of LBRH II, as specified therein, on deposit with Citibank.

49.     Under the terms of the Prepetition Depositary Agreement, revenues from the Debtors' operations are deposited in revenue accounts with Deutsche Bank (collectively, the

---

[8] Limetree Bay Services, LLC ("**LBS**") maintains an account with Citibank (the "**LBS Account**").  The Debtors are not aware of any security interests in LBS Account.

4819-4445-7457.1

"**Revenue Accounts**") maintained by LBR and LBRM.  Following receipt of the revenues, funds are disbursed to operating accounts with Oriental Bank (collectively, the "**Operational Accounts**") maintained LBR and/or LBRM, from which LBR and LBRM pay operational expenses associated with the Refinery, either directly or through further distribution of revenues to affiliates in accordance with the provisions of the Prepetition Depositary Agreement.

50.     As of the Petition Date, the Debtors have approximately $3,479,722 of cash on hand, which amount is held in the Bank Accounts.[9]

### H.  Permitting and Environmental Compliance

51.     In conjunction with the commencement of work on the Refinery, the Debtors filed an application in or about 2018 for a Plantwide Applicability Limit (PAL) permit (i.e., the EPA Permit) to modify existing operations without needing a Prevention of Significant Deterioration (PSD) permit as long as the Refinery operated within certain limits.  On or about December 2, 2020, the EPA issued the EPA Permit for the Refinery.  Following the change in administrations in January 2021, the EPA began reviewing permits issued under the prior administration, including the EPA Permit, to evaluate compliance with existing law and the environmental regulatory agenda of the new administration.  On March 25, 2021, the EPA withdrew the EPA Permit.

52.     With the exception of the EPA Permit (to the extent such permit is required), I am informed and believe that the Debtors possess all permits required to operate the Refinery, subject to the EPA Order and EPA Stipulation (defined below).  Notwithstanding, the Debtors are not presently authorized to operate the Refinery.  Under the terms of the EPA Order, the Debtors are prohibited from operating the Refinery for a period of 60-days from the date of the EPA Order.

---

[9] The stated balances in the Bank Accounts is based upon the balances in such accounts as of July 9, 2021.  To the extent necessary, the Debtors will provide updated balances prior to or during the hearing on the First Day Motions.

While the EPA Order is scheduled to expire on or about July 13, 2021, the Debtors are presently in discussions with the EPA regarding the entry of a stipulated order (the "**EPA Stipulation**"), providing for the continued suspension of operations and conditioning any renewal of operations on the satisfaction of certain prerequisites.

## III.    EVENTS PRECIPITATING FILING OF CHAPTER 11 CASES

53.    Throughout, the Refinery project faced significant hurdles—from delays in construction resulting in substantial budget overruns to a global pandemic.  Ultimately, the Debtors substantially completed the Refinery refurbishment in December 2020—a year late and more than $1 billion over the initial budget—and, on February 1, 2021, the Refinery resumed operations and began producing certain refined products for commercial sale.

54.    While the initial relaunch of the Refinery proved successful in many respects, the Refinery experienced intermittent operational issues and incidents of varying severity beginning shortly after the resumption of operations.  In late April 2021, residents in the communities neighboring the Refinery began reporting a foul odor allegedly emanating from the Refinery, which prompted internal investigations as well as inquiries by the EPA and DPNR into the Refinery's emissions of gaseous by-products of the refining processes.  The Debtors cooperated with the EPA and DPNR in an effort to expeditiously identify the source of the odor and, moreover, ensure Refinery emissions comported with applicable standards.  Although the investigation concluded that the odor was due, at least in part, to an exposed sewage access point on USVI government property, the investigation also uncovered irregularities in the emission of certain gases from the Refinery.  In conjunction with the EPA and DPNR, the Debtors began creating a plan to remedy the issues and ensure emissions complied with applicable standards.

55.     Before the Debtors were able to finalize and implement any remediation plan(s), on May 12, 2021, an incident occurred resulting in the release of small amount of oil from a flare located at the Refinery, which affected homes and property in the surrounding neighborhoods. The Debtors immediately began an incident response process and, on May 13, 2021, voluntarily suspended operations at the Refinery to permit a full and complete investigation of the incident and to address any contributing factors.

56.     On May 14, 2021, the EPA issued a Clean Air Act Emergency Order (the "**EPA Order**") for the Refinery.  In the EPA Order, the EPA alleged that the Refinery failed to comply with certain aspect of the United States Clean Air Act pertaining to the emission of certain gaseous by-products of the refining processes.  Based on these purported violations, the EPA ordered the Debtors to suspend all operations at the Refinery for a period of 60 days and retain independent auditors to investigate compliance with environmental regulations in the operations of the Refinery.  Upon receipt, the Debtors immediately took action to comply with the EPA Order, including the continuation of the voluntary suspension of Refinery operations and engagement of qualified auditors to evaluate the Debtors' operations and processes as well as the Debtors' compliance with applicable regulations.  The auditors concluded their audits and provided final reports simultaneously to the EPA and the Debtors on or about June 25, 2021.

57.     As a result of the EPA Order, among other events, the Debtors' investors and lenders began expressing concerns about the ability to restart the Refinery, which severely impacted the Debtors' ability to access funding necessary to maintain operations and preserve the Refinery's assets.  Concerns were heightened further due to a June 11, 2021 request from the U.S. Attorney to visit and tour certain operations at the Refinery (the "**U.S. Attorney Request**").  Furthermore, certain Debtors and non-debtor affiliates have been named as defendants in multiple

class actions lawsuits (the "**Class Actions**") alleging private causes of action related to purported pollution caused by the Refinery following the February 1, 2021 relaunch.  As of the Petition Date, the Debtors are cooperating with the EPA, DPNR, and U.S. Attorney, and the Class Actions remain in the early stages of litigation.

58.    Following the May 13, 2021 suspension of operations, the Debtors explored various options for renewing operations at the Refinery.  The Debtors engaged financial advisors and counsel to advise on potential restructuring and recapitalization options, and retained the CRO to lead these efforts.  Additionally, on or about July 4, 2021, each of the Debtors appointed Steven J. Pully (the "**Independent Director**") as an independent director and/or member, as appropriate, vested with the authority to address matters pertaining to the restructuring of the Debtors, including the resolution of any conflicts that may arise between the Debtors and their officers, directors, members, and shareholders as well as their non-debtor affiliates of the Debtors, including the Terminal Entities.  In selecting the Independent Director, the Debtors interviewed numerous qualified candidates.  I am informed and believe that the Independent Director was selected due to his extensive experience as an independent director, chief restructuring officer, investment banker, and financial advisor, prior service as the chief executive officer for an oil and gas company following emergence from bankruptcy, as well as his prior experience as an attorney, which made the Independent Director qualified not only to serve as a director and/or member, as applicable, of the Debtors, but to fulfill his duty of identifying, investigating and evaluating any potential conflicts of interest that may arise in the context of these complex Chapter 11 Cases.  Copies of the Independent Director's resume and a non-exhaustive list of relevant experience are attached hereto as **Exhibit B** and incorporated herein by reference.

59.     Regrettably, despite the involvement of qualified professionals to evaluate and pursue potential financing and restructuring options, the Debtors were unable to devise a plan to preserve the Refinery in operational condition without new capital.  Indeed, the Debtors estimated that the Refinery would require at least $150 million in additional funding to maintain operational capabilities, complete ongoing repairs and retrofitting, fund necessary repairs identified by the EPA audits, and establish a reserve for potential expenses pending the restart of the Refinery— which amount is exclusive of funds required for working capital and payment of outstanding obligations.  The Debtors, however, lacked access to adequate financing.

60.     Accordingly, the Debtors engaged with their investors and their primary lender constituencies to see if they would be willing to provide such new capital.  However, due to, among other things, the suspension of operations under the EPA Order, the U.S. Attorney Request, and looming deadlines under the Debtors' agreement with BP, the Debtors have been unable to attract the new capital necessary to fund operational costs during the temporary shutdown and ultimately restart operations after remediating any alleged deficiencies.

61.     As a result of the declining prospects for funding, on June 21, 2021, the Debtors announced that they were suspending indefinitely plans to restart the Refinery.  Simultaneously, on June 21, 2021, LBRO, which employs the principal workforce of the Refinery, provided notice to its employees in accordance with the The Worker Adjustment and Retraining Notification (WARN) Act and, out of an abundance of caution, the Virgin Islands Plant Closing Act of its intention to reduce its workforce by 271 employees.

62.     Since announcing the indefinite suspension of operations at the Refinery, the Debtors have worked diligently to idle the Refinery pending a sale or reorganization through these Chapter 11 Cases.  In conjunction with the EPA, the Debtors have prepared portions of a plan to

purge hydrocarbons from the Refinery equipment (the "**Hydrocarbon Purge Plan**"), which is necessary before the Debtors may safely idle the facility.  In early July 2021, the Debtors submitted to the EPA a proposal for the first phase of their Hydrocarbon Purge Plan, which is pending agency review and approval.  The Debtors are in the process of preparing a proposal for the second phase of their Hydrocarbon Purge Plan, which the Debtors intend to submit to the EPA shortly.  Additionally, the Debtors have provided for the anticipated expenses associated with the Hydrocarbon Purge Plan and other remedial and operational expenses under the DIP Facility (defined below) and associated budget for the use of the debtor in possession financing and cash collateral (the "**Budget**").

63.     In addition to the foregoing, the Debtors have been working with the citizens and government of the USVI to redress the potential environmental, safety and other impacts of the Refinery.  Due to the Debtors' belief in the importance of these payments and their relationship with the government of the USVI, and the potential impact on the value of the Debtors' assets and any marketing and sales process, the Debtors are working with their lenders to provide for the payment of certain amounts to the citizens of the USVI in the Budget.  As of the Petition Date, these discussions remain ongoing.  Any proposed payments shall be subject to the Budget, the provisions of the DIP Financing, and any orders authorizing the use of the DIP Financing or cash collateral in these Chapter 11 Cases, unless otherwise ordered by this Court.

64.     As the Debtors lack sufficient funds to implement the Hydrocarbon Purge Plan, pay operational expenses, or fund these Chapter 11 Cases without a new source of liquidity, the Debtors engaged in arms' length negotiations with potential sources of debtor in possession financing in the weeks leading up to the Petition Date, and have secured a commitment for debtor

in possession financing in an aggregate amount of up to $25 million, as described below, which is the subject of the DIP Motion (defined below).

65.     On or about July 9, 2021, the boards of directors and/or managers, as applicable, of the Debtors adopted resolutions (collectively, the "**Resolutions**") approving the commencement of these Chapter 11 Cases as well as other associated restructuring efforts, including, without limitation, obtaining the DIP Financing (defined below).

66.     On the Petition Date, the Debtors filed their respective Petitions—thereby commencing these Chapter 11 Cases.

## IV.     FIRST DAY MOTIONS AND EMERGENCY RELIEF

### A.     First Day Motions

67.     Concurrently with the filing of the Chapter 11 Cases, the Debtors have filed the following motions requesting relief, with the exception of the Lease Rejection Motion (defined below), on an emergency basis (collectively, the "**First Day Motions**"):

a.      *Debtors' Emergency Motion Pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1 for Order Directing Joint Administration of Chapter 11 Cases;*

b.      *Debtors' Emergency Motion for Authority to (I) Pay Prepetition Wages, Benefits, and Employee Business Expenses; and (II) Continue the Postpetition Maintenance of Employee Benefit Programs, Policies, and Procedures in the Ordinary Course;*

c.      *Debtors' Emergency Motion for Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105(a), 345(b), 363, and 364 Authorizing: (I) the Continued Use of the Debtors' Prepetition Cash Management System, including Existing Bank Accounts, Business Forms, and Company Credit Cards; (II) Continued Use of Intercompany Arrangements and Historical Practices; and (III) Opening New Debtors-in-Possession Accounts, if Necessary;*

d.      *Debtors' Emergency Motion for Entry of an Order (I) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services, (III) Approving the Debtors' Proposed Procedures*

28

for Resolving Additional Assurance Requests, and (IV) Granting Related Relief;

e.   Debtors' _Emergency_ Application for Order Appointing BMC Group, Inc. as Claims, Noticing, Solicitation, and Administrative Agent;

f.   Debtors' Motion to Reject Unexpired Lease of Real Property (842 West Sam Houston Parkway North, Houston, Texas 77024) (the "**Lease Rejection Motion**"); and

g.   Debtors' _Emergency_ Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-petition Financing, (II) Authorizing the Debtor to Use Cash Collateral, (III) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (IV) Approving Adequate Protection to Pre-petition Secured Creditors, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing (the "**DIP Motion**").

68.   I have reviewed each of the First Day Motions, including the attachments thereto, and believe the facts set forth therein are true and correct, to the best of my knowledge, information and belief.  I believe that the relief sought in each of the First Day Motions is appropriate under the circumstances presented and necessary to preserve the assets and operations of the Debtors for the benefit of the estates and their creditors pending completion of a sale and/or confirmation of a plan of reorganization or liquidating in these Chapter 11 Cases.  The bases for seeking the relief sought in the First Day Motions is described in more detail below:

a.   **Joint Administration.**  The Debtors have filed a motion requesting entry of an order directing the joint administration of the Debtors' Chapter 11 Cases for procedural purposes only.  I believe the joint administration of these Chapter 11 Cases will dispense with the need for duplicative notices, motions, applications, hearings, and orders and will save the Debtors and interested parties considerable time and expense.  I believe the relief requested in this motion is in the best interests of the Debtors, their estates, and their creditors, and it will make the Debtors' transition into chapter 11 smoother, less costly, and more orderly.

b.   **Motion to Pay Prepetition Employee Obligations**.  The Debtors have filed an emergency motion requesting the authority to pay certain pre-petition obligations due to the Debtors' employees.  The Debtors request authority pay the employees' prepetition wages and honor certain employee policies (for example, paid time off, health and welfare obligations, and retirement plan obligations).  The Debtors' next payroll date is July 16,

29

2021, and it is critical to the Debtors' ability to continue maintaining the Refinery and preserving estate assets that they pay their employees on that date. If the Debtors are not permitted to fulfill their obligations to employees, the employees will not receive full payment for services that have already been performed. I believe such a result would undermine the morale and loyalty of the Debtors' workforce, and substantially jeopardize the Debtors' bankruptcy efforts. I believe that the relief requested in this motion is in the best interests of the Debtors, their estates, and their creditors.

c.  **Motion to Continue Use of Cash Management System**. The Debtors have filed an emergency motion requesting that the Court authorize the Debtors to continue using their prepetition cash management system, including existing bank accounts and business forms. The motion also requests the authority to continue certain intercompany arrangements and historical practices. The Debtors maintain a cash management system in the ordinary course of the Debtors' businesses. This system allows the Debtors to identify the Debtors' cash requirements, transfer cash as needed, forecast cash needs, maintain accounting records, and pay necessary expenses. I believe that discontinuing the use of the Debtors' existing cash management system would require a significant amount of time and effort and could negatively impact the Debtors' ability to efficiently fund necessary expenses and preserve assets of the estates. These negative results would ultimately adversely affect the Debtors' ability to maximize the value of their estates for the benefit of all interested parties. I believe that the relief requested in this motion is in the best interests of the Debtors, their estates, and their creditors.

d.  **Utilities**. The Debtors have filed an emergency motion requesting that the Court determine that the Debtors have provided adequate assurance of payment for certain utility services and preclude these utility providers from altering, refusing, or discontinuing utility services. The monthly average cost of these utility services combined is approximately $402,533.00. In my opinion, the continuity of these utility services is essential for the Debtors' to preserve and prevent damage to the value of the Debtors' estates. I believe a deposit payable to each utility provider in an amount equal to the Debtors' monthly average utility bill is appropriate adequate assurance of payment for these utility services. I believe that the relief requested in this motion is in the best interests of the Debtors, their estates, and their creditors.

e.  **Claims Agent**. The Debtors have filed an emergency motion requesting that the Court approve the Debtors' retention of BMC Group, Inc., as a claims and noticing agent. I believe the retention of a claims and noticing agent is necessary primarily to (i) handle the significant burden of noticing interested parties, including the Debtors' former customers and (ii) handle the potentially voluminous proofs of claim filed in these Chapter 11 Cases.

30

I believe that the relief requested in this motion is in the best interests of the Debtors, their estates, and their creditors.

f.   **Lease Rejection.**  The Debtors have filed a motion requesting authority to reject a lease for certain non-residential real property located at 842 West Sam Houston Parkway North, Houston, Texas 77024 (the "**Houston Property**").  Due to the indefinite suspension of Refinery operations, the Debtors no longer require and, indeed, on or about July 1, 2021, vacated the Houston Property.  Accordingly, the Debtors seek authority to reject the lease for the Houston Property effective as of the Petition Date.  I believe that the relief requested in the Lease Rejection Motion is in the best interests of the Debtors, their estates, and their creditors.

g.   **Debtor in Possession Financing/Cash Collateral**.  As detailed below, the Debtors require immediate access to funding to preserve the assets of the estates for the benefit of creditors and ensure the protection of the communities neighboring the Refinery through the responsible idling of the facility.  The debtor in possession facility (the "**DIP Facility**") provides the Debtors with initial availability of $5.5 million upon entry of an Interim DIP Order (attached to the DIP Motion), with a committed financing facility up to $25 million, to be considered at the Final Hearing (as defined in the DIP Motion), under the Credit Agreement (defined below).  The proposed DIP Lenders (defined below) have no affiliation or financing history with these Debtors.  The DIP Facility includes liens that prime prepetition liens, and provide the holders of the prepetition liens with adequate protection.  The terms of the DIP Facility are described in more detail, below, and in the DIP Motion.  For the reasons stated therein, I believe that the relief requested in the DIP Motion is in the best interests of the Debtors, their estates, and their creditors.

## B.   The Terms of the DIP Facility

69.   The DIP Motion requests authority for the Debtors to enter into that certain *Senior Secured Superpriority Debtor-In-Possession Credit Agreement* (the "**Credit Agreement**"), a copy of which is attached as an exhibit to the DIP Motion, between (i) LBR, as borrower, (ii) LBS, LBRH, LBRH II, LBRO, and LBRM, jointly, as guarantors, (iii) 405 Sentinel LLC, as administrative agent (the "**DIP Agent**"), and (iv) various lenders who will provide funding thereunder (the "**DIP Lenders**").  The DIP Facility provides the Debtors with an interim amount of $5,500,000 (the "**Initial Availability**"), with a commitment of up to $25 million (the "**Additional Availability**"), in total, upon final agreement to applicable terms and Court approval

(the "**DIP Financing**").  While the Debtors have obtained a commitment for a total of $25,000,000 in financing, the conditions for such financing, particularly the DIP Lenders' request for priming liens for amounts in excess of $5,500,000, have not been finalized and are continuing to be discussed with the Debtors, the DIP Lenders, the Prepetition Lenders and their respective advisors.

70.     The DIP Motion also seeks authority to grant to the DIP Agent, for the benefit of the DIP Lenders, (i) allowed superpriority administrative claims pursuant to Section 364(c)(1) of the Bankruptcy Code, subject to the Carve-Out and the Aron Rights (as those terms are defined in the Interim DIP Order) in respect of all DIP Obligations (as that term is defined in the DIP Motion), (ii) valid, enforceable, non-avoidable and automatically perfected first priority liens pursuant to Section 364(c)(2) on all unencumbered assets of the Debtors, subject only to the Carve-Out, (iii) valid, enforceable, non-avoidable and automatically perfected junior liens pursuant to Section 364(c)(3) of the Bankruptcy Code on the Inventory Financing Collateral, subordinate and subject to the Aron Rights and subject to the Carve-Out, and (iv) priming liens pursuant to Section 364(d) of the Bankruptcy Code, on all encumbered DIP Collateral (as defined in the Credit Agreement), subject and junior to the Carve-Out, valid, perfected and non-avoidable liens in existence on the Petition Date and senior in priority to any of the Prepetition Secured Parties' (defined below) liens, and the Aron Rights.

71.     The DIP Motion also seeks authority to grant adequate protection to prepetition secured lenders whose collateral will be primed by the liens under the DIP Facility (collectively, the "**DIP Liens**"), among other terms more fully described in the DIP Motion.

72.     The Debtors have fully described in the DIP Motion all terms of the DIP Facility that address issues raised in Bankruptcy Rules 4001(b), (c) and (d), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "**Highlighted Provisions**"), all

4819-4445-7457.1

of which I believe are ordinary for debtor in possession financing obtained in a case such as this one, involving significant prepetition financing and a debtor in possession in the process of suspending the activities of its main business.

73.     I believe the process for soliciting and selecting the DIP Facility was fair, reasonable and designed to obtain financing on the most advantageous terms available, under the circumstances presented.  Over the past month, the Debtors contacted more than 50 lenders and financial institutions, including the Debtors' existing lenders, regarding extensions of existing credit arrangements, access to alternative and governmental funding sources, and the provision of distress or debtor in possession financing.  The Debtors received interest from five (5) potential debtor in possession lenders; however, only two (2) entities submitted proposals that provided sufficient funding on commercially reasonable terms.  Thereafter, the Debtors and the potential debtors in possession lenders negotiated the terms of the proposed facilities at arms' length through their respective representatives.  Ultimately, the Debtors selected the DIP Facility based on the conclusion that the DIP Facility provided the funding required on the most advantageous terms available.

74.     I believe immediate access to the DIP Financing is imperative.  The Debtors are in the midst of a liquidity crisis.  As of the Petition Date, the Debtors have approximately $3,479,722 cash on hand.  Aside from the proposed DIP Facility, the Debtors do not have access to funds for operational expenses through existing credit facilities, as such facilities are either fully drawn or the Debtors are unable to satisfy certain prerequisites to access additional funding.  Unless the DIP Facility is approved on an interim basis, the Debtors will be unable to meet certain immediate obligations, including, without limitation, the payment of more than $1.15 million in payroll on July 16, 2021.

4819-4445-7457.1

75. The DIP Facility is the product of arms-length, good faith negotiations between the Debtors, the DIP Agent, and the Prepetition Secured Parties. The DIP Agent is not an insider, affiliate, or control person of the Debtors, but is a third-party lender.

76. While the DIP Facility contains the Highlighted Provisions, the DIP Agent and DIP Lenders would not have agreed to provide financing without the inclusion of the Highlighted Provisions in the DIP Documents, and, based on the Debtors' extensive solicitation and marketing efforts, I do not believe that the Debtors would have been able to obtain similar financing without such Highlighted Provisions. Based on their sound business judgment, the Debtors have concluded that the DIP Facility is the best debtor in possession financing option available to the Debtors and serves the best interests of the estates and interested parties.

77. The proceeds from the proposed DIP Facility will be used for, among other things, making payments integral to the Debtors' business operations. Indeed, the liquidity to be provided under the DIP Facility, combined with access to Cash Collateral, will enable the Debtors to fund immediate expenses following the Petition Date and sustain efforts to winddown the Refinery during the interim period, which providing the liquidity necessary to preserve assets and pursue sale or restructuring transactions to maximize the value of the estates and their assets for the benefit of all stakeholders.

78. In addition to the funds available under the DIP Facility, the Debtors require immediate access to cash collateral to maintain operations and ensure the continued preservation of the Refinery. The Prepetition Secured Parties assert security interests in the Debtors' Bank Accounts. Accordingly, prior to the Petition Date, the Debtors and the Prepetition Secured Parties negotiated terms for the use of the Cash Collateral of the Prepetition Secured Parties, which agreement is memorialized in the provisions of the Budget and the Interim DIP Order, including a

reservation of rights with respect to any future requests to use Cash Collateral other than as expressly permitted under the DIP Orders.  In addition to the terms of the Budget, the Prepetition Secured Parties consented to the use of Cash Collateral subject to the following provisions, among others identified in the DIP Motion:

    a.  valid and automatically perfected priority replacement liens and security interests in and on all real and personal property of the Debtors and their bankruptcy estates, in each case, subject to the DIP Liens securing the DIP Financing in the same order and priority as existed prepetition;

    b.  monthly payments to reimburse the Prepetition Secured Parties' reasonable and documented professional fees;

    c.  (i) in the case of the Prepetition Term Lenders, in lieu of cash payments of interest when and as required under any of the Prepetition Secured Debt Documents, all accrued and unpaid interest shall, on each applicable date when such interest payments are due under such documents, be paid in kind by adding the amount of such accrued interest to the outstanding aggregate principal balance of the term loans, and (ii) in the case of the Revolver Lenders and J. Aron, monthly payments in cash of an amount equal to all interest (other than default interest) accrued under the Revolver Transaction Documents and J. Aron Transaction Documents, as applicable;

    d.  super priority administrative claims and all of the other benefits and protections allowable under section 507(b) of the Bankruptcy Code, with priority as provided therein, to the extent of any diminution in each Prepetition Secured Parties' respective Prepetition Collateral, and

    e.  an acknowledgement of the unconditional right to credit bid the prepetition obligations under each Prepetition Secured Parties' respective Prepetition Secured Debt Documents in connection with any sale of their respective Prepetition Collateral.

79.     Under the DIP Documents, the Debtors have agreed, subject to Court approval, to pay certain fees, expenses, and other payments to the DIP Secured Parties.  The Debtors have also agreed to pay the fees and expenses of counsel and certain other professionals retained by the Prepetition Secured Parties, as provided for in the DIP Documents.  The provisions regarding the payment of such fees and expenses were negotiated at arm's length through the parties' respective representatives.  Further, the Debtors considered the amounts of such fees when determining, in

35

their sound business judgment, that the DIP Facility constituted the best terms on which the Debtors could obtain the postpetition financing necessary to continue their operations and administer these Chapter 11 Cases.

80.     Under the DIP Documents, the Debtors have agreed to certain releases and exculpations for the DIP Agent and each DIP Lender (in any capacity) and the Prepetition Secured Parties, in form and substance satisfactory to such parties, respectively, including, without limitation, releases from any avoidance actions.  Prior to agreeing to such provisions, the Debtors investigated potential claims against the Prepetition Secured Parties, including, without limitation, an investigation regarding the liens asserted by such parties, the current balances of the debt and payment history for the obligations, and the prior dealings between the parties, in order to determine whether the Debtors may have claims against the Prepetition Secured Parties.  Based on the information obtained, it is my understanding that the Debtors do not have any claims against the Prepetition Secured Parties.  No investigation was conducted with respect to the DIP Agent and DIP Lender, as the Debtors have not had any prior dealings with these entities.

81.     Based on the Debtors' extensive marketing and soliciting efforts, and extensive negotiations over the past weeks with multiple potential lenders, I do not believe that financing with terms similar to those in the DIP Facility is available to the Debtors for lower fees or better terms overall.

82.     I believe that the Debtors may suffer immediate and irreparable harm if the Interim DIP Order approving the DIP Facility is not entered sooner than 14 days after service of the Motion and if the Debtors are not permitted to access the up to $5,500,000 of the DIP Facility prior to the Final Hearing (as defined in the DIP Motion) in order to, among other things, continue ongoing remediation and repairs to the Refinery, address any issues identified for remediation in the audits

under the EPA Order, pay employee wages and benefits, maintain the Refinery in operational condition to preserve the value of such assets, and fund expenses associated with the Chapter 11 Cases.  Such relief is necessary for the Debtors to preserve and maximize the value of assets of the estates and, therefore, to avoid immediate and irreparable harm and prejudice to the Debtors' estates and parties in interest.

### C.     Emergency First-Day Relief Requested

83.     With the exception of the Lease Rejection Motion, I believe that it is critical that the First Day Motions be heard as soon as practicable.  If such motions are not considered on an expedited basis, it could threaten the Debtors' ability to satisfy their obligations to, among others, employees, customers, suppliers, and governmental agencies—leading to immediate and irreparable harm to the Debtors' businesses.  Accordingly, I believe expedited consideration and approval of the emergency First Day Motions is vital to the continued viability of the Debtors and is in the best interest of all interested parties in these Chapter 11 Cases.

4819-4445-7457.1

I declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

Dated:  July 12, 2021  ___*/s/ Mark Shapiro*___

Mark Shapiro, CRO

4819-4445-7457.1

# **EXHIBIT A**

## **CORPORATE ORGANIZATION CHART**



*Not a debtor entity.

## **EXHIBIT B**

## **QUALIFICATIONS OF INDEPENDENT DIRECTOR**

**Steven J. Pully, CFA, CPA, Esq.**
**Biography  -  July 2021**
4564 Meadowood Road, Dallas Texas 75220
sjpully@yahoo.com
214 587-6133

Steve Pully serves on boards of public and private companies, he performs consulting and investment banking services for companies and investors, and he acts as an expert witness for legal disputes involving corporate governance and restructuring issues.  Among the notable transactions that Mr. Pully completed in the past few years was a series of financings for a private company, including raising almost $1.0 billion from Blackstone in 2016.  In 2017, Mr. Pully co-founded Speyside Partners, an investment banking firm with an affiliated broker-dealer that focuses on restructurings, financings and M&A.

Until September of 2014, Mr. Pully was a partner and the General Counsel of Carlson Capital, L.P., a multi-strategy hedge fund that managed $9.0 billion. Mr. Pully served on the Management, Operating and Valuation (Chair) Committees of Carlson Capital.  Prior to joining Carlson Capital in 2008, Mr. Pully spent six years as the President of Newcastle Capital Management, a  deep value activist fund that managed approximately $650 million.  While at Newcastle, he also served as the Chief Executive Officer of two operating companies, a manufacturing company after its emergence from bankruptcy that had over 600 employees, and a public company that was seeking to complete an acquisition.

Mr. Pully was a Senior Managing Director at Bear Stearns and a Managing Director at Bank of America Securities and also worked at Kidder Peabody and Wasserstein Perella.  He was involved in a broad variety of mergers and acquisitions, financings and restructurings during his time as an investment banker.  Prior to becoming an investment banker, Mr. Pully was a securities and corporate attorney at Baker Botts in Houston, Texas.

Mr. Pully has served on thirty boards of public and private companies, including companies in the oil and gas, technology, restaurant, power, entertainment, manufacturing, telecom, agricultural, retail and real estate sectors.  Over the past twenty-four months, Mr. Pully was added as an independent director of eight

different companies that were contemplating a restructuring or sale.  Mr. Pully's experience as an independent director is set forth in more detail in <u>Exhibit A</u> hereto.

Mr. Pully has chaired Audit, Comp, Governance and Special Committees on numerous occasions.  Mr. Pully is currently the chairman and chief executive officer of a company that completed seven asset sales over the past few years; he is also managing the company's wind-down process in Delaware.  He regularly speaks at conferences on board leadership and related topics.

Mr. Pully has served as an expert witness recently on several high-profile cases involving governance matters, claims against board members and restructuring matters.

Mr. Pully is licensed as an attorney and CPA in Texas and is a CFA Charterholder. He earned his undergraduate degree with honors in Accounting from Georgetown University and is also a graduate of The University of Texas School of Law.

Additional detail regarding Mr. Pully's background is set forth in his resume, which is attached as <u>Exhibit B</u> hereto.

Mr. Pully lives in Dallas and New York with his wife; he has two adult daughters.  He enjoys boating, biking and golf.

<u>Exhibit A</u>

**Steven J. Pully, CFA, CPA, Esq.**
**July 2021**


**<u>Recent Independent Director Experience On Behalf of Companies Engaged in a Restructuring or Bankruptcy</u>**

- Mid-size telecom company controlled by major private equity fund (completed)
- Oil field service equipment manufacturer with large secured lender that also owned significant equity (completed)
- Large hemp manufacturer with single secured lender and significant conflicts at board level (completed)
- Two different upstream oil and gas companies, each controlled by major private equity funds and management (completed)
- Emergency response company; sold to management (completed)
- Real estate management company (ongoing)


**<u>Issues Considered/ Tasks Undertaken In Connection With Recent Independent Board Roles</u>**

- ✓ Led selection of investment banks to conduct 363 sales processes
- ✓ Led selection of law firm to represent company during Chapter 11 process
- ✓ Selection of Chief Restructuring Officer/ financial advisor
- ✓ Managed investment bank conducting 363 sale process and marketing of DIP loan
- ✓ Sole member of restructuring committee; tasked with management of CRO and other professionals
- ✓ Audit Committee chairman; led investigation of company's auditors
- ✓ Provided key direction in analysis/review of restructuring alternatives
- ✓ Compensation Committee chairman, with responsibility for developing bonus and retention plans
- ✓ Investigation of potential lawsuits against company directors
- ✓ Review of personnel terminations and workforce reductions
- ✓ Approval of sponsor purchasing assets from debtor
- ✓ Approval of transfer of certain back-office functions to affiliate of sponsor
- ✓ Live testimony in bankruptcy court regarding sales process
- ✓ Preparation of report/investigation in advance of bankruptcy process

Exhibit B

# STEVEN J. PULLY
**4564 Meadowood Road, Dallas, Texas**
**(214) 587-6133**
**sjpully@yahoo.com**

---

### *Employment History*

---

| | |
|---|---|
| October 2014 – Present | **SPEYSIDE PARTNERS/INVESTMENT BANKER/CONSULTANT/BOARD DIRECTOR/CORPORATE EXECUTIVE**<br>• *Investment banker/consultant to companies, investors and creditors on matters including capital raising, distressed debt restructurings, asset dispositions, activist investing defense, strategic opportunities, and expert witness matters*<br>• *Chief Executive Officer and Chairman, Harvest Oil & Gas (post-reorg)* |
| January 2008 – Sept. 2014 | **CARLSON CAPITAL, L.P.,** General Counsel and Partner, Dallas, Texas<br>• *Responsible for legal affairs of hedge fund with over $9.0 B of AUM; worked closely with affiliated oil and gas private equity fund with $700 of AUM beginning in 2010*<br>• *Member of Management, Operating and Valuation Committees (Chair)* |
| Dec. 2001 – October 2007 | **NEWCASTLE CAPITAL MANAGEMENT, L.P.,** President, Dallas, Texas<br>• *Activist fund with $650 MM of assets under management*<br>• *Operating positions for portfolio companies: CEO of Pinnacle Frames, Jan. 2003 – June 2004 (largest domestic picture frame manufacturer with 600 employees; involved in multiple visits to Wal-Mart, visited China and identified new CEO for company); CEO of New Century Equity Holdings, June 2003 – Oct. 2007 (cash shell seeking to acquire business)* |
| May 2000 – Dec. 2001 | **BANC OF AMERICA SECURITIES**, Managing Director, Investment Banking  -  M&A/ Energy & Power Groups; Houston and Dallas, Texas |
| January 1997 – May 2000 | **BEAR STEARNS & CO. INC.,** Senior Managing Director  -  Investment Banking Department; Dallas, Texas |
| April 1996 – Dec. 1996 | **CONVERGENT ASSOCIATES, INC.,** President, Dallas, Texas.<br>• *Private equity firm that controlled three technology-oriented companies involved in travel, media and software; affiliated with EDS* |
| January 1996 - April 1996 | **WASSERSTEIN PERELLA & CO., INC.,** Vice President  -  Investment Banking Department; Dallas, Texas<br>• *Left after brief association because supervisor announced departure plans* |
| July 1989 - Dec. 1995 | **PAINEWEBBER INCORPORATED/ KIDDER, PEABODY & CO.,** First Vice President  -  Investment Banking Department; New York City and Houston, Texas |
| October 1985 - July 1989 | **BAKER & BOTTS, Attorneys,** Associate  –  Corporate Department; Houston, Texas |

---

### Board Experience

---

**Board Leadership**  -  Experience as Lead Director, Chairman of the Board, Executive Committee member and Chairman of Audit, Compensation, Governance and Strategic Committees

**Accounting/Finance**  -  CPA and CFA certifications, significant experience with financial statements and analysis, member of several audit committees including chair role

**Strategic Transactions/Capital Raising**  -  Substantial history with successful strategic transactions and efficient capital raising, including debt restructurings

**Governance/Activist Investing Expertise**  -  Extensive experience with shareholder governance and activist investing/defense; positive reputation with shareholders as a value creator

**Legal/Regulatory**  -  Licensed attorney, extensive experience managing legal/compliance department

#### Public Company Directorships

**Previous:** Bellatrix Exploration, Energy XXI (Chair – Comp and Strategic), EPL Oil & Gas Inc. (Lead Director, Chair - Comp), Ember Resources, Cano Petroleum, Goodrich Petroleum, Harvest Oil and Gas (Chairman of the Board, Chair – Audit), Peerless Systems (Chair – Audit), New Century Equity Holdings, MaxWorldwide, Geoworks Corporation, Pizza Inn (Chair – Governance), Titan Energy, VAALCO Energy (Chair – Governance, Comp), Whitehall Jewelers (Chairman)

#### Private Company Directorships

**Current:** Harvest Oil & Gas (Chairman of the Board and Chief Executive Officer, formerly public company), Karya Properties, PRIMEXX Energy, Limetree Bay Energy, Titan Energy, Heritage Power, Response Team 1, Wild Rivers

**Previous:** Fox & Hound, GenCanna Global, Pinnacle Frames & Accents, Aspire Holdings (Chair – Comp), PermianLide, Tribune Resources (Chair – Audit), PGi, Southland Royalty, Greylock Energy

---

### Professional Certifications, Education and Other Interests

---

**CHARTERED FINANCIAL ANALYST,** 2004 (Active member), **CERTIFIED PUBLIC ACCOUNTANT,** Texas, 1985 (Active member), **STATE BAR OF TEXAS,** 1985 (Active member), **FINRA** Series 7, 26, 63 and 79 (Current)

**The University of Texas School of Law, 1985**
International Law Journal, Moot Court, Board of Advocates

**Georgetown University, BSBA with honors, 1982, Major in accounting with 3.90 GPA in major**
President of Student Government Senate, National Model U.N. Team
**Centre for Management Studies, Oxford University, England**, **Summer 1981**

Sailing, golf, writing, biking and travel; married with two adult daughters

Board of Advisors, Georgetown McDonough School of Business, 2015 - 2018

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| IN RE: | CHAPTER 11 |
| LIMETREE BAY SERVICES, LLC, *et al.*,[1] | CASE NO.: 21-32351 |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) APPROVING ADEQUATE PROTECTION TO PRE-PETITION SECURED CREDITORS, (V) MODIFYING <u>THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING</u>**

Emergency relief has been requested. A hearing will be conducted on this matter on July 13, 2021, at 3:00 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk St., Houston, Texas 77002. You may participate in the hearing either in person or by audio/video connection.

Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691.

You may view video via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "JudgeJones" in the GoToMeeting app or click the link on Judge Jones's home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.

Hearing appearances must be made electronically in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu. Select "Judges' Procedures," then "View Home Page" for Judge Jones. Under "Electronic Appearance" select "Click here to submit Electronic Appearance". Select the case name, complete the required fields and click "Submit" to complete your appearance.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must either appear at the hearing or file a written response prior to the hearing. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **Relief is requested not later than July 13, 2021.**

Limetree Bay Services, LLC ("**Limetree**") and its debtor affiliates (together with Limetree, the "**Debtors**"), as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**"), represent as follows in support of this motion (the "**Motion**"):

<div align="center"><b><u>Jurisdiction and Venue</u></b></div>

1.      This United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue of the Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      This Court has constitutional authority to enter final orders with respect to the relief requested herein. The Debtors further confirm their consent to this Court's entry of final orders or judgments on this Motion, if it is later determined that, in the absence of the consent of the parties, this Court does not have constitutional authority to enter final orders or judgments.

<div align="center"><b><u>Relief Requested</u></b></div>

3.      Pursuant to sections 105(a), 361, 362, 363, 364, 503, 506(c), 507 and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004 and 9014 of the Federal Rule of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1, 4001-1(b), 5005-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Local Rules**"), the Debtors seek entry of an interim order, substantially in the form attached hereto (the "**Interim DIP Order**"), and, subsequently, a final order to be

<div align="center">2</div>

proposed granting the relief requested herein on a final basis (the "**Final DIP Order**" and, together with the Interim DIP Order, the "**DIP Orders**"), providing as follows:

a.      authorizing the Debtors to obtain postpetition financing in an aggregate principal amount of up to $5.5 million on an interim basis (the "**DIP Financing**" or "**DIP Facility**"), with a committed financing facility up to $25 million proposed by the Debtors to be considered at a subsequent hearing, pursuant to that certain Senior Secured Superpriority Debtor-In-Possession Credit Agreement  attached hereto as **Exhibit A** (the "DIP Credit Agreement"), and such other agreements, documents, certificates and instruments delivered or executed from time to time in connection therewith, including the agreements related to the DIP Financing, (the "**DIP Loan Documents**"), among the Debtor Limetree Bay Refining, LLC, as borrower ("**LBR**" or the "**Borrower**"), Debtors Limetree Bay Services, LLC., Limetree Bay Refining Holdings, LLC, Limetree Bay Refining Holdings II, LLC ("**LBRHII**"), Limetree Bay Refining Operating, LLC ("**LBRO**"), and Limetree Bay Refining Marketing, LLC ("**LBRM**" and each a "**Guarantor**" and together the "**Guarantors**"), 405 Sentinel, LLC, and the financial institutions from time to time parties thereto as lenders (each individually a "**DIP Lender**," and collectively, the "**DIP Lenders**"), and 405 Sentinel, LLC, as administrative and collateral agent for the DIP Lenders (the "**DIP Agent**" together with the DIP Lenders, the "**DIP Secured Parties**");

b.      authorizing the Debtors to use the DIP Lenders' and the Prepetition Secured Parties' (as defined below) (x) "cash collateral," as such term is defined in Section 363 of the Bankruptcy Code, other than, until such time as the Discharge of Inventory Financing Obligations (as defined in the A&R Depositary and Intercreditor Agreement) occurs, any such "cash collateral" that constitutes Inventory Financing Collateral (as defined below) and (y) until such time as the Discharge of Inventory Financing Obligations (as defined in the A&R Depositary and Intercreditor Agreement) occurs, "cash collateral," as such term is defined in Section 363 of the Bankruptcy Code that constitutes Inventory Financing Collateral, solely to the extent that the same is (A) cash or amounts on deposit in or credited to any deposit account or securities account or (B) proceeds of accounts receivable in respect of propane sales contemplated to be received by the Debtors pursuant to the Approved Budget (as defined below) in an aggregate amount not to exceed $1,000,000 (such "cash collateral" as described in this clause (y) and the foregoing clause (x), the "**Cash Collateral**")

c.      granting (y) to the DIP Agent for the benefit of the DIP Secured Parties the DIP Liens (as defined in the Interim DIP Order) on the DIP Collateral (as defined below) to secure all amounts owed under the DIP Loan Documents (the "**DIP Obligations**"), and (z) to the DIP Secured Parties

3

the DIP Superpriority Claims (as defined below) in respect of the DIP Obligations, in each case subject to the terms and conditions hereof;

d.      approving certain stipulations by the Debtors with respect to the Prepetition Secured Documents (as defined below) and the liens and security interests arising therefrom;

e.      modifying the automatic stay to the extent provided for herein;

f.      granting adequate protection for the liens and security interests granted for the benefit of the Prepetition Secured Parties in connection with the prepetition agreements described in Paragraphs 14-30, below; and

g.      scheduling a final hearing (the "<u>Final Hearing</u>") to consider entry of a final order (the "<u>Final Order</u>") authorizing the relief requested in the Motion on a final basis, and approving the form of notice with respect to the Final Hearing, which order shall be in form and substance and on terms satisfactory in all respects to the DIP Secured Parties.

## **<u>Summary of Terms of DIP Facility and Use of Cash Collateral</u>**

4.      In accordance with Bankruptcy Rules 4001(b), (c) and (d), and the *Procedures for Complex Chapter 11 Cases in the Southern District of Texas* (the "**Complex Rules**"), the following is a concise statement and summary of the material terms of the proposed DIP Facility, as set forth in the DIP Documents and Interim DIP Order:[2]

| Bankruptcy Rule | Summary of Material Terms |
|---|---|
| **Parties**<br>*FED. R. BANKR. P. 4001(c)(1)(B)* | **Borrower**. Limetree Bay Refining, LLC, as a debtor and debtor-in-possession<br><br>**Guarantors.** Limetree Bay Services, LLC, Limetree Bay Refining Holdings, LLC, Limetree Bay Refining Holdings II, LLC, Limetree Bay Refining Operating, LLC, and Limetree Bay Refining Marketing, LLC<br><br>**DIP Agent**. 405 Sentinel, LLC<br><br>**DIP Lenders**. Such lenders from time to time who are parties thereto. |

---

[2] The summary of the DIP Documents and Interim DIP Order set forth herein is a summary of material terms; accordingly, certain terms of the DIP Documents and Interim DIP Order may be omitted, in whole or in part. Interested parties should read the DIP Documents and Interim DIP Order in their entirety.  In the event of any inconsistencies between this summary and the DIP Documents or Interim DIP Order, the DIP Documents or Interim DIP Order, as applicable, shall control.  If there are any inconsistencies between the DIP Documents and DIP Orders, the terms of the Interim DIP Order shall control until entry of the Final DIP Order, at which time the terms of the Final DIP Order shall govern, including in the event of any inconsistency between the Interim DIP Order and the Final DIP Order.  Unless otherwise states, capitalized terms used in this summary shall have the meanings ascribed to them in the Interim DIP Order, Final DIP Order, or DIP Documents, as applicable.

| | |
|---|---|
| | *See* Interim DIP Order Preamble; DIP Credit Agreement, p. 1. |
| **DIP Facility and Borrowing Limits** *FED. R. BANKR. P. 4001(c)(1)(B)* | The DIP Facility shall consist of a new money Term Loan Facility in the aggregate principal amount of up to $5.5 million on an interim basis (the "DIP Financing"), with a committed financing facility up to $25 million proposed by the Debtors to be considered at a subsequent hearing, pursuant to that certain Senior Secured Superpriority Debtor-In-Possession Credit Agreement.<br><br>*See* Interim DIP Order Preamble; DIP Credit Agreement at Section 2.01. |
| **Roll-Up** *FED. R. BANKR. P. 4001(c)(1)(B)* | N/A |
| **Interest Rate** *FED. R. BANKR. P. 4001(c)(1)(B)* | All obligations of the Debtors under the DIP Facility will bear cash interest at 3.00%, payable monthly in arrears, and monthly PIK interest at 9.00%. All interest and fees shall be computed on the basis of a year of 360 days for the actual days elapsed. In lieu of PIK interest, the Borrower may pay such interest in cash, subject to compliance with the Budget.<br><br>The default interest rate shall be at a rate of 11.00% per annum.<br><br>*See* DIP Credit Agreement at Sections 2.05 and 3.01. |
| **Term** *FED. R. BANKR. P. 4001(c)(1)(B)* | The DIP Facility shall be repaid in full at the earliest of:<br><br>(a)     the occurrence of the "Maturity Date" (as defined in the DIP Loan Documents) of the DIP Financing under the DIP Loan Documents;<br><br>(b)     acceleration of the obligations under the DIP Loan Documents upon the occurrence of an "Event of Default" under and as defined by the DIP Loan Documents;<br><br>(c)     nine (9) months following the entry of the Interim Order;<br><br>(d)     failure to obtain entry of the Final Order within 30 days from the entry of this Interim Order;<br><br>(e)     entry of an order authorizing the Borrower or any Guarantor to incur DIP financing from any party other than the DIP Secured Parties;<br><br>(f)     the closing date of a sale of all or substantially all of the Debtors' assets under section 363 of the Bankruptcy Code (whether in one transaction or a series of related or unrelated transactions) (a "**363 Sale**");<br><br>(g)     the effective date of a confirmed chapter 11 plan (a "**Plan**") that provides for indefeasible payment in full, in cash of all obligations owing under the DIP Loan Documents or is otherwise acceptable to the DIP Agent and the DIP Lenders in their sole discretion;<br><br>(h)     the failure by the Debtors to timely perform any of the material terms, provisions, conditions, covenants, or other obligations under this Interim Order;<br><br>(i)     the filing of a motion or other pleading requesting (or entry of an order approving) the appointment of a trustee, other estate fiduciary or an examiner with special/expanded powers which the Debtors fail to timely oppose without the prior written consent of the DIP Agent and the Prepetition Secured Parties;<br><br>(j)     an order converting any Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of the Chapter 11 Cases;<br><br>(k)     the filing or support by any Debtor of any plan of reorganization that (1) does not provide for indefeasible payment in full, in cash of all obligations owing under the DIP Loan Documents and (2) is not otherwise acceptable to DIP Agent and the DIP Lenders in their sole discretion;  and<br><br>(l)     any modifications, amendments, reversal, or extensions of this Interim |

| | |
|---|---|
| | Order that are adverse to the DIP Secured Parties or the Prepetition Secured Parties.<br><br>The Interim Dip Order also contains certain provisions that may terminate the Debtors' use of Cash Collateral.<br><br>*See* Interim DIP Order at Paragraph 15. |
| **DIP Facility Events of Default**<br>*FED. R. BANKR. P. 4001(c)(1)(B)* | The DIP Credit Agreement contains events of default that generally are usual and customary for debtor-in-possession financings of this type.<br><br>*See* Interim DIP Order at Paragraph 15; DIP Credit Agreement at Article VII. |
| **Liens and Priority Granted for New Credit**<br>*FED. R. BANKR. P. 4001(c)(1)(B)* | **DIP Liens.**  All obligations of the Borrower to the DIP Lenders and to the DIP Agent, including, without limitation, all principal and accrued interest, costs, fees and expenses or any exposure of a DIP Lender or any of its affiliates in respect of cash management incurred on behalf of the Borrower (collectively, the "DIP Obligations"), shall be secured, pursuant to Bankruptcy Code sections 361, 362, 364(c)(2), 364(c)(3) and 364(d), by a valid, binding, continuing, enforceable, fully-perfected, nonavoidable, automatically and properly perfected lien on, and security interest in all DIP Collateral (as defined in the Interim DIP Order and subject to the exclusions set forth therein), as of the Petition Date in the following priorities:<br><br>(i)   priming security interests in and liens on, pursuant to section 364(d) of the Bankruptcy Code, all prepetition and post-petition property of the Debtors' estates, subject to the Carve-Out and the Permitted Prior Liens,<br><br>(ii)   first priority security interests in and liens on, pursuant to section 364(c)(2) of the Bankruptcy Code, all unencumbered DIP Collateral, subject to the Carve-Out, including, subject to entry of the Final Order, solely to the extent that all other DIP Collateral is insufficient to satisfy the DIP Obligations secured by the DIP Liens, any Avoidance Proceeds (as defined in the Interim DIP Order), and<br><br>(iii)   junior priority security interests and liens on certain additional DIP Collateral, pursuant to section 364(c)(3) of the Bankruptcy Code, which liens are subject and subordinate to the Carve-Out and the Aron Rights as more fully described in the Interim DIP Order and below.<br><br>*See* Interim DIP Order at Paragraph 7; DIP Credit Agreement at Section 3.08. |
| **Superpriority Expense Claims for New Credit**<br>*FED. R. BANKR. P. 4001(c)(1)(B)(i)* | Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the Debtors with priority over any and all claims against the Debtors, now existing or hereafter arising, of any kind whatsoever (the "DIP Superpriority Claims") and shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof, subject only to (i) the Carve-Out and (ii) the Aron Rights.<br><br>In addition, the Term Administrative Agent (for the benefit of the Prepetition Term Lenders), the Revolving Administrative Agent (for the benefit of the Revolver Lenders), and J. Aron shall receive superpriority claims for diminution in value of their collateral.  *See* Interim DIP Order at Paragraphs 7, 9, Section M; DIP Credit Agreement at Section 3.08. |
| **Carve-Out**<br>*FED. R. BANKR. P. 4001(c)(1)(B)(i)* | The Interim DIP Order provides a "Carve Out" of certain statutory fees and allowed professional fees of bankruptcy professionals whose retention has been approved by the Court and provided for in the Budget.<br><br>*See* Interim DIP Order at Paragraph 5. |

| | |
|---|---|
| **Parties with an Interest in Cash Collateral** *FED. R. BANKR. P. 4001(c)(1)(B)(i)* | The following parties have an interest in Cash Collateral: <br><br> a. The DIP Lenders, <br><br> b. The DIP Prepetition Secured Parties. <br><br> *See* Interim DIP Order at Section J. |
| **Duration/Use of Cash Collateral** *FED. R. BANKR. P. 4001(b)(1)(B)(ii)* | **Cash Collateral**. Subject to the terms and conditions of the Interim DIP Order and DIP Credit Agreement, and in accordance with the Budget (as defined below), the Debtors may use Cash Collateral until the occurrence of the Cash Collateral Termination Date. <br><br> *See* Interim DIP Order at Paragraphs 1, 5, 16; DIP Credit Agreement at Section 7.01. |
| **Liens, Cash Payments, or Adequate Protection Provided for Use of Cash Collateral** *FED. R. BANKR. P. 4001(b)(1)(B)(iv) 4001(c)(1)(B)(ii)* | As adequate protection for any diminution of the Prepetition Collateral resulting from the subordination of their existing liens to the DIP Liens and the other relief granted in the Interim Order in favor of the DIP Secured Parties, the Debtors' use of Prepetition Collateral (including Cash Collateral), and/or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, and in exchange for the their consent to the priming of the their liens by the DIP Liens pursuant to the Interim Order, the Debtors grant the Prepetition Secured Parties adequate protection, including in the forms of replacement liens upon all real and personal property of the Debtors, monthly payments to reimburse the reasonable and documented professional fees of the Prepetition Secured Parties, payment of accrued interest in kind, superpriority administrative claims for the diminution in value of collateral, and payment of unpaid prepetition professional fees <br><br> *See* Interim DIP Order at Paragraph 9. |
| **DIP Budget** *FED. R. BANKR. P. 4001(c)(1)(B)* | The use of DIP Facility proceeds and Cash Collateral is subject to the Budget attached as **Exhibit B** to the Interim DIP Order, as amended from time to time. Any amendments or modifications to the Budget will require the consent of the DIP Lenders and the Prepetition Secured Parties, subject to the conditions set forth in paragraph 26 of the Interim DIP Order. <br><br> *See* Interim DIP Order at Paragraph 26, Section N. |
| **Conditions to Borrowing** *FED. R. BANKR. P. 4001(c)(1)(B)* | The DIP Documents include standard and customary conditions to borrowing, the satisfaction of which is a condition precedent to the obligations of each DIP Lender to provide the DIP Facility. <br><br> *See* DIP Credit Agreement at Article IV. |
| **Covenants** *FED. R. BANKR. P. 4001(c)(1)(B)* | The DIP Credit Agreement contains usual and customary affirmative and negative covenants for financings of this type. <br><br> *See* DIP Credit Agreement at Sections 6.01 and 6.02. |
| **Fees, Expenses, and Additional Payments** *FED. R. BANKR. P. 4001(c)(1)(B)* | **Delayed Draw Fee**: One and one-half percent (1.50%) of the undrawn amount of the DIP Loan Commitment, payable monthly in arrears. <br><br> **Deferred Commitment Fee**: (A) $110,000, which shall be fully earned and nonrefundable as of the Interim Closing Date, and paid on the earlier of (i) payment in full of the DIP Facility and (ii) the Termination Date; and (B) $390,000, which shall be fully earned and nonrefundable as of the Final Closing Date, and paid on the earlier of (i) payment in full of the DIP Facility and (ii) the Termination Date. <br><br> **DIP Agent Fee**: $62,500 which shall be fully earned and nonrefundable as of the Interim Closing Date, and paid on the Interim Closing Date. <br><br> **Break-Up Fee**: $250,000 in the event that alternative DIP financing is approved before entry of the Final Order with a lender other than the DIP Lenders, and in |

7

| | |
|---|---|
| | lieu of the Deferred Commitment Fee. |
| | **Fees and Expenses of DIP Agent and Prepetition Secured Parties:** Borrower shall promptly pay or reimburse DIP Agent and Prepetition Secured Parties when invoiced for all reasonable costs and expenses of the counsel (including, without limitation, local counsel) and financial advisors relating to the DIP Facility and the administration and interpretation of, and the enforcement of remedies under, the DIP Facility and including all due-diligence, including but not limited to printing costs, consultation, travel, and attendance at court hearings, regardless of whether the DIP Facility is consummated. Failure to pay such fees and expenses within ten days of delivery of the applicable invoice shall be an Event of Default under the DIP Facility. Additionally, in the event the DIP Facility is not consummated, Borrower shall pay any accrued fees and expenses of the DIP Agent within five business days of delivery of the applicable invoice. |
| | *See* Interim DIP Order at Paragraph 8, 38; DIP Credit Agreement at Section 3.02, 3.07. |
| **Prepayments**<br>*FED. R. BANKR. P. 4001(c)(1)(B)* | **Mandatory Prepayments**: Mandatory prepayments of the DIP Loans shall be required with 100.0% of the net cash proceeds exceeding the Threshold Amount (as defined below) from sales or other dispositions (including casualty events) of any Collateral (as defined below) (excluding sales or dispositions of the Inventory Financing Collateral (as defined in the A&R Depositary and Intercreditor Agreement) prior to the Discharge of Inventory Financing Obligations (as defined in A&R Depositary Agreement) and dispositions in the ordinary course of business subject to other exceptions to be agreed, provided that the Borrower shall be permitted to reinvest 50% of net cash proceeds from casualty and condemnation events so long as (x) such reinvestment is consummated on or prior to the DIP Facility Termination Date and (y) the aggregate principal amount of DIP Loans outstanding at such time of receipt shall be less than $5,500,000. Additionally, the incurrence of indebtedness not permitted by the DIP Loan Documents shall require mandatory prepayment of the net cash proceeds thereof in a customary manner to be agreed. "Threshold Amount" means $5,000,000 (individually) and $10,000,000 in the aggregate. |
| | **Voluntary Prepayments**: The Borrower may, upon at least 3 business days' notice prepay in full or in part without penalty or premium the DIP Loans; provided that each such partial prepayment shall be in a minimum aggregate amount to be agreed. |
| | *See* DIP Credit Agreement at Section 2.04. |
| **Terms of Use and Purposes for Use of DIP Proceeds and Cash Collateral**<br>*FED. R. BANKR. P. 4001(c)(1)(B) 4001(b)(1)(B)(ii)* | The Debtors are authorized to use proceeds of the DIP Financing in accordance with the Interim Order and the Approved Budget, subject to the Budget Variance. |
| | Proceeds of the DIP Facility may be used for payment of |
| | (i) interest, fees and expenses to the DIP Agent in accordance with the DIP Facility, |
| | (ii) post-petition operating expenses and other working capital and financing requirements of the Debtors, including provision of adequate protection measures to the Prepetition Secured Parties and pre-petition expenses whose payment is approved by the Court and is consistent with the Budget and the expenses of safely shutting down and preparing for sale the Debtors' assets; |
| | (iii) certain transaction and bankruptcy related fees, costs and expenses, (including the attorneys' fees and disbursements of counsel to the Debtors and Guarantors, and the professional fees and disbursements of other professional advisors of the Debtors and Guarantors), |

|  | (iv) the Carve-Out; |
|---|---|
|  | (v) Prepetition claims of critical vendors, only as approved by the Court; and |
|  | (vi) the fees, costs and expenses incurred by the DIP Agent and its professionals. |
|  | Proceeds of the DIP Collateral and the DIP Loans shall not be used: |
|  | (i) in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Secured Parties or their respective officers, directors, employees, agents, advisors and counsel, including with respect to any of the liens created in connection with the DIP Financing.  In addition, none of the proceeds of the DIP Collateral, the DIP Loans, or the Prepetition Collateral shall be used in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Prepetition Secured Parties or their respective officers, directors, employees, agents, advisors and counsel, including with respect to any of the liens created in connection with the Prepetition Secured Documents (provided that, notwithstanding anything to the contrary herein, the Committee may use proceeds of the DIP Financing and/or the DIP Collateral (including Cash Collateral) to investigate but not to prosecute (i) the claims and liens of the Prepetition Secured Parties, and (ii) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties up to an aggregate cap of $50,000 (the "Committee Investigation Budget")). |
|  | (iii) to make any Restricted Payments or Capital Expenditures, with certain exceptions. |
|  | *See* Interim DIP Order at Paragraph 3(b), 5; DIP Credit Agreement at Section 3.07, 6.02(g)(n). |
| **Waiver or Modification of the Automatic Stay** *FED. R. BANKR. P. 4001(c)(1)(B)(iv)* | Pursuant to the Interim DIP Order, the automatic stay provisions of section 362 of the Bankruptcy Code are modified to the extent necessary to implement and effectuate the terms of the Interim DIP Order. Upon entry of a final order, the stay is modified to allow J. Aron to set off and net any Margin (as defined in the J. Aron Monetization Master Agreement (as defined below)) in its possession against any obligations owed by the Debtors to J. Aron under the J. Aron Transaction Documents (as defined below). *See* Interim DIP Order at Paragraph 14. |
| **Stipulations of the Debtor** *FED. R. BANKR. P. 4001(b)(1)(B)(iii)* | The Debtors have stipulated to, among other things, the validity, enforceability, perfection, priority and amount, as applicable, of the claims, rights and liens of the Prepetition Secured Parties. *See* Interim DIP Order at Section F. |
| **Releases, Waivers, or Limitation on any Claim or Cause of Action** *FED. R. BANKR. P. 4001(c)(1)(B)(viii)* | DIP Secured Parties. The DIP Orders shall contain releases and exculpations for the DIP Agent and each DIP Lender (in any capacity) and the Prepetition Secured Parties, in form and substance satisfactory to such party, respectively, including, without limitation, releases from any avoidance actions. *See* Interim DIP Order at Section F. |
| **Effect of Stipulations and Releases; Challenge Period** *FED. R. BANKR. P. 4001(b)(1)(B)(iii), 4001(c)(1)(B)(iii), (viii)* | Paragraph 41 of the Interim DIP Order provides that the Stipulations and Releases contained in the Interim DIP Order are binding on the Debtors, their estates, any Committee, or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors and any other person acting on behalf of the Debtors' estates, under all circumstances and for all purposes, subject to certain modifications in paragraph 42, including but not limited to a sixty (60) day challenge period for |

| | any Committee and parties in interest (other than the Debtors and the DIP Lenders).<br><br>*See* Interim DIP Order at Section F, Paragraphs 5, 41 and 42. |
|---|---|
| **Waiver or Modification of Applicability of Non-Bankruptcy Law Relating to the Perfection or Enforcement of a Lien** *FED. R. BANKR. P. 4001(c)(1)(B)(vii)* | All DIP Liens and Adequate Protection Liens (each as defined in the Interim DIP Order) shall be valid and automatically perfected upon the entry of the Interim DIP Order.<br><br>*See* Interim DIP Order at Paragraph 7(c). |
| **Reporting Information** *FED. R. BANKR. P. 4001(c)(1)(B)* | Under the DIP Credit Agreement, the DIP Secured Parties and Prepetition Secured Parties shall receive customary financial reporting from the Debtors during the chapter 11 case.<br><br>*See* Interim DIP Order at Paragraph 12; DIP Credit Agreement at Section 6.03. |
| **Indemnification** *FED. R. BANKR. P. 4001(c)(1)(B)(ix)* | The Debtors shall indemnify and hold DIP Agent, and all DIP Lenders and their respective officers, directors, employees and agents (including all of their professionals) from claims of the sort that are typical in DIP facility indemnity provisions, except for gross negligence or willful misconduct, as described in more detail in the Interim DIP Order.<br><br>*See* DIP Credit Agreement at Sections 3.05, 10.02; Interim DIP Order at Paragraph 37. |
| **Section 506(c) and 552(b) Waivers** *FED. R. BANKR. P. 4001(c)(1)(B)* | Subject to entry of the Final Order, the Interim DIP Order provides that the DIP Lenders' liens will have priority over any claims arising under Section 506(c) and 552 (b) and such provisions are waived as to the Prepetition Secured Parties.<br><br>*See* Interim DIP Order at Paragraphs 35-36. |
| **Liens on Avoidance Actions** *FED. R. BANKR. P. 4001(c)(1)(B)(xi)* | The DIP Liens exclude any Avoidance Actions of the Debtors, but, subject to entry of the Final Order, including, solely to the extent that all other DIP Collateral is insufficient to satisfy the DIP Obligations secured by the DIP Liens, include any proceeds of, or property recovered in connection with, any successful Avoidance Action (whether by judgment, settlement or otherwise, and unencumbered or not). *See* Interim DIP Order at Paragraph 7. |
| **Milestones** *FED. R. BANKR. P. 4001(c)(1)(B)(vi)* | The Debtors shall have (i) prepared a contingency plan for the wind-down of the Debtors' operations in the event that a going concern sale is not achieved, which plan shall be reasonably acceptable to the Prepetition Secured Parties no later than July 28, 2021 at 12:00 noon prevailing Central Time, (ii) prepared a 13-week budget that is reasonably acceptable to the Prepetition Secured Parties no later than July 28, 2021 at 12:00 noon prevailing Central Time, (iii) filed with the Court a motion requesting approval of proposed bidding procedures that are reasonably acceptable to the Prepetition Secured Parties and that adhere to the milestones described in clauses (iv) and (v) below no later than ten (10) business days after the Petition Date, (iv) obtained, within sixty (60) calendar days after the Petition Date, a binding stalking horse bid for the sale of all or substantially all of the Debtors' assets which bid shall be reasonably acceptable to each Prepetition Secured Party, and (v) completed the closing of a sale of all or substantially all of the Debtors' assets that is reasonably acceptable to each Prepetition Secured Party, within one hundred twenty (120) calendar days after the Petition Date (collectively with (i) through (iv), the "Milestones"). |

**Statement Highlighting Certain Provisions per the Complex Rules**

5.      The DIP Orders contain certain provisions (the "**Highlighted Provisions**") listed in section J, paragraph 27 of the Complex Rules.  A summary of the Highlighted Provisions is set forth below:

a.   ***Sale or Plan Confirmation Milestones.***  The Interim DIP Order provides that the Debtors shall have (i) prepared a contingency plan for the wind-down of the Debtors' operations in the event that a going concern sale is not achieved, which plan shall be reasonably acceptable to the Prepetition Secured Parties no later than July 28, 2021 at 12:00 noon prevailing Central Time, (ii) prepared a 13-week budget that is reasonably acceptable to the Prepetition Secured Parties no later than July 28, 2021 at 12:00 noon prevailing Central Time, (iii) filed with the Court a motion requesting approval of proposed bidding procedures that are reasonably acceptable to the Prepetition Secured Parties and that adhere to the milestones described in clauses (iv) and (v) below no later than ten (10) business days after the Petition Date, (iv) obtained, within sixty (60) calendar days after the Petition Date, a binding stalking horse bid for the sale of all or substantially all of the Debtors' assets which bid shall be reasonably acceptable to each Prepetition Secured Party, and (v) completed the closing of a sale of all or substantially all of the Debtors' assets that is reasonably acceptable to each Prepetition Secured Party, within one hundred twenty (120) calendar days after the Petition Date (collectively with (i) through (iv), the "Milestones").

b.   ***Cross-collateralization.*** The Interim DIP Order does not provide for cross-collateralization.

c.   ***Roll-up or Requirement that Postpetition Loans be Used to Repay Prepetition Debt.***  The Interim DIP Order does not provide for roll-up, or that postpetition loans be used to repay prepetition debt.

d.   ***Liens on Avoidance Actions and Proceeds Thereof.*** The DIP Liens exclude any Avoidance Actions of the Debtors, but, subject to entry of the Final Order, including, solely to the extent that all other DIP Collateral is insufficient to satisfy the DIP Obligations secured by the DIP Liens, include any proceeds of, or property recovered in connection with, any successful Avoidance Action (whether by judgment, settlement or otherwise, and unencumbered or not). *See* Interim DIP Order at Paragraph 7.

e.   ***Default Provisions and Remedies.*** The DIP Facility includes certain usual and customary events of default and related remedies, and the use of Cash Collateral is subject to various usual and customary termination events. The Interim DIP Order provides for procedures concerning the Debtors', the DIP Secured Parties', and the Prepetition Secured Parties' respective rights in the event that a default or termination event occurs during the chapter 11 case.  *See* Interim DIP Order at Paragraph 15; DIP Credit Agreement at Article VII.

11

    f.   ***Release of Claims.*** The Interim DIP Order provides for the Debtor's release of, among other things, (i) prepetition claims and causes of action against the Prepetition Secured Parties, and (ii) claims and causes of action against the DIP Secured Parties and the Prepetition Secured Parties arising out of or related to the DIP Facility. *See* Interim DIP Order at Sections F, G, I. No insiders are being released under the Interim DIP Order. Releases with respect to the Prepetition Secured Parties are subject to a (60) day Challenge Period, subject to extension by the Court or by consent. *See* Interim DIP Order at Paragraph 42.

    g.   ***Limitations on the Use of Cash Collateral Other than General "Carve-Outs" to Pay Approved Fees and Expenses of Advisors to Official Committees or Future Trustees.*** The Debtors are authorized to use proceeds of the DIP Financing in accordance with the Interim Order and the Approved Budget, subject to the Budget Variance. Proceeds of the DIP Collateral and the DIP Loans shall not be used (i) in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Secured Parties or their respective officers, directors, employees, agents, advisors and counsel, including with respect to any of the liens created in connection with the DIP Financing. In addition, none of the proceeds of the DIP Collateral, the DIP Loans, or the Prepetition Collateral shall be used in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Prepetition Secured Parties or their respective officers, directors, employees, agents, advisors and counsel, including with respect to any of the liens created in connection with the Prepetition Secured Documents (provided that, notwithstanding anything to the contrary herein, the Committee may use proceeds of the DIP Financing and/or the DIP Collateral (including Cash Collateral) to investigate but not to prosecute (i) the claims and liens of the Prepetition Secured Parties, and (ii) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties up to an aggregate cap of $50,000 (the "Committee Investigation Budget")).

          Further, the Debtors may not make any Restricted Payments or Capital Expenditures, with certain exceptions. *See* Interim DIP Order at Paragraph 3(b), 5; DIP Credit Agreement at Section 3.07, 6.02(g)(n).

    h.

    i.   ***Priming Liens.*** The Interim DIP Order provides that the DIP Superpriority Liens granted thereunder shall, pursuant to section 364(d)(1) of the Bankruptcy Code, be subject to the Carve-Out and the Aron Rights (as defined therein), and certain other permitted prior liens. *See* Interim DIP Order at ¶ 6.

    j.   ***Limitations on the Ability of Estate Fiduciaries to Fulfill their Duties.*** There are no limitations on the ability of estate fiduciaries to fulfill their respective duties in the Interim DIP Order.

    6.    As discussed below, the Debtors require immediate access to funding to maintain or suspend existing operations at the facility in an economically and environmentally reasonable manner. The Debtors engaged in an extensive marketing and solicitation campaign to procure

debtor in possession financing on the most advantageous terms available.  While the DIP Facility contains the Highlighted Provisions, the DIP Secured Parties would not have agreed to provide financing, and the Prepetition Secured Parties would not have agreed to the use of Cash Collateral, without the inclusion of the Highlighted Provisions in the Interim DIP Order or the other DIP Documents.  Based on their sound business judgment, as determined by the Debtors independent manager, restructuring professional Steven J. Pully, the Debtors have concluded that the DIP Facility is the best debtor in possession financing option available to the Debtors and serves the best interests of the estates and interested parties.  Accordingly, the Debtors submit that the Highlighted Provisions are appropriate under the facts and circumstances of the Chapter 11 Cases and, thus, the DIP Facility, including the Highlighted Provisions, should be approved.

## **Background**

**A.     Chapter 11 Cases**

7.     On July 12, 2021 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code—thereby commencing the Chapter 11 Cases.  The Debtors continue to operate their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases, and no official committees have been appointed or designated.

8.     By separate motion submitted to the Court, the Debtors have sought entry of an order authorizing the joint administration of the Debtors' respective bankruptcy cases with the Limetree Bay Services, LLC case as the lead case, and granting permission to use a consolidated case caption, as detailed therein.

9.     A discussion of the facts and circumstances surrounding the Chapter 11 Cases and the relief requested herein is set forth in the *Declaration of Mark Shapiro in Support of Chapter*

4829-5574-6033.1

*11 Petitions and First Day Motions* (the "**First Day Declaration**"), which is being filed simultaneously with the Motion and incorporated herein by reference in its entirety.[3]

**B.       Summary of the Debtors' Prepetition Capital Structure**

   **1.   Debtors' Cash Management System**

        10.      The Debtors maintain a decentralized cash management system (the "**Cash Management System**"), which principally consists of twenty (20) bank accounts (collectively, the "**Bank Accounts**") maintained by Limetree Bay Refining, LLC ("**LBR**"), Limetree Bay Refining Marketing, LLC ("**LBRM**"), and Limetree Bay Refining Operating, LLC ("**LBRO**")[4] with Deutsche Bank Trust Company Americas ("**Deutsche Bank**") and Oriental Bank ("**Oriental Bank**" and, together with Deutsche Bank, the "**Depositors**").  A list of the Bank Accounts is attached hereto as **Exhibit B** and incorporated herein by reference.

        11.      The Cash Management System is maintained in accordance with the terms of (a) that certain Amended and Restated Depositary and Intercreditor Agreement, dated as of March 3, 2020 (as amended, amended and restated, waived, supplemented and/or modified from time to time, the "**A&R Depositary and Intercreditor Agreement**") between the LBR, LBRM, LBRO, LBRH II, the Prepetition Term Agent (as defined below), the Revolving Administrative Agent (as defined below), Goldman Sachs Bank USA ("**Goldman Sachs**") as collateral agent for the Project Secured Parties (as defined therein) (in such capacity, together with its successors and permitted assigns in such capacity, the "**Project Collateral Agent**"), J. Aron & Company LLC ("**J. Aron**"), and Deutsche Bank Trust Company Americas (the "**Depositary Agent**"), (b) that certain Deposit Account Control Agreement dated as of January 24, 2019 (the "**Oriental Bank**

---

[3] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the First Day Declaration.

[4] Limetree Bay Services, LLC ("**LBS**") maintains an account with Citibank (the "**LBS Account**").  The Debtors are not aware of any security interests in LBS Account.

DACA"), between LBR and LBRO as Grantors, the Bank of Nova Scotia (as predecessor to Oriental Bank ("**Oriental Bank**")) as Depositary Bank, and the Project Collateral Agent; (c) that certain Deposit Account Control Agreement dated as of March 3, 2020 (the "**J. Aron DACA**"), between LBRM as Grantor, Oriental Bank as Depositary Bank, and J. Aron as Secured Party; and (d) a certain deposit account control agreement with Citibank (the "**Citibank DACA**") as Depositary Bank, and LBRH II, as the Grantor, pertaining to an account of LBRH II, as specified therein, on deposit with Citibank.

12.     Under the terms of the A&R Depositary and Intercreditor Agreement, revenues from the Debtors' operations are deposited in revenue accounts with Deutsche Bank (collectively, the "**Revenue Accounts**") maintained by LBR and LBRM.  Following receipt of the revenues, funds are disbursed to operating accounts with Oriental Bank (collectively, the "**Operational Accounts**") maintained LBR and/or LBRM, from which LBR and LBRM pay operational expenses associated with the Refinery, either directly or through further distribution of revenues to affiliates in accordance with the provisions of the A&R Depositary and Intercreditor Agreement.

13.     As of the Petition Date, the Debtors currently have $3,479,722.90 of cash on hand, which amount is held in the Bank Accounts and LBS Account.  *See* **Exhibit B**.

**2.  Prepetition Secured Indebtedness.**

14.     The Debtors are parties to three (3) principal debt facilities and one (1) inventory arrangement inclusive of safe harbored forward contracts regarding Feedstock and Product (each as defined below) and a term loan in respect of certain catalysts owned by LBRM at the Refinery (collectively, the "**Prepetition Facilities**").  As of the Petition Date, the principal amount of the Debtors' obligations under the Prepetition Facilities total approximately $1.848 billion

(excluding interest, obligations under various hedging arrangements, letters of credit, and other charges), as summarized on a consolidated basis below:

| Obligations | Maturity | Principal Balance[5] |
|---|---|---|
| Prepetition Term Loan Credit Facility | Nov. 20, 2025 | $768,956,393 |
| Prepetition Revolving Credit Facility | Nov. 20, 2023 | $50,000,000 |
| Prepetition Holdco Credit Facility | Nov. 20, 2025 | $782,558,090 |
| J. Aron Transactions | N/A | $246,920,809[6] |
| Total Debt Obligations | | $1,848,435,292 |

15. Prepetition Term Loan Credit Facility. LBR, as borrower, LBRM and LBRO, as guarantors, and LBRH II, as pledgor (together with LBR, LBRM, and LBRO, in such capacities, the "**Prepetition Term Parties**"), each lender party thereto from time to time (the "**Prepetition Term Lenders**"), and Goldman Sachs, as administrative agent (in such capacity, the "**Prepetition Term Agent**") are parties to that certain Amended and Restated Credit Agreement, dated as of December 24, 2020 (as amended, amended and restated, waived, supplemented and/or modified from time to time, the "**Prepetition Term Credit Agreement**" and, together with the other loan documents defined therein, in each case, as amended, amended and restated,

---

[5] The Debtors will confirm and/or update these balances prior to, or at, the Hearing.

[6] Amount represents the Debtors' estimate of aggregate amounts owed to J. Aron as of the Petition Date in connection with the J. Aron Transaction Documents (as defined below), and is inclusive of (i) amounts owed under the J. Aron Financing Agreement in a principal amount not less than $24,968,754.95, and (ii) estimates of amounts that may be owed under the Safe Harbor Agreements (as defined below), which, as described in greater detail in Paragraph 24 below, cannot be determined at this time and may be higher or lower than what the Debtors' have estimated herein.

waived, supplemented and/or modified from time to time, the "**Prepetition Term Documents**"),

which provided for the issuance of a term loan, consisting of five (5) tranches, in the aggregate

principal amount of up to $900 million (the "**Prepetition Term Credit Facility**").

16.     As of the Petition Date, the LBR was indebted to the Prepetition Term Secured

Parties under the Prepetition Term Documents in the aggregate principal amount of not less than

$768.9 million on account of outstanding Advances (as defined in the Prepetition Term Credit

Agreement) (the "**Prepetition Term Loans**"), plus certain fees, expenses, and other Obligations

(as defined in the Prepetition Term Loan Credit Agreement) (collectively, the "**Prepetition**

**Term Obligations**").

17.     <u>Prepetition Revolving Credit Facility</u>.  LBRM, as borrower, LBR and LBRO, as

guarantors, and LBRH II, as holdings (together with LBR, LBRM, and LBRO, in such

capacities, the "**Revolver Borrower Parties**"), each lender party thereto from time to time (the

"**Revolver Lenders**"), and Goldman Sachs, as administrative agent (in such capacity, the

"**Revolving Administrative Agent**"), are parties to that certain Credit Agreement, dated as of

November 20, 2018 (as amended, amended and restated, waived, supplemented and/or modified

from time to time, the "**Revolver Credit Agreement**" and, together with the other loan

documents defined therein, in each case, as amended, amended and restated, waived,

supplemented and/or modified from time to time, the "**Revolver Transaction Documents**" and

collectively with the Prepetition Term Documents, the "**Prepetition Loan Documents**"), which

provided for the issuance of revolving loans and letters of credit in an aggregate amount not to

exceed $50 million (the "**Revolver Facility**").

18.     <u>Outstanding Revolver Secured Obligations</u>.  As of the Petition Date, the Debtors

were indebted and liable to Revolver Lenders, without objection, defense, counterclaim or offset

of any kind, in the aggregate amount of not less than $50,000,000, with respect to the Revolver

Transaction Documents, plus accrued (both before and after the Petition Date) and unpaid interest as specified therein, plus fees, expenses and all other obligations under the Revolver Transaction Documents, including attorneys', accountants', consultants', appraisers' and financial and other advisors' fees that are chargeable or reimbursable under the Revolver Transaction Documents.

19.     Security Agreement. Pursuant to the Security Agreement, dated as of November 20, 2018, between the LBR, LBRM and LBRO, as Grantors, and the Project Collateral Agent (as amended, amended and restated, waived, supplemented and/or modified from time to time, the "**Security Agreement**"), LBRO, LBRM, and LBR granted the Project Collateral Agent, for the benefit of the Prepetition Term Lenders, the Revolver Lenders, the Project Term Agent, the Revolving Administrative Agent and certain other "Secured Parties" specified therein (collectively, the "**Project Secured Parties**") liens (the "**Prepetition Debt Liens**") on certain property of the Debtors (the "**Prepetition Debt Collateral**") as more fully described in the Security Agreement.

20.     J. Aron Transaction Documents.   LBRM, LBR, LBRO (collectively, the "**Transaction Entities**") and J. Aron & Company LLC ("**J. Aron**"), made and entered into Transaction Documents (as defined in the J. Aron Monetization Master Agreement), each originally dated as of March 3, 2020, consisting of, among others (each as amended, amended and restated, supplemented and/or modified from time to time, collectively, the "**J. Aron Transaction Documents**"):

      a.   the Supply and Offtake Agreement and the Marketing and Sales Agreement  (the "**J. Aron Supply and Offtake Agreement**" and the "**J. Aron Marketing and Sales Agreement**", respectively), by and among LBRM and J. Aron, pursuant to which J. Aron agreed to purchase and sell crude oil, crude oil blends, fuel oil, naphtha, debutanized natural gasoline and certain other feedstocks (each as more fully defined in the J. Aron Monetization Master Agreement (as defined below), the "**Feedstock**"), and certain refined hydrocarbon products (each as more fully

defined in the J. Aron Monetization Master Agreement, the "**Product**") to LBRM (and LBRM agreed to purchase and sell Feedstock and Product from and to J. Aron, as applicable), and which also governed certain terms of purchases and sales of Feedstock and Product between J. Aron and third parties (including BP Products North America Inc. ("**BP**")), in each case, subject to additional terms and conditions set forth in the J. Aron Transaction Documents;

b.   the Monetization Master Agreement (the "**J. Aron Monetization Master Agreement**") by and among the Transaction Entities and J. Aron, setting forth the general transaction terms, covenants, events of default and certain termination provisions;

c.   the Financing Agreement (the "**J. Aron Financing Agreement**"), by and between LBRM and J. Aron, providing for a one-time term loan by J. Aron based on certain catalyst units that contain certain base metals and certain catalyst units that contain certain precious metals, which were, in each case, designed for use in refining or processing activities;

d.   the A&R Depositary and Intercreditor Agreement which sets forth the relative rights (including the respective collateral access and cooperation rights) of the Project Secured Parties, on the one hand, and J. Aron as the Inventory Financing Facility Agent and an Inventory Financing Secured Party (as such terms are defined in the A&R Depositary and Intercreditor Agreement), on the other.  No J. Aron Secured Obligations (as defined below) are secured by any LBR Collateral under and as defined in the A&R Depositary and Intercreditor Agreement;

e.   the Security Agreement ("**J. Aron Security Agreement**"), by and between LBRM as Grantor and J. Aron, as secured party, pursuant to which LBRM granted J. Aron a first-priority security interest in and continuing lien (the "**J. Aron Liens**") on the "Collateral" under and as defined in the J. Aron Security Agreement ("**Inventory Financing Collateral**" and collectively with the Prepetition Debt Collateral, the "**Prepetition Collateral**") which corresponds to the defined term "Inventory Financing Collateral" under and as defined in the A&R Depositary and Intercreditor Agreement.  Under the J. Aron Security Agreement and J. Aron Perfection Documents (as defined below), the Secured Obligations under and as defined in the J. Aron Security Agreement (the "**J. Aron Secured Obligations**") are secured by a perfected, first-priority security interest in and continuing lien on the Inventory Financing Collateral;

f.   that certain UCC financing statement (with LBRM as debtor and J. Aron as secured party) that was filed with the U.S. Virgin Islands Office of the Lieutenant Governor on March 5, 2020 (Filing No. 20200000134) and that certain UCC financing statement (with LBRM as debtor and J. Aron as secured party) that was filed with the Washington, D.C. Record of Deeds on March 4, 2020 (Filing No. 2020030037) (collectively, the "**J. Aron Financing Statements**" and, together with J. Aron DACA (as defined above) and the A&R Depositary and Intercreditor Agreement, collectively, the "**J. Aron Perfection Documents**");

4829-5574-6033.1

g. that certain Subordinated Guarantee, made by LBR and LBRO in favor of J. Aron, dated as of March 3, 2020 ("**Subordinated Guarantee**"), each of LBR and LBRO jointly and severally guaranteed LBRM's payment obligations under the J. Aron Transaction Documents as and when due ("**Guaranteed Obligations**"), subject to the terms of the "Terms of Subordination" under and as defined therein, which provide that, among other things, the Guaranteed Obligations are subordinated in right of payment to the prior payment in full in cash of all Secured Obligations under and as defined in the A&R Depositary and Intercreditor Agreement; and

h. additional agreements related to the supply, marketing, storage, the initial sale of Feedstock and Product by LBRM to J. Aron and other transactions contemplated by the J. Aron Supply and Offtake Agreement, the J. Aron Marketing and Sales Agreement, the J. Aron Financing Agreement and the J. Aron Monetization Master Agreement.

21.     J. Aron's IFF Property.   J. Aron owns all right, title and interest in the IFF Property (as defined in the A&R Depositary and Intercreditor Agreement), which consists of Feedstock and Product owned by J. Aron.  No Debtor has any right, title, or interest in the IFF Property, and accordingly, the IFF Property is not property of the estate under Section 541 of the Bankruptcy Code.

22.     J. Aron Termination.   On June 25, 2021 (the "**J. Aron Early Termination Date**"), as a result of certain events of default that had occurred and were continuing in respect of LBRM, LBR and LBRO, J. Aron properly and validly exercised its right pursuant to the J. Aron Transaction Documents of declaring an early termination date whereby, among other things, all commitments of J. Aron to provide any intermediation or to purchase or sell Feedstock or Products were terminated, all loans under the Financing Agreement became immediately due and payable and all of the obligations of the Transaction Entities under the J. Aron Transaction Documents (other than that certain Terminal Services Agreement (Included Locations), dated as of March 3, 2020, by and among LBT, LBRM and J. Aron) became due and payable on June 25, 2021.   As a result of such early termination, pursuant to the J. Aron Supply and Offtake

Agreement and as set forth in certain other of the J. Aron Transaction Documents, J. Aron has the right to liquidate and has commenced the liquidation of its own IFF Property.

23.     J. Aron Safe Harbor Agreements. (a) J. Aron is a "forward contract merchant" (as such term is defined in the Bankruptcy Code and used in Section 556 of the Bankruptcy Code) and each purchase and sale agreed to under the Safe Harbor Agreements (as defined in the J. Aron Monetization Master Agreement, collectively, the "Safe Harbor Agreements") constitutes a "forward contract" (as such term is defined in the Bankruptcy Code and used in Section 556 of the Bankruptcy Code); (b) J. Aron is a "master netting agreement participant" and each Safe Harbor Agreement constitutes a "master netting agreement" for all purposes as each such term is defined in sections 101(38A) and 101(38B) of the Bankruptcy Code and as used in Section 561 of the Bankruptcy Code; (c) J. Aron's, as the Non-Defaulting Party, right to liquidate, collect, net and set off rights and obligations under the Safe Harbor Agreements, and liquidate the Safe Harbor Agreements is not stayed, avoided, or otherwise limited by the Bankruptcy Code, including sections 362(a), 547, 548 or 553 thereof, and J. Aron is entitled to the rights, remedies and protections afforded by and under, among other sections, sections 362(b)(6), 362(b)(17), 362(b)(27), 546(e), 546(g), 546(j), 548(d), 553, 556, 560, 561 and 562 of the Bankruptcy Code.

24.     Outstanding J. Aron Obligations.  As of the Petition Date, the applicable Debtors were indebted to J. Aron, without objection, defense, counterclaim or offset of any kind, in an amount not less than $24,968,754.95 in principal amount of loans outstanding under the J. Aron Financing Agreement.  In addition, J. Aron has commenced the process of liquidating all IFF Property in accordance with the terms of the Safe Harbor Agreements and the J. Aron Monetization Master Agreement and, if J. Aron is unable to liquidate such IFF Property and/or incurs losses or costs as a result of such liquidation and termination of J. Aron's rights and obligations under the Safe Harbor Agreements (including any Forward Contract Settlement

21

Amount (as defined in the J. Aron Supply and Offtake Agreement)), the Debtors would be liable and owe to J. Aron, without objection, defense, counterclaim or offset of any kind, an aggregate amount of not less than such aggregate losses or costs, taking into account any gains, incurred or realized by J. Aron as a result of such liquidations and terminations with respect to the J. Aron Transaction Documents.  Given that the liquidation of J. Aron's IFF Property has only recently commenced, the S&O Settlement Amount (as defined in the J. Aron Supply and Offtake Agreement) cannot be determined at this time.  Further, under the J. Aron Transaction Documents, the applicable Debtors are also liable to and owe J. Aron accrued (both before and after the Petition Date) and unpaid interest, fees, expenses and all other obligations under the J. Aron Transaction Documents, including attorneys', accountants', consultants', appraisers' and financial and other advisors' fees that are chargeable or reimbursable under the J. Aron Transaction Documents, plus Make-Whole Amounts (as defined in the J. Aron Monetization Master Agreement).

25.     The Inventory Financing Collateral includes funds of those Debtors obligated under the terms of the Prepetition Loan Documents.  The Oriental Bank DACA purports to grant Goldman Sachs a security interest in certain accounts of LBR and LBRO on deposit with Oriental Bank, as identified in the Oriental Bank DACA.

26.     Similarly, LBRM, Oriental Bank, and J. Aron entered into the J. Aron DACA pursuant to the terms of the Monetization Master Agreement Documents.  The J. Aron DACA grants J. Aron a security interest in certain accounts of LBRM on deposit with Oriental Bank, as identified in the J. Aron DACA.

27.     <u>Mezzanine Financing</u>: LBRH II, as borrower, Limetree Bay Refining Holdings, LLC ("**LBRH**"), as pledgor (together with LBRH II, in such capacities, the "**Prepetition Holdco Loan Parties**"), each lender party thereto from time to time (the "**Prepetition Holdco**

Lenders"), and Wilmington Trust, National Association, as administrative agent and collateral agent (in such capacities, the "**Prepetition Holdco Agent**," and the Prepetition Holdco Agent together with the Prepetition Holdco Lenders, the "**Prepetition Holdco Loan Secured Parties**") are parties to that certain Credit Agreement, dated as of December 24, 2020 (as amended, amended and restated, waived, supplemented and/or modified from time to time, the "**Prepetition Holdco Credit Agreement**" and, together with the other Loan Documents (as defined in the Prepetition Holdco Credit Agreement), in each case, as amended, amended and restated, waived, supplemented and/or modified from time to time, the "**Prepetition Holdco Loan Documents**"), which provided for the issuance of certain mezzanine loans (the "**Prepetition Holdco Credit Facility**").  Pursuant to that certain Security Agreement, dated as of April 6, 2021 (as amended, amended and restated, waived, supplemented and/or modified from time to time, the "**Prepetition Holdco Security Agreement**") and that certain Pledge Agreement, dated as of February 22 2021, the obligations owed to the Prepetition Holdco Loan Secured Parties are secured by first priority Liens (as defined the Prepetition Holdco Credit Agreement) (the "**Prepetition Holdco Financing Liens**") on, and security interests in, all of the Collateral (as defined in the Prepetition Holdco Credit Agreement) (collectively, the "**Prepetition Holdco Financing Collateral**").

28.     As of the Petition Date, the Prepetition Holdco Loan Parties were indebted to the Prepetition Holdco Loan Secured Parties under the Prepetition Holdco Loan Documents in the aggregate principal amount of not less than $782,558,090 on account of outstanding Advances (as defined in the Prepetition Holdco Loan Credit Agreement) (the "**Prepetition Holdco Loans**"), plus certain fees, expenses, indemnification obligations, guarantee obligations, reimbursement obligations, including, without limitation, any attorneys', accountants', consultants', appraisers' and financial and other advisors' fees that are chargeable to or

reimbursable by the Prepetition Holdco Loan Parties, and all other Obligations (as defined in the Prepetition Holdco Loan Credit Agreement) (collectively, the "**Prepetition Holdco Loan Obligations**").

29.     <u>Subordinated Notes</u>.  In addition to the foregoing, the Debtors also borrowed funds via intercompany unsecured and subordinated loan transactions memorialized in certain subordinated promissory notes—classified in the Debtors' records as the Original LBV Subordinated Notes and Supplemental LBV Subordinated Notes (collectively, the "**LBV Subordinated Notes**").  Limetree Bay Ventures, LLC ("**LBV**") was the promisee and LBR was the borrower under the LBV Subordinated Notes.  In December 2020, the Prepetition Term Loan Lenders, LBV and the Debtors agreed to a consensual restructuring of certain of LBR's outstanding debt (the "**LBR Debt Restructuring**"), pursuant to which (a) approximately $402 million of LBV Subordinated Notes, and (b) approximately $349 million of then-outstanding mezzanine financing, were, in each case, assigned by LBR to LBRH II and evidenced under a separate loan agreement with Prepetition Holdco Agent.

30.     In or about April 2021, Limetree Bay Energy, LLC ("**LBE**") replaced LBV as the holding company for the Refinery Entities through the acquisition of LBV's interest in LBS and LBC II, as well as other assets and interests associated with the Refinery Entities, pursuant to the terms of that certain Share Transfer Agreement dated as of April 20, 2021 (the "**April 2021 Equity Restructuring**").

**<u>Solicitation of Debtor in Possession Financing Proposals</u>**

31.     Following an incident involving the aerosolized disbursement of hydrocarbons from a flare at the Refinery, the Debtors suspended operations at the Refinery on or about May 13, 2021, pending the completion of an investigation.  On May 14, 2021, the Environmental Protection Agency served the Debtors with an order alleging purported violations of the Clean

Air Act and requiring the Debtors to suspend operations at the Refinery for a period of 60 days and conduct an audit of regulatory compliance and operational capabilities.  Shortly after the suspension of operations, the Debtors commenced a process to evaluate potential restructuring options, including, without limitation, retaining a chief restructuring officer, appointing an independent manager, and engaging advisors to solicit proposals for traditional and debtors in possession financing.

32.     Over the following month, the Debtors contacted more than 50 lenders and financial institutions, including the Debtors' existing lenders, regarding extensions of existing credit arrangements, access to alternative and governmental funding sources, and the provision of distress or debtor in possession financing.  The Debtors received interest from five (5) potential debtor-in-possession lenders; however, only two (2) entities submitted proposals that provided sufficient funding on commercially reasonable terms.  Thereafter, the Debtors and the potential debtors-in-possession lenders negotiated the terms of the proposed facilities at arms' length through their respective representatives.  Ultimately, the Debtors selected the DIP Facility based on the conclusion that the DIP Facility provided the funding required on the most advantageous terms.

**<u>Liquidity Needs and Proposed DIP Facility</u>**

33.     The Debtors are in the midst of an extreme liquidity crisis.  As of the Petition Date, the Debtors have $3,479,722.90 cash on hand.  Aside from the proposed DIP Facility, the Debtors do not have access to funds for operational expenses through existing credit facilities as such facilities are either fully drawn or the Debtors are unable to satisfy certain prerequisites to access the funds.  Unless the DIP Facility is approved on an interim basis, the Debtors will be unable to meet certain immediate obligations, including, without limitation, the payment of $1,150,110.50 in payroll on July 16, 2021.

34.     The DIP Facility will provide the Debtors with a $5.5 million draw upon entry of the Interim DIP Order, with a committed financing facility up to $25 million proposed by the Debtors to be considered at a subsequent hearing, subject to the terms and conditions described herein, and set forth in the Credit Agreement and Interim DIP Order.

35.     The DIP Facility is the product of arms-length, good faith negotiations between the Debtors and the DIP Agent.  The DIP Agent is not an insider, affiliate, or control person of the Debtors, but is a third-party lender.

**Basis for Relief Requested**

36.     After evaluating available funding under existing facilities and a broad solicitation effort to obtain the most advantageous terms for debtor in possession financing, the Debtors have concluded, in the exercise of their sound business judgment, that the DIP Facility serves the best interests of the estates and creditors in the Chapter 11 Cases.  Accordingly, the Debtors request that the Court authorize the Debtors to enter into the DIP Documents and access and utilize the DIP Facility and advances thereunder as well as Cash Collateral (as defined below) in accordance with the initial form of budget attached to the Interim DIP Order as **Exhibit B**, as modified from time to time in accordance with the DIP Orders and the DIP Credit Agreement (the "**Budget**").

37.     The proceeds from the proposed DIP Facility will be used for, among other things, making payments integral to the Debtors' business operations. Indeed, the liquidity to be provided under the DIP Facility, combined with access to Cash Collateral, will enable the Debtors to (a) fund their operations during the course of this chapter 11 case, as well as an orderly suspension of activity at its refinery; (b) ensure that administrative costs, including Adequate Protection Obligations, are paid in full and value is preserved during the course of the

Debtors' Chapter 11 Cases; and (c) pursue sale or restructuring transactions that will help the Debtors maximize value for all of their stakeholders.

## A. The DIP Facility Satisfies Section 364 of the Bankruptcy Code and Represents a Sound Exercise of the Debtors' Business Judgment.

38.     The Debtors propose to obtain financing under the DIP Facility by providing the DIP Secured Parties with security interests, liens, and claims as set forth in the DIP Documents pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code.   Specifically, the Debtors propose to provide liens and superpriority administrative claims to the DIP Secured Parties as follows:

a.     **DIP Lender Superpriority Claim**.  Subject to the Carve-Out, the Aron Rights (as defined in the Interim DIP Order), and the payment priority provisions set forth in the Interim DIP Order, the Debtors seek to grant the DIP Secured Parties an allowed superpriority administrative expense claim, pursuant to sections 364(c)(1) and 364(e) of the Bankruptcy Code in each of the Chapter 11 Cases or any Successor Cases (the "DIP Superpriority Claims") on account of the DIP Obligations.   The DIP Superpriority Claims shall be payable from and have recourse to all pre- and postpetition property of the Debtors and their estates and all proceeds thereof, excluding Avoidance Actions (as defined below) but, subject to entry of the Final Order, including, solely to the extent that all other DIP Collateral is insufficient to satisfy the DIP Obligations, Avoidance Proceeds;

b.     **Priming Lien Pursuant to Section 364(d)(1)**.  The Debtors seek to grant to the DIP Secured Parties a first priority, priming security interest in and lien on, pursuant to section 364(d)(1), all encumbered DIP Collateral, which shall be senior to any existing liens or claims, including, but not limited to, the Prepetition Secured Parties Liens (as defined in the Interim DIP Order), and subject and junior only to (i) the Carve-Out, (ii) valid, perfected, and non-avoidable liens on property of a Debtor that are in existence on the Petition Date and are senior in priority to any of the Prepetition Secured Parties Liens, and (iii) the Aron Rights;

c.     **First Priority Lien on Unencumbered Property Pursuant to Section 364(c)(2)**. The Debtors seek to grant the DIP Secured Parties a first priority security interest in and lien on, pursuant to section 364(c)(2), all unencumbered DIP Collateral (the "Section 364(c)(2) Liens"), which Section 364(c)(2) Liens shall be subject only to the Carve-Out;

d.     **Junior Lien on Inventory Financing Collateral Pursuant to Section 364(c)(3)**. The Debtors seek to grant the DIP Secured Parties a valid, binding, continuing, enforceable, fully-perfected, nonavoidable, automatically and properly perfected junior lien on and security interest in all Inventory Financing Collateral, which lien

and security interest shall be subordinate and subject to the Aron Rights and subject to the Carve-Out;

e. **Junior Lien on Certain Encumbered Property Pursuant to Section 364(c)(3)**. The Debtors seek to grant the DIP Secured Parties a junior security interest in and lien on, pursuant to section 364(c)(3) of the Bankruptcy Code, all other DIP Collateral that is subject to a Permitted Prior Lien (as defined in the Interim DIP Order) (the "Section 364(c)(3) Liens,") which Section 364(c)(3) Liens also shall be subject to the Carve-Out;

**1. Obtaining the DIP Facility is a Sound Exercise of the Debtors' Business Judgment**

39.     Courts give debtors in possession considerable deference in acting in accordance with their sound business judgment in obtaining such credit. *See, e.g.*, *In re N. Bay Gen. Hosp., Inc.*, No. 08-20368 (Bankr. S.D. Tex. July 11, 2008) (approving postpetition-financing on an interim basis as an exercise of debtors' business judgment); *In re Republic Airways Holdings Inc.*, No. 16-10429 (SHL), 2016 WL 2616717, at *11 (Bankr. S.D.N.Y. May 4, 2016); *In re Los Angeles Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("Debtors correctly posit that courts will almost always defer to the business judgment of a debtor in the selection of a lender."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.").

40.     To determine whether the business judgment test is met, "the court 'is required to examine whether a reasonable business person would make a similar decision under similar circumstances.'" *In re Dura Auto. Sys. Inc.*, No. 06- 11202 (KJC), 2007 WL 7728109, at *97 (Bankr. D. Del. Aug. 15, 2007) (internal citations omitted); *see also In re Monitor Dynamics*, Inc., No. 10-51821, 2010 WL 4780371 (Bankr. W.D. Tex. June 11, 2010) (approving financing motion on interim basis as exercise of debtor's prudent business judgment).

41.     Here, the Debtors' decision to obtain debtor in possession financing under the terms of the DIP Facility is a sound exercise of their business judgment, as determined by their independent manager, seasoned business executive and restructuring professional, Steven J. Pully.  There is no question that the Debtors require the immediate infusion of liquidity provided under the DIP Facility; absent the relief requested, the Debtors could not maintain operations and ensure ongoing efforts to protect the health and safety of the surrounding community. Furthermore, the failure to approve the DIP Financing would substantially diminish the value of the Debtors' assets, including the Refinery.  Additionally, the DIP Facility was negotiated at arm's length, with each of the parties thereto utilizing disinterested counsel and advisors, and was approved by the Debtors' independent manager.  Finally, the terms of the DIP Facility are fair and reasonable.  The DIP Facility is "right sized" for the needs of the Debtors during the pendency of the Chapter 11 Cases.  Accordingly, the Court should authorize the Debtor's entry into the DIP Documents as a reasonable exercise of the Debtor's business judgment.

## 2.     The Debtors Should Be Authorized to Grant the DIP Liens on Encumbered and Unencumbered Property as well as the DIP Superpriority Claims

42.     Section 364(c) of the Bankruptcy Code provides:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt— [¶] (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title; [¶] (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or [¶] (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).  In evaluating whether a debtor has satisfied the requirements of Section 364(c) of the Bankruptcy Code, courts consider (a) whether the debtor made reasonable efforts to obtain unsecured credit under Sections 364(a) and 364(b) of the Bankruptcy Code, (b) whether the credit transaction benefits the debtor or are necessary to preserve estate assets, and (c) whether the terms of the credit transaction are fair, reasonable, and adequate, given the

29

circumstances of the debtor and proposed lender.  *See In re Republic Airways Holdings Inc.*, 2016 WL 2616717, at *11; *In re Los Angeles Dodgers LLC*, 457 B.R. at 312–13; *In re Beechgrove Redevelopment, L.L.C.*, Nos. 07-12057 and 07-12058, 2007 WL 4414777 (Bankr. E.D. La. Dec. 13, 2007); *In re Ames Dep't Stores, Inc.*, 115 B.R. at 40.

43.     Notwithstanding, Section 364 of the Bankruptcy Code "imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Bray v. Shenandoah Fed. Savs. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986).  A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by Section 364(c) of the Bankruptcy Code. *Id.*; *see also In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992); *In re Ames Dep't Stores*, 115 B.R. at 37–39 (debtor must show that it made reasonable efforts to seek other sources of financing under section 364(a) and (b)).  The Debtors have satisfied the requirements of Section 364(c) of the Bankruptcy Code and, thus, should be authorized to grant priming liens and superpriority claims provided under the DIP Facility.

44.     The DIP Facility is the result of a robust solicitation process and arms' length negotiations through qualified, disinterested representatives overseen by the Debtors' independent manager.  Following the suspension of operations at the Refinery, the Debtors commenced a process to evaluate potential restructuring options.  To that end, the Debtors retained a chief restructuring officer, appointed an independent manager, and engaged advisors to solicit proposals for traditional and debtors in possession financing.  All told, the Debtors contacted more than 50 potential financiers regarding extensions of existing credit arrangements, access to alternative and governmental funding sources, and the provision of distressed or debtor in possession financing.  Debtors received interest from five (5) potential financier; however, only two (2) entities submitted proposals that provided the funding required on commercially

reasonable terms.  Thereafter, Debtors and the potential debtors in possession lenders negotiated the terms of the proposed facilities at arms' length through their respective representatives. Ultimately, the Debtors accepted the terms of the DIP Facility, which provided the funding required on the most advantageous terms to the Debtors and their respective estates.

45.      Further, the DIP Facility is necessary to preserve the Debtors' estates and protect the health and safety of the communities surrounding the Refinery.  Subject to a recent Order of the U.S. Environmental Protection Agency, the Debtors have been engaged in a suspension of operations at their Refinery.  Approval of the DIP Facility will permit the Debtors to continue this process, and protect the health and safety of surrounding communities, as well as the interests of all parties to the Chapter 11 Cases.

46.      Based on the foregoing, the Debtors submit that the requirements of Section 364(c) of the Bankruptcy Code have been satisfied and, as such, the Court should authorize the Debtors to grant the DIP Secured Parties (i) superpriority administrative expenses status for the obligations under the DIP Facility as provided for in Section 364(c)(1) of the Bankruptcy Code and the DIP Orders, (ii) liens on the Debtors' unencumbered property pursuant to Section 364(c)(2) of the Bankruptcy Code and the DIP Orders, and (iii) junior liens on the Debtors' encumbered property pursuant to Section 364(c)(3) of the Bankruptcy Code and the DIP Orders.

**3.  Authorizing Debtors to Grant Priming Liens on Encumbered Assets is Appropriate**

47.      Authorization to grant the DIP Secured Parties "priming" liens on certain assets of the Debtors is necessary and appropriate under the circumstances presented.  Section 364(d)(1) of the Bankruptcy Code provides:

> The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if— [¶] (A) the trustee is unable to obtain such credit otherwise; and [¶] (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

31

11 U.S.C. § 364(d)(1). Under the DIP Facility, the Debtors propose granting the DIP Secured Parties the following priming liens on certain encumbered assets. As set forth herein, the Debtors were unable to obtain postpetition financing on more advantageous terms than governing the DIP Facility. More specifically, the Debtors engaged in an extensive marketing campaign in an effort to locate potential distressed or debtor in possession financing. *In re Republic Airways Holdings Inc.*, 2016 WL 2616717, at *11 ("Section 364(d) [of the Bankruptcy Code] 'does not require that debtors seek alternative financing from every possible lender. However, the debtor must make an effort to obtain credit without priming a senior lien.'"). While the Debtors received multiple proposals, the only proposals containing reasonable market terms required the Debtors to grant "priming" liens as a prerequisite to funding the debtor in possession facility.

48.     As set forth herein, the Prepetition Secured Parties have consented to the DIP Financing after extensive negotiation, in exchange for the bargained-for protections set forth in the Interim DIP Order (the "**Prepetiton Secured Party Protections**"), including both adequate protection and certain other protections set forth in the Interim DIP Order, absent each of which the Prepetition Secured Parties would not have consented to such DIP Financing, and subject to the reservation of rights contained in paragraph 43 of the Interim Order. To the extent that the DIP Financing implicates section 364(d)(1)(B) of the Bankruptcy Code, the Debtors submit that the interests of senior lenders are adequately protected under the DIP Facility by virtue of these Prepetition Secured Party Protections. *See Anchor Savs. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 122 (N.D. Ga. 1989) ("[B]y tacitly consenting to the superpriority lien, those [undersecured] creditors relieved the debtor of having to demonstrate that they were adequately protected.").

49.     Based on the foregoing, the Debtors submit that the requirements for granting priming liens for the benefit of the DIP Secured Parties pursuant to Section 364(d)(1) of the

Bankruptcy Code and, therefore, respectfully requests that the Court authorize the Debtors to grant such liens in accordance with the terms of the DIP Facility.

### 4.   Authorization to Pay Fees under the DIP Documents is Appropriate and Necessary

50.     Finally, under the DIP Documents, the Debtors have agreed, subject to Court approval, to pay certain fees, expenses, and other payments to the DIP Secured Parties.  The Debtors have also agreed to pay the fees and expenses of counsel and certain other professionals retained by the Prepetition Secured Parties, as provided for in the Interim DIP Order.  The provisions regarding the payment of such fees and expenses were negotiated at arm's length through the parties' respective representative and are integral conditions to the bargain struck between the Debtors, the DIP Lenders, and the relevant Prepetition Secured Parties.  Further, the Debtors considered the amounts described above when determining in their sound business judgment that the DIP Facility constituted the best terms on which the Debtors could obtain the post-petition financing necessary to continue their operations and administer the Chapter 11 Cases.  As set forth herein, no financing, let alone with terms similar to those in the DIP Facility, is available to the Debtors for lower fees or better terms overall.  Accordingly, the Debtors respectfully submits that the Court should authorize the Debtors to pay the fees and expenses provided for under the DIP Documents or Interim DIP Order in connection with the DIP Facility.

### B.   The DIP Secured Parties Constitute Good-Faith Lenders Under Section 364(e) of the Bankruptcy Code

51.     Section 364(e) of the Bankruptcy Code protects a good-faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal.  11 U.S.C. § 364(e).

52.     Here, the terms of the DIP Documents are the result of the Debtors' reasonable and informed determination that the DIP Secured Parties have offered the most favorable terms

under the circumstances. All negotiations of the DIP Facility were conducted in good faith and at arm's length. The proceeds of the DIP Facility will be used only for purposes that are permissible under the Bankruptcy Code, DIP Orders and the Budget, as amended or modified consistent with the foregoing. Accordingly, the Court should find that the DIP Secured Parties are "good faith" lenders within the meaning of section 364(e) of the Bankruptcy Code.

**C.    The Proposed Adequate Protection and Use of Cash Collateral should be Approved**

53.    Section 363(c)(1) of the Bankruptcy Code permits a debtor to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Section 363(c)(1) of the Bankruptcy Code provides a debtor flexibility to operate its business without unnecessary creditor or court oversight. *See In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (internal quotation omitted). A debtor may use, sell, or lease cash collateral if either: (a) each entity that has an interest in such collateral consents; or (b) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of Section 363 of the Bankruptcy Code. 11 U.S.C. § 363(c)(2).

54.    It is axiomatic that the continued availability of cash postpetition is essential to the ability of a debtor to effectively reorganize under chapter 11. As such, courts generally recognize that the use of cash collateral is appropriate where necessary to preserve a debtor's estate or ability to maintain operations and reorganize. *See, e.g., In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (stating that "the purpose of Chapter 11 is to rehabilitate debtors, and, generally, access to such cash collateral is necessary in order to operate a business") (internal citations omitted); *Chrysler Credit Corp. v. George Ruggiere Chrysler-Plymouth, Inc. (In re George Ruggiere Chrysler-Plymouth, Inc.)*, 727 F.2d 1017, 1020 (11th Cir. 1984)

34

(allowing debtor to use cash collateral over secured creditor's objection after noting that "[w]ithout the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated."); *Stein v. U.S. Farmers Home Admin. (In re Stein)*, 19 B.R. 458, 459 (Bankr. E.D. Pa. 1982) (granting cash collateral motion and noting that access to cash is imperative for a debtor to operate its business); *In re Constable Plaza Assocs.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991).

55.     In addition to the funds available under the DIP Facility, the Debtors require immediate access to cash collateral to maintain operations and ensure the continued preservation of the Refinery.  The Prepetition Secured Parties hold security interests in the Debtors' Bank Accounts.  Accordingly, prior to the Petition Date, the Debtors and the Prepetition Secured Parties negotiated terms for the use of the Cash Collateral of the Prepetition Secured Parties, which agreement is memorialized in the provisions of the Budget and the Interim DIP Order, including a reservation of rights with respect to any future requests to use Cash Collateral other than as expressly permitted under the DIP Orders.  In addition to the terms of the Budget and the DIP Orders, both of which were the subject of extensive negotiations, the Prepetition Secured Parties consented to the use of Cash Collateral subject to the following provisions:

a.     valid and automatically perfected priority replacement liens and security interests in and on all real and personal property of the Debtors and their bankruptcy estates, in each case, subject to the DIP Liens securing the DIP Financing in the same order and priority as existed prepetition;

b.     monthly payments to reimburse the Prepetition Secured Parties' reasonable and documented professional fees;

c.     (i) in the case of the Prepetition Term Lenders, in lieu of cash payments of interest when and as required under any of the Prepetition Secured Debt Documents, all accrued and unpaid interest shall, on each applicable date when such interest payments are due under such documents, be paid in kind by adding the amount of such accrued interest to the outstanding aggregate principal balance of the term loans, and (ii) in the case of the Revolver Lenders and J. Aron, monthly payments

35

in cash of an amount equal to all interest (other than default interest) accrued under the Revolver Transaction Documents and J. Aron Transaction Documents, as applicable;

d.      super priority administrative claims and all of the other benefits and protections allowable under section 507(b) of the Bankruptcy Code, with priority as provided therein, to the extent of any diminution in each Prepetition Secured Parties' respective Prepetition Collateral, and

e.      an acknowledgement of the unconditional right to credit bid the prepetition obligations under each Prepetition Secured Parties' respective Prepetition Secured Debt Documents in connection with any sale of their respective Prepetition Collateral.

56.      In addition, pursuant to the DIP Orders and the agreement of Prepetition Secured Parties, the Debtors' ability to use Cash Collateral is limited by the Budget.

57.      The Debtors submit that their continued use of their cash resources on an interim basis, including Cash Collateral, subject to the provisions of the Interim DIP Order and Budget, is reasonable and necessary, consistent with the Bankruptcy Code and applicable law, and serves the best interest of the Debtors' estates and all interest holders, including the Prepetition Secured Parties.  Therefore, the Debtors seek authority to continue to use their cash, including any Cash Collateral, on the terms of the Interim DIP Order and Budget.

**D.      Limited Modification of the Automatic Stay to Effectuate the DIP Documents is Necessary**

58.      The proposed Interim DIP Order provides that the automatic stay provisions of Section 362 of the Bankruptcy Code will be modified to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and the Interim DIP Order. Specifically, the Interim DIP Order provides that:

> The automatic stay provisions of section 362 of the Bankruptcy Code hereby are vacated and modified without the need for any further order of this Court to permit (a) the Debtors to grant the DIP Liens and the DIP Superpriority Claims, and to perform such acts as the DIP Agent may request to assure the perfection and priority of the DIP Liens; (b) the Debtors to grant the Prepetition Secured Parties' Adequate Protection Liens, and to perform such acts as the Prepetition Secured Parties may request to assure the perfection

36

and priority of the Prepetition Secured Parties' Adequate Protection Liens; (c) the Debtors to incur all liabilities and obligations, including all of (i) the DIP Obligations, to the DIP Secured Parties and (ii) the Adequate Protection Obligations to the Prepetition Secured Parties, in each case as contemplated under this Interim Order and the DIP Loan Documents; (d) the Debtors to pay all amounts referred to, required under, in accordance with, and subject to the DIP Loan Documents and this Interim Order, including any Adequate Protection Obligations; (e) the DIP Secured Parties to retain and apply payments made in accordance with the DIP Loan Documents and this Interim Order; (f) the DIP Agent, the DIP Lenders and the Prepetition Secured Parties to exercise the rights and remedies set forth in paragraph 17 hereof, upon the occurrence of a Termination Event (as defined below); (g) the Prepetition Secured Parties to exercise the rights and remedies under their respective Prepetition Secured Documents, as applicable, pursuant to paragraph 17(c) hereof; (h) without a determination that the automatic stay applies, but out of an abundance of caution, J. Aron to retain and apply amounts received from the liquidation of its IFF Property to obligations owed by the Debtors to J. Aron under the J. Aron Transaction Documents; (i) upon entry of a Final Order, J. Aron to set off and net any Margin (as defined in the J. Aron Monetization Master Agreement) in its possession against any obligations owed by the Debtors to J. Aron under the J. Aron Transaction Documents; (j) the Debtors to perform under the DIP Loan Documents and any and all other instruments, certificates, agreements and documents which may be required, necessary or prudent for the performance by the applicable Debtors under the DIP Loan Documents and any transactions contemplated therein or in this Interim Order; and (k) the implementation of all of the terms, rights, benefits, privileges, remedies, and provisions of this Interim Order and the DIP Loan Documents, in each case without further notice, motion or application to, or order of, or hearing before, this Court, subject to the terms of this Interim Order, except that to the extent any Prepetition Secured Party seeks to enforce its respective rights, benefits, privileges, remedies under, or provisions of, this Interim Order and the Prepetition Secured Documents against property of the Debtors' estates (other than any such rights, benefits, privileges, or remedies described in clauses (h) and (i)), such Prepetition Secured Party shall provide the Debtors with ten (10) days written notice prior to any such enforcement. The Debtors and DIP Lenders have consented to the exercise of rights, benefits, privileges, and remedies described in clauses (h) and (i). Nothing in this Interim Order shall impair or abridge the Debtors' right to seek and, if granted by the Bankruptcy Court, obtain the use of Cash Collateral on a nonconsensual basis, and the rights of the DIP Secured Parties, the holders of the Permitted Prior Liens and the Prepetition Secured Parties to object to such request are fully preserved.

Interim DIP Order at ¶ 14.

59.     Stay modifications of this kind are ordinary features of debtor in possession financing arrangements, and, indeed, are necessary to effectuate the terms and purposes of the

DIP Facility.  Accordingly, the Debtors request that the Court modify the automatic stay in accordance with the terms of the proposed Interim DIP Order.

**E.    Access to the DIP Facility on an Interim Basis is Necessary to Avoid Immediate and Irreparable Harm to the Debtors and Their Estates**

60.    Bankruptcy Rules 4001(b) and 4001(c) provide that a final hearing on a motion to obtain credit pursuant to Section 364 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion.  Upon request, however, the Court may conduct a preliminary, expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

61.    The Debtors request that the Court hold and conduct a hearing to consider entry of the Interim DIP Order authorizing the Debtor, from entry of the Interim DIP Order until the Final Hearing, to withdraw and borrow funds under the DIP Facility, subject to the Interim DIP Order and Budget.  The Debtors will suffer immediate and irreparable harm if the Interim DIP Order approving the DIP Facility is not entered sooner than 14 days after service of the Motion and if the Debtors are not permitted to access the up to $5,500,000 of the DIP Facility during the interim period.  The Debtors require access to the DIP Facility prior to the Final Hearing on the Motion and entry of the Final DIP Order approving the DIP Facility in order to, among other things, continue ongoing remediation and repairs to the Refinery, address any issues identified for remediation in the pending audits under the EPA Order, pay employee wages, maintain the Refinery in operational condition to preserve the value of such assets, and fund expenses associated with the Chapter 11 Cases.  Such relief is necessary for the Debtors to preserve and maximize the value of assets of the estates and, therefore, to avoid immediate and irreparable harm and prejudice to the Debtors' estates and parties in interest.

4829-5574-6033.1

**Request for Emergency Relief**

62.     As set forth herein and in the First Day Declaration, the Debtors have an immediate need to access the funds available under the DIP Facility and use existing Cash Collateral.  The DIP Facility is structured to provide immediate liquidity to the Debtors to fund imminent expenses essential to continued maintenance of the Refinery and preservation of the Debtors' assets for the benefit of all creditors, including, without limitation, funds necessary to pay employees on July 16, 2021.  Absent the relief sought in this Motion, the Debtors and their estates would suffer immediate and irreparable harm and, thus, the Debtors respectfully request that the Court approve the interim relief request in the Motion on an emergency basis.

**Request for Final Hearing**

63.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable, and fix the time and date prior to the Final Hearing for parties to file objections to this Motion.

**Reservation of Rights**

64.     Except to the extent provided in the Interim DIP Order and the DIP Documents, nothing contained herein is intended or should be construed as, or deemed to constitute, an agreement or admission as to the validity of any claim against the Debtors on any grounds, a waiver or impairment of the Debtors' rights to dispute any claim on any grounds, or an assumption or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  Except as expressly provided in the Interim DIP Order and the DIP Documents, the Debtors reserve any and all rights to contest any claims related to the DIP Facility under applicable bankruptcy and non-bankruptcy law.  Similarly, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended, and should not be

construed, as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## Compliance with Bankruptcy Rule 6004(a) and
## Waiver of Stay under Bankruptcy Rule 6004(h)

65.    To implement successfully the relief sought herein, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances presented.  The Debtors further request that, to the extent applicable to the relief requested in this Motion, the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As discussed, *supra*, the Debtors require immediate access to the funds under the DIP Facility.  Delaying the availability of such funds will result in immediate and irreparable harm, including, without limitation, the inability to pay employees as the Debtors transition into bankruptcy, which may have a catastrophic effect on the Debtors' ability to preserve assets of the estates and maximize the value of such assets for the benefit of creditors.  Accordingly, the Debtors respectfully submit that ample cause exists to justify the finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## Notice

66.    Notice of this Motion, whether by facsimile, electronic mail, or overnight courier, will be given to the following parties: (a) the United States Trustee for the Southern District of Texas; (b) all secured creditors; (c) the Offices of the Attorney General of the State of Texas and the United States Virgin Islands; (d) the thirty (30) largest consolidated unsecured creditors for the Debtors; (e) the Debtors' identified, interested taxing authorities, including the Internal

Revenue Service; (f) the Debtors' identified, interested government and regulatory entities; (g) other interested parties as identified by the Debtors; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. The method of service for each party will be described more fully in the certificate of service prepared by the Debtors' claims and noticing agent. The Debtors respectfully submit that, under the circumstances, such notice is sufficient and that no other or further notice of this Motion is required.

**WHEREFORE,** the Debtors respectfully request entry of the Proposed Interim Order granting the relief requested herein and for all other relief that is appropriate under the circumstances.

RESPECTFULLY SUBMITTED this 13th day of July, 2021.

41

**BAKER & HOSTETLER LLP**

/s/ Elizabeth A. Green
**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
**Jimmy D. Parrish, Esq.**
Fed. ID No. 2687598
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL  32801-3432
Telephone:  407.649.4000
Facsimile:   407.841.0168
Email:  egreen@bakerlaw.com
         jparrish@bakerlaw.com


**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone:  212.589.4200
Facsimile:  212.589.4201
Email: jrose@bakerlaw.com
*(Motion for admission pro hac vice to be filed)*

*Proposed Counsel for the Debtors and Debtors
in Possession*

### Certificate of Accuracy

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Elizabeth A. Green*
Elizabeth A. Green


### Certificate of Service

I certify that on July 13, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Elizabeth A. Green*
Elizabeth A. Green

4829-5574-6033.1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | CHAPTER 11 |
| LIMETREE BAY SERVICES, LLC, *et al.* [1] | CASE NO.: 21-32351 |
| Debtors. | (Joint Administration Requested) |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION SENIOR SECURED SUPERPRIORITY FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (the "Debtors") seeking entry of interim and final orders pursuant to sections 105, 361, 362, 363, 364 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 2002-1, 4001-1(b), 4002-1(i), and 9013-1 of the Bankruptcy Local Rules (the "Local Rules") for the United States Bankruptcy Court for the Southern District of Texas (the "Court"), and the Procedures for Complex Cases in the Southern District of Texas (the "Complex Rules"),[2]

(i)    authorizing the Debtors to (a) obtain postpetition financing up to an aggregate principal amount of up to $5.5 million on an interim basis (the "DIP Financing"), with a committed financing facility up to $25 million proposed by the Debtors to be considered at a subsequent hearing, pursuant to that certain Senior Secured Superpriority Debtor-In-Possession Credit Agreement attached hereto as **Exhibit A** (the "DIP Credit Agreement"), and such other agreements, documents, certificates and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or the DIP Credit Agreement (defined below) as applicable.

instruments delivered or executed from time to time in connection therewith, including the agreements related to the DIP Financing, (the "DIP Loan Documents"), among the Debtor Limetree Bay Refining, LLC, as borrower ("LBR" or the "Borrower"), Debtors Limetree Bay Services, LLC., Limetree Bay Refining Holdings, LLC, Limetree Bay Refining Holdings II, LLC ("LBRHII"), Limetree Bay Refining Operating, LLC ("LBRO"), and Limetree Bay Refining Marketing, LLC ("LBRM" and each a "Guarantor" and together the "Guarantors"), 405 Sentinel, LLC and the financial institutions from time to time parties thereto as lenders (each individually a "DIP Lender," and collectively, the "DIP Lenders"), and 405 Sentinel, LLC, as administrative and collateral agent for the DIP Lenders (the "DIP Agent" together with the DIP Lenders, the "DIP Secured Parties"); (b) authorizing the Debtors to use the DIP Lenders' and the Prepetition Secured Parties' (as defined in the Motion) (x) "cash collateral" as such term is defined in section 363 of the Bankruptcy Code other than, until such time as the Discharge of Inventory Financing Obligations (as defined in the A&R Depositary and Intercreditor Agreement defined below) occurs, any such "cash collateral" that constitutes Inventory Financing Collateral (as defined below) and (y) until such time as the Discharge of Inventory Financing Obligations (as defined in the A&R Depositary and Intercreditor Agreement defined below) occurs, "cash collateral" as such term is defined in section 363 of the Bankruptcy Code that constitutes Inventory Financing Collateral, solely to the extent that the same is (A) cash or amounts on deposit in or credited to any deposit account or securities account or (B) accounts receivable in respect of propane sales contemplated to be received by the Debtors pursuant to the Approved Budget (as defined below) in an aggregate amount not to exceed $1,000,000, in each case that constitutes Inventory Financing Collateral as of the Petition Date (such "cash collateral" as described in this clause (y) and the foregoing clause (x), the "Cash Collateral");

(ii)     granting (y) to the DIP Agent for the benefit of the DIP Secured Parties the DIP Liens on the DIP Collateral (as defined below) to secure all amounts owed under the DIP Loan Documents (the "DIP Obligations") on a first priority priming basis, except as otherwise set forth herein, and (z) to the DIP Secured Parties the DIP Superpriority Claims (as defined below) in respect of the DIP Obligations, in each case subject to the terms and conditions hereof;

(iii)    approving certain stipulations by the Debtors with respect to the Prepetition Secured Documents (as defined below) and the liens and security interests arising therefrom;

(iv)     modifying the automatic stay to the extent provided for herein;

(v)      granting adequate protection for the liens and security interests granted for the benefit of the Prepetition Secured Parties in connection with the prepetition agreements described in Paragraphs F and G, below; and

(vi)     scheduling a final hearing (the "Final Hearing") to consider entry of a final order (the "Final Order") authorizing the relief requested in the Motion on a final basis, and approving the form of notice with respect to the Final Hearing, which order shall be in form and substance and on terms satisfactory in all respects to the DIP Secured Parties.

The Court having considered the Motion, the DIP Loan Documents, and the Declaration of Mark Shapiro in support of the First Day Motions, the pleadings filed with the Court, and the evidence proffered and presented at the interim hearing held on July 13, 2021 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001 and 9014 and all applicable Local Rules and Complex Rules; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates and their creditors, represents a sound exercise of the Debtors' business judgment and is necessary for the continued operation of the Debtors' businesses; and upon the record of these Chapter 11 Cases; after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND, DETERMINED, ORDERED AND ADJUDGED:[3]**

A.     Filing Date.   On July 12, 2021 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court (these "Chapter 11 Cases").

B.     Jurisdiction; Venue.   The Court has exclusive jurisdiction to consider this matter pursuant to 28 U.S.C. §1334.   This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(D).  Venue of the Chapter 11 Cases and the Motion is proper under 28 U.S.C. §§ 1408 and 1409.   The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, and 507 of

---

[3]   Where appropriate in this Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

4841-7890-9425.1

the Bankruptcy Code; Bankruptcy Rules 2002, 4001, 6004, and 9014; and Local Rules 2002-1, 4001-1, 4002-2, and 9013-1.

C. <u>Committee Formation</u>. The Office of the United States Trustee (the "<u>U.S. Trustee</u>") has not yet appointed an official committee of unsecured creditors in these Chapter 11 Cases (if appointed, the "<u>Committee</u>"). No trustee or examiner has been appointed.

D. <u>Notice</u>. Due notice of the Interim Hearing and the Motion was afforded, whether by facsimile, electronic mail, overnight courier, or hand delivery, to parties in interest, including to: (a) the United States Trustee for the Southern District of Texas; (b) all secured creditors of record, including (as defined herein) the DIP Agent, the Revolving Administrative Agent, the Term Administrative Agent, J. Aron, and the Project Collateral Agent; (c) the Offices of the Attorney General of the State of Texas and the United States Virgin Islands; (d) the thirty (30) largest consolidated unsecured creditors for the Debtors; (e) the Debtors' identified, interested taxing authorities, including the Internal Revenue Service; (f) the Debtors' identified, interested government and regulatory entities; (g) other interested parties as identified by the Debtors; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. Under the circumstances, such notice of the Motion, the relief requested therein and the Interim Hearing complies with Bankruptcy Rules 4001 and 9014 and the Local Rules, and no other or further notice of the relief sought at the Interim Hearing was required.

E. <u>Debtors' Stipulations Regarding DIP Loan Documents and DIP Secured Parties</u>. In requesting the DIP Financing, upon entry of this order (the "<u>Interim Order</u>"), the Debtors acknowledge, represent, stipulate, and agree that:

(a)      none of the DIP Secured Parties are control persons or insiders (as defined in the Bankruptcy Code) of the Debtors by virtue of determining to make any loan, providing the DIP Financing or performing obligations under the DIP Loan Documents;

(b)      as of the date hereof, there exist no claims or causes of action against any of the DIP Secured Parties arising from, related to or connected with the DIP Loan Documents that may be asserted by the Debtors;

(c)      the Debtors forever and irrevocably release, discharge, and acquit the DIP Secured Parties and each of their respective officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "DIP Releasees"), in each case in their capacity as such, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened as of the date hereof including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, existing as of the date of this Interim Order, arising out of, in connection with, or relating to the DIP Financing, the DIP Loan Documents, the DIP Obligations, and ancillary documentation, guarantees, security documentation and collateral documents executed in support of the foregoing or the transactions contemplated hereunder or thereunder including, without limitation, (i) any avoidance, reduction, setoff, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), except as permitted herein, so-called "lender liability" claims,

counterclaims, cross-claims, recoupment, defenses, disallowance (whether equitable or otherwise), impairment, or any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation by any person or entity, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the DIP Secured Parties with respect to the DIP Loan Documents.

F.      Debtors' Stipulations Regarding Prepetition Secured Debt Obligations. Upon entry of the Interim Order, subject to paragraph 42, the Debtors acknowledge, represent, stipulate, and agree as follows and make the releases and waivers set forth below:

(a)      Prior to the Petition Date, pursuant to (i) the Prepetition Term Credit Agreement, the Prepetition Term Lenders extended credit to LBR in the form of term loans, (ii) the Revolver Credit Agreement, the Revolver Lenders extended credit to LBRM in the form of a revolving credit facility and (iii) the Prepetition HoldCo Credit Agreement, the Prepetition HoldCo Lenders[4] extended credit to LBRH in the form of term loans.  Pursuant to the Prepetition Term Credit Agreement, the obligations of LBR under the Prepetition Term Credit Agreement are unconditionally and irrevocably guaranteed on a joint and several basis by LBRO and LBRM. Pursuant to the Revolver Credit Agreement, the obligations of LBRM under the Revolver Credit Agreement are unconditionally and irrevocably guaranteed on a joint and several basis by LBRO and LBR.  As of the Petition Date, the obligors under the Prepetition Term Documents and Revolver Transaction Documents (such documents, the "Prepetition Secured Debt Documents" and such obligors, the "Prepetition Obligors") were truly and justly indebted to the Prepetition

---

[4] As used in this Interim Order, the term "Prepetition HoldCo Lenders" extends only to Prepetition Holdco Lenders to the extent they are, as of the date of this Interim Order, a Prepetition Term Lender or an affiliate of a Prepetition Term Lender.  The term specifically does not encompass insiders or affiliates of the Debtors, as such terms are defined in the Bankruptcy Code.

4841-7890-9425.1

Secured Parties pursuant to the Prepetition Secured Debt Documents, without defense, counterclaim, offset, claim, or cause of action of any kind, in the aggregate amount of not less than (i) $768,956,393 of outstanding principal with respect to term loans under the Prepetition Term Credit Agreement plus accrued and unpaid interest with respect thereto, fees, costs, and expenses (including any attorneys', financial advisors', and other professionals' fees and expenses that are chargeable or reimbursable under the Prepetition Term Credit Agreement) and all other "Obligations" (as defined in the Prepetition Term Credit Agreement or any security document related thereto) under the Prepetition Secured Debt Documents (the "Prepetition Term Obligations") and (ii) $50 million of outstanding principal under the Revolver Credit Agreement plus accrued and unpaid interest with respect thereto, fees, costs, and expenses (including any attorneys', financial advisors, and other professionals' fees and expenses that are chargeable or reimbursable under the Revolver Credit Agreement) under the Prepetition Secured Debt Documents and all other "Obligations" (as defined in the Revolver Credit Agreement or any security document related thereto) under the Prepetition Secured Debt Documents (the "Revolver Secured Obligations" and, together with the Prepetition Term Obligations, the "Prepetition Term and Revolver Debt Obligations"). As of the Petition Date, the obligors under the Prepetition Holdco Loan Documents (such obligors, the "Prepetition Holdco Loan Parties") were truly and justly indebted to the Prepetition Holdco Lenders pursuant to the Prepetition Holdco Loan Documents, without defense, counterclaim, offset, claim, or cause of action of any kind, for their share of an aggregate amount of not less than $782,558,090[5] of outstanding principal under the Prepetition Holdco Credit Agreement plus accrued and unpaid interest with respect thereto, fees,

---

[5]   This amount includes sums related to entities that are not Prepetition Holdco Lenders. The Debtors' acknowledgements, representations, stipulations, and agreements only extend to the share of such claims belonging to the Prepetition Holdco Lenders.

4841-7890-9425.1

costs, and expenses (including any attorneys', financial advisors, and other professionals' fees and expenses that are chargeable or reimbursable under the Prepetition Holdco Credit Agreement) under the Prepetition Holdco Loan Documents and all other "Obligations" (as defined in the Prepetition Holdco Credit Agreement or any security document related thereto) under the Prepetition Holdco Loan Documents (the "Prepetition Secured Holdco Debt Obligations" and, together with the Prepetition Term and Revolver Debt Obligations, the "Prepetition Secured Debt Obligations").

(b)     The Prepetition Secured Debt Obligations constitute legal, valid, and binding obligations of the Prepetition Obligors and the Prepetition Holdco Loan Parties.  No offsets, defenses, or counterclaims to, or claims or causes of action that could reduce the amount or priority of, the Prepetition Secured Debt Obligations exist.  No portion of the Prepetition Secured Debt Obligations is subject to set-off, avoidance, impairment, disallowance, recharacterization, reduction, subordination (whether equitable, contractual, or otherwise), counterclaims, recoupment, cross-claims, defenses, or any other challenges under or pursuant to the Bankruptcy Code or any other applicable domestic or foreign law or regulation by any person or entity.  The Prepetition Secured Debt Documents and the Prepetition Holdco Loan Documents are valid and enforceable by each of the Prepetition Term Lenders, Revolver Lenders (together with the Prepetition Term Lenders, the "Prepetition Secured Lenders") and Prepetition Holdco Lenders, as applicable against each of the Prepetition Obligors or the Prepetition Holdco Loan Parties, as applicable.  The Prepetition Secured Debt Obligations constitute allowed claims against the applicable Prepetition Obligors' and the Prepetition Holdco Loan Parties' estates.  As of the Petition Date, the Debtors or their estates have no claim or cause of action against any of the Prepetition Secured Parties, the Prepetition Holdco Loan Secured Parties or their respective agents,

in such capacities, whether arising under applicable state, federal, or foreign law (including, without limitation, any recharacterization, subordination, avoidance, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), or whether arising under or in connection with any of the Prepetition Secured Debt Documents (or the transactions contemplated thereunder), the Prepetition Holdco Financing Loan Documents (or the transactions contemplated thereunder), the Prepetition Secured Debt Obligations, the Prepetition Debt Liens (as defined below) or the Prepetition Holdco Financing Liens (as defined below).

(c)     Pursuant to and as more particularly described in the Prepetition Secured Debt Documents, the Prepetition Term and Revolver Debt Obligations and certain associated hedge obligations are secured by, among other things, first priority liens or mortgages on, security interests in, and assignments or pledges of (the "Prepetition Debt Liens"), (i) substantially all of the assets of the Borrower and the Guarantors, including, without limitation, certain cash collateral, and other "Collateral" as such term is defined in the Prepetition Secured Debt Documents, subject to certain exclusions including Inventory Financing Collateral, as defined in the A&R Depositary and Intercreditor Agreement, and (ii) the equity interests in the Borrower held by LBRHII  and all rights and benefits of LBRHII under the Amended and Restated Operating Agreement, dated as of November 20, 2018 (collectively, the "Prepetition Debt Collateral"). The Collateral Agency and Intercreditor Agreement, dated as of November 20, 2018, by and among LBR, LBRH, LBRO, LBRM, the Prepetition Term Agent, the Revolving Administrative Agent, and the Project Collateral Agent  (as defined in the A&R Depositary and Intercreditor Agreement (as defined herein)) (amended, amended and restated, supplemented and/or modified from time to time, the "Intercreditor Agreement") sets forth, among other things, the priority of the Revolver Lenders, Prepetition Term Lenders, and certain other parties in respect of the Prepetition Debt Collateral

and establishes that (a) prior to the Toll Coverage Threshold Date (as defined therein) (i) the priority of the lien of the Project Collateral Agent in respect of the Project Tolling Collateral (as defined therein) shall be the holders of the Prepetition Term Obligations, any Permitted Refinancing Facility (as defined in the Term Credit Agreement) in respect of the Term Credit Agreement and any Secured Interest Rate Hedge Agreement (as defined in the Term Credit Agreement) entered into in respect of each of the foregoing (the "Term and Associated Holders"),followed by the holders of the Revolver Secured Obligations, any Permitted Refinancing Facility (as defined in the Revolver Credit Agreement) in respect of the Revolver Credit Agreement and any Secured Interest Rate Hedge Agreement (as defined in the Revolver Credit Agreement) entered into in respect of each of the foregoing (the "Revolver and Associated Holders"), and (ii) the priority of the lien of the Project Collateral Agent in respect of all Prepetition Debt Collateral (other than the Project Tolling Collateral, the Account Collateral (as defined therein) and certain Cash Collateral Accounts (as defined therein)), which Prepetition Debt Collateral includes any equipment and fixtures (as those terms are defined in the Uniform Commercial Code as in effect in the State of New York) of the Debtors, shall be the Revolver and Associated Holders followed by the Term and Associated Holders and (b) the Revolver and Associated Holders and the Term and Associated Holders shall share the priority of the lien of the Project Collateral Agent in respect of the Account Collateral (other than the Debt Service Account (as defined therein) and the Account Collateral held therein and credit thereto) Equally and ratably (as defined in the Intercreditor Agreement).[6]  As of the date hereof, the Toll Coverage Threshold

---

[6] The description of the relative priorities of the Revolver Lenders, Prepetition Term Lenders, and certain other parties in respect of the Prepetition Debt Collateral set forth herein is qualified in its entirety by reference to the Intercreditor Agreement. In the event of any conflict between the description set forth herein and the terms of the Intercreditor Agreement, the Intercreditor Agreement shall govern. Nothing contained herein shall be construed or deemed to modify or amend the term of the Intercreditor Agreement.

4841-7890-9425.1

Date has not occurred.  Pursuant to and as more particularly described in the Prepetition Holdco Loan Documents, the Prepetition Secured Holdco Debt Obligations are secured by, among other things, first priority liens or mortgages on, security interests in, and assignments or pledges of (the "Prepetition Holdco Financing Liens") all of the Collateral (as defined in the Prepetition Holdco Credit Agreement) (the "Prepetition Holdco Financing Collateral").

> (d)     As of the Petition Date, the Prepetition Debt Liens and the Prepetition Holdco Financing Liens are (i) valid, binding, perfected, and enforceable liens on and security interests in the applicable Prepetition Debt Collateral and Prepetition Holdco Financing Collateral; and (ii) not subject to, pursuant to the Bankruptcy Code or other applicable law (foreign or domestic), avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual, or otherwise), attachment, offset, counterclaim, defense, "claim" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person or entity, and each Debtor irrevocably waives, for itself and its estate, any right to challenge or contest in any way the scope, extent, perfection, priority, validity, non-avoidability, and enforceability of the Prepetition Debt Liens or the Prepetition Holdco Financing Liens or the validity, enforceability, or priority of payment of the Prepetition Secured Debt Obligations, the Prepetition Secured Debt Documents and the Prepetition Holdco Loan Documents.   The Prepetition Debt Liens were granted to the respective Prepetition Lenders, and the Prepetition Holdco Financing Liens were granted to the Prepetition Holdco Lenders, for fair consideration and reasonably equivalent value, and were granted contemporaneously with the making of loans, commitments, and/or other financial accommodations under the Prepetition Secured Debt Documents or the Prepetition Holdco Loan Documents.

(e)     All of the Debtors' cash, including any cash in all deposit accounts and collection accounts, wherever located, comprising proceeds of or otherwise arising from or relating to the Prepetition Debt Collateral and, following the Discharge of Inventory Financing Obligations (as defined in the A&R Depositary and Intercreditor Agreement), of the Inventory Financing Collateral, constitutes Cash Collateral of the Prepetition Secured Parties.

(f)     None of the Prepetition Secured Parties or the Prepetition Holdco Loan Secured Parties[7] control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted, or are control persons or insiders (as defined in the Bankruptcy Code) of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Interim Order, the DIP Financing, the DIP Loan Documents, the Prepetition Secured Debt Documents or the Prepetition Holdco Loan Documents.

G.     <u>Stipulations Regarding J. Aron Transaction Documents and Inventory Financing Collateral</u>.  Upon entry of the Interim Order, subject to paragraph 42, the Debtors acknowledge, represent, stipulate, and agree as follows and make the releases and waivers set forth below:

(a)     <u>J. Aron Transaction Documents</u>.  LBRM, LBR, LBRO (collectively, the "<u>Transaction Entities</u>") and J. Aron & Company LLC ("<u>J. Aron</u>"), made and entered into Transaction Documents (as defined in the J. Aron Monetization Master Agreement), each originally dated as of March 3, 2020, consisting of, among others (each as amended, amended and restated, supplemented and/or modified from time to time, collectively, the "<u>J. Aron Transaction Documents</u>"):

---

[7] As used in this Interim Order, the term "Prepetition HoldCo Loan Secured Parties" extends only to Prepetition Holdco Loan Secured Parties to the extent they are, as of the date of this Interim Order, a Prepetition Term Lender or an affiliate of a Prepetition Term Lender.  The term specifically does not encompass insiders or affiliates of the Debtors as defined under the Bankruptcy Code.

4841-7890-9425.1

i.      the Supply and Offtake Agreement and the Marketing and Sales Agreement  (the "J. Aron Supply and Offtake Agreement" and the "J. Aron Marketing and Sales Agreement", respectively), by and among LBRM and J. Aron, pursuant to which J. Aron agreed to purchase and sell crude oil, crude oil blends, fuel oil, naphtha, debutanized natural gasoline and certain other feedstocks (each as more fully defined in the J. Aron Monetization Master Agreement (as defined below), the "Feedstock"), and certain refined hydrocarbon products (each as more fully defined in the J. Aron Monetization Master Agreement, the "Product") to LBRM (and LBRM agreed to purchase and sell Feedstock and Product from and to J. Aron, as applicable), and which also governed certain terms of purchases and sales of Feedstock and Product between J. Aron and third parties (including BP Products North America Inc. ("BP")), in each case, subject to additional terms and conditions set forth in the J. Aron Transaction Documents;

ii.      the Monetization Master Agreement (the "J. Aron Monetization Master Agreement") by and among the Transaction Entities and J. Aron, setting forth the general transaction terms, covenants, events of default and certain termination provisions;

iii.      the Financing Agreement (the "J. Aron Financing Agreement"), by and among LBRM and J. Aron, providing for a one-time term loan by J. Aron based on certain catalyst units that contain certain base metals and certain catalyst units that contain certain precious metals, which were, in each case, designed for use in refining or processing activities;

iv.      the Amended and Restated Depositary and Intercreditor Agreement, dated as of March 3, 2020, by and among LBR as Term Borrower, LBRM and LBRO as Term Guarantors, Goldman Sachs Bank USA as Term Administrative Agent, Revolving

13

Administrative Agent and Project Collateral Agent, J. Aron as Inventory Financing Facility Agent and Deutsche Bank Trust Company Americas as Depositary, as amended by that certain Amendment No. 1 to Amended and Restated Depositary and Intercreditor Agreement, dated as of March 10, 2021 ("A&R Depositary and Intercreditor Agreement"). The relative rights (including the respective collateral access and cooperation rights) of the Project Secured Parties, on the one hand, and J. Aron as the Inventory Financing Facility Agent and an Inventory Financing Secured Party (as such terms are defined in the A&R Depositary and Intercreditor Agreement), on the other, are set forth in the A&R Depositary and Intercreditor Agreement.   No J. Aron Secured Obligations (as defined below) are secured by any LBR Collateral under and as defined in the A&R Depositary and Intercreditor Agreement;

v.   the Security Agreement ("J. Aron Security Agreement"), by and between LBRM as Grantor and J. Aron, as secured party, pursuant to which LBRM granted J. Aron a first-priority security interest in and continuing lien (the "J. Aron Liens") on the "Collateral" under and as defined in the J. Aron Security Agreement ("Inventory Financing Collateral") which corresponds to the defined term "Inventory Financing Collateral" under and as defined in the A&R Depositary and Intercreditor Agreement.   Under the J. Aron Security Agreement and J. Aron Perfection Documents (as defined below), the Secured Obligations under and as defined in the J. Aron Security Agreement (the "J. Aron Secured Obligations") are secured by a perfected, first-priority security interest in and continuing lien on the Inventory Financing Collateral;

vi.   that certain UCC financing statement (with LBRM as debtor and J. Aron as secured party) that was filed with the U.S. Virgin Islands Office of the Lieutenant

14

Governor on March 5, 2020 (Filing No. 20200000134) and that certain UCC financing statement (with LBRM as debtor and J. Aron as secured party) that was filed with the Washington, D.C. Record of Deeds on March 4, 2020 (Filing No. 2020030037) (collectively, the "J. Aron Financing Statements");

vii.    that certain Deposit Account Control Agreement, dated as of March 3, 2020, among LBRM as Grantor, Oriental Bank as Depositary Bank and J. Aron as Secured Party  (the "J. Aron DACA", and together with the A&R Depositary and Intercreditor Agreement and the J. Aron Financing Statements, collectively, the "J. Aron Perfection Documents");

viii.    that certain Subordinated Guarantee, made by LBR and LBRO in favor of J. Aron, dated as of March 3, 2020 ("Subordinated Guarantee"), each of LBR and LBRO jointly and severally guaranteed LBRM's payment obligations under the J. Aron Transaction Documents as and when due ("Guaranteed Obligations"), subject to the terms of the "Terms of Subordination" under and as defined therein, which provide that, among other things, the Guaranteed Obligations are subordinated in right of payment to the prior payment in full in cash of all Secured Obligations under and as defined in the A&R Depositary and Intercreditor Agreement; and

ix.    additional agreements related to the supply, marketing, storage, the initial sale of Feedstock and Product by LBRM to J. Aron and other transactions contemplated by the J. Aron Supply and Offtake Agreement, the J. Aron Marketing and Sales Agreement, the J. Aron Financing Agreement and the J. Aron Monetization Master Agreement.

(b)      J. Aron's IFF Property.  J. Aron owns all right, title and interest in the IFF Property (as defined in the A&R Depositary and Intercreditor Agreement), which consists of Feedstock and Product owned by J. Aron.  No Debtor has any right, title, or interest in the IFF Property, and accordingly, the IFF Property is not property of the estate under section 541 of the Bankruptcy Code.

(c)      J. Aron Termination.  On June 25, 2021 (the "J. Aron Early Termination Date"), as a result of certain events of default that had occurred and were continuing in respect of LBRM, LBR and LBRO, J. Aron properly and validly exercised its right pursuant to the J. Aron Transaction Documents of declaring an early termination date whereby, among other things, all commitments of J. Aron to provide any intermediation or to purchase or sell Feedstock or Products were terminated, all loans under the Financing Agreement became immediately due and payable and all of the obligations of the Transaction Entities under the J. Aron Transaction Documents (other than that certain Terminal Services Agreement (Included Locations), dated as of March 3, 2020, by and among LBT, LBRM and J. Aron) became due and payable on June 25, 2021.  As a result of such early termination, pursuant to the J. Aron Supply and Offtake Agreement and as set forth in certain other of the J. Aron Transaction Documents, J. Aron has the right to liquidate and has commenced the liquidation of its own IFF Property.

(d)      J. Aron Safe Harbor Agreements. J. Aron is a "forward contract merchant" (as such term is defined in the Bankruptcy Code and used in section 556 of the Bankruptcy Code) and each purchase and sale agreed to under the Safe Harbor Agreements (as defined in the J. Aron Monetization Master Agreement, collectively, the "Safe Harbor Agreements") constitutes a "forward contract" (as such term is defined in the Bankruptcy Code and used in Section 556 of the Bankruptcy Code); (b) J. Aron is a "master netting agreement participant" and each Safe Harbor

Agreement constitutes a "master netting agreement" for all purposes as each such term is defined in sections 101(38A) and 101(38B) of the Bankruptcy Code and as used in Section 561 of the Bankruptcy Code; (c) J. Aron's, as the Non-Defaulting Party, right to liquidate, collect, net and set off rights and obligations under the Safe Harbor Agreements, and liquidate the Safe Harbor Agreements is not stayed, avoided, or otherwise limited by the Bankruptcy Code, including sections 362(a), 547, 548 or 553 thereof, and J. Aron is entitled to the rights, remedies and protections afforded by and under, among other sections, sections 362(b)(6), 362(b)(17), 362(b)(27), 546(e), 546(g), 546(j), 548(d), 553, 556, 560, 561 and 562 of the Bankruptcy Code.

(e)     All of the Debtors' cash, including any cash in all deposit accounts and collection accounts, wherever located, comprising proceeds of or otherwise arising from or relating to the Inventory Financing Collateral (excluding Margin) constitutes Cash Collateral of J. Aron.

(f)     Enforceability of J. Aron Liens and J. Aron Secured Obligations. (i) The J. Aron Liens on the Inventory Financing Collateral are valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, J. Aron for fair consideration and reasonably equivalent value, (ii) the J. Aron Transaction Documents are fully enforceable in accordance with their terms; (iii) the J. Aron Liens were senior in priority over any and all other liens on the Inventory Financing Collateral, subject only to liens senior by operation of law or otherwise permitted by the J. Aron Transaction Documents (solely to the extent any such permitted liens were valid, properly perfected, nonavoidable, and senior in priority to the J. Aron Liens as of the Petition Date); (iv) the J. Aron Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the applicable Debtors enforceable in accordance with the terms of the applicable J. Aron Transaction Documents; (v) no offsets, setoffs, recoupments, challenges, objections, defenses, "claims" (as defined in the Bankruptcy Code), impairment, cross-claims,

counterclaims, or causes of action or any other challenge of any kind or nature by any person or entity to any of the J. Aron Liens or J. Aron Secured Obligations exist, and no portion of the J. Aron Liens or J. Aron Secured Obligations is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, attachment, reduction, recovery or subordination (whether equitable, contractual, or otherwise) under or pursuant to the Bankruptcy Code or applicable non-bankruptcy law or principles of equity or any other applicable domestic or foreign law or regulation by any person or entity; and (vi) the Debtors, each for itself and its estate, irrevocably waive, discharge, and release any right to challenge or contest any of the J. Aron Secured Obligations or J. Aron Liens, the priority of such obligations and liens, and the scope, extent, validity, non-avoidability, priority, enforceability, seniority, perfection, or extent of the J. Aron Liens and J. Aron Secured Obligations.

(g)     Outstanding J. Aron Secured Obligations.   As of the Petition Date, the applicable Debtors were indebted to J. Aron, without objection, defense, counterclaim or offset of any kind, in an amount not less than $24,968,754.95 in principal amount of loans outstanding under the J. Aron Financing Agreement.  In addition, J. Aron has commenced the process of liquidating all IFF Property in accordance with the terms of the Safe Harbor Agreements and the J. Aron Monetization Master Agreement and, if J. Aron is unable to liquidate such IFF Property and/or incurs losses or costs as a result of such liquidation and termination of J. Aron's rights and obligations under the Safe Harbor Agreements (including any Forward Contract Settlement Amount (as defined in the J. Aron Supply and Offtake Agreement)), the Debtors would be liable and owe to J. Aron, without objection, defense, counterclaim or offset of any kind, an aggregate amount of not less than such aggregate losses or costs, taking into account any gains, incurred or realized by J. Aron as a result of such liquidations and terminations with respect to the J. Aron

Transaction Documents.  Given that the liquidation of J. Aron's IFF Property has only recently commenced, the S&O Settlement Amount (as defined in the J. Aron Supply and Offtake Agreement) cannot be determined at this time.  Further, under the J. Aron Transaction Documents, the applicable Debtors are also liable to and owe J. Aron accrued (both before and after the Petition Date) and unpaid interest, fees, expenses and all other obligations under the J. Aron Transaction Documents, including attorneys', accountants', consultants', appraisers' and financial and other advisors' fees that are chargeable or reimbursable under the J. Aron Transaction Documents, plus Make-Whole Amounts (as defined in the J. Aron Monetization Master Agreement).

H.      Definitions.  The Revolver Secured Obligations, the Prepetition Term Obligations, and the J. Aron Secured Obligations are referred to collectively herein as the "Prepetition Secured Obligations."  The Prepetition Debt Liens and the J. Aron Liens are referred to collectively herein as the "Prepetition Liens."  The Prepetition Debt Collateral and the Inventory Financing Collateral are referred to collectively herein as the "Prepetition Collateral."  The Revolver Transaction Documents, the Prepetition Term Documents, and the J. Aron Transaction Documents, as those terms are defined herein or in the Motion, are referred to collectively herein as the "Prepetition Secured Documents."   The Prepetition Agents (as defined herein), Prepetition Secured Lenders and J. Aron are referred to collectively herein as the "Prepetition Secured Parties."

I.      Stipulations Regarding Prepetition Secured Documents and the Prepetition Holdco Loan Documents. Upon entry of the Interim Order, subject to paragraphs J and 42, the Debtors acknowledge, represent, stipulate, and agree as follows and make the releases and waivers set forth below:

(a)      No Control.  The Prepetition Secured Parties and the Prepetition Holdco Loan Secured Parties do not control the Debtors or their properties or operations or have the

4841-7890-9425.1

authority to determine the manner in which the Debtors' operations are conducted, and each of the Prepetition Secured Parties and the Prepetition Holdco Loan Secured Parties is not a control person or insider (as defined in the Bankruptcy Code) of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to, or arising from any of the Prepetition Secured Documents or the Prepetition Holdco Loan Documents.

(b)     No Claims, Causes of Action.  As of the date hereof, there exist no claims or causes of action against the Prepetition Secured Parties or the Prepetition Holdco Loan Secured Parties arising from, related to or connected with any of the Prepetition Secured Documents or the Prepetition Holdco Loan Documents that may be asserted by the Debtors.

(c)     Release.  The Debtors forever and irrevocably release, waive, discharge, and acquit each of the Prepetition Secured Parties and the Prepetition Holdco Loan Secured Parties and each of their respective officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "Prepetition Secured Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened as of the date hereof including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, existing as of the date of this Interim Order, arising out of, in connection with, or relating to any of the Prepetition Secured Documents or the Prepetition Holdco Loan Documents, and ancillary documentation, guarantees, security

20

documentation and collateral documents executed in support of the foregoing, the Prepetition Secured Obligations, the Prepetition Secured Holdco Debt Obligations, the Prepetition Liens, the Prepetition Holdco Financing Liens, J. Aron's title to or ownership of, or other rights in, the IFF Property and rights to setoff and net Margin (as defined in the J. Aron Monetization Master Agreement), and ancillary documentation, guarantees, security documentation and collateral documents executed in support of the foregoing or the transactions contemplated thereunder including, without limitation, (i) any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), so-called "lender liability" claims, counterclaims, cross-claims, recoupment, defenses, disallowance (whether equitable or otherwise), impairment, or any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation by any person or entity, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the Prepetition Secured Parties or the Prepetition Holdco Loan Secured Parties.

J.      Mezzanine Financing, Subordinated Notes, Prepetition Holdco Loan, and other Insider Obligations.  Certain Prepetition Holdco Loan Secured Parties and Lenders are insiders or affiliates of the Debtors.  Nothing herein shall constitute a finding or ruling by this Court in favor of any affiliate (as defined in the Bankruptcy Code) or other insider (as defined in the Bankruptcy Code) of any Debtor (an "Insider Creditor") that any obligation of any Debtor to such Insider Creditor ("Insider Obligation"), including any Prepetition Holdco Secured Debt Obligations, LBV Subordinated Notes, or LBRH II Holdco Loan held by an Insider Creditor, is valid, senior, enforceable, prior, perfected, or non-avoidable. Nothing herein shall constitute a finding of fact, admission, or stipulation in favor of, or enforceable by, any Insider Creditor.  No Insider Creditor

4841-7890-9425.1

shall be entitled to any proceeds or other distributions on account of any Insider Obligation or any adequate protection absent further order of the Court. Moreover, nothing shall prejudice the rights of any party-in-interest, including but not limited to the Debtors and the Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Insider Obligation and/or related security interests held by an Insider Creditor. In addition, nothing herein shall be deemed a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any "equities of the case" under section 552(b) of the Bankruptcy Code, or (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to any Insider Obligations, in each case after payment in full of the DIP Obligations and the Prepetition Secured Obligations. No Insider Creditor shall be entitled to any release described herein. Nothing in this paragraph shall affect or impact the Prepetition Secured Obligations or Prepetition Holdco Secured Debt Obligations that are not owned by any Insider Creditor, any liens securing such obligations, or any adequate protection granted to the Prepetition Secured Creditors.

K.     <u>Necessity of DIP Financing</u>. The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other financing under sections 364(c) or (d) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Loan Documents. A loan facility in the amount provided by the DIP Loan Documents is not available to the Debtors without (i) granting the DIP Agent, for the benefit of the DIP Secured Parties, superpriority claims and priming liens and security interests, pursuant to sections 364(c)(1), (2), (3), and 364(d) of the Bankruptcy Code, as provided in this Interim Order and the DIP Loan Documents and (ii) providing the Prepetition Secured Parties adequate protection as provided in this Interim Order. After considering all alternatives, the Debtors have concluded, in the exercise of their prudent business judgment, that the credit facility

4841-7890-9425.1

provided under the DIP Loan Documents and the authorization to use Cash Collateral to be provided by the Prepetition Secured Parties represents the best and only working capital financing available to the Debtors at this time.  The Debtors have been unsuccessful in their attempts to find any alternative financing.  Additionally, the terms of the DIP Financing and the use of Cash Collateral are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.  The Prepetition Secured Parties have consented to the entry of this Interim Order after extensive negotiations and would not have consented to entry of this Interim Order absent each of the bargained for protections for the Prepetition Secured Parties set forth in this Interim Order.

L.      Purpose of DIP Financing.  The Debtors require the DIP Financing described in the Motion and as expressly provided in the DIP Loan Documents and this Interim Order to: (i) pay costs, fees and expenses associated with or payable under the DIP Financing under the terms of this Interim Order; (ii) pay professional fees subject to the Approved Budget (as defined below); (iii) provide ongoing working capital requirements of the Debtors and to pay fees, costs, expenses and other administrative expenses relating to the Chapter 11 Cases (including payments related to Adequate Protection Obligations (as defined below)), in each case, subject to any necessary Court approvals and consistent with the Approved Budget subject to any Budget Variances (defined below); and (iv) make the currently identified capital expenditures and other payments of postpetition payables as permitted under the DIP Loan Documents and this Interim Order, in each case subject to the conditions as set forth herein and in the DIP Loan Documents and this Interim Order and consistent in all material respects with the Approved Budget and any Budget Variances.

M.      Adequate Protection.  The Prepetition Secured Parties are entitled to receive adequate protection to the extent of any diminution in value of their interests in their prepetition

collateral (including Cash Collateral) pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code resulting from the sale, lease, or use by the Debtors (or other decline in value) of the prepetition collateral (including Cash Collateral), the relief granted herein in favor of the DIP Secured Parties, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code from and after the Petition Date (the "Adequate Protection Obligations"). Pursuant to sections 361, 363, and 507(b) of the Bankruptcy Code, as adequate protection, the Prepetition Secured Parties shall receive payment of their reasonable and documented professional fees, postpetition replacement liens, adequate protection payments and superpriority adequate protection claims in accordance with the terms of this Interim Order.  Furthermore, the Prepetition Secured Parties will be entitled to certain reporting from the Debtors (including, among other things, copies of all reporting provided to the DIP Secured Parties) in accordance with the terms of this Interim Order.  The adequate protection provided to the Prepetition Secured Parties herein is consistent with the Bankruptcy Code.  The consent of the Prepetition Secured Parties to the use of Cash Collateral and the consent of the Prepetition Secured Parties to the priming of their liens by the DIP Liens (i) does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition Secured Parties that their respective interests in the Prepetition Collateral are adequately protected pursuant to this Interim Order or otherwise, and (ii) is conditioned upon entry of this Interim Order and does not and shall not be deemed to constitute consent other than pursuant to this Interim Order and the terms set forth herein.  The adequate protection provided herein and other benefits and privileges contained herein are necessary (a) in order to protect the Prepetition Secured Parties from any diminution in value of their Prepetition Collateral and (b) to obtain the foregoing consents and agreements.  Nothing herein shall prevent the Prepetition Secured Parties from seeking additional adequate protection to

4841-7890-9425.1

the extent permitted by law or to the extent permitted in the Prepetition Secured Documents, as applicable.  For the avoidance of doubt, this Interim Order shall be deemed to be a request by the Prepetition Secured Parties pursuant to section 363(e) of the Bankruptcy Code.

N.      Approved Budget.  Attached here as **Exhibit B** is a budget setting forth the Debtors' anticipated cash receipts and expenditures for the next three (3) weeks (the "Initial Approved Budget").  The "Approved Budget" shall mean the Initial Approved Budget, together with such modifications and amendments thereto as may be agreed to in form and substance by the DIP Agent and the ad hoc group of lenders under the Term Credit Agreement (the "Ad Hoc Term Lender Group"), the Term Administrative Agent, the Revolving Administrative Agent, and J. Aron (collectively with the Ad Hoc Term Lender Group, the Term Administrative Agent and Revolving Administrative Agent, and the Project Collateral Agent, the "Prepetition Agents"), subject to the conditions set forth in paragraph 26 hereof, which shall reflect the Debtors' good-faith projection of all weekly cash receipts and disbursements in connection with the operation of the Debtors' business during such three-week period, delivered pursuant to the terms of the DIP Loan Documents, delivered by the Debtors to counsel for the DIP Agent, the DIP Lenders and the Prepetition Agents.  The DIP Agent and the Prepetition Agents hereby expressly reserve all of their rights with respect to the approval of any budget covering the period after the expiration of the Initial Approval Budget, and nothing contained herein shall be deemed or construed to constitute the consent of any of the DIP Agent or the Prepetition Agents to any such budget.  The Approved Budget is an integral part of this Interim Order and has been relied upon by the DIP Secured Parties to provide DIP Financing and by the Prepetition Secured Parties to permit the use of Cash Collateral and consent to this Interim Order.

O.     <u>Good Cause</u>.  Based upon the record presented to the Court by the Debtors, it appears that the ability of the Debtors to obtain sufficient working capital and liquidity under the DIP Loan Documents and to use Cash Collateral is vital to the Debtors and the Debtors' estates and creditors.  The Debtors reasonably believe that the liquidity to be provided under the DIP Loan Documents and from the use of Cash Collateral will enable the Debtors to continue to safely and efficiently suspend the operation of their refinery facility, preserve and maximize the value of their businesses, and provide the Debtors with sufficient funding to pursue the necessary proceedings to restructure the Debtor's outstanding obligations.  Good cause has, therefore, been shown for the relief sought in the Motion on an interim basis and for scheduling the Final Hearing.

P.     <u>Good Faith</u>.  The DIP Secured Parties, the Prepetition Secured Parties and each of their respective affiliates, subsidiaries, parents, officers, shareholders, directors, employees, investment advisers and sub-advisers, attorneys, and agents have acted in good faith in negotiating the terms of the DIP Loan Documents and this Interim Order.  The DIP Financing, the DIP Loan Documents and the use of Cash Collateral have been negotiated in good faith and at arm's length among the Debtors, the DIP Secured Parties and the Prepetition Secured Parties, and all of the obligations and indebtedness arising under, in respect of or in connection with the DIP Financing, the DIP Loan Documents and this Interim Order shall be deemed to have been extended by each of the DIP Secured Parties in accordance with the DIP Loan Documents, and the Prepetition Secured Parties' shall be deemed to have consented to the use of Cash Collateral, in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Obligations, the DIP Liens, the DIP Superpriority Claims and the Adequate Protection Obligations shall be entitled to the full protection of section 364(e) of the Bankruptcy Code and the terms, conditions, benefits,

and privileges of this Interim Order regardless of whether this Interim Order is subsequently reversed, vacated, modified, or otherwise is no longer in full force and effect or the Chapter 11 Cases are subsequently converted or dismissed.

Q.      Consideration.  The Debtors will receive and have received fair consideration and reasonably equivalent value in exchange for access to the DIP Financing, and all other financial accommodations provided under the DIP Financing, the DIP Loan Documents and this Interim Order.

R.      No Liability to Third Parties.  The Debtors stipulate and this Court finds that in making decisions to advance loans to the Debtors, in administering any loans, in permitting the Debtors to use Cash Collateral, in accepting the Approved Budget or any future Approved Budget or in taking any other actions permitted by this Interim Order or the DIP Loan Documents, none of the DIP Secured Parties or Prepetition Secured Parties shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors.

S.      Section 552.  Subject to entry of a Final Order, in light of the subordination of their liens and super-priority administrative claims (i) in the case of the DIP Secured Parties, to the Carve Out and the Permitted Prior Liens, and (ii) in the case of the Prepetition Secured Parties, to the Carve Out and the DIP Liens, each of the DIP Secured Parties and the Prepetition Secured Parties is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply to any of the DIP Secured Parties or the Prepetition Secured Parties with respect to the proceeds, products, rents, issues or profits of any of the DIP Collateral or the Prepetition Collateral, and no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in

bankruptcy or other proceedings under the Bankruptcy Code, may be charged against proceeds, product, offspring or profits from any of the DIP Collateral or the Prepetition Collateral under section 552(b) of the Bankruptcy Code.  Subject to entry of the Final Order, the Debtors shall be deemed to have irrevocably waived, and to have agreed not to assert, any claim or right under section 552 of the Bankruptcy Code seeking to avoid the imposition of the DIP Liens, Prepetition Liens or the Prepetition Secured Parties' replacement liens granted under this Interim Order (the "Adequate Protection Liens") on any property acquired by any of the Debtors or any of their estates or, subject to the Carve Out, seeking to surcharge any costs or expenses incurred in connection with the preservation, protection or enhancement of, or realization by, the DIP Secured Parties or the Prepetition Secured Parties upon the DIP Collateral or the Prepetition Collateral, as applicable.

T.      Immediate Entry of Interim Order.  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  The permission granted herein to enter into the DIP Loan Documents, obtain funds thereunder and use Cash Collateral on an interim basis in accordance with the Approved Budget is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and loss of valuable assets and rights of the Debtors' estates.  This Court concludes that entry of this Interim Order is in the best interests of the Debtors and the Debtors' estates and creditors as its implementation will, among other things, allow for the continued flow of supplies and services to the Debtors necessary to enable the Debtors to safely and efficiently administer their refinery facility during the pendency of these Chapter 11 Cases.  Based upon the foregoing findings, acknowledgements, and conclusions; and upon the record made before this Court at the Interim Hearing; and good and sufficient cause appearing therefor:

4841-7890-9425.1

**IT IS HEREBY ORDERED:**

1.     <u>Disposition</u>.  The Motion is granted on an interim basis to the extent set forth herein, the DIP Financing described herein is authorized and approved, and the use of Cash Collateral and provision of adequate protection is authorized, in each case subject to the terms of this Interim Order and the DIP Loan Documents.  Any objections to the Motion that have not previously been withdrawn, waived, settled, or resolved and all reservations of rights included therein are hereby denied and overruled on their merits.  This Interim Order shall constitute findings of fact and conclusions of law.

2.     <u>Effectiveness</u>.  Subject to the terms hereof, this Interim Order shall be immediately valid upon signing by the Court and effective and enforceable upon the date entered on the docket in the Chapter 11 Cases (the "<u>Interim Order Entry Date</u>").

3.     <u>Authorization of the DIP Financing and DIP Loan Documents</u>.

(a)     The Debtors are hereby authorized to execute and enter into the DIP Loan Documents.  The DIP Loan Documents and this Interim Order shall govern the financial and credit accommodations to be provided to the Debtors by the DIP Lenders in connection with the DIP Financing.

(b)     The Borrower is hereby authorized on an interim basis to borrow, and the Guarantors are hereby authorized on an interim basis to guarantee, up to the principal amount of $5.5 million (plus such additional principal amounts due solely to payment of interest in-kind), pursuant to the terms of the DIP Loan Documents and this Interim Order and at the times set forth in the Approved Budget, all of which shall be used by the Debtors as expressly permitted by the DIP Loan Documents, this Interim Order, the Approved Budget and any Budget Variances.  The Debtors are authorized to use proceeds of the DIP Financing in accordance with this Interim Order and the Approved Budget in an amount that would not cause either: (i) all line items other than

29

Professional Fees from varying from the applicable Approved Budget by more than twenty percent (20%) for each week during any budget period or ten percent (10%) on a cumulative basis for that portion of the budget period then ended; (ii) with respect to Professionals Fees, the Debtors may vary from the applicable budget by no more than ten percent (10%) on a cumulative basis for that portion of the Budget, and (iii) actual cash receipts, if any, received by the Borrower may not be less than ninety percent (90%) of the amounts set forth in the Budget (a "Budget Variance").  The variance reports showing budget to actual and any variance shall be delivered by the Debtors to the DIP Agent and counsel to each of the Prepetition Agents.

(c)      In furtherance of the foregoing and without further approval of this Court, but subject to the terms of this Interim Order, the Debtors are authorized to, and, if so required under the terms of the DIP Loan Documents, directed to perform all acts to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all related fees and expenses, that may be required or necessary for the Debtors' performance of their obligations under the DIP Financing, including, without limitation:

i.      the execution, delivery, and performance of the DIP Loan Documents, including, without limitation, any security and pledge agreements, and any mortgages contemplated thereby;

ii.      subject to paragraph 10 hereof, the execution, delivery and performance of one or more amendments, waivers, consents, or other modifications to and under the DIP Loan Documents, in each case in such form as agreed among the Debtors and the required other parties as set forth in more detail in paragraph 10 below;

iii.      the non-refundable payment of the fees referred to in the DIP Loan Documents, including the fees of the DIP Agent, and, subject to paragraph 8, costs and expenses payable under the DIP Loan Documents;

iv.      make payments on account of the Adequate Protection Obligations provided for in this Interim Order; and

v.      the performance of all other acts required under or in connection with the DIP Loan Documents.

4.    <u>DIP Obligations</u>.  This Interim Order and the DIP Loan Documents shall evidence the DIP Obligations, which DIP Obligations shall, upon execution of the DIP Loan Documents, be valid, binding and enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any estate representative or trustee appointed in any of the Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing, or upon the dismissal of any of the Chapter 11 Cases or any such successor cases (collectively, the "<u>Successor Cases</u>"), and their creditors and other parties-in-interest, in each case, in accordance with the terms of this Interim Order and the DIP Loan Documents.  All obligations incurred, payments made, and transfers or grants of security and liens set forth in this Interim Order and the DIP Loan Documents by any Debtor are granted to or for the benefit of the Debtors for fair consideration and reasonably equivalent value, and are granted contemporaneously with the making of the loans and commitments and other financial accommodations secured thereby.  No obligation, payment, transfer, or grant of security under the DIP Loan Documents or this Interim Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law, or subject to any avoidance, reduction, setoff, recoupment, offset,

recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance (whether equitable or otherwise), impairment, or any other challenges under the Bankruptcy Code or any other applicable foreign or domestic law or regulation by any person or entity.

5.    <u>Carve-Out</u>.   The Debtors' obligations to the DIP Secured Parties and the liens, security interests and superpriority claims granted herein and/or under the DIP Loan Documents, including the DIP Liens, the DIP Superpriority Claims, and the Adequate Protection Obligations, shall be subject and subordinate to the Carve-Out.  "<u>Carve-Out</u>" shall mean (i) fees and expenses incurred by bankruptcy professionals (x) whose retention has been approved by the Bankruptcy Court which are incurred as of the delivery of the Carve-Out Trigger Notice (as defined below) and (y) provided for in the Approved Budget; (ii) fees and expenses in an amount not to exceed $375,000 incurred from and after the delivery of a Carve-Out Trigger Notice (as defined below) by bankruptcy professionals whose retention has been approved by the Bankruptcy Court (the "<u>Post-Termination Fee Carve-Out</u>"); and (iii) fees owed pursuant to 28 U.S.C. §1930 or fees owed the clerk of the Bankruptcy Court.  "<u>Carve-Out Trigger Notice</u>" shall mean the written notice, including by email, delivered by the DIP Agent (at the direction of the DIP Lenders) or, after the DIP Financing has been indefeasibly paid in full and in cash (a "<u>DIP Repayment Event</u>"), by any of the Prepetition Agents, to the Debtors, their counsel, the U.S. Trustee, and counsel to the Committee, and prior to a DIP Repayment Event, counsel to the Prepetition Agents, which notice may be delivered following the occurrence and during the continuation of an Event of Default or the Termination Date in accordance with the terms of the DIP Loan Documents or, following a DIP Repayment Event, following the occurrence and during the continuation of a Cash Collateral Termination Event (as defined below) or the Cash Collateral Termination Date (as defined below).

4841-7890-9425.1

Notwithstanding the foregoing, the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against any of the DIP Secured Parties, the Prepetition Secured Parties or any of their respective officers, directors, employees, agents, advisers and counsel, including, without limitation, challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the (i) DIP Loan Documents in favor of the DIP Agent, for the benefit of the DIP Secured Parties or (ii) the Prepetition Secured Documents, for the benefit of the Prepetition Secured Parties, as applicable. For the avoidance of doubt, until the delivery of a Carve-Out Trigger Notice, the Borrower shall be permitted to pay fees and expenses incurred by bankruptcy professionals whose retention has been approved by the Bankruptcy Court as the same shall become due and payable, subject to the terms and conditions set forth in the DIP Loan Documents and this Interim Order (the payment of which shall not reduce the Post-Termination Fee Carve-Out).  Notwithstanding anything to the contrary herein, in the DIP Loan Documents, or in any loan or financing documents, the Carve-Out shall be senior to all liens and claims securing the DIP Obligations, any prepetition secured obligations, and any and all other forms of adequate protection, liens or claims securing the DIP Obligations or any prepetition secured obligations.  For the avoidance of doubt, no IFF Property or proceeds thereof, and, until the Discharge of Inventory Financing Obligations (as defined in the A&R Depositary and Intercreditor Agreement), no Inventory Financing Collateral or proceeds thereof, shall be used to fund the Carve-Out and the Carve Out shall not be secured by the Inventory Financing Collateral or IFF Property.  None of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or

disbursements of any professional person whose retention is approved by the Bankruptcy Court in connection with the Chapter 11 Cases or any Successor Cases. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any professional person whose retention is approved by the Bankruptcy Court or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement. None of the proceeds of the DIP Collateral or the DIP Loans shall be used in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Secured Parties or their respective officers, directors, employees, agents, advisors and counsel, including with respect to any of the liens created in connection with the DIP Financing. In addition, none of the proceeds of the DIP Collateral, the DIP Loans, or the Prepetition Collateral shall be used in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Prepetition Secured Parties or their respective officers, directors, employees, agents, advisors and counsel, including with respect to any of the liens created in connection with the Prepetition Secured Documents (provided that, notwithstanding anything to the contrary herein, the Committee may use proceeds of the DIP Financing and/or the DIP Collateral (including Cash Collateral) to investigate but not to prosecute (i) the claims and liens of the Prepetition Secured Parties, and (ii) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties up to an aggregate cap of $50,000 (the "Committee Investigation Budget")).

6.      DIP Lender Superpriority Claim. Subject to the Carve-Out and the Aron Rights (as defined below), and effective as of the Interim Order Entry Date, the DIP Secured Parties are hereby granted, pursuant to sections 364(c)(1) and 364(e) of the Bankruptcy Code, an allowed

superpriority administrative expense claim in each of the Chapter 11 Cases or any Successor Cases (the "DIP Superpriority Claims") on account of the DIP Obligations with priority over any and all other administrative expenses, adequate protection claims, diminution claims, and all other claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, which allowed claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code.  The DIP Superpriority Claims shall be payable from and have recourse to all pre- and postpetition property of the Debtors and their estates and all proceeds thereof, excluding Avoidance Actions (as defined below) but, subject to entry of the Final Order, including, solely to the extent that all other DIP Collateral is insufficient to satisfy the DIP Obligations, Avoidance Proceeds (as defined below).

     7.     DIP Liens.

     (a)     As security for the DIP Obligations, effective and perfected as of the Interim Order Entry Date, the following security interests and liens, hereby are granted by the Debtors to the DIP Agent for the benefit of the DIP Lenders on the DIP Collateral as defined herein.  The "DIP Collateral" shall mean all property of the Debtors of any kind or nature whatsoever, including, but not be limited to, (i) all present and after acquired property (whether tangible, intangible, real, personal or mixed) of the Debtors, wherever located, including, without limitation, all accounts, inventory, equipment, capital stock in subsidiaries, investment property, instruments, chattel paper, real estate, leasehold interests, contracts, patents, copyrights, trademarks and other

general intangibles, any claims and causes of action of the Debtors, including claims under section 549 of the Bankruptcy Code; (ii) any commercial tort claims and causes of action of any of the Debtors against any directors or officers of the Debtors as well as including any proceeds of, or property recovered in connection with, any successful claims and causes of action against any directors or officers of the Debtors; and (iii) excluding (x) the IFF Property, and (y) any claims and causes of action of the Debtors under sections 502(d), 544, 545, 547, 548, 550, and 553 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or other applicable law (collectively, the "Avoidance Actions"), but, subject to entry of the Final Order, including, solely to the extent that all other DIP Collateral is insufficient to satisfy the DIP Obligations secured by the DIP Liens (as defined below), any proceeds of, or property recovered in connection with, any successful Avoidance Action (whether by judgment, settlement or otherwise, and unencumbered or not, the "Avoidance Proceeds").  All such liens on and security interests in the DIP Collateral granted to the DIP Secured Parties, pursuant to this Interim Order or the DIP Loan Documents (collectively, the "DIP Liens"), are as follows:

i.    Priming Lien Pursuant to Section 364(d)(1).    A first priority, priming security interest in and lien on, pursuant to section 364(d)(1) of the Bankruptcy Code, all encumbered DIP Collateral (the "Section 364(d)(1) Liens"), which Section 364(d)(1) Liens shall be senior to any existing liens or claims, including, but not limited to, the Prepetition Liens of the Prepetition Secured Parties or postpetition liens granted to the Prepetition Secured Parties (collectively, the "Prepetition Secured Parties Liens"), and subject and junior only to (i) the Carve-Out, (ii) valid, perfected, and non-avoidable liens on property of a Debtor that are in existence on the Petition Date and are senior in priority to any of the Prepetition Secured Parties Liens, (iii) all

4841-7890-9425.1

liens, recoupment and setoff rights held by J. Aron (the "Aron Rights" and collectively with clause (ii), the "Permitted Prior Liens");

      ii.      First Priority Lien on Unencumbered Property Pursuant to Section 364(c)(2).  A first priority security interest in and lien on, pursuant to section 364(c)(2) of the Bankruptcy Code, all unencumbered DIP Collateral (the "Section 364(c)(2) Liens"), which Section 364(c)(2) Liens shall be subject only to the Carve-Out;

      iii.      Junior Lien on Inventory Financing Collateral Pursuant to Section 364(c)(3). A valid, binding, continuing, enforceable, fully-perfected, nonavoidable, automatically and properly perfected junior lien on and security interest in all Inventory Financing Collateral, which lien and security interest shall be subordinate and subject to the Aron Rights and subject to the Carve-Out;

      iv.      Junior Lien on Certain Encumbered Property Pursuant to Section 364(c)(3).  A junior security interest in and lien on, pursuant to section 364(c)(3) of the Bankruptcy Code, all other DIP Collateral that is subject to a Permitted Prior Lien (the "Section 364(c)(3) Liens,") which Section 364(c)(3) Liens also shall be subject to the Carve-Out;

      v.      Liens Senior to Certain Other Liens.  The DIP Liens shall not be subject or subordinate to (a) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (b) any liens arising after the Petition Date including, without limitation, liens granted under prior orders of the Court, or any liens or security interests granted in favor of any federal, state, municipal, or other governmental unit, commission, board, or court for any liability of the Debtors.

      (b)      The DIP Liens shall be effective and perfected upon the Petition Date.

(c)      The DIP Liens shall be and hereby are fully perfected liens and security interests, effective and perfected upon the Petition Date without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements, or other agreements or documents, such that no additional steps need be taken by the DIP Secured Parties to perfect such liens and security interests.  Subject to entry of the Final Order, and subject to applicable non-bankruptcy law, any provision of any lease, agreement, contract, or other instrument or agreement that requires the consent or approval of one or more landlords, licensors, or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for any Debtor to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, shall have no force or effect with respect to the transactions granting the DIP Liens in the Debtor's interest in such fee, leasehold or other interest or other collateral or the proceeds of any assignment, sale or other transfer thereof.

(d)      The DIP Liens, DIP Superpriority Claims, and other rights, benefits, and remedies granted under this Interim Order to the DIP Secured Parties shall continue in the Chapter 11 Cases, any Successor Cases, and following any dismissal of the Chapter 11 Cases, and such liens, security interests, and claims shall maintain their priority as provided in this Interim Order until all the DIP Obligations have been indefeasibly paid in full in cash and completely satisfied and all of the commitments thereunder have been terminated in accordance with the DIP Loan Documents.

8.      <u>Fees and Expenses of DIP Agent and Prepetition Secured Parties</u>.

4841-7890-9425.1

(a)     Upon entry of this Interim Order, the Debtors shall pay any and all prepetition fees, costs, and expenses incurred by the DIP Agent that were outstanding and unpaid as of the Petition Date, in an amount not to exceed $75,000.

(b)     The Debtors shall, no later than ten (10) days after receipt of a summary statement setting forth the applicable timekeepers, as well as the hours worked by and expenses incurred by such timekeepers, in connection with the Chapter 11 Cases whether incurred before or after the Petition Date (with copies provided via electronic mail to the U.S. Trustee, counsel to the Committee, counsel to the DIP Agent, and counsel to each of the Prepetition Secured Parties), indefeasibly pay or reimburse (i) the DIP Agent for its reasonable and documented fees and out-of-pocket costs, expenses and charges as provided in the Approved Budget (collectively, the "DIP Agent Professional Fees"), including, but not limited to, the reasonable fees, costs, and expenses of Gray Reed & McGraw LLP as counsel to DIP Agent, and any other advisors or professionals retained by the DIP Agent, (ii) the Project Collateral Agent for its reasonable and documented fees and out-of-pocket costs, expenses and charges, including, but not limited to, the reasonable fees, costs, and expenses of outside counsel, and any other advisors or professionals retained by the Project Collateral Agent, (iii) the Revolving Administrative Agent for its reasonable and documented fees and out-of-pocket costs, expenses and charges, including, but not limited to, the reasonable fees, costs, and expenses of outside counsel, and any other advisors or professionals retained by the Revolving Administrative Agent, (iv) J. Aron for its reasonable and documented fees and out-of-pocket costs, expenses and charges, including, but not limited to, the reasonable fees, costs, and expenses of outside counsel, and any other advisors or professionals retained by J. Aron; (v) the Ad Hoc Term Lender Group for its reasonable and documented fees and out-of-pocket costs, expenses and charges, including, but not limited to, the reasonable fees, costs, and

expenses of outside counsel, and any other advisor or professionals retained by the Ad Hoc Term Lender Group; and (vi) the Term Administrative Agent for its reasonable and documented fees and out-of-pocket costs, expenses and charges, including, but not limited to, the reasonable fees, costs and expenses of outside counsel, and any other advisors or professionals retained by the Term Administrative Agent.  The Debtors, the U.S. Trustee, the Committee, the DIP Agent, and each of the Prepetition Secured Parties may object to the reasonableness of the fees, costs, and expenses included in any such professional fee invoice; *provided* that any such objection shall be barred and deemed waived unless filed with this Court and served on the applicable professional by 12:00 Noon, prevailing Central Time, on the date that is no later than ten (10) days after the objecting party's receipt of the applicable professional fee invoice.  If such objection is timely received, the Debtors shall promptly pay the portion of such invoice not subject to such objection, and this Court shall determine any such objection unless otherwise resolved by the applicable parties.  Any hearing on an objection to payment of any fees, costs, and expenses set forth in a professional fee invoice shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses which are the subject of such objection and whether the DIP Agent, Revolving Administrative Agent, J. Aron, Ad Hoc Term Lender Group, or Term Administrative Agent, as the case may be, is entitled to such fees, costs and expenses under this Interim Order.  For the avoidance of doubt, none of the fees, costs, and expenses of the DIP Agent, Revolving Administrative Agent, J. Aron, Ad Hoc Term Lender Group, or Term Administrative Agent, shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.  All fees, costs and expenses payable under the DIP Loan Documents to the DIP Agent shall be included and constitute part of the DIP Obligations and be secured by the DIP Liens.

4841-7890-9425.1

Notwithstanding anything to the contrary herein, the fees, costs, and expenses of the DIP Agent, Revolving Administrative Agent, J. Aron, Ad Hoc Term Lender Group, and Term Administrative Agent, under and in connection with negotiation and preparation of the DIP Loan Documents, including, without limitation, the legal fees and expenses of any professionals retained by them, shall be earned, non-refundable, and payable out of the interim funding under the DIP Financing and shall not be subject to the notice period described in this paragraph and the recipients of such payments shall be fully entitled to all protections of section 364(e) of the Bankruptcy Code.  For the avoidance of doubt, the Debtors shall be responsible to pay, subject to the procedures outlined in this paragraph, all fees and expenses incurred by the DIP Agent, Revolving Administrative Agent, J. Aron, Ad Hoc Term Lender Group, and Term Administrative Agent, in connection with any action taken in these Chapter 11 Cases including, but not limited to, fees and expenses relating to the DIP Financing and the administration and interpretation of, and the enforcement of remedies under, the DIP Financing and including all due-diligence, including but not limited to printing costs, consultation, travel, and attendance at court hearings, regardless of whether the DIP Financing is consummated.

9.      <u>Prepetition Secured Parties' Rights and Adequate Protection</u>.

(a)      <u>Adequate Protection for Prepetition Term Lenders</u>.  As adequate protection for any diminution of the Prepetition Debt Collateral resulting from the subordination of the Term Administrative Agent's Prepetition Debt Liens to the DIP Liens and the other relief granted herein in favor of the DIP Secured Parties, the Debtors' use of Prepetition Collateral (including Cash Collateral), and/or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, and in exchange for the Term Lenders' consent to the priming of the Prepetition Debt Liens by the DIP Liens pursuant to this Interim Order, the Term Administrative Agent shall receive, for

the benefit of Prepetition Term Lenders, adequate protection, including, without limitation, (1) valid and automatically perfected priority replacement liens and security interests in and on all real and personal property of the Debtors and their bankruptcy estates, in each case, subject to the DIP Liens securing the DIP Financing in the same order and priority as existed prepetition, (2) monthly payments to reimburse the reasonable and documented professional fees of the Ad Hoc Term Lender Group, the Term Administrative Agent and Project Collateral Agent in accordance with paragraph 8 of this Interim Order, (3) in lieu of cash payments of interest when and as required under the Prepetition Term Credit Agreement, all accrued and unpaid interest shall, on each applicable date when such interest payments are due under the Prepetition Term Documents, be paid in kind by adding the amount of such accrued interest to the outstanding aggregate principal balance of the term loans, (4) superpriority administrative claims and all of the other benefits and protections allowable under section 507(b) of the Bankruptcy Code, in each of the Chapter 11 Cases or any Successor Cases, with priority as provided therein, to the extent of any diminution in the Prepetition Debt Collateral,  (5) upon entry of this Interim Order, payment of all fees and expenses of the professional advisors of the Ad Hoc Term Lender Group, Term Administrative Agent and Project Collateral Agent that were incurred prior to the Petition Date and that remain unpaid, and (6) an acknowledgement of the unconditional right to credit bid the Prepetition Term Obligations under the Prepetition Term Documents in connection with any sale of Prepetition Debt Collateral.

(b)     Adequate Protection for Revolver Lenders.  As adequate protection for any diminution of the Prepetition Debt Collateral resulting from the subordination of the Revolving Administrative Agent's Prepetition Debt Liens to the DIP Liens and the other relief granted herein in favor of the DIP Secured Parties, the Debtors' use of Prepetition Collateral (including Cash

Collateral), and/or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, and in exchange for the Revolver Lenders' consent to the priming of the Prepetition Debt Liens by the DIP Liens pursuant to this Interim Order, the Revolving Administrative Agent shall receive, for the benefit of the Revolver Lenders, adequate protection, including, without limitation, (1) valid and automatically perfected priority replacement liens and security interests in and on all real and personal property of the Debtors and their bankruptcy estates, in each case, subject to the DIP Liens securing the DIP Financing in the same order and priority as existed prepetition, (2) monthly payments to reimburse the reasonable and documented professional fees of the Revolver Administrative Agent and Project Collateral Agent in accordance with paragraph 8 of this Interim Order, (3) on the last business day of each month, payments in cash to the Revolver Lenders in an amount equal to all interest (other than default interest) accrued under the Revolver Transaction Documents, (4) superpriority administrative claims and all of the other benefits and protections allowable under section 507(b) of the Bankruptcy Code, in each of the Chapter 11 Cases or any Successor Cases, with priority as provided therein, to the extent of any diminution in the Prepetition Debt Collateral, (5) upon entry of this Interim Order, payment of all fees and expenses of the professional advisors of the Revolving Administrative Agent and Project Collateral Agent that were incurred prior to the Petition Date and that remain unpaid, and (6) an acknowledgement of the unconditional right to credit bid the prepetition obligations under the Revolver Transaction Documents in connection with any sale of Prepetition Debt Collateral.

(c)    Adequate Protection for J. Aron.  As adequate protection for any diminution of J. Aron's interests in its Inventory Financing Collateral resulting from the relief granted herein in favor of the DIP Secured Parties, the Debtors' use of J. Aron's Prepetition Collateral (including Cash Collateral), and/or the imposition of the automatic stay pursuant to section 362 of the

4841-7890-9425.1

Bankruptcy Code, J. Aron shall receive adequate protection, including, without limitation, (1) valid and automatically perfected priority replacement liens and security interests in and on all real and personal property of the Debtors and their bankruptcy estates, in each case, subject to the DIP Liens securing the DIP Financing in the same order and priority as existed prepetition, (2) monthly payments to reimburse the reasonable and documented professional fees of J. Aron in accordance with paragraph 8 of this Interim Order, (3) on the last business day of each month payments in cash to J. Aron in an amount equal to all interest (other than default interest) accrued under the J. Aron Transaction Documents, (4) superpriority administrative claims and all of the other benefits and protections allowable under section 507(b) of the Bankruptcy Code, in each of the Chapter 11 Cases or any Successor Cases, with priority as provided therein, to the extent of any diminution in the Inventory Financing Collateral, and (5) upon entry of this Interim Order, payment of all fees and expenses of the professional advisors of J. Aron that were incurred prior to the Petition Date and that remain unpaid, and (6) an acknowledgement of the unconditional right to credit bid the prepetition obligations under the J. Aron Transaction Documents in connection with any sale of Inventory Financing Collateral.

(d)     <u>Reservation of Rights</u>.   The rights of all parties with respect to the appropriate characterization (as payments of principal, payments of interest, or otherwise) of any adequate protection payments made (whether in cash or in kind) in accordance with the foregoing are expressly preserved.

(e)     <u>Unconditional Right to Credit Bid</u>.  Each of the Prepetition Secured Parties shall have the unconditional right to credit bid its Prepetition Secured Obligations in connection with the sale of any of its Prepetition Collateral.

4841-7890-9425.1

(f)     <u>Weekly Meetings</u>. The Debtors shall arrange for weekly (unless waived by the Prepetition Secured Parties in their sole and absolute discretion) status calls with the Prepetition Secured Parties and their advisors, and shall cause the Debtors' advisers and chief restructuring officer to participate to discuss (A) the Approved Budget, any Budget Variances and any other reports or information delivered by the Debtors, (B) the financial operations and performance of the Debtors' business, (C) progress in achieving the Milestones (as defined below) and any wind-down, liquidation, or going concern sale or marketing process or efforts, (D) the status of the Chapter 11 Cases generally, and (E) such other matters relating to the Debtors as the Prepetition Secured Parties (or their respective agents or advisors) shall reasonably request ("<u>Weekly Meetings</u>").  The DIP Agent and its counsel may attend the Weekly Meetings at their discretion.

(g)     <u>Milestones</u>. The Debtors shall have (i) prepared a contingency plan for the wind-down of the Debtors' operations in the event that a going concern sale is not achieved, which plan shall be reasonably acceptable to the Prepetition Secured Parties no later than July 28, 2021 at 12:00 noon prevailing Central Time, (ii) prepared a 13-week budget that is reasonably acceptable to the Prepetition Secured Parties no later than July 28, 2021 at 12:00 noon prevailing Central Time, (iii) filed with the Court a motion requesting approval of proposed bidding procedures that are reasonably acceptable to the Prepetition Secured Parties and that adhere to the milestones described in clauses (iv) and (v) below no later than ten (10) business days after the Petition Date, (iv) obtained, within sixty (60) calendar days after the Petition Date, a binding stalking horse bid for the sale of all or substantially all of the Debtors' assets which bid shall be reasonably acceptable to each Prepetition Secured Party, and (v) completed the closing of a sale of all or substantially all of the Debtors' assets that is reasonably acceptable to each Prepetition

Secured Party, within one hundred twenty (120) calendar days after the Petition Date (collectively with (i) through (iv), the "Milestones").

(h)     [Reserved].

(i)     Financial Reporting.  The Debtors shall provide the advisors to the Ad Hoc Term Lender Group, the Revolving Administrative Agent (on behalf of the Revolving Lenders), and J. Aron, with the financial reporting and inspection rights described more fully in paragraph 12 below.

(j)     Right to Seek Additional Adequate Protection.  Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Secured Parties in this Interim Order is without prejudice to the right of the Prepetition Secured Parties to seek at any time, including, without limitation, in connection with the Final Order, modification of the grant of adequate protection provided hereby so as to provide different or additional forms of adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest such modification.  Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the Prepetition Secured Parties under their respective Prepetition Secured Documents or under equity or law, and the Prepetition Secured Parties expressly reserve all of their respective rights and remedies whether now existing or hereafter arising under their respective Prepetition Secured Documents, equity, and law in connection with all termination events and defaults and events of default under such agreements or hereunder.

10.     Amendments, Consents, Waivers, and Modifications.  The Debtors, with the express written consent of the DIP Agent, may enter into any amendments, consents, waivers, or modifications to the DIP Loan Documents that are not materially adverse to the Debtors without the need for further notice and hearing or any order of this Court; provided, however, that, without

the approval of the Court on notice and a hearing, no such amendments, consents, waivers or modifications shall (i) shorten the maturity of the DIP Financing, (ii) increase the commitments thereunder or the rate of interest payable under the DIP Loan Documents, (iii) require the payment of any new or additional fee, or (iv) amend the Events of Default or covenants in the DIP Loan Documents to be materially more restrictive to the Debtors; *provided, further,* that any amendment, modification, waiver, or consent that adversely affects the rights or economic interest of any Prepetition Secured Party shall require the prior written consent of such Prepetition Secured Party; and *provided, further,* that any amendments, modification, waiver, or consent to or in respect of Section 10.05(b)(v) of the DIP Credit Agreement shall require the prior written consent of each Prepetition Agent.  No consent shall be implied by any other action, inaction, or acquiescence of any of the DIP Secured Parties or any of the Prepetition Secured Parties.

11.     <u>Perfection of DIP Liens and Prepetition Secured Parties' Adequate Protection Liens</u>.

(a)     The DIP Agent, and the Prepetition Secured Parties, as applicable, are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments (subject to Borrower's prior review and approval, not to be unreasonably withheld, conditioned or delayed) in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder, in each case, without the necessity to pay any mortgage recording fee or similar fee or tax.  Whether or not the DIP Agent, on behalf of the DIP Secured Parties, or the Petition Secured Parties, in their respective sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the

liens and security interests granted to them hereunder, such liens and security interests shall, to the extent provided in this Interim Order, be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute or subordination upon entry of this Interim Order. The Debtors shall, if requested, execute and deliver to the DIP Agent or the Prepetition Secured Parties, as applicable, all such agreements, financing statements, instruments and other documents as the DIP Agent or the Prepetition Secured Parties may reasonably request to more fully evidence, confirm, validate, perfect, preserve, and enforce the DIP Liens or the Prepetition Secured Parties' Adequate Protection Liens, as applicable, and all such documents will be deemed to have been recorded and filed as of the Filing Date.

(b)     A certified copy of the Interim Order may be filed by the DIP Agent or the Prepetition Secured Parties with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby directed to accept such certified copy of this Interim Order for filing and recording.

12.     <u>Financial Reporting and Inspection Rights</u>. The Debtors shall provide the advisors to the DIP Agent, Ad Hoc Term Lender Group, the Term Administrative Agent, the Revolving Administrative Agent (on behalf of the Revolving Lenders), the Project Collateral Agent and J. Aron, with the financial and other reporting as described in the DIP Loan Documents and the Prepetition Secured Documents, in addition to (i) any financial reporting given to the U.S. Trustee and (ii) any additional reports reasonably requested by and of the DIP Agent and the Prepetition Secured Parties. The Debtors shall deliver to each of the DIP Agent, the Ad Hoc Term Lender Group, the Term Administrative Agent, the Revolving Administrative Agent (on behalf of the Revolving Lenders), the Project Collateral Agent, and J. Aron, and their respective counsel

48

financial reporting information in a timely manner that is requested by any of them in writing, and shall make personnel available to answer questions concerning such financial reporting and the operations of the Debtors during normal business hours on no less than two (2) business days' advance notice to Debtors' counsel, and within five (5) business days of the request being made to Debtors' counsel unless otherwise agreed to by the parties. The Debtors shall provide the DIP Agent, the Ad Hoc Term Lender Group, the Term Administrative Agent, the Revolving Administrative Agent, the Project Collateral Agent, and J. Aron and their respective agents, representatives, or professionals, with access to, and on-site inspections of, the Debtors' property and company records, as may be reasonably requested, during normal business hours, on no less than two (2) business days' advance notice to Debtors' counsel, and within five (5) business days of the request being made to the Debtors' counsel, unless the parties agree otherwise on the actual inspection date. The Debtors shall promptly provide the DIP Agent with any information or documents that are provided to the Term Administrative Agent, the Revolving Administrative Agent, the Project Collateral Agent and J. Aron and vice versa.

13.     Third Parties.  Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Secured Parties contained in this Interim Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, following entry of an order granting a Stay Relief Motion (defined below) as set forth in paragraph 17(c) hereof and solely to the extent the applicable DIP Collateral is not subject to a Permitted Prior Lien, upon three (3) Business Days' written notice to the landlord, lienholder, licensor, or other third party owner of any leased or licensed premises or intellectual property that a Termination Event has occurred under the DIP Loan Documents and that the DIP Agent is permitted to exercise remedies, the DIP Agent (i) may, only subject to any

4841-7890-9425.1

separate agreement by and between the applicable landlord or licensor (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon and (ii) subject to applicable law, shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, trade-names, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a lien or license of any third party and which are used by the Debtors in their businesses, in either the case of subparagraph (i) or (ii) of this paragraph without interference from lienholders or licensors thereunder.  To the extent applicable law prohibits the forgoing access or use of rights, the DIP Agent shall have the right to an expedited hearing on five (5) Business Days' notice to obtain Court authorization to obtain such access or use of such rights.

14.  <u>Automatic Stay Modified</u>.  The automatic stay provisions of section 362 of the Bankruptcy Code hereby are vacated and modified without the need for any further order of this Court to permit (a) the Debtors to grant the DIP Liens and the DIP Superpriority Claims, and to perform such acts as the DIP Agent may request to assure the perfection and priority of the DIP Liens; (b) the Debtors to grant the Prepetition Secured Parties' Adequate Protection Liens, and to perform such acts as the Prepetition Secured Parties may request to assure the perfection and priority of the Prepetition Secured Parties' Adequate Protection Liens; (c) the Debtors to incur all liabilities and obligations, including all of (i) the DIP Obligations, to the DIP Secured Parties and (ii) the Adequate Protection Obligations to the Prepetition Secured Parties, in each case as contemplated under this Interim Order and the DIP Loan Documents; (d) the Debtors to pay all amounts referred to, required under, in accordance with, and subject to the DIP Loan Documents and this Interim Order, including any Adequate Protection Obligations; (e) the DIP Secured Parties

to retain and apply payments made in accordance with the DIP Loan Documents and this Interim Order; (f) the DIP Agent, the DIP Lenders and the Prepetition Secured Parties to exercise the rights and remedies set forth in paragraph 17 hereof, upon the occurrence of a Termination Event (as defined below); (g) the Prepetition Secured Parties to exercise the rights and remedies under their respective Prepetition Secured Documents, as applicable, pursuant to paragraph 17(c) hereof; (h) without a determination that the automatic stay applies, but out of an abundance of caution, J. Aron to retain and apply amounts received from the liquidation of its IFF Property to obligations owed by the Debtors to J. Aron under the J. Aron Transaction Documents; (i) upon entry of a Final Order, J. Aron to set off and net any Margin (as defined in the J. Aron Master Monetization Agreement) against any obligations owed by the Debtors to J. Aron under the J. Aron Transaction Documents; (j) the Debtors to perform under the DIP Loan Documents and any and all other instruments, certificates, agreements and documents which may be required, necessary or prudent for the performance by the applicable Debtors under the DIP Loan Documents and any transactions contemplated therein or in this Interim Order; and (k) the implementation of all of the terms, rights, benefits, privileges, remedies, and provisions of this Interim Order and the DIP Loan Documents, in each case without further notice, motion or application to, or order of, or hearing before, this Court, subject to the terms of this Interim Order, except that to the extent any Prepetition Secured Party seeks to enforce its respective rights, benefits, privileges, remedies under, or provisions of, this Interim Order and the Prepetition Secured Documents against property of the Debtors' estates (other than any such rights, benefits, privileges, or remedies described in clauses (h) and (i)), such Prepetition Secured Party shall provide the Debtors with ten (10) days written notice prior to any such enforcement. The Debtors and DIP Lenders have consented to the exercise of rights, benefits, privileges, and remedies described in clauses (h) and (i).  Nothing in this Interim Order shall impair

or abridge the Debtors' right to seek and, if granted by the Bankruptcy Court, obtain the use of Cash Collateral on a nonconsensual basis, and the rights of the DIP Secured Parties, the holders of the Permitted Prior Liens and the Prepetition Secured Parties to object to such request are fully preserved.

15.     <u>Termination Date</u>.  Each of the following shall constitute a termination event under this Interim Order (each a "<u>Termination Event</u>", and the date upon which such Termination Event occurs, the "<u>Termination Date</u>"), unless waived in writing (delivery by email or other electronic means being sufficient) by the DIP Agent and each Prepetition Agent:

(a)     the occurrence of the "Maturity Date" (as defined in the DIP Loan Documents) of the DIP Financing under the DIP Loan Documents;

(b)     acceleration of the obligations under the DIP Loan Documents upon the occurrence of an "Event of Default" under and as defined by the DIP Loan Documents;

(c)     nine (9) months following entry of the Interim Order;

(d)     failure to obtain entry of the Final Order within 30 days from the entry of this Interim Order;

(e)     entry of a Final Order with DIP Lien priorities that differ from the priorities set forth in paragraph 7 above without the express written consent of the DIP Secured Parties;

(f)     entry of an order authorizing the Borrower or any Guarantor to incur DIP financing from any party other than the DIP Secured Parties;

(g)     the closing date of a sale of all or substantially all of the Debtors' assets under section 363 of the Bankruptcy Code (whether in one transaction or a series of related or unrelated transactions) (a "<u>363 Sale</u>");

4841-7890-9425.1

(h)      the effective date of a confirmed chapter 11 plan (a "Plan") that provides for indefeasible payment in full, in cash of all obligations owing under the DIP Loan Documents or is otherwise acceptable to the DIP Agent and the DIP Lenders in their sole discretion;

(i)      the failure by the Debtors to timely perform any of the material terms, provisions, conditions, covenants, or other obligations under this Interim Order;

(j)      the filing of a motion or other pleading requesting (or entry of an order approving) the appointment of a trustee, other estate fiduciary or an examiner with special/expanded powers which the Debtors fail to timely oppose without the prior written consent of the DIP Agent and Prepetition Secured Parties;

(k)      an order converting any Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of the Chapter 11 Cases;

(l)      the filing or support by any Debtor of any plan of reorganization that (1) does not provide for indefeasible payment in full, in cash of all obligations owing under the DIP Loan Documents and (2) is not otherwise acceptable to DIP Agent and the DIP Lenders in their sole discretion; and

(m)      any modifications, amendments, reversal, or extensions of this Interim Order that are adverse to the DIP Secured Parties or the Prepetition Secured Parties.

In addition to the foregoing, each of the following shall constitute Termination Event upon which any Prepetition Secured Party may terminate the Debtors' authorization to use Cash Collateral, but not exercise any other remedies under this Interim Order:

(n)      the failure of the Debtors to use commercially reasonable efforts to pursue collection of the insurance claims or disputed amounts owed to the Debtors by BP or (2) seek the agreement of the Government of the U.S. Virgin Islands (the "USVI") to draw on the letter of

credit provided by Limetree Bay Terminals, LLC, as financial assurance under the ROA by and among the USVI and certain of the Debtors; provided, however, that so long as the Debtors have used such commercially reasonable efforts in connection with either of the foregoing, no Cash Collateral Termination Event shall be deemed to arise hereunder this subclause "n" in the event the Debtors fail to collect any amounts or cause the USVI to draw on such letter of credit;

(o)     the filing by the Debtors of a motion for authorization to sell all or substantially all of the Debtors' assets or for approval of any related bidding procedures that is not reasonably acceptable to each of the Prepetition Agents; and

(p)     the failure of the Debtors to comply with any of the Milestones.

Nothing in the preceding paragraphs 14 and 15 of this Interim Order shall constitute or be deemed to constitute an amendment or modification to sections 2.6, 3.7(e), 5.6 or 5.9 of the Intercreditor Agreement, or any other provisions of the Intercreditor Agreement.

16.     Cash Collateral Termination Events.  Following a DIP Repayment Event, each of the following shall constitute a cash collateral termination event under this Interim Order (each a "Cash Collateral Termination Event", and the date upon which such Cash Collateral Termination Event occurs, the "Cash Collateral Termination Date"), unless waived in writing (delivery by email or other electronic means being sufficient) by each Prepetition Agent:

(a)     if on or before the date of the DIP Repayment Event, the Debtors and the Prepetition Agents have not agreed to the terms and conditions of the Debtors' continued consensual use of Cash Collateral, the adequate protection to be provided to the Prepetition Secured Parties, and the terms of a budget;

(b)     the bringing of a motion, taking of any action or the filing of any plan of reorganization or liquidation or disclosure statement attendant thereto by or on behalf of the

Debtors in the Chapter 11 Cases: (a) to obtain postpetition financing, absent the consent of the Prepetition Secured Parties; (b) to grant any lien, absent the consent of each Prepetition Agent; or (c) to use Cash Collateral in manner that is inconsistent with the terms of this Interim Order or the Approved Budget, subject to the approved Budget Variances, and it being further specified that any request for payment, or payment, of professionals fees by any party not limited herein to the projected fees in the Approved Budget in excess of the budgeted amount shall not be deemed a Cash Collateral Termination Event;

(c)     the closing date of a 363 Sale;

(d)     the failure by the Debtors to timely perform any of the material terms, provisions, conditions, covenants, or other obligations under this Interim Order;

(e)     the filing of a motion or other pleading requesting (or entry of an order approving) the appointment of a trustee or an estate fiduciary or an examiner with special powers which the Debtors fail to timely oppose without the prior written consent of the Prepetition Secured Parties;

(f)     an order converting any Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of the Chapter 11 Cases;

(g)     the filing or support by any Debtor of a plan of reorganization or liquidation that is not acceptable to each Prepetition Agent in its sole discretion;

(h)     any modifications, amendments, reversal, or extensions of this Interim Order that are adverse to the Prepetition Secured Parties;

(i)     the failure of the Debtors to use commercially reasonable efforts to pursue collection of the insurance claims or disputed amounts owed to the Debtors by BP or (2) seek the agreement of the Government of the USVI to draw on the letter of credit provided by Limetree

Bay Terminals, LLC, as financial assurance under the ROA by and among the USVI and certain

of the Debtors; provided, however, that so long as the Debtors have used such commercially

reasonable efforts in connection with either of the foregoing, no Cash Collateral Termination Event

shall be deemed to arise hereunder this subclause "i" in the event the Debtors fail to collect any

amounts or cause the USVI to draw on such letter of credit;

(j)     the filing by the Debtors of a motion for authorization to sell all or

substantially all of the Debtors' assets or for approval of any related bidding procedures that is not

acceptable to each Prepetition Agent; and

(k)     the failure of the Debtors to comply with any of the Milestones or to hold

Weekly Meetings.

Nothing in the preceding paragraph 16 of this Interim Order shall constitute or be

deemed to constitute an amendment or modification to sections 2.6, 3.7(e), 5.6 or 5.9 of the

Intercreditor Agreement, or any other provisions of the Intercreditor Agreement.

17.     <u>Rights and Remedies Upon Termination Event</u>.

(a)     Upon the occurrence and during the continuation of a Termination Event,

the DIP Agent or any Prepetition Secured Party, as applicable, or, following a Cash Collateral

Termination Event, any Prepetition Secured Party may (and any automatic stay otherwise

applicable to the DIP Secured Parties or the Prepetition Secured Parties, whether arising under

sections 105 or 362 of the Bankruptcy Code or otherwise, but subject to the terms of this Interim

Order (including this paragraph) is hereby modified, without further notice to, hearing of, or order

from this Court, to the extent necessary to permit the DIP Secured Parties and the Prepetition

Secured Parties, as applicable, to) deliver a written notice (a "<u>Termination Notice</u>") (including by

e-mail) to counsel for the Debtors, counsel for each of the Prepetition Agents, counsel for the Ad

Hoc Term Lender Group, counsel for J. Aron and the U.S. Trustee (the "Remedies Notice Parties"),
declaring and triggering, as applicable:  (i) the immediate termination of the DIP Financing and
any DIP Loan Document as to any future liability or obligation of the DIP Secured Parties, but
without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; (ii)
all DIP Obligations to be immediately due and payable; (iii) right to charge interest at the default
rate under the DIP Loan Documents; (iv) a termination of the ability of the Debtors to use any
Cash Collateral.

(b)     Upon delivery of such Termination Notice by the DIP Agent or any of the
Prepetition Secured Parties, without further notice or order of the Court, the Debtors' authorization
to use Cash Collateral and to incur the DIP Financing hereunder will, subject to the expiration of
the Remedies Notice Period (as defined below), automatically terminate and (i) the DIP Secured
Parties will have no obligation to provide any further DIP Financing or other financial
accommodations and (ii) no Prepetition Secured Party will have an obligation to permit the
Debtors to continue to use Cash Collateral; *provided that*, during the Remedies Notice Period (as
defined below), the Debtors shall be entitled to continue to use Cash Collateral solely in accordance
with the terms of this Interim Order and the DIP Loan Documents and to pay items solely as set
forth in the Approved Budget (or following a DIP Repayment Event, solely in accordance with the
terms of this Interim Order and to pay items solely as set forth in the Approved Budget), without
any variance.

(c)     Following a Termination Event or Cash Collateral Termination Event, but
prior to exercising the remedies set forth in this sentence below, the DIP Secured Parties or a
Prepetition Secured Party, as applicable, shall be required to file a motion with the Court seeking
emergency relief (the "Stay Relief Motion") on three (3) business days' notice to the Remedies

Notice Parties (the "Remedies Notice Period") for a further order of the Court modifying the automatic stay in the Chapter 11 Cases to permit the DIP Secured Parties or the Prepetition Secured Parties, as applicable, to: (i) freeze monies or balances in the Debtors' accounts; (ii) immediately set-off any and all amounts in accounts subject to a control agreement in favor of the DIP Secured Parties against the DIP Obligations, (iii) enforce any and all rights against the DIP Collateral (to the extent such DIP Collateral is not subject to a Permitted Prior Lien), including, without limitation, foreclosure on all or any portion of the DIP Collateral, collection of accounts receivable, occupying the Debtors' premises, and sale or disposition of the DIP Collateral (or following a DIP Repayment Event, enforce any and all rights against the Prepetition Collateral, including, without limitation, foreclosure on all or any portion of the Prepetition Collateral, collection of accounts receivable, occupying the Debtors' premises, and sale or disposition of the Prepetition Collateral); (iv) terminate and revoke the Debtors' right under this Interim Order or the DIP Loan Documents to use any Cash Collateral, except to fund the Carve-Out; and (v) take any other actions or exercise any other rights or remedies permitted under this Interim Order, the DIP Loan Documents, the Prepetition Secured Documents, or applicable law. The Debtors, the DIP Secured Parties and the Prepetition Secured Parties consent to a hearing on the Stay Relief Motion on an expedited basis. Any order granting a Stay Relief Motion filed by any of the Prepetition Secured Parties shall also modify the automatic stay to the extent necessary to permit (i) the Prepetition Secured Parties to immediately set off and net any and all amounts in accounts subject to a control agreement in their favor, any Margin (as defined in the Monetization Master Agreement) and any amounts owed by them to the Debtors against any obligations under the Secured Financing Documents, (ii) enforce any and all rights against any collateral securing any obligations under the Prepetition Secured Documents, including without limitation foreclosure on all or any portion of such collateral,

4841-7890-9425.1

collection of accounts receivable, occupying the Debtors' premises, and sale or disposition of the DIP Collateral; and (iii) take any other actions or exercise any other rights or remedies permitted under this Interim Order, the Secured Financing Documents, or applicable law.

(d)     The rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that the DIP Secured Parties have under the DIP Loan Documents, or otherwise or that the Prepetition Secured Parties have under the Prepetition Secured Documents or otherwise.  If any of the DIP Secured Parties or Prepetition Secured Parties are permitted by the Court to take any enforcement action with respect to the DIP Collateral, or the Prepetition Secured Parties are permitted by the Court to take any enforcement action with respect to the Prepetition Collateral, following the hearing on the Stay Relief Motion, and subject to relative rights and priorities of the other DIP Secured Parties or Prepetition Secured Parties as provided in or recognized under this Interim Order, the Debtors shall cooperate with such party in its efforts to enforce its security interest in the DIP Collateral or the Prepetition Collateral, as applicable, and shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such party from enforcing its security interests in the DIP Collateral or the Prepetition Collateral, as applicable.

18.     <u>Subsequent Reversal or Modification</u>.  This Interim Order is entered pursuant to, *inter alia*, section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP Secured Parties and Prepetition Secured Parties all protections afforded by section 364(e) of the Bankruptcy Code.  If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by the Debtors to the DIP Secured Parties prior to the date of receipt by the DIP Agent of written notice of the effective date of such action, (ii) the

payment of any fees required under this Interim Order or the DIP Loan Documents, (iii) the validity and enforceability of any lien, claim, obligation, right, remedy or priority authorized or created under this Interim Order or pursuant to the DIP Loan Documents as of such date, including any Adequate Protection Obligations, and (iv) the validity or enforceability of the Aron Rights.

19.     <u>Restriction on Use of DIP Lenders' Funds and Prepetition Collateral</u>. Notwithstanding anything herein to the contrary, none of the DIP Collateral or proceeds thereof, proceeds of the DIP Financing, the Prepetition Collateral or proceeds thereof, any portion of the Carve-Out may be used by the Debtors, the Debtors' estates, the Committee, any trustee or examiner appointed in the Chapter 11 Cases or any chapter 7 trustee, or any other party in interest, directly or indirectly, to: (a) request authorization to obtain postpetition financing (whether equity or debt) or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than (i) from the DIP Agent or (ii) if such financing is sufficient to indefeasibly pay all DIP Obligations in full in cash and such financing is immediately so used; (b) assert, join, commence, support, investigate, or prosecute any action for any claim, counter-claim, action, cause of action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, in any capacity, the DIP Releasees or the Prepetition Secured Releasees, with respect to any transaction, occurrence, omission, or action, including, without limitation, (i) any action arising under the Bankruptcy Code against a DIP Releasee or a Prepetition Secured Releasee; (ii) any so-called "lender liability" claims and causes of action against a DIP Releasee or Prepetition Secured Releasee; (iii) any action with respect to the legality, enforceability, validity, extent, perfection, and priority of the DIP Obligations, the DIP Superpriority Claims, the DIP Loan Documents, the DIP Liens, or Prepetition Secured Obligations; (iv) any action for avoidance under

sections 544, 547, 548, 549, or 550 of the Bankruptcy Code against the DIP Secured Parties or a Prepetition Secured Releasee; (v) any action seeking to invalidate, set aside, avoid, reduce, set off, offset, recharacterize, subordinate (whether equitable, contractual, or otherwise), recoup against, disallow, impair, raise any defenses, cross-claims, or counter claims, or raise any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation against or with respect to the DIP Liens, the DIP Obligations, the DIP Superpriority Claims, or the Prepetition Secured Obligations in whole or in part; (vi) appeal or otherwise challenge this Interim Order, the DIP Loan Documents, or any of the transactions contemplated herein or therein; or (vii) any action that has the effect of preventing, hindering, or delaying (whether directly or indirectly) the DIP Secured Parties' or Prepetition Secured Parties' rights in respect of their respective liens on and security interests in the DIP Collateral or Prepetition Collateral, as applicable, or any of their rights, powers, or benefits hereunder or in the DIP Loan Documents or this Interim Order anywhere in the world; (c) seek to modify any of the rights granted to the DIP Secured Parties or the Prepetition Secured Parties hereunder or under the DIP Loan Documents; or (d) pay any claim of a prepetition creditor except as permitted under the DIP Loan Documents in accordance with the Approved Budget.   Notwithstanding the foregoing, the terms and limitations of this paragraph shall not apply to a successful action on the part of the Debtors whereby under paragraph 17 of this Interim Order the Debtors obtain an order of the Court staying or otherwise modifying a Termination Event or a Cash Collateral Termination Event.

20.     <u>Restriction on Use of Proceeds of Inventory Financing Collateral</u>. For the avoidance of doubt, nothing in this Interim Order authorizes the sale or use of Inventory Financing Collateral or proceeds thereof other than Cash Collateral.

21.    <u>Insurance Policies</u>.  Upon entry of this Interim Order, the DIP Lenders are, and are deemed to be, without any further action or notice (including endorsements), named as additional insured and loss payees on each insurance policy maintained by the Debtor which in any way relates to the DIP Collateral.

22.    <u>Collateral Rights</u>.  Except as expressly provided in the Approved Budget or permitted in this Interim Order or the DIP Loan Documents, in the event that any person or entity that holds a lien on or security interest in DIP Collateral of the Debtors' estates, that is junior or otherwise subordinate to the DIP Liens receives or is paid the proceeds of such DIP Collateral, prior to indefeasible payment in full in cash and the complete satisfaction of all DIP Obligations under the DIP Loan Documents, and termination of the commitments under the DIP Loan Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral of the Debtors' estates, in trust for the DIP Lenders, and shall immediately turnover such proceeds to the DIP Agent for application in accordance with the DIP Loan Documents and this Interim Order.  Except as expressly provided in the Approved Budget or permitted in this Interim Order or the applicable Prepetition Secured Document, in the event that any person or entity that holds a lien on or security interest in any collateral securing the obligations under any Prepetition Secured Document that is junior or otherwise subordinate to the lien in favor of the applicable Prepetition Secured Parties receives or is paid the proceeds of such collateral prior to indefeasible payment in full in cash and the complete satisfaction of all obligations under the applicable Prepetition Secured Document, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such collateral in trust for the applicable Prepetition Secured Parties, and shall immediately turn over such proceeds

4841-7890-9425.1

to the applicable Prepetition Secured Parties or their respective agents for application in accordance with the relevant Prepetition Secured Document and this Interim Order.

23.     <u>Prohibition on Additional Liens</u>.  Except as provided in the DIP Loan Documents, the Prepetition Secured Documents, and this Interim Order, the Debtors shall be enjoined and prohibited from, at any time during the Chapter 11 Cases until such time as the DIP Obligations and obligations under the Prepetition Secured Documents have been indefeasibly paid in full, granting liens on or security interests in the DIP Collateral or the collateral securing the obligations under the Prepetition Secured Documents or any portion thereof to any other entities, pursuant to section 364(d) of the Bankruptcy Code or otherwise, which liens are junior to, senior to, or *pari passu* with the DIP Liens, the Prepetition Secured Parties' Adequate Protection Liens, or the liens in favor of the Prepetition Secured Parties.

24.     <u>No Waiver</u>.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that any of the DIP Secured Parties or the Prepetition Secured Parties may have to bring or be heard on any matter brought before this Court.

25.     <u>Sale/Conversion/Dismissal/Plan</u>.

(a)     No order providing for either the sale of the ownership of the stock of the Debtors or the sale of all or substantially all of the assets of the Debtors under section 363 of the Bankruptcy Code shall be entered by the Court unless, in connection and concurrently with any such event, (X) the Prepetition Secured Parties consent to the entry of such order and (Y) (i) the proceeds of any DIP Collateral included in such sale shall, subject to the prior satisfaction of any Permitted Prior Liens encumbering such DIP Collateral, be used to indefeasibly pay in full in cash and completely satisfy the DIP Obligations and the obligations under the Secured Financing Documents, and the commitments under the DIP Loan Documents are terminated; (ii) such sale is

4841-7890-9425.1

expressly permitted under the DIP Loan Documents; or (iii) the DIP Agent and Prepetition Secured Parties otherwise consent.

      (b)    If an order dismissing or converting the Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code or otherwise or an order appointing a chapter 11 trustee or an examiner with expanded powers is at any time entered:

      i.    Unless otherwise agreed to by the DIP Agent, such order shall provide that the Debtors, in each case subject to the Carve-Out and the Permitted Prior Liens, be subject to (a) the DIP Liens, the liens in favor of the Prepetition Secured Parties, the Aron Rights, the DIP Superpriority Claims, the DIP Obligations, the Adequate Protection Liens, and the DIP Loan Documents, which shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in this Interim Order until all DIP Obligations hereunder and all obligations under the DIP Credit Agreement are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Loan Documents are terminated in accordance with the DIP Loan Documents, (b) the Prepetition Liens, Prepetition Secured Parties' Adequate Protection Liens, and any other Adequate Protection Obligations granted or conferred to the Prepetition Secured Parties shall continue in full force and effect, remain binding on all parties-in-interest and maintain their priorities as provided in this Interim Order until all Prepetition Secured Obligations are indefeasibly paid in full in cash and completely satisfied (and that such Prepetition Secured Parties' Adequate Protection Liens, and other Adequate Protection Obligations granted to or conferred on the Prepetition Secured Parties shall, notwithstanding such dismissal or conversion, remain binding on all parties) and (c) all postpetition indebtedness, obligation, or liability incurred by the Debtors to the DIP Secured Parties or the Prepetition Secured Parties prior to the date of such order, including, without limitation, the DIP Obligations and the

Adequate Protection Obligations, shall be governed in all respects by the original provisions of this Interim Order unless the Final Order has been entered, in which case the Final Order shall govern, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Loan Documents,; and

ii.      to the extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Liens. the DIP Superpriority Claims, the Prepetition Liens, the Prepetition Secured Parties' Adequate Protection Liens, the Aron Rights, and any other Adequate Protection Obligations.

26.    <u>Modifications of the Approved Budget</u>.  Without further Order of the Court, the Debtors are hereby authorized to implement, in accordance with the terms hereof and upon the consent of the DIP Agent and each Prepetition Agent, any modifications to the Approved Budget with such modification being in writing, *provided, however*, that (a) each Prepetition Agent shall be deemed to have consented to any such modification if it has not objected to the proposed modification (i) within the greater of twenty-four (24) hours and one (1) business day after written email notice of such modification to counsel to such Prepetition Agent, or (ii) in the case of an Emergency Expense (as defined below) in excess of $250,000, within twelve (12) hours after written email notice of such proposed modification to counsel to such Prepetition Agent, and (b) no consent of the Prepetition Agents shall be necessary if each of the following conditions is satisfied:  (i) the chief restructuring officer has certified, in writing, to the DIP Agent and the Prepetition Agents that the expense is necessary to (A) prevent irreparable harm to the value of the Prepetition Collateral or DIP Collateral, or (B) protect against an imminent harm to the public safety (any such certified expense described in the foregoing clauses (A) or (B) an "<u>Emergency</u>

Expense"), (ii) such Emergency Expense is less than $250,000, and (iii) the aggregate amount of all Emergency Expenses does not exceed $500,000.

27.     <u>Priority of Terms</u>.  To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Loan Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the DIP Loan Documents or another document or agreement or words of similar import, the terms and provisions of this Interim Order shall govern.

28.     <u>No Third-Party Beneficiary</u>.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

29.     <u>Rights Under Sections 363(k) and 1129(b)</u>.  The full amount of the DIP Obligations or the Prepetition Secured Obligations may be used to "credit bid" for the assets and property of the Debtors (other than any collateral in respect of the J. Aron Obligations) on a dollar-for-dollar basis, as provided for in section 363(k) of the Bankruptcy Code, in accordance with the terms of the DIP Loan Documents and this Interim Order, as applicable, without the need for further Court order authorizing the same and whether such sale is (a) pursuant to section 363, (b) pursuant to a plan of reorganization, or (c) by a chapter 7 trustee because, among other things, the denial of such rights would result in the DIP Secured Parties and the Prepetition Secured Parties not receiving the indubitable equivalent of their claims.

30.     <u>Discharge Waiver/Release</u>. Neither the DIP Obligations nor the Adequate Protection Obligations shall be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d)

4841-7890-9425.1

of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash, or granted such other treatment as the Debtors and the DIP Secured Parties, in the case of the DIP Obligations, and the Prepetition Secured Parties, in the case of Adequate Protection Obligations, may agree upon, on or before the effective date of such confirmed plan of reorganization.

31.    <u>Preservation of Prepetition Priorities.</u>  Nothing in this Interim Order is intended to change or otherwise modify the prepetition priorities among prepetition secured creditors of the Debtors, including (i) any lien or recoupment rights to the extent such liens or rights are valid, enforceable, nonavoidable and perfected, (ii) any claims of the lienholders or any other mechanic or materialmen to the extent their liens are valid, enforceable, non-avoidable and perfected, including as permitted by section 546(b) of the Bankruptcy Code, or (iii) any relative rights and priorities of the Prepetition Secured Parties in that certain Collateral Agency and Intercreditor Agreement, dated as of November 20, 2018, as it may be amended, modified or supplemented, by and among certain of the Debtors and the Prepetition Agents, and nothing in this Interim Order, including the granting of adequate protection liens or DIP Liens, shall be deemed to have changed or modified such prepetition priorities, all of which are hereby expressly preserved.  The preservation of prepetition priorities expressly includes lien, setoff, recoupment, contract, and other security rights.

32.    <u>Proofs of Claim.</u>  Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, neither the DIP Agent nor any of the DIP Lenders shall be required to file proofs of claim in the Chapter 11 Cases for any claim allowed herein in or otherwise in relation to the DIP Loan Documents.  In addition, the Prepetition Secured Parties shall not be required to file proofs of claim in the Chapter 11 Cases for any claim allowed herein or otherwise in relation to the Prepetition Secured Obligations, and the stipulations contained Section F and G

of this Interim Order shall be deemed to constitute a timely-filed proof of claim for the Prepetition

Secured Parties in respect of the Prepetition Secured Obligations.

33.    <u>Best Efforts</u>.  If requested to do so by the DIP Agent and consented to by the

Prepetition Secured Parties in writing, or by the Prepetition Secured Parties, the Debtors shall use

their best efforts (subject to applicable law, including, without limitation, the Debtors' fiduciary

duties thereunder) to assist and cooperate with the sale of the DIP Collateral or the collateral

securing the obligations under the Prepetition Secured Documents.

34.    <u>No Consent</u>.  No action, inaction, or acquiescence by the DIP Secured Parties,

including funding the Debtors' ongoing operations under this Interim Order, or the Prepetition

Secured Parties shall be deemed to be or shall be considered as evidence of any alleged consent

by the DIP Secured Parties or the Prepetition Secured Parties to a charge against the DIP Collateral

or the Prepetition Collateral pursuant to sections 506(c), 552(b) or 105(a) of the Bankruptcy Code.

35.    <u>No Marshaling; Equities of the Case.</u>  Subject to entry of the Final Order, neither

the DIP Secured Parties nor the Prepetition Secured Parties shall be subject to the equitable

doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, the Prepetition

Collateral or the liens securing the obligations under the Prepetition Secured Documents.  Subject

to entry of the Final Order, the "equities of the case" exception of section 552(b) of the Bankruptcy

Code shall not apply to the DIP Agent with respect to the DIP Loan Documents and/or the DIP

Collateral or the Prepetition Secured Parties with respect to the Prepetition Secured Documents

and/or the Prepetition Collateral.

36.    <u>Section 506(c) Waiver.</u>  Subject to entry of the Final Order, no costs or expenses of

administration or other charge, lien, assessment, or claim incurred at any time (including any

expenses set forth in the Approved Budget) by any Debtors or any other person or entity shall be

imposed against any or all of the DIP Secured Parties or the Prepetition Secured Parties, their respective claims, or their respective collateral under Section 506(c) of the Bankruptcy Code or otherwise, and the Debtors, on behalf of their estates, waive any such rights.

37.     <u>Indemnification</u>.  The indemnification provisions set forth in Section 10.02 of the DIP Credit Agreement are hereby approved.

38.     <u>Break Up Fee</u>.  In the event that alternative DIP financing is approved before entry of the Final Order with a lender other than the DIP Lenders, the Debtors shall pay the DIP Agent a break up fee of $250,000 in lieu of the Deferred Commitment Fees set forth in the DIP Loan Documents.

39.     <u>No Duty to Monitor Compliance</u>.  The DIP Agent, DIP Lenders and the Prepetition Secured Parties may assume the Debtors will comply with this Interim Order and the Approved Budget and shall not (a) have any obligation with respect to the Debtors' use of Cash Collateral or proceeds of the DIP Financing (other than their consent to the use of Cash Collateral or proceeds of the DIP Financing in accordance with and subject to terms of this Interim Order); (b) be obligated to directly pay any expenses incurred or authorized to be incurred pursuant to this Interim Order (including any amounts specified in the Approved Budget); or (c) be obligated to ensure or monitor that sufficient Cash Collateral or proceeds of the DIP Financing exists to pay any expenses incurred or authorized to be incurred pursuant to this Interim Order.

40.     <u>Adequate Notice</u>.  The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the Bankruptcy Local Rules.  Under the circumstances, no further notice of the request for the relief granted at the Interim Hearing is required.  The Debtors shall promptly serve copies of this Interim Order and notice of the Final

4841-7890-9425.1

Hearing to any person included on the master service list approved or established in this case within two (2) Business Days of the Interim Order Entry Date.

41.     <u>Binding Effect Successors and Assigns</u>.  Except as set forth in paragraph 42 of this Interim Order, the DIP Loan Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties-in-interest in this Chapter 11 Cases, including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, the Committee or examiner appointed in these Chapter 11 Cases, and the Debtors, and their respective successors and assigns (including any trustee or fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estate of the Debtors) whether in these Chapter 11 Cases, in any Successor Cases, or upon any dismissal of any such chapter 11 or chapter 7 case and shall inure to the benefit of the DIP Secured Parties, the Prepetition Secured Parties and the Debtors, and their respective successors and assigns, *provided*, *however*, that the agreement of the DIP Secured Parties to extend financing under the DIP Loan Documents and the Prepetition Secured Parties' consent to the use of Cash Collateral, in each case, shall terminate upon the appointment of any chapter 7 or 11 trustee, examiner with expanded powers, or similar responsible person appointed for the estates of the Debtors.  In determining to make any loan (whether pursuant to the DIP Loan Documents, a promissory note, or otherwise), consenting to the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Loan Documents, the DIP Secured Parties and the Prepetition Secured Parties shall not (i) be deemed to be in control of the operations of the Debtors, or (ii) owe any fiduciary duty to the Debtors, or their creditors, shareholders, or estates.  Except as set forth in paragraph 42 of this Interim Order, each stipulation, admission, and agreement contained in sections E, F, G and I of this Interim Order shall also be binding upon all persons and entities, including the Debtors,

their estates, any Committee, or any chapter 7 or chapter 11 trustee appointed or elected for any of

the Debtors or any other person acting on behalf of the Debtors' estates, under all circumstances

and for all purposes, subject to the Challenge Period as defined below.

42.    Effect of Stipulations.  The stipulations, waivers and releases contained in sections

F, G, and I of this Interim Order with respect to the Prepetition Secured Parties (the "Debtors'

Stipulations") shall be binding upon the Debtors and their estates in all circumstances immediately

upon entry of this Interim Order.  The Debtors' Stipulations shall be binding upon each party in

interest (other than the Debtors and their estates), including the Committee, if any, and any chapter

11 trustee (or if any of these Chapter 11 Cases are converted to a case under chapter 7 prior to the

expiration of the Challenge Period (defined below), the chapter 7 trustee in such Successor Case),

together with each of their respective representatives, subsidiaries, successors and assigns, unless

(a) such party (subject in all respects to any agreement or applicable law which may limit or affect

such entity's right or ability to do so), with the requisite standing granted by the Court, has timely

and properly filed an adversary proceeding by no later than the date that is the earlier of (i) the

effective date of a confirmed chapter 11 plan, and (ii) the day that is sixty (60) days from the date

of the entry of this Interim Order (or, in the case of the Committee, sixty (60) days from the date

of the appointment of the Committee (as such date may be extended by the applicable Prepetition

Secured Party in writing or by order of the Court)) (the "Challenge Period"), (x) objecting to or

challenging the amount, validity, perfection, enforceability, priority, or extent of the debt or liens

referenced in the Debtors' Stipulations (including those under sections 506, 544, 547, 548, 549,

550, and/or 552 of the Bankruptcy Code) or otherwise objecting to the admissions, stipulations,

findings, or releases included in the Debtors' Stipulations; or (y) otherwise asserting or prosecuting

any cause of action for preferences, fraudulent transfers or conveyances, or any cause of action

71

challenging the actions or inactions of any of the Prepetition Secured Parties, including any claim against any or all of the Prepetition Secured Parties in the nature of a "lender liability" cause of action, or any other offsets, setoffs, recoupments, challenges, objections, defenses, claims, counterclaims, or causes of action of any kind or nature, whether in these Chapter 11 Cases or any subsequent chapter 7 cases, against any of the Prepetition Secured Parties on behalf of the Debtors' estates, including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law (clauses (x) and (y) collectively, the "Challenges" and, each individually, a "Challenge"); and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such Challenge in any such duly filed adversary proceeding; provided, that, as to the Debtors, all such Challenges and proceedings are hereby irrevocably waived and relinquished as of the Petition Date.  Any complaint or motion for standing filed in, or in connection with, any Challenge proceeding shall set forth with specificity the basis for such Challenge and any Challenges not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released, and barred.  If no adversary proceeding or contested matter is timely filed prior to the expiration of the Challenge Period or the court does not rule in favor of the plaintiff in any such Challenge proceeding, without further order of the Court: (v) the Debtors' Stipulations, including the releases, shall be binding on all parties in interest including, without limitation, the Committee, if any, and any trustee (including any chapter 7 trustee); (w) any and all Challenges by any party in interest shall be deemed to be forever released, waived, and barred; (x) the claims of the Prepetition Secured Parties shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, offset, any cause of action of any kind, challenge, or defense (including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable

4841-7890-9425.1

or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law), for all purposes in these Chapter 11 Cases and any subsequent chapter 7 case; (y) the liens of the Prepetition Secured Parties shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, recharacterization, subordination, or avoidance; and (z) the Prepetition Secured Parties (and their respective agents, affiliates, subsidiaries, directors, officers, manager, representatives, attorneys, and advisors) shall not be subject to any other or further Challenge or investigation in respect of any Challenge by any person.  If any such adversary proceeding is timely filed prior to the expiration of the Challenge Period, the Debtors' Stipulations, shall nonetheless remain binding and preclusive on the Committee, if any, and any parties in interest, including any trustee, except as to any such findings and admissions that were expressly challenged in such adversary proceeding (it being understood that any non-challenging parties are bound).  Nothing in this Interim Order vests or confers on any person, including the Committee, if any, standing or authority to pursue any claims or cause of action belonging to the Debtors or their estates, including, without limitation, a Challenge in a Challenge proceeding.  For the avoidance of doubt and notwithstanding the foregoing, (i) the Debtors' stipulations, admissions, and releases contained in Paragraph E of this Interim Order will not be subject to a Challenge or the Challenge Period, and (ii) the DIP Secured Parties agree they will not file a Challenge and will not join in, fund, solicit, encourage or support any Challenge or request to extend the Challenge Period, *provided, however*, that, subject to entry of the Final Order, in the event of a successful Challenge by a party other than the DIP Secured Parties, any property that would otherwise constitute DIP Collateral pursuant to the terms hereof shall, in fact, become DIP Collateral, and the DIP Liens shall attach thereto in the same order and priority as set forth herein.  In the event that there is a

4841-7890-9425.1

timely successful Challenge brought pursuant to this paragraph, the Court shall retain jurisdiction to fashion an appropriate remedy.

43.     <u>Reservation of Rights</u>.  Except as expressly authorized in this Interim Order or as otherwise expressly accepted in writing by the Prepetition Secured Parties, the Prepetition Secured Parties' consent to this Interim DIP Order and any action, inaction, or acquiescence by the Prepetition Secured Parties in connection with this Interim DIP Order (collectively, "<u>Prepetition Secured Parties' Actions</u>"), whether preceding or after the date hereof, shall not be deemed to constitute, evidence or imply any consent, acquiescence, or agreement to, waiver, or any course of dealing or course of conduct (collectively, "<u>Consent</u>"), in connection with any future debtor-in-possession financing, any future use of Cash Collateral, any additional priming liens, or other actions, inactions, relief or requests by the Debtors or DIP Lenders in the future (collectively, "<u>Future Actions</u>"). The Prepetition Secured Parties reserve all rights to object to, challenge and contest any Future Action, and no Debtor, DIP Lender, or Prepetition Secured Party shall assert that any Prepetition Secured Parties' Action constitutes any Consent to any Future Action.

44.     <u>Headings</u>.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

45.     <u>Final Hearing Date</u>. The Court will conduct the Final Hearing on _____, 2021 at _____ __.m., prevailing Central Time.  Objections and responses to the Motion with respect to entry of the Final Order shall be filed and served according to the Local Bankruptcy Rules on or before _____, 2021 at 4:00 pm, prevailing Central Time.  The Debtors shall promptly serve copies of this Interim Order and notice of the Final Hearing on (i) the Office of the United States Trustee for the Southern District of Texas, (ii) the Revolving Administrative Agent, (iii) the Term Administrative Agent, (iv) J. Aron, (v) the Project Collateral Agent, and (vi)

those parties that have filed a notice of appearance requesting notice, which service shall constitute adequate and proper notice of the hearing.

46.     <u>Effect of this Interim Order</u>.   Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 and 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

47.     <u>Retention of Jurisdiction</u>.  This Court retains jurisdiction with respect to all matters arising from or related to the DIP Loan Documents and the implementation of this Interim Order.


  **Signed on July \_\_, 2021.**              _____
                                             **David R. Jones**
                                             **UNITED STATES BANKRUPTCY JUDGE**

4841-7890-9425.1

## Exhibit A

**DIP Credit Agreement**

SENIOR SECURED SUPERPRIORITY DEBTOR IN POSSESSION CREDIT AGREEMENT

Dated as of July [__], 2021

among
LIMETREE BAY REFINING, LLC,
as Borrower,

LIMETREE BAY REFINING HOLDINGS II, LLC,
LIMETREE BAY REFINING HOLDINGS LLC,
LIMETREE BAY SERVICES, LLC,
LIMETREE BAY REFINING OPERATING LLC and
LIMETREE BAY REFINING MARKETING LLC,
as Guarantors,

THE LENDERS FROM TIME TO TIME PARTY HERETO,

and

405 SENTINEL LLC,
as Administrative Agent

_____

$25,000,000 Senior Secured Superpriority Debtor In Possession Credit Facility
_____

ARTICLE I DEFINITIONS AND ACCOUNTING TERMS ................................................................ 2
SECTION 1.01 ...........................................................Certain Defined
Terms ............................................................................ 2
SECTION 1.02    Rules of Interpretation ...................................................... 29
SECTION 1.03    Accounting Terms .............................................................. 30
SECTION 1.04    Certifications, Etc ............................................................. 31

ARTICLE II AMOUNTS AND TERMS OF THE ADVANCES ......................................... 31
SECTION 2.01    The Advances .................................................................... 31
SECTION 2.02    Making the Advances .......................................................... 31
SECTION 2.03    Repayment of Advances ...................................................... 32
SECTION 2.04    Prepayments ....................................................................... 32
SECTION 2.05    Scheduled Interest ............................................................. 34
SECTION 2.06    Termination or Reduction of the Commitments ................... 34
SECTION 2.07    Promissory Notes ............................................................... 34
SECTION 2.08    Collateral Matters .............................................................. 35

ARTICLE III OTHER PROVISIONS RELATING TO THE DIP FACILITY ....................... 36
SECTION 3.01    Default Interest .................................................................. 36
SECTION 3.02    Fees ..................................................................................... 36
SECTION 3.03    Change of Circumstances ................................................... 36
SECTION 3.04    Payments and Computations .............................................. 38
SECTION 3.05    Taxes ................................................................................... 39
SECTION 3.06    Sharing of Payments, Etc ................................................... 43
SECTION 3.07    Use of Proceeds .................................................................. 43
SECTION 3.08    Security ............................................................................... 44

ARTICLE IV CONDITIONS PRECEDENT .................................................................... 45
SECTION 4.01    Conditions Precedent to Closing Date ............................... 45
SECTION 4.02    Conditions Precedent to Each Borrowing .......................... 46
SECTION 4.03    Notices ................................................................................ 48

ARTICLE V REPRESENTATIONS AND WARRANTIES ............................................. 48
SECTION 5.01    Representations and Warranties ........................................ 48

ARTICLE VI COVENANTS .......................................................................................... 55
SECTION 6.01    Affirmative Covenants ....................................................... 55
SECTION 6.02    Negative Covenants ............................................................ 62
SECTION 6.03    Reporting Requirements .................................................... 67
SECTION 6.04    Permitted Activities of Holdings ....................................... 68

ARTICLE VII EVENTS OF DEFAULT ........................................................................... 68
SECTION 7.01    Events of Default ................................................................ 68
SECTION 7.02    Application of Payments ..................................................... 74

ARTICLE VIII THE AGENTS ........................................................................................ 74
SECTION 8.01    Appointment of Agents ...................................................... 74
SECTION 8.02    Rights of Lenders ............................................................... 75
SECTION 8.03    Exculpatory Provisions ...................................................... 75
SECTION 8.04    Reliance by Administrative Agent ...................................... 76
SECTION 8.05    Delegation of Duties ........................................................... 76
SECTION 8.06    Resignation of Administrative Agent ................................. 76
SECTION 8.07    Non-Reliance on Administrative Agent and Other Lenders ........ 77
SECTION 8.08    Withholding Taxes .............................................................. 77

**Page**

SECTION 8.09    Administrative Agent May File Proof of Claim ............................................................ 78
SECTION 8.10    Collateral Matters .................................................................................................... 78

ARTICLE IX GUARANTY .................................................................................................................. 78
SECTION 9.01    Guarantee of Obligations ........................................................................................ 78
SECTION 9.02    Limitation on Obligations Guaranteed .................................................................... 79
SECTION 9.03    Nature of Guarantee; Continuing Guarantee; Waivers of Defenses Etc. ................ 79
SECTION 9.04    Rights of Reimbursement, Contribution and Subrogation ...................................... 81
SECTION 9.05    Payments ................................................................................................................. 82
SECTION 9.06    Bankruptcy, Etc. ..................................................................................................... 82
SECTION 9.07    Duration of Guaranty .............................................................................................. 83
SECTION 9.08    Reinstatement ......................................................................................................... 83

ARTICLE X MISCELLANEOUS ......................................................................................................... 83
SECTION 10.01   Notices ................................................................................................................... 83
SECTION 10.02   Expenses, Indemnity; Damage Waiver .................................................................... 85
SECTION 10.03   Set-Off ................................................................................................................... 86
SECTION 10.04   Amendments and Waivers ...................................................................................... 87
SECTION 10.05   Successors and Assigns; Participations ................................................................... 88
SECTION 10.06   Independence of Covenants .................................................................................... 92
SECTION 10.07   Survival of Representations, Warranties and Agreements ........................................ 92
SECTION 10.08   No Waiver; Remedies Cumulative ......................................................................... 92
SECTION 10.09   Marshaling; Payments Set Aside ............................................................................ 92
SECTION 10.10   Severability ............................................................................................................ 92
SECTION 10.11   Obligations Several; Independent Nature of Lenders' Rights .................................. 92
SECTION 10.12   Headings ................................................................................................................. 93
SECTION 10.13   Governing Law; Jurisdiction, Etc. .......................................................................... 93
SECTION 10.14   Waiver of Jury Trial ............................................................................................... 93
SECTION 10.15   Confidentiality ....................................................................................................... 94
SECTION 10.16   Usury Savings Clause ............................................................................................. 95
SECTION 10.17   Counterparts; Integration; Effectiveness; Electronic Execution .............................. 95
SECTION 10.18   Patriot Act .............................................................................................................. 95

ANNEX I to Credit Agreement ............................................................................................................ 97

SCHEDULES

Schedule I          -       Commitments; Applicable Lending Offices

Schedule II         -       Real Estate Documents

Schedule III        -       Disclosed Liens

Schedule IV         -       Disclosed Contractual Obligations

Schedule 1.01(a)        -         Mortgaged Properties

Schedule 5.01(a)        -         Loan Parties

Schedule 5.01(b)        -         Capital Stock

Schedule 5.01(e)        -         Governmental Consents

Schedule 5.01(h)        -         Adverse Proceedings

Schedule 5.01(i)        -         Taxes

Schedule 5.01(j)        -         Environmental Matters

Schedule 5.01(o)        -         Compliance with Statutes, Etc.

Schedule 5.01(s)        -         Property

Schedule 6.01(n)        -         Material Contracts (Affirmative Covenant)

Schedule 6.02(p)        -         Material Contracts (Negative Covenant)

Schedule 10.01(a)       -         Notices


EXHIBITS

Exhibit A        -       Form of Assignment and Assumption

Exhibit B        -       Form of Note

Exhibit C        -       Form of Funding Notice

Exhibit D        -       Form of Prepayment Notice

Exhibit E-1      -       Form of USVI Tax Compliance Certificate

Exhibit E-2      -       Form of USVI Tax Compliance Certificate

Exhibit E-3      -       Form of USVI Tax Compliance Certificate

Exhibit E-4      -       Form of USVI Tax Compliance Certificate

Exhibit F-1      -       Form of USVI Tax Compliance Certificate (Mortgage Interest Exemption)

Exhibit F-2      -       Form of USVI Tax Compliance Certificate (Mortgage Interest Exemption)

Exhibit F-3      -       Form of USVI Tax Compliance Certificate (Mortgage Interest Exemption)

Exhibit F-4   -   Form of USVI Tax Compliance Certificate (Mortgage Interest Exemption)

## DEBTOR IN POSSESSION CREDIT AGREEMENT

This SENIOR SECURED SUPERPRIORITY DEBTOR IN POSSESSION CREDIT AGREEMENT, dated as of July [___], 2021 (this "***Agreement***"), is entered into by and among LIMETREE BAY REFINING, LLC, a U.S. Virgin Islands limited liability company ("***Borrower***"), LIMETREE BAY REFINING HOLDINGS II, LLC, a U.S. Virgin Islands limited liability company ("***Holdings***"), LIMETREE BAY REFINING SERVICES, LLC, a Delaware limited liability company ("***LBS***"), LIMETREE BAY REFINING HOLDINGS LLC, a U.S. Virgin Islands limited liability company ("***LBRH***"), LIMETREE BAY REFINING MARKETING LLC, a U.S. Virgin Islands limited liability company ("***LBRM***"), LIMETREE BAY REFINING OPERATING LLC, a U.S. Virgin Islands limited liability company ("***LBRO***", and together with LBRM, LBRH, LBS and Holdings, the "***Guarantors***", and together with the Borrower, the "***Borrower Parties***"), THE LENDERS FROM TIME TO TIME PARTY HERETO, 405 SENTINEL LLC, as administrative agent for the Lenders (in such capacity, together with any successor Administrative Agent appointed pursuant to <u>Article VIII</u> in such capacity, the "***Administrative Agent***"), and 405 SENTINEL LLC, as collateral agent for the Lenders (in such capacity, together with any successor Collateral Agent appointed pursuant to <u>Article VIII</u> in such capacity, the "***Collateral Agent***").

## PRELIMINARY STATEMENTS:

WHEREAS, Limetree Bay Terminals, LLC ("***LBT***"), a U.S. Virgin Islands limited liability company and an Affiliate of the Borrower acquired a facility located at Limetree Bay, St. Croix, U.S. Virgin Islands, consisting of (i) storage and blending equipment, docks, tanks, and all other related facilities, equipment, and real property associated with petroleum import, export, mixing, storage, and related activities at the facility, including all marine facilities, but exclusive of the Refinery referred to below (collectively, the "***Terminal***") and (ii) petroleum processing equipment and related facilities, equipment used to refine, all other equipment used primarily in connection with the refinery, and real property associated with petroleum processing and related activities (other than storage, blending, loading, unloading, transporting of such products) at the oil refinery and related facilities (collectively, the "***Refinery***");

WHEREAS, pursuant to a Bill of Sale, dated as of the Pre-Petition First Funding Date (the "***Bill of Sale***"), LBT transferred the Refinery to the Borrower;

WHEREAS, pursuant to a Shared Services Systems Agreement, dated as of the Pre-Petition First Funding Date (the "***Shared Services Systems Agreement***"), by and between LBT and the Borrower, and acknowledged by LBRM, LBT and the Borrower agreed to share certain real estate, personal property, services and permits as and to the extent specified therein;

WHEREAS, on July 12, 2021 (the "***Petition Date***"), the Loan Parties filed voluntary proceedings (the "***Chapter 11 Cases***") under chapter 11 of title 11 of the United States Code (as amended, the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Southern District of Texas (the "***Bankruptcy Court***"), and such Loan Parties continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code;

WHEREAS, the Borrower has requested that the Lenders provide a senior secured superpriority debtor in possession term loan facility in an aggregate principal amount of up to $25,000,000 to the Borrower;

WHEREAS, the Guarantors are willing to guarantee all of the Obligations of the Borrower to the Lenders under the Loan Documents;

WHEREAS, the Lenders have agreed to provide the DIP Facility on the terms and subject to the conditions set forth herein and in the DIP Order;

WHEREAS, each Loan Party acknowledges that it will receive substantial direct and indirect benefits by reason of the making of loans and other financial accommodations to the Borrower as provided in this Agreement; and

WHEREAS, to provide security for the repayment of all obligations of any kind of the Borrower Parties hereunder and under the other Loan Documents, including direct borrowings, each of the Borrower Parties will provide to the Collateral Agent (for the benefit of the Secured Parties) the Liens, status and protection set forth in the DIP Order.

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements contained herein, the parties hereto hereby agree as follows:

## ARTICLE I

## DEFINITIONS AND ACCOUNTING TERMS

SECTION 1.01     <u>Certain Defined Terms</u>.  As used in this Agreement (including the preamble hereto and the preliminary statements hereto), the following terms shall have the following meanings (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

"*Administrative Agent*" has the meaning specified in the preamble hereto.

"*Administrative Agent's Account*" means the account of the Administrative Agent specified by the Administrative Agent in writing to the Borrower and the Lenders from time to time.

"*Administrative Questionnaire*" means an Administrative Questionnaire in a form supplied by the Administrative Agent.

"*Advances*" has the meaning specified in **Error! Reference source not found.**.

"*Adverse Proceeding*" means any action, written claim, suit, litigation, proceeding, hearing (whether administrative, judicial or otherwise), governmental investigation or arbitration (whether or not purportedly on behalf of the Borrower Parties) at law or in equity, or before or by any Governmental Authority or arbitrator, domestic or foreign (including any Environmental Actions) whether pending or, to the knowledge of the Borrower Parties, threatened in writing against the Loan Parties or the Refinery.

"*Affiliate*" means with respect to a specified Person, another Person that directly, or indirectly through one or more intermediaries, Controls or is Controlled by or is under common Control with the Person specified.

"*Affiliated Fund*" in relation to a fund (the "first fund"), means a fund which is managed or advised by the same investment manager or investment adviser as the first fund or, if it is managed by a different investment manager or investment adviser, a fund whose investment manager or investment adviser is an Affiliate of the investment manager or investment adviser of the first fund.

"*Agent Parties*" has the meaning specified in <u>Section 10.01(d)(ii)</u>.

"*Agents*" means, individually or collectively, as the context may require, the Administrative Agent and the Collateral Agent.

2

"***Agreement***" has the meaning specified in the preamble hereto.

"***Anti-Money Laundering Laws***" means, collectively, (a) the Patriot Act and (b) any other applicable law, regulation, order, decree or directive of any relevant jurisdiction in which any Lender, Agent, Loan Party or Equityholder is located or doing business that has the force of law and relates to anti-money laundering.

"***Applicable Lending Office***" means, with respect to each Lender, such Lender's Domestic Lending Office.

"***Applicable Cash Rate***" means an interest rate of 3.00% per annum.

"***Applicable PIK Rate***" means an interest rate of 9.00% per annum.

"***Applicable Rate***" means, collectively, the Applicable Cash Rate and the Applicable PIK Rate.

"***Approved Fund***" means any Fund that is administered or managed by (a) a Lender, (b) an Affiliate of a Lender or (c) an entity or an Affiliate of an entity that administers or manages a Lender.

"***Aron Rights***" has the meaning given such term in the DIP Order.

"***Asset Sale***" means a sale, lease (as lessor), sale and leaseback, assignment, conveyance, exclusive license (as licensor), transfer or other disposition to, or any exchange of Property with, any Person, in one transaction or a series of transactions, of all or any part of any of the Properties of the Borrower Parties or the Refinery, whether now owned or hereafter acquired, leased or licensed, but shall not include any sale, lease (as lessor), sale and leaseback, assignment, conveyance, exclusive license (as licensor), transfer or other disposition of Inventory Financing Collateral (as defined in the DIP Order) until the Discharge of Inventory Financing Obligations (as defined in the Pre-Petition Depositary Agreement) has occurred.

"***Asset Sale Proceeds***" means, with respect to any Asset Sale, the Net Cash Proceeds received by the Borrower Parties in connection with such Asset Sale.

"***Assignment and Assumption***" means an assignment and assumption entered into by a Lender, on the one hand, and any assignee of such Lender in accordance with this Agreement (with the consent of any Person whose consent is required by Section 10.05), on the other hand, and accepted by the Administrative Agent, in accordance with Section 10.05 and in substantially the form of Exhibit A or any other form approved by the Administrative Agent.

"***Available Commitment***" means, with respect to any Lender at any time, such Lender's unutilized Commitment.

"***Avoidance Actions***" has the meaning given such term in the DIP Order.

"***Avoidance Proceeds***" has the meaning given such term in the DIP Order.

"***Bankruptcy Code***" has the meaning specified in the recitals to this Agreement.

"***Bankruptcy Court***" has the meaning specified in the recitals to this Agreement.

"***Beneficial Ownership Regulation***" means 31 C.F.R. § 1010.230.

"***Bill of Sale***" has the meaning set forth in the recitals hereto.

3

"*Board of Governors*" means the Board of Governors of the United States Federal Reserve System, or any successor thereto.

"*Borrower*" has the meaning specified in the preamble hereto.

"*Borrower Account*" means that certain deposit account of the Borrower to be established at Oriental Bank or another financial institution reasonably acceptable to the Required Lenders after the Closing Date, and which is to be subject to a Control Agreement, in each case in accordance with Section 6.01(k).

"*Borrower Parties*" has the meaning specified in the preamble hereto.

"*Borrowing*" means the extension of credit and borrowing consisting of Advances made by the Lenders pursuant to Section 2.01.

"*BP*" means BP Products North America Inc., a Maryland company.

"*BP Guaranty*" means that certain Guaranty Agreement, dated as of the Pre-Petition First Funding Date, by BP Corporation North America Inc. in favor of the Borrower and LBRM.

"*Business Day*" means any day excluding Saturday, Sunday and any day which is a legal holiday under the laws of the State of New York or the U.S. Virgin Islands or is a day on which banking institutions located in such state or territory are authorized or required by law or other governmental action to close.

"*Business Interruption Insurance Proceeds*" means any and all proceeds of any insurance, indemnity, warranty or guaranty payable from time to time to any Borrower Party with respect to the partial or complete interruption of the operation of, or delay in the startup of any portion or component of, the business of such Borrower Party.

"*Capital Expenditures*" means, for any period, the aggregate of all expenditures of the Borrower Parties and the Refinery during such period determined on a Consolidated basis and without duplication that, in accordance with GAAP, are or should be included in "*property, plant and equipment*" or similar items reflected in the Consolidated balance sheet of the Borrower Parties or in "*purchase of property and equipment*" or similar items reflected in the Consolidated statement of cash flows of the Borrower Parties.

"*Capital Stock*" means any and all shares, interests, participations or other equivalents (however designated) of capital stock of a corporation, any and all equivalent ownership interests in a Person (other than a corporation), including partnership interests and membership interests, and any and all warrants, rights or options to purchase or other arrangements or rights to acquire any of the foregoing.

"*Capitalized Leases*" means, as applied to any Person, any lease of any Property by that Person as lessee that, in conformity with GAAP, is or should be accounted for as a capital lease on the balance sheet of that Person.

"*Carry Forward Amount*" shall mean the amount of (i) any projected operating disbursements or professional fees not expended in a given Testing Period or (ii) any total net receipts exceeding projected receipts, each of which shall carry forward into, and be available for use in, future Testing Periods.

"*Carve-Out*" has the meaning specified in the DIP Order.

"*Cash*" means money, currency or a credit balance in any demand account or Deposit Account in Dollars.

"***Cash Collateral***" has the meaning specified in the DIP Order.

 "***Cash Equivalents***" means any of the following:

(i)      readily marketable direct obligations of the government of the United States or any agency or instrumentality thereof, or obligations unconditionally guaranteed by the full faith and credit of the government of the United States, in each case maturing within one year from the date of acquisition thereof;

(ii)      securities issued by any state of the United States of America or any political subdivision of any such state or any public instrumentality thereof having maturities of not more than one year from the date of acquisition thereof and, at the time of acquisition, having a rating of AA- or higher from S&P or Aa3 or higher from Moody's (or, at any time that neither S&P nor Moody's rates such obligations, an equivalent rating from another nationally recognized rating service);

(iii)      investments in commercial paper maturing within 270 days from the date of acquisition thereof and having, at such date of acquisition, a rating of at least A-1 or P-1 from either S&P or Moody's (or, at any time that neither S&P nor Moody's rates such obligations, an equivalent rating from another nationally recognized rating service);

(iv)      investments in certificates of deposit, banker's acceptances and time deposits maturing within 270 days from the date of acquisition thereof issued or guaranteed by or placed with, and money market deposit accounts issued or offered by, the Administrative Agent or any of its Affiliates or any domestic office of any commercial bank organized under the laws of the United States of America, any State thereof, any country that is a member of the OECD or any political subdivision thereof, that has a combined capital and surplus and undivided profits of not less than $500,000,000;

(v)      fully collateralized repurchase agreements with a term of not more than 30 days for securities described in clause (i) above and entered into with a financial institution satisfying the criteria of clause (iv) above;

(vi)      an interest bearing account maintained by the Pre-Petition Depositary or its Affiliate with earnings based on the daily federal funds effective rate as determined by the Federal Reserve Bank of New York; and

(vii)      investments in "***money market funds***" within the meaning of Rule 2a-7 of the Investment Company Act of 1940, as amended, substantially all of whose assets are invested in investments of the type described in clauses (i) through (v) above.

"***Casualty Event***" means a casualty event that causes all or a portion of the Property of any Borrower Party or the Refinery to be damaged, destroyed or rendered unfit for normal use for any reason whatsoever (regardless of whether relating to events that have occurred prior to, on or after the Petition Date) other than ordinary use and wear and tear.

"***Change in Law***" means the occurrence, after the date of this Agreement, of any of the following: (a) the adoption or taking effect of any law, rule, regulation or treaty, (b) any change in any law, rule, regulation or treaty or in the administration, interpretation, implementation or application thereof by any Governmental Authority or (c) the making or issuance of any request, rule, guideline or directive (whether or not having the force of law) by any Governmental Authority; *provided* that notwithstanding anything herein to the contrary, (x) the Dodd-Frank Wall Street Reform and Consumer Protection Act and all

requests, rules, guidelines or directives thereunder or issued in connection therewith and (y) all requests, rules, guidelines or directives promulgated by the Bank for International Settlements, the Basel Committee on Banking Supervision (or any successor or similar authority) or the United States or foreign regulatory authorities, in each case pursuant to Basel III, shall in each case be deemed to be a "Change in Law", regardless of the date enacted, adopted or issued.

"***Change of Control***" has the meaning given to the term "Change of Control" in the Pre-Petition Term Credit Agreement.

"***Chapter 11 Cases***" has the meaning specified in the recitals to this Agreement.

"***Closing Date***" has the meaning specified in Section 4.01.

"***Collateral***" means all "DIP Collateral" as such term is defined in the DIP Order.  For the avoidance of doubt, Collateral shall not include any Avoidance Actions and, until otherwise expressly provided in the Final DIP Order, Avoidance Proceeds.

"***Collateral Agent***" has the meaning specified in the preamble to this Agreement.

"***Commitment***" means with respect to any Lender at any time the amount set forth for such period opposite such Lender's name on Schedule I hereto under the caption "*Commitment*" or, if such Lender has entered into one or more Assignment and Assumptions, set forth for such Lender in the Register maintained by the Administrative Agent as such Lender's "*Commitment*" for such period, as such amount may be reduced at or prior to such time pursuant to Section 2.06 or Section 7.01. The aggregate of the Commitments of all Lenders hereunder shall be (and shall not exceed) $25,000,000 and shall not be reduced by the outstanding amount of any PIK Loans.

"***Commitment Period***" means the period commencing on the Closing Date and ending on the Commitment Termination Date.

"***Commitment Termination Date***" means the earliest to occur of (i) the date on which the Commitment is permanently reduced to zero in accordance with Section 2.06, (ii) the date on which the Commitment is terminated pursuant to Section 7.01, and (iii) the Maturity Date.

"***Connection Income Taxes***" means Other Connection Taxes that are imposed on or measured by net income (however denominated) or that are franchise Taxes or branch profits Taxes.

"***Consent Decree***" shall mean the Consent Decree entered on June 7, 2011 in the United States District Court of the Virgin Islands in the matter of United States of America, and United States Virgin Islands v. Hovensa L.L.C. (Civ. No.:  1:11-cv-00006), as such Consent Decree may be amended or revised.

"***Consolidated***" refers to the consolidation of accounts in accordance with GAAP.

"***Contract Termination Proceeds***" has the meaning specified to the term "Contract Termination Proceeds" in the Pre-Petition Depositary Agreement; provided that, any such proceeds that constitute Inventory Financing Collateral shall be deemed to not be "Contract Termination Proceeds" for all purposes hereof until the Discharge of Inventory Financing Obligations (as defined in the Pre-Petition Depositary Agreement) has occurred.

"***Contractual Obligations***" means, as applied to any Person, any provision of any Capital Stock issued by such Person or of any indenture, mortgage, deed of trust, contract, undertaking, agreement or other instrument to which such Person is a party or by which it or any of its Properties is bound.

"***Control***" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract or otherwise.  "***Controlling***" and "***Controlled***" have meanings correlative thereto.

"***Control Agreement***" means, with respect to an account of a Borrower Party, an agreement or other arrangement (in each case, in form and substance reasonably satisfactory to the Collateral Agent) which provides for the Collateral Agent to have "control" (as defined in Section 8-106 of the UCC, as such term relates to investment property (other than certificated securities or commodity contracts), or as used in Section 9-106 of the UCC, as such term relates to commodity contracts, or as used in Section 9-104(a) of the UCC, as such term relates to deposit accounts), in each case, as amended, amended and restated, supplemented and/or otherwise modified from time to time.

"***Debt***" means, as applied to any Person and without duplication:

(i)       all Debt for Borrowed Money;

(ii)      that portion of obligations with respect to Capitalized Leases that is properly classified as a liability on a balance sheet in conformity with GAAP;

(iii)     all obligations of such Person evidenced by notes, bonds, debentures, drafts or other similar instruments representing extensions of credit whether or not representing obligations for borrowed money;

(iv)     any obligation owed for all or any part of the deferred purchase price of property or services (excluding any such obligations incurred under an Employee Benefit Plan), which purchase price is due more than six months from the date of incurrence of the obligation in respect thereof;

(v)      all indebtedness secured by any Lien on any property or asset owned or held by such Person regardless of whether the indebtedness secured thereby shall have been assumed by such Person or is nonrecourse to the credit of that Person;

(vi)     the amount of any letter of credit issued for the account of such Person or as to which such Person is otherwise liable for reimbursement of drawings;

(vii)    the direct or indirect guaranty, endorsement (otherwise than for collection or deposit in the ordinary course of business), co-making, discounting with recourse or sale with recourse by such Person of the obligation of another;

(viii)   any obligation of such Person the primary purpose or intent of which is to provide assurance to an obligee that the obligation of the obligor thereof will be paid or discharged, or any agreement relating thereto will be complied with, or the holders thereof will be protected (in whole or in part) against loss in respect thereof;

(ix)     any liability of such Person for an obligation of another through any agreement (contingent or otherwise) (a) to purchase, repurchase or otherwise acquire such obligation or any security therefor, or to provide funds for the payment or discharge of such obligation (whether in the form of loans, advances, stock purchases, capital contributions or otherwise) or (b) to maintain the solvency or any balance sheet item, level of income or financial condition of another if, in the case of any agreement described under sub-clause (a) or (b) of this clause (ix), the primary purpose or intent thereof is as described in clause (viii) above; and

7

(x)      all obligations of such Person in respect of any exchange traded or over the counter derivative transaction, including any Hedge Agreements, whether entered into for hedging or speculative purposes.

"*Debt for Borrowed Money*" means, for any Person, at any date of determination, the sum, without duplication, of (a) all items that, in accordance with GAAP, would be classified as indebtedness on a Consolidated balance sheet of such Person at such date, and (b) all obligations of such Person under acceptance, letter of credit or similar facilities at such date but excluding Debt in respect of Capitalized Leases and purchase money debt.

"*Debt Proceeds*" means, with respect to the incurrence or issuance of any Debt by any Borrower Party (other than Debt permitted to be incurred or issued pursuant to Section 6.02(b)), the Net Cash Proceeds received by any Borrower Party in connection with such incurrence or issuance.

"*Debtor Relief Laws*" means the Bankruptcy Code of the United States of America, and all other liquidation, conservatorship, bankruptcy, assignment for the benefit of creditors, moratorium, rearrangement, receivership, insolvency, reorganization, or similar debtor relief laws of the United States or other applicable jurisdictions from time to time in effect.

"*Default*" means any Event of Default or a condition or event that, after notice or lapse of time or both, would constitute an Event of Default.

"*Default Notice*" has the meaning specified in Section 6.03(b).

"*Defaulting Lender*" means, subject to Section 3.9, any Lender that (a) has failed to (i) fund all or any portion of its Advances within two Business Days of the date such Advances were required to be funded hereunder unless such Lender notifies the Administrative Agent and the Borrower in writing that such failure is the result of such Lender's determination that one or more conditions precedent to funding (each of which conditions precedent, together with any applicable default, shall be specifically identified in such writing) has not been satisfied, or (ii) pay to the Administrative Agent or any other Lender any other amount required to be paid by it hereunder within two Business Days of the date when due, (b) has notified the Borrower or the Administrative Agent in writing that it does not intend to comply with its funding obligations hereunder, or has made a public statement to that effect (unless such writing or public statement relates to such Lender's obligation to fund the Advances hereunder and states that such position is based on such Lender's determination that a condition precedent to funding (which condition precedent, together with any applicable default, shall be specifically identified in such writing or public statement) cannot be satisfied), (c) has failed, within three Business Days after written request by the Administrative Agent or the Borrower, to confirm in writing to the Administrative Agent and the Borrower that it will comply with its prospective funding obligations hereunder (*provided* that such Lender shall cease to be a Defaulting Lender pursuant to this clause (c) upon receipt of such written confirmation by the Administrative Agent and the Borrower), or (d) has, or has a direct or indirect parent company that has (i) become the subject of a proceeding under any Debtor Relief Law, or (ii) had appointed for it a receiver, custodian, conservator, trustee, administrator, assignee for the benefit of creditors or similar Person charged with reorganization or liquidation of its business or assets, including the Federal Deposit Insurance Corporation or any other state or federal regulatory authority acting in such a capacity; *provided* that a Lender shall not be a Defaulting Lender solely by virtue of the ownership or acquisition of any equity interest in that Lender or any direct or indirect parent company thereof by a Governmental Authority so long as such ownership interest does not result in or provide such Lender with immunity from the jurisdiction of courts within the United States or from the enforcement of judgments or writs of attachment on its assets or permit such Lender (or such Governmental Authority) to reject, repudiate, disavow or disaffirm any contracts or agreements made with

8

such Lender. Any determination by the Administrative Agent that a Lender is a Defaulting Lender under any one or more of clauses (a) through (d) above shall be conclusive and binding absent manifest error, and such Lender shall be deemed to be a Defaulting Lender (subject to Section 3.9) upon delivery of written notice of such determination to the Borrower and each Lender.

"***Deposit Account***" means a demand, time, savings, checking, passbook or like account with a bank, savings and loan association, credit union or like organization, other than an account evidenced by a negotiable certificate of deposit.

"***Designated Jurisdiction***" means any country or territory to the extent that such country or territory itself is the subject of any Sanctions (including, without limitation, Cuba, Iran, North Korea, Syria, and the Crimea region of Ukraine).

"***DIP Budget***" means the "Approved Budget" as such term is defined in the DIP Order.

"***DIP Facility***" means, at any time, the aggregate amount of the Lenders' Commitments or Advances at such time.

"***DIP Lien***" has the meaning specified in the DIP Order.

"***DIP Obligations***" has the meaning specified in the DIP Order.

"***DIP Order***" means the Interim DIP Order or the Final DIP Order, as applicable.

"***DIP Superpriority Claim***" has the meaning given to such term in DIP Order.

"***Disbursement Line Items***" shall mean any disbursement line item in a DIP Budget, unless designated as an immaterial line item by the Administrative Agent and Required Lenders in their approval thereof; provided that, in no event will professionals fees be deemed a "Disbursement Line Item".

"***Disposition***" means any sale, assignment, transfer, conveyance or other disposition. "***Dispose***" shall have a corollary meaning.

"***Dollars***" and the sign "***$***" mean the lawful currency of the United States of America.

"***Domestic Lending Office***" means, with respect to any Lender, the office of such Lender specified as its "*Domestic Lending Office*" opposite its name on Schedule I hereto or such other office of such Lender as such Lender may from time to time specify to the Borrower and the Administrative Agent.

"***EEA Financial Institution***" means (a) any credit institution or investment firm established in any EEA Member Country which is subject to the supervision of an EEA Resolution Authority, (b) any entity established in an EEA Member Country which is a parent of an institution described in clause (a) of this definition, or (c) any financial institution established in an EEA Member Country which is a subsidiary of an institution described in clause (a) or (b) of this definition and is subject to consolidated supervision with its parent.

"***EEA Member Country***" means any of the member states of the European Union, Iceland, Liechtenstein, and Norway.

"***EEA Resolution Authority***" means any public administrative authority or any person entrusted with public administrative authority of any EEA Member Country (including any delegee) having responsibility for the resolution of any EEA Financial Institution.

"***Effect of Bankruptcy***" means, with respect to any contractual obligation, contract or agreement to which a Loan Party or a Subsidiary thereof is a party, any default or other legal consequences arising on account of the commencement or the filing of the Chapter 11 Cases (including the implementation of any stay), or the rejection of any such contractual obligation, contract or agreement with the approval of the Bankruptcy Court if required under applicable law.

"***Eminent Domain Proceeds***" means, with respect to any Event of Eminent Domain, the Net Cash Proceeds received by any Borrower Party in connection with such Event of Eminent Domain; <u>provided</u> that any such proceeds that constitute Inventory Financing Collateral shall be deemed to not be "Eminent Domain Proceeds" for all purposes hereof until the Discharge of Inventory Financing Obligations (as defined in the Pre-Petition Depositary Agreement) has occurred.

"***Employee Benefit Plan***" means any "*employee benefit plan*" as defined in Section 3(3) of ERISA (a) which is or was adopted, sponsored, maintained or contributed to by, or required to be contributed to by, any Borrower Party or any of their respective ERISA Affiliates or (b) with respect to or in connection with which any Borrower Party could have any actual or contingent liability.

"***Environmental Action***" means any investigation, notice, notice of violation, claim, action, suit, proceeding, demand, consent order, consent decree, abatement order or other order or directive (conditional or otherwise) by any Governmental Authority or any other Person, arising (a) pursuant to or in connection with Environmental Law or any actual or alleged violation of Environmental Law; (b) in connection with any Hazardous Material or any actual or alleged Hazardous Materials Activity; or (c) in connection with any actual or alleged damage, injury, threat or harm from Hazardous Materials to human health, safety or the environment (including natural resources).

"***Environmental Law***" means any and all applicable current or future, international, United States or U.S. Virgin Islands' (or any subdivision of any of them) statutes, ordinances, orders, rules, regulations, judgments, Governmental Authorizations, or any other legally enforceable requirements of Governmental Authorities (including the Consent Decree, to the extent any Borrower Party becomes a party thereto) relating to (i) environmental matters or the protection of the environment (including surface water, groundwater, soils or subsurface strata, or indoor or outdoor air), including those legal requirements relating to any Hazardous Materials Activity; (ii) occupational safety and health (to the extent related to exposure to Hazardous Materials); or (iii) the protection of human, plant or animal health or welfare, in any manner applicable to the Refinery or any Borrower Party or any of their respective Properties.

"***Environmental Response Trust***" means the Environmental Response Trust established in accordance with the Hovensa Confirmation Order.

"***ERISA***" means the Employee Retirement Income Security Act of 1974, as amended from time to time, and any successor thereto.

"***ERISA Affiliate***" means, as applied to any Person, (a) any corporation which is a member of a controlled group of corporations within the meaning of Section 414(b) of the Internal Revenue Code of which that Person is a member; (b) any trade or business (whether or not incorporated) which is a member of a group of trades or businesses under common control within the meaning of Section 414(c) of the Internal Revenue Code of which that Person is a member; and (c) solely for the purpose of the funding requirements of Section 412 of the Internal Revenue Code or Section 302 of ERISA, any member of an affiliated service group within the meaning of Section 414(m) or (o) of the Internal Revenue Code of which that Person, any corporation described in <u>clause (a)</u> above or any trade or business described in <u>clause (b)</u> above is a member.

"***Equityholder-Related Party***" means each Equityholder and any Affiliate, Affiliated Fund or Related Fund thereof, but shall exclude any Loan Party.

"***Equityholder*** " means the "Preferred Members" as such term is defined in the Pre-Petition Term Loan Credit Agreement.

"***ERISA Event***" means (a) a "*reportable event*" within the meaning of Section 4043 of ERISA and the regulations issued thereunder with respect to any Pension Plan (excluding those for which the provision for 30-day notice to the PBGC has been waived by regulation); (b) the failure to meet the minimum funding standard of Section 412 of the Internal Revenue Code with respect to any Pension Plan (whether or not waived in accordance with Section 412(c) of the Internal Revenue Code) or the failure to make by its due date a required installment under Section 430(j) of the Internal Revenue Code with respect to any Pension Plan or the failure to make any required contribution to a Multiemployer Plan; (c) the provision by the administrator of any Pension Plan pursuant to Section 4041(a)(2) of ERISA of a notice of intent to terminate such plan in a distress termination described in Section 4041(c) of ERISA; (d) the withdrawal by any Borrower Party or any of their respective ERISA Affiliates from any Pension Plan with two or more contributing sponsors who are not treated as a single employer under Title IV of ERISA or the termination of any such Pension Plan resulting in liability to any Borrower Party or any of their respective ERISA Affiliates pursuant to Section 4063 or 4064 of ERISA; (e) the institution by the PBGC of proceedings to terminate any Pension Plan, or the occurrence of any event or condition which could reasonably be expected to constitute grounds under ERISA for the termination of, or the appointment of a trustee to administer, any Pension Plan; (f) the imposition of liability on any Borrower Party or any of their respective ERISA Affiliates pursuant to Section 4062(e) or 4069 of ERISA or by reason of the application of Section 4212(c) of ERISA; (g) the withdrawal of any Borrower Party or any of their respective ERISA Affiliates in a complete or partial withdrawal (within the meaning of Sections 4203 or 4205 of ERISA) from any Multiemployer Plan if there is any potential liability therefor, or the receipt by any Borrower Party or any of their respective ERISA Affiliates of notice from any Multiemployer Plan that it is in insolvency pursuant to Section 4245 of ERISA, or that it intends to terminate or has terminated under Section 4041A or 4042 of ERISA; (h) the imposition of a Lien pursuant to Section 430(k) of the Internal Revenue Code or pursuant to ERISA with respect to any Pension Plan; (i) the occurrence of a non-exempt prohibited transaction (within the meaning of Section 4975 of the Internal Revenue Code or Section 406 of ERISA) which could reasonably be expected to result in material liability to any Borrower Party or any of their respective ERISA Affiliates; (j) a Pension Plan is, or is expected to be, in "at risk" status within the meaning of Section 430(i)(4) of the Internal Revenue Code or Section 303(i)(4) of ERISA; or (k) a Multiemployer Plan is in "endangered status" (under Section 432(b)(1) of the Internal Revenue Code or Section 305(b)(1) of ERISA) or "critical status" (under Section 432(b)(2) of the Internal Revenue Code or Section 305(b)(2) of ERISA).

"***Event of Default***" has the meaning specified in <u>Section 7.01</u>.

"***Event of Eminent Domain***" means any action, series of actions, omissions or series of omissions by any Governmental Authority (a) by which such Governmental Authority appropriates, confiscates, condemns, expropriates, nationalizes, seizes or otherwise takes all or a material portion of the Property of any Borrower Party or the Refinery (including any Capital Stock of any Borrower Party) or (b) by which such Governmental Authority assumes custody or control of the Property (other than immaterial portions of such Property) or business operations of any Borrower Party or the Refinery (or any Capital Stock of any Borrower Party).

"***Excess Cash Flow***" means, as of any date of determination, the amount of funds available in the LBR Revenue Account as of such date after giving effect to the withdrawals, transfers and payments

11

specified in sub-clauses (i) through (x) of Section 3.2(c) of the Pre-Petition Depositary Agreement on or prior to such date.

"**Excluded Taxes**" means any of the following Taxes imposed on or with respect to a Recipient or required to be withheld or deducted from a payment to a Recipient, (a) Taxes imposed on or measured by net income (however denominated), franchise Taxes, branch profits Taxes, U.S. Virgin Islands gross receipts Taxes and U.S. Virgin Islands excise Taxes, in each case, (i) imposed as a result of such Recipient being organized under the laws of, or having its principal office or, in the case of any Lender, its Applicable Lending Office located in, the jurisdiction imposing such Tax (or any political subdivision thereof) or (ii) that are Other Connection Taxes, (b) in the case of a Lender, U.S. Virgin Islands withholding Taxes imposed on amounts payable to or for the account of such Lender with respect to an applicable interest in the Advances or Commitment pursuant to a law in effect on the date on which (i) such Lender acquires such interest in the Advances or Commitment or (ii) such Lender changes its Applicable Lending Office, except in each case to the extent that, pursuant to <u>Section 3.05</u>, amounts with respect to such Taxes were payable either to such Lender's assignor immediately before such Lender became a party hereto or to such Lender immediately before it changed its Applicable Lending Office, (c) Taxes attributable to such Recipient's failure to comply with <u>Section 3.05(f)</u> and (d) any Taxes imposed under FATCA.

"**Existing Accounts**" means (i) each "Depositary Account" under and as defined in the Pre-Petition Depositary Agreement and (ii) each other Deposit Account, securities account or other account established and held in the name of any Borrower Party as of the Petition Date.

"**FATCA**" means Sections 1471 through 1474 of the Internal Revenue Code as of the date of this Agreement, or as applicable in the U.S. Virgin Islands (or any amended or successor version that is substantively comparable and not materially more onerous to comply with), any current or future regulations or official interpretations thereof, any agreements entered into pursuant to Section 1471(b)(1) of the Internal Revenue Code or as applicable in the U.S. Virgin Islands, and any applicable intergovernmental agreements entered into in connection with the foregoing and any fiscal or regulatory legislation, rules or practices adopted pursuant to any such intergovernmental agreement.

"**Fee Letter**" means the letter agreement, dated on or about the date hereof, between the Borrower and the Administrative Agent.

"**Feedstock Supply Agreement**" means that certain Feedstock Supply Agreement, dated as of November 15, 2018, by and between BP and LBRM, as amended by Amendment No. 1 to Feedstock Supply Agreement, dated as of February 22, 2021.

"**Final DIP Order**" means a Final Order of the Bankruptcy Court entered in the Chapter 11 Cases after a final hearing under Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure in form and substance acceptable to the Required Lenders and the Agent authorizing and approving, among other things, the DIP Facility on a final basis, the terms of this Agreement and the other Loan Documents on a final basis, and the granting of the Liens on the Collateral with the priority contemplated in this Agreement, as the same may be amended, amended and restated, supplemented or otherwise modified from time to time with the express consent of the Required Lenders.

"**Final Order**" means an order signed by the Bankruptcy Court as to which no stay has been entered and which has not been reversed, vacated or overturned, and for which no appeal or motion to reconsider has been timely filed or, if timely filed, such appeal or motion to reconsider has been dismissed or denied unless the Required Lenders waive such requirement in writing.

"***Final Order Entry Date***" means the date on which the Final DIP Order shall have been entered on the docket of the Bankruptcy Court.

"***Financial Officer***" in respect of any Person means the chief executive officer, chief restructuring officer, president, chief financial officer, chief accounting officer, any vice-president, controller, treasurer or any assistant treasurer of such Person.

"***First DIP Funding Date***" means the date of the Initial Borrowing under the DIP Facility pursuant to **Error! Reference source not found.**.

"***Fiscal Quarter***" means a fiscal quarter of any Fiscal Year.

"***Fiscal Year***" means a fiscal year of the Borrower ending on December 31 of each calendar year.

"***Foreign Lender***" means a Lender that is not a USVI Person.

"***Fund***" means any Person (other than a natural Person) that is (or will be) engaged in making, purchasing, holding or otherwise investing in commercial loans and similar extensions of credit in the ordinary course of its activities.

"***Funding Date***" means each date on which an Advance is funded following the satisfaction or waiver of the conditions in Section 4.01 and 4.02.

"***Funding Notice***" has the meaning specified in Section 2.02(a).

"***GAAP***" means generally accepted accounting principles in the United States set forth in the opinions and pronouncements of the Accounting Principles Board and the American Institute of Certified Public Accountants and statements and pronouncements of the Financial Accounting Standards Board or such other principles as may be approved by a significant segment of the accounting profession in the United States, as in effect from time to time.

"***Governmental Authority***" means any federal, territorial, state, municipal, national or other government, governmental department, commission, board, bureau, court, agency or instrumentality or political subdivision thereof, or any entity, officer or examiner exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to any government or any court, in each case whether associated with a state of the United States, the United States, the U.S. Virgin Islands or, to the extent applicable and legally binding, a foreign entity or government (including any supra-national bodies such as the European Union or the European Central Bank).

"***Governmental Authorization***" means any authorization, approval, consent, franchise, license, covenant, order, ruling, permit, certification, exemption, registration, notice, declaration or similar right, undertaking or other action of, to or by, or any filing, qualification or registration with, any Governmental Authority.

"***Group***" has the meaning specified in Section 5.01(v)(i).

"***Guarantors***" has the meaning set forth in the preamble hereto.

"***Hazardous Materials***" means (a) any petrochemical or petroleum products, oil, waste oil, asbestos in any form that is or could become friable, urea formaldehyde foam insulations, toxic mold, lead-based paint and polychlorinated biphenyls; (b) any products, mixtures, compounds, materials, wastes or substances, air emissions, toxic substances, wastewater discharges and any chemical, material, waste or substance that may give rise to liability pursuant to, or is listed or regulated under, or the human exposure

to which or the Release of which is controlled or limited by Environmental Laws; and (c) any materials, wastes or substances defined in Environmental Laws as "*hazardous*," "*toxic*," "*pollutant*," or "*contaminant*," or words of similar meaning or regulatory effect.

"***Hazardous Materials Activity***" means any past, current, proposed or threatened activity, event or occurrence involving any Hazardous Materials, including the generation, use, manufacture, possession, storage, holding, presence, existence, location, Release, threatened Release, discharge, placement, transportation, processing, construction, treatment, abatement, removal, remediation, disposal, disposition or handling of any Hazardous Materials, and any corrective action or response action with respect to any of the foregoing.

"***Hedge Agreement***" means (a) any and all interest rate swap transactions, basis swaps, credit derivative transactions, forward rate transactions, commodity swaps, commodity options, forward commodity contracts, equity or equity index swaps or options, bond or bond price or bond index swaps or options or forward bond or forward bond price or forward bond index transactions, interest rate options, forward foreign exchange transactions, cap transactions, floor transactions, collar transactions, currency swap transactions, cross-currency rate swap transactions, currency options, spot contracts, or any other similar transactions or any combination of any of the foregoing (including any options to enter into any of the foregoing), whether or not any such transaction is governed by or subject to any master agreement, and (b) any and all transactions of any kind, and the related confirmations, which are subject to the terms and conditions of, or governed by, any form of master agreement published by the International Swaps and Derivatives Association, Inc. or any Master Agreement, including any such obligations or liabilities under any Master Agreement.

"***Highest Lawful Rate***" means the maximum lawful interest rate, if any, that at any time or from time to time may be contracted for, charged, or received under the laws applicable to any Lender which are presently in effect or, to the extent allowed by law, under such applicable laws which may hereafter be in effect and which allow a higher maximum nonusurious interest rate than applicable laws now allow.

"***Holdco Loan Documents***" has the meaning given to the term "Holdco Loan Documents" in the Pre-Petition Term Credit Agreement.

"***Holdings***" has the meaning assigned to such term in the preamble hereto.

"***Hovensa Confirmation Order***" means the Order Granting Final Approval of Disclosure Statement and Confirming Chapter 11 Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code, Case No. 1:15-bk-10003 (MFW) (Jan. 20, 2016) Docket No. 572 (i) approving the Debtor's Second Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code, Case No. 1:15-bk-10003 (MFW) (Jan. 19, 2016) Docket No. 563 and (ii) granting other relief as set forth therein.

"***Indemnified Taxes***" means (a) Taxes, other than Excluded Taxes, imposed on or with respect to any payment made by or on account of any obligation of any Loan Party under any Loan Document and (b) to the extent not otherwise described in (a), Other Taxes.

"***Indemnitee***" has the meaning specified in Section 10.02(b).

"***Initial Borrowing***" means the first Borrowing of Advances on or after the Closing Date.

"***Initial Commitment Period***" means the period commencing on the date of entry of the Interim DIP Order and ending on the date of entry of the Final DIP Order.

"***Initial Lenders***" means the banks, financial institutions and other institutional lenders listed on the signature pages hereof as the Initial Lenders.

"***Insurance Consultant***" means Marsh Ltd or any other insurance consultant reasonably acceptable to the Administrative Agent engaged by the Borrower.

"***Insurance Premium Financers***" means any Person (other than an Affiliate of the Borrower) that advances insurance premiums for one or more of the Borrower Parties pursuant to an Insurance Premium Financing Arrangement.

"***Insurance Premium Financing Arrangement***" means any agreement between an Insurance Premium Financer and a Borrower Party that (a) does not provide, for the benefit of such Insurance Premium Financer, any security interest in any property of the Borrower Parties other than gross unearned premiums for the insurance policies and related rights and proceeds therefrom, and (b) does not prohibit the Liens created in favor of Collateral Agent pursuant to the Security Documents.

"***Insurance Proceeds***" means, with respect to any Casualty Event, the Net Cash Proceeds received by any of Borrower Parties from time to time with respect to such Casualty Event (regardless of whether such claims or proceeds are relating to events that have occurred prior to, on or after the Petition Date); provided that any such proceeds that constitute Inventory Financing Collateral shall be deemed to not be "Insurance Proceeds" for all purposes hereof until the Discharge of Inventory Financing Obligations (as defined in the Pre-Petition Depositary Agreement) has occurred.

"***Insurance Report***" means the Limetree Bay Refinery Final Report on the Insurance, dated as of November 8, 2018, by the Insurance Consultant.

"***Interest Payment Date***" has the meaning given such term in Section 2.05(b) hereof.

"***Interest Rate Hedge***" means, individually or collectively, as the context may require, each interest rate swap agreement, interest rate cap agreement, interest rate collar agreement, interest rate hedging agreement or other similar agreement or arrangement, each of which is for the purpose of hedging the interest rate exposure.

"***Interim DIP Order***" means an order of the Bankruptcy Court entered in the Chapter 11 Cases after an interim hearing under Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure in form and substance reasonably acceptable to the Required Lenders and the Agent authorizing and approving, among other things, the DIP Facility on an interim basis, the terms of this Agreement and the other Loan Documents on an interim basis, and the granting of the Liens on the Collateral with the priority contemplated in this Agreement, as the same may be amended, amended and restated, supplemented or otherwise modified from time to time with the express consent of the Required Lenders.

"***Internal Revenue Code***" means the Internal Revenue Code of 1986, as amended, or with regard to the application of the Internal Revenue Code to the U.S. Virgin Islands, the "mirror" system whereby the "U.S. Virgin Islands" is substituted for the "United States" wherever the latter appears, pursuant to 48 U.S.C. 1397.

"***Inventory Financing Collateral***" has the meaning given to the term "Inventory Financing Collateral" in the DIP Order.

"***Inventory Financing Facility***" has the meaning given to the term "Inventory Financing Facility" in the Pre-Petition Term Credit Agreement.

"***Investment***" means (a) any direct or indirect purchase or other acquisition by any Borrower Party of, or of a beneficial interest in, any of the Securities of any other Person; (b) any direct or indirect redemption, retirement, purchase or other acquisition for value, by any Borrower Party from any Person, of any Capital Stock of such Person; and (c) any direct or indirect loan, advance or capital contributions by any Borrower Party to any other Person, including all indebtedness and accounts receivable from that other Person that are not current assets or did not arise from sales to that other Person in the ordinary course of business.  The amount of any Investment shall be the original cost of such Investment *plus* the cost of all additions thereto, without any adjustments for increases or decreases in value, or write ups, write downs or write offs with respect to such Investment.

"***IRS***" means the United States Internal Revenue Service or, where applicable, the Virgin Islands Bureau of Internal Revenue.

"***J. Aron***" means J. Aron & Company LLC, a limited liability company organized under the laws of the State of New York.

"***J. Aron Transaction Documents***" has the meaning given such term in the DIP Order.

"***Joint Venture***" means a joint venture, partnership or other similar arrangement, whether in corporate, partnership or other legal form; *provided* that in no event shall any corporate Subsidiary of any Person be considered to be a Joint Venture to which such Person is a party.

"***LBE***" means Limetree Bay Energy, LLC, a Delaware limited liability company.

"***LBR Revenue Account***" has the meaning specified in the Pre-Petition Depositary Agreement.

"***LBRH***" has the meaning specified in the preamble hereto.

"***LBRM***" has the meaning specified in the preamble hereto.

"***LBRO***" has the meaning specified in the preamble hereto.

"***LBS***" has the meaning specified in the preamble hereto.

"***LBT***" has the meaning assigned to such term in the recitals.

"***Lender***" means the Initial Lenders and each other person that becomes a Lender hereunder pursuant to an Assignment and Assumption.

"***Lien***" means (a) any lien, mortgage, deed of trust, deed to secure debt, pledge, collateral assignment, security interest, charge or encumbrance of any kind (including any agreement to give any of the foregoing, any conditional sale or other title retention agreement, and any lease or license in the nature thereof) and any option, trust or other preferential arrangement having the practical effect of any of the foregoing and (b) in the case of Securities, any purchase option, call or similar right of a third party with respect to such Securities.  For the avoidance of doubt, "***Lien***" shall not include any netting or set-off arrangements under any Contractual Obligation (other than any Contractual Obligation constituting Debt for Borrowed Money or having the effect of Debt for Borrowed Money) otherwise permitted under the terms hereof.

"***Loan Documents***" means this Agreement, each Security Document, the DIP Budget and each other document delivered to the Administrative Agent in connection with this Agreement and/or the credit extended hereunder, including without limitation the Fee Letter, in each case, as amended, amended and restated, supplemented or otherwise modified from time to time.

16

"*Loan Parties*" means the Borrower Parties.

"*Margin Stock*" has the meaning specified in Regulation U.

"*Master Agreement*" means any Master Agreement published by the International Swaps and Derivatives Associations, Inc.

"*Material Adverse Effect*" means a material adverse effect on (a) the business, operations, properties, assets or condition (financial or otherwise) of the Borrower Parties taken as a whole (other than as customarily occurs as a result of events leading up to and following the commencement of a proceeding under Chapter 11 of the Bankruptcy Code and the commencement of the Chapter 11 Cases), (b) the ability of the Borrower Parties, taken as a whole, to fully and timely perform their material Obligations under the Loan Documents or (c) the material rights, remedies or benefits available to the Agents and the Secured Parties, taken as a whole, under the Loan Documents. A "Material Adverse Effect" shall not be deemed to exist as a result of the Effect of Bankruptcy or the events leading up to and resulting therefrom.

"*Material Contract*" has the meaning given to the term "Material Contract" in the Pre-Petition Term Credit Agreement.

"*Maturity Date*" means earliest to occur of: (a) the date that is nine (9) months after the date of entry of the Interim DIP Order, (b) the date of the closing of a sale of all or a material portion of the Borrower Parties' assets under section 363 of the Bankruptcy Code, (c) the effective date of any confirmed plan in the Chapter 11 Cases, (d) the filing of a motion or other pleading requesting (or the entry of an order approving) the appointment of a trustee, other estate fiduciary or an examiner with special or expanded powers which the Debtors fail to timely oppose without the prior written consent of the Administrative Agent and the Lenders;  (e) the date of acceleration of the Advances or termination of the Commitment by the Required Lenders or the Administrative Agent (at the direction of the Required Lenders) pursuant to Section 7.01 following an Event of Default; and (f) the occurrence of a Termination Event (as defined in the DIP Order).

"*Milestones*" has the meaning specified in Section 6.01(p).

"*Monthly Toll Payments*" means an amount equal to the "Monthly Toll Payments" under and as defined in the Tolling Agreement as calculated pursuant to the Tolling Agreement, without giving effect to any netting or set-off against amounts owed to BP (which amounts shall be deemed paid by BP for purposes of the definition of "Non-Toll Amounts" and Section 2.04(b)(v) hereof and Section 3.07 and Article VI of the Pre-Petition Depositary Agreement if paid by BP, netted or set-off against amounts owed to BP or paid pursuant to the BP Guaranty).

"*Moody's*" means Moody's Investors Service, Inc.

"*Mortgaged Property*" means any Real Estate Assets then owned in fee by the Borrower that is subject to a Mortgage, as set forth on Schedule 1.01(a).

"*Multiemployer Plan*" means any Employee Benefit Plan which is a "multiemployer plan" as defined in Section 3(37) of ERISA and that is subject to Title IV of ERISA.

"*Net Cash Proceeds*" means:

(i)      with respect to any Asset Sale, the excess, if any, of (a) the sum of Cash and Cash Equivalents received by the Borrower Parties in connection with such Asset Sale (including Business Interruption Insurance Proceeds, or payments in lieu thereof, any Cash or Cash

17

Equivalents received by way of deferred payment pursuant to, or by monetization of, a note receivable or otherwise, but only as and when so received and including any proceeds received as a result of unwinding any related Secured Interest Rate Hedge Agreement in connection with such related transaction) minus (b) the sum of (1) the reasonable out of pocket costs, fees, commissions, premiums and expenses (including legal fees and expenses) incurred by the Borrower Parties in connection with such Asset Sale to the extent such amounts were not deducted in determining the amount referred to in sub-clause (a), (2) federal, state, provincial, foreign and local (including U.S. Virgin Islands) Taxes reasonably estimated (on a Consolidated basis) to be payable by the Borrower Parties (or their respective beneficial owner) within the current or the immediately succeeding tax year as a result of any gain recognized in connection therewith to the extent such amounts were not deducted in determining the amount referred to in sub-clause (a); and (3) a reasonable reserve determined by a Financial Officer of the Borrower Parties in its reasonable business judgment and only for so long as and to the extent required under the applicable purchase agreement for any purchase price adjustments (including working capital adjustments or adjustments attributable to seller's indemnities and representations and warranties to purchaser in respect of such Asset Sale) expressly contemplated by the purchase agreement relating to such Asset Sale;

(ii)     with respect to the incurrence or issuance of any Debt by the Borrower Parties (other than the DIP Loans), an amount equal to the sum of the Cash and Cash Equivalents received by the Borrower Parties in connection with such incurrence or issuance (including any proceeds received as a result of unwinding any related Secured Interest Rate Hedge Agreement in connection with such related transaction); and

(iii)     with respect to any proceeds of or under any casualty or property insurance, indemnity, condemnation awards, warranty or guaranty (other than Business Interruption Insurance Proceeds) received by the Borrower Parties in connection with the occurrence of any Casualty Event or Event of Eminent Domain, an amount equal to (a) the sum of Cash and Cash Equivalents received by the Borrower Parties in connection with such Casualty Event or Event of Eminent Domain (including any proceeds received as a result of unwinding any related Secured Interest Rate Hedge Agreement in connection with such related transaction) minus (b) the sum of (1) the reasonable out of pocket costs and expenses (including legal fees and expenses) incurred by the Borrower Parties in connection with the collection, enforcement, negotiation, consummation, settlement, proceedings, administration or other activity related to the receipt or collection of the relevant proceeds to the extent such amounts were not deducted in determining the amount referred to in sub-clause (a), and (2) federal, state, provincial, foreign and local (including U.S. Virgin Islands) Taxes reasonably estimated (on a Consolidated basis) to be payable by the Borrower Parties (or their respective beneficial owner) within the current or the immediately succeeding tax year as a result of any gain recognized in connection therewith.

"*Non-Defaulting Lender*" means, at any time, a Lender that is not a Defaulting Lender.

"*Non-Toll Amounts*" means all amounts payable to the Loan Parties under the Tolling Agreement, the Feedstock Supply Agreement and/or the Product Offtake Agreement, other than the Monthly Toll Payment, any Tolling Agreement Prepayments and any other amount the prepayment of which results in reduction of the Toll Balance (as defined in the Tolling Agreement).

"*Note*" means a promissory note of the Borrower payable to any Lender, in substantially the form of Exhibit B, evidencing the indebtedness of the Borrower to such Lender resulting from the Advances made by such Lender, as amended.

"*Obligations*" means all obligations of every nature of each Loan Party, including from time to time owed to any Agent (including former Agents) or any Lender from time to time under any Loan Document, whether for principal, interest (including interest which, but for the filing of a petition in bankruptcy with respect to such Loan Party, would have accrued on any Obligation, whether or not a claim is allowed against such Loan Party for such interest in the related bankruptcy proceeding), fees, expenses, indemnification or otherwise fees, yield maintenance, premium, expenses, indemnification or otherwise.

"*OECD*" means the Organization for Economic Cooperation and Development.

"*OFAC*" means the U.S. Department of the Treasury's Office of Foreign Assets Control.

"*Operating Agreement*" means, that certain Refinery Operating Agreement, dated July 2, 2018, by and between the Government of the U.S. Virgin Islands and the Borrower.

"*Organizational Documents*" means, with respect to any Person, as applicable, its certificate or articles of incorporation or organization, by laws, certificate of partnership, partnership agreement, certificate of formation, articles of organization, limited liability company agreement and/or operating agreement, and all shareholder agreements, voting trusts and similar arrangements applicable to any of such Person's partnership interests, limited liability company interests or authorized shares of Capital Stock, in each case as amended.

"*Other Connection Taxes*" means, with respect to any Recipient, Taxes imposed as a result of a present or former connection between such Recipient and the jurisdiction imposing such Tax (other than connections arising from such Recipient having executed, delivered, become a party to, performed its obligations under, received payments under, received or perfected a security interest under, engaged in any other transaction pursuant to or enforced any Loan Document, or sold or assigned an interest in any Advance or Loan Document).

"*Other Taxes*" means all present or future stamp, court or documentary, intangible, recording, filing or similar Taxes that arise from any payment made under, from the execution, delivery, performance, enforcement or registration of, from the receipt or perfection of a security interest under, or otherwise with respect to, any Loan Document, except any such Taxes that are Other Connection Taxes imposed with respect to an assignment.

"*Participant*" has the meaning specified in Section 10.05(d).

"*Participant Register*" has the meaning specified in Section 10.05(d).

"*Patriot Act*" means the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Pub. L. 107-56, signed into law October 26, 2001.

"*PBGC*" means the Pension Benefit Guaranty Corporation or any successor thereto.

"*Pension Plan*" means any Employee Benefit Plan, other than a Multiemployer Plan, which is or was subject to Title IV or ERISA, Section 412 of the Internal Revenue Code or Section 302 of ERISA.

"*Permitted Capital Expenditures*" means (a) Required Capital Expenditures and (b) other Capital Expenditures to the extent approved by the Required Lenders (and any other party whose approval is required pursuant to the terms of the DIP Order).

"*Permitted Interim Activities*" means any activities that the Borrower Parties may undertake or consummate, using its reasonable business judgment, solely to the extent such activities are undertaken or

19

consummated (i) in furtherance of any Required Shutdown Activities, (ii) as permitted by and in accordance with the DIP Budget and the DIP Order, and (ii) in all material respects in accordance with Prudent Industry Practice, Governmental Authorizations and Contractual Obligations binding on it and applicable laws.

"*Permitted Liens*" means:

(i)     "Permitted Liens" as such term is defined in the Pre-Petition Term Credit Agreement;

(ii)     Liens for Taxes, to the extent not required to be paid pursuant to Section 6.01(b);

(iii)     statutory or common law Liens of landlords, carriers, warehousemen, mechanics, materialmen, repairmen, construction contractors or other like Liens arising in the ordinary course of business which secure amounts not overdue for a period of more than 90 days or if more than 90 days overdue, are unfiled and no other action has been taken to enforce such Lien or which are being contested in good faith and by appropriate actions, if adequate reserves with respect thereto are maintained on the books of the applicable Person in accordance with GAAP to the extent required by GAAP;

(iv)     Liens incurred in the ordinary course of business in connection with workers' compensation, unemployment insurance and other types of social security, or to secure the performance of statutory obligations, surety and appeal bonds (other than bonds related to judgment or litigation to the extent such judgment or litigation constitutes a Default), leases, performance and return of money bonds and other similar obligations (exclusive of obligations for the payment of Debt for Borrowed Money or other Debt), so long as no foreclosure, sale or similar proceedings have been commenced with respect to any portion of Property of the Borrower Parties;

(v)     easements, rights-of-way, restrictions, title imperfections, encroachments, other minor defects or irregularities in title and similar matters if the same do not detract from the Required Shutdown Activities or the operation or use the Refinery in the ordinary conduct of the business of the Borrower Parties (taken as a whole);

(vi)     (i) any interest or title of a licensor, lessor or sublicensor or sublessor under any lease (including a ground lease) or license permitted by this Agreement, (ii) any Lien or restriction that the interest or title of such lessor, licensor, sublessor or sublicensor may be subject to and (iii) to the extent constituting a Lien, leases, licenses, subleases or sublicenses granted to others that do not interfere with the Required Shutdown Activities or the ordinary conduct of the business of the Borrower Parties (taken as a whole);

(vii)     purported Liens evidenced by the filing of precautionary UCC financing statements relating solely to operating leases of personal property entered into in the ordinary course of business;

(viii)     Liens in favor of customs and revenue authorities arising as a matter of law to secure payment of customs duties in connection with the importation of goods;

(ix)     encumbrances on real property in the nature of any zoning restrictions, building and land use laws, ordinances, orders, decrees, restrictions or any other conditions imposed by any Governmental Authority on any Real Estate Asset, if the same does not have an adverse effect on the Required Shutdown Activities or the operation or use the Refinery in the ordinary conduct of the business of the Borrower Parties (taken as a whole);

(x)      non-exclusive licenses or sublicenses of patents, copyrights, trademarks and other intellectual property rights granted by any Borrower Party in the ordinary course of business and not interfering in any material respect with the ordinary conduct of or materially detracting from the value of the business of the Borrower Parties;

(xi)      any exceptions on any mortgage policies, surveys, title reports, title commitments, endorsements or other similar documents related to the Mortgaged Properties listed on Schedule 1.01(a) that (A) are not monetary in nature, (B) do not secure Debt and (C) in the aggregate, do not interfere with the Required Shutdown Activities or the operation or use the Refinery in the ordinary conduct of the business of the Borrower Parties (taken as a whole);

(xii)      junior Liens under the Operating Agreement and the USVI Mortgage and Security Agreement in favor of the Government of the Virgin Islands;

(xiii)     (A) Liens under the Security Documents (including DIP Liens), (B) Liens on the Inventory Financing Collateral pursuant to the J. Aron Transaction Documents, and (C) junior Liens securing Pre-Petition Debt of the Borrower Parties permitted under Section 6.02(b)(ii);

(xiv)     Liens or pledges of deposits of Cash or Cash Equivalents securing letters of credit permitted under Section 6.02(b)(viii);

(xv)      any Lien with respect to the Properties of any Borrower Party that arose under Prudent Industry Practices on or prior to the Closing Date and the foreclosure of which is not material to the operation or use of the Refinery in the ordinary course of business;

(xvi)     Liens securing judgments (or the payment of money not constituting an Event of Default under Section 7.01(g)) or securing appeal or other surety bonds related to such judgments;

(xvii)    Liens arising by virtue of any statutory or common law provision relating to bankers' liens, rights of set-off or similar rights;

(xviii)   Liens or pledges of deposits of Cash or Cash Equivalents securing deductibles, self-insurance, co-payment, co-insurance, retentions or similar obligations to providers or property, casualty or liability insurance in the ordinary course of business;

(xix)     (A) Liens existing on the Closing Date and listed on Schedule III, and (B) Liens arising under Contractual Obligations listed on Schedule IV; *provided* that the Lien does not extend to any additional property;

(xx)      any easements, rights of way, restrictions, covenants, duties, agreements and other obligations provided for in the Real Estate Documents, as and to the extent contemplated thereunder on the Funding Date;

(xxi)     Liens consisting of an agreement to Dispose of any property in a Disposition permitted hereunder solely to the extent that such investment or Disposition would have been permitted on the date of the creation of such Lien;

(xxii)    obligations under or in connection with management services agreements, the Shared Services Systems Agreement or other agreements relating to any Shared Facilities or any related non-disturbance arrangements to the extent such obligations constitute Liens;

(xxiii)   (A) rights of any Governmental Authority arising by reason of their control over navigable waters in the interest of navigation and commerce and/or the inalienable right of any

Governmental Authority in the lands and/or waters of such character, (B) title to any filled in land, littoral rights, and riparian rights, and (C) rights of any Governmental Authority in the public lands lying below the mean high water mark; and

(xxiv)   rights, if any, of the public acquired by virtue of territorial statute with respect to the special nature of seaside beaches to use any part of the subject property which lies within the area defined as running inland a distance of 50 feet from the seaward line of low tide, or to the extreme seaward boundary of natural vegetation which spreads continuously inland, or to the natural barrier, whichever is the shortest distance;

in each case, to the extent such Liens are created, incurred or assumed on or after the Petition Date, solely to the extent such Liens are created, incurred or assumed in connection with the Required Shutdown Activities.

"***Person***" means and includes natural persons, corporations, limited partnerships, general partnerships, limited liability companies, limited liability partnerships, joint stock companies, Joint Ventures, associations, companies, trusts, banks, trust companies, land trusts, business trusts or other organizations, whether or not legal entities, and Governmental Authorities.

"***Petition Date***" has the meaning specified in the recitals to this Agreement.

"***PIK Loans***" means the aggregate principal amount of the Obligations which are, during the term of this Agreement, added to the Obligations by payment in kind of PIK Interest.

"***Platform***" has the meaning specified in Section 10.01(d)(i).

"***Pledge Agreement***" means a pledge agreement delivered pursuant to Section 6.01(k)(ii), among Holdings and the Collateral Agent with respect to Holdings' Capital Stock in Borrower.

"***Post-Petition***" means the time period following the Petition Date.

"***Post-Petition Debt***" means Debt incurred after the Petition Date.

"***Pre-Petition***" means the time period prior to the Petition Date.

"***Pre-Petition Agents***" means, individually or collectively, as the context may require, the Pre-Petition Revolving Administrative Agent, the Pre-Petition Term Administrative Agent, the Pre-Petition Collateral Agent and the Pre-Petition Inventory Financing Agent, together with all successors and assigns.

"***Pre-Petition Collateral***" means all properties and assets of the Loan Parties, now owned or hereafter acquired, in which Liens have been granted (or are purported to have been granted) to (i) the Pre-Petition Collateral Agent to secure all the Pre-Petition Project Secured Obligations and (ii) to the Pre-Petition Inventory Financing Agent to secure all the Pre-Petition Inventory Financing Obligations.

"***Pre-Petition Collateral Agent***" means the "Project Collateral Agent" under and as defined in the Pre-Petition Depositary Agreement and all successors and assigns.

"***Pre-Petition Collateral Documents***" has the meaning given to the term "Collateral Documents" in the Pre-Petition Depositary Agreement.

"***Pre-Petition Depositary***" means the "Depositary" under and as defined in the Pre-Petition Depositary Agreement.

"***Pre-Petition Depositary Agreement***" means that certain Amended and Restated Depositary and Intercreditor Agreement, dated as of March 3, 2020, among the Borrower Parties, the Pre-Petition Term Administrative Agent, the Petition Revolving Administrative Agent, the Pre-Petition Collateral Agent, J. Aron as the Inventory Financing Facility Agent, the Pre-Petition Depositary and the other Persons from time to time party thereto, as amended, amended and restated, supplemented or otherwise modified from time to time prior to the date hereof.

"***Pre-Petition Debt***" means the Debt of the Borrower Parties arising before the Petition Date relating to the Borrower Parties' bankruptcy estates, including related to the Pre-Petition operation of the Borrower Parties' business.

"***Pre-Petition Financing Documents***" means, individually or collectively, as the context may require, the Holdco Loan Documents, the Pre-Petition Term Loan Documents, the Pre-Petition Revolving Loan Documents and the Pre-Petition Inventory Financing Documents, and including, without limitation, the Pre-Petition Intercreditor Agreement, all security agreements, notes, guarantees, mortgages and UCC financing statements, in each case, as such documents are in effect on the date hereof.

"***Pre-Petition First Funding Date***" means November 30, 2018.

"***Pre-Petition Intercreditor Agreement***" means that certain Collateral Agency and Intercreditor Agreement dated as of November 20, among the Borrower Parties, the other obligors from time to time party thereto, the Pre-Petition Term Administrative Agent, the Pre-Petition Revolving Administrative Agent, the Pre-Petition Collateral Agent, as amended, restated, modified or supplemented from time to time prior to the date hereof.

"***Pre-Petition Inventory Financing Agent***" means the "Inventory Financing Facility Agent" under and as defined in the Pre-Petition Depositary Agreement and all successors and assigns.

"***Pre-Petition Inventory Financing Documents***" means the Pre-Petition Inventory Financing MMA and each other "Transaction Document" referred to therein.

"***Pre-Petition Inventory Financing MMA***" means that certain Monetization Master Agreement, dated as of March 3, 2020, among J. Aron, Borrower, LBRM and LBRO, as amended, amended and restated, supplemented or otherwise modified from time to time prior to the date hereof.

"***Pre-Petition Payment***" means a direct or indirect payment, redemption, purchase, defeasance or acquisition for value of principal or interest or otherwise on account of any Pre-Petition Debt or other Pre-Petition claims against any Loan Party.

"***Pre-Petition Revolving Administrative Agent***" means the "Administrative Agent" under and as defined in the Pre-Petition Revolving Credit Agreement and all successors and assigns.

"***Pre-Petition Revolving Credit Agreement***" means that certain Credit Agreement, dated as of November 20, 2018, between LBRM, as borrower, the other Borrower Parties, Holdings, the Pre-Petition Revolving Administrative Agent, the lenders party thereto from time to time, as amended, amended and restated, supplemented or otherwise modified from time to time prior to the date hereof.

"***Pre-Petition Revolving Loan Documents***" has the meaning given to the term "Loan Documents" in the Pre-Petition Revolving Credit Agreement.

"***Pre-Petition Secured Hedge Agreement***" has the meaning given to the term "Secured Hedge Agreement" in the Pre-Petition Depositary Agreement.

"***Pre-Petition Project Secured Obligations***" has the meaning given to the term "Secured Obligations" in the Pre-Petition Depositary Agreement.

"***Pre-Petition Secured Obligations***" means, individually or collectively, as the context may require, the Pre-Petition Project Secured Obligations and the Pre-Petition Inventory Financing Obligations.

"***Pre-Petition Inventory Financing Obligations***" has the meaning given to the term "Inventory Financing Secured Obligations" in the Pre-Petition Depositary Agreement.

"***Pre-Petition Project Secured Parties***" means the "Project Secured Parties" under and as defined in the Pre-Petition Depositary Agreement.

"***Pre-Petition Secured Parties***" means, individually or collectively, as the context may require, the Pre-Petition Project Secured Parties and the Pre-Petition Inventory Financing Secured Parties.

"***Pre-Petition Inventory Financing Secured Parties***" means the "Inventory Financing Secured Parties" under and as defined in the Pre-Petition Depositary Agreement.

"***Pre-Petition Security Agreement***" has the meaning given to the term "Security Agreement" in the Pre-Petition Depositary Agreement.

"***Pre-Petition Term Administrative Agent***" means the "Administrative Agent" under and as defined in the Pre-Petition Term Credit Agreement.

"***Pre-Petition Term Credit Agreement***" means that certain Credit Agreement, dated as of December 24, 2020, between the Borrower, as borrower, the other Borrower Parties, Holdings, the Pre-Petition Term Administrative Agent, the lenders party thereto from time to time, as amended, amended and restated, supplemented or otherwise modified from time to time prior to the date hereof.

"***Pre-Petition Term Lenders***" means the "Lenders" under and as defined in the Pre-Petition Term Credit Agreement.

"***Pre-Petition Term Loan Documents***" means the "Loan Documents" as defined in the Pre-Petition Term Credit Agreement.

"***Process Agent***" has the meaning specified in Section 10.13(d).

"***Product Offtake Agreement***" means that certain Product Offtake Agreement, dated as of November 15, 2018, by and between LBRM and BP, as amended by the First Amendment to Product Offtake Agreement dated as of April 15, 2019 and as further amended by the Second Amendment to Product Offtake Agreement, dated as of February 22, 2021.

"***Property***" means any right or interest in or to any asset or property of any kind whatsoever (including Capital Stock, undivided interests and interests as tenants in common), whether real, personal or mixed and whether tangible or intangible.

"***Pro Rata Share***" means, with respect to any amount, with respect to any Lender at any time and with respect to the DIP Facility, the product of such amount multiplied by a fraction the numerator of which is the amount of Advances owed to such Lender under the DIP Facility at such time and the denominator of which is the aggregate amount of the Advances then outstanding and owed to all Lenders under the DIP Facility at such time.

"***Prudent Industry Practice***" means those practices, methods, techniques, specifications and standards of safety and performance, as they may be modified from time to time, that (a) are generally accepted in the large-scale refinery industry as good, safe and prudent engineering practices in connection with the design, construction, operation, maintenance, repair or use of large-scale refinery facilities which are similar to the Refinery and (b) are otherwise in compliance in all material respects with applicable law and Governmental Authorizations.  Prudent Industry Practice is not intended to be limited to the optimum practice, method or act to the exclusion of all others, but rather to be acceptable practices, methods or acts generally accepted in the region or as required by any Governmental Authority or standards setting agency.

"***Real Estate Assets***" means, at any time of determination, any fee or leasehold interest, easement, consent, permit or license, then owned or held by any Borrower Party in any real property.

"***Real Estate Documents***" means, collectively, each agreement, easement, license, lease, permit, revocable consent and other document or instrument specified on Schedule II.

"***Recipient***" means (a) each Agent and (b) any Lender, as applicable.

"***Refinery***" has the meaning assigned to such term in the recitals.

"***Refinery Deconstruction***" has the meaning specified in the Operating Agreement.

"***Register***" has the meaning specified in Section 10.05(c).

"***Regulation D***" means Regulation D of the Board of Governors, as in effect from time to time.

"***Regulation T***" means Regulation T of the Board of Governors, as in effect from time to time.

"***Regulation U***" means Regulation U of the Board of Governors, as in effect from time to time.

"***Regulation X***" means Regulation X of the Board of Governors, as in effect from time to time.

"***Related Fund***" means, with respect to any Equityholder that is an investment fund or holding company wholly owned by one or more investment funds, (a) with respect to any such investment fund, any other investment fund, account or company that is managed, advised or sub-advised by (i) the same investment advisor that manages, advises or subadvises such Equityholder or (ii) an Affiliate of such investment advisor or (b) with respect to any such holding company, any other holding company wholly owned by one or more investment funds, accounts or companies that is managed, advised or sub-advised by (i) the same investment advisor that manages, advises or sub-advises such Equityholder or (ii) an Affiliate of such investment advisor.  With respect to any the Equityholder referenced in clause (i) of the definition thereof or any of its Affiliates or Related Funds, "Related Fund" shall also include any swap, special purpose vehicles purchasing or acquiring security interests in collateralized loan obligations or any other vehicle through which any such Equityholder or any of its Affiliates or Related Funds may leverage its investments from time to time.

"***Related Parties***" means, with respect to any Person, such Person's Affiliates and the partners, directors, officers, employees, agents, trustees, administrators, managers, advisors and representatives of such Person and of such Person's Affiliates.

"***Release***" means any release, spill, emission, leaking, pumping, pouring, injection, escaping, deposit, disposal, discharge, dispersal, dumping, leaching or migration of any Hazardous Material into the indoor or outdoor environment (including the abandonment or disposal of any barrels, containers or other closed receptacles containing any Hazardous Material), including the movement of any Hazardous Material through the air, soil, surface water or groundwater.

"***Remedies Notice Period***" has the meaning specified in the DIP Order.

"***Removal Effective Date***" shall have the meaning specified in Section 8.06(a).

"***Repayment Event***" means the repayment in full in cash of all of the outstanding principal amount of the Advances and all other monetary Obligations (other than contingent obligations) due and payable under the Loan Documents.

"***Required Capital Expenditures***" means all Capital Expenditures that are payable by a Borrower Party and reasonably necessary to permit the Borrower Parties to (a) operate or maintain the Refinery in accordance with Prudent Industry Practices and/or the Material Contracts (including turn-arounds and major maintenance), (b) comply with Governmental Authorizations or applicable law (including any Environmental Laws), (c) satisfy obligations under the Operating Agreement in respect of Refinery Deconstruction and, in any event, would not, if paid, constitute a breach of the DIP Order or cause an unpermitted variance under the DIP Budget, or (d) perform, undertake, or consummate the Required Shutdown Activities.

"***Required Lenders***" means, at any time, the Lender or Lenders holding more than 66.67% of the sum of (without duplication) the aggregate principal amount of the Advances outstanding at such time; *provided* that, if any Lender shall be a Defaulting Lender at such time, there shall be excluded from the determination of Required Lenders at such time the aggregate principal amount of the Advances owing to such Lender (in its capacity as a Lender) and outstanding at such time.

"***Required Shutdown Activities*** means all the activities that Borrower Parties must undertake, consummate and perform on and after the Petition Date in connection with the shutdown of operations at the Refinery and any other facilities owned or operated by such Borrower Parties, and in all cases, in accordance with the DIP Budget and the DIP Order.

"***Resignation Effective Date***" shall have the meaning specified in Section 8.06(a).

"***Responsible Officer***" means, as to any Person, any individual holding the position of chairman of the board (if an officer), president, chief executive officer or one of its vice presidents and such Person's treasurer or chief financial officer.

"***Restricted Payment***" means (a) any dividend or other distribution, direct or indirect, on account of any shares of any class of stock of a Borrower Party now or hereafter outstanding, except a dividend payable solely in shares of that class of stock to the holders of that class; (b) any redemption, retirement, sinking fund or similar payment, purchase or other acquisition for value, direct or indirect, of any shares of any class of stock of a Borrower Party now or hereafter outstanding; (c) any payment made to retire, or to obtain the surrender of, any outstanding warrants, options or other rights to acquire shares of any class of stock of a Borrower Party now or hereafter outstanding; (d) management or similar fees payable to a Borrower Party's Affiliates; and (e) any payment or prepayment of principal of, premium, if any, or interest on, or redemption, purchase, retirement, defeasance (including in substance or legal defeasance), sinking fund or similar payment with respect to, any Debt owed by a Borrower Party to any of its Affiliates (other than any other Borrower Party).

"***S&P***" means Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc.

"***Sanctions***" has the meaning specified in Section 5.01(v)(i).

26

"**Secured Parties**" means and includes the Administrative Agent, the Collateral Agent and each Lender.

"**Securities**" means any stock, shares, partnership interests, voting trust certificates, certificates of interest or participation in any profit sharing agreement or arrangement, options, warrants, bonds, debentures, notes, or other evidences of indebtedness, secured or unsecured, convertible, subordinated or otherwise, or in general any instruments commonly known as "*securities*" or any certificates of interest, shares or participations in temporary or interim certificates for the purchase or acquisition of, or any right to subscribe to, purchase or acquire, any of the foregoing.

"**Security Documents**" mean the DIP Order and, after the execution and delivery thereof, each additional security document executed pursuant to Section 2.08 (if any).

"**Shared Facilities**" means the Shared Premises, Shared Services Systems and Shared Services Systems Sites, in each case, as defined in the Shared Services Systems Agreement.

"**Shared Services Systems Agreement**" has the meaning specified in the recitals hereto.

"**Solvent**" or "**Solvency**" means, with respect to any Borrower Party or group of Borrower Parties, as the case may be, that as of the date of determination, both (a) (i) the sum of such Persons' Debt (including contingent liabilities) does not exceed the present fair saleable value of such Persons' present assets (taken as a whole); (ii) such Persons' capital (taken as a whole) is not unreasonably small in relation to their business as contemplated on the applicable date of determination; and (iii) such Persons (taken as a whole) have not incurred and do not intend to incur, or believe (nor should they reasonably believe) that they will incur, Debt beyond their ability to pay such Debt as they become due (whether at maturity or otherwise); and (b) such Persons (taken as a whole) are "*solvent*" within the meaning given that term and similar terms under the Bankruptcy Code and applicable laws relating to fraudulent transfers and conveyances.  For purposes of this definition, the amount of any contingent liability at any time shall be computed as the amount that, in light of all of the facts and circumstances existing at such time, represents the amount that can reasonably be expected to become an actual or matured liability (irrespective of whether such contingent liabilities meet the criteria for accrual under GAAP).

"**Subsidiary**" means, with respect to any Person, any corporation, partnership, limited liability company, association, Joint Venture or other business entity of which more than 50% of the total voting power of shares of stock or other ownership interests entitled (without regard to the occurrence of any contingency) to vote in the election of the Person or Persons (whether directors, managers, trustees or other Persons performing similar functions) having the power to direct or cause the direction of the management and policies thereof is at the time owned or Controlled, directly or indirectly, by that Person or one or more of the other Subsidiaries of that Person or a combination thereof; *provided* that, in determining the percentage of ownership interests of any Person Controlled by another Person, no ownership interest in the nature of a "*qualifying share*" of the former Person shall be deemed to be outstanding.  Unless otherwise specified, all references herein to a "Subsidiary" or to "Subsidiaries" shall refer to a Subsidiary or Subsidiaries of the Borrower Parties.

"**Taxes**" means any present and future taxes, levies, imposts, duties, deductions, withholdings (including backup withholding), assessments, fees or other charges imposed by any Governmental Authority, including any interest, additions to tax or penalties applicable thereto.

"**Terminal**" has the meaning assigned to such term in the recitals.

"***Terminal Services Agreement***" means that certain Terminal Services Agreement, dated as of the Pre-Petition First Funding Date, by and between LBT and LBRM.

"***Terminal Services Agreement (Included Locations)***" means that certain Terminal Services Agreement (Included Locations), dated as of March 3, 2020, among J. Aron, LBRM and LBT, as amended, amended and restated, supplemented or otherwise modified from time to time.

"***Terminal Services Consent***" means that certain Collateral Assignment of Terminal Services Agreement, dated as of the Pre-Petition First Funding Date, among the Pre-Petition Collateral Agent and LBT with respect to the Terminal Services Agreement.

"***Testing Period***" has the meaning specified in Section 6.01(o)(vi).

"***Tolling Agreement***" means that certain Amended and Restated Tolling Agreement, dated as of February 22, 2021, by and among, by and among BP, the Borrower and LBRM.

"***Tolling Agreement Prepayment Account***" has the meaning specified in the Pre-Petition Depositary Agreement.

"***Tolling Agreement Prepayments***" means an amount equal to or deemed to be any "Excess Toll Payments" (as defined in the Tolling Agreement), a "Final Toll Payment" (as defined in the Tolling Agreement) or any other termination, cancellation or redemption payments that have the effect of reducing the Toll Balance (as defined in the Tolling Agreement), in each case, as calculated pursuant to the Tolling Agreement, without giving effect to any netting or set-off against amounts owed to BP (which amounts shall be deemed paid by BP for purposes of the definition of "Non-Toll Amounts", Section 2.04(b)(v) hereof and Section 3.07 and Article VI of the Pre-Petition Depositary Agreement if paid by BP, netted or set-off against amounts owed to BP or paid pursuant to the BP Guaranty).

"***Total Credit Exposure***" means, as to any Lender at any time, the outstanding Advances of such Lender at such time.

"***Transaction Documents***" means, individually or collectively, as the context may require, the Loan Documents and the Material Contracts.

"***Transactions***" means, collectively, (a) the execution, delivery and performance by the Loan Parties of the Loan Documents to which they are a party and, in each case, the other transactions contemplated therein or thereby, (b) the borrowing of the Advances hereunder and the use of proceeds thereof, (c) the payment of fees and expenses to be paid on or prior to the Closing Date and owing in connection with the foregoing, and (d) the other transactions to occur on or prior to the Funding Date pursuant to this Agreement.

"***UCC***" means the Uniform Commercial Code as in effect from time to time in the State of New York; *provided* that if, with respect to any filing statement or by reason of any provisions of law, the perfection or the effect of perfection or non-perfection of the security interests granted to the Collateral Agent pursuant to the applicable Security Document is governed by the Uniform Commercial Code as in effect in a jurisdiction of the United States other than New York, UCC means the Uniform Commercial Code as in effect from time to time in such other jurisdiction for purposes of the provisions of each Loan Document and any filing statement relating to such perfection or effect of perfection or non-perfection.

"***U.S. Trustee***" means the Office of the United States trustee.

"***USVI Mortgage and Security Agreement***" means that certain Mortgage and Security Agreement, dated as of the Pre-Petition First Funding Date, by and between the Borrower and the Government of the U.S. Virgin Islands.

"***USVI Existing LC***" means that certain irrevocable standby letter of credit no. 69606183, dated January 11, 2016, in the amount of $50,000,000 for the benefit of the Government of the U.S. Virgin Islands, issued by Citibank, N.A. for ArcLight Energy Partners Fund VI, L.P., a Delaware limited partnership, as applicant.

"***USVI Person***" means any Person that is a "U.S. Virgin Islands person" as defined in Section 7701(a)(30) of the Internal Revenue Code (as applicable in the U.S. Virgin Islands).

"***USVI Tax Compliance Certificate***" has the meaning specified in Section 3.05(f)(iii)(C)(1).

"***Voidable Transfer***" has the meaning specified in Section 9.08.

"***Withholding Agent***" means each of the Borrower and the Administrative Agent.


SECTION 1.02    Rules of Interpretation.  Except as otherwise expressly provided, the following rules of interpretation shall apply to this Agreement and the other Loan Documents:

(a)    the definitions of terms herein shall apply equally to the singular and plural forms of the terms defined;

(b)    whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms;

(c)    the words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation";

(d)    the word "will" shall be construed to have the same meaning and effect as the word "shall";

(e)    unless the context requires otherwise, (A) any definition of or reference to any agreement, instrument or other document herein (including any Loan Document but excluding any Pre-Petition Financing Document) shall be construed as referring to such agreement, instrument or other document as from time to time amended, amended and restated, supplemented and/or otherwise modified or replaced from time to time (subject to any restrictions on such amendments, amendments and restatements, supplements and/or other modifications or replacements set forth herein or therein) and shall include any appendices, schedules, exhibits, clarification letters, side letters and disclosure letters executed in connection therewith, and (B) any reference to a Schedule (or Part or any constituent term thereof) (other than Schedule 1 and Schedule 10.01(a)) shall be deemed to be a reference to the Pre-Petition Term Credit Agreement in effect as of the date hereof (without giving effect to any amendments thereunder) except to the extent that any such schedule is amended, restated, supplemented, deleted, or otherwise modified pursuant to the express terms of the Schedule appended hereto. For illustrative purposes only, any reference to Part I of Schedule 5.01(e) shall be deemed a reference to Part I of Schedule 5.01(e) of the Pre-Petition Term Credit Agreement in effect as of the date hereof (without giving effect to any amendments thereunder) except to the extent that the disclosure is amended, restated, supplemented, deleted, or otherwise modified pursuant to the express terms of the Part I of Schedule 5.01(e) appended hereto;

(f)      any reference herein to any Person (other than any Equityholder) shall be construed to include such Person's successors and assigns to the extent permitted under the Loan Documents and, in the case of any Governmental Authority, any Person succeeding to its functions and capacities;

(g)      the words "herein", "hereof" and "hereunder", and words of similar import, shall be construed to refer to this Agreement in its entirety and not to any particular provision hereof;

(h)      all references herein to Articles, Sections, Appendices, Exhibits and Schedules shall be construed to refer to Articles and Sections of, and Appendices, Exhibits and Schedules to, this Agreement;

(i)      the words "asset" and "property" shall be construed to have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts and contract rights;

(j)      unless the context requires otherwise, any definition of or reference to any law or regulation shall be construed as referring to such law or regulation as from time to time amended, supplemented or otherwise modified;

(k)      any reference herein to a merger, transfer, consolidation, amalgamation, consolidation, assignment, sale, disposition or transfer, or similar term, shall be deemed to apply to a division of or by a limited liability company, limited partnership or trust, or an allocation of assets to a series of a limited liability company, limited partnership or trust (or the unwinding of such a division or allocation), as if it were a merger, transfer, consolidation, amalgamation, consolidation, assignment, sale or transfer, or similar term, as applicable, to, of or with a separate Person; and

(l)      any division of a limited liability company, limited partnership or trust shall constitute a separate Person hereunder.


SECTION 1.03      Accounting Terms; etc.

(a)      All accounting terms not specifically or completely defined herein shall be construed in conformity with, and all financial data (including financial ratios and other financial calculations) required to be submitted pursuant to this Agreement shall be prepared in conformity with, GAAP, as in effect from time to time, except as otherwise specifically prescribed herein.

(b)      If at any time any change in GAAP or the application thereof would affect the computation of any requirement set forth in any Loan Document, and either the Borrower or the Required Lenders through the Administrative Agent shall so request, the Administrative Agent and the Borrower shall negotiate in good faith to amend such requirement to preserve the original intent thereof in light of such change in GAAP or the application thereof (subject to the approval of the Administrative Agent not to be unreasonably withheld, conditioned or delayed); *provided* that, until so amended, (i) such requirement shall continue to be computed in accordance with GAAP or the application thereof prior to such change therein and (ii) the Borrower shall provide to the Administrative Agent and the Lenders a written reconciliation in form and substance reasonably satisfactory to the Administrative Agent, between calculations of such ratio or requirement made before and after giving effect to such change in GAAP or the application thereof.

(c)      Notwithstanding anything to the contrary in this Agreement, for purposes of determining compliance with any basket, test, or condition under any provision of this Agreement or any

other Finance Document, no Loan Party may retroactively divide, classify, re-classify or deem or otherwise treat a historical transaction as having occurred in reliance on a basket or exception that was not available at the time of such historical transaction or if and to the extent that such basket or exception was relied upon for any later transaction.

SECTION 1.04    Certifications, Etc.    All certifications, notices, declarations, representations, warrants and statements made by any officer, director or employee or a Loan Party pursuant to or in connection with this Agreement shall be made in such Person's capacity as officer, director or employee on behalf of such Loan Party and not in such Person's individual capacity.

## ARTICLE II

## AMOUNTS AND TERMS OF THE ADVANCES

SECTION 2.01    The Advances.

(a)    Subject to the terms and conditions set forth herein and in the DIP Order, each Lender severally agrees to make advances of its Commitment (each an "*Advance*" and, collectively, the "*Advances*") from time to time on any Business Day during the Commitment Period to the Borrower in an aggregate principal equal to its Pro Rata Share of the aggregate Borrowing requested in each Funding Notice delivered under Section 2.02; *provided that* the Advance to be made by each Lender shall not exceed, on the date of such Advance, such Lender's Available Commitment at such time (each, a "*Borrowing*" and collectively the "*Borrowings*"); *provided* that, notwithstanding anything to the contrary herein, (x) during the Initial Commitment Period, only one Borrowing of Advances shall be available to the Borrower, and the aggregate principal amount of such Borrowing shall not exceed $5,500,000 and (y) upon and after the entry of the Final DIP Order, one or two additional Borrowings of Advances shall be available to the Borrower and the aggregate principal amount of such additional Borrowings shall not exceed $19,500,000; *provided further* that the aggregate principal amount of Advances to be made by the Lenders shall not exceed $25,000,000; *provided further* that the Lenders shall not be obligated to fund any Borrowing request if such disbursement would result in the Borrower Parties' pro-forma cash balance to exceed the Borrower Parties' cash balance in the DIP Budget at such time by $5,000,000 or more during the thirty (30) day period following the funding of the Borrowing requested in the Funding Notice, after giving pro forma effect to any planned expenditures projected to be made over such period in accordance with the DIP Budget.  Amounts repaid under the DIP Facility may not be reborrowed.

(b)    For purposes of calculating the Commitments, any Available Commitment, and any other provision of this Agreement or the DIP Order that relates to the amount of Advances which are authorized, permitted, and available for Borrowing, PIK Loans shall be disregarded in their entirety.

SECTION 2.02    Making the Advances.

(a)    Whenever the Borrower desires to incur Advances hereunder, the Borrower shall deliver the Funding Notice to the Administrative Agent not later than 12:00 p.m., New York City time (or such later time as may be required by the Administrative Agent or acceptable to the Required Lenders), no less than three (3) Business Days (or such shorter period as agreed by the Administrative Agent in its sole discretion) before the date of the proposed Borrowing.  Each such notice (the "*Funding Notice*") shall be in writing, may be delivered by telecopier or electronic communication, and shall be in substantially the form of Exhibit C, specifying therein the requested (i) Funding Date as the date of such Borrowing and (ii) aggregate amount of such Borrowing. The Funding Notice for the first Advance upon or after the entry of the Interim DIP Order shall be in a principal amount of $5,500,000. Each subsequent Funding Notice for Advances upon or after entry of the Final DIP Order shall be in a principal amount of $5,000,000 or more,

unless the aggregate of each Lender's Available Commitment is less than $5,000,000, in which case the request for Advances may be for the aggregate amount of each Lender's Available Commitment. Upon and after the entry of the Final DIP Order, the Borrower may not request more than two (2) Advances in any ten (10) Business Day period.

(b) Promptly upon receipt by the Administrative Agent of such Funding Notice, the Administrative Agent shall notify each Lender of the proposed Borrowing and its pro rata share of the aggregate amount of Loans requested pursuant to such Funding Notice.

(c) No later than 4:00 p.m., New York City time on the date specified in each Funding Notice, each Lender shall credit the Borrower Account (or if the Borrower Account is not established, such other account designated by the Borrower and approved by the Administrative Agent) with its Pro Rata Share of the aggregate amount of Advances requested pursuant to the applicable Funding Notice to be made on such date. The failure of any Lender to make any Advances required to be made by it shall not relieve any other Lender of its obligations hereunder; *provided* that the Commitment of the Lenders is several and no Lender shall be responsible for any other Lender's failure to make Advances as required; *provided*, *further*, that nothing in this Section 2.02 shall prejudice any rights that the Borrower may have against a Defaulting Lender.

SECTION 2.03 Repayment of Advances. The Borrower shall repay to the Administrative Agent for the ratable account of the Lenders the outstanding principal amount of the Advances and PIK Loans on the Maturity Date.

SECTION 2.04 Prepayments.

(a) Optional.

(i) The Borrower may, so long as it is in compliance with the DIP Budget at such time and upon at least three Business Day's written notice substantially in the form of Exhibit D to the Administrative Agent stating the proposed date and aggregate principal amount of the prepayment, and, if such notice is given, the Borrower shall, prepay the outstanding aggregate principal amount of the Advances composing part of the same Borrowing or PIK Loans, in whole or ratably in part, together with accrued and unpaid interest to the date of such prepayment on the aggregate principal amount prepaid; *provided* that each partial prepayment shall be in an aggregate principal amount of $100,000 or an integral multiple of $50,000 in excess thereof.

(ii) Each voluntary prepayment of the Advances and/or PIK Loans shall be applied, ratably, to prepay the Advances or PIK Loans until the outstanding Advances and PIK Loans are repaid in full.

(iii) Notice required to be given under this clause (a) must be given in writing, including by telecopier or electronic communication, to the Administrative Agent by 12:00 noon (New York City time) on the date required (and the Administrative Agent will promptly transmit such notice by telecopier or electronic communication to each Lender).

(b) Mandatory.

(i) The Borrower shall, within thirty (30) days after the last day of each Fiscal Quarter, commencing with the first such date occurring after the First DIP Funding Date, prepay, the Advances outstanding on such day in an aggregate amount equal to 100% of Excess Cash Flow.

32

(ii)      Except as expressly permitted by the DIP Budget, within five Business Days of the date of receipt of any Asset Sale Proceeds, Insurance Proceeds, Eminent Domain Proceeds or Contract Termination Proceeds by the Borrower, the Borrower shall (in each case without duplication) prepay an aggregate principal amount of the Advances, in the order of priority set forth in clause (b)(viii) below, in an aggregate amount equal to the amount of such Asset Sale Proceeds, Insurance Proceeds, Eminent Domain Proceeds or Contract Termination Proceeds. No prepayment shall be required pursuant to this Section 2.04(b)(ii) to the extent the Asset Sale Proceeds, Insurance Proceeds, Eminent Domain Proceeds or Contract Termination Proceeds do not exceed $500,000 in a single transaction or related series of transactions (and only such excess shall be required to be prepaid) and to the extent any Asset Sale Proceeds, Insurance Proceeds, Eminent Domain Proceeds or Contract Termination Proceeds remain after the foregoing application to the Obligations, the Commitment shall be permanently reduced dollar for dollar on a pro rata basis by such remaining Asset Sale Proceeds, Insurance Proceeds, Eminent Domain Proceeds or Contract Termination Proceeds. Notwithstanding the foregoing, with respect to Insurance Proceeds and Eminent Domain Proceeds, up to fifty percent (50%) of such Insurance Proceeds and Eminent Domain Proceeds may be reinvested by the Borrower Parties, and used for purposes permitted under and to the extent consistent with the DIP Budget, if the aggregate outstanding principal amount of Advances at such time is less than $5,500,000 and such reinvestment occurs prior to the Maturity Date.

(iii)      The Borrower shall, within five Business Days of the receipt of any Debt Proceeds by any Borrower Party (other than the Advances), prepay, an aggregate principal amount of the Advances in an aggregate amount equal to such Debt Proceeds.

(iv)      Anything contained in this Agreement to the contrary notwithstanding, (i) in no event shall the aggregate principal amount of the Advances at any time outstanding exceed the amount permitted to be outstanding hereunder pursuant to the DIP Order, in each case as the foregoing limits may be in effect from time to time and (ii) the Borrower agrees to immediately prepay the Advances in the amounts and at the times as may be necessary to comply with the foregoing clause (i).

(v)      The Borrower shall, within five Business Days of the receipt of any amounts in the Tolling Agreement Prepayment Account (including, without limitation, any Tolling Agreement Prepayments or Monthly Toll Payments), prepay an aggregate principal amount of the Advances in an aggregate amount equal to such amounts.

(vi)      The Borrower shall, within five Business Days of the receipt of any amounts from J. Aron (whether pursuant to the Pre-Petition Inventory Financing Documents or otherwise), prepay an aggregate principal amount of the Advances in an aggregate amount equal to such amounts.

(vii)      Concurrently with each prepayment made pursuant to clauses (b)(i) through (b)(v), the Borrower shall deliver to the Administrative Agent a certificate of a Responsible Officer demonstrating the calculation of the relevant amount.  In the event that the Borrower shall subsequently determine that the actual amount received exceeded the amount set forth in such certificate, the Borrower shall promptly make an additional prepayment of the Advances and the Borrower shall concurrently therewith deliver to the Administrative Agent in the amount of such excess a certificate of a Responsible Officer demonstrating the derivation of such excess.

(viii)   Each prepayment made pursuant to this Section 2.04(b) shall be applied ratably, to prepay the Advances until all outstanding Advances are paid in full together with all amounts referred to in clause (ix) below.

(ix)   All prepayments under this Section 2.04(b) shall be made together with (A) accrued and unpaid interest to the date of such prepayment on the principal amount prepaid, and (B) any amounts owing pursuant to Section 10.02(g) and, in each case, the amount of principal prepaid shall be correspondingly reduced by the amounts required to be paid pursuant to this clause (ix).

(x)   All prepayments pursuant to this Section 2.04(b) shall be subject to the terms of the DIP Order.

SECTION 2.05   Scheduled Interest.

(a)   Except as otherwise set forth herein, the Advances and PIK Loans shall bear interest on the unpaid principal amount thereof from the date made through repayment (whether by acceleration or otherwise) thereof at the Applicable Rate.

(b)   Interest on the Advances and PIK Loans:

(i)   shall accrue on a daily basis at the Applicable Rate and (i) the portion of which accrued pursuant to the Applicable Cash Rate shall be paid in cash in arrears on the last Business Day of each calendar month after the First DIP Funding Date and on the Maturity Date (each such date, an "Interest Payment Date") with respect to interest accrued on and to each such date and (ii) the remaining portion of which accrued pursuant to the Applicable PIK Rate shall be payable in kind on each Interest Payment Date (other than the Maturity Date) unless otherwise paid in cash by the Borrower on such Interest Payment Date ("PIK Interest"); and

(ii)   shall be payable in cash in arrears upon any prepayment of the Advances or PIK Loans, whether voluntary or mandatory, to the extent accrued on the amount being prepaid; and

(c)   PIK Interest shall be capitalized, compounded and added to the unpaid principal amount of the Obligations on the applicable Interest Payment Date (other than the Maturity Date). The obligation of the Borrower to pay all such PIK Interest so added shall be automatically evidenced by any Notes issued to the Lenders (without modification or reissuance thereof). Notwithstanding the foregoing, the Borrower may pay any PIK Interest in cash so long as such payment will allow the Borrower to comply with the DIP Budget.

SECTION 2.06   Termination or Reduction of the Commitments. The Commitment shall automatically be permanently reduced on each date of Borrowing of Advances (after giving effect to the Advances incurred on such date) by an amount equal to the aggregate principal amount of the Advances incurred on such Borrowing date.

SECTION 2.07   Promissory Notes.

(a)   Each Lender shall maintain in accordance with its usual practice an account or accounts evidencing the indebtedness of the Borrower to such Lender resulting from the Advances owing to such Lender from time to time, including the amounts of principal and interest payable and paid to such Lender from time to time hereunder.  The Borrower agrees that upon notice by any Lender to the Borrower (with a copy of such notice to the Administrative Agent) to the effect that a promissory note or other

evidence of indebtedness is required or appropriate in order for such Lender to evidence (whether for purposes of pledge, enforcement or otherwise) the Advances owing to, or to be made by, such Lender, the Borrower shall promptly execute and deliver to such Lender, with a copy to the Administrative Agent, a Note payable to such Lender in a principal amount equal to the Advances of such Lender.  All references to Notes in the Loan Documents shall mean Notes, if any, to the extent issued hereunder.

(b)       The Register maintained by the Administrative Agent pursuant to <u>Section 10.05(c)</u> shall include a control account, and a subsidiary account for each Lender, in which accounts (taken together) shall be recorded (i) the date and amount of each Borrowing made hereunder (ii) the terms of each Assignment and Assumption delivered to and accepted by it, (iii) the amount of any principal or interest due and payable or to become due and payable from the Borrower to each Lender hereunder and (iv) the amount of any sum received by the Administrative Agent from the Borrower hereunder and each Lender's share thereof.  The Borrower and each Lender intend that any obligation under the Note be in registered form as defined in Treas.  Reg. Sections 5(f).103-1(c) and 1.871-14(c).

(c)       Entries made in good faith by the Administrative Agent in the Register pursuant to <u>clause (b)</u> above shall be conclusive evidence of the amount of principal and interest due and payable or to become due and payable from the Borrower, under this Agreement, absent manifest error; *provided* that the failure of the Administrative Agent to make an entry, or any finding that an entry is incorrect, which, in either case, shall be promptly corrected, in the Register shall not limit or otherwise affect the obligations of the Borrower under this Agreement.

SECTION 2.08       <u>Collateral Matters</u>.

(a)       <u>Collateral Security Perfection</u>.  Each of the Borrower Parties agrees to take all actions that the Collateral Agent may reasonably request in its sole and absolute discretion to further secure the Obligations or perfect and protect the Collateral Agent's Liens for the benefit of the Secured Parties upon the Collateral and for such Liens to obtain the priority therefor contemplated hereby, including, without limitation, executing and delivering such documents (including, without limitation, security documents, mortgages, deeds of trust, subordination and intercreditor agreements), instruments, financing statements, providing such notices and assents of third parties, obtaining such governmental authorizations and providing such other instruments and documents (in all cases without representation or warranty of any kind) in recordable form as the Collateral Agent or any Lender may reasonably request and, in all cases, in form and substance satisfactory to the Collateral Agent. Each Borrower Party hereby irrevocably authorizes the Collateral Agent at any time and from time to time to file in any filing office in any UCC jurisdiction any initial financing statements and amendments thereto that (a) indicate the Collateral (i) as all assets of such Borrower Party or words of similar effect, regardless of whether any particular asset comprised in the Collateral falls within the scope of Article 9 of the UCC, or (ii) as being of an equal or lesser scope or with greater detail, and (b) provide any other information required by part 5 of Article 9 of the UCC for the sufficiency or filing office acceptance of any financing statement or amendment, including (i) whether such Borrower Party is an organization, the type of organization and any organization identification number issued to such Borrower Party and, (ii) in the case of a financing statement filed as a fixture filing, a sufficient description of real property to which the Collateral relates.  Such Borrower Party agrees to furnish any such information to the Collateral Agent promptly upon request.  Notwithstanding the provisions of this <u>Section 2.08(a)</u>, the Interim DIP Order and Final DIP Order shall be sufficient and conclusive evidence of the validity, perfection, enforceability, non-avoidability and priority of the Liens without the necessity of filing financing statements or amendments, and the Collateral Agent and the Lenders shall have the benefits of the Interim DIP Order, and after the Final Order Entry Date, and the Final DIP Order. Notwithstanding anything to the contrary in the Loan Documents, the parties hereto and all their respective successors and assigns acknowledge and agree that (x) all provisions of the Loan Documents (including,

without limitation, in respect of Collateral and the DIP Lien) are and shall be subject to the terms of the DIP Order, all Aron Rights and all rights and remedies of J. Aron in connection with the Safe Harbor Agreements (as defined in the DIP Order) and (y) any and all actions taken by J. Aron (or permitted by J. Aron) with respect to the Inventory Financing Collateral in connection with the J. Aron Transaction Documents and/or the DIP Order, in each case, shall be permitted for all purposes under the Loan Documents.

(b)     Real Property.  Subject in all respects to the DIP Order and to the Carve-Out (solely upon the occurrence of a Termination Date (as defined in the DIP Order)), the Borrower and the Guarantors shall grant to the Collateral Agent on behalf of the Secured Parties a security interest in, and mortgage on, all of the right, title and interest of the Borrower and the Guarantors in all real property, if any, owned or leased by the Borrower or any of the Guarantors, together in each case with all of the right, title and interest of the Borrower and such Guarantor in and to all buildings, improvements, and fixtures related thereto, any lease or sublease thereof, all general intangibles relating thereto and all proceeds thereof, in each case to the extent secured pursuant to the Pre-Petition Mortgages, *provided* that, the Borrower Parties shall use best efforts to finalize all mortgages, deeds of trust and other related documents for purposes of granting a security interest in all real property of the Borrower Parties no later than 30 Business Days following the date hereof.  The Borrower and the Guarantors acknowledge that, pursuant to the Interim DIP Order or the Final DIP Order (as applicable), the Liens in favor of the Collateral Agent on behalf of the Secured Parties in all of such real property and leasehold interests shall be perfected without the recordation of any instruments of mortgage or assignment and the Collateral Agent and the Lenders shall have the benefits of the Interim DIP Order and, after the Final Order Entry Date, the Final DIP Order.

## ARTICLE III

## OTHER PROVISIONS RELATING TO THE DIP FACILITY

SECTION 3.01     Default Interest.  Upon the occurrence and during the continuance of an Event of Default under Section 7.01, the Borrower shall pay interest on overdue amounts (a) payable on demand at a rate of 11% *per annum*; and (b) to the fullest extent permitted by applicable law, the amount of any overdue interest, fee or other overdue amount payable under this Agreement or any other Loan Document to any Agent or any Lender that is not paid when due, from the date such amount shall be due until such amount shall be paid in full, payable in arrears on the date such amount shall be paid in full and on demand, at a rate *per annum* equal at all times to 11% *per annum*.  Payment or acceptance of the increased rates of interest provided for in this Section 3.01 is not a permitted alternative to timely payment and shall not constitute a waiver of any Event of Default or otherwise prejudice or limit any rights or remedies of Administrative Agent or any Lender.

SECTION 3.02     Fees. The Borrower shall pay to each Agent for its own account such fees as may from time to time be separately agreed between the Borrower and such Agent (including those fees set forth in the Fee Letter).

SECTION 3.03     Change of Circumstances.

(a)     Increased Costs Generally.  If any Change in Law shall:

(i)     impose, modify or deem applicable any reserve, special deposit, compulsory loan, insurance charge or similar requirement against assets of, deposits with or for the account of, or credit extended or participated in by, any Lender;

(ii)     subject any Recipient to any Taxes (other than (A) Indemnified Taxes, (B) Taxes described in <u>clauses (b)</u> through <u>(d)</u> of the definition of "Excluded Taxes" and (C) Connection Income Taxes) on its Advances, Advance principal, Commitments or other obligations under the Loan Documents, or its deposits, reserves, other liabilities or capital attributable thereto; or

(iii)     impose on any Lender or the London interbank market any other condition, cost or expense (other than Taxes) affecting this Agreement or the Advances made by such Lender or participation therein;

and the result of any of the foregoing shall be to increase the cost to such Lender or such other Recipient of making, continuing or maintaining the Advances or of maintaining its obligation to make the Advances, or to reduce the amount of any sum received or receivable by such Lender or other Recipient hereunder (whether of principal, interest or any other amount) in each case by an amount which such Lender or other Recipient deems to be material, then, upon request of such Lender or other Recipient, the Borrower will pay to such Lender or other Recipient, as the case may be, such additional amount or amounts as will compensate such Lender or other Recipient, as the case may be, for such additional costs incurred or reduction suffered; *provided* that (A) the Borrower shall not be responsible for costs under this <u>clause (a)</u> or <u>clause (b)</u> below if such costs were incurred more than 180 days prior to receipt by the Borrower of the demand from the affected Lender or other Recipient, as the case may be, pursuant to this <u>clause (a)</u> or <u>clause (b)</u> below, unless the requirement resulting in such increased costs became effective during such 180-day period and retroactively applies to a date occurring prior to such 180-day period, in which case the Borrower shall be responsible for all such additional amounts described in this <u>clause (a)</u> or <u>clause (b)</u> below from and after such date of effectiveness and (B) a Lender or other Recipient, as the case may be, claiming additional amounts under this <u>Section 3.03</u> agrees to use commercially reasonable efforts (consistent with its internal policy and legal and regulatory restrictions) to designate a different Applicable Lending Office if the making of such a designation would avoid the need for, or reduce the amount of, such increased cost that may thereafter accrue and would not, in the reasonable judgment of such Lender or other Recipient, as the case may be, be otherwise disadvantageous to such Lender or other Recipient, as the case may be.  A certificate as to the amount of such increased cost, submitted to the Borrower by such Lender or other Recipient, as the case may be, shall be conclusive and binding for all purposes, absent manifest error.

(b)     <u>Capital Requirements</u>.  If any Change in Law affecting a Lender or any lending office of such Lender or such Lender's holding company, if any, regarding capital or liquidity requirements, has or would have the effect of reducing the rate of return on such Lender's capital or on the capital of such Lender's holding company, if any, as a consequence of this Agreement, the Commitments of such Lender or the Advance made by such Lender to a level below that which such Lender or such Lender's or holding company could have achieved but for such Change in Law (taking into consideration such Lender's policies and the policies of such Lender's holding company with respect to capital adequacy or liquidity) by an amount reasonably deemed by such Lender to be material, then from time to time, the Borrower will pay to such Lender such additional amount or amounts as will compensate such Lender or such Lender's holding company for any such reduction suffered.

(c)     <u>Certificates for Reimbursement</u>.  A certificate of a Lender setting forth the amount or amounts necessary to compensate such Lender or its holding company as specified in <u>paragraph (a)</u> or <u>(b)</u> of this Section and delivered to the Borrower, shall be conclusive absent manifest error.  The Borrower shall pay such Lender the amount shown as due on any such certificate within 10 days after receipt thereof.

(d) <u>Delay in Requests</u>.  Failure or delay on the part of any Lender to demand compensation pursuant to this <u>Section 3.03</u> shall not constitute a waiver of such Lender's right to demand such compensation; *provided* that the Borrower shall not be required to compensate a Lender pursuant to this <u>Section 3.03</u> for any increased costs incurred or reductions suffered more than 180 days prior to the date that such Lender notifies the Borrower of the Change in Law giving rise to such increased costs or reductions, and of such Lender's intention to claim compensation therefor (except that, if the Change in Law giving rise to such increased costs or reductions is retroactive, then the 180-day period referred to above shall be extended to include the period of retroactive effect thereof).

SECTION 3.04        <u>Payments and Computations</u>.

(a) The Borrower shall make each payment hereunder and under the other Loan Documents, irrespective of any right of counterclaim or set-off, not later than 12:00 noon (New York City time) on the day when due in Dollars to the Administrative Agent at the Administrative Agent's Account in same day funds, with payments being received by the Administrative Agent after such time being deemed to have been received on the next succeeding Business Day unless the Administrative Agent otherwise elects in its sole discretion.  The Administrative Agent will promptly thereafter cause like funds to be distributed (i) if such payment by, or on behalf of, the Borrower is in respect of principal, interest, commitment fees or any other Obligation then payable hereunder and under the other Loan Documents to more than one Lender, to such Lenders for the account of their respective Applicable Lending Offices ratably in accordance with the amounts of such respective Obligations then payable to such Lenders and (ii) if such payment by the Borrower is in respect of any Obligation then payable hereunder to one Lender, to such Lender for the account of its Applicable Lending Office, in each case to be applied in accordance with the terms of this Agreement.  Upon its acceptance of an Assignment and Assumption and recording of the information contained therein in the Register pursuant to <u>Section 10.05(c)</u>, from and after the effective date of such Assignment and Assumption, the Administrative Agent shall make all payments hereunder and under the other Loan Documents in respect of the interest assigned thereby to the assignee thereunder, and the parties to such Assignment and Assumption shall make all appropriate adjustments in such payments for periods prior to such effective date directly between themselves.

(b) All payments in respect of the principal amount of the Advances shall be accompanied by payment of accrued interest on the principal amount being repaid or prepaid, and all such payments (and, in any event, any payments in respect of the Advances on a date when interest is due and payable with respect to the Advances) shall be applied to the payment of interest then due and payable before application to principal.

(c) All other computations of fees, interest and commissions shall be made on the basis of a 360-day year and actual days elapsed (including the first day but excluding the last day; *provided* that, if the Advance is repaid on the same day on which it is made, one day's interest shall be paid on the Advance).  Each determination by the Administrative Agent of an interest rate, fee or commission hereunder shall be conclusive and binding for all purposes, absent manifest error.

(d) Whenever any payment hereunder or under the other Loan Documents shall be stated to be due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day, and such extension of time shall in such case be included in the computation of payment of interest.

(e) If the Administrative Agent receives funds for application to the Obligations of the Borrower under or in respect of the Loan Documents under circumstances for which the Loan Documents do not specify the Advance to which, or the manner in which, such funds are to be applied, the

Administrative Agent shall distribute such funds to each of the Lenders, in each case in accordance with such Lender's Pro Rata Share of the sum of the aggregate principal amount of the Advances outstanding at such time, in repayment or prepayment of such outstanding Advances or other Obligations then owing to such Lender and, if applicable, for application to such principal repayment installments thereof as the Administrative Agent shall direct.

(f)     The Administrative Agent shall deem any payment by or on behalf of the Borrower under this Agreement that is not made in same day funds prior to 12:00 noon (New York City time) to be a non-conforming payment.  Any such payment shall not be deemed to have been received by the Administrative Agent until the later of (i) the time such funds become available funds and (ii) the applicable next Business Day.  The Administrative Agent shall give prompt telephonic notice to the Borrower and each Lender (confirmed in writing) if any payment is non-conforming.  Any non-conforming payment may constitute or become a Default or Event of Default in accordance with the terms of Section 7.01(a).  Interest shall continue to accrue on any principal as to which a non-conforming payment is made until such funds become available funds (but in no event less than the period from the date of such payment to the next succeeding applicable Business Day) at the rate determined pursuant to Section 3.01 from the date such amount was due and payable until the date such amount is paid in full.

SECTION 3.05     Taxes.

(a)     Payments Free of Taxes.  Any and all payments by or on account of any obligation of the Borrower under any Loan Document shall be made without deduction or withholding for any Taxes, except as required by applicable law.  If any applicable law (as determined in the good faith discretion of an applicable Withholding Agent) requires the deduction or withholding of any Tax from any such payment by a Withholding Agent, then the applicable Withholding Agent shall be entitled to make such deduction or withholding and shall timely pay the full amount deducted or withheld to the relevant Governmental Authority in accordance with applicable law and, if such Tax is an Indemnified Tax, then the sum payable by the Borrower shall be increased as necessary so that after such deduction or withholding has been made (including such deductions and withholdings applicable to additional sums payable under this Section 3.05) the applicable Recipient receives an amount equal to the sum it would have received had no such deduction or withholding been made.

(b)     Payment of Other Taxes by the Borrower.  The Borrower shall timely pay to the relevant Governmental Authority in accordance with applicable law, or at the option of the Administrative Agent timely reimburse it for the payment of, any Other Taxes.

(c)     Indemnification by the Borrower.  Without duplication of any obligation under Section 3.05(b), the Borrower shall indemnify each Recipient, within 10 days after written demand therefor, for the full amount of any Indemnified Taxes (including Indemnified Taxes imposed or asserted on or attributable to amounts payable under this Section 3.05) payable or paid by such Recipient or required to be withheld or deducted from a payment to such Recipient and any reasonable out-of-pocket expenses arising therefrom or with respect thereto, whether or not such Indemnified Taxes were correctly or legally imposed or asserted by the relevant Governmental Authority.  A certificate as to the amount of such payment or liability delivered to the Borrower by a Lender (with a copy to the Administrative Agent), or by the Administrative Agent on its own behalf or on behalf of a Lender, shall be conclusive absent manifest error.

(d)     Indemnification by the Lenders.  Each Lender shall severally indemnify the Administrative Agent, within 10 days after demand therefor, for (i) any Indemnified Taxes attributable to such Lender (but only to the extent that the Borrower has not already indemnified the Administrative Agent

for such Indemnified Taxes and without limiting the obligation of the Borrower to do so), (ii) any Taxes attributable to such Lender's failure to comply with the provisions of Section 10.05(d) relating to the maintenance of a Participant Register and (iii) any Excluded Taxes attributable to such Lender, in each case, that are payable or paid by the Administrative Agent in connection with any Loan Document, and any reasonable expenses arising therefrom or with respect thereto, whether or not such Taxes were correctly or legally imposed or asserted by the relevant Governmental Authority.  A certificate as to the amount of such payment or liability delivered to any Lender by the Administrative Agent shall be conclusive absent manifest error.  Each Lender hereby authorizes the Administrative Agent to set off and apply any and all amounts at any time owing to such Lender under any Loan Document or otherwise payable by the Administrative Agent to such Lender from any other source against any amount due to the Administrative Agent under this paragraph (d).

(e)      Evidence of Payments.  As soon as practicable after any payment of Taxes by the Borrower to a Governmental Authority pursuant to this Section 3.05, the Borrower shall deliver to the Administrative Agent the original or a copy of a receipt issued by such Governmental Authority evidencing such payment and a copy of the return reporting such payment or other evidence of such payment reasonably satisfactory to the Administrative Agent.

(f)      Status of Lenders.  (i)  Any Recipient that is entitled to an exemption from or a reduction of withholding Tax with respect to payments made under any Loan Document shall deliver to the Borrower and the Administrative Agent, at the time or times reasonably requested by the Borrower or the Administrative Agent, such properly completed and executed documentation reasonably requested by the Borrower or the Administrative Agent as will permit such payments to be made without withholding or at a reduced rate of withholding.  In addition, any Recipient, if reasonably requested by the Borrower or the Administrative Agent, shall deliver such other documentation prescribed by applicable law or reasonably requested by the Borrower or the Administrative Agent as will enable the Borrower or the Administrative Agent to determine whether or not such Recipient is subject to backup withholding or information reporting requirements.  Notwithstanding anything to the contrary in the preceding two sentences, the completion, execution and submission of such documentation (other than such documentation set forth in Section 3.05(f)(ii)(A), (ii)(B) and (ii)(E) below) shall not be required if in the Recipient's reasonable judgment such completion, execution or submission would subject such Recipient to any material unreimbursed cost or expense or would materially prejudice the legal or commercial position of such Recipient.

(ii)      Without limiting the generality of the foregoing,

(A)      any Lender that is a USVI Person shall deliver to the Borrower and the Administrative Agent on or prior to the date on which such Lender becomes a Lender under this Agreement (and from time to time thereafter upon the reasonable request of the Borrower or the Administrative Agent), executed copies of IRS Form W-9 for U.S. Virgin Islands tax purposes;

(B)      any Foreign Lender shall, to the extent it is legally entitled to do so, deliver to the Borrower and the Administrative Agent (in such number of copies as shall be requested by the Borrower or the Administrative Agent, as applicable) on or prior to the date on which such Foreign Lender becomes a Lender under this Agreement (and from time to time thereafter upon the reasonable request of the Borrower or the Administrative Agent), whichever of the following is applicable:

(1)      executed copies of IRS Form W-8ECI for U.S. Virgin Islands tax purposes;

40

(2)     in the case of a Foreign Lender claiming the benefits of the exemption for portfolio interest under Section 881(c) of the Internal Revenue Code (as applicable in the U.S. Virgin Islands), (x) a certificate substantially in the form of Exhibit E-1 to the effect that such Foreign Lender is not a "bank" within the meaning of Section 881(c)(3)(A) of the Internal Revenue Code (as applicable in the U.S. Virgin Islands), a "10 percent shareholder" of the Borrower within the meaning of Section 881(c)(3)(B) of the Internal Revenue Code (as applicable in the U.S. Virgin Islands), or a "controlled foreign corporation" described in Section 881(c)(3)(C) of the Internal Revenue Code (as applicable in the U.S. Virgin Islands) (a "*USVI Tax Compliance Certificate*") and (y) executed copies of IRS Form W-8BEN or IRS Form W-8BEN-E, in each case, for U.S. Virgin Islands tax purposes;

(3)     in the case of a Foreign Lender claiming the benefits of the exemption pursuant to Section 543, Chapter 13, Title 33, of the U.S. Virgin Islands Code, (x) a certificate substantially in the form of Exhibit F-1  and (y) executed copies of IRS Form W-8BEN or IRS Form W-8BEN-E, in each case, for U.S. Virgin Islands tax purposes;

(4)     to the extent a Foreign Lender is not the beneficial owner, executed copies of IRS Form W-8IMY, accompanied by IRS Form W-8ECI, IRS Form W-8BEN or IRS Form W-8BEN-E, a USVI Tax Compliance Certificate substantially in the form of Exhibit E-2, Exhibit E-3, Exhibit F-2, Exhibit F-3, IRS Form W-9, and/or other certification documents from each beneficial owner, as applicable, in each case, for U.S. Virgin Islands tax purposes; *provided* that if the Foreign Lender is a partnership and one or more direct or indirect partners of such Foreign Lender are claiming the portfolio interest exemption, or the exemption described in the preceding clause (iii), such Foreign Lender may provide a USVI Tax Compliance Certificate substantially in the form of Exhibit E-4 or a certificate substantially in the form of Exhibit F-4, as applicable, on behalf of each such direct and indirect partner; or

(5)     in the case of a Foreign Lender claiming the benefits of the exemption for a foreign government under Section 892 of the Internal Revenue Code (as applicable in the U.S. Virgin Islands, pursuant to Section 3.05(i)), executed copies of IRS Form W-8EXP for U.S. Virgin Islands tax purposes;

(6)     any Foreign Lender shall, to the extent it is legally entitled to do so, deliver to the Borrower and the Administrative Agent (in such number of copies as shall be requested by the Borrower or the Administrative Agent, as applicable) on or prior to the date on which such Foreign Lender becomes a Lender under this Agreement (and from time to time thereafter upon the reasonable request of the Borrower or the Administrative Agent), executed copies of any other form or forms prescribed by applicable law as a basis for claiming exemption from or a reduction in U.S. Virgin Islands withholding Tax, duly completed, together with such supplementary documentation as may be prescribed by applicable law to permit the Borrower or the Administrative Agent to determine the withholding or deduction required to be made; and

(C)      if a payment made to a Recipient under any Loan Document would be subject to U.S. federal or U.S. Virgin Islands withholding Tax imposed by FATCA if such Recipient were to fail to comply with the applicable reporting requirements of FATCA (including those contained in Section 1471(b) or 1472(b) of the Internal Revenue Code, including as applicable in the U.S. Virgin Islands), such Recipient shall deliver to the Borrower and the Administrative Agent at the time or times prescribed by law and at such time or times reasonably requested by the Borrower or the Administrative Agent such documentation prescribed by applicable law (including as prescribed by Section 1471(b)(3)(C)(i) of the Internal Revenue Code, including as applicable in the U.S. Virgin Islands) and such additional documentation reasonably requested by the Borrower or the Administrative Agent as may be necessary for the Borrower and the Administrative Agent to comply with their obligations under FATCA and to determine that such Recipient has complied with such Recipient's obligations under FATCA or to determine the amount to deduct and withhold from such payment.  Solely for purposes of this clause (E), "FATCA" shall include any amendments made to FATCA after the date of this Agreement.

(iii)      The Administrative Agent, and any successor or supplemental Administrative Agent that is not a USVI Person, shall deliver to the Borrower, on or prior to the date on which it becomes a party to this Agreement, a duly completed IRS Form W-9 for U.S. Virgin Islands tax purposes (or other appropriate IRS Form) with respect to payments to be received for its own account and shall assume primary responsibility for withholding under Chapters 3 and 4 of the Internal Revenue Code (as applicable in the U.S. Virgin Islands) with respect to payments to be received for the account of other Recipients, with the effect that the Borrower Parties may make payments to the Administrative Agent without deduction or withholding of any Taxes imposed by the U.S. Virgin Islands.

Each Recipient agrees that if any form or certification it previously delivered expires or becomes obsolete or inaccurate in any respect, it shall update such form or certification or promptly notify the Borrower and the Administrative Agent in writing of its legal inability to do so.

(g)      Treatment of Certain Refunds.  If any party determines, in its sole discretion exercised in good faith, that it has received a refund of any Taxes as to which it has been indemnified pursuant to this Section 3.05 (including by the payment of additional amounts pursuant to this Section 3.05), it shall pay to the indemnifying party an amount equal to such refund (but only to the extent of indemnity payments made under this Section 3.05 with respect to the Taxes giving rise to such refund), net of all out-of-pocket expenses (including Taxes) of such indemnified party and without interest (other than any interest paid by the relevant Governmental Authority with respect to such refund).  Such indemnifying party, upon the request of such indemnified party, shall repay to such indemnified party the amount paid over pursuant to this paragraph (g) (plus any penalties, interest or other charges imposed by the relevant Governmental Authority) in the event that such indemnified party is required to repay such refund to such Governmental Authority.  Notwithstanding anything to the contrary in this paragraph (g), in no event will the indemnified party be required to pay any amount to an indemnifying party pursuant to this paragraph (g) the payment of which would place the indemnified party in a less favorable net after-Tax position than the indemnified party would have been in if the Tax subject to indemnification and giving rise to such refund had not been deducted, withheld or otherwise imposed and the indemnification payments or additional amounts with respect to such Tax had never been paid.  This paragraph (g) shall not be construed to require any indemnified party to make available its Tax returns (or any other information relating to its Taxes that it deems confidential) to the indemnifying party or any other Person.

(h)    Defined Terms.  For purposes of this Section 3.05, the term "applicable law" includes FATCA.

(i)    Section 892 of the Internal Revenue Code.  The parties to this Agreement acknowledge that, as of the date of this Agreement, Section 892 of the Internal Revenue Code was in effect for U.S. Virgin Islands tax purposes, by virtue of the "mirror" system by which the Internal Revenue Code is applied to the U.S. Virgin Islands.  The parties to this Agreement further agree, absent a Change in Law, to treat Section 892 of the Internal Revenue Code as being in effect for U.S. Virgin Islands tax purposes by virtue of such "mirror" system, for purposes of determining and applying U.S. Virgin Islands withholding taxes on interest payments pursuant to this Agreement.  The incorrectness of the acknowledgment in the first sentence of this Section 3.05(i) shall not result in any obligation of any Borrower Party to indemnify or pay additional amounts on account of any Excluded Taxes.

(j)    Survival.  Each party's obligations under this Section 3.05 shall survive the resignation or replacement of the Administrative Agent or any assignment of rights by, or the replacement of, a Lender, the termination of the Commitments and the repayment, satisfaction or discharge of all obligations under any Loan Document.

SECTION 3.06    Sharing of Payments, Etc.  If any Lender shall, by exercising any right of setoff or counterclaim or otherwise, obtain payment in respect of any principal of or interest on the Advances or other obligations hereunder resulting in such Lender receiving payment of a proportion of the aggregate amount of its Advances and accrued interest thereon or other such obligations greater than its Pro Rata share thereof as provided herein, then the Lender receiving such greater proportion shall (a) notify the Administrative Agent of such fact, and (b) purchase (for cash at face value) participations in the Advances and such other obligations of the other Lenders, or make such other adjustments as shall be equitable, so that the benefit of all such payments shall be shared by the Lenders ratably in accordance with the aggregate amount of principal of and accrued interest on their respective Advances and other amounts owing them; *provided* that:

(i)    if any such participations are purchased and all or any portion of the payment giving rise thereto is recovered, such participations shall be rescinded and the purchase price restored to the extent of such recovery, without interest; and

(ii)    the provisions of this Section 3.06 shall not be construed to apply to (x) any payment made by the Borrower pursuant to and in accordance with the express terms of this Agreement (including the application of funds arising from the existence of a Defaulting Lender), or (y) any payment obtained by a Lender as consideration for the assignment of or sale of a participation in its Advances to any assignee or participant, other than to the Borrower or any Subsidiary thereof (as to which the provisions of this Section 3.06 shall apply).

The Borrower consents to the foregoing and agrees, to the extent it may effectively do so under applicable law, that any Lender acquiring a participation pursuant to the foregoing arrangements may exercise against the Borrower rights of setoff and counterclaim with respect to such participation as fully as if such Lender were a direct creditor of the Borrower in the amount of such participation.

SECTION 3.07    Use of Proceeds. The proceeds of the Advances shall be used only for (i) fees, costs, and expenses related to the Chapter 11 Cases (including any fees, costs, and expenses related to the DIP Facility and the professional fees and expenses of the Borrower Parties, the DIP Agent, and the DIP Lenders), (ii) post-petition operating expenses and working capital needs of the Borrower Parties including, but not limited to, those required to remain in, or return to compliance with the laws in accordance with 28 U.S.C. § 959, and such general and administrative expenses as are contained within the

DIP Budget, (iii) other disbursements contained within the DIP Budget, including those to pay (a) interest, fees and expenses (including attorneys' fees) to the Lenders in accordance with the DIP Facility; (b) income Taxes, (c) deposits made to utilities pursuant to an order of the Bankruptcy Court, (d) checks outstanding on the Petition Date that are re-issued in accordance with an order of the Bankruptcy Court, and (e) fees due the Office of the United States Trustee, (iv) payments of amounts due under certain settlement agreements entered into between the Loan Parties as described in in the DIP Budget, (v) other expenditures permitted by the DIP Order, and (vi) costs and expenses incurred or to be incurred by the Borrower Parties in connection with the labor required to safely shut-down all operations at the Refinery and other facilities owned or operated by the Loan Parties, in any and all cases, subject to the other limitations set forth in, and to the extent and in amounts not to exceed the amounts expressly set forth for such fees, costs and expenses in, the DIP Budget, this Agreement, and the DIP Order; provided, that no proceeds of the DIP Facility or the DIP Collateral may be used to investigate, initiate, prepare, assert, join, commence, support, or prosecute proceedings or actions on account of any purported offsets, recoupments, challenges, contests, attacks, objections, defenses, claims or counterclaims of any kind against any Agent, the Lenders, or any of their affiliates or to investigate any such purported offsets, recoupments, challenges, contests, attacks, objections, defenses, claims or counterclaims.

SECTION 3.08    Security.  Subject in each case to the entry and the terms of the DIP Order and the terms of the Loan Documents, the DIP Facility and the Obligations shall be entitled to superpriority administrative claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in respect of each of the Borrower Parties, and the Obligations shall be and hereby are secured by valid, enforceable and non-avoidable first priority priming Liens, subject and subordinate only to the Carve-Out, the Aron Rights and all rights and remedies of J. Aron in connection with the Safe Harbor Agreements (as defined in the DIP Order), in and to the Collateral.  Such Liens shall be granted pursuant to Sections 364(c)(2), (c)(3) and (d)(1) of the Bankruptcy Code (subject to any Permitted Liens) and the DIP Order shall provide that such Liens shall be automatically perfected upon the entry of the Interim DIP Order without the need for any further action by the Administrative Agent, the Lenders or the Borrower, including the filing of any financing statements or the recording of any mortgages.

SECTION 3.9.    Defaulting Lenders.

(a)    Defaulting Lender Adjustments.  Notwithstanding anything to the contrary contained in this Agreement, if any Lender becomes a Defaulting Lender, then, until such time as such Lender is no longer a Defaulting Lender, to the extent permitted by applicable law:

(i)    Waivers and Amendments.  Such Defaulting Lender's right to approve or disapprove any amendment, waiver or consent with respect to this Agreement shall be restricted as set forth in the definition of "Required Lenders."

(ii)    Defaulting Lender Waterfall.  Any payment of principal, interest, fees or other amounts received by the Administrative Agent for the account of such Defaulting Lender (whether voluntary or mandatory, at maturity, pursuant to Article VII or otherwise) or received by the Administrative Agent from a Defaulting Lender pursuant to Section 10.03 shall be applied at such time or times as may be determined by the Administrative Agent as follows: first, to the payment of any amounts owing by such Defaulting Lender to the Administrative Agent hereunder; second, as the Borrower may request (so long as no Default or Event of Default exists), to the funding of the Advances in respect of which such Defaulting Lender has failed to fund its portion thereof as required by this Agreement, as determined by the Administrative Agent; third, if so determined by the Administrative Agent and the Borrower, to be held in a Deposit Account and released pro rata in order to satisfy such

Defaulting Lender's potential future funding obligations with respect to the Advances under this Agreement; *fourth,* to the payment of any amounts owing to the Lenders as a result of any judgment of a court of competent jurisdiction obtained by any Lender against such Defaulting Lender as a result of such Defaulting Lender's breach of its obligations under this Agreement; *fifth,* so long as no Default or Event of Default exists, to the payment of any amounts owing to the Borrower as a result of any judgment of a court of competent jurisdiction obtained by the Borrower against such Defaulting Lender as a result of such Defaulting Lender's breach of its obligations under this Agreement; and *sixth,* to such Defaulting Lender or as otherwise directed by a court of competent jurisdiction; *provided* that if such payment is a payment of the principal amount of the Advances in respect of which such Defaulting Lender has not fully funded its appropriate share, such payment shall be applied solely to pay the Advances of all Non-Defaulting Lenders on a pro rata basis prior to being applied to the payment of any Advances of such Defaulting Lender until such time as the Advances are held by the Lenders pro rata in accordance with the Commitments under the Facility. Any payments, prepayments or other amounts paid or payable to a Defaulting Lender that are applied (or held) to pay amounts owed by a Defaulting Lender or to post cash collateral pursuant to this Section 3.10(a) shall be deemed paid to and redirected by such Defaulting Lender, and each Lender irrevocably consents hereto.

(iii)     Certain Fees. No Defaulting Lender shall be entitled to receive any fee pursuant to Section 3.02 for any period during which that Lender is a Defaulting Lender (and the Borrower shall not be required to pay any such fee that otherwise would have been required to have been paid to that Defaulting Lender).

(b)     Defaulting Lender Cure. If the Borrower, the Administrative Agent and Lenders agree in writing that a Lender is no longer a Defaulting Lender, the Administrative Agent will so notify the parties hereto, whereupon as of the effective date specified in such notice and subject to any conditions set forth therein, that Lender will, to the extent applicable, purchase at par that portion of the outstanding Advances of the other Lenders or take such other actions as the Administrative Agent may determine to be necessary to cause the Advances and funded and unfunded participations in Notes to be held pro rata by the Lenders in accordance with the Commitments under the Facility, whereupon such Lender will cease to be a Defaulting Lender; *provided* that no adjustments will be made retroactively with respect to fees accrued or payments made by or on behalf of the Borrower while that Lender was a Defaulting Lender; and provided, further, that except to the extent otherwise expressly agreed by the affected parties, no change hereunder from Defaulting Lender to Lender will constitute a waiver or release of any claim of any party hereunder arising from that Lender's having been a Defaulting Lender.

## ARTICLE IV

## CONDITIONS PRECEDENT

SECTION 4.01     Conditions Precedent to Closing Date. Section 2.01 of this Agreement shall become effective on and as of the first date (the "***Closing Date***") on which the Administrative Agent determines in its sole and absolute discretion that the following conditions precedent have been satisfied

(and the obligation of each Lender to make an Advance is subject to the satisfaction of such conditions precedent before or concurrently with the Closing Date):

(a)     The Administrative Agent shall have received on or before the Closing Date the following, each dated as of the Closing Date (unless otherwise specified) and in form and substance reasonably satisfactory to the Administrative Agent:

(i)     This Agreement, duly executed and delivered by the parties hereto.

(ii)     a certificate of a Responsible Officer of the Borrower certifying the satisfaction of the conditions set forth in Section 4.01(b) through (g);

(b)     The representations and warranties of the Loan Parties contained in each Loan Document to which they are a party shall be true and correct in all material respects (or, if qualified by materiality, in all respects after giving effect to such qualification) on and as of such date other than any such representations or warranties that, by their terms, refer to a specific date other than such Funding Date, in which case such representation or warranty shall be true and correct in all material respects as of such specific date.

(c)     The Chapter 11 Cases shall have been filed in the Bankruptcy Court.

(d)     The Bankruptcy Court shall have entered the Interim DIP Order which shall be in full force and effect, shall not have been reversed, vacated or stayed and shall not have been amended, supplemented or otherwise modified without the prior written consent of the Required Lenders.

(e)     The Required Lenders and the Administrative Agent shall have received the DIP Budget, in form and substance satisfactory to the Lenders, including as to all assumptions.

(f)     The Administrative Agent and the Lenders shall have received all such agreements, instruments, approvals, and other documents, each reasonably satisfactory to the Administrative Agent in form and substance, as the Administrative Agent may reasonably request.

(g)     The Loan Parties shall be in compliance with the terms of the Interim DIP Order.

(h)     The Administrative Agent and the Lenders shall have received (or each shall have agreed to arrangements for the) payment of all fees, costs and expenses then due and owing to the Administrative Agent and the Lenders (including all accrued and unpaid fees and expenses of the Administrative Agent's and Lenders' counsel and professional advisors at the discretion of the Administrative Agent and other compensation contemplated in connection with this Agreement and the Interim DIP Order payable to the Administrative Agent and the Lenders in respect of the transactions contemplated by this Agreement), in each case, to the extent invoiced at least two (2) Business Days prior to the Closing Date.

SECTION 4.02     Conditions Precedent to Each Borrowing.  The obligation of each Lender to make an Advance on any Funding Date (including the First DIP Funding Date) is subject to the

46

satisfaction (or waiver by the Lenders) of the following conditions precedent before or concurrently with such Funding Date:

(a)     The Administrative Agent shall have received on or before such Funding Date the following, each dated as of such Funding Date (unless otherwise specified) and in form and substance reasonably satisfactory to the Administrative Agent:

(i)     a certificate of a Responsible Officer of the Borrower certifying the satisfaction of the conditions set forth in <u>Sections 4.02 (b)</u> through <u>(d)</u>;

(ii)     one or more Notes payable to the applicable Lender to the extent requested by such Lender pursuant to the terms of <u>Section 2.07;</u>

(iii)     a Funding Notice in respect of the Advances to be funded on such Funding Date.

(b)     The representations and warranties of the Loan Parties contained in each Loan Document to which they are a party shall be true and correct in all material respects (or, if qualified by materiality, in all respects after giving effect to such qualification) on and as of such date, before and after giving effect to the Advances on such Funding Date and to the application of the proceeds therefrom, other than any such representations or warranties that, by their terms, refer to a specific date other than such Funding Date, in which case such representation or warranty shall be true and correct in all material respects as of such specific date.

(c)     No Default or Event of Default shall exist at the time of, or immediately after giving effect to, the making of the Advances.

(d)     At the time of such Borrowing and after giving effect to the use of proceeds thereof, the Borrower Parties shall be in compliance with the DIP Budget, the proposed Advance is contemplated by the DIP Budget and the proceeds of the proposed Advance are to be applied in the manner, and to the extent, contemplated by the DIP Budget.

(e)     At the time of such Borrowing and after giving effect thereto, (i) if such Borrowing has been requested before the Final Order Entry Date, the Interim DIP Order shall be in full force and effect and shall not have been vacated, reversed, stayed, or modified or amended in any respect, in each case, without the prior written consent of the Administrative Agent and (ii) if such Borrowing is requested after the Final Order Entry Date, the Final DIP Order shall be in full force and effect and shall not have been vacated, reversed, stayed, or modified or amended in any respect, in each case, without the prior written consent of the Administrative Agent.

(f)     If such Borrowing is requested after the Final Order Entry Date, **t**he Borrower Parties shall be in compliance with the terms of the Final DIP Order.

(g)     If such Borrowing is requested after the Final Order Entry Date, the Administrative Agent and the Lenders shall have received a release agreement executed by each of the Loan Parties in form and substance satisfactory to the Administrative Agent and the Lenders.

(h)     The Administrative Agent and the Lenders shall have received (or each shall have agreed to arrangements for the) payment of all fees, costs and expenses then due and owing to the Administrative Agent and the Lenders (including all accrued and unpaid fees and expenses of the Administrative Agent's and Lenders' counsel and professional advisors at the discretion of the Administrative Agent and other compensation contemplated in connection with this Agreement and the

Interim DIP Order payable to the Administrative Agent and the Lenders in respect of the transactions contemplated by this Agreement), in each case, to the extent invoiced at least two (2) Business Days prior to such Funding Date.

SECTION 4.03    Notices.  Any Funding Notice shall be executed by a Responsible Officer of the applicable Borrower Party or Borrower Parties in a writing (including by telecopier or electronic communication) delivered to the Administrative Agent.

# ARTICLE V

# REPRESENTATIONS AND WARRANTIES

SECTION 5.01    Representations and Warranties.  In order to induce each Agent and each Lender to enter into this Agreement, each Borrower Party represents and warrants to such Agent and Lender (x) on the Closing Date, (y) on each Funding Date, and (z) on any other date that representations are required to be made by the Borrower Parties herein as follows, all of the items referenced in this Section 5.01:

(a)    Organization; Requisite Power and Authority; Qualification.  Such Loan Party (i) is duly organized or formed, validly existing and, except as set forth in Schedule 5.01(a), in good standing (to the extent such concept exists under applicable law) under the law of the jurisdiction of its incorporation or formation as identified in Schedule 5.01(a), (ii) has all requisite power and authority to own and operate its Properties, to carry on its business as now conducted and as proposed to be conducted except where such failure has not had, and could not reasonably be expected to have, a Material Adverse Effect, (iii) subject to the granting of the Interim DIP Order or Final DIP Order, as applicable, has all requisite power and authority to enter into the Loan Documents to which it is a party and to carry out the transactions contemplated thereby and (iv) is qualified to do business and in good standing in every jurisdiction where its assets are located and wherever necessary to carry out its business and operations, except in jurisdictions where the failure to be so qualified or in good standing has not had, and could not be reasonably expected to have, a Material Adverse Effect.

(b)    Capital Stock and Ownership.  The Capital Stock of each Borrower Party issued to any other Loan Party has been duly authorized and validly issued and is fully paid and non-assessable and is owned by a Loan Party free and clear of all Liens, except those created under the Pre-Petition Collateral Documents, the Loan Documents or other Permitted Liens.  Except as set forth on Schedule 5.01(b), there is no existing option, warrant, call, right, commitment or other agreement to which any Borrower Party is a party requiring, and there is no Capital Stock of any Borrower Party outstanding which upon conversion or exchange would require, the issuance by any Borrower Party of any Capital Stock or other Securities convertible into, exchangeable for or evidencing the right to subscribe for or purchase, Capital Stock of any Borrower Party.  Schedule 5.01(b) correctly sets forth the ownership interest of the Loan Parties and the Refinery.

(c)    Due Authorization.  Subject to the granting of the Interim DIP Order or Final DIP Order, as applicable, the execution, delivery and performance of the Loan Documents to which such Loan Party is a party have been duly authorized by all necessary corporate, limited liability company or limited partnership (as applicable) action on the part of such Loan Party.

(d)    No Conflict.  The execution, delivery and performance by such Loan Party of the Loan Documents to which it is a party and the transactions contemplated by the Loan Documents by such Loan Party do not and will not (i) violate (A) any provision of any law or any governmental rule or regulation applicable to any such Loan Party, subject to entry of the DIP Order, (B) any of the

48

Organizational Documents of such Loan Party or (C) any order, judgment or decree of any court or other agency of government binding on such Loan Party except, in the case of sub-clauses (i)(A) and (i)(C) of this clause (d), where such violation could not reasonably be expected to have a Material Adverse Effect; (ii) conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any Contractual Obligation binding on any such Loan Party except to the extent such conflict, breach or default could not reasonably be expected to have a Material Adverse Effect; (iii) result in or require the creation or imposition of any Lien upon any of the Properties of any of such Loan Party (other than any Permitted Liens); or (iv) subject to the granting of the Interim DIP Order or Final DIP Order, as applicable, require any approval of stockholders, members or partners or any approval or consent of any Person under any Contractual Obligation of such Loan Party, except for (A) such approvals or consents which have been obtained and are in full force and effect, and (B) any such approvals or consents the failure of which to obtain could not reasonably be expected to have a Material Adverse Effect.

(e)      Governmental Consents.  (i) Subject to the DIP Order, the execution, delivery and performance by such Borrower Party of the Loan Documents to which it is a party and the consummation of the transactions contemplated by the Loan Documents by such Borrower Party do not require any registration with, consent or approval of, or notice to, or other action to, with or by, any Governmental Authority except for (A) the registrations, consents, approvals, notices or other actions which have been duly obtained, taken, given or made and, are in full force and effect, (B) registrations, consents, approvals, notices or other actions required by securities, regulatory or applicable law in connection with an exercise of remedies and (C) such registrations, consents, approvals, notices or other actions that if not obtained and maintained in full force and effect could not reasonably be expected to have a Material Adverse Effect.

(i)      Except as otherwise disclosed on Schedule 5.01(e)(i), the Loan Parties are in compliance with all Governmental Authorizations applicable to them and the Refinery (i) as of the Closing Date, in all material respects other than noncompliance caused by nonroutine operations and emissions during the restart period, and (ii) as of any date after the Closing Date on which this representation is made, except for such noncompliance as could not reasonably be expected to have a Material Adverse Effect.

(ii)      All Governmental Authorizations which are required to be obtained by the Closing Date or which have otherwise been obtained in connection with the making of the Advances hereunder and the execution and delivery of, and performance by each Loan Party of its respective obligations under the Loan Documents to which it is a party have been duly obtained, were validly issued, are in full force and effect, are not subject to appeal or all applicable appeal periods have expired or will have expired as of the Closing Date.

(iii)      Except (i) as set forth on Schedule 5.01(e)(i) and/ or (ii) as could not reasonably be expected to have a Material Adverse Effect, as of the Closing Date, there are no proceedings pending or, to the Loan Parties' knowledge, threatened that could reasonably be expected to result in a rescission, termination, adverse modification, or suspension of any such Governmental Authorization set forth on Part I of Schedule 5.01(e)(iii) or in a failure to obtain any Governmental Authorization set forth on Part II of Schedule 5.01(e)(iii). Except as pertains to the matters set forth on Schedule 5.01(e)(i), the Borrower has no reason to believe that any Governmental Authorizations which are required to be obtained in connection with the Required Shutdown Activities not required to have been obtained on the date of this Agreement or as of the Closing Date (or amendments, renewals or reissuance of any Governmental Authorizations required after the date of this Agreement) will not be obtained in due course on or before the date such Governmental Authorization, or amendment, renewal or reissuance thereof, is required for the commencement of the appropriate state of construction or operation or to avoid any substantial

delay in, or material impairment to, the consummation and performance of the transactions contemplated by this Agreement, the Loan Documents or the Transaction Documents, or shall contain any condition or requirements, the compliance with which could reasonably be expected to result in a Material Adverse Effect.

(f)       Binding Obligation.  Subject to the granting of the Interim DIP Order or Final DIP Order, as applicable, each Loan Document to which such Loan Party is a party has been duly executed and delivered by such Loan Party and is the legally valid and binding obligation of such Loan Party, enforceable against such Loan Party in accordance with its respective terms, except as may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws relating to or limiting creditors' rights generally or by equitable principles relating to enforceability.

(g)       Financial Statements.  The financial statements of the Borrower Parties furnished to the Administrative Agent pursuant to Section 6.03(a) fairly present in all material respects the financial condition and the results of operations and cash flows of the Loan Parties as of the date thereof, all in accordance with GAAP (subject to normal year-end adjustments and, in the case of unaudited financial statements, the absence of footnotes).

(h)       Adverse Proceedings, Etc. Except as set forth on Schedule 5.01(h), there are no Adverse Proceedings, individually or in the aggregate, that could reasonably be expected to have a Material Adverse Effect. No Borrower Party nor the Refinery is subject to or in default with respect to any final judgments, writs, injunctions, decrees, rules or regulations of any court or any federal, state, municipal or other governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, that, individually or in the aggregate, could reasonably be expected to have a Material Adverse Effect.

(i)       Taxes.  Except as otherwise permitted under Section 6.01(b) or set forth on Schedule 5.01(i), all material tax returns and reports of the Borrower Parties required to be filed by any of them have been timely filed, and all material Taxes due and payable by the Borrower Parties and upon their respective properties, assets, income, businesses and franchises have been paid when due and payable. Except as could not reasonably be expected to have a Material Adverse Effect, there is no audit, claim or assessment pending or proposed in writing against the Borrower regarding any Taxes relating to any Borrower Party, which is not being contested by such Borrower Party in good faith and by appropriate proceedings; *provided* that reserves or other appropriate provisions, if any, as shall be required in conformity with GAAP shall have been made or provided therefor.  For U.S. federal and U.S. Virgin Islands income tax purposes, the Borrower is treated as an entity that is disregarded as separate from a U.S. Virgin Islands corporation.

(j)       Environmental Matters.

(i)       Except as disclosed on Schedule 5.01(j), except as could not reasonably be expected, individually or in the aggregate, to have a Material Adverse Effect, (A) none of the Refinery, the Borrower Parties and their respective Properties or operations is or has been in violation of any Environmental Laws, including, without limitation, any Governmental Authorizations issued pursuant to any Environmental Law, (B) none of the Refinery, the Borrower Parties and their respective Properties or operations is subject to any outstanding written order, consent decree or settlement agreement with any Person relating to any Environmental Law, any Environmental Action, or any Hazardous Materials Activity, (C) none of the Borrower Parties and the Refinery has received any letter or request for information relating to the Refinery under Section 104 of the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. § 9604) or any comparable state law and (D) none of the Refinery, the Borrower Parties and

their respective Properties or operations is subject to any actual or, to the Borrower Parties' knowledge, threatened Environmental Action.

(ii)     No Borrower Party has received any written notice under any Environmental Law indicating past or present treatment, storage or disposal of Hazardous Materials at the Real Estate Assets of the Refinery that could be reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

(iii)     Compliance of the Refinery and the Borrower Parties with all current requirements pursuant to or under Environmental Laws, including, without limitation, any Governmental Authorizations issued pursuant to any Environmental Law, would not require actions that could be reasonably expected to have, individually or in the aggregate, a Material Adverse Effect.

(iv)     To the Borrower Parties' knowledge, no event or condition has occurred or is occurring with respect to the Refinery or the Borrower Parties or any of their respective Properties or operations relating to any Environmental Law, any Environmental Action, any Release of Hazardous Materials, or any Hazardous Materials Activity, which individually or in the aggregate could reasonably be expected to have, a Material Adverse Effect.

(v)     To the Borrower Parties' knowledge, the Environmental Response Trust is in compliance with all applicable investigative, cleanup, closure, remediation and other corrective or remedial action requirements pursuant to the Hovensa Confirmation Order with respect to any Hazardous Materials located at, in, on or under the Refinery, except for any failure to comply as could not reasonably be expected, individually or in the aggregate, to have a Material Adverse Effect.

(vi)     This Section 5.01(j) and Section 5.01(e)(ii) shall be the sole representations and warranties by the Borrower Parties with respect to environmental matters.

(k)     Governmental Regulation.

(i)     No Borrower Party is subject to regulation under the Investment Company Act of 1940 or under any other federal or state statute or regulation which may limit its ability to incur Debt or which may otherwise render all or any portion of the Obligations hereunder or under the other Loan Documents unenforceable.

(ii)     No Borrower Party is a "*registered investment company*" or a company "*controlled*" by a "*registered investment company*" or a "*principal underwriter*" of a "*registered investment company*" as such terms are defined in the Investment Company Act of 1940.

(l)     Use of Proceeds; Margin Stock.   The proceeds of the Advances and other extensions of credit hereunder have been or will be used solely in accordance with, and solely for the purposes contemplated by, Section 3.07.  No Borrower Party is engaged principally, or as one of its important activities, in the business of extending credit for the purpose of purchasing or carrying any Margin Stock.  No part of the proceeds of the Advances will be used to purchase or carry any such Margin Stock or to extend credit to others for the purpose of purchasing or carrying any such Margin Stock or for any purpose that violates, or is inconsistent with, the provisions of Regulation T, U or X of the Board of Governors.

(m)     Employee Benefit Plans.  Except as could not reasonably be expected, individually or in the aggregate, to have a Material Adverse Effect, (i) each Borrower Party and each of their respective

51

ERISA Affiliates are in compliance with all applicable provisions and requirements of ERISA and the Internal Revenue Code and the regulations and published interpretations thereunder with respect to each Employee Benefit Plan, (ii) each Employee Benefit Plan which is intended to qualify under Section 401(a) of the Internal Revenue Code has received a favorable determination letter from the IRS indicating that such Employee Benefit Plan is so qualified and, to the knowledge of the Borrower Parties, nothing has occurred subsequent to the issuance of such determination letter which could cause such Employee Benefit Plan to lose its qualified status, (iii) no liability to the PBGC (other than required premium payments), the IRS, any Employee Benefit Plan or any trust established under Title IV of ERISA has been or is reasonably expected to be incurred by any Borrower Party or any of their ERISA Affiliates, (iv) no ERISA Event has occurred or is reasonably expected to occur, and (v) the Borrower Parties and each of their ERISA Affiliates have complied with the requirements of Section 515 of ERISA with respect to each Multiemployer Plan and are not in "default" (as defined in Section 4219(c)(5) of ERISA) with respect to payments to a Multiemployer Plan.

(n)     Certain Fees.  No broker's or finder's fee or commission will be payable by any Borrower Party with respect hereto or to any of the transactions contemplated by the Loan Documents, except as payable to the Agents and the Lenders pursuant to the Loan Documents.

(o)     Compliance with Statutes, Etc.  Except as set forth on Schedule 5.01(o), each of the Borrower Parties and the Refinery is in compliance with all applicable statutes, regulations and orders of, and all applicable restrictions imposed by, all Governmental Authorities, in respect of the operation or shutting down of the Refinery, the conduct of its business and the ownership of its property, except such non-compliance that, individually or in the aggregate, could not reasonably be expected to result in a Material Adverse Effect.

(p)     Disclosure.  As of the Closing Date, to the best knowledge of the Borrower Parties, all written information (other than projections, budgets, forecasts, other forward-looking information, historical financial information, reports prepared by third party consultants or information of a general economic nature) provided by or on behalf of the Borrower Parties to any Agent or Lender in connection with the transactions contemplated hereunder is, when taken as a whole and as of the Closing Date, correct in all material respects and does not (as of the Closing Date) contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements contained therein, when taken as a whole, not materially misleading in light of the circumstances under which such statements were made (giving effect to supplements and updates thereto).

(q)     Patriot Act.  To the extent applicable, each Borrower Party is in compliance, in all material respects, with the (i) Trading with the Enemy Act, as amended, and each of the foreign assets control regulations of the United States Treasury Department (31 CFR, Subtitle B, Chapter V, as amended) and any other enabling legislation or executive order relating thereto, and (ii) Patriot Act.  No part of the proceeds of the Advances will be used, directly or indirectly by the Borrower, for any payments to any governmental official or employee, political party, official of a political party, candidate for political office, or anyone else acting in an official capacity, in order to obtain, retain or direct business or obtain any improper advantage, in violation of the United States Foreign Corrupt Practices Act of 1977 or any other applicable anti-bribery or anti-corruption law.

(r)     Security Interests.  The entry of the Interim DIP Order or the Final DIP Order (as applicable) and the entering into of any other Security Documents create in favor of the Collateral Agent for the benefit of the Secured Parties legal, valid, enforceable and perfected Liens in the Collateral, with the priority expressed to be applicable to such Liens in the Interim DIP Order or the Final DIP Order (as applicable) and under Section 2.08(a) of this Agreement, securing the payment of the Obligations.  The

Loan Parties are the legal and beneficial owners of the Collateral free and clear of any Lien, except for the liens and security interests created or permitted under the Loan Documents and the Interim DIP Order or the Final DIP Order (as applicable).  On and after the Closing Date and the entry of the Interim DIP Order, such Interim DIP Order and the Loan Documents are sufficient to provide the Superpriority Claims and Liens described in, and with the priority provided in, <u>Section 2.08(a)</u> of this Agreement.

       (s)      <u>Property</u>.  As of the Closing Date:

       (i)      except for any such failure which could not reasonably be expected to have a Material Adverse Effect, the Borrower Parties have valid title to all personal property that such Borrower Party purports to own (including the personal property comprising the Refinery), free and clear of all Liens except Liens created under the Pre-Petition Collateral Documents, the Loan Documents, the Interim DIP Order and the Final DIP Order or other Permitted Liens, and have the rights or interest to or in the Real Estate Assets reasonably required to construct and operate the Refinery in accordance with the Material Contracts, Applicable Law and Prudent Industry Practice. The Borrower Parties have good and marketable title or a valid and subsisting estate or interest to or in the Real Estate Assets (except any such failure which could not reasonably be expected to have a Material Adverse Effect), free and clear of all Liens except Permitted Liens;

       (ii)      the Borrower has good and marketable title or a valid and subsisting estate or interest to or in the Real Estate Assets (except any such failure which could not reasonably be expected to have a Material Adverse Effect), free and clear of all Liens except Permitted Liens;

       (iii)      the Real Estate Documents (A) represent the entire agreement between the respective parties thereto with respect to the interests in real property described therein and use and occupancy thereof, and there are no other agreements or modifications, whether oral or written, with respect thereto, other than as disclosed to the Administrative Agent on or prior to the Closing Date or entered into in accordance with this Agreement, (B) represent all material documents, agreements, and instruments that provide the Borrower with real property interests in furtherance of the Refinery, (C) grant to the Borrower all of the material real property interests necessary for the operation of the Refinery, (D) except as specified in <u>Schedule II</u>, have not been amended, supplemented, modified or assigned in any way by the Borrower, or to the Borrower's knowledge, any other Person and (E) to the Borrower's knowledge, have not been waived, surrendered, canceled, abandoned or terminated by any other party thereto;

       (iv)      except as set forth on <u>Schedule 5.01(s)</u>, no counterparty to any Real Estate Document to the Borrower's knowledge, is in material breach or default of such Real Estate Document;

       (v)      to the Borrower's knowledge, no event has occurred which, with or without notice or lapse of time or both, would constitute a material breach or default thereunder by any counterparty to a Real Estate Document or permit termination or acceleration by any party (other than the Borrower) under such Real Estate Document; and

       (vi)      all material rents, rentals, charges, fees and royalties currently due and payable by the Borrower pursuant to the Real Estate Documents have been paid.

       (t)      <u>Intellectual Property</u>.  Each Borrower Party owns or has the right to use all patents, trademarks, service marks, trade names, domain names, copyrights, licenses and other rights which are necessary for the ownership and operation of the Refinery in accordance with the Loan Documents and Transaction Documents, in each case, as to which the failure of such Borrower Party to so own or have the

right to use would reasonably be expected to have a Material Adverse Effect. No material product, process, method, substance, part or other material presently contemplated to be sold or employed by a Borrower Party in connection with its business will infringe any patent, trademark, service mark, trade name, domain name, copyright, license or other right owned by any other Person in a manner that could reasonably be expected to have a Material Adverse Effect.

(u)     <u>Insurance</u>. All insurance policies required to be obtained by or on behalf of any Borrower Party pursuant to <u>Section 6.01(d)</u> have been obtained and are in full force and effect and all premiums then due and payable thereon have been paid in full. None of the Borrower Parties has received any notice from any insurer that any insurance policy has ceased to be in full force and effect or claiming that the insurer's liability under any such insurance policy can be reduced or avoided.

(v)     <u>OFAC and Related Matters</u>.

(i)     None of the Borrower Parties nor any of their respective Subsidiaries (collectively, the "***Group***") nor any director or officer thereof, nor, to the Group's actual knowledge, any agent acting on its behalf, controlled Affiliate or employee of the Group, is an individual or entity that is, or is owned or controlled by a Person that is: (A) the subject of any sanctions administered or enforced by OFAC, the United Nations Security Council, the European Union or Her Majesty's Treasury (collectively, "***Sanctions***"), nor (B) located, organized or resident in a country or territory that is the subject of Sanctions (including, without limitation, Cuba, Iran, North Korea, Syria, and the Crimea region of Ukraine).

(ii)     Each Borrower Party represents that it will not (and will cause the Refinery not to), directly or indirectly, use the proceeds of the Advances, or lend, contribute or otherwise make available such proceeds to any subsidiary, joint venture partner or other Person (A) to fund or facilitate any activities or business of or with any Person or in any country or territory that, at the time of such funding or facilitation, is the subject of Sanctions; or (B) in any other manner that will result in a violation of Sanctions by any Person (including any Person participating in the Advances, whether as underwriter, advisor, investor or otherwise).

(iii)     The operations of the Borrower Parties are and have been conducted at all times in compliance, in all material respects, with financial recordkeeping and reporting requirements, including those of the Bank Secrecy Act, as amended by the Patriot Act, and the applicable anti-money laundering statutes of jurisdictions where the Equityholders, the Loan Parties and any of their respective directors, officers and Affiliates conduct business, the rules and regulations thereunder and any related or similar rules, regulations or guidelines, issued, administered or enforced by any governmental agency (collectively, the "***Money Laundering Laws***") and no action, suit or proceeding by or before any court or Governmental Authority or any arbitrator involving the Borrower Parties or any of its Subsidiaries with respect to the Money Laundering Laws is pending or, to the knowledge of the Borrower Parties, threatened.

(iv)     No Borrower Party, nor, to the actual knowledge of the Borrower Parties, their directors, officers, agents, affiliates or representatives has taken or will take any action in furtherance of an offer, payment, promise to pay, or authorization or approval of the payment or giving of money, property, gifts or anything else of value, directly or indirectly, to any person while knowing that all or some portion of the money or value will be offered, given or promised to anyone to improperly influence official action, to obtain or retain business or otherwise to secure any improper advantage in each case in violation of any applicable law (including the United States

54

Foreign Corrupt Practices Act of 1977, the UK Bribery Act 2010 and other similar applicable legislation in other jurisdictions).

(v)       The Borrower Parties and, to the actual knowledge of the Borrower Parties, their Affiliates have conducted their businesses in compliance with applicable anti-corruption laws (including the United States Foreign Corrupt Practices Act of 1977, the UK Bribery Act 2010 and other similar applicable legislation in other jurisdictions) and have instituted and maintained, and will continue to maintain, policies and procedures reasonably designed to promote and achieve compliance with such laws and with the representations and warranties contained herein.

(vi)       No Borrower Party will directly or indirectly use the proceeds of the Advances or lend, contribute or otherwise make available such proceeds to any subsidiary, Affiliate, joint venture partner or other Person for the purpose of financing or facilitating any activity that would violate applicable anti-corruption laws, rules, or regulations (including the United States Foreign Corrupt Practices Act of 1977, the UK Bribery Act 2010 and other similar applicable legislation in other jurisdictions).

(w)       <u>No Material Adverse Effect</u>.  Since the Petition Date, no event or change has occurred that has caused or evidences, either in any case or in the aggregate, a Material Adverse Effect.

(x)       <u>DIP Budget</u>.  The Loan Parties have disclosed to the Lenders all material assumptions with respect to the DIP Budget.

## ARTICLE VI

## COVENANTS

SECTION 6.01       <u>Affirmative Covenants</u>.  Except to the extent prohibited by the DIP Budget, the Interim DIP Order and/or the Final DIP Order (as applicable), from and after the Closing Date, until a Repayment Event, each Borrower Party covenants and agrees as follows:

(a)       <u>Compliance with Laws, Etc.</u>  Each Borrower Party will (i) comply with all applicable laws, rules, regulations and orders of any Governmental Authority, such compliance to include compliance with all applicable Environmental Laws, ERISA and any Anti-Money Laundering Laws, except where the failure to so comply could not reasonably be expected to have a Material Adverse Effect and (ii) maintain and enforce policies and procedures with respect to itself and its Subsidiaries designed to ensure compliance in all material respects with applicable Sanctions, anti-corruption laws and Anti-Money Laundering Laws.

(b)       <u>Taxes</u>.  Each Borrower Party will file all federal, state, local, foreign and other tax returns and reports required to be filed, and shall pay all federal, state, local, foreign and other taxes, assessments, fees and other governmental charges levied or imposed upon them or their properties, income or assets otherwise due and payable, except those (i) which are being contested in good faith by appropriate proceedings for which adequate reserves in conformity with GAAP have been provided therefor or (ii) with respect to which the failure to make such filing or payment could not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

(c)       <u>Hazardous Materials Activities, Etc.</u>  Except as otherwise could not reasonably be expected to have a Material Adverse Effect, each Borrower Party will promptly take any and all actions necessary to (i) cure any violation of applicable Environmental Laws by such Borrower Party or with

respect to the Refinery, (ii) make an appropriate response to any Environmental Action against such Borrower Party or with respect to the Refinery and discharge any obligations it may have to any Person thereunder and (iii) respond to any Release of Hazardous Materials by such Borrower Party or with respect to the Refinery to the extent required by applicable Environmental Laws.

(d)     _Maintenance of Insurance._

(i)     The Borrower Parties shall maintain (through either an individual policy or as part of a group policy maintained by any Loan Party or Refinery and so long as the Loan Parties are included as additional "named" insureds on all policies, as applicable), insurance in such amounts and against such losses as are customary for companies of a similar size operating in the same or similar businesses covering their operations and exposures and in accordance in all material respects with their applicable Material Contracts and in accordance in all material respects with the recommendations of the Insurance Consultant in the Insurance Report, by financially sound and responsible insurers or reinsurers which have an A.M. Best policyholders' rating of not less than A-, a financial size rating of IX or better, or an S&P rating of not less than A, or, if the relevant insurance is not available from such insurers, such other insurers as the Administrative Agent may approve in writing, acting reasonably, and which, in the case of any insurance on any Property with respect to which a mortgage has been granted pursuant to the terms of any Security Documents or Pre-Petition Collateral Documents, are licensed to do business in the jurisdictions where the applicable Property is located; _provided_ that to the extent that changes in the insurance markets result in a material increase in the cost of such coverage or if insurance against certain risks is not available on commercially reasonable terms, the Borrower Parties may reduce the amount or scope of coverage provided such coverage remains consistent with Prudent Industry Practice.

(ii)     All such insurance shall (A) provide that no cancellation, material reduction in amount or material change in coverage thereof shall be effective until at least 10 days (or, to the extent reasonably available, 30 days) after receipt by the Collateral Agent of written notice thereof (the Borrower shall deliver a copy of the policy (and to the extent any such policy is cancelled or renewed, a renewal or replacement policy), insurance certificate with respect thereto or other evidence thereof to the Administrative Agent and Collateral Agent) and (B) within 14 days after the Closing Date name the Collateral Agent as loss payee (in the case of property insurance) or additional insured (in the case of liability insurance) on behalf of the Secured Parties (it being understood that, absent an Event of Default, any proceeds of any such property insurance shall be delivered by the insurer(s) to the Borrower Parties and applied in accordance with this Agreement), as applicable.

(e)     _Preservation of Corporate Existence, Etc._     Except in connection with the administration of the Borrower Parties in the Chapter 11 Cases in accordance with applicable law, (i) each Borrower Party will preserve and keep in full force and effect its existence and (ii) each Borrower Party will preserve and keep in full force and effect all rights and franchises, licenses and permits material to its business, except with respect to sub-clause (ii) only, where the failure to so preserve and keep in full force and effect such rights, franchises, licenses and permits could not reasonably be expected to have a Material Adverse Effect, _provided_ that any Borrower Party may, at the Borrower Parties' expense, change its name upon 15 Business Days' prior written notice to the Administrative Agent (or such shorter period of time reasonably acceptable to the Administrative Agent) and timely delivery to the Administrative Agent of all additional financing statements (executed if necessary for any particular filing jurisdiction) and other instruments and documents reasonably requested by the Administrative Agent to maintain the validity, perfection and priority of the security interests created under the Security Documents.

(f)     Visitation Rights; Lender Calls.  At any reasonable time and from time to time upon reasonable prior notice, each Borrower Party will permit any of the Agents, or any agents or representatives designated by the Lenders, to examine and make copies of and abstracts from the records and books of account of, and visit the properties of, any of the Borrower Parties or the Refinery and to discuss the affairs, finances and accounts of any of the Borrower Parties or the Refinery with any of their officers or directors and with their independent certified public accountant*s*. The Borrower shall arrange to have a telephonic conference call with the Lenders, to the extent requested by the Required Lenders, once per calendar month, which shall be coordinated with the Administrative Agent during normal business hours upon reasonable prior notice to the Lenders, to discuss the status of the Refinery and the affairs, finances and accounts of the Borrower.  In addition, each Borrower Party shall continue to (a) grant the Lenders and the Administrative Agent with reasonable access to any other advisers of the Borrower as the Lenders or the Administrative Agent shall reasonably request, (b) reasonably cooperate with the Lenders' financial advisors, auditors, attorneys, appraisers and any other consultants engaged from time to time at the discretion of the Lenders and (c) reimburse reasonable fees and expenses of such financial advisors, auditors, attorneys, appraisers and other consultants in accordance with the DIP Order.

(g)     Keeping of Books.  Each Borrower Party will keep proper books of record and account, in which full, true and correct entries shall be made of all material financial transactions and the material assets and business of such Borrower Party in accordance with GAAP in effect from time to time and otherwise in compliance in all material respects with the regulations of any Governmental Authority having jurisdiction thereof.

(h)     Obtain and Maintain Governmental Authorizations. Each Borrower Party will obtain, maintain in full force and effect, and meet all requirements in respect of any Governmental Authorizations necessary for the Required Shutdown Activities and the transactions contemplated hereby.

(i)     Maintenance of Properties, Etc.  Each Borrower Party (i) will implement the Required Shutdown Activities in all respects in accordance with the DIP Order, the DIP Budget, Prudent Industry Practice, Governmental Authorizations and Contractual Obligations binding on it and applicable laws, (ii) will maintain and preserve in good repair, working order and condition (ordinary wear and tear, casualty and condemnation excepted) its Properties in all material respects in accordance with Prudent Industry Practice, Contractual Obligations binding on it and applicable laws, and (iii) may (but has no obligation to) consummate any Permitted Interim Activities.

(j)     Further Assurances.  Without limiting Section 2.08(a), herein, promptly upon request by any Agent, or any Lender through the Administrative Agent, do, execute, acknowledge, deliver, record, re-record, file, re-file, register and re-register any and all such further acts, deeds, conveyances, pledge agreements, mortgages, estoppel and consent agreements of lessors, deeds of trust, trust deeds, assignments, financing statements and continuations thereof, termination statements, notices of assignment, transfers, certificates, assurances and other instruments as any Agent, or any Lender through the Administrative Agent, may reasonably require from time to time in order to (i) carry out more effectively the purposes of the Loan Documents and the Interim DIP Order or the Final DIP Order (as applicable), (ii) without limiting Section 2.08(a), to the fullest extent permitted by applicable law, subject any Borrower Party's or any of its Subsidiaries' properties, assets, rights or interests to the Liens now or hereafter intended to be covered by any of the Security Documents and (iii) perfect and maintain the validity, effectiveness and priority of any of the Security Documents and any of the Liens intended to be created thereunder.

(k)     Post-Closing Collateral Requirements.

(i)       Within 30 days of the Closing Date, or such later date as may be agreed to by the Required Lenders in their discretion, the Borrower shall use commercially reasonable efforts to(i) establish the Borrower Account and (ii) deliver to the Administrative Agent a fully executed Control Agreement with respect to the Borrower Account.

(ii)       Within 30 days of the Closing Date, or such later date as may be agreed to by the Required Lenders in their discretion, the Borrower shall deliver the Pledge Agreement, in form and substance satisfactory to the Administrative Agent and the Lenders, duly executed by the Persons intended to be party thereto, together with:

(A)       certificates (if any) representing the pledged Capital Stock of the Borrower accompanied by undated stock powers executed in blank;

(B)       appropriately completed UCC financing statements (Form UCC-1), naming Holdings as debtor and the Collateral Agent as secured party, in form appropriate for filing under the Uniform Commercial Code of Delaware, as applicable, covering the "Pledge Collateral" under, and as defined in, the Pledge Agreement;

(C)       completed requests for information or similar search report, listing all effective financing statements filed in the Office of the Secretary of State (or other applicable office) of the jurisdiction of incorporation or formation, as applicable, of Holdings that name such Person as debtor, together with copies of such other financing statements; and

(D)       evidence that all other action that the Lenders may deem necessary in order to perfect and protect the first priority liens and security interests created under the Pledge Agreement has been taken.

(l)       Separateness.  Except in connection with the administration of the Borrower Parties in the Chapter 11 Cases in accordance with applicable law, each Borrower Party shall:

(i)       maintain Deposit Accounts or accounts, separate from those of any Affiliate (other than any other Borrower Party or as permitted by the Pre-Petition Depositary Agreement) with commercial banking institutions and will not commingle their funds with those of any Affiliate (other than any other Borrower Party or as permitted by the Pre-Petition Depositary Agreement);

(ii)       act solely in its name and through its duly authorized officers, managers, representatives or agents in the conduct of its businesses;

(iii)       conduct in all material respects its business solely in its own name, in a manner not misleading to other Persons as to its identity (without limiting the generality of the foregoing, all oral and written communications (if any), including invoices, purchase orders, and contracts);

(iv)       obtain proper authorization from member(s), shareholder(s), director(s) and manager(s), as required by its limited partnership agreement, limited liability company agreement, general partnership agreement or bylaws for all of its limited liability company, limited partnership, general partnership or corporate actions; and

(v)       comply in all material respects with the terms of its Organizational Documents.

(m)    Covenant to Give Security. Upon the acquisition of any property by any Borrower Party, and such property, in the reasonable judgment of the Administrative Agent, shall not already be subject to a perfected first priority security interest in favor of the Collateral Agent for the benefit of the Secured Parties pursuant to and as set forth in the applicable DIP Order, then in each case at the Borrower's expense and subject to the DIP Order:

(i)    within 10 days after such acquisition, furnish to the Administrative Agent and the Collateral Agent a description of the real and personal properties so acquired, in each case, in detail satisfactory to the Administrative Agent; and

(ii)    promptly, but in any event within 90 days after such acquisition, take all such actions and execute and deliver, or cause to be executed and delivered, all such mortgages, estoppel and consent agreements of lessors, documents, instruments, agreements, opinions and certificates with respect to such Property as the Administrative Agent shall reasonably request to create (and provide evidence thereof) a valid and perfected first priority Lien on such Property in favor of the Collateral Agent (for the benefit of the Secured Parties).

(n)    Material Contracts. Solely for so long as any Material Contract remains in force and effect, each Borrower Party will (i) perform and observe all material terms and provisions of each Material Contract to be performed or observed by it and (ii) enforce each such Material Contract in accordance with its material terms except, in the case of clauses (i) and (ii) above, where the failure to do so, either individually or in the aggregate, could not be reasonably likely to have a Material Adverse Effect (after giving effect to any replacement or substitute agreements entered into in accordance with the terms of the Loan Documents) or as set forth on Schedule 6.01(n).

(o)    DIP Budget.

(i)    Subject to the terms of the DIP Order, the expenditures authorized in the DIP Budget shall be adhered to by the Borrower Parties on a weekly basis and on a cumulative basis as described below.  The DIP Budget shall be tested on a cumulative basis for a 4-week period then ended, it being understood and agreed that actual amounts of each of the Borrower Parties' expenditures in the aggregate may not exceed the applicable DIP Budget; provided that any use by the Borrower Parties of Cash Collateral or the cash proceeds of Pre-Petition Collateral shall be taken account in connection with measuring compliance with the DIP Budget. Cash Collateral, whether the proceeds of Advances or otherwise, shall only be used for purposes set forth in the DIP Budget (regardless of whether such uses are permitted under this Agreement or otherwise).

(ii)    The Borrower shall provide to the Administrative Agent and the Pre-Petition Term Administrative Agent:

(A)    by 12:00 noon (New York time) on the second (2nd) Business Day following the end of each calendar week after the Closing Date (the "***Testing Date***"), a reconciliation (which shall be certified by the Chief Restructuring Officer of the Borrower Parties) of actual cash receipts and disbursements (including, without limitation, all disbursements made with of the proceeds of the Advances), cash balances and loan balances on a line-item basis against such figures set forth in the DIP Budget for (A) such week and (B) the cumulative period since the Closing Date which ended with such week, in each case, with written explanations of any line-item that varies for such line-item; provided that the first such reconciliation shall not be required to be delivered until the Wednesday of the second full week following the Closing Date; and

(B)    such other information or documents (financial or otherwise) with respect to the Borrower Parties as the Lenders (through the Administrative Agent) may reasonably request.

(iii)    No later than three (3) days after the distribution of the report by the Borrower pursuant to Section 6.01(o)(ii)(A) above, the Borrower shall host a conference call with the Administrative Agent and the Lenders to discuss the financial information provided by the Borrower pursuant to Section 6.01(o)(ii)(A), which conference calls shall be conducted during normal business hours at such times as may be mutually agreed between the Borrower, the Administrative Agent and the Required Lenders.

(iv)    No later than five (5) Business Days before the end of each consecutive full four-week period included in the then-effective DIP Budget, the Borrower shall deliver to the Administrative Agent and Lenders a proposed updated DIP Budget for the remaining period covered by the then-effective DIP Budget for the approval of the Administrative Agent and the Required Lenders in their sole discretion, which updated DIP Budget must be approved by the Administrative Agent and the Required Lenders at least two (2) Business Days before the end of such four-week period. If the Administrative Agent and the Required Lenders reject such updated DIP Budget, the Borrower shall, within twenty-four (24) hours of receipt of such notice of rejection, engage in good faith negotiations with the Administrative Agent in order to develop a proposed updated DIP Budget that is acceptable to the Administrative Agent and Required Lenders in their sole discretion (such revised proposed DIP Budget to be submitted within two (2) Business Days of the Borrower's receipt of a notice of rejection). Any proposed updated DIP Budget shall, upon approval by the Administrative Agent pursuant to this Section 6.01(o)(iv), become the effective DIP Budget and shall replace and supersede the then-effective DIP Budget. For clarification purposes, in the event the DIP Budget is not approved by the Administrative Agent and the Required Lenders, the DIP Budget that was last approved by the Administrative Agent and the Required Lenders shall remain in effect.

(v)    Any deviation from the DIP Budget in excess of the Permitted Variances (as defined below in Section 6.01(o)(vi)) shall constitute non-compliance with the DIP Budget and the terms of the Loan Documents and an Event of Default; provided that the Required Lenders shall have the authority to provide written pre-approval for any deviations in excess of the Permitted Variances.

(vi)    As of any Testing Date, for the one week period ending on such Testing Date ("***Testing Period(s)***"), the Borrower shall not allow (i) any operating disbursements made by the Borrower Parties during such Testing Period (reduced by any applicable accrued and unused Carry Forward Amounts for the applicable Disbursement Line Item with respect to each operating disbursement) to be (x) greater than 120% of the applicable Disbursement Line Item related to such operating disbursements for the Borrower Parties set forth in the DIP Budget for such Testing Period and (y) greater than 110% of the applicable Disbursement Line Item related to such operating disbursements for the Borrower Parties set forth in the DIP Budget on a cumulative basis for that portion of the DIP Budget ending on the Testing Date; (ii) the aggregate operating disbursements made by the Borrower Parties during such Testing Period (reduced by any applicable accrued and unused Carry Forward Amounts) to be (x) greater than 120% of the aggregate operating disbursements for the Borrower Parties set forth in the DIP Budget for such Testing Period and (y) greater than 110% of the aggregate operating disbursements for the Borrower Parties set forth in the DIP Budget on a cumulative basis for that portion of the DIP Budget ending on the Testing Date; (iii) the aggregate receipts received by the Borrower Parties during such Testing

Period (increased by any applicable accrued and unused Carry Forward Amounts) to be (x) less than 90% of the aggregate receipts for the Borrower Parties set forth in the DIP Budget for such Testing Period or (y) less than 90% of the aggregate receipts for the Borrower Parties set forth in the DIP Budget on a cumulative basis for that portion of the Budget ending on the Testing Date; (iv) the aggregate professionals fees disbursements made by the Borrower Parties on a cumulative basis over each Testing Period (reduced by any applicable accrued and unused Carry Forward Amounts related to professional fees) to be greater than 110% of the aggregate professional fees set forth in the DIP Budget on a cumulative basis for that portion of the DIP Budget ending on the Testing Periods (the variance in Disbursement Line Items described in the foregoing clause (i), the variance in operating disbursements described in the foregoing clause (ii), the variance in receipts described in the foregoing clause (iii) and the variance in professional fees described in the foregoing clause (iv), the "***Permitted Variances***").

(vii)    For the purposes of the above calculations, it is agreed that to the extent that the professional fees incurred by counsel to the Lenders exceed the amounts for such line items in the DIP Budget, such excess amounts shall be disregarded when calculating the Permitted Variance.

(p)    <u>Milestones</u>. Each Borrower Party hereby covenants and agrees to comply with the following milestones (the "***Milestones***"), unless otherwise agreed to in writing by the Required Lenders:

(i)    on or before the third (3rd) day after the Petition Date, the Interim DIP Order shall have been entered, and such order shall not have been reversed, modified, amended, stayed or vacated; and

(ii)    on or before the thirty-fifth (35th) day after the entry of the Interim DIP Order, the Final DIP Order shall have been entered, and such order shall not have been reversed, modified, amended, stayed or vacated.

(q)    <u>USVI Existing LC</u>.   Each Borrower Party shall use commercially reasonable efforts to procure that the Government of the U.S. Virgin Islands draws on the USVI Existing LC and applies any amounts drawn thereunder towards costs and expenses of the Borrower Parties in connection with the Required Shutdown Activities.  The Borrower Parties shall (i) keep the Lenders apprised of all discussions with the Government of the U.S. Virgin Islands in connection with the foregoing and (ii) promptly following receipt of confirmation that amounts will be drawn under the USVI Existing LC for application towards such expenses, shall deliver to the Lenders a revised DIP Budget reflecting any applicable changes thereto as a result of such application for approval by the Lenders.

(r)    <u>Bankruptcy Matters</u>. Without duplication to <u>Section 6.03</u> below, the Borrower Parties shall:

(i)    keep the Lenders and the Administrative Agent apprised on a timely basis of all material developments with respect to the business and affairs of the Borrower Parties;

(ii)    provide the Lenders and the Administrative Agent with notice of motions, applications or other filings to be brought or made in the Chapter 11 Cases in accordance with <u>Section 10.01</u> including to (1) use best efforts to give no less than five (5) days' notice of any material motion, application or other filing to be brought or made by the Borrower or any other Borrower Party in the Chapter 11 Cases or, where it is not practicable to do so, as much notice as is reasonably possible prior to any such filing; and (2) use best efforts to provide drafts of any material materials (including draft material orders) to be served by the Borrower or any other

Borrower Party at least two (2) Business Days prior to any such service to give the Lenders and the Administrative Agent a reasonable opportunity to review and comment on such draft material materials before service of such materials or, where it is not practicable to do so, as much opportunity in the circumstances as is reasonably practicable to do;

(iii)     seek the Required Lenders' prior approval of any material order in the Chapter 11 Cases that affects this Agreement, the DIP Facility or any other Loan Documents and only to seek to obtain such orders as are in form and substance reasonably satisfactory to the Required Lenders;

(iv)     comply with all Bankruptcy Court orders and use all the proceeds of the DIP Facility in a manner consistent with the restrictions set forth in this Agreement and the DIP Order;

(v)     subject to entry of an order by the Bankruptcy Court, maintain the insurance in existence on the date hereof, with respect to the Collateral, except such non-compliances as could not, either individually or in the aggregate, reasonably be expected to have a Material Adverse Effect;

(vi)     promptly execute and deliver all further instruments and documents (including, without limitation, certificates, declarations, affidavits, reports and opinions) and take all further action that the Required Lenders or the Administrative Agent may require, to give effect to this Agreement, perfect and protect any DIP Lien or to enable the Administrative Agent and the Lenders to exercise and enforce their rights and remedies with respect to the Collateral, subject to the terms and conditions set forth in the DIP Order.

SECTION 6.02     Negative Covenants.  From and after the Closing Date, until a Repayment Event, each Borrower Party covenants and agrees as follows:

(a)     Liens, Etc.  Such Borrower Party will not create, incur, assume or suffer to exist any Lien on or with respect to any of its Properties whether now owned or hereafter acquired, except Permitted Liens.

(b)     Debt.  Such Borrower Party will not create, incur, assume or suffer to exist any Debt, except (without duplication):

(i)     Debt of the Borrower Parties under the Loan Documents;

(ii)     Pre-Petition Debt of the Borrower Parties and other Debt of the Borrower Parties outstanding as of the Closing Date (in each case, without giving effect to any amendment or modification thereto, or any increase, incremental, accordion or similar feature (regardless of whether permitted under any Pre-Petition Financing Document or any document evidencing such Debt or otherwise)); provided that such amounts may increase with respect to any "payment in kind" interest that accrues and is capitalized in accordance with the DIP Order;

(iii)     Debt of any Borrower Party owed to any other Borrower Party; *provided* that all such Debt shall constitute Pledged Debt subject to the Lien created under the DIP Order;

(iv)     to the extent constituting Debt, solely to the extent incurred prior to and outstanding as of the Petition Date, contingent obligations under or in respect of performance bonds, bid bonds, appeal bonds, surety bonds, financial assurances and completion guarantees, indemnification obligations, obligations to pay insurance premiums, take or pay obligations and

similar obligations in each case incurred in the ordinary course of business and not in connection with Debt for Borrowed Money;

(v)     to the extent constituting Debt, Debt arising from the honoring by a bank or other financial institution of a check, draft or similar instrument drawn against insufficient funds in the ordinary course of business or other cash management services in the ordinary course of business; *provided* that such Debt is extinguished within 10 Business Days of its incurrence solely to the extent such Debt is created, incurred or assumed in connection with any Required Shutdown Activities; guaranties by a Borrower Party of Debt of any other Borrower Party with respect to Debt otherwise permitted to be incurred pursuant to this underline clause (b); *provided* that, if the Debt that is being guaranteed is unsecured and/or subordinated to the Obligations of the Borrower Parties under the Loan Documents, the guaranty shall also be unsecured and/or subordinated to the Obligations of the Borrower Parties under the Loan Documents;

(vi)     loans by any Affiliate of the Borrower Parties (other than a Borrower Party) to a Borrower Party solely to the extent incurred prior to and outstanding as of the Petition Date; *provided* that such loans are subordinated to the Obligations pursuant to subordination terms reasonably acceptable to the Administrative Agent, and in any event, subordinated in right of payment in full to the Obligations;

(vii)     solely to the extent incurred prior to and outstanding as of the Petition Date, trade payables incurred in the ordinary course of business (but not for borrowed money) and (A) not more than 90 days past due or (B) being contested in good faith by appropriate proceedings;

(viii)     to the extent constituting Debt that is outstanding as of the Petition Date, guarantees, contingent obligations or letters of credit issued (including reimbursement obligations in respect thereof) as credit support for commodity swaps, options or futures contracts or other similar contracts in each case permitted under Section 6.02(m); and

(ix)     Debt consisting of obligations under Insurance Premium Financing Arrangements that is outstanding as of the Petition Date.

For purposes of determining compliance under this Section 6.02(b), in the event that any Debt permitted to be incurred hereunder meets the criteria of more than one category of Debt permitted hereunder, the Borrower may not classify or reclassify such transaction or item (or portion thereof).

(c)     Change in Nature of Business.  Subject to any limitations imposed as a result of operation as debtors-in-possession under the Bankruptcy Code, the Borrower Parties will not engage in any business other than Required Shutdown Activities and Permitted Interim Activities.

(d)     Fundamental Changes; Mergers, Etc.  Such Borrower Party will not change its legal form, liquidate or dissolve.  Such Borrower Party will not merge into or consolidate with any Person or permit any Person to merge into it.

(e)     Sales, Etc. of Property. Such Borrower Party will not sell, lease, transfer or otherwise Dispose of any Property, or grant any option or other right to any Person to purchase, lease or otherwise acquire any Property, except:

(i)     sales of (and the granting of any option or other right to purchase or otherwise acquire) Inventory to the extent constituting Permitted Interim Activities;

(ii)        sales, leases or subleases, transfers or other Dispositions of real or personal Property that is obsolete, damaged, worn out surplus or not used or useful in the business of the Borrower Parties or the Refinery; provided that all such sales, transfers or dispositions pursuant to this clause (ii) shall not exceed $1,000,000 in the aggregate since the Closing Date without the prior written consent of the Required Lenders and/or to the extent constituting Permitted Interim Activities;

(iii)        the liquidation, sale or use of Cash and Cash Equivalents;

(iv)        to the extent constituting Dispositions, (A) leases, subleases, licenses or sublicenses of Property and (B) easements, rights-of-way or such other agreements related to real property, in each case, entered into in the ordinary course of business and which do not interfere with the Required Shutdown Activities, including in connection with any management services agreements or other agreements relating to any Shared Facilities;

(v)        Dispositions required by or in accordance with the Material Contracts, the Consent Decree or the Hovensa Confirmation Order;

(vi)        the unwinding of any Pre-Petition Secured Hedge Agreement pursuant to its terms or as a result of the Chapter 11 Cases;

(vii)        the Disposition of inventory, and/or Inventory Financing Collateral pursuant to the terms of the DIP Order and/or any Pre-Petition Inventory Financing Document; and

(viii)        other Dispositions approved by the Bankruptcy Court with the consent of the Required Lenders, or otherwise contemplated as part of any Plan, as defined in the DIP Order.

(f)        Investments.  Such Borrower Party will not make or hold any Investment, except:

(i)        Investments in Cash and Cash Equivalents;

(ii)        Investments owned as of the Closing Date in any Borrower Party or the Refinery;

(iii)        intercompany loans to the extent permitted under clause (b)(iii);

(iv)        to the extent constituting Investments, Debt which is permitted under clause (b);

(v)        Deposit Accounts permitted under Section 6.02(q);

(vi)        to the extent constituting Investments, any Required Shutdown Activities and/or Permitted Interim Activities.

(g)        Restricted Payments.  The Borrower Parties will not declare, order, pay, make or set apart or agree to declare, order, pay, make or set apart or agree to declare, order, pay, make or set apart, through any manner or means or through any other Person, directly or indirectly, any Restricted Payment other than Restricted Payments from one Borrower Party to another Borrower Party.

Notwithstanding the foregoing, any payment in respect of any Obligations (whether for principal, interest, fees, expenses, indemnification or otherwise) made to a Equityholder -Related Party (in its capacity as Lender), in each case, shall not be deemed a Restricted Payment nor constitute a Restricted Payment prohibited by this Section 6.02(g).

(h)     <u>Amendments of Organizational Documents</u>.  Such Borrower Party will not amend any of its Organizational Documents after the Closing Date without the Administrative Agent's prior consent, not to be unreasonably withheld, conditioned or delayed.

(i)     <u>Accounting Changes</u>.  The Borrower Parties will not make or permit any change in its (i) accounting policies or reporting practices, except as required by GAAP, or (ii) Fiscal Year.

(j)     <u>No Further Negative Pledges</u>.  Such Borrower Party will not enter into or permit to exist any agreement prohibiting the creation or assumption of any Lien upon any of its Properties, whether now owned or hereafter acquired, except for (i) (A) the Transaction Documents, and "Transaction Documents" (as defined in the Pre-Petition Revolving Credit Agreement), (B) agreements or documents governing, evidencing and/or securing any Pre-Petition Debt, or (C) other Contractual Obligations in effect as of the Closing Date (without giving effect to any amendments or modifications thereof).

(k)     <u>Sales and Leasebacks</u>.  Such Borrower Party will not, directly or indirectly, become or remain liable as lessee or as a guarantor or other surety, with respect to any lease of any property (whether real, personal or mixed), whether now owned or hereafter acquired, which such Borrower Party (i) has sold or transferred or is to sell or to transfer to any other Person (other than any other Borrower Party), or (ii) intends to use for substantially the same purpose as any other property which has been or is to be sold or transferred by such Borrower Party to any Person (other than any other Borrower Party) in connection with such lease.

(l)     <u>Partnerships, Formation of Subsidiaries, Etc.</u>  Such Borrower Party will not (i) become a general partner in any general or limited partnership or Joint Venture or (ii) organize any new Subsidiary.

(m)     <u>Speculative Transactions</u>.  Such Borrower Party will not enter into any Hedge Agreement or engage in any other transaction involving commodity swaps, options or futures contracts or any similar transactions (including take-or-pay contracts, long term fixed price off take contracts and other similar contracts for the sale of oil and refined products on either a financial or physical basis), other than any Hedge Agreements or the Inventory Financing Facility to which such Borrower Party is a party to as of the Closing Date .

(n)     <u>Capital Expenditures</u>.  The Borrower Parties shall not purchase, acquire or lease any assets that, if acquired, would constitute Capital Expenditures or otherwise make Capital Expenditures, other than Capital Expenditures that are contemplated by (and subject to the limitations of) the DIP Budget.

(o)     <u>Transactions with Affiliates</u>.  Such Borrower Party will not enter into any transaction of any kind with any Affiliate of the Borrower Parties, whether or not in the ordinary course of business, other than (i) in connection with any Required Shutdown Activities and/or Permitted Interim Activities, and (ii) on fair and reasonable terms not substantially less favorable to the applicable Borrower Party as would be obtainable by such Borrower Party at the time in a comparable arm's length transaction with a Person other than an Affiliate.

(p)     <u>Material Contracts</u>.

(i)     Except as set forth on <u>Schedule 6.02(p)</u>, for so long as any Material Contract is in force and effect, the Loan Parties shall not cause, consent to, or permit, any amendment to, modification, variance, impairment or assignment of, or waiver of timely compliance with, any terms or conditions of any Material Contract except to the extent the

foregoing is consented to by the Administrative Agent, such consent not to be unreasonably withheld, conditioned or delayed.

(ii)     Other than in connection with any Required Shutdown Activities or Permitted Interim Activities, the Loan Parties shall not enter into, become a party to, or become liable under (or permit any counterparty to enter into, become a party to or become liable under, on behalf of any Borrower Party), any contract or agreement after the Closing Date related to the Refinery.

(q)     <u>Accounts</u>. Such Borrower Party will not open or maintain any deposit accounts or securities accounts, other than the Existing Accounts and the Borrower Account.

(r)     <u>Pre-Petition Payments and Amendments of Pre-Petition Debt Document</u>. Other than as permitted under (i) this Agreement, (ii) the Interim DIP Order or the Final DIP Order, as applicable (including the DIP Budget), or (iii) otherwise with the prior written consent of the Required Lenders, no Borrower Party shall direct or permit to be made (a) any Pre-Petition Payment, or (b) any waiver, amendment, supplement, modification, termination or release of any provision of any Pre-Petition Financing Documents or any provision of any other material Pre-Petition Debt (including, without limitation, the Pre-Petition Financing Documents).

(s)     <u>Sanctions and FCPA, Etc.</u> No Borrower Party shall directly or indirectly use the proceeds of any Borrowing for any purpose that would breach the United States Foreign Corrupt Practices Act of 1977, the UK Bribery Act 2010, or other similar applicable legislation in other jurisdictions or directly or indirectly use the proceeds of any Borrowing, or lend, contribute or otherwise make available such proceeds to any Subsidiary, joint venture partner or other individual or entity, (i) to fund any activities of or business with any individual or entity that, at the time of such funding, is (A) the subject of Sanctions or (B) in any Designated Jurisdiction, in each case in violation of any Sanctions or (ii) in any other manner that will result in a violation of Sanctions by any Person (including any individual or entity participating in the financing transaction contemplated by this Agreement, whether as Lender, Administrative Agent or otherwise).

(t)     <u>Employment Matters</u>. No Borrower Party shall increase any termination or severance entitlement whatsoever or pay any termination or severance pay to executives of any Borrower Party or Subsidiary, each without the prior written consent of the Required Lenders and, as may be required by the Bankruptcy Code, an order of the Bankruptcy Court.

(u)     <u>Bankruptcy Matters</u>.  No Borrower Party shall:

(i)     make a public announcement in respect of, enter into any agreement or letter of intent with respect to, attempt to consummate or support any third party's attempt to consummate any transaction or agreement that would materially adversely impact the DIP Facility;

(ii)     at any time, seek or consent to any reversal, modification, amendments, stay or vacation of (i) any "First Day Order", (ii) the Interim DIP Order, or (iii) the Final DIP Order, in each case, without the prior written consent of the Required Lenders;

(iii)     at any time, seek or consent to a priority for any administrative expense against the Borrower Parties (now existing or hereafter arising) of any kind or nature whatsoever (including, without limitation, any administrative expenses of the kind specified in, or ordered under, Sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113 and 1114 of the

66

Bankruptcy Code) equal to or superior to the priority of the Administrative Agent and the Lenders in respect of the DIP Obligations except as expressly permitted in the DIP Order;

(iv)     seek or consent to a sale of any of the Collateral other than a Disposition permitted under (e) without the prior written consent of the Required Lenders and, as may be required by the Bankruptcy Code, an order of the Bankruptcy Court;

(v)     use Cash Collateral, whether the proceeds of Advances or otherwise, other than for purposes set forth in the DIP Budget (regardless of whether such uses are permitted under this Agreement or otherwise) without the prior written consent of the Administrative Agent (acting at the direction of the Required Lenders) or the Required Lenders.

SECTION 6.03     Reporting Requirements.  From and after the Closing Date, until a Repayment Event, each Borrower Party covenants and agrees that it will furnish to the Administrative Agent (for posting to the Lenders)

(a)     Notices under Pre-Petition Term Credit Agreement. Any notice, report, financial statement or other information (written or otherwise) delivered or required to be delivered to the Pre-Petition Term Administrative Agent or the Pre-Petition Term Lenders pursuant to Section 6.03 of the Pre-Petition Term Credit Agreement (as in effect as of the Closing Date, and without giving effect to any amendment or waiver thereto not expressly provided by the Lenders) at the same time as such notice, report, financial statement or other information is delivered to the Pre-Petition Term Administrative Agent or the Pre-Petition Term Lenders, as applicable (unless the DIP Order permits the Borrower Parties to not comply with such Section 6.03).

(b)     Notice of Default and Material Adverse Effect.  As soon as possible and in any event within two Business Days after the occurrence of (i) each Default, (ii) each Event of Default or (iii) any event, development or occurrence which, in the Borrower Parties' reasonable judgment, has had, or would reasonably be expected to have, a Material Adverse Effect continuing on the date of such statement, a statement of the Financial Officer of the Borrower Parties setting forth details of such Default, event, development or occurrence and the action that the Borrower Parties has taken and proposes to take with respect thereto (each such notice, a "***Default Notice***").

(c)     Information Regarding Collateral.  Prompt written notice of any change in a Borrower Party's (i) corporate name, (ii) identity or corporate structure or (iii) jurisdiction of organization. The Borrower Parties agree not to effect or permit any change referred to in the preceding sentence unless all filings have been made under the UCC or otherwise that are reasonably required in order for the Collateral Agent to continue at all times following such change to have a valid, legal and perfected security interest in all the Collateral to the extent contemplated in the Security Documents.

(d)     Other Information.  Such other information respecting the business, condition (financial or otherwise), operations, performance or Properties (including information on insurance coverage) of any Borrower Party or the Refinery as any Agent, or any Lender through the Administrative Agent, may from time to time reasonably request, other than any proprietary or confidential information of counterparties to Contractual Obligations of the Borrower Parties, to the extent the Borrower Parties have utilized commercially reasonable efforts to permit the disclosure of such information subject to Section 10.15 and such counterparty has not provided its consent (in which case such information shall be provided in redacted form).

Notwithstanding anything to the contrary in this Section 6.03 or elsewhere in any Loan Document, none of the Loan Parties shall be required to disclose, permit the inspection, examination or making copies

or abstracts of, or discussion of, any document, information or other matter that (i) constitutes non-financial trade secrets or non-financial proprietary information, (ii) in respect of which disclosure to any Agent or any Lender (or their respective representatives or contractors) is prohibited by law or is restricted by Contractual Obligation or (iii) is subject to attorney-client or similar privilege or constitutes attorney work-product.

SECTION 6.04    Permitted Activities of Holdings.  Holdings shall not directly operate any material business; *provided* that, for the avoidance of doubt, the following (and activities incidental thereto) shall not constitute the operation of a business and shall in all cases be permitted:  (a) its direct or indirect ownership of the Capital Stock of the Borrower and the Borrower's Subsidiaries, (b) the maintenance of its legal existence (including the ability to incur fees, costs and expenses relating to such maintenance and performance of activities relating to its officers, directors, managers and employees), (c) the entering into, and performance of its obligations with respect to, the Loan Documents, and the consummation of the Transactions, (d) payment of tax distributions and other dividends, (e) participating in tax, accounting and other administrative matters as a member of the consolidated group of Holdings and the Borrower, including compliance with applicable law and legal, tax and accounting matters related thereto and activities relating to its officers, directors, managers and employees, (f) holding any Cash and Cash Equivalents, (g) holding any other property (but not operating such property) received by it as a distribution from any of its Subsidiaries and making further distributions with such property, (h) providing indemnification to officers, managers and directors, (i) holding director and shareholder meetings, preparing organizational records and other organizational activities required to maintain its separate organizational structure or to comply with applicable law, (j) filing tax reports and paying taxes and other customary obligations related thereto in the ordinary course (and contesting any taxes), (k) entering into and performance of obligations with respect to contracts and other arrangements in connection with the activities contemplated by this Section 6.04, (l) the preparation of reports to Governmental Authorities and to its shareholders, (m) making Investments in the Borrower, (n) the performance of obligations under and compliance with its Organizational Documents, any demands or requests from or requirements of a Governmental Authority or any applicable law, ordinance, regulation, rule, order, judgment, decree or permit, including as a result of or in connection with the activities of its Subsidiaries, (o) the entering into, and performance of its obligations with respect to, the Holdco Loan Documents and the Pre-Petition Financing Documents, and the consummation of the transactions contemplated thereby (p) Holdings' participation in Chapter 11 Cases, and (q) any activities incidental to the foregoing or customary for passive holding companies.  Holdings shall not consent to the granting of any Liens on the Capital Stock of the Borrower other than those for the benefit of the Collateral Agent (including as a result of entering into this Agreement) or those for the benefit of the Pre-Petition Secured Parties and in effect as of the Closing Date. Holdings shall not directly own any Capital Stock other than the Borrower.

## ARTICLE VII

## EVENTS OF DEFAULT

SECTION 7.01    Events of Default.  From and after the First DIP Funding Date, each of the following events or occurrences shall constitute an "***Event of Default***":

(a)    the Borrower shall fail to pay any principal when due and payable or fail to pay any interest or any other payment under any Loan Document; or

(b)    any certification, representation or warranty made by any Loan Party (or any of its officers) under or in connection with any Loan Document to which it is a party (including in any certificate delivered pursuant to Article IV or Section 6.03) shall prove to have been incorrect in any material respect

68

when made; *provided* that, if (i) such Loan Party was not aware that such certification, representation or warranty was false or incorrect at the time such certification, representation or warranty was made, (ii) the fact, event or circumstance resulting in such false or incorrect certification, representation or warranty is capable of being cured, corrected or otherwise remedied, and (iii) such fact, event or circumstance resulting in such false or incorrect certification, representation or warranty shall have been cured, corrected or otherwise remedied within 30 days (or if such incorrect certification, representation or warranty is not susceptible to cure within 30 days, and such Loan Party is proceeding with diligence and in good faith to cure such default and such default is susceptible to cure, such 30 day cure period shall be extended as may be necessary to cure such incorrect certification, representation or warranty, such extended period not to exceed 90 days in the aggregate (inclusive of the original 30-day period)) from the date a Responsible Officer of such Borrower Party obtains knowledge thereof, such false or incorrect certification, representation or warranty shall not constitute a Default or an Event of Default for purposes of the Loan Documents; or

(c)     any Borrower Party shall fail to perform or observe any term, covenant or agreement contained <u>Section 2.08</u>, <u>Section 3.07</u>, <u>Section 6.01(e)(i)</u>, Section <u>6.01(o)</u>, Section 6.01(p), <u>Section 6.01(r)(iv)</u>, Section <u>6.02</u> or <u>Section 6.03(b)(ii)</u>; or

(d)     any Borrower Party shall fail to perform or observe any term, covenant or agreement contained in (i) Section <u>6.01(d)</u> or <u>Section 6.03(a)</u>(i) or <u>(a)(iii)</u> and such failure shall remain unremedied for five days after the earlier of the date on which (x) any Responsible Officer of a Borrower Party becomes aware of such failure or (y) written notice thereof shall have been given to the Borrower Parties by the Administrative Agent or any Lender or (ii) Section <u>6.01(m)</u> or <u>Section 6.03(b)</u> (as a result of any failure to comply with Sections 6.03(b), (c) or (d) of the Pre-Petition Term Credit Agreement) and such failure shall remain unremedied for five days after the earlier of the date on which (x) any Responsible Officer of a Borrower Party becomes aware of such failure or (y) written notice thereof shall have been given to the Borrower Parties by the Administrative Agent or any Lender; or

(e)     any Loan Party shall fail to perform or observe any other term, covenant or agreement contained in any Loan Document on its part to be performed or observed and such failure shall remain unremedied for 15 days after the earlier of the date on which (i) any Responsible Officer of such Person becomes aware of such failure or (ii) written notice thereof shall have been given to the Loan Parties by the Administrative Agent or any Lender; or

(f)     (i) any Borrower Party shall fail to pay any principal of, premium or interest on or any other amount payable in respect of any Post-Petition Debt of such Loan Party that is outstanding in a principal amount of at least $2,500,000 individually or $5,000,000 in the aggregate for all such Borrower Parties (but excluding Debt outstanding hereunder) in each case, when the same becomes due and payable (whether by scheduled maturity, required prepayment, acceleration, early termination, demand or otherwise), and such failure shall continue after the applicable grace period, if any, specified in the agreement or instrument relating to such Debt; or (ii) any other event shall occur or condition shall exist under any agreement or instrument relating to any such Debt and shall continue after the applicable grace period, if any, specified in such agreement or instrument, if the effect of such event or condition is to accelerate, or to permit the acceleration of, the maturity of such Debt or otherwise to cause, or to permit the holder thereof to cause, such Debt to mature; or (iii) any such Debt shall be declared to be due and payable or required to be prepaid or redeemed (other than by a regularly scheduled required prepayment or redemption), purchased or defeased, or an offer to prepay, redeem, purchase or defease such Debt shall be required to be made, in each case prior to the stated maturity thereof except to the extent such "Event of Default" is caused by the commencement of the Chapter 11 Cases, any failure of any of the Loan Parties to be Solvent  or by complying with an inconsistent obligation under this Agreement; or

(g)      any final Post-Petition judgments or Post-Petition orders, either individually or in the aggregate, for the payment of money in excess of (i) $1,000,000, in the case of judgments or orders that are superior in right of payment to any Obligation under this Agreement, or (ii) $1,000,000, in the case of any other judgment or order, in each case (to the extent not stayed pursuant to Section 362 of the Bankruptcy Code), shall be rendered against any Borrower Party or Refinery and either (x) enforcement proceedings shall have been commenced by any creditor upon such judgment or order or (y) there shall be any period of sixty (60) consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect or such judgment or order has not been otherwise discharged or satisfied within such sixty (60) day period; or

(h)      any non-monetary Post-Petition judgment or order shall be rendered against any Borrower Party or Refinery that could reasonably be expected to have a Material Adverse Effect, and there shall be any period of sixty (60) consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect; or

(i)      any provision of any Loan Document after delivery thereof shall for any reason (except as the result of act or omission of the Agents or any other Secured Party) cease to be valid and binding on or enforceable against any Loan Party to it, or any such Loan Party shall so state in writing; or

(j)      any Security Document or financing statement after delivery thereof shall for any reason (other than pursuant to the terms thereof or as a result of action taken by any Agent or any other Secured Party) cease to create a valid and perfected first (or second with respect to the Inventory Financing Collateral) priority lien on and security interest in the Collateral, to the extent contemplated hereby or thereby; or

(k)      a Change of Control shall occur; or

(l)      (i) there shall occur one or more ERISA Events which individually or in the aggregate results in liability of any Borrower Party and if such liability, together with all other such liabilities, is reasonably likely to result in a Material Adverse Effect; or (ii) a Lien or security interest under Section 430(k) of the Internal Revenue Code or under ERISA has been imposed on the Collateral, any Borrower Party, or any Employee Benefit Plan, and such Lien, together with all other such Liens, would reasonably be likely to result in a Material Adverse Effect; or

(m)      the Bankruptcy Court shall have entered an order (i) directing the appointment of an examiner with expanded powers, (ii) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code, or (iii) dismissing any of the Chapter 11 Cases; or

(n)      except as provided in the DIP Order or with respect to the Aron Rights or all rights and remedies of J. Aron in connection with the Safe Harbor Agreements (as defined in the DIP Order), the Bankruptcy Court shall enter an order or orders granting relief from the automatic stay applicable under Section 362 of the Bankruptcy Code pertaining to the Collateral to the holder or holders of any security interest to (i) permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of the Loan Parties that have a value in excess of $5,000,000 in the aggregate or (ii) permit other actions that would have a Material Adverse Effect; or

(o)      any debtor in possession financing is entered into by any Borrower Party other than the DIP Facility or any Borrower Party seeks authorization from the Bankruptcy Court to enter into such facility without the prior written consent of the Required Lenders that, in each instance, does not provide for indefeasible payment in full in cash of all Obligations under this Agreement; or

(p)     any of the following shall occur:

(i)     the Final DIP Order shall not have been entered on or prior to the date that is forty-five (45) days after the Petition Date;

(ii)     entry of any order by the Bankruptcy Court reversing, amending, supplementing, staying for a period of ten (10) days or more, vacating or otherwise amending, supplementing or modifying the DIP Order without the prior written consent of the Required Lenders;

(iii)     one or more judgments, orders or decrees for the payment of money required to be satisfied as an administrative expense claim in the Chapter 11 Cases shall be allowed by the Bankruptcy Court in an aggregate amount (to the extent not paid or covered by insurance) that is reasonably expected to have a Material Adverse Effect;

(iv)     the Bankruptcy Court enters an order or orders (i) to sell, transfer, lease, exchange, alienate or otherwise dispose of any of the Collateral other than the Inventory Financing Collateral pursuant to Section 363 of the Bankruptcy Code, (ii) avoiding or requiring disgorgement by the Administrative Agent or the Lenders of any amounts received in respect of the DIP Obligations, (iii) permitting the grant of a Lien on the Collateral other than the Permitted Liens or (iv) extinguishing the Obligations as a result of the Lenders' credit bid and/or assumption by the Lenders in their acquisition of the Borrower Parties pursuant to such order;

(v)     the Interim DIP Order or the Final DIP Order, as applicable, shall cease to purport to create valid, enforceable, and perfected Liens on the Collateral with the priority set forth therein or otherwise cease to be valid and binding and in full force and effect;

(vi)     non-compliance by any Borrower Party in any material respect with the terms of the DIP Order or any other order entered in the Chapter 11 Cases;

(vii)     any Borrower Party shall seek any modification of the Interim DIP Order or the Final DIP Order (as applicable) without the prior express written consent of the Required Lenders, or assert in any pleading filed in any court that any material provision of the Interim DIP Order or the Final DIP Order (as applicable) is not valid and binding for any reason;

(viii)     termination by the Bankruptcy Court of, or the expiration of, the exclusive period for the Borrower Parties to file a plan of reorganization in the Chapter 11 Cases as set forth in Section 1121 of the Bankruptcy Code;

(ix)     if any Borrower Party is enjoined, restrained or in any way prevented by order of a court of competent jurisdiction that has not been stayed from continuing or conducting all or any material part of its business or affairs;

(x)     any final, non-appealable order is entered in any of the Chapter 11 Cases charging any of the Collateral under Section 506(c) of the Bankruptcy Code against the Lenders (or any Borrower Party shall apply for authority to do so), or any other action is commenced by the Borrower Parties challenging the rights and remedies of any of Secured Party under, or in a manner that is inconsistent with, the DIP Order or any of the other Loan Documents, in any of the Chapter 11 Cases;

(xi)     without the prior written consent of the Required Lenders, any Borrower Party shall file a motion seeking, or take any action supporting a motion seeking, or the Bankruptcy

Court shall enter an order in any of the Chapter 11 Cases authorizing the Borrower Parties to obtain post-petition financing under Section 364 of the Bankruptcy Code, other than the DIP Facility;

(xii)    any Borrower Party (or any direct or indirect parent of any Borrower Party) or any person claiming by or through any of the foregoing, shall (1) obtain court authorization to commence, or shall commence, join in, assist or otherwise participate as an adverse party in any suit or other proceeding against the Agent or any of the Lenders regarding the Loan Documents or (2) seek to, or support (whether by way of motion or other pleadings filed with the Bankruptcy Court or any other writing executed by any Borrower Party or by oral argument) any other person's motion to: (i) disallow in whole or in part any of the Obligations arising under this Agreement or any other Loan Document (or any such order is entered), or (ii) challenge the validity and enforceability of the Liens or security interests granted or confirmed herein or in the Interim DIP Order or the Final DIP Order in favor of the Secured Parties;

(xiii)   an application shall be filed by the Borrower Parties for the approval of any other administrative expense claim, including any superpriority administrative expense claim, in the Chapter 11 Cases which is equal to or senior to the claims of the Lenders against the Borrower Parties hereunder or under the DIP Order or any of the other Loan Documents (other than the Carve-Out (solely upon the occurrence of a Termination Date (as defined in the DIP Order)), which shall be paid by the Borrower Parties at the times and in the amounts permitted by the DIP Order), or an order shall be entered by the Bankruptcy Court granting any such senior administrative expense claim, including any superpriority administrative expense claim in the Chapter 11 Cases which is equal to or senior to the claims of the Lenders against the Borrower Parties hereunder or under the DIP Order or any of the other Loan Documents; an order with respect to any of the Chapter 11 Cases shall be entered by the Bankruptcy Court (or any of the Borrower Parties shall file an application or motion or pleading for entry of or in support of an order) dismissing any of the Chapter 11 Cases or converting any of the Chapter 11 Cases under Section 1112 of the Bankruptcy Code or otherwise to a case under chapter 7 of the Bankruptcy Code;

(q)    the Borrower or any other Borrower Party shall make (or shall have made) (A) any payment (as adequate protection or otherwise), or application for authority to pay, on account of any Pre-Petition Debt, other than (i) Pre-Petition Payments authorized by the Bankruptcy Court in the DIP Order (including the DIP Budget), any "first day" orders entered in the Chapter 11 Cases or any other orders of the Bankruptcy Court entered with the consent of (or non-objection by) the Administrative Agent in amounts consistent with the DIP Budget (and not otherwise prohibited by this Agreement or the DIP Order), or (ii) otherwise with the prior written consent of the Administrative Agent or (B) any other payment or disbursement (with the proceeds of the Advances or otherwise) other than in accordance with the DIP Budget; or

(r)    the appointment by the Bankruptcy Court of a receiver and manager, receiver, interim receiver, trustee in bankruptcy or similar official in respect of any of the Borrower Parties; or

(s)    any Borrower Party files, amends or modifies, or files a pleading seeking approval of, any order or document approved in the Chapter 11 Cases in a manner that is inconsistent with the Required Lenders' consent and approval rights under this Agreement and the other Loan Documents; or

(t)    any of the Borrower Parties shall take any action in support of any matter set forth in Sections 7.01(m), (p)(ii), (p)(iv), (p)(viii), (r)(p)(xiii) or Section 7.01(s) or any other Person shall do so and such application is not contested in good faith by the Borrower Parties; or

72

(u)       any Borrower Party shall file a motion, pleading or proceeding which could reasonably be expected to result in a material impairment of the rights or interests of the Administrative Agent or the Lenders or a determination by a court with respect to a motion, pleading or proceeding brought by another party which results in such a material impairment; or

(v)       the failure of any Milestone to be timely satisfied; or

(w)       an order shall be entered by the Bankruptcy Court or any other court of competent jurisdiction confirming a plan of reorganization or liquidation in any of the Chapter 11 Cases (or an order shall be entered by the Bankruptcy Court approving a disclosure statement related to such plan) other than a plan of reorganization that satisfies the Obligations in full in cash when due or any Borrower Party (or any direct or indirect parent of a Borrower Party) shall file, propose, support, or fail to contest in good faith the filing or confirmation of such a plan.

Upon the occurrence and continuance of any Event of Default, the Administrative Agent (acting on the instructions of the Required Lenders) or the Required Lenders may (notwithstanding the provisions of Section 362 of the Bankruptcy Code and without application or motion to, or order from, the Bankruptcy Court), subject to the terms, conditions and provisions of the DIP Order, by written notice to the Borrower and the U.S. Trustee, declare the Commitment to be terminated forthwith, whereupon the Commitment shall immediately terminate, and/or, by notice to the Borrower, declare its Loans hereunder, with accrued interest thereon, and all other Obligations owed to it under this Agreement and the other Loan Documents to be due and payable forthwith, whereupon the same shall immediately become due and payable.  Except as expressly provided above in this Section 7.01, presentment, demand, protest and all other notices of any kind are hereby expressly waived.

Upon the occurrence and during the continuance of any Event of Default and subject to the terms of the DIP Order, the Administrative Agent and each of the Lenders may (i) exercise all of its rights and remedies set forth in any of the Loan Documents and the DIP Order, in addition to all rights and remedies allowed under any applicable law, including the UCC, and (ii) revoke the rights of the Borrower and the other Loan Parties to use Cash Collateral in which the Administrative Agent and the Lenders have an interest. None of the Administrative Agent or the Lenders shall have any obligation of any kind to make a motion or application to the Bankruptcy Court to exercise their rights and remedies set forth or referred to in this Agreement or in the other Loan Documents. The enumeration of the foregoing rights and remedies is not intended to be exhaustive and the exercise of any right or remedy shall not preclude the exercise of any other rights or remedies, all of which shall be cumulative and not alternative.

The Borrower Parties waive (i) presentment, demand and protest and notice of presentment, dishonor, notice of intent to accelerate, notice of acceleration, protest, default, nonpayment, maturity, release, compromise, settlement, extension or renewal of any or all commercial paper, accounts, contract rights, documents, instruments, chattel paper and guaranties or other property at any time held by the Administrative Agent or the Lenders on which the Loan Parties may in any way be liable and hereby ratify and confirm whatever the Lenders may lawfully do in this regard, (ii) subject to the terms of the DIP Order, all rights to notice and hearing prior to the Administrative Agent or the Lenders taking possession or control of the Collateral, or any bond or security which might be required by any court prior to allowing the Administrative Agent or the Lenders to exercise any of their remedies subject to the terms of the DIP Order, and (iii) the benefit of all valuation, appraisal and exemption laws.  The Loan Parties acknowledge that they have been advised by counsel of their choice with respect to the effect of the foregoing waivers and this Agreement, the other Loan Documents and the transactions evidenced by this Agreement and the other Loan Documents.

Notwithstanding any other provision of any Loan Document to the contrary, during the Remedies Notice Period, (i) the Borrower Parties shall be permitted to continue to use Cash Collateral and proceeds of the Advances solely in the ordinary course of business in accordance with the DIP Budget and to satisfy the Carve-Out, and (ii) the Borrower Parties may seek emergency relief from the Bankruptcy Court during the Remedies Notice Period solely to seek a finding that no Event of Default has occurred.

The Required Lenders by written notice to the Administrative Agent may on behalf of the Lenders waive an existing Default or Event of Default and its consequences hereunder.  Upon any such waiver, such Default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been cured for every purpose of this Agreement; but no such waiver shall extend to any subsequent or other Default or Event of Default or impair any right consequent thereon.  The Required Lenders, by written notice to the Administrative Agent, may on behalf of all of the Lenders rescind an acceleration and its consequences if the rescission would not conflict with any judgment or decree and if all existing Events of Default (except nonpayment of principal or interest that has become due solely because of the acceleration) have been cured or waived.

SECTION 7.02    Application of Payments.  Subject to the DIP Order, any payments and any proceeds of Collateral shall be applied in the following order:

(a)    First, to pay the incurred and unpaid fees, costs and expenses of the Lenders, the Administrative Agent and the Collateral Agent required to be reimbursed under the Loan Documents;

(b)    Second, to the Lenders to pay accrued and unpaid interest on the Advances;

(c)    Third, to the Lenders to pay all outstanding principal amounts in respect of the Advances;

(d)    Fourth, to the Administrative Agent or the Lenders in payment of any remaining Obligations;

(e)    Fifth, any balance remaining after the Obligations shall have been paid in full, in payment to the Pre-Petition Agents for distribution to the holders of Pre-Petition Debt, or to whomever may be lawfully entitled; and

(f)    Sixth, in payment to the Borrower.

## ARTICLE VIII

## THE AGENTS

SECTION 8.01    Appointment of Agents.  Each of the Lenders hereby irrevocably appoints 405 Sentinel LLC to act on its behalf as the Administrative Agent hereunder and under the other Loan Documents and authorizes the Administrative Agent to take such actions on its behalf and to exercise such powers as are delegated to the Administrative Agent by the terms hereof or thereof, together with such actions and powers as are reasonably incidental thereto.  The provisions of this Article are solely for the benefit of the Administrative Agent and the Lenders, and neither the Borrower nor any other Loan Party shall have rights as a third-party beneficiary of any of such provisions.  It is understood and agreed that the use of the term "agent" herein or in any other Loan Documents (or any other similar term) with reference to the Administrative Agent is not intended to connote any fiduciary or other implied (or express) obligations arising under agency doctrine of any applicable law.  Instead such term is used as a matter of market custom, and is intended to create or reflect only an administrative relationship between contracting parties. The Administrative Agent shall also act as the Collateral Agent under the Loan Documents, and

each of the Lenders hereby irrevocably appoints and authorizes the Administrative Agent to act as the agent of such Lender for purposes of acquiring, holding and enforcing any and all Liens on Collateral granted by any of the Borrower Parties to secure any of the Obligations, together with such powers and discretion as are reasonably incidental thereto.  In this connection, the Administrative Agent, as Collateral Agent, and any co-agents, sub-agents and attorneys-in-fact appointed by the Administrative Agent pursuant to this Article VIII for purposes of holding or enforcing any Lien on the Collateral (or any portion thereof) granted under the Security Documents, or for exercising any rights and remedies thereunder at the direction of the Administrative Agent, shall be entitled to the benefits of all provisions of this Article VIII and Article X (including Section 10.02, as though such co-agents, sub-agents and attorneys-in-fact were the "collateral agent" under the Loan Documents) as if set forth in full herein with respect thereto.

SECTION 8.02      Rights of Lenders.  The Person serving as the Administrative Agent hereunder shall have the same rights and powers in its capacity as a Lender as any other Lender and may exercise the same as though it were not the Administrative Agent, and the term "Lender" or "Lenders" shall, unless otherwise expressly indicated or unless the context otherwise requires, include the Person serving as the Administrative Agent hereunder in its individual capacity.  Such Person and its Affiliates may accept deposits from, lend money to, own securities of, act as the financial advisor or in any other advisory capacity for, and generally engage in any kind of business with, the Borrower or any Subsidiary or other Affiliate thereof as if such Person were not the Administrative Agent hereunder and without any duty to account therefor to the Lenders.

SECTION 8.03      Exculpatory Provisions.

(a)      The Administrative Agent shall not have any duties or obligations except those expressly set forth herein and in the other Loan Documents, and its duties hereunder shall be administrative in nature.  Without limiting the generality of the foregoing, the Administrative Agent:

(i)      shall not be subject to any fiduciary or other implied duties, regardless of whether a Default has occurred and is continuing;

(ii)      shall not have any duty to take any discretionary action or exercise any discretionary powers, except discretionary rights and powers expressly contemplated hereby or by the other Loan Documents that the Administrative Agent is required to exercise as directed in writing by the Required Lenders (or such other number or percentage of the Lenders as shall be expressly provided for herein or in the other Loan Documents); *provided* that the Administrative Agent shall not be required to take any action that, in its opinion or the opinion of its counsel, may expose the Administrative Agent to liability or that is contrary to any Loan Document or applicable law, including for the avoidance of doubt any action that may be in violation of the automatic stay under any Debtor Relief Law or that may affect a forfeiture, modification or termination of property of a Defaulting Lender in violation of any Debtor Relief Law; and

(iii)      shall not, except as expressly set forth herein and in the other Loan Documents, have any duty to disclose, and shall not be liable for the failure to disclose, any information relating to the Borrower Parties or any of their Affiliates that is communicated to or obtained by the Person serving as the Administrative Agent or any of its Affiliates in any capacity.

(b)      The Administrative Agent shall not be liable for any action taken or not taken by it (i) with the consent or at the request of the Required Lenders (or such other number or percentage of the Lenders as shall be necessary, or as the Administrative Agent shall believe in good faith shall be necessary, under the circumstances as provided in Section 10.04 and 7.01), or (ii) in the absence of its own gross negligence or willful misconduct as determined by a court of competent jurisdiction by final and

75

nonappealable judgment. The Administrative Agent shall be deemed not to have knowledge of any Default unless and until notice describing such Default is given to the Administrative Agent in writing by the Borrower or a Lender.

(c)     The Administrative Agent shall not be responsible for or have any duty to ascertain or inquire into (i) any statement, warranty or representation made in or in connection with this Agreement or any other Loan Document, (ii) the contents of any certificate, report or other document delivered hereunder or thereunder or in connection herewith or therewith, (iii) the performance or observance of any of the covenants, agreements or other terms or conditions set forth herein or therein or the occurrence of any Default, (iv) the validity, enforceability, effectiveness or genuineness of this Agreement, any other Loan Document or any other agreement, instrument or document, or (v) the satisfaction of any condition set forth in Article IV or elsewhere herein, other than to confirm receipt of items expressly required to be delivered to the Administrative Agent.

SECTION 8.04     Reliance by Administrative Agent.  The Administrative Agent shall be entitled to rely upon, and shall not incur any liability for relying upon, any notice, request, certificate, consent, statement, instrument, document or other writing (including any electronic message, Internet or intranet website posting or other distribution) believed by it to be genuine and to have been signed, sent or otherwise authenticated by the proper Person. The Administrative Agent also may rely upon any statement made to it orally or by telephone and believed by it to have been made by the proper Person, and shall not incur any liability for relying thereon.  In determining compliance with any condition hereunder to the making of the Advances that by their terms must be fulfilled to the satisfaction of a Lender, the Administrative Agent may presume that such condition is satisfactory to such Lender unless the Administrative Agent shall have received notice to the contrary from such Lender prior to the making of the Advances.  The Administrative Agent may consult with legal counsel (who may be counsel for the Borrower), independent accountants and other experts selected by it, and shall not be liable for any action taken or not taken by it in accordance with the advice of any such counsel, accountants or experts.

SECTION 8.05     Delegation of Duties.  The Administrative Agent may perform any and all of its duties and exercise its rights and powers hereunder or under any other Loan Document by or through any one or more sub-agents appointed by the Administrative Agent.  The Administrative Agent and any such sub-agent may perform any and all of its duties and exercise its rights and powers by or through their respective Related Parties.  The exculpatory provisions of this Article shall apply to any such sub-agent and to the Related Parties of the Administrative Agent and any such sub-agent, and shall apply to their activities as Administrative Agent. The Administrative Agent shall not be responsible for the negligence or misconduct of any sub-agents except to the extent that a court of competent jurisdiction determines in a final and nonappealable judgment that the Administrative Agent acted with gross negligence or willful misconduct in the selection of such sub-agents.

SECTION 8.06     Resignation of Administrative Agent.

(a)     The Administrative Agent may at any time give notice of its resignation to the Lenders and the Borrower.  Upon receipt of any such notice of resignation, the Required Lenders shall have the right, in consultation with the Borrower and, so long as no Event of Default has occurred and is continuing, subject to the Borrower's written consent (not to be unreasonably withheld or delayed), to appoint a successor, which shall be a bank with an office in New York, New York, or an Affiliate of any such bank with an office in New York, New York.  If no such successor shall have been so appointed by the Required Lenders and shall have accepted such appointment within 30 days after the retiring Administrative Agent gives notice of its resignation (or such earlier day as shall be agreed by the Required Lenders) (the "***Resignation Effective Date***"), then the retiring Administrative Agent may (but shall not be

obligated to), on behalf of the Lenders, appoint a successor Administrative Agent meeting the qualifications set forth above and, so long as no Event of Default has occurred and is continuing, subject to the Borrower's written consent (not to be unreasonably withheld or delayed).  Whether or not a successor has been appointed, such resignation shall become effective in accordance with such notice on the Resignation Effective Date. If the Person serving as Administrative Agent is a Defaulting Lender pursuant to clause (d) of the definition thereof, the Required Lenders may, to the extent permitted by applicable law, by notice in writing to the Borrower and such Person remove such Person as Administrative Agent and, in consultation with the Borrower, appoint a successor. If no such successor shall have been so appointed by the Required Lenders and shall have accepted such appointment within 30 days (or such earlier day as shall be agreed by the Required Lenders) (the "***Removal Effective Date***"), then such removal shall nonetheless become effective in accordance with such notice on the Removal Effective Date.

(b)      With effect from the Resignation Effective Date or the Removal Effective Date (as applicable) (1) the retiring or removed Administrative Agent shall be discharged from its duties and obligations hereunder and under the other Loan Documents (except that in the case of any collateral security held by the Administrative Agent on behalf of the Lenders under any of the Loan Documents, the retiring or removed Administrative Agent shall continue to hold such collateral security until such time as a successor Administrative Agent is appointed) and (2) except for any indemnity payments owed to the retiring or removed Administrative Agent, all payments, communications and determinations provided to be made by, to or through the Administrative Agent shall instead be made by or to each Lender directly, until such time, if any, as the Required Lenders appoint a successor Administrative Agent as provided for above.   Upon the acceptance of a successor's appointment as Administrative Agent hereunder, such successor shall succeed to and become vested with all of the rights, powers, privileges and duties of the retiring or removed Administrative Agent (other than any rights to indemnity payments owed to the retiring or removed Administrative Agent), and the retiring or removed Administrative Agent shall be discharged from all of its duties and obligations hereunder or under the other Loan Documents.  The fees payable by the Borrower to a successor Administrative Agent shall be the same as those payable to its predecessor unless otherwise agreed between the Borrower and such successor.   After the retiring or removed Administrative Agent's resignation or removal hereunder and under the other Loan Documents, the provisions of this Article and Section 10.02 shall continue in effect for the benefit of such retiring or removed Administrative Agent, its sub-agents and their respective Related Parties in respect of any actions taken or omitted to be taken by any of them while the retiring or removed Administrative Agent was acting as Administrative Agent.

SECTION 8.07      Non-Reliance on Administrative Agent and Other Lenders.   Each Lender acknowledges that it has, independently and without reliance upon the Administrative Agent or any other Lender or any of their Related Parties and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Agreement.  Each Lender also acknowledges that it will, independently and without reliance upon the Administrative Agent or any other Lender or any of their Related Parties and based on such documents and information as it shall from time to time deem appropriate, continue to make its own decisions in taking or not taking action under or based upon this Agreement, any other Loan Document or any related agreement or any document furnished hereunder or thereunder.

SECTION 8.08      Withholding Taxes.   To the extent required by applicable law, the Administrative Agent may withhold from any payment to any Lender an amount equivalent to any applicable withholding Tax.  Without limiting or expanding the provisions of Section 3.05, each Lender shall indemnify and hold harmless the Administrative Agent against, and shall make payable in respect thereof within 15 days after demand therefor, any and all Taxes and related losses, claims, liabilities and expenses (including fees, charges and disbursements of any counsel for the Administrative Agent) incurred

by or asserted against the Administrative Agent by the IRS or any other Governmental Authority as a result of the failure of the Administrative Agent to properly withhold Taxes from amounts paid to or for the account of such Lender for any reason (including because the appropriate form was not delivered or not properly executed, or because such Lender failed to notify the Administrative Agent of a change in circumstances that rendered the exemption from, or reduction of applicable withholding Taxes ineffective). A certificate as to the amount of such payment or liability delivered to any Lender by the Administrative Agent shall be conclusive absent manifest error.  Each Lender hereby authorizes the Administrative Agent to set off and apply any and all amounts owing to such Lender under the Loan Documents against any amount due to the Administrative Agent under this **Error! Reference source not found.**.  The agreements in this **Error! Reference source not found.** shall survive the resignation and/or replacement of the Administrative Agent, any assignment of rights by, or the replacement of, a Lender, and the repayment, satisfaction or discharge of all other Obligations. This **Error! Reference source not found.** shall not impose any additional responsibility on the Borrower.

SECTION 8.09     Administrative Agent May File Proof of Claim.  In case of the pendency of any proceeding under any Debtor Relief Law or any other judicial proceeding relative to the Borrower, the Administrative Agent (irrespective of whether the principal of the Advances shall then be due and payable as herein expressed or by declaration or otherwise and irrespective of whether the Administrative Agent shall have made any demand on the Borrower) shall be entitled and empowered (but not obligated) by intervention in such proceeding or otherwise:

(a)     to file and prove a claim for the whole amount of the principal and interest owing and unpaid in respect of the Advances and all other Obligations that are owing and unpaid and to file such other documents as may be necessary or advisable in order to have the claims of the Lenders and the Administrative Agent (including any claim for the reasonable compensation, expenses, disbursements and advances of the Lenders and the Administrative Agent and their respective agents and counsel and all other amounts due the Lenders and the Administrative Agent under Section 10.02) allowed in such judicial proceeding; and

(b)     to collect and receive any monies or other property payable or deliverable on any such claims and to distribute the same;

and any custodian, receiver, assignee, trustee, liquidator, sequestrator or other similar official in any such judicial proceeding is hereby authorized by each Lender to make such payments to the Administrative Agent and, in the event that the Administrative Agent shall consent to the making of such payments directly to the Lenders, to pay to the Administrative Agent any amount due for the reasonable compensation, expenses, disbursements and advances of the Administrative Agent and its agents and counsel, and any other amounts due the Administrative Agent under Section 4.02.

SECTION 8.10     Collateral Matters.  The Administrative Agent shall not be responsible for or have a duty to ascertain or inquire into any representation or warranty regarding the existence, value or collectability of the Collateral, the existence, priority or perfection of the Administrative Agent's Lien thereon, or any certificate prepared by any Borrower Party in connection therewith, nor shall the

Administrative Agent be responsible or liable to the Lenders for any failure to monitor or maintain any portion of the Collateral.

## ARTICLE IX

## GUARANTY

SECTION 9.01    Guarantee of Obligations.  Each of the Guarantors hereby, jointly and severally, absolutely, unconditionally and irrevocably, guarantees, as primary obligor and not merely as surety, to the Administrative Agent, for the benefit of the Agent Parties and Lenders and their respective successors, indorsees, transferees and assigns, the prompt and complete payment in full in cash and performance by the Borrower and each other Loan Party when due (whether at the stated maturity, by acceleration or otherwise) of the Obligations.  Each of the Guarantors shall be liable under its guarantee set forth in this Section 3.01, without any limitation as to amount, for all present and future Obligations, including specifically all future increases in the outstanding amount of the Advances or other Obligations and other future increases in the Obligations.  Without limiting the generality of the foregoing, each Guarantor's liability shall extend to all Obligations (including, without limitation, interest, fees, costs and expenses) that would be owed by any other obligor on the Obligations but for the fact that they are unenforceable or not allowable due to the existence of a proceeding under any Debtor Relief Law involving such other obligor because it is the intention of each Guarantor and the Secured Parties that the Obligations which are guaranteed by such Guarantor pursuant hereto should be determined without regard to any rule of law or order which may relieve the Borrower or any other Loan Party or any Guarantor of any portion of such Obligations.

SECTION 9.02    Limitation on Obligations Guaranteed.

(a)    Notwithstanding any other provision hereof, the right of recovery against each Guarantor under this Article IX shall not exceed $1.00 less than the lowest amount which would render such Guarantor's obligations under this Article IX void or voidable under applicable law, including, without limitation, the Uniform Fraudulent Conveyance Act, Uniform Fraudulent Transfer Act or any similar foreign, federal or state law to the extent applicable to the guaranty set forth herein and the obligations of each Guarantor hereunder.  To effectuate the foregoing, the Administrative Agent and the Guarantors hereby irrevocably agree that the Obligations of each Guarantor in respect of the guarantee set forth in this Article IX at any time shall be limited to the maximum amount as will result in the Obligations of such Guarantor with respect thereto hereof not constituting a fraudulent transfer or conveyance after giving full effect to the liability under such guarantee set forth in this Article IX and its related contribution rights but before taking into account any liabilities under any other guarantee by such Guarantor.  For purposes of the foregoing, all guarantees of such Guarantor other than the guarantee under this Article IX will be deemed to be enforceable and payable after the guaranty under this Article IX.  To the fullest extent permitted by applicable law, this **Error! Reference source not found.** shall be for the benefit solely of creditors and representatives of creditors of each Guarantor and not for the benefit of such Guarantor or the holders of any Capital Stock in such Guarantor.

(b)    Each Guarantor agrees that Obligations may at any time and from time to time be incurred or permitted in an amount exceeding the maximum liability of such Guarantor under **Error! Reference source not found.** without impairing the guarantee contained in this Article IX or affecting the rights and remedies of any Agent Party or Lender hereunder.

SECTION 9.03      Nature of Guarantee; Continuing Guarantee; Waivers of Defenses Etc.

(a)      Each Guarantor understands and agrees that the guarantee contained in this Article IX shall be construed as a continuing guarantee of payment and performance and not merely of collectability.  Each Guarantor waives diligence, presentment, protest, marshaling, demand for payment, notice of dishonor, notice of default and notice of nonpayment to or upon the Borrower or any of the other Guarantors with respect to the Obligations.  Without limiting the generality of the foregoing, this guarantee and the obligations of each Guarantor hereunder shall be valid and enforceable and shall not be subject to any reduction, limitation, impairment, set-off, defense, counterclaim, discharge or termination for any reason unless and until all of the Commitments shall have expired or been terminated and all Obligations and all other amounts payable under this Agreement shall have been paid in full in Cash.

(b)      Each Guarantor agrees that the Obligations of each Guarantor hereunder are independent of the Obligations of each other Guarantor and of any other guarantee of the Obligations and when making any demand hereunder or otherwise pursuing its rights and remedies hereunder against any Guarantor, any Agent Party or Lender may, but shall be under no obligation to, make a similar demand on or otherwise pursue such rights and remedies as it may have against the Borrower, any other Guarantor or any other Person or against any collateral security or other guarantee for the Obligations or any right of offset with respect thereto, and any failure by any Agent Party or Lender to make any such demand, to pursue such other rights or remedies or to collect any payments from the Borrower, any other Guarantor or any other Person or to realize upon any such collateral security or guarantee or to exercise any such right of offset, or any release of the Borrower, any other Guarantor or any other Person or any such collateral security, guarantee or right of offset, shall not relieve any Guarantor of any obligation or liability hereunder, and shall not impair or affect the rights and remedies, whether express, implied or available as a matter of law, of any Agent Party or Lender against any Guarantor.  For the purposes hereof "demand" shall include the commencement and continuance of any legal proceedings.

(c)      No payment made by the Borrower, any of the Guarantors, any other guarantor or any other Person or received or collected by any Agent Party or Lender from the Borrower, any of the Guarantors, any other guarantor or any other Person by virtue of any action or proceeding or any set-off or appropriation or application at any time or from time to time in reduction of or in payment of the Obligations shall be deemed to modify, reduce, release or otherwise affect the liability of any Guarantor hereunder which shall, notwithstanding any such payment, remain liable for the Obligations unless and until all of the Commitments shall have expired or been terminated and all Obligations and all other amounts payable under this Agreement shall have been paid in full in Cash.

(d)      Without limiting the generality of the foregoing, each Guarantor agrees that its obligations under and in respect of the guarantee contained in this Article IX and any security interest securing the Obligations shall not be affected by, and shall remain in full force and effect without regard to, and hereby waives all rights, claims or defenses that it might otherwise have (now or in the future) with respect to each of the following (whether or not such Guarantor has knowledge thereof):

(i)      the validity or enforceability of this Agreement or any other Loan Document, any of the Obligations or any guarantee or right of offset with respect thereto at any time or from time to time held by any Agent Party or Lender;

(ii)      any renewal, extension or acceleration of, or any increase in the amount of the Obligations, or any amendment, supplement, modification or waiver of, or any consent to departure from, the Loan Documents;

(iii)     any failure or omission to assert or enforce or agreement or election not to assert or enforce, delay in enforcement, or the stay or enjoining, by order of court, by operation of law or otherwise, of the exercise or enforcement of, any claim or demand or any right, power or remedy (whether arising under any Loan Document, at law, in equity or otherwise) with respect to the Obligations or any agreement relating thereto, or with respect to any other guaranty of or security for the payment of the Obligations;

(iv)     any change, reorganization or termination of the corporate structure or existence of the Borrower or any Guarantor or any of their Subsidiaries and any corresponding restructuring of the Obligations;

(v)     any settlement, compromise, release, or discharge of, or acceptance or refusal of any offer of payment or performance with respect to, or any substitution for, the Obligations, or any subordination of the Obligations to any other obligations;

(vi)     the validity, perfection, non-perfection or lapse in perfection, priority or avoidance of any security interest or lien, the release of any or all collateral securing, or purporting to secure, the Obligations or any other impairment of such collateral;

(vii)     any exercise of remedies with respect to any security for the Obligations (including, without limitation, any collateral, including the Collateral securing or purporting to secure any of the Obligations) at such time and in such order and in such manner as the Administrative Agent and the Agent Parties and/or Lenders may decide and whether or not every aspect thereof is commercially reasonable and whether or not such action constitutes an election of remedies and even if such action operates to impair or extinguish any right of reimbursement or subrogation or other right or remedy that any Guarantor would otherwise have, and without limiting the generality of the foregoing or any other provisions hereof, each Guarantor hereby expressly waives any and all benefits which might otherwise be available to such Guarantor under applicable law; and

(viii)     any other circumstance whatsoever which may or might in any manner or to any extent vary the risk of any Guarantor as an obligor in respect of the Obligations or which constitutes, or might be construed to constitute, an equitable or legal discharge of the Borrower or any Guarantor for the Obligations, or of such Guarantor under the guarantee contained in this Article IX or of any security interest granted by any Guarantor, whether in a proceeding under any Debtor Relief Law or in any other instance.

(e)     In addition each Guarantor further waives any and all other defenses, set-offs or counterclaims (other than a defense of payment or performance in full hereunder) which may at any time be available to or be asserted by it, the Borrower, or any other Guarantor or Person against any Agent Party or Lender, including, without limitation, failure of consideration, breach of warranty, statute of frauds, statute of limitations, accord and satisfaction and usury, other than following a Repayment Event.

SECTION 9.04     Rights of Reimbursement, Contribution and Subrogation.

In case any payment is made on account of the Obligations by any Guarantor or is received or collected on account of the Obligations from any Guarantor or its property:

(a)     If such payment is made by a Guarantor or the Borrower or from its property in respect of the Obligations of another Guarantor, such Guarantor shall be entitled, subject to and upon (but not before) a Repayment Event, (A) to demand and enforce reimbursement for the full amount of such

payment from such other Guarantor and (B) to demand and enforce contribution in respect of such payment from each other Guarantor which has not paid its fair share of such payment, as necessary to ensure that (after giving effect to any enforcement of reimbursement rights provided hereby) each Guarantor pays its fair share of the unreimbursed portion of such payment.  For this purpose, the fair share of each Guarantor as to any unreimbursed payment shall be determined based on an equitable apportionment of such unreimbursed payment among all Guarantors (other than the Guarantor whose primary obligations were so guaranteed by the other Guarantors) based on the relative value of their assets and any other equitable considerations deemed appropriate by the court.  For purposes of the foregoing, all guarantees of such Guarantor other than the guaranty under this Article IX will be deemed to be enforceable and payable after the guaranty under this Article IX.

(b)     Any right of subrogation of any Guarantor or the Borrower shall be enforceable solely after a Repayment Event and solely against the Guarantors or the Borrower, and not against the Agent Parties and/or Lenders, and neither the Administrative Agent nor any other Agent Party or Lender shall have any duty whatsoever to warrant, ensure or protect any such right of subrogation or to obtain, perfect, maintain, hold, enforce or retain any collateral securing or purporting to secure any of the Obligations for any purpose related to any such right of subrogation.  If subrogation is demanded by any Guarantor, then, after a Repayment Event, the Administrative Agent shall deliver to the Guarantors making such demand, or to a representative of such Guarantors or of the Guarantors generally, an instrument satisfactory to the Administrative Agent transferring, on a quitclaim basis without any recourse, representation, warranty or any other obligation whatsoever, whatever security interest the Administrative Agent then may hold in whatever collateral securing or purporting to secure any of the Obligations that may then exist that was not previously released or disposed of or acquired by the Administrative Agent.

(c)     All rights and claims arising under this Section 9.04 or based upon or relating to any other right of reimbursement, indemnification, contribution or subrogation that may at any time arise or exist in favor of any Guarantor or the Borrower as to any payment on account of either (x) the Obligations or (y) any other obligation that is secured by any collateral that also secures or purports to secure any of the Obligations, in each case made by it or received or collected from its property, shall be fully subordinated to the Obligations in all respects prior to a Repayment Event.  Until a Repayment Event, no Guarantor may demand or receive any collateral security, payment or distribution whatsoever (whether in cash, property or securities or otherwise) on account of any such right or claim.  If any such payment or distribution is made or becomes available to any Guarantor in any bankruptcy case, receivership, or any proceeding under any Debtor Relief Laws, such payment or distribution shall be delivered by the person making such payment or distribution directly to the Administrative Agent, for application to the payment of the Obligations.  If any such payment or distribution is received by any Guarantor, it shall be held by such Guarantor in trust, as trustee of an express trust for the benefit of the Agent Parties and Lenders, and shall forthwith be transferred and delivered by such Guarantor to the Administrative Agent, in the exact form received and, if necessary, duly endorsed.

(d)     The obligations of the Guarantors under this Agreement and the other Loan Documents, including their liability for the Obligations and the enforceability of the security interests granted thereby, are not contingent upon the validity, legality, enforceability, collectability or sufficiency of any right of reimbursement, contribution or subrogation arising under this Section 9.04 or otherwise.  The invalidity, insufficiency, unenforceability or uncollectability of any such right shall not in any respect diminish, affect or impair any such obligation or any other claim, interest, right or remedy at any time held by any Agent Party or Lender against any Guarantor or its property.  The Agent Parties and Lenders make no representations or warranties in respect of any such right and shall have no duty to assure, protect, enforce or ensure any such right or otherwise relating to any such right.

SECTION 9.05     Payments.    Each Guarantor hereby guarantees that payments hereunder will be paid to the Administrative Agent without set-off or counterclaim in Dollars in immediately available funds at the Administrative Agent's office.

SECTION 9.06     Bankruptcy, Etc. The obligations of the Guarantors hereunder shall not be reduced, limited, impaired, discharged, deferred, suspended or terminated by any case or proceeding under any Debtor Relief Law, voluntary or involuntary, involving the Borrower or any Guarantor or by any defense which the Borrower or any Guarantor may have by reason of the order, decree or decision of any court or administrative body resulting from any such proceeding.  To the fullest extent permitted by law, the Guarantors will permit any trustee in bankruptcy, receiver, debtor in possession, assignee for the benefit of creditors or similar person to pay the Administrative Agent, or allow the claim of the Administrative Agent in respect of, any interest, fees, costs, expenses or other Obligations accruing or arising after the date on which such case or proceeding is commenced.

SECTION 9.07     Duration of Guaranty.  The guarantee contained in this Article IX shall remain in full force and effect until a Repayment Event.

SECTION 9.08     Reinstatement.  If at any time payment of any of the Obligations or any portion thereof is rescinded, disgorged or must otherwise be restored or returned by any Agent Party or Lender upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of the Borrower or any Guarantor, or upon or as a result of the appointment of a receiver, intervenor or conservator of, or trustee or similar officer for, the Borrower or any Guarantor or any substantial part of its property, or otherwise, or if any Agent Party or Lender repays, restores, or returns, in whole or in part, any payment or property previously paid or transferred to such Agent Party or Lender in full or partial satisfaction of any Obligation, because the payment or transfer or the incurrence of the obligation is so satisfied, or is declared to be void, voidable, or otherwise recoverable under any state or federal law (collectively a "*Voidable Transfer*"), or because such Agent Party or Lender elects to do so on the reasonable advice of its counsel in connection with an assertion that the payment, transfer or incurrence is a Voidable Transfer, then, as to any such Voidable Transfer and as to all reasonable costs, expenses and attorney's fees of such Agent Party or Lender related thereto, the liability of each Guarantor hereunder will automatically and immediately be revived, reinstated, and restored and will exist as though the Voidable Transfer had never been made.

## ARTICLE X

## MISCELLANEOUS

SECTION 10.01     Notices.

(a)     Notices Generally.  Except in the case of notices and other communications expressly permitted to be given by telephone (and except as provided in paragraph (b) below), all notices and other communications provided for herein shall be in writing and shall be faxed or delivered by an internationally recognized courier service to the applicable address, facsimile number or electronic mail address delivered as follows:

(i)     if to the Borrower, to it at Limetree Bay Refining, LLC, 1 Estate Hope, Christiansted, St. Croix VI 00820-5652, Attention:  Stephan Tompsett, Email: stompsett@lbenergy.com with a copy to 1 Estate Hope Christiansted, St. Croix VI 00820-5652, Attention:  Mark Chavez, Email:  mchavez@lbenergy.com  with a copy to 1 Estate Hope Christiansted, St. Croix VI 00820-5652, Attention:  Jim Vanderwel, Tel No. (832) 553-1190, Email:  jvanderwel@lbenergy.com;

(ii)    if to the Administrative Agent, to it as its address (or facsimile number) set forth in Schedule 10.01(a);

(iii)    if to a Lender, to it at its address (or facsimile number) set forth in its Administrative Questionnaire.

Notices sent by hand or internationally recognized courier service shall be deemed to have been given when received; notices sent by facsimile shall be deemed to have been given when sent (except that, if not given during normal business hours for the recipient, shall be deemed to have been given at the opening of business on the next Business Day for the recipient).  Notices delivered through electronic communications, to the extent provided in paragraph (b) below, shall be effective as provided in said paragraph (b).

(b)    Electronic Communications.  Notices and other communications to the Lenders hereunder may be delivered or furnished by electronic communication (including e mail and Internet or intranet websites) pursuant to procedures approved by the Administrative Agent, *provided* that the foregoing shall not apply to notices to any Lender pursuant to Article II if such Lender has notified the Administrative Agent that it is incapable of receiving notices under such Article by electronic communication.  The Administrative Agent or any Borrower Party may, in its discretion, agree to accept notices and other communications to it hereunder by electronic communications pursuant to procedures approved by it; *provided* that approval of such procedures may be limited to particular notices or communications.

Unless the Administrative Agent otherwise prescribes, (i) notices and other communications sent to an e-mail address shall be deemed received upon the sender's receipt of an acknowledgment from the intended recipient (such as by the "return receipt requested" function, as available, return e-mail or other written acknowledgment), and (ii) notices or communications posted to an Internet or intranet website shall be deemed received upon the deemed receipt by the intended recipient, at its e-mail address as described in the foregoing clause (i), of notification that such notice or communication is available and identifying the website address therefor; *provided* that, for both clauses (i) and (ii) above, if such notice, email or other communication is not sent during the normal business hours of the recipient, such notice or communication shall be deemed to have been sent at the opening of business on the next Business Day for the recipient.

(c)    Change of Address, etc.  Any party hereto may change its address or facsimile number for notices and other communications hereunder by notice to the other parties hereto.

(d)    Platform.

(i)    The Borrower agrees that the Administrative Agent may, but shall not be obligated to, make the Communications (as defined below) available to the Lenders by posting the Communications on Debt Domain, Intralinks, Syndtrak or a substantially similar electronic transmission system (the "***Platform***").

(ii)    The Platform is provided "as is" and "as available." The Agent Parties (as defined below) do not warrant the adequacy of the Platform and expressly disclaim liability for errors or omissions in the Communications.  No warranty of any kind, express, implied or statutory, including any warranty of merchantability, fitness for a particular purpose, non-infringement of third-party rights or freedom from viruses or other code defects, is made by any Agent Party in connection with the Communications or the Platform.  In no event shall the Administrative Agent or any of its Related Parties (collectively, the "***Agent Parties***") have any liability to the Borrower,

84

any Lender or any other Person or entity for damages of any kind, including direct or indirect, special, incidental or consequential damages, losses or expenses (whether in tort, contract or otherwise) arising out of the Borrower's, or the Administrative Agent's transmission of communications through the Platform. "***Communications***" means, collectively, any notice, demand, communication, information, document or other material provided by or on behalf of the Borrower pursuant to any Loan Document or the transactions contemplated therein which is distributed to the Administrative Agent or any Lender by means of electronic communications pursuant to this Section 10.01, including through the Platform.

SECTION 10.02    Expenses, Indemnity; Damage Waiver.

(a)    Costs and Expenses.  The Borrower shall pay (i) all reasonable and documented out-of-pocket expenses incurred by the Administrative Agent and its Affiliates (limited in the case of legal fees to the reasonable and documented out-of-pocket fees, charges and disbursements of one financing counsel for the Administrative Agent plus one local counsel in the U.S. Virgin Islands), in connection with the preparation, negotiation, execution, delivery and administration (including, without limitation, monitoring the Collateral and due diligence on the Borrower Parties and their assets) of this Agreement and the other Loan Documents, or any amendments, modifications or waivers of the provisions hereof or thereof, (ii) all reasonable and documented out-of-pocket expenses incurred by the Administrative Agent or any Lender (including the reasonable and documented out-of-pocket legal expenses of one firm of counsel for the Administrative Agent and one firm of counsel for the Lenders collectively, plus (if applicable) one local counsel in the U.S. Virgin Islands for all such persons and, in the case of a conflict of interest between such persons, one additional counsel in each relevant jurisdiction to each group of such affected persons similarly situated taken as a whole), in connection with the enforcement or protection of its rights in connection with this Agreement and the other Loan Documents, including its rights under this Section 10.02.

(b)    Indemnification by the Borrower Parties.  The Borrower Parties shall indemnify the Administrative Agent (and any sub-agent thereof), each Lender, and each Related Party of any of the foregoing Persons (each such Person being called an "***Indemnitee***") against, and hold each Indemnitee harmless from, any and all losses, claims, damages, liabilities and related reasonable and documented costs, expenses (including the reasonable and documented fees, charges and disbursements of any one firm of counsel for the Administrative Agent and one firm of counsel for the Lenders collectively, (if applicable) one local counsel in each appropriate jurisdiction for all such persons and, in the case of a conflict of interest between such persons, one additional counsel in each relevant jurisdiction to each group of such affected persons similarly situated taken as a whole), incurred by any Indemnitee or asserted against any Indemnitee by any Person (including the Borrower), other than by such Indemnitee and its Related Parties arising out of, in connection with, or as a result of (i) the execution or delivery of this Agreement, any other Loan Document or any agreement or instrument contemplated hereby or thereby, the performance by the parties hereto of their respective obligations hereunder or thereunder or the consummation of the transactions contemplated hereby or thereby, (ii) the Advances or the use or proposed use of the proceeds therefrom, (iii) any actual or alleged presence or Release of Hazardous Materials with respect to the Refinery or otherwise on or from any Real Estate Asset, any actual or alleged Hazardous Materials Activity related in any way to the Refinery or the Borrower Parties or any of their respective Subsidiaries or any actual or alleged violation of Environmental Law or Environmental Action related in any way to the Refinery or the Borrower Parties or any of their respective Subsidiaries  (except to the extent caused, contributed to or exacerbated by any Indemnitee), or (iv) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory, whether brought by a third party or by the Borrower Parties, and regardless of whether any Indemnitee is a party thereto; *provided* that such indemnity shall not, as to any Indemnitee, be available to the extent that such

85

losses, claims, damages, liabilities or related expenses (x) are determined by a court of competent jurisdiction by final and non-appealable judgment to have resulted from the bad faith, gross negligence or willful misconduct of such Indemnitee or (y) result from a claim brought by the Borrower Parties against an Indemnitee for a material breach in bad faith of such Indemnitee's obligations hereunder or under any other Loan Document, if the Borrower Parties have obtained a final and non-appealable judgment in its favor on such claim as determined by a court of competent jurisdiction.  This Section 10.02 shall not apply with respect to Taxes other than any Taxes that represent losses, claims or damages arising from any non-Tax claim.

(c)     Reimbursement by Lenders.  To the extent that any of the Borrower Parties for any reason fails to indefeasibly pay any amount required under paragraph (a) or (b) of this Section to be paid by it to the Administrative Agent (or any sub-agent thereof) or any Related Party of any of the foregoing, each Lender severally agrees to pay to the Administrative Agent (or any such sub-agent) or such Related Party, as the case may be, such Lender's pro rata share (determined as of the time that the applicable unreimbursed expense or indemnity payment is sought based on each Lender's share of the Total Credit Exposure at such time) of such unpaid amount (including any such unpaid amount in respect of a claim asserted by such Lender); *provided* that the unreimbursed expense or indemnified loss, claim, damage, liability or related expense, as the case may be, was incurred by or asserted against the Administrative Agent (or any such sub-agent) or against any Related Party of any of the foregoing acting for the Administrative Agent (or any such sub-agent).  .

(d)     Waiver of Consequential Damages, Etc.  To the fullest extent permitted by applicable law, the Borrower Parties shall not assert, and hereby waives, any claim against any Indemnitee, on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or as a result of, this Agreement, any other Loan Document or any agreement or instrument contemplated hereby, the transactions contemplated hereby or thereby, the Advances, or the use of the proceeds thereof.  No Indemnitee referred to in paragraph (b) above shall be liable for any damages arising from the use by unintended recipients of any information or other materials distributed by it through telecommunications, electronic or other information transmission systems in connection with this Agreement or the other Loan Documents or the transactions contemplated hereby or thereby.

(e)     Payments.  All amounts due under this Section 4.02 shall be payable promptly, but in any event, not later than 10 days after demand therefor.

(f)     Survival.  Each party's obligations under this Section 4.02 shall survive the termination of the Loan Documents and payment of the obligations hereunder.

SECTION 10.03     Set-Off.  If an Event of Default shall have occurred and be continuing, each Lender and each of their respective Affiliates is hereby authorized at any time and from time to time, to the fullest extent permitted by applicable law, to set off and apply any and all deposits (general or special, time or demand, provisional or final, in whatever currency) at any time held, and other obligations (in whatever currency) at any time owing, by such Lender or any such Affiliate, to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement or any other Loan Document to such Lender or their respective Affiliates, irrespective of whether or not such Lender or Affiliate shall have made any demand under this Agreement or any other Loan Document and although such obligations of the Borrower may be contingent or unmatured or are owed to a branch, office or Affiliate of such Lender different from the branch, office or Affiliate holding such deposit or obligated on such indebtedness; *provided* that in the event that any Defaulting Lender shall exercise any such right of setoff, (x) all amounts so set off shall be paid over immediately to the

Administrative Agent for further application in accordance with the provisions of <u>Section 3.9</u> and, pending such payment, shall be segregated by such Defaulting Lender from its other funds and deemed held in trust for the benefit of the Administrative Agent and the Lenders, and (y) the Defaulting Lender shall provide promptly to the Administrative Agent a statement describing in reasonable detail the Obligations owing to such Defaulting Lender as to which it exercised such right of setoff.  The rights of each Lender and their respective Affiliates under this Section are in addition to other rights and remedies (including other rights of setoff) that such Lender or their respective Affiliates may have.  Each Lender agrees to notify the Borrower and the Administrative Agent promptly after any such setoff and application; *provided* that the failure to give such notice shall not affect the validity of such setoff and application.

SECTION 10.04    <u>Amendments and Waivers</u>.

(a)    <u>Required Lenders' Consent</u>.  Subject to the terms of <u>Section 2.04(b)(ix)</u> and <u>Section 10.04(c)</u>, no amendment, modification, termination or waiver of any provision of the Loan Documents, or consent to any departure by any Loan Party therefrom, shall in any event be effective without the written concurrence of the Required Lenders.

(b)    <u>Affected Lenders Consent</u>.  Without the written consent of each Lender (other than, in the case of (ix) below, a Defaulting Lender) that would be directly affected thereby, no amendment, modification, termination, or consent shall be effective if the effect thereof would:

(i)    extend the scheduled final maturity of the Advances or Note;

(ii)    waive, reduce or postpone any scheduled mandatory repayment pursuant to <u>Section 2.03</u> (but not prepayment);

(iii)    reduce the rate of interest on the Advances or any fee or any premium payable to such Lender hereunder (other than, in each case, any waiver of any increase in the interest rate applicable to the Advances pursuant to <u>Section 3.01</u> or any other amount hereunder);

(iv)    extend the time for payment of any such interest or fees to such Lender;

(v)    increase or extend the Commitment of any Lender under this Agreement;

(vi)    amend, modify, terminate or waive any provision in any Loan Document relating to the priority of payments;

(vii)    amend, modify, terminate or waive any provision of this <u>Section 10.04(b)</u>, <u>Section 10.04(c)</u> or any other provision of this Agreement that expressly provides that the consent of all Lenders is required;

(viii)    amend the definition of "*Required Lenders*" or "*Pro Rata Share*"; *provided* that, with the consent of the Required Lenders, additional extensions of credit pursuant hereto may be included in the definition of "*Required Lenders*" or "*Pro Rata Share*";

(ix)    consent to the assignment or transfer by any Loan Party of any of its rights and obligations under any Loan Document;

(x)    waive any of the conditions specified in Section 4.01 or 4.02 without the consent of each Lender;

(xi)    amend <u>Section 2.04</u> or <u>Section 7.02</u> in any manner that would alter the sharing of payments thereunder;

(xii)    amend, modify or waive any provision of this Agreement in a manner that would directly and adversely affect the rights and obligations of the Lenders disproportionately to any other class of Lenders without the consent of the Lenders of the adversely affected class.

(c)    <u>Other Consents</u>.  No amendment, modification, termination or waiver of any provision of the Loan Documents, or consent to any departure by any Loan Party therefrom, shall:

(i)    release any material portion of the Collateral except as expressly provided in the Loan Documents (including <u>Section 6.02(e)</u> and <u>Section 2.10(b)</u>);

(ii)    without the consent of the Required Lenders and the consent of Lenders holding a majority of the Commitments or the Advances outstanding, (A) change the order of application of any reduction in the Commitments or prepayment of the Advances among the DIP Facility from the application thereof set forth in the applicable provisions of <u>Section 2.04</u> of this Agreement, in any manner that disproportionately affects any of the Lenders differently from the other Lenders or other Secured Parties or (B) otherwise disproportionately affect the obligation of the Borrower to make any payment of the Advances to the Lenders from other Secured Parties; or

(iii)    amend, modify, terminate or waive any provision of <u>Article II</u> as the same applies to any Agent, or any other provision hereof of any Loan Document as the same applies to the rights, powers, privileges or obligations of any such Agent, in each case without the consent of such Agent;

(iv)    subordinate the DIP Liens of the Lenders with the consent of each of the Lenders

(d)    <u>Amendments to Cure Ambiguities, Defects, etc.</u>  Notwithstanding the other provisions of this <u>Section 10.04</u>, the Borrower, the Collateral Agent (at the direction of the Administrative Agent) and the Administrative Agent may (but shall have no obligation to) amend or supplement the Loan Documents without the consent of any Lender:  (i) to cure any ambiguity, defect or inconsistency, (ii) to make any change that would provide any additional rights or benefits to the Lenders or the Secured Parties, or (iii) to make, complete or confirm any grant of Collateral permitted or required by this Agreement or any of the Security Documents or any release of any Collateral that is otherwise permitted under the terms of this Agreement and the Security Documents.

(e)    <u>Execution of Amendments, etc.</u>  The Administrative Agent may, but shall have no obligation to, with the concurrence of any Lender, execute amendments, modifications, waivers or consents on behalf of such Lender.  Any waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given.  No notice to or demand on any Loan Party in any case shall entitle any Loan Party to any other or further notice or demand in similar or other circumstances.  Any amendment, modification, termination, waiver or consent effected in accordance with this Section 10.04 shall be binding upon each Lender at the time outstanding, each future Lender and, if signed by a Loan Party, on such Loan Party.

SECTION 10.05    <u>Successors and Assigns; Participations</u>.

(a)    <u>Successors and Assigns Generally</u>.  The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns permitted hereby, except that the Borrower may not assign or otherwise transfer any of its rights or obligations hereunder without the prior written consent of the Administrative Agent and each Lender, and no Lender may assign or otherwise transfer any of its rights or obligations hereunder except (i) to an

assignee in accordance with the provisions of <u>paragraph (b)</u> of this Section, (ii) by way of participation in accordance with the provisions of <u>paragraph (d)</u> of this Section, or (iii) by way of pledge or assignment of a security interest subject to the restrictions of <u>paragraph **Error! Reference source not found.**</u> of this Section (and any other attempted assignment or transfer by any party hereto shall be null and void). Nothing in this Agreement, expressed or implied, shall be construed to confer upon any Person (other than the parties hereto, their respective successors and assigns permitted hereby, Participants to the extent provided in <u>paragraph (d)</u> of this Section and, to the extent expressly contemplated hereby, the Related Parties of each of the Administrative Agent and the Lenders) any legal or equitable right, remedy or claim under or by reason of this Agreement.

(b)     <u>Assignments by Lenders</u>.  Any Lender may at any time assign to one or more assignees all or a portion of its rights and obligations under this Agreement (including all or a portion of the Advances at the time owing to it); *provided* that any such assignment shall be subject to the following conditions:

(i)     <u>Minimum Amounts</u>.

(A)     in the case of an assignment of the entire remaining amount of the assigning Lender's Commitment and/or the Advances at the time owing to it or contemporaneous assignments to related Approved Funds that equal at least the amount specified in <u>paragraph (b)(i)(B)</u> of this Section in the aggregate or in the case of an assignment to a Lender, an Affiliate of a Lender or an Approved Fund, no minimum amount need be assigned; and

(B)     in any case not described in <u>paragraph (b)(i)(A)</u> of this Section, the aggregate amount of the Commitment (which for this purpose includes the Advances outstanding thereunder) or, if the applicable Commitment is not then in effect, the principal outstanding balance of the Advances of the assigning Lender subject to each such assignment (determined as of the date the Assignment and Assumption with respect to such assignment is delivered to the Administrative Agent or, if "Trade Date" is specified in the Assignment and Assumption, as of the Trade Date) shall not be less than $1,000,000, in the case of any assignment in respect of the DIP Facility, unless each of the Administrative Agent otherwise consents (such consent not to be unreasonably withheld, conditioned or delayed).

(ii)     <u>Proportionate Amounts</u>.  Each partial assignment shall be made as an assignment of a proportionate part of all the assigning Lender's rights and obligations under this Agreement with respect to the Advances or the Commitment assigned.

(iii)     <u>Required Consents</u>.  No consent shall be required for any assignment except to the extent required by <u>paragraph (b)(i)(B)</u> of this Section.

(iv)     <u>Assignment and Assumption</u>.  The parties to each assignment shall execute and deliver to the Administrative Agent an Assignment and Assumption, together with a processing and recordation fee of $3,500 paid by the assigning Lender (or the assignee); *provided* that the Administrative Agent may, in its sole discretion, elect to waive such processing and recordation fee in the case of any assignment; *provided*, *further*, that only one such fee shall be payable in the event of simultaneous assignments to or from two or more Approved Funds.  The assignee, if it is not a Lender, shall deliver to the Administrative Agent an Administrative Questionnaire.

(v)      No Assignment to Certain Persons.  Notwithstanding anything to the contrary herein, no Lender may assign or transfer (including by participation) any of its Advances or any of rights or obligations hereunder or under the Loan Documents to any natural Person, any Defaulting Lender or any of its Subsidiaries, or any Affiliate of the Borrower Parties.

(vi)      Certain Additional Payments. In connection with any assignment of rights and obligations of any Defaulting Lender hereunder, no such assignment shall be effective unless and until, in addition to the other conditions thereto set forth herein, the parties to the assignment shall make such additional payments to the Administrative Agent in an aggregate amount sufficient, upon distribution thereof as appropriate (which may be outright payment, purchases by the assignee of participations or subparticipations, or other compensating actions, including funding, with the consent of the Borrower and the Administrative Agent, the applicable Pro Rata Share of the Advances previously requested but not funded by the Defaulting Lender, to each of which the applicable assignee and assignor hereby irrevocably consent), and to pay and satisfy in full all payment liabilities then owed by such Defaulting Lender to the Administrative Agent and each other Lender hereunder (and interest accrued thereon). Notwithstanding the foregoing, in the event that any assignment of rights and obligations of any Defaulting Lender hereunder shall become effective under applicable law without compliance with the provisions of this paragraph, then the assignee of such interest shall be deemed to be a Defaulting Lender for all purposes of this Agreement until such compliance occurs.

Subject to acceptance and recording thereof (including with respect to principal and interest) by the Administrative Agent pursuant to paragraph (c) of this Section, from and after the effective date specified in each Assignment and Assumption, the assignee thereunder shall be a party to this Agreement and, to the extent of the interest assigned by such Assignment and Assumption, have the rights and obligations of a Lender under this Agreement, and the assigning Lender thereunder shall, to the extent of the interest assigned by such Assignment and Assumption, be released from its obligations under this Agreement (and, in the case of an Assignment and Assumption covering all of the assigning Lender's rights and obligations under this Agreement, such Lender shall cease to be a party hereto) but shall continue to be entitled to the benefits of Section 3.04 and 4.02 with respect to facts and circumstances occurring prior to the effective date of such assignment; provided, that except to the extent otherwise expressly agreed by the affected parties, no assignment by a Defaulting Lender will constitute a waiver or release of any claim of any party hereunder arising from that Lender's having been a Defaulting Lender. Any assignment or transfer by a Lender of rights or obligations under this Agreement that does not comply with this paragraph shall be treated for purposes of this Agreement as a sale by such Lender of a participation in such rights and obligations in accordance with paragraph (d) of this Section.

(c)      Register.  The Administrative Agent, acting solely for this purpose as a non-fiduciary agent of the Borrower, shall maintain at one of its offices a copy of each Assignment and Assumption delivered to it and a register for the recordation of the names and addresses of the Lenders, and the Commitments of and principal amounts (and stated interest) of the Advances owing to, each Lender pursuant to the terms hereof from time to time and the amount of any interest owing from time to time (the "*Register*").  The entries in the Register shall be conclusive absent manifest error, and the Borrower, the Administrative Agent and the Lenders shall treat each Person whose name is recorded in the Register pursuant to the terms hereof as a Lender hereunder for all purposes of this Agreement.  The Register shall be available for inspection by the Borrower and any Lender, at any reasonable time and from time to time upon reasonable prior notice.  The Register in intended to comply with Treas.  Reg. Sections 5(f).103-1(c) and 1.871-14(c) and any obligation or Note issued under this Agreement is intended to be in "registered form" pursuant to such Treasury Regulations.

(d)    Participations.  Any Lender may at any time, without the consent of, or notice to, the Borrower or the Administrative Agent, sell participations to any Person (other than a natural Person, the Borrower or any of the Borrower's Affiliates or Subsidiaries) (each, a "*Participant*") in all or a portion of such Lender's rights and/or obligations under this Agreement (including all or a portion of its Commitment and/or the Advances owing to it); *provided* that (i) such Lender's obligations under this Agreement shall remain unchanged, (ii) such Lender shall remain solely responsible to the other parties hereto for the performance of such obligations, (iii) no Lender shall sell any participation that, when taken together with all other participations, if any, sold by such Lender, covers all of such Lender's rights and obligations under this Agreement, (iv) such Lender has caused its Participants to agree in writing to be bound by the provisions of Section 10.15 as of such Participant was a party hereto as a Lender and (v) the Borrower, the Administrative Agent and Lenders shall continue to deal solely and directly with such Lender in connection with such Lender's rights and obligations under this Agreement.  For the avoidance of doubt, (x) each Lender shall be responsible for the indemnity under Section 3.05(d) with respect to any payments made by such Lender to its Participant(s) and (y) no Participant shall have any rights under this Agreement or any of the other Loan Documents except as expressly set forth herein and each Participant's rights against the granting Lender in respect of any participation shall be limited to those set forth in the participation agreement (which shall not be in contravention of this Agreement).

Any agreement or instrument pursuant to which a Lender sells such a participation shall provide that such Lender shall retain the sole right to enforce this Agreement and to approve any amendment, modification or waiver of any provision of this Agreement.  Notwithstanding anything to the contrary herein, no Lender shall permit any Participant to have any voting rights or any right to control the vote of such Lender with respect to any amendment, modification, waiver, consent or other action hereunder or under any other Loan Document (except as to actions that would (1) reduce or forgive the principal amount of the Advances of such Lender, reduce the rate of or forgive any interest or premium thereon, or reduce or forgive any fees or other Obligations owed to such Lender or (2) extend the Maturity Date, with respect to such Lender's Advances).  The Borrower agrees that each Participant shall be entitled to the benefits of Section 3.04, **Error! Reference source not found.** and 3.06 (subject to the requirements and limitations therein, as well as the requirements under Section 3.05(f) (it being understood that the documentation required under Section 3.05(f) shall be delivered to the participating Lender)) to the same extent as if it were a Lender and had acquired its interest by assignment pursuant to paragraph (b) of this Section; *provided* that such Participant shall not be entitled to receive any greater payment under Section 3.03 or 3.05, with respect to any participation, than its participating Lender would have been entitled to receive.  Each Lender that sells a participation agrees, at the Borrower's request and expense, to use reasonable efforts to cooperate with the Borrower to effectuate the provisions of 0 with respect to any Participant.  To the extent permitted by law, each Participant also shall be entitled to the benefits of Section 10.03 as though it were a Lender; *provided* that such Participant agrees to be subject to Section 3.06 and Section 10.15 as though it were a Lender.  Each Lender that sells a participation shall, acting solely for this purpose as a non-fiduciary agent of the Borrower, maintain a register on which it enters the name and address of each Participant and the principal amounts (and stated interest) of each Participant's interest in the Advances or other obligations under the Loan Documents and the amount of any interest owing from time to time (the "*Participant Register*"); *provided* that no Lender shall have any obligation to disclose all or any portion of the Participant Register (including the identity of any Participant or any information relating to a Participant's interest in any Commitments, the Advances or its other obligations under any Loan Document) to any Person except to the extent that such disclosure is necessary to establish that such Commitment, Advance or other obligation is in registered form for U.S. Virgin Islands tax purposes.  The entries in the Participant Register shall be conclusive absent manifest error, and such Lender shall treat each Person whose name is recorded in the Participant Register as the owner of such participation for all purposes of this Agreement notwithstanding any notice to the contrary.  For the avoidance of doubt, the

Administrative Agent (in its capacity as Administrative Agent) shall have no responsibility for maintaining a Participant Register. The Participant Register in intended to comply with Treas. Reg. Sections 5(f).103-1(c) and 1.871-14(c) and any participation or Note under this Agreement is intended to be in "registered form" pursuant to such Treasury Regulations.

(e)　　Certain Pledges.　Any Lender may at any time pledge or assign a security interest in all or any portion of its rights under this Agreement to secure obligations of such Lender, including any pledge or assignment to secure obligations to a Federal Reserve Bank or any other central bank having jurisdiction over such Lender; *provided* that no such pledge or assignment shall release such Lender from any of its obligations hereunder or substitute any such pledgee or assignee for such Lender as a party hereto.

SECTION 10.06　　Independence of Covenants.　All covenants hereunder shall be given independent effect so that if a particular action or condition is not permitted by any of such covenants, the fact that it would be permitted by an exception to, or would otherwise be within the limitations of, another covenant shall not avoid the occurrence of a Default or an Event of Default if such action is taken or condition exists.

SECTION 10.07　　Survival of Representations, Warranties and Agreements.　All representations, warranties and agreements made herein shall survive the execution and delivery hereof and the making of the Advances.　Notwithstanding anything herein or implied by law to the contrary, the agreements of each Loan Party set forth in Section 3.04, Section 3.06, Section 10.02 and Section 10.04 and the agreements of Lenders set forth in Section 3.05(d), 8.03, and 10.02(c) shall survive the payment of the Advances and the reimbursement of any amounts drawn thereunder, and the termination hereof.

SECTION 10.08　　No Waiver; Remedies Cumulative.　No failure or delay on the part of any Agent or any Lender in the exercise of any power, right or privilege hereunder or under any other Loan Document shall impair such power, right or privilege or be construed to be a waiver of any default or acquiescence therein, nor shall any single or partial exercise of any such power, right or privilege preclude other or further exercise thereof or of any other power, right or privilege.　The rights, powers and remedies given to each Agent and each Lender hereby are cumulative and shall be in addition to and independent of all rights, powers and remedies existing by virtue of any statute or rule of law or in any of the other Loan Documents.　Any forbearance or failure to exercise, and any delay in exercising, any right, power or remedy hereunder shall not impair any such right, power or remedy or be construed to be a waiver thereof, nor shall it preclude the further exercise of any such right, power or remedy.

SECTION 10.09　　Marshaling; Payments Set Aside.　Neither any Agent nor any Lender shall be under any obligation to marshal any assets in favor of the Borrower or any other Person or against or in payment of any or all of the Obligations.　To the extent that the Borrower makes a payment or payments to the Administrative Agent or the Lenders (or to the Administrative Agent, on behalf of the Lenders), or any Agent or Lender enforces any security interests or exercise its rights of setoff, and such payment or payments or the proceeds of such enforcement or setoff or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy law, any other state or federal law, common law or any equitable cause, then, to the extent of such recovery, the obligation or part thereof originally intended to be satisfied, and all Liens, rights and remedies therefor or related thereto, shall be revived and continued in full force and effect as if such payment or payments had not been made or such enforcement or setoff had not occurred.

SECTION 10.10　　Severability.　In case any provision in or obligation hereunder or under any other Loan Document shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality

and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

SECTION 10.11     Obligations Several; Independent Nature of Lenders' Rights.   The obligations of the Lenders hereunder are several and no Lender shall be responsible for the obligations or Commitment of any other Lender hereunder.  Nothing contained herein or in any other Loan Document, and no action taken by the Lenders pursuant hereto or thereto, shall be deemed to constitute the Lenders as a partnership, an association, a Joint Venture or any other kind of entity.  The amounts payable at any time hereunder to each Lender shall be a separate and independent debt, and each Lender shall be entitled to protect and enforce its rights arising out hereof and it shall not be necessary for any other Lender to be joined as an additional party in any proceeding for such purpose.

SECTION 10.12     Headings.     Section headings herein are included herein for convenience of reference only and shall not constitute a part hereof for any other purpose or be given any substantive effect.

SECTION 10.13     Governing Law; Jurisdiction, Etc.

(a)     Governing Law.  This Agreement and the other Loan Documents and any claims, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Agreement or any other Loan Document (except, as to any other Loan Document, as expressly set forth therein) and the transactions contemplated hereby and thereby shall be governed by, and construed in accordance with, the law of the State of New York.

(b)     Jurisdiction.  Each Loan Party irrevocably and unconditionally agrees that it will not commence any action, litigation or proceeding of any kind or description, whether in law or equity, whether in contract or in tort or otherwise, against the Administrative Agent, any Lender or any Related Party of the foregoing in any way relating to this Agreement or any other Loan Document or the transactions relating hereto or thereto, in any forum other than the courts of the State of New York sitting in New York County, and of the United States District Court of the Southern District of New York, and any appellate court from any thereof, and each of the parties hereto irrevocably and unconditionally submits to the jurisdiction of such courts and agrees that all claims in respect of any such action, litigation or proceeding may be heard and determined in such New York State court or, to the fullest extent permitted by applicable law, in such federal court.  Each of the parties hereto agrees that a final judgment in any such action, litigation or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  Nothing in this Agreement or in any other Loan Document shall affect any right that the Administrative Agent or any Lender may otherwise have to bring any action or proceeding relating to this Agreement or any other Loan Document against the Borrower or its properties in the courts of any jurisdiction.

(c)     Waiver of Venue.  Each Loan Party irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Agreement or any other Loan Document in any court referred to in paragraph (b) of this Section 10.13.  Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by applicable law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(d)     Service of Process.  Each party hereto irrevocably consents to service of process in the manner provided for notices in Section 4.01.  Nothing in this Agreement will affect the right of any party hereto to serve process in any other manner permitted by applicable law.  As an alternative method of service, each of the Borrower, LBRM and LBRO also irrevocably consents to the service of any and all

process in any such action or proceeding by the air mailing of copies of such process to such Borrower Party at its then-effective notice address pursuant to Section 10.01.

SECTION 10.14   Waiver of Jury Trial.   EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).   EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

SECTION 10.15   Confidentiality.   Each of the Administrative Agent and the Lenders agree to maintain the confidentiality of the Information (as defined below), except that Information may be disclosed (a) to its Affiliates and to its Related Parties (it being acknowledged and agreed by the Administrative Agent and the Lenders that any Affiliate or Related Party of such Person that is principally involved in the trading or hedging of commodities does not need to know, and will not be provided with, such information (other than a limited number of senior employees who are required, in accordance with industry regulations or such Person's internal policies and procedures, to act in a supervisory capacity and such Person's internal legal, compliance, risk management, credit or investment committee members, *provided* that no such persons will use such disclosed confidential information in connection with any trading or hedging of commodities of such Person or its Affiliates)) who are informed of the confidential nature of such Information and instructed to keep such Information confidential; (b) to the extent required or requested by any regulatory authority purporting to have jurisdiction over such Person or its Related Parties (including any self-regulatory authority, such as the National Association of Insurance Commissioners); (c) to the extent required by applicable laws or regulations or by any subpoena or similar legal process; (d) to any other party hereto; (e) in connection with the exercise of any remedies hereunder or under any other Loan Document or any action or proceeding relating to this Agreement or any other Loan Document or the enforcement of rights hereunder or thereunder; (f) subject to an agreement containing provisions substantially the same as those of this Section, to (i) any assignee of or Participant in, or any prospective assignee of or Participant in, any of its rights and obligations under this Agreement, or (ii) any actual or prospective party (or its Related Parties) to any swap, derivative or other transaction under which payments are to be made by reference to the Borrower and its obligations, this Agreement or payments hereunder; (g) on a confidential basis to (i) any rating agency in connection with rating the Borrower or its Subsidiaries or the DIP Facility or (ii) the CUSIP Service Bureau or any similar agency in connection with the issuance and monitoring of CUSIP numbers with respect to the DIP Facility; (h) with the consent of the Borrower; or (i) to the extent such Information (x) becomes publicly available other than as a result of a breach of this Section, or (y) becomes available to the Administrative Agent, any Lender or any of their respective Affiliates on a nonconfidential basis from a source other than the Borrower.  In addition, the Administrative Agent and the Lenders may disclose the existence of this Agreement and information about this Agreement to market data collectors, similar service providers to the lending industry and service providers to the Agents and the Lenders in connection with the administration of this Agreement, the other Loan Documents, and the Advances; *provided* that such Persons receiving such information are subject to confidentiality obligations substantially similar to this Section 10.15 or as may be reasonably acceptable to the Borrower.

For purposes of this Section, "*Information*" means all information received from the Borrower relating to Holdings, the Borrower or any of their respective businesses, other than any such information that is available to the Administrative Agent or any Lender on a nonconfidential basis prior to disclosure by the Borrower; *provided* that, in the case of information received from the Borrower after the date of this Agreement, such information is clearly identified at the time of delivery as confidential.  Any Person required to maintain the confidentiality of Information as provided in this Section shall be considered to have complied with its obligation to do so if such Person has exercised the same degree of care to maintain the confidentiality of such Information as such Person would accord to its own confidential information.

SECTION 10.16    Usury Savings Clause. Notwithstanding any other provision herein, the aggregate interest rate charged with respect to any of the Obligations, including all charges or fees in connection therewith deemed in the nature of interest under applicable law shall not exceed the Highest Lawful Rate.  If the rate of interest (determined without regard to the preceding sentence) under this Agreement at any time exceeds the Highest Lawful Rate, the outstanding amount of the Advances made hereunder shall bear interest at the Highest Lawful Rate until the total amount of interest due hereunder equals the amount of interest which would have been due hereunder if the stated rates of interest set forth in this Agreement had at all times been in effect.  In addition, if when the Advances made hereunder is repaid in full the total interest due hereunder (taking into account the increase provided for above) is less than the total amount of interest which would have been due hereunder if the stated rates of interest set forth in this Agreement had at all times been in effect, then to the extent permitted by law, the Borrower shall pay to the Administrative Agent an amount equal to the difference between the amount of interest paid and the amount of interest which would have been paid if the Highest Lawful Rate had at all times been in effect.  Notwithstanding the foregoing, it is the intention of the Lenders and the Borrower to conform strictly to any applicable usury laws.  Accordingly, if any Lender contracts for, charges, or receives any consideration which constitutes interest in excess of the Highest Lawful Rate, then any such excess shall be cancelled automatically and, if previously paid, shall at such Lender's option be applied to the outstanding amount of the Advances made hereunder or be refunded to the Borrower.

SECTION 10.17    Counterparts; Integration; Effectiveness; Electronic Execution.

(a)    Counterparts; Integration; Effectiveness.  This Agreement may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract.  This Agreement and the other Loan Documents, and any separate letter agreements with respect to fees payable to the Administrative Agent, constitute the entire contract among the parties relating to the subject matter hereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof.  This Agreement shall become effective on the Closing Date.

(b)    Electronic Execution of Assignments.  The words "execution," "signed," "signature," and words of like import in any Assignment and Assumption shall be deemed to include electronic signatures or the keeping of records in electronic form, each of which shall be of the same legal effect, validity or enforceability as a manually executed signature or the use of a paper-based recordkeeping system, as the case may be, to the extent and as provided for in any applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act, or any other similar state laws based on the Uniform Electronic Transactions Act.

SECTION 10.18    Patriot Act. Each Lender and the Administrative Agent (for itself and not on behalf of any Lender) hereby notifies the Borrower that pursuant to the requirements of the Patriot Act and the Beneficial Ownership Regulation, it is required to obtain, verify and record information that

identifies the Borrower, which information includes the name and address of the Borrower and other information that will allow such Lender or Administrative Agent, as applicable, to identify the Borrower in accordance with the Patriot Act and the Beneficial Ownership Regulation.  The Borrower shall, promptly following a request by the Administrative Agent or any Lender, provide all documentation and other information that the Administrative Agent or such Lender requests in order to comply with its ongoing obligations under applicable "know your customer" and anti-money laundering rules and regulations, including the Patriot Act and the Beneficial Ownership Regulation.

SECTION 10.19    <u>Non-Recourse to Equityholders; Certain Acknowledgements</u>. Anything herein or in the other Loan Documents to the contrary notwithstanding, the obligations of the Loan Parties under this Agreement and the other Loan Documents are obligations of the Loan Parties and do not constitute a debt or obligation of (and no recourse shall be had with respect thereto to) any of the direct or indirect holders of the Capital Stock of the Loan Parties or any of their respective Affiliates (in each case, other than the Loan Parties) or any shareholder, partner, member, officer, director, controlling Person, agent, representative, executive or employee of any such Person (collectively, other than the Loan Parties, the "***Non-Recourse Parties***"), except to the extent of the obligations of any such Non-Recourse Party expressly provided for in any of the Loan Documents to which it may become a party, if ever.  Except in respect of any obligation of a Non-Recourse Party expressly provided in any Loan Document to which it may become a party (if ever), no action shall be brought against the Non-Recourse Parties, and no judgment for any deficiency upon the Obligations shall be obtainable, by any Secured Party against the Non-Recourse Parties and the Secured Parties shall look solely to the Loan Parties (but not to any Non-Recourse Party) in enforcing its rights and obligations under and in connection with the Obligations; *provided* that nothing contained in this <u>Section 10.19</u> shall be deemed to release any Non-Recourse Party from liability for its own fraudulent actions, bad faith or willful misconduct or from any other obligation of such Non-Recourse Party contained in any other agreement to which such Non-Recourse Party is a party or to bar any counterclaim against any Person.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first above written.

[SIGNATURE PAGES FOLLOW]

ANNEX I
to Credit Agreement

**COMMITMENTS; APPLICABLE LENDING OFFICES**

## **Exhibit B**

## **Approved Budget**

# Limetree Bay Refinery

**Forecasted Results of Operations and Cash Flows**

Wks Beginning  _7/12/21_  _thru_  _7/26/21_

| | Week -----> | 1 | 2 | 3 | TOTAL |
|---|---|---|---|---|---|
| | Beginning of Week | 7/12/21 | 7/19/21 | 7/26/21 | |
| | End of Week | 7/18/21 | 7/25/21 | 8/1/21 | |
| **Cash Receipts** | | $ 900 | $ 3,400 | $ 450 | $ 4,750 |
| **Cash Disbursements** | | | | | |
| Payroll / Benefits | | $ 1,220 | $ - | $ 1,197 | $ 2,417 |
| Fuel | | 470 | 470 | 470 | 1,410 |
| Maintenance and Other Outside Services | | 298 | 298 | 298 | 893 |
| Insurance | | - | 514 | - | 514 |
| Admin / Site Services | | - | 221 | 221 | 442 |
| Limetree Bay Terminal Services | | 150 | 150 | 150 | 450 |
| Utility Adequate Assurance Payment | | - | - | 483 | 483 |
| Critical Vendor Payments | | - | - | 750 | 750 |
| Flare Repair | | - | 221 | 58 | 279 |
| Hydrocarbon Removal | | - | 310 | 310 | 620 |
| **Total**    **Cash Disbursements** | | $ 2,138 | $ 2,184 | $ 3,938 | $ 8,259 |
| **Operating Cash Flow** | | $ (1,238) | $ 1,216 | $ (3,488) | $ (3,509) |
| **Other (Sources) / Uses** | | | | | |
| DIP Financing Costs | | $ 63 | $ - | $ - | $ 63 |
| Revolver Interest Payments | | 321 | | - | 321 |
| J Aron Interest Payment | | - | - | 150 | 150 |
| Insurance Claims Professionals | | 10 | - | - | 10 |
| **Total**    **Other (Sources) / Uses** | | 393 | - | 150 | 543 |
| **Net Cash Flow Before Professional Fees** | | (1,631) | 1,216 | (3,638) | $ (4,053) |
| **Professional Fees** | | | | | |
| Debtor Legal | | $ 150 | $ - | $ - | $ 150 |
| DIP Lender Counsel | | 120 | - | - | 120 |
| Term Lender Professionals | | 1,100 | - | - | 1,100 |
| J Aron Counsel (Pre-Petition Fee Estimate) | | 575 | - | - | 575 |
| Revolver Counsel (Pre-Petition Fee Estimate) | | 600 | - | 100 | 700 |
| **Total**    **Professional Fees** | | $ 2,545 | $ - | $ 100 | $ 2,645 |
| **Net Cash Flow** | | $ (4,176) | $ 1,216 | $ (3,738) | $ (6,698) |
| _Accumulated_ | | $ (4,176) | $ (2,960) | $ (6,698) | |
| **Beginning Cash Balance** | | $ 2,517 | $ 3,841 | $ 5,057 | |
| **Net Cash Flow** | | (4,176) | 1,216 | (3,738) | |
| **DIP Draw** | | 5,500 | - | - | |
| **DIP (Paydown)** | | - | - | - | |
| **Ending Book Cash Balance** | | $ 3,841 | $ 5,057 | $ 1,319 | $ 1,319 |
| **Ending  DIP Balance** | | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 |



**IN THE UNTED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
07/13/2021

| | |
|---|---|
| In re: | Chapter 11 |
| **LIMETREE BAY SERVICES, LLC,** | Case No.: 21-32351 |
| Debtor. | |
| EIN 84-3141866 | |
| In re: | Chapter 11 |
| **LIMETREE BAY REFINING HOLDINGS, LLC,** | Case No.: 21-32352 |
| Debtor. | |
| EIN 66-0901776 | |
| In re: | Chapter 11 |
| **LIMETREE BAY REFINING HOLDINGS II, LLC,** | Case No.: 21-32353 |
| Debtor. | |
| EIN 66-0901815 | |
| In re: | Chapter 11 |
| **LIMETREE BAY REFINING, LLC,** | Case No.: 21-32354 |
| Debtor. | |
| EIN 66-0898671 | |
| In re: | Chapter 11 |
| **LIMETREE BAY REFINING OPERATING, LLC,** | Case No.: 21-32355 |
| Debtor. | |
| EIN 66-0899067 | |

| In re: | Chapter 11 |
|---|---|
| **LIMETREE BAY REFINING MARKETING, LLC,** | **Case No.: 21-32356** |
| **Debtor.** | |
| **EIN 66-0899222** | |

(Docket No. 4)

## ORDER PURSUANT TO BANKRUPTCY RULE 1015(b) AND LOCAL RULE 1015-1 DIRECTING JOINT ADMINISTRATION OF CHAPTER 11 CASES

Upon the motion (the "**Motion**")[2] of Limetree Bay Services, LLC and its debtor affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), for an order pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1 directing the joint administration of the Debtors' Chapter 11 Cases for procedural purposes only, as more fully described in the Motion; and due and proper notice of the Motion having been provided; and the relief requested in the Motion being in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

IT IS HEREBY ORDERED:

1.      The Motion is granted as set forth herein.

2.      Pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1, the above-captioned Chapter 11 Cases are consolidated for procedural purposes only and shall be jointly administered by the Court under Case No. 21-32351 (DRJ). Additionally, the following checked items are ordered:

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

4829-4538-0593.1

A. __X__ One disclosure statement and plan of reorganization may be filed for the Debtors by any plan proponent.

B. __X__ Any of the above-captioned cases with a higher case number shall be transferred to Judge Jones, who has the lower numbered case.

C. __X__ Parties may request joint hearings on matters pending in any of the jointly administered cases.

D. __X__ Other: See below

3.     Nothing contained in this Order shall be deemed or construed as directing or otherwise affecting substantive consolidation of any of the Chapter 11 Cases, the Debtors, or the Debtors' estates.  The caption of the jointly administered Chapter 11 Cases should read as follows:

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC,** *et al.*,[3] | **CASE NO.: 21-32351** |
| **Debtors.** | **(Jointly Administered)** |

4.     The foregoing caption satisfies the requirements set forth in Section 342(c)(1) of the Bankruptcy Code.

5.     The Clerk of this Court shall enter this order on the docket of each of the Chapter 11 Cases, with the exception of the Limetree Bay Services, LLC case, and shall make the following docket entry in each such case:

---

[3] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

> An order has been entered in this case in accordance with Rule 1015(b) of the Federal Rules of Bankruptcy Procedure directing the joint administration of this case with the chapter 11 case of Limetree Bay Services, LLC. The docket in the case of Limetree Bay Services, LLC No. 21-32351 (DRJ), should be consulted for all further documents filed and all matters affecting this case.

6.     The Debtors shall maintain and the Clerk of the United States Bankruptcy Court for the Southern District of Texas shall keep one consolidated docket, one file, and one consolidated service list for these Chapter 11 Cases.

7.     Nothing contained in the Motion or this Order shall be deemed or construed as directing or otherwise effecting a substantive consolidation of these Chapter 11 Cases, and this Order is without prejudice to the rights of any party in interest to seek entry of an Order substantively consolidating these cases.

8.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

9.     Notice of the Motion as provided therein shall be deemed good and sufficient and satisfies the requirements of the Bankruptcy Rules and the Local Rules.

10.    The terms and conditions of this Order are immediately effective and enforceable upon its entry.

11.    The Debtors are authorized to take all steps necessary or appropriate to carry out this Order.

12.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.


**Signed:  July 13, 2021.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**



**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
07/14/2021

| | |
|---|---|
| In re: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC,** *et al.* [1] | **CASE NO.: 21-32351** |
| Debtors. | **Jointly Administered** |

(Docket No. 14)

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN
POSTPETITION SENIOR SECURED SUPERPRIORITY FINANCING AND (B) USE
CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO
PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY,
(IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>") of the above-captioned debtors and debtors in possession

(the "<u>Debtors</u>") seeking entry of interim and final orders pursuant to sections 105, 361, 362, 363,

364 and 507 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001,

6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), Rules

2002-1, 4001-1(b), 4002-1(i), and 9013-1 of the Bankruptcy Local Rules (the "<u>Local Rules</u>") for

the United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>"), and the

Procedures for Complex Cases in the Southern District of Texas (the "<u>Complex Rules</u>"),[2]

(i)     authorizing the Debtors to (a) obtain postpetition financing up to an aggregate principal
        amount of up to $5.5 million on an interim basis (the "<u>DIP Financing</u>"), with a
        committed financing facility up to $25 million proposed by the Debtors to be
        considered at a subsequent hearing, pursuant to that certain Senior Secured
        Superpriority Debtor-In-Possession Credit Agreement  attached hereto as **<u>Exhibit A</u>**
        (the "<u>DIP Credit Agreement</u>"), and such other agreements, documents, certificates and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, as applicable, are: Limetree Bay Services,  LLC (1866); Limetree Bay Refining Holdings, LLC (1776);
Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining
Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is
Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or the DIP
Credit Agreement (defined below) as applicable.

instruments delivered or executed from time to time in connection therewith, including the agreements related to the DIP Financing, (the "DIP Loan Documents"), among the Debtor Limetree Bay Refining, LLC, as borrower ("LBR" or the "Borrower"), Debtors Limetree Bay Services, LLC., Limetree Bay Refining Holdings, LLC, Limetree Bay Refining Holdings II, LLC ("LBRHII"), Limetree Bay Refining Operating, LLC ("LBRO"), and Limetree Bay Refining Marketing, LLC ("LBRM" and each a "Guarantor" and together the "Guarantors"), 405 Sentinel, LLC and the financial institutions from time to time parties thereto as lenders (each individually a "DIP Lender," and collectively, the "DIP Lenders"), and 405 Sentinel, LLC, as administrative and collateral agent for the DIP Lenders (the "DIP Agent" together with the DIP Lenders, the "DIP Secured Parties"); (b) authorizing the Debtors to use the DIP Lenders' and the Prepetition Secured Parties' (as defined in the Motion) (x) "cash collateral" as such term is defined in section 363 of the Bankruptcy Code other than, until such time as the Discharge of Inventory Financing Obligations (as defined in the A&R Depositary and Intercreditor Agreement defined below) occurs, any such "cash collateral" that constitutes Inventory Financing Collateral (as defined below) and (y) until such time as the Discharge of Inventory Financing Obligations (as defined in the A&R Depositary and Intercreditor Agreement defined below) occurs, "cash collateral" as such term is defined in section 363 of the Bankruptcy Code that constitutes Inventory Financing Collateral, solely to the extent that the same is (A) cash or amounts on deposit in or credited to any deposit account or securities account or (B) accounts receivable in respect of propane sales contemplated to be received by the Debtors pursuant to the Approved Budget (as defined below) in an aggregate amount not to exceed $1,000,000, in each case that constitutes Inventory Financing Collateral as of the Petition Date (such "cash collateral" as described in this clause (y) and the foregoing clause (x), the "Cash Collateral");

(ii)     granting (y) to the DIP Agent for the benefit of the DIP Secured Parties the DIP Liens on the DIP Collateral (as defined below) to secure all amounts owed under the DIP Loan Documents (the "DIP Obligations") on a first priority priming basis, except as otherwise set forth herein, and (z) to the DIP Secured Parties the DIP Superpriority Claims (as defined below) in respect of the DIP Obligations, in each case subject to the terms and conditions hereof;

(iii)    approving certain stipulations by the Debtors with respect to the Prepetition Secured Documents (as defined below) and the liens and security interests arising therefrom;

(iv)    modifying the automatic stay to the extent provided for herein;

(v)     granting adequate protection for the liens and security interests granted for the benefit of the Prepetition Secured Parties in connection with the prepetition agreements described in Paragraphs F and G, below; and

(vi)    scheduling a final hearing (the "Final Hearing") to consider entry of a final order (the "Final Order") authorizing the relief requested in the Motion on a final basis, and approving the form of notice with respect to the Final Hearing, which order shall be in form and substance and on terms satisfactory in all respects to the DIP Secured Parties.

The Court having considered the Motion, the DIP Loan Documents, and the Declaration of Mark Shapiro in support of the First Day Motions, the pleadings filed with the Court, and the evidence proffered and presented at the interim hearing held on July 13, 2021 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001 and 9014 and all applicable Local Rules and Complex Rules; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates and their creditors, represents a sound exercise of the Debtors' business judgment and is necessary for the continued operation of the Debtors' businesses; and upon the record of these Chapter 11 Cases; after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND, DETERMINED, ORDERED AND ADJUDGED:[3]**

A.     <u>Filing Date</u>. On July 12, 2021 (the "<u>Petition Date</u>"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court (these "<u>Chapter 11 Cases</u>").

B.     <u>Jurisdiction; Venue</u>. The Court has exclusive jurisdiction to consider this matter pursuant to 28 U.S.C. §1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(D). Venue of the Chapter 11 Cases and the Motion is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, and 507 of

---

[3] Where appropriate in this Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

4823-3938-9938.1

the Bankruptcy Code; Bankruptcy Rules 2002, 4001, 6004, and 9014; and Local Rules 2002-1, 4001-1, 4002-2, and 9013-1.

C.       Committee Formation.  The Office of the United States Trustee (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors in these Chapter 11 Cases (if appointed, the "Committee"). No trustee or examiner has been appointed.

D.       Notice.  Due notice of the Interim Hearing and the Motion was afforded, whether by facsimile, electronic mail, overnight courier, or hand delivery, to parties in interest, including to: (a) the United States Trustee for the Southern District of Texas; (b) all secured creditors of record, including (as defined herein) the DIP Agent, the Revolving Administrative Agent, the Term Administrative Agent, J. Aron, and the Project Collateral Agent; (c) the Offices of the Attorney General of the State of Texas and the United States Virgin Islands; (d) the thirty (30) largest consolidated unsecured creditors for the Debtors; (e) the Debtors' identified, interested taxing authorities, including the Internal Revenue Service; (f) the Debtors' identified, interested government and regulatory entities; (g) other interested parties as identified by the Debtors; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Under the circumstances, such notice of the Motion, the relief requested therein and the Interim Hearing complies with Bankruptcy Rules 4001 and 9014 and the Local Rules, and no other or further notice of the relief sought at the Interim Hearing was required.

E.       Debtors' Stipulations Regarding DIP Loan Documents and DIP Secured Parties.  In requesting the DIP Financing, upon entry of this order (the "Interim Order"), the Debtors acknowledge, represent, stipulate, and agree that:

(a)        none of the DIP Secured Parties are control persons or insiders (as defined in the Bankruptcy Code) of the Debtors by virtue of determining to make any loan, providing the DIP Financing or performing obligations under the DIP Loan Documents;

(b)        as of the date hereof, there exist no claims or causes of action against any of the DIP Secured Parties arising from, related to or connected with the DIP Loan Documents that may be asserted by the Debtors;

(c)        the Debtors forever and irrevocably release, discharge, and acquit the DIP Secured Parties and each of their respective officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "DIP Releasees"), in each case in their capacity as such, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened as of the date hereof including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, existing as of the date of this Interim Order, arising out of, in connection with, or relating to the DIP Financing, the DIP Loan Documents, the DIP Obligations, and ancillary documentation, guarantees, security documentation and collateral documents executed in support of the foregoing or the transactions contemplated hereunder or thereunder including, without limitation, (i) any avoidance, reduction, setoff, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), except as permitted herein, so-called "lender liability" claims,

counterclaims, cross-claims, recoupment, defenses, disallowance (whether equitable or otherwise), impairment, or any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation by any person or entity, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the DIP Secured Parties with respect to the DIP Loan Documents.

F.      <u>Debtors' Stipulations Regarding Prepetition Secured Debt Obligations</u>. Upon entry of the Interim Order, subject to paragraph 42, the Debtors acknowledge, represent, stipulate, and agree as follows and make the releases and waivers set forth below:

(a)      Prior to the Petition Date, pursuant to (i) the Prepetition Term Credit Agreement, the Prepetition Term Lenders extended credit to LBR in the form of term loans, (ii) the Revolver Credit Agreement, the Revolver Lenders extended credit to LBRM in the form of a revolving credit facility and (iii) the Prepetition HoldCo Credit Agreement, the Prepetition HoldCo Lenders[4] extended credit to LBRH in the form of term loans.  Pursuant to the Prepetition Term Credit Agreement, the obligations of LBR under the Prepetition Term Credit Agreement are unconditionally and irrevocably guaranteed on a joint and several basis by LBRO and LBRM. Pursuant to the Revolver Credit Agreement, the obligations of LBRM under the Revolver Credit Agreement are unconditionally and irrevocably guaranteed on a joint and several basis by LBRO and LBR.  As of the Petition Date, the obligors under the Prepetition Term Documents and Revolver Transaction Documents (such documents, the "<u>Prepetition Secured Debt Documents</u>" and such obligors, the "<u>Prepetition Obligors</u>") were truly and justly indebted to the Prepetition

---

[4] As used in this Interim Order, the term "Prepetition HoldCo Lenders" extends only to Prepetition Holdco Lenders to the extent they are, as of the date of this Interim Order, a Prepetition Term Lender or an affiliate of a Prepetition Term Lender.  The term specifically does not encompass insiders or affiliates of the Debtors, as such terms are defined in the Bankruptcy Code.

4823-3938-9938.1

Secured Parties pursuant to the Prepetition Secured Debt Documents, without defense, counterclaim, offset, claim, or cause of action of any kind, in the aggregate amount of not less than (i) $768,956,393 of outstanding principal with respect to term loans under the Prepetition Term Credit Agreement plus accrued and unpaid interest with respect thereto, fees, costs, and expenses (including any attorneys', financial advisors', and other professionals' fees and expenses that are chargeable or reimbursable under the Prepetition Term Credit Agreement) and all other "Obligations" (as defined in the Prepetition Term Credit Agreement or any security document related thereto) under the Prepetition Secured Debt Documents (the "Prepetition Term Obligations") and (ii) $50 million of outstanding principal under the Revolver Credit Agreement plus accrued and unpaid interest with respect thereto, fees, costs, and expenses (including any attorneys', financial advisors, and other professionals' fees and expenses that are chargeable or reimbursable under the Revolver Credit Agreement) under the Prepetition Secured Debt Documents and all other "Obligations" (as defined in the Revolver Credit Agreement or any security document related thereto) under the Prepetition Secured Debt Documents (the "Revolver Secured Obligations" and, together with the Prepetition Term Obligations, the "Prepetition Term and Revolver Debt Obligations"). As of the Petition Date, the obligors under the Prepetition Holdco Loan Documents (such obligors, the "Prepetition Holdco Loan Parties") were truly and justly indebted to the Prepetition Holdco Lenders pursuant to the Prepetition Holdco Loan Documents, without defense, counterclaim, offset, claim, or cause of action of any kind, for their share of an aggregate amount of not less than $782,558,090[5] of outstanding principal under the Prepetition Holdco Credit Agreement plus accrued and unpaid interest with respect thereto, fees,

---

[5]   This amount includes sums related to entities that are not Prepetition Holdco Lenders. The Debtors' acknowledgements, representations, stipulations, and agreements only extend to the share of such claims belonging to the Prepetition Holdco Lenders.

4823-3938-9938.1

costs, and expenses (including any attorneys', financial advisors, and other professionals' fees and expenses that are chargeable or reimbursable under the Prepetition Holdco Credit Agreement) under the Prepetition Holdco Loan Documents and all other "Obligations" (as defined in the Prepetition Holdco Credit Agreement or any security document related thereto) under the Prepetition Holdco Loan Documents (the "Prepetition Secured Holdco Debt Obligations" and, together with the Prepetition Term and Revolver Debt Obligations, the "Prepetition Secured Debt Obligations").

(b)     The Prepetition Secured Debt Obligations constitute legal, valid, and binding obligations of the Prepetition Obligors and the Prepetition Holdco Loan Parties.  No offsets, defenses, or counterclaims to, or claims or causes of action that could reduce the amount or priority of, the Prepetition Secured Debt Obligations exist.  No portion of the Prepetition Secured Debt Obligations is subject to set-off, avoidance, impairment, disallowance, recharacterization, reduction, subordination (whether equitable, contractual, or otherwise), counterclaims, recoupment, cross-claims, defenses, or any other challenges under or pursuant to the Bankruptcy Code or any other applicable domestic or foreign law or regulation by any person or entity.  The Prepetition Secured Debt Documents and the Prepetition Holdco Loan Documents are valid and enforceable by each of the Prepetition Term Lenders, Revolver Lenders (together with the Prepetition Term Lenders, the "Prepetition Secured Lenders") and Prepetition Holdco Lenders, as applicable against each of the Prepetition Obligors or the Prepetition Holdco Loan Parties, as applicable.  The Prepetition Secured Debt Obligations constitute allowed claims against the applicable Prepetition Obligors' and the Prepetition Holdco Loan Parties' estates.  As of the Petition Date, the Debtors or their estates have no claim or cause of action against any of the Prepetition Secured Parties, the Prepetition Holdco Loan Secured Parties or their respective agents,

in such capacities, whether arising under applicable state, federal, or foreign law (including, without limitation, any recharacterization, subordination, avoidance, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), or whether arising under or in connection with any of the Prepetition Secured Debt Documents (or the transactions contemplated thereunder), the Prepetition Holdco Financing Loan Documents (or the transactions contemplated thereunder), the Prepetition Secured Debt Obligations, the Prepetition Debt Liens (as defined below) or the Prepetition Holdco Financing Liens (as defined below).

(c)      Pursuant to and as more particularly described in the Prepetition Secured Debt Documents, the Prepetition Term and Revolver Debt Obligations and certain associated hedge obligations are secured by, among other things, first priority liens or mortgages on, security interests in, and assignments or pledges of (the "Prepetition Debt Liens"), (i) substantially all of the assets of the Borrower and the Guarantors, including, without limitation, certain cash collateral, and other "Collateral" as such term is defined in the Prepetition Secured Debt Documents, subject to certain exclusions including Inventory Financing Collateral, as defined in the A&R Depositary and Intercreditor Agreement, and (ii) the equity interests in the Borrower held by LBRHII  and all rights and benefits of LBRHII under the Amended and Restated Operating Agreement, dated as of November 20, 2018 (collectively, the "Prepetition Debt Collateral"). The Collateral Agency and Intercreditor Agreement, dated as of November 20, 2018, by and among LBR, LBRH, LBRO, LBRM, the Prepetition Term Agent, the Revolving Administrative Agent, and the Project Collateral Agent  (as defined in the A&R Depositary and Intercreditor Agreement (as defined herein)) (amended, amended and restated, supplemented and/or modified from time to time, the "Intercreditor Agreement") sets forth, among other things, the priority of the Revolver Lenders, Prepetition Term Lenders, and certain other parties in respect of the Prepetition Debt Collateral

and establishes that (a) prior to the Toll Coverage Threshold Date (as defined therein) (i) the priority of the lien of the Project Collateral Agent in respect of the Project Tolling Collateral (as defined therein) shall be the holders of the Prepetition Term Obligations, any Permitted Refinancing Facility (as defined in the Term Credit Agreement) in respect of the Term Credit Agreement and any Secured Interest Rate Hedge Agreement (as defined in the Term Credit Agreement) entered into in respect of each of the foregoing (the "Term and Associated Holders"),followed by the holders of the Revolver Secured Obligations, any Permitted Refinancing Facility (as defined in the Revolver Credit Agreement) in respect of the Revolver Credit Agreement and any Secured Interest Rate Hedge Agreement (as defined in the Revolver Credit Agreement) entered into in respect of each of the foregoing (the "Revolver and Associated Holders"), and (ii) the priority of the lien of the Project Collateral Agent in respect of all Prepetition Debt Collateral (other than the Project Tolling Collateral, the Account Collateral (as defined therein) and certain Cash Collateral Accounts (as defined therein)), which Prepetition Debt Collateral includes any equipment and fixtures (as those terms are defined in the Uniform Commercial Code as in effect in the State of New York) of the Debtors, shall be the Revolver and Associated Holders followed by the Term and Associated Holders and (b) the Revolver and Associated Holders and the Term and Associated Holders shall share the priority of the lien of the Project Collateral Agent in respect of the Account Collateral (other than the Debt Service Account (as defined therein) and the Account Collateral held therein and credit thereto) Equally and ratably (as defined in the Intercreditor Agreement).[6]  As of the date hereof, the Toll Coverage Threshold

---

[6] The description of the relative priorities of the Revolver Lenders, Prepetition Term Lenders, and certain other parties in respect of the Prepetition Debt Collateral set forth herein is qualified in its entirety by reference to the Intercreditor Agreement. In the event of any conflict between the description set forth herein and the terms of the Intercreditor Agreement, the Intercreditor Agreement shall govern. Nothing contained herein shall be construed or deemed to modify or amend the term of the Intercreditor Agreement.

4823-3938-9938.1

Date has not occurred.  Pursuant to and as more particularly described in the Prepetition Holdco Loan Documents, the Prepetition Secured Holdco Debt Obligations are secured by, among other things, first priority liens or mortgages on, security interests in, and assignments or pledges of (the "Prepetition Holdco Financing Liens") all of the Collateral (as defined in the Prepetition Holdco Credit Agreement) (the "Prepetition Holdco Financing Collateral").

(d)     As of the Petition Date, the Prepetition Debt Liens and the Prepetition Holdco Financing Liens are (i) valid, binding, perfected, and enforceable liens on and security interests in the applicable Prepetition Debt Collateral and Prepetition Holdco Financing Collateral; and (ii) not subject to, pursuant to the Bankruptcy Code or other applicable law (foreign or domestic), avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual, or otherwise), attachment, offset, counterclaim, defense, "claim" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person or entity, and each Debtor irrevocably waives, for itself and its estate, any right to challenge or contest in any way the scope, extent, perfection, priority, validity, non-avoidability, and enforceability of the Prepetition Debt Liens or the Prepetition Holdco Financing Liens or the validity, enforceability, or priority of payment of the Prepetition Secured Debt Obligations, the Prepetition Secured Debt Documents and the Prepetition Holdco Loan Documents.  The Prepetition Debt Liens were granted to the respective Prepetition Lenders, and the Prepetition Holdco Financing Liens were granted to the Prepetition Holdco Lenders, for fair consideration and reasonably equivalent value, and were granted contemporaneously with the making of loans, commitments, and/or other financial accommodations under the Prepetition Secured Debt Documents or the Prepetition Holdco Loan Documents.

(e)     All of the Debtors' cash, including any cash in all deposit accounts and collection accounts, wherever located, comprising proceeds of or otherwise arising from or relating to the Prepetition Debt Collateral and, following the Discharge of Inventory Financing Obligations (as defined in the A&R Depositary and Intercreditor Agreement), of the Inventory Financing Collateral, constitutes Cash Collateral of the Prepetition Secured Parties.

(f)     None of the Prepetition Secured Parties or the Prepetition Holdco Loan Secured Parties[7] control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted, or are control persons or insiders (as defined in the Bankruptcy Code) of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Interim Order, the DIP Financing, the DIP Loan Documents, the Prepetition Secured Debt Documents or the Prepetition Holdco Loan Documents.

G.     <u>Stipulations Regarding J. Aron Transaction Documents and Inventory Financing Collateral</u>.  Upon entry of the Interim Order, subject to paragraph 42, the Debtors acknowledge, represent, stipulate, and agree as follows and make the releases and waivers set forth below:

(a)     <u>J. Aron Transaction Documents</u>.  LBRM, LBR, LBRO (collectively, the "<u>Transaction Entities</u>") and J. Aron & Company LLC ("<u>J. Aron</u>"), made and entered into Transaction Documents (as defined in the J. Aron Monetization Master Agreement), each originally dated as of March 3, 2020, consisting of, among others (each as amended, amended and restated, supplemented and/or modified from time to time, collectively, the "<u>J. Aron Transaction Documents</u>"):

---

[7] As used in this Interim Order, the term "Prepetition HoldCo Loan Secured Parties" extends only to Prepetition Holdco Loan Secured Parties to the extent they are, as of the date of this Interim Order, a Prepetition Term Lender or an affiliate of a Prepetition Term Lender.  The term specifically does not encompass insiders or affiliates of the Debtors as defined under the Bankruptcy Code.

4823-3938-9938.1

i.    the Supply and Offtake Agreement and the Marketing and Sales Agreement  (the "J. Aron Supply and Offtake Agreement" and the "J. Aron Marketing and Sales Agreement", respectively), by and among LBRM and J. Aron, pursuant to which J. Aron agreed to purchase and sell crude oil, crude oil blends, fuel oil, naphtha, debutanized natural gasoline and certain other feedstocks (each as more fully defined in the J. Aron Monetization Master Agreement (as defined below), the "Feedstock"), and certain refined hydrocarbon products (each as more fully defined in the J. Aron Monetization Master Agreement, the "Product") to LBRM (and LBRM agreed to purchase and sell Feedstock and Product from and to J. Aron, as applicable), and which also governed certain terms of purchases and sales of Feedstock and Product between J. Aron and third parties (including BP Products North America Inc. ("BP")), in each case, subject to additional terms and conditions set forth in the J. Aron Transaction Documents;

ii.    the Monetization Master Agreement (the "J. Aron Monetization Master Agreement") by and among the Transaction Entities and J. Aron, setting forth the general transaction terms, covenants, events of default and certain termination provisions;

iii.    the Financing Agreement (the "J. Aron Financing Agreement"), by and among LBRM and J. Aron, providing for a one-time term loan by J. Aron based on certain catalyst units that contain certain base metals and certain catalyst units that contain certain precious metals, which were, in each case, designed for use in refining or processing activities;

iv.    the Amended and Restated Depositary and Intercreditor Agreement, dated as of March 3, 2020, by and among LBR as Term Borrower, LBRM and LBRO as Term Guarantors, Goldman Sachs Bank USA as Term Administrative Agent, Revolving

13

Administrative Agent and Project Collateral Agent, J. Aron as Inventory Financing Facility Agent and Deutsche Bank Trust Company Americas as Depositary, as amended by that certain Amendment No. 1 to Amended and Restated Depositary and Intercreditor Agreement, dated as of March 10, 2021 ("A&R Depositary and Intercreditor Agreement"). The relative rights (including the respective collateral access and cooperation rights) of the Project Secured Parties, on the one hand, and J. Aron as the Inventory Financing Facility Agent and an Inventory Financing Secured Party (as such terms are defined in the A&R Depositary and Intercreditor Agreement), on the other, are set forth in the A&R Depositary and Intercreditor Agreement.  No J. Aron Secured Obligations (as defined below) are secured by any LBR Collateral under and as defined in the A&R Depositary and Intercreditor Agreement;

v.   the Security Agreement ("J. Aron Security Agreement"), by and between LBRM as Grantor and J. Aron, as secured party, pursuant to which LBRM granted J. Aron a first-priority security interest in and continuing lien (the "J. Aron Liens") on the "Collateral" under and as defined in the J. Aron Security Agreement ("Inventory Financing Collateral") which corresponds to the defined term "Inventory Financing Collateral" under and as defined in the A&R Depositary and Intercreditor Agreement.  Under the J. Aron Security Agreement and J. Aron Perfection Documents (as defined below), the Secured Obligations under and as defined in the J. Aron Security Agreement (the "J. Aron Secured Obligations") are secured by a perfected, first-priority security interest in and continuing lien on the Inventory Financing Collateral;

vi.   that certain UCC financing statement (with LBRM as debtor and J. Aron as secured party) that was filed with the U.S. Virgin Islands Office of the Lieutenant

14

Governor on March 5, 2020 (Filing No. 20200000134) and that certain UCC financing statement (with LBRM as debtor and J. Aron as secured party) that was filed with the Washington, D.C. Record of Deeds on March 4, 2020 (Filing No. 2020030037) (collectively, the "J. Aron Financing Statements");

vii.    that certain Deposit Account Control Agreement, dated as of March 3, 2020, among LBRM as Grantor, Oriental Bank as Depositary Bank and J. Aron as Secured Party  (the "J. Aron DACA", and together with the A&R Depositary and Intercreditor Agreement and the J. Aron Financing Statements, collectively, the "J. Aron Perfection Documents");

viii.    that certain Subordinated Guarantee, made by LBR and LBRO in favor of J. Aron, dated as of March 3, 2020 ("Subordinated Guarantee"), each of LBR and LBRO jointly and severally guaranteed LBRM's payment obligations under the J. Aron Transaction Documents as and when due ("Guaranteed Obligations"), subject to the terms of the "Terms of Subordination" under and as defined therein, which provide that, among other things, the Guaranteed Obligations are subordinated in right of payment to the prior payment in full in cash of all Secured Obligations under and as defined in the A&R Depositary and Intercreditor Agreement; and

ix.    additional agreements related to the supply, marketing, storage, the initial sale of Feedstock and Product by LBRM to J. Aron and other transactions contemplated by the J. Aron Supply and Offtake Agreement, the J. Aron Marketing and Sales Agreement, the J. Aron Financing Agreement and the J. Aron Monetization Master Agreement.

(b)      J. Aron's IFF Property.  J. Aron owns all right, title and interest in the IFF Property (as defined in the A&R Depositary and Intercreditor Agreement), which consists of Feedstock and Product owned by J. Aron.  No Debtor has any right, title, or interest in the IFF Property, and accordingly, the IFF Property is not property of the estate under section 541 of the Bankruptcy Code.

(c)      J. Aron Termination.  On June 25, 2021 (the "J. Aron Early Termination Date"), as a result of certain events of default that had occurred and were continuing in respect of LBRM, LBR and LBRO, J. Aron properly and validly exercised its right pursuant to the J. Aron Transaction Documents of declaring an early termination date whereby, among other things, all commitments of J. Aron to provide any intermediation or to purchase or sell Feedstock or Products were terminated, all loans under the Financing Agreement became immediately due and payable and all of the obligations of the Transaction Entities under the J. Aron Transaction Documents (other than that certain Terminal Services Agreement (Included Locations), dated as of March 3, 2020, by and among LBT, LBRM and J. Aron) became due and payable on June 25, 2021.  As a result of such early termination, pursuant to the J. Aron Supply and Offtake Agreement and as set forth in certain other of the J. Aron Transaction Documents, J. Aron has the right to liquidate and has commenced the liquidation of its own IFF Property.

(d)      J. Aron Safe Harbor Agreements. J. Aron is a "forward contract merchant" (as such term is defined in the Bankruptcy Code and used in section 556 of the Bankruptcy Code) and each purchase and sale agreed to under the Safe Harbor Agreements (as defined in the J. Aron Monetization Master Agreement, collectively, the "Safe Harbor Agreements") constitutes a "forward contract" (as such term is defined in the Bankruptcy Code and used in Section 556 of the Bankruptcy Code); (b) J. Aron is a "master netting agreement participant" and each Safe Harbor

4823-3938-9938.1

Agreement constitutes a "master netting agreement" for all purposes as each such term is defined in sections 101(38A) and 101(38B) of the Bankruptcy Code and as used in Section 561 of the Bankruptcy Code; (c) J. Aron's, as the Non-Defaulting Party, right to liquidate, collect, net and set off rights and obligations under the Safe Harbor Agreements, and liquidate the Safe Harbor Agreements is not stayed, avoided, or otherwise limited by the Bankruptcy Code, including sections 362(a), 547, 548 or 553 thereof, and J. Aron is entitled to the rights, remedies and protections afforded by and under, among other sections, sections 362(b)(6), 362(b)(17), 362(b)(27), 546(e), 546(g), 546(j), 548(d), 553, 556, 560, 561 and 562 of the Bankruptcy Code.

(e)     All of the Debtors' cash, including any cash in all deposit accounts and collection accounts, wherever located, comprising proceeds of or otherwise arising from or relating to the Inventory Financing Collateral (excluding Margin) constitutes Cash Collateral of J. Aron.

(f)     <u>Enforceability of J. Aron Liens and J. Aron Secured Obligations</u>. (i) The J. Aron Liens on the Inventory Financing Collateral are valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, J. Aron for fair consideration and reasonably equivalent value, (ii) the J. Aron Transaction Documents are fully enforceable in accordance with their terms; (iii) the J. Aron Liens were senior in priority over any and all other liens on the Inventory Financing Collateral, subject only to liens senior by operation of law or otherwise permitted by the J. Aron Transaction Documents (solely to the extent any such permitted liens were valid, properly perfected, nonavoidable, and senior in priority to the J. Aron Liens as of the Petition Date); (iv) the J. Aron Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the applicable Debtors enforceable in accordance with the terms of the applicable J. Aron Transaction Documents; (v) no offsets, setoffs, recoupments, challenges, objections, defenses, "claims" (as defined in the Bankruptcy Code), impairment, cross-claims,

counterclaims, or causes of action or any other challenge of any kind or nature by any person or entity to any of the J. Aron Liens or J. Aron Secured Obligations exist, and no portion of the J. Aron Liens or J. Aron Secured Obligations is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, attachment, reduction, recovery or subordination (whether equitable, contractual, or otherwise) under or pursuant to the Bankruptcy Code or applicable non-bankruptcy law or principles of equity or any other applicable domestic or foreign law or regulation by any person or entity; and (vi) the Debtors, each for itself and its estate, irrevocably waive, discharge, and release any right to challenge or contest any of the J. Aron Secured Obligations or J. Aron Liens, the priority of such obligations and liens, and the scope, extent, validity, non-avoidability, priority, enforceability, seniority, perfection, or extent of the J. Aron Liens and J. Aron Secured Obligations.

(g)    Outstanding J. Aron Secured Obligations.  As of the Petition Date, the applicable Debtors were indebted to J. Aron, without objection, defense, counterclaim or offset of any kind, in an amount not less than $24,968,754.95 in principal amount of loans outstanding under the J. Aron Financing Agreement.  In addition, J. Aron has commenced the process of liquidating all IFF Property in accordance with the terms of the Safe Harbor Agreements and the J. Aron Monetization Master Agreement and, if J. Aron is unable to liquidate such IFF Property and/or incurs losses or costs as a result of such liquidation and termination of J. Aron's rights and obligations under the Safe Harbor Agreements (including any Forward Contract Settlement Amount (as defined in the J. Aron Supply and Offtake Agreement)), the Debtors would be liable and owe to J. Aron, without objection, defense, counterclaim or offset of any kind, an aggregate amount of not less than such aggregate losses or costs, taking into account any gains, incurred or realized by J. Aron as a result of such liquidations and terminations with respect to the J. Aron

Transaction Documents.  Given that the liquidation of J. Aron's IFF Property has only recently commenced, the S&O Settlement Amount (as defined in the J. Aron Supply and Offtake Agreement) cannot be determined at this time.  Further, under the J. Aron Transaction Documents, the applicable Debtors are also liable to and owe J. Aron accrued (both before and after the Petition Date) and unpaid interest, fees, expenses and all other obligations under the J. Aron Transaction Documents, including attorneys', accountants', consultants', appraisers' and financial and other advisors' fees that are chargeable or reimbursable under the J. Aron Transaction Documents, plus Make-Whole Amounts (as defined in the J. Aron Monetization Master Agreement).

H.     <u>Definitions</u>.  The Revolver Secured Obligations, the Prepetition Term Obligations, and the J. Aron Secured Obligations are referred to collectively herein as the "<u>Prepetition Secured Obligations</u>."  The Prepetition Debt Liens and the J. Aron Liens are referred to collectively herein as the "<u>Prepetition Liens</u>."  The Prepetition Debt Collateral and the Inventory Financing Collateral are referred to collectively herein as the "<u>Prepetition Collateral</u>."  The Revolver Transaction Documents, the Prepetition Term Documents, and the J. Aron Transaction Documents, as those terms are defined herein or in the Motion, are referred to collectively herein as the "<u>Prepetition Secured Documents</u>."   The Prepetition Agents (as defined herein), Prepetition Secured Lenders and J. Aron are referred to collectively herein as the "<u>Prepetition Secured Parties</u>."

I.     <u>Stipulations Regarding Prepetition Secured Documents and the Prepetition Holdco Loan Documents</u>. Upon entry of the Interim Order, subject to paragraphs J and 42, the Debtors acknowledge, represent, stipulate, and agree as follows and make the releases and waivers set forth below:

(a)     <u>No Control</u>.  The Prepetition Secured Parties and the Prepetition Holdco Loan Secured Parties do not control the Debtors or their properties or operations or have the

authority to determine the manner in which the Debtors' operations are conducted, and each of the Prepetition Secured Parties and the Prepetition Holdco Loan Secured Parties is not a control person or insider (as defined in the Bankruptcy Code) of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to, or arising from any of the Prepetition Secured Documents or the Prepetition Holdco Loan Documents.

(b)     <u>No Claims, Causes of Action</u>.  As of the date hereof, there exist no claims or causes of action against the Prepetition Secured Parties or the Prepetition Holdco Loan Secured Parties arising from, related to or connected with any of the Prepetition Secured Documents or the Prepetition Holdco Loan Documents that may be asserted by the Debtors.

(c)     <u>Release</u>.  The Debtors forever and irrevocably release, waive, discharge, and acquit each of the Prepetition Secured Parties and the Prepetition Holdco Loan Secured Parties and each of their respective officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "<u>Prepetition Secured Releasees</u>") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened as of the date hereof including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, existing as of the date of this Interim Order, arising out of, in connection with, or relating to any of the Prepetition Secured Documents or the Prepetition Holdco Loan Documents, and ancillary documentation, guarantees, security

20

documentation and collateral documents executed in support of the foregoing, the Prepetition Secured Obligations, the Prepetition Secured Holdco Debt Obligations, the Prepetition Liens, the Prepetition Holdco Financing Liens, J. Aron's title to or ownership of, or other rights in, the IFF Property and rights to setoff and net Margin (as defined in the J. Aron Monetization Master Agreement), and ancillary documentation, guarantees, security documentation and collateral documents executed in support of the foregoing or the transactions contemplated thereunder including, without limitation, (i) any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), so-called "lender liability" claims, counterclaims, cross-claims, recoupment, defenses, disallowance (whether equitable or otherwise), impairment, or any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation by any person or entity, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the Prepetition Secured Parties or the Prepetition Holdco Loan Secured Parties.

J.　　Mezzanine Financing, Subordinated Notes, Prepetition Holdco Loan, and other Insider Obligations.  Certain Prepetition Holdco Loan Secured Parties and Lenders are insiders or affiliates of the Debtors.  Nothing herein shall constitute a finding or ruling by this Court in favor of any affiliate (as defined in the Bankruptcy Code) or other insider (as defined in the Bankruptcy Code) of any Debtor (an "Insider Creditor") that any obligation of any Debtor to such Insider Creditor ("Insider Obligation"), including any Prepetition Holdco Secured Debt Obligations, LBV Subordinated Notes, or LBRH II Holdco Loan held by an Insider Creditor, is valid, senior, enforceable, prior, perfected, or non-avoidable. Nothing herein shall constitute a finding of fact, admission, or stipulation in favor of, or enforceable by, any Insider Creditor.  No Insider Creditor

21

shall be entitled to any proceeds or other distributions on account of any Insider Obligation or any adequate protection absent further order of the Court.  Moreover, nothing shall prejudice the rights of any party-in-interest, including but not limited to the Debtors and the Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Insider Obligation and/or related security interests held by an Insider Creditor.  In addition, nothing herein shall be deemed a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any "equities of the case" under section 552(b) of the Bankruptcy Code, or (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to any Insider Obligations, in each case after payment in full of the DIP Obligations and the Prepetition Secured Obligations.  No Insider Creditor shall be entitled to any release described herein.  Nothing in this paragraph shall affect or impact the Prepetition Secured Obligations or Prepetition Holdco Secured Debt Obligations that are not owned by any Insider Creditor, any liens securing such obligations, or any adequate protection granted to the Prepetition Secured Creditors.

K.   <u>Necessity of DIP Financing</u>. The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other financing under sections 364(c) or (d) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Loan Documents.  A loan facility in the amount provided by the DIP Loan Documents is not available to the Debtors without (i) granting the DIP Agent, for the benefit of the DIP Secured Parties, superpriority claims and priming liens and security interests, pursuant to sections 364(c)(1), (2), (3), and 364(d) of the Bankruptcy Code, as provided in this Interim Order and the DIP Loan Documents and (ii) providing the Prepetition Secured Parties adequate protection as provided in this Interim Order.  After considering all alternatives, the Debtors have concluded, in the exercise of their prudent business judgment, that the credit facility

4823-3938-9938.1

provided under the DIP Loan Documents and the authorization to use Cash Collateral to be provided by the Prepetition Secured Parties represents the best and only working capital financing available to the Debtors at this time. The Debtors have been unsuccessful in their attempts to find any alternative financing. Additionally, the terms of the DIP Financing and the use of Cash Collateral are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties. The Prepetition Secured Parties have consented to the entry of this Interim Order after extensive negotiations and would not have consented to entry of this Interim Order absent each of the bargained for protections for the Prepetition Secured Parties set forth in this Interim Order.

L.     <u>Purpose of DIP Financing</u>. The Debtors require the DIP Financing described in the Motion and as expressly provided in the DIP Loan Documents and this Interim Order to: (i) pay costs, fees and expenses associated with or payable under the DIP Financing under the terms of this Interim Order; (ii) pay professional fees subject to the Approved Budget (as defined below); (iii) provide ongoing working capital requirements of the Debtors and to pay fees, costs, expenses and other administrative expenses relating to the Chapter 11 Cases (including payments related to Adequate Protection Obligations (as defined below)), in each case, subject to any necessary Court approvals and consistent with the Approved Budget subject to any Budget Variances (defined below); and (iv) make the currently identified capital expenditures and other payments of postpetition payables as permitted under the DIP Loan Documents and this Interim Order, in each case subject to the conditions as set forth herein and in the DIP Loan Documents and this Interim Order and consistent in all material respects with the Approved Budget and any Budget Variances.

M.     <u>Adequate Protection</u>. The Prepetition Secured Parties are entitled to receive adequate protection to the extent of any diminution in value of their interests in their prepetition

collateral (including Cash Collateral) pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code resulting from the sale, lease, or use by the Debtors (or other decline in value) of the prepetition collateral (including Cash Collateral), the relief granted herein in favor of the DIP Secured Parties, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code from and after the Petition Date (the "Adequate Protection Obligations"). Pursuant to sections 361, 363, and 507(b) of the Bankruptcy Code, as adequate protection, the Prepetition Secured Parties shall receive payment of their reasonable and documented professional fees, postpetition replacement liens, adequate protection payments and superpriority adequate protection claims in accordance with the terms of this Interim Order. Furthermore, the Prepetition Secured Parties will be entitled to certain reporting from the Debtors (including, among other things, copies of all reporting provided to the DIP Secured Parties) in accordance with the terms of this Interim Order. The adequate protection provided to the Prepetition Secured Parties herein is consistent with the Bankruptcy Code. The consent of the Prepetition Secured Parties to the use of Cash Collateral and the consent of the Prepetition Secured Parties to the priming of their liens by the DIP Liens (i) does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition Secured Parties that their respective interests in the Prepetition Collateral are adequately protected pursuant to this Interim Order or otherwise, and (ii) is conditioned upon entry of this Interim Order and does not and shall not be deemed to constitute consent other than pursuant to this Interim Order and the terms set forth herein. The adequate protection provided herein and other benefits and privileges contained herein are necessary (a) in order to protect the Prepetition Secured Parties from any diminution in value of their Prepetition Collateral and (b) to obtain the foregoing consents and agreements. Nothing herein shall prevent the Prepetition Secured Parties from seeking additional adequate protection to

the extent permitted by law or to the extent permitted in the Prepetition Secured Documents, as applicable.  For the avoidance of doubt, this Interim Order shall be deemed to be a request by the Prepetition Secured Parties pursuant to section 363(e) of the Bankruptcy Code.

N.     <u>Approved Budget.</u>  Attached here as **<u>Exhibit B</u>** is a budget setting forth the Debtors' anticipated cash receipts and expenditures for the next three (3) weeks (the "<u>Initial Approved Budget</u>").  The "<u>Approved Budget</u>" shall mean the Initial Approved Budget, together with such modifications and amendments thereto as may be agreed to in form and substance by the DIP Agent and the ad hoc group of lenders under the Term Credit Agreement (the "<u>Ad Hoc Term Lender Group</u>"), the Term Administrative Agent, the Revolving Administrative Agent, and J. Aron (collectively with the Ad Hoc Term Lender Group, the Term Administrative Agent and Revolving Administrative Agent, and the Project Collateral Agent, the "<u>Prepetition Agents</u>"), subject to the conditions set forth in paragraph 26 hereof, which shall reflect the Debtors' good-faith projection of all weekly cash receipts and disbursements in connection with the operation of the Debtors' business during such three-week period, delivered pursuant to the terms of the DIP Loan Documents, delivered by the Debtors to counsel for the DIP Agent, the DIP Lenders and the Prepetition Agents.  The DIP Agent and the Prepetition Agents hereby expressly reserve all of their rights with respect to the approval of any budget covering the period after the expiration of the Initial Approval Budget, and nothing contained herein shall be deemed or construed to constitute the consent of any of the DIP Agent or the Prepetition Agents to any such budget.  The Approved Budget is an integral part of this Interim Order and has been relied upon by the DIP Secured Parties to provide DIP Financing and by the Prepetition Secured Parties to permit the use of Cash Collateral and consent to this Interim Order.

O.   <u>Good Cause</u>.   Based upon the record presented to the Court by the Debtors, it appears that the ability of the Debtors to obtain sufficient working capital and liquidity under the DIP Loan Documents and to use Cash Collateral is vital to the Debtors and the Debtors' estates and creditors.   The Debtors reasonably believe that the liquidity to be provided under the DIP Loan Documents and from the use of Cash Collateral will enable the Debtors to continue to safely and efficiently suspend the operation of their refinery facility, preserve and maximize the value of their businesses, and provide the Debtors with sufficient funding to pursue the necessary proceedings to restructure the Debtor's outstanding obligations.   Good cause has, therefore, been shown for the relief sought in the Motion on an interim basis and for scheduling the Final Hearing.

P.   <u>Good Faith</u>.   The DIP Secured Parties, the Prepetition Secured Parties and each of their respective affiliates, subsidiaries, parents, officers, shareholders, directors, employees, investment advisers and sub-advisers, attorneys, and agents have acted in good faith in negotiating the terms of the DIP Loan Documents and this Interim Order.   The DIP Financing, the DIP Loan Documents and the use of Cash Collateral have been negotiated in good faith and at arm's length among the Debtors, the DIP Secured Parties and the Prepetition Secured Parties, and all of the obligations and indebtedness arising under, in respect of or in connection with the DIP Financing, the DIP Loan Documents and this Interim Order shall be deemed to have been extended by each of the DIP Secured Parties in accordance with the DIP Loan Documents, and the Prepetition Secured Parties' shall be deemed to have consented to the use of Cash Collateral, in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Obligations, the DIP Liens, the DIP Superpriority Claims and the Adequate Protection Obligations shall be entitled to the full protection of section 364(e) of the Bankruptcy Code and the terms, conditions, benefits,

and privileges of this Interim Order regardless of whether this Interim Order is subsequently reversed, vacated, modified, or otherwise is no longer in full force and effect or the Chapter 11 Cases are subsequently converted or dismissed.

Q.      Consideration.  The Debtors will receive and have received fair consideration and reasonably equivalent value in exchange for access to the DIP Financing, and all other financial accommodations provided under the DIP Financing, the DIP Loan Documents and this Interim Order.

R.      No Liability to Third Parties.  The Debtors stipulate and this Court finds that in making decisions to advance loans to the Debtors, in administering any loans, in permitting the Debtors to use Cash Collateral, in accepting the Approved Budget or any future Approved Budget or in taking any other actions permitted by this Interim Order or the DIP Loan Documents, none of the DIP Secured Parties or Prepetition Secured Parties shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors.

S.      Section 552.  Subject to entry of a Final Order, in light of the subordination of their liens and super-priority administrative claims (i) in the case of the DIP Secured Parties, to the Carve Out and the Permitted Prior Liens, and (ii) in the case of the Prepetition Secured Parties, to the Carve Out and the DIP Liens, each of the DIP Secured Parties and the Prepetition Secured Parties is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply to any of the DIP Secured Parties or the Prepetition Secured Parties with respect to the proceeds, products, rents, issues or profits of any of the DIP Collateral or the Prepetition Collateral, and no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in

27

bankruptcy or other proceedings under the Bankruptcy Code, may be charged against proceeds, product, offspring or profits from any of the DIP Collateral or the Prepetition Collateral under section 552(b) of the Bankruptcy Code.  Subject to entry of the Final Order, the Debtors shall be deemed to have irrevocably waived, and to have agreed not to assert, any claim or right under section 552 of the Bankruptcy Code seeking to avoid the imposition of the DIP Liens, Prepetition Liens or the Prepetition Secured Parties' replacement liens granted under this Interim Order (the "Adequate Protection Liens") on any property acquired by any of the Debtors or any of their estates or, subject to the Carve Out, seeking to surcharge any costs or expenses incurred in connection with the preservation, protection or enhancement of, or realization by, the DIP Secured Parties or the Prepetition Secured Parties upon the DIP Collateral or the Prepetition Collateral, as applicable.

T.     Immediate Entry of Interim Order.  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  The permission granted herein to enter into the DIP Loan Documents, obtain funds thereunder and use Cash Collateral on an interim basis in accordance with the Approved Budget is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and loss of valuable assets and rights of the Debtors' estates.  This Court concludes that entry of this Interim Order is in the best interests of the Debtors and the Debtors' estates and creditors as its implementation will, among other things, allow for the continued flow of supplies and services to the Debtors necessary to enable the Debtors to safely and efficiently administer their refinery facility during the pendency of these Chapter 11 Cases.  Based upon the foregoing findings, acknowledgements, and conclusions; and upon the record made before this Court at the Interim Hearing; and good and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED:**

1.        <u>Disposition</u>.  The Motion is granted on an interim basis to the extent set forth herein, the DIP Financing described herein is authorized and approved, and the use of Cash Collateral and provision of adequate protection is authorized, in each case subject to the terms of this Interim Order and the DIP Loan Documents.  Any objections to the Motion that have not previously been withdrawn, waived, settled, or resolved and all reservations of rights included therein are hereby denied and overruled on their merits.  This Interim Order shall constitute findings of fact and conclusions of law.

2.        <u>Effectiveness</u>.  Subject to the terms hereof, this Interim Order shall be immediately valid upon signing by the Court and effective and enforceable upon the date entered on the docket in the Chapter 11 Cases (the "<u>Interim Order Entry Date</u>").

3.        <u>Authorization of the DIP Financing and DIP Loan Documents</u>.

(a)        The Debtors are hereby authorized to execute and enter into the DIP Loan Documents.  The DIP Loan Documents and this Interim Order shall govern the financial and credit accommodations to be provided to the Debtors by the DIP Lenders in connection with the DIP Financing.

(b)        The Borrower is hereby authorized on an interim basis to borrow, and the Guarantors are hereby authorized on an interim basis to guarantee, up to the principal amount of $5.5 million (plus such additional principal amounts due solely to payment of interest in-kind), pursuant to the terms of the DIP Loan Documents and this Interim Order and at the times set forth in the Approved Budget, all of which shall be used by the Debtors as expressly permitted by the DIP Loan Documents, this Interim Order, the Approved Budget and any Budget Variances.  The Debtors are authorized to use proceeds of the DIP Financing in accordance with this Interim Order and the Approved Budget in an amount that would not cause either: (i) all line items other than

4823-3938-9938.1

Professional Fees from varying from the applicable Approved Budget by more than twenty percent (20%) for each week during any budget period or ten percent (10%) on a cumulative basis for that portion of the budget period then ended; (ii) with respect to Professionals Fees, the Debtors may vary from the applicable budget by no more than ten percent (10%) on a cumulative basis for that portion of the Budget, and (iii) actual cash receipts, if any, received by the Borrower may not be less than ninety percent (90%) of the amounts set forth in the Budget (a "Budget Variance").  The variance reports showing budget to actual and any variance shall be delivered by the Debtors to the DIP Agent and counsel to each of the Prepetition Agents.

(c)     In furtherance of the foregoing and without further approval of this Court, but subject to the terms of this Interim Order, the Debtors are authorized to, and, if so required under the terms of the DIP Loan Documents, directed to perform all acts to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all related fees and expenses, that may be required or necessary for the Debtors' performance of their obligations under the DIP Financing, including, without limitation:

i.     the execution, delivery, and performance of the DIP Loan Documents, including, without limitation, any security and pledge agreements, and any mortgages contemplated thereby;

ii.     subject to paragraph 10 hereof, the execution, delivery and performance of one or more amendments, waivers, consents, or other modifications to and under the DIP Loan Documents, in each case in such form as agreed among the Debtors and the required other parties as set forth in more detail in paragraph 10 below;

iii.      the non-refundable payment of the fees referred to in the DIP Loan Documents, including the fees of the DIP Agent, and, subject to paragraph 8, costs and expenses payable under the DIP Loan Documents;

iv.      make payments on account of the Adequate Protection Obligations provided for in this Interim Order; and

v.      the performance of all other acts required under or in connection with the DIP Loan Documents.

4.      <u>DIP Obligations</u>.  This Interim Order and the DIP Loan Documents shall evidence the DIP Obligations, which DIP Obligations shall, upon execution of the DIP Loan Documents, be valid, binding and enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any estate representative or trustee appointed in any of the Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing, or upon the dismissal of any of the Chapter 11 Cases or any such successor cases (collectively, the "<u>Successor Cases</u>"), and their creditors and other parties-in-interest, in each case, in accordance with the terms of this Interim Order and the DIP Loan Documents.  All obligations incurred, payments made, and transfers or grants of security and liens set forth in this Interim Order and the DIP Loan Documents by any Debtor are granted to or for the benefit of the Debtors for fair consideration and reasonably equivalent value, and are granted contemporaneously with the making of the loans and commitments and other financial accommodations secured thereby.  No obligation, payment, transfer, or grant of security under the DIP Loan Documents or this Interim Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law, or subject to any avoidance, reduction, setoff, recoupment, offset,

4823-3938-9938.1

recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance (whether equitable or otherwise), impairment, or any other challenges under the Bankruptcy Code or any other applicable foreign or domestic law or regulation by any person or entity.

     5.    <u>Carve-Out</u>.  The Debtors' obligations to the DIP Secured Parties and the liens, security interests and superpriority claims granted herein and/or under the DIP Loan Documents, including the DIP Liens, the DIP Superpriority Claims, and the Adequate Protection Obligations, shall be subject and subordinate to the Carve-Out.  "<u>Carve-Out</u>" shall mean (i) fees and expenses incurred by bankruptcy professionals (x) whose retention has been approved by the Bankruptcy Court which are incurred as of the delivery of the Carve-Out Trigger Notice (as defined below) and (y) provided for in the Approved Budget; (ii) fees and expenses in an amount not to exceed $375,000 incurred from and after the delivery of a Carve-Out Trigger Notice (as defined below) by bankruptcy professionals whose retention has been approved by the Bankruptcy Court (the "<u>Post-Termination Fee Carve-Out</u>"); and (iii) fees owed pursuant to 28 U.S.C. §1930 or fees owed the clerk of the Bankruptcy Court.  "<u>Carve-Out Trigger Notice</u>" shall mean the written notice, including by email, delivered by the DIP Agent (at the direction of the DIP Lenders) or, after the DIP Financing has been indefeasibly paid in full and in cash (a "<u>DIP Repayment Event</u>"), by any of the Prepetition Agents, to the Debtors, their counsel, the U.S. Trustee, and counsel to the Committee, and prior to a DIP Repayment Event, counsel to the Prepetition Agents, which notice may be delivered following the occurrence and during the continuation of an Event of Default or the Termination Date in accordance with the terms of the DIP Loan Documents or, following a DIP Repayment Event, following the occurrence and during the continuation of a Cash Collateral Termination Event (as defined below) or the Cash Collateral Termination Date (as defined below).

Notwithstanding the foregoing, the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against any of the DIP Secured Parties, the Prepetition Secured Parties or any of their respective officers, directors, employees, agents, advisers and counsel, including, without limitation, challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the (i) DIP Loan Documents in favor of the DIP Agent, for the benefit of the DIP Secured Parties or (ii) the Prepetition Secured Documents, for the benefit of the Prepetition Secured Parties, as applicable. For the avoidance of doubt, until the delivery of a Carve-Out Trigger Notice, the Borrower shall be permitted to pay fees and expenses incurred by bankruptcy professionals whose retention has been approved by the Bankruptcy Court as the same shall become due and payable, subject to the terms and conditions set forth in the DIP Loan Documents and this Interim Order (the payment of which shall not reduce the Post-Termination Fee Carve-Out).  Notwithstanding anything to the contrary herein, in the DIP Loan Documents, or in any loan or financing documents, the Carve-Out shall be senior to all liens and claims securing the DIP Obligations, any prepetition secured obligations, and any and all other forms of adequate protection, liens or claims securing the DIP Obligations or any prepetition secured obligations.  For the avoidance of doubt, no IFF Property or proceeds thereof, and, until the Discharge of Inventory Financing Obligations (as defined in the A&R Depositary and Intercreditor Agreement), no Inventory Financing Collateral or proceeds thereof, shall be used to fund the Carve-Out and the Carve Out shall not be secured by the Inventory Financing Collateral or IFF Property.  None of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or

4823-3938-9938.1

disbursements of any professional person whose retention is approved by the Bankruptcy Court in connection with the Chapter 11 Cases or any Successor Cases.  Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any professional person whose retention is approved by the Bankruptcy Court or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.  None of the proceeds of the DIP Collateral or the DIP Loans shall be used in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Secured Parties or their respective officers, directors, employees, agents, advisors and counsel, including with respect to any of the liens created in connection with the DIP Financing.  In addition, none of the proceeds of the DIP Collateral, the DIP Loans, or the Prepetition Collateral shall be used in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Prepetition Secured Parties or their respective officers, directors, employees, agents, advisors and counsel, including with respect to any of the liens created in connection with the Prepetition Secured Documents (provided that, notwithstanding anything to the contrary herein, the Committee may use proceeds of the DIP Financing and/or the DIP Collateral (including Cash Collateral) to investigate but not to prosecute (i) the claims and liens of the Prepetition Secured Parties, and (ii) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties up to an aggregate cap of $50,000 (the "Committee Investigation Budget")).

6.      DIP Lender Superpriority Claim.  Subject to the Carve-Out and the Aron Rights (as defined below), and effective as of the Interim Order Entry Date, the DIP Secured Parties are hereby granted, pursuant to sections 364(c)(1) and 364(e) of the Bankruptcy Code, an allowed

superpriority administrative expense claim in each of the Chapter 11 Cases or any Successor Cases (the "DIP Superpriority Claims") on account of the DIP Obligations with priority over any and all other administrative expenses, adequate protection claims, diminution claims, and all other claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, which allowed claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code.  The DIP Superpriority Claims shall be payable from and have recourse to all pre- and postpetition property of the Debtors and their estates and all proceeds thereof, excluding Avoidance Actions (as defined below) but, subject to entry of the Final Order, including, solely to the extent that all other DIP Collateral is insufficient to satisfy the DIP Obligations, Avoidance Proceeds (as defined below).

7.    DIP Liens.

(a)    As security for the DIP Obligations, effective and perfected as of the Interim Order Entry Date, the following security interests and liens, hereby are granted by the Debtors to the DIP Agent for the benefit of the DIP Lenders on the DIP Collateral as defined herein.  The "DIP Collateral" shall mean all property of the Debtors of any kind or nature whatsoever, including, but not be limited to, (i) all present and after acquired property (whether tangible, intangible, real, personal or mixed) of the Debtors, wherever located, including, without limitation, all accounts, inventory, equipment, capital stock in subsidiaries, investment property, instruments, chattel paper, real estate, leasehold interests, contracts, patents, copyrights, trademarks and other

general intangibles, any claims and causes of action of the Debtors, including claims under section 549 of the Bankruptcy Code; (ii) any commercial tort claims and causes of action of any of the Debtors against any directors or officers of the Debtors as well as including any proceeds of, or property recovered in connection with, any successful claims and causes of action against any directors or officers of the Debtors; and (iii) excluding (x) the IFF Property, and (y) any claims and causes of action of the Debtors under sections 502(d), 544, 545, 547, 548, 550, and 553 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or other applicable law (collectively, the "Avoidance Actions"), but, subject to entry of the Final Order, including, solely to the extent that all other DIP Collateral is insufficient to satisfy the DIP Obligations secured by the DIP Liens (as defined below), any proceeds of, or property recovered in connection with, any successful Avoidance Action (whether by judgment, settlement or otherwise, and unencumbered or not, the "Avoidance Proceeds").  All such liens on and security interests in the DIP Collateral granted to the DIP Secured Parties, pursuant to this Interim Order or the DIP Loan Documents (collectively, the "DIP Liens"), are as follows:

        i.        Priming Lien Pursuant to Section 364(d)(1).  A first priority, priming security interest in and lien on, pursuant to section 364(d)(1) of the Bankruptcy Code, all encumbered DIP Collateral (the "Section 364(d)(1) Liens"), which Section 364(d)(1) Liens shall be senior to any existing liens or claims, including, but not limited to, the Prepetition Liens of the Prepetition Secured Parties or postpetition liens granted to the Prepetition Secured Parties (collectively, the "Prepetition Secured Parties Liens"), and subject and junior only to (i) the Carve-Out, (ii) valid, perfected, and non-avoidable liens on property of a Debtor that are in existence on the Petition Date and are senior in priority to any of the Prepetition Secured Parties Liens, (iii) all

liens, recoupment and setoff rights held by J. Aron (the "Aron Rights" and collectively with clause (ii), the "Permitted Prior Liens");

        ii.      First Priority Lien on Unencumbered Property Pursuant to Section 364(c)(2). A first priority security interest in and lien on, pursuant to section 364(c)(2) of the Bankruptcy Code, all unencumbered DIP Collateral (the "Section 364(c)(2) Liens"), which Section 364(c)(2) Liens shall be subject only to the Carve-Out;

        iii.      Junior Lien on Inventory Financing Collateral Pursuant to Section 364(c)(3). A valid, binding, continuing, enforceable, fully-perfected, nonavoidable, automatically and properly perfected junior lien on and security interest in all Inventory Financing Collateral, which lien and security interest shall be subordinate and subject to the Aron Rights and subject to the Carve-Out;

        iv.      Junior Lien on Certain Encumbered Property Pursuant to Section 364(c)(3). A junior security interest in and lien on, pursuant to section 364(c)(3) of the Bankruptcy Code, all other DIP Collateral that is subject to a Permitted Prior Lien (the "Section 364(c)(3) Liens,") which Section 364(c)(3) Liens also shall be subject to the Carve-Out;

        v.      Liens Senior to Certain Other Liens. The DIP Liens shall not be subject or subordinate to (a) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (b) any liens arising after the Petition Date including, without limitation, liens granted under prior orders of the Court, or any liens or security interests granted in favor of any federal, state, municipal, or other governmental unit, commission, board, or court for any liability of the Debtors.

        (b)      The DIP Liens shall be effective and perfected upon the Petition Date.

(c)      The DIP Liens shall be and hereby are fully perfected liens and security interests, effective and perfected upon the Petition Date without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements, or other agreements or documents, such that no additional steps need be taken by the DIP Secured Parties to perfect such liens and security interests.  Subject to entry of the Final Order, and subject to applicable non-bankruptcy law, any provision of any lease, agreement, contract, or other instrument or agreement that requires the consent or approval of one or more landlords, licensors, or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for any Debtor to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, shall have no force or effect with respect to the transactions granting the DIP Liens in the Debtor's interest in such fee, leasehold or other interest or other collateral or the proceeds of any assignment, sale or other transfer thereof.

(d)      The DIP Liens, DIP Superpriority Claims, and other rights, benefits, and remedies granted under this Interim Order to the DIP Secured Parties shall continue in the Chapter 11 Cases, any Successor Cases, and following any dismissal of the Chapter 11 Cases, and such liens, security interests, and claims shall maintain their priority as provided in this Interim Order until all the DIP Obligations have been indefeasibly paid in full in cash and completely satisfied and all of the commitments thereunder have been terminated in accordance with the DIP Loan Documents.

8.      <u>Fees and Expenses of DIP Agent and Prepetition Secured Parties</u>.

(a)     Upon entry of this Interim Order, the Debtors shall pay any and all prepetition fees, costs, and expenses incurred by the DIP Agent that were outstanding and unpaid as of the Petition Date, in an amount not to exceed $75,000.

(b)     The Debtors shall, no later than ten (10) days after receipt of a summary statement setting forth the applicable timekeepers, as well as the hours worked by and expenses incurred by such timekeepers, in connection with the Chapter 11 Cases whether incurred before or after the Petition Date (with copies provided via electronic mail to the U.S. Trustee, counsel to the Committee, counsel to the DIP Agent, and counsel to each of the Prepetition Secured Parties), indefeasibly pay or reimburse (i) the DIP Agent for its reasonable and documented fees and out-of-pocket costs, expenses and charges as provided in the Approved Budget (collectively, the "DIP Agent Professional Fees"), including, but not limited to, the reasonable fees, costs, and expenses of Gray Reed & McGraw LLP as counsel to DIP Agent, and any other advisors or professionals retained by the DIP Agent, (ii) the Project Collateral Agent for its reasonable and documented fees and out-of-pocket costs, expenses and charges, including, but not limited to, the reasonable fees, costs, and expenses of outside counsel, and any other advisors or professionals retained by the Project Collateral Agent, (iii) the Revolving Administrative Agent for its reasonable and documented fees and out-of-pocket costs, expenses and charges, including, but not limited to, the reasonable fees, costs, and expenses of outside counsel, and any other advisors or professionals retained by the Revolving Administrative Agent, (iv) J. Aron for its reasonable and documented fees and out-of-pocket costs, expenses and charges, including, but not limited to, the reasonable fees, costs, and expenses of outside counsel, and any other advisors or professionals retained by J. Aron; (v) the Ad Hoc Term Lender Group for its reasonable and documented fees and out-of-pocket costs, expenses and charges, including, but not limited to, the reasonable fees, costs, and

expenses of outside counsel, and any other advisor or professionals retained by the Ad Hoc Term Lender Group; and (vi) the Term Administrative Agent for its reasonable and documented fees and out-of-pocket costs, expenses and charges, including, but not limited to, the reasonable fees, costs and expenses of outside counsel, and any other advisors or professionals retained by the Term Administrative Agent.  The Debtors, the U.S. Trustee, the Committee, the DIP Agent, and each of the Prepetition Secured Parties may object to the reasonableness of the fees, costs, and expenses included in any such professional fee invoice; *provided* that any such objection shall be barred and deemed waived unless filed with this Court and served on the applicable professional by 12:00 Noon, prevailing Central Time, on the date that is no later than ten (10) days after the objecting party's receipt of the applicable professional fee invoice.  If such objection is timely received, the Debtors shall promptly pay the portion of such invoice not subject to such objection, and this Court shall determine any such objection unless otherwise resolved by the applicable parties.  Any hearing on an objection to payment of any fees, costs, and expenses set forth in a professional fee invoice shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses which are the subject of such objection and whether the DIP Agent, Revolving Administrative Agent, J. Aron, Ad Hoc Term Lender Group, or Term Administrative Agent, as the case may be, is entitled to such fees, costs and expenses under this Interim Order.  For the avoidance of doubt, none of the fees, costs, and expenses of the DIP Agent, Revolving Administrative Agent, J. Aron, Ad Hoc Term Lender Group, or Term Administrative Agent, shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.  All fees, costs and expenses payable under the DIP Loan Documents to the DIP Agent shall be included and constitute part of the DIP Obligations and be secured by the DIP Liens.

Notwithstanding anything to the contrary herein, the fees, costs, and expenses of the DIP Agent, Revolving Administrative Agent, J. Aron, Ad Hoc Term Lender Group, and Term Administrative Agent, under and in connection with negotiation and preparation of the DIP Loan Documents, including, without limitation, the legal fees and expenses of any professionals retained by them, shall be earned, non-refundable, and payable out of the interim funding under the DIP Financing and shall not be subject to the notice period described in this paragraph and the recipients of such payments shall be fully entitled to all protections of section 364(e) of the Bankruptcy Code.  For the avoidance of doubt, the Debtors shall be responsible to pay, subject to the procedures outlined in this paragraph, all fees and expenses incurred by the DIP Agent, Revolving Administrative Agent, J. Aron, Ad Hoc Term Lender Group, and Term Administrative Agent, in connection with any action taken in these Chapter 11 Cases including, but not limited to, fees and expenses relating to the DIP Financing and the administration and interpretation of, and the enforcement of remedies under, the DIP Financing and including all due-diligence, including but not limited to printing costs, consultation, travel, and attendance at court hearings, regardless of whether the DIP Financing is consummated.

        9.     <u>Prepetition Secured Parties' Rights and Adequate Protection</u>.

        (a)     <u>Adequate Protection for Prepetition Term Lenders</u>.  As adequate protection for any diminution of the Prepetition Debt Collateral resulting from the subordination of the Term Administrative Agent's Prepetition Debt Liens to the DIP Liens and the other relief granted herein in favor of the DIP Secured Parties, the Debtors' use of Prepetition Collateral (including Cash Collateral), and/or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, and in exchange for the Term Lenders' consent to the priming of the Prepetition Debt Liens by the DIP Liens pursuant to this Interim Order, the Term Administrative Agent shall receive, for

the benefit of Prepetition Term Lenders, adequate protection, including, without limitation, (1) valid and automatically perfected priority replacement liens and security interests in and on all real and personal property of the Debtors and their bankruptcy estates, in each case, subject to the DIP Liens securing the DIP Financing in the same order and priority as existed prepetition, (2) monthly payments to reimburse the reasonable and documented professional fees of the Ad Hoc Term Lender Group, the Term Administrative Agent and Project Collateral Agent in accordance with paragraph 8 of this Interim Order, (3) in lieu of cash payments of interest when and as required under the Prepetition Term Credit Agreement, all accrued and unpaid interest shall, on each applicable date when such interest payments are due under the Prepetition Term Documents, be paid in kind by adding the amount of such accrued interest to the outstanding aggregate principal balance of the term loans, (4) superpriority administrative claims and all of the other benefits and protections allowable under section 507(b) of the Bankruptcy Code, in each of the Chapter 11 Cases or any Successor Cases, with priority as provided therein, to the extent of any diminution in the Prepetition Debt Collateral,  (5) upon entry of this Interim Order, payment of all fees and expenses of the professional advisors of the Ad Hoc Term Lender Group, Term Administrative Agent and Project Collateral Agent that were incurred prior to the Petition Date and that remain unpaid, and (6) an acknowledgement of the unconditional right to credit bid the Prepetition Term Obligations under the Prepetition Term Documents in connection with any sale of Prepetition Debt Collateral.

(b)      Adequate Protection for Revolver Lenders.  As adequate protection for any diminution of the Prepetition Debt Collateral resulting from the subordination of the Revolving Administrative Agent's Prepetition Debt Liens to the DIP Liens and the other relief granted herein in favor of the DIP Secured Parties, the Debtors' use of Prepetition Collateral (including Cash

Collateral), and/or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, and in exchange for the Revolver Lenders' consent to the priming of the Prepetition Debt Liens by the DIP Liens pursuant to this Interim Order, the Revolving Administrative Agent shall receive, for the benefit of the Revolver Lenders, adequate protection, including, without limitation, (1) valid and automatically perfected priority replacement liens and security interests in and on all real and personal property of the Debtors and their bankruptcy estates, in each case, subject to the DIP Liens securing the DIP Financing in the same order and priority as existed prepetition, (2) monthly payments to reimburse the reasonable and documented professional fees of the Revolver Administrative Agent and Project Collateral Agent in accordance with paragraph 8 of this Interim Order, (3) on the last business day of each month, payments in cash to the Revolver Lenders in an amount equal to all interest (other than default interest) accrued under the Revolver Transaction Documents, (4) superpriority administrative claims and all of the other benefits and protections allowable under section 507(b) of the Bankruptcy Code, in each of the Chapter 11 Cases or any Successor Cases, with priority as provided therein, to the extent of any diminution in the Prepetition Debt Collateral, (5) upon entry of this Interim Order, payment of all fees and expenses of the professional advisors of the Revolving Administrative Agent and Project Collateral Agent that were incurred prior to the Petition Date and that remain unpaid, and (6) an acknowledgement of the unconditional right to credit bid the prepetition obligations under the Revolver Transaction Documents in connection with any sale of Prepetition Debt Collateral.

(c)     Adequate Protection for J. Aron.  As adequate protection for any diminution of J. Aron's interests in its Inventory Financing Collateral resulting from the relief granted herein in favor of the DIP Secured Parties, the Debtors' use of J. Aron's Prepetition Collateral (including Cash Collateral), and/or the imposition of the automatic stay pursuant to section 362 of the

43

Bankruptcy Code, J. Aron shall receive adequate protection, including, without limitation, (1) valid and automatically perfected priority replacement liens and security interests in and on all real and personal property of the Debtors and their bankruptcy estates, in each case, subject to the DIP Liens securing the DIP Financing in the same order and priority as existed prepetition, (2) monthly payments to reimburse the reasonable and documented professional fees of J. Aron in accordance with paragraph 8 of this Interim Order, (3) on the last business day of each month payments in cash to J. Aron in an amount equal to all interest (other than default interest) accrued under the J. Aron Transaction Documents, (4) superpriority administrative claims and all of the other benefits and protections allowable under section 507(b) of the Bankruptcy Code, in each of the Chapter 11 Cases or any Successor Cases, with priority as provided therein, to the extent of any diminution in the Inventory Financing Collateral, and (5) upon entry of this Interim Order, payment of all fees and expenses of the professional advisors of J. Aron that were incurred prior to the Petition Date and that remain unpaid, and (6) an acknowledgement of the unconditional right to credit bid the prepetition obligations under the J. Aron Transaction Documents in connection with any sale of Inventory Financing Collateral.

(d)    <u>Reservation of Rights</u>.  The rights of all parties with respect to the appropriate characterization (as payments of principal, payments of interest, or otherwise) of any adequate protection payments made (whether in cash or in kind) in accordance with the foregoing are expressly preserved.

(e)    <u>Unconditional Right to Credit Bid</u>.  Each of the Prepetition Secured Parties shall have the unconditional right to credit bid its Prepetition Secured Obligations in connection with the sale of any of its Prepetition Collateral.

(f)      <u>Weekly Meetings</u>. The Debtors shall arrange for weekly (unless waived by the Prepetition Secured Parties in their sole and absolute discretion) status calls with the Prepetition Secured Parties and their advisors, and shall cause the Debtors' advisers and chief restructuring officer to participate to discuss (A) the Approved Budget, any Budget Variances and any other reports or information delivered by the Debtors, (B) the financial operations and performance of the Debtors' business, (C) progress in achieving the Milestones (as defined below) and any wind-down, liquidation, or going concern sale or marketing process or efforts, (D) the status of the Chapter 11 Cases generally, and (E) such other matters relating to the Debtors as the Prepetition Secured Parties (or their respective agents or advisors) shall reasonably request ("<u>Weekly Meetings</u>").  The DIP Agent and its counsel may attend the Weekly Meetings at their discretion.

(g)      <u>Milestones</u>. The Debtors shall have (i) prepared a contingency plan for the wind-down of the Debtors' operations in the event that a going concern sale is not achieved, which plan shall be reasonably acceptable to the Prepetition Secured Parties no later than July 28, 2021 at 12:00 noon prevailing Central Time, (ii) prepared a 13-week budget that is reasonably acceptable to the Prepetition Secured Parties no later than July 28, 2021 at 12:00 noon prevailing Central Time, (iii) filed with the Court a motion requesting approval of proposed bidding procedures that are reasonably acceptable to the Prepetition Secured Parties and that adhere to the milestones described in clauses (iv) and (v) below no later than ten (10) business days after the Petition Date, (iv) obtained, within sixty (60) calendar days after the Petition Date, a binding stalking horse bid for the sale of all or substantially all of the Debtors' assets which bid shall be reasonably acceptable to each Prepetition Secured Party, and (v) completed the closing of a sale of all or substantially all of the Debtors' assets that is reasonably acceptable to each Prepetition

45

Secured Party, within one hundred twenty (120) calendar days after the Petition Date (collectively with (i) through (iv), the "Milestones").

        (h)      Adequate Protection of Limetree Bay Terminals. To the extent Limetree Bay Terminals, LLC, ("LBT") holds a valid, perfected, and unavoidable lien on any DIP Collateral in existence as of the Petition Date, and solely to the extent of any diminution in value of such lien, if any, LBT shall receive a replacement lien for such diminution to the same extent validity and priority as its pre-petition lien.   Nothing in this Interim Order shall be a determination of the validity, priority, or extent of any lien or claim asserted by LBT, and the rights of all parties as to such issues are preserved.  For the avoidance of doubt, any such replacement lien will not attach to the IFF Property.

        (i)      Financial Reporting.  The Debtors shall provide the advisors to the Ad Hoc Term Lender Group, the Revolving Administrative Agent (on behalf of the Revolving Lenders), and J. Aron, with the financial reporting and inspection rights described more fully in paragraph 12 below.

        (j)      Right to Seek Additional Adequate Protection.  Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Secured Parties in this Interim Order is without prejudice to the right of the Prepetition Secured Parties to seek at any time, including, without limitation, in connection with the Final Order, modification of the grant of adequate protection provided hereby so as to provide different or additional forms of adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest such modification.  Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the Prepetition Secured Parties under their respective Prepetition Secured Documents or under equity or law, and the Prepetition Secured Parties expressly reserve all of

4823-3938-9938.1

their respective rights and remedies whether now existing or hereafter arising under their respective Prepetition Secured Documents, equity, and law in connection with all termination events and defaults and events of default under such agreements or hereunder.

10.     <u>Amendments, Consents, Waivers, and Modifications</u>.   The Debtors, with the express written consent of the DIP Agent, may enter into any amendments, consents, waivers, or modifications to the DIP Loan Documents that are not materially adverse to the Debtors without the need for further notice and hearing or any order of this Court; *provided*, *however*, that, without the approval of the Court on notice and a hearing, no such amendments, consents, waivers or modifications shall (i) shorten the maturity of the DIP Financing, (ii) increase the commitments thereunder or the rate of interest payable under the DIP Loan Documents, (iii) require the payment of any new or additional fee, or (iv) amend the Events of Default or covenants in the DIP Loan Documents to be materially more restrictive to the Debtors; *provided, further,* that any amendment, modification, waiver, or consent that adversely affects the rights or economic interest of any Prepetition Secured Party shall require the prior written consent of such Prepetition Secured Party; and *provided, further,* that any amendments, modification, waiver, or consent to or in respect of Section 10.05(b)(v) of the DIP Credit Agreement shall require the prior written consent of each Prepetition Agent.  No consent shall be implied by any other action, inaction, or acquiescence of any of the DIP Secured Parties or any of the Prepetition Secured Parties.

11.     <u>Perfection of DIP Liens and Prepetition Secured Parties' Adequate Protection Liens</u>.

(a)     The DIP Agent, and the Prepetition Secured Parties, as applicable, are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments (subject to Borrower's prior

review and approval, not to be unreasonably withheld, conditioned or delayed) in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder, in each case, without the necessity to pay any mortgage recording fee or similar fee or tax.  Whether or not the DIP Agent, on behalf of the DIP Secured Parties, or the Petition Secured Parties, in their respective sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall, to the extent provided in this Interim Order, be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute or subordination upon entry of this Interim Order. The Debtors shall, if requested, execute and deliver to the DIP Agent or the Prepetition Secured Parties, as applicable, all such agreements, financing statements, instruments and other documents as the DIP Agent or the Prepetition Secured Parties may reasonably request to more fully evidence, confirm, validate, perfect, preserve, and enforce the DIP Liens or the Prepetition Secured Parties' Adequate Protection Liens, as applicable, and all such documents will be deemed to have been recorded and filed as of the Filing Date.

(b)     A certified copy of the Interim Order may be filed by the DIP Agent or the Prepetition Secured Parties with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby directed to accept such certified copy of this Interim Order for filing and recording.

12.     <u>Financial Reporting and Inspection Rights</u>. The Debtors shall provide the advisors to the DIP Agent, Ad Hoc Term Lender Group, the Term Administrative Agent, the Revolving

4823-3938-9938.1

Administrative Agent (on behalf of the Revolving Lenders), the Project Collateral Agent and J. Aron, with the financial and other reporting as described in the DIP Loan Documents and the Prepetition Secured Documents, in addition to (i) any financial reporting given to the U.S. Trustee and (ii) any additional reports reasonably requested by and of the DIP Agent and the Prepetition Secured Parties. The Debtors shall deliver to each of the DIP Agent, the Ad Hoc Term Lender Group, the Term Administrative Agent, the Revolving Administrative Agent (on behalf of the Revolving Lenders), the Project Collateral Agent, and J. Aron, and their respective counsel financial reporting information in a timely manner that is requested by any of them in writing, and shall make personnel available to answer questions concerning such financial reporting and the operations of the Debtors during normal business hours on no less than two (2) business days' advance notice to Debtors' counsel, and within five (5) business days of the request being made to Debtors' counsel unless otherwise agreed to by the parties. The Debtors shall provide the DIP Agent, the Ad Hoc Term Lender Group, the Term Administrative Agent, the Revolving Administrative Agent, the Project Collateral Agent, and J. Aron and their respective agents, representatives, or professionals, with access to, and on-site inspections of, the Debtors' property and company records, as may be reasonably requested, during normal business hours, on no less than two (2) business days' advance notice to Debtors' counsel, and within five (5) business days of the request being made to the Debtors' counsel, unless the parties agree otherwise on the actual inspection date. The Debtors shall promptly provide the DIP Agent with any information or documents that are provided to the Term Administrative Agent, the Revolving Administrative Agent, the Project Collateral Agent and J. Aron and vice versa.

13.    <u>Third Parties</u>.  Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Secured Parties contained in this Interim

Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, following entry of an order granting a Stay Relief Motion (defined below) as set forth in paragraph 17(c) hereof and solely to the extent the applicable DIP Collateral is not subject to a Permitted Prior Lien, upon three (3) Business Days' written notice to the landlord, lienholder, licensor, or other third party owner of any leased or licensed premises or intellectual property that a Termination Event has occurred under the DIP Loan Documents and that the DIP Agent is permitted to exercise remedies, the DIP Agent (i) may, only subject to any separate agreement by and between the applicable landlord or licensor (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon and (ii) subject to applicable law, shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, trade-names, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a lien or license of any third party and which are used by the Debtors in their businesses, in either the case of subparagraph (i) or (ii) of this paragraph without interference from lienholders or licensors thereunder. To the extent applicable law prohibits the forgoing access or use of rights, the DIP Agent shall have the right to an expedited hearing on five (5) Business Days' notice to obtain Court authorization to obtain such access or use of such rights.

14. <u>Automatic Stay Modified</u>. The automatic stay provisions of section 362 of the Bankruptcy Code hereby are vacated and modified without the need for any further order of this Court to permit (a) the Debtors to grant the DIP Liens and the DIP Superpriority Claims, and to perform such acts as the DIP Agent may request to assure the perfection and priority of the DIP Liens; (b) the Debtors to grant the Prepetition Secured Parties' Adequate Protection Liens, and to

perform such acts as the Prepetition Secured Parties may request to assure the perfection and priority of the Prepetition Secured Parties' Adequate Protection Liens; (c) the Debtors to incur all liabilities and obligations, including all of (i) the DIP Obligations, to the DIP Secured Parties and (ii) the Adequate Protection Obligations to the Prepetition Secured Parties, in each case as contemplated under this Interim Order and the DIP Loan Documents; (d) the Debtors to pay all amounts referred to, required under, in accordance with, and subject to the DIP Loan Documents and this Interim Order, including any Adequate Protection Obligations; (e) the DIP Secured Parties to retain and apply payments made in accordance with the DIP Loan Documents and this Interim Order; (f) the DIP Agent, the DIP Lenders and the Prepetition Secured Parties to exercise the rights and remedies set forth in paragraph 17 hereof, upon the occurrence of a Termination Event (as defined below); (g) the Prepetition Secured Parties to exercise the rights and remedies under their respective Prepetition Secured Documents, as applicable, pursuant to paragraph 17(c) hereof; (h) without a determination that the automatic stay applies, but out of an abundance of caution, J. Aron to retain and apply amounts received from the liquidation of its IFF Property to obligations owed by the Debtors to J. Aron under the J. Aron Transaction Documents; (i) upon entry of a Final Order, J. Aron to set off and net any Margin (as defined in the J. Aron Master Monetization Agreement) against any obligations owed by the Debtors to J. Aron under the J. Aron Transaction Documents; (j) the Debtors to perform under the DIP Loan Documents and any and all other instruments, certificates, agreements and documents which may be required, necessary or prudent for the performance by the applicable Debtors under the DIP Loan Documents and any transactions contemplated therein or in this Interim Order; and (k) the implementation of all of the terms, rights, benefits, privileges, remedies, and provisions of this Interim Order and the DIP Loan Documents, in each case without further notice, motion or application to, or order of, or hearing before, this

4823-3938-9938.1

Court, subject to the terms of this Interim Order, except that to the extent any Prepetition Secured Party seeks to enforce its respective rights, benefits, privileges, remedies under, or provisions of, this Interim Order and the Prepetition Secured Documents against property of the Debtors' estates (other than any such rights, benefits, privileges, or remedies described in clauses (h) and (i)), such Prepetition Secured Party shall provide the Debtors with ten (10) days written notice prior to any such enforcement. The Debtors and DIP Lenders have consented to the exercise of rights, benefits, privileges, and remedies described in clauses (h) and (i).  Nothing in this Interim Order shall impair or abridge the Debtors' right to seek and, if granted by the Bankruptcy Court, obtain the use of Cash Collateral on a nonconsensual basis, and the rights of the DIP Secured Parties, the holders of the Permitted Prior Liens and the Prepetition Secured Parties to object to such request are fully preserved.

15.     <u>Termination Date</u>.  Each of the following shall constitute a termination event under this Interim Order (each a "<u>Termination Event</u>", and the date upon which such Termination Event occurs, the "<u>Termination Date</u>"), unless waived in writing (delivery by email or other electronic means being sufficient) by the DIP Agent and each Prepetition Agent:

(a)     the occurrence of the "Maturity Date" (as defined in the DIP Loan Documents) of the DIP Financing under the DIP Loan Documents;

(b)     acceleration of the obligations under the DIP Loan Documents upon the occurrence of an "Event of Default" under and as defined by the DIP Loan Documents;

(c)     nine (9) months following entry of the Interim Order;

(d)     failure to obtain entry of the Final Order within 30 days from the entry of this Interim Order;

(e)       entry of a Final Order with DIP Lien priorities that differ from the priorities set forth in paragraph 7 above without the express written consent of the DIP Secured Parties;

(f)       entry of an order authorizing the Borrower or any Guarantor to incur DIP financing from any party other than the DIP Secured Parties;

(g)       the closing date of a sale of all or substantially all of the Debtors' assets under section 363 of the Bankruptcy Code (whether in one transaction or a series of related or unrelated transactions) (a "363 Sale");

(h)       the effective date of a confirmed chapter 11 plan (a "Plan") that provides for indefeasible payment in full, in cash of all obligations owing under the DIP Loan Documents or is otherwise acceptable to the DIP Agent and the DIP Lenders in their sole discretion;

(i)       the failure by the Debtors to timely perform any of the material terms, provisions, conditions, covenants, or other obligations under this Interim Order;

(j)       the filing of a motion or other pleading requesting (or entry of an order approving) the appointment of a trustee, other estate fiduciary or an examiner with special/expanded powers which the Debtors fail to timely oppose without the prior written consent of the DIP Agent and Prepetition Secured Parties;

(k)       an order converting any Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of the Chapter 11 Cases;

(l)       the filing or support by any Debtor of any plan of reorganization that (1) does not provide for indefeasible payment in full, in cash of all obligations owing under the DIP Loan Documents and (2) is not otherwise acceptable to DIP Agent and the DIP Lenders in their sole discretion; and

(m)     any modifications, amendments, reversal, or extensions of this Interim Order that are adverse to the DIP Secured Parties or the Prepetition Secured Parties.

In addition to the foregoing, each of the following shall constitute Termination Event upon which any Prepetition Secured Party may terminate the Debtors' authorization to use Cash Collateral, but not exercise any other remedies under this Interim Order:

(n)     the failure of the Debtors to use commercially reasonable efforts to pursue collection of the insurance claims or disputed amounts owed to the Debtors by BP or (2) seek the agreement of the Government of the U.S. Virgin Islands (the "USVI") to draw on the letter of credit provided by Limetree Bay Terminals, LLC, as financial assurance under the ROA by and among the USVI and certain of the Debtors; provided, however, that so long as the Debtors have used such commercially reasonable efforts in connection with either of the foregoing, no Cash Collateral Termination Event shall be deemed to arise hereunder this subclause "n" in the event the Debtors fail to collect any amounts or cause the USVI to draw on such letter of credit;

(o)     the filing by the Debtors of a motion for authorization to sell all or substantially all of the Debtors' assets or for approval of any related bidding procedures that is not reasonably acceptable to each of the Prepetition Agents; and

(p)     the failure of the Debtors to comply with any of the Milestones.

Nothing in the preceding paragraphs 14 and 15 of this Interim Order shall constitute or be deemed to constitute an amendment or modification to sections 2.6, 3.7(e), 5.6 or 5.9 of the Intercreditor Agreement, or any other provisions of the Intercreditor Agreement.

16.     Cash Collateral Termination Events.  Following a DIP Repayment Event, each of the following shall constitute a cash collateral termination event under this Interim Order (each a "Cash Collateral Termination Event", and the date upon which such Cash Collateral Termination

Event occurs, the "Cash Collateral Termination Date"), unless waived in writing (delivery by email or other electronic means being sufficient) by each Prepetition Agent:

(a)     if on or before the date of the DIP Repayment Event, the Debtors and the Prepetition Agents have not agreed to the terms and conditions of the Debtors' continued consensual use of Cash Collateral, the adequate protection to be provided to the Prepetition Secured Parties, and the terms of a budget;

(b)     the bringing of a motion, taking of any action or the filing of any plan of reorganization or liquidation or disclosure statement attendant thereto by or on behalf of the Debtors in the Chapter 11 Cases: (a) to obtain postpetition financing, absent the consent of the Prepetition Secured Parties; (b) to grant any lien, absent the consent of each Prepetition Agent; or (c) to use Cash Collateral in manner that is inconsistent with the terms of this Interim Order or the Approved Budget, subject to the approved Budget Variances, and it being further specified that any request for payment, or payment, of professionals fees by any party not limited herein to the projected fees in the Approved Budget in excess of the budgeted amount shall not be deemed a Cash Collateral Termination Event;

(c)     the closing date of a 363 Sale;

(d)     the failure by the Debtors to timely perform any of the material terms, provisions, conditions, covenants, or other obligations under this Interim Order;

(e)     the filing of a motion or other pleading requesting (or entry of an order approving) the appointment of a trustee or an estate fiduciary or an examiner with special powers which the Debtors fail to timely oppose without the prior written consent of the Prepetition Secured Parties;

(f)    an order converting any Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of the Chapter 11 Cases;

(g)    the filing or support by any Debtor of a plan of reorganization or liquidation that is not acceptable to each Prepetition Agent in its sole discretion;

(h)    any modifications, amendments, reversal, or extensions of this Interim Order that are adverse to the Prepetition Secured Parties;

(i)    the failure of the Debtors to use commercially reasonable efforts to pursue collection of the insurance claims or disputed amounts owed to the Debtors by BP or (2) seek the agreement of the Government of the USVI to draw on the letter of credit provided by Limetree Bay Terminals, LLC, as financial assurance under the ROA by and among the USVI and certain of the Debtors; provided, however, that so long as the Debtors have used such commercially reasonable efforts in connection with either of the foregoing, no Cash Collateral Termination Event shall be deemed to arise hereunder this subclause "i" in the event the Debtors fail to collect any amounts or cause the USVI to draw on such letter of credit;

(j)    the filing by the Debtors of a motion for authorization to sell all or substantially all of the Debtors' assets or for approval of any related bidding procedures that is not acceptable to each Prepetition Agent; and

(k)    the failure of the Debtors to comply with any of the Milestones or to hold Weekly Meetings.

Nothing in the preceding paragraph 16 of this Interim Order shall constitute or be deemed to constitute an amendment or modification to sections 2.6, 3.7(e), 5.6 or 5.9 of the Intercreditor Agreement, or any other provisions of the Intercreditor Agreement.

17.   <u>Rights and Remedies Upon Termination Event</u>.

(a)   Upon the occurrence and during the continuation of a Termination Event, the DIP Agent or any Prepetition Secured Party, as applicable, or, following a Cash Collateral Termination Event, any Prepetition Secured Party may (and any automatic stay otherwise applicable to the DIP Secured Parties or the Prepetition Secured Parties, whether arising under sections 105 or 362 of the Bankruptcy Code or otherwise, but subject to the terms of this Interim Order (including this paragraph) is hereby modified, without further notice to, hearing of, or order from this Court, to the extent necessary to permit the DIP Secured Parties and the Prepetition Secured Parties, as applicable, to) deliver a written notice (a "<u>Termination Notice</u>") (including by e-mail) to counsel for the Debtors, counsel for each of the Prepetition Agents, counsel for the Ad Hoc Term Lender Group, counsel for J. Aron, counsel to any statutory committee appointed in the Chapter 11 Cases, and the U.S. Trustee (the "<u>Remedies Notice Parties</u>"), declaring and triggering, as applicable:  (i) the immediate termination of the DIP Financing and any DIP Loan Document as to any future liability or obligation of the DIP Secured Parties, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; (ii) all DIP Obligations to be immediately due and payable; (iii) right to charge interest at the default rate under the DIP Loan Documents; (iv) a termination of the ability of the Debtors to use any Cash Collateral.

(b)   Upon delivery of such Termination Notice by the DIP Agent or any of the Prepetition Secured Parties, without further notice or order of the Court, the Debtors' authorization to use Cash Collateral and to incur the DIP Financing hereunder will, subject to the expiration of the Remedies Notice Period (as defined below), automatically terminate and (i) the DIP Secured Parties will have no obligation to provide any further DIP Financing or other financial accommodations and (ii) no Prepetition Secured Party will have an obligation to permit the

Debtors to continue to use Cash Collateral; *provided that*, during the Remedies Notice Period (as defined below), the Debtors shall be entitled to continue to use Cash Collateral solely in accordance with the terms of this Interim Order and the DIP Loan Documents and to pay items solely as set forth in the Approved Budget (or following a DIP Repayment Event, solely in accordance with the terms of this Interim Order and to pay items solely as set forth in the Approved Budget), without any variance.

(c)     Following a Termination Event or Cash Collateral Termination Event, but prior to exercising the remedies set forth in this sentence below, the DIP Secured Parties or a Prepetition Secured Party, as applicable, shall be required to file a motion with the Court seeking emergency relief (the "Stay Relief Motion") on three(3) business days' notice to the Remedies Notice Parties (the "Remedies Notice Period") for a further order of the Court modifying the automatic stay in the Chapter 11 Cases to permit the DIP Secured Parties or the Prepetition Secured Parties, as applicable, to:  (i) freeze monies or balances in the Debtors' accounts; (ii) immediately set-off any and all amounts in accounts subject to a control agreement in favor of the DIP Secured Parties against the DIP Obligations, (iii) enforce any and all rights against the DIP Collateral (to the extent such DIP Collateral is not subject to a Permitted Prior Lien), including, without limitation, foreclosure on all or any portion of the DIP Collateral, collection of accounts receivable, occupying the Debtors' premises, and sale or disposition of the DIP Collateral (or following a DIP Repayment Event, enforce any and all rights against the Prepetition Collateral, including, without limitation, foreclosure on all or any portion of the Prepetition Collateral, collection of accounts receivable, occupying the Debtors' premises, and sale or disposition of the Prepetition Collateral); (iv) terminate and revoke the Debtors' right under this Interim Order or the DIP Loan Documents to use any Cash Collateral, except to fund the Carve-Out; and (v) take any other actions or exercise

any other rights or remedies permitted under this Interim Order, the DIP Loan Documents, the Prepetition Secured Documents, or applicable law.  The Debtors, the DIP Secured Parties and the Prepetition Secured Parties consent to a hearing on the Stay Relief Motion on an expedited basis. Any order granting a Stay Relief Motion filed by any of the Prepetition Secured Parties shall also modify the automatic stay to the extent necessary to permit (i) the Prepetition Secured Parties to immediately set off and net any and all amounts in accounts subject to a control agreement in their favor, any Margin (as defined in the Monetization Master Agreement) and any amounts owed by them to the Debtors against any obligations under the Secured Financing Documents, (ii) enforce any and all rights against any collateral securing any obligations under the Prepetition Secured Documents, including without limitation foreclosure on all or any portion of such collateral, collection of accounts receivable, occupying the Debtors' premises, and sale or disposition of the DIP Collateral; and (iii) take any other actions or exercise any other rights or remedies permitted under this Interim Order, the Secured Financing Documents, or applicable law.

(d)      The rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that the DIP Secured Parties have under the DIP Loan Documents, or otherwise or that the Prepetition Secured Parties have under the Prepetition Secured Documents or otherwise.  If any of the DIP Secured Parties or Prepetition Secured Parties are permitted by the Court to take any enforcement action with respect to the DIP Collateral, or the Prepetition Secured Parties are permitted by the Court to take any enforcement action with respect to the Prepetition Collateral, following the hearing on the Stay Relief Motion, and subject to relative rights and priorities of the other DIP Secured Parties or Prepetition Secured Parties as provided in or recognized under this Interim Order, the Debtors shall cooperate with such party in its efforts to enforce its security interest in

the DIP Collateral or the Prepetition Collateral, as applicable, and shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such party from enforcing its security interests in the DIP Collateral or the Prepetition Collateral, as applicable.

18.     <u>Subsequent Reversal or Modification</u>.  This Interim Order is entered pursuant to, *inter alia*, section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP Secured Parties and Prepetition Secured Parties all protections afforded by section 364(e) of the Bankruptcy Code.  If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by the Debtors to the DIP Secured Parties prior to the date of receipt by the DIP Agent of written notice of the effective date of such action, (ii) the payment of any fees required under this Interim Order or the DIP Loan Documents, (iii) the validity and enforceability of any lien, claim, obligation, right, remedy or priority authorized or created under this Interim Order or pursuant to the DIP Loan Documents as of such date, including any Adequate Protection Obligations, and (iv) the validity or enforceability of the Aron Rights.

19.     <u>Restriction on Use of DIP Lenders' Funds and Prepetition Collateral</u>.  Notwithstanding anything herein to the contrary, none of the DIP Collateral or proceeds thereof, proceeds of the DIP Financing, the Prepetition Collateral or proceeds thereof, any portion of the Carve-Out may be used by the Debtors, the Debtors' estates, the Committee, any trustee or examiner appointed in the Chapter 11 Cases or any chapter 7 trustee, or any other party in interest, directly or indirectly, to: (a) request authorization to obtain postpetition financing (whether equity or debt) or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than (i) from the DIP Agent or (ii) if such financing is sufficient to indefeasibly pay all DIP Obligations in full in cash and such financing is immediately so used; (b)

assert, join, commence, support, investigate, or prosecute any action for any claim, counter-claim, action, cause of action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, in any capacity, the DIP Releasees or the Prepetition Secured Releasees, with respect to any transaction, occurrence, omission, or action, including, without limitation, (i) any action arising under the Bankruptcy Code against a DIP Releasee or a Prepetition Secured Releasee; (ii) any so-called "lender liability" claims and causes of action against a DIP Releasee or Prepetition Secured Releasee; (iii) any action with respect to the legality, enforceability, validity, extent, perfection, and priority of the DIP Obligations, the DIP Superpriority Claims, the DIP Loan Documents, the DIP Liens, or Prepetition Secured Obligations; (iv) any action for avoidance under sections 544, 547, 548, 549, or 550 of the Bankruptcy Code against the DIP Secured Parties or a Prepetition Secured Releasee; (v) any action seeking to invalidate, set aside, avoid, reduce, set off, offset, recharacterize, subordinate (whether equitable, contractual, or otherwise), recoup against, disallow, impair, raise any defenses, cross-claims, or counter claims, or raise any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation against or with respect to the DIP Liens, the DIP Obligations, the DIP Superpriority Claims, or the Prepetition Secured Obligations in whole or in part; (vi) appeal or otherwise challenge this Interim Order, the DIP Loan Documents, or any of the transactions contemplated herein or therein; or (vii) any action that has the effect of preventing, hindering, or delaying (whether directly or indirectly) the DIP Secured Parties' or Prepetition Secured Parties' rights in respect of their respective liens on and security interests in the DIP Collateral or Prepetition Collateral, as applicable, or any of their rights, powers, or benefits hereunder or in the DIP Loan Documents or this Interim Order anywhere in the world; (c) seek to modify any of the rights granted to the DIP

Secured Parties or the Prepetition Secured Parties hereunder or under the DIP Loan Documents; or (d) pay any claim of a prepetition creditor except as permitted under the DIP Loan Documents in accordance with the Approved Budget.  Notwithstanding the foregoing, the terms and limitations of this paragraph shall not apply to a successful action on the part of the Debtors whereby under paragraph 17 of this Interim Order the Debtors obtain an order of the Court staying or otherwise modifying a Termination Event or a Cash Collateral Termination Event.

20. <u>Restriction on Use of Proceeds of Inventory Financing Collateral</u>. For the avoidance of doubt, nothing in this Interim Order authorizes the sale or use of Inventory Financing Collateral or proceeds thereof other than Cash Collateral.

21. <u>Insurance Policies</u>.  Upon entry of this Interim Order, the DIP Lenders are, and are deemed to be, without any further action or notice (including endorsements), named as additional insured and loss payees on each insurance policy maintained by the Debtor which in any way relates to the DIP Collateral.

22. <u>Collateral Rights</u>.  Except as expressly provided in the Approved Budget or permitted in this Interim Order or the DIP Loan Documents, in the event that any person or entity that holds a lien on or security interest in DIP Collateral of the Debtors' estates, that is junior or otherwise subordinate to the DIP Liens receives or is paid the proceeds of such DIP Collateral, prior to indefeasible payment in full in cash and the complete satisfaction of all DIP Obligations under the DIP Loan Documents, and termination of the commitments under the DIP Loan Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral of the Debtors' estates, in trust for the DIP Lenders, and shall immediately turnover such proceeds to the DIP Agent for application in accordance with the DIP Loan Documents and this Interim Order.  Except as expressly provided in the Approved

Budget or permitted in this Interim Order or the applicable Prepetition Secured Document, in the event that any person or entity that holds a lien on or security interest in any collateral securing the obligations under any Prepetition Secured Document that is junior or otherwise subordinate to the lien in favor of the applicable Prepetition Secured Parties receives or is paid the proceeds of such collateral prior to indefeasible payment in full in cash and the complete satisfaction of all obligations under the applicable Prepetition Secured Document, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such collateral in trust for the applicable Prepetition Secured Parties, and shall immediately turn over such proceeds to the applicable Prepetition Secured Parties or their respective agents for application in accordance with the relevant Prepetition Secured Document and this Interim Order.

23.      Prohibition on Additional Liens.  Except as provided in the DIP Loan Documents, the Prepetition Secured Documents, and this Interim Order, the Debtors shall be enjoined and prohibited from, at any time during the Chapter 11 Cases until such time as the DIP Obligations and obligations under the Prepetition Secured Documents have been indefeasibly paid in full, granting liens on or security interests in the DIP Collateral or the collateral securing the obligations under the Prepetition Secured Documents or any portion thereof to any other entities, pursuant to section 364(d) of the Bankruptcy Code or otherwise, which liens are junior to, senior to, or *pari passu* with the DIP Liens, the Prepetition Secured Parties' Adequate Protection Liens, or the liens in favor of the Prepetition Secured Parties.

24.      No Waiver.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that any of the DIP Secured Parties or the Prepetition Secured Parties may have to bring or be heard on any matter brought before this Court.

4823-3938-9938.1

25.     <u>Sale/Conversion/Dismissal/Plan</u>.

(a)     No order providing for either the sale of the ownership of the stock of the Debtors or the sale of all or substantially all of the assets of the Debtors under section 363 of the Bankruptcy Code shall be entered by the Court unless, in connection and concurrently with any such event, (X) the Prepetition Secured Parties consent to the entry of such order and (Y) (i) the proceeds of any DIP Collateral included in such sale shall, subject to the prior satisfaction of any Permitted Prior Liens encumbering such DIP Collateral, be used to indefeasibly pay in full in cash and completely satisfy the DIP Obligations and the obligations under the Secured Financing Documents, and the commitments under the DIP Loan Documents are terminated; (ii) such sale is expressly permitted under the DIP Loan Documents; or (iii) the DIP Agent and Prepetition Secured Parties otherwise consent.

(b)     If an order dismissing or converting the Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code or otherwise or an order appointing a chapter 11 trustee or an examiner with expanded powers is at any time entered:

i.     Unless otherwise agreed to by the DIP Agent, such order shall provide that the Debtors, in each case subject to the Carve-Out and the Permitted Prior Liens, be subject to (a) the DIP Liens, the liens in favor of the Prepetition Secured Parties, the Aron Rights, the DIP Superpriority Claims, the DIP Obligations, the Adequate Protection Liens, and the DIP Loan Documents, which shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in this Interim Order until all DIP Obligations hereunder and all obligations under the DIP Credit Agreement are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Loan Documents are terminated in accordance with the DIP Loan Documents, (b) the Prepetition Liens, Prepetition Secured Parties'

4823-3938-9938.1

Adequate Protection Liens, and any other Adequate Protection Obligations granted or conferred to the Prepetition Secured Parties shall continue in full force and effect, remain binding on all parties-in-interest and maintain their priorities as provided in this Interim Order until all Prepetition Secured Obligations are indefeasibly paid in full in cash and completely satisfied (and that such Prepetition Secured Parties' Adequate Protection Liens, and other Adequate Protection Obligations granted to or conferred on the Prepetition Secured Parties shall, notwithstanding such dismissal or conversion, remain binding on all parties) and (c) all postpetition indebtedness, obligation, or liability incurred by the Debtors to the DIP Secured Parties or the Prepetition Secured Parties prior to the date of such order, including, without limitation, the DIP Obligations and the Adequate Protection Obligations, shall be governed in all respects by the original provisions of this Interim Order unless the Final Order has been entered, in which case the Final Order shall govern, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Loan Documents,; and

　　　　　　　　ii.　　　　to the extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Liens. the DIP Superpriority Claims, the Prepetition Liens, the Prepetition Secured Parties' Adequate Protection Liens, the Aron Rights, and any other Adequate Protection Obligations.

　　　　26.　　__Modifications of the Approved Budget__.  Without further Order of the Court, the Debtors are hereby authorized to implement, in accordance with the terms hereof and upon the consent of the DIP Agent and each Prepetition Agent, any modifications to the Approved Budget with such modification being in writing, *provided, however*, that (a) each Prepetition Agent shall be deemed to have consented to any such modification if it has not objected to the proposed modification (i) within the greater of twenty-four (24) hours and one (1) business day after written

email notice of such modification to counsel to such Prepetition Agent, or (ii) in the case of an Emergency Expense (as defined below) in excess of $250,000, within twelve (12) hours after written email notice of such proposed modification to counsel to such Prepetition Agent, and (b) no consent of the Prepetition Agents shall be necessary if each of the following conditions is satisfied: (i) the chief restructuring officer has certified, in writing, to the DIP Agent and the Prepetition Agents that the expense is necessary to (A) prevent irreparable harm to the value of the Prepetition Collateral or DIP Collateral, or (B) protect against an imminent harm to the public safety (any such certified expense described in the foregoing clauses (A) or (B) an "Emergency Expense"), (ii) such Emergency Expense is less than $250,000, and (iii) the aggregate amount of all Emergency Expenses does not exceed $500,000.

27.    Priority of Terms.  To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Loan Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the DIP Loan Documents or another document or agreement or words of similar import, the terms and provisions of this Interim Order shall govern.

28.    No Third-Party Beneficiary.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

29.    Rights Under Sections 363(k) and 1129(b).  The full amount of the DIP Obligations or the Prepetition Secured Obligations may be used to "credit bid" for the assets and property of the Debtors (other than any collateral in respect of the J. Aron Obligations) on a dollar-for-dollar basis, as provided for in section 363(k) of the Bankruptcy Code, in accordance with the terms of

the DIP Loan Documents and this Interim Order, as applicable, without the need for further Court order authorizing the same and whether such sale is (a) pursuant to section 363, (b) pursuant to a plan of reorganization, or (c) by a chapter 7 trustee because, among other things, the denial of such rights would result in the DIP Secured Parties and the Prepetition Secured Parties not receiving the indubitable equivalent of their claims.

30.     Discharge Waiver/Release. Neither the DIP Obligations nor the Adequate Protection Obligations shall be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash, or granted such other treatment as the Debtors and the DIP Secured Parties, in the case of the DIP Obligations, and the Prepetition Secured Parties, in the case of Adequate Protection Obligations, may agree upon, on or before the effective date of such confirmed plan of reorganization.

31.     Preservation of Prepetition Priorities.  Nothing in this Interim Order is intended to change or otherwise modify the prepetition priorities among prepetition secured creditors of the Debtors, including (i) any lien or recoupment rights to the extent such liens or rights are valid, enforceable, nonavoidable and perfected, (ii) any claims of the lienholders or any other mechanic or materialmen to the extent their liens are valid, enforceable, non-avoidable and perfected, including as permitted by section 546(b) of the Bankruptcy Code, or (iii) any relative rights and priorities of the Prepetition Secured Parties in that certain Collateral Agency and Intercreditor Agreement, dated as of November 20, 2018, as it may be amended, modified or supplemented, by and among certain of the Debtors and the Prepetition Agents, and nothing in this Interim Order, including the granting of adequate protection liens or DIP Liens, shall be deemed to have changed or modified such prepetition priorities, all of which are hereby expressly preserved.  The

4823-3938-9938.1

preservation of prepetition priorities expressly includes lien, setoff, recoupment, contract, and other security rights.

32.     <u>Proofs of Claim</u>.  Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, neither the DIP Agent nor any of the DIP Lenders shall be required to file proofs of claim in the Chapter 11 Cases for any claim allowed herein in or otherwise in relation to the DIP Loan Documents.  In addition, the Prepetition Secured Parties shall not be required to file proofs of claim in the Chapter 11 Cases for any claim allowed herein or otherwise in relation to the Prepetition Secured Obligations, and the stipulations contained Section F and G of this Interim Order shall be deemed to constitute a timely-filed proof of claim for the Prepetition Secured Parties in respect of the Prepetition Secured Obligations.

33.     <u>Best Efforts</u>.  If requested to do so by the DIP Agent and consented to by the Prepetition Secured Parties in writing, or by the Prepetition Secured Parties, the Debtors shall use their best efforts (subject to applicable law, including, without limitation, the Debtors' fiduciary duties thereunder) to assist and cooperate with the sale of the DIP Collateral or the collateral securing the obligations under the Prepetition Secured Documents.

34.     <u>No Consent</u>.  No action, inaction, or acquiescence by the DIP Secured Parties, including funding the Debtors' ongoing operations under this Interim Order, or the Prepetition Secured Parties shall be deemed to be or shall be considered as evidence of any alleged consent by the DIP Secured Parties or the Prepetition Secured Parties to a charge against the DIP Collateral or the Prepetition Collateral pursuant to sections 506(c), 552(b) or 105(a) of the Bankruptcy Code.

35.     <u>No Marshaling; Equities of the Case.</u>  Subject to entry of the Final Order, neither the DIP Secured Parties nor the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, the Prepetition

Collateral or the liens securing the obligations under the Prepetition Secured Documents. Subject to entry of the Final Order, the "equities of the case" exception of section 552(b) of the Bankruptcy Code shall not apply to the DIP Agent with respect to the DIP Loan Documents and/or the DIP Collateral or the Prepetition Secured Parties with respect to the Prepetition Secured Documents and/or the Prepetition Collateral.

36.    <u>Section 506(c) Waiver.</u>  Subject to entry of the Final Order, no costs or expenses of administration or other charge, lien, assessment, or claim incurred at any time (including any expenses set forth in the Approved Budget) by any Debtors or any other person or entity shall be imposed against any or all of the DIP Secured Parties or the Prepetition Secured Parties, their respective claims, or their respective collateral under Section 506(c) of the Bankruptcy Code or otherwise, and the Debtors, on behalf of their estates, waive any such rights.

37.    <u>Indemnification.</u>  The indemnification provisions set forth in Section 10.02 of the DIP Credit Agreement are hereby approved.

38.    <u>Break Up Fee.</u>  In the event that alternative DIP financing is approved before entry of the Final Order with a lender other than the DIP Lenders, the Debtors shall pay the DIP Agent a break up fee of $250,000 in lieu of the Deferred Commitment Fees set forth in the DIP Loan Documents.

39.    <u>No Duty to Monitor Compliance.</u>  The DIP Agent, DIP Lenders and the Prepetition Secured Parties may assume the Debtors will comply with this Interim Order and the Approved Budget and shall not (a) have any obligation with respect to the Debtors' use of Cash Collateral or proceeds of the DIP Financing (other than their consent to the use of Cash Collateral or proceeds of the DIP Financing in accordance with and subject to terms of this Interim Order); (b) be obligated to directly pay any expenses incurred or authorized to be incurred pursuant to this Interim

Order (including any amounts specified in the Approved Budget); or (c) be obligated to ensure or monitor that sufficient Cash Collateral or proceeds of the DIP Financing exists to pay any expenses incurred or authorized to be incurred pursuant to this Interim Order.

40.    <u>Adequate Notice</u>.  The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the Bankruptcy Local Rules.  Under the circumstances, no further notice of the request for the relief granted at the Interim Hearing is required.  The Debtors shall promptly serve copies of this Interim Order and notice of the Final Hearing to any person included on the master service list approved or established in this case within two (2) Business Days of the Interim Order Entry Date.

41.    <u>Binding Effect Successors and Assigns</u>.  Except as set forth in paragraph 42 of this Interim Order, the DIP Loan Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties-in-interest in this Chapter 11 Cases, including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, the Committee or examiner appointed in these Chapter 11 Cases, and the Debtors, and their respective successors and assigns (including any trustee or fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estate of the Debtors) whether in these Chapter 11 Cases, in any Successor Cases, or upon any dismissal of any such chapter 11 or chapter 7 case and shall inure to the benefit of the DIP Secured Parties, the Prepetition Secured Parties and the Debtors, and their respective successors and assigns, *provided*, *however*, that the agreement of the DIP Secured Parties to extend financing under the DIP Loan Documents and the Prepetition Secured Parties' consent to the use of Cash Collateral, in each case, shall terminate upon the appointment of any chapter 7 or 11 trustee, examiner with expanded powers, or similar responsible person appointed for the estates of the Debtors.  In determining to make any loan (whether pursuant

70

to the DIP Loan Documents, a promissory note, or otherwise), consenting to the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Loan Documents, the DIP Secured Parties and the Prepetition Secured Parties shall not (i) be deemed to be in control of the operations of the Debtors, or (ii) owe any fiduciary duty to the Debtors, or their creditors, shareholders, or estates.  Except as set forth in paragraph 42 of this Interim Order, each stipulation, admission, and agreement contained in sections E, F, G and I of this Interim Order shall also be binding upon all persons and entities, including the Debtors, their estates, any Committee, or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors or any other person acting on behalf of the Debtors' estates, under all circumstances and for all purposes, subject to the Challenge Period as defined below.

42.    <u>Effect of Stipulations</u>.  The stipulations, waivers and releases contained in sections F, G, and I of this Interim Order with respect to the Prepetition Secured Parties (the "<u>Debtors'</u> <u>Stipulations</u>") shall be binding upon the Debtors and their estates in all circumstances immediately upon entry of this Interim Order.  The Debtors' Stipulations shall be binding upon each party in interest (other than the Debtors and their estates), including the Committee, if any, and any chapter 11 trustee (or if any of these Chapter 11 Cases are converted to a case under chapter 7 prior to the expiration of the Challenge Period (defined below), the chapter 7 trustee in such Successor Case), together with each of their respective representatives, subsidiaries, successors and assigns, unless (a) such party (subject in all respects to any agreement or applicable law which may limit or affect such entity's right or ability to do so), with the requisite standing granted by the Court, has timely and properly filed an adversary proceeding by no later than the date that is the earlier of (i) the effective date of a confirmed chapter 11 plan, and (ii) the day that is sixty (60) days from the date of the entry of this Interim Order (or, in the case of the Committee, sixty (60) days from the date

of the appointment of the Committee (as such date may be extended by the applicable Prepetition Secured Party in writing or by order of the Court)) (the "Challenge Period"), (x) objecting to or challenging the amount, validity, perfection, enforceability, priority, or extent of the debt or liens referenced in the Debtors' Stipulations (including those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code) or otherwise objecting to the admissions, stipulations, findings, or releases included in the Debtors' Stipulations; or (y) otherwise asserting or prosecuting any cause of action for preferences, fraudulent transfers or conveyances, or any cause of action challenging the actions or inactions of any of the Prepetition Secured Parties, including any claim against any or all of the Prepetition Secured Parties in the nature of a "lender liability" cause of action, or any other offsets, setoffs, recoupments, challenges, objections, defenses, claims, counterclaims, or causes of action of any kind or nature, whether in these Chapter 11 Cases or any subsequent chapter 7 cases, against any of the Prepetition Secured Parties on behalf of the Debtors' estates, including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law (clauses (x) and (y) collectively, the "Challenges" and, each individually, a "Challenge"); and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such Challenge in any such duly filed adversary proceeding; provided, that, as to the Debtors, all such Challenges and proceedings are hereby irrevocably waived and relinquished as of the Petition Date.  Any complaint or motion for standing filed in, or in connection with, any Challenge proceeding shall set forth with specificity the basis for such Challenge and any Challenges not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released, and barred.  If no adversary proceeding or contested matter is timely filed prior to the expiration of the Challenge Period or the court does not rule in favor of

the plaintiff in any such Challenge proceeding, without further order of the Court: (v) the Debtors' Stipulations, including the releases, shall be binding on all parties in interest including, without limitation, the Committee, if any, and any trustee (including any chapter 7 trustee); (w) any and all Challenges by any party in interest shall be deemed to be forever released, waived, and barred; (x) the claims of the Prepetition Secured Parties shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, offset, any cause of action of any kind, challenge, or defense (including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law), for all purposes in these Chapter 11 Cases and any subsequent chapter 7 case; (y) the liens of the Prepetition Secured Parties shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, recharacterization, subordination, or avoidance; and (z) the Prepetition Secured Parties (and their respective agents, affiliates, subsidiaries, directors, officers, manager, representatives, attorneys, and advisors) shall not be subject to any other or further Challenge or investigation in respect of any Challenge by any person.  If any such adversary proceeding is timely filed prior to the expiration of the Challenge Period, the Debtors' Stipulations, shall nonetheless remain binding and preclusive on the Committee, if any, and any parties in interest, including any trustee, except as to any such findings and admissions that were expressly challenged in such adversary proceeding (it being understood that any non-challenging parties are bound).  Nothing in this Interim Order vests or confers on any person, including the Committee, if any, standing or authority to pursue any claims or cause of action belonging to the Debtors or their estates, including, without limitation, a Challenge in a Challenge proceeding.  For the avoidance of doubt and notwithstanding the foregoing, (i) the Debtors' stipulations, admissions, and releases contained in Paragraph E of this Interim Order will not be subject to a Challenge or the Challenge

Period, and (ii) the DIP Secured Parties agree they will not file a Challenge and will not join in, fund, solicit, encourage or support any Challenge or request to extend the Challenge Period, *provided, however*, that, subject to entry of the Final Order, in the event of a successful Challenge by a party other than the DIP Secured Parties, any property that would otherwise constitute DIP Collateral pursuant to the terms hereof shall, in fact, become DIP Collateral, and the DIP Liens shall attach thereto in the same order and priority as set forth herein.  In the event that there is a timely successful Challenge brought pursuant to this paragraph, the Court shall retain jurisdiction to fashion an appropriate remedy.

43.     Reservation of Rights.  Except as expressly authorized in this Interim Order or as otherwise expressly accepted in writing by the Prepetition Secured Parties, the Prepetition Secured Parties' consent to this Interim DIP Order and any action, inaction, or acquiescence by the Prepetition Secured Parties in connection with this Interim DIP Order (collectively, "Prepetition Secured Parties' Actions"), whether preceding or after the date hereof, shall not be deemed to constitute, evidence or imply any consent, acquiescence, or agreement to, waiver, or any course of dealing or course of conduct (collectively, "Consent"), in connection with any future debtor-in-possession financing, any future use of Cash Collateral, any additional priming liens, or other actions, inactions, relief or requests by the Debtors or DIP Lenders in the future (collectively, "Future Actions"). The Prepetition Secured Parties reserve all rights to object to, challenge and contest any Future Action, and no Debtor, DIP Lender, or Prepetition Secured Party shall assert that any Prepetition Secured Parties' Action constitutes any Consent to any Future Action.

44.     Headings.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

45.     <u>Final Hearing Date</u>. The Court will conduct the Final Hearing on August 2, 2021 at 3:30 p.m., prevailing Central Time.  Objections and responses to the Motion with respect to entry of the Final Order shall be filed and served according to the Local Bankruptcy Rules on or before July 29, 2021 at 10:00 am, prevailing Central Time.  The Debtors shall promptly serve copies of this Interim Order and notice of the Final Hearing on (i) the Office of the United States Trustee for the Southern District of Texas, (ii) the Revolving Administrative Agent, (iii) the Term Administrative Agent, (iv) J. Aron, (v) the Project Collateral Agent, and (vi) those parties that have filed a notice of appearance requesting notice, which service shall constitute adequate and proper notice of the hearing.

46.     <u>Effect of this Interim Order</u>.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 and 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

47.     <u>Retention of Jurisdiction</u>.  This Court retains jurisdiction with respect to all matters arising from or related to the DIP Loan Documents and the implementation of this Interim Order.

48.     <u>Compliance with Law</u>.  Notwithstanding anything to the contrary in the Interim Order or the DIP Loan Documents, nothing in this Interim Order or the DIP Loan Documents shall relieve the Debtors of any obligations under federal, state or local police or regulatory laws or under 28 U.S.C. § 959(b), provided that nothing herein shall limit or impair the Debtors' rights to assert defenses under applicable law and nothing herein shall create new defenses to obligations under police or regulatory laws or 28 U.S.C. § 959(b) .

**RESERVATION OF RIGHTS OF TERMINAL ENTITIES**

49.     Adequate Protection:  Notwithstanding anything to the contrary in this Interim

Order, to the extent any of the Terminal Entities[8] have a valid, perfected and unavoidable lien on

any DIP Collateral (the "Terminal Liens"), such interest shall be entitled to adequate protection as

follows (i) valid and automatically perfected priority replacement liens and security interests in

and on all real and personal property of the Debtors and their bankruptcy estates, in each case,

subject to the DIP Liens securing the DIP Financing in the same order and priority as existed

prepetition to the extent of any diminution in value of the Terminal Liens, if any  (the "Terminal

Replacement Liens"); provided, that, for the avoidance of doubt, the Terminal Replacement Liens

shall not attach to the IFF Property; and (ii) superpriority administrative claims and all of the other

benefits and protections allowable under section 507(b) of the Bankruptcy Code, in each of the

Chapter 11 Cases or Successor Cases, with priority as provided therein, to the extent of any

diminution in the collateral securing the Terminal Liens, if any (the "Terminal Superpriority

Claim").  Nothing in this Order shall be a finding or determination with respect to the extent,

validity or priority of any liens or claims of the Terminal Entities, including, without limitation,

any warehouseman's or other similar liens, setoff, recoupment, contract and other security rights,

and all parties reserve their rights with respect to the forgoing.  The Terminal Entities' right to

seek further or additional adequate protection is expressly reserved and preserved.

50.     Administrative Expense:  Within two (2) business days of the entry of this Interim

Order, the Debtors shall make a cash payment of $150,000.00 to the Terminal Entities for

---

[8] "Terminal Entities" shall mean, collectively or individually, Limetree Bay Terminals, LLC, Limetree Bay Terminal
Holdings, LLC, Limetree Bay Terminal Holdings II, LLC, and Limetree Bay Cayman, Ltd.

4823-3938-9938.1

postpetition services provided by the Terminal Entities under the Terminal Services Agreements.[9] Commencing with the first Monday following the entry of this Interim Order and on each Monday thereafter for the period covered by the Approved Budget, the Debtors shall make a cash payment of $150,000.00 to the Terminal Entities for postpetition services provided by the Terminal Entities under the Terminal Services Agreements for a total payment over the period covered by this Interim Order in the amount of $450,000.  The Terminal Entities reserve all of their rights to assert an administrative expense claim for additional amounts owed under the Terminal Services Agreements for the period after the Petition Date, and the rights of the Debtors and all other parties in interest to contest the amount or validity of any such administrative expense are expressly reserved and fully preserved.  The Debtors shall use good faith efforts to include full payment of all postpetition amounts owed to the Terminal Entities under the Terminal Services Agreements in the Approved Budget in connection with the Final Order, subject to the Debtors rights as to the appropriate amount to be charged for services under the Terminal Services Agreements and without limiting the Debtors rights to seek to reject the Terminal Services Agreements.  All rights with respect to applicability of setoff rights are reserved.

51.  <u>Limitation on DIP Liens</u>:  For the avoidance of doubt, the DIP Collateral shall not include any property to the extent that it does not constitute property of the Debtors' estates within the scope of 11. U.S.C. § 541, and shall not include the Terminal Entities' interest in any property that is jointly owned by the Debtors (or any of them) and Terminal Entities (or any of them) and no liens granted pursuant to this Order shall attach to the Terminal Entities' interest in any property jointly owned with the Debtors.

---

[9] "Terminal Services Agreement" shall mean, collectively, the Terminal Services Agreement (Included Locations) among Limetree Bay Terminals, LLC, Limetree Bay Refining Marketing, LLC and J. Aron dated March 3, 2020 and the Terminal Services Agreement (Non-Included Locations) between Limetree Bay Terminals, LLC and Limetree Bay Refining Marketing, LLC dated March 3, 2020.

4823-3938-9938.1

52.    <u>Reservation of Rights</u>:  Notwithstanding anything in paragraph 42 of this Order, the stipulations, waivers and releases contained in sections F, G, and I of this Interim Order with respect to the Prepetition Secured Parties shall not be binding on the Terminal Entities.  All rights of the Terminal Entities and the Prepetition Secured Parties with respect to entry of the Final Order are expressly reserved and preserved and nothing in this Order shall limit the rights of the Terminal Entities to object to entry of the Final Order for any reason.

**Signed:  July 14, 2021.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

4823-3938-9938.1

## **Exhibit A**

**DIP Credit Agreement**

SENIOR SECURED SUPERPRIORITY DEBTOR IN POSSESSION CREDIT AGREEMENT

Dated as of July 13, 2021

among
LIMETREE BAY REFINING, LLC,
as Borrower,

LIMETREE BAY REFINING HOLDINGS II, LLC,
LIMETREE BAY REFINING HOLDINGS LLC,
LIMETREE BAY SERVICES, LLC,
LIMETREE BAY REFINING OPERATING LLC and
LIMETREE BAY REFINING MARKETING LLC,
as Guarantors,

THE LENDERS FROM TIME TO TIME PARTY HERETO,

and

405 SENTINEL LLC,
as Administrative Agent

_____

$25,000,000 Senior Secured Superpriority Debtor In Possession Credit Facility
_____

ARTICLE I DEFINITIONS AND ACCOUNTING TERMS ........................................................ 2

SECTION 1.01 .....................................................Certain Defined
Terms ......................................................................... 2

Table of Contents

SECTION 1.02    Rules of Interpretation ................................................................. 29
SECTION 1.03    Accounting Terms ....................................................................... 30
SECTION 1.04    Certifications, Etc ....................................................................... 31

ARTICLE II AMOUNTS AND TERMS OF THE ADVANCES ............................................. 31
SECTION 2.01    The Advances ............................................................................. 31
SECTION 2.02    Making the Advances. ................................................................. 31
SECTION 2.03    Repayment of Advances .............................................................. 32
SECTION 2.04    Prepayments ............................................................................... 32
(x)             All prepayments pursuant to this Section 2.04(b) shall be subject to the terms of the
                DIP Order. .................................................................................... 34
SECTION 2.05    Scheduled Interest ....................................................................... 34
SECTION 2.06    Termination or Reduction of the Commitments ............................ 34
SECTION 2.07    Promissory Notes ........................................................................ 34
SECTION 2.08    Collateral Matters ....................................................................... 35

ARTICLE III OTHER PROVISIONS RELATING TO THE DIP FACILITY ....................... 36
SECTION 3.01    Default Interest ........................................................................... 36
SECTION 3.02    Fees ............................................................................................ 36
SECTION 3.03    Change of Circumstances ............................................................ 36
SECTION 3.04    Payments and Computations ....................................................... 38
SECTION 3.05    Taxes ........................................................................................... 39
SECTION 3.06    Sharing of Payments, Etc. ........................................................... 43
SECTION 3.07    Use of Proceeds .......................................................................... 43
SECTION 3.08    Security ....................................................................................... 44

ARTICLE IV CONDITIONS PRECEDENT ......................................................................... 45
SECTION 4.01    Conditions Precedent to Closing Date ........................................ 45
SECTION 4.02    Conditions Precedent to Each Borrowing .................................... 46
SECTION 4.03    Notices ........................................................................................ 48

ARTICLE V REPRESENTATIONS AND WARRANTIES .................................................. 48
SECTION 5.01    Representations and Warranties .................................................. 48

ARTICLE VI COVENANTS ................................................................................................. 55
SECTION 6.01    Affirmative Covenants ................................................................ 55
SECTION 6.02    Negative Covenants .................................................................... 62
SECTION 6.03    Reporting Requirements .............................................................. 67
SECTION 6.04    Permitted Activities of Holdings ................................................. 68

ARTICLE VII EVENTS OF DEFAULT ............................................................................... 68
SECTION 7.01    Events of Default ........................................................................ 68
SECTION 7.02    Application of Payments ............................................................. 74

ARTICLE VIII THE AGENTS .............................................................................................. 74
SECTION 8.01    Appointment of Agents ............................................................... 74
SECTION 8.02    Rights of Lenders ....................................................................... 75
SECTION 8.03    Exculpatory Provisions ............................................................... 75
SECTION 8.04    Reliance by Administrative Agent ............................................... 76
SECTION 8.05    Delegation of Duties ................................................................... 76
SECTION 8.06    Resignation of Administrative Agent ........................................... 76

**Page**

SECTION 8.07   Non-Reliance on Administrative Agent and Other Lenders .......................................... 77
SECTION 8.08   Withholding Taxes ............................................................................................... 77
SECTION 8.09   Administrative Agent May File Proof of Claim ......................................................... 78
SECTION 8.10   Collateral Matters ............................................................................................... 78

ARTICLE IX GUARANTY ....................................................................................................... 78
SECTION 9.01   Guarantee of Obligations ...................................................................................... 78
SECTION 9.02   Limitation on Obligations Guaranteed .................................................................... 79
SECTION 9.03   Nature of Guarantee; Continuing Guarantee; Waivers of Defenses Etc ...................... 79
SECTION 9.04   Rights of Reimbursement, Contribution and Subrogation ........................................... 81
SECTION 9.05   Payments ........................................................................................................... 82
SECTION 9.06   Bankruptcy, Etc. ................................................................................................. 82
SECTION 9.07   Duration of Guaranty .......................................................................................... 83
SECTION 9.08   Reinstatement ..................................................................................................... 83

ARTICLE X MISCELLANEOUS ............................................................................................... 83
SECTION 10.01   Notices ............................................................................................................. 83
SECTION 10.02   Expenses, Indemnity; Damage Waiver .................................................................. 85
SECTION 10.03   Set-Off ............................................................................................................ 86
SECTION 10.04   Amendments and Waivers ................................................................................... 87
SECTION 10.05   Successors and Assigns; Participations ................................................................. 88
SECTION 10.06   Independence of Covenants ................................................................................. 92
SECTION 10.07   Survival of Representations, Warranties and Agreements .......................................... 92
SECTION 10.08   No Waiver; Remedies Cumulative ........................................................................ 92
SECTION 10.09   Marshaling; Payments Set Aside .......................................................................... 92
SECTION 10.10   Severability ....................................................................................................... 92
SECTION 10.11   Obligations Several; Independent Nature of Lenders' Rights ...................................... 92
SECTION 10.12   Headings ........................................................................................................... 93
SECTION 10.13   Governing Law; Jurisdiction, Etc. ........................................................................ 93
SECTION 10.14   Waiver of Jury Trial ........................................................................................... 93
SECTION 10.15   Confidentiality .................................................................................................. 94
SECTION 10.16   Usury Savings Clause ......................................................................................... 95
SECTION 10.17   Counterparts; Integration; Effectiveness; Electronic Execution ................................. 95
SECTION 10.18   Patriot Act ........................................................................................................ 95
SECTION 10.19   Non-Recourse to Equityholders; Certain Acknowledgements ................................... 95

SCHEDULES

Schedule I        -      Commitments; Applicable Lending Offices

Schedule II       -      Real Estate Documents

Schedule III      -      Disclosed Liens

Schedule IV       -      Disclosed Contractual Obligations

Schedule 1.01(a)      -        Mortgaged Properties

Schedule 5.01(a)      -        Loan Parties

Schedule 5.01(b)      -        Capital Stock

Schedule 5.01(e)      -        Governmental Consents

Schedule 5.01(h)      -        Adverse Proceedings

Schedule 5.01(i)      -        Taxes

Schedule 5.01(j)      -        Environmental Matters

Schedule 5.01(o)      -        Compliance with Statutes, Etc.

Schedule 5.01(s)      -        Property

Schedule 6.01(n)      -        Material Contracts (Affirmative Covenant)

Schedule 6.02(p)      -        Material Contracts (Negative Covenant)

Schedule 10.01(a)     -        Notices


EXHIBITS

Exhibit A      -      Form of Assignment and Assumption

Exhibit B      -      Form of Note

Exhibit C      -      Form of Funding Notice

Exhibit D      -      Form of Prepayment Notice

Exhibit E-1    -      Form of USVI Tax Compliance Certificate

Exhibit E-2    -      Form of USVI Tax Compliance Certificate

Exhibit E-3    -      Form of USVI Tax Compliance Certificate

Exhibit E-4    -      Form of USVI Tax Compliance Certificate

Exhibit F-1    -      Form of USVI Tax Compliance Certificate (Mortgage Interest Exemption)

Exhibit F-2    -      Form of USVI Tax Compliance Certificate (Mortgage Interest Exemption)

Exhibit F-3    -      Form of USVI Tax Compliance Certificate (Mortgage Interest Exemption)

Exhibit F-4    -    Form of USVI Tax Compliance Certificate (Mortgage Interest Exemption)

## DEBTOR IN POSSESSION CREDIT AGREEMENT

This SENIOR SECURED SUPERPRIORITY DEBTOR IN POSSESSION CREDIT AGREEMENT, dated as of July 13, 2021 (this "*Agreement*"), is entered into by and among LIMETREE BAY REFINING, LLC, a U.S. Virgin Islands limited liability company ("*Borrower*"), LIMETREE BAY REFINING HOLDINGS II, LLC, a U.S. Virgin Islands limited liability company ("*Holdings*"), LIMETREE BAY REFINING SERVICES, LLC, a Delaware limited liability company ("*LBS*"), LIMETREE BAY REFINING HOLDINGS LLC, a U.S. Virgin Islands limited liability company ("*LBRH*"), LIMETREE BAY REFINING MARKETING LLC, a U.S. Virgin Islands limited liability company ("*LBRM*"), LIMETREE BAY REFINING OPERATING LLC, a U.S. Virgin Islands limited liability company ("*LBRO*", and together with LBRM, LBRH, LBS and Holdings, the "*Guarantors*", and together with the Borrower, the "*Borrower Parties*"), THE LENDERS FROM TIME TO TIME PARTY HERETO, 405 SENTINEL LLC, as administrative agent for the Lenders (in such capacity, together with any successor Administrative Agent appointed pursuant to <u>Article VIII</u> in such capacity, the "*Administrative Agent*"), and 405 SENTINEL LLC, as collateral agent for the Lenders (in such capacity, together with any successor Collateral Agent appointed pursuant to <u>Article VIII</u> in such capacity, the "*Collateral Agent*").

## PRELIMINARY STATEMENTS:

WHEREAS, Limetree Bay Terminals, LLC ("*LBT*"), a U.S. Virgin Islands limited liability company and an Affiliate of the Borrower acquired a facility located at Limetree Bay, St. Croix, U.S. Virgin Islands, consisting of (i) storage and blending equipment, docks, tanks, and all other related facilities, equipment, and real property associated with petroleum import, export, mixing, storage, and related activities at the facility, including all marine facilities, but exclusive of the Refinery referred to below (collectively, the "*Terminal*") and (ii) petroleum processing equipment and related facilities, equipment used to refine, all other equipment used primarily in connection with the refinery, and real property associated with petroleum processing and related activities (other than storage, blending, loading, unloading, transporting of such products) at the oil refinery and related facilities (collectively, the "*Refinery*");

WHEREAS, pursuant to a Bill of Sale, dated as of the Pre-Petition First Funding Date (the "*Bill of Sale*"), LBT transferred the Refinery to the Borrower;

WHEREAS, pursuant to a Shared Services Systems Agreement, dated as of the Pre-Petition First Funding Date (the "*Shared Services Systems Agreement*"), by and between LBT and the Borrower, and acknowledged by LBRM, LBT and the Borrower agreed to share certain real estate, personal property, services and permits as and to the extent specified therein;

WHEREAS, on July 12, 2021 (the "*Petition Date*"), the Loan Parties filed voluntary proceedings (the "*Chapter 11 Cases*") under chapter 11 of title 11 of the United States Code (as amended, the "*Bankruptcy Code*") in the United States Bankruptcy Court for the Southern District of Texas (the "*Bankruptcy Court*"), and such Loan Parties continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code;

WHEREAS, the Borrower has requested that the Lenders provide a senior secured superpriority debtor in possession term loan facility in an aggregate principal amount of up to $25,000,000 to the Borrower;

WHEREAS, the Guarantors are willing to guarantee all of the Obligations of the Borrower to the Lenders under the Loan Documents;

WHEREAS, the Lenders have agreed to provide the DIP Facility on the terms and subject to the conditions set forth herein and in the DIP Order;

WHEREAS, each Loan Party acknowledges that it will receive substantial direct and indirect benefits by reason of the making of loans and other financial accommodations to the Borrower as provided in this Agreement; and

WHEREAS, to provide security for the repayment of all obligations of any kind of the Borrower Parties hereunder and under the other Loan Documents, including direct borrowings, each of the Borrower Parties will provide to the Collateral Agent (for the benefit of the Secured Parties) the Liens, status and protection set forth in the DIP Order.

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements contained herein, the parties hereto hereby agree as follows:

## ARTICLE I

### DEFINITIONS AND ACCOUNTING TERMS

SECTION 1.01    <u>Certain Defined Terms</u>.  As used in this Agreement (including the preamble hereto and the preliminary statements hereto), the following terms shall have the following meanings (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

"***Administrative Agent***" has the meaning specified in the preamble hereto.

"***Administrative Agent's Account***" means the account of the Administrative Agent specified by the Administrative Agent in writing to the Borrower and the Lenders from time to time.

"***Administrative Questionnaire***" means an Administrative Questionnaire in a form supplied by the Administrative Agent.

"***Advances***" has the meaning specified in **Error! Reference source not found.**.

"***Adverse Proceeding***" means any action, written claim, suit, litigation, proceeding, hearing (whether administrative, judicial or otherwise), governmental investigation or arbitration (whether or not purportedly on behalf of the Borrower Parties) at law or in equity, or before or by any Governmental Authority or arbitrator, domestic or foreign (including any Environmental Actions) whether pending or, to the knowledge of the Borrower Parties, threatened in writing against the Loan Parties or the Refinery.

"***Affiliate***" means with respect to a specified Person, another Person that directly, or indirectly through one or more intermediaries, Controls or is Controlled by or is under common Control with the Person specified.

"***Affiliated Fund***" in relation to a fund (the "first fund"), means a fund which is managed or advised by the same investment manager or investment adviser as the first fund or, if it is managed by a different investment manager or investment adviser, a fund whose investment manager or investment adviser is an Affiliate of the investment manager or investment adviser of the first fund.

"***Agent Parties***" has the meaning specified in <u>Section 10.01(d)(ii)</u>.

"***Agents***" means, individually or collectively, as the context may require, the Administrative Agent and the Collateral Agent.

2

"*Agreement*" has the meaning specified in the preamble hereto.

"*Anti-Money Laundering Laws*" means, collectively, (a) the Patriot Act and (b) any other applicable law, regulation, order, decree or directive of any relevant jurisdiction in which any Lender, Agent, Loan Party or Equityholder is located or doing business that has the force of law and relates to anti-money laundering.

"*Applicable Lending Office*" means, with respect to each Lender, such Lender's Domestic Lending Office.

"*Applicable Cash Rate*" means an interest rate of 3.00% per annum.

"*Applicable PIK Rate*" means an interest rate of 9.00% per annum.

"*Applicable Rate*" means, collectively, the Applicable Cash Rate and the Applicable PIK Rate.

"*Approved Fund*" means any Fund that is administered or managed by (a) a Lender, (b) an Affiliate of a Lender or (c) an entity or an Affiliate of an entity that administers or manages a Lender.

"*Aron Rights*" has the meaning given such term in the DIP Order.

"*Asset Sale*" means a sale, lease (as lessor), sale and leaseback, assignment, conveyance, exclusive license (as licensor), transfer or other disposition to, or any exchange of Property with, any Person, in one transaction or a series of transactions, of all or any part of any of the Properties of the Borrower Parties or the Refinery, whether now owned or hereafter acquired, leased or licensed, but shall not include any sale, lease (as lessor), sale and leaseback, assignment, conveyance, exclusive license (as licensor), transfer or other disposition of Inventory Financing Collateral (as defined in the DIP Order) until the Discharge of Inventory Financing Obligations (as defined in the Pre-Petition Depositary Agreement) has occurred.

"*Asset Sale Proceeds*" means, with respect to any Asset Sale, the Net Cash Proceeds received by the Borrower Parties in connection with such Asset Sale.

"*Assignment and Assumption*" means an assignment and assumption entered into by a Lender, on the one hand, and any assignee of such Lender in accordance with this Agreement (with the consent of any Person whose consent is required by Section 10.05), on the other hand, and accepted by the Administrative Agent, in accordance with Section 10.05 and in substantially the form of Exhibit A or any other form approved by the Administrative Agent.

"*Available Commitment*" means, with respect to any Lender at any time, such Lender's unutilized Commitment.

"*Avoidance Actions*" has the meaning given such term in the DIP Order.

"*Avoidance Proceeds*" has the meaning given such term in the DIP Order.

"*Bankruptcy Code*" has the meaning specified in the recitals to this Agreement.

"*Bankruptcy Court*" has the meaning specified in the recitals to this Agreement.

"*Beneficial Ownership Regulation*" means 31 C.F.R. § 1010.230.

"*Bill of Sale*" has the meaning set forth in the recitals hereto.

"**Board of Governors**" means the Board of Governors of the United States Federal Reserve System, or any successor thereto.

"**Borrower**" has the meaning specified in the preamble hereto.

"**Borrower Account**" means that certain deposit account of the Borrower to be established at Oriental Bank or another financial institution reasonably acceptable to the Required Lenders after the Closing Date, and which is to be subject to a Control Agreement, in each case in accordance with Section 6.01(k).

"**Borrower Parties**" has the meaning specified in the preamble hereto.

"**Borrowing**" means the extension of credit and borrowing consisting of Advances made by the Lenders pursuant to Section 2.01.

"**BP**" means BP Products North America Inc., a Maryland company.

"**BP Guaranty**" means that certain Guaranty Agreement, dated as of the Pre-Petition First Funding Date, by BP Corporation North America Inc. in favor of the Borrower and LBRM.

"**Business Day**" means any day excluding Saturday, Sunday and any day which is a legal holiday under the laws of the State of New York or the U.S. Virgin Islands or is a day on which banking institutions located in such state or territory are authorized or required by law or other governmental action to close.

"**Business Interruption Insurance Proceeds**" means any and all proceeds of any insurance, indemnity, warranty or guaranty payable from time to time to any Borrower Party with respect to the partial or complete interruption of the operation of, or delay in the startup of any portion or component of, the business of such Borrower Party.

"**Capital Expenditures**" means, for any period, the aggregate of all expenditures of the Borrower Parties and the Refinery during such period determined on a Consolidated basis and without duplication that, in accordance with GAAP, are or should be included in "**property, plant and equipment**" or similar items reflected in the Consolidated balance sheet of the Borrower Parties or in "**purchase of property and equipment**" or similar items reflected in the Consolidated statement of cash flows of the Borrower Parties.

"**Capital Stock**" means any and all shares, interests, participations or other equivalents (however designated) of capital stock of a corporation, any and all equivalent ownership interests in a Person (other than a corporation), including partnership interests and membership interests, and any and all warrants, rights or options to purchase or other arrangements or rights to acquire any of the foregoing.

"**Capitalized Leases**" means, as applied to any Person, any lease of any Property by that Person as lessee that, in conformity with GAAP, is or should be accounted for as a capital lease on the balance sheet of that Person.

"**Carry Forward Amount**" shall mean the amount of (i) any projected operating disbursements or professional fees not expended in a given Testing Period or (ii) any total net receipts exceeding projected receipts, each of which shall carry forward into, and be available for use in, future Testing Periods.

"**Carve-Out**" has the meaning specified in the DIP Order.

"**Cash**" means money, currency or a credit balance in any demand account or Deposit Account in Dollars.

"***Cash Collateral***" has the meaning specified in the DIP Order.

"***Cash Equivalents***" means any of the following:

(i)  readily marketable direct obligations of the government of the United States or any agency or instrumentality thereof, or obligations unconditionally guaranteed by the full faith and credit of the government of the United States, in each case maturing within one year from the date of acquisition thereof;

(ii)  securities issued by any state of the United States of America or any political subdivision of any such state or any public instrumentality thereof having maturities of not more than one year from the date of acquisition thereof and, at the time of acquisition, having a rating of AA- or higher from S&P or Aa3 or higher from Moody's (or, at any time that neither S&P nor Moody's rates such obligations, an equivalent rating from another nationally recognized rating service);

(iii)  investments in commercial paper maturing within 270 days from the date of acquisition thereof and having, at such date of acquisition, a rating of at least A-1 or P-1 from either S&P or Moody's (or, at any time that neither S&P nor Moody's rates such obligations, an equivalent rating from another nationally recognized rating service);

(iv)  investments in certificates of deposit, banker's acceptances and time deposits maturing within 270 days from the date of acquisition thereof issued or guaranteed by or placed with, and money market deposit accounts issued or offered by, the Administrative Agent or any of its Affiliates or any domestic office of any commercial bank organized under the laws of the United States of America, any State thereof, any country that is a member of the OECD or any political subdivision thereof, that has a combined capital and surplus and undivided profits of not less than $500,000,000;

(v)  fully collateralized repurchase agreements with a term of not more than 30 days for securities described in clause (i) above and entered into with a financial institution satisfying the criteria of clause (iv) above;

(vi)  an interest bearing account maintained by the Pre-Petition Depositary or its Affiliate with earnings based on the daily federal funds effective rate as determined by the Federal Reserve Bank of New York; and

(vii)  investments in "***money market funds***" within the meaning of Rule 2a-7 of the Investment Company Act of 1940, as amended, substantially all of whose assets are invested in investments of the type described in clauses (i) through (v) above.

"***Casualty Event***" means a casualty event that causes all or a portion of the Property of any Borrower Party or the Refinery to be damaged, destroyed or rendered unfit for normal use for any reason whatsoever (regardless of whether relating to events that have occurred prior to, on or after the Petition Date) other than ordinary use and wear and tear.

"***Change in Law***" means the occurrence, after the date of this Agreement, of any of the following: (a) the adoption or taking effect of any law, rule, regulation or treaty, (b) any change in any law, rule, regulation or treaty or in the administration, interpretation, implementation or application thereof by any Governmental Authority or (c) the making or issuance of any request, rule, guideline or directive (whether or not having the force of law) by any Governmental Authority; *provided* that notwithstanding anything herein to the contrary, (x) the Dodd-Frank Wall Street Reform and Consumer Protection Act and all

5

requests, rules, guidelines or directives thereunder or issued in connection therewith and (y) all requests, rules, guidelines or directives promulgated by the Bank for International Settlements, the Basel Committee on Banking Supervision (or any successor or similar authority) or the United States or foreign regulatory authorities, in each case pursuant to Basel III, shall in each case be deemed to be a "Change in Law", regardless of the date enacted, adopted or issued.

"***Change of Control***" has the meaning given to the term "Change of Control" in the Pre-Petition Term Credit Agreement.

"***Chapter 11 Cases***" has the meaning specified in the recitals to this Agreement.

"***Closing Date***" has the meaning specified in Section 4.01.

"***Collateral***" means all "DIP Collateral" as such term is defined in the DIP Order.  For the avoidance of doubt, Collateral shall not include any Avoidance Actions and, until otherwise expressly provided in the Final DIP Order, Avoidance Proceeds.

"***Collateral Agent***" has the meaning specified in the preamble to this Agreement.

"***Commitment***" means with respect to any Lender at any time the amount set forth for such period opposite such Lender's name on Schedule I hereto under the caption "*Commitment*" or, if such Lender has entered into one or more Assignment and Assumptions, set forth for such Lender in the Register maintained by the Administrative Agent as such Lender's "*Commitment*" for such period, as such amount may be reduced at or prior to such time pursuant to Section 2.06 or Section 7.01. The aggregate of the Commitments of all Lenders hereunder shall be (and shall not exceed) $25,000,000 and shall not be reduced by the outstanding amount of any PIK Loans.

"***Commitment Period***" means the period commencing on the Closing Date and ending on the Commitment Termination Date.

"***Commitment Termination Date***" means the earliest to occur of (i) the date on which the Commitment is permanently reduced to zero in accordance with Section 2.06, (ii) the date on which the Commitment is terminated pursuant to Section 7.01, and (iii) the Maturity Date.

"***Connection Income Taxes***" means Other Connection Taxes that are imposed on or measured by net income (however denominated) or that are franchise Taxes or branch profits Taxes.

"***Consent Decree***" shall mean the Consent Decree entered on June 7, 2011 in the United States District Court of the Virgin Islands in the matter of United States of America, and United States Virgin Islands v. Hovensa L.L.C. (Civ. No.:  1:11-cv-00006), as such Consent Decree may be amended or revised.

"***Consolidated***" refers to the consolidation of accounts in accordance with GAAP.

"***Contract Termination Proceeds***" has the meaning specified to the term "Contract Termination Proceeds" in the Pre-Petition Depositary Agreement; provided that, any such proceeds that constitute Inventory Financing Collateral shall be deemed to not be "Contract Termination Proceeds" for all purposes hereof until the Discharge of Inventory Financing Obligations (as defined in the Pre-Petition Depositary Agreement) has occurred.

"***Contractual Obligations***" means, as applied to any Person, any provision of any Capital Stock issued by such Person or of any indenture, mortgage, deed of trust, contract, undertaking, agreement or other instrument to which such Person is a party or by which it or any of its Properties is bound.

"***Control***" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract or otherwise.  "***Controlling***" and "***Controlled***" have meanings correlative thereto.

"***Control Agreement***" means, with respect to an account of a Borrower Party, an agreement or other arrangement (in each case, in form and substance reasonably satisfactory to the Collateral Agent) which provides for the Collateral Agent to have "control" (as defined in Section 8-106 of the UCC, as such term relates to investment property (other than certificated securities or commodity contracts), or as used in Section 9-106 of the UCC, as such term relates to commodity contracts, or as used in Section 9-104(a) of the UCC, as such term relates to deposit accounts), in each case, as amended, amended and restated, supplemented and/or otherwise modified from time to time.

"***Debt***" means, as applied to any Person and without duplication:

(i)     all Debt for Borrowed Money;

(ii)    that portion of obligations with respect to Capitalized Leases that is properly classified as a liability on a balance sheet in conformity with GAAP;

(iii)   all obligations of such Person evidenced by notes, bonds, debentures, drafts or other similar instruments representing extensions of credit whether or not representing obligations for borrowed money;

(iv)    any obligation owed for all or any part of the deferred purchase price of property or services (excluding any such obligations incurred under an Employee Benefit Plan), which purchase price is due more than six months from the date of incurrence of the obligation in respect thereof;

(v)     all indebtedness secured by any Lien on any property or asset owned or held by such Person regardless of whether the indebtedness secured thereby shall have been assumed by such Person or is nonrecourse to the credit of that Person;

(vi)    the amount of any letter of credit issued for the account of such Person or as to which such Person is otherwise liable for reimbursement of drawings;

(vii)   the direct or indirect guaranty, endorsement (otherwise than for collection or deposit in the ordinary course of business), co-making, discounting with recourse or sale with recourse by such Person of the obligation of another;

(viii)  any obligation of such Person the primary purpose or intent of which is to provide assurance to an obligee that the obligation of the obligor thereof will be paid or discharged, or any agreement relating thereto will be complied with, or the holders thereof will be protected (in whole or in part) against loss in respect thereof;

(ix)    any liability of such Person for an obligation of another through any agreement (contingent or otherwise) (a) to purchase, repurchase or otherwise acquire such obligation or any security therefor, or to provide funds for the payment or discharge of such obligation (whether in the form of loans, advances, stock purchases, capital contributions or otherwise) or (b) to maintain the solvency or any balance sheet item, level of income or financial condition of another if, in the case of any agreement described under sub-clause (a) or (b) of this clause (ix), the primary purpose or intent thereof is as described in clause (viii) above; and

(x)     all obligations of such Person in respect of any exchange traded or over the counter derivative transaction, including any Hedge Agreements, whether entered into for hedging or speculative purposes.

"***Debt for Borrowed Money***" means, for any Person, at any date of determination, the sum, without duplication, of (a) all items that, in accordance with GAAP, would be classified as indebtedness on a Consolidated balance sheet of such Person at such date, and (b) all obligations of such Person under acceptance, letter of credit or similar facilities at such date but excluding Debt in respect of Capitalized Leases and purchase money debt.

"***Debt Proceeds***" means, with respect to the incurrence or issuance of any Debt by any Borrower Party (other than Debt permitted to be incurred or issued pursuant to <u>Section 6.02(b)</u>), the Net Cash Proceeds received by any Borrower Party in connection with such incurrence or issuance.

"***Debtor Relief Laws***" means the Bankruptcy Code of the United States of America, and all other liquidation, conservatorship, bankruptcy, assignment for the benefit of creditors, moratorium, rearrangement, receivership, insolvency, reorganization, or similar debtor relief laws of the United States or other applicable jurisdictions from time to time in effect.

"***Default***" means any Event of Default or a condition or event that, after notice or lapse of time or both, would constitute an Event of Default.

"***Default Notice***" has the meaning specified in <u>Section 6.03(b)</u>.

"***Defaulting Lender***" means, subject to <u>Section 3.9</u>, any Lender that (a) has failed to (i) fund all or any portion of its Advances within two Business Days of the date such Advances were required to be funded hereunder unless such Lender notifies the Administrative Agent and the Borrower in writing that such failure is the result of such Lender's determination that one or more conditions precedent to funding (each of which conditions precedent, together with any applicable default, shall be specifically identified in such writing) has not been satisfied, or (ii) pay to the Administrative Agent or any other Lender any other amount required to be paid by it hereunder within two Business Days of the date when due, (b) has notified the Borrower or the Administrative Agent in writing that it does not intend to comply with its funding obligations hereunder, or has made a public statement to that effect (unless such writing or public statement relates to such Lender's obligation to fund the Advances hereunder and states that such position is based on such Lender's determination that a condition precedent to funding (which condition precedent, together with any applicable default, shall be specifically identified in such writing or public statement) cannot be satisfied), (c) has failed, within three Business Days after written request by the Administrative Agent or the Borrower, to confirm in writing to the Administrative Agent and the Borrower that it will comply with its prospective funding obligations hereunder (*provided* that such Lender shall cease to be a Defaulting Lender pursuant to this <u>clause (c)</u> upon receipt of such written confirmation by the Administrative Agent and the Borrower), or (d) has, or has a direct or indirect parent company that has (i) become the subject of a proceeding under any Debtor Relief Law, or (ii) had appointed for it a receiver, custodian, conservator, trustee, administrator, assignee for the benefit of creditors or similar Person charged with reorganization or liquidation of its business or assets, including the Federal Deposit Insurance Corporation or any other state or federal regulatory authority acting in such a capacity; *provided* that a Lender shall not be a Defaulting Lender solely by virtue of the ownership or acquisition of any equity interest in that Lender or any direct or indirect parent company thereof by a Governmental Authority so long as such ownership interest does not result in or provide such Lender with immunity from the jurisdiction of courts within the United States or from the enforcement of judgments or writs of attachment on its assets or permit such Lender (or such Governmental Authority) to reject, repudiate, disavow or disaffirm any contracts or agreements made with

8

such Lender. Any determination by the Administrative Agent that a Lender is a Defaulting Lender under any one or more of clauses (a) through (d) above shall be conclusive and binding absent manifest error, and such Lender shall be deemed to be a Defaulting Lender (subject to Section 3.9) upon delivery of written notice of such determination to the Borrower and each Lender.

"***Deposit Account***" means a demand, time, savings, checking, passbook or like account with a bank, savings and loan association, credit union or like organization, other than an account evidenced by a negotiable certificate of deposit.

"***Designated Jurisdiction***" means any country or territory to the extent that such country or territory itself is the subject of any Sanctions (including, without limitation, Cuba, Iran, North Korea, Syria, and the Crimea region of Ukraine).

"***DIP Budget***" means the "Approved Budget" as such term is defined in the DIP Order.

"***DIP Facility***" means, at any time, the aggregate amount of the Lenders' Commitments or Advances at such time.

"***DIP Lien***" has the meaning specified in the DIP Order.

"***DIP Obligations***" has the meaning specified in the DIP Order.

"***DIP Order***" means the Interim DIP Order or the Final DIP Order, as applicable.

"***DIP Superpriority Claim***" has the meaning given to such term in DIP Order.

"***Disbursement Line Items***" shall mean any disbursement line item in a DIP Budget, unless designated as an immaterial line item by the Administrative Agent and Required Lenders in their approval thereof; provided that, in no event will professionals fees be deemed a "Disbursement Line Item".

"***Disposition***" means any sale, assignment, transfer, conveyance or other disposition.  "***Dispose***" shall have a corollary meaning.

"***Dollars***" and the sign "***$***" mean the lawful currency of the United States of America.

"***Domestic Lending Office***" means, with respect to any Lender, the office of such Lender specified as its "*Domestic Lending Office*" opposite its name on Schedule I hereto or such other office of such Lender as such Lender may from time to time specify to the Borrower and the Administrative Agent.

"***EEA Financial Institution***" means (a) any credit institution or investment firm established in any EEA Member Country which is subject to the supervision of an EEA Resolution Authority, (b) any entity established in an EEA Member Country which is a parent of an institution described in clause (a) of this definition, or (c) any financial institution established in an EEA Member Country which is a subsidiary of an institution described in clause (a) or (b) of this definition and is subject to consolidated supervision with its parent.

"***EEA Member Country***" means any of the member states of the European Union, Iceland, Liechtenstein, and Norway.

"***EEA Resolution Authority***" means any public administrative authority or any person entrusted with public administrative authority of any EEA Member Country (including any delegee) having responsibility for the resolution of any EEA Financial Institution.

"**_Effect of Bankruptcy_**" means, with respect to any contractual obligation, contract or agreement to which a Loan Party or a Subsidiary thereof is a party, any default or other legal consequences arising on account of the commencement or the filing of the Chapter 11 Cases (including the implementation of any stay), or the rejection of any such contractual obligation, contract or agreement with the approval of the Bankruptcy Court if required under applicable law.

"**_Eminent Domain Proceeds_**" means, with respect to any Event of Eminent Domain, the Net Cash Proceeds received by any Borrower Party in connection with such Event of Eminent Domain; provided that any such proceeds that constitute Inventory Financing Collateral shall be deemed to not be "Eminent Domain Proceeds" for all purposes hereof until the Discharge of Inventory Financing Obligations (as defined in the Pre-Petition Depositary Agreement) has occurred.

"**_Employee Benefit Plan_**" means any "_employee benefit plan_" as defined in Section 3(3) of ERISA (a) which is or was adopted, sponsored, maintained or contributed to by, or required to be contributed to by, any Borrower Party or any of their respective ERISA Affiliates or (b) with respect to or in connection with which any Borrower Party could have any actual or contingent liability.

"**_Environmental Action_**" means any investigation, notice, notice of violation, claim, action, suit, proceeding, demand, consent order, consent decree, abatement order or other order or directive (conditional or otherwise) by any Governmental Authority or any other Person, arising (a) pursuant to or in connection with Environmental Law or any actual or alleged violation of Environmental Law; (b) in connection with any Hazardous Material or any actual or alleged Hazardous Materials Activity; or (c) in connection with any actual or alleged damage, injury, threat or harm from Hazardous Materials to human health, safety or the environment (including natural resources).

"**_Environmental Law_**" means any and all applicable current or future, international, United States or U.S. Virgin Islands' (or any subdivision of any of them) statutes, ordinances, orders, rules, regulations, judgments, Governmental Authorizations, or any other legally enforceable requirements of Governmental Authorities (including the Consent Decree, to the extent any Borrower Party becomes a party thereto) relating to (i) environmental matters or the protection of the environment (including surface water, groundwater, soils or subsurface strata, or indoor or outdoor air), including those legal requirements relating to any Hazardous Materials Activity; (ii) occupational safety and health (to the extent related to exposure to Hazardous Materials); or (iii) the protection of human, plant or animal health or welfare, in any manner applicable to the Refinery or any Borrower Party or any of their respective Properties.

"**_Environmental Response Trust_**" means the Environmental Response Trust established in accordance with the Hovensa Confirmation Order.

"**_ERISA_**" means the Employee Retirement Income Security Act of 1974, as amended from time to time, and any successor thereto.

"**_ERISA Affiliate_**" means, as applied to any Person, (a) any corporation which is a member of a controlled group of corporations within the meaning of Section 414(b) of the Internal Revenue Code of which that Person is a member; (b) any trade or business (whether or not incorporated) which is a member of a group of trades or businesses under common control within the meaning of Section 414(c) of the Internal Revenue Code of which that Person is a member; and (c) solely for the purpose of the funding requirements of Section 412 of the Internal Revenue Code or Section 302 of ERISA, any member of an affiliated service group within the meaning of Section 414(m) or (o) of the Internal Revenue Code of which that Person, any corporation described in clause (a) above or any trade or business described in clause (b) above is a member.

"***Equityholder-Related Party***" means each Equityholder and any Affiliate, Affiliated Fund or Related Fund thereof, but shall exclude any Loan Party.

"***Equityholder*** " means the "Preferred Members" as such term is defined in the Pre-Petition Term Loan Credit Agreement.

"***ERISA Event***" means (a) a "*reportable event*" within the meaning of Section 4043 of ERISA and the regulations issued thereunder with respect to any Pension Plan (excluding those for which the provision for 30-day notice to the PBGC has been waived by regulation); (b) the failure to meet the minimum funding standard of Section 412 of the Internal Revenue Code with respect to any Pension Plan (whether or not waived in accordance with Section 412(c) of the Internal Revenue Code) or the failure to make by its due date a required installment under Section 430(j) of the Internal Revenue Code with respect to any Pension Plan or the failure to make any required contribution to a Multiemployer Plan; (c) the provision by the administrator of any Pension Plan pursuant to Section 4041(a)(2) of ERISA of a notice of intent to terminate such plan in a distress termination described in Section 4041(c) of ERISA; (d) the withdrawal by any Borrower Party or any of their respective ERISA Affiliates from any Pension Plan with two or more contributing sponsors who are not treated as a single employer under Title IV of ERISA or the termination of any such Pension Plan resulting in liability to any Borrower Party or any of their respective ERISA Affiliates pursuant to Section 4063 or 4064 of ERISA; (e) the institution by the PBGC of proceedings to terminate any Pension Plan, or the occurrence of any event or condition which could reasonably be expected to constitute grounds under ERISA for the termination of, or the appointment of a trustee to administer, any Pension Plan; (f) the imposition of liability on any Borrower Party or any of their respective ERISA Affiliates pursuant to Section 4062(e) or 4069 of ERISA or by reason of the application of Section 4212(c) of ERISA; (g) the withdrawal of any Borrower Party or any of their respective ERISA Affiliates in a complete or partial withdrawal (within the meaning of Sections 4203 or 4205 of ERISA) from any Multiemployer Plan if there is any potential liability therefor, or the receipt by any Borrower Party or any of their respective ERISA Affiliates of notice from any Multiemployer Plan that it is in insolvency pursuant to Section 4245 of ERISA, or that it intends to terminate or has terminated under Section 4041A or 4042 of ERISA; (h) the imposition of a Lien pursuant to Section 430(k) of the Internal Revenue Code or pursuant to ERISA with respect to any Pension Plan; (i) the occurrence of a non-exempt prohibited transaction (within the meaning of Section 4975 of the Internal Revenue Code or Section 406 of ERISA) which could reasonably be expected to result in material liability to any Borrower Party or any of their respective ERISA Affiliates; (j) a Pension Plan is, or is expected to be, in "at risk" status within the meaning of Section 430(i)(4) of the Internal Revenue Code or Section 303(i)(4) of ERISA; or (k) a Multiemployer Plan is in "endangered status" (under Section 432(b)(1) of the Internal Revenue Code or Section 305(b)(1) of ERISA) or "critical status" (under Section 432(b)(2) of the Internal Revenue Code or Section 305(b)(2) of ERISA).

"***Event of Default***" has the meaning specified in <u>Section 7.01</u>.

"***Event of Eminent Domain***" means any action, series of actions, omissions or series of omissions by any Governmental Authority (a) by which such Governmental Authority appropriates, confiscates, condemns, expropriates, nationalizes, seizes or otherwise takes all or a material portion of the Property of any Borrower Party or the Refinery (including any Capital Stock of any Borrower Party) or (b) by which such Governmental Authority assumes custody or control of the Property (other than immaterial portions of such Property) or business operations of any Borrower Party or the Refinery (or any Capital Stock of any Borrower Party).

"***Excess Cash Flow***" means, as of any date of determination, the amount of funds available in the LBR Revenue Account as of such date after giving effect to the withdrawals, transfers and payments

11

specified in sub-clauses (i) through (x) of Section 3.2(c) of the Pre-Petition Depositary Agreement on or prior to such date.

"*Excluded Taxes*" means any of the following Taxes imposed on or with respect to a Recipient or required to be withheld or deducted from a payment to a Recipient, (a) Taxes imposed on or measured by net income (however denominated), franchise Taxes, branch profits Taxes, U.S. Virgin Islands gross receipts Taxes and U.S. Virgin Islands excise Taxes, in each case, (i) imposed as a result of such Recipient being organized under the laws of, or having its principal office or, in the case of any Lender, its Applicable Lending Office located in, the jurisdiction imposing such Tax (or any political subdivision thereof) or (ii) that are Other Connection Taxes, (b) in the case of a Lender, U.S. Virgin Islands withholding Taxes imposed on amounts payable to or for the account of such Lender with respect to an applicable interest in the Advances or Commitment pursuant to a law in effect on the date on which (i) such Lender acquires such interest in the Advances or Commitment or (ii) such Lender changes its Applicable Lending Office, except in each case to the extent that, pursuant to Section 3.05, amounts with respect to such Taxes were payable either to such Lender's assignor immediately before such Lender became a party hereto or to such Lender immediately before it changed its Applicable Lending Office, (c) Taxes attributable to such Recipient's failure to comply with Section 3.05(f) and (d) any Taxes imposed under FATCA.

"*Existing Accounts*" means (i) each "Depositary Account" under and as defined in the Pre-Petition Depositary Agreement and (ii) each other Deposit Account, securities account or other account established and held in the name of any Borrower Party as of the Petition Date.

"*FATCA*" means Sections 1471 through 1474 of the Internal Revenue Code as of the date of this Agreement, or as applicable in the U.S. Virgin Islands (or any amended or successor version that is substantively comparable and not materially more onerous to comply with), any current or future regulations or official interpretations thereof, any agreements entered into pursuant to Section 1471(b)(1) of the Internal Revenue Code or as applicable in the U.S. Virgin Islands, and any applicable intergovernmental agreements entered into in connection with the foregoing and any fiscal or regulatory legislation, rules or practices adopted pursuant to any such intergovernmental agreement.

"*Fee Letter*" means the letter agreement, dated on or about the date hereof, between the Borrower and the Administrative Agent.

"*Feedstock Supply Agreement*" means that certain Feedstock Supply Agreement, dated as of November 15, 2018, by and between BP and LBRM, as amended by Amendment No. 1 to Feedstock Supply Agreement, dated as of February 22, 2021.

"*Final DIP Order*" means a Final Order of the Bankruptcy Court entered in the Chapter 11 Cases after a final hearing under Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure in form and substance acceptable to the Required Lenders and the Agent authorizing and approving, among other things, the DIP Facility on a final basis, the terms of this Agreement and the other Loan Documents on a final basis, and the granting of the Liens on the Collateral with the priority contemplated in this Agreement, as the same may be amended, amended and restated, supplemented or otherwise modified from time to time with the express consent of the Required Lenders.

"*Final Order*" means an order signed by the Bankruptcy Court as to which no stay has been entered and which has not been reversed, vacated or overturned, and for which no appeal or motion to reconsider has been timely filed or, if timely filed, such appeal or motion to reconsider has been dismissed or denied unless the Required Lenders waive such requirement in writing.

"***Final Order Entry Date***" means the date on which the Final DIP Order shall have been entered on the docket of the Bankruptcy Court.

"***Financial Officer***" in respect of any Person means the chief executive officer, chief restructuring officer, president, chief financial officer, chief accounting officer, any vice-president, controller, treasurer or any assistant treasurer of such Person.

"***First DIP Funding Date***" means the date of the Initial Borrowing under the DIP Facility pursuant to **Error! Reference source not found.**.

"***Fiscal Quarter***" means a fiscal quarter of any Fiscal Year.

"***Fiscal Year***" means a fiscal year of the Borrower ending on December 31 of each calendar year.

"***Foreign Lender***" means a Lender that is not a USVI Person.

"***Fund***" means any Person (other than a natural Person) that is (or will be) engaged in making, purchasing, holding or otherwise investing in commercial loans and similar extensions of credit in the ordinary course of its activities.

"***Funding Date***" means each date on which an Advance is funded following the satisfaction or waiver of the conditions in Section 4.01 and 4.02.

"***Funding Notice***" has the meaning specified in Section 2.02(a).

"***GAAP***" means generally accepted accounting principles in the United States set forth in the opinions and pronouncements of the Accounting Principles Board and the American Institute of Certified Public Accountants and statements and pronouncements of the Financial Accounting Standards Board or such other principles as may be approved by a significant segment of the accounting profession in the United States, as in effect from time to time.

"***Governmental Authority***" means any federal, territorial, state, municipal, national or other government, governmental department, commission, board, bureau, court, agency or instrumentality or political subdivision thereof, or any entity, officer or examiner exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to any government or any court, in each case whether associated with a state of the United States, the United States, the U.S. Virgin Islands or, to the extent applicable and legally binding, a foreign entity or government (including any supra-national bodies such as the European Union or the European Central Bank).

"***Governmental Authorization***" means any authorization, approval, consent, franchise, license, covenant, order, ruling, permit, certification, exemption, registration, notice, declaration or similar right, undertaking or other action of, to or by, or any filing, qualification or registration with, any Governmental Authority.

"***Group***" has the meaning specified in Section 5.01(v)(i).

"***Guarantors***" has the meaning set forth in the preamble hereto.

"***Hazardous Materials***" means (a) any petrochemical or petroleum products, oil, waste oil, asbestos in any form that is or could become friable, urea formaldehyde foam insulations, toxic mold, lead-based paint and polychlorinated biphenyls; (b) any products, mixtures, compounds, materials, wastes or substances, air emissions, toxic substances, wastewater discharges and any chemical, material, waste or substance that may give rise to liability pursuant to, or is listed or regulated under, or the human exposure

13

to which or the Release of which is controlled or limited by Environmental Laws; and (c) any materials, wastes or substances defined in Environmental Laws as "*hazardous*," "*toxic*," "*pollutant*," or "*contaminant*," or words of similar meaning or regulatory effect.

"***Hazardous Materials Activity***" means any past, current, proposed or threatened activity, event or occurrence involving any Hazardous Materials, including the generation, use, manufacture, possession, storage, holding, presence, existence, location, Release, threatened Release, discharge, placement, transportation, processing, construction, treatment, abatement, removal, remediation, disposal, disposition or handling of any Hazardous Materials, and any corrective action or response action with respect to any of the foregoing.

"***Hedge Agreement***" means (a) any and all interest rate swap transactions, basis swaps, credit derivative transactions, forward rate transactions, commodity swaps, commodity options, forward commodity contracts, equity or equity index swaps or options, bond or bond price or bond index swaps or options or forward bond or forward bond price or forward bond index transactions, interest rate options, forward foreign exchange transactions, cap transactions, floor transactions, collar transactions, currency swap transactions, cross-currency rate swap transactions, currency options, spot contracts, or any other similar transactions or any combination of any of the foregoing (including any options to enter into any of the foregoing), whether or not any such transaction is governed by or subject to any master agreement, and (b) any and all transactions of any kind, and the related confirmations, which are subject to the terms and conditions of, or governed by, any form of master agreement published by the International Swaps and Derivatives Association, Inc. or any Master Agreement, including any such obligations or liabilities under any Master Agreement.

"***Highest Lawful Rate***" means the maximum lawful interest rate, if any, that at any time or from time to time may be contracted for, charged, or received under the laws applicable to any Lender which are presently in effect or, to the extent allowed by law, under such applicable laws which may hereafter be in effect and which allow a higher maximum nonusurious interest rate than applicable laws now allow.

"***Holdco Loan Documents***" has the meaning given to the term "Holdco Loan Documents" in the Pre-Petition Term Credit Agreement.

 "***Holdings***"  has the meaning assigned to such term in the preamble hereto.

"***Hovensa Confirmation Order***" means the Order Granting Final Approval of Disclosure Statement and Confirming Chapter 11 Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code, Case No. 1:15-bk-10003 (MFW) (Jan. 20, 2016) Docket No. 572 (i) approving the Debtor's Second Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code, Case No. 1:15-bk-10003 (MFW) (Jan. 19, 2016) Docket No. 563 and (ii) granting other relief as set forth therein.

"***Indemnified Taxes***" means (a) Taxes, other than Excluded Taxes, imposed on or with respect to any payment made by or on account of any obligation of any Loan Party under any Loan Document and (b) to the extent not otherwise described in (a), Other Taxes.

"***Indemnitee***" has the meaning specified in <u>Section 10.02(b)</u>.

"***Initial Borrowing***" means the first Borrowing of Advances on or after the Closing Date.

"***Initial Commitment Period***" means the period commencing on the date of entry of the Interim DIP Order and ending on the date of entry of the Final DIP Order.

"*Initial Lenders*" means the banks, financial institutions and other institutional lenders listed on the signature pages hereof as the Initial Lenders.

"*Insurance Consultant*" means Marsh Ltd or any other insurance consultant reasonably acceptable to the Administrative Agent engaged by the Borrower.

"*Insurance Premium Financers*" means any Person (other than an Affiliate of the Borrower) that advances insurance premiums for one or more of the Borrower Parties pursuant to an Insurance Premium Financing Arrangement.

"*Insurance Premium Financing Arrangement*" means any agreement between an Insurance Premium Financer and a Borrower Party that (a) does not provide, for the benefit of such Insurance Premium Financer, any security interest in any property of the Borrower Parties other than gross unearned premiums for the insurance policies and related rights and proceeds therefrom, and (b) does not prohibit the Liens created in favor of Collateral Agent pursuant to the Security Documents.

"*Insurance Proceeds*" means, with respect to any Casualty Event, the Net Cash Proceeds received by any of Borrower Parties from time to time with respect to such Casualty Event (regardless of whether such claims or proceeds are relating to events that have occurred prior to, on or after the Petition Date); provided that any such proceeds that constitute Inventory Financing Collateral shall be deemed to not be "Insurance Proceeds" for all purposes hereof until the Discharge of Inventory Financing Obligations (as defined in the Pre-Petition Depositary Agreement) has occurred.

"*Insurance Report*" means the Limetree Bay Refinery Final Report on the Insurance, dated as of November 8, 2018, by the Insurance Consultant.

"*Interest Payment Date*" has the meaning given such term in Section 2.05(b) hereof.

"*Interest Rate Hedge*" means, individually or collectively, as the context may require, each interest rate swap agreement, interest rate cap agreement, interest rate collar agreement, interest rate hedging agreement or other similar agreement or arrangement, each of which is for the purpose of hedging the interest rate exposure.

"*Interim DIP Order*" means an order of the Bankruptcy Court entered in the Chapter 11 Cases after an interim hearing under Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure in form and substance reasonably acceptable to the Required Lenders and the Agent authorizing and approving, among other things, the DIP Facility on an interim basis, the terms of this Agreement and the other Loan Documents on an interim basis, and the granting of the Liens on the Collateral with the priority contemplated in this Agreement, as the same may be amended, amended and restated, supplemented or otherwise modified from time to time with the express consent of the Required Lenders.

"*Internal Revenue Code*" means the Internal Revenue Code of 1986, as amended, or with regard to the application of the Internal Revenue Code to the U.S. Virgin Islands, the "mirror" system whereby the "U.S. Virgin Islands" is substituted for the "United States" wherever the latter appears, pursuant to 48 U.S.C. 1397.

"*Inventory Financing Collateral*" has the meaning given to the term "Inventory Financing Collateral" in the DIP Order.

"*Inventory Financing Facility*" has the meaning given to the term "Inventory Financing Facility" in the Pre-Petition Term Credit Agreement.

"***Investment***" means (a) any direct or indirect purchase or other acquisition by any Borrower Party of, or of a beneficial interest in, any of the Securities of any other Person; (b) any direct or indirect redemption, retirement, purchase or other acquisition for value, by any Borrower Party from any Person, of any Capital Stock of such Person; and (c) any direct or indirect loan, advance or capital contributions by any Borrower Party to any other Person, including all indebtedness and accounts receivable from that other Person that are not current assets or did not arise from sales to that other Person in the ordinary course of business.  The amount of any Investment shall be the original cost of such Investment *plus* the cost of all additions thereto, without any adjustments for increases or decreases in value, or write ups, write downs or write offs with respect to such Investment.

"***IRS***" means the United States Internal Revenue Service or, where applicable, the Virgin Islands Bureau of Internal Revenue.

"***J. Aron***" means J. Aron & Company LLC, a limited liability company organized under the laws of the State of New York.

"***J. Aron Transaction Documents***" has the meaning given such term in the DIP Order.

"***Joint Venture***" means a joint venture, partnership or other similar arrangement, whether in corporate, partnership or other legal form; *provided* that in no event shall any corporate Subsidiary of any Person be considered to be a Joint Venture to which such Person is a party.

"***LBE***" means Limetree Bay Energy, LLC, a Delaware limited liability company.

"***LBR Revenue Account***" has the meaning specified in the Pre-Petition Depositary Agreement.

"***LBRH***" has the meaning specified in the preamble hereto.

"***LBRM***" has the meaning specified in the preamble hereto.

"***LBRO***" has the meaning specified in the preamble hereto.

"***LBS***" has the meaning specified in the preamble hereto.

"***LBT***" has the meaning assigned to such term in the recitals.

"***Lender***" means the Initial Lenders and each other person that becomes a Lender hereunder pursuant to an Assignment and Assumption.

"***Lien***" means (a) any lien, mortgage, deed of trust, deed to secure debt, pledge, collateral assignment, security interest, charge or encumbrance of any kind (including any agreement to give any of the foregoing, any conditional sale or other title retention agreement, and any lease or license in the nature thereof) and any option, trust or other preferential arrangement having the practical effect of any of the foregoing and (b) in the case of Securities, any purchase option, call or similar right of a third party with respect to such Securities.  For the avoidance of doubt, "***Lien***" shall not include any netting or set-off arrangements under any Contractual Obligation (other than any Contractual Obligation constituting Debt for Borrowed Money or having the effect of Debt for Borrowed Money) otherwise permitted under the terms hereof.

"***Loan Documents***" means this Agreement, each Security Document, the DIP Budget and each other document delivered to the Administrative Agent in connection with this Agreement and/or the credit extended hereunder, including without limitation the Fee Letter, in each case, as amended, amended and restated, supplemented or otherwise modified from time to time.

16

"***Loan Parties***" means the Borrower Parties.

"***Margin Stock***" has the meaning specified in Regulation U.

"***Master Agreement***" means any Master Agreement published by the International Swaps and Derivatives Associations, Inc.

"***Material Adverse Effect***" means a material adverse effect on (a) the business, operations, properties, assets or condition (financial or otherwise) of the Borrower Parties taken as a whole (other than as customarily occurs as a result of events leading up to and following the commencement of a proceeding under Chapter 11 of the Bankruptcy Code and the commencement of the Chapter 11 Cases), (b) the ability of the Borrower Parties, taken as a whole, to fully and timely perform their material Obligations under the Loan Documents or (c) the material rights, remedies or benefits available to the Agents and the Secured Parties, taken as a whole, under the Loan Documents. A "Material Adverse Effect" shall not be deemed to exist as a result of the Effect of Bankruptcy or the events leading up to and resulting therefrom.

"***Material Contract***" has the meaning given to the term "Material Contract" in the Pre-Petition Term Credit Agreement.

"***Maturity Date***" means earliest to occur of: (a) the date that is nine (9) months after the date of entry of the Interim DIP Order, (b) the date of the closing of a sale of all or a material portion of the Borrower Parties' assets under section 363 of the Bankruptcy Code, (c) the effective date of any confirmed plan in the Chapter 11 Cases, (d) the filing of a motion or other pleading requesting (or the entry of an order approving) the appointment of a trustee, other estate fiduciary or an examiner with special or expanded powers which the Debtors fail to timely oppose without the prior written consent of the Administrative Agent and the Lenders;  (e) the date of acceleration of the Advances or termination of the Commitment by the Required Lenders or the Administrative Agent (at the direction of the Required Lenders) pursuant to Section 7.01 following an Event of Default; and (f) the occurrence of a Termination Event (as defined in the DIP Order).

"***Milestones***" has the meaning specified in Section 6.01(p).

"***Monthly Toll Payments***" means an amount equal to the "Monthly Toll Payments" under and as defined in the Tolling Agreement as calculated pursuant to the Tolling Agreement, without giving effect to any netting or set-off against amounts owed to BP (which amounts shall be deemed paid by BP for purposes of the definition of "Non-Toll Amounts" and Section 2.04(b)(v) hereof and Section 3.07 and Article VI of the Pre-Petition Depositary Agreement if paid by BP, netted or set-off against amounts owed to BP or paid pursuant to the BP Guaranty).

"***Moody's***" means Moody's Investors Service, Inc.

 "***Mortgaged Property***" means any Real Estate Assets then owned in fee by the Borrower that is subject to a Mortgage, as set forth on Schedule 1.01(a).

"***Multiemployer Plan***" means any Employee Benefit Plan which is a "multiemployer plan" as defined in Section 3(37) of ERISA and that is subject to Title IV of ERISA.

"***Net Cash Proceeds***" means:

(i)        with respect to any Asset Sale, the excess, if any, of (a) the sum of Cash and Cash Equivalents received by the Borrower Parties in connection with such Asset Sale (including Business Interruption Insurance Proceeds, or payments in lieu thereof, any Cash or Cash

17

Equivalents received by way of deferred payment pursuant to, or by monetization of, a note receivable or otherwise, but only as and when so received and including any proceeds received as a result of unwinding any related Secured Interest Rate Hedge Agreement in connection with such related transaction) minus (b) the sum of (1) the reasonable out of pocket costs, fees, commissions, premiums and expenses (including legal fees and expenses) incurred by the Borrower Parties in connection with such Asset Sale to the extent such amounts were not deducted in determining the amount referred to in sub-clause (a), (2) federal, state, provincial, foreign and local (including U.S. Virgin Islands) Taxes reasonably estimated (on a Consolidated basis) to be payable by the Borrower Parties (or their respective beneficial owner) within the current or the immediately succeeding tax year as a result of any gain recognized in connection therewith to the extent such amounts were not deducted in determining the amount referred to in sub-clause (a); and (3) a reasonable reserve determined by a Financial Officer of the Borrower Parties in its reasonable business judgment and only for so long as and to the extent required under the applicable purchase agreement for any purchase price adjustments (including working capital adjustments or adjustments attributable to seller's indemnities and representations and warranties to purchaser in respect of such Asset Sale) expressly contemplated by the purchase agreement relating to such Asset Sale;

(ii)      with respect to the incurrence or issuance of any Debt by the Borrower Parties (other than the DIP Loans), an amount equal to the sum of the Cash and Cash Equivalents received by the Borrower Parties in connection with such incurrence or issuance (including any proceeds received as a result of unwinding any related Secured Interest Rate Hedge Agreement in connection with such related transaction); and

(iii)      with respect to any proceeds of or under any casualty or property insurance, indemnity, condemnation awards, warranty or guaranty (other than Business Interruption Insurance Proceeds) received by the Borrower Parties in connection with the occurrence of any Casualty Event or Event of Eminent Domain, an amount equal to (a) the sum of Cash and Cash Equivalents received by the Borrower Parties in connection with such Casualty Event or Event of Eminent Domain (including any proceeds received as a result of unwinding any related Secured Interest Rate Hedge Agreement in connection with such related transaction) minus (b) the sum of (1) the reasonable out of pocket costs and expenses (including legal fees and expenses) incurred by the Borrower Parties in connection with the collection, enforcement, negotiation, consummation, settlement, proceedings, administration or other activity related to the receipt or collection of the relevant proceeds to the extent such amounts were not deducted in determining the amount referred to in sub-clause (a), and (2)  federal, state, provincial, foreign and local (including U.S. Virgin Islands) Taxes reasonably estimated (on a Consolidated basis) to be payable by the Borrower Parties (or their respective beneficial owner) within the current or the immediately succeeding tax year as a result of any gain recognized in connection therewith.

"**Non-Defaulting Lender**" means, at any time, a Lender that is not a Defaulting Lender.

"**Non-Toll Amounts**" means all amounts payable to the Loan Parties under the Tolling Agreement, the Feedstock Supply Agreement and/or the Product Offtake Agreement, other than the Monthly Toll Payment, any Tolling Agreement Prepayments and any other amount the prepayment of which results in reduction of the Toll Balance (as defined in the Tolling Agreement).

"**Note**" means a promissory note of the Borrower payable to any Lender, in substantially the form of Exhibit B, evidencing the indebtedness of the Borrower to such Lender resulting from the Advances made by such Lender, as amended.

"**Obligations**" means all obligations of every nature of each Loan Party, including from time to time owed to any Agent (including former Agents) or any Lender from time to time under any Loan Document, whether for principal, interest (including interest which, but for the filing of a petition in bankruptcy with respect to such Loan Party, would have accrued on any Obligation, whether or not a claim is allowed against such Loan Party for such interest in the related bankruptcy proceeding), fees, expenses, indemnification or otherwise fees, yield maintenance, premium, expenses, indemnification or otherwise.

"**OECD**" means the Organization for Economic Cooperation and Development.

"**OFAC**" means the U.S. Department of the Treasury's Office of Foreign Assets Control.

 "**Operating Agreement**" means, that certain Refinery Operating Agreement, dated July 2, 2018, by and between the Government of the U.S. Virgin Islands and the Borrower.

"**Organizational Documents**" means, with respect to any Person, as applicable, its certificate or articles of incorporation or organization, by laws, certificate of partnership, partnership agreement, certificate of formation, articles of organization, limited liability company agreement and/or operating agreement, and all shareholder agreements, voting trusts and similar arrangements applicable to any of such Person's partnership interests, limited liability company interests or authorized shares of Capital Stock, in each case as amended.

"**Other Connection Taxes**" means, with respect to any Recipient, Taxes imposed as a result of a present or former connection between such Recipient and the jurisdiction imposing such Tax (other than connections arising from such Recipient having executed, delivered, become a party to, performed its obligations under, received payments under, received or perfected a security interest under, engaged in any other transaction pursuant to or enforced any Loan Document, or sold or assigned an interest in any Advance or Loan Document).

"**Other Taxes**" means all present or future stamp, court or documentary, intangible, recording, filing or similar Taxes that arise from any payment made under, from the execution, delivery, performance, enforcement or registration of, from the receipt or perfection of a security interest under, or otherwise with respect to, any Loan Document, except any such Taxes that are Other Connection Taxes imposed with respect to an assignment.

"**Participant**" has the meaning specified in Section 10.05(d).

"**Participant Register**" has the meaning specified in Section 10.05(d).

"**Patriot Act**" means the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Pub. L. 107-56, signed into law October 26, 2001.

"**PBGC**" means the Pension Benefit Guaranty Corporation or any successor thereto.

"**Pension Plan**" means any Employee Benefit Plan, other than a Multiemployer Plan, which is or was subject to Title IV or ERISA, Section 412 of the Internal Revenue Code or Section 302 of ERISA.

"**Permitted Capital Expenditures**" means (a) Required Capital Expenditures and (b) other Capital Expenditures to the extent approved by the Required Lenders (and any other party whose approval is required pursuant to the terms of the DIP Order).

"**Permitted Interim Activities**" means any activities that the Borrower Parties may undertake or consummate, using its reasonable business judgment, solely to the extent such activities are undertaken or

consummated (i) in furtherance of any Required Shutdown Activities, (ii) as permitted by and in accordance with the DIP Budget and the DIP Order, and (ii) in all material respects in accordance with Prudent Industry Practice, Governmental Authorizations and Contractual Obligations binding on it and applicable laws.

"***Permitted Liens***" means:

(i)     "Permitted Liens" as such term is defined in the Pre-Petition Term Credit Agreement;

(ii)    Liens for Taxes, to the extent not required to be paid pursuant to Section 6.01(b);

(iii)   statutory or common law Liens of landlords, carriers, warehousemen, mechanics, materialmen, repairmen, construction contractors or other like Liens arising in the ordinary course of business which secure amounts not overdue for a period of more than 90 days or if more than 90 days overdue, are unfiled and no other action has been taken to enforce such Lien or which are being contested in good faith and by appropriate actions, if adequate reserves with respect thereto are maintained on the books of the applicable Person in accordance with GAAP to the extent required by GAAP;

(iv)    Liens incurred in the ordinary course of business in connection with workers' compensation, unemployment insurance and other types of social security, or to secure the performance of statutory obligations, surety and appeal bonds (other than bonds related to judgment or litigation to the extent such judgment or litigation constitutes a Default), leases, performance and return of money bonds and other similar obligations (exclusive of obligations for the payment of Debt for Borrowed Money or other Debt), so long as no foreclosure, sale or similar proceedings have been commenced with respect to any portion of Property of the Borrower Parties;

(v)     easements, rights-of-way, restrictions, title imperfections, encroachments, other minor defects or irregularities in title and similar matters if the same do not detract from the Required Shutdown Activities or the operation or use the Refinery in the ordinary conduct of the business of the Borrower Parties (taken as a whole);

(vi)    (i) any interest or title of a licensor, lessor or sublicensor or sublessor under any lease (including a ground lease) or license permitted by this Agreement, (ii) any Lien or restriction that the interest or title of such lessor, licensor, sublessor or sublicensor may be subject to and (iii) to the extent constituting a Lien, leases, licenses, subleases or sublicenses granted to others that do not interfere with the Required Shutdown Activities or the ordinary conduct of the business of the Borrower Parties (taken as a whole);

(vii)   purported Liens evidenced by the filing of precautionary UCC financing statements relating solely to operating leases of personal property entered into in the ordinary course of business;

(viii)  Liens in favor of customs and revenue authorities arising as a matter of law to secure payment of customs duties in connection with the importation of goods;

(ix)    encumbrances on real property in the nature of any zoning restrictions, building and land use laws, ordinances, orders, decrees, restrictions or any other conditions imposed by any Governmental Authority on any Real Estate Asset, if the same does not have an adverse effect on the Required Shutdown Activities or the operation or use the Refinery in the ordinary conduct of the business of the Borrower Parties (taken as a whole);

20

(x)  non-exclusive licenses or sublicenses of patents, copyrights, trademarks and other intellectual property rights granted by any Borrower Party in the ordinary course of business and not interfering in any material respect with the ordinary conduct of or materially detracting from the value of the business of the Borrower Parties;

(xi)  any exceptions on any mortgage policies, surveys, title reports, title commitments, endorsements or other similar documents related to the Mortgaged Properties listed on Schedule 1.01(a) that (A) are not monetary in nature, (B) do not secure Debt and (C) in the aggregate, do not interfere with the Required Shutdown Activities or the operation or use the Refinery in the ordinary conduct of the business of the Borrower Parties (taken as a whole);

(xii)  junior Liens under the Operating Agreement and the USVI Mortgage and Security Agreement in favor of the Government of the Virgin Islands;

(xiii)  (A) Liens under the Security Documents (including DIP Liens), (B) Liens on the Inventory Financing Collateral pursuant to the J. Aron Transaction Documents, and (C) junior Liens securing Pre-Petition Debt of the Borrower Parties permitted under Section 6.02(b)(ii);

(xiv)  Liens or pledges of deposits of Cash or Cash Equivalents securing letters of credit permitted under Section 6.02(b)(viii);

(xv)  any Lien with respect to the Properties of any Borrower Party that arose under Prudent Industry Practices on or prior to the Closing Date and the foreclosure of which is not material to the operation or use of the Refinery in the ordinary course of business;

(xvi)  Liens securing judgments (or the payment of money not constituting an Event of Default under Section 7.01(g)) or securing appeal or other surety bonds related to such judgments;

(xvii)  Liens arising by virtue of any statutory or common law provision relating to bankers' liens, rights of set-off or similar rights;

(xviii)  Liens or pledges of deposits of Cash or Cash Equivalents securing deductibles, self-insurance, co-payment, co-insurance, retentions or similar obligations to providers or property, casualty or liability insurance in the ordinary course of business;

(xix)  (A) Liens existing on the Closing Date and listed on Schedule III, and (B) Liens arising under Contractual Obligations listed on Schedule IV; *provided* that the Lien does not extend to any additional property;

(xx)  any easements, rights of way, restrictions, covenants, duties, agreements and other obligations provided for in the Real Estate Documents, as and to the extent contemplated thereunder on the Funding Date;

(xxi)  Liens consisting of an agreement to Dispose of any property in a Disposition permitted hereunder solely to the extent that such investment or Disposition would have been permitted on the date of the creation of such Lien;

(xxii)  obligations under or in connection with management services agreements, the Shared Services Systems Agreement or other agreements relating to any Shared Facilities or any related non-disturbance arrangements to the extent such obligations constitute Liens;

(xxiii)  (A) rights of any Governmental Authority arising by reason of their control over navigable waters in the interest of navigation and commerce and/or the inalienable right of any

Governmental Authority in the lands and/or waters of such character, (B) title to any filled in land, littoral rights, and riparian rights, and (C) rights of any Governmental Authority in the public lands lying below the mean high water mark; and

(xxiv)   rights, if any, of the public acquired by virtue of territorial statute with respect to the special nature of seaside beaches to use any part of the subject property which lies within the area defined as running inland a distance of 50 feet from the seaward line of low tide, or to the extreme seaward boundary of natural vegetation which spreads continuously inland, or to the natural barrier, whichever is the shortest distance;

in each case, to the extent such Liens are created, incurred or assumed on or after the Petition Date, solely to the extent such Liens are created, incurred or assumed in connection with the Required Shutdown Activities.

"***Person***" means and includes natural persons, corporations, limited partnerships, general partnerships, limited liability companies, limited liability partnerships, joint stock companies, Joint Ventures, associations, companies, trusts, banks, trust companies, land trusts, business trusts or other organizations, whether or not legal entities, and Governmental Authorities.

"***Petition Date***" has the meaning specified in the recitals to this Agreement.

"***PIK Loans***" means the aggregate principal amount of the Obligations which are, during the term of this Agreement, added to the Obligations by payment in kind of PIK Interest.

"***Platform***" has the meaning specified in Section 10.01(d)(i).

"***Pledge Agreement***" means a pledge agreement delivered pursuant to Section 6.01(k)(ii), among Holdings and the Collateral Agent with respect to Holdings' Capital Stock in Borrower.

"***Post-Petition***" means the time period following the Petition Date.

"***Post-Petition Debt***" means Debt incurred after the Petition Date.

"***Pre-Petition***" means the time period prior to the Petition Date.

"***Pre-Petition Agents***" means, individually or collectively, as the context may require, the Pre-Petition Revolving Administrative Agent, the Pre-Petition Term Administrative Agent, the Pre-Petition Collateral Agent and the Pre-Petition Inventory Financing Agent, together with all successors and assigns.

"***Pre-Petition Collateral***" means all properties and assets of the Loan Parties, now owned or hereafter acquired, in which Liens have been granted (or are purported to have been granted) to (i) the Pre-Petition Collateral Agent to secure all the Pre-Petition Project Secured Obligations and (ii) to the Pre-Petition Inventory Financing Agent to secure all the Pre-Petition Inventory Financing Obligations.

"***Pre-Petition Collateral Agent***" means the "Project Collateral Agent" under and as defined in the Pre-Petition Depositary Agreement and all successors and assigns.

"***Pre-Petition Collateral Documents***" has the meaning given to the term "Collateral Documents" in the Pre-Petition Depositary Agreement.

"***Pre-Petition Depositary***" means the "Depositary" under and as defined in the Pre-Petition Depositary Agreement.

"***Pre-Petition Depositary Agreement***" means that certain Amended and Restated Depositary and Intercreditor Agreement, dated as of March 3, 2020, among the Borrower Parties, the Pre-Petition Term Administrative Agent, the Petition Revolving Administrative Agent, the Pre-Petition Collateral Agent, J. Aron as the Inventory Financing Facility Agent, the Pre-Petition Depositary and the other Persons from time to time party thereto, as amended, amended and restated, supplemented or otherwise modified from time to time prior to the date hereof.

"***Pre-Petition Debt***" means the Debt of the Borrower Parties arising before the Petition Date relating to the Borrower Parties' bankruptcy estates, including related to the Pre-Petition operation of the Borrower Parties' business.

"***Pre-Petition Financing Documents***" means, individually or collectively, as the context may require, the Holdco Loan Documents, the Pre-Petition Term Loan Documents, the Pre-Petition Revolving Loan Documents and the Pre-Petition Inventory Financing Documents, and including, without limitation, the Pre-Petition Intercreditor Agreement, all security agreements, notes, guarantees, mortgages and UCC financing statements, in each case, as such documents are in effect on the date hereof.

"***Pre-Petition First Funding Date***" means November 30, 2018.

"***Pre-Petition Intercreditor Agreement***" means that certain Collateral Agency and Intercreditor Agreement dated as of November 20, among the Borrower Parties, the other obligors from time to time party thereto, the Pre-Petition Term Administrative Agent, the Pre-Petition Revolving Administrative Agent, the Pre-Petition Collateral Agent, as amended, restated, modified or supplemented from time to time prior to the date hereof.

"***Pre-Petition Inventory Financing Agent***" means the "Inventory Financing Facility Agent" under and as defined in the Pre-Petition Depositary Agreement and all successors and assigns.

"***Pre-Petition Inventory Financing Documents***" means the Pre-Petition Inventory Financing MMA and each other "Transaction Document" referred to therein.

"***Pre-Petition Inventory Financing MMA***" means that certain Monetization Master Agreement, dated as of March 3, 2020, among J. Aron, Borrower, LBRM and LBRO, as amended, amended and restated, supplemented or otherwise modified from time to time prior to the date hereof.

"***Pre-Petition Payment***" means a direct or indirect payment, redemption, purchase, defeasance or acquisition for value of principal or interest or otherwise on account of any Pre-Petition Debt or other Pre-Petition claims against any Loan Party.

"***Pre-Petition Revolving Administrative Agent***" means the "Administrative Agent" under and as defined in the Pre-Petition Revolving Credit Agreement and all successors and assigns.

"***Pre-Petition Revolving Credit Agreement***" means that certain Credit Agreement, dated as of November 20, 2018, between LBRM, as borrower, the other Borrower Parties, Holdings, the Pre-Petition Revolving Administrative Agent, the lenders party thereto from time to time, as amended, amended and restated, supplemented or otherwise modified from time to time prior to the date hereof.

"***Pre-Petition Revolving Loan Documents***" has the meaning given to the term "Loan Documents" in the Pre-Petition Revolving Credit Agreement.

"***Pre-Petition Secured Hedge Agreement***" has the meaning given to the term "Secured Hedge Agreement" in the Pre-Petition Depositary Agreement.

"*Pre-Petition Project Secured Obligations*" has the meaning given to the term "Secured Obligations" in the Pre-Petition Depositary Agreement.

"*Pre-Petition Secured Obligations*" means, individually or collectively, as the context may require, the Pre-Petition Project Secured Obligations and the Pre-Petition Inventory Financing Obligations.

"*Pre-Petition Inventory Financing Obligations*" has the meaning given to the term "Inventory Financing Secured Obligations" in the Pre-Petition Depositary Agreement.

"*Pre-Petition Project Secured Parties*" means the "Project Secured Parties" under and as defined in the Pre-Petition Depositary Agreement.

"*Pre-Petition Secured Parties*" means, individually or collectively, as the context may require, the Pre-Petition Project Secured Parties and the Pre-Petition Inventory Financing Secured Parties.

"*Pre-Petition Inventory Financing Secured Parties*" means the "Inventory Financing Secured Parties" under and as defined in the Pre-Petition Depositary Agreement.

"*Pre-Petition Security Agreement*" has the meaning given to the term "Security Agreement" in the Pre-Petition Depositary Agreement.

"*Pre-Petition Term Administrative Agent*" means the "Administrative Agent" under and as defined in the Pre-Petition Term Credit Agreement.

"*Pre-Petition Term Credit Agreement*" means that certain Credit Agreement, dated as of December 24, 2020, between the Borrower, as borrower, the other Borrower Parties, Holdings, the Pre-Petition Term Administrative Agent, the lenders party thereto from time to time, as amended, amended and restated, supplemented or otherwise modified from time to time prior to the date hereof.

"*Pre-Petition Term Lenders*" means the "Lenders" under and as defined in the Pre-Petition Term Credit Agreement.

"*Pre-Petition Term Loan Documents*" means the "Loan Documents" as defined in the Pre-Petition Term Credit Agreement.

"*Process Agent*" has the meaning specified in Section 10.13(d).

"*Product Offtake Agreement*" means that certain Product Offtake Agreement, dated as of November 15, 2018, by and between LBRM and BP, as amended by the First Amendment to Product Offtake Agreement dated as of April 15, 2019 and as further amended by the Second Amendment to Product Offtake Agreement, dated as of February 22, 2021.

"*Property*" means any right or interest in or to any asset or property of any kind whatsoever (including Capital Stock, undivided interests and interests as tenants in common), whether real, personal or mixed and whether tangible or intangible.

"*Pro Rata Share*" means, with respect to any amount, with respect to any Lender at any time and with respect to the DIP Facility, the product of such amount multiplied by a fraction the numerator of which is the amount of Advances owed to such Lender under the DIP Facility at such time and the denominator of which is the aggregate amount of the Advances then outstanding and owed to all Lenders under the DIP Facility at such time.

"***Prudent Industry Practice***" means those practices, methods, techniques, specifications and standards of safety and performance, as they may be modified from time to time, that (a) are generally accepted in the large-scale refinery industry as good, safe and prudent engineering practices in connection with the design, construction, operation, maintenance, repair or use of large-scale refinery facilities which are similar to the Refinery and (b) are otherwise in compliance in all material respects with applicable law and Governmental Authorizations.  Prudent Industry Practice is not intended to be limited to the optimum practice, method or act to the exclusion of all others, but rather to be acceptable practices, methods or acts generally accepted in the region or as required by any Governmental Authority or standards setting agency.

"***Real Estate Assets***" means, at any time of determination, any fee or leasehold interest, easement, consent, permit or license, then owned or held by any Borrower Party in any real property.

"***Real Estate Documents***" means, collectively, each agreement, easement, license, lease, permit, revocable consent and other document or instrument specified on Schedule II.

"***Recipient***" means (a) each Agent and (b) any Lender, as applicable.

"***Refinery***" has the meaning assigned to such term in the recitals.

"***Refinery Deconstruction***" has the meaning specified in the Operating Agreement.

"***Register***" has the meaning specified in Section 10.05(c).

"***Regulation D***" means Regulation D of the Board of Governors, as in effect from time to time.

"***Regulation T***" means Regulation T of the Board of Governors, as in effect from time to time.

"***Regulation U***" means Regulation U of the Board of Governors, as in effect from time to time.

"***Regulation X***" means Regulation X of the Board of Governors, as in effect from time to time.

"***Related Fund***" means, with respect to any Equityholder that is an investment fund or holding company wholly owned by one or more investment funds, (a) with respect to any such investment fund, any other investment fund, account or company that is managed, advised or sub-advised by (i) the same investment advisor that manages, advises or subadvises such Equityholder or (ii) an Affiliate of such investment advisor or (b) with respect to any such holding company, any other holding company wholly owned by one or more investment funds, accounts or companies that is managed, advised or sub-advised by (i) the same investment advisor that manages, advises or sub-advises such Equityholder or (ii) an Affiliate of such investment advisor.  With respect to any the Equityholder referenced in clause (i) of the definition thereof or any of its Affiliates or Related Funds, "Related Fund" shall also include any swap, special purpose vehicles purchasing or acquiring security interests in collateralized loan obligations or any other vehicle through which any such Equityholder or any of its Affiliates or Related Funds may leverage its investments from time to time.

"***Related Parties***" means, with respect to any Person, such Person's Affiliates and the partners, directors, officers, employees, agents, trustees, administrators, managers, advisors and representatives of such Person and of such Person's Affiliates.

"***Release***" means any release, spill, emission, leaking, pumping, pouring, injection, escaping, deposit, disposal, discharge, dispersal, dumping, leaching or migration of any Hazardous Material into the indoor or outdoor environment (including the abandonment or disposal of any barrels, containers or other closed receptacles containing any Hazardous Material), including the movement of any Hazardous Material through the air, soil, surface water or groundwater.

"**_Remedies Notice Period_**" has the meaning specified in the DIP Order.

"**_Removal Effective Date_**" shall have the meaning specified in <u>Section 8.06(a)</u>.

"**_Repayment Event_**" means the repayment in full in cash of all of the outstanding principal amount of the Advances and all other monetary Obligations (other than contingent obligations) due and payable under the Loan Documents.

"**_Required Capital Expenditures_**" means all Capital Expenditures that are payable by a Borrower Party and reasonably necessary to permit the Borrower Parties to (a) operate or maintain the Refinery in accordance with Prudent Industry Practices and/or the Material Contracts (including turn-arounds and major maintenance), (b) comply with Governmental Authorizations or applicable law (including any Environmental Laws), (c) satisfy obligations under the Operating Agreement in respect of Refinery Deconstruction and, in any event, would not, if paid, constitute a breach of the DIP Order or cause an unpermitted variance under the DIP Budget, or (d) perform, undertake, or consummate the Required Shutdown Activities.

"**_Required Lenders_**" means, at any time, the Lender or Lenders holding more than 66.67% of the sum of (without duplication) the aggregate principal amount of the Advances outstanding at such time; _provided_ that, if any Lender shall be a Defaulting Lender at such time, there shall be excluded from the determination of Required Lenders at such time the aggregate principal amount of the Advances owing to such Lender (in its capacity as a Lender) and outstanding at such time.

"**_Required Shutdown Activities_**" means all the activities that Borrower Parties must undertake, consummate and perform on and after the Petition Date in connection with the shutdown of operations at the Refinery and any other facilities owned or operated by such Borrower Parties, and in all cases, in accordance with the DIP Budget and the DIP Order.

"**_Resignation Effective Date_**" shall have the meaning specified in <u>Section 8.06(a)</u>.

"**_Responsible Officer_**" means, as to any Person, any individual holding the position of chairman of the board (if an officer), president, chief executive officer or one of its vice presidents and such Person's treasurer or chief financial officer.

"**_Restricted Payment_**" means (a) any dividend or other distribution, direct or indirect, on account of any shares of any class of stock of a Borrower Party now or hereafter outstanding, except a dividend payable solely in shares of that class of stock to the holders of that class; (b) any redemption, retirement, sinking fund or similar payment, purchase or other acquisition for value, direct or indirect, of any shares of any class of stock of a Borrower Party now or hereafter outstanding; (c) any payment made to retire, or to obtain the surrender of, any outstanding warrants, options or other rights to acquire shares of any class of stock of a Borrower Party now or hereafter outstanding; (d) management or similar fees payable to a Borrower Party's Affiliates; and (e) any payment or prepayment of principal of, premium, if any, or interest on, or redemption, purchase, retirement, defeasance (including in substance or legal defeasance), sinking fund or similar payment with respect to, any Debt owed by a Borrower Party to any of its Affiliates (other than any other Borrower Party).

"**_S&P_**" means Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc.

"**_Sanctions_**" has the meaning specified in <u>Section 5.01(v)(i)</u>.

"**Secured Parties**" means and includes the Administrative Agent, the Collateral Agent and each Lender.

"**Securities**" means any stock, shares, partnership interests, voting trust certificates, certificates of interest or participation in any profit sharing agreement or arrangement, options, warrants, bonds, debentures, notes, or other evidences of indebtedness, secured or unsecured, convertible, subordinated or otherwise, or in general any instruments commonly known as "*securities*" or any certificates of interest, shares or participations in temporary or interim certificates for the purchase or acquisition of, or any right to subscribe to, purchase or acquire, any of the foregoing.

"**Security Documents**" mean the DIP Order and, after the execution and delivery thereof, each additional security document executed pursuant to Section 2.08 (if any).

"**Shared Facilities**" means the Shared Premises, Shared Services Systems and Shared Services Systems Sites, in each case, as defined in the Shared Services Systems Agreement.

"**Shared Services Systems Agreement**" has the meaning specified in the recitals hereto.

"**Solvent**" or "**Solvency**" means, with respect to any Borrower Party or group of Borrower Parties, as the case may be, that as of the date of determination, both (a) (i) the sum of such Persons' Debt (including contingent liabilities) does not exceed the present fair saleable value of such Persons' present assets (taken as a whole); (ii) such Persons' capital (taken as a whole) is not unreasonably small in relation to their business as contemplated on the applicable date of determination; and (iii) such Persons (taken as a whole) have not incurred and do not intend to incur, or believe (nor should they reasonably believe) that they will incur, Debt beyond their ability to pay such Debt as they become due (whether at maturity or otherwise); and (b) such Persons (taken as a whole) are "*solvent*" within the meaning given that term and similar terms under the Bankruptcy Code and applicable laws relating to fraudulent transfers and conveyances. For purposes of this definition, the amount of any contingent liability at any time shall be computed as the amount that, in light of all of the facts and circumstances existing at such time, represents the amount that can reasonably be expected to become an actual or matured liability (irrespective of whether such contingent liabilities meet the criteria for accrual under GAAP).

"**Subsidiary**" means, with respect to any Person, any corporation, partnership, limited liability company, association, Joint Venture or other business entity of which more than 50% of the total voting power of shares of stock or other ownership interests entitled (without regard to the occurrence of any contingency) to vote in the election of the Person or Persons (whether directors, managers, trustees or other Persons performing similar functions) having the power to direct or cause the direction of the management and policies thereof is at the time owned or Controlled, directly or indirectly, by that Person or one or more of the other Subsidiaries of that Person or a combination thereof; *provided* that, in determining the percentage of ownership interests of any Person Controlled by another Person, no ownership interest in the nature of a "*qualifying share*" of the former Person shall be deemed to be outstanding. Unless otherwise specified, all references herein to a "Subsidiary" or to "Subsidiaries" shall refer to a Subsidiary or Subsidiaries of the Borrower Parties.

"**Taxes**" means any present and future taxes, levies, imposts, duties, deductions, withholdings (including backup withholding), assessments, fees or other charges imposed by any Governmental Authority, including any interest, additions to tax or penalties applicable thereto.

"**Terminal**" has the meaning assigned to such term in the recitals.

"***Terminal Services Agreement***" means that certain Terminal Services Agreement, dated as of the Pre-Petition First Funding Date, by and between LBT and LBRM.

"***Terminal Services Agreement (Included Locations)***" means that certain Terminal Services Agreement (Included Locations), dated as of March 3, 2020, among J. Aron, LBRM and LBT, as amended, amended and restated, supplemented or otherwise modified from time to time.

"***Terminal Services Consent***" means that certain Collateral Assignment of Terminal Services Agreement, dated as of the Pre-Petition First Funding Date, among the Pre-Petition Collateral Agent and LBT with respect to the Terminal Services Agreement.

"***Testing Period***" has the meaning specified in Section 6.01(o)(vi).

"***Tolling Agreement***" means that certain Amended and Restated Tolling Agreement, dated as of February 22, 2021, by and among, by and among BP, the Borrower and LBRM.

"***Tolling Agreement Prepayment Account***" has the meaning specified in the Pre-Petition Depositary Agreement.

"***Tolling Agreement Prepayments***" means an amount equal to or deemed to be any "Excess Toll Payments" (as defined in the Tolling Agreement), a "Final Toll Payment" (as defined in the Tolling Agreement) or any other termination, cancellation or redemption payments that have the effect of reducing the Toll Balance (as defined in the Tolling Agreement), in each case, as calculated pursuant to the Tolling Agreement, without giving effect to any netting or set-off against amounts owed to BP (which amounts shall be deemed paid by BP for purposes of the definition of "Non-Toll Amounts", Section 2.04(b)(v) hereof and Section 3.07 and Article VI of the Pre-Petition Depositary Agreement if paid by BP, netted or set-off against amounts owed to BP or paid pursuant to the BP Guaranty).

"***Total Credit Exposure***" means, as to any Lender at any time, the outstanding Advances of such Lender at such time.

"***Transaction Documents***" means, individually or collectively, as the context may require, the Loan Documents and the Material Contracts.

"***Transactions***" means, collectively, (a) the execution, delivery and performance by the Loan Parties of the Loan Documents to which they are a party and, in each case, the other transactions contemplated therein or thereby, (b) the borrowing of the Advances hereunder and the use of proceeds thereof, (c) the payment of fees and expenses to be paid on or prior to the Closing Date and owing in connection with the foregoing, and (d) the other transactions to occur on or prior to the Funding Date pursuant to this Agreement.

"***UCC***" means the Uniform Commercial Code as in effect from time to time in the State of New York; *provided* that if, with respect to any filing statement or by reason of any provisions of law, the perfection or the effect of perfection or non-perfection of the security interests granted to the Collateral Agent pursuant to the applicable Security Document is governed by the Uniform Commercial Code as in effect in a jurisdiction of the United States other than New York, UCC means the Uniform Commercial Code as in effect from time to time in such other jurisdiction for purposes of the provisions of each Loan Document and any filing statement relating to such perfection or effect of perfection or non-perfection.

"***U.S. Trustee***" means the Office of the United States trustee.

"***USVI Mortgage and Security Agreement***" means that certain Mortgage and Security Agreement, dated as of the Pre-Petition First Funding Date, by and between the Borrower and the Government of the U.S. Virgin Islands.

"***USVI Existing LC***" means that certain irrevocable standby letter of credit no. 69606183, dated January 11, 2016, in the amount of $50,000,000 for the benefit of the Government of the U.S. Virgin Islands, issued by Citibank, N.A. for ArcLight Energy Partners Fund VI, L.P., a Delaware limited partnership, as applicant.

"***USVI Person***" means any Person that is a "U.S. Virgin Islands person" as defined in Section 7701(a)(30) of the Internal Revenue Code (as applicable in the U.S. Virgin Islands).

"***USVI Tax Compliance Certificate***" has the meaning specified in <u>Section 3.05(f)(iii)(C)(1)</u>.

"***Voidable Transfer***" has the meaning specified in <u>Section 9.08</u>.

 "***Withholding Agent***" means each of the Borrower and the Administrative Agent.

SECTION 1.02     <u>Rules of Interpretation</u>.  Except as otherwise expressly provided, the following rules of interpretation shall apply to this Agreement and the other Loan Documents:

(a)     the definitions of terms herein shall apply equally to the singular and plural forms of the terms defined;

(b)     whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms;

(c)     the words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation";

(d)     the word "will" shall be construed to have the same meaning and effect as the word "shall";

(e)     unless the context requires otherwise, (A) any definition of or reference to any agreement, instrument or other document herein (including any Loan Document but excluding any Pre-Petition Financing Document) shall be construed as referring to such agreement, instrument or other document as from time to time amended, amended and restated, supplemented and/or otherwise modified or replaced from time to time (subject to any restrictions on such amendments, amendments and restatements, supplements and/or other modifications or replacements set forth herein or therein) and shall include any appendices, schedules, exhibits, clarification letters, side letters and disclosure letters executed in connection therewith, and (B) any reference to a Schedule (or Part or any constituent term thereof) (other than Schedule 1 and Schedule 10.01(a)) shall be deemed to be a reference to the Pre-Petition Term Credit Agreement in effect as of the date hereof (without giving effect to any amendments thereunder) except to the extent that any such schedule is amended, restated, supplemented, deleted, or otherwise modified pursuant to the express terms of the Schedule appended hereto. For illustrative purposes only, any reference to Part I of Schedule 5.01(e) shall be deemed a reference to Part I of Schedule 5.01(e) of the Pre-Petition Term Credit Agreement in effect as of the date hereof (without giving effect to any amendments thereunder) except to the extent that the disclosure is amended, restated, supplemented, deleted, or otherwise modified pursuant to the express terms of the Part I of Schedule 5.01(e) appended hereto;

(f)      any reference herein to any Person (other than any Equityholder) shall be construed to include such Person's successors and assigns to the extent permitted under the Loan Documents and, in the case of any Governmental Authority, any Person succeeding to its functions and capacities;

(g)      the words "herein", "hereof" and "hereunder", and words of similar import, shall be construed to refer to this Agreement in its entirety and not to any particular provision hereof;

(h)      all references herein to Articles, Sections, Appendices, Exhibits and Schedules shall be construed to refer to Articles and Sections of, and Appendices, Exhibits and Schedules to, this Agreement;

(i)      the words "asset" and "property" shall be construed to have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts and contract rights;

(j)      unless the context requires otherwise, any definition of or reference to any law or regulation shall be construed as referring to such law or regulation as from time to time amended, supplemented or otherwise modified;

(k)      any reference herein to a merger, transfer, consolidation, amalgamation, consolidation, assignment, sale, disposition or transfer, or similar term, shall be deemed to apply to a division of or by a limited liability company, limited partnership or trust, or an allocation of assets to a series of a limited liability company, limited partnership or trust (or the unwinding of such a division or allocation), as if it were a merger, transfer, consolidation, amalgamation, consolidation, assignment, sale or transfer, or similar term, as applicable, to, of or with a separate Person; and

(l)      any division of a limited liability company, limited partnership or trust shall constitute a separate Person hereunder.

SECTION 1.03      Accounting Terms; etc.

(a)      All accounting terms not specifically or completely defined herein shall be construed in conformity with, and all financial data (including financial ratios and other financial calculations) required to be submitted pursuant to this Agreement shall be prepared in conformity with, GAAP, as in effect from time to time, except as otherwise specifically prescribed herein.

(b)      If at any time any change in GAAP or the application thereof would affect the computation of any requirement set forth in any Loan Document, and either the Borrower or the Required Lenders through the Administrative Agent shall so request, the Administrative Agent and the Borrower shall negotiate in good faith to amend such requirement to preserve the original intent thereof in light of such change in GAAP or the application thereof (subject to the approval of the Administrative Agent not to be unreasonably withheld, conditioned or delayed); *provided* that, until so amended, (i) such requirement shall continue to be computed in accordance with GAAP or the application thereof prior to such change therein and (ii) the Borrower shall provide to the Administrative Agent and the Lenders a written reconciliation in form and substance reasonably satisfactory to the Administrative Agent, between calculations of such ratio or requirement made before and after giving effect to such change in GAAP or the application thereof.

(c)      Notwithstanding anything to the contrary in this Agreement, for purposes of determining compliance with any basket, test, or condition under any provision of this Agreement or any

other Finance Document, no Loan Party may retroactively divide, classify, re-classify or deem or otherwise treat a historical transaction as having occurred in reliance on a basket or exception that was not available at the time of such historical transaction or if and to the extent that such basket or exception was relied upon for any later transaction.

SECTION 1.04    Certifications, Etc.    All certifications, notices, declarations, representations, warrants and statements made by any officer, director or employee or a Loan Party pursuant to or in connection with this Agreement shall be made in such Person's capacity as officer, director or employee on behalf of such Loan Party and not in such Person's individual capacity.

## ARTICLE II

## AMOUNTS AND TERMS OF THE ADVANCES

SECTION 2.01    The Advances.

(a)    Subject to the terms and conditions set forth herein and in the DIP Order, each Lender severally agrees to make advances of its Commitment (each an "*Advance*" and, collectively, the "*Advances*") from time to time on any Business Day during the Commitment Period to the Borrower in an aggregate principal equal to its Pro Rata Share of the aggregate Borrowing requested in each Funding Notice delivered under Section 2.02; *provided that* the Advance to be made by each Lender shall not exceed, on the date of such Advance, such Lender's Available Commitment at such time (each, a "*Borrowing*" and collectively the "*Borrowings*"); *provided* that, notwithstanding anything to the contrary herein, (x) during the Initial Commitment Period, only one Borrowing of Advances shall be available to the Borrower, and the aggregate principal amount of such Borrowing shall not exceed $5,500,000 and (y) upon and after the entry of the Final DIP Order, one or two additional Borrowings of Advances shall be available to the Borrower and the aggregate principal amount of such additional Borrowings shall not exceed $19,500,000; *provided further* that the aggregate principal amount of Advances to be made by the Lenders shall not exceed $25,000,000; *provided further* that the Lenders shall not be obligated to fund any Borrowing request if such disbursement would result in the Borrower Parties' pro-forma cash balance to exceed the Borrower Parties' cash balance in the DIP Budget at such time by $5,000,000 or more during the thirty (30) day period following the funding of the Borrowing requested in the Funding Notice, after giving pro forma effect to any planned expenditures projected to be made over such period in accordance with the DIP Budget.  Amounts repaid under the DIP Facility may not be reborrowed.

(b)    For purposes of calculating the Commitments, any Available Commitment, and any other provision of this Agreement or the DIP Order that relates to the amount of Advances which are authorized, permitted, and available for Borrowing, PIK Loans shall be disregarded in their entirety.

SECTION 2.02    Making the Advances.

(a)    Whenever the Borrower desires to incur Advances hereunder, the Borrower shall deliver the Funding Notice to the Administrative Agent not later than 12:00 p.m., New York City time (or such later time as may be required by the Administrative Agent or acceptable to the Required Lenders), no less than three (3) Business Days (or such shorter period as agreed by the Administrative Agent in its sole discretion) before the date of the proposed Borrowing.  Each such notice (the "*Funding Notice*") shall be in writing, may be delivered by telecopier or electronic communication, and shall be in substantially the form of Exhibit C, specifying therein the requested (i) Funding Date as the date of such Borrowing and (ii) aggregate amount of such Borrowing. The Funding Notice for the first Advance upon or after the entry of the Interim DIP Order shall be in a principal amount of $5,500,000. Each subsequent Funding Notice for Advances upon or after entry of the Final DIP Order shall be in a principal amount of $5,000,000 or more,

31

unless the aggregate of each Lender's Available Commitment is less than $5,000,000, in which case the request for Advances may be for the aggregate amount of each Lender's Available Commitment. Upon and after the entry of the Final DIP Order, the Borrower may not request more than two (2) Advances in any ten (10) Business Day period.

(b)    Promptly upon receipt by the Administrative Agent of such Funding Notice, the Administrative Agent shall notify each Lender of the proposed Borrowing and its pro rata share of the aggregate amount of Loans requested pursuant to such Funding Notice.

(c)    No later than 4:00 p.m., New York City time on the date specified in each Funding Notice, each Lender shall credit the Borrower Account (or if the Borrower Account is not established, such other account designated by the Borrower and approved by the Administrative Agent) with its Pro Rata Share of the aggregate amount of Advances requested pursuant to the applicable Funding Notice to be made on such date. The failure of any Lender to make any Advances required to be made by it shall not relieve any other Lender of its obligations hereunder; *provided* that the Commitment of the Lenders is several and no Lender shall be responsible for any other Lender's failure to make Advances as required; *provided*, *further*, that nothing in this Section 2.02 shall prejudice any rights that the Borrower may have against a Defaulting Lender.

SECTION 2.03    Repayment of Advances.    The Borrower shall repay to the Administrative Agent for the ratable account of the Lenders the outstanding principal amount of the Advances and PIK Loans on the Maturity Date.

SECTION 2.04    Prepayments.

(a)    Optional.

(i)    The Borrower may, so long as it is in compliance with the DIP Budget at such time and upon at least three Business Day's written notice substantially in the form of Exhibit D to the Administrative Agent stating the proposed date and aggregate principal amount of the prepayment, and, if such notice is given, the Borrower shall, prepay the outstanding aggregate principal amount of the Advances composing part of the same Borrowing or PIK Loans, in whole or ratably in part, together with accrued and unpaid interest to the date of such prepayment on the aggregate principal amount prepaid; *provided* that each partial prepayment shall be in an aggregate principal amount of $100,000 or an integral multiple of $50,000 in excess thereof.

(ii)    Each voluntary prepayment of the Advances and/or PIK Loans shall be applied, ratably, to prepay the Advances or PIK Loans until the outstanding Advances and PIK Loans are repaid in full.

(iii)    Notice required to be given under this clause (a) must be given in writing, including by telecopier or electronic communication, to the Administrative Agent by 12:00 noon (New York City time) on the date required (and the Administrative Agent will promptly transmit such notice by telecopier or electronic communication to each Lender).

(b)    Mandatory.

(i)    The Borrower shall, within thirty (30) days after the last day of each Fiscal Quarter, commencing with the first such date occurring after the First DIP Funding Date, prepay, the Advances outstanding on such day in an aggregate amount equal to 100% of Excess Cash Flow.

(ii)      Except as expressly permitted by the DIP Budget, within five Business Days of the date of receipt of any Asset Sale Proceeds, Insurance Proceeds, Eminent Domain Proceeds or Contract Termination Proceeds by the Borrower, the Borrower shall (in each case without duplication) prepay an aggregate principal amount of the Advances, in the order of priority set forth in clause (b)(viii) below, in an aggregate amount equal to the amount of such Asset Sale Proceeds, Insurance Proceeds, Eminent Domain Proceeds or Contract Termination Proceeds. No prepayment shall be required pursuant to this Section 2.04(b)(ii) to the extent the Asset Sale Proceeds, Insurance Proceeds, Eminent Domain Proceeds or Contract Termination Proceeds do not exceed $500,000 in a single transaction or related series of transactions (and only such excess shall be required to be prepaid) and to the extent any Asset Sale Proceeds, Insurance Proceeds, Eminent Domain Proceeds or Contract Termination Proceeds remain after the foregoing application to the Obligations, the Commitment shall be permanently reduced dollar for dollar on a pro rata basis by such remaining Asset Sale Proceeds, Insurance Proceeds, Eminent Domain Proceeds or Contract Termination Proceeds. Notwithstanding the foregoing, with respect to Insurance Proceeds and Eminent Domain Proceeds, up to fifty percent (50%) of such Insurance Proceeds and Eminent Domain Proceeds may be reinvested by the Borrower Parties, and used for purposes permitted under and to the extent consistent with the DIP Budget, if the aggregate outstanding principal amount of Advances at such time is less than $5,500,000 and such reinvestment occurs prior to the Maturity Date.

(iii)     The Borrower shall, within five Business Days of the receipt of any Debt Proceeds by any Borrower Party (other than the Advances), prepay, an aggregate principal amount of the Advances in an aggregate amount equal to such Debt Proceeds.

(iv)     Anything contained in this Agreement to the contrary notwithstanding, (i) in no event shall the aggregate principal amount of the Advances at any time outstanding exceed the amount permitted to be outstanding hereunder pursuant to the DIP Order, in each case as the foregoing limits may be in effect from time to time and (ii) the Borrower agrees to immediately prepay the Advances in the amounts and at the times as may be necessary to comply with the foregoing clause (i).

(v)      The Borrower shall, within five Business Days of the receipt of any amounts in the Tolling Agreement Prepayment Account (including, without limitation, any Tolling Agreement Prepayments or Monthly Toll Payments), prepay an aggregate principal amount of the Advances in an aggregate amount equal to such amounts.

(vi)     The Borrower shall, within five Business Days of the receipt of any amounts from J. Aron (whether pursuant to the Pre-Petition Inventory Financing Documents or otherwise), prepay an aggregate principal amount of the Advances in an aggregate amount equal to such amounts.

(vii)    Concurrently with each prepayment made pursuant to clauses (b)(i) through (b)(v), the Borrower shall deliver to the Administrative Agent a certificate of a Responsible Officer demonstrating the calculation of the relevant amount.  In the event that the Borrower shall subsequently determine that the actual amount received exceeded the amount set forth in such certificate, the Borrower shall promptly make an additional prepayment of the Advances and the Borrower shall concurrently therewith deliver to the Administrative Agent in the amount of such excess a certificate of a Responsible Officer demonstrating the derivation of such excess.

(viii)    Each prepayment made pursuant to this <u>Section 2.04(b)</u> shall be applied ratably, to prepay the Advances until all outstanding Advances are paid in full together with all amounts referred to in <u>clause (ix)</u> below.

(ix)    All prepayments under this <u>Section 2.04(b)</u> shall be made together with (A) accrued and unpaid interest to the date of such prepayment on the principal amount prepaid, and (B) any amounts owing pursuant to <u>Section 10.02(g)</u> and, in each case, the amount of principal prepaid shall be correspondingly reduced by the amounts required to be paid pursuant to this <u>clause (ix)</u>.

(x)    All prepayments pursuant to this <u>Section 2.04(b)</u> shall be subject to the terms of the DIP Order.

SECTION 2.05    <u>Scheduled Interest</u>.

(a)    Except as otherwise set forth herein, the Advances and PIK Loans shall bear interest on the unpaid principal amount thereof from the date made through repayment (whether by acceleration or otherwise) thereof at the Applicable Rate.

(b)    Interest on the Advances and PIK Loans:

(i)    shall accrue on a daily basis at the Applicable Rate and (i) the portion of which accrued pursuant to the Applicable Cash Rate shall be paid in cash in arrears on the last Business Day of each calendar month after the First DIP Funding Date and on the Maturity Date (each such date, an "<u>Interest Payment Date</u>") with respect to interest accrued on and to each such date and (ii) the remaining portion of which accrued pursuant to the Applicable PIK Rate shall be payable in kind on each Interest Payment Date (other than the Maturity Date) unless otherwise paid in cash by the Borrower on such Interest Payment Date ("<u>PIK Interest</u>"); and

(ii)    shall be payable in cash in arrears upon any prepayment of the Advances or PIK Loans, whether voluntary or mandatory, to the extent accrued on the amount being prepaid; and

(c)    PIK Interest shall be capitalized, compounded and added to the unpaid principal amount of the Obligations on the applicable Interest Payment Date (other than the Maturity Date). The obligation of the Borrower to pay all such PIK Interest so added shall be automatically evidenced by any Notes issued to the Lenders (without modification or reissuance thereof). Notwithstanding the foregoing, the Borrower may pay any PIK Interest in cash so long as such payment will allow the Borrower to comply with the DIP Budget.

SECTION 2.06    <u>Termination or Reduction of the Commitments</u>. The Commitment shall automatically be permanently reduced on each date of Borrowing of Advances (after giving effect to the Advances incurred on such date) by an amount equal to the aggregate principal amount of the Advances incurred on such Borrowing date.

SECTION 2.07    <u>Promissory Notes</u>.

(a)    Each Lender shall maintain in accordance with its usual practice an account or accounts evidencing the indebtedness of the Borrower to such Lender resulting from the Advances owing to such Lender from time to time, including the amounts of principal and interest payable and paid to such Lender from time to time hereunder.  The Borrower agrees that upon notice by any Lender to the Borrower (with a copy of such notice to the Administrative Agent) to the effect that a promissory note or other

evidence of indebtedness is required or appropriate in order for such Lender to evidence (whether for purposes of pledge, enforcement or otherwise) the Advances owing to, or to be made by, such Lender, the Borrower shall promptly execute and deliver to such Lender, with a copy to the Administrative Agent, a Note payable to such Lender in a principal amount equal to the Advances of such Lender.  All references to Notes in the Loan Documents shall mean Notes, if any, to the extent issued hereunder.

(b)       The Register maintained by the Administrative Agent pursuant to <u>Section 10.05(c)</u> shall include a control account, and a subsidiary account for each Lender, in which accounts (taken together) shall be recorded (i) the date and amount of each Borrowing made hereunder (ii) the terms of each Assignment and Assumption delivered to and accepted by it, (iii) the amount of any principal or interest due and payable or to become due and payable from the Borrower to each Lender hereunder and (iv) the amount of any sum received by the Administrative Agent from the Borrower hereunder and each Lender's share thereof.  The Borrower and each Lender intend that any obligation under the Note be in registered form as defined in Treas.  Reg. Sections 5(f).103-1(c) and 1.871-14(c).

(c)       Entries made in good faith by the Administrative Agent in the Register pursuant to <u>clause (b)</u> above shall be conclusive evidence of the amount of principal and interest due and payable or to become due and payable from the Borrower, under this Agreement, absent manifest error; *provided* that the failure of the Administrative Agent to make an entry, or any finding that an entry is incorrect, which, in either case, shall be promptly corrected, in the Register shall not limit or otherwise affect the obligations of the Borrower under this Agreement.

SECTION 2.08       <u>Collateral Matters</u>.

(a)       <u>Collateral Security Perfection</u>.  Each of the Borrower Parties agrees to take all actions that the Collateral Agent may reasonably request in its sole and absolute discretion to further secure the Obligations or perfect and protect the Collateral Agent's Liens for the benefit of the Secured Parties upon the Collateral and for such Liens to obtain the priority therefor contemplated hereby, including, without limitation, executing and delivering such documents (including, without limitation, security documents, mortgages, deeds of trust, subordination and intercreditor agreements), instruments, financing statements, providing such notices and assents of third parties, obtaining such governmental authorizations and providing such other instruments and documents (in all cases without representation or warranty of any kind) in recordable form as the Collateral Agent or any Lender may reasonably request and, in all cases, in form and substance satisfactory to the Collateral Agent. Each Borrower Party hereby irrevocably authorizes the Collateral Agent at any time and from time to time to file in any filing office in any UCC jurisdiction any initial financing statements and amendments thereto that (a) indicate the Collateral (i) as all assets of such Borrower Party or words of similar effect, regardless of whether any particular asset comprised in the Collateral falls within the scope of Article 9 of the UCC, or (ii) as being of an equal or lesser scope or with greater detail, and (b) provide any other information required by part 5 of Article 9 of the UCC for the sufficiency or filing office acceptance of any financing statement or amendment, including (i) whether such Borrower Party is an organization, the type of organization and any organization identification number issued to such Borrower Party and, (ii) in the case of a financing statement filed as a fixture filing, a sufficient description of real property to which the Collateral relates.  Such Borrower Party agrees to furnish any such information to the Collateral Agent promptly upon request.  Notwithstanding the provisions of this <u>Section 2.08(a)</u>, the Interim DIP Order and Final DIP Order shall be sufficient and conclusive evidence of the validity, perfection, enforceability, non-avoidability and priority of the Liens without the necessity of filing financing statements or amendments, and the Collateral Agent and the Lenders shall have the benefits of the Interim DIP Order, and after the Final Order Entry Date, and the Final DIP Order. Notwithstanding anything to the contrary in the Loan Documents, the parties hereto and all their respective successors and assigns acknowledge and agree that (x) all provisions of the Loan Documents (including,

without limitation, in respect of Collateral and the DIP Lien) are and shall be subject to the terms of the DIP Order, all Aron Rights and all rights and remedies of J. Aron in connection with the Safe Harbor Agreements (as defined in the DIP Order) and (y) any and all actions taken by J. Aron (or permitted by J. Aron) with respect to the Inventory Financing Collateral in connection with the J. Aron Transaction Documents and/or the DIP Order, in each case, shall be permitted for all purposes under the Loan Documents.

(b)      Real Property.  Subject in all respects to the DIP Order and to the Carve-Out (solely upon the occurrence of a Termination Date (as defined in the DIP Order)), the Borrower and the Guarantors shall grant to the Collateral Agent on behalf of the Secured Parties a security interest in, and mortgage on, all of the right, title and interest of the Borrower and the Guarantors in all real property, if any, owned or leased by the Borrower or any of the Guarantors, together in each case with all of the right, title and interest of the Borrower and such Guarantor in and to all buildings, improvements, and fixtures related thereto, any lease or sublease thereof, all general intangibles relating thereto and all proceeds thereof, in each case to the extent secured pursuant to the Pre-Petition Mortgages, *provided* that, the Borrower Parties shall use best efforts to finalize all mortgages, deeds of trust and other related documents for purposes of granting a security interest in all real property of the Borrower Parties no later than 30 Business Days following the date hereof.  The Borrower and the Guarantors acknowledge that, pursuant to the Interim DIP Order or the Final DIP Order (as applicable), the Liens in favor of the Collateral Agent on behalf of the Secured Parties in all of such real property and leasehold interests shall be perfected without the recordation of any instruments of mortgage or assignment and the Collateral Agent and the Lenders shall have the benefits of the Interim DIP Order and, after the Final DIP Order Entry Date, the Final DIP Order.

## ARTICLE III

## OTHER PROVISIONS RELATING TO THE DIP FACILITY

SECTION 3.01      Default Interest.  Upon the occurrence and during the continuance of an Event of Default under Section 7.01, the Borrower shall pay interest on overdue amounts (a) payable on demand at a rate of 11% *per annum*; and (b) to the fullest extent permitted by applicable law, the amount of any overdue interest, fee or other overdue amount payable under this Agreement or any other Loan Document to any Agent or any Lender that is not paid when due, from the date such amount shall be due until such amount shall be paid in full, payable in arrears on the date such amount shall be paid in full and on demand, at a rate *per annum* equal at all times to 11% *per annum*.  Payment or acceptance of the increased rates of interest provided for in this Section 3.01 is not a permitted alternative to timely payment and shall not constitute a waiver of any Event of Default or otherwise prejudice or limit any rights or remedies of Administrative Agent or any Lender.

SECTION 3.02      Fees. The Borrower shall pay to each Agent for its own account such fees as may from time to time be separately agreed between the Borrower and such Agent (including those fees set forth in the Fee Letter).

SECTION 3.03      Change of Circumstances.

(a)      Increased Costs Generally.  If any Change in Law shall:

(i)      impose, modify or deem applicable any reserve, special deposit, compulsory loan, insurance charge or similar requirement against assets of, deposits with or for the account of, or credit extended or participated in by, any Lender;

36

(ii)     subject any Recipient to any Taxes (other than (A) Indemnified Taxes, (B) Taxes described in <u>clauses (b)</u> through <u>(d)</u> of the definition of "Excluded Taxes" and (C) Connection Income Taxes) on its Advances, Advance principal, Commitments or other obligations under the Loan Documents, or its deposits, reserves, other liabilities or capital attributable thereto; or

(iii)     impose on any Lender or the London interbank market any other condition, cost or expense (other than Taxes) affecting this Agreement or the Advances made by such Lender or participation therein;

and the result of any of the foregoing shall be to increase the cost to such Lender or such other Recipient of making, continuing or maintaining the Advances or of maintaining its obligation to make the Advances, or to reduce the amount of any sum received or receivable by such Lender or other Recipient hereunder (whether of principal, interest or any other amount) in each case by an amount which such Lender or other Recipient deems to be material, then, upon request of such Lender or other Recipient, the Borrower will pay to such Lender or other Recipient, as the case may be, such additional amount or amounts as will compensate such Lender or other Recipient, as the case may be, for such additional costs incurred or reduction suffered; *provided* that (A) the Borrower shall not be responsible for costs under this <u>clause (a)</u> or <u>clause (b)</u> below if such costs were incurred more than 180 days prior to receipt by the Borrower of the demand from the affected Lender or other Recipient, as the case may be, pursuant to this <u>clause (a)</u> or <u>clause (b)</u> below, unless the requirement resulting in such increased costs became effective during such 180-day period and retroactively applies to a date occurring prior to such 180-day period, in which case the Borrower shall be responsible for all such additional amounts described in this <u>clause (a)</u> or <u>clause (b)</u> below from and after such date of effectiveness and (B) a Lender or other Recipient, as the case may be, claiming additional amounts under this <u>Section 3.03</u> agrees to use commercially reasonable efforts (consistent with its internal policy and legal and regulatory restrictions) to designate a different Applicable Lending Office if the making of such a designation would avoid the need for, or reduce the amount of, such increased cost that may thereafter accrue and would not, in the reasonable judgment of such Lender or other Recipient, as the case may be, be otherwise disadvantageous to such Lender or other Recipient, as the case may be.  A certificate as to the amount of such increased cost, submitted to the Borrower by such Lender or other Recipient, as the case may be, shall be conclusive and binding for all purposes, absent manifest error.

(b)     <u>Capital Requirements</u>.  If any Change in Law affecting a Lender or any lending office of such Lender or such Lender's holding company, if any, regarding capital or liquidity requirements, has or would have the effect of reducing the rate of return on such Lender's capital or on the capital of such Lender's holding company, if any, as a consequence of this Agreement, the Commitments of such Lender or the Advance made by such Lender to a level below that which such Lender or such Lender's or holding company could have achieved but for such Change in Law (taking into consideration such Lender's policies and the policies of such Lender's holding company with respect to capital adequacy or liquidity) by an amount reasonably deemed by such Lender to be material, then from time to time, the Borrower will pay to such Lender such additional amount or amounts as will compensate such Lender or such Lender's holding company for any such reduction suffered.

(c)     <u>Certificates for Reimbursement</u>.  A certificate of a Lender setting forth the amount or amounts necessary to compensate such Lender or its holding company as specified in <u>paragraph (a)</u> or <u>(b)</u> of this Section and delivered to the Borrower, shall be conclusive absent manifest error.  The Borrower shall pay such Lender the amount shown as due on any such certificate within 10 days after receipt thereof.

(d)      Delay in Requests.  Failure or delay on the part of any Lender to demand compensation pursuant to this Section 3.03 shall not constitute a waiver of such Lender's right to demand such compensation; *provided* that the Borrower shall not be required to compensate a Lender pursuant to this Section 3.03 for any increased costs incurred or reductions suffered more than 180 days prior to the date that such Lender notifies the Borrower of the Change in Law giving rise to such increased costs or reductions, and of such Lender's intention to claim compensation therefor (except that, if the Change in Law giving rise to such increased costs or reductions is retroactive, then the 180-day period referred to above shall be extended to include the period of retroactive effect thereof).

SECTION 3.04      Payments and Computations.

(a)      The Borrower shall make each payment hereunder and under the other Loan Documents, irrespective of any right of counterclaim or set-off, not later than 12:00 noon (New York City time) on the day when due in Dollars to the Administrative Agent at the Administrative Agent's Account in same day funds, with payments being received by the Administrative Agent after such time being deemed to have been received on the next succeeding Business Day unless the Administrative Agent otherwise elects in its sole discretion.  The Administrative Agent will promptly thereafter cause like funds to be distributed (i) if such payment by, or on behalf of, the Borrower is in respect of principal, interest, commitment fees or any other Obligation then payable hereunder and under the other Loan Documents to more than one Lender, to such Lenders for the account of their respective Applicable Lending Offices ratably in accordance with the amounts of such respective Obligations then payable to such Lenders and (ii) if such payment by the Borrower is in respect of any Obligation then payable hereunder to one Lender, to such Lender for the account of its Applicable Lending Office, in each case to be applied in accordance with the terms of this Agreement.  Upon its acceptance of an Assignment and Assumption and recording of the information contained therein in the Register pursuant to Section 10.05(c), from and after the effective date of such Assignment and Assumption, the Administrative Agent shall make all payments hereunder and under the other Loan Documents in respect of the interest assigned thereby to the assignee thereunder, and the parties to such Assignment and Assumption shall make all appropriate adjustments in such payments for periods prior to such effective date directly between themselves.

(b)      All payments in respect of the principal amount of the Advances shall be accompanied by payment of accrued interest on the principal amount being repaid or prepaid, and all such payments (and, in any event, any payments in respect of the Advances on a date when interest is due and payable with respect to the Advances) shall be applied to the payment of interest then due and payable before application to principal.

(c)      All other computations of fees, interest and commissions shall be made on the basis of a 360-day year and actual days elapsed (including the first day but excluding the last day; *provided* that, if the Advance is repaid on the same day on which it is made, one day's interest shall be paid on the Advance).  Each determination by the Administrative Agent of an interest rate, fee or commission hereunder shall be conclusive and binding for all purposes, absent manifest error.

(d)      Whenever any payment hereunder or under the other Loan Documents shall be stated to be due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day, and such extension of time shall in such case be included in the computation of payment of interest.

(e)      If the Administrative Agent receives funds for application to the Obligations of the Borrower under or in respect of the Loan Documents under circumstances for which the Loan Documents do not specify the Advance to which, or the manner in which, such funds are to be applied, the

Administrative Agent shall distribute such funds to each of the Lenders, in each case in accordance with such Lender's Pro Rata Share of the sum of the aggregate principal amount of the Advances outstanding at such time, in repayment or prepayment of such outstanding Advances or other Obligations then owing to such Lender and, if applicable, for application to such principal repayment installments thereof as the Administrative Agent shall direct.

(f)        The Administrative Agent shall deem any payment by or on behalf of the Borrower under this Agreement that is not made in same day funds prior to 12:00 noon (New York City time) to be a non-conforming payment.  Any such payment shall not be deemed to have been received by the Administrative Agent until the later of (i) the time such funds become available funds and (ii) the applicable next Business Day.  The Administrative Agent shall give prompt telephonic notice to the Borrower and each Lender (confirmed in writing) if any payment is non-conforming.  Any non-conforming payment may constitute or become a Default or Event of Default in accordance with the terms of Section 7.01(a).  Interest shall continue to accrue on any principal as to which a non-conforming payment is made until such funds become available funds (but in no event less than the period from the date of such payment to the next succeeding applicable Business Day) at the rate determined pursuant to Section 3.01 from the date such amount was due and payable until the date such amount is paid in full.

SECTION 3.05        Taxes.

(a)        Payments Free of Taxes.  Any and all payments by or on account of any obligation of the Borrower under any Loan Document shall be made without deduction or withholding for any Taxes, except as required by applicable law.  If any applicable law (as determined in the good faith discretion of an applicable Withholding Agent) requires the deduction or withholding of any Tax from any such payment by a Withholding Agent, then the applicable Withholding Agent shall be entitled to make such deduction or withholding and shall timely pay the full amount deducted or withheld to the relevant Governmental Authority in accordance with applicable law and, if such Tax is an Indemnified Tax, then the sum payable by the Borrower shall be increased as necessary so that after such deduction or withholding has been made (including such deductions and withholdings applicable to additional sums payable under this Section 3.05) the applicable Recipient receives an amount equal to the sum it would have received had no such deduction or withholding been made.

(b)        Payment of Other Taxes by the Borrower.  The Borrower shall timely pay to the relevant Governmental Authority in accordance with applicable law, or at the option of the Administrative Agent timely reimburse it for the payment of, any Other Taxes.

(c)        Indemnification by the Borrower.  Without duplication of any obligation under Section 3.05(b), the Borrower shall indemnify each Recipient, within 10 days after written demand therefor, for the full amount of any Indemnified Taxes (including Indemnified Taxes imposed or asserted on or attributable to amounts payable under this Section 3.05) payable or paid by such Recipient or required to be withheld or deducted from a payment to such Recipient and any reasonable out-of-pocket expenses arising therefrom or with respect thereto, whether or not such Indemnified Taxes were correctly or legally imposed or asserted by the relevant Governmental Authority.  A certificate as to the amount of such payment or liability delivered to the Borrower by a Lender (with a copy to the Administrative Agent), or by the Administrative Agent on its own behalf or on behalf of a Lender, shall be conclusive absent manifest error.

(d)        Indemnification by the Lenders.  Each Lender shall severally indemnify the Administrative Agent, within 10 days after demand therefor, for (i) any Indemnified Taxes attributable to such Lender (but only to the extent that the Borrower has not already indemnified the Administrative Agent

for such Indemnified Taxes and without limiting the obligation of the Borrower to do so), (ii) any Taxes attributable to such Lender's failure to comply with the provisions of Section 10.05(d) relating to the maintenance of a Participant Register and (iii) any Excluded Taxes attributable to such Lender, in each case, that are payable or paid by the Administrative Agent in connection with any Loan Document, and any reasonable expenses arising therefrom or with respect thereto, whether or not such Taxes were correctly or legally imposed or asserted by the relevant Governmental Authority.  A certificate as to the amount of such payment or liability delivered to any Lender by the Administrative Agent shall be conclusive absent manifest error.  Each Lender hereby authorizes the Administrative Agent to set off and apply any and all amounts at any time owing to such Lender under any Loan Document or otherwise payable by the Administrative Agent to such Lender from any other source against any amount due to the Administrative Agent under this paragraph (d).

(e)        Evidence of Payments.  As soon as practicable after any payment of Taxes by the Borrower to a Governmental Authority pursuant to this Section 3.05, the Borrower shall deliver to the Administrative Agent the original or a copy of a receipt issued by such Governmental Authority evidencing such payment and a copy of the return reporting such payment or other evidence of such payment reasonably satisfactory to the Administrative Agent.

(f)        Status of Lenders.  (i)  Any Recipient that is entitled to an exemption from or a reduction of withholding Tax with respect to payments made under any Loan Document shall deliver to the Borrower and the Administrative Agent, at the time or times reasonably requested by the Borrower or the Administrative Agent, such properly completed and executed documentation reasonably requested by the Borrower or the Administrative Agent as will permit such payments to be made without withholding or at a reduced rate of withholding.  In addition, any Recipient, if reasonably requested by the Borrower or the Administrative Agent, shall deliver such other documentation prescribed by applicable law or reasonably requested by the Borrower or the Administrative Agent as will enable the Borrower or the Administrative Agent to determine whether or not such Recipient is subject to backup withholding or information reporting requirements.  Notwithstanding anything to the contrary in the preceding two sentences, the completion, execution and submission of such documentation (other than such documentation set forth in Section 3.05(f)(ii)(A), (ii)(B) and (ii)(E) below) shall not be required if in the Recipient's reasonable judgment such completion, execution or submission would subject such Recipient to any material unreimbursed cost or expense or would materially prejudice the legal or commercial position of such Recipient.

(ii)        Without limiting the generality of the foregoing,

(A)        any Lender that is a USVI Person shall deliver to the Borrower and the Administrative Agent on or prior to the date on which such Lender becomes a Lender under this Agreement (and from time to time thereafter upon the reasonable request of the Borrower or the Administrative Agent), executed copies of IRS Form W-9 for U.S. Virgin Islands tax purposes;

(B)        any Foreign Lender shall, to the extent it is legally entitled to do so, deliver to the Borrower and the Administrative Agent (in such number of copies as shall be requested by the Borrower or the Administrative Agent, as applicable) on or prior to the date on which such Foreign Lender becomes a Lender under this Agreement (and from time to time thereafter upon the reasonable request of the Borrower or the Administrative Agent), whichever of the following is applicable:

(1)        executed copies of IRS Form W-8ECI for U.S. Virgin Islands tax purposes;

(2)     in the case of a Foreign Lender claiming the benefits of the exemption for portfolio interest under Section 881(c) of the Internal Revenue Code (as applicable in the U.S. Virgin Islands), (x) a certificate substantially in the form of Exhibit E-1 to the effect that such Foreign Lender is not a "bank" within the meaning of Section 881(c)(3)(A) of the Internal Revenue Code (as applicable in the U.S. Virgin Islands), a "10 percent shareholder" of the Borrower within the meaning of Section 881(c)(3)(B) of the Internal Revenue Code (as applicable in the U.S. Virgin Islands), or a "controlled foreign corporation" described in Section 881(c)(3)(C) of the Internal Revenue Code (as applicable in the U.S. Virgin Islands) (a "***USVI Tax Compliance Certificate***") and (y) executed copies of IRS Form W-8BEN or IRS Form W-8BEN-E, in each case, for U.S. Virgin Islands tax purposes;

(3)     in the case of a Foreign Lender claiming the benefits of the exemption pursuant to Section 543, Chapter 13, Title 33, of the U.S. Virgin Islands Code, (x) a certificate substantially in the form of Exhibit F-1 and (y) executed copies of IRS Form W-8BEN or IRS Form W-8BEN-E, in each case, for U.S. Virgin Islands tax purposes;

(4)     to the extent a Foreign Lender is not the beneficial owner, executed copies of IRS Form W-8IMY, accompanied by IRS Form W-8ECI, IRS Form W-8BEN or IRS Form W-8BEN-E, a USVI Tax Compliance Certificate substantially in the form of Exhibit E-2, Exhibit E-3, Exhibit F-2, Exhibit F-3, IRS Form W-9, and/or other certification documents from each beneficial owner, as applicable, in each case, for U.S. Virgin Islands tax purposes; *provided* that if the Foreign Lender is a partnership and one or more direct or indirect partners of such Foreign Lender are claiming the portfolio interest exemption, or the exemption described in the preceding clause (iii), such Foreign Lender may provide a USVI Tax Compliance Certificate substantially in the form of Exhibit E-4 or a certificate substantially in the form of Exhibit F-4, as applicable, on behalf of each such direct and indirect partner; or

(5)     in the case of a Foreign Lender claiming the benefits of the exemption for a foreign government under Section 892 of the Internal Revenue Code (as applicable in the U.S. Virgin Islands, pursuant to Section 3.05(i)), executed copies of IRS Form W-8EXP for U.S. Virgin Islands tax purposes;

(6)     any Foreign Lender shall, to the extent it is legally entitled to do so, deliver to the Borrower and the Administrative Agent (in such number of copies as shall be requested by the Borrower or the Administrative Agent, as applicable) on or prior to the date on which such Foreign Lender becomes a Lender under this Agreement (and from time to time thereafter upon the reasonable request of the Borrower or the Administrative Agent), executed copies of any other form or forms prescribed by applicable law as a basis for claiming exemption from or a reduction in U.S. Virgin Islands withholding Tax, duly completed, together with such supplementary documentation as may be prescribed by applicable law to permit the Borrower or the Administrative Agent to determine the withholding or deduction required to be made; and

41

(C)     if a payment made to a Recipient under any Loan Document would be subject to U.S. federal or U.S. Virgin Islands withholding Tax imposed by FATCA if such Recipient were to fail to comply with the applicable reporting requirements of FATCA (including those contained in Section 1471(b) or 1472(b) of the Internal Revenue Code, including as applicable in the U.S. Virgin Islands), such Recipient shall deliver to the Borrower and the Administrative Agent at the time or times prescribed by law and at such time or times reasonably requested by the Borrower or the Administrative Agent such documentation prescribed by applicable law (including as prescribed by Section 1471(b)(3)(C)(i) of the Internal Revenue Code, including as applicable in the U.S. Virgin Islands) and such additional documentation reasonably requested by the Borrower or the Administrative Agent as may be necessary for the Borrower and the Administrative Agent to comply with their obligations under FATCA and to determine that such Recipient has complied with such Recipient's obligations under FATCA or to determine the amount to deduct and withhold from such payment.  Solely for purposes of this clause (E), "FATCA" shall include any amendments made to FATCA after the date of this Agreement.

(iii)     The Administrative Agent, and any successor or supplemental Administrative Agent that is not a USVI Person, shall deliver to the Borrower, on or prior to the date on which it becomes a party to this Agreement, a duly completed IRS Form W-9 for U.S. Virgin Islands tax purposes (or other appropriate IRS Form) with respect to payments to be received for its own account and shall assume primary responsibility for withholding under Chapters 3 and 4 of the Internal Revenue Code (as applicable in the U.S. Virgin Islands) with respect to payments to be received for the account of other Recipients, with the effect that the Borrower Parties may make payments to the Administrative Agent without deduction or withholding of any Taxes imposed by the U.S. Virgin Islands.

Each Recipient agrees that if any form or certification it previously delivered expires or becomes obsolete or inaccurate in any respect, it shall update such form or certification or promptly notify the Borrower and the Administrative Agent in writing of its legal inability to do so.

(g)     Treatment of Certain Refunds.  If any party determines, in its sole discretion exercised in good faith, that it has received a refund of any Taxes as to which it has been indemnified pursuant to this Section 3.05 (including by the payment of additional amounts pursuant to this Section 3.05), it shall pay to the indemnifying party an amount equal to such refund (but only to the extent of indemnity payments made under this Section 3.05 with respect to the Taxes giving rise to such refund), net of all out-of-pocket expenses (including Taxes) of such indemnified party and without interest (other than any interest paid by the relevant Governmental Authority with respect to such refund).  Such indemnifying party, upon the request of such indemnified party, shall repay to such indemnified party the amount paid over pursuant to this paragraph (g) (plus any penalties, interest or other charges imposed by the relevant Governmental Authority) in the event that such indemnified party is required to repay such refund to such Governmental Authority.  Notwithstanding anything to the contrary in this paragraph (g), in no event will the indemnified party be required to pay any amount to an indemnifying party pursuant to this paragraph (g) the payment of which would place the indemnified party in a less favorable net after-Tax position than the indemnified party would have been in if the Tax subject to indemnification and giving rise to such refund had not been deducted, withheld or otherwise imposed and the indemnification payments or additional amounts with respect to such Tax had never been paid.  This paragraph (g) shall not be construed to require any indemnified party to make available its Tax returns (or any other information relating to its Taxes that it deems confidential) to the indemnifying party or any other Person.

(h)      Defined Terms.  For purposes of this Section 3.05, the term "applicable law" includes FATCA.

(i)      Section 892 of the Internal Revenue Code.   The parties to this Agreement acknowledge that, as of the date of this Agreement, Section 892 of the Internal Revenue Code was in effect for U.S. Virgin Islands tax purposes, by virtue of the "mirror" system by which the Internal Revenue Code is applied to the U.S. Virgin Islands.  The parties to this Agreement further agree, absent a Change in Law, to treat Section 892 of the Internal Revenue Code as being in effect for U.S. Virgin Islands tax purposes by virtue of such "mirror" system, for purposes of determining and applying U.S. Virgin Islands withholding taxes on interest payments pursuant to this Agreement.  The incorrectness of the acknowledgment in the first sentence of this Section 3.05(i) shall not result in any obligation of any Borrower Party to indemnify or pay additional amounts on account of any Excluded Taxes.

(j)      Survival.   Each party's obligations under this Section 3.05 shall survive the resignation or replacement of the Administrative Agent or any assignment of rights by, or the replacement of, a Lender, the termination of the Commitments and the repayment, satisfaction or discharge of all obligations under any Loan Document.

SECTION 3.06      Sharing of Payments, Etc.  If any Lender shall, by exercising any right of setoff or counterclaim or otherwise, obtain payment in respect of any principal of or interest on the Advances or other obligations hereunder resulting in such Lender receiving payment of a proportion of the aggregate amount of its Advances and accrued interest thereon or other such obligations greater than its Pro Rata share thereof as provided herein, then the Lender receiving such greater proportion shall (a) notify the Administrative Agent of such fact, and (b) purchase (for cash at face value) participations in the Advances and such other obligations of the other Lenders, or make such other adjustments as shall be equitable, so that the benefit of all such payments shall be shared by the Lenders ratably in accordance with the aggregate amount of principal of and accrued interest on their respective Advances and other amounts owing them; *provided* that:

(i)      if any such participations are purchased and all or any portion of the payment giving rise thereto is recovered, such participations shall be rescinded and the purchase price restored to the extent of such recovery, without interest; and

(ii)      the provisions of this Section 3.06 shall not be construed to apply to (x) any payment made by the Borrower pursuant to and in accordance with the express terms of this Agreement (including the application of funds arising from the existence of a Defaulting Lender), or (y) any payment obtained by a Lender as consideration for the assignment of or sale of a participation in its Advances to any assignee or participant, other than to the Borrower or any Subsidiary thereof (as to which the provisions of this Section 3.06 shall apply).

The Borrower consents to the foregoing and agrees, to the extent it may effectively do so under applicable law, that any Lender acquiring a participation pursuant to the foregoing arrangements may exercise against the Borrower rights of setoff and counterclaim with respect to such participation as fully as if such Lender were a direct creditor of the Borrower in the amount of such participation.

SECTION 3.07      Use of Proceeds. The proceeds of the Advances shall be used only for (i) fees, costs, and expenses related to the Chapter 11 Cases (including any fees, costs, and expenses related to the DIP Facility and the professional fees and expenses of the Borrower Parties, the DIP Agent, and the DIP Lenders), (ii) post-petition operating expenses and working capital needs of the Borrower Parties including, but not limited to, those required to remain in, or return to compliance with the laws in accordance with 28 U.S.C. § 959, and such general and administrative expenses as are contained within the

DIP Budget, (iii) other disbursements contained within the DIP Budget, including those to pay (a) interest, fees and expenses (including attorneys' fees) to the Lenders in accordance with the DIP Facility; (b) income Taxes, (c) deposits made to utilities pursuant to an order of the Bankruptcy Court, (d) checks outstanding on the Petition Date that are re-issued in accordance with an order of the Bankruptcy Court, and (e) fees due the Office of the United States Trustee, (iv) payments of amounts due under certain settlement agreements entered into between the Loan Parties as described in in the DIP Budget, (v) other expenditures permitted by the DIP Order, and (vi) costs and expenses incurred or to be incurred by the Borrower Parties in connection with the labor required to safely shut-down all operations at the Refinery and other facilities owned or operated by the Loan Parties, in any and all cases, subject to the other limitations set forth in, and to the extent and in amounts not to exceed the amounts expressly set forth for such fees, costs and expenses in, the DIP Budget, this Agreement, and the DIP Order; provided, that no proceeds of the DIP Facility or the DIP Collateral may be used to investigate, initiate, prepare, assert, join, commence, support, or prosecute proceedings or actions on account of any purported offsets, recoupments, challenges, contests, attacks, objections, defenses, claims or counterclaims of any kind against any Agent, the Lenders, or any of their affiliates or to investigate any such purported offsets, recoupments, challenges, contests, attacks, objections, defenses, claims or counterclaims.

SECTION 3.08    Security.  Subject in each case to the entry and the terms of the DIP Order and the terms of the Loan Documents, the DIP Facility and the Obligations shall be entitled to superpriority administrative claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in respect of each of the Borrower Parties, and the Obligations shall be and hereby are secured by valid, enforceable and non-avoidable first priority priming Liens, subject and subordinate only to the Carve-Out, the Aron Rights and all rights and remedies of J. Aron in connection with the Safe Harbor Agreements (as defined in the DIP Order), in and to the Collateral.  Such Liens shall be granted pursuant to Sections 364(c)(2), (c)(3) and (d)(1) of the Bankruptcy Code (subject to any Permitted Liens) and the DIP Order shall provide that such Liens shall be automatically perfected upon the entry of the Interim DIP Order without the need for any further action by the Administrative Agent, the Lenders or the Borrower, including the filing of any financing statements or the recording of any mortgages.

SECTION 3.9.    Defaulting Lenders.

(a)    Defaulting Lender Adjustments. Notwithstanding anything to the contrary contained in this Agreement, if any Lender becomes a Defaulting Lender, then, until such time as such Lender is no longer a Defaulting Lender, to the extent permitted by applicable law:

(i)    Waivers and Amendments. Such Defaulting Lender's right to approve or disapprove any amendment, waiver or consent with respect to this Agreement shall be restricted as set forth in the definition of "Required Lenders."

(ii)    Defaulting Lender Waterfall. Any payment of principal, interest, fees or other amounts received by the Administrative Agent for the account of such Defaulting Lender (whether voluntary or mandatory, at maturity, pursuant to Article VII or otherwise) or received by the Administrative Agent from a Defaulting Lender pursuant to Section 10.03 shall be applied at such time or times as may be determined by the Administrative Agent as follows: first, to the payment of any amounts owing by such Defaulting Lender to the Administrative Agent hereunder; second, as the Borrower may request (so long as no Default or Event of Default exists), to the funding of the Advances in respect of which such Defaulting Lender has failed to fund its portion thereof as required by this Agreement, as determined by the Administrative Agent; third, if so determined by the Administrative Agent and the Borrower, to be held in a Deposit Account and released pro rata in order to satisfy such

Defaulting Lender's potential future funding obligations with respect to the Advances under this Agreement; *fourth,* to the payment of any amounts owing to the Lenders as a result of any judgment of a court of competent jurisdiction obtained by any Lender against such Defaulting Lender as a result of such Defaulting Lender's breach of its obligations under this Agreement; *fifth,* so long as no Default or Event of Default exists, to the payment of any amounts owing to the Borrower as a result of any judgment of a court of competent jurisdiction obtained by the Borrower against such Defaulting Lender as a result of such Defaulting Lender's breach of its obligations under this Agreement; and *sixth,* to such Defaulting Lender or as otherwise directed by a court of competent jurisdiction; *provided* that if such payment is a payment of the principal amount of the Advances in respect of which such Defaulting Lender has not fully funded its appropriate share, such payment shall be applied solely to pay the Advances of all Non-Defaulting Lenders on a pro rata basis prior to being applied to the payment of any Advances of such Defaulting Lender until such time as the Advances are held by the Lenders pro rata in accordance with the Commitments under the Facility. Any payments, prepayments or other amounts paid or payable to a Defaulting Lender that are applied (or held) to pay amounts owed by a Defaulting Lender or to post cash collateral pursuant to this Section 3.10(a) shall be deemed paid to and redirected by such Defaulting Lender, and each Lender irrevocably consents hereto.

(iii)     Certain Fees. No Defaulting Lender shall be entitled to receive any fee pursuant to Section 3.02 for any period during which that Lender is a Defaulting Lender (and the Borrower shall not be required to pay any such fee that otherwise would have been required to have been paid to that Defaulting Lender).

(b)     Defaulting Lender Cure. If the Borrower, the Administrative Agent and Lenders agree in writing that a Lender is no longer a Defaulting Lender, the Administrative Agent will so notify the parties hereto, whereupon as of the effective date specified in such notice and subject to any conditions set forth therein, that Lender will, to the extent applicable, purchase at par that portion of the outstanding Advances of the other Lenders or take such other actions as the Administrative Agent may determine to be necessary to cause the Advances and funded and unfunded participations in Notes to be held pro rata by the Lenders in accordance with the Commitments under the Facility, whereupon such Lender will cease to be a Defaulting Lender; *provided* that no adjustments will be made retroactively with respect to fees accrued or payments made by or on behalf of the Borrower while that Lender was a Defaulting Lender; and provided, further, that except to the extent otherwise expressly agreed by the affected parties, no change hereunder from Defaulting Lender to Lender will constitute a waiver or release of any claim of any party hereunder arising from that Lender's having been a Defaulting Lender.

## ARTICLE IV

## CONDITIONS PRECEDENT

SECTION 4.01     Conditions Precedent to Closing Date. Section 2.01 of this Agreement shall become effective on and as of the first date (the "***Closing Date***") on which the Administrative Agent determines in its sole and absolute discretion that the following conditions precedent have been satisfied

(and the obligation of each Lender to make an Advance is subject to the satisfaction of such conditions precedent before or concurrently with the Closing Date):

(a)    The Administrative Agent shall have received on or before the Closing Date the following, each dated as of the Closing Date (unless otherwise specified) and in form and substance reasonably satisfactory to the Administrative Agent:

(i)    This Agreement, duly executed and delivered by the parties hereto.

(ii)    a certificate of a Responsible Officer of the Borrower certifying the satisfaction of the conditions set forth in Section 4.01(b) through (g);

(b)    The representations and warranties of the Loan Parties contained in each Loan Document to which they are a party shall be true and correct in all material respects (or, if qualified by materiality, in all respects after giving effect to such qualification) on and as of such date other than any such representations or warranties that, by their terms, refer to a specific date other than such Funding Date, in which case such representation or warranty shall be true and correct in all material respects as of such specific date.

(c)    The Chapter 11 Cases shall have been filed in the Bankruptcy Court.

(d)    The Bankruptcy Court shall have entered the Interim DIP Order which shall be in full force and effect, shall not have been reversed, vacated or stayed and shall not have been amended, supplemented or otherwise modified without the prior written consent of the Required Lenders.

(e)    The Required Lenders and the Administrative Agent shall have received the DIP Budget, in form and substance satisfactory to the Lenders, including as to all assumptions.

(f)    The Administrative Agent and the Lenders shall have received all such agreements, instruments, approvals, and other documents, each reasonably satisfactory to the Administrative Agent in form and substance, as the Administrative Agent may reasonably request.

(g)    The Loan Parties shall be in compliance with the terms of the Interim DIP Order.

(h)    The Administrative Agent and the Lenders shall have received (or each shall have agreed to arrangements for the) payment of all fees, costs and expenses then due and owing to the Administrative Agent and the Lenders (including all accrued and unpaid fees and expenses of the Administrative Agent's and Lenders' counsel and professional advisors at the discretion of the Administrative Agent and other compensation contemplated in connection with this Agreement and the Interim DIP Order payable to the Administrative Agent and the Lenders in respect of the transactions contemplated by this Agreement), in each case, to the extent invoiced at least two (2) Business Days prior to the Closing Date.

SECTION 4.02    Conditions Precedent to Each Borrowing.  The obligation of each Lender to make an Advance on any Funding Date (including the First DIP Funding Date) is subject to the

satisfaction (or waiver by the Lenders) of the following conditions precedent before or concurrently with such Funding Date:

(a)     The Administrative Agent shall have received on or before such Funding Date the following, each dated as of such Funding Date (unless otherwise specified) and in form and substance reasonably satisfactory to the Administrative Agent:

(i)     a certificate of a Responsible Officer of the Borrower certifying the satisfaction of the conditions set forth in Sections 4.02 (b) through (d);

(ii)     one or more Notes payable to the applicable Lender to the extent requested by such Lender pursuant to the terms of Section 2.07;

(iii)     a Funding Notice in respect of the Advances to be funded on such Funding Date.

(b)     The representations and warranties of the Loan Parties contained in each Loan Document to which they are a party shall be true and correct in all material respects (or, if qualified by materiality, in all respects after giving effect to such qualification) on and as of such date, before and after giving effect to the Advances on such Funding Date and to the application of the proceeds therefrom, other than any such representations or warranties that, by their terms, refer to a specific date other than such Funding Date, in which case such representation or warranty shall be true and correct in all material respects as of such specific date.

(c)     No Default or Event of Default shall exist at the time of, or immediately after giving effect to, the making of the Advances.

(d)     At the time of such Borrowing and after giving effect to the use of proceeds thereof, the Borrower Parties shall be in compliance with the DIP Budget, the proposed Advance is contemplated by the DIP Budget and the proceeds of the proposed Advance are to be applied in the manner, and to the extent, contemplated by the DIP Budget.

(e)     At the time of such Borrowing and after giving effect thereto, (i) if such Borrowing has been requested before the Final Order Entry Date, the Interim DIP Order shall be in full force and effect and shall not have been vacated, reversed, stayed, or modified or amended in any respect, in each case, without the prior written consent of the Administrative Agent and (ii) if such Borrowing is requested after the Final Order Entry Date, the Final DIP Order shall be in full force and effect and shall not have been vacated, reversed, stayed, or modified or amended in any respect, in each case, without the prior written consent of the Administrative Agent.

(f)     If such Borrowing is requested after the Final Order Entry Date, the Borrower Parties shall be in compliance with the terms of the Final DIP Order.

(g)     If such Borrowing is requested after the Final Order Entry Date, the Administrative Agent and the Lenders shall have received a release agreement executed by each of the Loan Parties in form and substance satisfactory to the Administrative Agent and the Lenders.

(h)     The Administrative Agent and the Lenders shall have received (or each shall have agreed to arrangements for the) payment of all fees, costs and expenses then due and owing to the Administrative Agent and the Lenders (including all accrued and unpaid fees and expenses of the Administrative Agent's and Lenders' counsel and professional advisors at the discretion of the Administrative Agent and other compensation contemplated in connection with this Agreement and the

Interim DIP Order payable to the Administrative Agent and the Lenders in respect of the transactions contemplated by this Agreement), in each case, to the extent invoiced at least two (2) Business Days prior to such Funding Date.

SECTION 4.03    Notices.  Any Funding Notice shall be executed by a Responsible Officer of the applicable Borrower Party or Borrower Parties in a writing (including by telecopier or electronic communication) delivered to the Administrative Agent.

## ARTICLE V

## REPRESENTATIONS AND WARRANTIES

SECTION 5.01    Representations and Warranties.  In order to induce each Agent and each Lender to enter into this Agreement, each Borrower Party represents and warrants to such Agent and Lender (x) on the Closing Date, (y) on each Funding Date, and (z) on any other date that representations are required to be made by the Borrower Parties herein as follows, all of the items referenced in this Section 5.01:

(a)    Organization; Requisite Power and Authority; Qualification.  Such Loan Party (i) is duly organized or formed, validly existing and, except as set forth in Schedule 5.01(a), in good standing (to the extent such concept exists under applicable law) under the law of the jurisdiction of its incorporation or formation as identified in Schedule 5.01(a), (ii) has all requisite power and authority to own and operate its Properties, to carry on its business as now conducted and as proposed to be conducted except where such failure has not had, and could not reasonably be expected to have, a Material Adverse Effect, (iii) subject to the granting of the Interim DIP Order or Final DIP Order, as applicable, has all requisite power and authority to enter into the Loan Documents to which it is a party and to carry out the transactions contemplated thereby and (iv) is qualified to do business and in good standing in every jurisdiction where its assets are located and wherever necessary to carry out its business and operations, except in jurisdictions where the failure to be so qualified or in good standing has not had, and could not be reasonably expected to have, a Material Adverse Effect.

(b)    Capital Stock and Ownership.  The Capital Stock of each Borrower Party issued to any other Loan Party has been duly authorized and validly issued and is fully paid and non-assessable and is owned by a Loan Party free and clear of all Liens, except those created under the Pre-Petition Collateral Documents, the Loan Documents or other Permitted Liens.   Except as set forth on Schedule 5.01(b), there is no existing option, warrant, call, right, commitment or other agreement to which any Borrower Party is a party requiring, and there is no Capital Stock of any Borrower Party outstanding which upon conversion or exchange would require, the issuance by any Borrower Party of any Capital Stock or other Securities convertible into, exchangeable for or evidencing the right to subscribe for or purchase, Capital Stock of any Borrower Party.  Schedule 5.01(b) correctly sets forth the ownership interest of the Loan Parties and the Refinery.

(c)    Due Authorization.  Subject to the granting of the Interim DIP Order or Final DIP Order, as applicable, the execution, delivery and performance of the Loan Documents to which such Loan Party is a party have been duly authorized by all necessary corporate, limited liability company or limited partnership (as applicable) action on the part of such Loan Party.

(d)    No Conflict.  The execution, delivery and performance by such Loan Party of the Loan Documents to which it is a party and the transactions contemplated by the Loan Documents by such Loan Party do not and will not (i) violate (A) any provision of any law or any governmental rule or regulation applicable to any such Loan Party, subject to entry of the DIP Order, (B) any of the

Organizational Documents of such Loan Party or (C) any order, judgment or decree of any court or other agency of government binding on such Loan Party except, in the case of sub-clauses (i)(A) and (i)(C) of this clause (d), where such violation could not reasonably be expected to have a Material Adverse Effect; (ii) conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any Contractual Obligation binding on any such Loan Party except to the extent such conflict, breach or default could not reasonably be expected to have a Material Adverse Effect; (iii) result in or require the creation or imposition of any Lien upon any of the Properties of any of such Loan Party (other than any Permitted Liens); or (iv) subject to the granting of the Interim DIP Order or Final DIP Order, as applicable, require any approval of stockholders, members or partners or any approval or consent of any Person under any Contractual Obligation of such Loan Party, except for (A) such approvals or consents which have been obtained and are in full force and effect, and (B) any such approvals or consents the failure of which to obtain could not reasonably be expected to have a Material Adverse Effect.

(e)     Governmental Consents.  (i) Subject to the DIP Order, the execution, delivery and performance by such Borrower Party of the Loan Documents to which it is a party and the consummation of the transactions contemplated by the Loan Documents by such Borrower Party do not require any registration with, consent or approval of, or notice to, or other action to, with or by, any Governmental Authority except for (A) the registrations, consents, approvals, notices or other actions which have been duly obtained, taken, given or made and, are in full force and effect, (B) registrations, consents, approvals, notices or other actions required by securities, regulatory or applicable law in connection with an exercise of remedies and (C) such registrations, consents, approvals, notices or other actions that if not obtained and maintained in full force and effect could not reasonably be expected to have a Material Adverse Effect.

(i)     Except as otherwise disclosed on Schedule 5.01(e)(i), the Loan Parties are in compliance with all Governmental Authorizations applicable to them and the Refinery (i) as of the Closing Date, in all material respects other than noncompliance caused by nonroutine operations and emissions during the restart period, and (ii) as of any date after the Closing Date on which this representation is made, except for such noncompliance as could not reasonably be expected to have a Material Adverse Effect.

(ii)     All Governmental Authorizations which are required to be obtained by the Closing Date or which have otherwise been obtained in connection with the making of the Advances hereunder and the execution and delivery of, and performance by each Loan Party of its respective obligations under the Loan Documents to which it is a party have been duly obtained, were validly issued, are in full force and effect, are not subject to appeal or all applicable appeal periods have expired or will have expired as of the Closing Date.

(iii)     Except (i) as set forth on Schedule 5.01(e)(i) and/ or (ii) as could not reasonably be expected to have a Material Adverse Effect, as of the Closing Date, there are no proceedings pending or, to the Loan Parties' knowledge, threatened that could reasonably be expected to result in a rescission, termination, adverse modification, or suspension of any such Governmental Authorization set forth on Part I of Schedule 5.01(e)(iii) or in a failure to obtain any Governmental Authorization set forth on Part II of Schedule 5.01(e)(iii). Except as pertains to the matters set forth on Schedule 5.01(e)(i), the Borrower has no reason to believe that any Governmental Authorizations which are required to be obtained in connection with the Required Shutdown Activities not required to have been obtained on the date of this Agreement or as of the Closing Date (or amendments, renewals or reissuance of any Governmental Authorizations required after the date of this Agreement) will not be obtained in due course on or before the date such Governmental Authorization, or amendment, renewal or reissuance thereof, is required for the commencement of the appropriate state of construction or operation or to avoid any substantial

49

delay in, or material impairment to, the consummation and performance of the transactions contemplated by this Agreement, the Loan Documents or the Transaction Documents, or shall contain any condition or requirements, the compliance with which could reasonably be expected to result in a Material Adverse Effect.

(f)     Binding Obligation.  Subject to the granting of the Interim DIP Order or Final DIP Order, as applicable, each Loan Document to which such Loan Party is a party has been duly executed and delivered by such Loan Party and is the legally valid and binding obligation of such Loan Party, enforceable against such Loan Party in accordance with its respective terms, except as may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws relating to or limiting creditors' rights generally or by equitable principles relating to enforceability.

(g)     Financial Statements.  The financial statements of the Borrower Parties furnished to the Administrative Agent pursuant to Section 6.03(a) fairly present in all material respects the financial condition and the results of operations and cash flows of the Loan Parties as of the date thereof, all in accordance with GAAP (subject to normal year-end adjustments and, in the case of unaudited financial statements, the absence of footnotes).

(h)     Adverse Proceedings, Etc. Except as set forth on Schedule 5.01(h), there are no Adverse Proceedings, individually or in the aggregate, that could reasonably be expected to have a Material Adverse Effect. No Borrower Party nor the Refinery is subject to or in default with respect to any final judgments, writs, injunctions, decrees, rules or regulations of any court or any federal, state, municipal or other governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, that, individually or in the aggregate, could reasonably be expected to have a Material Adverse Effect.

(i)     Taxes.  Except as otherwise permitted under Section 6.01(b) or set forth on Schedule 5.01(i), all material tax returns and reports of the Borrower Parties required to be filed by any of them have been timely filed, and all material Taxes due and payable by the Borrower Parties and upon their respective properties, assets, income, businesses and franchises have been paid when due and payable. Except as could not reasonably be expected to have a Material Adverse Effect, there is no audit, claim or assessment pending or proposed in writing against the Borrower regarding any Taxes relating to any Borrower Party, which is not being contested by such Borrower Party in good faith and by appropriate proceedings; *provided* that reserves or other appropriate provisions, if any, as shall be required in conformity with GAAP shall have been made or provided therefor.  For U.S. federal and U.S. Virgin Islands income tax purposes, the Borrower is treated as an entity that is disregarded as separate from a U.S. Virgin Islands corporation.

(j)     Environmental Matters.

(i)     Except as disclosed on Schedule 5.01(j), except as could not reasonably be expected, individually or in the aggregate, to have a Material Adverse Effect, (A) none of the Refinery, the Borrower Parties and their respective Properties or operations is or has been in violation of any Environmental Laws, including, without limitation, any Governmental Authorizations issued pursuant to any Environmental Law, (B) none of the Refinery, the Borrower Parties and their respective Properties or operations is subject to any outstanding written order, consent decree or settlement agreement with any Person relating to any Environmental Law, any Environmental Action, or any Hazardous Materials Activity, (C) none of the Borrower Parties and the Refinery has received any letter or request for information relating to the Refinery under Section 104 of the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. § 9604) or any comparable state law and (D) none of the Refinery, the Borrower Parties and

their respective Properties or operations is subject to any actual or, to the Borrower Parties' knowledge, threatened Environmental Action.

(ii)     No Borrower Party has received any written notice under any Environmental Law indicating past or present treatment, storage or disposal of Hazardous Materials at the Real Estate Assets of the Refinery that could be reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

(iii)     Compliance of the Refinery and the Borrower Parties with all current requirements pursuant to or under Environmental Laws, including, without limitation, any Governmental Authorizations issued pursuant to any Environmental Law, would not require actions that could be reasonably expected to have, individually or in the aggregate, a Material Adverse Effect.

(iv)     To the Borrower Parties' knowledge, no event or condition has occurred or is occurring with respect to the Refinery or the Borrower Parties or any of their respective Properties or operations relating to any Environmental Law, any Environmental Action, any Release of Hazardous Materials, or any Hazardous Materials Activity, which individually or in the aggregate could reasonably be expected to have, a Material Adverse Effect.

(v)     To the Borrower Parties' knowledge, the Environmental Response Trust is in compliance with all applicable investigative, cleanup, closure, remediation and other corrective or remedial action requirements pursuant to the Hovensa Confirmation Order with respect to any Hazardous Materials located at, in, on or under the Refinery, except for any failure to comply as could not reasonably be expected, individually or in the aggregate, to have a Material Adverse Effect.

(vi)     This Section 5.01(j) and Section 5.01(e)(ii) shall be the sole representations and warranties by the Borrower Parties with respect to environmental matters.

(k)     Governmental Regulation.

(i)     No Borrower Party is subject to regulation under the Investment Company Act of 1940 or under any other federal or state statute or regulation which may limit its ability to incur Debt or which may otherwise render all or any portion of the Obligations hereunder or under the other Loan Documents unenforceable.

(ii)     No Borrower Party is a "*registered investment company*" or a company "*controlled*" by a "*registered investment company*" or a "*principal underwriter*" of a "*registered investment company*" as such terms are defined in the Investment Company Act of 1940.

(l)     Use of Proceeds; Margin Stock.  The proceeds of the Advances and other extensions of credit hereunder have been or will be used solely in accordance with, and solely for the purposes contemplated by, Section 3.07.  No Borrower Party is engaged principally, or as one of its important activities, in the business of extending credit for the purpose of purchasing or carrying any Margin Stock.  No part of the proceeds of the Advances will be used to purchase or carry any such Margin Stock or to extend credit to others for the purpose of purchasing or carrying any such Margin Stock or for any purpose that violates, or is inconsistent with, the provisions of Regulation T, U or X of the Board of Governors.

(m)     Employee Benefit Plans.  Except as could not reasonably be expected, individually or in the aggregate, to have a Material Adverse Effect, (i) each Borrower Party and each of their respective

51

ERISA Affiliates are in compliance with all applicable provisions and requirements of ERISA and the Internal Revenue Code and the regulations and published interpretations thereunder with respect to each Employee Benefit Plan, (ii) each Employee Benefit Plan which is intended to qualify under Section 401(a) of the Internal Revenue Code has received a favorable determination letter from the IRS indicating that such Employee Benefit Plan is so qualified and, to the knowledge of the Borrower Parties, nothing has occurred subsequent to the issuance of such determination letter which could cause such Employee Benefit Plan to lose its qualified status, (iii) no liability to the PBGC (other than required premium payments), the IRS, any Employee Benefit Plan or any trust established under Title IV of ERISA has been or is reasonably expected to be incurred by any Borrower Party or any of their ERISA Affiliates, (iv) no ERISA Event has occurred or is reasonably expected to occur, and (v) the Borrower Parties and each of their ERISA Affiliates have complied with the requirements of Section 515 of ERISA with respect to each Multiemployer Plan and are not in "default" (as defined in Section 4219(c)(5) of ERISA) with respect to payments to a Multiemployer Plan.

(n)    Certain Fees.  No broker's or finder's fee or commission will be payable by any Borrower Party with respect hereto or to any of the transactions contemplated by the Loan Documents, except as payable to the Agents and the Lenders pursuant to the Loan Documents.

(o)    Compliance with Statutes, Etc.  Except as set forth on Schedule 5.01(o), each of the Borrower Parties and the Refinery is in compliance with all applicable statutes, regulations and orders of, and all applicable restrictions imposed by, all Governmental Authorities, in respect of the operation or shutting down of the Refinery, the conduct of its business and the ownership of its property, except such non-compliance that, individually or in the aggregate, could not reasonably be expected to result in a Material Adverse Effect.

(p)    Disclosure.  As of the Closing Date, to the best knowledge of the Borrower Parties, all written information (other than projections, budgets, forecasts, other forward-looking information, historical financial information, reports prepared by third party consultants or information of a general economic nature) provided by or on behalf of the Borrower Parties to any Agent or Lender in connection with the transactions contemplated hereunder is, when taken as a whole and as of the Closing Date, correct in all material respects and does not (as of the Closing Date) contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements contained therein, when taken as a whole, not materially misleading in light of the circumstances under which such statements were made (giving effect to supplements and updates thereto).

(q)    Patriot Act.  To the extent applicable, each Borrower Party is in compliance, in all material respects, with the (i) Trading with the Enemy Act, as amended, and each of the foreign assets control regulations of the United States Treasury Department (31 CFR, Subtitle B, Chapter V, as amended) and any other enabling legislation or executive order relating thereto, and (ii) Patriot Act.  No part of the proceeds of the Advances will be used, directly or indirectly by the Borrower, for any payments to any governmental official or employee, political party, official of a political party, candidate for political office, or anyone else acting in an official capacity, in order to obtain, retain or direct business or obtain any improper advantage, in violation of the United States Foreign Corrupt Practices Act of 1977 or any other applicable anti-bribery or anti-corruption law.

(r)    Security Interests.  The entry of the Interim DIP Order or the Final DIP Order (as applicable) and the entering into of any other Security Documents create in favor of the Collateral Agent for the benefit of the Secured Parties legal, valid, enforceable and perfected Liens in the Collateral, with the priority expressed to be applicable to such Liens in the Interim DIP Order or the Final DIP Order (as applicable) and under Section 2.08(a) of this Agreement, securing the payment of the Obligations.  The

52

Loan Parties are the legal and beneficial owners of the Collateral free and clear of any Lien, except for the liens and security interests created or permitted under the Loan Documents and the Interim DIP Order or the Final DIP Order (as applicable).  On and after the Closing Date and the entry of the Interim DIP Order, such Interim DIP Order and the Loan Documents are sufficient to provide the Superpriority Claims and Liens described in, and with the priority provided in, Section 2.08(a) of this Agreement.

(s)      Property.  As of the Closing Date:

(i)      except for any such failure which could not reasonably be expected to have a Material Adverse Effect, the Borrower Parties have valid title to all personal property that such Borrower Party purports to own (including the personal property comprising the Refinery), free and clear of all Liens except Liens created under the Pre-Petition Collateral Documents, the Loan Documents, the Interim DIP Order and the Final DIP Order or other Permitted Liens, and have the rights or interest to or in the Real Estate Assets reasonably required to construct and operate the Refinery in accordance with the Material Contracts, Applicable Law and Prudent Industry Practice.  The Borrower Parties have good and marketable title or a valid and subsisting estate or interest to or in the Real Estate Assets (except any such failure which could not reasonably be expected to have a Material Adverse Effect), free and clear of all Liens except Permitted Liens;

(ii)      the Borrower has good and marketable title or a valid and subsisting estate or interest to or in the Real Estate Assets (except any such failure which could not reasonably be expected to have a Material Adverse Effect), free and clear of all Liens except Permitted Liens;

(iii)      the Real Estate Documents (A) represent the entire agreement between the respective parties thereto with respect to the interests in real property described therein and use and occupancy thereof, and there are no other agreements or modifications, whether oral or written, with respect thereto, other than as disclosed to the Administrative Agent on or prior to the Closing Date or entered into in accordance with this Agreement, (B) represent all material documents, agreements, and instruments that provide the Borrower with real property interests in furtherance of the Refinery, (C) grant to the Borrower all of the material real property interests necessary for the operation of the Refinery, (D) except as specified in Schedule II, have not been amended, supplemented, modified or assigned in any way by the Borrower, or to the Borrower's knowledge, any other Person and (E) to the Borrower's knowledge, have not been waived, surrendered, canceled, abandoned or terminated by any other party thereto;

(iv)      except as set forth on Schedule 5.01(s), no counterparty to any Real Estate Document to the Borrower's knowledge, is in material breach or default of such Real Estate Document;

(v)      to the Borrower's knowledge, no event has occurred which, with or without notice or lapse of time or both, would constitute a material breach or default thereunder by any counterparty to a Real Estate Document or permit termination or acceleration by any party (other than the Borrower) under such Real Estate Document; and

(vi)      all material rents, rentals, charges, fees and royalties currently due and payable by the Borrower pursuant to the Real Estate Documents have been paid.

(t)      Intellectual Property.  Each Borrower Party owns or has the right to use all patents, trademarks, service marks, trade names, domain names, copyrights, licenses and other rights which are necessary for the ownership and operation of the Refinery in accordance with the Loan Documents and Transaction Documents, in each case, as to which the failure of such Borrower Party to so own or have the

right to use would reasonably be expected to have a Material Adverse Effect.  No material product, process, method, substance, part or other material presently contemplated to be sold or employed by a Borrower Party in connection with its business will infringe any patent, trademark, service mark, trade name, domain name, copyright, license or other right owned by any other Person in a manner that could reasonably be expected to have a Material Adverse Effect.

(u)    <u>Insurance</u>.  All insurance policies required to be obtained by or on behalf of any Borrower Party pursuant to <u>Section 6.01(d)</u> have been obtained and are in full force and effect and all premiums then due and payable thereon have been paid in full.  None of the Borrower Parties has received any notice from any insurer that any insurance policy has ceased to be in full force and effect or claiming that the insurer's liability under any such insurance policy can be reduced or avoided.

(v)    <u>OFAC and Related Matters</u>.

(i)    None of the Borrower Parties nor any of their respective Subsidiaries (collectively, the "***Group***") nor any director or officer thereof, nor, to the Group's actual knowledge, any agent acting on its behalf, controlled Affiliate or employee of the Group, is an individual or entity that is, or is owned or controlled by a Person that is:  (A) the subject of any sanctions administered or enforced by OFAC, the United Nations Security Council, the European Union or Her Majesty's Treasury (collectively, "***Sanctions***"), nor (B) located, organized or resident in a country or territory that is the subject of Sanctions (including, without limitation, Cuba, Iran, North Korea, Syria, and the Crimea region of Ukraine).

(ii)    Each Borrower Party represents that it will not (and will cause the Refinery not to), directly or indirectly, use the proceeds of the Advances, or lend, contribute or otherwise make available such proceeds to any subsidiary, joint venture partner or other Person (A) to fund or facilitate any activities or business of or with any Person or in any country or territory that, at the time of such funding or facilitation, is the subject of Sanctions; or (B) in any other manner that will result in a violation of Sanctions by any Person (including any Person participating in the Advances, whether as underwriter, advisor, investor or otherwise).

(iii)    The operations of the Borrower Parties are and have been conducted at all times in compliance, in all material respects, with financial recordkeeping and reporting requirements, including those of the Bank Secrecy Act, as amended by the Patriot Act, and the applicable anti-money laundering statutes of jurisdictions where the Equityholders, the Loan Parties and any of their respective directors, officers and Affiliates conduct business, the rules and regulations thereunder and any related or similar rules, regulations or guidelines, issued, administered or enforced by any governmental agency (collectively, the "***Money Laundering Laws***") and no action, suit or proceeding by or before any court or Governmental Authority or any arbitrator involving the Borrower Parties or any of its Subsidiaries with respect to the Money Laundering Laws is pending or, to the knowledge of the Borrower Parties, threatened.

(iv)    No Borrower Party, nor, to the actual knowledge of the Borrower Parties, their directors, officers, agents, affiliates or representatives has taken or will take any action in furtherance of an offer, payment, promise to pay, or authorization or approval of the payment or giving of money, property, gifts or anything else of value, directly or indirectly, to any person while knowing that all or some portion of the money or value will be offered, given or promised to anyone to improperly influence official action, to obtain or retain business or otherwise to secure any improper advantage in each case in violation of any applicable law (including the United States

Foreign Corrupt Practices Act of 1977, the UK Bribery Act 2010 and other similar applicable legislation in other jurisdictions).

(v)  The Borrower Parties and, to the actual knowledge of the Borrower Parties, their Affiliates have conducted their businesses in compliance with applicable anti-corruption laws (including the United States Foreign Corrupt Practices Act of 1977, the UK Bribery Act 2010 and other similar applicable legislation in other jurisdictions) and have instituted and maintained, and will continue to maintain, policies and procedures reasonably designed to promote and achieve compliance with such laws and with the representations and warranties contained herein.

(vi)  No Borrower Party will directly or indirectly use the proceeds of the Advances or lend, contribute or otherwise make available such proceeds to any subsidiary, Affiliate, joint venture partner or other Person for the purpose of financing or facilitating any activity that would violate applicable anti-corruption laws, rules, or regulations (including the United States Foreign Corrupt Practices Act of 1977, the UK Bribery Act 2010 and other similar applicable legislation in other jurisdictions).

(w)  <u>No Material Adverse Effect</u>.  Since the Petition Date, no event or change has occurred that has caused or evidences, either in any case or in the aggregate, a Material Adverse Effect.

(x)  <u>DIP Budget</u>.  The Loan Parties have disclosed to the Lenders all material assumptions with respect to the DIP Budget.

## ARTICLE VI

## COVENANTS

SECTION 6.01  <u>Affirmative Covenants</u>.  Except to the extent prohibited by the DIP Budget, the Interim DIP Order and/or the Final DIP Order (as applicable), from and after the Closing Date, until a Repayment Event, each Borrower Party covenants and agrees as follows:

(a)  <u>Compliance with Laws, Etc.</u>  Each Borrower Party will (i) comply with all applicable laws, rules, regulations and orders of any Governmental Authority, such compliance to include compliance with all applicable Environmental Laws, ERISA and any Anti-Money Laundering Laws, except where the failure to so comply could not reasonably be expected to have a Material Adverse Effect and (ii) maintain and enforce policies and procedures with respect to itself and its Subsidiaries designed to ensure compliance in all material respects with applicable Sanctions, anti-corruption laws and Anti-Money Laundering Laws.

(b)  <u>Taxes</u>.  Each Borrower Party will file all federal, state, local, foreign and other tax returns and reports required to be filed, and shall pay all federal, state, local, foreign and other taxes, assessments, fees and other governmental charges levied or imposed upon them or their properties, income or assets otherwise due and payable, except those (i) which are being contested in good faith by appropriate proceedings for which adequate reserves in conformity with GAAP have been provided therefor or (ii) with respect to which the failure to make such filing or payment could not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

(c)  <u>Hazardous Materials Activities, Etc.</u>  Except as otherwise could not reasonably be expected to have a Material Adverse Effect, each Borrower Party will promptly take any and all actions necessary to (i) cure any violation of applicable Environmental Laws by such Borrower Party or with

respect to the Refinery, (ii) make an appropriate response to any Environmental Action against such Borrower Party or with respect to the Refinery and discharge any obligations it may have to any Person thereunder and (iii) respond to any Release of Hazardous Materials by such Borrower Party or with respect to the Refinery to the extent required by applicable Environmental Laws.

(d)   <u>Maintenance of Insurance</u>.

(i)   The Borrower Parties shall maintain (through either an individual policy or as part of a group policy maintained by any Loan Party or Refinery and so long as the Loan Parties are included as additional "named" insureds on all policies, as applicable), insurance in such amounts and against such losses as are customary for companies of a similar size operating in the same or similar businesses covering their operations and exposures and in accordance in all material respects with their applicable Material Contracts and in accordance in all material respects with the recommendations of the Insurance Consultant in the Insurance Report, by financially sound and responsible insurers or reinsurers which have an A.M. Best policyholders' rating of not less than A-, a financial size rating of IX or better, or an S&P rating of not less than A, or, if the relevant insurance is not available from such insurers, such other insurers as the Administrative Agent may approve in writing, acting reasonably, and which, in the case of any insurance on any Property with respect to which a mortgage has been granted pursuant to the terms of any Security Documents or Pre-Petition Collateral Documents, are licensed to do business in the jurisdictions where the applicable Property is located; *provided* that to the extent that changes in the insurance markets result in a material increase in the cost of such coverage or if insurance against certain risks is not available on commercially reasonable terms, the Borrower Parties may reduce the amount or scope of coverage provided such coverage remains consistent with Prudent Industry Practice.

(ii)   All such insurance shall (A) provide that no cancellation, material reduction in amount or material change in coverage thereof shall be effective until at least 10 days (or, to the extent reasonably available, 30 days) after receipt by the Collateral Agent of written notice thereof (the Borrower shall deliver a copy of the policy (and to the extent any such policy is cancelled or renewed, a renewal or replacement policy), insurance certificate with respect thereto or other evidence thereof to the Administrative Agent and Collateral Agent) and (B) within 14 days after the Closing Date name the Collateral Agent as loss payee (in the case of property insurance) or additional insured (in the case of liability insurance) on behalf of the Secured Parties (it being understood that, absent an Event of Default, any proceeds of any such property insurance shall be delivered by the insurer(s) to the Borrower Parties and applied in accordance with this Agreement), as applicable.

(e)   <u>Preservation of Corporate Existence, Etc.</u>   Except in connection with the administration of the Borrower Parties in the Chapter 11 Cases in accordance with applicable law, (i) each Borrower Party will preserve and keep in full force and effect its existence and (ii) each Borrower Party will preserve and keep in full force and effect all rights and franchises, licenses and permits material to its business, except with respect to <u>sub-clause (ii)</u> only, where the failure to so preserve and keep in full force and effect such rights, franchises, licenses and permits could not reasonably be expected to have a Material Adverse Effect, *provided* that any Borrower Party may, at the Borrower Parties' expense, change its name upon 15 Business Days' prior written notice to the Administrative Agent (or such shorter period of time reasonably acceptable to the Administrative Agent) and timely delivery to the Administrative Agent of all additional financing statements (executed if necessary for any particular filing jurisdiction) and other instruments and documents reasonably requested by the Administrative Agent to maintain the validity, perfection and priority of the security interests created under the Security Documents.

(f)      Visitation Rights; Lender Calls.  At any reasonable time and from time to time upon reasonable prior notice, each Borrower Party will permit any of the Agents, or any agents or representatives designated by the Lenders, to examine and make copies of and abstracts from the records and books of account of, and visit the properties of, any of the Borrower Parties or the Refinery and to discuss the affairs, finances and accounts of any of the Borrower Parties or the Refinery with any of their officers or directors and with their independent certified public accountant*s*. The Borrower shall arrange to have a telephonic conference call with the Lenders, to the extent requested by the Required Lenders, once per calendar month, which shall be coordinated with the Administrative Agent during normal business hours upon reasonable prior notice to the Lenders, to discuss the status of the Refinery and the affairs, finances and accounts of the Borrower.  In addition, each Borrower Party shall continue to (a) grant the Lenders and the Administrative Agent with reasonable access to any other advisers of the Borrower as the Lenders or the Administrative Agent shall reasonably request, (b) reasonably cooperate with the Lenders' financial advisors, auditors, attorneys, appraisers and any other consultants engaged from time to time at the discretion of the Lenders and (c) reimburse reasonable fees and expenses of such financial advisors, auditors, attorneys, appraisers and other consultants in accordance with the DIP Order.

(g)      Keeping of Books.  Each Borrower Party will keep proper books of record and account, in which full, true and correct entries shall be made of all material financial transactions and the material assets and business of such Borrower Party in accordance with GAAP in effect from time to time and otherwise in compliance in all material respects with the regulations of any Governmental Authority having jurisdiction thereof.

(h)      Obtain and Maintain Governmental Authorizations. Each Borrower Party will obtain, maintain in full force and effect, and meet all requirements in respect of any Governmental Authorizations necessary for the Required Shutdown Activities and the transactions contemplated hereby.

(i)      Maintenance of Properties, Etc.  Each Borrower Party (i) will implement the Required Shutdown Activities in all respects in accordance with the DIP Order, the DIP Budget, Prudent Industry Practice, Governmental Authorizations and Contractual Obligations binding on it and applicable laws, (ii) will maintain and preserve in good repair, working order and condition (ordinary wear and tear, casualty and condemnation excepted) its Properties in all material respects in accordance with Prudent Industry Practice, Contractual Obligations binding on it and applicable laws, and (iii) may (but has no obligation to) consummate any Permitted Interim Activities.

(j)      Further Assurances.  Without limiting Section 2.08(a), herein, promptly upon request by any Agent, or any Lender through the Administrative Agent, do, execute, acknowledge, deliver, record, re-record, file, re-file, register and re-register any and all such further acts, deeds, conveyances, pledge agreements, mortgages, estoppel and consent agreements of lessors, deeds of trust, trust deeds, assignments, financing statements and continuations thereof, termination statements, notices of assignment, transfers, certificates, assurances and other instruments as any Agent, or any Lender through the Administrative Agent, may reasonably require from time to time in order to (i) carry out more effectively the purposes of the Loan Documents and the Interim DIP Order or the Final DIP Order (as applicable), (ii) without limiting Section 2.08(a), to the fullest extent permitted by applicable law, subject any Borrower Party's or any of its Subsidiaries' properties, assets, rights or interests to the Liens now or hereafter intended to be covered by any of the Security Documents and (iii) perfect and maintain the validity, effectiveness and priority of any of the Security Documents and any of the Liens intended to be created thereunder.

(k)      Post-Closing Collateral Requirements.

(i)        Within 30 days of the Closing Date, or such later date as may be agreed to by the Required Lenders in their discretion, the Borrower shall use commercially reasonable efforts to (i) establish the Borrower Account and (ii) deliver to the Administrative Agent a fully executed Control Agreement with respect to the Borrower Account.

(ii)        Within 30 days of the Closing Date, or such later date as may be agreed to by the Required Lenders in their discretion, the Borrower shall deliver the Pledge Agreement, in form and substance satisfactory to the Administrative Agent and the Lenders, duly executed by the Persons intended to be party thereto, together with:

(A)        certificates (if any) representing the pledged Capital Stock of the Borrower accompanied by undated stock powers executed in blank;

(B)        appropriately completed UCC financing statements (Form UCC-1), naming Holdings as debtor and the Collateral Agent as secured party, in form appropriate for filing under the Uniform Commercial Code of Delaware, as applicable, covering the "Pledge Collateral" under, and as defined in, the Pledge Agreement;

(C)        completed requests for information or similar search report, listing all effective financing statements filed in the Office of the Secretary of State (or other applicable office) of the jurisdiction of incorporation or formation, as applicable, of Holdings that name such Person as debtor, together with copies of such other financing statements; and

(D)        evidence that all other action that the Lenders may deem necessary in order to perfect and protect the first priority liens and security interests created under the Pledge Agreement has been taken.

(l)        Separateness.  Except in connection with the administration of the Borrower Parties in the Chapter 11 Cases in accordance with applicable law, each Borrower Party shall:

(i)        maintain Deposit Accounts or accounts, separate from those of any Affiliate (other than any other Borrower Party or as permitted by the Pre-Petition Depositary Agreement) with commercial banking institutions and will not commingle their funds with those of any Affiliate (other than any other Borrower Party or as permitted by the Pre-Petition Depositary Agreement);

(ii)        act solely in its name and through its duly authorized officers, managers, representatives or agents in the conduct of its businesses;

(iii)        conduct in all material respects its business solely in its own name, in a manner not misleading to other Persons as to its identity (without limiting the generality of the foregoing, all oral and written communications (if any), including invoices, purchase orders, and contracts);

(iv)        obtain proper authorization from member(s), shareholder(s), director(s) and manager(s), as required by its limited partnership agreement, limited liability company agreement, general partnership agreement or bylaws for all of its limited liability company, limited partnership, general partnership or corporate actions; and

(v)        comply in all material respects with the terms of its Organizational Documents.

(m)    <u>Covenant to Give Security</u>. Upon the acquisition of any property by any Borrower Party, and such property, in the reasonable judgment of the Administrative Agent, shall not already be subject to a perfected first priority security interest in favor of the Collateral Agent for the benefit of the Secured Parties pursuant to and as set forth in the applicable DIP Order, then in each case at the Borrower's expense and subject to the DIP Order:

(i)    within 10 days after such acquisition, furnish to the Administrative Agent and the Collateral Agent a description of the real and personal properties so acquired, in each case, in detail satisfactory to the Administrative Agent; and

(ii)    promptly, but in any event within 90 days after such acquisition, take all such actions and execute and deliver, or cause to be executed and delivered, all such mortgages, estoppel and consent agreements of lessors, documents, instruments, agreements, opinions and certificates with respect to such Property as the Administrative Agent shall reasonably request to create (and provide evidence thereof) a valid and perfected first priority Lien on such Property in favor of the Collateral Agent (for the benefit of the Secured Parties).

(n)    <u>Material Contracts</u>. Solely for so long as any Material Contract remains in force and effect, each Borrower Party will (i) perform and observe all material terms and provisions of each Material Contract to be performed or observed by it and (ii) enforce each such Material Contract in accordance with its material terms except, in the case of <u>clauses (i)</u> and <u>(ii)</u> above, where the failure to do so, either individually or in the aggregate, could not be reasonably likely to have a Material Adverse Effect (after giving effect to any replacement or substitute agreements entered into in accordance with the terms of the Loan Documents) or as set forth on <u>Schedule 6.01(n)</u>.

(o)    <u>DIP Budget</u>.

(i)    Subject to the terms of the DIP Order, the expenditures authorized in the DIP Budget shall be adhered to by the Borrower Parties on a weekly basis and on a cumulative basis as described below.  The DIP Budget shall be tested on a cumulative basis for a 4-week period then ended, it being understood and agreed that actual amounts of each of the Borrower Parties' expenditures in the aggregate may not exceed the applicable DIP Budget; *provided* that any use by the Borrower Parties of Cash Collateral or the cash proceeds of Pre-Petition Collateral shall be taken account in connection with measuring compliance with the DIP Budget. Cash Collateral, whether the proceeds of Advances or otherwise, shall only be used for purposes set forth in the DIP Budget (regardless of whether such uses are permitted under this Agreement or otherwise).

(ii)    The Borrower shall provide to the Administrative Agent and the Pre-Petition Term Administrative Agent:

(A)    by 12:00 noon (New York time) on the second (2nd) Business Day following the end of each calendar week after the Closing Date (the "***Testing Date***"), a reconciliation (which shall be certified by the Chief Restructuring Officer of the Borrower Parties) of actual cash receipts and disbursements (including, without limitation, all disbursements made with of the proceeds of the Advances), cash balances and loan balances on a line-item basis against such figures set forth in the DIP Budget for (A) such week and (B) the cumulative period since the Closing Date which ended with such week, in each case, with written explanations of any line-item that varies for such line-item; <u>provided</u> that the first such reconciliation shall not be required to be delivered until the Wednesday of the second full week following the Closing Date; and

(B)     such other information or documents (financial or otherwise) with respect to the Borrower Parties as the Lenders (through the Administrative Agent) may reasonably request.

(iii)     No later than three (3) days after the distribution of the report by the Borrower pursuant to Section 6.01(o)(ii)(A) above, the Borrower shall host a conference call with the Administrative Agent and the Lenders to discuss the financial information provided by the Borrower pursuant to Section 6.01(o)(ii)(A), which conference calls shall be conducted during normal business hours at such times as may be mutually agreed between the Borrower, the Administrative Agent and the Required Lenders.

(iv)     No later than five (5) Business Days before the end of each consecutive full four-week period included in the then-effective DIP Budget, the Borrower shall deliver to the Administrative Agent and Lenders a proposed updated DIP Budget for the remaining period covered by the then-effective DIP Budget for the approval of the Administrative Agent and the Required Lenders in their sole discretion, which updated DIP Budget must be approved by the Administrative Agent and the Required Lenders at least two (2) Business Days before the end of such four-week period.  If the Administrative Agent and the Required Lenders reject such updated DIP Budget, the Borrower shall, within twenty-four (24) hours of receipt of such notice of rejection, engage in good faith negotiations with the Administrative Agent in order to develop a proposed updated DIP Budget that is acceptable to the Administrative Agent and Required Lenders in their sole discretion (such revised proposed DIP Budget to be submitted within two (2) Business Days of the Borrower's receipt of a notice of rejection).  Any proposed updated DIP Budget shall, upon approval by the Administrative Agent pursuant to this Section 6.01(o)(iv), become the effective DIP Budget and shall replace and supersede the then-effective DIP Budget.  For clarification purposes, in the event the DIP Budget is not approved by the Administrative Agent and the Required Lenders, the DIP Budget that was last approved by the Administrative Agent and the Required Lenders shall remain in effect.

(v)     Any deviation from the DIP Budget in excess of the Permitted Variances (as defined below in Section 6.01(o)(vi)) shall constitute non-compliance with the DIP Budget and the terms of the Loan Documents and an Event of Default; provided that the Required Lenders shall have the authority to provide written pre-approval for any deviations in excess of the Permitted Variances.

(vi)     As of any Testing Date, for the one week period ending on such Testing Date ("***Testing Period(s)***"), the Borrower shall not allow (i) any operating disbursements made by the Borrower Parties during such Testing Period (reduced by any applicable accrued and unused Carry Forward Amounts for the applicable Disbursement Line Item with respect to each operating disbursement) to be (x) greater than 120% of the applicable Disbursement Line Item related to such operating disbursements for the Borrower Parties set forth in the DIP Budget for such Testing Period and (y) greater than 110% of the applicable Disbursement Line Item related to such operating disbursements for the Borrower Parties set forth in the DIP Budget on a cumulative basis for that portion of the DIP Budget ending on the Testing Date; (ii) the aggregate operating disbursements made by the Borrower Parties during such Testing Period (reduced by any applicable accrued and unused Carry Forward Amounts) to be (x) greater than 120% of the aggregate operating disbursements for the Borrower Parties set forth in the DIP Budget for such Testing Period and (y) greater than 110% of the aggregate operating disbursements for the Borrower Parties set forth in the DIP Budget on a cumulative basis for that portion of the DIP Budget ending on the Testing Date; (iii) the aggregate receipts received by the Borrower Parties during such Testing

Period (increased by any applicable accrued and unused Carry Forward Amounts) to be (x) less than 90% of the aggregate receipts for the Borrower Parties set forth in the DIP Budget for such Testing Period or (y) less than 90% of the aggregate receipts for the Borrower Parties set forth in the DIP Budget on a cumulative basis for that portion of the Budget ending on the Testing Date; (iv) the aggregate professionals fees disbursements made by the Borrower Parties on a cumulative basis over each Testing Period (reduced by any applicable accrued and unused Carry Forward Amounts related to professional fees) to be greater than 110% of the aggregate professional fees set forth in the DIP Budget on a cumulative basis for that portion of the DIP Budget ending on the Testing Periods (the variance in Disbursement Line Items described in the foregoing clause (i), the variance in operating disbursements described in the foregoing clause (ii), the variance in receipts described in the foregoing clause (iii) and the variance in professional fees described in the foregoing clause (iv), the "***Permitted Variances***").

(vii)    For the purposes of the above calculations, it is agreed that to the extent that the professional fees incurred by counsel to the Lenders exceed the amounts for such line items in the DIP Budget, such excess amounts shall be disregarded when calculating the Permitted Variance.

(p)    <u>Milestones</u>. Each Borrower Party hereby covenants and agrees to comply with the following milestones (the "***Milestones***"), unless otherwise agreed to in writing by the Required Lenders:

(i)    on or before the third (3rd) day after the Petition Date, the Interim DIP Order shall have been entered, and such order shall not have been reversed, modified, amended, stayed or vacated; and

(ii)    on or before the thirty-fifth (35th) day after the entry of the Interim DIP Order, the Final DIP Order shall have been entered, and such order shall not have been reversed, modified, amended, stayed or vacated.

(q)    <u>USVI Existing LC</u>.   Each Borrower Party shall use commercially reasonable efforts to procure that the Government of the U.S. Virgin Islands draws on the USVI Existing LC and applies any amounts drawn thereunder towards costs and expenses of the Borrower Parties in connection with the Required Shutdown Activities.  The Borrower Parties shall (i) keep the Lenders apprised of all discussions with the Government of the U.S. Virgin Islands in connection with the foregoing and (ii) promptly following receipt of confirmation that amounts will be drawn under the USVI Existing LC for application towards such expenses, shall deliver to the Lenders a revised DIP Budget reflecting any applicable changes thereto as a result of such application for approval by the Lenders.

(r)    <u>Bankruptcy Matters</u>. Without duplication to <u>Section 6.03</u> below, the Borrower Parties shall:

(i)    keep the Lenders and the Administrative Agent apprised on a timely basis of all material developments with respect to the business and affairs of the Borrower Parties;

(ii)    provide the Lenders and the Administrative Agent with notice of motions, applications or other filings to be brought or made in the Chapter 11 Cases in accordance with <u>Section 10.01</u> including to (1) use best efforts to give no less than five (5) days' notice of any material motion, application or other filing to be brought or made by the Borrower or any other Borrower Party in the Chapter 11 Cases or, where it is not practicable to do so, as much notice as is reasonably possible prior to any such filing; and (2) use best efforts to provide drafts of any material materials (including draft material orders) to be served by the Borrower or any other

61

Borrower Party at least two (2) Business Days prior to any such service to give the Lenders and the Administrative Agent a reasonable opportunity to review and comment on such draft material materials before service of such materials or, where it is not practicable to do so, as much opportunity in the circumstances as is reasonably practicable to do;

(iii)    seek the Required Lenders' prior approval of any material order in the Chapter 11 Cases that affects this Agreement, the DIP Facility or any other Loan Documents and only to seek to obtain such orders as are in form and substance reasonably satisfactory to the Required Lenders;

(iv)    comply with all Bankruptcy Court orders and use all the proceeds of the DIP Facility in a manner consistent with the restrictions set forth in this Agreement and the DIP Order;

(v)    subject to entry of an order by the Bankruptcy Court, maintain the insurance in existence on the date hereof, with respect to the Collateral, except such non-compliances as could not, either individually or in the aggregate, reasonably be expected to have a Material Adverse Effect;

(vi)    promptly execute and deliver all further instruments and documents (including, without limitation, certificates, declarations, affidavits, reports and opinions) and take all further action that the Required Lenders or the Administrative Agent may require, to give effect to this Agreement, perfect and protect any DIP Lien or to enable the Administrative Agent and the Lenders to exercise and enforce their rights and remedies with respect to the Collateral, subject to the terms and conditions set forth in the DIP Order.

SECTION 6.02    Negative Covenants.    From and after the Closing Date, until a Repayment Event, each Borrower Party covenants and agrees as follows:

(a)    Liens, Etc.   Such Borrower Party will not create, incur, assume or suffer to exist any Lien on or with respect to any of its Properties whether now owned or hereafter acquired, except Permitted Liens.

(b)    Debt.   Such Borrower Party will not create, incur, assume or suffer to exist any Debt, except (without duplication):

(i)    Debt of the Borrower Parties under the Loan Documents;

(ii)    Pre-Petition Debt of the Borrower Parties and other Debt of the Borrower Parties outstanding as of the Closing Date (in each case, without giving effect to any amendment or modification thereto, or any increase, incremental, accordion or similar feature (regardless of whether permitted under any Pre-Petition Financing Document or any document evidencing such Debt or otherwise)); provided that such amounts may increase with respect to any "payment in kind" interest that accrues and is capitalized in accordance with the DIP Order;

(iii)    Debt of any Borrower Party owed to any other Borrower Party; provided that all such Debt shall constitute Pledged Debt subject to the Lien created under the DIP Order;

(iv)    to the extent constituting Debt, solely to the extent incurred prior to and outstanding as of the Petition Date, contingent obligations under or in respect of performance bonds, bid bonds, appeal bonds, surety bonds, financial assurances and completion guarantees, indemnification obligations, obligations to pay insurance premiums, take or pay obligations and

similar obligations in each case incurred in the ordinary course of business and not in connection with Debt for Borrowed Money;

(v)     to the extent constituting Debt, Debt arising from the honoring by a bank or other financial institution of a check, draft or similar instrument drawn against insufficient funds in the ordinary course of business or other cash management services in the ordinary course of business; *provided* that such Debt is extinguished within 10 Business Days of its incurrence solely to the extent such Debt is created, incurred or assumed in connection with any Required Shutdown Activities; guaranties by a Borrower Party of Debt of any other Borrower Party with respect to Debt otherwise permitted to be incurred pursuant to this <u>clause (b)</u>; *provided* that, if the Debt that is being guaranteed is unsecured and/or subordinated to the Obligations of the Borrower Parties under the Loan Documents, the guaranty shall also be unsecured and/or subordinated to the Obligations of the Borrower Parties under the Loan Documents;

(vi)    loans by any Affiliate of the Borrower Parties (other than a Borrower Party) to a Borrower Party solely to the extent incurred prior to and outstanding as of the Petition Date; *provided* that such loans are subordinated to the Obligations pursuant to subordination terms reasonably acceptable to the Administrative Agent, and in any event, subordinated in right of payment in full to the Obligations;

(vii)   solely to the extent incurred prior to and outstanding as of the Petition Date, trade payables incurred in the ordinary course of business (but not for borrowed money) and (A) not more than 90 days past due or (B) being contested in good faith by appropriate proceedings;

(viii)  to the extent constituting Debt that is outstanding as of the Petition Date, guarantees, contingent obligations or letters of credit issued (including reimbursement obligations in respect thereof) as credit support for commodity swaps, options or futures contracts or other similar contracts in each case permitted under Section 6.02(m); and

(ix)    Debt consisting of obligations under Insurance Premium Financing Arrangements that is outstanding as of the Petition Date.

For purposes of determining compliance under this Section 6.02(b), in the event that any Debt permitted to be incurred hereunder meets the criteria of more than one category of Debt permitted hereunder, the Borrower may not classify or reclassify such transaction or item (or portion thereof).

(c)     Change in Nature of Business.  Subject to any limitations imposed as a result of operation as debtors-in-possession under the Bankruptcy Code, the Borrower Parties will not engage in any business other than Required Shutdown Activities and Permitted Interim Activities.

(d)     Fundamental Changes; Mergers, Etc.  Such Borrower Party will not change its legal form, liquidate or dissolve.  Such Borrower Party will not merge into or consolidate with any Person or permit any Person to merge into it.

(e)     Sales, Etc. of Property. Such Borrower Party will not sell, lease, transfer or otherwise Dispose of any Property, or grant any option or other right to any Person to purchase, lease or otherwise acquire any Property, except:

(i)     sales of (and the granting of any option or other right to purchase or otherwise acquire) Inventory to the extent constituting Permitted Interim Activities;

(ii)      sales, leases or subleases, transfers or other Dispositions of real or personal Property that is obsolete, damaged, worn out surplus or not used or useful in the business of the Borrower Parties or the Refinery; provided that all such sales, transfers or dispositions pursuant to this clause (ii) shall not exceed $1,000,000 in the aggregate since the Closing Date without the prior written consent of the Required Lenders and/or to the extent constituting Permitted Interim Activities;

(iii)      the liquidation, sale or use of Cash and Cash Equivalents;

(iv)      to the extent constituting Dispositions, (A) leases, subleases, licenses or sublicenses of Property and (B) easements, rights-of-way or such other agreements related to real property, in each case, entered into in the ordinary course of business and which do not interfere with the Required Shutdown Activities, including in connection with any management services agreements or other agreements relating to any Shared Facilities;

(v)      Dispositions required by or in accordance with the Material Contracts, the Consent Decree or the Hovensa Confirmation Order;

(vi)      the unwinding of any Pre-Petition Secured Hedge Agreement pursuant to its terms or as a result of the Chapter 11 Cases;

(vii)      the Disposition of inventory, and/or Inventory Financing Collateral pursuant to the terms of the DIP Order and/or any Pre-Petition Inventory Financing Document; and

(viii)      other Dispositions approved by the Bankruptcy Court with the consent of the Required Lenders, or otherwise contemplated as part of any Plan, as defined in the DIP Order.

(f)      Investments.  Such Borrower Party will not make or hold any Investment, except:

(i)      Investments in Cash and Cash Equivalents;

(ii)      Investments owned as of the Closing Date in any Borrower Party or the Refinery;

(iii)      intercompany loans to the extent permitted under clause (b)(iii);

(iv)      to the extent constituting Investments, Debt which is permitted under clause (b);

(v)      Deposit Accounts permitted under Section 6.02(q);

(vi)      to the extent constituting Investments, any Required Shutdown Activities and/or Permitted Interim Activities.

(g)      Restricted Payments.  The Borrower Parties will not declare, order, pay, make or set apart or agree to declare, order, pay, make or set apart or agree to declare, order, pay, make or set apart, through any manner or means or through any other Person, directly or indirectly, any Restricted Payment other than Restricted Payments from one Borrower Party to another Borrower Party.

Notwithstanding the foregoing, any payment in respect of any Obligations (whether for principal, interest, fees, expenses, indemnification or otherwise) made to a Equityholder -Related Party (in its capacity as Lender), in each case, shall not be deemed a Restricted Payment nor constitute a Restricted Payment prohibited by this Section 6.02(g).

64

(h)      <u>Amendments of Organizational Documents</u>.  Such Borrower Party will not amend any of its Organizational Documents after the Closing Date without the Administrative Agent's prior consent, not to be unreasonably withheld, conditioned or delayed.

(i)      <u>Accounting Changes</u>.  The Borrower Parties will not make or permit any change in its (i) accounting policies or reporting practices, except as required by GAAP, or (ii) Fiscal Year.

(j)      <u>No Further Negative Pledges</u>.  Such Borrower Party will not enter into or permit to exist any agreement prohibiting the creation or assumption of any Lien upon any of its Properties, whether now owned or hereafter acquired, except for (i) (A) the Transaction Documents, and "Transaction Documents" (as defined in the Pre-Petition Revolving Credit Agreement), (B) agreements or documents governing, evidencing and/or securing any Pre-Petition Debt, or (C) other Contractual Obligations in effect as of the Closing Date (without giving effect to any amendments or modifications thereof).

(k)      <u>Sales and Leasebacks</u>.  Such Borrower Party will not, directly or indirectly, become or remain liable as lessee or as a guarantor or other surety, with respect to any lease of any property (whether real, personal or mixed), whether now owned or hereafter acquired, which such Borrower Party (i) has sold or transferred or is to sell or to transfer to any other Person (other than any other Borrower Party), or (ii) intends to use for substantially the same purpose as any other property which has been or is to be sold or transferred by such Borrower Party to any Person (other than any other Borrower Party) in connection with such lease.

(l)      <u>Partnerships, Formation of Subsidiaries, Etc.</u>  Such Borrower Party will not (i) become a general partner in any general or limited partnership or Joint Venture or (ii) organize any new Subsidiary.

(m)      <u>Speculative Transactions</u>.  Such Borrower Party will not enter into any Hedge Agreement or engage in any other transaction involving commodity swaps, options or futures contracts or any similar transactions (including take-or-pay contracts, long term fixed price off take contracts and other similar contracts for the sale of oil and refined products on either a financial or physical basis), other than any Hedge Agreements or the Inventory Financing Facility to which such Borrower Party is a party to as of the Closing Date .

(n)      <u>Capital Expenditures</u>.  The Borrower Parties shall not purchase, acquire or lease any assets that, if acquired, would constitute Capital Expenditures or otherwise make Capital Expenditures, other than Capital Expenditures that are contemplated by (and subject to the limitations of) the DIP Budget.

(o)      <u>Transactions with Affiliates</u>.  Such Borrower Party will not enter into any transaction of any kind with any Affiliate of the Borrower Parties, whether or not in the ordinary course of business, other than (i) in connection with any Required Shutdown Activities and/or Permitted Interim Activities, and (ii) on fair and reasonable terms not substantially less favorable to the applicable Borrower Party as would be obtainable by such Borrower Party at the time in a comparable arm's length transaction with a Person other than an Affiliate.

(p)      <u>Material Contracts</u>.

(i)      Except as set forth on <u>Schedule 6.02(p)</u>, for so long as any Material Contract is in force and effect, the Loan Parties shall not cause, consent to, or permit, any amendment to, modification, variance, impairment or assignment of, or waiver of timely compliance with, any terms or conditions of any Material Contract except to the extent the

foregoing is consented to by the Administrative Agent, such consent not to be unreasonably withheld, conditioned or delayed.

(ii)     Other than in connection with any Required Shutdown Activities or Permitted Interim Activities, the Loan Parties shall not enter into, become a party to, or become liable under (or permit any counterparty to enter into, become a party to or become liable under, on behalf of any Borrower Party), any contract or agreement after the Closing Date related to the Refinery.

(q)     Accounts. Such Borrower Party will not open or maintain any deposit accounts or securities accounts, other than the Existing Accounts and the Borrower Account.

(r)     Pre-Petition Payments and Amendments of Pre-Petition Debt Document. Other than as permitted under (i) this Agreement, (ii) the Interim DIP Order or the Final DIP Order, as applicable (including the DIP Budget), or (iii) otherwise with the prior written consent of the Required Lenders, no Borrower Party shall direct or permit to be made (a) any Pre-Petition Payment, or (b) any waiver, amendment, supplement, modification, termination or release of any provision of any Pre-Petition Financing Documents or any provision of any other material Pre-Petition Debt (including, without limitation, the Pre-Petition Financing Documents).

(s)     Sanctions and FCPA, Etc.  No Borrower Party shall directly or indirectly use the proceeds of any Borrowing for any purpose that would breach the United States Foreign Corrupt Practices Act of 1977, the UK Bribery Act 2010, or other similar applicable legislation in other jurisdictions or directly or indirectly use the proceeds of any Borrowing, or lend, contribute or otherwise make available such proceeds to any Subsidiary, joint venture partner or other individual or entity, (i) to fund any activities of or business with any individual or entity that, at the time of such funding, is (A) the subject of Sanctions or (B) in any Designated Jurisdiction, in each case in violation of any Sanctions or (ii) in any other manner that will result in a violation of Sanctions by any Person (including any individual or entity participating in the financing transaction contemplated by this Agreement, whether as Lender, Administrative Agent or otherwise).

(t)     Employment Matters.  No Borrower Party shall increase any termination or severance entitlement whatsoever or pay any termination or severance pay to executives of any Borrower Party or Subsidiary, each without the prior written consent of the Required Lenders and, as may be required by the Bankruptcy Code, an order of the Bankruptcy Court.

(u)     Bankruptcy Matters.  No Borrower Party shall:

(i)     make a public announcement in respect of, enter into any agreement or letter of intent with respect to, attempt to consummate or support any third party's attempt to consummate any transaction or agreement that would materially adversely impact the DIP Facility;

(ii)     at any time, seek or consent to any reversal, modification, amendments, stay or vacation of (i) any "First Day Order", (ii) the Interim DIP Order, or (iii) the Final DIP Order, in each case, without the prior written consent of the Required Lenders;

(iii)     at any time, seek or consent to a priority for any administrative expense against the Borrower Parties (now existing or hereafter arising) of any kind or nature whatsoever (including, without limitation, any administrative expenses of the kind specified in, or ordered under, Sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113 and 1114 of the

Bankruptcy Code) equal to or superior to the priority of the Administrative Agent and the Lenders in respect of the DIP Obligations except as expressly permitted in the DIP Order;

(iv)       seek or consent to a sale of any of the Collateral other than a Disposition permitted under (e) without the prior written consent of the Required Lenders and, as may be required by the Bankruptcy Code, an order of the Bankruptcy Court;

(v)       use Cash Collateral, whether the proceeds of Advances or otherwise, other than for purposes set forth in the DIP Budget (regardless of whether such uses are permitted under this Agreement or otherwise) without the prior written consent of the Administrative Agent (acting at the direction of the Required Lenders) or the Required Lenders.

SECTION 6.03       Reporting Requirements.  From and after the Closing Date, until a Repayment Event, each Borrower Party covenants and agrees that it will furnish to the Administrative Agent (for posting to the Lenders)

(a)       Notices under Pre-Petition Term Credit Agreement. Any notice, report, financial statement or other information (written or otherwise) delivered or required to be delivered to the Pre-Petition Term Administrative Agent or the Pre-Petition Term Lenders pursuant to Section 6.03 of the Pre-Petition Term Credit Agreement (as in effect as of the Closing Date, and without giving effect to any amendment or waiver thereto not expressly provided by the Lenders) at the same time as such notice, report, financial statement or other information is delivered to the Pre-Petition Term Administrative Agent or the Pre-Petition Term Lenders, as applicable (unless the DIP Order permits the Borrower Parties to not comply with such Section 6.03).

(b)       Notice of Default and Material Adverse Effect.  As soon as possible and in any event within two Business Days after the occurrence of (i) each Default, (ii) each Event of Default or (iii) any event, development or occurrence which, in the Borrower Parties' reasonable judgment, has had, or would reasonably be expected to have, a Material Adverse Effect continuing on the date of such statement, a statement of the Financial Officer of the Borrower Parties setting forth details of such Default, event, development or occurrence and the action that the Borrower Parties has taken and proposes to take with respect thereto (each such notice, a "***Default Notice***").

(c)       Information Regarding Collateral.  Prompt written notice of any change in a Borrower Party's (i) corporate name, (ii) identity or corporate structure or (iii) jurisdiction of organization. The Borrower Parties agree not to effect or permit any change referred to in the preceding sentence unless all filings have been made under the UCC or otherwise that are reasonably required in order for the Collateral Agent to continue at all times following such change to have a valid, legal and perfected security interest in all the Collateral to the extent contemplated in the Security Documents.

(d)       Other Information.  Such other information respecting the business, condition (financial or otherwise), operations, performance or Properties (including information on insurance coverage) of any Borrower Party or the Refinery as any Agent, or any Lender through the Administrative Agent, may from time to time reasonably request, other than any proprietary or confidential information of counterparties to Contractual Obligations of the Borrower Parties, to the extent the Borrower Parties have utilized commercially reasonable efforts to permit the disclosure of such information subject to Section 10.15 and such counterparty has not provided its consent (in which case such information shall be provided in redacted form).

Notwithstanding anything to the contrary in this Section 6.03 or elsewhere in any Loan Document, none of the Loan Parties shall be required to disclose, permit the inspection, examination or making copies

or abstracts of, or discussion of, any document, information or other matter that (i) constitutes non-financial trade secrets or non-financial proprietary information, (ii) in respect of which disclosure to any Agent or any Lender (or their respective representatives or contractors) is prohibited by law or is restricted by Contractual Obligation or (iii) is subject to attorney-client or similar privilege or constitutes attorney work-product.

SECTION 6.04    Permitted Activities of Holdings.  Holdings shall not directly operate any material business; *provided* that, for the avoidance of doubt, the following (and activities incidental thereto) shall not constitute the operation of a business and shall in all cases be permitted:  (a) its direct or indirect ownership of the Capital Stock of the Borrower and the Borrower's Subsidiaries, (b) the maintenance of its legal existence (including the ability to incur fees, costs and expenses relating to such maintenance and performance of activities relating to its officers, directors, managers and employees), (c) the entering into, and performance of its obligations with respect to, the Loan Documents, and the consummation of the Transactions, (d) payment of tax distributions and other dividends, (e) participating in tax, accounting and other administrative matters as a member of the consolidated group of Holdings and the Borrower, including compliance with applicable law and legal, tax and accounting matters related thereto and activities relating to its officers, directors, managers and employees, (f) holding any Cash and Cash Equivalents, (g) holding any other property (but not operating such property) received by it as a distribution from any of its Subsidiaries and making further distributions with such property, (h) providing indemnification to officers, managers and directors, (i) holding director and shareholder meetings, preparing organizational records and other organizational activities required to maintain its separate organizational structure or to comply with applicable law, (j) filing tax reports and paying taxes and other customary obligations related thereto in the ordinary course (and contesting any taxes), (k) entering into and performance of obligations with respect to contracts and other arrangements in connection with the activities contemplated by this Section 6.04, (l) the preparation of reports to Governmental Authorities and to its shareholders, (m) making Investments in the Borrower, (n) the performance of obligations under and compliance with its Organizational Documents, any demands or requests from or requirements of a Governmental Authority or any applicable law, ordinance, regulation, rule, order, judgment, decree or permit, including as a result of or in connection with the activities of its Subsidiaries, (o) the entering into, and performance of its obligations with respect to, the Holdco Loan Documents and the Pre-Petition Financing Documents, and the consummation of the transactions contemplated thereby (p) Holdings' participation in Chapter 11 Cases, and (q) any activities incidental to the foregoing or customary for passive holding companies.  Holdings shall not consent to the granting of any Liens on the Capital Stock of the Borrower other than those for the benefit of the Collateral Agent (including as a result of entering into this Agreement) or those for the benefit of the Pre-Petition Secured Parties and in effect as of the Closing Date. Holdings shall not directly own any Capital Stock other than the Borrower.

## ARTICLE VII

## EVENTS OF DEFAULT

SECTION 7.01    Events of Default.  From and after the First DIP Funding Date, each of the following events or occurrences shall constitute an "***Event of Default***":

(a)    the Borrower shall fail to pay any principal when due and payable or fail to pay any interest or any other payment under any Loan Document; or

(b)    any certification, representation or warranty made by any Loan Party (or any of its officers) under or in connection with any Loan Document to which it is a party (including in any certificate delivered pursuant to Article IV or Section 6.03) shall prove to have been incorrect in any material respect

when made; *provided* that, if (i) such Loan Party was not aware that such certification, representation or warranty was false or incorrect at the time such certification, representation or warranty was made, (ii) the fact, event or circumstance resulting in such false or incorrect certification, representation or warranty is capable of being cured, corrected or otherwise remedied, and (iii) such fact, event or circumstance resulting in such false or incorrect certification, representation or warranty shall have been cured, corrected or otherwise remedied within 30 days (or if such incorrect certification, representation or warranty is not susceptible to cure within 30 days, and such Loan Party is proceeding with diligence and in good faith to cure such default and such default is susceptible to cure, such 30 day cure period shall be extended as may be necessary to cure such incorrect certification, representation or warranty, such extended period not to exceed 90 days in the aggregate (inclusive of the original 30-day period)) from the date a Responsible Officer of such Borrower Party obtains knowledge thereof, such false or incorrect certification, representation or warranty shall not constitute a Default or an Event of Default for purposes of the Loan Documents; or

(c)      any Borrower Party shall fail to perform or observe any term, covenant or agreement contained <u>Section 2.08</u>, <u>Section 3.07</u>, <u>Section 6.01(e)(i)</u>, Section <u>6.01(o)</u>, Section 6.01(p), <u>Section 6.01(r)(iv)</u>, Section <u>6.02</u> or <u>Section 6.03(b)(ii)</u>; or

(d)      any Borrower Party shall fail to perform or observe any term, covenant or agreement contained in (i) Section <u>6.01(d)</u> or <u>Section 6.03(a)</u>(i) or <u>(a)(iii)</u> and such failure shall remain unremedied for five days after the earlier of the date on which (x) any Responsible Officer of a Borrower Party becomes aware of such failure or (y) written notice thereof shall have been given to the Borrower Parties by the Administrative Agent or any Lender or (ii) Section <u>6.01(m)</u> or <u>Section 6.03(b)</u> (as a result of any failure to comply with Sections 6.03(b), (c) or (d) of the Pre-Petition Term Credit Agreement) and such failure shall remain unremedied for five days after the earlier of the date on which (x) any Responsible Officer of a Borrower Party becomes aware of such failure or (y) written notice thereof shall have been given to the Borrower Parties by the Administrative Agent or any Lender; or

(e)      any Loan Party shall fail to perform or observe any other term, covenant or agreement contained in any Loan Document on its part to be performed or observed and such failure shall remain unremedied for 15 days after the earlier of the date on which (i) any Responsible Officer of such Person becomes aware of such failure or (ii) written notice thereof shall have been given to the Loan Parties by the Administrative Agent or any Lender; or

(f)      (i) any Borrower Party shall fail to pay any principal of, premium or interest on or any other amount payable in respect of any Post-Petition Debt of such Loan Party that is outstanding in a principal amount of at least $2,500,000 individually or $5,000,000 in the aggregate for all such Borrower Parties (but excluding Debt outstanding hereunder) in each case, when the same becomes due and payable (whether by scheduled maturity, required prepayment, acceleration, early termination, demand or otherwise), and such failure shall continue after the applicable grace period, if any, specified in the agreement or instrument relating to such Debt; or (ii) any other event shall occur or condition shall exist under any agreement or instrument relating to any such Debt and shall continue after the applicable grace period, if any, specified in such agreement or instrument, if the effect of such event or condition is to accelerate, or to permit the acceleration of, the maturity of such Debt or otherwise to cause, or to permit the holder thereof to cause, such Debt to mature; or (iii) any such Debt shall be declared to be due and payable or required to be prepaid or redeemed (other than by a regularly scheduled required prepayment or redemption), purchased or defeased, or an offer to prepay, redeem, purchase or defease such Debt shall be required to be made, in each case prior to the stated maturity thereof except to the extent such "Event of Default" is caused by the commencement of the Chapter 11 Cases, any failure of any of the Loan Parties to be Solvent  or by complying with an inconsistent obligation under this Agreement; or

(g)      any final Post-Petition judgments or Post-Petition orders, either individually or in the aggregate, for the payment of money in excess of (i) $1,000,000, in the case of judgments or orders that are superior in right of payment to any Obligation under this Agreement, or (ii) $1,000,000, in the case of any other judgment or order, in each case (to the extent not stayed pursuant to Section 362 of the Bankruptcy Code), shall be rendered against any Borrower Party or Refinery and either (x) enforcement proceedings shall have been commenced by any creditor upon such judgment or order or (y) there shall be any period of sixty (60) consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect or such judgment or order has not been otherwise discharged or satisfied within such sixty (60) day period; or

(h)      any non-monetary Post-Petition judgment or order shall be rendered against any Borrower Party or Refinery that could reasonably be expected to have a Material Adverse Effect, and there shall be any period of sixty (60) consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect; or

(i)      any provision of any Loan Document after delivery thereof shall for any reason (except as the result of act or omission of the Agents or any other Secured Party) cease to be valid and binding on or enforceable against any Loan Party to it, or any such Loan Party shall so state in writing; or

(j)      any Security Document or financing statement after delivery thereof shall for any reason (other than pursuant to the terms thereof or as a result of action taken by any Agent or any other Secured Party) cease to create a valid and perfected first (or second with respect to the Inventory Financing Collateral) priority lien on and security interest in the Collateral, to the extent contemplated hereby or thereby; or

(k)      a Change of Control shall occur; or

(l)      (i) there shall occur one or more ERISA Events which individually or in the aggregate results in liability of any Borrower Party and if such liability, together with all other such liabilities, is reasonably likely to result in a Material Adverse Effect; or (ii) a Lien or security interest under Section 430(k) of the Internal Revenue Code or under ERISA has been imposed on the Collateral, any Borrower Party, or any Employee Benefit Plan, and such Lien, together with all other such Liens, would reasonably be likely to result in a Material Adverse Effect; or

(m)      the Bankruptcy Court shall have entered an order (i) directing the appointment of an examiner with expanded powers, (ii) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code, or (iii) dismissing any of the Chapter 11 Cases; or

(n)      except as provided in the DIP Order or with respect to the Aron Rights or all rights and remedies of J. Aron in connection with the Safe Harbor Agreements (as defined in the DIP Order), the Bankruptcy Court shall enter an order or orders granting relief from the automatic stay applicable under Section 362 of the Bankruptcy Code pertaining to the Collateral to the holder or holders of any security interest to (i) permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of the Loan Parties that have a value in excess of $5,000,000 in the aggregate or (ii) permit other actions that would have a Material Adverse Effect; or

(o)      any debtor in possession financing is entered into by any Borrower Party other than the DIP Facility or any Borrower Party seeks authorization from the Bankruptcy Court to enter into such facility without the prior written consent of the Required Lenders that, in each instance, does not provide for indefeasible payment in full in cash of all Obligations under this Agreement; or

70

(p)    any of the following shall occur:

(i)    the Final DIP Order shall not have been entered on or prior to the date that is forty-five (45) days after the Petition Date;

(ii)    entry of any order by the Bankruptcy Court reversing, amending, supplementing, staying for a period of ten (10) days or more, vacating or otherwise amending, supplementing or modifying the DIP Order without the prior written consent of the Required Lenders;

(iii)    one or more judgments, orders or decrees for the payment of money required to be satisfied as an administrative expense claim in the Chapter 11 Cases shall be allowed by the Bankruptcy Court in an aggregate amount (to the extent not paid or covered by insurance) that is reasonably expected to have a Material Adverse Effect;

(iv)    the Bankruptcy Court enters an order or orders (i) to sell, transfer, lease, exchange, alienate or otherwise dispose of any of the Collateral other than the Inventory Financing Collateral pursuant to Section 363 of the Bankruptcy Code, (ii) avoiding or requiring disgorgement by the Administrative Agent or the Lenders of any amounts received in respect of the DIP Obligations, (iii) permitting the grant of a Lien on the Collateral other than the Permitted Liens or (iv) extinguishing the Obligations as a result of the Lenders' credit bid and/or assumption by the Lenders in their acquisition of the Borrower Parties pursuant to such order;

(v)    the Interim DIP Order or the Final DIP Order, as applicable, shall cease to purport to create valid, enforceable, and perfected Liens on the Collateral with the priority set forth therein or otherwise cease to be valid and binding and in full force and effect;

(vi)    non-compliance by any Borrower Party in any material respect with the terms of the DIP Order or any other order entered in the Chapter 11 Cases;

(vii)    any Borrower Party shall seek any modification of the Interim DIP Order or the Final DIP Order (as applicable) without the prior express written consent of the Required Lenders, or assert in any pleading filed in any court that any material provision of the Interim DIP Order or the Final DIP Order (as applicable) is not valid and binding for any reason;

(viii)    termination by the Bankruptcy Court of, or the expiration of, the exclusive period for the Borrower Parties to file a plan of reorganization in the Chapter 11 Cases as set forth in Section 1121 of the Bankruptcy Code;

(ix)    if any Borrower Party is enjoined, restrained or in any way prevented by order of a court of competent jurisdiction that has not been stayed from continuing or conducting all or any material part of its business or affairs;

(x)    any final, non-appealable order is entered in any of the Chapter 11 Cases charging any of the Collateral under Section 506(c) of the Bankruptcy Code against the Lenders (or any Borrower Party shall apply for authority to do so), or any other action is commenced by the Borrower Parties challenging the rights and remedies of any of Secured Party under, or in a manner that is inconsistent with, the DIP Order or any of the other Loan Documents, in any of the Chapter 11 Cases;

(xi)    without the prior written consent of the Required Lenders, any Borrower Party shall file a motion seeking, or take any action supporting a motion seeking, or the Bankruptcy

71

Court shall enter an order in any of the Chapter 11 Cases authorizing the Borrower Parties to obtain post-petition financing under Section 364 of the Bankruptcy Code, other than the DIP Facility;

(xii)   any Borrower Party (or any direct or indirect parent of any Borrower Party) or any person claiming by or through any of the foregoing, shall (1) obtain court authorization to commence, or shall commence, join in, assist or otherwise participate as an adverse party in any suit or other proceeding against the Agent or any of the Lenders regarding the Loan Documents or (2) seek to, or support (whether by way of motion or other pleadings filed with the Bankruptcy Court or any other writing executed by any Borrower Party or by oral argument) any other person's motion to: (i) disallow in whole or in part any of the Obligations arising under this Agreement or any other Loan Document (or any such order is entered), or (ii) challenge the validity and enforceability of the Liens or security interests granted or confirmed herein or in the Interim DIP Order or the Final DIP Order in favor of the Secured Parties;

(xiii)   an application shall be filed by the Borrower Parties for the approval of any other administrative expense claim, including any superpriority administrative expense claim, in the Chapter 11 Cases which is equal to or senior to the claims of the Lenders against the Borrower Parties hereunder or under the DIP Order or any of the other Loan Documents (other than the Carve-Out (solely upon the occurrence of a Termination Date (as defined in the DIP Order)), which shall be paid by the Borrower Parties at the times and in the amounts permitted by the DIP Order), or an order shall be entered by the Bankruptcy Court granting any such senior administrative expense claim, including any superpriority administrative expense claim in the Chapter 11 Cases which is equal to or senior to the claims of the Lenders against the Borrower Parties hereunder or under the DIP Order or any of the other Loan Documents; an order with respect to any of the Chapter 11 Cases shall be entered by the Bankruptcy Court (or any of the Borrower Parties shall file an application or motion or pleading for entry of or in support of an order) dismissing any of the Chapter 11 Cases or converting any of the Chapter 11 Cases under Section 1112 of the Bankruptcy Code or otherwise to a case under chapter 7 of the Bankruptcy Code;

(q)   the Borrower or any other Borrower Party shall make (or shall have made) (A) any payment (as adequate protection or otherwise), or application for authority to pay, on account of any Pre-Petition Debt, other than (i) Pre-Petition Payments authorized by the Bankruptcy Court in the DIP Order (including the DIP Budget), any "first day" orders entered in the Chapter 11 Cases or any other orders of the Bankruptcy Court entered with the consent of (or non-objection by) the Administrative Agent in amounts consistent with the DIP Budget (and not otherwise prohibited by this Agreement or the DIP Order), or (ii) otherwise with the prior written consent of the Administrative Agent or (B) any other payment or disbursement (with the proceeds of the Advances or otherwise) other than in accordance with the DIP Budget; or

(r)   the appointment by the Bankruptcy Court of a receiver and manager, receiver, interim receiver, trustee in bankruptcy or similar official in respect of any of the Borrower Parties; or

(s)   any Borrower Party files, amends or modifies, or files a pleading seeking approval of, any order or document approved in the Chapter 11 Cases in a manner that is inconsistent with the Required Lenders' consent and approval rights under this Agreement and the other Loan Documents; or

(t)   any of the Borrower Parties shall take any action in support of any matter set forth in Sections 7.01(m), (p)(ii), (p)(iv), (p)(viii), (r)(p)(xiii) or Section 7.01(s) or any other Person shall do so and such application is not contested in good faith by the Borrower Parties; or

72

(u)      any Borrower Party shall file a motion, pleading or proceeding which could reasonably be expected to result in a material impairment of the rights or interests of the Administrative Agent or the Lenders or a determination by a court with respect to a motion, pleading or proceeding brought by another party which results in such a material impairment; or

(v)      the failure of any Milestone to be timely satisfied; or

(w)      an order shall be entered by the Bankruptcy Court or any other court of competent jurisdiction confirming a plan of reorganization or liquidation in any of the Chapter 11 Cases (or an order shall be entered by the Bankruptcy Court approving a disclosure statement related to such plan) other than a plan of reorganization that satisfies the Obligations in full in cash when due or any Borrower Party (or any direct or indirect parent of a Borrower Party) shall file, propose, support, or fail to contest in good faith the filing or confirmation of such a plan.

Upon the occurrence and continuance of any Event of Default, the Administrative Agent (acting on the instructions of the Required Lenders) or the Required Lenders may (notwithstanding the provisions of Section 362 of the Bankruptcy Code and without application or motion to, or order from, the Bankruptcy Court), subject to the terms, conditions and provisions of the DIP Order, by written notice to the Borrower and the U.S. Trustee, declare the Commitment to be terminated forthwith, whereupon the Commitment shall immediately terminate, and/or, by notice to the Borrower, declare its Loans hereunder, with accrued interest thereon, and all other Obligations owed to it under this Agreement and the other Loan Documents to be due and payable forthwith, whereupon the same shall immediately become due and payable.  Except as expressly provided above in this Section 7.01, presentment, demand, protest and all other notices of any kind are hereby expressly waived.

Upon the occurrence and during the continuance of any Event of Default and subject to the terms of the DIP Order, the Administrative Agent and each of the Lenders may (i) exercise all of its rights and remedies set forth in any of the Loan Documents and the DIP Order, in addition to all rights and remedies allowed under any applicable law, including the UCC, and (ii) revoke the rights of the Borrower and the other Loan Parties to use Cash Collateral in which the Administrative Agent and the Lenders have an interest. None of the Administrative Agent or the Lenders shall have any obligation of any kind to make a motion or application to the Bankruptcy Court to exercise their rights and remedies set forth or referred to in this Agreement or in the other Loan Documents. The enumeration of the foregoing rights and remedies is not intended to be exhaustive and the exercise of any right or remedy shall not preclude the exercise of any other rights or remedies, all of which shall be cumulative and not alternative.

The Borrower Parties waive (i) presentment, demand and protest and notice of presentment, dishonor, notice of intent to accelerate, notice of acceleration, protest, default, nonpayment, maturity, release, compromise, settlement, extension or renewal of any or all commercial paper, accounts, contract rights, documents, instruments, chattel paper and guaranties or other property at any time held by the Administrative Agent or the Lenders on which the Loan Parties may in any way be liable and hereby ratify and confirm whatever the Lenders may lawfully do in this regard, (ii) subject to the terms of the DIP Order, all rights to notice and hearing prior to the Administrative Agent or the Lenders taking possession or control of the Collateral, or any bond or security which might be required by any court prior to allowing the Administrative Agent or the Lenders to exercise any of their remedies subject to the terms of the DIP Order, and (iii) the benefit of all valuation, appraisal and exemption laws.  The Loan Parties acknowledge that they have been advised by counsel of their choice with respect to the effect of the foregoing waivers and this Agreement, the other Loan Documents and the transactions evidenced by this Agreement and the other Loan Documents.

Notwithstanding any other provision of any Loan Document to the contrary, during the Remedies Notice Period, (i) the Borrower Parties shall be permitted to continue to use Cash Collateral and proceeds of the Advances solely in the ordinary course of business in accordance with the DIP Budget and to satisfy the Carve-Out, and (ii) the Borrower Parties may seek emergency relief from the Bankruptcy Court during the Remedies Notice Period solely to seek a finding that no Event of Default has occurred.

The Required Lenders by written notice to the Administrative Agent may on behalf of the Lenders waive an existing Default or Event of Default and its consequences hereunder. Upon any such waiver, such Default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been cured for every purpose of this Agreement; but no such waiver shall extend to any subsequent or other Default or Event of Default or impair any right consequent thereon. The Required Lenders, by written notice to the Administrative Agent, may on behalf of all of the Lenders rescind an acceleration and its consequences if the rescission would not conflict with any judgment or decree and if all existing Events of Default (except nonpayment of principal or interest that has become due solely because of the acceleration) have been cured or waived.

SECTION 7.02    Application of Payments. Subject to the DIP Order, any payments and any proceeds of Collateral shall be applied in the following order:

(a)    *First*, to pay the incurred and unpaid fees, costs and expenses of the Lenders, the Administrative Agent and the Collateral Agent required to be reimbursed under the Loan Documents;

(b)    *Second*, to the Lenders to pay accrued and unpaid interest on the Advances;

(c)    *Third*, to the Lenders to pay all outstanding principal amounts in respect of the Advances;

(d)    *Fourth*, to the Administrative Agent or the Lenders in payment of any remaining Obligations;

(e)    *Fifth*, any balance remaining after the Obligations shall have been paid in full, in payment to the Pre-Petition Agents for distribution to the holders of Pre-Petition Debt, or to whomever may be lawfully entitled; and

(f)    *Sixth*, in payment to the Borrower.

## ARTICLE VIII

## THE AGENTS

SECTION 8.01    Appointment of Agents. Each of the Lenders hereby irrevocably appoints 405 Sentinel LLC to act on its behalf as the Administrative Agent hereunder and under the other Loan Documents and authorizes the Administrative Agent to take such actions on its behalf and to exercise such powers as are delegated to the Administrative Agent by the terms hereof or thereof, together with such actions and powers as are reasonably incidental thereto. The provisions of this Article are solely for the benefit of the Administrative Agent and the Lenders, and neither the Borrower nor any other Loan Party shall have rights as a third-party beneficiary of any of such provisions. It is understood and agreed that the use of the term "agent" herein or in any other Loan Documents (or any other similar term) with reference to the Administrative Agent is not intended to connote any fiduciary or other implied (or express) obligations arising under agency doctrine of any applicable law. Instead such term is used as a matter of market custom, and is intended to create or reflect only an administrative relationship between contracting parties. The Administrative Agent shall also act as the Collateral Agent under the Loan Documents, and

74

each of the Lenders hereby irrevocably appoints and authorizes the Administrative Agent to act as the agent of such Lender for purposes of acquiring, holding and enforcing any and all Liens on Collateral granted by any of the Borrower Parties to secure any of the Obligations, together with such powers and discretion as are reasonably incidental thereto.  In this connection, the Administrative Agent, as Collateral Agent, and any co-agents, sub-agents and attorneys-in-fact appointed by the Administrative Agent pursuant to this Article VIII for purposes of holding or enforcing any Lien on the Collateral (or any portion thereof) granted under the Security Documents, or for exercising any rights and remedies thereunder at the direction of the Administrative Agent, shall be entitled to the benefits of all provisions of this Article VIII and Article X (including Section 10.02, as though such co-agents, sub-agents and attorneys-in-fact were the "collateral agent" under the Loan Documents) as if set forth in full herein with respect thereto.

SECTION 8.02    Rights of Lenders.  The Person serving as the Administrative Agent hereunder shall have the same rights and powers in its capacity as a Lender as any other Lender and may exercise the same as though it were not the Administrative Agent, and the term "Lender" or "Lenders" shall, unless otherwise expressly indicated or unless the context otherwise requires, include the Person serving as the Administrative Agent hereunder in its individual capacity.  Such Person and its Affiliates may accept deposits from, lend money to, own securities of, act as the financial advisor or in any other advisory capacity for, and generally engage in any kind of business with, the Borrower or any Subsidiary or other Affiliate thereof as if such Person were not the Administrative Agent hereunder and without any duty to account therefor to the Lenders.

SECTION 8.03    Exculpatory Provisions.

(a)    The Administrative Agent shall not have any duties or obligations except those expressly set forth herein and in the other Loan Documents, and its duties hereunder shall be administrative in nature.  Without limiting the generality of the foregoing, the Administrative Agent:

(i)    shall not be subject to any fiduciary or other implied duties, regardless of whether a Default has occurred and is continuing;

(ii)    shall not have any duty to take any discretionary action or exercise any discretionary powers, except discretionary rights and powers expressly contemplated hereby or by the other Loan Documents that the Administrative Agent is required to exercise as directed in writing by the Required Lenders (or such other number or percentage of the Lenders as shall be expressly provided for herein or in the other Loan Documents); *provided* that the Administrative Agent shall not be required to take any action that, in its opinion or the opinion of its counsel, may expose the Administrative Agent to liability or that is contrary to any Loan Document or applicable law, including for the avoidance of doubt any action that may be in violation of the automatic stay under any Debtor Relief Law or that may affect a forfeiture, modification or termination of property of a Defaulting Lender in violation of any Debtor Relief Law; and

(iii)    shall not, except as expressly set forth herein and in the other Loan Documents, have any duty to disclose, and shall not be liable for the failure to disclose, any information relating to the Borrower Parties or any of their Affiliates that is communicated to or obtained by the Person serving as the Administrative Agent or any of its Affiliates in any capacity.

(b)    The Administrative Agent shall not be liable for any action taken or not taken by it (i) with the consent or at the request of the Required Lenders (or such other number or percentage of the Lenders as shall be necessary, or as the Administrative Agent shall believe in good faith shall be necessary, under the circumstances as provided in Section 10.04 and 7.01), or (ii) in the absence of its own gross negligence or willful misconduct as determined by a court of competent jurisdiction by final and

nonappealable judgment.  The Administrative Agent shall be deemed not to have knowledge of any Default unless and until notice describing such Default is given to the Administrative Agent in writing by the Borrower or a Lender.

(c)     The Administrative Agent shall not be responsible for or have any duty to ascertain or inquire into (i) any statement, warranty or representation made in or in connection with this Agreement or any other Loan Document, (ii) the contents of any certificate, report or other document delivered hereunder or thereunder or in connection herewith or therewith, (iii) the performance or observance of any of the covenants, agreements or other terms or conditions set forth herein or therein or the occurrence of any Default, (iv) the validity, enforceability, effectiveness or genuineness of this Agreement, any other Loan Document or any other agreement, instrument or document, or (v) the satisfaction of any condition set forth in Article IV or elsewhere herein, other than to confirm receipt of items expressly required to be delivered to the Administrative Agent.

SECTION 8.04     Reliance by Administrative Agent.  The Administrative Agent shall be entitled to rely upon, and shall not incur any liability for relying upon, any notice, request, certificate, consent, statement, instrument, document or other writing (including any electronic message, Internet or intranet website posting or other distribution) believed by it to be genuine and to have been signed, sent or otherwise authenticated by the proper Person.  The Administrative Agent also may rely upon any statement made to it orally or by telephone and believed by it to have been made by the proper Person, and shall not incur any liability for relying thereon.  In determining compliance with any condition hereunder to the making of the Advances that by their terms must be fulfilled to the satisfaction of a Lender, the Administrative Agent may presume that such condition is satisfactory to such Lender unless the Administrative Agent shall have received notice to the contrary from such Lender prior to the making of the Advances.  The Administrative Agent may consult with legal counsel (who may be counsel for the Borrower), independent accountants and other experts selected by it, and shall not be liable for any action taken or not taken by it in accordance with the advice of any such counsel, accountants or experts.

SECTION 8.05     Delegation of Duties.  The Administrative Agent may perform any and all of its duties and exercise its rights and powers hereunder or under any other Loan Document by or through any one or more sub-agents appointed by the Administrative Agent.  The Administrative Agent and any such sub-agent may perform any and all of its duties and exercise its rights and powers by or through their respective Related Parties.  The exculpatory provisions of this Article shall apply to any such sub-agent and to the Related Parties of the Administrative Agent and any such sub-agent, and shall apply to their activities as Administrative Agent. The Administrative Agent shall not be responsible for the negligence or misconduct of any sub-agents except to the extent that a court of competent jurisdiction determines in a final and nonappealable judgment that the Administrative Agent acted with gross negligence or willful misconduct in the selection of such sub-agents.

SECTION 8.06     Resignation of Administrative Agent.

(a)     The Administrative Agent may at any time give notice of its resignation to the Lenders and the Borrower.  Upon receipt of any such notice of resignation, the Required Lenders shall have the right, in consultation with the Borrower and, so long as no Event of Default has occurred and is continuing, subject to the Borrower's written consent (not to be unreasonably withheld or delayed), to appoint a successor, which shall be a bank with an office in New York, New York, or an Affiliate of any such bank with an office in New York, New York.  If no such successor shall have been so appointed by the Required Lenders and shall have accepted such appointment within 30 days after the retiring Administrative Agent gives notice of its resignation (or such earlier day as shall be agreed by the Required Lenders) (the "**Resignation Effective Date**"), then the retiring Administrative Agent may (but shall not be

76

obligated to), on behalf of the Lenders, appoint a successor Administrative Agent meeting the qualifications set forth above and, so long as no Event of Default has occurred and is continuing, subject to the Borrower's written consent (not to be unreasonably withheld or delayed).  Whether or not a successor has been appointed, such resignation shall become effective in accordance with such notice on the Resignation Effective Date. If the Person serving as Administrative Agent is a Defaulting Lender pursuant to clause (d) of the definition thereof, the Required Lenders may, to the extent permitted by applicable law, by notice in writing to the Borrower and such Person remove such Person as Administrative Agent and, in consultation with the Borrower, appoint a successor. If no such successor shall have been so appointed by the Required Lenders and shall have accepted such appointment within 30 days (or such earlier day as shall be agreed by the Required Lenders) (the "**_Removal Effective Date_**"), then such removal shall nonetheless become effective in accordance with such notice on the Removal Effective Date.

(b)  With effect from the Resignation Effective Date or the Removal Effective Date (as applicable) (1) the retiring or removed Administrative Agent shall be discharged from its duties and obligations hereunder and under the other Loan Documents (except that in the case of any collateral security held by the Administrative Agent on behalf of the Lenders under any of the Loan Documents, the retiring or removed Administrative Agent shall continue to hold such collateral security until such time as a successor Administrative Agent is appointed) and (2) except for any indemnity payments owed to the retiring or removed Administrative Agent, all payments, communications and determinations provided to be made by, to or through the Administrative Agent shall instead be made by or to each Lender directly, until such time, if any, as the Required Lenders appoint a successor Administrative Agent as provided for above.  Upon the acceptance of a successor's appointment as Administrative Agent hereunder, such successor shall succeed to and become vested with all of the rights, powers, privileges and duties of the retiring or removed Administrative Agent (other than any rights to indemnity payments owed to the retiring or removed Administrative Agent), and the retiring or removed Administrative Agent shall be discharged from all of its duties and obligations hereunder or under the other Loan Documents.  The fees payable by the Borrower to a successor Administrative Agent shall be the same as those payable to its predecessor unless otherwise agreed between the Borrower and such successor.  After the retiring or removed Administrative Agent's resignation or removal hereunder and under the other Loan Documents, the provisions of this Article and Section 10.02 shall continue in effect for the benefit of such retiring or removed Administrative Agent, its sub-agents and their respective Related Parties in respect of any actions taken or omitted to be taken by any of them while the retiring or removed Administrative Agent was acting as Administrative Agent.

SECTION 8.07   Non-Reliance on Administrative Agent and Other Lenders.  Each Lender acknowledges that it has, independently and without reliance upon the Administrative Agent or any other Lender or any of their Related Parties and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Agreement.  Each Lender also acknowledges that it will, independently and without reliance upon the Administrative Agent or any other Lender or any of their Related Parties and based on such documents and information as it shall from time to time deem appropriate, continue to make its own decisions in taking or not taking action under or based upon this Agreement, any other Loan Document or any related agreement or any document furnished hereunder or thereunder.

SECTION 8.08   Withholding Taxes.  To the extent required by applicable law, the Administrative Agent may withhold from any payment to any Lender an amount equivalent to any applicable withholding Tax.  Without limiting or expanding the provisions of Section 3.05, each Lender shall indemnify and hold harmless the Administrative Agent against, and shall make payable in respect thereof within 15 days after demand therefor, any and all Taxes and related losses, claims, liabilities and expenses (including fees, charges and disbursements of any counsel for the Administrative Agent) incurred

by or asserted against the Administrative Agent by the IRS or any other Governmental Authority as a result of the failure of the Administrative Agent to properly withhold Taxes from amounts paid to or for the account of such Lender for any reason (including because the appropriate form was not delivered or not properly executed, or because such Lender failed to notify the Administrative Agent of a change in circumstances that rendered the exemption from, or reduction of applicable withholding Taxes ineffective). A certificate as to the amount of such payment or liability delivered to any Lender by the Administrative Agent shall be conclusive absent manifest error.  Each Lender hereby authorizes the Administrative Agent to set off and apply any and all amounts owing to such Lender under the Loan Documents against any amount due to the Administrative Agent under this **Error! Reference source not found.**.  The agreements in this **Error! Reference source not found.** shall survive the resignation and/or replacement of the Administrative Agent, any assignment of rights by, or the replacement of, a Lender, and the repayment, satisfaction or discharge of all other Obligations.  This **Error! Reference source not found.** shall not impose any additional responsibility on the Borrower.

SECTION 8.09    Administrative Agent May File Proof of Claim.  In case of the pendency of any proceeding under any Debtor Relief Law or any other judicial proceeding relative to the Borrower, the Administrative Agent (irrespective of whether the principal of the Advances shall then be due and payable as herein expressed or by declaration or otherwise and irrespective of whether the Administrative Agent shall have made any demand on the Borrower) shall be entitled and empowered (but not obligated) by intervention in such proceeding or otherwise:

(a)    to file and prove a claim for the whole amount of the principal and interest owing and unpaid in respect of the Advances and all other Obligations that are owing and unpaid and to file such other documents as may be necessary or advisable in order to have the claims of the Lenders and the Administrative Agent (including any claim for the reasonable compensation, expenses, disbursements and advances of the Lenders and the Administrative Agent and their respective agents and counsel and all other amounts due the Lenders and the Administrative Agent under Section 10.02) allowed in such judicial proceeding; and

(b)    to collect and receive any monies or other property payable or deliverable on any such claims and to distribute the same;

and any custodian, receiver, assignee, trustee, liquidator, sequestrator or other similar official in any such judicial proceeding is hereby authorized by each Lender to make such payments to the Administrative Agent and, in the event that the Administrative Agent shall consent to the making of such payments directly to the Lenders, to pay to the Administrative Agent any amount due for the reasonable compensation, expenses, disbursements and advances of the Administrative Agent and its agents and counsel, and any other amounts due the Administrative Agent under Section 4.02.

SECTION 8.10    Collateral Matters.  The Administrative Agent shall not be responsible for or have a duty to ascertain or inquire into any representation or warranty regarding the existence, value or collectability of the Collateral, the existence, priority or perfection of the Administrative Agent's Lien thereon, or any certificate prepared by any Borrower Party in connection therewith, nor shall the

Administrative Agent be responsible or liable to the Lenders for any failure to monitor or maintain any portion of the Collateral.

## ARTICLE IX

## GUARANTY

SECTION 9.01        Guarantee of Obligations.  Each of the Guarantors hereby, jointly and severally, absolutely, unconditionally and irrevocably, guarantees, as primary obligor and not merely as surety, to the Administrative Agent, for the benefit of the Agent Parties and Lenders and their respective successors, indorsees, transferees and assigns, the prompt and complete payment in full in cash and performance by the Borrower and each other Loan Party when due (whether at the stated maturity, by acceleration or otherwise) of the Obligations.  Each of the Guarantors shall be liable under its guarantee set forth in this Section 3.01, without any limitation as to amount, for all present and future Obligations, including specifically all future increases in the outstanding amount of the Advances or other Obligations and other future increases in the Obligations.  Without limiting the generality of the foregoing, each Guarantor's liability shall extend to all Obligations (including, without limitation, interest, fees, costs and expenses) that would be owed by any other obligor on the Obligations but for the fact that they are unenforceable or not allowable due to the existence of a proceeding under any Debtor Relief Law involving such other obligor because it is the intention of each Guarantor and the Secured Parties that the Obligations which are guaranteed by such Guarantor pursuant hereto should be determined without regard to any rule of law or order which may relieve the Borrower or any other Loan Party or any Guarantor of any portion of such Obligations.

SECTION 9.02        Limitation on Obligations Guaranteed.

(a)        Notwithstanding any other provision hereof, the right of recovery against each Guarantor under this Article IX shall not exceed $1.00 less than the lowest amount which would render such Guarantor's obligations under this Article IX void or voidable under applicable law, including, without limitation, the Uniform Fraudulent Conveyance Act, Uniform Fraudulent Transfer Act or any similar foreign, federal or state law to the extent applicable to the guaranty set forth herein and the obligations of each Guarantor hereunder.  To effectuate the foregoing, the Administrative Agent and the Guarantors hereby irrevocably agree that the Obligations of each Guarantor in respect of the guarantee set forth in this Article IX at any time shall be limited to the maximum amount as will result in the Obligations of such Guarantor with respect thereto hereof not constituting a fraudulent transfer or conveyance after giving full effect to the liability under such guarantee set forth in this Article IX and its related contribution rights but before taking into account any liabilities under any other guarantee by such Guarantor.  For purposes of the foregoing, all guarantees of such Guarantor other than the guarantee under this Article IX will be deemed to be enforceable and payable after the guaranty under this Article IX.  To the fullest extent permitted by applicable law, this **Error! Reference source not found.** shall be for the benefit solely of creditors and representatives of creditors of each Guarantor and not for the benefit of such Guarantor or the holders of any Capital Stock in such Guarantor.

(b)        Each Guarantor agrees that Obligations may at any time and from time to time be incurred or permitted in an amount exceeding the maximum liability of such Guarantor under **Error! Reference source not found.** without impairing the guarantee contained in this Article IX or affecting the rights and remedies of any Agent Party or Lender hereunder.

SECTION 9.03   Nature of Guarantee; Continuing Guarantee; Waivers of Defenses Etc.

(a)   Each Guarantor understands and agrees that the guarantee contained in this Article IX shall be construed as a continuing guarantee of payment and performance and not merely of collectability.  Each Guarantor waives diligence, presentment, protest, marshaling, demand for payment, notice of dishonor, notice of default and notice of nonpayment to or upon the Borrower or any of the other Guarantors with respect to the Obligations.  Without limiting the generality of the foregoing, this guarantee and the obligations of each Guarantor hereunder shall be valid and enforceable and shall not be subject to any reduction, limitation, impairment, set-off, defense, counterclaim, discharge or termination for any reason unless and until all of the Commitments shall have expired or been terminated and all Obligations and all other amounts payable under this Agreement shall have been paid in full in Cash.

(b)   Each Guarantor agrees that the Obligations of each Guarantor hereunder are independent of the Obligations of each other Guarantor and of any other guarantee of the Obligations and when making any demand hereunder or otherwise pursuing its rights and remedies hereunder against any Guarantor, any Agent Party or Lender may, but shall be under no obligation to, make a similar demand on or otherwise pursue such rights and remedies as it may have against the Borrower, any other Guarantor or any other Person or against any collateral security or other guarantee for the Obligations or any right of offset with respect thereto, and any failure by any Agent Party or Lender to make any such demand, to pursue such other rights or remedies or to collect any payments from the Borrower, any other Guarantor or any other Person or to realize upon any such collateral security or guarantee or to exercise any such right of offset, or any release of the Borrower, any other Guarantor or any other Person or any such collateral security, guarantee or right of offset, shall not relieve any Guarantor of any obligation or liability hereunder, and shall not impair or affect the rights and remedies, whether express, implied or available as a matter of law, of any Agent Party or Lender against any Guarantor.  For the purposes hereof "demand" shall include the commencement and continuance of any legal proceedings.

(c)   No payment made by the Borrower, any of the Guarantors, any other guarantor or any other Person or received or collected by any Agent Party or Lender from the Borrower, any of the Guarantors, any other guarantor or any other Person by virtue of any action or proceeding or any set-off or appropriation or application at any time or from time to time in reduction of or in payment of the Obligations shall be deemed to modify, reduce, release or otherwise affect the liability of any Guarantor hereunder which shall, notwithstanding any such payment, remain liable for the Obligations unless and until all of the Commitments shall have expired or been terminated and all Obligations and all other amounts payable under this Agreement shall have been paid in full in Cash.

(d)   Without limiting the generality of the foregoing, each Guarantor agrees that its obligations under and in respect of the guarantee contained in this Article IX and any security interest securing the Obligations shall not be affected by, and shall remain in full force and effect without regard to, and hereby waives all rights, claims or defenses that it might otherwise have (now or in the future) with respect to each of the following (whether or not such Guarantor has knowledge thereof):

(i)   the validity or enforceability of this Agreement or any other Loan Document, any of the Obligations or any guarantee or right of offset with respect thereto at any time or from time to time held by any Agent Party or Lender;

(ii)   any renewal, extension or acceleration of, or any increase in the amount of the Obligations, or any amendment, supplement, modification or waiver of, or any consent to departure from, the Loan Documents;

80

(iii)    any failure or omission to assert or enforce or agreement or election not to assert or enforce, delay in enforcement, or the stay or enjoining, by order of court, by operation of law or otherwise, of the exercise or enforcement of, any claim or demand or any right, power or remedy (whether arising under any Loan Document, at law, in equity or otherwise) with respect to the Obligations or any agreement relating thereto, or with respect to any other guaranty of or security for the payment of the Obligations;

(iv)    any change, reorganization or termination of the corporate structure or existence of the Borrower or any Guarantor or any of their Subsidiaries and any corresponding restructuring of the Obligations;

(v)    any settlement, compromise, release, or discharge of, or acceptance or refusal of any offer of payment or performance with respect to, or any substitution for, the Obligations, or any subordination of the Obligations to any other obligations;

(vi)    the validity, perfection, non-perfection or lapse in perfection, priority or avoidance of any security interest or lien, the release of any or all collateral securing, or purporting to secure, the Obligations or any other impairment of such collateral;

(vii)    any exercise of remedies with respect to any security for the Obligations (including, without limitation, any collateral, including the Collateral securing or purporting to secure any of the Obligations) at such time and in such order and in such manner as the Administrative Agent and the Agent Parties and/or Lenders may decide and whether or not every aspect thereof is commercially reasonable and whether or not such action constitutes an election of remedies and even if such action operates to impair or extinguish any right of reimbursement or subrogation or other right or remedy that any Guarantor would otherwise have, and without limiting the generality of the foregoing or any other provisions hereof, each Guarantor hereby expressly waives any and all benefits which might otherwise be available to such Guarantor under applicable law; and

(viii)    any other circumstance whatsoever which may or might in any manner or to any extent vary the risk of any Guarantor as an obligor in respect of the Obligations or which constitutes, or might be construed to constitute, an equitable or legal discharge of the Borrower or any Guarantor for the Obligations, or of such Guarantor under the guarantee contained in this Article IX or of any security interest granted by any Guarantor, whether in a proceeding under any Debtor Relief Law or in any other instance.

(e)    In addition each Guarantor further waives any and all other defenses, set-offs or counterclaims (other than a defense of payment or performance in full hereunder) which may at any time be available to or be asserted by it, the Borrower, or any other Guarantor or Person against any Agent Party or Lender, including, without limitation, failure of consideration, breach of warranty, statute of frauds, statute of limitations, accord and satisfaction and usury, other than following a Repayment Event.

SECTION 9.04    <u>Rights of Reimbursement, Contribution and Subrogation</u>.

In case any payment is made on account of the Obligations by any Guarantor or is received or collected on account of the Obligations from any Guarantor or its property:

(a)    If such payment is made by a Guarantor or the Borrower or from its property in respect of the Obligations of another Guarantor, such Guarantor shall be entitled, subject to and upon (but not before) a Repayment Event, (A) to demand and enforce reimbursement for the full amount of such

payment from such other Guarantor and (B) to demand and enforce contribution in respect of such payment from each other Guarantor which has not paid its fair share of such payment, as necessary to ensure that (after giving effect to any enforcement of reimbursement rights provided hereby) each Guarantor pays its fair share of the unreimbursed portion of such payment. For this purpose, the fair share of each Guarantor as to any unreimbursed payment shall be determined based on an equitable apportionment of such unreimbursed payment among all Guarantors (other than the Guarantor whose primary obligations were so guaranteed by the other Guarantors) based on the relative value of their assets and any other equitable considerations deemed appropriate by the court. For purposes of the foregoing, all guarantees of such Guarantor other than the guaranty under this Article IX will be deemed to be enforceable and payable after the guaranty under this Article IX.

(b)     Any right of subrogation of any Guarantor or the Borrower shall be enforceable solely after a Repayment Event and solely against the Guarantors or the Borrower, and not against the Agent Parties and/or Lenders, and neither the Administrative Agent nor any other Agent Party or Lender shall have any duty whatsoever to warrant, ensure or protect any such right of subrogation or to obtain, perfect, maintain, hold, enforce or retain any collateral securing or purporting to secure any of the Obligations for any purpose related to any such right of subrogation. If subrogation is demanded by any Guarantor, then, after a Repayment Event, the Administrative Agent shall deliver to the Guarantors making such demand, or to a representative of such Guarantors or of the Guarantors generally, an instrument satisfactory to the Administrative Agent transferring, on a quitclaim basis without any recourse, representation, warranty or any other obligation whatsoever, whatever security interest the Administrative Agent then may hold in whatever collateral securing or purporting to secure any of the Obligations that may then exist that was not previously released or disposed of or acquired by the Administrative Agent.

(c)     All rights and claims arising under this Section 9.04 or based upon or relating to any other right of reimbursement, indemnification, contribution or subrogation that may at any time arise or exist in favor of any Guarantor or the Borrower as to any payment on account of either (x) the Obligations or (y) any other obligation that is secured by any collateral that also secures or purports to secure any of the Obligations, in each case made by it or received or collected from its property, shall be fully subordinated to the Obligations in all respects prior to a Repayment Event. Until a Repayment Event, no Guarantor may demand or receive any collateral security, payment or distribution whatsoever (whether in cash, property or securities or otherwise) on account of any such right or claim. If any such payment or distribution is made or becomes available to any Guarantor in any bankruptcy case, receivership, or any proceeding under any Debtor Relief Laws, such payment or distribution shall be delivered by the person making such payment or distribution directly to the Administrative Agent, for application to the payment of the Obligations. If any such payment or distribution is received by any Guarantor, it shall be held by such Guarantor in trust, as trustee of an express trust for the benefit of the Agent Parties and Lenders, and shall forthwith be transferred and delivered by such Guarantor to the Administrative Agent, in the exact form received and, if necessary, duly endorsed.

(d)     The obligations of the Guarantors under this Agreement and the other Loan Documents, including their liability for the Obligations and the enforceability of the security interests granted thereby, are not contingent upon the validity, legality, enforceability, collectability or sufficiency of any right of reimbursement, contribution or subrogation arising under this Section 9.04 or otherwise. The invalidity, insufficiency, unenforceability or uncollectability of any such right shall not in any respect diminish, affect or impair any such obligation or any other claim, interest, right or remedy at any time held by any Agent Party or Lender against any Guarantor or its property. The Agent Parties and Lenders make no representations or warranties in respect of any such right and shall have no duty to assure, protect, enforce or ensure any such right or otherwise relating to any such right.

SECTION 9.05    Payments.    Each Guarantor hereby guarantees that payments hereunder will be paid to the Administrative Agent without set-off or counterclaim in Dollars in immediately available funds at the Administrative Agent's office.

SECTION 9.06    Bankruptcy, Etc. The obligations of the Guarantors hereunder shall not be reduced, limited, impaired, discharged, deferred, suspended or terminated by any case or proceeding under any Debtor Relief Law, voluntary or involuntary, involving the Borrower or any Guarantor or by any defense which the Borrower or any Guarantor may have by reason of the order, decree or decision of any court or administrative body resulting from any such proceeding.  To the fullest extent permitted by law, the Guarantors will permit any trustee in bankruptcy, receiver, debtor in possession, assignee for the benefit of creditors or similar person to pay the Administrative Agent, or allow the claim of the Administrative Agent in respect of, any interest, fees, costs, expenses or other Obligations accruing or arising after the date on which such case or proceeding is commenced.

SECTION 9.07    Duration of Guaranty.  The guarantee contained in this Article IX shall remain in full force and effect until a Repayment Event.

SECTION 9.08    Reinstatement.  If at any time payment of any of the Obligations or any portion thereof is rescinded, disgorged or must otherwise be restored or returned by any Agent Party or Lender upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of the Borrower or any Guarantor, or upon or as a result of the appointment of a receiver, intervenor or conservator of, or trustee or similar officer for, the Borrower or any Guarantor or any substantial part of its property, or otherwise, or if any Agent Party or Lender repays, restores, or returns, in whole or in part, any payment or property previously paid or transferred to such Agent Party or Lender in full or partial satisfaction of any Obligation, because the payment or transfer or the incurrence of the obligation is so satisfied, or is declared to be void, voidable, or otherwise recoverable under any state or federal law (collectively a "*Voidable Transfer*"), or because such Agent Party or Lender elects to do so on the reasonable advice of its counsel in connection with an assertion that the payment, transfer or incurrence is a Voidable Transfer, then, as to any such Voidable Transfer and as to all reasonable costs, expenses and attorney's fees of such Agent Party or Lender related thereto, the liability of each Guarantor hereunder will automatically and immediately be revived, reinstated, and restored and will exist as though the Voidable Transfer had never been made.

## ARTICLE X

## MISCELLANEOUS

SECTION 10.01    Notices.

(a)    Notices Generally.  Except in the case of notices and other communications expressly permitted to be given by telephone (and except as provided in paragraph (b) below), all notices and other communications provided for herein shall be in writing and shall be faxed or delivered by an internationally recognized courier service to the applicable address, facsimile number or electronic mail address delivered as follows:

(i)    if to the Borrower, to it at Limetree Bay Refining, LLC, 1 Estate Hope, Christiansted, St. Croix VI 00820-5652, Attention:  Stephan Tompsett, Email: stompsett@lbenergy.com with a copy to 1 Estate Hope Christiansted, St. Croix VI 00820-5652, Attention:  Mark Chavez, Email:  mchavez@lbenergy.com  with a copy to 1 Estate Hope Christiansted, St. Croix VI 00820-5652, Attention:  Jim Vanderwel, Tel No. (832) 553-1190, Email:  jvanderwel@lbenergy.com;

83

(ii)      if to the Administrative Agent, to it as its address (or facsimile number) set forth in Schedule 10.01(a);

(iii)     if to a Lender, to it at its address (or facsimile number) set forth in its Administrative Questionnaire.

Notices sent by hand or internationally recognized courier service shall be deemed to have been given when received; notices sent by facsimile shall be deemed to have been given when sent (except that, if not given during normal business hours for the recipient, shall be deemed to have been given at the opening of business on the next Business Day for the recipient).  Notices delivered through electronic communications, to the extent provided in paragraph (b) below, shall be effective as provided in said paragraph (b).

(b)      Electronic Communications.  Notices and other communications to the Lenders hereunder may be delivered or furnished by electronic communication (including e mail and Internet or intranet websites) pursuant to procedures approved by the Administrative Agent, *provided* that the foregoing shall not apply to notices to any Lender pursuant to Article II if such Lender has notified the Administrative Agent that it is incapable of receiving notices under such Article by electronic communication.  The Administrative Agent or any Borrower Party may, in its discretion, agree to accept notices and other communications to it hereunder by electronic communications pursuant to procedures approved by it; *provided* that approval of such procedures may be limited to particular notices or communications.

Unless the Administrative Agent otherwise prescribes, (i) notices and other communications sent to an e-mail address shall be deemed received upon the sender's receipt of an acknowledgment from the intended recipient (such as by the "return receipt requested" function, as available, return e-mail or other written acknowledgment), and (ii) notices or communications posted to an Internet or intranet website shall be deemed received upon the deemed receipt by the intended recipient, at its e-mail address as described in the foregoing clause (i), of notification that such notice or communication is available and identifying the website address therefor; *provided* that, for both clauses (i) and (ii) above, if such notice, email or other communication is not sent during the normal business hours of the recipient, such notice or communication shall be deemed to have been sent at the opening of business on the next Business Day for the recipient.

(c)      Change of Address, etc.  Any party hereto may change its address or facsimile number for notices and other communications hereunder by notice to the other parties hereto.

(d)      Platform.

(i)      The Borrower agrees that the Administrative Agent may, but shall not be obligated to, make the Communications (as defined below) available to the Lenders by posting the Communications on Debt Domain, Intralinks, Syndtrak or a substantially similar electronic transmission system (the "***Platform***").

(ii)      The Platform is provided "as is" and "as available." The Agent Parties (as defined below) do not warrant the adequacy of the Platform and expressly disclaim liability for errors or omissions in the Communications.  No warranty of any kind, express, implied or statutory, including any warranty of merchantability, fitness for a particular purpose, non-infringement of third-party rights or freedom from viruses or other code defects, is made by any Agent Party in connection with the Communications or the Platform.  In no event shall the Administrative Agent or any of its Related Parties (collectively, the "***Agent Parties***") have any liability to the Borrower,

84

any Lender or any other Person or entity for damages of any kind, including direct or indirect, special, incidental or consequential damages, losses or expenses (whether in tort, contract or otherwise) arising out of the Borrower's, or the Administrative Agent's transmission of communications through the Platform. "*Communications*" means, collectively, any notice, demand, communication, information, document or other material provided by or on behalf of the Borrower pursuant to any Loan Document or the transactions contemplated therein which is distributed to the Administrative Agent or any Lender by means of electronic communications pursuant to this Section 10.01, including through the Platform.

SECTION 10.02     Expenses, Indemnity; Damage Waiver.

(a)     Costs and Expenses.  The Borrower shall pay (i) all reasonable and documented out-of-pocket expenses incurred by the Administrative Agent and its Affiliates (limited in the case of legal fees to the reasonable and documented out-of-pocket fees, charges and disbursements of one financing counsel for the Administrative Agent plus one local counsel in the U.S. Virgin Islands), in connection with the preparation, negotiation, execution, delivery and administration (including, without limitation, monitoring the Collateral and due diligence on the Borrower Parties and their assets) of this Agreement and the other Loan Documents, or any amendments, modifications or waivers of the provisions hereof or thereof, (ii) all reasonable and documented out-of-pocket expenses incurred by the Administrative Agent or any Lender (including the reasonable and documented out-of-pocket legal expenses of one firm of counsel for the Administrative Agent and one firm of counsel for the Lenders collectively, plus (if applicable) one local counsel in the U.S. Virgin Islands for all such persons and, in the case of a conflict of interest between such persons, one additional counsel in each relevant jurisdiction to each group of such affected persons similarly situated taken as a whole), in connection with the enforcement or protection of its rights in connection with this Agreement and the other Loan Documents, including its rights under this Section 10.02.

(b)     Indemnification by the Borrower Parties.  The Borrower Parties shall indemnify the Administrative Agent (and any sub-agent thereof), each Lender, and each Related Party of any of the foregoing Persons (each such Person being called an "*Indemnitee*") against, and hold each Indemnitee harmless from, any and all losses, claims, damages, liabilities and related reasonable and documented costs, expenses (including the reasonable and documented fees, charges and disbursements of any one firm of counsel for the Administrative Agent and one firm of counsel for the Lenders collectively, (if applicable) one local counsel in each appropriate jurisdiction for all such persons and, in the case of a conflict of interest between such persons, one additional counsel in each relevant jurisdiction to each group of such affected persons similarly situated taken as a whole), incurred by any Indemnitee or asserted against any Indemnitee by any Person (including the Borrower), other than by such Indemnitee and its Related Parties arising out of, in connection with, or as a result of (i) the execution or delivery of this Agreement, any other Loan Document or any agreement or instrument contemplated hereby or thereby, the performance by the parties hereto of their respective obligations hereunder or thereunder or the consummation of the transactions contemplated hereby or thereby, (ii) the Advances or the use or proposed use of the proceeds therefrom, (iii) any actual or alleged presence or Release of Hazardous Materials with respect to the Refinery or otherwise on or from any Real Estate Asset, any actual or alleged Hazardous Materials Activity related in any way to the Refinery or the Borrower Parties or any of their respective Subsidiaries or any actual or alleged violation of Environmental Law or Environmental Action related in any way to the Refinery or the Borrower Parties or any of their respective Subsidiaries  (except to the extent caused, contributed to or exacerbated by any Indemnitee), or (iv) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory, whether brought by a third party or by the Borrower Parties, and regardless of whether any Indemnitee is a party thereto; *provided* that such indemnity shall not, as to any Indemnitee, be available to the extent that such

85

losses, claims, damages, liabilities or related expenses (x) are determined by a court of competent jurisdiction by final and non-appealable judgment to have resulted from the bad faith, gross negligence or willful misconduct of such Indemnitee or (y) result from a claim brought by the Borrower Parties against an Indemnitee for a material breach in bad faith of such Indemnitee's obligations hereunder or under any other Loan Document, if the Borrower Parties have obtained a final and non-appealable judgment in its favor on such claim as determined by a court of competent jurisdiction.  This Section 10.02 shall not apply with respect to Taxes other than any Taxes that represent losses, claims or damages arising from any non-Tax claim.

(c)      Reimbursement by Lenders.  To the extent that any of the Borrower Parties for any reason fails to indefeasibly pay any amount required under paragraph (a) or (b) of this Section to be paid by it to the Administrative Agent (or any sub-agent thereof) or any Related Party of any of the foregoing, each Lender severally agrees to pay to the Administrative Agent (or any such sub-agent) or such Related Party, as the case may be, such Lender's pro rata share (determined as of the time that the applicable unreimbursed expense or indemnity payment is sought based on each Lender's share of the Total Credit Exposure at such time) of such unpaid amount (including any such unpaid amount in respect of a claim asserted by such Lender); *provided* that the unreimbursed expense or indemnified loss, claim, damage, liability or related expense, as the case may be, was incurred by or asserted against the Administrative Agent (or any such sub-agent) or against any Related Party of any of the foregoing acting for the Administrative Agent (or any such sub-agent).  .

(d)      Waiver of Consequential Damages, Etc.  To the fullest extent permitted by applicable law, the Borrower Parties shall not assert, and hereby waives, any claim against any Indemnitee, on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or as a result of, this Agreement, any other Loan Document or any agreement or instrument contemplated hereby, the transactions contemplated hereby or thereby, the Advances, or the use of the proceeds thereof.  No Indemnitee referred to in paragraph (b) above shall be liable for any damages arising from the use by unintended recipients of any information or other materials distributed by it through telecommunications, electronic or other information transmission systems in connection with this Agreement or the other Loan Documents or the transactions contemplated hereby or thereby.

(e)      Payments.  All amounts due under this Section 4.02 shall be payable promptly, but in any event, not later than 10 days after demand therefor.

(f)      Survival.  Each party's obligations under this Section 4.02 shall survive the termination of the Loan Documents and payment of the obligations hereunder.

SECTION 10.03      Set-Off.  If an Event of Default shall have occurred and be continuing, each Lender and each of their respective Affiliates is hereby authorized at any time and from time to time, to the fullest extent permitted by applicable law, to set off and apply any and all deposits (general or special, time or demand, provisional or final, in whatever currency) at any time held, and other obligations (in whatever currency) at any time owing, by such Lender or any such Affiliate, to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement or any other Loan Document to such Lender or their respective Affiliates, irrespective of whether or not such Lender or Affiliate shall have made any demand under this Agreement or any other Loan Document and although such obligations of the Borrower may be contingent or unmatured or are owed to a branch, office or Affiliate of such Lender different from the branch, office or Affiliate holding such deposit or obligated on such indebtedness; *provided* that in the event that any Defaulting Lender shall exercise any such right of setoff, (x) all amounts so set off shall be paid over immediately to the

Administrative Agent for further application in accordance with the provisions of <u>Section 3.9</u> and, pending such payment, shall be segregated by such Defaulting Lender from its other funds and deemed held in trust for the benefit of the Administrative Agent and the Lenders, and (y) the Defaulting Lender shall provide promptly to the Administrative Agent a statement describing in reasonable detail the Obligations owing to such Defaulting Lender as to which it exercised such right of setoff. The rights of each Lender and their respective Affiliates under this Section are in addition to other rights and remedies (including other rights of setoff) that such Lender or their respective Affiliates may have. Each Lender agrees to notify the Borrower and the Administrative Agent promptly after any such setoff and application; *provided* that the failure to give such notice shall not affect the validity of such setoff and application.

SECTION 10.04    <u>Amendments and Waivers</u>.

(a)    <u>Required Lenders' Consent</u>. Subject to the terms of <u>Section 2.04(b)(ix)</u> and <u>Section 10.04(c)</u>, no amendment, modification, termination or waiver of any provision of the Loan Documents, or consent to any departure by any Loan Party therefrom, shall in any event be effective without the written concurrence of the Required Lenders.

(b)    <u>Affected Lenders Consent</u>. Without the written consent of each Lender (other than, in the case of (ix) below, a Defaulting Lender) that would be directly affected thereby, no amendment, modification, termination, or consent shall be effective if the effect thereof would:

(i)    extend the scheduled final maturity of the Advances or Note;

(ii)    waive, reduce or postpone any scheduled mandatory repayment pursuant to <u>Section 2.03</u> (but not prepayment);

(iii)    reduce the rate of interest on the Advances or any fee or any premium payable to such Lender hereunder (other than, in each case, any waiver of any increase in the interest rate applicable to the Advances pursuant to <u>Section 3.01</u> or any other amount hereunder);

(iv)    extend the time for payment of any such interest or fees to such Lender;

(v)    increase or extend the Commitment of any Lender under this Agreement;

(vi)    amend, modify, terminate or waive any provision in any Loan Document relating to the priority of payments;

(vii)    amend, modify, terminate or waive any provision of this <u>Section 10.04(b)</u>, <u>Section 10.04(c)</u> or any other provision of this Agreement that expressly provides that the consent of all Lenders is required;

(viii)    amend the definition of "*Required Lenders*" or "*Pro Rata Share*"; *provided* that, with the consent of the Required Lenders, additional extensions of credit pursuant hereto may be included in the definition of "*Required Lenders*" or "*Pro Rata Share*";

(ix)    consent to the assignment or transfer by any Loan Party of any of its rights and obligations under any Loan Document;

(x)    waive any of the conditions specified in Section 4.01 or 4.02 without the consent of each Lender;

(xi)    amend <u>Section 2.04</u> or <u>Section 7.02</u> in any manner that would alter the sharing of payments thereunder;

87

(xii)    amend, modify or waive any provision of this Agreement in a manner that would directly and adversely affect the rights and obligations of the Lenders disproportionately to any other class of Lenders without the consent of the Lenders of the adversely affected class.

(c)    Other Consents.  No amendment, modification, termination or waiver of any provision of the Loan Documents, or consent to any departure by any Loan Party therefrom, shall:

(i)    release any material portion of the Collateral except as expressly provided in the Loan Documents (including Section 6.02(e) and Section 2.10(b));

(ii)    without the consent of the Required Lenders and the consent of Lenders holding a majority of the Commitments or the Advances outstanding, (A) change the order of application of any reduction in the Commitments or prepayment of the Advances among the DIP Facility from the application thereof set forth in the applicable provisions of Section 2.04 of this Agreement, in any manner that disproportionately affects any of the Lenders differently from the other Lenders or other Secured Parties or (B) otherwise disproportionately affect the obligation of the Borrower to make any payment of the Advances to the Lenders from other Secured Parties; or

(iii)    amend, modify, terminate or waive any provision of Article II as the same applies to any Agent, or any other provision hereof of any Loan Document as the same applies to the rights, powers, privileges or obligations of any such Agent, in each case without the consent of such Agent;

(iv)    subordinate the DIP Liens of the Lenders with the consent of each of the Lenders

(d)    Amendments to Cure Ambiguities, Defects, etc.  Notwithstanding the other provisions of this Section 10.04, the Borrower, the Collateral Agent (at the direction of the Administrative Agent) and the Administrative Agent may (but shall have no obligation to) amend or supplement the Loan Documents without the consent of any Lender:  (i) to cure any ambiguity, defect or inconsistency, (ii) to make any change that would provide any additional rights or benefits to the Lenders or the Secured Parties, or (iii) to make, complete or confirm any grant of Collateral permitted or required by this Agreement or any of the Security Documents or any release of any Collateral that is otherwise permitted under the terms of this Agreement and the Security Documents.

(e)    Execution of Amendments, etc.  The Administrative Agent may, but shall have no obligation to, with the concurrence of any Lender, execute amendments, modifications, waivers or consents on behalf of such Lender.  Any waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given.  No notice to or demand on any Loan Party in any case shall entitle any Loan Party to any other or further notice or demand in similar or other circumstances.  Any amendment, modification, termination, waiver or consent effected in accordance with this Section 10.04 shall be binding upon each Lender at the time outstanding, each future Lender and, if signed by a Loan Party, on such Loan Party.

SECTION 10.05    Successors and Assigns; Participations.

(a)    Successors and Assigns Generally.  The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns permitted hereby, except that the Borrower may not assign or otherwise transfer any of its rights or obligations hereunder without the prior written consent of the Administrative Agent and each Lender, and no Lender may assign or otherwise transfer any of its rights or obligations hereunder except (i) to an

assignee in accordance with the provisions of paragraph (b) of this Section, (ii) by way of participation in accordance with the provisions of paragraph (d) of this Section, or (iii) by way of pledge or assignment of a security interest subject to the restrictions of paragraph **Error! Reference source not found.** of this Section (and any other attempted assignment or transfer by any party hereto shall be null and void).  Nothing in this Agreement, expressed or implied, shall be construed to confer upon any Person (other than the parties hereto, their respective successors and assigns permitted hereby, Participants to the extent provided in paragraph (d) of this Section and, to the extent expressly contemplated hereby, the Related Parties of each of the Administrative Agent and the Lenders) any legal or equitable right, remedy or claim under or by reason of this Agreement.

(b)     Assignments by Lenders.  Any Lender may at any time assign to one or more assignees all or a portion of its rights and obligations under this Agreement (including all or a portion of the Advances at the time owing to it); *provided* that any such assignment shall be subject to the following conditions:

(i)     Minimum Amounts.

(A)     in the case of an assignment of the entire remaining amount of the assigning Lender's Commitment and/or the Advances at the time owing to it or contemporaneous assignments to related Approved Funds that equal at least the amount specified in paragraph (b)(i)(B) of this Section in the aggregate or in the case of an assignment to a Lender, an Affiliate of a Lender or an Approved Fund, no minimum amount need be assigned; and

(B)     in any case not described in paragraph (b)(i)(A) of this Section, the aggregate amount of the Commitment (which for this purpose includes the Advances outstanding thereunder) or, if the applicable Commitment is not then in effect, the principal outstanding balance of the Advances of the assigning Lender subject to each such assignment (determined as of the date the Assignment and Assumption with respect to such assignment is delivered to the Administrative Agent or, if "Trade Date" is specified in the Assignment and Assumption, as of the Trade Date) shall not be less than $1,000,000, in the case of any assignment in respect of the DIP Facility, unless each of the Administrative Agent otherwise consents (such consent not to be unreasonably withheld, conditioned or delayed).

(ii)     Proportionate Amounts.  Each partial assignment shall be made as an assignment of a proportionate part of all the assigning Lender's rights and obligations under this Agreement with respect to the Advances or the Commitment assigned.

(iii)     Required Consents.  No consent shall be required for any assignment except to the extent required by paragraph (b)(i)(B) of this Section.

(iv)     Assignment and Assumption.  The parties to each assignment shall execute and deliver to the Administrative Agent an Assignment and Assumption, together with a processing and recordation fee of $3,500 paid by the assigning Lender (or the assignee); *provided* that the Administrative Agent may, in its sole discretion, elect to waive such processing and recordation fee in the case of any assignment; *provided*, *further*, that only one such fee shall be payable in the event of simultaneous assignments to or from two or more Approved Funds.  The assignee, if it is not a Lender, shall deliver to the Administrative Agent an Administrative Questionnaire.

(v)       No Assignment to Certain Persons.  Notwithstanding anything to the contrary herein, no Lender may assign or transfer (including by participation) any of its Advances or any of rights or obligations hereunder or under the Loan Documents to any natural Person, any Defaulting Lender or any of its Subsidiaries, or any Affiliate of the Borrower Parties.

(vi)      Certain Additional Payments. In connection with any assignment of rights and obligations of any Defaulting Lender hereunder, no such assignment shall be effective unless and until, in addition to the other conditions thereto set forth herein, the parties to the assignment shall make such additional payments to the Administrative Agent in an aggregate amount sufficient, upon distribution thereof as appropriate (which may be outright payment, purchases by the assignee of participations or subparticipations, or other compensating actions, including funding, with the consent of the Borrower and the Administrative Agent, the applicable Pro Rata Share of the Advances previously requested but not funded by the Defaulting Lender, to each of which the applicable assignee and assignor hereby irrevocably consent), and to pay and satisfy in full all payment liabilities then owed by such Defaulting Lender to the Administrative Agent and each other Lender hereunder (and interest accrued thereon). Notwithstanding the foregoing, in the event that any assignment of rights and obligations of any Defaulting Lender hereunder shall become effective under applicable law without compliance with the provisions of this paragraph, then the assignee of such interest shall be deemed to be a Defaulting Lender for all purposes of this Agreement until such compliance occurs.

Subject to acceptance and recording thereof (including with respect to principal and interest) by the Administrative Agent pursuant to paragraph (c) of this Section, from and after the effective date specified in each Assignment and Assumption, the assignee thereunder shall be a party to this Agreement and, to the extent of the interest assigned by such Assignment and Assumption, have the rights and obligations of a Lender under this Agreement, and the assigning Lender thereunder shall, to the extent of the interest assigned by such Assignment and Assumption, be released from its obligations under this Agreement (and, in the case of an Assignment and Assumption covering all of the assigning Lender's rights and obligations under this Agreement, such Lender shall cease to be a party hereto) but shall continue to be entitled to the benefits of Section 3.04 and 4.02 with respect to facts and circumstances occurring prior to the effective date of such assignment; provided, that except to the extent otherwise expressly agreed by the affected parties, no assignment by a Defaulting Lender will constitute a waiver or release of any claim of any party hereunder arising from that Lender's having been a Defaulting Lender. Any assignment or transfer by a Lender of rights or obligations under this Agreement that does not comply with this paragraph shall be treated for purposes of this Agreement as a sale by such Lender of a participation in such rights and obligations in accordance with paragraph (d) of this Section.

(c)       Register.  The Administrative Agent, acting solely for this purpose as a non-fiduciary agent of the Borrower, shall maintain at one of its offices a copy of each Assignment and Assumption delivered to it and a register for the recordation of the names and addresses of the Lenders, and the Commitments of and principal amounts (and stated interest) of the Advances owing to, each Lender pursuant to the terms hereof from time to time and the amount of any interest owing from time to time (the "*Register*").  The entries in the Register shall be conclusive absent manifest error, and the Borrower, the Administrative Agent and the Lenders shall treat each Person whose name is recorded in the Register pursuant to the terms hereof as a Lender hereunder for all purposes of this Agreement.  The Register shall be available for inspection by the Borrower and any Lender, at any reasonable time and from time to time upon reasonable prior notice.  The Register in intended to comply with Treas.  Reg. Sections 5(f).103-1(c) and 1.871-14(c) and any obligation or Note issued under this Agreement is intended to be in "registered form" pursuant to such Treasury Regulations.

(d)     Participations.  Any Lender may at any time, without the consent of, or notice to, the Borrower or the Administrative Agent, sell participations to any Person (other than a natural Person, the Borrower or any of the Borrower's Affiliates or Subsidiaries) (each, a "*Participant*") in all or a portion of such Lender's rights and/or obligations under this Agreement (including all or a portion of its Commitment and/or the Advances owing to it); *provided* that (i) such Lender's obligations under this Agreement shall remain unchanged, (ii) such Lender shall remain solely responsible to the other parties hereto for the performance of such obligations, (iii) no Lender shall sell any participation that, when taken together with all other participations, if any, sold by such Lender, covers all of such Lender's rights and obligations under this Agreement, (iv) such Lender has caused its Participants to agree in writing to be bound by the provisions of Section 10.15 as of such Participant was a party hereto as a Lender and (v) the Borrower, the Administrative Agent and Lenders shall continue to deal solely and directly with such Lender in connection with such Lender's rights and obligations under this Agreement.  For the avoidance of doubt, (x) each Lender shall be responsible for the indemnity under Section 3.05(d) with respect to any payments made by such Lender to its Participant(s) and (y) no Participant shall have any rights under this Agreement or any of the other Loan Documents except as expressly set forth herein and each Participant's rights against the granting Lender in respect of any participation shall be limited to those set forth in the participation agreement (which shall not be in contravention of this Agreement).

Any agreement or instrument pursuant to which a Lender sells such a participation shall provide that such Lender shall retain the sole right to enforce this Agreement and to approve any amendment, modification or waiver of any provision of this Agreement.  Notwithstanding anything to the contrary herein, no Lender shall permit any Participant to have any voting rights or any right to control the vote of such Lender with respect to any amendment, modification, waiver, consent or other action hereunder or under any other Loan Document (except as to actions that would (1) reduce or forgive the principal amount of the Advances of such Lender, reduce the rate of or forgive any interest or premium thereon, or reduce or forgive any fees or other Obligations owed to such Lender or (2) extend the Maturity Date, with respect to such Lender's Advances).  The Borrower agrees that each Participant shall be entitled to the benefits of Section 3.04, **Error! Reference source not found.** and 3.06 (subject to the requirements and limitations therein, as well as the requirements under Section 3.05(f) (it being understood that the documentation required under Section 3.05(f) shall be delivered to the participating Lender)) to the same extent as if it were a Lender and had acquired its interest by assignment pursuant to paragraph (b) of this Section; *provided* that such Participant shall not be entitled to receive any greater payment under Section 3.03 or 3.05, with respect to any participation, than its participating Lender would have been entitled to receive.  Each Lender that sells a participation agrees, at the Borrower's request and expense, to use reasonable efforts to cooperate with the Borrower to effectuate the provisions of 0 with respect to any Participant.  To the extent permitted by law, each Participant also shall be entitled to the benefits of Section 10.03 as though it were a Lender; *provided* that such Participant agrees to be subject to Section 3.06 and Section 10.15 as though it were a Lender.  Each Lender that sells a participation shall, acting solely for this purpose as a non-fiduciary agent of the Borrower, maintain a register on which it enters the name and address of each Participant and the principal amounts (and stated interest) of each Participant's interest in the Advances or other obligations under the Loan Documents and the amount of any interest owing from time to time (the "*Participant Register*"); *provided* that no Lender shall have any obligation to disclose all or any portion of the Participant Register (including the identity of any Participant or any information relating to a Participant's interest in any Commitments, the Advances or its other obligations under any Loan Document) to any Person except to the extent that such disclosure is necessary to establish that such Commitment, Advance or other obligation is in registered form for U.S. Virgin Islands tax purposes.  The entries in the Participant Register shall be conclusive absent manifest error, and such Lender shall treat each Person whose name is recorded in the Participant Register as the owner of such participation for all purposes of this Agreement notwithstanding any notice to the contrary.  For the avoidance of doubt, the

Administrative Agent (in its capacity as Administrative Agent) shall have no responsibility for maintaining a Participant Register. The Participant Register in intended to comply with Treas. Reg. Sections 5(f).103-1(c) and 1.871-14(c) and any participation or Note under this Agreement is intended to be in "registered form" pursuant to such Treasury Regulations.

(e)        Certain Pledges.  Any Lender may at any time pledge or assign a security interest in all or any portion of its rights under this Agreement to secure obligations of such Lender, including any pledge or assignment to secure obligations to a Federal Reserve Bank or any other central bank having jurisdiction over such Lender; *provided* that no such pledge or assignment shall release such Lender from any of its obligations hereunder or substitute any such pledgee or assignee for such Lender as a party hereto.

SECTION 10.06        Independence of Covenants.  All covenants hereunder shall be given independent effect so that if a particular action or condition is not permitted by any of such covenants, the fact that it would be permitted by an exception to, or would otherwise be within the limitations of, another covenant shall not avoid the occurrence of a Default or an Event of Default if such action is taken or condition exists.

SECTION 10.07        Survival of Representations, Warranties and Agreements.        All representations, warranties and agreements made herein shall survive the execution and delivery hereof and the making of the Advances.  Notwithstanding anything herein or implied by law to the contrary, the agreements of each Loan Party set forth in Section 3.04, Section 3.06, Section 10.02 and Section 10.04 and the agreements of Lenders set forth in Section 3.05(d), 8.03, and 10.02(c) shall survive the payment of the Advances and the reimbursement of any amounts drawn thereunder, and the termination hereof.

SECTION 10.08        No Waiver; Remedies Cumulative.  No failure or delay on the part of any Agent or any Lender in the exercise of any power, right or privilege hereunder or under any other Loan Document shall impair such power, right or privilege or be construed to be a waiver of any default or acquiescence therein, nor shall any single or partial exercise of any such power, right or privilege preclude other or further exercise thereof or of any other power, right or privilege.  The rights, powers and remedies given to each Agent and each Lender hereby are cumulative and shall be in addition to and independent of all rights, powers and remedies existing by virtue of any statute or rule of law or in any of the other Loan Documents.  Any forbearance or failure to exercise, and any delay in exercising, any right, power or remedy hereunder shall not impair any such right, power or remedy or be construed to be a waiver thereof, nor shall it preclude the further exercise of any such right, power or remedy.

SECTION 10.09        Marshaling; Payments Set Aside.  Neither any Agent nor any Lender shall be under any obligation to marshal any assets in favor of the Borrower or any other Person or against or in payment of any or all of the Obligations.  To the extent that the Borrower makes a payment or payments to the Administrative Agent or the Lenders (or to the Administrative Agent, on behalf of the Lenders), or any Agent or Lender enforces any security interests or exercise its rights of setoff, and such payment or payments or the proceeds of such enforcement or setoff or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy law, any other state or federal law, common law or any equitable cause, then, to the extent of such recovery, the obligation or part thereof originally intended to be satisfied, and all Liens, rights and remedies therefor or related thereto, shall be revived and continued in full force and effect as if such payment or payments had not been made or such enforcement or setoff had not occurred.

SECTION 10.10        Severability.  In case any provision in or obligation hereunder or under any other Loan Document shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality

and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

SECTION 10.11    Obligations Several; Independent Nature of Lenders' Rights.    The obligations of the Lenders hereunder are several and no Lender shall be responsible for the obligations or Commitment of any other Lender hereunder.  Nothing contained herein or in any other Loan Document, and no action taken by the Lenders pursuant hereto or thereto, shall be deemed to constitute the Lenders as a partnership, an association, a Joint Venture or any other kind of entity.  The amounts payable at any time hereunder to each Lender shall be a separate and independent debt, and each Lender shall be entitled to protect and enforce its rights arising out hereof and it shall not be necessary for any other Lender to be joined as an additional party in any proceeding for such purpose.

SECTION 10.12    Headings.    Section headings herein are included herein for convenience of reference only and shall not constitute a part hereof for any other purpose or be given any substantive effect.

SECTION 10.13    Governing Law; Jurisdiction, Etc.

(a)    Governing Law.    This Agreement and the other Loan Documents and any claims, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Agreement or any other Loan Document (except, as to any other Loan Document, as expressly set forth therein) and the transactions contemplated hereby and thereby shall be governed by, and construed in accordance with, the law of the State of New York.

(b)    Jurisdiction.    Each Loan Party irrevocably and unconditionally agrees that it will not commence any action, litigation or proceeding of any kind or description, whether in law or equity, whether in contract or in tort or otherwise, against the Administrative Agent, any Lender or any Related Party of the foregoing in any way relating to this Agreement or any other Loan Document or the transactions relating hereto or thereto, in any forum other than the courts of the State of New York sitting in New York County, and of the United States District Court of the Southern District of New York, and any appellate court from any thereof, and each of the parties hereto irrevocably and unconditionally submits to the jurisdiction of such courts and agrees that all claims in respect of any such action, litigation or proceeding may be heard and determined in such New York State court or, to the fullest extent permitted by applicable law, in such federal court.  Each of the parties hereto agrees that a final judgment in any such action, litigation or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  Nothing in this Agreement or in any other Loan Document shall affect any right that the Administrative Agent or any Lender may otherwise have to bring any action or proceeding relating to this Agreement or any other Loan Document against the Borrower or its properties in the courts of any jurisdiction.

(c)    Waiver of Venue.    Each Loan Party irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Agreement or any other Loan Document in any court referred to in paragraph (b) of this Section 10.13.  Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by applicable law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(d)    Service of Process.    Each party hereto irrevocably consents to service of process in the manner provided for notices in Section 4.01.  Nothing in this Agreement will affect the right of any party hereto to serve process in any other manner permitted by applicable law.  As an alternative method of service, each of the Borrower, LBRM and LBRO also irrevocably consents to the service of any and all

process in any such action or proceeding by the air mailing of copies of such process to such Borrower Party at its then-effective notice address pursuant to Section 10.01.

SECTION 10.14    Waiver of Jury Trial.    EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).    EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

SECTION 10.15    Confidentiality.    Each of the Administrative Agent and the Lenders agree to maintain the confidentiality of the Information (as defined below), except that Information may be disclosed (a) to its Affiliates and to its Related Parties (it being acknowledged and agreed by the Administrative Agent and the Lenders that any Affiliate or Related Party of such Person that is principally involved in the trading or hedging of commodities does not need to know, and will not be provided with, such information (other than a limited number of senior employees who are required, in accordance with industry regulations or such Person's internal policies and procedures, to act in a supervisory capacity and such Person's internal legal, compliance, risk management, credit or investment committee members, *provided* that no such persons will use such disclosed confidential information in connection with any trading or hedging of commodities of such Person or its Affiliates)) who are informed of the confidential nature of such Information and instructed to keep such Information confidential; (b) to the extent required or requested by any regulatory authority purporting to have jurisdiction over such Person or its Related Parties (including any self-regulatory authority, such as the National Association of Insurance Commissioners); (c) to the extent required by applicable laws or regulations or by any subpoena or similar legal process; (d) to any other party hereto; (e) in connection with the exercise of any remedies hereunder or under any other Loan Document or any action or proceeding relating to this Agreement or any other Loan Document or the enforcement of rights hereunder or thereunder; (f) subject to an agreement containing provisions substantially the same as those of this Section, to (i) any assignee of or Participant in, or any prospective assignee of or Participant in, any of its rights and obligations under this Agreement, or (ii) any actual or prospective party (or its Related Parties) to any swap, derivative or other transaction under which payments are to be made by reference to the Borrower and its obligations, this Agreement or payments hereunder; (g) on a confidential basis to (i) any rating agency in connection with rating the Borrower or its Subsidiaries or the DIP Facility or (ii) the CUSIP Service Bureau or any similar agency in connection with the issuance and monitoring of CUSIP numbers with respect to the DIP Facility; (h) with the consent of the Borrower; or (i) to the extent such Information (x) becomes publicly available other than as a result of a breach of this Section, or (y) becomes available to the Administrative Agent, any Lender or any of their respective Affiliates on a nonconfidential basis from a source other than the Borrower.  In addition, the Administrative Agent and the Lenders may disclose the existence of this Agreement and information about this Agreement to market data collectors, similar service providers to the lending industry and service providers to the Agents and the Lenders in connection with the administration of this Agreement, the other Loan Documents, and the Advances; *provided* that such Persons receiving such information are subject to confidentiality obligations substantially similar to this Section 10.15 or as may be reasonably acceptable to the Borrower.

For purposes of this Section, "*Information*" means all information received from the Borrower relating to Holdings, the Borrower or any of their respective businesses, other than any such information that is available to the Administrative Agent or any Lender on a nonconfidential basis prior to disclosure by the Borrower; *provided* that, in the case of information received from the Borrower after the date of this Agreement, such information is clearly identified at the time of delivery as confidential. Any Person required to maintain the confidentiality of Information as provided in this Section shall be considered to have complied with its obligation to do so if such Person has exercised the same degree of care to maintain the confidentiality of such Information as such Person would accord to its own confidential information.

SECTION 10.16    Usury Savings Clause. Notwithstanding any other provision herein, the aggregate interest rate charged with respect to any of the Obligations, including all charges or fees in connection therewith deemed in the nature of interest under applicable law shall not exceed the Highest Lawful Rate. If the rate of interest (determined without regard to the preceding sentence) under this Agreement at any time exceeds the Highest Lawful Rate, the outstanding amount of the Advances made hereunder shall bear interest at the Highest Lawful Rate until the total amount of interest due hereunder equals the amount of interest which would have been due hereunder if the stated rates of interest set forth in this Agreement had at all times been in effect. In addition, if when the Advances made hereunder is repaid in full the total interest due hereunder (taking into account the increase provided for above) is less than the total amount of interest which would have been due hereunder if the stated rates of interest set forth in this Agreement had at all times been in effect, then to the extent permitted by law, the Borrower shall pay to the Administrative Agent an amount equal to the difference between the amount of interest paid and the amount of interest which would have been paid if the Highest Lawful Rate had at all times been in effect. Notwithstanding the foregoing, it is the intention of the Lenders and the Borrower to conform strictly to any applicable usury laws. Accordingly, if any Lender contracts for, charges, or receives any consideration which constitutes interest in excess of the Highest Lawful Rate, then any such excess shall be cancelled automatically and, if previously paid, shall at such Lender's option be applied to the outstanding amount of the Advances made hereunder or be refunded to the Borrower.

SECTION 10.17    Counterparts; Integration; Effectiveness; Electronic Execution.

(a)    Counterparts; Integration; Effectiveness. This Agreement may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract. This Agreement and the other Loan Documents, and any separate letter agreements with respect to fees payable to the Administrative Agent, constitute the entire contract among the parties relating to the subject matter hereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof. This Agreement shall become effective on the Closing Date.

(b)    Electronic Execution of Assignments. The words "execution," "signed," "signature," and words of like import in any Assignment and Assumption shall be deemed to include electronic signatures or the keeping of records in electronic form, each of which shall be of the same legal effect, validity or enforceability as a manually executed signature or the use of a paper-based recordkeeping system, as the case may be, to the extent and as provided for in any applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act, or any other similar state laws based on the Uniform Electronic Transactions Act.

SECTION 10.18    Patriot Act. Each Lender and the Administrative Agent (for itself and not on behalf of any Lender) hereby notifies the Borrower that pursuant to the requirements of the Patriot Act and the Beneficial Ownership Regulation, it is required to obtain, verify and record information that

identifies the Borrower, which information includes the name and address of the Borrower and other information that will allow such Lender or Administrative Agent, as applicable, to identify the Borrower in accordance with the Patriot Act and the Beneficial Ownership Regulation.  The Borrower shall, promptly following a request by the Administrative Agent or any Lender, provide all documentation and other information that the Administrative Agent or such Lender requests in order to comply with its ongoing obligations under applicable "know your customer" and anti-money laundering rules and regulations, including the Patriot Act and the Beneficial Ownership Regulation.

SECTION 10.19   <u>Non-Recourse to Equityholders; Certain Acknowledgements</u>. Anything herein or in the other Loan Documents to the contrary notwithstanding, the obligations of the Loan Parties under this Agreement and the other Loan Documents are obligations of the Loan Parties and do not constitute a debt or obligation of (and no recourse shall be had with respect thereto) any of the direct or indirect holders of the Capital Stock of the Loan Parties or any of their respective Affiliates (in each case, other than the Loan Parties) or any shareholder, partner, member, officer, director, controlling Person, agent, representative, executive or employee of any such Person (collectively, other than the Loan Parties, the "***Non-Recourse Parties***"), except to the extent of the obligations of any such Non-Recourse Party expressly provided for in any of the Loan Documents to which it may become a party, if ever.  Except in respect of any obligation of a Non-Recourse Party expressly provided in any Loan Document to which it may become a party (if ever), no action shall be brought against the Non-Recourse Parties, and no judgment for any deficiency upon the Obligations shall be obtainable, by any Secured Party against the Non-Recourse Parties and the Secured Parties shall look solely to the Loan Parties (but not to any Non-Recourse Party) in enforcing its rights and obligations under and in connection with the Obligations; *provided* that nothing contained in this <u>Section 10.19</u> shall be deemed to release any Non-Recourse Party from liability for its own fraudulent actions, bad faith or willful misconduct or from any other obligation of such Non-Recourse Party contained in any other agreement to which such Non-Recourse Party is a party or to bar any counterclaim against any Person.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first above written.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, this Agreement is executed as of the date first written above.

**BORROWER**:

LIMETREE BAY REFINING, LLC,
a U.S. Virgin Islands limited liability company


By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

[Signature page to Senior Secured Superpriority Debtor in Possession Credit Agreement]

**GUARANTORS**:

LIMETREE BAY REFINING HOLDINGS II, LLC,
a U.S. Virgin Islands limited liability company


By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

LIMETREE BAY SERVICES, LLC,
a Delaware limited liability company


By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

LIMETREE BAY REFINING HOLDINGS LLC,
a U.S. Virgin Islands limited liability company


By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

LIMETREE BAY REFINING MARKETING LLC,
a U.S. Virgin Islands limited liability company


By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

LIMETREE BAY REFINING OPERATING LLC,
a U.S. Virgin Islands limited liability company


By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

[Signature page to Senior Secured Superpriority Debtor in Possession Credit Agreement]

**ADMINISTRATIVE AGENT**:

405 SENTINEL LLC,
a Delaware limited liability company


By:_____
Name: Lawrence Cutler
Title: Authorized Signatory


**LENDER**:

405 SENTINEL LLC,
a Delaware limited liability company


By:_____
Name: Lawrence Cutler
Title: Authorized Signatory

[Signature page to Senior Secured Superpriority Debtor in Possession Credit Agreement]

## Exhibit B

**Approved Budget**

4823-3938-9938.1

## Limetree Bay Refinery

**Forecasted Results of Operations and Cash Flows**

Wks Beginning   _7/12/21_   _thru_   _7/26/21_

| | Week -----> | 1 | 2 | 3 | TOTAL |
|---|---|---|---|---|---|
| | Beginning of Week | 7/12/21 | 7/19/21 | 7/26/21 | |
| | End of Week | 7/18/21 | 7/25/21 | 8/1/21 | |
| **Cash Receipts** | | $ 900 | $ 3,400 | $ 450 | $ 4,750 |
| **Cash Disbursements** | | | | | |
| Payroll / Benefits | | $ 1,220 | $ - | $ 1,197 | $ 2,417 |
| Fuel | | 470 | 470 | 470 | 1,410 |
| Maintenance and Other Outside Services | | 298 | 298 | 298 | 893 |
| Insurance | | - | 514 | - | 514 |
| Admin / Site Services | | - | 221 | 221 | 442 |
| Limetree Bay Terminal Services | | 150 | 150 | 150 | 450 |
| Utility Adequate Assurance Payment | | - | - | 483 | 483 |
| Critical Vendor Payments | | - | - | 750 | 750 |
| Flare Repair | | - | 221 | 58 | 279 |
| Hydrocarbon Removal | | - | 310 | 310 | 620 |
| **Total**   **Cash Disbursements** | | $ 2,138 | $ 2,184 | $ 3,938 | $ 8,259 |
| **Operating Cash Flow** | | $ (1,238) | $ 1,216 | $ (3,488) | $ (3,509) |
| **Other (Sources) / Uses** | | | | | |
| DIP Financing Costs | | $ 63 | $ - | $ - | $ 63 |
| Revolver Interest Payments | | 321 | | - | 321 |
| J Aron Interest Payment | | - | - | 150 | 150 |
| Insurance Claims Professionals | | 10 | - | - | 10 |
| **Total**   **Other (Sources) / Uses** | | 393 | - | 150 | 543 |
| **Net Cash Flow Before Professional Fees** | | (1,631) | 1,216 | (3,638) | $ (4,053) |
| **Professional Fees** | | | | | |
| Debtor Legal | | $ 150 | $ - | $ - | $ 150 |
| DIP Lender Counsel | | 120 | - | - | 120 |
| Term Lender Professionals | | 1,100 | - | - | 1,100 |
| J Aron Counsel (Pre-Petition Fee Estimate) | | 575 | - | - | 575 |
| Revolver Counsel (Pre-Petition Fee Estimate) | | 600 | - | 100 | 700 |
| **Total**   **Professional Fees** | | $ 2,545 | $ - | $ 100 | $ 2,645 |
| **Net Cash Flow** | | $ (4,176) | $ 1,216 | $ (3,738) | $ (6,698) |
| _Accumulated_ | | $ (4,176) | $ (2,960) | $ (6,698) | |
| **Beginning Cash Balance** | | $ 2,517 | $ 3,841 | $ 5,057 | |
| **Net Cash Flow** | | (4,176) | 1,216 | (3,738) | |
| **DIP Draw** | | 5,500 | - | - | |
| **DIP (Paydown)** | | - | - | - | |
| **Ending Book Cash Balance** | | $ 3,841 | $ 5,057 | $ 1,319 | $ 1,319 |
| **Ending  DIP Balance** | | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 |

UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
KEVIN M. EPSTEIN
UNITED STATES TRUSTEE
HECTOR DURAN
TRIAL ATTORNEY
515 Rusk, Suite 3516
Houston, Texas  77002
Telephone: (713) 718-4650 x 241
Fax: (713) 718-4670

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. |
| | § | |
| LIMETREE BAY SERVICES, LLC, | § | 21-32351 (DRJ) |
| *et al.,* | § | (Chapter 11) |
| | § | |
| DEBTORS[1] | § | Jointly Administered |

## NOTICE OF APPOINTMENT OF
## COMMITTEE OF UNSECURED CREDITORS

TO THE HONORABLE DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Kevin M. Epstein, the United States Trustee for Region 7, who pursuant to 11 U.S.C. § 1102(a)(1) hereby appoints the following eligible creditors to the Committee of Unsecured Creditors in this case:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

| Members | Counsel for Member |
|---|---|
| 1. Universal Plant Services (IV), LLC<br>Attn: Ruben Kendrick, Jr.<br>806 Seaco Court<br>Deer Park, TX  77536<br>Tel. 281-680-1604<br>Email:   rkendrick@universalplant.com | Sidley Austin, LLP<br>Duston K. McFaul, Esq.<br>Maegan Quejada, Esq.<br>1000 Louisiana St., Suite 5900<br>Houston, TX  77002<br>Tel. 713-495-4516<br>Email:  dmcfaul@sidley.com<br>        mquejada@sidley.com |
| 2. Excel Construction & Maintenance VI, Inc.<br>Attn:  Cherie A. Pinac<br>8641 United Plaza Blvd.<br>Baton Rouge, LA  70809<br>Tel. 225-408-4109<br>Email:  cpinac@excelusa.com | |
| 3. InServ Field Services USVI, LLC<br>Attn: Cody Reese<br>1900 N. 161st E. Ave.<br>Tulsa, OK  74116<br>Tel. 918-984-4550 / 479-524-1352<br>Email: creese@inservusa.com | Frederic Dorwart, Lawyers PLLC<br>Samuel Ory, Esq.<br>124 E. 4th St.<br>Tulsa, OK  74103<br>Tel. 918-497-0574<br>Email:  sory@fdlaw.com |
| 4. National Industrial Services, LLC<br>Attn:  Jeffery L. Nations<br>P.O. Box 1545<br>Kingshill, VI  00851<br>Tel. 340-332-9982<br>Email:  jnations@nisstx.com | Kevin F. D'Amour, Esq.<br>P.O. Box 10829<br>St. Thomas, VI  00801<br>Tel. 609-902-4370<br>Fax 340-774-8189<br>Email:  kevin.damour@comcast.net |

| | |
|---|---|
| 5. Christiansted Equipment Ltd.<br>   Attn:  Robert W. McKenna, Jr./<br>   Daniel McKenna<br>   9149 Dry Fork Road<br>   Harrison, OH  45030<br>   Tel. 513-608-6131/513-404-8218<br>   Fax 513-367-0363<br>   Email:  bobmckenna@fmmafco.com<br>          djmckenna@fmmafco.com | Keating, Muething & Klekamp, PLLC<br>Robert G. Sanker, Esq.<br>1 E. 4th St., Suite 1400<br>Cincinnati, OH  45202<br>Tel. 513-579-6587<br>Fax 513-579-6457<br>Email:  rsanker@kmklaw.com |
| 6. Pinnacle Services, LLC<br>   Attn:  Robert Stuart Lewis, Jr.<br>   6002 Diamond Ruby, Suite 3-125<br>   Christiansted, VI  00820<br>   Tel. 340-277-3941<br>   Fax 561-244-0702<br>   Email:  rlewis@pinnaclevi.com | |
| 7. Baker Hughes Oilfield Operations LLC<br>   Attn:  Christopher J. Ryan<br>   2001 Rankin Road<br>   Houston, TX  77073<br>   Tel. 713-416-0149<br>   Email:  chris.ryan@bakerhughes.com | Snow & Green LLP<br>Phil Snow, Esq.<br>22255 Roberts Cemetery Road<br>Hockley, TX  77447<br>Tel. 713-335-4802<br>Email: phil@snow-green.com |
| 8. Englobal U.S. Inc.<br>   Attn:  Mark A. Hess<br>   654 N. Sam Houston Pkwy. E., Suite 400<br>   Houston, TX  77092<br>   Tel. 281-878-1000<br>   Email:  mark.hess@englobal.com | |
| 9. Pamela Colon<br>   2155 King Cross Street, Suite 3<br>   Christiansted, VI  00820<br>   Tel. 340-227-2409<br>   Fax 340-719-7700<br>   Email:  pamelalcolon@msn.com | Nye, Stirling, Hale & Miller, LLP<br>Joel M. Walker, Esq.<br>1145 Bower Hill Road, Suite 104<br>Pittsburgh, PA  15243<br>Tel. 412-857-5348<br>Email: jmwalker@nshmlaw.com |

Dated: July 26, 2021     Respectfully Submitted,

           KEVIN M. EPSTEIN
           UNITED STATES TRUSTEE

           By:  /s/ *Hector Duran*
              Hector Duran
              Trial Attorney
              Texas Bar No. 00783996
              515 Rusk, Suite 3516
              Houston, TX 77002
              Telephone: (713) 718-4650 x 241
              Mobile: (202) 527-4538
              Fax: (713) 718-4670

<u>CERTIFICATE OF SERVICE</u>

   I hereby certify that a true and correct copy of the foregoing was served by electronic means on all PACER participants on this <u>26th</u> day of July, 2021.

           /s/ *Hector Duran*
           Hector Duran, Trial Attorney

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*,**[1] | **CASE NO.: 21-32351** |
| Debtors. | **Jointly Administered** |

### DEBTORS' EMERGENCY MOTION FOR ENTRY OF ORDER: (I) ESTABLISHING BIDDING AND SALE PROCEDURES; (II) APPROVING THE SALE OF ASSETS; AND (III) GRANTING RELATED RELIEF

**Emergency relief has been requested. A hearing will be conducted on this matter on August 2, 2021, at 3:30 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk St., Houston, Texas 77002. You may participate in the hearing either in person or by audio/video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691.**

**You may view video via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "JudgeJones" in the GoToMeeting app or click the link on Judge Jones's home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu. Select "Judges' Procedures," then "View Home Page" for Judge Jones. Under "Electronic Appearance" select "Click here to submit Electronic Appearance". Select the case name, complete the required fields and click "Submit" to complete your appearance.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must either appear at the hearing or file a written response prior to the**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

> **hearing. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **Relief is requested not later than August 2, 2021.**

Limetree Bay Services, LLC and its debtor affiliates (collectively, the "**Debtors**"), as debtors and debtors in possession in the above-captioned, jointly administered chapter 11 cases (collectively, the "**Chapter 11 Cases**"), represent as follows in support of this motion (the "**Motion**"):

## **Relief Requested**

1.      Pursuant to Sections 363(b), (f), and (m) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Section K of the Procedures for Complex Cases in Southern District of Texas (the "**Complex Rules**"), the Debtors hereby move for entry of:

　　　a.      an order (the "**Bidding Procedures Order**"), substantially in the form attached hereto as <u>Exhibit A</u>: (a) approving the proposed bidding and sale procedures attached as Appendix A to the Bidding Procedures Order (the "**Bidding Procedures**") for the proposed sale(s) (the "**Sale**") of all or substantially all assets (the "**Assets**")[2] of the Debtors' bankruptcy estates (collectively, the "**Estates**"); (b) scheduling an auction (the "**Auction**") and final sale hearing (the "**Sale Hearing**") for approval of the Sale; (c) establishing procedures for the assumption and assignment of executory contracts and unexpired leases of the Debtors (collectively, the "**Executory Contracts**") in connection with the Sale; and (d) granting certain further and additional relief as described herein; and

　　　b.      with respect to any Sale of Assets pursuant to the Bidding Procedures, and following the Sale Hearing (defined below), an order (the "**Sale Order**"): (a) authorizing the Sale to the winning bidder, free and clear of any and all Interests (as defined below), except for any assumed liabilities; (b) authorizing the assumption and assignment of Executory Contracts, if any, designated for assignment to the purchaser in connection with any Sale; and

---

[2] For the avoidance of doubt, the "Assets" do not include any IFF Property (as defined in the Interim DIP Order).  The Debtors are not seeking authority to market or sell the IFF Property by and through this Motion.

4830-5234-0722.16

(c) granting certain further and additional relief as described herein, the Designation of Winning Bid (defined below), or in the proposed Sale Order.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue of the Chapter 11 Cases in the district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      This Court has constitutional authority to enter final orders with respect to the relief requested herein.  The Debtors further confirm their consent to this Court's entry of final orders or judgments on this Motion, if it is later determined that, in the absence of the consent of the parties, this Court does not have constitutional authority to enter final orders or judgments.

## Background

### A.      Chapter 11 Cases

4.      On July 12, 2021 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code—thereby commencing these Chapter 11 Cases.  The Debtors continue to operate their businesses as debtors in possessions pursuant to Section 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.  On or about July 26, 2021, an Official Committee of Unsecured Creditors was appointed (the "**Committee**"). *See* Docket No. 189.

5.      On July 13, 2021, the Court entered an order authorizing the joint administration of the Chapter 11 Cases and permission to use a consolidated case caption.  *See* Docket No. 20.

6.      A discussion of the facts and circumstances surrounding these Chapter 11 Cases is set forth in the *Declaration of Mark Shapiro in Support of Chapter 11 Petitions and First Day*

3

*Motions* (the "**First Day Declaration**"), which is incorporated herein by reference.  *See* Docket No. 8.

**B.      The Refinery and Related Operations**

7.      In or about September 1965, the United States Virgin Islands (the "**USVI**") and Hess Oil Virgin Islands Corp. ("**HOVIC**"), a subsidiary of Hess Corporation (f/k/a Amerada Hess Corporation), entered into a Concession Agreement dated September 1, 1965 providing for the construction and operation of an oil refinery (the "**Refinery**") and an oil storage facility (the "**Terminal**") on the southern coast of the Island of St. Croix in the USVI.  HOVIC continued operating the Refinery and Terminal until 1998, at which time HOVIC assigned its interests to HOVENSA—a joint venture of HOVIC and PDVSA V.I., Inc., a subsidiary of the national oil company of Venezuela, Petróleos de Venezuela, S.A.

8.      While the Refinery and Terminal brought economic prosperity, the operation of an industrial oil refinery on a tropical island created dissonance with residents, federal and local environmental agencies, and non-governmental organizations concerned about the impacts of the operation on the local ecosystem and environment at large—a dissonance only amplified in recent decades as the Refinery aged amidst increasingly stringent environmental regulation.  Ultimately, adverse economic and regulatory climates, as well as increased competition in the region, resulted in HOVENSA's refinery operations suffering losses totaling approximately $1.3 billion between 2009 and 2011; accordingly, on or about February 16, 2012, HOVENSA idled the Refinery operations and, thereafter, began marketing the Terminal and Refinery for sale.

9.      In September 2015, HOVENSA and Limetree Bay Holdings, LLC ("**LBH**") entered into a purchase and sale agreement for the Terminal, pursuant to which LBH agreed to serve as the stalking horse bidder for a sale through bankruptcy.  On September 15, 2015, HOVENSA filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the

"**HOVENSA Chapter 11 Case**") in the United States District Court for the Virgin Islands, Bankruptcy Division (the "**HOVENSA Court**").  On or about December 1, 2015, the HOVENSA Court entered an order approving the sale of substantially all assets of HOVENSA to LBH, or its assignee, including, without limitation, the Terminal and Refinery.

10.    In conjunction with the acquisition of the Refinery and Terminal, Limetree Bay Refining, LLC ("**LBR**") and Limetree Bay Terminals, LLC ("**LBT**"), which, together with its parent and subsidiary entities, own and operate the Terminal, entered into operating agreements with the USVI (as amended and supplemented, the "**Operating Agreements**") that, among other things, granted the USVI certain entitlements and financial incentives in exchange for the right to acquire and operate the Refinery and Terminal.  Additionally, LBR and Limetree Bay Refining Marketing, LLC ("**LBRM**"), on the one hand, and LBT, on the other hand, entered into a series of agreements governing the use and occupancy of the Limetree Bay facility and business dealings between the Refinery and Terminal, including, without limitation, the Shared Services Systems Agreement dated as of November 30, 2018 (as amended and supplemented, the "**Shared Services Agreement**").

C.    **Event Precipitating Chapter 11 Filing**

11.    The Debtors have worked diligently to refurbish and relaunch the aging Refinery— ultimately investing more than $4 billion into the venture since 2018.  The Debtors reopened the Refinery in February 2021 with anticipation of the economic opportunities for investors as well as the community of St. Croix.  While the relaunch proved promising initially, the Refinery began experiencing operational issues in or about April 2021.   In response, the United States Environmental Protection Agency (the "**EPA**") and Virgin Islands Department of Planning and National Resources (the "**DPNR**") opened investigations regarding the Refinery and, on or about

4830-5234-0722.16

May 14, 2021, the EPA issued a Clean Air Act Emergency Order (the "**EPA Order**") requiring the Debtors to immediately cease any and all operations at the Refinery for a period of 60 days and engage in an audit of certain identified operational and regulatory compliance issues.

12.     At the time of the suspension of operations, the Debtors lacked access to sufficient liquidity or financing under existing facilities to fund Refinery expenses through the 60-day suspension under the EPA Order.  Accordingly, the Debtors engaged professionals to advise on potential restructuring and recapitalization options; however, the Debtors were unable to obtain new financing under the existing capital structure.  As such, the Debtors solicited proposals for debtor in possession financing to fund idling of the Refinery and a structured sale process through bankruptcy—ultimately selecting a debtor in possession facility (the "**DIP Facility**") administered by 405 Sentinel, LLC (the "**DIP Agent**").[3]  On July 12, 2021, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

13.     Pending a sale or reorganization through the Chapter 11 Cases, the Debtors intend to idle the Refinery in accordance with applicable law and consultation with the EPA to ensure the protection of the surrounding communities and environment.  Simultaneously, and in accordance with the terms of the DIP Loan Documents (as defined in the Interim DIP Order), the Debtors intend to market the Assets for sale and solicit proposals for the acquisition thereof pursuant to the proposed Bidding Procedures, as set forth herein.  As of the filing of this Motion, the Debtors do not have a stalking horse bidder for the Assets.

## **Proposed Bidding Procedures**

14.     The Debtors developed the Bidding Procedures (detailed below), with the assistance of advisors and in consultation with the DIP Agent and the Prepetition Secured Parties

---

[3] On July 14, 2021, the Court entered an interim order approving the DIP Facility (the "**Interim DIP Order**").  *See* Docket No. 104.

(as defined in the Interim DIP Order) to maximize the value of the Assets for the benefit of the Estates and their creditors through an efficient and streamlined sale process, which comports with the terms of the DIP Loan Documents and the Bankruptcy Code.  In short, the Bidding Procedures provide for the solicitation of bids from potential purchasers in an effort to identify a stalking horse bidder.  Prior to the Bid Deadline (defined below), the Debtors, in consultation with the Notice Parties,[4] shall select one or more bids to serve as stalking horse bid(s) for all or substantially all assets of the Debtors, individually or collectively.  Thereafter, if additional Qualified Bids (defined below) are received prior to the Bid Deadline, the Debtors intend to hold an Auction to provide other Qualified Bidders (defined below) an opportunity to bid against the selected stalking horse bid(s).  Upon conclusion of the Auction, the Debtors, in consultation with the Notice Parties, shall select a Winning Bid (defined below) and file a notice and designation of the Winning Bid for approval at the Sale Hearing.

15.     The provisions of the Bidding Procedures Order approving the Bidding Procedures shall be subject to the terms of the Interim DIP Order.  In the event the relief granted in the Bidding Procedures Order or any action taken or proposed to be taken under the Bidding Procedures Order is inconsistent with the terms of the Interim DIP Order, the terms of the Interim DIP Order shall control.

16.     The following is a summary of the dates and deadlines proposed under the Bidding Procedures:[5]

---

[4] As used herein, "Notice Parties" refers to, collectively, the DIP Agent, each of the Prepetition Agents (as defined in the Interim DIP Order), and any official committee(s) appointed in these Chapter 11 Cases.

[5] Some of the dates and deadlines in the table are dependent on the occurrence of certain events.  In such cases, the dates provided are estimated or proposed dates or the last date upon which the subject date or deadline may occur under the Interim DIP Order and/or DIP Loan Document.  Any capitalized terms used in the table shall have the meanings ascribed to them in this Motion.

4830-5234-0722.16

| Date/Deadline | Event |
|---|---|
| August 2, 2021 | Hearing on bidding procedures motion |
| August 6, 2021 | Deadline to establish and populate Data Room |
| September 7, 2021 | Bid Summary Deadline |
| September 10, 2021 | Stalking Horse Designation Deadline |
| September 13, 2021 | Deadline to file Stalking Horse Notice |
| September 17, 2021, at 5:00 p.m. CT | Bid Deadline and Credit Bid Designation Deadline |
| September 17, 2021 | Deadline to object to Stalking Horse Notice |
| September 20, 2021, at 10:00 a.m. CT | Deadline to provide notice of Auction location |
| September 22, 2021, at 10:00 a.m. CT | Auction Date |
| September 24, 2021 | Deadline to file the Designation of Winning Bid |
| October 4, 2021, at 5:00 p.m. CT | Deadline to object to the Sale |
| October 8, 2021, at 5:00 p.m. CT | Deadline to reply to objection(s) to the Sale |
| October 8, 2021 | Deadline to file Amended Designation of Winning Bid to add previously unidentified Executory Contracts |
| October 12, 2021, at 12:00 p.m. CT | Contract Assumption Objection Deadline |
| October 14, 2021 | Sale Hearing (subject to Court availability) |
| October 15, 2021 | Expected entry of Sale Order |
| October 31, 2021 | Deadline to file Amended Designation of Winning Bid to remove previously identified Executory Contracts |
| November 1, 2021, at 5:00 p.m. CT | Deadline for Winning Bidder to close sale transaction |
| November 8, 2021, at 5:00 p.m. CT | Deadline for Back-up Bidder to close sale transaction (if applicable) |

## A.    Participation Requirements

17.    To participate in the bidding process or otherwise be considered for any purpose hereunder, each interested person or entity interested in submitting a Bid to purchase any of the

Assets (each, a "**Potential Bidder**") must deliver or previously have delivered to the Debtors the following documents (the "**Preliminary Bid Documents**"):

    a.    An executed confidentiality agreement in a form acceptable to the Debtors, in consultation with the Notice Parties (the "**Confidentiality Agreement**");

    b.    Preliminary documentary evidence satisfactory to the Debtors, in consultation with the Notice Parties, of the Potential Bidder's financial ability to fully and timely perform and close the Sale;

    c.    Documents identifying the Potential Bidder, including its legal name, jurisdiction and form of organization, and details regarding the ownership and capital structure of the Potential Bidder, as well as the identity of any controlling persons, significant direct or indirect equity or debt investors, and/or guarantors of such entity; and

    d.    A list with the names and contact information for any financial, legal, and other advisors of the Potential Bidder has engaged to assist in connection with the proposed Sale.

**B.**    **Bid Requirements**

18.    Any Potential Bidder may submit a bid (each a "**Bid**") for either: (a) all or substantially all of the Assets; or (b) any portion or combination of Assets (a "**Piecemeal Bid**"). For the avoidance of doubt, no Bid or Piecemeal Bid may include the IFF Property. The DIP Lenders and Prepetition Secured Parties need not comply with the proposed Bidding Procedures to submit a credit bid and, for proposes of participating at the Auction, shall be deemed a Qualified Bidders.

19.    To participate in the Sale process, each Potential Bidder must, on or before September 17, 2021, at 5:00 p.m. prevailing Central Time (the "**Bid Deadline**"):

    a.    Fully disclose the identity of each entity that will be bidding for the assets or otherwise participating in connection with such Bid and the complete terms of any such participation.

b.     Submit to the Debtors an executed purchase agreement substantially in the form of the APA (as defined below), as well as a redline of such agreement marked against the APA, memorializing a Bid for all or substantially all of the Assets or a Piecemeal Bid that comports with the terms of the Bidding Procedures and the proposed Sale, discussed *infra*.  No later than August 6, 2021, the Debtors shall upload to the Data Room (defined below) a proposed form of asset purchase agreement for the acquisition of substantially all Assets of the Estates (the "**APA**").

c.     Submit a Bid that is: (i) binding and irrevocable for a period of no less than 120 days[6] from the Bid Deadline, unless and until the Debtors accept a higher Bid and such Potential Bidder is not selected as the Back-up Bidder; (ii) without financing, due diligence, internal approval or any other contingencies, including with respect to title defect or environmental laws, unless otherwise consented to by the Debtors, in consultation with the Notice Parties; *provided, however*, that a Bid may contain a list of anticipated required regulatory approvals and the expected timing for obtaining such approvals; (iii) on terms substantially similar to those terms contained in the APA; and (iv) in compliance with the Bidding Procedures.

d.     Indicate the form of consideration of the Bid and the estimated market value of any non-cash consideration.

e.     If the Potential Bidder is submitting a Piecemeal Bid, the Potential Bidder must identify specifically the Assets subject to the Piecemeal Bid.

f.     If the Potential Bidder proposes acquiring any assets of LBT, or any parent or subsidiary of LBT, including, without limitation, any of the Terminal assets, or any other non-Debtor entities (collectively, the "**Non-Debtor Assets**"), the Potential Bidder must (i) identify any and all Non-Debtor Assets subject to the Bid and (ii) either (A) confirm that the closing of the

---

[6] Unless otherwise stated, all references to "days" contained herein refer to calendar days.  Bankruptcy Rule 9006 shall govern the computation of any and all dates and deadline under the Bidding Procedures.

proposed Sale of the Debtors' Assets is not contingent on the acquisition of the Non-Debtor Assets or (B) provide evidence in a form acceptable to the Debtors, after consulting with the Notice Parties, that the Potential Bidder and owner(s) of the Non-Debtor Assets subject to the Bid have entered into a binding and enforceable agreement, subject to any conditions related to the approval of the proposed Sale by the Court, for the sale and acquisition of the subject Non-Debtor Assets. For the avoidance of doubt, the Debtors shall not (i) market or sell any Non-Debtor Assets, (ii) condition the Sale of any Assets on the sale or acquisition of any Non-Debtor Assets, (iii) incur or pay any expenses related to the marketing or sale of any Non-Debtor Assets, or (iv) provide any assistance with due diligence related to any Non-Debtor Assets. Any Non-Debtor Assets shall not be subject to the proposed Sale Order or jurisdiction of the Court.

g.      Specify the portion of the aggregate purchase price that is being allocated to each type or group of Assets, including to insurance claims or proceeds, inventory (including any Inventory Financing Collateral (as defined in the Interim DIP Order)), equipment and any other type or group of Assets that may be subject to a lien held by the DIP Lenders or any of the Prepetition Secured Parties.

h.      Unless the Bid is a credit bid being submitted by the DIP Lenders or a Prepetition Secured Party, make a good faith cash deposit in the form of a cashier's check or wire transfer into an interest bearing escrow account (the "**Escrow Account**") maintained by the Debtors' counsel in an amount not less than ten percent (10%) of the total consideration for the Bid, which deposit shall immediately become non-refundable and credited toward the purchase price if and when the Qualified Bidder (as defined below) making such deposit is declared to be the winning bidder (the "**Winning Bid**" and "**Winning Bidder**") or back-up bidder (the "**Back-up Bid**" and "**Back-up Bidder**") at the Sale Hearing. In the event a Qualified Bidder is not the

Winning Bidder or Back-up Bidder, such Qualified Bidder's deposit shall be refunded as set forth herein.

i.      Identify the liabilities, if any, that the Potential Bidder seeks to assume through the Sale transaction.

j.      Provide a list of the Debtors' Executory Contracts the Potential Bidder seeks to have the Debtors assume and assign to the Potential Bidder by and through the Sale.  No later than August 6, 2021, the Debtors shall upload to the Data Room a list of Executory Contracts that may be subject to assumption and assignment as part of a Sale.

k.      Provide documentary evidence satisfactory to the Debtors, in consultation with the Notice Parties, of the Potential Bidder's financial ability to (i) fully and timely perform and close the Sale pursuant to the Bid and proposed assets purchase agreement, if declared to be the Winning Bidder, and (ii) provide adequate assurance of future performance of all Executory Contracts identified for assumption and assignment to the Potential Bidder, including, without limitation, the following:

   i.     evidence of the Potential Bidder's internal resources and proof of unconditional debt funding commitments from a recognized financial institution and, if applicable, equity commitments in an aggregate amount equal to the purchase price and any applicable cure amounts and other closing payments, if any, or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in such amount, in each case, as are needed to close the proposed Sale transaction;

   ii.    contact names and telephone numbers for verification of financing sources;

   iii.   current audited financial statements (or such other form of financial disclosure and credit-quality support or enhancement, acceptable to the Debtors, in consultation with the Notice Parties) of the Potential Bidder or those entities that will guarantee in full the payment obligations of the Potential Bidder;

   iv.    a description of the Potential Bidder's *pro forma* capital structure; and

4830-5234-0722.16

     v.   any such other form of financial disclosure or credit-quality support information or enhancement reasonably requested by the Debtors demonstrating that such Qualified Bidder has the ability to close the applicable Sale transaction.

l.     Disclose any connections or agreement with the Debtors or their affiliates, any of the Notice Parties, or any other known Potential Bidder or Qualified Bidder, and/or any officer, director or equity security holder of the Debtors or their affiliates or any of the foregoing and confirm that it has not engaged in any collusion with respect to the bidding or the proposed Sale transaction.

m.    Confirm in writing its agreement to accept and abide by the terms, conditions and procedures set forth herein and provide evidence of due authorization to enter into the proposed Sale pursuant to the asset purchase agreement submitted, or any derivation thereof. In the event that the Potential Bidder is an entity specially formed for the purpose of effectuating the contemplated transaction, then the Potential Bidder must furnish written evidence acceptable to the Debtors, in consultation with the Notice Parties, of the approval of the contemplated transaction by the equity holders or members of such Potential Bidder.

n.    Identify any and all bid protections (the "**Bid Protections**") required by the Potential Bidder to serve as the Stalking Horse Bidder (defined below) for the Sale, including without limitation, any break-up fee, expense reimbursement, termination fee or similar type of payment or bid protections; *provided, however*, that the aggregate amount of any proposed Bid Protections may not exceed three percent (3%) of the total purchase price under the Bid.

20.    The Debtors, in consultation with the Notice Parties, shall determine whether a Bid or Piecemeal Bid that meets the above minimum requirements constitutes a qualified bid (a "**Qualified Bid**", and the bidder submitting such Qualified Bid, a "**Qualified Bidder**").  The Debtors will promptly advise each Potential Bidder in writing whether or not the Potential Bidder

4830-5234-0722.16

is a Qualified Bidder. If a Bid submitted on or prior to the Bid Deadline fails to meet all requirements of a Qualified Bid, the Debtors, after consulting with the Notice Parties, may work with the Potential Bidder in an effort to cure any defects in the Bid and to cause such Bid to become a Qualified Bid prior to the commencement of the Auction (as defined below). Each DIP Lender and Prepetition Secured Party shall be deemed a Qualified Bidder and shall be allowed to participate in the Auction without the need to submit a Qualified Bid.

21. The Debtors, in consultation with the Notice Parties, shall select a Qualified Bid and Qualified Bidder to serve as the Stalking Horse Bid (defined below) and Stalking Horse Bidder on or before September 10, 2021 (the "**Stalking Horse Designation Deadline**").

## C. Submission of Bids

22. A Potential Bidder must deliver written copies of its Bid and all supporting documents and information, by mail, facsimile, or email, prior to the Bid Deadline to: (i) counsel to the Debtors, Baker & Hostetler, LLP, 200 SunTrust Center, Suite 2300, 200 South Orange Avenue, Orlando, Florida 32801, Attn: Elizabeth A. Green (egreen@bakerlaw.com), and 45 Rockefeller Plaza, New York, New York 10111, Attn: Jorian L. Rose (jrose@bakerlaw.com); and (ii) counsel for the Official Committee of Unsecured Creditors (the "**Committee**"), if any. The Potential Bidder must deliver the proposed Bid, and all supporting documents and information, such that the Bid and related documents and information are actually received by the aforementioned parties no later than the Bid Deadline.

23. As soon as reasonably practicable following receipt, the Debtors shall provide summaries of the materials terms of each Bid, which summaries shall be treated as confidential, "Professionals' Eyes Only" (the "**PEO Information**"), to the following professionals: (i) counsel to the DIP Agent, Gray Reed, 1300 Post Oak Blvd, Suite 2000, Houston, Texas 77056, Attention:

Jason S. Brookner (jbrookner@grayreed.com) and Lydia R. Webb (lwebb@grayreed.com); (ii) counsel to Goldman Sachs Bank USA, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006, Attn: Sean A. O'Neal (soneal@cgsh.com) and Jane VanLare (jvanlare@cgsh.com); (iii) counsel to J. Aron & Company LLC, Baker Botts L.L.P., 30 Rockefeller Plaza, New York, NY 10112, Attention: Robin Spigel (robin.spigel@bakerbotts.com) and Chris Newcomb (chris.newcomb@bakerbotts.com); and (iv) counsel to the Ad Hoc Term Lender Group, Akin Gump Strauss Hauer & Feld LLP, 2001 K. Street N.W., Washington, DC 20006, Attention: Scott Alberino (salberino@akingump.com) and Kevin Eide (keide@akingump.com) (collectively, the "**Lender Advisors**").  Lender Advisors may share PEO Information with third-party professionals retained by their respective clients, including, without limitation, any financial advisors or brokers; *provided, however,* that any recipient of any PEO Information, whether directly or indirectly, shall agree to maintain the confidentiality of the PEO Information and refrain from sharing or disclosing any PEO Information with or to their respective clients, including the DIP Agent, DIP Lenders, J. Aron, and Prepetition Secured Parties, or any other individual or entity; *provided, further*, that the Lender Advisors and any such third-party advisors shall be permitted to advise their respective clients that they are in receipt of such PEO Information and provide summaries or analyses to their respective clients that do not disclose PEO Information.  The use and dissemination of PEO Information is subject to the further provisions set forth in Paragraph 51, *infra*.  The obligation to maintain the confidentiality of any PEO Information shall terminate upon such information becoming known to all Potential Bidders, generally available to the public, or, solely with respect to the respective clients of the Lender Advisors, upon the Credit Bid Designation Deadline, in the event that such clients elect not to submit a credit bid.

### D.     Access to Due Diligence Materials

24.     The Debtors shall establish a digital data room (the "**Data Room**") for purposes of maintaining and providing Potential Bidders access to information regarding the Debtors and the Assets for purposes of conducting due diligence.  To the extent not already established, the Debtors shall establish a Data Room as soon as reasonably practicable after entry of the Bidding Procedures Order, but in no event later than August 6, 2021; *provided, however*, that the Debtors reserve the right to add or remove materials from the Data Room at any time.  The Debtors shall be authorized to retain and compensate in the ordinary course of business one or more individuals or entities to assist in the creation and/or maintenance of the Data Room; *provided, however,* that any compensation shall be subject to the Budget (as defined in the Interim DIP Order), terms of the Interim DIP Order, and, with respect to professionals, the requirements of the Bankruptcy Code.

25.     Upon delivery of the Preliminary Bid Documents, any Potential Bidder that wishes to conduct due diligence on the Assets may be granted access to the Data Room.  The due diligence period for Potential Bidders will end one (1) day prior to the Bid Deadline.

26.     The Debtors, along with their advisors, shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders and provide each Potential Bidder reasonable due diligence information, as requested by such Potential Bidder in writing as soon as reasonably practicable after such request; *provided, however*, the Debtors may decline to provide such information to Potential Bidders who the Debtors, in their reasonable business judgment (in consultation with the Notice Parties), determine do not intend in good faith to, or do not have the capacity to, consummate the purchase of any or all of the Assets or seek access to the Data Room and information contained therein for any improper purpose.

27.     Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors, including, without limitation, information regarding such Potential Bidder's financial wherewithal to consummate and perform obligations in connection with the Sale.  If a Potential Bidder fails to comply with any such request(s), the Debtors may, in their discretion, in consultation with the Notice Parties, disqualify the Potential Bidder and/or the subject Bid and deny or terminate access to the Data Room.

**E.     "As Is, Where Is"**

28.     The Sale of any Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or Estates, except to the extent set forth in the asset purchase agreement between the Debtors and a Winning Bidder, the assignment and bill of sale, if any, delivered pursuant to such asset purchase agreement, or the order approving the Sale of the Assets by the Debtors to the Winning Bidder. Except as may be provided in the subject asset purchase agreement, all of the Debtors' rights, title, and interest in and to the Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interest thereon, but subject in all respects to J. Aron's right to set off and net against any obligations owed by the Debtors to J. Aron under the J. Aron Transaction Documents (as defined in the Interim DIP Order) (collectively, the "**Interests**"), with such Interests attaching to the proceeds of the Sale of the Assets, with the same validity and priority as existed immediately prior to such Sale.

29.     Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the Assets prior to making its Bid, that it has relied solely upon its independent review, investigation and/or inspection of any documents or information in making its Bid, and that it did not rely upon any written or oral statements,

representations, promises, warranties or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Assets or the completeness of any information provided in connection with the bidding process, in each case except as expressly stated in any executed asset purchase agreement.

**F.     Designation of a Stalking Horse Bidder**

30.     The Debtors, in consultation with the Lender Advisors, shall prepare a summary of the highest and best Bid(s) for all or substantially all Asset and/or the highest and best Piecemeal Bid(s) (the "**Bid Summary**").  The Debtors shall upload the Bid Summary to the Data Room no later than September 7, 2021 (the "**Bid Summary Deadline**"), which shall be deemed to make such information "generally available to all potential bidders" for purposes of Paragraph 33 (soon to be Paragraph 37) of the Complex Rules.

31.     On or before September 10, 2021, the Debtors, in consultation with the Notice Parties, may designate one or more Qualified Bidders as the stalking horse bidder(s) (the "**Stalking Horse Bidder**") and one or more Qualified Bids as the stalking horse bid(s) (the "**Stalking Horse Bid**") with respect to a sale of all or substantially all the Assets of the Debtors.  The Debtors shall not designate any Qualified Bid as a Stalking Horse Bid unless such Bid is reasonably acceptable to each of the Prepetition Secured Parties.

32.     On or before September 13, 2021, if the Debtors have designated a Stalking Horse Bidder, the Debtors shall file a Notice of Designation of Stalking Horse Bidder (the "**Stalking Horse Notice**") and serve the Stalking Horse Notice on all interested parties, including any Potential Bidders and counterparties to any Executory Contracts identified as Purchased Contracts (defined below) in the Stalking Horse Bid or Stalking Horse APA (defined below).  The Stalking Horse Notice shall (a) identify the Stalking Horse Bidder, (b) provide a summary of the Stalking

18

Horse Bid, (c) outline any and all proposed Bid Protections, which may include the payment of a break-up fee and any other appropriate or customary protections, *provided* that the aggregate amount of the Bid Protections that may be paid to any or all Stalking Horse Bidders shall not exceed three percent (3%) of the proposed purchase price and that any Bid Protections shall only be payable upon the closing of and out of the proceeds of a sale transaction, and (d) provide a copy or the means of accessing a digital copy of the asset purchase agreement for the Stalking Horse Bid (the "**Stalking Horse APA**") and a redline marked against the APA.  The Debtors may modify the terms of the Bidding Procedures[7] (excluding the requirements set forth in Paragraph 19 of this Motion, which modifications thereto shall require the consent of the DIP Agent and each of the Prepetition Secured Parties) through the Stalking Horse Notice, in consultation with the Notice Parties.

33.     Any interested parties shall have four (4) days from the date of the Stalking Horse Notice to file any objections to the proposed Bid Protections for the Stalking Horse Bid or any amendments to the Bidding Procedures.  The failure to file a timely objection shall be deemed to be a waiver of any such objections and consent to the approval of the Bid Protections and amended Bidding Procedures.  If an objection is timely filed, the Debtors shall notice a hearing before the Court to consider the objection(s) on an emergency basis; *provided, however,* that the Bidding Procedures will be deemed approved regardless of whether or not the Auction occurs prior to the resolution of any objection to the Bid Protections or amended Bidding Procedures.  Interested parties shall be deemed to consent to the expedited and final resolution of any such objections by the Court.  The filing or pendency of any objection(s) shall not alter any dates or deadlines

---

[7] Unless otherwise stated, "Bidding Procedures" includes the Bidding Procedures, the procedures governing any Auction (the "**Auction Procedures**"), including the Open Auction Procedures, and the Assumption and Assignment Procedures.

established under the Bidding Procedures or affect the binding nature of the Stalking Horse Bid or any other Bids.

**G.      Credit Bidding**

34.      In accordance with Paragraphs 9(e) and 29 of the Interim DIP Order, and, to the extent applicable, the Final DIP Order, when entered, the DIP Lenders (as defined in the Interim DIP Order) and the Prepetition Secured Parties may credit bid the full amount of the DIP Obligations (as defined in the Interim DIP Order) or the Prepetition Secured Obligations (as defined in the Interim DIP Order), respectively and as applicable, to acquire any or all Assets subject to the parties' respective security interests (other than any collateral in respect of the J. Aron Obligations),[8] on a dollar-for-dollar basis, as provided in Section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing such credit bid and whether any Sale is (a) pursuant to Section 363 of the Bankruptcy Code, (b) pursuant to a chapter 11 plan, or (c) by a chapter 7 trustee.

35.      Notwithstanding anything to the contrary contained herein, the Prepetition Secured Parties shall have the right to credit bid all or any portion of the aggregate amount of their applicable outstanding Prepetition Secured Obligations pursuant to section 363(k) of the Bankruptcy Code, and any such credit bid, whether submitted by a Prepetition Secured Party or a new entity formed by such Prepetition Secured Party, will be considered a Qualified Bid to the extent such bid is received by the deadline to submit a credit bid and complies with section 363(k) of the Bankruptcy Code; *provided* that a credit bid shall not constitute a Qualified Bid if the bid does not include a cash component sufficient to pay in full, in cash, all claims for which there are valid, perfected, and unavoidable liens on any assets included in such Bid or Piecemeal Bid that

---

[8] For the avoidance of doubt, the IFF Property shall not be the subject of any sale pursuant to this Motion or the Bidding Procedures.

are senior in priority, including a priority in payment pursuant to the Intercreditor Agreement (as defined in the Interim DIP Order), to those of the party seeking to credit bid (unless such Prepetition Secured Party consents to alternative treatment).  For the avoidance of doubt, any credit bid by a DIP Lender of the DIP Obligations shall not constitute a Qualified Bid if the bid does not include a cash component sufficient to pay in full, in cash, all claims for which there are valid, perfected, and unavoidable liens on any assets included in such Bid or Piecemeal Bid that are senior in priority to the DIP Lender(s) seeking to credit bid (unless such Prepetition Secured Party consents to alternative treatment).

36.     If the DIP Lenders and/or any Prepetition Secured Party intends to credit bid for any of the Assets, such parties shall notify the Debtors, the Office of the United States Trustee for the Southern District of Texas ("**U.S. Trustee**"), and the other Notice Parties of their intention to credit bid no later than September 17, 2021 (the "**Credit Bid Designation Deadline**").  To the extent required by Paragraph 33 (soon to be Paragraph 37) of the Complex Rules, any entity that intends to submit a Bid for any or all of the Assets shall waive the right to receive (i) information that is not generally available to all Potential Bidders and (ii) any notices or consultation rights as Notice Parties under the Bidding Procedures or otherwise (the "**Consultation Rights**").

## H.     The Auction

37.     If the Debtors receive one or more Qualified Bids from Qualified Bidders by the Bid Deadline, in addition to the Stalking Horse Bid, an Auction with respect to the sale of the subject Assets shall take place on September 22, 2021, at 10:00 a.m. (prevailing Central Time) (the "**Auction Date**") at (a) the offices of Baker & Hostetler, LLP, located at 811 Main Street, Suite 1100, Houston, Texas 77002 or (b) via an virtual platform, such as Zoom or GoToMeeting, as the Debtors designate.  No later than forty-eight (48) hours prior to the Auction Date, the

Debtors shall provide notice of the Auction location and, if via a virtual platform, the credentials required to access such platform, to all Qualified Bidders, the Notice Parties, and the U.S. Trustee.

38.     If the Stalking Horse Bid is the only Qualified Bid the Debtors receive by the Bid Deadline, the Debtors reserve the right to cancel the Auction.  In such case, if cancelled, the Stalking Horse Bid and Stalking Horse Bidder shall be automatically designated the Winning Bid and Winning Bidder effective as of the Bid Deadline.

39.     If the Debtors do not receive any Qualified Bids by the Bid Deadline, the Debtors may elect to hold an open auction for the Assets, or any of them (an "**Open Auction**") on the Auction Date, subject to the agreement of the DIP Agent and Prepetition Secured Parties.  If the parties agree to hold an Open Auction, the Debtors shall provide notice to the Court, the U.S. Trustee, the Notice Parties, and any and all Potential Bidders that executed a Confidentiality Agreement of the Open Auction (the "**Open Auction Notice**").  The Open Auction Notice shall identify the procedures applicable to the Open Auction, including, without limitation, any deposits required to participate in the Open Auction (the "**Open Auction Procedures**").  The Debtors shall prepare the Open Auction Procedures in consultation with the Notice Parties and U.S. Trustee. Notwithstanding anything in the Motion, Bidding Procedures or Open Auction Procedures to the contrary, the DIP Lenders and Prepetition Secured Parties will be entitled to credit bid in any Open Auction and shall be deemed to be Qualified Bidders for purposes of any Open Auction.

40.     Unless modified by any Open Auction Procedures, the following rules shall apply to any Auction:

      a.     only Qualified Bidders shall be entitled to make a bid at and otherwise participate in the Auction;

      b.     each Qualified Bidder shall appear in person, or in the event of a virtual auction, appear virtually, or have an authorized representative appear on their behalf, *provided* the authorized representative has the authority to bind

the Qualified Bidder to the terms of any bid at the Auction without further or additional approval or authorization;

c.     each Qualified Bidder participating in the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale;

d.     the Debtors, in their business judgment and in consultation with the Notice Parties, shall select the number of Qualified Bidders participating in the Auction and will conduct the Auction in the manner that they determine will best promote the goals of the bidding process and will achieve the maximum value for the Assets;

e.     the Stalking Horse Bid shall constitute the opening bid at the Auction (the "**Opening Bid**") for the Assets subject to the Stalking Horse APA and the minimum overbid at the Auction shall be an amount equal to the total approved Bid Protections provided under the Stalking Horse APA *plus* $1,000,000, with each successive bid being in increments of at least $1,000,000 higher than the preceding bid; *provided, however*, if the Stalking Horse Bids constitute Piecemeal Bids, the minimum overbids and bid increments shall be specified in the Stalking Horse Notices;

f.     the Stalking Horse Bidder may not use the amount of approved Bid Protections as consideration under any bid during the Auction; *provided, however*, that the Debtors may consider the amount of approved Bid Protections in evaluating the highest and best Bid for purposes of designating the Winning Bid or Back-up Bid;

g.     the Debtors, in consultation with the Notice Parties, may, at any point during the Auction, modify the bid increment amounts;

h.     the Debtors, in consultation with the Notice Parties, may continue the Auction from time to time, adjourn the Auction at any time, and re-open the Auction at any time prior to the commencement of the Sale Hearing; and

i.     bidding at the Auction will be transcribed to ensure an accurate recording of the bidding.

41.     At the conclusion of the Auction, the Debtors, in consultation with the Notice Parties, shall select and identify the Winning Bid and the Winning Bidder.  There may be more than one Winning Bid and Winning Bidder if individual Piecemeal Bids are determined to be Qualified Bids.  The Debtors, in consultation with the Notice Parties, shall also select and identify the entity presenting the next highest and best bid (the "**Back-up Bid**") and the entity presenting

same (the "**Back-up Bidder**").  At the Sale Hearing (as defined below), the Debtors shall present the Winning Bid and Back-up Bid to the Court for approval.  The Debtors' presentation of the Winning Bid to the Court for approval does not constitute the Debtors' acceptance of such Winning Bid.  The Debtors shall have accepted a Winning Bid only when the Court has entered an order approving such bid and the Sale of the Asset subject thereto.

42.     Notwithstanding the foregoing, the Debtors reserve all rights to terminate the bidding process at any time if the Debtors, consistent with their fiduciary duties and business judgment, and in consultation with the Notice Parties, determine that the bidding process will not maximize the value of the Assets.  Without limiting the generality of the foregoing, the Debtors, in consultation with the Notice Parties, may reject at any time before entry of a Sale Order approving such bid, any Bid that, in the Debtors' discretion, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors, their Estates and creditors.

43.     If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when: (i) such bid is declared the Winning Bid at the conclusion of the Auction; (ii) the Winning Bidder shall have paid an additional deposit which, when added to the initial deposit, equals fifteen percent (15%) of the Winning Bid (the "**Additional Deposit**"); *provided* that to the extent the Winning Bid is a credit bid submitted by a DIP Lender or Prepetition Secured Party, no Additional Deposit shall be required; (iii) definitive documentation has been executed in respect thereof; and (iv) the Court has entered an order approving such bid and the Sale of the Assets subject thereto.  The Winning Bidder shall make the Additional Deposit into the Escrow Account within one (1) business day after the conclusion of the Auction.  Acceptance by the Debtors of the Winning Bid is conditioned upon entry of a Sale Order approving such Winning Bid.

44.     As soon as practicable following the conclusion of the Auction, the Debtors shall file a notice designating the Winning Bid and Winning Bidder, as well as the Back-up Bid and Back-up Bidder (the "**Designation of Winning Bid**"), and serve the Designation of Winning Bid on all interested parties, including, without limitation, all counterparties to any Purchased Contract(s).  The Designation of Winning Bid shall: (i) identify the Winning Bidder and Back-up Bidder; (ii) provide a summary of the Winning Bid and Back-up Bid; (iii) if the Winning Bidder is not the Stalking Horse Bidder, provide a copy or the means of accessing a digital copy of the asset purchase agreement(s) for the Winning Bid(s) (the "**Modified APA(s)**") and a redline marked against the Stalking Horse APA; (iv) identify all Purchased Contracts designated by the Winning Bidder or Back-up Bidder; (v) identify the Cure Amount, if any, the Debtors estimate is required to assume and assign each Purchased Contract in compliance with Section 365(b) and 365(f)(2) of the Bankruptcy Code; and (vi) contain a statement as to the Winning Bidder's and Back-up Bidder's ability to perform the Debtors' obligations under the subject Purchased Contracts.  The Debtors reserve the right to amend the Designation of Winning Bid to identify additional Executory Contracts up to six (6) days before the Sale Hearing (defined below) and to remove any Executory Contracts up to the Closing Date (defined below).  Simultaneously with the filing of the Designation of Winning Bid, the Debtors shall file a proposed Sale Order and any supplemental filings related to the Designation of Winning Bid or approval of the proposed Sale pursuant thereto.

45.     In the event that the Winning Bidder fails to pay the Additional Deposit or otherwise comply with its obligations as the Winning Bidder, the Qualified Bidder with the Back-up Bid shall be declared the Winning Bid and Winning Bidder without further order of the Court. If the Winning Bid is a Piecemeal Bid (the "**Winning Piecemeal Bid**"), the bidder with the next

highest or best bid that is not entitled to the same reductions to the purchase price shall be deemed the Winning Bid and Winning Bidder without further order of the Court.

**I.      Sale Hearing**

46.      The Debtors shall schedule a hearing to approve the Sale (the "**Sale Hearing**") pursuant to the Stalking Horse APA or Modified APA(s), as applicable, as soon as practicable, but in no event later than October 14, 2021.  At the Sale Hearing, subject to the Bidding Procedures and result of the Auction, if any, the Debtors will request entry of the Sale Order that will, *inter alia*, approve (i) the Sale of the Assets in accordance with the terms of the Stalking Horse APA or Modified APA(s), as applicable, (ii) the assumption and assignment of the Purchased Contracts (defined below), and (iii) any further or additional relief deemed necessary to effectuate the proposed Sale transaction.  Objections, if any, to a proposed Sale transaction, other than objections to the assumption and assignment of Executory Contracts (a "**Sale Objection**"), must be filed and served on counsel for the Debtors, the U.S. Trustee, and the Notice Parties no later than October 4, 2021, at 5:00 p.m. (prevailing Central time) (the "**Sale Objection Deadline**").

**J.      Return of Deposit**

47.      Within five (5) business days after the closing of the Sale to the Winning Bidder ("**Closing**"), the deposits of all unsuccessful bidders shall be refunded, except for any deposits forfeited by a Winning Bidder under the Bidding Procedures.  In the event a dispute arises about whether a deposit is refundable or non-refundable, the deposit shall remain in the Escrow Account pending a resolution of the dispute by the Court.  In presenting a Bid, any and all Potential Bidders, including Qualified Bidders, Back-up Bidder(s), and Winning Bidder(s), shall be deemed to consent to the jurisdiction and final adjudication of any and all matters related to the Bid(s) by the Court.

## K.     Failure to Close

48.     The transaction evidenced by the Winning Bid shall close not later than ten (10) days after entry the Sale Order, but in no event later than November 1, 2021, at 5:00 p.m. (prevailing Central time) (the "**Closing Date**"), unless the Closing Date is extended in accordance with the Bidding Procedures, at which time the Winning Bidder shall pay the balance of the Winning Bid (the Winning Bid amount less the deposit) into the Escrow Account.  In the event a declared Winning Bidder fails to timely perform any of its obligations as set forth above or pursuant to the approved transaction documents:

a.     The declared Winning Bidder shall forfeit all deposits made without regard to the Debtors' ultimate damages occasioned by such failure; such deposits shall be applied to the Debtors' damages, if any, and shall not constitute liquidated damages; and, notwithstanding the foregoing, the Debtors and the Estates shall retain all other rights, remedies, claims, counterclaims, and defenses as to the Winning Bidder, including the right to seek equitable or injunctive relief.

b.     Each Back-up Bidder shall keep its final and highest bid open pending a closing of a transaction of the Winning Bid.  In the event that a transaction of the Winning Bid is not consummated by the Closing Date (unless the Closing Date is extended), the Back-up Bidder with the Back-up Bid shall be deemed the Winning Bidder without further order of the Court, and such bidder shall be required to close the transaction contemplated in its Back-up Bid within seven (7) days of being deemed the Winning Bidder, but in no event later than November 8, 2021, at 5:00 p.m. (prevailing Central time), unless such deadline is extended in accordance with the Bidding Procedures.  Any Back-up Bidder declared a Winning Bidder who fails to timely perform shall forfeit all deposits made without regard to the Debtors' ultimate damages occasioned by such failure; such deposits shall be applied to the Debtors' damages, if any, and shall not constitute liquidated damages; and, notwithstanding the foregoing, the Debtors and the Estates shall retain all other rights, remedies, claims, counterclaims, and defenses with respect to such bidder, including the right to seek equitable or injunctive relief.

c.     The Debtors, in consultation with the Notice Parties and agreement of the DIP Agent and Prepetition Secured Parties, may grant any declared Winning Bidder additional time to perform and, to the extent necessary, extend the Closing Date.

27

**L.     Fees and Expenses**

49.     Any and all bidders submitting Bids shall bear their own fees, costs, and expenses in connection with the proposed sale, whether or not such sale is ultimately approved, except to the extent reimbursement of expenses constitutes an approved Bid Protection under a Stalking Horse APA.  Further, by submitting a Bid, a Potential Bidder shall be deemed to waive its right to pursue a substantial contribution claim under Section 503 of the Bankruptcy Code or other priority unsecured or administrative claims in any way related to the submission of its Bid or the Bidding Procedures.

**M.     Assumption and Assignment of Executory Contracts**

50.     The Debtors also seek approval of certain procedures to facility the fair and orderly assumption and assignment of certain Executory Contracts designated by the Winning Bidder following the Auction, if any, pursuant to Section 365(f) of the Bankruptcy Code (collectively, the "**Purchased Contracts**") in connection with the Sale.  Due to the nature of the bidding process, the Debtors are unable to currently identify the Purchased Contracts, or any of them, that will require assumption and assignment to the Winning Bidder.  As such, the Debtors propose certain procedures (the "**Assumption and Assignment Procedures**") by which counterparties to potential Purchased Contracts can ascertain the proposed cure payment and adequate assurance of future performance and, if deemed prudent, object to the potential assumption or assumption and assignment of the subject Purchased Contracts.  The proposed Assumption and Assignment Procedures are as follows:

> a.      As set forth above, the Debtors shall file the Stalking Horse Notice with the Court and serve the same on all known counterparties to the Executory Contracts designated therein.  The Stalking Horse Notice shall contain the following: (i) the executory contracts and unexpired leases that may be assumed and assigned to a potential purchaser; (ii) the name and address of the known contract counterparties thereto; (iii) the amount, if any,

determined by the Debtors to be necessary to be paid to cure any existing default in accordance with Section 365(b) and 365(f)(2) of the Bankruptcy Code (the "**Cure Amount**"); and (iv) the deadline by which any counterparties must file an objection to the proposed assumption and assignment of any designated contract; *provided, however,* that the inclusion of any executory contract or unexpired lease on the Stalking Horse Notice shall not constitute an admission that the subject contract(s) or lease(s) are executory contract(s) or unexpired lease(s) for purposes of Section 365 of the Bankruptcy Code or an agreement to assume or assign such Executory Contracts.

b.    The Debtors may (i) amend the Stalking Horse Notice or Designation of Winning Bid at any time prior to the date that is six (6) days before Sale Hearing to add or remove any Executory Contracts, subject to the right of any counterparties to newly identified Executory Contract(s) to object to the proposed cure payment, adequate assurance, or otherwise object to the assumption and assignment of the subject Executory Contracts, and (ii) amend the Stalking Horse Notice or Designation of Winning Bid to remove any previously-designated Executory Contracts at any time prior to the Closing Date, with such removal being effective immediately without further order of the Court.  Any amendments to the Stalking Horse Notice or Designation of Winning Bid shall comply with the requirements of Paragraph 50.a; *provided, however,* that such amendments need not include information related to any previously-designated Executory Contracts unaffected by the amendment.

c.    Each Potential Bidder shall identify in its Bid any and all Executory Contracts the Potential Bidder may wish to designate for assumption and assignment to the Potential Bidder in any Sale; *provided, however*, the Winning Bidder(s) may amend such designation, consistent with the notice requirements of Paragraph 50.b.

d.    As provided in Paragraph 44, the Debtors shall file and serve the Designation of Winning Bid on each counterparty to any Purchased Contract (and its counsel, if known) that is designated for assumption and assignment under the Winning Bid, among other parties.  Such Designation of Winning Bid shall: (i) identify the Winning Bidder and Back-up Bidder; (ii) identify all Purchased Contracts designated by the Winning Bidder, subject to the right to amend such designation; (iii) identify the Cure Amount, if any, the Debtors estimate is required to comply with Section 365(b) and 365(f)(2) of the Bankruptcy Code; and (iv) contain a statement as to the Winning Bidder's ability to perform the Debtors' obligations under the subject Purchased Contracts.  The Debtors may amend or supplement the Contract Notice to add or remove any Executory Contracts by filing with the Court and serving on the affected counterparties to the Executory Contracts an amended Designation of Winning Bid in accordance with these Bidding Procedures.

e.   All objections to the proposed assumption and assignment of any Purchased Contracts must: (i) be filed with the Court on or before October 18, 2021, at 12:00 p.m. (prevailing Central time) (the "**Contract Assumption Objection Deadline**") and served on the Debtors, the U.S. Trustee and Notice Parties; (ii) identify the Purchased Contract(s) to which the objector is party; (iii) describe with particularity any cure the objector contends is required under Section 365 of the Bankruptcy Code (the "**Cure Claim**"); (iv) identify the bases of the alleged Cure Claim under the proposed Purchased Contract; and (v) attach all documents supporting or evidencing the Cure Claim.

f.   If no objection is filed by the Contract Assumption Objection Deadline, the Cure Amount set forth in the Designation of Winning Bid Notice, or any amended version thereof, as applicable, shall control and any counterparties to the subject Purchased Contract(s) shall be deemed to waive and shall be forever barred from asserting in any other claim or objection under Section 365 of the Bankruptcy Code, or otherwise, including, without limitation, any objection to the assignability of any of the purchased contracts, other than an objection to adequate assurance of performance under the Purchased Contracts pursuant to Section 365(b)(1)(C) of the Bankruptcy Code.

g.   To the extent any Cure Claim remains unresolved as of the Sale Hearing, such dispute shall be presented to the Court at the Sale Hearing, or such later date and time as the Debtors, the Winning Bidder, and the objecting party may agree or the Court may order, *provided* that the pendency of such dispute shall not affect in any way the closing of any proposed Sale or the effectiveness of any assumption and assignment of the subject Executory Contract under the Winning Bid.

## N.   Cooperation and Information Sharing

51.   The Debtors and their advisors shall consult regularly with the Lender Advisors and third-party professionals retained by their respective clients, including, without limitation, any financial advisors or brokers, regarding the status of the Sale process and any potential Bids and provide any related information that may be reasonably requested by the Lender Advisors and such third-party professionals.  To the extent required by Paragraph 33 (soon to be Paragraph 37) of the Complex Rules, any information provided to the Lender Advisors or such third-party professionals shall constitute PEO Information subject to the restriction set forth in Paragraph 23, *supra; provided, however*, that any PEO Information that becomes known to all Potential Bidders or

publicly available, other than as a result of a violation of the restrictions on the use and dissemination of PEO Information, shall no longer be subject to the restrictions provided in the Bidding Procedures.  Any DIP Lender or Prepetition Secured Party that elects not to credit bid by the Credit Bid Designation Deadline shall have the right to any and all PEO Information, Consultation Rights, and other information and documentation pertaining to the marketing or Sale of any Assets, including, without limitation, any Bids and related documents, under the Bidding Procedures without restriction, except for a prohibition against sharing such information with any Potential Bidders that do not have such information.

### The Bidding Procedures are Reasonable and Should be Approved

52.     Pursuant to Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course of business may be by private sale or auction.  Fed. R. Bankr. P. 6004(f)(1).  The paramount goal of any proposed sale of property of a debtor is to maximize the value received by the estate. *See, e.g., Official Committee of Subordinated Bondholders v. Integrated Resources. Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 659 ("It is a well-establish principal of bankruptcy law that the Debtors' duty with respect to [Section 363] sales is to obtain the highest price or greatest overall benefit possible for the estate"), *quoting Cello Bag Co. v. Champion Int'l Corp. (In re Atlanta Packaging Prods., Inc.)*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988).

53.     To that end, debtors are granted significant latitude in devising and implementing bidding and sale procedures under Section 363 of the Bankruptcy Code.  Indeed, bankruptcy courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the bid procedures to be used in selling assets of the estate.  *See, e.g., In re Integrated Resources, Inc.*, 147 B.R. at 656-57 (noting that overbid procedures and break-up fee arrangements that have been negotiated by a debtor are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"); *See In re*

31

*ASARCO, L.L.C.*, 650 F.3d at 601 ("The business judgment standard in section 363 is flexible and encourages discretion."); *see also GBL Holding Co. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254 (N.D. Tex. 2005) ("Great judicial deference is given to the Trustee's exercise of business judgment."), (citing *In re Gulf States Steel, Inc. of Ala.*, 285 B.R. 497, 516 (Bankr. N.D. Ala.2002)); *see also In re W.A. Mallory Co., Inc.*, 214 B.R. 834, 836–37 (Bankr. E.D. Va. 1997) ("[G]reat deference is given to a business in determining its own best interests."); *see also In re Global Crossing, Ltd.*, 295 B.R. 726, 744 n. 58 (Bankr. S.D.N.Y. 2003) ("[T]he Court does not believe that it is appropriate for a bankruptcy court to substitute its own business judgment for that of the [d]ebtors and their advisors….").

54.     The Debtors submit that the proposed Bidding Procedures are supported by their sound business judgment and serve the best interests of the Estates and their creditors.  Under the Interim DIP Order, the Debtors must consummate a sale of all or substantially all of the Debtors' assets within one hundred twenty (120) days after the Petition Date.  To do so, the Debtors, in consultation with the Notice Parties, have devised the proposed Bidding Procedures.  The Bidding Procedures provide a framework for a fair and orderly marketing and sale of the Assets and ensure the participation of *bona fide* bidders with the ability and desire to consummate a proposed transaction.  The Bidding Procedures also provide flexibility to maximize the opportunities and offers available to the Debtors, including the ability to entertain proposals for any and all Assets as well as only certain Assets of the Debtors (i.e., Piecemeal Bids).

55.     Further, the Bidding Procedures incorporate fair and reasonable procedures for the identification of Executory Contracts subject to any potential sale and the resolution of any disputes pertaining to the assumption and assignment of any Purchased Contracts—while balancing such protections against the need to maintain an expedited timeline for consummation

of a Sale under the Interim DIP Order and DIP Loan Documents.   Moreover, the Bidding Procedures are designed to prevent collusion among Potential Bidders.   Indeed, the Bidding Procedures require each Qualified Bidder participating in the Auction to confirm that it has not engaged in any collusion with respect to the bidding or the Sale and, thus, Section 363(n) of the Bankruptcy Code is inapplicable to any sale of the Debtors' Assets under the Bidding Procedures. *See* 11 U.S.C. § 363(n).

56.     Based on the foregoing, the Debtors respectfully request that the Court find that the Bidding Procedures are supported by the sound business judgment of the Debtors and comport with the milestones under the Interim DIP Order, and approve the proposed Bidding Procedures.

### The Sale is Supported by Sound Business Judgement and Should be Approved

57.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Although Section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, bankruptcy courts routinely authorize sales of estate assets outside the ordinary course of business if such sale is based upon the sound business judgment of the debtor. *See Asarco, Inc. v. Elliott Management (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011), (quoting *The Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986)) ("'[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.").

4830-5234-0722.16

58.    "The business judgment standard in section 363 [of the Bankruptcy Code] is flexible and encourages discretion.  'Whether the proffered business justification is sufficient depends on the case.... [T]he bankruptcy judge "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike."'"  *In re ASARCO, L.L.C.*, 650 F.3d at 601, *quoting In re Cont'l Air Lines, Inc.*, 780 F.2d at 1226 (*quoting In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir.1983)). Notwithstanding, a debtors' decision to sell property out of the ordinary course of business enjoys a strong "presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."  *In re Integrated Resources, Inc.*, 147 B.R. at 656.

59.    The Debtors submit that the decision to sell all or substantially all Assets of the Estates is premised upon their sound business judgment.  First and foremost, the sale of all or substantially all assets of the Estates is a condition to the DIP Facility under the terms of the Interim DIP Order and DIP Loan Documents.  The Debtors require the funding under the DIP Facility to idle the Refinery in a safe and responsible manner; accordingly, a sale in accordance with the terms of the Interim DIP Order and DIP Loan Documents is supported by a sound business justification. Notwithstanding the obligations under the DIP Loan Documents, the Debtors lack the necessary funding to redress any issues identified in the audits under the EPA Order and relaunch operations at the Refinery.  As such, the Debtors have concluded that an expeditious sale of the Assets in accordance with the proposed Bidding Procedures serves the best interests of creditors by maximizing the value of the Assets, while minimizing administrative claims through a streamlined sale process.

60.     Based on the foregoing, the Debtors submit that the potential sale of the Assets serves the best interests of the Debtors, the Estates and creditors, and is based upon sound, reasoned and informed business judgment—thereby warranting approval under Section 363 of the Bankruptcy Code.

### Sale of the Assets Free and Clear of all Interests
### Pursuant to Section 363(f) of the Bankruptcy Code is Warranted

61.     The Debtors hereby request authority to sell the Assets of the Estates free and clear of all Interests pursuant to Section 363(f) of the Bankruptcy Code.  Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable non-bankruptcy law permits such a "free and clear" sale; (b) the holder of the interest consents; (c) the interest is a lien and the sales price of the property exceeds the value of all liens on the property; (d) the interest is in *bona fide* dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.  11 U.S.C. § 363(f).  The Court also may authorize the sale of a debtor's assets free and clear of any liens pursuant to Section 105 of the Bankruptcy Code, even if Section 363(f) does not apply.  *See In re Trans World Airlines*, No. 01-0056(PJW), 2001 WL 1820325, at *3 (Bankr. D. Del. Mar. 27, 2001), *aff'd sub nom. In re Trans World Airlines, Inc.*, 322 F.3d 283 (3rd Cir. 2003).

62.     The Debtors submit that the sale of the Assets free and clear of all Interests will satisfy the requirements of Section 363(f) of the Bankruptcy Code.  The Debtors also submit that the service of the Designation of Winning Bid and notice of the Sale Hearing, in accordance with applicable rules and the proposed procedures, will provide creditors and other interested parties sufficient notice of and opportunity to object to the proposed Sale, if deemed warranted, and, thus, support approval of the sale free and clear of any and all Interests.

4830-5234-0722.16

## Purchasers of Assets Should be Entitled to Protections of Section 363(m) of the Bankruptcy Code

63.     Section 363(m) of the Bankruptcy Code provides, in relevant part, that "[t]he reversal or modification on appeal of an authorization under [Section 363(b)] … of a sale or lease of property [of the estate] does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal." *See* 11 U.S.C. § 363(m).  Although the Bankruptcy Code does not define "good-faith purchaser," "[t]he requirement that a purchaser act in good faith . . . speaks to the integrity of [purchaser's] conduct in the course of the sale proceedings."  *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (internal citations omitted); *see Factory Mutual Insurance, Co. v. Panda Energy Int'l, Inc. (In re Hereford Biofuels, L.P.)*, 466 B.R. 841, 860 (Bankr. N.D. Tex. 2012).  "Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders, or an attempt to take grossly unfair advantage of other bidders."  *In re Hereford Biofuels, L.P.*, 466 B.R. at 860.

64.     The Debtors submit that any Bid or asset purchase agreement that results in the Sale of any Assets under the Bidding Procedures will be an arms'-length transaction following a transparent marketing, bid solicitation, and auction processes, and, thus, the Winning Bidder(s) should be entitled to the protections of Section 363(m) of the Bankruptcy Code.

## The Rights of the DIP Lenders and Prepetition Secured Parties to Credit Bid

65.     In accordance with Paragraphs 9(e) and 29 of the Interim DIP Order, the DIP Lenders and the Prepetition Secured Parties may credit bid the full amount of the DIP Obligations or the Prepetition Secured Obligations, respectively and as applicable, to acquire any or all Assets subject to the parties' respective security interests (other than any collateral in respect of the J.

Aron Obligations),[9] on a dollar-for-dollar basis, as provided in Section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing such credit bid and whether any Sale is (a) pursuant to Section 363 of the Bankruptcy Code, (b) pursuant to a chapter 11 plan, or (c) by a chapter 7 trustee.  *See* Docket No. 104, at pp. 44, 66-67.

66.     Section 363(k) of the Bankruptcy Code further supports the rights of the DIP Lenders and Prepetition Secured Parties to credit bid for the Assets, subject to the limitations of the Interim DIP Order and DIP Loan Documents.  Section 363(k) of the Bankruptcy Code provides that "[a]t a sale under section (b) of [Section 363 of the Bankruptcy Code] of property that is subject to a lien that secures an allowed claim, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property."  11 U.S.C. § 363(k).  "It is well settled among district and bankruptcy courts that creditors can bid the full face value of their secured claims under § 363(k) [of the Bankruptcy Code]."  *Cohen v KB Mezzanine Fund II, LP (In re SubMicron Sys. Corp.)*, 432 F.3d 448, 459 (3rd Cir. 2006); *see also RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065 (2012).

67.     Accordingly, to the extent further authorization is required, the Debtors submit that the DIP Lenders and Prepetition Secured Parties should be permitted to credit bid in accordance with the Interim DIP Order and Section 363(k) of the Bankruptcy Code.

**Approval of Reasonable Bid Protections for a Stalking Horse Bidder is Appropriate**

68.     In order to incentivize a Stalking Horse Bidder to enter into a Stalking Horse APA, thereby establishing a base price for the Assets at any Auction, the Debtors may need to offer certain Bid Protections, including, without limitation, break-up fees and expense reimbursement. The terms of any Bid Protections and the justification for the Debtors' need to offer such Bid

---

[9] For the avoidance of doubt, the IFF Property shall not be the subject of any sale pursuant to this Motion or the Bidding Procedures.

Protections shall be detailed in any Stalking Horse Notice and subject to objection and Court approval in accordance with the Bidding Procedures.

69.     The Debtors submit that any proposed Bid Protections will be fair and reasonable under the circumstances.  Any Bid Protections shall be negotiated at arms'-length and in good faith, and the Debtors shall only agree to Bid Protections to the extent deemed necessary to secure a beneficial Stalking Horse Bid.  While subject to further disclosure and objection, courts routinely approve bid protections, including break-up fees, expense reimbursement and other incentives as reasonable and, often, necessary to facilitate the sale of assets in chapter 11 cases.  *See, e.g., In re Acis Capital Mgmt., L.P.*, 604 B.R. 484, 517 (N.D. Tex. 2019) ("Without the Break-Up Fee, the Trustee would have had no ready, willing, and able partner for the proposed Plan. . . ."); *In re Lincolnshire Campus, LLC*, 2010 WL 5269706 at *2 (Bankr. N.D. Tex. July 23, 2010) ("The Break-Up Fee . . . induced the Buyer to submit a bid that will serve as a minimum or floor bid on which the Debtors . . . and other bidders can rely. Accordingly, the Break-Up Fee . . . [is] reasonable and appropriate and represent[s] the best method for maximizing the value for the benefit of the Debtors' estates."); *Reliant Energy Channelview LP v. Kelson Channelview LLC (In re Reliant Energy Channelview LP)*, 594 F.3d 200, 206-07 (3d Cir. 2010); *see also In re Integrated Res., Inc.*, 147 B.R. at 659-660 ("Breakup fees are important tools to encourage bidding and to maximize the value of the debtor's assets . . . . In fact, because the . . . corporation ha[s] a duty to encourage bidding, break-up fees can be necessary to discharge [such] duties to maximize values."); *In re ASARCO, L.L.C.*, 650 F.3d at 603 (affirming a break-up fee that the bankruptcy court found helped to maximize the debtor's estate).

70.     To the extent the Debtors agree to any Bid Protections, the Debtors submit that the approval of the Bid Protections will be warranted under applicable law.  The Debtors reserve the

38

right to supplement the discussion of any Bid Protections and the bases for approving such Bid

Protections in any Stalking Horse Notices.

### Assumption and Assignment of Executory Contracts and Unexpired Leases Should be Authorized under the Bankruptcy Code

71.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in

possession "subject to the court's approval, may assume or reject any executory contract or

[unexpired] lease of the debtor."  11 U.S.C. § 365(a).  The standard governing bankruptcy court

approval of the assumption, rejection, or assumption and assignment of an executory contract or

unexpired lease is whether the debtor's reasonable business judgment supports the assumption,

rejection, or assumption and assignment of the subject contract or lease.  *Richmond Leasing Co.*

*v. Capital Bank, N.A.*, 726 F.2d 1303, 1309 (5th Cir. 1985) ("As long as assumption . . . appears

to enhance a debtor's estate, court approval . . . should only be withheld if the debtor's judgment

is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code.")

(internal quotations omitted).

72.     The assumption and assignment of certain Executory Contracts may be an essential

aspect of the Sale of the Debtors' Assets.  Accordingly, the Debtors submit that the agreement to

assume and assign any Executory Contracts pursuant to the Assumption and Assignment

Procedures is an appropriate exercise of the Debtors' business judgement.  The Debtors further

submit that the notice provisions and objection deadlines for counterparties to Executory Contracts

under the Assumption and Assignment Procedures are reasonable and appropriate, and provide

counterparties an adequate notice and opportunity to object to or seek adequate assurance of future

performance in connection with the assumption and assignment of any Executory Contracts.

73.     If a debtor has exercised sound business judgment in seeking to assume or assign

an executory contract, the court must determine whether the assumption satisfies the requirements

of Section 365(b) of the Bankruptcy Code—namely, whether the debtor or assignee: (a) cures, or provides adequate assurance of promptly curing, prepetition defaults under the subject contract or lease; (b) provides adequate compensation for any pecuniary losses arising therefrom; and (c) provides adequate assurance of future performance by the assignee under the subject agreement.

74.     The Debtors submit that the requirements of Sections 365(b)(1) and 365(f)(2)(A) of the Bankruptcy Code shall be satisfied in accordance with the terms of the Assumption and Assignment Procedures, which provide for the identification and payment of any Cure Amount(s), the provision of adequate assurance of future performance upon selection of the Winning Bidder, and sufficient notice and opportunity to object to the assumption and assignment of any Executory Contracts, which permits counterparties to Executory Contracts an opportunity to raise and, amicably or through the Sale Hearing, resolve any issues pertaining to the assumption and assignment of the subject Executory Contract(s).

75.     Accordingly, the Debtors respectfully request that the Court approve the assumption and assignment of Executory Contracts in accordance with the Bidding Procedures, subject to the rights of any counterparties to object thereto.

**Notice of the Auction and Sale Hearing is Sufficient**

76.     Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide interested parties with 21-days' notice of the Sale Hearing and, pursuant to Bankruptcy Rule 2002(c)(1), such notice must also include the time and place of the Auction, the Sale Hearing and any deadline(s) for filing objections to the requested relief.  The Debtors submit that the notices provided in connection with this Motion and proposed under the Bidding Procedures satisfy the requirements of Bankruptcy Rules 2002(a) and 2002(c)(1) and further or additional notice is not warranted.

**Waiver of Bankruptcy Rules 6004(h) and 6006(d)**

77.     The Debtors hereby request that the Court waive the 14-day stay requirements of Bankruptcy Rules 6004(h) and 6006(d).  The waiver of the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) will allow any Sale to close as soon as possible and, thus, prevent delay in the administration of these Chapter 11 Cases and avoidance of any holding costs associated with such Assets.  Further, a waiver of the 14-day stay may be necessary to comply with the milestones under the Interim DIP Order and DIP Loan Documents and, thus, avoid an event of default that could jeopardize the viability of these Chapter 11 Cases.  Accordingly, the Debtors respectfully submit that a waiver of the 14-day stay contained in Bankruptcy Rules 6004(h) and 6006(d) is appropriate.

**Reservation of Rights**

78.     Nothing contained herein is intended to be or shall be deemed as (a) an admission as to the validity or amount of any claim against the Debtors, (b) a waiver of the Debtors' rights to dispute the validity, amount or priority of any claim against the Debtors, (c) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any applicable non-bankruptcy law; (d) an admission as to whether any contract or lease is an executory contract or unexpired lease within the meaning of Section 365 of the Bankruptcy Code; (e) an agreement to assume, reject, or assume and assign any executory contract or unexpired lease under Section 365 of the Bankruptcy Code; or (f) a waiver of the rights of parties in interest to contest whether any of the interests described herein constitute property of the Debtors' Estates.  The Debtors expressly reserve any and all rights with respect to the foregoing matters.

41

## Request for Emergency Relief

79.     The Debtors respectfully request emergency consideration of this Motion.  Under the terms of the Interim DIP Order, the Debtors must obtain a binding stalking horse bid no later than September 10, 2021, and consummate a sale of all or substantially all Assets of the Estates on or before November 9, 2021.  If heard on regular notice, the Debtors would have less than four (4) weeks to market and solicit bids for the purchase of the Assets, which may significantly limit the potentially interested parties in the acquisition of the Assets—especially given the scale, complexity and expense of the Refinery operations and necessary governmental approvals.  In order to maximize the time to market the Assets and, in so doing, ensure the highest and best purchase price for the Assets, the Debtors respectfully submit that hearing the Motion on an emergency basis is warranted.  Further, hearing the Motion on an emergency basis will not adversely affect any interested parties as (a) the Debtors have consulted with the principal interested parties in preparing the Bidding Procedures and (b) any interested parties may object to any proposed Sale during the Sale Hearing.

80.     Pursuant to Local Rule 9013-1(i), this Motion is verified as to its accuracy Debtors' proposed counsel.

## No Prior Request for Relief

81.     No prior request for the relief sought herein has been made to this Court or any other Court in connection with these Chapter 11 Cases.

## Notice

82.     Notice of this Motion will be given to the following parties: (a) the United States Trustee for the Southern District of Texas; (b) all secured creditors; (c) the Offices of the Attorney General of the State of Texas and the United States Virgin Islands; (d) the thirty (30) largest

consolidated unsecured creditors for the Debtors; (e) the Debtors' identified, interested taxing authorities, including the Internal Revenue Service; (f) the Debtors' identified, interested government and regulatory entities; (g) other interested parties as identified by the Debtors; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002; (i) members of the Committee and their counsel, if known; (j) and such other parties as noted on the certificate of service.  The method of service for each party will be described more fully in the certificate of service prepared by the Debtors' claims and noticing agent. The Debtors respectfully submit that, under the circumstances, such notice is sufficient and that no other or further notice of this Motion is required.

**WHEREFORE**, Debtors respectfully request that this Court (a) enter the Bidding Procedures Order, in substantially the same form as attached hereto as Exhibit A, (b) after a Sale Hearing, enter one or more Sale Orders approving the Sale of Assets to the Winning Bidder(s), and (c) granting such further and additional relief as the Court deems due and proper.

RESPECTFULLY SUBMITTED this 26th day of July, 2021.

43

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
**Jimmy D. Parrish, Esq.**
Fed. ID No. 2687598
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile: 407.841.0168
Email: egreen@bakerlaw.com
      jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
(Admitted Pro Hac Vice)
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com

*Proposed Counsel for the Debtors and Debtors*
*in Possession*

## Certificate of Accuracy

    I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

                    */s/ Elizabeth A. Green*
                    Elizabeth A. Green

## Certificate of Service

    I certify that on July 26, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                    */s/ Elizabeth A. Green*

                    Elizabeth A. Green

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*,**[1] | **CASE NO.: 21-32351** |
| Debtors. | **Jointly Administered** |

**ORDER GRANTING DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF ORDER:
(I) ESTABLISHING BIDDING AND SALE PROCEDURES; (II) APPROVING THE
<u>SALE OF ASSETS; AND (III) GRANTING RELATED RELIEF</u>**

Upon the motion ("**Motion**")[2] of the debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**") for entry of an order (the "**Order**") (i) approving the proposed bidding and sale procedures attached hereto as <u>Appendix A</u> (the "**Bidding Procedures**") for the proposed sale(s) of substantially all assets of the Debtors' bankruptcy estates, (ii) scheduling an auction and final sale hearing for approval of the Sale, and (iii) approving procedures for the assumption and assignment of executory contracts and unexpired leases of the Debtors in connection with the Sale, as more fully set forth in the Motion; finding this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; finding that this matter is a core proceeding pursuant to 28 U.S.C. § 157; finding this Court may enter final orders in this matter consistent with Article III of the United States Constitution; finding that this matter is properly venued in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; finding emergency consideration of the Motion warranted under the circumstances presented; finding notice of the Motion due and proper under the circumstances and in accordance with all

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services,  LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222).  The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

applicable rules and orders, and no further or additional notice of the Motion being warranted; having considered the Motion and all other documents submitted in support of the Motion; and, after due deliberation, finding that the relief requested by and through the Motion, is due and proper and serves the best interests of the Estates and their creditors; and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED:**

1.      The Motion is granted as set forth herein.

2.      All objections to the Motion or entry of this Order, or granting of the relief provided herein, that have not been withdrawn, waived, resolved or settled, are hereby denied and overruled on the merits with prejudice.

3.      The Bidding Procedures, attached hereto as <u>Appendix A</u>, including, without limitation, the procedures for the Auction and the assumption and assignment of Executory Contracts set forth therein, are hereby approved in all respects and shall govern any and all bids and bid proceedings related to the Assets.  The Debtors and their professionals and agents are authorized to take any and all action necessary or appropriate to implement the Bidding Procedures, including, without limitation, engaging individuals or entities on reasonable terms, subject to consultation with the Notice Parties and compliance with the terms of the Interim DIP Order and Budget (as defined in the Interim DIP Order), to assist with the implementation of the Bidding Procedures; *provided, however*, that the engagement or compensation of any professionals shall be subject to compliance with any applicable provisions of the Bankruptcy Code.

4.      If the DIP Lenders and/or any Prepetition Secured Party intends to credit bid for any of the Assets, such parties shall notify the Debtors, U.S. Trustee, and the other Notice Parties of their intention to credit bid no later than **September 17, 2021**.

5.      The deadline for any Potential Bidders to submit a Bid for any or all of the Assets of the Debtors shall be **September 17, 2021, at 5:00 p.m.** (prevailing Central Time).  Bids must be delivered in writing and accompanied by all supporting documents and information, by mail, facsimile, or email, prior to the Bid Deadline to: (i) counsel to the Debtors, Baker & Hostetler, LLP, 200 SunTrust Center, Suite 2300, 200 South Orange Avenue, Orlando, Florida 32801, Attn: Elizabeth A. Green (egreen@bakerlaw.com), and 45 Rockefeller Plaza, New York, New York 10111, Attn: Jorian L. Rose (jrose@bakerlaw.com); and (ii) counsel for the Official Committee of Unsecured Creditors (the "**Committee**"), if any.  The Potential Bidder must deliver the proposed Bid, and all supporting documents and information, such that the Bid and related documents and information are actually received by the aforementioned parties no later than the Bid Deadline.

6.      The Debtors, in consultation with the Lender Advisors, shall prepare a summary of the highest and best Bid(s) for all or substantially all Asset and/or the highest and best Piecemeal Bid(s) (the "**Bid Summary**").  The Debtors shall upload the Bid Summary to the Data Room no later than **September 7, 2021** (the "**Bid Summary Deadline**"), which shall be deemed to make such information "generally available to all potential bidders" for purposes of Paragraph 37 of the Complex Rules.

7.      The Debtors may designate a Stalking Horse Bid and Stalking Horse Bidder on or before **September 10, 2021**.  Designation of a Stalking Horse Bid and Stalking Horse Bidder in accordance with the Bidding Procedures for all or substantially all Assets of the Debtors, or more than one Stalking Horse Bid and Stalking Horse Bidder, if the Assets subject to such Stalking Horse Bids, in the aggregate, constitute all or substantially all Assets of the Debtors, shall satisfy the Debtors' obligation under the Interim DIP Order to "obtain[]…a binding stalking horse bid for the sale of all or substantially all of the Debtors' assets…."  *See* Docket No. 104, at p. 45.  The

3

Debtors shall not designate any Qualified Bid as a Stalking Horse Bid unless such Bid is reasonably acceptable to each of the Prepetition Secured Parties.

8.      If the Debtors designate a Stalking Horse Bidder, the Debtors shall file and serve the Stalking Horse Notice on or before **September 13, 2021**.  The Stalking Horse Notice shall include the following information and disclosures: (a) the identity of the Stalking Horse Bidder(s); (b) a summary of the material terms of the Stalking Horse Bid(s), including, without limitation, the Assets subject thereto, the consideration proposed for the Sale, any proposed Bid Protections and the bases therefor, and any amendments to the Bidding Procedures required under the Stalking Horse Bid(s), (c) outline any and all proposed Bid Protections, which may include the payment of a break-up fee and any other appropriate or customary protections, *provided* that the aggregate amount of the Bid Protections that may be paid to any or all Stalking Horse Bidders shall not exceed three percent (3%) of the proposed purchase price and that any Bid Protections shall only be payable upon the closing of and out of the proceeds of a sale transaction; and (d) the means of obtaining a copy of the Stalking Horse Bid and, if available, the Stalking Horse APA, and a redline marked against the APA; *provided, however*, that the Debtors shall provide copies of the Stalking Horse Bid and Stalking Horse APA to the Court and the U.S. Trustee, regardless of whether the Stalking Horse Bid and Stalking Horse APA are attached to the Stalking Horse Notice, no later than two (2) business days after the filing of the Stalking Horse Notice.

9.      Any objections to the Stalking Horse Notice, including any Bid Protections designated therein, shall be filed on or before **September 17, 2021**.  The failure to file a timely objection shall be deemed to be a waiver of any such objections and consent to the approval of the Bid Protections and amended Bidding Procedures.  If an objection is timely filed, the Debtors shall notice a hearing before the Court to consider the objection(s) on an emergency basis; *provided,*

*however,* that the Bidding Procedures will be deemed approved regardless of whether or not the Auction occurs prior to the resolution of any objection to the Bid Protections or amended Bidding Procedures.  Any objecting parties shall be deemed to have consented to the expedited and final resolution of any such objections by the Court.  The filing or pendency of any objection(s) shall not alter any dates or deadlines established under the Bidding Procedures or affect the binding nature of the Stalking Horse Bid or any other Bids.

10.     The Debtors are hereby authorized to conduct an Auction in accordance with the terms of the Bidding Procedures, including, without limitation, an Open Auction, subject to the agreement of the DIP Agent and Prepetition Secured Parties.  If the Debtors conduct an Auction pursuant to the Bidding Procedures, the Auction shall begin on **September 22, 2021, at 10:00 a.m. (prevailing Central Time)** either (a) at the offices of Baker & Hostetler, LLP, located at 811 Main Street, Suite 1100, Houston, Texas 77002 or (b) via an virtual platform, such as Zoom or GoToMeeting, as the Debtors designate.  No later than forty-eight (48) hours prior to the Auction Date, the Debtors shall provide notice of the Auction location and, if via a virtual platform, the credentials required to access such platform, to all Qualified Bidders, the Notice Parties, and the U.S. Trustee.  The Debtors are authorized to continue the Auction from time to time, adjourn the Auction at any time, and re-open the Auction at any time prior to the deadline to file the Designation of Winning Bidder.

11.     Subject to the provisions of the Bidding Procedures, the Debtors are authorized to select a Winning Bidder following the conclusion of the Auction and execute, deliver, and perform all obligations of the Debtors under the Stalking Horse APA or asset purchase agreement of the Winning Bidder, and all other transactional documents related thereto, pending the Sale Hearing. The Debtors shall file and serve a Designation of Winning Bid as soon as practicable following

the conclusion of the Auction, but in no event later than **September 24, 2021**.  The Designation of Winning Bid shall: (i) identify the Winning Bidder and Back-up Bidder; (ii) provide a summary of the Winning Bid and Back-up Bid; (iii) identify all Purchased Contracts (defined below) designated by the Winning Bidder or Back-up Bidder; (iv) identify the Cure Amount, if any, the Debtors estimate is required to assume and assign each Purchased Contract in compliance with Section 365(b) and 365(f)(2) of the Bankruptcy Code; and (v) contain a statement as to the Winning Bidder's and Back-up Bidder's ability to perform the Debtors' obligations under the subject Purchased Contracts.

12.     Any objections to the Sale to the Winning Bidder or Back-up Bidder per the terms of their respective Bids shall be filed on or before **October 4, 2021, at 5:00 p.m. (prevailing Central time)**; *provided, however*, that objections to the assumption and assignment of any Executory Contracts may be filed up and until the Contract Assumption Objection Deadline.  The failure to file a timely objection shall be deemed to be a waiver of any such objections and consent to the approval of the Sale to the Winning Bidder pursuant to the terms of the Winning Bid and associated asset purchase agreement, as may be amended, supplemented or modified prior to or during the Sale Hearing.  Any reply or other response to any objections to the Sale shall be filed and served on or before **October 8, 2021, at 5:00 p.m. (prevailing Central time)**.

13.     The Debtors shall designate any Executory Contracts to be assumed and assigned to the Winning Bidder through the Sale not previously identified in the Designation of Winning Bid via an Amended Designation of Winning Bid filed no later than **October 8, 2021**.  The Debtors shall serve all known counterparties to any newly-identified Executory Contracts in the Amended Designation of Winning Bid with a copy of the Amended Designation of Winning Bid and notice of the Sale Hearing via email, facsimile or overnight courier, as soon as practicable thereafter;

6

*provided, however*, that no such service shall be necessary if the counterparties to any newly-identified Executory Contracts, or their respective counsel, receive notice of filings via the Court's Electronic Case Filing System.

14.     Any objections to the assumption and assignment of any Purchased Contracts shall be filed and served on or before **October 12, 2021, at 12:00 p.m.** (prevailing Central Time) (the "**Contract Assumption Objection Deadline**"), and shall (a) identify the Purchased Contract(s) to which the objector is party, (b) describe with particularity any cure the objector contends is required under Section 365 of the Bankruptcy Code (the "**Cure Claim**"), (c) identify the bases of the alleged Cure Claim under the proposed Purchased Contract, and (d) attach all documents supporting or evidencing the Cure Claim.  If no objection is filed by the Contract Assumption Objection Deadline, or if the objection fails to comply with the requirements set forth herein, the Cure Amount set forth in the Designation of Winning Bid Notice, or any amended version thereof, as applicable, shall control and any counterparties to the subject Purchased Contract(s) shall be deemed to waive and shall be forever barred from asserting in any other claim or objection under Section 365 of the Bankruptcy Code, or otherwise, including, without limitation, any objection to the assignability of any of the purchased contracts, other than an objection to adequate assurance of performance under the Purchased Contracts pursuant to Section 365(b)(1)(C) of the Bankruptcy Code.  The Debtors may present any response to such objections in writing at any time prior to the Sale Hearing or orally during the Sale Hearing.

15.     The Court shall hold a hearing to consider the approval of the Sale pursuant to the Winning Bid or Back-up Bid (the "**Sale Hearing**") on **October 14, 2021, at _____ a.m./p.m. (prevailing Central time)**.  The Debtors shall serve all interested parties with a notice of the Sale

Hearing and proposed Sale Order in accordance with applicable rules upon the filing of the Designation of Winning Bid.

16.     If approved during the Sale Hearing, and subject to entry of the Sale Order, the Winning Bidder shall close the Sale transaction set forth in the Winning Bid and associated asset purchase agreement no later than **November 1, 2021, at 5:00 p.m. (prevailing Central Time)**.  If the Winning Bidder fails to close by this deadline, the Debtors may, in their discretion, designate the Back-up Bidder as the Winning Bidder and proceed with closing the transaction under the Back-up Bid and associated asset purchase agreement.  If designated as the Winning Bidder, the Back-up Bidder shall close the Sale transaction set forth in the Back-up Bid and associated asset purchase agreement no later than **November 8, 2021, at 5:00 p.m. (prevailing Central Time)**. The Debtors, in consultation with the Notice Parties and agreement of the DIP Agent and Prepetition Secured Parties, may grant any Winning Bidder additional time to perform and, to the extent necessary, extend the Closing Date.

17.     Notwithstanding anything in this Order to the contrary, any payment to be made, or any authorization contained, hereunder shall be subject to the terms of any orders granting the use of cash collateral and approving debtor in possession financing in these chapter 11 cases (including with respect to any budget governing or relating to such use) including, without limitation, the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "**Interim DIP Order**") and the Final Order (as defined in the Interim DIP Order and collectively, the "**DIP Orders**"),  and to the extent there is any inconsistency between the terms of the DIP Orders and any action taken or proposed to be taken

hereunder, the terms of the DIP Orders shall control.  For the avoidance of doubt, in the event of a Termination Event under paragraph 15 of the Interim DIP Order and related provisions of the Final Order, nothing in this Order shall alter or impact the DIP Lenders' and the Prepetition Secured Parties' rights pursuant the terms of the DIP Orders and the DIP Credit Agreement or the Prepetition Secured Documents (as those terms are defined in the Interim DIP Order), as applicable.

18.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

19.     The stay requirements of Bankruptcy Rules 6004(h) and 6006(d) are hereby waived and the terms and conditions of this Order are immediately effective and enforceable upon its entry.

20.     Any period of time prescribed or allowed by this Order or the Bidding Procedures shall be computed in accordance with Bankruptcy Rule 9006.

21.     This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

Dated: _____

_____
Honorable David R. Jones
United States Bankruptcy Judge

4833-2362-2899.8

## **APPENDIX A**

## **BIDDING PROCEDURES**

4833-2362-2899.8

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*,[3]** | **CASE NO.: 21-32351** |
| Debtors. | **Jointly Administered** |

## BIDDING PROCEDURES

The following procedures shall govern the solicitation and acceptance of any and all bids for the purchase or acquisition of any assets of Limetree Bay Services, LLC ("**LBS**") and its debtor affiliates (together with LBS, the "**Debtors**") by and through the above-captioned, jointly administered bankruptcy cases (the "**Chapter 11 Cases**"):

### Summary of Bidding Procedures

The Debtors developed the Bidding Procedures (detailed below), with the assistance of advisors and in consultation with the DIP Agent, Prepetition Secured Parties, and J. Aron (as those terms are defined in the Interim DIP Order (defined below)) to provide the best opportunity to maximize the value of the Assets for the benefit of the Estates and their creditors through an efficient and streamlined sale process, which comports with the terms of the DIP Loan Documents (as defined in the Interim DIP Order) and the Bankruptcy Code (11 U.S.C. §§ 101, *et seq.*).

In short, the Bidding Procedures provided for the solicitation of bids from potential purchasers in an effort to identify a stalking horse bidder.  Following the Bid Deadline (defined below), the Debtors, in consultation with the Notice Parties,[4] shall select one or more bids to serve as stalking horse bids for all or substantially all assets of the Debtors, individually or collectively, depending on the nature of the subject bids.  Thereafter, the Debtors shall hold an Auction to provide other Qualified Bidders (defined below) an opportunity to bid against the selected stalking horse bid(s).  Upon conclusion of the Auction, the Debtors, in consultation with the Notice Parties, shall select a Winning Bid (defined below) and file a notice and designation of the Winning Bid for approval at the Sale Hearing.

---

[3] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services,  LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222).  The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[4] As used herein, "Notice Parties" refers to, collectively, the DIP Agent, the Prepetition Secured Parties, J. Aron (as defined in the Interim DIP Order), and any committee(s) appointed in these Chapter 11 Cases.  Unless otherwise defined, any capitalized term used herein shall have the meaning ascribed to it in the motion to approve these Bidding Procedures.

## Proposed Dates and Deadlines for the Sale

Under the terms of the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 104] (the "**Interim DIP Order**"), the Court approved certain milestones under the DIP Financing (as defined in the Interim DIP Order), including, without limitation, milestones with respect to the marketing and sale of all or substantially all assets of the Debtors.  The Bidding Procedures are designed to comply with the milestones and consummate a sale of all or substantially all assets of the Debtors on or before November 9, 2021.

The dates and deadlines established under the Bidding Procedures to comply with the milestones are as follows:[5]

| Date/Deadline | Event |
|---|---|
| August 6, 2021 | Deadline to establish and populate Data Room |
| September 7, 2021 | Bid Summary Deadline |
| September 10, 2021 | Stalking Horse Designation Deadline |
| September 13, 2021 | Deadline to file Stalking Horse Notice |
| September 17, 2021, at 5:00 p.m. CT | Bid Deadline and Credit Bid Designation Deadline |
| September 17, 2021 | Deadline to object to Stalking Horse Notice |
| September 20, 2021, at 10:00 a.m. CT | Deadline to provide notice of Auction location |
| September 22, 2021, at 10:00 a.m. CT | Auction Date |
| September 24, 2021 | Deadline to file the Designation of Winning Bid |
| October 4, 2021, at 5:00 p.m. CT | Deadline to object to the Sale |
| October 8, 2021, at 5:00 p.m. CT | Deadline to reply to objection(s) to the Sale |
| October 8, 2021 | Deadline to file Amended Designation of Winning Bid to add previously unidentified Executory Contracts |
| October 12, 2021, at 12:00 p.m. CT | Contract Assumption Objection Deadline |
| October 14, 2021 | Sale Hearing (subject to Court availability) |

---

[5] Some of the dates and deadlines in the table are dependent on the occurrence of certain events.  In such cases, the dates provided are estimated or proposed dates or the last date upon which the subject date or deadline may occur under the Interim DIP Order and/or DIP Loan Document.  Any capitalized terms used in the table shall have the meanings ascribed to them in this Motion.

4833-2362-2899.8

| October 15, 2021 | Expected entry of Sale Order |
| October 31, 2021 | Deadline to file Amended Designation of Winning Bid to remove previously identified Executory Contracts |
| November 1, 2021, at 5:00 p.m. CT | Deadline for Winning Bidder to close sale transaction |
| November 8, 2021, at 5:00 p.m. CT | Deadline for Back-up Bidder to close sale transaction (if applicable) |

## Bidding Procedures

### A.     Participation Requirements

1.     To participate in the bidding process or otherwise be considered for any purpose hereunder, each interested person or entity interested in submitting a Bid to purchase any of the Assets (each, a "**Potential Bidder**") must deliver or previously have delivered to the Debtors the following documents (the "**Preliminary Bid Documents**"):

a.     An executed confidentiality agreement in a form acceptable to the Debtors, in consultation with the Notice Parties (the "**Confidentiality Agreement**");

b.     Preliminary documentary evidence satisfactory to the Debtors, in consultation with the Notice Parties, of the Potential Bidder's financial ability to fully and timely perform and close the Sale;

c.     Documents identifying the Potential Bidder, including its legal name, jurisdiction and form of organization, and details regarding the ownership and capital structure of the Potential Bidder, as well as the identity of any controlling persons, significant direct or indirect equity or debt investors, and/or guarantors of such entity; and

d.     A list with the names and contact information for any financial, legal, and other advisors of the Potential Bidder has engaged to assist in connection with the proposed Sale.

### B.     Bid Requirements

2.     Any Potential Bidder may submit a bid (each a "**Bid**") for either: (a) all or substantially all of the Assets; or (b) any portion or combination of Assets (a "**Piecemeal Bid**"). For the avoidance of doubt, no Bid or Piecemeal Bid may include the IFF Property.  The DIP Lenders and Prepetition Secured Parties need not comply with the proposed Bidding Procedures to submit a credit bid and, for proposes of participating at the Auction, shall be deemed a Qualified Bidders.

3.      To participate in the Sale process, each Potential Bidder must, on or before September 17, 2021, at 5:00 p.m. prevailing Central Time (the "**Bid Deadline**"):

a.      Fully disclose the identity of each entity that will be bidding for the assets or otherwise participating in connection with such Bid and the complete terms of any such participation.

b.      Submit to the Debtors an executed purchase agreement substantially in the form of the APA (as defined below), as well as a redline of such agreement marked against the APA, memorializing a Bid for all or substantially all of the Assets or a Piecemeal Bid that comports with the terms of the Bidding Procedures and the proposed Sale, discussed *infra*.  No later than August 6, 2021, the Debtors shall upload to the Data Room (defined below) a proposed form of asset purchase agreement for the acquisition of substantially all Assets of the Estates (the "**APA**").

c.      Submit a Bid that is: (i) binding and irrevocable for a period of no less than 120 days[6] from the Bid Deadline, unless and until the Debtors accept a higher Bid and such Potential Bidder is not selected as the Back-up Bidder; (ii) without financing, due diligence, internal approval or any other contingencies, including with respect to title defect or environmental laws, unless otherwise consented to by the Debtors, in consultation with the Notice Parties; *provided, however*, that a Bid may contain a list of anticipated required regulatory approvals and the expected timing for obtaining such approvals; (iii) on terms substantially similar to those terms contained in the APA; and (iv) in compliance with the Bidding Procedures.

d.      Indicate the form of consideration of the Bid and the estimated market value of any non-cash consideration.

e.      If the Potential Bidder is submitting a Piecemeal Bid, the Potential Bidder must identify specifically the Assets subject to the Piecemeal Bid.

f.      If the Potential Bidder proposes acquiring any assets of LBT, or any parent or subsidiary of LBT, including, without limitation, any of the Terminal assets, or any other non-Debtor entities (collectively, the "**Non-Debtor Assets**"), the Potential Bidder must (i) identify any and all Non-Debtor Assets subject to the Bid and (ii) either (A) confirm that the closing of the proposed Sale of the Debtors' Assets is not contingent on the acquisition of the Non-Debtor Assets or (B) provide evidence in a form acceptable to the Debtors, after consulting with the Notice Parties, that the Potential Bidder and owner(s) of the Non-Debtor Assets subject to the Bid have entered into a binding and enforceable agreement, subject to any conditions related to the approval of the proposed Sale by the Court, for the sale and acquisition of the subject Non-Debtor Assets.  For the avoidance of doubt, the Debtors

---

[6] Unless otherwise stated, all references to "days" contained herein refer to calendar days.  Bankruptcy Rule 9006 shall govern the computation of any and all dates and deadline under the Bidding Procedures.

shall not (i) market or sell any Non-Debtor Assets, (ii) condition the Sale of any Assets on the sale or acquisition of any Non-Debtor Assets, (iii) incur or pay any expenses related to the marketing or sale of any Non-Debtor Assets, or (iv) provide any assistance with due diligence related to any Non-Debtor Assets. Any Non-Debtor Assets shall not be subject to the proposed Sale Order or jurisdiction of the Court.

g. Specify the portion of the aggregate purchase price that is being allocated to each type or group of Assets, including to insurance claims or proceeds, inventory (including any Inventory Financing Collateral (as defined in the Interim DIP Order)), equipment and any other type or group of Assets that may be subject to a lien held by the DIP Lenders or any of the Prepetition Secured Parties.

h. Unless the Bid is a credit bid being submitted by the DIP Lenders or a Prepetition Secured Party, make a good faith cash deposit in the form of a cashier's check or wire transfer into an interest bearing escrow account (the "**Escrow Account**") maintained by the Debtors' counsel in an amount not less than ten percent (10%) of the total consideration for the Bid, which deposit shall immediately become non-refundable and credited toward the purchase price if and when the Qualified Bidder (as defined below) making such deposit is declared to be the winning bidder (the "**Winning Bid**" and "**Winning Bidder**") or back-up bidder (the "**Back-up Bid**" and "**Back-up Bidder**") at the Sale Hearing. In the event a Qualified Bidder is not the Winning Bidder or Back-up Bidder, such Qualified Bidder's deposit shall be refunded as set forth herein.

i. Identify the liabilities, if any, that the Potential Bidder seeks to assume through the Sale transaction.

j. Provide a list of the Debtors' Executory Contracts the Potential Bidder seeks to have the Debtors assume and assign to the Potential Bidder by and through the Sale. No later than August 6, 2021, the Debtors shall upload to the Data Room a list of Executory Contracts that may be subject to assumption and assignment as part of a Sale.

k. Provide documentary evidence satisfactory to the Debtors, in consultation with the Notice Parties, of the Potential Bidder's financial ability to (i) fully and timely perform and close the Sale pursuant to the Bid and proposed assets purchase agreement, if declared to be the Winning Bidder, and (ii) provide adequate assurance of future performance of all Executory Contracts identified for assumption and assignment to the Potential Bidder, including, without limitation, the following:

    i. evidence of the Potential Bidder's internal resources and proof of unconditional debt funding commitments from a recognized financial institution and, if applicable, equity commitments in an

aggregate amount equal to the purchase price and any applicable cure amounts and other closing payments, if any, or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in such amount, in each case, as are needed to close the proposed Sale transaction;

ii. contact names and telephone numbers for verification of financing sources;

iii. current audited financial statements (or such other form of financial disclosure and credit-quality support or enhancement, acceptable to the Debtors, in consultation with the Notice Parties) of the Potential Bidder or those entities that will guarantee in full the payment obligations of the Potential Bidder;

iv. a description of the Potential Bidder's *pro forma* capital structure; and

v. any such other form of financial disclosure or credit-quality support information or enhancement reasonably requested by the Debtors demonstrating that such Qualified Bidder has the ability to close the applicable Sale transaction.

l. Disclose any connections or agreement with the Debtors or their affiliates, any of the Notice Parties, or any other known Potential Bidder or Qualified Bidder, and/or any officer, director or equity security holder of the Debtors or their affiliates or any of the foregoing and confirm that it has not engaged in any collusion with respect to the bidding or the proposed Sale transaction.

m. Confirm in writing its agreement to accept and abide by the terms, conditions and procedures set forth herein and provide evidence of due authorization to enter into the proposed Sale pursuant to the asset purchase agreement submitted, or any derivation thereof.  In the event that the Potential Bidder is an entity specially formed for the purpose of effectuating the contemplated transaction, then the Potential Bidder must furnish written evidence acceptable to the Debtors, in consultation with the Notice Parties, of the approval of the contemplated transaction by the equity holders or members of such Potential Bidder

n. Identify any and all bid protections (the "**Bid Protections**") required by the Potential Bidder to serve as the Stalking Horse Bidder (defined below) for the Sale, including without limitation, any break-up fee, expense reimbursement, termination fee or similar type of payment or bid protections; *provided, however*, that the aggregate amount of any proposed Bid Protections may not exceed three percent (3%) of the total purchase price under the Bid.

4.      The Debtors, in consultation with the Notice Parties, shall determine whether a Bid or Piecemeal Bid that meets the above minimum requirements constitutes a qualified bid (a "**Qualified Bid**", and the bidder submitting such Qualified Bid, a "**Qualified Bidder**").   The Debtors will promptly advise each Potential Bidder in writing whether or not the Potential Bidder is a Qualified Bidder.  If a Bid submitted on or prior to the Bid Deadline fails to meet all requirements of a Qualified Bid, the Debtors, after consulting with the Notice Parties, may work with the Potential Bidder in an effort to cure any defects in the Bid and to cause such Bid to become a Qualified Bid prior to the commencement of the Auction (as defined below).  Each DIP Lender and Prepetition Secured Party shall be deemed a Qualified Bidder and shall be allowed to participate in the Auction without the need to submit a Qualified Bid.

5.      The Debtors, in consultation with the Notice Parties, shall select a Qualified Bid and Qualified Bidder to serve as the Stalking Horse Bid (defined below) and Stalking Horse Bidder on or before September 10, 2021 (the "**Stalking Horse Designation Deadline**").

## C.      Submission of Bids

6.      A Potential Bidder must deliver written copies of its Bid and all supporting documents and information, by mail, facsimile, or email, prior to the Bid Deadline to: (i) counsel to the Debtors, Baker & Hostetler, LLP, 200 SunTrust Center, Suite 2300, 200 South Orange Avenue, Orlando, Florida 32801, Attn: Elizabeth A. Green (egreen@bakerlaw.com), and 45 Rockefeller Plaza, New York, New York 10111, Attn: Jorian L. Rose (jrose@bakerlaw.com); and (ii) counsel for the Official Committee of Unsecured Creditors (the "**Committee**"), if any.  The Potential Bidder must deliver the proposed Bid, and all supporting documents and information, such that the Bid and related documents and information are actually received by the aforementioned parties no later than the Bid Deadline.

7.      As soon as reasonably practicable following receipt, the Debtors shall provide summaries of the materials terms of each Bid, which summaries shall be treated as confidential, "Professionals' Eyes Only" (the "**PEO Information**"), to the following professionals: (i) counsel to the DIP Agent, Gray Reed, 1300 Post Oak Blvd, Suite 2000, Houston, Texas 77056, Attention: Jason S. Brookner (jbrookner@grayreed.com) and Lydia R. Webb (lwebb@grayreed.com); (ii) counsel to Goldman Sachs Bank USA, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006, Attn: Sean A. O'Neal (soneal@cgsh.com) and Jane VanLare (jvanlare@cgsh.com); (iii) counsel to J. Aron & Company LLC, Baker Botts L.L.P., 30 Rockefeller Plaza, New York, NY 10112, Attention: Robin Spigel (robin.spigel@bakerbotts.com) and Chris Newcomb (chris.newcomb@bakerbotts.com); and (iv) counsel to the Ad Hoc Term Lender Group, Akin Gump Strauss Hauer & Feld LLP, 2001 K. Street N.W., Washington, DC 20006, Attention: Scott Alberino (salberino@akingump.com) and Kevin Eide (keide@akingump.com) (collectively, the "**Lender Advisors**").  Lender Advisors may share PEO Information with third-party professionals retained by their respective clients, including, without limitation, any financial advisors or brokers; *provided, however,* that any recipient of any PEO Information, whether directly or indirectly, shall agree to maintain the confidentiality of the PEO Information and refrain from sharing or disclosing any PEO Information with or to their respective clients, including the DIP Agent, DIP Lenders, J. Aron, and Prepetition Secured Parties, or any other individual or entity; *provided, further*, that the Lender Advisors and any such third-party advisors shall be permitted to advise their respective clients that they are in receipt of such PEO

17

Information and provide summaries or analyses to their respective clients that do not disclose PEO Information.  The use and dissemination of PEO Information is subject to the further provisions set forth in Paragraph 35, *infra*.  The obligation to maintain the confidentiality of any PEO Information shall terminate upon such information becoming known to all Potential Bidders, generally available to the public, or, solely with respect to the respective clients of the Lender Advisors, upon the Credit Bid Designation Deadline, in the event that such clients elect not to submit a credit bid.

**D.    Access to Due Diligence Materials**

8.    The Debtors shall establish a digital data room (the "**Data Room**") for purposes of maintaining and providing Potential Bidders access to information regarding the Debtors and the Assets for purposes of conducting due diligence.  To the extent not already established, the Debtors shall establish a Data Room as soon as reasonably practicable after entry of the Bidding Procedures Order, but in no event later than August 6, 2021; *provided, however*, that the Debtors reserve the right to add or remove materials from the Data Room at any time.  The Debtors shall be authorized to retain and compensate in the ordinary course of business one or more individuals or entities to assist in the creation and/or maintenance of the Data Room; *provided, however,* that any compensation shall be subject to the Budget (as defined in the Interim DIP Order), terms of the Interim DIP Order, and, with respect to professionals, the requirements of the Bankruptcy Code.

9.    Upon delivery of the Preliminary Bid Documents, any Potential Bidder that wishes to conduct due diligence on the Assets may be granted access to the Data Room.  The due diligence period for Potential Bidders will end one (1) day prior to the Bid Deadline.

10.    The Debtors, along with their advisors, shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders and provide each Potential Bidder reasonable due diligence information, as requested by such Potential Bidder in writing as soon as reasonably practicable after such request; *provided, however*, the Debtors may decline to provide such information to Potential Bidders who the Debtors, in their reasonable business judgment (in consultation with the Notice Parties), determine do not intend in good faith to, or do not have the capacity to, consummate the purchase of any or all of the Assets or seek access to the Data Room and the information contained therein for any improper purpose.

11.    Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors, including, without limitation, information regarding such Potential Bidder's financial wherewithal to consummate and perform obligations in connection with the Sale.  If a Potential Bidder fails to comply with any such request(s), the Debtors may, in their discretion, in consultation with the Notice Parties, disqualify the Potential Bidder and/or the subject Bid and deny or terminate access to the Data Room.

**E.    "As Is, Where Is"**

12.    The Sale of any Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or Estates, except to the extent set forth in the asset purchase agreement between the Debtors and a Winning Bidder, the assignment and bill of sale, if any, delivered pursuant to such asset purchase

18

agreement, or the order approving the Sale of the Assets by the Debtors to the Winning Bidder. Except as may be provided in the subject asset purchase agreement, all of the Debtors' rights, title, and interest in and to the Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interest thereon, but subject in all respects to J. Aron's right to set off and net against any obligations owed by the Debtors to J. Aron under the J. Aron Transaction Documents (as defined in the Interim DIP Order) (collectively, the "**Interests**"), with such Interests attaching to the proceeds of the Sale of the Assets, with the same validity and priority as existed immediately prior to such Sale.

13.     Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the Assets prior to making its Bid, that it has relied solely upon its independent review, investigation and/or inspection of any documents or information in making its Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Assets or the completeness of any information provided in connection with the bidding process, in each case except as expressly stated in any executed asset purchase agreement.

## F.     Designation of a Stalking Horse Bidder

14.     The Debtors, in consultation with the Lender Advisors, shall prepare a summary of the highest and best Bid(s) for all or substantially all Asset and/or the highest and best Piecemeal Bid(s) (the "**Bid Summary**").  The Debtors shall upload the Bid Summary to the Data Room no later than September 7, 2021 (the "**Bid Summary Deadline**"), which shall be deemed to make such information "generally available to all potential bidders" for purposes of Paragraph 37 of the Complex Rules.

15.     On or before September 10, 2021, the Debtors, in consultation with the Notice Parties, may designate one or more Qualified Bidders as the stalking horse bidder(s) (the "**Stalking Horse Bidder**") and one or more Qualified Bids as the stalking horse bid(s) (the "**Stalking Horse Bid**") with respect to a sale of all or substantially all the Assets of the Debtors.  The Debtors shall not designate any Qualified Bid as a Stalking Horse Bid unless such Bid is reasonably acceptable to each of the Prepetition Secured Parties.

16.     On or before September 13, 2021, if the Debtors have designated a Stalking Horse Bidder, the Debtors shall file a Notice of Designation of Stalking Horse Bidder (the "**Stalking Horse Notice**") and serve the Stalking Horse Notice on all interested parties, including any Potential Bidders and counterparties to any Executory Contracts identified as Purchased Contracts (defined below) in the Stalking Horse Bid or Stalking Horse APA (defined below).  The Stalking Horse Notice shall (a) identify the Stalking Horse Bidder, (b) provide a summary of the Stalking Horse Bid, (c) outline any and all proposed Bid Protections, which may include the payment of a break-up fee and any other appropriate or customary protections, *provided* that the aggregate amount of the Bid Protections that may be paid to any or all Stalking Horse Bidders shall not exceed three percent (3%) of the proposed purchase price and that any Bid Protections shall only be payable upon the closing of and out of the proceeds of a sale transaction, and (d) provide a copy or the means of accessing a digital copy of the asset purchase agreement for the Stalking Horse Bid (the "**Stalking Horse APA**") and a redline marked against the APA.  The Debtors may modify

the terms of the Bidding Procedures[7] (excluding the requirements set forth in Paragraph 3 of these Bidding Procedures, which modifications thereto shall require the consent of the DIP Agent and each of the Prepetition Secured Parties) through the Stalking Horse Notice, in consultation with the Notice Parties.

17.     Any interested parties shall have four (4) days from the date of the Stalking Horse Notice to file any objections to the proposed Bid Protections for the Stalking Horse Bid or any amendments to the Bidding Procedures.  The failure to file a timely objection shall be deemed to be a waiver of any such objections and consent to the approval of the Bid Protections and amended Bidding Procedures.  If an objection is timely filed, the Debtors shall notice a hearing before the Court to consider the objection(s) on an emergency basis; *provided, however,* that the Bidding Procedures will be deemed approved regardless of whether or not the Auction occurs prior to the resolution of any objection to the Bid Protections or amended Bidding Procedures.  Interested parties shall be deemed to consent to the expedited and final resolution of any such objections by the Court.  The filing or pendency of any objection(s) shall not alter any dates or deadlines established under the Bidding Procedures or affect the binding nature of the Stalking Horse Bid or any other Bids.

## G.     Credit Bidding

18.     In accordance with Paragraphs 9(e) and 29 of the Interim DIP Order, and, to the extent applicable, the Final DIP Order, when entered, the DIP Lenders (as defined in the Interim DIP Order) and the Prepetition Secured Parties may credit bid the full amount of the DIP Obligations (as defined in the Interim DIP Order) or the Prepetition Secured Obligations (as defined in the Interim DIP Order), respectively and as applicable, to acquire any or all Assets subject to the parties' respective security interests (other than any collateral in respect of the J. Aron Obligations),[8] on a dollar-for-dollar basis, as provided in Section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing such credit bid and whether any Sale is (a) pursuant to Section 363 of the Bankruptcy Code, (b) pursuant to a chapter 11 plan, or (c) by a chapter 7 trustee.

19.     Notwithstanding anything to the contrary contained herein, the Prepetition Secured Parties shall have the right to credit bid all or any portion of the aggregate amount of their applicable outstanding Prepetition Secured Obligations pursuant to section 363(k) of the Bankruptcy Code, and any such credit bid, whether submitted by a Prepetition Secured Party or a new entity formed by such Prepetition Secured Party, will be considered a Qualified Bid to the extent such bid is received by the deadline to submit a credit bid and complies with section 363(k) of the Bankruptcy Code; *provided* that a credit bid shall not constitute a Qualified Bid if the bid does not include a cash component sufficient to pay in full, in cash, all claims for which there are valid, perfected, and unavoidable liens on any assets included in such Bid or Piecemeal Bid that are senior in priority, including a priority in payment pursuant to the Intercreditor Agreement (as defined in the Interim DIP Order), to those of the party seeking to credit bid (unless such

---

[7] Unless otherwise stated, "Bidding Procedures" includes the Bidding Procedures, the procedures governing any Auction (the **"Auction Procedures"**), including the Open Auction Procedures, and the Assumption and Assignment Procedures.

[8] For the avoidance of doubt, the IFF Property shall not be the subject of any sale pursuant to this Motion or the Bidding Procedures.

Prepetition Secured Party consents to alternative treatment).  For the avoidance of doubt, any credit bid by a DIP Lender of the DIP Obligations shall not constitute a Qualified Bid if the bid does not include a cash component sufficient to pay in full, in cash, all claims for which there are valid, perfected, and unavoidable liens on any assets included in such Bid or Piecemeal Bid that are senior in priority to the DIP Lender(s) seeking to credit bid (unless such Prepetition Secured Party consents to alternative treatment).

20.     If the DIP Lenders and/or Prepetition Secured Parties intend to credit bid for any of the Assets, such parties shall notify the Debtors, U.S. Trustee, and the other Notice Parties of their intention to credit bid no later than September 17, 2021 (the "**Credit Bid Designation Deadline**").  To the extent required by Paragraph 33 (soon to be Paragraph 37) of the Complex Rules, any entity that intends to submit a Bid for any or all of the Assets shall waive the right to receive (i) information that is not generally available to all Potential Bidders and (ii) any notices or consultation rights as Notice Parties under the Bidding Procedures or otherwise  (the "**Consultation Rights**").

## H.     The Auction

21.     If the Debtors receive one or more Qualified Bids from Qualified Bidders by the Bid Deadline, in addition to the Stalking Horse Bid, an Auction with respect to the sale of the subject Assets shall take place on September 22, 2021, at 10:00 a.m. (prevailing Central Time) (the "**Auction Date**") at (a) the offices of Baker & Hostetler, LLP, located at 811 Main Street, Suite 1100, Houston, Texas 77002 or (b) via an virtual platform, such as Zoom or GoToMeeting, as the Debtors designate.  No later than forty-eight (48) hours prior to the Auction Date, the Debtors shall provide notice of the Auction location and, if via a virtual platform, the credentials required to access such platform, to all Qualified Bidders, the Notice Parties, and the U.S. Trustee.

22.     If the Stalking Horse Bid is the only Qualified Bid the Debtors receive by the Bid Deadline, the Debtors reserve the right to cancel the Auction.  In such case, if cancelled, the Stalking Horse Bid and Stalking Horse Bidder shall be automatically designated the Winning Bid and Winning Bidder effective as of the Bid Deadline.

23.     If the Debtors do not receive any Qualified Bids by the Bid Deadline, the Debtors may elect to hold an open auction for the Assets, or any of them (an "**Open Auction**") on the Auction Date, subject to the agreement of the DIP Agent and Prepetition Secured Parties.  If the parties agree to hold an Open Auction, the Debtors shall provide notice to the Court, the U.S. Trustee, the Notice Parties, and any and all Potential Bidders that executed a Confidentiality Agreement of the Open Auction (the "**Open Auction Notice**").  The Open Auction Notice shall identify the procedures applicable to the Open Auction, including, without limitation, any deposits required to participate in the Open Auction (the "**Open Auction Procedures**").  The Debtors shall prepare the Open Auction Procedures in consultation with the Notice Parties and U.S. Trustee. Notwithstanding anything in the Motion, Bidding Procedures or Open Auction Procedures to the contrary, the DIP Lenders and Prepetition Secured Parties will be entitled to credit bid in any Open Auction and shall be deemed to be Qualified Bidders for purposes of any Open Auction.

24.     Unless modified by any Open Auction Procedures, the following rules shall apply to any Auction:

a.  only Qualified Bidders shall be entitled to make a bid at and otherwise participate in the Auction;

b.  each Qualified Bidder shall appear in person, or in the event of a virtual auction, appear virtually, or have an authorized representative appear on their behalf, *provided* the authorized representative has the authority to bind the Qualified Bidder to the terms of any bid at the Auction without further or additional approval or authorization;

c.  each Qualified Bidder participating in the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale;

d.  the Debtors, in their business judgment and in consultation with the Notice Parties, shall select the number of Qualified Bidders participating in the Auction and will conduct the Auction in the manner that they determine will best promote the goals of the bidding process and will achieve the maximum value for the Assets;

e.  the Stalking Horse Bid shall constitute the opening bid at the Auction (the "**Opening Bid**") for the Assets subject to the Stalking Horse APA and the minimum overbid at the Auction shall be an amount equal to the total approved Bid Protections provided under the Stalking Horse APA ***plus*** $1,000,000, with each successive bid being in increments of at least $1,000,000 higher than the preceding bid; *provided, however*, if the Stalking Horse Bids constitute Piecemeal Bids, the minimum overbids and bid increments shall be specified in the Stalking Horse Notices;

f.  the Stalking Horse Bidder may not use the amount of approved Bid Protections as consideration under any bid during the Auction; *provided, however*, that the Debtors may consider the amount of approved Bid Protections in evaluating the highest and best Bid for purposes of designating the Winning Bid or Back-up Bid;

g.  the Debtors, in consultation with the Notice Parties, may, at any point during the Auction, modify the bid increment amounts;

h.  the Debtors, in consultation with the Notice Parties, may continue the Auction from time to time, adjourn the Auction at any time, and re-open the Auction at any time prior to the commencement of the Sale Hearing; and

i.  bidding at the Auction will be transcribed to ensure an accurate recording of the bidding.

25.  At the conclusion of the Auction, the Debtors, in consultation with the Notice Parties, shall select and identify the Winning Bid and the Winning Bidder. There may be more than one Winning Bid and Winning Bidder if individual Piecemeal Bids are determined to be Qualified Bids. The Debtors, in consultation with the Notice Parties, shall also select and identify

the entity presenting the next highest and best bid (the "**Back-up Bid**") and the entity presenting same (the "**Back-up Bidder**").  At the Sale Hearing (as defined below), the Debtors shall present the Winning Bid and Back-up Bid to the Court for approval.  The Debtors' presentation of the Winning Bid to the Court for approval does not constitute the Debtors' acceptance of such Winning Bid.  The Debtors shall have accepted a Winning Bid only when the Court has entered an order approving such bid and the Sale of the Asset subject thereto.

26.      Notwithstanding the foregoing, the Debtors reserve all rights to terminate the bidding process at any time if the Debtors, consistent with their fiduciary duties and business judgment, and in consultation with the Notice Parties, determine that the bidding process will not maximize the value of the Assets.  Without limiting the generality of the foregoing, the Debtors, in consultation with the Notice Parties, may reject at any time before entry of a Sale Order approving such bid, any Bid that, in the Debtors' discretion, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors, their Estates and creditors.

27.      If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when: (i) such bid is declared the Winning Bid at the conclusion of the Auction; (ii) the Winning Bidder shall have paid an additional deposit which, when added to the initial deposit, equals fifteen percent (15%) of the Winning Bid (the "**Additional Deposit**"); *provided* that to the extent the Winning Bid is a credit bid submitted by a DIP Lender or Prepetition Secured Party, no Additional Deposit shall be required; (iii) definitive documentation has been executed in respect thereof; and (iv) the Court has entered an order approving such bid and the Sale of the Assets subject thereto.  The Winning Bidder shall make the Additional Deposit into the Escrow Account within one (1) business day after the conclusion of the Auction.  Acceptance by the Debtors of the Winning Bid is conditioned upon entry of a Sale Order approving such Winning Bid.

28.      As soon as practicable following the conclusion of the Auction, the Debtors shall file a notice designating the Winning Bid and Winning Bidder, as well as the Back-up Bid and Back-up Bidder (the "**Designation of Winning Bid**"), and serve the Designation of Winning Bid on all interested parties, including, without limitation, all counterparties to any Purchased Contract(s).  The Designation of Winning Bid shall: (i) identify the Winning Bidder and Back-up Bidder; (ii) provide a summary of the Winning Bid and Back-up Bid; (iii) if the Winning Bidder is not the Stalking Horse Bidder, provide a copy or the means of accessing a digital copy of the asset purchase agreement(s) for the Winning Bid(s) (the "**Modified APA(s)**") and a redline marked against the Stalking Horse APA; (iv) identify all Purchased Contracts designated by the Winning Bidder or Back-up Bidder; (v) identify the Cure Amount, if any, the Debtors estimate is required to assume and assign each Purchased Contract in compliance with Section 365(b) and 365(f)(2) of the Bankruptcy Code; and (vi) contain a statement as to the Winning Bidder's or Back-up Bidder's ability to perform the Debtors' obligations under the subject Purchased Contracts.  The Debtors reserve the right to amend the Designation of Winning Bid to identify additional Executory Contracts up to six (6) days before the Sale Hearing (defined below) and to remove any Executory Contracts up to the Closing Date (defined below).  Simultaneously with the filing of the Designation of Winning Bid, the Debtors shall file a proposed Sale Order and any supplemental filings related to the Designation of Winning Bid or approval of the proposed Sale pursuant thereto.

29.     In the event that the Winning Bidder fails to pay the Additional Deposit or otherwise comply with its obligations as the Winning Bidder, the Qualified Bidder with the Back-up Bid shall be declared the Winning Bid and Winning Bidder without further order of the Court. If the Winning Bid is a Piecemeal Bid (the "**Winning Piecemeal Bid**"), the bidder with the next highest or best bid that is not entitled to the same reductions to the purchase price shall be deemed the Winning Bid and Winning Bidder without further order of the Court.

**I.      Sale Hearing**

30.     The Debtors shall schedule a hearing to approve the Sale (the "**Sale Hearing**") pursuant to the Stalking Horse APA or Modified APA(s), as applicable, as soon as practicable, but in no event later than October 14, 2021.  At the Sale Hearing, subject to the Bidding Procedures and result of the Auction, if any, the Debtors will request entry of the Sale Order that will, *inter alia*, approve (i) the Sale of the Assets in accordance with the terms of the Stalking Horse APA or Modified APA(s), as applicable, (ii) the assumption and assignment of the Purchased Contracts (defined below), and (iii) any further or additional relief deemed necessary to effectuate the proposed Sale transaction.  Objections, if any, to a proposed Sale transaction, other than objections to the assumption and assignment of Executory Contracts (a "**Sale Objection**"), must be filed and served on counsel for the Debtors, the U.S. Trustee, and the Notice Parties no later than October 4, 2021, at 5:00 p.m. (prevailing Central time) (the "**Sale Objection Deadline**").

**J.      Return of Deposit**

31.     Within five (5) business days after the closing of the Sale to the Winning Bidder ("**Closing**"), the deposits of all unsuccessful bidders shall be refunded, except for any deposits forfeited by a Winning Bidder under the Bidding Procedures.  In the event a dispute arises about whether a deposit is refundable or non-refundable, the deposit shall remain in the Escrow Account pending a resolution of the dispute by the Court.  In presenting a Bid, any and all Potential Bidders, including Qualified Bidders, Back-up Bidder(s), and Winning Bidder(s), shall be deemed to consent to the jurisdiction and final adjudication of any and all matters related to the Bid(s) by the Court.

**K.      Failure to Close**

32.     The transaction evidenced by the Winning Bid shall close not later than ten (10) days after entry the Sale Order, but in no event later than **November 1, 2021, at 5:00 p.m. (prevailing Central time)** (the "**Closing Date**"), unless the Closing Date is extended in accordance with the Bidding Procedures, at which time the Winning Bidder shall pay the balance of the Winning Bid (the Winning Bid amount less the deposit) into the Escrow Account.  In the event a declared Winning Bidder fails to timely perform any of its obligations as set forth above or pursuant to the approved transaction documents:

      a.      The declared Winning Bidder shall forfeit all deposits made without regard to the Debtors' ultimate damages occasioned by such failure; such deposits shall be applied to the Debtors' damages, if any, and shall not constitute liquidated damages; and, notwithstanding the foregoing, the Debtors and the Estates shall retain all other rights, remedies, claims, counterclaims, and

defenses as to the Winning Bidder, including the right to seek equitable or injunctive relief.

b. Each Back-up Bidder shall keep its final and highest bid open pending a closing of a transaction of the Winning Bid.  In the event that a transaction of the Winning Bid is not consummated by the Closing Date (unless the Closing Date is extended), the Back-up Bidder with the Back-up Bid shall be deemed the Winning Bidder without further order of the Court, and such bidder shall be required to close the transaction contemplated in its Back-up Bid within seven (7) days of being deemed the Winning Bidder, **but in no event later than November 8, 2021, at 5:00 p.m.** (prevailing Central time), unless such deadline is extended in accordance with the Bidding Procedures.  Any Back-up Bidder declared a Winning Bidder who fails to timely perform shall forfeit all deposits made without regard to the Debtors' ultimate damages occasioned by such failure; such deposits shall be applied to the Debtors' damages, if any, and shall not constitute liquidated damages; and, notwithstanding the foregoing, the Debtors and the Estates shall retain all other rights, remedies, claims, counterclaims, and defenses with respect to such bidder, including the right to seek equitable or injunctive relief.

c. The Debtors, in consultation with the Notice Parties and agreement of the DIP Agent and Prepetition Secured Parties, may grant any declared Winning Bidder additional time to perform and, to the extent necessary, extend the Closing Date.

## L.   Fees and Expenses

33.   Any and all bidders submitting Bids shall bear their own fees, costs, and expenses in connection with the proposed sale, whether or not such sale is ultimately approved, except to the extent reimbursement of expenses constitutes an approved Bid Protection under a Stalking Horse APA.  Further, by submitting a Bid, a Potential Bidder shall be deemed to waive its right to pursue a substantial contribution claim under Section 503 of the Bankruptcy Code or other priority unsecured or administrative claims in any way related to the submission of its Bid or the Bidding Procedures.

## M.   Assumption and Assignment of Executory Contracts

34.   The Debtors also seek approval of certain procedures to facility the fair and orderly assumption and assignment of certain Executory Contracts designated by the Winning Bidder following the Auction, if any, pursuant to Section 365(f) of the Bankruptcy Code (collectively, the "**Purchased Contracts**") in connection with the Sale.  Due to the nature of the bidding process, the Debtors are unable to currently identify the Purchased Contracts, or any of them, that will require assumption and assignment to the Winning Bidder.  As such, the Debtors propose certain procedures (the "**Assumption and Assignment Procedures**") by which counterparties to potential Purchased Contracts can ascertain the proposed cure payment and adequate assurance of future performance and, if deemed prudent, object to the potential assumption or assumption and

assignment of the subject Purchased Contracts. The proposed Assumption and Assignment Procedures are as follows:

a.  As set forth above, the Debtors shall file the Stalking Horse Notice with the Court and serve the same on all known counterparties to the Executory Contracts designated therein. The Stalking Horse Notice shall contain the following: (i) the executory contracts and unexpired leases that may be assumed and assigned to a potential purchaser; (ii) the name and address of the known contract counterparties thereto; (iii) the amount, if any, determined by the Debtors to be necessary to be paid to cure any existing default in accordance with Section 365(b) and 365(f)(2) of the Bankruptcy Code (the "**Cure Amount**"); and (iv) the deadline by which any counterparties must file an objection to the proposed assumption and assignment of any designated contract; *provided, however,* that the inclusion of any executory contract or unexpired lease on the Stalking Horse Notice shall not constitute an admission that the subject contract(s) or lease(s) are executory contract(s) or unexpired lease(s) for purposes of Section 365 of the Bankruptcy Code or an agreement to assume or assign such Executory Contracts.

b.  The Debtors may (i) amend the Stalking Horse Notice or Designation of Winning Bid at any time prior to the date that is six (6) days prior to Sale Hearing to add or remove any Executory Contracts, subject to the right of any counterparties to newly identified Executory Contract(s) to object to the proposed cure payment, adequate assurance, or otherwise object to the assumption and assignment of the subject Executory Contracts, and (ii) amend the Stalking Horse Notice or Designation of Winning Bid to remove any previously-designated Executory Contracts at any time prior to the Closing Date, with such removal being effective immediately without further order of the Court. Any amendments to the Stalking Horse Notice or Designation of Winning Bid shall comply with the requirements of Paragraph 34.a; *provided, however,* that such amendments need not include information related to any previously-designated Executory Contracts unaffected by the amendment.

c.  Each Potential Bidders shall identify in its Bid any and all Executory Contracts the Potential Bidder may wish to designate for assumption and assignment to the Potential Bidder in any Sale; *provided, however*, the Winning Bidder(s) may amend such designation, consistent with the notice requirements of Paragraph 34.b.

d.  As provided in Paragraph 28, the Debtors shall file and serve the Designation of Winning Bid on each counterparty to any Purchased Contract (and its counsel, if known) that is designated for assumption and assignment under the Winning Bid, among other parties. Such Designation of Winning Bid shall: (i) identify the Winning Bidder and Back-up Bidder; (ii) identify all Purchased Contracts designated by the Winning Bidder,

subject to the right to amend such designation; (iii) identify the Cure Amount, if any, the Debtors estimate is required to comply with Section 365(b) and 365(f)(2) of the Bankruptcy Code; and (iv) contain a statement as to the Winning Bidder's ability to perform the Debtors' obligations under the subject Purchased Contracts.  The Debtors may amend or supplement the Contract Notice to add or remove any Executory Contracts by filing with the Court and serving on the affected counterparties to the Executory Contracts an amended Designation of Winning Bid in accordance with these Bidding Procedures.

e.     All objections to the proposed assumption and assignment of any Purchased Contracts must: (i) be filed with the Court on or before October 18, 2021, at 12:00 p.m. (prevailing Central time) (the "**Contract Assumption Objection Deadline**") and served on the Debtors, the U.S. Trustee and Notice Parties; (ii) identify the Purchased Contract(s) to which the objector is party; (iii) describe with particularity any cure the objector contends is required under Section 365 of the Bankruptcy Code (the "**Cure Claim**"); (iv) identify the bases of the alleged Cure Claim under the proposed Purchased Contract; and (v) attach all documents supporting or evidencing the Cure Claim.

f.     If no objection is filed by the Contract Assumption Objection Deadline, the Cure Amount set forth in the Designation of Winning Bid Notice, or any amended version thereof, as applicable, shall control and any counterparties to the subject Purchased Contract(s) shall be deemed to waive and shall be forever barred from asserting in any other claim or objection under Section 365 of the Bankruptcy Code, or otherwise, including, without limitation, any objection to the assignability of any of the purchased contracts, other than an objection to adequate assurance of performance under the Purchased Contracts pursuant to Section 365(b)(1)(C) of the Bankruptcy Code.

g.     To the extent any Cure Claim remains unresolved as of the Sale Hearing, such dispute shall be presented to the Court at the Sale Hearing, or such later date and time as the Debtors, the Winning Bidder, and the objecting party may agree or the Court may order, *provided* that the pendency of such dispute shall not affect in any way the closing of any proposed Sale or the effectiveness of any assumption and assignment of the subject Executory Contract under the Winning Bid.

## N.     Cooperation and Information Sharing

35.     The Debtors and their advisors shall consult regularly with the Lender Advisors and third-party professionals retained by their respective clients, including, without limitation, any financial advisors or brokers, regarding the status of the Sale process and any potential Bids and provide any related information that may be reasonably requested by the advisors to the DIP Agent and/or Prepetition Secured Parties and such third-party professionals.  To the extent required by Paragraph 33 (soon to be Paragraph 37) of the Complex Rules, any information provided to the

Lender Advisors or such third-party professionals shall constitute PEO Information subject to the restriction set forth in Paragraph 7, *supra; provided, however*, that any PEO Information that becomes known to all Potential Bidders or publicly available, other than as a result of a violation of the restrictions on the use and dissemination of PEO Information, shall no longer be subject to the restrictions provided in the Bidding Procedures.  Any DIP Lender or Prepetition Secured Party that elects not to credit bid by the Credit Bid Designation Deadline shall have the right to any and all PEO Information, Consultation Rights, and other information and documentation pertaining to the marketing or Sale of any Assets, including, without limitation, any Bids and related documents, under the Bidding Procedures without restriction, except for a prohibition against sharing such information with any Potential Bidders that do not have such information.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*,**[1] | **CASE NO.: 21-32351** |
| Debtors. | **Jointly Administered** |

**DECLARATION OF MARK SHAPIRO IN SUPPORT OF
DEBTORS' EMERGENCY MOTION FOR ENTRY OF ORDER: (I) ESTABLISHING
BIDDING AND SALE PROCEDURES; (II) APPROVING THE SALE OF ASSETS; AND
(III) GRANTING RELATED RELIEF**

I, Mark Shapiro, declare as follows:

1.      I am a Senior Managing Director for GlassRatner Advisory & Capital Group LLC, d/b/a B. Riley Advisory Services ("**B. Riley**" or the "**CRO**").  On or about June 17, 2021, Limetree Bay Services,  LLC, Limetree Bay Refining Holdings, LLC, Limetree Bay Refining Holdings II, LLC, Limetree Bay Refining, LLC, Limetree Bay Refining Operating, LLC, and Limetree Bay Refining Marketing, LLC (collectively, the "**Debtors**") retained B. Riley as chief restructuring officer.  I am the principal representative of B. Riley in its capacity as CRO.

2.      I am a duly authorized representative of the Debtors for purposes of executing any and all documents in connection with the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**") and representing the Debtors in the course of these Chapter 11 Cases and any related proceedings.  I am authorized to submit this Declaration in support of the *Debtors' Emergency Motion for Entry of Order: (I) Establishing Bidding and Sale Procedures;*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services,  LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222).  The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

*(II) Approving the Sale of Assets; and (III) Granting Related Relief* [Docket No. 191] (the "**Bidding Procedures Motion**").  Except as otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Bidding Procedures Motion.

3.      I am familiar with the Debtors' businesses, day-to-day operations, and financial affairs.  Except as otherwise indicated, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents and records created and maintained by the Debtors in the ordinary course of business, information provided to me by employees and consultants working under my supervision with personal knowledge of the veracity of such information, and/or my opinion based on experience, knowledge, and information concerning the Debtors' operations and financial condition.  If called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

4.      I have reviewed the Bidding Procedures Motion and believe all the facts stated therein to be true and accurate, to the best of my knowledge, information and belief.

5.      The Bidding Procedures are detailed in the Bidding Procedures Motion and Appendix A to the proposed Bidding Procedures Order, which is attached to the Bidding Procedures Motion as Exhibit A.

6.      The Debtors developed the Bidding Procedures, with the assistance of advisors and in consultation with the DIP Agent and the Prepetition Secured Parties, with the intention of maximizing the value of the Assets for the benefit of the Estates and their creditors through an efficient and streamlined sale process, while complying with the terms of the Interim DIP Order, the DIP Loan Documents, and applicable rules and law.

7.      I believe that the proposed Bidding Procedures and a sale of all or substantially all Assets of the Debtors, pursuant to the Bidding Procedures, are support by the sound business

2

judgement of the Debtors and serve the best interests of the Estates and their creditors.  Under the Interim DIP Order, the Debtors must consummate a sale of all or substantially all of the Debtors' Assets within one hundred twenty (120) days after the Petition Date.  I believe the Bidding Procedures provide a framework for a fair and orderly marketing and sale of the Assets and ensure the participation of *bona fide* bidders with the ability and desire to consummate a proposed transaction, while providing the necessary flexibility to maximize the opportunities and offers available to the Debtors, including the ability to entertain cash offers and credit bids for all Assets of the Debtors as well as only certain Assets of the Debtors (i.e., Piecemeal Bids).  Moreover, I believe that the Assumption and Assignment Procedures provide fair and reasonable procedures for the identification of Executory Contracts subject to any potential sale and any Winning Bid(s), an opportunity to object to the proposed assumption and/or assignment of any Executory Contracts, including the amount of any proposed cure payment(s), and the resolution of any disputes pertaining to the assumption and assignment of any Executory Contracts—while balancing such protections against the need to maintain an expedited timeline for consummation of a Sale under the Interim DIP Order and DIP Loan Documents.  Additionally, the Bidding Procedures were designed in an effort to prevent collusion among Potential Bidders, by, among other things, requiring each Potential Bidder to execute a Confidentiality Agreement and requiring each Qualified Bidder participating in the Auction to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

8.      Based on the foregoing, and for the reasons stated in the Motion, I believe that the Bidding Procedures and proposed Sale following an Auction and Sale Hearing are supported by the sound business judgment of the Debtors and serve the best interests of the Estates and their respective creditors, and that the relief requested in the Motion is justified.

4851-0258-2259.1

9.      I believe emergency consideration of the Motion is warranted under the circumstances presented due to the limited time in which to market and solicit offers for the acquisition of the Assets of the Debtors under the milestones set for any Sale under the terms of the DIP Loan Documents, as approved in the Interim DIP Order.

I declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

Dated:  July 27, 2021                                  __/s/ Mark Shapiro__

                                                         Mark Shapiro, CRO

4851-0258-2259.1

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

August 02, 2021

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.* [1]** | **CASE NO.: 21-32351** |
| **Debtors.** | **Jointly Administered** |

**SECOND INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN
POSTPETITION SENIOR SECURED SUPERPRIORITY FINANCING AND (B) USE
CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO
PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY,
(IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (the "Debtors"), the court enters this Order (the "Second Interim Order") extending the terms of the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* dated July 14, 2021 (Doc. No. 104) (the "Interim Order")[2]  with respect to the Debtors' rights to use cash collateral through August 8, 2021, with the following revisions:

A.    The portion of the Approved Budget for the period from August 2, 2021, through and including August 8, 2021, is attached hereto as **Exhibit A**.  *See* Interim Order ¶ N.  For the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services,  LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Interim Order.

avoidance of doubt, nothing in this Second Interim Order authorizes, or shall be construed as authorizing, any DIP Financing in excess of the $5.5 million in DIP Financing authorized in the Interim Order.

B.      Hearing Date.  A continuation of the Interim Hearing shall occur on **August 6, 2021 at 10:30 a.m. prevailing Central Time.**   The Debtors shall file proposed revised terms for obtaining additional credit and use of cash collateral following expiration of this Second Interim Order, if any, by August 4, 2021, at 3:00 p.m. prevailing Central Time.  **Objections and responses to such proposed relief shall be due by August 5, 2021, at noon prevailing Central Time.**

C.      Except as otherwise set forth herein, all terms and provisions of the Interim Order remain unchanged and in full force and effect.

D.      This Second Interim Order is immediately valid, effective and enforceable upon the date signed by the Court and entered on the docket in the Chapter 11 Cases.

E.      The reservation  of the United States is preserved as stated on the record.


**Signed:  August 02, 2021.**

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit A</u>**

Approved Budget for the period from August 2, 2021 through and including August 8, 2021

**Limetree Bay Refinery**

Forecasted Results of Operations and Cash Flows

Wk Beginning     _8/2/21_

| | | |
|---|---|---:|
| Week -----> | | **4** |
| Beginning of Week | | 8/2/21 |
| End of Week | | 8/8/21 |
| **Cash Receipts** | $ | - |
| **Cash Disbursements** | | |
| Payroll / Benefits | $ | 239 |
| Fuel | | 395 |
| Maintenance and Other Outside Services | | 298 |
| Insurance | [1] | 78 |
| IT Support / Software / Hardware | | 20 |
| Environmental / Safety | | - |
| Admin / Site Services | | 180 |
| Relocation Costs | | 550 |
| Limetree Bay Terminal Services | | 150 |
| EPA Mandated Expenditures | | 136 |
| Utility Adequate Assurance Payment | | 483 |
| Flare Repair | | 185 |
| Hydrocarbon Removal | [2] | 310 |
| **Total     Cash Disbursements** | **$** | **3,024** |
| **Operating Cash Flow** | **$** | **(3,024)** |
| **Other (Sources) / Uses** | | |
| DIP Financing Costs | $ | 23 |
| Revolver Interest Payments | | - |
| Insurance Claims Professionals | | - |
| Term Lender Agent Fee | | - |
| Engineering Professionals (Turner Mason) | | 100 |
| **Total     Other (Sources) / Uses** | | **123** |
| **Net Cash Flow Before Professional Fees** | **$** | **(3,147)** |
| **Professional Fees** | | |
| DIP Lender Counsel | $ | - |
| Term Lender Professionals | | - |
| Independent Director | | - |
| J Aron Counsel | | - |
| Revolver Counsel | | - |
| Investment Banker | | - |
| **Total** | **$** | **-** |
| **Net Cash Flow** | **$** | **(3,147)** |
| *Accumulated* | | *(3,146.7)* |
| **Beginning Cash Balance** | **$** | **3,500.0** |
| **Net Cash Flow** | **$** | **(3,146.7)** |
| **DIP Draw** | **$** | **-** |
| **DIP (Paydown)** | **$** | **-** |
| **Ending Book Cash Balance** | **$** | **353** |
| **Ending DIP Balance** | **$** | **5,500** |
| *Debtor Professional Fee Accrued (Cumulative)* | *$* | *1,246* |
| *UCC Professional Fees Accrued (Cumulative)* | *$* | *92* |

[1] - Existing premiums; coverages are currently under review with agents.

[2] - More spend after this period anticipated in order to complete hydrocarbon removal.
Budgeting currently in process.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*** [1] | **CASE NO.: 21-32351** |
| **Debtors.** | **Jointly Administered** |

### NOTICE OF FILING PROPOSED BUDGET FOR AUGUST 6, 2021 HEARING

**PLEASE TAKE NOTICE** that the debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned bankruptcy cases hereby submit the proposed budget attached hereto as Exhibit 1 (the "**Proposed Budget**") in accordance with the *Second Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (Doc. No. 271). The Proposed Budget shall also be used as Debtors' Exhibit 2 at the hearing on August 6, 2021, at 10:30 a.m. CST.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services,  LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

Dated: August 4, 2021

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
**Jimmy D. Parrish, Esq.**
Fed. ID No. 2687598
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile: 407.841.0168
Email: egreen@bakerlaw.com
           jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
(Admitted Pro Hac Vice)
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com

*Proposed Counsel for the Debtors and Debtors
in Possession*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 4, 2021, a true and correct copy of the foregoing was filed with the Court using the CM/ECF System, which will provide notice of such filing to all parties requesting such notice.

*/s/ Elizabeth A. Green*
Elizabeth A. Green

# **EXHIBIT 1**

## **PROPOSED BUDGET**

# Limetree Bay Refinery

**Forecasted Results of Operations and Cash Flows**

Wks Beginning    _8/9/21_    _thru_    _9/13/21_

| | | | 5 | 6 | 7 | 8 | 9 | 10 | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| Week -----> | | | | | | | | | | |
| Beginning of Week | | | 8/9/21 | 8/16/21 | 8/23/21 | 8/30/21 | 9/6/21 | 9/13/21 | | |
| End of Week | | | 8/15/21 | 8/22/21 | 8/29/21 | 9/5/21 | 9/12/21 | 9/19/21 | | |
| **Cash Receipts** | | | | | | | | | | |
| BP | [1] | $ | - | $    - | $    - | $    - | $    - | $    - | $ | - |
| Excess Construction Material | [2] | | 100 | - | 100 | - | 600 | - | | 800 |
| Est. J. Aron's Proceeds | | | - | - | - | - | - | - | | - |
| Resale of Flushing Oil | | | - | - | - | - | - | 560 | | 560 |
| Insurance Proceeds - TBD | | | - | - | - | - | - | - | | - |
| Sale of Spare Parts | | | - | - | - | - | - | - | | - |
| Asset Sale - TBD | | | - | - | - | - | - | - | | - |
| **Total    Cash Receipts** | | $ | 100 | $    - | $    100 | $    - | $    600 | $    560 | $ | 1,360 |
| **Cash Disbursements** | | | | | | | | | | |
| Payroll / Benefits | | $ | 1,600 | $    125 | $    1,189 | $    296 | $    996 | $    90 | $ | 4,295 |
| Fuel | | | 395 | 395 | 470 | 470 | 390 | 390 | | 2,510 |
| Maintenance and Other Outside Services | | | 298 | 298 | 298 | 298 | 298 | 298 | | 1,786 |
| Insurance | [3] | | - | - | 319 | - | - | - | | 319 |
| Utilities / Water | | | 218 | - | - | - | - | 218 | | 435 |
| IT Support / Software / Hardware | | | 185 | 10 | 10 | 88 | - | 195 | | 488 |
| Environmental / Safety | | | 184 | - | - | - | - | 184 | | 368 |
| Building / Site Maintenance | | | 40 | 40 | 40 | 40 | 40 | 40 | | 237 |
| Limetree Village Costs | | | 44 | 44 | 10 | 10 | 10 | 10 | | 128 |
| Admin Services | | | 55 | 55 | 55 | 55 | 55 | 55 | | 331 |
| Misc | | | 41 | 41 | 41 | 41 | 41 | 41 | | 244 |
| Relocation Costs | | | 550 | - | - | 1,392 | - | - | | 1,942 |
| Limetree Bay Terminal Services | | | 150 | 150 | 150 | 150 | - | - | | 600 |
| EPA Mandated Equipment Purchase | | | 106 | - | - | - | - | - | | 106 |
| EPA Mandated Independent Observer | | | - | 30 | - | 30 | - | 30 | | 90 |
| Utility Adequate Assurance Payment | | | 403 | - | - | - | - | - | | 403 |
| Flare Repair | | | 95 | 35 | - | - | - | - | | 130 |
| Hydrocarbon Removal | [4] | | 660 | 660 | 310 | 310 | 310 | 310 | | 2,560 |
| **Total    Cash Disbursements** | | $ | 5,023 | $    1,882 | $    2,890 | $    3,179 | $    2,139 | $    1,860 | $ | 16,973 |
| **Operating Cash Flow** | | $ | (4,923) | $    (1,882) | $    (2,790) | $    (3,179) | $    (1,539) | $    (1,300) | $ | (15,613) |

## Limetree Bay Refinery

**Forecasted Results of Operations and Cash Flows**

Wks Beginning   _8/9/21_   _thru_   _9/13/21_

| Week ----->  | 5 | 6 | 7 | 8 | 9 | 10 | TOTAL |
|---|---|---|---|---|---|---|---|
| Beginning of Week | 8/9/21 | 8/16/21 | 8/23/21 | 8/30/21 | 9/6/21 | 9/13/21 | |
| End of Week | 8/15/21 | 8/22/21 | 8/29/21 | 9/5/21 | 9/12/21 | 9/19/21 | |
| **Other (Sources) / Uses** | | | | | | | |
| DIP Financing Costs [5] | $    - | $    - | $    - | $    - | $   63 | $    - | $   63 |
| Revolver Interest Payments | 292 | - | - | - | 311 | - | 603 |
| Insurance Claims Professionals | - | - | - | 50 | - | - | 50 |
| Term Lender Agent Fee | - | 50 | - | - | - | - | 50 |
| Engineering Professionals (Turner Mason) | - | - | - | - | - | - | - |
| **Total    Other (Sources) / Uses** | 292 | 50 | - | 50 | 374 | - | 766 |
| **Net Cash Flow Before Professional Fees** | **(5,215)** | **(1,932)** | **(2,790)** | **(3,229)** | **(1,913)** | **(1,300)** | **$ (16,379)** |
| **Professional Fees** | | | | | | | |
| Debtor Legal | $    - | $    - | $    - | $    - | $    - | $    - | $    - |
| DIP Lender Counsel | - | - | - | - | - | - | - |
| Debtor Chief Restructuring Officer | - | - | - | - | - | - | - |
| UCC Legal and Financial Advisor | - | - | - | - | - | - | - |
| Term Lender Professionals | - | - | - | - | - | - | - |
| Independent Director | - | - | - | - | - | - | - |
| J Aron Counsel | - | - | - | - | - | - | - |
| Revolver Counsel | - | - | - | - | - | - | - |
| US Trustee Fees | - | - | - | - | - | - | - |
| Investment Banker | - | 100 | - | - | - | - | 100 |
| BMC - Claims Agent | - | - | - | - | - | - | - |
| **Total** | **$    -** | **$  100** | **$    -** | **$    -** | **$    -** | **$    -** | **$  100** |
| **Net Cash Flow** | **$ (5,215)** | **$ (2,032)** | **$ (2,790)** | **$ (3,229)** | **$ (1,913)** | **$ (1,300)** | **$ (16,479)** |
| _Accumulated_ | $ (5,215) | $ (7,247) | $ (10,037) | $ (13,266) | $ (15,179) | $ (16,479) | |
| **Beginning Cash Balance** | **$  900** | **$ 5,685** | **$ 3,653** | **$  863** | **$ 3,634** | **$ 1,721** | |
| **Net Cash Flow** | (5,215) | (2,032) | (2,790) | (3,229) | (1,913) | (1,300) | |
| **DIP Draw** | 10,000 | - | - | 6,000 | - | - | |
| **DIP (Paydown)** | - | - | - | - | - | - | |
| **Ending Book Cash Balance** | **$ 5,685** | **$ 3,653** | **$  863** | **$ 3,634** | **$ 1,721** | **$  421** | **$  421** |
| **Ending DIP Balance** | **$ 15,500** | **$ 15,500** | **$ 15,500** | **$ 21,500** | **$ 21,500** | **$ 21,500** | **$ 21,500** |
| _Debtor Professional Fees Accrued (Cumulative)_ | $ 1,558 | $ 1,869 | $ 2,181 | $ 2,492 | $ 2,804 | $ 3,115 | |
| _UCC Professional Fees Accrued (Cumulative)_ | $  138 | $  185 | $  231 | $  277 | $  323 | $  369 | |

[1] - There are potential amounts owed from BP to the Company that are in dispute.  Those funds have not been projected as collected in the 13 week period.
[2] - Additional $2.0 million in collections are projected after the 13-week period.
[3] - Existing premiums; coverages are currently under review with agents.
[4] - More spend after this period anticipated in order to complete hydrocarbon removal.  Budgeting currently in process.
[5] - Assumes DIP Draws of $5.5 million on 7/12/2021, $10.0 million on 8/9/2021, $6.0 million on 8/30/2021, and DIP Repayments of $11.0 million on 9/20/2021 and $10.5 million on 10/4/2021.  Assumes an annual cash interest rate of 3.0%, annual PIK interest rate of 9.0%, annual delayed draw interest of 1.5%, and an agent fee of 0.25% on the total commitment amount.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | CHAPTER 11 |
| **LIMETREE BAY SERVICES, LLC**, *et al.* [1] | CASE NO.: 21-32351 |
| Debtors. | Jointly Administered |

## NOTICE OF FILING PROPOSED BUDGET FOR AUGUST 9, 2021 HEARING

**PLEASE TAKE NOTICE** that the debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned bankruptcy cases hereby submit the proposed budget attached hereto as Exhibit 1 (the "**Proposed Budget**") for consideration at the continued hearing at **3:30 p.m. on August 9, 2021** on *the Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-Petition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (IV) Approving Adequate Protection to Pre-Petition Secured Creditors; (V) Modifying the Automatic Stay; and (VI) Scheduling a Final Hearing* (Doc. No. 14). The Proposed Budget shall also be used as Debtors' Exhibit 2 at the hearing.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

Dated: August 8, 2021

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
**Jimmy D. Parrish, Esq.**
Fed. ID No. 2687598
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile: 407.841.0168
Email: egreen@bakerlaw.com
        jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
(Admitted Pro Hac Vice)
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com

*Proposed Counsel for the Debtors and Debtors
in Possession*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 8, 2021, a true and correct copy of the foregoing was filed with the Court using the CM/ECF System, which will provide notice of such filing to all parties requesting such notice.

*/s/ Elizabeth A. Green*
Elizabeth A. Green

4819-8411-1092.1

## **EXHIBIT 1**

### **PROPOSED BUDGET**

**Limetree Bay Refinery**

Forecasted Results of Operations and Cash Flows

Wks Beginning    *8/9/21*    thru    *9/13/21*

| Week -----> | 5 | 6 | 7 | 8 | 9 | 10 | TOTAL |
|---|---|---|---|---|---|---|---|
| Beginning of Week | 8/9/21 | 8/16/21 | 8/23/21 | 8/30/21 | 9/6/21 | 9/13/21 | |
| End of Week | 8/15/21 | 8/22/21 | 8/29/21 | 9/5/21 | 9/12/21 | 9/19/21 | |
| **Cash Receipts** | $ 100 | $ - | $ 100 | $ - | $ 600 | $ - | $ 800 |
| **Cash Disbursements** | | | | | | | |
| Payroll / Benefits | $ 1,600 | $ 125 | $ 1,061 | $ 281 | $ 498 | $ 50 | $ 3,615 |
| Fuel | 395 | 395 | 352 | 352 | 234 | 117 | 1,846 |
| Maintenance and Other Outside Services | 25 | 25 | 25 | 25 | 25 | 25 | 150 |
| Insurance                               [3] | - | - | 319 | - | - | - | 319 |
| Utilities / Water | 218 | - | - | - | - | 218 | 435 |
| IT Support / Software / Hardware | 93 | 10 | 10 | 44 | - | 49 | 205 |
| Environmental / Safety | 184 | - | - | - | - | - | 184 |
| Admin / Site Services | 180 | 136 | 50 | 50 | - | - | 415 |
| Relocation Costs | 550 | - | - | - | - | - | 550 |
| Limetree Bay Terminal Services | - | - | - | - | - | - | - |
| EPA Mandated Expenditures | 106 | 30 | - | 30 | - | 30 | 196 |
| Utility Adequate Assurance Payment | 403 | - | - | - | - | - | 403 |
| Flare Repair | 95 | 35 | - | - | - | - | 130 |
| Hydrocarbon Removal                     [4] | 233 | 233 | 233 | 233 | 233 | 233 | 1,398 |
| **Total    Cash Disbursements** | $ 4,081 | $ 989 | $ 2,050 | $ 1,015 | $ 990 | $ 721 | $ 9,846 |
| **Operating Cash Flow** | $ (3,981) | $ (989) | $ (1,950) | $ (1,015) | $ (390) | $ (721) | $ (9,046) |
| **Other (Sources) / Uses** | | | | | | | |
| DIP Financing Costs                     [5] | $ 550 | $ - | $ - | $ - | $ 52 | $ - | $ 602 |
| Revolver Interest Payments | 292 | - | - | - | 311 | - | 603 |
| Insurance Claims Professionals | - | - | - | - | - | - | - |
| Term Lender Agent Fee | - | - | - | - | - | - | - |
| **Total    Other (Sources) / Uses** | 842 | - | - | - | 363 | - | 1,205 |
| **Net Cash Flow Before Professional Fees** | (4,823) | (989) | (1,950) | (1,015) | (753) | (721) | $ (10,251) |
| **Professional Fees** | | | | | | | |
| Debtor Legal | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| DIP Lender Counsel | - | - | - | - | - | - | - |
| Debtor Chief Restructuring Officer | - | - | - | - | - | - | - |
| UCC Legal and Financial Advisor | - | - | - | - | - | - | - |
| Term Lender Professionals | - | - | - | - | - | - | - |
| Independent Director | - | - | - | - | - | - | - |
| J Aron Counsel | - | - | - | - | - | - | - |
| Revolver Counsel | - | - | - | - | - | - | - |
| US Trustee Fees | - | - | - | - | - | - | - |
| Investment Banker | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total** | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Net Cash Flow** | $ (4,823) | $ (989) | $ (1,950) | $ (1,015) | $ (753) | $ (721) | $ (10,251) |
| *Accumulated* | $ (4,823) | $ (5,811) | $ (7,761) | $ (8,777) | $ (9,530) | $ (10,251) | |
| **Beginning Cash Balance** | $ 400 | $ 5,577 | $ 4,589 | $ 2,639 | $ 1,623 | $ 870 | |
| **Net Cash Flow** | (4,823) | (989) | (1,950) | (1,015) | (753) | (721) | |
| **DIP Draw** | 10,000 | - | - | - | - | - | |
| **DIP (Paydown)** | - | - | - | - | - | - | |
| **Ending Book Cash Balance** | $ 5,577 | $ 4,589 | $ 2,639 | $ 1,623 | $ 870 | $ 149 | $ 149 |
| **Ending DIP Balance** | $ 15,500 | $ 15,500 | $ 15,500 | $ 15,500 | $ 15,500 | $ 15,500 | $ 15,500 |
| *Debtor Professional Fees Accrued (Cumulative)* | $ 1,558 | $ 1,869 | $ 2,181 | $ 2,492 | $ 2,804 | $ 3,115 | |
| *UCC Professional Fees Accrued (Cumulative)* | $ 138 | $ 185 | $ 231 | $ 277 | $ 323 | $ 369 | |

[1] - There are potential amounts owed from BP to the Company that are in dispute.  Those funds have not been projected as collected in the 13 week period.
[2] - Additional $2.0 million in collections are projected after the 13-week period.
[3] - Existing premiums; coverages are currently under review with agents.
[4] - More spend after this period anticipated in order to complete hydrocarbon removal.  Budgeting currently in process.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.* [1]** | **CASE NO.: 21-32351** |
| Debtors. | **Jointly Administered** |

## NOTICE OF FILING PROPOSED BUDGET FOR AUGUST 11, 2021 HEARING

**PLEASE TAKE NOTICE** that the debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned bankruptcy cases hereby submit the proposed budget attached hereto as Exhibit 1 (the "**Proposed Budget**") for consideration at the continued hearing at **1:00 p.m. Central Time on August 11, 2021** on *the Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-Petition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (IV) Approving Adequate Protection to Pre-Petition Secured Creditors; (V) Modifying the Automatic Stay; and (VI) Scheduling a Final Hearing* (Doc. No. 14). The Proposed Budget shall also be used as Debtors' Exhibit 2 at the hearing.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

Dated: August 11, 2021        **BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
**Jimmy D. Parrish, Esq.**
Fed. ID No. 2687598
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile: 407.841.0168
Email: egreen@bakerlaw.com
        jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
(Admitted Pro Hac Vice)
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com

*Proposed Counsel for the Debtors and Debtors
in Possession*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on August 11, 2021, a true and correct copy of the foregoing was filed with the Court using the CM/ECF System, which will provide notice of such filing to all parties requesting such notice.

*/s/ Elizabeth A. Green*
Elizabeth A. Green

4819-8411-1092.1

## **EXHIBIT 1**

**PROPOSED BUDGET**

**Limetree Bay Refinery**

**Forecasted Results of Operations and Cash Flows**

Wks Beginning   *8/9/21*   thru   *10/25/21*

| | | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week -----> | | | | | | | | | | | | | | |
| Beginning of Week | | 8/9/21 | 8/16/21 | 8/23/21 | 8/30/21 | 9/6/21 | 9/13/21 | 9/20/21 | 9/27/21 | 10/4/21 | 10/11/21 | 10/18/21 | 10/25/21 | |
| End of Week | | 8/15/21 | 8/22/21 | 8/29/21 | 9/5/21 | 9/12/21 | 9/19/21 | 9/26/21 | 10/3/21 | 10/10/21 | 10/17/21 | 10/24/21 | 10/31/21 | |
| **Cash Receipts** | | | | | | | | | | | | | | |
| BP | [1] | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Excess Construction Material | [2] | 100 | - | 100 | - | 600 | - | 100 | 500 | - | - | 100 | 500 | 2,000 |
| Est. J. Aron Proceeds/Lien Release | | - | - | - | - | - | - | - | - | 18,008 | - | 20,000 | - | 38,008 |
| Resale of Flushing Oil | | - | - | - | - | - | 560 | - | - | - | - | - | - | 560 |
| Insurance Proceeds - TBD | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Sale of Spare Parts | | - | - | - | - | - | - | - | - | - | - | - | 2,500 | 2,500 |
| Asset Sale - TBD | [3] | - | - | - | - | - | - | - | - | - | - | - | - | - |
| *Total     Cash Receipts* | | $ 100 | $ - | $ 100 | $ - | $ 600 | $ - | $ 660 | $ 500 | $18,008 | $ - | $20,100 | $3,000 | $ 43,068 |
| **Cash Disbursements** | | | | | | | | | | | | | | |
| Payroll / Benefits | | $ 1,357 | $ 250 | $ 1,268 | $ 311 | $ 1,183 | $ 90 | $ 1,144 | $ - | $ 156 | $ - | $ - | $ - | $ 5,759 |
| Fuel | | 365 | 390 | 390 | 390 | 390 | 390 | 390 | 195 | 195 | 195 | 195 | 195 | 3,680 |
| Maintenance and Other Outside Services | | 442 | 298 | 298 | 298 | 298 | 298 | 30 | 30 | 30 | 30 | 30 | 30 | 2,110 |
| Insurance | [4] | - | - | 571 | - | - | - | - | - | 367 | - | - | 311 | 1,249 |
| IT Support / Software / Hardware | | - | 195 | 10 | 88 | 185 | 10 | 10 | 86 | 185 | 20 | 10 | 59 | 858 |
| Environmental / Safety | | - | 184 | - | - | 184 | - | - | - | 184 | - | - | - | 552 |
| Admin / Site Services | | 185 | 582 | 146 | 146 | 146 | 548 | 146 | 146 | 146 | 548 | 146 | 146 | 3,027 |
| Relocation Costs | | 550 | - | - | 1,392 | - | - | - | - | 612 | - | - | - | 2,554 |
| Community Incident Response | [5] | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Limetree Bay Terminal Services | | 150 | 150 | 150 | 150 | 150 | - | - | - | - | - | - | - | 750 |
| EPA Mandated Expenditures | | 106 | 30 | - | 30 | - | 30 | - | 30 | - | 30 | - | 30 | 286 |
| Utility Adequate Assurance Payment | | - | 403 | - | - | - | - | - | - | - | - | - | - | 403 |
| Flare Repair | | 136 | 50 | - | - | - | - | - | - | - | - | - | - | 186 |
| Hydrocarbon Removal | [6] | 407 | 660 | 310 | 310 | 660 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 4,519 |
| *Total     Cash Disbursements* | | $ 3,698 | $ 3,191 | $ 3,142 | $ 3,115 | $ 3,195 | $ 1,676 | $ 2,029 | $ 797 | $ 2,185 | $ 1,133 | $ 691 | $ 1,080 | $ 25,932 |
| **Operating Cash Flow** | | $ (3,598) | $ (3,191) | $ (3,042) | $ (3,115) | $ (2,595) | $ (1,676) | $ (1,369) | $ (297) | $15,823 | $ (1,133) | $19,409 | $ 1,920 | $ 17,136 |

# Limetree Bay Refinery

**Forecasted Results of Operations and Cash Flows**

Wks Beginning   *8/9/21*   *thru*   *10/25/21*

| | | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week -----> | Beginning of Week | 8/9/21 | 8/16/21 | 8/23/21 | 8/30/21 | 9/6/21 | 9/13/21 | 9/20/21 | 9/27/21 | 10/4/21 | 10/11/21 | 10/18/21 | 10/25/21 | |
| | End of Week | 8/15/21 | 8/22/21 | 8/29/21 | 9/5/21 | 9/12/21 | 9/19/21 | 9/26/21 | 10/3/21 | 10/10/21 | 10/17/21 | 10/24/21 | 10/31/21 | |
| **Other (Sources) / Uses** | | | | | | | | | | | | | | |
| DIP Financing Costs | [7] | $ 50 | $ - | $ - | $ - | $ 51 | $ - | $ - | $ - | $ 42 | $ - | $ - | $ 1,035 | $ 1,179 |
| Insurance Claims Professionals | | - | - | - | 50 | - | - | - | - | 50 | - | - | 50 | 150 |
| Term Lender Agent Fee | | - | 50 | - | - | - | - | - | - | - | - | - | - | 50 |
| Engineering Professionals (Turner Mason) | | - | - | 75 | - | - | - | - | - | 75 | - | - | - | 150 |
| *Total*   Other (Sources) / Uses | | 50 | 50 | 75 | 50 | 51 | - | - | - | 167 | - | - | 1,085 | 1,529 |
| **Net Cash Flow Before Professional Fees** | | (3,648) | (3,241) | (3,117) | (3,165) | (2,646) | (1,676) | (1,369) | (297) | 15,656 | (1,133) | 19,409 | 835 | $ 15,608 |
| **Professional Fees** | | | | | | | | | | | | | | |
| Debtor Legal | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 800 | $ - | $ - | $ 800 | $ 1,600 |
| DIP Lender Counsel | | 50 | - | - | - | 200 | - | - | - | 200 | - | - | 200 | 650 |
| Debtor Chief Restructuring Officer | | - | - | - | - | - | - | - | - | 280 | - | - | 280 | 560 |
| UCC Legal and Financial Advisor | | - | - | - | - | - | - | - | - | 600 | 350 | - | - | 950 |
| Term Lender Professionals | | - | - | - | - | - | - | - | - | 250 | - | - | - | 250 |
| Independent Director | | - | - | - | - | - | - | - | - | 15 | - | - | - | 15 |
| Revolver Counsel | | - | - | - | - | - | - | - | - | 100 | - | - | - | 100 |
| US Trustee Fees | | - | - | - | - | - | - | - | - | - | - | 250 | - | 250 |
| Investment Banker | | - | - | - | 100 | - | - | - | - | 100 | - | - | - | 200 |
| BMC - Claims Agent | | - | - | - | - | - | - | - | - | 50 | - | - | - | 50 |
| *Total* | | $ 50 | $ - | $ - | $ - | $ 100 | $ 200 | $ - | $ - | $ 2,395 | $ 350 | $ - | $ 1,280 | $ 4,625 |
| **Net Cash Flow** | | $ (3,698) | $ (3,241) | $ (3,117) | $ (3,265) | $ (2,846) | $ (1,676) | $ (1,369) | $ (297) | $13,261 | $ (1,483) | $19,159 | $ (445) | $ 10,983 |
| *Accumulated* | | $ (3,698) | $ (6,939) | $ (10,056) | $ (13,321) | $ (16,167) | $ (17,843) | $ (19,213) | $ (19,509) | $ (6,248) | $ (7,731) | $ 11,428 | $ 10,983 | |
| **Beginning Cash Balance** | | $ 955 | $ 7,257 | $ 4,015 | $ 898 | $ 5,633 | $ 2,787 | $ 1,111 | $ 1,242 | $ 945 | $14,206 | $12,723 | $31,883 | |
| **Net Cash Flow** | | (3,698) | (3,241) | (3,117) | (3,265) | (2,846) | (1,676) | (1,369) | (297) | 13,261 | (1,483) | 19,159 | (445) | |
| **DIP Draw** | | 10,000 | - | - | 8,000 | - | - | 1,500 | - | - | - | - | - | |
| **DIP (Paydown)** | | - | - | - | - | - | - | - | - | - | - | - | (25,000) | |
| **Ending Book Cash Balance** | | $ 7,257 | $ 4,015 | $ 898 | $ 5,633 | $ 2,787 | $ 1,111 | $ 1,242 | $ 945 | $14,206 | $12,723 | $31,883 | $ 6,437 | $ 6,437 |
| **Ending DIP Balance** | | $15,500 | $15,500 | $15,500 | $23,500 | $23,500 | $23,500 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $ - | $ - |
| Debtor Professional Fees Accrued (Cumulative) | | $ 1,558 | $ 1,869 | $ 2,181 | $ 2,492 | $ 2,804 | $ 3,115 | $ 3,427 | $ 3,738 | $ 2,970 | $ 3,282 | $ 3,593 | $ 2,825 | |
| UCC Professional Fees Accrued (Cumulative) | | $ 279 | $ 371 | $ 464 | $ 557 | $ 650 | $ 743 | $ 836 | $ 929 | $ 421 | $ 164 | $ 257 | $ 350 | |

[1] - The Debtors have outstanding invoices to BP in the amount of approximately $32 million in respect of operational expenses incurred during the months of August 2020 through the present, under the Tolling Agreement.  Such invoices are disputed by BP.  These amounts are not included in the 12-week projection period as the CRO is currently investigating the validity of these outstanding amounts as well as the validity of any set-off claims.

[2] - Additional $2.0 million in collections are projected after the 13-week period.

[3] - USVI holds a letter of credit in the amount of $50 million split 50/50 between LB Terminals and LB Refining.  Under the Operating Agreement such amounts can be used for payment defaults and environmental assurances.

[4] - Existing premiums; coverages are currently under review with agents.

[5] - Subject to mediation.

[6] - More spend after this period anticipated in order to complete hydrocarbon removal.  Budgeting currently in process.

[7] - Assumes DIP Draws of $5.5 million on 7/12/2021, $10.0 million on 8/9/2021, $8.0 million on 8/30/2021, and $1.5 million on 9/20/2021, and DIP Repayments of $25.0 million on 10/25/2021.  Assumes an annual cash interest rate of 3.0%, annual PIK interest rate of 9.0%, annual delayed draw interest of 1.5%, and an agent fee of 0.25% on the total commitment amount.

United States Bankruptcy Court
Southern District of Texas

**ENTERED**
August 11, 2021
Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*,**[1] | **CASE NO.: 21-32351** |
| **Debtors.** | **Jointly Administered** |

(Docket No. 191)

### ORDER GRANTING DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF ORDER: (I) ESTABLISHING BIDDING AND SALE PROCEDURES; (II) APPROVING THE <u>SALE OF ASSETS; AND (III) GRANTING RELATED RELIEF</u>

Upon the motion ("**Motion**")[2] of the debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**") for entry of an order (the "**Order**") (i) approving the proposed bidding and sale procedures attached hereto as <u>Appendix A</u> (the "**Bidding Procedures**") for the proposed sale(s) of substantially all assets of the Debtors' bankruptcy estates, (ii) scheduling an auction and final sale hearing for approval of the Sale, and (iii) approving procedures for the assumption and assignment of executory contracts and unexpired leases of the Debtors in connection with the Sale, as more fully set forth in the Motion; finding this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; finding that this matter is a core proceeding pursuant to 28 U.S.C. § 157; finding this Court may enter final orders in this matter consistent with Article III of the United States Constitution; finding that this matter is properly venued in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; finding emergency consideration of the Motion warranted under the circumstances presented; finding notice of the Motion due and proper under the circumstances and in accordance with all

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222).  The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

applicable rules and orders, and no further or additional notice of the Motion being warranted; having considered the Motion and all other documents submitted in support of the Motion; and, after due deliberation, finding that the relief requested by and through the Motion, is due and proper and serves the best interests of the Estates and their creditors; and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED:**

1.  The Motion is granted as set forth herein.

2.  All objections to the Motion or entry of this Order, or granting of the relief provided herein, that have not been withdrawn, waived, resolved or settled, are hereby denied and overruled on the merits with prejudice.

3.  The Bidding Procedures, attached hereto as <u>Appendix A</u>, including, without limitation, the procedures for the Auction and the assumption and assignment of Executory Contracts set forth therein, are hereby approved in all respects and shall govern any and all bids and bid proceedings related to the Assets. The Debtors and their professionals and agents are authorized to take any and all action necessary or appropriate to implement the Bidding Procedures, including, without limitation, engaging individuals or entities on reasonable terms, subject to consultation with the Notice Parties (as defined in the Bidding Procedures) and compliance with the terms of the Interim DIP Order and Budget (as defined in the Interim DIP Order), each as may be modified by any Final DIP Order, to assist with the implementation of the Bidding Procedures; *provided, however*, that the engagement or compensation of any professionals shall be subject to compliance with any applicable provisions of the Bankruptcy Code.

4.  If the DIP Lenders and/or any Prepetition Secured Party intends to credit bid for any of the Assets, such parties shall notify the Debtors, U.S. Trustee, and the other Notice Parties

4818-4812-3125.1

of their intention to credit bid no later than **September 17, 2021, at 5:00 p.m.** (prevailing Central Time).

5. The deadline for any Potential Bidders to submit a Bid for any or all of the Assets of the Debtors shall be **September 17, 2021, at 5:00 p.m.** (prevailing Central Time). Bids must be delivered in writing and accompanied by all supporting documents and information, by email, such that the same is received on or prior to the Bid Deadline to: (i) proposed counsel to the Debtors, Baker & Hostetler, LLP, 200 SunTrust Center, Suite 2300, 200 South Orange Avenue, Orlando, Florida 32801, Attn: Elizabeth A. Green (egreen@bakerlaw.com), and 45 Rockefeller Plaza, New York, New York 10111, Attn: Jorian L. Rose (jrose@bakerlaw.com); and (ii) proposed counsel for the Official Committee of Unsecured Creditors of the Debtors (the "**Committee**"), Pachulski Stang Ziehl & Jones LLP, Attn: Michael D. Warner (mwarner@pszjlaw.com), Jeffrey N. Pomerantz (jpomerantz@pszjlaw.com), Robert J. Feinstein (rfeinstein@pszjlaw.com), Shirley S. Cho (scho@pszjlaw.com) ("**Committee Advisors**"). The Potential Bidder must deliver the proposed Bid, and all supporting documents and information, such that the Bid and related documents and information are actually received by the aforementioned parties no later than the Bid Deadline.

6. The Debtors, in consultation with the Lender Advisors and the Committee Advisors, shall prepare a summary of the highest and best Bid(s) for all or substantially all Assets and/or the highest and best Piecemeal Bid(s) (the "**Bid Summary**"). The Debtors shall upload the Bid Summary to the Data Room no later than **September 7, 2021** (the "**Bid Summary Deadline**"), which shall be deemed to make such information "generally available to all potential bidders" for purposes of Paragraph 37 of the Complex Rules.

7. The Debtors may, upon consultation with the Notice Parties, designate a Stalking Horse Bid and Stalking Horse Bidder on or before **September 10, 2021**. Designation of a Stalking Horse Bid and Stalking Horse Bidder in accordance with the Bidding Procedures for all or substantially all Assets of the Debtors, or more than one Stalking Horse Bid and Stalking Horse Bidder, if the Assets subject to such Stalking Horse Bids, in the aggregate, constitute all or substantially all Assets of the Debtors, shall satisfy the Debtors' obligation under the Interim DIP Order to "obtain[]…a binding stalking horse bid for the sale of all or substantially all of the Debtors' assets…." *See* Docket No. 104, at p. 45. The Debtors shall not designate any Qualified Bid as a Stalking Horse Bid unless such Bid is reasonably acceptable to each of the Prepetition Secured Parties, after consultation with the Committee.

8. If the Debtors designate a Stalking Horse Bidder, the Debtors shall file and serve the Stalking Horse Notice on or before **September 13, 2021**. The Stalking Horse Notice shall include the following information and disclosures: (a) the identity of the Stalking Horse Bidder(s); (b) a summary of the material terms of the Stalking Horse Bid(s), including, without limitation, the Assets subject thereto, the consideration proposed for the Sale, any proposed Bid Protections and the bases therefor, and any amendments to the Bidding Procedures required under the Stalking Horse Bid(s); (c) outline any and all proposed Bid Protections, which may include the payment of a break-up fee and any other appropriate or customary protections, *provided* that the aggregate amount of the Bid Protections (including any expense reimbursements) that may be paid to any or all Stalking Horse Bidders shall not exceed three percent (3%) of the proposed Purchase Price and that any Bid Protections shall only be payable upon the closing of and out of the proceeds of a sale transaction; and (d) the means of obtaining a copy of the Stalking Horse Bid, the Stalking Horse APA, and a redline of the Stalking Horse APA marked against the APA on the BMC Group website

4

for the Debtors; *provided, however*, that the Debtors shall provide copies of the Stalking Horse Bid and Stalking Horse APA to the Court and the U.S. Trustee, and upload copies of the Stalking Horse Bid and Stalking Horse APA to the Data Room, no later than two (2) business days after the filing of the Stalking Horse Notice.

9.      Any objections to the Stalking Horse Notice, including any Bid Protections designated therein, shall be filed on or before **September 17, 2021** (the "**Stalking Horse Objection Deadline**").  The failure to file a timely objection on or prior to the Stalking Horse Objection Deadline shall be deemed to be a waiver of any such objections and consent to the approval of the Bid Protections and amended Bidding Procedures.  If an objection is timely filed, the Debtors shall notice a hearing before the Court to consider the objection(s) on an emergency basis; *provided, however,* that the Bidding Procedures will be deemed approved regardless of whether or not the Auction occurs prior to the resolution of any objection to the Bid Protections or amended Bidding Procedures.  Any objecting parties shall be deemed to have consented to the expedited and final resolution of any such objections by the Court.  The filing or pendency of any objection(s) shall not alter any dates or deadlines established under the Bidding Procedures or affect the binding nature of the Stalking Horse Bid or any other Bids.  For the avoidance of doubt, any substantive objections to a Sale to the Stalking Horse Bidder, should the Stalking Horse Bidder be the Winning Bidder, shall be filed in accordance with paragraph 12 of this Order and need not be filed on or prior to the Stalking Horse Objection Deadline.

10.      The Debtors are hereby authorized to conduct an Auction in accordance with the terms of the Bidding Procedures, including, without limitation, an Open Auction, subject to the agreement of the DIP Agent and Prepetition Secured Parties.  If the Debtors conduct an Auction pursuant to the Bidding Procedures, the Auction shall begin on **September 22, 2021, at 10:00**

**a.m. (prevailing Central Time)** either (a) at the offices of Baker & Hostetler, LLP, located at 811 Main Street, Suite 1100, Houston, Texas 77002 or (b) via a virtual platform, such as Zoom or GoToMeeting, as the Debtors designate.  No later than forty-eight (48) hours prior to the Auction Date, the Debtors shall provide notice of the Auction location and, if via a virtual platform, the credentials required to access such platform, to all Qualified Bidders, the Notice Parties, and the U.S. Trustee.  The Debtors are authorized, after consultation with the Notice Parties, to continue the Auction from time to time, adjourn the Auction at any time, and re-open the Auction at any time prior to the deadline to file the Designation of Winning Bidder.

11.     Subject to the provisions of the Bidding Procedures, and after consultation with the Notice Parties, the Debtors are authorized to select a Winning Bidder following the conclusion of the Auction and execute, deliver, and perform all obligations of the Debtors under the Stalking Horse APA or asset purchase agreement of the Winning Bidder, and all other transactional documents related thereto, pending the Sale Hearing.  The Debtors shall file and serve a Designation of Winning Bid as soon as practicable following the conclusion of the Auction, but in no event later than **September 24, 2021**.  The Designation of Winning Bid shall: (i) identify the Winning Bidder and Back-up Bidder; (ii) provide a summary of the Winning Bid and Back-up Bid; (iii) contain a copy of the asset purchase agreement(s) for the Winning Bid(s) (the "**Modified APA(s)**") and a redline marked against the Stalking Horse APA; *provided, however,* that the Debtors shall not be required to serve copies of the Modified APA(s) or any redline comparison to the Stalking Horse APA with the Designation of Winning Bid so long as the Designation of Winning Bid provides instructions for accessing such documents on the BMC Group website for the Debtors; and (iv) contain a statement as to the Winning Bidder's or Back-up Bidder's ability to perform the Debtors' obligations under the Purchased Contracts (as defined below).  In addition,

the Designation of Winning Bidder shall include a list of those executory contracts and unexpired leases designated in the Winning Bid and/or Back-up Bid for assumption and assignment to the Winning Bidder and/or Back-up Bidder, respectively (collectively, the "**Purchased Contracts**"), with: (i) the name and address of the known contract counterparties thereto; (ii) the Cure Amount with respect to any such Purchased Contract; and (iii) the deadline by which any counterparties must file an objection to the proposed assumption and assignment of any Purchased Contract; *provided, however,* that the inclusion of any Purchased Contract in the Designation of Winning Bid shall not constitute an admission that the subject contract(s) or lease(s) are executory contract(s) or unexpired lease(s) for purposes of Section 365 of the Bankruptcy Code or an agreement to assume or assign such Purchased Contracts.

12.     The Debtors shall file a notice (the "**Notice of Potential Assumption and Assignment of Executory Contracts**") identifying the executory contracts and unexpired leases that may be assumed and assigned to the Winning Bidder or Back-up Bidder (the "**Potential Purchased Contracts**"), no later than **September 13, 2021**, and serve such notice upon all counterparties to Potential Purchased Contracts.  Such Notice of Potential Assumption and Assignment of Executory Contracts shall identify: (i) the Potential Purchased Contracts; (ii) the name and address of the known contract counterparties thereto; (iii) the Cure Amount with respect to any Potential Purchased Contract; and (iv) the deadline by which any counterparties must file an objection to the proposed assumption and assignment of any Potential Purchased Contract; *provided, however,* that the inclusion of any Potential Purchased Contract on the Notice of Potential Assumption and Assignment of Executory Contracts shall not constitute an admission that the subject contract(s) or lease(s) are executory contract(s) or unexpired lease(s) for purposes of Section 365 of the Bankruptcy Code or an agreement to assume or assign such Potential

7

Purchased Contracts.  To the extent the Debtors identify additional Potential Purchased Contracts after September 13, 2021, the Debtors shall promptly file a supplemental Notice of Potential Assumption and Assignment of Executory Contracts, containing the same information as set forth above for the additional Potential Purchased Contracts.

13.     Any objections to the Sale to the Winning Bidder or Back-up Bidder per the terms of their respective Bids shall be filed on or before **October 4, 2021, at 5:00 p.m. (prevailing Central time)**; *provided, however*, that objections to the assumption and assignment of any Potential Purchased Contracts may be filed up and until the Contract Assumption Objection Deadline.  The failure to file a timely objection shall be deemed to be a waiver of any such objections and consent to the approval of the Sale to the Winning Bidder and/or Back-up Bidder pursuant to the terms of the Winning Bid or Back-up Bid, as applicable, and associated asset purchase agreement, as may be amended, supplemented or modified prior to or during the Sale Hearing.  Any reply or other response to any objections to the Sale shall be filed and served on or before **October 8, 2021, at 5:00 p.m. (prevailing Central time)**.

14.     Any objections to the assumption and assignment of any Purchased Contract, and/or Potential Purchased Contract (collectively, the "**Subject Contracts**") shall be filed and served on or before **October 8, 2021, at 12:00 p.m.** (prevailing Central Time) (the "**Contract Assumption Objection Deadline**"), and shall (a) identify the Subject Contract(s) to which the objector is party, (b) describe with particularity any Cure Amount the objector contends is required under Section 365 of the Bankruptcy Code, (c) identify the bases of the alleged Cure Amount under the Subject Contract, and (d) attach all documents supporting or evidencing the Cure Amount.  If no objection is filed by the Contract Assumption Objection Deadline, or if the objection fails to comply with the requirements set forth herein, the Cure Amount set forth in the

8

Designation of Winning Bid Notice or Notice of Potential Assumption and Assignment of Executory Contracts, or any amended versions thereof, as applicable, shall control and any counterparties to the Subject Contract(s) shall be deemed to waive and shall be forever barred from asserting in any other claim or objection under Section 365 of the Bankruptcy Code, or otherwise, including, without limitation, any objection to the assignability of any of the purchased contracts, other than an objection to adequate assurance of performance under the Subject Contracts pursuant to Section 365(b)(1)(C) of the Bankruptcy Code; *provided, however*, that to the extent the Debtors file a supplemental Notice of Potential Assumption and Assignment of Executory Contracts, counterparties to any newly-identified Potential Purchased Contracts shall have no less than seven (7) days to object to the Cure Amount listed in such Notice of Potential Assumption and Assignment of Executory Contracts.  The Debtors may present any response to such objections in writing at any time prior to the Sale Hearing or orally during the Sale Hearing.

15.     The Debtors shall designate any Potential Purchased Contracts to be assumed and assigned to the Winning Bidder as Purchased Contracts through the Sale not previously identified in the Designation of Winning Bid via an Amended Designation of Winning Bid filed no later than **October 12, 2021**.  The Debtors shall serve all known counterparties to any Potential Purchased Contracts that have been newly-identified as Purchased Contracts in the Amended Designation of Winning Bid (the "**Additional Purchased Contracts**") with a copy of the Amended Designation of Winning Bid and notice of the Sale Hearing via email, facsimile or overnight courier, as soon as practicable thereafter.

16.     The Court shall hold a hearing to consider the approval of the Sale pursuant to the Winning Bid or Back-up Bid (the "**Sale Hearing**") on **October 19, 2021, at 2:30 p.m. (prevailing Central time)**.  The Debtors shall serve all interested parties with a notice of the Sale

9

Hearing and proposed Sale Order in accordance with applicable rules upon the filing of the Designation of Winning Bid.

17.     If approved during the Sale Hearing, and subject to entry of the Sale Order, the Winning Bidder shall close the Sale transaction set forth in the Winning Bid and associated asset purchase agreement no later than **November 1, 2021, at 5:00 p.m. (prevailing Central Time)**.  If the Winning Bidder fails to close by this deadline, the Debtors may, in their discretion, designate the Back-up Bidder as the Winning Bidder and proceed with closing the transaction under the Back-up Bid and associated asset purchase agreement.  If designated as the Winning Bidder, the Back-up Bidder shall close the Sale transaction set forth in the Back-up Bid and associated asset purchase agreement no later than **November 8, 2021, at 5:00 p.m. (prevailing Central Time)**. The Debtors, in consultation with the Notice Parties and agreement of the DIP Agent and Prepetition Secured Parties, may grant any Winning Bidder additional time to perform and, to the extent necessary, extend the Closing Date.

18.     Notwithstanding anything in this Order to the contrary, any payment to be made, or any authorization contained, hereunder shall be subject to the terms of any orders granting the use of cash collateral and approving debtor in possession financing in these chapter 11 cases (including with respect to any budget governing or relating to such use) including, without limitation, the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "**Interim DIP Order**") and the Final Order (as defined in the Interim DIP Order and collectively, the "**DIP Orders**"),  and to the extent there is any inconsistency between the terms of the DIP Orders and any action taken or proposed to be taken

4818-4812-3125.1

hereunder, the terms of the DIP Orders shall control.  For the avoidance of doubt, in the event of a Termination Event under paragraph 15 of the Interim DIP Order and related provisions of the Final Order, nothing in this Order shall alter or impact the DIP Lenders' and the Prepetition Secured Parties' rights pursuant the terms of the DIP Orders and the DIP Credit Agreement or the Prepetition Secured Documents (as those terms are defined in the Interim DIP Order), as applicable.

19.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

20.     The stay requirements of Bankruptcy Rules 6004(h) and 6006(d) are hereby waived and the terms and conditions of this Order are immediately effective and enforceable upon its entry.

21.     Any period of time prescribed or allowed by this Order or the Bidding Procedures shall be computed in accordance with Bankruptcy Rule 9006.

22.     This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

Signed:  August 11, 2021.

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

# APPENDIX A

## BIDDING PROCEDURES

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*,[3]** | **CASE NO.: 21-32351** |
| Debtors. | **Jointly Administered** |

## BIDDING PROCEDURES

The following procedures shall govern the solicitation and acceptance of any and all bids for the purchase or acquisition of any assets of Limetree Bay Services, LLC ("**LBS**") and its debtor affiliates (together with LBS, the "**Debtors**") by and through the above-captioned, jointly administered bankruptcy cases (the "**Chapter 11 Cases**"):

### Summary of Bidding Procedures

The Debtors developed the Bidding Procedures (detailed below), with the assistance of advisors and in consultation with the DIP Agent, Prepetition Secured Parties, and J. Aron (as those terms are defined in the Interim DIP Order (defined below)), and the Committee (as defined below), to provide the best opportunity to maximize the value of the Assets for the benefit of the Estates and their creditors through an efficient and streamlined sale process, which comports with the terms of the DIP Loan Documents (as defined in the Interim DIP Order) and the Bankruptcy Code (11 U.S.C. §§ 101, *et seq.*).

In short, the Bidding Procedures provided for the solicitation of bids from potential purchasers in an effort to identify a stalking horse bidder. The Debtors, in consultation with the Notice Parties,[4] shall select one or more bids to serve as stalking horse bids for all or substantially all assets of the Debtors, individually or collectively, depending on the nature of the subject bids. Thereafter, the Debtors shall hold an Auction to provide other Qualified Bidders (defined below) an opportunity to bid against the selected stalking horse bid(s). Upon conclusion of the Auction, the Debtors, in consultation with the Notice Parties, shall select a Winning Bid (defined below) and file a notice and designation of the Winning Bid for approval at the Sale Hearing.

---

[3] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[4] As used herein, "Notice Parties" refers to, collectively, the DIP Agent, the Prepetition Secured Parties, J. Aron (as defined in the Interim DIP Order), and the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases (the "**Committee**"). Unless otherwise defined, any capitalized term used herein shall have the meaning ascribed to it in the motion to approve these Bidding Procedures.

13

**Proposed Dates and Deadlines for the Sale**

Under the terms of the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 104] (the "**Interim DIP Order**"), the Court approved certain milestones under the DIP Financing (as defined in the Interim DIP Order), including, without limitation, milestones with respect to the marketing and sale of all or substantially all assets of the Debtors.  The Bidding Procedures are designed to comply with the milestones and consummate a sale of all or substantially all assets of the Debtors on or before November 9, 2021.

The dates and deadlines established under the Bidding Procedures to comply with the milestones are as follows:[5]

| Date/Deadline | Event |
|---|---|
| August 6, 2021 | Deadline to establish Data Room |
| August 13, 2021 | Deadline to upload APA and list of Executory Contracts to Data Room |
| September 7, 2021 | Bid Summary Deadline |
| September 10, 2021 | Stalking Horse Designation Deadline |
| September 13, 2021 | Deadline to file Stalking Horse Notice and Notice of Potential Assumption and Assignment of Executory Contracts |
| September 17, 2021, at 5:00 p.m. CT | Bid Deadline and Credit Bid Designation Deadline |
| September 17, 2021 | Deadline to object to Stalking Horse Notice |
| September 20, 2021, at 10:00 a.m. CT | Deadline to provide notice of Auction location |
| September 22, 2021, at 10:00 a.m. CT | Auction Date |
| September 24, 2021 | Deadline to file the Designation of Winning Bid |
| October 4, 2021, at 5:00 p.m. CT | Deadline to object to the Sale |
| October 8, 2021, at 5:00 p.m. CT | Deadline to reply to objection(s) to the Sale |
| October 8, 2021, at 12:00 p.m. CT | Contract Assumption Objection Deadline |

---

[5] Some of the dates and deadlines in the table are dependent on the occurrence of certain events.  In such cases, the dates provided are estimated or proposed dates or the last date upon which the subject date or deadline may occur under the Interim DIP Order and/or DIP Loan Document.  Any capitalized terms used in the table shall have the meanings ascribed to them in this Motion.

| October 12, 2021 | Deadline to file Amended Designation of Winning Bid to add Additional Purchased Contracts |
| --- | --- |
| October 14, 2021 | Sale Hearing (subject to Court availability) |
| October 15, 2021 | Expected entry of Sale Order |
| October 31, 2021 | Deadline to file Amended Designation of Winning Bid to remove previously identified Executory Contracts |
| November 1, 2021, at 5:00 p.m. CT | Deadline for Winning Bidder to close sale transaction |
| November 8, 2021, at 5:00 p.m. CT | Deadline for Back-up Bidder to close sale transaction (if applicable) |

**Bidding Procedures**

**A.    Participation Requirements**

1.    To participate in the bidding process or otherwise be considered for any purpose hereunder, each interested person or entity interested in submitting a Bid to purchase any of the Assets (each, a "**Potential Bidder**") must deliver or previously have delivered to the Debtors the following documents (the "**Preliminary Bid Documents**"):

    a.    An executed confidentiality agreement in a form acceptable to the Debtors, in consultation with the Notice Parties (the "**Confidentiality Agreement**");

    b.    Preliminary documentary evidence satisfactory to the Debtors, in consultation with the Notice Parties, of the Potential Bidder's financial ability to fully and timely perform and close the Sale;

    c.    Documents identifying the Potential Bidder, including its legal name, jurisdiction and form of organization, and details regarding the ownership and capital structure of the Potential Bidder, as well as the identity of any controlling persons, significant direct or indirect equity or debt investors, and/or guarantors of such entity; and

    d.    A list with the names and contact information for any financial, legal, and other advisors of the Potential Bidder has engaged to assist in connection with the proposed Sale.

**B.    Bid Requirements**

2.    Any Potential Bidder may submit a bid (each a "**Bid**") for either: (a) all or substantially all of the Assets; or (b) any portion or combination of Assets (a "**Piecemeal Bid**"). For the avoidance of doubt, no Bid or Piecemeal Bid may include the IFF Property (as defined in

15

the Interim DIP Order).  The DIP Lenders and Prepetition Secured Parties need not comply with the proposed Bidding Procedures to submit a credit bid and, for proposes of participating at the Auction, shall be deemed Qualified Bidders.

3.      To participate in the Sale process, each Potential Bidder must, on or before September 17, 2021, at 5:00 p.m. prevailing Central Time (the "**Bid Deadline**"):

a.      Fully disclose the identity of each entity that will be bidding for the assets or otherwise participating in connection with such Bid and the complete terms of any such participation.

b.      Submit to the Debtors an executed purchase agreement substantially in the form of the APA (as defined below), as well as a redline of such agreement marked against the APA, memorializing a Bid for all or substantially all of the Assets or a Piecemeal Bid that comports with the terms of the Bidding Procedures and the proposed Sale, discussed *infra*.  No later than August 13, 2021, the Debtors shall upload to the Data Room (defined below) a proposed form of asset purchase agreement for the acquisition of substantially all Assets of the Estates (the "**APA**") and a list of Executory Contracts that may be subject to assumption and assignment as part of a Sale.  As soon as reasonably practicable thereafter, the Debtors shall notify LBT of any Executory Contracts to which any LBT Entity is a party designated under any Bid for assumption and assignment to a Potential Bidder.

c.      Submit a Bid that is: (i) binding and irrevocable for a period of no less than 120 days[6] from the Bid Deadline unless and until the Debtors accept a higher Bid and such Potential Bidder is not selected as the Back-up Bidder; (ii) without financing, due diligence, internal approval or any other contingencies, including with respect to title defect or environmental laws, unless otherwise consented to by the Debtors, in consultation with the Notice Parties; *provided, however*, that a Bid may contain a list of anticipated required regulatory approvals, permits and licenses, and the expected timing for obtaining such approvals; (iii) on terms substantially similar to those terms contained in the APA; and (iv) in compliance with the Bidding Procedures.

d.      Indicate the cash purchase price (the "**Cash Consideration**") and identify any non-cash consideration, including the estimated market value of any such non-cash consideration, (together with the Cash Consideration, the "**Purchase Price**").

e.      If the Potential Bidder is submitting a Piecemeal Bid, the Potential Bidder must identify specifically the Assets subject to the Piecemeal Bid.

---

[6] Unless otherwise stated, all references to "days" contained herein refer to calendar days.  Bankruptcy Rule 9006 shall govern the computation of any and all dates and deadline under the Bidding Procedures.

f.      If the Potential Bidder proposes acquiring any assets of Limetree Bay Terminals, LLC ("**LBT**") or any parent or subsidiary of LBT (collectively, the "**LBT Entities**"), including, without limitation, any of the Terminal assets (the "**LBT Entities' Assets**"), or any other non-Debtor entities (collectively, the "**Non-Debtor Assets**"), the Potential Bidder must (i) identify any and all Non-Debtor Assets subject to the Bid and (ii) either (A) confirm that the closing of the proposed Sale of the Debtors' Assets is not contingent on the acquisition of the Non-Debtor Assets or (B) provide evidence in a form acceptable to the Debtors, after consulting with the Notice Parties, that the Potential Bidder and owner(s) of the Non-Debtor Assets subject to the Bid have entered into a binding and enforceable agreement, subject to any conditions related to the approval of the proposed Sale by the Court, for the sale and acquisition of the subject Non-Debtor Assets. For the avoidance of doubt, the Debtors shall not (i) market or sell any Non-Debtor Assets, (ii) condition the Sale of any Assets on the sale or acquisition of any Non-Debtor Assets, (iii) incur or pay any expenses related to the marketing or sale of any Non-Debtor Assets, or (iv) provide any assistance with due diligence related to any Non-Debtor Assets. Notwithstanding the foregoing, the LBT Entities have not consented to any sale of the LBT Entities' Assets. The LBT Entities must provide prior written consent to a sale of any or all of the LBT Entities' Assets; *provided, however,* that no such consent shall be required to sell the Debtors' interest, if any, in any LBT Entities' Assets to the extent such sale is permitted without the consent of the LBT Entities under applicable law. Any Non-Debtor Assets, including the LBT Entities' Assets, shall not be subject to the proposed Sale Order or jurisdiction of the Court.

g.      Specify the portion of the Purchase Price that is being allocated to each type or group of Assets, including to insurance claims or proceeds, inventory (including any Inventory Financing Collateral (as defined in the Interim DIP Order)), equipment and any other type or group of Assets that may be subject to a lien held by the DIP Lenders or any of the Prepetition Secured Parties and the basis and methodology for such allocation.

h.      Unless the Bid is a credit bid being submitted by the DIP Lenders or a Prepetition Secured Party, make a good faith cash deposit in the form of a cashier's check or wire transfer into an interest bearing escrow account (the "**Escrow Account**") maintained by the Debtors' counsel in an amount not less than ten percent (10%) of the total Purchase Price, which deposit shall immediately become non-refundable and credited toward the purchase price if and when the Qualified Bidder (as defined below) making such deposit is declared to be the winning bidder (the "**Winning Bid**" and "**Winning Bidder**") or back-up bidder (the "**Back-up Bid**" and "**Back-up Bidder**") at the Sale Hearing. In the event a Qualified Bidder is not the Winning Bidder or Back-up Bidder, such Qualified Bidder's deposit shall be refunded as set forth herein.

4818-4812-3125.1

i.        Identify the liabilities, if any, that the Potential Bidder seeks to assume through the Sale transaction, including environmental remediation liabilities.

j.        Provide documentary evidence satisfactory to the Debtors, in consultation with the Notice Parties, of the Potential Bidder's financial ability to (i) fully and timely perform and close the Sale pursuant to the Bid and proposed asset purchase agreement, if declared to be the Winning Bidder, and (ii) provide adequate assurance of future performance of all Executory Contracts identified for assumption and assignment to the Potential Bidder, including, without limitation, the following:

    i.        evidence of the Potential Bidder's internal resources and proof of unconditional debt funding commitments from a recognized financial institution and, if applicable, equity commitments in an aggregate amount equal to the purchase price and any applicable cure amounts and other closing payments, if any, or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in such amount, in each case, as are needed to close the proposed Sale transaction;

    ii.        contact names and telephone numbers for verification of financing sources;

    iii.        current audited financial statements (or such other form of financial disclosure and credit-quality support or enhancement, acceptable to the Debtors, in consultation with the Notice Parties) of the Potential Bidder or those entities that will guarantee in full the payment obligations of the Potential Bidder;

    iv.        a description of the Potential Bidder's *pro forma* capital structure; and

    v.        any such other form of financial disclosure or credit-quality support information or enhancement reasonably requested by the Debtors demonstrating that such Qualified Bidder has the ability to close the applicable Sale transaction.

k.        Disclose any connections or agreement with the Debtors or their affiliates, any of the Notice Parties, or any other known Potential Bidder or Qualified Bidder, and/or any officer, director or equity security holder of the Debtors or their affiliates or any of the foregoing and confirm that it has not engaged in any collusion with respect to the bidding or the proposed Sale transaction.

l.        Confirm in writing its agreement to accept and abide by the terms, conditions and procedures set forth herein and provide evidence of due authorization to enter into the proposed Sale pursuant to the asset purchase agreement submitted, or any derivation thereof.  In the event that the

Potential Bidder is an entity specially formed for the purpose of effectuating the contemplated transaction, then the Potential Bidder must furnish written evidence acceptable to the Debtors, in consultation with the Notice Parties, of the approval of the contemplated transaction by the equity holders or members of such Potential Bidder

m.   Identify any and all bid protections (the "**Bid Protections**") required by the Potential Bidder to serve as the Stalking Horse Bidder (defined below) for the Sale, including without limitation, any break-up fee, expense reimbursement, termination fee or similar type of payment or bid protections; *provided, however*, that the aggregate amount of any proposed Bid Protections may not exceed three percent (3%) of the total purchase price under the Bid.

n.   Acknowledge that the United States (defined below) has requested that the following language, or substantially similar language, be included in any order approving a Sale:

Nothing in the Sale Order releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Sale Order. Nothing in this Sale Order authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Sale Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.

o.   Indicate the Potential Bidder's willingness to assume outstanding obligations under the Clean Air Act Consent Decree in Civ. No. 1:11-cv-00006 (D.V.I St. Croix Div) and the Joint Stipulation in Civ. A. No. 1:21-cv-00264 (D.V.I St. Croix Div).

4.   The Debtors, in consultation with the Notice Parties, shall determine whether a Bid or Piecemeal Bid that meets the above minimum requirements constitutes a qualified bid (a "**Qualified Bid**", and the bidder submitting such Qualified Bid, a "**Qualified Bidder**"). The Debtors will promptly advise each Potential Bidder in writing whether or not the Potential Bidder is a Qualified Bidder. If a Bid submitted on or prior to the Bid Deadline fails to meet all requirements of a Qualified Bid, the Debtors, after consulting with the Notice Parties, may work with the Potential Bidder in an effort to cure any defects in the Bid and to cause such Bid to become a Qualified Bid prior to the commencement of the Auction (as defined below). Each DIP Lender and Prepetition Secured Party shall be deemed a Qualified Bidder and shall be allowed to participate in the Auction without the need to submit a Qualified Bid.

5.      The Debtors, in consultation with the Notice Parties, may select a Qualified Bid and Qualified Bidder to serve as the Stalking Horse Bid (defined below) and Stalking Horse Bidder on or before September 10, 2021 (the "**Stalking Horse Designation Deadline**").

## C.      Submission of Bids

6.      A Potential Bidder must deliver written copies of its Bid and all supporting documents and information, by email, such that the same is received on or prior to the Bid Deadline to: (i) counsel to the Debtors, Baker & Hostetler, LLP, 200 SunTrust Center, Suite 2300, 200 South Orange Avenue, Orlando, Florida 32801, Attn: Elizabeth A. Green (egreen@bakerlaw.com), and 45 Rockefeller Plaza, New York, New York 10111, Attn: Jorian L. Rose (jrose@bakerlaw.com); and (ii) counsel to the Committee, Pachulski Stang Ziehl & Jones LLP, Attn: Michael D. Warner (mwarner@pszjlaw.com), Jeffrey N. Pomerantz (jpomerantz@pszjlaw.com), Robert F. Feinstein (rfeinstein@pszjlaw.com), Shirley S. Cho (scho@pszjlaw.com) ("**Committee Advisors**")  The Potential Bidder must deliver the proposed Bid, and all supporting documents and information, such that the Bid and related documents and information are actually received by the aforementioned parties no later than the Bid Deadline.

7.      As soon as reasonably practicable following receipt, the Debtors shall provide summaries of the materials terms of each Bid, which summaries shall be treated as confidential, "Professionals' Eyes Only" (the "**PEO Information**"), to the following professionals: (i) counsel to the DIP Agent, Gray Reed, 1300 Post Oak Blvd, Suite 2000, Houston, Texas 77056, Attention: Jason S. Brookner (jbrookner@grayreed.com) and Lydia R. Webb (lwebb@grayreed.com); (ii) counsel to Goldman Sachs Bank USA, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006, Attn: Sean A. O'Neal (soneal@cgsh.com) and Jane VanLare (jvanlare@cgsh.com); (iii) counsel to J. Aron & Company LLC, Baker Botts L.L.P., 30 Rockefeller Plaza, New York, NY 10112, Attention: Robin Spigel (robin.spigel@bakerbotts.com) and Chris Newcomb (chris.newcomb@bakerbotts.com); (iv) counsel to the Ad Hoc Term Lender Group, Akin Gump Strauss Hauer & Feld LLP, 2001 K. Street N.W., Washington, DC 20006, Attention: Scott Alberino (salberino@akingump.com) and Kevin Eide (keide@akingump.com) (collectively, the "**Lender Advisors**"); (v) Committee Advisors (together with the Lender Advisors, the "**Advisors**"); and (vi) the United States of America (the "**United States**"), United States Attorney's Office for the Southern District of Texas, 1000 Louisiana Street, Suite 2300, Houston, Texas 77002, Attn: Richard Kincheloe (richard.kincheloe@usdoj.gov).  Advisors may share PEO Information with third-party professionals retained by their respective clients, including, without limitation, any financial advisors or brokers; *provided, however,* that any recipient of any PEO Information, whether directly or indirectly, shall agree to maintain the confidentiality of the PEO Information and refrain from sharing or disclosing any PEO Information with or to their respective clients, including the DIP Agent, DIP Lenders, J. Aron, Prepetition Secured Parties, the Committee members and constituents (except that Committee Advisors may share the PEO Information with the Committee provided that the Committee Advisors do not identify or otherwise disclosure the identity of any Bidders), or any other individual or entity; *provided, further*, that the Advisors and any such third-party advisors shall be permitted to advise their respective clients that they are in receipt of such PEO Information and provide summaries or analyses to their respective clients that do not disclose PEO Information.   The use and dissemination of PEO Information is subject to the further provisions set forth in Paragraph 35, *infra*.  The obligation to maintain the confidentiality of any PEO Information shall terminate upon

20

such information becoming known to all Potential Bidders, generally available to the public, or, solely with respect to the respective clients of the Lender Advisors, upon the Credit Bid Designation Deadline, in the event that such clients elect not to submit a credit bid. The United States may share PEO Information with any agency or employee of the United States requiring access to such information for matters related to the Debtors or these Chapter 11 Cases. The United States shall be otherwise prohibited from sharing any PEO Information until the obligation to maintain the confidentiality of PEO Information is terminated under the terms of these Bidding Procedures or pursuant to an order of the Court. If the United States receives any requests for any PEO Information, including any requests under the Freedom of Information Act, the United States shall promptly notify the Debtors and the Notice Parties and provide a copy of any such requests to the Debtors and the Notice Parties. To the extent any Bid proposes to purchase the interest of the Debtors in any assets jointly owned by the Debtors and the LBT Entities (the "**Joint Assets**"), as soon as reasonably practicable following receipt, the Debtors shall provide summaries of the materials terms of such Bids, solely as they relate to such Joint Assets, to counsel for the LBT Entities, Hunton Andrews Kurth LLP, 600 Travis Street, Suite 4200, Houston Texas 77002, Attention: Tad Davidson and Joseph Rovira (taddavidson@HuntonAK.com, josephrovira@HuntonAK.com) (the "LBT Advisors"); *provided, however*, that the purchase price of such Bids shall not be disclosed to the LBT Advisors except to the extent of any amount specifically allocated to Joint Assets; *provided, further*, that all such information provided to the LBT Advisors shall be treated as PEO Information and shall be subject to all confidentiality obligations pertaining thereto.

## D.  Access to Due Diligence Materials

8.  The Debtors shall establish a digital data room (the "**Data Room**") for purposes of maintaining and providing Potential Bidders access to information regarding the Debtors and the Assets for purposes of conducting due diligence. To the extent not already established, the Debtors shall establish a Data Room as soon as reasonably practicable after entry of the Bidding Procedures Order, but in no event later than August 6, 2021; *provided, however*, that the Debtors reserve the right to add or remove materials from the Data Room at any time. The Debtors shall be authorized to retain and compensate in the ordinary course of business one or more individuals or entities to assist in the creation and/or maintenance of the Data Room; *provided, however,* that any compensation shall be subject to the Budget (as defined in the Interim DIP Order), terms of the Interim DIP Order, and, with respect to professionals, the requirements of the Bankruptcy Code.

9.  Upon delivery of the Preliminary Bid Documents, any Potential Bidder that wishes to conduct due diligence on the Assets may be granted access to the Data Room. In addition to Potential Bidders (subject to the preceding sentence), the Advisors shall be granted access to the Data Room.

10.  The Debtors, along with their advisors, shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders and provide each Potential Bidder reasonable due diligence information, as requested by such Potential Bidder in writing as soon as reasonably practicable after such request; *provided, however*, the Debtors may decline to provide such information to Potential Bidders who the Debtors, in their reasonable business judgment (in consultation with the Notice Parties), determine do not intend in good faith to, or do

21

not have the capacity to, consummate the purchase of any or all of the Assets or seek access to the Data Room and the information contained therein for any improper purpose.

11.     Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors, including, without limitation, information regarding such Potential Bidder's financial wherewithal to consummate and perform obligations in connection with the Sale.  If a Potential Bidder fails to comply with any such request(s), the Debtors may, in their discretion, in consultation with the Notice Parties, disqualify the Potential Bidder and/or the subject Bid and deny or terminate access to the Data Room.

## E.     "As Is, Where Is"

12.     The Sale of any Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or Estates, except to the extent set forth in the asset purchase agreement between the Debtors and a Winning Bidder and/or Back-up Bidder, the assignment and bill of sale, if any, delivered pursuant to such asset purchase agreement, or the order approving the Sale of the Assets by the Debtors to the Winning Bidder and/or Back-up Bidder.  Except as may be provided in the subject asset purchase agreement, all of the Debtors' rights, title, and interest in and to the Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interest thereon, but subject in all respects to (a) J. Aron's right to set off and net against any obligations owed by the Debtors to J. Aron under the J. Aron Transaction Documents (as defined in the Interim DIP Order) (collectively, the "**Interests**"), with such Interests attaching to the proceeds of the Sale of the Assets, with the same validity and priority as existed immediately prior to such Sale and (b) LBT's ownership interests and rights in connection with any Assets jointly owned by the Debtors and LBT, unless LBT provides express written consent; *provided, however,* that no such consent shall be required to sell the Debtors' interest, if any, in the subject Assets to the extent such sale is permitted without the consent of the LBT Entities under applicable law.

13.     Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the Assets prior to making its Bid, that it has relied solely upon its independent review, investigation and/or inspection of any documents or information in making its Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Assets or the completeness of any information provided in connection with the bidding process, in each case except as expressly stated in any executed asset purchase agreement.

## F.     Designation of a Stalking Horse Bidder

14.     The Debtors, in consultation with the Lender Advisors and Committee Advisors, shall prepare a summary of the highest and best Bid(s) for all or substantially all Asset and/or the highest and best Piecemeal Bid(s) (the "**Bid Summary**").  The Debtors shall upload the Bid Summary to the Data Room no later than September 7, 2021 (the "**Bid Summary Deadline**"), which shall be deemed to make such information "generally available to all potential bidders" for purposes of Paragraph 37 of the Complex Rules.

15.     On or before September 10, 2021, the Debtors, in consultation with the Notice Parties, may designate one or more Qualified Bidders as the stalking horse bidder(s) (the "**Stalking Horse Bidder**") and one or more Qualified Bids as the stalking horse bid(s) (the "**Stalking Horse Bid**") with respect to a sale of all or substantially all the Assets of the Debtors.  The Debtors shall not designate any Qualified Bid as a Stalking Horse Bid unless such Bid is reasonably acceptable to each of the Prepetition Secured Parties.

16.     On or before September 13, 2021, if the Debtors have designated a Stalking Horse Bidder, the Debtors shall file a Notice of Designation of Stalking Horse Bidder (the "**Stalking Horse Notice**") and serve the Stalking Horse Notice on all interested parties.  The Stalking Horse Notice shall (a) identify the Stalking Horse Bidder, (b) provide a summary of the Stalking Horse Bid, (c) outline any and all proposed Bid Protections, which may include the payment of a break-up fee and any other appropriate or customary protections, *provided* that the aggregate amount of the Bid Protections that may be paid to any or all Stalking Horse Bidders shall not exceed three percent (3%) of the proposed purchase price and that any Bid Protections shall only be payable upon the closing of and out of the proceeds of a sale transaction, and (d) the means for obtaining a copy of the asset purchase agreement for the Stalking Horse Bid (the "**Stalking Horse APA**") and a redline marked against the APA.  The Debtors may modify the terms of the Bidding Procedures[7] (excluding (i) the requirements set forth in Paragraph 3 of these Bidding Procedures, which modifications thereto shall require the consent of the DIP Agent and each of the Prepetition Secured Parties or (ii) any dates or deadlines set forth in these Bidding Procedures, which modifications shall require the consent of all Notice Parties) through the Stalking Horse Notice, in consultation with the Notice Parties.

17.     Any interested parties shall file any objections to the proposed Bid Protections for the Stalking Horse Bid or any amendments to the Bidding Procedures as provided for in the Stalking Horse Notice on or before September 17, 2021 (the "**Stalking Horse Objection Deadline**").  The failure to file a timely objection shall be deemed to be a waiver of any such objections and consent to the approval of the Bid Protections and amended Bidding Procedures. If an objection is timely filed, the Debtors shall notice a hearing before the Court to consider the objection(s) on an emergency basis; *provided, however,* that the Bidding Procedures will be deemed approved regardless of whether or not the Auction occurs prior to the resolution of any objection to the Bid Protections or amended Bidding Procedures.  Interested parties shall be deemed to consent to the expedited and final resolution of any such objections by the Court.  The filing or pendency of any objection(s) shall not alter any dates or deadlines established under the Bidding Procedures or affect the binding nature of the Stalking Horse Bid or any other Bids.  For the avoidance of doubt, any substantive objections to a Sale to the Stalking Horse Bidder, should the Stalking Horse Bidder be designated as the Winning Bidder, shall be filed in accordance with paragraph 12 of the Bid Procedures Order and need not be filed on or prior to the Stalking Horse Objection Deadline.

---

[7] Unless otherwise stated, "Bidding Procedures" includes the Bidding Procedures, the procedures governing any Auction (the "**Auction Procedures**"), including the Open Auction Procedures, and the Assumption and Assignment Procedures.

### G.      Credit Bidding

18.      In accordance with Paragraphs 9(e) and 29 of the Interim DIP Order, and, to the extent applicable, the Final DIP Order, when entered, the DIP Lenders (as defined in the Interim DIP Order) and the Prepetition Secured Parties may credit bid the full amount of the DIP Obligations (as defined in the Interim DIP Order) or the Prepetition Secured Obligations (as defined in the Interim DIP Order), respectively and as applicable, to acquire any or all Assets subject to the parties' respective security interests (other than any collateral in respect of the J. Aron Obligations),[8] on a dollar-for-dollar basis, as provided in Section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing such credit bid and whether any Sale is (a) pursuant to Section 363 of the Bankruptcy Code, (b) pursuant to a chapter 11 plan, or (c) by a chapter 7 trustee; *provided, however*, that the right of the Prepetition Secured Parties to credit bid the Prepetition Secured Obligations shall be subject to the limitations set forth in the DIP Orders.

19.      Notwithstanding anything to the contrary contained herein, the Prepetition Secured Parties shall have the right to credit bid all or any portion of the aggregate amount of their applicable outstanding Prepetition Secured Obligations pursuant to Section 363(k) of the Bankruptcy Code, and any such credit bid, whether submitted by a Prepetition Secured Party or a new entity formed by such Prepetition Secured Party, will be considered a Qualified Bid to the extent such bid is received by the deadline to submit a credit bid and complies with Section 363(k) of the Bankruptcy Code; *provided* that a credit bid shall not constitute a Qualified Bid if the bid does not include a cash component sufficient to pay in full, in cash, all claims for which there are valid, perfected, and unavoidable liens on any assets included in such Bid or Piecemeal Bid that are senior in priority, including a priority in payment pursuant to the Intercreditor Agreement (as defined in the Interim DIP Order), to those of the party seeking to credit bid (unless such Prepetition Secured Party consents to alternative treatment).  For the avoidance of doubt, any credit bid by a DIP Lender of the DIP Obligations shall not constitute a Qualified Bid if the bid does not include a cash component sufficient to pay in full, in cash, all claims for which there are valid, perfected, and unavoidable liens on any assets included in such Bid or Piecemeal Bid that are senior in priority to the DIP Lender(s) seeking to credit bid (unless such Prepetition Secured Party consents to alternative treatment).

20.      If the DIP Lenders and/or Prepetition Secured Parties intend to credit bid for any of the Assets, such parties shall notify the Debtors, U.S. Trustee, and the other Notice Parties of their intention to credit bid no later than September 17, 2021 (the "**Credit Bid Designation Deadline**").  To the extent required by Paragraph 37 of the Complex Rules, any entity that intends to submit a Bid (including a credit bid) for any or all of the Assets shall waive the right to receive (i) information that is not generally available to all Potential Bidders and (ii) any notice, consultation, and/or consent rights as Notice Parties under the Bidding Procedures, subject to such rights provided elsewhere in these Bidding Procedures and the DIP Orders (the "**Consultation Rights**"), except as otherwise ordered by the Court.

---

[8] For the avoidance of doubt, the IFF Property shall not be the subject of any sale pursuant to this Motion or the Bidding Procedures.

4818-4812-3125.1

## H.     The Auction

21.     If the Debtors receive one or more Qualified Bids from Qualified Bidders by the Bid Deadline, in addition to the Stalking Horse Bid, an Auction with respect to the sale of the subject Assets shall take place on September 22, 2021, at 10:00 a.m. (prevailing Central Time) (the "**Auction Date**") at (a) the offices of Baker & Hostetler, LLP, located at 811 Main Street, Suite 1100, Houston, Texas 77002 or (b) via an virtual platform, such as Zoom or GoToMeeting, as the Debtors designate.  No later than forty-eight (48) hours prior to the Auction Date, the Debtors shall provide notice of the Auction location and, if via a virtual platform, the credentials required to access such platform, to all Qualified Bidders, the Notice Parties, the United States, and the U.S. Trustee.

22.     If the Stalking Horse Bid is the only Qualified Bid the Debtors receive by the Bid Deadline, the Debtors reserve the right to cancel the Auction.  In such case, if cancelled, the Stalking Horse Bid and Stalking Horse Bidder shall be automatically designated the Winning Bid and Winning Bidder effective as of the Bid Deadline.

23.     If the Debtors do not receive any Qualified Bids by the Bid Deadline, the Debtors may elect to hold an open auction for the Assets, or any of them (an "**Open Auction**") on the Auction Date, subject to the agreement of the DIP Agent and Prepetition Secured Parties and after consultation with the Committee.  If the parties agree to hold an Open Auction, the Debtors shall provide notice to the Court, the U.S. Trustee, the Notice Parties, and any and all Potential Bidders that executed a Confidentiality Agreement of the Open Auction (the "**Open Auction Notice**"). The Open Auction Notice shall identify the procedures applicable to the Open Auction, including, without limitation, any deposits required to participate in the Open Auction (the "**Open Auction Procedures**").  The Debtors shall prepare the Open Auction Procedures in consultation with the Notice Parties and U.S. Trustee.  Notwithstanding anything in the Motion, Bidding Procedures or Open Auction Procedures to the contrary, the DIP Lenders and Prepetition Secured Parties will be entitled to credit bid in any Open Auction and shall be deemed to be Qualified Bidders for purposes of any Open Auction.

24.     Unless modified by any Open Auction Procedures, the following rules shall apply to any Auction:

a.      only Qualified Bidders shall be entitled to make a bid at and otherwise participate in the Auction (provided, for the avoidance of doubt, that the Committee, its professionals (including Committee Advisors), and its members (and such members' professionals) may attend the Auction);

b.      each Qualified Bidder shall appear in person, or in the event of a virtual auction, appear virtually, or have an authorized representative appear on their behalf, *provided* the authorized representative has the authority to bind the Qualified Bidder to the terms of any bid at the Auction without further or additional approval or authorization;

c.  each Qualified Bidder participating in the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale;

d.  the Debtors, in their business judgment and in consultation with the Notice Parties, shall select the number of Qualified Bidders participating in the Auction and will conduct the Auction in the manner that they determine will best promote the goals of the bidding process and will achieve the maximum value for the Assets;

e.  the Stalking Horse Bid shall constitute the opening bid at the Auction (the "**Opening Bid**") for the Assets subject to the Stalking Horse APA and the minimum overbid at the Auction shall be an amount equal to the total approved Bid Protections provided under the Stalking Horse APA *plus* $1,000,000, with each successive bid being in increments of at least $1,000,000 higher than the preceding bid; *provided, however*, if the Stalking Horse Bids constitute Piecemeal Bids, the minimum overbids and bid increments shall be specified in the Stalking Horse Notices;

f.  the Stalking Horse Bidder may not use the amount of approved Bid Protections as consideration under any bid during the Auction; *provided, however*, that the Debtors may consider the amount of approved Bid Protections in evaluating the highest and best Bid for purposes of designating the Winning Bid or Back-up Bid;

g.  the Debtors, in consultation with the Notice Parties, may, at any point during the Auction, modify the bid increment amounts;

h.  the Debtors, in consultation with the Notice Parties, may continue the Auction from time to time, adjourn the Auction at any time, and re-open the Auction at any time prior to the commencement of the Sale Hearing; and

i.  bidding at the Auction will be transcribed to ensure an accurate recording of the bidding.

25.  At the conclusion of the Auction, the Debtors, in consultation with the Notice Parties, shall select and identify the Winning Bid and the Winning Bidder. There may be more than one Winning Bid and Winning Bidder if individual Piecemeal Bids are determined to be Qualified Bids. The Debtors, in consultation with the Notice Parties, shall also select and identify the entity presenting the next highest and best bid (the "**Back-up Bid**") and the entity presenting same (the "**Back-up Bidder**"). At the Sale Hearing (as defined below), the Debtors shall present the Winning Bid and Back-up Bid to the Court for approval. The Debtors' presentation of the Winning Bid to the Court for approval does not constitute the Debtors' acceptance of such Winning Bid. The Debtors shall have accepted a Winning Bid only when the Court has entered an order approving such bid and the Sale of the Asset subject thereto.

26.  Notwithstanding the foregoing, the Debtors reserve all rights to terminate the bidding process at any time if the Debtors, consistent with their fiduciary duties and business

4818-4812-3125.1

judgment, and in consultation with the Notice Parties, determine that the bidding process will not maximize the value of the Assets. Without limiting the generality of the foregoing, the Debtors, in consultation with the Notice Parties, may reject at any time before entry of a Sale Order approving such bid, any Bid that, in the Debtors' discretion, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors, their Estates and creditors.

27.     If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when: (i) such bid is declared the Winning Bid at the conclusion of the Auction; (ii) the Winning Bidder shall have paid an additional deposit which, when added to the initial deposit, equals fifteen percent (15%) of the Winning Bid (the "**Additional Deposit**"); *provided* that to the extent the Winning Bid is a credit bid submitted by a DIP Lender or Prepetition Secured Party, no Additional Deposit shall be required; (iii) definitive documentation has been executed in respect thereof; and (iv) the Court has entered an order approving such bid and the Sale of the Assets subject thereto. The Winning Bidder shall make the Additional Deposit into the Escrow Account within one (1) business day after the conclusion of the Auction. Acceptance by the Debtors of the Winning Bid is conditioned upon entry of a Sale Order approving such Winning Bid.

28.     The Debtors shall file and serve a Designation of Winning Bid as soon as practicable following the conclusion of the Auction, but in no event later than **September 24, 2021**. The Designation of Winning Bid shall: (i) identify the Winning Bidder and Back-up Bidder; (ii) provide a summary of the Winning Bid and Back-up Bid; (iii) contain a copy of the asset purchase agreement(s) for the Winning Bid(s) (the "**Modified APA(s)**") and a redline marked against the Stalking Horse APA; *provided, however,* that the Debtors shall not be required to serve copies of the Modified APA(s) or any redline comparison to the Stalking Horse APA with the Designation of Winning Bid so long as the Designation of Winning Bid provides instructions for accessing such documents on the BMC Group website for the Debtors; and (iv) contain a statement as to the Winning Bidder's or Back-up Bidder's ability to perform the Debtors' obligations under the Purchased Contracts (as defined below). In addition, the Designation of Winning Bidder shall include a list of those executory contracts and unexpired leases designated by the Winning Bid and/or Back-up Bid for assumption and assignment to the Winning Bidder and/or Back-up Bidder, as applicable (the "**Purchased Contracts**"), with: (i) the name and address of the known contract counterparties thereto; (ii) the Cure Amount with respect to any such Purchased Contract; and (iii) the deadline by which any counterparties must file an objection to the proposed assumption and assignment of any Purchased Contract; *provided, however,* that the inclusion of any Purchased Contract in the Designation of Winning Bid shall not constitute an admission that the subject contract(s) or lease(s) are executory contract(s) or unexpired lease(s) for purposes of Section 365 of the Bankruptcy Code or an agreement to assume or assign such Purchased Contracts. The Debtors reserve the right to amend the Designation of Winning Bid to identify additional Executory Contracts up to two (2) days before the Sale Hearing (defined below) and to remove any Executory Contracts up to the Closing Date (defined below). Simultaneously with the filing of the Designation of Winning Bid, the Debtors shall file a proposed Sale Order and any supplemental filings related to the Designation of Winning Bid or approval of the proposed Sale pursuant thereto.

29.     In the event that the Winning Bidder fails to pay the Additional Deposit or otherwise comply with its obligations as the Winning Bidder, the Qualified Bidder with the Back-

4818-4812-3125.1

up Bid shall be declared the Winning Bid and Winning Bidder without further order of the Court. If the Winning Bid is a Piecemeal Bid (the "**Winning Piecemeal Bid**"), the bidder with the next highest or best bid that is not entitled to the same reductions to the purchase price shall be deemed the Winning Bid and Winning Bidder without further order of the Court.

## I.    Sale Hearing

30.    The Debtors shall schedule a hearing to approve the Sale (the "**Sale Hearing**") pursuant to the Stalking Horse APA or Modified APA(s), as applicable, as soon as practicable, but in no event later than October 14, 2021.  At the Sale Hearing, subject to the Bidding Procedures and result of the Auction, if any, the Debtors will request entry of the Sale Order that will, *inter alia*, approve (i) the Sale of the Assets in accordance with the terms of the Stalking Horse APA or Modified APA(s), as applicable, (ii) the assumption and assignment of the Purchased Contracts, and (iii) any further or additional relief deemed necessary to effectuate the proposed Sale transaction.  Objections, if any, to a proposed Sale transaction, other than objections to the assumption and assignment of Executory Contracts (a "**Sale Objection**"), must be filed and served on counsel for the Debtors, the U.S. Trustee, and the Notice Parties no later than October 4, 2021, at 5:00 p.m. (prevailing Central time) (the "**Sale Objection Deadline**").

## J.    Return of Deposit

31.    Within five (5) business days after the closing of the Sale to the Winning Bidder ("**Closing**"), the deposits of all unsuccessful bidders shall be refunded, to the extent not already returned, except for any deposits forfeited by a Winning Bidder or Back-up Bidder under the Bidding Procedures.  In the event a dispute arises about whether a deposit is refundable or non-refundable, the deposit shall remain in the Escrow Account pending a resolution of the dispute by the Court.  In presenting a Bid, any and all Potential Bidders, including Qualified Bidders, Back-up Bidder(s), and Winning Bidder(s), shall be deemed to consent to the jurisdiction and final adjudication of any and all matters related to the Bid(s) by the Court.

## K.    Failure to Close

32.    The transaction evidenced by the Winning Bid shall close not later than ten (10) days after entry the Sale Order, but in no event later than **November 1, 2021, at 5:00 p.m. (prevailing Central time)** (the "**Closing Date**"), unless the Closing Date is extended in accordance with the Bidding Procedures, at which time the Winning Bidder shall pay the balance of the Winning Bid (the Winning Bid amount less the deposit) into the Escrow Account.  In the event a declared Winning Bidder fails to timely perform any of its obligations as set forth above or pursuant to the approved transaction documents:

> a.    The declared Winning Bidder shall forfeit all deposits made without regard to the Debtors' ultimate damages occasioned by such failure; such deposits shall be applied to the Debtors' damages, if any, and shall not constitute liquidated damages; and, notwithstanding the foregoing, the Debtors and the Estates shall retain all other rights, remedies, claims, counterclaims, and defenses as to the Winning Bidder, including the right to seek equitable or injunctive relief.

b.      Each Back-up Bidder shall keep its final and highest bid open pending a closing of a transaction of the Winning Bid.  In the event that a transaction of the Winning Bid is not consummated by the Closing Date (unless the Closing Date is extended), the Back-up Bidder with the Back-up Bid shall be deemed the Winning Bidder without further order of the Court, and such bidder shall be required to close the transaction contemplated in its Back-up Bid within seven (7) days of being deemed the Winning Bidder, **but in no event later than November 8, 2021, at 5:00 p.m.** (prevailing Central time), unless such deadline is extended in accordance with the Bidding Procedures.  Any Back-up Bidder declared a Winning Bidder who fails to timely perform shall forfeit all deposits made without regard to the Debtors' ultimate damages occasioned by such failure; such deposits shall be applied to the Debtors' damages, if any, and shall not constitute liquidated damages; and, notwithstanding the foregoing, the Debtors and the Estates shall retain all other rights, remedies, claims, counterclaims, and defenses with respect to such bidder, including the right to seek equitable or injunctive relief.

c.      The Debtors, in consultation with the Notice Parties and agreement of the DIP Agent and Prepetition Secured Parties, may grant any declared Winning Bidder and/or Back-up Bidder additional time to perform and, to the extent necessary, extend the Closing Date.

## L.    Fees and Expenses

33.    Any and all bidders submitting Bids shall bear their own fees, costs, and expenses in connection with the proposed sale, whether or not such sale is ultimately approved, except to the extent reimbursement of expenses constitutes an approved Bid Protection under a Stalking Horse APA.  Further, by submitting a Bid, a Potential Bidder shall be deemed to waive its right to pursue a substantial contribution claim under Section 503 of the Bankruptcy Code or other priority unsecured or administrative claims in any way related to the submission of its Bid or the Bidding Procedures.

## M.    Assumption and Assignment of Executory Contracts

34.    The Debtors also seek approval of certain procedures to facility the fair and orderly assumption and assignment of certain Executory Contracts designated by the Winning Bidder following the Auction, if any, pursuant to Section 365(f) of the Bankruptcy Code (collectively, the "**Purchased Contracts**") in connection with the Sale.  Due to the nature of the bidding process, the Debtors are unable to currently identify the Purchased Contracts, or any of them, that will require assumption and assignment to the Winning Bidder.  As such, the Debtors propose certain procedures (the "**Assumption and Assignment Procedures**") by which counterparties to potential Purchased Contracts can ascertain the proposed cure payment and adequate assurance of future performance and, if deemed prudent, object to the potential assumption or assumption and assignment of the subject Purchased Contracts.  The proposed Assumption and Assignment Procedures are as follows:

a.  On or before **September 13, 2021**, the Debtors shall file and serve a notice (the "**Notice of Potential Assumption and Assignment of Executory Contracts**") of executory contracts and unexpired leases that may be assumed and assigned to a purchaser in connection with a Sale (the "**Potential Purchased Contracts**"), which shall, among other things, include a list with: (i) the Potential Purchased Contracts; (ii) the name and address of the known contract counterparties thereto; (iii) the Cure Amount with respect to any Potential Purchased Contract; and (iv) the deadline by which any counterparties must file an objection to the proposed assumption and assignment of any Potential Purchased Contract; *provided, however,* that the inclusion of any Potential Purchased Contract on the Notice of Potential Assumption and Assignment of Executory Contracts shall not constitute an admission that the subject contract(s) or lease(s) are executory contract(s) or unexpired lease(s) for purposes of Section 365 of the Bankruptcy Code or an agreement to assume or assign such Potential Purchased Contracts.  To the extent the Debtors identify additional Potential Purchased Contracts after September 13, 2021, the Debtors shall promptly file a supplemental Notice of Potential Assumption and Assignment of Executory Contracts, containing the same information as set forth above for the additional Potential Purchased Contracts.

b.  As discussed above, the Debtors shall file and serve a Designation of Winning Bid as soon as practicable following the conclusion of the Auction, but in no event later than **September 24, 2021** which shall, among other things, include a list of the Purchased Contracts with: (i) the name and address of the known contract counterparties thereto; (ii) the Cure Amount with respect to any such Purchased Contract; and (iii) the deadline by which any counterparties must file an objection to the proposed assumption and assignment of any Purchased Contract; *provided, however,* that the inclusion of any Purchased Contract in the Designation of Winning Bid shall not constitute an admission that the subject contract(s) or lease(s) are executory contract(s) or unexpired lease(s) for purposes of Section 365 of the Bankruptcy Code or an agreement to assume or assign such Purchased Contracts.

c.  The Debtors may (i) amend the Designation of Winning Bid at any time prior to the date that is two (2) days before the Sale Hearing to add or remove any Purchased Contracts or Potential Purchased Contracts (collectively, the "**Subject Contracts**") from the list of Purchased Contracts that are proposed to be assumed by the Debtors and assigned to the Winning Bidder and/or Back-up Bidder, subject to the right of any counterparties to newly-included Subject Contracts to adequate assurance or otherwise object to the assumption and assignment of the Subject Contracts, and (ii) amend the Designation of Winning Bid to remove any previously-designated Purchased Contracts at any time prior to the Closing Date, with such removal being effective immediately without further order of the Court. Any amendments to the Designation of Winning Bid shall comply with the

requirements of this Paragraph 34, as applicable; *provided, however,* that such amendments need not include information related to any previously-designated Subject Contracts unaffected by the amendment.

d.     Each Potential Bidder shall identify in its Bid any and all Executory Contracts the Potential Bidder may wish to designate for assumption and assignment to the Potential Bidder in any Sale; *provided, however*, the Winning Bidder(s) may amend such designation, consistent with the notice requirements of this Paragraph 34.

e.     As provided in Paragraph 28, the Debtors shall file and serve the Designation of Winning Bid on each counterparty to any Purchased Contract (and its counsel, if known) that is designated for assumption and assignment under the Winning Bid, among other parties.  Such Designation of Winning Bid shall: (i) identify the Winning Bidder and Back-up Bidder; (ii) identify all Subject Contracts designated as Purchased Contracts by the Winning Bidder, subject to the right to amend such designation consistent with paragraph 34.c hereof; (iii) identify the Cure Amount, if any, the Debtors estimate is required to comply with Section 365(b) and 365(f)(2) of the Bankruptcy Code; and (iv) contain a statement as to the Winning Bidder's ability to perform the Debtors' obligations under the subject Purchased Contracts.

f.     All objections to the proposed assumption and assignment of any Subject Contracts (including with respect to any Cure Amount associated with such Subject Contracts) must: (i) be filed with the Court on or before October 8, 2021, at 12:00 p.m. (prevailing Central time) (the "**Contract Assumption Objection Deadline**") and served on the Debtors, the U.S. Trustee, and the Notice Parties; (ii) identify the Subject Contract(s) to which the objector is party; (iii) describe with particularity the Cure Amount that the objector contends is required under Section 365 of the Bankruptcy Code; (iv) identify the bases of the alleged Cure Amount under the Subject Contract; and (v) attach all documents supporting or evidencing the Cure Amount.

g.     If no objection is filed by the Contract Assumption Objection Deadline, or if the objection fails to comply with the requirements set forth herein, the Cure Amount set forth in the Designation of Winning Bid Notice or Notice of Potential Assumption and Assignment of Executory Contracts, or any amended version thereof, as applicable, shall control and any counterparties to the Subject Contract(s) shall be deemed to waive and shall be forever barred from asserting in any other claim or objection under Section 365 of the Bankruptcy Code, or otherwise, including, without limitation, any objection to the assignability of any of the purchased contracts, other than an objection to adequate assurance of performance under the Subject Contracts pursuant to Section 365(b)(1)(C) of the Bankruptcy Code; *provided, however*, that to the extent the Debtors file a supplemental Notice of Potential Assumption and Assignment of Executory Contracts,

counterparties to any newly-identified Potential Purchased Contracts shall have no less than seven (7) days to object to the Cure Amount listed in such Notice of Potential Assumption and Assignment of Executory Contracts.

h.     To the extent any Cure Amount remains unresolved as of the Sale Hearing, such dispute shall be presented to the Court at the Sale Hearing, or such later date and time as the Debtors, the Winning Bidder, and the objecting party may agree or the Court may order, *provided* that the pendency of such dispute shall not affect in any way the closing of any proposed Sale or the effectiveness of any assumption and assignment of the subject Executory Contract under the Winning Bid or Back-up Bid, as applicable.

## N.     Cooperation and Information Sharing

35.     The Debtors and their advisors shall consult regularly with the Lender Advisors, Committee Advisors, and third-party professionals retained by their respective clients, including, without limitation, any financial advisors or brokers, regarding the status of the Sale process and any potential Bids and provide any related information that may be reasonably requested by the advisors to the DIP Agent, Prepetition Secured Parties, the Committee, and such third-party professionals.   To the extent required by Paragraph 37 of the Complex Rules, any information provided to the Advisors or such third-party professionals shall constitute PEO Information subject to the restriction set forth in Paragraph 7, *supra; provided, however*, that any PEO Information that becomes known to all Potential Bidders or publicly available, other than as a result of a violation of the restrictions on the use and dissemination of PEO Information, shall no longer be subject to the restrictions provided in the Bidding Procedures.  Any DIP Lender or Prepetition Secured Party that elects not to credit bid by the Credit Bid Designation Deadline shall have the right to any and all PEO Information, Consultation Rights, and other information and documentation pertaining to the marketing or Sale of any Assets, including, without limitation, any Bids and related documents, under the Bidding Procedures without restriction, except for a prohibition against sharing such information with any Potential Bidders that do not have such information.

0743

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

August 11, 2021

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*** [1] | **CASE NO.: 21-32351** |
| **Debtors.** | **Jointly Administered** |

**THIRD INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION SENIOR SECURED SUPERPRIORITY FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (the "Debtors"), the court enters this Order (the "Third Interim Order") extending the terms of the (i) *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief,* dated July 14, 2021 (Docket No. 104) (the "First Interim Order"); and the (ii) *Second Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief*, dated August 2, 2021 (Docket No. 271) (the "Second

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

Interim Order," and together with the First Interim Order, the "Prior Interim Orders")[2] with respect to the Debtors' rights to use cash collateral through August 29, 2021, with the following revisions:

A.     In addition to the $5.5 million in postpetition financing previously authorized in the First Interim Order and advanced in full to the Debtors, the Debtors are hereby authorized to (a) obtain additional postpetition financing in an aggregate principal amount not to exceed $10 million on an interim basis, pursuant to the terms of that certain DIP Credit Agreement, a copy of which was attached to the First Interim Order as Exhibit A, as modified pursuant to the terms of that certain First Amendment to Senior Secured Superpriority Debtor-In-Possession Credit Agreement, a copy of which is attached hereto as **Exhibit A** (the "First Amendment"). The Debtors are authorized to enter into the First Amendment.

B.     Attached hereto as **Exhibit B** is the Debtors' Approved Budget for the period from August 9, 2021 through and including October 31, 2021. *See* First Interim Order ¶ N.

C.     Notwithstanding paragraph 15(d) of the First Interim Order or anything contained in the DIP Loan Documents, the Debtors' failure to obtain entry of the Final Order shall not constitute, or be deemed to cause, a Termination Event unless the Debtors fail to obtain entry of the Final Order by September 17, 2021.  Notwithstanding paragraphs 9(g) and 15(p) of the First Interim Order, any breach of paragraph 9(g) of the First Interim Order with respect to a thirteen-week budget is hereby waived and shall not constitute, or be deemed to cause, a Termination Event. The requirements of Paragraph 9(g)(ii) of the First Interim Order are satisfied by the attached Approved Budget.

D.     Those certain Events of Default, Defaults, Termination Events, and/or Material Adverse Effect that were alleged in the Reservation of Rights Letter filed at Docket No. 355, and

---

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Prior Interim Orders.

any other Events of Default, Defaults (as such term is defined in the DIP Credit Agreement), Termination Events, and/or Material Adverse Effects of which the DIP Agent or any Lender (as such term is defined in the DIP Credit Agreement) has knowledge as of the date hereof are deemed cured and/or waived.

E.     The DIP Lenders ratify and affirm that, as of the date of this Order, the aggregate maximum outstanding principal amount of the DIP Loans, if fully advanced to the Borrower, will be $25,000,000, and that, subject to the Borrower's satisfaction of the conditions precedent set forth in Section 4.02 of the DIP Credit Agreement, the remaining aggregate Commitment of the DIP Lenders is $19,500,000. After giving effect to the First Amendment, none of the DIP Agent or the DIP Secured Parties have any knowledge or notice of any Default or Event of Default which would permit the DIP Agent or DIP Lenders to conclude that any of the conditions precedent set forth in Section 4.02 have not been satisfied as of the date hereof.  The DIP Lenders, and/or their Administrative Agent (as that term is defined in the First Amendment), shall be entitled to a $50,000 amendment fee on the terms provided in the First Amendment.

F.     Notwithstanding anything to the contrary in Prior Interim Orders, the DIP Loan Documents, or any Approved Budget, all accrued and unpaid professional fees and expenses of the Ad Hoc Term Lender Group, the Term Administrative Agent, the Project Collateral Agent, the Revolver Administrative Agent and J. Aron owed by the Debtors under paragraphs 8(b) and 9(a) – (c) of the First Interim Order shall be included in the Carve-Out, subject to a total aggregate cap of $1.3 million for the fees of such Prepetition Secured Parties; *provided*, that, for the avoidance of doubt, such cap is subject to further adjustment in connection with any further interim orders or the Final Order, and all rights with respect thereto are preserved.

G.    Resolution of Committee Issues.

1.    On July 26, 2021, the U.S. Trustee appointed the Official Committee of Unsecured Creditors in these Chapter 11 Cases [Docket No. 189] (the "Committee").

2.    In addition to counsel to the DIP Agent, the DIP Lenders, and the Prepetition Agents, the Debtors shall deliver a copy of the Approved Budget to the Committee.

3.    Notwithstanding paragraph 5 of the First Interim Order, the Committee Investigation Budget shall be in an amount up to an aggregate cap of $200,000.  Notwithstanding paragraph 42 of the First Interim Order, all rights of the Committee to seek an extension of the Challenge Period for purposes of the Final Order are preserved.

4.    For the avoidance of doubt, the Carve-Out in paragraph 5(i) of the First Interim Order includes all fees and expenses of bankruptcy professionals reflected as accrued in the Budget.  The Debtors will work in good faith with the Committee to establish a professional fee escrow consistent with the Approved Budget and the Debtors' liquidity needs.

5.    Notwithstanding paragraphs 6 and 7(a) of the First Interim Order, until the entry of the Final Order, the DIP Superpriority Claims and the DIP Liens shall not attach to or be payable from the Unencumbered Assets (as defined below).  Following entry of the Final Order, the DIP Superpriority Claims and the DIP Liens shall attach to the proceeds of, or property recovered in connection with, Unencumbered Assets, *provided that* such proceeds and property shall only be used to satisfy the DIP Superpriority Claims and the DIP Liens, to the extent that all other DIP Collateral is insufficient to satisfy the DIP Obligations in full.

6.    Notwithstanding paragraphs 9(a), 9(b) and 9(c) of the First Interim Order, until the entry of the Final Order, (i) the adequate protection liens and security interests granted in paragraphs 9(a)(1), 9(b)(1) and 9(c)(1) shall not attach to or be payable from Avoidance Actions,

4

Avoidance Proceeds, commercial tort claims, or the proceeds thereof (collectively, the "Unencumbered Assets") and (ii) the superpriority administrative claims granted in paragraphs 9(a)(4), 9(b)(4) and 9(c)(4) shall not attach to or  be payable from the Unencumbered Assets. Notwithstanding the Committee Investigation Budget or anything to the contrary in the First Interim Order, nothing herein shall prevent the Committee from seeking approval of all fees and expenses incurred by its professionals to be payable from the Unencumbered Assets.

7.      Notwithstanding paragraph 9(a)(6) of the First Interim Order, the right to credit bid the Prepetition Secured Obligations under the Prepetition Term Documents in connection with any sale of Prepetition Debt Collateral shall be subject to section 363(k) of the Bankruptcy Code.

8.      Notwithstanding paragraph 9(b)(6) of the First Interim Order, the right to credit bid the Prepetition Secured Obligations under the Revolver Transaction Documents in connection with any sale of Prepetition Debt Collateral shall be subject to section 363(k) of the Bankruptcy Code.

9.      Notwithstanding paragraph 9(c)(6) of the First Interim Order, the right to credit bid the prepetition obligations under the J. Aron Transaction Documents in connection with any sale of Inventory Financing Collateral shall be subject to section 363(k) of the Bankruptcy Code.

10.      Notwithstanding paragraph 9(e) of the First Interim Order, the rights of the Prepetition Secured Parties to credit bid their respective Prepetition Secured Obligations in connection with the sale of any of their respective Prepetition Collateral shall be subject to section 363(k) of the Bankruptcy Code.

11.     The Debtors shall arrange Weekly Meetings with the Committee and its advisors under paragraph 9(f) of the First Interim Order (which, for the avoidance of doubt, may be conducted as separate calls for the Prepetition Secured Parties and the Committee). The Committee's professionals may reasonably request topics of discussion at the Weekly Meetings.

12.     The Committee shall be entitled to the financial reporting and inspection rights described more fully in paragraph 12 of the First Interim Order.

13.     Notwithstanding paragraph 16(c) of the First Interim Order, the closing date of a 363 Sale shall not constitute a Cash Collateral Termination Event.

14.     Notwithstanding paragraph 19(b) of the First Interim Order, the DIP Collateral and proceeds thereof, proceeds of the DIP Financing, and the Prepetition Collateral and proceeds thereof may be used to investigate the actions described therein for the purposes described in, and a manner consistent with, the terms of paragraph 42 of the First Interim Order.

15.     Notwithstanding paragraph 26 of the First Interim Order, the Debtors shall obtain the consent of the Committee before modifying the Approved Budget with respect to the fees and expenses of the Committee professionals, which consent shall not be unreasonably withheld or delayed, or unless such modification is otherwise approved by the Court.

16.     Notwithstanding anything contained in paragraph 42 of the First Interim Order:

(a)     for the avoidance of doubt, the Challenge and Challenge Period shall not apply to any claims or causes of action of the Debtors with respect to the Insider Creditors;

(b)     the Challenge Period will be tolled for the Committee if it formally moves for an order of this Court conferring standing or authority (the "Standing Motion") prior to the Challenge Period, from the date the Committee so moves until five (5) business days from the

date that the Standing Motion is granted or the date when the Standing Motion is denied pursuant to an Order of the Court; *provided*, that the Challenge Period: (i) will only be tolled if such Standing Motion attaches a proposed complaint identifying the specific Challenge(s) that the Committee proposes to assert and the defendant(s) against whom such Challenge(s) are proposed to be asserted, and (ii) will only be tolled with respect to such Challenge(s) and defendant(s) specifically identified therein. Nothing in the First Interim Order or herein shall limit the Committee's ability to (x) file a timely Standing Motion in respect of any timely Challenge for which it cannot obtain standing as a matter of law because the applicable Debtor is a limited liability company (an "LLC Challenge Motion"), and (y) seek pursuant to such LLC Challenge Motion a mechanism by which to prosecute such Challenge, provided that the Committee otherwise satisfies the requirements in paragraph 42(a) of the First Interim Order. In the event the Committee files a timely LLC Challenge Motion for which it cannot obtain standing, and provided that the Committee otherwise satisfies the requirements set forth in paragraph 42(a) of the First Interim Order, the expiration of the Challenge Deadline solely for the specific Challenge set forth in the LLC Challenge Motion, and solely as to the defendant(s) named therein, shall be tolled pending further order of the Court, and applicable parties shall meet and confer with respect to an appropriate process (if any) for the prosecution of any such Challenge. If timely notified of a Challenge for which the Committee cannot gain standing because the applicable Debtor is a limited liability company, the Debtors (or a designated representative) shall, to the extent permitted by applicable law, retain the authority to prosecute such Challenge in the exercise of their business judgment and subject to any applicable further order of the Court.

(c)     Any Challenge, Standing Motion, or LLC Standing Motion commenced by the Committee (the "Committee Action") may be pursued by any chapter 7 trustee

in these Cases (a "Chapter 7 Trustee"), appointed subsequent to the filing of the Committee Action, in the Trustee's sole and exclusive discretion. The filing of a *Notice of Substitution of Trustee* for and in the stead of the Committee in the Committee Action, shall be automatically effective upon filing, without further Order of the Court, and the Chapter 7 Trustee shall be deemed automatically substituted for the Committee, which substitution shall be deemed retroactive to the date of the filing of the Committee Action.

17.    Notwithstanding anything to the contrary in paragraph 49 of the First Interim Order, (i) the Terminal Replacement Liens shall not attach to any Unencumbered Assets and (ii) any superpriority administrative claims granted therein shall not attach to or be payable from the Unencumbered Assets.

H.    To the extent any of the Terminal Entities have Permitted Prior Liens on Product or goods (as defined under the Uniform Commercial Code) or the proceeds thereof under the Non-Included Locations TSA[3] (the "Terminal Liens"), the Section 364(d)(1) Liens shall be junior to the Terminal Liens on such property.    _____

I.    Resolution of Objection by the United States of America.

1.    Notwithstanding anything to the contrary in the Prior Interim Orders, this Third Interim Order or the DIP Loan Documents, nothing in this Third Interim Order, the Prior Interim Orders or the DIP Loan Documents shall relieve the Debtors of any obligations under federal, state, territorial, or local police or regulatory laws or under 28 U.S.C. § 959(b), provided

---

[3] As that term is defined in the Objection and Reservation of Rights of Terminal Entities to Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-Petition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (IV) Approving Adequate Protection to Pre-Petition Secured Creditors, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing [Doc. No. 252].

that nothing herein shall limit or impair the Debtors' rights to assert defenses under applicable law and nothing herein shall create new defenses to obligations under police or regulatory laws or 28 U.S.C. § 959(b).

       2.     Notwithstanding anything to the contrary in the Prior Interim Orders, this Third Interim Order or the DIP Loan Documents, nothing in this Third Interim Order, the Prior Interim Orders or the DIP Loan Documents shall impair or adversely affect the United States of America's rights, claims and defenses of set-off and recoupment, if any, or any of its agencies, departments or agents, if any, and all such rights, claims and defenses, if any (the "Setoff/Recoupment Rights") shall be preserved in their entirety; *provided, however*, that the exercise of any such Setoff/Recoupment Rights must be in accordance with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; *provided further, however*, that (a) exercise of such Setoff/Recoupment Rights shall not impair or adversely affect the rights of the DIP Secured Parties and the Prepetition Secured Parties, as applicable, to assert remedies (if any) with respect to any Event of Default or Cash Collateral Termination Event, as applicable, in the event any such governmental unit exercises any such Setoff/Recoupment Rights, (b) nothing in this paragraph shall limit the right of any party in interest to challenge the Setoff/Recoupment Rights of any such governmental unit, and (c) nothing in the Prior Interim Orders, this Third Interim Order, or the DIP Loan Documents shall modify or determine the rights or priority of any governmental unit's Setoff/Recoupment Rights vis-à-vis the rights and liens of the DIP Secured Parties and the Prepetition Secured Parties, as applicable, and all rights of the governmental units and the DIP Secured Parties and Prepetition Secured Parties with respect to the determination of such rights or priority (to the extent such priority is a disputed issue) are preserved.

3.      With respect to environmental liabilities to any governmental unit, to the extent that the actions of the DIP Secured Parties or Prepetition Secured Parties constitute, within the meaning of 42 U.S.C. § 9601(20)(F) and (G), actual participation in the management or operational functions of a vessel or facility owned or operated by the Debtors, the rights of such governmental unit under applicable laws are preserved, and all rights of the DIP Secured Parties and the Prepetition Secured Parties to contest such liability or status under applicable law are preserved.  For the avoidance of doubt, in determining to make any loan or other extension of credit under the DIP Credit Agreement, permitting the use of Cash Collateral, performing under the Prior Interim Orders, the Third Interim Order and the DIP Loan Documents in the ordinary course, no DIP Secured Party or Prepetition Secured Party shall be deemed to have participated in the management or operational functions of a vessel or facility owned or operated by the Debtors, or to have otherwise caused lender liability to arise or assumed the status of control, responsible person, owner, or operator provided, however, that participating in management within the meaning of 42 U.S.C. § 9601(20)(F) and (G) would not be ordinary course performance.

4.      Within one business day of any modification to the Approved Budget, the Debtors must provide notice of the modified budget to the United States by e-mail through its counsel.

J.      <u>Reservation of Rights of Universal Plant Services (VI), LLC AltairStrickland V.I., LLC, Vivot Equipment Corporation and Virgin Islands Industrial Services, LLC</u>.  Notwithstanding anything in this Third Interim Order indicating to the contrary, nothing in this Third Interim Order will change or otherwise modify the prepetition priority of (i) any statutory liens, and (ii) any other rights and/or claims of Universal Plant Services (VI), LLC ("<u>UPS</u>"), AltairStrickland V.I. LLC ("<u>AltairStrickland</u>"), Vivot Equipment Corporation ("<u>Vivot</u>") and Virgin Islands Industrial

Services, LLC ("VIIS") (collectively, the "Construction Lien Objectors"), whose rights, if any, are hereby expressly preserved, except with respect to the DIP Liens granted to the DIP Secured Parties under the circumstances set forth in this paragraph. To the extent that a Construction Lien Objector has a lien on any DIP Collateral as of the Petition Date that is valid, enforceable, nonavoidable, and perfected, including as permitted by section 546(b) of the Bankruptcy Code, and such lien (or any amount owed associated with such lien) was senior in priority to any of the Prepetition Secured Parties Liens, such lien shall be treated as a Permitted Prior Lien and shall not be junior in priority to the DIP Liens or subordinated to any other liens created under this Order, including adequate protection liens granted to any party. The Construction Lien Objectors reserve their rights and nothing in this Third Interim Order limits their rights, if any, to request adequate protection equal to the diminution in value of their interest in collateral, if any, or seek other legal and equitable remedies with respect to the Debtors' assets. Each of the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties' rights to contest or otherwise object to such request or exercise of legal or equitable remedies or to any assertion of liens, interest or other claims of the Construction Lien Objectors are hereby reserved.

K.      Hearing Date.  The Final Hearing shall occur on August 31, 2021 at 9:30 a.m. prevailing Central Time.   The Debtors shall file proposed revised terms for obtaining additional credit and use of cash collateral following expiration of this Third Interim Order, if any, by August 27, 2021 at 12:00 p.m. prevailing Central Time.   Objections and responses to such proposed relief shall be due by August 30, 2021 at noon prevailing Central Time.

L.      Except as otherwise set forth herein, all terms and provisions of the Prior Interim Orders remain unchanged and in full force and effect.

M.     This Third Interim Order is immediately valid, effective and enforceable upon the date signed by the Court and entered on the docket in the Chapter 11 Cases.

**Signed:  August 11, 2021.**

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit A**

First Amendment to Senior Secured Superpriority Debtor-In-Possession Credit Agreement

0756
Gray Reed Draft (v3)  8/11/21

### FIRST AMENDMENT TO SENIOR SECURED SUPERPRIORITY DEBTOR IN POSSESSION CREDIT AGREEMENT

This FIRST AMENDMENT TO SENIOR SECURED SUPERPRIORITY DEBTOR IN POSSESSION CREDIT AGREEMENT ("*Amendment*"), dated as of August [11], 2021 (the "*First Amendment Effective Date*"), is entered into by and among LIMETREE BAY REFINING, LLC, a U.S. Virgin Islands limited liability company ("*Borrower*"), LIMETREE BAY REFINING HOLDINGS II, LLC, a U.S. Virgin Islands limited liability company ("*Holdings*"), LIMETREE BAY SERVICES, LLC, a Delaware limited liability company ("*LBS*"), LIMETREE BAY REFINING HOLDINGS LLC, a U.S. Virgin Islands limited liability company ("*LBRH*"), LIMETREE BAY REFINING MARKETING LLC, a U.S. Virgin Islands limited liability company ("*LBRM*"), LIMETREE BAY REFINING OPERATING LLC, a U.S. Virgin Islands limited liability company ("*LBRO*", and together with LBRM, LBRH, LBS and Holdings, the "*Guarantors*", and together with the Borrower, the "*Borrower Parties*"), the Lenders party to the Credit Agreement described below, and 405 SENTINEL LLC, as administrative agent for the Lenders (the "*Administrative Agent*").

### RECITALS

WHEREAS, Borrower, the Guarantors, the Lenders, the Administrative Agent and certain other Persons are parties to the Senior Secured Superpriority Debtor In Possession Credit Agreement, dated as of July 13, 2021 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "*Credit Agreement*"); and

WHEREAS, the Borrower has requested that the Administrative Agent and the Lenders amend the Credit Agreement in certain respects as set forth herein.

NOW, THEREFORE, in consideration of the premises and the mutual covenants, representations and warranties contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

### AGREEMENT

Section 1.    <u>Definitions</u>.  Capitalized terms used herein but not defined herein shall have the meanings as given them in the Credit Agreement, unless the context otherwise requires.

Section 2.    <u>Amendments to Credit Agreement</u>.  The following provisions shall be effective upon the First Amendment Effective Date.

(a)    <u>Amendment of Section 1.1</u>. Section 1.1 of the Credit Agreement is hereby amended by adding the following definitions to such Section in appropriate alphabetical order:

"*First Interim DIP Order*" means the first Interim DIP Order entered in the Chapter 11 Cases on July 13, 2021.

13900629.11

"*First Amendment*" means the First Amendment to Senior Secured Superpriority Debtor In Possession Credit Agreement dated as of August [11], 2021 among Borrower, the Guarantors, the Lenders and the Administrative Agent.

"*Second Interim DIP Order*" means the second Interim DIP Order entered in the Chapter 11 Cases on August 2, 20201.

"*Third Interim DIP Order*" means the third Interim DIP Order entered in the Chapter 11 Cases on or about the date hereof.

(b)    Amendment of Section 1.1.   Section 1.1 of the Credit Agreement is amended by deleting the definitions of "Fee Letter", "Initial Commitment Period", "Interim DIP Order", and "Maturity Date" and replacing them in their entirety with the following:

"*Fee Letter*" means the letter agreement, dated on or about the Closing Date, between the Borrower and the Administrative Agent, as amended restated, supplemented or otherwise modified from time to time.

"*Initial Commitment Period*" means the period commencing on the date of entry of the First Interim DIP Order and ending on the date of entry of the Final DIP Order.

"*Interim DIP Order*" means, collectively, each order of the Bankruptcy Court (including the First Interim Order, the Second Interim Order, and the Third Interim Order) entered in the Chapter 11 Cases after an interim hearing under Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure in form and substance reasonably acceptable to the Required Lenders and the Agent authorizing and approving, among other things, the DIP Facility on an interim basis, the terms of this Agreement and the other Loan Documents on an interim basis, and the granting of the Liens on the Collateral with the priority contemplated in this Agreement, as the same may be amended, amended and restated, supplemented or otherwise modified from time to time with the express consent of the Required Lenders.

"*Maturity Date*" means earliest to occur of: (a) the date that is nine (9) months after the date of entry of the First Interim DIP Order, (b) the date of the closing of a sale of all or a material portion of the Borrower Parties' assets under section 363 of the Bankruptcy Code, (c) the effective date of any confirmed plan in the Chapter 11 Cases, (d) the filing of a motion or other pleading requesting (or the entry of an order approving) the appointment of a trustee, other estate fiduciary or an examiner with special or expanded powers which the Debtors fail to timely oppose without the prior written consent of the Administrative Agent and the Lenders; (e) the date of acceleration of the Advances or termination of the Commitment by the Required Lenders or the Administrative Agent (at the direction of the Required Lenders) pursuant to Section 7.01 following an Event of Default; and (f) the occurrence of a Termination Event (as defined in the DIP Order).

"*Milestones*" has the meaning specified in Section 6.01(p), as amended by the First Amendment.

(c)    Amendment of Section 2.01(a).   Section 2.01(a) of the Credit Agreement is hereby amended and restated in its entirety to the following:

-2-

4852-3190-5012.7

"(a)     Subject to the terms and conditions set forth herein and in the DIP Order, each Lender severally agrees to make advances of its Commitment (each an "***Advance***" and, collectively, the "***Advances***") from time to time on any Business Day during the Commitment Period to the Borrower in an aggregate principal equal to its Pro Rata Share of the aggregate Borrowing requested in each Funding Notice delivered under Section 2.02; *provided that* the Advance to be made by each Lender shall not exceed, on the date of such Advance, such Lender's Available Commitment at such time (each, a "***Borrowing***" and collectively the "***Borrowings***"); *provided* that, notwithstanding anything to the contrary herein, (x) during the Initial Commitment Period, only two Borrowings of Advances shall be available to the Borrower, and the aggregate principal amount of such Borrowings shall not exceed $15,500,000; *provided further* that $5,500,000 shall be available upon entry of the First Initial DIP Order and the additional $10,000,000 shall be available upon the effectiveness of the First Amendment; and (y) upon and after the entry of the Final DIP Order, one or two additional Borrowings of Advances shall be available to the Borrower and the aggregate principal amount of such additional Borrowings shall not exceed $9,500,000; *provided further* that the aggregate principal amount of Advances to be made by the Lenders shall not exceed $25,000,000; *provided further* that the Lenders shall not be obligated to fund any Borrowing request if such disbursement would result in the Borrower Parties' pro-forma cash balance to exceed the Borrower Parties' cash balance in the DIP Budget at such time by $5,000,000 or more during the thirty (30) day period following the funding of the Borrowing requested in the Funding Notice, after giving pro forma effect to any planned expenditures projected to be made over such period in accordance with the DIP Budget.  Amounts repaid under the DIP Facility may not be reborrowed."

(d)     Amendment of Section 2.02(a).   Section 2.02(a) of the Credit Agreement is hereby amended and restated in its entirety to the following:

"(a)     Whenever the Borrower desires to incur Advances hereunder, the Borrower shall deliver the Funding Notice to the Administrative Agent not later than 12:00 p.m., New York City time (or such later time as may be required by the Administrative Agent or acceptable to the Required Lenders), no less than three (3) Business Days (or such shorter period as agreed by the Administrative Agent in its sole discretion) before the date of the proposed Borrowing. Each such notice (the "***Funding Notice***") shall be in writing, may be delivered by telecopier or electronic communication, and shall be in substantially the form of Exhibit C, specifying therein the requested (i) Funding Date as the date of such Borrowing and (ii) aggregate amount of such Borrowing. The Funding Notice for the first Advance upon or after the entry of the Interim DIP Order shall be in a principal amount of $5,500,000. The Funding Notice for the Advance upon or after the effectiveness of the First Amendment shall be in a principal amount of $10,000,000. Each subsequent Funding Notice for Advances upon or after entry of the Final DIP Order shall be in a principal amount of $5,000,000 or more, unless the aggregate of each Lender's Available Commitment is less than $5,000,000, in which case the request for Advances may be for the aggregate amount of each Lender's Available Commitment. Upon and after the entry of the Final DIP Order, the Borrower may not request more than two (2) Advances in any ten (10) Business Day period."

(e)     Amendment of Section 6.01(k)(i).   Section 6.01(k)(i) of the Credit Agreement is hereby amended by deleting each reference to "Within 30 days of the Closing Date" and replacing it with "Within 14 days of the date of the First Amendment,"

-3-

13900629.11

    (f)    <u>Amendment of Section 6.01(k)(ii)</u>.   Section 6.01(k)(ii) of the Credit Agreement is hereby amended by deleting each reference to "Within 30 days of the Closing Date" and replacing it with "Within 30 days of the date on which Borrower's counsel receives a draft of the Pledge Agreement from DIP Agent's counsel,"

    (g)    <u>Amendment of Section 6.01(p)(ii)</u>.   Section 6.01(p)(ii) of the Credit Agreement is hereby amended by deleting "on or before the thirty-fifth (35th) day after the entry of the Interim DIP Order" and replacing it with "September [___], 2021."

    (h)    <u>Amendment of Section 7.01(p)(i)</u>. Section 7.01(p)(i) of the Credit Agreement is hereby amended by deleting "the date that is forty-five (45) days after the Petition Date" and replacing it with "September [___], 2021."

    Section 3.    <u>Waiver</u>. Counsel to the DIP Agent, Gray Reed, sent a letter to counsel to the Loan Parties, Baker & Hostetler LLP, dated August 9, 2021, alleging the occurrence of certain Events of Default, Defaults, and the occurrence of a Material Adverse Effect said to arise from a change in the value of the Collateral, all as more particularly set forth therein (the "DIP Agent Counsel's Letter"). As provided in the Third Interim Order, the DIP Agent and DIP Lenders waive any Default or Event of Default referred to, directly or indirectly, in the DIP Agent Counsel's Letter and further agree that, as of the date hereof, no Material Adverse Effect has arisen due to any change in the value of the Collateral. The DIP Agent and the DIP Lenders have no knowledge or notice of any Default or Event of Default after giving effect to this Amendment and the Third Interim Order.

    Section 4.    <u>Conditions Precedent</u>. This Amendment shall be deemed effective (subject to the conditions herein contained) as of the First Amendment Effective Date when the Administrative Agent has received counterparts hereof duly executed by Borrower, the Guarantors, the Administrative Agent and the Required Lenders and upon the prior or concurrent satisfaction of each of the following conditions:

    (a)    the Administrative Agent shall have received for its own account, or for the account of each Lender, as the case may be an amendment fee in the amount of $50,000.00, which shall be payable either in cash by Borrower or by offsetting the proceeds of the Advance to be made upon the effectiveness of this Amendment. For the avoidance of doubt, if such fee is being paid by offsetting the proceeds of the Advance to be made upon the effectiveness of this Amendment, the Administrative Agent will advance $9,950,000 to Borrower but Borrower will be deemed to have received an Advance of $10,000,000.  The Borrower shall not be responsible to the DIP Agent or any Lender for the application of the proceeds of such amendment fee by the DIP Agent.

    (b)    the Administrative Agent shall have received for its own account, or for the account of each Lender, as the case may be (i) all fees, costs and expenses due and payable pursuant to Section 3.02 of the Credit Agreement, if any, and (ii) if then invoiced, any amounts payable pursuant to Section 10.02 of the Credit Agreement;

    (c)    after giving effect to the Interim DIP Orders and this Amendment, the representations and warranties in Section 4 below are true and correct; and

    (d)    the Administrative Agent shall have received a certificate, dated as of the

4852-3190-5012.7

date hereof, of a Responsible Officer of the Borrower certifying as to the matters described in item (b) above.

Section 5.    <u>Representations and Warranties</u>.  Each of the Loan Parties hereby represents and warrants that after giving effect to this Amendment and to the Third Interim DIP Order:

(a)    the representations and warranties of the Loan Parties contained in the Loan Documents are true and correct in all material respects, other than those representations and warranties that expressly relate solely to a specific earlier date, which shall remain correct in all material respects as of such earlier date;

(b)    the Loan Parties shall be in compliance with the terms of the Interim DIP Order;

(c)    no Material Adverse Effect has occurred since the Petition Date; and

(d)    no Default or Event of Default has occurred and is continuing.

Section 6.    <u>Loan Document; Ratification</u>.

(a)    This Amendment is a Loan Document.

(b)    Each Loan Party hereby ratifies, approves and confirms in every respect all the terms, provisions, conditions and obligations of the Credit Agreement as amended hereby and each of the other Loan Documents to which it is a party.

(c)    In the event of any conflict between the terms of any Interim DIP Order and the Credit Agreement (as amended hereby), the terms of the Interim DIP Order shall govern and control. Without limiting the foregoing, no "Default" or "Event of Default" shall be deemed to have occurred under the Credit Agreement if a corresponding "Termination Event" (as defined in the DIP Orders) has been amended or waived pursuant to the terms of an DIP Order or other order of the Bankruptcy Court.

Section 7.    <u>Costs and Expenses</u>.  As provided in Section 10.02 of the Credit Agreement, Borrower agrees to reimburse Administrative Agent for all fees, costs, and expenses, including the reasonable fees, costs, and expenses of counsel or other advisors for advice, assistance, or other representation, in connection with this Amendment and any other agreements, documents, instruments, releases, terminations or other collateral instruments delivered by the Administrative Agent in connection with this Amendment.

Section 8.    <u>Incorporation of Certain Provisions by Reference</u>.  The provisions of Sections 10.13 and 10.14 of the Credit Agreement captioned "Governing Law; Jurisdiction, Etc." and "Waiver of Jury Trial" are incorporated herein by reference, *mutatus mutandis*, for all purposes.

Section 9.    <u>Severability</u>.  Any provision of this Amendment that is prohibited or unenforceable in any jurisdiction shall, as to such provision and such jurisdiction, be ineffective to

13900629.11

the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Amendment or affecting the validity or enforceability of such provision in any other jurisdiction.

Section 10.    Counterparts.  This Amendment may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument, and any party hereto may execute this Amendment by signing one or more counterparts. Any signature hereto delivered by a party by facsimile or electronic transmission shall be deemed to be an original signature hereto.

Section 11.    No Waiver.   The execution, delivery and effectiveness of this Amendment shall not operate as a waiver of any default of Borrower or any other Loan Party or any right, power or remedy of the Administrative Agent or the other Secured Parties under any of the Loan Documents, nor constitute a waiver of (or consent to departure from) any terms, provisions, covenants, warranties or agreements of any of the Loan Documents. The parties hereto reserve the right to exercise any rights and remedies available to them in connection with any present or future defaults with respect to the Credit Agreement or any other provision of any Loan Document.

Section 12.    Successors and Assigns.  This Amendment shall be binding upon the Loan Parties and their respective successors and permitted assigns and shall inure, together with all rights and remedies of each Secured Party hereunder, to the benefit of each Secured Party and the respective successors, transferees and assigns.

Section 13.    Entire Agreement.   THIS AMENDMENT, THE CREDIT AGREEMENT AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT OF THE PARTIES WITH RESPECT TO THE SUBJECT MATTER HEREOF AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*(Signature Pages Follow)*

4852-3190-5012.7

IN  WITNESS  WHEREOF,  this  Amendment  is  executed  as  of  the  date  first written above.

**BORROWER**:

LIMETREE BAY REFINING, LLC,
a U.S. Virgin Islands limited liability company


By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

[Signature page to First Amendment to
Senior Secured Superpriority Debtor in Possession Credit Agreement]

**GUARANTORS**:

LIMETREE BAY REFINING HOLDINGS II, LLC,
a U.S. Virgin Islands limited liability company


By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

LIMETREE BAY SERVICES, LLC,
a Delaware limited liability company


By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

LIMETREE BAY REFINING HOLDINGS LLC,
a U.S. Virgin Islands limited liability company


By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

LIMETREE BAY REFINING MARKETING LLC,
a U.S. Virgin Islands limited liability company


By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

LIMETREE BAY REFINING OPERATING LLC,
a U.S. Virgin Islands limited liability company


By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

**ADMINISTRATIVE AGENT**:

405 SENTINEL LLC,
a Delaware limited liability company


By:_____
Name: Lawrence Cutler
Title: Authorized Signatory


**LENDER**:

405 SENTINEL LLC,
a Delaware limited liability company


By:_____
Name: Lawrence Cutler
Title: Authorized Signatory

[Signature page to First Amendment to
Senior Secured Superpriority Debtor in Possession Credit Agreement]

## **Exhibit B**

Approved Budget for the period from August 9, 2021 through and including September 13, 2021

**Limetree Bay Refinery**

**Forecasted Results of Operations and Cash Flows**

Wks Beginning   *8/9/21*   thru   *10/25/21*

| Week -----> | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning of Week | 8/9/21 | 8/16/21 | 8/23/21 | 8/30/21 | 9/6/21 | 9/13/21 | 9/20/21 | 9/27/21 | 10/4/21 | 10/11/21 | 10/18/21 | 10/25/21 | |
| End of Week | 8/15/21 | 8/22/21 | 8/29/21 | 9/5/21 | 9/12/21 | 9/19/21 | 9/26/21 | 10/3/21 | 10/10/21 | 10/17/21 | 10/24/21 | 10/31/21 | |
| **Cash Receipts** | | | | | | | | | | | | | |
| BP [1] | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Excess Construction Material [2] | 100 | - | 100 | - | 600 | - | 100 | 500 | - | - | 100 | 500 | 2,000 |
| Est. J. Aron Proceeds/Lien Release | - | - | - | - | - | - | - | - | 18,008 | - | 20,000 | - | 38,008 |
| Resale of Flushing Oil | - | - | - | - | - | - | 560 | - | - | - | - | - | 560 |
| Insurance Proceeds - TBD | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Sale of Spare Parts | - | - | - | - | - | - | - | - | - | - | - | 2,500 | 2,500 |
| Asset Sale - TBD [3] | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total    Cash Receipts** | $ 100 | $ - | $ 100 | $ - | $ 600 | $ - | $ 660 | $ 500 | $18,008 | $ - | $20,100 | $3,000 | $ 43,068 |
| **Cash Disbursements** | | | | | | | | | | | | | |
| Payroll / Benefits | $ 1,357 | $ 250 | $ 1,268 | $ 311 | $ 1,183 | $ 90 | $ 1,144 | $ - | $ 156 | $ - | $ - | $ - | $ 5,759 |
| Fuel | 365 | 390 | 390 | 390 | 390 | 390 | 390 | 195 | 195 | 195 | 195 | 195 | 3,680 |
| Maintenance and Other Outside Services | 442 | 298 | 298 | 298 | 298 | 298 | 30 | 30 | 30 | 30 | 30 | 30 | 2,110 |
| Insurance [4] | - | - | 571 | - | - | - | - | - | 367 | - | - | 311 | 1,249 |
| IT Support / Software / Hardware | - | 195 | 10 | 88 | 185 | 10 | 10 | 86 | 185 | 20 | 10 | 59 | 858 |
| Environmental / Safety | - | 184 | - | - | 184 | - | - | - | 184 | - | - | - | 552 |
| Admin / Site Services | 185 | 582 | 146 | 146 | 146 | 548 | 146 | 146 | 146 | 548 | 146 | 146 | 3,027 |
| Relocation Costs | 550 | - | - | 1,392 | - | - | - | - | 612 | - | - | - | 2,554 |
| Community Incident Response [5] | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Limetree Bay Terminal Services | 150 | 150 | 150 | 150 | 150 | - | - | - | - | - | - | - | 750 |
| EPA Mandated Expenditures | 106 | 30 | - | 30 | - | 30 | - | 30 | - | 30 | - | 30 | 286 |
| Utility Adequate Assurance Payment | - | 403 | - | - | - | - | - | - | - | - | - | - | 403 |
| Flare Repair | 136 | 50 | - | - | - | - | - | - | - | - | - | - | 186 |
| Hydrocarbon Removal [6] | 407 | 660 | 310 | 310 | 660 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 4,519 |
| **Total    Cash Disbursements** | $ 3,698 | $ 3,191 | $ 3,142 | $ 3,115 | $ 3,195 | $ 1,676 | $ 2,029 | $ 797 | $ 2,185 | $ 1,133 | $ 691 | $ 1,080 | $ 25,932 |
| **Operating Cash Flow** | $ (3,598) | $ (3,191) | $ (3,042) | $ (3,115) | $ (2,595) | $ (1,676) | $ (1,369) | $ (297) | $15,823 | $ (1,133) | $19,409 | $ 1,920 | $ 17,136 |

# Limetree Bay Refinery

**Forecasted Results of Operations and Cash Flows**

Wks Beginning   *8/9/21*   thru   *10/25/21*

| | | Week ---> 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Beginning of Week | 8/9/21 | 8/16/21 | 8/23/21 | 8/30/21 | 9/6/21 | 9/13/21 | 9/20/21 | 9/27/21 | 10/4/21 | 10/11/21 | 10/18/21 | 10/25/21 | |
| | End of Week | 8/15/21 | 8/22/21 | 8/29/21 | 9/5/21 | 9/12/21 | 9/19/21 | 9/26/21 | 10/3/21 | 10/10/21 | 10/17/21 | 10/24/21 | 10/31/21 | |
| **Other (Sources) / Uses** | | | | | | | | | | | | | | |
| DIP Financing Costs | [7] | $ 50 | $ - | $ - | $ - | $ 51 | $ - | $ - | $ - | $ 42 | $ - | $ - | $ 1,035 | $ 1,179 |
| Insurance Claims Professionals | | - | - | - | 50 | - | - | - | - | 50 | - | - | 50 | 150 |
| Term Lender Agent Fee | | - | 50 | - | - | - | - | - | - | - | - | - | - | 50 |
| Engineering Professionals (Turner Mason) | | - | - | 75 | - | - | - | - | - | 75 | - | - | - | 150 |
| **Total** Other (Sources) / Uses | | 50 | 50 | 75 | 50 | 51 | - | - | - | 167 | - | - | 1,085 | 1,529 |
| **Net Cash Flow Before Professional Fees** | | (3,648) | (3,241) | (3,117) | (3,165) | (2,646) | (1,676) | (1,369) | (297) | 15,656 | (1,133) | 19,409 | 835 | $ 15,608 |
| **Professional Fees** | | | | | | | | | | | | | | |
| Debtor Legal | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 800 | $ - | $ - | $ 800 | $ 1,600 |
| DIP Lender Counsel | | 50 | - | - | - | 200 | - | - | - | 200 | - | - | 200 | 650 |
| Debtor Chief Restructuring Officer | | - | - | - | - | - | - | - | - | 280 | - | - | 280 | 560 |
| UCC Legal and Financial Advisor | | - | - | - | - | - | - | - | - | 600 | 350 | - | - | 950 |
| Term Lender Professionals | | - | - | - | - | - | - | - | - | 250 | - | - | - | 250 |
| Independent Director | | - | - | - | - | - | - | - | - | 15 | - | - | - | 15 |
| Revolver Counsel | | - | - | - | - | - | - | - | - | 100 | - | - | - | 100 |
| US Trustee Fees | | - | - | - | - | - | - | - | - | - | - | 250 | - | 250 |
| Investment Banker | | - | - | - | 100 | - | - | - | - | 100 | - | - | - | 200 |
| BMC - Claims Agent | | - | - | - | - | - | - | - | - | 50 | - | - | - | 50 |
| **Total** | | $ 50 | $ - | $ - | $ 100 | $ 200 | $ - | $ - | $ - | $ 2,395 | $ 350 | $ 250 | $ 1,280 | $ 4,625 |
| **Net Cash Flow** | | $ (3,698) | $ (3,241) | $ (3,117) | $ (3,265) | $ (2,846) | $ (1,676) | $ (1,369) | $ (297) | $13,261 | $ (1,483) | $19,159 | $ (445) | $ 10,983 |
| *Accumulated* | | $ (3,698) | $ (6,939) | $ (10,056) | $ (13,321) | $ (16,167) | $ (17,843) | $ (19,213) | $ (19,509) | $ (6,248) | $ (7,731) | $ 11,428 | $ 10,983 | |
| | | | | | | | | | | | | | | |
| **Beginning Cash Balance** | | $ 955 | $ 7,257 | $ 4,015 | $ 898 | $ 5,633 | $ 2,787 | $ 1,111 | $ 1,242 | $ 945 | $14,206 | $12,723 | $31,883 | |
| **Net Cash Flow** | | (3,698) | (3,241) | (3,117) | (3,265) | (2,846) | (1,676) | (1,369) | (297) | 13,261 | (1,483) | 19,159 | (445) | |
| **DIP Draw** | | 10,000 | - | - | 8,000 | - | - | 1,500 | - | - | - | - | - | |
| **DIP (Paydown)** | | - | - | - | - | - | - | - | - | - | - | - | (25,000) | |
| **Ending Book Cash Balance** | | $ 7,257 | $ 4,015 | $ 898 | $ 5,633 | $ 2,787 | $ 1,111 | $ 1,242 | $ 945 | $14,206 | $12,723 | $31,883 | $ 6,437 | $ 6,437 |
| **Ending DIP Balance** | | $15,500 | $15,500 | $15,500 | $23,500 | $23,500 | $23,500 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $ - | $ - |
| | | | | | | | | | | | | | | |
| *Debtor Professional Fees Accrued (Cumulative)* | | $ 1,558 | $ 1,869 | $ 2,181 | $ 2,492 | $ 2,804 | $ 3,115 | $ 3,427 | $ 3,738 | $ 2,970 | $ 3,282 | $ 3,593 | $ 2,825 | |
| *UCC Professional Fees Accrued (Cumulative)* | | $ 279 | $ 371 | $ 464 | $ 557 | $ 650 | $ 743 | $ 836 | $ 929 | $ 421 | $ 164 | $ 257 | $ 350 | |

[1] - The Debtors have outstanding invoices to BP in the amount of approximately $32 million in respect of operational expenses incurred during the months of August 2020 through the present, under the Tolling Agreement. Such invoices are disputed by BP. These amounts are not included in the 12-week projection period as the CRO is currently investigating the validity of these outstanding amounts as well as the validity of any set-off claims.

[2] - Additional $2.0 million in collections are projected after the 13-week period.

[3] - USVI holds a letter of credit in the amount of $50 million split 50/50 between LB Terminals and LB Refining.  Under the Operating Agreement such amounts can be used for payment defaults and environmental assurances.

[4] - Existing premiums; coverages are currently under review with agents.

[5] - Subject to mediation.

[6] - More spend after this period anticipated in order to complete hydrocarbon removal. Budgeting currently in process.

[7] - Assumes DIP Draws of $5.5 million on 7/12/2021, $10.0 million on 8/9/2021, $8.0 million on 8/30/2021, and $1.5 million on 9/20/2021, and DIP Repayments of $25.0 million on 10/25/2021.  Assumes an annual cash interest rate of 3.0%, annual PIK interest rate of 9.0%, annual delayed draw interest of 1.5%, and an agent fee of 0.25% on the total commitment amount.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC,** *et al.* [1] | **CASE NO.: 21-32351** |
| Debtors. | Jointly Administered |

**DEBTORS' <u>EMERGENCY</u> MOTION TO AMEND THIRD INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION SENIOR SECURED SUPERPRIORITY FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, <u>AND (V) GRANTING RELATED RELIEF</u>**

> **Emergency relief has been requested. Relief is requested not later than 5:00 p.m. on August 16, 2021.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Limetree Bay Services, LLC ("**Limetree**") and its debtor affiliates (collectively, the "**Debtors**"), as debtors and debtors in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), respectfully represent as follows in support of this motion (the "**Motion**").

### Relief Requested

1.      Pursuant to Rule 60 of the Federal Rules of Civil Procedure (the "FRCP"), made applicable in these proceedings by Rule 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors request entry of an order, substantially in the form attached

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

hereto as **Exhibit A** (the "**Proposed Amended Order**")**,** amending certain terms in the entered Third Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief, entered by this Court on August 11, 2021, as Docket No. 393 (the "**Entered Third Interim DIP Order**"), as follows:

a.    Changing the hearing date for a final hearing on the Debtors' request for postpetition financing from August 31, 2021, to August 27, 2021, at 10:00 a.m., and amending the related objection and filing dates such that the Debtors' documents requesting relief will be filed by August 24, 2021, no later than 3:00 p.m., and any objection shall be filed by August 26, 2021, no later than noon.

b.    Correcting a mistaken date for a termination event that will arise if the Debtors fail to obtain entry of a final DIP financing order.  The termination date of September 17, 2021 (the "**Final DIP Termination Date**"), that appears in the Entered Third Interim DIP Order was originally contemplated based on a proposed final hearing date earlier that same week.  The Debtors' extensive negotiations with counsel for the DIP Lenders, the Prepetition Secured Parties, and the Committee (as those terms are used in the Entered Third Interim DIP Order) led to a proposed final hearing date of August 31, 2021 (now to be amended to August 27, 2021, per the prior paragraph), but the parties mistakenly failed to notice that the Final DIP Termination Date was not amended to coincide with the changed hearing date.

c.    Attaching a final version of the First Amendment to Senior Secured Superpriority Debtor-In-Possession Credit Agreement, as the version that is attached to the Entered Third Interim DIP Order was not finalized.  There are no material changes in the final version attached to the proposed amended order.

2.    The Debtors have provided counsel for the Committee, DIP Lenders, and Prepetition Secured Parties with notice of these proposed amendments, and have not received any objections.  A redline of the Entered Third Interim DIP Order with these proposed revisions shown in the text of the order is attached hereto as **Exhibit B**.

## Jurisdiction

3.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## Background

4.      On July 12, 2021 (the "**Petition Date**"), each of the Debtors commenced with this Court a voluntary petition for relief under the Bankruptcy Code. The Debtors continue to operate their businesses as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. The Official Committee of Unsecured Creditors was appointed on July 26, 2021 (Doc. No. 189).

5.      Following a hearing held on August 11, 2021, this Court entered the Entered Third Interim DIP Order in the form filed by the Debtors prior to the hearing, with changes made by the Court to Paragraph H, and the insertion of dates related to the final hearing on the Debtors' request for postpetition financing.

6.      On August 12, 2021, the Debtors determined that they would require relief in the form of a final hearing on postpetition financing earlier than the date that appears in the Entered Third Interim DIP Order, and discovered that the Final DIP Termination Date was incorrect. Also on August 12, 2021, the Debtors and DIP Lenders finalized the terms of the First Amendment to Senior Secured Superpriority Debtor-In-Possession Credit Agreement without any material amendments to the version attached as Exhibit A to the Entered Third Interim DIP.

## Basis for Relief Requested

7.      FRCP 60(b)(1) permits amendments to entered orders on the grounds of "mistake, inadvertence, surprise, or excusable neglect."  In this case, the mistaken Final DIP Termination

3

Date was a result of the negotiations that concluded only minutes before this Court's hearing on August 11, 2021, and was inadvertent on the part of all parties to the negotiations.  The requested change to the final hearing date on postpetition financing arises from the post-hearing discovery that the Debtors require certain relief earlier than the anticipated hearing date of August 31, 2021.  In the case of the final version of the First Amendment to Senior Secured Superpriority Debtor-In-Possession Credit Agreement, the Debtors merely wish to ensure that entry of an amended order includes the correct and final exhibit.

8.      The Debtors respectfully request emergency consideration of this Motion. The Debtors will shortly embark on negotiations concerning the relief that will be requested at the final hearing on August 27, 2021, and wish to ensure that the current controlling order on postpetition financing leave no open questions during those negotiations. Accordingly, the Debtors respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

9.      Pursuant to Local Rule 9013-1(i), this Motion is verified as to its accuracy by Debtors' proposed counsel.

10.      Notice of this Motion will be provided to the Master Service List, including: (a) the U.S. Trustee; (b) all secured creditors; (c) the Offices of the Attorney General of the State of Texas and the United States Virgin Islands; (d) the thirty (30) largest consolidated unsecured creditors for the Debtors; (e) the Debtors' identified, interested taxing authorities, including the Internal Revenue Service; (f) the Debtors' identified, interested government and regulatory entities; (g) other interested parties as identified by the Debtors;  (h) the Committee members and their counsel, if known; (i) proposed counsel to the Committee; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The method of service for each party will be

described more fully in the certificate of service prepared by the Debtors' claims and noticing agent. The Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request this Court enter the proposed Amended Third Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief substantially in the form attached hereto as Exhibit A, and for all other relief that is appropriate under the circumstances.

RESPECTFULLY SUBMITTED this 13th day of August 2021.

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*

**BAKER & HOSTETLER LLP**
**Elizabeth A. Green, Esq.**
Fed ID#: 903144
Email: egreen@bakerlaw.com
**Jimmy D. Parrish, Esq.**
Fed ID#: 2687598
E-mail: jparrish@bakerlaw.com
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, Florida 32801-3432
Telephone: (407) 649-4000
Facsimile: (407) 841-0168

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com

*Proposed Counsel for the Debtors and Debtors in Possession*

5

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Elizabeth A. Green*
Elizabeth A. Green

**Certificate of Service**

I certify that on August 13, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Elizabeth A. Green*
Elizabeth A. Green

6

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*** [1] | **CASE NO.: 21-32351** |
| **Debtors.** | **Jointly Administered** |

## AMENDED THIRD INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION SENIOR SECURED SUPERPRIORITY FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (the "Debtors"), the court enters this Amended Order (the "Third Interim Order") extending the terms of the (i) *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief,* dated July 14, 2021 (Docket No. 104) (the "First Interim Order"); and the (ii) *Second Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief,* dated August 2, 2021 (Docket No. 271) (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

"Second Interim Order," and together with the First Interim Order, the "Prior Interim Orders")[2] with respect to the Debtors' rights to use cash collateral through August 29, 2021, with the following revisions:

A.      In addition to the $5.5 million in postpetition financing previously authorized in the First Interim Order and advanced in full to the Debtors, the Debtors are hereby authorized to (a) obtain additional postpetition financing in an aggregate principal amount not to exceed $10 million on an interim basis, pursuant to the terms of that certain DIP Credit Agreement, a copy of which was attached to the First Interim Order as Exhibit A, as modified pursuant to the terms of that certain First Amendment to Senior Secured Superpriority Debtor-In-Possession Credit Agreement, a copy of which is attached hereto as **Exhibit A** (the "First Amendment"). The Debtors are authorized to enter into the First Amendment.

B.      Attached hereto as **Exhibit B** is the Debtors' Approved Budget for the period from August 9, 2021 through and including October 31, 2021. *See* First Interim Order ¶ N.

C.      Notwithstanding paragraph 15(d) of the First Interim Order or anything contained in the DIP Loan Documents, the Debtors' failure to obtain entry of the Final Order shall not constitute, or be deemed to cause, a Termination Event unless the Debtors fail to obtain entry of the Final Order by September 3, 2021.  Notwithstanding paragraphs 9(g) and 15(p) of the First Interim Order, any breach of paragraph 9(g) of the First Interim Order with respect to a thirteen-week budget is hereby waived and shall not constitute, or be deemed to cause, a Termination Event. The requirements of Paragraph 9(g)(ii) of the First Interim Order are satisfied by the attached Approved Budget.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Prior Interim Orders.

D.      Those certain Events of Default, Defaults, Termination Events, and/or Material Adverse Effect that were alleged in the Reservation of Rights Letter filed at Docket No. 355, and any other Events of Default, Defaults (as such term is defined in the DIP Credit Agreement), Termination Events, and/or Material Adverse Effects of which the DIP Agent or any Lender (as such term is defined in the DIP Credit Agreement) has knowledge as of the date hereof are deemed cured and/or waived.

E.      The DIP Lenders ratify and affirm that, as of the date of this Order, the aggregate maximum outstanding principal amount of the DIP Loans, if fully advanced to the Borrower, will be $25,000,000, and that, subject to the Borrower's satisfaction of the conditions precedent set forth in Section 4.02 of the DIP Credit Agreement, the remaining aggregate Commitment of the DIP Lenders is $19,500,000. After giving effect to the First Amendment, none of the DIP Agent or the DIP Secured Parties have any knowledge or notice of any Default or Event of Default which would permit the DIP Agent or DIP Lenders to conclude that any of the conditions precedent set forth in Section 4.02 have not been satisfied as of the date hereof.  The DIP Lenders, and/or their Administrative Agent (as that term is defined in the First Amendment), shall be entitled to a $50,000 amendment fee on the terms provided in the First Amendment.

F.      Notwithstanding anything to the contrary in Prior Interim Orders, the DIP Loan Documents, or any Approved Budget, all accrued and unpaid professional fees and expenses of the Ad Hoc Term Lender Group, the Term Administrative Agent, the Project Collateral Agent, the Revolver Administrative Agent and J. Aron owed by the Debtors under paragraphs 8(b) and 9(a) – (c) of the First Interim Order shall be included in the Carve-Out, subject to a total aggregate cap of $1.3 million for the fees of such Prepetition Secured Parties; *provided*, that, for the avoidance

of doubt, such cap is subject to further adjustment in connection with any further interim orders or the Final Order, and all rights with respect thereto are preserved.

G.     Resolution of Committee Issues.

1.     On July 26, 2021, the U.S. Trustee appointed the Official Committee of Unsecured Creditors in these Chapter 11 Cases [Docket No. 189] (the "Committee").

2.     In addition to counsel to the DIP Agent, the DIP Lenders, and the Prepetition Agents, the Debtors shall deliver a copy of the Approved Budget to the Committee.

3.     Notwithstanding paragraph 5 of the First Interim Order, the Committee Investigation Budget shall be in an amount up to an aggregate cap of $200,000.  Notwithstanding paragraph 42 of the First Interim Order, all rights of the Committee to seek an extension of the Challenge Period for purposes of the Final Order are preserved.

4.     For the avoidance of doubt, the Carve-Out in paragraph 5(i) of the First Interim Order includes all fees and expenses of bankruptcy professionals reflected as accrued in the Budget.  The Debtors will work in good faith with the Committee to establish a professional fee escrow consistent with the Approved Budget and the Debtors' liquidity needs.

5.     Notwithstanding paragraphs 6 and 7(a) of the First Interim Order, until the entry of the Final Order, the DIP Superpriority Claims and the DIP Liens shall not attach to or be payable from the Unencumbered Assets (as defined below).  Following entry of the Final Order, the DIP Superpriority Claims and the DIP Liens shall attach to the proceeds of, or property recovered in connection with, Unencumbered Assets, *provided that* such proceeds and property shall only be used to satisfy the DIP Superpriority Claims and the DIP Liens, to the extent that all other DIP Collateral is insufficient to satisfy the DIP Obligations in full.

6.      Notwithstanding paragraphs 9(a), 9(b) and 9(c) of the First Interim Order, until the entry of the Final Order, (i) the adequate protection liens and security interests granted in paragraphs 9(a)(1), 9(b)(1) and 9(c)(1) shall not attach to or be payable from Avoidance Actions, Avoidance Proceeds, commercial tort claims, or the proceeds thereof (collectively, the "Unencumbered Assets") and (ii) the superpriority administrative claims granted in paragraphs 9(a)(4), 9(b)(4) and 9(c)(4) shall not attach to or  be payable from the Unencumbered Assets. Notwithstanding the Committee Investigation Budget or anything to the contrary in the First Interim Order, nothing herein shall prevent the Committee from seeking approval of all fees and expenses incurred by its professionals to be payable from the Unencumbered Assets.

7.      Notwithstanding paragraph 9(a)(6) of the First Interim Order, the right to credit bid the Prepetition Secured Obligations under the Prepetition Term Documents in connection with any sale of Prepetition Debt Collateral shall be subject to section 363(k) of the Bankruptcy Code.

8.      Notwithstanding paragraph 9(b)(6) of the First Interim Order, the right to credit bid the Prepetition Secured Obligations under the Revolver Transaction Documents in connection with any sale of Prepetition Debt Collateral shall be subject to section 363(k) of the Bankruptcy Code.

9.      Notwithstanding paragraph 9(c)(6) of the First Interim Order, the right to credit bid the prepetition obligations under the J. Aron Transaction Documents in connection with any sale of Inventory Financing Collateral shall be subject to section 363(k) of the Bankruptcy Code.

10.      Notwithstanding paragraph 9(e) of the First Interim Order, the rights of the Prepetition Secured Parties to credit bid their respective Prepetition Secured Obligations in

connection with the sale of any of their respective Prepetition Collateral shall be subject to section 363(k) of the Bankruptcy Code.

11.     The Debtors shall arrange Weekly Meetings with the Committee and its advisors under paragraph 9(f) of the First Interim Order (which, for the avoidance of doubt, may be conducted as separate calls for the Prepetition Secured Parties and the Committee). The Committee's professionals may reasonably request topics of discussion at the Weekly Meetings.

12.     The Committee shall be entitled to the financial reporting and inspection rights described more fully in paragraph 12 of the First Interim Order.

13.     Notwithstanding paragraph 16(c) of the First Interim Order, the closing date of a 363 Sale shall not constitute a Cash Collateral Termination Event.

14.     Notwithstanding paragraph 19(b) of the First Interim Order, the DIP Collateral and proceeds thereof, proceeds of the DIP Financing, and the Prepetition Collateral and proceeds thereof may be used to investigate the actions described therein for the purposes described in, and a manner consistent with, the terms of paragraph 42 of the First Interim Order.

15.     Notwithstanding paragraph 26 of the First Interim Order, the Debtors shall obtain the consent of the Committee before modifying the Approved Budget with respect to the fees and expenses of the Committee professionals, which consent shall not be unreasonably withheld or delayed, or unless such modification is otherwise approved by the Court.

16.     Notwithstanding anything contained in paragraph 42 of the First Interim Order:

(a)     for the avoidance of doubt, the Challenge and Challenge Period shall not apply to any claims or causes of action of the Debtors with respect to the Insider Creditors;

(b)      the Challenge Period will be tolled for the Committee if it formally moves for an order of this Court conferring standing or authority (the "Standing Motion") prior to the Challenge Period, from the date the Committee so moves until five (5) business days from the date that the Standing Motion is granted or the date when the Standing Motion is denied pursuant to an Order of the Court; *provided*, that the Challenge Period: (i) will only be tolled if such Standing Motion attaches a proposed complaint identifying the specific Challenge(s) that the Committee proposes to assert and the defendant(s) against whom such Challenge(s) are proposed to be asserted, and (ii) will only be tolled with respect to such Challenge(s) and defendant(s) specifically identified therein. Nothing in the First Interim Order or herein shall limit the Committee's ability to (x) file a timely Standing Motion in respect of any timely Challenge for which it cannot obtain standing as a matter of law because the applicable Debtor is a limited liability company (an "LLC Challenge Motion"), and (y) seek pursuant to such LLC Challenge Motion a mechanism by which to prosecute such Challenge, provided that the Committee otherwise satisfies the requirements in paragraph 42(a) of the First Interim Order. In the event the Committee files a timely LLC Challenge Motion for which it cannot obtain standing, and provided that the Committee otherwise satisfies the requirements set forth in paragraph 42(a) of the First Interim Order, the expiration of the Challenge Deadline solely for the specific Challenge set forth in the LLC Challenge Motion, and solely as to the defendant(s) named therein, shall be tolled pending further order of the Court, and applicable parties shall meet and confer with respect to an appropriate process (if any) for the prosecution of any such Challenge. If timely notified of a Challenge for which the Committee cannot gain standing because the applicable Debtor is a limited liability company, the Debtors (or a designated representative) shall, to the extent permitted by

applicable law, retain the authority to prosecute such Challenge in the exercise of their business judgment and subject to any applicable further order of the Court.

(c)    Any Challenge, Standing Motion, or LLC Standing Motion commenced by the Committee (the "Committee Action") may be pursued by any chapter 7 trustee in these Cases (a "Chapter 7 Trustee"), appointed subsequent to the filing of the Committee Action, in the Trustee's sole and exclusive discretion. The filing of a *Notice of Substitution of Trustee* for and in the stead of the Committee in the Committee Action, shall be automatically effective upon filing, without further Order of the Court, and the Chapter 7 Trustee shall be deemed automatically substituted for the Committee, which substitution shall be deemed retroactive to the date of the filing of the Committee Action.

17.    Notwithstanding anything to the contrary in paragraph 49 of the First Interim Order, (i) the Terminal Replacement Liens shall not attach to any Unencumbered Assets and (ii) any superpriority administrative claims granted therein shall not attach to or be payable from the Unencumbered Assets.

H.    To the extent any of the Terminal Entities have Permitted Prior Liens on Product or goods (as defined under the Uniform Commercial Code) or the proceeds thereof under the Non-Included Locations TSA[3] (the "Terminal Liens"), the Section 364(d)(1) Liens shall be junior to the Terminal Liens on such property.

I.    Resolution of Objection by the United States of America.

---

[3] As that term is defined in the Objection and Reservation of Rights of Terminal Entities to Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-Petition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (IV) Approving Adequate Protection to Pre-Petition Secured Creditors, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing [Doc. No. 252].

1.      Notwithstanding anything to the contrary in the Prior Interim Orders, this Third Interim Order or the DIP Loan Documents, nothing in this Third Interim Order, the Prior Interim Orders or the DIP Loan Documents shall relieve the Debtors of any obligations under federal, state, territorial, or local police or regulatory laws or under 28 U.S.C. § 959(b), provided that nothing herein shall limit or impair the Debtors' rights to assert defenses under applicable law and nothing herein shall create new defenses to obligations under police or regulatory laws or 28 U.S.C. § 959(b).

2.      Notwithstanding anything to the contrary in the Prior Interim Orders, this Third Interim Order or the DIP Loan Documents, nothing in this Third Interim Order, the Prior Interim Orders or the DIP Loan Documents shall impair or adversely affect the United States of America's rights, claims and defenses of set-off and recoupment, if any, or any of its agencies, departments or agents, if any, and all such rights, claims and defenses, if any (the "Setoff/Recoupment Rights") shall be preserved in their entirety; *provided, however*, that the exercise of any such Setoff/Recoupment Rights must be in accordance with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; *provided further, however*, that (a) exercise of such Setoff/Recoupment Rights shall not impair or adversely affect the rights of the DIP Secured Parties and the Prepetition Secured Parties, as applicable, to assert remedies (if any) with respect to any Event of Default or Cash Collateral Termination Event, as applicable, in the event any such governmental unit exercises any such Setoff/Recoupment Rights, (b) nothing in this paragraph shall limit the right of any party in interest to challenge the Setoff/Recoupment Rights of any such governmental unit, and (c) nothing in the Prior Interim Orders, this Third Interim Order, or the DIP Loan Documents shall modify or determine the rights or priority of any governmental unit's Setoff/Recoupment Rights vis-à-vis the rights and liens of the DIP Secured Parties and the

Prepetition Secured Parties, as applicable, and all rights of the governmental units and the DIP Secured Parties and Prepetition Secured Parties with respect to the determination of such rights or priority (to the extent such priority is a disputed issue) are preserved.

3.      With respect to environmental liabilities to any governmental unit, to the extent that the actions of the DIP Secured Parties or Prepetition Secured Parties constitute, within the meaning of 42 U.S.C. § 9601(20)(F) and (G), actual participation in the management or operational functions of a vessel or facility owned or operated by the Debtors, the rights of such governmental unit under applicable laws are preserved, and all rights of the DIP Secured Parties and the Prepetition Secured Parties to contest such liability or status under applicable law are preserved.  For the avoidance of doubt, in determining to make any loan or other extension of credit under the DIP Credit Agreement, permitting the use of Cash Collateral, performing under the Prior Interim Orders, the Third Interim Order and the DIP Loan Documents in the ordinary course, no DIP Secured Party or Prepetition Secured Party shall be deemed to have participated in the management or operational functions of a vessel or facility owned or operated by the Debtors, or to have otherwise caused lender liability to arise or assumed the status of control, responsible person, owner, or operator provided, however, that participating in management within the meaning of 42 U.S.C. § 9601(20)(F) and (G) would not be ordinary course performance.

4.      Within one business day of any modification to the Approved Budget, the Debtors must provide notice of the modified budget to the United States by e-mail through its counsel.

J.      Reservation of Rights of Universal Plant Services (VI), LLC AltairStrickland V.I., LLC, Vivot Equipment Corporation and Virgin Islands Industrial Services, LLC.  Notwithstanding anything in this Third Interim Order indicating to the contrary, nothing in this Third Interim Order

will change or otherwise modify the prepetition priority of (i) any statutory liens, and (ii) any other rights and/or claims of Universal Plant Services (VI), LLC ("UPS"), AltairStrickland V.I. LLC ("AltairStrickland"), Vivot Equipment Corporation ("Vivot") and Virgin Islands Industrial Services, LLC ("VIIS") (collectively, the "Construction Lien Objectors"), whose rights, if any, are hereby expressly preserved, except with respect to the DIP Liens granted to the DIP Secured Parties under the circumstances set forth in this paragraph. To the extent that a Construction Lien Objector has a lien on any DIP Collateral as of the Petition Date that is valid, enforceable, nonavoidable, and perfected, including as permitted by section 546(b) of the Bankruptcy Code, and such lien (or any amount owed associated with such lien) was senior in priority to any of the Prepetition Secured Parties Liens, such lien shall be treated as a Permitted Prior Lien and shall not be junior in priority to the DIP Liens or subordinated to any other liens created under this Order, including adequate protection liens granted to any party. The Construction Lien Objectors reserve their rights and nothing in this Third Interim Order limits their rights, if any, to request adequate protection equal to the diminution in value of their interest in collateral, if any, or seek other legal and equitable remedies with respect to the Debtors' assets. Each of the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties' rights to contest or otherwise object to such request or exercise of legal or equitable remedies or to any assertion of liens, interest or other claims of the Construction Lien Objectors are hereby reserved.

K.     Hearing Date.  The Final Hearing shall occur on August 27, 2021 at 10:00 a.m. prevailing Central Time.  The Debtors shall file proposed revised terms for obtaining additional credit and use of cash collateral following expiration of this Third Interim Order, if any, by August 24, 2021 at 3:00 p.m. prevailing Central Time.  Objections and responses to such proposed relief shall be due by August 26, 2021 at noon prevailing Central Time.

L.      Except as otherwise set forth herein, all terms and provisions of the Prior Interim Orders remain unchanged and in full force and effect.

M.      This Third Interim Order is immediately valid, effective and enforceable upon the date signed by the Court and entered on the docket in the Chapter 11 Cases.

**Signed on August __, 2021.**

_____

**David R. Jones**
**UNITED STATES BANKRUPTCY JUDGE**

## **Exhibit A to Order**

First Amendment to Senior Secured Superpriority Debtor-In-Possession Credit Agreement

## FIRST AMENDMENT TO SENIOR SECURED SUPERPRIORITY DEBTOR IN POSSESSION CREDIT AGREEMENT

This FIRST AMENDMENT TO SENIOR SECURED SUPERPRIORITY DEBTOR IN POSSESSION CREDIT AGREEMENT ("*Amendment*"), dated as of August 12, 2021 (the "*First Amendment Effective Date*"), is entered into by and among LIMETREE BAY REFINING, LLC, a U.S. Virgin Islands limited liability company ("*Borrower*"), LIMETREE BAY REFINING HOLDINGS II, LLC, a U.S. Virgin Islands limited liability company ("*Holdings*"), LIMETREE BAY SERVICES, LLC, a Delaware limited liability company ("*LBS*"), LIMETREE BAY REFINING HOLDINGS LLC, a U.S. Virgin Islands limited liability company ("*LBRH*"), LIMETREE BAY REFINING MARKETING LLC, a U.S. Virgin Islands limited liability company ("*LBRM*"), LIMETREE BAY REFINING OPERATING LLC, a U.S. Virgin Islands limited liability company ("*LBRO*", and together with LBRM, LBRH, LBS and Holdings, the "*Guarantors*", and together with the Borrower, the "*Borrower Parties*"), the Lenders party to the Credit Agreement described below, and 405 SENTINEL LLC, as administrative agent for the Lenders (the "*Administrative Agent*").

### RECITALS

WHEREAS, Borrower, the Guarantors, the Lenders, the Administrative Agent and certain other Persons are parties to the Senior Secured Superpriority Debtor In Possession Credit Agreement, dated as of July 13, 2021 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "*Credit Agreement*"); and

WHEREAS, the Borrower has requested that the Administrative Agent and the Lenders amend the Credit Agreement in certain respects as set forth herein.

NOW, THEREFORE, in consideration of the premises and the mutual covenants, representations and warranties contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

### AGREEMENT

Section 1.     <u>Definitions</u>.  Capitalized terms used herein but not defined herein shall have the meanings as given them in the Credit Agreement, unless the context otherwise requires.

Section 2.     <u>Amendments to Credit Agreement</u>.  The following provisions shall be effective upon the First Amendment Effective Date.

(a)     <u>Amendment of Section 1.1</u>. Section 1.1 of the Credit Agreement is hereby amended by adding the following definitions to such Section in appropriate alphabetical order:

"*First Interim DIP Order*" means the first Interim DIP Order entered in the Chapter 11 Cases on July 13, 2021.

4852-3190-5012.8

13900629.11

"***First Amendment***" means the First Amendment to Senior Secured Superpriority Debtor In Possession Credit Agreement dated as of August 12, 2021 among Borrower, the Guarantors, the Lenders and the Administrative Agent.

"***Second Interim DIP Order***" means the second Interim DIP Order entered in the Chapter 11 Cases on August 2, 20201.

"***Third Interim DIP Order***" means the third Interim DIP Order entered in the Chapter 11 Cases on or about the date hereof.

(b)     Amendment of Section 1.1.     Section 1.1 of the Credit Agreement is amended by deleting the definitions of "Fee Letter", "Initial Commitment Period", "Interim DIP Order", and "Maturity Date" and replacing them in their entirety with the following:

"***Fee Letter***" means the letter agreement, dated on or about the Closing Date, between the Borrower and the Administrative Agent, as amended restated, supplemented or otherwise modified from time to time.

"***Initial Commitment Period***" means the period commencing on the date of entry of the First Interim DIP Order and ending on the date of entry of the Final DIP Order.

"***Interim DIP Order***" means, collectively, each order of the Bankruptcy Court (including the First Interim Order, the Second Interim Order, and the Third Interim Order) entered in the Chapter 11 Cases after an interim hearing under Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure in form and substance reasonably acceptable to the Required Lenders and the Agent authorizing and approving, among other things, the DIP Facility on an interim basis, the terms of this Agreement and the other Loan Documents on an interim basis, and the granting of the Liens on the Collateral with the priority contemplated in this Agreement, as the same may be amended, amended and restated, supplemented or otherwise modified from time to time with the express consent of the Required Lenders.

"***Maturity Date***" means earliest to occur of: (a) the date that is nine (9) months after the date of entry of the First Interim DIP Order, (b) the date of the closing of a sale of all or a material portion of the Borrower Parties' assets under section 363 of the Bankruptcy Code, (c) the effective date of any confirmed plan in the Chapter 11 Cases, (d) the filing of a motion or other pleading requesting (or the entry of an order approving) the appointment of a trustee, other estate fiduciary or an examiner with special or expanded powers which the Debtors fail to timely oppose without the prior written consent of the Administrative Agent and the Lenders; (e) the date of acceleration of the Advances or termination of the Commitment by the Required Lenders or the Administrative Agent (at the direction of the Required Lenders) pursuant to Section 7.01 following an Event of Default; and (f) the occurrence of a Termination Event (as defined in the DIP Order).

"***Milestones***" has the meaning specified in Section 6.01(p), as amended by the First Amendment.

(c)     Amendment of Section 2.01(a).     Section 2.01(a) of the Credit Agreement is hereby amended and restated in its entirety to the following:

-2-

4852-3190-5012.8

"(a)    Subject to the terms and conditions set forth herein and in the DIP Order, each Lender severally agrees to make advances of its Commitment (each an "***Advance***" and, collectively, the "***Advances***") from time to time on any Business Day during the Commitment Period to the Borrower in an aggregate principal equal to its Pro Rata Share of the aggregate Borrowing requested in each Funding Notice delivered under Section 2.02; *provided that* the Advance to be made by each Lender shall not exceed, on the date of such Advance, such Lender's Available Commitment at such time (each, a "***Borrowing***" and collectively the "***Borrowings***"); *provided* that, notwithstanding anything to the contrary herein, (x) during the Initial Commitment Period, only two Borrowings of Advances shall be available to the Borrower, and the aggregate principal amount of such Borrowings shall not exceed $15,500,000; *provided further* that $5,500,000 shall be available upon entry of the First Initial DIP Order and the additional $10,000,000 shall be available upon the effectiveness of the First Amendment; and (y) upon and after the entry of the Final DIP Order, one or two additional Borrowings of Advances shall be available to the Borrower and the aggregate principal amount of such additional Borrowings shall not exceed $9,500,000; *provided further* that the aggregate principal amount of Advances to be made by the Lenders shall not exceed $25,000,000; *provided further* that the Lenders shall not be obligated to fund any Borrowing request if such disbursement would result in the Borrower Parties' pro-forma cash balance to exceed the Borrower Parties' cash balance in the DIP Budget at such time by $5,000,000 or more during the thirty (30) day period following the funding of the Borrowing requested in the Funding Notice, after giving pro forma effect to any planned expenditures projected to be made over such period in accordance with the DIP Budget.  Amounts repaid under the DIP Facility may not be reborrowed."

(d)    <u>Amendment of Section 2.02(a)</u>.   Section 2.02(a) of the Credit Agreement is hereby amended and restated in its entirety to the following:

"(a)    Whenever the Borrower desires to incur Advances hereunder, the Borrower shall deliver the Funding Notice to the Administrative Agent not later than 12:00 p.m., New York City time (or such later time as may be required by the Administrative Agent or acceptable to the Required Lenders), no less than three (3) Business Days (or such shorter period as agreed by the Administrative Agent in its sole discretion) before the date of the proposed Borrowing. Each such notice (the "***Funding Notice***") shall be in writing, may be delivered by telecopier or electronic communication, and shall be in substantially the form of Exhibit C, specifying therein the requested (i) Funding Date as the date of such Borrowing and (ii) aggregate amount of such Borrowing. The Funding Notice for the first Advance upon or after the entry of the Interim DIP Order shall be in a principal amount of $5,500,000. The Funding Notice for the Advance upon or after the effectiveness of the First Amendment shall be in a principal amount of $10,000,000. Each subsequent Funding Notice for Advances upon or after entry of the Final DIP Order shall be in a principal amount of $5,000,000 or more, unless the aggregate of each Lender's Available Commitment is less than $5,000,000, in which case the request for Advances may be for the aggregate amount of each Lender's Available Commitment. Upon and after the entry of the Final DIP Order, the Borrower may not request more than two (2) Advances in any ten (10) Business Day period."

(e)    <u>Amendment of Section 6.01(k)(i)</u>.   Section 6.01(k)(i) of the Credit Agreement is hereby amended by deleting each reference to "Within 30 days of the Closing Date" and replacing it with "Within 14 days of the date of the First Amendment,"

13900629.11

(f)  Amendment of Section 6.01(k)(ii).  Section 6.01(k)(ii) of the Credit Agreement is hereby amended by deleting each reference to "Within 30 days of the Closing Date" and replacing it with "Within 30 days of the date on which Borrower's counsel receives a draft of the Pledge Agreement from DIP Agent's counsel,"

(g)  Amendment of Section 6.01(p)(ii).  Section 6.01(p)(ii) of the Credit Agreement is hereby amended by deleting "on or before the thirty-fifth (35th) day after the entry of the Interim DIP Order" and replacing it with "the earlier of (i) September 17, 2021 or (ii) such other date as may be provided for in a subsequent Interim DIP Order or amendment to the Third Interim DIP Order."

(h)  Amendment of Section 7.01(p)(i). Section 7.01(p)(i) of the Credit Agreement is hereby amended by deleting "the date that is forty-five (45) days after the Petition Date" and replacing it with "the earlier of (i) September 17, 2021 or (ii) such other date as may be provided for in a subsequent Interim DIP Order or amendment to the Third Interim DIP Order."

Section 3.  Waiver. Counsel to the DIP Agent, Gray Reed, sent a letter to counsel to the Loan Parties, Baker & Hostetler LLP, dated August 9, 2021, alleging the occurrence of certain Events of Default, Defaults, and the occurrence of a Material Adverse Effect said to arise from a change in the value of the Collateral, all as more particularly set forth therein (the "DIP Agent Counsel's Letter"). As provided in the Third Interim Order, the DIP Agent and DIP Lenders waive any Default or Event of Default referred to, directly or indirectly, in the DIP Agent Counsel's Letter and further agree that, as of the date hereof, no Material Adverse Effect has arisen due to any change in the value of the Collateral. The DIP Agent and the DIP Lenders have no knowledge or notice of any Default or Event of Default after giving effect to this Amendment and the Third Interim Order.

Section 4.  Conditions Precedent.  This Amendment shall be deemed effective (subject to the conditions herein contained) as of the First Amendment Effective Date when the Administrative Agent has received counterparts hereof duly executed by Borrower, the Guarantors, the Administrative Agent and the Required Lenders and upon the prior or concurrent satisfaction of each of the following conditions:

(a)  the Administrative Agent shall have received for its own account, or for the account of each Lender, as the case may be an amendment fee in the amount of $50,000.00, which shall be payable either in cash by Borrower or by offsetting the proceeds of the Advance to be made upon the effectiveness of this Amendment. For the avoidance of doubt, if such fee is being paid by offsetting the proceeds of the Advance to be made upon the effectiveness of this Amendment, the Administrative Agent will advance $9,950,000 to Borrower but Borrower will be deemed to have received an Advance of $10,000,000.  The Borrower shall not be responsible to the DIP Agent or any Lender for the application of the proceeds of such amendment fee by the DIP Agent.

(b)  the Administrative Agent shall have received for its own account, or for the account of each Lender, as the case may be (i) all fees, costs and expenses due and payable pursuant to Section 3.02 of the Credit Agreement, if any, and (ii) if then invoiced, any amounts payable pursuant to Section 10.02 of the Credit Agreement;

-4-

4852-3190-5012.8

13900629.11

       (c)    after giving effect to the Interim DIP Orders and this Amendment, the representations and warranties in Section 5 below are true and correct; and

       (d)    the Administrative Agent shall have received a certificate, dated as of the date hereof, of a Responsible Officer of the Borrower certifying as to the matters described in item (c) above.

       Section 5.    <u>Representations and Warranties</u>.  Each of the Loan Parties hereby represents and warrants that after giving effect to this Amendment and to the Third Interim DIP Order:

       (a)    the representations and warranties of the Loan Parties contained in the Loan Documents are true and correct in all material respects, other than those representations and warranties that expressly relate solely to a specific earlier date, which shall remain correct in all material respects as of such earlier date;

       (b)    the Loan Parties shall be in compliance with the terms of the Interim DIP Order;

       (c)    no Material Adverse Effect has occurred since the Petition Date; and

       (d)    no Default or Event of Default has occurred and is continuing.

       Section 6.    <u>Loan Document; Ratification</u>.

       (a)    This Amendment is a Loan Document.

       (b)    Each Loan Party hereby ratifies, approves and confirms in every respect all the terms, provisions, conditions and obligations of the Credit Agreement as amended hereby and each of the other Loan Documents to which it is a party.

       (c)    In the event of any conflict between the terms of any Interim DIP Order and the Credit Agreement (as amended hereby), the terms of the Interim DIP Order shall govern and control. Without limiting the foregoing, no "Default" or "Event of Default" shall be deemed to have occurred under the Credit Agreement if a corresponding "Termination Event" (as defined in the DIP Orders) has been amended or waived pursuant to the terms of an DIP Order or other order of the Bankruptcy Court.

       Section 7.    <u>Costs and Expenses</u>.  As provided in Section 10.02 of the Credit Agreement, Borrower agrees to reimburse Administrative Agent for all fees, costs, and expenses, including the reasonable fees, costs, and expenses of counsel or other advisors for advice, assistance, or other representation, in connection with this Amendment and any other agreements, documents, instruments, releases, terminations or other collateral instruments delivered by the Administrative Agent in connection with this Amendment.

       Section 8.    <u>Incorporation of Certain Provisions by Reference</u>.  The provisions of Sections 10.13 and 10.14 of the Credit Agreement captioned "Governing Law; Jurisdiction, Etc." and "Waiver of Jury Trial" are incorporated herein by reference, *mutatus mutandis*, for all purposes.

4852-3190-5012.8

0792

13900629.11

Section 9.     <u>Severability</u>.  Any provision of this Amendment that is prohibited or unenforceable in any jurisdiction shall, as to such provision and such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Amendment or affecting the validity or enforceability of such provision in any other jurisdiction.

Section 10.     <u>Counterparts</u>.  This Amendment may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument, and any party hereto may execute this Amendment by signing one or more counterparts. Any signature hereto delivered by a party by facsimile or electronic transmission shall be deemed to be an original signature hereto.

Section 11.     <u>No Waiver</u>.   The execution, delivery and effectiveness of this Amendment shall not operate as a waiver of any default of Borrower or any other Loan Party or any right, power or remedy of the Administrative Agent or the other Secured Parties under any of the Loan Documents, nor constitute a waiver of (or consent to departure from) any terms, provisions, covenants, warranties or agreements of any of the Loan Documents. The parties hereto reserve the right to exercise any rights and remedies available to them in connection with any present or future defaults with respect to the Credit Agreement or any other provision of any Loan Document.

Section 12.     <u>Successors and Assigns</u>.  This Amendment shall be binding upon the Loan Parties and their respective successors and permitted assigns and shall inure, together with all rights and remedies of each Secured Party hereunder, to the benefit of each Secured Party and the respective successors, transferees and assigns.

Section 13.     <u>Entire Agreement</u>.     THIS AMENDMENT, THE CREDIT AGREEMENT AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT OF THE PARTIES WITH RESPECT TO THE SUBJECT MATTER HEREOF AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*(Signature Pages Follow)*

4852-3190-5012.8

IN WITNESS WHEREOF, this Amendment is executed as of the date first written above.

**BORROWER**:

LIMETREE BAY REFINING, LLC,
a U.S. Virgin Islands limited liability company

By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

[Signature page to First Amendment to
Senior Secured Superpriority Debtor in Possession Credit Agreement]

**GUARANTORS**:

LIMETREE BAY REFINING HOLDINGS II, LLC,
a U.S. Virgin Islands limited liability company

By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

LIMETREE BAY SERVICES, LLC,
a Delaware limited liability company

By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

LIMETREE BAY REFINING HOLDINGS LLC,
a U.S. Virgin Islands limited liability company

By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

LIMETREE BAY REFINING MARKETING LLC,
a U.S. Virgin Islands limited liability company

By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

LIMETREE BAY REFINING OPERATING LLC,
a U.S. Virgin Islands limited liability company

By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

[Signature page to First Amendment to
Senior Secured Superpriority Debtor in Possession Credit Agreement]

**ADMINISTRATIVE AGENT**:

405 SENTINEL LLC,
a Delaware limited liability company


By:_____
Name: Lawrence Cutler
Title: Authorized Signatory


**LENDER**:

405 SENTINEL LLC,
a Delaware limited liability company


By:_____
Name: Lawrence Cutler
Title: Authorized Signatory

[Signature page to First Amendment to
Senior Secured Superpriority Debtor in Possession Credit Agreement]

**<u>Exhibit B to Order</u>**

Approved Budget for the period from August 9, 2021 through and including September 13, 2021

**Limetree Bay Refinery**

**Forecasted Results of Operations and Cash Flows**

Wks Beginning   *8/9/21*   thru   *10/25/21*

| | | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week -----> Beginning of Week | | 8/9/21 | 8/16/21 | 8/23/21 | 8/30/21 | 9/6/21 | 9/13/21 | 9/20/21 | 9/27/21 | 10/4/21 | 10/11/21 | 10/18/21 | 10/25/21 | |
| End of Week | | 8/15/21 | 8/22/21 | 8/29/21 | 9/5/21 | 9/12/21 | 9/19/21 | 9/26/21 | 10/3/21 | 10/10/21 | 10/17/21 | 10/24/21 | 10/31/21 | |
| **Cash Receipts** | | | | | | | | | | | | | | |
| BP | [1] | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Excess Construction Material | [2] | 100 | - | 100 | - | 600 | - | 100 | 500 | - | - | 100 | 500 | 2,000 |
| Est. J. Aron Proceeds/Lien Release | | - | - | - | - | - | - | - | - | 18,008 | - | 20,000 | - | 38,008 |
| Resale of Flushing Oil | | - | - | - | - | - | - | 560 | - | - | - | - | - | 560 |
| Insurance Proceeds - TBD | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Sale of Spare Parts | | - | - | - | - | - | - | - | - | - | - | - | 2,500 | 2,500 |
| Asset Sale - TBD | [3] | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total    Cash Receipts** | | $ 100 | $ - | $ 100 | $ - | $ 600 | $ - | $ 660 | $ 500 | $18,008 | $ - | $20,100 | $3,000 | $ 43,068 |
| **Cash Disbursements** | | | | | | | | | | | | | | |
| Payroll / Benefits | | $ 1,357 | $ 250 | $ 1,268 | $ 311 | $ 1,183 | $ 90 | $ 1,144 | $ - | $ 156 | $ - | $ - | $ - | $ 5,759 |
| Fuel | | 365 | 390 | 390 | 390 | 390 | 390 | 390 | 195 | 195 | 195 | 195 | 195 | 3,680 |
| Maintenance and Other Outside Services | | 442 | 298 | 298 | 298 | 298 | 298 | 30 | 30 | 30 | 30 | 30 | 30 | 2,110 |
| Insurance | [4] | - | - | 571 | - | - | - | - | - | 367 | - | - | 311 | 1,249 |
| IT Support / Software / Hardware | | - | 195 | 10 | 88 | 185 | 10 | 10 | 86 | 185 | 20 | 10 | 59 | 858 |
| Environmental / Safety | | - | 184 | - | - | 184 | - | - | - | 184 | - | - | - | 552 |
| Admin / Site Services | | 185 | 582 | 146 | 146 | 146 | 548 | 146 | 146 | 146 | 548 | 146 | 146 | 3,027 |
| Relocation Costs | | 550 | - | - | 1,392 | - | - | - | - | 612 | - | - | - | 2,554 |
| Community Incident Response | [5] | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Limetree Bay Terminal Services | | 150 | 150 | 150 | 150 | 150 | - | - | - | - | - | - | - | 750 |
| EPA Mandated Expenditures | | 106 | 30 | - | 30 | - | 30 | - | 30 | - | 30 | - | 30 | 286 |
| Utility Adequate Assurance Payment | | - | 403 | - | - | - | - | - | - | - | - | - | - | 403 |
| Flare Repair | | 136 | 50 | - | - | - | - | - | - | - | - | - | - | 186 |
| Hydrocarbon Removal | [6] | 407 | 660 | 310 | 310 | 660 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 4,519 |
| **Total    Cash Disbursements** | | $ 3,698 | $ 3,191 | $ 3,142 | $ 3,115 | $ 3,195 | $ 1,676 | $ 2,029 | $ 797 | $ 2,185 | $ 1,133 | $ 691 | $ 1,080 | $ 25,932 |
| **Operating Cash Flow** | | $ (3,598) | $ (3,191) | $ (3,042) | $ (3,115) | $ (2,595) | $ (1,676) | $ (1,369) | $ (297) | $15,823 | $ (1,133) | $19,409 | $ 1,920 | $ 17,136 |

**Limetree Bay Refinery**

Forecasted Results of Operations and Cash Flows

Wks Beginning   _8/9/21_   thru   _10/25/21_

| | | Week -----> 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Beginning of Week 8/9/21 | 8/16/21 | 8/23/21 | 8/30/21 | 9/6/21 | 9/13/21 | 9/20/21 | 9/27/21 | 10/4/21 | 10/11/21 | 10/18/21 | 10/25/21 | |
| | | End of Week 8/15/21 | 8/22/21 | 8/29/21 | 9/5/21 | 9/12/21 | 9/19/21 | 9/26/21 | 10/3/21 | 10/10/21 | 10/17/21 | 10/24/21 | 10/31/21 | |
| **Other (Sources) / Uses** | | | | | | | | | | | | | | |
| DIP Financing Costs | [7] | $ 50 | $ - | $ - | $ - | $ 51 | $ - | $ - | $ - | $ 42 | $ - | $ - | $ 1,035 | $ 1,179 |
| Insurance Claims Professionals | | - | - | - | 50 | - | - | - | - | 50 | - | - | 50 | 150 |
| Term Lender Agent Fee | | - | 50 | - | - | - | - | - | - | - | - | - | - | 50 |
| Engineering Professionals (Turner Mason) | | - | - | 75 | - | - | - | - | - | 75 | - | - | - | 150 |
| **Total**   Other (Sources) / Uses | | 50 | 50 | 75 | 50 | 51 | - | - | - | 167 | - | - | 1,085 | 1,529 |
| **Net Cash Flow Before Professional Fees** | | (3,648) | (3,241) | (3,117) | (3,165) | (2,646) | (1,676) | (1,369) | (297) | 15,656 | (1,133) | 19,409 | 835 | $ 15,608 |
| **Professional Fees** | | | | | | | | | | | | | | |
| Debtor Legal | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 800 | $ - | $ - | $ 800 | $ 1,600 |
| DIP Lender Counsel | | 50 | - | - | - | 200 | - | - | - | 200 | - | - | 200 | 650 |
| Debtor Chief Restructuring Officer | | - | - | - | - | - | - | - | - | 280 | - | - | 280 | 560 |
| UCC Legal and Financial Advisor | | - | - | - | - | - | - | - | - | 600 | 350 | - | - | 950 |
| Term Lender Professionals | | - | - | - | - | - | - | - | - | 250 | - | - | - | 250 |
| Independent Director | | - | - | - | - | - | - | - | - | 15 | - | - | - | 15 |
| Revolver Counsel | | - | - | - | - | - | - | - | - | 100 | - | - | - | 100 |
| US Trustee Fees | | - | - | - | - | - | - | - | - | - | - | 250 | - | 250 |
| Investment Banker | | - | - | - | 100 | - | - | - | - | 100 | - | - | - | 200 |
| BMC - Claims Agent | | - | - | - | - | - | - | - | - | 50 | - | - | - | 50 |
| **Total** | | $ 50 | $ - | $ - | $ 100 | $ 200 | $ - | $ - | $ - | $ 2,395 | $ 350 | $ 250 | $ 1,280 | $ 4,625 |
| **Net Cash Flow** | | $ (3,698) | $ (3,241) | $ (3,117) | $ (3,265) | $ (2,846) | $ (1,676) | $ (1,369) | $ (297) | $ 13,261 | $ (1,483) | $ 19,159 | $ (445) | $ 10,983 |
| Accumulated | | $ (3,698) | $ (6,939) | $ (10,056) | $ (13,321) | $ (16,167) | $ (17,843) | $ (19,213) | $ (19,509) | $ (6,248) | $ (7,731) | $ 11,428 | $ 10,983 | |
| **Beginning Cash Balance** | | $ 955 | $ 7,257 | $ 4,015 | $ 898 | $ 5,633 | $ 2,787 | $ 1,111 | $ 1,242 | $ 945 | $14,206 | $12,723 | $31,883 | |
| Net Cash Flow | | (3,698) | (3,241) | (3,117) | (3,265) | (2,846) | (1,676) | (1,369) | (297) | 13,261 | (1,483) | 19,159 | (445) | |
| DIP Draw | | 10,000 | - | - | 8,000 | - | - | 1,500 | - | - | - | - | - | |
| DIP (Paydown) | | - | - | - | - | - | - | - | - | - | - | - | (25,000) | |
| **Ending Book Cash Balance** | | $ 7,257 | $ 4,015 | $ 898 | $ 5,633 | $ 2,787 | $ 1,111 | $ 1,242 | $ 945 | $14,206 | $12,723 | $31,883 | $ 6,437 | $ 6,437 |
| **Ending DIP Balance** | | $15,500 | $15,500 | $15,500 | $23,500 | $23,500 | $23,500 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $ - | $ - |
| Debtor Professional Fees Accrued (Cumulative) | | $ 1,558 | $ 1,869 | $ 2,181 | $ 2,492 | $ 2,804 | $ 3,115 | $ 3,427 | $ 3,738 | $ 2,970 | $ 3,282 | $ 3,593 | $ 2,825 | |
| UCC Professional Fees Accrued (Cumulative) | | $ 279 | $ 371 | $ 464 | $ 557 | $ 650 | $ 743 | $ 836 | $ 929 | $ 421 | $ 164 | $ 257 | $ 350 | |

[1] - The Debtors have outstanding invoices to BP in the amount of approximately $32 million in respect of operational expenses incurred during the months of August 2020 through the present, under the Tolling Agreement. Such invoices are disputed by BP. These amounts are not included in the 12-week projection period as the CRO is currently investigating the validity of these outstanding amounts as well as the validity of any set-off claims.

[2] - Additional $2.0 million in collections are projected after the 13-week period.

[3] - USVI holds a letter of credit in the amount of $50 million split 50/50 between LB Terminals and LB Refining. Under the Operating Agreement such amounts can be used for payment defaults and environmental assurances.

[4] - Existing premiums; coverages are currently under review with agents.

[5] - Subject to mediation.

[6] - More spend after this period anticipated in order to complete hydrocarbon removal. Budgeting currently in process.

[7] - Assumes DIP Draws of $5.5 million on 7/12/2021, $10.0 million on 8/9/2021, $8.0 million on 8/30/2021, and $1.5 million on 9/20/2021, and DIP Repayments of $25.0 million on 10/25/2021. Assumes an annual cash interest rate of 3.0%, annual PIK interest rate of 9.0%, annual delayed draw interest of 1.5%, and an agent fee of 0.25% on the total commitment amount.

## **EXHIBIT B**

## **REDLINE SHOWING PROPOSED AMENDMENTS**

4820-2627-2758.1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC,** *et al.* [1] | **CASE NO.: 21-32351** |
| **Debtors.** | **Jointly Administered** |

**AMENDED THIRD INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A)
OBTAIN POSTPETITION SENIOR SECURED SUPERPRIORITY FINANCING AND
(B) USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO
PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY,
(IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession

(the "Debtors"), the court enters this Amended Order (the "Third Interim Order") extending the

terms of the (i) *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior*

*Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection*

*to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final*

*Hearing, and (V) Granting Related Relief,* dated July 14, 2021 (Docket No. 104) (the "First Interim

Order"); and the (ii) *Second Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition*

*Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate*

*Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a*

*Final Hearing, and (V) Granting Related Relief,* dated August 2, 2021 (Docket No. 271) (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

**Formatted:** Footer

4820-2791-1413.2

"Second Interim Order," and together with the First Interim Order, the "Prior Interim Orders")[2] with respect to the Debtors' rights to use cash collateral through August 29, 2021, with the following revisions:

A.     In addition to the $5.5 million in postpetition financing previously authorized in the First Interim Order and advanced in full to the Debtors, the Debtors are hereby authorized to (a) obtain additional postpetition financing in an aggregate principal amount not to exceed $10 million on an interim basis, pursuant to the terms of that certain DIP Credit Agreement, a copy of which was attached to the First Interim Order as Exhibit A, as modified pursuant to the terms of that certain First Amendment to Senior Secured Superpriority Debtor-In-Possession Credit Agreement, a copy of which is attached hereto as **Exhibit A** (the "First Amendment"). The Debtors are authorized to enter into the First Amendment.

B.     Attached hereto as **Exhibit B** is the Debtors' Approved Budget for the period from August 9, 2021 through and including October 31, 2021. *See* First Interim Order ¶ N.

C.     Notwithstanding paragraph 15(d) of the First Interim Order or anything contained in the DIP Loan Documents, the Debtors' failure to obtain entry of the Final Order shall not constitute, or be deemed to cause, a Termination Event unless the Debtors fail to obtain entry of the Final Order by September ~~17~~3, 2021.  Notwithstanding paragraphs 9(g) and 15(p) of the First Interim Order, any breach of paragraph 9(g) of the First Interim Order with respect to a thirteen-week budget is hereby waived and shall not constitute, or be deemed to cause, a Termination Event. The requirements of Paragraph 9(g)(ii) of the First Interim Order are satisfied by the attached Approved Budget.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Prior Interim Orders.

Formatted: Footer, Centered

D.      Those certain Events of Default, Defaults, Termination Events, and/or Material Adverse Effect that were alleged in the Reservation of Rights Letter filed at Docket No. 355, and any other Events of Default, Defaults (as such term is defined in the DIP Credit Agreement), Termination Events, and/or Material Adverse Effects of which the DIP Agent or any Lender (as such term is defined in the DIP Credit Agreement) has knowledge as of the date hereof are deemed cured and/or waived.

E.      The DIP Lenders ratify and affirm that, as of the date of this Order, the aggregate maximum outstanding principal amount of the DIP Loans, if fully advanced to the Borrower, will be $25,000,000, and that, subject to the Borrower's satisfaction of the conditions precedent set forth in Section 4.02 of the DIP Credit Agreement, the remaining aggregate Commitment of the DIP Lenders is $19,500,000. After giving effect to the First Amendment, none of the DIP Agent or the DIP Secured Parties have any knowledge or notice of any Default or Event of Default which would permit the DIP Agent or DIP Lenders to conclude that any of the conditions precedent set forth in Section 4.02 have not been satisfied as of the date hereof.  The DIP Lenders, and/or their Administrative Agent (as that term is defined in the First Amendment), shall be entitled to a $50,000 amendment fee on the terms provided in the First Amendment.

F.      Notwithstanding anything to the contrary in Prior Interim Orders, the DIP Loan Documents, or any Approved Budget, all accrued and unpaid professional fees and expenses of the Ad Hoc Term Lender Group, the Term Administrative Agent, the Project Collateral Agent, the Revolver Administrative Agent and J. Aron owed by the Debtors under paragraphs 8(b) and 9(a) – (c) of the First Interim Order shall be included in the Carve-Out, subject to a total aggregate cap of $1.3 million for the fees of such Prepetition Secured Parties; *provided*, that, for the avoidance

**Formatted:** Footer, Centered

of doubt, such cap is subject to further adjustment in connection with any further interim orders or the Final Order, and all rights with respect thereto are preserved.

G.   Resolution of Committee Issues.

1.   On July 26, 2021, the U.S. Trustee appointed the Official Committee of Unsecured Creditors in these Chapter 11 Cases [Docket No. 189] (the "Committee").

2.   In addition to counsel to the DIP Agent, the DIP Lenders, and the Prepetition Agents, the Debtors shall deliver a copy of the Approved Budget to the Committee.

3.   Notwithstanding paragraph 5 of the First Interim Order, the Committee Investigation Budget shall be in an amount up to an aggregate cap of $200,000.  Notwithstanding paragraph 42 of the First Interim Order, all rights of the Committee to seek an extension of the Challenge Period for purposes of the Final Order are preserved.

4.   For the avoidance of doubt, the Carve-Out in paragraph 5(i) of the First Interim Order includes all fees and expenses of bankruptcy professionals reflected as accrued in the Budget.  The Debtors will work in good faith with the Committee to establish a professional fee escrow consistent with the Approved Budget and the Debtors' liquidity needs.

5.   Notwithstanding paragraphs 6 and 7(a) of the First Interim Order, until the entry of the Final Order, the DIP Superpriority Claims and the DIP Liens shall not attach to or be payable from the Unencumbered Assets (as defined below).  Following entry of the Final Order, the DIP Superpriority Claims and the DIP Liens shall attach to the proceeds of, or property recovered in connection with, Unencumbered Assets, *provided that* such proceeds and property shall only be used to satisfy the DIP Superpriority Claims and the DIP Liens, to the extent that all other DIP Collateral is insufficient to satisfy the DIP Obligations in full.

Formatted: Footer, Centered

6.      Notwithstanding paragraphs 9(a), 9(b) and 9(c) of the First Interim Order, until the entry of the Final Order, (i) the adequate protection liens and security interests granted in paragraphs 9(a)(1), 9(b)(1) and 9(c)(1) shall not attach to or be payable from Avoidance Actions, Avoidance Proceeds, commercial tort claims, or the proceeds thereof (collectively, the "Unencumbered Assets") and (ii) the superpriority administrative claims granted in paragraphs 9(a)(4), 9(b)(4) and 9(c)(4) shall not attach to or be payable from the Unencumbered Assets. Notwithstanding the Committee Investigation Budget or anything to the contrary in the First Interim Order, nothing herein shall prevent the Committee from seeking approval of all fees and expenses incurred by its professionals to be payable from the Unencumbered Assets.

7.      Notwithstanding paragraph 9(a)(6) of the First Interim Order, the right to credit bid the Prepetition Secured Obligations under the Prepetition Term Documents in connection with any sale of Prepetition Debt Collateral shall be subject to section 363(k) of the Bankruptcy Code.

8.      Notwithstanding paragraph 9(b)(6) of the First Interim Order, the right to credit bid the Prepetition Secured Obligations under the Revolver Transaction Documents in connection with any sale of Prepetition Debt Collateral shall be subject to section 363(k) of the Bankruptcy Code.

9.      Notwithstanding paragraph 9(c)(6) of the First Interim Order, the right to credit bid the prepetition obligations under the J. Aron Transaction Documents in connection with any sale of Inventory Financing Collateral shall be subject to section 363(k) of the Bankruptcy Code.

10.      Notwithstanding paragraph 9(e) of the First Interim Order, the rights of the Prepetition Secured Parties to credit bid their respective Prepetition Secured Obligations in

**Formatted:** Footer, Centered

connection with the sale of any of their respective Prepetition Collateral shall be subject to section 363(k) of the Bankruptcy Code.

11. The Debtors shall arrange Weekly Meetings with the Committee and its advisors under paragraph 9(f) of the First Interim Order (which, for the avoidance of doubt, may be conducted as separate calls for the Prepetition Secured Parties and the Committee). The Committee's professionals may reasonably request topics of discussion at the Weekly Meetings.

12. The Committee shall be entitled to the financial reporting and inspection rights described more fully in paragraph 12 of the First Interim Order.

13. Notwithstanding paragraph 16(c) of the First Interim Order, the closing date of a 363 Sale shall not constitute a Cash Collateral Termination Event.

14. Notwithstanding paragraph 19(b) of the First Interim Order, the DIP Collateral and proceeds thereof, proceeds of the DIP Financing, and the Prepetition Collateral and proceeds thereof may be used to investigate the actions described therein for the purposes described in, and a manner consistent with, the terms of paragraph 42 of the First Interim Order.

15. Notwithstanding paragraph 26 of the First Interim Order, the Debtors shall obtain the consent of the Committee before modifying the Approved Budget with respect to the fees and expenses of the Committee professionals, which consent shall not be unreasonably withheld or delayed, or unless such modification is otherwise approved by the Court.

16. Notwithstanding anything contained in paragraph 42 of the First Interim Order:

(a) for the avoidance of doubt, the Challenge and Challenge Period shall not apply to any claims or causes of action of the Debtors with respect to the Insider Creditors;

Formatted: Footer, Centered

6

(b)      the Challenge Period will be tolled for the Committee if it formally moves for an order of this Court conferring standing or authority (the "Standing Motion") prior to the Challenge Period, from the date the Committee so moves until five (5) business days from the date that the Standing Motion is granted or the date when the Standing Motion is denied pursuant to an Order of the Court; *provided*, that the Challenge Period: (i) will only be tolled if such Standing Motion attaches a proposed complaint identifying the specific Challenge(s) that the Committee proposes to assert and the defendant(s) against whom such Challenge(s) are proposed to be asserted, and (ii) will only be tolled with respect to such Challenge(s) and defendant(s) specifically identified therein. Nothing in the First Interim Order or herein shall limit the Committee's ability to (x) file a timely Standing Motion in respect of any timely Challenge for which it cannot obtain standing as a matter of law because the applicable Debtor is a limited liability company (an "LLC Challenge Motion"), and (y) seek pursuant to such LLC Challenge Motion a mechanism by which to prosecute such Challenge, provided that the Committee otherwise satisfies the requirements in paragraph 42(a) of the First Interim Order. In the event the Committee files a timely LLC Challenge Motion for which it cannot obtain standing, and provided that the Committee otherwise satisfies the requirements set forth in paragraph 42(a) of the First Interim Order, the expiration of the Challenge Deadline solely for the specific Challenge set forth in the LLC Challenge Motion, and solely as to the defendant(s) named therein, shall be tolled pending further order of the Court, and applicable parties shall meet and confer with respect to an appropriate process (if any) for the prosecution of any such Challenge. If timely notified of a Challenge for which the Committee cannot gain standing because the applicable Debtor is a limited liability company, the Debtors (or a designated representative) shall, to the extent permitted by

**Formatted:** Footer, Centered

applicable law, retain the authority to prosecute such Challenge in the exercise of their business judgment and subject to any applicable further order of the Court.

(c)      Any Challenge, Standing Motion, or LLC Standing Motion commenced by the Committee (the "Committee Action") may be pursued by any chapter 7 trustee in these Cases (a "Chapter 7 Trustee"), appointed subsequent to the filing of the Committee Action, in the Trustee's sole and exclusive discretion. The filing of a *Notice of Substitution of Trustee* for and in the stead of the Committee in the Committee Action, shall be automatically effective upon filing, without further Order of the Court, and the Chapter 7 Trustee shall be deemed automatically substituted for the Committee, which substitution shall be deemed retroactive to the date of the filing of the Committee Action.

17.      Notwithstanding anything to the contrary in paragraph 49 of the First Interim Order, (i) the Terminal Replacement Liens shall not attach to any Unencumbered Assets and (ii) any superpriority administrative claims granted therein shall not attach to or be payable from the Unencumbered Assets.

H.      Resolution of Terminal Entities Objection. Notwithstanding anything to the contrary in this Third Interim Order, toTo the extent any of the Terminal Entities have Permitted Prior Liens on Product or goods (as defined under the Uniform Commercial Code) or the proceeds thereof under the Non-Included Locations TSA[3] (the "Terminal Liens"), the Section 364(d)(1) Liens shall be junior to the Terminal Liens on such property.

I.      Resolution of Objection by the United States of America.

---

[3] As that term is defined in the Objection and Reservation of Rights of Terminal Entities to Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-Petition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (IV) Approving Adequate Protection to Pre-Petition Secured Creditors, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing [Doc. No. 252].

Formatted: Footer, Centered

1.      Notwithstanding anything to the contrary in the Prior Interim Orders, this Third Interim Order or the DIP Loan Documents, nothing in this Third Interim Order, the Prior Interim Orders or the DIP Loan Documents shall relieve the Debtors of any obligations under federal, state, territorial, or local police or regulatory laws or under 28 U.S.C. § 959(b), provided that nothing herein shall limit or impair the Debtors' rights to assert defenses under applicable law and nothing herein shall create new defenses to obligations under police or regulatory laws or 28 U.S.C. § 959(b).

2.      Notwithstanding anything to the contrary in the Prior Interim Orders, this Third Interim Order or the DIP Loan Documents, nothing in this Third Interim Order, the Prior Interim Orders or the DIP Loan Documents shall impair or adversely affect the United States of America's rights, claims and defenses of set-off and recoupment, if any, or any of its agencies, departments or agents, if any, and all such rights, claims and defenses, if any (the "Setoff/Recoupment Rights") shall be preserved in their entirety; *provided, however*, that the exercise of any such Setoff/Recoupment Rights must be in accordance with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; *provided further, however,* that (a) exercise of such Setoff/Recoupment Rights shall not impair or adversely affect the rights of the DIP Secured Parties and the Prepetition Secured Parties, as applicable, to assert remedies (if any) with respect to any Event of Default or Cash Collateral Termination Event, as applicable, in the event any such governmental unit exercises any such Setoff/Recoupment Rights, (b) nothing in this paragraph shall limit the right of any party in interest to challenge the Setoff/Recoupment Rights of any such governmental unit, and (c) nothing in the Prior Interim Orders, this Third Interim Order, or the DIP Loan Documents shall modify or determine the rights or priority of any governmental unit's Setoff/Recoupment Rights vis-à-vis the rights and liens of the DIP Secured Parties and the

**Formatted:** Footer, Centered

Prepetition Secured Parties, as applicable, and all rights of the governmental units and the DIP Secured Parties and Prepetition Secured Parties with respect to the determination of such rights or priority (to the extent such priority is a disputed issue) are preserved.

3.     With respect to environmental liabilities to any governmental unit, to the extent that the actions of the DIP Secured Parties or Prepetition Secured Parties constitute, within the meaning of 42 U.S.C. § 9601(20)(F) and (G), actual participation in the management or operational functions of a vessel or facility owned or operated by the Debtors, the rights of such governmental unit under applicable laws are preserved, and all rights of the DIP Secured Parties and the Prepetition Secured Parties to contest such liability or status under applicable law are preserved.  For the avoidance of doubt, in determining to make any loan or other extension of credit under the DIP Credit Agreement, permitting the use of Cash Collateral, performing under the Prior Interim Orders, the Third Interim Order and the DIP Loan Documents in the ordinary course, no DIP Secured Party or Prepetition Secured Party shall be deemed to have participated in the management or operational functions of a vessel or facility owned or operated by the Debtors, or to have otherwise caused lender liability to arise or assumed the status of control, responsible person, owner, or operator provided, however, that participating in management within the meaning of 42 U.S.C. § 9601(20)(F) and (G) would not be ordinary course performance.

4.     Within one business day of any modification to the Approved Budget, the Debtors must provide notice of the modified budget to the United States by e-mail through its counsel.

J.     <u>Reservation of Rights of Universal Plant Services (VI), LLC AltairStrickland V.I., LLC, Vivot Equipment Corporation and Virgin Islands Industrial Services, LLC</u>.  Notwithstanding anything in this Third Interim Order indicating to the contrary, nothing in this Third Interim Order

**Formatted:** Footer, Centered

will change or otherwise modify the prepetition priority of (i) any statutory liens, and (ii) any other rights and/or claims of Universal Plant Services (VI), LLC ("UPS"), AltairStrickland V.I. LLC ("AltairStrickland"), Vivot Equipment Corporation ("Vivot") and Virgin Islands Industrial Services, LLC ("VIIS") (collectively, the "Construction Lien Objectors"), whose rights, if any, are hereby expressly preserved, except with respect to the DIP Liens granted to the DIP Secured Parties under the circumstances set forth in this paragraph. To the extent that a Construction Lien Objector has a lien on any DIP Collateral as of the Petition Date that is valid, enforceable, nonavoidable, and perfected, including as permitted by section 546(b) of the Bankruptcy Code, and such lien (or any amount owed associated with such lien) was senior in priority to any of the Prepetition Secured Parties Liens, such lien shall be treated as a Permitted Prior Lien and shall not be junior in priority to the DIP Liens or subordinated to any other liens created under this Order, including adequate protection liens granted to any party. The Construction Lien Objectors reserve their rights and nothing in this Third Interim Order limits their rights, if any, to request adequate protection equal to the diminution in value of their interest in collateral, if any, or seek other legal and equitable remedies with respect to the Debtors' assets. Each of the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties' rights to contest or otherwise object to such request or exercise of legal or equitable remedies or to any assertion of liens, interest or other claims of the Construction Lien Objectors are hereby reserved.

K.     Hearing Date.  The Final Hearing shall occur on [week of August 30],27, 2021 at ——10:00 a.m. prevailing Central Time.  The Debtors shall file proposed revised terms for obtaining additional credit and use of cash collateral following expiration of this Third Interim Order, if any, by August ——,24, 2021 at 3:00 p.m. prevailing Central Time.  Objections and

**Formatted:** Footer, Centered

responses to such proposed relief shall be due by August ___,26, 2021 at noon prevailing Central Time.

L.     Except as otherwise set forth herein, all terms and provisions of the Prior Interim Orders remain unchanged and in full force and effect.

M.     This Third Interim Order is immediately valid, effective and enforceable upon the date signed by the Court and entered on the docket in the Chapter 11 Cases.

**Signed on August __, 2021.**        _____

**David R. Jones**
**UNITED STATES BANKRUPTCY JUDGE**

Formatted: Footer, Centered

12

REDLINE SHOWING SINGLE PAGE WITH CHANGES TO
AMENDMENT TO CREDIT AGREEMENT

13900629.11

(e)      Amendment of Section 6.01(k)(i).   Section 6.01(k)(i) of the Credit Agreement is hereby amended by deleting each reference to "Within 30 days of the Closing Date" and replacing it with "Within 14 days of the date of the First Amendment,"

(f)      Amendment of Section 6.01(k)(ii).   Section 6.01(k)(ii) of the Credit Agreement is hereby amended by deleting each reference to "Within 30 days of the Closing Date" and replacing it with "Within 30 days of the date on which Borrower's counsel receives a draft of the Pledge Agreement from DIP Agent's counsel,"

(g)      Amendment of Section 6.01(p)(ii).   Section 6.01(p)(ii) of the Credit Agreement is hereby amended by deleting "on or before the thirty-fifth (35th) day after the entry of the Interim DIP Order" and replacing it with "the earlier of (i) September 317, 2021 or (ii) such other date as may be provided for in a subsequent Interim DIP Order or amendment to the Third Interim DIP Order."

(h)      Amendment of Section 7.01(p)(i). Section 7.01(p)(i) of the Credit Agreement is hereby amended by deleting "the date that is forty-five (45) days after the Petition Date" and replacing it with "the earlier of (i) September 317, 2021 or (ii) such other date as may be provided for in a subsequent Interim DIP Order or amendment to the Third Interim DIP Order."

Section 3.      Waiver. Counsel to the DIP Agent, Gray Reed, sent a letter to counsel to the Loan Parties, Baker & Hostetler LLP, dated August 9, 2021, alleging the occurrence of certain Events of Default, Defaults, and the occurrence of a Material Adverse Effect said to arise from a change in the value of the Collateral, all as more particularly set forth therein (the "DIP Agent Counsel's Letter"). As provided in the Third Interim Order, the DIP Agent and DIP Lenders waive any Default or Event of Default referred to, directly or indirectly, in the DIP Agent Counsel's Letter and further agree that, as of the date hereof, no Material Adverse Effect has arisen due to any change in the value of the Collateral. The DIP Agent and the DIP Lenders have no knowledge or notice of any Default or Event of Default after giving effect to this Amendment and the Third Interim Order.

Section 4.      Conditions Precedent.  This Amendment shall be deemed effective (subject to the conditions herein contained) as of the First Amendment Effective Date when the Administrative Agent has received counterparts hereof duly executed by Borrower, the Guarantors, the Administrative Agent and the Required Lenders and upon the prior or concurrent satisfaction of each of the following conditions:

(a)      the Administrative Agent shall have received for its own account, or for the account of each Lender, as the case may be an amendment fee in the amount of $50,000.00, which shall be payable either in cash by Borrower or by offsetting the proceeds of the Advance to be made upon the effectiveness of this Amendment. For the avoidance of doubt, if such fee is being paid by offsetting the proceeds of the Advance to be made upon the effectiveness of this Amendment, the Administrative Agent will advance $9,950,000 to Borrower but Borrower will be deemed to have received an Advance of $10,000,000.  The Borrower shall not be responsible

-4-

0814

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

August 16, 2021

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*** [1] | **CASE NO.: 21-32351** |
| **Debtors.** | **Jointly Administered** |
| | (Docket No. 411) |

**AMENDED THIRD INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION SENIOR SECURED SUPERPRIORITY FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (the "Debtors"), the court enters this Amended Order (the "Third Interim Order") extending the terms of the (i) *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief,* dated July 14, 2021 (Docket No. 104) (the "First Interim Order"); and the (ii) *Second Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief*, dated August 2, 2021 (Docket No. 271) (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

"Second Interim Order," and together with the First Interim Order, the "Prior Interim Orders")[2] with respect to the Debtors' rights to use cash collateral through August 29, 2021, with the following revisions:

A.      In addition to the $5.5 million in postpetition financing previously authorized in the First Interim Order and advanced in full to the Debtors, the Debtors are hereby authorized to (a) obtain additional postpetition financing in an aggregate principal amount not to exceed $10 million on an interim basis, pursuant to the terms of that certain DIP Credit Agreement, a copy of which was attached to the First Interim Order as Exhibit A, as modified pursuant to the terms of that certain First Amendment to Senior Secured Superpriority Debtor-In-Possession Credit Agreement, a copy of which is attached hereto as **Exhibit A** (the "First Amendment"). The Debtors are authorized to enter into the First Amendment.

B.      Attached hereto as **Exhibit B** is the Debtors' Approved Budget for the period from August 9, 2021 through and including October 31, 2021. *See* First Interim Order ¶ N.

C.      Notwithstanding paragraph 15(d) of the First Interim Order or anything contained in the DIP Loan Documents, the Debtors' failure to obtain entry of the Final Order shall not constitute, or be deemed to cause, a Termination Event unless the Debtors fail to obtain entry of the Final Order by September 3, 2021.  Notwithstanding paragraphs 9(g) and 15(p) of the First Interim Order, any breach of paragraph 9(g) of the First Interim Order with respect to a thirteen-week budget is hereby waived and shall not constitute, or be deemed to cause, a Termination Event. The requirements of Paragraph 9(g)(ii) of the First Interim Order are satisfied by the attached Approved Budget.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Prior Interim Orders.

D.  Those certain Events of Default, Defaults, Termination Events, and/or Material Adverse Effect that were alleged in the Reservation of Rights Letter filed at Docket No. 355, and any other Events of Default, Defaults (as such term is defined in the DIP Credit Agreement), Termination Events, and/or Material Adverse Effects of which the DIP Agent or any Lender (as such term is defined in the DIP Credit Agreement) has knowledge as of the date hereof are deemed cured and/or waived.

E.  The DIP Lenders ratify and affirm that, as of the date of this Order, the aggregate maximum outstanding principal amount of the DIP Loans, if fully advanced to the Borrower, will be $25,000,000, and that, subject to the Borrower's satisfaction of the conditions precedent set forth in Section 4.02 of the DIP Credit Agreement, the remaining aggregate Commitment of the DIP Lenders is $19,500,000. After giving effect to the First Amendment, none of the DIP Agent or the DIP Secured Parties have any knowledge or notice of any Default or Event of Default which would permit the DIP Agent or DIP Lenders to conclude that any of the conditions precedent set forth in Section 4.02 have not been satisfied as of the date hereof.  The DIP Lenders, and/or their Administrative Agent (as that term is defined in the First Amendment), shall be entitled to a $50,000 amendment fee on the terms provided in the First Amendment.

F.  Notwithstanding anything to the contrary in Prior Interim Orders, the DIP Loan Documents, or any Approved Budget, all accrued and unpaid professional fees and expenses of the Ad Hoc Term Lender Group, the Term Administrative Agent, the Project Collateral Agent, the Revolver Administrative Agent and J. Aron owed by the Debtors under paragraphs 8(b) and 9(a) – (c) of the First Interim Order shall be included in the Carve-Out, subject to a total aggregate cap of $1.3 million for the fees of such Prepetition Secured Parties; *provided*, that, for the avoidance

of doubt, such cap is subject to further adjustment in connection with any further interim orders or the Final Order, and all rights with respect thereto are preserved.

G.   Resolution of Committee Issues.

1.   On July 26, 2021, the U.S. Trustee appointed the Official Committee of Unsecured Creditors in these Chapter 11 Cases [Docket No. 189] (the "Committee").

2.   In addition to counsel to the DIP Agent, the DIP Lenders, and the Prepetition Agents, the Debtors shall deliver a copy of the Approved Budget to the Committee.

3.   Notwithstanding paragraph 5 of the First Interim Order, the Committee Investigation Budget shall be in an amount up to an aggregate cap of $200,000.  Notwithstanding paragraph 42 of the First Interim Order, all rights of the Committee to seek an extension of the Challenge Period for purposes of the Final Order are preserved.

4.   For the avoidance of doubt, the Carve-Out in paragraph 5(i) of the First Interim Order includes all fees and expenses of bankruptcy professionals reflected as accrued in the Budget.  The Debtors will work in good faith with the Committee to establish a professional fee escrow consistent with the Approved Budget and the Debtors' liquidity needs.

5.   Notwithstanding paragraphs 6 and 7(a) of the First Interim Order, until the entry of the Final Order, the DIP Superpriority Claims and the DIP Liens shall not attach to or be payable from the Unencumbered Assets (as defined below).  Following entry of the Final Order, the DIP Superpriority Claims and the DIP Liens shall attach to the proceeds of, or property recovered in connection with, Unencumbered Assets, *provided that* such proceeds and property shall only be used to satisfy the DIP Superpriority Claims and the DIP Liens, to the extent that all other DIP Collateral is insufficient to satisfy the DIP Obligations in full.

6.      Notwithstanding paragraphs 9(a), 9(b) and 9(c) of the First Interim Order, until the entry of the Final Order, (i) the adequate protection liens and security interests granted in paragraphs 9(a)(1), 9(b)(1) and 9(c)(1) shall not attach to or be payable from Avoidance Actions, Avoidance Proceeds, commercial tort claims, or the proceeds thereof (collectively, the "Unencumbered Assets") and (ii) the superpriority administrative claims granted in paragraphs 9(a)(4), 9(b)(4) and 9(c)(4) shall not attach to or  be payable from the Unencumbered Assets. Notwithstanding the Committee Investigation Budget or anything to the contrary in the First Interim Order, nothing herein shall prevent the Committee from seeking approval of all fees and expenses incurred by its professionals to be payable from the Unencumbered Assets.

7.      Notwithstanding paragraph 9(a)(6) of the First Interim Order, the right to credit bid the Prepetition Secured Obligations under the Prepetition Term Documents in connection with any sale of Prepetition Debt Collateral shall be subject to section 363(k) of the Bankruptcy Code.

8.      Notwithstanding paragraph 9(b)(6) of the First Interim Order, the right to credit bid the Prepetition Secured Obligations under the Revolver Transaction Documents in connection with any sale of Prepetition Debt Collateral shall be subject to section 363(k) of the Bankruptcy Code.

9.      Notwithstanding paragraph 9(c)(6) of the First Interim Order, the right to credit bid the prepetition obligations under the J. Aron Transaction Documents in connection with any sale of Inventory Financing Collateral shall be subject to section 363(k) of the Bankruptcy Code.

10.      Notwithstanding paragraph 9(e) of the First Interim Order, the rights of the Prepetition Secured Parties to credit bid their respective Prepetition Secured Obligations in

connection with the sale of any of their respective Prepetition Collateral shall be subject to section 363(k) of the Bankruptcy Code.

11.     The Debtors shall arrange Weekly Meetings with the Committee and its advisors under paragraph 9(f) of the First Interim Order (which, for the avoidance of doubt, may be conducted as separate calls for the Prepetition Secured Parties and the Committee). The Committee's professionals may reasonably request topics of discussion at the Weekly Meetings.

12.     The Committee shall be entitled to the financial reporting and inspection rights described more fully in paragraph 12 of the First Interim Order.

13.     Notwithstanding paragraph 16(c) of the First Interim Order, the closing date of a 363 Sale shall not constitute a Cash Collateral Termination Event.

14.     Notwithstanding paragraph 19(b) of the First Interim Order, the DIP Collateral and proceeds thereof, proceeds of the DIP Financing, and the Prepetition Collateral and proceeds thereof may be used to investigate the actions described therein for the purposes described in, and a manner consistent with, the terms of paragraph 42 of the First Interim Order.

15.     Notwithstanding paragraph 26 of the First Interim Order, the Debtors shall obtain the consent of the Committee before modifying the Approved Budget with respect to the fees and expenses of the Committee professionals, which consent shall not be unreasonably withheld or delayed, or unless such modification is otherwise approved by the Court.

16.     Notwithstanding anything contained in paragraph 42 of the First Interim Order:

(a)     for the avoidance of doubt, the Challenge and Challenge Period shall not apply to any claims or causes of action of the Debtors with respect to the Insider Creditors;

(b)      the Challenge Period will be tolled for the Committee if it formally moves for an order of this Court conferring standing or authority (the "Standing Motion") prior to the Challenge Period, from the date the Committee so moves until five (5) business days from the date that the Standing Motion is granted or the date when the Standing Motion is denied pursuant to an Order of the Court; *provided*, that the Challenge Period: (i) will only be tolled if such Standing Motion attaches a proposed complaint identifying the specific Challenge(s) that the Committee proposes to assert and the defendant(s) against whom such Challenge(s) are proposed to be asserted, and (ii) will only be tolled with respect to such Challenge(s) and defendant(s) specifically identified therein. Nothing in the First Interim Order or herein shall limit the Committee's ability to (x) file a timely Standing Motion in respect of any timely Challenge for which it cannot obtain standing as a matter of law because the applicable Debtor is a limited liability company (an "LLC Challenge Motion"), and (y) seek pursuant to such LLC Challenge Motion a mechanism by which to prosecute such Challenge, provided that the Committee otherwise satisfies the requirements in paragraph 42(a) of the First Interim Order. In the event the Committee files a timely LLC Challenge Motion for which it cannot obtain standing, and provided that the Committee otherwise satisfies the requirements set forth in paragraph 42(a) of the First Interim Order, the expiration of the Challenge Deadline solely for the specific Challenge set forth in the LLC Challenge Motion, and solely as to the defendant(s) named therein, shall be tolled pending further order of the Court, and applicable parties shall meet and confer with respect to an appropriate process (if any) for the prosecution of any such Challenge. If timely notified of a Challenge for which the Committee cannot gain standing because the applicable Debtor is a limited liability company, the Debtors (or a designated representative) shall, to the extent permitted by

applicable law, retain the authority to prosecute such Challenge in the exercise of their business judgment and subject to any applicable further order of the Court.

(c)     Any Challenge, Standing Motion, or LLC Standing Motion commenced by the Committee (the "Committee Action") may be pursued by any chapter 7 trustee in these Cases (a "Chapter 7 Trustee"), appointed subsequent to the filing of the Committee Action, in the Trustee's sole and exclusive discretion. The filing of a *Notice of Substitution of Trustee* for and in the stead of the Committee in the Committee Action, shall be automatically effective upon filing, without further Order of the Court, and the Chapter 7 Trustee shall be deemed automatically substituted for the Committee, which substitution shall be deemed retroactive to the date of the filing of the Committee Action.

17.     Notwithstanding anything to the contrary in paragraph 49 of the First Interim Order, (i) the Terminal Replacement Liens shall not attach to any Unencumbered Assets and (ii) any superpriority administrative claims granted therein shall not attach to or be payable from the Unencumbered Assets.

H.     To the extent any of the Terminal Entities have Permitted Prior Liens on Product or goods (as defined under the Uniform Commercial Code) or the proceeds thereof under the Non-Included Locations TSA[3] (the "Terminal Liens"), the Section 364(d)(1) Liens shall be junior to the Terminal Liens on such property.

I.     Resolution of Objection by the United States of America.

---

[3] As that term is defined in the Objection and Reservation of Rights of Terminal Entities to Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-Petition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (IV) Approving Adequate Protection to Pre-Petition Secured Creditors, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing [Doc. No. 252].

1.      Notwithstanding anything to the contrary in the Prior Interim Orders, this Third Interim Order or the DIP Loan Documents, nothing in this Third Interim Order, the Prior Interim Orders or the DIP Loan Documents shall relieve the Debtors of any obligations under federal, state, territorial, or local police or regulatory laws or under 28 U.S.C. § 959(b), provided that nothing herein shall limit or impair the Debtors' rights to assert defenses under applicable law and nothing herein shall create new defenses to obligations under police or regulatory laws or 28 U.S.C. § 959(b).

2.      Notwithstanding anything to the contrary in the Prior Interim Orders, this Third Interim Order or the DIP Loan Documents, nothing in this Third Interim Order, the Prior Interim Orders or the DIP Loan Documents shall impair or adversely affect the United States of America's rights, claims and defenses of set-off and recoupment, if any, or any of its agencies, departments or agents, if any, and all such rights, claims and defenses, if any (the "Setoff/Recoupment Rights") shall be preserved in their entirety; *provided, however*, that the exercise of any such Setoff/Recoupment Rights must be in accordance with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; *provided further, however*, that (a) exercise of such Setoff/Recoupment Rights shall not impair or adversely affect the rights of the DIP Secured Parties and the Prepetition Secured Parties, as applicable, to assert remedies (if any) with respect to any Event of Default or Cash Collateral Termination Event, as applicable, in the event any such governmental unit exercises any such Setoff/Recoupment Rights, (b) nothing in this paragraph shall limit the right of any party in interest to challenge the Setoff/Recoupment Rights of any such governmental unit, and (c) nothing in the Prior Interim Orders, this Third Interim Order, or the DIP Loan Documents shall modify or determine the rights or priority of any governmental unit's Setoff/Recoupment Rights vis-à-vis the rights and liens of the DIP Secured Parties and the

Prepetition Secured Parties, as applicable, and all rights of the governmental units and the DIP Secured Parties and Prepetition Secured Parties with respect to the determination of such rights or priority (to the extent such priority is a disputed issue) are preserved.

3.      With respect to environmental liabilities to any governmental unit, to the extent that the actions of the DIP Secured Parties or Prepetition Secured Parties constitute, within the meaning of 42 U.S.C. § 9601(20)(F) and (G), actual participation in the management or operational functions of a vessel or facility owned or operated by the Debtors, the rights of such governmental unit under applicable laws are preserved, and all rights of the DIP Secured Parties and the Prepetition Secured Parties to contest such liability or status under applicable law are preserved.  For the avoidance of doubt, in determining to make any loan or other extension of credit under the DIP Credit Agreement, permitting the use of Cash Collateral, performing under the Prior Interim Orders, the Third Interim Order and the DIP Loan Documents in the ordinary course, no DIP Secured Party or Prepetition Secured Party shall be deemed to have participated in the management or operational functions of a vessel or facility owned or operated by the Debtors, or to have otherwise caused lender liability to arise or assumed the status of control, responsible person, owner, or operator provided, however, that participating in management within the meaning of 42 U.S.C. § 9601(20)(F) and (G) would not be ordinary course performance.

4.      Within one business day of any modification to the Approved Budget, the Debtors must provide notice of the modified budget to the United States by e-mail through its counsel.

J.      Reservation of Rights of Universal Plant Services (VI), LLC AltairStrickland V.I., LLC, Vivot Equipment Corporation and Virgin Islands Industrial Services, LLC.  Notwithstanding anything in this Third Interim Order indicating to the contrary, nothing in this Third Interim Order

will change or otherwise modify the prepetition priority of (i) any statutory liens, and (ii) any other rights and/or claims of Universal Plant Services (VI), LLC ("UPS"), AltairStrickland V.I. LLC ("AltairStrickland"), Vivot Equipment Corporation ("Vivot") and Virgin Islands Industrial Services, LLC ("VIIS") (collectively, the "Construction Lien Objectors"), whose rights, if any, are hereby expressly preserved, except with respect to the DIP Liens granted to the DIP Secured Parties under the circumstances set forth in this paragraph. To the extent that a Construction Lien Objector has a lien on any DIP Collateral as of the Petition Date that is valid, enforceable, nonavoidable, and perfected, including as permitted by section 546(b) of the Bankruptcy Code, and such lien (or any amount owed associated with such lien) was senior in priority to any of the Prepetition Secured Parties Liens, such lien shall be treated as a Permitted Prior Lien and shall not be junior in priority to the DIP Liens or subordinated to any other liens created under this Order, including adequate protection liens granted to any party. The Construction Lien Objectors reserve their rights and nothing in this Third Interim Order limits their rights, if any, to request adequate protection equal to the diminution in value of their interest in collateral, if any, or seek other legal and equitable remedies with respect to the Debtors' assets. Each of the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties' rights to contest or otherwise object to such request or exercise of legal or equitable remedies or to any assertion of liens, interest or other claims of the Construction Lien Objectors are hereby reserved.

K.     Hearing Date.  The Final Hearing shall occur on August 27, 2021 at 10:00 a.m. prevailing Central Time.  The Debtors shall file proposed revised terms for obtaining additional credit and use of cash collateral following expiration of this Third Interim Order, if any, by August 24, 2021 at 3:00 p.m. prevailing Central Time.  Objections and responses to such proposed relief shall be due by August 26, 2021 at noon prevailing Central Time.

L.     Except as otherwise set forth herein, all terms and provisions of the Prior Interim Orders remain unchanged and in full force and effect.

M.     This Third Interim Order is immediately valid, effective and enforceable upon the date signed by the Court and entered on the docket in the Chapter 11 Cases.

**Signed:  August 16, 2021.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

## **Exhibit A to Order**

First Amendment to Senior Secured Superpriority Debtor-In-Possession Credit Agreement

**FIRST AMENDMENT TO SENIOR SECURED SUPERPRIORITY DEBTOR IN POSSESSION CREDIT AGREEMENT**

This FIRST AMENDMENT TO SENIOR SECURED SUPERPRIORITY DEBTOR IN POSSESSION CREDIT AGREEMENT ("*Amendment*"), dated as of August 12, 2021 (the "*First Amendment Effective Date*"), is entered into by and among LIMETREE BAY REFINING, LLC, a U.S. Virgin Islands limited liability company ("*Borrower*"), LIMETREE BAY REFINING HOLDINGS II, LLC, a U.S. Virgin Islands limited liability company ("*Holdings*"), LIMETREE BAY SERVICES, LLC, a Delaware limited liability company ("*LBS*"), LIMETREE BAY REFINING HOLDINGS LLC, a U.S. Virgin Islands limited liability company ("*LBRH*"), LIMETREE BAY REFINING MARKETING LLC, a U.S. Virgin Islands limited liability company ("*LBRM*"), LIMETREE BAY REFINING OPERATING LLC, a U.S. Virgin Islands limited liability company ("*LBRO*", and together with LBRM, LBRH, LBS and Holdings, the "*Guarantors*", and together with the Borrower, the "*Borrower Parties*"), the Lenders party to the Credit Agreement described below, and 405 SENTINEL LLC, as administrative agent for the Lenders (the "*Administrative Agent*").

## RECITALS

WHEREAS, Borrower, the Guarantors, the Lenders, the Administrative Agent and certain other Persons are parties to the Senior Secured Superpriority Debtor In Possession Credit Agreement, dated as of July 13, 2021 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "*Credit Agreement*"); and

WHEREAS, the Borrower has requested that the Administrative Agent and the Lenders amend the Credit Agreement in certain respects as set forth herein.

NOW, THEREFORE, in consideration of the premises and the mutual covenants, representations and warranties contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

## AGREEMENT

Section 1.     <u>Definitions</u>.  Capitalized terms used herein but not defined herein shall have the meanings as given them in the Credit Agreement, unless the context otherwise requires.

Section 2.     <u>Amendments to Credit Agreement</u>.  The following provisions shall be effective upon the First Amendment Effective Date.

(a)     <u>Amendment of Section 1.1</u>.  Section 1.1 of the Credit Agreement is hereby amended by adding the following definitions to such Section in appropriate alphabetical order:

"*First Interim DIP Order*" means the first Interim DIP Order entered in the Chapter 11 Cases on July 13, 2021.

4852-3190-5012.8

13900629.11

"*First Amendment*" means the First Amendment to Senior Secured Superpriority Debtor In Possession Credit Agreement dated as of August 12, 2021 among Borrower, the Guarantors, the Lenders and the Administrative Agent.

"*Second Interim DIP Order*" means the second Interim DIP Order entered in the Chapter 11 Cases on August 2, 20201.

"*Third Interim DIP Order*" means the third Interim DIP Order entered in the Chapter 11 Cases on or about the date hereof.

(b)    Amendment of Section 1.1.    Section 1.1 of the Credit Agreement is amended by deleting the definitions of "Fee Letter", "Initial Commitment Period", "Interim DIP Order", and "Maturity Date" and replacing them in their entirety with the following:

"*Fee Letter*" means the letter agreement, dated on or about the Closing Date, between the Borrower and the Administrative Agent, as amended restated, supplemented or otherwise modified from time to time.

"*Initial Commitment Period*" means the period commencing on the date of entry of the First Interim DIP Order and ending on the date of entry of the Final DIP Order.

"*Interim DIP Order*" means, collectively, each order of the Bankruptcy Court (including the First Interim Order, the Second Interim Order, and the Third Interim Order) entered in the Chapter 11 Cases after an interim hearing under Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure in form and substance reasonably acceptable to the Required Lenders and the Agent authorizing and approving, among other things, the DIP Facility on an interim basis, the terms of this Agreement and the other Loan Documents on an interim basis, and the granting of the Liens on the Collateral with the priority contemplated in this Agreement, as the same may be amended, amended and restated, supplemented or otherwise modified from time to time with the express consent of the Required Lenders.

"*Maturity Date*" means earliest to occur of: (a) the date that is nine (9) months after the date of entry of the First Interim DIP Order, (b) the date of the closing of a sale of all or a material portion of the Borrower Parties' assets under section 363 of the Bankruptcy Code, (c) the effective date of any confirmed plan in the Chapter 11 Cases, (d) the filing of a motion or other pleading requesting (or the entry of an order approving) the appointment of a trustee, other estate fiduciary or an examiner with special or expanded powers which the Debtors fail to timely oppose without the prior written consent of the Administrative Agent and the Lenders; (e) the date of acceleration of the Advances or termination of the Commitment by the Required Lenders or the Administrative Agent (at the direction of the Required Lenders) pursuant to Section 7.01 following an Event of Default; and (f) the occurrence of a Termination Event (as defined in the DIP Order).

"*Milestones*" has the meaning specified in Section 6.01(p), as amended by the First Amendment.

(c)    Amendment of Section 2.01(a).    Section 2.01(a) of the Credit Agreement is hereby amended and restated in its entirety to the following:

-2-

4852-3190-5012.8

13900629.11

"(a)     Subject to the terms and conditions set forth herein and in the DIP Order, each Lender severally agrees to make advances of its Commitment (each an "***Advance***" and, collectively, the "***Advances***") from time to time on any Business Day during the Commitment Period to the Borrower in an aggregate principal equal to its Pro Rata Share of the aggregate Borrowing requested in each Funding Notice delivered under Section 2.02; *provided that* the Advance to be made by each Lender shall not exceed, on the date of such Advance, such Lender's Available Commitment at such time (each, a "***Borrowing***" and collectively the "***Borrowings***"); *provided* that, notwithstanding anything to the contrary herein, (x) during the Initial Commitment Period, only two Borrowings of Advances shall be available to the Borrower, and the aggregate principal amount of such Borrowings shall not exceed \$15,500,000; *provided further* that \$5,500,000 shall be available upon entry of the First Initial DIP Order and the additional \$10,000,000 shall be available upon the effectiveness of the First Amendment; and (y) upon and after the entry of the Final DIP Order, one or two additional Borrowings of Advances shall be available to the Borrower and the aggregate principal amount of such additional Borrowings shall not exceed \$9,500,000; *provided further* that the aggregate principal amount of Advances to be made by the Lenders shall not exceed \$25,000,000; *provided further* that the Lenders shall not be obligated to fund any Borrowing request if such disbursement would result in the Borrower Parties' pro-forma cash balance to exceed the Borrower Parties' cash balance in the DIP Budget at such time by \$5,000,000 or more during the thirty (30) day period following the funding of the Borrowing requested in the Funding Notice, after giving pro forma effect to any planned expenditures projected to be made over such period in accordance with the DIP Budget.  Amounts repaid under the DIP Facility may not be reborrowed."

(d)     <u>Amendment of Section 2.02(a)</u>.   Section 2.02(a) of the Credit Agreement is hereby amended and restated in its entirety to the following:

"(a)     Whenever the Borrower desires to incur Advances hereunder, the Borrower shall deliver the Funding Notice to the Administrative Agent not later than 12:00 p.m., New York City time (or such later time as may be required by the Administrative Agent or acceptable to the Required Lenders), no less than three (3) Business Days (or such shorter period as agreed by the Administrative Agent in its sole discretion) before the date of the proposed Borrowing. Each such notice (the "***Funding Notice***") shall be in writing, may be delivered by telecopier or electronic communication, and shall be in substantially the form of Exhibit C, specifying therein the requested (i) Funding Date as the date of such Borrowing and (ii) aggregate amount of such Borrowing. The Funding Notice for the first Advance upon or after the entry of the Interim DIP Order shall be in a principal amount of \$5,500,000. The Funding Notice for the Advance upon or after the effectiveness of the First Amendment shall be in a principal amount of \$10,000,000. Each subsequent Funding Notice for Advances upon or after entry of the Final DIP Order shall be in a principal amount of \$5,000,000 or more, unless the aggregate of each Lender's Available Commitment is less than \$5,000,000, in which case the request for Advances may be for the aggregate amount of each Lender's Available Commitment. Upon and after the entry of the Final DIP Order, the Borrower may not request more than two (2) Advances in any ten (10) Business Day period."

(e)     <u>Amendment of Section 6.01(k)(i)</u>.   Section 6.01(k)(i) of the Credit Agreement is hereby amended by deleting each reference to "Within 30 days of the Closing Date" and replacing it with "Within 14 days of the date of the First Amendment,"

-3-

13900629.11

(f)      Amendment of Section 6.01(k)(ii).      Section 6.01(k)(ii) of the Credit Agreement is hereby amended by deleting each reference to "Within 30 days of the Closing Date" and replacing it with "Within 30 days of the date on which Borrower's counsel receives a draft of the Pledge Agreement from DIP Agent's counsel,"

(g)      Amendment of Section 6.01(p)(ii).      Section 6.01(p)(ii) of the Credit Agreement is hereby amended by deleting "on or before the thirty-fifth (35th) day after the entry of the Interim DIP Order" and replacing it with "the earlier of (i) September 17, 2021 or (ii) such other date as may be provided for in a subsequent Interim DIP Order or amendment to the Third Interim DIP Order."

(h)      Amendment of Section 7.01(p)(i).  Section 7.01(p)(i) of the Credit Agreement is hereby amended by deleting "the date that is forty-five (45) days after the Petition Date" and replacing it with "the earlier of (i) September 17, 2021 or (ii) such other date as may be provided for in a subsequent Interim DIP Order or amendment to the Third Interim DIP Order."

Section 3.      Waiver. Counsel to the DIP Agent, Gray Reed, sent a letter to counsel to the Loan Parties, Baker & Hostetler LLP, dated August 9, 2021, alleging the occurrence of certain Events of Default, Defaults, and the occurrence of a Material Adverse Effect said to arise from a change in the value of the Collateral, all as more particularly set forth therein (the "DIP Agent Counsel's Letter"). As provided in the Third Interim Order, the DIP Agent and DIP Lenders waive any Default or Event of Default referred to, directly or indirectly, in the DIP Agent Counsel's Letter and further agree that, as of the date hereof, no Material Adverse Effect has arisen due to any change in the value of the Collateral. The DIP Agent and the DIP Lenders have no knowledge or notice of any Default or Event of Default after giving effect to this Amendment and the Third Interim Order.

Section 4.      Conditions Precedent.  This Amendment shall be deemed effective (subject to the conditions herein contained) as of the First Amendment Effective Date when the Administrative Agent has received counterparts hereof duly executed by Borrower, the Guarantors, the Administrative Agent and the Required Lenders and upon the prior or concurrent satisfaction of each of the following conditions:

(a)      the Administrative Agent shall have received for its own account, or for the account of each Lender, as the case may be an amendment fee in the amount of $50,000.00, which shall be payable either in cash by Borrower or by offsetting the proceeds of the Advance to be made upon the effectiveness of this Amendment. For the avoidance of doubt, if such fee is being paid by offsetting the proceeds of the Advance to be made upon the effectiveness of this Amendment, the Administrative Agent will advance $9,950,000 to Borrower but Borrower will be deemed to have received an Advance of $10,000,000.  The Borrower shall not be responsible to the DIP Agent or any Lender for the application of the proceeds of such amendment fee by the DIP Agent.

(b)      the Administrative Agent shall have received for its own account, or for the account of each Lender, as the case may be (i) all fees, costs and expenses due and payable pursuant to Section 3.02 of the Credit Agreement, if any, and (ii) if then invoiced, any amounts payable pursuant to Section 10.02 of the Credit Agreement;

4852-3190-5012.8

13900629.11

(c)      after giving effect to the Interim DIP Orders and this Amendment, the representations and warranties in Section 5 below are true and correct; and

(d)      the Administrative Agent shall have received a certificate, dated as of the date hereof, of a Responsible Officer of the Borrower certifying as to the matters described in item (c) above.

Section 5.      <u>Representations and Warranties</u>.  Each of the Loan Parties hereby represents and warrants that after giving effect to this Amendment and to the Third Interim DIP Order:

(a)      the representations and warranties of the Loan Parties contained in the Loan Documents are true and correct in all material respects, other than those representations and warranties that expressly relate solely to a specific earlier date, which shall remain correct in all material respects as of such earlier date;

(b)      the Loan Parties shall be in compliance with the terms of the Interim DIP Order;

(c)      no Material Adverse Effect has occurred since the Petition Date; and

(d)      no Default or Event of Default has occurred and is continuing.

Section 6.      <u>Loan Document; Ratification</u>.

(a)      This Amendment is a Loan Document.

(b)      Each Loan Party hereby ratifies, approves and confirms in every respect all the terms, provisions, conditions and obligations of the Credit Agreement as amended hereby and each of the other Loan Documents to which it is a party.

(c)      In the event of any conflict between the terms of any Interim DIP Order and the Credit Agreement (as amended hereby), the terms of the Interim DIP Order shall govern and control. Without limiting the foregoing, no "Default" or "Event of Default" shall be deemed to have occurred under the Credit Agreement if a corresponding "Termination Event" (as defined in the DIP Orders) has been amended or waived pursuant to the terms of an DIP Order or other order of the Bankruptcy Court.

Section 7.      <u>Costs and Expenses</u>.  As provided in Section 10.02 of the Credit Agreement, Borrower agrees to reimburse Administrative Agent for all fees, costs, and expenses, including the reasonable fees, costs, and expenses of counsel or other advisors for advice, assistance, or other representation, in connection with this Amendment and any other agreements, documents, instruments, releases, terminations or other collateral instruments delivered by the Administrative Agent in connection with this Amendment.

Section 8.      <u>Incorporation of Certain Provisions by Reference</u>.  The provisions of Sections 10.13 and 10.14 of the Credit Agreement captioned "Governing Law; Jurisdiction, Etc." and "Waiver of Jury Trial" are incorporated herein by reference, *mutatus mutandis*, for all purposes.

4852-3190-5012.8

13900629.11

Section 9.       Severability.  Any provision of this Amendment that is prohibited or unenforceable in any jurisdiction shall, as to such provision and such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Amendment or affecting the validity or enforceability of such provision in any other jurisdiction.

Section 10.      Counterparts.  This Amendment may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument, and any party hereto may execute this Amendment by signing one or more counterparts. Any signature hereto delivered by a party by facsimile or electronic transmission shall be deemed to be an original signature hereto.

Section 11.      No Waiver.   The execution, delivery and effectiveness of this Amendment shall not operate as a waiver of any default of Borrower or any other Loan Party or any right, power or remedy of the Administrative Agent or the other Secured Parties under any of the Loan Documents, nor constitute a waiver of (or consent to departure from) any terms, provisions, covenants, warranties or agreements of any of the Loan Documents. The parties hereto reserve the right to exercise any rights and remedies available to them in connection with any present or future defaults with respect to the Credit Agreement or any other provision of any Loan Document.

Section 12.      Successors and Assigns.  This Amendment shall be binding upon the Loan Parties and their respective successors and permitted assigns and shall inure, together with all rights and remedies of each Secured Party hereunder, to the benefit of each Secured Party and the respective successors, transferees and assigns.

Section 13.      Entire Agreement.    THIS AMENDMENT, THE CREDIT AGREEMENT AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT OF THE PARTIES WITH RESPECT TO THE SUBJECT MATTER HEREOF AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*(Signature Pages Follow)*

4852-3190-5012.8

IN  WITNESS  WHEREOF,  this  Amendment  is  executed  as  of  the  date  first written above.

**BORROWER**:

LIMETREE BAY REFINING, LLC,
a U.S. Virgin Islands limited liability company


By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

[Signature page to First Amendment to
Senior Secured Superpriority Debtor in Possession Credit Agreement]

**GUARANTORS**:

LIMETREE BAY REFINING HOLDINGS II,
LLC,
a U.S. Virgin Islands limited liability company


By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

LIMETREE BAY SERVICES, LLC,
a Delaware limited liability company


By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

LIMETREE BAY REFINING HOLDINGS LLC,
a U.S. Virgin Islands limited liability company


By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

LIMETREE BAY REFINING MARKETING LLC,
a U.S. Virgin Islands limited liability company


By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

LIMETREE BAY REFINING OPERATING LLC,
a U.S. Virgin Islands limited liability company


By:_____
Name: Mark Shapiro
Title: Chief Restructuring Officer

[Signature page to First Amendment to
Senior Secured Superpriority Debtor in Possession Credit Agreement]

**ADMINISTRATIVE AGENT**:

405 SENTINEL LLC,
a Delaware limited liability company


By:_____
Name: Lawrence Cutler
Title: Authorized Signatory


**LENDER**:

405 SENTINEL LLC,
a Delaware limited liability company


By:_____
Name: Lawrence Cutler
Title: Authorized Signatory

[Signature page to First Amendment to
Senior Secured Superpriority Debtor in Possession Credit Agreement]

**<u>Exhibit B to Order</u>**

Approved Budget for the period from August 9, 2021 through and including September 13, 2021

**Limetree Bay Refinery**

**Forecasted Results of Operations and Cash Flows**

Wks Beginning   _8/9/21_   thru   _10/25/21_

| | | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning of Week | | 8/9/21 | 8/16/21 | 8/23/21 | 8/30/21 | 9/6/21 | 9/13/21 | 9/20/21 | 9/27/21 | 10/4/21 | 10/11/21 | 10/18/21 | 10/25/21 | |
| End of Week | | 8/15/21 | 8/22/21 | 8/29/21 | 9/5/21 | 9/12/21 | 9/19/21 | 9/26/21 | 10/3/21 | 10/10/21 | 10/17/21 | 10/24/21 | 10/31/21 | TOTAL |
| **Cash Receipts** | | | | | | | | | | | | | | |
| BP | [1] | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Excess Construction Material | [2] | 100 | - | 100 | - | 600 | - | 100 | 500 | - | - | 100 | 500 | 2,000 |
| Est. J. Aron Proceeds/Lien Release | | - | - | - | - | - | - | - | - | 18,008 | - | 20,000 | - | 38,008 |
| Resale of Flushing Oil | | - | - | - | - | - | - | 560 | - | - | - | - | - | 560 |
| Insurance Proceeds - TBD | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Sale of Spare Parts | | - | - | - | - | - | - | - | - | - | - | - | 2,500 | 2,500 |
| Asset Sale - TBD | [3] | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total   Cash Receipts** | | $ 100 | $ - | $ 100 | $ - | $ 600 | $ - | $ 660 | $ 500 | $18,008 | $ - | $20,100 | $3,000 | $ 43,068 |
| **Cash Disbursements** | | | | | | | | | | | | | | |
| Payroll / Benefits | | $ 1,357 | $ 250 | $ 1,268 | $ 311 | $ 1,183 | $ 90 | $ 1,144 | $ - | $ 156 | $ - | $ - | $ - | $ 5,759 |
| Fuel | | 365 | 390 | 390 | 390 | 390 | 390 | 390 | 195 | 195 | 195 | 195 | 195 | 3,680 |
| Maintenance and Other Outside Services | | 442 | 298 | 298 | 298 | 298 | 298 | 30 | 30 | 30 | 30 | 30 | 30 | 2,110 |
| Insurance | [4] | - | - | 571 | - | - | - | - | - | 367 | - | - | 311 | 1,249 |
| IT Support / Software / Hardware | | - | 195 | 10 | 88 | 185 | 10 | 10 | 86 | 185 | 20 | 10 | 59 | 858 |
| Environmental / Safety | | - | 184 | - | - | 184 | - | - | - | 184 | - | - | - | 552 |
| Admin / Site Services | | 185 | 582 | 146 | 146 | 146 | 548 | 146 | 146 | 146 | 548 | 146 | 146 | 3,027 |
| Relocation Costs | | 550 | - | - | 1,392 | - | - | - | - | 612 | - | - | - | 2,554 |
| Community Incident Response | [5] | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Limetree Bay Terminal Services | | 150 | 150 | 150 | 150 | 150 | - | - | - | - | - | - | - | 750 |
| EPA Mandated Expenditures | | 106 | 30 | - | 30 | - | 30 | - | 30 | - | 30 | - | 30 | 286 |
| Utility Adequate Assurance Payment | | - | 403 | - | - | - | - | - | - | - | - | - | - | 403 |
| Flare Repair | | 136 | 50 | - | - | - | - | - | - | - | - | - | - | 186 |
| Hydrocarbon Removal | [6] | 407 | 660 | 310 | 310 | 660 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 4,519 |
| **Total   Cash Disbursements** | | $ 3,698 | $ 3,191 | $ 3,142 | $ 3,115 | $ 3,195 | $ 1,676 | $ 2,029 | $ 797 | $ 2,185 | $ 1,133 | $ 691 | $ 1,080 | $ 25,932 |
| **Operating Cash Flow** | | $ (3,598) | $ (3,191) | $ (3,042) | $ (3,115) | $ (2,595) | $ (1,676) | $ (1,369) | $ (297) | $15,823 | $ (1,133) | $19,409 | $ 1,920 | $ 17,136 |

# Limetree Bay Refinery

**Forecasted Results of Operations and Cash Flows**

Wks Beginning   _8/9/21_   thru   _10/25/21_

| | | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week -----> | | | | | | | | | | | | | | |
| Beginning of Week | | 8/9/21 | 8/16/21 | 8/23/21 | 8/30/21 | 9/6/21 | 9/13/21 | 9/20/21 | 9/27/21 | 10/4/21 | 10/11/21 | 10/18/21 | 10/25/21 | |
| End of Week | | 8/15/21 | 8/22/21 | 8/29/21 | 9/5/21 | 9/12/21 | 9/19/21 | 9/26/21 | 10/3/21 | 10/10/21 | 10/17/21 | 10/24/21 | 10/31/21 | |
| **Other (Sources) / Uses** | | | | | | | | | | | | | | |
| DIP Financing Costs | [7] | $ 50 | $ - | $ - | $ - | $ 51 | $ - | $ - | $ - | $ 42 | $ - | $ - | $ 1,035 | $ 1,179 |
| Insurance Claims Professionals | | - | - | - | 50 | - | - | - | - | 50 | - | - | 50 | 150 |
| Term Lender Agent Fee | | - | 50 | - | - | - | - | - | - | - | - | - | - | 50 |
| Engineering Professionals (Turner Mason) | | - | - | 75 | - | - | - | - | - | 75 | - | - | - | 150 |
| **_Total_**   Other (Sources) / Uses | | 50 | 50 | 75 | 50 | 51 | - | - | - | 167 | - | - | 1,085 | 1,529 |
| **Net Cash Flow Before Professional Fees** | | (3,648) | (3,241) | (3,117) | (3,165) | (2,646) | (1,676) | (1,369) | (297) | 15,656 | (1,133) | 19,409 | 835 | $ 15,608 |
| **Professional Fees** | | | | | | | | | | | | | | |
| Debtor Legal | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 800 | $ - | $ - | $ 800 | $ 1,600 |
| DIP Lender Counsel | | 50 | - | - | - | 200 | - | - | - | 200 | - | - | 200 | 650 |
| Debtor Chief Restructuring Officer | | - | - | - | - | - | - | - | - | 280 | - | - | 280 | 560 |
| UCC Legal and Financial Advisor | | - | - | - | - | - | - | - | - | 600 | 350 | - | - | 950 |
| Term Lender Professionals | | - | - | - | - | - | - | - | - | 250 | - | - | - | 250 |
| Independent Director | | - | - | - | - | - | - | - | - | 15 | - | - | - | 15 |
| Revolver Counsel | | - | - | - | - | - | - | - | - | 100 | - | - | - | 100 |
| US Trustee Fees | | - | - | - | - | - | - | - | - | - | - | 250 | - | 250 |
| Investment Banker | | - | - | - | 100 | - | - | - | - | 100 | - | - | - | 200 |
| BMC - Claims Agent | | - | - | - | - | - | - | - | - | 50 | - | - | - | 50 |
| **_Total_** | | $ - | $ 50 | $ - | $ - | $ 100 | $ 200 | $ - | $ - | $ 2,395 | $ 350 | $ 250 | $ 1,280 | $ 4,625 |
| **Net Cash Flow** | | $ (3,698) | $ (3,241) | $ (3,117) | $ (3,265) | $ (2,846) | $ (1,676) | $ (1,369) | $ (297) | $ 13,261 | $ (1,483) | $ 19,159 | $ (445) | $ 10,983 |
| _Accumulated_ | | $ (3,698) | $ (6,939) | $ (10,056) | $ (13,321) | $ (16,167) | $ (17,843) | $ (19,213) | $ (19,509) | $ (6,248) | $ (7,731) | $ 11,428 | $ 10,983 | |
| **Beginning Cash Balance** | | 955 | 7,257 | 4,015 | 898 | 5,633 | 2,787 | 1,111 | 1,242 | 945 | 14,206 | 12,723 | 31,883 | |
| Net Cash Flow | | (3,698) | (3,241) | (3,117) | (3,265) | (2,846) | (1,676) | (1,369) | (297) | 13,261 | (1,483) | 19,159 | (445) | |
| DIP Draw | | 10,000 | - | - | 8,000 | - | - | 1,500 | - | - | - | - | - | |
| DIP (Paydown) | | - | - | - | - | - | - | - | - | - | - | - | (25,000) | |
| **Ending Book Cash Balance** | | $ 7,257 | $ 4,015 | $ 898 | $ 5,633 | $ 2,787 | $ 1,111 | $ 1,242 | $ 945 | $ 14,206 | $ 12,723 | $ 31,883 | $ 6,437 | $ 6,437 |
| **Ending DIP Balance** | | $ 15,500 | $ 15,500 | $ 15,500 | $ 23,500 | $ 23,500 | $ 23,500 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ - | $ - |
| _Debtor Professional Fees Accrued (Cumulative)_ | | $ 1,558 | $ 1,869 | $ 2,181 | $ 2,492 | $ 2,804 | $ 3,115 | $ 3,427 | $ 3,738 | $ 2,970 | $ 3,282 | $ 3,593 | $ 2,825 | |
| _UCC Professional Fees Accrued (Cumulative)_ | | $ 279 | $ 371 | $ 464 | $ 557 | $ 650 | $ 743 | $ 836 | $ 929 | $ 421 | $ 164 | $ 257 | $ 350 | |

[1] - The Debtors have outstanding invoices to BP in the amount of approximately $32 million in respect of operational expenses incurred during the months of August 2020 through the present, under the Tolling Agreement. Such invoices are disputed by BP. These amounts are not included in the 12-week projection period as the CRO is currently investigating the validity of these outstanding amounts as well as the validity of any set-off claims.

[2] - Additional $2.0 million in collections are projected after the 13-week period.

[3] - USVI holds a letter of credit in the amount of $50 million split 50/50 between LB Terminals and LB Refining. Under the Operating Agreement such amounts can be used for payment defaults and environmental assurances.

[4] - Existing premiums; coverages are currently under review with agents.

[5] - Subject to mediation.

[6] - More spend after this period anticipated in order to complete hydrocarbon removal. Budgeting currently in process.

[7] - Assumes DIP Draws of $5.5 million on 7/12/2021, $10.0 million on 8/9/2021, $8.0 million on 8/30/2021, and $1.5 million on 9/20/2021, and DIP Repayments of $25.0 million on 10/25/2021. Assumes an annual cash interest rate of 3.0%, annual PIK interest rate of 9.0%, annual delayed draw interest of 1.5%, and an agent fee of 0.25% on the total commitment amount.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.* [1]** | **CASE NO.: 21-32351** |
| Debtors. | **Jointly Administered** |

## NOTICE OF FILING PROPOSED BUDGET FOR AUGUST 27, 2021 HEARING

**PLEASE TAKE NOTICE** that the debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned bankruptcy cases hereby submit the proposed budget attached hereto as Exhibit 1 (the "**Proposed Budget**") for consideration at the hearing at **10:00 a.m. Central Time on August 27, 2021** on *the Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-Petition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (IV) Approving Adequate Protection to Pre-Petition Secured Creditors; (V) Modifying the Automatic Stay; and (VI) Scheduling a Final Hearing* (Doc. No. 14).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services,  LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

Dated: August 24, 2021        **BAKER & HOSTETLER LLP**

                              */s/ Elizabeth A. Green*        
                              **Elizabeth A. Green, Esq.**
                              Fed ID No.: 903144
                              **Jimmy D. Parrish, Esq.**
                              Fed. ID No. 2687598
                              SunTrust Center, Suite 2300
                              200 South Orange Avenue
                              Orlando, FL 32801-3432
                              Telephone: 407.649.4000
                              Facsimile: 407.841.0168
                              Email: egreen@bakerlaw.com
                                        jparrish@bakerlaw.com

                              **BAKER & HOSTETLER LLP**
                              **Jorian L. Rose, Esq.**
                              (Admitted Pro Hac Vice)
                              45 Rockefeller Plaza
                              New York, New York
                              Telephone: 212.589.4200
                              Facsimile: 212.589.4201
                              Email: jrose@bakerlaw.com

                              *Proposed Counsel for the Debtors and Debtors in Possession*

<u>**CERTIFICATE OF SERVICE**</u>

     I HEREBY CERTIFY that on August 24, 2021, a true and correct copy of the foregoing was filed with the Court using the CM/ECF System, which will provide notice of such filing to all parties requesting such notice.

                              */s/ Elizabeth A. Green*        
                              Elizabeth A. Green

## **EXHIBIT 1**

### **PROPOSED BUDGET**

**Limetree Bay Refinery**

**Proposed 8.20 Budget Forecasted Results of Operations and Cash Flows**

Wks Beginning  _8/9/21_  thru  _10/25/21_

| | | Actuals | | Budgeted | | | | | | | | | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week -----> | | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | |
| Beginning of Week | | 8/9/21 | 8/16/21 | 8/23/21 | 8/30/21 | 9/6/21 | 9/13/21 | 9/20/21 | 9/27/21 | 10/4/21 | 10/11/21 | 10/18/21 | 10/25/21 | |
| End of Week | | 8/15/21 | 8/22/21 | 8/29/21 | 9/5/21 | 9/12/21 | 9/19/21 | 9/26/21 | 10/3/21 | 10/10/21 | 10/17/21 | 10/24/21 | 10/31/21 | |
| **Cash Receipts** | | | | | | | | | | | | | | |
| BP | [1] | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Excess Construction Material | [2] | 62 | - | 100 | - | 600 | - | 100 | 500 | - | - | 100 | 500 | 1,962 |
| Est. J. Aron Proceeds/Lien Release | | - | - | - | - | - | - | - | - | 18,008 | - | 20,000 | - | 38,008 |
| Resale of Flushing Oil | | - | - | - | - | - | - | 840 | - | - | - | - | - | 840 |
| Insurance Proceeds - TBD | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Sale of Spare Parts | | - | - | - | - | - | - | - | - | - | - | - | 2,500 | 2,500 |
| Asset Sale - TBD | [3] | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total    Cash Receipts** | | $ 62 | $ - | $ 100 | $ - | $ 600 | $ - | $ 940 | $ 500 | $18,008 | $ - | $20,100 | $ 3,000 | $ 43,311 |
| **Cash Disbursements** | | | | | | | | | | | | | | |
| Payroll / Benefits | | $ 1,384 | $ 134 | $ 1,268 | $ 324 | $ 1,259 | $ - | $ 1,234 | $ - | $ 201 | $ - | $ - | $ - | $ 5,804 |
| Fuel | | 365 | 349 | 390 | 390 | 390 | 390 | 390 | 195 | 195 | 195 | 195 | 195 | 3,639 |
| Maintenance and Other Outside Services | | 430 | 218 | 298 | 298 | 298 | 298 | 30 | 30 | 30 | 30 | 30 | 30 | 2,018 |
| Insurance | [4] | - | - | 571 | - | - | - | - | - | 353 | - | - | 311 | 1,235 |
| Utilities / Water | | - | - | 403 | - | - | - | 403 | - | - | - | 403 | - | 1,208 |
| IT Support / Software / Hardware | | - | 121 | 159 | 141 | 8 | 16 | 64 | 141 | 8 | 2 | 50 | - | 709 |
| Environmental / Safety | | - | - | 184 | - | - | 184 | - | - | - | 184 | - | - | 552 |
| Building / Site Maintenance | | - | - | 79 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 435 |
| Limetree Village Costs | | - | - | 54 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 144 |
| Admin Services | | 167 | 78 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 797 |
| Misc | | 0 | - | 81 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 448 |
| Relocation Costs | | - | 544 | - | 1,392 | - | - | - | 617 | - | - | - | - | 2,554 |
| Community Incident Response | [5] | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Limetree Bay Terminal Services | | 150 | 150 | 150 | 150 | 150 | - | - | - | - | - | - | - | 750 |
| EPA Mandated Equipment Purchase | | 89 | - | - | - | - | - | - | - | - | - | - | - | 89 |
| EPA Mandated Independent Observer | | - | - | 30 | - | 30 | - | 30 | - | 30 | - | 30 | - | 150 |
| Utility Adequate Assurance Payment | | - | - | 403 | - | - | - | - | - | - | - | - | - | 403 |
| Flare Repair | | 78 | 50 | - | - | - | - | - | - | - | - | - | - | 128 |
| Hydrocarbon Removal | [6] | 344 | 849 | 310 | 310 | 1,010 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 4,994 |
| **Total    Cash Disbursements** | | $ 3,006 | $ 2,493 | $ 4,435 | $ 3,151 | $ 3,290 | $ 1,343 | $ 2,606 | $ 822 | $ 1,890 | $ 866 | $ 1,164 | $ 992 | $ 26,056 |
| **Operating Cash Flow** | | $ (2,944) | $ (2,493) | $ (4,335) | $ (3,151) | $ (2,690) | $ (1,343) | $ (1,666) | $ (322) | $16,118 | $ (866) | $18,936 | $ 2,008 | $ 17,255 |

## Limetree Bay Refinery

**Proposed 8.20 Budget Forecasted Results of Operations and Cash Flows**

Wks Beginning   *8/9/21*   thru   *10/25/21*

|  |  | | Actuals | | Budgeted | | | | | | | | | | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week -----> | | | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | |
| Beginning of Week | | | 8/9/21 | 8/16/21 | 8/23/21 | 8/30/21 | 9/6/21 | 9/13/21 | 9/20/21 | 9/27/21 | 10/4/21 | 10/11/21 | 10/18/21 | 10/25/21 | |
| End of Week | | | 8/15/21 | 8/22/21 | 8/29/21 | 9/5/21 | 9/12/21 | 9/19/21 | 9/26/21 | 10/3/21 | 10/10/21 | 10/17/21 | 10/24/21 | 10/31/21 | |
| **Other (Sources) / Uses** | | | | | | | | | | | | | | | |
| DIP Financing Costs | [7] | | $ 50 | $ - | $ - | $ - | $ 51 | $ - | $ - | $ - | $ 42 | $ 500 | $ - | $ 500 | $ 1,143 |
| Insurance Claims Professionals | | | - | - | - | 50 | - | - | - | - | 50 | - | - | 50 | 150 |
| Term Lender Agent Fee | | | - | - | 50 | - | - | - | - | - | - | - | - | - | 50 |
| Engineering Professionals (Turner Mason) | | | - | - | 150 | - | - | - | - | - | - | - | - | - | 150 |
| *Total*   **Other (Sources) / Uses** | | | 50 | - | 200 | 50 | 51 | - | - | - | 92 | 500 | - | 550 | 1,493 |
| **Net Cash Flow Before Professional Fees** | | | (2,994) | (2,493) | (4,535) | (3,201) | (2,741) | (1,343) | (1,666) | (322) | 16,026 | (1,366) | 18,936 | 1,458 | $ 15,761 |
| **Professional Fees** | | | | | | | | | | | | | | | |
| Debtor Legal | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 800 | $ - | $ - | $ 800 | $ 1,600 |
| DIP Lender Counsel | | | - | - | 50 | - | 200 | - | - | - | 200 | - | - | 200 | 650 |
| Debtor Chief Restructuring Officer | | | - | - | - | - | - | - | - | - | 280 | - | - | 280 | 560 |
| UCC Legal and Financial Advisor | | | - | - | - | - | - | - | - | - | 600 | 350 | - | - | 950 |
| Term Lender Professionals | | | - | - | - | - | - | - | - | - | 250 | - | - | - | 250 |
| Independent Director | | | - | - | - | - | - | - | - | - | 15 | - | - | - | 15 |
| Revolver Counsel | | | - | - | - | - | - | - | - | - | 100 | - | - | - | 100 |
| US Trustee Fees | | | - | - | - | - | - | - | - | - | - | - | 250 | - | 250 |
| Investment Banker | | | - | - | - | 100 | - | - | - | - | 100 | - | - | - | 200 |
| BMC - Claims Agent | | | - | - | - | - | - | - | - | - | 50 | - | - | - | 50 |
| *Total* | | | $ - | $ - | $ 50 | $ 100 | $ 200 | $ - | $ - | $ - | $ 2,395 | $ 350 | $ 250 | $ 1,280 | $ 4,625 |
| **Net Cash Flow** | | | $ (2,994) | $ (2,493) | $ (4,585) | $ (3,301) | $ (2,941) | $ (1,343) | $ (1,666) | $ (322) | $13,631 | $ (1,716) | $18,686 | $ 178 | $ 11,136 |
| *Accumulated* | | | $ (2,994) | $ (5,487) | $ (10,071) | $ (13,372) | $ (16,313) | $ (17,656) | $ (19,321) | $ (19,643) | $ (6,012) | $ (7,728) | $ 10,958 | $ 11,136 | |
| **Beginning Cash Balance** | | | $ 956 | $ 7,962 | $ 5,469 | $ 884 | $ 5,583 | $ 2,642 | $ 1,300 | $ 1,134 | $ 813 | $14,443 | $ 7,727 | $18,914 | |
| **Net Cash Flow** | | | (2,994) | (2,493) | (4,585) | (3,301) | (2,941) | (1,343) | (1,666) | (322) | 13,631 | (1,716) | 18,686 | 178 | |
| **DIP Draw** | | | 10,000 | - | - | 8,000 | - | - | 1,500 | - | - | - | - | - | |
| **DIP (Paydown)** | | | - | - | - | - | - | - | - | - | - | (5,000) | (7,500) | (12,500) | |
| **Ending Book Cash Balance** | | | $ 7,962 | $ 5,469 | $ 884 | $ 5,583 | $ 2,642 | $ 1,300 | $ 1,134 | $ 813 | $14,443 | $ 7,727 | $18,914 | $ 6,592 | $ 6,592 |
| **Ending DIP Balance** | | | $15,500 | $15,500 | $15,500 | $23,500 | $23,500 | $23,500 | $25,000 | $25,000 | $25,000 | $20,000 | $12,500 | $ - | $ - |
| *Debtor Professional Fees Accrued (Cumulative)* | | | $ 1,558 | $ 1,869 | $ 2,181 | $ 2,492 | $ 2,804 | $ 3,115 | $ 3,427 | $ 3,738 | $ 2,970 | $ 3,282 | $ 3,593 | $ 2,825 | |
| *UCC Professional Fees Accrued (Cumulative)* | | | $ 279 | $ 371 | $ 464 | $ 557 | $ 650 | $ 743 | $ 836 | $ 929 | $ 421 | $ 164 | $ 257 | $ 350 | |

[1] - The Debtors have outstanding invoices to BP in the amount of approximately $32 million in respect of operational expenses incurred during the months of August 2020 through the present, under the Tolling Agreement.  Such invoices are disputed by BP.  These amounts are not included in the 12-week projection period as the CRO is currently investigating the validity of these outstanding amounts as well as the validity of any set-off claims.

[2] - Additional $2.0 million in collections are projected after the 13-week period.

[3] - USVI holds a letter of credit in the amount of $50 million split 50/50 between LB Terminals and LB Refining.  Under the Operating Agreement such amounts can be used for payment defaults and environmental assurances.

[4] - Existing premiums; coverages are currently under review with agents.

[5] - Subject to mediation.

[6] - More spend after this period anticipated in order to complete hydrocarbon removal.  Budgeting currently in process.

[7] - Assumes DIP Draws of $5.5 million on 7/12/2021, $10.0 million on 8/9/2021, $8.0 million on 8/30/2021, and $1.5 million on 9/20/2021, and DIP Repayments of $5.0 million on 10/11/2021, $7.5 million on 10/18/2021, and $12.5 million on 10/25/2021.  Assumes an annual cash interest rate of 3.0%, annual PIK interest rate of 9.0%, annual delayed draw interest of 1.5%, and an agent fee of 0.25% on the total commitment amount.

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 27, 2021
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **In re:** | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*** [1] | **CASE NO.: 21-32351** |
| **Debtors.** | **Jointly Administered** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION SENIOR SECURED SUPERPRIORITY FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF**

(Docket No. 14)

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (the "Debtors") seeking entry of interim and final orders pursuant to sections 105, 361, 362, 363, 364 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 2002-1, 4001-1(b), 4002-1(i), and 9013-1 of the Bankruptcy Local Rules (the "Local Rules") for the United States Bankruptcy Court for the Southern District of Texas (the "Court"), and the Procedures for Complex Cases in the Southern District of Texas (the "Complex Rules"),[2]

(i)      authorizing the Debtors to (a) obtain postpetition financing up to an aggregate principal amount of $25 million on a final basis (the "DIP Financing") pursuant to that certain Senior Secured Superpriority Debtor-In-Possession Credit Agreement attached to the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV)*

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or the DIP Credit Agreement (defined below) as applicable.

*Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 104] (the "<u>First Interim Order</u>") (the "<u>DIP Credit Agreement</u>"), as modified pursuant to the terms of that certain First Amendment to Senior Secured Superpriority Debtor-In-Possession Credit Agreement, a copy of which was attached to the *Amended Third Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 430], and such other agreements, documents, certificates and instruments delivered or executed from time to time in connection therewith, including the agreements related to the DIP Financing, (the "<u>DIP Loan Documents</u>"), among the Debtor Limetree Bay Refining, LLC, as borrower ("<u>LBR</u>" or the "<u>Borrower</u>"), Debtors Limetree Bay Services, LLC., Limetree Bay Refining Holdings, LLC, Limetree Bay Refining Holdings II, LLC ("<u>LBRHII</u>"), Limetree Bay Refining Operating, LLC ("<u>LBRO</u>"), and Limetree Bay Refining Marketing, LLC ("<u>LBRM</u>" and each a "<u>Guarantor</u>" and together the "<u>Guarantors</u>"), 405 Sentinel, LLC and the financial institutions from time to time parties thereto as lenders (each individually a "<u>DIP Lender,</u>" and collectively, the "<u>DIP Lenders</u>"), and 405 Sentinel, LLC, as administrative and collateral agent for the DIP Lenders (the "<u>DIP Agent</u>" together with the DIP Lenders, the "<u>DIP Secured Parties</u>"); (b) authorizing the Debtors to use the DIP Lenders' and the Prepetition Secured Parties' (as defined in the Motion) (x) "cash collateral" as such term is defined in section 363 of the Bankruptcy Code other than, until such time as the Discharge of Inventory Financing Obligations (as defined in the A&R Depositary and Intercreditor Agreement defined below) occurs, any such "cash collateral" that constitutes Inventory Financing Collateral (as defined below) and (y) until such time as the Discharge of Inventory Financing Obligations (as defined in the A&R Depositary and Intercreditor Agreement defined below) occurs, "cash collateral" as such term is defined in section 363 of the Bankruptcy Code that constitutes Inventory Financing Collateral, solely to the extent that the same is (A) cash or amounts on deposit in or credited to any deposit account or securities account or (B) accounts receivable in respect of propane sales contemplated to be received by the Debtors pursuant to the Approved Budget (as defined below) in an aggregate amount not to exceed $1,000,000, in each case that constitutes Inventory Financing Collateral as of the Petition Date (such "cash collateral" as described in this clause (y) and the foregoing clause (x), the "<u>Cash Collateral</u>");

(ii) granting (y) to the DIP Agent for the benefit of the DIP Secured Parties the DIP Liens on the DIP Collateral (as defined below) to secure all amounts owed under the DIP Loan Documents (the "<u>DIP Obligations</u>") on a first priority priming basis, except as otherwise set forth herein, and (z) to the DIP Secured Parties the DIP Superpriority Claims (as defined below) in respect of the DIP Obligations, in each case subject to the terms and conditions hereof;

(iii) approving certain stipulations by the Debtors with respect to the Prepetition Secured Documents (as defined below) and the liens and security interests arising therefrom;

(iv) modifying the automatic stay to the extent provided for herein; and

(v)     granting adequate protection for the liens and security interests granted for the benefit of the Prepetition Secured Parties in connection with the prepetition agreements described in Paragraphs F and G, below.

The Court having considered the Motion, the DIP Loan Documents, and the Declaration of Mark Shapiro in support of the First Day Motions, the pleadings filed with the Court, and the evidence proffered and presented at the prior hearings on the Motion held on July 13, 2021, August 2, 2021, August 9, 2021 and August 11, 2021, as well as the final hearing held on August 27, 2021 (the "Final Hearing"); and notice of the Final Hearing having been given in accordance with Bankruptcy Rules 4001 and 9014 and all applicable Local Rules and Complex Rules; and this Court having entered prior orders approving the Motion on an interim basis [Docket Nos. 104, 271, and 430] (the "Prior Interim Orders"); and all objections, if any, to the final relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the final relief requested in the Motion is fair and reasonable and in the best interests of the Debtors, their estates and their creditors, represents a sound exercise of the Debtors' business judgment and is necessary for the continued operation of the Debtors' businesses; and upon the record of these Chapter 11 Cases; after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND, DETERMINED, ORDERED AND ADJUDGED:[3]**

A.     Filing Date.  On July 12, 2021 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court (these "Chapter 11 Cases").

---

[3]   Where appropriate in this Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.     Jurisdiction; Venue.  The Court has exclusive jurisdiction to consider this matter pursuant to 28 U.S.C. §1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(D). Venue of the Chapter 11 Cases and the Motion is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code; Bankruptcy Rules 2002, 4001, 6004, and 9014; and Local Rules 2002-1, 4001-1, 4002-2, and 9013-1.

C.     Committee Formation.  On July 26, 2021, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors in these Chapter 11 Cases [Docket No. 189] (the "Committee"). No trustee or examiner has been appointed.

D.     Notice.  Due notice of the Final Hearing and the Motion was afforded, whether by facsimile, electronic mail, overnight courier, or hand delivery, to parties in interest, including to: (a) the United States Trustee for the Southern District of Texas; (b) the Committee; (c) all secured creditors of record, including (as defined herein) the DIP Agent, the Revolving Administrative Agent, the Term Administrative Agent, J. Aron, and the Project Collateral Agent; (d) the Offices of the Attorney General of the State of Texas and the United States Virgin Islands; (e) the thirty (30) largest consolidated unsecured creditors for the Debtors; (f) the Debtors' identified, interested taxing authorities, including the Internal Revenue Service; (g) the Debtors' identified, interested government and regulatory entities; (h) other interested parties as identified by the Debtors; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.   Under the circumstances, such notice of the Motion, the relief requested therein and the Final Hearing complies with Bankruptcy Rules 4001 and 9014 and the Local Rules, and no other or further notice of the relief sought at the Final Hearing was required.

E.    Debtors' Stipulations Regarding DIP Loan Documents and DIP Secured Parties.  In requesting the DIP Financing, upon entry of this order (the "Final Order"), the Debtors acknowledge, represent, stipulate, and agree that:

(a)    none of the DIP Secured Parties are control persons or insiders (as defined in the Bankruptcy Code) of the Debtors by virtue of determining to make any loan, providing the DIP Financing or performing obligations under the DIP Loan Documents;

(b)    as of the date hereof, there exist no claims or causes of action against any of the DIP Secured Parties arising from, related to or connected with the DIP Loan Documents that may be asserted by the Debtors;

(c)    the Debtors forever and irrevocably release, discharge, and acquit the DIP Secured Parties and each of their respective officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "DIP Releasees"), in each case in their capacity as such, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened as of the date hereof including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, existing as of the date of this Final Order, arising out of, in connection with, or relating to the DIP Financing, the DIP Loan Documents, the DIP Obligations, and ancillary documentation, guarantees, security documentation and collateral documents executed in support of the foregoing

or the transactions contemplated hereunder or thereunder including, without limitation, (i) any avoidance, reduction, setoff, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), except as permitted herein, so-called "lender liability" claims, counterclaims, cross-claims, recoupment, defenses, disallowance (whether equitable or otherwise), impairment, or any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation by any person or entity, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action with respect to the validity, priority, perfection, or avoidability of the liens or claims of the DIP Secured Parties with respect to the DIP Loan Documents.

   F. <u>Debtors' Stipulations Regarding Prepetition Secured Debt Obligations</u>. Subject to paragraph 42, the Debtors acknowledge, represent, stipulate, and agree as follows and make the releases and waivers set forth below:

   (a) Prior to the Petition Date, pursuant to (i) the Prepetition Term Credit Agreement, the Prepetition Term Lenders extended credit to LBR in the form of term loans, (ii) the Revolver Credit Agreement, the Revolver Lenders extended credit to LBRM in the form of a revolving credit facility and (iii) the Prepetition HoldCo Credit Agreement, the Prepetition HoldCo Lenders[4] extended credit to LBRH in the form of term loans.  Pursuant to the Prepetition Term Credit Agreement, the obligations of LBR under the Prepetition Term Credit Agreement are unconditionally and irrevocably guaranteed on a joint and several basis by LBRO and LBRM. Pursuant to the Revolver Credit Agreement, the obligations of LBRM under the Revolver Credit Agreement are unconditionally and irrevocably guaranteed on a joint and several basis by LBRO

---

[4] As used in this Final Order, the term "Prepetition HoldCo Lenders" extends only to Prepetition Holdco Lenders to the extent they are, as of the date of this Final Order, a Prepetition Term Lender or an affiliate of a Prepetition Term Lender.  The term specifically does not encompass insiders or affiliates of the Debtors, as such terms are defined in the Bankruptcy Code.

and LBR.  As of the Petition Date, the obligors under the Prepetition Term Documents and Revolver Transaction Documents (such documents, the "Prepetition Secured Debt Documents" and such obligors, the "Prepetition Obligors") were truly and justly indebted to the Prepetition Secured Parties pursuant to the Prepetition Secured Debt Documents, without defense, counterclaim, offset, claim, or cause of action of any kind, in the aggregate amount of not less than (i) $768,956,393 of outstanding principal with respect to term loans under the Prepetition Term Credit Agreement plus accrued and unpaid interest with respect thereto, fees, costs, and expenses (including any attorneys', financial advisors', and other professionals' fees and expenses that are chargeable or reimbursable under the Prepetition Term Credit Agreement) and all other "Obligations" (as defined in the Prepetition Term Credit Agreement or any security document related thereto) under the Prepetition Secured Debt Documents (the "Prepetition Term Obligations") and (ii) $50 million of outstanding principal under the Revolver Credit Agreement plus accrued and unpaid interest with respect thereto, fees, costs, and expenses (including any attorneys', financial advisors, and other professionals' fees and expenses that are chargeable or reimbursable under the Revolver Credit Agreement) under the Prepetition Secured Debt Documents and all other "Obligations" (as defined in the Revolver Credit Agreement or any security document related thereto) under the Prepetition Secured Debt Documents (the "Revolver Secured Obligations" and, together with the Prepetition Term Obligations, the "Prepetition Term and Revolver Debt Obligations"). As of the Petition Date, the obligors under the Prepetition Holdco Loan Documents (such obligors, the "Prepetition Holdco Loan Parties") were truly and justly indebted to the Prepetition Holdco Lenders pursuant to the Prepetition Holdco Loan Documents, without defense, counterclaim, offset, claim, or cause of action of any kind, for their

share of an aggregate amount of not less than $782,558,090[5] of outstanding principal under the Prepetition Holdco Credit Agreement plus accrued and unpaid interest with respect thereto, fees, costs, and expenses (including any attorneys', financial advisors, and other professionals' fees and expenses that are chargeable or reimbursable under the Prepetition Holdco Credit Agreement) under the Prepetition Holdco Loan Documents and all other "Obligations" (as defined in the Prepetition Holdco Credit Agreement or any security document related thereto) under the Prepetition Holdco Loan Documents (the "Prepetition Secured Holdco Debt Obligations" and, together with the Prepetition Term and Revolver Debt Obligations, the "Prepetition Secured Debt Obligations").

(b)     The Prepetition Secured Debt Obligations constitute legal, valid, and binding obligations of the Prepetition Obligors and the Prepetition Holdco Loan Parties.  No offsets, defenses, or counterclaims to, or claims or causes of action that could reduce the amount or priority of, the Prepetition Secured Debt Obligations exist.  No portion of the Prepetition Secured Debt Obligations is subject to set-off, avoidance, impairment, disallowance, recharacterization, reduction, subordination (whether equitable, contractual, or otherwise), counterclaims, recoupment, cross-claims, defenses, or any other challenges under or pursuant to the Bankruptcy Code or any other applicable domestic or foreign law or regulation by any person or entity.  The Prepetition Secured Debt Documents and the Prepetition Holdco Loan Documents are valid and enforceable by each of the Prepetition Term Lenders, Revolver Lenders (together with the Prepetition Term Lenders, the "Prepetition Secured Lenders") and Prepetition Holdco Lenders, as applicable against each of the Prepetition Obligors or the Prepetition Holdco Loan

---

[5]     This amount includes sums related to entities that are not Prepetition Holdco Lenders. The Debtors' acknowledgements, representations, stipulations, and agreements only extend to the share of such claims belonging to the Prepetition Holdco Lenders.

Parties, as applicable. The Prepetition Secured Debt Obligations constitute allowed claims against the applicable Prepetition Obligors' and the Prepetition Holdco Loan Parties' estates. As of the Petition Date, the Debtors or their estates have no claim or cause of action against any of the Prepetition Secured Parties, the Prepetition Holdco Loan Secured Parties or their respective agents, in such capacities, whether arising under applicable state, federal, or foreign law (including, without limitation, any recharacterization, subordination, avoidance, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), or whether arising under or in connection with any of the Prepetition Secured Debt Documents (or the transactions contemplated thereunder), the Prepetition Holdco Financing Loan Documents (or the transactions contemplated thereunder), the Prepetition Secured Debt Obligations, the Prepetition Debt Liens (as defined below) or the Prepetition Holdco Financing Liens (as defined below).

(c)     Pursuant to and as more particularly described in the Prepetition Secured Debt Documents, the Prepetition Term and Revolver Debt Obligations and certain associated hedge obligations are secured by, among other things, first priority liens or mortgages on, security interests in, and assignments or pledges of (the "Prepetition Debt Liens"), (i) substantially all of the assets of the Borrower and the Guarantors, including, without limitation, certain cash collateral, and other "Collateral" as such term is defined in the Prepetition Secured Debt Documents, subject to certain exclusions including Inventory Financing Collateral, as defined in the A&R Depositary and Intercreditor Agreement, and (ii) the equity interests in the Borrower held by LBRHII  and all rights and benefits of LBRHII under the Amended and Restated Operating Agreement, dated as of November 20, 2018 (collectively, the "Prepetition Debt Collateral"). The Collateral Agency and Intercreditor Agreement, dated as of November 20, 2018, by and among LBR, LBRH, LBRO, LBRM, the Prepetition Term Agent, the Revolving Administrative Agent, and the Project

Collateral Agent  (as defined in the A&R Depositary and Intercreditor Agreement (as defined herein)) (amended, amended and restated, supplemented and/or modified from time to time, the "Intercreditor Agreement") sets forth, among other things, the priority of the Revolver Lenders, Prepetition Term Lenders, and certain other parties in respect of the Prepetition Debt Collateral and establishes that (a) prior to the Toll Coverage Threshold Date (as defined therein) (i) the priority of the lien of the Project Collateral Agent in respect of the Project Tolling Collateral (as defined therein) shall be the holders of the Prepetition Term Obligations, any Permitted Refinancing Facility (as defined in the Term Credit Agreement) in respect of the Term Credit Agreement and any Secured Interest Rate Hedge Agreement (as defined in the Term Credit Agreement) entered into in respect of each of the foregoing (the "Term and Associated Holders"),followed by the holders of the Revolver Secured Obligations, any Permitted Refinancing Facility (as defined in the Revolver Credit Agreement) in respect of the Revolver Credit Agreement and any Secured Interest Rate Hedge Agreement (as defined in the Revolver Credit Agreement) entered into in respect of each of the foregoing (the "Revolver and Associated Holders"), and (ii) the priority of the lien of the Project Collateral Agent in respect of all Prepetition Debt Collateral (other than the Project Tolling Collateral, the Account Collateral (as defined therein) and certain Cash Collateral Accounts (as defined therein)), which Prepetition Debt Collateral includes any equipment and fixtures (as those terms are defined in the Uniform Commercial Code as in effect in the State of New York) of the Debtors, shall be the Revolver and Associated Holders followed by the Term and Associated Holders and (b) the Revolver and Associated Holders and the Term and Associated Holders shall share the priority of the lien of the Project Collateral Agent in respect of the Account Collateral (other than the Debt Service Account (as defined therein) and the Account Collateral held therein and credit thereto) Equally and ratably

(as defined in the Intercreditor Agreement).[6]  As of the date hereof, the Toll Coverage Threshold

Date has not occurred.  Pursuant to and as more particularly described in the Prepetition Holdco

Loan Documents, the Prepetition Secured Holdco Debt Obligations are secured by, among other

things, first priority liens or mortgages on, security interests in, and assignments or pledges of (the

"Prepetition Holdco Financing Liens") all of the Collateral (as defined in the Prepetition Holdco

Credit Agreement) (the "Prepetition Holdco Financing Collateral").

> (d)     As of the Petition Date, the Prepetition Debt Liens and the Prepetition

Holdco Financing Liens are (i) valid, binding, perfected, and enforceable liens on and security

interests in the applicable Prepetition Debt Collateral and Prepetition Holdco Financing Collateral;

and (ii) not subject to, pursuant to the Bankruptcy Code or other applicable law (foreign or

domestic), avoidance, disallowance, reduction, recharacterization, recovery, subordination

(whether equitable, contractual, or otherwise), attachment, offset, counterclaim, defense, "claim"

(as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person

or entity, and each Debtor irrevocably waives, for itself and its estate, any right to challenge or

contest in any way the scope, extent, perfection, priority, validity, non-avoidability, and

enforceability of the Prepetition Debt Liens or the Prepetition Holdco Financing Liens or the

validity, enforceability, or priority of payment of the Prepetition Secured Debt Obligations, the

Prepetition Secured Debt Documents and the Prepetition Holdco Loan Documents.  The

Prepetition Debt Liens were granted to the respective Prepetition Lenders, and the Prepetition

Holdco Financing Liens were granted to the Prepetition Holdco Lenders, for fair consideration and

---

[6]     The description of the relative priorities of the Revolver Lenders, Prepetition Term Lenders, and certain other
parties in respect of the Prepetition Debt Collateral set forth herein is qualified in its entirety by reference to the
Intercreditor Agreement. In the event of any conflict between the description set forth herein and the terms of the
Intercreditor Agreement, the Intercreditor Agreement shall govern. Nothing contained herein shall be construed
or deemed to modify or amend the term of the Intercreditor Agreement.

reasonably equivalent value, and were granted contemporaneously with the making of loans, commitments, and/or other financial accommodations under the Prepetition Secured Debt Documents or the Prepetition Holdco Loan Documents.

(e)     All of the Debtors' cash, including any cash in all deposit accounts and collection accounts, wherever located, comprising proceeds of or otherwise arising from or relating to the Prepetition Debt Collateral and, following the Discharge of Inventory Financing Obligations (as defined in the A&R Depositary and Intercreditor Agreement), of the Inventory Financing Collateral, constitutes Cash Collateral of the Prepetition Secured Parties.

(f)     None of the Prepetition Secured Parties or the Prepetition Holdco Loan Secured Parties[7] control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted, or are control persons or insiders (as defined in the Bankruptcy Code) of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Prior Interim Orders, this Final Order, the DIP Financing, the DIP Loan Documents, the Prepetition Secured Debt Documents or the Prepetition Holdco Loan Documents.

G.     Stipulations Regarding J. Aron Transaction Documents and Inventory Financing Collateral.  Subject to paragraph 42, the Debtors acknowledge, represent, stipulate, and agree as follows and make the releases and waivers set forth below:

(a)     J. Aron Transaction Documents.  LBRM, LBR, LBRO (collectively, the "Transaction Entities") and J. Aron & Company LLC ("J. Aron"), made and entered into Transaction Documents (as defined in the J. Aron Monetization Master Agreement), each

---

[7]     As used in this Final Order, the term "Prepetition HoldCo Loan Secured Parties" extends only to Prepetition Holdco Loan Secured Parties to the extent they are, as of the date of this Final Order, a Prepetition Term Lender or an affiliate of a Prepetition Term Lender.  The term specifically does not encompass insiders or affiliates of the Debtors as defined under the Bankruptcy Code.

originally dated as of March 3, 2020, consisting of, among others (each as amended, amended and restated, supplemented and/or modified from time to time, collectively, the "J. Aron Transaction Documents"):

   i. the Supply and Offtake Agreement and the Marketing and Sales Agreement  (the "J. Aron Supply and Offtake Agreement" and the "J. Aron Marketing and Sales Agreement", respectively), by and among LBRM and J. Aron, pursuant to which J. Aron agreed to purchase and sell crude oil, crude oil blends, fuel oil, naphtha, debutanized natural gasoline and certain other feedstocks (each as more fully defined in the J. Aron Monetization Master Agreement (as defined below), the "Feedstock"), and certain refined hydrocarbon products (each as more fully defined in the J. Aron Monetization Master Agreement, the "Product") to LBRM (and LBRM agreed to purchase and sell Feedstock and Product from and to J. Aron, as applicable), and which also governed certain terms of purchases and sales of Feedstock and Product between J. Aron and third parties (including BP Products North America Inc. ("BP")), in each case, subject to additional terms and conditions set forth in the J. Aron Transaction Documents;

   ii. the Monetization Master Agreement (the "J. Aron Monetization Master Agreement") by and among the Transaction Entities and J. Aron, setting forth the general transaction terms, covenants, events of default and certain termination provisions;

   iii. the Financing Agreement (the "J. Aron Financing Agreement"), by and among LBRM and J. Aron, providing for a one-time term loan by J. Aron based on certain catalyst units that contain certain base metals and certain catalyst units that contain certain precious metals, which were, in each case, designed for use in refining or processing activities;

iv.     the Amended and Restated Depositary and Intercreditor Agreement, dated as of March 3, 2020, by and among LBR as Term Borrower, LBRM and LBRO as Term Guarantors, Goldman Sachs Bank USA as Term Administrative Agent, Revolving Administrative Agent and Project Collateral Agent, J. Aron as Inventory Financing Facility Agent and Deutsche Bank Trust Company Americas as Depositary, as amended by that certain Amendment No. 1 to Amended and Restated Depositary and Intercreditor Agreement, dated as of March 10, 2021 ("<u>A&R Depositary and Intercreditor Agreement</u>"). The relative rights (including the respective collateral access and cooperation rights) of the Project Secured Parties, on the one hand, and J. Aron as the Inventory Financing Facility Agent and an Inventory Financing Secured Party (as such terms are defined in the A&R Depositary and Intercreditor Agreement), on the other, are set forth in the A&R Depositary and Intercreditor Agreement.   No J. Aron Secured Obligations (as defined below) are secured by any LBR Collateral under and as defined in the A&R Depositary and Intercreditor Agreement;

v.     the Security Agreement ("<u>J. Aron Security Agreement</u>"), by and between LBRM as Grantor and J. Aron, as secured party, pursuant to which LBRM granted J. Aron a first-priority security interest in and continuing lien (the "<u>J. Aron Liens</u>") on the "Collateral" under and as defined in the J. Aron Security Agreement ("<u>Inventory Financing Collateral</u>") which corresponds to the defined term "Inventory Financing Collateral" under and as defined in the A&R Depositary and Intercreditor Agreement.   Under the J. Aron Security Agreement and J. Aron Perfection Documents (as defined below), the Secured Obligations under and as defined in the J. Aron Security Agreement (the "<u>J. Aron Secured</u>

Obligations") are secured by a perfected, first-priority security interest in and continuing lien on the Inventory Financing Collateral;

vi.     that certain UCC financing statement (with LBRM as debtor and J. Aron as secured party) that was filed with the U.S. Virgin Islands Office of the Lieutenant Governor on March 5, 2020 (Filing No. 20200000134) and that certain UCC financing statement (with LBRM as debtor and J. Aron as secured party) that was filed with the Washington, D.C. Record of Deeds on March 4, 2020 (Filing No. 2020030037) (collectively, the "J. Aron Financing Statements");

vii.    that certain Deposit Account Control Agreement, dated as of March 3, 2020, among LBRM as Grantor, Oriental Bank as Depositary Bank and J. Aron as Secured Party  (the "J. Aron DACA", and together with the A&R Depositary and Intercreditor Agreement and the J. Aron Financing Statements, collectively, the "J. Aron Perfection Documents");

viii.   that certain Subordinated Guarantee, made by LBR and LBRO in favor of J. Aron, dated as of March 3, 2020 ("Subordinated Guarantee"), each of LBR and LBRO jointly and severally guaranteed LBRM's payment obligations under the J. Aron Transaction Documents as and when due ("Guaranteed Obligations"), subject to the terms of the "Terms of Subordination" under and as defined therein, which provide that, among other things, the Guaranteed Obligations are subordinated in right of payment to the prior payment in full in cash of all Secured Obligations under and as defined in the A&R Depositary and Intercreditor Agreement; and

ix.     additional agreements related to the supply, marketing, storage, the initial sale of Feedstock and Product by LBRM to J. Aron and other transactions

contemplated by the J. Aron Supply and Offtake Agreement, the J. Aron Marketing and Sales Agreement, the J. Aron Financing Agreement and the J. Aron Monetization Master Agreement.

(b)        <u>J. Aron's IFF Property</u>.  J. Aron owns all right, title and interest in the IFF Property (as defined in the A&R Depositary and Intercreditor Agreement), which consists of Feedstock and Product owned by J. Aron.  No Debtor has any right, title, or interest in the IFF Property, and accordingly, the IFF Property is not property of the estate under section 541 of the Bankruptcy Code.

(c)        <u>J. Aron Termination</u>.  On June 25, 2021 (the "<u>J. Aron Early Termination Date</u>"), as a result of certain events of default that had occurred and were continuing in respect of LBRM, LBR and LBRO, J. Aron properly and validly exercised its right pursuant to the J. Aron Transaction Documents of declaring an early termination date whereby, among other things, all commitments of J. Aron to provide any intermediation or to purchase or sell Feedstock or Products were terminated, all loans under the Financing Agreement became immediately due and payable and all of the obligations of the Transaction Entities under the J. Aron Transaction Documents (other than that certain Terminal Services Agreement (Included Locations), dated as of March 3, 2020, by and among LBT, LBRM and J. Aron) became due and payable on June 25, 2021.  As a result of such early termination, pursuant to the J. Aron Supply and Offtake Agreement and as set forth in certain other of the J. Aron Transaction Documents, J. Aron has the right to liquidate and has commenced the liquidation of its own IFF Property.

(d)        <u>J. Aron Safe Harbor Agreements</u>. J. Aron is a "forward contract merchant" (as such term is defined in the Bankruptcy Code and used in section 556 of the Bankruptcy Code) and each purchase and sale agreed to under the Safe Harbor Agreements (as defined in the J. Aron

Monetization Master Agreement, collectively, the "Safe Harbor Agreements") constitutes a "forward contract" (as such term is defined in the Bankruptcy Code and used in Section 556 of the Bankruptcy Code); (b) J. Aron is a "master netting agreement participant" and each Safe Harbor Agreement constitutes a "master netting agreement" for all purposes as each such term is defined in sections 101(38A) and 101(38B) of the Bankruptcy Code and as used in Section 561 of the Bankruptcy Code; (c) J. Aron's, as the Non-Defaulting Party, right to liquidate, collect, net and set off rights and obligations under the Safe Harbor Agreements, and liquidate the Safe Harbor Agreements is not stayed, avoided, or otherwise limited by the Bankruptcy Code, including sections 362(a), 547, 548 or 553 thereof, and J. Aron is entitled to the rights, remedies and protections afforded by and under, among other sections, sections 362(b)(6), 362(b)(17), 362(b)(27), 546(e), 546(g), 546(j), 548(d), 553, 556, 560, 561 and 562 of the Bankruptcy Code.

(e)     All of the Debtors' cash, including any cash in all deposit accounts and collection accounts, wherever located, comprising proceeds of or otherwise arising from or relating to the Inventory Financing Collateral (excluding Margin) constitutes Cash Collateral of J. Aron.

(f)     Enforceability of J. Aron Liens and J. Aron Secured Obligations. (i) The J. Aron Liens on the Inventory Financing Collateral are valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, J. Aron for fair consideration and reasonably equivalent value, (ii) the J. Aron Transaction Documents are fully enforceable in accordance with their terms; (iii) the J. Aron Liens were senior in priority over any and all other liens on the Inventory Financing Collateral, subject only to liens senior by operation of law or otherwise permitted by the J. Aron Transaction Documents (solely to the extent any such permitted liens were valid, properly perfected, nonavoidable, and senior in priority to the J. Aron Liens as of the Petition Date); (iv) the J. Aron Secured Obligations constitute legal, valid, binding, and non-

avoidable obligations of the applicable Debtors enforceable in accordance with the terms of the applicable J. Aron Transaction Documents; (v) no offsets, setoffs, recoupments, challenges, objections, defenses, "claims" (as defined in the Bankruptcy Code), impairment, cross-claims, counterclaims, or causes of action or any other challenge of any kind or nature by any person or entity to any of the J. Aron Liens or J. Aron Secured Obligations exist, and no portion of the J. Aron Liens or J. Aron Secured Obligations is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, attachment, reduction, recovery or subordination (whether equitable, contractual, or otherwise) under or  pursuant to the Bankruptcy Code or applicable non-bankruptcy law or principles of equity or any other applicable domestic or foreign law or regulation by any person or entity; and (vi) the Debtors, each for itself and its estate, irrevocably waive, discharge, and release any right to challenge or contest any of the J. Aron Secured Obligations or J. Aron Liens, the priority of such obligations and liens, and the scope, extent, validity, non-avoidability, priority, enforceability, seniority, perfection, or extent of the J. Aron Liens and J. Aron Secured Obligations.

(g)      Outstanding J. Aron Secured Obligations.  As of the Petition Date, the applicable Debtors were indebted to J. Aron, without objection, defense, counterclaim or offset of any kind, in an amount not less than $24,968,754.95 in principal amount of loans outstanding under the J. Aron Financing Agreement.  In addition, J. Aron has commenced the process of liquidating all IFF Property in accordance with the terms of the Safe Harbor Agreements and the J. Aron Monetization Master Agreement and, if J. Aron is unable to liquidate such IFF Property and/or incurs losses or costs as a result of such liquidation and termination of J. Aron's rights and obligations under the Safe Harbor Agreements (including any Forward Contract Settlement Amount (as defined in the J. Aron Supply and Offtake Agreement)), the Debtors would be liable

and owe to J. Aron, without objection, defense, counterclaim or offset of any kind, an aggregate amount of not less than such aggregate losses or costs, taking into account any gains, incurred or realized by J. Aron as a result of such liquidations and terminations with respect to the J. Aron Transaction Documents.  Given that the liquidation of J. Aron's IFF Property has only recently commenced, the S&O Settlement Amount (as defined in the J. Aron Supply and Offtake Agreement) cannot be determined at this time.  Further, under the J. Aron Transaction Documents, the applicable Debtors are also liable to and owe J. Aron accrued (both before and after the Petition Date) and unpaid interest, fees, expenses and all other obligations under the J. Aron Transaction Documents, including attorneys', accountants', consultants', appraisers' and financial and other advisors' fees that are chargeable or reimbursable under the J. Aron Transaction Documents, plus Make-Whole Amounts (as defined in the J. Aron Monetization Master Agreement).

H.     <u>Definitions</u>.  The Revolver Secured Obligations, the Prepetition Term Obligations, and the J. Aron Secured Obligations are referred to collectively herein as the "<u>Prepetition Secured Obligations</u>."  The Prepetition Debt Liens and the J. Aron Liens are referred to collectively herein as the "<u>Prepetition Liens</u>."  The Prepetition Debt Collateral and the Inventory Financing Collateral are referred to collectively herein as the "<u>Prepetition Collateral</u>."  The Revolver Transaction Documents, the Prepetition Term Documents, and the J. Aron Transaction Documents, as those terms are defined herein or in the Motion, are referred to collectively herein as the "<u>Prepetition Secured Documents</u>."   The Prepetition Agents (as defined herein), Prepetition Secured Lenders and J. Aron are referred to collectively herein as the "<u>Prepetition Secured Parties</u>."

I.     <u>Stipulations Regarding Prepetition Secured Documents and the Prepetition Holdco Loan Documents</u>. Subject to paragraphs J and 42, the Debtors acknowledge, represent, stipulate, and agree as follows and make the releases and waivers set forth below:

(a)      No Control.  The Prepetition Secured Parties and the Prepetition Holdco Loan Secured Parties do not control the Debtors or their properties or operations or have the authority to determine the manner in which the Debtors' operations are conducted, and each of the Prepetition Secured Parties and the Prepetition Holdco Loan Secured Parties is not a control person or insider (as defined in the Bankruptcy Code) of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to, or arising from any of the Prepetition Secured Documents or the Prepetition Holdco Loan Documents.

(b)      No Claims, Causes of Action.  As of the date hereof, there exist no claims or causes of action against the Prepetition Secured Parties or the Prepetition Holdco Loan Secured Parties arising from, related to or connected with any of the Prepetition Secured Documents or the Prepetition Holdco Loan Documents that may be asserted by the Debtors.

(c)      Release.  The Debtors forever and irrevocably release, waive, discharge, and acquit each of the Prepetition Secured Parties and the Prepetition Holdco Loan Secured Parties and each of their respective officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "Prepetition Secured Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened as of the date hereof including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, existing as of the date of this Final

20

Order, arising out of, in connection with, or relating to any of the Prepetition Secured Documents or the Prepetition Holdco Loan Documents, and ancillary documentation, guarantees, security documentation and collateral documents executed in support of the foregoing, the Prepetition Secured Obligations, the Prepetition Secured Holdco Debt Obligations, the Prepetition Liens, the Prepetition Holdco Financing Liens, J. Aron's title to or ownership of, or other rights in, the IFF Property and rights to setoff and net Margin (as defined in the J. Aron Monetization Master Agreement), and ancillary  documentation, guarantees, security documentation and collateral documents executed in support of the foregoing or the transactions contemplated thereunder including, without limitation, (i) any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), so-called "lender liability" claims, counterclaims, cross-claims, recoupment, defenses, disallowance (whether equitable or otherwise), impairment, or any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation by any person or entity, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the Prepetition Secured Parties or the Prepetition Holdco Loan Secured Parties.

  J.  <u>Mezzanine Financing, Subordinated Notes, Prepetition Holdco Loan, and other Insider Obligations</u>.  Certain Prepetition Holdco Loan Secured Parties and Lenders are insiders or affiliates of the Debtors.  Nothing herein shall constitute a finding or ruling by this Court in favor of any affiliate (as defined in the Bankruptcy Code) or other insider (as defined in the Bankruptcy Code) of any Debtor (an "<u>Insider Creditor</u>") that any obligation of any Debtor to such Insider Creditor ("<u>Insider Obligation</u>"), including any Prepetition Holdco Secured Debt Obligations, LBV Subordinated Notes, or LBRH II Holdco Loan held by an Insider Creditor, is valid, senior,

enforceable, prior, perfected, or non-avoidable. Nothing herein shall constitute a finding of fact, admission, or stipulation in favor of, or enforceable by, any Insider Creditor.  No Insider Creditor shall be entitled to any proceeds or other distributions on account of any Insider Obligation or any adequate protection absent further order of the Court.  Moreover, nothing shall prejudice the rights of any party-in-interest, including but not limited to the Debtors and the Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Insider Obligation and/or related security interests held by an Insider Creditor.  In addition, nothing herein shall be deemed a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any "equities of the case" under section 552(b) of the Bankruptcy Code, or (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to any Insider Obligations, in each case after payment in full of the DIP Obligations and the Prepetition Secured Obligations.  No Insider Creditor shall be entitled to any release described herein.  Nothing in this paragraph shall affect or impact the Prepetition Secured Obligations or Prepetition Holdco Secured Debt Obligations that are not owned by any Insider Creditor, any liens securing such obligations, or any adequate protection granted to the Prepetition Secured Creditors.

K.      <u>Necessity of DIP Financing</u>. The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other financing under sections 364(c) or (d) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Loan Documents.  A loan facility in the amount provided by the DIP Loan Documents is not available to the Debtors without (i) granting the DIP Agent, for the benefit of the DIP Secured Parties, superpriority claims and priming liens and security interests, pursuant to sections 364(c)(1), (2), (3), and 364(d) of the Bankruptcy Code, as provided in this Final Order and the DIP Loan Documents and (ii) providing the Prepetition Secured Parties

adequate protection as provided in this Final Order.  After considering all alternatives, the Debtors have concluded, in the exercise of their prudent business judgment, that the credit facility provided under the DIP Loan Documents and the authorization to use Cash Collateral to be provided by the Prepetition Secured Parties represents the best and only working capital financing available to the Debtors at this time.  The Debtors have been unsuccessful in their attempts to find any alternative financing.  Additionally, the terms of the DIP Financing and the use of Cash Collateral are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.  The Prepetition Secured Parties have consented to the entry of this Final Order after extensive negotiations and would not have consented to entry of this Final Order absent each of the bargained for protections for the Prepetition Secured Parties set forth in this Final Order.

L.       Purpose of DIP Financing.  The Debtors require the DIP Financing described in the Motion and as expressly provided in the DIP Loan Documents and this Final Order to: (i) pay costs, fees and expenses associated with or payable under the DIP Financing under the terms of this Final Order; (ii) pay professional fees subject to the Approved Budget (as defined below); (iii) provide ongoing working capital requirements of the Debtors and to pay fees, costs, expenses and other administrative expenses relating to the Chapter 11 Cases (including payments related to Adequate Protection Obligations (as defined below)), in each case, subject to any necessary Court approvals and consistent with the Approved Budget subject to any Budget Variances (defined below); and (iv) make the currently identified capital expenditures and other payments of postpetition payables as permitted under the DIP Loan Documents and this Final Order, in each case subject to the conditions as set forth herein and in the DIP Loan Documents and this Final Order and consistent in all material respects with the Approved Budget and any Budget Variances.

M. <u>Adequate Protection</u>. The Prepetition Secured Parties are entitled to receive adequate protection to the extent of any diminution in value of their interests in their prepetition collateral (including Cash Collateral) pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code resulting from the sale, lease, or use by the Debtors (or other decline in value) of the prepetition collateral (including Cash Collateral), the relief granted herein in favor of the DIP Secured Parties, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code from and after the Petition Date (the "<u>Adequate Protection Obligations</u>"). Pursuant to sections 361, 363, and 507(b) of the Bankruptcy Code, as adequate protection, the Prepetition Secured Parties shall receive payment of their reasonable and documented professional fees, postpetition replacement liens, adequate protection payments and superpriority adequate protection claims in accordance with the terms of this Final Order. Furthermore, the Prepetition Secured Parties will be entitled to certain reporting from the Debtors (including, among other things, copies of all reporting provided to the DIP Secured Parties) in accordance with the terms of this Final Order. The adequate protection provided to the Prepetition Secured Parties herein is consistent with the Bankruptcy Code. The consent of the Prepetition Secured Parties to the use of Cash Collateral and the consent of the Prepetition Secured Parties to the priming of their liens by the DIP Liens (i) does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition Secured Parties that their respective interests in the Prepetition Collateral are adequately protected pursuant to this Final Order or otherwise, and (ii) is conditioned upon entry of this Final Order and does not and shall not be deemed to constitute consent other than pursuant to this Final Order and the terms set forth herein. The adequate protection provided herein and other benefits and privileges contained herein are necessary (a) in order to protect the Prepetition Secured Parties from any diminution in value of their Prepetition

Collateral and (b) to obtain the foregoing consents and agreements.  Nothing herein shall prevent the Prepetition Secured Parties from seeking additional adequate protection to the extent permitted by law or to the extent permitted in the Prepetition Secured Documents, as applicable.  For the avoidance of doubt, this Final Order shall be deemed to be a request by the Prepetition Secured Parties pursuant to section 363(e) of the Bankruptcy Code.

N.     <u>Approved Budget.</u>    Attached hereto as **<u>Exhibit A</u>** is a budget setting forth the Debtors' anticipated cash receipts and expenditures for the next thirteen (13) weeks (the "<u>Approved Budget</u>").    The "<u>Approved Budget</u>" shall include such modifications and amendments thereto as may be agreed to in form and substance by the DIP Agent and the ad hoc group of lenders under the Term Credit Agreement (the "<u>Ad Hoc Term Lender Group</u>"), the Term Administrative Agent, the Revolving Administrative Agent, and J. Aron (collectively with the Ad Hoc Term Lender Group, the Term Administrative Agent and Revolving Administrative Agent, and the Project Collateral Agent, the "<u>Prepetition Agents</u>"), subject to the conditions set forth in paragraph 26 hereof, which shall reflect the Debtors' good-faith projection of all weekly cash receipts and disbursements in connection with the operation of the Debtors' business during such thirteen-week period, delivered pursuant to the terms of the DIP Loan Documents, delivered by the Debtors to counsel for the DIP Agent, the DIP Lenders and the Prepetition Agents with a copy concurrently to the Committee.  The DIP Agent and the Prepetition Agents hereby expressly reserve all of their rights with respect to the approval of any budget covering the period after the expiration of the Approved Budget, and nothing contained herein shall be deemed or construed to constitute the consent of any of the DIP Agent or the Prepetition Agents to any such budget.  The Approved Budget is an integral part of this Final Order and has been relied upon by the DIP

Secured Parties to provide DIP Financing and by the Prepetition Secured Parties to permit the use of Cash Collateral and consent to this Final Order.

O.      <u>Good Cause</u>.  Based upon the record presented to the Court by the Debtors, it appears that the ability of the Debtors to obtain sufficient working capital and liquidity under the DIP Loan Documents and to use Cash Collateral is vital to the Debtors and the Debtors' estates and creditors.  The Debtors reasonably believe that the liquidity to be provided under the DIP Loan Documents and from the use of Cash Collateral will enable the Debtors to continue to safely and efficiently suspend the operation of their refinery facility, preserve and maximize the value of their businesses, and provide the Debtors with sufficient funding to pursue the necessary proceedings to restructure the Debtor's outstanding obligations.  Good cause has, therefore, been shown for the relief sought in the Motion on a final basis.

P.      <u>Good Faith</u>.  The DIP Secured Parties, the Prepetition Secured Parties and each of their respective affiliates, subsidiaries, parents, officers, shareholders, directors, employees, investment advisers and sub-advisers, attorneys, and agents have acted in good faith in negotiating the terms of the DIP Loan Documents and this Final Order.  The DIP Financing, the DIP Loan Documents and the use of Cash Collateral have been negotiated in good faith and at arm's length among the Debtors, the DIP Secured Parties and the Prepetition Secured Parties, and all of the obligations and indebtedness arising under, in respect of or in connection with the DIP Financing, the DIP Loan Documents and this Final Order shall be deemed to have been extended by each of the DIP Secured Parties in accordance with the DIP Loan Documents, and the Prepetition Secured Parties' shall be deemed to have consented to the use of Cash Collateral, in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Obligations, the DIP Liens, the

DIP Superpriority Claims and the Adequate Protection Obligations shall be entitled to the full protection of section 364(e) of the Bankruptcy Code and the terms, conditions, benefits, and privileges of this Final Order regardless of whether this Final Order is subsequently reversed, vacated, modified, or otherwise is no longer in full force and effect or the Chapter 11 Cases are subsequently converted or dismissed.

Q.      Consideration.  The Debtors will receive and have received fair consideration and reasonably equivalent value in exchange for access to the DIP Financing, and all other financial accommodations provided under the DIP Financing, the DIP Loan Documents and this Final Order.

R.      No Liability to Third Parties.  The Debtors stipulate and this Court finds that in making decisions to advance loans to the Debtors, in administering any loans, in permitting the Debtors to use Cash Collateral, in accepting the Approved Budget or any future Approved Budget or in taking any other actions permitted by this Final Order or the DIP Loan Documents, none of the DIP Secured Parties or Prepetition Secured Parties shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors.

S.      Section 552.  In light of the subordination of their liens and super-priority administrative claims (i) in the case of the DIP Secured Parties, to the Carve Out and the Permitted Prior Liens, and (ii) in the case of the Prepetition Secured Parties, to the Carve Out and the DIP Liens, each of the DIP Secured Parties and the Prepetition Secured Parties is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply to any of the DIP Secured Parties or the Prepetition Secured Parties with respect to the proceeds, products, rents, issues or profits of any of the DIP Collateral or the

Prepetition Collateral, and no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, may be charged against proceeds, product, offspring or profits from any of the DIP Collateral or the Prepetition Collateral under section 552(b) of the Bankruptcy Code.  The Debtors shall be deemed to have irrevocably waived, and to have agreed not to assert, any claim or right under section 552 of the Bankruptcy Code seeking to avoid the imposition of the DIP Liens, Prepetition Liens or the Prepetition Secured Parties' replacement liens granted under this Final Order (the "Adequate Protection Liens") on any property acquired by any of the Debtors or any of their estates or, subject to the Carve Out, seeking to surcharge any costs or expenses incurred in connection with the preservation, protection or enhancement of, or realization by, the DIP Secured Parties or the Prepetition Secured Parties upon the DIP Collateral or the Prepetition Collateral, as applicable.

T.     Immediate Entry.  Sufficient cause exists for immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).

This Court concludes that entry of this Final Order is in the best interests of the Debtors and the Debtors' estates and creditors as its implementation will, among other things, allow for the continued flow of supplies and services to the Debtors necessary to enable the Debtors to safely and efficiently administer their refinery facility during the pendency of these Chapter 11 Cases. Based upon the foregoing findings, acknowledgements, and conclusions; and upon the record made before this Court at the Final Hearing; and good and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED:**

1.     Disposition.  The Motion is granted on a final basis to the extent set forth herein, the DIP Financing described herein is authorized and approved, and the use of Cash Collateral and provision of adequate protection is authorized, in each case subject to the terms of this Final Order

and the DIP Loan Documents.  Any objections to the Motion that have not previously been withdrawn, waived, settled, or resolved and all reservations of rights included therein are hereby denied and overruled on their merits.  This Final Order shall constitute findings of fact and conclusions of law.

2.  <u>Effectiveness</u>.  Subject to the terms hereof, this Final Order shall be immediately valid upon signing by the Court and effective and enforceable upon the date entered on the docket in the Chapter 11 Cases.

3.  <u>Authorization of the DIP Financing and DIP Loan Documents</u>.

(a)  The Debtors are hereby authorized to execute and enter into the DIP Loan Documents.  The DIP Loan Documents and this Final Order shall govern the financial and credit accommodations to be provided to the Debtors by the DIP Lenders in connection with the DIP Financing.

(b)  The Borrower is hereby authorized on a final basis to borrow, and the Guarantors are hereby authorized on a final basis to guarantee, up to the principal amount of $25 million (plus such additional principal amounts due solely to payment of interest in-kind), pursuant to the terms of the DIP Loan Documents and this Final Order and at the times set forth in the Approved Budget, all of which shall be used by the Debtors as expressly permitted by the DIP Loan Documents, this Final Order, the Approved Budget and any Budget Variances.  The Debtors are authorized to use proceeds of the DIP Financing in accordance with this Final Order and the Approved Budget in an amount that would not cause either: (i) all line items other than Professional Fees from varying from the applicable Approved Budget by more than twenty percent (20%) for each week during any budget period or ten percent (10%) on a cumulative basis for that portion of the budget period then ended; (ii) with respect to Professionals Fees, the Debtors may vary from

29

the applicable budget by no more than ten percent (10%) on a cumulative basis for that portion of the Budget, and (iii) actual cash receipts, if any, received by the Borrower may not be less than ninety percent (90%) of the amounts set forth in the Budget (a "Budget Variance").  The variance reports showing budget to actual and any variance shall be delivered by the Debtors to the DIP Agent and counsel to each of the Prepetition Agents.

(c)      In furtherance of the foregoing and without further approval of this Court, but subject to the terms of this Final Order, the Debtors are authorized to, and, if so required under the terms of the DIP Loan Documents, directed to perform all acts to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all related fees and expenses, that may be required or necessary for the Debtors' performance of their obligations under the DIP Financing, including, without limitation:

i.      the execution, delivery, and performance of the DIP Loan Documents, including, without limitation, any security and pledge agreements, and any mortgages contemplated thereby;

ii.      subject to paragraph 10 hereof, the execution, delivery and performance of one or more amendments, waivers, consents, or other modifications to and under the DIP Loan Documents, in each case in such form as agreed among the Debtors and the required other parties as set forth in more detail in paragraph 10 below;

iii.      the non-refundable payment of the fees referred to in the DIP Loan Documents, including the fees of the DIP Agent, and, subject to paragraph 8, costs and expenses payable under the DIP Loan Documents;

iv.      make payments on account of the Adequate Protection Obligations provided for in this Final Order; and

v.      the performance of all other acts required under or in connection with the DIP Loan Documents.

4.      <u>DIP Obligations</u>.  This Final Order and the DIP Loan Documents shall evidence the DIP Obligations, which DIP Obligations shall, upon execution of the DIP Loan Documents, be valid, binding and enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any estate representative or trustee appointed in any of the Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing, or upon the dismissal of any of the Chapter 11 Cases or any such successor cases (collectively, the "<u>Successor Cases</u>"), and their creditors and other parties-in-interest, in each case, in accordance with the terms of this Final Order and the DIP Loan Documents.  All obligations incurred, payments made, and transfers or grants of security and liens set forth in this Final Order and the DIP Loan Documents by any Debtor are granted to or for the benefit of the Debtors for fair consideration and reasonably equivalent value, and are granted contemporaneously with the making of the loans and commitments and other financial accommodations secured thereby.  No obligation, payment, transfer, or grant of security under the DIP Loan Documents or this Final Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law, or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance (whether equitable or otherwise), impairment, or any other

challenges under the Bankruptcy Code or any other applicable foreign or domestic law or regulation by any person or entity.

5.     Carve-Out.  The Debtors' obligations to the DIP Secured Parties and the liens, security interests and superpriority claims granted herein and/or under the DIP Loan Documents, including the DIP Liens, the DIP Superpriority Claims, and the Adequate Protection Obligations, shall be subject and subordinate to the Carve-Out.  "Carve-Out" shall mean (i) fees and expenses incurred by bankruptcy professionals (x) whose retention has been approved by the Bankruptcy Court which are incurred as of the delivery of the Carve-Out Trigger Notice (as defined below) and (y) provided for in the Approved Budget, including all fees and expenses of bankruptcy professionals reflected as accrued in the Approved Budget; (ii) all accrued and unpaid professional fees and expenses of the Ad Hoc Term Lender Group, the Term Administrative Agent, the Project Collateral Agent, the Revolver Administrative Agent and J. Aron owed by the Debtors under paragraphs 8 and 9(a)-(c) hereof, subject to a total aggregate cap of $2 million for the fees of such Prepetition Secured Parties; (iii) fees and expenses in an amount not to exceed $375,000 incurred from and after the delivery of a Carve-Out Trigger Notice (as defined below) by bankruptcy professionals whose retention has been approved by the Bankruptcy Court (the "Post-Termination Fee Carve-Out"); and (iv) fees owed pursuant to 28 U.S.C. §1930 plus interest at the statutory rate pursuant to 31 U.S.C. § 3717 (without regard to the notice set forth below) or fees owed the clerk of the Bankruptcy Court; and (iv) all reasonable and documented fees and expenses, in an aggregate amount not to exceed $50,000, incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth below).  "Carve-Out Trigger Notice" shall mean the written notice, including by email, delivered by the DIP Agent (at the direction of the DIP Lenders) or, after the DIP Financing has been indefeasibly paid in full and in cash (a "DIP

Repayment Event"), by any of the Prepetition Agents, to the Debtors, their counsel, the U.S. Trustee, and counsel to the Committee, and prior to a DIP Repayment Event, counsel to the Prepetition Agents, which notice may be delivered following the occurrence and during the continuation of an Event of Default or the Termination Date in accordance with the terms of the DIP Loan Documents or, following a DIP Repayment Event, following the occurrence and during the continuation of a Cash Collateral Termination Event (as defined below) or the Cash Collateral Termination Date (as defined below).  Notwithstanding the foregoing, the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against any of the DIP Secured Parties, the Prepetition Secured Parties or any of their respective officers, directors, employees, agents, advisers and counsel, including, without limitation, challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the (i) DIP Loan Documents in favor of the DIP Agent, for the benefit of the DIP Secured Parties or (ii) the Prepetition Secured Documents, for the benefit of the Prepetition Secured Parties, as applicable.  For the avoidance of doubt, until the delivery of a Carve-Out Trigger Notice, the Borrower shall be permitted to pay fees and expenses incurred by bankruptcy professionals whose retention has been approved by the Bankruptcy Court as the same shall become due and payable, subject to the terms and conditions set forth in the DIP Loan Documents and this Final Order (the payment of which shall not reduce the Post-Termination Fee Carve-Out).  Notwithstanding anything to the contrary herein, in the DIP Loan Documents, or in any loan or financing documents, the Carve-Out shall be senior to all liens and claims securing the DIP Obligations, any prepetition secured obligations, and any and all other forms of adequate protection, liens or claims

securing the DIP Obligations or any prepetition secured obligations.  For the avoidance of doubt, no IFF Property or proceeds thereof, and, until the Discharge of Inventory Financing Obligations (as defined in the A&R Depositary and Intercreditor Agreement), no Inventory Financing Collateral or proceeds thereof, shall be used to fund the Carve-Out and the Carve Out shall not be secured by the Inventory Financing Collateral or IFF Property.  None of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any professional person whose retention is approved by the Bankruptcy Court in connection with the Chapter 11 Cases or any Successor Cases.  Nothing in this Final Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any professional person whose retention is approved by the Bankruptcy Court or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.  None of the proceeds of the DIP Collateral or the DIP Loans shall be used in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Secured Parties or their respective officers, directors, employees, agents, advisors and counsel, including with respect to any of the liens created in connection with the DIP Financing.  In addition, none of the proceeds of the DIP Collateral, the DIP Loans, or the Prepetition Collateral shall be used in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Prepetition Secured Parties or their respective officers, directors, employees, agents, advisors and counsel, including with respect to any of the liens created in connection with the Prepetition Secured Documents (provided that, notwithstanding anything to the contrary herein, the Committee may use proceeds of the DIP Financing and/or the DIP Collateral (including Cash Collateral) to investigate but not to prosecute (i) the claims and liens of

the Prepetition Secured Parties, and (ii) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties up to an aggregate cap of $200,000 (the "Committee Investigation Budget")).  The Debtors will work in good faith with the Committee to establish a professional fee escrow consistent with the Approved Budget and the Debtors' liquidity needs.

6.     DIP Lender Superpriority Claim.  Subject to the Carve-Out and the Aron Rights (as defined below), and effective as of the date of the First Interim Order, the DIP Secured Parties are hereby granted, pursuant to sections 364(c)(1) and 364(e) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases or any Successor Cases (the "DIP Superpriority Claims") on account of the DIP Obligations with priority over any and all other administrative expenses, adequate protection claims, diminution claims, and all other claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, which allowed claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code.  The DIP Superpriority Claims shall be payable from and have recourse to all pre- and postpetition property of the Debtors and their estates and all proceeds thereof, excluding the Unencumbered Assets (as defined below), but including, solely to the extent that all other DIP Collateral is insufficient to satisfy the DIP Obligations, the proceeds of, or property recovered in connection with, the Unencumbered Assets.

7.      DIP Liens.

(a)      As security for the DIP Obligations, effective and perfected as of the date of the First Interim Order, the following security interests and liens, hereby are granted by the Debtors to the DIP Agent for the benefit of the DIP Lenders on the DIP Collateral as defined herein.  The "DIP Collateral" shall mean all property of the Debtors of any kind or nature whatsoever, (i) including, but not be limited to, all present and after acquired property (whether tangible, intangible, real, personal or mixed) of the Debtors, wherever located, including, without limitation, all accounts, inventory, equipment, capital stock in subsidiaries, investment property, instruments, chattel paper, real estate, leasehold interests, contracts, patents, copyrights, trademarks and other general intangibles, any claims and causes of action of the Debtors, including claims under section 549 of the Bankruptcy Code; and (ii) excluding (x) the IFF Property, (y) any claims and causes of action of the Debtors under sections 502(d), 544, 545, 547, 548, 550, and 553 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or other applicable law (collectively, the "Avoidance Actions"), and (z) any commercial tort claims and causes of action of any of the Debtors against any current or former directors or officers of the Debtors (the "Commercial Tort Claims" and together with the Avoidance Actions, the "Unencumbered Assets"); provided, however that the DIP Collateral shall include, solely to the extent that all other DIP Collateral is insufficient to satisfy the DIP Obligations secured by the DIP Liens (as defined below) in full, any proceeds of, or property recovered in connection with (whether by judgment, settlement or otherwise), the Unencumbered Assets.  All such liens on and security interests in the DIP Collateral granted to the DIP Secured Parties, pursuant to this Final Order or the DIP Loan Documents (collectively, the "DIP Liens"), are as follows:

36

i.       <u>Priming Lien Pursuant to Section 364(d)(1).</u>   A first priority, priming security interest in and lien on, pursuant to section 364(d)(1) of the Bankruptcy Code, all encumbered DIP Collateral (the "<u>Section 364(d)(1) Liens</u>"), which Section 364(d)(1) Liens shall be senior to any existing liens or claims, including, but not limited to, the Prepetition Liens of the Prepetition Secured Parties or postpetition liens granted to the Prepetition Secured Parties (collectively, the "<u>Prepetition Secured Parties Liens</u>"), and subject and junior only to (i) the Carve-Out, (ii) valid, perfected, and non-avoidable liens on property of a Debtor that are in existence on the Petition Date and are senior in priority to any of the Prepetition Secured Parties Liens, (iii) all liens, recoupment and setoff rights held by J. Aron (the "<u>Aron Rights</u>" and collectively with clause (ii), the "<u>Permitted Prior Liens</u>");

ii.       <u>First Priority Lien on Unencumbered Property Pursuant to Section 364(c)(2).</u>   A first priority security interest in and lien on, pursuant to section 364(c)(2) of the Bankruptcy Code, all unencumbered DIP Collateral (the "<u>Section 364(c)(2) Liens</u>"), which Section 364(c)(2) Liens shall be subject only to the Carve-Out;

iii.       <u>Junior Lien on Inventory Financing Collateral Pursuant to Section 364(c)(3).</u> A valid, binding, continuing, enforceable, fully-perfected, nonavoidable, automatically and properly perfected junior lien on and security interest in all Inventory Financing Collateral, which lien and security interest shall be subordinate and subject to the Aron Rights and subject to the Carve-Out;

iv.       <u>Junior Lien on Certain Encumbered Property Pursuant to Section 364(c)(3).</u>   A junior security interest in and lien on, pursuant to section 364(c)(3) of the Bankruptcy Code, all other DIP Collateral that is subject to a Permitted Prior Lien (the "<u>Section 364(c)(3) Liens</u>,") which Section 364(c)(3) Liens also shall be subject to the Carve-Out;

v.        <u>Liens Senior to Certain Other Liens</u>.  The DIP Liens shall not be subject or subordinate to (a) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (b) any liens arising after the Petition Date including, without limitation, liens granted under prior orders of the Court, or any liens or security interests granted in favor of any federal, state, municipal, or other governmental unit, commission, board, or court for any liability of the Debtors.

(b)        The DIP Liens shall be effective and perfected upon the Petition Date.

(c)        The DIP Liens shall be and hereby are fully perfected liens and security interests, effective and perfected upon the Petition Date without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements, or other agreements or documents, such that no additional steps need be taken by the DIP Secured Parties to perfect such liens and security interests.  Subject to applicable non-bankruptcy law, any provision of any lease, agreement, contract, or other instrument or agreement that requires the consent or approval of one or more landlords, licensors, or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for any Debtor to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, shall have no force or effect with respect to the transactions granting the DIP Liens in the Debtor's interest in such fee, leasehold or other interest or other collateral or the proceeds of any assignment, sale or other transfer thereof.

(d)        The DIP Liens, DIP Superiority Claims, and other rights, benefits, and remedies granted under this Final Order to the DIP Secured Parties shall continue in the Chapter 11 Cases, any Successor Cases, and following any dismissal of the Chapter 11 Cases, and such liens,

security interests, and claims shall maintain their priority as provided in this Final Order until all the DIP Obligations have been indefeasibly paid in full in cash and completely satisfied and all of the commitments thereunder have been terminated in accordance with the DIP Loan Documents.

8.    <u>Fees and Expenses of DIP Agent and Prepetition Secured Parties</u>.

The Debtors shall, no later than ten (10) days after receipt of a summary statement setting forth the applicable timekeepers, as well as the hours worked by and expenses incurred by such timekeepers, in connection with the Chapter 11 Cases whether incurred before or after the Petition Date (with copies provided via electronic mail to the U.S. Trustee, counsel to the Committee, counsel to the DIP Agent, and counsel to each of the Prepetition Secured Parties), indefeasibly pay or reimburse (i) the DIP Agent for its reasonable and documented fees and out-of-pocket costs, expenses and charges as provided in the Approved Budget (collectively, the "<u>DIP Agent Professional Fees</u>"), including, but not limited to, the reasonable fees, costs, and expenses of Gray Reed & McGraw LLP and Foley & Lardner LLP as counsel to DIP Agent, and any other advisors or professionals retained by the DIP Agent, (ii) the Project Collateral Agent for its reasonable and documented fees and out-of-pocket costs, expenses and charges, including, but not limited to, the reasonable fees, costs, and expenses of outside counsel, and any other advisors or professionals retained by the Project Collateral Agent, (iii) the Revolving Administrative Agent for its reasonable and documented fees and out-of-pocket costs, expenses and charges, including, but not limited to, the reasonable fees, costs, and expenses of outside counsel, and any other advisors or professionals retained by the Revolving Administrative Agent, (iv) J. Aron for its reasonable and

documented fees and out-of-pocket costs, expenses and charges, including, but not limited to, the reasonable fees, costs, and expenses of outside counsel, and any other advisors or professionals retained by J. Aron; (v) the Ad Hoc Term Lender Group for its reasonable and documented fees and out-of-pocket costs, expenses and charges, including, but not limited to, the reasonable fees, costs, and expenses of outside counsel, and any other advisor or professionals retained by the Ad Hoc Term Lender Group; and (vi) the Term Administrative Agent for its reasonable and documented fees and out-of-pocket costs, expenses and charges, including, but not limited to, the reasonable fees, costs and expenses of outside counsel, and any other advisors or professionals retained by the Term Administrative Agent.  The Debtors, the U.S. Trustee, the Committee, the DIP Agent, and each of the Prepetition Secured Parties may object to the reasonableness of the fees, costs, and expenses included in any such professional fee invoice; *provided* that any such objection shall be barred and deemed waived unless filed with this Court and served on the applicable professional by 12:00 Noon, prevailing Central Time, on the date that is no later than ten (10) days after the objecting party's receipt of the applicable professional fee invoice.  If such objection is timely received, the Debtors shall promptly pay the portion of such invoice not subject to such objection, and this Court shall determine any such objection unless otherwise resolved by the applicable parties.  Any hearing on an objection to payment of any fees, costs, and expenses set forth in a professional fee invoice shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses which are the subject of such objection and whether the DIP Agent, Revolving

Administrative Agent, J. Aron, Ad Hoc Term Lender Group, or Term Administrative Agent, as the case may be, is entitled to such fees, costs and expenses under this Final Order.  For the avoidance of doubt, none of the fees, costs, and expenses of the DIP Agent, Revolving Administrative Agent, J. Aron, Ad Hoc Term Lender Group, or Term Administrative Agent, shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.  All fees, costs and expenses payable under the DIP Loan Documents to the DIP Agent shall be included and constitute part of the DIP Obligations and be secured by the DIP Liens.  Notwithstanding anything to the contrary herein, the fees, costs, and expenses of the DIP Agent, Revolving Administrative Agent, J. Aron, Ad Hoc Term Lender Group, and Term Administrative Agent, under and in connection with negotiation and preparation of the DIP Loan Documents, including, without limitation, the legal fees and expenses of any professionals retained by them, shall be earned, non-refundable, and payable out of the final funding under the DIP Financing and shall not be subject to the notice period described in this paragraph and the recipients of such payments shall be fully entitled to all protections of section 364(e) of the Bankruptcy Code.  For the avoidance of doubt, the Debtors shall be responsible to pay, subject to the procedures outlined in this paragraph, all fees and expenses incurred by the DIP Agent, Revolving Administrative Agent, J. Aron, Ad Hoc Term Lender Group, and Term Administrative Agent, in connection with any action taken in these Chapter 11 Cases including, but not limited to, fees and expenses relating to the DIP

Financing and the administration and interpretation of, and the enforcement of remedies under, the DIP Financing and including all due-diligence, including but not limited to printing costs, consultation, travel, and attendance at court hearings, regardless of whether the DIP Financing is consummated.

9.     <u>Prepetition Secured Parties' Rights and Adequate Protection</u>.

(a)     <u>Adequate Protection for Prepetition Term Lenders</u>.  As adequate protection for any diminution of the Prepetition Debt Collateral resulting from the subordination of the Term Administrative Agent's Prepetition Debt Liens to the DIP Liens and the other relief granted herein in favor of the DIP Secured Parties, the Debtors' use of Prepetition Collateral (including Cash Collateral), and/or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, and in exchange for the Term Lenders' consent to the priming of the Prepetition Debt Liens by the DIP Liens pursuant to this Final Order, the Term Administrative Agent shall receive, for the benefit of Prepetition Term Lenders, adequate protection, including, without limitation, (1) valid and automatically perfected priority replacement liens and security interests in and on all real and personal property of the Debtors and their bankruptcy estates, in each case, subject to the DIP Liens securing the DIP Financing in the same order and priority as existed prepetition, with the exception of Avoidance Actions and Commercial Tort Claims and the proceeds thereof, (2) subject to the Approved Budget, monthly payments to reimburse the reasonable and documented professional fees of the Ad Hoc Term Lender Group, the Term Administrative Agent and Project Collateral Agent in accordance with paragraph 8 of this Final Order, (3) in lieu of cash payments of interest when and as required under the Prepetition Term Credit Agreement, all accrued and unpaid interest shall, on each applicable date when such interest payments are due under the Prepetition Term Documents, be paid in kind by adding the amount of such accrued interest to the

outstanding aggregate principal balance of the term loans, (4) superpriority administrative claims and all of the other benefits and protections allowable under section 507(b) of the Bankruptcy Code, in each of the Chapter 11 Cases or any Successor Cases, with priority as provided therein, to the extent of any diminution in the Prepetition Debt Collateral, (5) upon entry of this Final Order, payment of all fees and expenses of the professional advisors of the Ad Hoc Term Lender Group, Term Administrative Agent and Project Collateral Agent that were incurred prior to the Petition Date and that remain unpaid, and (6) an acknowledgement of the right to credit bid the Prepetition Term Obligations under the Prepetition Term Documents in connection with any sale of Prepetition Debt Collateral subject to section 363(k) of the Bankruptcy Code.

       (b)    <u>Adequate Protection for Revolver Lenders</u>.  As adequate protection for any diminution of the Prepetition Debt Collateral resulting from the subordination of the Revolving Administrative Agent's Prepetition Debt Liens to the DIP Liens and the other relief granted herein in favor of the DIP Secured Parties, the Debtors' use of Prepetition Collateral (including Cash Collateral), and/or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, and in exchange for the Revolver Lenders' consent to the priming of the Prepetition Debt Liens by the DIP Liens pursuant to this Final Order, the Revolving Administrative Agent shall receive, for the benefit of the Revolver Lenders, adequate protection, including, without limitation, (1) valid and automatically perfected priority replacement liens and security interests in and on all real and personal property of the Debtors and their bankruptcy estates, in each case, subject to the DIP Liens securing the DIP Financing in the same order and priority as existed prepetition, with the exception of Avoidance Actions and Commercial Tort Claims and the proceeds thereof, (2) subject to the Approved Budget, monthly payments to reimburse the reasonable and documented professional fees of the Revolver Administrative Agent and Project Collateral Agent in accordance

with paragraph 8 of this Final Order, (3) subject to the Approved Budget, on the last business day of each month, payments in cash to the Revolver Lenders in an amount equal to all interest (other than default interest) accrued under the Revolver Transaction Documents, (4) superpriority administrative claims and all of the other benefits and protections allowable under section 507(b) of the Bankruptcy Code, in each of the Chapter 11 Cases or any Successor Cases, with priority as provided therein, to the extent of any diminution in the Prepetition Debt Collateral, (5) upon entry of this Final Order, payment of all fees and expenses of the professional advisors of the Revolving Administrative Agent and Project Collateral Agent that were incurred prior to the Petition Date and that remain unpaid, and (6) an acknowledgement of the right to credit bid the prepetition obligations under the Revolver Transaction Documents in connection with any sale of Prepetition Debt Collateral subject to section 363(k) of the Bankruptcy Code.

(c)     Adequate Protection for J. Aron.  As adequate protection for any diminution of J. Aron's interests in its Inventory Financing Collateral resulting from the relief granted herein in favor of the DIP Secured Parties, the Debtors' use of J. Aron's Prepetition Collateral (including Cash Collateral), and/or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, J. Aron shall receive adequate protection, including, without limitation, (1) valid and automatically perfected priority replacement liens and security interests in and on all real and personal property of the Debtors and their bankruptcy estates, in each case, subject to the DIP Liens securing the DIP Financing in the same order and priority as existed prepetition, with the exception of Avoidance Actions and Commercial Tort Claims and the proceeds thereof, (2) subject to the Approved Budget, monthly payments to reimburse the reasonable and documented professional fees of J. Aron in accordance with paragraph 8 of this Final Order, (3) subject to the Approved Budget, on the last business day of each month payments in cash to J. Aron in an amount

equal to all interest (other than default interest) accrued under the J. Aron Transaction Documents, (4) superpriority administrative claims and all of the other benefits and protections allowable under section 507(b) of the Bankruptcy Code, in each of the Chapter 11 Cases or any Successor Cases, with priority as provided therein, to the extent of any diminution in the Inventory Financing Collateral, and (5) upon entry of this Final Order, payment of all fees and expenses of the professional advisors of J. Aron that were incurred prior to the Petition Date and that remain unpaid, and (6) an acknowledgement of the right to credit bid the prepetition obligations under the J. Aron Transaction Documents in connection with any sale of Inventory Financing Collateral, subject to section 363(k) of the Bankruptcy Code.

(d)      <u>Reservation of Rights</u>.   The rights of all parties with respect to the appropriate characterization (as payments of principal, payments of interest, or otherwise) of any adequate protection payments made (whether in cash or in kind) in accordance with the foregoing are expressly preserved.

(e)      <u>Right to Credit Bid</u>.  Each of the Prepetition Secured Parties shall have the right to credit bid its Prepetition Secured Obligations in connection with the sale of any of its Prepetition Collateral subject to section 363(k) of the Bankruptcy Code and shall give the Committee a non-binding indication of its intention to credit bid by no later than 12:00 noon prevailing Central Time two Business Days prior to the Bid Deadline (as defined below).  The Committee specifically reserves the right to assert a challenge of any lien/claim supporting a Credit Bid (a "<u>Credit Bid Challenge</u>") in accordance with the Bankruptcy Code or other applicable law, and the Committee shall give the Prepetition Secured Parties a non-binding indication of its intention to assert a Credit Bid Challenge as soon as reasonably practicable, but no later than 12:00 noon prevailing Central Time one Business Day prior to the Bid Deadline (as defined below) .

45

Notwithstanding the foregoing, any Credit Bid Challenge (except for a Challenge under paragraph 42(y) that is covered by an extended Challenge Period) must be asserted on or before 5:00 p.m. CT on September 17, 2021 or such later date that is set as the bid deadline or agreed by the applicable Prepetition Secured Parties (the "Bid Deadline"), and if no such Credit Bid Challenge is asserted by such date, or if such Credit Bid Challenge is only made to a portion of a Prepetition Secured Parties' Credit Bid, then the Debtors' Stipulations (subject to paragraph 42(y)) shall be binding upon each party in interest, including the Committee, with respect to the assets subject to the Credit Bid that are not the subject of a Credit Bid Challenge, and an allowed claim in connection therewith for purposes of the Credit Bid. In the event of a Credit Bid Challenge, then the applicable Prepetition Secured Party or Parties, as applicable, are authorized to withdraw or modify the applicable Credit Bid by notice to the Debtors, and without further order of the Bankruptcy Court. Upon request by the Debtors or the applicable Prepetition Secured Party or Parties, the Court will conduct an emergency hearing prior to the Auction in respect of any issues involving a Credit Bid Challenge or withdrawal/modification of the Credit Bid.

(f)     Weekly Meetings. The Debtors shall arrange for weekly (unless waived by the Prepetition Secured Parties in their sole and absolute discretion) status calls with the Prepetition Secured Parties and their advisors, and shall cause the Debtors' advisers and chief restructuring officer to participate to discuss (A) the Approved Budget, any Budget Variances and any other reports or information delivered by the Debtors, (B) the financial operations and performance of the Debtors' business, (C) progress in achieving the Milestones (as defined below) and any wind-down, liquidation, or going concern sale or marketing process or efforts, (D) the status of the Chapter 11 Cases generally, and (E) such other matters relating to the Debtors as the Prepetition Secured Parties (or their respective agents or advisors) shall reasonably request ("Weekly

Meetings"). The DIP Agent and its counsel may attend the Weekly Meetings at their discretion. The Debtors shall arrange Weekly Meetings with the Committee and its advisors (which, for the avoidance of doubt, may be conducted as separate calls for the Prepetition Secured Parties and the Committee). The Committee's professionals may reasonably request topics of discussion at the Weekly Meetings.

(g)     Milestones. The Debtors shall have (i) obtained, within sixty (60) calendar days after the Petition Date, a binding stalking horse bid for the sale of all or substantially all of the Debtors' assets which bid shall be reasonably acceptable to each Prepetition Secured Party, and (ii) completed the closing of a sale of all or substantially all of the Debtors' assets that is reasonably acceptable to each Prepetition Secured Party, within one hundred twenty (120) calendar days after the Petition Date (collectively the "Milestones").

(h)     Financial Reporting. The Debtors shall provide the advisors to the Ad Hoc Term Lender Group, the Revolving Administrative Agent (on behalf of the Revolving Lenders), and J. Aron, with the financial reporting and inspection rights described more fully in paragraph 12 below.

(i)     Right to Seek Additional Adequate Protection. Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Secured Parties in this Final Order is without prejudice to the right of the Prepetition Secured Parties to seek at any time, including, without limitation, in connection with the Final Order, modification of the grant of adequate protection provided hereby so as to provide different or additional forms of adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest such modification. Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the Prepetition Secured Parties under their respective Prepetition Secured

Documents or under equity or law, and the Prepetition Secured Parties expressly reserve all of their respective rights and remedies whether now existing or hereafter arising under their respective Prepetition Secured Documents, equity, and law in connection with all termination events and defaults and events of default under such agreements or hereunder.

10.     <u>Amendments, Consents, Waivers, and Modifications</u>.   The Debtors, with the express written consent of the DIP Agent, may enter into any amendments, consents, waivers, or modifications to the DIP Loan Documents that are not materially adverse to the Debtors without the need for further notice and hearing or any order of this Court; *provided*, *however*, that, without the approval of the Court on notice and a hearing, no such amendments, consents, waivers or modifications shall (i) shorten the maturity of the DIP Financing, (ii) increase the commitments thereunder or the rate of interest payable under the DIP Loan Documents, (iii) require the payment of any new or additional fee, or (iv) amend the Events of Default or covenants in the DIP Loan Documents to be materially more restrictive to the Debtors; *provided, further,* that any amendment, modification, waiver, or consent that adversely affects the rights or economic interest of any Prepetition Secured Party shall require the prior written consent of such Prepetition Secured Party; and *provided, further,* that any amendments, modification, waiver, or consent to or in respect of Section 10.05(b)(v) of the DIP Credit Agreement shall require the prior written consent of each Prepetition Agent.   No consent shall be implied by any other action, inaction, or acquiescence of any of the DIP Secured Parties or any of the Prepetition Secured Parties.

11.     <u>Perfection of DIP Liens and Prepetition Secured Parties' Adequate Protection Liens</u>.

(a)     The DIP Agent, and the Prepetition Secured Parties, as applicable, are hereby authorized, but not required, to file or record financing statements, trademark filings,

copyright filings, mortgages, notices of lien or similar instruments (subject to Borrower's prior review and approval, not to be unreasonably withheld, conditioned or delayed) in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder, in each case, without the necessity to pay any mortgage recording fee or similar fee or tax.  Whether or not the DIP Agent, on behalf of the DIP Secured Parties, or the Petition Secured Parties, in their respective sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall, to the extent provided in this Final Order, be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute or subordination upon entry of this Final Order. The Debtors shall, if requested, execute and deliver to the DIP Agent or the Prepetition Secured Parties, as applicable, all such agreements, financing statements, instruments and other documents as the DIP Agent or the Prepetition Secured Parties may reasonably request to more fully evidence, confirm, validate, perfect, preserve, and enforce the DIP Liens or the Prepetition Secured Parties' Adequate Protection Liens, as applicable, and all such documents will be deemed to have been recorded and filed as of the Filing Date.

(b)       A certified copy of the Final Order may be filed by the DIP Agent or the Prepetition Secured Parties with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby directed to accept such certified copy of this Final Order for filing and recording.

12.       <u>Financial Reporting and Inspection Rights</u>. The Debtors shall provide the advisors to the DIP Agent, Ad Hoc Term Lender Group, the Term Administrative Agent, the Revolving

Administrative Agent (on behalf of the Revolving Lenders), the Project Collateral Agent, J. Aron, and the Committee concurrently with the financial and other reporting as described in the DIP Loan Documents and the Prepetition Secured Documents, in addition to (i) any financial reporting given to the U.S. Trustee and (ii) any additional reports reasonably requested by and of the DIP Agent and the Prepetition Secured Parties. The Debtors shall deliver to each of the DIP Agent, the Ad Hoc Term Lender Group, the Term Administrative Agent, the Revolving Administrative Agent (on behalf of the Revolving Lenders), the Project Collateral Agent, J. Aron, and the Committee concurrently and their respective counsel financial reporting information in a timely manner that is requested by any of them in writing, and shall make personnel available to answer questions concerning such financial reporting and the operations of the Debtors during normal business hours on no less than two (2) business days' advance notice to Debtors' counsel, and within five (5) business days of the request being made to Debtors' counsel unless otherwise agreed to by the parties. The Debtors shall provide the DIP Agent, the Ad Hoc Term Lender Group, the Term Administrative Agent, the Revolving Administrative Agent, the Project Collateral Agent, and J. Aron and their respective agents, representatives, or professionals, with access to, and on-site inspections of, the Debtors' property and company records, as may be reasonably requested, during normal business hours, on no less than two (2) business days' advance notice to Debtors' counsel, and within five (5) business days of the request being made to the Debtors' counsel, unless the parties agree otherwise on the actual inspection date. The Debtors shall promptly provide the DIP Agent with any information or documents that are provided to the Term Administrative Agent, the Revolving Administrative Agent, the Project Collateral Agent and J. Aron and vice versa.

13.   <u>Third Parties</u>.  Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Secured Parties contained in this Final

Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, following entry of an order granting a Stay Relief Motion (defined below) as set forth in paragraph 17(c) hereof and solely to the extent the applicable DIP Collateral is not subject to a Permitted Prior Lien, upon three (3) Business Days' written notice to the landlord, lienholder, licensor, or other third party owner of any leased or licensed premises or intellectual property that a Termination Event has occurred under the DIP Loan Documents and that the DIP Agent is permitted to exercise remedies, the DIP Agent (i) may, only subject to any separate agreement by and between the applicable landlord or licensor (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon and (ii) subject to applicable law, shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, trade-names, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a lien or license of any third party and which are used by the Debtors in their businesses, in either the case of subparagraph (i) or (ii) of this paragraph without interference from lienholders or licensors thereunder.  To the extent applicable law prohibits the forgoing access or use of rights, the DIP Agent shall have the right to an expedited hearing on five (5) Business Days' notice to obtain Court authorization to obtain such access or use of such rights.

14.   <u>Automatic Stay Modified</u>.  The automatic stay provisions of section 362 of the Bankruptcy Code hereby are vacated and modified without the need for any further order of this Court to permit (a) the Debtors to grant the DIP Liens and the DIP Superpriority Claims, and to perform such acts as the DIP Agent may request to assure the perfection and priority of the DIP Liens; (b) the Debtors to grant the Prepetition Secured Parties' Adequate Protection Liens, and to

perform such acts as the Prepetition Secured Parties may request to assure the perfection and priority of the Prepetition Secured Parties' Adequate Protection Liens; (c) the Debtors to incur all liabilities and obligations, including all of (i) the DIP Obligations, to the DIP Secured Parties and (ii) the Adequate Protection Obligations to the Prepetition Secured Parties, in each case as contemplated under this Final Order and the DIP Loan Documents; (d) the Debtors to pay all amounts referred to, required under, in accordance with, and subject to the DIP Loan Documents and this Final Order, including any Adequate Protection Obligations; (e) the DIP Secured Parties to retain and apply payments made in accordance with the DIP Loan Documents and this Final Order; (f) the DIP Agent, the DIP Lenders and the Prepetition Secured Parties to exercise the rights and remedies set forth in paragraph 17 hereof, upon the occurrence of a Termination Event (as defined below); (g) the Prepetition Secured Parties to exercise the rights and remedies under their respective Prepetition Secured Documents, as applicable, pursuant to paragraph 17(c) hereof; (h) without a determination that the automatic stay applies, but out of an abundance of caution, J. Aron to retain and apply amounts received from the liquidation of its IFF Property to obligations owed by the Debtors to J. Aron under the J. Aron Transaction Documents; (i) J. Aron to set off and net any Margin (as defined in the J. Aron Master Monetization Agreement) against any obligations owed by the Debtors to J. Aron under the J. Aron Transaction Documents; (j) the Debtors to perform under the DIP Loan Documents and any and all other instruments, certificates, agreements and documents which may be required, necessary or prudent for the performance by the applicable Debtors under the DIP Loan Documents and any transactions contemplated therein or in this Final Order; and (k) the implementation of all of the terms, rights, benefits, privileges, remedies, and provisions of this Final Order and the DIP Loan Documents, in each case without further notice, motion or application to, or order of, or hearing before, this Court, subject to the terms of this Final

Order, except that to the extent any Prepetition Secured Party seeks to enforce its respective rights, benefits, privileges, remedies under, or provisions of, this Final Order and the Prepetition Secured Documents against property of the Debtors' estates (other than any such rights, benefits, privileges, or remedies described in clauses (h) and (i)), such Prepetition Secured Party shall provide the Debtors with ten (10) days written notice prior to any such enforcement. The Debtors and DIP Lenders have consented to the exercise of rights, benefits, privileges, and remedies described in clauses (h) and (i).  Nothing in this Final Order shall impair or abridge the Debtors' right to seek and, if granted by the Bankruptcy Court, obtain the use of Cash Collateral on a nonconsensual basis, and the rights of the DIP Secured Parties, the holders of the Permitted Prior Liens and the Prepetition Secured Parties to object to such request are fully preserved.

15. <u>Termination Date</u>.  Each of the following shall constitute a termination event under this Final Order (each a "<u>Termination Event</u>", and the date upon which such Termination Event occurs, the "<u>Termination Date</u>"), unless waived in writing (delivery by email or other electronic means being sufficient) by the DIP Agent and each Prepetition Agent:

(a) the occurrence of the "Maturity Date" (as defined in the DIP Loan Documents) of the DIP Financing under the DIP Loan Documents;

(b) acceleration of the obligations under the DIP Loan Documents upon the occurrence of an "Event of Default" under and as defined by the DIP Loan Documents;

(c) nine (9) months from the date of the First Interim Order;

(d) [reserved] ;

(e) entry of an order authorizing the Borrower or any Guarantor to incur DIP financing from any party other than the DIP Secured Parties;

(f)      the closing date of a sale of all or substantially all of the Debtors' assets under section 363 of the Bankruptcy Code (whether in one transaction or a series of related or unrelated transactions) (a "363 Sale");

(g)      the effective date of a confirmed chapter 11 plan (a "Plan") that provides for indefeasible payment in full, in cash of all obligations owing under the DIP Loan Documents or is otherwise acceptable to the DIP Agent and the DIP Lenders in their sole discretion;

(h)      the failure by the Debtors to timely perform any of the material terms, provisions, conditions, covenants, or other obligations under this Final Order;

(i)      the filing of a motion or other pleading requesting (or entry of an order approving) the appointment of a trustee, other estate fiduciary or an examiner with special/expanded powers which the Debtors fail to timely oppose without the prior written consent of the DIP Agent and Prepetition Secured Parties;

(j)      an order converting any Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of the Chapter 11 Cases;

(k)      the filing or support by any Debtor of any plan of reorganization that (1) does not provide for indefeasible payment in full, in cash of all obligations owing under the DIP Loan Documents and (2) is not otherwise acceptable to DIP Agent and the DIP Lenders in their sole discretion; and

(l)      any modifications, amendments, reversal, or extensions of this Final Order that are adverse to the DIP Secured Parties or the Prepetition Secured Parties.

In addition to the foregoing, each of the following shall constitute Termination Event upon which any Prepetition Secured Party may terminate the Debtors' authorization to use Cash Collateral, but not exercise any other remedies under this Final Order:

(m)     the failure of the Debtors to use commercially reasonable efforts to pursue collection of the insurance claims or disputed amounts owed to the Debtors by BP or (2) seek the agreement of the Government of the U.S. Virgin Islands (the "USVI") to draw on the letter of credit provided by Limetree Bay Terminals, LLC, as financial assurance under the ROA by and among the USVI and certain of the Debtors; provided, however, that so long as the Debtors have used such commercially reasonable efforts in connection with either of the foregoing, no Cash Collateral Termination Event shall be deemed to arise hereunder this subclause "n" in the event the Debtors fail to collect any amounts or cause the USVI to draw on such letter of credit;

(n)     the filing by the Debtors of a motion for authorization to sell all or substantially all of the Debtors' assets or for approval of any related bidding procedures that is not reasonably acceptable to each of the Prepetition Agents; and

(o)     the failure of the Debtors to comply with any of the Milestones.

Nothing in the preceding paragraphs 14 and 15 of this Final Order shall constitute or be deemed to constitute an amendment or modification to sections 2.6, 3.7(e), 5.6 or 5.9 of the Intercreditor Agreement, or any other provisions of the Intercreditor Agreement.

16.     Cash Collateral Termination Events.  Following a DIP Repayment Event, each of the following shall constitute a cash collateral termination event under this Final Order (each a "Cash Collateral Termination Event", and the date upon which such Cash Collateral Termination Event occurs, the "Cash Collateral Termination Date"), unless waived in writing (delivery by email or other electronic means being sufficient) by each Prepetition Agent:

(a)     if on or before the date of the DIP Repayment Event, the Debtors and the Prepetition Agents have not agreed to the terms and conditions of the Debtors' continued

consensual use of Cash Collateral, the adequate protection to be provided to the Prepetition Secured Parties, and the terms of a budget;

(b)      the bringing of a motion, taking of any action or the filing of any plan of reorganization or liquidation or disclosure statement attendant thereto by or on behalf of the Debtors in the Chapter 11 Cases: (a) to obtain postpetition financing, absent the consent of the Prepetition Secured Parties; (b) to grant any lien, absent the consent of each Prepetition Agent; or (c) to use Cash Collateral in manner that is inconsistent with the terms of this Final Order or the Approved Budget, subject to the approved Budget Variances, and it being further specified that any request for payment, or payment, of professionals fees by any party not limited herein to the projected fees in the Approved Budget in excess of the budgeted amount shall not be deemed a Cash Collateral Termination Event;

(c)      [reserved];

(d)      the failure by the Debtors to timely perform any of the material terms, provisions, conditions, covenants, or other obligations under this Final Order;

(e)      the filing of a motion or other pleading requesting (or entry of an order approving) the appointment of a trustee or an estate fiduciary or an examiner with special powers which the Debtors fail to timely oppose without the prior written consent of the Prepetition Secured Parties;

(f)      an order converting any Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of the Chapter 11 Cases;

(g)      the filing or support by any Debtor of a plan of reorganization or liquidation that is not acceptable to each Prepetition Agent in its sole discretion;

(h)       any modifications, amendments, reversal, or extensions of this Final Order that are adverse to the Prepetition Secured Parties;

(i)       the failure of the Debtors to use commercially reasonable efforts to pursue collection of the insurance claims or disputed amounts owed to the Debtors by BP or (2) seek the agreement of the Government of the USVI to draw on the letter of credit provided by Limetree Bay Terminals, LLC, as financial assurance under the ROA by and among the USVI and certain of the Debtors; provided, however, that so long as the Debtors have used such commercially reasonable efforts in connection with either of the foregoing, no Cash Collateral Termination Event shall be deemed to arise hereunder this subclause "i" in the event the Debtors fail to collect any amounts or cause the USVI to draw on such letter of credit;

(j)       the filing by the Debtors of a motion for authorization to sell all or substantially all of the Debtors' assets or for approval of any related bidding procedures that is not acceptable to each Prepetition Agent; and

(k)       the failure of the Debtors to comply with any of the Milestones or to hold Weekly Meetings.

Nothing in the preceding paragraph 16 of this Final Order shall constitute or be deemed to constitute an amendment or modification to sections 2.6, 3.7(e), 5.6 or 5.9 of the Intercreditor Agreement, or any other provisions of the Intercreditor Agreement.

17.    Rights and Remedies Upon Termination Event.

(a)       Upon the occurrence and during the continuation of a Termination Event, the DIP Agent or any Prepetition Secured Party, as applicable, or, following a Cash Collateral Termination Event, any Prepetition Secured Party may (and any automatic stay otherwise applicable to the DIP Secured Parties or the Prepetition Secured Parties, whether arising under

sections 105 or 362 of the Bankruptcy Code or otherwise, but subject to the terms of this Final Order (including this paragraph) is hereby modified, without further notice to, hearing of, or order from this Court, to the extent necessary to permit the DIP Secured Parties and the Prepetition Secured Parties, as applicable, to) deliver a written notice (a "Termination Notice") (including by e-mail) to counsel for the Debtors, counsel for each of the Prepetition Agents, counsel for the Ad Hoc Term Lender Group, counsel for J. Aron, counsel for the Committee, and the U.S. Trustee (the "Remedies Notice Parties"), declaring and triggering, as applicable:  (i) the immediate termination of the DIP Financing and any DIP Loan Document as to any future liability or obligation of the DIP Secured Parties, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; (ii) all DIP Obligations to be immediately due and payable; (iii) right to charge interest at the default rate under the DIP Loan Documents; (iv) a termination of the ability of the Debtors to use any Cash Collateral.

(b)     Upon delivery of such Termination Notice by the DIP Agent or any of the Prepetition Secured Parties, without further notice or order of the Court, the Debtors' authorization to use Cash Collateral and to incur the DIP Financing hereunder will, subject to the expiration of the Remedies Notice Period (as defined below), automatically terminate and (i) the DIP Secured Parties will have no obligation to provide any further DIP Financing or other financial accommodations and (ii) no Prepetition Secured Party will have an obligation to permit the Debtors to continue to use Cash Collateral; *provided that*, during the Remedies Notice Period (as defined below), the Debtors shall be entitled to continue to use Cash Collateral solely in accordance with the terms of this Final Order and the DIP Loan Documents and to pay items solely as set forth in the Approved Budget (or following a DIP Repayment Event, solely in accordance with the terms

of this Final Order and to pay items solely as set forth in the Approved Budget), without any variance.

(c)     Following a Termination Event or Cash Collateral Termination Event, but prior to exercising the remedies set forth in this sentence below, the DIP Secured Parties or a Prepetition Secured Party, as applicable, shall be required to file a motion with the Court seeking emergency relief (the "Stay Relief Motion") on three (3) business days' notice to the Remedies Notice Parties (the "Remedies Notice Period") for a further order of the Court modifying the automatic stay in the Chapter 11 Cases to permit the DIP Secured Parties or the Prepetition Secured Parties, as applicable, to:  (i) freeze monies or balances in the Debtors' accounts; (ii) immediately set-off any and all amounts in accounts subject to a control agreement in favor of the DIP Secured Parties against the DIP Obligations, (iii) enforce any and all rights against the DIP Collateral (to the extent such DIP Collateral is not subject to a Permitted Prior Lien), including, without limitation, foreclosure on all or any portion of the DIP Collateral, collection of accounts receivable, occupying the Debtors' premises, and sale or disposition of the DIP Collateral (or following a DIP Repayment Event, enforce any and all rights against the Prepetition Collateral, including, without limitation, foreclosure on all or any portion of the Prepetition Collateral, collection of accounts receivable, occupying the Debtors' premises, and sale or disposition of the Prepetition Collateral); (iv) terminate and revoke the Debtors' right under this Final Order or the DIP Loan Documents to use any Cash Collateral, except to fund the Carve-Out; and (v) take any other actions or exercise any other rights or remedies permitted under this Final Order, the DIP Loan Documents, the Prepetition Secured Documents, or applicable law.  The Debtors, the DIP Secured Parties and the Prepetition Secured Parties consent to a hearing on the Stay Relief Motion on an expedited basis. Any order granting a Stay Relief Motion filed by any of the Prepetition Secured Parties shall also

modify the automatic stay to the extent necessary to permit (i) the Prepetition Secured Parties to immediately set off and net any and all amounts in accounts subject to a control agreement in their favor, any Margin (as defined in the Monetization Master Agreement) and any amounts owed by them to the Debtors against any obligations under the Secured Financing Documents, (ii) enforce any and all rights against any collateral securing any obligations under the Prepetition Secured Documents, including without limitation foreclosure on all or any portion of such collateral, collection of accounts receivable, occupying the Debtors' premises, and sale or disposition of the DIP Collateral; and (iii) take any other actions or exercise any other rights or remedies permitted under this Final Order, the Secured Financing Documents, or applicable law.

(d)     The rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that the DIP Secured Parties have under the DIP Loan Documents, or otherwise or that the Prepetition Secured Parties have under the Prepetition Secured Documents or otherwise.  If any of the DIP Secured Parties or Prepetition Secured Parties are permitted by the Court to take any enforcement action with respect to the DIP Collateral, or the Prepetition Secured Parties are permitted by the Court to take any enforcement action with respect to the Prepetition Collateral, following the hearing on the Stay Relief Motion, and subject to relative rights and priorities of the other DIP Secured Parties or Prepetition Secured Parties as provided in or recognized under this Final Order, the Debtors shall cooperate with such party in its efforts to enforce its security interest in the DIP Collateral or the Prepetition Collateral, as applicable, and shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such party from enforcing its security interests in the DIP Collateral or the Prepetition Collateral, as applicable.

18.     <u>Subsequent Reversal or Modification</u>.  This Final Order is entered pursuant to, *inter alia*, section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP Secured Parties and Prepetition Secured Parties all protections afforded by section 364(e) of the Bankruptcy Code.  If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated, or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by the Debtors to the DIP Secured Parties prior to the date of receipt by the DIP Agent of written notice of the effective date of such action, (ii) the payment of any fees required under this Final Order or the DIP Loan Documents, (iii) the validity and enforceability of any lien, claim, obligation, right, remedy or priority authorized or created under this Final Order or pursuant to the DIP Loan Documents as of such date, including any Adequate Protection Obligations, and (iv) the validity or enforceability of the Aron Rights.

19.     <u>Restriction on Use of DIP Lenders' Funds and Prepetition Collateral</u>.  Notwithstanding anything herein to the contrary, none of the DIP Collateral or proceeds thereof, proceeds of the DIP Financing, the Prepetition Collateral or proceeds thereof, any portion of the Carve-Out may be used by the Debtors, the Debtors' estates, the Committee, any trustee or examiner appointed in the Chapter 11 Cases or any chapter 7 trustee, or any other party in interest, directly or indirectly, to: (a) request authorization to obtain postpetition financing (whether equity or debt) or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than (i) from the DIP Agent or (ii) if such financing is sufficient to indefeasibly pay all DIP Obligations in full in cash and such financing is immediately so used; (b) assert, join, commence, investigate (except for the purposes described in, and in a manner consistent with, the terms of paragraph 42) support, or prosecute any action for any claim, counter-claim, action, cause of action, proceeding, application, motion, objection, defense, or other

contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, in any capacity, the DIP Releasees or the Prepetition Secured Releasees, with respect to any transaction, occurrence, omission, or action, including, without limitation, (i) any action arising under the Bankruptcy Code against a DIP Releasee or a Prepetition Secured Releasee; (ii) any so-called "lender liability" claims and causes of action against a DIP Releasee or Prepetition Secured Releasee; (iii) any action with respect to the legality, enforceability, validity, extent, perfection, and priority of the DIP Obligations, the DIP Superpriority Claims, the DIP Loan Documents, the DIP Liens, or Prepetition Secured Obligations; (iv) any action for avoidance under sections 544, 547, 548, 549, or 550 of the Bankruptcy Code against the DIP Secured Parties or a Prepetition Secured Releasee; (v) any action seeking to invalidate, set aside, avoid, reduce, set off, offset, recharacterize, subordinate (whether equitable, contractual, or otherwise), recoup against, disallow, impair, raise any defenses, cross-claims, or counter claims, or raise any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation against or with respect to the DIP Liens, the DIP Obligations, the DIP Superpriority Claims, or the Prepetition Secured Obligations in whole or in part; (vi) appeal or otherwise challenge this Final Order, the DIP Loan Documents, or any of the transactions contemplated herein or therein; or (vii) any action that has the effect of preventing, hindering, or delaying (whether directly or indirectly) the DIP Secured Parties' or Prepetition Secured Parties' rights in respect of their respective liens on and security interests in the DIP Collateral or Prepetition Collateral, as applicable, or any of their rights, powers, or benefits hereunder or in the DIP Loan Documents or this Final Order anywhere in the world; (c) seek to modify any of the rights granted to the DIP Secured Parties or the Prepetition Secured Parties hereunder or under the DIP Loan Documents; or (d) pay any claim of a prepetition creditor except as permitted under the

DIP Loan Documents in accordance with the Approved Budget.  Notwithstanding the foregoing, the terms and limitations of this paragraph shall not apply to a successful action on the part of the Debtors whereby under paragraph 17 of this Final Order the Debtors obtain an order of the Court staying or otherwise modifying a Termination Event or a Cash Collateral Termination Event. Notwithstanding the Committee Investigation Budget and the foregoing, nothing herein shall prevent the Committee from seeking approval of all fees and expenses incurred by its professionals from any unencumbered assets (after taking into account of the DIP Liens, Adequate Protection Liens, Carve-Out, and Permitted Prior Liens and excluding for the avoidance of doubt any IFF Property).

20.  <u>Restriction on Use of Proceeds of Inventory Financing Collateral</u>. For the avoidance of doubt, nothing in this Final Order authorizes the sale or use of Inventory Financing Collateral or proceeds thereof other than Cash Collateral.

21.  <u>Insurance Policies</u>.  Effective as of the date of the First Interim Order, the DIP Lenders are, and are deemed to be, without any further action or notice (including endorsements), named as additional insured and loss payees on each insurance policy maintained by the Debtor which in any way relates to the DIP Collateral.

22.  <u>Collateral Rights</u>.  Except as expressly provided in the Approved Budget or permitted in this Final Order or the DIP Loan Documents, in the event that any person or entity that holds a lien on or security interest in DIP Collateral of the Debtors' estates, that is junior or otherwise subordinate to the DIP Liens receives or is paid the proceeds of such DIP Collateral, prior to indefeasible payment in full in cash and the complete satisfaction of all DIP Obligations under the DIP Loan Documents, and termination of the commitments under the DIP Loan Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold,

the proceeds of any such DIP Collateral of the Debtors' estates, in trust for the DIP Lenders, and shall immediately turnover such proceeds to the DIP Agent for application in accordance with the DIP Loan Documents and this Final Order.  Except as expressly provided in the Approved Budget or permitted in this Final Order or the applicable Prepetition Secured Document, in the event that any person or entity that holds a lien on or security interest in any collateral securing the obligations under any Prepetition Secured Document that is junior or otherwise subordinate to the lien in favor of the applicable Prepetition Secured Parties receives or is paid the proceeds of such collateral prior to indefeasible payment in full in cash and the complete satisfaction of all obligations under the applicable Prepetition Secured Document, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such collateral in trust for the applicable Prepetition Secured Parties, and shall immediately turn over such proceeds to the applicable Prepetition Secured Parties or their respective agents for application in accordance with the relevant Prepetition Secured Document and this Final Order.

23.     <u>Prohibition on Additional Liens</u>.  Except as provided in the DIP Loan Documents, the Prepetition Secured Documents, and this Final Order, the Debtors shall be enjoined and prohibited from, at any time during the Chapter 11 Cases until such time as the DIP Obligations and obligations under the Prepetition Secured Documents have been indefeasibly paid in full, granting liens on or security interests in the DIP Collateral or the collateral securing the obligations under the Prepetition Secured Documents or any portion thereof to any other entities, pursuant to section 364(d) of the Bankruptcy Code or otherwise, which liens are junior to, senior to, or *pari passu* with the DIP Liens, the Prepetition Secured Parties' Adequate Protection Liens, or the liens in favor of the Prepetition Secured Parties.

24.     <u>No Waiver</u>.  This Final Order shall not be construed in any way as a waiver or relinquishment of any rights that any of the DIP Secured Parties or the Prepetition Secured Parties may have to bring or be heard on any matter brought before this Court.

25.     <u>Sale/Conversion/Dismissal/Plan</u>.

(a)     No order providing for either the sale of the ownership of the stock of the Debtors or the sale of all or substantially all of the assets of the Debtors under section 363 of the Bankruptcy Code shall be entered by the Court unless, in connection and concurrently with any such event, (X) the Prepetition Secured Parties consent to the entry of such order and (Y) (i) the proceeds of any DIP Collateral included in such sale shall, subject to the prior satisfaction of any Permitted Prior Liens encumbering such DIP Collateral, be used to indefeasibly pay in full in cash and completely satisfy the DIP Obligations and the obligations under the Secured Financing Documents, and the commitments under the DIP Loan Documents are terminated; (ii) such sale is expressly permitted under the DIP Loan Documents; or (iii) the DIP Agent and Prepetition Secured Parties otherwise consent.

(b)     If an order dismissing or converting the Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code or otherwise or an order appointing a chapter 11 trustee or an examiner with expanded powers is at any time entered:

i.     Unless otherwise agreed to by the DIP Agent, such order shall provide that the Debtors, in each case subject to the Carve-Out and the Permitted Prior Liens, be subject to (a) the DIP Liens, the liens in favor of the Prepetition Secured Parties, the Aron Rights, the DIP Superpriority Claims, the DIP Obligations, the Adequate Protection Liens, and the DIP Loan Documents, which shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in this Final Order until all DIP Obligations

hereunder and all obligations under the DIP Credit Agreement are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Loan Documents are terminated in accordance with the DIP Loan Documents, (b) the Prepetition Liens, Prepetition Secured Parties' Adequate Protection Liens, and any other Adequate Protection Obligations granted or conferred to the Prepetition Secured Parties shall continue in full force and effect, remain binding on all parties-in-interest and maintain their priorities as provided in this Final Order until all Prepetition Secured Obligations are indefeasibly paid in full in cash and completely satisfied (and that such Prepetition Secured Parties' Adequate Protection Liens, and other Adequate Protection Obligations granted to or conferred on the Prepetition Secured Parties shall, notwithstanding such dismissal or conversion, remain binding on all parties) and (c) all postpetition indebtedness, obligation, or liability incurred by the Debtors to the DIP Secured Parties or the Prepetition Secured Parties prior to the date of such order, including, without limitation, the DIP Obligations and the Adequate Protection Obligations, shall be governed in all respects by the original provisions of this Final Order unless the Final Order has been entered, in which case the Final Order shall govern, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Loan Documents,; and

        ii.       to the extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Prepetition Secured Parties' Adequate Protection Liens, the Aron Rights, and any other Adequate Protection Obligations.

26.    <u>Modifications of the Approved Budget</u>.  Without further Order of the Court, the Debtors are hereby authorized to implement, in accordance with the terms hereof and upon the consent of the DIP Agent and each Prepetition Agent (and as to any changes with respect to the

fees and expenses of Committee professionals, with the consent of the Committee, which consent shall not be unreasonably withheld or delayed, or unless such modification is otherwise approved by the Court), any modifications to the Approved Budget with such modification being in writing, *provided, however*, that (a) each Prepetition Agent shall be deemed to have consented to any such modification if it has not objected to the proposed modification (i) within the greater of twenty-four (24) hours and one (1) business day after written email notice of such modification to counsel to such Prepetition Agent, or (ii) in the case of an Emergency Expense (as defined below) in excess of $250,000, within twelve (12) hours after written email notice of such proposed modification to counsel to such Prepetition Agent, and (b) no consent of the Prepetition Agents shall be necessary if each of the following conditions is satisfied:  (i) the chief restructuring officer has certified, in writing, to the DIP Agent and the Prepetition Agents that the expense is necessary to (A) prevent irreparable harm to the value of the Prepetition Collateral or DIP Collateral, or (B) protect against an imminent harm to the public safety (any such certified expense described in the foregoing clauses (A) or (B) an "Emergency Expense"), (ii) such Emergency Expense is less than $250,000, and (iii) the aggregate amount of all Emergency Expenses does not exceed $500,000.

27.     Priority of Terms.  To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Loan Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Final Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the DIP Loan Documents or another document or agreement or words of similar import, the terms and provisions of this Final Order shall govern.

28.     <u>No Third-Party Beneficiary</u>.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

29.     <u>Rights Under Sections 363(k) and 1129(b)</u>.  The full amount of the DIP Obligations or the Prepetition Secured Obligations may be used to "credit bid" for the assets and property of the Debtors (other than any collateral in respect of the J. Aron Obligations) on a dollar-for-dollar basis, as provided for in section 363(k) of the Bankruptcy Code, in accordance with the terms of the DIP Loan Documents and this Final Order, as applicable, without the need for further Court order authorizing the same and whether such sale is (a) pursuant to section 363, (b) pursuant to a plan of reorganization, or (c) by a chapter 7 trustee because, among other things, the denial of such rights would result in the DIP Secured Parties and the Prepetition Secured Parties not receiving the indubitable equivalent of their claims.

30.     <u>Discharge Waiver/Release</u>. Neither the DIP Obligations nor the Adequate Protection Obligations shall be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash, or granted such other treatment as the Debtors and the DIP Secured Parties, in the case of the DIP Obligations, and the Prepetition Secured Parties, in the case of Adequate Protection Obligations, may agree upon, on or before the effective date of such confirmed plan of reorganization.

31.     <u>Preservation of Prepetition Priorities.</u>  Nothing in this Final Order is intended to change or otherwise modify the prepetition priorities among prepetition secured creditors of the Debtors, including (i) any lien or recoupment rights to the extent such liens or rights are valid, enforceable, nonavoidable and perfected, (ii) any claims of the lienholders or any other mechanic

or materialmen to the extent their liens are valid, enforceable, non-avoidable and perfected, including as permitted by section 546(b) of the Bankruptcy Code, or (iii) any relative rights and priorities of the Prepetition Secured Parties in that certain Collateral Agency and Intercreditor Agreement, dated as of November 20, 2018, as it may be amended, modified or supplemented, by and among certain of the Debtors and the Prepetition Agents, and nothing in this Final Order, including the granting of adequate protection liens or DIP Liens, shall be deemed to have changed or modified such prepetition priorities, all of which are hereby expressly preserved. The preservation of prepetition priorities expressly includes lien, setoff, recoupment, contract, and other security rights.

32.     <u>Proofs of Claim</u>.  Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, neither the DIP Agent nor any of the DIP Lenders shall be required to file proofs of claim in the Chapter 11 Cases for any claim allowed herein in or otherwise in relation to the DIP Loan Documents.  In addition, the Prepetition Secured Parties shall not be required to file proofs of claim in the Chapter 11 Cases for any claim allowed herein or otherwise in relation to the Prepetition Secured Obligations, and the stipulations contained Section F and G of this Final Order shall be deemed to constitute a timely-filed proof of claim for the Prepetition Secured Parties in respect of the Prepetition Secured Obligations.

33.     <u>Best Efforts</u>.  If requested to do so by the DIP Agent and consented to by the Prepetition Secured Parties in writing, or by the Prepetition Secured Parties, the Debtors shall use their best efforts (subject to applicable law, including, without limitation, the Debtors' fiduciary duties thereunder) to assist and cooperate with the sale of the DIP Collateral or the collateral securing the obligations under the Prepetition Secured Documents.

34.     <u>No Consent</u>.  No action, inaction, or acquiescence by the DIP Secured Parties, including funding the Debtors' ongoing operations under this Final Order, or the Prepetition Secured Parties shall be deemed to be or shall be considered as evidence of any alleged consent by the DIP Secured Parties or the Prepetition Secured Parties to a charge against the DIP Collateral or the Prepetition Collateral pursuant to sections 506(c), 552(b) or 105(a) of the Bankruptcy Code.

35.     <u>No Marshaling; Equities of the Case.</u>  Except as expressly set forth in paragraphs 6 and 7(a) herein with respect to the proceeds of the Unencumbered Assets, neither the DIP Secured Parties nor the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, the Prepetition Collateral or the liens securing the obligations under the Prepetition Secured Documents.  The "equities of the case" exception of section 552(b) of the Bankruptcy Code shall not apply to the DIP Agent with respect to the DIP Loan Documents and/or the DIP Collateral, and the "equities of the case" exception of section 552(b) of the Bankruptcy Code shall not apply with respect to the Prepetition Secured Parties with respect to the Prepetition Secured Documents and/or the Prepetition Collateral in relation to any proceeds, products, offspring, or profits acquired by the estate or in respect of any obligations of the estate incurred prior to the date that is the earlier of (x) the end of the Approved Budget, as amended form time to time, and (y) the termination of the Debtors' right to use Cash Collateral following a Cash Collateral Termination Event, unless the Debtors' right to use Cash Collateral is renewed or extended, subject to all parties' rights at such time to seek and/or defend against further waiver.

36.     <u>Section 506(c) Waiver.</u>  No costs or expenses of administration or other charge, lien, assessment, or claim incurred at any time (including any expenses set forth in the Approved Budget) by any Debtors or any other person or entity shall be imposed against any or all of the

DIP Secured Parties or the Prepetition Secured Parties, their respective claims, or their respective collateral under Section 506(c) of the Bankruptcy Code or otherwise, and the Debtors, on behalf of their estates, waive any such rights; provided, that, notwithstanding the foregoing, the foregoing waiver shall only apply to costs and expenses of administration (including, without limitation, any professional fees, commissions, transactional, success or similar fees), which have been or may be incurred or accrued in these Chapter 11 Cases or any successor case at any time, or costs and expenses incurred in connection with the preservation, protection, disposal or enhancement of, or realization by the Prepetition Secured Parties upon the Collateral in each case prior to the date that is the earlier of (x) the end of the Approved Budget, as amended form time to time, and (y) the termination of the Debtors' right to use Cash Collateral following a Cash Collateral Termination Event, unless the Debtors' right to use Cash Collateral is renewed or extended, subject to all parties' rights at such time to seek and/or defend against further waiver.  Notwithstanding anything contained herein to the contrary, (i) nothing contained herein shall enlarge the scope of the costs or expenses that may be surcharged pursuant to section 506(c) of the Bankruptcy Code, and (ii) nothing contained herein or the transactions contemplated hereby (including, without limitation, the approval of any Budget or the consent to the terms of this Final Order) shall constitute an admission or be deemed an admission, and no action, inaction or acquiescence by the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties (including, without limitation, the approval of any Budget or consent to the terms of this Final Order) shall be deemed to be or shall constitute an admission (nor shall any consent be implied from any action, inaction or acquiescence by, either with or without notice to, the Prepetition Secured Parties) to any charge, lien, assessment or claim (excluding the Carve Out) against any of the DIP Agent, DIP Lenders or Prepetition Secured Parties or to any of their respective claims, the Carve Out, the DIP Collateral (including Prepetition

Collateral), whether pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise.  The

Prepetition Secured Parties reserve all rights to challenge or assert any defense in relation to any

attempt to surcharge pursuant to section 506(c) or otherwise.

37.    <u>Indemnification</u>.  The indemnification provisions set forth in Section 10.02 of the

DIP Credit Agreement are hereby approved.

38.    [reserved]

39.    <u>No Duty to Monitor Compliance</u>.  The DIP Agent, DIP Lenders and the Prepetition

Secured Parties may assume the Debtors will comply with this Final Order and the Approved

Budget and shall not (a) have any obligation with respect to the Debtors' use of Cash Collateral or

proceeds of the DIP Financing (other than their consent to the use of Cash Collateral or proceeds

of the DIP Financing in accordance with and subject to terms of this Final Order); (b) be obligated

to directly pay any expenses incurred or authorized to be incurred pursuant to this Final Order

(including any amounts specified in the Approved Budget); or (c) be obligated to ensure or monitor

that sufficient Cash Collateral or proceeds of the DIP Financing exists to pay any expenses incurred

or authorized to be incurred pursuant to this Final Order.

40.    <u>Adequate Notice</u>.  The notice given by the Debtors of the Final Hearing was given

in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the Bankruptcy Local Rules.  Under

the circumstances, no further notice of the request for the relief granted at the Final Hearing is

required.

41.    <u>Binding Effect Successors and Assigns</u>.  Except as set forth in paragraph 42 of this

Final Order, the DIP Loan Documents and the provisions of this Final Order, including all findings

herein, shall be binding upon all parties-in-interest in this Chapter 11 Cases, including, without

limitation, the DIP Secured Parties, the Prepetition Secured Parties, the Committee or examiner

appointed in these Chapter 11 Cases, and the Debtors, and their respective successors and assigns (including any trustee or fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estate of the Debtors) whether in these Chapter 11 Cases, in any Successor Cases, or upon any dismissal of any such chapter 11 or chapter 7 case and shall inure to the benefit of the DIP Secured Parties, the Prepetition Secured Parties and the Debtors, and their respective successors and assigns, *provided*, *however*, that the agreement of the DIP Secured Parties to extend financing under the DIP Loan Documents and the Prepetition Secured Parties' consent to the use of Cash Collateral, in each case, shall terminate upon the appointment of any chapter 7 or 11 trustee, examiner with expanded powers, or similar responsible person appointed for the estates of the Debtors.  In determining to make any loan (whether pursuant to the DIP Loan Documents, a promissory note, or otherwise), consenting to the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Loan Documents, the DIP Secured Parties and the Prepetition Secured Parties shall not (i) be deemed to be in control of the operations of the Debtors, or (ii) owe any fiduciary duty to the Debtors, or their creditors, shareholders, or estates.  Except as set forth in paragraph 42 of this Final Order, each stipulation, admission, and agreement contained in sections E, F, G and I of this Final Order shall also be binding upon all persons and entities, including the Debtors, their estates, any Committee, or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors or any other person acting on behalf of the Debtors' estates, under all circumstances and for all purposes, subject to the Challenge Period as defined below.

42.    Effect of Stipulations.  The stipulations, waivers and releases contained in sections F, G, and I of this Final Order with respect to the Prepetition Secured Parties (the "Debtors' Stipulations") shall be binding upon the Debtors and their estates in all circumstances immediately

upon the date of the First Interim Order.  The Debtors' Stipulations shall be binding upon each party in interest (other than the Debtors and their estates), including the Committee, and any chapter 11 trustee (or if any of these Chapter 11 Cases are converted to a case under chapter 7 prior to the expiration of the Challenge Period (defined below), the chapter 7 trustee in such Successor Case), together with each of their respective representatives, subsidiaries, successors and assigns, unless (a) such party (subject in all respects to any agreement or applicable law which may limit or affect such entity's right or ability to do so), with the requisite standing granted by the Court, has timely and properly filed an adversary proceeding by no later than the date that is the earlier of (i) the effective date of a confirmed chapter 11 plan, and (ii) subject to paragraph 9(e), the day that is sixty (60) days from the date of the entry of the First Interim Order (or, in the case of the Committee, sixty (60) days from the date of the appointment of the Committee (as such date may be extended by the applicable Prepetition Secured Party in writing or by order of the Court)) (the "Challenge Period"), provided that: (1) to the extent a movant files and serves a request to extend the Challenge Period prior to its expiration, the Challenge Period shall be extended solely with respect to that movant until the Court rules on such motion (which any party may seek to have resolved on an emergency or expedited basis), provided that the Challenge Period shall not be so extended with respect to any Credit Bid Challenge, and (2) if the Chapter 11 Cases are converted to chapter 7 or a chapter 11 trustee is appointed or elected prior to the expiration of the Challenge Period, the Challenge Period shall be automatically extended if necessary to provide such Trustee with a Challenge Period of twenty (20) days from the date of his appointment;  (x) objecting to or challenging the amount, validity, perfection, enforceability, priority, or extent of the debt or liens referenced in the Debtors' Stipulations (including those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code) or otherwise objecting to the admissions, stipulations,

findings, or releases included in the Debtors' Stipulations; or (y) otherwise asserting or prosecuting any cause of action for preferences, fraudulent transfers or conveyances, or any cause of action challenging the actions or inactions of any of the Prepetition Secured Parties, including any claim against any or all of the Prepetition Secured Parties in the nature of a "lender liability" cause of action, or any other offsets, setoffs, recoupments, challenges, objections, defenses, claims, counterclaims, or causes of action of any kind or nature, whether in these Chapter 11 Cases or any subsequent chapter 7 cases, against any of the Prepetition Secured Parties on behalf of the Debtors' estates, including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law (clauses (x) and (y) collectively, the "Challenges" and, each individually, a "Challenge"); and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such Challenge in any such duly filed adversary proceeding; provided, that, as to the Debtors, all such Challenges and proceedings are hereby irrevocably waived and relinquished as of the Petition Date. Notwithstanding the foregoing, in the case of the Committee, the Challenge Period with respect to (i) any Challenge concerning the Prepetition Secured Holdco Debt Obligations or against the Prepetition Holdco Loan Parties and (ii) any Challenge described in clause (y) above against any of the Prepetition Secured Parties other than J. Aron shall be extended to November 30, 2021. Any complaint or motion for standing filed in, or in connection with, any Challenge proceeding shall set forth with specificity the basis for such Challenge and any Challenges not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released, and barred. If no adversary proceeding or contested matter is timely filed prior to the expiration of the Challenge Period or the court does not rule in favor of the plaintiff in any such Challenge proceeding, without further order of the Court: (v) the Debtors'

Stipulations, including the releases, shall be binding on all parties in interest including, without limitation, the Committee, and any trustee (including any chapter 7 trustee); (w) any and all Challenges by any party in interest shall be deemed to be forever released, waived, and barred; (x) the claims of the Prepetition Secured Parties shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, offset, any cause of action of any kind, challenge, or defense (including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law), for all purposes in these Chapter 11 Cases and any subsequent chapter 7 case; (y) the liens of the Prepetition Secured Parties shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, recharacterization, subordination, or avoidance; and (z) the Prepetition Secured Parties (and their respective agents, affiliates, subsidiaries, directors, officers, manager, representatives, attorneys, and advisors) shall not be subject to any other or further Challenge or investigation in respect of any Challenge by any person.  If any such adversary proceeding is timely filed prior to the expiration of the Challenge Period, the Debtors' Stipulations, shall nonetheless remain binding and preclusive on the Committee, and any parties in interest, including any trustee, except as to any such findings and admissions that were expressly challenged in such adversary proceeding (it being understood that any non-challenging parties are bound).  Nothing in this Final Order vests or confers on any person, including the Committee, standing or authority to pursue any claims or cause of action belonging to the Debtors or their estates, including, without limitation, a Challenge in a Challenge proceeding.  For the avoidance of doubt and notwithstanding the foregoing, (i) the Debtors' stipulations, admissions, and releases contained in Paragraph E of this Final Order will not be subject to a Challenge or the Challenge Period, and (ii) the DIP Secured Parties agree they will not file a Challenge and will not join in, fund, solicit, encourage or support

any Challenge or request to extend the Challenge Period, *provided, however*, that, in the event of a successful Challenge by a party other than the DIP Secured Parties, any property that would otherwise constitute DIP Collateral pursuant to the terms hereof shall, in fact, become DIP Collateral, and the DIP Liens shall attach thereto in the same order and priority as set forth herein. In the event that there is a timely successful Challenge brought pursuant to this paragraph, the Court shall retain jurisdiction to fashion an appropriate remedy.

(a)     For the avoidance of doubt, the Challenge and Challenge Period shall not apply to any claims or causes of the Debtors with respect to the Insider Creditors.

(b)     The Challenge Period will be tolled for the Committee if it formally moves for an order of this Court conferring standing or authority (the "Standing Motion") prior to the Challenge Period, from the date the Committee so moves until five (5) business days from the date that the Standing Motion is granted or the date when the Standing Motion is denied pursuant to an Order of the Court; *provided*, that the Challenge Period: (a) will only be tolled if such Standing Motion attaches a proposed complaint identifying the specific Challenge(s) that the Committee proposes to assert and the defendant(s) against whom such Challenge(s) are proposed to be asserted, and (b) will only be tolled with respect to such Challenge(s) and defendant(s) specifically identified therein.  Nothing in the Prior Interim Orders or herein shall limit the Committee's ability to (x) file a timely Standing Motion in respect of any timely Challenge for which it cannot obtain standing as a matter of law because the applicable Debtor is a limited liability company (an "LLC Challenge Motion"), and (y) seek pursuant to such LLC Challenge Motion a mechanism by which to prosecute such Challenge, provided that the Committee otherwise satisfies the requirements set forth in this paragraph 42.  In the event the Committee files a timely LLC Challenge Motion for which it cannot obtain standing, and provided that the Committee otherwise satisfies the

requirements set forth in this paragraph 42, the expiration of the Challenge Deadline solely for the specific Challenge set forth in the LLC Challenge Motion, and solely as to the defendant(s) named therein, shall be tolled pending further order of the Court, and applicable parties shall meet and confer with respect to an appropriate process (if any) for the prosecution of any such Challenge. If timely notified of a Challenge for which the Committee cannot gain standing because the applicable Debtor is a limited liability company, the Debtors (or a designated representative) shall, to the extent permitted by applicable law, retain the authority to prosecute such Challenge in the exercise of their business judgment and subject to any applicable further order of the Court.

(c)      Any Challenge, Standing Motion, or LLC Standing Motion commenced by the Committee (the "Committee Action") may be pursued by any chapter 7 trustee in these Cases (a "Chapter 7 Trustee"), appointed subsequent to the filing of the Committee Action, in the Trustee's sole and exclusive discretion.  The filing of a *Notice of Substitution of Trustee* for and in the stead of the Committee in the Committee Action, shall be automatically effective upon filing, without further Order of the Court, and the Chapter 7 Trustee shall be deemed automatically substituted for the Committee, which substitution shall be deemed retroactive to the date of the filing of the Committee Action.

43.     Terminal Entities.

(a)      To the extent any of the Terminal Entities[8] have Permitted Prior Liens on Product or goods (as defined under the Uniform Commercial Code) or the proceeds thereof under

---

[8]     "Terminal Entities" shall mean, collectively or individually, Limetree Bay Terminals, LLC, Limetree Bay Terminal Holdings, LLC, Limetree Bay Terminal Holdings II, LLC, and Limetree Bay Cayman, Ltd.

the Non-Included Locations TSA[9] (the "Terminal Liens"), the Section 364(d)(1) Liens shall be junior to the Terminal Liens on such property.

(b)     To the extent any of the Terminals Entities hold a valid, perfected, and unavoidable liens on any DIP Collateral in existence as of the Petition Date, and solely to the extent of any diminution in value of such liens, if any, the Terminals Entities shall receive replacement liens for such diminution to the same extent validity and priority as their prepetition liens.   Nothing in this Final Order shall be a determination of the validity, priority, or extent of any lien or claim asserted by the Terminals Entities, and the rights of all parties as to such issues are preserved.  For the avoidance of doubt, any such replacement liens will not attach to the IFF Property, the Unencumbered Assets, or any proceeds thereof.

(c)     Administrative Expense: The Debtors shall make cash payments as set forth in the Approved Budget to the Terminal Entities for post-petition services provided by the Terminal Entities under the Terminal Services Agreements, subject to any further order of this Court with respect to rejection of the Terminal Services Agreements.[10]  Such weekly payments shall be due on Mondays.   The Terminal Entities reserve all of their rights to assert an administrative expense claim for additional amounts owed under the Terminal Services Agreements for the period after the Petition Date, and the rights of the Debtors and all other parties

---

[9]     As that term is defined in the Objection and Reservation of Rights of Terminal Entities to Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-Petition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (IV) Approving Adequate Protection to Pre-Petition Secured Creditors, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing [Docket No. 252].

[10]    "Terminal Services Agreement" shall mean, collectively, the Terminal Services Agreement (Included Locations) among Limetree Bay Terminals, LLC, Limetree Bay Refining Marketing, LLC and J. Aron dated March 3, 2020 and the Terminal Services Agreement (Non-Included Locations) between Limetree Bay Terminals, LLC and Limetree Bay Refining Marketing, LLC dated March 3, 2020.

in interest to contest the amount or validity of any such administrative expense are expressly reserved and fully preserved.   All rights with respect to applicability of setoff rights are reserved.

(d)        Limitation on DIP Liens:  For the avoidance of doubt, the DIP Collateral shall not include any property to the extent that it does not constitute property of the Debtors' estates within the scope of 11. U.S.C. § 541, and shall not include the Terminal Entities' interest in any property that is jointly owned by the Debtors (or any of them) and Terminal Entities (or any of them) and no liens granted pursuant to this Order shall attach to the Terminal Entities' interest in any property jointly owned with the Debtors.

44.      <u>Resolution of Objection by the United States of America</u>.

(a)        Notwithstanding anything to the contrary in the Prior Interim Orders, this Final Order or the DIP Loan Documents, nothing in this Final Order, the Prior Interim Orders or the DIP Loan Documents shall relieve the Debtors of any obligations under federal, state, territorial, or local police or regulatory laws or under 28 U.S.C. § 959(b), provided that nothing herein shall limit or impair the Debtors' rights to assert defenses under applicable law and nothing herein shall create new defenses to obligations under police or regulatory laws or 28 U.S.C. § 959(b).

(b)        Notwithstanding anything to the contrary in the Prior Interim Orders, this Final Order, or the DIP Loan Documents, nothing in this Final Order, the Prior Interim Orders or the DIP Loan Documents shall impair or adversely affect the United States of America's rights, claims and defenses of set-off and recoupment, if any, or any of its agencies, departments or agents, if any, and all such rights, claims and defenses, if any (the "<u>Setoff/Recoupment Rights</u>") shall be preserved in their entirety; *provided, however*, that the exercise of any such Setoff/Recoupment Rights must be in accordance with the Bankruptcy Code, Bankruptcy Rules, and Local Rules;

*provided further, however*, that (a) exercise of such Setoff/Recoupment Rights shall not impair or adversely affect the rights of the DIP Secured Parties and the Prepetition Secured Parties, as applicable, to assert remedies (if any) with respect to any Event of Default or Cash Collateral Termination Event, as applicable, in the event any such governmental unit exercises any such Setoff/Recoupment Rights, (b) nothing in this paragraph shall limit the right of any party in interest to challenge the Setoff/Recoupment Rights of any such governmental unit, and (c) nothing in the Prior Interim Orders, this Final Order, or the DIP Loan Documents shall modify or determine the rights or priority of any governmental unit's Setoff/Recoupment Rights vis-à-vis the rights and liens of the DIP Secured Parties and the Prepetition Secured Parties, as applicable, and all rights of the governmental units and the DIP Secured Parties and Prepetition Secured Parties with respect to the determination of such rights or priority (to the extent such priority is a disputed issue) are preserved.

(c)     With respect to environmental liabilities to any governmental unit, to the extent that the actions of the DIP Secured Parties or Prepetition Secured Parties constitute, within the meaning of 42 U.S.C. § 9601(20)(F) and (G), actual participation in the management or operational functions of a vessel or facility owned or operated by the Debtors, the rights of such governmental unit under applicable laws are preserved, and all rights of the DIP Secured Parties and the Prepetition Secured Parties to contest such liability or status under applicable law are preserved.  For the avoidance of doubt, in determining to make any loan or other extension of credit under the DIP Credit Agreement, permitting the use of Cash Collateral, performing under the Prior Interim Orders, the Final Order and the DIP Loan Documents in the ordinary course, no DIP Secured Party or Prepetition Secured Party shall be deemed to have participated in the management or operational functions of a vessel or facility owned or operated by the Debtors, or

to have otherwise caused lender liability to arise or assumed the status of control, responsible person, owner, or operator provided, however, that participating in management within the meaning of 42 U.S.C. § 9601(20)(F) and (G) would not be ordinary course performance.

(d)     Within one business day of any modification to the Approved Budget, the Debtors must provide notice of the modified budget to the United States by e-mail through its counsel.

45.     <u>Reservation of Rights of Universal Plant Services (VI), LLC AltairStrickland V.I., LLC, Vivot Equipment Corporation and Virgin Islands Industrial Services, LLC</u>.  Notwithstanding anything in the Prior Interim Orders or this Final Order indicating to the contrary, nothing in the Prior Interim Orders or this Final Order will change or otherwise modify the prepetition priority of (i) any statutory liens, and (ii) any other rights and/or claims of Universal Plant Services (VI), LLC ("<u>UPS</u>"), AltairStrickland V.I. LLC ("<u>AltairStrickland</u>"), Vivot Equipment Corporation ("<u>Vivot</u>") and Virgin Islands Industrial Services, LLC ("<u>VIIS</u>") (collectively, the "<u>Construction Lien Objectors</u>"), whose rights, if any, are hereby expressly preserved, except with respect to the DIP Liens granted to the DIP Secured Parties under the circumstances set forth in this paragraph. To the extent that a Construction Lien Objector has a lien on any DIP Collateral as of the Petition Date that is valid, enforceable, nonavoidable, and perfected, including as permitted by section 546(b) of the Bankruptcy Code, and such lien (or any amount owed associated with such lien) was senior in priority to any of the Prepetition Secured Parties Liens, such lien shall be treated as a Permitted Prior Lien and shall not be junior in priority to the DIP Liens or subordinated to any other liens created under this Order, including adequate protection liens granted to any party. The Construction Lien Objectors reserve their rights and nothing in this Final Order limits their rights, if any, to request adequate protection equal to the diminution in value of their interest in collateral,

if any, or seek other legal and equitable remedies with respect to the Debtors' assets. Each of the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties' rights to contest or otherwise object to such request or exercise of legal or equitable remedies or to any assertion of liens, interest or other claims of the Construction Lien Objectors are hereby reserved.

46.     <u>Headings</u>.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

47.     <u>Effect of this Final Order</u>.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 and 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

48.     <u>Retention of Jurisdiction</u>.  This Court retains jurisdiction with respect to all matters arising from or related to the DIP Loan Documents and the implementation of this Final Order.

**Signed:  August 27, 2021.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

**<u>Exhibit A</u>**

**Approved Budget**

**Limetree Bay Refinery**

**Proposed 8.20 Budget Forecasted Results of Operations and Cash Flows**

Wks Beginning  _8/9/21_  thru  _10/25/21_

| | | Actuals | | Budgeted | | | | | | | | | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week -----> | | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | |
| Beginning of Week | | 8/9/21 | 8/16/21 | 8/23/21 | 8/30/21 | 9/6/21 | 9/13/21 | 9/20/21 | 9/27/21 | 10/4/21 | 10/11/21 | 10/18/21 | 10/25/21 | |
| End of Week | | 8/15/21 | 8/22/21 | 8/29/21 | 9/5/21 | 9/12/21 | 9/19/21 | 9/26/21 | 10/3/21 | 10/10/21 | 10/17/21 | 10/24/21 | 10/31/21 | |
| **Cash Receipts** | | | | | | | | | | | | | | |
| BP | [1] | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Excess Construction Material | [2] | 62 | - | 100 | - | 600 | - | 100 | 500 | - | - | 100 | 500 | 1,962 |
| Est. J. Aron Proceeds/Lien Release | | - | - | - | - | - | - | - | - | 18,008 | - | 20,000 | - | 38,008 |
| Resale of Flushing Oil | | - | - | - | - | - | - | 840 | - | - | - | - | - | 840 |
| Insurance Proceeds - TBD | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Sale of Spare Parts | | - | - | - | - | - | - | - | - | - | - | 2,500 | | 2,500 |
| Asset Sale - TBD | [3] | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total     Cash Receipts** | | $ 62 | $ - | $ 100 | $ - | $ 600 | $ - | $ 940 | $ 500 | $18,008 | $ - | $20,100 | $ 3,000 | $ 43,311 |
| **Cash Disbursements** | | | | | | | | | | | | | | |
| Payroll / Benefits | | $ 1,384 | $ 134 | $ 1,268 | $ 324 | $ 1,259 | $ - | $ 1,234 | $ - | $ 201 | $ - | $ - | $ - | $ 5,804 |
| Fuel | | 365 | 349 | 390 | 390 | 390 | 390 | 390 | 195 | 195 | 195 | 195 | 195 | 3,639 |
| Maintenance and Other Outside Services | | 430 | 218 | 298 | 298 | 298 | 298 | 30 | 30 | 30 | 30 | 30 | 30 | 2,018 |
| Insurance | [4] | - | - | 571 | - | - | - | - | - | 353 | - | - | 311 | 1,235 |
| Utilities / Water | | - | - | 403 | - | - | - | 403 | - | - | - | 403 | - | 1,208 |
| IT Support / Software / Hardware | | - | 121 | 159 | 141 | 8 | 16 | 64 | 141 | 8 | 2 | 50 | - | 709 |
| Environmental / Safety | | - | - | 184 | - | - | 184 | - | - | - | 184 | - | - | 552 |
| Building / Site Maintenance | | - | - | 79 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 435 |
| Limetree Village Costs | | - | - | 54 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 144 |
| Admin Services | | 167 | 78 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 797 |
| Misc | | 0 | - | 81 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 448 |
| Relocation Costs | | - | 544 | - | 1,392 | - | - | - | - | 617 | - | - | - | 2,554 |
| Community Incident Response | [5] | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Limetree Bay Terminal Services | | 150 | 150 | 150 | 150 | 150 | - | - | - | - | - | - | - | 750 |
| EPA Mandated Equipment Purchase | | 89 | - | - | - | - | - | - | - | - | - | - | - | 89 |
| EPA Mandated Independent Observer | | - | - | 30 | - | 30 | - | 30 | - | 30 | - | 30 | - | 150 |
| Utility Adequate Assurance Payment | | - | - | 403 | - | - | - | - | - | - | - | - | - | 403 |
| Flare Repair | | 78 | 50 | - | - | - | - | - | - | - | - | - | - | 128 |
| Hydrocarbon Removal | [6] | 344 | 849 | 310 | 310 | 310 | 1,010 | 310 | 310 | 310 | 310 | 310 | 310 | 4,994 |
| **Total     Cash Disbursements** | | $ 3,006 | $ 2,493 | $ 4,435 | $ 3,151 | $ 3,290 | $ 1,343 | $ 2,606 | $ 822 | $ 1,890 | $ 866 | $ 1,164 | $ 992 | $ 26,056 |
| **Operating Cash Flow** | | $ (2,944) | $ (2,493) | $ (4,335) | $ (3,151) | $ (2,690) | $ (1,343) | $ (1,666) | $ (322) | $16,118 | $ (866) | $18,936 | $ 2,008 | $ 17,255 |

**Limetree Bay Refinery**

Proposed 8.20 Budget Forecasted Results of Operations and Cash Flows

Wks Beginning  _8/9/21_  thru  _10/25/21_

| | | | Actuals | | Budgeted | | | | | | | | | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week -----> | | | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | |
| Beginning of Week | | | 8/9/21 | 8/16/21 | 8/23/21 | 8/30/21 | 9/6/21 | 9/13/21 | 9/20/21 | 9/27/21 | 10/4/21 | 10/11/21 | 10/18/21 | 10/25/21 | |
| End of Week | | | 8/15/21 | 8/22/21 | 8/29/21 | 9/5/21 | 9/12/21 | 9/19/21 | 9/26/21 | 10/3/21 | 10/10/21 | 10/17/21 | 10/24/21 | 10/31/21 | |
| **Other (Sources) / Uses** | | | | | | | | | | | | | | | |
| DIP Financing Costs | [7] | | $   50 | $   - | $   - | $   - | $   51 | $   - | $   - | $   - | $   42 | $   500 | $   - | $   500 | $   1,143 |
| Insurance Claims Professionals | | | - | - | - | 50 | - | - | - | - | 50 | - | - | 50 | 150 |
| Term Lender Agent Fee | | | - | - | 50 | - | - | - | - | - | - | - | - | - | 50 |
| Engineering Professionals (Turner Mason) | | | - | - | 150 | - | - | - | - | - | - | - | - | - | 150 |
| _Total_  Other (Sources) / Uses | | | 50 | - | 200 | 50 | 51 | - | - | - | 92 | 500 | - | 550 | 1,493 |
| **Net Cash Flow Before Professional Fees** | | | (2,994) | (2,493) | (4,535) | (3,201) | (2,741) | (1,343) | (1,666) | (322) | 16,026 | (1,366) | 18,936 | 1,458 | $ 15,761 |
| **Professional Fees** | | | | | | | | | | | | | | | |
| Debtor Legal | | | $   - | $   - | $   - | $   - | $   - | $   - | $   - | $   - | $   800 | $   - | $   - | $   800 | $   1,600 |
| DIP Lender Counsel | | | - | - | 50 | - | 200 | - | - | - | 200 | - | - | 200 | 650 |
| Debtor Chief Restructuring Officer | | | - | - | - | - | - | - | - | - | 280 | - | - | 280 | 560 |
| UCC Legal and Financial Advisor | | | - | - | - | - | - | - | - | - | 600 | 350 | - | - | 950 |
| Term Lender Professionals | | | - | - | - | - | - | - | - | - | 250 | - | - | - | 250 |
| Independent Director | | | - | - | - | - | - | - | - | - | 15 | - | - | - | 15 |
| Revolver Counsel | | | - | - | - | - | - | - | - | - | 100 | - | - | - | 100 |
| US Trustee Fees | | | - | - | - | - | - | - | - | - | - | - | 250 | - | 250 |
| Investment Banker | | | - | - | - | 100 | - | - | - | - | 100 | - | - | - | 200 |
| BMC - Claims Agent | | | - | - | - | - | - | - | - | - | 50 | - | - | - | 50 |
| _Total_ | | | $   - | $   - | $   50 | $   100 | $   200 | $   - | $   - | $   - | $ 2,395 | $   350 | $   250 | $ 1,280 | $ 4,625 |
| **Net Cash Flow** | | | $ (2,994) | $ (2,493) | $ (4,585) | $ (3,301) | $ (2,941) | $ (1,343) | $ (1,666) | $ (322) | $13,631 | $ (1,716) | $18,686 | $ 178 | $ 11,136 |
| _Accumulated_ | | | $ (2,994) | $ (5,487) | $ (10,071) | $ (13,372) | $ (16,313) | $ (17,656) | $ (19,321) | $ (19,643) | $ (6,012) | $ (7,728) | $ 10,958 | $ 11,136 | |
| **Beginning Cash Balance** | | | $ 956 | $ 7,962 | $ 5,469 | $ 884 | $ 5,583 | $ 2,642 | $ 1,300 | $ 1,134 | $ 813 | $14,443 | $ 7,727 | $18,914 | |
| **Net Cash Flow** | | | (2,994) | (2,493) | (4,585) | (3,301) | (2,941) | (1,343) | (1,666) | (322) | 13,631 | (1,716) | 18,686 | 178 | |
| **DIP Draw** | | | 10,000 | - | - | 8,000 | - | - | 1,500 | - | - | - | - | - | |
| **DIP (Paydown)** | | | - | - | - | - | - | - | - | - | - | (5,000) | (7,500) | (12,500) | |
| **Ending Book Cash Balance** | | | $ 7,962 | $ 5,469 | $ 884 | $ 5,583 | $ 2,642 | $ 1,300 | $ 1,134 | $ 813 | $14,443 | $ 7,727 | $18,914 | $ 6,592 | $ 6,592 |
| **Ending DIP Balance** | | | $15,500 | $15,500 | $15,500 | $23,500 | $23,500 | $23,500 | $25,000 | $25,000 | $25,000 | $20,000 | $12,500 | $   - | $   - |
| _Debtor Professional Fees Accrued (Cumulative)_ | | | $ 1,558 | $ 1,869 | $ 2,181 | $ 2,492 | $ 2,804 | $ 3,115 | $ 3,427 | $ 3,738 | $ 2,970 | $ 3,282 | $ 3,593 | $ 2,825 | |
| _UCC Professional Fees Accrued (Cumulative)_ | | | $ 279 | $ 371 | $ 464 | $ 557 | $ 650 | $ 743 | $ 836 | $ 929 | $ 421 | $ 164 | $ 257 | $ 350 | |

[1] - The Debtors have outstanding invoices to BP in the amount of approximately $32 million in respect of operational expenses incurred during the months of August 2020 through the present, under the Tolling Agreement.  Such invoices are disputed by BP.  These amounts are not included in the 12-week projection period as the CRO is currently investigating the validity of these outstanding amounts as well as the validity of any set-off claims.

[2] - Additional $2.0 million in collections are projected after the 13-week period.

[3] - USVI holds a letter of credit in the amount of $50 million split 50/50 between LB Terminals and LB Refining.  Under the Operating Agreement such amounts can be used for payment defaults and environmental assurances.

[4] - Existing premiums; coverages are currently under review with agents.

[5] - Subject to mediation.

[6] - More spend after this period anticipated in order to complete hydrocarbon removal.  Budgeting currently in process.

[7] - Assumes DIP Draws of $5.5 million on 7/12/2021, $10.0 million on 8/9/2021, $8.0 million on 8/30/2021, and $1.5 million on 9/20/2021, and DIP Repayments of $5.0 million on 10/11/2021, $7.5 million on 10/18/2021, and $12.5 million on 10/25/2021.  Assumes an annual cash interest rate of 3.0%, annual PIK interest rate of 9.0%, annual delayed draw interest of 1.5%, and an agent fee of 0.25% on the total commitment amount.

## Limetree Bay Services LLC *et al.*

**Cash Budget Assumptions - 12 weeks through October 31, 2021**

| Budget Line Item | 12 Wk Totals | Assumption |
|---|---|---|
| **Cash Receipts** | | |
| Excess Construction Material | $  1,962 | Net proceeds on sale of surplus materials previously purchased for refinery restart. |
| Est. J. Aron Proceeds/Lien Release | 38,008 | Week 13 receipt estimates net proceeds to be released from J. Aron inventory less amounts owed; Week 15 receipt projects catalyst sale proceeds. |
| Resale of Flushing Oil | 840 | Proceeds on sale of flushing oil used in hydrocarbon removal process; assumes realization of 80% of cost. |
| Sale of Spare Parts | 2,500 | Estimate of proceeds from sale of spare parts; installment as part of liquidation scenerio only. |
| **Operating Cash Disbursements** | | |
| Payroll / Benefits | 5,804 | Wages, benefits, 1099 contractors (including shared employees with LBT).  Current run rate less 10% attrition per bi-weekly pay period.  Conversion to contractors at 9/18 (end of WARN notice period). |
| Fuel | 3,639 | 540 barrels of diesel fuel at $95/barrel used through week 11 (approximately 42% of total LBR + LBT use).  Reduced by half from weeks 12-16 aligned with labor reductions. |
| Maintenance and Other Outside Services | 2,018 | Current run rates through mid-September with significant reductions thereafter aligned with wind-down.  Remainder focused on health and safety. |
| Insurance | 1,235 | Existing coverages |
| Utilities / Water | 1,208 | Current run rate costs of approximately $400k per month. |
| IT Support / Software / Hardware | 709 | Payments for ongoing and necessary software and hardware maintenance costs. |
| Environmental / Safety | 552 | Emergency response supplies and equipment, waste disposal, environmental licenses. |
| Building / Site Maintenance | 435 | Gasoline/diesel fuel for maintenance department, fleet garage costs. |
| Limetree Village Costs | 144 | Costs to wind down onsite meals and lodging facility.  Assume reduction to basic maintenance effective week ending 9/5. |
| Admin Services | 797 | Pinnacle and shared services costs assumed to ramp down aligned with wind down of refinery. |
| Misc | 448 | Freight, office supplies, security, and misc costs. |
| Relocation Costs | 2,554 | Assumes relocation for 80 employees and families to mainland. |
| Limetree Bay Terminal Services | 750 | Storage payments to Terminals of $150k per week through week ended 9/12. |
| EPA Mandated Equipment Purchase | 89 | Requried equpment purchased week ended 8/15. |
| EPA Mandated Independent Observer | 150 | $30k bi-weekly for monitoring. |
| Utility Adequate Assurance Payment | 403 | One month adequate assurance deposit for waste water, internet, telephone, internet and gas |
| Flare Repair | 128 | Required repairs completed as of 8/22. |
| Hydrocarbon Removal | 4,994 | Assumes six month process. $310k per week plus 5,000 barrel flush in week ended 8/22 and 10,000 barrel flush in week ended 9/12. |
| **Other Sources/Uses** | | |
| DIP Financing Costs | 1,143 | DIP Lender fees and interest |
| Insurance Claims Professionals | 150 | Claro Group engaged to review insurance coverages and claims  Retention application to follow. |
| Term Lender Agent Fee | 50 | Per agreement. |
| Engineering Professionals (Turner Mason) | 150 | Remaining budgeted payments to Turner Mason for engineering study - re-start costs and alternative uses for sale process. |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| LIMETREE BAY SERVICES, LLC, *et al.*,[1] | CASE NO.: 21-32351 |
| Debtors. | (Jointly Administered) |

## DISCLAIMER REGARDING DEBTORS' SCHEDULES AND SOFA

### General Disclaimer

1.      The Schedules and the SOFA are unaudited and subject to potential adjustment.  In preparing the Schedules and the SOFA, the CRO and his professionals relied on financial data derived from the Debtors' books and records that was available at the time of preparation.  The CRO and his professionals have made reasonable efforts to ensure that the Schedules and the SOFA are as accurate and complete as possible under the circumstances; however, subsequent information or discovery may result in changes to the Schedules and SOFA and errors or omissions may exist.

2.      The CRO reserves all rights to amend or supplement the Schedules and SOFA from time to time, in all respects, as may be necessary or appropriate, including the right to dispute or otherwise assert offsets or defenses to any claim reflected on the Schedules and SOFA as to any amount, liability, classification, identity of debtor or to otherwise subsequently designate any claim as "disputed", "contingent", or "unliquidated". Furthermore, nothing

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC.(1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

4840-8042-7514.1

contained in the Schedules and SOFA shall constitute a waiver of any of the CRO's rights or an admission with respect to these chapter 11 cases, including any issues involving objections to claims, substantive consolidation, defenses, affirmative claims against third parties or rights against third parties, other issues that typically arise under the Bankruptcy Code.

## Notes on Schedules of Assets and Liabilities

## Method of Valuation

3.      Unless otherwise noted, the carrying value on the Debtors' books and records (net book value) as of the Petition Date, rather than the current market values, of the Debtors' interest in the property and of the Debtors' liabilities, is reflected on the Debtors' Schedules and SOFA.  The net book value may not correspond to market value, or liquidation value, of which may be either higher or lower.

Dated: September 7, 2021

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
So. Dist. Fed ID 903144
**Jimmy D. Parrish, Esq.**
So. Dist. Fed ID 2687598
200 S. Orange Avenue
Suite 2300
Orlando, FL 32801
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
E-mail: egreen@bakerlaw.com
E-mail: jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com
*(Admitted Pro Hac Vice)*

*Proposed Counsel for the Debtors and Debtors in Possession*

0934

**Fill in this information to identify the case:**

Debtor name   **Limetree Bay Services, LLC**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF TEXAS

Case number (if known)   **21-32351**

☐ Check if this is an amended filing

## Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals                                 12/15

---

| Part 1: | Summary of Assets |
| --- | --- |

1.   ***Schedule A/B: Assets-Real and Personal Property*** (Official Form 206A/B)

   1a. **Real property:**
       Copy line 88 from *Schedule A/B*.........................................................................................   $ _____0.00

   1b. **Total personal property:**
       Copy line 91A from *Schedule A/B*......................................................................................   $ _____5,557,037.31

   1c. **Total of all property:**
       Copy line 92 from *Schedule A/B*........................................................................................   $ _____5,557,037.31

---

| Part 2: | Summary of Liabilities |
| --- | --- |

2.   ***Schedule D: Creditors Who Have Claims Secured by Property*** (Official Form 206D)
     Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*...................   $ _____0.00

3.   ***Schedule E/F: Creditors Who Have Unsecured Claims*** (Official Form 206E/F)

   3a. **Total claim amounts of priority unsecured claims:**
       Copy the total claims from Part 1 from line 5a of *Schedule E/F*..............................................   $ _____0.00

   3b. **Total amount of claims of nonpriority amount of unsecured claims:**
       Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*...............................   +$ _____5,939,012.81

4.   Total liabilities ........................................................................................
     Lines 2 + 3a + 3b                                                                                              $ _____5,939,012.81

**Fill in this information to identify the case:**

Debtor name   **Limetree Bay Services, LLC**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF TEXAS

Case number (if known)   **21-32351**

☐ Check if this is an amended filing

## Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property   12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
| --- | --- |

1. **Does the debtor have any cash or cash equivalents?**

☐ No.  Go to Part 2.
■ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
| --- | --- |

3.   **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
| --- | --- | --- | --- |
| 3.1.  **Citibank** | **Checking Account** | **0919** | **$8,306.97** |

4.   **Other cash equivalents** *(Identify all)*

5.   **Total of Part 1.**                                             **$8,306.97**
      Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

| Part 2: | Deposits and Prepayments |
| --- | --- |

6. **Does the debtor have any deposits or prepayments?**

■ No.  Go to Part 3.
☐ Yes Fill in the information below.

| Part 3: | Accounts receivable |
| --- | --- |

10. **Does the debtor have any accounts receivable?**

☐ No.  Go to Part 4.
■ Yes Fill in the information below.

11.   **Accounts receivable**

| 11a. 90 days old or less: | **1,918,838.02** | - | **0.00** | = .... | **$1,918,838.02** |
| --- | --- | --- | --- | --- | --- |
| | face amount | | doubtful or uncollectible accounts | | |

| Debtor | **Limetree Bay Services, LLC** | Case number *(if known)* **21-32351** |
|--------|--------------------------------|---------------------------------------|
|        | Name |  |

| 11b. Over 90 days old: | **3,629,892.32** | - | **0.00** =.... | **$3,629,892.32** |
|---|---|---|---|---|
|  | face amount |  | doubtful or uncollectible accounts |  |

12.     **Total of Part 3.**

Current value on lines 11a + 11b = line 12.  Copy the total to line 82.

| **$5,548,730.34** |
|---|

**Part 4:**     **Investments**

**13. Does the debtor own any investments?**

☑ No.  Go to Part 5.
☐ Yes Fill in the information below.

**Part 5:**     **Inventory, excluding agriculture assets**

**18. Does the debtor own any inventory (excluding agriculture assets)?**

☑ No.  Go to Part 6.
☐ Yes Fill in the information below.

**Part 6:**     **Farming and fishing-related assets (other than titled motor vehicles and land)**

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No.  Go to Part 7.
☐ Yes Fill in the information below.

**Part 7:**     **Office furniture, fixtures, and equipment; and collectibles**

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☑ No.  Go to Part 8.
☐ Yes Fill in the information below.

**Part 8:**     **Machinery, equipment, and vehicles**

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

☑ No.  Go to Part 9.
☐ Yes Fill in the information below.

**Part 9:**     **Real property**

**54. Does the debtor own or lease any real property?**

☐ No.  Go to Part 10.
☑ Yes Fill in the information below.

55.     **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|

Debtor    **Limetree Bay Services, LLC**                                        Case number *(If known)*  **21-32351**
          Name

| | | | |
|---|---|---|---|
| 55.1. **Houston Lease - 842 West Sam Houston Parkway North, Houston Texas, 77024 - Office Sublease between Debtor and Gulfmark Offshore, Inc. dated 9/1/19** | Lease | $0.00 | $0.00 |

---

**56.**  **Total of Part 9.**

Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88.

|   |
|---|
| **$0.00** |

**57.**  **Is a depreciation schedule available for any of the property listed in Part 9?**

☑ No
☐ Yes

**58.**  **Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☑ No
☐ Yes

| Part 10: | Intangibles and intellectual property |
|---|---|

**59. Does the debtor have any interests in intangibles or intellectual property?**

☑ No. Go to Part 11.
☐ Yes Fill in the information below.

| Part 11: | All other assets |
|---|---|

**70. Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

☑ No. Go to Part 12.
☐ Yes Fill in the information below.

---

Debtor   **Limetree Bay Services, LLC**                                    Case number *(If known)*  **21-32351**
         <sub>Name</sub>

---

| Part 12: | Summary |
|---|---|

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $8,306.97 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $5,548,730.34 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9*.........................................................> | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $5,557,037.31 | + 91b. $0.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $5,557,037.31 |

---

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

**Fill in this information to identify the case:**

Debtor name **Limetree Bay Services, LLC**

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF TEXAS

Case number (if known) **21-32351**

☐ Check if this is an amended filing

Official Form 206D

## Schedule D: Creditors Who Have Claims Secured by Property    12/15

**Be as complete and accurate as possible.**

**1. Do any creditors have claims secured by debtor's property?**

■ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☐ Yes. Fill in all of the information below.

**Fill in this information to identify the case:**

Debtor name __**Limetree Bay Services, LLC**__

United States Bankruptcy Court for the: __SOUTHERN DISTRICT OF TEXAS__

Case number (if known) __**21-32351**__

☐ Check if this is an amended filing

## Official Form 206E/F

# Schedule E/F: Creditors Who Have Unsecured Claims

**12/15**

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

**Part 1:**   List All Creditors with PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

    ☐ No. Go to Part 2.

    ☑ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

|  |  |  | Total claim | Priority amount |
|---|---|---|---|---|
| **2.1** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |
|  | **Anh Tran** | ☐ Contingent ☑ Unliquidated ☐ Disputed |  |  |
|  | Date or dates debt was incurred | Basis for the claim: **Unpaid wages and/or vacation time which may be asserted** |  |  |
|  | Last 4 digits of account number | Is the claim subject to offset? |  |  |
|  | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ☑ No ☐ Yes |  |  |
| **2.2** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |
|  | **Charles Dubovsky** | ☐ Contingent ☑ Unliquidated ☐ Disputed |  |  |
|  | Date or dates debt was incurred | Basis for the claim: **Unpaid wages and/or vacation time which may be asserted** |  |  |
|  | Last 4 digits of account number | Is the claim subject to offset? |  |  |
|  | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ☑ No ☐ Yes |  |  |

| Debtor | **Limetree Bay Services, LLC** | Case number (if known) | **21-32351** |
|---|---|---|---|
| | Name | | |

---

| 2.3 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Danny Norris**

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.4 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**David Alvarado**

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.5 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**David Molloy**

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.6 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**David Wilson**

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | **Limetree Bay Services, LLC** | Case number (if known) | **21-32351** |
|---|---|---|---|
| | Name | | |

---

| 2.7 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Forgan McIntosh**

☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** |
|---|---|

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.8 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Heather Ward**

☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** |
|---|---|

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.9 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Jackie Turk**

☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** |
|---|---|

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.10 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**James Vanderwel**

☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** |
|---|---|

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| Debtor | **Limetree Bay Services, LLC** | Case number (*if known*) | **21-32351** |
|---|---|---|---|
| | Name | | |

---

| 2.11 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Jeffery Hersperger**

*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| | **Unpaid wages and/or vacation time which may be asserted** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

☑ No
☐ Yes

---

| 2.12 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Jeffrey Rinker**

*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| | **Unpaid wages and/or vacation time which may be asserted** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

☑ No
☐ Yes

---

| 2.13 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Jesus Duran**

*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| | **Unpaid wages and/or vacation time which may be asserted** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

☑ No
☐ Yes

---

| 2.14 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Jodi Mitchell**

*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| | **Unpaid wages and/or vacation time which may be asserted** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

☑ No
☐ Yes

---

| Debtor | Limetree Bay Services, LLC | Case number (if known) | 21-32351 |
|--------|---------------------------|------------------------|----------|

Name

| 2.15 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|------|----------------------------------------------|----------------------------------------------|---------|---------|

**Joel Wiggins**

████████████████

Check all that apply.
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
☑ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.16 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|------|----------------------------------------------|----------------------------------------------|---------|---------|

**Jonathan Burns**

████████████████

Check all that apply.
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
☑ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.17 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|------|----------------------------------------------|----------------------------------------------|---------|---------|

**Keith Neal**

████████████████

Check all that apply.
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
☑ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.18 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|------|----------------------------------------------|----------------------------------------------|---------|---------|

**Kelvin Quach**

████████████████

Check all that apply.
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
☑ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

Debtor   **Limetree Bay Services, LLC**
Name

Case number (*if known*)   **21-32351**

---

| 2.19 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Mark Chavez**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.20 | Priority creditor's name and mailing address | | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Nicholas Norstrom**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.21 | Priority creditor's name and mailing address | | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Peter Laws II**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.22 | Priority creditor's name and mailing address | | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Ryan Biggs**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Limetree Bay Services, LLC | | Case number (if known) | 21-32351 |
|---|---|---|---|---|
| | Name | | | |

---

**2.23** | Priority creditor's name and mailing address
**Ryan Pederson**

▢▢▢▢▢▢▢

| As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
| *Check all that apply.* | | |

☐ Contingent
◼ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
◼ No
☐ Yes

---

**2.24** | Priority creditor's name and mailing address
**Scott McHugh**

| As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
| *Check all that apply.* | | |

☐ Contingent
◼ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
◼ No
☐ Yes

---

**2.25** | Priority creditor's name and mailing address
**Shoheb Merchant**

| As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
| *Check all that apply.* | | |

☐ Contingent
◼ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
◼ No
☐ Yes

---

**2.26** | Priority creditor's name and mailing address
**Stephan Tompsett**

| As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
| *Check all that apply.* | | |

☐ Contingent
◼ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
◼ No
☐ Yes

---

| Debtor | **Limetree Bay Services, LLC** | Case number (if known) | 21-32351 |
|---|---|---|---|
| | Name | | |

| 2.27 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Wesley Mairura**

*Check all that apply.*
- ☐ Contingent
- ■ Unliquidated
- ☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
- ■ No
- ☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

---

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

3. **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

|  | | **Amount of claim** |
|---|---|---|

| 3.1 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$137,378.47** |
|---|---|---|---|

**Limetree Bay Energy, LLC**
**842 West Sam Houston Parkway N**
**Suite 400**
**Houston, TX 77024**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **intercompany debt**

Last 4 digits of account number _

Is the claim subject to offset?  ☐ No  ■ Yes

| 3.2 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$454,995.57** |
|---|---|---|---|

**Limetree Bay Refining Operating, LLC**
**#1 Estate Hope**
**Christiansted, VI 00820**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **intercompany debt**

Last 4 digits of account number _

Is the claim subject to offset?  ☐ No  ■ Yes

| 3.3 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$5,273,781.85** |
|---|---|---|---|

**Limetree Bay Refining, LLC**
**1 Estate Hope**
**Christiansted, VI 00820**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **intercompany debt**

Last 4 digits of account number _

Is the claim subject to offset?  ☐ No  ■ Yes

| 3.4 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$68,709.14** |
|---|---|---|---|

**Limetree Bay Terminals, LLC**
**#1 Estate Hope**
**Christiansted, VI 00820-5652**

- ☐ Contingent
- ☐ Unliquidated
- ■ Disputed

Date(s) debt was incurred _

Basis for the claim:  **intercompany debt**

Last 4 digits of account number _

Is the claim subject to offset?  ☐ No  ■ Yes

| 3.5 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$4,147.78** |
|---|---|---|---|

**MetLife - Group Benefits**
**PO Box 804466**
**Kansas City, MO 64180-4466**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred  **Various**

Basis for the claim:  **Group Insurance**

Last 4 digits of account number _

Is the claim subject to offset?  ■ No  ☐ Yes

---

| Part 3: | List Others to Be Notified About Unsecured Claims |
|---|---|

| Debtor | **Limetree Bay Services, LLC** | Case number (if known) | **21-32351** |
|---|---|---|---|
| | Name | | |

**4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

**If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.**

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|

| Part 4: | Total Amounts of the Priority and Nonpriority Unsecured Claims |
|---|---|

**5. Add the amounts of priority and nonpriority unsecured claims.**

|  |  | Total of claim amounts |
|---|---|---|
| **5a. Total claims from Part 1** | 5a. | $ 0.00 |
| **5b. Total claims from Part 2** | 5b. + $ | 5,939,012.81 |
| **5c. Total of Parts 1 and 2** Lines 5a + 5b = 5c. | 5c. $ | 5,939,012.81 |

**Fill in this information to identify the case:**

Debtor name    **Limetree Bay Services, LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF TEXAS

Case number (if known)    **21-32351**

☐ Check if this is an amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases     12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1. **Does the debtor have any executory contracts or unexpired leases?**
    ☐ No. Check this box and file this form with the debtor's other schedules. There is nothing else to report on this form.
    ☑ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| **2.1.** State what the contract or lease is for and the nature of the debtor's interest    **Excess Liability Insurance Policy No. NAMBM2100005** | |
|      State the term remaining    **expires 6/1/22** | **Arcadia/Ark/Helix** |
|      List the contract number of any government contract | **Lockton Companies, LLC - Houston 3657 Briarpark Drive Suite 700 Houston, TX 77042** |
| **2.2.** State what the contract or lease is for and the nature of the debtor's interest    **Policy # B0713ENCAS2000011** | |
|      State the term remaining | **Chaucer/Apollo** |
|      List the contract number of any government contract | **Lockton Companies, LLC - Houston 3657 Briarpark Drive Suite 700 Houston, TX 77042** |
| **2.3.** State what the contract or lease is for and the nature of the debtor's interest    **Workers Compensation Insurance Policy** | |
|      State the term remaining    **expires 12/1/2021** | **Employers Insurance of Wausau** |
|      List the contract number of any government contract | **Lockton Companies, LLC 3657 Briarpark Drive Suite 700 Houston, TX 77042** |
| **2.4.** State what the contract or lease is for and the nature of the debtor's interest    **Sublease of Houston Office Space** | |
|      State the term remaining | **Gulfmark Offshore, Inc** |
|      List the contract number of any government contract | **Attn: Matthew Mancheski 6002 Rogerdale Road Suite 600 Houston, TX 77072-1655** |

**Fill in this information to identify the case:**

Debtor name  **Limetree Bay Services, LLC**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF TEXAS

Case number (if known)   **21-32351**

☐ Check if this is an amended filing

Official Form 206H
# Schedule H: Your Codebtors
12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Do you have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

■ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| **Name** | **Mailing Address** | **Name** | *Check all schedules that apply:* |
| 2.1 **Limetree Bay Cayman II, LLC** | | **Arcadia/Ark/Helix** | ☐ D ____<br>☐ E/F ____<br>■ G  **2.1** |
| 2.2 **Limetree Bay Cayman II, LLC** | | **Chaucer/Apollo** | ☐ D ____<br>☐ E/F ____<br>■ G  **2.2** |
| 2.3 **Limetree Bay Cayman, LLC** | | **Arcadia/Ark/Helix** | ☐ D ____<br>☐ E/F ____<br>■ G  **2.1** |
| 2.4 **Limetree Bay Cayman, LLC** | | **Chaucer/Apollo** | ☐ D ____<br>☐ E/F ____<br>■ G  **2.2** |
| 2.5 **Limetree Bay Financing, LLC** | | **Arcadia/Ark/Helix** | ☐ D ____<br>☐ E/F ____<br>■ G  **2.1** |

| Debtor | **Limetree Bay Services, LLC** | Case number *(if known)* | **21-32351** |
|---|---|---|---|

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| | *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|---|
| 2.6 | **Limetree Bay Financing, LLC** | | **Chaucer/Apollo** | ☐ D _____<br>☐ E/F _____<br>■ G  _2.2_ |
| 2.7 | **Limetree Bay Refining Holdings II, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Arcadia/Ark/Helix** | ☐ D _____<br>☐ E/F _____<br>■ G  _2.1_ |
| 2.8 | **Limetree Bay Refining Holdings II, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Chaucer/Apollo** | ☐ D _____<br>☐ E/F _____<br>■ G  _2.2_ |
| 2.9 | **Limetree Bay Refining Holdings, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Arcadia/Ark/Helix** | ☐ D _____<br>☐ E/F _____<br>■ G  _2.1_ |
| 2.10 | **Limetree Bay Refining Holdings, LLC** | | **Chaucer/Apollo** | ☐ D _____<br>☐ E/F _____<br>■ G  _2.2_ |
| 2.11 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Arcadia/Ark/Helix** | ☐ D _____<br>☐ E/F _____<br>■ G  _2.1_ |
| 2.12 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Chaucer/Apollo** | ☐ D _____<br>☐ E/F _____<br>■ G  _2.2_ |
| 2.13 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Arcadia/Ark/Helix** | ☐ D _____<br>☐ E/F _____<br>■ G  _2.1_ |

| Debtor | **Limetree Bay Services, LLC** | Case number *(if known)* | **21-32351** |

---

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |

| | | | |
|---|---|---|---|
| 2.14 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Chaucer/Apollo** | ☐ D _____ ☐ E/F _____ ■ G __2.2__ |
| 2.15 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Arcadia/Ark/Helix** | ☐ D _____ ☐ E/F _____ ■ G __2.1__ |
| 2.16 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Chaucer/Apollo** | ☐ D _____ ☐ E/F _____ ■ G __2.2__ |
| 2.17 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Arcadia/Ark/Helix** | ☐ D _____ ☐ E/F _____ ■ G __2.1__ |
| 2.18 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Chaucer/Apollo** | ☐ D _____ ☐ E/F _____ ■ G __2.2__ |
| 2.19 | **Limetree Bay Ventures, LLC** | | **Arcadia/Ark/Helix** | ☐ D _____ ☐ E/F _____ ■ G __2.1__ |
| 2.20 | **Limetree Bay Ventures, LLC** | | **Chaucer/Apollo** | ☐ D _____ ☐ E/F _____ ■ G __2.2__ |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

Schedule H: Your Codebtors

Best Case Bankruptcy

**Fill in this information to identify the case:**

Debtor name    **Limetree Bay Services, LLC**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF TEXAS

Case number (if known)   21-32351

☐ Check if this is an amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors   12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☑   *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☑   *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☑   *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☑   *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☑   *Schedule H: Codebtors* (Official Form 206H)
☑   *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐   Amended *Schedule*
☐   *Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
☐   Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge based upon the information available to me at this time.

Executed on   **September 7, 2021**    X **/s/ Mark Shapiro**
                                         Signature of individual signing on behalf of debtor

                                         **Mark Shapiro**
                                         Printed name

                                         **Chief Restructuring Officer**
                                         Position or relationship to debtor

**Fill in this information to identify the case:**

Debtor name  **Limetree Bay Services, LLC**

United States Bankruptcy Court for the:  SOUTHERN DISTRICT OF TEXAS

Case number (if known)  **21-32351**

☐ Check if this is an amended filing

# Official Form 207
## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy          04/19

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

**Part 1:**    **Income**

1. **Gross revenue from business**

   ■ None.

   | Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue Check all that apply | Gross revenue (before deductions and exclusions) |
   |---|---|---|

2. **Non-business revenue**
   Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

   ■ None.

   | | Description of sources of revenue | Gross revenue from each source (before deductions and exclusions) |
   |---|---|---|

**Part 2:**    **List Certain Transfers Made Before Filing for Bankruptcy**

3. **Certain payments or transfers to creditors within 90 days before filing this case**
   List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

   ■ None.

   | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer Check all that apply |
   |---|---|---|---|

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
   List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

   ■ None.

   | Insider's name and address Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
   |---|---|---|---|

5. **Repossessions, foreclosures, and returns**
   List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

Debtor   **Limetree Bay Services, LLC**                         Case number *(if known)* **21-32351**

■ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|

6. **Setoffs**
   List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

■ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|

**Part 3:**   **Legal Actions or Assignments**

7. **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**
   List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case**.**

■ None.

| Case title Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|

8. **Assignments and receivership**
   List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

■ None

**Part 4:**   **Certain Gifts and Charitable Contributions**

9. **List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

■ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|

**Part 5:**   **Certain Losses**

10. **All losses from fire, theft, or other casualty within 1 year before filing this case.**

■ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br><br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br><br>List unpaid claims on Official Form 106A/B *(Schedule A/B: Assets – Real and Personal Property).* | Dates of loss | Value of property lost |
|---|---|---|---|

**Part 6:**   **Certain Payments or Transfers**

11. **Payments related to bankruptcy**
    List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

■ None.

Debtor   **Limetree Bay Services, LLC**                                                            Case number *(if known)*   **21-32351**

| Who was paid or who received the transfer? Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|

**12. Self-settled trusts of which the debtor is a beneficiary**
List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

■ None.

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

**13. Transfers not already listed on this statement**
List any transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

■ None.

| Who received transfer? Address | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|

**Part 7:**   Previous Locations

**14. Previous addresses**
List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

■ Does not apply

| Address | Dates of occupancy From-To |
|---|---|

**Part 8:**   Health Care Bankruptcies

**15. Health Care bankruptcies**
Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

■ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|

**Part 9:**   Personally Identifiable Information

**16. Does the debtor collect and retain personally identifiable information of customers?**

■ No.
☐ Yes. State the nature of the information collected and retained.

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

■ No. Go to Part 10.
☐ Yes. Does the debtor serve as plan administrator?

**Part 10:**   Certain Financial Accounts, Safe Deposit Boxes, and Storage Units

**18. Closed financial accounts**
Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold,

Debtor   **Limetree Bay Services, LLC**                                Case number *(if known)*  **21-32351**

moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

■ None

| Financial Institution name and Address | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

**19. Safe deposit boxes**
List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

■ None

| Depository institution name and address | Names of anyone with access to it Address | Description of the contents | Do you still have it? |
|---|---|---|---|

**20. Off-premises storage**
List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

■ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Do you still have it? |
|---|---|---|---|

**Part 11:   Property the Debtor Holds or Controls That the Debtor Does Not Own**

**21. Property held for another**
List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

■ None

**Part 12:   Details About Environment Information**

For the purpose of Part 12, the following definitions apply:
*Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

*Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

*Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22.   Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

■ No.
☐ Yes. Provide details below.

| Case title Case number | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|

**23.   Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

■ No.
☐ Yes. Provide details below.

Debtor    **Limetree Bay Services, LLC**                          Case number *(if known)*  **21-32351**

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| | | | |

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

■ No.
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| | | | |

**Part 13:    Details About the Debtor's Business or Connections to Any Business**

**25. Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case.
Include this information even if already listed in the Schedules.

■ None

| Business name address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| | | |

**26. Books, records, and financial statements**
26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

■ None

| Name and address | Date of service<br>From-To |
|---|---|
| | |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement
within 2 years before filing this case.

☐ None

| Name and address | | Date of service<br>From-To |
|---|---|---|
| 26b.1. | **Deloitte & Touche** | **2021-2021 for consolidated LBV** |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

■ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial
statement within 2 years before filing this case.

■ None

| Name and address |
|---|
| |

**27. Inventories**
Have any inventories of the debtor's property been taken within 2 years before filing this case?

■ No
☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|
| | | |

**28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people**

Debtor   **Limetree Bay Services, LLC**                                          Case number *(if known)*   **21-32351**

**in control of the debtor at the time of the filing of this case.**

| Name | Address | Position and nature of any interest | % of interest, if any |
|------|---------|-------------------------------------|-----------------------|
| **Jeffrey Rinker** | | **President** | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|------|---------|-------------------------------------|-----------------------|
| **Stephan Tompsett** | | **CFO** | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|------|---------|-------------------------------------|-----------------------|
| **Mark Chavez** | | **General Counsel/Secretary** | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|------|---------|-------------------------------------|-----------------------|
| **Limetree Bay Energy, LLC** | | **Sole Member** | **100%** |

| Name | Address | Position and nature of any interest | % of interest, if any |
|------|---------|-------------------------------------|-----------------------|
| **Mark Shapiro** | **B. Riley Advisory Services 4400 Post Oak Parkway Suite 1400 Houston, TX 77027** | **Chief Restructuring Officer** | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|------|---------|-------------------------------------|-----------------------|
| **Steven J. Pully** | **4564 Meadowwood Road Dallas, TX 75220** | **Independent Member** | |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No
■ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|------|---------|-------------------------------------|---------------------------------------------------|
| **Brian Lever** | | **President/CEO** | |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|------|---------|-------------------------------------|---------------------------------------------------|
| **Daniel R Revers** | | **Manager, Vice-President, President** | |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|------|---------|-------------------------------------|---------------------------------------------------|
| **John F. Erhard** | | **Manager/Vice-President** | |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                          Best Case Bankruptcy

Debtor   **Limetree Bay Services, LLC**     Case number *(if known)*  **21-32351**

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Forgan McIntosh** | | **CFO** | |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Christine M. Miller** | | **Secretary** | |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Theodore D. Burke** | | **Assistant Secretary** | |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Limetree Bay Ventures, LLC** | | **Sole Member** | **100%** |

30. **Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No
■ Yes. Identify below.

| | Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|---|
| 30.1. | **Mark Chavez** | **$50,000** | **6/18/2021** | **Signing Bonus** |
| | **Relationship to debtor**<br>**General Counsel** | | | |
| 30.2. | **Ryan N. Pederson** | **$301,920**<br>**$200,000**<br>**$101,898**<br>**$141,575**<br>**$13,002.16**<br>**$4,000** | **3/12/2021**<br>**3/12/2021**<br>**3/12/2021**<br>**3/26/2021**<br>**7/12/2021**<br>**7/12/2021** | **Year End Bonus**<br>**Signing Bonus**<br>**Incentive Bonus**<br>**Incentive Bonus**<br>**Vacation Payout**<br>**Severence** |
| | **Relationship to debtor**<br>**VP, Commercial** | | | |
| 30.3. | **Stephan Tompsett** | **$50,000** | **5/21/21** | **Signing Bonus** |
| | **Relationship to debtor**<br>**CFO** | | | |
| 30.4. | **Jeffrey Rinker** | **$356,250**<br>**$37,500**<br>**$37,500** | **3/12/21**<br>**4/9/21**<br>**6/4/21** | **Year End Bonus**<br>**Signing Bonus**<br>**Signing Bonus** |
| | **Relationship to debtor**<br>**President** | | | |

Debtor    **Limetree Bay Services, LLC**      Case number *(if known)* **21-32351**

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☑ No
☐ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|
| | |

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No
☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the parent corporation |
|---|---|
| | |

**Part 14:**   **Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **September  7, 2021**

**/s/ Mark Shapiro**             **Mark Shapiro**
Signature of individual signing on behalf of the debtor      Printed name

Position or relationship to debtor    **Chief Restructuring Officer**

**Are additional pages to** *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* **(Official Form 207) attached?**
☑ No
☐ Yes

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| LIMETREE BAY SERVICES, LLC, *et al.*,[1] | CASE NO.: 21-32351 |
| Debtors. | (Jointly Administered) |

## DISCLAIMER REGARDING DEBTORS' SCHEDULES AND SOFA

### General Disclaimer

1.      The Schedules and the SOFA are unaudited and subject to potential adjustment.  In preparing the Schedules and the SOFA, the CRO and his professionals relied on financial data derived from the Debtors' books and records that was available at the time of preparation.  The CRO and his professionals have made reasonable efforts to ensure that the Schedules and the SOFA are as accurate and complete as possible under the circumstances; however, subsequent information or discovery may result in changes to the Schedules and SOFA and errors or omissions may exist.

2.      The CRO reserves all rights to amend or supplement the Schedules and SOFA from time to time, in all respects, as may be necessary or appropriate, including the right to dispute or otherwise assert offsets or defenses to any claim reflected on the Schedules and SOFA as to any amount, liability, classification, identity of debtor or to otherwise subsequently designate any claim as "disputed", "contingent", or "unliquidated". Furthermore, nothing

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC.(1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

contained in the Schedules and SOFA shall constitute a waiver of any of the CRO's rights or an admission with respect to these chapter 11 cases, including any issues involving objections to claims, substantive consolidation, defenses, affirmative claims against third parties or rights against third parties, other issues that typically arise under the Bankruptcy Code.

## Notes on Schedules of Assets and Liabilities

## Method of Valuation

3.      Unless otherwise noted, the carrying value on the Debtors' books and records (net book value) as of the Petition Date, rather than the current market values, of the Debtors' interest in the property and of the Debtors' liabilities, is reflected on the Debtors' Schedules and SOFA.  The net book value may not correspond to market value, or liquidation value, of which may be either higher or lower.

Dated: September 7, 2021

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
So. Dist. Fed ID 903144
**Jimmy D. Parrish, Esq.**
So. Dist. Fed ID 2687598
200 S. Orange Avenue
Suite 2300
Orlando, FL 32801
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
E-mail: egreen@bakerlaw.com
E-mail: jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com
*(Admitted Pro Hac Vice)*

*Proposed Counsel for the Debtors and Debtors in Possession*

**Fill in this information to identify the case:**

Debtor name     **Limetree Bay Refining Holdings, LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF TEXAS

Case number (if known)    **21-32352**

☐ Check if this is an
    amended filing

## Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals     **12/15**

| Part 1: | Summary of Assets |
| --- | --- |

1.   **Schedule A/B: Assets-Real and Personal Property** (Official Form 206A/B)

   1a. **Real property:**
     Copy line 88 from *Schedule A/B*....................................................................................    $ _____**0.00**

   1b. **Total personal property:**
     Copy line 91A from *Schedule A/B*.................................................................................    $ _____**0.00**

   1c. **Total of all property:**
     Copy line 92 from *Schedule A/B*...................................................................................    $ _____**0.00**

| Part 2: | Summary of Liabilities |
| --- | --- |

2.   **Schedule D: Creditors Who Have Claims Secured by Property** (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*....................    $ _____**0.00**

3.   **Schedule E/F: Creditors Who Have Unsecured Claims** (Official Form 206E/F)

   3a. **Total claim amounts of priority unsecured claims:**
     Copy the total claims from Part 1 from line 5a of *Schedule E/F*...............................................    $ _____**0.00**

   3b. **Total amount of claims of nonpriority amount of unsecured claims:**
     Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*................................    +$ _____**0.00**

4.   **Total liabilities** ................................................................................
   Lines 2 + 3a + 3b           $ _____**0.00**

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com       Best Case Bankruptcy

**Fill in this information to identify the case:**

Debtor name   **Limetree Bay Refining Holdings, LLC**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF TEXAS

Case number (if known)   **21-32352**

☐ Check if this is an amended filing

# Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property            12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |

**1. Does the debtor have any cash or cash equivalents?**

■ No.  Go to Part 2.
☐ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |

| Part 2: | Deposits and Prepayments |

**6. Does the debtor have any deposits or prepayments?**

■ No.  Go to Part 3.
☐ Yes Fill in the information below.

| Part 3: | Accounts receivable |

**10. Does the debtor have any accounts receivable?**

■ No.  Go to Part 4.
☐ Yes Fill in the information below.

| Part 4: | Investments |

**13. Does the debtor own any investments?**

☐ No.  Go to Part 5.
■ Yes Fill in the information below.

| | | Valuation method used for current value | Current value of debtor's interest |

14.    **Mutual funds or publicly traded stocks not included in Part 1**
       Name of fund or stock:

15.    **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**
       Name of entity:                                    % of ownership

| 15.1. | **Investment in Limetree Bay Refining Holdings II, LLC** | 100% | % | | Unknown |

---

| Debtor | **Limetree Bay Refining Holdings, LLC** | Case number *(If known)* | **21-32352** |
|---|---|---|---|
| | Name | | |

16. **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**
Describe:

17. **Total of Part 4.**

Add lines 14 through 16.  Copy the total to line 83.

$0.00

---

| Part 5: | **Inventory, excluding agriculture assets** |
|---|---|

18. **Does the debtor own any inventory (excluding agriculture assets)?**

☑ No.  Go to Part 6.
☐ Yes Fill in the information below.

---

| Part 6: | **Farming and fishing-related assets (other than titled motor vehicles and land)** |
|---|---|

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No.  Go to Part 7.
☐ Yes Fill in the information below.

---

| Part 7: | **Office furniture, fixtures, and equipment; and collectibles** |
|---|---|

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☑ No.  Go to Part 8.
☐ Yes Fill in the information below.

---

| Part 8: | **Machinery, equipment, and vehicles** |
|---|---|

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

☑ No.  Go to Part 9.
☐ Yes Fill in the information below.

---

| Part 9: | **Real property** |
|---|---|

54. **Does the debtor own or lease any real property?**

☑ No.  Go to Part 10.
☐ Yes Fill in the information below.

---

| Part 10: | **Intangibles and intellectual property** |
|---|---|

59. **Does the debtor have any interests in intangibles or intellectual property?**

☑ No.  Go to Part 11.
☐ Yes Fill in the information below.

---

| Part 11: | **All other assets** |
|---|---|

70. **Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

☑ No.  Go to Part 12.
☐ Yes Fill in the information below.

---

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                        Best Case Bankruptcy

Debtor   **Limetree Bay Refining Holdings, LLC**                    Case number *(If known)*  **21-32352**
Name

| Part 12: | Summary |
|---|---|

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $0.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9*..........................................> | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $0.00 | + 91b. $0.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $0.00 |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                        Best Case Bankruptcy

**Fill in this information to identify the case:**

Debtor name    **Limetree Bay Refining Holdings, LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF TEXAS

Case number (if known)    **21-32352**

☐ Check if this is an amended filing

Official Form 206D

## Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

    ■ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

    ☐ Yes. Fill in all of the information below.

**Fill in this information to identify the case:**

Debtor name   **Limetree Bay Refining Holdings, LLC**

United States Bankruptcy Court for the:  SOUTHERN DISTRICT OF TEXAS

Case number (if known)  **21-32352**

☐ Check if this is an amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims     12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

### Part 1:   List All Creditors with PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507)**.**

   ■ No. Go to Part 2.

   ☐ Yes. Go to line 2.

### Part 2:   List All Creditors with NONPRIORITY Unsecured Claims

3. List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

| 3.1 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* |
|---|---|---|

☐ Contingent

☐ Unliquidated

Date or dates debt was incurred ____     ☐ Disputed

Last 4 digits of account number ____

**Basis for the claim:** _____

Is the claim subject to offset? ☐ No ☐ Yes

### Part 3:   List Others to Be Notified About Unsecured Claims

4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

   If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|

### Part 4:   Total Amounts of the Priority and Nonpriority Unsecured Claims

5. Add the amounts of priority and nonpriority unsecured claims.

| | | Total of claim amounts |
|---|---|---|
| 5a. Total claims from Part 1 | 5a. $ | 0.00 |
| 5b. Total claims from Part 2 | 5b. + $ | 0.00 |
| 5c. Total of Parts 1 and 2<br>Lines 5a + 5b = 5c. | 5c. $ | 0.00 |

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
</table>

Debtor name   **Limetree Bay Refining Holdings, LLC**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF TEXAS

Case number (if known)   **21-32352**

☐ Check if this is an amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases  12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.  **Does the debtor have any executory contracts or unexpired leases?**
    ☐ No. Check this box and file this form with the debtor's other schedules.  There is nothing else to report on this form.
    ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|
| 2.1.  State what the contract or lease is for and the nature of the debtor's interest  **Excess Liability Insurance Policy No. NAMBM2100005**<br><br>State the term remaining  **expires 6/1/22**<br><br>List the contract number of any government contract | **Arcadia/Ark/Helix**<br>**Lockton Companies, LLC - Houston**<br>**3657 Briarpark Drive**<br>**Suite 700**<br>**Houston, TX 77042** |
| 2.2.  State what the contract or lease is for and the nature of the debtor's interest  **Policy # B0713ENCAS2000011**<br><br>State the term remaining<br><br>List the contract number of any government contract | **Chaucer/Apollo**<br>**Lockton Companies, LLC - Houston**<br>**3657 Briarpark Drive**<br>**Suite 700**<br>**Houston, TX 77042** |

---

**Fill in this information to identify the case:**

Debtor name     **Limetree Bay Refining Holdings, LLC**

United States Bankruptcy Court for the:     SOUTHERN DISTRICT OF TEXAS

Case number (if known)     **21-32352**

☐ Check if this is an amended filing

---

## Official Form 206H
## Schedule H: Your Codebtors

12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Do you have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

■ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| Name | Mailing Address | Name | Check all schedules that apply: |
| 2.1 **Limetree Bay Cayman II, LLC** | | **Arcadia/Ark/Helix** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G **2.1** |
| 2.2 **Limetree Bay Cayman II, LLC** | | **Chaucer/Apollo** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G **2.2** |
| 2.3 **Limetree Bay Cayman, LLC** | | **Arcadia/Ark/Helix** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G **2.1** |
| 2.4 **Limetree Bay Cayman, LLC** | | **Chaucer/Apollo** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G **2.2** |
| 2.5 **Limetree Bay Financing, LLC** | | **Arcadia/Ark/Helix** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G **2.1** |

| Debtor | Limetree Bay Refining Holdings, LLC | | Case number *(if known)* | 21-32352 |

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| | Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|---|
| 2.6 | Limetree Bay Financing, LLC | | Chaucer/Apollo | ☐ D ____ <br> ☐ E/F ____ <br> ■ G   **2.2** |
| 2.7 | Limetree Bay Refining Holdings II, LLC | #1 Estate Hope Christiansted, VI 00820 | Arcadia/Ark/Helix | ☐ D ____ <br> ☐ E/F ____ <br> ■ G   **2.1** |
| 2.8 | Limetree Bay Refining Holdings II, LLC | #1 Estate Hope Christiansted, VI 00820 | Chaucer/Apollo | ☐ D ____ <br> ☐ E/F ____ <br> ■ G   **2.2** |
| 2.9 | Limetree Bay Refining Marketing, LLC | #1 Estate Hope Christiansted, VI 00820 | Arcadia/Ark/Helix | ☐ D ____ <br> ☐ E/F ____ <br> ■ G   **2.1** |
| 2.10 | Limetree Bay Refining Marketing, LLC | #1 Estate Hope Christiansted, VI 00820 | Chaucer/Apollo | ☐ D ____ <br> ☐ E/F ____ <br> ■ G   **2.2** |
| 2.11 | Limetree Bay Refining Operating, LLC | #1 Estate Hope Christiansted, VI 00820 | Arcadia/Ark/Helix | ☐ D ____ <br> ☐ E/F ____ <br> ■ G   **2.1** |
| 2.12 | Limetree Bay Refining Operating, LLC | #1 Estate Hope Christiansted, VI 00820 | Chaucer/Apollo | ☐ D ____ <br> ☐ E/F ____ <br> ■ G   **2.2** |
| 2.13 | Limetree Bay Refining, LLC | 1 Estate Hope Christiansted, VI 00820 | Arcadia/Ark/Helix | ☐ D ____ <br> ☐ E/F ____ <br> ■ G   **2.1** |

| Debtor | Limetree Bay Refining Holdings, LLC | Case number *(if known)* | 21-32352 |

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| 2.14 **Limetree Bay Refining, LLC** | 1 Estate Hope Christiansted, VI 00820 | Chaucer/Apollo | ☐ D _____ ☐ E/F _____ ■ G __2.2__ |
| 2.15 **Limetree Bay Services, LLC** | 11100 Brittmoore Park Drive Houston, TX 77041 | Arcadia/Ark/Helix | ☐ D _____ ☐ E/F _____ ■ G __2.1__ |
| 2.16 **Limetree Bay Services, LLC** | 11100 Brittmoore Park Drive Houston, TX 77041 | Chaucer/Apollo | ☐ D _____ ☐ E/F _____ ■ G __2.2__ |
| 2.17 **Limetree Bay Terminals, LLC** | #1 Estate Hope Christiansted, VI 00820-5652 | Arcadia/Ark/Helix | ☐ D _____ ☐ E/F _____ ■ G __2.1__ |
| 2.18 **Limetree Bay Terminals, LLC** | #1 Estate Hope Christiansted, VI 00820-5652 | Chaucer/Apollo | ☐ D _____ ☐ E/F _____ ■ G __2.2__ |
| 2.19 **Limetree Bay Ventures, LLC** | | Arcadia/Ark/Helix | ☐ D _____ ☐ E/F _____ ■ G __2.1__ |
| 2.20 **Limetree Bay Ventures, LLC** | | Chaucer/Apollo | ☐ D _____ ☐ E/F _____ ■ G __2.2__ |

**Fill in this information to identify the case:**

Debtor name   **Limetree Bay Refining Holdings, LLC**

United States Bankruptcy Court for the:  SOUTHERN DISTRICT OF TEXAS

Case number (if known)  21-32352

☐ Check if this is an amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors   12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

| | **Declaration and signature** |
|---|---|

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☑   *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☑   *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☑   *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☑   *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☑   *Schedule H: Codebtors* (Official Form 206H)
☑   *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐   Amended *Schedule*
☐   *Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
☐   Other document that requires a declaration

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge based upon the information available to me at this time.

Executed on   **September 7, 2021**      *X* **/s/ Mark Shapiro**
                                      Signature of individual signing on behalf of debtor

                                      **Mark Shapiro**
                                      Printed name

                                      **Chief Restructuring Officer**
                                      Position or relationship to debtor

**Fill in this information to identify the case:**

Debtor name    **Limetree Bay Refining Holdings, LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF TEXAS

Case number (if known)    **21-32352**

☐ Check if this is an amended filing

Official Form 207

# Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy    04/19

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

**Part 1:**    **Income**

1. **Gross revenue from business**

    ■ None.

   | Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue Check all that apply | Gross revenue (before deductions and exclusions) |
   | --- | --- | --- |

2. **Non-business revenue**
   Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

    ■ None.

   | | Description of sources of revenue | Gross revenue from each source (before deductions and exclusions) |
   | --- | --- | --- |

**Part 2:**    **List Certain Transfers Made Before Filing for Bankruptcy**

3. **Certain payments or transfers to creditors within 90 days before filing this case**
   List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

    ■ None.

   | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer Check all that apply |
   | --- | --- | --- | --- |

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
   List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

    ■ None.

   | Insider's name and address Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
   | --- | --- | --- | --- |

5. **Repossessions, foreclosures, and returns**
   List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

| Debtor | **Limetree Bay Refining Holdings, LLC** | Case number *(if known)* | 21-32352 |
|---|---|---|---|

■ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|

**6. Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

■ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|

**Part 3:    Legal Actions or Assignments**

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

■ None.

| Case title<br>Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|

**8. Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

■ None

**Part 4:    Certain Gifts and Charitable Contributions**

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

■ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|

**Part 5:    Certain Losses**

**10. All losses from fire, theft, or other casualty within 1 year before filing this case.**

■ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br><br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br><br>List unpaid claims on Official Form 106A/B *(Schedule A/B: Assets – Real and Personal Property).* | Dates of loss | Value of property lost |
|---|---|---|---|

**Part 6:    Certain Payments or Transfers**

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

■ None.

---

Debtor   **Limetree Bay Refining Holdings, LLC**    Case number *(if known)*  **21-32352**

| Who was paid or who received the transfer? Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|

**12. Self-settled trusts of which the debtor is a beneficiary**
List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

■ None.

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

**13. Transfers not already listed on this statement**
List any transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

■ None.

| Who received transfer? Address | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|

**Part 7:   Previous Locations**

**14. Previous addresses**
List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

■ Does not apply

| Address | Dates of occupancy From-To |
|---|---|

**Part 8:   Health Care Bankruptcies**

**15. Health Care bankruptcies**
Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

■ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|

**Part 9:   Personally Identifiable Information**

**16. Does the debtor collect and retain personally identifiable information of customers?**

■ No.
☐ Yes. State the nature of the information collected and retained.

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

■ No. Go to Part 10.
☐ Yes. Does the debtor serve as plan administrator?

**Part 10:   Certain Financial Accounts, Safe Deposit Boxes, and Storage Units**

**18. Closed financial accounts**
Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold,

| Debtor | **Limetree Bay Refining Holdings, LLC** | Case number *(if known)* | **21-32352** |
|---|---|---|---|

moved, or transferred?

Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

■ None

| Financial Institution name and Address | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

■ None

| Depository institution name and address | Names of anyone with access to it Address | Description of the contents | Do you still have it? |
|---|---|---|---|

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

■ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Do you still have it? |
|---|---|---|---|

**Part 11:  Property the Debtor Holds or Controls That the Debtor Does Not Own**

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

■ None

**Part 12:  Details About Environment Information**

For the purpose of Part 12, the following definitions apply:

*Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

*Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

*Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

■ No.

☐ Yes. Provide details below.

| Case title Case number | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|

**23. Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

■ No.

☐ Yes. Provide details below.

Debtor    **Limetree Bay Refining Holdings, LLC**                            Case number *(if known)*  **21-32352**

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

■ No.
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

**Part 13:   Details About the Debtor's Business or Connections to Any Business**

**25. Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case.
Include this information even if already listed in the Schedules.

☐ None

| Business name address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| 25.1.    **Limetree Bay Refining Holdings II, LLC<br>1 Estate Hope<br>Christiansted, VI 00820** | **oil refinery** | EIN:    **66-0901815**<br><br>**From-To** |

**26. Books, records, and financial statements**
26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.
■ None

| Name and address | Date of service<br>From-To |
|---|---|

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

■ None

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

■ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

■ None

| Name and address |
|---|

**27. Inventories**
Have any inventories of the debtor's property been taken within 2 years before filing this case?

■ No
☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|

**28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people**

Debtor    **Limetree Bay Refining Holdings, LLC**                                    Case number *(if known)*   **21-32352**

in control of the debtor at the time of the filing of this case.

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Jeffrey Rinker** | | **President** | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Mark Chavez** | | **General Counsel/Secretary** | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Limetree Bay Cayman II, Ltd.** | | **Sole Member** | **100%** |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Steven J. Pully** | **4564 Meadowwood Road Dallas, TX 75220** | **Independent Director** | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Mark Shapiro** | **B. Riley Advisory Services 4400 Post Oak Parkway Suite 1400 Houston, TX 77027** | **Chief Restructuring Officer** | |

29. Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?

☐    No
☑    Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Daniel R. Revers** | | **Manager, Vice-President, President** | |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Darius Sweet** | | **Manager** | |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Robert Haugen** | | **Manager** | |

30. **Payments, distributions, or withdrawals credited or given to insiders**
    Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☑    No
☐    Yes. Identify below.

Debtor    **Limetree Bay Refining Holdings, LLC**                      Case number *(if known)*  **21-32352**

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☑ No
☐ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No
☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the parent corporation |
|---|---|

**Part 14:    Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **September  7, 2021**

**/s/ Mark Shapiro**                                             **Mark Shapiro**
Signature of individual signing on behalf of the debtor              Printed name

Position or relationship to debtor    **Chief Restructuring Officer**

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**
☑ No
☐ Yes

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| LIMETREE BAY SERVICES, LLC, *et al.*,[1] | CASE NO.: 21-32351 |
| Debtors. | (Jointly Administered) |

## DISCLAIMER REGARDING DEBTORS' SCHEDULES AND SOFA

## General Disclaimer

1.      The Schedules and the SOFA are unaudited and subject to potential adjustment.  In preparing the Schedules and the SOFA, the CRO and his professionals relied on financial data derived from the Debtors' books and records that was available at the time of preparation.  The CRO and his professionals have made reasonable efforts to ensure that the Schedules and the SOFA are as accurate and complete as possible under the circumstances; however, subsequent information or discovery may result in changes to the Schedules and SOFA and errors or omissions may exist.

2.      The CRO reserves all rights to amend or supplement the Schedules and SOFA from time to time, in all respects, as may be necessary or appropriate, including the right to dispute or otherwise assert offsets or defenses to any claim reflected on the Schedules and SOFA as to any amount, liability, classification, identity of debtor or to otherwise subsequently designate any claim as "disputed", "contingent", or "unliquidated". Furthermore, nothing

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC.(1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

4840-8042-7514.1

contained in the Schedules and SOFA shall constitute a waiver of any of the CRO's rights or an admission with respect to these chapter 11 cases, including any issues involving objections to claims, substantive consolidation, defenses, affirmative claims against third parties or rights against third parties, other issues that typically arise under the Bankruptcy Code.

### Notes on Schedules of Assets and Liabilities

### Method of Valuation

3.      Unless otherwise noted, the carrying value on the Debtors' books and records (net book value) as of the Petition Date, rather than the current market values, of the Debtors' interest in the property and of the Debtors' liabilities, is reflected on the Debtors' Schedules and SOFA.  The net book value may not correspond to market value, or liquidation value, of which may be either higher or lower.

Dated: September 7, 2021

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
So. Dist. Fed ID 903144
**Jimmy D. Parrish, Esq.**
So. Dist. Fed ID 2687598
200 S. Orange Avenue
Suite 2300
Orlando, FL 32801
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
E-mail: egreen@bakerlaw.com
E-mail: jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com
*(Admitted Pro Hac Vice)*

*Proposed Counsel for the Debtors and Debtors in Possession*

**Fill in this information to identify the case:**

Debtor name  **Limetree Bay Refining Holdings II, LLC**

United States Bankruptcy Court for the:  SOUTHERN DISTRICT OF TEXAS

Case number (if known)  **21-32353**

☐ Check if this is an
amended filing

Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals

12/15

| Part 1: | Summary of Assets |
| --- | --- |

1. ***Schedule A/B: Assets-Real and Personal Property*** (Official Form 206A/B)

   **1a. Real property:**
   Copy line 88 from *Schedule A/B*...................................................................................  $ _____0.00_

   **1b. Total personal property:**
   Copy line 91A from *Schedule A/B*...............................................................................  $ _1,118,862,005.78_

   **1c. Total of all property:**
   Copy line 92 from *Schedule A/B*.................................................................................  $ _1,118,862,005.78_

| Part 2: | Summary of Liabilities |
| --- | --- |

2. ***Schedule D: Creditors Who Have Claims Secured by Property*** (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*...................  $ _779,383,441.67_

3. ***Schedule E/F: Creditors Who Have Unsecured Claims*** (Official Form 206E/F)

   **3a. Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F*.......................................  $ _____0.00_

   **3b. Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*...............................  +$ _____0.00_

4. Total liabilities .........................................................................................
   Lines 2 + 3a + 3b

   $ _779,383,441.67_

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **Limetree Bay Refining Holdings II, LLC** |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF TEXAS |
| Case number (if known) | **21-32353** |

☐ Check if this is an amended filing

# Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property    12/15

**Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).**

**Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.**

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

**1. Does the debtor have any cash or cash equivalents?**

☐ No.  Go to Part 2.
■ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

3.  **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|---|
| 3.1. | **Citibank** | **B&P Checking Account** | **7150** | **$50.00** |

4.  **Other cash equivalents** *(Identify all)*

5.  **Total of Part 1.**
Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.      **$50.00**

| Part 2: | Deposits and Prepayments |
|---|---|

**6. Does the debtor have any deposits or prepayments?**

■ No.  Go to Part 3.
☐ Yes Fill in the information below.

| Part 3: | Accounts receivable |
|---|---|

**10. Does the debtor have any accounts receivable?**

■ No.  Go to Part 4.
☐ Yes Fill in the information below.

| Part 4: | Investments |
|---|---|

**13. Does the debtor own any investments?**

☐ No.  Go to Part 5.
■ Yes Fill in the information below.

| Debtor | **Limetree Bay Refining Holdings II, LLC** | | Case number *(If known)* **21-32353** |
|---|---|---|---|
| | Name | | |

| | | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

**14.** **Mutual funds or publicly traded stocks not included in Part 1**
Name of fund or stock:

**15.** **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**
Name of entity:                                                    % of ownership

| 15.1. | **Investment in Limetree Bay Refining, LLC** | **100%** % | | **$1,118,861,955.78** |
|---|---|---|---|---|

**16.** **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**
Describe:

**17.** **Total of Part 4.**                                                    | **$1,118,861,955.78** |
Add lines 14 through 16.  Copy the total to line 83.

| **Part 5:** | **Inventory, excluding agriculture assets** |
|---|---|

**18. Does the debtor own any inventory (excluding agriculture assets)?**

■ No.  Go to Part 6.
☐ Yes Fill in the information below.

| **Part 6:** | **Farming and fishing-related assets (other than titled motor vehicles and land)** |
|---|---|

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No.  Go to Part 7.
☐ Yes Fill in the information below.

| **Part 7:** | **Office furniture, fixtures, and equipment; and collectibles** |
|---|---|

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

■ No.  Go to Part 8.
☐ Yes Fill in the information below.

| **Part 8:** | **Machinery, equipment, and vehicles** |
|---|---|

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

■ No.  Go to Part 9.
☐ Yes Fill in the information below.

| **Part 9:** | **Real property** |
|---|---|

**54. Does the debtor own or lease any real property?**

■ No.  Go to Part 10.
☐ Yes Fill in the information below.

| **Part 10:** | **Intangibles and intellectual property** |
|---|---|

**59. Does the debtor have any interests in intangibles or intellectual property?**

■ No.  Go to Part 11.
☐ Yes Fill in the information below.

| Debtor | **Limetree Bay Refining Holdings II, LLC** | Case number *(If known)* **21-32353** |
|---|---|---|
| | Name | |

| Part 11: | All other assets |
|---|---|

70. **Does the debtor own any other assets that have not yet been reported on this form?**
   Include all interests in executory contracts and unexpired leases not previously reported on this form.

   ■ No.  Go to Part 12.
   ☐ Yes Fill in the information below.

Debtor  **Limetree Bay Refining Holdings II, LLC**                    Case number *(If known)*  **21-32353**
          Name

| Part 12: | Summary |

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | **$50.00** | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | **$0.00** | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | **$0.00** | |
| 83. **Investments.** *Copy line 17, Part 4.* | **$1,118,861,955.78** | |
| 84. **Inventory.** *Copy line 23, Part 5.* | **$0.00** | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | **$0.00** | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | **$0.00** | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | **$0.00** | |
| 88. **Real property.** *Copy line 56, Part 9.......................................................................>* | | **$0.00** |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | **$0.00** | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + **$0.00** | |
| 91. **Total.** Add lines 80 through 90 for each column | **$1,118,862,005.78** + 91b. | **$0.00** |
| 92. **Total of all property on Schedule A/B**. Add lines 91a+91b=92 | | **$1,118,862,005.78** |

**Fill in this information to identify the case:**

Debtor name __**Limetree Bay Refining Holdings II, LLC**__

United States Bankruptcy Court for the: __SOUTHERN DISTRICT OF TEXAS__

Case number (if known) __**21-32353**__

☐ Check if this is an
amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property                    12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

    ☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

    ■ Yes. Fill in all of the information below.

| Part 1: | List Creditors Who Have Secured Claims |
|---|---|

| | | Column A | Column B |
|---|---|---|---|
| **2. List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. | | **Amount of claim**<br><br>Do not deduct the value of collateral. | **Value of collateral that supports this claim** |

| 2.1 | **Limetree Bay Cayman II, Ltd.** | Describe debtor's property that is subject to a lien | $426,438,373.58 | Unknown |
|---|---|---|---|---|
| | Creditor's Name | **Unknown** | | |

**1100 North Market Street
Wilmington, DE 19890**

Creditor's mailing address

**Describe the lien**
**Term Debt**

**Is the creditor an insider or related party?**
☐ No
■ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.2 | **Wilmington Trust, N.A.** | Describe debtor's property that is subject to a lien | $352,945,068.09 | Unknown |
|---|---|---|---|---|
| | Creditor's Name | **All accounts, chattel paper, deposit accounts, documents, equipment, fixtures, general intangibles, instruments, intellectual property, investment property, letters of credit, commercial tort claims...of any Holdco Lenders Collateral** | | |

**1100 N. Market Street
Wilmington, DE 19890**

Creditor's mailing address

**Describe the lien**
**Term Debt**

**Is the creditor an insider or related party?**
■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

| Debtor | **Limetree Bay Refining Holdings II, LLC** | Case number (if known) | **21-32353** |
|---|---|---|---|
| | Name | | |

**Do multiple creditors have an interest in the same property?**

☑ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

3. Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.  |  $779,383,441.67

**Part 2:   List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name  and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| | | |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

**Fill in this information to identify the case:**

Debtor name    **Limetree Bay Refining Holdings II, LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF TEXAS

Case number (if known)    **21-32353**

☐ Check if this is an amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and
Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and
2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

**Part 1:**    **List All Creditors with PRIORITY Unsecured Claims**

   1.   **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

     ■ No. Go to Part 2.

     ☐ Yes. Go to line 2.

**Part 2:**    **List All Creditors with NONPRIORITY Unsecured Claims**

   3.   **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill
out and attach the Additional Page of Part 2.

| 3.1 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* |
|---|---|---|
| | | ☐ Contingent |
| | | ☐ Unliquidated |
| | **Date or dates debt was incurred** ____ | ☐ Disputed |
| | **Last 4 digits of account number** ____ | **Basis for the claim:** _____ |
| | | Is the claim subject to offset? ☐ No ☐ Yes |

**Part 3:**    **List Others to Be Notified About Unsecured Claims**

4. **List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies,
assignees of claims listed above, and attorneys for unsecured creditors.

   If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|
| | | |

**Part 4:**    **Total Amounts of the Priority and Nonpriority Unsecured Claims**

5. **Add the amounts of priority and nonpriority unsecured claims.**

| | | Total of claim amounts |
|---|---|---|
| **5a. Total claims from Part 1** | 5a. | $      **0.00** |
| **5b. Total claims from Part 2** | 5b.   + | $      **0.00** |
| **5c. Total of Parts 1 and 2** Lines 5a + 5b = 5c. | 5c. | $      **0.00** |

**Fill in this information to identify the case:**

Debtor name    **Limetree Bay Refining Holdings II, LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF TEXAS

Case number (if known)    **21-32353**

☐ Check if this is an amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases    12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.   **Does the debtor have any executory contracts or unexpired leases?**
   ☐ No. Check this box and file this form with the debtor's other schedules. There is nothing else to report on this form.
   ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| 2.1. State what the contract or lease is for and the nature of the debtor's interest **Excess Liability Insurance Policy No. NAMBM2100005**<br><br>State the term remaining **expires 6/1/22**<br><br>List the contract number of any government contract | **Arcadia/Ark/Helix**<br>**Lockton Companies, LLC - Houston**<br>**3657 Briarpark Drive**<br>**Suite 700**<br>**Houston, TX 77042** |
| 2.2. State what the contract or lease is for and the nature of the debtor's interest **Policy # B0713ENCAS2000011**<br><br>State the term remaining<br><br>List the contract number of any government contract | **Chaucer/Apollo**<br>**Lockton Companies, LLC - Houston**<br>**3657 Briarpark Drive**<br>**Suite 700**<br>**Houston, TX 77042** |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

**Fill in this information to identify the case:**

Debtor name **Limetree Bay Refining Holdings II, LLC**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF TEXAS

Case number (if known)   **21-32353**

☐ Check if this is an amended filing

Official Form 206H
## Schedule H: Your Codebtors

12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Do you have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

■ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

Column 1: **Codebtor**

Column 2: **Creditor**

| | Name | Mailing Address | Name | Check all schedules that apply: |
|---|---|---|---|---|
| 2.1 | Limetree Bay Cayman II, LLC | | Arcadia/Ark/Helix | ☐ D _____ <br> ☐ E/F _____ <br> ■ G  **2.1** |
| 2.2 | Limetree Bay Cayman II, LLC | | Chaucer/Apollo | ☐ D _____ <br> ☐ E/F _____ <br> ■ G  **2.2** |
| 2.3 | Limetree Bay Cayman, LLC | | Arcadia/Ark/Helix | ☐ D _____ <br> ☐ E/F _____ <br> ■ G  **2.1** |
| 2.4 | Limetree Bay Cayman, LLC | | Chaucer/Apollo | ☐ D _____ <br> ☐ E/F _____ <br> ■ G  **2.2** |
| 2.5 | Limetree Bay Financing, LLC | | Arcadia/Ark/Helix | ☐ D _____ <br> ☐ E/F _____ <br> ■ G  **2.1** |

Debtor    **Limetree Bay Refining Holdings II, LLC**          Case number *(if known)*   **21-32353**

---

■ **Additional Page to List More Codebtors**

| Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page. | | |
|---|---|---|
| *Column 1:* **Codebtor** | | *Column 2:* **Creditor** |

| | | | |
|---|---|---|---|
| 2.6 | **Limetree Bay Financing, LLC** | | **Chaucer/Apollo** |

☐ D _____
☐ E/F _____
■ G  __2.2__

| 2.7 | **Limetree Bay Refining Holdings, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Arcadia/Ark/Helix** |

☐ D _____
☐ E/F _____
■ G  __2.1__

| 2.8 | **Limetree Bay Refining Holdings, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Chaucer/Apollo** |

☐ D _____
☐ E/F _____
■ G  __2.2__

| 2.9 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Arcadia/Ark/Helix** |

☐ D _____
☐ E/F _____
■ G  __2.1__

| 2.10 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Chaucer/Apollo** |

☐ D _____
☐ E/F _____
■ G  __2.2__

| 2.11 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Arcadia/Ark/Helix** |

☐ D _____
☐ E/F _____
■ G  __2.1__

| 2.12 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Chaucer/Apollo** |

☐ D _____
☐ E/F _____
■ G  __2.2__

| 2.13 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Arcadia/Ark/Helix** |

☐ D _____
☐ E/F _____
■ G  __2.1__

---

Debtor    **Limetree Bay Refining Holdings II, LLC**          Case number *(if known)*    **21-32353**

---

■ **Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|
| 2.14 **Limetree Bay Refining, LLC** | 1 Estate Hope Christiansted, VI 00820 | Chaucer/Apollo | ☐ D ____ <br> ☐ E/F ____ <br> ■ G __2.2__ |
| 2.15 **Limetree Bay Services, LLC** | 11100 Brittmoore Park Drive Houston, TX 77041 | Arcadia/Ark/Helix | ☐ D ____ <br> ☐ E/F ____ <br> ■ G __2.1__ |
| 2.16 **Limetree Bay Services, LLC** | 11100 Brittmoore Park Drive Houston, TX 77041 | Chaucer/Apollo | ☐ D ____ <br> ☐ E/F ____ <br> ■ G __2.2__ |
| 2.17 **Limetree Bay Terminals, LLC** | #1 Estate Hope Christiansted, VI 00820-5652 | Arcadia/Ark/Helix | ☐ D ____ <br> ☐ E/F ____ <br> ■ G __2.1__ |
| 2.18 **Limetree Bay Terminals, LLC** | #1 Estate Hope Christiansted, VI 00820-5652 | Chaucer/Apollo | ☐ D ____ <br> ☐ E/F ____ <br> ■ G __2.2__ |
| 2.19 **Limetree Bay Ventures, LLC** | | Arcadia/Ark/Helix | ☐ D ____ <br> ☐ E/F ____ <br> ■ G __2.1__ |
| 2.20 **Limetree Bay Ventures, LLC** | | Chaucer/Apollo | ☐ D ____ <br> ☐ E/F ____ <br> ■ G __2.2__ |

**Fill in this information to identify the case:**

Debtor name   **Limetree Bay Refining Holdings II, LLC**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF TEXAS

Case number (if known)   21-32353

☐ Check if this is an
amended filing

## Official Form 202
# Declaration Under Penalty of Perjury for Non-Individual Debtors   12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

**Declaration and signature**

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☑    *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☑    *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☑    *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☑    *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☑    *Schedule H: Codebtors* (Official Form 206H)
☑    *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐    Amended *Schedule*
☐    *Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
☐    Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge based upon the information available to me at this time.

Executed on   September 7, 2021          X **/s/ Mark Shapiro**
                                          Signature of individual signing on behalf of debtor

                                          **Mark Shapiro**
                                          Printed name

                                          **Chief Restructuring Officer**
                                          Position or relationship to debtor

**Fill in this information to identify the case:**

Debtor name        **Limetree Bay Refining Holdings II, LLC**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF TEXAS

Case number (if known)   **21-32353**

☐ Check if this is an amended filing

## Official Form 207
## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy                    04/19

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

**Part 1:    Income**

1. **Gross revenue from business**

   ■ None.

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue Check all that apply | Gross revenue (before deductions and exclusions) |
|---|---|---|

2. **Non-business revenue**
   Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

   ■ None.

| | Description of sources of revenue | Gross revenue from each source (before deductions and exclusions) |
|---|---|---|

**Part 2:    List Certain Transfers Made Before Filing for Bankruptcy**

3. **Certain payments or transfers to creditors within 90 days before filing this case**
   List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

   ■ None.

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer Check all that apply |
|---|---|---|---|

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
   List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

   ■ None.

| Insider's name and address Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
|---|---|---|---|

5. **Repossessions, foreclosures, and returns**
   List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

| Debtor | **Limetree Bay Refining Holdings II, LLC** | Case number *(if known)* **21-32353** |
|---|---|---|

■ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|

**6. Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

■ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|

| **Part 3:** | **Legal Actions or Assignments** |
|---|---|

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

■ None.

| Case title Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|

**8. Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

■ None

| **Part 4:** | **Certain Gifts and Charitable Contributions** |
|---|---|

**9.** List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000

■ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|

| **Part 5:** | **Certain Losses** |
|---|---|

**10. All losses from fire, theft, or other casualty within 1 year before filing this case.**

■ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br><br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br><br>List unpaid claims on Official Form 106A/B *(Schedule A/B: Assets – Real and Personal Property).* | Dates of loss | Value of property lost |
|---|---|---|---|

| **Part 6:** | **Certain Payments or Transfers** |
|---|---|

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

■ None.

Debtor   **Limetree Bay Refining Holdings II, LLC**   Case number *(if known)* 21-32353

| Who was paid or who received the transfer? Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|

**12. Self-settled trusts of which the debtor is a beneficiary**
List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

�■ None.

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

**13. Transfers not already listed on this statement**
List any transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

�■ None.

| Who received transfer? Address | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|

| Part 7: | Previous Locations |
|---|---|

**14. Previous addresses**
List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

�■ Does not apply

| Address | Dates of occupancy From-To |
|---|---|

| Part 8: | Health Care Bankruptcies |
|---|---|

**15. Health Care bankruptcies**
Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

�■ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|

| Part 9: | Personally Identifiable Information |
|---|---|

**16. Does the debtor collect and retain personally identifiable information of customers?**

�■ No.
☐ Yes. State the nature of the information collected and retained.

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

�■ No. Go to Part 10.
☐ Yes. Does the debtor serve as plan administrator?

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

**18. Closed financial accounts**
Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold,

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                                                                     Best Case Bankruptcy

| Debtor | **Limetree Bay Refining Holdings II, LLC** | Case number *(if known)* **21-32353** |
|---|---|---|

moved, or transferred?

Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

■ None

| Financial Institution name and Address | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

■ None

| Depository institution name and address | Names of anyone with access to it Address | Description of the contents | Do you still have it? |
|---|---|---|---|

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

■ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Do you still have it? |
|---|---|---|---|

**Part 11:   Property the Debtor Holds or Controls That the Debtor Does Not Own**

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

■ None

**Part 12:   Details About Environment Information**

For the purpose of Part 12, the following definitions apply:

*Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

*Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

*Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

■ No.

☐ Yes. Provide details below.

| Case title Case number | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|

**23. Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

■ No.

☐ Yes. Provide details below.

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                                Best Case Bankruptcy

| Debtor | Limetree Bay Refining Holdings II, LLC | Case number (if known) | 21-32353 |
|---|---|---|---|

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

■ No.
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

**Part 13:  Details About the Debtor's Business or Connections to Any Business**

**25. Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case.
Include this information even if already listed in the Schedules.

☐ None

| Business name address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| 25.1.  **Limetree Bay Refining, LLC<br>1 Estate Hope<br>Christiansted, VI 00820** | **oil refinery** | **EIN:**  66-0898671<br><br>**From-To** |

**26. Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

■ None

| Name and address | Date of service<br>From-To |
|---|---|

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

■ None

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

■ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

■ None

| Name and address |
|---|

**27. Inventories**
Have any inventories of the debtor's property been taken within 2 years before filing this case?

■ No
☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|

**28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

Debtor   **Limetree Bay Refining Holdings II, LLC**                              Case number *(if known)* **21-32353**

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Jeffrey Rinker** | | **President** | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Stephan Tompsett** | | **CFO** | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Mark Chavez** | | **General Counsel/Secretary** | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Limetree Bay Refining Holdings, LLC** | | **Sole Member** | **100%** |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Mark Shapiro** | **B. Riley Advisory Services 4400 Post Oak Parkway Suite 1400 Houston, TX 77027** | **Chief Restructuring Officer** | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Steven J. Pully** | **4564 Meadowwood Road Dallas, TX 75220** | **Independent Member** | |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No
☑ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Brian Boland** | | **Manager, President, CEO** | |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Daniel R. Revers** | | **Manager, Vice-President, President** | |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Darius Sweet** | | **Manager** | |

Debtor    **Limetree Bay Refining Holdings II, LLC**      Case number *(if known)*   **21-32353**

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|------|---------|-------------------------------------|---------------------------------------------------|
| **Robert Haugen** | | **Manager** | |

**30. Payments, distributions, or withdrawals credited or given to insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

■ No

☐ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|-------------------------------|------------------------------------------------------|-------|--------------------------------|

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

■ No

☐ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|--------------------------------|----------------------------------------------------------|

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

■ No

☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the parent corporation |
|--------------------------|----------------------------------------------------------|

**Part 14:**    **Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **September  7, 2021**

**/s/ Mark Shapiro**        **Mark Shapiro**

Signature of individual signing on behalf of the debtor      Printed name

Position or relationship to debtor    **Chief Restructuring Officer**

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**

■ No

☐ Yes

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| LIMETREE BAY SERVICES, LLC, *et al.*,[1] | CASE NO.: 21-32351 |
| Debtors. | (Jointly Administered) |

## DISCLAIMER REGARDING DEBTORS' SCHEDULES AND SOFA

### General Disclaimer

1.      The Schedules and the SOFA are unaudited and subject to potential adjustment.  In preparing the Schedules and the SOFA, the CRO and his professionals relied on financial data derived from the Debtors' books and records that was available at the time of preparation.  The CRO and his professionals have made reasonable efforts to ensure that the Schedules and the SOFA are as accurate and complete as possible under the circumstances; however, subsequent information or discovery may result in changes to the Schedules and SOFA and errors or omissions may exist.

2.      The CRO reserves all rights to amend or supplement the Schedules and SOFA from time to time, in all respects, as may be necessary or appropriate, including the right to dispute or otherwise assert offsets or defenses to any claim reflected on the Schedules and SOFA as to any amount, liability, classification, identity of debtor or to otherwise subsequently designate any claim as "disputed", "contingent", or "unliquidated". Furthermore, nothing

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC.(1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

contained in the Schedules and SOFA shall constitute a waiver of any of the CRO's rights or an admission with respect to these chapter 11 cases, including any issues involving objections to claims, substantive consolidation, defenses, affirmative claims against third parties or rights against third parties, other issues that typically arise under the Bankruptcy Code.

### <u>Notes on Schedules of Assets and Liabilities</u>

### <u>Method of Valuation</u>

3.      Unless otherwise noted, the carrying value on the Debtors' books and records (net book value) as of the Petition Date, rather than the current market values, of the Debtors' interest in the property and of the Debtors' liabilities, is reflected on the Debtors' Schedules and SOFA.  The net book value may not correspond to market value, or liquidation value, of which may be either higher or lower.

Dated: September 7, 2021

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
So. Dist. Fed ID 903144
**Jimmy D. Parrish, Esq.**
So. Dist. Fed ID 2687598
200 S. Orange Avenue
Suite 2300
Orlando, FL 32801
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
E-mail: egreen@bakerlaw.com
E-mail: jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com
*(Admitted Pro Hac Vice)*

*Proposed Counsel for the Debtors and Debtors in Possession*

**Fill in this information to identify the case:**

Debtor name **Limetree Bay Refining, LLC**

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF TEXAS

Case number (if known) **21-32354**

☐ Check if this is an amended filing

## Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals

12/15

| Part 1: | Summary of Assets |
| --- | --- |

1.  ***Schedule A/B: Assets-Real and Personal Property*** (Official Form 206A/B)

   **1a. Real property:**
   Copy line 88 from *Schedule A/B*.......................................................... $ 0.00

   **1b. Total personal property:**
   Copy line 91A from *Schedule A/B*......................................................... $ 274,453,886.26

   **1c. Total of all property:**
   Copy line 92 from *Schedule A/B*........................................................... $ 274,453,886.26

| Part 2: | Summary of Liabilities |
| --- | --- |

2.  ***Schedule D: Creditors Who Have Claims Secured by Property*** (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*.................... $ 1,160,056,794.65

3.  ***Schedule E/F: Creditors Who Have Unsecured Claims*** (Official Form 206E/F)

   **3a. Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F*............................................ $ 0.00

   **3b. Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*................................ +$ 271,768,751.13

4.  Total liabilities ...........................................................................
   Lines 2 + 3a + 3b

   $ 1,431,825,545.78

**Fill in this information to identify the case:**

Debtor name   **Limetree Bay Refining, LLC**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF TEXAS

Case number (if known)   **21-32354**

☐ Check if this is an amended filing

# Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property   12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

**Part 1:**   **Cash and cash equivalents**

1. **Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
■ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | | | Current value of debtor's interest |
|---|---|---|---|

3.   **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|---|
| 3.1. | **Deutsche Bank** | **Construction Account** | **0110** | $107,845.03 |
| 3.2. | **Deutsche Bank** | **Debt Service Reserve Account** | **0111** | $3,533.42 |
| 3.3. | **Oriental Bank** | **Operating** | **0267** | $2,213,522.00 |
| 3.4. | **Oriental Bank** | **Payroll** | **0268** | $315.39 |

4.   **Other cash equivalents** *(Identify all)*

5.   **Total of Part 1.**
Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

| $2,325,215.84 |
|---|

**Part 2:**   **Deposits and Prepayments**

6. **Does the debtor have any deposits or prepayments?**

☐ No. Go to Part 3.
■ Yes Fill in the information below.

| Debtor | **Limetree Bay Refining, LLC** | Case number *(If known)* | **21-32354** |
| | Name | | |

**7. Deposits, including security deposits and utility deposits**
Description, including name of holder of deposit

| 7.1. | **Security Deposits** | **$88,400.00** |

**8. Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**
Description, including name of holder of prepayment

| 8.1. | **Pre-Paid Licenses** | **$899,847.03** |
| 8.2. | **Pre-Paid Insurance** | **$6,302,171.93** |
| 8.3. | **Pre-Paid Rent** | **$15,465.01** |
| 8.4. | **Pre-Paid Sundry** | **$532,817.89** |

**9. Total of Part 2.**
Add lines 7 through 8. Copy the total to line 81.

**$7,838,701.86**

| Part 3: | **Accounts receivable** |

**10. Does the debtor have any accounts receivable?**

☐ No.  Go to Part 4.
■ Yes Fill in the information below.

**11. Accounts receivable**

| 11a. 90 days old or less: | **190,698,303.00** | - | **0.00** | = .... | **$190,698,303.00** |
| | face amount | | doubtful or uncollectible accounts | | |

| 11b. Over 90 days old: | **26,989,791.00** | - | **0.00** | =.... | **$26,989,791.00** |
| | face amount | | doubtful or uncollectible accounts | | |

**12. Total of Part 3.**
Current value on lines 11a + 11b = line 12.  Copy the total to line 82.

**$217,688,094.00**

| Part 4: | **Investments** |

**13. Does the debtor own any investments?**

☐ No.  Go to Part 5.
■ Yes Fill in the information below.

| | | **Valuation method used for current value** | **Current value of debtor's interest** |

**14. Mutual funds or publicly traded stocks not included in Part 1**

Debtor  **Limetree Bay Refining, LLC**                              Case number *(If known)*  **21-32354**
       Name

Name of fund or stock:

15. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**
    Name of entity:                % of ownership

| | Name of entity | % of ownership | | Current value |
|---|---|---|---|---|
| 15.1. | **Investment in Limetree Bay Refining Marketing, LLC** | **100%** | % | **$754,975.47** |
| 15.2. | **Investment in Limetree Bay Refining Operating, LLC** | **100%** | % | **Unknown** |

16. **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**
    Describe:

17. **Total of Part 4.**                                                                             | **$754,975.47** |
    Add lines 14 through 16.  Copy the total to line 83.

---

**Part 5:**   **Inventory, excluding agriculture assets**

18. **Does the debtor own any inventory (excluding agriculture assets)?**

☐ No.  Go to Part 6.
■ Yes Fill in the information below.

| | General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|---|
| 19. | **Raw materials** | | | | |
| 20. | **Work in progress** | | | | |
| 21. | **Finished goods, including goods held for resale** **Purchased Finished Products** | | **$849,064.90** | | **$849,064.90** |
| 22. | **Other inventory or supplies** **Warehouse Inventory** | | **$23,796,155.37** | | **$23,796,155.37** |
| | **Inventory Clearing** | | **$409,157.03** | | **$409,157.03** |
| | **Spare Parts (see attached list)** | | **$1,775,233.60** | | **$1,775,233.60** |

23. **Total of Part 5.**                                                                             | **$26,829,610.90** |
    Add lines 19 through 22.  Copy the total to line 84.

24. **Is any of the property listed in Part 5 perishable?**
■ No
☐ Yes

25. **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**
■ No
☐ Yes. Book value _____ Valuation method _____ Current Value _____

| Debtor | **Limetree Bay Refining, LLC** | | Case number *(If known)* **21-32354** |
|---|---|---|---|
| | Name | | |

**26.**  **Has any of the property listed in Part 5 been appraised by a professional within the last year?**
■ No
☐ Yes

**Part 6:**  **Farming and fishing-related assets (other than titled motor vehicles and land)**

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No.  Go to Part 7.
☐ Yes Fill in the information below.

**Part 7:**  **Office furniture, fixtures, and equipment; and collectibles**

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No.  Go to Part 8.
■ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39.  **Office furniture** | | | |
| 40.  **Office fixtures**<br>Modular Homes | **$75,579,851.41** | | **Unknown** |
| 41.  **Office equipment, including all computer equipment and communication systems equipment and software** | | | |
| 42.  **Collectibles** *Examples*: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| 43.  **Total of Part 7.**<br>Add lines 39 through 42.  Copy the total to line 86. | | | **$0.00** |

44. **Is a depreciation schedule available for any of the property listed in Part 7?**
■ No
☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**
■ No
☐ Yes

**Part 8:**  **Machinery, equipment, and vehicles**

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No.  Go to Part 9.
■ Yes Fill in the information below.

| General description Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 47.  **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 47.1.  **Vehicles, Trailers (see attached list)** | **$188,679.81** | **Comparable sale** | **$835,020.02** |
| 47.2.  **2019 E-One Pumper Fire Truck, VIN 4EN6AHA83K2002326** | **$286,424.74** | | **$286,424.74** |

| Debtor | **Limetree Bay Refining, LLC** | Case number *(If known)* **21-32354** |
|---|---|---|
| | Name | |

48. **Watercraft, trailers, motors, and related accessories** *Examples:* Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels

49. **Aircraft and accessories**

50. **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)**

| | | | |
|---|---|---|---|
| Gas Turbines & Waste Heat Boilers | $17,690,044.94 | | $17,690,044.94 |
| Other Machinery & Equipment | $205,798.49 | | $205,798.49 |

51. **Total of Part 8.**

Add lines 47 through 50.  Copy the total to line 87.

| $19,017,288.19 |
|---|

52. **Is a depreciation schedule available for any of the property listed in Part 8?**

■ No
☐ Yes

53. **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

■ No
☐ Yes

**Part 9:   Real property**

54. **Does the debtor own or lease any real property?**

☐ No.  Go to Part 10.
■ Yes Fill in the information below.

55. **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property
Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|

| Debtor | **Limetree Bay Refining, LLC** | Case number *(If known)* **21-32354** |
| --- | --- | --- |
| | Name | |

| | | | | |
| --- | --- | --- | --- | --- |
| 55.1. | **Facilities, Buildings and Improvements for:** **1) Plot No. 25 Estate Clifton Hill, King Quarter, St. Croix, US Virgin Islands** **2) Plot No. 487-A Estate Strawberry Hill, Queen Quarter, St. Croix, US Virgin Islands** **3) Plot 1-AB, Estates Blessing and Hope, King & Queen Quarters, St. Croix, US Virgin Islands** **4) Plot 2, Estates Blessing, Hope and Jerusalem, King & Queen Quarters, St. Croix, US Virgin Islands** **5) Plot 3, Estates Jerusalem, Figtree Hill and Castle Land, Queen Quarter, St. Croix, US Virgin Islands** **6) Plot 214 Estate Ruby, Queen Quarter, St. Croix, US Virgin Islands** | Fee ownership | $13,247,724.03 | Unknown |
| 55.2. | **Updates to Refinery** | | Unknown | Unknown |

| 56. | **Total of Part 9.** | | $0.00 |
| --- | --- | --- | --- |
| | Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88. | | |

57.  **Is a depreciation schedule available for any of the property listed in Part 9?**

■ No
☐ Yes

58.  **Has any of the property listed in Part 9 been appraised by a professional within the last year?**

■ No
☐ Yes

| Part 10: | Intangibles and intellectual property |
| --- | --- |

59. **Does the debtor have any interests in intangibles or intellectual property?**

■ No.  Go to Part 11.
☐ Yes Fill in the information below.

| Part 11: | All other assets |
| --- | --- |

70. **Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

| Debtor | **Limetree Bay Refining, LLC** | Case number *(If known)* | **21-32354** |
|---|---|---|---|
| | Name | | |

■ No.  Go to Part 12.
☐ Yes Fill in the information below.

Debtor  **Limetree Bay Refining, LLC**                                    Case number *(If known)*  **21-32354**
           Name

---

<span style="background:black;color:white">Part 12:</span>  **Summary**

---

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|

80.  **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* — **$2,325,215.84**

81.  **Deposits and prepayments.** *Copy line 9, Part 2.* — **$7,838,701.86**

82.  **Accounts receivable.** *Copy line 12, Part 3.* — **$217,688,094.00**

83.  **Investments.** *Copy line 17, Part 4.* — **$754,975.47**

84.  **Inventory.** *Copy line 23, Part 5.* — **$26,829,610.90**

85.  **Farming and fishing-related assets.** *Copy line 33, Part 6.* — **$0.00**

86.  **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* — **$0.00**

87.  **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* — **$19,017,288.19**

88.  **Real property.** *Copy line 56, Part 9* ............................................> | **$0.00**

89.  **Intangibles and intellectual property.** *Copy line 66, Part 10.* — **$0.00**

90.  **All other assets.** *Copy line 78, Part 11.* + **$0.00**

91.  **Total.** Add lines 80 through 90 for each column | **$274,453,886.26** | + 91b. | **$0.00**

92.  **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | **$274,453,886.26**

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

**Limetree Bay Refining, LLC**
**Case No: 21-32354**

**Spare Parts**

| Entity | Date | Description | Amount |
|--------|------|-------------|--------|
| LBR | 8/5/2020 | TRBCHRGR:MODEL 412KVSR COMPRSR | 280,703.18 |
| LBR | 12/24/2020 | VLV:STOP,RADIO CNTRL OPERATED,CS, ASTM B | 198,500.00 |
| LBR | 11/16/2020 | CYL,COMPRESSOR:412KVSRA,14-1/2" | 147,548.90 |
| LBR | 12/11/2020 | COMPRSR:NASH-HYTOR,SERIES 652,CCW,SZ1002 | 65,643.50 |
| LBR | 6/16/2020 | COMPRSR:NASH-HYTOR,SERIES 652,CCW,SZ1002 | 65,643.50 |
| LBR | 6/16/2020 | COMPRSR:TEST CW,SZ 1002 | 65,643.50 |
| LBR | 12/11/2020 | COMPRSR:TEST CW,SZ 1002 | 65,643.50 |
| LBR | 8/26/2020 | ROD:PWR,50" OAL,CS | 108,295.46 |
| LBR | 9/18/2020 | COOLER:INTER COOLER ASSMBLY,PR-597688-1 | 48,254.00 |
| LBR | 6/12/2020 | COOLER:INTER COOLER ASSMBLY,PR-597688-1 | 48,254.00 |
| LBR | 9/18/2020 | BDY:INTER COOLER,52"OAL,STL,PR-597688-2 | 48,254.00 |
| LBR | 6/12/2020 | BDY:INTER COOLER,52"OAL,STL,PR-597688-2 | 48,254.00 |
| LBR | 8/29/2020 | SMO0413435 LHE LINERS (UNIT 226262) | 95,092.65 |
| LBR | 7/3/2020 | ROD:CONN | 79,607.26 |
| LBR | 11/16/2020 | CYL,COMPRESSOR:KVG,8-3/4" | 77,512.40 |
| LBR | 8/28/2020 | ROTOR,PUMP:CENTFGL PUMP,P/N:6HMTA-9 | 76,019.40 |
| LBR | 12/11/2020 | VANE:INLT GUIDE | 75,000.00 |
| LBR | 10/17/2020 | CYL,COMPRESSOR:KVG,6-1/2" | 70,085.35 |
| LBR | 11/20/2020 | MOTOR:TECO,600HP,WP2,1200RPM,4000V,400M | 59,738.00 |
| LBR | 12/2/2020 | ELEMENT:SUPERHEATER TUBES, BOILER 8, 9 | 51,541.00 |

$ **1,775,233.60**

**Limetree Bay Refining, LLC**
**Case No: 21-32354**

**Vehicles**

| Debtor | Vehicle Description | Cost | Depreciation | Book Value | FMV |
|--------|---------------------|------|--------------|------------|-----|
| LBR | 1993 TRLR CZMZ120384  3H3C242S1PT203010 | $    2,500.00 | $    (416.67) | $  2,083.33 | 2,083.33 |
| LBR | 1993 TRLR CZMZ120384  3H3C242S3PT203817 | 2,500.00 | (416.67) | 2,083.33 | 2,083.33 |
| LBR | 1993 TRLR CZMZ120384  3H3C242S5PT203334 | 2,500.00 | (416.67) | 2,083.33 | 2,083.33 |
| LBR | 1993 TRLR CZMZ120384  3H3C242S6PT203567 | 2,500.00 | (416.67) | 2,083.33 | 2,083.33 |
| LBR | 1993 TRLR CZMZ120384  3H3C242S6PT203732 | 2,500.00 | (416.67) | 2,083.33 | 2,083.33 |
| LBR | 1999 TRLR CZMZ120384  1S12C235XB727042 | 2,500.00 | (416.67) | 2,083.33 | 2,083.33 |
| LBR | 2017 Ford F150 VIN 1FTEW1C81HKD27048 | 29,800.00 | (25,130.98) | 4,669.02 | 21,390.00 |
| LBR | 2017 Ford F150 VIN 1FTEW1C87HKC30985 | 29,800.00 | (25,130.98) | 4,669.02 | 21,390.00 |
| LBR | 2017 Ford F150 VIN 1FTEW1C89HFA35608 | 29,800.00 | (25,130.98) | 4,669.02 | 21,390.00 |
| LBR | 2017 Ford F150 VIN 1FTEW1C89HFA35723 | 29,800.00 | (25,130.98) | 4,669.02 | 21,390.00 |
| LBR | 2017 Ford F150 VIN 1FTEW1CF1HRB42344 | 29,800.00 | (25,130.98) | 4,669.02 | 21,390.00 |
| LBR | 2017 Ford F150 VIN 1FTEW1CG4HKD11448 | 29,800.00 | (25,130.98) | 4,669.02 | 21,390.00 |
| LBR | 2017 Ford F150 XLT S - VIN # 1FTEW1CG0HKD45743 | 22,720.00 | (19,160.26) | 3,559.74 | 22,714.00 |
| LBR | 2017 Ford F150 XLT S - VIN # 1FTEW1CG0HKD45743 | 5,908.92 | (4,983.12) | 925.80 | Duplicate |
| LBR | 2018 Chevrolet Equinox  VIN: 2GNAXSEV4J6299895 | 21,985.00 | (18,540.43) | 3,444.57 | 14,905.00 |
| LBR | 2018 Ford F150 VIN 1FTEW1CB2JFA19283 | 29,800.00 | (25,130.98) | 4,669.02 | 23,241.00 |
| LBR | 2018 Ford F150 VIN 1FTEW1CB7JFA08134 | 29,800.00 | (25,130.98) | 4,669.02 | 23,241.00 |
| LBR | 2018 Ford F150 XLT - VIN # 1FTEW1CB1JFA97585 | 5,908.94 | (4,983.14) | 925.80 | 26,221.00 |
| LBR | 2018 Ford F150 XLT S -  VIN #1FTEW1CBXJFC80578 | 22,720.00 | (19,160.26) | 3,559.74 | 26,221.00 |
| LBR | 2018 Ford F150 XLT S - VIN #1FTEW1CBXJFC80578 | 5,908.92 | (4,983.12) | 925.80 | Duplicate |
| LBR | 2018 Ford F150 XLT S - VIN # 1FTEW1CBOJFC64910 | 22,720.00 | (19,160.26) | 3,559.74 | 26,221.00 |
| LBR | 2018 Ford F150 XLT S - VIN #  1FTEW1CBOJFC64910 | 5,993.90 | (5,054.78) | 939.12 | Duplicate |
| LBR | 2018 Ford F150 XLT S - VIN # 1FTEW1CB1JFA97585 | 22,720.00 | (19,160.26) | 3,559.74 | 26,221.00 |
| LBR | 2018 Ford F150 XLT S - VIN # 1FTEW1CB5JFC81122 | 22,720.00 | (19,160.26) | 3,559.74 | 26,221.00 |
| LBR | 2018 Ford F150 XLT S - VIN # 1FTEW1CB5JFC81122 | 5,908.92 | (4,983.12) | 925.80 | Duplicate |
| LBR | 2018 Jeep Compass - Sport -VIN #3C4NJDAB5JT481121 | 0.00 | 121.96 | 121.96 | Duplicate |
| LBR | 2018 Jeep Compass  VIN #3C4NJDAB7JT481122 ...OLIVE | 26,775.00 | (22,579.93) | 4,195.07 | 17,789.00 |
| LBR | 2018 Jeep Compass - VIN #3C4NJDABXJT418032...WHITE | 26,775.00 | (22,579.93) | 4,195.07 | 17,789.00 |
| LBR | 2018 Jeep Compass VIN #3C4NJDABXJT418032...WHITE | 26,775.00 | (22,579.93) | 4,195.07 | 17,789.00 |
| LBR | 2018 Used Ford F150 XL - VIN 1FTMF1C84HFA06951 | 19,840.00 | (16,731.50) | 3,108.50 | 23,241.00 |
| LBR | 2018 Used Ford F150 XL - VIN 1FTMF1C84HFA06951 | 5,188.94 | (4,375.95) | 812.99 | Duplicate |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTEW1C84HFB12062 | 22,720.00 | (19,160.26) | 3,559.74 | 26,221.00 |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTEW1C84HFB12062 | 5,908.94 | (4,983.14) | 925.80 | Duplicate |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTEW1CB1JFC55469 | 22,720.00 | (19,160.26) | 3,559.74 | 26,221.00 |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTEW1CB1JFC55469 | 5,908.94 | (4,983.14) | 925.80 | Duplicate |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTEW1CB4JFC64716 | 22,720.00 | (19,160.26) | 3,559.74 | 26,221.00 |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTEW1CB4JFC64716 | 5,908.94 | (4,983.14) | 925.80 | Duplicate |
| LBR | 2018 Used Ford F150 XLT S -VIN 1FTEW1CB5JFC80844 | 22,720.00 | (19,160.26) | 3,559.74 | 26,221.00 |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTEW1CBXJFB88242 | 22,720.00 | (19,160.26) | 3,559.74 | 26,221.00 |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTEW1CBXJFB88242 | 5,908.94 | (4,983.14) | 925.80 | Duplicate |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTEW1CG4JKD85216 | 22,720.00 | (19,160.26) | 3,559.74 | 26,221.00 |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTEW1CG4JKD85216 | 5,908.94 | (4,983.14) | 925.80 | Duplicate |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTEW1CG6JFC79763 | 22,720.00 | (19,160.26) | 3,559.74 | 26,221.00 |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTEW1CG6JFC79763 | 5,908.94 | (4,983.14) | 925.80 | Duplicate |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTMF1C85HKD38565 | 19,840.00 | (16,731.50) | 3,108.50 | 26,221.00 |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTMF1C85HKD38565 | 5,188.94 | (4,375.95) | 812.99 | Duplicate |
| LBR | 2018 Used Ford F150 XLT S -VIN 1FTMF1CB5JKD80607 | 19,940.00 | (16,815.83) | 3,124.17 | 26,221.00 |
| LBR | 2018 Used Ford F150 XLT S -VIN 1FTMF1CB5JKD80607 | 5,188.94 | (4,375.95) | 812.99 | Duplicate |
| LBR | 2019 New Toyota Tac-VIN NUMBER: 5FTRX5GN2KX132673 | 27,137.00 | (22,885.21) | 4,251.79 | 26,116.00 |
| LBR | 2019 New Toyota Tac-VIN NUMBER: 5TFRX5GN7KX135178 | 27,137.00 | (22,885.21) | 4,251.79 | 26,116.00 |
| LBR | 2019 New Toyota Tac-VIN NUMBER: 5TFRX5GN7KX135424 | 27,137.00 | (22,885.21) | 4,251.79 | 26,116.00 |
| LBR | 2019 New Toyota Tac-VIN NUMBER: 5TFRX5GN8KX135304 | 27,137.00 | (22,885.21) | 4,251.79 | 26,116.00 |
| LBR | 2019 New Toyota Tac-VIN NUMBER: 5TFRX5GN9KX135179 | 27,137.00 | (22,885.21) | 4,251.79 | 26,116.00 |
| LBR | MIS 570CR Polaris 570 Crew Ranger ATV | 19,104.95 | (16,111.62) | 2,993.33 | 2,993.33 |
| LBR | Ram 1500 Tradesman - VIN#1C6RR7FG1KS577323 | 29,980.00 | (25,282.78) | 4,697.22 | 4,697.22 |

**Limetree Bay Refining, LLC**
**Case No: 21-32354**

**Vehicles**

| Debtor | Vehicle Description | Cost | Depreciation | Book Value | FMV |
|--------|---------------------|------|--------------|------------|-----|
| LBR | Ram 1500 Tradesman - VIN#1C6RR7FG2KS544959 | 29,980.00 | (25,282.78) | 4,697.22 | 4,697.22 |
| LBR | Ram 1500 Tradesman - VIN#1C6RR7FG2KS544962 | 29,980.00 | (25,282.78) | 4,697.22 | 4,697.22 |
| LBR | Ram 1500 Tradesman - VIN#1C6RR7FG9KS544957 | 29,980.00 | (25,282.78) | 4,697.22 | 4,697.22 |
| LBR | Ram 1500 Tradesman - VIN#1C6RR7FG9KS544960 | 29,980.00 | (25,282.78) | 4,697.22 | 4,697.22 |
| LBR | TRAILER - ROCK SOLID CARGO ENCL #7H2BE1225MD030497 | 5,584.00 | (1,085.78) | 4,498.22 | 4,498.22 |
| LBR | TRAILER - ROCK SOLID CARGO ENCL #7H2BE1629MD030416 | 5,982.70 | (1,163.31) | 4,819.39 | 4,819.39 |
| **Total** | | **$ 1,090,785.65** | **$ (902,105.84)** | **$  188,679.81** | **$  835,020.02** |

| Fill in this information to identify the case: |
|---|

Debtor name    **Limetree Bay Refining, LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF TEXAS

Case number (if known)    **21-32354**

☐ Check if this is an amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property                    12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☐ Yes. Fill in all of the information below.

| Part 1: | List Creditors Who Have Secured Claims |
|---|---|

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A | Column B |
|---|---|---|---|
| | | **Amount of claim** | **Value of collateral that supports this claim** |
| | | Do not deduct the value of collateral. | |

**2.1    AltairStrickland V.I., LLC**
Creditor's Name

**1605 S. Battleground Road
La Porte, TX 77571**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

Describe debtor's property that is subject to a lien
**Unknown**

Describe the lien
**Construction Lien**
**Is the creditor an insider or related party?**
☑ No
☐ Yes
**Is anyone else liable on this claim?**
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☑ Disputed

| | | **$4,106,717.42** | **Unknown** |

**2.2    Christiansted Equipment Ltd.**
Creditor's Name

**PO Box 368
Christiansted, St. Croix, VI 00820**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**

Describe debtor's property that is subject to a lien
**Unknown**

Describe the lien
**Construction Lien**
**Is the creditor an insider or related party?**
☑ No
☐ Yes
**Is anyone else liable on this claim?**
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

As of the petition filing date, the claim is:
Check all that apply

| | | **$3,780,074.66** | **Unknown** |

Debtor **Limetree Bay Refining, LLC**
Name

Case number (if known)  **21-32354**

☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Contingent
☐ Unliquidated
☑ Disputed

---

| 2.3 | **Cleaver-Brooks Sales & Service Inc.** | | | |
|---|---|---|---|---|

Creditor's Name

**1956 Singleton Blvd
Dallas, TX 75212**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

Describe debtor's property that is subject to a lien
**Unknown**

Describe the lien
**Construction Lien**
Is the creditor an insider or related party?
☑ No
☐ Yes
Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☑ Disputed

$120,738.00    Unknown

---

| 2.4 | **Computer Solutions, Inc** | | | |
|---|---|---|---|---|

Creditor's Name

**d/b/a CosTrack Project Controls
3167 Energy Ln.
Casper, WY 82604**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

Describe debtor's property that is subject to a lien
**Unknown**

Describe the lien
**Construction Lien**
Is the creditor an insider or related party?
☑ No
☐ Yes
Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☑ Disputed

$376,100.91    Unknown

---

| 2.5 | **Cust-O-Fab Specialty Services, LLC** | | | |
|---|---|---|---|---|

Creditor's Name

**8888 W 21st St
Sand Springs, OK 74063**
Creditor's mailing address

Describe debtor's property that is subject to a lien
**Unknown**

Describe the lien
**Construction Lien**

$3,284,871.07    Unknown

---

Official Form 206D          Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**          page 2 of 9

Debtor  **Limetree Bay Refining, LLC**                          Case number *(if known)*  **21-32354**
_____
Name

**Is the creditor an insider or related party?**

■ No
_____
Creditor's email address, if known              ☐ Yes

**Is anyone else liable on this claim?**

**Date debt was incurred**                      ☐ No

■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

**Do multiple creditors have an**              **As of the petition filing date, the claim is:**
**interest in the same property?**             Check all that apply

■ No                                            ☐ Contingent

☐ Yes. Specify each creditor,                   ☐ Unliquidated
including this creditor and its relative
priority.                                       ■ Disputed

---

| 2.6 | **Cust-O-Fab, LLC** | **Describe debtor's property that is subject to a lien** | **$2,064,855.00** | **Unknown** |

Creditor's Name                                 **Unknown**

**8888 West 21st Street**
**Sand Springs, OK 74063**
_____
Creditor's mailing address                      **Describe the lien**
                                                **Construction Lien**
                                                **Is the creditor an insider or related party?**

                                                ■ No
_____
Creditor's email address, if known              ☐ Yes

                                                **Is anyone else liable on this claim?**

**Date debt was incurred**                      ☐ No

                                                ■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)
**Last 4 digits of account number**

**Do multiple creditors have an**              **As of the petition filing date, the claim is:**
**interest in the same property?**             Check all that apply

■ No                                            ☐ Contingent

☐ Yes. Specify each creditor,                   ☐ Unliquidated
including this creditor and its relative
priority.                                       ■ Disputed

---

| 2.7 | **EnerMech Mechanical Services, Inc** | **Describe debtor's property that is subject to a lien** | **$501,059.41** | **Unknown** |

Creditor's Name                                 **Unknown**

**14000 West Road**
**Houston, TX 77041**
_____
Creditor's mailing address                      **Describe the lien**
                                                **Construction Lien**
                                                **Is the creditor an insider or related party?**

                                                ■ No
_____
Creditor's email address, if known              ☐ Yes

                                                **Is anyone else liable on this claim?**

**Date debt was incurred**                      ■ No

                                                ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)
**Last 4 digits of account number**

**Do multiple creditors have an**              **As of the petition filing date, the claim is:**
**interest in the same property?**             Check all that apply

■ No                                            ☐ Contingent

☐ Yes. Specify each creditor,                   ☐ Unliquidated
including this creditor and its relative
priority.                                       ■ Disputed

---

Debtor   **Limetree Bay Refining, LLC**                           Case number (if known)   **21-32354**
　　　　　Name

| 2.8 | **Excel Construction & Maintenance VI** | | | |
|---|---|---|---|---|
| | Creditor's Name | **Describe debtor's property that is subject to a lien** | **$24,943,041.69** | **Unknown** |
| | | **Unknown** | | |

**8641 United Plaza Blvd**
**Baton Rouge, LA 70809**

Creditor's mailing address

**Describe the lien**
**Construction Lien**
**Is the creditor an insider or related party?**

■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**

**Date debt was incurred**

☐ No
■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** |
|---|---|
| ■ No | Check all that apply |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Contingent |
| | ■ Unliquidated |
| | ■ Disputed |

| 2.9 | **Goldman Sachs Bank USA** | | | |
|---|---|---|---|---|
| | Creditor's Name | **Describe debtor's property that is subject to a lien** | **$50,320,833.33** | **Unknown** |
| | | **Certain accounts, chattel paper, deposit accounts, documents, equipment, fixtures, general intangibles, instruments, intellectual property, investment property, letters of credit, commercial tort claims...of any Senior Lenders Collateral** | | |

**as Administrative Agent**
**200 West Street**
**New York, NY 10282**

Creditor's mailing address

**Describe the lien**
**Revolver Debt Guarantee**
**Is the creditor an insider or related party?**

■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**

**Date debt was incurred**

☐ No
■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** |
|---|---|
| ■ No | Check all that apply |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ■ Contingent |
| | ■ Unliquidated |
| | ☐ Disputed |

| 2.10 | **Great Southern Technologies LLC** | | | |
|---|---|---|---|---|
| | Creditor's Name | **Describe debtor's property that is subject to a lien** | **$393,206.53** | **Unknown** |
| | | **Unknown** | | |

**Department 96-0504**
**Oklahoma City, OK**
**73196-0504**

Creditor's mailing address

**Describe the lien**
**Construction Lien**
**Is the creditor an insider or related party?**

■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**

Official Form 206D          Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**          page 4 of 9

| Debtor | **Limetree Bay Refining, LLC** | | Case number (if known) | **21-32354** |
|---|---|---|---|---|
| | Name | | | |

Date debt was incurred

☐ No
■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Last 4 digits of account number

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
■ Disputed

---

| 2.1 1 | **HKA Enterprises, LLC** | Describe debtor's property that is subject to a lien | $450,172.78 | Unknown |
|---|---|---|---|---|

Creditor's Name

**337 Spartangreen Blvd. Duncan, SC 29334**

**Unknown**

Creditor's mailing address

**Describe the lien**
**Construction Lien**

**Is the creditor an insider or related party?**

Creditor's email address, if known

■ No
☐ Yes

**Is anyone else liable on this claim?**

Date debt was incurred

■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Last 4 digits of account number

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
■ Disputed

---

| 2.1 2 | **InServ Field Services USVI, LLC** | Describe debtor's property that is subject to a lien | $19,670,362.10 | Unknown |
|---|---|---|---|---|

Creditor's Name

**1900 N 161st East Ave Tulsa, OK 74116**

**Unknown**

Creditor's mailing address

**Describe the lien**
**Construction Lien**

**Is the creditor an insider or related party?**

Creditor's email address, if known

■ No
☐ Yes

**Is anyone else liable on this claim?**

Date debt was incurred

☐ No
■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Last 4 digits of account number

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
■ Disputed

---

| 2.1 3 | **J. Aron & Company LLC** | Describe debtor's property that is subject to a lien | $221,952,054.00 | Unknown |
|---|---|---|---|---|

---

Debtor    **Limetree Bay Refining, LLC**       Case number (if known)    **21-32354**

Name

Creditor's Name

Describe debtor's property that is subject to a lien
**Accounts, accounts receivable, hydrocarbons and other inventory, deposit accounts, instruments, chattel paper, documents, tax refunds, commercial tort claims, and replacement proceeds of the J. Aron Collateral**

**200 West Street**
**New York, NY 10282**

Creditor's mailing address

Describe the lien
**Estimate Safe Harbor Agreement Guarantee**

Is the creditor an insider or related party?

☑ No

Creditor's email address, if known

☐ Yes

Is anyone else liable on this claim?

☐ No

**Date debt was incurred**

☑ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**

As of the petition filing date, the claim is:
Check all that apply

☑ No

☑ Contingent

☐ Yes. Specify each creditor, including this creditor and its relative priority.

☑ Unliquidated

☐ Disputed

---

| 2.14 | **J. Aron & Company LLC** | Describe debtor's property that is subject to a lien | $25,087,659.68 | Unknown |
| --- | --- | --- | --- | --- |

Creditor's Name

**Accounts, accounts receivable, hydrocarbons and other inventory, deposit accounts, instruments, chattel paper, documents, tax refunds, commercial tort claims, and replacement proceeds of the J. Aron Collateral**

**200 West Street**
**New York, NY 10282**

Creditor's mailing address

Describe the lien
**Tem Debt Guarantee**

Is the creditor an insider or related party?

☑ No

Creditor's email address, if known

☐ Yes

Is anyone else liable on this claim?

☐ No

**Date debt was incurred**

☑ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**

As of the petition filing date, the claim is:
Check all that apply

☑ No

☑ Contingent

☐ Yes. Specify each creditor, including this creditor and its relative priority.

☑ Unliquidated

☐ Disputed

---

| 2.15 | **Panametrics, LLC** | Describe debtor's property that is subject to a lien | $21,844.00 | Unknown |
| --- | --- | --- | --- | --- |

Creditor's Name

**Unknown**

**1401 Elm St., 5th Floor Lockbox**
**Dallas, TX 75284-8502**

Creditor's mailing address

Describe the lien
**Construction Lien**

Is the creditor an insider or related party?

☑ No

---

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com     

Debtor **Limetree Bay Refining, LLC**

Case number (if known) **21-32354**

---

Name

Creditor's email address, if known

☐ Yes

**Is anyone else liable on this claim?**

**Date debt was incurred**

■ No

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**

**As of the petition filing date, the claim is:**
Check all that apply

■ No

☐ Contingent

☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Unliquidated

■ Disputed

---

| 2.1 6 | **Strategic Contract Resources, LLC** | **Describe debtor's property that is subject to a lien** | $830,079.50 | Unknown |
|---|---|---|---|---|

Creditor's Name

**Unknown**

**PO Box 823461**
**Philadelphia, PA 19182**

Creditor's mailing address

**Describe the lien**

**Construction Lien**

**Is the creditor an insider or related party?**

■ No

Creditor's email address, if known

☐ Yes

**Is anyone else liable on this claim?**

**Date debt was incurred**

■ No

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**

**As of the petition filing date, the claim is:**
Check all that apply

■ No

☐ Contingent

☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Unliquidated

■ Disputed

---

| 2.1 7 | **Universal Plant Services, (VI), LLC** | **Describe debtor's property that is subject to a lien** | $26,263,226.16 | Unknown |
|---|---|---|---|---|

Creditor's Name

**Unknown**

**806 Seaco Court**
**Deer Park, TX 77536**

Creditor's mailing address

**Describe the lien**

**Construction Lien**

**Is the creditor an insider or related party?**

■ No

Creditor's email address, if known

☐ Yes

**Is anyone else liable on this claim?**

**Date debt was incurred**

■ No

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**

**As of the petition filing date, the claim is:**
Check all that apply

■ No

☐ Contingent

☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Unliquidated

■ Disputed

---

Debtor **Limetree Bay Refining, LLC**
_____
Name

Case number (if known) **21-32354**
_____

---

| 2.1 8 | | | |
|---|---|---|---|

**V.I. Industrial Services, LLC**
Creditor's Name

**PMB #6002 Est. Diamond Ruby**
**Christiansted, VI 00820**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

Describe debtor's property that is subject to a lien
**Unknown**

Describe the lien
**Construction Lien**
**Is the creditor an insider or related party?**
■ No
☐ Yes
**Is anyone else liable on this claim?**
☐ No
■ Yes. Fill out _Schedule H: Codebtors_ (Official Form 206H)

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
■ Disputed

$4,466,993.76        Unknown

---

| 2.1 9 | | | |
|---|---|---|---|

**Vivot Equipment Corporation**
Creditor's Name

**9010 Estate Cottage**
**Christiansted, VI 00820**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

Describe debtor's property that is subject to a lien
**Unknown**

Describe the lien
**Construction Lien**
**Is the creditor an insider or related party?**
■ No
☐ Yes
**Is anyone else liable on this claim?**
☐ No
■ Yes. Fill out _Schedule H: Codebtors_ (Official Form 206H)

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
■ Disputed

$9,765,557.08        Unknown

---

| 2.2 0 | | | |
|---|---|---|---|

**Wilmington Trust, N.A.**
Creditor's Name

**1100 N. Market Street**
**Wilmington, DE 19890**
Creditor's mailing address

Creditor's email address, if known

Describe debtor's property that is subject to a lien
**Certain accounts, chattel paper, deposit accounts, documents, equipment, fixtures, general intangibles, instruments, intellectual property, investment property, letters of credit, commercial tort claims...of any Senior Lenders Collateral**

Describe the lien
**Term Debt**
**Is the creditor an insider or related party?**
■ No
☐ Yes

$758,993,241.96        Unknown

---

| Debtor | **Limetree Bay Refining, LLC** | | Case number (if known) | **21-32354** |
|---|---|---|---|---|
| | Name | | | |

**Date debt was incurred**

**Last 4 digits of account number**

| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** |
|---|---|
| ■ No | Check all that apply |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Contingent |
| | ☐ Unliquidated |
| | ☐ Disputed |

**Is anyone else liable on this claim?**
☐ No
■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

---

| 2.21 | **Worley Pan American Corporation** | | | |
|---|---|---|---|---|

Creditor's Name

**f/k/a Jacobs**
**Pan-Americasn Corp**
**5995 Rogerdale Road**
**Houston, TX 77072**

Creditor's mailing address

| Describe debtor's property that is subject to a lien | $2,664,105.61 | Unknown |
|---|---|---|
| **Unknown** | | |

**Describe the lien**
**Construction Lien**

**Is the creditor an insider or related party?**
■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**

| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** |
|---|---|
| ■ No | Check all that apply |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Contingent |
| | ☐ Unliquidated |
| | ■ Disputed |

---

3. Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.   | $1,160,056,794.65 |

**Part 2:   List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name  and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| | | |

---

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

| Fill in this information to identify the case: |
| --- |

Debtor name      **Limetree Bay Refining, LLC**

United States Bankruptcy Court for the:      SOUTHERN DISTRICT OF TEXAS

Case number (if known)      **21-32354**

☐ Check if this is an
amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims          **12/15**

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and
Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and
2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

**Part 1:**      List All Creditors with PRIORITY Unsecured Claims

1.  **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

■ No. Go to Part 2.

☐ Yes. Go to line 2.

**Part 2:**      List All Creditors with NONPRIORITY Unsecured Claims

3.  List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill
out and attach the Additional Page of Part 2.

|  |  | Amount of claim |
| --- | --- | --- |

| 3.1 | **Nonpriority creditor's name and mailing address**<br>**Abatix Corp**<br>**PO Box 6712020**<br>**Dallas, TX 75267-1202** | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$41,108.93** |
| | Date(s) debt was incurred  _<br>Last 4 digits of account number  _ | Basis for the claim:  **Trade Debt**<br><br>Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.2 | **Nonpriority creditor's name and mailing address**<br>**ABC Janitors of St. Croix, Inc.**<br>**PO Box 24510**<br>**Christiansted, St. Croix, VI 00824** | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$9,321.54** |
| | Date(s) debt was incurred  _<br>Last 4 digits of account number  _ | Basis for the claim:  **Services**<br><br>Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.3 | **Nonpriority creditor's name and mailing address**<br>**AC Systems Integration Inc**<br>**10325 E. 58th St**<br>**Tulsa, OK 74147** | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$40,548.75** |
| | Date(s) debt was incurred  _<br>Last 4 digits of account number  _ | Basis for the claim:  **Trade Debt**<br><br>Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.4 | **Nonpriority creditor's name and mailing address**<br>**Access Sciences Corporation**<br>**1900 West Loop South**<br>**Suite 250**<br>**Houston, TX 77027** | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$19,250.00** |
| | Date(s) debt was incurred  _<br>Last 4 digits of account number  _ | Basis for the claim:  **Trade Debt**<br><br>Is the claim subject to offset? ■ No  ☐ Yes | |

| Debtor | **Limetree Bay Refining, LLC** | Case number *(if known)* | **21-32354** |
|---|---|---|---|
| | Name | | |

| 3.5 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $164,787.82 |
|---|---|---|---|

**Acconda, LP**
**d/b/a Aqua Drill Internat**
**1300 FM 646 West**
**Dickinson, TX 77539**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.6 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $79,185.24 |
|---|---|---|---|

**Acuren Inspection, Inc.**
**PO Box 846313**
**Dallas, TX 75284-6313**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.7 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $50,728.00 |
|---|---|---|---|

**Adams Valves, Inc**
**12303 Cutten Road**
**Houston, TX 77066**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.8 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $284,227.00 |
|---|---|---|---|

**Advanced Electrical & Motor Control**
**1801 Hurd Drive**
**Irving, TX 75038**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.9 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $420,437.78 |
|---|---|---|---|

**Advanced Overhead Crane Services, Inc.**
**22531 FM 2100 Rd**
**Crosy, TX 77532**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.10 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $913,105.04 |
|---|---|---|---|

**AFCO Credit Insurance**
**4501 College Blvd**
**Suite 320**
**Leawood, KS 66211**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **trade debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.11 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $30,791.35 |
|---|---|---|---|

**AGI Industries, Inc**
**PO Box 3604**
**Lafayette, LA 70502**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

Debtor **Limetree Bay Refining, LLC**
_____
Name

Case number _(if known)_   **21-32354**

---

| 3.12 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: _Check all that apply._ | **$188.30** |

**Air Cargo Carriers, LLC**
**4940 S. Howell Ave.**
**Milwaukee, WI 53207**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.13 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: _Check all that apply._ | **$7,240.00** |

**Air Liquide America L.P.**
**PO Box 532609**
**Atlanta, GA 30353-2609**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.14 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: _Check all that apply._ | **$50,000.00** |

**Aire Tech Mechanical Services, Inc**
**4362 Motorsports Dr**
**Concord, NC 28027**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.15 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: _Check all that apply._ | **$7,131.00** |

**Akili, Inc.**
**901 W Walnut HIll Lane**
**Suite 130-B**
**Irving, TX 75038-1001**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.16 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: _Check all that apply._ | **$11,018.53** |

**Alfred Conhagen, Inc. of Louisiana**
**1020 Industry Road**
**Kenner, LA 70062**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.17 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: _Check all that apply._ | **$91,862.53** |

**Allen's Electric Motor Service, Inc**
**400 Roy Hoppy Hopkins Dr**
**Vivian, LA 71082**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.18 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: _Check all that apply._ | **$50,000.00** |

**Allison Industrial Services, LLC**
**19221 1-45 South**
**Shenandoah, TX 77385**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Limetree Bay Refining, LLC** | | Case number (if known) | **21-32354** |
|---|---|---|---|---|
| | Name | | | |

---

**3.19** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **Unknown**

**Allison Industrial Services, LLC**
**19221 1-45 South**
**Shenandoah, TX 77385**

■ Contingent
■ Unliquidated
■ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **Completion Program Bonus**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.20** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **Unknown**

**AltairStrickland V.I., LLC**
**1605 S. Battleground Road**
**La Porte, TX 77571**

■ Contingent
■ Unliquidated
■ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **Completion Program Bonus**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.21** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$79,875.00**

**American Fuel & Petrochemical**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **trade debt**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.22** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$379,535.29**

**AMSPEC LLC**
**3800 Highway 225**
**Pasadena, TX 77503**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.23** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$1,864,538.62**

**Analytic Stress Relieving, Inc.**
**3118 W. Pinhook Road**
**Lafayette, LA 70505**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.24** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$10,745.00**

**Antillean Engineers, Inc.**
**PO Box 3023**
**Kingshill, VI 00851**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.25** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$2,524.50**

**Antilles Gas Corporation**
**PO Box 5435**
**Christiansted, St. Croix, VI 00823**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **Utilities**

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

| 3.26 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$281,250.00** |
|---|---|---|---|
| | **Arclight Capital Partners, LLC** | ☐ Contingent | |
| | | ☐ Unliquidated | |
| | | ☐ Disputed | |
| | **Date(s) debt was incurred** _ | | |
| | **Last 4 digits of account number** _ | **Basis for the claim:** _ | |
| | | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.27 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$95,823.82** |
|---|---|---|---|
| | **Aries Worldwide Logistics** | ☐ Contingent | |
| | **1501 E. Richley Road** | ☐ Unliquidated | |
| | **Houston, TX 77073** | ☐ Disputed | |
| | **Date(s) debt was incurred** _ | | |
| | **Last 4 digits of account number** _ | **Basis for the claim:** __Trade Debt__ | |
| | | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.28 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$254,750.40** |
|---|---|---|---|
| | **Arvos Ljungstrom LLC** | ☐ Contingent | |
| | **3020 Truax Road** | ☐ Unliquidated | |
| | **Wellsville, NY 14895** | ☐ Disputed | |
| | **Date(s) debt was incurred** _ | | |
| | **Last 4 digits of account number** _ | **Basis for the claim:** __Trade Debt__ | |
| | | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.29 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$10,825.48** |
|---|---|---|---|
| | **ASGCO Manufacturing Inc** | ☐ Contingent | |
| | **301 W. Gordon Street** | ☐ Unliquidated | |
| | **Allentown, PA 18102** | ☐ Disputed | |
| | **Date(s) debt was incurred** _ | | |
| | **Last 4 digits of account number** _ | **Basis for the claim:** __Trade Debt__ | |
| | | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.30 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$207,211.00** |
|---|---|---|---|
| | **Aspen Technology, Inc.** | ☐ Contingent | |
| | **20 Crosby Drive** | ☐ Unliquidated | |
| | **Bedford, MA 01730** | ☐ Disputed | |
| | **Date(s) debt was incurred** _ | | |
| | **Last 4 digits of account number** _ | **Basis for the claim:** __Trade Debt__ | |
| | | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.31 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$102,391.20** |
|---|---|---|---|
| | **Atlantic Equipment Resources** | ☐ Contingent | |
| | **70 Kinderkamack Road** | ☐ Unliquidated | |
| | **Emerson, NJ 07630** | ☐ Disputed | |
| | **Date(s) debt was incurred** _ | | |
| | **Last 4 digits of account number** _ | **Basis for the claim:** __Trade Debt__ | |
| | | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.32 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$35,170.00** |
|---|---|---|---|
| | **Austin Fire Systems, LLC** | ☐ Contingent | |
| | **PO Box 411** | ☐ Unliquidated | |
| | **Prairieville, LA 70769** | ☐ Disputed | |
| | **Date(s) debt was incurred** _ | | |
| | **Last 4 digits of account number** _ | **Basis for the claim:** __Trade Debt__ | |
| | | Is the claim subject to offset? ■ No  ☐ Yes | |

| Debtor | Limetree Bay Refining, LLC | Case number (if known) | 21-32354 |
|---|---|---|---|
| | Name | | |

| 3.33 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $576,127.00 |
|---|---|---|---|
| | **Aveva Software, LLC**<br>**26561 Rancho Parkway South**<br>**Lake Forest, CA 92630-8301** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.34 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $325,978.56 |
|---|---|---|---|
| | **AWC INC**<br>**6655 Exchequer Dr**<br>**Baton Rouge, LA 70809** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.35 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $535,821.39 |
|---|---|---|---|
| | **Axens NA**<br>**650 College Road East**<br>**Princeton, NJ 08540** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.36 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $16,071.00 |
|---|---|---|---|
| | **Aztron Chemical Services, Inc.**<br>**4530 New Street Drive**<br>**Pasadena, TX 77507** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.37 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $70,000.00 |
|---|---|---|---|
| | **Badger Project Services LLC**<br>**2711 Lakeview Dr.**<br>**Rockport, TX 78382** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.38 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $529,010.82 |
|---|---|---|---|
| | **Baker Hughes Energy Services LLC**<br>**17021 Aldine Westfield Road**<br>**Houston, TX 77073** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.39 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $2,323,806.17 |
|---|---|---|---|
| | **Baker Hughes Oilfield Operations, Inc**<br>**PO Box 301057**<br>**Dallas, TX 75303-1057** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| Debtor | Limetree Bay Refining, LLC | Case number (if known) | 21-32354 |
|---|---|---|---|
| | Name | | |

| 3.40 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$83,682.86** |
|---|---|---|---|

**Ballard Hospitality, LLC**
**180 New Camellia Blvd**
**Suite 100**
**Covington, LA 70433**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __Trade Debt__

Date(s) debt was incurred _

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

| 3.41 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$190,741.45** |
|---|---|---|---|

**Ballard Hospitality-VI, LLC**
**180 New Camelia Blvd**
**Suite 100**
**Covington, LA 70433**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __Trade Debt__

Date(s) debt was incurred _

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

| 3.42 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$29,873.92** |
|---|---|---|---|

**Barr Engineering Co.**
**4300 Market Pointe Dr.**
**Suite 200**
**Minneapolis, MN 55435**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __Trade Debt__

Date(s) debt was incurred _

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

| 3.43 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$27,999.98** |
|---|---|---|---|

**Battery Backup Power, Inc**
**3183-F Airway Ave.**
**Suite 114**
**Costa Mesa, CA 92626**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __Trade Debt__

Date(s) debt was incurred _

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

| 3.44 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$16,649.03** |
|---|---|---|---|

**Baytek International, Inc.**
**401 N. Shoreline Blvd.**
**Corpus Christi, VI 78401**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __Trade Debt__

Date(s) debt was incurred _

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

| 3.45 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$559,705.71** |
|---|---|---|---|

**Becht Engineering Co Inc.**
**22 Church Street**
**Liberty Corner, NJ 07938**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __Trade Debt__

Date(s) debt was incurred _

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

| 3.46 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$46,590.38** |
|---|---|---|---|

**Beville Engineering Co.**
**7087 Corporate Way**
**Dayton, OH 45459**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __Trade Debt__

Date(s) debt was incurred _

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

| Debtor | **Limetree Bay Refining, LLC** | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|
| | Name | | | |

---

**3.47** | Nonpriority creditor's name and mailing address
**BGS, L.L.C.**
**PO Box 1329**
**Gonzales, LA 70707**

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$125,493.00**

---

**3.48** | Nonpriority creditor's name and mailing address
**Bohlke, LLC**
**PO Box 9936**
**Kingshill, VI 00850**

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$900.00**

---

**3.49** | Nonpriority creditor's name and mailing address
**Boulden Company Inc.**
**1013 Conshohocken Road**
**Conshohocken, PA 19428**

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$591,755.52**

---

**3.50** | Nonpriority creditor's name and mailing address
**Brand Safway Solutions USVI LLC**

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

Basis for the claim:  **Completion Program Bonus**

Is the claim subject to offset? ■ No ☐ Yes

**Unknown**

---

**3.51** | Nonpriority creditor's name and mailing address
**Broadband VI LLC**
**Attn: Michael**
**2163 Hospital St**
**Christiansted, VI 00820**

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Internet Services - for notice purposes**

Is the claim subject to offset? ■ No ☐ Yes

**Unknown**

---

**3.52** | Nonpriority creditor's name and mailing address
**Broadleaf IT, LLC**
**d/b/a Broadleaf Gro**
**13100  Wortham Center Drive**
**Houston, TX 77065**

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$17,200.00**

---

**3.53** | Nonpriority creditor's name and mailing address
**BS&B Safety Systems, LLC**
**7455 E 46th Street**
**Tulsa, OK 74145**

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$15,236.00**

---

| Debtor | Limetree Bay Refining, LLC | Case number (if known) | 21-32354 |
|---|---|---|---|
| | Name | | |

---

**3.54** | Nonpriority creditor's name and mailing address
**Cameron Solution Inc a Schlumberger**
PO Box 731413
Dallas, TX 75373-1413

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

**$272,657.49**

---

**3.55** | Nonpriority creditor's name and mailing address
**Carrier Credit Services, Inc.**
5350 W. Hillsboro Blvd.
Coconut Creek, FL 33073-4396

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

**$4,590.00**

---

**3.56** | Nonpriority creditor's name and mailing address
**Catalyst and Chemical Containers, L**
4935 Timber Creek Dr
Houston, TX 77017

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

**$18,690.00**

---

**3.57** | Nonpriority creditor's name and mailing address
**Cembell Industries, Inc**
PO Box 40
Norco, LA 70079

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

**$139,000.00**

---

**3.58** | Nonpriority creditor's name and mailing address
**Centerline Car Rentals, Inc.**
PO Box 1529
Kingshill, St. Croix, VI 00851-1529

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

**$114,028.31**

---

**3.59** | Nonpriority creditor's name and mailing address
**CFGI Holdings**
d/b/a CFGI, LLC
99  High Street
30th Floor
Boston, MA 02110

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

**$88,677.85**

---

**3.60** | Nonpriority creditor's name and mailing address
**Chalmers & Kubeck, Inc.**
PO Box 2447
Aston, PA 19014-0447

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

**$427,918.25**

---

| Debtor | **Limetree Bay Refining, LLC** | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|
| | Name | | | |

---

| 3.61 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |
|---|---|---|---|
| | **Chalmers & Kubeck, Inc.** | ■ Contingent | |
| | **PO Box 2447** | ■ Unliquidated | |
| | **Aston, PA 19014-0447** | ■ Disputed | |
| | Date(s) debt was incurred _ | | |
| | Last 4 digits of account number _ | Basis for the claim: **Completion Program Bonus** | |
| | | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.62 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$23,578.52** |
|---|---|---|---|
| | **Champion Petroleum, Inc.** | ☐ Contingent | |
| | **LOT #26 Julio N Matos Ind Park** | ☐ Unliquidated | |
| | **Carolina, PR 00984** | ☐ Disputed | |
| | Date(s) debt was incurred _ | | |
| | Last 4 digits of account number _ | Basis for the claim: **Trade Debt** | |
| | | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.63 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$2,680.49** |
|---|---|---|---|
| | **Charter Brokerage LLC** | ☐ Contingent | |
| | **383 Main Ave** | ☐ Unliquidated | |
| | **Suite 400** | ☐ Disputed | |
| | **Norwalk, CT 06851** | | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.64 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$421,308.55** |
|---|---|---|---|
| | **Classic Controls, Inc.** | ☐ Contingent | |
| | **5095 S. Lakeland Drive** | ☐ Unliquidated | |
| | **Lakeland, FL 33813** | ☐ Disputed | |
| | Date(s) debt was incurred _ | | |
| | Last 4 digits of account number _ | Basis for the claim: **Trade Debt** | |
| | | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.65 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$151,478.00** |
|---|---|---|---|
| | **Coking.com** | ☐ Contingent | |
| | **3901 Kings Row** | ☐ Unliquidated | |
| | **Reno, NV 89503** | ☐ Disputed | |
| | Date(s) debt was incurred _ | | |
| | Last 4 digits of account number _ | Basis for the claim: **Trade Debt** | |
| | | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.66 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$105,623.21** |
|---|---|---|---|
| | **Comdata Network, Inc.** | ☐ Contingent | |
| | | ☐ Unliquidated | |
| | Date(s) debt was incurred _ | ☐ Disputed | |
| | Last 4 digits of account number _ | Basis for the claim: **Trade Debt** | |
| | | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.67 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,713,794.51** |
|---|---|---|---|
| | **Complan USA LLC** | ☐ Contingent | |
| | **16417 Squyres Road** | ☐ Unliquidated | |
| | **Spring, TX 77379** | ☐ Disputed | |
| | Date(s) debt was incurred _ | | |
| | Last 4 digits of account number _ | Basis for the claim: **Trade Debt** | |
| | | Is the claim subject to offset? ■ No ☐ Yes | |

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

---

**3.68** | **Nonpriority creditor's name and mailing address**
**Compressed Air Corporation**
450 West 27 Street
Hialeah, FL 33010

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

**$142,967.03**

---

**3.69** | **Nonpriority creditor's name and mailing address**
**Compressor Controls Corporation**
4745 121st Street
Des Moines, IA 50323

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

**$142,689.83**

---

**3.70** | **Nonpriority creditor's name and mailing address**
**Concentric, LLC**
6311 Antoine
Houston, TX 77091

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

**$122,770.00**

---

**3.71** | **Nonpriority creditor's name and mailing address**
**Concur Technologies, Inc.**
62157 Collections Center Drive
Chicago, IL 60693

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

**$29,728.05**

---

**3.72** | **Nonpriority creditor's name and mailing address**
**Control Associates Caribe**
475 Street C
Guayabo, PR 00969-4272

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

**$1,010,072.19**

---

**3.73** | **Nonpriority creditor's name and mailing address**
**Control System Technologies, LLC**
PO Box 781686
Orlando, FL 32878

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

**$398,338.08**

---

**3.74** | **Nonpriority creditor's name and mailing address**
**Controls Southeast Inc.**
PO Box 742669
Atlanta, GA 30374-2669

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

**$2,870.36**

---

| Debtor | Limetree Bay Refining, LLC | Case number (if known) | 21-32354 |
|---|---|---|---|
| | Name | | |

---

| 3.75 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $1,634,277.00 |
|---|---|---|---|

**Coral Management Group LLC**
435 N. 2nd Street
Lewiston, NY 14092

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.76 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $99,274.50 |
|---|---|---|---|

**Core and Main LP**
PO Box 28330
St. Louis, MO 63146

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.77 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $15,946.00 |
|---|---|---|---|

**Cortelco Systems**
PO Box 7076
Caguas, PR 00726-7076

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.78 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $118,126.60 |
|---|---|---|---|

**Crawford Electric Supply**
36426 Hwy 30
Geismar, LA 70734

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.79 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $8,610.00 |
|---|---|---|---|

**Crowley Liner Services**
9487 Regency Square Blvd
Jacksonville, FL 32225

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.80 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $5,397.00 |
|---|---|---|---|

**Crucianpoint, LLC**
PO Box 223062
Christiansted, VI 00822

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.81 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $170,825.00 |
|---|---|---|---|

**Cruzan Environmental**
PO Box 3018
St. Croix, VI 00851

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☑ No ☐ Yes

---

| Debtor | **Limetree Bay Refining, LLC** | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|
| | Name | | | |

---

| 3.82 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $117,613.58 |
|---|---|---|---|

**Daily Thermetrics Corporation**
**5700 Hartsdale Drive**
**Houston, TX 77036**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.83 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $39,214.76 |
|---|---|---|---|

**Desalters-LLC**
**1947 Lago Vista Blvd**
**Palm Harbor, FL 34685**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.84 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $7,278.59 |
|---|---|---|---|

**DHL Express - USA**
**16592 Collections Center Drive**
**Chicago, IL 60693**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.85 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $569,424.84 |
|---|---|---|---|

**DNOW L.P.**
**PO Box 200822**
**Dallas, TX 75320-0822**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.86 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $75.00 |
|---|---|---|---|

**Don Peter**
**PO Box 5268**
**St. Croix, VI 00851**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.87 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $3,671,292.62 |
|---|---|---|---|

**Dresser-Rand Company**
**100 E Chemung St**
**Painted Post, NY 14870**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.88 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $12,949.84 |
|---|---|---|---|

**Dubois Chemicals Inc.**
**3630 East Kemper Road**
**Cincinnati, OH 45241**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | Limetree Bay Refining, LLC | Case number (if known) | 21-32354 |
|---|---|---|---|
| | Name | | |

| 3.89 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $35,243.82 |
|---|---|---|---|

Duke Earl Given
2839 W Kennewick Ave
#186
Kennewick, WA 99336

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.90 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $7,071.04 |
|---|---|---|---|

Dyer & Payne, Inc.
455 Plaza Drive
Atlanta, GA 30349

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.91 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $1,364,132.41 |
|---|---|---|---|

Dynamic Innovative Corporation
306 Williams Delight
Frederiksted, VI 00840

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.92 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $138,175.59 |
|---|---|---|---|

DYONYX, L.P.
13430 Northwest Freeway
Houston, TX 77040

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.93 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $96,894.00 |
|---|---|---|---|

Eaton Corporation
1000 Eaton Boulevard
Cleveland, OH 44122

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.94 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $29,530.00 |
|---|---|---|---|

Elastec Inc
1309 West Main Street
Carmi, IL 62821

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.95 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $25,034,562.76 |
|---|---|---|---|

Elite Turnaround Specialists, Ltd.
225 S 16th Street
La Porte, TX 77571

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| Debtor | **Limetree Bay Refining, LLC** | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|
| | Name | | | |

| 3.96 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |
|---|---|---|---|
| | **Elite Turnaround Specialists, Ltd.** | ■ Contingent | |
| | **225 S 16th Street** | ■ Unliquidated | |
| | **La Porte, TX 77571** | ☐ Disputed | |
| | Date(s) debt was incurred _ | | |
| | Last 4 digits of account number _ | Basis for the claim: **Completion Program Bonus** | |
| | | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.97 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$73,410.00** |
|---|---|---|---|
| | **Elliott Company** | ☐ Contingent | |
| | **901 N. 4th Street** | ☐ Unliquidated | |
| | **Jeannette, PA 15644** | ☐ Disputed | |
| | Date(s) debt was incurred _ | | |
| | Last 4 digits of account number _ | Basis for the claim: **Trade Debt** | |
| | | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.98 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$435,697.50** |
|---|---|---|---|
| | **Embark Consulting LLC** | ☐ Contingent | |
| | **2919 Commerce Street** | ☐ Unliquidated | |
| | **Suite 400** | ☐ Disputed | |
| | **Dallas, TX 75226** | | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.99 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$9,391.95** |
|---|---|---|---|
| | **Emerson Puerto Rico, Inc.** | ☐ Contingent | |
| | **475 Calle C Suite 501 Los Frailes** | ☐ Unliquidated | |
| | **Guayabo, PR 00969** | ☐ Disputed | |
| | Date(s) debt was incurred _ | | |
| | Last 4 digits of account number _ | Basis for the claim: **Trade Debt** | |
| | | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.100 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,062.50** |
|---|---|---|---|
| | **Emic Communications, LLC** | ☐ Contingent | |
| | **863 Mission Hills Drive** | ☐ Unliquidated | |
| | **New Braunfels, TX 78130** | ☐ Disputed | |
| | Date(s) debt was incurred _ | | |
| | Last 4 digits of account number _ | Basis for the claim: **Trade Debt** | |
| | | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.101 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$356,895.48** |
|---|---|---|---|
| | **Engineered Parts and Services, Inc.** | ☐ Contingent | |
| | **PO Box 1899** | ☐ Unliquidated | |
| | **Vega Alta, PR 00692-1899** | ☐ Disputed | |
| | Date(s) debt was incurred _ | | |
| | Last 4 digits of account number _ | Basis for the claim: **Trade Debt** | |
| | | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.102 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,336,277.51** |
|---|---|---|---|
| | **Englobal U.S. Inc.** | ☐ Contingent | |
| | **225 Portwall St.** | ☐ Unliquidated | |
| | **Houston, TX 77029** | ☐ Disputed | |
| | Date(s) debt was incurred _ | | |
| | Last 4 digits of account number _ | Basis for the claim: **Trade Debt** | |
| | | Is the claim subject to offset? ■ No  ☐ Yes | |

| Debtor | Limetree Bay Refining, LLC | | Case number (if known) | 21-32354 |
|---|---|---|---|---|
| | Name | | | |

---

**3.103** | Nonpriority creditor's name and mailing address

**Environmental Protection Agency**
**Region 2**
**290 Broadway**
**New York, NY 10007-1866**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **for notice purposes**

Is the claim subject to offset? ☑ No ☐ Yes

**Unknown**

---

**3.104** | Nonpriority creditor's name and mailing address

**Environmental Systems Corporation**
**10801 N. Mopac Expressway**
**Bldg. 1, Suite 200**
**Austin, TX 78759**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ☑ No ☐ Yes

**$126,390.00**

---

**3.105** | Nonpriority creditor's name and mailing address

**Envision VI**
**PO Box 7446**
**St. Thomas, VI 00801**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ☑ No ☐ Yes

**$6,160.00**

---

**3.106** | Nonpriority creditor's name and mailing address

**Erichson Company Inc**
**3008 18th Street**
**Metarie, LA 70002**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ☑ No ☐ Yes

**$62,450.00**

---

**3.107** | Nonpriority creditor's name and mailing address

**ERP Software Services LLC**
**1309 Coffeen Avenue**
**Suite 1200**
**Sheridan, WY 82801**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ☑ No ☐ Yes

**$194,230.00**

---

**3.108** | Nonpriority creditor's name and mailing address

**Evoqua Water Technologies LLC**
**28563 Network Place**
**Chicago, IL 60673-1285**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ☑ No ☐ Yes

**$434,206.64**

---

**3.109** | Nonpriority creditor's name and mailing address

**Excel Construction & Maintenance VI**
**8641 United Plaza Blvd**
**Baton Rouge, LA 70809**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☑ Contingent
☑ Unliquidated
☑ Disputed

Basis for the claim: **Completion Program Bonus**

Is the claim subject to offset? ☑ No ☐ Yes

**Unknown**

---

| Debtor | Limetree Bay Refining, LLC | Case number (if known) | 21-32354 |
|---|---|---|---|
| | Name | | |

---

**3.110** Nonpriority creditor's name and mailing address
**F&M Mafco, Inc.**
**9149 Dry Fork Road**
**Harrison, OH 45030**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No  ☐ Yes

**$85,750.00**

---

**3.111** Nonpriority creditor's name and mailing address
**Farrell Equipment & Controls, Inc.**
**263 Cox Street**
**Roselle, NJ 07203**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No  ☐ Yes

**$45,995.00**

---

**3.112** Nonpriority creditor's name and mailing address
**Federal Express (USVI)**
**701 Waterford Way**
**Miami, FL 33126**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No  ☐ Yes

**$2,010.81**

---

**3.113** Nonpriority creditor's name and mailing address
**Fern Engineering**
**PO Box 957**
**Wareham, MA 02571**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No  ☐ Yes

**$13,440.00**

---

**3.114** Nonpriority creditor's name and mailing address
**Fleetwood Project Services, LLC**
**5 Kagle Ct**
**Chapin, SC 29036**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No  ☐ Yes

**$70,000.00**

---

**3.115** Nonpriority creditor's name and mailing address
**Flemings' Transport Co., Inc.**
**PO Box 4310**
**St. Croix, VI 00851**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No  ☐ Yes

**$20,827.19**

---

**3.116** Nonpriority creditor's name and mailing address
**Flexicrew Technical, LLC**
**7047 Lee Hwy**
**Suite 100**
**Chattanooga, TN 37421**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No  ☐ Yes

**$18,750.00**

---

| Debtor | **Limetree Bay Refining, LLC** | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|

---

| 3.117 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$550.00** |
|---|---|---|---|

**Flexitank, Inc.**
**PO Box 51928**
**Toa Baja, PR 00950-1928**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** __Trade Debt__

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.118 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,082,523.27** |
|---|---|---|---|

**Flowserve US INC**
**4179 Collections Center Drive**
**Chcago, IL 60693**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** __Trade Debt__

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.119 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$325,027.14** |
|---|---|---|---|

**FMMVI, LLC**
**11634 Darryl Drive**
**Baton Rouge, LA 70815**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** __Trade Debt__

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.120 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$51,870.00** |
|---|---|---|---|

**FR Consulting LLC**
**Calle Sol A-6**
**Puertas Del Sol**
**Fajardo, PR 00738**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** __Trade Debt__

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.121 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$33,575.25** |
|---|---|---|---|

**Freepoint Commodities LLC**
**58 Commerce Road**
**Stamford, CT 06902**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** __Trade Debt__

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.122 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$9,415.00** |
|---|---|---|---|

**G.A.S. Global Services LLC**
**14100 Southwest Freeway**
**Suite 320**
**Sugar Land, TX 77479**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** __Trade Debt__

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.123 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$80,678.84** |
|---|---|---|---|

**G4S Secure Integration**
**PO Box 74008035**
**Chicago, IL 60674-8035**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** __Trade Debt__

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | Limetree Bay Refining, LLC | Case number (if known) | 21-32354 |
|---|---|---|---|
| | Name | | |

| 3.124 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $492,093.00 |
|---|---|---|---|

**3.124**

**Nonpriority creditor's name and mailing address**
**Gas Turbine Parts & Services, Inc.**
**421 Route 146**
**Halfmoon, NY 12065**

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

**$492,093.00**

---

**3.125**

**Nonpriority creditor's name and mailing address**
**General Gases of the VI, Inc.**
**PO Box 363868**
**San Juan, PR 00936-3868**

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

**$464,696.17**

---

**3.126**

**Nonpriority creditor's name and mailing address**
**Generator and Motor Services**
**601 Braddock Avenue**
**Turtle Creek, PA 15145**

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

**$145,122.39**

---

**3.127**

**Nonpriority creditor's name and mailing address**
**Gibson, Dunn, & Crutcher LLP**
**811 Main Street**
**Houston, TX 77002**

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __Legal Fees__

Is the claim subject to offset? ■ No ☐ Yes

**$1,010,485.57**

---

**3.128**

**Nonpriority creditor's name and mailing address**
**Global Engagement Support Services**
**PO Box 964**
**Christiansted, VI 00821**

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

**$16,442.46**

---

**3.129**

**Nonpriority creditor's name and mailing address**
**Gulf Oil Limited Partnership**
**80 Williams Street**
**Wellesley Hills, MA 02481**

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

**$251,423.20**

---

**3.130**

**Nonpriority creditor's name and mailing address**
**H & K Engineering, LLC**
**2644 S. Sherwood Forest Blvd**
**Baton Rouge, LA 70816**

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

**$346,129.12**

---

| Debtor | Limetree Bay Refining, LLC | Case number (if known) | 21-32354 |
|---|---|---|---|
| | Name | | |

---

**3.131** | Nonpriority creditor's name and mailing address
**Hatfield and Company, Inc.**
2475 Discovery Blvd.
Rockwall, TX 75032

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$202,692.40**

---

**3.132** | Nonpriority creditor's name and mailing address
**Heavy Materials, LLC**
1 Estate Montpellier
St. Croix, VI 00840

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$2,557.69**

---

**3.133** | Nonpriority creditor's name and mailing address
**HireRight LLC**
PO Box 847891
Dallas, TX 75284-7891

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$135.26**

---

**3.134** | Nonpriority creditor's name and mailing address
**HMT LLC**
24 Waterway Ave
The Woodlands, TX 77380

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$28,289.00**

---

**3.135** | Nonpriority creditor's name and mailing address
**HMT LLC**
24 Waterway Ave
The Woodlands, TX 77380

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
■ Contingent
■ Unliquidated
☐ Disputed

Basis for the claim:  **Completion Program Bonus**

Is the claim subject to offset? ■ No ☐ Yes

**Unknown**

---

**3.136** | Nonpriority creditor's name and mailing address
**Honeywell Enraf Americas, Inc.**
2000 Northfield Court
Roswell, GA 30076

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$826,490.20**

---

**3.137** | Nonpriority creditor's name and mailing address
**Honeywell International Inc (Proces**
1250 Sam Houston Parkway South
Houston, TX 77042

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$326,646.21**

---

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

---

**3.138** | **Nonpriority creditor's name and mailing address**
**Houston Dynamic Service, Inc.**
**8150 Lawndale**
**Houston, TX 77012**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$9,193.00**

---

**3.139** | **Nonpriority creditor's name and mailing address**
**Hudson Products Corporation**
**9660 Grunwald Rd**
**Beasley, TX 77417**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$9,957.00**

---

**3.140** | **Nonpriority creditor's name and mailing address**
**IHS Global Inc.**
**PO Box 847193**
**Dallas, TX 75284-7193**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$33,881.36**

---

**3.141** | **Nonpriority creditor's name and mailing address**
**Industrial Fittings & Valves**
**PO Box 2329**
**Toa Baja, PR 00951-2329**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$21,768.57**

---

**3.142** | **Nonpriority creditor's name and mailing address**
**InServ Field Services USVI, LLC**
**1900 N 161st East Ave**
**Tulsa, OK 74116**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: Check all that apply.
■ Contingent
■ Unliquidated
☐ Disputed

Basis for the claim:  **Completion Program Bonus**

Is the claim subject to offset? ■ No ☐ Yes

**Unknown**

---

**3.143** | **Nonpriority creditor's name and mailing address**
**Insulating Services, Inc.**
**10709 Granite St.**
**Suite H**
**Charlotte, NC 28273-6353**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$108,543.77**

---

**3.144** | **Nonpriority creditor's name and mailing address**
**Intertek USA, Inc.**
**200 Westlake Park Blvd.**
**Suite 400**
**Houston, TX 77079**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$1,781,755.76**

---

| Debtor | Limetree Bay Refining, LLC | Case number (if known) | 21-32354 |
|---|---|---|---|
| | Name | | |

| 3.145 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $9,998.20 |
|---|---|---|---|

**3.145**

Nonpriority creditor's name and mailing address
**ISS Marine Services, Inc.**
**11 North Water Street**
**Mobile, AL 36602**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

$9,998.20

---

**3.146**

Nonpriority creditor's name and mailing address
**Jeffrey Rinker**
**4410 Westheimer Rd.**
**Apt. 1401**
**Houston, TX 77027**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

$712.70

---

**3.147**

Nonpriority creditor's name and mailing address
**John C. Cothern**
**8 Barberry Court**
**Columbia, SC 29212**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

$70,000.00

---

**3.148**

Nonpriority creditor's name and mailing address
**John Crane Inc.**
**24929 Network Place**
**Chicago, IL 60673-1249**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

$767,815.90

---

**3.149**

Nonpriority creditor's name and mailing address
**John Crane Inc.**
**24929 Network Place**
**Chicago, IL 60673-1249**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

$233,490.25

---

**3.150**

Nonpriority creditor's name and mailing address
**John Zink Co LLC**
**11920 E Apache St**
**Tulsa, OK 74116**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

$235,246.88

---

**3.151**

Nonpriority creditor's name and mailing address
**Johnson Matthey Inc**
**d/b/a TracerCo**
**88724 Expedite Way**
**Chicago, IL 60695**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

$17,947.00

---

| Debtor | Limetree Bay Refining, LLC | Case number (if known) | 21-32354 |
|--------|----------------------------|------------------------|----------|
|        | Name                       |                        |          |

| 3.152 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $4,328.48 |
|-------|--------------------------------------------------|--------------------------------------------------------------------|-----------|

**Jones Diesel and Marine LLC**
**8510 SR 207**
**Hastings, FL 32195**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.153 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $59,942.66 |
|-------|--------------------------------------------------|--------------------------------------------------------------------|------------|

**Kelvion Inc**
**Dept. 1195**
**Tulsa, OK 74182**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.154 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $685.40 |
|-------|--------------------------------------------------|--------------------------------------------------------------------|---------|

**Law Office of Dougals L Capdeville**
**2107 Company Street**
**Suite 2**
**Christiansted, VI 00820**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: __Legal Services__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.155 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $48,142.50 |
|-------|--------------------------------------------------|--------------------------------------------------------------------|------------|

**Law Offices of Roberta M. Rossi**
**101 Industrial Court**
**Conroe, TX 77301**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: __Legal Fees__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.156 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $2,553.66 |
|-------|--------------------------------------------------|--------------------------------------------------------------------|-----------|

**Limetree Bay Energy, LLC**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: __Intercompany Debt__

Is the claim subject to offset? ☐ No ■ Yes

---

| 3.157 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $30,936,683.40 |
|-------|--------------------------------------------------|--------------------------------------------------------------------|----------------|

**Limetree Bay Refining Marketing, LLC**
**#1 Estate Hope**
**Christiansted, VI 00820**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: __Intercompany Debt__

Is the claim subject to offset? ☐ No ■ Yes

---

| 3.158 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $93,570,563.51 |
|-------|--------------------------------------------------|--------------------------------------------------------------------|----------------|

**Limetree Bay Refining Operating, LLC**
**#1 Estate Hope**
**Christiansted, VI 00820**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: __Intercompany Debt__

Is the claim subject to offset? ☐ No ■ Yes

---

| Debtor | Limetree Bay Refining, LLC | Case number (if known) | 21-32354 |
|---|---|---|---|
| | Name | | |

---

**3.159** Nonpriority creditor's name and mailing address
**Limetree Bay Terminals, LLC**
**#1 Estate Hope**
**Christiansted, VI 00820-5652**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  **Intercompany Debt**

Is the claim subject to offset? ☐ No  ☑ Yes

**$44,035,428.23**

---

**3.160** Nonpriority creditor's name and mailing address
**Lo-Rez Vibration Control Ltd.**
**186 W. 8th Ave.**
**Vancouver, BC V5Y 1N2**
**CANADA**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ☑ No  ☐ Yes

**$1,024.00**

---

**3.161** Nonpriority creditor's name and mailing address
**Lockton Companies, LLC**
**PO Box 123036**
**Dallas, TX 75312-3036**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ☑ No  ☐ Yes

**$65,000.00**

---

**3.162** Nonpriority creditor's name and mailing address
**Lucas Associates Temps, Inc.**
**950 East Paces Ferry Road**
**Suite 2300**
**Atlanta, GA 30326**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ☑ No  ☐ Yes

**$31,104.00**

---

**3.163** Nonpriority creditor's name and mailing address
**M. R. Franceshini, Inc**
**611 Condado Ave**
**San Juan, PR 00907**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ☑ No  ☐ Yes

**$89,598.81**

---

**3.164** Nonpriority creditor's name and mailing address
**Mammoet USA South, Inc.**
**20525 FM 521**
**Rosharon, TX 77583**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ☑ No  ☐ Yes

**$549,548.76**

---

**3.165** Nonpriority creditor's name and mailing address
**Marsh USA Inc.**
**PO Box 846015**
**Dallas, TX 75284-6015**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ☑ No  ☐ Yes

**$173,233.63**

---

| Debtor | **Limetree Bay Refining, LLC** | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|
| | Name | | | |

| 3.166 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$37,900.00** |
|---|---|---|---|
| | **McDonough Construction Rentals, Inc**<br>**8400 Villa Dr**<br>**Houston, TX 77061** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** _Trade Debt_ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.167 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$120.00** |
|---|---|---|---|
| | **Melissa Gilbert**<br>**P. O. Box 2676**<br>**Frederiksted, VI 00841** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** _Trade Debt_ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.168 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$0.04** |
|---|---|---|---|
| | **MetLife - Group Benefits**<br>**PO Box 804666**<br>**Kansas City, MO 64180-4466** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** _Trade Debt_ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.169 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$96,743.85** |
|---|---|---|---|
| | **Mistras Group, Inc.**<br>**PO Box 405694**<br>**Atlanta, GA 30384-5694** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** _Trade Debt_ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.170 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$43,281.50** |
|---|---|---|---|
| | **Morcom International, Inc.**<br>**3656 Centerview Drive**<br>**Unit 1**<br>**Chantilly, VA 20151** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** _Trade Debt_ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.171 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$66,356.75** |
|---|---|---|---|
| | **Mostardi Platt**<br>**888 Industrial Drive**<br>**Elmhurst, IL 60126** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** _Trade Debt_ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.172 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$575,114.45** |
|---|---|---|---|
| | **Muse, Stancil & Co.**<br>**5080 Spectrum Drive**<br>**Addison, TX 75001** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** _Trade Debt_ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| Debtor | Limetree Bay Refining, LLC | Case number (if known) | 21-32354 |
|---|---|---|---|
| | Name | | |

| 3.173 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $61,767.56 |
|---|---|---|---|
| | NAES Corporation<br>1180 NW Maple Street<br>Suite 200<br>Issaquah, WA 98027 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: __Trade Debt__ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.174 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $137,940.41 |
|---|---|---|---|
| | Nalco U.S. 2 Inc<br>1601 West Diehl Road<br>Naperville, IL 60563 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: __Trade Debt__ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.175 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $390,121.78 |
|---|---|---|---|
| | Nalco U.S. 2 Inc<br>1601 West Diehl Road<br>Naperville, IL 60563 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: __trade debt__ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.176 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $12,035.00 |
|---|---|---|---|
| | National Electric Motor & Supply Co<br>PO Box 40443<br>Baton Rouge, LA 70835 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: __Trade Debt__ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.177 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $5,280.00 |
|---|---|---|---|
| | National Electric Motor & Supply Co<br>PO Box 40443<br>Baton Rouge, LA 70835 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: __Trade debt__ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.178 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $13,132,667.83 |
|---|---|---|---|
| | National Industrial Services, LLC<br>PO Box 1545<br>Kingshill, St. Croix, VI 00851 | ☐ Contingent<br>☐ Unliquidated<br>■ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: __Trade Debt__ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.179 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|
| | National Industrial Services, LLC<br>PO Box 1545<br>Kingshill, St. Croix, VI 00851 | ■ Contingent<br>■ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: __Completion Program Bonus__ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| Debtor | **Limetree Bay Refining, LLC** | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|
| | Name | | | |

| 3.180 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$89,140.79** |
|---|---|---|---|
| | **National Parts** | ☐ Contingent | |
| | **455 Plaza Drive** | ☐ Unliquidated | |
| | **Atlanta, GA 30349** | ☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.181 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$2,673.00** |
|---|---|---|---|
| | **Nettime Solutions LLC** | ☐ Contingent | |
| | **1600 N. Desert Drive** | ☐ Unliquidated | |
| | **Suite 125** | ☐ Disputed | |
| | **Tempe, AZ 85281** | | |
| | Date(s) debt was incurred _ | **Basis for the claim:** **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.182 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$2,242.50** |
|---|---|---|---|
| | **New York Wiping & Industrial Produc** | ☐ Contingent | |
| | **PO Box 2151** | ☐ Unliquidated | |
| | **San Juan, PR 00922-2151** | ☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.183 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$2,089.00** |
|---|---|---|---|
| | **O'Neale's Transport, Inc.** | ☐ Contingent | |
| | **PO Box 7550** | ☐ Unliquidated | |
| | **Christiansted, VI 00823** | ☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.184 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$350.00** |
|---|---|---|---|
| | **Ocean Systems Laboratory Inc.** | ☐ Contingent | |
| | **6194 ESTATE FRYDENHOJ** | ☐ Unliquidated | |
| | **St Thomas, VI 00802** | ☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.185 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$25,830.00** |
|---|---|---|---|
| | **Oliver Exterminating of St. Croix I** | ☐ Contingent | |
| | **PO Box 787** | ☐ Unliquidated | |
| | **St. Croix, VI 00821** | ☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.186 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$5,763.00** |
|---|---|---|---|
| | **Operation Technology, Inc** | ☐ Contingent | |
| | **17 Goodyear** | ☐ Unliquidated | |
| | **Irvine, CA 92618** | ☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| Debtor | **Limetree Bay Refining, LLC** | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|
| | Name | | | |

---

| 3.187 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$48,195.00** |
|---|---|---|---|
| | **Opportune LLP**<br>**711 Louisiana Street**<br>**Houston, TX 77002** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

---

| 3.188 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |
|---|---|---|---|
| | **ParFab Field Services, LLC** | ■ Contingent<br>■ Unliquidated<br>■ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Completion Program Bonus** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

---

| 3.189 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,657.00** |
|---|---|---|---|
| | **Paxton Van Lines, Inc.**<br>**5300  Port Royal Road**<br>**Springfield, VA 22151** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

---

| 3.190 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$0.00** |
|---|---|---|---|
| | **Pem-Tech Inc**<br>**12144 Dairy Ashford**<br>**Bldg 2**<br>**Sugar Lane, TX 77478** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

---

| 3.191 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$9,000.00** |
|---|---|---|---|
| | **Pentair Filtrations Solutions, LLC**<br>**16622 Collections Center Dr**<br>**Chicago, IL 60693** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

---

| 3.192 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$482,845.65** |
|---|---|---|---|
| | **Perkins Coie LLP**<br>**1201 Third Avenue**<br>**Seattle, WA 98101** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Legal Fees** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

---

| 3.193 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$200,000.00** |
|---|---|---|---|
| | **Phil Badgwell II**<br>**1835 Langham Forest Blvd**<br>**Orange, TX 77630** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

---

| Debtor | Limetree Bay Refining, LLC | Case number *(if known)* | 21-32354 |
|---|---|---|---|
| | Name | | |

| 3.194 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$14,095.00** |
|---|---|---|---|

**Piller TSC Blower Corp**
**445 Duane Avenue**
**Schenectady, NY 12304**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.195 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$9,000.00** |
|---|---|---|---|

**Pimsoft, Inc**
**14701 St. Mary's Lane**
**Suite 175**
**Houston, TX 77079**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.196 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$34,018.17** |
|---|---|---|---|

**Pinnacle Asset Integrity Services**
**d/b/a PinnacleArt**
**1 One Pinnacle Road**
**Pasadena, TX 77504**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.197 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$2,308,633.57** |
|---|---|---|---|

**Pinnacle Services, LLC**
**6002 Diamond Ruby**
**Christiansted, VI 00820**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.198 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |
|---|---|---|---|

**Pinnacle Services, LLC**
**6002 Diamond Ruby**
**Christiansted, VI 00820**

■ Contingent
■ Unliquidated
■ Disputed

Date(s) debt was incurred _

Basis for the claim: __Completion Program Bonus__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.199 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$11,897.85** |
|---|---|---|---|

**Piping Technology & Products, Inc.**
**PO Box 34506**
**Houston, TX 77234-4506**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.200 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$41,678.96** |
|---|---|---|---|

**Polaris Engineering, Inc**
**PO Box 125**
**Lake Charles, LA 70602**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | 21-32354 |
|---|---|---|---|
| | Name | | |

| 3.201 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$8,513.88** |
|---|---|---|---|

**Powmat Ltd**
**321 Usgers Road**
**Ballston Lake, NY 12019**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.202 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$186,382.53** |
|---|---|---|---|

**Precision Engineering Inc**
**400 Saint Loius St**
**Mobile, AL 36602**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.203 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$160,589.09** |
|---|---|---|---|

**Precision Filtration Products**
**PO Box 218**
**Pennsburg, PA 18073-0218**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.204 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$109,609.46** |
|---|---|---|---|

**Premium Inspection & Testing, Inc**
**8225 Florida Blvd**
**Baton Rouge, LA 70806**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.205 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$88,285.91** |
|---|---|---|---|

**Prestige Technology Corp**
**1101 South Rogers Circle**
**Boca Raton, FL 33487**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.206 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$141,299.54** |
|---|---|---|---|

**Primaisla Inc**
**3009 Pamplico Hwy**
**Florence, SC 29505**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.207 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$57,033.00** |
|---|---|---|---|

**Priority Roro Services**
**PO Box 3251**
**Mayaguez, PR 00880**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| Debtor | Limetree Bay Refining, LLC | Case number (if known) | 21-32354 |
|---|---|---|---|
| | Name | | |

| 3.208 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $114,641.96 |
|---|---|---|---|

**Process Technical Services, Inc.**
14550 Torrey Chase Blvd
Suite 220
Houston, TX 77014

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.209 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $284,600.00 |
|---|---|---|---|

**Prometheus Group Enterpises, LLC**
1101 Haynes Street
Suite 218
Raleigh, NC 27604

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.210 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $37,903.23 |
|---|---|---|---|

**Puerto Rico Valve & Fitting, LLC**
393 Canas St
Estancias  Del Rio
Hormigueros, PR 00660

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.211 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $1,032.50 |
|---|---|---|---|

**Quality Electric Supply, Inc.**
6703 Peters Rest.
Christiansted, VI 00820

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.212 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $38,936.75 |
|---|---|---|---|

**RAC Enterprises, Inc.**
PO Box 6377
Caguas, PR 00726-6377

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.213 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $38,790.62 |
|---|---|---|---|

**Rafael Benitez Carrillo, Inc.**
PO Box 362769
San Juan, PR 00936-2769

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.214 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $17,673.71 |
|---|---|---|---|

**Ramboll US Corp**
4350 N Fairfax Drive
Arlington, TX 10167

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| Debtor | **Limetree Bay Refining, LLC** | Case number (*if known*) | **21-32354** |
|---|---|---|---|
| | Name | | |

---

**3.215** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,544,407.79**

**Reactor Resources LLC**
**3000 FM 517 W.**
**Alvin, TX 77511**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

---

**3.216** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,586.10**

**RelaDyne Reliability Services Inc**
**15150 West Drive**
**Houston, TX 77053-4818**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

---

**3.217** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$19,233.24**

**Relevant Industrial, LLC**
**PO Box 95605**
**Grapevine, TX 76099-9730**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

---

**3.218** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$206,994.40**

**Resal Inc.**
**2900 Tuxedo Avenue**
**West Palm Beach, FL 33405**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

---

**3.219** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$489,732.69**

**Rev1 Oil & Gas LLC**
**100 N Tampa St.**
**Suite 2300**
**Tampa, FL 33602**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

---

**3.220** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$18,365.33**

**RIMCO**
**312 John F. Kennedy KM 3.7**
**San Juan, PR 00920**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

---

**3.221** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$57,282.46**

**Ritz Instrument Transformers, Inc**
**25 Hamburg Ave**
**Lavonia, GA 30553**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

---

| 3.222 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,360.00** |
|---|---|---|---|

**Rocco Colabella**
**13035 Royal George Avenue**
**Odessa, FL 33556**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: __**Trade Debt**__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.223 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,046,534.14** |
|---|---|---|---|

**Rockwell Automation Puerto RIco, Inc**
**Calle 1 Metro Office 6**
**Suite 304**
**Guayabo, PR 00968**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: __**Trade Debt**__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.224 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$30.00** |
|---|---|---|---|

**Roland Richardson**
**8A-1 Carlton**
**St. Croix, VI 00840**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: __**Trade Debt**__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.225 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$68,015.00** |
|---|---|---|---|

**Rotating Machinery Services, Inc.**
**2760 Baglyos Circle**
**Bethlehem, PA 18020**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: __**Trade Debt**__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.226 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$218,753.58** |
|---|---|---|---|

**RTP Environmental Associates, Inc.**
**304-A West Millbrook Road**
**Raleigh, NC 27609**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: __**Trade Debt**__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.227 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$21,080.00** |
|---|---|---|---|

**Sampling Systems**
**708 N Main St.**
**Sweeny, TX 77480**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: __**Trade Debt**__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.228 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$20,862.02** |
|---|---|---|---|

**Savage Services**
**PO Box 30015**
**Salt Lake City, UT 84130**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: __**Trade Debt**__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | Limetree Bay Refining, LLC | Case number (if known) | 21-32354 |
|---|---|---|---|
| | Name | | |

---

**3.229** | **Nonpriority creditor's name and mailing address**
Savage St. Croix, LLC
Dept. 418
Salt Lake Clty, UT 84130

Date(s) debt was incurred _
Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

$2,936,592.60

---

**3.230** | **Nonpriority creditor's name and mailing address**
Securities and Exchange Comm.
175 West Jackson Blvd.
Suite 900
Chicago, IL 60604

Date(s) debt was incurred _
Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **for notice purposes**

Is the claim subject to offset? ■ No ☐ Yes

$0.00

---

**3.231** | **Nonpriority creditor's name and mailing address**
Sedgwick Claims Mgmt Services, Inc
1833 Centre Point Circle
Suite 139
Naperville, IL 60639

Date(s) debt was incurred _
Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

$1,155,000.00

---

**3.232** | **Nonpriority creditor's name and mailing address**
Sentinel Integrity Solutions VI
6606 Miller Road 2
Houston, TX 77049

Date(s) debt was incurred _
Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

$153,111.54

---

**3.233** | **Nonpriority creditor's name and mailing address**
SGS North America, Inc
6601 Kirkville Road
East Syracuse, NY 13057

Date(s) debt was incurred _
Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

$6,913.00

---

**3.234** | **Nonpriority creditor's name and mailing address**
Sherwin-Williams
35-36 Industrial Park
St. Croix, VI 00820

Date(s) debt was incurred _
Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

$3,431.40

---

**3.235** | **Nonpriority creditor's name and mailing address**
Sloan Schoyer
P. O. Box 280
Biddeford Pool, ME 04006

Date(s) debt was incurred _
Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

$32,121.00

---

| Debtor | Limetree Bay Refining, LLC | Case number (if known) | 21-32354 |
|---|---|---|---|
| | Name | | |

---

**3.236** | **Nonpriority creditor's name and mailing address**
**South Coast Fire & Safety**
**6230 Brookhill Dr.**
**Houston, TX 77087**

Date(s) debt was incurred _
Last 4 digits of account number _

**As of the petition filing date, the claim is:** *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** Trade Debt

Is the claim subject to offset? ■ No ☐ Yes

**$24,985.12**

---

**3.237** | **Nonpriority creditor's name and mailing address**
**Southeast Rigging Inc.**
**429 Talleyrand Avenue**
**Jacksonville, FL 32202**

Date(s) debt was incurred _
Last 4 digits of account number _

**As of the petition filing date, the claim is:** *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** Trade Debt

Is the claim subject to offset? ■ No ☐ Yes

**$4,106.25**

---

**3.238** | **Nonpriority creditor's name and mailing address**
**Spectrum Environmental Solutions**
**2340 W. Braker Lane**
**Austin, TX 78642**

Date(s) debt was incurred _
Last 4 digits of account number _

**As of the petition filing date, the claim is:** *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** Trade Debt

Is the claim subject to offset? ■ No ☐ Yes

**$17,897.50**

---

**3.239** | **Nonpriority creditor's name and mailing address**
**Speed Valve & Specialty Infrared, Inc.**
**951  E FM 646**
**Dickinson, TX 77539**

Date(s) debt was incurred _
Last 4 digits of account number _

**As of the petition filing date, the claim is:** *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** Trade Debt

Is the claim subject to offset? ■ No ☐ Yes

**$13,998.00**

---

**3.240** | **Nonpriority creditor's name and mailing address**
**Sprung Instant Structures, Inc.**
**5711 West Dannon Way**
**West Jordan, UT 84081**

Date(s) debt was incurred _
Last 4 digits of account number _

**As of the petition filing date, the claim is:** *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** Trade Debt

Is the claim subject to offset? ■ No ☐ Yes

**$54,829.84**

---

**3.241** | **Nonpriority creditor's name and mailing address**
**Stantec Consulting Services Inc**
**13980 Collections Center Drive**
**Chicago, IL 60693**

Date(s) debt was incurred _
Last 4 digits of account number _

**As of the petition filing date, the claim is:** *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** Trade Debt

Is the claim subject to offset? ■ No ☐ Yes

**$13,494.00**

---

**3.242** | **Nonpriority creditor's name and mailing address**
**Stanton Chase of Houston, LLC**
**11700 Katy Freeway**
**Suite 630**
**Houston, TX 77079**

Date(s) debt was incurred _
Last 4 digits of account number _

**As of the petition filing date, the claim is:** *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** Trade Debt

Is the claim subject to offset? ■ No ☐ Yes

**$372,200.00**

---

| Debtor | Limetree Bay Refining, LLC | Case number (if known) | 21-32354 |
|---|---|---|---|
| | Name | | |

---

**3.243** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$16,090.00**

**Steel and Pipes Inc**
PO Box 5309
Caguas, PR 00726

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

**3.244** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$8,750.00**

**Stormgeo, Inc.**
Dept. 3728
Dallas, TX 75312-3728

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

**3.245** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$29,050.00**

**Stout Risius Ross, Inc.**
1700  Pacific Avenue
Dallas, TX 75201

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

**3.246** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$117,700.00**

**Sulphur Experts Inc.**
12 Manning Close NE
Suite 102
Calgary, Alberta T2E 7N6
CANADA

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

**3.247** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$118,569.38**

**Sulzer Pumps (US) Inc.**
200 SW Market St
Portland, OR 97201

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

**3.248** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$837,495.80**

**Sulzer Turbo Services Houston, Inc.**
11518 Old La Porte Road
La Porte, TX 77571

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

**3.249** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$137,080.62**

**Sulzer Turbo Services New Orleans I**
1516 Engineers Road
Belle Chasse, LA 70037

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| Debtor | **Limetree Bay Refining, LLC** | Case number *(if known)* | **21-32354** |
|---|---|---|---|
| | Name | | |

---

**3.250** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$38,000.58**

**Sunbelt Supply Co.**
**d/b/a Major Inc.**
**210 McGaw Drive**
**Edison, NJ 75395-1037**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.251** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$102,377.50**

**Supra Products of PR, Inc.**
**PO Box 810173**
**Carolina, PR 00981-0173**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.252** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$70,000.00**

**Synapse Consulting Services LLC**
**1227 Princeton St**
**Columbia, SC 29205**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.253** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$14,761.00**

**Teledyne Instruments, Inc.**
**12497 Collections Center Dr**
**Chicago, IL 60693**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.254** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$447,634.92**

**The Dow Chemical Company**
**1 East Main Street**
**Bay City, MI 48708**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.255** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown**

**The Gov't of The U.S. Virgin Islands**
**Department of Finance**
**2314 Kronprinsdens Gade**
**St. Thomas, VI 00804**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.256** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$0.00**

**The Gov't of the U.S. Virgin Islands**
**Dept. of Planning & Natural Resources**
**Div. of Environmental Protection**
**45 Mars Hill**
**Frederiksted, St. Croix, VI 00840**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __for notice purposes__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | Limetree Bay Refining, LLC | Case number (if known) | 21-32354 |
|---|---|---|---|
| | Name | | |

---

**3.257** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$84,569.45**

Thermo Process Instruments L.P.
27 Forge Parkway
Franklin, MA 02038

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  Trade Debt

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

---

**3.258** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$161,320.30**

Three L Inc
12235 Robin Blvd
Houston, TX 77045-4826

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  Trade Debt

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

---

**3.259** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$70,833.00**

Three L Inc
12235 Robin Blvd
Houston, TX 77045-4826

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  Trade Debt

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

---

**3.260** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$16,717.74**

ThunderCLouds Labs LLC
20759 Fenwick Dr
Ashburn, VA 20147

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  Trade Debt

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

---

**3.261** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$754,982.37**

TISI VI, LLC
13131 Dairy Ashford Rd
Suite 600
Sugar Land, TX 77478

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  Trade Debt

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

---

**3.262** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$7,316.07**

Tomas Cuerda, Inc
Calle 2 #116 Villa Nevarez Commerci
San Juan, PR 00927

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  Trade Debt

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

---

**3.263** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$367,585.51**

Total Safety U.S., Inc.
11111 Wilcrest Green Drive
Dallas, TX 75265-4171

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  Trade Debt

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

---

| Debtor | Limetree Bay Refining, LLC | Case number (if known) | 21-32354 |
|---|---|---|---|
| | Name | | |

---

**3.264** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$22,857.00**

**Trane Puerto Rico, Inc.**
PO Box 9000
San Juan, PR 00908

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

---

**3.265** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$1,205.08**

**Tricor Direct Inc**
d/b/a Seton
PO Box 95904
Chicago, IL 60694

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

---

**3.266** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$37,495.76**

**Trinity Consultants Inc**
PO Box 972047
Dallas, TX 75397-2047

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

---

**3.267** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$26,125.25**

**Tropical Shipping Company Limited**
PO Box 3003
Kingshill, VI 00851

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

---

**3.268** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$139,900.80**

**TRS Global Services, LLC**
2105 Skinner Road
Houston, TX 77093

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

---

**3.269** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **Unknown**

**TTI-Peak**

■ Contingent
■ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: __Completion Program Bonus__

Is the claim subject to offset? ■ No ☐ Yes

---

**3.270** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$621,953.17**

**Turnaround Consulting Services, LLC**
3618 Sierra Circle
Sulphur, LA 70665

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Limetree Bay Refining, LLC** | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|
| | Name | | | |

---

| 3.271 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **Unknown** |
|---|---|---|---|
| | **Turnaround Consulting Services, LLC**<br>**3618 Sierra Circle**<br>**Sulphur, LA 70665** | ■ Contingent<br>■ Unliquidated<br>■ Disputed | |
| | Date(s) debt was incurred __ | | |
| | Last 4 digits of account number __ | Basis for the claim: **Completion Program Bonus** | |
| | | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.272 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$24,558.00** |
|---|---|---|---|
| | **Twin City Clarage, LLC**<br>**5959 Trenton Lane**<br>**Minneapolis, MN 55442-3237** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | | |
| | Last 4 digits of account number __ | Basis for the claim: **Trade Debt** | |
| | | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.273 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$12,600.00** |
|---|---|---|---|
| | **Twin City Island Spirits, Inc**<br>**4000 Sion Farm**<br>**Christiansted, VI 00820** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | | |
| | Last 4 digits of account number __ | Basis for the claim: **Trade Debt** | |
| | | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.274 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$37,013.75** |
|---|---|---|---|
| | **Tysam Tech LLC**<br>**PO Box 8438**<br>**St. Croix, VI 00823** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | | |
| | Last 4 digits of account number __ | Basis for the claim: **Trade Debt** | |
| | | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.275 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$0.00** |
|---|---|---|---|
| | **U.S. Attorney's Office**<br>**Distrct of the Virgin Islands**<br>**1108 King Street**<br>**Suite 201**<br>**Christiansted, St. Croix, VI 00820-4951** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: **for notice purposes** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.276 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$0.00** |
|---|---|---|---|
| | **U.S. Attorney's Office**<br>**Southern District of Texas**<br>**1000 Louisiana Street**<br>**Suite 2300**<br>**Houston, TX 77002** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: **for notice purposes** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.277 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **Unknown** |
|---|---|---|---|
| | **UHP Projects, Inc.** | ■ Contingent<br>■ Unliquidated<br>■ Disputed | |
| | Date(s) debt was incurred __ | | |
| | Last 4 digits of account number __ | Basis for the claim: **Completion Program Bonus** | |
| | | Is the claim subject to offset? ■ No ☐ Yes | |

---

Debtor   **Limetree Bay Refining, LLC**
_____
Name

Case number (if known)   **21-32354**
_____

| | |
|---|---|
| **3.278** | |

| | | |
|---|---|---|
| **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **Unknown** |
| Universal Plant Services, (VI), LLC | ☑ Contingent | |
| 806 Seaco Court | ☑ Unliquidated | |
| Deer Park, TX 77536 | ☑ Disputed | |
| Date(s) debt was incurred _ | | |
| Last 4 digits of account number _ | **Basis for the claim:** __Completion Program Bonus__ | |
| | Is the claim subject to offset? ☑ No ☐ Yes | |

| | |
|---|---|
| **3.279** | |

| | | |
|---|---|---|
| **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$128,018.82** |
| URVI, Inc. | ☐ Contingent | |
| PO Box 100711 | ☐ Unliquidated | |
| Atlanta, GA 30384-0071 | ☐ Disputed | |
| Date(s) debt was incurred _ | | |
| Last 4 digits of account number _ | **Basis for the claim:** __Trade Debt__ | |
| | Is the claim subject to offset? ☑ No ☐ Yes | |

| | |
|---|---|
| **3.280** | |

| | | |
|---|---|---|
| **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$0.00** |
| V.I. Bureau of Internal Revenue | ☐ Contingent | |
| 4008 Estate Diamond | ☐ Unliquidated | |
| Plot 7-B | ☐ Disputed | |
| Christiansted, VI 00820-4421 | | |
| Date(s) debt was incurred _ | **Basis for the claim:** __for notice purposes__ | |
| Last 4 digits of account number _ | Is the claim subject to offset? ☑ No ☐ Yes | |

| | |
|---|---|
| **3.281** | |

| | | |
|---|---|---|
| **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **Unknown** |
| V.I. Industrial Services, LLC | ☑ Contingent | |
| PMB #6002 Est. Diamond Ruby | ☑ Unliquidated | |
| Christiansted, VI 00820 | ☑ Disputed | |
| Date(s) debt was incurred _ | | |
| Last 4 digits of account number _ | **Basis for the claim:** __Completion Program Bonus__ | |
| | Is the claim subject to offset? ☑ No ☐ Yes | |

| | |
|---|---|
| **3.282** | |

| | | |
|---|---|---|
| **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$619,690.00** |
| V.I. Recycling Company | ☐ Contingent | |
| PMB1026002 Diamond Ruby | ☐ Unliquidated | |
| Christiansted, VI 00820 | ☐ Disputed | |
| Date(s) debt was incurred _ | | |
| Last 4 digits of account number _ | **Basis for the claim:** __Trade Debt__ | |
| | Is the claim subject to offset? ☑ No ☐ Yes | |

| | |
|---|---|
| **3.283** | |

| | | |
|---|---|---|
| **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **Unknown** |
| V.I. Terminal Services (VITS) | ☑ Contingent | |
| | ☑ Unliquidated | |
| | ☑ Disputed | |
| Date(s) debt was incurred _ | | |
| Last 4 digits of account number _ | **Basis for the claim:** __Completion Program Bonus__ | |
| | Is the claim subject to offset? ☑ No ☐ Yes | |

| | |
|---|---|
| **3.284** | |

| | | |
|---|---|---|
| **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$470.00** |
| Veconinter USA, LLC | ☐ Contingent | |
| 7205NW 19th St. | ☐ Unliquidated | |
| Suite 303 | ☐ Disputed | |
| Miami, FL 33126 | | |
| Date(s) debt was incurred _ | **Basis for the claim:** __Trade Debt__ | |
| Last 4 digits of account number _ | Is the claim subject to offset? ☑ No ☐ Yes | |

| Debtor | **Limetree Bay Refining, LLC** | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|
| | Name | | | |

| 3.285 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$4,196,472.15** |
|---|---|---|---|
| | **Versa Integrity Group, Inc.**<br>**4301 Hwy 27 South**<br>**Sulphur, LA 70665** | ☐ Contingent<br>☐ Unliquidated<br>■ Disputed | |
| | Date(s) debt was incurred _<br>Last 4 digits of account number _ | **Basis for the claim:** __Trade Debt__<br><br>Is the claim subject to offset? ■ No ☐ Yes | |

| 3.286 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$3,395.90** |
|---|---|---|---|
| | **Victory Energy Operations, LLC**<br>**10701 E. 126th ST N.**<br>**Collinsville, OK 74021** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _<br>Last 4 digits of account number _ | **Basis for the claim:** __Trade Debt__<br><br>Is the claim subject to offset? ■ No ☐ Yes | |

| 3.287 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$511,572.00** |
|---|---|---|---|
| | **Virgin Islands Paving, Inc.**<br>**PO Box 4720**<br>**Kingshill, VI 00851-4720** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _<br>Last 4 digits of account number _ | **Basis for the claim:** __Trade Debt__<br><br>Is the claim subject to offset? ■ No ☐ Yes | |

| 3.288 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$1,936.00** |
|---|---|---|---|
| | **Visual Edge Technology**<br>**d/b/a AXSA IMA**<br>**2100 N Reagan Blvd.**<br>**Longwood, FL 32750** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _<br>Last 4 digits of account number _ | **Basis for the claim:** __Trade Debt__<br><br>Is the claim subject to offset? ■ No ☐ Yes | |

| 3.289 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$0.00** |
|---|---|---|---|
| | **Viya**<br>**4006 Estate Diamond**<br>**Christiansted, VI 00820-4436** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _<br>Last 4 digits of account number _ | **Basis for the claim:** __Trade Debt__<br><br>Is the claim subject to offset? ■ No ☐ Yes | |

| 3.290 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$25,566.66** |
|---|---|---|---|
| | **Voith US Inc.**<br>**c/o GBS Accounting**<br>**PO Box 15639**<br>**York, PA 17405** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _<br>Last 4 digits of account number _ | **Basis for the claim:** __Trade Debt__<br><br>Is the claim subject to offset? ■ No ☐ Yes | |

| 3.291 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$1,175,932.76** |
|---|---|---|---|
| | **VWNA Caribbean, LLC**<br>**1131 King Street**<br>**Christiansted, VI 00820** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _<br>Last 4 digits of account number _ | **Basis for the claim:** __Trade Debt__<br><br>Is the claim subject to offset? ■ No ☐ Yes | |

| Debtor | Limetree Bay Refining, LLC | Case number (if known) | 21-32354 |
|---|---|---|---|
| | Name | | |

| 3.292 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $30,565.24 |
|---|---|---|---|

**W.W. Grainger, Inc**
**2255 NW 89 Place**
**Miami, FL 33176**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.293 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $93,692.51 |
|---|---|---|---|

**Warren Del Caribe**
**PO Box 70217**
**San Juan, PR 00936-8612**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.294 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $100,800.00 |
|---|---|---|---|

**Weldship Industries**
**225 W 2nd Street**
**Bethlehem, PA 18015**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.295 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $495,860.22 |
|---|---|---|---|

**Wesco Distribution, Inc.**
**PO Box 676780**
**Dallas, TX 75267-6780**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.296 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $22,008.07 |
|---|---|---|---|

**Wesco Distribution, Inc.**
**PO Box 676780**
**Dallas, TX 75267-6780**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.297 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $36,000.00 |
|---|---|---|---|

**Whitaker IT, LLC**
**d/b/a Whitaker Techn**
**Dept 50**
**PO Box 4346**
**Houston, TX 77210-4346**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.298 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $8,855.00 |
|---|---|---|---|

**Wholesale Electric Supply Co.**
**4040 Gulf Freeway**
**Houston, TX 77004**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Limetree Bay Refining, LLC** | Case number *(if known)* | **21-32354** |
|---|---|---|---|
| | Name | | |

---

**3.299** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,715.00**

**Wilmington Trust, N.A.**
**246 Goose Lane**
**Guilford, CT 06437**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.300** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$260,738.00**

**Windrock, Inc**
**24307 Network Place**
**Chicago, IL 60673**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.301** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$16,840.52**

**Worley Pan American Corporation**
**4949 Essen Lane**
**Baton Rouge, LA 70809**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.302** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$10,120.00**

**Wunderlich-Malec Engineering, Inc.**
**6101  Blue Circle Drive**
**Eden Prairie, MN 55343**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.303** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$21,786.63**

**Xerox Corporation**
**PO Box 802555**
**Chicago, IL 60680-2555**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

**Part 3:** **List Others to Be Notified About Unsecured Claims**

**4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

**If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.**

| | Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|---|
| **4.1** | **Antilles Gas Corporation**<br>**19 Estate Pearl**<br>**Christiansted, St. Croix, VI 00823** | Line **3.25**<br><br>☐ Not listed. Explain ____ | _ |
| **4.2** | **Intertek USA, Inc.**<br>**Attn: Legal**<br>**545 E. Algonquin Road**<br>**Arlington Heights, IL 60005** | Line **3.144**<br><br>☐ Not listed. Explain ____ | _ |

---

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

| 4.3 | **Name and mailing address** | **On which line in Part1 or Part 2 is the related creditor (if any) listed?** | **Last 4 digits of account number, if any** |
|---|---|---|---|
| | **Office of the Attorney General** **US Virgin Island Dept of Justice** **34-38 Kronprindsens Gade** **GERS Building, 2nd Floor** **St Thomas, VI 00802** | Line  **3.255** ☐ Not listed. Explain ____ | _ |

---

| **Part 4:** | **Total Amounts of the Priority and Nonpriority Unsecured Claims** |
|---|---|

**5.  Add the amounts of priority and nonpriority unsecured claims.**

| | | **Total of claim amounts** |
|---|---|---|
| **5a. Total claims from Part 1** | 5a.  $ | 0.00 |
| **5b. Total claims from Part 2** | 5b.  **+**  $ | 271,768,751.13 |
| **5c. Total of Parts 1 and 2** Lines 5a + 5b = 5c. | 5c.  $ | 271,768,751.13 |

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **Limetree Bay Refining, LLC** |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF TEXAS |
| Case number (if known) | **21-32354** |

☐ Check if this is an amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases                    12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.  **Does the debtor have any executory contracts or unexpired leases?**
    ☐ No. Check this box and file this form with the debtor's other schedules.  There is nothing else to report on this form.
    ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal   Property* (Official Form 206A/B).

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|
| 2.1.  State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-211 and Change Orders** |
|   State the term remaining | |
|   List the contract number of any government contract | **A&G Energy LLC**<br>**P.O. Box 70979**<br>**Houston, TX 77270** |
| 2.2.  State what the contract or lease is for and the nature of the debtor's interest | **Engineering Services Agreement Contract No. LTR-440** |
|   State the term remaining | **expires 4/11/22** |
|   List the contract number of any government contract | **AC Systems Integration, Inc.**<br>**10325 E. 58th Street**<br>**Tulsa, OK** |
| 2.3.  State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LTR-262 with work releases and addenda - Aqua Milling®, Chemical Cleaning, and Low DeciblowSM Pipe Cleaning Services** |
|   State the term remaining | |
|   List the contract number of any government contract | **Acconda L.P.**<br>**d/b/a Aqua Drill International**<br>**1300 FM 646 West**<br>**Dickinson, TX 77539** |
| 2.4.  State what the contract or lease is for and the nature of the debtor's interest | **Amendment and Joinder Agreement** |
|   State the term remaining | |
|   List the contract number of any | **Acuren Inspection, Inc.**<br>**P.O. Box 846313**<br>**Dallas, TX 75284-6313** |

Debtor 1 **Limetree Bay Refining, LLC**

First Name      Middle Name      Last Name

Case number (*if known*)   **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

government contract

| | | | |
|---|---|---|---|
| 2.5. | State what the contract or lease is for and the nature of the debtor's interest | **IT Consulting Agreement - Addendum No. 14** | |
| | State the term remaining | **expires 8/31/21** | **Adrian Kubran** |
| | List the contract number of any government contract | | **12522 Gable Mills Dr** **Cypress, TX 77433** |
| 2.6. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-078 with addenda and work releases** | |
| | State the term remaining | | **Advanced Overhead Crane Services, Inc.** |
| | List the contract number of any government contract | | **22531 FM 2100 Road** **Crosby, TX 77532** |
| 2.7. | State what the contract or lease is for and the nature of the debtor's interest | **Software Service Agreement (LTR-099A)** | |
| | State the term remaining | | **Advisian Digital** |
| | List the contract number of any government contract | | **4949 Essen Lane** **Baton Rouge, LA 70809** |
| 2.8. | State what the contract or lease is for and the nature of the debtor's interest | **Standard Fire Insurance Policy No. 026** **001001324-01-000000** | |
| | State the term remaining | **expires 9/1/21** | **AIG Insurance Company - Puerto Rico** **Marsh & Sterling** |
| | List the contract number of any government contract | | **1336 Beljen Road** **Suite 300, Charlotte Amalie** **St Thomas, VI 00802** |
| 2.9. | State what the contract or lease is for and the nature of the debtor's interest | **Evacuation Program Agreement LTR-289 for 2019 and 2020 and Terms and Conditions** | |
| | State the term remaining | **expires 7/31/21** | **Air Partner, Inc.** |
| | List the contract number of any government contract | | **1100 Lee Wagner Blvd** **Suite 328** **Ft. Lauderdale, FL 33315** |
| 2.10. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LTR-307** | **Aire Tech Mechanical Services, Inc** **4362 Motorsports Drive** **Concord, NC 28027** |

Debtor 1   **Limetree Bay Refining, LLC**

First Name      Middle Name      Last Name

Case number (*if known*)    **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

State the term remaining

List the contract number of any
     government contract _____

---

| 2.11. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement (LTR-378) - SAP Business Planning and Consolidations (BPC) solution -consulting** | |
|---|---|---|---|
| | State the term remaining | | **Akili, Inc.** |
| | List the contract number of any government contract | | **901 W Walnut Hill Lane Suite 130-B Irving, TX 75038-1001** |

---

| 2.12. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-093 including all addenda and work releases) - Rotating Equipment Repairs** | |
|---|---|---|---|
| | State the term remaining | | **Alfred Conhagen, Inc. of LA** |
| | List the contract number of any government contract | | **1020 Industry Road Kenner, LA 70062** |

---

| 2.13. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-079** | |
|---|---|---|---|
| | State the term remaining | | **Alimak Hek, Inc.** |
| | List the contract number of any government contract | | **12552 Old Galveston Road Suite A-160 Webster, TX 77598** |

---

| 2.14. | State what the contract or lease is for and the nature of the debtor's interest | **Policy # USL00873320** | |
|---|---|---|---|
| | State the term remaining | | **Allianz Lockton Companies, LLC - Houston** |
| | List the contract number of any government contract | | **3657 Briarpark Drive Suite 700 Houston, TX 77042** |

---

| 2.15. | State what the contract or lease is for and the nature of the debtor's interest | **Amended Term Services Agreement (LTR-013 including all Work Releases and Addenda)** | |
|---|---|---|---|
| | State the term remaining | | **Allison Industrial Services, LLC** |
| | List the contract number of any | | **19221 1-45 South Shenandoah, TX 77385** |

---

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number (*if known*) | **21-32354** |
| | First Name | Middle Name | Last Name | | |



**Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| government contract | |

| 2.16. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-144) including work releases** | |
| | State the term remaining | | **Analytic Stress Relieving, Inc.** |
| | List the contract number of any government contract | | **3118 W. Pinhook Road Lafayette, LA 70505** |

| 2.17. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement (LTR-192), Task Orders and Fee Schedule - Miscellaneous Engineering** | |
| | State the term remaining | | **Antillean Engineers Inc.** |
| | List the contract number of any government contract | | **PO Box 3023 Kingshill, VI 00851** |

| 2.18. | State what the contract or lease is for and the nature of the debtor's interest | **Policy # B0509BOWCN1800748** | |
| | State the term remaining | | **Apollo Lockton Companies, LLC - Houston** |
| | List the contract number of any government contract | | **3657 Briarpark Drive Suite 700 Houston, TX 77042** |

| 2.19. | State what the contract or lease is for and the nature of the debtor's interest | **Master Services Agreement LTR-427 On-Site Agreement** | |
| | State the term remaining | **expires 7/16/21** | **Applied Manufacturing Technologies LP** |
| | List the contract number of any government contract | | **3000 Wilcrest Drive Suite 145 Houston, TX 77042** |

| 2.20. | State what the contract or lease is for and the nature of the debtor's interest | **Excess Liability Insurance Policy No. NAMBM2100005** | |
| | State the term remaining | **expires 6/1/22** | **Arcadia/Ark/Helix Lockton Companies, LLC - Houston** |
| | List the contract number of any government contract | | **3657 Briarpark Drive Suite 700 Houston, TX 77042** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

**2.21.** State what the contract or lease is for and the nature of the debtor's interest

**Policy: URP0065257-00, ARGO-CAS-OR-001484 CX20-9216, 1454233-11636-UMB-20 20**

State the term remaining

List the contract number of any government contract

**Arch/ Argo/ Markel Bermuda / Hamilton Lockton Companies, LLC - Houston 3657 Briarpark Drive Suite 700**

---

**2.22.** State what the contract or lease is for and the nature of the debtor's interest

**Terms and Conditions (Houston Logistics)**

State the term remaining

List the contract number of any government contract

**Aries Worldwide Logistics 1501 E. Richley Road Houston, TX 77073**

---

**2.23.** State what the contract or lease is for and the nature of the debtor's interest

**Hysys Software License**

State the term remaining — **expires 6/14/26**

List the contract number of any government contract

**Aspen Technology, Inc. 20 Crosby Drive Bedford, MA 01730**

---

**2.24.** State what the contract or lease is for and the nature of the debtor's interest

**Combined Property Insurance Policy B0509ENGAO2000588**

State the term remaining — **expires 12/1/21**

List the contract number of any government contract

**Atrium Underwriters Ltd Marsh USA 1166 Avenue of the Americs New York, NY 10036-2774**

---

**2.25.** State what the contract or lease is for and the nature of the debtor's interest

**Purchase Order Terms - Suppression System for the LBR Village**

State the term remaining

List the contract number of any government contract

**Austin Fire Systems, LLC PO Box 411 Prairieville, LA 70769**

---

| Debtor 1 | **Limetree Bay Refining, LLC** | | Case number (*if known*) | **21-32354** |
| | First Name | Middle Name | Last Name | |

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.26. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-286) with work releases - ISBL Fire Protection Sprinkler System Revamp; Fixed Fire Equipment and Safety Showers and Suvery of Current Emergy Alarm System** | |
| | State the term remaining | | **Austin Fire Systems, LLC** |
| | List the contract number of any government contract | | **PO Box 411** **Prairieville, LA 70769** |

| 2.27. | State what the contract or lease is for and the nature of the debtor's interest | **General Terms and Conditions  GTC# NA-KAP-5001 and Addenda** | |
| | State the term remaining | | **AVEVA Software, LLC** |
| | List the contract number of any government contract | | **26561 Rancho Parkway South** **Lake Forest, CA** |

| 2.28. | State what the contract or lease is for and the nature of the debtor's interest | **LTR-156 Computer Program License Agreement NA/LLS/2605/SP and Amendments** | |
| | State the term remaining | | **AVEVA Software, LLC** |
| | List the contract number of any government contract | | **26561 Rancho Parkway South** **Lake Forest, CA** |

| 2.29. | State what the contract or lease is for and the nature of the debtor's interest | **Semi-Regenerative Catalytic Reformer, Prime-K™, Prime-D™, VGO Mild Hydrocracking License Agreement** | |
| | State the term remaining | | **Axens North America, Inc.** |
| | List the contract number of any government contract | | **1800 St. James Place** **Suite 500** **Houston, TX 77056** |

| 2.30. | State what the contract or lease is for and the nature of the debtor's interest | **Process Book Supply Agreement Job #7719 and Amendment** | |
| | State the term remaining | | **Axens North America, Inc.** |
| | List the contract number of any government contract | | **650 College Road East** **Princeton, NJ 08540** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

---

**2.31.** State what the contract or lease is for and the nature of the debtor's interest — **Guarantee Agreement Job #7719**

State the term remaining

List the contract number of any government contract

**Axens North America, Inc.**
**650 College Road East**
**Suite 1200**
**Princeton, NJ**

---

**2.32.** State what the contract or lease is for and the nature of the debtor's interest — **Technical Services Agreement N 7719**

State the term remaining — **expires 11/20/21**

List the contract number of any government contract

**Axens North America, Inc.**
**650 College Road East**
**Princeton, NJ 08540**

---

**2.33.** State what the contract or lease is for and the nature of the debtor's interest — **Policy # EAU646295**

State the term remaining

List the contract number of any government contract

**AXIS**
**Lockton Companies, LLC - Houston**
**3657 Briarpark Drive**
**Suite 700**
**Houston, TX 77042**

---

**2.34.** State what the contract or lease is for and the nature of the debtor's interest — **Term Services Agreement Contract No. LTR-184 and work releases**

State the term remaining

List the contract number of any government contract

**AZZ WSI, LLC**
**560 Horizon Drive**
**Suite 100**
**Suwanee, GA 30024**

---

**2.35.** State what the contract or lease is for and the nature of the debtor's interest — **General Terms and Conditions For Sale of Products, Parts and/or Services - Flare Gas H2S Reduction Program**

State the term remaining

List the contract number of any government contract

**Baker Hughes Int'l Branches, Inc.**
**12645 West Airport Blvd.**
**Sugar Land, TX 77478**

---

Debtor 1  **Limetree Bay Refining, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)  **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

**2.36.** State what the contract or lease is for and the nature of the debtor's interest

**Services Agreement (LTR-381) - Manangement and Procurement Services**

State the term remaining

List the contract number of any government contract

**Ballard Hospitality LLC
180 New Camellia Blvd
Suite 100
Covington, LA 70433**

**2.37.** State what the contract or lease is for and the nature of the debtor's interest

**Term Services Agreement (LTR-355) including work releases and change orders - Village Operations and Admin Café**

State the term remaining

List the contract number of any government contract

**Ballard Hospitality VI, LLC
180 New Camellia Blvd
Suite 100
Covington, LA 70433**

**2.38.** State what the contract or lease is for and the nature of the debtor's interest

**Professional Services Agreement - LTR-358 - Environmental Consulting**

State the term remaining

List the contract number of any government contract

**Barr Engineering Co.
4300 Market Pointe Dr.
Suite 200
Minneapolis, MN 55435**

**2.39.** State what the contract or lease is for and the nature of the debtor's interest

**Software Product License Agreement**

State the term remaining

List the contract number of any government contract

**Bayteck International, Inc.
401 N. Shoreline Blvd
Corpus Christi, TX 78401**

**2.40.** State what the contract or lease is for and the nature of the debtor's interest

**Baytek Product Support Agreement**

State the term remaining

List the contract number of any government contract

**Bayteck International, Inc.
401 N. Shoreline Blvd.
Corpus Christi, VI 78401**

**2.41.** State what the contract or lease is for and the nature of the debtor's interest

**Engineering Services Agreement (LTR-361) - engineering support**

**Becht Engineering Co., Inc
22 Church Street
Liberty Corner, NJ 07938**

Debtor 1  **Limetree Bay Refining, LLC**                                    Case number (*if known*)  **21-32354**
_____
First Name          Middle Name          Last Name

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| | State the term remaining | |
|---|---|---|
| | List the contract number of any government contract | |

| 2.42. | State what the contract or lease is for and the nature of the debtor's interest | **Continuing Technical Services Agreement (Coker Consulting Services)** | |
|---|---|---|---|
| | State the term remaining | | **Bechtel Hydrocarbon Technology Solutions** |
| | List the contract number of any government contract | | **3000 Post Oak Boulevard**<br>**Houston, TX 77252-2166** |

| 2.43. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy 42-PRP-312023-01** | |
|---|---|---|---|
| | State the term remaining | **expires 9/1/21** | **Berkshire Hathaway National Fire & Marine Ins Co** |
| | List the contract number of any government contract | | **1314 Douglas Street**<br>**Suite 1400**<br>**Omaha, NE 68102-1944** |

| 2.44. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-140** | |
|---|---|---|---|
| | State the term remaining | | **Beville Engineering, Inc.** |
| | List the contract number of any government contract | | **7087 Corporate Way**<br>**Dayton, OH 45459** |

| 2.45. | State what the contract or lease is for and the nature of the debtor's interest | **Technology Services Agreement LTR-090** | |
|---|---|---|---|
| | State the term remaining | | **BHI FW Corporation** |
| | List the contract number of any government contract | | **53 Frontage Road**<br>**Hampton, NJ 08827** |

| 2.46. | State what the contract or lease is for and the nature of the debtor's interest | **Services Addendum No. 1 to Master Purchase and Sale Agreement Contract No. 356-LBR-LBT-P02** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **Black Diamond Automation, LLC** |

Debtor 1    **Limetree Bay Refining, LLC**                                                    Case number (*if known*)    **21-32354**

First Name                Middle Name                Last Name

  **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.47. | State what the contract or lease is for and the nature of the debtor's interest | **Data Processing Agreement and Service Order Q061772** | |
|---|---|---|---|
| | State the term remaining | expires 12/1/22 | **BlackLine Systems, Inc.** |
| | List the contract number of any government contract | | **21300 Victory Blvd.**<br>**12th Floor**<br>**Woodland Hills, CA 91367** |

| 2.48. | State what the contract or lease is for and the nature of the debtor's interest | **Rental Agreement and Rental Schedule LTR-299** | |
|---|---|---|---|
| | State the term remaining | | **Blue Sky Real Estate** |
| | List the contract number of any government contract | | **11 North Street**<br>**Christiansted, VI 00820** |

| 2.49. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-085** | |
|---|---|---|---|
| | State the term remaining | | **Bohlke Airways** |
| | List the contract number of any government contract | | **RR#1, Box 9936**<br>**Kingshill, VI 00850** |

| 2.50. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement (LTR-116) and addenda** | |
|---|---|---|---|
| | State the term remaining | | **Boulden Company Inc.** |
| | List the contract number of any government contract | | **1013 Conshohocken Road**<br>**Conshohocken, PA 19428** |

| 2.51. | State what the contract or lease is for and the nature of the debtor's interest | **Amended and Restated Tolling Agreement** | |
|---|---|---|---|
| | State the term remaining | | **BP Products North America Inc.**<br>**Rhonda R. Trotter** |
| | List the contract number of any government contract | | **Arnold & Porter Kaye Scholer LLP**<br>**777 S. Figueroa St., 44th Floor**<br>**Los Angeles, CA 90017** |

| 2.52. | State what the contract or lease is for and the nature of the debtor's interest | **Omnibus Amendment to BP Agreements** | |
|---|---|---|---|
| | State the term remaining | | **BP Products North America Inc.**<br>**Rhonda R. Trotter** |
| | List the contract number of any | | **Arnold & Porter Kaye Scholer LLP**<br>**777 S. Figueroa St., 44th Floor**<br>**Los Angeles, CA 90017** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| | | government contract | | |
|---|---|---|---|---|

| 2.53. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LTR-263 with work releases** | |
| | State the term remaining | | **BrandSafway Solutions USVI LLC** |
| | List the contract number of any government contract | | **515 Anderson Drive** |
| | | | **Romeoville, IL 60446** |

| 2.54. | State what the contract or lease is for and the nature of the debtor's interest | **General Terms & Conditions dated 8/11/20** | |
| | State the term remaining | | |
| | List the contract number of any government contract | | **Brush Americas** |

| 2.55. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract LTR -418** | |
| | State the term remaining | | **BWC Technologies, Inc.** |
| | List the contract number of any government contract | | **2057 Kunkeltown Road** |
| | | | **Saylorsburg, PA 18353** |

| 2.56. | State what the contract or lease is for and the nature of the debtor's interest | **Master Services Agreement** | |
| | State the term remaining | **expires 8/26/21** | **Cadence Solutions, Inc.** |
| | List the contract number of any government contract | | **3320A Parsons Road NW** |
| | | | **Edmonton, Alberta T6N 1B5** |
| | | | **CANADA** |

| 2.57. | State what the contract or lease is for and the nature of the debtor's interest | **Residential Lease 5000 Coakley Bay, Unit F7** | |
| | State the term remaining | | **Calabash Real Estate LLC** |
| | List the contract number of any government contract | | **as agent for C Blue, LLC** |
| | | | **4126 La Grande Princesse** |
| | | | **Christiansted, VI 00820** |

| 2.58. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-419** | **Capital Records Management, Inc.** |
| | | | **41 A Barren Spot** |
| | | | **No. 9** |
| | | | **Kingshill, St. Croix, VI 00850** |

Debtor 1 **Limetree Bay Refining, LLC**

First Name        Middle Name        Last Name

Case number (*if known*) **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| State the term remaining | |
| List the contract number of any government contract | |

| 2.59. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-257 - with novation and assigment** | |
|---|---|---|---|
| | State the term remaining | | **Capitol Ultrasonics, LLC** |
| | List the contract number of any government contract | | **f/k/a Infrared Thermal Imaging, Inc.**<br>**8225 Florida Boulevard**<br>**Baton Rouge, LA 70806** |

| 2.60. | State what the contract or lease is for and the nature of the debtor's interest | **Terms of Rental - Flow bin rentals** | |
|---|---|---|---|
| | State the term remaining | | **Catalyst and Chemical Containers, Inc.,** |
| | List the contract number of any government contract | | **a Hoover Ferguson company**<br>**4935 Timber Creek Dr**<br>**Houston, TX 77017** |

| 2.61. | State what the contract or lease is for and the nature of the debtor's interest | **Consulting Agreement LTR-423** | |
|---|---|---|---|
| | State the term remaining | **expires 7/8/21** | **CFL Consulting, LLC** |
| | List the contract number of any government contract | | **603 Happy Trail**<br>**San Antonio, TX 78231** |

| 2.62. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-138) including all addenda, change orders, and work release - Inspection & Engineering Services** | |
|---|---|---|---|
| | State the term remaining | | **CFS International, LLC** |
| | List the contract number of any government contract | | **13860 Ballantyne Corporate Place, S**<br>**Charlotte, NC 28277** |

| 2.63. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-133) including all addenda and work releases - Valve Repairs** | |
|---|---|---|---|
| | State the term remaining | | **Chalmers & Kubeck, Inc.** |
| | List the contract number of any | | **PO Box 2447**<br>**Aston, PA 19014-0447** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

 **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|
| government contract | |

| 2.64. | State what the contract or lease is for and the nature of the debtor's interest | **Policy # B0713ENCAS2000011** | |
|---|---|---|---|
| | State the term remaining | | **Chaucer/Apollo** |
| | | | **Lockton Companies, LLC - Houston** |
| | List the contract number of any government contract | | **3657 Briarpark Drive** |
| | | | **Suite 700** |
| | | | **Houston, TX 77042** |

| 2.65. | State what the contract or lease is for and the nature of the debtor's interest | **(ENCAS2000020/627856 89)** | |
|---|---|---|---|
| | State the term remaining | | **Chaucer/Lex London** |
| | | | **Lockton Companies, LLC - Houston** |
| | List the contract number of any government contract | | **3657 Briarpark Drive** |
| | | | **Suite 700** |
| | | | **Houston, TX 77042** |

| 2.66. | State what the contract or lease is for and the nature of the debtor's interest | **Master Equipment Lease Agreement** | |
|---|---|---|---|
| | State the term remaining | **expires 7/7/24** | |
| | | | **Christiansted Equipment, Ltd.** |
| | List the contract number of any government contract | | **P.O. Box 368** |
| | | | **Christiansted, St. Croix, VI 00820-0000** |

| 2.67. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract LTR-108 and work release** | |
|---|---|---|---|
| | State the term remaining | | **CIA Inspection (US), Inc.** |
| | | | **2399 Golf Club Road** |
| | List the contract number of any government contract | | **Hannon** |
| | | | **Ontario L0R1P0** |
| | | | **CANADA** |

| 2.68. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-151 and Addenda - Evaluation of Bentley Nevada Systems (26 compressors)** | |
|---|---|---|---|
| | State the term remaining | | **Classic Controls, Inc.** |
| | | | **5095 S. Lakeland Drive** |
| | List the contract number of any government contract | | **Lakeland, FL 33813** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

 **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

| 2.69. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **Coking.com**<br>**3901 Kings Row**<br>**Reno, NV 89503** |

| 2.70. | State what the contract or lease is for and the nature of the debtor's interest | **Framework Agreement - Temporary Staff and Related Services** | |
|---|---|---|---|
| | State the term remaining | **expires 2/3/24** | **Competencia Inc.**<br>**11000 Equity Dr.**<br>**Suite 150**<br>**Houston, TX 77041** |
| | List the contract number of any government contract | | |

| 2.71. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services (LTR-146) including service orders - Project Management Personnel** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **Complan USA LLC**<br>**16417 Squyres Road**<br>**Spring, TX 77379** |

| 2.72. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-351 - Restart compressor controls assist** | |
|---|---|---|---|
| | State the term remaining | | **Compressor Controls Corporation**<br>**4745 121st Street**<br>**Des Moines, LA 50323** |
| | List the contract number of any government contract | | |

| 2.73. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-011 including all task orders, liens and addenda** | |
|---|---|---|---|
| | State the term remaining | | **Computer Solutions, Inc.**<br>**d/b/a CosTrack Project Controls**<br>**3167 Energy Lane**<br>**Casper, WY 82604** |
| | List the contract number of any government contract | | |

| 2.74. | State what the contract or lease is for and the nature of the debtor's interest | **Consulting Services Agreement Number: LTB-1019 LTR-336 - IT support** | |
|---|---|---|---|
| | State the term remaining | | **Consultants in Data Processing, Inc.**<br>**PO Box 472046**<br>**Charlotte, NC 28247** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

 **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

List the contract number of any
government contract

---

| 2.75. | State what the contract or lease is for and the nature of the debtor's interest | **Terms and Conditions Applicable to Technical Advisory Services & Materials, CST 13 R.1** | |
|---|---|---|---|
| | State the term remaining | | **Control Systems Technologies, LLC** |
| | List the contract number of any government contract | | **P.O. Box 781686** |
| | | | **Orlando, FL 32878** |

---

| 2.76. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy B0509ENGAO2000069** | |
|---|---|---|---|
| | State the term remaining | **expires 12/1/21** | **Convex Insurance UK Limited** |
| | List the contract number of any government contract | | **Marsh USA** |
| | | | **1166 Avenue of the Americas** |
| | | | **New York, NY 10036-2774** |

---

| 2.77. | State what the contract or lease is for and the nature of the debtor's interest | **Freight Forwarding Agreement** | |
|---|---|---|---|
| | State the term remaining | | **Crane Worldwide Logistics, LLC** |
| | List the contract number of any government contract | | **1500 Rankin Road** |
| | | | **Houston, TX 77073** |

---

| 2.78. | State what the contract or lease is for and the nature of the debtor's interest | **Terms and Conditions - Expediting Services** | |
|---|---|---|---|
| | State the term remaining | | **Crane Worldwide Logistics, LLC** |
| | List the contract number of any government contract | | **1500 Rankin Road** |
| | | | **Houston, TX 77073** |

---

| 2.79. | State what the contract or lease is for and the nature of the debtor's interest | **Master Services Agreement - Logistics Services** | |
|---|---|---|---|
| | State the term remaining | **expires 11/30/22** | **Crowley Logistics, LLC** |
| | List the contract number of any government contract | | **Crowley Caribbean Logistics, LLC** |
| | | | **Crowley Caribbean Services, LLC** |
| | | | **9487 Regency Square Blvd** |
| | | | **Jacksonville, FL 32225** |

---

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

 **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

| 2.80. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement (LTR-136) - Website Building/Maintenance** | |
|---|---|---|---|
| | State the term remaining | | **CrucianPoint, LLC** |
| | List the contract number of any government contract | | **2201 Church Street** |
| | | | **Christiansted, VI 00822** |

| 2.81. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement (LTR-175) - Sanitary Waste Disposal** | |
|---|---|---|---|
| | State the term remaining | | **Cruzan Environmental Services, Inc.** |
| | List the contract number of any government contract | | **PO Box 3018** |
| | | | **St. Croix, VI 00851** |

| 2.82. | State what the contract or lease is for and the nature of the debtor's interest | **Term Service Agreement (TR 223 with Novation Agreement and Work Releases - Exchanger Repairs and Fabrication** | |
|---|---|---|---|
| | State the term remaining | | **Cust-O-Fab Speciality Services, LLC** |
| | List the contract number of any government contract | | **8888 W 21st St** |
| | | | **Sand Springs, TX 74063** |

| 2.83. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement - Amendment and Joinder Agreement-LTS-077-JR (HVAC Project)** | |
|---|---|---|---|
| | State the term remaining | | **Demaco Corporation** |
| | List the contract number of any government contract | | **Road 127, KM 13,5** |
| | | | **Guayanilla, PR 00656** |

| 2.84. | State what the contract or lease is for and the nature of the debtor's interest | **Master Purchase and Sale Agreement - General Purchases** | |
|---|---|---|---|
| | State the term remaining | | **Dependable Power Systems** |
| | List the contract number of any government contract | | **4702 Traube Road** |
| | | | **Columbus, OH 43228** |

Debtor 1  **Limetree Bay Refining, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)  **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| | | | |
|---|---|---|---|
| 2.85. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract No. LTR-228 and work releases** | |
| | State the term remaining | | **DeSalters, LLC** |
| | List the contract number of any government contract | | **1947 Lago Vista Blvd Palm Harbor, FL 34685** |

| | | | |
|---|---|---|---|
| 2.86. | State what the contract or lease is for and the nature of the debtor's interest | **Engagement Letter** | |
| | State the term remaining | | **DHR International** |
| | List the contract number of any government contract | | **1300 Post Oak Blvd Suite 1100 Houston, TX 77056** |

| | | | |
|---|---|---|---|
| 2.87. | State what the contract or lease is for and the nature of the debtor's interest | **Terms and Conditions - 19-1200DL.REV.2** | |
| | State the term remaining | | **Doosan Turbomachinery Services, Inc.** |
| | List the contract number of any government contract | | **12000 North P. Street La Porte, TX 77571** |

| | | | |
|---|---|---|---|
| 2.88. | State what the contract or lease is for and the nature of the debtor's interest | **Terms and Conditions - 19-1216 DL Rev.1** | |
| | State the term remaining | | **Doosan Turbomachinery Services, Inc.** |
| | List the contract number of any government contract | | **12000 North P. Street La Porte, TX 77571** |

| | | | |
|---|---|---|---|
| 2.89. | State what the contract or lease is for and the nature of the debtor's interest | **Terms and Conditions - 19-1199 DL Rev.2** | |
| | State the term remaining | | **Doosan Turbomachinery Services, Inc.** |
| | List the contract number of any government contract | | **12000 North P. Street La Porte, TX 77571** |

| | | | |
|---|---|---|---|
| 2.90. | State what the contract or lease is for and the nature of the debtor's interest | **Terms and Conditions - 19-1218 DL Rev.1** | |
| | State the term remaining | | **Doosan Turbomachinery Services, Inc.** |
| | List the contract number of any | | **12000 North P. Street La Porte, TX 77571** |

Debtor 1   **Limetree Bay Refining, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)   **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

government contract

| 2.91. | State what the contract or lease is for and the nature of the debtor's interest | **Terms and Conditions - 19-1221 DL Rev.2** | |
|---|---|---|---|
| | State the term remaining | | **Doosan Turbomachinery Services, Inc. 12000 North P. Street La Porte, TX 77571** |
| | List the contract number of any government contract | | |

| 2.92. | State what the contract or lease is for and the nature of the debtor's interest | **Terms and Conditions - 19-1222 DL Rev.1** | |
|---|---|---|---|
| | State the term remaining | | **Doosan Turbomachinery Services, Inc. 12000 North P. Street La Porte, TX 77571** |
| | List the contract number of any government contract | | |

| 2.93. | State what the contract or lease is for and the nature of the debtor's interest | **Terms and Conditions - 19-1236 DL Rev.1** | |
|---|---|---|---|
| | State the term remaining | | **Doosan Turbomachinery Services, Inc. 12000 North P. Street La Porte, TX 77571** |
| | List the contract number of any government contract | | |

| 2.94. | State what the contract or lease is for and the nature of the debtor's interest | **Terms and Conditions - 19-1237 DL** | |
|---|---|---|---|
| | State the term remaining | | **Doosan Turbomachinery Services, Inc. 12000 North P. Street La Porte, TX 77571** |
| | List the contract number of any government contract | | |

| 2.95. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement: Contract Number: LB-003 and work release (Roofing Contractor)** | |
|---|---|---|---|
| | State the term remaining | | **DSI Group, LLC 4217 Buchanan Street New Orleans, LA 70122** |
| | List the contract number of any government contract | | |

| Debtor 1 | Limetree Bay Refining, LLC | | | Case number (*if known*) | 21-32354 |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.96. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LB-003 (Roof Repair & General Contractor)** | |
|---|---|---|---|
| | State the term remaining | | **DSI, LLC** |
| | List the contract number of any government contract | | **4217 Buchanan Street** |
| | | | **New Orleans, LA 70122** |

| 2.97. | State what the contract or lease is for and the nature of the debtor's interest | **Consulting Agreement LTR-246** | |
|---|---|---|---|
| | State the term remaining | | **Duke Given** |
| | List the contract number of any government contract | | **218 Lasiandra Ct.** |
| | | | **Richmond, WA 99336** |

| 2.98. | State what the contract or lease is for and the nature of the debtor's interest | **Amendment and Joinder Agreement to Term Services Agreement (LTS-087); and all work releases expires 10/26/22** | |
|---|---|---|---|
| | State the term remaining | | **Dynamic Innovative Corporation** |
| | List the contract number of any government contract | | **306 Williams Delight** |
| | | | **Frederiksted, VI 00840** |

| 2.99. | State what the contract or lease is for and the nature of the debtor's interest | **Master Information Technology Services Agreement (MITSA), Schedules and other forms** | |
|---|---|---|---|
| | State the term remaining | | **DYONYX L.P.** |
| | List the contract number of any government contract | | **13430 Northwest Freeway** |
| | | | **Suite 1000** |
| | | | **Houston, TX 77040** |

| 2.100. | State what the contract or lease is for and the nature of the debtor's interest | **Selling Policy 25-080 (Labor for Replacement Circuit Breakers )** | |
|---|---|---|---|
| | State the term remaining | | **Eaton Corporation** |
| | List the contract number of any government contract | | **1000 Cherrington Parkway** |
| | | | **Moon Township, PA 15108** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |



### Additional Page if You Have More Contracts or Leases

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

| 2.101. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement, Contract Number: LTR-036 and addenda and work releases** | |
|---|---|---|---|
| | State the term remaining | | **Elite Turnaround Specialists, Ltd.** |
| | List the contract number of any government contract | | **225 South 16th Street** **La Porte, TX 77571** |

| 2.102. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy B0509ENGAO2000563** | |
|---|---|---|---|
| | State the term remaining | **expires 12/1/21** | **Elseco Limited** **Marsh USA** |
| | List the contract number of any government contract | | **1166 Avenue of the Americas** **New York, NY 10036-2774** |

| 2.103. | State what the contract or lease is for and the nature of the debtor's interest | **Consulting Services Agreement - Outsourced Accounting and Finance Services** | |
|---|---|---|---|
| | State the term remaining | **expires 1/9/22** | **Embark Consulting LLC** **2919 Commerce Street** |
| | List the contract number of any government contract | | **Suite 400** **Dallas, TX 75226** |

| 2.104. | State what the contract or lease is for and the nature of the debtor's interest | **Communications Consulting Agreement** | |
|---|---|---|---|
| | State the term remaining | | **EMIC Communications, LLC** |
| | List the contract number of any government contract | | **863 Mission Hills Drive** **New Braunfels, TX 78130** |

| 2.105. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-264) wth addenda, work releases, and change orders - Water Milling, Chemical Cleaning and Low Decible Pipe Cleaning Services** | |
|---|---|---|---|
| | State the term remaining | | **EnerMech Mechanical Services, Inc.** |
| | List the contract number of any government contract | | **2919 Commerce Street** **Houston, TX 77041** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|
| | First Name    Middle Name    Last Name | | | |

 **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

| 2.106. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-414** | |
|---|---|---|---|
| | State the term remaining | | **Engineering Systems and Sales, Inc.** |
| | List the contract number of any government contract | | **#147 El Tuque Industrial Park** **Ponce, PR 00728** |

| 2.107. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-007 including all Addenda and Work Releases)** | |
|---|---|---|---|
| | State the term remaining | | **Englobal U.S. Inc.** |
| | List the contract number of any government contract | | **225 Portwall St.** **Houston, TX 77029** |

| 2.108. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-425** | |
|---|---|---|---|
| | State the term remaining | | **ERP Software Services, LLC** **1309 Coffeen Avenue** |
| | List the contract number of any government contract | | **Suite 1200** **Sheridan, WY 82801** |

| 2.109. | State what the contract or lease is for and the nature of the debtor's interest | **Policy # MKLV4EFX102259** | |
|---|---|---|---|
| | State the term remaining | | **Evanston (Markel)** **Lockton Companies, LLC - Houston** **3657 Briarpark Drive** |
| | List the contract number of any government contract | | **Suite 700** **Houston, TX 77042** |

| 2.110. | State what the contract or lease is for and the nature of the debtor's interest | **Rental Agreement - Dissolved Gas Flotation System - lease and service** | |
|---|---|---|---|
| | State the term remaining | | **Evoqua Water Technologies LLC** |
| | List the contract number of any government contract | | **28563 Network Place** **Chicago, IL 60673-1285** |

| 2.111. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-015); and all work releases** | |
|---|---|---|---|
| | State the term remaining | expires 8/2/23 | **Excel Construction & Maintenance VI** **8641 United Plaza Blvd** |
| | List the contract number of any | | **Baton Rouge, LA 70809** |

Debtor 1    **Limetree Bay Refining, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)    **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

|  |  |  |  |
|---|---|---|---|
|  | government contract |  |  |
| 2.112. | State what the contract or lease is for and the nature of the debtor's interest | **Master Equipment Lease Agreement** |  |
|  | State the term remaining | **expires 7/7/24** | **F&M Mafco, Inc.** |
|  | List the contract number of any government contract |  | **9149 Dry Fork Road** **Harrison, OH 45030** |
| 2.113. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-304 (Engineering Assistance on Solar Grid Project)** |  |
|  | State the term remaining |  | **FastGrid LLC** **225 E. Germann Road** |
|  | List the contract number of any government contract |  | **Ste 101** **Gilbert, AZ 85297** |
| 2.114. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy B0509ENGAO2000613** |  |
|  | State the term remaining | **expires 12/1/21** | **Fidelis Underwriting Ltd.** **Marsh USA** |
|  | List the contract number of any government contract |  | **1166 Avenue of the Americas** **New York, NY 10036-2774** |
| 2.115. | State what the contract or lease is for and the nature of the debtor's interest | **Master Recruiting Agreement** |  |
|  | State the term remaining | **expires 3/25/21** | **Flexicrew Technical, LLC** **4501 Napoleon Avenue** |
|  | List the contract number of any government contract |  | **Suite 200** **Metairie, LA 70001** |
| 2.116. | State what the contract or lease is for and the nature of the debtor's interest | **FLIR GF Cameras & Software License** |  |
|  | State the term remaining | **expires 2/21/23** | **FLIR Commercial Systems, Inc.** |
|  | List the contract number of any government contract |  | **9 Townsend W** **Nashua, NH 03063** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |



### Additional Page if You Have More Contracts or Leases

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

| 2.117. | State what the contract or lease is for and the nature of the debtor's interest | **Contract For Purchase and Sale of Equipment and Support Services** | |
|---|---|---|---|
| | State the term remaining | | **Flowserve Corporation** |
| | List the contract number of any government contract | | **4179 Collections Center Drive**<br>**Chcago, IL 60693** |

| 2.118. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-279) with work releases and addenda - Village Maintenance Contractor** | |
|---|---|---|---|
| | State the term remaining | | **FMMVI, LLC** |
| | List the contract number of any government contract | | **11634 Darryl Drive**<br>**Baton Rouge, LA 70815** |

| 2.119. | State what the contract or lease is for and the nature of the debtor's interest | **Consulting Services Agreement and all addenda** | |
|---|---|---|---|
| | State the term remaining | **expires 12/31/21** | **FR Consulting LLC**<br>**Calle Sol A-6** |
| | List the contract number of any government contract | | **Puertas Del Sol**<br>**Fajardo, PR 00738** |

| 2.120. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-218** | |
|---|---|---|---|
| | State the term remaining | | **Frontline Data Solutions** |
| | List the contract number of any government contract | | **101 Parklane Blvd**<br>**Suite 204**<br>**Sugar Land, TX 77478** |

| 2.121. | State what the contract or lease is for and the nature of the debtor's interest | **Security System Support** | |
|---|---|---|---|
| | State the term remaining | **expires 10/31/24** | **G4S Secure Integration LLC,** |
| | List the contract number of any government contract | | **1200 Landmark Center**<br>**Suite 1300**<br>**Omaha, NE 68102-1892** |

| 2.122. | State what the contract or lease is for and the nature of the debtor's interest | **Insurance Consulting Agreement (LTR-051) and all addenda** | |
|---|---|---|---|
| | State the term remaining | **expires 12/31/21** | **Gary D. Morrow**<br>**15604 Hayes Street**<br>**Overland Park, KS 66221** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| | List the contract number of any government contract | |
|---|---|---|

| 2.123. | State what the contract or lease is for and the nature of the debtor's interest | **General Terms & Conditions for Sale of Products, Parts and/or Services** | |
|---|---|---|---|
| | State the term remaining | | **GE Oil & Gas LLC** |
| | List the contract number of any government contract | | **17021 Aldine Westfield Road Houston, TX 77073** |

| 2.124. | State what the contract or lease is for and the nature of the debtor's interest | **Employment Agency Agreement** | |
|---|---|---|---|
| | State the term remaining | | **Global Edge Group, LLC** |
| | List the contract number of any government contract | | **2829 Technology Forrest Blvd. Suite 280 The Woodlands, TX 77381** |

| 2.125. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement (LTR-161) and addenda - Rental of water trucks and provision of drivers** | |
|---|---|---|---|
| | State the term remaining | | **Global Engagement Support Services** |
| | List the contract number of any government contract | | **PO Box 964 Christiansted, VI 00821** |

| 2.126. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LTR-265 with work release** | |
|---|---|---|---|
| | State the term remaining | | **Global World Technologies** |
| | List the contract number of any government contract | | **4730 South Fort Apache Road Suite 300 Las Vegas, NV 89147** |

| 2.127. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy ENGAO2000069** | |
|---|---|---|---|
| | State the term remaining | **expires 12/1/21** | **Great Lakes** |
| | List the contract number of any government contract | | **Marsh USA 1166 Avenue of the Americas New York, NY 10036-2774** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |



## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

**2.128.** State what the contract or lease is for and the nature of the debtor's interest **Combined Property Insurance Policy B0509ENGAO2000576**

State the term remaining **expires 12/1/21**

List the contract number of any government contract

**Guardian General Insurance Limited**
**Newton Centre**
**30-36 Maraval Road**
**Newton Port of Spain 190133**
**TRINDAD AND TOBAGO**

---

**2.129.** State what the contract or lease is for and the nature of the debtor's interest **Engineering Services Agreement (including all addenda)**

State the term remaining

List the contract number of any government contract

**H & K Engineering, LLC**
**2644 S. Sherwood Forest Blvd**
**Baton Rouge, LA 70816**

---

**2.130.** State what the contract or lease is for and the nature of the debtor's interest **Combined Property Insurance Policy ENGAO2000069**

State the term remaining **expires 12/1/21**

List the contract number of any government contract

**Hannover Re/HDI Global Specialty SE**
**Marsh USA**
**1166 Avenue of the Americas**
**New York, NY 10036-2774**

---

**2.131.** State what the contract or lease is for and the nature of the debtor's interest **Professional Services Agreement - Amendent and Joinder Agreement LTS-102-JR**

State the term remaining

List the contract number of any government contract

**Hargrove & Associates LLC**
**20 S. Royal Street**
**Mobile, AL 36602**

---

**2.132.** State what the contract or lease is for and the nature of the debtor's interest **Professional Services Agreement - LTR-434**

State the term remaining **expires 3/29/22**

List the contract number of any government contract

**Hazard Management Group of Texas LLC**
**2109 Olympic Drive**
**League City, TX 77573**

---

**2.133.** State what the contract or lease is for and the nature of the debtor's interest **Combined Property Insurance Policy ENGAO2000069**

State the term remaining **expires 12/1/21**

List the contract number of any

**Helvetia Swiss Insurance Co**
**in Liechenstein Ltd**
**Marsh USA**
**1166 Avenue of the Americas**
**New York, NY 10036-2774**

---

Debtor 1 **Limetree Bay Refining, LLC**

First Name      Middle Name      Last Name

Case number (*if known*)    **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

|  | List the contract number of any government contract |  |
|---|---|---|

| 2.134. | State what the contract or lease is for and the nature of the debtor's interest | **Construction Services Agreement [by Joinder Agreement]** |  |
|---|---|---|---|
|  | State the term remaining |  | **HMT LLC** |
|  | List the contract number of any government contract |  | **24 Waterway Ave** |
|  |  |  | **The Woodlands, TX 77380** |

| 2.135. | State what the contract or lease is for and the nature of the debtor's interest | **Assignment and Novation Agreement of Technical Advisor Agreement dated 08/13/20** |  |
|---|---|---|---|
|  | State the term remaining |  | **Honeywell Enraf Americas** |
|  | List the contract number of any government contract |  | **2000 Northfield Court** |
|  |  |  | **Rosewell, GA 30076** |

| 2.136. | State what the contract or lease is for and the nature of the debtor's interest | **Assignment and Novation Agreement of Technical Advisor Agreement dated 09/15/20** |  |
|---|---|---|---|
|  | State the term remaining |  | **Honeywell Enraf Americas** |
|  | List the contract number of any government contract |  | **2000 Northfield Court** |
|  |  |  | **Rosewell, GA 30076** |

| 2.137. | State what the contract or lease is for and the nature of the debtor's interest | **Project Agreement for On-Island Services** |  |
|---|---|---|---|
|  | State the term remaining |  | **Honeywell Enraf Americas, Inc.** |
|  | List the contract number of any government contract |  | **2000 Northfield Court** |
|  |  |  | **Roswell, GA 30076** |

| 2.138. | State what the contract or lease is for and the nature of the debtor's interest | **DCS Systems Project Agreement** |  |
|---|---|---|---|
|  | State the term remaining |  | **Honeywell International** |
|  | List the contract number of any government contract |  | **1250 Sam Houston Parkway South** |
|  |  |  | **Houston, TX 77042** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.139. | State what the contract or lease is for and the nature of the debtor's interest | **Parent Guarantee for Enraf** | |
|---|---|---|---|
| | State the term remaining | | **Honeywell International** |
| | List the contract number of any government contract | | **1250 Sam Houston Parkway South Houston, TX 77042** |

| 2.140. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-148** | |
|---|---|---|---|
| | State the term remaining | | **Hopper Engineering Associates, Inc.** |
| | List the contract number of any government contract | | **300 Vista Del Mar Redondo Beach, CA 90277** |

| 2.141. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy ENGAO2000069** | |
|---|---|---|---|
| | State the term remaining | **expires 9/1/21** | **Houston Specialty Insurance Company Marsh USA** |
| | List the contract number of any government contract | | **1166 Avenue of the Americas New York, NY 10036-2774** |

| 2.142. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LTR-044** | |
|---|---|---|---|
| | State the term remaining | | **HPI, LLC** |
| | List the contract number of any government contract | | **15503 West Hardy Rd Houston, TX 77060** |

| 2.143. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement (LTR-127) and Addendum - Air Cooled Changer Rotating Elements** | |
|---|---|---|---|
| | State the term remaining | | **Hudson Products Corporation** |
| | List the contract number of any government contract | | **9660 Grunwald Road Beasley, TX 77417** |

| 2.144. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement, Contract Number: LTR-065, MOU and work releases** | |
|---|---|---|---|
| | State the term remaining | | **I-Tech Services, LLC P.O. Box 1437 Kingshill, VI 00851** |

Debtor 1   **Limitree Bay Refining, LLC**

First Name        Middle Name        Last Name

Case number (*if known*)   **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

List the contract number of any government contract    _____

---

**2.145.** State what the contract or lease is for and the nature of the debtor's interest    **Services Agreement**

State the term remaining

List the contract number of any government contract    _____

**IBB Petroleum Services Inc.**
**22821 Dequindre Road**
**Hazel Park, MI 48030**

---

**2.146.** State what the contract or lease is for and the nature of the debtor's interest    **Contract Number 00595545 and Data Terms and Conditions**

State the term remaining    **expires 1/17/22**

List the contract number of any government contract    _____

**IHS Data Products**
**15 Inverness Way East**
**Englewood, CO 80112-5710**

---

**2.147.** State what the contract or lease is for and the nature of the debtor's interest    **Order Form - Contract Number 00587428 and Data Terms and Conditions**

State the term remaining    **expires 1/17/22**

List the contract number of any government contract    _____

**IHS Data Products**
**15 Inverness Way East**
**Englewood, CO 80112-5710**

---

**2.148.** State what the contract or lease is for and the nature of the debtor's interest    **Term Services Aggement (LTR-017 including all addenda and work releases)**

State the term remaining

List the contract number of any government contract    _____

**InServ Field Services USVI, LLC**
**1900 N 161st East Ave**
**Tulsa, OK 74116**

---

**2.149.** State what the contract or lease is for and the nature of the debtor's interest    **Combined Property Insurance Policy B0509ENGAO2000563**

State the term remaining    **expires 12/1/21**

List the contract number of any government contract    _____

**Insurance General Insurance Co Ltd.**
**Marsh USA**
**1166 Avenue of the Americas**
**New York, NY 10036-2774**

---

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

 **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

| 2.150. | State what the contract or lease is for and the nature of the debtor's interest | **Consulting Services Agreement** | |
|---|---|---|---|
| | State the term remaining | | **Intergraph Coporation d/b/a Hexagon PPM 305 Intergraph Way Madison, AL 35758** |
| | List the contract number of any government contract | | |

| 2.151. | State what the contract or lease is for and the nature of the debtor's interest | **Policy # USL00880520** | |
|---|---|---|---|
| | State the term remaining | | **Interstate Fire (Allianz) Lockton Companies, LLC - Houston 3657 Briarpark Drive, Suite 700 Suite 700 Houston, TX 77042** |
| | List the contract number of any government contract | | |

| 2.152. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-458 (Consulting - Flare)** | |
|---|---|---|---|
| | State the term remaining | | **ioMosaic Corporation 93 Stiles Road Salem, NH 03079** |
| | List the contract number of any government contract | | |

| 2.153. | State what the contract or lease is for and the nature of the debtor's interest | **Policy # 004380100** | |
|---|---|---|---|
| | State the term remaining | | **Ironshore Specialty Lockton Companies, LLC - Houston 3657 Briarpark Drive Suite 700 Houston, TX 77042** |
| | List the contract number of any government contract | | |

| 2.154. | State what the contract or lease is for and the nature of the debtor's interest | **Policy # 002626704** | |
|---|---|---|---|
| | State the term remaining | | **Ironshore Specialty Lockton Companies, LLC - Houston 3657 Briarpark Drive Suite 700 Houston, TX 77042** |
| | List the contract number of any government contract | | |

| 2.155. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement, Contract Number: LTR-038** | |
|---|---|---|---|
| | State the term remaining | | **Island Services Group, LLC 109-113 Castle Coakly Christiansted, VI 00820** |
| | List the contract number of any | | |

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

 **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

| | government contract | | |
|---|---|---|---|
| 2.156. | State what the contract or lease is for and the nature of the debtor's interest | **Port / Ship Agency Agreement** | |
| | State the term remaining | | **ISS Marine Services LLC** **1210 Hillcrest Road** **Suite 100** **Mobile, AL 36695** |
| | List the contract number of any government contract | | |
| 2.157. | State what the contract or lease is for and the nature of the debtor's interest | **Engineering Services Agreement for #6 Crude Startup Project** | |
| | State the term remaining | | **J & W Virgin Islands, L.L.C.** **7825 Park Place Blvd.** **Houston, TX 77087** |
| | List the contract number of any government contract | | |
| 2.158. | State what the contract or lease is for and the nature of the debtor's interest | **Monetization Master Agreement** | |
| | State the term remaining | **expires 12/31/21** | **J. Aron & Company LLC** **c/o Robin Spigel** **Baker Botts, LLC** **30 Rockefeller Plaza** **New York, NY 10112-4498** |
| | List the contract number of any government contract | | |
| 2.159. | State what the contract or lease is for and the nature of the debtor's interest | **Refinery Facilities Agreement** | |
| | State the term remaining | | **J. Aron & Company LLC** **c/o Robin Spigel** **Baker Botts, LLC** **30 Rockefeller Plaza** **New York, NY 10112-4498** |
| | List the contract number of any government contract | | |
| 2.160. | State what the contract or lease is for and the nature of the debtor's interest | **Funding Letter Agreement** | |
| | State the term remaining | | **J. Aron & Company LLC** **Robin Spigel** **Baker Botts, LLC** **30 Rockefeller Plaza** **New York, NY 10112-4498** |
| | List the contract number of any government contract | | |
| 2.161. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement - Amendment and Joinder Agreement** | **J. Benton Construction, LLC** **3000 Orange Grove** **Christiansted, VI 00820** |

Debtor 1   **Limitree Bay Refining, LLC**

First Name        Middle Name        Last Name

Case number (*if known*)   **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| State the term remaining | |
| List the contract number of any government contract | |

| 2.162. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-403** | |
|---|---|---|---|
| | State the term remaining | | **James D. Acers Company, Inc.** |
| | List the contract number of any government contract | | **1510 12th Street** |
| | | | **Cloquet, MS 55720** |

| 2.163. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-081 including all addenda and work releases)** | |
|---|---|---|---|
| | State the term remaining | | **John Crane Inc.** |
| | List the contract number of any government contract | | **24929 Network Place** |
| | | | **Chicago, IL 60673-1249** |

| 2.164. | State what the contract or lease is for and the nature of the debtor's interest | **Consulting Services Agreement (Finance Consultant)** | |
|---|---|---|---|
| | State the term remaining | **expires 9/30/21** | **John Dugas** |
| | List the contract number of any government contract | | **5314 Sycamore Creek Drive** |
| | | | **Kingwood, TX 77345-1462** |

| 2.165. | State what the contract or lease is for and the nature of the debtor's interest | **Terms and Conditions (Emergency Scanning of T-4850)** | |
|---|---|---|---|
| | State the term remaining | | **Johnson Matthey Inc.** |
| | List the contract number of any government contract | | **d/b/a Tracerco** |
| | | | **88724 Expedite Way** |
| | | | **Chicago, IL 60695** |

| 2.166. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement (LTR-187 )and addendum - Engine Pre Start Inspection and Basic Services** | |
|---|---|---|---|
| | State the term remaining | | **Jones Diesel and Marine, LLC** |
| | List the contract number of any government contract | | **8510 SR 207** |
| | | | **Hastings, FL 32145** |

Debtor 1 **Limetree Bay Refining, LLC**

First Name        Middle Name        Last Name

Case number (*if known*)  **21-32354**

  **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

2.167. State what the contract or lease is for and the nature of the debtor's interest

**Master Engineering and Procurement Agreement  - LTR-207**

State the term remaining

List the contract number of any government contract

**JPS Cryogenics, Inc.**
**3 Morris Drive**
**Princeton, NJ 08540**

---

2.168. State what the contract or lease is for and the nature of the debtor's interest

**Services Agreement Contract No. LTR-188**

State the term remaining

List the contract number of any government contract

**Konecranes, Inc.**
**d/b/a Crane Pro Services**
**3115 LaPlace Lane**
**La Place, LA 70068**

---

2.169. State what the contract or lease is for and the nature of the debtor's interest

**Combined Property Insurance Policy B0509ENGAO2000587**

State the term remaining  **expires 12/1/21**

List the contract number of any government contract

**Lancashire Insurance Company UK, Ltd**
**Marsh USA**
**1166 Avenue of the Americas**
**New York, NY 10036-2774**

---

2.170. State what the contract or lease is for and the nature of the debtor's interest

**Policy # LSMAEC119907A; LBR-2144/XS004**

State the term remaining

List the contract number of any government contract

**Liberty Specialty (STARR)/ Chubb Bermuda**
**Lockton Companies, LLC - Houston**
**3657 Briarpark Drive,**
**Suite 700**
**Houston, TX 77042**

---

2.171. State what the contract or lease is for and the nature of the debtor's interest

**Combined Property Insurance Policy LSMAEN143232A**

State the term remaining  **expires 12/1/21**

List the contract number of any government contract

**Liberty Specialty Markets Agency Ltd**
**Liberty Specialty Markets**
**141 Front Street**
**Hamilton HM19**
**BERMUDA**

---

2.172. State what the contract or lease is for and the nature of the debtor's interest

**Shared Catalyst Agreement**

State the term remaining

List the contract number of any

**Limetree Bay Refining Marketing, LLC**
**#1 Estate Hope**
**Christiansted, VI 00820**

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| government contract | |

| | | | |
|---|---|---|---|
| 2.173. | State what the contract or lease is for and the nature of the debtor's interest | **Shared Services Agreement** | |
| | State the term remaining | | **Limetree Bay Terminals, LLC** |
| | List the contract number of any government contract | | **#1 Estate Hope** **Christiansted, VI 00820-5652** |
| 2.174. | State what the contract or lease is for and the nature of the debtor's interest | **Policy #** **ENVX0000256-20** | |
| | State the term remaining | | **Lloyd's** **Lockton Companies, LLC - Houston** **3657 Briarpark Drive** |
| | List the contract number of any government contract | | **Suite 700** **Houston, TX 77042** |
| 2.175. | State what the contract or lease is for and the nature of the debtor's interest | **#ENVP0000296-20** | |
| | State the term remaining | | **Lloyd's** **Lockton Companies, LLC - Houston** **3657 Briarpark Drive** |
| | List the contract number of any government contract | | **Suite 700** **Houston, TX 77042** |
| 2.176. | State what the contract or lease is for and the nature of the debtor's interest | **Policy #** **B0713ENCAS2000021** | |
| | State the term remaining | | **Lloyd's 1886 (QBE)** **Lockton Companies, LLC - Houston** **3657 Briarpark Drive** |
| | List the contract number of any government contract | | **Suite 700** **Houston, TX 77042** |
| 2.177. | State what the contract or lease is for and the nature of the debtor's interest | **Policy #** **B0509BOWCN1800862** | |
| | State the term remaining | | **Lloyd's 1886 (QBE)** **Lockton Companies, LLC - Houston** **3657 Briarpark Drive** |
| | List the contract number of any government contract | | **Suite 700** **Houston, TX 77042** |
| 2.178. | State what the contract or lease is for and the nature of the debtor's interest | **Contract Fee Agreement (HR Temporary Staffing Agency)** | **Lucas Group** **950 East Paces Ferry Road** **Suite 2300** **Atlanta, GA 30326** |

Debtor 1 **Limetree Bay Refining, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)   **21-32354**

  **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

State the term remaining

List the contract number of any
government contract

---

| 2.179. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-206** | |
|---|---|---|---|
| | State the term remaining | | **Madison Plant Services, Inc.** |
| | List the contract number of any government contract | | **3 Morris Drive** **Princeton, NJ 08540** |

---

| 2.180. | State what the contract or lease is for and the nature of the debtor's interest | **Master Services Agreement LTR-294 - Heavy Equiment haul logistics** | |
|---|---|---|---|
| | State the term remaining | | **Mammoet USA South, Inc.** |
| | List the contract number of any government contract | | **20525 FM 521** **Rosharon, TX 77583** |

---

| 2.181. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LTR-365** | |
|---|---|---|---|
| | State the term remaining | | **Matrix North American Construction, Inc.** |
| | List the contract number of any government contract | | **1510 Chester Pike** **Suite 500** **Eddystone, PA 19022** |

---

| 2.182. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract No. LTR-205 and Work Releases** | |
|---|---|---|---|
| | State the term remaining | | **MGMGG Commissioning and Consulting Servi** |
| | List the contract number of any government contract | | **5355 Downs Road** **PO Box 20197** **Beaumont, TX 77705** |

---

| 2.183. | State what the contract or lease is for and the nature of the debtor's interest | **Employment Agency Agreement** | |
|---|---|---|---|
| | State the term remaining | | **Michael Page International, Inc.** |
| | List the contract number of any government contract | | **622 Third Avenue** **29th Floor** **New York, NY 10017** |

---

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.184. | State what the contract or lease is for and the nature of the debtor's interest | **Master Services Agreement (Cybersecurity Assessment) expires 3/31/25** | |
|---|---|---|---|
| | State the term remaining | | **Mission Secure Inc. 300 Preston Avenue Suite 500 Charlottesville, VA 22902** |
| | List the contract number of any government contract | | |

| 2.185. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-183) and Work Release - PCMS Implementor and Administrator** | |
|---|---|---|---|
| | State the term remaining | | **Mistras Group, Inc. PO Box 405694 Atlanta, GA 30384-5694** |
| | List the contract number of any government contract | | |

| 2.186. | State what the contract or lease is for and the nature of the debtor's interest | **Amendment and Joinder Agreement (Environmental Services)** | |
|---|---|---|---|
| | State the term remaining | | **Mostardi Platt 888 Industrial Drive Elmhurst, IL 60126** |
| | List the contract number of any government contract | | |

| 2.187. | State what the contract or lease is for and the nature of the debtor's interest | **Independent Engineering Services St. Croix Restart Project and Addenda** | |
|---|---|---|---|
| | State the term remaining | | **Muse, Stancil & Co. 5080 Spectrum Drive Addison, TX 75001** |
| | List the contract number of any government contract | | |

| 2.188. | State what the contract or lease is for and the nature of the debtor's interest | **Operations O&M PHU - Limited Notice to Proceed** | |
|---|---|---|---|
| | State the term remaining | | **NAES Corporation 1180 N.W. Maple Street Suite 200 Issaquah, WA 98027** |
| | List the contract number of any government contract | | |

| 2.189. | State what the contract or lease is for and the nature of the debtor's interest | **Managed Inventory and Onsite Services Agreement LTR-280 - Managed Chemical Contractor** | |
|---|---|---|---|
| | State the term remaining | | **Nalco U.S. 2, Inc. 1601 West Diehl Road Naperville, IL 60563** |

Debtor 1 **Limetree Bay Refining, LLC**

First Name      Middle Name      Last Name

Case number (*if known*)   **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

List the contract number of any government contract

| | | | |
|---|---|---|---|
| 2.190. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-016); and all amendments and work releases expires 8/2/23** | |
| | State the term remaining | | **National Industrial Services, LLC PO Box 1545 Kingshill, St. Croix, VI 00851** |
| | List the contract number of any government contract | | |
| 2.191. | State what the contract or lease is for and the nature of the debtor's interest | **Access Agreement Contract Number No. LTR-359 - Parts Delivery expires 1/9/22** | |
| | State the term remaining | | **National Parts 455 Plaza Drive Atlanta, GA 30349** |
| | List the contract number of any government contract | | |
| 2.192. | State what the contract or lease is for and the nature of the debtor's interest | **Relocation Services Agreement LTR-225** | |
| | State the term remaining | | **NEI Global Relocation Company 2707 N 118th Street Omaha, NE 68164** |
| | List the contract number of any government contract | | |
| 2.193. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy B0509ENGAO2000586** | |
| | State the term remaining | **expires 12/1/21** | **NOA/Lloyds of London Marsh USA 1166 Avenue of the Americas New York, NY 10036-2774** |
| | List the contract number of any government contract | | |
| 2.194. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement** | |
| | State the term remaining | **expires 12/31/22** | **North Atlantic Power Products No.. 15 Continental Drive Exeter, NH 03833** |
| | List the contract number of any government contract | | |

Debtor 1 **Limetree Bay Refining, LLC**
_____
First Name        Middle Name        Last Name

Case number (*if known*) **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.195. | State what the contract or lease is for and the nature of the debtor's interest | **Master Consignment Agreement (Excess Parts Sale Agreement)** | |
|---|---|---|---|
| | State the term remaining | **expires 3/8/21** | **NRI Industrial Sales LLC**<br>**6401 Rogers Road**<br>**Delta, OH 43515** |
| | List the contract number of any government contract | | |

| 2.196. | State what the contract or lease is for and the nature of the debtor's interest | **Policy # U920968/EXC30001524 800** | |
|---|---|---|---|
| | State the term remaining | | **Oil/Edurance**<br>**Lockton Companies, LLC - Houston**<br>**3657 Briarpark Drive**<br>**Suite 700**<br>**Houston, TX 77042** |
| | List the contract number of any government contract | | |

| 2.197. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement (LTR.-349) - Exterminating for the Village** | |
|---|---|---|---|
| | State the term remaining | | **Oliver Exterminating of the V.I., Inc.**<br>**Plot 6x Peter's Rest**<br>**St. Croix, VI 00820** |
| | List the contract number of any government contract | | |

| 2.198. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement** | |
|---|---|---|---|
| | State the term remaining | | **OpenText**<br>**2950 S. Deleware Street**<br>**Bay Meadows Station 3 Building**<br>**San Mateo, CA 94403** |
| | List the contract number of any government contract | | |

| 2.199. | State what the contract or lease is for and the nature of the debtor's interest | **Electronic License Grant Terms - ETAP Software License Agreement** | |
|---|---|---|---|
| | State the term remaining | | **Operation Technology, Inc.**<br>**17 Goodyear**<br>**Irvine, CA 92618** |
| | List the contract number of any government contract | | |

| 2.200. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LTR-080 and addendum** | |
|---|---|---|---|
| | State the term remaining | | **OSR Services, LP**<br>**4734 Allen Circle**<br>**Baytown, TX 77523** |
| | List the contract number of any | | |

| Debtor 1 | Limetree Bay Refining, LLC | | Case number (*if known*) | 21-32354 |
|---|---|---|---|---|
| | First Name   Middle Name   Last Name | | | |

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

government contract

**2.201.** State what the contract or lease is for and the nature of the debtor's interest

**Services Agreement Contract No. LTR-446**

State the term remaining

List the contract number of any government contract

**Pace Analytical Services, LLC
555 Absaraka Street
Sheridan, WY 82801**

**2.202.** State what the contract or lease is for and the nature of the debtor's interest

**Term Services Agreement and Work Releases Agreement LTR-003 with all work releases and addenda**

State the term remaining

List the contract number of any government contract

**ParFab Field Services, LLC,
15615 E. 590 Rd
Inola, OK 74036**

**2.203.** State what the contract or lease is for and the nature of the debtor's interest

**Combined Property B0509ENGAO2000589**

State the term remaining   **expires 12/1/21**

List the contract number of any government contract

**PartnerRe Ireland Insurance
Marsh USA
1166 Avenue of the Americas
New York, NY 10036-2774**

**2.204.** State what the contract or lease is for and the nature of the debtor's interest

**PAS Terms and Conditions for Services**

State the term remaining

List the contract number of any government contract

**PAS Global, LLC
13100 Space Center Blvd.
Suite 500
Houston, TX 77059**

**2.205.** State what the contract or lease is for and the nature of the debtor's interest

**Household Goods Relocation & Cargo Services Agreement and Amendment and Joinder Agreement expires 7/17/21**

State the term remaining

List the contract number of any government contract

**Paxton International
5300 Port Royal Road
Springfield, VA 22151**

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

**2.206.** State what the contract or lease is for and the nature of the debtor's interest

**Equipment Rental Agreement**

State the term remaining

List the contract number of any government contract

Pentair Filtration Solutions
4301 West Davis
Conroe, TX 77304

---

**2.207.** State what the contract or lease is for and the nature of the debtor's interest

**Services Agreement Contract No. LTR-387 (Gas Station Repairs)**

State the term remaining

List the contract number of any government contract

Petroluem Site Specialist, LLC
P.O. Box 1412
Glen Burnie, MD 21061

---

**2.208.** State what the contract or lease is for and the nature of the debtor's interest

**Employment Agency Agreement**

State the term remaining

List the contract number of any government contract

Petroplan Europe Limited
Mercury House
117 Waterloo Road
London, England SE1 8UL
UNITED KINGDOM

---

**2.209.** State what the contract or lease is for and the nature of the debtor's interest

**Term Services Agreement Contract Number: LTR-424**

State the term remaining

List the contract number of any government contract

Phoenix High Temperature Repair, LLC
6526 Old Brick Road
Suite 120-236
Windemere, FL 34786

---

**2.210.** State what the contract or lease is for and the nature of the debtor's interest

**Services Agreement Contract No. LTR-416**

State the term remaining

List the contract number of any government contract

Pillar Corp Tsc Blower Corp
445 Duane Avenue
Schenectady, NY 12304

---

**2.211.** State what the contract or lease is for and the nature of the debtor's interest

**Software License & Services Agreement**

State the term remaining

List the contract number of any

Pimsoft Inc.
14701 St. Mary's Lane
Suite 175
Houston, TX 77079

---

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

 **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|
| government contract | |

| | | | |
|---|---|---|---|
| 2.212. | State what the contract or lease is for and the nature of the debtor's interest | **General Industrial Maintenance Term Services Agreement [by Joinder Agreement]** | |
| | State the term remaining | | **Pinnacle Services LLC** |
| | List the contract number of any government contract | | **6002 Diamond Ruby Christiansted, VI 00820** |

| | | | |
|---|---|---|---|
| 2.213. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-152 including all task orders, change orders, and memoranda of understanding** | |
| | State the term remaining | | **Pinncacle Asset Integrity Services d/b/a PinnacleART** |
| | List the contract number of any government contract | | **One Pinnacle Way Pasedena, TX 77504** |

| | | | |
|---|---|---|---|
| 2.214. | State what the contract or lease is for and the nature of the debtor's interest | **Medical Service Agreement** | |
| | State the term remaining | **expires 7/15/19** | **Plessen Healthcare** |
| | List the contract number of any government contract | | **3004 Orange Grove Christiansted, VI 00820** |

| | | | |
|---|---|---|---|
| 2.215. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-429** | |
| | State the term remaining | | **Precision Engineering Inc.** |
| | List the contract number of any government contract | | **400 Saint Louis St. Mobile, AL 36602** |

| | | | |
|---|---|---|---|
| 2.216. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement - LTR-398** | |
| | State the term remaining | | **Precision Filtration Products** |
| | List the contract number of any government contract | | **PO Box 218 Pennsburg, PA 18073** |

Debtor 1    **Limetree Bay Refining, LLC**
    First Name        Middle Name        Last Name

Case number (*if known*)    **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

**2.217.**   State what the contract or lease is for and the nature of the debtor's interest — **Master Services and Product Agreement, SOW and MOUs**

     State the term remaining

     List the contract number of any government contract

**Presidio Networked Solutions Group, LLC**
**1955 Lakeway Dr**
**Suite 220**
**Lewisville, TX 75057**

---

**2.218.**   State what the contract or lease is for and the nature of the debtor's interest — **Engagement Letter - Automated Controls Evaluators ("ACE")**

     State the term remaining

     List the contract number of any government contract

**PriceWaterhouseCoopers LLC**
**1000 Louisiana St.**
**Suite 5800**
**Houston, TX 77002**

---

**2.219.**   State what the contract or lease is for and the nature of the debtor's interest — **Services Agreement Contract No. LTR-200 and addenda**

     State the term remaining

     List the contract number of any government contract

**Primatech Inc.**
**50 Northwoods Boulevard**
**Columbus, OH 43235**

---

**2.220.**   State what the contract or lease is for and the nature of the debtor's interest — **Commodity/Cargo Shipping Services - NVOCC Service Arrangement**

     State the term remaining

     List the contract number of any government contract

**Priority Roro Services Inc.**
**P.O. Box 3251**
**Mayaguez, PR 00880**

---

**2.221.**   State what the contract or lease is for and the nature of the debtor's interest — **Term Services Agreement (LTR-421) - Console Operations**

     State the term remaining

     List the contract number of any government contract

**Process Technical Services**
**14550 Torrey Chase Blvd.**
**Suite 220**
**Houston, TX 77014**

---

**2.222.**   State what the contract or lease is for and the nature of the debtor's interest — **Software Master License Agreement**

     State the term remaining    **expires 11/25/24**

     List the contract number of any

**Prometheus Group Enterprises, LLC**
**1101 Haynes St**
**Suite 218**
**Raleigh, NC 27604**

Debtor 1  **Limetree Bay Refining, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)  **21-32354**

  **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| | | |
|---|---|---|
| | government contract | |

| 2.223. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-209 and Task Order** | |
| | State the term remaining | | **Provenance Consulting, LLC** |
| | List the contract number of any government contract | | **301 W. 6th Street**<br>**Suite 200**<br>**Borger, TX 79007** |

| 2.224. | State what the contract or lease is for and the nature of the debtor's interest | **B0509BOWCN1800772** | |
| | State the term remaining | | **QBE**<br>**Lockton Companies, LLC - Houston**<br>**3657 Briarpark Drive** |
| | List the contract number of any government contract | | **Suite 700**<br>**Houston, TX 77042** |

| 2.225. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy ENGAO2000069** | |
| | State the term remaining | **expires 12/1/21** | **QBE/Lloyds of London**<br>**Marsh USA** |
| | List the contract number of any government contract | | **1166 Avenue of the Americas**<br>**New York, NY 10036-2774** |

| 2.226. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract LTR-110 and work releases** | |
| | State the term remaining | | **Quest Integrity USA, LLC** |
| | List the contract number of any government contract | | **17146 Feathercraft #350**<br>**Webster, TX 77598** |

| 2.227. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement (LTR-082 and all addenda) - TPDES Permit Services for Waste Water Treatment Plant** | |
| | State the term remaining | | **Ramboll US Corporation**<br>**4350 N Fairfax Drive** |
| | List the contract number of any government contract | | **Suite 300**<br>**Arlington, VA 22203** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

 **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

| 2.228. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LTR-318 - Sulfiding step for gas oil, diesel, kero, naphtha hydrotreaters** | |
|---|---|---|---|
| | State the term remaining | | **Reactor Resources, LLC** |
| | List the contract number of any government contract | | **3000 FM 517 W. Alvin, TX 77511** |

| 2.229. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LTR-450** | |
|---|---|---|---|
| | State the term remaining | | **Refined Technologies, Inc** |
| | List the contract number of any government contract | | **Legal Department P.O. Box 132196 The Woodlands, TX 77393** |

| 2.230. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-436** | |
|---|---|---|---|
| | State the term remaining | | **Rescue Concepts, Inc** |
| | List the contract number of any government contract | | **293 Mann Road Huntsville, TX 77320** |

| 2.231. | State what the contract or lease is for and the nature of the debtor's interest | **LMS (Learning Management System) License and Support Agreement expires 12/31/21** | |
|---|---|---|---|
| | State the term remaining | | **RISC, Inc.** |
| | List the contract number of any government contract | | **718 FM 1959 Houston, TX 77034** |

| 2.232. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement (LTR-384) - Field Service Technician for SIS Bus Bar System** | |
|---|---|---|---|
| | State the term remaining | | **Ritz Instrument Transformer, Inc** |
| | List the contract number of any government contract | | **25 Hamburg Ave. Lavonia, GA 30553** |

| 2.233. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-075 and task order** | **RMB Consulting & Research, Inc 5104 Bur Oak Circle Raleigh, NC 27612** |
|---|---|---|---|
| | State the term remaining | | |

Debtor 1 **Limetree Bay Refining, LLC**
First Name          Middle Name          Last Name

Case number (*if known*)   **21-32354**

  **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

List the contract number of any government contract _____

| 2.234. | State what the contract or lease is for and the nature of the debtor's interest | **Consulting Agreement** | |
|---|---|---|---|
| | State the term remaining | | **Rocco Colabella** |
| | List the contract number of any government contract | | **13035 Royal George Avenue** |
| | | | **Odessa, FL 33556** |

| 2.235. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement (LTR-330) and Addenda - startup and loop tuning activities** | |
|---|---|---|---|
| | State the term remaining | | **Rockwell Automation Puerto Rico, Inc.** |
| | List the contract number of any government contract | | **Calle 1 Metro Office 6** |
| | | | **Suite 304** |
| | | | **Guayabo, PR 00968** |

| 2.236. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy BO509ENGAO2000576** | |
|---|---|---|---|
| | State the term remaining | **expires 12/1/21** | **Rokstone/Guardian General Insurance** |
| | List the contract number of any government contract | | **Marsh USA** |
| | | | **1166 Avenue of the Americas** |
| | | | **New York, NY 10036-2774** |

| 2.237. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Rooftops Silicone Distributors, Inc. LTS-049-JR Joinder Agreement** | |
|---|---|---|---|
| | State the term remaining | | **Rooftops Silicone Distributors, Inc.** |
| | List the contract number of any government contract | | **1 Estate Hope** |
| | | | **Christiansted, VI 00820** |

| 2.238. | State what the contract or lease is for and the nature of the debtor's interest | **Purchase and Sale Agreement for Products, Parts, and Services including Amendment and Joinder** | |
|---|---|---|---|
| | State the term remaining | | **Rotating Machinery Services, Inc.** |
| | List the contract number of any government contract | | **2760 Baglyos Circle** |
| | | | **Bethlehem, PA 18020** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number *(if known)* | **21-32354** |
| | First Name | Middle Name | Last Name | | |

 **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
| --- | --- |

| 2.239. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement LTS-125-JR (Title V Permitting Assistance)** | |
| | State the term remaining | | **RTP Environmental Associates 304-A West Millbrook Road Raleigh, NC 27609** |
| | List the contract number of any government contract | | |

| 2.240. | State what the contract or lease is for and the nature of the debtor's interest | **Company Guaranty** | |
| | State the term remaining | | **S&B Engineers and Constructors, Ltd. 7825 Park Place Blvd. Houston, TX 77087** |
| | List the contract number of any government contract | | |

| 2.241. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-143** | |
| | State the term remaining | | **S&H Inventory Services, LLC 220 Commons Way Building B Toms River, NJ 08755** |
| | List the contract number of any government contract | | |

| 2.242. | State what the contract or lease is for and the nature of the debtor's interest | **Data Processing Agreement for SAP Cloud Services, Reference No. 0221114662** | |
| | State the term remaining | **expires 11/3/22** | **SAP America 3999 West Chester Pike Newton Square, PA 19073** |
| | List the contract number of any government contract | | |

| 2.243. | State what the contract or lease is for and the nature of the debtor's interest | **Letter Agreement** | |
| | State the term remaining | | **Sard Verbinnen & Co., LLC 909 Third Avenue 32nd Floor New York, NY 10022** |
| | List the contract number of any government contract | | |

| 2.244. | State what the contract or lease is for and the nature of the debtor's interest | **Petroleum Coke and Sulphur Services Agreement - LTR-270 with amendments** | |
| | State the term remaining | | **Savage St. Croix, LLC Dept. 418 Salt Lake City, UT 84130** |

Debtor 1 **Limetree Bay Refining, LLC**

First Name      Middle Name      Last Name

Case number (*if known*)    **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

List the contract number of any
government contract

---

| 2.245. | State what the contract or lease is for and the nature of the debtor's interest | **Amended Term Services Agreement (LTR-005 including all addenda and work releases)** |
|---|---|---|

    State the term remaining

    List the contract number of any
    government contract

**Sentinel Integrity Solutions, Inc
6606 Miller Road 2
Houston, TX 77049**

---

| 2.246. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement and Work Releases Agreement LTR-010 addenda** |
|---|---|---|

    State the term remaining

    List the contract number of any
    government contract

**Shermco Industries
2425 East Pioneer Dr
Irving, TX 75061**

---

| 2.247. | State what the contract or lease is for and the nature of the debtor's interest | **Employment Agency Agreement** |
|---|---|---|

    State the term remaining

    List the contract number of any
    government contract

**Shirley Parsons Inc.
51 Melcher Street
Boston, MA 02210**

---

| 2.248. | State what the contract or lease is for and the nature of the debtor's interest | **Standard Terms and Conditions of Sale For Siemens Joint Product and Services Offering (Compressor and Rotating Equipment Repairs)** |
|---|---|---|

    State the term remaining

    List the contract number of any
    government contract

**Siemen Industry, Inc.
1200 W. Sam Houston Parkway N.
Houston, TX 77043**

---

| 2.249. | State what the contract or lease is for and the nature of the debtor's interest | **Siemens Standard Service Terms and Conditions and Work Orders, Insurance** |
|---|---|---|

    State the term remaining

    List the contract number of any
    government contract

**Siemens Industry, Inc
7000 Siemens Rd
Wendell, NC 27591**

---

Debtor 1   **Limetree Bay Refining, LLC**                                Case number (*if known*)   **21-32354**

First Name          Middle Name          Last Name



### Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.250. | State what the contract or lease is for and the nature of the debtor's interest | **Consulting Services Agreement - Addendum No. 7** | |
|---|---|---|---|
| | State the term remaining | **expires 12/31/21** | |
| | List the contract number of any government contract | | **Sloan Schoyer**<br>**124 Mile Stretch Road**<br>**Biddeford Pool, ME 04006** |

| 2.251. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-210 and Task Order** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **Smith & Burgess, LLC**<br>**7600 W Tidwell Road**<br>**Suite 600**<br>**Houston, TX 77040** |

| 2.252. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-428** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **Southshore Controls, Inc.**<br>**9395 Pinecone Drive**<br>**Mentor, OH 44060** |

| 2.253. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement (LTR 166) including work releases and memorandum of understanding -Technical support regarding flares, fenceline, energy assessments, general services** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **Spectrum Environmental Solution, LLC**<br>**2340 W. Braker Lane**<br>**Austin, TX 78642** |

| 2.254. | State what the contract or lease is for and the nature of the debtor's interest | **Services Addendum No. 1 to Master Purchase and Sale Agreement for Equipment or Material PO-4700006905** | |
|---|---|---|---|
| | State the term remaining | | **Speed Valve & Specialty Infrared, Inc.**<br>**951 FM 646 Rd E**<br>**Suite A26**<br>**Dickinson, TX 77539-2105** |

Debtor 1  **Limetree Bay Refining, LLC**
First Name           Middle Name           Last Name

Case number (*if known*)  **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

List the contract number of any
government contract  _____

| 2.255. | State what the contract or lease is for and the nature of the debtor's interest | **General Agreement & SOW** | |
|---|---|---|---|
| | State the term remaining | | **Sphera Solutions, Inc.** |
| | List the contract number of any government contract | _____ | **130 E. Randolph Street Suite 2900 Chicago, IL 60601** |

| 2.256. | State what the contract or lease is for and the nature of the debtor's interest | **SAAS Order Form** | |
|---|---|---|---|
| | State the term remaining | **expires 1/31/23** | **Sphera Solutions, Inc.** |
| | List the contract number of any government contract | _____ | **130 E. Randolph Street Suite 2900 Chicago, IL 60601** |

| 2.257. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-445** | |
|---|---|---|---|
| | State the term remaining | | **Spirit Environmental, LLC** |
| | List the contract number of any government contract | _____ | **20465 State Highway 249 Suite 300 Houston, TX 77070** |

| 2.258. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LTR-431 (Crane and Door Services)** | |
|---|---|---|---|
| | State the term remaining | | **Standard Crane and Hoist, LLC** |
| | List the contract number of any government contract | _____ | **2160 Wellspring Beaumont, TX 77705** |

| 2.259. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-415 - HSE compliance** | |
|---|---|---|---|
| | State the term remaining | | **Stantec Consulting Services Inc.** |
| | List the contract number of any government contract | _____ | **13980 Collections Center Drive Chicago, IL 60693** |

Debtor 1 **Limetree Bay Refining, LLC**  Case number (*if known*) **21-32354**

First Name          Middle Name          Last Name



**Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.260. | State what the contract or lease is for and the nature of the debtor's interest | **Letter Agreement (vendor terms)** | |
|---|---|---|---|
| | State the term remaining | | **Stanton Chase** |
| | List the contract number of any government contract | | **11700 Katy Freeway Suite 630 Houston, TX 77079** |

| 2.261. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-431** | |
|---|---|---|---|
| | State the term remaining | | **Stewart & Stevenson FDDA LLC** |
| | List the contract number of any government contract | | **d/b/a Florida Detroit Diesel-Allison 6850 President's Drive Orlando, FL 32809** |

| 2.262. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-069 and task orders** | |
|---|---|---|---|
| | State the term remaining | | **Strategic Contract Resources, LLC** |
| | List the contract number of any government contract | | **5655 Lake Acworth Dr. Suite 350 Acworth, GA 30101** |

| 2.263. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-132** | |
|---|---|---|---|
| | State the term remaining | | **Stress Engineering Services, Inc.** |
| | List the contract number of any government contract | | **13800 Westfair East Drive Houston, TX 77041** |

| 2.264. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement (Consulting Amine and Sulphur)** | |
|---|---|---|---|
| | State the term remaining | | **Sulphur Experts, Inc.** |
| | List the contract number of any government contract | | **12 Manning Close NE Suite 102 Calgary, Alberta T2E 7N6 CANADA** |

| 2.265. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-117), including all addenda and work releases** | |
|---|---|---|---|
| | State the term remaining | | **Sulzer Turbo Services Houston, Inc.** |
| | List the contract number of any | | **11518 Old La Porte Road La Porte, TX 77571** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

 **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

| | | government contract | |
|---|---|---|---|

| 2.266. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement LTR-297** | |
|---|---|---|---|
| | State the term remaining | | **Superior Laboratory Services Inc.** |
| | List the contract number of any government contract | | **1710 Preston Suite A Passadena, TX 77503** |

| 2.267. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy OMP 2000425-00** | |
|---|---|---|---|
| | State the term remaining | **expires 12/1/21** | **Swiss Re/Westport Insurance Company Westport Insurance Corporation** |
| | List the contract number of any government contract | | **2 Waterside Crossing, Suite 2 Windsor, CT 06095** |

| 2.268. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-433 (Continuous Opacity Monitoring System (COMS))** | |
|---|---|---|---|
| | State the term remaining | | **Teledyne Monitor Labs** |
| | List the contract number of any government contract | | **35 Inverness Drive East Englewood, CO 80112** |

| 2.269. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-089** | |
|---|---|---|---|
| | State the term remaining | | **Terminix International VI** |
| | List the contract number of any government contract | | **6300 Suite 1 Estate Peter's Rest Christiansted, VI 00820** |

| 2.270. | State what the contract or lease is for and the nature of the debtor's interest | **KnowBe4 Renewal 2020** | |
|---|---|---|---|
| | State the term remaining | | **The Broadleaf Group** |
| | List the contract number of any government contract | | **13100 Worthan Center Dr. Suite 150 Houston, TX 77065** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

  **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

| 2.271. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-055** | |
|---|---|---|---|
| | State the term remaining | | **The Equity Engineering Group, Inc.** |
| | List the contract number of any government contract | | **20600 Chagrin Boulevard Suite 1200 Shaker Heights, OH 44122** |

| 2.272. | State what the contract or lease is for and the nature of the debtor's interest | **Refinery Operating Agreement and Citibank Letter of Credit expires 7/4/41** | |
|---|---|---|---|
| | State the term remaining | | **The Gov't of the U.S. Virgin Islands** |
| | List the contract number of any government contract | | **Attn: Office of the Governor Government House Charlotte Amalie St Thomas, VI 00802** |

| 2.273. | State what the contract or lease is for and the nature of the debtor's interest | **Terms and Conditions of Sale for Products and Service** | |
|---|---|---|---|
| | State the term remaining | | **Thermo Fisher** |
| | List the contract number of any government contract | | **27 Forge Parkway Franklin, MA 02038** |

| 2.274. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract No. LTR-224, guarantee and work releases** | |
|---|---|---|---|
| | State the term remaining | | **TISI VI, LLC** |
| | List the contract number of any government contract | | **f/k/a Team Industrial Services, Inc. 13132 Dairy Ashford Suite 600 Sugar Land, TX 77478** |

| 2.275. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-066) and work releases** | |
|---|---|---|---|
| | State the term remaining | | **Total Safety Virgin Islands, LLC** |
| | List the contract number of any government contract | | **3151 Briar Park Drive Suite ??? Houston, TX 77042** |

| 2.276. | State what the contract or lease is for and the nature of the debtor's interest | **Software License, Support and Services Terms Agreement** | |
|---|---|---|---|
| | State the term remaining | | **expires 12/10/21** | **Transpara LLC** |
| | List the contract number of any | | | **15900 N. 78th Street Suite 100 Scottsdale, AZ 85260** |

Debtor 1 **Limetree Bay Refining, LLC**

First Name       Middle Name       Last Name

Case number (*if known*)   **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| government contract | |

| | | | |
|---|---|---|---|
| 2.277. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-405** | |
| | State the term remaining | | **Tri-State Bird Rescue & Research, Inc.** |
| | List the contract number of any government contract | | **170 Possum Hollow Road** **Newark, DE 19711** |
| 2.278. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-216 and Task Orders** | |
| | State the term remaining | | **Turbine Controls & Excitation Services,** |
| | List the contract number of any government contract | | **PO Box 241** **Yarmouth, ME 04096** |
| 2.279. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-068 including all addenda and work releases)** | |
| | State the term remaining | | **Turnaround Consulting Services, LLC** |
| | List the contract number of any government contract | | **3618 Sierra Circle** **Sulphur, LA 70665** |
| 2.280. | State what the contract or lease is for and the nature of the debtor's interest | **Energy Consulting and Advisory - Develop Options & Restart Plan for Idled LBRefinery** | |
| | State the term remaining | | **Turner, Mason and Company** |
| | List the contract number of any government contract | | **P.O. Box 130808** **Dallas, TX 75313** |
| 2.281. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement (LTR-174) and Task Orders - Environmental Consulting** | |
| | State the term remaining | | **Tysam Tech LLC** |
| | List the contract number of any government contract | | **230 Work and Rest** **St. Croix, VI 00821** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

 **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

| 2.282. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract No. LTR-158 and Work Releases** | |
|---|---|---|---|
| | State the term remaining | | **UHP Projects, Inc.** |
| | List the contract number of any government contract | | **4811 Mercantile Drive**<br>**Newport News, VA 23607** |

| 2.283. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-139) including all addenda, work releases, and memoranda of understanding - Onsite Field Support Services** | |
|---|---|---|---|
| | State the term remaining | | **Universal Plant Services, (VI), LLC** |
| | List the contract number of any government contract | | **806 Seaco Court**<br>**Deer Park, TX 77536** |

| 2.284. | State what the contract or lease is for and the nature of the debtor's interest | **Par-Isom Process License Ageement** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC** |
| | List the contract number of any government contract | | **25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5018** |

| 2.285. | State what the contract or lease is for and the nature of the debtor's interest | **Platforming Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for Platforming Process Unit Christiansted, USVI - Unit No. 4 - Limetree Unit 5400** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC** |
| | List the contract number of any government contract | | **25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5018** |

| 2.286. | State what the contract or lease is for and the nature of the debtor's interest | **Merox Process Licensing Agreement between Limetree Bay Refining, LLC and UOP LLC for C3/C4 Merox Process Unit Christiansted, USVI - Unit No 3 (Unit 3201)** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5019** |

Debtor 1 **Limetree Bay Refining, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)   **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| | List the contract number of any government contract | |
|---|---|---|

| 2.287. | State what the contract or lease is for and the nature of the debtor's interest | **Merox Process Licensing Agreement between Limetree Bay Refining, LLC and UOP LLC for LPG Merox Process Unit Christiansted, USVI - Unit No 5 (Unit 4820)** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5020** |
| | List the contract number of any government contract | | |

| 2.288. | State what the contract or lease is for and the nature of the debtor's interest | **Merox Process Licensing Agreement between Limetree Bay Refining, LLC and UOP LLC for C5 Merox Process Unit Christiansted, USVI - (Unit 7590)** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5021** |
| | List the contract number of any government contract | | |

| 2.289. | State what the contract or lease is for and the nature of the debtor's interest | **VGO Unionfining Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for VGO Unionfining Process Unit Christiansted, USVI - Unit No. 6 (Unit 460 aka DD6)** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5022** |
| | List the contract number of any government contract | | |

Debtor 1  **Limetree Bay Refining, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)  **21-32354**



## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.290. | State what the contract or lease is for and the nature of the debtor's interest | **Distillate Unionfining Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for Distillate Unionfining Process Unit Christiansted, USVI - Unit No. 7 (Unit 4300 aka DD7)** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5023** |

| 2.291. | State what the contract or lease is for and the nature of the debtor's interest | **Distillate Unionfining Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for Distillate Unionfining Process Unit Christiansted, USVI - Unit No. 9 (Unit 5300 aka DD7)** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5024** |

| 2.292. | State what the contract or lease is for and the nature of the debtor's interest | **Merox Process Licensing Agreement between Limetree Bay Refining, LLC and UOP LLC for I-C5 Merox Process Unit Christiansted, USVI - Process Units No 1, No 2 and No 4 (Unit 3202 aka i-C5 Sweetner)** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5025** |
| | List the contract number of any government contract | | |

| 2.293. | State what the contract or lease is for and the nature of the debtor's interest | **Merox Process Licensing Agreement between Limetree Bay Refining, LLC and UOP LLC for FCC LPG Merox Process Unit Christiansted, USVI - Process Units No 6 (Unit 7500)** | |
|---|---|---|---|
| | | | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5026** |

Debtor 1   **Limetree Bay Refining, LLC**                                   Case number (*if known*)   **21-32354**

First Name          Middle Name          Last Name

  **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

State the term remaining

List the contract number of any
government contract     _____

| 2.294. | State what the contract or lease is for and the nature of the debtor's interest | **Merox Process Licensing Agreement between Limetree Bay Refining, LLC and UOP LLC for Light FCC Gasoline Merox Process Unit Christiansted, USVI - Process Units No 7 (Unit 7550)** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC 25 E. Algonquin Road Des Plaines, IL 60017-5027** |
| | List the contract number of any government contract | | |

| 2.295. | State what the contract or lease is for and the nature of the debtor's interest | **Merox Process Licensing Agreement between Limetree Bay Refining, LLC and UOP LLC for Heavy FCC Gasoline Merox Process Unit Christiansted, USVI - Process Units No 9 (Unit 7570)** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC 25 E. Algonquin Road Des Plaines, IL 60017-5028** |
| | List the contract number of any government contract | | |

| 2.296. | State what the contract or lease is for and the nature of the debtor's interest | **Butamer Process Licensing Agreement between Limetree Bay Refining, LLC and UOP LLC for Butamer Process Unit Christiansted, USVI** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC 25 E. Algonquin Road Des Plaines, IL 60017-5029** |
| | List the contract number of any government contract | | |

Debtor 1    **Limetree Bay Refining, LLC**                                           Case number (*if known*)    **21-32354**

First Name            Middle Name            Last Name

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.297. | State what the contract or lease is for and the nature of the debtor's interest | **Fluid Catalytic Cracking Process Licensing Agreement between Limetree Bay Refining, LLC and UOP LLC for Fluid Catalytic Cracking Process Unit Christiansted, USVI - Unit 7000** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC** |
| | List the contract number of any government contract | | **25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5030** |

| 2.298. | State what the contract or lease is for and the nature of the debtor's interest | **Sulfolane Process Licensing Agreement between Limetree Bay Refining, LLC and UOP LLC for Sulfolane Process Unit Christiansted, USVI - Unit 4500** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC** |
| | List the contract number of any government contract | | **25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5031** |

| 2.299. | State what the contract or lease is for and the nature of the debtor's interest | **VGO Unionfining Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for VGO Unionfining Process Unit Christiansted, USVI - Unit No. 2 (Unit 800 aka DD2)** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC** |
| | List the contract number of any government contract | | **25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5032** |

| 2.300. | State what the contract or lease is for and the nature of the debtor's interest | **Platforming Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for Platforming Process Unit Christiansted, USVI - Unit No. 2 (Unit 600)** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC** |
| | List the contract number of any government contract | | **25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5033** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

 **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

| 2.301. | State what the contract or lease is for and the nature of the debtor's interest | **Platforming Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for Platforming Process Unit Christiansted, USVI - Unit No. 3 (Unit 4400)** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC** |
| | List the contract number of any government contract | | **25 E. Algonquin Road Des Plaines, IL 60017-5034** |

| 2.302. | State what the contract or lease is for and the nature of the debtor's interest | **VGO Unionfining Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for VGO Unionfining Process Unit Christiansted, USVI - Unit No. 4 (Unit 2200 aka DD4)** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC** |
| | List the contract number of any government contract | | **25 E. Algonquin Road Des Plaines, IL 60017-5035** |

| 2.303. | State what the contract or lease is for and the nature of the debtor's interest | **Distillate Unionfining Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for Distillate Unionfining Process Unit Christiansted, USVI - Unit No. 5 (Unit 2400 aka DD5)** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC** |
| | List the contract number of any government contract | | **25 E. Algonquin Road Des Plaines, IL 60017-5036** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|
| | First Name    Middle Name    Last Name | | | |

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.304. | State what the contract or lease is for and the nature of the debtor's interest | **Distillate Unionfining Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for Distillate Unionfining Process Unit Christiansted, USVI - Unit No. 3 (Unit 1500 aka DD3)** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC** |
| | List the contract number of any government contract | | **25 E. Algonquin Road** **Des Plaines, IL 60017-5037** |

| 2.305. | State what the contract or lease is for and the nature of the debtor's interest | **Naphtha Unionfining Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for Naphtha Unionfining Process Unit Christiansted, USVI - Unit No. 2 (Unit 600)** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC** |
| | List the contract number of any government contract | | **25 E. Algonquin Road** **Des Plaines, IL 60017-5038** |

| 2.306. | State what the contract or lease is for and the nature of the debtor's interest | **Naphtha Unionfining Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for Naphtha Unionfining Process Unit Christiansted, USVI - Unit No. 3 (Unit 4400)** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC** |
| | List the contract number of any government contract | | **25 E. Algonquin Road** **Des Plaines, IL 60017-5039** |

| 2.307. | State what the contract or lease is for and the nature of the debtor's interest | **Naphtha Unionfining Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for Naphtha Unionfining Process Unit Christiansted, USVI - Unit No. 4 (Unit 5500)** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC** **25 E. Algonquin Road** **Des Plaines, IL 60017-5040** |

Debtor 1   **Limetree Bay Refining, LLC**

First Name          Middle Name          Last Name

Case number *(if known)*   **21-32354**



### Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| List the contract number of any government contract | |

| 2.308. | State what the contract or lease is for and the nature of the debtor's interest | **Naphtha Unionfining Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for Naphtha Unionfining Process Unit Christiansted, USVI - Unit No. 5 (Unit 2400)** |
|---|---|---|
| | State the term remaining | |
| | List the contract number of any government contract | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5041** |

| 2.309. | State what the contract or lease is for and the nature of the debtor's interest | **Naphtha Unionfining Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for Naphtha Unionfining Process Unit Christiansted, USVI - Unit No. 1 (Unit 1500)** |
|---|---|---|
| | State the term remaining | |
| | List the contract number of any government contract | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5042** |

| 2.310. | State what the contract or lease is for and the nature of the debtor's interest | **License Transfer and Termination Agreement** |
|---|---|---|
| | State the term remaining | |
| | List the contract number of any government contract | **UOP LLC / Hovensa LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5017** |

| 2.311. | State what the contract or lease is for and the nature of the debtor's interest | **National Account Agreement** |
|---|---|---|
| | State the term remaining | |
| | List the contract number of any government contract | **URVI, Inc.**<br>**100 First Stamford Place**<br>**Suite 700**<br>**Stamford, CT 06902** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

 **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

| 2.312. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-444 (Expert Alarm Management Services) expires 5/5/22** | |
|---|---|---|---|
| | State the term remaining | | **User Centered Design Services, Inc. 3655 West Anthem Way Suite A-109-400 Anthem, AZ 85086** |
| | List the contract number of any government contract | | |

| 2.313. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement, Contract Number: LTR-066 and work releases** | |
|---|---|---|---|
| | State the term remaining | | **V. I. Recycling Company 6002 Estate Diamond Ruby Suite 102 Christiansted, VI 00820** |
| | List the contract number of any government contract | | |

| 2.314. | State what the contract or lease is for and the nature of the debtor's interest | **Master Agreement for Sale of Scrap Metal** | |
|---|---|---|---|
| | State the term remaining | | **V.I. Recycling Company 6002 Estate Diamond Ruby Suite 102 Christiansted, VI 00820** |
| | List the contract number of any government contract | | |

| 2.315. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-083 including all addenda and work releases) - NDT Inspection Services** | |
|---|---|---|---|
| | State the term remaining | | **Versa Integrity Group, Inc. 4301 Hwy 27 South Sulphur, LA 70665** |
| | List the contract number of any government contract | | |

| 2.316. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement and Work Releases Agreement LTR-001 with all work releases** | |
|---|---|---|---|
| | State the term remaining | | **Vesta Housing Solutions, LLC 335 East Maple Road Suite 200 Birmingham, MI 48009** |
| | List the contract number of any government contract | | |

Debtor 1   **Limetree Bay Refining, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)   **21-32354**

   **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.317. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement LTR-323 - (Motor Circuit Evaluation Service on all Electrical Motors)** | |
|---|---|---|---|
| | State the term remaining | | **VibrAnalysis, Inc.** |
| | List the contract number of any government contract | | **323 Marginal Carr 199 San Juan, PR 00926** |

| 2.318. | State what the contract or lease is for and the nature of the debtor's interest | **Purchase Order Terms and Conditions Agreement 139-LBR-PO Addendum No. 1** | |
|---|---|---|---|
| | State the term remaining | | **Victory Energy Operations LLC** |
| | List the contract number of any government contract | | **E. 126th Street N. Collinsville, OK 74021** |

| 2.319. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LTR-064 with addenda and work releases** | |
|---|---|---|---|
| | State the term remaining | | **Virgin Islands Industrial Services, LLC** |
| | List the contract number of any government contract | | **#6002 Estate Dimond Ruby Ste. 3-103 Christiansted, VI 00829** |

| 2.320. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement** | |
|---|---|---|---|
| | State the term remaining | | **Virgin Islands Paving, Inc.** |
| | List the contract number of any government contract | | **13 GA Estate Bethlehem Christiansted, VI 00820** |

| 2.321. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-094** | |
|---|---|---|---|
| | State the term remaining | **expires 8/13/2021** | **Virgin Islands Telephone Corporation d/b/a Viya** |
| | List the contract number of any government contract | | **4006 Estate Diamond Christiansted, VI** |

| 2.322. | State what the contract or lease is for and the nature of the debtor's interest | **Master Service Agreement, SOW and termination** | **Virgin Islands Telephone Corporation d/b/a Viya** |
|---|---|---|---|
| | State the term remaining | **expires 8/13/21** | **4006 Estate Diamond St. Croix, VI 00820** |

Debtor 1 **Limetree Bay Refining, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)  **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| | List the contract number of any government contract | |
|---|---|---|

| 2.323. | State what the contract or lease is for and the nature of the debtor's interest | **Cable TV Bulk Service Subscription Agreement and SOW** | |
|---|---|---|---|
| | State the term remaining | **expires 8/13/21** | **Virgin Islands Telephone Corporation d/b/a Viya 4006 Estate Diamond St. Croix, VI 00820** |
| | List the contract number of any government contract | | |

| 2.324. | State what the contract or lease is for and the nature of the debtor's interest | **Master Services Agreement** | |
|---|---|---|---|
| | State the term remaining | | **VisiumKMS Inc. 2700 Post Oak Blvd. 21st Floor Houston, TX 77056** |
| | List the contract number of any government contract | | |

| 2.325. | State what the contract or lease is for and the nature of the debtor's interest | **Software Subscription Service Agreement** | |
|---|---|---|---|
| | State the term remaining | **expires 2/11/23** | **VisiumKMS Inc. 2700 Post Oak Blvd. 21st Floor Houston, TX 77056** |
| | List the contract number of any government contract | | |

| 2.326. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement (LTR-092 and all addenda) - Printer/Scanner Maintenance** | |
|---|---|---|---|
| | State the term remaining | | **Visual Edge Technology d/b/a Axsa Imaging Solutions 2100 N Reagan Blvd. Longwood, FL 32750** |
| | List the contract number of any government contract | | |

| 2.327. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract No. LTR-100** | |
|---|---|---|---|
| | State the term remaining | | **Vital Industrial Solutions 960 Atkin Avenue Samia, Ontario N7W 1A7 CANADA** |
| | List the contract number of any government contract | | |

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |



## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.328. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-025); Addendum #1; Addendum #10** |
|---|---|---|
| | State the term remaining | |
| | List the contract number of any government contract | **Vivot Equipment Corporation**<br>**9010 Estate Cottage**<br>**Christiansted, VI 00820** |

| 2.329. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-356) including work releases and memoranda of understanding - Wastewater Treatment Plant Operations & Centifuge** |
|---|---|---|
| | State the term remaining | **expires 1/1/2025** |
| | List the contract number of any government contract | **VWNA Caribbean, LLC**<br>**Attn: Todd Newman**<br>**1131 King Street**<br>**Christiansted, VI 00820** |

| 2.330. | State what the contract or lease is for and the nature of the debtor's interest | **Managed Inventory Agreement Limetree Agreement LTR-084** |
|---|---|---|
| | State the term remaining | |
| | List the contract number of any government contract | **WDI USVI, LLC**<br>**225 W. Station Square Dr.**<br>**Suite 700**<br>**Pittsburgh, PA 15219** |

| 2.331. | State what the contract or lease is for and the nature of the debtor's interest | **Master Lease Agreement (No. LBR-2019) Limetree Agreement LTR-285 and corresponding lease schedules - N2 trailer lease (6 ea; 3 years)** |
|---|---|---|
| | State the term remaining | **expires 8/15/2022** |
| | List the contract number of any government contract | **Weldship Industries, Inc.**<br>**225 W 2nd Street**<br>**Bethlehem, PA 18015** |

| 2.332. | State what the contract or lease is for and the nature of the debtor's interest | **Insurance Policy** |
|---|---|---|
| | State the term remaining | |
| | List the contract number of any government contract | **Westchester Surplus**<br>**Lockton Companies, LLC - Houston**<br>**3657 Briarpark Drive**<br>**Suite 700**<br>**Houston, TX 77042** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.333. | State what the contract or lease is for and the nature of the debtor's interest | **Agreement For Services - Contracting Staffing and Search** | |
|---|---|---|---|
| | State the term remaining | | **Whitaker IT, LLC d/b/a Whitaker Techincal 10375 Richmond Ave Suite 1700 Houston, TX 77042** |
| | List the contract number of any government contract | | |

| 2.334. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LB-006 (RRP Emergency and Fire Response)** | |
|---|---|---|---|
| | State the term remaining | | **WillFire HC, LLC d/b/a William Fire & Hazard Control 9605 Richard Wycoff Drive Port Arthur, TX 77640** |
| | List the contract number of any government contract | | |

| 2.335. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LTR-386 (A/C Maintenance & Repair)** | |
|---|---|---|---|
| | State the term remaining | | **William R. Nash V.I. Inc. c/o Timothy Gorman P.O. Box 4305 Kingshill, St. Croix, VI 00851** |
| | List the contract number of any government contract | | |

| 2.336. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy BO509ENGAO2000576** | |
|---|---|---|---|
| | State the term remaining | **expires 12/1/21** | **WRB/Guardian General Insurance Marsh USA 1166 Avenue of the Americas New York, NY 10036-2774** |
| | List the contract number of any government contract | | |

| 2.337. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-410-JR** | |
|---|---|---|---|
| | State the term remaining | | **Wunderlich-Malec Engineering, Inc. 6101 Blue Circle Drive Eden Prairie, MN 55343** |
| | List the contract number of any government contract | | |

| 2.338. | State what the contract or lease is for and the nature of the debtor's interest | **Policy # XLUMB-2299784** | **XL Bermuda Lockton Companies, LLC - Houston 3657 Briarpark Drive Suite 700 Houston, TX 77042** |
|---|---|---|---|

Debtor 1   **Limetree Bay Refining, LLC**                                     Case number (*if known*)   **21-32354**
First Name                Middle Name              Last Name

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| State the term remaining | |
| List the contract number of any government contract | |

| 2.339. | State what the contract or lease is for and the nature of the debtor's interest | **Master Service Agreement and SOW** | |
|---|---|---|---|
| | State the term remaining | **expires 8/23/21** | **Yana Systems Inc.** **6860 North Dallas Parkway** **Suite 200** **Plano, TX** |
| | List the contract number of any government contract | | |

| 2.340. | State what the contract or lease is for and the nature of the debtor's interest | **Coaching Agreement** | |
|---|---|---|---|
| | State the term remaining | **expires 2/28/22** | **York Career Development, Inc.** **651 Bering Drive** **Suite 1304** **Houston, TX 77057** |
| | List the contract number of any government contract | | |

**Fill in this information to identify the case:**

Debtor name   **Limetree Bay Refining, LLC**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF TEXAS

Case number (if known)   **21-32354**

☐ Check if this is an amended filing

## Official Form 206H
## Schedule H: Your Codebtors
12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

1. Do you have any codebtors?

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

☑ Yes

2. **In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| **Name** | **Mailing Address** | **Name** | *Check all schedules that apply:* |
| 2.1  Limetree Bay "Affiliates" | | InServ Field Services USVI, LLC | ☑ D  **2.12**<br>☐ E/F _____<br>☐ G _____ |
| 2.2  Limetree Bay Energy, LLC | | Excel Construction & Maintenance VI | ☑ D  **2.8**<br>☐ E/F _____<br>☐ G _____ |
| 2.3  Limetree Bay Refining Marketing, LLC | #1 Estate Hope Christiansted, VI 00820 | Wilmington Trust, N.A. | ☑ D  **2.20**<br>☐ E/F _____<br>☐ G _____ |
| 2.4  Limetree Bay Refining Marketing, LLC | #1 Estate Hope Christiansted, VI 00820 | J. Aron & Company LLC | ☑ D  **2.13**<br>☐ E/F _____<br>☐ G _____ |
| 2.5  Limetree Bay Refining Marketing, LLC | #1 Estate Hope Christiansted, VI 00820 | J. Aron & Company LLC | ☑ D  **2.14**<br>☐ E/F _____<br>☐ G _____ |

| Debtor | **Limetree Bay Refining, LLC** | Case number *(if known)* | **21-32354** |

■ **Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|
| 2.6 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope** **Christiansted, VI 00820** | **Goldman Sachs Bank USA** | ■ D __**2.9**__ <br> ☐ E/F _____ <br> ☐ G _____ |
| 2.7 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope** **Christiansted, VI 00820** | **Wilmington Trust, N.A.** | ■ D __**2.20**__ <br> ☐ E/F _____ <br> ☐ G _____ |
| 2.8 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope** **Christiansted, VI 00820** | **J. Aron & Company LLC** | ■ D __**2.13**__ <br> ☐ E/F _____ <br> ☐ G _____ |
| 2.9 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope** **Christiansted, VI 00820** | **J. Aron & Company LLC** | ■ D __**2.14**__ <br> ☐ E/F _____ <br> ☐ G _____ |
| 2.10 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope** **Christiansted, VI 00820** | **Goldman Sachs Bank USA** | ■ D __**2.9**__ <br> ☐ E/F _____ <br> ☐ G _____ |
| 2.11 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **Great Southern Technologies LLC** | ■ D __**2.10**__ <br> ☐ E/F _____ <br> ☐ G _____ |
| 2.12 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **Wholesale Electric Supply Co.** | ☐ D _____ <br> ■ E/F __**3.298**__ <br> ☐ G _____ |
| 2.13 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **V.I. Industrial Services, LLC** | ■ D __**2.18**__ <br> ☐ E/F _____ <br> ☐ G _____ |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

| Debtor | **Limetree Bay Refining, LLC** | Case number *(if known)* | **21-32354** |
|---|---|---|---|

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| 2.14 **Limetree Bay Terminals, LLC** | #1 Estate Hope Christiansted, VI 00820-5652 | **Excel Construction & Maintenance VI** | ■ D __2.8__<br>☐ E/F _____<br>☐ G _____ |
| 2.15 **Limetree Bay Terminals, LLC** | #1 Estate Hope Christiansted, VI 00820-5652 | **Cust-O-Fab, LLC** | ■ D __2.6__<br>☐ E/F _____<br>☐ G _____ |
| 2.16 **Limetree Bay Terminals, LLC** | #1 Estate Hope Christiansted, VI 00820-5652 | **Cust-O-Fab Specialty Services, LLC** | ■ D __2.5__<br>☐ E/F _____<br>☐ G _____ |
| 2.17 **Limetree Bay Terminals, LLC** | #1 Estate Hope Christiansted, VI 00820-5652 | **Vivot Equipment Corporation** | ■ D __2.19__<br>☐ E/F _____<br>☐ G _____ |
| 2.18 **Limetree Bay Cayman II, LLC** | | **Arcadia/Ark/Helix** | ☐ D _____<br>☐ E/F _____<br>■ G __2.20__ |
| 2.19 **Limetree Bay Cayman II, LLC** | | **Chaucer/Apollo** | ☐ D _____<br>☐ E/F _____<br>■ G __2.64__ |
| 2.20 **Limetree Bay Cayman, LLC** | | **Arcadia/Ark/Helix** | ☐ D _____<br>☐ E/F _____<br>■ G __2.20__ |
| 2.21 **Limetree Bay Cayman, LLC** | | **Chaucer/Apollo** | ☐ D _____<br>☐ E/F _____<br>■ G __2.64__ |

| Debtor | **Limetree Bay Refining, LLC** | Case number *(if known)* | **21-32354** |
|---|---|---|---|

▮ **Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| 2.22 | **Limetree Bay Financing, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Arcadia/Ark/Helix** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G  **2.20** |
| 2.23 | **Limetree Bay Financing, LLC** | | **Chaucer/Apollo** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G  **2.64** |
| 2.24 | **Limetree Bay Refining Holdings II, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Arcadia/Ark/Helix** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G  **2.20** |
| 2.25 | **Limetree Bay Refining Holdings II, LLC** | | **Chaucer/Apollo** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G  **2.64** |
| 2.26 | **Limetree Bay Refining Holdings, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Arcadia/Ark/Helix** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G  **2.20** |
| 2.27 | **Limetree Bay Refining Holdings, LLC** | | **Chaucer/Apollo** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G  **2.64** |
| 2.28 | **Limetree Bay Refining Marketing, LLC** | **11100 Brittmoore Park Drive Houston, TX 77041** | **BP Products North America Inc.** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G  **2.51** |
| 2.29 | **Limetree Bay Refining Marketing, LLC** | **11100 Brittmoore Park Drive Houston, TX 77041** | **Limetree Bay Terminals, LLC** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G  **2.173** |

| Debtor | **Limetree Bay Refining, LLC** | Case number *(if known)* | **21-32354** |

⬛ **Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

Column 1: **Codebtor** | | Column 2: **Creditor**

| | Codebtor | | Creditor | |
|---|---|---|---|---|
| 2.30 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **J. Aron & Company LLC** | ☐ D ____ <br> ☐ E/F ____ <br> ⬛ G    **2.158** |
| 2.31 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **AIG Insurance Company - Puerto Rico** | ☐ D ____ <br> ☐ E/F ____ <br> ⬛ G    **2.8** |
| 2.32 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Arcadia/Ark/Helix** | ☐ D ____ <br> ☐ E/F ____ <br> ⬛ G    **2.20** |
| 2.33 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **WRB/Guardian General Insurance** | ☐ D ____ <br> ☐ E/F ____ <br> ⬛ G    **2.336** |
| 2.34 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Swiss Re/Westport Insurance Company** | ☐ D ____ <br> ☐ E/F ____ <br> ⬛ G    **2.267** |
| 2.35 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Rokstone/Guardian General Insurance** | ☐ D ____ <br> ☐ E/F ____ <br> ⬛ G    **2.236** |
| 2.36 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **QBE/Lloyds of London** | ☐ D ____ <br> ☐ E/F ____ <br> ⬛ G    **2.225** |
| 2.37 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Partner Re/PartnerRe Ireland Insurance** | ☐ D ____ <br> ☐ E/F ____ <br> ⬛ G    **2.203** |

| Debtor | **Limetree Bay Refining, LLC** | Case number *(if known)* | **21-32354** |

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

Column 1: **Codebtor**                                                                 Column 2: **Creditor**

| 2.38 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **NOA/Lloyds of London** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.193** |
| 2.39 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **LSM/Liberty Specialty Markets Agency td** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.171** |
| 2.40 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Lancashire Insurance Company UK, Ltd** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.169** |
| 2.41 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **IGI/Insurance General Insurance Co Ltd.** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.149** |
| 2.42 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Houston Specialty Insurance Company** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.141** |
| 2.43 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Helvetia Swiss Insurance Co** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.133** |
| 2.44 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Hannover Re/HDI Global Specialty SE** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.130** |
| 2.45 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Great Lakes** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.127** |

| Debtor | **Limetree Bay Refining, LLC** | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|

| 2.46 | Limetree Bay Refining Marketing, LLC | #1 Estate Hope Christiansted, VI 00820 | Fidelis Underwriting Ltd. | ☐ D _____ ☐ E/F _____ ■ G   **2.114** |
| 2.47 | Limetree Bay Refining Marketing, LLC | #1 Estate Hope Christiansted, VI 00820 | Elseco Limited | ☐ D _____ ☐ E/F _____ ■ G   **2.102** |
| 2.48 | Limetree Bay Refining Marketing, LLC | #1 Estate Hope Christiansted, VI 00820 | Convex Insurance UK Limited | ☐ D _____ ☐ E/F _____ ■ G   **2.76** |
| 2.49 | Limetree Bay Refining Marketing, LLC | #1 Estate Hope Christiansted, VI 00820 | Guardian General Insurance Limited | ☐ D _____ ☐ E/F _____ ■ G   **2.128** |
| 2.50 | Limetree Bay Refining Marketing, LLC | #1 Estate Hope Christiansted, VI 00820 | Berkshire Hathaway | ☐ D _____ ☐ E/F _____ ■ G   **2.43** |
| 2.51 | Limetree Bay Refining Marketing, LLC | #1 Estate Hope Christiansted, VI 00820 | Atrium Underwriters Ltd | ☐ D _____ ☐ E/F _____ ■ G   **2.24** |
| 2.52 | Limetree Bay Refining Marketing, LLC | #1 Estate Hope Christiansted, VI 00820 | J. Aron & Company LLC | ☐ D _____ ☐ E/F _____ ■ G   **2.160** |
| 2.53 | Limetree Bay Refining Marketing, LLC | #1 Estate Hope Christiansted, VI 00820 | BP Products North America Inc. | ☐ D _____ ☐ E/F _____ ■ G   **2.52** |

| Debtor | **Limetree Bay Refining, LLC** | Case number *(if known)* | **21-32354** |
|---|---|---|---|

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| 2.54 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope** **Christiansted, VI 00820** | **Chaucer/Apollo** | ☐ D _____ ☐ E/F _____ ■ G   **2.64** |
| 2.55 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **J. Aron & Company LLC** | ☐ D _____ ☐ E/F _____ ■ G   **2.158** |
| 2.56 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope** **Christiansted, VI 00820** | **J. Aron & Company LLC** | ☐ D _____ ☐ E/F _____ ■ G   **2.159** |
| 2.57 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope** **Christiansted, VI 00820** | **Arcadia/Ark/Helix** | ☐ D _____ ☐ E/F _____ ■ G   **2.20** |
| 2.58 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope** **Christiansted, VI 00820** | **J. Aron & Company LLC** | ☐ D _____ ☐ E/F _____ ■ G   **2.160** |
| 2.59 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope** **Christiansted, VI 00820** | **Chaucer/Apollo** | ☐ D _____ ☐ E/F _____ ■ G   **2.64** |
| 2.60 | **Limetree Bay Services, LLC** | **11100 Brittmoore Park Drive** **Houston, TX 77041** | **Arcadia/Ark/Helix** | ☐ D _____ ☐ E/F _____ ■ G   **2.20** |
| 2.61 | **Limetree Bay Services, LLC** | **11100 Brittmoore Park Drive** **Houston, TX 77041** | **Chaucer/Apollo** | ☐ D _____ ☐ E/F _____ ■ G   **2.64** |

Debtor   **Limetree Bay Refining, LLC**                    Case number *(if known)*   **21-32354**

█   **Additional Page to List More Codebtors**

**Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.**

*Column 1:* **Codebtor**                                                   *Column 2:* **Creditor**

| | | | |
|---|---|---|---|
| 2.62 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **Bayteck International, Inc.** |

☐ D _____
☐ E/F _____
■ G ___2.39___

| | | | |
|---|---|---|---|
| 2.63 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **AIG Insurance Company - Puerto Rico** |

☐ D _____
☐ E/F _____
■ G ___2.8___

| | | | |
|---|---|---|---|
| 2.64 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **Arcadia/Ark/Helix** |

☐ D _____
☐ E/F _____
■ G ___2.20___

| | | | |
|---|---|---|---|
| 2.65 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **WRB/Guardian General Insurance** |

☐ D _____
☐ E/F _____
■ G ___2.336___

| | | | |
|---|---|---|---|
| 2.66 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **Swiss Re/Westport Insurance Company** |

☐ D _____
☐ E/F _____
■ G ___2.267___

| | | | |
|---|---|---|---|
| 2.67 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **Rokstone/Guardian General Insurance** |

☐ D _____
☐ E/F _____
■ G ___2.236___

| | | | |
|---|---|---|---|
| 2.68 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **QBE/Lloyds of London** |

☐ D _____
☐ E/F _____
■ G ___2.225___

| | | | |
|---|---|---|---|
| 2.69 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **Partner Re/PartnerRe Ireland Insurance** |

☐ D _____
☐ E/F _____
■ G ___2.203___

Debtor __Limetree Bay Refining, LLC_____  Case number *(if known)* __21-32354__

■ **Additional Page to List More Codebtors**

**Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.**

*Column 1:* **Codebtor**  |  *Column 2:* **Creditor**

| 2.70 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | NOA/Lloyds of London | ☐ D _____ ☐ E/F _____ ■ G __2.193__ |
|------|------|------|------|------|
| 2.71 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | LSM/Liberty Specialty Markets Agency td | ☐ D _____ ☐ E/F _____ ■ G __2.171__ |
| 2.72 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | Lancashire Insurance Company UK, Ltd | ☐ D _____ ☐ E/F _____ ■ G __2.169__ |
| 2.73 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | IGI/Insurance General Insurance Co Ltd. | ☐ D _____ ☐ E/F _____ ■ G __2.149__ |
| 2.74 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | Houston Specialty Insurance Company | ☐ D _____ ☐ E/F _____ ■ G __2.141__ |
| 2.75 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | Helvetia Swiss Insurance Co | ☐ D _____ ☐ E/F _____ ■ G __2.133__ |
| 2.76 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | Hannover Re/HDI Global Specialty SE | ☐ D _____ ☐ E/F _____ ■ G __2.130__ |
| 2.77 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | Great Lakes | ☐ D _____ ☐ E/F _____ ■ G __2.127__ |

| Debtor | **Limetree Bay Refining, LLC** | | Case number *(if known)* | **21-32354** |

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

*Column 1:* **Codebtor** | *Column 2:* **Creditor**

| | Codebtor | | Creditor | |
|---|---|---|---|---|
| 2.78 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Fidelis Underwriting Ltd.** | ☐ D _____ ☐ E/F _____ ■ G __2.114__ |
| 2.79 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Elseco Limited** | ☐ D _____ ☐ E/F _____ ■ G __2.102__ |
| 2.80 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Convex Insurance UK Limited** | ☐ D _____ ☐ E/F _____ ■ G __2.76__ |
| 2.81 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Guardian General Insurance Limited** | ☐ D _____ ☐ E/F _____ ■ G __2.128__ |
| 2.82 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Berkshire Hathaway** | ☐ D _____ ☐ E/F _____ ■ G __2.43__ |
| 2.83 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Atrium Underwriters Ltd** | ☐ D _____ ☐ E/F _____ ■ G __2.24__ |
| 2.84 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Whitaker IT, LLC** | ☐ D _____ ☐ E/F _____ ■ G __2.333__ |
| 2.85 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Austin Fire Systems, LLC** | ☐ D _____ ☐ E/F _____ ■ G __2.26__ |

| Debtor | Limetree Bay Refining, LLC | | Case number *(if known)* | 21-32354 |

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| | Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|---|
| 2.86 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | Bayteck International, Inc. | ☐ D _____ ☐ E/F _____ ■ G __2.40__ |
| 2.87 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | Christiansted Equipment, Ltd. | ☐ D _____ ☐ E/F _____ ■ G __2.66__ |
| 2.88 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | F&M Mafco, Inc. | ☐ D _____ ☐ E/F _____ ■ G __2.112__ |
| 2.89 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | Oliver Exterminating of the V.I., Inc. | ☐ D _____ ☐ E/F _____ ■ G __2.197__ |
| 2.90 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | VWNA Caribbean, LLC | ☐ D _____ ☐ E/F _____ ■ G __2.329__ |
| 2.91 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | Barr Engineering Co. | ☐ D _____ ☐ E/F _____ ■ G __2.38__ |
| 2.92 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | National Parts | ☐ D _____ ☐ E/F _____ ■ G __2.191__ |
| 2.93 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | Becht Engineering Co., Inc | ☐ D _____ ☐ E/F _____ ■ G __2.41__ |

| Debtor | **Limetree Bay Refining, LLC** | | Case number *(if known)* | **21-32354** |

---

■ **Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| 2.94 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **Hargrove & Associates LLC** | ☐ D _____ ☐ E/F _____ ■ G  **2.131** |
| 2.95 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **TISI VI, LLC** | ☐ D _____ ☐ E/F _____ ■ G  **2.274** |
| 2.96 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **Paxton International** | ☐ D _____ ☐ E/F _____ ■ G  **2.205** |
| 2.97 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **BrandSafway Solutions USVI LLC** | ☐ D _____ ☐ E/F _____ ■ G  **2.53** |
| 2.98 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **Black Diamond Automation, LLC** | ☐ D _____ ☐ E/F _____ ■ G  **2.46** |
| 2.99 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **Virgin Islands Paving, Inc.** | ☐ D _____ ☐ E/F _____ ■ G  **2.320** |
| 2.100 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **William R. Nash V.I. Inc.** | ☐ D _____ ☐ E/F _____ ■ G  **2.335** |
| 2.101 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **Wunderlich-Malec Engineering, Inc.** | ☐ D _____ ☐ E/F _____ ■ G  **2.337** |

Debtor   **Limetree Bay Refining, LLC**                                      Case number *(if known)*   **21-32354**

▇   **Additional Page to List More Codebtors**

| | Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page. | |
|---|---|---|
| | Column 1: **Codebtor** | Column 2: **Creditor** |

| 2.10 2 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Pillar Corp Tsc Blower Corp** | ☐ D _____ ☐ E/F _____ ■ G __2.210__ |
|---|---|---|---|---|
| 2.10 3 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Stewart & Stevenson FDDA LLC** | ☐ D _____ ☐ E/F _____ ■ G __2.261__ |
| 2.10 4 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **York Career Development, Inc.** | ☐ D _____ ☐ E/F _____ ■ G __2.340__ |
| 2.10 5 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Rooftops Silicone Distributors, Inc.** | ☐ D _____ ☐ E/F _____ ■ G __2.237__ |
| 2.10 6 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Mostardi Platt** | ☐ D _____ ☐ E/F _____ ■ G __2.186__ |
| 2.10 7 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **RTP Environmental Associates** | ☐ D _____ ☐ E/F _____ ■ G __2.239__ |
| 2.10 8 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Pinnacle Services LLC** | ☐ D _____ ☐ E/F _____ ■ G __2.212__ |
| 2.10 9 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **AC Systems Integration, Inc.** | ☐ D _____ ☐ E/F _____ ■ G __2.2__ |

Debtor  **Limetree Bay Refining, LLC**                    Case number *(if known)*  **21-32354**

---

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

*Column 1:* **Codebtor**                                         *Column 2:* **Creditor**

| 2.110 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Acuren Inspection, Inc.** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G __2.4__ |
|---|---|---|---|---|
| 2.111 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **BWC Technologies, Inc.** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G __2.55__ |
| 2.112 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Demaco Corporation** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G __2.83__ |
| 2.113 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **DSI Group, LLC** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G __2.95__ |
| 2.114 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **DSI, LLC** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G __2.96__ |
| 2.115 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Flexicrew Technical, LLC** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G __2.115__ |
| 2.116 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Hazard Management Group of Texas LLC** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G __2.132__ |
| 2.117 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **HMT LLC** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G __2.134__ |

| Debtor | **Limetree Bay Refining, LLC** | Case number *(if known)* | **21-32354** |

---

■ **Additional Page to List More Codebtors**

**Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.**

| *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|
| 2.118 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **IBB Petroleum Services Inc.** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.145** |
| 2.119 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **ISS Marine Services LLC** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.156** |
| 2.120 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **J. Benton Construction, LLC** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.161** |
| 2.121 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **North Atlantic Power Products** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.194** |
| 2.122 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Priority Roro Services Inc.** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.220** |
| 2.123 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Standard Crane and Hoist, LLC** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.258** |
| 2.124 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Tri-State Bird Rescue & Research, Inc.** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.277** |
| 2.125 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **V.I. Recycling Company** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.314** |

| Debtor | **Limetree Bay Refining, LLC** | Case number *(if known)* **21-32354** |
|---|---|---|

---

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

Column 1: **Codebtor** — Column 2: **Creditor**

| | Codebtor | | Creditor | D | E/F | G |
|---|---|---|---|---|---|---|
| 2.126 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | VisiumKMS Inc. | ☐ D _____ | ☐ E/F _____ | ■ G **2.325** |
| 2.127 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | WillFire HC, LLC | ☐ D _____ | ☐ E/F _____ | ■ G **2.334** |
| 2.128 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | Dynamic Innovative Corporation | ☐ D _____ | ☐ E/F _____ | ■ G **2.98** |
| 2.129 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | Rotating Machinery Services, Inc. | ☐ D _____ | ☐ E/F _____ | ■ G **2.238** |
| 2.130 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | Universal Plant Services, (VI), LLC | ☐ D _____ | ☐ E/F _____ | ■ G **2.283** |
| 2.131 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | VisiumKMS Inc. | ☐ D _____ | ☐ E/F _____ | ■ G **2.324** |
| 2.132 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | Chaucer/Apollo | ☐ D _____ | ☐ E/F _____ | ■ G **2.64** |
| 2.133 | Limetree Bay Ventures, LLC | | AIG Insurance Company - Puerto Rico | ☐ D _____ | ☐ E/F _____ | ■ G **2.8** |

---

| Debtor | Limetree Bay Refining, LLC | | Case number *(if known)* | 21-32354 |

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|
| 2.13 4 | Limetree Bay Ventures, LLC | Arcadia/Ark/Helix | ☐ D _____ ☐ E/F _____ ■ G    **2.20** |
| 2.13 5 | Limetree Bay Ventures, LLC | WRB/Guardian General Insurance | ☐ D _____ ☐ E/F _____ ■ G    **2.336** |
| 2.13 6 | Limetree Bay Ventures, LLC | Swiss Re/Westport Insurance Company | ☐ D _____ ☐ E/F _____ ■ G    **2.267** |
| 2.13 7 | Limetree Bay Ventures, LLC | Rokstone/Guardian General Insurance | ☐ D _____ ☐ E/F _____ ■ G    **2.236** |
| 2.13 8 | Limetree Bay Ventures, LLC | QBE/Lloyds of London | ☐ D _____ ☐ E/F _____ ■ G    **2.225** |
| 2.13 9 | Limetree Bay Ventures, LLC | Partner Re/PartnerRe Ireland Insurance | ☐ D _____ ☐ E/F _____ ■ G    **2.203** |
| 2.14 0 | Limetree Bay Ventures, LLC | NOA/Lloyds of London | ☐ D _____ ☐ E/F _____ ■ G    **2.193** |
| 2.14 1 | Limetree Bay Ventures, LLC | LSM/Liberty Specialty Markets Agency td | ☐ D _____ ☐ E/F _____ ■ G    **2.171** |

Debtor   **Limetree Bay Refining, LLC**                             Case number *(if known)*   **21-32354**

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | Column 2: **Creditor** | |
|---|---|---|
| 2.14 2 **Limetree Bay Ventures, LLC** | **Lancashire Insurance Company UK, Ltd** | ☐ D _____ ☐ E/F _____ ■ G __2.169__ |
| 2.14 3 **Limetree Bay Ventures, LLC** | **IGI/Insurance General Insurance Co Ltd.** | ☐ D _____ ☐ E/F _____ ■ G __2.149__ |
| 2.14 4 **Limetree Bay Ventures, LLC** | **Houston Specialty Insurance Company** | ☐ D _____ ☐ E/F _____ ■ G __2.141__ |
| 2.14 5 **Limetree Bay Ventures, LLC** | **Helvetia Swiss Insurance Co** | ☐ D _____ ☐ E/F _____ ■ G __2.133__ |
| 2.14 6 **Limetree Bay Ventures, LLC** | **Hannover Re/HDI Global Specialty SE** | ☐ D _____ ☐ E/F _____ ■ G __2.130__ |
| 2.14 7 **Limetree Bay Ventures, LLC** | **Great Lakes** | ☐ D _____ ☐ E/F _____ ■ G __2.127__ |
| 2.14 8 **Limetree Bay Ventures, LLC** | **Fidelis Underwriting Ltd.** | ☐ D _____ ☐ E/F _____ ■ G __2.114__ |
| 2.14 9 **Limetree Bay Ventures, LLC** | **Elseco Limited** | ☐ D _____ ☐ E/F _____ ■ G __2.102__ |

| Debtor | **Limetree Bay Refining, LLC** | Case number *(if known)* | **21-32354** |

| ▇ | **Additional Page to List More Codebtors** |

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | Column 2: **Creditor** | |
|---|---|---|
| 2.15 0 | **Limetree Bay Ventures, LLC** | **Convex Insurance UK Limited** | ☐ D _____<br>☐ E/F _____<br>■ G   **2.76** |
| 2.15 1 | **Limetree Bay Ventures, LLC** | **Guardian General Insurance Limited** | ☐ D _____<br>☐ E/F _____<br>■ G   **2.128** |
| 2.15 2 | **Limetree Bay Ventures, LLC** | **Berkshire Hathaway** | ☐ D _____<br>☐ E/F _____<br>■ G   **2.43** |
| 2.15 3 | **Limetree Bay Ventures, LLC** | **Muse, Stencil & Co** | ☐ D _____<br>☐ E/F _____<br>■ G   **2.187** |
| 2.15 4 | **Limetree Bay Ventures, LLC** | **Atrium Underwriters Ltd** | ☐ D _____<br>☐ E/F _____<br>■ G   **2.24** |
| 2.15 5 | **Limetree Bay Ventures, LLC** | **Chaucer/Apollo** | ☐ D _____<br>☐ E/F _____<br>■ G   **2.64** |

**Fill in this information to identify the case:**

Debtor name    **Limetree Bay Refining, LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF TEXAS

Case number (if known)    21-32354

☐ Check if this is an amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors   12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☑ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☑ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☑ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☑ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☑ *Schedule H: Codebtors* (Official Form 206H)
- ☑ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule*
- ☐ *Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☐ Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge based upon the information available to me at this time.
.

Executed on   **September 7, 2021**     X **/s/ Mark Shapiro**
                                             Signature of individual signing on behalf of debtor

                                            **Mark Shapiro**
                                            Printed name

                                            **Chief Restructuring Officer**
                                            Position or relationship to debtor

**Fill in this information to identify the case:**

Debtor name  **Limetree Bay Refining, LLC**

United States Bankruptcy Court for the:  SOUTHERN DISTRICT OF TEXAS

Case number (if known)  **21-32354**

☐ Check if this is an amended filing

Official Form 207

# Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

**04/19**

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

**Part 1:  Income**

1. **Gross revenue from business**

   ■ None.

   | Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue Check all that apply | Gross revenue (before deductions and exclusions) |
   |---|---|---|

2. **Non-business revenue**
   Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

   ■ None.

   | | Description of sources of revenue | Gross revenue from each source (before deductions and exclusions) |
   |---|---|---|

**Part 2:  List Certain Transfers Made Before Filing for Bankruptcy**

3. **Certain payments or transfers to creditors within 90 days before filing this case**
   List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

   ☐ None.

   | | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer Check all that apply |
   |---|---|---|---|---|
   | 3.1. | **A&G Energy LLC**<br>**541 W. 22nd Street**<br>**Houston, TX 77078** | 5/21/2021 | $11,327.41 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
   | 3.2. | **Abatix Corp**<br>**PO Box 6712020**<br>**Dallas, TX 75267-1202** | 4/30/2021<br>5/7/20201<br>5/14/2021<br>5/21/2021<br>6/4/2021 | $19,699.35 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

Debtor   **Limetree Bay Refining, LLC**                                Case number *(if known)*  **21-32354**

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer *Check all that apply* |
|---|---|---|---|
| 3.3. **Access Sciences Corporation** <br> **1900 West Loop South** <br> **Suite 250** <br> **Houston, TX 77027** | **4/23/2021** <br> **5/14/2021** <br> **6/4/2021** <br> **7/1/2021** | **$110,330.00** | ☐ Secured debt <br> ☐ Unsecured loan repayments <br> ■ Suppliers or vendors <br> ☐ Services <br> ☐ Other___ |
| 3.4. **Acconda, LP** <br> **d/b/a Aqua Drill Internat** <br> **1300 FM 646 West** <br> **Dickinson, TX 77539** | **4/16/2021** <br> **4/23/2021** | **$65,560.63** | ☐ Secured debt <br> ☐ Unsecured loan repayments <br> ■ Suppliers or vendors <br> ☐ Services <br> ☐ Other___ |
| 3.5. **Adrian Kubran** <br> **12522 Gable Mills Dr** <br> **Cypress, TX 77433** | **4/23/2021** <br> **5/7/2021** <br> **6/18/2021** <br> **6/25/2021** <br> **7/1/2021** | **$133,400.00** | ☐ Secured debt <br> ☐ Unsecured loan repayments <br> ☐ Suppliers or vendors <br> ■ Services <br> ☐ Other___ |
| 3.6. **Advanced Overhead Crane Services, Inc.** <br> **22531 FM 2100 Rd** <br> **Crosy, TX 77532** | **4/30/2021** <br> **5/7/2021** <br> **5/14/2021** <br> **5/21/2021** <br> **5/28/2021** | **$351,831.55** | ☐ Secured debt <br> ☐ Unsecured loan repayments <br> ☐ Suppliers or vendors <br> ■ Services <br> ☐ Other___ |
| 3.7. **AFCO Credit Insurance** <br> **4501 College Blvd** <br> **Suite 320** <br> **Leawood, KS 66211** | **4/29/2021** <br> **5/27/2021** <br> **6/17/2021** | **$4,083,978.86** | ☐ Secured debt <br> ☐ Unsecured loan repayments <br> ☐ Suppliers or vendors <br> ☐ Services <br> ■ Other__**Insurance**__ |
| 3.8. **Air Centers of Florida, Inc.** <br> **9311 Solar Drive** <br> **Tampa, FL 33619** | **4/20/2021** <br> **5/14/2021** | **$78,643.53** | ☐ Secured debt <br> ☐ Unsecured loan repayments <br> ☐ Suppliers or vendors <br> ■ Services <br> ☐ Other___ |
| 3.9. **Air Liquide America L.P.** <br> **PO Box 532609** <br> **Atlanta, GA 30353-2609** | **4/30/2021** <br> **6/11/2021** | **$15,469.86** | ☐ Secured debt <br> ☐ Unsecured loan repayments <br> ■ Suppliers or vendors <br> ☐ Services <br> ☐ Other___ |
| 3.10. **Akili, Inc.** <br> **901 W Walnut HIll Lane** <br> **Suite 130-B** <br> **Irving, TX 75038-1001** | **5/14/2021** | **$19,812.00** | ☐ Secured debt <br> ☐ Unsecured loan repayments <br> ☐ Suppliers or vendors <br> ■ Services <br> ☐ Other___ |

Debtor   **Limetree Bay Refining, LLC**                                    Case number *(if known)*   **21-32354**

| | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|---|
| 3.11. | **Alimak Hek Inc.**<br>**12552 Old Galveston Rd**<br>**Webster, TX 77598** | **5/14/2021**<br>**6/4/2021** | **$112,280.05** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.12. | **Alston & Bird LLC**<br>**1201 West Peachtree Street**<br>**Atlanta, GA 30309** | **4/23/2021** | **$7,781.40** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.13. | **AltairStrickland V.I., LLC**<br>**1605 S. Battleground Road**<br>**La Porte, TX 77571** | **4/23/2021** | **$357,413.36** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.14. | **AmSpec LLC**<br>**1249 South River Road**<br>**Suite 204**<br>**Cranbury, NJ 08512** | **5/7/2021**<br>**5/14/2021** | **$7,597.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.15. | **Analytic Stress Relieving, Inc.**<br>**3118 W. Pinhook Road**<br>**Lafayette, LA 70505** | **4/30/2021**<br>**6/4/2021** | **$274,889.57** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.16. | **Antilles Gas Corporation**<br>**PO Box 5435**<br>**Christiansted, St. Croix, VI 00823** | **4/16/2021**<br>**4/23/2021**<br>**5/14/2021**<br>**6/4/2021**<br>**7/1/2021**<br>**5/21/2021**<br>**5/28/2021** | **$47,540.08** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.17. | **Arclight Energy Partners Fund VI, LP**<br>**200 Clarendon Street**<br>**John Hancock Tower**<br>**55th Floor**<br>**Boston, MA 02116-5021** | **4/28/2021**<br>**7/2/2021** | **$562,500.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>■ Other__ **LC Fees** |
| 3.18. | **Arena Management Co., LLC**<br>**405 Lexington Avenue**<br>**59th Floor**<br>**New York, NY 10174** | **7/2/2021** | **$75,000.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |

| Debtor | **Limetree Bay Refining, LLC** | Case number *(if known)* | **21-32354** |
| --- | --- | --- | --- |

| | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer *Check all that apply* |
| --- | --- | --- | --- | --- |
| 3.19. | **Aries Worldwide Logistics**<br>**1501 E. Richley Road**<br>**Houston, TX 77073** | **4/30/2021**<br>**5/14/2021**<br>**6/4/2021** | **$103,286.78** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.20. | **Arvos Ljungstrom LLC**<br>**3020 Truax Road**<br>**Wellsville, NY 14895** | **4/23/2021** | **$28,305.60** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.21. | **Atlantic Equipment Resources**<br>**70 Kinderkamack Road**<br>**Emerson, NJ 07630** | **5/7/2021**<br>**6/4/2021** | **$169,141.37** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.22. | **Austin Fire Systems, LLC**<br>**PO Box 411**<br>**Prairieville, LA 70769** | **5/14/2021** | **$8,750.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.23. | **Aveva Software, LLC**<br>**26561 Rancho Parkway South**<br>**Lake Forest, CA 92630-8301** | **4/16/2021**<br>**4/23/2021** | **$261,653.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.24. | **Axens NA**<br>**650 College Road East**<br>**Princeton, NJ 08540** | **4/16/2021** | **$369,563.19** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.25. | **Aztron Chemical Services, Inc.**<br>**4530 New West Drive**<br>**Pasadena, TX 77507** | **5/14/2021** | **$38,181.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.26. | **B. Riley Advisory Services**<br>**4400 Post Oak Parkway**<br>**Suite 1400**<br>**Houston, TX 77027** | **6/18/2021**<br>**7/7/2021** | **$400,000.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |

| Debtor | Limetree Bay Refining, LLC | | Case number *(if known)*  21-32354 |
|---|---|---|---|

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|
| 3.27. **Bachmann Industries, Inc.**<br>**416 Lewiston Junction Road**<br>**Auburn, ME 04211** | 6/4/2021 | $20,400.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.28. **Baker & Hostetler LLP**<br>**200 S. Orange Avenue**<br>**Suite 2300**<br>**Orlando, FL 32801** | 6/18/2021<br>7/2/2021<br>7/8/2021<br>7/12/2021 | $1,650,000.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.29. **Baker Hughes Oilfield Operations, Inc**<br>**PO Box 301057**<br>**Dallas, TX 75303-1057** | 4/16/2021<br>4/23/2021<br>4/30/2021<br>5/7/2021<br>5/21/2021<br>6/4/2021 | $1,060,460.41 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.30. **Ballard Hospitality, LLC**<br>**180 New Camellia Blvd**<br>**Suite 100**<br>**Covington, LA 70433** | 4/16/2021<br>5/28/2021<br>6/4/2021<br>7/1/2021 | $1,213,417.38 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.31. **Ballard Hospitality-VI, LLC**<br>**180 New Camelia Blvd**<br>**Suite 100**<br>**Covington, LA 70433** | 4/22/2021<br>4/29/2021<br>5/7/2021<br>5/21/2021<br>7/1/2021 | $1,446,558.99 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.32. **Barr Engineering Co.**<br>**4300 Market Pointe Dr.**<br>**Suite 200**<br>**Minneapolis, MN 55435** | 4/23/2021<br>5/7/2021<br>5/28/2021 | $59,245.07 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.33. **Becht Engineering Co Inc.**<br>**22 Church Street**<br>**Liberty Corner, NJ 07938** | 4/16/2021<br>4/23/2021<br>4/30/2021<br>5/7/2021<br>5/14/2021<br>5/21/2021<br>5/28/2021<br>6/11/2021 | $939,939.36 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.34. **BGS, L.L.C.**<br>**PO Box 1329**<br>**Gonzales, LA 70707** | 4/16/2021 | $13,557.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

Debtor    **Limetree Bay Refining, LLC**                              Case number *(if known)*   **21-32354**

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer *Check all that apply* |
|---|---|---|---|
| 3.35. **Blue Sky Real Estate, Inc** <br> **1011 North Street** <br> **Christiansted, VI 00820** | 4/16/2021 | $14,246.27 | ☐ Secured debt <br> ☐ Unsecured loan repayments <br> ☐ Suppliers or vendors <br> ☑ Services <br> ☐ Other___ |
| 3.36. **Bobby Erwin** <br> **4 River Lane** <br> **Lake Charles, LA 70605** | 5/7/2021 | $52,275.00 | ☐ Secured debt <br> ☐ Unsecured loan repayments <br> ☐ Suppliers or vendors <br> ☑ Services <br> ☐ Other___ |
| 3.37. **Boulden Company Inc.** <br> **1013 Conshohocken Road** <br> **Conshohocken, PA 19428** | 4/16/2021 <br> 4/23/2021 <br> 4/30/2021 <br> 5/7/2021 | $343,514.49 | ☐ Secured debt <br> ☐ Unsecured loan repayments <br> ☑ Suppliers or vendors <br> ☐ Services <br> ☐ Other___ |
| 3.38. **BP Oil Supply** <br> **501 Westlake Park Blvd** <br> **Houston, TX 77079** | 7/8/2021 | $367,687.89 | ☐ Secured debt <br> ☐ Unsecured loan repayments <br> ☑ Suppliers or vendors <br> ☐ Services <br> ☐ Other___ |
| 3.39. **Brenntag Latin America Inc.** <br> **5300 Memorial Drive** <br> **Houston, TX 77007** | 5/21/2021 <br> 5/28/2021 | $43,551.48 | ☐ Secured debt <br> ☐ Unsecured loan repayments <br> ☑ Suppliers or vendors <br> ☐ Services <br> ☐ Other___ |
| 3.40. **BS&B Safety Systems, LLC** <br> **7455 E 46th Street** <br> **Tulsa, OK 74145** | 4/16/2021 | $15,479.48 | ☐ Secured debt <br> ☐ Unsecured loan repayments <br> ☑ Suppliers or vendors <br> ☐ Services <br> ☐ Other___ |
| 3.41. **Bunkers of St. Croix Inc.** <br> **27 Castle Coakley** <br> **Christiansted, VI 00820-5691** | 4/23/2021 <br> 4/30/2021 <br> 6/11/2021 <br> 7/1/2021 | $8,910.21 | ☐ Secured debt <br> ☐ Unsecured loan repayments <br> ☑ Suppliers or vendors <br> ☐ Services <br> ☐ Other___ |
| 3.42. **C.K. Inspection Co. Inc** <br> **PO Box 335** <br> **Owasso, OK 74055** | 4/23/2021 | $10,734.87 | ☐ Secured debt <br> ☐ Unsecured loan repayments <br> ☑ Suppliers or vendors <br> ☐ Services <br> ☐ Other___ |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                              Best Case Bankruptcy

Debtor   **Limetree Bay Refining, LLC**                                      Case number *(if known)*   **21-32354**

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|
| 3.43. **Calabash Real Estate LLC**<br>4126 La Grande Princesse<br>Christiansted, VI 00820 | 4/23/2021<br>5/7/2021<br>6/11/2021<br>7/1/2021 | $17,060.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☑ Services<br>☐ Other___ |
| 3.44. **Cameron Solution Inc a Schlumberger**<br>PO Box 731413<br>Dallas, TX 75373-1413 | 4/23/2021 | $96,294.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.45. **Carib LPG Trading Ltd.**<br>One Welches<br>St. James BB 22025<br>BARBADOS | 4/13/2021<br>4/15/2021<br>4/19/2021<br>4/21/2021<br>4/23/2021<br>4/26/2021<br>4/28/2021<br>4/30/2021<br>5/6/2021<br>5/7/2021<br>5/10/2021<br>5/13/2021<br>5/25/2021<br>5/28/2021 | $16,840,301.44 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.46. **Caribbean Printing & Marketing**<br>5012 Starboard Street<br>Gallows Bay, St. Croix, VI 00820-4526 | 4/23/2021<br>5/21/2021<br>6/11/2021<br>7/1/2021 | $24,475.22 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.47. **Catalyst and Chemical Containers, L**<br>4935 Timber Creek Dr<br>Houston, TX 77017 | 4/30/2021<br>5/14/2021 | $9,450.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.48. **Centerline Car Rentals, Inc.**<br>PO Box 1529<br>Kingshill, St. Croix, VI 00851-1529 | 4/30/2021<br>5/7/2021<br>5/14/2021<br>5/21/2021<br>5/28/2021<br>6/4/2021<br>6/11/2021 | $85,703.21 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.49. **CFL Consulting LLC**<br>603 Happy Trail<br>San Antonio, TX 78231 | 5/21/2021<br>6/4/2021 | $103,043.08 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☑ Services<br>☐ Other___ |

Debtor   **Limetree Bay Refining, LLC**                                     Case number *(if known)*   **21-32354**

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|
| 3.50. | **Chalmers & Kubeck, Inc.**<br>PO Box 2447<br>Aston, PA 19014-0447 | 4/16/2021<br>4/23/2021<br>4/30/2021<br>5/7/2021<br>5/28/2021<br>6/4/2021 | $559,663.19 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.51. | **Champion Petroleum, Inc.**<br>LOT #26 Julio N Matos Ind Park<br>Carolina, PR 00984 | 4/16/2021 | $52,284.31 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.52. | **Charter Brokerage LLC**<br>383 Main Ave<br>Suite 400<br>Norwalk, CT 06851 | 4/30/2021<br>6/11/2021 | $16,267.16 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.53. | **Christa's Art Gallery**<br>PO Box 223116<br>Christiansted, St. Croix, VI 00820 | 4/23/2021 | $10,995.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>■ Other  **Media** |
| 3.54. | **Christiansted Equipment Ltd.**<br>PO Box 368<br>Christiansted, St Croix, VI 00820 | 4/16/2021<br>4/22/2021<br>4/29/2021<br>5/7/2021<br>5/14/2021<br>5/28/2021<br>7/1/2021 | $1,273,195.97 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.55. | **Christopher Colman**<br>118 Pitt Street<br>Mt. Pleasant, SC 29464 | 5/21/2021<br>5/28/2021<br>6/18/2021<br>7/1/2021 | $40,122.50 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.56. | **Classic Controls, Inc.**<br>5095 S. Lakeland Drive<br>Lakeland, FL 33813 | 4/16/2021<br>4/23/2021<br>4/30/2021<br>5/28/2021 | $195,905.81 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.57. | **CMA CGM Puerto Rico LLC**<br>Ste. 411<br>771 MAI Center Building<br>Street 1<br>San Juan, PR 00920 | 4/30/2021 | $27,837.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

| Debtor | **Limetree Bay Refining, LLC** | | Case number *(if known)* **21-32354** |
|---|---|---|---|

| | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|---|
| 3.58. | **Coastal Process LLC**<br>28750 James Chapel Road North<br>Holden, LA 70744 | 4/16/2021 | $20,021.70 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.59. | **Comdata Network, Inc.**<br>PO Box 100647<br>Atlanta, GA 30384-0647 | 5/7/2021<br>6/2/2021 | $298,151.94 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.60. | **Complan USA LLC**<br>16417 Squyres Road<br>Spring, TX 77379 | 4/16/2021<br>4/22/2021<br>4/29/2021<br>6/4/2021 | $893,802.91 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.61. | **Compressor Controls Corporation**<br>4745 121st Street<br>Des Moines, IA 50323 | 4/30/2021<br>5/28/2021 | $213,886.36 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.62. | **Computer Solutions, Inc**<br>d/b/a Costrac<br>3167 Energy Ln.<br>Casper, WY 82604 | 4/16/2021<br>4/23/2021<br>5/21/2021 | $105,560.53 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other__ |
| 3.63. | **Concentric, LLC**<br>6311 Antoine<br>Houston, TX 77091 | 5/7/2021 | $45,260.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.64. | **Concur Technologies, Inc.**<br>62157 Collections Center Drive<br>Chicago, IL 60693 | 5/7/2021<br>5/14/2021<br>5/21/2021 | $23,456.38 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.65. | **Consultants in Data Processing, Inc**<br>PO Box 472046<br>Charlotte, NC 28247 | 5/14/2021<br>7/1/2021 | $36,136.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |

Debtor    **Limetree Bay Refining, LLC**       Case number *(if known)*   **21-32354**

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|
| 3.66. **Control Associates Caribe**<br>**475 Street C**<br>**Guayabo, PR 00969-4272** | 4/16/2021<br>4/23/2021<br>4/30/2021<br>6/4/2021 | **$141,549.45** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.67. **Control System Technologies, LLC**<br>**PO Box 781686**<br>**Orlando, FL 32878** | 4/30/2021<br>5/28/2021<br>6/4/2021 | **$302,845.48** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.68. **Cormetech**<br>**5000 International Drive**<br>**Durham, NC 27712** | 4/23/2021 | **$17,522.44** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.69. **Crowley Liner Services**<br>**9487 Regency Square Blvd**<br>**Jacksonville, FL 32225** | 4/16/2021<br>4/23/2021<br>4/30/2021<br>5/14/2021<br>5/21/2021<br>5/24/2021<br>5/28/2021<br>6/4/2021<br>6/11/2021<br>6/25/2021<br>7/1/2021 | **$1,559,165.78** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.70. **Cruzan Environmental**<br>**PO Box 3018**<br>**St. Croix, VI 00851** | 5/21/2021<br>5/28/2021<br>6/4/2021<br>7/1/2021 | **$64,490.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.71. **Cust-O-Fab, LLC**<br>**8888 West 21st Street**<br>**Sand Springs, OK 74063** | 4/16/2021<br>4/23/2021 | **$407,865.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.72. **Deloitte & Touche LLP**<br>**PO Box 844708**<br>**Dallas, TX 75284-4708** | 4/16/2021 | **$156,824.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |

Debtor   **Limetree Bay Refining, LLC**                                  Case number *(if known)*   **21-32354**

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|
| 3.73. | **DHL Express - USA**<br>**16592 Collections Center Drive**<br>**Chicago, IL 60693** | **4/30/2021**<br>**5/14/2021**<br>**5/21/2021**<br>**5/28/2021**<br>**6/4/2021** | **$17,113.61** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other__ |
| 3.74. | **Diana Moore**<br>**311 Spring Lakes Haven**<br>**Spring, TX 77373** | **4/23/2021** | **$27,009.42** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other__ |
| 3.75. | **DNOW L.P.**<br>**PO Box 200822**<br>**Dallas, TX 75320-0822** | **4/16/2021**<br>**4/23/2021**<br>**4/30/2021**<br>**5/7/2021**<br>**5/14/2021**<br>**6/11/2021** | **$304,313.18** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.76. | **Dormakaba USA Inc**<br>**PO Box 896617**<br>**Charlotte, NC 28289-6617** | **4/16/2021**<br>**5/28/2021** | **$44,074.47** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.77. | **Dresser-Rand Company**<br>**100 E Chemung St**<br>**Painted Post, NY 14870** | **4/16/2021**<br>**4/23/2021** | **$231,474.14** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.78. | **Dubois Chemicals Inc.**<br>**3630 East Kemper Road**<br>**Cincinnati, OH 45241** | **6/11/2021** | **$8,662.64** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.79. | **Duke Earl Given**<br>**2839 W Kennewick Ave**<br>**#186**<br>**Kennewick, WA 99336** | **4/16/2021**<br>**5/21/2021**<br>**6/15/2021** | **$105,450.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other__ |
| 3.80. | **Dynamic Innovative Corporation**<br>**306 Williams Delight**<br>**Frederiksted, VI 00840** | **4/16/2021**<br>**4/23/2021**<br>**4/30/2021**<br>**5/21/2021**<br>**5/28/2021**<br>**6/4/2021**<br>**7/1/2021** | **$1,007,982.21** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |

Debtor   **Limetree Bay Refining, LLC**                                Case number *(if known)*   **21-32354**

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|
| 3.81. | **DYONYX, L.P.**<br>**13430 Northwest Freeway**<br>**Houston, TX 77040** | **4/23/2021**<br>**4/30/2021**<br>**5/7/2021**<br>**5/14/2021**<br>**5/28/2021**<br>**6/4/2021**<br>**6/25/2021**<br>**7/2/2021**<br>**7/12/2021** | **$1,119,990.98** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.82. | **Elite Turnaround Specialists, Ltd.**<br>**225 S 16th Street**<br>**La Porte, TX 77571** | **4/16/2021**<br>**4/22/2021**<br>**4/29/2021**<br>**5/14/2021**<br>**5/21/2021**<br>**5/28/2021**<br>**6/4/2021**<br>**6/11/2021** | **$6,476,227.22** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.83. | **Elliott Company**<br>**901 N. 4th Street**<br>**Jeannette, PA 15644** | **4/16/2021** | **$98,253.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.84. | **Embark Consulting LLC**<br>**2919 Commerce Street**<br>**Suite 400**<br>**Dallas, TX 75226** | **4/23/2021** | **$16,065.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.85. | **Energy Aspects Ltd..**<br>**Level 32**<br>**25 Canada Square**<br>**London E14 5LQ**<br>**UNITED KINGDOM** | **4/22/2021** | **$15,000.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.86. | **EnerMech Mechanical Services, Inc**<br>**14000 West Road**<br>**Houston, TX 77041** | **4/16/2021**<br>**4/30/2021** | **$85,558.78** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.87. | **Engineered Parts and Services, Inc.**<br>**PO Box 1899**<br>**Vega Alta, PR 00692-1899** | **5/7/2021** | **$245,939.38** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

Debtor    **Limetree Bay Refining, LLC**        Case number *(if known)*   **21-32354**

| | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|---|
| 3.88. | **Englobal U.S. Inc.**<br>225 Portwall St.<br>Houston, TX 77029 | 4/16/2021<br>4/23/2021<br>5/7/2021<br>6/4/2021 | $383,040.81 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.89. | **Environmental Systems Corporation**<br>10801 N. Mopac Expressway<br>Bldg. 1, Suite 200<br>Austin, TX 78759 | 5/14/2021<br>5/21/2021<br>5/28/2021 | $70,810.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.90. | **ERP Software Services LLC**<br>1309 Coffeen Avenue<br>Suite 1200<br>Sheridan, WY 82801 | 4/23/2021<br>5/14/2021<br>5/28/2021 | $208,880.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.91. | **Evoqua Water Technologies LLC**<br>28563 Network Place<br>Chicago, IL 60673-1285 | 5/3/2021<br>5/28/2021 | $277,113.34 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.92. | **Excel Construction & Maintenance VI**<br>8641 United Plaza Blvd<br>Baton Rouge, LA 70809 | 4/16/2021<br>4/22/2021<br>4/29/2021<br>5/28/2021<br>6/4/2021<br>6/11/2021<br>6/25/2021<br>7/1/2021<br>5/14/2021<br>5/21/2021 | $6,555,464.27 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.93. | **Federal Express (USVI)**<br>701 Waterford Way<br>Miami, FL 33126 | 4/23/2021<br>5/28/2021<br>6/11/2021 | $20,942.44 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.94. | **Fern Engineering, Inc.**<br>PO Box 957<br>Wareham, MA 02571 | 4/16/2021<br>4/23/2021<br>5/21/2021 | $74,562.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com       Best Case Bankruptcy

Debtor   **Limetree Bay Refining, LLC**                                      Case number *(if known)*   **21-32354**

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|
| 3.95. **Fleetwood Project Services, LLC**<br>**5 Kagle Ct**<br>**Chapin, SC 29036** | **4/16/2021**<br>**5/21/2021**<br>**7/1/2021** | **$113,535.28** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.96. **Flemings' Transport Co., Inc.**<br>**PO Box 4310**<br>**St. Croix, VI 00851** | **4/30/2021**<br>**5/7/2021**<br>**5/14/2021**<br>**5/21/2021**<br>**5/28/2021**<br>**6/4/2021** | **$35,591.86** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.97. **Flowserve US INC**<br>**4179 Collections Center Drive**<br>**Chcago, IL 60693** | **4/16/2021**<br>**4/23/2021**<br>**4/30/2021**<br>**5/7/2021**<br>**5/21/2021**<br>**5/28/2021**<br>**6/4/2021** | **$202,619.25** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.98. **FMMVI, LLC**<br>**11634 Darryl Drive**<br>**Baton Rouge, LA 70815** | **4/16/2021**<br>**4/23/2021**<br>**5/7/2021**<br>**7/1/2021** | **$506,030.98** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☑ Services<br>☐ Other__ |
| 3.99. **Forgan McIntosh**<br>**5414 61 Glen St.**<br>**Dover, MA 02030** | **6/4/2021** | **$7,250.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☑ Services<br>☐ Other__ |
| 3.100. **FR Consulting LLC**<br>**Calle Sol A-6**<br>**Puertas Del Sol**<br>**Fajardo, PR 00738** | **5/21/2021**<br>**6/18/2021** | **$114,870.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☑ Services<br>☐ Other__ |
| 3.101. **G4S Secure Integration**<br>**PO Box 74008035**<br>**Chicago, IL 60674-8035** | **4/23/2021** | **$12,897.39** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.102. **Gary D Morrow**<br>**15604 Hayes Street**<br>**Overland Park, KS 66221** | **5/28/2021**<br>**6/18/2021**<br>**6/25/2021**<br>**7/2/2021** | **$49,865.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☑ Services<br>☐ Other__ |

Debtor    **Limetree Bay Refining, LLC**       Case number *(if known)* **21-32354**

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|
| 3.10<br>3.   **Gas Turbine Parts & Services, Inc.**<br>**421 Route 146**<br>**Halfmoon, NY 12065** | 4/30/2021<br>5/21/2021<br>5/28/2021<br>6/4/2021 | $213,750.14 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.10<br>4.   **GE Infrastructure Sensing, LLC**<br>**1100 Technology Park Drive**<br>**Billerica, MA 01821-4111** | 4/16/2021 | $22,615.57 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.10<br>5.   **General Gases of the VI, Inc.**<br>**PO Box 363868**<br>**San Juan, PR 00936-3868** | 4/16/2021<br>4/23/2021<br>5/7/2021<br>5/21/2021<br>5/28/2021<br><br>5/14/2021 | $529,440.30 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.10<br>6.   **Geogas Trading S.A.**<br>**Boulevard du Pont-d'Arve 28**<br>**1205 Geneve**<br>**SWITZERLAND** | 4/15/2021<br>4/16/2021 | $45,188.89 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.10<br>7.   **Gibson, Dunn, & Crutcher LLP**<br>**811 Main Street**<br>**Houston, TX 77002** | 5/28/2021 | $129,638.17 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.10<br>8.   **Global Engagement Support Services**<br>**PO Box 964**<br>**Christiansted, VI 00821** | 6/25/2021 | $87,488.05 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.10<br>9.   **Goldman Sachs & Co**<br>**200 West Street**<br>**New York, NY 10282** | 5/20/2021 | $25,000.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>■ Other **_Administrative Fee_** |

Debtor    **Limetree Bay Refining, LLC**      Case number *(if known)* **21-32354**

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|
| 3.11<br>0. | **Gulf Oil Limited Partnership**<br>**80 Williams Street**<br>**Wellesley Hills, MA 02481** | **4/19/2021**<br>**4/27/2021**<br>**4/30/2021**<br>**5/6/2021**<br>**5/14/2021**<br>**5/20/2021**<br>**5/27/2021**<br>**6/3/2021**<br>**6/10/2021** | **$429,444.51** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.11<br>1. | **H & K Engineering, LLC**<br>**2644 S. Sherwood Forest Blvd**<br>**Baton Rouge, LA 70816** | **4/16/2021**<br>**4/23/2021**<br>**4/30/2021**<br>**5/7/2021**<br>**5/21/2021**<br>**5/28/2021**<br>**6/4/2021** | **$980,700.71** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.11<br>2. | **Harbour International Inc**<br>**30 Shumway Ave**<br>**Batavia, IL 60510** | **4/30/2021** | **$8,878.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.11<br>3. | **Hatfield and Company, Inc.**<br>**2475 Discovery Blvd.**<br>**Rockwall, TX 75032** | **5/21/2021**<br>**5/28/2021** | **$33,581.01** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.11<br>4. | **HEC International Inc.**<br>**6915 32 Avenue N.W.**<br>**Calgary Alberta T3B 0K6**<br>**CANADA** | **5/24/2021** | **$8,801.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.11<br>5. | **Honeywell Enraf Americas, Inc.**<br>**2000 Northfield Court**<br>**Roswell, GA 30076** | **4/16/2021**<br>**4/29/2021**<br>**5/7/2021**<br>**5/14/2021**<br>**5/21/2021**<br>**5/28/2021**<br>**6/4/2021** | **$1,167,899.82** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.11<br>6. | **Honeywell International Inc (Proces**<br>**1250 Sam Houston Parkway South**<br>**Houston, TX 77042** | **5/7/2021**<br>**5/28/2021**<br>**6/4/2021** | **$788,907.34** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

Debtor   **Limetree Bay Refining, LLC**                                    Case number (if known) **21-32354**

| | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>Check all that apply |
|---|---|---|---|---|
| 3.11<br>7. | **IHS Global Inc.**<br>**PO Box 847193**<br>**Dallas, TX 75284-7193** | **6/4/2021** | **$10,000.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.11<br>8. | **Industrial Fittings & Valves**<br>**PO Box 2329**<br>**Toa Baja, PR 00951-2329** | **5/7/2021** | **$6,991.92** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.11<br>9. | **InServ Field Services USVI ,LLC**<br>**1900 N 161st East Ave**<br>**Tulsa, OK 74116** | **4/22/2021** | **$2,202,815.21** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.12<br>0. | **Insulating Services, Inc.**<br>**10709 Granite St.**<br>**Suite H**<br>**Charlotte, NC 28273-6353** | **4/16/2021** | **$117,366.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other__ |
| 3.12<br>1. | **Intertek USA, Inc.**<br>**200 Westlake Park Blvd**<br>**Suite 400**<br>**Houston, TX 77079** | **4/16/2021**<br>**5/7/2021**<br>**5/14/2021**<br>**5/28/2021** | **$876,528.67** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.12<br>2. | **ioMosaic Corporation**<br>**93 Stiles Road**<br>**Salem, NH 03079** | **6/10/2021**<br>**6/25/2021** | **$200,000.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.12<br>3. | **IRS US** | **4/20/2021** | **$7,100.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>■ Other_Taxes_ |
| 3.12<br>4. | **ISS Marine Services, Inc.**<br>**11 North Water Street**<br>**Mobile, AL 36602** | **5/7/2021** | **$7,599.25** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |

Debtor   **Limetree Bay Refining, LLC**                          Case number *(if known)*   **21-32354**

| | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|---|
| 3.12<br>5. | **J. Aron & Company LLC**<br>**200 West Street**<br>**New York, NY 10282** | **4/15/2021**<br>**4/30/2021**<br>**5/10/2021**<br>**5/12/2021**<br>**5/13/2021**<br>**5/17/2021**<br>**6/8/2021** | **$8,187,790.77** | ■ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.12<br>6. | **James D. Acers Company, Inc.**<br>**1510 12th Street**<br>**Cloquet, MN 55720** | **4/23/2021**<br>**6/4/2021** | **$74,247.81** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.12<br>7. | **Jeanne Maltby**<br>**PO Box 715**<br>**Kasilof, AK 99610** | **4/30/2021** | **$36,648.27** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.12<br>8. | **John C. Cothern**<br>**8 Barberry Court**<br>**Columbia, SC 29212** | **5/14/2021**<br>**6/4/2021**<br>**7/1/2021** | **$42,257.70** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.12<br>9. | **John Crane Inc.**<br>**24929 Network Place**<br>**Chicago, IL 60673-1249** | **4/16/2021**<br>**4/19/2021**<br>**4/23/2021**<br>**4/30/2021**<br>**5/7/2021**<br>**5/14/2021**<br>**5/28/2021**<br>**6/4/2021** | **$1,914,811.57** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.13<br>0. | **John E Dugas III**<br>**5314 Sycamore Creek Drive**<br>**Kingwood, TX 77345-1462** | **4/16/2021**<br>**5/14/2021**<br>**6/18/2021**<br>**7/1/2021** | **$92,878.08** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.13<br>1. | **John Zink Co LLC**<br>**11920 E Apache St**<br>**Tulsa, OK 74116** | **4/16/2021**<br>**5/7/2021**<br>**5/21/2021** | **$281,960.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.13<br>2. | **KSBW, LLC**<br>**PO Box 937**<br>**Christiansted, St Croix, VI 00821** | **4/23/2021**<br>**5/28/2021**<br>**6/11/2021**<br>**6/25/2021**<br>**7/1/2021** | **$142,144.70** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

Debtor   **Limetree Bay Refining, LLC**                    Case number *(if known)*  **21-32354**

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>Check all that apply |
|---|---|---|---|
| 3.13<br>3. **Laura Irwin**<br>**22408 Mueschke Road**<br>**Tomball, TX 77377** | **5/7/2021**<br>**5/28/2021** | **$16,125.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other__ |
| 3.13<br>4. **Law Offices of Roberta M. Rossi**<br>**101 Industrial Court**<br>**Conroe, TX 77301** | **4/23/2021**<br>**5/28/2021**<br>**6/4/2021** | **$155,135.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other__ |
| 3.13<br>5. **LDARtools, INC.**<br>**1102 Dickinson Ave.**<br>**Dickinson, TX 77539** | **4/16/2021**<br>**5/28/2021** | **$12,111.15** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.13<br>6. **Liferafts Inc. of Puerto Rico**<br>**PO Box 9022081**<br>**San Juan, PR 00902-2081** | **5/28/2021** | **$11,675.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.13<br>7. **Limetree Bay Services, LLC**<br>**11100 Brittmoore Park Drive**<br>**Houston, TX 77041** | **4/21/2021**<br>**5/5/2021**<br>**5/19/2021**<br>**6/2/2021**<br>**6/8/2021**<br>**6/15/2021**<br>**6/30/2021** | **$1,444,200.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>■ Other **Intercompany transfers to fund payroll/benefits** |
| 3.13<br>8. **Lockton Companies, LLC**<br>**PO Box 123036**<br>**Dallas, TX 75312-3036** | **5/4/2021**<br>**5/13/2021**<br>**5/18/2021**<br>**6/29/2021**<br>**7/1/2021** | **$1,824,846.80** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>■ Other **Insurance** |
| 3.13<br>9. **Lucas Associates Temps, Inc.**<br>**950 East Paces Ferry Road**<br>**Suite 2300**<br>**Atlanta, GA 30326** | **4/30/2021**<br>**5/21/2021**<br>**5/28/2021** | **$20,736.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other__ |
| 3.14<br>0. **M. R. Franceshini, Inc**<br>**611 Condado Ave.**<br>**San Juan, PR 00907** | **5/14/2021**<br>**6/4/2021** | **$23,309.81** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |

| Debtor | Limetree Bay Refining, LLC | Case number *(if known)* | 21-32354 |

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>Check all that apply |
|---|---|---|---|
| 3.14<br>1. **Marex Services Group, LLC**<br>442 Government St.<br>2nd Floor<br>Baton Rouge, LA 70802 | 4/19/2021<br>5/17/2021 | $19,840.81 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.14<br>2. **Marsh USA Inc.**<br>PO Box 846015<br>Dallas, TX 75284-6015 | 5/24/2021 | $532,086.05 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>■ Other **Insurance** |
| 3.14<br>3. **Mays Chemical Company of PR Inc**<br>PO Box 363968<br>Catano, PR 00936-3968 | 5/7/2021 | $33,531.85 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.14<br>4. **McDonough Construction Rentals, Inc**<br>8400 Villa Dr<br>Houston, TX 77061 | 5/14/2021 | $18,950.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.14<br>5. **McMaster-Carr Supply Company**<br>PO Box 7690<br>Chicago, IL 60680-7690 | 4/16/2021<br>4/23/2021<br>5/7/2021 | $16,685.98 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.14<br>6. **MetLife Insurance**<br>PO Box 804666<br>Kansas City, MO 64180-4466 | 5/3/2021<br>6/1/2021<br>6/15/2021<br>6/30/2021 | $132,597.06 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>■ Other **Insurance** |
| 3.14<br>7. **MGMGG Commissioning &**<br>**Consulting Services, LLC**<br>P. O. Box 20197<br>Beaumont, TX 77720 | 4/16/2021<br>4/23/2021<br>4/30/2021<br>5/7/2021<br>5/13/2021<br>5/20/2021 | $71,976.23 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.14<br>8. **Mission Secure, Inc.**<br>300 Preston Avenue<br>Suite 500<br>Charlottesville, VA 22902 | 5/14/2021 | $30,876.49 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

| Debtor | **Limetree Bay Refining, LLC** | Case number *(if known)* | **21-32354** |
|---|---|---|---|

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|
| 3.14<br>9. | **Mistras Group, Inc.**<br>PO Box 405694<br>Atlanta, GA 30384-5694 | 4/23/2021 | $43,007.06 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.15<br>0. | **Modern Ice Equipment & Supply**<br>5709 Harrison Ave.<br>Cincinnati, OH 45248 | 5/21/2021 | $23,656.50 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.15<br>1. | **Mostardi Platt**<br>888 Industrial Drive<br>Elmhurst, IL 60126 | 4/30/2021<br>5/7/2021 | $144,379.67 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.15<br>2. | **NAES Corporation**<br>1180 NW Maple Street<br>Suite 200<br>Issaquah, WA 98027 | 4/23/2021<br>5/7/2021<br>6/4/2021 | $25,365.78 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.15<br>3. | **Nalco U.S. 2 Inc**<br>1601 West Diehl Road<br>Naperville, IL 60563 | 4/23/2021<br>4/30/2021<br>5/28/2021 | $236,393.11 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.15<br>4. | **National Elecrtic Motor & Supply Co**<br>PO Box 40443<br>Baton Rouge, LA 70835 | 4/16/2021<br>4/19/2021<br>4/20/2021 | $608,485.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.15<br>5. | **National Industrial Services, LLC**<br>PO Box 1545<br>Kingshill, St. Croix, VI 00851 | 4/16/2021<br>4/22/2021<br>4/29/2021<br>5/7/2021<br>5/14/2021<br>5/21/2021<br>5/28/2021<br>6/4/2021<br>6/11/2021<br>6/25/2021<br>7/1/2021 | $4,214,032.02 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |

Debtor      **Limetree Bay Refining, LLC**                                    Case number *(if known)* **21-32354**

| | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|---|
| 3.15<br>6. | **National Parts**<br>**455 Plaza Drive**<br>**Atlanta, GA 30349** | **4/16/2021**<br>**4/23/2021**<br>**5/14/2021**<br>**5/21/2021**<br>**5/28/2021**<br>**6/4/2021**<br>**6/11/2021**<br>**7/1/2021** | **$354,263.58** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.15<br>7. | **NEI Global Relocation Company**<br>**2707 N 118th Street**<br>**Omaha, NE 68164** | **4/23/2021**<br>**5/21/2021**<br>**6/2/2021**<br>**6/15/2021**<br>**7/2/2021** | **$660,707.86** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.15<br>8. | **Nettime Solutions LLC**<br>**1600 N. Desert Drive**<br>**Suite 125**<br>**Tempe, AZ 85281** | **4/19/2021**<br>**5/7/2021**<br>**6/11/2021** | **$10,815.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.15<br>9. | **Northeast Controls, Inc.**<br>**17601 Coastal Hwy**<br>**Unit 11**<br>**Nassau, DE 19969-9998** | **5/14/2021** | **$16,504.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.16<br>0. | **Nvent Thermal LLC**<br>**1665 Utica Ave S**<br>**#700**<br>**Minneapolis, MN 55416** | **4/23/2021** | **$86,828.79** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.16<br>1. | **Ocean Systems  Laboratory Inc**<br>**6194 Est Frydenhoj**<br>**Suite 3**<br>**St Thomas, VI 00802** | **4/16/2021**<br>**5/7/2021**<br>**5/14/2021**<br>**5/21/2021**<br>**6/4/2021**<br>**6/11/2021** | **$37,770.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.16<br>2. | **Office Depot**<br>**d/b/a Office Max 6799**<br>**PO Box 630813**<br>**Cincinnati, OH 45263-0813** | **4/23/2021**<br>**5/7/2021**<br>**5/14/2021**<br>**5/21/2021**<br>**5/28/2021**<br>**6/4/2021**<br>**6/11/2021**<br>**7/1/2021** | **$11,615.21** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

Debtor   **Limetree Bay Refining, LLC**                              Case number *(if known)*   **21-32354**

| | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|---|
| 3.16<br>3. | **Oliver Exterminating of St. Croix I**<br>PO Box 787<br>St. Croix, VI 00821 | 4/23/2021<br>5/14/2021<br>5/21/2021<br>5/28/2021 | $60,345.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other__ |
| 3.16<br>4. | **O'Neale's Transport Inc.**<br>PO Box 7550<br>Christiansted, VI 00823 | 4/16/2021<br>4/30/2021 | $7,359.50 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other__ |
| 3.16<br>5. | **Opportune LLP**<br>711 Louisiana Street<br>Houston, TX 77002 | 5/7/2021<br>5/28/2021 | $13,072.50 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other__ |
| 3.16<br>6. | **Optum Bank**<br>P.O. Box 271629<br>Salt Lake City, UT 84127-1629 | 4/26/2021<br>5/6/2021<br>5/18/2021<br>6/2/2021<br>6/18/2021<br>6/30/2021 | $10,331.70 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other__ |
| 3.16<br>7. | **PC Connection Sales Corp.**<br>PO Box 382808<br>Pittsburgh, PA 15250-8808 | 5/14/2021<br>5/28/2021 | $14,957.82 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.16<br>8. | **Pem-Tech Inc**<br>12144 Dairy Ashford<br>Bldg 2<br>Sugar Lane, TX 77478 | 5/28/2021 | $11,200.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.16<br>9. | **Pentair Filtration Solutions, Inc.**<br>16622 Collections Center Dr.<br>Chicago, IL 60693 | 5/21/2021<br>5/28/2021 | $135,275.28 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.17<br>0. | **Perkins Coie LLP**<br>1201 Third Avenue<br>Seattle, WA 98101 | 5/7/2021<br>6/11/2021 | $104,890.92 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other__ |

| Debtor | **Limetree Bay Refining, LLC** | Case number *(if known)* | **21-32354** |

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|
| 3.17<br>1. | **Petra Arroyo<br>27-H Clifton Hill<br>Christiansted, VI 00820** | 4/23/2021 | $21,991.20 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.17<br>2. | **Petrex, Inc.<br>2349 Dorcon Road<br>Warren, PA 16365** | 6/4/2021 | $6,934.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.17<br>3. | **Phil Badgwell II<br>1835 Langham Forest Blvd<br>Orange, TX 77630** | 4/16/2021<br>5/7/2021<br>6/4/2021<br>6/25/2021 | $92,226.03 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.17<br>4. | **Pinnacle Asset Integrity Services<br>d/b/a PinnacleArt<br>1 One Pinnacle Road<br>Pasadena, TX 77504** | 5/7/2021 | $71,090.53 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.17<br>5. | **Pinnacle Services, LLC<br>6002 Diamond Ruby<br>Christiansted, VI 00820** | 4/16/2021<br>4/23/2021<br>4/26/2021<br>4/30/2021<br>5/7/2021<br>5/14/2021<br>5/21/2021<br>5/28/2021<br>6/4/2021<br>6/11/2021<br>6/25/2021<br>7/1/2021 | $7,048,449.42 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.17<br>6. | **Piping Technology & Products, Inc.<br>PO Box 34506<br>Houston, TX 77234-4506** | 4/16/2021<br>4/23/2021<br>5/21/2021 | $23,487.42 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.17<br>7. | **Polaris Engineering, Inc<br>PO Box 125<br>Lake Charles, LA 70602** | 4/23/2021 | $47,573.30 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |

Debtor    **Limetree Bay Refining, LLC**                                    Case number *(if known)*  **21-32354**

| | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|---|
| 3.17 8. | **Precision Filtration Products**<br>**PO Box 218**<br>**Pennsburg, PA 18073-0218** | **4/23/2021**<br>**4/30/2021**<br>**5/14/2021** | **$24,994.80** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.17 9. | **Premium Inspection & Testing, Inc**<br>**8225 Florida Blvd**<br>**Baton Rouge, LA 70806** | **4/16/2021**<br>**4/23/2021** | **$75,731.78** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other__ |
| 3.18 0. | **Prestige Technology Corp**<br>**1101 South Rogers Circle**<br>**Boca Raton, FL 33487** | **5/14/2021**<br>**6/4/2021** | **$51,221.50** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.18 1. | **Primaisla Inc**<br>**3009 Pamplico Hwy**<br>**Florence, SC 29505** | **4/30/2021**<br>**5/7/2021**<br>**5/14/2021**<br>**5/21/2021**<br>**5/28/2021**<br>**6/4/2021** | **$309,870.25** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.18 2. | **Prime Search Enterprises, Inc.**<br>**595 S Wooddale Place**<br>**Eagle, ID 83616** | **5/21/2021**<br>**5/28/2021** | **$60,000.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.18 3. | **Priority Roro Services**<br>**PO Box 3251**<br>**Mayaguez, PR 00880** | **4/30/2021**<br>**6/4/2021** | **$89,141.30** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other__ |
| 3.18 4. | **Process Technical Services, Inc.**<br>**14550 Torrey Chase Blvd**<br>**Suite 220**<br>**Houston, TX 77014** | **4/23/2021** | **$9,367.64** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other__ |
| 3.18 5. | **Prometheus Group Enterpises, LLC**<br>**1101 Haynes Street**<br>**Suite 218**<br>**Raleigh, NC 27604** | **4/30/2021**<br>**5/7/2021**<br>**6/11/2021** | **$66,500.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |

Debtor   **Limetree Bay Refining, LLC**                                      Case number *(if known)*  **21-32354**

| | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|---|
| 3.18 6. | **Puerto Rico Valve & Fitting, LLC**<br>**393 Canas St**<br>**Estancias  Del Rio**<br>**Hormigueros, PR 00660** | **6/4/2021**<br>**6/11/2021** | **$9,400.52** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.18 7. | **Quality Electric Supply, Inc.**<br>**6703 Peters Rest.**<br>**Christiansted, VI 00820** | **4/30/2021**<br>**5/7/2021**<br>**5/14/2021**<br>**5/21/2021**<br>**5/28/2021**<br>**6/4/2021**<br>**7/1/2021** | **$50,540.44** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.18 8. | **RAC Enterprises, Inc.**<br>**PO Box 6377**<br>**Caguas, PR 00726-6377** | **4/23/2021** | **$17,913.50** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.18 9. | **Rafael Benitez Carrillo, Inc.**<br>**PO Box 362769**<br>**San Juan, PR 00936-2769** | **4/23/2021**<br>**5/21/2021**<br>**5/28/2021**<br>**6/4/2021** | **$7,784.05** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.19 0. | **Rapid Access Solutions**<br>**42 Charing Crescent**<br>**Aurora, Ontario L4G 6P4**<br>**CANADA** | **4/28/2021**<br>**5/24/2021** | **$42,160.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.19 1. | **RASD Consulting Group, LP**<br>**d/b/a AMS-PAR**<br>**16800 Greenspoint Park D**<br>**Suite 120N**<br>**Houston, TX 77060-2388** | **5/28/2021**<br>**7/1/2021** | **$81,689.74** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.19 2. | **Refinitiv US LLC**<br>**P. O. BOX 415983**<br>**Boston, MA 02241** | **4/23/2021**<br>**6/4/2021** | **$8,986.38** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.19 3. | **Relevant Industrial, LLC**<br>**PO Box 95605**<br>**Grapevine, TX 76099-9730** | **4/23/2021**<br>**5/7/2021**<br>**5/14/2021**<br>**6/11/2021** | **$33,529.39** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

Debtor    **Limetree Bay Refining, LLC**                                                     Case number *(if known)*  **21-32354**

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer *Check all that apply* |
|---|---|---|---|
| 3.19 4. | **Reliable Rentals** **3 Estate Pearl** **Christiansted, VI 00820** | **5/14/2021** **5/21/2021** **6/4/2021** | **$22,693.40** | ☐ Secured debt ☐ Unsecured loan repayments ☑ Suppliers or vendors ☐ Services ☐ Other__ |
| 3.19 5. | **Resal Inc.** **2900 Tuxedo Avenue** **West Palm Beach, FL 33405** | **5/7/2021** **5/28/2021** **6/4/2021** | **$68,998.58** | ☐ Secured debt ☐ Unsecured loan repayments ☑ Suppliers or vendors ☐ Services ☐ Other__ |
| 3.19 6. | **Rev1 Oil & Gas LLC** **100 N Tampa St.** **Suite 2300** **Tampa, FL 33602** | **4/16/2021** **4/23/2021** **4/30/2021** **5/7/2021** | **$944,228.72** | ☐ Secured debt ☐ Unsecured loan repayments ☑ Suppliers or vendors ☐ Services ☐ Other__ |
| 3.19 7. | **RISC Inc** **718 FM 1959** **Suite A** **Houston, TX 77034** | **5/21/2021** | **$39,519.00** | ☐ Secured debt ☐ Unsecured loan repayments ☑ Suppliers or vendors ☐ Services ☐ Other__ |
| 3.19 8. | **Rockwell Automation Puerto RIco, Inc** **Calle 1 Metro Office 6** **Suite 304** **Guayabo, PR 00968** | **4/16/2021** **4/23/2021** **5/7/2021** **6/4/2021** | **$435,182.79** | ☐ Secured debt ☐ Unsecured loan repayments ☑ Suppliers or vendors ☐ Services ☐ Other__ |
| 3.19 9. | **Rotating Machinery Services, Inc.** **2760 Baglyos Circle** **Bethlehem, PA 18020** | **4/23/2021** **5/7/2021** | **$188,374.44** | ☐ Secured debt ☐ Unsecured loan repayments ☑ Suppliers or vendors ☐ Services ☐ Other__ |
| 3.20 0. | **RTP Environmental Associates, Inc.** **304-A West Millbrook Road** **Raleigh, NC 27609** | **4/16/2021** **4/23/2021** **4/30/2021** **5/28/2021** **6/4/2021** | **$319,163.53** | ☐ Secured debt ☐ Unsecured loan repayments ☑ Suppliers or vendors ☐ Services ☐ Other__ |
| 3.20 1. | **SAP America, Inc.** **3999 West Chester Pike** **Newtown Square, PA 19073** | **5/7/2021** **5/14/2021** | **$190,034.21** | ☐ Secured debt ☐ Unsecured loan repayments ☑ Suppliers or vendors ☐ Services ☐ Other__ |

Debtor    **Limetree Bay Refining, LLC**                                    Case number *(if known)*   **21-32354**

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|
| 3.20 2. | **Savage Services**<br>**PO Box 30015**<br>**Salt Lake City, UT 84130** | **4/23/2021**<br>**6/4/2021** | **$115,042.81** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.20 3. | **Savage St. Croix, LLC**<br>**Dept. 418**<br>**Salt Lake Clty, UT 84130** | **4/22/2021** | **$734,148.15** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.20 4. | **Schuster Services**<br>**18 Estate Pearl**<br>**Christiansted, VI 00820** | **5/14/2021**<br>**6/22/2021**<br>**7/1/2021** | **$68,487.50** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.20 5. | **Sedgwick Claims Mgmt Services, Inc**<br>**1833 Centre Point Circle**<br>**Suite 139**<br>**Naperville, IL 60639** | **5/18/2021**<br>**6/7/2021**<br>**6/11/2021** | **$1,250,000.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.20 6. | **Sentinel Integrity Solutions VI**<br>**6606 Miller Road 2**<br>**Houston, TX 77049** | **5/14/2021**<br>**6/4/2021** | **$94,871.09** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.20 7. | **Sentry Supply**<br>**d/b/a Superior Supply &**<br>**PO Box 677427**<br>**Dallas, TX 75267** | **5/28/2021** | **$24,300.10** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.20 8. | **Setpoint Integrated Solutions**<br>**PO Box 935076**<br>**Atlanta, GA 31193** | **5/14/2021**<br>**6/4/2021**<br>**7/1/2021** | **$34,607.82** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.20 9. | **SGS North America, Inc**<br>**6601 Kirkville Road**<br>**East Syracuse, NY 13057** | **4/23/2021**<br>**5/14/2021**<br>**6/11/2021**<br>**7/1/2021** | **$37,220.50** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

Debtor    **Limetree Bay Refining, LLC**                                    Case number *(if known)*    **21-32354**

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer *Check all that apply* |
|---|---|---|---|
| 3.210. | **Sherwin-Williams**<br>**35-36 Industrial Park**<br>**St. Croix, VI 00820** | **4/16/2021**<br>**4/23/2021**<br>**5/14/2021**<br>**6/4/2021**<br>**7/1/2021** | **$23,483.96** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.211. | **Sloan Schoyer**<br>**P. O. Box 280**<br>**Biddeford Pool, ME 04006** | **5/14/2021**<br>**6/4/2021** | **$113,418.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other__ |
| 3.212. | **Software One Puerto Rico Inc.**<br>**City View Plaza, No 48**<br>**Suite 310**<br>**PR-165**<br>**Guaynabo, PR 00968** | **5/21/2021** | **$12,217.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.213. | **South Coast Fire & Safety**<br>**6230 Brookhill Dr.**<br>**Houston, TX 77087** | **4/23/2021**<br>**6/4/2021**<br>**6/11/2021** | **$54,412.09** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.214. | **Sphera Solutions, Inc.**<br>**PO Box 71886**<br>**Chicago, IL 60694-1886** | **5/14/2021** | **$35,360.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.215. | **Spirit Environmental, LLC**<br>**20465 State Highway 249**<br>**Suite 300**<br>**Houston, TX 77070** | **6/8/2021**<br>**6/25/2021** | **$36,000.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.216. | **St. Croix Trading Company Inc.**<br>**PO Box 24265**<br>**Christiansted, VI 00824** | **5/14/2021** | **$13,838.17** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.217. | **Steel and Pipes Inc**<br>**PO Box 5309**<br>**Caguas, PR 00726** | **4/23/2021**<br>**7/1/2021** | **$23,045.82** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

Debtor   **Limetree Bay Refining, LLC**                              Case number *(if known)*  **21-32354**

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>Check all that apply |
|---|---|---|---|
| 3.21<br>8. | **Steven J. Pully**<br>**4564 Meadowood Rd**<br>**Dallas, TX 75220** | 6/30/2021 | **$50,000.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>■ Other **Independent Member** |
| 3.21<br>9. | **Strategic Contract Resources, LLC**<br>**PO Box 823461**<br>**Philadelphia, PA 19182** | 4/16/2021<br>4/23/2021<br>4/30/2021<br>5/7/2021<br>5/28/2021<br>6/4/2021 | **$332,314.95** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.22<br>0. | **Sulzer Pumps (US) Inc.**<br>**200 SW Market St**<br>**Portland, OR 97201** | 4/30/2021 | **$93,823.49** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.22<br>1. | **Superior Laboratory Services**<br>**1710 Preston Rd**<br>**Suite A**<br>**Pasadena, TX 77503** | 6/4/2021 | **$15,158.58** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other__ |
| 3.22<br>2. | **The Dow Chemical Company**<br>**1 East Main Street**<br>**Bay City, MI 48708** | 4/16/2021<br>4/30/2021<br>5/7/2021 | **$181,784.60** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.22<br>3. | **Three L Inc**<br>**12235 Robin Blvd**<br>**Houston, TX 77045-4826** | 4/16/2021<br>5/28/2021<br>6/4/2021 | **$190,022.40** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.22<br>4. | **TISI VI, LLC**<br>**13131 Dairy Ashford Rd**<br>**Suite 600**<br>**Sugar Land, TX 77478** | 4/23/2021<br>4/30/2021<br>5/7/2021<br>5/14/2021<br>6/4/2021 | **$694,003.77** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.22<br>5. | **Top Ten USA, LLC**<br>**199 Route 206 South**<br>**Flanders, NJ 07836** | 5/14/2021 | **$9,180.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other__ |

Debtor    **Limetree Bay Refining, LLC**            Case number *(if known)*   **21-32354**

| | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|---|
| 3.22<br>6. | **Total Safety U.S., Inc.**<br>**11111 Wilcrest Green Drive**<br>**Dallas, TX 75265-4171** | **4/16/2021**<br>**4/23/2021**<br>**4/30/2021**<br>**5/14/2021**<br>**5/21/2021**<br>**5/28/2021**<br>**6/4/2021**<br>**7/1/2021** | **$1,007,466.41** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.22<br>7. | **Trinity Consultants Inc**<br>**PO Box 972047**<br>**Dallas, TX 75397-2047** | **5/21/2021**<br>**6/4/2021**<br>**6/11/2021** | **$34,331.99** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.22<br>8. | **Tropical Shipping Company Limited**<br>**PO Box 3003**<br>**Kingshill, VI 00851** | **4/16/2021**<br>**5/14/2021**<br>**5/28/2021**<br>**6/4/2021** | **$47,043.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.22<br>9. | **Twin City Island Spirits, Inc**<br>**4000 Sion Farm**<br>**Christiansted, VI 00820** | **4/30/2021**<br>**5/14/2021** | **$7,056.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.23<br>0. | **Tysam Tech LLC**<br>**PO Box 8438**<br>**St. Croix, VI 00823** | **4/23/2021**<br>**5/21/2021**<br>**6/11/2021** | **$47,770.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.23<br>1. | **Universal Plant Services, (VI), LLC**<br>**806 Seaco Court**<br>**Deer Park, TX 77536** | **4/16/2021**<br>**4/22/2021**<br>**4/29/2021**<br>**5/14/2021**<br>**5/21/2021**<br>**5/28/2021**<br>**6/4/2021**<br>**6/25/2021**<br>**7/1/2021** | **$5,430,592.02** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.23<br>2. | **University of the Virgin Islands**<br>**Charlotte Amalie West**<br>**St Thomas, VI 00802** | **5/7/2021** | **$40,000.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>■ Other__**Charitable contribution**__ |

Debtor   **Limetree Bay Refining, LLC**                                    Case number *(if known)*   **21-32354**

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|
| 3.23<br>3.   **URVI, INC**<br>**PO Box 100711**<br>**Atlanta, GA 30384-0711** | 6/4/2021 | $90,716.43 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.23<br>4.   **V.I. Industrial Serevices, LLC**<br>**PMB #6002 Est. Diamond Ruby**<br>**Christiansted, VI 00820** | 4/16/2021<br>4/22/2021<br>4/29/2021<br>5/28/2021<br>6/4/2021 | $1,600,616.85 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.23<br>5.   **Versa Integrity Group, Inc.**<br>**4301 Hwy 27 South**<br>**Sulphur, LA 70665** | 4/16/2021<br>4/22/2021<br>4/29/201<br>5/7/2021<br>5/21/2021<br>5/28/2021<br>6/1/2021<br>6/4/2021<br>6/11/2021 | $3,887,628.53 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.23<br>6.   **Virgin Islands Regulated Waste**<br>**PO Box 222994**<br>**Christiansted, VI 00822** | 5/21/2021<br>5/28/2021<br>6/4/2021<br>6/11/2021 | $51,928.51 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.23<br>7.   **VisiumKMS Inc.**<br>**2700 Post Oak Blvd.**<br>**21st Floor**<br>**Houston, TX 77056** | 5/14/2021 | $40,600.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.23<br>8.   **Vitol Inc.**<br>**1100 Louisiana**<br>**Houston, TX 77002-5255** | 4/21/2021 | $15,705.87 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.23<br>9.   **Vivot Equipment Corporation**<br>**9010 Estate Cottage**<br>**Christiansted, VI 00820** | 4/16/2021<br>4/23/2021<br>4/30/2021<br>5/7/2021<br>5/14/2021<br>5/21/2021<br>5/28/2021<br>6/4/2021<br>7/1/2021 | $2,797,592.49 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                                      Best Case Bankruptcy

Debtor   **Limetree Bay Refining, LLC**          Case number *(if known)*   **21-32354**

| | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|---|
| 3.24<br>0. | **Viya**<br>**Attn: Abigail Atwell**<br>**4005 Estate Diamond**<br>**Christiansted, VI 00820-4436** | 5/14/2021<br>5/28/2021<br>7/1/2021 | $305,809.41 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.24<br>1. | **VWNA Caribbean, LLC**<br>**1131 King Street**<br>**Christiansted, VI 00820** | 4/16/2021<br>4/23/2021<br>4/30/2021<br>5/28/2021<br>6/4/2021 | $907,129.69 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.24<br>2. | **VWNA Process Solutions / Texas LLC**<br>**PO Box 23654**<br>**Chicago, IL 60673-3654** | 6/4/2021 | $25,351.79 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.24<br>3. | **Welders Supply Compay Inc**<br>**PO Box 1129**<br>**Christiansted, VI 00821** | 4/16/2021<br>5/28/2021 | $7,237.25 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.24<br>4. | **Weldship Industries**<br>**225 W 2nd Street**<br>**Bethlehem, PA 18015** | 5/7/2021<br>5/21/2021 | $33,600.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.24<br>5. | **Wesco Distribution, Inc.**<br>**PO Box 676780**<br>**Dallas, TX 75267-6780** | 4/16/2021<br>4/23/2021<br>4/30/2021<br>6/4/2021<br>5/28/2021 | $218,391.44 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.24<br>6. | **Williams Fire & Hazard Control**<br>**9605 Richard Wycoff Drive**<br>**Port Arthur, TX 77640** | 4/16/2021 | $699,599.79 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.24<br>7. | **Worley Pan American**<br>**5995 Rogerdale Road**<br>**Houston, TX 77072** | 4/23/2021<br>4/29/2021 | $388,964.47 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

Debtor   **Limetree Bay Refining, LLC**                                          Case number *(if known)*   **21-32354**

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|
| 3.24<br>8. | **WYE Electric Motor Shop**<br>**PO Box 8522**<br>**Christiansted, VI 00823** | **4/16/2021**<br>**6/11/2021** | **$12,050.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.24<br>9. | **Xerox Corporation**<br>**PO Box 802555**<br>**Chicago, IL 60680-2555** | **4/16/2021**<br>**5/7/2021**<br>**5/21/2021**<br>**5/28/2021**<br>**6/4/2021** | **$82,172.17** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.25<br>0. | **Yana Systems, Inc.**<br>**6860 North Dallas Parkway**<br>**Plano, TX 75024** | **5/14/2021** | **$6,871.50** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.25<br>1. | **York Career Development, Inc.**<br>**651 Bering Drive**<br>**Suite 1304**<br>**Houston, TX 77057** | **6/11/2021** | **$9,000.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
   List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

   ☐ None.

| Insider's name and address<br>Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
|---|---|---|---|
| 4.1. | **Jeffrey Rinker**<br><br>**President** | **12/9/2020**<br>**1/8/2021**<br>**2/4/2021** | **$12,914.30** | **expense reimbursements** |

5. **Repossessions, foreclosures, and returns**
   List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

   ■ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|

6. **Setoffs**
   List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

| Debtor | **Limetree Bay Refining, LLC** | Case number *(if known)* **21-32354** |
|---|---|---|

■ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|

**Part 3:   Legal Actions or Assignments**

7. **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**
   List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

   ☐ None.

| | Case title<br>Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| 7.1. | **Isaiah Ducreay v. Inserv Field Services USVI, LLC and Limetree Bay Refining, LLC**<br>**SX-20-CV-637** | **wrongful termination** | **Superior Court of the Virgin Islands** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.2. | **Vanessa Hendricks v. Pinnacle Services, LLC, et al.**<br>**01-20-0003-8191** | **Civil Rights Act Violation** | **American Arbitration Association** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.3. | **Thomas A. McKowen v. Pinnacle Services, LLC, Limetree Bay Refining, LLC, et al**<br>**SX-2021-CV-470** | **Employment Issues** | **Superior Court of the V.I, St. Croix Div** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.4. | **AltairStrickland V.I., LLC v. Limetree Bay Refining, LLC**<br>**SX-2021-CV-00415** | **Breach of Contract and Foreclosure of Construction Lien** | **Sup. Court of the V.I., St. Croix Div.** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.5. | **Wyn Charlery v. Limetree Bay Terminals, LLC and Limetree Bay Refining, LLC**<br>**SX-2021-CV-00494** | | **Superior Ct. of the V.I., St Croix Div.** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.6. | **Clifford Boynes, et al v. Limetree Bay Ventures, LLC, Limetree Bay Refining, LLC, et al**<br>**1:21-cv-253** | **Tort - Toxic Release Allegations** | **USVI Dist Court - Civl** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.7. | **Frances E. Charles and Teresa J. Charles v. Limetree Bay Refining, LLC, et al.**<br>**SX-21-CV-413** | **Tort - Toxic Release Allegations** | | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.8. | **Beecher Cotton, et al. v. LImetree Bay Ventures, LLC, Limetree Bay Terminals, LLC, Limetree Bay Refining, LLC, et al.**<br>**SX-21-CV-414** | **Tort - Toxic Release Allegations** | | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.9. | **Helen Shirley, et al. v. Limetree Bay Ventures, LLC, Limetree Bay Refining, LLC, et al.**<br>**SX-21-CV-411** | **Tort - Toxic Release Allegations** | **St. Croix Superior Court** | ■ Pending<br>☐ On appeal<br>☐ Concluded |

Debtor   **Limetree Bay Refining, LLC**                    Case number *(if known)*   **21-32354**

| | Case title<br>Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| 7.10. | **Marinus Randolph v. Limetree Bay Terminals, LLC, et al.**<br>**SX-18-CV-047** | **Personal Injury Claim** | | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.11. | **Jose L. Perales v. Limetree Bay Refining, LLC**<br>**Charge No. 515-2021-0004** | **1) Charge #1 Discrimination**<br>**2) Charge #2 Retaliation** | **EEOC** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.12. | **Facility Response Plan (FRP) Review** | **Government Audit/Investigation/Review** | **EPA, Region II, Edison, NJ** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.13. | **303 Order**<br>**CAA-02/2021-1003** | **Administrative Proceeding, Order to Shut Down, Civil Action to comply with Order, Stipulation, Independent Audit** | **USDC, Virgin Islands** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.14. | **United States, et al. v. Limetree Bay Refining, LLC, et al.**<br>**1:21-cv-00264** | **Court action/PRI Consent Decree** | **USDC, Virgin Islands** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.15. | **CAA 114 Information Requests**<br>**CAA-02-2021-1458 and 1461** | **Information Requests, seeking information about potential non-compliance with the CAA** | **EPA, Region II, New York, NY** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.16. | **CAA 114 Informatino Request**<br>**CAA-02-2021-1462** | **Information "Request" imposing monitoring requirements** | **EPA, Region II, New York NY** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.17. | **First Records and Information Request, June 10, 2021** | **Information Request relating to Feb 4, 2021 flaring incident** | **U.S. Chemcial Safety & Hazard Investigation Board Office of Investigations 1750 Pennsylvania Ave. NW, Suite 910 Washington, DC 20006** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.18. | **In the matter of Limetree Bay Terminals, LLC - Notice of Violation**<br>**CAA-02-2021-1307** | **Notice of Violation, asserting violation of requirement to operate monitoring stations** | **EPA, Region II, New York, NY** | ■ Pending<br>☐ On appeal<br>☐ Concluded |

**8.   Assignments and receivership**
List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

Debtor    **Limetree Bay Refining, LLC**                                      Case number *(if known)*  **21-32354**

■ None

| **Part 4:** | **Certain Gifts and Charitable Contributions** |

9.  **List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☐ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|
| 9.1. **University of the Virgin Islands** | **cash** | | **$40,000.00** |
| Recipients relationship to debtor | | | |

| **Part 5:** | **Certain Losses** |

10. **All losses from fire, theft, or other casualty within 1 year before filing this case.**

■ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br><br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br><br>List unpaid claims on Official Form 106A/B *(Schedule A/B: Assets – Real and Personal Property).* | Dates of loss | Value of property lost |
|---|---|---|---|

| **Part 6:** | **Certain Payments or Transfers** |

11. **Payments related to bankruptcy**
    List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☐ None.

| Who was paid or who received the transfer?<br>Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|
| 11.1. **Baker & Hostetler LLP<br>200 S. Orange Avenue<br>Suite 2300<br>Orlando, FL 32801** | **(payments made on behalf of all debtors)** | **6/18/21<br>7/2/21<br>7/8/21<br>7/12/21** | **$1,169,191.15** |
| Email or website address | | | |
| Who made the payment, if not debtor? | | | |

Debtor    **Limetree Bay Refining, LLC**                                    Case number *(if known)*  **21-32354**

| | Who was paid or who received the transfer? Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|---|
| 11.2. | **B. Riley Advisory Services 4400 Post Oak Parkway Suite 1400 Houston, TX 77027** | | **6/18/21 7/7/21** | **$400,000.00** |
| | Email or website address | | | |
| | Who made the payment, if not debtor? | | | |

12. **Self-settled trusts of which the debtor is a beneficiary**
List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

■ None.

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

13. **Transfers not already listed on this statement**
List any transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

■ None.

| Who received transfer? Address | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|

| Part 7: | Previous Locations |
|---|---|

14. **Previous addresses**
List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

■ Does not apply

| Address | Dates of occupancy From-To |
|---|---|

| Part 8: | Health Care Bankruptcies |
|---|---|

15. **Health Care bankruptcies**
Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

■ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|

| Part 9: | Personally Identifiable Information |
|---|---|

| Debtor | Limetree Bay Refining, LLC | Case number *(if known)* 21-32354 |
|---|---|---|

16. **Does the debtor collect and retain personally identifiable information of customers?**

☑ No.
☐ Yes. State the nature of the information collected and retained.

17. **Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.
☐ Yes. Does the debtor serve as plan administrator?

**Part 10:   Certain Financial Accounts, Safe Deposit Boxes, and Storage Units**

18. **Closed financial accounts**
Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| Financial Institution name and Address | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

19. **Safe deposit boxes**
List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository institution name and address | Names of anyone with access to it Address | Description of the contents | Do you still have it? |
|---|---|---|---|

20. **Off-premises storage**
List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Do you still have it? |
|---|---|---|---|

**Part 11:   Property the Debtor Holds or Controls That the Debtor Does Not Own**

21. **Property held for another**
List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None

**Part 12:   Details About Environment Information**

For the purpose of Part 12, the following definitions apply:
*Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

*Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

*Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

| Debtor | Limetree Bay Refining, LLC | Case number *(if known)* 21-32354 |
|---|---|---|

Report all notices, releases, and proceedings known, regardless of when they occurred.

22. **Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☑ No.
☐ Yes. Provide details below.

| Case title<br>Case number | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|

23. **Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☐ No.
☑ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| Limetree Bay Refining LLC | EPA | Clean Air Act Emergency Order | 5/24/2021 |

24. **Has the debtor notified any governmental unit of any release of hazardous material?**

☐ No.
☑ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| Limetree Bay Refining, LLC<br>#1 Estate Hope<br>Christiansted, VI 00820-5652 | | Incident at Flare Unit #8 | 2/4/2021 |
| Limetree Bay Refining, LLC<br>1 Estate Hope<br>Christiansted, VI 00820 | | #3 Vacuum Tower Incident | 12/7/2020 |

**Part 13:** Details About the Debtor's Business or Connections to Any Business

25. **Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☐ None

| Business name address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| 25.1. Limetree Bay Refining Operating, LLC<br>1 Estate Hope<br>Christiansted, VI 00820 | oil refinery | EIN: 66-0899067<br><br>From-To |
| 25.2. Limetree Bay Refining Markting, LLC<br>1 Estate Hope<br>Christiansted, VI 00820 | oil refinery | EIN: 66-0899222<br><br>From-To |

26. **Books, records, and financial statements**
26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

| Debtor | **Limetree Bay Refining, LLC** | Case number *(if known)* | **21-32354** |
|---|---|---|---|

■ None

| Name and address | Date of service From-To |
|---|---|
| | |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and address | Date of service From-To |
|---|---|
| 26b.1.   **Deloitte & Touche** | **2016-2021** |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

■ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

■ None

| Name and address |
|---|
| |

**27. Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

■ No
☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|
| | | |

**28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Jeffrey Rinker** | | **President** | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Stephan Tompsett** | | **CFO** | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Mark Chavez** | | **General Counsel/Secretary** | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Ryan Pederson** | | **VP, Commercial** | |

Debtor   **Limetree Bay Refining, LLC**                                        Case number *(if known)* **21-32354**

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Rick Caplan** | | **Manager** | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **R. Blair Thomas** | | **Manager** | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Limetree Bay Refining Holdings II, LLCC** | | **Sole Member** | **100%** |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Mark Shapiro** | **B. Riley Advisory Services 4400 Post Oak Parkway Suite 1400 Houston, TX 77027** | **Chief Restructuring Officer** | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Steven J. Pully** | **4564 Meadowwood Road Dallas, TX 75220** | **Independent Member** | |

29. Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?

☐ No
☑ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Brian Boland** | | **Manager, President, CEO** | |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Brian Lever** | | **President, CEO** | |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Daniel R. Revers** | | **Manager, Vice-President, President** | |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **John F. Erhard** | | **Manager, Vice-President** | |

Debtor   **Limetree Bay Refining, LLC**                                             Case number *(if known)*   **21-32354**

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Kevin Crosby** | | **Manager** | |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Adi Blum** | | **Manager** | |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Darius Sweet** | | **Manager** | |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Robert Haugen** | | **Manager** | |

30. **Payments, distributions, or withdrawals credited or given to insiders**
    Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

    ☐   No
    ☑   Yes. Identify below.

| | Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|---|
| 30.1. | **Steven J. Pully**<br>**4564 Meadowwood Road**<br>**Dallas, TX 75220** | **$50,000** | **6/30/2021** | **independent member stipend** |
| | Relationship to debtor<br>**Independent Member** | | | |
| 30.2. | **Forgan McIntosh** | **$7,250** | **6/4/2021** | **services from 5/16/21-5/27/21** |
| | Relationship to debtor<br>**Former LBS CFO** | | | |
| 30.3. | **Jeffrey Rinker** | **$100,000** | **11/20/20** | **Signing Bonus** |
| | Relationship to debtor<br>**President** | | | |

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

    ☑   No
    ☐   Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|
| | |

Debtor   **Limetree Bay Refining, LLC**           Case number *(if known)*  **21-32354**

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

- ■ No
- ☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the parent corporation |
|---|---|
| | |

**Part 14:**  **Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **September  7, 2021**

**/s/ Mark Shapiro**                              **Mark Shapiro**
Signature of individual signing on behalf of the debtor         Printed name

Position or relationship to debtor    **Chief Restructuring Officer**

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**

■ No
☐ Yes

<div align="center">

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

</div>

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*,[1]** | **CASE NO.: 21-32351** |
| **Debtors.** | **(Jointly Administered)** |

<div align="center">

## DISCLAIMER REGARDING DEBTORS' SCHEDULES AND SOFA

### General Disclaimer

</div>

1.      The Schedules and the SOFA are unaudited and subject to potential adjustment.  In preparing the Schedules and the SOFA, the CRO and his professionals relied on financial data derived from the Debtors' books and records that was available at the time of preparation.  The CRO and his professionals have made reasonable efforts to ensure that the Schedules and the SOFA are as accurate and complete as possible under the circumstances; however, subsequent information or discovery may result in changes to the Schedules and SOFA and errors or omissions may exist.

2.      The CRO reserves all rights to amend or supplement the Schedules and SOFA from time to time, in all respects, as may be necessary or appropriate, including the right to dispute or otherwise assert offsets or defenses to any claim reflected on the Schedules and SOFA as to any amount, liability, classification, identity of debtor or to otherwise subsequently designate any claim as "disputed", "contingent", or "unliquidated". Furthermore, nothing

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC.(1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

contained in the Schedules and SOFA shall constitute a waiver of any of the CRO's rights or

an admission with respect to these chapter 11 cases, including any issues involving objections

to claims, substantive consolidation, defenses, affirmative claims against third parties or rights

against third parties, other issues that typically arise under the Bankruptcy Code.

## **Notes on Schedules of Assets and Liabilities**

## **Method of Valuation**

3.      Unless otherwise noted, the carrying value on the Debtors' books and records

(net book value) as of the Petition Date, rather than the current market values, of the Debtors'

interest in the property and of the Debtors' liabilities, is reflected on the Debtors' Schedules and

SOFA.  The net book value may not correspond to market value, or liquidation value, of which

may be either higher or lower.

Dated: September 7, 2021                    **BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
So. Dist. Fed ID 903144
**Jimmy D. Parrish, Esq.**
So. Dist. Fed ID 2687598
200 S. Orange Avenue
Suite 2300
Orlando, FL 32801
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
E-mail: egreen@bakerlaw.com
E-mail: jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com
*(Admitted Pro Hac Vice)*

*Proposed Counsel for the Debtors and Debtors in Possession*

**Fill in this information to identify the case:**

Debtor name **Limetree Bay Refining Operating, LLC**

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF TEXAS

Case number (if known) **21-32355**

☐ Check if this is an amended filing

## Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals

12/15

---

| Part 1: | Summary of Assets |
| --- | --- |

1. **Schedule A/B: Assets-Real and Personal Property** (Official Form 206A/B)

    **1a. Real property:**
    Copy line 88 from *Schedule A/B*............................................................... $ 0.00

    **1b. Total personal property:**
    Copy line 91A from *Schedule A/B*............................................................. $ 95,525,267.51

    **1c. Total of all property:**
    Copy line 92 from *Schedule A/B*............................................................... $ 95,525,267.51

---

| Part 2: | Summary of Liabilities |
| --- | --- |

2. **Schedule D: Creditors Who Have Claims Secured by Property** (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*.................................... $ 1,056,353,788.97

3. **Schedule E/F: Creditors Who Have Unsecured Claims** (Official Form 206E/F)

    **3a. Total claim amounts of priority unsecured claims:**
    Copy the total claims from Part 1 from line 5a of *Schedule E/F*............................................... $ 0.00

    **3b. Total amount of claims of nonpriority amount of unsecured claims:**
    Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*................................................. +$ 106,538,704.91

4. Total liabilities .........................................................................................
   Lines 2 + 3a + 3b

   $ 1,162,892,493.88

---

**Fill in this information to identify the case:**

Debtor name **Limetree Bay Refining Operating, LLC**

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF TEXAS

Case number (if known) **21-32355**

☐ Check if this is an
   amended filing

# Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property            12/15

**Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).**

**Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.**

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

1. **Does the debtor have any cash or cash equivalents?**

☐ No.  Go to Part 2.
■ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | | | Current value of debtor's interest |
|---|---|---|---|

3.    **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*
      Name of institution (bank or brokerage firm)        Type of account        Last 4 digits of account number

| | Name of institution | Type of account | Last 4 digits | Current value |
|---|---|---|---|---|
| 3.1. | **Oriental Bank** | **Operating Account** | **0215** | $878.15 |
| 3.2. | **Oriental Bank** | **Payroll Account** | **0216** | $20,084.21 |

4.    **Other cash equivalents** *(Identify all)*

5.    **Total of Part 1.**                                                                                    $20,962.36
      Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

| Part 2: | Deposits and Prepayments |
|---|---|

6. **Does the debtor have any deposits or prepayments?**

■ No.  Go to Part 3.
☐ Yes Fill in the information below.

| Part 3: | Accounts receivable |
|---|---|

10. **Does the debtor have any accounts receivable?**

☐ No.  Go to Part 4.
■ Yes Fill in the information below.

11.    **Accounts receivable**

Debtor    **Limetree Bay Refining Operating, LLC**                     Case number *(If known)* **21-32355**
          Name

11a. 90 days old or less:        **2,134,260.14**    -         **0.00**  = ....        **$2,134,260.14**
                                 face amount              doubtful or uncollectible accounts

11b. Over 90 days old:        **93,370,045.01**    -         **0.00**  = ....       **$93,370,045.01**
                              face amount              doubtful or uncollectible accounts

12.    **Total of Part 3.**                                                      **$95,504,305.15**
       Current value on lines 11a + 11b = line 12.  Copy the total to line 82.

| Part 4: | **Investments** |
|---|---|

**13. Does the debtor own any investments?**

■ No.  Go to Part 5.
☐ Yes Fill in the information below.

| Part 5: | **Inventory, excluding agriculture assets** |
|---|---|

**18. Does the debtor own any inventory (excluding agriculture assets)?**

■ No.  Go to Part 6.
☐ Yes Fill in the information below.

| Part 6: | **Farming and fishing-related assets (other than titled motor vehicles and land)** |
|---|---|

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No.  Go to Part 7.
☐ Yes Fill in the information below.

| Part 7: | **Office furniture, fixtures, and equipment; and collectibles** |
|---|---|

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

■ No.  Go to Part 8.
☐ Yes Fill in the information below.

| Part 8: | **Machinery, equipment, and vehicles** |
|---|---|

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

■ No.  Go to Part 9.
☐ Yes Fill in the information below.

| Part 9: | **Real property** |
|---|---|

**54. Does the debtor own or lease any real property?**

■ No.  Go to Part 10.
☐ Yes Fill in the information below.

| Part 10: | **Intangibles and intellectual property** |
|---|---|

**59. Does the debtor have any interests in intangibles or intellectual property?**

■ No.  Go to Part 11.
☐ Yes Fill in the information below.

Official Form 206A/B                    Schedule A/B Assets - Real and Personal Property                    page 2

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number *(If known)* **21-32355** |
|---|---|---|
| | Name | |

| Part 11: | All other assets |
|---|---|

70. **Does the debtor own any other assets that have not yet been reported on this form?**
   Include all interests in executory contracts and unexpired leases not previously reported on this form.

   ■ No.  Go to Part 12.
   ☐ Yes Fill in the information below.

Debtor   **Limetree Bay Refining Operating, LLC**
_____   Case number *(If known)*  **21-32355**
Name

| Part 12: | Summary |
|---|---|

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80.  **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $20,962.36 | |
| 81.  **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82.  **Accounts receivable.** *Copy line 12, Part 3.* | $95,504,305.15 | |
| 83.  **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84.  **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85.  **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86.  **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87.  **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88.  **Real property.** *Copy line 56, Part 9.....................................................>* | | $0.00 |
| 89.  **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90.  **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91.  **Total.** Add lines 80 through 90 for each column | $95,525,267.51  + 91b. | $0.00 |
| 92.  **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $95,525,267.51 |

**Fill in this information to identify the case:**

Debtor name: **Limetree Bay Refining Operating, LLC**

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF TEXAS

Case number (if known): **21-32355**

☐ Check if this is an amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☐ Yes. Fill in all of the information below.

**Part 1:** List Creditors Who Have Secured Claims

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** |
|---|---|---|

| 2.1 | **Goldman Sachs Bank USA** | | |
|---|---|---|---|

Creditor's Name

**Describe debtor's property that is subject to a lien**

**Certain accounts, chattel paper, deposit accounts, documents, equipment, fixtures, general intangibles, instruments, intellectual property, investment property, letters of credit, comercial tort claims...of any Senior Lenders Collateral**

Amount of claim: **$50,320,833.33**    Value of collateral: **Unknown**

**as Administrative Agent
200 West Street
New York, NY 10282**

Creditor's mailing address

**Describe the lien**

**Revolver Debt Guarantee**

**Is the creditor an insider or related party?**

■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**

☐ No

**Date debt was incurred**

■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**

■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

■ Contingent
■ Unliquidated
☐ Disputed

---

| 2.2 | **J. Aron & Company LLC** | | |
|---|---|---|---|

Creditor's Name

**Describe debtor's property that is subject to a lien**

**Accounts, accounts receivable, hydrocarbons and other inventory, deposit accounts, instruments, chattel paper, documents, tax refunds, commercial tort claims, and replacement proceeds of the J. Aron Collateral**

Amount of claim: **$221,952,054.00**    Value of collateral: **Unknown**

**200 West Street
New York, NY 10282**

Creditor's mailing address

**Describe the lien**

**Estimate Safe Harbor Agreement Guarantee**

**Is the creditor an insider or related party?**

■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**

☐ No

**Date debt was incurred**

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (if known) | **21-32355** |
|---|---|---|---|
| | Name | | |

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

| Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is:<br>Check all that apply |
|---|---|
| ■ No | ■ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ■ Unliquidated |
| | ☐ Disputed |

---

| 2.3 | **J. Aron & Company LLC** | Describe debtor's property that is subject to a lien | **$25,087,659.68** | **Unknown** |
|---|---|---|---|---|

Creditor's Name

**Accounts, accounts receivable, hydrocarbons and other inventory, deposit accounts, instruments, chattel paper, documents, tax refunds, commercial tort claims, and replacement proceeds of the J. Aron Collateral**

**200 West Street**
**New York, NY 10282**

Creditor's mailing address

Describe the lien

**Term Debt Guarantee**

Is the creditor an insider or related party?

■ No

Creditor's email address, if known

☐ Yes

Is anyone else liable on this claim?

**Date debt was incurred**

☐ No

■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

| Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is:<br>Check all that apply |
|---|---|
| ■ No | ■ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ■ Unliquidated |
| | ☐ Disputed |

---

| 2.4 | **Wilmington Trust, N.A.** | Describe debtor's property that is subject to a lien | **$758,993,241.96** | **Unknown** |
|---|---|---|---|---|

Creditor's Name

**Certain accounts, chattel paper, deposit accounts, documents, equipment, fixtures, general intangibles, instruments, intellectual property, investment property, letters of credit, commercial tort claims....of any Senior Lenders Collateral**

**1100 N. Market Street**
**Wilmington, DE 19890**

Creditor's mailing address

Describe the lien

**Term Debt Guarantee**

Is the creditor an insider or related party?

■ No

Creditor's email address, if known

☐ Yes

Is anyone else liable on this claim?

**Date debt was incurred**

☐ No

■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

| Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is:<br>Check all that apply |
|---|---|
| ■ No | ■ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ■ Unliquidated |
| | ☐ Disputed |

---

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (if known) | **21-32355** |
|---|---|---|---|
| | Name | | |

| | | | |
|---|---|---|---|
| 3. | **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.** | | **$1,056,353,7 88.97** |

---

**Part 2:**   List Others to Be Notified for a Debt Already Listed in Part 1

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name  and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| | | |

---

Fill in this information to identify the case:

| | |
|---|---|
| Debtor name | **Limetree Bay Refining Operating, LLC** |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF TEXAS |
| Case number (if known) | **21-32355** |

☐ Check if this is an
amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                                12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

### Part 1:    List All Creditors with PRIORITY Unsecured Claims

1.  **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

☐ No. Go to Part 2.

■ Yes. Go to line 2.

2.  **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

| | | Total claim | Priority amount |
|---|---|---|---|
| **2.1** Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |

**2.1**

Priority creditor's name and mailing address
**Aaron D. Watson**
████████████████████

Date or dates debt was incurred

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Is the claim subject to offset?
■ No
☐ Yes

Total claim: **Unknown**      Priority amount: **Unknown**

**2.2**

Priority creditor's name and mailing address
**Addisha C. Williams**
████████████████████

Date or dates debt was incurred

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Is the claim subject to offset?
■ No
☐ Yes

Total claim: **Unknown**      Priority amount: **Unknown**

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (*if known*) | **21-32355** |
|---|---|---|---|
| | Name | | |

| 2.3 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Akeel St Jean**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.4 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Al Jason Herman**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.5 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Alan H. Yarosh**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.6 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Albert Monero**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| Debtor | Limetree Bay Refining Operating, LLC | Case number (if known) | 21-32355 |
|---|---|---|---|
| | Name | | |

| 2.7 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Albin U. Alleyne**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

| 2.8 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Alejandro Guzman**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

| 2.9 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Alex Liburd**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

| 2.10 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Altoglacio Straun**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

| Debtor | Limetree Bay Refining Operating, LLC | Case number (if known) | 21-32355 |
|---|---|---|---|
| | Name | | |

| 2.11 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Alvin Clement**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted** |

| Last 4 digits of account number | Is the claim subject to offset? |
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No
☐ Yes |

| 2.12 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Aminah H. Williams**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted** |

| Last 4 digits of account number | Is the claim subject to offset? |
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No
☐ Yes |

| 2.13 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Amy Augustin-Arthurton**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted** |

| Last 4 digits of account number | Is the claim subject to offset? |
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No
☐ Yes |

| 2.14 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Andre Barthlett**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted** |

| Last 4 digits of account number | Is the claim subject to offset? |
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No
☐ Yes |

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (*if known*) | **21-32355** |
| --- | --- | --- | --- |
| | Name | | |

| 2.15 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
| --- | --- | --- | --- | --- |

**2.15** Priority creditor's name and mailing address
**Angel M. Bermudez Jr.**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number
Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

**Unknown**   **Unknown**

---

**2.16** Priority creditor's name and mailing address
**Anh Tran**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number
Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

**Unknown**   **Unknown**

---

**2.17** Priority creditor's name and mailing address
**Arlene A. Gatti**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number
Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

**Unknown**   **Unknown**

---

**2.18** Priority creditor's name and mailing address
**Arnold Dickson**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number
Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

**Unknown**   **Unknown**

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (*if known*) | **21-32355** |

Name

---

| 2.19 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |

**Ashley D. Scotland**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.20 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |

**Ashli Iles**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.21 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |

**Asim Shillingford**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.22 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |

**Bansraj Mohansingh**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Limetree Bay Refining Operating, LLC** | | Case number (*if known*) | **21-32355** |
|---|---|---|---|---|
| | Name | | | |

| 2.23 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Barry D. Crowder**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| | **Unpaid wages and/or vacation time which may be asserted** |

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.24 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Benjamin Sanchez**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| | **Unpaid wages and/or vacation time which may be asserted** |

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.25 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Bernadette M. Nestor**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| | **Unpaid wages and/or vacation time which may be asserted** |

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.26 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Bernard Joseph**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| | **Unpaid wages and/or vacation time which may be asserted** |

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (*if known*) | **21-32355** |
|--------|------------------------------------------|--------------------------|--------------|
| | Name | | |

| 2.27 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|------|--------------------------------------------|--------------------------|-------------|

**2.27** | **Bevern Sage**

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

**2.28** | Priority creditor's name and mailing address

**Bobby Ferris**

As of the petition filing date, the claim is:
*Check all that apply.*

**Unknown**   **Unknown**

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

**2.29** | Priority creditor's name and mailing address

**Brent DeLay**

As of the petition filing date, the claim is:
*Check all that apply.*

**Unknown**   **Unknown**

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

**2.30** | Priority creditor's name and mailing address

**Brent Jay Woodland**

As of the petition filing date, the claim is:
*Check all that apply.*

**Unknown**   **Unknown**

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

| Debtor | Limetree Bay Refining Operating, LLC | Case number (if known) | 21-32355 |
|---|---|---|---|

Name

---

**2.31** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Brian Alphonse**

<span style="background:black">████████████████</span>

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

**2.32** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Brian Dore**

<span style="background:black">████████████████</span>

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

**2.33** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Brian J. Williams**

<span style="background:black">████████████████</span>

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

**2.34** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Brison Lundgren**

<span style="background:black">████████████████</span>

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (if known) | **21-32355** |
|---|---|---|---|
| | Name | | |

---

| 2.35 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|
| | **Bruce Bowden** | ☐ Contingent | | |
| | ▓▓▓▓▓▓▓▓▓▓ | ■ Unliquidated | | |
| | | ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No<br>☐ Yes | | |

---

| 2.36 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|
| | **Bryan J. Peterson** | ☐ Contingent | | |
| | ▓▓▓▓▓▓▓▓▓▓ | ■ Unliquidated | | |
| | | ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No<br>☐ Yes | | |

---

| 2.37 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|
| | **Carlos Figueroa** | ☐ Contingent | | |
| | ▓▓▓▓▓▓▓▓▓▓ | ■ Unliquidated | | |
| | | ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No<br>☐ Yes | | |

---

| 2.38 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|
| | **Carlos Ramos** | ☐ Contingent | | |
| | ▓▓▓▓▓▓▓▓▓▓ | ■ Unliquidated | | |
| | | ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No<br>☐ Yes | | |

---

| Debtor | Limetree Bay Refining Operating, LLC | Case number (if known) | 21-32355 |
|---|---|---|---|

Name

| 2.39 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Carlyle Maynard**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.40 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Casimir A. Lorkowski**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.41 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Catherine Blosser**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.42 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Catherine Elizee**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (*if known*) | **21-32355** |
|--------|------------------------------------------|--------------------------|--------------|
| | Name | | |

| 2.43 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |

**Cathriellah Matthew**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.44 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |

**Cecil Sweeney**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.45 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |

**Cedric Patton**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.46 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |

**Charles Lenau**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (*if known*) | **21-32355** |
|---|---|---|---|
| | Name | | |

| 2.47 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Che Dennis Smith**

Check all that apply.
☐ Contingent
☒ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
☒ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

| 2.48 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Christine Goodrich**

Check all that apply.
☐ Contingent
☒ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
☒ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

| 2.49 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Christopher Clifton**

Check all that apply.
☐ Contingent
☒ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
☒ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

| 2.50 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Christopher Thomas**

Check all that apply.
☐ Contingent
☒ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
☒ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (*if known*) | **21-32355** |
|---|---|---|---|
| | Name | | |

| 2.51 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Clarence Brown**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| 2.52 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Clarence Jarvis**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| 2.53 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Clement Languedoc**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| 2.54 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Colin Hector**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (*if known*) | **21-32355** |
|---|---|---|---|
| | Name | | |

| 2.55 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Coral Megahy**

███████████████

*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
☑ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.56 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Craig P. Hebert**

███████████████████

*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
☑ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.57 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Craig T. Miller**

███████████████

*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
☑ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.58 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Curtis T. Green**

███████████████

*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
☑ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (*if known*) | **21-32355** |
|---|---|---|---|
| | Name | | |

---

**2.59** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Cyril Techeira**

Name

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

**2.60** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**D'Quane Camacho**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

**2.61** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Dale Williams**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

**2.62** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Damian Poleon**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| Debtor | Limetree Bay Refining Operating, LLC | Case number *(if known)* | 21-32355 |
|---|---|---|---|

Name

---

**2.63** | Priority creditor's name and mailing address

**Dan A. Jean-Baptiste**

[REDACTED]

As of the petition filing date, the claim is:
*Check all that apply.*

☐ Contingent
☑ Unliquidated
☐ Disputed

**Unknown**     **Unknown**

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☑ No
☐ Yes

---

**2.64** | Priority creditor's name and mailing address

**Dana Pascal**

[REDACTED]

As of the petition filing date, the claim is:
*Check all that apply.*

☐ Contingent
☑ Unliquidated
☐ Disputed

**Unknown**     **Unknown**

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☑ No
☐ Yes

---

**2.65** | Priority creditor's name and mailing address

**Daniel Paul Lloyd**

[REDACTED]

As of the petition filing date, the claim is:
*Check all that apply.*

☐ Contingent
☑ Unliquidated
☐ Disputed

**Unknown**     **Unknown**

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☑ No
☐ Yes

---

**2.66** | Priority creditor's name and mailing address

**Danley Denbow**

[REDACTED]

As of the petition filing date, the claim is:
*Check all that apply.*

☐ Contingent
☑ Unliquidated
☐ Disputed

**Unknown**     **Unknown**

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☑ No
☐ Yes

---

| Debtor | **Limetree Bay Refining Operating, LLC** | | Case number *(if known)* | **21-32355** |
| --- | --- | --- | --- | --- |
| | Name | | | |

| 2.67 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |
| --- | --- | --- | --- | --- |

**Danna Edwin**

▢ Contingent
■ Unliquidated
▢ Disputed

| Date or dates debt was incurred | Basis for the claim: **Unpaid wages and/or vacation time which may be asserted** |
| --- | --- |

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
▢ Yes

---

| 2.68 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |
| --- | --- | --- | --- | --- |

**Danny Rivera Rivera**

▢ Contingent
■ Unliquidated
▢ Disputed

| Date or dates debt was incurred | Basis for the claim: **Unpaid wages and/or vacation time which may be asserted** |
| --- | --- |

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
▢ Yes

---

| 2.69 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |
| --- | --- | --- | --- | --- |

**Daria Stevens**

▢ Contingent
■ Unliquidated
▢ Disputed

| Date or dates debt was incurred | Basis for the claim: **Unpaid wages and/or vacation time which may be asserted** |
| --- | --- |

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
▢ Yes

---

| 2.70 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |
| --- | --- | --- | --- | --- |

**Darnell Rutherford**

▢ Contingent
■ Unliquidated
▢ Disputed

| Date or dates debt was incurred | Basis for the claim: **Unpaid wages and/or vacation time which may be asserted** |
| --- | --- |

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
▢ Yes

---

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (*if known*) | **21-32355** |
|---|---|---|---|
| | Name | | |

| 2.71 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|
| | **Darryl Ogeer** | ☐ Contingent | | |
| | ▉▉▉▉▉▉▉▉▉▉ | ■ Unliquidated | | |
| | | ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No<br>☐ Yes | | |

| 2.72 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|
| | **David Allen Fleming** | ☐ Contingent | | |
| | ▉▉▉▉▉▉▉▉▉▉ | ■ Unliquidated | | |
| | | ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No<br>☐ Yes | | |

| 2.73 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|
| | **David Long** | ☐ Contingent | | |
| | ▉▉▉▉▉▉▉▉ | ■ Unliquidated | | |
| | | ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No<br>☐ Yes | | |

| 2.74 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|
| | **David R. Lara** | ☐ Contingent | | |
| | ▉▉▉▉▉▉▉▉ | ■ Unliquidated | | |
| | | ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No<br>☐ Yes | | |

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (*if known*) | **21-32355** |
|---|---|---|---|
| | Name | | |

| 2.75 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|

**Dean Bolejack**

█████████████████

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| | **Unpaid wages and/or vacation time which may be asserted** |

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.76 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|

**Demaine Wilson**

█████████████████

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| | **Unpaid wages and/or vacation time which may be asserted** |

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.77 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|

**Denico Gonzalez**

██████████████

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| | **Unpaid wages and/or vacation time which may be asserted** |

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.78 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|

**Deshaun A. Garvey**

██████████████

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| | **Unpaid wages and/or vacation time which may be asserted** |

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (*if known*) | **21-32355** |
|---|---|---|---|
| | Name | | |

---

**2.79** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**
**Dino G. Htira**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

**2.80** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**
**Dino G. Hurtado**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

**2.81** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**
**Donte Richards**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

**2.82** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**
**Dorian Matthew**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | Limetree Bay Refining Operating, LLC | Case number (if known) | 21-32355 |
|---|---|---|---|
| | Name | | |

| 2.83 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|
| | **Douglas Richard Myers** | *Check all that apply.* | | |
| | | ☐ Contingent | | |
| | | ■ Unliquidated | | |
| | | ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim: **Unpaid wages and/or vacation time which may be asserted** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No ☐ Yes | | |

| 2.84 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|
| | **Duane M. Sydney** | *Check all that apply.* | | |
| | | ☐ Contingent | | |
| | | ■ Unliquidated | | |
| | | ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim: **Unpaid wages and/or vacation time which may be asserted** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No ☐ Yes | | |

| 2.85 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|
| | **Duffy R. Chisholm** | *Check all that apply.* | | |
| | | ☐ Contingent | | |
| | | ■ Unliquidated | | |
| | | ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim: **Unpaid wages and/or vacation time which may be asserted** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No ☐ Yes | | |

| 2.86 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|
| | **Dustin L. Dunbar** | *Check all that apply.* | | |
| | | ☐ Contingent | | |
| | | ■ Unliquidated | | |
| | | ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim: **Unpaid wages and/or vacation time which may be asserted** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No ☐ Yes | | |

| Debtor | Limetree Bay Refining Operating, LLC | Case number (if known) | 21-32355 |
|---|---|---|---|
| | Name | | |

| 2.87 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Dylisha Peter**

Check all that apply.
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

| 2.88 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Earl Charles**

Check all that apply.
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

| 2.89 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Earl Dawson Jr.**

Check all that apply.
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

| 2.90 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Earl Worthington**

Check all that apply.
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (if known) | **21-32355** |
|---|---|---|---|
| | Name | | |

| 2.91 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |

**Eboni Williams**

Check all that apply.
- ☐ Contingent
- ☒ Unliquidated
- ☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
- ☒ No
- ☐ Yes

---

| 2.92 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |

**Elias Bodley**

Check all that apply.
- ☐ Contingent
- ☒ Unliquidated
- ☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
- ☒ No
- ☐ Yes

---

| 2.93 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |

**Eric Saavedra**

Check all that apply.
- ☐ Contingent
- ☒ Unliquidated
- ☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
- ☒ No
- ☐ Yes

---

| 2.94 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |

**Erica C. Williams**

Check all that apply.
- ☐ Contingent
- ☒ Unliquidated
- ☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
- ☒ No
- ☐ Yes

---

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (*if known*) | **21-32355** |
|---|---|---|---|
| | Name | | |

| 2.95 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Erica M. Parsons**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| 2.96 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Erick Quiroga**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| 2.97 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Ernest Benjamin**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| 2.98 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Ernest Jalim Jr.**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (if known) | **21-32355** |
|---|---|---|---|
| | Name | | |

| 2.99 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Ernst P. Schuster**

Check all that apply.
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.100 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Eugene Freeman**

Check all that apply.
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.101 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Everett Kendel Henry**

Check all that apply.
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.102 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Felipe Celaya**

Check all that apply.
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (*if known*) | **21-32355** |
|---|---|---|---|
| | Name | | |

---

**2.103** | Priority creditor's name and mailing address

**Franklin G. Quow**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

**Unknown**   **Unknown**

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

**2.104** | Priority creditor's name and mailing address

**Fred Flint**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

**Unknown**   **Unknown**

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

**2.105** | Priority creditor's name and mailing address

**Gaulbert Evans**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

**Unknown**   **Unknown**

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

**2.106** | Priority creditor's name and mailing address

**George Innocent**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

**Unknown**   **Unknown**

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| Debtor | **Limetree Bay Refining Operating, LLC** | | Case number (if known) | **21-32355** |
| --- | --- | --- | --- | --- |
| | Name | | | |

| 2.107 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
| --- | --- | --- | --- | --- |

**George M. Williams Jr.**

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.108 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
| --- | --- | --- | --- | --- |

**George N. John, Sr.**

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.109 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
| --- | --- | --- | --- | --- |

**George N. Southwell Jr.**

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.110 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
| --- | --- | --- | --- | --- |

**Gerard M. Nelson**

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Limetree Bay Refining Operating, LLC | Case number (if known) | 21-32355 |
|---|---|---|---|

Name

| 2.111 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Gregory Bodley**

Check all that apply.
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.112 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Gregory E. Richelieu**

Check all that apply.
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.113 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Irwin G. Sydney**

Check all that apply.
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.114 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Ivor Pelle**

Check all that apply.
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (*if known*) | **21-32355** |
|---|---|---|---|
| | Name | | |

---

| 2.115 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Janelle Antonia McIntosh**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (**4**)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.116 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Jeffrey Frazier**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (**4**)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.117 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Jeffrey R Jones**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (**4**)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.118 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Jelani Prince**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (**4**)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Limetree Bay Refining Operating, LLC | Case number (if known) | 21-32355 |
|---|---|---|---|
| | Name | | |

---

**2.119** | Priority creditor's name and mailing address

**Jeremy R. Mitchell**

| | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.120** | Priority creditor's name and mailing address

**Jessica Herman**

| | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.121** | Priority creditor's name and mailing address

**Joeanne Christopher**

| | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.122** | Priority creditor's name and mailing address

**John A. George**

| | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Limetree Bay Refining Operating, LLC | | Case number (if known) | 21-32355 |
|---|---|---|---|---|

Name

---

**2.123** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**John Baumgartner**

███████████████████

Check all that apply.
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

---

**2.124** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**John F. Peter**

██████████████

Check all that apply.
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

---

**2.125** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**John G. Hebert**

███████████████████

Check all that apply.
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

---

**2.126** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Joneilia Johnson**

██████████████

Check all that apply.
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

---

| Debtor | **Limetree Bay Refining Operating, LLC** | | Case number *(if known)* | **21-32355** |
|---|---|---|---|---|

Name

---

**2.127** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Jorge Ferrer-Maldonado**

Name

*Check all that apply.*
- ☐ Contingent
- ■ Unliquidated
- ☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
- ■ No
- ☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

**2.128** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Jose Rodriguez**

*Check all that apply.*
- ☐ Contingent
- ■ Unliquidated
- ☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
- ■ No
- ☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

**2.129** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Jose Rodriguez III**

*Check all that apply.*
- ☐ Contingent
- ■ Unliquidated
- ☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
- ■ No
- ☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

**2.130** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Joseph Daniel**

*Check all that apply.*
- ☐ Contingent
- ■ Unliquidated
- ☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
- ■ No
- ☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (*if known*) | **21-32355** |
|---|---|---|---|
| | Name | | |

| 2.131 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|

**Joseph N. Hodge**

☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** |
|---|---|

| Last 4 digits of account number | Is the claim subject to offset? |
|---|---|
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No<br>☐ Yes |

---

| 2.132 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|

**Joyce Wakefield**

☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** |
|---|---|

| Last 4 digits of account number | Is the claim subject to offset? |
|---|---|
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No<br>☐ Yes |

---

| 2.133 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|

**Juancito A. Gario**

☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** |
|---|---|

| Last 4 digits of account number | Is the claim subject to offset? |
|---|---|
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No<br>☐ Yes |

---

| 2.134 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|

**Jude Bannis**

☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** |
|---|---|

| Last 4 digits of account number | Is the claim subject to offset? |
|---|---|
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No<br>☐ Yes |

| Debtor | Limetree Bay Refining Operating, LLC | | Case number (if known) | 21-32355 |
| --- | --- | --- | --- | --- |
| | Name | | | |

| 2.135 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>Check all that apply. | **Unknown** | **Unknown** |
| --- | --- | --- | --- | --- |

| 2.135 | Priority creditor's name and mailing address<br>**Judy Viola James** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>■ Unliquidated<br>☐ Disputed | **Unknown** | **Unknown** |
| --- | --- | --- | --- | --- |
| | Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.136 | Priority creditor's name and mailing address<br>**Julian St. Rose** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>■ Unliquidated<br>☐ Disputed | **Unknown** | **Unknown** |
| --- | --- | --- | --- | --- |
| | Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.137 | Priority creditor's name and mailing address<br>**Julio Camacho** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>■ Unliquidated<br>☐ Disputed | **Unknown** | **Unknown** |
| --- | --- | --- | --- | --- |
| | Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.138 | Priority creditor's name and mailing address<br>**Julio Lopez** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>■ Unliquidated<br>☐ Disputed | **Unknown** | **Unknown** |
| --- | --- | --- | --- | --- |
| | Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (*if known*) | **21-32355** |
|---|---|---|---|

Name

| 2.139 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Justin Bannis**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.140 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Kareem Loctar**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.141 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Karen Carty**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.142 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Kathy M. Vernon**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (if known) | **21-32355** |
|---|---|---|---|
| | Name | | |

---

**2.143** | Priority creditor's name and mailing address
**Kellita Frederick**

<br>

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

**Unknown** | **Unknown**

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

**2.144** | Priority creditor's name and mailing address
**Kelly D. Voos**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

**Unknown** | **Unknown**

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

**2.145** | Priority creditor's name and mailing address
**Kelly Mark Voos**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

**Unknown** | **Unknown**

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

**2.146** | Priority creditor's name and mailing address
**Kenia S. Johny**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

**Unknown** | **Unknown**

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (*if known*) | **21-32355** |
|---|---|---|---|
| | Name | | |

---

**2.147** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**
**Kenneth B. Duinkerk**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
| | **Unpaid wages and/or vacation time which may be asserted** |

| Last 4 digits of account number | Is the claim subject to offset? |
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No ☐ Yes |

---

**2.148** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**
**Kenneth O'Donoghue**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
| | **Unpaid wages and/or vacation time which may be asserted** |

| Last 4 digits of account number | Is the claim subject to offset? |
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No ☐ Yes |

---

**2.149** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**
**Ketron Springette**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
| | **Unpaid wages and/or vacation time which may be asserted** |

| Last 4 digits of account number | Is the claim subject to offset? |
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No ☐ Yes |

---

**2.150** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**
**Kevin Gould**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
| | **Unpaid wages and/or vacation time which may be asserted** |

| Last 4 digits of account number | Is the claim subject to offset? |
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No ☐ Yes |

---

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (*if known*) | **21-32355** |
|---|---|---|---|
| | Name | | |

| 2.151 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Kevin James**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.152 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Kevin S. Holmes**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.153 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Khari J. Hopkins**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.154 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Kirwyn Figaro**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Limetree Bay Refining Operating, LLC | Case number (if known) | 21-32355 |
|---|---|---|---|

Name

| 2.155 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Kyana John**

Check all that apply.
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.156 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Lavern Richards**

Check all that apply.
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.157 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Lee Fleming**

Check all that apply.
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.158 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Lee Hall**

Check all that apply.
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (if known) | **21-32355** |

Name

| 2.159 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |

**Leroy Ferdinand**

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.160 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |

**Leroy Simon**

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.161 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |

**Lincoln Ferrol**

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.162 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |

**Lincoln Meryl**

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| Debtor | Limetree Bay Refining Operating, LLC | Case number (if known) | 21-32355 |
|---|---|---|---|
| | Name | | |

| 2.163 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Luis Cruz**

*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
☑ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.164 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Luis Frontal Jr.**

*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
☑ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.165 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Luis Ras**

*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
☑ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.166 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Lynn Mullen**

*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
☑ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| Debtor | Limetree Bay Refining Operating, LLC | Case number (if known) | 21-32355 |
|---|---|---|---|

Name

---

**2.167** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Madelyn Felix**

▨▨▨▨▨▨▨▨▨▨

Check all that apply.
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
☑ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

**2.168** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Malcolm Mills**

▨▨▨▨▨▨▨▨

Check all that apply.
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
☑ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

**2.169** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Malek Bascombe**

▨▨▨▨▨▨▨▨▨▨

Check all that apply.
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
☑ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

**2.170** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Maria Cristina Aloyo**

▨▨▨▨▨▨▨▨▨▨

Check all that apply.
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
☑ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| Debtor | Limetree Bay Refining Operating, LLC | Case number (if known) | 21-32355 |
|---|---|---|---|
| | Name | | |

| 2.171 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>Check all that apply. | Unknown | Unknown |
|---|---|---|---|---|
| | **Marilyn O. Stanley** | ☐ Contingent<br>■ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.172 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>Check all that apply. | Unknown | Unknown |
|---|---|---|---|---|
| | **Mark Bishop** | ☐ Contingent<br>■ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.173 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>Check all that apply. | Unknown | Unknown |
|---|---|---|---|---|
| | **Mark Daniel** | ☐ Contingent<br>■ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.174 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>Check all that apply. | Unknown | Unknown |
|---|---|---|---|---|
| | **Mark J. Beharry** | ☐ Contingent<br>■ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| Debtor | Limetree Bay Refining Operating, LLC | Case number (if known) | 21-32355 |
|---|---|---|---|
| | Name | | |

| 2.175 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|
| | **Mark Jackson** | Check all that apply. | | |

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

| 2.176 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|
| | **Marra R. Austrie** | Check all that apply. | | |

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

| 2.177 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|
| | **Marvin Tang Yuk** | Check all that apply. | | |

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

| 2.178 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|
| | **Mary Thomas** | Check all that apply. | | |

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

| Debtor | Limetree Bay Refining Operating, LLC | Case number (if known) | 21-32355 |
|---|---|---|---|
| | Name | | |

| 2.179 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | Unknown | Unknown |
|---|---|---|---|---|
| | **Mathu Mutidi** | ☐ Contingent<br>■ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.180 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | Unknown | Unknown |
|---|---|---|---|---|
| | **Medard Yameogo** | ☐ Contingent<br>■ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.181 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | Unknown | Unknown |
|---|---|---|---|---|
| | **Melicia O. Williams** | ☐ Contingent<br>■ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.182 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | Unknown | Unknown |
|---|---|---|---|---|
| | **Melinda R. Petersen** | ☐ Contingent<br>■ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

1263

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (if known) | **21-32355** |
|--------|-------------------------------------------|-------------------------|--------------|
| | Name | | |

| 2.183 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|-------|---------------------------------------------|----------------------------------------------|-------------|

**Mellisha Barker**

Check all that apply.
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.184 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|-------|---------------------------------------------|----------------------------------------------|-------------|

**Melvine Adams Jr.**

Check all that apply.
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.185 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|-------|---------------------------------------------|----------------------------------------------|-------------|

**Meridith M. Prince**

Check all that apply.
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.186 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|-------|---------------------------------------------|----------------------------------------------|-------------|

**Michael John**

Check all that apply.
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| Debtor | Limetree Bay Refining Operating, LLC | Case number (if known) | 21-32355 |
|---|---|---|---|

Name

| 2.187 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Michael Magill**

Check all that apply.
☐ Contingent
☒ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☒ No
☐ Yes

---

| 2.188 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Michael W. Shawver**

Check all that apply.
☐ Contingent
☒ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☒ No
☐ Yes

---

| 2.189 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Mikhaila Jeffers**

Check all that apply.
☐ Contingent
☒ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☒ No
☐ Yes

---

| 2.190 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Monty Mrotz**

Check all that apply.
☐ Contingent
☒ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☒ No
☐ Yes

---

| Debtor | **Limetree Bay Refining Operating, LLC** | | Case number *(if known)* | **21-32355** |
| | Name | | | |

---

| 2.191 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |

**Naief Salamah**

☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: **Unpaid wages and/or vacation time which may be asserted** |

| Last 4 digits of account number | Is the claim subject to offset? |
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No ☐ Yes |

---

| 2.192 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |

**Nathan Benzel**

☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: **Unpaid wages and/or vacation time which may be asserted** |

| Last 4 digits of account number | Is the claim subject to offset? |
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No ☐ Yes |

---

| 2.193 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |

**Neil A. Morgan**

☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: **Unpaid wages and/or vacation time which may be asserted** |

| Last 4 digits of account number | Is the claim subject to offset? |
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No ☐ Yes |

---

| 2.194 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |

**Nestor Paraliticci Jr.**

☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: **Unpaid wages and/or vacation time which may be asserted** |

| Last 4 digits of account number | Is the claim subject to offset? |
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No ☐ Yes |

---

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (if known) | **21-32355** |
| --- | --- | --- | --- |
| | Name | | |

| 2.195 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
| --- | --- | --- | --- | --- |

**Niall Jones**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.196 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
| --- | --- | --- | --- | --- |

**Nigel C. Remy**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.197 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
| --- | --- | --- | --- | --- |

**Noel Stewart**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.198 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
| --- | --- | --- | --- | --- |

**Noreen J. Richards**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (if known) | **21-32355** |
|---|---|---|---|
| | Name | | |

| 2.199 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Oswyn W. Newton**

☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** |
|---|---|

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.200 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Peter Cole**

☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** |
|---|---|

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.201 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Peter Morvin Browne**

☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** |
|---|---|

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.202 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Peter Williams**

☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim:<br>**Unpaid wages and/or vacation time which may be asserted** |
|---|---|

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

| Debtor | Limetree Bay Refining Operating, LLC | Case number (if known) | 21-32355 |
|---|---|---|---|
| | Name | | |

| 2.203 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Preston Rockhold**

*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.204 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Quianna K. Walters**

*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.205 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Quincy Lewis**

*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.206 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown | Unknown |
|---|---|---|---|---|

**Rafael M. Perales Coss**

*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| Debtor | Limetree Bay Refining Operating, LLC | Case number (*if known*) | 21-32355 |
|---|---|---|---|

Name

**2.207** | Priority creditor's name and mailing address

**Rasheem Joseph**

[REDACTED]

| As of the petition filing date, the claim is: | Unknown | Unknown |
| *Check all that apply.* | | |

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.208** | Priority creditor's name and mailing address

**Raul F. Flemming**

[REDACTED]

| As of the petition filing date, the claim is: | Unknown | Unknown |
| *Check all that apply.* | | |

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.209** | Priority creditor's name and mailing address

**Regina L. Evans**

[REDACTED]

| As of the petition filing date, the claim is: | Unknown | Unknown |
| *Check all that apply.* | | |

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.210** | Priority creditor's name and mailing address

**Rex Cazaubon**

[REDACTED]

| As of the petition filing date, the claim is: | Unknown | Unknown |
| *Check all that apply.* | | |

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (*if known*) | **21-32355** |
|---|---|---|---|
| | Name | | |

| 2.211 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Richard Moorhead**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

| 2.212 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Richard Samuel**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

| 2.213 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Richie Sookoo**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

| 2.214 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Robert Reyes Aguero**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

| Debtor | Limetree Bay Refining Operating, LLC | | Case number (if known) | 21-32355 |
|---|---|---|---|---|
| | Name | | | |

**2.215** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | | **Unknown** | **Unknown**

**Robert Ventura**

Check all that apply.
- ☐ Contingent
- ■ Unliquidated
- ☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
- ■ No
- ☐ Yes

---

**2.216** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | | **Unknown** | **Unknown**

**Rodney A. Ramcharan**

Check all that apply.
- ☐ Contingent
- ■ Unliquidated
- ☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
- ■ No
- ☐ Yes

---

**2.217** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | | **Unknown** | **Unknown**

**Roger Broughton**

Check all that apply.
- ☐ Contingent
- ■ Unliquidated
- ☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
- ■ No
- ☐ Yes

---

**2.218** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | | **Unknown** | **Unknown**

**Rollin Allahar**

Check all that apply.
- ☐ Contingent
- ■ Unliquidated
- ☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
- ■ No
- ☐ Yes

---

| Debtor | Limetree Bay Refining Operating, LLC | | Case number (if known) | 21-32355 |
|---|---|---|---|---|
| | Name | | | |

| 2.219 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown | Unknown |
|---|---|---|---|---|

**Rommel G. Aleman**

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| 2.220 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown | Unknown |
|---|---|---|---|---|

**Ronald Christopher**

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| 2.221 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown | Unknown |
|---|---|---|---|---|

**Roscar Hurtault**

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| 2.222 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown | Unknown |
|---|---|---|---|---|

**Rossille Delande**

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | Limetree Bay Refining Operating, LLC | Case number (if known) | 21-32355 |
|---|---|---|---|

Name

**2.223** Priority creditor's name and mailing address

**Rupert Massiah**

As of the petition filing date, the claim is:
*Check all that apply.*

☐ Contingent
☑ Unliquidated
☐ Disputed

**Unknown**      **Unknown**

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

☑ No
☐ Yes

---

**2.224** Priority creditor's name and mailing address

**Ryan A. Smith**

As of the petition filing date, the claim is:
*Check all that apply.*

☐ Contingent
☑ Unliquidated
☐ Disputed

**Unknown**      **Unknown**

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

☑ No
☐ Yes

---

**2.225** Priority creditor's name and mailing address

**Ryan Putnam**

As of the petition filing date, the claim is:
*Check all that apply.*

☐ Contingent
☑ Unliquidated
☐ Disputed

**Unknown**      **Unknown**

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

☑ No
☐ Yes

---

**2.226** Priority creditor's name and mailing address

**Samuel Menzies**

As of the petition filing date, the claim is:
*Check all that apply.*

☐ Contingent
☑ Unliquidated
☐ Disputed

**Unknown**      **Unknown**

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

☑ No
☐ Yes

---

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (if known) | **21-32355** |
|---|---|---|---|
| | Name | | |

| 2.227 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Sarah Massicott**

Check all that apply.
☐ Contingent
☒ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
☒ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

| 2.228 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Scott Richard Thomas**

Check all that apply.
☐ Contingent
☒ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
☒ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

| 2.229 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Seana Hanley**

Check all that apply.
☐ Contingent
☒ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
☒ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

| 2.230 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Shakeel Newton**

Check all that apply.
☐ Contingent
☒ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
☒ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

| Debtor | Limetree Bay Refining Operating, LLC | Case number (if known) | 21-32355 |
|--------|--------|--------|--------|
| | Name | | |

---

**2.231** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Shakyra E. King**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

**2.232** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Shanisa Emmanuel**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

**2.233** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Shanya Williams**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

**2.234** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Shaquilla K. Thomas**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| Debtor | Limetree Bay Refining Operating, LLC | Case number (if known) | 21-32355 |
| | Name | | |

| 2.235 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
| | **Shay Glasgow** | *Check all that apply.* | | |
| | ▢ Contingent | | |
| | ◼ Unliquidated | | |
| | ▢ Disputed | | |
| | | | |
| | Date or dates debt was incurred | Basis for the claim: **Unpaid wages and/or vacation time which may be asserted** | |
| | Last 4 digits of account number | Is the claim subject to offset? | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ◼ No ▢ Yes | |

| 2.236 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
| | **Sheldon John DeGazon** | *Check all that apply.* | | |
| | ▢ Contingent | | |
| | ◼ Unliquidated | | |
| | ▢ Disputed | | |
| | | | |
| | Date or dates debt was incurred | Basis for the claim: **Unpaid wages and/or vacation time which may be asserted** | |
| | Last 4 digits of account number | Is the claim subject to offset? | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ◼ No ▢ Yes | |

| 2.237 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
| | **Stephen E. Clarke** | *Check all that apply.* | | |
| | ▢ Contingent | | |
| | ◼ Unliquidated | | |
| | ▢ Disputed | | |
| | | | |
| | Date or dates debt was incurred | Basis for the claim: **Unpaid wages and/or vacation time which may be asserted** | |
| | Last 4 digits of account number | Is the claim subject to offset? | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ◼ No ▢ Yes | |

| 2.238 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
| | **Steven C. Maltby** | *Check all that apply.* | | |
| | ▢ Contingent | | |
| | ◼ Unliquidated | | |
| | ▢ Disputed | | |
| | | | |
| | Date or dates debt was incurred | Basis for the claim: **Unpaid wages and/or vacation time which may be asserted** | |
| | Last 4 digits of account number | Is the claim subject to offset? | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ◼ No ▢ Yes | |

| Debtor | Limetree Bay Refining Operating, LLC | Case number (if known) | 21-32355 |
|---|---|---|---|
| | Name | | |

**2.239** | Priority creditor's name and mailing address
**Steven L. Chastain**

| Date or dates debt was incurred |

| Last 4 digits of account number |
Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Basis for the claim:
**Unpaid wages and/or vacation time which may
be asserted**

Is the claim subject to offset?
■ No
☐ Yes

Unknown     Unknown

---

**2.240** | Priority creditor's name and mailing address
**Stewart Tanner**

| Date or dates debt was incurred |

| Last 4 digits of account number |
Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Basis for the claim:
**Unpaid wages and/or vacation time which may
be asserted**

Is the claim subject to offset?
■ No
☐ Yes

Unknown     Unknown

---

**2.241** | Priority creditor's name and mailing address
**Suhail Parrilla**

| Date or dates debt was incurred |

| Last 4 digits of account number |
Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Basis for the claim:
**Unpaid wages and/or vacation time which may
be asserted**

Is the claim subject to offset?
■ No
☐ Yes

Unknown     Unknown

---

**2.242** | Priority creditor's name and mailing address
**Taeson Hahm**

| Date or dates debt was incurred |

| Last 4 digits of account number |
Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Basis for the claim:
**Unpaid wages and/or vacation time which may
be asserted**

Is the claim subject to offset?
■ No
☐ Yes

Unknown     Unknown

| Debtor | **Limetree Bay Refining Operating, LLC** | | Case number (if known) | **21-32355** |
|---|---|---|---|---|
| | Name | | | |

---

**2.243** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Tainairis Taina Sookraj**

*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

**2.244** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Tashorna Thompson**

*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

**2.245** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Tawana Farrell**

*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

**2.246** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Teresita Sanes**

*Check all that apply.*
☐ Contingent
☑ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (*if known*) | **21-32355** |
|---|---|---|---|

Name

---

| 2.247 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Timothy Fatal**

[redacted]

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.248 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Timothy Franz**

[redacted]

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.249 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Troy D. Mason**

[redacted]

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.250 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Troy Fry**

[redacted]

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (*if known*) | **21-32355** |
|--------|------------------------------------------|--------------------------|--------------|
| | Name | | |

---

| 2.251 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|-------|---------------------------------------------|-----------------------------------------------|-------------|-------------|

**Troy Jack**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: **Unpaid wages and/or vacation time which may be asserted** |

| Last 4 digits of account number | Is the claim subject to offset? |

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.252 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|-------|---------------------------------------------|-----------------------------------------------|-------------|-------------|

**Tyrone Alexander Ambrose**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: **Unpaid wages and/or vacation time which may be asserted** |

| Last 4 digits of account number | Is the claim subject to offset? |

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.253 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|-------|---------------------------------------------|-----------------------------------------------|-------------|-------------|

**Urick Alexander**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: **Unpaid wages and/or vacation time which may be asserted** |

| Last 4 digits of account number | Is the claim subject to offset? |

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.254 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|-------|---------------------------------------------|-----------------------------------------------|-------------|-------------|

**Valerie Richardson**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: **Unpaid wages and/or vacation time which may be asserted** |

| Last 4 digits of account number | Is the claim subject to offset? |

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (*if known*) | **21-32355** |
|---|---|---|---|

Name

| 2.255 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Vanessa M. Williams**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.256 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Vicente A. Evora**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.257 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Victor Manue Delvalle Jr.**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

---

| 2.258 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Victor Silva III**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

---

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (if known) | **21-32355** |
|---|---|---|---|
| | Name | | |

---

**2.259** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Victoria Hector**

███████████████

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

**2.260** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Wade Nurse**

███████████████

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

**2.261** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Wayne Scotland**

███████████████

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

**2.262** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown**

**Wendye Rice**

███████████████

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4)

---

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number (if known) | **21-32355** |
|---|---|---|---|
| | Name | | |

| 2.263 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Wiley G. Harper**

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.264 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**William B. Peter**

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.265 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Winston Phillip**

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.266 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**Wulston Fabian Paul**

☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

Debtor    **Limetree Bay Refining Operating, LLC**                          Case number (if known)    **21-32355**
_____
Name

| 2.267 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **Unknown** |

| 2.267 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>_Check all that apply._ |

**Yamil E. Saldana**

☐ Contingent

■ Unliquidated

☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No

☐ Yes

---

| 2.268 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>_Check all that apply._ | **Unknown** | **Unknown** |

**Yudith D. Osborne**

☐ Contingent

■ Unliquidated

☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid wages and/or vacation time which may be asserted**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No

☐ Yes

---

**Part 2:    List All Creditors with NONPRIORITY Unsecured Claims**

3.  List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

|  |  | **Amount of claim** |

| 3.1 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: _Check all that apply._ | **$99,080,871.18** |

**Limetree Bay Refining, LLC**
**1 Estate Hope**
**Christiansted, VI 00820**

☐ Contingent

☐ Unliquidated

☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  __intercompany debt__

Last 4 digits of account number _

Is the claim subject to offset? ☐ No  ■ Yes

---

| 3.2 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: _Check all that apply._ | **$5,131,659.08** |

**Limetree Bay Services, LLC**
**11100 Brittmoore Park Drive**
**Houston, TX 77041**

☐ Contingent

☐ Unliquidated

☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  __intercompany debt__

Last 4 digits of account number _

Is the claim subject to offset? ☐ No  ■ Yes

---

| 3.3 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: _Check all that apply._ | **$2,326,174.65** |

**Limetree Bay Terminals, LLC**
**#1 Estate Hope**
**Christiansted, VI 00820-5652**

☐ Contingent

☐ Unliquidated

■ Disputed

Date(s) debt was incurred _

Basis for the claim:  __intercompany debt__

Last 4 digits of account number _

Is the claim subject to offset? ☐ No  ■ Yes

---

**Part 3:    List Others to Be Notified About Unsecured Claims**

---

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number *(if known)* | **21-32355** |
|---|---|---|---|
| | Name | | |

**4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

**If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.**

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|
| | | |

**Part 4:      Total Amounts of the Priority and Nonpriority Unsecured Claims**

**5.  Add the amounts of priority and nonpriority unsecured claims.**

|  |  | Total of claim amounts |
|---|---|---|
| 5a. Total claims from Part 1 | 5a. | $ 0.00 |
| 5b. Total claims from Part 2 | 5b. + | $ 106,538,704.91 |
| 5c. Total of Parts 1 and 2<br>Lines 5a + 5b = 5c. | 5c. | $ 106,538,704.91 |

**Fill in this information to identify the case:**

Debtor name **Limetree Bay Refining Operating, LLC**

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF TEXAS

Case number (if known) **21-32355**

☐ Check if this is an amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases                  12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.  **Does the debtor have any executory contracts or unexpired leases?**
    ☐ No. Check this box and file this form with the debtor's other schedules.  There is nothing else to report on this form.
    ☑ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal  Property*
    (Official Form 206A/B).

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|
| 2.1. State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | **Excess Liability Insurance Policy No. NAMBM2100005**<br><br>**expires 6/1/22** | **Arcadia/Ark/Helix**<br>**Lockton Companies, LLC - Houston**<br>**3657 Briarpark Drive**<br>**Suite 700**<br>**Houston, TX 77042** |
| 2.2. State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | **Policy # B0713ENCAS2000011** | **Chaucer/Apollo**<br>**Lockton Companies, LLC - Houston**<br>**3657 Briarpark Drive**<br>**Suite 700**<br>**Houston, TX 77042** |
| 2.3. State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | **Monetization Master Agreement**<br><br>**expires 12/31/21** | **J. Aron & Company LLC**<br>**c/o Robin Spigel**<br>**Baker Botts, LLC**<br>**30 Rockefeller Plaza**<br>**New York, NY 10112-4498** |
| 2.4. State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | **Refinery Facilities Agreement** | **J. Aron & Company LLC**<br>**c/o Robin Spigel**<br>**Baker Botts, LLC**<br>**30 Rockefeller Plaza**<br>**New York, NY 10112-4498** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 1287 of 2637

1287

| Debtor 1 | **Limetree Bay Refining Operating, LLC** | | | Case number *(if known)* | **21-32355** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

**2.5.** State what the contract or lease is for and the nature of the debtor's interest

**Funding Letter Agreement**

State the term remaining

List the contract number of any government contract

**J. Aron & Company LLC**
**c/o Robin Spigel**
**Baker Botts, LLC**
**30 Rockefeller Plaza**
**New York, NY 10112-4498**

**2.6.** State what the contract or lease is for and the nature of the debtor's interest

**Term Services Agreement, Contract Number: LTR-023 and amendment**

State the term remaining

List the contract number of any government contract

**USA Debusk, LLC**
**1005 W. 8th Street**
**Deer Park, TX 77536**

Official Form 206G            **Schedule G: Executory Contracts and Unexpired Leases**            Page 2 of 2

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com            Best Case Bankruptcy

**Fill in this information to identify the case:**

Debtor name __**Limetree Bay Refining Operating, LLC**__

United States Bankruptcy Court for the: __SOUTHERN DISTRICT OF TEXAS__

Case number (if known) __**21-32355**__

☐ Check if this is an amended filing

Official Form 206H
# Schedule H: Your Codebtors

12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

### 1. Do you have any codebtors?

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

■ Yes

### 2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G. Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| **Name** | **Mailing Address** | **Name** | *Check all schedules that apply:* |
| 2.1 **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **J. Aron & Company LLC** | ■ D __**2.2**__ <br> ☐ E/F _____ <br> ☐ G _____ |
| 2.2 **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **J. Aron & Company LLC** | ■ D __**2.3**__ <br> ☐ E/F _____ <br> ☐ G _____ |
| 2.3 **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Goldman Sachs Bank USA** | ■ D __**2.1**__ <br> ☐ E/F _____ <br> ☐ G _____ |
| 2.4 **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Wilmington Trust, N.A.** | ■ D __**2.4**__ <br> ☐ E/F _____ <br> ☐ G _____ |
| 2.5 **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **J. Aron & Company LLC** | ■ D __**2.2**__ <br> ☐ E/F _____ <br> ☐ G _____ |

| Debtor | Limetree Bay Refining Operating, LLC | | Case number *(if known)* | 21-32355 |
|---|---|---|---|---|

**■  Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| 2.6 | Limetree Bay Refining, LLC | 1 Estate Hope Christiansted, VI 00820 | J. Aron & Company LLC | ■ D ___2.3___ ☐ E/F _____ ☐ G _____ |
| 2.7 | Limetree Bay Refining, LLC | 1 Estate Hope Christiansted, VI 00820 | Goldman Sachs Bank USA | ■ D ___2.1___ ☐ E/F _____ ☐ G _____ |
| 2.8 | Limetree Bay Refining, LLC | 1 Estate Hope Christiansted, VI 00820 | Wilmington Trust, N.A. | ■ D ___2.4___ ☐ E/F _____ ☐ G _____ |
| 2.9 | Limetree Bay Cayman II, LLC | | Arcadia/Ark/Helix | ☐ D _____ ☐ E/F _____ ■ G ___2.1___ |
| 2.10 | Limetree Bay Cayman II, LLC | | Chaucer/Apollo | ☐ D _____ ☐ E/F _____ ■ G ___2.2___ |
| 2.11 | Limetree Bay Cayman, LLC | | Arcadia/Ark/Helix | ☐ D _____ ☐ E/F _____ ■ G ___2.1___ |
| 2.12 | Limetree Bay Cayman, LLC | | Chaucer/Apollo | ☐ D _____ ☐ E/F _____ ■ G ___2.2___ |
| 2.13 | Limetree Bay Financing, LLC | | Arcadia/Ark/Helix | ☐ D _____ ☐ E/F _____ ■ G ___2.1___ |

| Debtor | **Limetree Bay Refining Operating, LLC** | | Case number *(if known)* | **21-32355** |
|---|---|---|---|---|

▮ **Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|
| 2.14 | **Limetree Bay Financing, LLC** | | **Chaucer/Apollo** | ☐ D ____<br>☐ E/F ____<br>■ G  __2.2__ |
| 2.15 | **Limetree Bay Holdings II, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Arcadia/Ark/Helix** | ☐ D ____<br>☐ E/F ____<br>■ G  __2.1__ |
| 2.16 | **Limetree Bay Holdings,, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Arcadia/Ark/Helix** | ☐ D ____<br>☐ E/F ____<br>■ G  __2.1__ |
| 2.17 | **Limetree Bay Refining Holdings II, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Chaucer/Apollo** | ☐ D ____<br>☐ E/F ____<br>■ G  __2.2__ |
| 2.18 | **Limetree Bay Refining Holdings, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Chaucer/Apollo** | ☐ D ____<br>☐ E/F ____<br>■ G  __2.2__ |
| 2.19 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **J. Aron & Company LLC** | ☐ D ____<br>☐ E/F ____<br>■ G  __2.3__ |
| 2.20 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Arcadia/Ark/Helix** | ☐ D ____<br>☐ E/F ____<br>■ G  __2.1__ |
| 2.21 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **J. Aron & Company LLC** | ☐ D ____<br>☐ E/F ____<br>■ G  __2.5__ |

| Debtor | Limetree Bay Refining Operating, LLC | Case number *(if known)* | 21-32355 |
|---|---|---|---|

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| | Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|---|
| 2.22 | Limetree Bay Refining Marketing, LLC | #1 Estate Hope Christiansted, VI 00820 | Chaucer/Apollo | ☐ D ____<br>☐ E/F ____<br>■ G __2.2__ |
| 2.23 | Limetree Bay Refining, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | J. Aron & Company LLC | ☐ D ____<br>☐ E/F ____<br>■ G __2.3__ |
| 2.24 | Limetree Bay Refining, LLC | 1 Estate Hope Christiansted, VI 00820 | J. Aron & Company LLC | ☐ D ____<br>☐ E/F ____<br>■ G __2.4__ |
| 2.25 | Limetree Bay Refining, LLC | 1 Estate Hope Christiansted, VI 00820 | Arcadia/Ark/Helix | ☐ D ____<br>☐ E/F ____<br>■ G __2.1__ |
| 2.26 | Limetree Bay Refining, LLC | 1 Estate Hope Christiansted, VI 00820 | J. Aron & Company LLC | ☐ D ____<br>☐ E/F ____<br>■ G __2.5__ |
| 2.27 | Limetree Bay Refining, LLC | 1 Estate Hope Christiansted, VI 00820 | Chaucer/Apollo | ☐ D ____<br>☐ E/F ____<br>■ G __2.2__ |
| 2.28 | Limetree Bay Services, LLC | 11100 Brittmoore Park Drive Houston, TX 77041 | Arcadia/Ark/Helix | ☐ D ____<br>☐ E/F ____<br>■ G __2.1__ |
| 2.29 | Limetree Bay Services, LLC | 11100 Brittmoore Park Drive Houston, TX 77041 | Chaucer/Apollo | ☐ D ____<br>☐ E/F ____<br>■ G __2.2__ |

| Debtor | **Limetree Bay Refining Operating, LLC** | | Case number *(if known)* | **21-32355** |
|---|---|---|---|---|

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| 2.30 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Arcadia/Ark/Helix** | ☐ D ____ <br> ☐ E/F ____ <br> ■ G __2.1__ |
| 2.31 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Chaucer/Apollo** | ☐ D ____ <br> ☐ E/F ____ <br> ■ G __2.2__ |
| 2.32 | **Limetree Bay Ventures, LLC** | | **Arcadia/Ark/Helix** | ☐ D ____ <br> ☐ E/F ____ <br> ■ G __2.1__ |
| 2.33 | **Limetree Bay Ventures, LLC** | | **Chaucer/Apollo** | ☐ D ____ <br> ☐ E/F ____ <br> ■ G __2.2__ |

**Fill in this information to identify the case:**

Debtor name    **Limetree Bay Refining Operating, LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF TEXAS

Case number (if known)    21-32355

☐ Check if this is an amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☑ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☑ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☑ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☑ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☑ *Schedule H: Codebtors* (Official Form 206H)
- ☑ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule*
- ☐ *Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☐ Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge based upon the information available to me at this time.

Executed on    **September 7, 2021**      *X* **/s/ Mark Shapiro**
                                                    Signature of individual signing on behalf of debtor

                                                    **Mark Shapiro**
                                                    Printed name

                                                    **Chief Restructuring Officer**
                                                    Position or relationship to debtor

**Fill in this information to identify the case:**

Debtor name  **Limetree Bay Refining Operating, LLC**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF TEXAS

Case number (if known)   **21-32355**

☐ Check if this is an amended filing

Official Form 207

# Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

04/19

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

## Part 1:   Income

1. **Gross revenue from business**

   ■ None.

   | Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue Check all that apply | Gross revenue (before deductions and exclusions) |
   |---|---|---|

2. **Non-business revenue**

   Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

   ■ None.

   | | Description of sources of revenue | Gross revenue from each source (before deductions and exclusions) |
   |---|---|---|

## Part 2:   List Certain Transfers Made Before Filing for Bankruptcy

3. **Certain payments or transfers to creditors within 90 days before filing this case**

   List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

   ■ None.

   | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer Check all that apply |
   |---|---|---|---|

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

   List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

   ■ None.

   | Insider's name and address Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
   |---|---|---|---|

5. **Repossessions, foreclosures, and returns**

   List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number *(if known)* | **21-32355** |

■ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|

6. **Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

■ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|

**Part 3:    Legal Actions or Assignments**

7. **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case**.**

■ None.

| Case title<br>Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|

8. **Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

■ None

**Part 4:    Certain Gifts and Charitable Contributions**

9. **List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

■ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|

**Part 5:    Certain Losses**

10. **All losses from fire, theft, or other casualty within 1 year before filing this case.**

■ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br><br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br><br>List unpaid claims on Official Form 106A/B *(Schedule A/B: Assets – Real and Personal Property).* | Dates of loss | Value of property lost |
|---|---|---|---|

**Part 6:    Certain Payments or Transfers**

11. **Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

■ None.

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                                                                                      Best Case Bankruptcy

Debtor   **Limetree Bay Refining Operating, LLC**                    Case number *(if known)*  **21-32355**

| Who was paid or who received the transfer? Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|

**12. Self-settled trusts of which the debtor is a beneficiary**
List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

■ None.

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

**13. Transfers not already listed on this statement**
List any transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

■ None.

| Who received transfer? Address | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|

**Part 7:**   **Previous Locations**

**14. Previous addresses**
List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

■ Does not apply

| Address | Dates of occupancy From-To |
|---|---|

**Part 8:**   **Health Care Bankruptcies**

**15. Health Care bankruptcies**
Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

■ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If  debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|

**Part 9:**   **Personally Identifiable Information**

**16. Does the debtor collect and retain personally identifiable information of customers?**

■ No.
☐ Yes. State the nature of the information collected and retained.

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

■ No. Go to Part 10.
☐ Yes. Does the debtor serve as plan administrator?

**Part 10:**   **Certain Financial Accounts, Safe Deposit Boxes, and Storage Units**

**18. Closed financial accounts**
Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold,

Debtor   **Limetree Bay Refining Operating, LLC**   Case number *(if known)* 21-32355

moved, or transferred?

Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| Financial Institution name and Address | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository institution name and address | Names of anyone with access to it Address | Description of the contents | Do you still have it? |
|---|---|---|---|

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Do you still have it? |
|---|---|---|---|

**Part 11:   Property the Debtor Holds or Controls That the Debtor Does Not Own**

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None

**Part 12:   Details About Environment Information**

For the purpose of Part 12, the following definitions apply:

*Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

*Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

*Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22.   Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☑ No.
☐ Yes. Provide details below.

| Case title Case number | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|

**23.   Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☑ No.
☐ Yes. Provide details below.

Debtor   **Limitree Bay Refining Operating, LLC**                    Case number *(if known)*  **21-32355**

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| | | | |

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

■ No.
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| | | | |

**Part 13:   Details About the Debtor's Business or Connections to Any Business**

**25. Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

■ None

| Business name address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| | | |

**26. Books, records, and financial statements**
26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

■ None

| Name and address | Date of service<br>From-To |
|---|---|
| | |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and address | | Date of service<br>From-To |
|---|---|---|
| 26b.1. | **Deloitte & Touche** | **2019-2021 for consolidated LBR** |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

■ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

■ None

| Name and address |
|---|
| |

**27. Inventories**
Have any inventories of the debtor's property been taken within 2 years before filing this case?

■ No
☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|
| | | |

**28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people**

| Debtor | **Limetree Bay Refining Operating, LLC** | Case number *(if known)* | **21-32355** |

**in control of the debtor at the time of the filing of this case.**

| Name | Address | Position and nature of any interest | % of interest, if any |
|------|---------|-------------------------------------|-----------------------|
| **Jeffrey Rinker** | | **President** | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|------|---------|-------------------------------------|-----------------------|
| **Stephan Tompsett** | | **CFO** | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|------|---------|-------------------------------------|-----------------------|
| **Mark Chavez** | | **General Counsel/Secretary** | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|------|---------|-------------------------------------|-----------------------|
| **Limetree Bay Refining, LLC** | | **Sole Member** | **100%** |

| Name | Address | Position and nature of any interest | % of interest, if any |
|------|---------|-------------------------------------|-----------------------|
| **Mark Shapiro** | **B. Riley Advisory Services**<br>**4400 Post Oak Parkway**<br>**Suite 1400**<br>**Houston, TX 77027** | **Chief Restructuring Officer** | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|------|---------|-------------------------------------|-----------------------|
| **Steven J. Pully** | **4564 Meadowwood Road**<br>**Dallas, TX 75220** | **Independent Member** | |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No
☑ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|------|---------|-------------------------------------|---------------------------------------------------|
| **Brian Lever** | | **President, CEO** | |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|------|---------|-------------------------------------|---------------------------------------------------|
| **Darius Sweet** | | **Manager** | |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|------|---------|-------------------------------------|---------------------------------------------------|
| **Robert Haugen** | | **Manager** | |

30. **Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

Debtor   **Limetree Bay Refining Operating, LLC**      Case number *(if known)* **21-32355**

☒ No
☐ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☒ No
☐ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☒ No
☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the parent corporation |
|---|---|

**Part 14:   Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **September  7, 2021**

**/s/ Mark Shapiro**                         **Mark Shapiro**
Signature of individual signing on behalf of the debtor        Printed name

Position or relationship to debtor    **Chief Restructuring Officer**

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**
☒ No
☐ Yes

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*,**[1] | **CASE NO.: 21-32351** |
| **Debtors.** | **(Jointly Administered)** |

## DISCLAIMER REGARDING DEBTORS' SCHEDULES AND SOFA

### General Disclaimer

1.      The Schedules and the SOFA are unaudited and subject to potential adjustment.  In preparing the Schedules and the SOFA, the CRO and his professionals relied on financial data derived from the Debtors' books and records that was available at the time of preparation.  The CRO and his professionals have made reasonable efforts to ensure that the Schedules and the SOFA are as accurate and complete as possible under the circumstances; however, subsequent information or discovery may result in changes to the Schedules and SOFA and errors or omissions may exist.

2.      The CRO reserves all rights to amend or supplement the Schedules and SOFA from time to time, in all respects, as may be necessary or appropriate, including the right to dispute or otherwise assert offsets or defenses to any claim reflected on the Schedules and SOFA as to any amount, liability, classification, identity of debtor or to otherwise subsequently designate any claim as "disputed", "contingent", or "unliquidated". Furthermore, nothing

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC.(1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

4840-8042-7514.1

contained in the Schedules and SOFA shall constitute a waiver of any of the CRO's rights or an admission with respect to these chapter 11 cases, including any issues involving objections to claims, substantive consolidation, defenses, affirmative claims against third parties or rights against third parties, other issues that typically arise under the Bankruptcy Code.

## Notes on Schedules of Assets and Liabilities

## Method of Valuation

3.      Unless otherwise noted, the carrying value on the Debtors' books and records (net book value) as of the Petition Date, rather than the current market values, of the Debtors' interest in the property and of the Debtors' liabilities, is reflected on the Debtors' Schedules and SOFA.  The net book value may not correspond to market value, or liquidation value, of which may be either higher or lower.

Dated: September 7, 2021

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
So. Dist. Fed ID 903144
**Jimmy D. Parrish, Esq.**
So. Dist. Fed ID 2687598
200 S. Orange Avenue
Suite 2300
Orlando, FL 32801
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
E-mail: egreen@bakerlaw.com
E-mail: jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com
*(Admitted Pro Hac Vice)*

*Proposed Counsel for the Debtors and Debtors in Possession*

**Fill in this information to identify the case:**

Debtor name   **Limetree Bay Refining Marketing, LLC**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF TEXAS

Case number (if known)   **21-32356**

☐ Check if this is an
amended filing

Official Form 206Sum

## Summary of Assets and Liabilities for Non-Individuals
12/15

| Part 1: | Summary of Assets |
|---|---|

1. ***Schedule A/B: Assets-Real and Personal Property*** (Official Form 206A/B)

    **1a. Real property:**
    Copy line 88 from *Schedule A/B*................................................................................  $  **0.00**

    **1b. Total personal property:**
    Copy line 91A from *Schedule A/B*.............................................................................  $  **118,229,162.72**

    **1c. Total of all property:**
    Copy line 92 from *Schedule A/B*................................................................................  $  **118,229,162.72**

| Part 2: | Summary of Liabilities |
|---|---|

2. ***Schedule D: Creditors Who Have Claims Secured by Property*** (Official Form 206D)
    Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*...................  $  **1,056,353,788.97**

3. ***Schedule E/F: Creditors Who Have Unsecured Claims*** (Official Form 206E/F)

    **3a. Total claim amounts of priority unsecured claims:**
    Copy the total claims from Part 1 from line 5a of *Schedule E/F*...........................................  $  **0.00**

    **3b. Total amount of claims of nonpriority amount of unsecured claims:**
    Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*...............................  +$  **198,765,709.12**

4. Total liabilities ...................................................................................................
    Lines 2 + 3a + 3b   $  **1,255,119,498.09**

**Fill in this information to identify the case:**

Debtor name **Limetree Bay Refining Marketing, LLC**

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF TEXAS

Case number (if known) **21-32356**

☐ Check if this is an amended filing

## Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property                    12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

**Part 1:      Cash and cash equivalents**

1. **Does the debtor have any cash or cash equivalents?**

☐ No.  Go to Part 2.
☑ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | | | Current value of debtor's interest |
|---|---|---|---|

3.     **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|---|
| 3.1. | **Deutsche Bank** | **Revenue Account** | **9721** | **$1,049,979.71** |
| 3.2. | **Deutsche Bank** | **O&M Operating Account** | **9722** | **$1.49** |
| 3.3. | **Deutsche Bank** | **Reinvestment & Repair Account** | **9723** | **$0.00** |
| 3.4. | **Deutsche Bank** | **Tolling Agreement Payment Account** | **9724** | **$0.00** |
| 3.5. | **Deutsche Bank** | **Capex Resereve Account** | **9725** | **$0.00** |
| 3.6. | **Deutsche Bank** | **Turn-Around Reserve Account** | **9726** | **$0.00** |
| 3.7. | **Deutsche Bank** | **Tolling Agreement Payment Sub-Account** | **9727** | **$0.00** |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                                    Best Case Bankruptcy

Debtor   **Limetree Bay Refining Marketing, LLC**                    Case number *(If known)* **21-32356**
          Name

| | | | | |
|---|---|---|---|---|
| 3.8. | **Deutsche Bank** | **Gross Margin Sub-Account** | **9728** | **$0.00** |
| 3.9. | **Oriental Bank** | **Checking Account** | **0986** | **$119,310.57** |

4.   **Other cash equivalents** *(Identify all)*

5.   **Total of Part 1.**

Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.    | **$1,169,291.77** |

**Part 2:**   **Deposits and Prepayments**

6. **Does the debtor have any deposits or prepayments?**

☐ No.  Go to Part 3.
■ Yes Fill in the information below.

7.   **Deposits, including security deposits and utility deposits**
     Description, including name of holder of deposit

8.   **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**
     Description, including name of holder of prepayment

| | | |
|---|---|---|
| 8.1. | **Pre-Paid Insurance** | **$647,499.99** |
| 8.2. | **Pre-Paid Sundry** | **$162,083.17** |
| 8.3. | **Advances on Intermediation Agreement with J. Aron** | **$48,582,646.70** |

9.   **Total of Part 2.**

Add lines 7 through 8. Copy the total to line 81.    | **$49,392,229.86** |

**Part 3:**   **Accounts receivable**

10. **Does the debtor have any accounts receivable?**

☐ No.  Go to Part 4.
■ Yes Fill in the information below.

11.   **Accounts receivable**

| | face amount | | doubtful or uncollectible accounts | | |
|---|---|---|---|---|---|
| 11a. 90 days old or less: | **10,548,277.11** | - | **0.00** | =.... | **$10,548,277.11** |
| 11b. Over 90 days old: | **20,872,917.89** | - | **0.00** | =.... | **$20,872,917.89** |

Debtor  **Limetree Bay Refining Marketing, LLC**                    Case number *(If known)* **21-32356**
         Name

| 12. | **Total of Part 3.** | | **$31,421,195.00** |
|---|---|---|---|
| | Current value on lines 11a + 11b = line 12.  Copy the total to line 82. | | |

| **Part 4:** | **Investments** |
|---|---|

13. **Does the debtor own any investments?**

&#9632; No.  Go to Part 5.
&#9633; Yes Fill in the information below.

| **Part 5:** | **Inventory, excluding agriculture assets** |
|---|---|

18. **Does the debtor own any inventory (excluding agriculture assets)?**

&#9633; No.  Go to Part 6.
&#9632; Yes Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 19.  **Raw materials** | | | | |
| 20.  **Work in progress** | | | | |
| 21.  **Finished goods, including goods held for resale** | | | | |
| 22.  **Other inventory or supplies Inventory (see attached list)** | | **$1,707,323.09** | | **$1,707,323.09** |

| 23. | **Total of Part 5.** | | **$1,707,323.09** |
|---|---|---|---|
| | Add lines 19 through 22.  Copy the total to line 84. | | |

24. **Is any of the property listed in Part 5 perishable?**
&#9632; No
&#9633; Yes

25. **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**
&#9632; No
&#9633; Yes. Book value _____ Valuation method _____ Current Value _____

26. **Has any of the property listed in Part 5 been appraised by a professional within the last year?**
&#9632; No
&#9633; Yes

| **Part 6:** | **Farming and fishing-related assets (other than titled motor vehicles and land)** |
|---|---|

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

&#9632; No.  Go to Part 7.
&#9633; Yes Fill in the information below.

| **Part 7:** | **Office furniture, fixtures, and equipment; and collectibles** |
|---|---|

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

&#9632; No.  Go to Part 8.
&#9633; Yes Fill in the information below.

| **Part 8:** | **Machinery, equipment, and vehicles** |
|---|---|

Debtor   **Limetree Bay Refining Marketing, LLC**                      Case number *(If known)*  **21-32356**
         Name

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

■ No.  Go to Part 9.
☐ Yes Fill in the information below.

| Part 9: | Real property |

**54. Does the debtor own or lease any real property?**

■ No.  Go to Part 10.
☐ Yes Fill in the information below.

| Part 10: | Intangibles and intellectual property |

**59. Does the debtor have any interests in intangibles or intellectual property?**

■ No.  Go to Part 11.
☐ Yes Fill in the information below.

| Part 11: | All other assets |

**70. Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

☐ No.  Go to Part 12.
■ Yes Fill in the information below.

|  | Current value of debtor's interest |
|---|---|
| 71. **Notes receivable**<br>Description (include name of obligor) | |
| 72. **Tax refunds and unused net operating losses (NOLs)**<br>Description (for example, federal, state, local) | |
| 73. **Interests in insurance policies or annuities** | |
| 74. **Causes of action against third parties (whether or not a lawsuit has been filed)** | |
| 75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims** | |
| 76. **Trusts, equitable or future interests in property** | |
| 77. **Other property of any kind not already listed** *Examples:* Season tickets, country club membership | |
| **Catalyst - Precious Metal used in the refining process** | **$20,000,000.00** |
| **BP Oil - CMS Invoices** | **$14,539,123.00** |
| **Storage Tank Lease Under Terminal Services Agreement** | **Unknown** |
| 78. **Total of Part 11.**<br>Add lines 71 through 77. Copy the total to line 90. | **$34,539,123.00** |

| Debtor | **Limetree Bay Refining Marketing, LLC** | Case number *(If known)* | **21-32356** |
| --- | --- | --- | --- |
| | Name | | |

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

■ No

☐ Yes

Debtor  **Limetree Bay Refining Marketing, LLC**
Name

Case number *(If known)* **21-32356**

---

<table>
<tr><td colspan="2">Part 12:</td><td>**Summary**</td></tr>
</table>

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $1,169,291.77 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $49,392,229.86 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $31,421,195.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $1,707,323.09 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9.......................................................>* | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $34,539,123.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $118,229,162.72 | + 91b. $0.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $118,229,162.72 |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

**Limetree Bay Refining Marketing, LLC**

**Case No.: 21-32356**

**Detail of Inventory**

| Entity | Description | Amount |
|--------|-------------|-------:|
| LBRM | LPG | 1,229,057.39 |
| LBRM | ULSD - Line Fill | 478,265.70 |
| | | **$ 1,707,323.09** |

**Fill in this information to identify the case:**

Debtor name  **Limetree Bay Refining Marketing, LLC**

United States Bankruptcy Court for the:  SOUTHERN DISTRICT OF TEXAS

Case number (if known)  **21-32356**

☐ Check if this is an amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property                    12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☐ Yes. Fill in all of the information below.

| Part 1: | List Creditors Who Have Secured Claims |
|---|---|

**2. List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** |
|---|---|---|---|
| **2.1  Goldman Sachs Bank USA**<br>Creditor's Name | **Describe debtor's property that is subject to a lien**<br>**Certain accounts, chattel paper, deposit accounts, documents, equipment, fixtures, general intangibles, instruments, intellectual property, investment property, letters of credit, commercial tort claims...of any Senior Lenders Collateral** | **$50,320,833.33** | **Unknown** |
| **as Administrative Agent**<br>**200 West Street**<br>**New York, NY 10282**<br>Creditor's mailing address | **Describe the lien**<br>**Revolver Debt**<br>**Is the creditor an insider or related party?**<br>■ No<br>☐ Yes | | |
| Creditor's email address, if known | **Is anyone else liable on this claim?**<br>☐ No<br>■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | | |
| **Date debt was incurred**<br><br>**Last 4 digits of account number** | | | |
| **Do multiple creditors have an interest in the same property?**<br>■ No<br>☐ Yes. Specify each creditor, including this creditor and its relative priority. | **As of the petition filing date, the claim is:**<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| **2.2  J. Aron & Company LLC**<br>Creditor's Name | **Describe debtor's property that is subject to a lien**<br>**Accounts, accounts receivable, hydrocarbons and other inventory, deposit accounts, instruments, chattel paper, documents, tax refunds, commercial tort claims, and replacement proceeds of the J. Aron Collateral** | **$221,952,054.00** | **Unknown** |
| **200 West Street**<br>**New York, NY 10282**<br>Creditor's mailing address | **Describe the lien**<br>**Estimate Safe Harbor Agreement**<br>**Is the creditor an insider or related party?**<br>■ No<br>☐ Yes | | |
| Creditor's email address, if known | **Is anyone else liable on this claim?**<br>☐ No | | |
| **Date debt was incurred** | | | |

Debtor    **Limetree Bay Refining Marketing, LLC**      Case number (if known)    **21-32356**

Name

---

**Last 4 digits of account number**

☑ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

| | |
|---|---|
| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** Check all that apply |
| ☑ No | ☑ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☑ Unliquidated |
| | ☐ Disputed |

---

| 2.3 | **J. Aron & Company LLC** | **Describe debtor's property that is subject to a lien** | $25,087,659.68 | Unknown |
|---|---|---|---|---|

Creditor's Name

**Accounts, accounts receivable, hydrocarbons and other inventory, deposit accounts, instruments, chattel paper, documents, tax refunds, commercial tort claims, and replacement proceeds of the J. Aron Collateral**

**200 West Street**
**New York, NY 10282**

Creditor's mailing address

**Describe the lien**

**Term Debt**

**Is the creditor an insider or related party?**

☑ No

☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**

☐ No

**Date debt was incurred**

☑ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

| | |
|---|---|
| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** Check all that apply |
| ☑ No | ☐ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated |
| | ☐ Disputed |

---

| 2.4 | **Wilmington Trust, N.A.** | **Describe debtor's property that is subject to a lien** | $758,993,241.68 | Unknown |
|---|---|---|---|---|

Creditor's Name

**Certain accounts, chattel paper, deposit accounts, documents, equipment, fixtures, general intangibles, instruments, intellectual property, investment property, letters of credit, commercial tort claims...of any Senior Lenders Collateral**

**1100 N. Market Street**
**Wilmington, DE 19890**

Creditor's mailing address

**Describe the lien**

**Term Debt Guarantee**

**Is the creditor an insider or related party?**

☑ No

☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**

☐ No

**Date debt was incurred**

☑ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

| | |
|---|---|
| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** Check all that apply |
| ☑ No | ☐ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☑ Unliquidated |
| | ☐ Disputed |

---

Official Form 206D      Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**      page 2 of 3

| Debtor | **Limetree Bay Refining Marketing, LLC** | Case number (if known) | **21-32356** |
|---|---|---|---|
| | Name | | |

| | | |
|---|---|---|
| 3. | **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.** | **$1,056,353,788.97** |

**Part 2:   List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name  and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|

**Fill in this information to identify the case:**

Debtor name    **Limetree Bay Refining Marketing, LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF TEXAS

Case number (if known)    **21-32356**

☐ Check if this is an amended filing

Official Form 206E/F
# Schedule E/F: Creditors Who Have Unsecured Claims
**12/15**

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

**Part 1:**    List All Creditors with PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507)**.**

☐ No. Go to Part 2.

☐ Yes. Go to line 2.

**Part 2:**    List All Creditors with NONPRIORITY Unsecured Claims

3. **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

| | | Amount of claim |
|---|---|---|
| **3.1** | Nonpriority creditor's name and mailing address<br>**AFCO Credt Insurance**<br>**4501 College Blvd**<br>**Suite 320**<br>**Leawood, KS 66211**<br><br>Date(s) debt was incurred _<br>Last 4 digits of account number _ | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim: <u>accrued insurance</u><br><br>Is the claim subject to offset? ☐ No ☐ Yes | **$468,518.38** |
| **3.2** | Nonpriority creditor's name and mailing address<br>**Argus Media, Inc**<br>**2929 Allen Parkway**<br>**Suite 700**<br>**Houston, TX 77019**<br><br>Date(s) debt was incurred _<br>Last 4 digits of account number _ | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim: <u>Trade Debt</u><br><br>Is the claim subject to offset? ☐ No ☐ Yes | **$162,083.17** |
| **3.3** | Nonpriority creditor's name and mailing address<br>**BP Oil Supply**<br>**501 Westlake Park Blvd**<br>**Houston, TX 77079**<br><br>Date(s) debt was incurred _<br>Last 4 digits of account number _ | As of the petition filing date, the claim is: *Check all that apply.*<br>■ Contingent<br>■ Unliquidated<br>☐ Disputed<br><br>Basis for the claim: <u>Trade Debt</u><br><br>Is the claim subject to offset? ☐ No ☐ Yes | **$12,561,991.38** |
| **3.4** | Nonpriority creditor's name and mailing address<br>**BP Products North America Inc**<br>**Attn: Head of Marketing/Origination**<br>**30 S. Wacker Drive**<br>**Suite 900**<br>**Chicago, IL 60606**<br><br>Date(s) debt was incurred _<br>Last 4 digits of account number _ | As of the petition filing date, the claim is: *Check all that apply.*<br>■ Contingent<br>■ Unliquidated<br>■ Disputed<br><br>Basis for the claim: <u>voucher accruals</u><br><br>Is the claim subject to offset? ■ No ☐ Yes | **$49,280,992.12** |

| Debtor | **Limetree Bay Refining Marketing, LLC** | Case number *(if known)* | **21-32356** |
|---|---|---|---|
| | Name | | |

---

**3.5** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$7,825,625.00**

**BP Products North America Inc**
**Attn: Head of Marketing/Origination**
**30 S. Wacker Drive**
**Suite 900**
**Chicago, IL 60606**

■ Contingent
■ Unliquidated
■ Disputed

Date(s) debt was incurred __

Basis for the claim:  __other AP__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

**3.6** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$1,838,548.54**

**BP Products North America Inc**
**Attn: Head of Marketing/Origination**
**30 S. Wacker Drive**
**Suite 900**
**Chicago, IL 60606**

■ Contingent
■ Unliquidated
■ Disputed

Date(s) debt was incurred __

Basis for the claim:  __BP Oil AP__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

**3.7** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$2,016,315.42**

**Limetree Bay Refining, LLC**
**#1 Estate Hope**
**Christiansted, VI 00820-5652**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  __Intercompany Debt__

Last 4 digits of account number __

Is the claim subject to offset? ☐ No ■ Yes

---

**3.8** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$105,962,726.20**

**Limetree Bay Refining, LLC**
**1 Estate Hope**
**Christiansted, VI 00820**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  __Intercompany Debt__

Last 4 digits of account number __

Is the claim subject to offset? ☐ No ■ Yes

---

**3.9** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$17,155,091.01**

**Limetree Bay Terminals, LLC**
**#1 Estate Hope**
**Christiansted, VI 00820-5652**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred __

Basis for the claim:  __Intercompany Debt__

Last 4 digits of account number __

Is the claim subject to offset? ☐ No ■ Yes

---

**3.10** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$100,950.00**

**Limetree Bay Terminals, LLC**
**#1 Estate Hope**
**Christiansted, VI 00820-5652**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred __

Basis for the claim:  __Intercompany Debt__

Last 4 digits of account number __

Is the claim subject to offset? ☐ No ■ Yes

---

**3.11** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$15,555.22**

**Marjorie Rawls Roberts, P.C.**
**PO Box 6347**
**St. Thomas, VI 00804-6347**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  __Legal Fees__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Limetree Bay Refining Marketing, LLC** | Case number (*if known*) | **21-32356** |
|---|---|---|---|
| | Name | | |

| 3.12 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$331,885.03** |
|---|---|---|---|

**Quinn Emanuel Urquhart**
**865 S. Figueroa St.**
**10th Floor**
**Los Angeles, CA 90017**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** __Legal Fees__

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

| 3.13 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,045,427.65** |
|---|---|---|---|

**Stroock & Stroock & Lavan LLP**
**180 Maiden Lane**
**New York, NY 10038-4982**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** __Legal Fees__

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| **Part 3:** | **List Others to Be Notified About Unsecured Claims** |
|---|---|

**4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

**If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.**

| **Name and mailing address** | **On which line in Part1 or Part 2 is the related creditor (if any) listed?** | **Last 4 digits of account number, if any** |
|---|---|---|

| **Part 4:** | **Total Amounts of the Priority and Nonpriority Unsecured Claims** |
|---|---|

**5. Add the amounts of priority and nonpriority unsecured claims.**

| | | | **Total of claim amounts** |
|---|---|---|---|
| **5a. Total claims from Part 1** | 5a. | $ | **0.00** |
| **5b. Total claims from Part 2** | 5b. | + $ | **198,765,709.12** |
| **5c. Total of Parts 1 and 2** Lines 5a + 5b = 5c. | 5c. | $ | **198,765,709.12** |

**Fill in this information to identify the case:**

Debtor name    **Limetree Bay Refining Marketing, LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF TEXAS

Case number (if known)    **21-32356**

☐ Check if this is an amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases    12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.   **Does the debtor have any executory contracts or unexpired leases?**
    ☐ No. Check this box and file this form with the debtor's other schedules. There is nothing else to report on this form.
    ☑ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal    Property* (Official Form 206A/B).

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|
| 2.1. State what the contract or lease is for and the nature of the debtor's interest    **Standard Fire Insurance Policy No. 026 001001324-01-000000 expires 9/1/21** | |
| State the term remaining | **AIG Insurance Company - Puerto Rico Marsh & Sterling 1336 Beljen Road Suite 300, Charlotte Amalie St Thomas, VI 00802** |
| List the contract number of any government contract | |
| 2.2. State what the contract or lease is for and the nature of the debtor's interest    **Excess Liability Insurance Policy No. NAMBM2100005** | |
| State the term remaining    **expires 6/1/22** | **Arcadia/Ark/Helix Lockton Companies, LLC - Houston 3657 Briarpark Drive Suite 700 Houston, TX 77042** |
| List the contract number of any government contract | |
| 2.3. State what the contract or lease is for and the nature of the debtor's interest    **Combined Property Insurance Policy B0509ENGAO2000588** | |
| State the term remaining    **expires 12/1/21** | **Atrium Underwriters Ltd Marsh USA 1166 Avenue of the Americs New York, NY 10036-2774** |
| List the contract number of any government contract | |
| 2.4. State what the contract or lease is for and the nature of the debtor's interest    **Combined Property Insurance Policy 42-PRP-312023-01** | |
| State the term remaining | **Berkshire Hathaway National Fire & Marine Ins Co 1314 Douglas Street Suite 1400 Omaha, NE 68102-1944** |
| List the contract number of any government contract | |

Debtor 1   **Limetree Bay Refining Marketing, LLC**

First Name          Middle Name          Last Name

Case number *(if known)*   **21-32356**

<table>
<tr><td style="background:#3d0033;"> </td><td>**Additional Page if You Have More Contracts or Leases**</td></tr>
</table>

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| **2.5.** State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | **Feedstock Supply Agreement;, Amendment No. 1 to Feedstock Supply Agreement expires 11/15/25** | **BP Products North America Inc.**<br>**Rhonda R. Trotter**<br>**Arnold & Porter Kaye Scholer LLP**<br>**777 S. Figueroa St., 44th Floor**<br>**Los Angeles, CA 90017** |
| **2.6.** State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | **Product Offtake Agreement, Amendment No. 1, Amendment #2 expires 11/15/25** | **BP Products North America Inc.**<br>**Rhonda R. Trotter**<br>**Arnold & Porter Kaye Scholer LLP**<br>**777 S. Figueroa St., 44th Floor**<br>**Los Angeles, CA 90017** |
| **2.7.** State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | **Amended and Restated Tolling Agreement** | **BP Products North America Inc.**<br>**Rhonda R. Trotter**<br>**Arnold & Porter Kaye Scholer LLP**<br>**777 S. Figueroa St., 44th Floor**<br>**Los Angeles, CA 90017** |
| **2.8.** State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | **Intermediation Facilitation Agreement** | **BP Products North America Inc.**<br>**Rhonda R. Trotter**<br>**Arnold & Porter Kaye Scholer LLP**<br>**777 S. Figueroa St., 44th Floor**<br>**Los Angeles, CA 90017** |
| **2.9.** State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | **Limited Assignment Agreement** | **BP Products North America Inc.**<br>**Rhonda R. Trotter**<br>**Arnold & Porter Kaye Scholer LLP**<br>**777 S. Figueroa St., 44th Floor**<br>**Los Angeles, CA 90017** |
| **2.10.** State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining | **BP-LBRM Side Agreement** | **BP Products North America Inc.**<br>**Rhonda R. Trotter**<br>**Arnold & Porter Kaye Scholer LLP**<br>**777 S. Figueroa St., 44th Floor**<br>**Los Angeles, CA 90017** |

| Debtor 1 | Limetree Bay Refining Marketing, LLC | | Case number (*if known*) | 21-32356 |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

**Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

List the contract number of any
government contract _____

| 2.11. | State what the contract or lease is for and the nature of the debtor's interest | **Omnibus Amendment to BP Agreements** | |
|---|---|---|---|
| | State the term remaining | | **BP Products North America Inc.** |
| | | | **Rhonda R. Trotter** |
| | List the contract number of any government contract _____ | | **Arnold & Porter Kaye Scholer LLP** |
| | | | **777 S. Figueroa St., 44th Floor** |
| | | | **Los Angeles, CA 90017** |

| 2.12. | State what the contract or lease is for and the nature of the debtor's interest | **Policy # B0713ENCAS2000011** | |
|---|---|---|---|
| | State the term remaining | | **Chaucer/Apollo** |
| | | | **Lockton Companies, LLC - Houston** |
| | List the contract number of any government contract _____ | | **3657 Briarpark Drive** |
| | | | **Suite 700** |
| | | | **Houston, TX 77042** |

| 2.13. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy B0509ENGAO2000069** | |
|---|---|---|---|
| | State the term remaining | **expires 12/1/21** | **Convex Insurance UK Limited** |
| | | | **Marsh USA** |
| | List the contract number of any government contract _____ | | **1166 Avenue of the Americas** |
| | | | **New York, NY 10036-2774** |

| 2.14. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy B0509ENGAO2000563** | |
|---|---|---|---|
| | State the term remaining | **expires 12/1/21** | **Elseco Limited** |
| | | | **Marsh USA** |
| | List the contract number of any government contract _____ | | **1166 Avenue of the Americas** |
| | | | **New York, NY 10036-2774** |

| 2.15. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy B0509ENGAO2000613** | |
|---|---|---|---|
| | State the term remaining | **expires 12/1/21** | **Fidelis Underwriting Ltd.** |
| | | | **Marsh USA** |
| | List the contract number of any government contract _____ | | **1166 Avenue of the Americas** |
| | | | **New York, NY 10036-2774** |

Debtor 1 __Limetree Bay Refining Marketing, LLC__

First Name          Middle Name          Last Name

Case number (*if known*)   __21-32356__

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

**2.16.** State what the contract or lease is for and the nature of the debtor's interest — **Combined Property Insurance Policy ENGAO2000069**

State the term remaining — **expires 12/1/21**

List the contract number of any government contract

**Great Lakes
Marsh USA
1166 Avenue of the Americas
New York, NY 10036-2774**

**2.17.** State what the contract or lease is for and the nature of the debtor's interest — **Combined Property Insurance Policy B0509ENGAO2000576**

State the term remaining — **expires 12/1/21**

List the contract number of any government contract

**Guardian General Insurance Limited
Newton Centre
30-36 Maraval Road
Newton Port of Spain 190133
TRINDAD AND TOBAGO**

**2.18.** State what the contract or lease is for and the nature of the debtor's interest — **Combined Property Insurance Policy ENGAO2000069**

State the term remaining — **expires 12/1/21**

List the contract number of any government contract

**Hannover Re/HDI Global Specialty SE
Marsh USA
1166 Avenue of the Americas
New York, NY 10036-2774**

**2.19.** State what the contract or lease is for and the nature of the debtor's interest — **Combined Property Insurance Policy ENGAO2000069**

State the term remaining — **expires 12/1/21**

List the contract number of any government contract

**Helvetia Swiss Insurance Co
in Liechenstein Ltd
Marsh USA
1166 Avenue of the Americas
New York, NY 10036-2774**

**2.20.** State what the contract or lease is for and the nature of the debtor's interest — **Combined Property Insurance Policy ENGAO2000069**

State the term remaining — **expires 9/1/21**

List the contract number of any government contract

**Houston Specialty Insurance Company
Marsh USA
1166 Avenue of the Americas
New York, NY 10036-2774**

**2.21.** State what the contract or lease is for and the nature of the debtor's interest — **Combined Property Insurance Policy B0509ENGAO2000563**

State the term remaining — **expires 12/1/21**

List the contract number of any

**Insurance General Insurance Co Ltd.
Marsh USA
1166 Avenue of the Americas
New York, NY 10036-2774**

Debtor 1   **Limetree Bay Refining Marketing, LLC**                              Case number (*if known*)   **21-32356**
  First Name          Middle Name          Last Name

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| | government contract | |
|---|---|---|

| 2.22. | State what the contract or lease is for and the nature of the debtor's interest | **Monetization Master Agreement** | |
|---|---|---|---|
| | State the term remaining | **expires 12/31/2021** | **J. Aron & Company LLC** |
| | List the contract number of any government contract | | **c/o Robin Spigel** **Baker Botts, LLC** **30 Rockefeller Plaza** **New York, NY 10112-4498** |

| 2.23. | State what the contract or lease is for and the nature of the debtor's interest | **Inventory Sales Agreement** | |
|---|---|---|---|
| | State the term remaining | | **J. Aron & Company LLC** |
| | List the contract number of any government contract | | **c/o Robin Spigel** **Baker Botts, LLC** **30 Rockefeller Plaza** **New York, NY 10112-4498** |

| 2.24. | State what the contract or lease is for and the nature of the debtor's interest | **Supply and Offtake Agreement** | |
|---|---|---|---|
| | State the term remaining | | **J. Aron & Company LLC** |
| | List the contract number of any government contract | | **c/o Robin Spigel** **Baker Botts, LLC** **30 Rockefeller Plaza** **New York, NY 10112-4498** |

| 2.25. | State what the contract or lease is for and the nature of the debtor's interest | **Financing Agreement** | |
|---|---|---|---|
| | State the term remaining | | **J. Aron & Company LLC** |
| | List the contract number of any government contract | | **c/o Robin Spigel** **Baker Botts, LLC** **30 Rockefeller Plaza** **New York, NY 10112-4498** |

| 2.26. | State what the contract or lease is for and the nature of the debtor's interest | **Marketing and Sales Agreement** | |
|---|---|---|---|
| | State the term remaining | | **J. Aron & Company LLC** |
| | List the contract number of any government contract | | **c/o Robin Spigel** **Baker Botts, LLC** **30 Rockefeller Plaza** **New York, NY 10112-4498** |

| 2.27. | State what the contract or lease is for and the nature of the debtor's interest | **Intermediation Facilitation Agreement** | **J. Aron & Company LLC** **c/o Robin Spigel** **Baker Botts, LLC** **30 Rockefeller Plaza** **New York, NY 10112-4498** |
|---|---|---|---|

| Debtor 1 | **Limetree Bay Refining Marketing, LLC** | | Case number (*if known*) | **21-32356** |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

 **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

State the term remaining

List the contract number of any
    government contract

---

| 2.28. | State what the contract or lease is for and the nature of the debtor's interest | **Terminal Services Agreement (included locations) (same as 2.40)** | |
|---|---|---|---|
| | State the term remaining | | **J. Aron & Company LLC c/o Robin Spigel Baker Botts, LLC 30 Rockefeller Plaza New York, NY 10112-4498** |
| | List the contract number of any government contract | | |

---

| 2.29. | State what the contract or lease is for and the nature of the debtor's interest | **Limited Assignment Agreement** | |
|---|---|---|---|
| | State the term remaining | | **J. Aron & Company LLC c/o Robin Spigel Baker Botts, LLC 30 Rockefeller Plaza New York, NY 10112-4498** |
| | List the contract number of any government contract | | |

---

| 2.30. | State what the contract or lease is for and the nature of the debtor's interest | **Security Agreement** | |
|---|---|---|---|
| | State the term remaining | | **J. Aron & Company LLC c/o Robin Spigel Baker Botts, LLC 30 Rockefeller Plaza New York, NY 10112-4498** |
| | List the contract number of any government contract | | |

---

| 2.31. | State what the contract or lease is for and the nature of the debtor's interest | **Master Buy/Sell Confirmation** | |
|---|---|---|---|
| | State the term remaining | | **J. Aron & Company LLC c/o Robin Spigel Baker Botts, LLC 30 Rockefeller Plaza New York, NY 10112-4498** |
| | List the contract number of any government contract | | |

---

| 2.32. | State what the contract or lease is for and the nature of the debtor's interest | **Fee Letter** | |
|---|---|---|---|
| | State the term remaining | | **J. Aron & Company LLC c/o Robin Spigel Baker Botts, LLC 30 Rockefeller Plaza New York, NY 10112-4498** |
| | List the contract number of any government contract | | |

---

Debtor 1 **Limetree Bay Refining Marketing, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)   **21-32356**

  **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.33. | State what the contract or lease is for and the nature of the debtor's interest | **Deposit Account Control Agreement** | |
|---|---|---|---|
| | State the term remaining | | **J. Aron & Company LLC c/o Robin Spigel Baker Botts, LLC 30 Rockefeller Plaza New York, NY 10112-4498** |
| | List the contract number of any government contract | | |

| 2.34. | State what the contract or lease is for and the nature of the debtor's interest | **Funding Letter Agreement** | |
|---|---|---|---|
| | State the term remaining | | **J. Aron & Company LLC c/o Robin Spigel Baker Botts, LLC 30 Rockefeller Plaza New York, NY 10112-4498** |
| | List the contract number of any government contract | | |

| 2.35. | State what the contract or lease is for and the nature of the debtor's interest | **Bailee's Letter (same as 2.41)** | |
|---|---|---|---|
| | State the term remaining | | **J. Aron & Company LLC c/o Robin Spigel Baker Botts, LLC 30 Rockefeller Plaza New York, NY 10112-4498** |
| | List the contract number of any government contract | | |

| 2.36. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy B0509ENGAO2000587** | |
|---|---|---|---|
| | State the term remaining | **expires 12/1/21** | **Lancashire Insurance Company UK, Ltd Marsh USA 1166 Avenue of the Americas New York, NY 10036-2774** |
| | List the contract number of any government contract | | |

| 2.37. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy LSMAEN143232A** | |
|---|---|---|---|
| | State the term remaining | **expires 12/1/21** | **Liberty Specialty Markets Agency td Liberty Specialty Markets 141 Front Street Hamilton HM19 BERMUDA** |
| | List the contract number of any government contract | | |

| 2.38. | State what the contract or lease is for and the nature of the debtor's interest | **Shared Catalyst Agreement** | |
|---|---|---|---|
| | State the term remaining | **expires 3/2/23** | **Limetree Bay Refining, LLC 1 Estate Hope Christiansted, VI 00820** |
| | List the contract number of any | | |

1325

| Debtor 1 | **Limetree Bay Refining Marketing, LLC** | | Case number (*if known*) | **21-32356** |
| | First Name   Middle Name   Last Name | | | |

   **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| government contract | |

| 2.39. | State what the contract or lease is for and the nature of the debtor's interest | **Shared Services Agreement** | |
| | State the term remaining | | |
| | List the contract number of any government contract | | **Limetree Bay Terminals, LLC**<br>**#1 Estate Hope**<br>**Christiansted, VI 00820-5652** |

| 2.40. | State what the contract or lease is for and the nature of the debtor's interest | **Terminal Services Agreement (not included locations) (same as 2.28)** | |
| | State the term remaining | | |
| | List the contract number of any government contract | | **Limetree Bay Terminals, LLC**<br>**#1 Estate Hope**<br>**Christiansted, VI 00820-5652** |

| 2.41. | State what the contract or lease is for and the nature of the debtor's interest | **Bailee's Letter (same as 2.35)** | |
| | State the term remaining | | |
| | List the contract number of any government contract | | **Limetree Bay Terminals, LLC**<br>**#1 Estate Hope**<br>**Christiansted, VI 00820-5652** |

| 2.42. | State what the contract or lease is for and the nature of the debtor's interest | **Terminal Services Agreement (included locations) (same as 2.222)** | |
| | State the term remaining | | |
| | List the contract number of any government contract | | **Limetree Bay Terminals, LLC**<br>**#1 Estate Hope**<br>**Christiansted, VI 00820-5652** |

| 2.43. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy B0509ENGAO2000586** | |
| | State the term remaining | expires 12/1/21 | **NOA/Lloyds of London**<br>**Marsh USA**<br>**1166 Avenue of the Americas**<br>**New York, NY 10036-2774** |
| | List the contract number of any government contract | | |

| 2.44. | State what the contract or lease is for and the nature of the debtor's interest | **Deposit Account Control Agreement** | **Oriental Bank**<br>**254 Muñoz Rivera Ave.**<br>**San Juan, PR 00918** |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

Debtor 1 __Limetree Bay Refining Marketing, LLC__        Case number (*if known*)  __21-32356__

First Name      Middle Name      Last Name

 **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

State the term remaining

List the contract number of any
    government contract    _____

| | | | |
|---|---|---|---|
| 2.45. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property B0509ENGAO2000589** | |
| | State the term remaining | **expires 12/1/21** | **PartnerRe Ireland Insurance Marsh USA 1166 Avenue of the Americas New York, NY 10036-2774** |
| | List the contract number of any government contract | | |
| 2.46. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy ENGAO2000069** | |
| | State the term remaining | **expires 12/1/21** | **QBE/Lloyds of London Marsh USA 1166 Avenue of the Americas New York, NY 10036-2774** |
| | List the contract number of any government contract | | |
| 2.47. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy BO509ENGAO2000576** | |
| | State the term remaining | **expires 12/1/21** | **Rokstone/Guardian General Insurance Marsh USA 1166 Avenue of the Americas New York, NY 10036-2774** |
| | List the contract number of any government contract | | |
| 2.48. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy OMP 2000425-00** | |
| | State the term remaining | **expires 12/1/21** | **Swiss Re/Westport Insurance Company Westport Insurance Corporation 2 Waterside Crossing, Suite 2 Windsor, CT 06095** |
| | List the contract number of any government contract | | |
| 2.49. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy BO509ENGAO2000576** | |
| | State the term remaining | **expires 12/1/21** | **WRB/Guardian General Insurance Marsh USA 1166 Avenue of the Americas New York, NY 10036-2774** |
| | List the contract number of any government contract | | |

**Fill in this information to identify the case:**

Debtor name **Limetree Bay Refining Marketing, LLC**

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF TEXAS

Case number (if known) **21-32356**

☐ Check if this is an amended filing

Official Form 206H
# Schedule H: Your Codebtors
12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Do you have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

■ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

*Column 1:* **Codebtor**    *Column 2:* **Creditor**

| | **Name** | **Mailing Address** | **Name** | *Check all schedules that apply:* |
|---|---|---|---|---|
| 2.1 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **J. Aron & Company LLC** | ■ D __2.2__<br>☐ E/F ____<br>☐ G ____ |
| 2.2 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **J. Aron & Company LLC** | ■ D __2.3__<br>☐ E/F ____<br>☐ G ____ |
| 2.3 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Goldman Sachs Bank USA** | ■ D __2.1__<br>☐ E/F ____<br>☐ G ____ |
| 2.4 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Wilmington Trust, N.A.** | ■ D __2.4__<br>☐ E/F ____<br>☐ G ____ |
| 2.5 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **J. Aron & Company LLC** | ■ D __2.2__<br>☐ E/F ____<br>☐ G ____ |

| Debtor | **Limetree Bay Refining Marketing, LLC** | Case number *(if known)* | **21-32356** |
|---|---|---|---|

▄ **Additional Page to List More Codebtors**

**Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.**

| | *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|---|
| 2.6 | **Limetree Bay Refining, LLC** | 1 Estate Hope Christiansted, VI 00820 | **J. Aron & Company LLC** | ■ D  **2.3**<br>☐ E/F _____<br>☐ G _____ |
| 2.7 | **Limetree Bay Refining, LLC** | 1 Estate Hope Christiansted, VI 00820 | **Goldman Sachs Bank USA** | ■ D  **2.1**<br>☐ E/F _____<br>☐ G _____ |
| 2.8 | **Limetree Bay Refining, LLC** | 1 Estate Hope Christiansted, VI 00820 | **Wilmington Trust, N.A.** | ■ D  **2.4**<br>☐ E/F _____<br>☐ G _____ |
| 2.9 | **Limetree Bay Cayman II, LLC** | | **Arcadia/Ark/Helix** | ☐ D _____<br>☐ E/F _____<br>■ G  **2.2** |
| 2.10 | **Limetree Bay Cayman II, LLC** | | **Chaucer/Apollo** | ☐ D _____<br>☐ E/F _____<br>■ G  **2.12** |
| 2.11 | **Limetree Bay Cayman, LLC** | | **Arcadia/Ark/Helix** | ☐ D _____<br>☐ E/F _____<br>■ G  **2.2** |
| 2.12 | **Limetree Bay Cayman, LLC** | | **Chaucer/Apollo** | ☐ D _____<br>☐ E/F _____<br>■ G  **2.12** |
| 2.13 | **Limetree Bay Financing, LLC** | | **Arcadia/Ark/Helix** | ☐ D _____<br>☐ E/F _____<br>■ G  **2.2** |

| Debtor | **Limetree Bay Refining Marketing, LLC** | Case number *(if known)* | **21-32356** |

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| | *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|---|
| 2.14 | **Limetree Bay Financing, LLC** | | **Chaucer/Apollo** | ☐ D _____<br>☐ E/F _____<br>■ G  **2.12** |
| 2.15 | **Limetree Bay Refining Holdings II, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Arcadia/Ark/Helix** | ☐ D _____<br>☐ E/F _____<br>■ G  **2.2** |
| 2.16 | **Limetree Bay Refining Holdings II, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Chaucer/Apollo** | ☐ D _____<br>☐ E/F _____<br>■ G  **2.12** |
| 2.17 | **Limetree Bay Refining Holdings, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Chaucer/Apollo** | ☐ D _____<br>☐ E/F _____<br>■ G  **2.12** |
| 2.18 | **Limetree Bay Refining Holdings,, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Arcadia/Ark/Helix** | ☐ D _____<br>☐ E/F _____<br>■ G  **2.2** |
| 2.19 | **Limetree Bay Refining Operating, LLC** | **1 Estate Hope Christiansted, VI 00820** | **J. Aron & Company LLC** | ☐ D _____<br>☐ E/F _____<br>■ G  **2.22** |
| 2.20 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Arcadia/Ark/Helix** | ☐ D _____<br>☐ E/F _____<br>■ G  **2.2** |
| 2.21 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **J. Aron & Company LLC** | ☐ D _____<br>☐ E/F _____<br>■ G  **2.34** |

| Debtor | **Limetree Bay Refining Marketing, LLC** | Case number *(if known)* | **21-32356** |
|---|---|---|---|

███ **Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| 2.22 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Chaucer/Apollo** | ☐ D ____ <br> ☐ E/F ____ <br> ■ G    **2.12** |
| 2.23 | **Limetree Bay Refining, LLC** | **11100 Brittmoore Park Drive Houston, TX 77041** | **BP Products North America Inc.** | ☐ D ____ <br> ☐ E/F ____ <br> ■ G    **2.7** |
| 2.24 | **Limetree Bay Refining, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **J. Aron & Company LLC** | ☐ D ____ <br> ☐ E/F ____ <br> ■ G    **2.22** |
| 2.25 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Arcadia/Ark/Helix** | ☐ D ____ <br> ☐ E/F ____ <br> ■ G    **2.2** |
| 2.26 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **WRB/Guardian General Insurance** | ☐ D ____ <br> ☐ E/F ____ <br> ■ G    **2.49** |
| 2.27 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Swiss Re/Westport Insurance Company** | ☐ D ____ <br> ☐ E/F ____ <br> ■ G    **2.48** |
| 2.28 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Rokstone/Guardian General Insurance** | ☐ D ____ <br> ☐ E/F ____ <br> ■ G    **2.47** |
| 2.29 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **QBE/Lloyds of London** | ☐ D ____ <br> ☐ E/F ____ <br> ■ G    **2.46** |

| Debtor | **Limetree Bay Refining Marketing, LLC** | | Case number *(if known)* | **21-32356** |
|---|---|---|---|---|

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

Column 1: **Codebtor** | Column 2: **Creditor**

| | Codebtor | | Creditor | |
|---|---|---|---|---|
| 2.30 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **PartnerRe Ireland Insurance** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.45** |
| 2.31 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **NOA/Lloyds of London** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.43** |
| 2.32 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Liberty Specialty Markets Agency td** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.37** |
| 2.33 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Lancashire Insurance Company UK, Ltd** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.36** |
| 2.34 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Insurance General Insurance Co Ltd.** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.21** |
| 2.35 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Houston Specialty Insurance Company** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.20** |
| 2.36 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Helvetia Swiss Insurance Co** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.19** |
| 2.37 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Hannover Re/HDI Global Specialty SE** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.18** |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

Debtor  **Limetree Bay Refining Marketing, LLC**                Case number *(if known)*  **21-32356**

---

■ **Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| 2.38 **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Great Lakes** | ☐ D _____ ☐ E/F _____ ■ G __2.16__ |
| 2.39 **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Fidelis Underwriting Ltd.** | ☐ D _____ ☐ E/F _____ ■ G __2.15__ |
| 2.40 **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Elseco Limited** | ☐ D _____ ☐ E/F _____ ■ G __2.14__ |
| 2.41 **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Convex Insurance UK Limited** | ☐ D _____ ☐ E/F _____ ■ G __2.13__ |
| 2.42 **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Guardian General Insurance Limited** | ☐ D _____ ☐ E/F _____ ■ G __2.17__ |
| 2.43 **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Berkshire Hathaway** | ☐ D _____ ☐ E/F _____ ■ G __2.4__ |
| 2.44 **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Atrium Underwriters Ltd** | ☐ D _____ ☐ E/F _____ ■ G __2.3__ |
| 2.45 **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **AIG Insurance Company - Puerto Rico** | ☐ D _____ ☐ E/F _____ ■ G __2.1__ |

| Debtor | Limetree Bay Refining Marketing, LLC | Case number *(if known)* | 21-32356 |
| --- | --- | --- | --- |

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
| --- | --- | --- | --- |
| 2.46 | Limetree Bay Refining, LLC | 1 Estate Hope Christiansted, VI 00820 | J. Aron & Company LLC | ☐ D _____ ☐ E/F _____ ■ G  __2.34__ |
| 2.47 | Limetree Bay Refining, LLC | 1 Estate Hope Christiansted, VI 00820 | BP Products North America Inc. | ☐ D _____ ☐ E/F _____ ■ G  __2.11__ |
| 2.48 | Limetree Bay Refining, LLC | 1 Estate Hope Christiansted, VI 00820 | Limetree Bay Terminals, LLC | ☐ D _____ ☐ E/F _____ ■ G  __2.39__ |
| 2.49 | Limetree Bay Refining, LLC | 1 Estate Hope Christiansted, VI 00820 | Chaucer/Apollo | ☐ D _____ ☐ E/F _____ ■ G  __2.12__ |
| 2.50 | Limetree Bay Services, LLC | 11100 Brittmoore Park Drive Houston, TX 77041 | Arcadia/Ark/Helix | ☐ D _____ ☐ E/F _____ ■ G  __2.2__ |
| 2.51 | Limetree Bay Services, LLC | 11100 Brittmoore Park Drive Houston, TX 77041 | Chaucer/Apollo | ☐ D _____ ☐ E/F _____ ■ G  __2.12__ |
| 2.52 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | J. Aron & Company LLC | ☐ D _____ ☐ E/F _____ ■ G  __2.29__ |
| 2.53 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | BP Products North America Inc. | ☐ D _____ ☐ E/F _____ ■ G  __2.9__ |

Debtor  **Limetree Bay Refining Marketing, LLC**                    Case number *(if known)*  **21-32356**

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| 2.54 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Arcadia/Ark/Helix** | ☐ D _____ ☐ E/F _____ ■ G  **2.2** |
| 2.55 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **WRB/Guardian General Insurance** | ☐ D _____ ☐ E/F _____ ■ G  **2.49** |
| 2.56 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Swiss Re/Westport Insurance Company** | ☐ D _____ ☐ E/F _____ ■ G  **2.48** |
| 2.57 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Rokstone/Guardian General Insurance** | ☐ D _____ ☐ E/F _____ ■ G  **2.47** |
| 2.58 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **QBE/Lloyds of London** | ☐ D _____ ☐ E/F _____ ■ G  **2.46** |
| 2.59 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **PartnerRe Ireland Insurance** | ☐ D _____ ☐ E/F _____ ■ G  **2.45** |
| 2.60 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **NOA/Lloyds of London** | ☐ D _____ ☐ E/F _____ ■ G  **2.43** |
| 2.61 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Liberty Specialty Markets Agency td** | ☐ D _____ ☐ E/F _____ ■ G  **2.37** |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| Debtor | **Limetree Bay Refining Marketing, LLC** | | Case number *(if known)* | **21-32356** |

---

▮ **Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| 2.62 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Lancashire Insurance Company UK, Ltd** | ☐ D ____ ☐ E/F ____ ▮ G __2.36__ |
| 2.63 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Insurance General Insurance Co Ltd.** | ☐ D ____ ☐ E/F ____ ▮ G __2.21__ |
| 2.64 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Houston Specialty Insurance Company** | ☐ D ____ ☐ E/F ____ ▮ G __2.20__ |
| 2.65 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Helvetia Swiss Insurance Co** | ☐ D ____ ☐ E/F ____ ▮ G __2.19__ |
| 2.66 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Hannover Re/HDI Global Specialty SE** | ☐ D ____ ☐ E/F ____ ▮ G __2.18__ |
| 2.67 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Great Lakes** | ☐ D ____ ☐ E/F ____ ▮ G __2.16__ |
| 2.68 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Fidelis Underwriting Ltd.** | ☐ D ____ ☐ E/F ____ ▮ G __2.15__ |
| 2.69 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Elseco Limited** | ☐ D ____ ☐ E/F ____ ▮ G __2.14__ |

Debtor   **Limetree Bay Refining Marketing, LLC**          Case number *(if known)*   **21-32356**

---

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

*Column 1:* **Codebtor**                                   *Column 2:* **Creditor**

| | | | | |
|---|---|---|---|---|
| 2.70 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Convex Insurance UK Limited** | ☐ D _____ ☐ E/F _____ ☑ G __2.13__ |
| 2.71 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Guardian General Insurance Limited** | ☐ D _____ ☐ E/F _____ ☑ G __2.17__ |
| 2.72 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Berkshire Hathaway** | ☐ D _____ ☐ E/F _____ ☑ G __2.4__ |
| 2.73 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Atrium Underwriters Ltd** | ☐ D _____ ☐ E/F _____ ☑ G __2.3__ |
| 2.74 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **AIG Insurance Company - Puerto Rico** | ☐ D _____ ☐ E/F _____ ☑ G __2.1__ |
| 2.75 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Chaucer/Apollo** | ☐ D _____ ☐ E/F _____ ☑ G __2.12__ |
| 2.76 | **Limetree Bay Ventures, LLC** | | **Arcadia/Ark/Helix** | ☐ D _____ ☐ E/F _____ ☑ G __2.2__ |
| 2.77 | **Limetree Bay Ventures, LLC** | | **WRB/Guardian General Insurance** | ☐ D _____ ☐ E/F _____ ☑ G __2.49__ |

---

| Debtor | **Limetree Bay Refining Marketing, LLC** | Case number *(if known)* | **21-32356** |

■ **Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | Column 2: **Creditor** | | |
|---|---|---|---|
| 2.78  **Limetree Bay Ventures, LLC** | **Swiss Re/Westport Insurance Company** | ☐ D _____ ☐ E/F _____ ■ G | 2.48 |
| 2.79  **Limetree Bay Ventures, LLC** | **Rokstone/Guardian General Insurance** | ☐ D _____ ☐ E/F _____ ■ G | 2.47 |
| 2.80  **Limetree Bay Ventures, LLC** | **QBE/Lloyds of London** | ☐ D _____ ☐ E/F _____ ■ G | 2.46 |
| 2.81  **Limetree Bay Ventures, LLC** | **PartnerRe Ireland Insurance** | ☐ D _____ ☐ E/F _____ ■ G | 2.45 |
| 2.82  **Limetree Bay Ventures, LLC** | **NOA/Lloyds of London** | ☐ D _____ ☐ E/F _____ ■ G | 2.43 |
| 2.83  **Limetree Bay Ventures, LLC** | **Liberty Specialty Markets Agency td** | ☐ D _____ ☐ E/F _____ ■ G | 2.37 |
| 2.84  **Limetree Bay Ventures, LLC** | **Lancashire Insurance Company UK, Ltd** | ☐ D _____ ☐ E/F _____ ■ G | 2.36 |
| 2.85  **Limetree Bay Ventures, LLC** | **Insurance General Insurance Co Ltd.** | ☐ D _____ ☐ E/F _____ ■ G | 2.21 |

Debtor   **Limetree Bay Refining Marketing, LLC**                    Case number *(if known)*   **21-32356**

---

■ **Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

*Column 1:* **Codebtor**                                                                 *Column 2:* **Creditor**

| | | |
|---|---|---|
| 2.86 | **Limetree Bay** | **Houston Specialty** |
| | **Ventures, LLC** | **Insurance Company** |

☐ D  _____
☐ E/F  _____
■ G  __2.20__

---

| | | |
|---|---|---|
| 2.87 | **Limetree Bay** | **Helvetia Swiss** |
| | **Ventures, LLC** | **Insurance Co** |

☐ D  _____
☐ E/F  _____
■ G  __2.19__

---

| | | |
|---|---|---|
| 2.88 | **Limetree Bay** | **Hannover Re/HDI** |
| | **Ventures, LLC** | **Global Specialty SE** |

☐ D  _____
☐ E/F  _____
■ G  __2.18__

---

| | | |
|---|---|---|
| 2.89 | **Limetree Bay** | **Great Lakes** |
| | **Ventures, LLC** | |

☐ D  _____
☐ E/F  _____
■ G  __2.16__

---

| | | |
|---|---|---|
| 2.90 | **Limetree Bay** | **Fidelis Underwriting** |
| | **Ventures, LLC** | **Ltd.** |

☐ D  _____
☐ E/F  _____
■ G  __2.15__

---

| | | |
|---|---|---|
| 2.91 | **Limetree Bay** | **Elseco Limited** |
| | **Ventures, LLC** | |

☐ D  _____
☐ E/F  _____
■ G  __2.14__

---

| | | |
|---|---|---|
| 2.92 | **Limetree Bay** | **Convex Insurance UK** |
| | **Ventures, LLC** | **Limited** |

☐ D  _____
☐ E/F  _____
■ G  __2.13__

---

| | | |
|---|---|---|
| 2.93 | **Limetree Bay** | **Guardian General** |
| | **Ventures, LLC** | **Insurance Limited** |

☐ D  _____
☐ E/F  _____
■ G  __2.17__

---

| Debtor | **Limetree Bay Refining Marketing, LLC** | Case number *(if known)* | **21-32356** |
|---|---|---|---|

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

Column 1: **Codebtor**

Column 2: **Creditor**

| 2.94 | **Limetree Bay Ventures, LLC** | **Berkshire Hathaway** | ☐ D _____ ☐ E/F _____ ■ G __**2.4**__ |
|---|---|---|---|
| 2.95 | **Limetree Bay Ventures, LLC** | **AIG Insurance Company - Puerto Rico** | ☐ D _____ ☐ E/F _____ ■ G __**2.1**__ |
| 2.96 | **Limetree Bay Ventures, LLC** | **Atrium Underwriters Ltd** | ☐ D _____ ☐ E/F _____ ■ G __**2.3**__ |
| 2.97 | **Limetree Bay Ventures, LLC** | **Chaucer/Apollo** | ☐ D _____ ☐ E/F _____ ■ G __**2.12**__ |

**Fill in this information to identify the case:**

Debtor name    **Limetree Bay Refining Marketing, LLC**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF TEXAS

Case number (if known)   21-32356

☐ Check if this is an
amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors     12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☑ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☑ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☑ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☑ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☑ *Schedule H: Codebtors* (Official Form 206H)
- ☑ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule*
- ☐ *Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☐ Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge based upon the information available to me at this time.

Executed on    **September 7, 2021**     X **/s/ Mark Shapiro**
Signature of individual signing on behalf of debtor

**Mark Shapiro**
Printed name

**Chief Restructuring Officer**
Position or relationship to debtor

---

**Fill in this information to identify the case:**

Debtor name     **Limetree Bay Refining Marketing, LLC**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF TEXAS

Case number (if known)   **21-32356**

☐ Check if this is an amended filing

---

## Official Form 207
## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy                              04/19

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

---

**Part 1:**   **Income**

1.  **Gross revenue from business**

☐ None.

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
|---|---|---|
| **From the beginning of the fiscal year to filing date:**<br>From  **1/01/2021** to **Filing Date** | ■ Operating a business<br>☐ Other _____ | $822,377,448.88 |

2.  **Non-business revenue**
Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☐ None.

| | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
|---|---|---|
| **From the beginning of the fiscal year to filing date:**<br>From  **1/01/2021** to **Filing Date** | Investment Income | $503.33 |

---

**Part 2:**   **List Certain Transfers Made Before Filing for Bankruptcy**

3.  **Certain payments or transfers to creditors within 90 days before filing this case**
List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☐ None.

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>Check all that apply |
|---|---|---|---|
| 3.1.  **AFCO Credit Insurance**<br>**4501 College Blvd**<br>**Suite 320**<br>**Leawood, KS 66211** | **4/29/2021**<br>**5/24/2021**<br>**6/30/2021** | **$236,306.37** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>■ Other  **Insurance** |

---

| Debtor | **Limetree Bay Refining Marketing, LLC** | Case number *(if known)* | **21-32356** |
|---|---|---|---|

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|
| 3.2. **BP Oil Supply**<br>**501 Westlake Park Blvd**<br>**Houston, TX 77079** | 4/13/2021<br>4/15/2021<br>4/16/2021<br>4/29/2021<br>4/30/2021<br>5/6/2021<br>5/21/2021<br>5/28/2021<br>6/4/2021<br>7/1/2021 | **$4,241,857.40** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.3. **Goldman Sachs & Co**<br>**200 West Street**<br>**New York, NY 10282** | 4/30/2021<br>5/28/2021 | **$563,888.89** | ■ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.4. **J. Aron & Company LLC**<br>**Attn: John Thomas**<br>**200 West Street**<br>**New York, NY 10282** | 4/12/2021<br>4/13/2021<br>4/14/2021<br>4/23/2021<br>4/27/2021<br>4/28/2021<br>5/3/2021<br>5/4/2021<br>5/5/2021<br>5/7/2021<br>5/10/2021<br>5/14/2021<br>5/18/2021<br>5/21/2021<br>5/24/2021<br>5/25/2021<br>5/26/2021<br>5/27/2021<br>6/1/2021<br>6/3/2021<br>6/7/2021<br>6/8/2021<br>6/10/2021<br>6/17/2021<br>6/25/2021 | **$24,107,736.14** | ■ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.5. **Limetree Bay Refining, LLC**<br>**#1 Estate Hope**<br>**Christiansted, VI 00820-5652** | 5/28/2021 | **$941,789.96** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>■ Other **Intercompany Propane Purchases** |
| 3.6. **Limetree Bay Terminals, LLC**<br>**#1 Estate Hope**<br>**Christiansted, VI 00820-5652** | 4/21/2021<br>4/23/2021 | **$5,888,282.01** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>■ Other **Intercompany Storage Fees** |

Debtor  **Limetree Bay Refining Marketing, LLC**　　　　　　Case number *(if known)* **21-32356**

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|
| 3.7. **Quinn Emanuel Urquhart**<br>**865 S. Figueroa St.**<br>**10th Floor**<br>**Los Angeles, CA 90017** | 6/3/2021 | $167,947.05 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☑ Services<br>☐ Other___ |
| 3.8. **Stroock & Stroock & Lavan LLP**<br>**180 Maiden Lane**<br>**New York, NY 10038-4982** | 6/3/2021 | $341,557.37 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☑ Services<br>☐ Other___ |

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

■ None.

| Insider's name and address<br>Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
|---|---|---|---|

5. **Repossessions, foreclosures, and returns**
List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

■ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|

6. **Setoffs**
List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

■ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|

**Part 3:   Legal Actions or Assignments**

7. **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**
List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

■ None.

| Case title<br>Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|

8. **Assignments and receivership**
List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

■ None

| Debtor | Limetree Bay Refining Marketing, LLC | | Case number *(if known)* | 21-32356 |
|---|---|---|---|---|

**Part 4:  Certain Gifts and Charitable Contributions**

9.  List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000

■ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|

**Part 5:  Certain Losses**

10.  All losses from fire, theft, or other casualty within 1 year before filing this case.

■ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br><br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br><br>List unpaid claims on Official Form 106A/B *(Schedule A/B: Assets – Real and Personal Property).* | Dates of loss | Value of property lost |
|---|---|---|---|

**Part 6:  Certain Payments or Transfers**

11.  **Payments related to bankruptcy**
List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

■ None.

| Who was paid or who received the transfer?<br>Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|

12.  **Self-settled trusts of which the debtor is a beneficiary**
List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

■ None.

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

13.  **Transfers not already listed on this statement**
List any transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

■ None.

| Who received transfer?<br>Address | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|

**Part 7:  Previous Locations**

14.  **Previous addresses**
List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

■ Does not apply

| Address | Dates of occupancy From-To |
|---|---|

| Debtor | **Limetree Bay Refining Marketing, LLC** | Case number *(if known)* | 21-32356 |
|---|---|---|---|

---

**Part 8:**   Health Care Bankruptcies

15. **Health Care bankruptcies**
Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

■  No. Go to Part 9.
☐  Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If  debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|

---

**Part 9:**   Personally Identifiable Information

16. **Does the debtor collect and retain personally identifiable information of customers?**

■  No.
☐  Yes. State the nature of the information collected and retained.

17. **Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

■  No. Go to Part 10.
☐  Yes. Does the debtor serve as plan administrator?

---

**Part 10:**   Certain Financial Accounts, Safe Deposit Boxes, and Storage Units

18. **Closed financial accounts**
Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

■ None

| Financial Institution name and Address | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

19. **Safe deposit boxes**
List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

■ None

| Depository institution name and address | Names of anyone with access to it Address | Description of the contents | Do you still have it? |
|---|---|---|---|

20. **Off-premises storage**
List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

■ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Do you still have it? |
|---|---|---|---|

---

**Part 11:**   Property the Debtor Holds or Controls That the Debtor Does Not Own

---

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                                Best Case Bankruptcy

| Debtor | Limetree Bay Refining Marketing, LLC | Case number *(if known)* 21-32356 |
|---|---|---|

**21. Property held for another**
List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

■ None

## Part 12: Details About Environment Information

For the purpose of Part 12, the following definitions apply:

*Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

*Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

*Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

■ No.
☐ Yes. Provide details below.

| Case title Case number | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|

**23. Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

■ No.
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

■ No.
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

## Part 13: Details About the Debtor's Business or Connections to Any Business

**25. Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

■ None

| Business name address | Describe the nature of the business | Employer Identification number Do not include Social Security number or ITIN.  Dates business existed |
|---|---|---|

**26. Books, records, and financial statements**
26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.
■ None

| Name and address | Date of service From-To |
|---|---|

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement

| Debtor | Limetree Bay Refining Marketing, LLC | Case number *(if known)* 21-32356 |
|---|---|---|

within 2 years before filing this case.

☐ None

| Name and address | Date of service From-To |
|---|---|
| 26b.1.  **Deloitte & Touche** | **2019-2021** |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

■ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

■ None

| Name and address |
|---|

## 27. Inventories
Have any inventories of the debtor's property been taken within 2 years before filing this case?

■ No

☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|

## 28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Jeffrey Rinker | | President | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Stephan Tompsett | | CFO | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Mark Chavez | | General Counsel/Secretary | |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Limetree Bay Refining, LLC | | Sole Member | 100% |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Mark Shapiro | B. Riley Advisory Services 4400 Post Oak Parkway Suite 1400 Houston, TX 77027 | Chief Restructuring Officer | |

Debtor **Limetree Bay Refining Marketing, LLC**                    Case number *(if known)* **21-32356**

| Name | Address | Position and nature of any interest | % of interest, if any |
|------|---------|-------------------------------------|------------------------|
| Steven J. Pully | 4564 Meadowwood Road Dallas, TX 75220 | Independent Member | |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No
☑ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|------|---------|-------------------------------------|---------------------------------------------------|
| Brian Lever | | President, CEO | |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|------|---------|-------------------------------------|---------------------------------------------------|
| Darius Sweet | | Manager | |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|------|---------|-------------------------------------|---------------------------------------------------|
| Robert Haugen | | Manager | |

30. **Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☑ No
☐ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|-------------------------------|------------------------------------------------------|-------|--------------------------------|

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☑ No
☐ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|--------------------------------|----------------------------------------------------------|

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No
☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the parent corporation |
|--------------------------|----------------------------------------------------------|

**Part 14:   Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true

Debtor    **Limetree Bay Refining Marketing, LLC**                          Case number *(if known)*  **21-32356**

and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **September  7, 2021**

**/s/ Mark Shapiro**                                            **Mark Shapiro**
Signature of individual signing on behalf of the debtor         Printed name

Position or relationship to debtor    **Chief Restructuring Officer**

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**

■ No
☐ Yes

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC**, *et al.*,[1] | **CASE NO.: 21-32351 (DRJ)** |
| **Debtors.** | **(Jointly Administered)** |

**DEBTORS' <u>EMERGENCY</u> MOTION TO AMEND**
**<u>MILESTONES AND BID PROCEDURES DEADLINES</u>**

**Emergency relief has been requested. Relief is requested not later than 9:30 a.m. on September 15, 2021.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on September 15, 2021, at 9:30 a.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk St., Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691.**

**Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Jones's home page. The meeting code is "JudgeJones". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your electronic appearance, click the "Electronic Appearance" link on Judge Jones's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

Limetree Bay Services, LLC ("**Limetree**") and its debtor affiliates (collectively, the "**Debtors**"), as debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), respectfully represent as follows in support of this motion (the "**Motion**").

## Relief Requested

1.     The Debtors seek entry of an order amending the Milestones (as defined below) and the Bid Procedures Deadlines (as defined below), and authorizing the Debtors, with the agreement of the Prepetition Secured Parties, to further extend the Milestones or Bid Procedures Deadlines, or any of them, without further order of this Court. Except as expressly requested herein, the Debtors do not seek any other revisions to the Final DIP Order (as defined below) or the Bid Procedures Order (as defined below).

2.     A proposed form of order granting the relief requested herein is attached hereto as **Exhibit A** (the "**Proposed Order**").

## Jurisdiction and Venue

3.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## Background

4.     On July 12, 2021 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code—thereby commencing the above-captioned Chapter 11 Cases. The Debtors continue to operate their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases. On or about July 26,

2021, an Official Committee of Unsecured Creditors was appointed (the "**Committee**"). (Doc. No. 189).

5.      On July 13, 2021, the Court entered an order authorizing the joint administration of the Chapter 11 Cases and permission to use a consolidated case caption. (Doc. No. 20).

6.      A discussion of the facts and circumstances surrounding these Chapter 11 Cases is set forth in the *Declaration of Mark Shapiro in Support of Chapter 11 Petitions and First Day Motions*, which is incorporated herein by reference. (Doc. No. 8).

### DIP Financing Milestones

7.      On July 12, 2021, the Debtors filed an *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-Petition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (IV) Approving Adequate Protection to Pre-Petition Secured Creditors, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* (Doc. No. 14) (the "**DIP Motion**"). On July 14, 2021, August 2, 2021, and August 11, 2021, the Court entered orders granting the DIP Motion on an interim basis (Doc. Nos. 104, 271, and 393). On August 27, 2021, the Court granted the DIP Motion on a final basis (Doc. No. 495) (the "**Final DIP Order**").

8.      As a form of adequate protection to the Prepetition Secured Parties (as defined in the Final DIP Order), the Final DIP Order contains certain deadlines, or Milestones (as defined in the Final DIP Order), by which the Debtors must (i) obtain a binding stalking horse bid for the sale of all or substantially all of the Debtors' assets that is reasonably acceptable to each Prepetition Secured Party (the "**Stalking Horse Milestone**"); and (ii) complete the closing of a sale of all or substantially all of the Debtors' assets that is reasonably acceptable to each Prepetition Secured

Party (the "**Sale Milestone**" and, together with the Stalking Horse Milestone, the "**Milestones**"). (Doc. No. 495, § 9(g)).

9.      Currently, the Stalking Horse Milestone and the Sale Milestone must be completed by September 10, 2021 and November 9, 2021, respectively. (*Id.*)

### Bid Procedures Deadlines

10.      On July 26, 2021, the Debtors filed an *Emergency Motion for Entry of Order: (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief* (Doc. No. 191) (the "**Bid Procedures Motion**"). The Bid Procedures Motion proposed certain dates and deadlines established to comply with the Milestones and consummate a sale by the Sale Milestone. (*Id.*). On August 11, 2021, the Court granted the Bid Procedures Motion (Doc. No. 392) (the "**Bid Procedures Order**").

11.      The Bid Procedures Order contains the following deadlines (collectively, the "**Bid Procedures Deadlines**"):

| Date/Deadline | Event |
|---|---|
| August 2, 2021 | Hearing on bidding procedures motion |
| August 6, 2021 | Deadline to establish and populate Data Room |
| September 7, 2021 | Bid Summary Deadline |
| September 10, 2021 | Stalking Horse Designation Deadline |
| September 13, 2021 | Deadline to file Stalking Horse Notice and Notice of Potential Assumption and Assignment of Executory Contracts |
| September 17, 2021, at 5:00 p.m. CT | Bid Deadline and Credit Bid Designation Deadline |
| September 17, 2021 | Deadline to object to Stalking Horse Notice |
| September 20, 2021, at 10:00 a.m. CT | Deadline to provide notice of Auction location |
| September 22, 2021, at 10:00 a.m. CT | Auction Date |
| September 24, 2021 | Deadline to file the Designation of Winning Bid |
| October 4, 2021, at 5:00 p.m. CT | Deadline to object to the Sale |
| October 8, 2021, at 5:00 p.m. CT | Deadline to reply to objection(s) to the Sale |
| October 8, 2021, at 12:00 p.m. CT | Contract Assumption Objection Deadline |
| October 12, 2021 | Deadline to file Amended Designation of Winning Bid to add Additional Purchased Contracts |
| October 14, 2021 | Sale Hearing (subject to Court availability) |
| October 15, 2021 | Expected entry of Sale Order |

| October 31, 2021 | Deadline to file Amended Designation of Winning Bid to remove previously identified Executory Contracts |
| November 1, 2021, at 5:00 p.m. CT | Deadline for Winning Bidder to close sale transaction |
| November 8, 2021, at 5:00 p.m. CT | Deadline for Back-up Bidder to close sale transaction (if applicable) |

## Basis for Relief Requested

12.     The paramount goal of any proposed sale of property of a debtor is to maximize the value received by the estate. *See, e.g., Official Committee of Subordinated Bondholders v. Integrated Resources. Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 659 ("It is a well-establish principal of bankruptcy law that the Debtors' duty with respect to [Section 363] sales is to obtain the highest price or greatest overall benefit possible for the estate"), *quoting Cello Bag Co. v. Champion Int'l Corp. (In re Atlanta Packaging Prods., Inc.)*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988). To that end, debtors are granted significant latitude in devising and implementing bidding and sale procedures under Section 363 of the Bankruptcy Code. Indeed, bankruptcy courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the bid procedures to be used in selling assets of the estate. *See, e.g., In re Integrated Resources, Inc.*, 147 B.R. at 656-57 (noting that overbid procedures and break-up fee arrangements that have been negotiated by a debtor are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"); *Asarco, Inc. v. Elliott Management (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011).

13.     By and through the DIP Motion and Bid Procedures Motion, the Debtors proposed certain milestones and dates to govern the sale of substantially all assets of the Debtors (the "**Assets**"). (Doc. Nos. 14 and 191). Since the outset of the Chapter 11 Cases, the Debtors have worked diligently to market the Assets and elicit proposals for the acquisition of the same. While the Debtors have received significant interest in the acquisition of the Assets, discussions with

interested parties remain ongoing. Accordingly, the Debtors believe, in their sound business judgment, that additional time would substantially benefit the estates and creditors by providing an opportunity to continue such discussions and, ultimately, negotiate the most advantageous proposal available to serve as a stalking horse bid for the sale.

14.     Accordingly, in conjunction with Jefferies LLC, investment banker for the estates, the Debtors prepared a revised timeline for the marketing and sale of the Assets, and the following amended Milestones and Bid Procedures Deadlines to account for the adjusted sale timeline:

|  | Current Milestones | Proposed Milestones |
|---|---|---|
| Stalking Horse Milestone | September 10, 2021 | October 18, 2021 |
| Sale Milestone | November 9, 2021 | December 11, 2021 |

|  | Current Date/Deadline | Proposed Date/Deadline |
|---|---|---|
| Bid Summary Deadline | September 7, 2021 | October 15, 2021 |
| Stalking Horse Designation Deadline | September 10, 2021 | October 18, 2021 |
| Deadline to file Stalking Horse Notice and Notice of Potential Assumption and Assignment of Executory Contracts | September 13, 2021 | October 21, 2021 |
| Bid Deadline and Credit Bid Designation Deadline | September 17, 2021, at 5:00 p.m. CT | October 25, 2021, at 5:00 p.m. CT |
| Deadline to object to Stalking Horse Notice | September 17, 2021 | October 25, 2021 |
| Deadline to provide notice of Auction location | September 20, 2021, at 10:00 a.m. CT | October 27, 2021, at 10:00 a.m. CT |
| Auction Date | September 22, 2021, at 10:00 a.m. CT | October 29, 2021, at 10:00 a.m. CT |
| Deadline to file the Designation of Winning Bid | September 24, 2021 | October 31, 2021 |
| Deadline to object to the Sale | October 4, 2021, at 5:00 p.m. CT | November 10, 2021, at 5:00 p.m. CT |
| Deadline to reply to objection(s) to the Sale | October 8, 2021, at 5:00 p.m. CT | November 14, 2021, at 5:00 p.m. CT |
| Contract Assumption Objection Deadline | October 8, 2021, at 12:00 p.m. CT | November 14, 2021, at 12:00 p.m. CT |
| Deadline to file Amended Designation of Winning Bid to add Additional Purchased Contracts | October 12, 2021 | November 18, 2021 |
| Sale Hearing (subject to Court availability) | October 14, 2021 | November 20, 2021 |
| Expected entry of Sale Order | October 15, 2021 | November 21, 2021 |

| Deadline to file Amended Designation of Winning Bid to remove previously identified Executory Contracts | October 31, 2021 | December 2, 2021 |
|---|---|---|
| Deadline for Winning Bidder to close sale transaction | November 1, 2021, at 5:00 p.m. CT | December 3, 2021, at 5:00 p.m. CT |
| Deadline for Back-up Bidder to close sale transaction (if applicable) | November 8, 2021, at 5:00 p.m. CT | December 10, 2021, at 5:00 p.m. CT |

Further, the Debtors have evaluated the expenditures under the existing budget and project that the Debtors will have sufficient funding to meet their obligations through the amended Milestones and Bid Procedures Deadlines. The Debtors have presented the proposed amended Milestones and Bid Procedure Deadlines to the Prepetition Secured Parties, 405 Sentinel, LLC (the "**DIP Agent**"), and the Committee. The Committee has consented to the amendment of the Milestones and Bid Procedure Deadlines as requested herein. The Debtors have requested the consent and approval of the Prepetition Secured Parties and DIP Agent and, as of the filing of this Motion, are awaiting a response.[2]

15.    Except for the amendment of the Milestones and Bid Procedure Deadlines, the Final DIP Order and Bid Procedures Order shall be unaffected by the relief requested herein and remain in full force and effect.

16.    Based on the foregoing, the Debtors submit that the relief requested serves the best interests of the estates and their creditors, and request that the Court grant the relief herein requested.

---

[2] If the Prepetition Secured Parties consent, amendment of the Milestones and Bid Procedure Deadlines is further supported by Section 9(i) of the Final DIP Order, which provides that the "grant of adequate protection to the Prepetition Secured Parties in this Final Order is without prejudice to the right of the Prepetition Secured Parties to seek at any time, including, without limitation, in connection with the Final Order, modification of the grant of adequate protection provided thereby so as to provide different or additional forms of adequate protection[.]" (Doc. No. 495, § 9(i)).

## Request for Emergency Relief

17.     The Debtors respectfully request emergency consideration of this Motion. The Milestones and Bid Procedures Deadlines are quickly approaching. Emergency relief is necessary so that the Debtors do not fail to satisfy their obligations under the Final DIP Order and Bid Procedures Order. Accordingly, the Debtors respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## No Prior Request for Relief

18.     No prior request for the relief sought herein has been made to this Court or any other Court in connection with these Chapter 11 Cases.

## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

19.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h), if applicable.

## Certification of Accuracy

20.     Pursuant to Local Rule 9013-1(i), this Motion is verified as to its accuracy by Debtors' counsel.

## Notice

21.     Notice of this Motion will be provided to the Master Service List, including: (a) the U.S. Trustee; (b) all secured creditors; (c) the Offices of the Attorney General of the State of Texas and the United States Virgin Islands; (d) the thirty (30) largest consolidated unsecured creditors for the Debtors; (e) the Debtors' identified, interested taxing authorities, including the Internal Revenue Service; (f) the Debtors' identified, interested government and regulatory entities; (g)

other interested parties as identified by the Debtors; (h) the Committee members and their counsel, if known; (i) counsel to the Committee; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The method of service for each party will be described more fully in the certificate of service prepared by the Debtors' claims and noticing agent. The Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, granting the Motion and granting all other relief that is appropriate under the circumstances.

RESPECTFULLY SUBMITTED this 10th day of September 2021.

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
**Jimmy D. Parrish, Esq.**
Fed. ID No. 2687598
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile:  407.841.0168
Email: egreen@bakerlaw.com
         jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
*Admitted Pro Hac Vice*
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com

*Counsel for the Debtors and Debtors in Possession*

## Certificate of Accuracy

      I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

                          */s/ Elizabeth A. Green*
                          Elizabeth A. Green

## Certificate of Service

      I certify that on September 10, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                          */s/ Elizabeth A. Green*
                          Elizabeth A. Green

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| IN RE: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC,** *et al.,*[1] | **CASE NO.: 21-32351 (DRJ)** |
| **Debtors.** | **(Jointly Administered)** |

**ORDER GRANTING DEBTORS' <u>EMERGENCY</u> MOTION TO
<u>AMEND MILESTONES AND BID PROCEDURES DEADLINES</u>**

Upon the motion ("**Motion**")[2] of the debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**") for entry of an order (the "**Order**") amending the Milestones and Bid Procedures Deadlines, as more fully set forth in the Motion; finding this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; finding that this matter is a core proceeding pursuant to 28 U.S.C. § 157; finding this Court may enter final orders in this matter consistent with Article III of the United States Constitution; finding that this matter is properly venued in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; finding notice of the Motion due and proper under the circumstances and in accordance with all applicable rules and orders, and no further or additional notice of the Motion being warranted; receiving no objections to the relief requested in the Motion; having considered the Motion, and all other documents submitted in support of the Motion; and, after due deliberation, finding that the relief requested by and through the Motion is due and proper, is premised on the Debtors' sound business judgment, and serves the best interests of the estates and their creditors; and sufficient cause appearing therefor,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

**IT IS HEREBY ORDERED:**

1.      The Motion is hereby granted in its entirety.

2.      The Milestones set forth in the Final DIP Order (Doc. No. 495) are hereby amended

as follows:

|  | **Current Milestones** | **Amended Milestones** |
|---|---|---|
| Stalking Horse Milestone | September 10, 2021 | October 18, 2021 |
| Sale Milestone | November 9, 2021 | December 11, 2021 |

3.      The Bid Procedures Deadlines set forth in the Bid Procedures Order (Doc. No. 392)

are hereby amended as follows:

| **4.** | **Current Date/Deadline** | **Amended Date/Deadline** |
|---|---|---|
| Bid Summary Deadline | September 7, 2021 | October 15, 2021 |
| Stalking Horse Designation Deadline | September 10, 2021 | October 18, 2021 |
| Deadline to file Stalking Horse Notice and Notice of Potential Assumption and Assignment of Executory Contracts | September 13, 2021 | October 21, 2021 |
| Bid Deadline and Credit Bid Designation Deadline | September 17, 2021, at 5:00 p.m. CT | October 25, 2021, at 5:00 p.m. CT |
| Deadline to object to Stalking Horse Notice | September 17, 2021 | October 25, 2021 |
| Deadline to provide notice of Auction location | September 20, 2021, at 10:00 a.m. CT | October 27, 2021, at 10:00 a.m. CT |
| Auction Date | September 22, 2021, at 10:00 a.m. CT | October 29, 2021, at 10:00 a.m. CT |
| Deadline to file the Designation of Winning Bid | September 24, 2021 | October 31, 2021 |
| Deadline to object to the Sale | October 4, 2021, at 5:00 p.m. CT | November 10, 2021, at 5:00 p.m. CT |
| Deadline to reply to objection(s) to the Sale | October 8, 2021, at 5:00 p.m. CT | November 14, 2021, at 5:00 p.m. CT |
| Contract Assumption Objection Deadline | October 8, 2021, at 12:00 p.m. CT | November 14, 2021, at 12:00 p.m. CT |
| Deadline to file Amended Designation of Winning Bid to add Additional Purchased Contracts | October 12, 2021 | November 18, 2021 |
| Sale Hearing (subject to Court availability) | October 14, 2021 | November 20, 2021 |
| Expected entry of Sale Order | October 15, 2021 | November 21, 2021 |

4848-5136-5882.1

| Deadline to file Amended Designation of Winning Bid to remove previously identified Executory Contracts | October 31, 2021 | December 2, 2021 |
|---|---|---|
| Deadline for Winning Bidder to close sale transaction | November 1, 2021, at 5:00 p.m. CT | December 3, 2021, at 5:00 p.m. CT |
| Deadline for Back-up Bidder to close sale transaction (if applicable) | November 8, 2021, at 5:00 p.m. CT | December 10, 2021, at 5:00 p.m. CT |

5.     The extensions contemplated hereby are without prejudice and the Debtors and Prepetition Secured Parties may mutually agree to extend the Milestones and Bid Procedures Deadlines without further approval or order by the Court, subject only to the Debtors providing notice to the Court, the U.S. Trustee, the DIP Agent, and Committee of any further extensions.

6.     The Final DIP Order and Bid Procedures Order shall remain unaffected, except as expressly modified hereby, and in full force and effect.

7.     Notice of the Motion as provided therein is good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

8.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

9.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

DATED:

_____
Honorable David R. Jones
United States Bankruptcy Judge

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

September 15, 2021

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| **LIMETREE BAY SERVICES, LLC**, *et al.*,[1] | **CASE NO.: 21-32351 (DRJ)** |
| Debtors. | **(Jointly Administered)** |

### ORDER GRANTING DEBTORS' <u>EMERGENCY</u> MOTION TO
### <u>AMEND MILESTONES AND BID PROCEDURES DEADLINES</u>

Upon the motion ("**Motion**")[2] of the debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**") for entry of an order (the "**Order**") amending the Milestones and Bid Procedures Deadlines, as more fully set forth in the Motion; finding this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; finding that this matter is a core proceeding pursuant to 28 U.S.C. § 157; finding this Court may enter final orders in this matter consistent with Article III of the United States Constitution; finding that this matter is properly venued in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; finding notice of the Motion due and proper under the circumstances and in accordance with all applicable rules and orders, and no further or additional notice of the Motion being warranted; receiving no objections to the relief requested in the Motion; having considered the Motion, and all other documents submitted in support of the Motion; and, after due deliberation, finding that the relief requested by and through the Motion is due and proper, is premised on the Debtors' sound business judgment, and serves the best interests of the estates and their creditors; and sufficient cause appearing therefor,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

**IT IS HEREBY ORDERED:**

1.       The Motion is hereby granted in its entirety.

2.       The Milestones set forth in the Final DIP Order (Doc. No. 495) are hereby amended

as follows:

|  | **Current Milestones** | **Amended Milestones** |
|---|---|---|
| Stalking Horse Milestone | September 10, 2021 | October 18, 2021 |
| Sale Milestone | November 9, 2021 | December 11, 2021 |

3.       The Bid Procedures Deadlines set forth in the Bid Procedures Order (Doc. No. 392)

are hereby amended as follows:

| **4.** | **Current Date/Deadline** | **Amended Date/Deadline** |
|---|---|---|
| Bid Summary Deadline | September 7, 2021 | October 15, 2021 |
| Stalking Horse Designation Deadline | September 10, 2021 | October 18, 2021 |
| Deadline to file Stalking Horse Notice and Notice of Potential Assumption and Assignment of Executory Contracts | September 13, 2021 | October 21, 2021 |
| Bid Deadline and Credit Bid Designation Deadline | September 17, 2021, at 5:00 p.m. CT | October 25, 2021, at 5:00 p.m. CT |
| Deadline to object to Stalking Horse Notice | September 17, 2021 | October 25, 2021 |
| Deadline to provide notice of Auction location | September 20, 2021, at 10:00 a.m. CT | October 27, 2021, at 10:00 a.m. CT |
| Auction Date | September 22, 2021, at 10:00 a.m. CT | October 29, 2021, at 10:00 a.m. CT |
| Deadline to file the Designation of Winning Bid | September 24, 2021 | October 31, 2021 |
| Deadline to object to the Sale | October 4, 2021, at 5:00 p.m. CT | November 10, 2021, at 5:00 p.m. CT |
| Deadline to reply to objection(s) to the Sale | October 8, 2021, at 5:00 p.m. CT | November 14, 2021, at 5:00 p.m. CT |
| Contract Assumption Objection Deadline | October 8, 2021, at 12:00 p.m. CT | November 14, 2021, at 12:00 p.m. CT |
| Deadline to file Amended Designation of Winning Bid to add Additional Purchased Contracts | October 12, 2021 | November 18, 2021 |
| Sale Hearing (subject to Court availability) | October 14, 2021 | November 20, 2021 |
| Expected entry of Sale Order | October 15, 2021 | November 21, 2021 |

2

| Deadline to file Amended Designation of Winning Bid to remove previously identified Executory Contracts | October 31, 2021 | December 2, 2021 |
| --- | --- | --- |
| Deadline for Winning Bidder to close sale transaction | November 1, 2021, at 5:00 p.m. CT | December 3, 2021, at 5:00 p.m. CT |
| Deadline for Back-up Bidder to close sale transaction (if applicable) | November 8, 2021, at 5:00 p.m. CT | December 10, 2021, at 5:00 p.m. CT |

5.      The extensions contemplated hereby are without prejudice and the Debtors and Prepetition Secured Parties may mutually agree to extend the Milestones and Bid Procedures Deadlines without further approval or order by the Court, subject only to the Debtors providing notice to the Court, the U.S. Trustee, the DIP Agent, and Committee of any further extensions.

6.      The Final DIP Order and Bid Procedures Order shall remain unaffected, except as expressly modified hereby, and in full force and effect.

7.      Notice of the Motion as provided therein is good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

8.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

9.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.


**Signed:  September 15, 2021.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

4848-5136-5882.1

# UNITED STATES BANKRUPTCY COURT

### SOUTHERN  DISTRICT OF  TEXAS

### HOUSTON DIVISION

| | | |
|---|---|---|
| In Re. LIMETREE BAY SERVICES, LLC, et al. | § | Case No.  21-32351 |
| | § | |
| | § | Lead Case No.  21-32351 |
| Debtor(s) | § | |
| | § | ☒ Jointly Administered |

## Monthly Operating Report

Chapter 11

Reporting Period Ended: 07/31/2021       Petition Date: 07/12/2021

Months Pending: 1           Industry Classification: 3 2 4 1

Reporting Method:     Accrual Basis ⦿    Cash Basis ◯

Debtor's Full-Time Employees (current):     130

Debtor's Full-Time Employees (as of date of order for relief):    131

**Supporting  Documentation** (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

- ☒ Statement of cash receipts and disbursements
- ☒ Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
- ☒ Statement of operations (profit or loss statement)
- ☐ Accounts receivable aging
- ☐ Postpetition liabilities aging
- ☐ Statement of capital assets
- ☐ Schedule of payments to professionals
- ☐ Schedule of payments to insiders
- ☒ All bank statements and bank reconciliations for the reporting period
- ☐ Description of the assets sold or transferred and the terms of the sale or transfer

/s/ Elizabeth A. Green

Signature of Responsible Party

09/21/2021

Date

Elizabeth A. Green

Printed Name of Responsible Party

200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, FL 32801

Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

UST Form 11-MOR (06/07/2021)       1

Debtor's Name  LIMETREE BAY SERVICES, LLC, et al.                    Case No.  21-32351

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a. | Cash balance beginning of month | $8,307 | |
| b. | Total receipts (net of transfers between accounts) | $0 | $0 |
| c. | Total disbursements (net of transfers between accounts) | $0 | $0 |
| d. | Cash balance end of month (a+b-c) | $8,307 | |
| e. | Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f. | Total disbursements for quarterly fee calculation (c+e) | $0 | $0 |

| Part 2:  Asset and Liability Status<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month |
|---|---|
| a. | Accounts receivable (total net of allowance) | $5,778,575 |
| b. | Accounts receivable over 90 days outstanding (net of allowance) | $3,629,892 |
| c. | Inventory    (Book ○  Market ○  Other ◉   (attach explanation)) | $0 |
| d | Total current assets | $5,821,125 |
| e. | Total assets | $5,821,125 |
| f. | Postpetition payables (excluding taxes) | $0 |
| g. | Postpetition payables past due (excluding taxes) | $0 |
| h. | Postpetition taxes payable | $0 |
| i. | Postpetition taxes past due | $0 |
| j. | Total postpetition debt (f+h) | $0 |
| k. | Prepetition secured debt | $0 |
| l. | Prepetition priority debt | $0 |
| m. | Prepetition unsecured debt | $5,939,013 |
| n. | Total liabilities (debt) (j+k+l+m) | $5,939,013 |
| o. | Ending equity/net worth (e-n) | $-117,888 |

| Part 3:  Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a. | Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b. | Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c. | Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4:  Income Statement (Statement of Operations)<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a. | Gross income/sales (net of returns and allowances) | $34,242 | |
| b. | Cost of goods sold (inclusive of depreciation, if applicable) | $0 | |
| c. | Gross profit (a-b) | $34,242 | |
| d. | Selling expenses | $0 | |
| e. | General and administrative expenses | $0 | |
| f. | Other expenses | $0 | |
| g. | Depreciation and/or amortization (not included in 4b) | $0 | |
| h. | Interest | $0 | |
| i. | Taxes (local, state, and federal) | $0 | |
| j. | Reorganization items | $0 | |
| k. | Profit (loss) | $34,242 | $34,242 |

Debtor's Name LIMETREE BAY SERVICES, LLC, et al.                    Case No.  21-32351

## Part 5:  Professional Fees and Expenses

| | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| a. | Debtor's professional fees & expenses (bankruptcy)  *Aggregate Total* | | $0 | $0 | $0 | $0 |
| | *Itemized Breakdown by Firm* | | | | | |
| | Firm Name | Role | | | | |
| | i | Other | $0 | $0 | $0 | $0 |
| | ii | Other | $0 | $0 | $0 | $0 |

| | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy)  *Aggregate Total* | | | | | |
| | *Itemized Breakdown by Firm* | | | | | |
| | Firm Name | Role | | | | |
| | i | | | | | |
| | ii | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | | |

## Part 6:  Postpetition Taxes

| | | Current Month | Cumulative |
|---|---|---|---|
| a. | Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. | Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. | Postpetition employer payroll taxes accrued | $0 | $0 |
| d. | Postpetition employer payroll taxes paid | $0 | $0 |
| e. | Postpetition property taxes paid | $0 | $0 |
| f. | Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. | Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

## Part 7: Questionnaire - During this reporting period:

a.  Were any payments made on prepetition debt?  (if yes, see Instructions)    Yes ◯   No ⬤

b.  Were any payments made outside the ordinary course of business without court approval?  (if yes, see Instructions)    Yes ◯   No ⬤

c.  Were any payments made to or on behalf of insiders?    Yes ◯   No ⬤

d.  Are you current on postpetition tax return filings?    Yes ⬤   No ◯

e.  Are you current on postpetition estimated tax payments?    Yes ⬤   No ◯

f.  Were all trust fund taxes remitted on a current basis?    Yes ⬤   No ◯

g.  Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions)    Yes ⬤   No ◯

h.  Were all payments made to or on behalf of professionals approved by the court?    Yes ◯   No ◯   N/A ⬤

i.  Do you have:          Worker's compensation insurance?    Yes ⬤   No ◯

    If yes, are your premiums current?    Yes ⬤   No ◯   N/A ◯   (if no, see Instructions)

    Casualty/property insurance?    Yes ⬤   No ◯

    If yes, are your premiums current?    Yes ⬤   No ◯   N/A ◯   (if no, see Instructions)

    General liability insurance?    Yes ⬤   No ◯

    If yes, are your premiums current?    Yes ⬤   No ◯   N/A ◯   (if no, see Instructions)

j.  Has a plan of reorganization been filed with the court?    Yes ◯   No ⬤

| | |
|---|---|
| Debtor's Name LIMETREE BAY SERVICES, LLC, et al. | Case No.  21-32351 |

k.  Has a disclosure statement been filed with the court?    Yes ○   No ●

l.  Are you current with quarterly U.S. Trustee fees as    Yes ●   No ○
set forth under 28 U.S.C. § 1930?

**Part 8: Individual Chapter 11 Debtors (Only)**

| | | |
|---|---|---|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |

l.  Are you required to pay any Domestic Support Obligations as defined by 11    Yes ○   No ●
U.S.C § 101(14A)?

m.  If yes, have you made all Domestic Support Obligation payments?    Yes ○   No ○   N/A ●

**Privacy Act Statement**

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107.  The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6).  The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith.  This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law.  Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records."  See 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006).  A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm.  Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee.  11 U.S.C. § 1112(b)(4)(F).

**<u>I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.</u>**

| | |
|---|---|
| Mark Shapiro | Mark Shapiro, Chief Restructuring Officer |
| Signature of Responsible Party | Printed Name of Responsible Party |
| Chief Restructuring Officer | 09/21/2021 |
| Title | Date |

| CASE NAME: | **Limetree Bay Services, LLC** |
|---|---|
| CASE NUMBER: | **21-32351 (Jointly Administered under Lead Case No.: 21-32351)** |

### Notes to the Monthly Operating Report

## General:

On July 12, 2021 (the "Petition Date"), Limetree Bay Services, LLC ("Limetree") filed a voluntary petition with the United States Bankruptcy Court under Chapter 11 of the Bankruptcy Code [Case No.: 21-32351], along with five (5) affiliated entities (Affiliated Entities"). The debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067);  and Limetree Bay Refining Marketing, LLC (9222); (collectively, the "Debtors" or "Jointly Administered Debtors"). The bankruptcy filings of Limetree and the Affiliated Entities are jointly administered under Case No. 21-32351.

On or about June 17, 2021, the Jointly Administered Debtors retained B. Riley as chief restructuring officer ("CRO"). Mark Shapiro, as principal representative of B. Riley in its capacity, serves as CRO to the Jointly Administered Debtors.

Debtor-in-Possession Financial Statements - The accompanying schedules herein are unaudited, preliminary, and may not comply with generally accepted accounting principles in the United States of America ("U.S. GAAP") in all material respects.

The Monthly Operating Report ("MOR") is limited in scope, covers a limited time period, and has been prepared solely for the purpose of complying with the monthly reporting requirements of the Bankruptcy Court and the United States Trustee.  The information presented herein has not been subjected to all procedures that would typically be applied to financial information presented in accordance with U.S. GAAP. Upon the application of such procedures, the financial information could be subject to changes, and these changes could be material. The information furnished in this MOR includes normal recurring adjustments, but does not include all of the adjustments that would typically be made for interim financial statements in accordance with U.S. GAAP.

Reservation of Rights: Given the complexity of the Debtors' business, inadvertent errors, omissions or over inclusions may have occurred. Accordingly, the Debtors hereby reserve all of their rights to dispute the validity, status, enforceability, or executory nature of any claim amount, representation or other statement in this MOR and reserve the right to amend or supplement this MOR, if necessary, but shall be under no obligation to do so.

## July 12-31, 2021 Monthly Operating Report:

**(1)**  The Reporting Period for this MOR is July 12-31, 2021, and the financial statements referenced herein cover the same time period.

**(2)**  The Financial Statements are reported on an Accrual Basis. Cash Receipts & Disbursements are reported on a Cash Basis.

**(3)**  The CRO, Mark Shapiro, has signed this MOR. Mr. Shapiro is an authorized signatory for the Debtor. In reviewing and signing the MOR, Mr. Shapiro has relied upon the efforts, statements and representations of various personnel employed by the Debtor and the Debtor's advisors. Mr. Shapiro has not (and could not have) personally verified the accuracy of each statement and representation contained in the MOR, including statements and representations concerning amounts owed to creditors, classification of such amounts, and other attached information.

**(4)**  MOR Part 2, d - Total Current Assets includes Cash, Accounts Receivable and an expected insurance refund.  The expected insurance refund is recorded as a debit to post-petition accounts payable in the debtor's accounting records.

**(5)**  MOR Part 2, e - Total Assets includes Current Assets.

**(6)**  MOR Part 2, f - Post-Petition Payables (excluding taxes) includes Accounts Payable Trade.

**(7)**  MOR Part 2, k-m - Amounts are per the Debtor's bankruptcy schedules and are subject to adjustment once the claims process has been completed by the CRO, which includes, but is not limited to, examining, determining the validity of and objecting to any disputed, contingent, unliquidated and filed claims.

**(8)**  MOR Part 2, k-o - As of the time of this filing, the CRO has not determined with accuracy the amount of the secured and unsecured debt, both of which are components of ending net equity/net worth.  Accordingly, the CRO makes no representations regarding the accuracy of the form-calculated net equity/net worth of the Debtor.

**(9)**  MOR Part 4a - Includes an expected insurance refund for $34,242.  The refund is recorded as a credit to employee benefits on the debtor's financial statements.

**(10)**  MOR Part 7, i - See attached the schedule of insurance in effect for the Jointly Administered Debtors.

**Attachments to MOR:**

**A.**  Financial Statements

**B.**  Statement of Cash Receipts and Disbursements

**C.**  Bank Account Schedule, bank statements and bank reconciliations

**D.**  Schedule of Insurance in effect as of July 31, 2021 for the Jointly Administered Debtors

**STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS**
**FOR THE PERIOD BEGINNING** <u>July 12, 2021</u> **AND ENDING** <u>July 31,2021</u>

Name of Debtor: **Limetree Bay Services, LLC, et al.**          Case Number: **21-32351**
Date of Petition:   **July 12, 2021**

| | | CURRENT MONTH | | CUMULATIVE PETITION TO DATE |
|---|---|---|---|---|
| **1. FUNDS AT BEGINNING OF PERIOD** | $ | 8,306.97 | $ | 8,306.97 |
| | | | | |
| **2. RECEIPTS:** | | | | |
| A. Cash Sales | | - | | - |
| Minus: Cash Refunds | | - | | - |
| Net Cash Sales | | - | | - |
| B. Accounts Receivable | | - | | - |
| C. Other Receipts | | - | | - |
| (If you receive rental income, you must attach a rent roll) | | | | |
| **3. TOTAL RECEIPTS (*Lines 2A+2B+2C*)** | | - | | - |
| **4. TOTAL FUNDS AVAILABLE FOR OPERATIONS (*Line 1 + Line 3*)** | | 8,306.97 | | 8,306.97 |
| | | | | |
| **5. DISBURSEMENTS** | | | | |
| A.   Advertising | | - | | - |
| B.   Bank Charges & Fees | | - | | - |
| C.   Contract Labor | | - | | - |
| D.   Fixed Asset Payments (not incl. in "N") | | - | | - |
| E.   Insurance | | - | | - |
| F.   Inventory Payments | | - | | - |
| G.   Leases & Contracts | | - | | - |
| H.   Manufacturing Supplies | | - | | - |
| I.   Office Supplies | | - | | - |
| J.   Payroll | | - | | - |
| K.   Professional Fees (Accounting & Legal) | | - | | - |
| L.   Rent | | - | | - |
| M.   Repairs & Maintenance | | - | | - |
| N.   Secured Creditor Payments | | - | | - |
| O.   Taxes Paid - Payroll | | - | | - |
| P.   Taxes Paid - Sales & Use | | - | | - |
| Q.   Taxes Paid - Other | | - | | - |
| R.   Telephone | | - | | - |
| S.   Travel & Entertainment | | - | | - |
| T.   U.S. Trustee | | - | | - |
| U.   Utilities | | - | | - |
| V.   Vehicle Expenses | | - | | - |
| W.   Other Operating Expenses | | - | | - |
| **6. TOTAL DISBURSEMENTS (*Sum of 5A thru W*)** | | - | | - |
| **7. ENDING BALANCE (*Line 4 Minus Line 6*)** | $ | 8,306.97 | $ | 8,306.97 |

## STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS (CONT'D.)

### Detail of Other Receipts and Other Disbursements

**OTHER RECEIPTS:**

Describe Each Item of Other Receipt and List Amount of Receipt.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| | $ - | $ - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | $ - | $ - |

**"Other Receipts" includes Loans from Insiders and other sources (i.e. Officer/Owner, related parties directors, related corporations, etc.). Please describe below:**

| Loan Amount | Source of Funds | Purpose | Repayment Schedule |
|---|---|---|---|
| | | | |
| | | | |

**OTHER DISBURSEMENTS:**

Describe Each Item of Other Disbursement and List Amount of Disbursement.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| | $ - | $ - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | $ - | $ - |

**Limetree Bay Services, LLC**
**Balance Sheet**
**July 31, 2021**

|  | 7/31/2021 |
|---|---|
| 0000110850 Checking Account - Citibank, N.A. - 6869787150 | 8,306.97 |
| **\*CASH & CASH EQUIVALENTS** | **8,306.97** |
|  |  |
| 0000150500 Intercompany A/R | 5,778,575.40 |
| **\*ACCOUNTS RECEIVABLE - AFFILIATE** | **5,778,575.40** |
| **\*\*TOTAL CURRENT ASSETS** | **5,786,882.37** |
|  |  |
| **\*\*\*\* TOTAL ASSETS** | **5,786,882.37** |
|  |  |
| 0000200010 A/P TRADE RECONCILIATION | 30,094.19 |
| **\*ACCOUNTS PAYABLE TRADE** | **30,094.19** |
|  |  |
| 0000235500 Intercompany A/P | (5,934,865.03) |
| **\*AFFILIATE PAYABLE, NET** | **(5,934,865.03)** |
|  |  |
| 0000230010 ACCRUED PAYROLL | 0.00 |
| **\*ACCRUED LIABILITIES** | **0.00** |
| **\*\*TOTAL CURRENT LIABILITIES** | **(5,904,770.84)** |
|  |  |
| **\*\*\* TOTAL LIABILITIES** | **(5,904,770.84)** |
|  |  |
| **TOTAL MEMBERS' EQUITY** |  |
|  |  |
| 0000320010 MEMBERS INITIAL INVESTMENT | (50.00) |
| **\*MEMBERS' INITIAL EQUITY** | **(50.00)** |
| **\*\*MEMBERS' EQUITY** | **(50.00)** |
|  |  |
| **\*\*PROFIT/LOSS IN CURRENT YEAR** | **117,938.47** |
|  |  |
| **\*\*\* TOTAL MEMBERS' EQUITY** | **117,888.47** |
|  |  |
| **\*\*\*\* TOTAL LIABILITIES & MEMBERS' EQUITY** | **(5,786,882.37)** |

**Limetree Bay Services, LLC**
**Income Statement**

**For the month ending July 31, 2021**

| | July 13-31, 2021 Unaudited |
|---|---|
| 0000801051 EMPLOYEE BENEFITS-HOSPITALIZATION/MEDICAL | (34,241.97) |
| **BENEFITS**[1] | **(34,241.97)** |
| 0000807020 TRAVEL AND LODGING | 0.00 |
| **MEALS & ENTERTAINMENT** | **0.00** |
| **EMPLOYEE EXPENSES**[1] | **(34,241.97)** |
| 0000803010 ACCOUNTING FEES | 0.00 |
| **ACCOUNTING FEES** | **0.00** |
| **PROFESSIONAL FEES** | **0.00** |
| 0000806030 REPAIR & MAINTENANCE - GENERAL | 0.00 |
| **REPAIRS AND MAINTENANCE** | **0.00** |
| 0000808040 TELECOMMUNICATIONS EXPENSE-DATA | 0.00 |
| 0000808043 TELECOMMUNICATIONS EXP-CELLULAR | 0.00 |
| **COMMUNICATION EXPENSES** | **0.00** |
| **COMMUNICATIONS AND IT EXPENSES** | **0.00** |
| 0000813015 RENTALS-PASSENGER CARS | 0.00 |
| 0000813030 RENTS OFFICE & REAL ESTATE | 0.00 |
| 0000813035 RENTALS-EQUIPMENT OTHER | 0.00 |
| **RENTAL EXPENSES** | **0.00** |
| 0000812031 BOOKS/MANUALS/SUBSCRIPTIONS | 0.00 |
| **LICENSES, MEMBERSHIPS AND SUBSCRIPTIONS** | **0.00** |
| 0000820072 GAS & OIL CONSUMED-VEHICLES | 0.00 |
| **OFFICE AND MISC OPERATING EXPENSES** | **0.00** |
| **OTHER O&M** | **0.00** |
| **GENERAL ADMINISTRATION EXPENSE**[1] | **(34,241.97)** |
| **\*\*TOTAL EXPENSES** | **(34,241.97)** |
| **\*\*\*OPERATING INCOME** | **34,241.97** |
| **\*\*\*\*NET INCOME (LOSS)** | **34,241.97** |

**Notes:**
**(1)** Expected insurance refund.

Citibank, N.A.     292 / 00954
Sort 2224
New York, N.Y. 10043

001/R1/04F000

000
CITIBANK, N. A.
**Account**
        **0919**
**Statement Period**
**Jul 1 - Jul 31, 2021**
**Relationship Manager**
Lucken,Kent
(617) 717-9023
                Page 1  of  2

Limetree Bay Services, LLC
842 W Sam Houston Parkway N Suite 4
Houston                 TX  77024

## CitiBusiness® ACCOUNT AS OF JULY 31, 2021

### Relationship Summary:

| | |
|---|---|
| **Checking** | **$8,306.97** |
| **Savings** | ----- |
| **Checking Plus** | ----- |

## SUGGESTIONS AND RECOMMENDATIONS

Your Volcker Rule Disclosure and Important Notice Regarding Future Verbal and Written Communications
is now available to view online. Visit citi.com/accountagreementsandnotices and click on Citi Private
Bank Notices to view the notices. For questions or concerns, please contact your Private Banking team
for more information.

## SERVICE CHARGE SUMMARY FROM JUNE 1, 2021 THRU JUNE 30, 2021

| Type of Charge | No./Units | Price/Unit | Amount |
|---|---|---|---|
| **CITIBUSINESS CHECKING #      0919** | | | |
| Average Daily Collected Balance | | | $57,794.01 |
| DEPOSIT SERVICES | | | |
|    DEPOSIT ASSESSMENT | 57,794 | | 8.31 |
| **WAIVE | | | |
|     MONTHLY MAINTENANCE FEE | 1 | 24.0000 | 24.00 |
| **WAIVE | | | |
| TRANSFER SERVICES | | | |
|    INCOMING WIRE TRANSFER | 4 | 15.0000 | 60.00 |
| **WAIVE | | | |
| AUTOMATED CLEARING HOUSE (ACH) | | | |
|    ACH DEBIT RECEIVED | 9 | .1700 | 1.53 |
| **WAIVE | | | |
| **Total Charges for Services** | | | **$0.00** |
| Average collected balances | | | $57,794.01 |
| Balances eligible for Earnings Credit | | | $57,794.01 |
| Earnings Credit allowance at  0.20000% | | | $0.00 |
| Charges Subject to Earnings Credit | | | $0.00 |
| **Net Service Charge** | | | **$0.00** |

Limetree Bay Services, LLC                Account        0919        Page 2 of 2
                                          Statement Period:  Jul 1 - Jul 31, 2021

## CHECKING ACTIVITY

**CitiBusiness Checking**

| **0919** | | **Beginning Balance:** | **$127,441.88** |
|---|---|---|---|
| | | **Ending Balance:** | **$8,306.97** |

| Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 07/01 | ACH DEBIT<br>ADP Tax      ADP Tax   15PEV 070226A01 Jul 01 | 26,600.96 | | 100,840.92 |
| 07/01 | ACH DEBIT<br>ADP WAGE PAY     WAGE PAY  722059873356PEV Jul 01 | 75,949.82 | | 24,891.10 |
| 07/02 | ACH DEBIT<br>ASCENSUS TRUST   RET PLAN  228148 07022021 Jul 02 | 14,872.79 | | 10,018.31 |
| 07/08 | FUNDS TRANSFER<br>WIRE FROM LIMETR  EE BAY REF INING, LLC     Jul 08 | | 276,000.00 | 286,018.31 |
| 07/12 | ACH DEBIT<br>ASCENSUS TRUST   RET PLAN  228148 07122021 Jul 12 | 11,530.77 | | 274,487.54 |
| 07/12 | ACH DEBIT<br>ADP Tax      ADP Tax   15PEV 071227A01 Jul 12 | 73,958.53 | | 200,529.01 |
| 07/12 | ACH DEBIT<br>ADP WAGE PAY     WAGE PAY  552057410916PEV Jul 12 | 192,222.04 | | 8,306.97 |
| | **Total Debits/Credits** | **395,134.91** | **276,000.00** | |

## CUSTOMER SERVICE INFORMATION

IF YOU HAVE QUESTIONS ON:        YOU CAN CALL:                YOU CAN WRITE:

Checking                         800-870-1073                Citi Private Bank
                                 (For Speech and Hearing     Client Services
                                 Impaired Customers Only     153 East 53rd Street 18th Floor
                                 TTY: 800-788-6775)          New York, New York 10022

For change in address, call your account officer or visit your branch.

© 2021 Citigroup Inc. Citibank, N.A. Member FDIC.
Citi with Arc Design and CitiBusiness are registered service marks of Citigroup Inc. or its affiliates.

**LIMETREE BAY SERVICES, LLC**
**LBS Checking Account** 110850
**Citi BA** 0919
**July 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 6/30/2021 | $ | 127,441.88 |
| Deposits | | $ | 276,000.00 |
| ACH / Debits | | $ | (395,134.91) |
| Wires | | $ | - |
| Capital Gain/Losses | | $ | - |
| Bank Charges | | $ | - |
| Dividends | | $ | - |
| Ending Balance per Bank | 7/31/2021 | $ | 8,306.97 |
| Opening Balance  per Book | 6/30/2021 | $ | 127,441.88 |
| Deposits | | $ | 276,000.00 |
| ACH / Debits | | $ | (395,134.91) |
| Wires | | $ | - |
| Capital Gain/Losses | | | - |
| Bank Charges | | $ | - |
| Dividends | | $ | - |
| Ending Balance per Book | 7/31/2021 | $ | 8,306.97 |
| Intransit Payroll Payment | | | |
| | | $ | 8,306.97 |
| | | $ | - |

| | | |
|---|---|---|
| Reconciled by | George Southwell | |
| Date: | 8/10/2021 | |
| Approved by | | |
| Date: | | |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of July 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | AGCS (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AGCS (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, Allianz, Axis (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, Aspen (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, HDI (Amended Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, Liberty (Endorsement | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, TRV (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, TRV (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, TRV (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG/National Union Fire Insurance Co | Combined Property | Primary $250M | 026-1001312 | 2021.09.01 |
| Limetree Bay Refining, LLC | Allianz (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz Global Risk US Insurance Company | Combined Property | Primary $1.25BN | USN00023920 | 2021.12.01 |
| Limetree Bay Refining, LLC | Aspen (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | Atrium Underwriters Ltd | Combined Property | $150M XS $200M | B0509ENGAO2000588 | 2021.12.01 |
| Limetree Bay Refining, LLC | Axis (Endorsement) | Builder's Risk | $50M | EAU646295/01/2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 92SRD102973 | |
| Limetree Bay Refining, LLC | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 42-PRP-312023-01 | 2021.09.01 |
| Limetree Bay Refining, LLC | CIN 318/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of July 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | Convex Insurance UK Limited | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Elseco limited | Combined Property | $300M XS $200M | B0509ENGAO2000563 | 2021.12.01 |
| Limetree Bay Services, LLC | Liberty | Worker's Comp | | WCC-641-444917-020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Fidelis/ Fidelis Underwriting Ltd. | Combined Property | $250M XS $250M | B0509ENGAO2000613 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hannover Re/HDI Global Specialty SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Helvetia/Helvetia Swiss Insurance Co in Liechtenstein Ltd | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Helvetia/Helvetia Swiss Insurance Co in Liechtenstein Ltd | Combined Property | $300M XS $200M | B0509ENGAO2000586 | 2021.12.01 |
| Limetree Bay Refining, LLC | HSIC/Houston Specialty Insurance Company | Combined Property | $150M XS 50M | PRO440373 | 2021.12.01 |
| Limetree Bay Refining, LLC | IGI/Insurance General Insurance Co Ltd. | Combined Property | $300M XS $200M | B0509ENGAO2000563 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lancashire/Lancashire Insurance Company UK, Ltd. | Combined Property | $300M XS $200M | B0509ENGAO2000587 | 2021.12.01 |
| Limetree Bay Refining, LLC | LSM/Liberty Specialty Markets Agency Limited | Combined Property | $100M XS $100M | LSMAEN143232A | 2021.12.01 |
| Limetree Bay Refining, LLC | Munich Re/Great Lakes Insurance SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | NOA/Lloyds of London | Combined Property | $300M XS $200M | B0509ENGAO2000586 | 2021.12.01 |
| Limetree Bay Refining, LLC | Partner Re/PartnerRe Ireland Insurance dac | Combined Property | $150M XS $350M | B0509ENGAO2000589 | 2021.12.01 |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of July 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | PICC/Guardian General Insurance | Combined Property | $100M XS $100M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | QBE/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Rokstone/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC | SCOR (3)/General Security Indemnity Company of Arizona | Combined Property | Primary $1.25BN | FA007943720201 | |
| Limetree Bay Refining, LLC | Sompo/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Swiss Re/Westport Insurance Company | Combined Property | Primary $500M | OMP 2000425-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Validus Specialty/Lloyds of London | Combined Property | Primary $250M | AJH292893A20 | |
| Limetree Bay Refining, LLC | Westchester Surplus Lines Ins Co/Starr Technical Risks Agency, Inc | Combined Property | Primary $500M | EPRN18215263 | 2021.12.01 |
| Limetree Bay Refining, LLC | WRB/Guardian General Insurance | Combined Property | $50M XS $50M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Zurich/Zurich American Insurance Company | Combined Property | Primary $100M | OGR 1296457-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arcadian/Ark/Helix Bermuda | Builder's Risk | $25M xs $100M | NAMBM2100005 | 2022.06.01 |
| Limetree Bay Refining, LLC | Allianz | Refinery Excess Liability | $15M xs $53M | USL00880520 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz | Environmental Liability | $15M xs $85M | USL00873320 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty | Refinery Primary Liability | | AS6-641-444917-010 | 2021.12.01 |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of July 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---------|---------|------|-----------------|---------------|-----------------|
| Limetree Bay Refining, LLC | Travelers Syndicate | Refinery Primary Liability | | ENCAS2000012 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer/Apollo | Refinery Excess Liability | $15M | ENCAS2000011 | 2021.12.01 |
| Limetree Bay Refining, LLC | Westchester | Refinery Excess Liability | $3M xs $25M | G71809808001 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Refinery Excess Liability | $25M xs $28M | 4380100 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer | Refinery Excess Liability | $11M po $22M xs $68M | ENCAS2000020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lex-London | Refinery Excess Liability | $11M po $22M xs $68M | 62785689 | 2021.12.01 |
| Limetree Bay Refining, LLC | OSL | Refinery Excess Liability | $10M xs $90M | EXS-154724-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | AXA XL Bermuda | Refinery Excess Liability | $25M xs $125M | XLUMB-229978 | 2021.12.01 |
| Limetree Bay Refining, LLC | OCIL Bermuda | Refinery Excess Liability | $25M po $40M xs $150M | U920968-0620 | 2021.12.01 |
| Limetree Bay Refining, LLC | Sompo Bermuda | Refinery Excess Liability | $15M po $40M xs $150M | EXC30001524800 | 2021.12.01 |
| Limetree Bay Refining, LLC | Argo Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | ARGO-CAS-OR-001484 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arch Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | URP0065257-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel Bermuda | Refinery Excess Liability | $12.5M po $50M xs $190M | 1454233-11636-UMB-2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hamilton Bermuda | Refinery Excess Liability | $7.5M po $50M xs $190M | CX20-9216 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chubb Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LBR-2144/XS004 | 2021.12.01 |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of July 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | Liberty Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LSMAEC119907A | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $1M | ENVP0000296-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $9M xs $1M | ENVX0000256-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Environmental Liability | $25M xs $10M | 262704 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ascot | Environmental Liability | $25M xs $35M | ENXP2110000428-01 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel | Environmental Liability | $25M xs $60M | MKLV4EFX102259 | 2021.12.01 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $15M | 8261-8347 | 2022.04.20 |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000623319211 | |
| Limetree Bay Refining, LLC | Wesco Insurance Company | Executive Risk | $1M | EUW1909831 00 | |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $10M | 1000622392201 | 2027.04.27 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | | 8247-1536 | |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

## UNITED STATES BANKRUPTCY COURT

SOUTHERN   DISTRICT OF   TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| In Re. LIMETREE BAY REFINING HOLDINGS, LLC | § § § § | Case No.  21-32352 |
| Debtor(s) | | Lead Case No.  21-32351 |
| | | ☒ Jointly Administered |

# Monthly Operating Report

Chapter 11

Reporting Period Ended: 07/31/2021          Petition Date: 07/12/2021

Months Pending: 1          Industry Classification: 3  2  4  1

Reporting Method:          Accrual Basis ◉          Cash Basis ○

Debtor's Full-Time Employees (current):          0

Debtor's Full-Time Employees (as of date of order for relief):          0

**Supporting  Documentation** (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

☐ Statement of cash receipts and disbursements
☐ Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
☐ Statement of operations (profit or loss statement)
☐ Accounts receivable aging
☐ Postpetition liabilities aging
☐ Statement of capital assets
☐ Schedule of payments to professionals
☐ Schedule of payments to insiders
☐ All bank statements and bank reconciliations for the reporting period
☐ Description of the assets sold or transferred and the terms of the sale or transfer

/s/ Elizabeth A. Green
Signature of Responsible Party

09/21/2021
Date

Elizabeth A. Green
Printed Name of Responsible Party

200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, FL 32801
Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

UST Form 11-MOR (06/07/2021)          1

| Debtor's Name | LIMETREE BAY REFINING HOLDINGS, LLC | | Case No. | 21-32352 |

## Part 1: Cash Receipts and Disbursements

| | | Current Month | Cumulative |
|---|---|---|---|
| a. | Cash balance beginning of month | $0 | |
| b. | Total receipts (net of transfers between accounts) | $0 | $0 |
| c. | Total disbursements (net of transfers between accounts) | $0 | |
| d. | Cash balance end of month (a+b-c) | $0 | |
| e. | Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f. | Total disbursements for quarterly fee calculation (c+e) | $0 | $0 |

## Part 2: Asset and Liability Status
(Not generally applicable to Individual Debtors. See Instructions.)

| | | Current Month | |
|---|---|---|---|
| a. | Accounts receivable (total net of allowance) | $0 | |
| b. | Accounts receivable over 90 days outstanding (net of allowance) | $0 | |
| c. | Inventory   (Book ○   Market ○   Other ◉   (attach explanation)) | $0 | |
| d | Total current assets | $0 | |
| e. | Total assets | $0 | |
| f. | Postpetition payables (excluding taxes) | $0 | |
| g. | Postpetition payables past due (excluding taxes) | $0 | |
| h. | Postpetition taxes payable | $0 | |
| i. | Postpetition taxes past due | $0 | |
| j. | Total postpetition debt (f+h) | $0 | |
| k. | Prepetition secured debt | $0 | |
| l. | Prepetition priority debt | $0 | |
| m. | Prepetition unsecured debt | $0 | |
| n. | Total liabilities (debt) (j+k+l+m) | $0 | |
| o. | Ending equity/net worth (e-n) | $0 | |

## Part 3: Assets Sold or Transferred

| | | Current Month | Cumulative |
|---|---|---|---|
| a. | Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b. | Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c. | Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

## Part 4: Income Statement (Statement of Operations)
(Not generally applicable to Individual Debtors. See Instructions.)

| | | Current Month | Cumulative |
|---|---|---|---|
| a. | Gross income/sales (net of returns and allowances) | $0 | |
| b. | Cost of goods sold (inclusive of depreciation, if applicable) | $0 | |
| c. | Gross profit (a-b) | $0 | |
| d. | Selling expenses | $0 | |
| e. | General and administrative expenses | $0 | |
| f. | Other expenses | $0 | |
| g. | Depreciation and/or amortization (not included in 4b) | $0 | |
| h. | Interest | $0 | |
| i. | Taxes (local, state, and federal) | $0 | |
| j. | Reorganization items | $0 | |
| k. | Profit (loss) | $0 | $0 |

Debtor's Name  LIMETREE BAY REFINING HOLDINGS, LLC                    Case No.  21-32352

## Part 5:  Professional Fees and Expenses

| | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| a. | Debtor's professional fees & expenses (bankruptcy)  *Aggregate Total* | | $0 | $0 | $0 | $0 |
| | *Itemized Breakdown by Firm* | | | | | |
| | Firm Name | Role | | | | |
| | i | Other | $0 | $0 | $0 | $0 |
| | ii | Other | $0 | $0 | $0 | $0 |

| | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy)  *Aggregate Total* | | | | | |
| | *Itemized Breakdown by Firm* | | | | | |
| | Firm Name | Role | | | | |
| | i | | | | | |
| | ii | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | | |

## Part 6:  Postpetition Taxes

| | Current Month | Cumulative |
|---|---|---|
| a. Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. Postpetition employer payroll taxes accrued | $0 | $0 |
| d. Postpetition employer payroll taxes paid | $0 | $0 |
| e. Postpetition property taxes paid | $0 | $0 |
| f. Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

## Part 7: Questionnaire - During this reporting period:

a.  Were any payments made on prepetition debt?  (if yes, see Instructions)   Yes ○   No ◉

b.  Were any payments made outside the ordinary course of business without court approval?  (if yes, see Instructions)   Yes ○   No ◉

c.  Were any payments made to or on behalf of insiders?   Yes ○   No ◉

d.  Are you current on postpetition tax return filings?   Yes ◉   No ○

e.  Are you current on postpetition estimated tax payments?   Yes ◉   No ○

f.  Were all trust fund taxes remitted on a current basis?   Yes ◉   No ○

g.  Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions)   Yes ○   No ◉

h.  Were all payments made to or on behalf of professionals approved by the court?   Yes ○   No ○   N/A ◉

i.  Do you have:   Worker's compensation insurance?   Yes ○   No ◉

   If yes, are your premiums current?   Yes ○   No ○   N/A ◉   (if no, see Instructions)

   Casualty/property insurance?   Yes ○   No ◉

   If yes, are your premiums current?   Yes ○   No ○   N/A ◉   (if no, see Instructions)

   General liability insurance?   Yes ○   No ◉

   If yes, are your premiums current?   Yes ○   No ○   N/A ◉   (if no, see Instructions)

j.  Has a plan of reorganization been filed with the court?   Yes ○   No ◉

Debtor's Name LIMETREE BAY REFINING HOLDINGS, LLC          Case No. 21-32352

k.  Has a disclosure statement been filed with the court?          Yes ○   No ●
l.  Are you current with quarterly U.S. Trustee fees as            Yes ●   No ○
    set forth under 28 U.S.C. § 1930?

| **Part 8: Individual Chapter 11 Debtors (Only)** |
|---|

| | | |
|---|---|---|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |

l.  Are you required to pay any Domestic Support Obligations as defined by 11    Yes ○   No ●
    U.S.C § 101(14A)?
m.  If yes, have you made all Domestic Support Obligation payments?          Yes ○   No ○   N/A ●

### Privacy Act Statement

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107. The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6). The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith. This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law. Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records." See 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006). A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm. Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee. 11 U.S.C. § 1112(b)(4)(F).

**<u>I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.</u>**

/s/ Mark Shapiro                                    Mark Shapiro, Chief Restructuring Officer
Signature of Responsible Party                      Printed Name of Responsible Party

Chief Restructuring Officer                         09/21/2021
Title                                               Date

**CASE NAME:**        <u>Limetree Bay Refining Holdings, LLC</u>
**CASE NUMBER:**      <u>21-32352 (Jointly Administered under Lead Case No.: 21-32351)</u>

### Notes to the Monthly Operating Report

## General:

On July 12, 2021 (the "Petition Date"), Limetree Bay Services, LLC ("Limetree") filed a voluntary petition with the United States Bankruptcy Court under Chapter 11 of the Bankruptcy Code [Case No.: 21-32351], along with five (5) affiliated entities (Affiliated Entities"). The debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067);  and Limetree Bay Refining Marketing, LLC (9222); (collectively, the "Debtors" or "Jointly Administered Debtors"). The bankruptcy filings of Limetree and the Affiliated Entities are jointly administered under Case No. 21-32351.

On or about June 17, 2021, the Jointly Administered Debtors retained B. Riley as chief restructuring officer ("CRO"). Mark Shapiro, as principal representative of B. Riley in its capacity, serves as CRO to the Jointly Administered Debtors.

Debtor-in-Possession Financial Statements - The accompanying schedules herein are unaudited, preliminary, and may not comply with generally accepted accounting principles in the United States of America ("U.S. GAAP") in all material respects.

The Monthly Operating Report ("MOR") is limited in scope, covers a limited time period, and has been prepared solely for the purpose of complying with the monthly reporting requirements of the Bankruptcy Court and the United States Trustee.  The information presented herein has not been subjected to all procedures that would typically be applied to financial information presented in accordance with U.S. GAAP. Upon the application of such procedures, the financial information could be subject to changes, and these changes could be material. The information furnished in this MOR includes normal recurring adjustments, but does not include all of the adjustments that would typically be made for interim financial statements in accordance with U.S. GAAP.

Reservation of Rights: Given the complexity of the Debtors' business, inadvertent errors, omissions or over inclusions may have occurred. Accordingly, the Debtors hereby reserve all of their rights to dispute the validity, status, enforceability, or executory nature of any claim amount, representation or other statement in this MOR and reserve the right to amend or supplement this MOR, if necessary, but shall be under no obligation to do so.

## July 12-31, 2021 Monthly Operating Report:

**(1)**  The Reporting Period for this MOR is July 12-31, 2021.

**(2)**  The CRO, Mark Shapiro, has signed this MOR.  Mr. Shapiro is an authorized signatory for the Debtor. In reviewing and signing the MOR, Mr. Shapiro has relied upon the efforts, statements and representations of various personnel employed by the Debtor and the Debtor's advisors. Mr. Shapiro has not (and could not have) personally verified the accuracy of each statement and representation contained in the MOR, including statements and representations concerning amounts owed to creditors, classification of such amounts, and other attached information.

**(3)**  MOR Parts 1, 2 and 4 - The Debtor is not an operating entity and therefore does not have any assets or liabilities.

**(4)**  MOR Part 2, k-m - Amounts are per the Debtor's bankruptcy schedules and are subject to adjustment once the claims process has been completed by the CRO, which includes, but is not limited to, examining, determining the validity of and objecting to any disputed, contingent, unliquidated and filed claims.

**(5)**  MOR Part 2, k-o - As of the time of this filing, the CRO has not determined with accuracy the amount of the secured and unsecured debt, both of which are components of ending net equity/net worth.  Accordingly, the CRO makes no representations regarding the accuracy of the form-calculated net equity/net worth of the Debtor.

<u>Attachments to MOR:</u>

**A.**  Schedule of Insurance in effect as of July 31, 2021 for the Jointly Administered Debtors

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of July 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---------|---------|------|-----------------|---------------|-----------------|
| Limetree Bay Refining, LLC | AGCS (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AGCS (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, Allianz, Axis (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, Aspen (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, HDI (Amended Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, Liberty (Endorsement | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, TRV (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, TRV (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, TRV (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG/National Union Fire Insurance Co | Combined Property | Primary $250M | 026-1001312 | 2021.09.01 |
| Limetree Bay Refining, LLC | Allianz (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz Global Risk US Insurance Company | Combined Property | Primary $1.25BN | USN00023920 | 2021.12.01 |
| Limetree Bay Refining, LLC | Aspen (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | Atrium Underwriters Ltd | Combined Property | $150M XS $200M | B0509ENGAO2000588 | 2021.12.01 |
| Limetree Bay Refining, LLC | Axis (Endorsement) | Builder's Risk | $50M | EAU646295/01/2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 92SRD102973 | |
| Limetree Bay Refining, LLC | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 42-PRP-312023-01 | 2021.09.01 |
| Limetree Bay Refining, LLC | CIN 318/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of July 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---------|---------|------|-----------------|---------------|-----------------|
| Limetree Bay Refining, LLC | Convex Insurance UK Limited | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Elseco limited | Combined Property | $300M XS $200M | B0509ENGAO2000563 | 2021.12.01 |
| Limetree Bay Services, LLC | Liberty | Worker's Comp | | WCC-641-444917-020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Fidelis/ Fidelis Underwriting Ltd. | Combined Property | $250M XS $250M | B0509ENGAO2000613 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hannover Re/HDI Global Specialty SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Helvetia/Helvetia Swiss Insurance Co in Liechtenstein Ltd | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Helvetia/Helvetia Swiss Insurance Co in Liechtenstein Ltd | Combined Property | $300M XS $200M | B0509ENGAO2000586 | 2021.12.01 |
| Limetree Bay Refining, LLC | HSIC/Houston Specialty Insurance Company | Combined Property | $150M XS 50M | PRO440373 | 2021.12.01 |
| Limetree Bay Refining, LLC | IGI/Insurance General Insurance Co Ltd. | Combined Property | $300M XS $200M | B0509ENGAO2000563 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lancashire/Lancashire Insurance Company UK, Ltd. | Combined Property | $300M XS $200M | B0509ENGAO2000587 | 2021.12.01 |
| Limetree Bay Refining, LLC | LSM/Liberty Specialty Markets Agency Limited | Combined Property | $100M XS $100M | LSMAEN143232A | 2021.12.01 |
| Limetree Bay Refining, LLC | Munich Re/Great Lakes Insurance SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | NOA/Lloyds of London | Combined Property | $300M XS $200M | B0509ENGAO2000586 | 2021.12.01 |
| Limetree Bay Refining, LLC | Partner Re/PartnerRe Ireland Insurance dac | Combined Property | $150M XS $350M | B0509ENGAO2000589 | 2021.12.01 |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of July 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | PICC/Guardian General Insurance | Combined Property | $100M XS $100M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | QBE/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Rokstone/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC | SCOR (3)/General Security Indemnity Company of Arizona | Combined Property | Primary $1.25BN | FA007943720201 | |
| Limetree Bay Refining, LLC | Sompo/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Swiss Re/Westport Insurance Company | Combined Property | Primary $500M | OMP 2000425-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Validus Specialty/Lloyds of London | Combined Property | Primary $250M | AJH292893A20 | |
| Limetree Bay Refining, LLC | Westchester Surplus Lines Ins Co/Starr Technical Risks Agency, Inc | Combined Property | Primary $500M | EPRN18215263 | 2021.12.01 |
| Limetree Bay Refining, LLC | WRB/Guardian General Insurance | Combined Property | $50M XS $50M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Zurich/Zurich American Insurance Company | Combined Property | Primary $100M | OGR 1296457-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arcadian/Ark/Helix Bermuda | Builder's Risk | $25M xs $100M | NAMBM2100005 | 2022.06.01 |
| Limetree Bay Refining, LLC | Allianz | Refinery Excess Liability | $15M xs $53M | USL00880520 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz | Environmental Liability | $15M xs $85M | USL00873320 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty | Refinery Primary Liability | | AS6-641-444917-010 | 2021.12.01 |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of July 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | Travelers Syndicate | Refinery Primary Liability | | ENCAS2000012 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer/Apollo | Refinery Excess Liability | $15M | ENCAS2000011 | 2021.12.01 |
| Limetree Bay Refining, LLC | Westchester | Refinery Excess Liability | $3M xs $25M | G71809808001 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Refinery Excess Liability | $25M xs $28M | 4380100 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer | Refinery Excess Liability | $11M po $22M xs $68M | ENCAS2000020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lex-London | Refinery Excess Liability | $11M po $22M xs $68M | 62785689 | 2021.12.01 |
| Limetree Bay Refining, LLC | OSL | Refinery Excess Liability | $10M xs $90M | EXS-154724-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | AXA XL Bermuda | Refinery Excess Liability | $25M xs $125M | XLUMB-229978 | 2021.12.01 |
| Limetree Bay Refining, LLC | OCIL Bermuda | Refinery Excess Liability | $25M po $40M xs $150M | U920968-0620 | 2021.12.01 |
| Limetree Bay Refining, LLC | Sompo Bermuda | Refinery Excess Liability | $15M po $40M xs $150M | EXC30001524800 | 2021.12.01 |
| Limetree Bay Refining, LLC | Argo Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | ARGO-CAS-OR-001484 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arch Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | URP0065257-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel Bermuda | Refinery Excess Liability | $12.5M po $50M xs $190M | 1454233-11636-UMB-2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hamilton Bermuda | Refinery Excess Liability | $7.5M po $50M xs $190M | CX20-9216 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chubb Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LBR-2144/XS004 | 2021.12.01 |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

## United States Bankruptcy Court
## Southern District of Texas (Houston)

### Schedule of Insurance Policies - As of July 31, 2021

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---------|---------|------|-----------------|---------------|-----------------|
| Limetree Bay Refining, LLC | Liberty Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LSMAEC119907A | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $1M | ENVP0000296-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $9M xs $1M | ENVX0000256-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Environmental Liability | $25M xs $10M | 262704 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ascot | Environmental Liability | $25M xs $35M | ENXP2110000428-01 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel | Environmental Liability | $25M xs $60M | MKLV4EFX102259 | 2021.12.01 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $15M | 8261-8347 | 2022.04.20 |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000623319211 | |
| Limetree Bay Refining, LLC | Wesco Insurance Company | Executive Risk | $1M | EUW1909831 00 | |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $10M | 1000622392201 | 2027.04.27 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | | 8247-1536 | |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

# UNITED STATES BANKRUPTCY COURT

SOUTHERN   DISTRICT OF   TEXAS

HOUSTON DIVISION

| | |
|---|---|
| In Re. LIMETREE BAY REFINING HOLDINGS II, LLC | Case No.  21-32353 |
| | § |
| | § |
| | § |
| Debtor(s) | § |

Case No.  21-32353

Lead Case No.  21-32351

☒ Jointly Administered

## Monthly Operating Report

Chapter 11

Reporting Period Ended: 07/31/2021

Petition Date: 07/12/2021

Months Pending: 1

Industry Classification: | 3 | 2 | 4 | 1 |

Reporting Method:          Accrual Basis ⦿          Cash Basis ○

Debtor's Full-Time Employees (current):                    0

Debtor's Full-Time Employees (as of date of order for relief):          0

**Supporting  Documentation**  (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

- ☒ Statement of cash receipts and disbursements
- ☒ Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
- ☒ Statement of operations (profit or loss statement)
- ☐ Accounts receivable aging
- ☐ Postpetition liabilities aging
- ☐ Statement of capital assets
- ☐ Schedule of payments to professionals
- ☐ Schedule of payments to insiders
- ☒ All bank statements and bank reconciliations for the reporting period
- ☐ Description of the assets sold or transferred and the terms of the sale or transfer

/s/ Elizabeth A. Green
_____
Signature of Responsible Party

09/21/2021
_____
Date

Elizabeth A. Green
_____
Printed Name of Responsible Party

200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, FL 32801
_____
Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

UST Form 11-MOR (06/07/2021)                              1

Debtor's Name LIMETREE BAY REFINING HOLDINGS II, LLC

Case No. 21-32353

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a. Cash balance beginning of month | $50 | |
| b. Total receipts (net of transfers between accounts) | $0 | $0 |
| c. Total disbursements (net of transfers between accounts) | $0 | $0 |
| d. Cash balance end of month (a+b+c) | $50 | |
| e. Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f. Total disbursements for quarterly fee calculation (c+e) | $0 | $0 |

| Part 2: Asset and Liability Status<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | |
|---|---|---|
| a. Accounts receivable (total net of allowance) | $0 | |
| b. Accounts receivable over 90 days outstanding (net of allowance) | $0 | |
| c. Inventory    (Book ○    Market ○    Other ⦿    (attach explanation)) | $0 | |
| d Total current assets | $50 | |
| e. Total assets | $1,118,862,006 | |
| f. Postpetition payables (excluding taxes) | $0 | |
| g. Postpetition payables past due (excluding taxes) | $0 | |
| h. Postpetition taxes payable | $0 | |
| i. Postpetition taxes past due | $0 | |
| j. Total postpetition debt (f+h) | $0 | |
| k. Prepetition secured debt | $779,383,442 | |
| l. Prepetition priority debt | $0 | |
| m. Prepetition unsecured debt | $0 | |
| n. Total liabilities (debt) (j+k+l+m) | $779,383,442 | |
| o. Ending equity/net worth (e-n) | $339,478,564 | |

| Part 3: Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a. Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b. Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c. Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4: Income Statement (Statement of Operations)<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a. Gross income/sales (net of returns and allowances) | $0 | |
| b. Cost of goods sold (inclusive of depreciation, if applicable) | $0 | |
| c. Gross profit (a-b) | $0 | |
| d. Selling expenses | $0 | |
| e. General and administrative expenses | $0 | |
| f. Other expenses | $0 | |
| g. Depreciation and/or amortization (not included in 4b) | $0 | |
| h. Interest | $0 | |
| i. Taxes (local, state, and federal) | $0 | |
| j. Reorganization items | $0 | |
| k. Profit (loss) | $0 | $0 |

| Debtor's Name | LIMETREE BAY REFINING HOLDINGS II, LLC | | Case No. | 21-32353 |

**Part 5:  Professional Fees and Expenses**

| | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|
| a. | Debtor's professional fees & expenses (bankruptcy)  *Aggregate Total* | $0 | $0 | $0 | $0 |
| | *Itemized Breakdown by Firm* | | | | |
| | Firm Name / Role | | | | |
| | i | Other | $0 | $0 | $0 | $0 |
| | ii | Other | $0 | $0 | $0 | $0 |

| | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy)  *Aggregate Total* | | | | |
| | *Itemized Breakdown by Firm* | | | | |
| | Firm Name / Role | | | | |
| | i | | | | | |
| | ii | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | |

**Part 6:  Postpetition Taxes**

| | | Current Month | Cumulative |
|---|---|---|---|
| a. | Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. | Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. | Postpetition employer payroll taxes accrued | $0 | $0 |
| d. | Postpetition employer payroll taxes paid | $0 | $0 |
| e. | Postpetition property taxes paid | $0 | $0 |
| f. | Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. | Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

**Part 7: Questionnaire - During this reporting period:**

a. Were any payments made on prepetition debt?  (if yes, see Instructions)     Yes ◯   No ⦿

b. Were any payments made outside the ordinary course of business without court approval?  (if yes, see Instructions)     Yes ◯   No ⦿

c. Were any payments made to or on behalf of insiders?     Yes ◯   No ⦿

d. Are you current on postpetition tax return filings?     Yes ⦿   No ◯

e. Are you current on postpetition estimated tax payments?     Yes ⦿   No ◯

f. Were all trust fund taxes remitted on a current basis?     Yes ⦿   No ◯

g. Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions)     Yes ⦿   No ◯

h. Were all payments made to or on behalf of professionals approved by the court?     Yes ◯   No ◯   N/A ⦿

i. Do you have:     Worker's compensation insurance?     Yes ⦿   No ◯

    If yes, are your premiums current?     Yes ⦿   No ◯   N/A ◯   (if no, see Instructions)

    Casualty/property insurance?     Yes ⦿   No ◯

    If yes, are your premiums current?     Yes ⦿   No ◯   N/A ◯   (if no, see Instructions)

    General liability insurance?     Yes ⦿   No ◯

    If yes, are your premiums current?     Yes ⦿   No ◯   N/A ◯   (if no, see Instructions)

j. Has a plan of reorganization been filed with the court?     Yes ◯   No ⦿

Debtor's Name  LIMETREE BAY REFINING HOLDINGS II, LLC          Case No.  21-32353

k.   Has a disclosure statement been filed with the court?          Yes ○   No ●
l.   Are you current with quarterly U.S. Trustee fees as          Yes ●   No ○
     set forth under 28 U.S.C. § 1930?

**Part 8: Individual Chapter 11 Debtors (Only)**

| | | |
|---|---|---:|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |

l.   Are you required to pay any Domestic Support Obligations as defined by 11     Yes ○   No ●
     U.S.C § 101(14A)?
m.   If yes, have you made all Domestic Support Obligation payments?     Yes ○   No ○   N/A ●

**Privacy Act Statement**

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107.  The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6).  The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith.  This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law.  Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records."  *See* 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006).  A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm.  Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee.  11 U.S.C. § 1112(b)(4)(F).

**<u>I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.</u>**


Mark Shapiro                                    Mark Shapiro, Chief Restructuring Officer
_____              _____
Signature of Responsible Party                Printed Name of Responsible Party

Chief Restructuring Officer                   09/21/2021
_____              _____
Title                                         Date

**CASE NAME:**      **Limetree Bay Refining Holdings II, LLC**
**CASE NUMBER:**    **21-32353 (Jointly Administered under Lead Case No.: 21-32351)**

### Notes to the Monthly Operating Report

#### General:

On July 12, 2021 (the "Petition Date"), Limetree Bay Services, LLC ("Limetree") filed a voluntary petition with the United States Bankruptcy Court under Chapter 11 of the Bankruptcy Code [Case No.: 21-32351], along with five (5) affiliated entities (Affiliated Entities"). The debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067);  and Limetree Bay Refining Marketing, LLC (9222); (collectively, the "Debtors" or "Jointly Administered Debtors"). The bankruptcy filings of Limetree and the Affiliated Entities are jointly administered under Case No. 21-32351.

On or about June 17, 2021, the Jointly Administered Debtors retained B. Riley as chief restructuring officer ("CRO"). Mark Shapiro, as principal representative of B. Riley in its capacity, serves as CRO to the Jointly Administered Debtors.

Debtor-in-Possession Financial Statements - The accompanying schedules herein are unaudited, preliminary, and may not comply with generally accepted accounting principles in the United States of America ("U.S. GAAP") in all material respects.

The Monthly Operating Report ("MOR") is limited in scope, covers a limited time period, and has been prepared solely for the purpose of complying with the monthly reporting requirements of the Bankruptcy Court and the United States Trustee.  The information presented herein has not been subjected to all procedures that would typically be applied to financial information presented in accordance with U.S. GAAP. Upon the application of such procedures, the financial information could be subject to changes, and these changes could be material. The information furnished in this MOR includes normal recurring adjustments, but does not include all of the adjustments that would typically be made for interim financial statements in accordance with U.S. GAAP.

Reservation of Rights: Given the complexity of the Debtors' business, inadvertent errors, omissions or over inclusions may have occurred. Accordingly, the Debtors hereby reserve all of their rights to dispute the validity, status, enforceability, or executory nature of any claim amount, representation or other statement in this MOR and reserve the right to amend or supplement this MOR, if necessary, but shall be under no obligation to do so.

#### July 12-31, 2021 Monthly Operating Report:

**(1)** The Reporting Period for this MOR is July 12-31, 2021, and the financial statements referenced herein cover the same time period.

**(2)** The Financial Statements are reported on an Accrual Basis. Cash Receipts & Disbursements are reported on a Cash Basis.

**(3)** The CRO, Mark Shapiro, has signed this MOR. Mr. Shapiro is an authorized signatory for the Debtor. In reviewing and signing the MOR, Mr. Shapiro has relied upon the efforts, statements and representations of various personnel employed by the Debtor and the Debtor's advisors. Mr. Shapiro has not (and could not have) personally verified the accuracy of each statement and representation contained in the MOR, including statements and representations concerning amounts owed to creditors, classification of such amounts, and other attached information.

**(4)** MOR Part 2, d - Total Current Assets includes Cash.

**(5)** MOR Part 2, e - Total Assets includes Current Assets and Investments in Limetree Bay Refining, LLC.

**(6)** MOR Part 2, k-m - Amounts are per the Debtor's bankruptcy schedules and are subject to adjustment once the claims process has been completed by the CRO, which includes, but is not limited to, examining, determining the validity of and objecting to any disputed, contingent, unliquidated and filed claims.

**(7)** MOR Part 2, k-o - As of the time of this filing, the CRO has not determined with accuracy the amount of the secured and unsecured debt, both of which are components of ending net equity/net worth.  Accordingly, the CRO makes no representations regarding the accuracy of the form-calculated net equity/net worth of the Debtor.

**(8)** MOR Part 7, i - See attached the schedule of insurance in effect for the Jointly Administered Debtors.

**Attachments to MOR:**

**A.** Financial Statements

**B.** Statement of Cash Receipts and Disbursements

**C.** Bank Account Schedule, bank statements and bank reconciliations

**D.** Schedule of Insurance in effect as of July 31, 2021 for the Jointly Administered Debtors

**STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS**
**FOR THE PERIOD BEGINNING <u>July 12, 2021</u> AND ENDING <u>July 31,2021</u>**

Name of Debtor: Limetree Bay Refining Holdings II, LLC        Case Number:  21-32353
Date of Petition:   July 12, 2021

| | | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|---|
| **1. FUNDS AT BEGINNING OF PERIOD** | | $          50.00 | $          50.00 |
| **2. RECEIPTS:** | | | |
| A. Cash Sales | | - | - |
| Minus: Cash Refunds | | - | - |
| Net Cash Sales | | - | - |
| B. Accounts Receivable | | - | - |
| C. Other Receipts | | - | - |
| (If you receive rental income, you must attach a rent roll) | | | |
| **3. TOTAL RECEIPTS (*Lines 2A+2B+2C*)** | | - | - |
| **4. TOTAL FUNDS AVAILABLE FOR OPERATIONS (*Line 1 + Line 3*)** | | 50.00 | 50.00 |
| **5. DISBURSEMENTS** | | | |
| A.   Advertising | | - | - |
| B.   Bank Charges & Fees | | - | - |
| C.   Contract Labor | | - | - |
| D.   Fixed Asset Payments (not incl. in "N") | | - | - |
| E.   Insurance | | - | - |
| F.   Inventory Payments | | - | - |
| G.   Leases & Contracts | | - | - |
| H.   Manufacturing Supplies | | - | - |
| I.   Office Supplies | | - | - |
| J.   Payroll | | - | - |
| K.   Professional Fees (Accounting & Legal) | | - | - |
| L.   Rent | | - | - |
| M.   Repairs & Maintenance | | - | - |
| N.   Secured Creditor Payments | | - | - |
| O.   Taxes Paid - Payroll | | - | - |
| P.   Taxes Paid - Sales & Use | | - | - |
| Q.   Taxes Paid - Other | | - | - |
| R.   Telephone | | - | - |
| S.   Travel & Entertainment | | - | - |
| T.   U.S. Trustee | | - | - |
| U.   Utilities | | - | - |
| V.   Vehicle Expenses | | - | - |
| W.   Other Operating Expenses | | - | - |
| **6. TOTAL DISBURSEMENTS (*Sum of 5A thru W*)** | | - | - |
| **7. ENDING BALANCE (*Line 4 Minus Line 6*)** | | $          50.00 | $          50.00 |

## STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS (CONT'D.)

### Detail of Other Receipts and Other Disbursements

**OTHER RECEIPTS:**

Describe Each Item of Other Receipt and List Amount of Receipt.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| | $ - | $ - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | $ - | $ - |

**"Other Receipts" includes Loans from Insiders and other sources (i.e. Officer/Owner, related parties directors, related corporations, etc.).  Please describe below:**

| Loan Amount | Source of Funds | Purpose | Repayment Schedule |
|---|---|---|---|
| | | | |
| | | | |

**OTHER DISBURSEMENTS:**

Describe Each Item of Other Disbursement and List Amount of Disbursement.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| | $ - | $ - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | $ - | $ - |

**Limetree Bay Refining Holdings II, LLC**
**Balance Sheet**
**July 31, 2021**

|  | 7/31/2021 |
|---|---|
| 0000110850 Checking Account - Citibank, N.A. - 6869787150 | 50.00 |
| **\*CASH & CASH EQUIVALENTS** | **50.00** |
| **\*\*TOTAL CURRENT ASSETS** | **50.00** |
|  |  |
| 0000190201 INVESTMENT IN LIMETREE BAY REFINING | 1,118,861,955.78 |
| **INVESTMENT IN LIMETREE BAY REFINING** | **1,118,861,955.78** |
|  |  |
| **\*OTHER ASSETS** | **1,118,861,955.78** |
|  |  |
| **\*\*TOTAL NON-CURRENT ASSETS** | **1,118,861,955.78** |
|  |  |
| **\*\*\*\* TOTAL ASSETS** | **1,118,862,005.78** |
|  |  |
|  |  |
| 0000231510 ACCRUED INTEREST-DEBT | (4,165,237.44) |
| 0000231525 ACCRUED INTRST - DEBT - AFFIL - TRANCHE D TERM DBT | (225,379.53) |
| 0000231526 ACCRUED INTRST - DEBT - AFFIL - SUBORDINATED NOTE | (6,994,698.79) |
| **\*ACCRUED INTEREST** | **(11,385,315.76)** |
|  |  |
| 0000235244 TRANCHE D TERM DEBT - OID - AFFILIATE - CURRENT | 186,911.79 |
| 0000235245 TRANCHE D TERM DEBT - DIC - CURRENT | 32,160.30 |
| **TRANCHE D TERM DEBT-CURRENT** | **219,072.09** |
|  |  |
| 0000235249 TERM LOAN - OID - CURRENT | 3,034,693.04 |
| **OTHER TERM DEBT-CURRENT** | **3,034,693.04** |
|  |  |
| **TERM DEBT-CURRENT** | **3,253,765.13** |
|  |  |
| 0000235214 DEFERRED FINANCE COSTS - CURRENT | 1,822,321.86 |
| **DEFERRED FINANCE COSTS-CURRENT** | **1,822,321.86** |
|  |  |
| **OTHER LONG TERM DEBT-CURRENT PORTION** | **5,076,086.99** |
|  |  |
| **\*CURRENT PORTION OF LONG-TERM DEBT** | **5,076,086.99** |
| **\*\*TOTAL CURRENT LIABILITIES** | **(6,309,228.77)** |

**Limetree Bay Refining Holdings II, LLC**
**Balance Sheet**
**July 31, 2021**

|  | 7/31/2021 |
|---|---|
| 0000260049 NOTE PAYABLE – AFFILIATE – OID | 9,894,142.33 |
| 0000260050 Note Payable - Affiliate | (612,165,523.54) |
| **NOTE PAYABLE - AFFILIATE** | **(602,271,381.21)** |
|  |  |
| 0000260114 TRANCHE D TERM DEBT | (35,469,567.49) |
| 0000260117 TRANCHE D TERM DEBT – AFFILIATE – OID | 659,496.23 |
| 0000260118 TRANCHE D TERM DEBT - DEBT ISSUE COSTS | 112,114.37 |
| **TRANCHE D TERM DEBT** | **(34,697,956.89)** |
|  |  |
| 0000260055 AFFILIATE TERM DEBT - LONG TERM | (17,734,783.74) |
| **AFFILIATE TERM DEBT** | **(17,734,783.74)** |
|  |  |
| 0000260010 LONG TERM DEBT - TERM | (315,697,992.06) |
| 0000260120 TERM LOAN DEBT - OID - LONG TERM | 10,632,139.07 |
| **OTHER TERM DEBT** | **(305,065,852.99)** |
|  |  |
| **TERM DEBT** | **(357,498,593.62)** |
|  |  |
| 0000260070 FINANCE COST - DEFERRED CONTRA | 6,377,232.92 |
| **DEFERRED FINANCE COSTS** | **6,377,232.92** |
|  |  |
| **OTHER LONG TERM DEBT** | **(351,121,360.70)** |
|  |  |
| **\*LONG-TERM DEBT, NET CRRNT PRTN & ISSNCE CST** | **(953,392,741.91)** |
|  |  |
| **\*\*TOTAL NON-CURRENT LIABILITIES** | **(953,392,741.91)** |
|  |  |
| **\*\*\* TOTAL LIABILITIES** | **(959,701,970.68)** |
|  |  |
| 0000320020 MEMBERS ADDITIONAL INVESTMENT | (178,709,809.90) |
| **\*MEMBERS' ADDITIONAL INVESTMENT** | **(178,709,809.90)** |
| **\*\*MEMBERS' EQUITY** | **(178,709,809.90)** |
|  |  |
| **\*\*PROFIT/LOSS IN CURRENT YEAR** | **19,549,774.80** |
|  |  |
| **\*\*\* TOTAL MEMBERS' EQUITY** | **(159,160,035.10)** |
|  |  |
| **\*\*\*\* TOTAL LIABILITIES & MEMBERS' EQUITY** | **(1,118,862,005.78)** |

**Limetree Bay Refining Holdings II, LLC**
**Income Statement**
**For the month ending July 31, 2021**

|  | July 13-31, 2021 Unaudited |
|---|---|
| 0000818010 INTEREST EXPENSE | 0.00 |
| 0000818027 AFFILIATED INTEREST EXPENSE - TRANCHE D TERM DEBT | 0.00 |
| 0000818028 AFFILIATED INTEREST EXPENSE - SUBORDINATED NOTE | 0.00 |
| **\*\*INTEREST AND FINANCING EXPENSE** | **0.00** |
| **\*\*\*TOTAL NON-OPERATING INCOME (EXPENSE):** | **0.00** |
| **\*\*\*\*NET INCOME (LOSS)** | **0.00** |

Citibank, N.A.    292 / 00954
Sort 2224
New York, N.Y. 10043

001/R1/04F000

000
CITIBANK, N. A.
**Account**
7150
**Statement Period**
**Jul 1 - Jul 31, 2021**
**Relationship Manager**
Lucken,Kent
(617) 717-9023
Page 1 of 2

LIMETREE BAY REFINING HOLDINGS II,
LLC (SPRINGING)
842 W. SAM HOUSTON PARKWAY N. SUITE
HOUSTON              TX 77024

## CitiBusiness® ACCOUNT AS OF JULY 31, 2021

**Relationship Summary:**

| | |
|---|---|
| **Checking** | **$50.00** |
| **Savings** | ----- |
| **Checking Plus** | ----- |

## SUGGESTIONS AND RECOMMENDATIONS

Your Volcker Rule Disclosure and Important Notice Regarding Future Verbal and Written Communications
is now available to view online. Visit citi.com/accountagreementsandnotices and click on Citi Private
Bank Notices to view the notices. For questions or concerns, please contact your Private Banking team
for more information.

## SERVICE CHARGE SUMMARY FROM JUNE 1, 2021 THRU JUNE 30, 2021

| Type of Charge | No./Units | Price/Unit | Amount |
|---|---|---|---|
| **CITIBUSINESS CHECKING #**    7150 | | | |
| Average Daily Collected Balance | | | $50.00 |
| DEPOSIT SERVICES | | | |
|    MONTHLY MAINTENANCE FEE | 1 | 24.0000 | 24.00 |
| **WAIVE | | | |
| **Total Charges for Services** | | | **$0.00** |
| Average collected balances | | | $50.00 |
| Balances eligible for Earnings Credit | | | $0.00 |
| Earnings Credit allowance at  0.00000% | | | $0.00 |
| Charges Subject to Earnings Credit | | | $0.00 |
| **Net Service Charge** | | | **$0.00** |

Avg. Collected Non-Interest Bearing Balances must be at least $5,000.00 to generate Earnings Credit

## CHECKING ACTIVITY

**CitiBusiness Checking**

| 7150 | | |
|---|---|---|
| | **Beginning Balance:** | $50.00 |
| | **Ending Balance:** | $50.00 |

**LIMETREE BAY REFINING HOLDINGS II, LLC**
**B & P Checking**                          110850
**Citi BA          7150**
**July 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 6/30/2021 | $ | 50.00 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Capital Gain/Losses | | $ | - |
| Bank Charges | | $ | - |
| Dividends | | $ | - |
| Ending Balance per Bank | 7/31/2021 | $ | 50.00 |
| Opening Balance  per Book | 6/30/2021 | $ | 50.00 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Capital Gain/Losses | | | - |
| Bank Charges | | $ | - |
| Dividends | | $ | - |
| Ending Balance per Book | 7/31/2021 | $ | 50.00 |
| | | $ | 50.00 |
| | | $ | - |

| | | |
|---|---|---|
| Reconciled by | George Southwell | |
| Date: | 8/2/2021 | |
| Approved by | | |
| Date: | | |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of July 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | AGCS (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AGCS (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, Allianz, Axis (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, Aspen (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, HDI (Amended Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, Liberty (Endorsement | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, TRV (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, TRV (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, TRV (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG/National Union Fire Insurance Co | Combined Property | Primary $250M | 026-1001312 | 2021.09.01 |
| Limetree Bay Refining, LLC | Allianz (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz Global Risk US Insurance Company | Combined Property | Primary $1.25BN | USN00023920 | 2021.12.01 |
| Limetree Bay Refining, LLC | Aspen (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | Atrium Underwriters Ltd | Combined Property | $150M XS $200M | B0509ENGAO2000588 | 2021.12.01 |
| Limetree Bay Refining, LLC | Axis (Endorsement) | Builder's Risk | $50M | EAU646295/01/2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 92SRD102973 | |
| Limetree Bay Refining, LLC | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 42-PRP-312023-01 | 2021.09.01 |
| Limetree Bay Refining, LLC | CIN 318/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of July 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---------|---------|------|-----------------|---------------|-----------------|
| Limetree Bay Refining, LLC | Convex Insurance UK Limited | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Elseco limited | Combined Property | $300M XS $200M | B0509ENGAO2000563 | 2021.12.01 |
| Limetree Bay Services, LLC | Liberty | Worker's Comp | | WCC-641-444917-020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Fidelis/ Fidelis Underwriting Ltd. | Combined Property | $250M XS $250M | B0509ENGAO2000613 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hannover Re/HDI Global Specialty SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Helvetia/Helvetia Swiss Insurance Co in Liechtenstein Ltd | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Helvetia/Helvetia Swiss Insurance Co in Liechtenstein Ltd | Combined Property | $300M XS $200M | B0509ENGAO2000586 | 2021.12.01 |
| Limetree Bay Refining, LLC | HSIC/Houston Specialty Insurance Company | Combined Property | $150M XS 50M | PRO440373 | 2021.12.01 |
| Limetree Bay Refining, LLC | IGI/Insurance General Insurance Co Ltd. | Combined Property | $300M XS $200M | B0509ENGAO2000563 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lancashire/Lancashire Insurance Company UK, Ltd. | Combined Property | $300M XS $200M | B0509ENGAO2000587 | 2021.12.01 |
| Limetree Bay Refining, LLC | LSM/Liberty Specialty Markets Agency Limited | Combined Property | $100M XS $100M | LSMAEN143232A | 2021.12.01 |
| Limetree Bay Refining, LLC | Munich Re/Great Lakes Insurance SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | NOA/Lloyds of London | Combined Property | $300M XS $200M | B0509ENGAO2000586 | 2021.12.01 |
| Limetree Bay Refining, LLC | Partner Re/PartnerRe Ireland Insurance dac | Combined Property | $150M XS $350M | B0509ENGAO2000589 | 2021.12.01 |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of July 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | PICC/Guardian General Insurance | Combined Property | $100M XS $100M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | QBE/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Rokstone/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC | SCOR (3)/General Security Indemnity Company of Arizona | Combined Property | Primary $1.25BN | FA007943720201 | |
| Limetree Bay Refining, LLC | Sompo/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Swiss Re/Westport Insurance Company | Combined Property | Primary $500M | OMP 2000425-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Validus Specialty/Lloyds of London | Combined Property | Primary $250M | AJH292893A20 | |
| Limetree Bay Refining, LLC | Westchester Surplus Lines Ins Co/Starr Technical Risks Agency, Inc | Combined Property | Primary $500M | EPRN18215263 | 2021.12.01 |
| Limetree Bay Refining, LLC | WRB/Guardian General Insurance | Combined Property | $50M XS $50M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Zurich/Zurich American Insurance Company | Combined Property | Primary $100M | OGR 1296457-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arcadian/Ark/Helix Bermuda | Builder's Risk | $25M xs $100M | NAMBM2100005 | 2022.06.01 |
| Limetree Bay Refining, LLC | Allianz | Refinery Excess Liability | $15M xs $53M | USL00880520 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz | Environmental Liability | $15M xs $85M | USL00873320 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty | Refinery Primary Liability | | AS6-641-444917-010 | 2021.12.01 |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

## United States Bankruptcy Court
## Southern District of Texas (Houston)
### Schedule of Insurance Policies - As of July 31, 2021

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | Travelers Syndicate | Refinery Primary Liability | | ENCAS2000012 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer/Apollo | Refinery Excess Liability | $15M | ENCAS2000011 | 2021.12.01 |
| Limetree Bay Refining, LLC | Westchester | Refinery Excess Liability | $3M xs $25M | G71809808001 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Refinery Excess Liability | $25M xs $28M | 4380100 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer | Refinery Excess Liability | $11M po $22M xs $68M | ENCAS2000020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lex-London | Refinery Excess Liability | $11M po $22M xs $68M | 62785689 | 2021.12.01 |
| Limetree Bay Refining, LLC | OSL | Refinery Excess Liability | $10M xs $90M | EXS-154724-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | AXA XL Bermuda | Refinery Excess Liability | $25M xs $125M | XLUMB-229978 | 2021.12.01 |
| Limetree Bay Refining, LLC | OCIL Bermuda | Refinery Excess Liability | $25M po $40M xs $150M | U920968-0620 | 2021.12.01 |
| Limetree Bay Refining, LLC | Sompo Bermuda | Refinery Excess Liability | $15M po $40M xs $150M | EXC30001524800 | 2021.12.01 |
| Limetree Bay Refining, LLC | Argo Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | ARGO-CAS-OR-001484 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arch Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | URP0065257-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel Bermuda | Refinery Excess Liability | $12.5M po $50M xs $190M | 1454233-11636-UMB-2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hamilton Bermuda | Refinery Excess Liability | $7.5M po $50M xs $190M | CX20-9216 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chubb Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LBR-2144/XS004 | 2021.12.01 |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of July 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | Liberty Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LSMAEC119907A | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $1M | ENVP0000296-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $9M xs $1M | ENVX0000256-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Environmental Liability | $25M xs $10M | 262704 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ascot | Environmental Liability | $25M xs $35M | ENXP2110000428-01 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel | Environmental Liability | $25M xs $60M | MKLV4EFX102259 | 2021.12.01 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $15M | 8261-8347 | 2022.04.20 |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000623319211 | |
| Limetree Bay Refining, LLC | Wesco Insurance Company | Executive Risk | $1M | EUW1909831 00 | |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $10M | 1000622392201 | 2027.04.27 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | | 8247-1536 | |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN   DISTRICT OF   TEXAS

### HOUSTON DIVISION

| | | |
|---|---|---|
| In Re. LIMETREE BAY REFINING, LLC | § | Case No.  21-32354 |
| | § | |
| | § | Lead Case No.  21-32351 |
| _____ Debtor(s) | § | |
| | | ☒ Jointly Administered |

## Monthly Operating Report

Chapter 11

Reporting Period Ended: 07/31/2021          Petition Date: 07/12/2021

Months Pending: 1          Industry Classification: | 3 | 2 | 4 | 1 |

Reporting Method:          Accrual Basis ⦿          Cash Basis ○

Debtor's Full-Time Employees (current):          0

Debtor's Full-Time Employees (as of date of order for relief):          0

**Supporting  Documentation** (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

- ☒ Statement of cash receipts and disbursements
- ☒ Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
- ☒ Statement of operations (profit or loss statement)
- ☐ Accounts receivable aging
- ☐ Postpetition liabilities aging
- ☐ Statement of capital assets
- ☐ Schedule of payments to professionals
- ☐ Schedule of payments to insiders
- ☒ All bank statements and bank reconciliations for the reporting period
- ☐ Description of the assets sold or transferred and the terms of the sale or transfer

/s/ Elizabeth A. Green
_____
Signature of Responsible Party

09/21/2021
_____
Date

Elizabeth A. Green
_____
Printed Name of Responsible Party

200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, FL 32801
_____
Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

UST Form 11-MOR (06/07/2021)          1

Debtor's Name  LIMITREE BAY REFINING, LLC                          Case No.  21-32354

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a.  Cash balance beginning of month | $2,325,216 | |
| b.  Total receipts (net of transfers between accounts) | $6,860,800 | $6,860,800 |
| c.  Total disbursements (net of transfers between accounts) | $5,708,893 | $5,708,893 |
| d.  Cash balance end of month (a+b-c) | $3,477,123 | |
| e.  Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f.  Total disbursements for quarterly fee calculation (c+e) | $5,708,893 | $5,708,893 |

| Part 2:  Asset and Liability Status<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | |
|---|---|---|
| a.  Accounts receivable (total net of allowance) | $235,079,964 | |
| b.  Accounts receivable over 90 days outstanding (net of allowance) | $26,989,791 | |
| c.  Inventory    (Book ⦿  Market ◯  Other ◯   (attach explanation)) | $22,086,060 | |
| d   Total current assets | $267,987,999 | |
| e.  Total assets | $3,637,781,764 | |
| f.  Postpetition payables (excluding taxes) | $6,490,478 | |
| g.  Postpetition payables past due (excluding taxes) | $0 | |
| h.  Postpetition taxes payable | $0 | |
| i.  Postpetition taxes past due | $0 | |
| j.  Total postpetition debt (f+h) | $6,490,478 | |
| k.  Prepetition secured debt | $1,160,056,795 | |
| l.  Prepetition priority debt | $0 | |
| m.  Prepetition unsecured debt | $271,768,751 | |
| n.  Total liabilities (debt) (j+k+l+m) | $1,438,316,024 | |
| o.  Ending equity/net worth (e-n) | $2,199,465,740 | |

| Part 3:  Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a.  Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b.  Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c.  Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4:  Income Statement (Statement of Operations)<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a.  Gross income/sales (net of returns and allowances) | $0 | |
| b.  Cost of goods sold (inclusive of depreciation, if applicable) | $875,316 | |
| c.  Gross profit (a-b) | $-875,316 | |
| d.  Selling expenses | $23,947,246 | |
| e.  General and administrative expenses | $5,435,604 | |
| f.  Other expenses | $306,349 | |
| g.  Depreciation and/or amortization (not included in 4b) | $21,220,339 | |
| h.  Interest | $651,646 | |
| i.  Taxes (local, state, and federal) | $0 | |
| j.  Reorganization items | $0 | |
| k.  Profit (loss) | $-52,436,501 | $-52,436,501 |

UST Form 11-MOR (06/07/2021)                          2

Debtor's Name  LIMETREE BAY REFINING, LLC                                    Case No.  21-32354

## Part 5:  Professional Fees and Expenses

|   |   |   | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| a. | Debtor's professional fees & expenses (bankruptcy)  *Aggregate Total* | | | | | |
|   | *Itemized Breakdown by Firm* | | | | | |
|   | i | Firm Name / Role | | | | |
|   | ii | | | | | |

|   |   |   | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy)  *Aggregate Total* | | $0 | $0 | $2,311,681 | $2,311,681 |
|   | *Itemized Breakdown by Firm* | | | | | |
|   | | Firm Name / Role | | | | |
|   | i | Cleary Gottlieb Steen and Ham / Other | $0 | $0 | $591,113 | $591,113 |
|   | ii | Parella Weinberg Partners LP / Financial Professional | $0 | $0 | $350,412 | $350,412 |
|   | iii | Baker Botts LLP / Other | $0 | $0 | $575,000 | $575,000 |
|   | iv | Akin Gump Strauss Hauer and F / Other | $0 | $0 | $750,000 | $750,000 |
|   | v | Gray Reed and McGraw / Other | $0 | $0 | $45,157 | $45,157 |
| c. | All professional fees and expenses (debtor & committees) | | $0 | $0 | $2,311,681 | $2,311,681 |

## Part 6:  Postpetition Taxes

|   |   | Current Month | Cumulative |
|---|---|---|---|
| a. | Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. | Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. | Postpetition employer payroll taxes accrued | $0 | $0 |
| d. | Postpetition employer payroll taxes paid | $0 | $0 |
| e. | Postpetition property taxes paid | $0 | $0 |
| f. | Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. | Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

## Part 7: Questionnaire - During this reporting period:

| a. | Were any payments made on prepetition debt?  (if yes, see Instructions) | Yes ⦿   No ○ |
|---|---|---|
| b. | Were any payments made outside the ordinary course of business without court approval?  (if yes, see Instructions) | Yes ○   No ⦿ |
| c. | Were any payments made to or on behalf of insiders? | Yes ○   No ⦿ |
| d. | Are you current on postpetition tax return filings? | Yes ⦿   No ○ |
| e. | Are you current on postpetition estimated tax payments? | Yes ⦿   No ○ |
| f. | Were all trust fund taxes remitted on a current basis? | Yes ⦿   No ○ |
| g. | Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions) | Yes ⦿   No ○ |
| h. | Were all payments made to or on behalf of professionals approved by the court? | Yes ○   No ⦿  N/A ○ |

Debtor's Name  LIMETREE BAY REFINING, LLC                                                        Case No.  21-32354

i.   Do you have:              Worker's compensation insurance?                 Yes ⊙   No ◯
                                  If yes, are your premiums current?            Yes ◯   No ◯   N/A ◯   (if no, see Instructions)
                               Casualty/property insurance?                     Yes ⊙   No ◯
                                  If yes, are your premiums current?            Yes ◯   No ◯   N/A ◯   (if no, see Instructions)
                               General liability insurance?                     Yes ⊙   No ◯
                                  If yes, are your premiums current?            Yes ⊙   No ◯   N/A ◯   (if no, see Instructions)
j.   Has a plan of reorganization been filed with the court?                    Yes ◯   No ⊙
k.   Has a disclosure statement been filed with the court?                      Yes ◯   No ⊙
l.   Are you current with quarterly U.S. Trustee fees as                        Yes ⊙   No ◯
     set forth under 28 U.S.C. § 1930?

## Part 8: Individual Chapter 11 Debtors (Only)

| | | |
|---|---|---|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |

l.   Are you required to pay any Domestic Support Obligations as defined by 11       Yes ◯   No ⊙
     U.S.C § 101(14A)?
m.   If yes, have you made all Domestic Support Obligation payments?                 Yes ◯   No ◯   N/A ⊙

| Debtor's Name | LIMETREE BAY REFINING, LLC | Case No. | 21-32354 |

### Privacy Act Statement

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107.  The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6).  The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith.  This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law.  Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records."  *See* 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006).  A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm.  Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee.  11 U.S.C. § 1112(b)(4)(F).

**<u>I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.</u>**

| Mark Shapiro | Mark Shapiro, Chief Restructuring Officer |
|---|---|
| Signature of Responsible Party | Printed Name of Responsible Party |
| Chief Restructuring Officer | 09/21/2021 |
| Title | Date |

| CASE NAME: | **Limetree Bay Refining, LLC** |
|---|---|
| CASE NUMBER: | **21-32354 (Jointly Administered under Lead Case No.: 21-32351)** |

### Notes to the Monthly Operating Report

#### General:

On July 12, 2021 (the "Petition Date"), Limetree Bay Services, LLC ("Limetree") filed a voluntary petition with the United States Bankruptcy Court under Chapter 11 of the Bankruptcy Code [Case No.: 21-32351], along with five (5) affiliated entities (Affiliated Entities"). The debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); and Limetree Bay Refining Marketing, LLC (9222); (collectively, the "Debtors" or "Jointly Administered Debtors"). The bankruptcy filings of Limetree and the Affiliated Entities are jointly administered under Case No. 21-32351.

On or about June 17, 2021, the Jointly Administered Debtors retained B. Riley as chief restructuring officer ("CRO"). Mark Shapiro, as principal representative of B. Riley in its capacity, serves as CRO to the Jointly Administered Debtors.

Debtor-in-Possession Financial Statements - The accompanying schedules herein are unaudited, preliminary, and may not comply with generally accepted accounting principles in the United States of America ("U.S. GAAP") in all material respects.

The Monthly Operating Report ("MOR") is limited in scope, covers a limited time period, and has been prepared solely for the purpose of complying with the monthly reporting requirements of the Bankruptcy Court and the United States Trustee. The information presented herein has not been subjected to all procedures that would typically be applied to financial information presented in accordance with U.S. GAAP. Upon the application of such procedures, the financial information could be subject to changes, and these changes could be material. The information furnished in this MOR includes normal recurring adjustments, but does not include all of the adjustments that would typically be made for interim financial statements in accordance with U.S. GAAP.

Reservation of Rights: Given the complexity of the Debtors' business, inadvertent errors, omissions or over inclusions may have occurred. Accordingly, the Debtors hereby reserve all of their rights to dispute the validity, status, enforceability, or executory nature of any claim amount, representation or other statement in this MOR and reserve the right to amend or supplement this MOR, if necessary, but shall be under no obligation to do so.

#### July 12-31, 2021 Monthly Operating Report:

**(1)** The Reporting Period for this MOR is July 12-31, 2021, and the financial statements referenced herein cover the same time period.

**(2)** The Financial Statements are reported on an Accrual Basis. Cash Receipts & Disbursements are reported on a Cash Basis.

**(3)** The CRO, Mark Shapiro, has signed this MOR. Mr. Shapiro is an authorized signatory for the Debtor. In reviewing and signing the MOR, Mr. Shapiro has relied upon the efforts, statements and representations of various personnel employed by the Debtor and the Debtor's advisors. Mr. Shapiro has not (and could not have) personally verified the accuracy of each statement and representation contained in the MOR, including statements and representations concerning amounts owed to creditors, classification of such amounts, and other attached information.

**(4)** MOR Part 2, d - Total Current Assets includes Cash, Accounts Receivable, Inventory and Prepaid Expenses.

**(5)** MOR Part 2, e - Total Assets includes Current Assets, Property, Plant, and Equipment, Investments, and Security Deposits.

**(6)** MOR Part 2, f - Post-Petition Payables (excluding taxes) includes Trade Payables.

**(7)** MOR Part 2, k-m - Amounts are per the Debtor's bankruptcy schedules and are subject to adjustment once the claims process has been completed by the CRO, which includes, but is not limited to, examining, determining the validity of and objecting to any disputed, contingent, unliquidated and filed claims.

**(8)** MOR Part 2, k-o - As of the time of this filing, the CRO has not determined with accuracy the amount of the secured and unsecured debt, both of which are components of ending net equity/net worth. Accordingly, the CRO makes no representations regarding the accuracy of the form-calculated net equity/net worth of the Debtor.

**(9)** MOR Part 7, i - See attached the schedule of insurance in effect for the Jointly Administered Debtors.

**Attachments to MOR:**

**A.** Financial Statements

**B.** Statement of Cash Receipts and Disbursements

**C.** Bank Account Schedule, bank statements and bank reconciliations

**D.** Schedule of Insurance in effect as of July 31, 2021 for the Jointly Administered Debtors

**STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS**
**FOR THE PERIOD BEGINNING <u>July 12, 2021</u> AND ENDING <u>July 31,2021</u>**

Name of Debtor: Limetree Bay Refining, LLC          Case Number:  21-32354
Date of Petition:   July 12, 2021

| | | CURRENT MONTH | | CUMULATIVE PETITION TO DATE |
|---|---|---|---|---|
| **1. FUNDS AT BEGINNING OF PERIOD** | $ | 2,325,215.84 | $ | 2,325,215.84 |
| **2. RECEIPTS:** | | | | |
| A. Cash Sales | | 100,000.00 | | 100,000.00 |
| Minus: Cash Refunds | | - | | - |
| Net Cash Sales | | - | | - |
| B. Accounts Receivable | | - | | - |
| C. Other Receipts | | 6,760,800.00 | | 6,760,800.00 |
| (If you receive rental income, you must attach a rent roll) | | | | |
| **3. TOTAL RECEIPTS (*Lines 2A+2B+2C*)** | | 6,860,800.00 | | 6,860,800.00 |
| **4. TOTAL FUNDS AVAILABLE FOR OPERATIONS (*Line 1 + Line 3*)** | | 9,186,015.84 | | 9,186,015.84 |
| **5. DISBURSEMENTS** | | | | |
| A.  Advertising | | - | | - |
| B.  Bank Charges & Fees | | 315.46 | | 315.46 |
| C.  Contract Labor | | 183,397.26 | | 183,397.26 |
| D.  Fixed Asset Payments (not incl. in "N") | | - | | - |
| E.  Insurance | | 319,053.28 | | 319,053.28 |
| F.  Inventory Payments | | 381,695.85 | | 381,695.85 |
| G.  Leases & Contracts | | - | | - |
| H.  Manufacturing Supplies | | - | | - |
| I.  Office Supplies | | - | | - |
| J.  Payroll | | - | | - |
| K.  Professional Fees (Accounting & Legal) | | 2,311,681.31 | | 2,311,681.31 |
| L.  Rent | | 4,693.00 | | 4,693.00 |
| M.  Repairs & Maintenance | | 884,177.36 | | 884,177.36 |
| N.  Secured Creditor Payments | | 496,359.33 | | 496,359.33 |
| O.  Taxes Paid - Payroll | | - | | - |
| P.  Taxes Paid - Sales & Use | | - | | - |
| Q.  Taxes Paid - Other | | - | | - |
| R.  Telephone | | 11,970.42 | | 11,970.42 |
| S.  Travel & Entertainment | | - | | - |
| T.  U.S. Trustee | | - | | - |
| U.  Utilities | | 460,536.97 | | 460,536.97 |
| V.  Vehicle Expenses | | - | | - |
| W.  Other Operating Expenses | | 655,013.03 | | 655,013.03 |
| **6. TOTAL DISBURSEMENTS (*Sum of 5A thru W*)** | | 5,708,893.27 | | 5,708,893.27 |
| **7. ENDING BALANCE (*Line 4 Minus Line 6*)** | $ | 3,477,122.57 | $ | 3,477,122.57 |

### STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS (CONT'D.)

#### Detail of Other Receipts and Other Disbursements

**OTHER RECEIPTS:**
Describe Each Item of Other Receipt and List Amount of Receipt.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| DIP Financing | $ 5,500,000.00 | $ 5,500,000.00 |
| Voided Pre-Petition Checks | 4,800.00 | 4,800.00 |
| Transfer to/from Limetree Bay Refining Marketing, LLC | 3,899,500.00 | 3,899,500.00 |
| Transfer to/from Limetree Bay Refining Operating, LLC | (2,643,500.00) | (2,643,500.00) |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | $ 6,760,800.00 | $ 6,760,800.00 |

**"Other Receipts" includes Loans from Insiders and other sources (i.e. Officer/Owner, related parties directors, related corporations, etc.).  Please describe below:**

| Loan Amount | Source of Funds | Purpose | Repayment Schedule |
|---|---|---|---|
| | | | |
| | | | |

**OTHER DISBURSEMENTS:**

Describe Each Item of Other Disbursement and List Amount of Disbursement.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| Settlement Payment - Limetree Bay Terminals, LLC | $ 132,554.56 | $ 132,554.56 |
| Tank Storage Fees | 450,000.00 | 450,000.00 |
| Employee Expense Reimbursments | 9,958.47 | 9,958.47 |
| Agent Fee | 62,500.00 | 62,500.00 |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | $ 655,013.03 | $ 655,013.03 |

**Limetree Bay Refining, LLC**
**Balance Sheet**
**July 31, 2021**

| | 7/31/2021 |
|---|---|
| 0000110600 LBR OPERATING ACCOUNT - ORIENTAL - 8202040267 | 3,473,021.20 |
| 0000110610 LBR PAYROLL ACCOUNT - ORIENTAL - 8202040268 | 222.92 |
| 0000110690 LBR CONSTRUCTION ACCOUT - DB- SE1972-001.10 | 345.03 |
| **\*CASH & CASH EQUIVALENTS** | **3,473,589.15** |
| | |
| 0000110700 LBR DEBT SERVICE RESERVE ACCOUNT- SE 1972-001.11 | 3,533.42 |
| **\*RESTRICTED CASH - SHORT TERM** | **3,533.42** |
| | |
| 0000120001 A/R TRADE RECEIVABLE RECONCILIATION | 244,144.69 |
| **ACCOUNTS RECEIVABLE, TRADE** | **244,144.69** |
| **\*ACCOUNTS RECEIVABLE, NET** | **244,144.69** |
| | |
| 0000150040 A/R AFFILIATE | 2,036,581.73 |
| 0000150500 Intercompany A/R | 232,799,237.94 |
| **\*ACCOUNTS RECEIVABLE - AFFILIATE** | **234,835,819.67** |
| | |
| 0000130013 PURCHASED FINISHED PRODUCTS | 283,645.31 |
| 0000130050 WAREHOUSE INVENTORIES | 23,872,040.64 |
| 0000130100 INVENTORY CLEARING | (2,069,625.49) |
| **\*INVENTORY** | **22,086,060.46** |
| | |
| 0000140010 PPD INSURANCE-OTHER | 2,939,023.63 |
| 0000140011 PPD INSURANCE-ALL RISK PROPERTY | 1,151,162.50 |
| 0000140013 PPD INSURANCE-WORKERS COMPENSATION | 36,329.90 |
| 0000140014 PPD INSURANCE-BUSINESS INTERUPPTION | 124,214.76 |
| 0000140016 PPD INSURANCE - EXECUTIVE RISK (D&O,CRIME,FID,K&R) | 352,736.41 |
| 0000140018 PPD INSURANCE - AUTO LIABILITY | 5,988.37 |
| **PREPAID INSURANCE** | **4,609,455.57** |
| | |
| 0000140070 PREPAID-LICENSES | 756,028.15 |
| **PREPAID LICENSES** | **756,028.15** |
| | |
| 0000140100 PREPAID - RENT | 94,621.53 |
| **PREPAID RENT** | **94,621.53** |
| | |
| 0000140060 PPD - VENDOR PREPAYMENTS | 1,387,500.00 |
| 0000140110 PPD SUNDRY | 497,246.51 |
| **PREPAID OTHER** | **1,884,746.51** |
| **\*PREPAID EXPENSES AND OTHER** | **7,344,851.76** |
| | |
| **\*\*TOTAL CURRENT ASSETS** | **267,987,999.15** |

**Limetree Bay Refining, LLC**
**Balance Sheet**
**July 31, 2021**

| | 7/31/2021 |
|---|---|
| 0000160041 COST-BUILDINGS | 1,536,522.40 |
| 0000160051 ENVIRONMENTAL FACILITIES | 11,954,645.38 |
| 0000160061 REFINERY FACILITIES | 2,637,764.24 |
| **FACILITIES, BUILDINGS AND IMPROVEMENTS** | **16,128,932.02** |
| | |
| 0000160071 VEHICLES, TRAILERS, ETC. | 3,936,457.65 |
| 0000160141 GAS TURBINES & WASTE HEAT BOILERS | 20,221,878.73 |
| 0000160151 MACHINERY & EQUIPMENT | 212,895.00 |
| **MACHINERY AND EQUIPMENT** | **24,371,231.38** |
| | |
| 0000160111 COMPUTER SOFTWARE | 659,599.83 |
| **COMPUTERS, FURNITURE AND FIXTURES** | **659,599.83** |
| | |
| 0000160250 FIXED ASSETS - NON RECONCILIATION | 97,526,293.89 |
| **OTHER** | **97,526,293.89** |
| | |
| **PP&E - GROSS** | **138,686,057.12** |
| | |
| 0000170041 ACCUM DEPR - BUILDINGS | (338,644.23) |
| 0000170051 ACCUM DEPR - ENVIRONMENTAL FACILITIES | (2,280,824.32) |
| 0000170061 ACCUM DEPR  - REFINERY FACILITIES | (351,701.90) |
| **FACILITIES, BLDNGS & IMPRVMNTS - ACCUM DEPREC** | **(2,971,170.45)** |
| | |
| 0000170071 ACCUM DEPR - VEHICLES, TRAILERS, ETC. | (2,151,547.26) |
| 0000170141 ACCUM DEPR - GAS TURBINES & WHB | (2,573,962.71) |
| 0000170151 ACCUM DEPR - MACHINERY & EQUIPMENT | (7,983.57) |
| **MACHINERY AND EQUIPMENT - ACCUM DEPREC** | **(4,733,493.54)** |
| | |
| 0000170111 ACCUM DEPR - COMPUTER SOFTWARE | (219,866.62) |
| **COMPUTERS, FURNITURE & FIXTURES - ACCUM DEPR** | **(219,866.62)** |
| | |
| 0000170250 ACCUM DEPR-NON RECONCILIATION | (19,603,052.94) |
| **OTHER - ACCUMULATED DEPRECIATION** | **(19,603,052.94)** |
| | |
| **PP&E - ACCUMULATED DEPRECIATION** | **(27,527,583.55)** |
| | |
| **PROPERTY, PLANT & EQUIPMENT, NET** | **111,158,473.57** |
| | |
| 0000160010 CIP (ASSET UNDER CONSTRUCTION) | 3,353,547,785.92 |
| 0000160011 CIP NON - RECONCILIATION | (95,751,070.29) |
| **CONSTRUCTION IN PROGRESS** | **3,257,796,715.63** |
| | |
| **\*TOTAL PROPERTY, PLANT AND EQUIPMENT, NET** | **3,368,955,189.20** |

**Limetree Bay Refining, LLC**
**Balance Sheet**
**July 31, 2021**

| | 7/31/2021 |
|---|---|
| 0000190300 Investment in subsidiary - LBRM | 754,975.47 |
| **INVESTMENT IN SUBSIDIARY - LBRM** | **754,975.47** |
| | |
| 0000190050 SECURITY DEPOSITS | 83,600.00 |
| **OTHER ASSETS** | **83,600.00** |
| | |
| **\*OTHER ASSETS** | **838,575.47** |
| | |
| **\*\*TOTAL NON-CURRENT ASSETS** | **3,369,793,764.67** |
| | |
| **\*\*\*\* TOTAL ASSETS** | **3,637,781,763.82** |
| | |
| 0000200010 A/P TRADE RECONCILIATION | (181,007,638.94) |
| 0000200020 GR/IR | (3,671,246.15) |
| 0000200050 A/P ADJUSTMENTS RECLASS | (27,925.00) |
| 0000200099 AP - OTHER | 50,582.00 |
| **\*ACCOUNTS PAYABLE TRADE** | **(184,656,228.09)** |
| | |
| 0000235101 A/P AFFILIATES – ARCLIGHT CAPITAL PARTNERS, LLC | (93,750.00) |
| 0000235500 Intercompany A/P | (135,527,113.87) |
| **\*AFFILIATE PAYABLE, NET** | **(135,620,863.87)** |
| | |
| 0000231510 ACCRUED INTEREST-DEBT | (8,531,611.16) |
| 0000231525 ACCRUED INTRST - DEBT - AFFIL - TRANCHE D TERM DBT | (461,630.29) |
| **\*ACCRUED INTEREST** | **(8,993,241.45)** |
| | |
| 0000200023 GR/IR PRODUCT (MANUAL) | 421,528.06 |
| 0000200040 VOUCHER ACCRUALS | (6,293,312.46) |
| 0000200060 COMDATA | (105,623.21) |
| 0000235040 ACCRUED LIABILITIES | (755,130.11) |
| 0000235045 CONTRACTOR PAYABLE - COMPLETION PROGRAM | (40,023,300.00) |
| 0000235060 GR/IR WAREHOUSE iNVENTORY | 18,730.83 |
| **\*ACCRUED LIABILITIES** | **(46,737,106.89)** |
| | |
| 0000235030 ACCRUED OTHER INSURANCE | (134,954.74) |
| 0000235253 DIP Loan - AMP Upside Credit Facility | (5,524,750.00) |
| **OTHER LONG TERM DEBT-CURRENT PORTION** | **(5,659,704.74)** |
| | |
| **\*CURRENT PORTION OF LONG-TERM DEBT** | **(5,659,704.74)** |

**Limetree Bay Refining, LLC**
**Balance Sheet**
**July 31, 2021**

| | 7/31/2021 |
|---|---|
| | |
| 0000231520 SHORT TERM IRS - MARK TO MARKET INTEREST | (3,603,459.54) |
| *OTHER CURRENT LIABILITIES | (3,603,459.54) |
| | |
| **TOTAL CURRENT LIABILITIES | (385,270,604.58) |
| | |
| 0000260114 TRANCHE D TERM DEBT | (108,975,019.87) |
| TRANCHE D TERM DEBT | (108,975,019.87) |
| | |
| 0000260055 AFFILIATE TERM DEBT - LONG TERM | (36,325,006.62) |
| AFFILIATE TERM DEBT | (36,325,006.62) |
| | |
| 0000260010 LONG TERM DEBT - TERM | (610,317,723.97) |
| OTHER TERM DEBT | (610,317,723.97) |
| | |
| TERM DEBT | (755,617,750.46) |
| OTHER LONG TERM DEBT | (755,617,750.46) |
| | |
| *LONG-TERM DEBT, NET CRRNT PRTN & ISSNCE CST | (755,617,750.46) |
| | |
| 0000260030 LONG TERM IRS - MARK TO MARKET INTEREST | (2,197,587.43) |
| *OTHER LONG-TERM LIABILITIES | (2,197,587.43) |
| | |
| **TOTAL NON-CURRENT LIABILITIES | (757,815,337.89) |
| | |
| *** TOTAL LIABILITIES | (1,143,085,942.47) |
| | |
| TOTAL MEMBERS' EQUITY | |
| | |
| 0000320010 MEMBERS INITIAL INVESTMENT | (384,868.09) |
| *MEMBERS' INITIAL EQUITY | (384,868.09) |
| | |
| 0000320020 MEMBERS ADDITIONAL INVESTMENT | (2,785,649,860.03) |
| 0000320050 PAID IN CAPITAL - COMMON EQUITY | (4,513,333.30) |
| *MEMBERS' ADDITIONAL INVESTMENT | (2,790,163,193.33) |
| **MEMBERS' EQUITY | (2,790,548,061.42) |
| | |
| 0000380020 RETAINED  EARNINGS | 115,181,380.27 |
| **RETAINED EARNINGS / ACCUMULATED DEFICIT | 115,181,380.27 |
| | |
| **PROFIT/LOSS IN CURRENT YEAR | 180,670,859.80 |

**Limetree Bay Refining, LLC**
**Balance Sheet**
**July 31, 2021**

|  | 7/31/2021 |
|---|---|
| **\*\*\* TOTAL MEMBERS' EQUITY** | **(2,494,695,821.35)** |
| **\*\*\*\* TOTAL LIABILITIES & MEMBERS' EQUITY** | **(3,637,781,763.82)** |

**Limetree Bay Services, LLC**
**Income Statement**
**For the month ending July 31, 2021**

| | July 13-31, 2021 Unaudited |
|---|---|
| 0000400010 SALES THIRD PARTY-PETROLEUM PRODUCTS | 0.00 |
| 0000400032 ACCRUED SALES AFFILIATES-PETROLEUM PRODUCTS | 0.00 |
| *REFINERY REVENUES | 0.00 |
| **TOTAL REVENUES | 0.00 |
| | |
| 0000520070 INVENTORY WRITEDOWN | 0.00 |
| 0000520100 INVENTORY MOVE PRICE DIFFERENCE | 766,533.23 |
| 0000520130 OTHER COST OF SALES | 132,554.56 |
| 0000520150 PRODUCT LOSSES | (23,771.41) |
| 0000520160 VESSEL DEMURRAGE | 0.00 |
| **COST OF GOODS SOLD | 875,316.38 |
| | |
| 0000601010 SALARIES AND WAGES (REGULAR & EXECUTIVE) | 231,004.25 |
| 0000601050 INS-WORKERS COMP | 0.00 |
| 0000601054 TAXES-STATE UNEMPLOYMENT | 0.00 |
| **SALARIES AND WAGES** | **231,004.25** |
| | |
| 0000601051 EMPLOYEE BENEFITS-HOSPITALIZATION/MEDICAL | 0.00 |
| **BENEFITS** | **0.00** |
| | |
| 0000601057 RELOCATION | 0.00 |
| **TRAVEL** | **0.00** |
| | |
| 0000607010 BUSINESS MEALS & ENTERTAINMENT | 684.75 |
| 0000607020 TRAVEL AND LODGING | 5,991.39 |
| **MEALS & ENTERTAINMENT** | **6,676.14** |
| | |
| 0000601059 CONFERENCES & SEMINARS | 0.00 |
| 0000601060 REGISTRATIONS-TRAINING & CONTINUING ED | 0.00 |
| 0000601067 TRAINING MATERIALS & SUPPLIES | 4,285.00 |
| **TRAINING & EDUCATION** | **4,285.00** |
| | |
| 0000601058 UNIFORMS AND LAUNDRY | 0.00 |
| 0000601063 OTHER EMPLOYEE EXPENSE | 4,346.00 |
| 0000601068 HOUSEHOLD FURNISHINGS | 0.00 |
| 0000601071 EMPLOYEE ACTIVITIES | 0.00 |
| 0000601074 OUTSIDE HOUSING | 0.00 |
| 0000601075 EMPLOYEE BACKGROUND SCREENING | 0.00 |
| 0000601076 EMPLOYEE-RECRUITING FEES (NON-AGENCY) | 0.00 |
| 0000601077 AWARDS (SAFETY/INCENTIVE) | 0.00 |
| 0000601078 SAFETY EXPENSE | 35,032.50 |

**Limetree Bay Services, LLC**
**Income Statement**
**For the month ending July 31, 2021**

| | July 13-31, 2021<br>Unaudited |
|---|---|
| **OTHER** | **39,378.50** |
| **EMPLOYEE EXPENSES** | **281,343.89** |
| 0000614022 INS-CARGO PROPERTY | 0.00 |
| **PROPERTY** | **0.00** |
| 0000614016 INS-AUTO LIABILITY | 0.00 |
| **AUTO PHYSICAL DAMAGE** | **0.00** |
| 0000614050 INS-OTHER | 0.00 |
| **OTHER** | **0.00** |
| **INSURANCE** | **0.00** |
| 0000603011 CONSULTING FEES - NON-OPERATING | 826,326.64 |
| **CONSULTING FEES** | **826,326.64** |
| 0000603012 ENGINEERING FEES | 168,344.22 |
| **ENGINEERING FEES** | **168,344.22** |
| 0000603014 MEDICAL FEES | 0.00 |
| **MEDICAL FEES** | **0.00** |
| 0000603030 INSPECTION FEES-QUANTITY | 369,101.02 |
| 0000603031 INSPECTION FEES-QUALITY | 944,564.52 |
| **INSPECTION FEES** | **1,313,665.54** |
| **PROFESSIONAL FEES** | **2,308,336.40** |
| 0000608015 POWER PLANT FUEL - EXTERNAL | (311,368.29) |
| 0000608025 POWER PLANT FUEL - INTERNAL | 0.00 |
| **FUEL EXPENSE** | **(311,368.29)** |
| 0000602012 OILY SOLIDS PROCESSING | 0.00 |
| 0000602017 SPILL CLEAN UP | 0.00 |
| 0000602024 ENVIRONMENTAL SUPPLIES | 0.00 |
| **ENVIRONMENTAL** | **0.00** |
| 0000603020 PINNACLE - REPAIRS & MAINTENANCE | 266,258.50 |

**Limetree Bay Services, LLC**
**Income Statement**
**For the month ending July 31, 2021**

|  | July 13-31, 2021 Unaudited |
|---|---|
| 0000606030 REPAIR & MAINTENANCE - GENERAL | 588,531.25 |
| 0000606034 R&M - Fixed Equipment Work | 508,641.54 |
| 0000606035 R&M – Instrument, Electrical and Analyzer Work | 1,308,786.22 |
| 0000606036 R&M – Rotating Equipment | 377,998.43 |
| 0000606037 R&M – Scaffold, Asbestos, Insulation and Painting | 0.00 |
| 0000606038 R&M - Outage Related Work | 552,103.85 |
| 0000606039 R&M – Maintenance Support Services, Other | 3,094,791.19 |
| 0000606040 TANK CLEANING | 0.00 |
| 0000606041 TANK REPAIR | 0.00 |
| **REPAIRS AND MAINTENANCE** | **6,697,110.98** |
|  |  |
| 0000608040 TELECOMMUNICATIONS EXPENSE-DATA | 2,975.28 |
| 0000608041 TELECOMMUNICATIONS EXPENSE-VIDEOCONFERENCING | 0.00 |
| 0000608042 TELECOMMUNICATIONS EXPENSE-VOICE | 0.00 |
| 0000608043 TELECOMMUNICATIONS EXP-CELLULAR | 0.00 |
| **COMMUNICATION EXPENSES** | **2,975.28** |
|  |  |
| 0000604011 HARDWARE - DESKTOP PURCHASES | 170,274.40 |
| 0000604012 HARDWARE - DCS PURCHASES | 0.00 |
| 0000604014 HARDWARE - DESKTOP MAINTENANCE | (405.66) |
| 0000604015 HARDWARE - SERVER PURCHASES | 0.00 |
| 0000604017 HARDWARE - NETWORK PURCHASES | 0.00 |
| 0000604019 HARDWARE - SERVER MAINTENANCE | 74,084.87 |
| 0000604020 HARDWARE - NETWORK MAINTENANCE | 0.00 |
| 0000604030 SOFTWARE - SERVER PURCHASES | 20,616.83 |
| 0000604031 SOFTWARE - MAINFRAME MAINTENANCE | 0.00 |
| 0000604032 SOFTWARE - MAINFRAME PURCHASES | 38,807.83 |
| 0000604033 SOFTWARE - SERVER MAINTENANCE | 979.88 |
| 0000604034 SOFTWARE - DESKTOP MAINTENANCE | 9,173.60 |
| 0000604035 SOFTWARE - DESKTOP PURCHASES | 180,867.00 |
| 0000604036 SOFTWARE - NETWORK PURCHASES | 0.00 |
| 0000604037 SOFTWARE - NETWORK MAINTENANCE | 262,216.93 |
| 0000604060 COMPUTER EQUIPMENT UNDER $5000 | 0.00 |
| **IT EXPENSES** | **756,615.68** |
|  |  |
| **COMMUNICATIONS AND IT EXPENSES** | **759,590.96** |
|  |  |
| 0000602040 PINNACLE OVERHEAD COSTS | 408,563.97 |
| 0000602041 PINNACLE - NON REPAIRS & MAINTENANCE | 57,166.35 |
| 0000602042 SHORT TERM - TEMPORARY OUTSIDE CONTRACTORS | 0.00 |
| 0000602044 PINNACLE - SECURITY | 7,622.01 |

**Limetree Bay Services, LLC**
**Income Statement**
**For the month ending July 31, 2021**

| | July 13-31, 2021<br>Unaudited |
|---|---|
| 0000602047 OUTSIDE CONTRACTOR - NON-R&M | 130,962.77 |
| **CONTRACTOR OVERHEAD** | **604,315.10** |
| | |
| 0000602060 WASTE DISPOSAL - NON-ENVIRONMENTAL | 359,880.00 |
| 0000602061 WASTE DISPOSAL - RECYCLING | 356,937.00 |
| 0000602065 OUTSIDE LABOR/SERVICES - HOURLY | 210,201.96 |
| 0000602070 MEDIA (OUTSIDE PRINTING) | 0.00 |
| 0000602080 TEMPORARY OUTSIDE LABOR / SERVICES | 256,153.00 |
| 0000602090 CONTRACT SERVICES - LUMP SUM | (1,575.00) |
| 0000602091 WASTE WATER TREATMENT PLANT - OUTSIDE CONTRACTORS | 309,471.50 |
| **OUTSIDE SERVICES** | **1,491,068.46** |
| | |
| 0000608030 UTILITY EXPENSE - WATER | (61,998.01) |
| **UTILITIES** | **(61,998.01)** |
| | |
| 0000613015 RENTALS-PASSENGER CARS | 781.25 |
| 0000613030 RENTS OFFICE & REAL ESTATE | 0.00 |
| 0000613035 RENTALS-OTHER | 12,578.83 |
| **RENTAL EXPENSES** | **13,360.08** |
| | |
| 0000612020 FINES & PENALTY | 0.00 |
| **TAXES AND FEES** | **0.00** |
| | |
| 0000612010 ENVIRONMENTAL LICENSES & PERMITS | 0.00 |
| 0000612025 LICENSES AND PERMITS-OTHER | 21,337.81 |
| 0000612030 MEMBERSHIPS/DUES | 9,166.67 |
| 0000612031 BOOKS/MANUALS/SUBSCRIPTIONS | 3,106.00 |
| **LICENSES, MEMBERSHIPS AND SUBSCRIPTIONS** | **33,610.48** |
| | |
| 0000611017 COMMUNITY RELATIONS EVENTS | 122.85 |
| **CONTRIBUTIONS AND DONATIONS** | **122.85** |
| | |
| 0000605010 OFFICE SUPPLY | 786.72 |
| 0000605011 POSTAGE | 0.00 |
| 0000605020 OPERATING SUPPLY | 13,067.00 |
| 0000605021 INVENTORY VARIANCES | (1,453.75) |
| 0000606010 MAINTENANCE SUPPLIES | 1,411,546.60 |
| 0000606011 AUTO REPAIRS | 43,887.80 |
| 0000606012 TRASH REMOVAL | 2,420.00 |
| 0000606013 R&M - OUTSIDE CONTRACTORS (NON-PINNACLE) | 7,341,230.61 |
| 0000606016 SMALL TOOLS | 0.00 |

**Limetree Bay Services, LLC**
**Income Statement**
**For the month ending July 31, 2021**

|  | July 13-31, 2021<br>Unaudited |
|---|---|
| 0000606017 CONTRACTOR TRAVEL | 0.00 |
| 0000606019 EQUIPMENT RENTALS - MAINTENANCE | 1,616,519.45 |
| 0000606020 PEST CONTROL | 15,315.00 |
| 0000606021 FACILITY SERVICES - GROUNDS, ELEV OPS, LANDSCAPING | 0.00 |
| 0000606023 VILLAGE - FOOD SERVICE | 0.00 |
| 0000606024 LAUNDRY SERVICES | 0.00 |
| 0000620010 FREIGHT EXPENSE | 131,246.85 |
| 0000620020 AIR FREIGHT | (3,391.86) |
| 0000620030 DEMURRAGE EXPENSE THIRD PARTY-NON ST&T | 0.00 |
| 0000620040 FREIGHT EXPENSE ENVIRONMENTAL | 92,284.00 |
| 0000620050 CUSTOMS & BROKERAGE CHARGES | (280.00) |
| 0000620060 PRODUCT CONSUMED-GASOLINE & OIL | 0.00 |
| 0000620070 VEHICLE TIRES & TUBES | 0.00 |
| 0000620072 GAS & OIL CONSUMED-VEHICLES | 3,605.07 |
| 0000630010 MARINE PRESERVATION / NATIONAL RESPONSE CORP | 0.00 |
| 0000630020 CHEMICALS EXP | 153,565.85 |
| 0000630030 CATALYST | 17,254.30 |
| 0000630040 ADDITIVES EXPENSE | 1,294,113.11 |
| 0000630050 DAMAGED & SCRAP MATERIAL | 0.00 |
| 0000630070 MISC EXP - OPERATING EXPENSE | 36.00 |
| 0000640000 SHARED SERVICES CLEARING | 0.00 |
| **OFFICE AND MISC OPERATING EXPENSES** | **12,131,752.75** |
|  |  |
| 0000608020 SALES-INTRA-PLANT BY PRODUCT | 0.00 |
| 0000640050 MISC EXP - NON OPERATING EXPENSE | 0.00 |
| **OTHER MISC O&M** | **0.00** |
|  |  |
| **OTHER O&M** | **21,668,933.65** |
|  |  |
| **OPERATING EXPENSES** | **23,947,245.65** |
|  |  |
| 0000801021 UNIT BASED COMPENSATION | 0.00 |
| 0000801050 INS-WORKERS COMP | 7,265.98 |
| **SALARIES AND WAGES** | **7,265.98** |
|  |  |
| 0000801057 RELOCATION | 0.00 |
| **TRAVEL** | **0.00** |
|  |  |
| 0000807010 BUSINESS MEALS & ENTERTAINMENT | 0.00 |
| 0000807020 TRAVEL AND LODGING | 45.00 |
| **MEALS & ENTERTAINMENT** | **45.00** |

**Limetree Bay Services, LLC**
**Income Statement**
**For the month ending July 31, 2021**

| | July 13-31, 2021<br>Unaudited |
|---|---|
| 0000801059 SEMINARS/SYMPOSIUMS,CONFERENCES/CONVENT | 0.00 |
| 0000801060 REGISTRATIONS-TRAINING AND TUITION | 0.00 |
| 0000801067 TRAINING MATERIALS & SUPPLIES | 0.00 |
| **TRAINING & EDUCATION** | **0.00** |
| | |
| 0000801058 UNIFORMS AND LAUNDRY | 0.00 |
| 0000801068 HOUSEHOLD FURNISHINGS | 0.00 |
| 0000801071 EMPLOYEE ACTIVITIES | 0.00 |
| 0000801074 OUTSIDE HOUSING | 0.00 |
| 0000801075 EMPLOYEE BACKGROUND SCREENING | 0.00 |
| 0000801076 EMPLOYEE-RECRUITING | 0.00 |
| 0000801078 SAFETY EXPENSE | 0.00 |
| **OTHER** | **0.00** |
| | |
| **EMPLOYEE EXPENSES** | **7,310.98** |
| | |
| 0000814010 INS - EXECUTIVE RISK (D&O, CRIME, FIDUCIARY, K&R) | 16,271.80 |
| **COMPREHENSIVE CRIME** | **16,271.80** |
| | |
| 0000814011 INS-EXCESS LIABILITY | 1,431.48 |
| **EXCESS LIABILITY** | **1,431.48** |
| | |
| 0000814012 INS-ALL RISK PROPERTY | 837,581.88 |
| **PROPERTY** | **837,581.88** |
| | |
| 0000814014 INS-COMPREHENSIVE GENERAL LIABILITY | 0.00 |
| **COMPREHENSIVE GENERAL LIABILITY** | **0.00** |
| | |
| 0000814015 INS-BUSINESS INTERRUPTION | 34,282.07 |
| **BUSINESS INTERRUPTION/FIRE & EXTEND COVERAGE** | **34,282.07** |
| | |
| 0000814016 INS-AUTO LIABILITY | 5,910.75 |
| **AUTO PHYSICAL DAMAGE** | **5,910.75** |
| | |
| 0000814018 INS-PROTECTION & INDEMNITY (P&I) LIABILITY | 0.00 |
| **LIABILITY OTHER** | **0.00** |
| | |
| 0000814050 INS-OTHER | 1,367,512.30 |
| **OTHER** | **1,367,512.30** |
| | |
| **INSURANCE** | **2,262,990.28** |

**Limetree Bay Services, LLC**
**Income Statement**
**For the month ending July 31, 2021**

| | July 13-31, 2021<br>Unaudited |
|---|---|
| 0000803010 ACCOUNTING FEES | 0.00 |
| **ACCOUNTING FEES** | **0.00** |
| 0000803011 CONSULTING FEES | 508,673.86 |
| **CONSULTING FEES** | **508,673.86** |
| 0000803012 ENGINEERING FEES | 500.00 |
| **CONSULTING FEES** | **500.00** |
| 0000803013 LEGAL FEES | 2,143,238.18 |
| **LEGAL FEES** | **2,143,238.18** |
| 0000803014 MEDICAL FEES | 0.00 |
| **MEDICAL FEES** | **0.00** |
| 0000801080 EMPLOYMENT - AGENCY FEES | 0.00 |
| **OTHER FEES** | **0.00** |
| **PROFESSIONAL FEES** | **2,652,412.04** |
| 0000806030 REPAIR & MAINTENANCE - GENERAL | 0.00 |
| **REPAIRS AND MAINTENANCE** | **0.00** |
| 0000808040 TELECOMMUNICATIONS EXPENSE-DATA | 4,921.60 |
| 0000808042 TELECOMMUNICATIONS EXPENSE-VOICE | 4,760.11 |
| 0000808043 TELECOMMUNICATIONS EXP-CELLULAR | 0.00 |
| **COMMUNICATION EXPENSES** | **9,681.71** |
| 0000804011 HARDWARE - DESKTOP PURCHASES | 0.00 |
| 0000804014 HARDWARE - DESKTOP MAINTENANCE | 0.00 |
| 0000804017 HARDWARE - NETWORK PURCHASES | 0.00 |
| 0000804018 HARDWARE - NETWORK LEASE | 16,899.26 |
| 0000804020 HARDWARE - NETWORK MAINTENANCE | 78,541.87 |
| 0000804030 SOFTWARE - SERVER PURCHASES | 12,321.45 |
| 0000804031 SOFTWARE - MAINFRAME MAINTENANCE | 19,353.99 |
| 0000804032 SOFTWARE - MAINFRAME PURCHASES | 10,044.55 |
| 0000804033 SOFTWARE - SERVER MAINTENANCE | 36,258.15 |
| 0000804034 SOFTWARE - DESKTOP MAINTENANCE | 18,680.38 |
| 0000804035 SOFTWARE - DESKTOP PURCHASES | 0.00 |
| 0000804036 SOFTWARE - NETWORK PURCHASES | 0.00 |

**Limetree Bay Services, LLC**
**Income Statement**
**For the month ending July 31, 2021**

| | July 13-31, 2021<br>Unaudited |
|---|---|
| 0000804037 SOFTWARE - NETWORK MAINTENANCE | 0.00 |
| **IT EXPENSES** | **192,099.65** |
| | |
| **COMMUNICATIONS AND IT EXPENSES** | **201,781.36** |
| | |
| 0000802040 CONTRACTOR OVERHEAD | 0.00 |
| 0000802041 PINNACLE - NON R&M (G&A) | 0.00 |
| 0000802042 SHORT TERM - TEMPORARY OUTSIDE CONTRACTORS | 0.00 |
| **CONTRACTOR OVERHEAD** | **0.00** |
| | |
| 0000802065 OUTSIDE LABOR/SERVICES | 72,721.51 |
| 0000802070 MEDIA (OUTSIDE PRINTING) | 0.00 |
| 0000802080 TEMPORARY OUTSIDE LABOR / SERVICES | (225.00) |
| 0000802090 CONTRACT SERVICES - LUMP SUM | 7,401.00 |
| **OUTSIDE SERVICES** | **79,897.51** |
| | |
| 0000808010 UTILITY EXPENSE-ELECTRICITY | 0.00 |
| **UTILITIES** | **0.00** |
| | |
| 0000802066 Cottages SS Rent Charges | 189,265.74 |
| 0000813015 RENTALS-PASSENGER CARS | 2,885.93 |
| 0000813030 RENTS OFFICE & REAL ESTATE | 0.00 |
| 0000813035 RENTALS-EQUIPMENT OTHER | 9,210.62 |
| **RENTAL EXPENSES** | **201,362.29** |
| | |
| 0000812015 BANK CHARGES | 7,153.22 |
| 0000817022 DEBT ADMIN&COLL AGENT FEES | 0.00 |
| 0000819010 EXCISE TAX EXPENSE | 0.00 |
| **TAXES AND FEES** | **7,153.22** |
| | |
| 0000812025 LICENSES AND PERMITS-OTHER | 261.25 |
| 0000812030 MEMBERSHIPS/DUES | 0.00 |
| 0000812031 BOOKS/MANUALS/SUBSCRIPTIONS | 0.00 |
| **LICENSES, MEMBERSHIPS AND SUBSCRIPTIONS** | **261.25** |
| | |
| 0000811010 CONTRIBUTIONS & DONATIONS | 0.00 |
| 0000811011 EXPENDITURE ON EDUCATION | 0.00 |
| 0000811017 COMMUNITY RELATIONS EVENTS | 0.00 |
| **CONTRIBUTIONS AND DONATIONS** | **0.00** |
| | |
| 0000805010 OFFICE SUPPLY | 0.00 |

**Limetree Bay Services, LLC**
**Income Statement**
**For the month ending July 31, 2021**

| | July 13-31, 2021<br>Unaudited |
|---|---|
| 0000805011 POSTAGE | 0.00 |
| 0000805020 OPERATING SUPPLY | 14,042.46 |
| 0000806010 MAINTENANCE SUPPLIES | 0.00 |
| 0000806013 OUTSIDE CONTRACTORS | 0.00 |
| 0000806016 SMALL TOOLS | 0.00 |
| 0000820010 FREIGHT EXPENSE | 0.00 |
| 0000830070 MISC EXPENSES - G&A | 8,392.44 |
| 0000830090 STARTUP COSTS ALLOCATED TO CAPITAL | 0.00 |
| **OFFICE AND MISC OPERATING EXPENSES** | **22,434.90** |
| | |
| 0000803020 CORPORATE OVERHEAD ALLOCATION | 0.00 |
| **OTHER MISC O&M** | **0.00** |
| | |
| **OTHER O&M** | **512,890.53** |
| | |
| **GENERAL ADMINISTRATION EXPENSE** | **5,435,603.83** |
| | |
| 0000619012 VARIABLE REFINERY PAYMENT | 0.00 |
| **\*VARIABLE REFINERY PAYMENT** | **0.00** |
| | |
| 0000617010 DEPRECIATION | 21,220,339.42 |
| **DEPRECIATION** | **21,220,339.42** |
| **\*DEPRECIATION AND AMORTIZATION** | **21,220,339.42** |
| | |
| **\*\*TOTAL EXPENSES** | **50,603,188.90** |
| | |
| **\*\*\*OPERATING INCOME** | **(51,478,505.28)** |
| | |
| 0000818010 INTEREST EXPENSE | 651,646.13 |
| 0000818020 INVESTMENT INTEREST INCOME | 0.00 |
| 0000818027 AFFILIATED INTEREST EXPENSE - TRANCHE D TERM DEBT | 0.00 |
| 0000818028 AFFILIATED INTEREST EXPENSE - SUBORDINATED NOTE | 0.00 |
| **\*\*INTEREST AND FINANCING EXPENSE** | **651,646.13** |
| | |
| 0000440150 Gain/Loss from Sale of Assets | 3,781.93 |
| 0000640020 (GAIN)/LOSS ON ASSET DISPOSAL | 0.00 |
| **(GAIN) LOSS ON SALE OF ASSETS** | **3,781.93** |
| | |
| 0000818022 MTM – Other Income/Expense | 0.00 |
| 0000900010 MAINTENANCE LABOR ACTIVITY | 0.00 |
| 0000990031 CP PRJ PnL Offset/ Clearing Account | 302,567.36 |

**Limetree Bay Services, LLC**
**Income Statement**
**For the month ending July 31, 2021**

| | July 13-31, 2021 Unaudited |
|---|---|
| **MISC OTHER (INCOME) EXPENSE** | 302,567.36 |
| **\*\*OTHER INCOME (EXPENSE), NET** | 957,995.42 |
| **\*\*\*TOTAL NON-OPERATING INCOME (EXPENSE):** | 957,995.42 |
| **\*\*\*\*NET INCOME (LOSS)** | (52,436,500.70) |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Limetree Bay Refining, LLC**

**Schedule of Bank Accounts - As of July 31, 2021**

| Description | Operating Account | Payroll Account | Construction Account | Debt Service Reserve Account | Total - All Debtor Accounts |
|---|---|---|---|---|---|
| Account Name | Limetree Bay Refining, LLC | Limetree Bay Refining, LLC | Limetree Bay Refining, LLC | Limetree Bay Refining, LLC | |
| Bank Name | Oriental Bank | Oriental Bank | Deutsche Bank | Deutsche Bank | |
| Account Number - Last Four Digits | 0267 | 0268 | 2-001.10 | 2-001.11 | |
| Beginning book balance (as of 07/12/21) | $ 2,213,522.00 | $ 315.39 | $ 107,845.03 | $ 3,533.42 | $ 2,325,215.84 |
| Plus: Deposits | 5,504,800.00 | - | 3,999,500.00 | - | 9,504,300.00 |
| Subtotal book balance | 7,718,322.00 | 315.39 | 4,107,345.03 | 3,533.42 | 11,829,515.84 |
| | | | | | |
| Less: Disbursements | (8,352,300.80) | (92.47) | - | - | (8,352,393.27) |
| Transfers | 4,107,000.00 | - | (4,107,000.00) | - | - |
| Other: | - | - | - | - | - |
| **Ending book balance (as of 07/31/21)** | **$ 3,473,021.20** | **$ 222.92** | **$ 345.03** | **$ 3,533.42** | **$ 3,477,122.57** |

# Oriental

P.O. Box 195115
San Juan, PR 00919-5115

Last statement: June 30, 2021
This statement: July 31, 2021
Total days in statement period: 31

Page 1 of 5
0267
(3)

Direct inquiries to:
787-620-0000

LIMETREE BAY REFINING, LLC
1 ESTATE HOPE
CHRISTIANSTED VI 00820-5652

Oriental Bank
254 Munoz Rivera Ave
Hato Rey PR 00918

---

## Premium Business

| | | | |
|---|---|---|---|
| Account number | 0267 | Beginning balance | $7,807,084.91 |
| Enclosures | 3 | Total additions | 9,611,147.76 |
| Low balance | $2,258,322.00 | Total subtractions | 13,944,724.27 |
| Average balance | $4,085,023.69 | Ending balance | $3,473,508.40 |

### CHECKS

| Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|
| 1916 | 07-14 | 40,000.00 | 1927 * | 07-12 | 1,598.71 |
| 1923 * | 07-12 | 17,342.28 | * Skip in check sequence | | |

### DEBITS

| Date | Description | Subtractions |
|---|---|---|
| 07-01 | ′ Intl Wire Xfer Debit | 47,628.00 |
| | WIRE OUT -LOCKTON COMPANIES INTERNATIONAL | |
| | 202107010000832 | |
| 07-01 | ′ Preauthorized Wd | 2,808,160.40 |
| | LIMETREE BAY ACH 210701 | |
| 07-02 | ′ Preauthorized Wd | 2,520.00 |
| | LIMETREE BAY ACH 210702 | |
| 07-02 | ′ Wire Transfer-Out | 75,000.00 |
| | WIRE OUT -ARENA MANAGEMENT CO., LLC | |
| | 202107020001977 | |
| 07-02 | ′ Preauthorized Wd | 281,229.07 |
| | LIMETREE BAY ACH 210702 | |
| 07-02 | ′ Wire Transfer-Out | 281,250.00 |
| | WIRE OUT -ARCLIGHT ENERGY PARTNERS | |
| | 202107020001578 | |
| 07-02 | ′ Wire Transfer-Out | 500,000.00 |
| | WIRE OUT -BAKER HOSTETLER LLP | |
| | 202107020001579 | |

0 -130599

LIMETREE BAY REFINING, LLC             Page 2 of 5
July 31, 2021             0267

| Date | Description | Subtractions |
|------|-------------|-------------|
| 07-07 | ' Wire Transfer-Out<br>WIRE OUT -BMC GROUP, INC.<br>202107070000704 | 5,000.00 |
| 07-07 | ' Wire Transfer-Out<br>WIRE OUT -B. RILEY ADVISORY<br>202107070000705 | 150,000.00 |
| 07-08 | ' Wire Transfer-Out<br>WIRE OUT -CITIBANK NA<br>202107080001910 | 276,000.00 |
| 07-08 | ' Wire Transfer-Out<br>WIRE OUT -BP NORTH AMERICA PETROLEUM<br>202107080001216 | 367,687.89 |
| 07-08 | ' Wire Transfer-Out<br>WIRE OUT -BAKER HOSTETLER LLP<br>202107080001217 | 500,000.00 |
| 07-12 | ' Preauthorized Wd<br>LIMETREE BA 0267 PAYMENT 210712 | 975.00 |
| 07-12 | ' Preauthorized Wd<br>LIMETREE BAY ACH 210712 | 88,519.32 |
| 07-12 | ' Wire Transfer-Out<br>WIRE OUT -BAKER HOSTETLER LLP<br>202107120000410 | 150,000.00 |
| 07-14 | ' Cash Mgmt Trsfr Dr<br>REF 1950748L FUNDS TRANSFER TO DEP 8202040216<br>FROM PER SHOHEB EMAIL JULY 14 2021 | 1,353,500.00 |
| 07-16 | ' Wire Transfer-Out<br>WIRE OUT -GRAY REED AND MCGRAW<br>202107160001084 | 45,156.50 |
| 07-16 | ' Wire Transfer-Out<br>WIRE OUT -GOLDMAN SACHS BANK USA<br>202107160001083 | 320,833.33 |
| 07-16 | ' Wire Transfer-Out<br>WIRE OUT -PARELLA WEINBERG PARTNERS LP<br>202107160001079 | 350,411.83 |
| 07-16 | ' Wire Transfer-Out<br>WIRE OUT -BAKER BOTTS L.L.P.<br>202107160001078 | 575,000.00 |
| 07-16 | ' Wire Transfer-Out<br>WIRE OUT -CLEARY GOTTLIEB STEEN AND HAMILTON<br>202107160001077 | 591,112.98 |
| 07-16 | ' Wire Transfer-Out<br>WIRE OUT -AKIN GUMP STRAUSS HAUER AND FELD LL<br>202107160001081 | 750,000.00 |
| 07-19 | ' Wire Transfer-Out<br>WIRE OUT -DEUTSCHE BANK TRUST CO AMERICAS<br>202107190001573 | 300,000.00 |

LIMETREE BAY REFINING, LLC

Page 3 of 5

July 31, 2021

0267

| Date | Description | Subtractions |
|------|-------------|-------------:|
| 07-21 | ' Maintenance Fee | 222.99 |
| | ANALYSIS ACTIVITY FOR 06/21 | |
| 07-21 | ' Preauthorized Wd | 7,217.70 |
| | LIMETREE BAY ACH 210721 | |
| 07-22 | ' Preauthorized Wd | 199,294.40 |
| | LIMETREE BAY ACH 210722 | |
| 07-23 | ' Wire Transfer-Out | 460,049.77 |
| | WIRE OUT -PINNACLE SERVICES L.L.C | |
| | 202107230000662 | |
| 07-26 | ' Wire Transfer-Out | 55,640.79 |
| | WIRE OUT -EXCEL CONSTRUCTION AND MAINTENANCE | |
| | 202107260000710 | |
| 07-26 | ' Preauthorized Wd | 72,510.48 |
| | LIMETREE BAY ACH 210726 | |
| 07-26 | ' Wire Transfer-Out | 74,871.63 |
| | WIRE OUT -EXCEL CONSTRUCTION AND MAINTENANCE | |
| | 202107260000348 | |
| 07-27 | ' Wire Transfer-Out | 150,000.00 |
| | WIRE OUT -DEUTSCHE BANK TRUST CO AMERICAS | |
| | 202107270000673 | |
| 07-28 | ' Wire Transfer-Out | 62,500.00 |
| | WIRE OUT -405 SENTINEL, LLC | |
| | 202107280000286 | |
| 07-28 | ' Cash Mgmt Trsfr Dr | 132,554.56 |
| | REF 2091345L FUNDS TRANSFER TO DEP      9646 | |
| | FROM PER JAMES EMAIL JULY 28 2021 | |
| 07-28 | ' Cash Mgmt Trsfr Dr | 1,290,000.00 |
| | REF 2090804L FUNDS TRANSFER TO DEP      0216 | |
| | FROM PER SHOHEB EMAIL JULY 28 2021 | |
| 07-30 | ' Wire Transfer-Out | 175,526.00 |
| | WIRE OUT -J.ARON AND COMPANY LLC | |
| | 202107300003028 | |
| 07-30 | ' Preauthorized Wd | 177,474.74 |
| | LIMETREE BAY ACH 210730 | |
| 07-30 | ' Wire Transfer-Out | 319,053.28 |
| | WIRE OUT -FIRST INSURANCE FUNDING | |
| | 202107300000996 | |
| 07-30 | ' Intl Wire Xfer Debit | 381,695.85 |
| | WIRE OUT -ANTILLES TRADING COMPANY SEZC | |
| | 202107300000998 | |
| 07-30 | ' Preauthorized Wd | 507,186.77 |
| | LIMETREE BAY ACH 210730 | |

LIMETREE BAY REFINING, LLC                                Page 4 of 5
July 31, 2021                                                         0267

## CREDITS

| Date | Description | Additions |
|------|-------------|-----------|
| 07-02 | ʼ Domestic Wire IN Fee | 4,147.76 |
| | WIRE IN -METROPOLITAN LIFE INSURANCE CO.. | |
| | 202107020003371 | |
| 07-14 | ʼ Wire Transfer-IN | 400,076.91 |
| | WIRE IN -ARENA SPECIAL OPPORTUNITIES | |
| | 202107140000955 | |
| 07-14 | ʼ Wire Transfer-IN | 744,880.58 |
| | WIRE IN -ARENA SPECIAL OPPORTUNITIES | |
| | 202107140000956 | |
| 07-14 | ʼ Wire Transfer-IN | 4,355,042.51 |
| | WIRE IN -ARENA SPECIAL OPPORTUNITIES | |
| | 202107140000957 | |
| 07-16 | ʼ Wire Transfer-IN | 1,157,000.00 |
| | WIRE IN -LIMETREE BAY REFINING LLCNO 1 ESTAT | |
| | 202107160000878 | |
| 07-23 | ʼ Wire Transfer-IN | 950,000.00 |
| | WIRE IN -LIMETREE BAY REFINING LLCNO 1 ESTAT | |
| | 202107230000675 | |
| 07-29 | ʼ Wire Transfer-IN | 2,000,000.00 |
| | WIRE IN -LIMETREE BAY REFINING LLCNO 1 ESTAT | |
| | 202107290000489 | |

## DAILY BALANCES

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 06-30 | 7,807,084.91 | 07-14 | 6,364,822.00 | 07-26 | 4,669,499.60 |
| 07-01 | 4,951,296.51 | 07-16 | 4,889,307.36 | 07-27 | 4,519,499.60 |
| 07-02 | 3,815,445.20 | 07-19 | 4,589,307.36 | 07-28 | 3,034,445.04 |
| 07-07 | 3,660,445.20 | 07-21 | 4,581,866.67 | 07-29 | 5,034,445.04 |
| 07-08 | 2,516,757.31 | 07-22 | 4,382,572.27 | 07-30 | 3,473,508.40 |
| 07-12 | 2,258,322.00 | 07-23 | 4,872,522.50 | | |

## OVERDRAFT/RETURN ITEM FEES

| | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

*Thank you for banking with Oriental Bank*

**LIMETREE BAY REFINING**
**LBR Operating Account - 110600**
**     0267**
**July 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 6/30/2021 | $ | 7,807,084.91 |
| Deposits | | $ | 9,611,147.76 |
| ACH / Debits | | $ | (6,921,142.44) |
| Wires | | $ | (6,964,417.85) |
| Bank Charges | | $ | (222.99) |
| Checks Cleared | | $ | (58,940.99) |
| Intransit Deposit | | $ | - |
| Ending Balance per Bank | 7/31/2021 | $ | 3,473,508.40 |
| Opening Balance  per Book | 6/30/2021 | $ | 7,743,343.92 |
| Deposits | | $ | 9,611,147.76 |
| ACH / Debits | | $ | (6,921,142.44) |
| Wires | | $ | (6,964,417.85) |
| Bank Charges | | $ | (222.99) |
| Checks Issued | Doc Num | $ | (487.20) |
| Checks Reversed | | $ | 4,800.00 |
| Ending Balance per Book | 7/31/2021 | $ | 3,473,021.20 |
| Outstanding Checks | 7/31/2021 | $ | 487.20 |
| ACH Intransit | | $ | - |
| | | $ | 3,473,508.40 |
| | | $ | 0.00 |

Reconciled by   George Southwell

Date:   8/17/2021

Approved by   _____

Date:   _____

# Oriental

1439

P.O. Box 195115
San Juan, PR 00919-5115

Last statement: June 30, 2021
This statement: July 31, 2021
Total days in statement period: 31

Page 1 of 2
      0268
(0)

Direct inquiries to:
787-620-0000

LIMETREE BAY REFINING, LLC
1 ESTATE HOPE
CHRISTIANSTED VI 00820-5652

Oriental Bank
254 Munoz Rivera Ave
Hato Rey PR 00918

---

## Premium Business

| | | | |
|---|---|---|---|
| Account number | 0268 | Beginning balance | $315.39 |
| Low balance | $222.92 | Total additions | .00 |
| Average balance | $282.58 | Total subtractions | 92.47 |
| | | Ending balance | $222.92 |

**DEBITS**

| Date | Description | Subtractions |
|---|---|---|
| 07-21 | ' Maintenance Fee | 92.47 |
| | ANALYSIS ACTIVITY FOR 06/21 | |

**DAILY BALANCES**

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 06-30 | 315.39 | 07-21 | 222.92 | | |

**OVERDRAFT/RETURN ITEM FEES**

| | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

*Thank you for banking with Oriental Bank*

0 -130605

**LIMETREE BAY REFINING**
**LBR Payroll Account - 110610**
      **0268**
**July 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 6/30/2021 | $ | 315.39 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Bank Charges | | $ | (92.47) |
| Checks Cleared | | $ | - |
| Intransit Deposit | | $ | - |
| Ending Balance per Bank | 7/31/2021 | $ | 222.92 |
| Opening Balance  per Book | 6/30/2021 | $ | 315.39 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Bank Charges | | $ | (92.47) |
| Checks Issued | | $ | - |
| Ending Balance per Book | 7/31/2021 | $ | 222.92 |
| Outstanding Checks | 7/31/2021 | $ | - |
| | | $ | 222.92 |

Reconciled by    George Southwell

Date:    8/2/2021

Approved by

Date:

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Revenue Account |
| Portfolio Number: | 2-001.4 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

**Portfolio Market Value Summary as of 07/31/21**

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |
| YTD Dividends: | $ 0.00 |
| YTD Interest: | $ 0.00 |
| YTD Capital Gains/Losses: | $ 0.00 |

**Portfolio Cost Value Summary as of 07/31/21**

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |

**Cash Summary**

| | |
|---|---|
| Beginning Balance | $ 0.00 |
| Closing Balance | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

**Deutsche Bank** ∕

| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Revenue Account |
| Portfolio Number: | 2-001.4 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Transaction Statement for the period of July 1, 2021 through July 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 07/01 | Beginning balance | | | | | $ 0.00 $ | 0.00 |

Asset position as of July 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR O&M Account |
| Portfolio Number: | 2-001.5 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

### Portfolio Market Value Summary as of 07/31/21

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |
| YTD Dividends: | $ 0.00 |
| YTD Interest: | $ 0.00 |
| YTD Capital Gains/Losses: | $ 0.00 |

### Portfolio Cost Value Summary as of 07/31/21

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |

### Cash Summary

| | |
|---|---|
| Beginning Balance | $ 0.00 |
| Closing Balance | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| Account Name: | Limetree Bay Refining LLC |
|---|---|
| Portfolio Name: | LBR O&M Account |
| Portfolio Number: | SE1972-001.5 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Transaction Statement for the period of July 1, 2021 through July 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 07/01 | Beginning balance | | | | | $ 0.00 $ | 0.00 |

Asset position as of July 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

**Account Name:** Limetree Bay Refining LLC
**Portfolio Name:** LBR Reinvestment & Repair Account
**Portfolio Number:** 2-001.6
**Statement Period:** July 01, 2021 - July 31, 2021
**Account Administrator:** Shamarri Hartzog (714-247-6353)
**Account Manager:** Scott Dodic (212-250-7848)
**Team Lead:** Thalia Delahayes (212-250-7336)

## Summary

| Portfolio Market Value Summary as of 07/31/21 | |
|---|---|
| Total Portfolio Value: | $ 0.00 |
| YTD Dividends: | $ 0.00 |
| YTD Interest: | $ 0.00 |
| YTD Capital Gains/Losses: | $ 0.00 |

| Portfolio Cost Value Summary as of 07/31/21 | |
|---|---|
| Total Portfolio Value: | $ 0.00 |

| Cash Summary | |
|---|---|
| Beginning Balance | $ 0.00 |
| Closing Balance | 0.00 |

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Reinvestment & Repair Account |
| Portfolio Number: | 2-001.6 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Transaction Statement for the period of July 1, 2021 through July 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 07/01 | Beginning balance | | | | | $  0.00 $ | 0.00 |

Asset position as of July 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Distribution Suspense Account |
| Portfolio Number: | 2-001.8 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

### Portfolio Market Value Summary as of 07/31/21

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |
| YTD Dividends: | $ 0.00 |
| YTD Interest: | $ 0.00 |
| YTD Capital Gains/Losses: | $ 0.00 |

### Portfolio Cost Value Summary as of 07/31/21

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |

### Cash Summary

| | |
|---|---|
| Beginning Balance | $ 0.00 |
| Closing Balance | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

Account Name: Limetree Bay Refining LLC
Portfolio Name: LBR Distribution Suspense Account
Portfolio Number: 2-001.8
Statement Period: July 01, 2021 - July 31, 2021
Account
Administrator: Shamarri Hartzog (714-247-6353)
Account Manager: Scott Dodic (212-250-7848)
Team Lead: Thalia Delahayes (212-250-7336)

## Transaction Statement for the period of July 1, 2021 through July 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|------|------------------------|------|----------|---------------|-------|--------------|--------------|
| 07/01 | Beginning balance | | | | | $ 0.00 $ | 0.00 |

## Asset position as of July 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|-------------|----------------|------|---------------|--------------|-------|--------------|----------------|-----------------------------|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Operating Reserve Account |
| Portfolio Number: | 2-001.9 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

### Portfolio Market Value Summary as of 07/31/21

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |
| YTD Dividends: | $ 0.00 |
| YTD Interest: | $ 0.00 |
| YTD Capital Gains/Losses: | $ 0.00 |

### Portfolio Cost Value Summary as of 07/31/21

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |

### Cash Summary

| | |
|---|---|
| Beginning Balance | $ 0.00 |
| Closing Balance | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Operating Reserve Account |
| Portfolio Number: | 2-001.9 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Transaction Statement for the period of July 1, 2021 through July 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 07/01 | Beginning balance | | | | | $ 0.00 $ | 0.00 |

Asset position as of July 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Construction Account |
| Portfolio Number: | 2-001.10 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

### Portfolio Market Value Summary as of 07/31/21

| | | |
|---|---|---|
| Cash | $ | 0.00 |
| Investments | $ | 345.03 |
| Total Portfolio Value: | $ | 345.03 |
| YTD Interest: | $ | 0.00 |
| YTD Dividends: | $ | 220.74 |
| YTD Capital Gains/Losses: | $ | 0.00 |

### Portfolio Cost Value Summary as of 07/31/21

| | | |
|---|---|---|
| Cash | $ | 0.00 |
| Investments | $ | 345.03 |
| Total Portfolio Value: | $ | 345.03 |

### Cash Summary

| | | |
|---|---|---|
| **Beginning Balance** | $ | **0.00** |
| **Receipts:** | | |
| Cash Receipts | | 201,980.00 |
| Transfers In | | 3,899,500.00 |
| Sale of Investments | | 207,500.00 |
| **Total Receipts** | $ | **4,308,980.00** |

### Disbursements:

| | | |
|---|---|---|
| Purchase of Investments | $ | 201,980.00 |
| Cash Disbursements | $ | 4,107,000.00 |
| Dividends Reinvested | $ | 0.95 |
| **Total Disbursements** | $ | **(4,308,980.00)** |
| **Closing Balance** | $ | **0.00** |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

Account Name: Limetree Bay Refining LLC
Portfolio Name: LBR Construction Account
Portfolio Number: 2-001.10
Statement Period: July 01, 2021 - July 31, 2021
Account Administrator: Shamarri Hartzog (714-247-6353)
Account Manager: Scott Dodic (212-250-7848)
Team Lead: Thalia Delahayes (212-250-7336)

## Transaction Statement for the period of July 1, 2021 through July 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 07/01 | Beginning balance | $ | | | | $ 0.00 | $ 5,864.08 |
| 07/01 | Dividend Reinvestment<br>BL #92104 -0U4 FedFund Admin<br>CUSIP: 09248U445   / ISIN: US09248U4452 | $ 0.00 | $ 0.95 | $ 0.00 | $ 0.00 | $ 0.00 | $ 5,865.03 |
| 07/02 | Wire Receipt<br>MONEY TRANSFER RECEIPT: REM=0012107015022747 OBI=<br>PORT SE1972 001 10 FF C TO LBR CONSTRUCTION ACCO<br>UNTBBI=BNF-NYLTD FUNDS CONT ROL NY10005 NEW | $ 1,980.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,980.00 | $ 5,865.03 |
| 07/02 | Auto Wire Receipt<br>MONEY TRANSFER RECEIPT: 07240268400158 19 REM=072<br>40269400158 19 OBI=POR T SE1972-001.1 0LBR-CONSTRU<br>CTION ACCOUNTBBI=BNF-NYLTD FUNDS CONTROL-NY<br>Sending Bank: 072402694    HILLSDALE COUNTY NATIONAL BANK<br>Beneficiary: SE1972-001.1 0 LIMETREE BAY REFINING LLC<br>FED 0702GMQFMP01019345-07.02.2021<br>BANKREF M103067IFD070221 M103067IFD07022120210702 | $ 100,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 101,980.00 | $ 5,865.03 |
| 07/06 | Mutual Fund Purchase<br>@ 1.00<br>BL #92104 -0U4 FedFund Admin<br>CUSIP: 09248U445   / ISIN: US09248U4452 | $ (101,980.00) | $ 101,980.00 | $ 0.00 | $ 1.00 | $ 0.00 | $ 107,845.03 |
| 07/16 | Mutual Fund Sale<br>SE1972IMF<br>@ 1.00<br>BL #92104 -0U4 FedFund Admin<br>CUSIP: 09248U445   / ISIN: US09248U4452 | $ 107,500.00 | $ (107,500.00) | $ 0.00 | $ 1.00 | $ 107,500.00 | $ 345.03 |
| 07/16 | Cash Transfer<br>0 | $ 1,049,500.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,157,000.00 | $ 345.03 |
| 07/16 | Funds Disbursement<br>Limetree Bay Refining, LLC    ORIENTAL BANK AND TRUST<br>Receiving Bank: 221571415    Limetree Bay Refining, LLC<br>Beneficiary:     0267   Limetree Bay Refining, LLC<br>FED 0716B1O8383C007619<br>BANKREF C195206OFD071621 C195206OFD071621 | $ (1,157,000.00) | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 345.03 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

Account Name: Limetree Bay Refining LLC
Portfolio Name: LBR Construction Account
Portfolio Number: 2-001.10
Statement Period: July 01, 2021 - July 31, 2021
Account Administrator: Shamarri Hartzog (714-247-6353)
Account Manager: Scott Dodic (212-250-7848)
Team Lead: Thalia Delahayes (212-250-7336)

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 07/16 | Auto Wire Receipt<br>MONEY TRANSFER RECEIPT: 072402694001597O REM=072402694001597O OBI=POR T SE1972-001.10LBR-CONSTRU CTION ACCOUNTBBI=BNF-NY LTD FUNDS CONTROL-NY<br>Sending Bank: 072402694   HILLSDALE COUNTY NATIONAL BANK<br>Beneficiary:   72-001.10 LIMETREE BAY REFINING LLC<br>FED 0716CMQFMP0102952107-16.2021<br>BANKREF M202989IFD071621 M202989IFD07162120210716 | $ 100,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 100,000.00 | $ 345.03 |
| 07/19 | Mutual Fund Purchase<br>@ 1.00<br>BL #92104 -0U4 FedFund Admin<br>CUSIP: 09248U445   / ISIN: US09248U4452 | $ (100,000.00) | $ 100,000.00 | $ 0.00 | $ 1.00 | $ 0.00 | $ 100,345.03 |
| 07/23 | Cash Transfer<br>0 | $ 950,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 950,000.00 | $ 100,345.03 |
| 07/23 | Funds Disbursement<br>Limetree Bay Refining, LLC<br>Receiving Bank: 221571415   ORIENTAL BANK AND TRUST<br>Beneficiary:   0267   Limetree Bay Refining, LLC<br>FED 0723B1Q8383C006268<br>BANKREF C464209OFD072321 C464209OFD072321 | $ (950,000.00) | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 100,345.03 |
| 07/29 | Mutual Fund Sale<br>SE1972IMF<br>@ 1.00<br>BL #92104 -0U4 FedFund Admin<br>CUSIP: 09248U445   / ISIN: US09248U4452 | $ 100,000.00 | $ (100,000.00) | $ 0.00 | $ 1.00 | $ 100,000.00 | $ 345.03 |
| 07/29 | Cash Transfer<br>0 | $ 1,900,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 2,000,000.00 | $ 345.03 |
| 07/29 | Funds Disbursement<br>Limetree Bay Refining, LLC<br>Receiving Bank: 221571415   ORIENTAL BANK AND TRUST<br>Beneficiary:   0267   Limetree Bay Refining, LLC<br>FED 0729B1Q8383C012902<br>BANKREF C189416OFD072921 C189416OFD072921 | $ (2,000,000.00) | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 345.03 |

# Deutsche Bank ⊿

Account Name: Limetree Bay Refining LLC
Portfolio Name: LBR Construction Account
Portfolio Number: 2-001.10
Statement Period: July 01, 2021 - July 31, 2021
Account
Administrator: Shamarri Hartzog (714-247-6353)
Account Manager: Scott Dodic (212-250-7848)
Team Lead: Thalia Delahayes (212-250-7336)

## Asset position as of July 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| BL #92104 -0U4 FedFund Admin CUSIP: 09248U445 | 345.03 | $345.03 | 345.03 | $1.00 | 0.03% | $345.03 | $1.40 | n/a / N/A |
| **Total Portfolio** | **345.03** | **$345.03** | **345.03** | | | **$345.03** | **$1.40** | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| Account Name: | Limetree Bay Refining LLC |
|---|---|
| Portfolio Name: | LBR Debt Service Reserve Account |
| Portfolio Number: | 2-001.11 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

### Portfolio Market Value Summary as of 07/31/21

| | | |
|---|---|---|
| Cash | $ | 0.00 |
| Investments | $ | 3,533.42 |
| Total Portfolio Value: | $ | 3,533.42 |
| | | |
| YTD Dividends: | $ | 0.00 |
| YTD Interest: | $ | 0.00 |
| YTD Capital Gains/Losses: | $ | 0.00 |

### Portfolio Cost Value Summary as of 07/31/21

| | | |
|---|---|---|
| Cash | $ | 0.00 |
| Investments | $ | 3,533.42 |
| Total Portfolio Value: | $ | 3,533.42 |

### Cash Summary

| | | |
|---|---|---|
| Beginning Balance | $ | 0.00 |
| Closing Balance | | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Debt Service Reserve Account |
| Portfolio Number: | 2-001.11 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Transaction Statement for the period of July 1, 2021 through July 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 07/01 | Beginning balance | | | | | $ 0.00 | $ 3,533.42 |

## Asset position as of July 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| BL #92104 -0U4 FedFund Admin CUSIP: 09248U445 | 3,533.42 | $3,533.42 | 3,533.42 | $1.00 | 0.03% | $3,533.42 | $0.00 | n/a / N/A |
| **Total Portfolio** | **3,533.42** | **$3,533.42** | **3,533.42** | | | **$3,533.42** | **$0.00** | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

**LIMETREE BAY REFINING**
**LBR Construction Account          110690**
**2-001.10**
**July 2020**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance per Bank | 6/30/2021 | $ | 5,864.08 |
| Deposits | | $ | 4,101,480.00 |
| ACH / Debits | | $ | - |
| Wires | | $ | (4,107,000.00) |
| Capital Gain/Losses | | $ | - |
| Bank Charges | | $ | - |
| Dividends | | $ | 0.95 |
| Ending Balance per Bank | 7/31/2021 | $ | 345.03 |
| Opening Balance per Book | 6/30/2021 | $ | 5,864.08 |
| Deposits | | $ | 4,101,480.00 |
| ACH / Debits | | $ | - |
| Wires | | $ | (4,107,000.00) |
| Misc Adjustment | | | |
| Capital Gain/Losses | | | - |
| Bank Charges | | $ | - |
| Dividends | | $ | 0.95 |
| Ending Balance per Book | 7/31/2021 | $ | 345.03 |
| | | $ | 345.03 |
| | | $ | - |

| | | |
|---|---|---|
| Reconciled by | George Southwell | |
| Date: | 8/11/2021 | |
| Approved by | | |
| Date: | | |

**LIMETREE BAY REFINING**
**LBR Debt Service Reserve Account          110700**
        **2-001.11**
**July 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 6/30/2021 | $ | 3,533.42 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Capital Gain/Losses | | $ | - |
| Bank Charges | | $ | - |
| Dividends | | $ | - |
| Ending Balance per Bank | 7/31/2021 | $ | 3,533.42 |
| Opening Balance  per Book | 6/30/2021 | $ | 3,533.42 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Capital Gain/Losses | | | - |
| Bank Charges | | $ | - |
| Dividends | | $ | - |
| Ending Balance per Book | 7/31/2021 | $ | 3,533.42 |
| | | $ | 3,533.42 |
| | | $ | - |

| | | |
|---|---|---|
| Reconciled by | George Southwell | |
| Date: | 8/2/2021 | |
| Approved by | | |
| Date: | | |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of July 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | AGCS (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AGCS (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, Allianz, Axis (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, Aspen (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, HDI (Amended Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, Liberty (Endorsement | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, TRV (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, TRV (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, TRV (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG/National Union Fire Insurance Co | Combined Property | Primary $250M | 026-1001312 | 2021.09.01 |
| Limetree Bay Refining, LLC | Allianz (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz Global Risk US Insurance Company | Combined Property | Primary $1.25BN | USN00023920 | 2021.12.01 |
| Limetree Bay Refining, LLC | Aspen (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | Atrium Underwriters Ltd | Combined Property | $150M XS $200M | B0509ENGAO2000588 | 2021.12.01 |
| Limetree Bay Refining, LLC | Axis (Endorsement) | Builder's Risk | $50M | EAU646295/01/2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 92SRD102973 | |
| Limetree Bay Refining, LLC | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 42-PRP-312023-01 | 2021.09.01 |
| Limetree Bay Refining, LLC | CIN 318/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of July 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | Convex Insurance UK Limited | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Elseco limited | Combined Property | $300M XS $200M | B0509ENGAO2000563 | 2021.12.01 |
| Limetree Bay Services, LLC | Liberty | Worker's Comp | | WCC-641-444917-020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Fidelis/ Fidelis Underwriting Ltd. | Combined Property | $250M XS $250M | B0509ENGAO2000613 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hannover Re/HDI Global Specialty SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Helvetia/Helvetia Swiss Insurance Co in Liechtenstein Ltd | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Helvetia/Helvetia Swiss Insurance Co in Liechtenstein Ltd | Combined Property | $300M XS $200M | B0509ENGAO2000586 | 2021.12.01 |
| Limetree Bay Refining, LLC | HSIC/Houston Specialty Insurance Company | Combined Property | $150M XS 50M | PRO440373 | 2021.12.01 |
| Limetree Bay Refining, LLC | IGI/Insurance General Insurance Co Ltd. | Combined Property | $300M XS $200M | B0509ENGAO2000563 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lancashire/Lancashire Insurance Company UK, Ltd. | Combined Property | $300M XS $200M | B0509ENGAO2000587 | 2021.12.01 |
| Limetree Bay Refining, LLC | LSM/Liberty Specialty Markets Agency Limited | Combined Property | $100M XS $100M | LSMAEN143232A | 2021.12.01 |
| Limetree Bay Refining, LLC | Munich Re/Great Lakes Insurance SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | NOA/Lloyds of London | Combined Property | $300M XS $200M | B0509ENGAO2000586 | 2021.12.01 |
| Limetree Bay Refining, LLC | Partner Re/PartnerRe Ireland Insurance dac | Combined Property | $150M XS $350M | B0509ENGAO2000589 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of July 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | PICC/Guardian General Insurance | Combined Property | $100M XS $100M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | QBE/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Rokstone/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC | SCOR (3)/General Security Indemnity Company of Arizona | Combined Property | Primary $1.25BN | FA007943720201 | |
| Limetree Bay Refining, LLC | Sompo/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Swiss Re/Westport Insurance Company | Combined Property | Primary $500M | OMP 2000425-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Validus Specialty/Lloyds of London | Combined Property | Primary $250M | AJH292893A20 | |
| Limetree Bay Refining, LLC | Westchester Surplus Lines Ins Co/Starr Technical Risks Agency, Inc | Combined Property | Primary $500M | EPRN18215263 | 2021.12.01 |
| Limetree Bay Refining, LLC | WRB/Guardian General Insurance | Combined Property | $50M XS $50M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Zurich/Zurich American Insurance Company | Combined Property | Primary $100M | OGR 1296457-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arcadian/Ark/Helix Bermuda | Builder's Risk | $25M xs $100M | NAMBM2100005 | 2022.06.01 |
| Limetree Bay Refining, LLC | Allianz | Refinery Excess Liability | $15M xs $53M | USL00880520 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz | Environmental Liability | $15M xs $85M | USL00873320 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty | Refinery Primary Liability | | AS6-641-444917-010 | 2021.12.01 |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of July 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---------|---------|------|-----------------|---------------|-----------------|
| Limetree Bay Refining, LLC | Travelers Syndicate | Refinery Primary Liability | | ENCAS2000012 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer/Apollo | Refinery Excess Liability | $15M | ENCAS2000011 | 2021.12.01 |
| Limetree Bay Refining, LLC | Westchester | Refinery Excess Liability | $3M xs $25M | G71809808001 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Refinery Excess Liability | $25M xs $28M | 4380100 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer | Refinery Excess Liability | $11M po $22M xs $68M | ENCAS2000020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lex-London | Refinery Excess Liability | $11M po $22M xs $68M | 62785689 | 2021.12.01 |
| Limetree Bay Refining, LLC | OSL | Refinery Excess Liability | $10M xs $90M | EXS-154724-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | AXA XL Bermuda | Refinery Excess Liability | $25M xs $125M | XLUMB-229978 | 2021.12.01 |
| Limetree Bay Refining, LLC | OCIL Bermuda | Refinery Excess Liability | $25M po $40M xs $150M | U920968-0620 | 2021.12.01 |
| Limetree Bay Refining, LLC | Sompo Bermuda | Refinery Excess Liability | $15M po $40M xs $150M | EXC30001524800 | 2021.12.01 |
| Limetree Bay Refining, LLC | Argo Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | ARGO-CAS-OR-001484 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arch Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | URP0065257-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel Bermuda | Refinery Excess Liability | $12.5M po $50M xs $190M | 1454233-11636-UMB-2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hamilton Bermuda | Refinery Excess Liability | $7.5M po $50M xs $190M | CX20-9216 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chubb Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LBR-2144/XS004 | 2021.12.01 |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of July 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | Liberty Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LSMAEC119907A | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $1M | ENVP0000296-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $9M xs $1M | ENVX0000256-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Environmental Liability | $25M xs $10M | 262704 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ascot | Environmental Liability | $25M xs $35M | ENXP2110000428-01 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel | Environmental Liability | $25M xs $60M | MKLV4EFX102259 | 2021.12.01 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $15M | 8261-8347 | 2022.04.20 |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000623319211 | |
| Limetree Bay Refining, LLC | Wesco Insurance Company | Executive Risk | $1M | EUW1909831 00 | |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $10M | 1000622392201 | 2027.04.27 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | | 8247-1536 | |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

# UNITED STATES BANKRUPTCY COURT

SOUTHERN   DISTRICT OF   TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| In Re. LIMETREE BAY REFINING OPERATING, LLC | § § § § | Case No.   21-32355 |
| Debtor(s) | | Lead Case No.   21-32351 |
| | | ☒ Jointly Administered |

## Monthly Operating Report

Chapter 11

Reporting Period Ended: 07/31/2021                Petition Date: 07/12/2021

Months Pending: 1                Industry Classification: | 3 | 2 | 4 | 1 |

Reporting Method:        Accrual Basis ⦿        Cash Basis ○

Debtor's Full-Time Employees (current):        268

Debtor's Full-Time Employees (as of date of order for relief):        263

**Supporting  Documentation**  (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

☒        Statement of cash receipts and disbursements
☒        Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
☒        Statement of operations (profit or loss statement)
☐        Accounts receivable aging
☐        Postpetition liabilities aging
☐        Statement of capital assets
☐        Schedule of payments to professionals
☐        Schedule of payments to insiders
☒        All bank statements and bank reconciliations for the reporting period
☐        Description of the assets sold or transferred and the terms of the sale or transfer

/s/ Elizabeth A. Green
Signature of Responsible Party

09/21/2021
Date

Elizabeth A. Green
Printed Name of Responsible Party

200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, FL 32801
Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

Debtor's Name LIMETREE BAY REFINING OPERATING, LLC     Case No. 21-32355

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a. Cash balance beginning of month | $20,962 | |
| b. Total receipts (net of transfers between accounts) | $2,643,500 | $2,643,500 |
| c. Total disbursements (net of transfers between accounts) | $2,656,923 | $2,656,923 |
| d. Cash balance end of month (a+b-c) | $7,539 | |
| e. Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f. Total disbursements for quarterly fee calculation (c+e) | $2,656,923 | $2,656,923 |

| Part 2: Asset and Liability Status<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | |
|---|---|---|
| a. Accounts receivable (total net of allowance) | $96,399,592 | |
| b. Accounts receivable over 90 days outstanding (net of allowance) | $0 | |
| c. Inventory   (Book ○   Market ○   Other ◉   (attach explanation)) | $0 | |
| d. Total current assets | $96,407,131 | |
| e. Total assets | $96,407,131 | |
| f. Postpetition payables (excluding taxes) | $0 | |
| g. Postpetition payables past due (excluding taxes) | $0 | |
| h. Postpetition taxes payable | $0 | |
| i. Postpetition taxes past due | $0 | |
| j. Total postpetition debt (f+h) | $0 | |
| k. Prepetition secured debt | $1,056,353,789 | |
| l. Prepetition priority debt | $0 | |
| m. Prepetition unsecured debt | $106,538,705 | |
| n. Total liabilities (debt) (j+k+l+m) | $1,162,892,494 | |
| o. Ending equity/net worth (e-n) | $-1,066,485,363 | |

| Part 3: Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a. Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b. Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c. Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4: Income Statement (Statement of Operations)<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a. Gross income/sales (net of returns and allowances) | $0 | |
| b. Cost of goods sold (inclusive of depreciation, if applicable) | $0 | |
| c. Gross profit (a-b) | $0 | |
| d. Selling expenses | $2,648,568 | |
| e. General and administrative expenses | $1,137,146 | |
| f. Other expenses | $0 | |
| g. Depreciation and/or amortization (not included in 4b) | $0 | |
| h. Interest | $0 | |
| i. Taxes (local, state, and federal) | $0 | |
| j. Reorganization items | $0 | |
| k. Profit (loss) | $-3,785,714 | $-3,785,714 |

Debtor's Name  LIMETREE BAY REFINING OPERATING, LLC

Case No.  21-32355

## Part 5:  Professional Fees and Expenses

| | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|
| a. | Debtor's professional fees & expenses (bankruptcy)  *Aggregate Total* | | | | |
| | *Itemized Breakdown by Firm* | | | | |
| | | Firm Name | Role | | | |
| | i | | | | | |
| | ii | | | | | |

| | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy)  *Aggregate Total* | | | | |
| | *Itemized Breakdown by Firm* | | | | |
| | | Firm Name | Role | | | |
| | i | | | | | |
| | ii | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | |

## Part 6:  Postpetition Taxes

| | | Current Month | Cumulative |
|---|---|---|---|
| a. | Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. | Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. | Postpetition employer payroll taxes accrued | $0 | $0 |
| d. | Postpetition employer payroll taxes paid | $0 | $0 |
| e. | Postpetition property taxes paid | $0 | $0 |
| f. | Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. | Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

## Part 7: Questionnaire - During this reporting period:

a.  Were any payments made on prepetition debt?  (if yes, see Instructions)      Yes ◉   No ○

b.  Were any payments made outside the ordinary course of business without court approval?  (if yes, see Instructions)      Yes ○   No ◉

c.  Were any payments made to or on behalf of insiders?      Yes ○   No ◉

d.  Are you current on postpetition tax return filings?      Yes ◉   No ○

e.  Are you current on postpetition estimated tax payments?      Yes ◉   No ○

f.  Were all trust fund taxes remitted on a current basis?      Yes ◉   No ○

g.  Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions)      Yes ◉   No ○

h.  Were all payments made to or on behalf of professionals approved by the court?      Yes ○   No ○   N/A ◉

i.  Do you have:      Worker's compensation insurance?      Yes ◉   No ○

   If yes, are your premiums current?      Yes ◉   No ○   N/A ○   (if no, see Instructions)

   Casualty/property insurance?      Yes ◉   No ○

   If yes, are your premiums current?      Yes ◉   No ○   N/A ○   (if no, see Instructions)

   General liability insurance?      Yes ◉   No ○

   If yes, are your premiums current?      Yes ◉   No ○   N/A ○   (if no, see Instructions)

j.  Has a plan of reorganization been filed with the court?      Yes ○   No ◉

| Debtor's Name | LIMETREE BAY REFINING OPERATING, LLC | | Case No. | 21-32355 |

k. Has a disclosure statement been filed with the court?   Yes ○   No ●

l. Are you current with quarterly U.S. Trustee fees as set forth under 28 U.S.C. § 1930?   Yes ●   No ○

| **Part 8: Individual Chapter 11 Debtors (Only)** |

| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |

l. Are you required to pay any Domestic Support Obligations as defined by 11 U.S.C § 101(14A)?   Yes ○   No ●

m. If yes, have you made all Domestic Support Obligation payments?   Yes ○   No ○   N/A ●

### Privacy Act Statement

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107. The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6). The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith. This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law. Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records." See 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006). A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm. Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee. 11 U.S.C. § 1112(b)(4)(F).

**<u>I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.</u>**

Mark Shapiro

Signature of Responsible Party

Chief Restructuring Officer

Title

Mark Shapiro, Chief Restructuring Officer

Printed Name of Responsible Party

09/21/2021

Date

CASE NAME: **Limetree Bay Refining Operating, LLC**
CASE NUMBER: **21-32355 (Jointly Administered under Lead Case No.: 21-32351)**

### Notes to the Monthly Operating Report

#### General:

On July 12, 2021 (the "Petition Date"), Limetree Bay Services, LLC ("Limetree") filed a voluntary petition with the United States Bankruptcy Court under Chapter 11 of the Bankruptcy Code [Case No.: 21-32351], along with five (5) affiliated entities (Affiliated Entities"). The debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); and Limetree Bay Refining Marketing, LLC (9222); (collectively, the "Debtors" or "Jointly Administered Debtors"). The bankruptcy filings of Limetree and the Affiliated Entities are jointly administered under Case No. 21-32351.

On or about June 17, 2021, the Jointly Administered Debtors retained B. Riley as chief restructuring officer ("CRO"). Mark Shapiro, as principal representative of B. Riley in its capacity, serves as CRO to the Jointly Administered Debtors.

Debtor-in-Possession Financial Statements - The accompanying schedules herein are unaudited, preliminary, and may not comply with generally accepted accounting principles in the United States of America ("U.S. GAAP") in all material respects.

The Monthly Operating Report ("MOR") is limited in scope, covers a limited time period, and has been prepared solely for the purpose of complying with the monthly reporting requirements of the Bankruptcy Court and the United States Trustee. The information presented herein has not been subjected to all procedures that would typically be applied to financial information presented in accordance with U.S. GAAP. Upon the application of such procedures, the financial information could be subject to changes, and these changes could be material. The information furnished in this MOR includes normal recurring adjustments, but does not include all of the adjustments that would typically be made for interim financial statements in accordance with U.S. GAAP.

Reservation of Rights: Given the complexity of the Debtors' business, inadvertent errors, omissions or over inclusions may have occurred. Accordingly, the Debtors hereby reserve all of their rights to dispute the validity, status, enforceability, or executory nature of any claim amount, representation or other statement in this MOR and reserve the right to amend or supplement this MOR, if necessary, but shall be under no obligation to do so.

#### July 12-31, 2021 Monthly Operating Report:

**(1)** The Reporting Period for this MOR is July 12-31, 2021, and the financial statements referenced herein cover the same time period.

**(2)** The Financial Statements are reported on an Accrual Basis. Cash Receipts & Disbursements are reported on a Cash Basis.

**(3)** The CRO, Mark Shapiro, has signed this MOR. Mr. Shapiro is an authorized signatory for the Debtor. In reviewing and signing the MOR, Mr. Shapiro has relied upon the efforts, statements and representations of various personnel employed by the Debtor and the Debtor's advisors. Mr. Shapiro has not (and could not have) personally verified the accuracy of each statement and representation contained in the MOR, including statements and representations concerning amounts owed to creditors, classification of such amounts, and other attached information.

**(4)** MOR Part 2, d - Total Current Assets includes Cash and Accounts Receivable.

**(5)** MOR Part 2, e - Total Assets includes Current Assets.

**(6)** MOR Part 2, k-m - Amounts are per the Debtor's bankruptcy schedules and are subject to adjustment once the claims process has been completed by the CRO, which includes, but is not limited to, examining, determining the validity of and objecting to any disputed, contingent, unliquidated and filed claims.

**(7)** MOR Part 2, k-o - As of the time of this filing, the CRO has not determined with accuracy the amount of the secured and unsecured debt, both of which are components of ending net equity/net worth. Accordingly, the CRO makes no representations regarding the accuracy of the form-calculated net equity/net worth of the Debtor.

**(8)** MOR Part 7a - Includes bank fees debited from Debtor's bank account and payments per the Order approved by the court on the Debtor's Emergency Motion for Authority to (I) Pay Prepetition Wages, Benefits, and Employee Business Expenses; and (II) Continue the Postpetition Maintenance of Employee Benefit Programs, Policies, and Procedures in the Ordinary Course [ECF Nos. 13 and 103].

**(9)** MOR Part 7, i - See attached the schedule of insurance in effect for the Jointly Administered Debtors.

**Attachments to MOR:**

**A.** Financial Statements

**B.** Statement of Cash Receipts and Disbursements

**C.** Bank Account Schedule, bank statements and bank reconciliations

**D.** Schedule of Insurance in effect as of July 31, 2021 for the Jointly Administered Debtors

**STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS**
**FOR THE PERIOD BEGINNING <u>July 12, 2021</u> AND ENDING <u>July 31,2021</u>**

Name of Debtor: Limetree Bay Refining Operating, LLC          Case Number:  21-32355
Date of Petition:    July 12, 2021

|  | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|
| **1. FUNDS AT BEGINNING OF PERIOD** | $          20,962.36 | $          20,962.36 |
| **2. RECEIPTS:** | | |
| A. Cash Sales | - | - |
| Minus: Cash Refunds | - | - |
| Net Cash Sales | - | - |
| B. Accounts Receivable | - | - |
| C. Other Receipts | 2,643,500.00 | 2,643,500.00 |
| (If you receive rental income, you must attach a rent roll) | | |
| **3. TOTAL RECEIPTS (*Lines 2A+2B+2C*)** | 2,643,500.00 | 2,643,500.00 |
| **4. TOTAL FUNDS AVAILABLE FOR OPERATIONS (*Line 1 + Line 3*)** | 2,664,462.36 | 2,664,462.36 |
| **5. DISBURSEMENTS** | | |
| A.   Advertising | - | - |
| B.   Bank Charges & Fees | 282.05 | 282.05 |
| C.   Contract Labor | - | - |
| D.   Fixed Asset Payments (not incl. in "N") | - | - |
| E.   Insurance | - | - |
| F.   Inventory Payments | - | - |
| G.   Leases & Contracts | - | - |
| H.   Manufacturing Supplies | - | - |
| I.   Office Supplies | - | - |
| J.   Payroll | 1,683,159.62 | 1,683,159.62 |
| K.   Professional Fees (Accounting & Legal) | - | - |
| L.   Rent | - | - |
| M.   Repairs & Maintenance | - | - |
| N.   Secured Creditor Payments | - | - |
| O.   Taxes Paid - Payroll | 586,888.79 | 586,888.79 |
| P.   Taxes Paid - Sales & Use | - | - |
| Q.   Taxes Paid - Other | - | - |
| R.   Telephone | - | - |
| S.   Travel & Entertainment | - | - |
| T.   U.S. Trustee | - | - |
| U.   Utilities | - | - |
| V.   Vehicle Expenses | - | - |
| W.   Other Operating Expenses | 386,592.66 | 386,592.66 |
| **6. TOTAL DISBURSEMENTS (*Sum of 5A thru W*)** | 2,656,923.12 | 2,656,923.12 |
| **7. ENDING BALANCE (*Line 4 Minus Line 6*)** | $          7,539.24 | $          7,539.24 |

## STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS (CONT'D.)

### Detail of Other Receipts and Other Disbursements

**OTHER RECEIPTS:**

Describe Each Item of Other Receipt and List Amount of Receipt.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| Transfers to/from Limetree Bay Refining, LLC | $ 2,643,500.00 | $ 2,643,500.00 |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | $ 2,643,500.00 | $ 2,643,500.00 |

**"Other Receipts" includes Loans from Insiders and other sources (i.e. Officer/Owner, related parties directors, related corporations, etc.).  Please describe below:**

| Loan Amount | Source of Funds | Purpose | Repayment Schedule |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

**OTHER DISBURSEMENTS:**

Describe Each Item of Other Disbursement and List Amount of Disbursement.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| Employee Benefits | $ 383,141.90 | $ 383,141.90 |
| Wage Garnishments | 3,450.76 | 3,450.76 |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | $ 386,592.66 | $ 386,592.66 |

**Limetree Bay Refining Operating, LLC**
**Balance Sheet**
**July 31, 2021**

| | 7/31/2021 |
|---|---|
| 0000110500 LBRO OPERATING ACCOUNT - ORIENTAL - 8202040215 | 786.22 |
| 0000110510 LBRO PAYROLL ACCOUNT - ORIENTAL - 8202040216 | 6,753.02 |
| *CASH & CASH EQUIVALENTS | 7,539.24 |
| | |
| 0000150500 Intercompany A/R | 96,399,591.81 |
| *ACCOUNTS RECEIVABLE - AFFILIATE | 96,399,591.81 |
| **TOTAL CURRENT ASSETS | 96,407,131.05 |
| | |
| **** TOTAL ASSETS | 96,407,131.05 |
| | |
| 0000235500 Intercompany A/P | (110,399,748.85) |
| *AFFILIATE PAYABLE, NET | (110,399,748.85) |
| | |
| 0000230010 ACCRUED PAYROLL | (545,790.92) |
| 0000230011 ACCRUED BONUS | (4,043,803.92) |
| *ACCRUED LIABILITIES | (4,589,594.84) |
| **TOTAL CURRENT LIABILITIES | (114,989,343.69) |
| | |
| *** TOTAL LIABILITIES | (114,989,343.69) |
| | |
| 0000320010 MEMBERS INITIAL INVESTMENT | (16,518,717.47) |
| *MEMBERS' INITIAL EQUITY | (16,518,717.47) |
| **MEMBERS' EQUITY | (16,518,717.47) |
| | |
| 0000380020 RETAINED  EARNINGS | 7,261,729.35 |
| **RETAINED EARNINGS / ACCUMULATED DEFICIT | 7,261,729.35 |
| | |
| **PROFIT/LOSS IN CURRENT YEAR | 27,839,200.76 |
| | |
| *** TOTAL MEMBERS' EQUITY | 18,582,212.64 |
| | |
| **** TOTAL LIABILITIES & MEMBERS' EQUITY | (96,407,131.05) |

**Limetree Bay Services, LLC**
**Income Statement**
**For the month ending July 31, 2021**

|  | July 13-31, 2021<br>Unaudited |
|---|---|
| 0000601010 SALARIES AND WAGES (REGULAR & EXECUTIVE) | 1,927,441.76 |
| 0000601013 CAPITALIZED LABOR TO PROJECTS OFFSET | 0.00 |
| 0000601014 SALARIES AND WAGES-TERMINATIONS/SEVERANCE | 4,000.00 |
| 0000601020 VARIABLE COMPENSATION | 0.00 |
| 0000601025 SALARIES AND WAGES-OVERTIME WAGES | 308,014.82 |
| 0000601052 PAYROLL TAXES ALLOCATED  - FICA | 153,597.22 |
| 0000601053 TAXES-FEDERAL UNEMPLOYMENT | 14.23 |
| 0000601054 TAXES-STATE UNEMPLOYMENT | 2,420.81 |
| **SALARIES AND WAGES** | **2,395,488.84** |
| 0000601051 EMPLOYEE BENEFITS-HOSPITALIZATION/MEDICAL | 124,965.15 |
| 0000601056 EMPLOYEE BENEFITS-RETIREMENT PLAN | 113,667.56 |
| **BENEFITS** | **238,632.71** |
| 0000601057 RELOCATION | 14,446.13 |
| **TRAVEL** | **14,446.13** |
| 0000601064 EDUCATIONAL ASSISTANCE | 0.00 |
| **TRAINING & EDUCATION** | **0.00** |
| 0000601063 OTHER EMPLOYEE EXPENSE | 0.00 |
| **OTHER** | **0.00** |
| **EMPLOYEE EXPENSES** | **2,648,567.68** |
| 0000612020 FINES & PENALTY | 0.00 |
| **TAXES AND FEES** | **0.00** |
| **OTHER O&M** | **2,648,567.68** |
| **OPERATING EXPENSES** | **2,648,567.68** |
| 0000801010 SALARIES AND WAGES (REGULAR & EXECUTIVE) | 497,083.57 |
| 0000801013 CAPITALIZED LABOR | 0.00 |
| 0000801014 SALARIES AND WAGES-TERMINATIONS/SEVERANCE | (4,000.00) |
| 0000801020 VARIABLE COMPENSATION | 0.00 |
| 0000801025 SALARIES AND WAGES-OVERTIME WAGES | (67,971.40) |
| 0000801052 PAYROLL TAXES ALLOCATED  - FICA | 24,620.99 |
| 0000801053 TAXES-FEDERAL UNEMPLOYMENT | 78.25 |
| 0000801054 TAXES-STATE UNEMPLOYMENT | 872.81 |

**Limetree Bay Services, LLC**
**Income Statement**
**For the month ending July 31, 2021**

| | July 13-31, 2021<br>Unaudited |
|---|---|
| **SALARIES AND WAGES** | **450,684.22** |
| | |
| 0000801051 EMPLOYEE BENEFITS-HOSPITALIZATION/MEDICAL | 29,848.83 |
| 0000801056 EMPLOYEE BENEFITS-SAVINGS PLAN | 25,750.88 |
| **BENEFITS** | **55,599.71** |
| | |
| 0000801057 RELOCATION | 629,261.65 |
| **TRAVEL** | **629,261.65** |
| | |
| 0000801064 EDUCATIONAL ASSISTANCE | 1,227.60 |
| **TRAINING & EDUCATION** | **1,227.60** |
| | |
| **EMPLOYEE EXPENSES** | **1,136,773.18** |
| | |
| 0000808043 TELECOMMUNICATIONS EXP-CELLULAR | 91.07 |
| **COMMUNICATION EXPENSES** | **91.07** |
| **COMMUNICATIONS AND IT EXPENSES** | **91.07** |
| | |
| 0000812015 BANK CHARGES | 282.05 |
| **TAXES AND FEES** | **282.05** |
| | |
| **OTHER O&M** | **1,137,146.30** |
| | |
| **GENERAL ADMINISTRATION EXPENSE** | **1,137,146.30** |
| | |
| **\*\*TOTAL EXPENSES** | **3,785,713.98** |
| | |
| **\*\*\*OPERATING INCOME** | **(3,785,713.98)** |
| | |
| **\*\*\*\*NET INCOME (LOSS)** | **(3,785,713.98)** |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Limetree Bay Refining Operating, LLC**

**Schedule of Bank Accounts - As of July 31, 2021**

| Description | Operating Account | Payroll Account | Total - All Debtor Accounts |
|---|---|---|---|
| Account Name | Limetree Bay Refining Operating, LLC | Limetree Bay Refining Operating, LLC | |
| Bank Name | Oriental Bank | Oriental Bank | |
| Account Number - Last Four Digits | 0215 | 0216 | |
| Beginning book balance (as of 07/12/21) | $          878.15 | $         20,084.21 | $          20,962.36 |
| Plus:  Deposits | - | 2,643,500.00 | 2,643,500.00 |
| Subtotal | 878.15 | 2,663,584.21 | 2,664,462.36 |
| | | | |
| Less:  Disbursements | (91.93) | (2,656,831.19) | (2,656,923.12) |
| Transfers | - | - | - |
| Other: | - | - | - |
| **Ending book balance (as of 07/31/21)** | **$          786.22** | **$          6,753.02** | **$          7,539.24** |

**Oriental**

P.O. Box 195115
San Juan, PR 00919-5115

Last statement: June 30, 2021
This statement: July 31, 2021
Total days in statement period: 31

Page 1 of 2
.0215
(0)

Direct inquiries to:
787-620-0000

LIMETREE BAY REFINING OPERATING LLC
1 ESTATE HOPE CHRISTIANSTED
ST CROIX VI 00820-5652

Oriental Bank
254 Munoz Rivera Ave
Hato Rey PR 00918

## Premium Business

| | | | |
|---|---|---|---|
| Account number | 0215 | Beginning balance | $878.15 |
| Low balance | $786.22 | Total additions | .00 |
| Average balance | $845.53 | Total subtractions | 91.93 |
| | | Ending balance | $786.22 |

**DEBITS**

| Date | Description | Subtractions |
|---|---|---|
| 07-21 | ' Maintenance Fee | 91.93 |
| | ANALYSIS ACTIVITY FOR 06/21 | |

**DAILY BALANCES**

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 06-30 | 878.15 | 07-21 | 786.22 | | |

**OVERDRAFT/RETURN ITEM FEES**

| | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

*Thank you for banking with Oriental Bank*

0 -130594

**LIMETREE BAY REFINING OPERATING**
**LBRO Operating Account - 110500**
**            0215**
**July 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 6/30/2021 | $ | 878.15 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Bank Charges | | $ | (91.93) |
| Checks Cleared | | $ | - |
| Intransit Deposit | | $ | - |
| Ending Balance per Bank | 7/31/2021 | $ | 786.22 |
| Opening Balance  per Book | 6/30/2021 | | $878.15 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Bank Charges | | $ | (91.93) |
| Checks Issued | | $ | - |
| Ending Balance per Book | 7/31/2021 | $ | 786.22 |
| Outstanding Checks | | $ | - |
| | | $ | 786.22 |
| | | $ | 0.00 |

Reconciled by          George Southwell

Date:          8/2/2021


Approved by

Date:

**Oriental**

P.O. Box 195115
San Juan, PR 00919-5115

Last statement: June 30, 2021       Page 1 of 3
This statement: July 31, 2021         0216
Total days in statement period: 31    (0)

Direct inquiries to:
787-620-0000

LIMETREE BAY REFINING OPERATING LLC
1 ESTATE HOPE CHRISTIANSTED
ST CROIX VI 00820-5652

Oriental Bank
254 Munoz Rivera Ave
Hato Rey PR 00918

## Premium Business

| | | | |
|---|---|---|---|
| Account number | 0216 | Beginning balance | $498,608.70 |
| Low balance | $6,753.02 | Total additions | 2,643,500.00 |
| Average balance | $45,174.22 | Total subtractions | 3,135,355.68 |
| | | Ending balance | $6,753.02 |

**DEBITS**

| Date | Description | Subtractions |
|---|---|---|
| 07-01 | ' Preauthorized Wd<br>ADP WAGE GARN WAGE GARN 210701<br>725081105829VUR | 1,725.38 |
| 07-01 | ' Preauthorized Wd<br>ASCENSUS TRUST RET PLAN 210701 | 177,810.49 |
| 07-01 | ' Preauthorized Wd<br>ADP Tax ADP Tax 210701<br>15VUR 070226A01 | 298,988.62 |
| 07-14 | ' Wire Transfer-Out<br>WIRE OUT -ADP LLC<br>202107140000334 | 851,772.29 |
| 07-15 | ' Preauthorized Wd<br>ADP WAGE GARN WAGE GARN 210715<br>710062605283VUR | 1,725.38 |
| 07-15 | ' Preauthorized Wd<br>LIMETREE BA 0216 PAYMENT 210715 | 9,964.96 |
| 07-15 | ' Preauthorized Wd<br>ASCENSUS TRUST RET PLAN 210715 | 185,896.58 |
| 07-15 | ' Preauthorized Wd<br>ADP Tax ADP Tax 210715<br>15VUR 071628A01 | 314,214.76 |
| 07-21 | ' Maintenance Fee<br>ANALYSIS ACTIVITY FOR 06/21 | 190.12 |
| 07-28 | ' Wire Transfer-Out<br>WIRE OUT -ADP LLC<br>202107280000567 | 831,387.33 |

LIMETREE BAY REFINING OPERATING LLC

Page 2 of 3

July 31, 2021

0216

| Date | Description | Subtractions |
|------|-------------|-------------:|
| 07-29 | ' Preauthorized Wd | 1,725.38 |
| | ADP WAGE GARN WAGE GARN 210729 | |
| | 475045925587VUR | |
| 07-29 | ' Preauthorized Wd | 9,924.96 |
| | LIMETREE BA 0216 PAYMENT 210729 | |
| 07-29 | ' Preauthorized Wd | 177,355.40 |
| | ASCENSUS TRUST RET PLAN 210729 | |
| 07-29 | ' Preauthorized Wd | 272,674.03 |
| | ADP Tax ADP Tax 210729 | |
| | 15VUR 073030A01 | |

**CREDITS**

| Date | Description | | Additions |
|------|-------------|---|----------:|
| 07-14 | ' Cash Mgmt Trsfr Cr | | 1,353,500.00 |
| | REF 1950748L FUNDS TRANSFER FRMDEP | 0267 | |
| | FROM PER SHOHEB EMAIL JULY 14 2021 | | |
| 07-28 | ' Cash Mgmt Trsfr Cr | | 1,290,000.00 |
| | REF 2090804L FUNDS TRANSFER FRMDEP | 0267 | |
| | FROM PER SHOHEB EMAIL JULY 28 2021 | | |

**DAILY BALANCES**

| Date | Amount | Date | Amount | Date | Amount |
|------|-------:|------|-------:|------|-------:|
| 06-30 | 498,608.70 | 07-15 | 10,010.24 | 07-29 | 6,753.02 |
| 07-01 | 20,084.21 | 07-21 | 9,820.12 | | |
| 07-14 | 521,811.92 | 07-28 | 468,432.79 | | |

**OVERDRAFT/RETURN ITEM FEES**

| | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

*Thank you for banking with Oriental Bank*

**LIMETREE BAY REFINING OPERATING**
**LBRO Payroll Account - 110510**
      **0216**
**July 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 6/30/2021 | $ | 498,608.70 |
| Deposits | | $ | 2,643,500.00 |
| ACH / Debits | | $ | (1,153,017.32) |
| Wires | | $ | (1,683,159.62) |
| Bank Charges | | $ | (190.12) |
| Checks Cleared | | $ | - |
| Intransit Payment | | $ | (298,988.62) |
| Ending Balance per Bank | 7/31/2021 | $ | 6,753.02 |
| Opening Balance  per Book | 6/30/2021 | $ | 199,620.08 |
| Deposits | | $ | 2,643,500.00 |
| ACH / Debits | | $ | (1,153,017.32) |
| Wires | | $ | (1,683,159.62) |
| Bank Charges | | $ | (190.12) |
| Checks Issued | | $ | - |
| Ending Balance per Book | 7/31/2021 | $ | 6,753.02 |
| Intransit Payroll Related Payments | | $ | - |
| Intransit Payroll Payment | | $ | - |
| Outstanding Checks | | $ | - |
| Ending Balance per Bank | | $ | 6,753.02 |
| | | $ | 0.00 |

| | | |
|---|---|---|
| Reconciled by | George Southwell | |
| Date: | 8/11/2021 | |
| Approved by | | |
| Date: | | |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of July 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | AGCS (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AGCS (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, Allianz, Axis (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, Aspen (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, HDI (Amended Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, Liberty (Endorsement | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, TRV (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, TRV (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, TRV (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG/National Union Fire Insurance Co | Combined Property | Primary $250M | 026-1001312 | 2021.09.01 |
| Limetree Bay Refining, LLC | Allianz (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz Global Risk US Insurance Company | Combined Property | Primary $1.25BN | USN00023920 | 2021.12.01 |
| Limetree Bay Refining, LLC | Aspen (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | Atrium Underwriters Ltd | Combined Property | $150M XS $200M | B0509ENGAO2000588 | 2021.12.01 |
| Limetree Bay Refining, LLC | Axis (Endorsement) | Builder's Risk | $50M | EAU646295/01/2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 92SRD102973 | |
| Limetree Bay Refining, LLC | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 42-PRP-312023-01 | 2021.09.01 |
| Limetree Bay Refining, LLC | CIN 318/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

## United States Bankruptcy Court
## Southern District of Texas (Houston)

### Schedule of Insurance Policies - As of July 31, 2021

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---------|---------|------|-----------------|---------------|-----------------|
| Limetree Bay Refining, LLC | Convex Insurance UK Limited | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Elseco limited | Combined Property | $300M XS $200M | B0509ENGAO2000563 | 2021.12.01 |
| Limetree Bay Services, LLC | Liberty | Worker's Comp | | WCC-641-444917-020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Fidelis/ Fidelis Underwriting Ltd. | Combined Property | $250M XS $250M | B0509ENGAO2000613 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hannover Re/HDI Global Specialty SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Helvetia/Helvetia Swiss Insurance Co in Liechtenstein Ltd | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Helvetia/Helvetia Swiss Insurance Co in Liechtenstein Ltd | Combined Property | $300M XS $200M | B0509ENGAO2000586 | 2021.12.01 |
| Limetree Bay Refining, LLC | HSIC/Houston Specialty Insurance Company | Combined Property | $150M XS 50M | PRO440373 | 2021.12.01 |
| Limetree Bay Refining, LLC | IGI/Insurance General Insurance Co Ltd. | Combined Property | $300M XS $200M | B0509ENGAO2000563 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lancashire/Lancashire Insurance Company UK, Ltd. | Combined Property | $300M XS $200M | B0509ENGAO2000587 | 2021.12.01 |
| Limetree Bay Refining, LLC | LSM/Liberty Specialty Markets Agency Limited | Combined Property | $100M XS $100M | LSMAEN143232A | 2021.12.01 |
| Limetree Bay Refining, LLC | Munich Re/Great Lakes Insurance SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | NOA/Lloyds of London | Combined Property | $300M XS $200M | B0509ENGAO2000586 | 2021.12.01 |
| Limetree Bay Refining, LLC | Partner Re/PartnerRe Ireland Insurance dac | Combined Property | $150M XS $350M | B0509ENGAO2000589 | 2021.12.01 |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

## United States Bankruptcy Court
## Southern District of Texas (Houston)

### Schedule of Insurance Policies - As of July 31, 2021

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | PICC/Guardian General Insurance | Combined Property | $100M XS $100M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | QBE/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Rokstone/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC | SCOR (3)/General Security Indemnity Company of Arizona | Combined Property | Primary $1.25BN | FA007943720201 | |
| Limetree Bay Refining, LLC | Sompo/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Swiss Re/Westport Insurance Company | Combined Property | Primary $500M | OMP 2000425-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Validus Specialty/Lloyds of London | Combined Property | Primary $250M | AJH292893A20 | |
| Limetree Bay Refining, LLC | Westchester Surplus Lines Ins Co/Starr Technical Risks Agency, Inc | Combined Property | Primary $500M | EPRN18215263 | 2021.12.01 |
| Limetree Bay Refining, LLC | WRB/Guardian General Insurance | Combined Property | $50M XS $50M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Zurich/Zurich American Insurance Company | Combined Property | Primary $100M | OGR 1296457-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arcadian/Ark/Helix Bermuda | Builder's Risk | $25M xs $100M | NAMBM2100005 | 2022.06.01 |
| Limetree Bay Refining, LLC | Allianz | Refinery Excess Liability | $15M xs $53M | USL00880520 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz | Environmental Liability | $15M xs $85M | USL00873320 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty | Refinery Primary Liability | | AS6-641-444917-010 | 2021.12.01 |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of July 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | Travelers Syndicate | Refinery Primary Liability | | ENCAS2000012 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer/Apollo | Refinery Excess Liability | $15M | ENCAS2000011 | 2021.12.01 |
| Limetree Bay Refining, LLC | Westchester | Refinery Excess Liability | $3M xs $25M | G71809808001 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Refinery Excess Liability | $25M xs $28M | 4380100 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer | Refinery Excess Liability | $11M po $22M xs $68M | ENCAS2000020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lex-London | Refinery Excess Liability | $11M po $22M xs $68M | 62785689 | 2021.12.01 |
| Limetree Bay Refining, LLC | OSL | Refinery Excess Liability | $10M xs $90M | EXS-154724-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | AXA XL Bermuda | Refinery Excess Liability | $25M xs $125M | XLUMB-229978 | 2021.12.01 |
| Limetree Bay Refining, LLC | OCIL Bermuda | Refinery Excess Liability | $25M po $40M xs $150M | U920968-0620 | 2021.12.01 |
| Limetree Bay Refining, LLC | Sompo Bermuda | Refinery Excess Liability | $15M po $40M xs $150M | EXC30001524800 | 2021.12.01 |
| Limetree Bay Refining, LLC | Argo Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | ARGO-CAS-OR-001484 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arch Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | URP0065257-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel Bermuda | Refinery Excess Liability | $12.5M po $50M xs $190M | 1454233-11636-UMB-2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hamilton Bermuda | Refinery Excess Liability | $7.5M po $50M xs $190M | CX20-9216 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chubb Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LBR-2144/XS004 | 2021.12.01 |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of July 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | Liberty Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LSMAEC119907A | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $1M | ENVP0000296-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $9M xs $1M | ENVX0000256-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Environmental Liability | $25M xs $10M | 262704 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ascot | Environmental Liability | $25M xs $35M | ENXP2110000428-01 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel | Environmental Liability | $25M xs $60M | MKLV4EFX102259 | 2021.12.01 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $15M | 8261-8347 | 2022.04.20 |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000623319211 | |
| Limetree Bay Refining, LLC | Wesco Insurance Company | Executive Risk | $1M | EUW1909831 00 | |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $10M | 1000622392201 | 2027.04.27 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | | 8247-1536 | |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

# UNITED STATES BANKRUPTCY COURT

SOUTHERN  DISTRICT OF  TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| In Re. LIMETREE BAY REFINING MARKETING LLC | § | Case No.  21-32356 |
| | § | |
| | § | Lead Case No.  21-32351 |
| Debtor(s) | § | |
| | | ☒ Jointly Administered |

## Monthly Operating Report

Chapter 11

Reporting Period Ended: 07/31/2021          Petition Date: 07/12/2021

Months Pending: 1          Industry Classification: 3 2 4 1

Reporting Method:          Accrual Basis ◉          Cash Basis ○

Debtor's Full-Time Employees (current):          0

Debtor's Full-Time Employees (as of date of order for relief):          0

**Supporting  Documentation** (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

☒  Statement of cash receipts and disbursements
☒  Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
☒  Statement of operations (profit or loss statement)
☐  Accounts receivable aging
☐  Postpetition liabilities aging
☐  Statement of capital assets
☐  Schedule of payments to professionals
☐  Schedule of payments to insiders
☒  All bank statements and bank reconciliations for the reporting period
☐  Description of the assets sold or transferred and the terms of the sale or transfer

/s/ Elizabeth A. Green
_____
Signature of Responsible Party

09/21/2021
_____
Date

Elizabeth A. Green
_____
Printed Name of Responsible Party

200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, FL 32801
_____
Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

Debtor's Name  LIMETREE BAY REFINING MARKETING LLC          Case No.  21-32356

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a. Cash balance beginning of month | $1,169,292 | |
| b. Total receipts (net of transfers between accounts) | $-1,049,021 | $-1,049,021 |
| c. Total disbursements (net of transfers between accounts) | $119,210 | $119,210 |
| d. Cash balance end of month (a+b-c) | $1,061 | |
| e. Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f. Total disbursements for quarterly fee calculation (c+e) | $119,210 | $119,210 |

| Part 2: Asset and Liability Status (Not generally applicable to Individual Debtors. See Instructions.) | Current Month | |
|---|---|---|
| a. Accounts receivable (total net of allowance) | $199,222,622 | |
| b. Accounts receivable over 90 days outstanding (net of allowance) | $20,872,918 | |
| c. Inventory    (Book ● Market ○ Other ○  (attach explanation)) | $207,903,573 | |
| d. Total current assets | $407,801,874 | |
| e. Total assets | $451,979,934 | |
| f. Postpetition payables (excluding taxes) | $2,911,019 | |
| g. Postpetition payables past due (excluding taxes) | $0 | |
| h. Postpetition taxes payable | $0 | |
| i. Postpetition taxes past due | $0 | |
| j. Total postpetition debt (f+h) | $2,911,019 | |
| k. Prepetition secured debt | $1,056,353,789 | |
| l. Prepetition priority debt | $0 | |
| m. Prepetition unsecured debt | $198,765,709 | |
| n. Total liabilities (debt) (j+k+l+m) | $1,258,030,518 | |
| o. Ending equity/net worth (e-n) | $-806,050,584 | |

| Part 3: Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a. Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b. Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c. Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4: Income Statement (Statement of Operations) (Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a. Gross income/sales (net of returns and allowances) | $0 | |
| b. Cost of goods sold (inclusive of depreciation, if applicable) | $-218,410 | |
| c. Gross profit (a-b) | $218,410 | |
| d. Selling expenses | $1,409,553 | |
| e. General and administrative expenses | $100,426 | |
| f. Other expenses | $-9,069,055 | |
| g. Depreciation and/or amortization (not included in 4b) | $0 | |
| h. Interest | $157,249 | |
| i. Taxes (local, state, and federal) | $0 | |
| j. Reorganization items | $0 | |
| k. Profit (loss) | $7,620,237 | $7,620,237 |

UST Form 11-MOR (06/07/2021)                    2

Debtor's Name  LIMETREE BAY REFINING MARKETING LLC                      Case No.  21-32356

## Part 5:  Professional Fees and Expenses

| | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|
| a. | Debtor's professional fees & expenses (bankruptcy)  *Aggregate Total* | | | | |
| | *Itemized Breakdown by Firm* | | | | |
| | | Firm Name | Role | | | |
| | i | | | | | |
| | ii | | | | | |

| | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy)  *Aggregate Total* | | | | |
| | *Itemized Breakdown by Firm* | | | | |
| | | Firm Name | Role | | | |
| | i | | | | | |
| | ii | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | |

## Part 6:  Postpetition Taxes

| | | Current Month | Cumulative |
|---|---|---|---|
| a. | Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. | Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. | Postpetition employer payroll taxes accrued | $0 | $0 |
| d. | Postpetition employer payroll taxes paid | $0 | $0 |
| e. | Postpetition property taxes paid | $0 | $0 |
| f. | Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. | Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

## Part 7: Questionnaire - During this reporting period:

a.  Were any payments made on prepetition debt?  (if yes, see Instructions)   Yes ● No ○

b.  Were any payments made outside the ordinary course of business without court approval?  (if yes, see Instructions)   Yes ○ No ●

c.  Were any payments made to or on behalf of insiders?   Yes ○ No ●

d.  Are you current on postpetition tax return filings?   Yes ● No ○

e.  Are you current on postpetition estimated tax payments?   Yes ● No ○

f.  Were all trust fund taxes remitted on a current basis?   Yes ● No ○

g.  Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions)   Yes ● No ○

h.  Were all payments made to or on behalf of professionals approved by the court?   Yes ○ No ○ N/A ●

i.  Do you have:   Worker's compensation insurance?   Yes ● No ○

   If yes, are your premiums current?   Yes ● No ○ N/A ○  (if no, see Instructions)

   Casualty/property insurance?   Yes ● No ○

   If yes, are your premiums current?   Yes ● No ○ N/A ○  (if no, see Instructions)

   General liability insurance?   Yes ● No ○

   If yes, are your premiums current?   Yes ● No ○ N/A ○  (if no, see Instructions)

j.  Has a plan of reorganization been filed with the court?   Yes ○ No ●

| Debtor's Name | LIMETREE BAY REFINING MARKETING LLC | Case No. | 21-32356 |

k.  Has a disclosure statement been filed with the court?            Yes ○   No ●
l.  Are you current with quarterly U.S. Trustee fees as             Yes ●   No ○
    set forth under 28 U.S.C. § 1930?

## Part 8: Individual Chapter 11 Debtors (Only)

| | | |
|---|---|---|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |

l.  Are you required to pay any Domestic Support Obligations as defined by 11     Yes ○   No ●
    U.S.C § 101(14A)?
m.  If yes, have you made all Domestic Support Obligation payments?     Yes ○   No ○   N/A ●

### Privacy Act Statement

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107. The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6). The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith. This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law. Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records." *See* 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006). A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm. Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee. 11 U.S.C. § 1112(b)(4)(F).

**I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.**

| | |
|---|---|
| Mark Shapiro | Mark Shapiro, Chief Restructuring Officer |
| Signature of Responsible Party | Printed Name of Responsible Party |
| Chief Restructuring Officer | 09/21/2021 |
| Title | Date |

| | |
|---|---|
| **CASE NAME:** | **Limetree Bay Refining Marketing, LLC** |
| **CASE NUMBER:** | **21-32356 (Jointly Administered under Lead Case No.: 21-32351)** |

### Notes to the Monthly Operating Report

**General:**

On July 12, 2021 (the "Petition Date"), Limetree Bay Services, LLC ("Limetree") filed a voluntary petition with the United States Bankruptcy Court under Chapter 11 of the Bankruptcy Code [Case No.: 21-32351], along with five (5) affiliated entities (Affiliated Entities"). The debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067);  and Limetree Bay Refining Marketing, LLC (9222); (collectively, the "Debtors" or "Jointly Administered Debtors"). The bankruptcy filings of Limetree and the Affiliated Entities are jointly administered under Case No. 21-32351.

On or about June 17, 2021, the Jointly Administered Debtors retained B. Riley as chief restructuring officer ("CRO"). Mark Shapiro, as principal representative of B. Riley in its capacity, serves as CRO to the Jointly Administered Debtors.

Debtor-in-Possession Financial Statements - The accompanying schedules herein are unaudited, preliminary, and may not comply with generally accepted accounting principles in the United States of America ("U.S. GAAP") in all material respects.

The Monthly Operating Report ("MOR") is limited in scope, covers a limited time period, and has been prepared solely for the purpose of complying with the monthly reporting requirements of the Bankruptcy Court and the United States Trustee.  The information presented herein has not been subjected to all procedures that would typically be applied to financial information presented in accordance with U.S. GAAP. Upon the application of such procedures, the financial information could be subject to changes, and these changes could be material. The information furnished in this MOR includes normal recurring adjustments, but does not include all of the adjustments that would typically be made for interim financial statements in accordance with U.S. GAAP.

Reservation of Rights: Given the complexity of the Debtors' business, inadvertent errors, omissions or over inclusions may have occurred. Accordingly, the Debtors hereby reserve all of their rights to dispute the validity, status, enforceability, or executory nature of any claim amount, representation or other statement in this MOR and reserve the right to amend or supplement this MOR, if necessary, but shall be under no obligation to do so.

**July 12-31, 2021 Monthly Operating Report:**

**(1)**  The Reporting Period for this MOR is July 12-31, 2021, and the financial statements referenced herein cover the same time period.

**(2)**  The Financial Statements are reported on an Accrual Basis. Cash Receipts & Disbursements are reported on a Cash Basis.

**(3)**  The CRO, Mark Shapiro, has signed this MOR.  Mr. Shapiro is an authorized signatory for the Debtor. In reviewing and signing the MOR, Mr. Shapiro has relied upon the efforts, statements and representations of various personnel employed by the Debtor and the Debtor's advisors. Mr. Shapiro has not (and could not have) personally verified the accuracy of each statement and representation contained in the MOR, including statements and representations concerning amounts owed to creditors, classification of such amounts, and other attached information.

**(4)**  MOR Part 2, d - Total Current Assets includes Cash, Accounts Receivable, Inventory and Prepaid Expenses.

**(5)**  MOR Part 2, e - Total Assets includes Current Assets, Fixed Assets, and Debt Issuance Costs.

**(6)**  MOR Part 2, f - Post-Petition Payables (excluding taxes) includes Trade Payables.

**(7)**  MOR Part 2, k-m - Amounts are per the Debtor's bankruptcy schedules and are subject to adjustment once the claims process has been completed by the CRO, which includes, but is not limited to, examining, determining the validity of and objecting to any disputed, contingent, unliquidated and filed claims.

**(8)**  MOR Part 2, k-o - As of the time of this filing, the CRO has not determined with accuracy the amount of the secured and unsecured debt, both of which are components of ending net equity/net worth.  Accordingly, the CRO makes no representations regarding the accuracy of the form-calculated net equity/net worth of the Debtor.

**(9)**  MOR Part 7a - Includes bank fees debited from Debtor's bank account.

**(10)**  MOR Part 7, i - See attached the schedule of insurance in effect for the Jointly Administered Debtors.

**Attachments to MOR:**

**A.**  Financial Statements

**B.**  Statement of Cash Receipts and Disbursements

**C.**  Bank Account Schedule, bank statements and bank reconciliations

**D.**  Schedule of Insurance in effect as of July 31, 2021 for the Jointly Administered Debtors

**STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS**
**FOR THE PERIOD BEGINNING <u>July 12, 2021</u> AND ENDING <u>July 31,2021</u>**

Name of Debtor: Limetree Bay Refining Marketing, LLC          Case Number:  21-32356
Date of Petition:    July 12, 2021

| | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|
| **1. FUNDS AT BEGINNING OF PERIOD** | $          1,169,291.77 | $          1,169,291.77 |
| | | |
| **2. RECEIPTS:** | | |
| A. Cash Sales | - | - |
| Minus: Cash Refunds | - | - |
| Net Cash Sales | - | - |
| B. Accounts Receivable | 2,850,479.00 | 2,850,479.00 |
| C. Other Receipts | (3,899,500.00) | (3,899,500.00) |
| (If you receive rental income, you must attach a rent roll) | | |
| **3. TOTAL RECEIPTS (*Lines 2A+2B+2C*)** | (1,049,021.00) | (1,049,021.00) |
| **4. TOTAL FUNDS AVAILABLE FOR OPERATIONS (*Line 1 + Line 3*)** | 120,270.77 | 120,270.77 |
| | | |
| **5. DISBURSEMENTS** | | |
| A.   Advertising | - | - |
| B.   Bank Charges & Fees | 305.03 | 305.03 |
| C.   Contract Labor | - | - |
| D.   Fixed Asset Payments (not incl. in "N") | - | - |
| E.   Insurance | - | - |
| F.   Inventory Payments | - | - |
| G.   Leases & Contracts | - | - |
| H.   Manufacturing Supplies | - | - |
| I.   Office Supplies | - | - |
| J.   Payroll | - | - |
| K.   Professional Fees (Accounting & Legal) | - | - |
| L.   Rent | - | - |
| M.   Repairs & Maintenance | - | - |
| N.   Secured Creditor Payments | 118,904.71 | 118,904.71 |
| O.   Taxes Paid - Payroll | - | - |
| P.   Taxes Paid - Sales & Use | - | - |
| Q.   Taxes Paid - Other | - | - |
| R.   Telephone | - | - |
| S.   Travel & Entertainment | - | - |
| T.   U.S. Trustee | - | - |
| U.   Utilities | - | - |
| V.   Vehicle Expenses | - | - |
| W.   Other Operating Expenses | - | - |
| **6. TOTAL DISBURSEMENTS (*Sum of 5A thru W*)** | 119,209.74 | 119,209.74 |
| **7. ENDING BALANCE (*Line 4 Minus Line 6*)** | $          1,061.03 | $          1,061.03 |

**STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS (CONT'D.)**

**Detail of Other Receipts and Other Disbursements**

**OTHER RECEIPTS:**

Describe Each Item of Other Receipt and List Amount of Receipt.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| Transfer to/from Limetree Bay Refining, LLC | $ (3,899,500.00) | $ (3,899,500.00) |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | $ (3,899,500.00) | $ (3,899,500.00) |

**"Other Receipts" includes Loans from Insiders and other sources (i.e. Officer/Owner, related parties directors, related corporations, etc.). Please describe below:**

| Loan Amount | Source of Funds | Purpose | Repayment Schedule |
|---|---|---|---|
| | | | |
| | | | |

**OTHER DISBURSEMENTS:**

Describe Each Item of Other Disbursement and List Amount of Disbursement.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | $ - | $ - |

**Limetree Bay Refining Marketing, LLC**
**Balance Sheet**
**July 31, 2021**

| | 7/31/2021 |
|---|---|
| 0000110250 REVENUE ACCOUNT - DEUTSCHE BANK - SE1972.1 | 958.71 |
| 0000110260 O & M ACCOUNT - DEUTSCHE BANK - SE1972.2 | 1.49 |
| 0000110800 LBRM OPERATING ACCOUNT - ORIENTAL - 92040986 | 100.83 |
| **\*CASH & CASH EQUIVALENTS** | **1,061.03** |
| | |
| 0000120001 A/R TRADE RECEIVABLE RECONCILIATION | 165,733,843.88 |
| 0000120205 Accounts Receivable - BP | 1,849,172.63 |
| **ACCOUNTS RECEIVABLE, TRADE** | **167,583,016.51** |
| **\*ACCOUNTS RECEIVABLE, NET** | **167,583,016.51** |
| | |
| 0000150500 Intercompany A/R | 31,639,605.41 |
| **\*ACCOUNTS RECEIVABLE - AFFILIATE** | **31,639,605.41** |
| | |
| 0000190105 Initial and Ramp-up Margin | 48,582,646.70 |
| 0000190106 J Aron Inventory Financing Netting | (48,582,646.70) |
| **\*RECEIVABLE UNDER INVEN FINANCING ARRANGEMENT** | **0.00** |
| | |
| 0000130320 Inventory - Crude - Product Costs | 148,815,906.12 |
| 0000130330 Inventory - Distillate - Product Costs | 16,991,353.54 |
| 0000130340 Inventory - Fuel Oil - Product Costs | 5,663,869.93 |
| 0000130360 Inventory - Heavy Naphtha - Product Costs | 25,502,091.67 |
| 0000130370 Inventory - Intermediates - Product Costs | 7,434,330.83 |
| 0000130380 Inventory - Light Naphtha - Product Costs | 230,998.45 |
| 0000130390 Inventory - LPG - Product Costs | 1,229,057.41 |
| 0000130405 Inventory - Slop - Product Costs | (0.64) |
| 0000130415 Inventory - VGO - Product Costs | 1,355,878.18 |
| 0000130440 Inventory - ULSD | 680,087.67 |
| **\*INVENTORY** | **207,903,573.16** |
| | |
| 0000140023 PPD INSURANCE - STOCK THROUGHPUT PROPERTY | 566,562.49 |
| **PREPAID INSURANCE** | **566,562.49** |
| | |
| 0000140110 PPD SUNDRY | 108,055.44 |
| **PREPAID OTHER** | **108,055.44** |
| **\*PREPAID EXPENSES AND OTHER** | **674,617.93** |
| | |
| **\*\*TOTAL CURRENT ASSETS** | **407,801,874.04** |
| | |
| | |
| 0000160250 FIXED ASSETS - NON RECONCILIATION | 36,834,513.36 |
| **OTHER** | **36,834,513.36** |
| | |
| **PP&E - GROSS** | **36,834,513.36** |
| **PROPERTY, PLANT & EQUIPMENT, NET** | **36,834,513.36** |
| **\*TOTAL PROPERTY, PLANT AND EQUIPMENT, NET** | **36,834,513.36** |
| | |
| 0000190100 Debt Issuance Costs - IM | 7,343,546.29 |
| **OTHER ASSETS** | **7,343,546.29** |
| | |
| **\*OTHER ASSETS** | **7,343,546.29** |
| | |
| **\*\*TOTAL NON-CURRENT ASSETS** | **44,178,059.65** |
| | |
| **\*\*\*\* TOTAL ASSETS** | **451,979,933.69** |

**Limetree Bay Refining Marketing, LLC**
**Balance Sheet**
**July 31, 2021**

| | 7/31/2021 |
|---|---|
| 0000200010 A/P TRADE RECONCILIATION | (38,503,994.03) |
| 0000200099 AP - OTHER | 10,862,738.36 |
| 0000200200 Accounts Payable - Aron | (912,708.91) |
| 0000200205 Accounts Payable - BP | (1,838,548.54) |
| **\*ACCOUNTS PAYABLE TRADE** | **(30,392,513.12)** |
| | |
| 0000235500 Intercompany A/P | (137,810,690.02) |
| **\*AFFILIATE PAYABLE, NET** | **(137,810,690.02)** |
| | |
| 0000231510 ACCRUED INTEREST-DEBT | (301,388.89) |
| **\*ACCRUED INTEREST** | **(301,388.89)** |
| | |
| 0000200023 GR/IR PRODUCT (MANUAL) | 725,747.50 |
| 0000200040 VOUCHER ACCRUALS | (44,470,786.30) |
| 0000235070 UNEARNED REVENUE | 0.00 |
| 0000235300 Interest Payable - Base Catalyst Advance | 0.00 |
| 0000235305 Interest Payable - Precious Catalyst Advance | 0.03 |
| **\*ACCRUED LIABILITIES** | **(43,745,038.77)** |
| | |
| 0000235230 Degradation Value Payable - Base Catalyst Advance | (15,256,127.32) |
| 0000235247 DEBT ISSUANCE COSTS - BASE CATALYSTS - CURRENT | 676,738.49 |
| **BASE CATALYST ADVANCE-CURRENT** | **(14,579,388.83)** |
| | |
| 0000235225 Degradation Value Payable - Precious Catalyst Adv | (9,712,627.66) |
| 0000235246 DEBT ISSUANCE COSTS - PRECIOUS CATALYSTS - CURRENT | 676,738.48 |
| **PRECIOUS CATALYST ADVANCE-CURRENT** | **(9,035,889.18)** |
| | |
| **ACCRUED OTHER INSURANCE PREMIUMS** | **0.00** |
| 0000235030 ACCRUED OTHER INSURANCE | (390,916.98) |
| | |
| **OTHER LONG TERM DEBT-CURRENT PORTION** | **(24,006,194.99)** |
| | |
| **\*CURRENT PORTION OF LONG-TERM DEBT** | **(24,006,194.99)** |
| | |
| 0000235400 Aron Obligation | (221,952,054.06) |
| 0000235406 J Aron Inventory Financing Netting | 48,582,646.70 |
| **\*OBLIGATION UNDER INVEN FINANCING ARRANGEMENT** | **(173,369,407.36)** |
| **\*\*TOTAL CURRENT LIABILITIES** | **(409,625,233.15)** |
| | |
| 0000260080 SENIOR SECURED CREDIT FACILITIES  - 2018 | (50,000,000.00) |
| **SENIOR SECURED CREDIT FACILITIES-2018** | **(50,000,000.00)** |
| | |
| **SENIOR SECURED CREDIT FACILITIES** | **(50,000,000.00)** |
| **OTHER LONG TERM DEBT** | **(50,000,000.00)** |
| | |
| **\*LONG-TERM DEBT, NET CRRNT PRTN & ISSNCE CST** | **(50,000,000.00)** |
| | |
| **\*\*TOTAL NON-CURRENT LIABILITIES** | **(50,000,000.00)** |
| | |
| **\*\*\* TOTAL LIABILITIES** | **(459,625,233.15)** |
| | |
| 0000320100 Equity - LBR | (754,975.47) |
| **\*MEMBERS' ADDITIONAL INVESTMENT** | **(754,975.47)** |

**Limetree Bay Refining Marketing, LLC**
**Balance Sheet**
**July 31, 2021**

| | 7/31/2021 |
|---|---|
| **\*\*MEMBERS' EQUITY** | **(754,975.47)** |
| | |
| 0000380020 RETAINED  EARNINGS | 50,157,292.40 |
| **\*\*RETAINED EARNINGS / ACCUMULATED DEFICIT** | **50,157,292.40** |
| | |
| **\*\*PROFIT/LOSS IN CURRENT YEAR** | **(41,757,017.47)** |
| | |
| **\*\*\* TOTAL MEMBERS' EQUITY** | **7,645,299.46** |
| | |
| **\*\*\*\* TOTAL LIABILITIES & MEMBERS' EQUITY** | **(451,979,933.69)** |

**Limetree Bay Refining Marketing, LLC**
**Income Statement**
**For the month ending July 31, 2021**

| | July 13-31, 2021<br>Unaudited |
|---|---|
| 0000400010 SALES THIRD PARTY-PETROLEUM PRODUCTS | 0.00 |
| **\*REFINERY REVENUES** | **0.00** |
| **\*\*TOTAL REVENUES** | **0.00** |
| | |
| 0000520100 INVENTORY MOVE PRICE DIFFERENCE | 0.00 |
| 0000520130 OTHER COST OF SALES | (218,410.41) |
| 0000520160 VESSEL DEMURRAGE | 0.00 |
| **\*\*COST OF GOODS SOLD** | **(218,410.41)** |
| | |
| 0000607020 TRAVEL AND LODGING | 0.00 |
| **MEALS & ENTERTAINMENT** | **0.00** |
| | |
| 0000601078 SAFETY EXPENSE | (35,032.50) |
| **OTHER** | **(35,032.50)** |
| | |
| **EMPLOYEE EXPENSES** | **(35,032.50)** |
| | |
| 0000603011 CONSULTING FEES - NON-OPERATING | 123,513.65 |
| **CONSULTING FEES** | **123,513.65** |
| | |
| 0000603012 ENGINEERING FEES | 177,365.90 |
| **ENGINEERING FEES** | **177,365.90** |
| | |
| 0000603030 INSPECTION FEES-QUANTITY | 0.00 |
| 0000603031 INSPECTION FEES-QUALITY | 0.00 |
| **INSPECTION FEES** | **0.00** |
| | |
| **PROFESSIONAL FEES** | **300,879.55** |
| | |
| 0000608015 POWER PLANT FUEL - EXTERNAL | 804,368.08 |
| **FUEL EXPENSE** | **804,368.08** |
| | |
| 0000602017 SPILL CLEAN UP | 0.00 |
| **ENVIRONMENTAL** | **0.00** |
| | |
| 0000603020 PINNACLE - REPAIRS & MAINTENANCE | 7,972.55 |
| 0000606030 REPAIR & MAINTENANCE - GENERAL | 0.00 |
| 0000606034 R&M - Fixed Equipment Work | 0.00 |
| 0000606035 R&M – Instrument, Electrical and Analyzer Work | 110,801.97 |
| 0000606036 R&M – Rotating Equipment | 23,780.47 |
| 0000606037 R&M – Scaffold, Asbestos, Insulation and Painting | 0.00 |
| 0000606039 R&M – Maintenance Support Services, Other | 86,095.96 |
| **REPAIRS AND MAINTENANCE** | **228,650.95** |
| | |
| 0000608043 TELECOMMUNICATIONS EXP-CELLULAR | 0.00 |
| **COMMUNICATION EXPENSES** | **0.00** |
| | |
| 0000604011 HARDWARE - DESKTOP PURCHASES | 0.00 |
| 0000604037 SOFTWARE - NETWORK MAINTENANCE | (68,730.00) |
| **IT EXPENSES** | **(68,730.00)** |
| | |
| **COMMUNICATIONS AND IT EXPENSES** | **(68,730.00)** |
| | |
| 0000602041 PINNACLE - NON REPAIRS & MAINTENANCE | 0.00 |

**Limetree Bay Refining Marketing, LLC**
**Income Statement**
**For the month ending July 31, 2021**

| | July 13-31, 2021 Unaudited |
|---|---|
| **CONTRACTOR OVERHEAD** | **0.00** |
| | |
| 0000602060 WASTE DISPOSAL - NON-ENVIRONMENTAL | 0.00 |
| 0000602061 WASTE DISPOSAL - RECYCLING | 99,958.00 |
| 0000602065 OUTSIDE LABOR/SERVICES - HOURLY | (30,126.06) |
| 0000602080 TEMPORARY OUTSIDE LABOR / SERVICES | 7,664.88 |
| 0000602090 CONTRACT SERVICES - LUMP SUM | 5,679.00 |
| 0000602091 WASTE WATER TREATMENT PLANT - OUTSIDE CONTRACT( | 221,885.98 |
| **OUTSIDE SERVICES** | **305,061.80** |
| | |
| 0000608030 UTILITY EXPENSE - WATER | 160,161.53 |
| **UTILITIES** | **160,161.53** |
| | |
| 0000613030 RENTS OFFICE & REAL ESTATE | 3,058.75 |
| 0000613035 RENTALS-OTHER | 71,131.13 |
| **RENTAL EXPENSES** | **74,189.88** |
| | |
| 0000612025 LICENSES AND PERMITS-OTHER | 0.00 |
| 0000612030 MEMBERSHIPS/DUES | (2,500.00) |
| 0000612031 BOOKS/MANUALS/SUBSCRIPTIONS | 83.04 |
| **LICENSES, MEMBERSHIPS AND SUBSCRIPTIONS** | **(2,416.96)** |
| | |
| 0000605010 OFFICE SUPPLY | 0.00 |
| 0000605011 POSTAGE | 0.00 |
| 0000605020 OPERATING SUPPLY | 0.00 |
| 0000605021 INVENTORY VARIANCES | 0.00 |
| 0000606010 MAINTENANCE SUPPLIES | 3,908.41 |
| 0000606013 R&M - OUTSIDE CONTRACTORS (NON-PINNACLE) | (23,753.26) |
| 0000606019 EQUIPMENT RENTALS - MAINTENANCE | (396,637.09) |
| 0000620010 FREIGHT EXPENSE | 4,035.14 |
| 0000620020 AIR FREIGHT | 13,222.87 |
| 0000620030 DEMURRAGE EXPENSE THIRD PARTY-NON ST&T | 1,485.00 |
| 0000620040 FREIGHT EXPENSE ENVIRONMENTAL | 0.00 |
| 0000620050 CUSTOMS & BROKERAGE CHARGES | 5,571.42 |
| 0000620060 PRODUCT CONSUMED-GASOLINE & OIL | 13,951.01 |
| 0000620072 GAS & OIL CONSUMED-VEHICLES | 0.00 |
| 0000630010 MARINE PRESERVATION / NATIONAL RESPONSE CORP | 38,632.64 |
| 0000630020 CHEMICALS EXP | (741.00) |
| 0000630030 CATALYST | (17,254.30) |
| 0000630040 ADDITIVES EXPENSE | 0.00 |
| 0000630070 MISC EXP - OPERATING EXPENSE | 0.00 |
| 0000640000 SHARED SERVICES CLEARING | 0.00 |
| **OFFICE AND MISC OPERATING EXPENSES** | **(357,579.16)** |
| | |
| 0000640050 MISC EXP - NON OPERATING EXPENSE | 0.00 |
| **OTHER MISC O&M** | **0.00** |
| | |
| **OTHER O&M** | **339,338.04** |
| | |
| **OPERATING EXPENSES** | **1,409,553.17** |
| | |
| 0000814012 INS-ALL RISK PROPERTY | 80,937.50 |
| **PROPERTY** | **80,937.50** |

**Limetree Bay Refining Marketing, LLC**
**Income Statement**
**For the month ending July 31, 2021**

| | July 13-31, 2021<br>Unaudited |
|---|---|
| **INSURANCE** | **80,937.50** |
| | |
| 0000803011 CONSULTING FEES | 0.00 |
| **CONSULTING FEES** | **0.00** |
| | |
| 0000803013 LEGAL FEES | 5,189.53 |
| **LEGAL FEES** | **5,189.53** |
| | |
| **PROFESSIONAL FEES** | **5,189.53** |
| | |
| 0000804034 SOFTWARE - DESKTOP MAINTENANCE | 0.00 |
| **IT EXPENSES** | **0.00** |
| | |
| **COMMUNICATIONS AND IT EXPENSES** | **0.00** |
| | |
| 0000808010 UTILITY EXPENSE-ELECTRICITY | 487.20 |
| **UTILITIES** | **487.20** |
| | |
| 0000812015 BANK CHARGES | 305.03 |
| **TAXES AND FEES** | **305.03** |
| | |
| 0000812031 BOOKS/MANUALS/SUBSCRIPTIONS | 13,506.93 |
| **LICENSES, MEMBERSHIPS AND SUBSCRIPTIONS** | **13,506.93** |
| | |
| 0000811017 COMMUNITY RELATIONS EVENTS | 0.00 |
| **CONTRIBUTIONS AND DONATIONS** | **0.00** |
| | |
| 0000805011 POSTAGE | 0.00 |
| 0000830070 MISC EXPENSES - G&A | 0.00 |
| **OFFICE AND MISC OPERATING EXPENSES** | **0.00** |
| | |
| **OTHER O&M** | **14,299.16** |
| | |
| **GENERAL ADMINISTRATION EXPENSE** | **100,426.19** |
| | |
| 0000440200 Realized (income) / loss - Market Structure Roll | 0.00 |
| 0000440215 Realized (income) / loss - Other | 0.00 |
| 0000440305 Unrealized MTM (income) loss – Step-out | 0.00 |
| 0000645000 Other Income/Expense | (9,069,055.00) |
| **\*MISC. OPERATING (INCOME) EXPENSE.** | **(9,069,055.00)** |
| | |
| **\*\*TOTAL EXPENSES** | **(7,559,075.64)** |
| | |
| **\*\*\*OPERATING INCOME** | **7,777,486.05** |
| | |
| 0000818010 INTEREST EXPENSE | (18,277.05) |
| 0000818020 INVESTMENT INTEREST INCOME | 0.00 |
| 0000818030 Interest Expense - Base Catalyst Advance | 118,234.99 |
| 0000818031 Interest Expense - Precious Catalyst Advance | 57,291.01 |
| 0000818040 Interest Expense - IM Financing Fee | 0.00 |
| 0000818041 Interest Expense - IM Intermediation Fee | 0.00 |
| **\*\*INTEREST AND FINANCING EXPENSE** | **157,248.95** |

**Limetree Bay Refining Marketing, LLC**
**Income Statement**
**For the month ending July 31, 2021**

| | July 13-31, 2021 Unaudited |
|---|---|
| ***TOTAL NON-OPERATING INCOME (EXPENSE): | 157,248.95 |
| ****NET INCOME (LOSS) | 7,620,237.10 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Limetree Bay Refining Marketing, LLC**

**Schedule of Bank Accounts - As of July 31, 2021**

| Description | Operating Account | Revenue Account | O&M Account | Total - All Debtor Accounts |
|---|---|---|---|---|
| Account Name | Limetree Bay Refining Marketing, LLC | Limetree Bay Refining Marketing, LLC | Limetree Bay Refining Marketing, LLC | |
| Bank Name | Oriental Bank | Deutsche Bank | Deutsche Bank | |
| Account Number - Last Four Digits | 0986 | 972.1 | 972.2 | |
| Beginning book balance (as of 07/12/21) | $   119,310.57 | $   1,049,979.71 | $   1.49 | $   1,169,291.77 |
| Plus:  Deposits | - | 2,850,479.00 | - | 2,850,479.00 |
| Subtotal | 119,310.57 | 3,900,458.71 | 1.49 | 4,019,770.77 |
| | | | | |
| Less:  Disbursements | (119,209.74) | | (3,899,500.00) | (4,018,709.74) |
| Transfers | - | (3,899,500.00) | 3,899,500.00 | - |
| Other: | - | - | - | - |
| **Ending book balance (as of 07/31/21)** | **$   100.83** | **$   958.71** | **$   1.49** | **$   1,061.03** |

**Oriental**

P.O. Box 195115
San Juan, PR 00919-5115

Last statement: June 30, 2021
This statement: July 31, 2021
Total days in statement period: 31

Page 1 of 3
    0986
(0)

LIMETREE BAY REFINING MARKETING LLC
1 ESTATE HOPE
CHRISTIANSTED VI 00820

Direct inquiries to:
787-620-0000

Oriental Bank
254 Munoz Rivera Ave
Hato Rey PR 00918

---

## Premium Business

| | | | |
|---|---|---|---|
| Account number | 0986 | Beginning balance | $168,706.57 |
| Low balance | $100.83 | Total additions | 756,500.00 |
| Average balance | $111,531.06 | Total subtractions | 925,105.74 |
| | | Ending balance | $100.83 |

**DEBITS**

| Date | Description | Subtractions |
|---|---|---|
| 07-01 | ' Wire Transfer-Out | 805,896.00 |
| | WIRE OUT -BP NORTH AMERICA PETROLEUM INC | |
| | 202107010000833 | |
| 07-21 | ' Maintenance Fee | 305.03 |
| | ANALYSIS ACTIVITY FOR 06/21 | |
| 07-30 | ' Wire Transfer-Out | 118,904.71 |
| | WIRE OUT -J.ARON AND COMPANY LLC | |
| | 202107300003027 | |

**CREDITS**

| Date | Description | Additions |
|---|---|---|
| 07-01 | ' Wire Transfer-IN | 756,500.00 |
| | WIRE IN -LIMETREE BAY REFINING MARKETING LLC | |
| | 202107010000710 | |

**DAILY BALANCES**

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 06-30 | 168,706.57 | 07-21 | 119,005.54 | | |
| 07-01 | 119,310.57 | 07-30 | 100.83 | | |

0 -48099

**LIMETREE BAY REFINING MARKETING, LLC**
**LBRM Operating Account Oriental Bank - 110800**
**        0986**
**July 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 6/30/2021 | $ | 168,706.57 |
| Deposits | | $ | 756,500.00 |
| ACH / Debits | | $ | - |
| Wires | | $ | (924,800.71) |
| Bank Charges | | $ | (305.03) |
| Dividends | | $ | - |
| Ending Balance per Bank | 7/31/2021 | $ | 100.83 |
| Opening Balance  per Book | 6/30/2021 | $ | 168,706.57 |
| Deposits | | $ | 756,500.00 |
| ACH / Debits | | $ | - |
| Wires | | $ | (924,800.71) |
| Bank Charges | | $ | (305.03) |
| Dividends | | $ | - |
| Ending Balance per Book | 7/31/2021 | $ | 100.83 |
| | | $ | 100.83 |

Reconciled by          George Southwell

Date:                  8/2/2021

Approved by

Date:

# Deutsche Bank

| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | LBRM Revenue Account |
| Portfolio Number: | 2.1 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

### Portfolio Market Value Summary as of 07/31/21

| | | |
|---|---|---|
| Cash | $ | 0.00 |
| Investments | | 958.71 |
| Total Portfolio Value: | $ | 958.71 |
| YTD Interest: | $ | 0.00 |
| YTD Dividends: | $ | 499.38 |
| YTD Capital Gains/Losses: | $ | 0.00 |

### Portfolio Cost Value Summary as of 07/31/21

| | | |
|---|---|---|
| Cash | $ | 0.00 |
| Investments | $ | 958.71 |
| Total Portfolio Value: | $ | 958.71 |

### Cash Summary

| | | |
|---|---|---|
| **Beginning Balance** | $ | **0.00** |
| **Receipts:** | | |
| Cash Receipts | $ | 3,900,334.63 |
| Sale of Investments | | 3,680,700.00 |
| **Total Receipts** | $ | **7,581,034.63** |

### Disbursements:

| | | |
|---|---|---|
| Purchase of Investments | $ | 2,950,334.63 |
| Transfers Out | | 4,630,700.00 |
| Dividends Reinvested | | 25.70 |
| **Total Disbursements** | $ | **(7,581,034.63)** |
| **Closing Balance** | $ | **0.00** |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | LBRM Revenue Account |
| Portfolio Number: | 2.1 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamari Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Transaction Statement for the period of July 1, 2021 through July 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 07/01 | Beginning balance | | | | | | $ 731,298.38 |
| 07/01 | Mutual Fund Sale SE1972IMF @ 1.00 BL #92104 -0U4 FedFund Admin CUSIP: 09248U445   / ISIN: US09248U4452 | $ 731,200.00 | $ (731,200.00) | $ 0.00 | $ 1.00 | $ 731,200.00 | $ 98.38 |
| 07/01 | Cash Transfer 0 | $ (731,200.00) | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 98.38 |
| 07/01 | Dividend Reinvestment BL #92104 -0U4 FedFund Admin CUSIP: 09248U445   / ISIN: US09248U4452 | $ 0.00 | $ 25.70 | $ 0.00 | $ 0.00 | $ 0.00 | $ 124.08 |
| 07/12 | Auto Wire Receipt MONEY TRANSFER RECEIPT: N REM-N OBI=PORT SE 1972 :1LIMETREE BAY REFINI NG MARKETING LLCINVOICE # 200500033JUNE 2 021 POLARIS PROPANE PURCHAS Sending Bank: 065200997   FIRST NATIONAL BANK Beneficiary   2.1   LIMETREE BAY REFINING MARKETING LLC FED 0712IOMGFT007000832-07.12.2021 BANKREF M10187 8IFD071221 M10187 8IFD071221 20210712 | $ 1,049,855.63 | $ 1,049,855.63 | $ 0.00 | $ 0.00 | $ 1,049,855.63 | $ 124.08 |
| 07/12 | Mutual Fund Purchase MF Buy @ 1.00 BL #92104 -0U4 FedFund Admin CUSIP: 09248U445   / ISIN: US09248U4452 | $ (1,049,855.63) | $ 1,049,855.63 | $ 0.00 | $ 1.00 | $ 0.00 | $ 1,049,979.71 |
| 07/16 | Mutual Fund Sale SE1972IMF @ 1.00 BL #92104 -0U4 FedFund Admin CUSIP: 09248U445   / ISIN: US09248U4452 | $ 1,049,500.00 | $ (1,049,500.00) | $ 0.00 | $ 1.00 | $ 1,049,500.00 | $ 479.71 |
| 07/16 | Cash Transfer 0 | $ (1,049,500.00) | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 479.71 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

Account Name: Limetree Bay Refining Marketing LLC
Portfolio Name: LBRM Revenue Account
Portfolio Number: 2.1
Statement Period: July 01, 2021 - July 31, 2021
Account Administrator: Shamari Hartzog (714-247-6353)
Account Manager: ALICE CARTER (714-247-6369)
Team Lead: Thalia Delahayes (212-250-7336)

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 07/20 | Auto Wire Receipt MONEY TRANSFER RECEIPT: D03120106011101 REM=D0312 01060110I OBI=/ACC/IN FAVOUR OF LIMETREE BAY//RE FINING MARKETING, LLC/ACC/FFC: PORT SE19 7. Sending Bank: 0008        Citibank, N.A Beneficiary:        2.1      LIMETREE BAY REFINING MARKETING LLC CHIPS 0283874-07.20.2021 BANKREF S283874ICP072021 S283874ICP07202120210720 | $ 950,479.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 950,479.00 | 479.71 |
| 07/20 | Mutual Fund Purchase MF Buy @ 1.00 BL #92104 -0U4 FedFund Admin CUSIP: 09248U445   / ISIN: US09248U4452 | $ (950,479.00) | $ 950,479.00 | $ 0.00 | 1.00 $ | $ 0.00 | 950,958.71 |
| 07/23 | Auto Wire Receipt MONEY TRANSFER RECEIPT: D03120406523011 REM=D0312 040652301 OBI=/ACC/IN FAVOUR OF LIMETREE BAY//RE FINING MARKETING, LLC/ACC/FFC: PORT SE19 7. Sending Bank: 0008        Citibank, N.A Beneficiary:        2.1      LIMETREE BAY REFINING MARKETING LLC CHIPS 0347791-07.23.2021 BANKREF S347791ICP072321 S347791ICP07232120210723 | $ 1,900,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,900,000.00 | 950,958.71 |
| 07/23 | Cash Transfer 0 | $ (950,000.00) | $ 0.00 | $ 0.00 | $ 0.00 | $ 950,000.00 | 950,958.71 |
| 07/26 | Mutual Fund Purchase MF Invest @ 1.00 BL #92104 -0U4 FedFund Admin CUSIP: 09248U445   / ISIN: US09248U4452 | $ (950,000.00) | $ 950,000.00 | $ 0.00 | 1.00 $ | $ 0.00 | 1,900,958.71 |
| 07/29 | Mutual Fund Sale SE1972IMF @ 1.00 BL #92104 -0U4 FedFund Admin CUSIP: 09248U445   / ISIN: US09248U4452 | $ 1,900,000.00 | $ (1,900,000.00) | $ 0.00 | 1.00 $ | $ 1,900,000.00 | 958.71 |
| 07/29 | Cash Transfer To LBRM O&M | $ (1,900,000.00) | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | 958.71 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| Account Name: | Limetree Bay Refining Marketing LLC |
|---|---|
| Portfolio Name: | LBRM Revenue Account |
| Portfolio Number: | 2.1 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Asset position as of July 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| BL #92104 -0U4 FedFund Admin CUSIP: 09248U445 | 958.71 | $958.71 | 958.71 | $1.00 | 0.03% | $958.71 | $10.71 | n/a / N/A |
| **Total Portfolio** | **958.71** | **$958.71** | **958.71** | | | **$958.71** | **$10.71** | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| Account Name: | Limetree Bay Refining Marketing LLC |
|---|---|
| Portfolio Name: | LBRM O&M Account |
| Portfolio Number: | 2.2 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

### Portfolio Market Value Summary as of 07/31/21

| | | |
|---|---|---|
| Cash | $ | 0.00 |
| Investments | $ | 1.49 |
| Total Portfolio Value: | $ | 1.49 |
| YTD Interest: | $ | 0.00 |
| YTD Dividends: | $ | 3.95 |
| YTD Capital Gains/Losses: | $ | 0.00 |

### Portfolio Cost Value Summary as of 07/31/21

| | | |
|---|---|---|
| Cash | $ | 0.00 |
| Investments | $ | 1.49 |
| Total Portfolio Value: | $ | 1.49 |

### Cash Summary

| | | |
|---|---|---|
| **Beginning Balance** | $ | **0.00** |
| Receipts: | | |
| Transfers In | $ | 4,630,700.00 |
| Sale of Investments | $ | 25,300.00 |
| **Total Receipts** | $ | **4,656,000.00** |

| | | |
|---|---|---|
| **Disbursements:** | | |
| Cash Disbursements | $ | 756,500.00 |
| Transfers Out | $ | 3,899,500.00 |
| Dividends Reinvested | $ | 0.48 |
| **Total Disbursements** | $ | **(4,656,000.00)** |
| **Closing Balance** | $ | **0.00** |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| Account Name: | Limetree Bay Refining Marketing LLC |
|---|---|
| Portfolio Name: | LBRM O&M Account |
| Portfolio Number: | 2.2 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamari Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Transaction Statement for the period of July 1, 2021 through July 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 07/01 | Beginning balance | | | | | $ 0.00 | $ 25,301.01 |
| 07/01 | Mutual Fund Sale SE1972IMF @ 1.00 BL #92104 -0U4 FedFund Admin CUSIP: 09248U445 / ISIN: US09248U4452 | $ 25,300.00 | $ (25,300.00) | $ 0.00 | $ 1.00 | $ 25,300.00 | 1.01 |
| 07/01 | Cash Transfer 0 | $ 731,200.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 756,500.00 | 1.01 |
| 07/01 | Funds Disbursement Limetree Bay Refining Marketing, LLC Receiving Bank: 221571415 ORIENTAL BANK AND TRUST Beneficiary: 0986 Limetree Bay Refining Marketing, LLC FED 0701B1O8383C009075 BANKREF C579886OFD070121 C579886OFD070121 | $ (756,500.00) | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | 1.01 |
| 07/01 | Dividend Reinvestment BL #92104 -0U4 FedFund Admin CUSIP: 09248U445 / ISIN: US09248U4452 | $ 0.00 | $ 0.48 | $ 0.00 | $ 0.00 | $ 0.00 | 1.49 |
| 07/16 | Cash Transfer 0 | $ (1,049,500.00) | $ 0.00 | $ 0.00 | $ 0.00 | $ (1,049,500.00) | 1.49 |
| 07/16 | Cash Transfer 0 | $ 1,049,500.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | 1.49 |
| 07/23 | Cash Transfer 0 | $ (950,000.00) | $ 0.00 | $ 0.00 | $ 0.00 | $ (950,000.00) | 1.49 |
| 07/23 | Cash Transfer 0 | $ 950,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | 1.49 |
| 07/29 | Cash Transfer From LBRM REV | $ 1,900,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,900,000.00 | 1.49 |
| 07/29 | Cash Transfer 0 | $ (1,900,000.00) | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | 1.49 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | LBRM O&M Account |
| Portfolio Number: | 2.2 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Asset position as of July 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| BL #92104 -0U4 FedFund Admin CUSIP: 09248U445 | 1.49 | $1.49 | 1.49 | $1.00 | 0.00% | $1.49 | $0.00 | n/a / N/A |
| **Total Portfolio** | **1.49** | **$1.49** | **1.49** | | | **$1.49** | **$0.00** | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | LBRM Reinvestment & Repair Account |
| Portfolio Number: | 2.3 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

### Portfolio Market Value Summary as of 07/31/21

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |
| YTD Dividends: | $ 0.00 |
| YTD Interest: | $ 0.00 |
| YTD Capital Gains/Losses: | $ 0.00 |

### Portfolio Cost Value Summary as of 07/31/21

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |

### Cash Summary

| | |
|---|---|
| Beginning Balance | $ 0.00 |
| Closing Balance | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | LBRM Reinvestment & Repair Account |
| Portfolio Number: | 2.3 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Transaction Statement for the period of July 1, 2021 through July 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 07/01 | Beginning balance | | | | | $ 0.00 | $ 0.00 |

Asset position as of July 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | LBRM Tolling Agreement Payment Account |
| Portfolio Number: | 2.4 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

### Portfolio Market Value Summary as of 07/31/21

| | |
|---|---|
| Total Portfolio Value: | $                0.00 |
| YTD Dividends: | $                0.00 |
| YTD Interest: | $                0.00 |
| YTD Capital Gains/Losses: | $                0.00 |

### Portfolio Cost Value Summary as of 07/31/21

| | |
|---|---|
| Total Portfolio Value: | $                0.00 |

### Cash Summary

| | |
|---|---|
| Beginning Balance | $                0.00 |
| Closing Balance | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | LBRM Tolling Agreement Payment Account |
| Portfolio Number: | 2.4 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Transaction Statement for the period of July 1, 2021 through July 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|------|------------------------|------|----------|---------------|-------|--------------|--------------|
| 07/01 | Beginning balance | | | | | $ 0.00 $ | 0.00 |

## Asset position as of July 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|-------------|----------------|------|---------------|--------------|-------|--------------|----------------|----------------------------|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

1513

# Deutsche Bank

| Account Name: | Limetree Bay Refining Marketing LLC |
|---|---|
| Portfolio Name: | LBRM Capex Reserve Account |
| Portfolio Number: | 2.5 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

**Portfolio Market Value Summary as of 07/31/21**

| | |
|---|---|
| Total Portfolio Value: | $        0.00 |
| YTD Dividends: | $        0.00 |
| YTD Interest: | $        0.00 |
| YTD Capital Gains/Losses: | $        0.00 |

**Portfolio Cost Value Summary as of 07/31/21**

| | |
|---|---|
| Total Portfolio Value: | $        0.00 |

**Cash Summary**

| | |
|---|---|
| Beginning Balance | $        0.00 |
| Closing Balance | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank ☑

| Account Name: | Limetree Bay Refining Marketing LLC |
|---|---|
| Portfolio Name: | LBRM Capex Reserve Account |
| Portfolio Number: | '2.5 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Transaction Statement for the period of July 1, 2021 through July 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 07/01 | Beginning balance | | | | | $ 0.00 | $ 0.00 |

## Asset position as of July 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | LBRM Turn-around Reserve Account |
| Portfolio Number: | 2.6 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

**Portfolio Market Value Summary as of 07/31/21**

| | |
|---|---|
| Total Portfolio Value: | $  0.00 |
| YTD Dividends: | $  0.00 |
| YTD Interest: | $  0.00 |
| YTD Capital Gains/Losses: | $  0.00 |

**Portfolio Cost Value Summary as of 07/31/21**

| | |
|---|---|
| Total Portfolio Value: | $  0.00 |

**Cash Summary**

| | |
|---|---|
| Beginning Balance | $  0.00 |
| Closing Balance | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

Account Name: Limetree Bay Refining Marketing LLC
Portfolio Name: LBRM Turn-around Reserve Account
Portfolio Number: ˙2.6
Statement Period: July 01, 2021 - July 31, 2021
Account
Administrator: Shamarri Hartzog (714-247-6353)
Account Manager: ALICE CARTER (714-247-6369)
Team Lead: Thalia Delahayes (212-250-7336)

Transaction Statement for the period of July 1, 2021 through July 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|------|------------------------|------|----------|---------------|-------|--------------|--------------|
| 07/01 | Beginning balance | | | | | $ 0.00 $ | 0.00 |

Asset position as of July 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|-------------|----------------|------|---------------|--------------|-------|--------------|----------------|-----------------------------|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

Account Name: Limetree Bay Refining Marketing LLC
Portfolio Name: Tolling Agreement Payment Sub-account
Portfolio Number: 2.7
Statement Period: July 01, 2021 - July 31, 2021
Account Administrator: Shamarri Hartzog (714-247-6353)
Account Manager: ALICE CARTER (714-247-6369)
Team Lead: Thalia Delahayes (212-250-7336)

## Summary

**Portfolio Market Value Summary as of 07/31/21**

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |
| YTD Dividends: | $ 0.00 |
| YTD Interest: | $ 0.00 |
| YTD Capital Gains/Losses: | $ 0.00 |

**Portfolio Cost Value Summary as of 07/31/21**

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |

**Cash Summary**

| | |
|---|---|
| Beginning Balance | $ 0.00 |
| Closing Balance | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

Account Name: Limetree Bay Refining Marketing LLC
Portfolio Name: Tolling Agreement Payment Sub-account
Portfolio Number: *2.7
Statement Period: July 01, 2021 - July 31, 2021
Account
Administrator: Shamarri Hartzog (714-247-6353)
Account Manager: ALICE CARTER (714-247-6369)
Team Lead: Thalia Delahayes (212-250-7336)

Transaction Statement for the period of July 1, 2021 through July 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|------|------------------------|------|----------|---------------|-------|--------------|--------------|
| 07/01 | Beginning balance | | | | | $ 0.00 $ | 0.00 |

Asset position as of July 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|-------------|----------------|------|---------------|--------------|-------|--------------|----------------|----------------------------|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | Gross Margin Sub-account |
| Portfolio Number: | 2.8 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

### Portfolio Market Value Summary as of 07/31/21

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |
| YTD Dividends: | $ 0.00 |
| YTD Interest: | $ 0.00 |
| YTD Capital Gains/Losses: | $ 0.00 |

### Portfolio Cost Value Summary as of 07/31/21

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |

### Cash Summary

| | |
|---|---|
| Beginning Balance | $ 0.00 |
| Closing Balance | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | Gross Margin Sub-account |
| Portfolio Number: | 2.8 |
| Statement Period: | July 01, 2021 - July 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Transaction Statement for the period of July 1, 2021 through July 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 07/01 | Beginning balance | | | | | $ 0.00 | $ 0.00 |

## Asset position as of July 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

**LIMETREE BAY REFINING MARKETING, LLC**
**Revenue Account Deutsche Bank - 110250**
   **972.1**
**July 2021**

|  | Date |  | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 6/30/2021 | $ | 731,298.38 |
| Deposits |  | $ | 3,900,334.63 |
| ACH / Debits |  | $ | (4,630,700.00) |
| Wires |  | $ | - |
| Bank Charges |  | $ | - |
| Dividends |  | $ | 25.70 |
| Ending Balance per Bank | 7/31/2021 | $ | 958.71 |
| Opening Balance  per Book | 6/30/2021 | $ | 731,298.38 |
| Deposits |  | $ | 3,900,334.63 |
| ACH / Debits |  | $ | (4,630,700.00) |
| Wires |  | $ | - |
| Bank Charges |  | $ | - |
| Dividends |  | $ | 25.70 |
| Ending Balance per Book | 7/31/2021 | $ | 958.71 |
|  |  | $ | 958.71 |

| | |
|---|---|
| Reconciled by | George Southwell |
| Date: | 8/11/2021 |
| Approved by | |
| Date: | |

**LIMETREE BAY REFINING MARKETING, LLC**
**O & M Account Deutsche Bank - 110260**
   **972.2**
**July 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 6/30/2021 | $ | 25,301.01 |
| Deposits | | $ | 4,630,700.00 |
| ACH / Debits | | $ | (3,899,500.00) |
| Wires | | $ | (756,500.00) |
| Bank Charges | | $ | - |
| Dividends | | $ | 0.48 |
| Ending Balance per Bank | 7/31/2021 | $ | 1.49 |
| Opening Balance  per Book | 6/30/2021 | $ | 25,301.01 |
| Deposits | | $ | 4,630,700.00 |
| ACH / Debits | | $ | (3,899,500.00) |
| Wires | | $ | (756,500.00) |
| Bank Charges | | $ | - |
| Dividends | | $ | 0.48 |
| Ending Balance per Book | 7/31/2021 | $ | 1.49 |
| | | $ | 1.49 |

Reconciled by          George Southwell

Date:                        8/10/2021

Approved by

Date:

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

# United States Bankruptcy Court
# Southern District of Texas (Houston)
## Schedule of Insurance Policies - As of July 31, 2021

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | AGCS (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AGCS (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, Allianz, Axis (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, Aspen (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, HDI (Amended Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, Liberty (Endorsement | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, TRV (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, TRV (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG, TRV (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | AIG/National Union Fire Insurance Co | Combined Property | Primary $250M | 026-1001312 | 2021.09.01 |
| Limetree Bay Refining, LLC | Allianz (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz Global Risk US Insurance Company | Combined Property | Primary $1.25BN | USN00023920 | 2021.12.01 |
| Limetree Bay Refining, LLC | Aspen (Endorsement) | Builder's Risk | $50M | ENGAC1900007 | 2021.12.01 |
| Limetree Bay Refining, LLC | Atrium Underwriters Ltd | Combined Property | $150M XS $200M | B0509ENGAO2000588 | 2021.12.01 |
| Limetree Bay Refining, LLC | Axis (Endorsement) | Builder's Risk | $50M | EAU646295/01/2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 92SRD102973 | |
| Limetree Bay Refining, LLC | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 42-PRP-312023-01 | 2021.09.01 |
| Limetree Bay Refining, LLC | CIN 318/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of July 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | Convex Insurance UK Limited | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Elseco limited | Combined Property | $300M XS $200M | B0509ENGAO2000563 | 2021.12.01 |
| Limetree Bay Services, LLC | Liberty | Worker's Comp | | WCC-641-444917-020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Fidelis/ Fidelis Underwriting Ltd. | Combined Property | $250M XS $250M | B0509ENGAO2000613 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hannover Re/HDI Global Specialty SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Helvetia/Helvetia Swiss Insurance Co in Liechtenstein Ltd | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Helvetia/Helvetia Swiss Insurance Co in Liechtenstein Ltd | Combined Property | $300M XS $200M | B0509ENGAO2000586 | 2021.12.01 |
| Limetree Bay Refining, LLC | HSIC/Houston Specialty Insurance Company | Combined Property | $150M XS 50M | PRO440373 | 2021.12.01 |
| Limetree Bay Refining, LLC | IGI/Insurance General Insurance Co Ltd. | Combined Property | $300M XS $200M | B0509ENGAO2000563 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lancashire/Lancashire Insurance Company UK, Ltd. | Combined Property | $300M XS $200M | B0509ENGAO2000587 | 2021.12.01 |
| Limetree Bay Refining, LLC | LSM/Liberty Specialty Markets Agency Limited | Combined Property | $100M XS $100M | LSMAEN143232A | 2021.12.01 |
| Limetree Bay Refining, LLC | Munich Re/Great Lakes Insurance SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | NOA/Lloyds of London | Combined Property | $300M XS $200M | B0509ENGAO2000586 | 2021.12.01 |
| Limetree Bay Refining, LLC | Partner Re/PartnerRe Ireland Insurance dac | Combined Property | $150M XS $350M | B0509ENGAO2000589 | 2021.12.01 |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

## United States Bankruptcy Court
## Southern District of Texas (Houston)

### Schedule of Insurance Policies - As of July 31, 2021

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | PICC/Guardian General Insurance | Combined Property | $100M XS $100M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | QBE/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Rokstone/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC | SCOR (3)/General Security Indemnity Company of Arizona | Combined Property | Primary $1.25BN | FA007943720201 | |
| Limetree Bay Refining, LLC | Sompo/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Swiss Re/Westport Insurance Company | Combined Property | Primary $500M | OMP 2000425-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Validus Specialty/Lloyds of London | Combined Property | Primary $250M | AJH292893A20 | |
| Limetree Bay Refining, LLC | Westchester Surplus Lines Ins Co/Starr Technical Risks Agency, Inc | Combined Property | Primary $500M | EPRN18215263 | 2021.12.01 |
| Limetree Bay Refining, LLC | WRB/Guardian General Insurance | Combined Property | $50M XS $50M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Zurich/Zurich American Insurance Company | Combined Property | Primary $100M | OGR 1296457-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arcadian/Ark/Helix Bermuda | Builder's Risk | $25M xs $100M | NAMBM2100005 | 2022.06.01 |
| Limetree Bay Refining, LLC | Allianz | Refinery Excess Liability | $15M xs $53M | USL00880520 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz | Environmental Liability | $15M xs $85M | USL00873320 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty | Refinery Primary Liability | | AS6-641-444917-010 | 2021.12.01 |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of July 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | Travelers Syndicate | Refinery Primary Liability | | ENCAS2000012 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer/Apollo | Refinery Excess Liability | $15M | ENCAS2000011 | 2021.12.01 |
| Limetree Bay Refining, LLC | Westchester | Refinery Excess Liability | $3M xs $25M | G71809808001 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Refinery Excess Liability | $25M xs $28M | 4380100 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer | Refinery Excess Liability | $11M po $22M xs $68M | ENCAS2000020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lex-London | Refinery Excess Liability | $11M po $22M xs $68M | 62785689 | 2021.12.01 |
| Limetree Bay Refining, LLC | OSL | Refinery Excess Liability | $10M xs $90M | EXS-154724-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | AXA XL Bermuda | Refinery Excess Liability | $25M xs $125M | XLUMB-229978 | 2021.12.01 |
| Limetree Bay Refining, LLC | OCIL Bermuda | Refinery Excess Liability | $25M po $40M xs $150M | U920968-0620 | 2021.12.01 |
| Limetree Bay Refining, LLC | Sompo Bermuda | Refinery Excess Liability | $15M po $40M xs $150M | EXC30001524800 | 2021.12.01 |
| Limetree Bay Refining, LLC | Argo Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | ARGO-CAS-OR-001484 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arch Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | URP0065257-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel Bermuda | Refinery Excess Liability | $12.5M po $50M xs $190M | 1454233-11636-UMB-2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hamilton Bermuda | Refinery Excess Liability | $7.5M po $50M xs $190M | CX20-9216 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chubb Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LBR-2144/XS004 | 2021.12.01 |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of July 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---------|---------|------|-----------------|---------------|-----------------|
| Limetree Bay Refining, LLC | Liberty Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LSMAEC119907A | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $1M | ENVP0000296-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $9M xs $1M | ENVX0000256-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Environmental Liability | $25M xs $10M | 262704 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ascot | Environmental Liability | $25M xs $35M | ENXP2110000428-01 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel | Environmental Liability | $25M xs $60M | MKLV4EFX102259 | 2021.12.01 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $15M | 8261-8347 | 2022.04.20 |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000623319211 | |
| Limetree Bay Refining, LLC | Wesco Insurance Company | Executive Risk | $1M | EUW1909831 00 | |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $10M | 1000622392201 | 2027.04.27 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | | 8247-1536 | |

**DRAFT**
Preliminary & Confidential
Attorney Client Work Product

# UNITED STATES BANKRUPTCY COURT

SOUTHERN   DISTRICT OF   TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| In Re. LIMETREE BAY SERVICES, LLC, et al. | § | Case No.   21-32351 |
| | § | |
| | § | Lead Case No.   21-32351 |
| Debtor(s) | § | |
| | | ☒ Jointly Administered |

## Monthly Operating Report

Chapter 11

Reporting Period Ended: 08/31/2021          Petition Date: 07/12/2021

Months Pending: 2          Industry Classification: 3  2  4  1

Reporting Method:          Accrual Basis ◉          Cash Basis ○

Debtor's Full-Time Employees (current):          0

Debtor's Full-Time Employees (as of date of order for relief):          131

**Supporting  Documentation**  (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

- ☒ Statement of cash receipts and disbursements
- ☒ Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
- ☒ Statement of operations (profit or loss statement)
- ☐ Accounts receivable aging
- ☐ Postpetition liabilities aging
- ☐ Statement of capital assets
- ☐ Schedule of payments to professionals
- ☐ Schedule of payments to insiders
- ☒ All bank statements and bank reconciliations for the reporting period
- ☐ Description of the assets sold or transferred and the terms of the sale or transfer

/s/ Elizabeth A. Green
_____
Signature of Responsible Party

10/01/2021
_____
Date

Elizabeth A. Green
_____
Printed Name of Responsible Party

200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, FL 32801
_____
Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

UST Form 11-MOR (06/07/2021)          1

| Debtor's Name | LIMETREE BAY SERVICES, LLC, et al. | | Case No. | 21-32351 |
|---|---|---|---|---|

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a. | Cash balance beginning of month | $8,307 | |
| b. | Total receipts (net of transfers between accounts) | $0 | $0 |
| c. | Total disbursements (net of transfers between accounts) | $5,103 | $5,103 |
| d. | Cash balance end of month (a+b-c) | $3,204 | |
| e. | Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f. | Total disbursements for quarterly fee calculation (c+e) | $5,103 | $5,103 |

| Part 2:  Asset and Liability Status<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month |
|---|---|
| a. | Accounts receivable (total net of allowance) | $5,778,575 |
| b. | Accounts receivable over 90 days outstanding (net of allowance) | $4,764,742 |
| c. | Inventory    (Book ○   Market ○   Other ◉   (attach explanation)) | $0 |
| d | Total current assets | $5,816,021 |
| e. | Total assets | $5,816,021 |
| f. | Postpetition payables (excluding taxes) | $0 |
| g. | Postpetition payables past due (excluding taxes) | $0 |
| h. | Postpetition taxes payable | $0 |
| i. | Postpetition taxes past due | $0 |
| j. | Total postpetition debt (f+h) | $0 |
| k. | Prepetition secured debt | $0 |
| l. | Prepetition priority debt | $0 |
| m. | Prepetition unsecured debt | $5,939,013 |
| n. | Total liabilities (debt) (j+k+l+m) | $5,939,013 |
| o. | Ending equity/net worth (e-n) | $-122,991 |

| Part 3:  Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a. | Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b. | Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c. | Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4:  Income Statement (Statement of Operations)<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a. | Gross income/sales (net of returns and allowances) | $0 | |
| b. | Cost of goods sold (inclusive of depreciation, if applicable) | $0 | |
| c. | Gross profit (a-b) | $0 | |
| d. | Selling expenses | $0 | |
| e. | General and administrative expenses | $5,265 | |
| f. | Other expenses | $0 | |
| g. | Depreciation and/or amortization (not included in 4b) | $0 | |
| h. | Interest | $0 | |
| i. | Taxes (local, state, and federal) | $0 | |
| j. | Reorganization items | $0 | |
| k. | Profit (loss) | $-5,265 | $28,977 |

UST Form 11-MOR (06/07/2021)                    2

Debtor's Name  LIMETREE BAY SERVICES, LLC, et al.                                    Case No.  21-32351

## Part 5:  Professional Fees and Expenses

| | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| a. | Debtor's professional fees & expenses (bankruptcy)  *Aggregate Total* | | $0 | $0 | $0 | $0 |
| | *Itemized Breakdown by Firm* | | | | | |
| | Firm Name | Role | | | | |
| | i | Other | $0 | $0 | $0 | $0 |
| | ii | Other | $0 | $0 | $0 | $0 |

| | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy)  *Aggregate Total* | | | | | |
| | *Itemized Breakdown by Firm* | | | | | |
| | Firm Name | Role | | | | |
| | i | | | | | |
| | ii | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | | |

## Part 6:  Postpetition Taxes

| | | Current Month | Cumulative |
|---|---|---|---|
| a. | Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. | Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. | Postpetition employer payroll taxes accrued | $0 | $0 |
| d. | Postpetition employer payroll taxes paid | $5,103 | $5,103 |
| e. | Postpetition property taxes paid | $0 | $0 |
| f. | Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. | Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

## Part 7: Questionnaire - During this reporting period:

a.  Were any payments made on prepetition debt?  (if yes, see Instructions)     Yes ○   No ●

b.  Were any payments made outside the ordinary course of business without court approval?  (if yes, see Instructions)     Yes ○   No ●

c.  Were any payments made to or on behalf of insiders?     Yes ○   No ●

d.  Are you current on postpetition tax return filings?     Yes ●   No ○

e.  Are you current on postpetition estimated tax payments?     Yes ●   No ○

f.  Were all trust fund taxes remitted on a current basis?     Yes ●   No ○

g.  Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions)     Yes ●   No ○

h.  Were all payments made to or on behalf of professionals approved by the court?     Yes ○   No ○   N/A ●

i.  Do you have:     Worker's compensation insurance?     Yes ●   No ○

   If yes, are your premiums current?     Yes ●   No ○   N/A ○   (if no, see Instructions)

   Casualty/property insurance?     Yes ●   No ○

   If yes, are your premiums current?     Yes ●   No ○   N/A ○   (if no, see Instructions)

   General liability insurance?     Yes ●   No ○

   If yes, are your premiums current?     Yes ●   No ○   N/A ○   (if no, see Instructions)

j.  Has a plan of reorganization been filed with the court?     Yes ○   No ●

Debtor's Name LIMETREE BAY SERVICES, LLC, et al.                    Case No. 21-32351

k.   Has a disclosure statement been filed with the court?        Yes ○   No ●
l.   Are you current with quarterly U.S. Trustee fees as          Yes ●   No ○
     set forth under 28 U.S.C. § 1930?

## Part 8: Individual Chapter 11 Debtors (Only)

| | | |
|---|---|---:|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |

l.   Are you required to pay any Domestic Support Obligations as defined by 11    Yes ○  No ●
     U.S.C § 101(14A)?
m.   If yes, have you made all Domestic Support Obligation payments?             Yes ○  No ○  N/A ●

**Privacy Act Statement**

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107. The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6). The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith. This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law. Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records." *See* 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006). A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm. Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee. 11 U.S.C. § 1112(b)(4)(F).


**<u>I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.</u>**


Mark Shapiro                                          Mark Shapiro, Chief Restructuring Officer
_____                              _____
Signature of Responsible Party                        Printed Name of Responsible Party

Chief Restructuring Officer                           10/01/2021
_____                              _____
Title                                                 Date

| | |
|---|---|
| **CASE NAME:** | **Limetree Bay Services, LLC** |
| **CASE NUMBER:** | **21-32351 (Jointly Administered under Lead Case No.: 21-32351)** |

### Notes to the Monthly Operating Report

## General:

On July 12, 2021 (the "Petition Date"), Limetree Bay Services, LLC ("Limetree") filed a voluntary petition with the United States Bankruptcy Court under Chapter 11 of the Bankruptcy Code [Case No.: 21-32351], along with five (5) affiliated entities (Affiliated Entities"). The debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067);  and Limetree Bay Refining Marketing, LLC (9222); (collectively, the "Debtors" or "Jointly Administered Debtors"). The bankruptcy filings of Limetree and the Affiliated Entities are jointly administered under Case No. 21-32351.

On or about June 17, 2021, the Jointly Administered Debtors retained B. Riley as chief restructuring officer ("CRO"). Mark Shapiro, as principal representative of B. Riley in its capacity, serves as CRO to the Jointly Administered Debtors.

Debtor-in-Possession Financial Statements - The accompanying schedules herein are unaudited, preliminary, and may not comply with generally accepted accounting principles in the United States of America ("U.S. GAAP") in all material respects.

The Monthly Operating Report ("MOR") is limited in scope, covers a limited time period, and has been prepared solely for the purpose of complying with the monthly reporting requirements of the Bankruptcy Court and the United States Trustee.  The information presented herein has not been subjected to all procedures that would typically be applied to financial information presented in accordance with U.S. GAAP. Upon the application of such procedures, the financial information could be subject to changes, and these changes could be material. The information furnished in this MOR includes normal recurring adjustments, but does not include all of the adjustments that would typically be made for interim financial statements in accordance with U.S. GAAP.

Reservation of Rights: Given the complexity of the Debtors' business, inadvertent errors, omissions or over inclusions may have occurred. Accordingly, the Debtors hereby reserve all of their rights to dispute the validity, status, enforceability, or executory nature of any claim amount, representation or other statement in this MOR and reserve the right to amend or supplement this MOR, if necessary, but shall be under no obligation to do so.

## August 1-31, 2021 Monthly Operating Report:

**(1)**  The Reporting Period for this MOR is August 1-31, 2021, and the financial statements referenced herein cover the same time period.

**(2)**  The Financial Statements are reported on an Accrual Basis. Cash Receipts & Disbursements are reported on a Cash Basis.

**(3)**  The CRO, Mark Shapiro, has signed this MOR.  Mr. Shapiro is an authorized signatory for the Debtor. In reviewing and signing the MOR, Mr. Shapiro has relied upon the efforts, statements and representations of various personnel employed by the Debtor and the Debtor's advisors. Mr. Shapiro has not (and could not have) personally verified the accuracy of each statement and representation contained in the MOR, including statements and representations concerning amounts owed to creditors, classification of such amounts, and other attached information.

**(4)**  MOR Part 2, d - Total Current Assets includes Cash, Accounts Receivable and an expected insurance refund vor $34,241.97.  The expected insurance refund is recorded as a debit to post-petition accounts payable in the debtor's accounting records.

**(5)**  MOR Part 2, e - Total Assets includes Current Assets.

**(6)**  MOR Part 2, f - Post-Petition Payables (excluding taxes) is comprised of Trade Payables. The net increase in total liabilities from the previous reporting period is $161.53.

**(7)**  MOR Part 2, k-m - Amounts are per the Debtor's bankruptcy schedules and are subject to adjustment once the claims process has been completed by the CRO, which includes, but is not limited to, examining, determining the validity of and objecting to any disputed, contingent, unliquidated and filed claims.

**(8)**  MOR Part 2, k-o - As of the time of this filing, the CRO has not determined with accuracy the amount of the secured and unsecured debt, both of which are components of ending net equity/net worth.  Accordingly, the CRO makes no representations regarding the accuracy of the form-calculated net equity/net worth of the Debtor.

**(9)**  MOR Part 7, i - See attached the schedule of insurance in effect for the Jointly Administered Debtors.

**Attachments to MOR:**

**A.**  Financial Statements

**B.**  Statement of Cash Receipts and Disbursements

**C.**  Bank statements and bank reconciliations

**D.**  Schedule of Insurance in effect as of August 31, 2021 for the Jointly Administered Debtors

### STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS
### FOR THE PERIOD BEGINNING <u>August 1, 2021</u> AND ENDING <u>August 31,2021</u>

Name of Debtor: Limetree Bay Services, LLC, et al.       Case Number:  21-32351
Date of Petition:   July 12, 2021

| | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|
| **1. FUNDS AT BEGINNING OF PERIOD** | $  8,306.97 | $  8,306.97 |
| **2. RECEIPTS:** | | |
| A. Cash Sales | - | - |
| Minus: Cash Refunds | - | - |
| Net Cash Sales | - | - |
| B. Accounts Receivable | - | - |
| C. Other Receipts | - | - |
| (If you receive rental income, you must attach a rent roll) | | |
| **3. TOTAL RECEIPTS** *(Lines 2A+2B+2C)* | - | - |
| **4. TOTAL FUNDS AVAILABLE FOR OPERATIONS** *(Line 1 + Line 3)* | 8,306.97 | 8,306.97 |
| **5. DISBURSEMENTS** | | |
| A.  Advertising | - | - |
| B.  Bank Charges & Fees | - | - |
| C.  Contract Labor | - | - |
| D.  Fixed Asset Payments (not incl. in "N") | - | - |
| E.  Insurance | - | - |
| F.  Inventory Payments | - | - |
| G.  Leases & Contracts | - | - |
| H.  Manufacturing Supplies | - | - |
| I.  Office Supplies | - | - |
| J.  Payroll | - | - |
| K.  Professional Fees (Accounting & Legal) | - | - |
| L.  Rent | - | - |
| M.  Repairs & Maintenance | - | - |
| N.  Secured Creditor Payments | - | - |
| O.  Taxes Paid - Payroll | 5,103.00 | 5,103.00 |
| P.  Taxes Paid - Sales & Use | - | - |
| Q.  Taxes Paid - Other | - | - |
| R.  Telephone | - | - |
| S.  Travel & Entertainment | - | - |
| T.  U.S. Trustee | - | - |
| U.  Utilities | - | - |
| V.  Vehicle Expenses | - | - |
| W.  Other Operating Expenses | - | - |
| **6. TOTAL DISBURSEMENTS** *(Sum of 5A thru W)* | 5,103.00 | 5,103.00 |
| **7. ENDING BALANCE** *(Line 4 Minus Line 6)* | $  **3,203.97** | $  **3,203.97** |

## STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS (CONT'D.)

### Detail of Other Receipts and Other Disbursements

**OTHER RECEIPTS:**

Describe Each Item of Other Receipt and List Amount of Receipt.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| | $          - | $          - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | $          - | $          - |

**"Other Receipts" includes Loans from Insiders and other sources (i.e. Officer/Owner, related parties directors, related corporations, etc.).  Please describe below:**

| Loan Amount | Source of Funds | Purpose | Repayment Schedule |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**OTHER DISBURSEMENTS:**

Describe Each Item of Other Disbursement and List Amount of Disbursement.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| | $          - | $          - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | $          - | $          - |

**Limetree Bay Services, LLC**
**Balance Sheet**
**August 31, 2021**

| | 8/31/2021 |
|---|---|
| **TOTAL ASSETS** | |
| | |
| 0000110850 Checking Account - Citibank, N.A. - 6869787150 | 3,203.97 |
| **\*CASH & CASH EQUIVALENTS** | **3,203.97** |
| | |
| 0000150500 Intercompany A/R | 5,778,575.40 |
| **\*ACCOUNTS RECEIVABLE - AFFILIATE** | **5,778,575.40** |
| **\*\*TOTAL CURRENT ASSETS** | **5,781,779.37** |
| | |
| | |
| **\*\*\*\* TOTAL ASSETS** | **5,781,779.37** |
| | |
| ================================= | |
| **TOTAL LIABILITIES AND MEMBERS' EQUITY** | |
| | |
| **TOTAL LIABILITIES** | |
| | |
| 0000200010 A/P TRADE RECONCILIATION[1] | 30,094.19 |
| **\*ACCOUNTS PAYABLE TRADE** | **30,094.19** |
| | |
| 0000235500 Intercompany A/P | (5,935,026.56) |
| **\*AFFILIATE PAYABLE, NET** | **(5,935,026.56)** |
| **\*\*TOTAL CURRENT LIABILITIES** | **(5,904,932.37)** |
| | |
| **\*\*\* TOTAL LIABILITIES** | **(5,904,932.37)** |
| | |
| | |
| **TOTAL MEMBERS' EQUITY** | |
| | |
| 0000320010 MEMBERS INITIAL INVESTMENT | (50.00) |
| **\*MEMBERS' INITIAL EQUITY** | **(50.00)** |
| **\*\*MEMBERS' EQUITY** | **(50.00)** |
| | |
| **\*\*PROFIT/LOSS IN CURRENT YEAR** | **123,203.00** |
| | |
| | |
| **\*\*\* TOTAL MEMBERS' EQUITY** | **123,153.00** |
| | |
| | |
| **\*\*\*\* TOTAL LIABILITIES & MEMBERS' EQUITY** | **(5,781,779.37)** |

**Notes:**
**(1)** Accounts payable includes an expected insurance refund for
$34,241.97. The Debtor is pursuing a cash refund instead of the credit
that was issued.  On the MOR, the expected insurance refund is
reflected in Total Current Assets.

**Limetree Bay Services, LLC**
**Income Statement**
**For the month ending August 31, 2021**

| | August 1-31, 2021 Unaudited |
|---|---|
| **INCOME STATEMENT** | |
| 0000801054 TAXES-STATE UNEMPLOYMENT | 5,103.00 |
| **SALARIES AND WAGES** | **5,103.00** |
| | |
| 0000801051 EMPLOYEE BENEFITS-HOSPITALIZATION/MEDICAL | 0.00 |
| **BENEFITS** | **0.00** |
| | |
| 0000807020 TRAVEL AND LODGING | 0.00 |
| **MEALS & ENTERTAINMENT** | **0.00** |
| | |
| 0000801063 OTHER EMPLOYEE EXPENSE | 161.53 |
| **OTHER** | **161.53** |
| | |
| **EMPLOYEE EXPENSES** | **5,264.53** |
| | |
| 0000803010 ACCOUNTING FEES | 0.00 |
| **ACCOUNTING FEES** | **0.00** |
| **PROFESSIONAL FEES** | **0.00** |
| | |
| 0000806030 REPAIR & MAINTENANCE - GENERAL | 0.00 |
| **REPAIRS AND MAINTENANCE** | **0.00** |
| | |
| 0000808040 TELECOMMUNICATIONS EXPENSE-DATA | 0.00 |
| 0000808043 TELECOMMUNICATIONS EXP-CELLULAR | 0.00 |
| **COMMUNICATION EXPENSES** | **0.00** |
| **COMMUNICATIONS AND IT EXPENSES** | **0.00** |
| | |
| 0000813015 RENTALS-PASSENGER CARS | 0.00 |
| 0000813030 RENTS OFFICE & REAL ESTATE | 0.00 |
| 0000813035 RENTALS-EQUIPMENT OTHER | 0.00 |
| **RENTAL EXPENSES** | **0.00** |
| | |
| 0000812031 BOOKS/MANUALS/SUBSCRIPTIONS | 0.00 |
| **LICENSES, MEMBERSHIPS AND SUBSCRIPTIONS** | **0.00** |
| | |
| 0000820072 GAS & OIL CONSUMED-VEHICLES | 0.00 |
| **OFFICE AND MISC OPERATING EXPENSES** | **0.00** |
| | |
| **OTHER O&M** | **0.00** |
| | |
| **GENERAL ADMINISTRATION EXPENSE** | **5,264.53** |
| | |
| **\*\*TOTAL EXPENSES** | **5,264.53** |
| | |
| **\*\*\*OPERATING INCOME** | **(5,264.53)** |
| | |
| **\*\*\*\*NET INCOME (LOSS)** | **(5,264.53)** |

1537

Citibank, N.A.    292 / 00954
Sort 2224
New York, N.Y. 10043

001/R1/04F000

000
CITIBANK, N. A.
**Account**
     **0919**
**Statement Period**
**Aug 1 - Aug 31, 2021**
**Relationship Manager**
Lucken,Kent
(617) 717-9023
    Page 1 of 2

      **Limetree Bay Services, LLC**
      **842 W Sam Houston Parkway N Suite 4**
      **Houston            TX 77024**

## CitiBusiness® ACCOUNT AS OF AUGUST 31, 2021

**Relationship Summary:**

| | |
|---|---|
| **Checking** | **$3,203.97** |
| **Savings** | **----** |
| **Checking Plus** | **-----** |

## SUGGESTIONS AND RECOMMENDATIONS

Your Volcker Rule Disclosure and Important Notice Regarding Future Verbal and Written Communications
is now available to view online. Visit citi.com/accountagreementsandnotices and click on Citi Private
Bank Notices to view the notices. For questions or concerns, please contact your Private Banking team
for more information.

## SERVICE CHARGE SUMMARY FROM JULY 1, 2021 THRU JULY 31, 2021

| Type of Charge | No./Units | Price/Unit | Amount |
|---|---|---|---|
| **CITIBUSINESS CHECKING #**     **0919** | | | |
| Average Daily Collected Balance | | | $45,006.89 |
| DEPOSIT SERVICES | | | |
|   DEPOSIT ASSESSMENT | 45,006 | | 6.68 |
| **WAIVE | | | |
|   MONTHLY MAINTENANCE FEE | 1 | 24.0000 | 24.00 |
| **WAIVE | | | |
| TRANSFER SERVICES | | | |
|   INCOMING WIRE TRANSFER | 1 | 15.0000 | 15.00 |
| **WAIVE | | | |
| AUTOMATED CLEARING HOUSE (ACH) | | | |
|   ACH DEBIT RECEIVED | 6 | .1700 | 1.02 |
| **WAIVE | | | |
| **Total Charges for Services** | | | **$0.00** |
| Average collected balances | | | $45,006.89 |
| Balances eligible for Earnings Credit | | | $45,006.89 |
| Earnings Credit allowance at   0.20000% | | | $0.00 |
| Charges Subject to Earnings Credit | | | $0.00 |
| **Net Service Charge** | | | **$0.00** |

001/R1/04F000

Limetree Bay Services, LLC

Account  0919  Page 2 of 2
Statement Period:  Aug 1 - Aug 31, 2021

## CHECKING ACTIVITY

**CitiBusiness Checking**

| **0919** | | **Beginning Balance:** | | **$8,306.97** |
|---|---|---|---|---|
| | | **Ending Balance:** | | **$3,203.97** |

| Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 08/10 | OTHER WITHDRAWAL/ADJ | 5,103.00 | | 3,203.97 |

## CUSTOMER SERVICE INFORMATION

IF YOU HAVE QUESTIONS ON:     YOU CAN CALL:     YOU CAN WRITE:

Checking

800-870-1073
(For Speech and Hearing
Impaired Customers Only
TTY: 800-788-6775)

Citi Private Bank
Client Services
153 East 53rd Street 18th Floor
New York, New York 10022

For change in address, call your account officer or visit your branch.

© 2021 Citigroup Inc. Citibank, N.A. Member FDIC.
Citi with Arc Design and CitiBusiness are registered service marks of Citigroup Inc. or its affiliates.

**LIMETREE BAY SERVICES, LLC**
**LBS Checking Account** 110850
**Citi BA** 0919
**August 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 7/31/2021 | $ | 8,306.97 |
| Deposits | | $ | - |
| ACH / Debits | | $ | (5,103.00) |
| Wires | | $ | - |
| Capital Gain/Losses | | $ | - |
| Bank Charges | | $ | - |
| Dividends | | $ | - |
| Ending Balance per Bank | 8/31/2021 | $ | 3,203.97 |
| Opening Balance  per Book | 7/31/2021 | $ | 8,306.97 |
| Deposits | | $ | - |
| ACH / Debits | | $ | (5,103.00) |
| Wires | | $ | - |
| Capital Gain/Losses | | | - |
| Bank Charges | | $ | - |
| Dividends | | $ | - |
| Ending Balance per Book | 8/31/2021 | $ | 3,203.97 |
| Intransit Payroll Payment | | | |
| | | $ | 3,203.97 |
| | | $ | - |

| Reconciled by | George Southwell |
|---|---|
| Date: | 9/9/2021 |

| Approved by | |
|---|---|
| Date: | |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of August 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | AIG/National Union Fire Insurance Co | Combined Property | Primary $250M | 026-1001312 | 2021.09.01 |
| Limetree Bay Refining, LLC | Allianz Global Risk US Insurance Company | Combined Property | Primary $1.25BN | USN00023920 | 2021.12.01 |
| Limetree Bay Refining, LLC | Axis (Endorsement) | Builder's Risk | $50M | EAU646295/01/2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 92SRD102973 | 2021.09.01 |
| Limetree Bay Refining, LLC | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 42-PRP-312023-01 | 2021.09.01 |
| Limetree Bay Refining, LLC | CIN 318/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC3 | Convex Insurance UK Limited | Combined Property | Primary $1.25BN (reduced to a limit of $250 million on August 20, 2021) | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Services, LLC | Liberty | Worker's Comp | | WCC-641-444917-020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hannover Re/HDI Global Specialty SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Helvetia/Helvetia Swiss Insurance Co in Liechtenstein Ltd | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | HSIC/Houston Specialty Insurance Company | Combined Property | $150M XS 50M | PRO440373 | 2021.12.01 |
| Limetree Bay Refining, LLC | LSM/Liberty Specialty Markets Agency Limited | Combined Property | $100M XS $100M | LSMAEN143232A | 2021.12.01 |
| Limetree Bay Refining, LLC | Munich Re/Great Lakes Insurance SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | PICC/Guardian General Insurance | Combined Property | $100M XS $100M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | QBE/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Rokstone/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC | SCOR (3)/General Security Indemnity Company of Arizona | Combined Property | Primary $1.25BN | FA007943720201 | 2021.09.01 |
| Limetree Bay Refining, LLC | Sompo/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of August 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | Swiss Re/Westport Insurance Company | Combined Property | Primary $500M | OMP 2000425-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Validus Specialty/Lloyds of London | Combined Property | Primary $250M | AJH292893A20 | 2021.09.01 |
| Limetree Bay Refining, LLC | Westchester Surplus Lines Ins Co/Starr Technical Risks Agency, Inc | Combined Property | Primary $500M | EPRN18215263 | 2021.12.01 |
| Limetree Bay Refining, LLC | WRB/Guardian General Insurance | Combined Property | $50M XS $50M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Zurich/Zurich American Insurance Company | Combined Property | Primary $100M | OGR 1296457-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arcadian/Ark/Helix Bermuda | Builder's Risk | $25M xs $100M | NAMBM2100005 | 2022.06.01 |
| Limetree Bay Refining, LLC | Allianz | Refinery Excess Liability | $15M xs $53M | USL00880520 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz | Environmental Liability | $15M xs $85M | USL00873320 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty | Refinery Primary Liability | | AS6-641-444917-010 | 2021.12.01 |
| Limetree Bay Refining, LLC | Travelers Syndicate | Refinery Primary Liability | | ENCAS2000012 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer/Apollo | Refinery Excess Liability | $15M | ENCAS2000011 | 2021.12.01 |
| Limetree Bay Refining, LLC | Westchester | Refinery Excess Liability | $3M xs $25M | G71809808001 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Refinery Excess Liability | $25M xs $28M | 4380100 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer | Refinery Excess Liability | $11M po $22M xs $68M | ENCAS2000020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lex-London | Refinery Excess Liability | $11M po $22M xs $68M | 62785689 | 2021.12.01 |
| Limetree Bay Refining, LLC | OSL | Refinery Excess Liability | $10M xs $90M | EXS-154724-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | AXA XL Bermuda | Refinery Excess Liability | $25M xs $125M | XLUMB-229978 | 2021.12.01 |
| Limetree Bay Refining, LLC | OCIL Bermuda | Refinery Excess Liability | $25M po $40M xs $150M | U920968-0620 | 2021.12.01 |
| Limetree Bay Refining, LLC | Sompo Bermuda | Refinery Excess Liability | $15M po $40M xs $150M | EXC30001524800 | 2021.12.01 |
| Limetree Bay Refining, LLC | Argo Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | ARGO-CAS-OR-001484 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of August 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---------|---------|------|-----------------|---------------|-----------------|
| Limetree Bay Refining, LLC | Arch Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | URP0065257-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel Bermuda | Refinery Excess Liability | $12.5M po $50M xs $190M | 1454233-11636-UMB-2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hamilton Bermuda | Refinery Excess Liability | $7.5M po $50M xs $190M | CX20-9216 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chubb Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LBR-2144/XS004 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LSMAEC119907A | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $1M | ENVP0000296-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $9M xs $1M | ENVX0000256-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Environmental Liability | $25M xs $10M | 262704 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ascot | Environmental Liability | $25M xs $35M | ENXP2110000428-01 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel | Environmental Liability | $25M xs $60M | MKLV4EFX102259 | 2021.12.01 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $5M | 8261-8347 | 2022.04.20 |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000623319211 | 2022.04.20 |
| Limetree Bay Refining, LLC | Wesco Insurance Company | Executive Risk | $5M | EUW1909831 00 | 2022.04.20 |
| | | | | | |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000622392201 | 2027.04.20 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $5M | 8247-1536 | 2027.04.20 |
| Limetree Bay Refining, LLC | First Liberty Insurance Co | Auto Liability | $2M | AS6-641-444917-010 | 2021.12.01 |

**Notes:**
**(1)** As of August 31, 2021, insurance premiums are paid in full except for the items discussed in footnotes 2, 3 and 4.
**(2)** The auto liability policy will be audited during December 2021.  A premium will be due for autos assigned to LBR for the period from June 1, 2021 through December 31, 2021
**(3)** Audit premiums are expected to be invoiced for non-current insurance policies including the Builders All Risk policy and OCIP.  As of the filing of the monthly operating report, the audit amounts have not been determined.
**(4)** Premium obligations outstanding as of August 31, 2021 for LBR are as follows:
   a.  PFA Loan 2055:  Balance due for $266,145
   b.  PFA Loan 2303:  Balance due for $536,580

# UNITED STATES BANKRUPTCY COURT

SOUTHERN  DISTRICT OF  TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| In Re. LIMETREE BAY REFINING HOLDINGS, LLC | § | Case No.  21-32352 |
| | § | |
| | § | Lead Case No.  21-32351 |
| Debtor(s) | § | |
| | § | ☒ Jointly Administered |

## Monthly Operating Report

Chapter 11

Reporting Period Ended: 08/31/2021                          Petition Date: 07/12/2021

Months Pending: 2                                Industry Classification: | 3 | 2 | 4 | 1 |

Reporting Method:                Accrual Basis ◉          Cash Basis ○

Debtor's Full-Time Employees (current):                     0

Debtor's Full-Time Employees (as of date of order for relief):          0

**Supporting  Documentation**  (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

☐     Statement of cash receipts and disbursements
☐     Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
☐     Statement of operations (profit or loss statement)
☐     Accounts receivable aging
☐     Postpetition liabilities aging
☐     Statement of capital assets
☐     Schedule of payments to professionals
☐     Schedule of payments to insiders
☐     All bank statements and bank reconciliations for the reporting period
☐     Description of the assets sold or transferred and the terms of the sale or transfer

/s/ Elizabeth A. Green
Signature of Responsible Party

10/01/2021
Date

Elizabeth A. Green
Printed Name of Responsible Party

200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, FL 32801
Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

| Debtor's Name LIMETREE BAY REFINING HOLDINGS, LLC | | Case No. 21-32352 |
|---|---|---|

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a. Cash balance beginning of month | $0 | |
| b. Total receipts (net of transfers between accounts) | $0 | $0 |
| c. Total disbursements (net of transfers between accounts) | $0 | $0 |
| d. Cash balance end of month (a+b-c) | $0 | |
| e. Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f. Total disbursements for quarterly fee calculation (c+e) | $0 | $0 |

| Part 2: Asset and Liability Status<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month |
|---|---|
| a. Accounts receivable (total net of allowance) | $0 |
| b. Accounts receivable over 90 days outstanding (net of allowance) | $0 |
| c. Inventory   (Book ○  Market ○  Other ◉  (attach explanation)) | $0 |
| d Total current assets | $0 |
| e. Total assets | $0 |
| f. Postpetition payables (excluding taxes) | $0 |
| g. Postpetition payables past due (excluding taxes) | $0 |
| h. Postpetition taxes payable | $0 |
| i. Postpetition taxes past due | $0 |
| j. Total postpetition debt (f+h) | $0 |
| k. Prepetition secured debt | $0 |
| l. Prepetition priority debt | $0 |
| m. Prepetition unsecured debt | $0 |
| n. Total liabilities (debt) (j+k+l+m) | $0 |
| o. Ending equity/net worth (e-n) | $0 |

| Part 3: Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a. Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b. Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c. Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4: Income Statement (Statement of Operations)<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a. Gross income/sales (net of returns and allowances) | $0 | |
| b. Cost of goods sold (inclusive of depreciation, if applicable) | $0 | |
| c. Gross profit (a-b) | $0 | |
| d. Selling expenses | $0 | |
| e. General and administrative expenses | $0 | |
| f. Other expenses | $0 | |
| g. Depreciation and/or amortization (not included in 4b) | $0 | |
| h. Interest | $0 | |
| i. Taxes (local, state, and federal) | $0 | |
| j. Reorganization items | $0 | |
| k. Profit (loss) | $0 | $0 |

Debtor's Name LIMETREE BAY REFINING HOLDINGS, LLC                    Case No. 21-32352

## Part 5:  Professional Fees and Expenses

|   |   | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|
| a. | Debtor's professional fees & expenses (bankruptcy)  *Aggregate Total* | $0 | $0 | $0 | $0 |
|   | *Itemized Breakdown by Firm* | | | | |
|   | Firm Name / Role | | | | |
|   | i          Other | $0 | $0 | $0 | $0 |
|   | ii         Other | $0 | $0 | $0 | $0 |

|   |   | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy)  *Aggregate Total* | | | | |
|   | *Itemized Breakdown by Firm* | | | | |
|   | Firm Name / Role | | | | |
|   | i | | | | |
|   | ii | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | |

## Part 6:  Postpetition Taxes

|   |   | Current Month | Cumulative |
|---|---|---|---|
| a. | Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. | Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. | Postpetition employer payroll taxes accrued | $0 | $0 |
| d. | Postpetition employer payroll taxes paid | $0 | $0 |
| e. | Postpetition property taxes paid | $0 | $0 |
| f. | Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. | Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

## Part 7: Questionnaire - During this reporting period:

a. Were any payments made on prepetition debt?  (if yes, see Instructions)   Yes ○   No ●

b. Were any payments made outside the ordinary course of business without court approval?  (if yes, see Instructions)   Yes ○   No ●

c. Were any payments made to or on behalf of insiders?   Yes ○   No ●

d. Are you current on postpetition tax return filings?   Yes ●   No ○

e. Are you current on postpetition estimated tax payments?   Yes ●   No ○

f. Were all trust fund taxes remitted on a current basis?   Yes ●   No ○

g. Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions)   Yes ○   No ●

h. Were all payments made to or on behalf of professionals approved by the court?   Yes ○   No ○   N/A ●

i. Do you have:          Worker's compensation insurance?   Yes ○   No ●

          If yes, are your premiums current?   Yes ○   No ○   N/A ●   (if no, see Instructions)

          Casualty/property insurance?   Yes ○   No ●

          If yes, are your premiums current?   Yes ○   No ○   N/A ●   (if no, see Instructions)

          General liability insurance?   Yes ○   No ●

          If yes, are your premiums current?   Yes ○   No ○   N/A ●   (if no, see Instructions)

j. Has a plan of reorganization been filed with the court?   Yes ○   No ●

| | |
|---|---|
| Debtor's Name LIMETREE BAY REFINING HOLDINGS, LLC | Case No. 21-32352 |

k.  Has a disclosure statement been filed with the court?  Yes ○  No ●

l.  Are you current with quarterly U.S. Trustee fees as  Yes ●  No ○
    set forth under 28 U.S.C. § 1930?

**Part 8: Individual Chapter 11 Debtors (Only)**

| | | |
|---|---|---|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |

l.  Are you required to pay any Domestic Support Obligations as defined by 11   Yes ○  No ●
    U.S.C § 101(14A)?

m.  If yes, have you made all Domestic Support Obligation payments?  Yes ○  No ○  N/A ●

**Privacy Act Statement**

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107. The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6). The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith. This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law. Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records." See 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006). A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm. Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee. 11 U.S.C. § 1112(b)(4)(F).

**I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.**

/s/ Mark Shapiro                                    Mark Shapiro, Chief Restructuring Officer
_____                    _____
Signature of Responsible Party                      Printed Name of Responsible Party

Chief Restructuring Officer                         10/01/2021
_____                    _____
Title                                               Date

**CASE NAME:**        <u>Limetree Bay Refining Holdings, LLC</u>
**CASE NUMBER:**       <u>21-32352 (Jointly Administered under Lead Case No.: 21-32351)</u>

### Notes to the Monthly Operating Report

**General:**

On July 12, 2021 (the "Petition Date"), Limetree Bay Services, LLC ("Limetree") filed a voluntary petition with the United States Bankruptcy Court under Chapter 11 of the Bankruptcy Code [Case No.: 21-32351], along with five (5) affiliated entities (Affiliated Entities"). The debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067);  and Limetree Bay Refining Marketing, LLC (9222); (collectively, the "Debtors" or "Jointly Administered Debtors"). The bankruptcy filings of Limetree and the Affiliated Entities are jointly administered under Case No. 21-32351.

On or about June 17, 2021, the Jointly Administered Debtors retained B. Riley as chief restructuring officer ("CRO"). Mark Shapiro, as principal representative of B. Riley in its capacity, serves as CRO to the Jointly Administered Debtors.

Debtor-in-Possession Financial Statements - The accompanying schedules herein are unaudited, preliminary, and may not comply with generally accepted accounting principles in the United States of America ("U.S. GAAP") in all material respects.

The Monthly Operating Report ("MOR") is limited in scope, covers a limited time period, and has been prepared solely for the purpose of complying with the monthly reporting requirements of the Bankruptcy Court and the United States Trustee.  The information presented herein has not been subjected to all procedures that would typically be applied to financial information presented in accordance with U.S. GAAP. Upon the application of such procedures, the financial information could be subject to changes, and these changes could be material. The information furnished in this MOR includes normal recurring adjustments, but does not include all of the adjustments that would typically be made for interim financial statements in accordance with U.S. GAAP.

Reservation of Rights: Given the complexity of the Debtors' business, inadvertent errors, omissions or over inclusions may have occurred. Accordingly, the Debtors hereby reserve all of their rights to dispute the validity, status, enforceability, or executory nature of any claim amount, representation or other statement in this MOR and reserve the right to amend or supplement this MOR, if necessary, but shall be under no obligation to do so.

**August 1-31, 2021 Monthly Operating Report:**

**(1)**  The Reporting Period for this MOR is August 1-31, 2021.

**(2)**  The CRO, Mark Shapiro, has signed this MOR. Mr. Shapiro is an authorized signatory for the Debtor. In reviewing and signing the MOR, Mr. Shapiro has relied upon the efforts, statements and representations of various personnel employed by the Debtor and the Debtor's advisors. Mr. Shapiro has not (and could not have) personally verified the accuracy of each statement and representation contained in the MOR, including statements and representations concerning amounts owed to creditors, classification of such amounts, and other attached information.

**(3)**  MOR Parts 1, 2 and 4 - The Debtor is not an operating entity and therefore does not have any assets or liabilities.

**(4)**  MOR Part 2, k-m - Amounts are per the Debtor's bankruptcy schedules and are subject to adjustment once the claims process has been completed by the CRO, which includes, but is not limited to, examining, determining the validity of and objecting to any disputed, contingent, unliquidated and filed claims.

**(5)**  MOR Part 2, k-o - As of the time of this filing, the CRO has not determined with accuracy the amount of the secured and unsecured debt, both of which are components of ending net equity/net worth.  Accordingly, the CRO makes no representations regarding the accuracy of the form-calculated net equity/net worth of the Debtor.

**Attachments to MOR:**

**A.**  Schedule of Insurance in effect as of August 31, 2021 for the Jointly Administered Debtors

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of August 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | AIG/National Union Fire Insurance Co | Combined Property | Primary $250M | 026-1001312 | 2021.09.01 |
| Limetree Bay Refining, LLC | Allianz Global Risk US Insurance Company | Combined Property | Primary $1.25BN | USN00023920 | 2021.12.01 |
| Limetree Bay Refining, LLC | Axis (Endorsement) | Builder's Risk | $50M | EAU646295/01/2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 92SRD102973 | 2021.09.01 |
| Limetree Bay Refining, LLC | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 42-PRP-312023-01 | 2021.09.01 |
| Limetree Bay Refining, LLC | CIN 318/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC3 | Convex Insurance UK Limited | Combined Property | Primary $1.25BN (reduced to a limit of $250 million on August 20, 2021) | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Services, LLC | Liberty | Worker's Comp | | WCC-641-444917-020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hannover Re/HDI Global Specialty SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Helvetia/Helvetia Swiss Insurance Co in Liechtenstein Ltd | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | HSIC/Houston Specialty Insurance Company | Combined Property | $150M XS 50M | PRO440373 | 2021.12.01 |
| Limetree Bay Refining, LLC | LSM/Liberty Specialty Markets Agency Limited | Combined Property | $100M XS $100M | LSMAEN143232A | 2021.12.01 |
| Limetree Bay Refining, LLC | Munich Re/Great Lakes Insurance SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | PICC/Guardian General Insurance | Combined Property | $100M XS $100M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | QBE/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Rokstone/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC | SCOR (3)/General Security Indemnity Company of Arizona | Combined Property | Primary $1.25BN | FA007943720201 | 2021.09.01 |
| Limetree Bay Refining, LLC | Sompo/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of August 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | Swiss Re/Westport Insurance Company | Combined Property | Primary $500M | OMP 2000425-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Validus Specialty/Lloyds of London | Combined Property | Primary $250M | AJH292893A20 | 2021.09.01 |
| Limetree Bay Refining, LLC | Westchester Surplus Lines Ins Co/Starr Technical Risks Agency, Inc | Combined Property | Primary $500M | EPRN18215263 | 2021.12.01 |
| Limetree Bay Refining, LLC | WRB/Guardian General Insurance | Combined Property | $50M XS $50M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Zurich/Zurich American Insurance Company | Combined Property | Primary $100M | OGR 1296457-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arcadian/Ark/Helix Bermuda | Builder's Risk | $25M xs $100M | NAMBM2100005 | 2022.06.01 |
| Limetree Bay Refining, LLC | Allianz | Refinery Excess Liability | $15M xs $53M | USL00880520 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz | Environmental Liability | $15M xs $85M | USL00873320 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty | Refinery Primary Liability | | AS6-641-444917-010 | 2021.12.01 |
| Limetree Bay Refining, LLC | Travelers Syndicate | Refinery Primary Liability | | ENCAS2000012 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer/Apollo | Refinery Excess Liability | $15M | ENCAS2000011 | 2021.12.01 |
| Limetree Bay Refining, LLC | Westchester | Refinery Excess Liability | $3M xs $25M | G71809808001 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Refinery Excess Liability | $25M xs $28M | 4380100 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer | Refinery Excess Liability | $11M po $22M xs $68M | ENCAS2000020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lex-London | Refinery Excess Liability | $11M po $22M xs $68M | 62785689 | 2021.12.01 |
| Limetree Bay Refining, LLC | OSL | Refinery Excess Liability | $10M xs $90M | EXS-154724-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | AXA XL Bermuda | Refinery Excess Liability | $25M xs $125M | XLUMB-229978 | 2021.12.01 |
| Limetree Bay Refining, LLC | OCIL Bermuda | Refinery Excess Liability | $25M po $40M xs $150M | U920968-0620 | 2021.12.01 |
| Limetree Bay Refining, LLC | Sompo Bermuda | Refinery Excess Liability | $15M po $40M xs $150M | EXC30001524800 | 2021.12.01 |
| Limetree Bay Refining, LLC | Argo Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | ARGO-CAS-OR-001484 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of August 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | Arch Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | URP0065257-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel Bermuda | Refinery Excess Liability | $12.5M po $50M xs $190M | 1454233-11636-UMB-2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hamilton Bermuda | Refinery Excess Liability | $7.5M po $50M xs $190M | CX20-9216 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chubb Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LBR-2144/XS004 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LSMAEC119907A | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $1M | ENVP0000296-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $9M xs $1M | ENVX0000256-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Environmental Liability | $25M xs $10M | 262704 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ascot | Environmental Liability | $25M xs $35M | ENXP2110000428-01 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel | Environmental Liability | $25M xs $60M | MKLV4EFX102259 | 2021.12.01 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $5M | 8261-8347 | 2022.04.20 |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000623319211 | 2022.04.20 |
| Limetree Bay Refining, LLC | Wesco Insurance Company | Executive Risk | $5M | EUW1909831 00 | 2022.04.20 |
| | | | | | |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000622392201 | 2027.04.20 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $5M | 8247-1536 | 2027.04.20 |
| Limetree Bay Refining, LLC | First Liberty Insurance Co | Auto Liability | $2M | AS6-641-444917-010 | 2021.12.01 |

**Notes:**
**(1)** As of August 31, 2021, insurance premiums are paid in full except for the items discussed in footnotes 2, 3 and 4.
**(2)** The auto liability policy will be audited during December 2021. A premium will be due for autos assigned to LBR for the period from June 1, 2021 through December 31, 2021
**(3)** Audit premiums are expected to be invoiced for non-current insurance policies including the Builders All Risk policy and OCIP. As of the filing of the monthly operating report, the audit amounts have not been determined.
**(4)** Premium obligations outstanding as of August 31, 2021 for LBR are as follows:
    a. PFA Loan 2055: Balance due for $266,145
    b. PFA Loan 2303: Balance due for $536,580

# UNITED STATES BANKRUPTCY COURT

SOUTHERN   DISTRICT OF   TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| In Re. LIMETREE BAY REFINING HOLDINGS II, LLC | § | Case No.  21-32353 |
| | § | |
| | § | Lead Case No.  21-32351 |
| Debtor(s) | § | |
| | § | ☒ Jointly Administered |

## Monthly Operating Report

Chapter 11

Reporting Period Ended: 08/31/2021

Petition Date: 07/12/2021

Months Pending: 2

Industry Classification: | 3 | 2 | 4 | 1 |

Reporting Method:          Accrual Basis  ⦿          Cash Basis  ◯

Debtor's Full-Time Employees (current):                                    0

Debtor's Full-Time Employees (as of date of order for relief):        0

**Supporting  Documentation**  (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

☒    Statement of cash receipts and disbursements
☒    Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
☒    Statement of operations (profit or loss statement)
☐    Accounts receivable aging
☐    Postpetition liabilities aging
☐    Statement of capital assets
☐    Schedule of payments to professionals
☐    Schedule of payments to insiders
☒    All bank statements and bank reconciliations for the reporting period
☐    Description of the assets sold or transferred and the terms of the sale or transfer

/s/ Elizabeth A. Green
Signature of Responsible Party

10/01/2021
Date

Elizabeth A. Green
Printed Name of Responsible Party

200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, FL 32801
Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

| Debtor's Name | LIMETREE BAY REFINING HOLDINGS II, LLC | Case No. | 21-32353 |
|---|---|---|---|

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a. Cash balance beginning of month | $50 | |
| b. Total receipts (net of transfers between accounts) | $0 | $0 |
| c. Total disbursements (net of transfers between accounts) | $0 | $0 |
| d. Cash balance end of month (a+b-c) | $50 | |
| e. Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f. Total disbursements for quarterly fee calculation (c+e) | $0 | $0 |

| Part 2:  Asset and Liability Status (Not generally applicable to Individual Debtors. See Instructions.) | Current Month |
|---|---|
| a. Accounts receivable (total net of allowance) | $0 |
| b. Accounts receivable over 90 days outstanding (net of allowance) | $0 |
| c. Inventory     (Book ○  Market ○  Other ◉  (attach explanation)) | $0 |
| d Total current assets | $50 |
| e. Total assets | $1,118,862,006 |
| f. Postpetition payables (excluding taxes) | $0 |
| g. Postpetition payables past due (excluding taxes) | $0 |
| h. Postpetition taxes payable | $0 |
| i. Postpetition taxes past due | $0 |
| j. Total postpetition debt (f+h) | $0 |
| k. Prepetition secured debt | $779,383,442 |
| l. Prepetition priority debt | $0 |
| m. Prepetition unsecured debt | $0 |
| n. Total liabilities (debt) (j+k+l+m) | $779,383,442 |
| o. Ending equity/net worth (e-n) | $339,478,564 |

| Part 3:  Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a. Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b. Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c. Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4:  Income Statement (Statement of Operations) (Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a. Gross income/sales (net of returns and allowances) | $0 | |
| b. Cost of goods sold (inclusive of depreciation, if applicable) | $0 | |
| c. Gross profit (a-b) | $0 | |
| d. Selling expenses | $0 | |
| e. General and administrative expenses | $0 | |
| f. Other expenses | $0 | |
| g. Depreciation and/or amortization (not included in 4b) | $0 | |
| h. Interest | $0 | |
| i. Taxes (local, state, and federal) | $0 | |
| j. Reorganization items | $0 | |
| k. Profit (loss) | $0 | $0 |

Debtor's Name  LIMETREE BAY REFINING HOLDINGS II, LLC                    Case No.  21-32353

## Part 5:  Professional Fees and Expenses

| | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|
| a. | Debtor's professional fees & expenses (bankruptcy)  *Aggregate Total* | $0 | $0 | $0 | $0 |
| | *Itemized Breakdown by Firm* | | | | |
| | Firm Name  |  Role | | | | |
| i | | Other | $0 | $0 | $0 | $0 |
| ii | | Other | $0 | $0 | $0 | $0 |

| | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy)  *Aggregate Total* | | | | |
| | *Itemized Breakdown by Firm* | | | | |
| | Firm Name  |  Role | | | | |
| i | | | | | | |
| ii | | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | |

## Part 6:  Postpetition Taxes

| | Current Month | Cumulative |
|---|---|---|
| a. | Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. | Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. | Postpetition employer payroll taxes accrued | $0 | $0 |
| d. | Postpetition employer payroll taxes paid | $0 | $0 |
| e. | Postpetition property taxes paid | $0 | $0 |
| f. | Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. | Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

## Part 7: Questionnaire - During this reporting period:

a.  Were any payments made on prepetition debt?  (if yes, see Instructions)   Yes ○   No ⦿

b.  Were any payments made outside the ordinary course of business without court approval?  (if yes, see Instructions)   Yes ○   No ⦿

c.  Were any payments made to or on behalf of insiders?   Yes ○   No ⦿

d.  Are you current on postpetition tax return filings?   Yes ⦿   No ○

e.  Are you current on postpetition estimated tax payments?   Yes ⦿   No ○

f.  Were all trust fund taxes remitted on a current basis?   Yes ⦿   No ○

g.  Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions)   Yes ⦿   No ○

h.  Were all payments made to or on behalf of professionals approved by the court?   Yes ○   No ○   N/A ⦿

i.  Do you have:   Worker's compensation insurance?   Yes ⦿   No ○

      If yes, are your premiums current?   Yes ⦿   No ○   N/A ○   (if no, see Instructions)

      Casualty/property insurance?   Yes ⦿   No ○

      If yes, are your premiums current?   Yes ⦿   No ○   N/A ○   (if no, see Instructions)

      General liability insurance?   Yes ⦿   No ○

      If yes, are your premiums current?   Yes ⦿   No ○   N/A ○   (if no, see Instructions)

j.  Has a plan of reorganization been filed with the court?   Yes ○   No ⦿

| Debtor's Name | LIMETREE BAY REFINING HOLDINGS II, LLC | Case No. | 21-32353 |

k. Has a disclosure statement been filed with the court?     Yes ○  No ●

l. Are you current with quarterly U.S. Trustee fees as set forth under 28 U.S.C. § 1930?     Yes ●  No ○

## Part 8: Individual Chapter 11 Debtors (Only)

| | | |
|---|---|---|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |

l. Are you required to pay any Domestic Support Obligations as defined by 11 U.S.C § 101(14A)?     Yes ○  No ●

m. If yes, have you made all Domestic Support Obligation payments?     Yes ○  No ○  N/A ●

### Privacy Act Statement

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107. The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6). The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith. This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law. Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records." *See* 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006). A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm. Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee. 11 U.S.C. § 1112(b)(4)(F).

**<u>I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.</u>**

| | |
|---|---|
| Mark Shapiro | Mark Shapiro, Chief Restructuring Officer |
| Signature of Responsible Party | Printed Name of Responsible Party |
| Chief Restructuring Officer | 10/01/2021 |
| Title | Date |

**CASE NAME:**       **Limetree Bay Refining Holdings II, LLC**
**CASE NUMBER:**     **21-32353 (Jointly Administered under Lead Case No.: 21-32351)**

### Notes to the Monthly Operating Report

## General:

On July 12, 2021 (the "Petition Date"), Limetree Bay Services, LLC ("Limetree") filed a voluntary petition with the United States Bankruptcy Court under Chapter 11 of the Bankruptcy Code [Case No.: 21-32351], along with five (5) affiliated entities (Affiliated Entities"). The debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); and Limetree Bay Refining Marketing, LLC (9222); (collectively, the "Debtors" or "Jointly Administered Debtors"). The bankruptcy filings of Limetree and the Affiliated Entities are jointly administered under Case No. 21-32351.

On or about June 17, 2021, the Jointly Administered Debtors retained B. Riley as chief restructuring officer ("CRO"). Mark Shapiro, as principal representative of B. Riley in its capacity, serves as CRO to the Jointly Administered Debtors.

Debtor-in-Possession Financial Statements - The accompanying schedules herein are unaudited, preliminary, and may not comply with generally accepted accounting principles in the United States of America ("U.S. GAAP") in all material respects.

The Monthly Operating Report ("MOR") is limited in scope, covers a limited time period, and has been prepared solely for the purpose of complying with the monthly reporting requirements of the Bankruptcy Court and the United States Trustee. The information presented herein has not been subjected to all procedures that would typically be applied to financial information presented in accordance with U.S. GAAP. Upon the application of such procedures, the financial information could be subject to changes, and these changes could be material. The information furnished in this MOR includes normal recurring adjustments, but does not include all of the adjustments that would typically be made for interim financial statements in accordance with U.S. GAAP.

Reservation of Rights: Given the complexity of the Debtors' business, inadvertent errors, omissions or over inclusions may have occurred. Accordingly, the Debtors hereby reserve all of their rights to dispute the validity, status, enforceability, or executory nature of any claim amount, representation or other statement in this MOR and reserve the right to amend or supplement this MOR, if necessary, but shall be under no obligation to do so.

## August 1-31, 2021 Monthly Operating Report:

**(1)** The Reporting Period for this MOR is August 1-31, 2021, and the financial statements referenced herein cover the same time period.

**(2)** The Financial Statements are reported on an Accrual Basis. Cash Receipts & Disbursements are reported on a Cash Basis.

**(3)** The CRO, Mark Shapiro, has signed this MOR. Mr. Shapiro is an authorized signatory for the Debtor. In reviewing and signing the MOR, Mr. Shapiro has relied upon the efforts, statements and representations of various personnel employed by the Debtor and the Debtor's advisors. Mr. Shapiro has not (and could not have) personally verified the accuracy of each statement and representation contained in the MOR, including statements and representations concerning amounts owed to creditors, classification of such amounts, and other attached information.

**(4)** MOR Part 2, d - Total Current Assets includes Cash.

**(5)** MOR Part 2, e - Total Assets includes Current Assets and Investments in Limetree Bay Refining, LLC.

**(6)** MOR Part 2, f - Post-Petition Payables (excluding taxes) is comprised of Trade Payables. The net increase in total liabilities from the previous reporting period is $0.

**(7)** MOR Part 2, k-m - Amounts are per the Debtor's bankruptcy schedules and are subject to adjustment once the claims process has been completed by the CRO, which includes, but is not limited to, examining, determining the validity of and objecting to any disputed, contingent, unliquidated and filed claims.

**(8)** MOR Part 2, k-o - As of the time of this filing, the CRO has not determined with accuracy the amount of the secured and unsecured debt, both of which are components of ending net equity/net worth. Accordingly, the CRO makes no representations regarding the accuracy of the form-calculated net equity/net worth of the Debtor.

**(9)** MOR Part 7, i - See attached the schedule of insurance in effect for the Jointly Administered Debtors.

**Attachments to MOR:**

**A.** Financial Statements

**B.** Statement of Cash Receipts and Disbursements

**C.** Bank Account Schedule, bank statements and bank reconciliations

**D.** Schedule of Insurance in effect as of August 31, 2021 for the Jointly Administered Debtors

**STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS**
**FOR THE PERIOD BEGINNING** <u>August 1, 2021</u> **AND ENDING** <u>August 31,2021</u>

Name of Debtor: Limetree Bay Refining Holdings II, LLC      Case Number:   21-32353
Date of Petition:   July 12, 2021

| | CURRENT<br>MONTH | CUMULATIVE<br>PETITION TO DATE |
|---|---|---|
| **1. FUNDS AT BEGINNING OF PERIOD** | $          50.00 | $          50.00 |
| | | |
| **2. RECEIPTS:** | | |
| A. Cash Sales | - | - |
| Minus: Cash Refunds | - | - |
| Net Cash Sales | - | - |
| B. Accounts Receivable | - | - |
| C. Other Receipts | - | - |
| (If you receive rental income, you must attach a rent roll) | | |
| **3. TOTAL RECEIPTS** *(Lines 2A+2B+2C)* | - | - |
| **4. TOTAL FUNDS AVAILABLE FOR OPERATIONS** *(Line 1 + Line 3)* | 50.00 | 50.00 |
| | | |
| **5. DISBURSEMENTS** | | |
| A.   Advertising | - | - |
| B.   Bank Charges & Fees | - | - |
| C.   Contract Labor | - | - |
| D.   Fixed Asset Payments (not incl. in "N") | - | - |
| E.   Insurance | - | - |
| F.   Inventory Payments | - | - |
| G.   Leases & Contracts | - | - |
| H.   Manufacturing Supplies | - | - |
| I.   Office Supplies | - | - |
| J.   Payroll | - | - |
| K.   Professional Fees (Accounting & Legal) | - | - |
| L.   Rent | - | - |
| M.   Repairs & Maintenance | - | - |
| N.   Secured Creditor Payments | - | - |
| O.   Taxes Paid - Payroll | - | - |
| P.   Taxes Paid - Sales & Use | - | - |
| Q.   Taxes Paid - Other | - | - |
| R.   Telephone | - | - |
| S.   Travel & Entertainment | - | - |
| T.   U.S. Trustee | - | - |
| U.   Utilities | - | - |
| V.   Vehicle Expenses | - | - |
| W.   Other Operating Expenses | - | - |
| **6. TOTAL DISBURSEMENTS** *(Sum of 5A thru W)* | - | - |
| **7. ENDING BALANCE** *(Line 4 Minus Line 6)* | $          50.00 | $          50.00 |

## STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS (CONT'D.)

### Detail of Other Receipts and Other Disbursements

**OTHER RECEIPTS:**

Describe Each Item of Other Receipt and List Amount of Receipt.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
|  | $            - | $            - |
|  |             - |             - |
|  |             - |             - |
|  |             - |             - |
|  |             - |             - |
|  |             - |             - |
|  |             - |             - |
|  |             - |             - |
|  |             - |             - |
|  |             - |             - |
|  |             - |             - |
|  |             - |             - |
|  | $            - | $            - |

**"Other Receipts" includes Loans from Insiders and other sources (i.e. Officer/Owner, related parties directors, related corporations, etc.).  Please describe below:**

| Loan Amount | Source of Funds | Purpose | Repayment Schedule |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

**OTHER DISBURSEMENTS:**

Describe Each Item of Other Disbursement and List Amount of Disbursement.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
|  | $            - | $            - |
|  |             - |             - |
|  |             - |             - |
|  |             - |             - |
|  |             - |             - |
|  |             - |             - |
|  |             - |             - |
|  |             - |             - |
|  |             - |             - |
|  |             - |             - |
|  |             - |             - |
|  |             - |             - |
|  | $            - | $            - |

**Limetree Bay Refining Holdings II, LLC**
**Balance Sheet**
**August 31, 2021**

| | 8/31/2021 |
|---|---|
| **TOTAL ASSETS** | |
| | |
| 0000110850 Checking Account - Citibank, N.A. - 6869787150 | 50.00 |
| **\*CASH & CASH EQUIVALENTS** | **50.00** |
| **\*\*TOTAL CURRENT ASSETS** | **50.00** |
| | |
| | |
| 0000190201 INVESTMENT IN LIMETREE BAY REFINING | 1,118,861,955.78 |
| **INVESTMENT IN LIMETREE BAY REFINING** | **1,118,861,955.78** |
| | |
| **\*OTHER ASSETS** | **1,118,861,955.78** |
| | |
| **\*\*TOTAL NON-CURRENT ASSETS** | **1,118,861,955.78** |
| | |
| **\*\*\*\* TOTAL ASSETS** | **1,118,862,005.78** |
| | |
| ================================= | |
| **TOTAL LIABILITIES AND MEMBERS' EQUITY** | |
| | |
| **TOTAL LIABILITIES** | |
| | |
| 0000231510 ACCRUED INTEREST-DEBT | (4,165,237.44) |
| 0000231525 ACCRUED INTRST - DEBT - AFFIL - TRANCHE D TERM DBT | (225,379.53) |
| 0000231526 ACCRUED INTRST - DEBT - AFFIL - SUBORDINATED NOTE | (6,994,698.79) |
| **\*ACCRUED INTEREST** | **(11,385,315.76)** |
| | |
| 0000235244 TRANCHE D TERM DEBT - OID - AFFILIATE - CURRENT | 186,911.79 |
| 0000235245 TRANCHE D TERM DEBT - DIC - CURRENT | 32,160.30 |
| **TRANCHE D TERM DEBT-CURRENT** | **219,072.09** |
| | |
| 0000235249 TERM LOAN - OID - CURRENT | 3,034,693.04 |
| **OTHER TERM DEBT-CURRENT** | **3,034,693.04** |
| | |
| **TERM DEBT-CURRENT** | **3,253,765.13** |
| | |
| 0000235214 DEFERRED FINANCE COSTS - CURRENT | 1,822,321.86 |
| **DEFERRED FINANCE COSTS-CURRENT** | **1,822,321.86** |
| | |
| **OTHER LONG TERM DEBT-CURRENT PORTION** | **5,076,086.99** |
| | |
| **\*CURRENT PORTION OF LONG-TERM DEBT** | **5,076,086.99** |
| **\*\*TOTAL CURRENT LIABILITIES** | **(6,309,228.77)** |

**Limetree Bay Refining Holdings II, LLC**
**Balance Sheet**
**August 31, 2021**

|                                                          | 8/31/2021          |
|----------------------------------------------------------|--------------------|
| 0000260049 NOTE PAYABLE – AFFILIATE – OID                | 9,894,142.33       |
| 0000260050 Note Payable - Affiliate                      | (612,165,523.54)   |
| **NOTE PAYABLE - AFFILIATE**                             | **(602,271,381.21)** |
|                                                          |                    |
| 0000260114 TRANCHE D TERM DEBT                           | (35,469,567.49)    |
| 0000260117 TRANCHE D TERM DEBT – AFFILIATE – OID         | 659,496.23         |
| 0000260118 TRANCHE D TERM DEBT - DEBT ISSUE COSTS        | 112,114.37         |
| **TRANCHE D TERM DEBT**                                  | **(34,697,956.89)** |
|                                                          |                    |
| 0000260055 AFFILIATE TERM DEBT - LONG TERM               | (17,734,783.74)    |
| **AFFILIATE TERM DEBT**                                  | **(17,734,783.74)** |
|                                                          |                    |
| 0000260010 LONG TERM DEBT - TERM                         | (315,697,992.06)   |
| 0000260120 TERM LOAN DEBT - OID - LONG TERM              | 10,632,139.07      |
| **OTHER TERM DEBT**                                      | **(305,065,852.99)** |
|                                                          |                    |
| **TERM DEBT**                                            | **(357,498,593.62)** |
|                                                          |                    |
| 0000260070 FINANCE COST - DEFERRED CONTRA                | 6,377,232.92       |
| **DEFERRED FINANCE COSTS**                               | **6,377,232.92**   |
|                                                          |                    |
| **OTHER LONG TERM DEBT**                                 | **(351,121,360.70)** |
|                                                          |                    |
| **\*LONG-TERM DEBT, NET CRRNT PRTN & ISSNCE CST**        | **(953,392,741.91)** |
|                                                          |                    |
| **\*\*TOTAL NON-CURRENT LIABILITIES**                    | **(953,392,741.91)** |
|                                                          |                    |
| **\*\*\* TOTAL LIABILITIES**                             | **(959,701,970.68)** |
|                                                          |                    |
| **TOTAL MEMBERS' EQUITY**                                |                    |
|                                                          |                    |
| 0000320020 MEMBERS ADDITIONAL INVESTMENT                 | (178,709,809.90)   |
| **\*MEMBERS' ADDITIONAL INVESTMENT**                     | **(178,709,809.90)** |
| **\*\*MEMBERS' EQUITY**                                  | **(178,709,809.90)** |
|                                                          |                    |
| **\*\*PROFIT/LOSS IN CURRENT YEAR**                      | **19,549,774.80**  |
|                                                          |                    |
| **\*\*\* TOTAL MEMBERS' EQUITY**                         | **(159,160,035.10)** |
|                                                          |                    |
| **\*\*\*\* TOTAL LIABILITIES & MEMBERS' EQUITY**         | **(1,118,862,005.78)** |

**Limetree Bay Refining Holdings II, LLC**
**Income Statement**
**For the month ending August 31, 2021**

| | August 1-31, 2021<br>Unaudited |
|---|---|
| **INCOME STATEMENT** | |
| | |
| 0000818010 INTEREST EXPENSE | 0.00 |
| 0000818027 AFFILIATED INTEREST EXPENSE - TRANCHE D TERM DEBT | 0.00 |
| 0000818028 AFFILIATED INTEREST EXPENSE - SUBORDINATED NOTE | 0.00 |
| **\*\*INTEREST AND FINANCING EXPENSE** | **0.00** |
| | |
| **\*\*\*TOTAL NON-OPERATING INCOME (EXPENSE):** | **0.00** |
| | |
| **\*\*\*\*NET INCOME (LOSS)** | **0.00** |

Citibank, N.A.    292 / 00954                                                              001/R1/04F000
Sort 2224
New York, N.Y. 10043

                                                                          000
                                                                          CITIBANK, N. A.
                                                                          **Account**
                                                                                7150
        LIMETREE BAY REFINING HOLDINGS II,                                **Statement Period**
        LLC (SPRINGING)                                                   **Aug 1 - Aug 31, 2021**
        842 W. SAM HOUSTON PARKWAY N. SUITE                               **Relationship Manager**
        HOUSTON              TX 77024                                     Lucken,Kent
                                                                          (617) 717-9023
                                                                                      Page 1 of 2

## CitiBusiness® ACCOUNT AS OF AUGUST 31, 2021

### Relationship Summary:

| | |
|---|---|
| **Checking** | **$50.00** |
| **Savings** | ----- |
| **Checking Plus** | ----- |

## SUGGESTIONS AND RECOMMENDATIONS

Your Volcker Rule Disclosure and Important Notice Regarding Future Verbal and Written Communications is now available to view online. Visit citi.com/accountagreementsandnotices and click on Citi Private Bank Notices to view the notices. For questions or concerns, please contact your Private Banking team for more information.

## SERVICE CHARGE SUMMARY FROM JULY 1, 2021 THRU JULY 31, 2021

| Type of Charge | No./Units | Price/Unit | Amount |
|---|---|---|---|
| **CITIBUSINESS CHECKING #    7150** | | | |
| Average Daily Collected Balance | | | $50.00 |
| DEPOSIT SERVICES | | | |
|    MONTHLY MAINTENANCE FEE | 1 | 24.0000 | 24.00 |
| **WAIVE | | | |
| **Total Charges for Services** | | | **$0.00** |
| Average collected balances | | | $50.00 |
| Balances eligible for Earnings Credit | | | $0.00 |
| Earnings Credit allowance at  0.00000% | | | $0.00 |
| Charges Subject to Earnings Credit | | | $0.00 |
| **Net Service Charge** | | | **$0.00** |

Avg. Collected Non-Interest Bearing Balances must be at least $5,000.00 to generate Earnings Credit

## CHECKING ACTIVITY

### CitiBusiness Checking

| | | |
|---|---|---|
| 7150 | **Beginning Balance:** | $50.00 |
| | **Ending Balance:** | $50.00 |

**LIMETREE BAY REFINING HOLDINGS II, LLC**
**B & P Checking** 110850
**Citi BA 7150**
**August 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 7/31/2021 | $ | 50.00 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Capital Gain/Losses | | $ | - |
| Bank Charges | | $ | - |
| Dividends | | $ | - |
| Ending Balance per Bank | 8/31/2021 | $ | 50.00 |
| Opening Balance  per Book | 7/31/2021 | $ | 50.00 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Capital Gain/Losses | | | - |
| Bank Charges | | $ | - |
| Dividends | | $ | - |
| Ending Balance per Book | 8/31/2021 | $ | 50.00 |
| | | $ | 50.00 |
| | | $ | - |

| Reconciled by | George Southwell |
|---|---|
| Date: | 9/1/2021 |
| Approved by | |
| Date: | |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of August 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | AIG/National Union Fire Insurance Co | Combined Property | Primary $250M | 026-1001312 | 2021.09.01 |
| Limetree Bay Refining, LLC | Allianz Global Risk US Insurance Company | Combined Property | Primary $1.25BN | USN00023920 | 2021.12.01 |
| Limetree Bay Refining, LLC | Axis (Endorsement) | Builder's Risk | $50M | EAU646295/01/2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 92SRD102973 | 2021.09.01 |
| Limetree Bay Refining, LLC | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 42-PRP-312023-01 | 2021.09.01 |
| Limetree Bay Refining, LLC | CIN 318/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC3 | Convex Insurance UK Limited | Combined Property | Primary $1.25BN (reduced to a limit of $250 million on August 20, 2021) | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Services, LLC | Liberty | Worker's Comp | | WCC-641-444917-020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hannover Re/HDI Global Specialty SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Helvetia/Helvetia Swiss Insurance Co in Liechtenstein Ltd | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | HSIC/Houston Specialty Insurance Company | Combined Property | $150M XS 50M | PRO440373 | 2021.12.01 |
| Limetree Bay Refining, LLC | LSM/Liberty Specialty Markets Agency Limited | Combined Property | $100M XS $100M | LSMAEN143232A | 2021.12.01 |
| Limetree Bay Refining, LLC | Munich Re/Great Lakes Insurance SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | PICC/Guardian General Insurance | Combined Property | $100M XS $100M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | QBE/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Rokstone/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC | SCOR (3)/General Security Indemnity Company of Arizona | Combined Property | Primary $1.25BN | FA007943720201 | 2021.09.01 |
| Limetree Bay Refining, LLC | Sompo/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of August 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | Swiss Re/Westport Insurance Company | Combined Property | Primary $500M | OMP 2000425-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Validus Specialty/Lloyds of London | Combined Property | Primary $250M | AJH292893A20 | 2021.09.01 |
| Limetree Bay Refining, LLC | Westchester Surplus Lines Ins Co/Starr Technical Risks Agency, Inc | Combined Property | Primary $500M | EPRN18215263 | 2021.12.01 |
| Limetree Bay Refining, LLC | WRB/Guardian General Insurance | Combined Property | $50M XS $50M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Zurich/Zurich American Insurance Company | Combined Property | Primary $100M | OGR 1296457-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arcadian/Ark/Helix Bermuda | Builder's Risk | $25M xs $100M | NAMBM2100005 | 2022.06.01 |
| Limetree Bay Refining, LLC | Allianz | Refinery Excess Liability | $15M xs $53M | USL00880520 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz | Environmental Liability | $15M xs $85M | USL00873320 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty | Refinery Primary Liability | | AS6-641-444917-010 | 2021.12.01 |
| Limetree Bay Refining, LLC | Travelers Syndicate | Refinery Primary Liability | | ENCAS2000012 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer/Apollo | Refinery Excess Liability | $15M | ENCAS2000011 | 2021.12.01 |
| Limetree Bay Refining, LLC | Westchester | Refinery Excess Liability | $3M xs $25M | G71809808001 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Refinery Excess Liability | $25M xs $28M | 4380100 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer | Refinery Excess Liability | $11M po $22M xs $68M | ENCAS2000020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lex-London | Refinery Excess Liability | $11M po $22M xs $68M | 62785689 | 2021.12.01 |
| Limetree Bay Refining, LLC | OSL | Refinery Excess Liability | $10M xs $90M | EXS-154724-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | AXA XL Bermuda | Refinery Excess Liability | $25M xs $125M | XLUMB-229978 | 2021.12.01 |
| Limetree Bay Refining, LLC | OCIL Bermuda | Refinery Excess Liability | $25M po $40M xs $150M | U920968-0620 | 2021.12.01 |
| Limetree Bay Refining, LLC | Sompo Bermuda | Refinery Excess Liability | $15M po $40M xs $150M | EXC30001524800 | 2021.12.01 |
| Limetree Bay Refining, LLC | Argo Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | ARGO-CAS-OR-001484 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of August 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | Arch Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | URP0065257-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel Bermuda | Refinery Excess Liability | $12.5M po $50M xs $190M | 1454233-11636-UMB-2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hamilton Bermuda | Refinery Excess Liability | $7.5M po $50M xs $190M | CX20-9216 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chubb Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LBR-2144/XS004 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LSMAEC119907A | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $1M | ENVP0000296-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $9M xs $1M | ENVX0000256-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Environmental Liability | $25M xs $10M | 262704 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ascot | Environmental Liability | $25M xs $35M | ENXP2110000428-01 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel | Environmental Liability | $25M xs $60M | MKLV4EFX102259 | 2021.12.01 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $5M | 8261-8347 | 2022.04.20 |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000623319211 | 2022.04.20 |
| Limetree Bay Refining, LLC | Wesco Insurance Company | Executive Risk | $5M | EUW1909831 00 | 2022.04.20 |
| | | | | | |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000622392201 | 2027.04.20 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $5M | 8247-1536 | 2027.04.20 |
| Limetree Bay Refining, LLC | First Liberty Insurance Co | Auto Liability | $2M | AS6-641-444917-010 | 2021.12.01 |

**Notes:**
**(1)** As of August 31, 2021, insurance premiums are paid in full except for the items discussed in footnotes 2, 3 and 4.
**(2)** The auto liability policy will be audited during December 2021.  A premium will be due for autos assigned to LBR for the period from June 1, 2021 through December 31, 2021
**(3)** Audit premiums are expected to be invoiced for non-current insurance policies including the Builders All Risk policy and OCIP.  As of the filing of the monthly operating report, the audit amounts have not been determined.
**(4)** Premium obligations outstanding as of August 31, 2021 for LBR are as follows:
   a. PFA Loan 2055:  Balance due for $266,145
   b. PFA Loan 2303:  Balance due for $536,580

# UNITED STATES BANKRUPTCY COURT

SOUTHERN  DISTRICT OF  TEXAS

HOUSTON DIVISION

In Re. LIMETREE BAY REFINING, LLC
§
§                     Case No.  21-32354
§
§                     Lead Case No.  21-32351
Debtor(s)
§
☒ Jointly Administered

## Monthly Operating Report
Chapter 11

Reporting Period Ended: 08/31/2021                    Petition Date: 07/12/2021

Months Pending: 2                                     Industry Classification: | 3 | 2 | 4 | 1 |

Reporting Method:              Accrual Basis ◉          Cash Basis ○

Debtor's Full-Time Employees (current):                    0

Debtor's Full-Time Employees (as of date of order for relief):    0


**Supporting  Documentation**  (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

☒    Statement of cash receipts and disbursements
☒    Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
☒    Statement of operations (profit or loss statement)
☐    Accounts receivable aging
☐    Postpetition liabilities aging
☐    Statement of capital assets
☐    Schedule of payments to professionals
☐    Schedule of payments to insiders
☒    All bank statements and bank reconciliations for the reporting period
☐    Description of the assets sold or transferred and the terms of the sale or transfer


/s/ Elizabeth A. Green                                Elizabeth A. Green
Signature of Responsible Party                        Printed Name of Responsible Party

10/01/2021                                            200 S. Orange Avenue
Date                                                  SunTrust Center, Suite 2300
                                                      Orlando, FL 32801
                                                      Address


STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R.
§ 1320.4(a)(2) applies.

UST Form 11-MOR (06/07/2021)                    1

Debtor's Name LIMETREE BAY REFINING, LLC                    Case No. 21-32354

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a. Cash balance beginning of month | $3,477,123 | |
| b. Total receipts (net of transfers between accounts) | $16,787,908 | $23,648,708 |
| c. Total disbursements (net of transfers between accounts) | $8,589,399 | $14,298,293 |
| d. Cash balance end of month (a+b-c) | $11,675,631 | |
| e. Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f. Total disbursements for quarterly fee calculation (c+e) | $8,589,399 | $14,298,293 |

| Part 2: Asset and Liability Status (Not generally applicable to Individual Debtors. See Instructions.) | Current Month | |
|---|---|---|
| a. Accounts receivable (total net of allowance) | $246,811,286 | |
| b. Accounts receivable over 90 days outstanding (net of allowance) | $202,993,668 | |
| c. Inventory    (Book ◉  Market ◯  Other ◯   (attach explanation)) | $23,384,246 | |
| d. Total current assets | $287,285,168 | |
| e. Total assets | $3,659,162,745 | |
| f. Postpetition payables (excluding taxes) | $2,161,013 | |
| g. Postpetition payables past due (excluding taxes) | $0 | |
| h. Postpetition taxes payable | $0 | |
| i. Postpetition taxes past due | $0 | |
| j. Total postpetition debt (f+h) | $2,161,013 | |
| k. Prepetition secured debt | $1,160,056,795 | |
| l. Prepetition priority debt | $0 | |
| m. Prepetition unsecured debt | $271,768,751 | |
| n. Total liabilities (debt) (j+k+l+m) | $1,433,986,558 | |
| o. Ending equity/net worth (e-n) | $2,225,176,186 | |

| Part 3: Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a. Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b. Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c. Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4: Income Statement (Statement of Operations) (Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a. Gross income/sales (net of returns and allowances) | $0 | |
| b. Cost of goods sold (inclusive of depreciation, if applicable) | $51 | |
| c. Gross profit (a-b) | $-51 | |
| d. Selling expenses | $14,628,997 | |
| e. General and administrative expenses | $3,580,498 | |
| f. Other expenses | $0 | |
| g. Depreciation and/or amortization (not included in 4b) | $1,527,493 | |
| h. Interest | $0 | |
| i. Taxes (local, state, and federal) | $0 | |
| j. Reorganization items | $0 | |
| k. Profit (loss) | $-19,737,038 | $-72,173,539 |

UST Form 11-MOR (06/07/2021)                    2

Debtor's Name LIMETREE BAY REFINING, LLC                    Case No. 21-32354

## Part 5:  Professional Fees and Expenses

|  |  |  | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| a. | Debtor's professional fees & expenses (bankruptcy)  *Aggregate Total* | | | | | |
| | *Itemized Breakdown by Firm* | | | | | |
| | | Firm Name | Role | | | |
| | i | | | | | |
| | ii | | | | | |

|  |  |  | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy)  *Aggregate Total* | | $0 | $0 | $0 | $2,311,681 |
| | *Itemized Breakdown by Firm* | | | | | |
| | | Firm Name | Role | | | |
| | i | Cleary Gottlieb Steen and Ham | Other | $0 | $0 | $0 | $591,113 |
| | ii | Parella Weinberg Partners LP | Financial Professional | $0 | $0 | $0 | $350,412 |
| | iii | Baker Botts LLP | Other | $0 | $0 | $0 | $575,000 |
| | iv | Akin Gump Strauss Hauer and F | Other | $0 | $0 | $0 | $750,000 |
| | v | Gray Reed and McGraw | Other | $0 | $0 | $0 | $45,157 |
| c. | All professional fees and expenses (debtor & committees) | | $0 | $0 | $0 | $2,311,681 |

## Part 6:  Postpetition Taxes

|  |  | Current Month | Cumulative |
|---|---|---|---|
| a. | Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. | Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. | Postpetition employer payroll taxes accrued | $0 | $0 |
| d. | Postpetition employer payroll taxes paid | $0 | $0 |
| e. | Postpetition property taxes paid | $0 | $0 |
| f. | Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. | Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

## Part 7: Questionnaire - During this reporting period:

| a. | Were any payments made on prepetition debt?  (if yes, see Instructions) | Yes ○  No ◉ |
|---|---|---|
| b. | Were any payments made outside the ordinary course of business without court approval?  (if yes, see Instructions) | Yes ○  No ◉ |
| c. | Were any payments made to or on behalf of insiders? | Yes ○  No ◉ |
| d. | Are you current on postpetition tax return filings? | Yes ◉  No ○ |
| e. | Are you current on postpetition estimated tax payments? | Yes ◉  No ○ |
| f. | Were all trust fund taxes remitted on a current basis? | Yes ◉  No ○ |
| g. | Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions) | Yes ◉  No ○ |
| h. | Were all payments made to or on behalf of professionals approved by the court? | Yes ○  No ○  N/A ◉ |

Debtor's Name  LIMETREE BAY REFINING, LLC                                    Case No.  21-32354

| | | |
|---|---|---|
| i. | Do you have: | Worker's compensation insurance? | Yes ⦿  No ◯ |

i.  Do you have:        Worker's compensation insurance?                    Yes ⦿  No ◯
                          If yes, are your premiums current?                  Yes ◯  No ◯  N/A ◯  (if no, see Instructions)
                          Casualty/property insurance?                        Yes ⦿  No ◯
                          If yes, are your premiums current?                  Yes ◯  No ◯  N/A ◯  (if no, see Instructions)
                          General liability insurance?                        Yes ⦿  No ◯
                          If yes, are your premiums current?                  Yes ⦿  No ◯  N/A ◯  (if no, see Instructions)
j.  Has a plan of reorganization been filed with the court?                  Yes ◯  No ⦿
k.  Has a disclosure statement been filed with the court?                    Yes ◯  No ⦿
l.  Are you current with quarterly U.S. Trustee fees as                      Yes ⦿  No ◯
    set forth under 28 U.S.C. § 1930?

## Part 8: Individual Chapter 11 Debtors (Only)

| | | |
|---|---|---|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |
| l. | Are you required to pay any Domestic Support Obligations as defined by 11 U.S.C § 101(14A)? | Yes ◯  No ⦿ |
| m. | If yes, have you made all Domestic Support Obligation payments? | Yes ◯  No ◯  N/A ⦿ |

| Debtor's Name | LIMETREE BAY REFINING, LLC | Case No. 21-32354 |

**Privacy Act Statement**

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107.  The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6).  The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith.  This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law.  Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records."  *See* 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006).  A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm.  Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee.  11 U.S.C. § 1112(b)(4)(F).

**I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.**

Mark Shapiro
_____
Signature of Responsible Party

Chief Restructuring Officer
_____
Title

Mark Shapiro, Chief Restructuring Officer
_____
Printed Name of Responsible Party

10/01/2021
_____
Date

| CASE NAME: | **Limetree Bay Refining, LLC** |
|---|---|
| CASE NUMBER: | **21-32354 (Jointly Administered under Lead Case No.: 21-32351)** |

## Notes to the Monthly Operating Report

### General:

On July 12, 2021 (the "Petition Date"), Limetree Bay Services, LLC ("Limetree") filed a voluntary petition with the United States Bankruptcy Court under Chapter 11 of the Bankruptcy Code [Case No.: 21-32351], along with five (5) affiliated entities (Affiliated Entities). The debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); and Limetree Bay Refining Marketing, LLC (9222); (collectively, the "Debtors" or "Jointly Administered Debtors"). The bankruptcy filings of Limetree and the Affiliated Entities are jointly administered under Case No. 21-32351.

On or about June 17, 2021, the Jointly Administered Debtors retained B. Riley as chief restructuring officer ("CRO"). Mark Shapiro, as principal representative of B. Riley in its capacity, serves as CRO to the Jointly Administered Debtors.

Debtor-in-Possession Financial Statements - The accompanying schedules herein are unaudited, preliminary, and may not comply with generally accepted accounting principles in the United States of America ("U.S. GAAP") in all material respects.

The Monthly Operating Report ("MOR") is limited in scope, covers a limited time period, and has been prepared solely for the purpose of complying with the monthly reporting requirements of the Bankruptcy Court and the United States Trustee. The information presented herein has not been subjected to all procedures that would typically be applied to financial information presented in accordance with U.S. GAAP. Upon the application of such procedures, the financial information could be subject to changes, and these changes could be material. The information furnished in this MOR includes normal recurring adjustments, but does not include all of the adjustments that would typically be made for interim financial statements in accordance with U.S. GAAP.

Reservation of Rights: Given the complexity of the Debtors' business, inadvertent errors, omissions or over inclusions may have occurred. Accordingly, the Debtors hereby reserve all of their rights to dispute the validity, status, enforceability, or executory nature of any claim amount, representation or other statement in this MOR and reserve the right to amend or supplement this MOR, if necessary, but shall be under no obligation to do so.

## August 1-31, 2021 Monthly Operating Report:

**(1)** The Reporting Period for this MOR is August 1-31, 2021, and the financial statements referenced herein cover the same time period.

**(2)** The Financial Statements are reported on an Accrual Basis. Cash Receipts & Disbursements are reported on a Cash Basis.

**(3)** The CRO, Mark Shapiro, has signed this MOR. Mr. Shapiro is an authorized signatory for the Debtor. In reviewing and signing the MOR, Mr. Shapiro has relied upon the efforts, statements and representations of various personnel employed by the Debtor and the Debtor's advisors. Mr. Shapiro has not (and could not have) personally verified the accuracy of each statement and representation contained in the MOR, including statements and representations concerning amounts owed to creditors, classification of such amounts, and other attached information.

**(4)** MOR Part 2, d - Total Current Assets includes Cash, Accounts Receivable, Inventory and Prepaid Expenses.

**(5)** MOR Part 2, e - Total Assets includes Current Assets, Property, Plant, and Equipment, Investments, and Security Deposits.

**(6)** MOR Part 2, f - Post-Petition Payables (excluding taxes) is comprised of Trade Payables. The net increase in total liabilities from the previous reporting period is $39,983,798.10. This amount includes a DIP credit facility for $9.5 million received on August 31, 2021.

**(7)** MOR Part 2, k-m - Amounts are per the Debtor's bankruptcy schedules and are subject to adjustment once the claims process has been completed by the CRO, which includes, but is not limited to, examining, determining the validity of and objecting to any disputed, contingent, unliquidated and filed claims.

**(8)** MOR Part 2, k-o - As of the time of this filing, the CRO has not determined with accuracy the amount of the secured and unsecured debt, both of which are components of ending net equity/net worth. Accordingly, the CRO makes no representations regarding the accuracy of the form-calculated net equity/net worth of the Debtor.

**(9)** MOR Part 7, i - See attached the schedule of insurance in effect for the Jointly Administered Debtors.

### Attachments to MOR:

**A.** Financial Statements

**B.** Statement of Cash Receipts and Disbursements

**C.** Bank Account Schedule, bank statements and bank reconciliations

**D.** Schedule of Insurance in effect as of August 31, 2021 for the Jointly Administered Debtors

## STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS
### FOR THE PERIOD BEGINNING <u>August 1, 2021</u> AND ENDING <u>August 31,2021</u>

Name of Debtor: Limetree Bay Refining, LLC      Case Number: 21-32354
Date of Petition:   July 12, 2021

| | | CURRENT MONTH | | CUMULATIVE PETITION TO DATE |
|---|---|---|---|---|
| **1. FUNDS AT BEGINNING OF PERIOD** | $ | 3,477,122.57 | $ | 2,325,215.84 |
| **2. RECEIPTS:** | | | | |
| A. Cash Sales | | 116,603.47 | | 216,603.47 |
| Minus: Cash Refunds | | - | | - |
| Net Cash Sales | | - | | - |
| B. Accounts Receivable | | - | | - |
| C. Other Receipts | | 16,671,304.46 | | 23,432,104.46 |
| (If you receive rental income, you must attach a rent roll) | | | | |
| **3. TOTAL RECEIPTS** *(Lines 2A+2B+2C)* | | 16,787,907.93 | | 23,648,707.93 |
| **4. TOTAL FUNDS AVAILABLE FOR OPERATIONS** *(Line 1 + Line 3)* | | 20,265,030.50 | | 25,973,923.77 |
| **5. DISBURSEMENTS** | | | | |
| A.  Advertising | | - | | - |
| B.  Bank Charges & Fees | | 549.48 | | 864.94 |
| C.  Contract Labor | | 444,824.46 | | 628,221.72 |
| D.  Fixed Asset Payments (not incl. in "N") | | - | | - |
| E.  Insurance | | 1,314,212.37 | | 1,633,265.65 |
| F.  Inventory Payments | | 384,837.38 | | 766,533.23 |
| G.  Leases & Contracts | | - | | - |
| H.  Manufacturing Supplies | | - | | - |
| I.  Office Supplies | | - | | - |
| J.  Payroll | | 8,398.90 | | 8,398.90 |
| K.  Professional Fees (Accounting & Legal) | | - | | 2,311,681.31 |
| L.  Rent | | - | | 4,693.00 |
| M.  Repairs & Maintenance | | 3,013,936.31 | | 3,898,113.67 |
| N.  Secured Creditor Payments | | - | | 496,359.33 |
| O.  Taxes Paid - Payroll | | - | | - |
| P.  Taxes Paid - Sales & Use | | - | | - |
| Q.  Taxes Paid - Other | | - | | - |
| R.  Telephone | | - | | 11,970.42 |
| S.  Travel & Entertainment | | - | | - |
| T.  U.S. Trustee | | - | | - |
| U.  Utilities | | - | | 487.20 |
| V.  Vehicle Expenses | | - | | - |
| W.  Other Operating Expenses | | 3,422,640.53 | | 4,537,703.33 |
| **6. TOTAL DISBURSEMENTS** *(Sum of 5A thru W)* | | 8,589,399.43 | | 14,298,292.70 |
| **7. ENDING BALANCE** *(Line 4 Minus Line 6)* | $ | **11,675,631.07** | $ | **11,675,631.07** |

**STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS (CONT'D.)**

**Detail of Other Receipts and Other Disbursements**

**OTHER RECEIPTS:**

Describe Each Item of Other Receipt and List Amount of Receipt.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| DIP Financing | $ 19,500,000.00 | $ 25,000,000.00 |
| Voided Pre-Petition Checks | - | 4,800.00 |
| Transfer to/from Limetree Bay Refining Marketing, LLC | - | 3,899,500.00 |
| Transfer to/from Limetree Bay Refining Operating, LLC | (2,828,696.94) | (5,472,196.94) |
| Dividends | 1.40 | 1.40 |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | $ 16,671,304.46 | $ 23,432,104.46 |

**"Other Receipts" includes Loans from Insiders and other sources (i.e. Officer/Owner, related parties directors, related corporations, etc.).  Please describe below:**

| Loan Amount | Source of Funds | Purpose | Repayment Schedule |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**OTHER DISBURSEMENTS:**

Describe Each Item of Other Disbursement and List Amount of Disbursement.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| Settlement Payment - Limetree Bay Terminals, LLC | $ - | $ 132,554.56 |
| Tank Storage Fees | - | 450,000.00 |
| Employee Expense Reimbursments | - | 9,958.47 |
| Agent Fee | 50,000.00 | 112,500.00 |
| U.S. Customs Fee | 16.93 | 16.93 |
| DIP Financing Costs | 93,875.00 | 93,875.00 |
| Employee Benefits | 76,211.65 | 76,211.65 |
| Information Technology | 121,149.37 | 121,149.37 |
| Relocation Costs | 544,043.00 | 544,043.00 |
| Site Services | 476,119.33 | 936,169.10 |
| Transfer to/from Limetree Bay Terminal Services | 2,061,225.25 | 2,061,225.25 |
| | - | - |
| | $ 3,422,640.53 | $ 4,537,703.33 |

**Limetree Bay Refining, LLC**
**Balance Sheet**
**August 31, 2021**

| | 8/31/2021 |
|---|---|
| **TOTAL ASSETS** | |
| | |
| 0000110600 LBR OPERATING ACCOUNT - ORIENTAL - 8202040267 | 2,121,620.78 |
| 0000110610 LBR PAYROLL ACCOUNT - ORIENTAL - 8202040268 | 130.44 |
| 0000110690 LBR CONSTRUCTION ACCOUT - DB- SE1972-001.10 | 50,346.43 |
| 0000110770 LBR Chapter 11 Debtor in Possession - EWB 55-00017759 | 9,500,000.00 |
| **\*CASH & CASH EQUIVALENTS** | **11,672,097.65** |
| | |
| 0000110700 LBR DEBT SERVICE RESERVE ACCOUNT- SE 1972-001.11 | 3,533.42 |
| **\*RESTRICTED CASH - SHORT TERM** | **3,533.42** |
| | |
| 0000120001 A/R TRADE RECEIVABLE RECONCILIATION | 244,144.69 |
| **ACCOUNTS RECEIVABLE, TRADE** | **244,144.69** |
| **\*ACCOUNTS RECEIVABLE, NET** | **244,144.69** |
| | |
| 0000150040 A/R AFFILIATE | 2,036,581.73 |
| 0000150500 Intercompany A/R | 244,530,559.25 |
| **\*ACCOUNTS RECEIVABLE - AFFILIATE** | **246,567,140.98** |
| | |
| 0000130013 PURCHASED FINISHED PRODUCTS | 191,228.91 |
| 0000130050 WAREHOUSE INVENTORIES | 23,800,321.47 |
| 0000130100 INVENTORY CLEARING | (607,304.36) |
| **\*INVENTORY** | **23,384,246.02** |
| | |
| 0000140010 PPD INSURANCE-OTHER | 2,139,897.93 |
| 0000140011 PPD INSURANCE-ALL RISK PROPERTY | 313,580.62 |
| 0000140013 PPD INSURANCE-WORKERS COMPENSATION | 29,063.92 |
| 0000140014 PPD INSURANCE-BUSINESS INTERUPPTION | 89,932.69 |
| 0000140016 PPD INSURANCE - EXECUTIVE RISK (D&O,CRIME,FID,K&R) | 336,464.67 |
| 0000140018 PPD INSURANCE - AUTO LIABILITY | 5,132.85 |
| **PREPAID INSURANCE** | **2,914,072.68** |
| | |
| 0000140070 PREPAID-LICENSES | 613,815.44 |
| **PREPAID LICENSES** | **613,815.44** |
| | |
| 0000140100 PREPAID - RENT | 52,930.14 |
| **PREPAID RENT** | **52,930.14** |
| | |
| 0000140060 PPD - VENDOR PREPAYMENTS | 1,369,608.71 |
| 0000140110 PPD SUNDRY | 463,578.71 |
| **PREPAID OTHER** | **1,833,187.42** |
| **\*PREPAID EXPENSES AND OTHER** | **5,414,005.68** |
| | |
| **\*\*TOTAL CURRENT ASSETS** | **287,285,168.44** |

**Limetree Bay Refining, LLC**
**Balance Sheet**
**August 31, 2021**

| | 8/31/2021 |
|---|---|
| | |
| 0000160041 COST-BUILDINGS | 97,725,637.29 |
| 0000160051 ENVIRONMENTAL FACILITIES | 11,954,645.38 |
| 0000160061 REFINERY FACILITIES | 2,637,764.24 |
| **FACILITIES, BUILDINGS AND IMPROVEMENTS** | **112,318,046.91** |
| | |
| 0000160071 VEHICLES, TRAILERS, ETC. | 3,936,457.65 |
| 0000160141 GAS TURBINES & WASTE HEAT BOILERS | 20,221,878.73 |
| 0000160151 MACHINERY & EQUIPMENT | 212,895.00 |
| **MACHINERY AND EQUIPMENT** | **24,371,231.38** |
| | |
| 0000160111 COMPUTER SOFTWARE | 659,599.83 |
| **COMPUTERS, FURNITURE AND FIXTURES** | **659,599.83** |
| | |
| 0000160250 FIXED ASSETS - NON RECONCILIATION | 1,775,223.60 |
| **OTHER** | **1,775,223.60** |
| | |
| **PP&E - GROSS** | **139,124,101.72** |
| | |
| | |
| 0000170041 ACCUM DEPR - BUILDINGS | (21,184,740.89) |
| 0000170051 ACCUM DEPR - ENVIRONMENTAL FACILITIES | (2,321,702.29) |
| 0000170061 ACCUM DEPR  - REFINERY FACILITIES | (395,664.64) |
| **FACILITIES, BLDNGS & IMPRVMNTS - ACCUM DEPREC** | **(23,902,107.82)** |
| | |
| 0000170071 ACCUM DEPR - VEHICLES, TRAILERS, ETC. | (2,289,817.30) |
| 0000170141 ACCUM DEPR - GAS TURBINES & WHB | (2,616,091.62) |
| 0000170151 ACCUM DEPR - MACHINERY & EQUIPMENT | (8,870.63) |
| **MACHINERY AND EQUIPMENT - ACCUM DEPREC** | **(4,914,779.55)** |
| | |
| 0000170111 ACCUM DEPR - COMPUTER SOFTWARE | (238,188.84) |
| **COMPUTERS, FURNITURE & FIXTURES - ACCUM DEPR** | **(238,188.84)** |
| | |
| 0000170250 ACCUM DEPR-NON RECONCILIATION | 0.00 |
| **OTHER - ACCUMULATED DEPRECIATION** | **0.00** |
| | |
| **PP&E - ACCUMULATED DEPRECIATION** | **(29,055,076.21)** |
| | |
| **PROPERTY, PLANT & EQUIPMENT, NET** | **110,069,025.51** |
| | |
| 0000160010 CIP (ASSET UNDER CONSTRUCTION) | 3,261,036,578.69 |
| 0000160011 CIP NON - RECONCILIATION | 0.00 |
| **CONSTRUCTION IN PROGRESS** | **3,261,036,578.69** |

**Limetree Bay Refining, LLC**
**Balance Sheet**
**August 31, 2021**

| | 8/31/2021 |
|---|---|
| *TOTAL PROPERTY, PLANT AND EQUIPMENT, NET | 3,371,105,604.20 |
| | |
| 0000190300 Investment in subsidiary - LBRM | 754,975.47 |
| **INVESTMENT IN SUBSIDIARY - LBRM** | **754,975.47** |
| | |
| 0000190050 SECURITY DEPOSITS | 16,996.53 |
| **OTHER ASSETS** | **16,996.53** |
| | |
| *OTHER ASSETS | 771,972.00 |
| | |
| **TOTAL NON-CURRENT ASSETS | 3,371,877,576.20 |
| | |
| **** TOTAL ASSETS | 3,659,162,744.64 |

==================================
**TOTAL LIABILITIES AND MEMBERS' EQUITY**

**TOTAL LIABILITIES**

| | |
|---|---|
| 0000200010 A/P TRADE RECONCILIATION | (184,438,128.04) |
| 0000200020 GR/IR | (3,309,295.16) |
| 0000200050 A/P ADJUSTMENTS RECLASS | (27,925.00) |
| 0000200099 AP - OTHER | 50,582.00 |
| **\*ACCOUNTS PAYABLE TRADE** | **(187,724,766.20)** |
| | |
| 0000235101 A/P AFFILIATES – ARCLIGHT CAPITAL PARTNERS, LLC | (187,500.00) |
| 0000235500 Intercompany A/P | (137,737,668.30) |
| **\*AFFILIATE PAYABLE, NET** | **(137,925,168.30)** |
| | |
| 0000231510 ACCRUED INTEREST-DEBT | (8,531,611.16) |
| 0000231525 ACCRUED INTRST - DEBT - AFFIL - TRANCHE D TERM DBT | (461,630.29) |
| **\*ACCRUED INTEREST** | **(8,993,241.45)** |
| | |
| 0000200023 GR/IR PRODUCT (MANUAL) | 421,528.06 |
| 0000200040 VOUCHER ACCRUALS | (21,644,021.67) |
| 0000200060 COMDATA | (157,589.31) |
| 0000235040 ACCRUED LIABILITIES | (781,911.95) |
| 0000235045 CONTRACTOR PAYABLE - COMPLETION PROGRAM | (40,023,300.00) |
| 0000235060 GR/IR WAREHOUSE iNVENTORY | 18,730.83 |
| **\*ACCRUED LIABILITIES** | **(62,166,564.04)** |
| | |
| 0000235030 ACCRUED OTHER INSURANCE | (19,151.17) |
| **ACCRUED OTHER INSURANCE PREMIUMS** | **(19,151.17)** |

**Limetree Bay Refining, LLC**
**Balance Sheet**
**August 31, 2021**

| | 8/31/2021 |
|---|---|
| 0000235253 DIP Loan - AMP Upside Credit Facility | (15,617,566.81) |
| DIP Loan | (9,500,000.00) |
| **OTHER LONG TERM DEBT-CURRENT PORTION** | **(25,117,566.81)** |
| | |
| **\*CURRENT PORTION OF LONG-TERM DEBT** | **(25,117,566.81)** |
| | |
| 0000231520 SHORT TERM IRS - MARK TO MARKET INTEREST | (3,603,459.54) |
| **\*OTHER CURRENT LIABILITIES** | **(3,603,459.54)** |
| | |
| **\*\*TOTAL CURRENT LIABILITIES** | **(425,549,917.51)** |
| | |
| | |
| 0000260114 TRANCHE D TERM DEBT | (108,975,019.87) |
| **TRANCHE D TERM DEBT** | **(108,975,019.87)** |
| | |
| 0000260055 AFFILIATE TERM DEBT - LONG TERM | (36,325,006.62) |
| **AFFILIATE TERM DEBT** | **(36,325,006.62)** |
| | |
| 0000260010 LONG TERM DEBT - TERM | (610,317,723.97) |
| **OTHER TERM DEBT** | **(610,317,723.97)** |
| | |
| **TERM DEBT** | **(755,617,750.46)** |
| **OTHER LONG TERM DEBT** | **(755,617,750.46)** |
| | |
| **\*LONG-TERM DEBT, NET CRRNT PRTN & ISSNCE CST** | **(755,617,750.46)** |
| | |
| 0000260030 LONG TERM IRS - MARK TO MARKET INTEREST | (2,197,587.43) |
| **\*OTHER LONG-TERM LIABILITIES** | **(2,197,587.43)** |
| | |
| **\*\*TOTAL NON-CURRENT LIABILITIES** | **(757,815,337.89)** |
| | |
| **\*\*\* TOTAL LIABILITIES** | **(1,183,365,255.40)** |
| | |
| | |
| **TOTAL MEMBERS' EQUITY** | |
| | |
| 0000320010 MEMBERS INITIAL INVESTMENT | (384,868.09) |
| **\*MEMBERS' INITIAL EQUITY** | **(384,868.09)** |
| | |
| 0000320020 MEMBERS ADDITIONAL INVESTMENT | (2,785,649,860.03) |
| 0000320050 PAID IN CAPITAL - COMMON EQUITY | (4,513,333.30) |
| **\*MEMBERS' ADDITIONAL INVESTMENT** | **(2,790,163,193.33)** |

**Limetree Bay Refining, LLC**
**Balance Sheet**
**August 31, 2021**

|  | 8/31/2021 |
|---|---|
| **\*\*MEMBERS' EQUITY** | **(2,790,548,061.42)** |
|  |  |
| 0000380020 RETAINED  EARNINGS | 115,181,380.27 |
| **\*\*RETAINED EARNINGS / ACCUMULATED DEFICIT** | **115,181,380.27** |
|  |  |
| **\*\*PROFIT/LOSS IN CURRENT YEAR** | **199,569,191.91** |
|  |  |
| **\*\*\* TOTAL MEMBERS' EQUITY** | **(2,475,797,489.24)** |
|  |  |
| **\*\*\*\* TOTAL LIABILITIES & MEMBERS' EQUITY** | **(3,659,162,744.64)** |

**Limetree Bay Refining, LLC**
**Income Statement**
**For the month ending August 31, 2021**

| | August 1-31, 2021 Unaudited |
|---|---|
| **INCOME STATEMENT** | |
| | |
| 0000400032 ACCRUED SALES AFFILIATES-PETROLEUM PRODUCTS | 0.00 |
| *REFINERY REVENUES | **0.00** |
| **TOTAL REVENUES | **0.00** |
| | |
| 0000520070 INVENTORY WRITEDOWN | 50.94 |
| 0000520100 INVENTORY MOVE PRICE DIFFERENCE | 0.00 |
| 0000520130 OTHER COST OF SALES | 0.00 |
| 0000520150 PRODUCT LOSSES | 0.00 |
| 0000520160 VESSEL DEMURRAGE | 0.00 |
| **COST OF GOODS SOLD | **50.94** |
| | |
| 0000601051 EMPLOYEE BENEFITS-HOSPITALIZATION/MEDICAL | (39,253.29) |
| **BENEFITS** | **(39,253.29)** |
| | |
| 0000607010 BUSINESS MEALS & ENTERTAINMENT | 0.00 |
| 0000607020 TRAVEL AND LODGING | 6.20 |
| **MEALS & ENTERTAINMENT** | **6.20** |
| | |
| 0000601059 CONFERENCES & SEMINARS | 0.00 |
| 0000601060 REGISTRATIONS-TRAINING & CONTINUING ED | 0.00 |
| 0000601064 EDUCATIONAL ASSISTANCE | 1,717.21 |
| 0000601067 TRAINING MATERIALS & SUPPLIES | 2,267.33 |
| **TRAINING & EDUCATION** | **3,984.54** |
| | |
| 0000601058 UNIFORMS AND LAUNDRY | 0.00 |
| 0000601063 OTHER EMPLOYEE EXPENSE | 0.00 |
| 0000601068 HOUSEHOLD FURNISHINGS | 0.00 |
| 0000601074 OUTSIDE HOUSING | 0.00 |
| 0000601076 EMPLOYEE-RECRUITING FEES (NON-AGENCY) | 0.00 |
| 0000601078 SAFETY EXPENSE | 0.00 |
| **OTHER** | **0.00** |
| | |
| **EMPLOYEE EXPENSES** | **(35,262.55)** |
| | |
| 0000614016 INS-AUTO LIABILITY | (2,527.57) |
| **AUTO PHYSICAL DAMAGE** | **(2,527.57)** |
| | |
| **INSURANCE** | **(2,527.57)** |
| | |
| 0000603011 CONSULTING FEES - NON-OPERATING | 97,800.00 |
| **CONSULTING FEES** | **97,800.00** |

**Limetree Bay Refining, LLC**
**Income Statement**
**For the month ending August 31, 2021**

| | August 1-31, 2021<br>Unaudited |
|---|---|
| 0000603012 ENGINEERING FEES | 0.00 |
| **ENGINEERING FEES** | **0.00** |
| | |
| 0000603014 MEDICAL FEES | 0.00 |
| **MEDICAL FEES** | **0.00** |
| | |
| 0000603030 INSPECTION FEES-QUANTITY | 0.00 |
| 0000603031 INSPECTION FEES-QUALITY | 0.00 |
| **INSPECTION FEES** | **0.00** |
| | |
| **PROFESSIONAL FEES** | **97,800.00** |
| | |
| 0000608015 POWER PLANT FUEL - EXTERNAL | 0.00 |
| **FUEL EXPENSE** | **0.00** |
| | |
| 0000602017 SPILL CLEAN UP | 0.00 |
| **ENVIRONMENTAL** | **0.00** |
| | |
| 0000603020 PINNACLE - REPAIRS & MAINTENANCE | 7,664.98 |
| 0000606030 REPAIR & MAINTENANCE - GENERAL | 1,072,817.77 |
| 0000606034 R&M - Fixed Equipment Work | 8,454,593.00 |
| 0000606035 R&M – Instrument, Electrical and Analyzer Work | 331,782.78 |
| 0000606036 R&M – Rotating Equipment | 0.00 |
| 0000606037 R&M – Scaffold, Asbestos, Insulation and Painting | 0.00 |
| 0000606038 R&M – Outage Related Work | 289,644.52 |
| 0000606039 R&M – Maintenance Support Services, Other | 3,123,012.83 |
| 0000606040 TANK CLEANING | 0.00 |
| **REPAIRS AND MAINTENANCE** | **13,279,515.88** |
| | |
| 0000608040 TELECOMMUNICATIONS EXPENSE-DATA | 8,560.56 |
| 0000608042 TELECOMMUNICATIONS EXPENSE-VOICE | 0.00 |
| 0000608043 TELECOMMUNICATIONS EXP-CELLULAR | 0.00 |
| **COMMUNICATION EXPENSES** | **8,560.56** |
| | |
| 0000604011 HARDWARE - DESKTOP PURCHASES | 0.00 |
| 0000604012 HARDWARE - DCS PURCHASES | 0.00 |
| 0000604014 HARDWARE - DESKTOP MAINTENANCE | 0.00 |
| 0000604017 HARDWARE - NETWORK PURCHASES | 0.00 |
| 0000604019 HARDWARE - SERVER MAINTENANCE | 1,903.37 |
| 0000604020 HARDWARE - NETWORK MAINTENANCE | 0.00 |
| 0000604030 SOFTWARE - SERVER PURCHASES | 19,624.91 |
| 0000604031 SOFTWARE - MAINFRAME MAINTENANCE | 0.00 |
| 0000604032 SOFTWARE - MAINFRAME PURCHASES | 38,807.83 |
| 0000604033 SOFTWARE - SERVER MAINTENANCE | 979.88 |
| 0000604034 SOFTWARE - DESKTOP MAINTENANCE | 2,280.75 |

**Limetree Bay Refining, LLC**
**Income Statement**
**For the month ending August 31, 2021**

| | August 1-31, 2021 |
| --- | --- |
| | **Unaudited** |
| 0000604035 SOFTWARE - DESKTOP PURCHASES | 5,250.00 |
| 0000604036 SOFTWARE - NETWORK PURCHASES | 0.00 |
| 0000604037 SOFTWARE - NETWORK MAINTENANCE | 2,706.66 |
| 0000604060 COMPUTER EQUIPMENT UNDER $5000 | 0.00 |
| **IT EXPENSES** | **71,553.40** |
| | |
| **COMMUNICATIONS AND IT EXPENSES** | **80,113.96** |
| | |
| 0000602040 PINNACLE OVERHEAD COSTS | 153,571.03 |
| 0000602041 PINNACLE - NON REPAIRS & MAINTENANCE | 0.00 |
| 0000602042 SHORT TERM - TEMPORARY OUTSIDE CONTRACTORS | 0.00 |
| 0000602044 PINNACLE - SECURITY | 8,794.26 |
| 0000602047 OUTSIDE CONTRACTOR - NON-R&M | 0.00 |
| **CONTRACTOR OVERHEAD** | **162,365.29** |
| | |
| 0000602060 WASTE DISPOSAL - NON-ENVIRONMENTAL | 0.00 |
| 0000602061 WASTE DISPOSAL - RECYCLING | 0.00 |
| 0000602065 OUTSIDE LABOR/SERVICES - HOURLY | 0.00 |
| 0000602080 TEMPORARY OUTSIDE LABOR / SERVICES | 0.00 |
| 0000602090 CONTRACT SERVICES - LUMP SUM | 0.00 |
| 0000602091 WASTE WATER TREATMENT PLANT - OUTSIDE CONTRACTORS | 0.00 |
| **OUTSIDE SERVICES** | **0.00** |
| | |
| 0000608030 UTILITY EXPENSE - WATER | 0.00 |
| **UTILITIES** | **0.00** |
| | |
| 0000613015 RENTALS-PASSENGER CARS | 309.44 |
| 0000613030 RENTS OFFICE & REAL ESTATE | 0.00 |
| 0000613035 RENTALS-OTHER | 0.00 |
| **RENTAL EXPENSES** | **309.44** |
| | |
| 0000612020 FINES & PENALTY | 0.00 |
| **TAXES AND FEES** | **0.00** |
| | |
| 0000612025 LICENSES AND PERMITS-OTHER | 21,012.81 |
| 0000612030 MEMBERSHIPS/DUES | 5,333.34 |
| 0000612031 BOOKS/MANUALS/SUBSCRIPTIONS | 3,334.03 |
| **LICENSES, MEMBERSHIPS AND SUBSCRIPTIONS** | **29,680.18** |
| | |
| 0000611017 COMMUNITY RELATIONS EVENTS | 0.00 |
| **CONTRIBUTIONS AND DONATIONS** | **0.00** |
| | |
| 0000605010 OFFICE SUPPLY | 760.40 |
| 0000605011 POSTAGE | 26.35 |
| 0000605020 OPERATING SUPPLY | 0.00 |

**Limetree Bay Refining, LLC**
**Income Statement**
**For the month ending August 31, 2021**

| | August 1-31, 2021 Unaudited |
|---|---|
| 0000605021 INVENTORY VARIANCES | 0.00 |
| 0000606010 MAINTENANCE SUPPLIES | 188,826.57 |
| 0000606011 AUTO REPAIRS | 40,190.92 |
| 0000606012 TRASH REMOVAL | 62,022.88 |
| 0000606013 R&M - OUTSIDE CONTRACTORS (NON-PINNACLE) | 552,149.81 |
| 0000606016 SMALL TOOLS | 435.32 |
| 0000606019 EQUIPMENT RENTALS - MAINTENANCE | 0.00 |
| 0000606020 PEST CONTROL | 10,515.00 |
| 0000606021 FACILITY SERVICES - GROUNDS, ELEV OPS, LANDSCAPING | 0.00 |
| 0000606023 VILLAGE - FOOD SERVICE | 162,564.37 |
| 0000606024 LAUNDRY SERVICES | 0.00 |
| 0000620010 FREIGHT EXPENSE | 0.00 |
| 0000620020 AIR FREIGHT | 0.00 |
| 0000620030 DEMURRAGE EXPENSE THIRD PARTY-NON ST&T | 0.00 |
| 0000620040 FREIGHT EXPENSE ENVIRONMENTAL | 0.00 |
| 0000620050 CUSTOMS & BROKERAGE CHARGES | 0.00 |
| 0000620060 PRODUCT CONSUMED-GASOLINE & OIL | 0.00 |
| 0000620070 VEHICLE TIRES & TUBES | 0.00 |
| 0000620072 GAS & OIL CONSUMED-VEHICLES | (2,855.07) |
| 0000630010 MARINE PRESERVATION / NATIONAL RESPONSE CORP | 0.00 |
| 0000630020 CHEMICALS EXP | 2,366.00 |
| 0000630030 CATALYST | 0.00 |
| 0000630040 ADDITIVES EXPENSE | 0.00 |
| 0000630070 MISC EXP - OPERATING EXPENSE | 0.00 |
| 0000640000 SHARED SERVICES CLEARING | 0.00 |
| **OFFICE AND MISC OPERATING EXPENSES** | **1,017,002.55** |
| | |
| 0000640050 MISC EXP - NON OPERATING EXPENSE | 0.00 |
| **OTHER MISC O&M** | **0.00** |
| | |
| **OTHER O&M** | **14,568,987.30** |
| | |
| **OPERATING EXPENSES** | **14,628,997.18** |
| | |
| 0000801021 UNIT BASED COMPENSATION | 0.00 |
| 0000801050 INS-WORKERS COMP | 7,265.98 |
| **SALARIES AND WAGES** | **7,265.98** |
| | |
| 0000801057 RELOCATION | (1,592.00) |
| **TRAVEL** | **(1,592.00)** |
| | |
| 0000807010 BUSINESS MEALS & ENTERTAINMENT | 517.50 |
| 0000807020 TRAVEL AND LODGING | 8,561.55 |
| **MEALS & ENTERTAINMENT** | **9,079.05** |

**Limetree Bay Refining, LLC**
**Income Statement**
**For the month ending August 31, 2021**

| | August 1-31, 2021 Unaudited |
|---|---|
| 0000801059 SEMINARS/SYMPOSIUMS,CONFERENCES/CONVENT | 0.00 |
| 0000801060 REGISTRATIONS-TRAINING AND TUITION | 0.00 |
| 0000801067 TRAINING MATERIALS & SUPPLIES | 0.00 |
| **TRAINING & EDUCATION** | **0.00** |
| | |
| 0000801058 UNIFORMS AND LAUNDRY | 0.00 |
| 0000801068 HOUSEHOLD FURNISHINGS | 0.00 |
| 0000801071 EMPLOYEE ACTIVITIES | 0.00 |
| 0000801074 OUTSIDE HOUSING | 0.00 |
| 0000801075 EMPLOYEE BACKGROUND SCREENING | 0.00 |
| 0000801076 EMPLOYEE-RECRUITING | 0.00 |
| 0000801078 SAFETY EXPENSE | 325.74 |
| **OTHER** | **325.74** |
| | |
| **EMPLOYEE EXPENSES** | **15,078.77** |
| | |
| 0000814010 INS - EXECUTIVE RISK (D&O, CRIME, FIDUCIARY, K&R) | 16,271.74 |
| **COMPREHENSIVE CRIME** | **16,271.74** |
| | |
| 0000814011 INS-EXCESS LIABILITY | 0.00 |
| **EXCESS LIABILITY** | **0.00** |
| | |
| 0000814012 INS-ALL RISK PROPERTY | 837,581.88 |
| **PROPERTY** | **837,581.88** |
| | |
| 0000814014 INS-COMPREHENSIVE GENERAL LIABILITY | 0.00 |
| **COMPREHENSIVE GENERAL LIABILITY** | **0.00** |
| | |
| 0000814015 INS-BUSINESS INTERRUPTION | 34,282.07 |
| **BUSINESS INTERRUPTION/FIRE & EXTEND COVERAGE** | **34,282.07** |
| | |
| 0000814016 INS-AUTO LIABILITY | 855.52 |
| **AUTO PHYSICAL DAMAGE** | **855.52** |
| | |
| 0000814050 INS-OTHER | 1,266,818.49 |
| **OTHER** | **1,266,818.49** |
| | |
| **INSURANCE** | **2,155,809.70** |
| | |
| | |
| 0000803011 CONSULTING FEES | 369,305.79 |
| **CONSULTING FEES** | **369,305.79** |
| | |
| 0000803013 LEGAL FEES | 153,460.78 |
| **LEGAL FEES** | **153,460.78** |

**Limetree Bay Refining, LLC**
**Income Statement**
**For the month ending August 31, 2021**

| | August 1-31, 2021 Unaudited |
|---|---|
| 0000803014 MEDICAL FEES | 145.00 |
| **MEDICAL FEES** | **145.00** |
| | |
| 0000801080 EMPLOYMENT - AGENCY FEES | 0.00 |
| **OTHER FEES** | **0.00** |
| | |
| **PROFESSIONAL FEES** | **522,911.57** |
| | |
| 0000808040 TELECOMMUNICATIONS EXPENSE-DATA | 9,971.88 |
| 0000808042 TELECOMMUNICATIONS EXPENSE-VOICE | 4,708.91 |
| 0000808043 TELECOMMUNICATIONS EXP-CELLULAR | 0.00 |
| **COMMUNICATION EXPENSES** | **14,680.79** |
| | |
| 0000804011 HARDWARE - DESKTOP PURCHASES | 0.00 |
| 0000804014 HARDWARE - DESKTOP MAINTENANCE | 0.00 |
| 0000804017 HARDWARE - NETWORK PURCHASES | 0.00 |
| 0000804018 HARDWARE - NETWORK LEASE | 18,535.38 |
| 0000804020 HARDWARE - NETWORK MAINTENANCE | 4,513.37 |
| 0000804030 SOFTWARE - SERVER PURCHASES | 220,647.26 |
| 0000804031 SOFTWARE - MAINFRAME MAINTENANCE | 19,353.99 |
| 0000804032 SOFTWARE - MAINFRAME PURCHASES | 0.00 |
| 0000804033 SOFTWARE - SERVER MAINTENANCE | 48,747.86 |
| 0000804034 SOFTWARE - DESKTOP MAINTENANCE | 6,375.05 |
| 0000804035 SOFTWARE - DESKTOP PURCHASES | 0.00 |
| 0000804036 SOFTWARE - NETWORK PURCHASES | 0.00 |
| 0000804037 SOFTWARE - NETWORK MAINTENANCE | 0.00 |
| **IT EXPENSES** | **318,172.91** |
| | |
| **COMMUNICATIONS AND IT EXPENSES** | **332,853.70** |
| | |
| 0000802040 CONTRACTOR OVERHEAD | 67,779.79 |
| 0000802041 PINNACLE - NON R&M (G&A) | 0.00 |
| 0000802042 SHORT TERM - TEMPORARY OUTSIDE CONTRACTORS | 0.00 |
| **CONTRACTOR OVERHEAD** | **67,779.79** |
| | |
| 0000802065 OUTSIDE LABOR/SERVICES | 75,738.27 |
| 0000802070 MEDIA (OUTSIDE PRINTING) | 0.00 |
| 0000802080 TEMPORARY OUTSIDE LABOR / SERVICES | 0.00 |
| 0000802090 CONTRACT SERVICES - LUMP SUM | 0.00 |
| **OUTSIDE SERVICES** | **75,738.27** |
| | |
| 0000802066 Cottages SS Rent Charges | 293,860.00 |
| 0000813015 RENTALS-PASSENGER CARS | 525.40 |
| 0000813030 RENTS OFFICE & REAL ESTATE | 0.00 |
| 0000813035 RENTALS-EQUIPMENT OTHER | 0.00 |

**Limetree Bay Refining, LLC**
**Income Statement**
**For the month ending August 31, 2021**

|  | August 1-31, 2021<br>Unaudited |
|---|---|
| **RENTAL EXPENSES** | **294,385.40** |
|  |  |
| 0000812015 BANK CHARGES | 107,678.34 |
| 0000817022 DEBT ADMIN&COLL AGENT FEES | 0.00 |
| 0000819010 EXCISE TAX EXPENSE | 0.00 |
| **TAXES AND FEES** | **107,678.34** |
|  |  |
| 0000812025 LICENSES AND PERMITS-OTHER | 0.00 |
| 0000812031 BOOKS/MANUALS/SUBSCRIPTIONS | 6,789.91 |
| **LICENSES, MEMBERSHIPS AND SUBSCRIPTIONS** | **6,789.91** |
|  |  |
| 0000811010 CONTRIBUTIONS & DONATIONS | 0.00 |
| 0000811011 EXPENDITURE ON EDUCATION | 0.00 |
| 0000811017 COMMUNITY RELATIONS EVENTS | 0.00 |
| **CONTRIBUTIONS AND DONATIONS** | **0.00** |
|  |  |
| 0000805010 OFFICE SUPPLY | 131.46 |
| 0000805011 POSTAGE | 171.31 |
| 0000805020 OPERATING SUPPLY | 0.00 |
| 0000806010 MAINTENANCE SUPPLIES | 0.00 |
| 0000806013 OUTSIDE CONTRACTORS | 110.00 |
| 0000820010 FREIGHT EXPENSE | 0.00 |
| 0000830070 MISC EXPENSES - G&A | 1,059.39 |
| 0000830090 STARTUP COSTS ALLOCATED TO CAPITAL | 0.00 |
| **OFFICE AND MISC OPERATING EXPENSES** | **1,472.16** |
|  |  |
| 0000803020 CORPORATE OVERHEAD ALLOCATION | 0.00 |
| **OTHER MISC O&M** | **0.00** |
|  |  |
| **OTHER O&M** | **886,697.57** |
|  |  |
| **GENERAL ADMINISTRATION EXPENSE** | **3,580,497.61** |
|  |  |
| 0000619012 VARIABLE REFINERY PAYMENT | 0.00 |
| **\*VARIABLE TERMINAL PAYMENT** | **0.00** |
|  |  |
| 0000617010 DEPRECIATION | 1,527,492.66 |
| **DEPRECIATION** | **1,527,492.66** |
| **\*DEPRECIATION AND AMORTIZATION** | **1,527,492.66** |
|  |  |
| **\*\*TOTAL EXPENSES** | **19,736,987.45** |
|  |  |
| **\*\*\*OPERATING INCOME** | **(19,737,038.39)** |
|  |  |
| 0000818010 INTEREST EXPENSE | 0.00 |

**Limetree Bay Refining, LLC**
**Income Statement**
**For the month ending August 31, 2021**

| | August 1-31, 2021 Unaudited |
|---|---|
| 0000818020 INVESTMENT INTEREST INCOME | 0.00 |
| 0000818027 AFFILIATED INTEREST EXPENSE - TRANCHE D TERM DEBT | 0.00 |
| 0000818028 AFFILIATED INTEREST EXPENSE - SUBORDINATED NOTE | 0.00 |
| **\*\*INTEREST AND FINANCING EXPENSE** | **0.00** |
| | |
| 0000640020 (GAIN)/LOSS ON ASSET DISPOSAL | 0.00 |
| **(GAIN) LOSS ON SALE OF ASSETS** | **0.00** |
| | |
| 0000818022 MTM – Other Income/Expense | 0.00 |
| 0000900010 MAINTENANCE LABOR ACTIVITY | 0.00 |
| 0000990031 CP PRJ PnL Offset/ Clearing Account | 0.00 |
| **MISC OTHER (INCOME) EXPENSE** | **0.00** |
| | |
| **\*\*OTHER INCOME (EXPENSE), NET** | **0.00** |
| | |
| **\*\*\*TOTAL NON-OPERATING INCOME (EXPENSE):** | **0.00** |
| | |
| **\*\*\*\*NET INCOME (LOSS)** | **(19,737,038.39)** |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Limetree Bay Refining, LLC**

**Schedule of Bank Accounts - As of August 31, 2021**

| Description | Operating Account | Payroll Account | Construction Account | Debt Service Reserve Account | DIP Financing | Total - All Debtor Accounts |
|---|---|---|---|---|---|---|
| Account Name | Limetree Bay Refining, LLC | Limetree Bay Refining, LLC | Limetree Bay Refining, LLC | Limetree Bay Refining, LLC | Limetree Bay Refining, LLC | |
| Bank Name | Oriental Bank | Oriental Bank | Deutsche Bank | Deutsche Bank | East West Bank | |
| Account Number - Last Four Digits | 0267 | 0268 | 2-001.10 | 2-001.11 | 7759 | |
| Beginning book balance (as of 08/01/21) | $ 3,473,021.20 | $ 222.92 | $ 345.03 | $ 3,533.42 | $ - | $ 3,477,122.57 |
| Plus: Deposits | 10,104,707.21 | - | 50,001.40 | - | 9,500,000.00 | 19,654,708.61 |
| Subtotal book balance | 13,577,728.41 | 222.92 | 50,346.43 | 3,533.42 | 9,500,000.00 | 23,131,831.18 |
| | | | | | | |
| Less: Disbursements | (11,456,107.63) | (92.48) | - | - | - | (11,456,200.11) |
| Transfers | - | - | - | - | - | - |
| Other: | - | - | - | - | - | - |
| **Ending book balance (as of 08/31/21)** | **$ 2,121,620.78** | **$ 130.44** | **$ 50,346.43** | **$ 3,533.42** | **$ 9,500,000.00** | **$ 11,675,631.07** |

**Oriental**

P.O. Box 195115
San Juan, PR 00919-5115

Last statement: July 31, 2021            Page 1 of 6
This statement: August 31, 2021                  0267
Total days in statement period: 31       (1)

Direct inquiries to:
787-620-0000

LIMETREE BAY REFINING, LLC
1 ESTATE HOPE                            Oriental Bank
CHRISTIANSTED VI 00820-5652              254 Munoz Rivera Ave
                                         Hato Rey PR 00918

## Premium Business

| | | | |
|---|---|---|---|
| Account number | 0267 | Beginning balance | $3,473,508.40 |
| Enclosures | 1 | Total additions | 10,104,707.21 |
| Low balance | $68,939.02 | Total subtractions | 11,456,594.83 |
| Average balance | $4,000,702.25 | Ending balance | $2,121,620.78 |

### CHECKS

| Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|
| 1928 | 08-03 | 487.20 | | | |

### DEBITS

| Date | Description | Subtractions |
|---|---|---|
| 08-02 | ' Preauthorized Wd | 1,431.48 |
| | LIMETREE BAY ACH 210802 | |
| 08-02 | ' Wire Transfer-Out | 22,875.00 |
| | WIRE OUT -405 SENTINEL, LLC | |
| | 202108020000766 | |
| 08-02 | ' Cash Mgmt Trsfr Dr | 251,184.00 |
| | REF 2141053L FUNDS TRANSFER TO DEP   216 | |
| | FROM PER SHOHEB EMAIL JULY 29 2021 | |
| 08-02 | ' Wire Transfer-Out | 780,088.10 |
| | WIRE OUT -AFCO CREDIT CORPORATION | |
| | 202108020000762 | |
| 08-03 | ' Preauthorized Wd | 3,835.22 |
| | LIMETREE BAY ACH 210803 | |
| 08-03 | ' Wire Transfer-Out | 30,000.00 |
| | WIRE OUT -IOMOSAIC INC. | |
| | 202108030000659 | |
| 08-03 | ' Wire Transfer-Out | 100,000.00 |
| | WIRE OUT -TURNER, MASON AND COMPANY | |
| | 202108030000661 | |
| 08-04 | ' Preauthorized Wd | 24,067.60 |
| | LIMETREE BAY ACH 210804 | |

0 -131234

LIMETREE BAY REFINING, LLC                                         Page 2 of 6
August 31, 2021                                                         0267

| Date | Description | | Subtractions |
|------|-------------|---|-------------|
| 08-04 | ' Cash Mgmt Trsfr Dr | | 365,214.86 |
| | REF 2160941L FUNDS TRANSFER TO DEP | 9646 | |
| | FROM PER JAMES EMAIL AUGUST 3 2021 | | |
| 08-04 | ' Intl Wire Xfer Debit | | 384,837.38 |
| | WIRE OUT -ANTILLES TRADING COMPANY SEZC | | |
| | 202108040000621 | | |
| 08-05 | ' Preauthorized Wd | | 31,398.96 |
| | LIMETREE BAY ACH 210805 | | |
| 08-05 | ' Wire Transfer-Out | | 150,000.00 |
| | WIRE OUT -DEUTSCHE BANK TRUST CO AMERICAS | | |
| | 202108050000409 | | |
| 08-06 | ' Wire Transfer-Out | | 21,000.00 |
| | WIRE OUT -MIDWEST STEEL CO INC | | |
| | 202108060000544 | | |
| 08-06 | ' Preauthorized Wd | | 353,102.56 |
| | LIMETREE BAY ACH 210806 | | |
| 08-11 | ' Wire Transfer-Out | | 61,939.00 |
| | WIRE OUT -EXCEL CONSTRUCTION AND MAINTENANCE | | |
| | 202108110000739 | | |
| 08-11 | ' Preauthorized Wd | | 64,854.22 |
| | LIMETREE BAY ACH 210811 | | |
| 08-11 | ' Cash Mgmt Trsfr Dr | | 821,212.94 |
| | REF 2230910L FUNDS TRANSFER TO DEP | -0216 | |
| | FROM PER JAMES EMAIL AUGUST 11 2021 | | |
| 08-12 | ' Preauthorized Wd | | 16.93 |
| | US CBP RD IND PAYMENT 210812 | | |
| | 0000 | | |
| 08-12 | ' Cash Mgmt Trsfr Dr | | 554,200.00 |
| | REF 2241314L FUNDS TRANSFER TO DEP | -0216 | |
| | FROM PER SHOHEB EMAIL AUGUST 12 2021 | | |
| 08-13 | ' Wire Transfer-Out | | 50,000.00 |
| | WIRE OUT -405 SENTINEL, LLC | | |
| | 202108130000588 | | |
| 08-13 | ' Wire Transfer-Out | | 150,000.00 |
| | WIRE OUT -DEUTSCHE BANK TRUST CO AMERICAS | | |
| | 202108130000585 | | |
| 08-13 | ' Preauthorized Wd | | 243,258.29 |
| | LIMETREE BAY ACH 210813 | | |
| 08-13 | ' Cash Mgmt Trsfr Dr | | 364,571.76 |
| | REF 2250859L FUNDS TRANSFER TO DEP | ;9646 | |
| | FROM PER JAMES EMAIL AUGUST 12 2021 | | |
| 08-13 | ' Preauthorized Wd | | 746,014.65 |
| | LIMETREE BAY ACH 210813 | | |
| 08-16 | ' Wire Transfer-Out | | 37,531.05 |
| | WIRE OUT -METROPOLITAN LIFE INSURANCE COMPANY | | |
| | 202108160000700 | | |

LIMETREE BAY REFINING, LLC

Page 3 of 6

August 31, 2021

0267

| Date | Description | Subtractions |
|------|-------------|-------------:|
| 08-17 | ' Wire Transfer-Out<br>WIRE OUT -IOMOSAIC INC.<br>202108170000459 | 30,000.00 |
| 08-17 | ' Preauthorized Wd<br>LIMETREE BAY ACH 210817 | 544,043.00 |
| 08-19 | ' Preauthorized Wd<br>LIMETREE BAY ACH 210819 | 15,067.60 |
| 08-19 | ' Wire Transfer-Out<br>WIRE OUT -DEUTSCHE BANK TRUST CO AMERICAS<br>202108190000331 | 150,000.00 |
| 08-19 | ' Cash Mgmt Trsfr Dr<br>REF 2311149L FUNDS TRANSFER TO DEP 8202039646<br>FROM PER JAMES EMAIL AUGUST 19 2021 | 348,889.77 |
| 08-19 | ' Wire Transfer-Out<br>WIRE OUT -BP NORTH AMERICA PETROLEUM<br>202108190000875 | 366,702.00 |
| 08-20 | ' Wire Transfer-Out<br>WIRE OUT -BAKER HUGHES<br>202108200001426 | 144,332.12 |
| 08-20 | ' Preauthorized Wd<br>LIMETREE BAY ACH 210820 | 178,230.78 |
| 08-20 | ' Preauthorized Wd<br>LIMETREE BAY ACH 210820 | 678,068.59 |
| 08-23 | ' Preauthorized Wd<br>LIMETREE BA 0267 PAYMENT 210823 | 65,000.00 |
| 08-23 | ' Wire Transfer-Out<br>WIRE OUT -MARSH USA INC<br>202108230001272 | 187,000.00 |
| 08-24 | ' Maintenance Fee<br>ANALYSIS ACTIVITY FOR 07/21 | 457.00 |
| 08-25 | ' Cash Mgmt Trsfr Dr<br>REF 2370739L FUNDS TRANSFER TO DEP      0216<br>FROM PER SHOHEB EMAIL AUGUST 24 2021 | 1,202,100.00 |
| 08-26 | ' Wire Transfer-Out<br>WIRE OUT -METROPOLITAN LIFE INSURANCE COMPANY<br>202108260000486 | 39,253.29 |
| 08-26 | ' Wire Transfer-Out<br>WIRE OUT -DEUTSCHE BANK TRUST CO AMERICAS<br>202108260000487 | 150,000.00 |
| 08-27 | ' Wire Transfer-Out<br>WIRE OUT -METROPOLITAN LIFE INSURANCE COMPANY<br>202108270000466 | 37,531.05 |
| 08-27 | ' Wire Transfer-Out<br>WIRE OUT -LIMETREE BAY REFINING CREDIT FACILI<br>202108270001698 | 50,000.00 |

LIMETREE BAY REFINING, LLC                                          Page 4 of 6
August 31, 2021                                                     0267

| Date | Description | Subtractions |
|------|-------------|-------------|
| 08-27 | ' Wire Transfer-Out | 54,875.00 |
| | WIRE OUT -BAKER HUGHES | |
| | 202108270000923 | |
| 08-27 | ' Wire Transfer-Out | 280,692.79 |
| | WIRE OUT -FIRST INSURANCE FUNDING | |
| | 202108270000467 | |
| 08-27 | ' Preauthorized Wd | 298,713.21 |
| | LIMETREE BAY ACH 210827 | |
| 08-27 | ' Cash Mgmt Trsfr Dr | 382,548.86 |
| | REF 2391218L FUNDS TRANSFER TO DEP        9646 | |
| | FROM PER SHOHEB EMAIL AUGUST 27 2021 | |
| 08-27 | ' Preauthorized Wd | 578,505.78 |
| | LIMETREE BAY ACH 210827 | |
| 08-30 | ' Wire Transfer-Out | 25,000.00 |
| | WIRE OUT -STEVEN J. PULLY | |
| | 202108300000998 | |
| 08-31 | ' Preauthorized Wd | 6,462.79 |
| | LIMETREE BAY ACH 210831 | |
| 08-31 | ' Wire Transfer-Out | 30,000.00 |
| | WIRE OUT -IOMOSAIC INC. | |
| | 202108310001592 | |

## CREDITS

| Date | Description | Additions |
|------|-------------|-----------|
| 08-02 | ' Deposit | 572.69 |
| 08-09 | ' Deposit | 62,386.45 |
| 08-12 | ' Wire Transfer-IN | 10,000,000.00 |
| | WIRE IN -405 SENTINEL LLC | |
| | 202108120001232 | |
| 08-24 | ' Deposit | 4,217.02 |
| 08-26 | ' Domestic Wire IN Fee | 37,531.05 |
| | WIRE IN -METROPOLITAN LIFE INSURANCE CO.. | |
| | 202108260000603 | |

## DAILY BALANCES

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 07-31 | 3,473,508.40 | 08-11 | 68,939.02 | 08-23 | 5,216,012.48 |
| 08-02 | 2,418,502.51 | 08-12 | 9,514,722.09 | 08-24 | 5,219,772.50 |
| 08-03 | 2,284,180.09 | 08-13 | 7,960,877.39 | 08-25 | 4,017,672.50 |
| 08-04 | 1,510,060.25 | 08-16 | 7,923,346.34 | 08-26 | 3,865,950.26 |
| 08-05 | 1,328,661.29 | 08-17 | 7,349,303.34 | 08-27 | 2,183,083.57 |
| 08-06 | 954,558.73 | 08-19 | 6,468,643.97 | 08-30 | 2,158,083.57 |
| 08-09 | 1,016,945.18 | 08-20 | 5,468,012.48 | 08-31 | 2,121,620.78 |



1928      8/3/2021     $487.20

0 - 131240

**LIMETREE BAY REFINING**
**LBR Operating Account - 110600**
**BA        0267**
**August 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 7/31/2021 | $ | 3,473,508.40 |
| Deposits | | $ | 10,104,707.21 |
| ACH / Debits | | $ | (8,144,868.85) |
| Wires | | $ | (3,310,781.78) |
| Bank Charges | | $ | (457.00) |
| Checks Cleared | | $ | (487.20) |
| Intransit Deposit | | $ | - |
| Ending Balance per Bank | 8/31/2021 | $ | 2,121,620.78 |
| Opening Balance  per Book | 7/31/2021 | $ | 3,473,021.20 |
| Deposits | | $ | 10,104,707.21 |
| ACH / Debits | | $ | (8,144,868.85) |
| Wires | | $ | (3,310,781.78) |
| Bank Charges | | $ | (457.00) |
| Checks Issued | Doc Num | $ | - |
| Checks Reversed | | $ | - |
| Ending Balance per Book | 8/31/2021 | $ | 2,121,620.78 |
| Outstanding Checks | | | |
| ACH Intransit | | $ | - |
| | | $ | 2,121,620.78 |
| | | $ | 0.00 |

| | | |
|---|---|---|
| Reconciled by | George Southwell | |
| Date: | 9/13/2021 | |
| Approved by | | |
| Date: | | |

# Oriental

P.O. Box 195115
San Juan, PR 00919-5115

Last statement: July 31, 2021        Page 1 of 2
This statement: August 31, 2021            0268
Total days in statement period: 31      (0)

Direct inquiries to:
787-620-0000

LIMETREE BAY REFINING, LLC
1 ESTATE HOPE
CHRISTIANSTED VI 00820-5652

Oriental Bank
254 Munoz Rivera Ave
Hato Rey PR 00918

---

## Premium Business

| | | | |
|---|---|---|---|
| Account number | 0268 | Beginning balance | $222.92 |
| Low balance | $130.44 | Total additions | .00 |
| Average balance | $199.05 | Total subtractions | 92.48 |
| | | Ending balance | $130.44 |

**DEBITS**

| Date | Description | Subtractions |
|---|---|---|
| 08-24 | ' Maintenance Fee | 92.48 |
| | ANALYSIS ACTIVITY FOR 07/21 | |

**DAILY BALANCES**

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 07-31 | 222.92 | 08-24 | 130.44 | | |

**OVERDRAFT/RETURN ITEM FEES**

| | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

*Thank you for banking with Oriental Bank*

**LIMETREE BAY REFINING**
**LBR Payroll Account - 110610**
**BA        0268**
**July 2021**

| | Date | | | Amount |
|---|---|---|---|---|
| Opening Balance  per Bank | 7/31/2021 | | $ | 222.92 |
| Deposits | | | $ | - |
| ACH / Debits | | | $ | - |
| Wires | | | $ | - |
| Bank Charges | | | $ | (92.48) |
| Checks Cleared | | | $ | - |
| Intransit Deposit | | | $ | - |
| Ending Balance per Bank | 8/31/2021 | | $ | 130.44 |
| Opening Balance  per Book | 7/31/2021 | | $ | 222.92 |
| Deposits | | | $ | - |
| ACH / Debits | | | $ | - |
| Wires | | | $ | - |
| Bank Charges | | | $ | (92.48) |
| Checks Issued | | | $ | - |
| Ending Balance per Book | 8/31/2021 | | $ | 130.44 |
| Outstanding Checks | 8/31/2021 | | $ | - |
| | | | $ | 130.44 |

Reconciled by      George Southwell

Date:         9/1/2021

Approved by

Date:

1596

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Revenue Account |
| Portfolio Number: | 001.4 |
| Statement Period: | August 01, 2021 - August 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

**Portfolio Market Value Summary as of 08/31/21**

| | | |
|---|---|---|
| Total Portfolio Value: | $ | 0.00 |
| | | |
| YTD Dividends: | $ | 0.00 |
| YTD Interest: | $ | 0.00 |
| YTD Capital Gains/Losses: | $ | 0.00 |

**Portfolio Cost Value Summary as of 08/31/21**

| | | |
|---|---|---|
| Total Portfolio Value: | $ | 0.00 |

**Cash Summary**

| | | |
|---|---|---|
| Beginning Balance | $ | 0.00 |
| Closing Balance | | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank ☑

| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Revenue Account |
| Portfolio Number: | 301.4 |
| Statement Period: | August 01, 2021 - August 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Transaction Statement for the period of August 1, 2021 through August 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|------|------------------------|------|----------|---------------|-------|--------------|--------------|
| 08/01 | Beginning balance | | | | | $  0.00 | $  0.00 |

Asset position as of August 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|-------------|----------------|------|---------------|--------------|-------|--------------|----------------|----------------------------|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR O&M Account |
| Portfolio Number: | 001.5 |
| Statement Period: | August 01, 2021 - August 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

**Portfolio Market Value Summary as of 08/31/21**

| | | |
|---|---|---|
| Total Portfolio Value: | $ | 0.00 |
| YTD Dividends: | $ | 0.00 |
| YTD Interest: | $ | 0.00 |
| YTD Capital Gains/Losses: | $ | 0.00 |

**Portfolio Cost Value Summary as of 08/31/21**

| | | |
|---|---|---|
| Total Portfolio Value: | $ | 0.00 |

**Cash Summary**

| | | |
|---|---|---|
| Beginning Balance | $ | 0.00 |
| Closing Balance | | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR O&M Account |
| Portfolio Number: | 001.5 |
| Statement Period: | August 01, 2021 - August 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Transaction Statement for the period of August 1, 2021 through August 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 08/01 | Beginning balance | | | | | $ 0.00 $ | 0.00 |

## Asset position as of August 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Reinvestment & Repair Account |
| Portfolio Number: | -001.6 |
| Statement Period: | August 01, 2021 - August 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

### Portfolio Market Value Summary as of 08/31/21

| | |
|---|---|
| Total Portfolio Value: | $    0.00 |
| YTD Dividends: | $    0.00 |
| YTD Interest: | $    0.00 |
| YTD Capital Gains/Losses: | $    0.00 |

### Portfolio Cost Value Summary as of 08/31/21

| | |
|---|---|
| Total Portfolio Value: | $    0.00 |

### Cash Summary

| | |
|---|---|
| Beginning Balance | $    0.00 |
| Closing Balance | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Reinvestment & Repair Account |
| Portfolio Number: | 001.6 |
| Statement Period: | August 01, 2021 - August 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Transaction Statement for the period of August 1, 2021 through August 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 08/01 | Beginning balance | | | | | $ 0.00 $ | 0.00 |

Asset position as of August 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Distribution Suspense Account |
| Portfolio Number: | 001.8 |
| Statement Period: | August 01, 2021 - August 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

**Portfolio Market Value Summary as of 08/31/21**

| | | |
|---|---|---|
| Total Portfolio Value: | $ | 0.00 |
| YTD Dividends: | $ | 0.00 |
| YTD Interest: | $ | 0.00 |
| YTD Capital Gains/Losses: | $ | 0.00 |

**Portfolio Cost Value Summary as of 08/31/21**

| | | |
|---|---|---|
| Total Portfolio Value: | $ | 0.00 |

**Cash Summary**

| | | |
|---|---|---|
| Beginning Balance | $ | 0.00 |
| Closing Balance | | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Distribution Suspense Account |
| Portfolio Number: | 001.8 |
| Statement Period: | August 01, 2021 - August 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Transaction Statement for the period of August 1, 2021 through August 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 08/01 | Beginning balance | | | | | $ 0.00 $ | 0.00 |

Asset position as of August 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

Account Name: Limetree Bay Refining LLC
Portfolio Name: LBR Operating Reserve  Account
Portfolio Number: 001.9
Statement Period: August 01, 2021 - August 31, 2021
Account
Administrator: Shamarri Hartzog (714-247-6353)
Account Manager: Scott Dodic (212-250-7848)
Team Lead: Thalia Delahayes (212-250-7336)

## Summary

**Portfolio Market Value Summary as of 08/31/21**

| | | |
|---|---|---|
| Total Portfolio Value: | $ | 0.00 |
| YTD Dividends: | $ | 0.00 |
| YTD Interest: | $ | 0.00 |
| YTD Capital Gains/Losses: | $ | 0.00 |

**Portfolio Cost Value Summary as of 08/31/21**

| | | |
|---|---|---|
| Total Portfolio Value: | $ | 0.00 |

**Cash Summary**

| | | |
|---|---|---|
| Beginning Balance | $ | 0.00 |
| Closing Balance | | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Operating Reserve Account |
| Portfolio Number: | 301.9 |
| Statement Period: | August 01, 2021 - August 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Transaction Statement for the period of August 1, 2021 through August 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|------|------------------------|------|----------|---------------|-------|--------------|--------------|
| 08/01 | Beginning balance | | | | | $    0.00 $ | 0.00 |

## Asset position as of August 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|-------------|----------------|------|---------------|--------------|-------|--------------|----------------|----------------------------|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Construction Account |
| Portfolio Number: | -001.10 |
| Statement Period: | August 01, 2021 - August 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

### Portfolio Market Value Summary as of 08/31/21

| | | |
|---|---|---|
| Cash | $ | 0.00 |
| Investments | $ | 50,346.43 |
| Total Portfolio Value: | $ | 50,346.43 |
| YTD Interest: | $ | 0.00 |
| YTD Dividends: | $ | 222.14 |
| YTD Capital Gains/Losses: | $ | 0.00 |

### Portfolio Cost Value Summary as of 08/31/21

| | | |
|---|---|---|
| Cash | $ | 0.00 |
| Investments | $ | 50,346.43 |
| Total Portfolio Value: | $ | 50,346.43 |

### Cash Summary

| | | |
|---|---|---|
| **Beginning Balance** | $ | 0.00 |
| **Receipts:** | | |
| **Cash Receipts** | $ | 50,000.00 |
| **Total Receipts** | $ | 50,000.00 |
| **Disbursements:** | | |
| Purchase of Investments | $ | 50,000.00 |
| Dividends Reinvested | $ | 1.40 |
| **Total Disbursements** | $ | (50,000.00) |
| **Closing Balance** | $ | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Construction Account |
| Portfolio Number: | 001.10 |
| Statement Period: | August 01, 2021 - August 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Transaction Statement for the period of August 1, 2021 through August 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 08/01 | Beginning balance | | | | | $ 0.00 | $ 345.03 |
| 08/02 | Dividend Reinvestment<br>BL #92104 -0U4 FedFund Admin<br>CUSIP: 09248U445 / ISIN: US09248U4452 | $ 0.00 | $ 1.40 | $ 0.00 | $ 0.00 | $ 0.00 | $ 346.43 |
| 08/17 | Auto Wire Receipt<br>MONEY TRANSFER RECEIPT: 07240269400163348 REM=072<br>40269400163348 OBI=POR T SE1972-001 10LBR-CONSTRU<br>CTION ACCOUNTBBI=BNF-NY-LTD FUNDS CONTROL-NY<br>Sending Bank: 072402694   HILLSDALE COUNTY NATIONAL BANK<br>Beneficary: SE1972-001.10 LIMETREE BAY REFINING LLC<br>FED 0817GMOFMP010254?6-08.17.2021<br>BANKREF M103385IFD081721 M103385IFD0817212I0210817 | $ 50,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 50,000.00 | $ 346.43 |
| 08/18 | Mutual Fund Purchase<br>@ 1.00<br>BL #92104 -0U4 FedFund Admin<br>CUSIP: 09248U445 / ISIN: US09248U4452 | $ (50,000.00) | $ 50,000.00 | $ 0.00 | $ 1.00 | $ 0.00 | $ 50,346.43 |

## Asset position as of August 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| BL #92104 -0U4 FedFund Admin<br>CUSIP: 09248U445 | 50,346.43 | $50,346.43 | 50,346.43 | $1.00 | 0.03% | $50,346.43 | $0.42 | n/a / N/A |
| **Total Portfolio** | **50,346.43** | **$50,346.43** | **50,346.43** | | | **$50,346.43** | **$0.42** | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Debt Service Reserve Account |
| Portfolio Number: | 001.11 |
| Statement Period: | August 01, 2021 - August 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

**Portfolio Market Value Summary as of 08/31/21**

| | | |
|---|---|---|
| Cash | $ | 0.00 |
| Investments | $ | 3,533.42 |
| Total Portfolio Value: | $ | 3,533.42 |
| | | |
| YTD Dividends: | $ | 0.00 |
| YTD Interest: | $ | 0.00 |
| YTD Capital Gains/Losses: | $ | 0.00 |

**Portfolio Cost Value Summary as of 08/31/21**

| | | |
|---|---|---|
| Cash | $ | 0.00 |
| Investments | $ | 3,533.42 |
| Total Portfolio Value: | $ | 3,533.42 |

**Cash Summary**

| | | |
|---|---|---|
| **Beginning Balance** | $ | 0.00 |
| **Closing Balance** | | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Debt Service Reserve Account |
| Portfolio Number: | 001.11 |
| Statement Period: | August 01, 2021 - August 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Transaction Statement for the period of August 1, 2021 through August 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 08/01 | Beginning balance | | | | | $ 0.00 | $ 3,533.42 |

## Asset position as of August 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| BL #92104 -0U4 FedFund Admin CUSIP: 09248U445 | 3,533.42 | $3,533.42 | 3,533.42 | $1.00 | 0.03% | $3,533.42 | $0.00 | n/a / N/A |
| **Total Portfolio** | **3,533.42** | **$3,533.42** | **3,533.42** | | | **$3,533.42** | **$0.00** | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

**LIMETREE BAY REFINING**
**LBR Construction Account**        **110690**
        **001.10**
**August 2020**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 7/31/2021 | $ | 345.03 |
| Deposits | | $ | 50,000.00 |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Capital Gain/Losses | | $ | - |
| Bank Charges | | $ | - |
| Dividends | | $ | 1.40 |
| Ending Balance per Bank | 8/31/2021 | $ | 50,346.43 |
| Opening Balance  per Book | 7/31/2021 | $ | 345.03 |
| Deposits | | $ | 50,000.00 |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Misc Adjustment | | | |
| Capital Gain/Losses | | | - |
| Bank Charges | | $ | - |
| Dividends | | $ | 1.40 |
| Ending Balance per Book | 8/31/2021 | $ | 50,346.43 |
| | | $ | 50,346.43 |
| | | $ | - |

Reconciled by        George Southwell

Date:        9/1/2021

Approved by

Date:

**LIMETREE BAY REFINING**
**LBR Debt Service Reserve Account**          **110700**
          **001.11**
**August 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 7/31/2021 | $ | 3,533.42 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Capital Gain/Losses | | $ | - |
| Bank Charges | | $ | - |
| Dividends | | $ | - |
| Ending Balance per Bank | 8/31/2021 | $ | 3,533.42 |
| Opening Balance  per Book | 7/31/2021 | $ | 3,533.42 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Capital Gain/Losses | | | - |
| Bank Charges | | $ | - |
| Dividends | | $ | - |
| Ending Balance per Book | 8/31/2021 | $ | 3,533.42 |
| | | $ | 3,533.42 |
| | | $ | - |

Reconciled by     George Southwell

Date:     9/1/2021

Approved by

Date:

# EAST WEST BANK   Your financial bridge®

9300 Flair Dr., 1St FL
El Monte, CA. 91731

Direct inquiries to:
888 761-3967

**ACCOUNT STATEMENT**
Page 1 of 1
STARTING DATE: August 30, 2021
ENDING DATE: August 31, 2021
Total days in statement period: 2
|7759
( 0)

LIMETREE BAY REFINING LLC
CHAPTER 11 DEBTOR IN POSSESSION
CASE #21-32354
%B RILEY FINANCIAL
3500 MAPLE AVE STE 420
DALLAS TX  75219-3957

Receive money with Direct Deposits.
Payments are automatically sent to your
bank account so you can save yourself a
trip to the bank. Talk to your payer to see
if you qualify or call 888.895.5650.

## Commercial Analysis Checking

| Account number | 7759 | Beginning balance | | $0.00 |
|---|---|---|---|---|
| Low balance | $0.00 | Total additions | ( 1) | 9,500,000.00 |
| Average balance | $4,750,000.00 | Total subtractions | ( 0) | .00 |
| | | Ending balance | | $9,500,000.00 |

### CREDITS

| Number | Date | Transaction Description | | Additions |
|---|---|---|---|---|
| | 08-31 | Wire Trans-IN | 405 SENTINEL LLC | 9,500,000.00 |

### DAILY BALANCES

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 08-31 | 9,500,000.00 | | | | |

### OVERDRAFT/RETURN ITEM FEES

| | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

3409     rev 05-16

**LIMETREE BAY REFINING**
**Checking Account - 110770**
**7759**
**August 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 7/31/2021 | $ | - |
| Deposits | | $ | 9,500,000.00 |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Bank Charges | | $ | - |
| Checks Cleared | | $ | - |
| Intransit Deposit | | $ | - |
| Ending Balance per Bank | 8/31/2021 | $ | 9,500,000.00 |
| Opening Balance  per Book | 7/31/2021 | $ | - |
| Deposits | | $ | 9,500,000.00 |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Bank Charges | | $ | - |
| Checks Issued | | $ | - |
| Ending Balance per Book | 8/31/2021 | $ | 9,500,000.00 |
| Outstanding Checks | 8/31/2021 | $ | - |
| | | $ | 9,500,000.00 |

Reconciled by          George Southwell _____

Date: _____

Approved by _____

Date: _____

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of August 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | AIG/National Union Fire Insurance Co | Combined Property | Primary $250M | 026-1001312 | 2021.09.01 |
| Limetree Bay Refining, LLC | Allianz Global Risk US Insurance Company | Combined Property | Primary $1.25BN | USN00023920 | 2021.12.01 |
| Limetree Bay Refining, LLC | Axis (Endorsement) | Builder's Risk | $50M | EAU646295/01/2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 92SRD102973 | 2021.09.01 |
| Limetree Bay Refining, LLC | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 42-PRP-312023-01 | 2021.09.01 |
| Limetree Bay Refining, LLC | CIN 318/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC3 | Convex Insurance UK Limited | Combined Property | Primary $1.25BN (reduced to a limit of $250 million on August 20, 2021) | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Services, LLC | Liberty | Worker's Comp | | WCC-641-444917-020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hannover Re/HDI Global Specialty SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Helvetia/Helvetia Swiss Insurance Co in Liechtenstein Ltd | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | HSIC/Houston Specialty Insurance Company | Combined Property | $150M XS 50M | PRO440373 | 2021.12.01 |
| Limetree Bay Refining, LLC | LSM/Liberty Specialty Markets Agency Limited | Combined Property | $100M XS $100M | LSMAEN143232A | 2021.12.01 |
| Limetree Bay Refining, LLC | Munich Re/Great Lakes Insurance SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | PICC/Guardian General Insurance | Combined Property | $100M XS $100M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | QBE/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Rokstone/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC | SCOR (3)/General Security Indemnity Company of Arizona | Combined Property | Primary $1.25BN | FA007943720201 | 2021.09.01 |
| Limetree Bay Refining, LLC | Sompo/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of August 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---------|---------|------|-----------------|---------------|-----------------|
| Limetree Bay Refining, LLC | Swiss Re/Westport Insurance Company | Combined Property | Primary $500M | OMP 2000425-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Validus Specialty/Lloyds of London | Combined Property | Primary $250M | AJH292893A20 | 2021.09.01 |
| Limetree Bay Refining, LLC | Westchester Surplus Lines Ins Co/Starr Technical Risks Agency, Inc | Combined Property | Primary $500M | EPRN18215263 | 2021.12.01 |
| Limetree Bay Refining, LLC | WRB/Guardian General Insurance | Combined Property | $50M XS $50M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Zurich/Zurich American Insurance Company | Combined Property | Primary $100M | OGR 1296457-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arcadian/Ark/Helix Bermuda | Builder's Risk | $25M xs $100M | NAMBM2100005 | 2022.06.01 |
| Limetree Bay Refining, LLC | Allianz | Refinery Excess Liability | $15M xs $53M | USL00880520 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz | Environmental Liability | $15M xs $85M | USL00873320 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty | Refinery Primary Liability | | AS6-641-444917-010 | 2021.12.01 |
| Limetree Bay Refining, LLC | Travelers Syndicate | Refinery Primary Liability | | ENCAS2000012 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer/Apollo | Refinery Excess Liability | $15M | ENCAS2000011 | 2021.12.01 |
| Limetree Bay Refining, LLC | Westchester | Refinery Excess Liability | $3M xs $25M | G71809808001 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Refinery Excess Liability | $25M xs $28M | 4380100 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer | Refinery Excess Liability | $11M po $22M xs $68M | ENCAS2000020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lex-London | Refinery Excess Liability | $11M po $22M xs $68M | 62785689 | 2021.12.01 |
| Limetree Bay Refining, LLC | OSL | Refinery Excess Liability | $10M xs $90M | EXS-154724-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | AXA XL Bermuda | Refinery Excess Liability | $25M xs $125M | XLUMB-229978 | 2021.12.01 |
| Limetree Bay Refining, LLC | OCIL Bermuda | Refinery Excess Liability | $25M po $40M xs $150M | U920968-0620 | 2021.12.01 |
| Limetree Bay Refining, LLC | Sompo Bermuda | Refinery Excess Liability | $15M po $40M xs $150M | EXC30001524800 | 2021.12.01 |
| Limetree Bay Refining, LLC | Argo Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | ARGO-CAS-OR-001484 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of August 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---------|---------|------|-----------------|---------------|-----------------|
| Limetree Bay Refining, LLC | Arch Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | URP0065257-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel Bermuda | Refinery Excess Liability | $12.5M po $50M xs $190M | 1454233-11636-UMB-2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hamilton Bermuda | Refinery Excess Liability | $7.5M po $50M xs $190M | CX20-9216 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chubb Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LBR-2144/XS004 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LSMAEC119907A | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $1M | ENVP0000296-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $9M xs $1M | ENVX0000256-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Environmental Liability | $25M xs $10M | 262704 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ascot | Environmental Liability | $25M xs $35M | ENXP2110000428-01 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel | Environmental Liability | $25M xs $60M | MKLV4EFX102259 | 2021.12.01 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $5M | 8261-8347 | 2022.04.20 |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000623319211 | 2022.04.20 |
| Limetree Bay Refining, LLC | Wesco Insurance Company | Executive Risk | $5M | EUW1909831 00 | 2022.04.20 |
| | | | | | |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000622392201 | 2027.04.20 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $5M | 8247-1536 | 2027.04.20 |
| Limetree Bay Refining, LLC | First Liberty Insurance Co | Auto Liability | $2M | AS6-641-444917-010 | 2021.12.01 |

**Notes:**
**(1)** As of August 31, 2021, insurance premiums are paid in full except for the items discussed in footnotes 2, 3 and 4.
**(2)** The auto liability policy will be audited during December 2021.  A premium will be due for autos assigned to LBR for the period from June 1, 2021 through December 31, 2021
**(3)** Audit premiums are expected to be invoiced for non-current insurance policies including the Builders All Risk policy and OCIP.  As of the filing of the monthly operating report, the audit amounts have not been determined.
**(4)** Premium obligations outstanding as of August 31, 2021 for LBR are as follows:
   a.  PFA Loan 2055:  Balance due for $266,145
   b.  PFA Loan 2303:  Balance due for $536,580

# UNITED STATES BANKRUPTCY COURT

SOUTHERN  DISTRICT OF  TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| In Re. LIMETREE BAY REFINING OPERATING, LLC | § | Case No.  21-32355 |
| | § | |
| | § | Lead Case No.  21-32351 |
| Debtor(s) | § | |
| | | ☒ Jointly Administered |

## Monthly Operating Report

Chapter 11

Reporting Period Ended: 08/31/2021          Petition Date: 07/12/2021

Months Pending: 2          Industry Classification: | 3 | 2 | 4 | 1 |

Reporting Method:          Accrual Basis ⦿          Cash Basis ○

Debtor's Full-Time Employees (current):          253

Debtor's Full-Time Employees (as of date of order for relief):          263


**Supporting  Documentation** (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

☒     Statement of cash receipts and disbursements
☒     Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
☒     Statement of operations (profit or loss statement)
☐     Accounts receivable aging
☐     Postpetition liabilities aging
☐     Statement of capital assets
☐     Schedule of payments to professionals
☐     Schedule of payments to insiders
☒     All bank statements and bank reconciliations for the reporting period
☐     Description of the assets sold or transferred and the terms of the sale or transfer


/s/ Elizabeth A. Green
_____          Elizabeth A. Green
Signature of Responsible Party          Printed Name of Responsible Party

10/01/2021          200 S. Orange Avenue
_____          SunTrust Center, Suite 2300
Date          Orlando, FL 32801
          Address


STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

Debtor's Name  LIMETREE BAY REFINING OPERATING, LLC                    Case No.  21-32355

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a. Cash balance beginning of month | $7,539 | |
| b. Total receipts (net of transfers between accounts) | $2,828,697 | $5,472,197 |
| c. Total disbursements (net of transfers between accounts) | $2,830,442 | $5,487,366 |
| d. Cash balance end of month (a+b+c) | $5,794 | |
| e. Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f. Total disbursements for quarterly fee calculation (c+e) | $2,830,442 | $5,487,366 |

| Part 2: Asset and Liability Status<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | |
|---|---|---|
| a. Accounts receivable (total net of allowance) | $96,786,846 | |
| b. Accounts receivable over 90 days outstanding (net of allowance) | $94,032,270 | |
| c. Inventory   (Book ○  Market ○  Other ◉  (attach explanation)) | $0 | |
| d  Total current assets | $96,792,640 | |
| e. Total assets | $96,792,640 | |
| f. Postpetition payables (excluding taxes) | $0 | |
| g. Postpetition payables past due (excluding taxes) | $0 | |
| h. Postpetition taxes payable | $0 | |
| i. Postpetition taxes past due | $0 | |
| j. Total postpetition debt (f+h) | $0 | |
| k. Prepetition secured debt | $1,056,353,789 | |
| l. Prepetition priority debt | $0 | |
| m. Prepetition unsecured debt | $106,538,705 | |
| n. Total liabilities (debt) (j+k+l+m) | $1,162,892,494 | |
| o. Ending equity/net worth (e-n) | $-1,066,099,854 | |

| Part 3: Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a. Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b. Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c. Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4: Income Statement (Statement of Operations)<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a. Gross income/sales (net of returns and allowances) | $0 | |
| b. Cost of goods sold (inclusive of depreciation, if applicable) | $0 | |
| c. Gross profit (a-b) | $0 | |
| d. Selling expenses | $2,623,448 | |
| e. General and administrative expenses | $1,494,760 | |
| f. Other expenses | $0 | |
| g. Depreciation and/or amortization (not included in 4b) | $0 | |
| h. Interest | $0 | |
| i. Taxes (local, state, and federal) | $0 | |
| j. Reorganization items | $0 | |
| k. Profit (loss) | $-4,118,208 | $-7,903,922 |

UST Form 11-MOR (06/07/2021)                    2

Debtor's Name  LIMETREE BAY REFINING OPERATING, LLC                    Case No.  21-32355

## Part 5:  Professional Fees and Expenses

| | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| a. | Debtor's professional fees & expenses (bankruptcy)  *Aggregate Total* | | | | | |
| | *Itemized Breakdown by Firm* | | | | | |
| | | Firm Name | Role | | | | |
| | i | | | | | | |
| | ii | | | | | | |

| | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy)  *Aggregate Total* | | | | | |
| | *Itemized Breakdown by Firm* | | | | | |
| | | Firm Name | Role | | | | |
| | i | | | | | | |
| | ii | | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | | |

## Part 6:  Postpetition Taxes

| | | Current Month | Cumulative |
|---|---|---|---|
| a. | Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. | Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. | Postpetition employer payroll taxes accrued | $0 | $0 |
| d. | Postpetition employer payroll taxes paid | $0 | $0 |
| e. | Postpetition property taxes paid | $0 | $0 |
| f. | Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. | Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

## Part 7: Questionnaire - During this reporting period:

a.  Were any payments made on prepetition debt?  (if yes, see Instructions)   Yes ○   No ●

b.  Were any payments made outside the ordinary course of business without court approval?  (if yes, see Instructions)   Yes ○   No ●

c.  Were any payments made to or on behalf of insiders?   Yes ○   No ●

d.  Are you current on postpetition tax return filings?   Yes ●   No ○

e.  Are you current on postpetition estimated tax payments?   Yes ●   No ○

f.  Were all trust fund taxes remitted on a current basis?   Yes ●   No ○

g.  Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions)   Yes ●   No ○

h.  Were all payments made to or on behalf of professionals approved by the court?   Yes ○   No ○   N/A ●

i.  Do you have:   Worker's compensation insurance?   Yes ●   No ○

   If yes, are your premiums current?   Yes ●   No ○   N/A ○   (if no, see Instructions)

   Casualty/property insurance?   Yes ●   No ○

   If yes, are your premiums current?   Yes ●   No ○   N/A ○   (if no, see Instructions)

   General liability insurance?   Yes ●   No ○

   If yes, are your premiums current?   Yes ●   No ○   N/A ○   (if no, see Instructions)

j.  Has a plan of reorganization been filed with the court?   Yes ○   No ●

Debtor's Name  LIMETREE BAY REFINING OPERATING, LLC                    Case No.  21-32355

k.  Has a disclosure statement been filed with the court?          Yes ○   No ●
l.  Are you current with quarterly U.S. Trustee fees as            Yes ●   No ○
    set forth under 28 U.S.C. § 1930?

| **Part 8: Individual Chapter 11 Debtors (Only)** |
|---|

| | | |
|---|---|---|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |

l.  Are you required to pay any Domestic Support Obligations as defined by 11   Yes ○  No ●
    U.S.C § 101(14A)?
m.  If yes, have you made all Domestic Support Obligation payments?            Yes ○  No ○  N/A ●

### Privacy Act Statement

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107.  The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6).  The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith.  This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law.  Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records."  *See* 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006).  A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm.  Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee.  11 U.S.C. § 1112(b)(4)(F).


**<u>I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.</u>**


Mark Shapiro                                          Mark Shapiro, Chief Restructuring Officer
―――――――――――――――――                    ―――――――――――――――――
Signature of Responsible Party                        Printed Name of Responsible Party

Chief Restructuring Officer                           10/01/2021
―――――――――――――――――                    ―――――――――――――――――
Title                                                 Date

**CASE NAME:**          **Limetree Bay Refining Operating, LLC**
**CASE NUMBER:**        **21-32355 (Jointly Administered under Lead Case No.: 21-32351)**

### Notes to the Monthly Operating Report

**General:**

On July 12, 2021 (the "Petition Date"), Limetree Bay Services, LLC ("Limetree") filed a voluntary petition with the United States Bankruptcy Court under Chapter 11 of the Bankruptcy Code [Case No.: 21-32351], along with five (5) affiliated entities (Affiliated Entities"). The debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067);  and Limetree Bay Refining Marketing, LLC (9222); (collectively, the "Debtors" or "Jointly Administered Debtors"). The bankruptcy filings of Limetree and the Affiliated Entities are jointly administered under Case No. 21-32351.

On or about June 17, 2021, the Jointly Administered Debtors retained B. Riley as chief restructuring officer ("CRO"). Mark Shapiro, as principal representative of B. Riley in its capacity, serves as CRO to the Jointly Administered Debtors.

Debtor-in-Possession Financial Statements - The accompanying schedules herein are unaudited, preliminary, and may not comply with generally accepted accounting principles in the United States of America ("U.S. GAAP") in all material respects.

The Monthly Operating Report ("MOR") is limited in scope, covers a limited time period, and has been prepared solely for the purpose of complying with the monthly reporting requirements of the Bankruptcy Court and the United States Trustee.  The information presented herein has not been subjected to all procedures that would typically be applied to financial information presented in accordance with U.S. GAAP. Upon the application of such procedures, the financial information could be subject to changes, and these changes could be material. The information furnished in this MOR includes normal recurring adjustments, but does not include all of the adjustments that would typically be made for interim financial statements in accordance with U.S. GAAP.

Reservation of Rights: Given the complexity of the Debtors' business, inadvertent errors, omissions or over inclusions may have occurred. Accordingly, the Debtors hereby reserve all of their rights to dispute the validity, status, enforceability, or executory nature of any claim amount, representation or other statement in this MOR and reserve the right to amend or supplement this MOR, if necessary, but shall be under no obligation to do so.

**August 1-31, 2021 Monthly Operating Report:**

**(1)**  The Reporting Period for this MOR is August 1-31, 2021, and the financial statements referenced herein cover the same time period.

**(2)**  The Financial Statements are reported on an Accrual Basis. Cash Receipts & Disbursements are reported on a Cash Basis.

**(3)** The CRO, Mark Shapiro, has signed this MOR. Mr. Shapiro is an authorized signatory for the Debtor. In reviewing and signing the MOR, Mr. Shapiro has relied upon the efforts, statements and representations of various personnel employed by the Debtor and the Debtor's advisors. Mr. Shapiro has not (and could not have) personally verified the accuracy of each statement and representation contained in the MOR, including statements and representations concerning amounts owed to creditors, classification of such amounts, and other attached information.

**(4)**  MOR Part 2, d - Total Current Assets includes Cash and Accounts Receivable.

**(5)**  MOR Part 2, e - Total Assets includes Current Assets.

**(6)**  MOR Part 2, f - Post-Petition Payables (excluding taxes) is comprised of Trade Payables. The net increase in total liabilities from the previous reporting period is $4,317,190.73..

**(7)** MOR Part 2, k-m - Amounts are per the Debtor's bankruptcy schedules and are subject to adjustment once the claims process has been completed by the CRO, which includes, but is not limited to, examining, determining the validity of and objecting to any disputed, contingent, unliquidated and filed claims.

**(8)** MOR Part 2, k-o - As of the time of this filing, the CRO has not determined with accuracy the amount of the secured and unsecured debt, both of which are components of ending net equity/net worth.  Accordingly, the CRO makes no representations regarding the accuracy of the form-calculated net equity/net worth of the Debtor.

**(9)** MOR Part 7, i - See attached the schedule of insurance in effect for the Jointly Administered Debtors.

**Attachments to MOR:**

**A.**  Financial Statements

**B.**  Statement of Cash Receipts and Disbursements

**C.**  Bank Account Schedule, bank statements and bank reconciliations

**D.**  Schedule of Insurance in effect as of August 31, 2021 for the Jointly Administered Debtors

**STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS**
**FOR THE PERIOD BEGINNING <u>August 1, 2021</u> AND ENDING <u>August 31,2021</u>**

Name of Debtor: Limetree Bay Refining Operating, LLC          Case Number:  21-32355
Date of Petition:   July 12, 2021

| | | CURRENT MONTH | | CUMULATIVE PETITION TO DATE |
|---|---|---|---|---|
| **1. FUNDS AT BEGINNING OF PERIOD** | $ | 7,539.24 | $ | 20,962.36 |
| | | | | |
| **2. RECEIPTS:** | | | | |
| A. Cash Sales | | - | | - |
| Minus: Cash Refunds | | - | | - |
| Net Cash Sales | | - | | - |
| B. Accounts Receivable | | - | | - |
| C. Other Receipts | | 2,828,697.32 | | 5,472,197.32 |
| (If you receive rental income, you must attach a rent roll) | | | | |
| **3. TOTAL RECEIPTS** *(Lines 2A+2B+2C)* | | 2,828,697.32 | | 5,472,197.32 |
| **4. TOTAL FUNDS AVAILABLE FOR OPERATIONS** *(Line 1 + Line 3)* | | 2,836,236.56 | | 5,493,159.68 |
| | | | | |
| **5. DISBURSEMENTS** | | | | |
| A.   Advertising | | - | | - |
| B.   Bank Charges & Fees | | 226.23 | | 508.28 |
| C.   Contract Labor | | - | | - |
| D.   Fixed Asset Payments (not incl. in "N") | | - | | - |
| E.   Insurance | | - | | - |
| F.   Inventory Payments | | - | | - |
| G.   Leases & Contracts | | - | | - |
| H.   Manufacturing Supplies | | - | | - |
| I.  Office Supplies | | - | | - |
| J.   Payroll | | 1,609,304.12 | | 3,292,463.74 |
| K.   Professional Fees (Accounting & Legal) | | - | | - |
| L.   Rent | | - | | - |
| M.   Repairs & Maintenance | | - | | - |
| N.   Secured Creditor Payments | | - | | - |
| O.   Taxes Paid - Payroll | | 608,571.46 | | 1,195,460.25 |
| P.   Taxes Paid - Sales & Use | | - | | - |
| Q.   Taxes Paid - Other | | - | | - |
| R.   Telephone | | - | | - |
| S.   Travel & Entertainment | | - | | - |
| T.   U.S. Trustee | | - | | - |
| U.   Utilities | | - | | - |
| V.   Vehicle Expenses | | - | | - |
| W.   Other Operating Expenses | | 612,340.97 | | 998,933.63 |
| **6. TOTAL DISBURSEMENTS** *(Sum of 5A thru W)* | | 2,830,442.78 | | 5,487,365.90 |
| **7. ENDING BALANCE** *(Line 4 Minus Line 6)* | $ | 5,793.78 | $ | 5,793.78 |

**STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS (CONT'D.)**

**Detail of Other Receipts and Other Disbursements**

**OTHER RECEIPTS:**

Describe Each Item of Other Receipt and List Amount of Receipt.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| Transfers to/from Limetree Bay Refining, LLC | $      2,828,696.94 | $      5,472,196.94 |
| Limetree Bay Terminal Services | 0.38 | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | $      2,828,697.32 | $      5,472,196.94 |

**"Other Receipts" includes Loans from Insiders and other sources (i.e. Officer/Owner, related parties directors, related corporations, etc.).  Please describe below:**

| Loan Amount | Source of Funds | Purpose | Repayment Schedule |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**OTHER DISBURSEMENTS:**

Describe Each Item of Other Disbursement and List Amount of Disbursement.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| Employee Benefits | $      609,660.96 | $      992,802.86 |
| Wage Garnishments | 2,680.01 | 6,130.77 |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | $      612,340.97 | $      998,933.63 |

**Notes:**

[1] Debtor inadvertently disbursed $135,908.62 to UHC Services on August 16, 2021 on behalf of Limetree Bay Terminal Services ("LBTS") due to an error in UHC's ACH instructions.  The Debtor was reimbursed $135,909 on the same day by LBTS.

**Limetree Bay Refining Operating, LLC**
**Balance Sheet**
**August 31, 2021**

| | 8/31/2021 |
|---|---|
| **TOTAL ASSETS** | |
| | |
| 0000110500 LBRO OPERATING ACCOUNT - ORIENTAL - 8202040215 | 693.79 |
| 0000110510 LBRO PAYROLL ACCOUNT - ORIENTAL - 8202040216 | 5,099.99 |
| **\*CASH & CASH EQUIVALENTS** | **5,793.78** |
| | |
| 0000150500 Intercompany A/R | 96,786,845.99 |
| **\*ACCOUNTS RECEIVABLE - AFFILIATE** | **96,786,845.99** |
| **\*\*TOTAL CURRENT ASSETS** | **96,792,639.77** |
| | |
| **\*\*\*\* TOTAL ASSETS** | **96,792,639.77** |
| | |
| ================================= | |
| **TOTAL LIABILITIES AND MEMBERS' EQUITY** | |
| | |
| **TOTAL LIABILITIES** | |
| | |
| 0000235500 Intercompany A/P | (114,754,884.53) |
| **\*AFFILIATE PAYABLE, NET** | **(114,754,884.53)** |
| | |
| 0000230010 ACCRUED PAYROLL | (731,375.10) |
| 0000230011 ACCRUED BONUS | (4,044,746.13) |
| **\*ACCRUED LIABILITIES** | **(4,776,121.23)** |
| **\*\*TOTAL CURRENT LIABILITIES** | **(119,531,005.76)** |
| | |
| **\*\*\* TOTAL LIABILITIES** | **(119,531,005.76)** |
| | |
| **TOTAL MEMBERS' EQUITY** | |
| | |
| 0000320010 MEMBERS INITIAL INVESTMENT | (16,518,717.47) |
| **\*MEMBERS' INITIAL EQUITY** | **(16,518,717.47)** |
| **\*\*MEMBERS' EQUITY** | **(16,518,717.47)** |
| | |
| 0000380020 RETAINED  EARNINGS | 7,261,729.35 |
| **\*\*RETAINED EARNINGS / ACCUMULATED DEFICIT** | **7,261,729.35** |
| | |
| **\*\*PROFIT/LOSS IN CURRENT YEAR** | **31,995,354.11** |
| | |
| **\*\*\* TOTAL MEMBERS' EQUITY** | **22,738,365.99** |
| | |
| **\*\*\*\* TOTAL LIABILITIES & MEMBERS' EQUITY** | **(96,792,639.77)** |

**Limetree Bay Refining Operating, LLC**
**Income Statement**
**For the month ending August 31, 2021**

| | August 1-31, 2021 Unaudited |
|---|---|
| **INCOME STATEMENT** | |
| | |
| 0000601010 SALARIES AND WAGES (REGULAR & EXECUTIVE) | 2,071,212.82 |
| 0000601013 CAPITALIZED LABOR TO PROJECTS OFFSET | 0.00 |
| 0000601014 SALARIES AND WAGES-TERMINATIONS/SEVERANCE | 0.00 |
| 0000601020 VARIABLE COMPENSATION | 0.00 |
| 0000601025 SALARIES AND WAGES-OVERTIME WAGES | 260,710.50 |
| 0000601052 PAYROLL TAXES ALLOCATED  - FICA | 159,240.40 |
| 0000601053 TAXES-FEDERAL UNEMPLOYMENT | 206.31 |
| 0000601054 TAXES-STATE UNEMPLOYMENT | 1,510.29 |
| **SALARIES AND WAGES** | **2,492,880.32** |
| | |
| 0000601051 EMPLOYEE BENEFITS-HOSPITALIZATION/MEDICAL | (16,205.62) |
| 0000601056 EMPLOYEE BENEFITS-RETIREMENT PLAN | 115,423.70 |
| **BENEFITS** | **99,218.08** |
| | |
| 0000601057 RELOCATION | 31,349.88 |
| **TRAVEL** | **31,349.88** |
| | |
| 0000601064 EDUCATIONAL ASSISTANCE | 0.00 |
| **TRAINING & EDUCATION** | **0.00** |
| | |
| 0000601063 OTHER EMPLOYEE EXPENSE | 0.00 |
| **OTHER** | **0.00** |
| | |
| **EMPLOYEE EXPENSES** | **2,623,448.28** |
| | |
| 0000612020 FINES & PENALTY | 0.00 |
| **TAXES AND FEES** | **0.00** |
| | |
| **OTHER O&M** | **0.00** |
| | |
| **OPERATING EXPENSES** | **2,623,448.28** |
| | |
| 0000801010 SALARIES AND WAGES (REGULAR & EXECUTIVE) | 303,982.10 |
| 0000801013 CAPITALIZED LABOR | 0.00 |
| 0000801014 SALARIES AND WAGES-TERMINATIONS/SEVERANCE | 0.00 |
| 0000801020 VARIABLE COMPENSATION | 0.00 |
| 0000801025 SALARIES AND WAGES-OVERTIME WAGES | 1,317.81 |
| 0000801052 PAYROLL TAXES ALLOCATED  - FICA | 15,377.37 |
| 0000801053 TAXES-FEDERAL UNEMPLOYMENT | (217.34) |
| 0000801054 TAXES-STATE UNEMPLOYMENT | 63.64 |
| **SALARIES AND WAGES** | **320,523.58** |

**Limetree Bay Refining Operating, LLC**
**Income Statement**
**For the month ending August 31, 2021**

| | August 1-31, 2021<br>Unaudited |
|---|---|
| 0000801051 EMPLOYEE BENEFITS-HOSPITALIZATION/MEDICAL | 3,926.49 |
| 0000801056 EMPLOYEE BENEFITS-SAVINGS PLAN | 11,140.74 |
| **BENEFITS** | **15,067.23** |
| | |
| 0000801057 RELOCATION | 1,156,011.58 |
| **TRAVEL** | **1,156,011.58** |
| | |
| 0000801064 EDUCATIONAL ASSISTANCE | 2,848.46 |
| **TRAINING & EDUCATION** | **2,848.46** |
| | |
| **EMPLOYEE EXPENSES** | **1,494,450.85** |
| | |
| 0000808043 TELECOMMUNICATIONS EXP-CELLULAR | 83.04 |
| **COMMUNICATION EXPENSES** | **83.04** |
| **COMMUNICATIONS AND IT EXPENSES** | **83.04** |
| | |
| 0000812015 BANK CHARGES | 226.23 |
| **TAXES AND FEES** | **226.23** |
| | |
| **OTHER O&M** | **309.27** |
| | |
| **GENERAL ADMINISTRATION EXPENSE** | **1,494,760.12** |
| | |
| **\*\*TOTAL EXPENSES** | **4,118,208.40** |
| | |
| **\*\*\*OPERATING INCOME** | **(4,118,208.40)** |
| | |
| **\*\*\*\*NET INCOME (LOSS)** | **(4,118,208.40)** |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Limetree Bay Refining Operating, LLC**

**Schedule of Bank Accounts - As of August 31, 2021**

| Description | Operating Account | Payroll Account | Total - All Debtor Accounts |
|---|---|---|---|
| Account Name | Limetree Bay Refining Operating, LLC | Limetree Bay Refining Operating, LLC | |
| Bank Name | Oriental Bank | Oriental Bank | |
| Account Number - Last Four Digits | 0215 | 0216 | |
| Beginning book balance (as of 08/01/21) | $ 786.22 | $ 6,753.02 | $ 7,539.24 |
| Plus: Deposits | - | 2,964,767.47 | 2,964,767.47 |
| Subtotal | 786.22 | 2,971,520.49 | 2,972,306.71 |
| | | | |
| Less: Disbursements | (92.43) | (2,966,420.50) | (2,966,512.93) |
| Transfers | - | - | - |
| Other: | - | - | - |
| **Ending book balance (as of 08/31/21)** | **$ 693.79** | **$ 5,099.99** | **$ 5,793.78** |

**Oriental**

1628

P.O. Box 195115
San Juan, PR 00919-5115

Last statement: July 31, 2021
This statement: August 31, 2021
Total days in statement period: 31

Page 1 of 2
      0215
(0)

Direct inquiries to:
787-620-0000

LIMETREE BAY REFINING OPERATING LLC
1 ESTATE HOPE CHRISTIANSTED
ST CROIX VI 00820-5652

Oriental Bank
254 Munoz Rivera Ave
Hato Rey PR 00918

---

## Premium Business

| | | | |
|---|---|---|---|
| Account number | 0215 | Beginning balance | $786.22 |
| Low balance | $693.79 | Total additions | .00 |
| Average balance | $762.37 | Total subtractions | 92.43 |
| | | Ending balance | $693.79 |

**DEBITS**

| Date | Description | Subtractions |
|---|---|---|
| 08-24 | ' Maintenance Fee | 92.43 |
| | ANALYSIS ACTIVITY FOR 07/21 | |

**DAILY BALANCES**

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 07-31 | 786.22 | 08-24 | 693.79 | | |

**OVERDRAFT/RETURN ITEM FEES**

| | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

*Thank you for banking with Oriental Bank*

0 -131228

**LIMETREE BAY REFINING OPERATING**
**LBRO Operating Account - 110500**
**0215**
**August 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 7/31/2021 | $ | 786.22 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Bank Charges | | $ | (92.43) |
| Checks Cleared | | $ | - |
| Intransit Deposit | | $ | - |
| Ending Balance per Bank | 8/31/2021 | $ | 693.79 |
| Opening Balance  per Book | 7/31/2021 | | $786.22 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Bank Charges | | $ | (92.43) |
| Checks Issued | | $ | - |
| Ending Balance per Book | 8/31/2021 | $ | 693.79 |
| Outstanding Checks | | $ | - |
| | | $ | 693.79 |
| | | $ | 0.00 |

Reconciled by      George Southwell

Date:      9/1/2021

Approved by

Date:

# Oriental

P.O. Box 195115
San Juan, PR 00919-5115

Last statement: July 31, 2021
This statement: August 31, 2021
Total days in statement period: 31

Page 1 of 4
      0216
(0)

Direct inquiries to:
787-620-0000

LIMETREE BAY REFINING OPERATING LLC
1 ESTATE HOPE CHRISTIANSTED
ST CROIX VI 00820-5652

Oriental Bank
254 Munoz Rivera Ave
Hato Rey PR 00918

## Premium Business

| | | | |
|---|---|---|---|
| Account number | 0216 | Beginning balance | $6,753.02 |
| Low balance | $5,099.99 | Total additions | 2,964,767.47 |
| Average balance | $128,780.77 | Total subtractions | 2,966,420.50 |
| | | Ending balance | $5,099.99 |

**DEBITS**

| Date | Description | Subtractions |
|---|---|---|
| 08-02 | ʼ Preauthorized Wd<br>ADP Tax ADP Tax 210802<br>15VUR 0793284VV | 198.05 |
| 08-03 | ʼ Preauthorized Wd<br>LIMETREE BA 0216 PAYMENT 210803 | 161.53 |
| 08-04 | ʼ Wire Transfer-Out<br>WIRE OUT -ADP LLC<br>202108040000603 | 161.53 |
| 08-11 | ʼ Wire Transfer-Out<br>WIRE OUT -ADP LLC<br>202108110000637 | 821,212.94 |
| 08-12 | ʼ Preauthorized Wd<br>ADP WAGE GARN WAGE GARN 210812<br>415059345148VUR | 2,680.01 |
| 08-12 | ʼ Preauthorized Wd<br>ASCENSUS TRUST RET PLAN 210812 | 173,870.59 |
| 08-12 | ʼ Wire Transfer-Out<br>WIRE OUT -ADP LLC<br>202108120001245 | 359,261.81 |
| 08-13 | ʼ Preauthorized Wd<br>LIMETREE BA 0216 PAYMENT 210813 | 9,814.19 |
| 08-16 | ʼ Preauthorized Wd<br>UNITED HEALTHCAR EDI PAYMTS 210816<br>389407796537 | 135,908.62 |

LIMETREE BAY REFINING OPERATING LLC                    Page 2 of 4
August 31, 2021                                        0216

| Date | Description | Subtractions |
|------|-------------|-------------|
| 08-16 | ' Preauthorized Wd | 251,184.03 |
|  | UNITED HEALTHCAR EDI PAYMTS 210816 | |
|  | 905707797167 | |
| 08-24 | ' Maintenance Fee | 133.80 |
|  | ANALYSIS ACTIVITY FOR 07/21 | |
| 08-25 | ' Preauthorized Wd | 9,804.19 |
|  | LIMETREE BA 0216 PAYMENT 210825 | |
| 08-25 | ' Wire Transfer-Out | 248,950.07 |
|  | WIRE OUT -ADP LLC | |
|  | 202108250000809 | |
| 08-25 | ' Wire Transfer-Out | 788,091.18 |
|  | WIRE OUT -ADP LLC | |
|  | 202108250000808 | |
| 08-26 | ' Preauthorized Wd | 164,987.96 |
|  | ASCENSUS TRUST RET PLAN 210826 | |

## CREDITS

| Date | Description | | Additions |
|------|-------------|---|-----------|
| 08-02 | ' Cash Mgmt Trsfr Cr | | 251,184.00 |
|  | REF 2141053L FUNDS TRANSFER FRMDEP | 0267 | |
|  | FROM PER SHOHEB EMAIL JULY 29 2021 | | |
| 08-05 | ' | | 161.53 |
|  | RETURN SETTLE N ACH RTN - R23 ADP, LLC. | | |
|  | ORIGINAL ENTRY EFF DATE = 210803 | | |
| 08-11 | ' Cash Mgmt Trsfr Cr | | 821,212.94 |
|  | REF 2230910L FUNDS TRANSFER FRMDEP | 0267 | |
|  | FROM PER JAMES EMAIL AUGUST 11 2021 | | |
| 08-12 | ' Cash Mgmt Trsfr Cr | | 554,200.00 |
|  | REF 2241314L FUNDS TRANSFER FRMDEP | 0267 | |
|  | FROM PER SHOHEB EMAIL AUGUST 12 2021 | | |
| 08-16 | ' Cash Mgmt Trsfr Cr | | 135,909.00 |
|  | REF 2280721L FUNDS TRANSFER FRMDEP | 9236 | |
|  | FROM PER SHOHEB EMAIL AUGUST 16 2021 | | |
| 08-25 | ' Cash Mgmt Trsfr Cr | | 1,202,100.00 |
|  | REF 2370739L FUNDS TRANSFER FRMDEP | 0267 | |
|  | FROM PER SHOHEB EMAIL AUGUST 24 2021 | | |

## DAILY BALANCES

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 07-31 | 6,753.02 | 08-05 | 257,577.44 | 08-16 | 14,967.19 |
| 08-02 | 257,738.97 | 08-11 | 257,577.44 | 08-24 | 14,833.39 |
| 08-03 | 257,577.44 | 08-12 | 275,965.03 | 08-25 | 170,087.95 |
| 08-04 | 257,415.91 | 08-13 | 266,150.84 | 08-26 | 5,099.99 |

**LIMETREE BAY REFINING OPERATING**
**LBRO Payroll Account - 110510**
**          0216**
**August 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 7/31/2021 | $ | 6,753.02 |
| Deposits | | $ | 2,964,767.47 |
| ACH / Debits | | $ | (748,609.17) |
| Wires | | $ | (2,217,677.53) |
| Bank Charges | | $ | (133.80) |
| Checks Cleared | | $ | - |
| Intransit Payment | | $ | - |
| Ending Balance per Bank | 8/31/2021 | $ | 5,099.99 |
| Opening Balance  per Book | 7/31/2021 | $ | 6,753.02 |
| Deposits | | $ | 2,964,767.47 |
| ACH / Debits | | $ | (748,609.17) |
| Wires | | $ | (2,217,677.53) |
| Bank Charges | | $ | (133.80) |
| Checks Issued | | $ | - |
| Ending Balance per Book | 8/31/2021 | $ | 5,099.99 |
| Intransit Payroll Related Payments | | $ | - |
| Intransit Payroll Payment | | $ | - |
| Outstanding Checks | | $ | - |
| Ending Balance per Bank | | $ | 5,099.99 |
| | | $ | - |

Reconciled by          George Southwell

Date:          9/10/2021

Approved by

Date:

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of August 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | AIG/National Union Fire Insurance Co | Combined Property | Primary $250M | 026-1001312 | 2021.09.01 |
| Limetree Bay Refining, LLC | Allianz Global Risk US Insurance Company | Combined Property | Primary $1.25BN | USN00023920 | 2021.12.01 |
| Limetree Bay Refining, LLC | Axis (Endorsement) | Builder's Risk | $50M | EAU646295/01/2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 92SRD102973 | 2021.09.01 |
| Limetree Bay Refining, LLC | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 42-PRP-312023-01 | 2021.09.01 |
| Limetree Bay Refining, LLC | CIN 318/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC3 | Convex Insurance UK Limited | Combined Property | Primary $1.25BN (reduced to a limit of $250 million on August 20, 2021) | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Services, LLC | Liberty | Worker's Comp | | WCC-641-444917-020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hannover Re/HDI Global Specialty SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Helvetia/Helvetia Swiss Insurance Co in Liechtenstein Ltd | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | HSIC/Houston Specialty Insurance Company | Combined Property | $150M XS 50M | PRO440373 | 2021.12.01 |
| Limetree Bay Refining, LLC | LSM/Liberty Specialty Markets Agency Limited | Combined Property | $100M XS $100M | LSMAEN143232A | 2021.12.01 |
| Limetree Bay Refining, LLC | Munich Re/Great Lakes Insurance SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | PICC/Guardian General Insurance | Combined Property | $100M XS $100M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | QBE/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Rokstone/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC | SCOR (3)/General Security Indemnity Company of Arizona | Combined Property | Primary $1.25BN | FA007943720201 | 2021.09.01 |
| Limetree Bay Refining, LLC | Sompo/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of August 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | Swiss Re/Westport Insurance Company | Combined Property | Primary $500M | OMP 2000425-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Validus Specialty/Lloyds of London | Combined Property | Primary $250M | AJH292893A20 | 2021.09.01 |
| Limetree Bay Refining, LLC | Westchester Surplus Lines Ins Co/Starr Technical Risks Agency, Inc | Combined Property | Primary $500M | EPRN18215263 | 2021.12.01 |
| Limetree Bay Refining, LLC | WRB/Guardian General Insurance | Combined Property | $50M XS $50M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Zurich/Zurich American Insurance Company | Combined Property | Primary $100M | OGR 1296457-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arcadian/Ark/Helix Bermuda | Builder's Risk | $25M xs $100M | NAMBM2100005 | 2022.06.01 |
| Limetree Bay Refining, LLC | Allianz | Refinery Excess Liability | $15M xs $53M | USL00880520 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz | Environmental Liability | $15M xs $85M | USL00873320 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty | Refinery Primary Liability | | AS6-641-444917-010 | 2021.12.01 |
| Limetree Bay Refining, LLC | Travelers Syndicate | Refinery Primary Liability | | ENCAS2000012 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer/Apollo | Refinery Excess Liability | $15M | ENCAS2000011 | 2021.12.01 |
| Limetree Bay Refining, LLC | Westchester | Refinery Excess Liability | $3M xs $25M | G71809808001 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Refinery Excess Liability | $25M xs $28M | 4380100 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer | Refinery Excess Liability | $11M po $22M xs $68M | ENCAS2000020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lex-London | Refinery Excess Liability | $11M po $22M xs $68M | 62785689 | 2021.12.01 |
| Limetree Bay Refining, LLC | OSL | Refinery Excess Liability | $10M xs $90M | EXS-154724-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | AXA XL Bermuda | Refinery Excess Liability | $25M xs $125M | XLUMB-229978 | 2021.12.01 |
| Limetree Bay Refining, LLC | OCIL Bermuda | Refinery Excess Liability | $25M po $40M xs $150M | U920968-0620 | 2021.12.01 |
| Limetree Bay Refining, LLC | Sompo Bermuda | Refinery Excess Liability | $15M po $40M xs $150M | EXC30001524800 | 2021.12.01 |
| Limetree Bay Refining, LLC | Argo Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | ARGO-CAS-OR-001484 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of August 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | Arch Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | URP0065257-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel Bermuda | Refinery Excess Liability | $12.5M po $50M xs $190M | 1454233-11636-UMB-2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hamilton Bermuda | Refinery Excess Liability | $7.5M po $50M xs $190M | CX20-9216 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chubb Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LBR-2144/XS004 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LSMAEC119907A | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $1M | ENVP0000296-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $9M xs $1M | ENVX0000256-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Environmental Liability | $25M xs $10M | 262704 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ascot | Environmental Liability | $25M xs $35M | ENXP2110000428-01 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel | Environmental Liability | $25M xs $60M | MKLV4EFX102259 | 2021.12.01 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $5M | 8261-8347 | 2022.04.20 |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000623319211 | 2022.04.20 |
| Limetree Bay Refining, LLC | Wesco Insurance Company | Executive Risk | $5M | EUW1909831 00 | 2022.04.20 |
| | | | | | |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000622392201 | 2027.04.20 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $5M | 8247-1536 | 2027.04.20 |
| Limetree Bay Refining, LLC | First Liberty Insurance Co | Auto Liability | $2M | AS6-641-444917-010 | 2021.12.01 |

**Notes:**
**(1)** As of August 31, 2021, insurance premiums are paid in full except for the items discussed in footnotes 2, 3 and 4.
**(2)** The auto liability policy will be audited during December 2021.  A premium will be due for autos assigned to LBR for the period from June 1, 2021 through December 31, 2021
**(3)** Audit premiums are expected to be invoiced for non-current insurance policies including the Builders All Risk policy and OCIP.  As of the filing of the monthly operating report, the audit amounts have not been determined.
**(4)** Premium obligations outstanding as of August 31, 2021 for LBR are as follows:
   a.  PFA Loan 2055:  Balance due for $266,145
   b.  PFA Loan 2303:  Balance due for $536,580

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN  DISTRICT OF  TEXAS

### HOUSTON DIVISION

| | | |
|---|---|---|
| In Re. LIMETREE BAY REFINING MARKETING LLC | § | Case No.  21-32356 |
| | § | |
| | § | Lead Case No.  21-32351 |
| Debtor(s) | § | |
| | | ☒ Jointly Administered |

# Monthly Operating Report

Chapter 11

Reporting Period Ended: 08/31/2021     Petition Date: 07/12/2021

Months Pending: 2     Industry Classification: | 3 | 2 | 4 | 1 |

Reporting Method:     Accrual Basis ◉     Cash Basis ○

Debtor's Full-Time Employees (current):     0

Debtor's Full-Time Employees (as of date of order for relief):     0

**Supporting  Documentation** (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

- ☒ Statement of cash receipts and disbursements
- ☒ Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
- ☒ Statement of operations (profit or loss statement)
- ☐ Accounts receivable aging
- ☐ Postpetition liabilities aging
- ☐ Statement of capital assets
- ☐ Schedule of payments to professionals
- ☐ Schedule of payments to insiders
- ☒ All bank statements and bank reconciliations for the reporting period
- ☐ Description of the assets sold or transferred and the terms of the sale or transfer

/s/ Elizabeth A. Green     Elizabeth A. Green
Signature of Responsible Party     Printed Name of Responsible Party

10/01/2021     200 S. Orange Avenue
Date     SunTrust Center, Suite 2300
Orlando, FL 32801
Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

Debtor's Name  LIMETREE BAY REFINING MARKETING LLC

Case No.  21-32356

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a. Cash balance beginning of month | $1,061 | |
| b. Total receipts (net of transfers between accounts) | $120,261 | $-928,760 |
| c. Total disbursements (net of transfers between accounts) | $78,911 | $198,121 |
| d. Cash balance end of month (a+b-c) | $42,411 | |
| e. Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f. Total disbursements for quarterly fee calculation (c+e) | $78,911 | $198,121 |

| Part 2:  Asset and Liability Status<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | |
|---|---|---|
| a. Accounts receivable (total net of allowance) | $199,810,108 | |
| b. Accounts receivable over 90 days outstanding (net of allowance) | $43,265,129 | |
| c. Inventory   (Book ⦿  Market ◯  Other ◯   (attach explanation)) | $207,903,573 | |
| d  Total current assets | $408,495,828 | |
| e. Total assets | $450,260,589 | |
| f. Postpetition payables (excluding taxes) | $4,264,288 | |
| g. Postpetition payables past due (excluding taxes) | $4,264,288 | |
| h. Postpetition taxes payable | $0 | |
| i. Postpetition taxes past due | $0 | |
| j. Total postpetition debt (f+h) | $4,264,288 | |
| k. Prepetition secured debt | $1,056,353,789 | |
| l. Prepetition priority debt | $0 | |
| m. Prepetition unsecured debt | $198,765,709 | |
| n. Total liabilities (debt) (j+k+l+m) | $1,259,383,786 | |
| o. Ending equity/net worth (e-n) | $-809,123,197 | |

| Part 3:  Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a. Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b. Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c. Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4:  Income Statement (Statement of Operations)<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a. Gross income/sales (net of returns and allowances) | $159,563 | |
| b. Cost of goods sold (inclusive of depreciation, if applicable) | $2,533,675 | |
| c. Gross profit (a-b) | $-2,374,112 | |
| d. Selling expenses | $9,051,279 | |
| e. General and administrative expenses | $133,899 | |
| f. Other expenses | $0 | |
| g. Depreciation and/or amortization (not included in 4b) | $0 | |
| h. Interest | $3,193,654 | |
| i. Taxes (local, state, and federal) | $0 | |
| j. Reorganization items | $0 | |
| k. Profit (loss) | $-14,772,944 | $-7,152,707 |

Debtor's Name LIMETREE BAY REFINING MARKETING LLC          Case No.  21-32356

## Part 5:  Professional Fees and Expenses

| | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|
| a. | Debtor's professional fees & expenses (bankruptcy)  *Aggregate Total* | | | | |
| | *Itemized Breakdown by Firm* | | | | |
| | Firm Name | Role | | | |
| i | | | | | |
| ii | | | | | |

| | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy)  *Aggregate Total* | | | | |
| | *Itemized Breakdown by Firm* | | | | |
| | Firm Name | Role | | | |
| i | | | | | |
| ii | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | |

## Part 6:  Postpetition Taxes

| | | Current Month | Cumulative |
|---|---|---|---|
| a. | Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. | Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. | Postpetition employer payroll taxes accrued | $0 | $0 |
| d. | Postpetition employer payroll taxes paid | $0 | $0 |
| e. | Postpetition property taxes paid | $0 | $0 |
| f. | Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. | Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

## Part 7: Questionnaire - During this reporting period:

a.  Were any payments made on prepetition debt?  (if yes, see Instructions)          Yes ○   No ◉

b.  Were any payments made outside the ordinary course of business without court approval?  (if yes, see Instructions)          Yes ○   No ◉

c.  Were any payments made to or on behalf of insiders?          Yes ○   No ◉

d.  Are you current on postpetition tax return filings?          Yes ◉   No ○

e.  Are you current on postpetition estimated tax payments?          Yes ◉   No ○

f.  Were all trust fund taxes remitted on a current basis?          Yes ◉   No ○

g.  Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions)          Yes ◉   No ○

h.  Were all payments made to or on behalf of professionals approved by the court?          Yes ○   No ○   N/A ◉

i.  Do you have:          Worker's compensation insurance?          Yes ◉   No ○

          If yes, are your premiums current?          Yes ◉   No ○   N/A ○   (if no, see Instructions)

          Casualty/property insurance?          Yes ◉   No ○

          If yes, are your premiums current?          Yes ◉   No ○   N/A ○   (if no, see Instructions)

          General liability insurance?          Yes ◉   No ○

          If yes, are your premiums current?          Yes ◉   No ○   N/A ○   (if no, see Instructions)

j.  Has a plan of reorganization been filed with the court?          Yes ○   No ◉

Debtor's Name LIMETREE BAY REFINING MARKETING LLC          Case No. 21-32356

k.  Has a disclosure statement been filed with the court?          Yes ○  No ●
l.  Are you current with quarterly U.S. Trustee fees as            Yes ●  No ○
    set forth under 28 U.S.C. § 1930?

| **Part 8: Individual Chapter 11 Debtors (Only)** | |
|---|---|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |

l.  Are you required to pay any Domestic Support Obligations as defined by 11    Yes ○  No ●
    U.S.C § 101(14A)?
m.  If yes, have you made all Domestic Support Obligation payments?          Yes ○  No ○  N/A ●

### Privacy Act Statement

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107. The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6). The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith. This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law. Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records." See 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006). A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm. Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee. 11 U.S.C. § 1112(b)(4)(F).

**I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.**

Mark Shapiro                                      Mark Shapiro, Chief Restructuring Officer
_____                     _____
Signature of Responsible Party                    Printed Name of Responsible Party

Chief Restructuring Officer                       10/01/2021
_____                     _____
Title                                             Date

**CASE NAME:**  **Limetree Bay Refining Marketing, LLC**
**CASE NUMBER:**  **21-32356 (Jointly Administered under Lead Case No.: 21-32351)**

### Notes to the Monthly Operating Report

**General:**

On July 12, 2021 (the "Petition Date"), Limetree Bay Services, LLC ("Limetree") filed a voluntary petition with the United States Bankruptcy Court under Chapter 11 of the Bankruptcy Code [Case No.: 21-32351], along with five (5) affiliated entities (Affiliated Entities). The debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); and Limetree Bay Refining Marketing, LLC (9222); (collectively, the "Debtors" or "Jointly Administered Debtors"). The bankruptcy filings of Limetree and the Affiliated Entities are jointly administered under Case No. 21-32351.

On or about June 17, 2021, the Jointly Administered Debtors retained B. Riley as chief restructuring officer ("CRO"). Mark Shapiro, as principal representative of B. Riley in its capacity, serves as CRO to the Jointly Administered Debtors.

Debtor-in-Possession Financial Statements - The accompanying schedules herein are unaudited, preliminary, and may not comply with generally accepted accounting principles in the United States of America ("U.S. GAAP") in all material respects.

The Monthly Operating Report ("MOR") is limited in scope, covers a limited time period, and has been prepared solely for the purpose of complying with the monthly reporting requirements of the Bankruptcy Court and the United States Trustee. The information presented herein has not been subjected to all procedures that would typically be applied to financial information presented in accordance with U.S. GAAP. Upon the application of such procedures, the financial information could be subject to changes, and these changes could be material. The information furnished in this MOR includes normal recurring adjustments, but does not include all of the adjustments that would typically be made for interim financial statements in accordance with U.S. GAAP.

Reservation of Rights: Given the complexity of the Debtors' business, inadvertent errors, omissions or over inclusions may have occurred. Accordingly, the Debtors hereby reserve all of their rights to dispute the validity, status, enforceability, or executory nature of any claim amount, representation or other statement in this MOR and reserve the right to amend or supplement this MOR, if necessary, but shall be under no obligation to do so.

### August 1-31, 2021 Monthly Operating Report:

**(1)** The Reporting Period for this MOR is August 1-31, 2021, and the financial statements referenced herein cover the same time period.

**(2)** The Financial Statements are reported on an Accrual Basis. Cash Receipts & Disbursements are reported on a Cash Basis.

**(3)** The CRO, Mark Shapiro, has signed this MOR. Mr. Shapiro is an authorized signatory for the Debtor. In reviewing and signing the MOR, Mr. Shapiro has relied upon the efforts, statements and representations of various personnel employed by the Debtor and the Debtor's advisors. Mr. Shapiro has not (and could not have) personally verified the accuracy of each statement and representation contained in the MOR, including statements and representations concerning amounts owed to creditors, classification of such amounts, and other attached information.

**(4)** MOR Part 2, d - Total Current Assets includes Cash, Accounts Receivable, Inventory and Prepaid Expenses.

**(5)** MOR Part 2, e - Total Assets includes Current Assets, Fixed Assets, and Debt Issuance Costs.

**(6)** MOR Part 2, f - Post-Petition Payables (excluding taxes) is comprised of Trade Payables. The net increase in total liabilities from the previous reporting period is $12,306,551.31.

**(7)** MOR Part 2, k-m - Amounts are per the Debtor's bankruptcy schedules and are subject to adjustment once the claims process has been completed by the CRO, which includes, but is not limited to, examining, determining the validity of and objecting to any disputed, contingent, unliquidated and filed claims.

**(8)** MOR Part 2, k-o - As of the time of this filing, the CRO has not determined with accuracy the amount of the secured and unsecured debt, both of which are components of ending net equity/net worth. Accordingly, the CRO makes no representations regarding the accuracy of the form-calculated net equity/net worth of the Debtor.

**(9)** MOR Part 7, i - See attached the schedule of insurance in effect for the Jointly Administered Debtors.

**Attachments to MOR:**

**A.** Financial Statements

**B.** Statement of Cash Receipts and Disbursements

**C.** Bank Account Schedule, bank statements and bank reconciliations

**D.** Schedule of Insurance in effect as of August 31, 2021 for the Jointly Administered Debtors

## STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS
### FOR THE PERIOD BEGINNING <u>August 1, 2021</u> AND ENDING <u>August 31,2021</u>

Name of Debtor: Limetree Bay Refining Marketing, LLC        Case Number: 21-32356
Date of Petition:   July 12, 2021

| | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|
| **1. FUNDS AT BEGINNING OF PERIOD** | $ 1,061.03 | $ 1,169,291.77 |
| | | |
| **2. RECEIPTS:** | | |
| A. Cash Sales | - | - |
| Minus: Cash Refunds | - | - |
| Net Cash Sales | - | - |
| B. Accounts Receivable | 120,250.00 | 2,970,729.00 |
| C. Other Receipts | 10.71 | (3,899,489.29) |
| (If you receive rental income, you must attach a rent roll) | | |
| **3. TOTAL RECEIPTS *(Lines 2A+2B+2C)*** | 120,260.71 | (928,760.29) |
| **4. TOTAL FUNDS AVAILABLE FOR OPERATIONS *(Line 1 + Line 3)*** | 121,321.74 | 240,531.48 |
| | | |
| **5. DISBURSEMENTS** | | |
| A.   Advertising | - | - |
| B.   Bank Charges & Fees | 142.03 | 447.06 |
| C.   Contract Labor | - | - |
| D.   Fixed Asset Payments (not incl. in "N") | - | - |
| E.   Insurance | 78,768.79 | 78,768.79 |
| F.   Inventory Payments | - | - |
| G.   Leases & Contracts | - | - |
| H.   Manufacturing Supplies | - | - |
| I.   Office Supplies | - | - |
| J.   Payroll | - | - |
| K.   Professional Fees (Accounting & Legal) | - | - |
| L.   Rent | - | - |
| M.   Repairs & Maintenance | - | - |
| N.   Secured Creditor Payments | - | 118,904.71 |
| O.   Taxes Paid - Payroll | - | - |
| P.   Taxes Paid - Sales & Use | - | - |
| Q.   Taxes Paid - Other | - | - |
| R.   Telephone | - | - |
| S.   Travel & Entertainment | - | - |
| T.   U.S. Trustee | - | - |
| U.   Utilities | - | - |
| V.   Vehicle Expenses | - | - |
| W.   Other Operating Expenses | - | - |
| **6. TOTAL DISBURSEMENTS *(Sum of 5A thru W)*** | 78,910.82 | 198,120.56 |
| **7. ENDING BALANCE *(Line 4 Minus Line 6)*** | $ 42,410.92 | $ 42,410.92 |

**STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS (CONT'D.)**

**Detail of Other Receipts and Other Disbursements**

**OTHER RECEIPTS:**

Describe Each Item of Other Receipt and List Amount of Receipt.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| Transfer to/from Limetree Bay Refining, LLC | $          - | $    (3,899,500.00) |
| Dividends | 10.71 | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | $       10.71 | $    (3,899,500.00) |

**"Other Receipts" includes Loans from Insiders and other sources (i.e. Officer/Owner, related parties directors, related corporations, etc.). Please describe below:**

| Loan Amount | Source of Funds | Purpose | Repayment Schedule |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**OTHER DISBURSEMENTS:**

Describe Each Item of Other Disbursement and List Amount of Disbursement.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
|  | $          - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | - | - |
|  | $          - | $          - |

**Limetree Bay Refining Marketing, LLC**
**Balance Sheet**
**August 31, 2021**

|                                                                 | 8/31/2021        |
|-----------------------------------------------------------------|------------------|
| **TOTAL ASSETS**                                                |                  |
|                                                                 |                  |
| 0000110250 REVENUE ACCOUNT - DEUTSCHE BANK - SE1972.1           | 969.42           |
| 0000110260 O & M ACCOUNT - DEUTSCHE BANK - SE1972.2             | 1.49             |
| 0000110800 LBRM OPERATING ACCOUNT - ORIENTAL - 92040986         | 41,440.01        |
| **\*CASH & CASH EQUIVALENTS**                                   | **42,410.92**    |
|                                                                 |                  |
| 0000120001 A/R TRADE RECEIVABLE RECONCILIATION                  | 165,733,843.88   |
| 0000120205 Accounts Receivable - BP                             | 1,849,172.63     |
| **ACCOUNTS RECEIVABLE, TRADE**                                  | **167,583,016.51** |
| **\*ACCOUNTS RECEIVABLE, NET**                                  | **167,583,016.51** |
|                                                                 |                  |
| 0000150500 Intercompany A/R                                     | 32,227,091.00    |
| **\*ACCOUNTS RECEIVABLE - AFFILIATE**                           | **32,227,091.00** |
|                                                                 |                  |
| 0000190105 Initial and Ramp-up Margin                           | 48,582,646.70    |
| 0000190106 J Aron Inventory Financing Netting                   | (48,582,646.70)  |
| **\*RECEIVABLE UNDER INVEN FINANCING ARRANGEMENT**              | **0.00**         |
|                                                                 |                  |
| 0000130320 Inventory - Crude - Product Costs                    | 148,815,906.12   |
| 0000130330 Inventory - Distillate - Product Costs               | 16,991,353.54    |
| 0000130340 Inventory - Fuel Oil - Product Costs                 | 5,663,869.93     |
| 0000130360 Inventory - Heavy Naphtha - Product Costs            | 25,502,091.67    |
| 0000130370 Inventory - Intermediates - Product Costs            | 7,434,330.83     |
| 0000130380 Inventory - Light Naphtha - Product Costs            | 230,998.45       |
| 0000130390 Inventory - LPG - Product Costs                      | 1,229,057.41     |
| 0000130405 Inventory - Slop - Product Costs                     | (0.64)           |
| 0000130415 Inventory - VGO - Product Costs                      | 1,355,878.18     |
| 0000130440 Inventory - ULSD                                     | 680,087.67       |
| **\*INVENTORY**                                                 | **207,903,573.16** |
|                                                                 |                  |
| 0000140023 PPD INSURANCE - STOCK THROUGHPUT PROPERTY            | 485,624.99       |
| **PREPAID INSURANCE**                                           | **485,624.99**   |
|                                                                 |                  |
| 0000140110 PPD SUNDRY                                           | 94,548.51        |
| **PREPAID OTHER**                                               | **94,548.51**    |
| **\*PREPAID EXPENSES AND OTHER**                                | **580,173.50**   |
|                                                                 |                  |
| **\*\*TOTAL CURRENT ASSETS**                                    | **408,336,265.09** |
|                                                                 |                  |
|                                                                 |                  |
| 0000160250 FIXED ASSETS - NON RECONCILIATION                    | 36,834,513.36    |
| **OTHER**                                                       | **36,834,513.36** |
|                                                                 |                  |
| **PP&E - GROSS**                                                | **36,834,513.36** |
| **PROPERTY, PLANT & EQUIPMENT, NET**                            | **36,834,513.36** |
| **\*TOTAL PROPERTY, PLANT AND EQUIPMENT, NET**                  | **36,834,513.36** |

**Limetree Bay Refining Marketing, LLC**
**Balance Sheet**
**August 31, 2021**

| | 8/31/2021 |
|---|---|
| 0000190100 Debt Issuance Costs - IM | 4,930,248.11 |
| **OTHER ASSETS** | **4,930,248.11** |
| | |
| ***OTHER ASSETS** | **4,930,248.11** |
| | |
| ****TOTAL NON-CURRENT ASSETS** | **41,764,761.47** |
| | |
| ***** TOTAL ASSETS** | **450,101,026.56** |

===================================
**TOTAL LIABILITIES AND MEMBERS' EQUITY**

**TOTAL LIABILITIES**

| | |
|---|---|
| 0000200010 A/P TRADE RECONCILIATION | (43,012,993.94) |
| 0000200099 AP - OTHER | 15,450,507.06 |
| 0000200200 Accounts Payable - Aron | (912,708.91) |
| 0000200205 Accounts Payable - BP | (1,838,548.54) |
| ***ACCOUNTS PAYABLE TRADE**[1] | **(30,313,744.33)** |
| | |
| 0000235500 Intercompany A/P | (148,830,504.45) |
| ***AFFILIATE PAYABLE, NET** | **(148,830,504.45)** |
| | |
| 0000231510 ACCRUED INTEREST-DEBT | (602,777.78) |
| ***ACCRUED INTEREST** | **(602,777.78)** |
| | |
| 0000200023 GR/IR PRODUCT (MANUAL) | 0.00 |
| 0000200040 VOUCHER ACCRUALS | (44,470,786.30) |
| 0000235305 Interest Payable - Precious Catalyst Advance | 0.03 |
| ***ACCRUED LIABILITIES** | **(44,470,786.27)** |
| | |
| 0000235230 Degradation Value Payable - Base Catalyst Advance | (15,256,127.32) |
| 0000235247 DEBT ISSUANCE COSTS - BASE CATALYSTS - CURRENT | 507,553.85 |
| **BASE CATALYST ADVANCE-CURRENT** | **(14,748,573.47)** |
| | |
| 0000235225 Degradation Value Payable - Precious Catalyst Adv | (9,712,627.66) |
| 0000235246 DEBT ISSUANCE COSTS - PRECIOUS CATALYSTS - CURREI | 507,553.84 |
| **PRECIOUS CATALYST ADVANCE-CURRENT** | **(9,205,073.82)** |
| | |
| **ACCRUED OTHER INSURANCE PREMIUMS** | **0.00** |
| 0000235030 ACCRUED OTHER INSURANCE | (390,916.98) |
| | |
| **OTHER LONG TERM DEBT-CURRENT PORTION** | **(24,344,564.27)** |
| | |
| ***CURRENT PORTION OF LONG-TERM DEBT** | **(24,344,564.27)** |
| | |
| 0000235400 Aron Obligation | (221,952,054.06) |
| 0000235406 J Aron Inventory Financing Netting | 48,582,646.70 |
| ***OBLIGATION UNDER INVEN FINANCING ARRANGEMENT** | **(173,369,407.36)** |
| ****TOTAL CURRENT LIABILITIES** | **(421,931,784.46)** |

**Limetree Bay Refining Marketing, LLC**
**Balance Sheet**
**August 31, 2021**

|  | 8/31/2021 |
|---|---|
|  |  |
| 0000260080 SENIOR SECURED CREDIT FACILITIES  - 2018 | (50,000,000.00) |
| **SENIOR SECURED CREDIT FACILITIES-2018** | **(50,000,000.00)** |
|  |  |
| **SENIOR SECURED CREDIT FACILITIES** | **(50,000,000.00)** |
| **OTHER LONG TERM DEBT** | **(50,000,000.00)** |
|  |  |
| **\*LONG-TERM DEBT, NET CRRNT PRTN & ISSNCE CST** | **(50,000,000.00)** |
|  |  |
| **\*\*TOTAL NON-CURRENT LIABILITIES** | **(50,000,000.00)** |
|  |  |
| **\*\*\* TOTAL LIABILITIES** | **(471,931,784.46)** |
|  |  |
|  |  |
| **TOTAL MEMBERS' EQUITY** |  |
|  |  |
| 0000320100 Equity - LBR | (754,975.47) |
| **\*MEMBERS' ADDITIONAL INVESTMENT** | **(754,975.47)** |
| **\*\*MEMBERS' EQUITY** | **(754,975.47)** |
|  |  |
| 0000380020 RETAINED  EARNINGS | 50,157,292.40 |
| **\*\*RETAINED EARNINGS / ACCUMULATED DEFICIT** | **50,157,292.40** |
|  |  |
| **\*\*PROFIT/LOSS IN CURRENT YEAR** | **(27,571,559.03)** |
|  |  |
|  | 22,585,733.37 |
| **\*\*\* TOTAL MEMBERS' EQUITY** | **21,830,757.90** |
|  |  |
| **\*\*\*\* TOTAL LIABILITIES & MEMBERS' EQUITY** | **(450,101,026.56)** |

**Notes:**
**(1)** Accounts payable includes an expected insurance refund for $159,562.50.
On the MOR, the expected insurance refund is reflected in Total Current
Assets.

**Limetree Bay Refining Marketing, LLC**
**Income Statement**
**For the month ending August 31, 2021**

| | August 1-31, 2021<br>Unaudited |
|---|---|
| **INCOME STATEMENT** | |
| | |
| 0000400010 SALES THIRD PARTY-PETROLEUM PRODUCTS | 0.00 |
| **\*REFINERY REVENUES** | **0.00** |
| **\*\*TOTAL REVENUES** | **0.00** |
| | |
| 0000520100 INVENTORY MOVE PRICE DIFFERENCE | 0.00 |
| 0000520130 OTHER COST OF SALES | 2,553,674.75 |
| 0000520160 VESSEL DEMURRAGE | 0.00 |
| **\*\*COST OF GOODS SOLD** | **2,553,674.75** |
| | |
| 0000607020 TRAVEL AND LODGING | 0.00 |
| **MEALS & ENTERTAINMENT** | **0.00** |
| | |
| 0000601078 SAFETY EXPENSE | 0.00 |
| **OTHER** | **0.00** |
| | |
| **EMPLOYEE EXPENSES** | **0.00** |
| | |
| 0000603011 CONSULTING FEES - NON-OPERATING | (11,167.00) |
| **CONSULTING FEES** | **(11,167.00)** |
| | |
| 0000603012 ENGINEERING FEES | 25,507.76 |
| **ENGINEERING FEES** | **25,507.76** |
| | |
| 0000603030 INSPECTION FEES-QUANTITY | (182,821.00) |
| 0000603031 INSPECTION FEES-QUALITY | 762,216.13 |
| **INSPECTION FEES** | **579,395.13** |
| | |
| **PROFESSIONAL FEES** | **593,735.89** |
| | |
| 0000608015 POWER PLANT FUEL - EXTERNAL | 1,121,467.13 |
| **FUEL EXPENSE** | **1,121,467.13** |
| | |
| 0000602017 SPILL CLEAN UP | (4,800.00) |
| **ENVIRONMENTAL** | **(4,800.00)** |
| | |
| 0000603020 PINNACLE - REPAIRS & MAINTENANCE | (2,225.74) |
| 0000606030 REPAIR & MAINTENANCE - GENERAL | 0.00 |
| 0000606034 R&M - Fixed Equipment Work | 0.00 |
| 0000606035 R&M – Instrument, Electrical and Analyzer Work | 0.00 |
| 0000606036 R&M – Rotating Equipment | 0.00 |
| 0000606037 R&M – Scaffold, Asbestos, Insulation and Painting | 0.00 |
| 0000606039 R&M – Maintenance Support Services, Other | 350.00 |
| **REPAIRS AND MAINTENANCE** | **(1,875.74)** |

**Limetree Bay Refining Marketing, LLC**
**Income Statement**
**For the month ending August 31, 2021**

| | August 1-31, 2021<br>Unaudited |
|---|---|
| 0000608043 TELECOMMUNICATIONS EXP-CELLULAR | 0.00 |
| **COMMUNICATION EXPENSES** | **0.00** |
| | |
| 0000604011 HARDWARE - DESKTOP PURCHASES | 0.00 |
| 0000604037 SOFTWARE - NETWORK MAINTENANCE | 138,390.00 |
| **IT EXPENSES** | **138,390.00** |
| | |
| **COMMUNICATIONS AND IT EXPENSES** | **138,390.00** |
| | |
| 0000602041 PINNACLE - NON REPAIRS & MAINTENANCE | 0.00 |
| **CONTRACTOR OVERHEAD** | **0.00** |
| | |
| 0000602060 WASTE DISPOSAL - NON-ENVIRONMENTAL | 58,280.00 |
| 0000602061 WASTE DISPOSAL - RECYCLING | 220,029.00 |
| 0000602065 OUTSIDE LABOR/SERVICES - HOURLY | 0.00 |
| 0000602080 TEMPORARY OUTSIDE LABOR / SERVICES | 30,267.35 |
| 0000602090 CONTRACT SERVICES - LUMP SUM | 1,071.00 |
| 0000602091 WASTE WATER TREATMENT PLANT - OUTSIDE CONTRACT( | 162,008.70 |
| **OUTSIDE SERVICES** | **471,656.05** |
| | |
| 0000608030 UTILITY EXPENSE - WATER | 168,410.78 |
| **UTILITIES** | **168,410.78** |
| | |
| 0000613030 RENTS OFFICE & REAL ESTATE | 3,058.75 |
| 0000613035 RENTALS-OTHER | 5,199,968.70 |
| **RENTAL EXPENSES** | **5,203,027.45** |
| | |
| 0000612025 LICENSES AND PERMITS-OTHER | 0.00 |
| 0000612030 MEMBERSHIPS/DUES | 0.00 |
| 0000612031 BOOKS/MANUALS/SUBSCRIPTIONS | 0.00 |
| **LICENSES, MEMBERSHIPS AND SUBSCRIPTIONS** | **0.00** |
| | |
| 0000605010 OFFICE SUPPLY | 0.00 |
| 0000605011 POSTAGE | 32.40 |
| 0000605020 OPERATING SUPPLY | 105,181.66 |
| 0000605021 INVENTORY VARIANCES | 92,416.40 |
| 0000606010 MAINTENANCE SUPPLIES | (17,539.00) |
| 0000606013 R&M - OUTSIDE CONTRACTORS (NON-PINNACLE) | 0.00 |
| 0000606019 EQUIPMENT RENTALS - MAINTENANCE | 1,002,560.81 |
| 0000620010 FREIGHT EXPENSE | 4,202.21 |
| 0000620020 AIR FREIGHT | 7,614.88 |
| 0000620030 DEMURRAGE EXPENSE THIRD PARTY-NON ST&T | 585.00 |
| 0000620040 FREIGHT EXPENSE ENVIRONMENTAL | 0.00 |
| 0000620050 CUSTOMS & BROKERAGE CHARGES | 5,350.00 |
| 0000620060 PRODUCT CONSUMED-GASOLINE & OIL | (101,535.40) |

**Limetree Bay Refining Marketing, LLC**
**Income Statement**
**For the month ending August 31, 2021**

| | August 1-31, 2021 Unaudited |
|---|---:|
| 0000620072 GAS & OIL CONSUMED-VEHICLES | 0.00 |
| 0000630010 MARINE PRESERVATION / NATIONAL RESPONSE CORP | 38,632.64 |
| 0000630020 CHEMICALS EXP | 207,595.51 |
| 0000630030 CATALYST | 16,170.00 |
| 0000630040 ADDITIVES EXPENSE | 0.00 |
| 0000630070 MISC EXP - OPERATING EXPENSE | 0.00 |
| 0000640000 SHARED SERVICES CLEARING | 0.00 |
| **OFFICE AND MISC OPERATING EXPENSES** | **1,361,267.11** |
| | |
| 0000640050 MISC EXP - NON OPERATING EXPENSE | 0.00 |
| **OTHER MISC O&M** | **0.00** |
| | |
| **OTHER O&M** | **8,457,542.78** |
| | |
| **OPERATING EXPENSES** | **9,051,278.67** |
| | |
| | |
| 0000814012 INS-ALL RISK PROPERTY | 80,937.50 |
| **PROPERTY** | **80,937.50** |
| | |
| 0000814050 INS-OTHER | (120,250.00) |
| **OTHER** | **(120,250.00)** |
| | |
| **INSURANCE** | **(39,312.50)** |
| | |
| | |
| 0000803011 CONSULTING FEES | 0.00 |
| **CONSULTING FEES** | **0.00** |
| | |
| 0000803013 LEGAL FEES | 0.00 |
| **LEGAL FEES** | **0.00** |
| | |
| **PROFESSIONAL FEES** | **0.00** |
| | |
| | |
| 0000804034 SOFTWARE - DESKTOP MAINTENANCE | 0.00 |
| **IT EXPENSES** | **0.00** |
| | |
| **COMMUNICATIONS AND IT EXPENSES** | **0.00** |
| | |
| 0000808010 UTILITY EXPENSE-ELECTRICITY | 0.00 |
| **UTILITIES** | **0.00** |
| | |
| 0000812015 BANK CHARGES | 142.03 |
| **TAXES AND FEES** | **142.03** |

**Limetree Bay Refining Marketing, LLC**
**Income Statement**
**For the month ending August 31, 2021**

| | August 1-31, 2021<br>Unaudited |
|---|---|
| 0000812031 BOOKS/MANUALS/SUBSCRIPTIONS | 13,506.93 |
| **LICENSES, MEMBERSHIPS AND SUBSCRIPTIONS** | **13,506.93** |
| | |
| 0000811017 COMMUNITY RELATIONS EVENTS | 0.00 |
| **CONTRIBUTIONS AND DONATIONS** | **0.00** |
| | |
| 0000805011 POSTAGE | 0.00 |
| 0000830070 MISC EXPENSES - G&A | 0.00 |
| **OFFICE AND MISC OPERATING EXPENSES** | **0.00** |
| | |
| **OTHER O&M** | **13,648.96** |
| | |
| **GENERAL ADMINISTRATION EXPENSE** | **(25,663.54)** |
| | |
| 0000440200 Realized (income) / loss - Market Structure Roll | 0.00 |
| 0000440215 Realized (income) / loss - Other | 0.00 |
| 0000440305 Unrealized MTM (income) loss – Step-out | 0.00 |
| 0000645000 Other Income/Expense | 0.00 |
| **\*MISC. OPERATING (INCOME) EXPENSE.** | **0.00** |
| | |
| **\*\*TOTAL EXPENSES** | **9,025,615.13** |
| | |
| **\*\*\*OPERATING INCOME** | **(11,579,289.88)** |
| | |
| 0000818010 INTEREST EXPENSE | 441,998.80 |
| 0000818020 INVESTMENT INTEREST INCOME | (12.11) |
| 0000818030 Interest Expense - Base Catalyst Advance | 169,184.64 |
| 0000818031 Interest Expense - Precious Catalyst Advance | 169,184.64 |
| 0000818040 Interest Expense - IM Financing Fee | 0.00 |
| 0000818041 Interest Expense - IM Intermediation Fee | 2,413,298.18 |
| **\*\*INTEREST AND FINANCING EXPENSE** | **3,193,654.15** |
| | |
| **\*\*\*TOTAL NON-OPERATING INCOME (EXPENSE):** | **(14,772,944.03)** |
| | |
| **\*\*\*\*NET INCOME (LOSS)** | **(14,772,944.03)** |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Limetree Bay Refining Marketing, LLC**

**Schedule of Bank Accounts - As of August 31, 2021**

| Description | Operating Account | Revenue Account | O&M Account | Total - All Debtor Accounts |
|---|---|---|---|---|
| Account Name | Limetree Bay Refining Marketing, LLC | Limetree Bay Refining Marketing, LLC | Limetree Bay Refining Marketing, LLC | |
| Bank Name | Oriental Bank | Deutsche Bank | Deutsche Bank | |
| Account Number - Last Four Digits | 0986 | 972.1 | 972.2 | |
| Beginning book balance (as of 08/01/21) | $ 100.83 | $ 958.71 | $ 1.49 | $ 1,061.03 |
| Plus: Deposits | 120,250.00 | 10.71 | - | 120,260.71 |
| Subtotal | 120,350.83 | 969.42 | 1.49 | 121,321.74 |
| | | | | |
| Less: Disbursements | (78,910.82) | - | - | (78,910.82) |
| Transfers | - | - | - | - |
| Other: | - | - | - | - |
| **Ending book balance (as of 08/31/21)** | **$ 41,440.01** | **$ 969.42** | **$ 1.49** | **$ 42,410.92** |

# Oriental

P.O. Box 195115
San Juan, PR 00919-5115

Last statement: July 31, 2021
This statement: August 31, 2021
Total days in statement period: 31

Page 1 of 3
0986
(0)

Direct inquiries to:
787-620-0000

LIMETREE BAY REFINING MARKETING LLC
D A C A
1 ESTATE HOPE
CHRISTIANSTED VI 00820

Oriental Bank
254 Munoz Rivera Ave
Hato Rey PR 00918

## Premium Business

| | | | |
|---|---|---|---|
| Account number | 0986 | Beginning balance | $100.83 |
| Low balance | $41,440.01 | Total additions | 120,250.00 |
| Average balance | $42,748.21 | Total subtractions | 78,910.82 |
| | | Ending balance | $41,440.01 |

**DEBITS**

| Date | Description | Subtractions |
|---|---|---|
| 08-03 | ' Wire Transfer-Out | 78,768.79 |
| | WIRE OUT -AFCO CREDIT CORPORATION | |
| | 202108030000660 | |
| 08-24 | ' Maintenance Fee | 142.03 |
| | ANALYSIS ACTIVITY FOR 07/21 | |

**CREDITS**

| Date | Description | Additions |
|---|---|---|
| 08-02 | ' Deposit | 120,250.00 |

**DAILY BALANCES**

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 07-31 | 100.83 | 08-03 | 41,582.04 | | |
| 08-02 | 120,350.83 | 08-24 | 41,440.01 | | |

**LIMETREE BAY REFINING MARKETING, LLC**
**LBRM Operating Account Oriental Bank - 110800**
**OB     0986**
**August 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 7/31/2021 | $ | 100.83 |
| Deposits | | $ | 120,250.00 |
| ACH / Debits | | $ | - |
| Wires | | $ | (78,768.79) |
| Bank Charges | | $ | (142.03) |
| Dividends | | $ | - |
| Ending Balance per Bank | 8/31/2021 | $ | 41,440.01 |
| Opening Balance  per Book | 7/31/2021 | $ | 100.83 |
| Deposits | | $ | 120,250.00 |
| ACH / Debits | | $ | - |
| Wires | | $ | (78,768.79) |
| Bank Charges | | $ | (142.03) |
| Dividends | | $ | - |
| Ending Balance per Book | 8/31/2021 | $ | 41,440.01 |
| | | $ | 41,440.01 |

Reconciled by     George Southwell

Date:            9/1/2021

Approved by

Date:

1653

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | LBRM Revenue Account |
| Portfolio Number: | 972.1 |
| Statement Period: | August 01, 2021 - August 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

### Portfolio Market Value Summary as of 08/31/21

| | | |
|---|---|---|
| Cash | $ | 0.00 |
| Investments | $ | 969.42 |
| Total Portfolio Value: | $ | 969.42 |
| YTD Interest: | $ | 0.00 |
| YTD Dividends: | $ | 510.09 |
| YTD Capital Gains/Losses: | $ | 0.00 |

### Portfolio Cost Value Summary as of 08/31/21

| | | |
|---|---|---|
| Cash | $ | 0.00 |
| Investments | $ | 969.42 |
| Total Portfolio Value: | $ | 969.42 |

### Cash Summary

| | | |
|---|---|---|
| **Beginning Balance** | $ | **0.00** |
| **Disbursements:** | | |
| Dividends Reinvested | $ | 10.71 |
| **Total Disbursements** | $ | **0.00** |
| **Closing Balance** | $ | **0.00** |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| Account Name: | Limetree Bay Refining Marketing LLC |
|---|---|
| Portfolio Name: | LBRM Revenue Account |
| Portfolio Number: | 972.1 |
| Statement Period: | August 01, 2021 - August 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Transaction Statement for the period of August 1, 2021 through August 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 08/01 | Beginning balance | | | | | $ 0.00 | 958.71 |
| 08/02 | Dividend Reinvestment<br>BL #92104 -0U4 FedFund Admin<br>CUSIP: 09248U445   / ISIN: US09248U4452 | $ 0.00 | $ 10.71 | $ 0.00 | $ 0.00 | $ 0.00 | 969.42 |

## Asset position as of August 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating /<br>S & P Rating |
|---|---|---|---|---|---|---|---|---|
| BL #92104 -0U4 FedFund Admin<br>CUSIP: 09248U445 | 969.42 | $969.42 | 969.42 | $1.00 | 0.02% | $969.42 | $0.00 | n/a / N/A |
| **Total Portfolio** | **969.42** | **$969.42** | **969.42** | | | **$969.42** | **$0.00** | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | LBRM O&M Account |
| Portfolio Number: | 1972.2 |
| Statement Period: | August 01, 2021 - August 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

### Portfolio Market Value Summary as of 08/31/21

| | | |
|---|---|---|
| Cash | $ | 0.00 |
| Investments | $ | 1.49 |
| Total Portfolio Value: | $ | 1.49 |
| YTD Interest: | $ | 0.00 |
| YTD Dividends: | $ | 3.95 |
| YTD Capital Gains/Losses: | $ | 0.00 |

### Portfolio Cost Value Summary as of 08/31/21

| | | |
|---|---|---|
| Cash | $ | 0.00 |
| Investments | $ | 1.49 |
| Total Portfolio Value: | $ | 1.49 |

### Cash Summary

| | | |
|---|---|---|
| Beginning Balance | $ | 0.00 |
| Closing Balance | | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| Account Name: | Limetree Bay Refining Marketing LLC |
|---|---|
| Portfolio Name: | LBRM O&M Account |
| Portfolio Number: | 972.2 |
| Statement Period: | August 01, 2021 - August 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Transaction Statement for the period of August 1, 2021 through August 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 08/01 | Beginning balance | | | | | $ 0.00 | $ 1.49 |

Asset position as of August 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| BL #92104 -0U4 FedFund Admin CUSIP: 09248U445 | 1.49 | $1.49 | 1.49 | $1.00 | 0.00% | $1.49 | $0.00 | n/a / N/A |
| **Total Portfolio** | **1.49** | **$1.49** | | | | **$1.49** | **$0.00** | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | LBRM Reinvestment & Repair Account |
| Portfolio Number: | 972.3 |
| Statement Period: | August 01, 2021 - August 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

### Portfolio Market Value Summary as of 08/31/21

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |
| YTD Dividends: | $ 0.00 |
| YTD Interest: | $ 0.00 |
| YTD Capital Gains/Losses: | $ 0.00 |

### Portfolio Cost Value Summary as of 08/31/21

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |

### Cash Summary

| | |
|---|---|
| Beginning Balance | $ 0.00 |
| Closing Balance | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| Account Name: | Limetree Bay Refining Marketing LLC |
|---|---|
| Portfolio Name: | LBRM Reinvestment & Repair Account |
| Portfolio Number: | 972.3 |
| Statement Period: | August 01, 2021 - August 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Transaction Statement for the period of August 1, 2021 through August 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 08/01 | Beginning balance | | | | | $ 0.00 | $ 0.00 |

Asset position as of August 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | LBRM Tolling Agreement Payment Account |
| Portfolio Number: | 972.4 |
| Statement Period: | August 01, 2021 - August 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

### Portfolio Market Value Summary as of 08/31/21

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |
| YTD Dividends: | $ 0.00 |
| YTD Interest: | $ 0.00 |
| YTD Capital Gains/Losses: | $ 0.00 |

### Portfolio Cost Value Summary as of 08/31/21

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |

### Cash Summary

| | |
|---|---|
| Beginning Balance | $ 0.00 |
| Closing Balance | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank ◩

| Account Name: | Limetree Bay Refining Marketing LLC |
|---|---|
| Portfolio Name: | LBRM Tolling Agreement Payment Account |
| Portfolio Number: | 972.4 |
| Statement Period: | August 01, 2021 - August 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Transaction Statement for the period of August 1, 2021 through August 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 08/01 | Beginning balance | | | | | $ 0.00 | $ 0.00 |

Asset position as of August 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

Account Name: Limetree Bay Refining Marketing LLC
Portfolio Name: LBRM Capex Reserve Account
Portfolio Number: 972.5
Statement Period: August 01, 2021 - August 31, 2021
Account Administrator: Shamarri Hartzog (714-247-6353)
Account Manager: ALICE CARTER (714-247-6369)
Team Lead: Thalia Delahayes (212-250-7336)

## Summary

### Portfolio Market Value Summary as of 08/31/21

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |
| YTD Dividends: | $ 0.00 |
| YTD Interest: | $ 0.00 |
| YTD Capital Gains/Losses: | $ 0.00 |

### Portfolio Cost Value Summary as of 08/31/21

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |

### Cash Summary

| | |
|---|---|
| Beginning Balance | $ 0.00 |
| Closing Balance | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | LBRM Capex Reserve Account |
| Portfolio Number: | 972.5 |
| Statement Period: | August 01, 2021 - August 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Transaction Statement for the period of August 1, 2021 through August 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 08/01 | Beginning balance | | | | | $ 0.00 | $ 0.00 |

## Asset position as of August 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

Account Name: Limetree Bay Refining Marketing LLC
Portfolio Name: LBRM Turn-around Reserve Account
Portfolio Number: 972.6
Statement Period: August 01, 2021 - August 31, 2021
Account Administrator: Shamarri Hartzog (714-247-6353)
Account Manager: ALICE CARTER (714-247-6369)
Team Lead: Thalia Delahayes (212-250-7336)

## Summary

### Portfolio Market Value Summary as of 08/31/21

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |
| YTD Dividends: | $ 0.00 |
| YTD Interest: | $ 0.00 |
| YTD Capital Gains/Losses: | $ 0.00 |

### Portfolio Cost Value Summary as of 08/31/21

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |

### Cash Summary

| | |
|---|---|
| Beginning Balance | $ 0.00 |
| Closing Balance | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

Account Name:        Limetree Bay Refining Marketing LLC
Portfolio Name:      LBRM Turn-around Reserve Account
Portfolio Number:    972.6
Statement Period:    August 01, 2021 - August 31, 2021
Account
Administrator:       Shamarri Hartzog (714-247-6353)
Account Manager:     ALICE CARTER (714-247-6369)
Team Lead:           Thalia Delahayes (212-250-7336)

## Transaction Statement for the period of August 1, 2021 through August 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|------|------------------------|------|----------|---------------|-------|--------------|--------------|
| 08/01 | Beginning balance | | | | | | |
| | | | | | | $ 0.00 | $ 0.00 |

## Asset position as of August 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|-------------|----------------|------|---------------|--------------|-------|--------------|----------------|----------------------------|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | Tolling Agreement Payment Sub-account |
| Portfolio Number: | 972.7 |
| Statement Period: | August 01, 2021 - August 31, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

**Portfolio Market Value Summary as of 08/31/21**

| Total Portfolio Value: | $ | 0.00 |
| YTD Dividends: | $ | 0.00 |
| YTD Interest: | $ | 0.00 |
| YTD Capital Gains/Losses: | $ | 0.00 |

**Portfolio Cost Value Summary as of 08/31/21**

| Total Portfolio Value: | $ | 0.00 |

**Cash Summary**

| Beginning Balance | $ | 0.00 |
| Closing Balance | | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

Account Name: Limetree Bay Refining Marketing LLC
Portfolio Name: Tolling Agreement Payment Sub-account
Portfolio Number: 972.7
Statement Period: August 01, 2021 - August 31, 2021
Account
Administrator: Shamarri Hartzog (714-247-6353)
Account Manager: ALICE CARTER (714-247-6369)
Team Lead: Thalia Delahayes (212-250-7336)

Transaction Statement for the period of August 1, 2021 through August 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|------|------------------------|------|----------|---------------|-------|--------------|--------------|
| 08/01 | Beginning balance | | | | | $ 0.00 $ | 0.00 |

Asset position as of August 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|-------------|----------------|------|---------------|--------------|-------|--------------|----------------|----------------------------|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

Account Name: Limetree Bay Refining Marketing LLC
Portfolio Name: Gross Margin Sub-account
Portfolio Number: 972.8
Statement Period: August 01, 2021 - August 31, 2021
Account Administrator: Shamarri Hartzog (714-247-6353)
Account Manager: ALICE CARTER (714-247-6369)
Team Lead: Thalia Delahayes (212-250-7336)

## Summary

**Portfolio Market Value Summary as of 08/31/21**

Total Portfolio Value: $ 0.00

YTD Dividends: $ 0.00
YTD Interest: $ 0.00
YTD Capital Gains/Losses: $ 0.00

**Portfolio Cost Value Summary as of 08/31/21**

Total Portfolio Value: $ 0.00

**Cash Summary**

Beginning Balance $ 0.00

Closing Balance 0.00

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

Account Name: Limetree Bay Refining Marketing LLC
Portfolio Name: Gross Margin Sub-account
Portfolio Number: 972.8
Statement Period: August 01, 2021 - August 31, 2021
Account Administrator: Shamarri Hartzog (714-247-6353)
Account Manager: ALICE CARTER (714-247-6369)
Team Lead: Thalia Delahayes (212-250-7336)

## Transaction Statement for the period of August 1, 2021 through August 31, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|------|------------------------|------|----------|---------------|-------|--------------|--------------|
| 08/01 | Beginning balance | | | | | $ 0.00 | $ 0.00 |

## Asset position as of August 31, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|-------------|----------------|------|---------------|--------------|-------|--------------|----------------|------------------------------|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

**LIMETREE BAY REFINING MARKETING, LLC**
**Revenue Account Deutsche Bank - 110250**
   **972.1**
**August 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 7/31/2021 | $ | 958.71 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Bank Charges | | $ | - |
| Dividends | | $ | 10.71 |
| Ending Balance per Bank | 8/31/2021 | $ | 969.42 |
| Opening Balance  per Book | 7/31/2021 | $ | 958.71 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Bank Charges | | $ | - |
| Dividends | | $ | 10.71 |
| Ending Balance per Book | 8/31/2021 | $ | 969.42 |
| | | $ | 969.42 |

Reconciled by       George Southwell

Date:       9/1/2021

Approved by

Date:

**LIMETREE BAY REFINING MARKETING, LLC**
**O & M Account Deutsche Bank - 110260**
     **972.2**
**August 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance per Bank | 7/31/2021 | $ | 1.49 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Bank Charges | | $ | - |
| Dividends | | $ | - |
| Ending Balance per Bank | 8/31/2021 | $ | 1.49 |
| Opening Balance per Book | 7/31/2021 | $ | 1.49 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Bank Charges | | $ | - |
| Dividends | | $ | - |
| Ending Balance per Book | 8/31/2021 | $ | 1.49 |
| | | $ | 1.49 |

| | | |
|---|---|---|
| Reconciled by | George Southwell | |
| Date: | 9/1/2021 | |
| Approved by | | |
| Date: | | |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of August 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | AIG/National Union Fire Insurance Co | Combined Property | Primary $250M | 026-1001312 | 2021.09.01 |
| Limetree Bay Refining, LLC | Allianz Global Risk US Insurance Company | Combined Property | Primary $1.25BN | USN00023920 | 2021.12.01 |
| Limetree Bay Refining, LLC | Axis (Endorsement) | Builder's Risk | $50M | EAU646295/01/2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 92SRD102973 | 2021.09.01 |
| Limetree Bay Refining, LLC | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 42-PRP-312023-01 | 2021.09.01 |
| Limetree Bay Refining, LLC | CIN 318/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC3 | Convex Insurance UK Limited | Combined Property | Primary $1.25BN (reduced to a limit of $250 million on August 20, 2021) | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Services, LLC | Liberty | Worker's Comp | | WCC-641-444917-020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hannover Re/HDI Global Specialty SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Helvetia/Helvetia Swiss Insurance Co in Liechtenstein Ltd | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | HSIC/Houston Specialty Insurance Company | Combined Property | $150M XS 50M | PRO440373 | 2021.12.01 |
| Limetree Bay Refining, LLC | LSM/Liberty Specialty Markets Agency Limited | Combined Property | $100M XS $100M | LSMAEN143232A | 2021.12.01 |
| Limetree Bay Refining, LLC | Munich Re/Great Lakes Insurance SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | PICC/Guardian General Insurance | Combined Property | $100M XS $100M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | QBE/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Rokstone/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC | SCOR (3)/General Security Indemnity Company of Arizona | Combined Property | Primary $1.25BN | FA007943720201 | 2021.09.01 |
| Limetree Bay Refining, LLC | Sompo/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of August 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | Swiss Re/Westport Insurance Company | Combined Property | Primary $500M | OMP 2000425-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Validus Specialty/Lloyds of London | Combined Property | Primary $250M | AJH292893A20 | 2021.09.01 |
| Limetree Bay Refining, LLC | Westchester Surplus Lines Ins Co/Starr Technical Risks Agency, Inc | Combined Property | Primary $500M | EPRN18215263 | 2021.12.01 |
| Limetree Bay Refining, LLC | WRB/Guardian General Insurance | Combined Property | $50M XS $50M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Zurich/Zurich American Insurance Company | Combined Property | Primary $100M | OGR 1296457-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arcadian/Ark/Helix Bermuda | Builder's Risk | $25M xs $100M | NAMBM2100005 | 2022.06.01 |
| Limetree Bay Refining, LLC | Allianz | Refinery Excess Liability | $15M xs $53M | USL00880520 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz | Environmental Liability | $15M xs $85M | USL00873320 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty | Refinery Primary Liability | | AS6-641-444917-010 | 2021.12.01 |
| Limetree Bay Refining, LLC | Travelers Syndicate | Refinery Primary Liability | | ENCAS2000012 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer/Apollo | Refinery Excess Liability | $15M | ENCAS2000011 | 2021.12.01 |
| Limetree Bay Refining, LLC | Westchester | Refinery Excess Liability | $3M xs $25M | G71809808001 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Refinery Excess Liability | $25M xs $28M | 4380100 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer | Refinery Excess Liability | $11M po $22M xs $68M | ENCAS2000020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lex-London | Refinery Excess Liability | $11M po $22M xs $68M | 62785689 | 2021.12.01 |
| Limetree Bay Refining, LLC | OSL | Refinery Excess Liability | $10M xs $90M | EXS-154724-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | AXA XL Bermuda | Refinery Excess Liability | $25M xs $125M | XLUMB-229978 | 2021.12.01 |
| Limetree Bay Refining, LLC | OCIL Bermuda | Refinery Excess Liability | $25M po $40M xs $150M | U920968-0620 | 2021.12.01 |
| Limetree Bay Refining, LLC | Sompo Bermuda | Refinery Excess Liability | $15M po $40M xs $150M | EXC30001524800 | 2021.12.01 |
| Limetree Bay Refining, LLC | Argo Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | ARGO-CAS-OR-001484 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of August 31, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | Arch Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | URP0065257-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel Bermuda | Refinery Excess Liability | $12.5M po $50M xs $190M | 1454233-11636-UMB-2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hamilton Bermuda | Refinery Excess Liability | $7.5M po $50M xs $190M | CX20-9216 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chubb Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LBR-2144/XS004 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LSMAEC119907A | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $1M | ENVP0000296-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $9M xs $1M | ENVX0000256-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Environmental Liability | $25M xs $10M | 262704 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ascot | Environmental Liability | $25M xs $35M | ENXP2110000428-01 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel | Environmental Liability | $25M xs $60M | MKLV4EFX102259 | 2021.12.01 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $5M | 8261-8347 | 2022.04.20 |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000623319211 | 2022.04.20 |
| Limetree Bay Refining, LLC | Wesco Insurance Company | Executive Risk | $5M | EUW1909831 00 | 2022.04.20 |
| | | | | | |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000622392201 | 2027.04.20 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $5M | 8247-1536 | 2027.04.20 |
| Limetree Bay Refining, LLC | First Liberty Insurance Co | Auto Liability | $2M | AS6-641-444917-010 | 2021.12.01 |

**Notes:**
**(1)** As of August 31, 2021, insurance premiums are paid in full except for the items discussed in footnotes 2, 3 and 4.
**(2)** The auto liability policy will be audited during December 2021.  A premium will be due for autos assigned to LBR for the period from June 1, 2021 through December 31, 2021
**(3)** Audit premiums are expected to be invoiced for non-current insurance policies including the Builders All Risk policy and OCIP.  As of the filing of the monthly operating report, the audit amounts have not been determined.
**(4)** Premium obligations outstanding as of August 31, 2021 for LBR are as follows:
   a.  PFA Loan 2055:  Balance due for $266,145
   b.  PFA Loan 2303:  Balance due for $536,580

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| LIMETREE BAY SERVICES, LLC, *et al.*, | § | Case No. 21-32351 (DRJ) |
| | § | |
| Debtors.[1] | § | Jointly Administered |
| | § | |

**NOTICE OF DEFAULTS AND FORBEARANCE AGREEMENT**
**UNDER DIP FINANCING DOCUMENTS**

**PLEASE TAKE NOTICE** that on October 11, 2021, 405 Sentinel LLC served a notice

of defaults and forbearance agreement upon the Debtors pursuant to the terms of (i) that certain

Senior Secured Superpriority Debtor in Possession Credit Agreement dated as of July 13, 2021, as

amended and (ii) the *Final Order (i) Authorizing the Debtors to (A) Obtain Postpetition Senior*

*Secured Superpriority Financing and (B) Use Cash Collateral, (ii) Granting Adequate Protection*

*to Prepetition Secured Parties, (iii) Modifying the Automatic Stay, and (iv) Granting Related Relief*

[Docket No. 495]. A true and correct copy of such notice, with the executed forbearance, is

attached hereto as **Exhibit A**.

[*Remainder of page intentionally left blank*]

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC. (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222).  The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

4816-4095-1550.2

Respectfully submitted this 11th day of October, 2021.

**GRAY REED**

By: _/s/ Jason S. Brookner_

    Jason S. Brookner
    Texas Bar No. 24033684
    Paul D. Moak
    Texas Bar No. 00794316
    Lydia R. Webb
    Texas Bar No. 24083758
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone:  (713) 986-7000
Facsimile:  (713) 986-7100
Email:    jbrookner@grayreed.com
           pmoak@grayreed.com
           lwebb@grayreed.com

-and-

**FOLEY & LARDNER LLP**

    John P. Melko
    Texas Bar No. 13919600
    Michael K. Riordan
    Texas Bar No. 24070502
1000 Louisiana Street, Suite 2000
Houston, Texas 77002
Telephone: (713) 276-5727
Email: jmelko@foley.com
       mriordan@foley.com

**COUNSEL TO 405 SENTINEL LLC AND ARENA INVESTORS, LP**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 11th day of October, 2021, he caused a true and correct copy of the foregoing pleading to be served via CM/ECF on all parties who have subscribed for electronic notice in this case.

_/s/ Jason S. Brookner_
Jason S. Brookner

2

**<u>Exhibit A</u>**

**Notice of Defaults and Forbearance Agreement**



October 11, 2021

***Via Email:*** *stompsett@lbenergy.com, mchavez@lbenergy.com, and jvanderwel@lbenergy.com*
Stephan Tompsett
Mark Chavez
Jim Vanderwel
Limetree Bay Refining, LLC
1 Estate Hope
Christiansted, St. Croix VI 00820-5652

> Re:   *In re Limetree Bay Services LLC, et al.*, Case No 21-32351(Bankr. S.D. Tex.)
>       Notice of Defaults and Forbearance Agreement

Dear Stephan, Mark and Jim:

Reference is made to that certain Senior Secured Superpriority Debtor in Possession Credit Agreement dated as of July 13, 2021, as amended (the "**DIP Credit Agreement**"), by and among 405 Sentinel LLC and the financial institutions from time to time parties thereto as lenders (collectively, the "**Lenders**"), 405 Sentinel LLC as administrative and collateral agent for the Lenders (the "**Agent**"), LimeTree Bay Refining, LLC as borrower ("**Borrower**"), and certain other Limetree entities as guarantors (the Borrower with the guarantors, collectively, the "**Debtors**").

Reference is further made to that certain Final Order (i) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (ii) Granting Adequate Protection to Prepetition Secured Parties (iii) Modifying the Automatic Stay, and (iv) Granting Related Relief [Docket No. 495] (the "**Final DIP Order**"). Capitalized terms used by not defined in this letter shall have the meanings ascribed to them in the DIP Credit Agreement and the Final DIP Order.

As you are aware, certain Events of Default have occurred and are continuing. Specifically:

- The Debtors have failed timely pay accrued interest for the month of September 2021 pursuant to section 2.05(b) of the DIP Credit Agreement, and an immediate Event of Default has arisen under section 7.01(a) of the DIP Credit Agreement as a result of the breach of such section 2.05(b) (the "**Existing Defaults**").

Tompsett, *et al*.
October 11, 2021
Page 2

As a result of the foregoing, the Agent, on behalf of the Lenders, has the right to declare a Termination Event, terminate the Commitment, and exercise any and all rights and remedies as provided for under the DIP Credit Agreement and the Final DIP Order.

By this letter, the Agent and the Lenders agree that during the period beginning on the date of this letter and ending on October 12, 2021 (the "**Forbearance Period**"), the Agent and the Lenders will not exercise their rights and remedies which exist as a result of the Existing Defaults; *provided, however*, that the Forbearance Period will immediately terminate if at any time during the Forbearance Period any additional Events of Default (other than the Existing Defaults) occur under the DIP Credit Agreement or the Final DIP Order.

The agreements of the Agent and the Lenders set forth herein are subject to the condition that by October 12, 2021, Borrower shall pay Agent the $63,195.68 in interest due for the month of September 2021.

**This letter does not constitute a waiver by the Agent and the Lenders of the Existing Defaults, and Borrower agrees that the Existing Defaults have occurred and will continue to exist during the Forbearance Period.  Borrower understands and agrees that this letter (a) constitutes an agreement by the Agent and the Lenders to forbear from exercising their remedies as provided in this letter during the Forbearance Period only, and that the Agent and the Lenders have no intent to, or agreement to, extend the Forbearance Period, (b) does not constitute an agreement by the Agent or the Lenders to forbear from exercising their remedies at any time after the end of the Forbearance Period, and (c) is made without prejudice to any of the rights and remedies possessed by the Agent or the Lenders under the DIP Credit Agreement and the Final DIP Order.**

Except as specifically provided herein, all terms and provisions of the DIP Credit Agreement, the Loan Documents, and the Final DIP Order, and all rights of the Agent and the Lenders thereunder, shall remain in full force and effect and are ratified and confirmed in all respects.

Sincerely,

Greg White, Arena Investors, LP,
on behalf of 405 Sentinel LLC

cc:     Mark Shapiro (mshapiro@brileyfin.com)
        Jorian L. Rose, Esq. (jrose@bakerlaw.com)
        Elizabeth A. Green, Esq. (egreen@bakerlaw.com)
        Sean O'Neal, Esq. (soneal@cgsh.com)
        Kevin Eide, Esq. (keide@akingump.com)
        Robin Spigel, Esq. (robin.spigel@bakerbotts.com)
        Michael Warner, Esq. (mwarner@pszjlaw.com)
        Jason S. Brookner, Esq. (jbrookner@grayreed.com)
        Lydia R. Webb, Esq. (lwebb@grayreed.com)

Tompsett, *et al*.
October 11, 2021
Page 3


ACKNOWLEDGED AND AGREED TO
AS OF THE DATE SET FORTH ABOVE:


LIMETREE BAY REFINING, LLC,
A U.S. Virgin Islands limited liability company


By: *  /s/ Mark Shapiro*
Name: Mark Shapiro
Title: Chief Restructuring Officer

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| LIMETREE BAY SERVICES, LLC, *et al.*, | § | Case No. 21-32351 (DRJ) |
| | § | |
| Debtors.[1] | § | Jointly Administered |
| | § | |

**NOTICE OF DEFAULT AND RESERVATION OF RIGHTS**
**UNDER DIP FINANCING DOCUMENTS**

**PLEASE TAKE NOTICE** that on October 15, 2021, 405 Sentinel LLC served a notice of default and reservation of rights upon the Debtors pursuant to the terms of (i) that certain Senior Secured Superpriority Debtor in Possession Credit Agreement dated as of July 13, 2021, as amended and (ii) the *Final Order (i) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (ii) Granting Adequate Protection to Prepetition Secured Parties, (iii) Modifying the Automatic Stay, and (iv) Granting Related Relief* [Docket No. 495]. A true and correct copy of such notice, with the executed forbearance, is attached hereto as **Exhibit A**.

*[Remainder of page intentionally left blank]*

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC. (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222).  The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

Respectfully submitted this 15th day of October, 2021.

**GRAY REED**

By: */s/ Jason S. Brookner*
    Jason S. Brookner
    Texas Bar No. 24033684
    Paul D. Moak
    Texas Bar No. 00794316
    Lydia R. Webb
    Texas Bar No. 24083758
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone:  (713) 986-7000
Facsimile:  (713) 986-7100
Email:      jbrookner@grayreed.com
              pmoak@grayreed.com
              lwebb@grayreed.com
-and-

**FOLEY & LARDNER LLP**
    John P. Melko
    Texas Bar No. 13919600
    Michael K. Riordan
    Texas Bar No. 24070502
1000 Louisiana Street, Suite 2000
Houston, Texas 77002
Telephone: (713) 276-5727
Email: jmelko@foley.com
        mriordan@foley.com

**COUNSEL TO 405 SENTINEL LLC AND ARENA INVESTORS, LP**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 15th day of October, 2021, he caused a true and correct copy of the foregoing pleading to be served via CM/ECF on all parties who have subscribed for electronic notice in this case.

*/s/ Jason S. Brookner*
Jason S. Brookner

2

**<u>Exhibit A</u>**

**Notice of Default and Reservation of Rights**



Jason S. Brookner
Telephone: 713.986.7000
JBROOKNER@GRAYREED.COM

October 15, 2021

***Via Email: egreen@bakerlaw.com and jrose@bakerlaw.com***
Elizabeth A. Green. Esq.
Jorian L. Rose, Esq.
Baker Hostetler
200 South Orange Ave., Suite 2300
Orlando, FL 32801

   Re:  *In re Limetree Bay Services LLC, et al.*, Case No 21-32351(Bankr. S.D. Tex.)

Dear Liz and Jorian:

  We write on behalf of 405 Sentinel LLC, as administrative agent ("**Agent**") for the lenders and the financial institutions from time to time parties (collectively, the "**Lenders**") to that certain Senior Secured Superpriority Debtor in Possession Credit Agreement dated as of July 13, 2021, as amended (the "**DIP Credit Agreement**"), by and among such Lenders, Limetree Bay Refining, LLC as borrower ("**Borrower**"), and certain other Limetree entities as guarantors (the Borrower with the guarantors, collectively, the "**Debtors**"). Reference is made to the DIP Credit Agreement as well as that certain Final Order (i) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (ii) Granting Adequate Protection to Prepetition Secured Parties (iii) Modifying the Automatic Stay, and (iv) Granting Related Relief [Docket No. 495] (the "**Final DIP Order**"). Capitalized terms used but not defined in this letter shall have the meanings ascribed to them in the DIP Credit Agreement and the Final DIP Order.

  As you know, a principal payment in the amount of $5 million was due to the Lenders today pursuant to the Approved Budget. As you also know, such payment was not made. The Debtors' failure to make this payment constitutes a breach of sections 6.01(o) and 6.01(r)(iv) of the DIP Credit Agreement, resulting in an immediate Event of Default pursuant to section 7.01(c) of the DIP Credit Agreement. We understand that the Debtors failed to make this payment because J. Aron & Company LLC ("**J. Aron**") has thus far refused to turn over to the Debtors certain funds to be remitted to the estates pursuant to the J. Aron Financing Agreement following J. Aron's liquidation of the IFF Product. J. Aron's failure to remit to these funds to the Debtors, totaling approximately $18 million, during the week of October 4, 2021 constitutes an

Elizabeth A. Green, Esq.
Jorian L. Rose, Esq.
October 15, 2021
Page 2

additional breach of sections 6.01(o) and 6.01(r)(iv) of the DIP Credit Agreement and an additional basis for an immediate Event of Default pursuant to section 7.01(c) of the DIP Credit Agreement.

As a result of the foregoing, the Agent, on behalf of the Lenders, has the right to declare a Termination Event, terminate the Commitment, and exercise any and all rights and remedies as provided for under the DIP Credit Agreement and the Final DIP Order.

However, in light of the fact that a status conference with respect to these matters has been set by the Court for Monday, October 18, 2021 at 9:30 a.m. (prevailing Central Time), the Agent is not declaring a Termination Event at this time.  Rather, Agent and Lenders hereby expressly reserve any and all rights, remedies and privileges under the Final DIP Order, the DIP Credit Agreement, and the Loan Documents, and at law and in equity.

Thank you for your cooperation and professionalism as we continue to work through these issues.

Sincerely,

*Jason S. Brookner*

Jason S. Brookner

cc:   Mark Shapiro (mshapiro@brileyfin.com)
      Greg White (gwhite@arenaco.com)
      Sean O'Neal, Esq. (soneal@cgsh.com)
      Kevin Eide, Esq. (keide@akingump.com)
      Robin Spigel, Esq. (robin.spigel@bakerbotts.com)
      Michael Warner, Esq. (mwarner@pszjlaw.com)
      John Melko, Esq. (jmelko@foley.com)
      Lydia R. Webb, Esq. (firm)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, _et al._,[1]** | **CASE NO.: 21-32351 (DRJ)** |
| **Debtors.** | **(Jointly Administered)** |

**NOTICE OF EXTENSION OF MILESTONES**
**AND BID PROCEDURES DEADLINES**

**PLEASE TAKE NOTICE** that, pursuant to the _Order Granting Debtors' Emergency Motion to Amend Milestones and Bid Procedures Deadlines_ (Doc. 583) (the "**Order**"),[2] the Milestones and Bid Procedures Deadlines established therein are hereby amended in accordance with the attached Exhibit A.

_[signature page follows]_

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Order or _Debtors' Emergency Motion to Amend Milestones and Bid Procedures Deadlines_ (Doc. No. 565), as applicable.

Dated: October 28, 2021

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
**Jimmy D. Parrish, Esq.**
Fed. ID No. 2687598
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL  32801-3432
Telephone:  407.649.4000
Facsimile:   407.841.0168
Email: egreen@bakerlaw.com
         jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
*Admitted Pro Hac Vice*
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone:  212.589.4200
Facsimile:  212.589.4201
Email: jrose@bakerlaw.com

*Counsel for the Debtors and Debtors in Possession*

**Certificate of Service**

    **I HEREBY CERTIFY** that on October 28, 2021, a true copy of the foregoing was filed with the Court using the CM/ECF System, which will provide notice of such filing to all parties requesting such service.

*/s/ Elizabeth A. Green*
Elizabeth A. Green

## EXHIBIT A

| Event | Current Milestone | New Milestone |
|-------|-------------------|---------------|
| Sale Milestone | December 11, 2021 | December 14, 2021 |

| Event | Current Date/Deadline | New Date/Deadline |
|-------|----------------------|-------------------|
| Deadline to provide notice of Auction location | October 27, 2021, at 10:00 a.m. CT | November 10, 2021, at 10:00 a.m. CT |
| Deadline for Qualified Bidder(s) to make good faith cash deposit(s) | -- | November 10, 2021, at 10:00 a.m. CT |
| Deadline to file Notice of Potential Assumption and Assignment of Executory Contracts | October 21, 2021 | November 10, 2021 |
| Auction Date, if necessary | October 29, 2021, at 10:00 a.m. CT | November 12, 2021, at 10:00 a.m. CT |
| Deadline to file the Designation of Winning Bid | October 31, 2021 | November 15, 2021 |
| Deadline to object to the Sale | November 10, 2021, at 5:00 p.m. CT | November 26, 2021, at 5:00 p.m. CT |
| Deadline to reply to objection(s) to the Sale | November 14, 2021, at 5:00 p.m. CT | November 29, 2021, at 5:00 p.m. CT |
| Contract Assumption Objection Deadline | November 14, 2021, at 12:00 p.m. CT | November 29, 2021, at 12:00 p.m. CT |
| Deadline to file Amended Designation of Winning Bid to add Additional Purchased Contracts | November 18, 2021 | December 3, 2021 |
| Sale Hearing (subject to Court availability) | November 20, 2021 | December 3, 2021 |
| Expected entry of Sale Order | November 21, 2021 | December 6, 2021 |
| Deadline to file Amended Designation of Winning Bid to remove previously identified Executory Contracts | December 2, 2021 | December 9, 2021 |
| Deadline for Winning Bidder to close sale transaction | December 3, 2021, at 5:00 p.m. CT | December 10, 2021, at 5:00 p.m. CT |
| Deadline for Back-up Bidder to close sale transaction (if applicable) | December 10, 2021, at 5:00 p.m. CT | December 13, 2021, at 5:00 p.m. CT |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.* [1]** | **CASE NO.: 21-32351** |
| Debtors. | **Jointly Administered** |

## NOTICE OF FILING PROPOSED TWO-WEEK BUDGET

**PLEASE TAKE NOTICE** that Limetree Bay Services, LLC and its affiliates in the above referenced jointly administered bankruptcy cases as debtors and debtors in possession (collectively, the "**Debtors**") hereby submit the proposed two-week budget attached hereto as Exhibit 1 (the "**Two-Week Budget**") in connection with their continued use of cash collateral in accordance with the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* (Doc. No 495) (the "**Final DIP Order**").

In accordance with Paragraphs N and 26 of the Final DIP Order, the Approved Budget[2] may be modified or amended if agreed to in form and substance by the DIP Agent and each Prepetition Agent (and as to any changes with respect to fees and expenses of Committee professionals, with the consent of the Committee).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services,  LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Final DIP Order.

The Debtors are working with the parties on the proposed Two-Week Budget but have not obtained all necessary consents to the Two-Week Budget. However, the Debtors are providing a copy of the proposed Two-Week Budget in the interest of transparency and for parties to review.

Dated: November 2, 2021

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
**Jimmy D. Parrish, Esq.**
Fed. ID No. 2687598
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile: 407.841.0168
Email: egreen@bakerlaw.com
            jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
(Admitted Pro Hac Vice)
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com

*Counsel for the Debtors and Debtors in Possession*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 2, 2021, a true and correct copy of the foregoing was filed with the Court using the CM/ECF System, which will provide notice of such filing to all parties requesting such notice.

*/s/ Elizabeth A. Green*
Elizabeth A. Green

## **EXHIBIT 1**

**PROPOSED TWO-WEEK BUDGET**

**Limetree Bay Refinery**

Proposed Budget Forecasted Results of Operations and Cash Flows

Wks Beginning    *11/1/21*    *thru*    *11/8/21*

| | | 17 | 18 | TOTAL |
|---|---|---|---|---|
| Week -----> | | 17 | 18 | TOTAL |
| Beginning of Week | | 11/1/21 | 11/8/21 | |
| End of Week | | 11/7/21 | 11/14/21 | |
| **Cash Receipts** | | | | |
| BP | [1] | $    - | $    - | $    - |
| Excess Construction Material | [2] | - | 50 | 50 |
| Est. J. Aron Proceeds/Lien Release | | - | 8,624 | 8,624 |
| Insurance Premium Refund | | 157 | | 157 |
| Asset Sale - TBD | [3] | - | - | - |
| **Total    Cash Receipts** | | $    157 | $    8,674 | $    8,831 |
| **Cash Disbursements**[4] | | | | |
| Payroll / Benefits | | $    226 | $    79 | $    306 |
| Maintenance, Other Outside Services, & Misc. | | 67 | 100 | 167 |
| Insurance | | 60 | - | 60 |
| EPA Mandated Independent Observer | | - | 30 | 30 |
| Utility Adequate Assurance Payment | | 33 | - | 33 |
| Hydrocarbon Removal | | 224 | 247 | 471 |
| Flare Repair | | 50 | - | 50 |
| Fuel | | - | - | - |
| Transition Services Agreement | | - | 88 | 88 |
| **Total    Cash Disbursements** | | $    660 | $    545 | $    1,205 |
| **Operating Cash Flow** | | $    (503) | $    8,129 | $    7,626 |
| **DIP Loan Financing Fees** | | | | |
| Arena DIP Cash Interest | | $    52 | $    - | $    52 |
| **Total    DIP Loan Financing Fees** | | 52 | - | 52 |
| **Net Cash Flow Before Professional Fees** | | (555) | 8,129 | 7,574 |
| **Professional Fees** | | | | |
| Debtor Legal | | $    - | $    - | $    - |
| Independent Director | | - | 25 | 25 |
| US Trustee Fees | | - | 250 | 250 |
| **Total** | | $    - | $    275 | $    275 |
| **Net Cash Flow** | | $    (555) | $    7,854 | $    7,299 |
| *Accumulated* | | $    (555) | $    7,299 | |
| **Beginning Cash Balance** | | $    1,311 | $    756 | $    1,311 |
| **Net Cash Flow** | | (555) | 7,854 | 7,299 |
| **Arena DIP (Paydown)** | | - | (5,320) | (5,320) |
| **Ending Cash Balance** | | $    756 | $    3,291 | $    3,291 |
| **Ending DIP Balance** | | $    25,000 | $    19,680 | $    19,680 |
| *Debtor Professional Fees Accrued (Cumulative)* | | $    5,146 | $    5,458 | |
| *UCC Professional Fees Accrued (Cumulative)* | | $    1,393 | $    1,486 | |

[1] - The Debtors continue discussions with BP regarding settlement of outstanding commission margin sharing
[2] - Certain inventory items are for sale and on consignment with NRI.
[3] - Assumes sale transaction(s) closed in week 22.
[4] - Assumes a two week lag for payment of outstanding invoices and work performed prior to closing the transaction(s) in week 22.

# UNITED STATES BANKRUPTCY COURT

SOUTHERN   DISTRICT OF   TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| In Re. LIMETREE BAY SERVICES, LLC, et al. | § | Case No.  21-32351 |
| | § | |
| | § | Lead Case No.  21-32351 |
| Debtor(s) | § | |
| | | ☒ Jointly Administered |

## Monthly Operating Report

Chapter 11

Reporting Period Ended: 09/30/2021

Petition Date: 07/12/2021

Months Pending: 3

Industry Classification:  3  2  4  1

Reporting Method:          Accrual Basis ⦿          Cash Basis ○

Debtor's Full-Time Employees (current):          0

Debtor's Full-Time Employees (as of date of order for relief):          131

**Supporting Documentation** (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

☒     Statement of cash receipts and disbursements
☒     Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
☒     Statement of operations (profit or loss statement)
☐     Accounts receivable aging
☐     Postpetition liabilities aging
☐     Statement of capital assets
☐     Schedule of payments to professionals
☐     Schedule of payments to insiders
☒     All bank statements and bank reconciliations for the reporting period
☐     Description of the assets sold or transferred and the terms of the sale or transfer

/s/ Elizabeth A. Green

Signature of Responsible Party

10/29/2021

Date

Elizabeth A. Green

Printed Name of Responsible Party

200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, FL 32801

Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

UST Form 11-MOR (06/07/2021)                    1

Debtor's Name LIMETREE BAY SERVICES, LLC, et al.        Case No. 21-32351

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a. Cash balance beginning of month | $3,204 | |
| b. Total receipts (net of transfers between accounts) | $0 | $0 |
| c. Total disbursements (net of transfers between accounts) | $0 | $5,103 |
| d. Cash balance end of month (a+b-c) | $3,204 | |
| e. Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f. Total disbursements for quarterly fee calculation (c+e) | $0 | $5,103 |

| Part 2: Asset and Liability Status (Not generally applicable to Individual Debtors. See Instructions.) | Current Month | |
|---|---|---|
| a. Accounts receivable (total net of allowance) | $5,778,575 | |
| b. Accounts receivable over 90 days outstanding (net of allowance) | $5,548,730 | |
| c. Inventory    (Book ◯   Market ◯   Other ◉   (attach explanation)) | $0 | |
| d. Total current assets | $5,816,021 | |
| e. Total assets | $5,816,021 | |
| f. Postpetition payables (excluding taxes) | $0 | |
| g. Postpetition payables past due (excluding taxes) | $0 | |
| h. Postpetition taxes payable | $0 | |
| i. Postpetition taxes past due | $0 | |
| j. Total postpetition debt (f+h) | $0 | |
| k. Prepetition secured debt | $0 | |
| l. Prepetition priority debt | $0 | |
| m. Prepetition unsecured debt | $5,939,013 | |
| n. Total liabilities (debt) (j+k+l+m) | $5,939,013 | |
| o. Ending equity/net worth (e-n) | $-122,991 | |

| Part 3: Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a. Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b. Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c. Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4: Income Statement (Statement of Operations) (Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a. Gross income/sales (net of returns and allowances) | $0 | |
| b. Cost of goods sold (inclusive of depreciation, if applicable) | $0 | |
| c. Gross profit (a-b) | $0 | |
| d. Selling expenses | $0 | |
| e. General and administrative expenses | $0 | |
| f. Other expenses | $0 | |
| g. Depreciation and/or amortization (not included in 4b) | $0 | |
| h. Interest | $0 | |
| i. Taxes (local, state, and federal) | $0 | |
| j. Reorganization items | $0 | |
| k. Profit (loss) | $0 | $28,977 |

UST Form 11-MOR (06/07/2021)                    2

Debtor's Name LIMETREE BAY SERVICES, LLC, et al.                    Case No.  21-32351

## Part 5:  Professional Fees and Expenses

| | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| a. | Debtor's professional fees & expenses (bankruptcy)  *Aggregate Total* | | $0 | $0 | $0 | $0 |
| | *Itemized Breakdown by Firm* | | | | | |
| | Firm Name | Role | | | | |
| | i | Other | $0 | $0 | $0 | $0 |
| | ii | Other | $0 | $0 | $0 | $0 |

| | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy)  *Aggregate Total* | | | | | |
| | *Itemized Breakdown by Firm* | | | | | |
| | Firm Name | Role | | | | |
| | i | | | | | |
| | ii | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | | |

## Part 6:  Postpetition Taxes

| | | Current Month | Cumulative |
|---|---|---|---|
| a. | Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. | Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. | Postpetition employer payroll taxes accrued | $0 | $0 |
| d. | Postpetition employer payroll taxes paid | $0 | $5,103 |
| e. | Postpetition property taxes paid | $0 | $0 |
| f. | Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. | Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

## Part 7: Questionnaire - During this reporting period:

a.  Were any payments made on prepetition debt?  (if yes, see Instructions)    Yes ○  No ◉

b.  Were any payments made outside the ordinary course of business without court approval?  (if yes, see Instructions)    Yes ○  No ◉

c.  Were any payments made to or on behalf of insiders?    Yes ○  No ◉

d.  Are you current on postpetition tax return filings?    Yes ◉  No ○

e.  Are you current on postpetition estimated tax payments?    Yes ◉  No ○

f.  Were all trust fund taxes remitted on a current basis?    Yes ◉  No ○

g.  Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions)    Yes ◉  No ○

h.  Were all payments made to or on behalf of professionals approved by the court?    Yes ○  No ○  N/A ◉

i.  Do you have:       Worker's compensation insurance?    Yes ◉  No ○

         If yes, are your premiums current?    Yes ◉  No ○  N/A ○  (if no, see Instructions)

      Casualty/property insurance?    Yes ◉  No ○

         If yes, are your premiums current?    Yes ◉  No ○  N/A ○  (if no, see Instructions)

      General liability insurance?    Yes ◉  No ○

         If yes, are your premiums current?    Yes ◉  No ○  N/A ○  (if no, see Instructions)

j.  Has a plan of reorganization been filed with the court?    Yes ○  No ◉

| Debtor's Name | LIMETREE BAY SERVICES, LLC, et al. | | Case No. | 21-32351 |

k.  Has a disclosure statement been filed with the court?        Yes ◯  No ◉
l.  Are you current with quarterly U.S. Trustee fees as          Yes ◉  No ◯
    set forth under 28 U.S.C. § 1930?

## Part 8: Individual Chapter 11 Debtors (Only)

| | | |
|---|---|---|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |

l.  Are you required to pay any Domestic Support Obligations as defined by 11    Yes ◯  No ◉
    U.S.C § 101(14A)?
m.  If yes, have you made all Domestic Support Obligation payments?              Yes ◯  No ◯  N/A ◉

### Privacy Act Statement

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107. The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6). The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith. This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law. Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records." *See* 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006). A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm. Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee. 11 U.S.C. § 1112(b)(4)(F).

**<u>I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.</u>**

Mark Shapiro
_____          _____
Signature of Responsible Party            Printed Name of Responsible Party

Mark Shapiro, Chief Restructuring Officer

Chief Restructuring Officer               10/29/2021
_____          _____
Title                                     Date

**CASE NAME:**        **Limetree Bay Services, LLC**

**CASE NUMBER:**        **21-32351 (Jointly Administered under Lead Case No.: 21-32351)**

### Notes to the Monthly Operating Report

**General:**

On July 12, 2021 (the "Petition Date"), Limetree Bay Services, LLC ("Limetree") filed a voluntary petition with the United States Bankruptcy Court under Chapter 11 of the Bankruptcy Code [Case No.: 21-32351], along with five (5) affiliated entities (Affiliated Entities"). The debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067);  and Limetree Bay Refining Marketing, LLC (9222); (collectively, the "Debtors" or "Jointly Administered Debtors"). The bankruptcy filings of Limetree and the Affiliated Entities are jointly administered under Case No. 21-32351.

On or about June 17, 2021, the Jointly Administered Debtors retained B. Riley as chief restructuring officer ("CRO"). Mark Shapiro, as principal representative of B. Riley in its capacity, serves as CRO to the Jointly Administered Debtors.

Debtor-in-Possession Financial Statements - The accompanying schedules herein are unaudited, preliminary, and may not comply with generally accepted accounting principles in the United States of America ("U.S. GAAP") in all material respects.

The Monthly Operating Report ("MOR") is limited in scope, covers a limited time period, and has been prepared solely for the purpose of complying with the monthly reporting requirements of the Bankruptcy Court and the United States Trustee.  The information presented herein has not been subjected to all procedures that would typically be applied to financial information presented in accordance with U.S. GAAP. Upon the application of such procedures, the financial information could be subject to changes, and these changes could be material. The information furnished in this MOR includes normal recurring adjustments, but does not include all of the adjustments that would typically be made for interim financial statements in accordance with U.S. GAAP.

Reservation of Rights: Given the complexity of the Debtors' business, inadvertent errors, omissions or over inclusions may have occurred. Accordingly, the Debtors hereby reserve all of their rights to dispute the validity, status, enforceability, or executory nature of any claim amount, representation or other statement in this MOR and reserve the right to amend or supplement this MOR, if necessary, but shall be under no obligation to do so.

### September 1-30, 2021 Monthly Operating Report:

**(1)**  The Reporting Period for this MOR is September 1-30, 2021, and the financial statements referenced herein cover the same time period.

**(2)**  The Financial Statements are reported on an Accrual Basis. Cash Receipts & Disbursements are reported on a Cash Basis.

**(3)**  The CRO, Mark Shapiro, has signed this MOR.  Mr. Shapiro is an authorized signatory for the Debtor. In reviewing and signing the MOR, Mr. Shapiro has relied upon the efforts, statements and representations of various personnel employed by the Debtor and the Debtor's advisors. Mr. Shapiro has not (and could not have) personally verified the accuracy of each statement and representation contained in the MOR, including statements and representations concerning amounts owed to creditors, classification of such amounts, and other attached information.

**(4)**  MOR Part 2, d - Total Current Assets includes Cash, Accounts Receivable and an expected insurance refund for $34,241.97.  The expected insurance refund is recorded as a debit to post-petition accounts payable in the debtor's accounting records.

**(5)**  MOR Part 2, e - Total Assets includes Current Assets.

**(6)**  MOR Part 2, f - Post-Petition Payables (excluding taxes) is comprised of Trade Payables. The net increase in total liabilities from the previous reporting period is $0.

**(7)**  MOR Part 2, k-m - Amounts are per the Debtor's bankruptcy schedules and are subject to adjustment once the claims process has been completed by the CRO, which includes, but is not limited to, examining, determining the validity of and objecting to any disputed, contingent, unliquidated and filed claims.

**(8)**  MOR Part 2, k-o - As of the time of this filing, the CRO has not determined with accuracy the amount of the secured and unsecured debt, both of which are components of ending net equity/net worth.  Accordingly, the CRO makes no representations regarding the accuracy of the form-calculated net equity/net worth of the Debtor.

**(9)**  MOR Part 7, i - See attached the schedule of insurance in effect for the Jointly Administered Debtors.

**Attachments to MOR:**

**A.**  Financial Statements (Unaudited)

**B.**  Statement of Cash Receipts and Disbursements

**C.**  Bank Account Schedule, bank statements and bank reconciliations

**D.**  Schedule of Insurance in effect as of September 30, 2021 for the Jointly Administered Debtors

**STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS**
**FOR THE PERIOD BEGINNING September 1, 2021 AND ENDING September 30,2021**

Name of Debtor: Limetree Bay Services, LLC, et al.          Case Number:   21-32351
Date of Petition:   July 12, 2021

| | | CURRENT MONTH | | CUMULATIVE PETITION TO DATE |
|---|---|---|---|---|
| **1. FUNDS AT BEGINNING OF PERIOD** | $ | 3,203.97 | $ | 8,306.97 |
| | | | | |
| **2. RECEIPTS:** | | | | |
| A. Cash Sales | | - | | - |
| Minus: Cash Refunds | | - | | - |
| Net Cash Sales | | - | | - |
| B. Accounts Receivable | | - | | - |
| C. Other Receipts | | - | | - |
| (If you receive rental income, you must attach a rent roll) | | | | |
| **3. TOTAL RECEIPTS** *(Lines 2A+2B+2C)* | | - | | - |
| **4. TOTAL FUNDS AVAILABLE FOR OPERATIONS** *(Line 1 + Line 3)* | | 3,203.97 | | 8,306.97 |
| | | | | |
| **5. DISBURSEMENTS** | | | | |
| A.   Advertising | | - | | - |
| B.   Bank Charges & Fees | | - | | - |
| C.   Contract Labor | | - | | - |
| D.   Fixed Asset Payments (not incl. in "N") | | - | | - |
| E.   Insurance | | - | | - |
| F.   Inventory Payments | | - | | - |
| G.   Leases & Contracts | | - | | - |
| H.   Manufacturing Supplies | | - | | - |
| I.   Office Supplies | | - | | - |
| J.   Payroll | | - | | - |
| K.   Professional Fees (Accounting & Legal) | | - | | - |
| L.   Rent | | - | | - |
| M.   Repairs & Maintenance | | - | | - |
| N.   Secured Creditor Payments | | - | | - |
| O.   Taxes Paid - Payroll | | - | | 5,103.00 |
| P.   Taxes Paid - Sales & Use | | - | | - |
| Q.   Taxes Paid - Other | | - | | - |
| R.   Telephone | | - | | - |
| S.   Travel & Entertainment | | - | | - |
| T.   U.S. Trustee | | - | | - |
| U.   Utilities | | - | | - |
| V.   Vehicle Expenses | | - | | - |
| W.   Other Operating Expenses | | - | | - |
| **6. TOTAL DISBURSEMENTS** *(Sum of 5A thru W)* | | - | | 5,103.00 |
| **7. ENDING BALANCE** *(Line 4 Minus Line 6)* | $ | **3,203.97** | $ | **3,203.97** |

**STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS (CONT'D.)**

**Detail of Other Receipts and Other Disbursements**

**OTHER RECEIPTS:**

Describe Each Item of Other Receipt and List Amount of Receipt.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| | $          - | $          - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | $          - | $          - |

**"Other Receipts" includes Loans from Insiders and other sources (i.e. Officer/Owner, related parties directors, related corporations, etc.). Please describe below:**

| Loan Amount | Source of Funds | Purpose | Repayment Schedule |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**OTHER DISBURSEMENTS:**

Describe Each Item of Other Disbursement and List Amount of Disbursement.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| | $          - | $          - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | $          - | $          - |

**Limetree Bay Services, LLC**
**Balance Sheet**
**September 30, 2021**

|  | 9/30/2021 |
|---|---|
| TOTAL ASSETS |  |
|  |  |
| 0000110850 Checking Account - Citibank, N.A. - 6869787150 | 3,203.97 |
| *CASH & CASH EQUIVALENTS | 3,203.97 |
|  |  |
| 0000150500 Intercompany A/R | 5,778,575.40 |
| *ACCOUNTS RECEIVABLE - AFFILIATE | 5,778,575.40 |
| **TOTAL CURRENT ASSETS | 5,781,779.37 |
|  |  |
|  |  |
| **** TOTAL ASSETS | 5,781,779.37 |
|  |  |
| TOTAL LIABILITIES AND MEMBERS' EQUITY |  |
|  |  |
| TOTAL LIABILITIES |  |
|  |  |
| 0000200010 A/P TRADE RECONCILIATION | 30,094.19 |
| *ACCOUNTS PAYABLE TRADE | 30,094.19 |
|  |  |
| 0000235500 Intercompany A/P | (5,935,026.56) |
| *AFFILIATE PAYABLE, NET | (5,935,026.56) |
| **TOTAL CURRENT LIABILITIES | (5,904,932.37) |
|  |  |
| *** TOTAL LIABILITIES | (5,904,932.37) |
|  |  |
|  |  |
| TOTAL MEMBERS' EQUITY |  |
|  |  |
| 0000320010 MEMBERS INITIAL INVESTMENT | (50.00) |
| *MEMBERS' INITIAL EQUITY | (50.00) |
| **MEMBERS' EQUITY | (50.00) |
|  |  |
| **PROFIT/LOSS IN CURRENT YEAR | 123,203.00 |
|  |  |
|  |  |
| *** TOTAL MEMBERS' EQUITY | 123,153.00 |
|  |  |
|  |  |
| **** TOTAL LIABILITIES & MEMBERS' EQUITY | (5,781,779.37) |

**Notes:**
**(1)** Accounts payable includes an expected insurance refund for
$34,241.97. The Debtor is pursuing a cash refund instead of the
credit that was issued.  On the MOR, the expected insurance refund
is reflected in Total Current Assets.

**Limetree Bay Services, LLC**
**Income Statement**
**For the month ending September 30, 2021**

| | September 1-30, 2021 Unaudited |
|---|---|
| INCOME STATEMENT | |
| | |
| 0000801054 TAXES-STATE UNEMPLOYMENT | 0.00 |
| SALARIES AND WAGES | 0.00 |
| | |
| 0000801051 EMPLOYEE BENEFITS-HOSPITALIZATION/MEDICAL | 0.00 |
| BENEFITS | 0.00 |
| | |
| 0000807020 TRAVEL AND LODGING | 0.00 |
| MEALS & ENTERTAINMENT | 0.00 |
| | |
| 0000801063 OTHER EMPLOYEE EXPENSE | 0.00 |
| OTHER | 0.00 |
| | |
| EMPLOYEE EXPENSES | 0.00 |
| 0000803010 ACCOUNTING FEES | 0.00 |
| ACCOUNTING FEES | 0.00 |
| PROFESSIONAL FEES | 0.00 |
| | |
| 0000806030 REPAIR & MAINTENANCE - GENERAL | 0.00 |
| REPAIRS AND MAINTENANCE | 0.00 |
| | |
| 0000808040 TELECOMMUNICATIONS EXPENSE-DATA | 0.00 |
| 0000808043 TELECOMMUNICATIONS EXP-CELLULAR | 0.00 |
| COMMUNICATION EXPENSES | 0.00 |
| COMMUNICATIONS AND IT EXPENSES | 0.00 |
| | |
| 0000813015 RENTALS-PASSENGER CARS | 0.00 |
| 0000813030 RENTS OFFICE & REAL ESTATE | 0.00 |
| 0000813035 RENTALS-EQUIPMENT OTHER | 0.00 |
| RENTAL EXPENSES | 0.00 |
| | |
| 0000812031 BOOKS/MANUALS/SUBSCRIPTIONS | 0.00 |
| LICENSES, MEMBERSHIPS AND SUBSCRIPTIONS | 0.00 |
| | |
| 0000820072 GAS & OIL CONSUMED-VEHICLES | 0.00 |
| OFFICE AND MISC OPERATING EXPENSES | 0.00 |
| | |
| OTHER O&M | 0.00 |
| | |
| GENERAL ADMINISTRATION EXPENSE | 0.00 |
| | |
| **TOTAL EXPENSES | 0.00 |
| | |
| ***OPERATING INCOME | 0.00 |
| | |
| ****NET INCOME (LOSS) | 0.00 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Limetree Bay Services, LLC**

**Schedule of Bank Accounts - As of September 30, 2021**

| Description | Operating Account | DIP Funding | Adequate Assurance Account | Total - All Debtor Accounts |
|---|---|---|---|---|
| Account Name | Limetree Bay Services, LLC | Limetree Bay Services, LLC | Limetree Bay Services, LLC | |
| Bank Name | Citi Bank | EastWest Bank | EastWest Bank | |
| Account Number - Last Four Digits | 0919 | 7717 | 7724 | |
| Beginning book balance (as of 09/01/21) | $ 3,203.97 | $ - | $ - | $ 3,203.97 |
| Plus:  Deposits | - | - | - | - |
| Subtotal book balance | 3,203.97 | - | - | 3,203.97 |
| | | | | |
| Less:  Disbursements | - | - | - | - |
| Transfers | - | - | - | - |
| Other: | - | - | - | - |
| **Ending book balance (as of 09/30/21)** | **$ 3,203.97** | **$ -** | **$ -** | **$ 3,203.97** |

Citibank, N.A.    292 / 00954                                    001/R1/04F000
Sort 2224
New York, N.Y. 10043

000
CITIBANK, N. A.
**Account**
0919
**Statement Period**
Sep 1 - Sep 30, 2021
**Relationship Manager**
Lucken,Kent
(617) 717-9023
Page 1 of 2

Limetree Bay Services, LLC
842 W Sam Houston Parkway N Suite 4
Houston                    TX 77024

## CitiBusiness® ACCOUNT AS OF SEPTEMBER 30, 2021

**Relationship Summary:**

| | |
|---|---|
| **Checking** | **$3,203.97** |
| **Savings** | ----- |
| **Checking Plus** | ----- |

## SUGGESTIONS AND RECOMMENDATIONS

Your Volcker Rule Disclosure and Important Notice Regarding Future Verbal and Written Communications is now available to view online. Visit citi.com/accountagreementsandnotices and click on Citi Private Bank Notices to view the notices. For questions or concerns, please contact your Private Banking team for more information.

## SERVICE CHARGE SUMMARY FROM AUGUST 1, 2021 THRU AUGUST 31, 2021

| Type of Charge | No./Units | Price/Unit | Amount |
|---|---|---|---|
| **CITIBUSINESS CHECKING #** 0919 | | | |
| Average Daily Collected Balance | | | $4,685.48 |
| DEPOSIT SERVICES | | | |
| DEPOSIT ASSESSMENT | 4,685 | | 0.69 |
| **WAIVE | | | |
| MONTHLY MAINTENANCE FEE | 1 | 24.0000 | 24.00 |
| **WAIVE | | | |
| **Total Charges for Services** | | | **$0.00** |
| Average collected balances | | | $4,685.48 |
| Balances eligible for Earnings Credit | | | $0.00 |
| Earnings Credit allowance at 0.00000% | | | $0.00 |
| Charges Subject to Earnings Credit | | | $0.00 |
| **Net Service Charge** | | | **$0.00** |

Avg. Collected Non-Interest Bearing Balances must be at least $5,000.00 to generate Earnings Credit

## CHECKING ACTIVITY

**CitiBusiness Checking**

| 0919 | Beginning Balance: | $3,203.97 |
|---|---|---|
| | Ending Balance: | $3,203.97 |

**LIMETREE BAY SERVICES, LLC**
**LBS Checking Account**                    110850
**Citi BA            0919**
**September 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 8/31/2021 | $ | 3,203.97 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Capital Gain/Losses | | $ | - |
| Bank Charges | | $ | - |
| Dividends | | $ | - |
| Ending Balance per Bank | 9/30/2021 | $ | 3,203.97 |
| Opening Balance  per Book | 8/31/2021 | $ | 3,203.97 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Capital Gain/Losses | | | - |
| Bank Charges | | $ | - |
| Dividends | | $ | - |
| Ending Balance per Book | 9/30/2021 | $ | 3,203.97 |
| Intransit Payroll Payment | | | |
| | | $ | 3,203.97 |
| | | $ | - |

Reconciled by        George Southwell

Date:            10/1/2021

Approved by

Date:

# EAST WEST BANK   Your financial bridge®

9300 Flair Dr., 1St FL
El Monte, CA. 91731

**ACCOUNT STATEMENT**
Page  1  of  1
STARTING DATE: September 01, 2021
ENDING DATE: September 30, 2021
Total days in statement period: 30
7717
( 0)

LIMETREE BAY SERVICES, LLC
CHAPTER 11 DEBTOR IN POSSESSION
CASE #21-32351
%B RILEY FINANCIAL
3500 MAPLE AVE SUITE 420
DALLAS TX 75219-3957

Protecting the security of your account
and personal information is our top
priority. Learn about online security
practices and ways to protect yourself
from cybercrime at eastwestbank.com in
the "Privacy & Security" section.

## Commercial Analysis Checking

| | | | |
|---|---|---|---|
| Account number | 7717 | Beginning balance | $0.00 |
| Low balance | $0.00 | Total additions ( 0) | .00 |
| Average balance | $0.00 | Total subtractions ( 0) | .00 |
| | | Ending balance | $.00 |

**\*\* No activity this statement period \*\***

### OVERDRAFT/RETURN ITEM FEES

| | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

3409      rev 05-16

STANDARD BANK RECONCILIATION

Month        September        Year        2021

Account No.  *7717                          Account Name   Limetree Bay Services, LLC
                                                           Debtor in Possession Account

Bank Balance shown on Bank Statement    $ _____ -        Your transaction register balance    $ _____ -

Add (+)                                                    Add (+)
Deposits not shown on Bank Statement    $ _____ -        Other credits shown on the bank
                                                           statement but not in transaction register  $ _____ -
Total                                   $ _____ -
                                                           Add (+)
Subtract (-)                                               Interest paid on bank statement      $ _____ -
Checks and other items outstanding but not
paid on Bank Statement                                     Total                                $ _____ -

| Number | Amount | Number | Amount |
|--------|--------|--------|--------|
|        |        |        |        |
|        |        |        |        |
|        |        |        |        |
|        |        |        |        |
|        |        |        |        |
|        |        |        |        |
|        |        |        |        |
|        |        |        |        |
|        |        |        |        |
|        |        |        |        |
|        |        |        |        |

Subtract (-)
Other debits shown on bank statement

but not in transaction register

| Number | Amount |
|--------|--------|
|        | $      |
|        |        |
|        |        |
|        |        |

Total Subtractions    $ _____ -        Total Subtractions    $ _____ -

Balance               $ _____ -        Balance               $ _____ -

# EAST WEST BANK  Your financial bridge®

9300 Flair Dr., 1St FL
El Monte, CA. 91731

Direct inquiries to:
888 761-3967

**ACCOUNT STATEMENT**
Page 1 of 1
STARTING DATE: September 01, 2021
ENDING DATE: September 30, 2021
Total days in statement period: 30
7724
( 0 )

LIMETREE BAY SERVICES, LLC
CHAPTER 11 DEBTOR IN POSSESSION
CASE #21-32351
ADEQUATE ASSURANCE ACCT %B RILEY FINANCI
3500 MAPLE AVE SUITE 420
DALLAS TX 75219-3957

Protecting the security of your account
and personal information is our top
priority. Learn about online security
practices and ways to protect yourself
from cybercrime at eastwestbank.com in
the "Privacy & Security" section.

## Commercial Analysis Checking

| | | | | |
|---|---|---|---|---|
| Account number | 7724 | Beginning balance | | $0.00 |
| Low balance | $0.00 | Total additions | ( 0 ) | .00 |
| Average balance | $0.00 | Total subtractions | ( 0 ) | .00 |
| | | Ending balance | | $.00 |

**\*\* No activity this statement period \*\***

### OVERDRAFT/RETURN ITEM FEES

| | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

## STANDARD BANK RECONCILIATION

Month _____September_____   Year _____2021_____

Account No. _*7724_____   Account Name

Limetree Bay Services, LLC
Debtor in Posession Adequate
Assurance Account

| | | |
|---|---|---|
| Bank Balance shown on Bank Statement | $ _____-_____ | Your transaction register balance |
| | | $ _____-_____ |
| Add (+) | | Add (+) |
| Deposits not shown on Bank Statement | $ _____-_____ | Other credits shown on the bank |
| | | statement but not in transaction register $ _____-_____ |
| Total | $ _____-_____ | |
| | | Add (+) |
| Subtract (-) | | Interest paid on bank statement $ _____-_____ |
| Checks and other items outstanding but not | | |
| paid on Bank Statement | | Total $ _____-_____ |

| Number | Amount | Number | Amount |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Subtract (-)
Other debits shown on bank statement

but not in transaction register

| Number | Amount |
|---|---|
| | $ |
| | |
| | |
| | |

| | | | |
|---|---|---|---|
| Total Subtractions | $ _____-_____ | Total Subtractions | $ _____-_____ |
| Balance | $ _____-_____ | Balance | $ _____-_____ |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of September 30, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC[5] | AIG/National Union Fire Insurance Co | Combined Property | Primary $250M | 026-1001312 | 2021.09.01 |
| Limetree Bay Refining, LLC | Allianz Global Risk US Insurance Company | Combined Property | Primary $1.25BN | USN00023920 | 2021.12.01 |
| Limetree Bay Refining, LLC | Axis (Endorsement) | Builder's Risk | $50M | EAU646295/01/2020 | 2021.12.01 |
| Limetree Bay Refining, LLC[5] | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 92SRD102973 | 2021.09.01 |
| Limetree Bay Refining, LLC[5] | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 42-PRP-312023-01 | 2021.09.01 |
| Limetree Bay Refining, LLC | CIN 318/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC3 | Convex Insurance UK Limited | Combined Property | Primary $1.25BN (reduced to a limit of $250 million on August 20, 2021) | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Services, LLC | Liberty | Worker's Comp | | WCC-641-444917-020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hannover Re/HDI Global Specialty SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Helvetia/Helvetia Swiss Insurance Co in Liechtenstein Ltd | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | HSIC/Houston Specialty Insurance Company | Combined Property | $150M XS 50M | PRO440373 | 2021.12.01 |
| Limetree Bay Refining, LLC | LSM/Liberty Specialty Markets Agency Limited | Combined Property | $100M XS $100M | LSMAEN143232A | 2021.12.01 |
| Limetree Bay Refining, LLC | Munich Re/Great Lakes Insurance SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | PICC/Guardian General Insurance | Combined Property | $100M XS $100M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | QBE/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Rokstone/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC[5] | SCOR (3)/General Security Indemnity Company of Arizona | Combined Property | Primary $1.25BN | FA007943720201 | 2021.09.01 |
| Limetree Bay Refining, LLC | Sompo/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Swiss Re/Westport Insurance Company | Combined Property | Primary $500M | OMP 2000425-00 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of September 30, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---------|---------|------|-----------------|---------------|-----------------|
| Limetree Bay Refining, LLC[5] | Validus Specialty/Lloyds of London | Combined Property | Primary $250M | AJH292893A20 | 2021.09.01 |
| Limetree Bay Refining, LLC | Westchester Surplus Lines Ins Co/Starr Technical Risks Agency, Inc | Combined Property | Primary $500M | EPRN18215263 | 2021.12.01 |
| Limetree Bay Refining, LLC | WRB/Guardian General Insurance | Combined Property | $50M XS $50M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Zurich/Zurich American Insurance Company | Combined Property | Primary $100M | OGR 1296457-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arcadian/Ark/Helix Bermuda | Builder's Risk | $25M xs $100M | NAMBM2100005 | 2022.06.01 |
| Limetree Bay Refining, LLC | Allianz | Refinery Excess Liability | $15M xs $53M | USL00880520 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz | Environmental Liability | $15M xs $85M | USL00873320 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty | Refinery Primary Liability | | AS6-641-444917-010 | 2021.12.01 |
| Limetree Bay Refining, LLC | Travelers Syndicate | Refinery Primary Liability | | ENCAS2000012 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer/Apollo | Refinery Excess Liability | $15M | ENCAS2000011 | 2021.12.01 |
| Limetree Bay Refining, LLC | Westchester | Refinery Excess Liability | $3M xs $25M | G71809808001 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Refinery Excess Liability | $25M xs $28M | 4380100 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer | Refinery Excess Liability | $11M po $22M xs $68M | ENCAS2000020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lex-London | Refinery Excess Liability | $11M po $22M xs $68M | 62785689 | 2021.12.01 |
| Limetree Bay Refining, LLC | OSL | Refinery Excess Liability | $10M xs $90M | EXS-154724-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | AXA XL Bermuda | Refinery Excess Liability | $25M xs $125M | XLUMB-229978 | 2021.12.01 |
| Limetree Bay Refining, LLC | OCIL Bermuda | Refinery Excess Liability | $25M po $40M xs $150M | U920968-0620 | 2021.12.01 |
| Limetree Bay Refining, LLC | Sompo Bermuda | Refinery Excess Liability | $15M po $40M xs $150M | EXC30001524800 | 2021.12.01 |
| Limetree Bay Refining, LLC | Argo Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | ARGO-CAS-OR-001484 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arch Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | URP0065257-00 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of September 30, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---------|---------|------|-----------------|---------------|-----------------|
| Limetree Bay Refining, LLC | Markel Bermuda | Refinery Excess Liability | $12.5M po $50M xs $190M | 1454233-11636-UMB-2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hamilton Bermuda | Refinery Excess Liability | $7.5M po $50M xs $190M | CX20-9216 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chubb Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LBR-2144/XS004 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LSMAEC119907A | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $1M | ENVP0000296-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $9M xs $1M | ENVX0000256-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Environmental Liability | $25M xs $10M | 262704 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ascot | Environmental Liability | $25M xs $35M | ENXP2110000428-01 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel | Environmental Liability | $25M xs $60M | MKLV4EFX102259 | 2021.12.01 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $5M | 8261-8347 | 2022.04.20 |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000623319211 | 2022.04.20 |
| Limetree Bay Refining, LLC | Wesco Insurance Company | Executive Risk | $5M | EUW1909831 00 | 2022.04.20 |
| | | | | | |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000622392201 | 2027.04.20 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $5M | 8247-1536 | 2027.04.20 |
| Limetree Bay Refining, LLC | First Liberty Insurance Co | Auto Liability | $2M | AS6-641-444917-010 | 2021.12.01 |

**Notes:**

**(1)** As of September 30, 2021, insurance premiums are paid in full except for the items discussed in footnotes 2, 3 and 4.

**(2)** The auto liability policy will be audited during December 2021.  A premium will be due for autos assigned to LBR for the period from June 1, 2021 through December 31, 2021

**(3)** Audit premiums are expected to be invoiced for non-current insurance policies including the Builders All Risk policy and OCIP.  As of the filing of the monthly operating report, the audit amounts have not been determined.

**(4)** Premium obligations outstanding as of August 31, 2021 for LBR are as follows:
   a.  PFA Loan 2055:  Balance due for $266,145
   b.  PFA Loan 2303:  Balance due for $536,580

**(5)** September 1, 2021 was an expiration date for 36.5% of the property insurance program insuring the Refinery.  It was not replaced or renewed

**(6)** December 1, 2021 is an expiration date for the remaining 63.5% of the property insurance program insuring the Refinery. It is not presently being marketed, LBR assumes the risk for 30% of a $50 million primary section of the insurance program.

# UNITED STATES BANKRUPTCY COURT

<u>SOUTHERN</u>  DISTRICT OF  <u>TEXAS</u>

<u>HOUSTON DIVISION</u>

| | | |
|---|---|---|
| In Re. LIMETREE BAY REFINING HOLDINGS, LLC | § | Case No.  21-32352 |
| | § | |
| | § | Lead Case No.  21-32351 |
| Debtor(s) | § | |
| | | ☒ Jointly Administered |

## Monthly Operating Report

Chapter 11

Reporting Period Ended: 09/30/2021          Petition Date: 07/12/2021

Months Pending: 3          Industry Classification: 3 2 4 1

Reporting Method:          Accrual Basis ⦿          Cash Basis ◯

Debtor's Full-Time Employees (current):          0

Debtor's Full-Time Employees (as of date of order for relief):          0

**Supporting Documentation** (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

- ☐ Statement of cash receipts and disbursements
- ☐ Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
- ☐ Statement of operations (profit or loss statement)
- ☐ Accounts receivable aging
- ☐ Postpetition liabilities aging
- ☐ Statement of capital assets
- ☐ Schedule of payments to professionals
- ☐ Schedule of payments to insiders
- ☐ All bank statements and bank reconciliations for the reporting period
- ☐ Description of the assets sold or transferred and the terms of the sale or transfer

/s/ Elizabeth A. Green

Signature of Responsible Party

10/29/2021

Date

Elizabeth A. Green

Printed Name of Responsible Party

200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, FL 32801

Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

| Debtor's Name | LIMETREE BAY REFINING HOLDINGS, LLC | | Case No. | 21-32352 |
|---|---|---|---|---|

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a. Cash balance beginning of month | $0 | |
| b. Total receipts (net of transfers between accounts) | $0 | $0 |
| c. Total disbursements (net of transfers between accounts) | $0 | $0 |
| d. Cash balance end of month (a+b-c) | $0 | |
| e. Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f. Total disbursements for quarterly fee calculation (c+e) | $0 | $0 |

| Part 2: Asset and Liability Status (Not generally applicable to Individual Debtors. See Instructions.) | Current Month |
|---|---|
| a. Accounts receivable (total net of allowance) | $0 |
| b. Accounts receivable over 90 days outstanding (net of allowance) | $0 |
| c. Inventory    (Book ○   Market ○   Other ◉   (attach explanation)) | $0 |
| d. Total current assets | $0 |
| e. Total assets | $0 |
| f. Postpetition payables (excluding taxes) | $0 |
| g. Postpetition payables past due (excluding taxes) | $0 |
| h. Postpetition taxes payable | $0 |
| i. Postpetition taxes past due | $0 |
| j. Total postpetition debt (f+h) | $0 |
| k. Prepetition secured debt | $0 |
| l. Prepetition priority debt | $0 |
| m. Prepetition unsecured debt | $0 |
| n. Total liabilities (debt) (j+k+l+m) | $0 |
| o. Ending equity/net worth (e-n) | $0 |

| Part 3: Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a. Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b. Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c. Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4: Income Statement (Statement of Operations) (Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a. Gross income/sales (net of returns and allowances) | $0 | |
| b. Cost of goods sold (inclusive of depreciation, if applicable) | $0 | |
| c. Gross profit (a-b) | $0 | |
| d. Selling expenses | $0 | |
| e. General and administrative expenses | $0 | |
| f. Other expenses | $0 | |
| g. Depreciation and/or amortization (not included in 4b) | $0 | |
| h. Interest | $0 | |
| i. Taxes (local, state, and federal) | $0 | |
| j. Reorganization items | $0 | |
| k. Profit (loss) | $0 | $0 |

Debtor's Name LIMETREE BAY REFINING HOLDINGS, LLC

Case No. 21-32352

## Part 5: Professional Fees and Expenses

| | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| a. | Debtor's professional fees & expenses (bankruptcy) *Aggregate Total* | | $0 | $0 | $0 | $0 |
| | *Itemized Breakdown by Firm* | | | | | |
| | | Firm Name | Role | | | |
| | i | | Other | $0 | $0 | $0 | $0 |
| | ii | | Other | $0 | $0 | $0 | $0 |

| | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy) *Aggregate Total* | | | | | |
| | *Itemized Breakdown by Firm* | | | | | |
| | | Firm Name | Role | | | |
| | i | | | | | |
| | ii | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | | |

## Part 6: Postpetition Taxes

| | | Current Month | Cumulative |
|---|---|---|---|
| a. | Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. | Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. | Postpetition employer payroll taxes accrued | $0 | $0 |
| d. | Postpetition employer payroll taxes paid | $0 | $0 |
| e. | Postpetition property taxes paid | $0 | $0 |
| f. | Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. | Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

## Part 7: Questionnaire - During this reporting period:

a. Were any payments made on prepetition debt?  (if yes, see Instructions)    Yes ○    No ●

b. Were any payments made outside the ordinary course of business without court approval?  (if yes, see Instructions)    Yes ○    No ●

c. Were any payments made to or on behalf of insiders?    Yes ○    No ●

d. Are you current on postpetition tax return filings?    Yes ●    No ○

e. Are you current on postpetition estimated tax payments?    Yes ●    No ○

f. Were all trust fund taxes remitted on a current basis?    Yes ●    No ○

g. Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions)    Yes ○    No ●

h. Were all payments made to or on behalf of professionals approved by the court?    Yes ○    No ○    N/A ●

i. Do you have:    Worker's compensation insurance?    Yes ○    No ●

    If yes, are your premiums current?    Yes ○    No ○    N/A ●    (if no, see Instructions)

    Casualty/property insurance?    Yes ○    No ●

    If yes, are your premiums current?    Yes ○    No ○    N/A ●    (if no, see Instructions)

    General liability insurance?    Yes ○    No ●

    If yes, are your premiums current?    Yes ○    No ○    N/A ●    (if no, see Instructions)

j. Has a plan of reorganization been filed with the court?    Yes ○    No ●

| Debtor's Name | LIMETREE BAY REFINING HOLDINGS, LLC | Case No. | 21-32352 |
|---|---|---|---|

k.  Has a disclosure statement been filed with the court?                Yes ○   No ●
l.  Are you current with quarterly U.S. Trustee fees as                   Yes ●   No ○
    set forth under 28 U.S.C. § 1930?

### Part 8: Individual Chapter 11 Debtors (Only)

| | | |
|---|---|---|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |

l.  Are you required to pay any Domestic Support Obligations as defined by 11     Yes ○   No ●
    U.S.C § 101(14A)?
m.  If yes, have you made all Domestic Support Obligation payments?    Yes ○   No ○   N/A ●

### Privacy Act Statement

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107.  The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6).  The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith.  This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law.  Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records."  See 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006).  A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm.  Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee.  11 U.S.C. § 1112(b)(4)(F).

**<u>I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.</u>**

/s/ Mark Shapiro                                                Mark Shapiro, Chief Restructuring Officer
Signature of Responsible Party                    Printed Name of Responsible Party

Chief Restructuring Officer                                10/29/2021
Title                                                                   Date

**CASE NAME:**                **Limetree Bay Refining Holdings, LLC**
**CASE NUMBER:**          **21-32352 (Jointly Administered under Lead Case No.: 21-32351)**

### Notes to the Monthly Operating Report

**General:**

On July 12, 2021 (the "Petition Date"), Limetree Bay Services, LLC ("Limetree") filed a voluntary petition with the United States Bankruptcy Court under Chapter 11 of the Bankruptcy Code [Case No.: 21-32351], along with five (5) affiliated entities (Affiliated Entities"). The debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067);  and Limetree Bay Refining Marketing, LLC (9222); (collectively, the "Debtors" or "Jointly Administered Debtors"). The bankruptcy filings of Limetree and the Affiliated Entities are jointly administered under Case No. 21-32351.

On or about June 17, 2021, the Jointly Administered Debtors retained B. Riley as chief restructuring officer ("CRO"). Mark Shapiro, as principal representative of B. Riley in its capacity, serves as CRO to the Jointly Administered Debtors.

Debtor-in-Possession Financial Statements - The accompanying schedules herein are unaudited, preliminary, and may not comply with generally accepted accounting principles in the United States of America ("U.S. GAAP") in all material respects.

The Monthly Operating Report ("MOR") is limited in scope, covers a limited time period, and has been prepared solely for the purpose of complying with the monthly reporting requirements of the Bankruptcy Court and the United States Trustee.  The information presented herein has not been subjected to all procedures that would typically be applied to financial information presented in accordance with U.S. GAAP. Upon the application of such procedures, the financial information could be subject to changes, and these changes could be material. The information furnished in this MOR includes normal recurring adjustments, but does not include all of the adjustments that would typically be made for interim financial statements in accordance with U.S. GAAP.

Reservation of Rights: Given the complexity of the Debtors' business, inadvertent errors, omissions or over inclusions may have occurred. Accordingly, the Debtors hereby reserve all of their rights to dispute the validity, status, enforceability, or executory nature of any claim amount, representation or other statement in this MOR and reserve the right to amend or supplement this MOR, if necessary, but shall be under no obligation to do so.

**September 1-30, 2021 Monthly Operating Report:**

**(1)**  The Reporting Period for this MOR is September 1-30, 2021.

**(2)**  The CRO, Mark Shapiro, has signed this MOR.  Mr. Shapiro is an authorized signatory for the Debtor. In reviewing and signing the MOR, Mr. Shapiro has relied upon the efforts, statements and representations of various personnel employed by the Debtor and the Debtor's advisors. Mr. Shapiro has not (and could not have) personally verified the accuracy of each statement and representation contained in the MOR, including statements and representations concerning amounts owed to creditors, classification of such amounts, and other attached information.

**(3)**  MOR Parts 1, 2 and 4 - The Debtor is not an operating entity and therefore does not have any assets or liabilities.

**(4)**  MOR Part 2, k-m - Amounts are per the Debtor's bankruptcy schedules and are subject to adjustment once the claims process has been completed by the CRO, which includes, but is not limited to, examining, determining the validity of and objecting to any disputed, contingent, unliquidated and filed claims.

**(5)**  MOR Part 2, k-o - As of the time of this filing, the CRO has not determined with accuracy the amount of the secured and unsecured debt, both of which are components of ending net equity/net worth.  Accordingly, the CRO makes no representations regarding the accuracy of the form-calculated net equity/net worth of the Debtor.

**Attachments to MOR:**

**A.**  Schedule of Insurance in effect as of September 30, 2021 for the Jointly Administered Debtors

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of September 30, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC[5] | AIG/National Union Fire Insurance Co | Combined Property | Primary $250M | 026-1001312 | 2021.09.01 |
| Limetree Bay Refining, LLC | Allianz Global Risk US Insurance Company | Combined Property | Primary $1.25BN | USN00023920 | 2021.12.01 |
| Limetree Bay Refining, LLC | Axis (Endorsement) | Builder's Risk | $50M | EAU646295/01/2020 | 2021.12.01 |
| Limetree Bay Refining, LLC[5] | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 92SRD102973 | 2021.09.01 |
| Limetree Bay Refining, LLC[5] | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 42-PRP-312023-01 | 2021.09.01 |
| Limetree Bay Refining, LLC | CIN 318/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC3 | Convex Insurance UK Limited | Combined Property | Primary $1.25BN (reduced to a limit of $250 million on August 20, 2021) | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Services, LLC | Liberty | Worker's Comp | | WCC-641-444917-020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hannover Re/HDI Global Specialty SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Helvetia/Helvetia Swiss Insurance Co in Liechtenstein Ltd | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | HSIC/Houston Specialty Insurance Company | Combined Property | $150M XS 50M | PRO440373 | 2021.12.01 |
| Limetree Bay Refining, LLC | LSM/Liberty Specialty Markets Agency Limited | Combined Property | $100M XS $100M | LSMAEN143232A | 2021.12.01 |
| Limetree Bay Refining, LLC | Munich Re/Great Lakes Insurance SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | PICC/Guardian General Insurance | Combined Property | $100M XS $100M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | QBE/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Rokstone/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC[5] | SCOR (3)/General Security Indemnity Company of Arizona | Combined Property | Primary $1.25BN | FA007943720201 | 2021.09.01 |
| Limetree Bay Refining, LLC | Sompo/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Swiss Re/Westport Insurance Company | Combined Property | Primary $500M | OMP 2000425-00 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of September 30, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC[5] | Validus Specialty/Lloyds of London | Combined Property | Primary $250M | AJH292893A20 | 2021.09.01 |
| Limetree Bay Refining, LLC | Westchester Surplus Lines Ins Co/Starr Technical Risks Agency, Inc | Combined Property | Primary $500M | EPRN18215263 | 2021.12.01 |
| Limetree Bay Refining, LLC | WRB/Guardian General Insurance | Combined Property | $50M XS $50M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Zurich/Zurich American Insurance Company | Combined Property | Primary $100M | OGR 1296457-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arcadian/Ark/Helix Bermuda | Builder's Risk | $25M xs $100M | NAMBM2100005 | 2022.06.01 |
| Limetree Bay Refining, LLC | Allianz | Refinery Excess Liability | $15M xs $53M | USL00880520 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz | Environmental Liability | $15M xs $85M | USL00873320 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty | Refinery Primary Liability | | AS6-641-444917-010 | 2021.12.01 |
| Limetree Bay Refining, LLC | Travelers Syndicate | Refinery Primary Liability | | ENCAS2000012 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer/Apollo | Refinery Excess Liability | $15M | ENCAS2000011 | 2021.12.01 |
| Limetree Bay Refining, LLC | Westchester | Refinery Excess Liability | $3M xs $25M | G71809808001 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Refinery Excess Liability | $25M xs $28M | 4380100 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer | Refinery Excess Liability | $11M po $22M xs $68M | ENCAS2000020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lex-London | Refinery Excess Liability | $11M po $22M xs $68M | 62785689 | 2021.12.01 |
| Limetree Bay Refining, LLC | OSL | Refinery Excess Liability | $10M xs $90M | EXS-154724-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | AXA XL Bermuda | Refinery Excess Liability | $25M xs $125M | XLUMB-229978 | 2021.12.01 |
| Limetree Bay Refining, LLC | OCIL Bermuda | Refinery Excess Liability | $25M po $40M xs $150M | U920968-0620 | 2021.12.01 |
| Limetree Bay Refining, LLC | Sompo Bermuda | Refinery Excess Liability | $15M po $40M xs $150M | EXC30001524800 | 2021.12.01 |
| Limetree Bay Refining, LLC | Argo Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | ARGO-CAS-OR-001484 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arch Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | URP0065257-00 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of September 30, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | Markel Bermuda | Refinery Excess Liability | $12.5M po $50M xs $190M | 1454233-11636-UMB-2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hamilton Bermuda | Refinery Excess Liability | $7.5M po $50M xs $190M | CX20-9216 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chubb Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LBR-2144/XS004 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LSMAEC119907A | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $1M | ENVP0000296-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $9M xs $1M | ENVX0000256-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Environmental Liability | $25M xs $10M | 262704 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ascot | Environmental Liability | $25M xs $35M | ENXP2110000428-01 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel | Environmental Liability | $25M xs $60M | MKLV4EFX102259 | 2021.12.01 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $5M | 8261-8347 | 2022.04.20 |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000623319211 | 2022.04.20 |
| Limetree Bay Refining, LLC | Wesco Insurance Company | Executive Risk | $5M | EUW1909831 00 | 2022.04.20 |
| | | | | | |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000622392201 | 2027.04.20 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $5M | 8247-1536 | 2027.04.20 |
| Limetree Bay Refining, LLC | First Liberty Insurance Co | Auto Liability | $2M | AS6-641-444917-010 | 2021.12.01 |

**Notes:**

**(1)**  As of September 30, 2021, insurance premiums are paid in full except for the items discussed in footnotes 2, 3 and 4.

**(2)**  The auto liability policy will be audited during December 2021.  A premium will be due for autos assigned to LBR for the period from June 1, 2021 through December 31, 2021

**(3)**  Audit premiums are expected to be invoiced for non-current insurance policies including the Builders All Risk policy and OCIP.  As of the filing of the monthly operating report, the audit amounts have not been determined.

**(4)**  Premium obligations outstanding as of August 31, 2021 for LBR are as follows:

   a.  PFA Loan 2055:  Balance due for $266,145

   b.  PFA Loan 2303:  Balance due for $536,580

**(5)**  September 1, 2021 was an expiration date for 36.5% of the property insurance program insuring the Refinery.  It was not replaced or renewed

**(6)**  December 1, 2021 is an expiration date for the remaining 63.5% of the property insurance program insuring the Refinery. It is not presently being marketed, LBR assumes the risk for 30% of a $50 million primary section of the insurance program.

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN  DISTRICT OF  TEXAS

### HOUSTON DIVISION

| | |
|---|---|
| In Re. LIMETREE BAY REFINING HOLDINGS II, LLC | § § § § |
| Debtor(s) | |

Case No.  21-32353

Lead Case No.  21-32351

☒ Jointly Administered

## Monthly Operating Report

Chapter 11

Reporting Period Ended: 09/30/2021

Petition Date: 07/12/2021

Months Pending: 3

Industry Classification: | 3 | 2 | 4 | 1 |

Reporting Method:        Accrual Basis ⦿        Cash Basis ○

Debtor's Full-Time Employees (current):                           0

Debtor's Full-Time Employees (as of date of order for relief):     0

**Supporting  Documentation** (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

☒   Statement of cash receipts and disbursements
☒   Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
☒   Statement of operations (profit or loss statement)
☐   Accounts receivable aging
☐   Postpetition liabilities aging
☐   Statement of capital assets
☐   Schedule of payments to professionals
☐   Schedule of payments to insiders
☒   All bank statements and bank reconciliations for the reporting period
☐   Description of the assets sold or transferred and the terms of the sale or transfer

/s/ Elizabeth A. Green
Signature of Responsible Party

10/29/2021
Date

Elizabeth A. Green
Printed Name of Responsible Party

200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, FL 32801
Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

Debtor's Name  LIMETREE BAY REFINING HOLDINGS II, LLC                    Case No.  21-32353

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a. Cash balance beginning of month | $50 | |
| b. Total receipts (net of transfers between accounts) | $0 | $0 |
| c. Total disbursements (net of transfers between accounts) | $0 | $0 |
| d. Cash balance end of month (a+b+c) | $50 | |
| e. Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f. Total disbursements for quarterly fee calculation (c+e) | $0 | $0 |

| Part 2:  Asset and Liability Status (Not generally applicable to Individual Debtors. See Instructions.) | Current Month | |
|---|---|---|
| a. Accounts receivable (total net of allowance) | $0 | |
| b. Accounts receivable over 90 days outstanding (net of allowance) | $0 | |
| c. Inventory    (Book ○    Market ○    Other ◉    (attach explanation)) | $0 | |
| d. Total current assets | $50 | |
| e. Total assets | $1,118,862,006 | |
| f. Postpetition payables (excluding taxes) | $0 | |
| g. Postpetition payables past due (excluding taxes) | $0 | |
| h. Postpetition taxes payable | $0 | |
| i. Postpetition taxes past due | $0 | |
| j. Total postpetition debt (f+h) | $0 | |
| k. Prepetition secured debt | $779,383,442 | |
| l. Prepetition priority debt | $0 | |
| m. Prepetition unsecured debt | $0 | |
| n. Total liabilities (debt) (j+k+l+m) | $779,383,442 | |
| o. Ending equity/net worth (e-n) | $339,478,564 | |

| Part 3:  Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a. Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b. Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c. Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4:  Income Statement (Statement of Operations) (Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a. Gross income/sales (net of returns and allowances) | $0 | |
| b. Cost of goods sold (inclusive of depreciation, if applicable) | $0 | |
| c. Gross profit (a-b) | $0 | |
| d. Selling expenses | $0 | |
| e. General and administrative expenses | $0 | |
| f. Other expenses | $0 | |
| g. Depreciation and/or amortization (not included in 4b) | $0 | |
| h. Interest | $2,421,582 | |
| i. Taxes (local, state, and federal) | $0 | |
| j. Reorganization items | $0 | |
| k. Profit (loss) | $-2,421,582 | $-2,421,582 |

Debtor's Name  LIMETREE BAY REFINING HOLDINGS II, LLC     Case No.  21-32353

## Part 5:  Professional Fees and Expenses

|  | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| a. | Debtor's professional fees & expenses (bankruptcy)  *Aggregate Total* | | $0 | $0 | $0 | $0 |
|  | *Itemized Breakdown by Firm* | | | | | |
|  | Firm Name | Role | | | | |
|  | i | Other | $0 | $0 | $0 | $0 |
|  | ii | Other | $0 | $0 | $0 | $0 |

|  | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy)  *Aggregate Total* | | | | | |
|  | *Itemized Breakdown by Firm* | | | | | |
|  | Firm Name | Role | | | | |
|  | i | | | | | |
|  | ii | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | | |

## Part 6:  Postpetition Taxes

|  | | Current Month | Cumulative |
|---|---|---|---|
| a. | Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. | Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. | Postpetition employer payroll taxes accrued | $0 | $0 |
| d. | Postpetition employer payroll taxes paid | $0 | $0 |
| e. | Postpetition property taxes paid | $0 | $0 |
| f. | Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. | Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

## Part 7: Questionnaire - During this reporting period:

a. Were any payments made on prepetition debt?  (if yes, see Instructions)   Yes ○  No ●

b. Were any payments made outside the ordinary course of business without court approval?  (if yes, see Instructions)   Yes ○  No ●

c. Were any payments made to or on behalf of insiders?   Yes ○  No ●

d. Are you current on postpetition tax return filings?   Yes ●  No ○

e. Are you current on postpetition estimated tax payments?   Yes ●  No ○

f. Were all trust fund taxes remitted on a current basis?   Yes ●  No ○

g. Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions)   Yes ●  No ○

h. Were all payments made to or on behalf of professionals approved by the court?   Yes ○  No ○  N/A ●

i. Do you have:   Worker's compensation insurance?   Yes ●  No ○

    If yes, are your premiums current?   Yes ●  No ○  N/A ○  (if no, see Instructions)

    Casualty/property insurance?   Yes ●  No ○

    If yes, are your premiums current?   Yes ●  No ○  N/A ○  (if no, see Instructions)

    General liability insurance?   Yes ●  No ○

    If yes, are your premiums current?   Yes ●  No ○  N/A ○  (if no, see Instructions)

j. Has a plan of reorganization been filed with the court?   Yes ○  No ●

| Debtor's Name | LIMETREE BAY REFINING HOLDINGS II, LLC | | Case No. | 21-32353 |

k.  Has a disclosure statement been filed with the court?    Yes ○  No ●

l.  Are you current with quarterly U.S. Trustee fees as set forth under 28 U.S.C. § 1930?    Yes ●  No ○

## Part 8: Individual Chapter 11 Debtors (Only)

| | | |
|---|---|---|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |

l.  Are you required to pay any Domestic Support Obligations as defined by 11 U.S.C § 101(14A)?    Yes ○  No ●

m.  If yes, have you made all Domestic Support Obligation payments?    Yes ○  No ○  N/A ●

### Privacy Act Statement

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107.  The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6).  The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith.  This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law.  Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records."  *See* 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006).  A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm.  Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee.  11 U.S.C. § 1112(b)(4)(F).

**<u>I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.</u>**

Mark Shapiro
_____
Signature of Responsible Party

Chief Restructuring Officer
_____
Title

Mark Shapiro, Chief Restructuring Officer
_____
Printed Name of Responsible Party

10/29/2021
_____
Date

**CASE NAME:**            **Limetree Bay Refining Holdings II, LLC**
**CASE NUMBER:**      **21-32353 (Jointly Administered under Lead Case No.: 21-32351)**

### Notes to the Monthly Operating Report

## General:

On July 12, 2021 (the "Petition Date"), Limetree Bay Services, LLC ("Limetree") filed a voluntary petition with the United States Bankruptcy Court under Chapter 11 of the Bankruptcy Code [Case No.: 21-32351], along with five (5) affiliated entities (Affiliated Entities"). The debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067);  and Limetree Bay Refining Marketing, LLC (9222); (collectively, the "Debtors" or "Jointly Administered Debtors"). The bankruptcy filings of Limetree and the Affiliated Entities are jointly administered under Case No. 21-32351.

On or about June 17, 2021, the Jointly Administered Debtors retained B. Riley as chief restructuring officer ("CRO"). Mark Shapiro, as principal representative of B. Riley in its capacity, serves as CRO to the Jointly Administered Debtors.

Debtor-in-Possession Financial Statements - The accompanying schedules herein are unaudited, preliminary, and may not comply with generally accepted accounting principles in the United States of America ("U.S. GAAP") in all material respects.

The Monthly Operating Report ("MOR") is limited in scope, covers a limited time period, and has been prepared solely for the purpose of complying with the monthly reporting requirements of the Bankruptcy Court and the United States Trustee.  The information presented herein has not been subjected to all procedures that would typically be applied to financial information presented in accordance with U.S. GAAP. Upon the application of such procedures, the financial information could be subject to changes, and these changes could be material. The information furnished in this MOR includes normal recurring adjustments, but does not include all of the adjustments that would typically be made for interim financial statements in accordance with U.S. GAAP.

Reservation of Rights: Given the complexity of the Debtors' business, inadvertent errors, omissions or over inclusions may have occurred. Accordingly, the Debtors hereby reserve all of their rights to dispute the validity, status, enforceability, or executory nature of any claim amount, representation or other statement in this MOR and reserve the right to amend or supplement this MOR, if necessary, but shall be under no obligation to do so.

## September 1-30, 2021 Monthly Operating Report:

**(1)**  The Reporting Period for this MOR is September 1-30, 2021, and the financial statements referenced herein cover the same time period.

**(2)**  The Financial Statements are reported on an Accrual Basis. Cash Receipts & Disbursements are reported on a Cash Basis.

**(3)**  The CRO, Mark Shapiro, has signed this MOR.  Mr. Shapiro is an authorized signatory for the Debtor. In reviewing and signing the MOR, Mr. Shapiro has relied upon the efforts, statements and representations of various personnel employed by the Debtor and the Debtor's advisors. Mr. Shapiro has not (and could not have) personally verified the accuracy of each statement and representation contained in the MOR, including statements and representations concerning amounts owed to creditors, classification of such amounts, and other attached information.

**(4)**  MOR Part 2, d - Total Current Assets includes Cash.

**(5)**  MOR Part 2, e - Total Assets includes Current Assets and Investments in Limetree Bay Refining, LLC.

**(6)**  MOR Part 2, f - Post-Petition Payables (excluding taxes) is comprised of Trade Payables. The net increase in total liabilities from the previous reporting period is $2,421,582.15.

**(7)**  MOR Part 2, k-m - Amounts are per the Debtor's bankruptcy schedules and are subject to adjustment once the claims process has been completed by the CRO, which includes, but is not limited to, examining, determining the validity of and objecting to any disputed, contingent, unliquidated and filed claims.

**(8)**  MOR Part 2, k-o - As of the time of this filing, the CRO has not determined with accuracy the amount of the secured and unsecured debt, both of which are components of ending net equity/net worth.  Accordingly, the CRO makes no representations regarding the accuracy of the form-calculated net equity/net worth of the Debtor.

**(9)**  MOR Part 7, i - See attached the schedule of insurance in effect for the Jointly Administered Debtors.

**Attachments to MOR:**

**A.**  Financial Statements (Unaudited)

**B.**  Statement of Cash Receipts and Disbursements

**C.**  Bank statement and bank reconciliation

**D.**  Schedule of Insurance in effect as of September 30, 2021 for the Jointly Administered Debtors

## STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS
### FOR THE PERIOD BEGINNING September 1, 2021 AND ENDING September 30,2021

Name of Debtor: Limetree Bay Refining Holdings II, LLC      Case Number:  21-32353
Date of Petition:   July 12, 2021

| | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|
| **1. FUNDS AT BEGINNING OF PERIOD** | $          50.00 | $          50.00 |
| | | |
| **2. RECEIPTS:** | | |
| A. Cash Sales | - | - |
| Minus: Cash Refunds | - | - |
| Net Cash Sales | - | - |
| B. Accounts Receivable | - | - |
| C. Other Receipts | - | - |
| (If you receive rental income, you must attach a rent roll) | | |
| **3. TOTAL RECEIPTS** *(Lines 2A+2B+2C)* | - | - |
| **4. TOTAL FUNDS AVAILABLE FOR OPERATIONS** *(Line 1 + Line 3)* | 50.00 | 50.00 |
| | | |
| **5. DISBURSEMENTS** | | |
| A.   Advertising | - | - |
| B.   Bank Charges & Fees | - | - |
| C.   Contract Labor | - | - |
| D.   Fixed Asset Payments (not incl. in "N") | - | - |
| E.   Insurance | - | - |
| F.   Inventory Payments | - | - |
| G.   Leases & Contracts | - | - |
| H.   Manufacturing Supplies | - | - |
| I.   Office Supplies | - | - |
| J.   Payroll | - | - |
| K.   Professional Fees (Accounting & Legal) | - | - |
| L.   Rent | - | - |
| M.   Repairs & Maintenance | - | - |
| N.   Secured Creditor Payments | - | - |
| O.   Taxes Paid - Payroll | - | - |
| P.   Taxes Paid - Sales & Use | - | - |
| Q.   Taxes Paid - Other | - | - |
| R.   Telephone | - | - |
| S.   Travel & Entertainment | - | - |
| T.   U.S. Trustee | - | - |
| U.   Utilities | - | - |
| V.   Vehicle Expenses | - | - |
| W.   Other Operating Expenses | - | - |
| **6. TOTAL DISBURSEMENTS** *(Sum of 5A thru W)* | - | - |
| **7. ENDING BALANCE** *(Line 4 Minus Line 6)* | $          50.00 | $          50.00 |

## STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS (CONT'D.)

### Detail of Other Receipts and Other Disbursements

**OTHER RECEIPTS:**

Describe Each Item of Other Receipt and List Amount of Receipt.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| | $           - | $           - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | $           - | $           - |

**"Other Receipts" includes Loans from Insiders and other sources (i.e. Officer/Owner, related parties directors, related corporations, etc.).  Please describe below:**

| Loan Amount | Source of Funds | Purpose | Repayment Schedule |
|---|---|---|---|
| | | | |
| | | | |

**OTHER DISBURSEMENTS:**

Describe Each Item of Other Disbursement and List Amount of Disbursement.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| | $           - | $           - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | $           - | $           - |

**Limetree Bay Refining Holdings II, LLC**
**Balance Sheet**
**September 30, 2021**

| | 9/30/2021 |
|---|---|
| TOTAL ASSETS | |
| | |
| 0000110850 Checking Account - Citibank, N.A. - 6869787150 | 50.00 |
| *CASH & CASH EQUIVALENTS | 50.00 |
| **TOTAL CURRENT ASSETS | 50.00 |
| | |
| | |
| 0000190201 INVESTMENT IN LIMETREE BAY REFINING | 1,118,861,955.78 |
| INVESTMENT IN LIMETREE BAY REFINING | 1,118,861,955.78 |
| | |
| *OTHER ASSETS | 1,118,861,955.78 |
| | |
| **TOTAL NON-CURRENT ASSETS | 1,118,861,955.78 |
| | |
| **** TOTAL ASSETS | 1,118,862,005.78 |
| | |
| ================================= | |
| TOTAL LIABILITIES AND MEMBERS' EQUITY | |
| | |
| TOTAL LIABILITIES | |
| | |
| 0000231510 ACCRUED INTEREST-DEBT | (4,165,237.44) |
| 0000231525 ACCRUED INTRST - DEBT - AFFIL - TRANCHE D TERM DBT | (225,379.53) |
| 0000231526 ACCRUED INTRST - DEBT - AFFIL - SUBORDINATED NOTE | (6,994,698.79) |
| *ACCRUED INTEREST | (11,385,315.76) |
| | |
| 0000235244 TRANCHE D TERM DEBT - OID - AFFILIATE - CURRENT | 186,911.79 |
| 0000235245 TRANCHE D TERM DEBT - DIC - CURRENT | 32,160.30 |
| TRANCHE D TERM DEBT-CURRENT | 219,072.09 |
| | |
| 0000235249 TERM LOAN - OID - CURRENT | 3,034,693.04 |
| OTHER TERM DEBT-CURRENT | 3,034,693.04 |
| | |
| TERM DEBT-CURRENT | 3,253,765.13 |
| | |
| 0000235214 DEFERRED FINANCE COSTS - CURRENT | 1,822,321.86 |
| DEFERRED FINANCE COSTS-CURRENT | 1,822,321.86 |
| | |
| OTHER LONG TERM DEBT-CURRENT PORTION | 5,076,086.99 |
| | |
| *CURRENT PORTION OF LONG-TERM DEBT | 5,076,086.99 |
| **TOTAL CURRENT LIABILITIES | (6,309,228.77) |

**Limetree Bay Refining Holdings II, LLC**
**Balance Sheet**
**September 30, 2021**

| | 9/30/2021 |
|---|---|
| 0000260049 NOTE PAYABLE – AFFILIATE – OID | 9,165,016.72 |
| 0000260050 Note Payable - Affiliate | (612,165,523.54) |
| NOTE PAYABLE - AFFILIATE | (603,000,506.82) |
| | |
| 0000260114 TRANCHE D TERM DEBT | (35,469,567.49) |
| 0000260117 TRANCHE D TERM DEBT – AFFILIATE – OID | 597,206.81 |
| 0000260118 TRANCHE D TERM DEBT - DEBT ISSUE COSTS | 101,394.29 |
| TRANCHE D TERM DEBT | (34,770,966.39) |
| | |
| 0000260055 AFFILIATE TERM DEBT - LONG TERM | (17,734,783.74) |
| AFFILIATE TERM DEBT | (17,734,783.74) |
| | |
| 0000260010 LONG TERM DEBT - TERM | (315,697,992.06) |
| 0000260120 TERM LOAN DEBT - OID - LONG TERM | 9,620,132.63 |
| OTHER TERM DEBT | (306,077,859.43) |
| | |
| TERM DEBT | (358,583,609.56) |
| | |
| 0000260070 FINANCE COST - DEFERRED CONTRA | 5,769,792.32 |
| DEFERRED FINANCE COSTS | 5,769,792.32 |
| | |
| OTHER LONG TERM DEBT | (352,813,817.24) |
| | |
| *LONG-TERM DEBT, NET CRRNT PRTN & ISSNCE CST | (955,814,324.06) |
| | |
| **TOTAL NON-CURRENT LIABILITIES | (955,814,324.06) |
| | |
| *** TOTAL LIABILITIES | (962,123,552.83) |
| | |
| TOTAL MEMBERS' EQUITY | |
| | |
| 0000320020 MEMBERS ADDITIONAL INVESTMENT | (178,709,809.90) |
| *MEMBERS' ADDITIONAL INVESTMENT | (178,709,809.90) |
| **MEMBERS' EQUITY | (178,709,809.90) |
| | |
| **PROFIT/LOSS IN CURRENT YEAR | 21,971,356.95 |
| | |
| *** TOTAL MEMBERS' EQUITY | (156,738,452.95) |
| | |
| **** TOTAL LIABILITIES & MEMBERS' EQUITY | (1,118,862,005.78) |

**Limetree Bay Refining Holdings II, LLC**
**Income Statement**
**For the month ending September 30, 2021**

| | September 1-30, 2021<br>Unaudited |
|---|---|
| INCOME STATEMENT | |
| | |
| 0000818010 INTEREST EXPENSE | 1,619,447.04 |
| 0000818027 AFFILIATED INTEREST EXPENSE - TRANCHE D TERM DEBT | 73,009.50 |
| 0000818028 AFFILIATED INTEREST EXPENSE - SUBORDINATED NOTE | 729,125.61 |
| **INTEREST AND FINANCING EXPENSE | 2,421,582.15 |
| | |
| ***TOTAL NON-OPERATING INCOME (EXPENSE): | -2,421,582.15 |
| | |
| ****NET INCOME (LOSS) | -2,421,582.15 |

Citibank, N.A.    292 / 00954                                                          001/R1/04F000
Sort 2224
New York, N.Y. 10043

000
CITIBANK, N. A.
**Account**
        **7150**
**Statement Period**
**Sep 1 - Sep 30, 2021**
**Relationship Manager**
Lucken,Kent
(617) 717-9023
Page 1 of 2

LIMETREE BAY REFINING HOLDINGS II,
LLC (SPRINGING)
842 W. SAM HOUSTON PARKWAY N. SUITE
HOUSTON                    TX 77024

## CitiBusiness® ACCOUNT AS OF SEPTEMBER 30, 2021

**Relationship Summary:**

| | |
|---|---|
| **Checking** | **$50.00** |
| **Savings** | ----- |
| **Checking Plus** | ----- |

## SUGGESTIONS AND RECOMMENDATIONS

Your Volcker Rule Disclosure and Important Notice Regarding Future Verbal and Written Communications is now available to view online. Visit citi.com/accountagreementsandnotices and click on Citi Private Bank Notices to view the notices. For questions or concerns, please contact your Private Banking team for more information.

## SERVICE CHARGE SUMMARY FROM AUGUST 1, 2021 THRU AUGUST 31, 2021

| Type of Charge | No./Units | Price/Unit | Amount |
|---|---|---|---|
| **CITIBUSINESS CHECKING #        7150** | | | |
| Average Daily Collected Balance | | | $50.00 |
| DEPOSIT SERVICES | | | |
|    MONTHLY MAINTENANCE FEE | 1 | 24.0000 | 24.00 |
| **WAIVE | | | |
| **Total Charges for Services** | | | **$0.00** |
| Average collected balances | | | $50.00 |
| Balances eligible for Earnings Credit | | | $0.00 |
| Earnings Credit allowance at  0.00000% | | | $0.00 |
| Charges Subject to Earnings Credit | | | $0.00 |
| **Net Service Charge** | | | **$0.00** |

Avg. Collected Non-Interest Bearing Balances must be at least $5,000.00 to generate Earnings Credit

## CHECKING ACTIVITY

**CitiBusiness Checking**

| **7150** | **Beginning Balance:** | $50.00 |
|---|---|---|
| | **Ending Balance:** | $50.00 |

**LIMETREE BAY REFINING HOLDINGS II, LLC**
**B & P Checking**                                110850
**Citi BA        7150**
**September 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 8/31/2021 | $ | 50.00 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Capital Gain/Losses | | $ | - |
| Bank Charges | | $ | - |
| Dividends | | $ | - |
| Ending Balance per Bank | 9/30/2021 | $ | 50.00 |
| Opening Balance  per Book | 8/31/2021 | $ | 50.00 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Capital Gain/Losses | | | - |
| Bank Charges | | $ | - |
| Dividends | | $ | - |
| Ending Balance per Book | 9/30/2021 | $ | 50.00 |
| | | $ | 50.00 |
| | | $ | - |

Reconciled by            George Southwell

Date:            10/1/2021

Approved by

Date:

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of September 30, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC[5] | AIG/National Union Fire Insurance Co | Combined Property | Primary $250M | 026-1001312 | 2021.09.01 |
| Limetree Bay Refining, LLC | Allianz Global Risk US Insurance Company | Combined Property | Primary $1.25BN | USN00023920 | 2021.12.01 |
| Limetree Bay Refining, LLC | Axis (Endorsement) | Builder's Risk | $50M | EAU646295/01/2020 | 2021.12.01 |
| Limetree Bay Refining, LLC[5] | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 92SRD102973 | 2021.09.01 |
| Limetree Bay Refining, LLC[5] | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 42-PRP-312023-01 | 2021.09.01 |
| Limetree Bay Refining, LLC | CIN 318/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC3 | Convex Insurance UK Limited | Combined Property | Primary $1.25BN (reduced to a limit of $250 million on August 20, 2021) | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Services, LLC | Liberty | Worker's Comp | | WCC-641-444917-020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hannover Re/HDI Global Specialty SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Helvetia/Helvetia Swiss Insurance Co in Liechtenstein Ltd | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | HSIC/Houston Specialty Insurance Company | Combined Property | $150M XS 50M | PRO440373 | 2021.12.01 |
| Limetree Bay Refining, LLC | LSM/Liberty Specialty Markets Agency Limited | Combined Property | $100M XS $100M | LSMAEN143232A | 2021.12.01 |
| Limetree Bay Refining, LLC | Munich Re/Great Lakes Insurance SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | PICC/Guardian General Insurance | Combined Property | $100M XS $100M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | QBE/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Rokstone/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC[5] | SCOR (3)/General Security Indemnity Company of Arizona | Combined Property | Primary $1.25BN | FA007943720201 | 2021.09.01 |
| Limetree Bay Refining, LLC | Sompo/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Swiss Re/Westport Insurance Company | Combined Property | Primary $500M | OMP 2000425-00 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of September 30, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC[5] | Validus Specialty/Lloyds of London | Combined Property | Primary $250M | AJH292893A20 | 2021.09.01 |
| Limetree Bay Refining, LLC | Westchester Surplus Lines Ins Co/Starr Technical Risks Agency, Inc | Combined Property | Primary $500M | EPRN18215263 | 2021.12.01 |
| Limetree Bay Refining, LLC | WRB/Guardian General Insurance | Combined Property | $50M XS $50M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Zurich/Zurich American Insurance Company | Combined Property | Primary $100M | OGR 1296457-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arcadian/Ark/Helix Bermuda | Builder's Risk | $25M xs $100M | NAMBM2100005 | 2022.06.01 |
| Limetree Bay Refining, LLC | Allianz | Refinery Excess Liability | $15M xs $53M | USL00880520 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz | Environmental Liability | $15M xs $85M | USL00873320 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty | Refinery Primary Liability | | AS6-641-444917-010 | 2021.12.01 |
| Limetree Bay Refining, LLC | Travelers Syndicate | Refinery Primary Liability | | ENCAS2000012 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer/Apollo | Refinery Excess Liability | $15M | ENCAS2000011 | 2021.12.01 |
| Limetree Bay Refining, LLC | Westchester | Refinery Excess Liability | $3M xs $25M | G71809808001 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Refinery Excess Liability | $25M xs $28M | 4380100 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer | Refinery Excess Liability | $11M po $22M xs $68M | ENCAS2000020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lex-London | Refinery Excess Liability | $11M po $22M xs $68M | 62785689 | 2021.12.01 |
| Limetree Bay Refining, LLC | OSL | Refinery Excess Liability | $10M xs $90M | EXS-154724-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | AXA XL Bermuda | Refinery Excess Liability | $25M xs $125M | XLUMB-229978 | 2021.12.01 |
| Limetree Bay Refining, LLC | OCIL Bermuda | Refinery Excess Liability | $25M po $40M xs $150M | U920968-0620 | 2021.12.01 |
| Limetree Bay Refining, LLC | Sompo Bermuda | Refinery Excess Liability | $15M po $40M xs $150M | EXC30001524800 | 2021.12.01 |
| Limetree Bay Refining, LLC | Argo Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | ARGO-CAS-OR-001484 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arch Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | URP0065257-00 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of September 30, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | Markel Bermuda | Refinery Excess Liability | $12.5M po $50M xs $190M | 1454233-11636-UMB-2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hamilton Bermuda | Refinery Excess Liability | $7.5M po $50M xs $190M | CX20-9216 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chubb Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LBR-2144/XS004 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LSMAEC119907A | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $1M | ENVP0000296-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $9M xs $1M | ENVX0000256-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Environmental Liability | $25M xs $10M | 262704 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ascot | Environmental Liability | $25M xs $35M | ENXP2110000428-01 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel | Environmental Liability | $25M xs $60M | MKLV4EFX102259 | 2021.12.01 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $5M | 8261-8347 | 2022.04.20 |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000623319211 | 2022.04.20 |
| Limetree Bay Refining, LLC | Wesco Insurance Company | Executive Risk | $5M | EUW1909831 00 | 2022.04.20 |
| | | | | | |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000622392201 | 2027.04.20 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $5M | 8247-1536 | 2027.04.20 |
| Limetree Bay Refining, LLC | First Liberty Insurance Co | Auto Liability | $2M | AS6-641-444917-010 | 2021.12.01 |

**Notes:**

**(1)** As of September 30, 2021, insurance premiums are paid in full except for the items discussed in footnotes 2, 3 and 4.

**(2)** The auto liability policy will be audited during December 2021.  A premium will be due for autos assigned to LBR for the period from June 1, 2021 through December 31, 2021

**(3)** Audit premiums are expected to be invoiced for non-current insurance policies including the Builders All Risk policy and OCIP.  As of the filing of the monthly operating report, the audit amounts have not been determined.

**(4)** Premium obligations outstanding as of August 31, 2021 for LBR are as follows:

    a.  PFA Loan 2055:  Balance due for $266,145
    b.  PFA Loan 2303:  Balance due for $536,580

**(5)** September 1, 2021 was an expiration date for 36.5% of the property insurance program insuring the Refinery.  It was not replaced or renewed

**(6)** December 1, 2021 is an expiration date for the remaining 63.5% of the property insurance program insuring the Refinery. It is not presently being marketed, LBR assumes the risk for 30% of a $50 million primary section of the insurance program.

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN   DISTRICT OF   TEXAS

### HOUSTON DIVISION

In Re. LIMETREE BAY REFINING, LLC

§
§
§
§

Debtor(s)

Case No.  21-32354

Lead Case No.  21-32351

☒ Jointly Administered

# Monthly Operating Report

Chapter 11

Reporting Period Ended: 09/30/2021

Petition Date: 07/12/2021

Months Pending: 3

Industry Classification: | 3 | 2 | 4 | 1 |

Reporting Method:          Accrual Basis ◉          Cash Basis ○

Debtor's Full-Time Employees (current):                     0

Debtor's Full-Time Employees (as of date of order for relief):          0

**Supporting  Documentation**  (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

☒    Statement of cash receipts and disbursements
☒    Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
☒    Statement of operations (profit or loss statement)
☐    Accounts receivable aging
☐    Postpetition liabilities aging
☐    Statement of capital assets
☐    Schedule of payments to professionals
☐    Schedule of payments to insiders
☒    All bank statements and bank reconciliations for the reporting period
☐    Description of the assets sold or transferred and the terms of the sale or transfer

/s/ Elizabeth A. Green

Signature of Responsible Party

10/29/2021

Date

Elizabeth A. Green

Printed Name of Responsible Party

200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, FL 32801

Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

Debtor's Name LIMETREE BAY REFINING, LLC                Case No.  21-32354

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a.  Cash balance beginning of month | $11,675,631 | |
| b.  Total receipts (net of transfers between accounts) | $-854,114 | $22,794,594 |
| c.  Total disbursements (net of transfers between accounts) | $7,276,945 | $21,575,238 |
| d.  Cash balance end of month (a+b-c) | $3,544,572 | |
| e.  Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f.  Total disbursements for quarterly fee calculation (c+e) | $7,276,945 | $21,575,238 |

| Part 2:  Asset and Liability Status (Not generally applicable to Individual Debtors. See Instructions.) | Current Month | |
|---|---|---|
| a.  Accounts receivable (total net of allowance) | $251,231,993 | |
| b.  Accounts receivable over 90 days outstanding (net of allowance) | $224,948,034 | |
| c.  Inventory    (Book ● Market ○ Other ○  (attach explanation)) | $23,856,482 | |
| d.  Total current assets | $282,976,445 | |
| e.  Total assets | $3,654,916,914 | |
| f.  Postpetition payables (excluding taxes) | $1,719,386 | |
| g.  Postpetition payables past due (excluding taxes) | $738,511 | |
| h.  Postpetition taxes payable | $0 | |
| i.  Postpetition taxes past due | $0 | |
| j.  Total postpetition debt (f+h) | $1,719,386 | |
| k.  Prepetition secured debt | $1,160,056,795 | |
| l.  Prepetition priority debt | $0 | |
| m.  Prepetition unsecured debt | $271,768,751 | |
| n.  Total liabilities (debt) (j+k+l+m) | $1,433,544,932 | |
| o.  Ending equity/net worth (e-n) | $2,221,371,982 | |

| Part 3:  Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a.  Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b.  Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c.  Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4:  Income Statement (Statement of Operations) (Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a.  Gross income/sales (net of returns and allowances) | $1,346,896 | |
| b.  Cost of goods sold (inclusive of depreciation, if applicable) | $724,178 | |
| c.  Gross profit (a-b) | $622,719 | |
| d.  Selling expenses | $8,190,040 | |
| e.  General and administrative expenses | $1,921,306 | |
| f.  Other expenses | $-144 | |
| g.  Depreciation and/or amortization (not included in 4b) | $1,216,674 | |
| h.  Interest | $0 | |
| i.  Taxes (local, state, and federal) | $0 | |
| j.  Reorganization items | $0 | |
| k.  Profit (loss) | $-10,705,157 | $-82,878,696 |

| Debtor's Name | LIMETREE BAY REFINING, LLC | | Case No. | 21-32354 |
|---|---|---|---|---|

### Part 5: Professional Fees and Expenses

| | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| a. | Debtor's professional fees & expenses (bankruptcy)  *Aggregate Total* | | | | | |
| | *Itemized Breakdown by Firm* | | | | | |
| | | Firm Name | Role | | | |
| | i | | | | | |
| | ii | | | | | |

| | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy)  *Aggregate Total* | | $0 | $0 | $57,212 | $2,368,893 |
| | *Itemized Breakdown by Firm* | | | | | |
| | | Firm Name | Role | | | |
| | i | Cleary Gottlieb Steen and Ham | Other | $0 | $0 | $0 | $591,113 |
| | ii | Parella Weinberg Partners LP | Financial Professional | $0 | $0 | $0 | $350,412 |
| | iii | Baker Botts LLP | Other | $0 | $0 | $0 | $575,000 |
| | iv | Akin Gump Strauss Hauer and F | Other | $0 | $0 | $0 | $750,000 |
| | v | Gray Reed and McGraw | Other | $0 | $0 | $57,212 | $102,368 |
| c. | All professional fees and expenses (debtor & committees) | | $0 | $0 | $57,212 | $2,368,893 |

### Part 6: Postpetition Taxes

| | | Current Month | Cumulative |
|---|---|---|---|
| a. | Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. | Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. | Postpetition employer payroll taxes accrued | $0 | $0 |
| d. | Postpetition employer payroll taxes paid | $0 | $0 |
| e. | Postpetition property taxes paid | $0 | $0 |
| f. | Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. | Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

### Part 7: Questionnaire - During this reporting period:

a. Were any payments made on prepetition debt?  (if yes, see Instructions)   Yes ○   No ●

b. Were any payments made outside the ordinary course of business without court approval?  (if yes, see Instructions)   Yes ○   No ●

c. Were any payments made to or on behalf of insiders?   Yes ○   No ●

d. Are you current on postpetition tax return filings?   Yes ●   No ○

e. Are you current on postpetition estimated tax payments?   Yes ●   No ○

f. Were all trust fund taxes remitted on a current basis?   Yes ●   No ○

g. Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions)   Yes ●   No ○

h. Were all payments made to or on behalf of professionals approved by the court?   Yes ○   No ●   N/A ○

Debtor's Name LIMETREE BAY REFINING, LLC                                          Case No.  21-32354

| | | | |
|---|---|---|---|
| i. | Do you have: | Worker's compensation insurance? | Yes ⦿  No ◯ |
| | | If yes, are your premiums current? | Yes ◯  No ◯  N/A ⦿  (if no, see Instructions) |
| | | Casualty/property insurance? | Yes ⦿  No ◯ |
| | | If yes, are your premiums current? | Yes ◯  No ◯  N/A ⦿  (if no, see Instructions) |
| | | General liability insurance? | Yes ⦿  No ◯ |
| | | If yes, are your premiums current? | Yes ⦿  No ◯  N/A ◯  (if no, see Instructions) |
| j. | Has a plan of reorganization been filed with the court? | | Yes ◯  No ⦿ |
| k. | Has a disclosure statement been filed with the court? | | Yes ◯  No ⦿ |
| l. | Are you current with quarterly U.S. Trustee fees as set forth under 28 U.S.C. § 1930? | | Yes ⦿  No ◯ |

## Part 8: Individual Chapter 11 Debtors (Only)

| | | |
|---|---|---|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |
| l. | Are you required to pay any Domestic Support Obligations as defined by 11 U.S.C § 101(14A)? | Yes ◯  No ⦿ |
| m. | If yes, have you made all Domestic Support Obligation payments? | Yes ◯  No ◯  N/A ⦿ |

Debtor's Name  LIMETREE BAY REFINING, LLC                                   Case No.  21-32354

### Privacy Act Statement

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107.  The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6).  The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith.  This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law.  Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records."  *See* 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006).  A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm.  Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee.  11 U.S.C. § 1112(b)(4)(F).

**<u>I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.</u>**

Mark Shapiro                                                    Mark Shapiro, Chief Restructuring Officer

Signature of Responsible Party                                  Printed Name of Responsible Party

Chief Restructuring Officer                                     10/29/2021

Title                                                           Date

**CASE NAME:**          <u>Limetree Bay Refining, LLC</u>
**CASE NUMBER:**        <u>21-32354 (Jointly Administered under Lead Case No.: 21-32351)</u>

### Notes to the Monthly Operating Report

#### General:

On July 12, 2021 (the "Petition Date"), Limetree Bay Services, LLC ("Limetree") filed a voluntary petition with the United States Bankruptcy Court under Chapter 11 of the Bankruptcy Code [Case No.: 21-32351], along with five (5) affiliated entities (Affiliated Entities"). The debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067);  and Limetree Bay Refining Marketing, LLC (9222); (collectively, the "Debtors" or "Jointly Administered Debtors"). The bankruptcy filings of Limetree and the Affiliated Entities are jointly administered under Case No. 21-32351.

On or about June 17, 2021, the Jointly Administered Debtors retained B. Riley as chief restructuring officer ("CRO"). Mark Shapiro, as principal representative of B. Riley in its capacity, serves as CRO to the Jointly Administered Debtors.

Debtor-in-Possession Financial Statements - The accompanying schedules herein are unaudited, preliminary, and may not comply with generally accepted accounting principles in the United States of America ("U.S. GAAP") in all material respects.

The Monthly Operating Report ("MOR") is limited in scope, covers a limited time period, and has been prepared solely for the purpose of complying with the monthly reporting requirements of the Bankruptcy Court and the United States Trustee.  The information presented herein has not been subjected to all procedures that would typically be applied to financial information presented in accordance with U.S. GAAP. Upon the application of such procedures, the financial information could be subject to changes, and these changes could be material. The information furnished in this MOR includes normal recurring adjustments, but does not include all of the adjustments that would typically be made for interim financial statements in accordance with U.S. GAAP.

Reservation of Rights: Given the complexity of the Debtors' business, inadvertent errors, omissions or over inclusions may have occurred. Accordingly, the Debtors hereby reserve all of their rights to dispute the validity, status, enforceability, or executory nature of any claim amount, representation or other statement in this MOR and reserve the right to amend or supplement this MOR, if necessary, but shall be under no obligation to do so.

#### September 1-30, 2021 Monthly Operating Report:

**(1)**  The Reporting Period for this MOR is September 1-30, 2021, and the financial statements referenced herein cover the same time period.

**(2)**  The Financial Statements are reported on an Accrual Basis. Cash Receipts & Disbursements are reported on a Cash Basis.

**(3)**  The CRO, Mark Shapiro, has signed this MOR.  Mr. Shapiro is an authorized signatory for the Debtor. In reviewing and signing the MOR, Mr. Shapiro has relied upon the efforts, statements and representations of various personnel employed by the Debtor and the Debtor's advisors. Mr. Shapiro has not (and could not have) personally verified the accuracy of each statement and representation contained in the MOR, including statements and representations concerning amounts owed to creditors, classification of such amounts, and other attached information.

**(4)**  MOR Part 2, d - Total Current Assets includes Cash, Accounts Receivable, Inventory and Prepaid Expenses.

**(5)**  MOR Part 2, e - Total Assets includes Current Assets, Property, Plant, and Equipment, Investments, and Security Deposits.

**(6)**  MOR Part 2, f - Post-Petition Payables (excluding taxes) is comprised of Trade Payables. The net increase in total liabilities from the previous reporting period is $6,459,326.87.

**(7)**  MOR Part 2, k-m - Amounts are per the Debtor's bankruptcy schedules and are subject to adjustment once the claims process has been completed by the CRO, which includes, but is not limited to, examining, determining the validity of and objecting to any disputed, contingent, unliquidated and filed claims.

**(8)**  MOR Part 2, k-o - As of the time of this filing, the CRO has not determined with accuracy the amount of the secured and unsecured debt, both of which are components of ending net equity/net worth.  Accordingly, the CRO makes no representations regarding the accuracy of the form-calculated net equity/net worth of the Debtor.

**(9)**  MOR Part 7, i - See attached the schedule of insurance in effect for the Jointly Administered Debtors.

**Attachments to MOR:**

**A.**  Financial Statements (unaudited)

**B.**  Statement of Cash Receipts and Disbursements

**C.**  Bank Account Schedule, bank statements and bank reconciliations

**D.**  Schedule of Insurance in effect as of September 30, 2021 for the Jointly Administered Debtors

# STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS
## FOR THE PERIOD BEGINNING September 1, 2021 AND ENDING September 30,2021

Name of Debtor: Limetree Bay Refining, LLC　　　　　Case Number:  21-32354
Date of Petition:　July 12, 2021

| | | CURRENT MONTH | | CUMULATIVE PETITION TO DATE |
|---|---|---:|---|---:|
| 1. FUNDS AT BEGINNING OF PERIOD | $ | 11,675,631.07 | $ | 2,325,215.84 |
| | | | | |
| 2. RECEIPTS: | | | | |
| A. Cash Sales | | 1,780,031.36 | | 1,996,634.83 |
| Minus: Cash Refunds | | - | | - |
| Net Cash Sales | | - | | - |
| B. Accounts Receivable | | - | | - |
| C. Other Receipts | | (2,634,145.12) | | 20,797,959.34 |
| (If you receive rental income, you must attach a rent roll) | | | | |
| 3. TOTAL RECEIPTS *(Lines 2A+2B+2C)* | | (854,113.76) | | 22,794,594.17 |
| 4. TOTAL FUNDS AVAILABLE FOR OPERATIONS *(Line 1 + Line 3)* | | 10,821,517.31 | | 25,119,810.01 |
| | | | | |
| 5. DISBURSEMENTS | | | | |
| A.　Advertising | | - | | - |
| B.　Bank Charges & Fees | | 1,790.83 | | 2,655.77 |
| C.　Contract Labor | | 437,363.05 | | 1,065,584.77 |
| D.　Fixed Asset Payments (not incl. in "N") | | - | | - |
| E.　Insurance | | - | | 1,633,265.65 |
| F.　Inventory Payments | | 885,891.50 | | 1,652,424.73 |
| G.　Leases & Contracts | | - | | - |
| H.　Manufacturing Supplies | | - | | - |
| I.　Office Supplies | | - | | - |
| J.　Payroll | | 4,656.95 | | 13,055.85 |
| K.　Professional Fees (Accounting & Legal) | | 57,211.51 | | 2,368,892.82 |
| L.　Rent | | - | | 4,693.00 |
| M.　Repairs & Maintenance | | 1,919,991.40 | | 5,818,105.07 |
| N.　Secured Creditor Payments | | - | | 496,359.33 |
| O.　Taxes Paid - Payroll | | - | | - |
| P.　Taxes Paid - Sales & Use | | - | | - |
| Q.　Taxes Paid - Other | | - | | - |
| R.　Telephone | | 29,969.71 | | 41,940.13 |
| S.　Travel & Entertainment | | - | | - |
| T.　U.S. Trustee | | - | | - |
| U.　Utilities | | 319.77 | | 806.97 |
| V.　Vehicle Expenses | | - | | - |
| W.　Other Operating Expenses | | 3,939,750.47 | | 8,477,453.80 |
| 6. TOTAL DISBURSEMENTS *(Sum of 5A thru W)* | | 7,276,945.19 | | 21,575,237.89 |
| 7. ENDING BALANCE *(Line 4 Minus Line 6)* | $ | 3,544,572.12 | $ | 3,544,572.12 |

**STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS (CONT'D.)**

**Detail of Other Receipts and Other Disbursements**

**OTHER RECEIPTS:**

Describe Each Item of Other Receipt and List Amount of Receipt.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| DIP Financing | $ - | $ 25,000,000.00 |
| Voided Pre-Petition Checks | - | 4,800.00 |
| Transfer to/from Limetree Bay Refining Marketing, LLC | - | 3,899,500.00 |
| Transfer to/from Limetree Bay Refining Operating, LLC | (2,634,145.54) | (8,106,342.48) |
| Dividends | 0.42 | 1.82 |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | $ (2,634,145.12) | $ 20,797,959.34 |

**"Other Receipts" includes Loans from Insiders and other sources (i.e. Officer/Owner, related parties directors, related corporations, etc.). Please describe below:**

| Loan Amount | Source of Funds | Purpose | Repayment Schedule |
|---|---|---|---|
| | | | |
| | | | |

**OTHER DISBURSEMENTS:**

Describe Each Item of Other Disbursement and List Amount of Disbursement.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| Settlement Payment - Limetree Bay Terminals, LLC | $ - | $ 132,554.56 |
| Tank Storage Fees | 150,000.00 | 600,000.00 |
| Employee Expense Reimbursments | - | 9,958.47 |
| Agent Fee | - | 112,500.00 |
| U.S. Customs Fee | - | 16.93 |
| DIP Financing Costs | 47,793.10 | 141,668.10 |
| Employee Benefits | 34,183.83 | 110,395.48 |
| Information Technology | 347,285.68 | 468,435.05 |
| Relocation Costs | 1,644,266.00 | 2,188,309.00 |
| Site Services | 474,356.24 | 1,410,525.34 |
| Transfer to/from Limetree Bay Terminal Services - Fuel Shared Costs | 1,091,865.62 | 3,153,090.87 |
| Transfer to/from Limetree Bay Terminal Services - Storage Shared Costs | 150,000.00 | 150,000.00 |
| | $ 3,939,750.47 | $ 8,477,453.80 |

**Limetree Bay Refining, LLC**
**Balance Sheet**
**September 30, 2021**

| | 9/30/2021 |
|---|---:|
| **TOTAL ASSETS** | |
| | |
| 0000110600 LBR OPERATING ACCOUNT - ORIENTAL - 8202040267 | 143,364.88 |
| 0000110610 LBR PAYROLL ACCOUNT - ORIENTAL - 8202040268 | 37.96 |
| 0000110690 LBR CONSTRUCTION ACCOUT - DB- SE1972-001.10 | 8,990.32 |
| **\*CASH & CASH EQUIVALENTS** | **152,393.16** |
| | |
| 0000110700 LBR DEBT SERVICE RESERVE ACCOUNT- SE 1972-001.11 | 3,533.42 |
| 0000110770 Checking Account - East West Bank - 5500017759 | 3,388,645.54 |
| **\*RESTRICTED CASH - SHORT TERM** | **3,392,178.96** |
| | |
| 0000120001 A/R TRADE RECEIVABLE RECONCILIATION | 244,144.69 |
| **ACCOUNTS RECEIVABLE, TRADE** | **244,144.69** |
| **\*ACCOUNTS RECEIVABLE, NET** | **244,144.69** |
| | |
| 0000150040 A/R AFFILIATE | 2,036,581.73 |
| 0000150500 Intercompany A/R | 248,951,266.57 |
| **\*ACCOUNTS RECEIVABLE - AFFILIATE** | **250,987,848.30** |
| | |
| 0000130013 PURCHASED FINISHED PRODUCTS | 987,542.84 |
| 0000130050 WAREHOUSE INVENTORIES | 23,815,713.16 |
| 0000130100 INVENTORY CLEARING | (946,774.18) |
| **\*INVENTORY** | **23,856,481.82** |
| | |
| 0000140010 PPD INSURANCE-OTHER | 1,425,781.26 |
| 0000140011 PPD INSURANCE-ALL RISK PROPERTY | 209,053.74 |
| 0000140013 PPD INSURANCE-WORKERS COMPENSATION | 21,797.94 |
| 0000140014 PPD INSURANCE-BUSINESS INTERUPPTION | 59,955.10 |
| 0000140016 PPD INSURANCE - EXECUTIVE RISK (D&O,CRIME,FID,K&R) | 320,192.93 |
| 0000140018 PPD INSURANCE - AUTO LIABILITY | 4,277.33 |
| **PREPAID INSURANCE** | **2,041,058.30** |
| | |
| 0000140070 PREPAID-LICENSES | 491,581.27 |
| **PREPAID LICENSES** | **491,581.27** |
| | |
| 0000140100 PREPAID - RENT | 11,238.75 |
| **PREPAID RENT** | **11,238.75** |
| | |
| 0000140060 PPD - VENDOR PREPAYMENTS | 1,369,608.71 |
| 0000140110 PPD SUNDRY | 429,910.91 |
| **PREPAID OTHER** | **1,799,519.62** |
| **\*PREPAID EXPENSES AND OTHER** | **4,343,397.94** |
| | |
| **\*\*TOTAL CURRENT ASSETS** | **282,976,444.87** |
| | |
| | |
| 0000160041 COST-BUILDINGS | 97,725,637.29 |

**Limetree Bay Refining, LLC**
**Balance Sheet**
**September 30, 2021**

| | 9/30/2021 |
|---|---|
| 0000160051 ENVIRONMENTAL FACILITIES | 11,954,645.38 |
| 0000160061 REFINERY FACILITIES | 2,637,764.24 |
| **FACILITIES, BUILDINGS AND IMPROVEMENTS** | **112,318,046.91** |
| | |
| 0000160071 VEHICLES, TRAILERS, ETC. | 3,936,457.65 |
| 0000160141 GAS TURBINES & WASTE HEAT BOILERS | 20,221,878.73 |
| 0000160151 MACHINERY & EQUIPMENT | 212,895.00 |
| **MACHINERY AND EQUIPMENT** | **24,371,231.38** |
| | |
| 0000160111 COMPUTER SOFTWARE | 659,599.83 |
| **COMPUTERS, FURNITURE AND FIXTURES** | **659,599.83** |
| | |
| 0000160250 FIXED ASSETS - NON RECONCILIATION | 1,775,223.60 |
| **OTHER** | **1,775,223.60** |
| | |
| **PP&E - GROSS** | **139,124,101.72** |
| | |
| | |
| 0000170041 ACCUM DEPR - BUILDINGS | (22,132,893.52) |
| 0000170051 ACCUM DEPR - ENVIRONMENTAL FACILITIES | (2,362,580.28) |
| 0000170061 ACCUM DEPR  - REFINERY FACILITIES | (439,627.38) |
| **FACILITIES, BLDNGS & IMPRVMNTS - ACCUM DEPREC** | **(24,935,101.18)** |
| | |
| 0000170071 ACCUM DEPR - VEHICLES, TRAILERS, ETC. | (2,412,159.35) |
| 0000170141 ACCUM DEPR - GAS TURBINES & WHB | (2,658,220.54) |
| 0000170151 ACCUM DEPR - MACHINERY & EQUIPMENT | (9,757.69) |
| **MACHINERY AND EQUIPMENT - ACCUM DEPREC** | **(5,080,137.58)** |
| | |
| 0000170111 ACCUM DEPR - COMPUTER SOFTWARE | (256,511.05) |
| **COMPUTERS, FURNITURE & FIXTURES - ACCUM DEPR** | **(256,511.05)** |
| **PP&E - ACCUMULATED DEPRECIATION** | **(30,271,749.81)** |
| | |
| **PROPERTY, PLANT & EQUIPMENT, NET** | **108,852,351.91** |
| | |
| 0000160010 CIP (ASSET UNDER CONSTRUCTION) | 3,262,322,845.45 |
| **CONSTRUCTION IN PROGRESS** | **3,262,322,845.45** |
| | |
| **\*TOTAL PROPERTY, PLANT AND EQUIPMENT, NET** | **3,371,175,197.36** |
| | |
| | |
| 0000190300 Investment in subsidiary - LBRM | 754,975.47 |
| **INVESTMENT IN SUBSIDIARY - LBRM** | **754,975.47** |
| | |
| | |
| 0000190050 SECURITY DEPOSITS | 10,296.53 |
| **OTHER ASSETS** | **10,296.53** |
| | |
| **\*OTHER ASSETS** | **765,272.00** |

**Limetree Bay Refining, LLC**
**Balance Sheet**
**September 30, 2021**

| | 9/30/2021 |
|---|---|
| **\*\*TOTAL NON-CURRENT ASSETS** | 3,371,940,469.36 |
| **\*\*\*\* TOTAL ASSETS** | 3,654,916,914.23 |

=================================
**TOTAL LIABILITIES AND MEMBERS' EQUITY**

**TOTAL LIABILITIES**

| | |
|---|---|
| 0000200010 A/P TRADE RECONCILIATION | (199,824,898.98) |
| 0000200020 GR/IR | (3,514,502.91) |
| 0000200050 A/P ADJUSTMENTS RECLASS | (27,925.00) |
| 0000200099 AP - OTHER | 0.00 |
| **\*ACCOUNTS PAYABLE TRADE** | **(203,367,326.89)** |
| | |
| 0000235101 A/P AFFILIATES – ARCLIGHT CAPITAL PARTNERS, LLC | (281,250.00) |
| 0000235500 Intercompany A/P | (142,297,728.77) |
| **\*AFFILIATE PAYABLE, NET** | **(142,578,978.77)** |
| | |
| 0000231510 ACCRUED INTEREST-DEBT | (8,531,611.16) |
| 0000231525 ACCRUED INTRST - DEBT - AFFIL - TRANCHE D TERM DBT | (461,630.29) |
| **\*ACCRUED INTEREST** | **(8,993,241.45)** |
| | |
| 0000200023 GR/IR PRODUCT (MANUAL) | 421,528.06 |
| 0000200040 VOUCHER ACCRUALS | (7,766,766.46) |
| 0000200060 COMDATA | (177,306.36) |
| 0000235040 ACCRUED LIABILITIES | (802,405.82) |
| 0000235045 CONTRACTOR PAYABLE - COMPLETION PROGRAM | (40,023,300.00) |
| 0000235060 GR/IR WAREHOUSE iNVENTORY | 18,730.83 |
| **\*ACCRUED LIABILITIES** | **(48,329,519.75)** |
| | |
| 0000235030 ACCRUED OTHER INSURANCE | (19,151.17) |
| **ACCRUED OTHER INSURANCE PREMIUMS** | **(19,151.17)** |
| | |
| 0000235253 DIP Loan - AMP Upside Credit Facility | (25,117,566.81) |
| | |
| **OTHER LONG TERM DEBT-CURRENT PORTION** | **(25,136,717.98)** |
| | |
| **\*CURRENT PORTION OF LONG-TERM DEBT** | **(25,136,717.98)** |
| | |
| 0000231520 SHORT TERM IRS - MARK TO MARKET INTEREST | (3,603,459.54) |
| **\*OTHER CURRENT LIABILITIES** | **(3,603,459.54)** |
| | |
| **\*\*TOTAL CURRENT LIABILITIES** | **(432,009,244.38)** |

**Limetree Bay Refining, LLC**
**Balance Sheet**
**September 30, 2021**

|  | 9/30/2021 |
|---|---|
| 0000260114 TRANCHE D TERM DEBT | (108,975,019.87) |
| **TRANCHE D TERM DEBT** | **(108,975,019.87)** |
|  |  |
| 0000260055 AFFILIATE TERM DEBT - LONG TERM | (36,325,006.62) |
| **AFFILIATE TERM DEBT** | **(36,325,006.62)** |
|  |  |
|  |  |
| 0000260010 LONG TERM DEBT - TERM | (610,317,723.97) |
| **OTHER TERM DEBT** | **(610,317,723.97)** |
|  |  |
| **TERM DEBT** | **(755,617,750.46)** |
| **OTHER LONG TERM DEBT** | **(755,617,750.46)** |
|  |  |
| **\*LONG-TERM DEBT, NET CRRNT PRTN & ISSNCE CST** | **(755,617,750.46)** |
|  |  |
| 0000260030 LONG TERM IRS - MARK TO MARKET INTEREST | (2,197,587.43) |
| **\*OTHER LONG-TERM LIABILITIES** | **(2,197,587.43)** |
|  |  |
| **\*\*TOTAL NON-CURRENT LIABILITIES** | **(757,815,337.89)** |
|  |  |
| **\*\*\* TOTAL LIABILITIES** | **(1,189,824,582.27)** |
|  |  |
|  |  |
| **TOTAL MEMBERS' EQUITY** |  |
|  |  |
| 0000320010 MEMBERS INITIAL INVESTMENT | (384,868.09) |
| **\*MEMBERS' INITIAL EQUITY** | **(384,868.09)** |
|  |  |
| 0000320020 MEMBERS ADDITIONAL INVESTMENT | (2,785,649,860.03) |
| 0000320050 PAID IN CAPITAL - COMMON EQUITY | (4,513,333.30) |
| **\*MEMBERS' ADDITIONAL INVESTMENT** | **(2,790,163,193.33)** |
| **\*\*MEMBERS' EQUITY** | **(2,790,548,061.42)** |
|  |  |
| 0000380020 RETAINED  EARNINGS | 115,181,380.27 |
| **\*\*RETAINED EARNINGS / ACCUMULATED DEFICIT** | **115,181,380.27** |
|  |  |
| **\*\*PROFIT/LOSS IN CURRENT YEAR** | **210,274,349.19** |
|  |  |
|  |  |
| **\*\*\* TOTAL MEMBERS' EQUITY** | **(2,465,092,331.96)** |
|  |  |
|  |  |
| **\*\*\*\* TOTAL LIABILITIES & MEMBERS' EQUITY** | **(3,654,916,914.23)** |

**Limetree Bay Refining, LLC**
**Income Statement**
**For the month ending September 30, 2021**

| | September 1-30, 2021<br>Unaudited |
|---|---|
| INCOME STATEMENT | |
| | |
| 0000400010 SALES THIRD PARTY-PETROLEUM PRODUCTS | 1,346,896.43 |
| 0000400032 ACCRUED SALES AFFILIATES-PETROLEUM PRODUCTS | 0.00 |
| *REFINERY REVENUES | 1,346,896.43 |
| **TOTAL REVENUES | 1,346,896.43 |
| | |
| 0000520070 INVENTORY WRITEDOWN | 0.00 |
| 0000520100 INVENTORY MOVE PRICE DIFFERENCE | 0.00 |
| 0000520130 OTHER COST OF SALES | 724,177.73 |
| 0000520150 PRODUCT LOSSES | 0.00 |
| 0000520160 VESSEL DEMURRAGE | 0.00 |
| **COST OF GOODS SOLD | 724,177.73 |
| | |
| 0000607010 BUSINESS MEALS & ENTERTAINMENT | 0.00 |
| 0000607020 TRAVEL AND LODGING | 0.00 |
| MEALS & ENTERTAINMENT | 0.00 |
| | |
| 0000601059 CONFERENCES & SEMINARS | 0.00 |
| 0000601060 REGISTRATIONS-TRAINING & CONTINUING ED | 0.00 |
| 0000601064 EDUCATIONAL ASSISTANCE | 0.00 |
| 0000601067 TRAINING MATERIALS & SUPPLIES | 0.00 |
| TRAINING & EDUCATION | 0.00 |
| | |
| 0000601058 UNIFORMS AND LAUNDRY | 0.00 |
| 0000601063 OTHER EMPLOYEE EXPENSE | 0.00 |
| 0000601068 HOUSEHOLD FURNISHINGS | 0.00 |
| 0000601074 OUTSIDE HOUSING | 0.00 |
| 0000601076 EMPLOYEE-RECRUITING FEES (NON-AGENCY) | 0.00 |
| 0000601078 SAFETY EXPENSE | 260.00 |
| OTHER | 260.00 |
| | |
| EMPLOYEE EXPENSES | 260.00 |
| | |
| 0000614016 INS-AUTO LIABILITY | (674.02) |
| AUTO PHYSICAL DAMAGE | (674.02) |
| | |
| INSURANCE | (674.02) |
| | |
| | |
| 0000603011 CONSULTING FEES - NON-OPERATING | 122,684.45 |
| CONSULTING FEES | 122,684.45 |
| | |
| 0000603012 ENGINEERING FEES | 1,250.00 |
| ENGINEERING FEES | 1,250.00 |

**Limetree Bay Refining, LLC**
**Income Statement**
**For the month ending September 30, 2021**

| | September 1-30, 2021 |
| --- | --- |
| | **Unaudited** |
| 0000603014 MEDICAL FEES | 0.00 |
| MEDICAL FEES | 0.00 |
| | |
| 0000603030 INSPECTION FEES-QUANTITY | 182,821.00 |
| 0000603031 INSPECTION FEES-QUALITY | 1,046,102.79 |
| INSPECTION FEES | 1,228,923.79 |
| | |
| PROFESSIONAL FEES | 1,352,858.24 |
| | |
| 0000608015 POWER PLANT FUEL - EXTERNAL | 3,993,573.46 |
| FUEL EXPENSE | 3,993,573.46 |
| | |
| 0000602017 SPILL CLEAN UP | 0.00 |
| ENVIRONMENTAL | 0.00 |
| | |
| 0000603020 PINNACLE - REPAIRS & MAINTENANCE | 542,377.71 |
| 0000606030 REPAIR & MAINTENANCE - GENERAL | 345,448.32 |
| 0000606034 R&M - Fixed Equipment Work | 60,021.96 |
| 0000606035 R&M – Instrument, Electrical and Analyzer Work | 0.00 |
| 0000606036 R&M – Rotating Equipment | 290,108.59 |
| 0000606037 R&M – Scaffold, Asbestos, Insulation and Painting | 0.00 |
| 0000606038 R&M – Outage Related Work | (779,915.51) |
| 0000606039 R&M – Maintenance Support Services, Other | 708,484.87 |
| 0000606040 TANK CLEANING | 0.00 |
| REPAIRS AND MAINTENANCE | 1,166,525.94 |
| | |
| 0000608040 TELECOMMUNICATIONS EXPENSE-DATA | 7,320.94 |
| 0000608042 TELECOMMUNICATIONS EXPENSE-VOICE | 0.00 |
| 0000608043 TELECOMMUNICATIONS EXP-CELLULAR | 0.00 |
| COMMUNICATION EXPENSES | 7,320.94 |
| | |
| 0000604011 HARDWARE - DESKTOP PURCHASES | 0.00 |
| 0000604012 HARDWARE - DCS PURCHASES | 0.00 |
| 0000604014 HARDWARE - DESKTOP MAINTENANCE | 0.00 |
| 0000604017 HARDWARE - NETWORK PURCHASES | 0.00 |
| 0000604019 HARDWARE - SERVER MAINTENANCE | 1,903.37 |
| 0000604020 HARDWARE - NETWORK MAINTENANCE | 0.00 |
| 0000604030 SOFTWARE - SERVER PURCHASES | 19,624.91 |
| 0000604031 SOFTWARE - MAINFRAME MAINTENANCE | 0.00 |
| 0000604032 SOFTWARE - MAINFRAME PURCHASES | 38,807.83 |
| 0000604033 SOFTWARE - SERVER MAINTENANCE | 0.00 |
| 0000604034 SOFTWARE - DESKTOP MAINTENANCE | 2,280.75 |
| 0000604035 SOFTWARE - DESKTOP PURCHASES | 0.00 |
| 0000604036 SOFTWARE - NETWORK PURCHASES | 0.00 |
| 0000604037 SOFTWARE - NETWORK MAINTENANCE | 2,706.66 |
| 0000604060 COMPUTER EQUIPMENT UNDER $5000 | 0.00 |

**Limetree Bay Refining, LLC**
**Income Statement**
**For the month ending September 30, 2021**

| | September 1-30, 2021 Unaudited |
|---|---|
| IT EXPENSES | 65,323.52 |
| | |
| COMMUNICATIONS AND IT EXPENSES | 72,644.46 |
| | |
| 0000602040 PINNACLE OVERHEAD COSTS | 240,000.00 |
| 0000602041 PINNACLE - NON REPAIRS & MAINTENANCE | (321,872.41) |
| 0000602042 SHORT TERM - TEMPORARY OUTSIDE CONTRACTORS | 0.00 |
| 0000602044 PINNACLE - SECURITY | 9,611.43 |
| 0000602047 OUTSIDE CONTRACTOR - NON-R&M | 0.00 |
| CONTRACTOR OVERHEAD | (72,260.98) |
| | |
| 0000602060 WASTE DISPOSAL - NON-ENVIRONMENTAL | 0.00 |
| 0000602061 WASTE DISPOSAL - RECYCLING | 0.00 |
| 0000602065 OUTSIDE LABOR/SERVICES - HOURLY | 2,000.00 |
| 0000602080 TEMPORARY OUTSIDE LABOR / SERVICES | 28,659.24 |
| 0000602090 CONTRACT SERVICES - LUMP SUM | 9,453.30 |
| 0000602091 WASTE WATER TREATMENT PLANT - OUTSIDE CONTRACT( | 0.00 |
| OUTSIDE SERVICES | 40,112.54 |
| | |
| 0000608030 UTILITY EXPENSE - WATER | 84,750.98 |
| UTILITIES | 84,750.98 |
| | |
| 0000613015 RENTALS-PASSENGER CARS | 13,308.21 |
| 0000613030 RENTS OFFICE & REAL ESTATE | 3,058.75 |
| 0000613035 RENTALS-OTHER | 0.00 |
| RENTAL EXPENSES | 16,366.96 |
| | |
| 0000612020 FINES & PENALTY | 0.00 |
| TAXES AND FEES | 0.00 |
| | |
| 0000612025 LICENSES AND PERMITS-OTHER | 5,846.15 |
| 0000612030 MEMBERSHIPS/DUES | 5,333.34 |
| 0000612031 BOOKS/MANUALS/SUBSCRIPTIONS | 62,436.71 |
| LICENSES, MEMBERSHIPS AND SUBSCRIPTIONS | 73,616.20 |
| | |
| 0000611017 COMMUNITY RELATIONS EVENTS | 0.00 |
| CONTRIBUTIONS AND DONATIONS | 0.00 |
| | |
| 0000605010 OFFICE SUPPLY | 0.00 |
| 0000605011 POSTAGE | 0.00 |
| 0000605020 OPERATING SUPPLY | 4,347.00 |
| 0000605021 INVENTORY VARIANCES | 33,578.22 |
| 0000606010 MAINTENANCE SUPPLIES | 331,613.80 |
| 0000606011 AUTO REPAIRS | 214.00 |
| 0000606012 TRASH REMOVAL | 0.00 |
| 0000606013 R&M - OUTSIDE CONTRACTORS (NON-PINNACLE) | 131,681.73 |

**Limetree Bay Refining, LLC**
**Income Statement**
**For the month ending September 30, 2021**

| | September 1-30, 2021 Unaudited |
|---|---|
| 0000606016 SMALL TOOLS | 0.00 |
| 0000606019 EQUIPMENT RENTALS - MAINTENANCE | 1,030,627.72 |
| 0000606020 PEST CONTROL | 16,730.00 |
| 0000606021 FACILITY SERVICES - GROUNDS, ELEV OPS, LANDSCAPING | 0.00 |
| 0000606023 VILLAGE - FOOD SERVICE | 48,546.90 |
| 0000606024 LAUNDRY SERVICES | 0.00 |
| 0000620010 FREIGHT EXPENSE | (5,050.57) |
| 0000620020 AIR FREIGHT | 0.00 |
| 0000620030 DEMURRAGE EXPENSE THIRD PARTY-NON ST&T | 0.00 |
| 0000620040 FREIGHT EXPENSE ENVIRONMENTAL | 0.00 |
| 0000620050 CUSTOMS & BROKERAGE CHARGES | 643.00 |
| 0000620060 PRODUCT CONSUMED-GASOLINE & OIL | 10,489.11 |
| 0000620070 VEHICLE TIRES & TUBES | 0.00 |
| 0000620072 GAS & OIL CONSUMED-VEHICLES | 0.00 |
| 0000630010 MARINE PRESERVATION / NATIONAL RESPONSE CORP | 38,632.64 |
| 0000630020 CHEMICALS EXP | (199,537.10) |
| 0000630030 CATALYST | 0.00 |
| 0000630040 ADDITIVES EXPENSE | 19,750.00 |
| 0000630070 MISC EXP - OPERATING EXPENSE | 0.00 |
| 0000640000 SHARED SERVICES CLEARING | 0.00 |
| OFFICE AND MISC OPERATING EXPENSES | 1,462,266.45 |
| | |
| 0000640050 MISC EXP - NON OPERATING EXPENSE | 0.00 |
| OTHER MISC O&M | 0.00 |
| | |
| OTHER O&M | 6,837,596.01 |
| | |
| OPERATING EXPENSES | 8,190,040.23 |
| | |
| 0000801021 UNIT BASED COMPENSATION | 0.00 |
| 0000801050 INS-WORKERS COMP | 7,265.98 |
| SALARIES AND WAGES | 7,265.98 |
| 0000807010 BUSINESS MEALS & ENTERTAINMENT | 318.90 |
| 0000807020 TRAVEL AND LODGING | 2,498.43 |
| MEALS & ENTERTAINMENT | 2,817.33 |
| | |
| 0000801059 SEMINARS/SYMPOSIUMS,CONFERENCES/CONVENT | 0.00 |
| 0000801060 REGISTRATIONS-TRAINING AND TUITION | 0.00 |
| 0000801067 TRAINING MATERIALS & SUPPLIES | 0.00 |
| TRAINING & EDUCATION | 0.00 |
| | |
| 0000801058 UNIFORMS AND LAUNDRY | 0.00 |
| 0000801068 HOUSEHOLD FURNISHINGS | 0.00 |
| 0000801071 EMPLOYEE ACTIVITIES | 0.00 |
| 0000801074 OUTSIDE HOUSING | 0.00 |
| 0000801075 EMPLOYEE BACKGROUND SCREENING | 949.84 |

**Limetree Bay Refining, LLC**
**Income Statement**
**For the month ending September 30, 2021**

| | September 1-30, 2021 Unaudited |
|---|---|
| 0000801076 EMPLOYEE-RECRUITING | 0.00 |
| 0000801078 SAFETY EXPENSE | 0.00 |
| OTHER | 949.84 |
| | |
| EMPLOYEE EXPENSES | 11,033.15 |
| | |
| 0000814010 INS - EXECUTIVE RISK (D&O, CRIME, FIDUCIARY, K&R) | 16,271.74 |
| COMPREHENSIVE CRIME | 16,271.74 |
| | |
| 0000814011 INS-EXCESS LIABILITY | 0.00 |
| EXCESS LIABILITY | 0.00 |
| | |
| 0000814012 INS-ALL RISK PROPERTY | 104,526.88 |
| PROPERTY | 104,526.88 |
| | |
| 0000814014 INS-COMPREHENSIVE GENERAL LIABILITY | 0.00 |
| COMPREHENSIVE GENERAL LIABILITY | 0.00 |
| | |
| 0000814015 INS-BUSINESS INTERRUPTION | 29,977.59 |
| BUSINESS INTERRUPTION/FIRE & EXTEND COVERAGE | 29,977.59 |
| | |
| 0000814016 INS-AUTO LIABILITY | 3,383.09 |
| AUTO PHYSICAL DAMAGE | 3,383.09 |
| | |
| 0000814050 INS-OTHER | 1,026,764.17 |
| OTHER | 1,026,764.17 |
| | |
| INSURANCE | 1,180,923.47 |
| | |
| | |
| 0000803011 CONSULTING FEES | 156,392.04 |
| CONSULTING FEES | 156,392.04 |
| | |
| 0000803013 LEGAL FEES | 96,898.71 |
| LEGAL FEES | 96,898.71 |
| | |
| 0000803014 MEDICAL FEES | 0.00 |
| MEDICAL FEES | 0.00 |
| | |
| 0000801080 EMPLOYMENT - AGENCY FEES | 0.00 |
| OTHER FEES | 0.00 |
| | |
| PROFESSIONAL FEES | 253,290.75 |
| | |
| | |
| 0000806030 REPAIR & MAINTENANCE - GENERAL | 9,690.00 |

**Limetree Bay Refining, LLC**
**Income Statement**
**For the month ending September 30, 2021**

| | September 1-30, 2021 Unaudited |
|---|---|
| REPAIRS AND MAINTENANCE | 9,690.00 |
| | |
| 0000808040 TELECOMMUNICATIONS EXPENSE-DATA | 11,734.46 |
| 0000808042 TELECOMMUNICATIONS EXPENSE-VOICE | 5,039.20 |
| 0000808043 TELECOMMUNICATIONS EXP-CELLULAR | 0.00 |
| COMMUNICATION EXPENSES | 16,773.66 |
| | |
| 0000804011 HARDWARE - DESKTOP PURCHASES | 0.00 |
| 0000804014 HARDWARE - DESKTOP MAINTENANCE | 0.00 |
| 0000804017 HARDWARE - NETWORK PURCHASES | 0.00 |
| 0000804018 HARDWARE - NETWORK LEASE | 28,574.72 |
| 0000804020 HARDWARE - NETWORK MAINTENANCE | 14,321.29 |
| 0000804030 SOFTWARE - SERVER PURCHASES | (187,170.67) |
| 0000804031 SOFTWARE - MAINFRAME MAINTENANCE | 19,353.99 |
| 0000804032 SOFTWARE - MAINFRAME PURCHASES | 0.00 |
| 0000804033 SOFTWARE - SERVER MAINTENANCE | 27,976.36 |
| 0000804034 SOFTWARE - DESKTOP MAINTENANCE | 4,656.95 |
| 0000804035 SOFTWARE - DESKTOP PURCHASES | 208,325.81 |
| 0000804036 SOFTWARE - NETWORK PURCHASES | 0.00 |
| 0000804037 SOFTWARE - NETWORK MAINTENANCE | 0.00 |
| IT EXPENSES | 116,038.45 |
| | |
| COMMUNICATIONS AND IT EXPENSES | 132,812.11 |
| | |
| 0000802040 CONTRACTOR OVERHEAD | 0.00 |
| 0000802041 PINNACLE - NON R&M (G&A) | 0.00 |
| 0000802042 SHORT TERM - TEMPORARY OUTSIDE CONTRACTORS | 0.00 |
| CONTRACTOR OVERHEAD | 0.00 |
| | |
| 0000802065 OUTSIDE LABOR/SERVICES | 126,230.46 |
| 0000802070 MEDIA (OUTSIDE PRINTING) | 1,008.00 |
| 0000802080 TEMPORARY OUTSIDE LABOR / SERVICES | 0.00 |
| 0000802090 CONTRACT SERVICES - LUMP SUM | 0.00 |
| OUTSIDE SERVICES | 127,238.46 |
| | |
| 0000808010 UTILITY EXPENSE-ELECTRICITY | 319.77 |
| UTILITIES | 319.77 |
| | |
| 0000802066 Cottages SS Rent Charges | 190,032.00 |
| 0000813015 RENTALS-PASSENGER CARS | 299.28 |
| 0000813030 RENTS OFFICE & REAL ESTATE | 0.00 |
| 0000813035 RENTALS-EQUIPMENT OTHER | 0.00 |
| RENTAL EXPENSES | 190,331.28 |
| | |
| 0000812015 BANK CHARGES | 3,457.49 |
| 0000817022 DEBT ADMIN&COLL AGENT FEES | 0.00 |

**Limetree Bay Refining, LLC**
**Income Statement**
**For the month ending September 30, 2021**

| | September 1-30, 2021 Unaudited |
|---|---|
| 0000819010 EXCISE TAX EXPENSE | 0.00 |
| TAXES AND FEES | 3,457.49 |
| | |
| 0000812025 LICENSES AND PERMITS-OTHER | 0.00 |
| 0000812031 BOOKS/MANUALS/SUBSCRIPTIONS | 0.00 |
| LICENSES, MEMBERSHIPS AND SUBSCRIPTIONS | 0.00 |
| | |
| 0000811010 CONTRIBUTIONS & DONATIONS | 0.00 |
| 0000811011 EXPENDITURE ON EDUCATION | 0.00 |
| 0000811017 COMMUNITY RELATIONS EVENTS | 0.00 |
| CONTRIBUTIONS AND DONATIONS | 0.00 |
| | |
| 0000805010 OFFICE SUPPLY | 0.00 |
| 0000805011 POSTAGE | 0.00 |
| 0000805020 OPERATING SUPPLY | 0.00 |
| 0000806010 MAINTENANCE SUPPLIES | 0.00 |
| 0000806013 OUTSIDE CONTRACTORS | 12,210.00 |
| 0000820010 FREIGHT EXPENSE | 0.00 |
| 0000830070 MISC EXPENSES - G&A | 0.00 |
| 0000830090 STARTUP COSTS ALLOCATED TO CAPITAL | 0.00 |
| OFFICE AND MISC OPERATING EXPENSES | 12,210.00 |
| | |
| 0000803020 CORPORATE OVERHEAD ALLOCATION | 0.00 |
| OTHER MISC O&M | 0.00 |
| | |
| OTHER O&M | 476,059.11 |
| | |
| GENERAL ADMINISTRATION EXPENSE | 1,921,306.48 |
| | |
| 0000619012 VARIABLE REFINERY PAYMENT | 0.00 |
| *VARIABLE TERMINAL PAYMENT | 0.00 |
| | |
| 0000617010 DEPRECIATION | 1,216,673.60 |
| DEPRECIATION | 1,216,673.60 |
| *DEPRECIATION AND AMORTIZATION | 1,216,673.60 |
| | |
| **TOTAL EXPENSES | 11,328,020.31 |
| | |
| ***OPERATING INCOME | (10,705,301.61) |
| | |
| 0000818010 INTEREST EXPENSE | 0.00 |
| 0000818020 INVESTMENT INTEREST INCOME | (0.42) |
| 0000818027 AFFILIATED INTEREST EXPENSE - TRANCHE D TERM DEBT | 0.00 |
| 0000818028 AFFILIATED INTEREST EXPENSE - SUBORDINATED NOTE | 0.00 |
| **INTEREST AND FINANCING EXPENSE | (0.42) |

**Limetree Bay Refining, LLC**
**Income Statement**
**For the month ending September 30, 2021**

| | September 1-30, 2021 Unaudited |
|---|---|
| 0000440150 Gain/Loss from Sale of Assets | (143.91) |
| 0000640020 (GAIN)/LOSS ON ASSET DISPOSAL | 0.00 |
| (GAIN) LOSS ON SALE OF ASSETS | (143.91) |
| | |
| 0000818022 MTM – Other Income/Expense | 0.00 |
| 0000900010 MAINTENANCE LABOR ACTIVITY | 0.00 |
| 0000990031 CP PRJ PnL Offset/ Clearing Account | 0.00 |
| MISC OTHER (INCOME) EXPENSE | 0.00 |
| | |
| **OTHER INCOME (EXPENSE), NET | (143.91) |
| | |
| ***TOTAL NON-OPERATING INCOME (EXPENSE): | (144.33) |
| | |
| ****NET INCOME (LOSS) | (10,705,157.28) |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Limetree Bay Refining, LLC**

**Schedule of Bank Accounts - As of September 30, 2021**

| Description | Operating Account | Payroll Account | Construction Account | Debt Service Reserve Account | DIP Financing | Total - All Debtor Accounts |
|---|---|---|---|---|---|---|
| Account Name | Limetree Bay Refining, LLC | Limetree Bay Refining, LLC | Limetree Bay Refining, LLC | Limetree Bay Refining, LLC | Limetree Bay Refining, LLC | |
| Bank Name | Oriental Bank | Oriental Bank | Deutsche Bank | Deutsche Bank | East West Bank | |
| Account Number - Last Four Digits | 0267 | 0268 | 2-001.10 | 2-001.11 | 7759 | |
| Beginning book balance (as of 09/01/21) | $ 2,121,620.78 | $ 130.44 | $ 50,346.43 | $ 3,533.42 | $ 9,500,000.00 | $ 11,675,631.07 |
| Plus:  Deposits | (2,259,757.65) | - | 1,405,643.89 | - | - | (854,113.76) |
| Subtotal book balance | (138,136.87) | 130.44 | 1,455,990.32 | 3,533.42 | 9,500,000.00 | 10,821,517.31 |
| | | | | | | |
| Less:  Disbursements | (7,275,498.25) | (92.48) | - | - | (1,354.46) | (7,276,945.19) |
| Transfers | 7,557,000.00 | - | (1,447,000.00) | - | (6,110,000.00) | - |
| Other: | - | - | - | - | - | - |
| **Ending book balance (as of 09/30/21)** | $ 143,364.88 | $ 37.96 | $ 8,990.32 | $ 3,533.42 | $ 3,388,645.54 | $ 3,544,572.12 |

**Oriental**

P.O. Box 195115
San Juan, PR 00919-5115

Last statement: August 31, 2021
This statement: September 30, 2021
Total days in statement period: 30

Page 1 of 6
     0267
(2)

LIMETREE BAY REFINING, LLC
1 ESTATE HOPE
CHRISTIANSTED VI 00820-5652

Direct inquiries to:
787-620-0000

Oriental Bank
254 Munoz Rivera Ave
Hato Rey PR 00918

## Premium Business

| | | | |
|---|---|---|---|
| Account number | 0267 | Beginning balance | $2,121,620.78 |
| Enclosures | 2 | Total additions | 7,971,495.18 |
| Low balance | $10,084.69 | Total subtractions | 9,949,751.08 |
| Average balance | $197,779.61 | Ending balance | $143,364.88 |

### CHECKS

| Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|
| 1929 | 09-17 | 242.88 | 1930 | 09-22 | 76.89 |

### DEBITS

| Date | Description | | Subtractions |
|---|---|---|---|
| 09-01 | ' Preauthorized Wd | | 45,746.80 |
| | LIMETREE BAY ACH 210901 | | |
| 09-01 | ' Wire Transfer-Out | | 47,793.10 |
| | WIRE OUT -405 SENTINEL, LLC | | |
| | 202109010000868 | | |
| 09-01 | ' Wire Transfer-Out | | 150,000.00 |
| | WIRE OUT -TURNER, MASON AND COMPANY | | |
| | 202109010000866 | | |
| 09-01 | ' Wire Transfer-Out | | 150,000.00 |
| | WIRE OUT -DEUTSCHE BANK TRUST CO AMERICAS | | |
| | 202109010000867 | | |
| 09-01 | ' Preauthorized Wd | | 556,449.00 |
| | LIMETREE BAY ACH 210901 | | |
| 09-02 | ' Preauthorized Wd | | 34,631.56 |
| | LIMETREE BAY ACH 210902 | | |
| 09-02 | ' Cash Mgmt Trsfr Dr | | 385,863.22 |
| | REF 2451145L FUNDS TRANSFER TO DEP | 9646 | |
| | FROM PER JAMES EMAIL SEPTEMBER 2 2021 | | |
| 09-03 | ' Cash Mgmt Trsfr Dr | | 257,945.54 |
| | REF 2461310L FUNDS TRANSFER TO DEP | 0216 | |
| | FROM PER JAMES EMAIL SEPTEMBER 3 2021 | | |

0 -121234

LIMETREE BAY REFINING, LLC               Page 2 of 6
September 30, 2021                        0267

| Date | Description | Subtractions |
|------|-------------|-------------:|
| 09-03 | ' Preauthorized Wd | 258,037.40 |
|  | LIMETREE BAY ACH 210903 | |
| 09-03 | ' Preauthorized Wd | 431,729.64 |
|  | LIMETREE BAY ACH 210903 | |
| 09-03 | ' Wire Transfer-Out | 880,366.50 |
|  | WIRE OUT -POLARIS ENGINEERING, INC | |
|  | 202109030001023 | |
| 09-08 | ' Cash Mgmt Trsfr Dr | 1,149,900.00 |
|  | REF 2511148L FUNDS TRANSFER TO DEP    0216 | |
|  | FROM PER SHOHEB EMAIL SEPTEMBER 8 2021 | |
| 09-09 | ' Preauthorized Wd | 9,878.40 |
|  | LIMETREE BAY ACH 210909 | |
| 09-09 | ' Wire Transfer-Out | 150,000.00 |
|  | WIRE OUT -DEUTSCHE BANK TRUST CO AMERICAS | |
|  | 202109090000844 | |
| 09-10 | ' Wire Transfer-Out | 2,000.00 |
|  | WIRE OUT -RTP ENVIROMENTAL ASSOCIATES, INC | |
|  | 202109100001447 | |
| 09-10 | ' Wire Transfer-Out | 30,000.00 |
|  | WIRE OUT -IOMOSAIC INC. | |
|  | 202109100001072 | |
| 09-10 | ' Preauthorized Wd | 1,261,194.93 |
|  | LIMETREE BAY ACH 210910 | |
| 09-14 | ' Preauthorized Wd | 190.00 |
|  | LIMETREE BAY ACH 210914 | |
| 09-15 | ' Cash Mgmt Trsfr Dr | 338,314.51 |
|  | REF 2581441L FUNDS TRANSFER TO DEP    9646 | |
|  | FROM PER SHOHEB EMAIL SEPTEMBER 14 2021 | |
| 09-15 | ' Cash Mgmt Trsfr Dr | 367,687.89 |
|  | REF 2581014L FUNDS TRANSFER TO DEP    9646 | |
|  | FROM PER JAMES EMAIL SEPTEMBER 15 2021 | |
| 09-16 | ' Wire Transfer-Out | 34,183.83 |
|  | WIRE OUT -METROPOLITAN LIFE INSURANCE COMPANY | |
|  | 202109160000432 | |
| 09-16 | ' Wire Transfer-Out | 57,211.51 |
|  | WIRE OUT -GRAY REED AND MCGRAW | |
|  | 202109160000430 | |
| 09-17 | ' Intl Wire Xfer Debit | 1,280.00 |
|  | WIRE OUT -RAPID ACCESS SOLUTIONS | |
|  | 202109170000511 | |
| 09-17 | ' Wire Transfer-Out | 17,800.00 |
|  | WIRE OUT -RTP ENVIROMENTAL ASSOCIATES, INC | |
|  | 202109170000512 | |
| 09-17 | ' Wire Transfer-Out | 30,000.00 |
|  | WIRE OUT -IOMOSAIC INC. | |
|  | 202109170001148 | |

LIMETREE BAY REFINING, LLC

Page 3 of 6

September 30, 2021

0267

| Date | Description | Subtractions |
|---|---|---|
| 09-17 | ' Preauthorized Wd | 258,397.03 |
| | LIMETREE BAY ACH 210917 | |
| 09-17 | ' Preauthorized Wd | 1,026,561.19 |
| | LIMETREE BAY ACH 210917 | |
| 09-20 | ' Preauthorized Wd | 29,885.20 |
| | LIMETREE BAY ACH 210920 | |
| 09-21 | ' Maintenance Fee | 343.89 |
| | ANALYSIS ACTIVITY FOR 08/21 | |
| 09-21 | ' Wire Transfer-Out | 39,253.29 |
| | WIRE OUT -METROPOLITAN LIFE INSURANCE COMPANY | |
| | 202109210000445 | |
| 09-22 | ' Preauthorized Wd | 854.00 |
| | LIMETREE BAY ACH 210922 | |
| 09-22 | ' Cash Mgmt Trsfr Dr | 1,186,300.00 |
| | REF 2651303L FUNDS TRANSFER TO DEP     0216 | |
| | FROM PER SHOHEB EMAIL SEPTEMEBER 21 2021 | |
| 09-23 | ' Preauthorized Wd | 45,191.00 |
| | LIMETREE BAY ACH 210923 | |
| 09-24 | ' Wire Transfer-Out | 854.00 |
| | WIRE OUT -AMETEK BROOKFIELD | |
| | 202109240000990 | |
| 09-24 | ' Wire Transfer-Out | 2,762.50 |
| | WIRE OUT -ANTILLES GAS CORPORATION | |
| | 202109240000987 | |
| 09-24 | ' Cash Mgmt Trsfr Dr | 40,000.00 |
| | REF 2671448L FUNDS TRANSFER TO DEP     0216 | |
| | FROM PER SHOHEB EMAIL SEPTEMBER 24 2021 | |
| 09-24 | ' Preauthorized Wd | 368,425.07 |
| | LIMETREE BAY ACH 210924 | |
| 09-27 | ' Wire Transfer-Out | 30,000.00 |
| | WIRE OUT -IOMOSAIC INC. | |
| | 202109270001831 | |
| 09-28 | ' Preauthorized Wd | 12,452.50 |
| | LIMETREE BAY ACH 210928 | |
| 09-30 | ' Preauthorized Wd | 76,620.09 |
| | LIMETREE BAY ACH 210930 | |
| 09-30 | ' Preauthorized Wd | 183,327.72 |
| | LIMETREE BAY ACH 210930 | |

**CREDITS**

| Date | Description | Additions |
|---|---|---|
| 09-03 | ' Wire Transfer-IN | 1,165,000.00 |
| | WIRE IN -LIMETREE BAY REFINING LLC | |
| | 202109030000916 | |

LIMETREE BAY REFINING, LLC                                    Page 4 of 6
September 30, 2021                                                   0267

| Date | Description | Additions |
|------|-------------|-----------|
| 09-08 | ' Wire Transfer-IN | 1,300,000.00 |
| | WIRE IN -LIMETREE BAY REFINING LLC | |
| | 202109080000641 | |
| 09-10 | ' Wire Transfer-IN | 1,225,000.00 |
| | WIRE IN -LIMETREE BAY REFINING LLC | |
| | 202109100001558 | |
| 09-14 | ' Wire Transfer-IN | 367,687.89 |
| | WIRE IN -CITIBANK N.A. | |
| | 202109140002261 | |
| 09-15 | ' Wire Transfer-IN | 550,000.00 |
| | WIRE IN -LIMETREE BAY REFINING LLC | |
| | 202109150001674 | |
| 09-17 | ' Wire Transfer-IN | 1,447,000.00 |
| | WIRE IN -LIMETREE BAY REFINING LLCNO 1 ESTAT | |
| | 202109170001008 | |
| 09-20 | ' Deposit | 6,700.00 |
| 09-20 | ' Domestic Wire IN Fee | 39,253.29 |
| | WIRE IN -METROPOLITAN LIFE INSURANCE CO.. | |
| | 202109200001390 | |
| 09-22 | ' Wire Transfer-IN | 1,200,000.00 |
| | WIRE IN -LIMETREE BAY REFINING LLC | |
| | 202109220000894 | |
| 09-24 | ' | 854.00 |
| | RETURN SETTLE N ACH RTN - R03 AMETEK ARIZONA INS | |
| | ORIGINAL ENTRY EFF DATE = 210922 | |
| 09-24 | ' Wire Transfer-IN | 255,000.00 |
| | WIRE IN -LIMETREE BAY REFINING LLC | |
| | 202109240000781 | |
| 09-27 | ' Wire Transfer-IN | 215,000.00 |
| | WIRE IN -LIMETREE BAY REFINING LLC | |
| | 202109270001047 | |
| 09-30 | ' Wire Transfer-IN | 200,000.00 |
| | WIRE IN -LIMETREE BAY REFINING LLC | |
| | 202109300001001 | |

## DAILY BALANCES

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 08-31 | 2,121,620.78 | 09-14 | 377,582.58 | 09-23 | 186,952.76 |
| 09-01 | 1,171,631.88 | 09-15 | 221,580.18 | 09-24 | 30,765.19 |
| 09-02 | 751,137.10 | 09-16 | 130,184.84 | 09-27 | 215,765.19 |
| 09-03 | 88,058.02 | 09-17 | 242,903.74 | 09-28 | 203,312.69 |
| 09-08 | 238,158.02 | 09-20 | 258,971.83 | 09-30 | 143,364.88 |
| 09-09 | 78,279.62 | 09-21 | 219,374.65 | | |
| 09-10 | 10,084.69 | 09-22 | 232,143.76 | | |

**LIMETREE BAY REFINING**
**LBR Operating Account - 110600**
**BA        0267**
**September 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 8/31/2021 | $ | 2,121,620.78 |
| Deposits | | $ | 7,971,495.18 |
| ACH / Debits | | $ | (8,475,582.69) |
| Wires | | $ | (1,473,504.73) |
| Bank Charges | | $ | (343.89) |
| Checks Cleared | | $ | (319.77) |
| Intransit Deposit | | $ | - |
| Ending Balance per Bank | 9/30/2021 | $ | 143,364.88 |
| Opening Balance  per Book | 8/31/2021 | $ | 2,121,620.78 |
| Deposits | | $ | 7,971,495.18 |
| ACH / Debits | | $ | (8,475,582.69) |
| Wires | | $ | (1,473,504.73) |
| Bank Charges | | $ | (343.89) |
| Checks Issued | Doc Num | $ | (391.93) |
| Checks Voided/Reversed | | $ | 72.16 |
| Ending Balance per Book | 9/30/2021 | $ | 143,364.88 |
| Outstanding Checks | | | |
| ACH Intransit | | $ | - |
| | | $ | 143,364.88 |
| | | $ | 0.00 |

Reconciled by        George Southwell

Date:        10/5/2021

Approved by

Date:

**Oriental**

1760

P.O. Box 195115
San Juan, PR 00919-5115

Last statement: August 31, 2021
This statement: September 30, 2021
Total days in statement period: 30

Page 1 of 2
0268
(0)

LIMETREE BAY REFINING, LLC
1 ESTATE HOPE
CHRISTIANSTED VI 00820-5652

Direct inquiries to:
787-620-0000

Oriental Bank
254 Munoz Rivera Ave
Hato Rey PR 00918

---

## Premium Business

| | | | |
|---|---|---|---|
| Account number | 0268 | Beginning balance | $130.44 |
| Low balance | $37.96 | Total additions | .00 |
| Average balance | $99.61 | Total subtractions | 92.48 |
| | | Ending balance | $37.96 |

**DEBITS**

| Date | Description | Subtractions |
|---|---|---|
| 09-21 | ' Maintenance Fee | 92.48 |
| | ANALYSIS ACTIVITY FOR 08/21 | |

**DAILY BALANCES**

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 08-31 | 130.44 | 09-21 | 37.96 | | |

**OVERDRAFT/RETURN ITEM FEES**

| | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

*Thank you for banking with Oriental Bank*

0 -121241

**LIMETREE BAY REFINING**
**LBR Payroll Account - 110610**
**BA        0268**
**September 2021**

|  | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 8/31/2021 | $ | 130.44 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Bank Charges | | $ | (92.48) |
| Checks Cleared | | $ | - |
| Intransit Deposit | | $ | - |
| Ending Balance per Bank | 9/30/2021 | $ | 37.96 |
| Opening Balance  per Book | 8/31/2021 | $ | 130.44 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Bank Charges | | $ | (92.48) |
| Checks Issued | | $ | - |
| Ending Balance per Book | 9/30/2021 | $ | 37.96 |
| Outstanding Checks | 9/30/2021 | $ | - |
| | | $ | 37.96 |

Reconciled by    George Southwell

Date:    10/1/2021

Approved by

Date:

**Deutsche Bank**

| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Revenue Account |
| Portfolio Number: | 001.4 |
| Statement Period: | September 01, 2021 - September 30, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Page 1 of 4

## Summary

| Portfolio Market Value Summary as of 09/30/21 | | |
|---|---|---|
| Total Portfolio Value: | $ | 0.00 |
| | | |
| YTD Dividends: | $ | 0.00 |
| YTD Interest: | $ | 0.00 |
| YTD Capital Gains/Losses: | $ | 0.00 |

| Portfolio Cost Value Summary as of 09/30/21 | | |
|---|---|---|
| Total Portfolio Value: | $ | 0.00 |

| Cash Summary | | |
|---|---|---|
| **Beginning Balance** | **$** | **0.00** |

**Closing Balance**                 **0.00**

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.


**Deutsche Bank**

| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Revenue Account |
| Portfolio Number: | 001.4 |
| Statement Period: | September 01, 2021 - September 30, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Transaction Statement for the period of September 1, 2021 through September 30, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 09/01 | Beginning balance | | | | | $ 0.00 | $ 0.00 |

Asset position as of September 30, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | **0.00** | **$0.00** | **0.00** | | | **$0.00** | **$0.00** | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR O&M Account |
| Portfolio Number: | 001.5 |
| Statement Period: | September 01, 2021 - September 30, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Page 1 of 4

## Summary

| Portfolio Market Value Summary as of 09/30/21 | | |
|---|---|---|
| Total Portfolio Value: | $ | 0.00 |
| | | |
| YTD Dividends: | $ | 0.00 |
| YTD Interest: | $ | 0.00 |
| YTD Capital Gains/Losses: | $ | 0.00 |

| Portfolio Cost Value Summary as of 09/30/21 | | |
|---|---|---|
| Total Portfolio Value: | $ | 0.00 |

| Cash Summary | | |
|---|---|---|
| **Beginning Balance** | **$** | **0.00** |

**Closing Balance** **0.00**

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.



| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR O&M Account |
| Portfolio Number: | 001.5 |
| Statement Period: | September 01, 2021 - September 30, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Page 2 of 4

Transaction Statement for the period of September 1, 2021 through September 30, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 09/01 | Beginning balance | | | | | $ 0.00 | $ 0.00 |

Asset position as of September 30, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | **0.00** | **$0.00** | **0.00** | | | **$0.00** | **$0.00** | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

**Deutsche Bank**

| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Reinvestment & Repair Account |
| Portfolio Number: | 001.6 |
| Statement Period: | September 01, 2021 - September 30, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Page 1 of 4

## Summary

| Portfolio Market Value Summary as of 09/30/21 | | |
|---|---|---|
| Total Portfolio Value: | $ | 0.00 |
| | | |
| YTD Dividends: | $ | 0.00 |
| YTD Interest: | $ | 0.00 |
| YTD Capital Gains/Losses: | $ | 0.00 |

| Portfolio Cost Value Summary as of 09/30/21 | | |
|---|---|---|
| Total Portfolio Value: | $ | 0.00 |

| Cash Summary | | |
|---|---|---|
| **Beginning Balance** | **$** | **0.00** |

**Closing Balance**　　　　　**0.00**

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.



| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Reinvestment & Repair Account |
| Portfolio Number: | 001.6 |
| Statement Period: | September 01, 2021 - September 30, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Page 2 of 4

Transaction Statement for the period of September 1, 2021 through September 30, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 09/01 | Beginning balance | | | | | $ 0.00 | $ 0.00 |

Asset position as of September 30, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | **0.00** | **$0.00** | **0.00** | | | **$0.00** | **$0.00** | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

|  |  |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Distribution Suspense Account |
| Portfolio Number: | .001.8 |
| Statement Period: | September 01, 2021 - September 30, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Page 1 of 4

## Summary

| Portfolio Market Value Summary as of 09/30/21 | | |
|---|---|---|
| Total Portfolio Value: | $ | 0.00 |
| | | |
| YTD Dividends: | $ | 0.00 |
| YTD Interest: | $ | 0.00 |
| YTD Capital Gains/Losses: | $ | 0.00 |

| Portfolio Cost Value Summary as of 09/30/21 | | |
|---|---|---|
| Total Portfolio Value: | $ | 0.00 |

| Cash Summary | | |
|---|---|---|
| **Beginning Balance** | $ | **0.00** |

**Closing Balance**                    **0.00**

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.


**Deutsche Bank**

|  |  | Page 2 of 4 |
|---|---|---|
| Account Name: | Limetree Bay Refining LLC | |
| Portfolio Name: | LBR Distribution Suspense Account | |
| Portfolio Number: | .001.8 | |
| Statement Period: | September 01, 2021 - September 30, 2021 | |
| Account Administrator: | Shamarri Hartzog (714-247-6353) | |
| Account Manager: | Scott Dodic (212-250-7848) | |
| Team Lead: | Thalia Delahayes (212-250-7336) | |

Transaction Statement for the period of September 1, 2021 through September 30, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 09/01 | Beginning balance | | | | | $ 0.00 | $ 0.00 |

Asset position as of September 30, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | **0.00** | **$0.00** | **0.00** | | | **$0.00** | **$0.00** | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

**Deutsche Bank** ◪

| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Operating Reserve  Account |
| Portfolio Number: | .001.9 |
| Statement Period: | September 01, 2021 - September 30, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Page 1 of 4

## Summary

| Portfolio Market Value Summary as of 09/30/21 | | |
|---|---|---|
| Total Portfolio Value: | $ | 0.00 |
| | | |
| YTD Dividends: | $ | 0.00 |
| YTD Interest: | $ | 0.00 |
| YTD Capital Gains/Losses: | $ | 0.00 |

| Portfolio Cost Value Summary as of 09/30/21 | | |
|---|---|---|
| Total Portfolio Value: | $ | 0.00 |

| Cash Summary | | |
|---|---|---|
| **Beginning Balance** | **$** | **0.00** |

**Closing Balance**  **0.00**

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.



| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Operating Reserve  Account |
| Portfolio Number: | )01.9 |
| Statement Period: | September 01, 2021 - September 30, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Page 2 of 4

Transaction Statement for the period of September 1, 2021 through September 30, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 09/01 | Beginning balance | | | | | $ 0.00 | $ 0.00 |

Asset position as of September 30, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | **0.00** | **$0.00** | **0.00** | | | **$0.00** | **$0.00** | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.



Account Name: Limetree Bay Refining LLC
Portfolio Name: LBR Construction Account
Portfolio Number: 01.10
Statement Period: September 01, 2021 - September 30, 2021
Account Administrator: Shamarri Hartzog (714-247-6353)
Account Manager: Scott Dodic (212-250-7848)
Team Lead: Thalia Delahayes (212-250-7336)

Page 1 of 4

## Summary

| Portfolio Market Value Summary as of 09/30/21 | | |
|---|---|---|
| Cash | $ | 0.00 |
| Investments | $ | 8,990.32 |
| Total Portfolio Value: | $ | 8,990.32 |
| YTD Interest: | $ | 0.00 |
| YTD Dividends: | $ | 222.98 |
| YTD Capital Gains/Losses: | $ | 0.00 |

| Portfolio Cost Value Summary as of 09/30/21 | | |
|---|---|---|
| Cash | $ | 0.00 |
| Investments | $ | 8,990.32 |
| Total Portfolio Value: | $ | 8,990.32 |

| Cash Summary | | |
|---|---|---|
| **Beginning Balance** | $ | **0.00** |
| **Receipts:** | | |
| **Cash Receipts** | $ | **1,405,643.47** |
| **Sale of Investments** | $ | **43,303.57** |
| **Total Receipts** | $ | **1,448,947.04** |

| Disbursements: | | |
|---|---|---|
| Purchase of Investments | $ | 1,947.04 |
| Cash Disbursements | $ | 1,447,000.00 |
| Dividends Reinvested | $ | 0.84 |
| **Total Disbursements** | $ | **(1,448,947.04)** |
| **Closing Balance** | $ | **0.00** |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.


Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Construction Account |
| Portfolio Number: | 01.10 |
| Statement Period: | September 01, 2021 - September 30, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Page 2 of 4

Transaction Statement for the period of September 1, 2021 through September 30, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 09/01 | Beginning balance | | | | $ | 0.00 $ | 50,346.43 |
| 09/01 | Dividend Reinvestment<br>BL #91406 -0N6 Treas Tr Adm<br>CUSIP: 09248U452    / ISIN: US09248U4528 | $ 0.00 $ | 0.42 $ | 0.00 $ | 0.00 $ | 0.00 $ | 50,346.85 |
| 09/07 | Dividend Reinvestment<br>BL #92104 -0U4 FedFund Admin<br>CUSIP: 09248U445    / ISIN: US09248U4452 | $ 0.00 $ | 0.42 $ | 0.00 $ | 0.00 $ | 0.00 $ | 50,347.27 |
| 09/07 | Dividend Reinvestment Adjustment<br>BL #91406 -0N6 Treas Tr Adm<br>CUSIP: 09248U452    / ISIN: US09248U4528 | $ 0.00 $ | (0.42) $ | 0.00 $ | 0.00 $ | 0.00 $ | 50,346.85 |
| 09/14 | Auto Wire Receipt<br>MONEY TRANSFER RECEIPT: 0724026940016671 REM=072<br>4026940016671 OBI=POR T SE1972-001.10LBR-CONSTRU<br>CTION ACCOUNTBBI=BNF-NYLTD FUNDS CONTROL-NY<br>Sending Bank: 072402694    HILLSDALE COUNTY NATIONAL BANK<br>Beneficiary: SE1972-001.10 LIMETREE BAY REFINING LLC<br>    FED 0914GMQFMP01015935-09.14.2021<br>    BANKREF M103404IFD091421 M103404IFD09142120210914 | $ 50,000.00 $ | 0.00 $ | 0.00 $ | 0.00 $ | 50,000.00 $ | 50,346.85 |
| 09/14 | Auto Wire Receipt<br>MONEY TRANSFER RECEIPT: 2109142702300211 REM=202<br>1091400558687 OBI=INV 200300019BBI=/ACC/FCC PORT<br>SE1972-001.10REF LIM ETREEBAY REFINING LL<br>Sending Bank: 0509        Wachovia Bank, N.A. - New York<br>Beneficiary: SE1972-001.10 LIMETREE BAY REFINING LLC<br>    CHIPS 0394079-09.14.2021<br>    BANKREF S394079ICP091421 S394079ICP09142120210914 | $ 1,346,896.43 $ | 0.00 $ | 0.00 $ | 0.00 $ | 1,396,896.43 $ | 50,346.85 |
| 09/15 | Wire Receipt<br>MONEY TRANSFER RECEIPT: REM=2863716630042739 OBI<br>=PURCHASE OF CONTAINE RBBI=BNF-LBR CONSTRUCTION<br>ACCOUNT1 ESTATE HOPECHRISTIA NSTED VI 00820 | $ 6,800.00 $ | 0.00 $ | 0.00 $ | 0.00 $ | 1,403,696.43 $ | 50,346.85 |
| 09/17 | Mutual Fund Sale<br>SE1972IMF<br>@ 1.00<br>BL #92104 -0U4 FedFund Admin<br>CUSIP: 09248U445    / ISIN: US09248U4452 | $ 43,303.57 $ | (43,303.57) $ | 0.00 $ | 1.00 $ | 1,447,000.00 $ | 7,043.28 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.


Deutsche Bank

|  | |
|---|---|
| Account Name: | Limetree Bay Refining LLC |
| Portfolio Name: | LBR Construction Account |
| Portfolio Number: | 01.10 |
| Statement Period: | September 01, 2021 - September 30, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | Scott Dodic (212-250-7848) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Page 3 of 4

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|------|------------------------|------|----------|---------------|-------|--------------|--------------|
| 09/17 | Funds Disbursement<br>Limetree Bay Refining, LLC<br>Receiving Bank: 221571415    ORIENTAL BANK AND TRUST<br>Beneficiary: 8202040267   Limetree Bay Refining, LLC | $ (1,447,000.00) $ | 0.00 $ | 0.00 $ | 0.00 $ | 0.00 $ | 7,043.28 |
| 09/17 | Wire Receipt<br>MONEY TRANSFER RECEIPT: REM=BP210915001626 OBI=P<br>ORT SE1972 001 10BBI= BNF-LBR CONSTRUCTION ACCOU<br>NT1 ESTATE HOPECHRISTIANST ED VIRGIN ISLAND | $ 1,947.04 $ | 0.00 $ | 0.00 $ | 0.00 $ | 1,947.04 $ | 7,043.28 |
| 09/20 | Mutual Fund Purchase<br>MF Buy<br>@ 1.00<br>BL #92104 -0U4 FedFund Admin<br>CUSIP: 09248U445    / ISIN: US09248U4452 | $ (1,947.04) $ | 1,947.04 $ | 0.00 $ | 1.00 $ | 0.00 $ | 8,990.32 |

Asset position as of September 30, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|-------------|----------------|------|---------------|--------------|-------|--------------|----------------|----------------------------|
| BL #92104 -0U4 FedFund Admin<br>CUSIP: 09248U445 | 8,990.32 | $8,990.32 | 8,990.32 | $1.00 | 0.03% | $8,990.32 | $0.59 | n/a / N/A |
| **Total Portfolio** | **8,990.32** | **$8,990.32** | **8,990.32** | | | **$8,990.32** | **$0.59** | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

**Deutsche Bank**

| | | | |
|---|---|---|---|
| Account Name: | Limetree Bay Refining LLC | | Page 1 of 4 |
| Portfolio Name: | LBR Debt Service Reserve Account | | |
| Portfolio Number: | 01.11 | | |
| Statement Period: | September 01, 2021 - September 30, 2021 | | |
| Account Administrator: | Shamarri Hartzog (714-247-6353) | | |
| Account Manager: | Scott Dodic (212-250-7848) | | |
| Team Lead: | Thalia Delahayes (212-250-7336) | | |

## Summary

| Portfolio Market Value Summary as of 09/30/21 | | |
|---|---|---|
| Cash | $ | 0.00 |
| Investments | $ | 3,533.42 |
| Total Portfolio Value: | $ | 3,533.42 |
| | | |
| YTD Dividends: | $ | 0.00 |
| YTD Interest: | $ | 0.00 |
| YTD Capital Gains/Losses: | $ | 0.00 |

| Portfolio Cost Value Summary as of 09/30/21 | | |
|---|---|---|
| Cash | $ | 0.00 |
| Investments | $ | 3,533.42 |
| Total Portfolio Value: | $ | 3,533.42 |

| Cash Summary | | |
|---|---|---|
| **Beginning Balance** | $ | **0.00** |

**Closing Balance**                    **0.00**

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.


**Deutsche Bank**

|  |  | Page 2 of 4 |
|---|---|---|
| Account Name: | Limetree Bay Refining LLC | |
| Portfolio Name: | LBR Debt Service Reserve Account | |
| Portfolio Number: | 01.11 | |
| Statement Period: | September 01, 2021 - September 30, 2021 | |
| Account Administrator: | Shamarri Hartzog (714-247-6353) | |
| Account Manager: | Scott Dodic (212-250-7848) | |
| Team Lead: | Thalia Delahayes (212-250-7336) | |

Transaction Statement for the period of September 1, 2021 through September 30, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 09/01 | Beginning balance | | | | | $ 0.00 | $ 3,533.42 |

Asset position as of September 30, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| BL #92104 -0U4 FedFund Admin CUSIP: 09248U445 | 3,533.42 | $3,533.42 | 3,533.42 | $1.00 | 0.03% | $3,533.42 | $0.00 | n/a / N/A |
| **Total Portfolio** | **3,533.42** | **$3,533.42** | **3,533.42** | | | **$3,533.42** | **$0.00** | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

**LIMETREE BAY REFINING**
**LBR Construction Account**          **110690**
          **001.10**
**September 2020**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 8/31/2021 | $ | 50,346.43 |
| Deposits | | $ | 1,405,643.47 |
| ACH / Debits | | $ | - |
| Wires | | $ | (1,447,000.00) |
| Capital Gain/Losses | | $ | - |
| Bank Charges | | $ | - |
| Dividends | | $ | 0.42 |
| Ending Balance per Bank | 9/30/2021 | $ | 8,990.32 |
| Opening Balance  per Book | 8/31/2021 | $ | 50,346.43 |
| Deposits | | $ | 1,405,643.47 |
| ACH / Debits | | $ | - |
| Wires | | $ | (1,447,000.00) |
| Misc Adjustment | | | |
| Capital Gain/Losses | | | - |
| Bank Charges | | $ | - |
| Dividends | | $ | 0.42 |
| Ending Balance per Book | 9/30/2021 | $ | 8,990.32 |
| | | $ | 8,990.32 |
| | | $ | - |

| Reconciled by | George Southwell |
|---|---|
| Date: | 10/4/2021 |
| Approved by | |
| Date: | |

**LIMETREE BAY REFINING**
**LBR Debt Service Reserve Account       110700**
**        001.11**
**September 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 8/31/2021 | $ | 3,533.42 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Capital Gain/Losses | | $ | - |
| Bank Charges | | $ | - |
| Dividends | | $ | - |
| Ending Balance per Bank | 9/30/2021 | $ | 3,533.42 |
| Opening Balance  per Book | 8/31/2021 | $ | 3,533.42 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Capital Gain/Losses | | | - |
| Bank Charges | | $ | - |
| Dividends | | $ | - |
| Ending Balance per Book | 9/30/2021 | $ | 3,533.42 |
| | | $ | 3,533.42 |
| | | $ | - |

Reconciled by _____George Southwell_____

Date: _____10/1/2021_____

Approved by _____

Date: _____

# EAST WEST BANK   Your financial bridge®

7759

Direct inquiries to:
888 761-3967

9300 Flair Dr., 1St FL
El Monte, CA. 91731

ACCOUNT STATEMENT
Page 1 of 2
STARTING DATE: September 01, 2021
ENDING DATE: September 30, 2021
Total days in statement period: 30
7759
( 0)

LIMETREE BAY REFINING LLC
CHAPTER 11 DEBTOR IN POSSESSION
CASE #21-32354
%B RILEY FINANCIAL
3500 MAPLE AVE STE 420
DALLAS TX 75219-3957

> Protecting the security of your account and personal information is our top priority. Learn about online security practices and ways to protect yourself from cybercrime at eastwestbank.com in the "Privacy & Security" section.

## Commercial Analysis Checking

| | | | | |
|---|---|---|---|---|
| Account number | 7759 | Beginning balance | | $9,500,000.00 |
| Low balance | $3,388,645.54 | Total additions | ( 0) | .00 |
| Average balance | $5,809,178.90 | Total subtractions | ( 11) | 6,111,354.46 |
| | | Ending balance | | $3,388,645.54 |

### DEBITS

| Date | Transaction Description | | Subtractions |
|---|---|---|---|
| 09-03 | Outgoing Wire | LIMETREE BAY REFIN ING LLC | 1,165,000.00 |
| 09-03 | Debit Memo | FIDUCIARY MAINTENA NCE | 25.00 |
| 09-03 | Debit Memo | FIDUCIARY COLLATER AL | 1,146.58 |
| 09-08 | Outgoing Wire | LIMETREE BAY REFIN ING LLC | 1,300,000.00 |
| 09-10 | Outgoing Wire | LIMETREE BAY REFIN ING LLC | 1,225,000.00 |
| 09-15 | Outgoing Wire | LIMETREE BAY REFIN ING LLC | 550,000.00 |
| 09-21 | Analysis Servic | ANALYSIS ACTIVITY FOR 08/21 | 182.88 |
| 09-22 | Outgoing Wire | LIMETREE BAY REFIN ING LLC | 1,200,000.00 |
| 09-24 | Outgoing Wire | LIMETREE BAY REFIN ING LLC | 255,000.00 |
| 09-27 | Outgoing Wire | LIMETREE BAY REFIN ING LLC | 215,000.00 |
| 09-30 | Outgoing Wire | LIMETREE BAY REFIN ING LLC | 200,000.00 |

### DAILY BALANCES

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 08-31 | 9,500,000.00 | 09-15 | 5,258,828.42 | 09-27 | 3,588,645.54 |
| 09-03 | 8,333,828.42 | 09-21 | 5,258,645.54 | 09-30 | 3,388,645.54 |
| 09-08 | 7,033,828.42 | 09-22 | 4,058,645.54 | | |
| 09-10 | 5,808,828.42 | 09-24 | 3,803,645.54 | | |

**LIMETREE BAY REFINING**
**Checking Account - 110770**
**BA        7759**
**September 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 8/31/2021 | $ | 9,500,000.00 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | (6,110,000.00) |
| Bank Charges | | $ | (1,354.46) |
| Checks Cleared | | $ | - |
| Intransit Deposit | | $ | - |
| Ending Balance per Bank | 9/30/2021 | $ | 3,388,645.54 |
| Opening Balance  per Book | 8/31/2021 | $ | 9,500,000.00 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | (6,110,000.00) |
| Bank Charges | | $ | (1,354.46) |
| Checks Issued | | $ | - |
| Ending Balance per Book | 9/30/2021 | $ | 3,388,645.54 |
| Outstanding Checks | 9/30/2021 | $ | - |
| | | $ | 3,388,645.54 |

Reconciled by        George Southwell

Date:                    10/13/2021

Approved by

Date:

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of September 30, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC[5] | AIG/National Union Fire Insurance Co | Combined Property | Primary $250M | 026-1001312 | 2021.09.01 |
| Limetree Bay Refining, LLC | Allianz Global Risk US Insurance Company | Combined Property | Primary $1.25BN | USN00023920 | 2021.12.01 |
| Limetree Bay Refining, LLC | Axis (Endorsement) | Builder's Risk | $50M | EAU646295/01/2020 | 2021.12.01 |
| Limetree Bay Refining, LLC[5] | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 92SRD102973 | 2021.09.01 |
| Limetree Bay Refining, LLC[5] | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 42-PRP-312023-01 | 2021.09.01 |
| Limetree Bay Refining, LLC | CIN 318/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC3 | Convex Insurance UK Limited | Combined Property | Primary $1.25BN (reduced to a limit of $250 million on August 20, 2021) | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Services, LLC | Liberty | Worker's Comp | | WCC-641-444917-020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hannover Re/HDI Global Specialty SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Helvetia/Helvetia Swiss Insurance Co in Liechtenstein Ltd | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | HSIC/Houston Specialty Insurance Company | Combined Property | $150M XS 50M | PRO440373 | 2021.12.01 |
| Limetree Bay Refining, LLC | LSM/Liberty Specialty Markets Agency Limited | Combined Property | $100M XS $100M | LSMAEN143232A | 2021.12.01 |
| Limetree Bay Refining, LLC | Munich Re/Great Lakes Insurance SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | PICC/Guardian General Insurance | Combined Property | $100M XS $100M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | QBE/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Rokstone/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC[5] | SCOR (3)/General Security Indemnity Company of Arizona | Combined Property | Primary $1.25BN | FA007943720201 | 2021.09.01 |
| Limetree Bay Refining, LLC | Sompo/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Swiss Re/Westport Insurance Company | Combined Property | Primary $500M | OMP 2000425-00 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of September 30, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC[5] | Validus Specialty/Lloyds of London | Combined Property | Primary $250M | AJH292893A20 | 2021.09.01 |
| Limetree Bay Refining, LLC | Westchester Surplus Lines Ins Co/Starr Technical Risks Agency, Inc | Combined Property | Primary $500M | EPRN18215263 | 2021.12.01 |
| Limetree Bay Refining, LLC | WRB/Guardian General Insurance | Combined Property | $50M XS $50M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Zurich/Zurich American Insurance Company | Combined Property | Primary $100M | OGR 1296457-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arcadian/Ark/Helix Bermuda | Builder's Risk | $25M xs $100M | NAMBM2100005 | 2022.06.01 |
| Limetree Bay Refining, LLC | Allianz | Refinery Excess Liability | $15M xs $53M | USL00880520 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz | Environmental Liability | $15M xs $85M | USL00873320 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty | Refinery Primary Liability | | AS6-641-444917-010 | 2021.12.01 |
| Limetree Bay Refining, LLC | Travelers Syndicate | Refinery Primary Liability | | ENCAS2000012 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer/Apollo | Refinery Excess Liability | $15M | ENCAS2000011 | 2021.12.01 |
| Limetree Bay Refining, LLC | Westchester | Refinery Excess Liability | $3M xs $25M | G71809808001 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Refinery Excess Liability | $25M xs $28M | 4380100 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer | Refinery Excess Liability | $11M po $22M xs $68M | ENCAS2000020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lex-London | Refinery Excess Liability | $11M po $22M xs $68M | 62785689 | 2021.12.01 |
| Limetree Bay Refining, LLC | OSL | Refinery Excess Liability | $10M xs $90M | EXS-154724-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | AXA XL Bermuda | Refinery Excess Liability | $25M xs $125M | XLUMB-229978 | 2021.12.01 |
| Limetree Bay Refining, LLC | OCIL Bermuda | Refinery Excess Liability | $25M po $40M xs $150M | U920968-0620 | 2021.12.01 |
| Limetree Bay Refining, LLC | Sompo Bermuda | Refinery Excess Liability | $15M po $40M xs $150M | EXC30001524800 | 2021.12.01 |
| Limetree Bay Refining, LLC | Argo Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | ARGO-CAS-OR-001484 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arch Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | URP0065257-00 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of September 30, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | Markel Bermuda | Refinery Excess Liability | $12.5M po $50M xs $190M | 1454233-11636-UMB-2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hamilton Bermuda | Refinery Excess Liability | $7.5M po $50M xs $190M | CX20-9216 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chubb Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LBR-2144/XS004 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LSMAEC119907A | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $1M | ENVP0000296-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $9M xs $1M | ENVX0000256-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Environmental Liability | $25M xs $10M | 262704 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ascot | Environmental Liability | $25M xs $35M | ENXP2110000428-01 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel | Environmental Liability | $25M xs $60M | MKLV4EFX102259 | 2021.12.01 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $5M | 8261-8347 | 2022.04.20 |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000623319211 | 2022.04.20 |
| Limetree Bay Refining, LLC | Wesco Insurance Company | Executive Risk | $5M | EUW1909831 00 | 2022.04.20 |
| | | | | | |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000622392201 | 2027.04.20 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $5M | 8247-1536 | 2027.04.20 |
| Limetree Bay Refining, LLC | First Liberty Insurance Co | Auto Liability | $2M | AS6-641-444917-010 | 2021.12.01 |

**Notes:**

**(1)** As of September 30, 2021, insurance premiums are paid in full except for the items discussed in footnotes 2, 3 and 4.

**(2)** The auto liability policy will be audited during December 2021.  A premium will be due for autos assigned to LBR for the period from June 1, 2021 through December 31, 2021

**(3)** Audit premiums are expected to be invoiced for non-current insurance policies including the Builders All Risk policy and OCIP.  As of the filing of the monthly operating report, the audit amounts have not been determined.

**(4)** Premium obligations outstanding as of August 31, 2021 for LBR are as follows:

    a.  PFA Loan 2055:  Balance due for $266,145

    b.  PFA Loan 2303:  Balance due for $536,580

**(5)** September 1, 2021 was an expiration date for 36.5% of the property insurance program insuring the Refinery.  It was not replaced or renewed

**(6)** December 1, 2021 is an expiration date for the remaining 63.5% of the property insurance program insuring the Refinery. It is not presently being marketed, LBR assumes the risk for 30% of a $50 million primary section of the insurance program.

# UNITED STATES BANKRUPTCY COURT

<u>SOUTHERN</u>  DISTRICT OF  <u>TEXAS</u>

<u>HOUSTON DIVISION</u>

| | | |
|---|---|---|
| In Re. LIMETREE BAY REFINING OPERATING, LLC | § § § § | Case No.  21-32355 |
| _____ Debtor(s) | | Lead Case No.  21-32351 |
| | | ☒ Jointly Administered |

## Monthly Operating Report

Chapter 11

Reporting Period Ended: 09/30/2021                     Petition Date: 07/12/2021

Months Pending: 3                     Industry Classification:  | 3 | 2 | 4 | 1 |

Reporting Method:                Accrual Basis ◉          Cash Basis ○

Debtor's Full-Time Employees (current):                    9

Debtor's Full-Time Employees (as of date of order for relief):          263

**Supporting  Documentation**  (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

☒ Statement of cash receipts and disbursements
☒ Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
☒ Statement of operations (profit or loss statement)
☐ Accounts receivable aging
☐ Postpetition liabilities aging
☐ Statement of capital assets
☐ Schedule of payments to professionals
☐ Schedule of payments to insiders
☒ All bank statements and bank reconciliations for the reporting period
☐ Description of the assets sold or transferred and the terms of the sale or transfer

/s/ Elizabeth A. Green                          Elizabeth A. Green
Signature of Responsible Party                  Printed Name of Responsible Party

10/29/2021                                 200 S. Orange Avenue
Date                                      SunTrust Center, Suite 2300
                                         Orlando, FL 32801
                                         Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

UST Form 11-MOR (06/07/2021)                    1

Debtor's Name  LIMETREE BAY REFINING OPERATING, LLC          Case No.  21-32355

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a. Cash balance beginning of month | $5,794 | |
| b. Total receipts (net of transfers between accounts) | $2,634,146 | $8,106,343 |
| c. Total disbursements (net of transfers between accounts) | $2,628,662 | $8,116,028 |
| d. Cash balance end of month (a+b-c) | $11,277 | |
| e. Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f. Total disbursements for quarterly fee calculation (c+e) | $2,628,662 | $8,116,028 |

| Part 2:  Asset and Liability Status<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | |
|---|---|---|
| a. Accounts receivable (total net of allowance) | $97,775,798 | |
| b. Accounts receivable over 90 days outstanding (net of allowance) | $95,504,305 | |
| c. Inventory    (Book ○  Market ○  Other ⊙  (attach explanation)) | $0 | |
| d Total current assets | $97,787,075 | |
| e. Total assets | $97,787,075 | |
| f. Postpetition payables (excluding taxes) | $0 | |
| g. Postpetition payables past due (excluding taxes) | $0 | |
| h. Postpetition taxes payable | $0 | |
| i. Postpetition taxes past due | $0 | |
| j. Total postpetition debt (f+h) | $0 | |
| k. Prepetition secured debt | $1,056,353,789 | |
| l. Prepetition priority debt | $0 | |
| m. Prepetition unsecured debt | $106,538,705 | |
| n. Total liabilities (debt) (j+k+l+m) | $1,162,892,494 | |
| o. Ending equity/net worth (e-n) | $-1,065,105,418 | |

| Part 3:  Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a. Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b. Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c. Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4:  Income Statement (Statement of Operations)<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a. Gross income/sales (net of returns and allowances) | $0 | |
| b. Cost of goods sold (inclusive of depreciation, if applicable) | $0 | |
| c. Gross profit (a-b) | $0 | |
| d. Selling expenses | $1,432,019 | |
| e. General and administrative expenses | $1,155,127 | |
| f. Other expenses | $0 | |
| g. Depreciation and/or amortization (not included in 4b) | $0 | |
| h. Interest | $0 | |
| i. Taxes (local, state, and federal) | $0 | |
| j. Reorganization items | $0 | |
| k. Profit (loss) | $-2,587,146 | $-10,491,068 |

UST Form 11-MOR (06/07/2021)                    2

Debtor's Name  LIMETREE BAY REFINING OPERATING, LLC                                    Case No.  21-32355

## Part 5:  Professional Fees and Expenses

|   |  | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|
| a. | Debtor's professional fees & expenses (bankruptcy)  *Aggregate Total* | | | | |
|  | *Itemized Breakdown by Firm* | | | | |
|  | Firm Name / Role | | | | |
|  | i | | | | |
|  | ii | | | | |

|   |  | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy)  *Aggregate Total* | | | | |
|  | *Itemized Breakdown by Firm* | | | | |
|  | Firm Name / Role | | | | |
|  | i | | | | |
|  | ii | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | |

## Part 6:  Postpetition Taxes

|   |  | Current Month | Cumulative |
|---|---|---|---|
| a. | Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. | Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. | Postpetition employer payroll taxes accrued | $0 | $0 |
| d. | Postpetition employer payroll taxes paid | $501,126 | $1,696,586 |
| e. | Postpetition property taxes paid | $0 | $0 |
| f. | Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. | Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

## Part 7: Questionnaire - During this reporting period:

a. Were any payments made on prepetition debt?  (if yes, see Instructions)   Yes ◯   No ⦿

b. Were any payments made outside the ordinary course of business without court approval?  (if yes, see Instructions)   Yes ◯   No ⦿

c. Were any payments made to or on behalf of insiders?   Yes ◯   No ⦿

d. Are you current on postpetition tax return filings?   Yes ⦿   No ◯

e. Are you current on postpetition estimated tax payments?   Yes ⦿   No ◯

f. Were all trust fund taxes remitted on a current basis?   Yes ⦿   No ◯

g. Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions)   Yes ⦿   No ◯

h. Were all payments made to or on behalf of professionals approved by the court?   Yes ◯   No ◯   N/A ⦿

i. Do you have:   Worker's compensation insurance?   Yes ⦿   No ◯
   If yes, are your premiums current?   Yes ⦿   No ◯   N/A ◯   (if no, see Instructions)
   Casualty/property insurance?   Yes ⦿   No ◯
   If yes, are your premiums current?   Yes ⦿   No ◯   N/A ◯   (if no, see Instructions)
   General liability insurance?   Yes ⦿   No ◯
   If yes, are your premiums current?   Yes ⦿   No ◯   N/A ◯   (if no, see Instructions)

j. Has a plan of reorganization been filed with the court?   Yes ◯   No ⦿

UST Form 11-MOR (06/07/2021)                                  3

Debtor's Name  LIMETREE BAY REFINING OPERATING, LLC                    Case No.  21-32355

k.  Has a disclosure statement been filed with the court?          Yes ○  No ●
l.  Are you current with quarterly U.S. Trustee fees as          Yes ●  No ○
    set forth under 28 U.S.C. § 1930?

| Part 8: Individual Chapter 11 Debtors (Only) |
| --- |

| | | |
| --- | --- | --- |
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |

l.  Are you required to pay any Domestic Support Obligations as defined by 11          Yes ○  No ●
    U.S.C § 101(14A)?
m.  If yes, have you made all Domestic Support Obligation payments?          Yes ○  No ○  N/A ●

**Privacy Act Statement**

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107. The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6). The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith. This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law. Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records." *See* 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006). A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm. Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee. 11 U.S.C. § 1112(b)(4)(F).

**<u>I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.</u>**

Mark Shapiro                                                Mark Shapiro, Chief Restructuring Officer
Signature of Responsible Party                              Printed Name of Responsible Party
Chief Restructuring Officer                                 10/29/2021
Title                                                       Date

**CASE NAME:**       **Limetree Bay Refining Operating, LLC**
**CASE NUMBER:**     **21-32355 (Jointly Administered under Lead Case No.: 21-32351)**

### Notes to the Monthly Operating Report

**General:**

On July 12, 2021 (the "Petition Date"), Limetree Bay Services, LLC ("Limetree") filed a voluntary petition with the United States Bankruptcy Court under Chapter 11 of the Bankruptcy Code [Case No.: 21-32351], along with five (5) affiliated entities (Affiliated Entities"). The debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067);  and Limetree Bay Refining Marketing, LLC (9222); (collectively, the "Debtors" or "Jointly Administered Debtors"). The bankruptcy filings of Limetree and the Affiliated Entities are jointly administered under Case No. 21-32351.

On or about June 17, 2021, the Jointly Administered Debtors retained B. Riley as chief restructuring officer ("CRO"). Mark Shapiro, as principal representative of B. Riley in its capacity, serves as CRO to the Jointly Administered Debtors.

Debtor-in-Possession Financial Statements - The accompanying schedules herein are unaudited, preliminary, and may not comply with generally accepted accounting principles in the United States of America ("U.S. GAAP") in all material respects.

The Monthly Operating Report ("MOR") is limited in scope, covers a limited time period, and has been prepared solely for the purpose of complying with the monthly reporting requirements of the Bankruptcy Court and the United States Trustee.  The information presented herein has not been subjected to all procedures that would typically be applied to financial information presented in accordance with U.S. GAAP. Upon the application of such procedures, the financial information could be subject to changes, and these changes could be material. The information furnished in this MOR includes normal recurring adjustments, but does not include all of the adjustments that would typically be made for interim financial statements in accordance with U.S. GAAP.

Reservation of Rights: Given the complexity of the Debtors' business, inadvertent errors, omissions or over inclusions may have occurred. Accordingly, the Debtors hereby reserve all of their rights to dispute the validity, status, enforceability, or executory nature of any claim amount, representation or other statement in this MOR and reserve the right to amend or supplement this MOR, if necessary, but shall be under no obligation to do so.

### September 1-30, 2021 Monthly Operating Report:

**(1)**  The Reporting Period for this MOR is September 1-30, 2021, and the financial statements referenced herein cover the same time period.

**(2)**  The Financial Statements are reported on an Accrual Basis. Cash Receipts & Disbursements are reported on a Cash Basis.

**(3)**  The CRO, Mark Shapiro, has signed this MOR.  Mr. Shapiro is an authorized signatory for the Debtor. In reviewing and signing the MOR, Mr. Shapiro has relied upon the efforts, statements and representations of various personnel employed by the Debtor and the Debtor's advisors. Mr. Shapiro has not (and could not have) personally verified the accuracy of each statement and representation contained in the MOR, including statements and representations concerning amounts owed to creditors, classification of such amounts, and other attached information.

**(4)**  MOR Part 2, d - Total Current Assets includes Cash and Accounts Receivable.

**(5)**  MOR Part 2, e - Total Assets includes Current Assets.

**(6)**  MOR Part 2, f - Post-Petition Payables (excluding taxes) is comprised of Trade Payables. The net increase in total liabilities from the previous reporting period is $3,581,581.30.

**(7)**  MOR Part 2, k-m - Amounts are per the Debtor's bankruptcy schedules and are subject to adjustment once the claims process has been completed by the CRO, which includes, but is not limited to, examining, determining the validity of and objecting to any disputed, contingent, unliquidated and filed claims.

**(8)**  MOR Part 2, k-o - As of the time of this filing, the CRO has not determined with accuracy the amount of the secured and unsecured debt, both of which are components of ending net equity/net worth.  Accordingly, the CRO makes no representations regarding the accuracy of the form-calculated net equity/net worth of the Debtor.

**(9)**  MOR Part 7, i - See attached the schedule of insurance in effect for the Jointly Administered Debtors.

**Attachments to MOR:**

**A.**  Financial Statements (unaudited)

**B.**  Statement of Cash Receipts and Disbursements

**C.**  Bank Account Schedule, bank statements and bank reconciliations

**D.**  Schedule of Insurance in effect as of September 30, 2021 for the Jointly Administered Debtors

## STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS
### FOR THE PERIOD BEGINNING <u>September 1, 2021</u> AND ENDING <u>September 30,2021</u>

Name of Debtor: Limetree Bay Refining Operating, LLC      Case Number:   21-32355
Date of Petition:   July 12, 2021

| | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|
| **1. FUNDS AT BEGINNING OF PERIOD** | $          5,793.78 | $          20,962.36 |
| **2. RECEIPTS:** | | |
| A. Cash Sales | - | - |
| Minus: Cash Refunds | - | - |
| Net Cash Sales | - | - |
| B. Accounts Receivable | - | - |
| C. Other Receipts | 2,634,145.54 | 8,106,342.86 |
| (If you receive rental income, you must attach a rent roll) | | |
| **3. TOTAL RECEIPTS (Lines 2A+2B+2C)** | 2,634,145.54 | 8,106,342.86 |
| **4. TOTAL FUNDS AVAILABLE FOR OPERATIONS (Line 1 + Line 3)** | 2,639,939.32 | 8,127,305.22 |
| **5. DISBURSEMENTS** | | |
| A.   Advertising | - | - |
| B.   Bank Charges & Fees | 287.96 | 796.24 |
| C.   Contract Labor | - | - |
| D.   Fixed Asset Payments (not incl. in "N") | - | - |
| E.   Insurance | - | - |
| F.   Inventory Payments | - | - |
| G.   Leases & Contracts | - | - |
| H.   Manufacturing Supplies | - | - |
| I.   Office Supplies | - | - |
| J.   Payroll | 1,611,641.58 | 4,904,105.32 |
| K.   Professional Fees (Accounting & Legal) | - | - |
| L.   Rent | - | - |
| M.   Repairs & Maintenance | - | - |
| N.   Secured Creditor Payments | - | - |
| O.   Taxes Paid - Payroll | 501,125.66 | 1,696,585.91 |
| P.   Taxes Paid - Sales & Use | - | - |
| Q.   Taxes Paid - Other | - | - |
| R.   Telephone | - | - |
| S.   Travel & Entertainment | - | - |
| T.   U.S. Trustee | - | - |
| U.   Utilities | - | - |
| V.   Vehicle Expenses | - | - |
| W.   Other Operating Expenses | 515,606.73 | 1,514,540.36 |
| **6. TOTAL DISBURSEMENTS (Sum of 5A thru W)** | 2,628,661.93 | 8,116,027.83 |
| **7. ENDING BALANCE (Line 4 Minus Line 6)** | $          11,277.39 | $          11,277.39 |

### STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS (CONT'D.)

#### Detail of Other Receipts and Other Disbursements

**OTHER RECEIPTS:**

Describe Each Item of Other Receipt and List Amount of Receipt.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| Transfers to/from Limetree Bay Refining, LLC | $ 2,634,145.54 | $ 8,106,342.48 |
| Limetree Bay Terminal Services | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | $ 2,634,145.54 | $ 8,106,342.48 |

**"Other Receipts" includes Loans from Insiders and other sources (i.e. Officer/Owner, related parties directors, related corporations, etc.). Please describe below:**

| **Loan Amount** | **Source of Funds** | **Purpose** | **Repayment Schedule** |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**OTHER DISBURSEMENTS:**

Describe Each Item of Other Disbursement and List Amount of Disbursement.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| Employee Benefits | $ 515,606.73 | $ 1,508,409.59 |
| Wage Garnishments | - | 6,130.77 |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | $ 515,606.73 | $ 1,514,540.36 |

**Limetree Bay Refining Operating, LLC**
**Balance Sheet**
**September 30, 2021**

| | 9/30/2021 |
|---|---|
| TOTAL ASSETS | |
| | |
| 0000110500 LBRO OPERATING ACCOUNT - ORIENTAL - 8202040215 | 601.35 |
| 0000110510 LBRO PAYROLL ACCOUNT - ORIENTAL - 8202040216 | 10,676.04 |
| *CASH & CASH EQUIVALENTS | 11,277.39 |
| | |
| 0000150500 Intercompany A/R | 97,775,798.03 |
| *ACCOUNTS RECEIVABLE - AFFILIATE | 97,775,798.03 |
| **TOTAL CURRENT ASSETS | 97,787,075.42 |
| | |
| **** TOTAL ASSETS | 97,787,075.42 |
| | |
| TOTAL LIABILITIES AND MEMBERS' EQUITY | |
| | |
| TOTAL LIABILITIES | |
| | |
| 0000235500 Intercompany A/P | (119,014,936.04) |
| *AFFILIATE PAYABLE, NET | (119,014,936.04) |
| | |
| 0000230010 ACCRUED PAYROLL | (53,847.10) |
| 0000230011 ACCRUED BONUS | (4,043,803.92) |
| *ACCRUED LIABILITIES | (4,097,651.02) |
| **TOTAL CURRENT LIABILITIES | (123,112,587.06) |
| | |
| *** TOTAL LIABILITIES | (123,112,587.06) |
| | |
| TOTAL MEMBERS' EQUITY | |
| | |
| 0000320010 MEMBERS INITIAL INVESTMENT | (16,518,717.47) |
| *MEMBERS' INITIAL EQUITY | (16,518,717.47) |
| **MEMBERS' EQUITY | (16,518,717.47) |
| | |
| 0000380020 RETAINED  EARNINGS | 7,261,729.35 |
| **RETAINED EARNINGS / ACCUMULATED DEFICIT | 7,261,729.35 |
| | |
| **PROFIT/LOSS IN CURRENT YEAR | 34,582,499.76 |
| | |
| | 41,844,229.11 |
| *** TOTAL MEMBERS' EQUITY | 25,325,511.64 |
| | |
| **** TOTAL LIABILITIES & MEMBERS' EQUITY | (97,787,075.42) |

**Limetree Bay Refining Operating, LLC**
**Income Statement**
**For the month ending September 30, 2021**

| | September 1-30, 2021 Unaudited |
|---|---|
| INCOME STATEMENT | |
| | |
| 0000601010 SALARIES AND WAGES (REGULAR & EXECUTIVE) | 988,085.63 |
| 0000601013 CAPITALIZED LABOR TO PROJECTS OFFSET | 0.00 |
| 0000601014 SALARIES AND WAGES-TERMINATIONS/SEVERANCE | 0.00 |
| 0000601020 VARIABLE COMPENSATION | 0.00 |
| 0000601025 SALARIES AND WAGES-OVERTIME WAGES | 211,073.31 |
| 0000601052 PAYROLL TAXES ALLOCATED  - FICA | 73,871.59 |
| 0000601053 TAXES-FEDERAL UNEMPLOYMENT | 12.25 |
| 0000601054 TAXES-STATE UNEMPLOYMENT | 874.79 |
| SALARIES AND WAGES | 1,273,917.57 |
| | |
| 0000601051 EMPLOYEE BENEFITS-HOSPITALIZATION/MEDICAL | 217,537.01 |
| 0000601056 EMPLOYEE BENEFITS-RETIREMENT PLAN | (13,639.76) |
| BENEFITS | 203,897.25 |
| | |
| 0000601057 RELOCATION | (45,796.01) |
| TRAVEL | (45,796.01) |
| | |
| 0000601064 EDUCATIONAL ASSISTANCE | 0.00 |
| TRAINING & EDUCATION | 0.00 |
| | |
| 0000601063 OTHER EMPLOYEE EXPENSE | 0.00 |
| OTHER | 0.00 |
| | |
| EMPLOYEE EXPENSES | 1,432,018.81 |
| 0000612020 FINES & PENALTY | 0.00 |
| TAXES AND FEES | 0.00 |
| | |
| OTHER O&M | 0.00 |
| | |
| OPERATING EXPENSES | 1,432,018.81 |
| | |
| 0000801010 SALARIES AND WAGES (REGULAR & EXECUTIVE) | 226,306.50 |
| 0000801013 CAPITALIZED LABOR | 0.00 |
| 0000801014 SALARIES AND WAGES-TERMINATIONS/SEVERANCE | 0.00 |
| 0000801020 VARIABLE COMPENSATION | 16,687.50 |
| 0000801025 SALARIES AND WAGES-OVERTIME WAGES | 1,174.56 |
| 0000801052 PAYROLL TAXES ALLOCATED  - FICA | 6,047.44 |
| 0000801053 TAXES-FEDERAL UNEMPLOYMENT | 3.77 |
| 0000801054 TAXES-STATE UNEMPLOYMENT | 120.26 |
| SALARIES AND WAGES | 250,340.03 |

**Limetree Bay Refining Operating, LLC**
**Income Statement**
**For the month ending September 30, 2021**

| | September 1-30, 2021 Unaudited |
|---|---|
| 0000801051 EMPLOYEE BENEFITS-HOSPITALIZATION/MEDICAL | 43,452.41 |
| 0000801056 EMPLOYEE BENEFITS-SAVINGS PLAN | (5,732.34) |
| BENEFITS | 37,720.07 |
| | |
| 0000801057 RELOCATION | 866,765.39 |
| TRAVEL | 866,765.39 |
| | |
| 0000801064 EDUCATIONAL ASSISTANCE | 0.00 |
| TRAINING & EDUCATION | 0.00 |
| | |
| EMPLOYEE EXPENSES | 1,154,825.49 |
| 0000808043 TELECOMMUNICATIONS EXP-CELLULAR | 13.39 |
| COMMUNICATION EXPENSES | 13.39 |
| COMMUNICATIONS AND IT EXPENSES | 13.39 |
| | |
| 0000812015 BANK CHARGES | 287.96 |
| TAXES AND FEES | 287.96 |
| | |
| OTHER O&M | 301.35 |
| | |
| GENERAL ADMINISTRATION EXPENSE | 1,155,126.84 |
| | |
| **TOTAL EXPENSES | 2,587,145.65 |
| | |
| ***OPERATING INCOME | (2,587,145.65) |
| | |
| ****NET INCOME (LOSS) | (2,587,145.65) |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Limetree Bay Refining Operating, LLC**

**Schedule of Bank Accounts - As of September 30, 2021**

| Description | Operating Account | Payroll Account | Total - All Debtor Accounts |
|---|---|---|---|
| Account Name | Limetree Bay Refining Operating, LLC | Limetree Bay Refining Operating, LLC | |
| Bank Name | Oriental Bank | Oriental Bank | |
| Account Number - Last Four Digits | 0215 | 0216 | |
| Beginning book balance (as of 09/01/21) | $          693.79 | $          5,099.99 | $          5,793.78 |
| Plus:  Deposits | - | 2,634,145.54 | 2,634,145.54 |
| Subtotal book balance | 693.79 | 2,639,245.53 | 2,639,939.32 |
| | | | |
| Less:  Disbursements | (92.44) | (2,628,569.49) | (2,628,661.93) |
| Transfers | - | - | - |
| Other: | - | - | - |
| **Ending book balance (as of 09/30/21)** | **$          601.35** | **$          10,676.04** | **$          11,277.39** |

# Oriental

P.O. Box 195115
San Juan, PR 00919-5115

Last statement: August 31, 2021
This statement: September 30, 2021
Total days in statement period: 30

Page 1 of 2
          0215
(0)

Direct inquiries to:
787-620-0000

LIMETREE BAY REFINING OPERATING LLC
1 ESTATE HOPE CHRISTIANSTED
ST CROIX VI 00820-5652

Oriental Bank
254 Munoz Rivera Ave
Hato Rey PR 00918

## Premium Business

| | | | |
|---|---|---|---|
| Account number | .0215 | Beginning balance | $693.79 |
| Low balance | $601.35 | Total additions | .00 |
| Average balance | $662.98 | Total subtractions | 92.44 |
| | | Ending balance | $601.35 |

**DEBITS**

| Date | Description | Subtractions |
|---|---|---|
| 09-21 | ' Maintenance Fee | 92.44 |
| | ANALYSIS ACTIVITY FOR 08/21 | |

**DAILY BALANCES**

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 08-31 | 693.79 | 09-21 | 601.35 | | |

**OVERDRAFT/RETURN ITEM FEES**

| | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

*Thank you for banking with Oriental Bank*

**LIMETREE BAY REFINING OPERATING**
**LBRO Operating Account - 110500**
**BA         0215**
**September 2021**

|  | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 8/31/2021 | $ | 693.79 |
| Deposits |  | $ | - |
| ACH / Debits |  | $ | - |
| Wires |  | $ | - |
| Bank Charges |  | $ | (92.44) |
| Checks Cleared |  | $ | - |
| Intransit Deposit |  | $ | - |
| Ending Balance per Bank | 9/30/2021 | $ | 601.35 |
| Opening Balance  per Book | 8/31/2021 |  | $693.79 |
| Deposits |  | $ | - |
| ACH / Debits |  | $ | - |
| Wires |  | $ | - |
| Bank Charges |  | $ | (92.44) |
| Checks Issued |  | $ | - |
| Ending Balance per Book | 9/30/2021 | $ | 601.35 |
| Outstanding Checks |  | $ | - |
|  |  | $ | 601.35 |
|  |  | $ | 0.00 |

Reconciled by          George Southwell

Date:          10/1/2021

Approved by

Date:

# Oriental

P.O. Box 195115
San Juan, PR 00919-5115

Last statement: August 31, 2021
This statement: September 30, 2021
Total days in statement period: 30

Page 1 of 3
0216
(0)

Direct inquiries to:
787-620-0000

LIMETREE BAY REFINING OPERATING LLC
1 ESTATE HOPE CHRISTIANSTED
ST CROIX VI 00820-5652

Oriental Bank
254 Munoz Rivera Ave
Hato Rey PR 00918

## Premium Business

| | | | |
|---|---|---|---|
| Account number | 0216 | Beginning balance | $5,099.99 |
| Low balance | $5,099.99 | Total additions | 2,634,145.54 |
| Average balance | $85,855.68 | Total subtractions | 2,628,569.49 |
| | | Ending balance | $10,676.04 |

**DEBITS**

| Date | Description | Subtractions |
|---|---|---|
| 09-08 | ' Preauthorized Wd | 9,262.85 |
| | LIMETREE BA 0216 PAYMENT 210908 | |
| 09-08 | ' Wire Transfer-Out | 233,964.56 |
| | WIRE OUT -ADP LLC | |
| | 202109080000927 | |
| 09-08 | ' Wire Transfer-Out | 761,439.68 |
| | WIRE OUT -ADP LLC | |
| | 202109080000926 | |
| 09-09 | ' Preauthorized Wd | 93,623.87 |
| | ASCENSUS TRUST RET PLAN 210909 | |
| 09-10 | ' Preauthorized Wd | 49,000.00 |
| | OPTUM BANK DIR DEP 210910 | |
| 09-10 | ' Preauthorized Wd | 257,945.54 |
| | UNITED HEALTHCAR EDI PAYMTS 210910 | |
| | 905707786175 | |
| 09-21 | ' Maintenance Fee | 195.52 |
| | ANALYSIS ACTIVITY FOR 08/21 | |
| 09-22 | ' Preauthorized Wd | 4,852.85 |
| | LIMETREE BA 0216 PAYMENT 210922 | |
| 09-22 | ' Wire Transfer-Out | 259,334.98 |
| | WIRE OUT -ADP LLC | |
| | 202109220001079 | |
| 09-22 | ' Wire Transfer-Out | 817,404.45 |
| | WIRE OUT -ADP LLC | |
| | 202109220001074 | |

0 -121231

| | |
|---|---|
| LIMETREE BAY REFINING OPERATING LLC | Page 2 of 3 |
| September 30, 2021 | 0216 |

| Date | Description | Subtractions |
|---|---|---|
| 09-24 | ' Preauthorized Wd | 97,433.74 |
| | ASCENSUS TRUST RET PLAN 210924 | |
| 09-27 | ' Wire Transfer-Out | 7,826.12 |
| | WIRE OUT -ADP LLC | |
| | 202109270000940 | |
| 09-27 | ' Wire Transfer-Out | 32,797.45 |
| | WIRE OUT -ADP LLC | |
| | 202109270000937 | |
| 09-28 | ' Preauthorized Wd | 3,487.88 |
| | ASCENSUS TRUST RET PLAN 210928 | |

**CREDITS**

| Date | Description | Additions |
|---|---|---|
| 09-03 | ' Cash Mgmt Trsfr Cr | 257,945.54 |
| | REF 2461310L FUNDS TRANSFER FRMDEP _ _ _ _ 0267 | |
| | FROM PER JAMES EMAIL SEPTEMBER 3 2021 | |
| 09-08 | ' Cash Mgmt Trsfr Cr | 1,149,900.00 |
| | REF 2511148L FUNDS TRANSFER FRMDEP     0267 | |
| | FROM PER SHOHEB EMAIL SEPTEMBER 8 2021 | |
| 09-22 | ' Cash Mgmt Trsfr Cr | 1,186,300.00 |
| | REF 2651303L FUNDS TRANSFER FRMDEP     0267 | |
| | FROM PER SHOHEB EMAIL SEPTEMEBER 21 2021 | |
| 09-24 | ' Cash Mgmt Trsfr Cr | 40,000.00 |
| | REF 2671448L FUNDS TRANSFER FRMDEP     0267 | |
| | FROM PER SHOHEB EMAIL SEPTEMBER 24 2021 | |

**DAILY BALANCES**

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 08-31 | 5,099.99 | 09-10 | 7,709.03 | 09-27 | 14,163.92 |
| 09-03 | 263,045.53 | 09-21 | 7,513.51 | 09-28 | 10,676.04 |
| 09-08 | 408,278.44 | 09-22 | 112,221.23 | | |
| 09-09 | 314,654.57 | 09-24 | 54,787.49 | | |

**OVERDRAFT/RETURN ITEM FEES**

| | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

*Thank you for banking with Oriental Bank*

**LIMETREE BAY REFINING OPERATING**
**LBRO Payroll Account - 110510**
**BA        0216**
**September 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 8/31/2021 | $ | 5,099.99 |
| Deposits | | $ | 2,634,145.54 |
| ACH / Debits | | $ | (515,606.73) |
| Wires | | $ | (2,112,767.24) |
| Bank Charges | | $ | (195.52) |
| Checks Cleared | | $ | - |
| Intransit Payment | | $ | - |
| Ending Balance per Bank | 9/30/2021 | $ | 10,676.04 |
| Opening Balance  per Book | 8/31/2021 | $ | 5,099.99 |
| Deposits | | $ | 2,634,145.54 |
| ACH / Debits | | $ | (515,606.73) |
| Wires | | $ | (2,112,767.24) |
| Bank Charges | | $ | (195.52) |
| Checks Issued | | $ | - |
| Ending Balance per Book | 9/30/2021 | $ | 10,676.04 |
| Intransit Payroll Related Payments | | $ | - |
| Intransit Payroll Payment | | $ | - |
| Outstanding Checks | | $ | - |
| Ending Balance per Bank | | $ | 10,676.04 |
| | | $ | - |

| | | |
|---|---|---|
| Reconciled by | George Southwell | |
| Date: | 10/4/2021 | |
| Approved by | | |
| Date: | | |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of September 30, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC[5] | AIG/National Union Fire Insurance Co | Combined Property | Primary $250M | 026-1001312 | 2021.09.01 |
| Limetree Bay Refining, LLC | Allianz Global Risk US Insurance Company | Combined Property | Primary $1.25BN | USN00023920 | 2021.12.01 |
| Limetree Bay Refining, LLC | Axis (Endorsement) | Builder's Risk | $50M | EAU646295/01/2020 | 2021.12.01 |
| Limetree Bay Refining, LLC[5] | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 92SRD102973 | 2021.09.01 |
| Limetree Bay Refining, LLC[5] | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 42-PRP-312023-01 | 2021.09.01 |
| Limetree Bay Refining, LLC | CIN 318/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC3 | Convex Insurance UK Limited | Combined Property | Primary $1.25BN (reduced to a limit of $250 million on August 20, 2021) | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Services, LLC | Liberty | Worker's Comp | | WCC-641-444917-020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hannover Re/HDI Global Specialty SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Helvetia/Helvetia Swiss Insurance Co in Liechtenstein Ltd | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | HSIC/Houston Specialty Insurance Company | Combined Property | $150M XS 50M | PRO440373 | 2021.12.01 |
| Limetree Bay Refining, LLC | LSM/Liberty Specialty Markets Agency Limited | Combined Property | $100M XS $100M | LSMAEN143232A | 2021.12.01 |
| Limetree Bay Refining, LLC | Munich Re/Great Lakes Insurance SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | PICC/Guardian General Insurance | Combined Property | $100M XS $100M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | QBE/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Rokstone/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC[5] | SCOR (3)/General Security Indemnity Company of Arizona | Combined Property | Primary $1.25BN | FA007943720201 | 2021.09.01 |
| Limetree Bay Refining, LLC | Sompo/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Swiss Re/Westport Insurance Company | Combined Property | Primary $500M | OMP 2000425-00 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of September 30, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC[5] | Validus Specialty/Lloyds of London | Combined Property | Primary $250M | AJH292893A20 | 2021.09.01 |
| Limetree Bay Refining, LLC | Westchester Surplus Lines Ins Co/Starr Technical Risks Agency, Inc | Combined Property | Primary $500M | EPRN18215263 | 2021.12.01 |
| Limetree Bay Refining, LLC | WRB/Guardian General Insurance | Combined Property | $50M XS $50M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Zurich/Zurich American Insurance Company | Combined Property | Primary $100M | OGR 1296457-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arcadian/Ark/Helix Bermuda | Builder's Risk | $25M xs $100M | NAMBM2100005 | 2022.06.01 |
| Limetree Bay Refining, LLC | Allianz | Refinery Excess Liability | $15M xs $53M | USL00880520 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz | Environmental Liability | $15M xs $85M | USL00873320 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty | Refinery Primary Liability | | AS6-641-444917-010 | 2021.12.01 |
| Limetree Bay Refining, LLC | Travelers Syndicate | Refinery Primary Liability | | ENCAS2000012 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer/Apollo | Refinery Excess Liability | $15M | ENCAS2000011 | 2021.12.01 |
| Limetree Bay Refining, LLC | Westchester | Refinery Excess Liability | $3M xs $25M | G71809808001 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Refinery Excess Liability | $25M xs $28M | 4380100 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer | Refinery Excess Liability | $11M po $22M xs $68M | ENCAS2000020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lex-London | Refinery Excess Liability | $11M po $22M xs $68M | 62785689 | 2021.12.01 |
| Limetree Bay Refining, LLC | OSL | Refinery Excess Liability | $10M xs $90M | EXS-154724-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | AXA XL Bermuda | Refinery Excess Liability | $25M xs $125M | XLUMB-229978 | 2021.12.01 |
| Limetree Bay Refining, LLC | OCIL Bermuda | Refinery Excess Liability | $25M po $40M xs $150M | U920968-0620 | 2021.12.01 |
| Limetree Bay Refining, LLC | Sompo Bermuda | Refinery Excess Liability | $15M po $40M xs $150M | EXC30001524800 | 2021.12.01 |
| Limetree Bay Refining, LLC | Argo Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | ARGO-CAS-OR-001484 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arch Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | URP0065257-00 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of September 30, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC | Markel Bermuda | Refinery Excess Liability | $12.5M po $50M xs $190M | 1454233-11636-UMB-2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hamilton Bermuda | Refinery Excess Liability | $7.5M po $50M xs $190M | CX20-9216 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chubb Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LBR-2144/XS004 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LSMAEC119907A | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $1M | ENVP0000296-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $9M xs $1M | ENVX0000256-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Environmental Liability | $25M xs $10M | 262704 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ascot | Environmental Liability | $25M xs $35M | ENXP2110000428-01 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel | Environmental Liability | $25M xs $60M | MKLV4EFX102259 | 2021.12.01 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $5M | 8261-8347 | 2022.04.20 |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000623319211 | 2022.04.20 |
| Limetree Bay Refining, LLC | Wesco Insurance Company | Executive Risk | $5M | EUW1909831 00 | 2022.04.20 |
| | | | | | |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000622392201 | 2027.04.20 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $5M | 8247-1536 | 2027.04.20 |
| Limetree Bay Refining, LLC | First Liberty Insurance Co | Auto Liability | $2M | AS6-641-444917-010 | 2021.12.01 |

**Notes:**

**(1)** As of September 30, 2021, insurance premiums are paid in full except for the items discussed in footnotes 2, 3 and 4.

**(2)** The auto liability policy will be audited during December 2021. A premium will be due for autos assigned to LBR for the period from June 1, 2021 through December 31, 2021

**(3)** Audit premiums are expected to be invoiced for non-current insurance policies including the Builders All Risk policy and OCIP. As of the filing of the monthly operating report, the audit amounts have not been determined.

**(4)** Premium obligations outstanding as of August 31, 2021 for LBR are as follows:

   a. PFA Loan 2055: Balance due for $266,145

   b. PFA Loan 2303: Balance due for $536,580

**(5)** September 1, 2021 was an expiration date for 36.5% of the property insurance program insuring the Refinery. It was not replaced or renewed

**(6)** December 1, 2021 is an expiration date for the remaining 63.5% of the property insurance program insuring the Refinery. It is not presently being marketed, LBR assumes the risk for 30% of a $50 million primary section of the insurance program.

# UNITED STATES BANKRUPTCY COURT

SOUTHERN   DISTRICT OF   TEXAS

HOUSTON DIVISION

|  |  |  |  |
|---|---|---|---|
| In Re. LIMETREE BAY REFINING MARKETING LLC | § | Case No. | 21-32356 |
|  | § |  |  |
|  | § | Lead Case No. | 21-32351 |
| Debtor(s) | § |  |  |
|  |  | ☒ Jointly Administered | |

## Monthly Operating Report

Chapter 11

Reporting Period Ended: 09/30/2021

Petition Date: 07/12/2021

Months Pending: 3

Industry Classification: 3 2 4 1

Reporting Method:          Accrual Basis ⊙          Cash Basis ○

Debtor's Full-Time Employees (current):          0

Debtor's Full-Time Employees (as of date of order for relief):          0

**Supporting  Documentation** (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

☒   Statement of cash receipts and disbursements
☒   Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
☒   Statement of operations (profit or loss statement)
☐   Accounts receivable aging
☐   Postpetition liabilities aging
☐   Statement of capital assets
☐   Schedule of payments to professionals
☐   Schedule of payments to insiders
☒   All bank statements and bank reconciliations for the reporting period
☐   Description of the assets sold or transferred and the terms of the sale or transfer

/s/ Elizabeth A. Green
Signature of Responsible Party

10/29/2021
Date

Elizabeth A. Green
Printed Name of Responsible Party

200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, FL 32801
Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

Debtor's Name  LIMETREE BAY REFINING MARKETING LLC                    Case No.  21-32356

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a. Cash balance beginning of month | $42,411 | |
| b. Total receipts (net of transfers between accounts) | $0 | $-928,760 |
| c. Total disbursements (net of transfers between accounts) | $112 | $198,233 |
| d. Cash balance end of month (a+b-c) | $42,299 | |
| e. Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f. Total disbursements for quarterly fee calculation (c+e) | $112 | $198,233 |

| Part 2:  Asset and Liability Status (Not generally applicable to Individual Debtors. See Instructions.) | Current Month |
|---|---|
| a. Accounts receivable (total net of allowance) | $199,738,254 |
| b. Accounts receivable over 90 days outstanding (net of allowance) | $197,155,039 |
| c. Inventory    (Book ⦿  Market ◯   Other ◯    (attach explanation)) | $207,903,573 |
| d. Total current assets | $408,329,417 |
| e. Total assets | $448,887,530 |
| f. Postpetition payables (excluding taxes) | $8,081,986 |
| g. Postpetition payables past due (excluding taxes) | $4,104,726 |
| h. Postpetition taxes payable | $0 |
| i. Postpetition taxes past due | $0 |
| j. Total postpetition debt (f+h) | $8,081,986 |
| k. Prepetition secured debt | $1,056,353,789 |
| l. Prepetition priority debt | $0 |
| m. Prepetition unsecured debt | $198,765,709 |
| n. Total liabilities (debt) (j+k+l+m) | $1,263,201,484 |
| o. Ending equity/net worth (e-n) | $-814,313,954 |

| Part 3:  Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a. Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b. Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c. Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4:  Income Statement (Statement of Operations) (Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a. Gross income/sales (net of returns and allowances) | $0 | |
| b. Cost of goods sold (inclusive of depreciation, if applicable) | $71,854 | |
| c. Gross profit (a-b) | $-71,854 | |
| d. Selling expenses | $4,274,164 | |
| e. General and administrative expenses | $97,653 | |
| f. Other expenses | $1,667,500 | |
| g. Depreciation and/or amortization (not included in 4b) | $0 | |
| h. Interest | $0 | |
| i. Taxes (local, state, and federal) | $0 | |
| j. Reorganization items | $0 | |
| k. Profit (loss) | $-6,111,171 | $-13,263,877 |

| Debtor's Name | LIMETREE BAY REFINING MARKETING LLC | Case No.  21-32356 |
|---|---|---|

### Part 5:  Professional Fees and Expenses

| | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|
| a. | Debtor's professional fees & expenses (bankruptcy)  *Aggregate Total* | | | | |
| | *Itemized Breakdown by Firm* | | | | |
| | Firm Name / Role | | | | |
| i | | | | | |
| ii | | | | | |

| | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy)  *Aggregate Total* | | | | |
| | *Itemized Breakdown by Firm* | | | | |
| | Firm Name / Role | | | | |
| i | | | | | |
| ii | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | |

### Part 6:  Postpetition Taxes

| | | Current Month | Cumulative |
|---|---|---|---|
| a. | Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. | Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. | Postpetition employer payroll taxes accrued | $0 | $0 |
| d. | Postpetition employer payroll taxes paid | $0 | $0 |
| e. | Postpetition property taxes paid | $0 | $0 |
| f. | Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. | Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

### Part 7: Questionnaire - During this reporting period:

a.  Were any payments made on prepetition debt?  (if yes, see Instructions)   Yes ◯   No ◉

b.  Were any payments made outside the ordinary course of business without court approval?  (if yes, see Instructions)   Yes ◯   No ◉

c.  Were any payments made to or on behalf of insiders?   Yes ◯   No ◉

d.  Are you current on postpetition tax return filings?   Yes ◉   No ◯

e.  Are you current on postpetition estimated tax payments?   Yes ◉   No ◯

f.  Were all trust fund taxes remitted on a current basis?   Yes ◉   No ◯

g.  Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions)   Yes ◉   No ◯

h.  Were all payments made to or on behalf of professionals approved by the court?   Yes ◯   No ◯   N/A ◉

i.  Do you have:   Worker's compensation insurance?   Yes ◉   No ◯

If yes, are your premiums current?   Yes ◉   No ◯   N/A ◯   (if no, see Instructions)

Casualty/property insurance?   Yes ◉   No ◯

If yes, are your premiums current?   Yes ◉   No ◯   N/A ◯   (if no, see Instructions)

General liability insurance?   Yes ◉   No ◯

If yes, are your premiums current?   Yes ◉   No ◯   N/A ◯   (if no, see Instructions)

j.  Has a plan of reorganization been filed with the court?   Yes ◯   No ◉

Debtor's Name LIMETREE BAY REFINING MARKETING LLC                    Case No. 21-32356

k.  Has a disclosure statement been filed with the court?          Yes ◯   No ◉
l.  Are you current with quarterly U.S. Trustee fees as            Yes ◉   No ◯
    set forth under 28 U.S.C. § 1930?

| Part 8: Individual Chapter 11 Debtors (Only) |
|---|

| | | |
|---|---|---|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |

l.  Are you required to pay any Domestic Support Obligations as defined by 11     Yes ◯   No ◉
    U.S.C § 101(14A)?
m.  If yes, have you made all Domestic Support Obligation payments?              Yes ◯   No ◯   N/A ◉

### Privacy Act Statement

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107. The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6). The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith. This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law. Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records." *See* 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006). A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm. Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee. 11 U.S.C. § 1112(b)(4)(F).

**<u>I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.</u>**

Mark Shapiro                                              Mark Shapiro, Chief Restructuring Officer
_____                          _____
Signature of Responsible Party                           Printed Name of Responsible Party

Chief Restructuring Officer                              10/29/2021
_____                          _____
Title                                                    Date

| | |
|---|---|
| **CASE NAME:** | **Limetree Bay Refining Marketing, LLC** |
| **CASE NUMBER:** | **21-32356 (Jointly Administered under Lead Case No.: 21-32351)** |

### Notes to the Monthly Operating Report

**General:**

On July 12, 2021 (the "Petition Date"), Limetree Bay Services, LLC ("Limetree") filed a voluntary petition with the United States Bankruptcy Court under Chapter 11 of the Bankruptcy Code [Case No.: 21-32351], along with five (5) affiliated entities (Affiliated Entities"). The debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067);  and Limetree Bay Refining Marketing, LLC (9222); (collectively, the "Debtors" or "Jointly Administered Debtors"). The bankruptcy filings of Limetree and the Affiliated Entities are jointly administered under Case No. 21-32351.

On or about June 17, 2021, the Jointly Administered Debtors retained B. Riley as chief restructuring officer ("CRO"). Mark Shapiro, as principal representative of B. Riley in its capacity, serves as CRO to the Jointly Administered Debtors.

Debtor-in-Possession Financial Statements - The accompanying schedules herein are unaudited, preliminary, and may not comply with generally accepted accounting principles in the United States of America ("U.S. GAAP") in all material respects.

The Monthly Operating Report ("MOR") is limited in scope, covers a limited time period, and has been prepared solely for the purpose of complying with the monthly reporting requirements of the Bankruptcy Court and the United States Trustee.  The information presented herein has not been subjected to all procedures that would typically be applied to financial information presented in accordance with U.S. GAAP. Upon the application of such procedures, the financial information could be subject to changes, and these changes could be material. The information furnished in this MOR includes normal recurring adjustments, but does not include all of the adjustments that would typically be made for interim financial statements in accordance with U.S. GAAP.

Reservation of Rights: Given the complexity of the Debtors' business, inadvertent errors, omissions or other inclusions may have occurred. Accordingly, the Debtors hereby reserve all of their rights to dispute the validity, status, enforceability, or executory nature of any claim amount, representation or other statement in this MOR and reserve the right to amend or supplement this MOR, if necessary, but shall be under no obligation to do so.

### September 1-30, 2021 Monthly Operating Report:

**(1)**  The Reporting Period for this MOR is September 1-30, 2021, and the financial statements referenced herein cover the same time period.

**(2)**  The Financial Statements are reported on an Accrual Basis. Cash Receipts & Disbursements are reported on a Cash Basis.

**(3)**  The CRO, Mark Shapiro, has signed this MOR. Mr. Shapiro is an authorized signatory for the Debtor. In reviewing and signing the MOR, Mr. Shapiro has relied upon the efforts, statements and representations of various personnel employed by the Debtor and the Debtor's advisors. Mr. Shapiro has not (and could not have) personally verified the accuracy of each statement and representation contained in the MOR, including statements and representations concerning amounts owed to creditors, classification of such amounts, and other attached information.

**(4)**  MOR Part 2, d - Total Current Assets includes Cash, Accounts Receivable, Inventory, Prepaid Expenses and  expected insurance refund for $159,562.50.  The expected insurance refund is recorded as a debit to post-petition accounts payable in the debtor's accounting records.

**(5)**  MOR Part 2, e - Total Assets includes Current Assets, Fixed Assets, and Debt Issuance Costs.

**(6)**  MOR Part 2, f - Post-Petition Payables (excluding taxes) is comprised of Trade Payables. The net increase in total liabilities from the previous reporting period is $4,738,111.19.

**(7)**  MOR Part 2, k-m - Amounts are per the Debtor's bankruptcy schedules and are subject to adjustment once the claims process has been completed by the CRO, which includes, but is not limited to, examining, determining the validity of and objecting to any disputed, contingent, unliquidated and filed claims.

**(8)**  MOR Part 2, k-o - As of the time of this filing, the CRO has not determined with accuracy the amount of the secured and unsecured debt, both of which are components of ending net equity/net worth.  Accordingly, the CRO makes no representations regarding the accuracy of the form-calculated net equity/net worth of the Debtor.

**(9)**  MOR Part 7, i - See attached the schedule of insurance in effect for the Jointly Administered Debtors.

**Attachments to MOR:**

**A.**  Financial Statements (unaudited)

**B.**  Statement of Cash Receipts and Disbursements

**C.**  Bank Account Schedule, bank statements and bank reconciliations

**D.**  Schedule of Insurance in effect as of September 30, 2021 for the Jointly Administered Debtors

## STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS
### FOR THE PERIOD BEGINNING September 1, 2021 AND ENDING September 30, 2021

**Name of Debtor:** Limetree Bay Refining Marketing, LLC      **Case Number:** 21-32356
**Date of Petition:** July 12, 2021

| | | CURRENT MONTH | | CUMULATIVE PETITION TO DATE |
|---|---|---:|---|---:|
| **1. FUNDS AT BEGINNING OF PERIOD** | $ | 42,410.92 | $ | 1,169,291.77 |
| **2. RECEIPTS:** | | | | |
| A. Cash Sales | | - | | - |
| Minus: Cash Refunds | | - | | - |
| Net Cash Sales | | - | | - |
| B. Accounts Receivable | | - | | 2,970,729.00 |
| C. Other Receipts | | - | | (3,899,489.29) |
| (If you receive rental income, you must attach a rent roll) | | | | |
| **3. TOTAL RECEIPTS** *(Lines 2A+2B+2C)* | | - | | (928,760.29) |
| **4. TOTAL FUNDS AVAILABLE FOR OPERATIONS** *(Line 1 + Line 3)* | | 42,410.92 | | 240,531.48 |
| **5. DISBURSEMENTS:** | | | | |
| A.  Advertising | | - | | - |
| B.  Bank Charges & Fees | | 112.32 | | 559.38 |
| C.  Contract Labor | | - | | - |
| D.  Fixed Asset Payments (not incl. in "N") | | - | | - |
| E.  Insurance | | - | | 78,768.79 |
| F.  Inventory Payments | | - | | - |
| G.  Leases & Contracts | | - | | - |
| H.  Manufacturing Supplies | | - | | - |
| I.  Office Supplies | | - | | - |
| J.  Payroll | | - | | - |
| K.  Professional Fees (Accounting & Legal) | | - | | - |
| L.  Rent | | - | | - |
| M.  Repairs & Maintenance | | - | | - |
| N.  Secured Creditor Payments | | - | | 118,904.71 |
| O.  Taxes Paid - Payroll | | - | | - |
| P.  Taxes Paid - Sales & Use | | - | | - |
| Q.  Taxes Paid - Other | | - | | - |
| R.  Telephone | | - | | - |
| S.  Travel & Entertainment | | - | | - |
| T.  U.S. Trustee | | - | | - |
| U.  Utilities | | - | | - |
| V.  Vehicle Expenses | | - | | - |
| W.  Other Operating Expenses | | - | | - |
| **6. TOTAL DISBURSEMENTS** *(Sum of 5A thru W)* | | 112.32 | | 198,232.88 |
| **7. ENDING BALANCE** *(Line 4 Minus Line 6)* | $ | 42,298.60 | $ | 42,298.60 |

## STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS (CONT'D.)

### Detail of Other Receipts and Other Disbursements

**OTHER RECEIPTS:**

Describe Each Item of Other Receipt and List Amount of Receipt.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| Transfer to/from Limetree Bay Refining, LLC | $          - | $   (3,899,500.00) |
| Dividends | - | 10.71 |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | $          - | $   (3,899,489.29) |

**"Other Receipts" includes Loans from Insiders and other sources (i.e. Officer/Owner, related parties directors, related corporations, etc.).  Please describe below:**

| Loan Amount | Source of Funds | Purpose | Repayment Schedule |
|---|---|---|---|
| | | | |
| | | | |

**OTHER DISBURSEMENTS:**

Describe Each Item of Other Disbursement and List Amount of Disbursement.

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| | $          - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | - | - |
| | $          - | $          - |

**Limetree Bay Refining Marketing, LLC**
**Balance Sheet**
**September 30, 2021**

| | 9/30/2021 |
|---|---|
| **TOTAL ASSETS** | |
| | |
| 0000110250 REVENUE ACCOUNT - DEUTSCHE BANK - SE1972.1 | 969.42 |
| 0000110260 O & M ACCOUNT - DEUTSCHE BANK - SE1972.2 | 1.49 |
| 0000110800 LBRM OPERATING ACCOUNT - ORIENTAL - 92040986 | 41,327.69 |
| *CASH & CASH EQUIVALENTS | 42,298.60 |
| | |
| 0000120001 A/R TRADE RECEIVABLE RECONCILIATION | 165,733,843.88 |
| 0000120205 Accounts Receivable - BP | 1,849,172.63 |
| **ACCOUNTS RECEIVABLE, TRADE** | **167,583,016.51** |
| *ACCOUNTS RECEIVABLE, NET | **167,583,016.51** |
| | |
| 0000150500 Intercompany A/R | 32,155,237.50 |
| *ACCOUNTS RECEIVABLE - AFFILIATE | **32,155,237.50** |
| | |
| 0000190105 Initial and Ramp-up Margin | 48,582,646.70 |
| 0000190106 J Aron Inventory Financing Netting | (48,582,646.70) |
| *RECEIVABLE UNDER INVEN FINANCING ARRANGEMENT | **0.00** |
| | |
| 0000130320 Inventory - Crude - Product Costs | 148,815,906.12 |
| 0000130330 Inventory - Distillate - Product Costs | 16,991,353.54 |
| 0000130340 Inventory - Fuel Oil - Product Costs | 5,663,869.93 |
| 0000130360 Inventory - Heavy Naphtha - Product Costs | 25,502,091.67 |
| 0000130370 Inventory - Intermediates - Product Costs | 7,434,330.83 |
| 0000130380 Inventory - Light Naphtha - Product Costs | 230,998.45 |
| 0000130390 Inventory - LPG - Product Costs | 1,229,057.41 |
| 0000130405 Inventory - Slop - Product Costs | (0.64) |
| 0000130415 Inventory - VGO - Product Costs | 1,355,878.18 |
| 0000130440 Inventory - ULSD | 680,087.67 |
| *INVENTORY | **207,903,573.16** |
| | |
| 0000140023 PPD INSURANCE - STOCK THROUGHPUT PROPERTY | 404,687.49 |
| **PREPAID INSURANCE** | **404,687.49** |
| | |
| 0000140110 PPD SUNDRY | 81,041.58 |
| **PREPAID OTHER** | **81,041.58** |
| *PREPAID EXPENSES AND OTHER | **485,729.07** |
| | |
| **TOTAL CURRENT ASSETS | **408,169,854.84** |
| | |
| | |
| 0000160250 FIXED ASSETS - NON RECONCILIATION | 36,834,513.36 |
| **OTHER** | **36,834,513.36** |

**Limetree Bay Refining Marketing, LLC**
**Balance Sheet**
**September 30, 2021**

| | 9/30/2021 |
|---|---|
| **PP&E - GROSS** | **36,834,513.36** |
| **PROPERTY, PLANT & EQUIPMENT, NET** | **36,834,513.36** |
| **\*TOTAL PROPERTY, PLANT AND EQUIPMENT, NET** | **36,834,513.36** |
| | |
| 0000190100 Debt Issuance Costs - IM | 3,723,599.02 |
| **OTHER ASSETS** | **3,723,599.02** |
| | |
| **\*OTHER ASSETS** | **3,723,599.02** |
| | |
| **\*\*TOTAL NON-CURRENT ASSETS** | **40,558,112.38** |
| | |
| **\*\*\*\* TOTAL ASSETS** | **448,727,967.22** |
| | |
| **TOTAL LIABILITIES AND MEMBERS' EQUITY** | |
| | |
| **TOTAL LIABILITIES** | |
| | |
| 0000200010 A/P TRADE RECONCILIATION | (41,461,040.12) |
| 0000200099 AP - OTHER | (5,809,309.58) |
| 0000200200 Accounts Payable - Aron | (912,708.91) |
| 0000200205 Accounts Payable - BP | (1,838,548.54) |
| **\*ACCOUNTS PAYABLE TRADE** | **(50,021,607.15)** |
| | |
| 0000235500 Intercompany A/P | (127,870,687.81) |
| **\*AFFILIATE PAYABLE, NET** | **(127,870,687.81)** |
| | |
| 0000231510 ACCRUED INTEREST-DEBT | (894,444.45) |
| **\*ACCRUED INTEREST** | **(894,444.45)** |
| | |
| 0000200040 VOUCHER ACCRUALS | (50,000,000.00) |
| 0000235305 Interest Payable - Precious Catalyst Advance | 0.03 |
| **\*ACCRUED LIABILITIES** | **(49,999,999.97)** |
| | |
| 0000235230 Degradation Value Payable - Base Catalyst Advance | (15,256,127.32) |
| 0000235247 DEBT ISSUANCE COSTS - BASE CATALYSTS - CURRENT | 422,961.53 |
| **BASE CATALYST ADVANCE-CURRENT** | **(14,833,165.79)** |
| | |
| 0000235225 Degradation Value Payable - Precious Catalyst Adv | (9,712,627.66) |
| 0000235246 DEBT ISSUANCE COSTS - PRECIOUS CATALYSTS - CURRENT | 422,961.52 |
| **PRECIOUS CATALYST ADVANCE-CURRENT** | **(9,289,666.14)** |
| | |
| **ACCRUED OTHER INSURANCE PREMIUMS** | **0.00** |
| 0000235030 ACCRUED OTHER INSURANCE | (390,916.98) |

**Limetree Bay Refining Marketing, LLC**
**Balance Sheet**
**September 30, 2021**

|                                                      | 9/30/2021        |
|------------------------------------------------------|-----------------:|
| **OTHER LONG TERM DEBT-CURRENT PORTION**             | (24,513,748.91)  |
| **\*CURRENT PORTION OF LONG-TERM DEBT**              | (24,513,748.91)  |
| 0000235400 Aron Obligation                           | (221,952,054.06) |
| 0000235406 J Aron Inventory Financing Netting        | 48,582,646.70    |
| **\*OBLIGATION UNDER INVEN FINANCING ARRANGEMENT**   | (173,369,407.36) |
| **\*\*TOTAL CURRENT LIABILITIES**                    | (426,669,895.65) |
| 0000260080 SENIOR SECURED CREDIT FACILITIES  - 2018  | (50,000,000.00)  |
| **SENIOR SECURED CREDIT FACILITIES-2018**            | (50,000,000.00)  |
| **SENIOR SECURED CREDIT FACILITIES**                 | (50,000,000.00)  |
| **OTHER LONG TERM DEBT**                             | (50,000,000.00)  |
| **\*LONG-TERM DEBT, NET CRRNT PRTN & ISSNCE CST**    | (50,000,000.00)  |
| **\*\*TOTAL NON-CURRENT LIABILITIES**                | (50,000,000.00)  |
| **\*\*\* TOTAL LIABILITIES**                         | (476,669,895.65) |
| **TOTAL MEMBERS' EQUITY**                            |                  |
| 0000320100 Equity - LBR                              | (754,975.47)     |
| **\*MEMBERS' ADDITIONAL INVESTMENT**                 | (754,975.47)     |
| **\*\*MEMBERS' EQUITY**                              | (754,975.47)     |
| 0000380020 RETAINED  EARNINGS                        | 50,157,292.40    |
| **\*\*RETAINED EARNINGS / ACCUMULATED DEFICIT**      | 50,157,292.40    |
| **\*\*PROFIT/LOSS IN CURRENT YEAR**                  | (21,460,388.50)  |
| **\*\*\* TOTAL MEMBERS' EQUITY**                     | 27,941,928.43    |
| **\*\*\*\* TOTAL LIABILITIES & MEMBERS' EQUITY**     | (448,727,967.22) |

**Notes:**
**(1)** Accounts payable includes an expected insurance refund for $159,562.50. On
the MOR, the expected insurance refund is reflected in Total Current Assets.

**Limitree Bay Refining Marketing, LLC**
**Income Statement**
**For the month ending September 30, 2021**

| | September 1-30, 2021 |
| --- | --- |
| | **Unaudited** |
| **INCOME STATEMENT** | |
| | |
| 0000400010 SALES THIRD PARTY-PETROLEUM PRODUCTS | 0.00 |
| **\*REFINERY REVENUES** | **0.00** |
| **\*\*TOTAL REVENUES** | **0.00** |
| | |
| 0000520100 INVENTORY MOVE PRICE DIFFERENCE | 0.00 |
| 0000520130 OTHER COST OF SALES | 71,853.50 |
| 0000520160 VESSEL DEMURRAGE | 0.00 |
| **\*\*COST OF GOODS SOLD** | **71,853.50** |
| | |
| 0000607020 TRAVEL AND LODGING | 0.00 |
| **MEALS & ENTERTAINMENT** | **0.00** |
| | |
| 0000601078 SAFETY EXPENSE | 0.00 |
| **OTHER** | **0.00** |
| | |
| **EMPLOYEE EXPENSES** | **0.00** |
| | |
| 0000603011 CONSULTING FEES - NON-OPERATING | 0.00 |
| **CONSULTING FEES** | **0.00** |
| | |
| 0000603012 ENGINEERING FEES | 0.00 |
| **ENGINEERING FEES** | **0.00** |
| | |
| 0000603030 INSPECTION FEES-QUANTITY | 0.00 |
| 0000603031 INSPECTION FEES-QUALITY | 0.00 |
| **INSPECTION FEES** | **0.00** |
| | |
| **PROFESSIONAL FEES** | **0.00** |
| | |
| 0000608015 POWER PLANT FUEL - EXTERNAL | 0.00 |
| **FUEL EXPENSE** | **0.00** |
| | |
| 0000602017 SPILL CLEAN UP | 0.00 |
| **ENVIRONMENTAL** | **0.00** |
| | |
| 0000603020 PINNACLE - REPAIRS & MAINTENANCE | 0.00 |
| 0000606030 REPAIR & MAINTENANCE - GENERAL | 0.00 |
| 0000606034 R&M - Fixed Equipment Work | 0.00 |
| 0000606035 R&M – Instrument, Electrical and Analyzer Work | 0.00 |
| 0000606036 R&M – Rotating Equipment | 0.00 |
| 0000606037 R&M – Scaffold, Asbestos, Insulation and Painting | 0.00 |
| 0000606039 R&M – Maintenance Support Services, Other | 0.00 |
| **REPAIRS AND MAINTENANCE** | **0.00** |

**Limetree Bay Refining Marketing, LLC**
**Income Statement**
**For the month ending September 30, 2021**

| | September 1-30, 2021<br>Unaudited |
|---|---|
| 0000608043 TELECOMMUNICATIONS EXP-CELLULAR | 0.00 |
| **COMMUNICATION EXPENSES** | **0.00** |
| | |
| 0000604011 HARDWARE - DESKTOP PURCHASES | 0.00 |
| 0000604037 SOFTWARE - NETWORK MAINTENANCE | 0.00 |
| **IT EXPENSES** | **0.00** |
| | |
| **COMMUNICATIONS AND IT EXPENSES** | **0.00** |
| | |
| 0000602041 PINNACLE - NON REPAIRS & MAINTENANCE | 0.00 |
| **CONTRACTOR OVERHEAD** | **0.00** |
| | |
| 0000602060 WASTE DISPOSAL - NON-ENVIRONMENTAL | 0.00 |
| 0000602061 WASTE DISPOSAL - RECYCLING | 0.00 |
| 0000602065 OUTSIDE LABOR/SERVICES - HOURLY | 0.00 |
| 0000602080 TEMPORARY OUTSIDE LABOR / SERVICES | 0.00 |
| 0000602090 CONTRACT SERVICES - LUMP SUM | 0.00 |
| 0000602091 WASTE WATER TREATMENT PLANT - OUTSIDE CONTRACTORS | 0.00 |
| **OUTSIDE SERVICES** | **0.00** |
| | |
| 0000608030 UTILITY EXPENSE - WATER | 0.00 |
| **UTILITIES** | **0.00** |
| | |
| 0000613030 RENTS OFFICE & REAL ESTATE | 0.00 |
| 0000613035 RENTALS-OTHER | 4,274,163.82 |
| **RENTAL EXPENSES** | **4,274,163.82** |
| | |
| 0000612025 LICENSES AND PERMITS-OTHER | 0.00 |
| 0000612030 MEMBERSHIPS/DUES | 0.00 |
| 0000612031 BOOKS/MANUALS/SUBSCRIPTIONS | 0.00 |
| **LICENSES, MEMBERSHIPS AND SUBSCRIPTIONS** | **0.00** |
| | |
| 0000605010 OFFICE SUPPLY | 0.00 |
| 0000605011 POSTAGE | 0.00 |
| 0000605020 OPERATING SUPPLY | 0.00 |
| 0000605021 INVENTORY VARIANCES | 0.00 |
| 0000606010 MAINTENANCE SUPPLIES | 0.00 |
| 0000606013 R&M - OUTSIDE CONTRACTORS (NON-PINNACLE) | 0.00 |
| 0000606019 EQUIPMENT RENTALS - MAINTENANCE | 0.00 |
| 0000620010 FREIGHT EXPENSE | 0.00 |
| 0000620020 AIR FREIGHT | 0.00 |
| 0000620030 DEMURRAGE EXPENSE THIRD PARTY-NON ST&T | 0.00 |
| 0000620040 FREIGHT EXPENSE ENVIRONMENTAL | 0.00 |
| 0000620050 CUSTOMS & BROKERAGE CHARGES | 0.00 |
| 0000620060 PRODUCT CONSUMED-GASOLINE & OIL | 0.00 |

**Limetree Bay Refining Marketing, LLC**
**Income Statement**
**For the month ending September 30, 2021**

| | September 1-30, 2021 |
| --- | --- |
| | Unaudited |
| 0000620072 GAS & OIL CONSUMED-VEHICLES | 0.00 |
| 0000630010 MARINE PRESERVATION / NATIONAL RESPONSE CORP | 0.00 |
| 0000630020 CHEMICALS EXP | 0.00 |
| 0000630030 CATALYST | 0.00 |
| 0000630040 ADDITIVES EXPENSE | 0.00 |
| 0000630070 MISC EXP - OPERATING EXPENSE | 0.00 |
| 0000640000 SHARED SERVICES CLEARING | 0.00 |
| **OFFICE AND MISC OPERATING EXPENSES** | **0.00** |
| | |
| 0000640050 MISC EXP - NON OPERATING EXPENSE | 0.00 |
| **OTHER MISC O&M** | **0.00** |
| | |
| **OTHER O&M** | **4,274,163.82** |
| | |
| **OPERATING EXPENSES** | **4,274,163.82** |
| | |
| 0000814012 INS-ALL RISK PROPERTY | 80,937.50 |
| **PROPERTY** | **80,937.50** |
| | |
| 0000814050 INS-OTHER | 0.00 |
| **OTHER** | **0.00** |
| | |
| **INSURANCE** | **80,937.50** |
| | |
| 0000803011 CONSULTING FEES | 0.00 |
| **CONSULTING FEES** | **0.00** |
| | |
| 0000803013 LEGAL FEES | 3,096.06 |
| **LEGAL FEES** | **3,096.06** |
| | |
| **PROFESSIONAL FEES** | **3,096.06** |
| | |
| 0000804034 SOFTWARE - DESKTOP MAINTENANCE | 0.00 |
| **IT EXPENSES** | **0.00** |
| | |
| **COMMUNICATIONS AND IT EXPENSES** | **0.00** |
| | |
| 0000808010 UTILITY EXPENSE-ELECTRICITY | 0.00 |
| **UTILITIES** | **0.00** |
| | |
| 0000812015 BANK CHARGES | 112.32 |
| **TAXES AND FEES** | **112.32** |

**Limetree Bay Refining Marketing, LLC**
**Income Statement**
**For the month ending September 30, 2021**

| | September 1-30, 2021 Unaudited |
|---|---|
| 0000812031 BOOKS/MANUALS/SUBSCRIPTIONS | 13,506.93 |
| **LICENSES, MEMBERSHIPS AND SUBSCRIPTIONS** | **13,506.93** |
| | |
| 0000811017 COMMUNITY RELATIONS EVENTS | 0.00 |
| **CONTRIBUTIONS AND DONATIONS** | **0.00** |
| | |
| 0000805011 POSTAGE | 0.00 |
| 0000830070 MISC EXPENSES - G&A | 0.00 |
| **OFFICE AND MISC OPERATING EXPENSES** | **0.00** |
| | |
| **OTHER O&M** | **13,619.25** |
| | |
| **GENERAL ADMINISTRATION EXPENSE** | **97,652.81** |
| | |
| 0000440200 Realized (income) / loss - Market Structure Roll | 0.00 |
| 0000440215 Realized (income) / loss - Other | 0.00 |
| 0000440305 Unrealized MTM (income) loss – Step-out | 0.00 |
| 0000645000 Other Income/Expense | 0.00 |
| ***MISC. OPERATING (INCOME) EXPENSE.** | **0.00** |
| | |
| ****TOTAL EXPENSES** | **4,371,816.63** |
| | |
| *****OPERATING INCOME** | **(4,443,670.13)** |
| | |
| 0000818010 INTEREST EXPENSE | 291,666.67 |
| 0000818020 INVESTMENT INTEREST INCOME | 0.00 |
| 0000818030 Interest Expense - Base Catalyst Advance | 84,592.32 |
| 0000818031 Interest Expense - Precious Catalyst Advance | 84,592.32 |
| 0000818040 Interest Expense - IM Financing Fee | 0.00 |
| 0000818041 Interest Expense - IM Intermediation Fee | 1,206,649.09 |
| ****INTEREST AND FINANCING EXPENSE** | **1,667,500.40** |
| | |
| *****TOTAL NON-OPERATING INCOME (EXPENSE):** | **(1,667,500.40)** |
| | |
| ******NET INCOME (LOSS)** | **(6,111,170.53)** |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Limetree Bay Refining Marketing, LLC**

**Schedule of Bank Accounts - As of September 30, 2021**

| Description | Operating Account | Revenue Account | O&M Account | Total - All Debtor Accounts |
|---|---|---|---|---|
| Account Name | Limetree Bay Refining Marketing, LLC | Limetree Bay Refining Marketing, LLC | Limetree Bay Refining Marketing, LLC | |
| Bank Name | Oriental Bank | Deutsche Bank | Deutsche Bank | |
| Account Number - Last Four Digits | 0986 | 972.1 | 972.2 | |
| Beginning book balance (as of 09/01/21) | $ 41,440.01 | $ 969.42 | $ 1.49 | $ 42,410.92 |
| Plus: Deposits | - | - | - | - |
| Subtotal book balance | 41,440.01 | 969.42 | 1.49 | 42,410.92 |
| | | | | |
| Less: Disbursements | (112.32) | - | - | (112.32) |
| Transfers | - | - | - | - |
| Other: | - | - | - | - |
| Ending book balance (as of 09/30/21) | $ 41,327.69 | $ 969.42 | $ 1.49 | $ 42,298.60 |

**Oriental**

P.O. Box 195115
San Juan, PR 00919-5115

Last statement: August 31, 2021
This statement: September 30, 2021
Total days in statement period: 30

Page 1 of 2
     0986
(0)

Direct inquiries to:
787-620-0000

LIMETREE BAY REFINING MARKETING LLC
D A C A
1 ESTATE HOPE
CHRISTIANSTED VI 00820

Oriental Bank
254 Munoz Rivera Ave
Hato Rey PR 00918

---

## Premium Business

| | | | |
|---|---|---|---|
| Account number | 0986 | Beginning balance | $41,440.01 |
| Low balance | $41,327.69 | Total additions | .00 |
| Average balance | $41,402.57 | Total subtractions | 112.32 |
| | | Ending balance | $41,327.69 |

**DEBITS**

| Date | Description | Subtractions |
|---|---|---|
| 09-21 | Maintenance Fee | 112.32 |
| | ANALYSIS ACTIVITY FOR 08/21 | |

**DAILY BALANCES**

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 08-31 | 41,440.01 | 09-21 | 41,327.69 | | |

**OVERDRAFT/RETURN ITEM FEES**

| | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

*Thank you for banking with Oriental Bank*

**LIMETREE BAY REFINING MARKETING, LLC**
**LBRM Operating Account Oriental Bank - 110800**
**OB      0986**
**September 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 8/31/2021 | $ | 41,440.01 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Bank Charges | | $ | (112.32) |
| Dividends | | $ | - |
| Ending Balance per Bank | 9/30/2021 | $ | 41,327.69 |
| Opening Balance  per Book | 8/31/2021 | $ | 41,440.01 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Bank Charges | | $ | (112.32) |
| Dividends | | $ | - |
| Ending Balance per Book | 9/30/2021 | $ | 41,327.69 |
| | | $ | 41,327.69 |

Reconciled by      George Southwell

Date:      10/1/2021

Approved by

Date:

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | LBRM Revenue Account |
| Portfolio Number: | 972.1 |
| Statement Period: | September 01, 2021 - September 30, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

**Portfolio Market Value Summary as of 09/30/21**

| | | |
|---|---|---|
| Cash | $ | 0.00 |
| Investments | | 969.42 |
| Total Portfolio Value: | $ | 969.42 |
| YTD Interest: | $ | 0.00 |
| YTD Dividends: | $ | 510.09 |
| YTD Capital Gains/Losses: | $ | 0.00 |

**Portfolio Cost Value Summary as of 09/30/21**

| | | |
|---|---|---|
| Cash | $ | 0.00 |
| Investments | $ | 969.42 |
| Total Portfolio Value: | $ | 969.42 |

**Cash Summary**

| | | |
|---|---|---|
| Beginning Balance | $ | 0.00 |
| Closing Balance | | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | LBRM Revenue Account |
| Portfolio Number: | 972.1 |
| Statement Period: | September 01, 2021 - September 30, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Transaction Statement for the period of September 1, 2021 through September 30, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 09/01 | Beginning balance | | | | | $ 0.00 | $ 969.42 |

## Asset position as of September 30, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| BL #92104 -0U4 FedFund Admin CUSIP: 09248U445 | 969.42 | $969.42 | 969.42 | $1.00 | 0.02% | $969.42 | $0.00 | n/a / N/A |
| **Total Portfolio** | **969.42** | **$969.42** | **969.42** | | | **$969.42** | **$0.00** | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| Account Name: | Limetree Bay Refining Marketing LLC |
|---|---|
| Portfolio Name: | LBRM O&M Account |
| Portfolio Number: | 972.2 |
| Statement Period: | September 01, 2021 - September 30, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

### Portfolio Market Value Summary as of 09/30/21

| | | |
|---|---|---|
| Cash | $ | 0.00 |
| Investments | $ | 1.49 |
| Total Portfolio Value: | $ | 1.49 |
| YTD Interest: | $ | 0.00 |
| YTD Dividends: | $ | 3.95 |
| YTD Capital Gains/Losses: | $ | 0.00 |

### Portfolio Cost Value Summary as of 09/30/21

| | | |
|---|---|---|
| Cash | $ | 0.00 |
| Investments | $ | 1.49 |
| Total Portfolio Value: | $ | 1.49 |

### Cash Summary

| | | |
|---|---|---|
| Beginning Balance | $ | 0.00 |
| Closing Balance | | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

Account Name:       Limetree Bay Refining Marketing LLC
Portfolio Name:     LBRM O&M Account
Portfolio Number:   972.2
Statement Period:   September 01, 2021 - September 30, 2021
Account
Administrator:      Shamarri Hartzog (714-247-6353)
Account Manager:    ALICE CARTER (714-247-6369)
Team Lead:          Thalia Delahayes (212-250-7336)

Transaction Statement for the period of September 1, 2021 through September 30, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|------|------------------------|------|----------|---------------|-------|--------------|--------------|
| 09/01 | Beginning balance | | | | | $  0.00 | $  1.49 |

Asset position as of September 30, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|-------------|----------------|------|---------------|--------------|-------|--------------|----------------|----------------------------|
| BL #92104 -0U4 FedFund Admin CUSIP: 09248U445 | 1.49 | $1.49 | 1.49 | $1.00 | 0.00% | $1.49 | $0.00 | n/a / N/A |
| **Total Portfolio** | **1.49** | **$1.49** | **1.49** | | | **$1.49** | **$0.00** | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | LBRM Reinvestment & Repair Account |
| Portfolio Number: | 972.3 |
| Statement Period: | September 01, 2021 - September 30, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

**Portfolio Market Value Summary as of 09/30/21**

| | | |
|---|---|---|
| Total Portfolio Value: | $ | 0.00 |
| YTD Dividends: | $ | 0.00 |
| YTD Interest: | $ | 0.00 |
| YTD Capital Gains/Losses: | $ | 0.00 |

**Portfolio Cost Value Summary as of 09/30/21**

| | | |
|---|---|---|
| Total Portfolio Value: | $ | 0.00 |

**Cash Summary**

| | | |
|---|---|---|
| Beginning Balance | $ | 0.00 |
| Closing Balance | | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | LBRM Reinvestment & Repair Account |
| Portfolio Number: | 972.3 |
| Statement Period: | September 01, 2021 - September 30, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Transaction Statement for the period of September 1, 2021 through September 30, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 09/01 | Beginning balance | | | | | $ 0.00 $ | 0.00 |

Asset position as of September 30, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | LBRM Tolling Agreement Payment Account |
| Portfolio Number: | 972.4 |
| Statement Period: | September 01, 2021 - September 30, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

**Portfolio Market Value Summary as of 09/30/21**

| | | |
|---|---|---|
| Total Portfolio Value: | $ | 0.00 |
| | | |
| YTD Dividends: | $ | 0.00 |
| YTD Interest: | $ | 0.00 |
| YTD Capital Gains/Losses: | $ | 0.00 |

**Portfolio Cost Value Summary as of 09/30/21**

| | | |
|---|---|---|
| Total Portfolio Value: | $ | 0.00 |

**Cash Summary**

| | | |
|---|---|---|
| Beginning Balance | $ | 0.00 |
| | | |
| Closing Balance | | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

Account Name: Limetree Bay Refining Marketing LLC
Portfolio Name: LBRM Tolling Agreement Payment Account
Portfolio Number: 972.4
Statement Period: September 01, 2021 - September 30, 2021
Account
Administrator: Shamarri Hartzog (714-247-6353)
Account Manager: ALICE CARTER (714-247-6369)
Team Lead: Thalia Delahayes (212-250-7336)

Transaction Statement for the period of September 1, 2021 through September 30, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|------|------------------------|------|----------|---------------|-------|--------------|--------------|
| 09/01 | Beginning balance | | | | | $ 0.00 $ | 0.00 |

Asset position as of September 30, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|-------------|----------------|------|---------------|--------------|-------|--------------|----------------|----------------------------|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank ◪

| | |
|---|---|
| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | LBRM Capex Reserve Account |
| Portfolio Number: | 972.5 |
| Statement Period: | September 01, 2021 - September 30, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

**Portfolio Market Value Summary as of 09/30/21**

| | | |
|---|---|---|
| Total Portfolio Value: | $ | 0.00 |
| YTD Dividends: | $ | 0.00 |
| YTD Interest: | $ | 0.00 |
| YTD Capital Gains/Losses: | $ | 0.00 |

**Portfolio Cost Value Summary as of 09/30/21**

| | | |
|---|---|---|
| Total Portfolio Value: | $ | 0.00 |

**Cash Summary**

| | | |
|---|---|---|
| Beginning Balance | $ | 0.00 |
| Closing Balance | | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| Account Name: | Limetree Bay Refining Marketing LLC |
|---|---|
| Portfolio Name: | LBRM Capex Reserve Account |
| Portfolio Number: | 972.5 |
| Statement Period: | September 01, 2021 - September 30, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Transaction Statement for the period of September 1, 2021 through September 30, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 09/01 | Beginning balance | | | | $ | 0.00 $ | 0.00 |

## Asset position as of September 30, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

1

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | LBRM Turn-around Reserve Account |
| Portfolio Number: | 972.6 |
| Statement Period: | September 01, 2021 - September 30, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

## Summary

**Portfolio Market Value Summary as of 09/30/21**

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |
| YTD Dividends: | $ 0.00 |
| YTD Interest: | $ 0.00 |
| YTD Capital Gains/Losses: | $ 0.00 |

**Portfolio Cost Value Summary as of 09/30/21**

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |

**Cash Summary**

| | |
|---|---|
| Beginning Balance | $ 0.00 |
| Closing Balance | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

Account Name: Limetree Bay Refining Marketing LLC
Portfolio Name: LBRM Turn-around Reserve Account
Portfolio Number: 972.6
Statement Period: September 01, 2021 - September 30, 2021
Account Administrator: Shamarri Hartzog (714-247-6353)
Account Manager: ALICE CARTER (714-247-6369)
Team Lead: Thalia Delahayes (212-250-7336)

Transaction Statement for the period of September 1, 2021 through September 30, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|------|------------------------|------|----------|---------------|-------|--------------|--------------|
| 09/01 | Beginning balance | | | | | $ 0.00 $ | 0.00 |

Asset position as of September 30, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|-------------|----------------|------|---------------|--------------|-------|--------------|----------------|----------------------------|
| **Total Portfolio** | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank [Z]

Account Name: Limetree Bay Refining Marketing LLC
Portfolio Name: Tolling Agreement Payment Sub-account
Portfolio Number: 972.7
Statement Period: September 01, 2021 - September 30, 2021
Account
Administrator: Shamarri Hartzog (714-247-6353)
Account Manager: ALICE CARTER (714-247-6369)
Team Lead: Thalia Delahayes (212-250-7336)

## Summary

### Portfolio Market Value Summary as of 09/30/21

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |
| YTD Dividends: | $ 0.00 |
| YTD Interest: | $ 0.00 |
| YTD Capital Gains/Losses: | $ 0.00 |

### Portfolio Cost Value Summary as of 09/30/21

| | |
|---|---|
| Total Portfolio Value: | $ 0.00 |

### Cash Summary

| | |
|---|---|
| Beginning Balance | $ 0.00 |
| Closing Balance | 0.00 |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | Tolling Agreement Payment Sub-account |
| Portfolio Number: | 972.7 |
| Statement Period: | September 01, 2021 - September 30, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Transaction Statement for the period of September 1, 2021 through September 30, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 09/01 | Beginning balance | | | | | $ 0.00 $ | 0.00 |

Asset position as of September 30, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

Account Name:      Limetree Bay Refining Marketing LLC
Portfolio Name:    Gross Margin Sub-account
Portfolio Number:  972.8
Statement Period:  September 01, 2021 - September 30, 2021
Account
Administrator:     Shamarri Hartzog (714-247-6353)
Account Manager:   ALICE CARTER (714-247-6369)
Team Lead:         Thalia Delahayes (212-250-7336)

## Summary

### Portfolio Market Value Summary as of 09/30/21

Total Portfolio Value:        $            0.00

YTD Dividends:                $            0.00
YTD Interest:                 $            0.00
YTD Capital Gains/Losses:     $            0.00

### Portfolio Cost Value Summary as of 09/30/21

Total Portfolio Value:        $            0.00

### Cash Summary

Beginning Balance             $            0.00

Closing Balance                            0.00

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

# Deutsche Bank

| | |
|---|---|
| Account Name: | Limetree Bay Refining Marketing LLC |
| Portfolio Name: | Gross Margin Sub-account |
| Portfolio Number: | 972.8 |
| Statement Period: | September 01, 2021 - September 30, 2021 |
| Account Administrator: | Shamarri Hartzog (714-247-6353) |
| Account Manager: | ALICE CARTER (714-247-6369) |
| Team Lead: | Thalia Delahayes (212-250-7336) |

Transaction Statement for the period of September 1, 2021 through September 30, 2021

| Date | Transaction Description | Cash | Face/Par | Cap Gain/Loss | Price | Cash Balance | Fund Balance |
|---|---|---|---|---|---|---|---|
| 09/01 | Beginning balance | | | | | $ 0.00 $ | 0.00 |

Asset position as of September 30, 2021

| Description | Original Units | Cost | Current Units | Market Price | Yield | Market Value | Accrued Income | Moody Rating / S & P Rating |
|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 0.00 | $0.00 | 0.00 | | | $0.00 | $0.00 | |

For more information regarding your (account/portfolio) statement, please refer to the attached Disclosure Notice.

**LIMETREE BAY REFINING MARKETING, LLC**
**Revenue Account Deutsche Bank - 110250**
   **972.1**
**September 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 8/31/2021 | $ | 969.42 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Bank Charges | | $ | - |
| Dividends | | $ | - |
| Ending Balance per Bank | 9/30/2021 | $ | 969.42 |
| Opening Balance  per Book | 8/31/2021 | $ | 969.42 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Bank Charges | | $ | - |
| Dividends | | $ | - |
| Ending Balance per Book | 9/30/2021 | $ | 969.42 |
| | | $ | 969.42 |

Reconciled by          George Southwell

Date:                      10/1/2021

Approved by

Date:

**LIMETREE BAY REFINING MARKETING, LLC**
**O & M Account Deutsche Bank - 110260**
**972.2**
**September 2021**

| | Date | | Amount |
|---|---|---|---|
| Opening Balance  per Bank | 8/31/2021 | $ | 1.49 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Bank Charges | | $ | - |
| Dividends | | $ | - |
| Ending Balance per Bank | 9/30/2021 | $ | 1.49 |
| Opening Balance  per Book | 8/31/2021 | $ | 1.49 |
| Deposits | | $ | - |
| ACH / Debits | | $ | - |
| Wires | | $ | - |
| Bank Charges | | $ | - |
| Dividends | | $ | - |
| Ending Balance per Book | 9/30/2021 | $ | 1.49 |
| | | $ | 1.49 |

Reconciled by          George Southwell

Date:          10/1/2021

Approved by

Date:

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**
**Schedule of Insurance Policies - As of September 30, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC[5] | AIG/National Union Fire Insurance Co | Combined Property | Primary $250M | 026-1001312 | 2021.09.01 |
| Limetree Bay Refining, LLC | Allianz Global Risk US Insurance Company | Combined Property | Primary $1.25BN | USN00023920 | 2021.12.01 |
| Limetree Bay Refining, LLC | Axis (Endorsement) | Builder's Risk | $50M | EAU646295/01/2020 | 2021.12.01 |
| Limetree Bay Refining, LLC[5] | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 92SRD102973 | 2021.09.01 |
| Limetree Bay Refining, LLC[5] | Berkshire Hathaway/National Fire & Marine Ins Co | Combined Property | Primary $500M | 42-PRP-312023-01 | 2021.09.01 |
| Limetree Bay Refining, LLC | CIN 318/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC3 | Convex Insurance UK Limited | Combined Property | Primary $1.25BN (reduced to a limit of $250 million on August 20, 2021) | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Services, LLC | Liberty | Worker's Comp | | WCC-641-444917-020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hannover Re/HDI Global Specialty SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Helvetia/Helvetia Swiss Insurance Co in Liechtenstein Ltd | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | HSIC/Houston Specialty Insurance Company | Combined Property | $150M XS 50M | PRO440373 | 2021.12.01 |
| Limetree Bay Refining, LLC | LSM/Liberty Specialty Markets Agency Limited | Combined Property | $100M XS $100M | LSMAEN143232A | 2021.12.01 |
| Limetree Bay Refining, LLC | Munich Re/Great Lakes Insurance SE | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | PICC/Guardian General Insurance | Combined Property | $100M XS $100M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | QBE/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Rokstone/Guardian General Insurance | Combined Property | $50M XS $50M | BO509ENGAO2000576 | 2021.12.01 |
| Limetree Bay Refining, LLC[5] | SCOR (3)/General Security Indemnity Company of Arizona | Combined Property | Primary $1.25BN | FA007943720201 | 2021.09.01 |
| Limetree Bay Refining, LLC | Sompo/Lloyds of London | Combined Property | Primary $1.25BN | B0509ENGAO2000069 | 2021.12.01 |
| Limetree Bay Refining, LLC | Swiss Re/Westport Insurance Company | Combined Property | Primary $500M | OMP 2000425-00 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of September 30, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---|---|---|---|---|---|
| Limetree Bay Refining, LLC[5] | Validus Specialty/Lloyds of London | Combined Property | Primary $250M | AJH292893A20 | 2021.09.01 |
| Limetree Bay Refining, LLC | Westchester Surplus Lines Ins Co/Starr Technical Risks Agency, Inc | Combined Property | Primary $500M | EPRN18215263 | 2021.12.01 |
| Limetree Bay Refining, LLC | WRB/Guardian General Insurance | Combined Property | $50M XS $50M | DWF54020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Zurich/Zurich American Insurance Company | Combined Property | Primary $100M | OGR 1296457-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arcadian/Ark/Helix Bermuda | Builder's Risk | $25M xs $100M | NAMBM2100005 | 2022.06.01 |
| Limetree Bay Refining, LLC | Allianz | Refinery Excess Liability | $15M xs $53M | USL00880520 | 2021.12.01 |
| Limetree Bay Refining, LLC | Allianz | Environmental Liability | $15M xs $85M | USL00873320 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty | Refinery Primary Liability | | AS6-641-444917-010 | 2021.12.01 |
| Limetree Bay Refining, LLC | Travelers Syndicate | Refinery Primary Liability | | ENCAS2000012 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer/Apollo | Refinery Excess Liability | $15M | ENCAS2000011 | 2021.12.01 |
| Limetree Bay Refining, LLC | Westchester | Refinery Excess Liability | $3M xs $25M | G71809808001 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Refinery Excess Liability | $25M xs $28M | 4380100 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chaucer | Refinery Excess Liability | $11M po $22M xs $68M | ENCAS2000020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lex-London | Refinery Excess Liability | $11M po $22M xs $68M | 62785689 | 2021.12.01 |
| Limetree Bay Refining, LLC | OSL | Refinery Excess Liability | $10M xs $90M | EXS-154724-00 | 2021.12.01 |
| Limetree Bay Refining, LLC | AXA XL Bermuda | Refinery Excess Liability | $25M xs $125M | XLUMB-229978 | 2021.12.01 |
| Limetree Bay Refining, LLC | OCIL Bermuda | Refinery Excess Liability | $25M po $40M xs $150M | U920968-0620 | 2021.12.01 |
| Limetree Bay Refining, LLC | Sompo Bermuda | Refinery Excess Liability | $15M po $40M xs $150M | EXC30001524800 | 2021.12.01 |
| Limetree Bay Refining, LLC | Argo Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | ARGO-CAS-OR-001484 | 2021.12.01 |
| Limetree Bay Refining, LLC | Arch Bermuda | Refinery Excess Liability | $15M po $50M xs $190M | URP0065257-00 | 2021.12.01 |

**Limetree Bay Services, LLC et al., Case No.: 21-32351 (Jointly Administered)**

**United States Bankruptcy Court**
**Southern District of Texas (Houston)**

**Schedule of Insurance Policies - As of September 30, 2021**

| Insured | Insurer | Type | Coverage Amount | Policy Number | Expiration Date |
|---------|---------|------|-----------------|---------------|-----------------|
| Limetree Bay Refining, LLC | Markel Bermuda | Refinery Excess Liability | $12.5M po $50M xs $190M | 1454233-11636-UMB-2020 | 2021.12.01 |
| Limetree Bay Refining, LLC | Hamilton Bermuda | Refinery Excess Liability | $7.5M po $50M xs $190M | CX20-9216 | 2021.12.01 |
| Limetree Bay Refining, LLC | Chubb Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LBR-2144/XS004 | 2021.12.01 |
| Limetree Bay Refining, LLC | Liberty Bermuda | Refinery Excess Liability | $15M po $30M xs $240M | LSMAEC119907A | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $1M | ENVP0000296-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Lloyd's Underwriters | Environmental Liability | $9M xs $1M | ENVX0000256-20 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ironshore | Environmental Liability | $25M xs $10M | 262704 | 2021.12.01 |
| Limetree Bay Refining, LLC | Ascot | Environmental Liability | $25M xs $35M | ENXP2110000428-01 | 2021.12.01 |
| Limetree Bay Refining, LLC | Markel | Environmental Liability | $25M xs $60M | MKLV4EFX102259 | 2021.12.01 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $5M | 8261-8347 | 2022.04.20 |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000623319211 | 2022.04.20 |
| Limetree Bay Refining, LLC | Wesco Insurance Company | Executive Risk | $5M | EUW1909831 00 | 2022.04.20 |
| | | | | | |
| Limetree Bay Refining, LLC | Starr Indemnity & Liability | Executive Risk | $5M | 1000622392201 | 2027.04.20 |
| Limetree Bay Refining, LLC | Federal Insurance Company | Executive Risk | $5M | 8247-1536 | 2027.04.20 |
| Limetree Bay Refining, LLC | First Liberty Insurance Co | Auto Liability | $2M | AS6-641-444917-010 | 2021.12.01 |

**Notes:**

**(1)** As of September 30, 2021, insurance premiums are paid in full except for the items discussed in footnotes 2, 3 and 4.

**(2)** The auto liability policy will be audited during December 2021. A premium will be due for autos assigned to LBR for the period from June 1, 2021 through December 31, 2021

**(3)** Audit premiums are expected to be invoiced for non-current insurance policies including the Builders All Risk policy and OCIP. As of the filing of the monthly operating report, the audit amounts have not been determined.

**(4)** Premium obligations outstanding as of August 31, 2021 for LBR are as follows:

   a.  PFA Loan 2055:  Balance due for $266,145

   b.  PFA Loan 2303:  Balance due for $536,580

**(5)** September 1, 2021 was an expiration date for 36.5% of the property insurance program insuring the Refinery. It was not replaced or renewed

**(6)** December 1, 2021 is an expiration date for the remaining 63.5% of the property insurance program insuring the Refinery. It is not presently being marketed, LBR assumes the risk for 30% of a $50 million primary section of the insurance program.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| **LIMETREE BAY SERVICES, LLC**, *et al.*,[1] | **CASE NO.: 21-32351 (DRJ)** |
| **Debtors.** | **(Jointly Administered)** |

## DEBTORS' <u>EMERGENCY</u> MOTION FOR
## <u>AUTHORITY TO PAY FORBEARANCE FEE</u>

**Emergency relief has been requested. A hearing will be conducted on this matter on November 10, 2021, at 1:00 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk St., Houston, Texas 77002. You may participate in the hearing in person or by audio/video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691.**

**You may view video via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "JudgeJones" in the GoToMeeting app or click the link on Judge Jones's home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu. Select "Judges' Procedures," then "View Home Page" for Judge Jones. Under "Electronic Appearance" select "Click here to submit Electronic Appearance". Select the case name, complete the required fields and click "Submit" to complete your appearance.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must either appear at the hearing or file a written response prior to the hearing. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**Relief is requested not later than November 10, 2021.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

Limetree Bay Services, LLC ("**Limetree**") and its debtor affiliates (collectively, the "**Debtors**"), as debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), respectfully represent as follows in support of this motion (the "**Motion**").

<u>**Relief Requested**</u>

1.      Pursuant to Sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), the Debtors request entry of an order authorizing, but not directing, the Debtors to pay a Forbearance Fee (defined below), the payment of which is necessary to continue the administration of these Chapter 11 Cases.

2.      A proposed form of order granting the relief requested herein is attached hereto as **Exhibit A** (the "**Proposed Order**").

<u>**Jurisdiction and Venue**</u>

3.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

<u>**Background**</u>

4.      On July 12, 2021 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code—thereby commencing the above-captioned Chapter 11 Cases. The Debtors continue to operate their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases. On or about July 26, 2021, an Official Committee of Unsecured Creditors was appointed (Doc. 189) (the "**Committee**").

5.      On July 13, 2021, the Court entered an order jointly administering the Chapter 11 Cases under Case No. 21-32351 (DRJ) (Doc. 20).

6.      A discussion of the facts and circumstances surrounding these Chapter 11 Cases and underlying the relief requested herein is set forth in the *Declaration of Mark Shapiro in Support of Chapter 11 Petitions and First Day Motions* (Doc. 8) (the "**First Day Declaration**"), which was filed on the Petition Date and is incorporated herein by reference in its entirety.

7.      On July 12, 2021, the Debtors filed an *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-Petition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (IV) Approving Adequate Protection to Pre-Petition Secured Creditors, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* (Doc. 14) (the "**DIP Motion**").

8.      On July 14, 2021, August 2, 2021, and August 11, 2021, the Court entered orders granting the DIP Motion on an interim basis (Docs. 104, 271, and 393).

9.      On August 27, 2021, the Court granted the DIP Motion on a final basis (Doc. 495) (the "**Final DIP Order**").

10.     Under the DIP Loan Documents (as defined in the Final DIP Order), Debtor Limetree Bay Refining, LLC, as borrower (the "**Borrower**"), was required to make a $5 million payment due the week of October 11, 2021 (the "**First Payment**"), a $7.5 million payment due the week of October 18, 2021 (the "**Second Payment**"), and a $12.5 million payment due the week of October 25, 2021 (the "**Third Payment**" and together with the First Payment and Second Payment, collectively, the "**DIP Payments**").

11.    The Borrower did not have the necessary funds to make the DIP Payments when due, which resulted in a Default (as defined in the DIP Loan Documents) under the DIP Loan Documents (the "**Payment Defaults**").

12.    405 Sentinel LLC, as administrative and collateral agent for the Lenders (as defined in the DIP Loan Documents) (the "**Agent**") has agreed to forbear (the "**Forbearance**") from exercising its default-related rights and remedies under the DIP Loan Documents as of the date hereof until December 10, 2021 (the "**Forbearance Period**") subject to, among other things, the Borrower's payment of a forbearance fee in the amount of $250,000.00 (the "**Forbearance Fee**").

13.    Furthermore, while the Debtors' approved budget is for a two-week period, it was originally contemplated to be a six-week budget. Given this, as long as the Debtors file a budget approved by the Agent extending the term by four additional weeks, the Agent has stated it will not require an additional forbearance fee in connection with this budget extension.

14.    In addition, the Debtors intend on making the First Payment, pursuant to the previously approved budget and due the week of October 11, 2021, on Monday, November 8, 2021, and prior to the hearing on this Motion.

15.    Section 10 of the Final DIP Order precludes the Debtors from modifying the DIP Loan Documents "without the approval of the Court on notice and a hearing" if such modifications "(iii) require the payment of any new or additional fee[.]"

**Basis for Relief Requested**

16.    Payment of the Forbearance Fee is in the best interests of the Debtors, their creditors, and all interested parties. The Forbearance will allow the Debtors to continue the sale process and work with various bidders and potential bidders to obtain the highest and best value

for creditors. The Forbearance Period ends within one week after the deadline to close the sale. Moreover, the Debtors submit that the amount of the Forbearance Fee is reasonable.

17.     The Debtors respectfully request emergency consideration of this Motion. Without the payment of the Forbearance Fee, the Agent would be immediately entitled to exercise its default-related rights and remedies under the DIP Loan Documents—which would jeopardize the Debtors' efforts to maximize value through the sale process. Accordingly, the Debtors respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

18.     The Debtors submit that such relief is appropriate and necessary under the circumstances.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

19.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h), if applicable.

### Certification of Accuracy

20.     Pursuant to Local Rule 9013-1(i), this Motion is verified as to its accuracy by Debtors' counsel.

### Notice

21.     Notice of this Motion will be provided to the Master Service List, including: (a) the U.S. Trustee; (b) all secured creditors; (c) the Offices of the Attorney General of the State of Texas and the United States Virgin Islands; (d) the thirty (30) largest consolidated unsecured creditors for the Debtors; (e) the Debtors' identified, interested taxing authorities, including the Internal Revenue Service; (f) the Debtors' identified, interested government and regulatory entities; (g)

other interested parties as identified by the Debtors; (h) the Committee members and their counsel, if known; (i) counsel to the Committee; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The method of service for each party will be described more fully in the certificate of service prepared by the Debtors' claims and noticing agent. The Debtors submit that no other or further notice is required.

[*remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, granting the Motion and granting all other relief that is appropriate under the circumstances.

Dated: November 4, 2021

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
**Jimmy D. Parrish, Esq.**
Fed. ID No. 2687598
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL  32801-3432
Telephone:  407.649.4000
Facsimile:  407.841.0168
Email: egreen@bakerlaw.com
        jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
*Admitted Pro Hac Vice*
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone:  212.589.4200
Facsimile:  212.589.4201
Email: jrose@bakerlaw.com

*Counsel for the Debtors and Debtors in Possession*

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Elizabeth A. Green*
Elizabeth A. Green

**Certificate of Service**

I certify that on November 4, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Elizabeth A. Green*
Elizabeth A. Green

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| IN RE: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*,[1]** | **CASE NO.: 21-32351 (DRJ)** |
| Debtors. | **(Jointly Administered)** |

**ORDER GRANTING DEBTORS' <u>EMERGENCY</u> MOTION
<u>FOR AUTHORITY TO PAY FORBEARANCE FEE</u>**

Upon the motion ("**Motion**")[2] of the debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**") for entry of an order (the "**Order**") authorizing, but not directing, the Debtors to pay the Forbearance Fee, as more fully set forth in the Motion; finding this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; finding that this matter is a core proceeding pursuant to 28 U.S.C. § 157; finding this Court may enter final orders in this matter consistent with Article III of the United States Constitution; finding that this matter is properly venued in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; finding notice of the Motion due and proper under the circumstances and in accordance with all applicable rules and orders, and no further or additional notice of the Motion being warranted; receiving no objections to the relief requested in the Motion; having considered the Motion, and all other documents submitted in support of the Motion; and, after due deliberation, finding that the relief requested by and through the Motion is due and proper, is premised on the Debtors' sound business judgment, and serves the best interests of the estates and their creditors; and sufficient cause appearing therefor,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

**IT IS HEREBY ORDERED:**

1.        The Motion is hereby granted in its entirety.

2.        The Debtors shall have the authority, but are not directed, to pay the Agent, on behalf of the Lenders, the Forbearance Fee.

3.        Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

4.        Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

5.        This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

DATED:

_____
Honorable David R. Jones
United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC,** *et al.*,[1] | **CASE NO.: 21-32351 (DRJ)** |
| **Debtors.** | **(Jointly Administered)** |

**SECOND NOTICE OF EXTENSION OF MILESTONES
AND BID PROCEDURES DEADLINES**

**PLEASE TAKE NOTICE** that, pursuant to the Court's *Order Granting Debtors' Emergency Motion to Amend Milestones and Bid Procedures Deadlines* (Doc. 583) (the "**Order**"), the Milestones and Bid Procedures Deadlines (each as defined in the Order) are hereby amended in accordance with the attached <u>Exhibit A</u>.  Except as expressly amended hereby, the Milestones and Bid Procedures Deadlines provided in the *Notice of Extension of Milestones and Bid Procedures Deadlines* (Doc. 696) filed on October 28, 2021 shall remain the same.

*[signature page follows]*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

Dated: November 10, 2021

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
**Jimmy D. Parrish, Esq.**
Fed. ID No. 2687598
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL  32801-3432
Telephone:  407.649.4000
Facsimile:   407.841.0168
Email: egreen@bakerlaw.com
           jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
*Admitted Pro Hac Vice*
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York 10111
Telephone:  212.589.4200
Facsimile:  212.589.4201
Email: jrose@bakerlaw.com

*Counsel for the Debtors and Debtors in Possession*

**<u>Certificate of Service</u>**

 **I HEREBY CERTIFY** that on November 10, 2021, a true copy of the foregoing was filed with the Court using the CM/ECF System, which will provide notice of such filing to all parties requesting such service.

*/s/ Elizabeth A. Green*
Elizabeth A. Green

2

## EXHIBIT A

| Event | Current Date/Deadline | New Date/Deadline |
|---|---|---|
| Deadline to provide notice of Auction location | November 10, 2021, at 10:00 a.m. CT | November 12, 2021, at 5:00 p.m. CT |
| Deadline for Qualified Bidder(s) to make good faith cash deposit(s) | November 10, 2021, at 10:00 a.m. CT | November 12, 2021, at 5:00 p.m. CT |
| Auction Date, if necessary | November 12, 2021, at 10:00 a.m. CT | November 15, 2021, at 10:00 a.m. CT |
| Deadline to file the Designation of Winning Bid | November 15, 2021 | November 18, 2021 |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| IN RE: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*,[1]** | **CASE NO.: 21-32351 (DRJ)** |
| **Debtors.** | **(Jointly Administered)** |

**DEBTORS' <u>EMERGENCY</u> MOTION TO AMEND
<u>BID PROCEDURES ORDER AND OTHER RELATED RELIEF</u>**

**Emergency relief has been requested. A hearing will be conducted on this matter on November 15, 2021, at 3:30 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk St., Houston, Texas 77002. You may participate in the hearing by audio/video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691.**

**You may view video via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "JudgeJones" in the GoToMeeting app or click the link on Judge Jones's home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu. Select "Judges' Procedures," then "View Home Page" for Judge Jones. Under "Electronic Appearance" select "Click here to submit Electronic Appearance". Select the case name, complete the required fields and click "Submit" to complete your appearance.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must either appear at the hearing or file a written response prior to the hearing. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**Relief is requested not later than November 15, 2021.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

Limetree Bay Services, LLC ("**Limetree**") and its debtor affiliates (collectively, the "**Debtors**"), as debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), respectfully represent as follows in support of this motion (the "**Motion**").

## Relief Requested

1.        Pursuant to Sections 363(b), (f), and (m) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Section K of the Procedures for Complex Cases in the Southern District of Texas (the "**Complex Rules**"), the Debtors hereby move for entry of an order amending the Bid Procedures Order (defined below), substantially in the form attached hereto as <u>Exhibit A</u> (the "**Proposed Order**"), in order to increase the percentage of the Bid Protections (defined below) from three percent (3%) to five percent (5%)[2] and modify those terms such that the Bid Protections would be payable on a closing of a sale as an expenses reimbursement whether or not the proposed purchaser ultimately wins the auction (the "**Bid Procedures Amendments**").

## Jurisdiction and Venue

2.        The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

3.        This Court has constitutional authority to enter final orders with respect to the relief requested herein. The Debtors further confirm their consent to this Court's entry of final orders or

---

[2] As explained further below, the value to the estate for the sale is well in excess of the amount of the nominal purchase price in the asset purchase agreement.

judgments on this Motion, if it is later determined that, in the absence of the consent of the parties, this Court does not have constitutional authority to enter final orders or judgments.

## Background

4.        On July 12, 2021 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code—thereby commencing the above-captioned Chapter 11 Cases. The Debtors continue to operate their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases. On or about July 26, 2021, an Official Committee of Unsecured Creditors was appointed (Doc. 189) (the "**Committee**").

5.        On July 13, 2021, the Court entered an order jointly administering the Chapter 11 Cases under Case No. 21-32351 (DRJ) (Doc. 20).

6.        A discussion of the facts and circumstances surrounding these Chapter 11 Cases and underlying the relief requested herein is set forth in the *Declaration of Mark Shapiro in Support of Chapter 11 Petitions and First Day Motions* (Doc. 8) (the "**First Day Declaration**"), which was filed on the Petition Date and is incorporated herein by reference in its entirety.

7.        On July 26, 2021, the Debtors filed an *Emergency Motion for Entry of Order: (i) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief* (Doc. 191) (the "**Bid Procedures Motion**").

8.        On August 11, 2021, the Court entered an order granting the Bid Procedures Motion (Doc. 381) (the "**Bid Procedures Order**").[3] In accordance with the Bid Procedures Order, the Stalking Horse Bidder is granted certain Bid Protections. Such Bid Protections include "any break-

---

[3] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Bid Procedures Order.

4890-2398-0291.1

up fee, expense reimbursement, termination fee or similar type of payment or bid protections[.]" Bid Procedures Motion, § 3(n).

9.      Currently, "the aggregate amount of any proposed Bid Protections may not exceed three percent (3%) of the total purchase price under the Bid." *Id.* In the Bid Procedures Motion, the Debtors explicitly "reserve[d] the right to supplement the discussion of any Bid Protections and the bases for approving such Bid Protections in any Stalking Horse Notices." *Id.* at § 70.

10.     The Debtors, through their investment bankers Jefferies LLC, commenced an extensive "going-concern sale" marketing process over the past three months.   The Debtors, through B. Riley Advisory Services, also simultaneously performed a liquidation sale process.   In connection with the Debtors' going-concern sale marketing process, the Debtors officially contacted 183 potential buyers. The Debtors signed NDAs with 35 potential interested parties who accessed the Debtors' data room and performed due diligence. The Debtors received several letters of interest for a going-concern sale.   While the Debtors believe they will receive additional qualified bids and are in the process of working with other qualified bidders, the bid of St. Croix Energy, LLLP (the "**Stalking Horse Bidder**") is the only qualified bid received by the date of this Motion.

11.     After extensive marketing efforts, on or around November 14, 2021, the Debtors received a firm bid with an executed asset purchase agreement from the Stalking Horse Bidder for $20 million for all or substantially all of the Debtors' Assets on a "going-concern" basis. Over the last few days, the Debtors have negotiated a significant increase in the amount being offered by the Stalking Horse Bidder.   In exchange, the Stalking Horse Bidder has required an increase in the total allowable amount of Bid Protections from three percent (3%) to five percent (5%)—which would result in reimbursement of expenses of $1 million payable on the closing of a sale. The

Stalking Horse Bidder will receive payment of the Bid Protections whether or not it is the successful bidder and will be paid from the proceeds of the purchase price. Thus, with these changes to the Bid Protections, a $20 million purchase price would generate $19 million for the Debtors' estates (the "**Estates**"). The $1 million Bid Protections would be deducted from the $20 million purchase price such that the Debtors would receive $19 million whether or not the Stalking Horse Bidder is the winning bidder and closes a transaction with the Debtors.

12.     Based upon the Stalking Horse Bidder's participation in the sale process, the Debtors have observed a considerable amount of outside professional time associated with this proposed sale.  The Stalking Horse Bidder has represented to the Debtors it has already incurred, or will shortly incur, in excess of the amount sought as reimbursement in professional fees and expenses. The complexities of the Debtors' businesses and attendant professional costs are evident—given all of the regulatory, operational, compliance, financial, and other issues required for a successful sale and planned restart of the refinery.

## The Requested Relief is Reasonable and Should be Approved

13.     Pursuant to Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course of business may be by private sale or auction. Fed. R. Bankr. P. 6004(f)(1). The paramount goal of any proposed sale of property of a debtor is to maximize the value received by the estate. *See, e.g., Official Committee of Subordinated Bondholders v. Integrated Resources. Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 659 ("It is a well-establish principal of bankruptcy law that the Debtors' duty with respect to [Section 363] sales is to obtain the highest price or greatest overall benefit possible for the estate"), *quoting Cello Bag Co. v. Champion Int'l Corp. (In re Atlanta Packaging Prods., Inc.)*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988).

4890-2398-0291.1

14.     To that end, debtors are granted significant latitude in devising and implementing bidding and sale procedures under Section 363 of the Bankruptcy Code. Indeed, bankruptcy courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the bid procedures to be used in selling assets of the estate. *See, e.g., In re Integrated Resources, Inc.*, 147 B.R. at 656–57 (noting that overbid procedures and break-up fee arrangements that have been negotiated by a debtor are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"); *See In re ASARCO, L.L.C.*, 650 F.3d at 601 ("The business judgment standard in section 363 is flexible and encourages discretion."); *see also GBL Holding Co. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254 (N.D. Tex. 2005) ("Great judicial deference is given to the Trustee's exercise of business judgment."), (citing *In re Gulf States Steel, Inc. of Ala.*, 285 B.R. 497, 516 (Bankr. N.D. Ala.2002)); *see also In re W.A. Mallory Co., Inc.*, 214 B.R. 834, 836–37 (Bankr. E.D. Va. 1997) ("[G]reat deference is given to a business in determining its own best interests."); *see also In re Global Crossing, Ltd.*, 295 B.R. 726, 744 n. 58 (Bankr. S.D.N.Y. 2003) ("[T]he Court does not believe that it is appropriate for a bankruptcy court to substitute its own business judgment for that of the [d]ebtors and their advisors….").

15.     While subject to further disclosure and objection, courts routinely approve bid protections, including break-up fees, expense reimbursement and other incentives as reasonable and, often, necessary to facilitate the sale of assets in chapter 11 cases. *See, e.g., In re Acis Capital Mgmt., L.P.*, 604 B.R. 484, 517 (N.D. Tex. 2019) ("Without the Break-Up Fee, the Trustee would have had no ready, willing, and able partner for the proposed Plan. . . ."); *In re Lincolnshire Campus, LLC*, 2010 WL 5269706 at *2 (Bankr. N.D. Tex. July 23, 2010) ("The Break-Up Fee . . . induced the Buyer to submit a bid that will serve as a minimum or floor bid on which the Debtors

6

. . . and other bidders can rely. Accordingly, the Break-Up Fee . . . [is] reasonable and appropriate and represent[s] the best method for maximizing the value for the benefit of the Debtors' estates."); *Reliant Energy Channelview LP v. Kelson Channelview LLC (In re Reliant Energy Channelview LP)*, 594 F.3d 200, 206-07 (3d Cir. 2010); *see also In re Integrated Res., Inc.*, 147 B.R. at 659-660 ("Breakup fees are important tools to encourage bidding and to maximize the value of the debtor's assets . . . . In fact, because the . . . corporation ha[s] a duty to encourage bidding, break-up fees can be necessary to discharge [such] duties to maximize values."); *In re ASARCO, L.L.C.*, 650 F.3d at 603 (affirming a break-up fee that the bankruptcy court found helped to maximize the debtor's estate).

16.     The Debtors submit that the Bid Procedures Amendments are supported by their sound business judgment and serve the best interests of the Debtors, their Estates, and their creditors. First, the Bid Procedures Amendments are both fair and reasonable given the complexity of these Chapter 11 Cases and the amount of due diligence required to properly evaluate the Assets. Second, the Debtors and the Stalking Horse Bidder have negotiated at arms'-length and in good faith with respect to the increase in the Bid Protections percentage from 3% to 5%. Third, the Debtors believe the Stalking Horse Bid is the best bid that the Debtors have received and, accordingly, it provides the best outcome for the Debtors and their Estates, their creditors, and all other parties in interest.

17.     The Debtors believe the consideration received for the Stalking Horse Bidder is well in excess of the nominal amount of $20 million in the asset purchase agreement. The Stalking Horse Bidder has agreed to incur millions in connection with the continuation of the Debtors' business post closing for operations and other expenses.  The Debtors also believe that the remediation costs would be very significant in these cases. When factoring in the value provided

by the Stalking Horse Bidder's agreement to pay certain continued costs and the avoidance of remediation costs, the Debtors believe the total value to the estates of entering into the asset purchase agreement would make the Bid Protections in line with 3% or less of that aggregate value.

18.     Denying the requested relief would jeopardize the viability of the Stalking Horse Bid, which would ultimately result in less proceeds available for distribution to creditors.

19.     Based on the foregoing, the Debtors respectfully request that the Court find that the Bid Procedures Amendments are supported by the sound business judgment of the Debtors.

## **Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

20.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h), if applicable.

## **Request for Emergency Relief**

21.     The Debtors respectfully request emergency consideration of this Motion. Under the current Bid Procedures Deadlines, there are several deadlines that are about to pass. Until the Court rules on this Motion, the Debtors and bidders are unable to meet these impending deadlines. Further, hearing the Motion on an emergency basis will not adversely affect any interested parties; rather, the relief requested herein, if granted, would provide a benefit to all interested parties.

## **Certification of Accuracy**

22.     Pursuant to Local Rule 9013-1(i), this Motion is verified as to its accuracy by Debtors' counsel.

4890-2398-0291.1

## **Notice**

23.     Notice of this Motion will be provided to the Master Service List, including: (a) the U.S. Trustee; (b) all secured creditors; (c) the Offices of the Attorney General of the State of Texas and the United States Virgin Islands; (d) the thirty (30) largest consolidated unsecured creditors for the Debtors; (e) the Debtors' identified, interested taxing authorities, including the Internal Revenue Service; (f) the Debtors' identified, interested government and regulatory entities; (g) other interested parties as identified by the Debtors; (h) the Committee members and their counsel, if known; (i) counsel to the Committee; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The method of service for each party will be described more fully in the certificate of service prepared by the Debtors' claims and noticing agent. The Debtors submit that no other or further notice is required.

*[remainder of page intentionally left blank]*

4890-2398-0291.1

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, granting the Motion and granting all other relief that is appropriate under the circumstances.

Dated: November 14, 2021

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
**Jimmy D. Parrish, Esq.**
Fed. ID No. 2687598
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL  32801-3432
Telephone:  407.649.4000
Facsimile:   407.841.0168
Email: egreen@bakerlaw.com
         jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
*Admitted Pro Hac Vice*
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York 10111
Telephone:  212.589.4200
Facsimile:  212.589.4201
Email: jrose@bakerlaw.com

*Counsel for the Debtors and Debtors in Possession*

4890-2398-0291.1

## Certificate of Accuracy

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Elizabeth A. Green*
Elizabeth A. Green


## Certificate of Service

I certify that on November 14, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Elizabeth A. Green*
Elizabeth A. Green

4890-2398-0291.1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| LIMETREE BAY SERVICES, LLC, *et al.*,[1] | CASE NO.: 21-32351 (DRJ) |
| Debtors. | (Jointly Administered) |

## ORDER GRANTING DEBTORS' <u>EMERGENCY</u> MOTION TO AMEND BID PROCEDURES ORDER AND OTHER RELATED RELIEF

Upon the motion ("**Motion**")[2] of the debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**") for entry of an order (the "**Order**") amending the Bid Procedures Order as more fully set forth in the Motion; finding this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; finding that this matter is a core proceeding pursuant to 28 U.S.C. § 157; finding this Court may enter final orders in this matter consistent with Article III of the United States Constitution; finding that this matter is properly venued in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; finding notice of the Motion due and proper under the circumstances and in accordance with all applicable rules and orders, and no further or additional notice of the Motion being warranted; receiving no objections to the relief requested in the Motion; having considered the Motion, and all other documents submitted in support of the Motion; and, after due deliberation, finding that the relief requested by and through the Motion is due and proper, is premised on the Debtors' sound business judgment, and serves the best interests of the estates and their creditors; and sufficient cause appearing therefor,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

**IT IS HEREBY ORDERED:**

1.      The Motion is hereby granted in its entirety.

2.      The allowable Bid Protections may be increased, based upon the Debtors' sole discretion, from three percent (3%) to five percent (5%) of the aggregate purchase price, in the amount of $1 million, payable on a closing of a sale as an expenses reimbursement whether or not the Stalking Horse Purchaser ultimately wins the auction.

3.      Unless otherwise explicitly amended hereby, the Bid Procedures Order shall remain unaffected.

4.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

5.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

6.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

DATED:

_____
Honorable David R. Jones
United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| IN RE: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*,[1]** | **CASE NO.: 21-32351 (DRJ)** |
| **Debtors.** | **(Jointly Administered)** |

**THIRD NOTICE OF EXTENSION OF MILESTONES
AND BID PROCEDURES DEADLINES**

**PLEASE TAKE NOTICE** that, pursuant to the Court's *Order Granting Debtors' Emergency Motion to Amend Milestones and Bid Procedures Deadlines* (Doc. 583) (the "**Order**"), the Milestones and Bid Procedures Deadlines (each as defined in the Order) are hereby amended in accordance with the attached <u>Exhibit A</u>.  Except as expressly amended hereby, the Milestones and Bid Procedures Deadlines provided in the *Notice of Extension of Milestones and Bid Procedures Deadlines* (Doc. 696) filed on October 28, 2021 shall remain the same.

[*signature page follows*]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

Dated: November 14, 2021

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
**Jimmy D. Parrish, Esq.**
Fed. ID No. 2687598
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL  32801-3432
Telephone:  407.649.4000
Facsimile:   407.841.0168
Email: egreen@bakerlaw.com
        jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
*Admitted Pro Hac Vice*
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York 10111
Telephone:  212.589.4200
Facsimile:  212.589.4201
Email: jrose@bakerlaw.com

*Counsel for the Debtors and Debtors in
Possession*

**<u>Certificate of Service</u>**

 **I HEREBY CERTIFY** that on November 14, 2021, a true copy of the foregoing was filed
with the Court using the CM/ECF System, which will provide notice of such filing to all parties
requesting such service.

*/s/ Elizabeth A. Green*
Elizabeth A. Green

## EXHIBIT A

| Event | Current Date/Deadline | New Date/Deadline |
|---|---|---|
| Deadline to provide notice of Auction location | November 12, 2021, at 5:00 p.m. CT | November 16, 2021, at 5:00 p.m. CT |
| Deadline for Qualified Bidder(s) to make good faith cash deposit(s) | November 12, 2021, at 5:00 p.m. CT | November 16, 2021, at 5:00 p.m. CT |
| Auction Date, if necessary | November 15, 2021, at 10:00 a.m. CT | November 18, 2021, at 10:00 a.m. CT |
| Deadline to file the Designation of Winning Bid | November 18, 2021 | November 22, 2021 |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*,**[1] | **CASE NO.: 21-32351 (DRJ)** |
| Debtors. | **(Jointly Administered)** |

**DECLARATION OF MICHAEL O'HARA IN SUPPORT OF DEBTORS' EMERGENCY**
**MOTION TO AMEND BID PROCEDURES ORDER AND OTHER RELATED RELIEF**

I, Michael O'Hara, hereby declare under penalty of perjury that, to the best of my knowledge and belief, and after reasonable inquiry, the following is true and correct:

1.     I am a Managing Director at Jefferies LLC ("**Jefferies**"), an investment banking and financial advisory firm with principal offices located at 520 Madison Avenue, New York, New York 10022, as well as at other locations worldwide.

2.     I submit this declaration (this "**Declaration**") in support of the Debtors' *Emergency Motion to Amend Bid Procedures Order and Other Related Relief* (the "**Motion**").[2]

3.     On September 10, 2021, the Court authorized the retention of Jefferies to serve as the Debtors' investment banker effective as of July 16, 2021 (Doc. 563).

4.     Except as otherwise indicated, I have personal knowledge of the matters set forth herein, and, if called as a witness, would testify competently thereto. Certain of the disclosures herein, however, relate to matters within my personal knowledge of other professionals at Jefferies and are based on information provided by such professionals.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Motion.

5.     Jefferies commenced an extensive "going-concern sale" marketing process over the past three months. Throughout the course of the process, Jefferies contacted 185 prospective investors and received several letters of interest for a going-concern sale. Thirty-five parties executed nondisclosure agreements with the Debtors, accessed the Debtors' data room, and performed due diligence.

6.     While Jefferies believes it may receive additional qualified bids and is in the process of working with other potential qualified bidders, the St. Croix Energy, LLLP (the "**Stalking Horse Bidder**") bid is the only qualified bid received by the date of this Motion.

7.     After extensive marketing efforts, on October 25, 2021, the Debtors and Jefferies received an opening bid from the Stalking Horse Bidder of $11.5 million.

8.     However, over the last few days, the parties have negotiated a significant increase in the amount being offered by the Stalking Horse Bidder. To that end, on or around November 14, 2021, Jefferies received a firm bid with an executed asset purchase agreement from the Stalking Horse Bidder for $20 million—or $8.5 million more than the Stalking Horse Bidder's initial bid—for all or substantially all of the Debtors' Assets on a "going-concern" basis. In exchange, the Stalking Horse Bidder has required an increase in the total allowable amount of Bid Protections from three percent (3%) to five percent (5%)—which would result in reimbursement of expenses of $1 million payable on the closing of a sale. The Stalking Horse Bidder will receive payment of the Bid Protections whether or not it is the successful bidder and will be paid from the proceeds of the purchase price.

9.     Based upon the Stalking Horse Bidder's participation in the sale process, Jefferies has observed a considerable amount of outside professional time associated with this proposed

sale.  The Stalking Horse Bidder has represented to Jefferies it has already incurred, or will shortly

incur, in excess of the amount sought as reimbursement in professional fees and expenses.

10.     Jefferies believes the increase in Bid Protections is both fair and reasonable given

the complexities of the Debtors' businesses—the regulatory, operational, compliance, financial,

and other issues required for a successful sale and planned restart of the refinery.

I declare under penalty of perjury that the foregoing statements are true and correct to the

best of my knowledge, information, and belief.

Dated: November 14, 2021
       New York, New York

Respectfully submitted,

*/s/ Michael O'Hara*
Michael O'Hara
Managing Director
Jefferies LLC

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| IN RE: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*,**[1] | **CASE NO.: 21-32351** |
| Debtors. | **(Jointly Administered)** |

**DEBTORS' WITNESS AND
<u>EXHIBIT LIST FOR NOVEMBER 15, 2021 HEARING</u>**

Limetree Bay Services, LLC and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively the "**Debtors**") submit the following Exhibit and Witness List for the hearing at **3:30 p.m. Central Time on November 15, 2021**, to consider *Debtors' Emergency Motion to Amend Bid Procedures Order and Other Related Relief* (Doc. No. 760) (the "**Motion**") filed in the above-captioned bankruptcy case (the "**Bankruptcy Case**").

<u>**WITNESS LIST**</u>

1.  Mark Shapiro, Chief Restructuring Officer

2.  Michael O'Hara, Managing Director, Jefferies LLC

3.  Any witness listed or called by any party.

4.  Any witness required for rebuttal.

*[space left intentionally blank]*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866);  Limetree Bay Refining Holdings, LLC.(1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

4863-6111-1554.1

## DEBTORS' EXHIBIT LIST

| Ex. # | Description | Offered | Objection | Admitted/ Not Admitted | Disposition |
|---|---|---|---|---|---|
| 1 | Declaration of Michael O'Hara in Support of the Motion (Doc. No. 762) | 11/15/21 | | | |
| | Any document or pleading filed in the Bankruptcy Case. | | | | |
| | Any exhibit necessary for impeachment and/or rebuttal purposes. | | | | |
| | Any exhibit identified or offered by any other party. | | | | |

Debtors reserve the right to modify, amend or supplement this Exhibit and Witness List at any time. Debtors reserve the right to ask the Court to take judicial notice of pleadings, transcripts and/or documents filed in or in connection with the Bankruptcy Case, to offer rebuttal exhibits, and to supplement or amend this Witness and Exhibit List prior to the hearing. Designation of any exhibit above does not waive any objections Debtors may have to any exhibit listed on any other party's exhibit list.

Respectfully submitted this 14th day of November 2021.

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
So. Dist. Fed ID 903144
**Jimmy D. Parrish, Esq.**
So. Dist. Fed ID 2687598
200 S. Orange Avenue
Suite 2300
Orlando, FL 32801
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
E-mail: egreen@bakerlaw.com

E-mail: jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com
*(Admitted Pro Hac Vice)*

*Counsel for the Debtors and Debtors in Possession*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 14, 2021, a true copy of the forgoing was filed with the Court using the CM/ECF System, which will provide notice of such filing to all parties requesting such notice.

*/s/ Elizabeth A. Green*
Elizabeth A. Green

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| LIMETREE BAY SERVICES, LLC, *et al.*,[1] | CASE NO.: 21-32351 (DRJ) |
| Debtors. | (Jointly Administered) |

## DECLARATION OF MICHAEL O'HARA IN SUPPORT OF DEBTORS' EMERGENCY MOTION TO AMEND BID PROCEDURES ORDER AND OTHER RELATED RELIEF

I, Michael O'Hara, hereby declare under penalty of perjury that, to the best of my knowledge and belief, and after reasonable inquiry, the following is true and correct:

1. I am a Managing Director at Jefferies LLC ("**Jefferies**"), an investment banking and financial advisory firm with principal offices located at 520 Madison Avenue, New York, New York 10022, as well as at other locations worldwide.

2. I submit this declaration (this "**Declaration**") in support of the Debtors' *Emergency Motion to Amend Bid Procedures Order and Other Related Relief* (the "**Motion**").[2]

3. On September 10, 2021, the Court authorized the retention of Jefferies to serve as the Debtors' investment banker effective as of July 16, 2021 (Doc. 563).

4. Except as otherwise indicated, I have personal knowledge of the matters set forth herein, and, if called as a witness, would testify competently thereto. Certain of the disclosures herein, however, relate to matters within my personal knowledge of other professionals at Jefferies and are based on information provided by such professionals.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Motion.

5.      Jefferies commenced an extensive "going-concern sale" marketing process over the past three months. Throughout the course of the process, Jefferies contacted 185 prospective investors and received several letters of interest for a going-concern sale. Thirty-five parties executed nondisclosure agreements with the Debtors, accessed the Debtors' data room, and performed due diligence.

6.      While Jefferies believes it may receive additional qualified bids and is in the process of working with other potential qualified bidders, the St. Croix Energy, LLLP (the "**Stalking Horse Bidder**") bid is the only qualified bid received by the date of this Motion.

7.      After extensive marketing efforts, on October 25, 2021, the Debtors and Jefferies received an opening bid from the Stalking Horse Bidder of $11.5 million.

8.      However, over the last few days, the parties have negotiated a significant increase in the amount being offered by the Stalking Horse Bidder. To that end, on or around November 14, 2021, Jefferies received a firm bid with an executed asset purchase agreement from the Stalking Horse Bidder for $20 million—or $8.5 million more than the Stalking Horse Bidder's initial bid— for all or substantially all of the Debtors' Assets on a "going-concern" basis. In exchange, the Stalking Horse Bidder has required an increase in the total allowable amount of Bid Protections from three percent (3%) to five percent (5%)—which would result in reimbursement of expenses of $1 million payable on the closing of a sale. The Stalking Horse Bidder will receive payment of the Bid Protections whether or not it is the successful bidder and will be paid from the proceeds of the purchase price.

9.      Based upon the Stalking Horse Bidder's participation in the sale process, Jefferies has observed a considerable amount of outside professional time associated with this proposed

sale. The Stalking Horse Bidder has represented to Jefferies it has already incurred, or will shortly incur, in excess of the amount sought as reimbursement in professional fees and expenses.

10. Jefferies believes the increase in Bid Protections is both fair and reasonable given the complexities of the Debtors' businesses—the regulatory, operational, compliance, financial, and other issues required for a successful sale and planned restart of the refinery.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: November 14, 2021            Respectfully submitted,
       New York, New York

                                   */s/ Michael O'Hara*
                                   Michael O'Hara
                                   Managing Director
                                   Jefferies LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*,**[1] | **CASE NO.: 21-32351 (DRJ)** |
| Debtors. | **(Jointly Administered)** |

## FOURTH NOTICE OF EXTENSION
## OF MILESTONES AND BID PROCEDURES DEADLINES

**PLEASE TAKE NOTICE** that, pursuant to the *Order Granting Debtors' Emergency Motion to Amend Milestones and Bid Procedures Deadlines* (Doc. 583) (the "**Order**"),[2] the Milestones and Bid Procedures Deadlines established therein are hereby amended in accordance with the attached <u>Exhibit A</u>. Except as expressly amended hereby, the Milestones and Bid Procedures Deadlines provided in the *Notice of Extension of Milestones and Bid Procedures Deadlines* (Doc. 696) filed on October 28, 2021 and the *Third Notice of Extension of Milestones and Bid Procedures Deadlines* (Doc. No. 761) filed on November 14, 2021 shall remain the same.

*[signature page follows]*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2]  Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Order or *Debtors' Emergency Motion to Amend Milestones and Bid Procedures Deadlines* (Doc. No. 565), as applicable.

Dated: November 19, 2021

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*        
**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
**Jimmy D. Parrish, Esq.**
Fed. ID No. 2687598
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL  32801-3432
Telephone:  407.649.4000
Facsimile:   407.841.0168
Email: egreen@bakerlaw.com
        jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
*Admitted Pro Hac Vice*
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone:  212.589.4200
Facsimile:  212.589.4201
Email: jrose@bakerlaw.com

*Counsel for the Debtors and Debtors in Possession*

## Certificate of Service

    **I HEREBY CERTIFY** that on November 19, 2021, a true copy of the foregoing was filed with the Court using the CM/ECF System, which will provide notice of such filing to all parties requesting such service.

          */s/ Elizabeth A. Green*        
          Elizabeth A. Green

## EXHIBIT A

| Event | Current Date/Deadline | New Date/Deadline |
|---|---|---|
| Deadline to file the Designation of Winning Bid | November 22, 2021 | November 24, 2021 |
| Expected Service of Notice of Designation of Winning Bid and Sale Hearing | N/A | November 26, 2021 – December 1, 2021 |
| Deadline to object to the Sale | November 26, 2021, at 5:00 p.m. CT | December 3, 2021 at 5:00 p.m. CT |
| Contract Assumption Objection Deadline | November 29, 2021, at 12:00 p.m. CT | December 3, 2021 at 5:00 p.m. CT |
| Deadline to reply to objection(s) to the Sale | November 29, 2021, at 5:00 p.m. CT | December 6, 2021 at 5:00 p.m. CT |
| Deadline to file Amended Designation of Winning Bid to add Additional Purchased Contracts | December 3, 2021 | December 7, 2021 |
| Sale Hearing (subject to Court availability) | December 3, 2021 | December 7, 2021 |
| Expected entry of Sale Order | December 6, 2021 | December 9, 2021 |
| Deadline to file Amended Designation of Winning Bid to remove previously identified Executory Contracts | December 9, 2021 | December 9, 2021 |
| Deadline for Winning Bidder to close sale transaction | December 10, 2021, at 5:00 p.m. CT | December 10, 2021, at 5:00 p.m. CT |
| Deadline for Back-up Bidder to close sale transaction (if applicable) | December 13, 2021, at 5:00 p.m. CT | December 13, 2021, at 5:00 p.m. CT |

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

November 22, 2021

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*,[1]** | **CASE NO.: 21-32351 (DRJ)** |
| Debtors. | **(Jointly Administered)** |

### ORDER GRANTING DEBTORS' <u>EMERGENCY</u> MOTION TO
### <u>AMEND BID PROCEDURES ORDER AND OTHER RELATED RELIEF</u>
(Docket No. 760)

Upon the motion ("**Motion**")[2] of the debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**") for entry of an order (the "**Order**") amending the Bid Procedures Order as more fully set forth in the Motion; finding this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; finding that this matter is a core proceeding pursuant to 28 U.S.C. § 157; finding this Court may enter final orders in this matter consistent with Article III of the United States Constitution; finding that this matter is properly venued in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; finding notice of the Motion due and proper under the circumstances and in accordance with all applicable rules and orders, and no further or additional notice of the Motion being warranted; receiving no objections to the relief requested in the Motion; having considered the Motion, and all other documents submitted in support of the Motion; and, after due deliberation, finding that the relief requested by and through the Motion is due and proper, is premised on the Debtors' sound business judgment, and serves the best interests of the estates and their creditors; and sufficient cause appearing therefor,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

**IT IS HEREBY ORDERED:**

1.      The Motion is hereby granted in its entirety.

2.      The Debtors shall provide the Stalking Horse Bidder as a Bid Protection an expense reimbursement in the amount $1 million to reimburse the Stalking Horse Bidder for expenses, including attorneys' and investment banking fees and costs, incurred in connection with the Stalking Horse Bid, which Bid Protection shall be payable solely from the proceeds of any sale transaction that has a purchase price of at least $20 million; *provided, however*, if the consideration for such sale transaction is in the form of a credit bid of existing debt obligations, the Bid Protection in the amount of $1 million shall be allowed as an administrative expense claim consistent with paragraph 3 below; *provided, further*, that the Stalking Horse Bidder shall not be entitled to any Bid Protections, and any such amounts shall not be due or payable or otherwise allowed as an administrative expense claim, if (a) either the Debtors or the Stalking Horse Bidder declines to proceed with or terminates the Stalking Horse Bid due to the inability to reach agreement on any material transaction document, including, without limitation, the transition services agreement, or (b) the Stalking Horse Bidder (i) breaches the Stalking Horse Bid, which breach has not been waived by the Debtors (*provided* the Debtors may not waive a breach relating to the purchase price), (ii) does not, for any reason other than a breach by the Debtor, close the transaction memorialized in the Stalking Horse Bid by the closing date, or (iii) terminates the Stalking Horse Bid.

3.      The Bid Protection approved by this Order is an actual and necessary expense of the Debtors' estates and, to the extent not paid from cash proceeds from any sale because the successful bidder credit bids its existing debt obligations, shall be deemed an allowed superpriority administrative expense claim under section 503(b) of the Bankruptcy Code, senior to all other

allowed administrative expense claims, other than (x) those administrative expense claims payable from the Carve-Out (as defined in the final order authorizing the Debtors to obtain postpetition financing) (the "**Carve-Out Claims**") and (y) the superpriority adequate protection claims granted to the Debtors' prepetition secured lenders under the final order authorizing the Debtors to obtain postpetition financing (the "**Adequate Protection Claims**"), payable out of the first proceeds available to pay administrative claims that are not Carve-Out Claims or Adequate Protection Claims.

4.      Unless otherwise explicitly amended hereby, the Bid Procedures Order shall remain unaffected.

5.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

6.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

7.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

   **Signed:  November 22, 2021.**

_____
**DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | CHAPTER 11 |
| **LIMETREE BAY SERVICES, LLC,** *et al.* [1] | CASE NO.: 21-32351 |
| Debtors. | Jointly Administered |

## NOTICE OF FILING THREE-WEEK BUDGET

**PLEASE TAKE NOTICE** that Limetree Bay Services, LLC and its affiliates in the above referenced jointly administered bankruptcy cases as debtors and debtors in possession (collectively, the "**Debtors**") hereby submit the three-week budget attached hereto as Exhibit 1 (the "**Three-Week Budget**") in connection with their continued use of cash collateral in accordance with the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* (Doc. No 495) (the "**Final DIP Order**"). The Debtors have met the requirements to modify or amend the Approved Budget in accordance with Paragraphs N and 26 of the Final DIP Order.[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Final DIP Order.

Dated: November 22, 2021

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
**Jimmy D. Parrish, Esq.**
Fed. ID No. 2687598
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile: 407.841.0168
Email: egreen@bakerlaw.com
         jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
(Admitted Pro Hac Vice)
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com

*Counsel for the Debtors and Debtors in Possession*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 22, 2021, a true and correct copy of the foregoing was filed with the Court using the CM/ECF System, which will provide notice of such filing to all parties requesting such notice.

*/s/ Elizabeth A. Green*
Elizabeth A. Green

4882-8236-4164.1

**<u>EXHIBIT A</u>**

**THREE-WEEK BUDGET**

**Limetree Bay Refinery**

Proposed Budget Forecasted Results of Operations and Cash Flows

Wks Beginning    _11/22/21_    _thru_    _12/6/21_

| | | | Week -----> | 20 | 21 | 22 | TOTAL |
|---|---|---|---|---|---|---|---|
| | | | Beginning of Week | 11/22/21 | 11/29/21 | 12/6/21 | |
| | | | End of Week | 11/28/21 | 12/5/21 | 12/12/21 | |
| **Cash Receipts** | | | | | | | |
| BP - TBD | [1] | | $ | - | $ - | $ - | $ - |
| Excess Construction Material | [2] | | | - | - | 250 | 250 |
| Benefits Refund | | | | - | 196 | - | 196 |
| Asset Sale | [3] | | | - | - | 19,000 | 19,000 |
| **Total** | **Cash Receipts** | | | $ - | $ 196 | $ 19,250 | $ 19,446 |
| **Cash Disbursements** | | | | | | | |
| Payroll / Benefits | | | $ | 148 | $ 128 | $ - | $ 276 |
| Maintenance, Other Outside Services, & Misc. | | | | 100 | 100 | 100 | 300 |
| Insurance | | | | - | 60 | - | 60 |
| EPA Mandated Independent Observer | | | | 30 | 30 | 30 | 90 |
| Utility Adequate Assurance Payment | | | | 33 | - | - | 33 |
| Hydrocarbon Removal | | | | 247 | 247 | 247 | 742 |
| Flare Repair | | | | 20 | - | - | 20 |
| Fuel | [4] | | | 19 | - | - | 19 |
| Transition Services Agreement | | | | 88 | 88 | 88 | 265 |
| **Total** | **Cash Disbursements** | | $ | 686 | $ 653 | $ 466 | $ 1,805 |
| **Operating Cash Flow** | | | $ | (686) | $ (457) | $ 18,784 | $ 17,641 |
| **DIP Loan Financing Fees** | | | | | | | |
| Arena DIP Cash Interest | | | $ | - | $ 53 | $ - | $ 53 |
| Arena DIP PIK Interest | | | | - | - | - | - |
| Arena DIP Deferred Commitment Fee | | | | - | - | - | - |
| Arena DIP Forbearance Fee | | | | - | - | - | - |
| **Total** | **DIP Loan Financing Fees** | | | - | 53 | - | 53 |
| **Net Cash Flow Before Professional Fees** | | | | (686) | (511) | 18,784 | $ 17,587 |
| **Professional Fees** | | | | | | | |
| Debtor Legal | | | $ | - | $ - | $ - | $ - |
| DIP Lender Counsel | | | | - | - | - | - |
| Independent Director | | | | - | - | - | - |
| US Trustee Fees | | | | - | - | - | - |
| **Total** | | | $ | - | $ - | $ - | $ - |
| **Net Cash Flow** | | | $ | (686) | $ (511) | $ 18,784 | $ 17,587 |
| _Accumulated_ | | | $ | (686) | $ (1,197) | $ 17,587 | |
| **Beginning Cash Balance** | | | $ | 2,959 | $ 2,274 | $ 1,763 | $ 2,959 |
| **Net Cash Flow** | | | | (686) | (511) | 18,784 | 17,587 |
| **Arena DIP (Paydown)** | | | | - | - | - | - |
| **Ending Cash Balance** | | | $ | 2,274 | $ 1,763 | $ 20,547 | $ 20,547 |
| **Ending DIP Balance** | | | $ | 19,933 | $ 19,933 | $ 19,933 | $ 19,933 |
| _Debtor Professional Fees Accrued (Cumulative)_ | | | $ | 6,081 | $ 6,392 | $ 6,704 | |
| _UCC Professional Fees Accrued (Cumulative)_ | | | $ | 1,671 | $ 1,764 | $ 1,857 | |

[1] - The Debtors continue discussions with BP regarding settlement of outstanding commission margin sharing invoices ("CMS").
[2] - Certain inventory items are for sale and on consignment with NRI.

**Limetree Bay Refinery**

**Proposed Budget Forecasted Results of Operations and Cash Flows**

Wks Beginning   _11/22/21_   _thru_   _12/6/21_

| Week -----> | 20 | 21 | 22 | TOTAL |
|---|---|---|---|---|
| Beginning of Week | 11/22/21 | 11/29/21 | 12/6/21 | |
| End of Week | 11/28/21 | 12/5/21 | 12/12/21 | |

[3] - Assumes sale transaction(s) closed in week 22.
[4] - In week 21, there will be an in-kind payment of fuel to LBT valued at $500k.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, _et al._,[1]** | **CASE NO.: 21-32351 (DRJ)** |
| **Debtors.** | **(Jointly Administered)** |

**FIFTH NOTICE OF EXTENSION**
**OF MILESTONES AND BID PROCEDURES DEADLINES**

　　**PLEASE TAKE NOTICE** that, pursuant to the _Order Granting Debtors' Emergency Motion to Amend Milestones and Bid Procedures Deadlines_ (Doc. 583) (the "**Order**"),[2] the Milestones and Bid Procedures Deadlines established therein are hereby amended in accordance with the attached Exhibit A.   Except as expressly amended hereby, the Milestones and Bid Procedures Deadlines provided in the _Notice of Extension of Milestones and Bid Procedures Deadlines_ (Doc. 696) filed on October 28, 2021 and the _Third Notice of Extension of Milestones and Bid Procedures Deadlines_ (Doc. No. 761) filed on November 14, 2021 shall remain the same.

_[signature page follows]_

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2]  Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Order or _Debtors' Emergency Motion to Amend Milestones and Bid Procedures Deadlines_ (Doc. No. 565), as applicable.

Dated: November 24, 2021     **BAKER & HOSTETLER LLP**

           */s/ Elizabeth A. Green*

           **Elizabeth A. Green, Esq.**
           Fed ID No.: 903144
           **Jimmy D. Parrish, Esq.**
           Fed. ID No. 2687598
           SunTrust Center, Suite 2300
           200 South Orange Avenue
           Orlando, FL  32801-3432
           Telephone:  407.649.4000
           Facsimile:   407.841.0168
           Email: egreen@bakerlaw.com
             jparrish@bakerlaw.com

           **BAKER & HOSTETLER LLP**
           **Jorian L. Rose, Esq.**
           *Admitted Pro Hac Vice*
           N.Y. Reg. No. 2901783
           45 Rockefeller Plaza
           New York, New York
           Telephone:  212.589.4200
           Facsimile:  212.589.4201
           Email: jrose@bakerlaw.com

           *Counsel for the Debtors and Debtors in Possession*

## Certificate of Service

  **I HEREBY CERTIFY** that on November 24, 2021, a true copy of the foregoing was filed with the Court using the CM/ECF System, which will provide notice of such filing to all parties requesting such service.

           */s/ Elizabeth A. Green*
           Elizabeth A. Green

## EXHIBIT A

| Event | Current Date/Deadline | New Date/Deadline |
|---|---|---|
| Deadline to file the Designation of Winning Bid | November 24, 2021 | November 30, 2021 |
| Expected Service of Notice of Designation of Winning Bid and Sale Hearing | November 26, 2021 – December 1, 2021 | November 30, 2021 – December 1, 2021 |
| Deadline to object to the Sale | December 3, 2021 at 5:00 p.m. CT | December 6, 2021 at 5:00 p.m. CT |
| Contract Assumption Objection Deadline | December 3, 2021 at 5:00 p.m. CT | December 6, 2021 at 5:00 p.m. CT |
| Deadline to reply to objection(s) to the Sale | December 6, 2021 at 5:00 p.m. CT | December 7, 2021 at 2:00 p.m. CT, subject to supplementation during Sale Hearing |
| Deadline to file Amended Designation of Winning Bid to add Additional Purchased Contracts | December 7, 2021 | December 7, 2021 |
| Sale Hearing (subject to Court availability) | December 7, 2021 | December 7, 2021 |
| Expected entry of Sale Order | December 9, 2021 | December 9, 2021 |
| Deadline to file Amended Designation of Winning Bid to remove previously identified Executory Contracts | December 9, 2021 | December 9, 2021 |
| Deadline for Winning Bidder to close sale transaction | December 10, 2021, at 5:00 p.m. CT | December 10, 2021, at 5:00 p.m. CT |
| Deadline for Back-up Bidder to close sale transaction (if applicable) | December 13, 2021, at 5:00 p.m. CT | December 13, 2021, at 5:00 p.m. CT |

1893

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

November 30, 2021

Nathan Ochsner, Clerk

## UNITED STATES BANKRUPTCY COURT          SOUTHERN DISTRICT OF TEXAS

### MOTION AND ORDER
### FOR ADMISSION *PRO HAC VICE*

| Division | Houston | Main Case Number | 21-32351 |
|---|---|---|---|
| Debtor | In Re: | Limetree Bay Refining, LLC | |

This lawyer, who is admitted to the State Bar of _____ U.S. Virgin Islands

United States Courts
Southern District of Texas
**F I L E D**

NOV 10 2021

Nathan Ochsner, Clerk of Court

| Name
Firm
Street
City & Zip Code
Telephone
Licensed: State & Number | Kevin F. D'Amour
Kevin F. D'Amour, P.C. d/b/a Barnes & D'Amour
5143 Palm Passage, Suites 18S & 19S
St. Thomas, VI 00802
(340) 774-8188
VI Bar No. 288 |
|---|---|

Seeks to appear as the attorney for this party:

| Dated: 10/29/2021 | Signed: |
|---|---|

| COURT USE ONLY: The applicant's state bar reports their status as: _____ Active | |
|---|---|
| Dated: 11/17/2021 | Signed: _____
Deputy Clerk |

Order   (Docket No. 792)

The lawyer shall review the Local Rules, the Complex Case Procedures and the Court's published procedures.

This lawyer is admitted *pro hac vice*.

Signed:  November 30, 2021

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE



**IN THE SUPREME COURT
OF THE VIRGIN ISLANDS**

**FILED**

July 29, 2021

SCT-Coq-2021-0114
VERONICA HANDY, ESQUIRE
CLERK OF THE COURT

# 𝕾𝖚𝖕𝖗𝖊𝖒𝖊 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝖙𝖍𝖊 𝖁𝖎𝖗𝖌𝖎𝖓 𝕴𝖘𝖑𝖆𝖓𝖉

## 𝕮𝖊𝖗𝖙𝖎𝖋𝖎𝖈𝖆𝖙𝖊 𝖔𝖋 𝕲𝖔𝖔𝖉 𝕾𝖙𝖆𝖓𝖉𝖎𝖓𝖌

I, **VERONICA J. HANDY, ESQUIRE**, Clerk of the Supreme Court of the United States Virgin Islands, do hereby certify that

**KEVIN F. D'AMOUR, (VIBA NO. 288)**

was duly admitted and qualified as an Attorney and Counselor-At-Law in the United States Virgin Islands on **June 20, 1986** and as such, has been admitted to practice before the Supreme Court and all other courts of this Territory according to its laws, rules and customs.

I further certify that as of this date, the above-named is an Attorney at Law in *Good Standing*. For the purposes of this Certificate, a member is in "good standing" if he or she is not presently suspended or disbarred for any reason and is current with his or her annual registration and licensing obligations under Rule 203(e).[1]

Please note that records of professional discipline, if any, are not covered by this certification.

In testimony whereof, I have hereunto subscribed my name and affixed the Seal of said Court this **29th** day of **July, 2021**.

*Veronica J. Handy*

**VERONICA J. HANDY, ESQUIRE**
Clerk of the Supreme Court
of the Virgin Islands

---

[1] This certification expires forty-five days from this date, unless sooner revoked or rendered invalid by operation of rule or law.

Revised 01/2019

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| **LIMETREE BAY SERVICES, LLC,** *et al.*,[1] | **CASE NO.: 21-32351 (DRJ)** |
| Debtors. | **(Jointly Administered)** |

### NOTICE OF (I) DESIGNATION OF WINNING BID AND BACK-UP BIDS AND (II) SIXTH NOTICE OF EXTENSION OF MILESTONES AND BID PROCEDURES DEADLINES

**PLEASE TAKE NOTICE** that Limetree Bay Services, LLC and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of Texas (the "**Court**") on July 12, 2021 (the "**Petition Date**").

**PLEASE TAKE FURTHER NOTICE** that, on July 26, 2021, Debtors filed the *Debtors' Emergency Motion for Entry of Order: (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief* [Doc. No. 191] (the "**Bidding Procedures Motion**"), seeking entry of an order, among other things, (a) approving procedures for the solicitation of bids in connection with a sale of substantially all assets of the Debtors (the "**Sale**"), (b) approving the Sale of substantially all assets of the Debtors as a going concern or liquidation via one or more transactions, and (c) approving certain procedures for the assumption and assignment of executory contracts and unexpired leases pursuant to Section 365 of the Bankruptcy Code;

**PLEASE TAKE FURTHER NOTICE** that, on August 11, 2021, the Court entered an order granting the Bidding Procedures Motion (the "**Bid Procedures Order**") and approving the bidding procedures appended thereto as Appendix A (as amended, the "**Bidding Procedures**") [Doc. No. 392];[2]

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures Order, Debtors effectuated a broad marketing strategy in an effort to solicit qualified bids for the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Bid Procedures Order, Bidding Procedures, Bid Procedures Amendment Order, or *Debtors' Emergency Motion to Amend Milestones and Bid Procedures Deadlines* (Doc. No. 565), as applicable.

acquisition of some or all of the Debtors' assets, and as a result of these efforts, received multiple qualified bids under the Bidding Procedures;

**PLEASE TAKE FURTHER NOTICE** that, on November 18, 2021, Debtors conducted an auction in accordance with the Bidding Procedures (the "**Auction**") and, at the conclusion of the Auction, declared St. Croix Energy, LLLP ("**St. Croix**") as the Winning Bidder and, collectively, Sabin Metal Corporation ("**Sabin**") and Bay, Ltd. ("**Bay**") as the Back-up Bidders;

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bid Procedures Order and Paragraph 28 of the Bidding Procedures, Debtors hereby designate (a) St. Croix as the Winning Bidder and, (b) collectively, Sabin and Bay as the Back-up Bidders;

**PLEASE TAKE FURTHER NOTICE** that the terms of the Winning Bid and Back-up Bids are summarized on Exhibit A hereto (the "**Designation of Winning Bid**") and a copy of the asset purchase agreement memorializing the Winning Bid is attached hereto as Exhibit B;[3] and

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the *Order Granting Debtors' Emergency Motion to Amend Milestones and Bid Procedures Deadlines* [Doc. No. 583] (the "**Bid Procedures Amendment Order**"), and in accordance with the terms of the Winning Bid (as discussed in the Designation of Winning Bid), the Milestones and Bid Procedures Deadlines established therein are hereby amended in accordance with the attached Exhibit C, and except as amended or altered thereby, the Milestones and Bid Procedures Deadlines provided in the *Notice of Extension of Milestones and Bid Procedures Deadlines* [Doc. No. 696] filed on October 28, 2021 and the *Third Notice of Extension of Milestones and Bid Procedures Deadlines* [Doc. No. 761] filed on November 14, 2021, shall remain unchanged.

*[Signature Page Follows]*

---

[3] The Debtors shall serve the notice via U.S. Mail without a copy of Exhibit B due to its voluminous nature and the attendant costs of reproduction and postage; however, any party in interest may obtain an electronic copy of Exhibit B by submitting a written request via email to dmerola@bakerlaw.com or by downloading the Notice through the website for the Debtors' claims agent at www.bmcgroup.com/limetree.

Dated: November 30, 2021

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
**Jimmy D. Parrish, Esq.**
Fed. ID No. 2687598
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL  32801-3432
Telephone:  407.649.4000
Facsimile:   407.841.0168
Email: egreen@bakerlaw.com
       jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
*Admitted Pro Hac Vice*
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone:  212.589.4200
Facsimile:  212.589.4201
Email: jrose@bakerlaw.com

*Counsel for the Debtors and Debtors in Possession*

**<u>Certificate of Service</u>**

**I HEREBY CERTIFY** that on November 30, 2021, a true copy of the foregoing was filed with the Court using the CM/ECF System, which will provide notice of such filing to all parties requesting such service.

*/s/ Elizabeth A. Green*
Elizabeth A. Green

# **EXHIBIT A**

## **DESIGNATION OF WINNING BID AND BACK-UP BIDS**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC**, *et al.*,[4] | **CASE NO.: 21-32351 (DRJ)** |
| **Debtors.** | **(Jointly Administered)** |

## DESIGNATION OF WINNING BID AND BACK-UP BIDS

Limetree Bay Services, LLC and its debtor affiliates (collectively, the "**Debtors**") hereby designate the Winning Bid and Back-up Bids, as provided herein, in accordance with the *Order Granting Debtors'* Emergency *Motion for Entry of Order: (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief* [Doc. No. 392] (the "**Bid Procedures Order**") and Paragraph 28 of the Bidding Procedures attached thereto as Appendix A (the "**Bidding Procedures**").[5]

### I.      Summary of Winning Bid

St. Croix Energy, LLLP ("**St. Croix**") is the Winning Bidder.

The St. Croix transaction is structured as an asset sale with an expected continuation of the business operations as a going concern upon SCE retaining the requisite personnel and securing certain authorizations during the transition period.  The following is a summary of the principal terms of the Winning Bid, a copy of which is attached to the accompanying notice as Exhibit B (the "**APA**")[6] and incorporated herein by reference:

| | |
|---|---|
| Purchased Assets. | Substantially all assets of the Debtors, as identified in Sections 1.1 and 1.2 of the APA, exclusive of Excluded Assets.  The sale shall be free and clear of any interests in the Purchased Assets pursuant to Section 363(f) of the Bankruptcy Code on an "as is, where is" basis, without |

---

[4] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[5] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Bid Procedures Order, Bidding Procedures, *Debtors'* Emergency *Motion to Amend Milestones and Bid Procedures Deadlines* [Doc. No. 565], or the Bid Procedures Amendment Order, as applicable.

[6] Unless otherwise defined herein, capitalized terms used in the summary shall have the meanings ascribed to them in the APA.  All section references in the summary shall refer to the referenced section of the APA.  The summary does not contain all material terms of the APA; accordingly, interested parties should review the APA in its entirety.  In the event of any inconsistency between the summary and the APA, the provisions of the APA shall control.

representations or warranties, except for the representations and warranties expressly set forth in the APA.

Without limiting the foregoing, the Purchased Assets to be acquired as of the Closing Date include: (a) all Improvements; (b) all Parts Inventory; (c) books and records of the Debtors related to the Purchased Assets, subject to Debtors' right to retain copies of pre-Closing books and records; (d) rights to Intellectual Property; (e) all Furniture and Equipment; (f) accounts receivables related to Purchased Assets; (g) rights, claims, causes of action, and insurance recoveries on account of Purchased Assets; and (h) any rights of the Debtors under any bids to acquire any of the Purchased Assets.

|  |  |
|---|---|
| Excluded Assets. | Excluded Asset are identified in Section 1.3 of the APA, and include, among other things, (a) cash and cash equivalents, (b) Avoidance Actions and proceeds thereof, (c) certain rights, claims and causes of action identified in Section 1.3(h), (d) certain rights, claims and causes of action under insurance policies as identified in Section 1.3(i), (e) deposits and prepaid charges unrelated to any Purchased Assets, (f) tax refunds/credits unrelated to any Purchased Assets, (g) accounts receivable unrelated to the Purchased Assets, and including the J. Aron Receivables, the BP Receivables, and NRI Receivables, (h) all contract rights under the APA or any other Transaction Document or otherwise relating to the Excluded Assets or Excluded Liabilities, including rights under executory contracts and unexpired leases, and (i) all equity interests of the Debtors or any of their respective Affiliates.

Subject to the provisions of Section 1.4 of the APA, St. Croix may designate Excluded Assets, including executory contracts and unexpired leases, for inclusion in the Purchased Assets without further consideration until the Designation Deadline. |
| Assumed Liabilities. | None as of Closing, subject to designation of Excluded Liabilities as Assumed Liabilities pursuant to Section 1.4 and terms of the TSA (defined below). |
| Excluded Liabilities. | All liabilities as of Closing, subject to designation of Excluded Liabilities as Assumed Liabilities pursuant to Section 1.4 and terms of the TSA. |
| Consideration. | **$33,000,000.00**, which is comprised of: |

|  | $20,000,000.00 in cash at the Closing, <u>plus</u> |
|---|---|
|  | $14,000,000.00 (est.) in assumed and avoided liabilities and expense reimbursement pursuant to the terms of a transition services agreement, <u>minus</u> |
|  | $1,000,000.00 in St. Croix expense reimbursement. |
| Executory Contracts and <u>Unexpired Leases</u>. | None as of Closing, subject to designation of executory contracts and unexpired leases for assumption and assignment under <u>Section 1.4</u> and terms of the TSA.[7] |
|  | Under the terms of the TSA, St. Croix shall be liable for all costs associated with maintaining executory contracts and unexpired leases pending assumption or rejection and any cure costs, if any executory contracts or unexpired leases are ultimately assumed and assigned to St. Croix. |
| <u>Transition Services</u>. | The St. Croix transaction is predicated upon the Debtors continuing to provide or facilitating services in connection with the operation of the refinery pending St. Croix's designation of operational assets (e.g., permits, contractual rights, etc.) for acquisition.  The Debtors shall render the required services pursuant to a transition services agreement (the "**TSA**") with St. Croix.  St. Croix and the Debtors are finalizing the terms of the TSA and shall file a copy of the TSA prior to the Sale Hearing. |
|  | Certain material terms of the TSA are set forth in <u>Section 1.4(i)</u>. |
| <u>Sale Hearing</u>. | December 7, 2021, at 4:00 p.m. CT. |
| <u>Closing</u>. | No later than December 17, 2021, at 5:00 p.m. ET |

The Debtors and St. Croix are presently finalizing certain documents pertaining to the APA and transaction, including the TSA; accordingly, pursuant to <u>Exhibit C</u> to this notice, the Debtors are extending the deadline to file such documents under the Bidding Procedures through and including December 3, 2021.  Additionally, the Debtors are extending the deadlines associated with the assumption and assignment of executory contracts and unexpired leases to comport with the terms of the APA.

---

[7] St. Croix does not seek the assumption or assignment of any executory contracts or unexpired leases on the Closing Date under the APA; rather, under <u>Section 1.4</u> of the APA, St. Croix reserves the right to designate any executory contracts or unexpired leases for assumption and assignment at any time prior to the Designation Deadline.  The assumption and assignment of any contracts under the APA is premised upon satisfaction of the requirements of Section 365 of the Bankruptcy Code.  To comport with the APA, the Debtors are extending the dates and deadlines associated with the assumption and assignment of executory contracts and unexpired leases under the Bid Procedures to the Designation Deadline.

4883-4451-7636.6

## II.      Summary of Back-up Bids

Sabin Metal Corporation ("**Sabin**") and Bay, Ltd. ("**Bay**") are the Back-up Bidders.

The bids presented by Sabin (the "**Sabin Bid**") and Bay (the "**Bay Bid**" and, together with the Sabin Bid, the "**Back-up Bids**") are piecemeal bids for the acquisition and/or liquidation of the subject assets.[8]  The following is a summary of the principal terms of the Back-up Bids, which remain subject to final negotiations:

### A.   The Sabin Bid

| | |
|---|---|
| <u>Purchased Assets</u>. | Catalyst |
| <u>Excluded Assets</u>. | All assets of the Debtors, excluding the Catalyst. |
| <u>Assumed Liabilities</u>. | None. |
| <u>Excluded Liabilities</u>. | All liabilities of the Debtors. |
| <u>Consideration</u>. | **$15,122,047.00**, which is payable in two installments— (i) 50% six (6) weeks after completion of sampling of the catalyst (approximately five (5) months post-closing) and (ii) 50% upon sale of the metals recovered from the catalyst (approximately eight (8) months post-closing). |
| | **<u>Caveat</u>**:  The consideration is an <u>estimate</u> of total recoveries from the processing of the catalyst <u>net</u> of processing costs and, as such, may vary depending upon, among other things, the total amount and condition of the catalyst, the amounts of precious metals recovered from the catalyst and the market value of the recovered precious metals at the time of the sale.  There is no minimum consideration under the Sabin Bid.  The above-described consideration is not the same as the value the Debtors ascribe to the bid, which must be adjusted to include factors such as the uncertainty in total recovery, the Debtors' cash flow needs, and the time-value of money. |
| <u>Executory Contracts and Unexpired Leases</u>. | None |
| <u>Closing</u>. | TBD |

---

[8] The consideration set forth in the summary of Back-up Bids is subject to certain offsets and adjustments under the proposed transaction, including, without limitation, adjustments to reflect the risks of recovery and present value of the proposed payments over time.  As such, the Debtors are not representing that the stated consideration is the net value of the Back-up Bids to the estates or that the estates are guaranteed to receive the estimated consideration.

4883-4451-7636.6

## B.  The Bay Bid

Purchased Assets.

All tangible personal property assets of the Debtors, excluding the Catalyst, subject to adjustment prior to Closing.

Excluded Assets.

All assets of the Debtors, other than Purchased Assets, including the Catalyst, real property, and intangible personal property assets; *provided* that Bay retains the rights to add or remove certain items from the Purchased Assets without further consideration.

Assumed Liabilities.

Limited assumption of liabilities, including Cure Amounts and certain adequate assurance payments related to any assumed and assigned contracts or leases; transfer taxes; and certain liabilities traceable to Purchaser's conduct.

Excluded Liabilities.

All other liabilities of the Debtors.

Consideration.

An amount up to **$24,760,000.00**, which is comprised of:

$3,200,000.00 in cash at the Closing, plus

55% of net proceeds in excess of $3,000,000, not to exceed $21,560,000, from the liquidation of non-scrap assets, including equipment, inventory and rolling stock, subject to certain exclusions.

In addition to the foregoing, in the event that Bay is permitted to draw upon the USVI Letter of Credit, Bay agrees to pay Debtors 50% of any proceeds after deducting the expenses of removing Hazardous Materials, up to $3 million.  This recovery is, however, contingent on events outside the Debtors' control.

The Debtors anticipate that the consideration will be paid over a period of three (3) years following the closing date.

**Caveat**: The consideration is an estimate of recoveries from the liquidation of Purchased Assets, subject to certain exclusions, and, as such, the ultimate consideration may vary depending upon the liquidation values of the subject Purchased Assets.   Further, the net consideration is dependent upon the payment of certain costs and expenses associated with the removal of the Purchased Assets, which are unknown and, as such, not factored into the gross consideration stated herein.   Accordingly, the above-described consideration is not the same as the value the Debtors ascribe to the bid, which must be adjusted to include those expenses and other factors such as the uncertainty in

total recovery, the Debtors' cash flow needs, and the time value of money.

| | |
|---|---|
| Executory Contracts and <u>Unexpired Leases</u>. | TBD |
| <u>Closing</u>. | TBD |

4883-4451-7636.6

## **EXHIBIT B**

**WINNING BID/ASSET PURCHASE AGREEMENT**

**ASSET PURCHASE AGREEMENT**

**by and among**

**LIMETREE BAY SERVICES, LLC,**

**LIMETREE BAY REFINING HOLDINGS, LLC,**

**LIMETREE BAY REFINING HOLDINGS II, LLC,**

**LIMETREE BAY REFINING, LLC,**

**LIMETREE BAY REFINING OPERATING, LLC, AND**

**LIMETREE BAY REFINING MARKETING, LLC,**

**as Sellers**

**and**

**ST. CROIX ENERGY, LLLP,**

**as Purchaser**

**Dated as of November [__], 2021**

Page

ARTICLE I PURCHASE AND SALE OF ASSETS ................................................................ 2
    1.1    Agreement to Purchase and Sell ............................................................ 2
    1.2    Description of Purchased Assets ............................................................ 2
    1.3    Excluded Assets ..................................................................................... 4
    1.4    Contract and Asset Designation Rights .................................................. 6

ARTICLE II ASSUMPTION OF LIABILITIES ................................................................. 10
    2.1    Agreement to Assume ........................................................................... 10
    2.2    Description of Assumed Liabilities ....................................................... 11
    2.3    Excluded Liabilities .............................................................................. 12

ARTICLE III PURCHASE PRICE, MANNER OF PAYMENT; CLOSING; DEPOSIT ......... 13
    3.1    Purchase Price; Delivery of Funds ....................................................... 13
    3.2    Good Faith Escrow Deposit ................................................................... 13
    3.3    Time and Place of Closing .................................................................... 14
    3.4    Closing Deliverables ............................................................................ 14
    3.5    Allocation of Purchase Price ................................................................ 15

ARTICLE IV REPRESENTATIONS AND WARRANTIES OF SELLERS ........................... 15
    4.1    Due Organization, Good Standing and Limited Liability Company Power ....... 16
    4.2    Authorization; Noncontravention ......................................................... 16
    4.3    Governmental Consents and Approvals ................................................. 17
    4.4    Property ................................................................................................ 17
    4.5    Title to Purchased Assets ..................................................................... 18
    4.6    Affiliate Transactions ........................................................................... 18
    4.7    Material Contracts ................................................................................ 19
    4.8    Intellectual Property Rights and Claims. .............................................. 20
    4.9    Tax Matters .......................................................................................... 21
    4.10   Financial Statements ............................................................................ 21
    4.11   Compliance with Laws ......................................................................... 22
    4.12   Environmental Matters .......................................................................... 22
    4.13   Permits ................................................................................................. 22
    4.14   Litigation .............................................................................................. 22
    4.15   Finders; Brokers ................................................................................... 23
    4.16   Exclusivity of Representations; Projections, Etc. ................................. 23

ARTICLE V REPRESENTATIONS AND WARRANTIES OF PURCHASER ...................... 23
    5.1    Due Organization, Good Standing and Power ....................................... 24
    5.2    Authorization; Noncontravention ......................................................... 24
    5.3    Governmental Consents and Approvals ................................................. 25
    5.4    Financing .............................................................................................. 25
    5.5    Solvency of Purchaser .......................................................................... 25
    5.6    Adequate Assurances ............................................................................ 25
    5.7    Litigation .............................................................................................. 25
    5.8    Finders; Brokers ................................................................................... 25

i

5.9     Investigation by Purchaser ............................................................................. 25

ARTICLE VI COVENANTS ....................................................................................... 26
    6.1     Access to Information Concerning Properties and Records .................... 26
    6.2     Conduct Prior to the Designation Deadline ............................................. 28
    6.3     Efforts to Close ........................................................................................ 29
    6.4     Public Announcements ............................................................................. 30
    6.5     Notification of Certain Matters ............................................................... 30
    6.6     Post-Closing Access to Records and Personnel; Litigation Support ....... 30
    6.7     Tax Matters .............................................................................................. 32
    6.8     Bulk Sales Act .......................................................................................... 32
    6.9     Bankruptcy Action ................................................................................... 33
    6.10    Sale Order ................................................................................................ 33
    6.11    [Reserved]. ............................................................................................... 35
    6.12    Transfer of Permits .................................................................................. 35
    6.13    Expenses ................................................................................................... 35
    6.14    Confidentiality ......................................................................................... 35

ARTICLE VII CONDITIONS TO CLOSING ............................................................ 35
    7.1     Conditions to Sellers' Obligations .......................................................... 35
    7.2     Conditions to Purchaser's Obligations .................................................... 36
    7.3     Frustration of Closing Conditions ........................................................... 37

ARTICLE VIII TERMINATION .................................................................................. 37
    8.1     Termination Events .................................................................................. 37
    8.2     Effect of Termination .............................................................................. 38

ARTICLE IX SURVIVAL ........................................................................................... 38
    9.1     Survival; Certain Post-Closing Matters .................................................. 38

ARTICLE X MISCELLANEOUS ............................................................................... 39
    10.1    Notices ..................................................................................................... 39
    10.2    Entire Agreement ..................................................................................... 40
    10.3    Severability .............................................................................................. 40
    10.4    Binding Effect; Benefit ........................................................................... 41
    10.5    Assignability ............................................................................................ 41
    10.6    Amendments ............................................................................................ 41
    10.7    Non-Waiver .............................................................................................. 41
    10.8    Applicable Law ........................................................................................ 41
    10.9    Consent to Jurisdiction ............................................................................ 42
    10.10   **WAIVER OF TRIAL BY JURY** ........................................................ 42
    10.11   Counterparts ............................................................................................. 42
    10.12   Headings ................................................................................................... 42
    10.13   Time of the Essence ................................................................................ 42
    10.14   Rules of Construction .............................................................................. 42

4895-8439-9877.1

EXHIBITS AND SCHEDULES

Appendix 1            Defined Terms

Exhibit A             Budget
Exhibit B             Form of Bill of Sale and Assignment and Assumption Agreement
Exhibit C             Form of Transition Services Agreement

Schedule 1.2(a)       Business Contracts
Schedule 1.2(b)       Purchased Real Property
Schedule 1.2(d)       Real Property Leases
Schedule 1.2(g)       Business Permits
Schedule 1.2(h)       Business Intellectual Property
Schedule 1.2(i)       Business IT Assets
Schedule 1.3(p)       Excluded Furniture and Equipment
Schedule 3.4          Assignment, Transfer and Conveyance Instruments
Schedule 6.2          Conduct Prior to the Closing Date

Seller Disclosure Letter

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT ("Agreement") is made as of November [__], 2021, by and among Limetree Bay Services, LLC, a Delaware limited liability company ("LBS"), Limetree Bay Refining Holdings, LLC, a United States Virgin Islands limited liability company ("LBRH"), Limetree Bay Refining Holdings II, LLC, a United States Virgin Islands limited liability company ("LBRH II"), Limetree Bay Refining, LLC, a United States Virgin Islands limited liability company ("LBR"), Limetree Bay Refining Operating, LLC, a United States Virgin Islands limited liability company ("LBRO"), Limetree Bay Refining Marketing, LLC, a United States Virgin Islands limited liability company ("LBRM", along with LBS, LBRH, LBRH II, LBR and LBRO, each a "Seller" and collectively, "Sellers"), and St. Croix Energy, LLLP, a domestic limited liability limited partnership, and its permitted assignees pursuant to Section 10.5 (collectively, "Purchaser" and, the Purchaser together with Sellers, each a "Party" and collectively, the "Parties"). Capitalized terms used but not otherwise defined in the text of this Agreement have the meanings set forth in Appendix 1 attached hereto, which is incorporated herein and made a part of this Agreement.

R E C I T A L S

A.    Sellers own and operate an oil refinery located on the island of St. Croix in the United States Virgin Islands (collectively, the "Business").

B.    On July 12, 2021 (the "Petition Date"), Sellers filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), which cases are jointly administered under *In re Limetree Bay Services, LLC*, Case No. 21-32351.

C.    On November 14, 2021, Purchaser presented an executed Asset Purchase Agreement, pursuant to which Purchaser presented an irrevocable offer to purchase from Sellers certain assets and assume from Sellers certain liabilities related thereto (the "Initial Asset Purchase Agreement"), subject to the terms of the proposed Initial Asset Purchase Agreement, the *Order Granting Debtors' Emergency Motion for Entry of Order: (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief* (the "Bid Procedures Order") and bidding procedures appended thereto (the "Bid Procedures").

D.    On or about November 14, 2021, Sellers filed a motion in the Bankruptcy Court to designate the Initial Asset Purchase Agreement as the stalking horse bid and approve certain buyer protections (described therein) under the terms of the Bid Procedures Order and Bid Procedures.

E.    On or about November 17, 2021, Sellers conducted an auction in accordance with the terms of the Bid Procedures, during which the Initial Asset Purchase Agreement was designated the Winning Bid and Purchaser the Winning Bidder (as such terms are defined in the Bid Procedures).

F.    On the terms and subject to the conditions set forth in this Agreement, (i) the Parties wish to enter into this Agreement to update and supersede the Initial Asset Purchase Agreement on the terms set forth herein, (ii) Purchaser desires to purchase from Sellers, and Sellers desire to

sell to Purchaser, the Purchased Assets and (iii) Purchaser desires to assume, and Sellers desire to assign and transfer to Purchaser, the Assumed Liabilities (the "Purchase").

G.     It is intended that the acquisition of the Purchased Assets will be accomplished through the sale, transfer and assignment of the Purchased Assets by Sellers to Purchaser, or its designee or designees, in a sale undertaken pursuant to Section 363 of the Bankruptcy Code and that certain executory contracts and unexpired leases will be assumed by Sellers and assigned to Purchaser pursuant to Section 365 of the Bankruptcy Code in connection therewith.

<u>A G R E E M E N T S</u>

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

ARTICLE I
<u>Purchase and Sale of Assets</u>

1.1     <u>Agreement to Purchase and Sell</u>.  On the terms and subject to the conditions contained in this Agreement, Purchaser agrees to purchase from Sellers, and Sellers agree to sell, transfer and convey to Purchaser, all of the Sellers' assets, properties, rights and interests identified in Section 1.2, effective as of the Closing Date, wherever situated or located (collectively, the "Purchased Assets").  The Purchased Assets shall be sold, transferred and conveyed to Purchaser free and clear of any and all Liens and Claims, in each case to the fullest extent permitted under the Bankruptcy Code and resulting from the Sale Order, other than Permitted Liens and Assumed Liabilities.

1.2     <u>Description of Purchased Assets</u>.  The Purchased Assets shall include the following assets owned by Sellers as of the entry of the Sale Order, except to the extent that any of the following are specifically enumerated in <u>Section 1.3</u> as being Excluded Assets:

(a)     each Contract listed or described on <u>Schedule 1.2(a)</u> (collectively, the "<u>Business Contracts</u>");

(b)     the real property described on <u>Schedule 1.2(b)</u>, together with such easements, appurtenances, right and other hereditaments appurtenant to such real property that are expressly described on <u>Schedule 1.2(b)</u> or otherwise imposed by Law (collectively, the "<u>Purchased Real Property</u>");

(c)     all Improvements;

(d)     each real property lease and sublease listed or described on <u>Schedule 1.2(d)</u> ("<u>Real Property Leases</u>");

(e)     all Parts Inventory;

(f)     the Files and Records, whether in hard copy or electronic format, except that, with respect to Files and Records that any Seller or any of its Affiliates is required by

4895-8439-9877.1

Law or Order to retain, the Purchased Assets shall include copies of such Files and Records to the extent permitted by any applicable Law or Order; provided, that any Seller shall be permitted to retain a copy of any such Files and Records that such Seller requires in connection with any of the Excluded Assets;

(g)      all Permits (and any pending applications for Permits) described on Schedule 1.2(g) (the "Business Permits");

(h)      the rights to the Intellectual Property listed on Schedule 1.2(h) (the "Business Intellectual Property");

(i)      the rights to Information Technology listed on Schedule 1.2(i) (the "Business IT Assets");

(j)      all Furniture and Equipment owned by a Seller that is located at the Seller Facilities or that is otherwise primarily used or held for use in the Business (other than the Excluded Furniture and Equipment);

(k)      all accounts receivables, trade receivables, notes receivables, and other miscellaneous receivables, whether current or overdue, in each case, solely to the extent related to any of the Purchased Assets set forth in Section 1.2(a)-(j), and all pre-paid assets of any Seller, solely to the extent related to any of the Purchased Assets set forth in Section 1.2(a)-(j), which, for the avoidance of doubt, excludes any right to or interest in any Excluded Assets;

(l)      all rights, claims, defenses, causes of action, rights of offset and counterclaims (at any time or in any manner arising or existing, whether choate or inchoate, known or unknown, contingent or non-contingent) of each Seller, but excluding any Avoidance Actions and proceeds thereof, in each case solely (i) with respect to any of the Purchased Assets set forth in Sections 1.2(a)-(k) and (ii) to the extent first arising with respect to incidents, actions or omissions that occur on or after the Closing Date (the "Purchased Claims");

(m)      all insurance recoveries, other than the Excluded Insurance Recoveries, under each Seller's or its Affiliates' insurance policies, in each case solely with respect to any of the Purchased Assets set forth in Sections 1.2(a)-(k), and any rights to assert claims with respect to any such insurance recoveries;

(n)      all rights under and to any bids, offers, options, or other contracts to purchase or sell any Purchased Asset, including any of the offers received at the Auction; and

(o)      the general books and records and the books of account and books of original entry that comprise a Seller's permanent Tax records, in each case, solely to the extent related to the Purchased Assets or Assumed Liabilities; provided, that any Seller shall be permitted to retain a copy of any such pre-Closing books and records.

1.3     Excluded Assets.  The "Excluded Assets" means all of the assets, properties, rights and interests of the Sellers as of the Closing Date, wherever situated or located, other than the Purchased Assets, including, but not limited to, the following items and assets:

(a)     all cash, certificates of deposit or other cash equivalents;

(b)     any real property other than the Business Real Property;

(c)     all personal property, equipment and inventory not included in the Purchased Assets;

(d)     notwithstanding anything to the contrary in Section 1.2, all Avoidance Actions and proceeds thereof;

(e)     all rights under any Contract to which any Seller is a party that is not a Business Contract or a Real Property Lease;

(f)     general books of account and books of original entry that comprise a Seller's permanent Tax records, corporate minute books, stock books and related organizational documents and the books and records that any Seller is required to retain pursuant to any Law or Order and the books and records solely to the extent not related to the Purchased Assets or the Assumed Liabilities;

(g)     all personnel records of employees, former employees or consultants of each Seller;

(h)     all rights, claims, causes of action, remedies, defenses, rights of offset and counterclaims (at any time or in any manner arising or existing, whether choate or inchoate, known or unknown, contingent or non-contingent) of each Seller or its estate against any Person, together with recoveries therefrom, including, without limitation, against any current or former equity holders, lenders, employees, professionals, advisors, agents, officers, directors, managers, contractors, suppliers or other contractual counterparties of any Seller or any Affiliate of any Seller relating to, without limitation, negligence, misrepresentation, fraud, malpractice, breach of contract, breach of fiduciary duty, breach of the duty of loyalty, breach of the duty of care, breach of the implied covenant of good faith and fair dealing, mandatory subordination, equitable subordination, equitable disallowance or recharacterization; provided that this Section 1.3(h) shall not include any Purchased Claims; provided, further, that any remaining rights of the Official Committee of Unsecured Creditors (the "Committee") to assert a "Challenge" under the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* (Doc. No. 495 filed in the Bankruptcy Cases) are fully preserved and shall not constitute Purchased Assets;

(i)     all rights, claims, causes of action, remedies, defenses, rights of offset and counterclaims (at any time or in any manner arising or existing, whether choate or inchoate, known or unknown, contingent or non-contingent) of each Seller or its estate against any Person, together with recoveries therefrom, under any insurance policies of any Seller or

any Affiliate of any Seller, to the extent related to or arising from any business interruption (including, without limitation, any business interruption coverage under any property damage policies), errors and omissions or directors' and officers' liability insurance policies, or property damage, and any rights to assert claims with respect to any such insurance recoveries; provided, that any recovery on account of property damage related to any Purchased Assets shall be limited solely to (i) recoupment of amounts actually paid (as evidenced by written invoices or receipts therefor or other written documentation thereof) by Sellers in connection with the repair, rehabilitation or remediation of the subject Purchased Assets, which amounts shall only be payable if (x) the Bankruptcy Court holds that Sellers are entitled to recovery of such amounts notwithstanding any unpaid self-insurance retention, or (y) Purchaser has recouped all amounts paid by Purchaser in connection with the repair, rehabilitation or remediation of the subject Purchased Assets and compensable under the subject insurance policy, and additional coverage remains under the applicable insurance policies, and (ii) any related business interruption claims (such rights, claims, causes of action, remedies, defenses, rights of offset, counterclaims and insurance recoveries pursuant to this Section 1.3(i), the "Excluded Insurance Recoveries");

(j)      all claims for refund or credit of (i) income Taxes of each Seller and its Affiliates for any taxable period and (ii) non-income Taxes of each Seller and its Affiliates with respect to a Pre-Closing Period;

(k)      the Excluded Intellectual Property;

(l)      the Excluded IT Assets;

(m)      each Seller's or any of its Affiliates' rights under this Agreement or any Transaction Document or relating to the Excluded Assets or the Excluded Liabilities;

(n)      all deposits (including security deposits, rent, electricity, telephone or otherwise and retainers held by attorneys, accountants, financial advisors and other professional advisors retained by any Seller or by any creditors' committee in the Bankruptcy Case) and other prepaid charges of each Seller, in each case other than with respect to the Purchased Assets described in Section 1.2(k), provided, for the avoidance of doubt, that any returned insurance premiums paid prior to the Closing Date shall constitute Excluded Assets;

(o)      any assets of each Seller in a directors and officers liability insurance policy, executive or incentive compensation, bonus, deferred compensation, pension, retiree medical, stock option or other stock purchase plan or other employee benefit plan;

(p)      the Furniture and Equipment set forth on Schedule 1.3(p) (the "Excluded Furniture and Equipment");

(q)      all accounts receivables, trade receivables, notes receivables, and other miscellaneous receivables, whether current or overdue, and all pre-paid assets of each Seller, in each case, except to the extent within the scope of Section 1.2(k), but including,

for the avoidance of doubt, the J. Aron Receivables, the BP Receivables, and NRI Receivables;

(r)     all Permits (and any pending applications for Permits) other than the Business Permits;

(s)     all attorney client privilege and attorney work product protection of each Seller or associated with the Business (as currently or formerly conducted) as a result of legal counsel representing a Seller or the Business (as currently or formerly conducted), and all Files and Records related thereto subject to such attorney client privilege or work product protection; <u>provided</u> that any privilege or work product that exclusively relates to the Purchased Assets or the Assumed Liabilities or that is necessary to operate the Business (other than such privileges, protections and related Files and Records related to or in connection with the transactions contemplated by this Agreement or any Transaction Document) shall not be deemed to be an Excluded Asset whether or not in connection with the transactions contemplated by this Agreement or any Transaction Document; and

(t)     all shares of capital stock or other equity interests in any Seller or any Affiliate thereof or any securities convertible into, exchangeable or exercisable for shares of capital stock or other equity interests in any Seller or any Affiliate thereof.

For clarification purposes and without implication that the contrary would otherwise be true, it is understood and agreed that all rights and remedies with respect to the Excluded Assets or the Excluded Liabilities shall be retained by Sellers and shall not be transferred to Purchaser hereunder unless and until designated as a Purchased Asset or Assumed Liability pursuant to Section 1.4(h).

1.4     Contract and Asset Designation Rights.

(a)     No later than three (3) Business Days following the execution of this Agreement, Sellers shall deliver to Purchaser a list of any Contracts Sellers that are material to the Business, any Purchased Assets, and any Assumed Liabilities, including the Cure Amounts associated with each such Contract subject to Section 365 of the Bankruptcy Code.  Sellers shall cooperate with, and, as promptly as practicable, provide Purchaser with such access and information reasonably requested by it in order for Purchaser to identify each of the material Contracts related to the Business, any Purchased Assets and any Assumed Liabilities, and subject to assumption or rejection hereunder, including providing copies of all such Contracts, and in order for Purchaser to confirm any associated Cure Amounts.  Prior to the Designation Deadline (as defined below), Sellers shall supplement such list to add any Contracts entered into by Sellers during the pendency of the Bankruptcy Cases that are material to the Business, any Purchased Assets, or any Assumed Liabilities, and update any information pertaining to Contracts entered into prior to Closing.

(b)     Any motions filed by Sellers with, and any proposed orders submitted by Sellers to, the Bankruptcy Court seeking authorization after the date hereof to assume or reject any Contracts shall be satisfactory in form and substance to Purchaser in its reasonable discretion.  No later than three (3) Business Days following Purchaser's designation of any Contract for assumption by the Sellers and assignment to Purchaser (each such Contract, a "Designated Contract"), the Sellers shall cause notice to be provided

to all known or reasonably ascertainable counterparties to such Contract regarding the (i) assumption and assignment to Purchaser of such Contract and (ii) setting forth the Cure Amounts associated with such Contract as of the Sale Hearing (or as of such later date reasonably acceptable to Purchaser and Sellers).  If Purchaser is designated the Winning Bidder following the Auction, Sellers shall consult with, and give due consideration to the views and concerns of, Purchaser prior to compromising or commencing any Action with respect to any material payment required to be made under the Bankruptcy Code to effectuate the assumption of any such Contract, including using commercially reasonable efforts to provide no less than three (3) Business Days' notice of any such compromise or Action to Purchaser; provided, that Sellers shall not have any obligation to attempt to resolve any issues with respect to or commence or prosecute any Action concerning any material payment required to be made under the Bankruptcy Code to effectuate the assumption or assignment of any such Contract, it being acknowledged and agreed that Purchaser is solely responsible for resolving any disputes pertaining such payments, including the payment of any Cure Amounts.

(c)      For the purpose of determining whether a Contract of Sellers shall be included as a Purchased Asset or an Excluded Asset, from and after the filing of the Approval Motion, all such Contracts shall be treated as follows:

(i)      No later than one (1) Business Day prior to the Closing Date, Purchaser shall notify Sellers in writing of those Contracts which Purchaser desires to be designated to be assumed by Sellers and assigned to Purchaser on the Closing Date.

(ii)      No Contracts entered into during the pendency of the Bankruptcy Cases shall be designated to be assigned to Purchaser unless Purchaser notifies Sellers in writing that it will purchase such Contract prior to the Closing Date, in which case Sellers shall seek authority to assign such Contract to Purchaser.

(iii)      Until the date that is 150 days following the Closing Date (the "Designation Deadline"); provided that the Designation Deadline may be extended by Purchaser in its sole discretion for up to two successive 90 day periods subject to Purchaser's continued reimburse of Sellers for any and all costs and expenses of retaining Contracts, and all Liabilities that arise in the ordinary course of business, during such extension period, as provided in the Transition Services Agreement including all administrative costs of the Bankruptcy Cases (i.e., the U.S. Trustee's fees, and expenses of Sellers' professionals, including legal counsel) as and to the extent such costs are contemplated in the Sellers' Budget for the Bankruptcy Cases attached hereto as Exhibit A (the "Budget")).  Purchaser shall have the right to designate additional Designated Contracts for no additional Consideration, except for the obligations set forth under the Transition Services Agreement and the payment of Cure Amounts associated with any Designated Contracts.  Any such Designated Contracts will be deemed to be included as a Business Contract or a Real Property Lease, as applicable, and included as a Purchased Asset hereunder.

(iv)      All other Contracts not expressly assumed by Purchaser prior to the Designation Deadline (each a "<u>Disclaimed Contract</u>") shall be deemed to be Excluded Assets.  With respect to each Contract that is an Excluded Asset, Sellers hereby agree that, without the prior written consent of Purchaser, they shall not, and shall not permit any of their respective Affiliates to, reject any such Contract prior to the earlier to occur of the expiration of (x) the Designation Deadline and (y) the date that Purchaser provides written notice designating such Contract as a Disclaimed Contract.

Purchaser shall provide, with respect to any Designated Contract, such information or documentation related to "adequate assurance of future performance" as shall be reasonably required in connection with the assumption and assignment of such Contract, and upon Bankruptcy Court approval for the assumption and assignment thereof to Purchaser, any such Designated Contract shall be deemed to be a Business Contract and to constitute a Purchased Asset hereunder.  Notwithstanding anything to the contrary set forth in this Agreement, to the extent that, prior to Closing, any Contract is not subject to an order of the Bankruptcy Court with respect to the assumption and assignment of such Contract, any Liabilities of Sellers related to such Contract shall be the responsibility of Sellers until such Contract is either assumed by Sellers and assigned to Purchaser or rejected by Sellers as permitted pursuant to this <u>Section 1.4(c)</u>; <u>provided</u> that, notwithstanding the foregoing, Purchaser shall reimburse Sellers for any and all costs and expenses of retaining such Contracts, and all Liabilities that arise in the ordinary course of business, as provided in the Transition Services Agreement until the earlier to occur of (x) five (5) Business Days following the date that Purchaser provides written notice designating any such Contract as a Disclaimed Contract and (y) the date that is five (5) Business Days after the Designation Deadline.

(d)      At Closing, to the extent not previously paid, Purchaser shall pay or cause to be paid (and shall reimburse or cause to be reimbursed to Sellers any amounts paid after the date hereof in respect of) any and all Cure Amounts in respect of all Designated Contracts then identified.  Additionally, following the Closing, Purchaser shall pay or cause to be paid (and shall reimburse or cause to be reimbursed to Sellers any amounts paid after the date hereof in respect of) any and all Cure Amounts in respect of all Designated Contracts as they become so designated and assigned to Purchaser.  Purchaser's obligations under this <u>Section 1.4(d)</u> shall be in addition to any obligations under the Transition Services Agreement.

(e)      Nothing in this Agreement shall be construed as an attempt by Sellers to assign any Contract to the extent that such Contract is not assignable under the Bankruptcy Code or otherwise without the consent of the other party or parties thereto, and the consent of such other party has not been given or received, as applicable.  With respect to any Contract for which the consent of a party thereto to the assignment thereof shall not have been obtained at Closing and any claim, right or benefit arising thereunder or resulting therefrom, Sellers and Purchaser shall use their reasonable good faith efforts to obtain as expeditiously as possible the written consent of the other party or parties to such Contract necessary for the assignment thereof to Purchaser; <u>provided</u> Purchaser shall be ultimately responsible for obtaining any such consent(s).  Unless and until any such consent, waiver,

4895-8439-9877.1

confirmation, novation or approval is obtained, Sellers and Purchaser shall cooperate to establish an arrangement reasonably satisfactory to Sellers and Purchaser under which Purchaser would obtain the claims, rights and benefits and assume the corresponding Liabilities and obligations thereunder (including by means of any subcontracting, sublicensing or subleasing arrangement).  In such event, (i) Sellers will hold in trust for and promptly pay to Purchaser, when received, all moneys received by them under any such Contract or any claim, right or benefit arising thereunder, (ii) Purchaser will promptly pay, perform or discharge, when due, any and all obligations and Liabilities arising thereunder, other than those being contested in good faith, and (iii) Purchaser shall reimburse Sellers for all reasonable costs and expenses, including fees and costs of professionals, incurred by Sellers in connection with any such Contract.  Purchaser acknowledges that no adjustment to the Purchase Price shall be made for any such Contracts that are not assigned and that Purchaser shall have no claim against Sellers in respect of such unassigned Contracts. Nothing in this paragraph shall be deemed a waiver of Purchaser's right to receive an effective assignment of all of the Purchased Assets at Closing, save and except for any Contracts that Sellers are unable to assume or assign to Purchaser under applicable Law or order of any court of competent jurisdiction, nor shall any Contracts covered by this paragraph be deemed to constitute Excluded Assets solely by virtue of this paragraph.  Sellers' obligations under this paragraph shall terminate on the date that is 150 days after the Closing Date.

(f)     Promptly following the Designation Deadline, Purchaser shall file with the Bankruptcy Court a final list of all Business Contracts and Real Property Leases.

(g)     Notwithstanding anything to the contrary in this Section 1.4, Sellers shall have no obligation to renew, replace or extend the term of any Contracts or otherwise preserve or prevent the expiration of any Contracts, or incur any costs, expenses or other liabilities or obligations associated with any Contracts not reimbursable by Purchaser under this Agreement or the Transition Services Agreement.

(h)     Until the Designation Deadline, for no additional consideration, except for any obligations under the Transition Services Agreement or Cure Amounts due in connection with the subject assets, Purchaser shall be entitled to amend Schedules 1.2(b), 1.2(g), 1.2(h) and 1.2(i), or any other Schedule(s) affected by such designation, and to designate (by delivery of written notice to Sellers of such designation) additional assets and liabilities to assume and have assigned to Purchaser by Sellers, which assets and liabilities will thereinafter be deemed to constitute "Purchased Assets," and "Assumed Liabilities," hereunder, as appropriate, notwithstanding the fact that such assets and liabilities previously may have been considered Excluded Assets or Excluded Liabilities hereunder and any and all Schedule(s) affected by such designation shall be deemed amended automatically upon receipt of such notice without further action by the Parties or order of the Bankruptcy Court; provided, however, that Purchaser shall not be entitled to designate any Excluded Assets under Sections 1.3(a), (d), (j), (m), (n), (o), or (q) as Purchased Assets without the express prior written consent of Sellers and, until all obligations owing to the DIP Agent have been indefeasibly paid and discharged in full, DIP Agent; provided, further, that the Purchaser shall in no event be entitled to designate any Excluded Assets under Sections 1.3(h) or (i) as Purchased Assets, and any amendment

or waiver with respect to Sections 1.3(h) or (i) shall require the express prior written consent of the Prepetition Secured Parties and, until all obligations owing to the DIP Agent have been indefeasibly paid and discharged in full, DIP Agent.  In the event of any designation pursuant to Section 1.4, Sellers reserve the right to amend or supplement any Schedule(s) or disclosures under this Agreement or any Transaction Documents solely to account for such designation, which amendment or supplement shall be deemed made as of the date hereof.  For the avoidance of doubt, this Section 1.4(h): (i) shall not apply to designation of Contracts as assumed or excluded, which shall occur in accordance with the procedures set forth in Sections 1.4(a)-(g) above, and (ii) shall not result in any adjustments to the Purchase Price.

(i)      On the Closing Date, the Parties shall enter into a Transition Services Agreement, on terms mutually acceptable to the Parties, which shall provide, among other terms, (i) Purchaser shall perform any and all obligations of the Sellers under any Contracts from and after the Closing until such Contract is designated as a Disclaimed Contract, (ii) Purchaser shall pay certain expenses associated with the maintenance or operations of the Refinery or other assets of the Debtors from and after Closing until the date that is five (5) Business Days after the Designation Deadline (unless such asset is designated a Purchased Asset, which case Purchaser shall be exclusively responsible for such assets and any related costs and expenses on and after such designation), (iii) Purchaser shall reimburse Sellers for any and all costs and expenses incurred in connection with any Contract on or after the Closing Date until such Contract is designated as a Disclaimed Contract, (iv) Purchaser shall indemnify and hold harmless Sellers, and each of them, and each of their respective officers, directors, employees, agents, professionals and any other individual or entity acting by or through or on behalf of Sellers, or any of them (collectively, the "Indemnified Parties"), from any and all actions, causes of action, claims, demands, damages, judgments, Liabilities, debts, dues and suits of every kind, nature and description whatsoever, arising directly or indirectly out of the Purchaser's performance of any Contracts or Purchaser's or Sellers' actions that are required to be taken pursuant to the Transition Services Agreement on or after the Closing Date, (v) release of the Indemnified Parties from any and all actions, causes of action, claims, demands, damages, judgments, Liabilities, debts, dues and suits of every kind, nature and description whatsoever, arising directly or indirectly out of arising out of the Indemnified Parties' actions in connection with the Contracts or any actions taken pursuant to the Transition Services Agreement on or after the Closing Date, and (vi) the effectiveness of the Transition Services Agreement shall be subject to approval of the Bankruptcy Court as a Transaction Document.  For the avoidance of doubt, to the extent there is any conflict between the terms of this Section 1.4(i) and the terms of the Transition Services Agreement, the terms of the Transition Services Agreement shall govern.

ARTICLE II
Assumption of Liabilities

2.1    Agreement to Assume.  At the Closing, Purchaser shall assume and agree to pay, perform and discharge when due, solely the liabilities and obligations of Sellers described in Section 2.2 (the "Assumed Liabilities").  Purchaser shall only be liable for Assumed Liabilities.

All other liabilities and obligations of Sellers, including those enumerated in Section 2.3, are collectively referred to herein as "Excluded Liabilities". Purchaser shall not assume, be deemed to have assumed, or otherwise be responsible for, any Excluded Liabilities unless and until designated as an Assumed Liability in accordance with Section 1.4(h).

2.2   Description of Assumed Liabilities.  The following liabilities and obligations of Sellers (and only the following liabilities and obligations) shall constitute the Assumed Liabilities:

(a)   all Liabilities (including for the avoidance of doubt, all Environmental Liabilities) relating to or arising out of the Purchased Assets on or after the Closing Date (or, in the case of any Purchased Assets that are designated for assignment or transfer to Purchaser following the Closing, after the date of such assignment or transfer, except as otherwise provided in the Transition Services Agreement);

(b)   all Post-Closing Litigation Liabilities with respect to the Purchased Assets;

(c)   all Cure Amounts with respect to the Business Contracts and the Real Property Leases;

(d)   all costs and expenses necessary in connection with providing "adequate assurance of future performance" with respect to the Business Contracts and Real Property Leases (as contemplated by Section 365 of the Bankruptcy Code) for the period commencing on or after the Closing;

(e)   all Liabilities related to the Business Contracts, Real Property Leases and Business Permits, arising out of or relating to any act, omission, circumstance or other Event occurring on or after the Closing Date (in the case of Contracts that are ultimately designated as Disclaimed Contracts, Purchaser shall reimburse Sellers for all Liabilities that arise in the ordinary course of business after the Closing through and including the earlier to occur of (x) five (5) Business Days following the date that Purchaser provides written notice designating any such Contract as a Disclaimed Contract and (y) the date that is five (5) Business Days after the Designation Deadline);

(f)   all accounts payable to Sellers' third party trade creditors that relate to the Purchased Assets and are in respect of goods or services that are provided to or for the benefit of the Purchaser following the Closing (or, in the case of Purchased Assets that are designated as such after the Closing, following the date such Purchased Asset is transferred to Purchaser), including any unresolved vendor rebates or credits associated with such trade creditors that are unpaid, uncollected or unresolved, as the case may be, at the Closing (or, in the case of Purchased Assets that are designated as such after the Closing, following the date such Purchased Asset is transferred to Purchaser);

(g)   any Transfer Taxes;

(h)   any Liability for any Tax or Taxes arising out of or relating to the ownership of the Purchased Assets with respect to any Post-Closing Period (or, in the case of any Purchased Assets that are designated for assignment to Purchaser following the Closing, after the date of such assignment); provided that any liability under the Refinery Operating

11

Agreement for any Post-Closing Period shall not be considered a Tax Liability arising out of the ownership of the Purchased Assets unless and until the Refinery Operating Agreement is designated as a Designated Contract; and

(i)      all Environmental Liabilities arising out of or relating to any act, omission or circumstance that occurred solely with respect to the Purchased Assets prior to the Closing (or, in the case of any Purchased Assets that are designated for assignment to Purchaser following the Closing, prior to the date of such assignment), including for the avoidance of doubt, the presence of Hazardous Materials arising from Sellers' or its predecessors' former refinery operations and located at the Purchased Assets, solely to the extent such Liabilities are exacerbated, triggered, increased, or have their timing accelerated by any act or omission of, or any delay caused by, Purchaser or any of its Affiliates, their respective successors or assigns or their respective Representatives following the Closing (or, in the case of any Purchased Assets that are designated for assignment to Purchaser following the Closing, after the date of such assignment); provided, that, all Environmental Liabilities arising out of or relating to Events or conditions occurring or existing prior to Closing shall not be Assumed Liabilities solely by virtue of Purchaser discovering, identifying or quantifying such Environmental Liabilities through sampling of environmental media if such sampling is (i) required by Environmental Law or by a Governmental Entity, (ii) required to be conducted in response to a Third Party Claim alleging that Hazardous Materials have migrated offsite from the Business Real Property, or (iii) performed to assess known or reasonably suspected conditions that reasonably could be expected to result in imminent and substantial harm to human health or the environment.

2.3      Excluded Liabilities.  The Excluded Liabilities shall consist of all Liabilities other than the Assumed Liabilities.  The Excluded Liabilities shall include, but shall not be limited to, the following:

(a)      all Liabilities (other than Environmental Liabilities) relating to or arising out of any breach or violation of any Law (other than any Environmental Law), Business Contract, Real Property Lease or any Business Permit occurring prior to Closing (or, in the case of any Business Contract, Real Property Lease or Business Permit that is designated for assignment to Purchaser following the Closing, prior to the date of such assignment, except as otherwise provided in the Transition Services Agreement);

(b)      any Liability arising out of or relating to the Excluded Assets, except as otherwise provided in the Transition Services Agreement;

(c)      any Liability arising out of or relating to this Agreement or any Transaction Document for which any Seller has responsibility;

(d)      all Liabilities in respect of any employee or other service provider of Sellers or any of its Affiliates (whether arising prior to, on or after the Closing Date), including any severance obligations that accrue under any severance plan of any Seller with respect to any of such Seller's employees;

4895-8439-9877.1

(e)     all Environmental Liabilities that are not Assumed Liabilities;

(f)     all Liabilities for fees and expenses (i) relating to the negotiation and preparation of this Agreement and the Transaction Documents and (ii) relating to the transactions contemplated by this Agreement and the Transaction Documents, in each case, to the extent incurred by Sellers or their respective Affiliates;

(g)     any Liability for any Tax or Taxes of any Seller or its Affiliates for any taxable period;

(h)     any Liability for any Tax or Taxes arising out of or relating to the operation of the Business (as currently or formerly conducted) or the ownership of the Purchased Assets in any Pre-Closing Period (or, in the case of any Purchased Assets that are designated for assignment to Purchaser following the Closing, prior to the date of such assignment, except as otherwise provided in the Transition Services Agreement), including any Property Taxes;

(i)     any Liability for any Quarterly Refinery Payments incurred or accruing prior to the date that the Refinery Operating Agreement is designated for assignment to Purchaser, if ever; and

(j)     any Liability or obligation arising out of or relating to Indebtedness of any Seller or any of its Affiliates.

<div align="center">

ARTICLE III
Purchase Price, Manner of Payment; Closing; Deposit

</div>

3.1     <u>Purchase Price; Delivery of Funds</u>.   At the Closing, Purchaser shall in full consideration for the sale and transfer by Sellers of the Purchased Assets (a) pay to Sellers an amount (such amount, the "<u>Closing Payment</u>") equal to (i) the Purchase Price, less (ii) the Good Faith Deposit Amount, by wire transfer of immediately available funds to an account or accounts designated by Sellers in writing to Purchaser at least three (3) Business Days prior to the Closing; (b) together with Sellers, execute and deliver a joint written instruction to the Escrow Agent instructing it to release from the Escrow Account to Sellers by wire transfer of immediately available funds to an account or accounts designated by Sellers, an amount equal to the Good Faith Deposit Amount, and (c) assume the Assumed Liabilities.

3.2     <u>Good Faith Escrow Deposit</u>.

(a)     Purchaser has paid to the Escrow Agent the Good Faith Deposit Amount and any Additional Deposit Amount, which funds shall be held in a segregated trust account by the Escrow Agent and released by the Escrow Agent only in accordance with the terms of this Agreement.

(b)     If the Closing occurs, then the Good Faith Deposit Amount, shall be paid to Sellers and the applicable Parties shall submit joint written instructions to the Escrow Agent (in accordance with <u>Section 3.1</u>) to give effect to the same.

<div align="center">13</div>

(c)      If the Closing does not occur as a result of the termination of this Agreement pursuant to Section 8.1(e), then within five (5) Business Days of such termination, the Good Faith Deposit Amount shall be disbursed to Sellers by the Escrow Agent as liquidated damages and the applicable Parties shall submit joint written instructions to the Escrow Agent to give effect to the same.

(d)      If the Closing does not occur as a result of the termination of this Agreement for any reason other than as set forth in Section 3.2(c), then the Good Faith Deposit Amount shall be returned to Purchaser by the Escrow Agent within five (5) Business Days of such termination, and the applicable Parties shall submit joint written instructions to the Escrow Agent to give effect to the same.

(e)      The Parties acknowledge that the agreements contained in this Section 3.2 are an integral part of the transactions contemplated by this Agreement and that without these agreements neither Sellers nor Purchaser would enter into this Agreement.

3.3      Time and Place of Closing.  Subject to the satisfaction or waiver of all of the conditions set forth in Article VII, the closing of the Purchase (the "Closing") shall take place at the offices of Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, New York 10111, or such other location agreed upon by Sellers and Purchaser, as soon as practicable, but in any event within five (5) Business Days, after the last of the conditions set forth in Article VII is satisfied or waived (other than those conditions that by their nature are to be satisfied at the Closing, but subject to the fulfillment or waiver of those conditions), or at such other time, date or place as the Parties shall agree in writing; provided, however, that the Closing Date (defined hereinafter) shall occur no later than December 17, 2021, at 5:00 p.m. (New York City time), unless extended by Sellers, with the consent of the DIP Agent and Prepetition Secured Parties.  Such date of Closing is herein referred to as the "Closing Date".

3.4      Closing Deliverables.

(a)      At the Closing, Sellers shall deliver or cause to be delivered to Purchaser:

(i)      a certificate in a form reasonably satisfactory to Purchaser signed by an authorized officer of each Seller, dated as of the Closing Date, confirming the matters set forth in Sections 7.2(a) and (b) with respect to each Seller;

(ii)      counterparts to the assignment, transfer and conveyance instruments listed on Schedule 3.4, in each case, duly executed by each Seller (as applicable);

(iii)      a counterpart to the Bill of Sale and Assignment and Assumption Agreement, duly executed by each Seller;

(iv)      a counterpart to the Transition Services Agreement, duly executed by each Seller (or their applicable Affiliates); and

(v)      written instructions to the Escrow Agent to release the Good Faith Deposit Amount pursuant to Section 3.1.

(b)     At the Closing, Purchaser shall deliver or cause to be delivered to Sellers, and Sellers shall have received:

     (i)     the Closing Payment by wire transfer of immediately available funds to an account or accounts designated by Sellers in writing to Purchaser at least three Business Days prior to the Closing;

     (ii)     a certificate in a form reasonably satisfactory to Sellers signed by an authorized officer of Purchaser, dated as of the Closing Date, confirming the matters set forth in <u>Sections 7.1(a)</u> and <u>(b)</u>;

     (iii)     counterparts to the assignment, transfer and conveyance instruments listed on <u>Schedule 3.4</u>, in each case, duly executed by Purchaser (as applicable);

     (iv)     a counterpart to the Bill of Sale and Assignment and Assumption Agreement, duly executed by Purchaser;

     (v)     a counterpart to the Transition Services Agreement, duly executed by Purchaser; and

     (vi)     written instructions to the Escrow Agent to release the Good Faith Deposit Amount pursuant to <u>Section 3.1</u>.

3.5     <u>Allocation of Purchase Price</u>.  The purchase price (as determined for U.S. federal income Tax purposes) shall be allocated among the Purchased Assets within 120 days after the Closing in the manner required by Section 1060 of the Code, and as proposed by Sellers and consented to by Purchaser prior to the Closing (such consent to not be unreasonably withheld). Notwithstanding the foregoing, nothing in this Agreement shall be construed to mean that a Party hereto or other person must:  (a) use, for any one or more purposes, any price or other allocation set forth or provided for in this Agreement if such Party or person reasonably believes or reasonably is advised that such use is not in accordance with applicable Law; or (b) make or file, or cooperate in the making or filing of, any return or report to any Governmental Entity in any manner that such Party or person reasonably believes or is reasonably advised is not in accordance with applicable Law.

ARTICLE IV
<u>Representations and Warranties of Sellers</u>

Except as set forth in the disclosure letter delivered by Sellers to Purchaser (the "<u>Seller Disclosure Letter</u>") concurrently with the execution of this Agreement (it being agreed that any matter disclosed pursuant to any section of the Seller Disclosure Letter shall be deemed disclosed for purposes of any other section of the Seller Disclosure Letter to the extent the applicability of the disclosure to such other section is reasonably apparent on the face of such disclosure), as may be amended, Sellers hereby represent and warrant to Purchaser as follows as of the date hereof and as of the Closing Date (or as of such other date as may be specified herein):

4.1     <u>Due Organization, Good Standing and Limited Liability Company Power</u>.  Each Seller is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization.  Each Seller has all requisite limited liability company power and authority to own, lease and operate its assets and properties and conduct its business as now being conducted. Each Seller is in good standing under the laws of each jurisdiction where the character of its assets or properties or the conduct of its business requires such qualification, except where the failure to be in good standing would not reasonably be expected to materially and adversely affect the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole, or prevent or materially delay beyond the Termination Date Sellers' ability to consummate the transactions contemplated by this Agreement or the Transaction Documents.

4.2     <u>Authorization; Noncontravention</u>.

(a)     Subject to obtaining Bankruptcy Court approval pursuant to the Sale Order, each Seller has the requisite limited liability company power and authority and has taken all limited liability company action necessary to execute and deliver this Agreement, the Transaction Documents and all other instruments and agreements to be delivered by Sellers as contemplated hereby, to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby.  Subject to obtaining Bankruptcy Court approval pursuant to the Sale Order, the execution, delivery and performance by Sellers of this Agreement, the Transaction Documents and all other instruments and agreements to be delivered by Sellers as contemplated hereby, the consummation by Sellers of the transactions contemplated hereby and thereby and the performance of its obligations hereunder and thereunder have been, and in the case of documents required to be delivered at the Closing will be, duly authorized and approved by all necessary limited liability company, member or other action.  This Agreement has been, and the Transaction Documents and all other instruments and agreements to be executed and delivered by Sellers as contemplated hereby will be, duly executed and delivered by Sellers.  Subject to obtaining Bankruptcy Court approval pursuant to the Sale Order, assuming that this Agreement, the Transaction Documents and all such other instruments and agreements constitute valid and binding obligations of Purchaser and each other Person (other than any Seller or any Affiliate thereof) party hereto and thereto, this Agreement, the Transaction Documents and all such other instruments and agreements constitute valid and binding obligations of Sellers, enforceable against each applicable Seller in accordance with the terms thereof, except to the extent that such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium  or other similar Laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether considered in a proceeding in equity or at law).

(b)     Except as a result of the Bankruptcy Cases and, subject to obtaining Bankruptcy Court approval pursuant to the Sale Order, the execution and delivery by Sellers of this Agreement, the Transaction Documents and all other instruments and agreements to be delivered by Sellers as contemplated hereby do not, and the consummation of the transactions contemplated hereby and thereby will not:

(i)     conflict with any of the provisions of any Seller's certificate of formation or other formational documents;

(ii)     except as provided in <u>Section 4.2(b)(ii)</u> of the Seller Disclosure Letter and subject to receipt of the Consents set forth in <u>Section 4.3</u> of the Seller Disclosure Letter, conflict with or result in a breach of, or constitute a default under or give rise to any right of termination, cancellation, modification or acceleration (including any right of first refusal or similar right) or the loss of a benefit under, or require the Consent of or giving of notice to any Person under any Business Contract, Real Property Lease or Business Permit (in each case, with or without notice or lapse or time or both); except, in the case of this clause (ii) for such conflicts or breaches or Consents or notices that (if not received) would not reasonably be expected to materially and adversely affect the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole, or prevent or materially delay beyond the Termination Date Sellers' ability to consummate the transactions contemplated by this Agreement or the Transaction Documents;

(iii)    subject to the receipt of the Consents referred to in <u>Section 4.3</u> of the Seller Disclosure Letter, contravene any Law or any Order applicable to Sellers or by which any of their properties or assets are bound except such contraventions that would not reasonably be expected to materially and adversely affect the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole, or prevent or materially delay beyond the Termination Date Sellers' ability to consummate the transactions contemplated by this Agreement or the Transaction Documents; or

(iv)    result in the creation or imposition of any Lien (other than a Permitted Lien) on any of the Purchased Assets.

4.3     <u>Governmental Consents and Approvals</u>.  Except as a result of the Bankruptcy Cases and, subject to obtaining Bankruptcy Court approval pursuant to the entry of the Sale Order and the expiration, or waiver by the Bankruptcy Court, of the 14-day period set forth in rules 6004(h) and 3020(e) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), as applicable, except as set forth in <u>Section 4.3</u> of the Seller Disclosure Letter, no Consent of or filing with any Governmental Entity must be obtained or made by Sellers in connection with the execution and delivery of this Agreement or any Transaction Document by Sellers or the consummation by Sellers of the transactions contemplated by this Agreement or any Transaction Document, except for any Consents that, if not obtained or made, would not reasonably be expected to materially and adversely affect the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole, or prevent or materially delay beyond the Termination Date Sellers' ability to consummate the transactions contemplated by this Agreement or the Transaction Documents.

4.4     <u>Property</u>.

(a)     Other than the Real Property, no Seller owns any other real property.  One or more Sellers has good and valid title to the Purchased Real Property (other than any Excluded Asset), subject to Permitted Liens.  There are no outstanding options, rights of first offer or rights of first refusal to purchase any Purchased Real Property or any portion thereof or interest therein.  No Seller has leased or otherwise granted to any Person the

right to use or occupy the Purchased Real Property or any material portion thereof, except as set forth in Section 4.4(a) of the Seller Disclosure Letter.

(b)      Section 4.4(b) of the Seller Disclosure Letter contains an accurate and complete list as of the date hereof of all Real Property Leases and all other real property leases and subleases to which a Seller is a party.  With respect to each Real Property Lease pursuant to which a Seller is a lessee or sublessee, such Seller has valid leasehold interests in all leased real property described in such Real Property Lease, free and clear of any and all Liens, except for Permitted Liens.  Each Real Property Lease is a valid and binding obligation of the Seller party thereto and, to the Knowledge of Sellers, is enforceable against the other parties thereto in accordance with the terms thereof, in each case, except to the extent that such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium  or other similar Laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether considered in a proceeding in equity or at law).  Except as set forth in Section 4.4(b) of the Seller Disclosure Letter, there exists no material default or event of default (with or without notice or lapse of time or both) with respect to any Real Property Lease by a Seller or, to the Knowledge of Sellers, by any other party thereto, and no Seller has received or delivered any notice with respect to any alleged material default that has not been rescinded, completely cured, or will be cured on or before the Closing Date pursuant to §365 of the Bankruptcy Code or otherwise.

(c)      To the Knowledge of Sellers, there is no, and no Seller has received written notice of any, existing or threatened change in the zoning classification of any Business Real Property (or any portion thereof) from that in effect on the date of this Agreement, in each instance, which would reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.  All water, sewer, gas, electric, telephone and drainage facilities and all other utilities and public or quasi-public improvements related thereto required by Law with respect to, or required for the operation of, the Business at the Business Real Property, are installed and available to serve the Business Real Property. No condemnation proceeding, lawsuit or administrative action or other matter affecting and adversely impairing the current use or occupancy of the Business Real Property is pending or, to the Knowledge of Sellers, threatened in writing with respect to any Business Real Property which has had or would reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.  There has been no casualty damage at any of the Business Real Property that has had or would reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

4.5      Title to Purchased Assets.  Except as set forth in Section 4.5 of the Seller Disclosure Letter, and excluding Purchased Real Property (which is governed by Section 4.4(a)), one or more Sellers own and has good and valid title to, or a valid leasehold interest in, all personal property included in the Purchased Assets, free and clear of all Liens, except for Permitted Liens.

4.6      Affiliate Transactions.  Except as disclosed in Section 4.6 of the Seller Disclosure Letter and except for employment and consultant relationships and compensation, benefits, travel advances and employee or consultant loans to any officer, director, employee or consultant of Seller, in each case, in the ordinary course of business, there is no Contract or Liability relating primarily to the Business, the Purchased Assets or the Assumed Liabilities between (a) a Seller,

on the one hand, and (b) any Affiliate, equity holder, option holder, officer, member, partner or director of a Seller (in each case that is not also a Seller), on the other hand, that remains in force and provides for obligations of any party from and after the Closing.

4.7     Material Contracts.

(a)     Section 4.7(a) of the Seller Disclosure Letter sets forth an accurate, correct and complete list of the following Contracts to which a Seller is a party and which are currently in effect as of the date hereof:

(i)     each Contract relating to Indebtedness of the Business or any of the Purchased Assets (in each case, whether incurred, assumed, guaranteed or secured by any asset);

(ii)     each Contract whereby a Seller has granted a Lien in respect of any of the Purchased Assets;

(iii)     each Contract containing any covenant limiting the freedom of a Seller or any of its Affiliates (A) to compete with any Person, engage in any line of business or exploit the Purchased Assets, in each case, in any geographic territory, (B) which grants to any Person any exclusivity with respect to any geographic territory, any customer or any product or service, or (C) to solicit for employment, hire or employ any Person;

(iv)     each Contract that requires capital expenditures or other outstanding payments to be made by a Seller in excess of $100,000, in each case, following the date hereof;

(v)     each Contract involving a joint venture, partnership, limited liability company or other arrangement providing for the sharing of profits, losses, costs or liabilities with any other Person relating to the Business, the Purchased Assets or the Assumed Liabilities;

(vi)     each Contract that requires (or may require in certain circumstances) in accordance with its terms the provision of credit support, collateral, a guarantee or similar financial assurance in respect of the Business, the Purchased Assets or the Assumed Liabilities;

(vii)     each Contract that (A) provides services for a fixed price or maximum fee, or pursuant to any cap or similar provisions; (B) grants "most favored nation" status (or similar status) to a Person (whether in respect of pricing or otherwise); or (C) provides any performance guarantee, material rebates, discounts, incentive or volume credits;

(viii)     each Contract with any Governmental Entity relating to the Business, the Purchased Assets or the Assumed Liabilities;

(ix)     Contracts relating to any interest rate, currency or commodity derivatives or hedging transaction;

(x)     Contracts containing any "change of control" or similar provisions; and

(xi)     Contracts with any employees or other service providers of the Business providing for any severance Liabilities.

(b)     The Contracts required to be listed in <u>Section 4.7(a)</u>, together with the Business Contracts and the Real Property Leases are referred to as "<u>Material Contracts</u>". True, correct and complete copies of each Material Contract have been made available to Purchaser prior to the date hereof. Each Business Contract is a valid and binding obligation of a Seller (except for any breach or default that results from the insolvency of a Seller or the commencement of the Bankruptcy Cases and any breach or default to be cured through the payment of the Cure Amounts) and to the Knowledge of Sellers, enforceable against the other parties thereto in accordance with the terms thereof, except to the extent that such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar Laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether considered in a proceeding in equity or at law). Except as set forth in <u>Section 4.7(b)</u> of the Seller Disclosure Letter and any breach or default that results from the insolvency of a Seller or the commencement of the Bankruptcy Cases and any breach or default to be cured through the payment of the Cure Amounts, there exists no material default or event of default (with or without notice or lapse of time or both) with respect to any Business Contract by a Seller or, to the Knowledge of Sellers, by any other party thereto and no Seller has received or delivered any notice with respect to any alleged material default that has not been rescinded or cured.

4.8     <u>Intellectual Property Rights and Claims.</u>

(a)     The Intellectual Property set forth in <u>Section 4.8(a)</u> of the Seller Disclosure Letter identifies all registrations and applications for the Intellectual Property owned by each Seller and used or held for use by Sellers in the Business as presently conducted. The Intellectual Property required to be set forth in <u>Section 4.8(a)</u> of the Seller Disclosure Letter is subsisting and has not been adjudicated to be invalid or unenforceable in whole or part, and to the Knowledge of Sellers, is valid and enforceable, and to the Knowledge of Sellers, no Seller is aware of any uses of any item of such Intellectual Property that could be expected to lead to such item becoming invalid or unenforceable.

(b)     Except as set forth in <u>Section 4.8(b)</u> of the Seller Disclosure Letter, one or more Sellers owns all right, title, and interest to or is licensed to use the Business Intellectual Property, free and clear of any Liens, other than Permitted Liens.

(c)     The operation of the Business as currently conducted and the use of the Intellectual Property in connection therewith, to the Knowledge of Sellers, do not conflict with, infringe, misappropriate, dilute, misuse or otherwise violate the intellectual property rights of any third-party. No claim, action, suit, investigation, litigation or proceeding has

4895-8439-9877.1

been asserted or is pending or, to the Knowledge of Sellers, threatened against any Seller with respect to the foregoing.  To the Knowledge of Sellers, no Third Party is infringing or misappropriating any Business Intellectual Property.

(d)     Except for claims that have since been satisfactorily resolved or for which the statute of limitations has lapsed, no Seller has received any written notice from any Third Party challenging the right of such Seller to use any of the Business Intellectual Property that would reasonably be expected to materially and adversely affect the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole.

(e)     There are no pending actions, suits or arbitrations by, or before any Governmental Entity for an infringement or misappropriation by any Seller of any Intellectual Property owned by any Third Party which would reasonably be expected to materially and adversely affect the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole.

4.9     <u>Tax Matters</u>.  Except as disclosed in <u>Section 4.9</u> of the Seller Disclosure Letter:

(a)     Sellers have timely filed or caused to be timely filed, taking into account any applicable extensions, with the appropriate taxing authorities all income Tax Returns and all material non-income Tax Returns with respect to the Business or the Purchased Assets.  All such Returns are correct and complete in all material respects.  No Seller is currently the beneficiary of any extension of time within which to file any material tax Return with respect to the Business or the Purchased Assets.  Since January 1, 2017, no written claim has been made by a Governmental Entity in a jurisdiction in which a Seller does not file Returns that such Seller is or may be subject to taxation by that jurisdiction with respect to Taxes that would be the subject of such Returns.

(b)     All income Tax Liabilities and all material non-income Tax Liabilities of each Seller due and payable with respect to the Business or the Purchased Assets, in each instance for all Pre-Closing Periods, have been timely paid, taking into account any applicable extensions, to the extent the non-payment of such Taxes could reasonably be expected to result in a Lien (other than a Permitted Lien) on the Purchased Assets.  There are no pending or, to the Knowledge of Sellers threatened in writing, audits, investigations, disputes, notices of deficiency, claims or other similar actions relating to Property Taxes or any other Taxes that are imposed on a periodic basis (which are not based on income) of a Seller with respect to the Business or the Purchased Assets.  No Seller has waived any statute of limitations in respect of non-income Taxes or agreed to any extension of time with respect to a non-income Tax assessment or deficiency.

4.10     <u>Financial Statements</u>.  Sellers have made available to Purchaser copies of the audited consolidated balance sheet of the Business as of December 31, 2020 (the "<u>Most Recent Balance Sheet</u>"), the related audited consolidated income statement and audited statement of cash flows for the twelve-month period ended December 31, 2020, together with the accompanying notes thereto (collectively, the "<u>Financial Statements</u>").  Each of the Financial Statements has been prepared in all material respects in conformity with U.S. generally accepted accounting principles ("<u>GAAP</u>") applied on a consistent basis during the periods involved (except as may be indicated

therein or in the notes thereto), and presents fairly in all material respects the consolidated financial position, results of operations and cash flows of the Business as at the dates and for the periods indicated therein.

4.11    <u>Compliance with Laws</u>.  Except as set forth in <u>Section 4.11</u> of the Seller Disclosure Letter, (a) no Seller is, and no Seller has been in the past five (5) years, in material violation of any Law or Order applicable to the Business, the Purchased Assets or the Assumed Liabilities, and (b) no Seller has received any written notice alleging or, to the Knowledge of Seller, been subject to any investigation by any Governmental Entity concerning, any such material violation of a Law or Order.

4.12    <u>Environmental Matters</u>.    Except as disclosed in <u>Section 4.12</u> of the Seller Disclosure Letter, with respect to the Business:

(a)    each Seller is in material compliance with all applicable Environmental Laws;

(b)    there are no Proceedings pending, or to the Knowledge of Sellers, threatened in writing, against any Seller that alleges any material violation of Environmental Law and no Seller has received from any Governmental Entity any written notice of material violation or alleged material violation of Environmental Law;

(c)    Sellers possess and are in material compliance with all Permits required under Environmental Laws to operate the Business as currently operated and as the Business is expected to be operated following the Closing as contemplated by the Transaction Documents ("<u>Environmental Permits</u>"), which such Environmental Permits are listed in Section 4.12(c) of the Seller Disclosure Letter, and there are no Proceedings pending, or to the Knowledge of Sellers threatened in writing, to modify, suspend, revoke or rescind any such Environmental Permits; and

(d)    from and after December 1, 2015, there have been no material releases of any Hazardous Materials (i) at, in, under, on, or from any Seller Facilities or (ii) at, in, under, on, or, from any third-party location for which a Seller has any material Liability under Environmental Law.

The representations and warranties in this <u>Section 4.12</u> are the sole and exclusive representations and warranties of Sellers concerning any Environmental Law, Environmental Permits, Hazardous Material or other environmental matters.

4.13    <u>Permits</u>.    Except for matters that are the subject of the representations and warranties in <u>Section 4.12</u> (Environmental Matters), which matters are covered solely by <u>Section 4.12</u>, Sellers possess all material Permits that are necessary for the lawful operation of the Business as currently conducted by Sellers in the ordinary course.  All such Permits are valid and have not lapsed, been cancelled, terminated or withdrawn.  Sellers are in compliance in all material respects with all such Permits.

4.14    <u>Litigation</u>.  Except as set forth in <u>Section 4.14</u> of the Seller Disclosure Letter: (a) there is no Proceeding pending, or to the Knowledge of Sellers, threatened, against any Seller or

its Affiliates in respect of the Business, the Purchased Assets or the Assumed Liabilities, and (b) there are no material Orders outstanding applicable to the Business, the Purchased Assets or the Assumed Liabilities that have not been fully satisfied.

4.15    Finders; Brokers.  Except for Jefferies LLC and GlassRatner Advisory & Capital LLC, doing business as B. Riley Advisory Services (whose fees are payable by Sellers), no agent, broker, Person or firm acting on behalf of Sellers is, or shall be, entitled to any broker's fees, finder's fees or commissions from Purchaser in connection with this Agreement or any Transaction Document or any of the transactions contemplated hereby or thereby.

4.16    Exclusivity of Representations; Projections, Etc..    The representations and warranties expressly made by Sellers in this Article IV and the Transaction Documents are the exclusive representations and warranties made by Sellers with respect to the Business, the Purchased Assets and the Assumed Liabilities.  Except for any representations and warranties expressly set forth in this Article IV (as qualified by the Seller Disclosure Letter) or the Transaction Documents, (a) the Purchased Assets and the Assumed Liabilities are sold "AS IS, WHERE IS," and Sellers expressly disclaim (on each of their own behalf and on behalf of each of their respective Affiliates) any other representations or warranties of any kind or nature, express or implied, as to Liabilities, operations of their businesses (as currently or formerly conducted), the title, condition, value or quality of assets of Sellers, or the prospects (financial and otherwise), risks and other incidents of Sellers and their businesses (as currently or formerly conducted), the Purchased Assets and the Assumed Liabilities, (b) SELLERS SPECIFICALLY DISCLAIM (ON EACH OF THEIR OWN BEHALF AND ON BEHALF OF EACH OF THEIR RESPECTIVE AFFILIATES), AND PURCHASER HEREBY WAIVES, ANY REPRESENTATION OR WARRANTY OF QUALITY, VALUE, DESIGN, OPERATION, MERCHANTABILITY, NON-INFRINGEMENT, FITNESS FOR A PARTICULAR PURPOSE, ELIGIBILITY FOR A PARTICULAR TRADE, CONFORMITY TO SAMPLES, OR CONDITION OF THE ASSETS OF SELLERS (INCLUDING THE PURCHASED ASSETS) OR ANY PART THEREOF, WHETHER LATENT OR PATENT, (c) no material or information provided by or communications made by any Seller or any of its Affiliates, or by any advisor thereof, whether by use of a "data room," or in any information memorandum, or otherwise, or by any broker or investment banker, will cause or create any warranty, express or implied, as to or in respect of any Seller, any Affiliate of any Seller or the title, condition, value or quality of their businesses (as currently or formerly conducted), the Purchased Assets or the Assumed Liabilities, and no other Person shall be deemed to have made, or shall be deemed to make, any other express or implied representation or warranty, either written or oral, on behalf of any Seller or any Affiliate thereof with respect to the subject matter contained herein, and (d) no Seller makes any representation or warranty whatsoever with respect to any estimates, projections and other forecasts and plans (including the reasonableness of the assumptions underlying such estimates, projections and forecasts).

ARTICLE V
Representations and Warranties of Purchaser

Purchaser hereby represents and warrants to Sellers as follows as of the date hereof and as of the Closing Date (or as of such other date as may be specified herein):

5.1 <u>Due Organization, Good Standing and Power</u>.  Purchaser organized, validly existing and in good standing under the laws of its jurisdiction of organization.  Purchaser has all requisite power and authority to own, lease and operate its assets and properties and conduct its business as now being conducted.  Purchaser is in good standing under the laws of each jurisdiction where the character of its assets or properties or the conduct of its business requires such qualification, except where the failure to be in good standing would not reasonably be expected to prevent, materially delay or impair Purchaser's ability to consummate the transactions contemplated by this Agreement or any Transaction Document.

5.2 <u>Authorization; Noncontravention</u>.

(a) Purchaser has the requisite power and authority and has taken all action necessary to execute and deliver this Agreement, the Transaction Documents and all other instruments and agreements to be delivered by Purchaser as contemplated hereby, to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby. The execution, delivery and performance by Purchaser of this Agreement, the Transaction Documents and all other instruments and agreements to be delivered by Purchaser as contemplated hereby, the consummation by it of the transactions contemplated hereby and thereby and the performance of its obligations hereunder and thereunder have been, and in the case of documents required to be delivered at the Closing will be, duly authorized and approved by all necessary action of Purchaser. This Agreement has been, and the Transaction Documents and all other instruments and agreements to be executed and delivered by Purchaser as contemplated hereby will be, duly executed and delivered by Purchaser. Assuming that this Agreement, the Transaction Documents and all such other instruments and agreements constitute valid and binding obligations of Sellers and each other Person (other than Purchaser) party hereto and thereto, this Agreement and all such other instruments and agreements constitute valid and binding obligations of Purchaser, enforceable against Purchaser in accordance with the terms thereof, except to the extent that such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar Laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether considered in a proceeding in equity or at law).

(b) Except as a result of the Bankruptcy Cases, the execution and delivery by Purchaser of this Agreement, the Transaction Documents and all other instruments and agreements to be delivered by Purchaser as contemplated hereby do not, and the consummation of the transactions contemplated hereby and thereby will not, (i) conflict with any of the provisions of the certificate of formation or governance documents of Purchaser, in each case, as amended to the date of this Agreement, (ii) conflict with or result in a breach of, or constitute a default under, any Contract or other instrument to which Purchaser is a party or by which Purchaser or any of its properties or assets are bound, or (iii) contravene any Law or any Order applicable to Purchaser or by which any of its properties or assets are bound, except in the case of clauses (ii) and (iii) above, for such conflicts, breaches, defaults, consents, approvals, authorizations, declarations, filings or notices which do not and would not reasonably be expected to, individually or in the aggregate, prevent or materially delay beyond the Termination Date Purchaser's ability to consummate the transactions contemplated by this Agreement.

5.3    Governmental Consents and Approvals.  Except as a result of the Bankruptcy Cases, no additional Consent of or filing with any Governmental Entity must be obtained or made by Purchaser in connection with the execution and delivery of this Agreement or any Transaction Document by Purchaser or the consummation by Purchaser of the transactions contemplated by this Agreement or any Transaction Document, except for any Consents which have been obtained or made or, if not made or obtained, do not and would not reasonably be expected to, individually or in the aggregate, prevent, materially delay or impair Purchaser's ability to consummate the transactions contemplated by this Agreement or any Transaction Document.

5.4    Financing.  Purchaser has sufficient funds to consummate the transactions contemplated hereby, to perform its obligations hereunder (including all payments to be made by it in connection herewith) and to pay its expenses related to this Agreement and the transactions contemplated hereby.  The obligations of Purchaser under this Agreement are not contingent on the availability of any equity or debt financing.

5.5    Solvency of Purchaser.  After giving effect to the transactions contemplated by this Agreement, Purchaser will not: (a) be insolvent (either because its financial condition is such that the sum of its debts is greater than the fair market value of its assets or because the fair saleable value of its assets is less than the amount required to pay its probable liabilities on its existing debts as they mature); (b) have unreasonably small capital with which to engage in its business; or (c) have incurred debts beyond its ability to pay as they become due.

5.6    Adequate Assurances.  Purchaser is and will be capable of satisfying the conditions contained in Section 365(b)(1)(C) and 365(f) of the Bankruptcy Code with respect to the Business Contracts and Real Property Leases.

5.7    Litigation.  There is no Proceeding pending against or affecting Purchaser, or any of its properties or rights, except as have not and would not reasonably be expected to, individually or in the aggregate, prevent, materially delay or impair Purchaser's ability to consummate the transactions contemplated by this Agreement or any Transaction Document. Purchaser is not subject to any Order which seeks to or would reasonably be expected to, individually or in the aggregate, prevent, materially delay or impair Purchaser's ability to consummate the transactions contemplated by this Agreement or any Transaction Document.

5.8    Finders; Brokers.  Other than Greenhill & Co., LLC, no agent, broker, Person or firm acting on behalf of Purchaser or any of its Affiliates is or shall be entitled to any broker's fees, finder's fees or commissions from Sellers or any of their respective Affiliates in connection with this Agreement or any Transaction Document or any of the transactions contemplated hereby or thereby.

5.9    Investigation by Purchaser.  Purchaser has conducted its own independent investigation, verification, review and analysis of the Business (as currently or formerly conducted) and results of operations, financial condition, technology and prospects, the Purchased Assets and the Assumed Liabilities, which investigation, review and analysis was conducted by Purchaser and its Affiliates and, to the extent Purchaser deemed appropriate, by Purchaser's Representatives. Purchaser acknowledges that it and its Representatives have been provided adequate access to Sellers' personnel, properties, premises and records, the Purchased Assets and the Assumed

Liabilities.  In entering into this Agreement, Purchaser acknowledges that it has relied solely upon the aforementioned investigation, review and analysis and not on any factual representations or opinions of Sellers or any of their respective Affiliates (except the representations and warranties of Sellers set forth in <u>Article IV</u>), and Purchaser acknowledges and agrees, to the fullest extent permitted by Law, that:

(a)     none of Sellers or any of their respective Affiliates, Representatives or any other Person makes or has made any oral or written representation or warranty, either express or implied, as to the accuracy or completeness of any information made available or delivered to Purchaser, or its Affiliates and Representatives, including any information, whether oral or written (including cost estimates, financial information and projections and other projections and forward-looking statements) included in management presentations, "break-out" discussions, responses to questions submitted by or on behalf of Purchaser or its Affiliates and Representatives, or any "data room" or court filings;

(b)     none of Sellers or any of their respective equity holders, Affiliates, Representatives or any other Person shall have any Liability or responsibility whatsoever to Purchaser or its equity holders, Affiliates or Representatives on any basis (including in contract, tort or equity, under any securities Laws or otherwise) based upon any information described in <u>Section 5.9(a)</u>;

(c)     without limiting the generality of the foregoing, none of Sellers or any of their respective equity holders, Affiliates, Representatives or any other Person makes any representation or warranty regarding (and Purchaser disclaims) any Third Party beneficiary rights or other rights which Purchaser might claim under any studies, reports, tests or analyses prepared by any Third Parties for any of Sellers or any of their respective Affiliates, even if the same were made available for review by Purchaser or its equity holders, Affiliates or Representatives; and

(d)     without limiting the generality of the foregoing, Purchaser expressly acknowledges and agrees that none of the documents, information or other materials provided to it at any time or in any format by Sellers or any of their respective equity holders, Affiliates or Representatives constitutes legal advice, and Purchaser waives all rights to assert that it received any legal advice from any of Sellers or any of their respective equity holders, Affiliates, or any of their respective Representatives, or that it had any sort of attorney-client relationship with any of such Persons.

<div align="center">ARTICLE VI<br/>Covenants</div>

6.1     <u>Access to Information Concerning Properties and Records</u>.

(a)     During the period from the date of this Agreement through and including the earlier of (i) the date this Agreement is terminated in accordance with <u>Article IX</u> and (ii) the Designation Deadline, (A) Sellers shall, upon reasonable prior notice and during regular business hours, afford Purchaser and its Representatives reasonable access to the personnel, properties, facilities, books and records and other Files and Records of Sellers,

<div align="center">26</div>

the Purchased Assets and the Assumed Liabilities (provided that, prior to the Closing, Sellers shall not be required to conduct, or permit Purchaser or any of its Representatives, without the express written permission of Sellers, to conduct any Phase I environmental site assessment or Phase II environmental site assessment (or other similar environmental air, building materials, soil, soil gas, surface water, groundwater or other environmental media investigation, sampling or analysis on or relating to any real property owned by or leased to any Seller)), and (B) Sellers shall furnish to Purchaser access to all financial and operating data and other information of Sellers relating to the Purchased Assets and the Assumed Liabilities that are in the possession or control of Sellers as Purchaser may reasonably request.   Information obtained by Purchaser and its Representatives in connection with the transactions contemplated by this Agreement shall be subject to the provisions of the Confidentiality Agreement, which shall survive the termination of this Agreement in accordance with Section 6.14.

(b)     Purchaser hereby acknowledges that any access granted pursuant to Section 6.1(a) and utilized by Purchaser or any of its Representatives shall be at the sole risk, cost and expense of Purchaser.  Purchaser shall comply, and shall use commercially reasonable efforts to ensure that each of its Representatives complies, with all safety and similar requirements imposed by Sellers on their properties in the ordinary course of business. Purchaser shall indemnify, defend and hold harmless each of the Sellers and their respective Affiliates and their respective shareholders, partners, members, managers, officers and directors (the "Seller Access Indemnitees") from and against any Losses suffered, incurred or paid by them to the extent such Losses are a result of or arise out of Purchaser's or any of its Representatives' access granted pursuant to Section 6.1(a); provided, that Purchaser shall not be required to indemnify and hold harmless any Seller Access Indemnitee to the extent any Losses incurred by such Seller Access Indemnitee arise due to the gross negligence or willful misconduct of such Seller Access Indemnitee. Notwithstanding anything to the contrary contained in this Agreement, the provisions of this Section 6.1(b) shall survive the Closing and any cancellation or termination of this Agreement.

(c)     Nothing contained in this Agreement shall be construed to give to Purchaser, directly or indirectly, rights to control or direct any Seller or any business or operations of any Seller prior to the Closing in a manner that would violate any Antitrust Laws.  Prior to the Closing, Sellers shall exercise, consistent with the terms and conditions of this Agreement, complete control and supervision of its business and operations.

(d)     Purchaser hereby acknowledges and agrees that it is not authorized to and shall not (and shall not permit any of its Representatives to), without the prior written consent of Sellers, contact any competitor, contractor, vendor, supplier, distributor or customer of the Sellers, in each case, with respect to Sellers, the Purchased Assets (including, for the avoidance of doubt, the Seller Facilities) or the Assumed Liabilities, prior to the Closing.  Purchaser shall keep Sellers informed on a reasonably current basis of any contact with any customers, competitors, vendors or suppliers of Sellers.

(e)     Notwithstanding anything to the contrary contained herein, no access or investigation by Purchaser, its Affiliates or their respective Representatives shall affect or

otherwise modify in any respect any of Purchaser's rights or benefits under this Agreement, including the conditions to Purchaser's obligation to consummate the transactions contemplated by the Agreement as set forth in <u>Article VII</u>.

6.2     <u>Conduct Prior to the Designation Deadline</u>.

(a)     Except (i) as set forth on <u>Schedule 6.2(a)</u>, (ii) as may be expressly required by this Agreement, (iii) as required by Law or Order or by a Governmental Entity, (iv) as required by the Bankruptcy Court, or (v) as a consequence of the commencement and continuation of the Bankruptcy Cases, during the period commencing on the date hereof and ending on the earlier of the Designation Deadline and the termination of this Agreement pursuant to <u>Article IX</u>, Sellers shall use commercially reasonable efforts (x) to comply in all material respects with all Laws, Orders, Contracts, Permits and Environmental Permits applicable thereto and (y) to preserve, maintain and protect in all material respects the Purchased Assets, the current goodwill of the Business and Sellers' present relationships with Governmental Entities and other Persons having significant relationships with Sellers in connection with the Business (as currently conducted).

(b)     Except (i) as set forth <u>Schedule 6.2(b)</u>, (ii) as may be expressly required by this Agreement, (iii) as required by Law or Order or by a Governmental Entity, (iv) as required or approved by the Bankruptcy Court, including pursuant to a confirmed chapter 11 plan, or (v) as a consequence of the commencement and continuation of the Bankruptcy Cases, during the period commencing on the date hereof and ending on the earlier of the Designation Deadline and the termination of this Agreement pursuant to <u>Article IX</u>, Sellers shall not effect any of the following (as each pertains to or is related to the Business, the Purchased Assets or the Assumed Liabilities) without the prior written consent of Purchaser (such consent not to be unreasonably withheld, conditioned or delayed):

(i)     sell, transfer, lease, license or otherwise dispose of any of its assets or properties prior to the Designation Deadline that would be, or could be, if designated in accordance with Sections 1.4(c) or 1.4(h) Purchased Assets under this Agreement, except for any sale, transfer, lease, license or other disposition under this Agreement or other Transaction Document;

(ii)     except as required by GAAP, make any change in any method of accounting or auditing practice with respect to the Business;

(iii)     fail to pay, discharge, settle or satisfy any Assumed Liabilities in accordance with the Budget, as such Assumed Liabilities become due, other than in connection with a good faith dispute; <u>provided</u> that such obligation shall terminate on the Closing Date notwithstanding anything to the contrary in this <u>Section 6.2(b)</u>;

(iv)     create, permit, subject or allow to exist any Lien on any of the Purchased Assets other than a Permitted Lien and other than any Lien that will be extinguished at or prior to Closing;

(v)     extend, materially amend or terminate or grant any material waiver under any Business Contract or Real Property Lease or enter into any Contract that would be categorized as a Material Contract if in effect on the date hereof;

(vi)     abandon any rights under, request the rejection under Section 365 of the Bankruptcy Code of, or amend, modify or supplement the terms of, any of the Business Contracts or Real Property Leases;

(vii)     fail to take any reasonable action that would prevent the expiration, lapse, termination or abandonment of any Permit or Environmental Permit, in each case that is material to the Business;

(viii)     settle or compromise any Proceeding, or enter into any consent decree or settlement agreement with any Third Party, against or affecting the Business that, in each case, would constitute an Assumed Liability;

(ix)     waive any material claims or rights of material value that are included in the Purchased Assets;

(x)     incur, assume, or guarantee any Indebtedness or make any material capital expenditures that, in each case, would constitute an Assumed Liability; or

(xi)     authorize any of the foregoing or commit or agree to do any of the foregoing;

provided, that Purchaser is, and at all times remains, in full and complete compliance with its obligations under the Transition Services Agreement.  As more fully set further therein, if Purchaser defaults under the Transition Services Agreement, Sellers may take any actions necessary, notwithstanding this Section 6.2(b), to preserve and protect the Sellers or the Sellers' bankruptcy estates, including, without limitation, abandon, sell, transfer, lease, license or otherwise dispose of any of its assets or properties or reject any Contracts.

6.3     Efforts to Close.

(a)     Except as otherwise provided in this Section 6.3, the Parties shall, and shall cause their respective controlled Affiliates and Representatives to, and shall use commercially reasonable efforts to direct their respective equityholders to, cooperate and use their respective commercially reasonable efforts to take, or cause to be taken, all appropriate actions, and to make, or cause to be made, all filings necessary, proper or advisable under applicable Laws and to consummate and make effective the transactions contemplated by this Agreement, including their respective commercially reasonable efforts to obtain, prior to the Closing Date, all Permits, Consents and Orders of Governmental Entities as are necessary for consummation of the transactions contemplated by this Agreement and to fulfill the conditions to consummation of the transactions set forth in Article VII; provided, that (w) no Party or its Affiliates shall be required to make any concessions that would adversely affect its business or be materially more burdensome to such Party (including to amend any Contract to increase the amount payable thereunder, commence any litigation, settle or compromise any matter, offer or grant any

accommodation (financial or otherwise) to any Third Party or Governmental Entity, pay any amount or bear any other incremental economic burden to obtain any such Permit, Consent or Order), (x) no Party or its Affiliates shall incur any expense that would be payable or otherwise borne by the other Party or such other Party's Affiliates without the consent of such other Party, (y) Sellers shall not make any concessions that would be an Assumed Liability, and (z) Purchaser shall not make any concessions that would purport to bind any Seller or any of its Affiliates.

(b)     Notwithstanding anything to the contrary contained in this Agreement, no Seller nor any of its Affiliates or Representatives shall be required to repay any Indebtedness, amend or enter into any Contract or other arrangement, commence any litigation, settle or compromise any matter, offer or grant any accommodation (financial or otherwise) to any Third Party, pay any amount or bear any other incremental economic burden to procure any amendments, modification or termination of any Contract.

6.4     Public Announcements.  Each Party shall (a) consult with each other Party before issuing any press release or otherwise making any public statement with respect to the transactions contemplated by this Agreement or any Transaction Document, (b) provide to the other Parties for review a copy of any such press release or public statement and (c) not issue any such press release or make any such public statement prior to such consultation and review and the receipt of the prior consent of the other Parties, unless required by Laws or regulations applicable to such Party or its Affiliates, regulations of any stock exchange applicable to such Party or its Affiliates, or the Bankruptcy Court with respect to filings to be made with the Bankruptcy Court in connection with this Agreement, in which case, the Party required to issue the press release or make the public statement or filing shall, prior to issuing such press release or making such public statement or filing, use its commercially reasonable efforts to allow the other Parties reasonable time to comment on such release, statement or filing to the extent practicable and permitted by Law. Notwithstanding anything to the contrary contained in this Agreement, each of the Parties and its legal counsel and other Representatives shall be permitted to make filings on the docket of, or statements on the record before, the Bankruptcy Court relating to this Agreement and the transactions contemplated hereby without prior approval or consultation.

6.5     Notification of Certain Matters.  Sellers, on the one hand, and Purchaser, on the other hand, shall use their respective commercially reasonable efforts to promptly notify each other of any material Proceedings in connection with the transactions contemplated by this Agreement or the Transaction Documents commenced or, to the knowledge of Purchaser or the Knowledge of Sellers, threatened, against Sellers or Purchaser, as the case may be, or any of their respective Affiliates.

6.6     Post-Closing Access to Records and Personnel; Litigation Support.

(a)     Until the later of (i) three (3) years after the Closing Date and (ii) one (1) year after the closing or dismissal of the Bankruptcy Cases and all proceedings related to or arising out of the Bankruptcy Cases, or any of them), Purchaser shall preserve and retain all corporate, accounting, Tax, legal, auditing, human resources and other books and records, as well as all documents and communications, including, without limitation, any electronically-stored information, servers, electronic communications (e.g., e-mail,

instant messages, voicemails, etc.), and other digital information or data, relating to the Purchased Assets, the Assumed Liabilities, the Business, or any other assets of the Seller, including any Excluded Assets or Excluded Liabilities, with respect to periods prior to the Designation Deadline (including (i) any documents relating to any Proceeding or other dispute and (ii) all Returns, schedules, work papers and other material records or other documents relating to Taxes relating to the Purchased Assets and the Assumed Liabilities). At the end of such period, Purchaser may dispose of any such books and records only after they are first offered to and not accepted by Sellers.

(b)     Following the Closing, Purchaser shall allow Sellers, and their Affiliates successors, including, without limitation, any post-confirmation trustee appointed in the Bankruptcy Cases, and their respective Representatives, reasonable access to (i) all books and records related the Purchased Assets, the Assumed Liabilities, and the Business, including, without limitation, any electronically-stored information, servers, electronical communications (e.g., e-mail, instant messages, voicemails, etc.), and other digital information or data, and (ii) such personnel having knowledge of the location or contents of such books and records, in each case of the foregoing clauses (i) and (ii), for legitimate business reasons, including, without limitation, any matters arising out of or relating to the Bankruptcy Cases or any related proceedings; provided, that no such access shall unreasonably interfere with Purchaser's operation of the Business.

(c)     Following the Closing, Sellers shall allow Purchaser and its Affiliates and their respective Representatives, reasonable access to (i) all books and records related the Purchased Assets and the Assumed Liabilities and the Business and (ii) such personnel having knowledge of the location or contents of such books and records, in each case of the foregoing clauses (i) and (ii), for legitimate business reasons.

(d)     If and for so long as any Party (or any of its Affiliates) is actively prosecuting, contesting or defending any Proceeding brought against or by a Third Party in connection with (i) the Purchase or (ii) any fact, situation, circumstance, status, condition, activity, practice, plan, occurrence, event, incident, action, failure to act, or transaction on or prior to the Closing Date involving any Seller or the Business (as currently or formerly conducted), the Purchased Assets or the Assumed Liabilities, or for so long as the Bankruptcy Cases or any proceeding arising out of or related to the Bankruptcy Cases, or any of them, are pending, the non-contesting, non-defending, or non-debtor Person or Persons shall, at the sole cost and expense of the contesting or defending Person or Persons, (x) reasonably cooperate with the contesting or defending Person or Persons or Sellers, as applicable, and its or their counsel in the defense, contest, or prosecution of the matter, (y) make available its or their personnel during normal business hours and (z) provide such access to its or their books and records (including any electronically stored information, servers, electronic communications (e.g., e-mail, instant messages, voicemails, etc.), and other digital information or data) as shall be necessary or reasonably requested in connection with the prosecution, defense or contests, or administration of the Bankruptcy Cases; provided, that no such cooperation or access shall unreasonably interfere with the operation of the businesses of the non-contesting, non-defending, or non-debtor Person or Persons and no Party shall be required to cooperate or provide access to another Party in connection with a Proceeding between such Party and/or its Affiliates, on the one hand,

4895-8439-9877.1

and any other Party and/or its Affiliates, on the other hand, except through the compliance with generally applicable laws, rules, statutes, and regulations.

(e)     Each of Purchaser, on the one hand, and Sellers, on the other hand, shall be entitled to recover from the other its reasonable out-of-pocket costs incurred in providing the foregoing access and personnel pursuant to Sections 6.6(a) through (d), inclusive, to the other.

(f)     The rights and obligations of a Party under this Section 6.6 shall inure to the benefit of and be binding upon the successors and assigns of such Party.  If a Party or any of its successors or assigns (i) consolidates with or merges into any other Person or (ii) with respect to Purchaser, transfers all or substantially all of the Purchased Assets or the Assumed Liabilities to any Person, in each case proper provision shall be made so that the successors and assigns of such Party honor the obligations set forth in this Section 6.6.

6.7     Tax Matters.

(a)     All stamp, transfer, documentary, sales and use, value added, registration and other such taxes and fees (including any penalties, interest and recording and filing fees) incurred in connection with the Purchase or otherwise in connection with this Agreement and not exempted under a Sale Order, whether or not customarily paid by sellers or purchasers (collectively, the "Transfer Taxes"), shall be borne by Purchaser. Purchaser shall properly file on a timely basis all necessary Returns and other documentation with respect to any Transfer Tax and provide to Sellers evidence of payment of all Transfer Taxes.

(b)     Purchaser and Sellers agree to furnish or cause to be furnished to each other, as promptly as reasonably practicable, such information and assistance relating to the Purchased Assets as is reasonably necessary for the preparation and filing of any Return, for the preparation for and proof of facts during any Tax audit, for the preparation for any Tax protest, for the prosecution or defense of any suit or other proceeding relating to Tax matters and for the answer of any governmental or regulatory inquiry relating to Tax matters.

(c)     For purposes of this Agreement, all Property Taxes and any other Taxes that are imposed on a periodic basis (which are not based on income) with respect to the Purchased Assets with respect to any taxable period that begins on or before and ends after the Closing Date shall be apportioned between the portion of such period that falls within the Pre-Closing Period and the portion of such period that falls within the Post-Closing Period proportionally in accordance with the number of days in each such portion of the period.

6.8     Bulk Sales Act.  Purchaser hereby waives compliance by Sellers with respect to any applicable bulk sale, bulk transfer, successor liability and similar Laws, or with any Laws triggered by a bulk sale or transfer of property, of any jurisdiction in connection with the transactions contemplated by this Agreement or similar Laws of any jurisdiction in connection with the Purchase.

6.9     Bankruptcy Action.

(a)     The Parties shall comply in all material respects with the Bid Procedures Order and the Sale Order (after the entry of such Orders by the Bankruptcy Court).

(b)     Sellers shall use commercially reasonable efforts to comply (or obtain an Order from the Bankruptcy Court waiving compliance) with all requirements under the Bankruptcy Code and the Bankruptcy Rules in connection with obtaining approval of the transactions contemplated by this Agreement.  Sellers shall serve (i) all Persons who are known to possess or assert a Claim against or Interest in any of the Purchased Assets, (ii) the IRS, (iii) all applicable Governmental Entities, (iv) all applicable state and local Governmental Entities with taxing authority, (v) all other Persons required by any Order of the Bankruptcy Court, (vi) all parties to Business Contracts and Real Property Leases, and (vii) all Persons that request or are entitled to notice under Bankruptcy Rule 2002.

(c)     The Parties shall use their respective commercially reasonable efforts to have the Bankruptcy Court enter the Sale Order as promptly as possible.

(d)     Sellers and Purchaser shall consult with one another regarding pleadings which any of them intends to file with the Bankruptcy Court in connection with, or which might reasonably affect the Bankruptcy Court's approval of the Sale Order and shall provide each other with a reasonable opportunity to review and comment on such pleadings, related motions, applications, petitions schedules and supporting papers. Sellers shall promptly provide Purchaser and its counsel with copies of all notices, filings and orders of the Bankruptcy Court that Sellers have in their possession (or receive) pertaining to the Sale Motion, the Bid Procedures Order, the Sale Order, or any other order related to any of the transactions contemplated by this Agreement, but only to the extent such papers are not publicly available on the docket of the Bankruptcy Court or otherwise made available to Purchaser and its counsel.

(e)     If the Bid Procedures Order, the Sale Order, or any other orders of the Bankruptcy Court relating to this Agreement or the transactions contemplated hereby shall be appealed by any Person (or if any petition for certiorari or motion for reconsideration, amendment, clarification, modification, vacation, stay, rehearing or reargument shall be filed with respect to the Bid Procedures Order, the Sale Order, or other such order), subject to rights otherwise arising from this Agreement, Sellers and Purchaser shall use their commercially reasonable efforts to prosecute such appeal, petition or motion and obtain an expedited resolution of any such appeal, petition or motion.

6.10    Sale Order.

(a)     Sellers and Purchaser acknowledge that this Agreement and the sale of the Purchased Assets are subject to Bankruptcy Court approval.  Sellers and Purchaser acknowledge that (i) to obtain such approval, Sellers must demonstrate that they have taken steps to obtain the highest or otherwise best offer possible for the Purchased Assets including giving notice of the transactions contemplated by this Agreement to creditors and certain other interested parties as ordered by the Bankruptcy Court and, if necessary,

conducting the Auction and (ii) Purchaser must provide adequate assurance of future performance under the Business Contracts and Real Property Leases included in the Purchased Assets.

(b)       The Sale Order shall, among other things:

(i)       approve, pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, (A) the execution, delivery and performance by Sellers of this Agreement, (B) the transfer of the Purchased Assets to Purchaser free and clear of all Liens, Claims, and Liabilities of any kind whatsoever (other than Permitted Liens), and (C) the timely performance by Sellers of their obligations under this Agreement;

(ii)       authorize and empower Sellers to assume and assign the Business Contracts and Real Property Leases to Purchaser;

(iii)       find that Purchaser is a "good faith" buyer within the meaning of Section 363(m) of the Bankruptcy Code and grant Purchaser the full benefits and protections of Section 363(m) of the Bankruptcy Code;

(iv)       find that this Agreement was negotiated, proposed and entered into by Sellers and Purchaser without collusion, in good faith and from arm's length bargaining positions;

(v)       find that due and adequate notice and an opportunity to be heard in accordance with all applicable Laws were given to the necessary parties in the Bankruptcy Cases;

(vi)       contain findings of fact and conclusions of law that Purchaser (A) is not a successor to, or subject to successor liability for, any Seller, (B) has not, de facto or otherwise, merged with or into any Seller, (C) is not an alter ego or a continuation of any Seller, and (D) does not have any responsibility for any obligations of any Seller based on any theory of successor or similar theories of liability;

(vii)       find that the Purchase Price is fair and reasonable;

(viii)       find that the Bankruptcy Court retains jurisdiction to resolve any claim or dispute arising out of or related to this Agreement; and

(ix)       contain such other terms and conditions as are acceptable to Sellers and Purchaser in their respective sole discretion.

(c)       Purchaser agrees that it will promptly take such actions as are reasonably requested by Sellers to assist in obtaining entry by the Bankruptcy Court of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for purposes, among others, of (i) demonstrating that Purchaser is a "good faith" purchaser and (ii) establishing "adequate assurance of future performance" within the meaning of Section 365 of the Bankruptcy Code.

6.11    [Reserved].

6.12    <u>Transfer of Permits</u>.  Except for those Business Permits that are not transferable to Purchaser by Law, the Parties shall use commercially reasonable efforts to cause the issuance or transfer of all of the Business Permits described on <u>Schedule 1.2(g)</u> and shall give and make all notices and reports that such Party is required to make to the appropriate Governmental Entities and other Persons with respect to such Business Permits.  All costs and expenses associated with the issuance or transfer of the Business Permits shall be borne by Purchaser.

6.13    <u>Expenses</u>.  Except to the extent otherwise specifically provided herein, whether or not the transactions contemplated hereby are consummated, all fees, costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be borne by the Party incurring such fees, costs and expenses.

6.14    <u>Confidentiality</u>.  From and after the date of this Agreement, Purchaser and Sellers shall continue to be bound by and comply with the obligations of the Confidentiality Agreement except as otherwise required under or necessary to comply with any provision of the Bankruptcy Code, Bankruptcy Rules, applicable law, any order of the Bankruptcy Court, including, without limitation, the Bid Procedures Order, or the provisions of this Agreement. Except as specifically provided in the proviso to this sentence, unless otherwise agreed to by the Parties, at the later of (i) the Designation Deadline or (ii) the end of the remainder of the term set forth in the Confidentiality Agreement, the Confidentiality Agreement shall be deemed to have been terminated by the parties thereto and shall no longer be binding; <u>provided</u>, that notwithstanding anything in this <u>Section 6.14</u> to the contrary, to the extent that Purchaser is in possession of any Information (as defined in the Confidentiality Agreement) regarding Sellers and their respective Affiliates, or the Excluded Assets or the Excluded Liabilities, Purchaser shall continue to be bound by the Confidentiality Agreement with respect to such Information until the date that is two years after the Closing, if the Closing occurs; <u>provided</u>, <u>further</u>, that notwithstanding anything in this <u>Section 6.14</u> to the contrary, to the extent that any Seller is in possession of any Information (as defined in the Confidentiality Agreement) related to the Purchased Assets, the Assumed Liabilities, or the Business, such Seller and its respective Representatives shall continue to be bound by this <u>Section 6.14</u> until the earlier of (a) the date that is two years after the Closing, if the Closing occurs, and (b) until such time as Sellers and their respective Representatives no longer retain copies of such Information.

<div align="center">

ARTICLE VII
<u>Conditions to Closing</u>

</div>

7.1    <u>Conditions to Sellers' Obligations</u>.  The obligation of Sellers to consummate the transaction contemplated hereby is subject to the fulfillment of all of the following conditions on or prior to the Closing Date and as of the Closing Date, upon the non-fulfillment of any of which this Agreement may, at Sellers' option, be terminated to the extent permitted pursuant to and with the effect set forth in <u>Article IX</u>:

(a)    The representations and warranties of Purchaser contained in <u>Article V</u> shall be true and correct in all material respects at and as of the Closing Date as if made at and

<div align="center">35</div>

as of such time (except to the extent such representations and warranties speak as of an earlier date, in which case, such representations and warranties shall be true and correct in all material respects as of such earlier date).

(b)     All obligations of Purchaser to be performed hereunder through, and including on, the Closing Date (including, without limitation, all obligations which Purchaser would be required to perform at the Closing if the transaction contemplated hereby was consummated) shall have been performed in all material respects, unless waived by Sellers.

(c)     Purchaser shall have delivered or caused to be delivered to Sellers each of the items set forth in <u>Section 3.4(b)</u>.

(d)     No Governmental Entity of competent jurisdiction shall have entered a valid Order that is in effect and has the effect of making the Closing illegal or otherwise prohibiting the consummation of the Closing.

(e)     The Sale Order shall have been entered by the Bankruptcy Court approving the transactions contemplated under this Agreement.

7.2     <u>Conditions to Purchaser's Obligations</u>.  The obligation of Purchaser to consummate the transaction contemplated hereby is subject to the fulfillment of all of the following conditions on or prior to the Closing Date and as of the Closing Date (in each case, so long as Purchaser has complied with its obligations under this Agreement with respect to each of the matters set forth below), upon the non-fulfillment of any of which this Agreement may, at Purchaser's option, be terminated to the extent permitted pursuant to and with the effect set forth in <u>Article IX</u>:

(a)     The representations and warranties of Sellers in <u>Article IV</u> shall be true and correct in all respects as of the time of the Closing as though such representations and warranties were made at and as of such time (or, if made as of a specific date in the text of such representations and warranties, at and as of such date), interpreted without giving effect to any Material Adverse Effect or materiality qualifications or exceptions contained therein, except where the failure to be so true and correct would not have a Material Adverse Effect.

(b)     All obligations of Sellers to be performed hereunder through, and including on, the Closing Date (including, without limitation, all obligations which Sellers would be required to perform at the Closing if the transaction contemplated hereby was consummated) shall have been performed in all material respects.

(c)     Sellers shall have delivered or caused to be delivered to Purchaser each of the items set forth in <u>Section 3.4(a)</u>.

(d)     No Governmental Entity of competent jurisdiction shall have entered a valid Order that is in effect and has the effect of making the Closing illegal or otherwise prohibiting the consummation of the Closing.

(e)     The Sale Order shall have each been entered by the Bankruptcy Court approving the transactions contemplated under this Agreement.

7.3     <u>Frustration of Closing Conditions</u>.  No Party may rely on the failure of any condition set forth in this <u>Article VII</u> to be satisfied if such failure was caused by such Party's failure to act in good faith or such Party's failure to comply with <u>Section 6.3</u>.

<div align="center">

ARTICLE VIII
<u>Termination</u>

</div>

8.1     <u>Termination Events</u>.  This Agreement and the transaction contemplated hereby may only be terminated as follows, at any time prior to the Closing:

(a)     by the mutual written consent of Purchaser and Sellers;

(b)     by either Purchaser or Sellers upon (i) the issuance of a final and non-appealable Order by a Governmental Entity to restrain, enjoin or otherwise prohibit the purchase and sale transaction contemplated hereby, (ii) the appointment of an examiner with expanded powers or a Chapter 11 trustee in the Bankruptcy Cases, or (iii) the Bankruptcy Cases being converted into a case under Chapter 7 of the Bankruptcy Code or dismissed;

(c)     by either Purchaser or Sellers if the Bankruptcy Court has not entered the Sale Order by December 10, 2021, provided that such date may be extended as otherwise agreed to in writing by Purchaser and Sellers; <u>provided</u>, <u>however</u>, that Purchaser's right to terminate this Agreement under this <u>Section 8.1(c)</u> shall not be available to Purchaser if Purchaser's failure to fulfill any of its obligations under this Agreement has been the cause of, or resulted in, the failure of the Sale Order to have been entered on or prior to the aforesaid date;

(d)     by Purchaser, (i) if any condition set forth in <u>Sections 7.2(a)</u> through <u>(c)</u>, inclusive, becomes incapable of being satisfied prior to the Termination Date (other than through the failure of Purchaser to comply with its obligations under this Agreement) and Purchaser has not waived such condition,(ii) if the Closing shall not have occurred at or before 5:00 p.m. (New York City Time) on December 17, 2021, or such later date as extended in accordance with the Bid Procedures Order with the Purchaser's consent (such date, as may be extended, the "<u>Termination Date</u>"); <u>provided</u>, <u>however</u>, that Purchaser's right to terminate this Agreement under this clause (ii) of this <u>Section 8.1(d)</u> shall not be available to Purchaser if Purchaser's failure to fulfill any of its obligations under this Agreement has been the cause of, or resulted in, the failure of the Closing to occur on or prior to the Termination Date, (iv) at any time following the date that is November 30, 2021 if Purchaser is not declared the Winning Bidder, or (v) at any time if the Bankruptcy Court has not entered an order by 11:59 p.m. (New York City Time) on the date that is one (1) Business Day after the date of this Agreement approving the reimbursement of up to $1,000,000 of Purchaser's documented costs and expenses (including fees and expenses of legal counsel) incurred in connection with evaluating, negotiating and entering into this

<div align="center">37</div>

Agreement; provided, however, that Purchaser's right to terminate this Agreement under this clause (v) of this Section 8.1(d) shall not be available to Purchaser if Purchaser's failure to fulfill any of its obligations under this Agreement has been the sole cause of the failure of the Court to enter such an order by the prescribed deadline;

(e)     by Sellers, (i) if any condition set forth in Section 7.1(a) through (c), inclusive, becomes incapable of being satisfied prior to the Termination Date (other than through the failure of Sellers to comply with their obligations under this Agreement) and Sellers have not waived such condition, (ii) at any time following the date that is November 30, 2021 if Purchaser is not declared the Winning Bidder, or (iii) if the Closing shall not have occurred at or before 5:00 p.m. (New York City time) on the Termination Date; and

(f)     automatically upon Bankruptcy Court approval of an Alternative Transaction.

8.2    Effect of Termination.  In the event of the termination of this Agreement pursuant to Section 8.1 by Purchaser, on the one hand, or Sellers, on the other hand, written notice thereof shall forthwith be given to the other specifying the provision hereof pursuant to which such termination is made, and this Agreement shall be terminated and become void and have no effect and there shall be no Liability hereunder on the part of any Party, except that Section 3.2 (Good Faith Escrow Deposit), Section 6.14 (Expense), this Section 8.2 and Article X (Miscellaneous) and the defined terms and rules of construction used therein and set forth on Appendix I shall survive any termination of this Agreement; provided, however, that (a) subject to the terms and conditions of Section 3.2(c), no Party shall be relieved of or released from any Liability arising from any material breach by such Party of any provision of this Agreement, and (b) the Confidentiality Agreement shall remain in full force and effect.

<div align="center">

ARTICLE IX
Survival

</div>

9.1    Survival; Certain Post-Closing Matters.  Purchaser and Sellers acknowledge and agree that: (a) the representations and warranties set forth in this Agreement and in the documents and instruments delivered or entered into in connection with this Agreement (other than the Transition Services Agreement) shall not survive the Closing and shall expire immediately upon the Closing; and (b) the covenants and agreements of Sellers set forth in this Agreement and in any documents and instruments delivered or entered into by the Parties in connection with this Agreement (other than the Transition Services Agreement), in each case that do not by their terms extend beyond the Closing, shall not survive the Closing and shall expire immediately upon the Closing.  Accordingly, for clarification purposes, it is acknowledged, understood and agreed by the Parties that no Party shall have any liability or other obligation following the Closing with respect to any breach by such Party or claimed breach by such Party of (x) except with respect to the Transition Services Agreement, any representations or warranties contained in this Agreement or any of the documents or instruments delivered or entered into by the Parties in connection with this Agreement or (y) any of the Parties' covenants and agreements contained in this Agreement or any of the documents or instruments delivered or entered into by the Parties in connection with this Agreement (other than the Transition Services Agreement) that do not by their terms extend

beyond the Closing.  Notwithstanding anything expressed or implied herein to the contrary, the Parties acknowledge and agree that (1) Purchaser shall be solely responsible for the ownership of the Purchased Assets from and after the Closing Date or the applicable date of designation (except as otherwise provided in the Transition Services Agreement), as applicable, and acts or omissions of Purchaser with respect thereto, and (2) Sellers shall have no responsibility or obligation with respect to, or arising out of, any of the foregoing.  Notwithstanding anything in this Agreement to the contrary, nothing herein shall operate in any manner to limit a claim or remedy for any actual and intentional fraud by any Person including any Party.

## ARTICLE X
### Miscellaneous

10.1    <u>Notices</u>.  All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given: (a) on the day of service if served personally on the party to whom notice is to be given; (b) on the day of transmission if delivered by electronic mail during regular business hours on a Business Day and, if not, then on the following Business Day; or (c) on the day of delivery (if a Business Day, and if not a Business Day, on the next Business Day) if sent by Federal Express or similar overnight courier or United States mail:

<u>If to Sellers</u>:

Addressed to:

Limetree Bay Services, LLC, et al.
c/o B. Riley Advisory Services
3500 Maple Avenue, Suite 420
Dallas, TX 75219
Attn:   Mark Shapiro
Email: mshapiro@brileyfin.com

with a copy to:

Baker & Hostetler LLP
200 South Orange Avenue
Suite 2300
Orlando, FL 32801
Attn:   Elizabeth A. Green
Email: egreen@bakerlaw.com

and

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
Attn:   Jorian L. Rose

Email: jrose@bakerlaw.com

If to Purchaser:

Addressed to:

St. Croix Energy, LLLP
5030 Anchor Way, Suite 13
Christiansted, VI 00920
Attn:   Yohana Manning
Email: ymanning@stcroixenergy.com

with a copy to:

Ropes & Gray LLP
1211 Avenue of the Americas
New York, New York 10036
Attention:       Gregg Galardi; Jonathan Gill; Matthew Roose
Email:   Gregg.Galardi@ropesgray.com; Jonathan.Gill@ropesgray.com;
                Matthew.Roose@ropesgray.com

Any Party may change its address for the purpose of this <u>Section 10.2</u> by giving the other Party written notice of its new address in the manner set forth above.

10.2     <u>Entire Agreement</u>.  This Agreement, the agreements, documents and instruments to be delivered by the Parties pursuant to the provisions hereof, the Transaction Documents, and the Confidentiality Agreement, each as may be amended or supplemented, constitute the entire agreement between the Parties and shall be binding upon and inure to the benefit of the Parties hereto and their respective legal representatives, successors and permitted assigns.   This Agreement supersedes the Initial Asset Purchase Agreement.  Each Appendix, Exhibit, Schedule and the Seller Disclosure Letter, each as may be amended or supplemented, shall be considered incorporated into this Agreement.  The inclusion of any item in the Seller Disclosure Letter is not evidence of the materiality of such item for the purposes of this Agreement.  Purchaser acknowledges that any estimates, forecasts, or projections furnished or made available to it concerning Sellers or the Business or their properties, business or assets have not been prepared in accordance with GAAP or standards applicable under any securities laws, and such estimates, forecasts and projections, including any reflected in financial statements, reflect numerous assumptions, and are subject to material risks and uncertainties.  Purchaser acknowledges that actual results may vary, perhaps materially, and Purchaser is not relying on any such estimates, forecasts or projections.

10.3     <u>Severability</u>.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under any applicable law or rule in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision or any other jurisdiction, and, for purposes of such jurisdiction, such provision or

portion thereof shall be struck from the remainder of this Agreement, which shall remain in full force and effect. This Agreement shall be reformed, construed and enforced in such jurisdiction so as to best give effect to the intent of the Parties under this Agreement.

10.4    Binding Effect; Benefit. This Agreement shall inure to the benefit of and be binding upon the Parties hereto, and their successors and permitted assigns. Nothing in this Agreement, express or implied, shall confer on any Person other than the Parties hereto, and their respective successors and permitted assigns any rights, remedies, obligations or liabilities under or by reason of this Agreement, including, without limitation, third party beneficiary rights. Nothing in this Agreement is intended to relieve or discharge the obligations or liability of any third Persons to Sellers or Purchaser. No provision of this Agreement shall give any third Persons any right of subrogation or action over or against Sellers or Purchaser.

10.5    Assignability. This Agreement and the various rights and obligations arising hereunder inure to the benefit of and are binding upon Sellers and their respective successors and permitted assigns, and Purchaser and its successors and permitted assigns. Neither this Agreement nor any of the rights, interests or obligations hereunder may be transferred or assigned (including by operation of law in connection with a merger or sale of stock, or sale of substantially all the assets, of a Person) by any of the Parties hereto without the prior written consent of the other Party or Parties (not to be unreasonably withheld, conditioned or delayed); provided that Purchaser may, without any required consent from any other Party, assign or transfer this Agreement or any of its rights or obligations hereunder (a) to any of its Affiliates, (b) to any acquirer of all or substantially all of the Purchased Assets or Purchaser after the Closing or (c) as a collateral assignment to its or its Affiliates lenders in connection with any debt financing arrangements of Purchaser or its Affiliates. No assignment shall relieve a Party of its liability or obligations hereunder. Notwithstanding anything expressed or implied herein to the contrary, following the Closing, Sellers (or any of them) may assign all or any portion of their rights hereunder in accordance with an Order of the Bankruptcy Court.

10.6    Amendments. Except as otherwise authorized herein with respect to the Schedules and disclosures to this Agreement, this Agreement shall not be modified or amended except pursuant to an instrument in writing executed and delivered on behalf of each of the Parties hereto.

10.7    Non-Waiver. Except as otherwise contemplated herein, the failure in any one or more instances of a Party to insist upon performance of any of the terms, covenants or conditions of this Agreement, to exercise any right or privilege in this Agreement conferred, or the waiver by such Party of any breach of any of the terms, covenants or conditions of this Agreement, shall not be construed as a subsequent waiver of any such terms, covenants, conditions, rights or privileges, but the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.

10.8    Applicable Law. This Agreement shall be governed and controlled as to validity, enforcement, interpretation, construction, effect and in all other respects by the internal laws of the State of Texas applicable to contracts made in that state and the applicable provisions of the Bankruptcy Code, without giving effect to any choice of law or conflict of law provision or rule that would cause the application of laws of any other jurisdiction.

10.9   <u>Consent to Jurisdiction</u>.   Purchaser and Sellers agree that the Bankruptcy Court shall retain sole jurisdiction over any legal action or proceeding with respect to this Agreement. Each of Purchaser and Sellers irrevocably waives any objection, including any objection to the laying of venue or based on the grounds of *forum non conveniens*, which it may now or hereafter have to the bringing of any action or proceeding in such jurisdiction in respect of this Agreement or the transactions contemplated hereby.   Purchaser and Sellers consent to the jurisdiction and authority of the Bankruptcy Court, including, without limitation, to the entry of final orders, decrees and judgments with respect to any matters arising under or relating to this Agreement or the transaction(s) contemplated hereby.

10.10   **<u>WAIVER OF TRIAL BY JURY</u>.   EACH OF THE PARTIES HERETO WAIVES THE RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY SUIT, ACTION OR PROCEEDING SEEKING ENFORCEMENT OF SUCH PARTY'S RIGHTS UNDER THIS AGREEMENT.**

10.11   <u>Counterparts</u>.   This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.   This Agreement may be executed through the exchange of scanned .pdf signature pages, which shall have the same legal effect as original signatures.

10.12   <u>Headings</u>.   The headings contained in this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.

10.13   <u>Time of the Essence</u>.   Time is of the essence of this Agreement.   When calculating the period of time before which, within which or following which, any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded.   If the last day of such period is a non-Business Day, the period in question shall end on the next succeeding Business Day.

10.14   <u>Rules of Construction</u>.   The Parties acknowledge and agree that each has negotiated and reviewed the terms of this Agreement, assisted by such legal and tax counsel as they desired, and has contributed to its revisions, and, as such, each of the Parties shall be deemed drafters of this Agreement and equally responsible for any ambiguities contained herein.   The Parties further agree that the rule of construction that any ambiguities are resolved against the drafting party will be subordinated to the principle that the terms and provisions of this Agreement will be construed fairly as to all Parties and not in favor of or against any Party.   The word "including" means "including, without limitation."   The phrase "ordinary course of business" or words of similar import shall mean the ordinary course of business consistent with past custom and practice, subject, in the case of Sellers or the Business, to changes in the business, operations or custom or practice of Sellers to the extent resulting from matters arising as a result of, or in connection with, Sellers' status as filers under Chapter 11 of the Bankruptcy Code.

*[SIGNATURE PAGES FOLLOW]*

IN WITNESS WHEREOF, the Parties have executed this Asset Purchase Agreement as of the date first above written.

**<u>SELLERS</u>:**

**Limetree Bay Services, LLC**

By: _____
Name:  Mark Shapiro
Title:  Chief Restructuring Officer

**Limetree Bay Refining Holdings, LLC**

By: _____
Name:  Mark Shapiro
Title:  Chief Restructuring Officer

**Limetree Bay Refining Holdings II, LLC**

By: _____
Name:  Mark Shapiro
Title:  Chief Restructuring Officer

**Limetree Bay Refining, LLC**

By: _____
Name:  Mark Shapiro
Title:  Chief Restructuring Officer

Signature Page to Asset Purchase Agreement

**Limetree Bay Refining Operating, LLC**


By:_____
Name:  Mark Shapiro
Title:  Chief Restructuring Officer


**Limetree Bay Refining Marketing, LLC**


By:_____
Name:  Mark Shapiro
Title:  Chief Restructuring Officer

Signature Page to Asset Purchase Agreement

**<u>PURCHASER</u>:**

**St. Croix Energy, LLLP**


By:_____
Name:  Yohana Manning
Title:  Partner

Signature Page to Asset Purchase Agreement

**APPENDIX 1**

**DEFINED TERMS**

As used in this Agreement, the following terms shall have the following meanings:

"Additional Deposit Amount" means the amount of any Additional Deposit, as that term is defined and used in the Bid Procedures Order.

"Affiliate" with respect to any Person means any other Person who directly or indirectly Controls, is Controlled by, or is under common Control with such Person including in the case of any Person who is an individual, his or her spouse, any of his or her descendants (lineal or adopted) or ancestors, and any of their spouses.

"Agreement" is defined in the Introduction to this Agreement.

"Alternative Transaction" means one or more sales, assignments, leases, transfers, or other dispositions of all or any material portion of the Purchased Assets to any Person (or group of Persons), whether in one transaction or a series of transactions, whether by merger, asset purchase, equity purchase or other similar transaction, in each case other than to Purchaser or its Affiliates.

"Antitrust Laws" means the Sherman Act, 15 U.S.C. §§ 1-7, as amended, the Clayton Act, 15 U.S.C. §§ 12-27, 29 U.S.C. §§ 52-53, as amended, the Hart-Scott-Rodino Antitrust Improvements Act of 1976, 15 U.S.C. § 18a et seq., as amended, the Federal Trade Commission Act, 15 U.S.C. § 41-58, as amended, and all other Laws and Orders that are designed or intended to prohibit, restrict or regulate actions having the purpose or effect of monopolization, restraint of trade, or lessening of competition through merger or acquisition.

"Assumed Liabilities" is defined in Section 2.1.

"Auction" means a sale in which the Purchased Assets shall be offered for sale to a bidder or bidders making the highest or best offer, which will be scheduled by the Bankruptcy Court in the Bankruptcy Cases.

"Avoidance Actions" means any and all claims and causes of action of a Seller arising under the Bankruptcy Code, including, without limitation, Sections 544, 545, 547, 548, 549 and 550 thereof.

"Bankruptcy Cases" means, individually and collectively, the following chapter 11 bankruptcy cases pending in the Bankruptcy Court: (i) *In re Limetree Bay Services, LLC*, case no. 21-32351; (ii) *In re Limetree Bay Refining Holdings, LLC*, case no. 21-32352; (iii) *In re Limetree Bay Refining Holdings II, LLC*, case no. 21-32353; (iv) *In re Limetree Bay Refining, LLC*, case no. 21-32354; (v) *In re Limetree Bay Refining Operating, LLC*, case no. 21-32355; and (vi) *In re Limetree Bay Refining Marketing, LLC*, case no. 21-32356.

"Bankruptcy Code" means the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101, et seq., as in effect on the Petition Date, and as amended effective as of the Petition Date.

"Bankruptcy Court" is defined in Recital B to this Agreement.

"Bankruptcy Rules" is defined in Section 4.3.

"Bid Procedures Order" means the order of the Bankruptcy Court, entered on August 11, 2021 at docket number 392 in the bankruptcy case of *In re Limetree Bay Services, LLC*, case no. 21-32351, as amended by the order of the Bankruptcy Court, entered on September 15, 2021 at docket number 583, authorizing, among other things, the sale of the Purchased Assets and assumption and assignment of the Business Contracts and Real Property Leases and the assumption of the Assumed Liabilities pursuant to the bid procedures and bid protections set forth therein.

"Bill of Sale and Assignment and Assumption Agreement" means that certain bill of sale and assignment and assumption agreement substantially in the form attached hereto as Exhibit B.

"BP Receivables" means any and all funds payable by BP Products North America, Inc., or any affiliate or subsidiary thereof, to Sellers, or any of them, arising out of or related to the IFF Property, the J. Aron Transaction Documents, the Tolling Agreement (as such terms are defined and used in the Stipulation by and among Debtors, Committee, J. Aron & Company LLC, and BP Products North America Inc. (appended to Doc. No. 697 filed in the Bankruptcy Cases) (the "BP Stipulation")), or any other agreement by and between Sellers, or any of them, and BP Products North America, Inc., or any affiliate or subsidiary thereof, dated on or before the Closing Date, including, without limitation, the Escrow Funds, Trade Contract Amounts, and Sale Reserve (as such terms are defined and used in the BP Stipulation).

"Business" is defined in Recital A of this Agreement.

"Business Contracts" is defined in Section 1.2(a).

"Business Day" means any day other than Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in Houston, Texas are permitted or required to be closed.

"Business Intellectual Property" is defined in Section 1.2(h).

"Business IT Assets" is defined in Section 1.2(i).

"Business Permits" is defined in Section 1.2(g).

"Business Real Property" means the Purchased Real Property and the real property subject to the Real Property Leases.

"Claim" means a claim against any or all of Sellers, whether or not asserted, as defined in Section 101(5) of the Bankruptcy Code.

"Closing" is defined in Section 3.3.

"Closing Date" is defined in Section 3.3.

"Closing Payment" is defined in Section 3.1.

"Code" means the Internal Revenue Code of 1986, as amended.

"Confidentiality Agreement" means that certain Confidentiality Agreement entered into by and between Sellers and Purchaser on or about August 24, 2021.

"Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through ownership of securities, by contract or otherwise.

"Consent" means any authorization, approval, consent, ratification, negative clearance, waiver, notice or filing, or a Final Order of the Bankruptcy Court that deems, or renders unnecessary, the same.

"Contract" means any note, bond, mortgage, indenture, guaranty, license, franchise, permit, agreement, contract, commitment, lease, purchase order, or other instrument or obligation, and any amendments thereto.

"Cure Amounts" means with respect to any Business Contract or Real Property Lease, the amount of cash required to be paid with respect to such Business Contract or Real Property Lease to cure all defaults under such Business Contract or Real Property Lease to the extent required by Section 365 of the Bankruptcy Code and to otherwise satisfy all requirements imposed by Section 365 of the Bankruptcy Code in order to effectuate, pursuant to the Bankruptcy Code, the assumption by a Seller and assignment to Purchaser of such Business Contract or Real Property Lease.

"DIP Agent" shall have the meaning ascribed to such term in the Bid Procedures Order.

"Designated Contract" is defined in Section 1.4(b).

"Designation Deadline" is defined in Section 1.4(c).

"Disclaimed Contract" is defined in Section 1.4(c).

"Environmental Law" means any law, Order or other requirement of law for the protection of the environment, or for the manufacture, use, transport, treatment, storage, disposal, release or threatened release of Hazardous Materials, petroleum products, asbestos, urea formaldehyde insulation, polychlorinated biphenyls or any substance listed, classified or regulated as "hazardous" or "toxic" or any similar term under such Environmental Law.

"Environmental Liabilities" means all Liabilities (including the costs of any Remedial Action) arising in connection with or in any way relating to the Business (as currently or formerly conducted), the Purchased Assets or any property currently or formerly owned, leased or operated in connection with the Business (as currently or formerly conducted) or the Purchased Assets (including the activities and operations conducted by anyone thereon, offsite disposal therefrom and Hazardous Materials migrating thereto or therefrom), that in each case arise under or relate to any Environmental Law, Environmental Permit or a Hazardous Material, including Liabilities

arising from any Third Party claims for personal injury, death, or property damage caused by an actual or alleged release of, or exposure to, a Hazardous Material.

"Environmental Permits" means all environmental, health and safety permits, licenses, registrations, and approvals and authorizations from Governmental Entities.

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

"Escrow Agent" means GlassRatner Advisory & Capital LLC, doing business as B. Riley Advisory Services or, if GlassRatner Advisory & Capital LLC, doing business as B. Riley Advisory Services is unable or unwilling to act as the Escrow Agent, such other Person as is mutually agreed upon by Purchaser and Sellers.

"Event" means any action, omission, state of facts, condition, occurrence, result, circumstance, event, effect, development or change.

"Excluded Assets" is defined in Section 1.3.

"Excluded Furniture and Equipment" is defined in Section 1.3(p).

"Excluded Insurance Recoveries" is defined in Section 1.3(i).

"Excluded Intellectual Property" means all rights to Intellectual Property that are owned by a Seller, other than the Business Intellectual Property.

"Excluded IT Assets" means all rights to Information Technology that are owned by Seller, other than the Business IT Assets.

"Excluded Liabilities" is defined in Section 2.1.

"Excluded Real Property" means all real property owned by a Seller, other than the Purchased Real Property.

"Files and Records" means all current and historical information, data, databases, reports, plans, schedules, correspondence, files, documents, books and other records and information, including (a) customer, vendor, supplier, contractor and service provider lists and records, (b) sales, pricing and performance data and records generated from completed or active transactions (including billing, payment and dispute histories, credit information and similar data), (c) business plans, financial statements, corporate, Tax, human resource, legal, regulatory and financial data and records, (d) operating and production records, quality control records, market research reports, technical documentation (drawings, specifications, process instructions, statistics, functional requirements, operating instructions, manual, etc.) and user documentation (installation guides, manuals, training material working paper, etc.), (e) employment and personnel records, (f) all of the plant diagrams and drawings, equipment diagrams and drawings, equipment manuals, "as built" books, operating manuals, maintenance histories and records, civil engineering drawings, PFDs, PI&Ds and other such technical documents relating to the Seller Facilities and (g) regulatory filings, documents or other information relating to any Proceeding, in each case with respect to clauses (a) through (g), of Seller, whether in paper, electronic, digital or other form or medium,

and that relate primarily to the Purchased Assets or Assumed Liabilities; provided, that Files and Records shall not include (i) any files, documents, books or other records to the extent relating to any existing or anticipated Tax litigations or disputes (to the extent that such litigation or disputes are, or are related to any, Excluded Liabilities hereunder), (ii) any information which, if transferred to Purchaser or its Affiliates, would reasonably be expected to violate any applicable Law or Order or the terms of any Contract and (iii) any items described in clauses (a) through (g) that relate primarily to any Excluded Assets or any Excluded Liabilities.

"Final Order" means an order or judgment of the Bankruptcy Court (or any other court of competent jurisdiction) entered by the clerk of the Bankruptcy Court (or such other court) on the docket in the Bankruptcy Cases (or the docket of such other court), which is and remains in full force and effect, has not been modified, amended, reversed, vacated or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, re-argument or rehearing has expired and as to which no appeal, petition for certiorari or motion for new trial, re-argument or rehearing shall then be pending or (ii) if an appeal, writ of certiorari new trial, re-argument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, re-argument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, re-argument or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Federal Rules of Bankruptcy Procedure; provided, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure, may be filed relating to such order, shall not cause an order not to be a Final Order.

"Furniture and Equipment" means all furniture, furnishings, equipment, vehicles, machinery, cranes, forklifts, tools, truck racks, fixtures, consumables and other tangible personal property owned by a Seller, including artwork, desks, chairs, tables, miscellaneous office furnishings, copiers, scanners, printers, telephone lines and numbers, telecopy machines and other telecommunication equipment, cubicles and supplies.

"GAAP" means United States generally accepted accounting principles, applied in a manner consistent with the preparation of the Financial Statements.

"Good Faith Deposit Amount" means $2,000,000, which amount is to be deposited with the Escrow Agent in accordance with the terms of this Agreement and held and released pursuant to the terms and subject to the conditions set forth in this Agreement, plus an amount equal to any Additional Deposit Amount.

"Governmental Entity" means any multinational, United States or non-United States, federal, state, territory, provincial or local court (including, for the avoidance of doubt, the Bankruptcy Court), arbitral tribunal, administrative agency, legislature or commission or other governmental, quasi-governmental or regulatory agency or authority (including any bureau, division or department thereof) or any securities exchange.

"Hazardous Materials" means all explosive or radioactive substances or wastes, and all hazardous or toxic substances, wastes or other pollutants, including petroleum or petroleum

distillates, asbestos or asbestos containing materials, polychlorinated biphenyls, radon gas, infectious or medical wastes and all other substances or wastes of any nature regulated pursuant to any Environmental Law.

"Improvements" means any and all buildings, structures, fixtures or other improvements owned by or leased to a Seller that are attached or affixed to the Business Real Property (including all construction and work-in-progress), including above ground and underground piping and storage tanks, canopies, signage, terminals, fixtures, pumps and appurtenances, equipment, personal property of a permanent nature and other similar facilities; provided, however, that the Excluded Furniture and Equipment shall not be considered "Improvements".

"Indebtedness" of any Person means (a) any obligations or indebtedness (i) for borrowed money or indebtedness issued or incurred in substitution or exchange for indebtedness for borrowed money, (ii) evidenced by any note, bond, debenture, mortgage or other debt instrument or debt security, (iii) for the deferred purchase price of property or service, (iv) for the reimbursement of any obligor on any letter of credit, banker's acceptance, guarantee or similar credit transaction (but only to the extent drawn upon or if there has been a demand made for reimbursement thereunder) and (v) under any commodity, swap, derivative, currency, interest rate, call, hedge or similar agreement, (b) any obligations of any kind referred to in the foregoing clause (a) above guaranteed or secured, directly or indirectly, in any manner by such Person (including by a Lien on the assets or properties of such Person whether or not such obligations are assumed) ,and (c) any accrued and unpaid principal, interest, premiums, penalties, pre-payment penalties, fees, expenses, "make-whole" or similar payments, indemnities and breakage costs owing by such Person with respect to any indebtedness of a type described in clauses (a) or (b); provided, that Indebtedness of any Seller shall not include accounts payable to trade creditors or accrued expenses, in each case, arising in the ordinary course of business of any Seller.

"Indemnified Parties" is defined in Section 1.4(i).

"Information Technology" means all computers, computer systems, servers, workstations, databases, and software programs.

"Intellectual Property" means (a) patents and patent applications, (b)trademarks, service marks, trade dress, and all registrations and applications for the same, (c) Internet domain names, (d) registered and unregistered copyrights and applications for the same, and (e) trade secrets.

"Initial Asset Purchase Agreement" is defined in Recital C of this Agreement.

"IRS" means the United States Internal Revenue Service.

"J. Aron Receivables" means any and all amounts payable to Sellers, or any of them, directly or indirectly, under the J. Aron Transaction Documents (as defined in *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* entered in the Bankruptcy Cases), or any of them.

"<u>Knowledge of Sellers</u>" means the actual knowledge of Sellers, or any of them, without giving effect to imputed knowledge or giving rise to any duty to investigate.

"<u>Law</u>" means any statute, law, ordinance, ruling, policy, rule or regulation of any Governmental Entity and all judicial or administrative interpretations thereof and any common law doctrine.

"<u>Liabilities</u>" means any and all Indebtedness, Taxes, losses, charges, debts, damages, obligations, payments, costs and expenses, bonds, indemnities, liabilities and obligations of any nature, including any unknown, undisclosed, unmatured, unaccrued, unasserted, contingent, indirect, conditional, implied, vicarious, derivative, joint, several or secondary liability, regardless of whether such claim, debt, obligation, duty or liability would be required to be disclosed on a balance sheet prepared in accordance with GAAP and regardless of whether such claim, debt, obligation, duty or liability is immediately due and payable.

"<u>Liens</u>" means any liens (as defined in Section 101(37) of the Bankruptcy Code), debts (as defined in Section 101(12) of the Bankruptcy Code), security interests, Claims, easements, mortgages, charges, indentures, deeds of trust, rights of way, encroachments, or any other encumbrances and other restrictions or limitations on ownership or use of real or personal property or irregularities in title thereto.

"<u>Loss</u>" or "<u>Losses</u>" means, without duplication, any and all Liabilities, judgments, awards, losses, costs or damages, including reasonable fees and expenses of attorneys, accountants and other professional advisors.

"<u>Material Adverse Effect</u>" means a material adverse effect on the business or financial condition of the Business, taken as a whole; <u>provided</u> that the foregoing shall not include any event, circumstance, change, occurrence, fact or effect resulting from or relating to (A) changes in economic conditions generally or in any region in which Sellers or the Business operate, (B) changes in United States or global financial markets in general, (C) changes, occurrences or developments in or related to the general industry or industries (or portions thereof) in which Sellers or the Business operate or are materially related thereto, (D) changes in law, GAAP or any authoritative interpretations thereof, (E) any action taken or failed to be taken by Sellers or any of their Affiliates or representatives at the request of Purchaser or that is required or contemplated by this Agreement, (F) a failure to meet Sellers' projections, or any changes in the prices or availability of raw materials used in the Business, (G) the identity of, or any action taken by, Purchaser or any of its Affiliates or representatives, (H) the Bankruptcy Cases, (I) the announcement and performance of this Agreement and the other transactions contemplated by this Agreement, including termination of, reduction in or similar negative impact on relationships, contractual or otherwise, with any customers, suppliers, distributors, partners, officers or employees of the Business, (J) any actions required under this Agreement to obtain any approval or authorization required under applicable antitrust or competition laws for the consummation of the transactions contemplated by this Agreement, (K) acts of war (whether or not declared), armed hostilities, sabotage or terrorism occurring after the date of this Agreement or the continuation, escalation or worsening of any such acts of war, armed hostilities, sabotage or terrorism threatened or underway as of the date of this Agreement, or (L) earthquakes, hurricanes, floods, or other natural disasters.

4895-8439-9877.1

"Material Contracts" is defined in Section 4.7(b).

"NRI Consignment Agreement" means that certain Master Consignment Agreement dated as of March 9, 2021 by and between Limetree Bay Refining, LLC and NRI Industrial Sales LLC.

"NRI Receivables" means any and all amounts payable to Sellers under the NRI Consignment Agreement.

"Order" means any judgment, order, injunction, decree, writ, permit or license issued or entered by or with any Governmental Entity or any arbitrator, whether preliminary, interlocutory or final, including any order entered by the Bankruptcy Court in the Bankruptcy Cases (including the Sale Order).

"Parts Inventory" means the inventories of supplies, maintenance and capital spares, joints, valves, parts and tools owned by a Seller as of the Closing that are (x) stored in the warehouses located on the Business Real Property or (y) used primarily in connection with the Business.

"Party" and "Parties" are defined in the Introduction to this Agreement.

"Permits" means all licenses, permits, registrations and approvals from or with a Governmental Entity other than the Environmental Permits.

"Permitted Liens" means (a) statutory Liens or other Liens arising in the ordinary course of business of Sellers (including by operation of law) securing payments not yet due, including mechanics', carriers', workmen's, repairmen's, materialmens' and maritime Liens, (b) Liens for Taxes not yet due and payable or for Taxes that may thereafter be paid without penalty or which are being contested in good faith and by appropriate Proceedings, (c) Liens set forth in Section 1.1 of the Seller Disclosure Letter, (d) Liens affecting the Business Real Property with respect to (i) zoning, building code or planning restrictions or regulations, servitudes, permits, licenses, surface leases, ground leases to utilities, municipal agreements, railway siding agreements and other similar rights, easements for streets, alleys, highways, telephone lines, gas pipelines, power lines and railways, and other easements and rights of way of public record on, over, or in respect of any such real property and (ii) encroachments and other matters that would be shown in an accurate survey or physical inspection of such real property that, in each case of (i) and (ii) of this clause (d) above, do not, individually or in the aggregate, materially interfere with the use, operation or occupancy of such real property for the Business, (e) Liens arising pursuant to any Environmental Permit, and (f) any Lien that will be extinguished at or prior to Closing.

"Person" means and include an individual, a partnership, a limited partnership, a limited liability partnership, a joint venture, a corporation, a limited liability company, an association, a trust, an unincorporated organization, a group and a Governmental Entity.

"Petition Date" is defined in Recital B of this Agreement.

"Post-Closing Litigation Liabilities" means all Liabilities arising from a Proceeding first commenced after the Closing (or, in the case of any Purchased Assets that are designated for assignment to Purchaser following the Closing, after the date of such designation and assignment) by a Third Party against Purchaser, a Seller or any of their respective Affiliates, in respect of the

Purchased Assets or the Assumed Liabilities that is based on any Event first existing, arising or occurring following the Closing (or, in the case of any Purchased Assets that are designated for assignment to Purchaser following the Closing, after the date of such designation and assignment); provided, that the Parties agree and acknowledge that Post-Closing Litigation Liabilities shall not include any Environmental Liabilities, which are separately addressed in this Agreement.

"Post-Closing Period" means all taxable years or other taxable periods that begin after the Closing Date and, with respect to any taxable year or other taxable period beginning on or before and ending after the Closing Date, the portion of such taxable year or period beginning on the day after the Closing Date.

"Pre-Closing Period" means all taxable years or other taxable periods that end on or before the Closing Date and, with respect to any taxable year or other taxable period beginning on or before and ending after the Closing Date, the portion of such taxable year or period ending on the Closing Date.

"Prepetition Secured Parties" shall have the meaning ascribed to such term in the Bid Procedures Order.

"Proceeding" means any claim, demand, action, arbitration, audit, hearing, investigation, litigation, suit or other proceeding (whether civil, criminal, administrative, investigative, or informal) commenced, brought, conducted, or heard by or before, or otherwise involving, any Third Party (including any Governmental Entity).

"Property Taxes" means all real property Taxes, personal property Taxes and other similar ad valorem Taxes, in each case, that are imposed with respect to the Purchased Assets.

"Purchase" is defined in Recital C of this Agreement.

"Purchase Price" means cash in an amount equal to $20,000,000, plus the assumption by Purchaser of the Assumed Liabilities.

"Purchased Assets" is defined in Section 1.1.

"Purchased Claims" is defined in Section 1.2(l).

"Purchased Real Property" is defined in Section 1.2(b).

"Purchaser" is defined in the Introduction to this Agreement.

"Quarterly Refinery Payments" has the meaning ascribed to such term in that certain Refinery Operating Agreement, dated July 2, 2018 (as amended, amended and restated or otherwise modified from time to time), by and among the Government of the U.S. Virgin Islands and LBR.

"Real Property" means the Purchased Real Property and the Excluded Real Property.

"Real Property Leases" is defined in Section 1.2(d).

"Released Claims" is defined in Section 9.2.

"Releasee" is defined in Section 9.2.

"Releasor" is defined in Section 9.2.

"Remedial Action" means any action to investigate, abate, clean up, remove or remediate (or words of similar import), or conduct remedial or corrective actions, including sampling and/or monitoring activities, with respect to Hazardous Materials in the environment.

"Representatives" of any Person means such Person's directors, managers, officers, employees, agents, attorneys, consultants, advisors, financing sources or other Persons acting on behalf of such Person.

"Returns" means all returns, statements, forms, reports and other similar documentation relating to Taxes, including any schedules, exhibits and other attachments thereto and any amendments thereof.

"Sale Motion" means Debtor's Motion for Entry of Orders (a)(i) Establishing Bidding Procedures Relating to the Sale of the Debtor's Assets, (ii) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts, (iii) Approving Form and Manner of Notice Relating Thereto, and (iv) Scheduling a Hearing to Consider the Proposed Sale; (b)(i) Approving the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (ii) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (c) Granting Related Relief filed by Sellers in the Bankruptcy Court on [_____] [__], 2021.

"Sale Order" means an Order of the Bankruptcy Court approving this Agreement, containing the findings and conclusions set forth in Section 6.11, and authorizing and directing Sellers to consummate the transactions contemplated by this Agreement (including, but not limited to, the assumption and assignment of the Business Contracts and Real Property Leases) under Sections 105, 363 and 365 of the Bankruptcy Code, in form and substance acceptable to Sellers and Purchaser in their respective sole discretion.

"Seller" and "Sellers" are defined in the Introduction to this Agreement.

"Seller Access Indemnitees" is defined in Section 6.1(b).

"Seller Disclosure Letter" is defined in Article IV.

"Seller Facilities" means the facilities and related equipment owned by a Seller located on the Business Real Property, including all Improvements related thereto; provided, that, for the avoidance of doubt, the Seller Facilities shall not include any Excluded Assets.

"Taxes" means (a) all taxes, however denominated, and all like charges, levies, duties, imposts, unclaimed property, escheat obligations or other assessments, including any interest, penalties or additions to tax that may become payable in respect thereof, imposed by any

Government, which taxes shall include all income taxes, payroll and employee withholding, unemployment insurance, social security (or similar), sales and use, excise, franchise, gross receipts, occupation, real and personal property, stamp, transfer, workmen's compensation, customs duties, registration, documentary, value added, alternative or add-on minimum, estimated, environmental (including taxes under Section 59A of the Code) and other obligations of the same or a similar nature, whether arising before, on or after the Closing Date and (b) any transferee, successor or other liability in respect of Taxes of another (whether by contract or otherwise) and any liability in respect of any Taxes as a result of any company being a member of any "affiliated group" as defined in Section 1504 of the Code, or any analogous combined, consolidated or unitary group defined under state, local or foreign Tax law.

"Termination Date" is defined in Section 9.1(d).

"Third Party" means any Person other than the Parties and their respective Affiliates (including, for the avoidance of doubt, any Governmental Entity).

"Transaction Documents" means the Sale Order, Transition Services Agreement, Bill of Sale and Assignment and Assumption Agreement, and any other documents executed by the Parties or orders entered by the Bankruptcy Court to facilitate the transaction(s) envisioned under this Agreement.

"Transfer Taxes" is defined in Section 6.8.

"Transition Services Agreement" means a Transition Services Agreement, to be entered into as of the Closing by and among Purchaser and the Sellers (or an appropriate Affiliate thereof), in substantially the form of Exhibit C.

"Winning Bid" shall have the meaning ascribed to such term in the Bid Procedures Order.

"Winning Bidder" shall have the meaning ascribed to such term in the Bid Procedures Order.

4895-8439-9877.1

## EXHIBIT C

## AMENDED MILESTONES AND BID PROCEDURES DEADLINES

| Event | Current Milestone | New Milestone |
|---|---|---|
| Sale Milestone | December 14, 2021 | December 17, 2021 |

| Event | Current Date/Deadline | New Date/Deadline |
|---|---|---|
| Deadline to file the Designation of Winning Bid | November 30, 2021 | November 30, 2021 |
| Expected Service of Notice of Designation of Winning Bid and Sale Hearing | November 30, 2021 – December 1, 2021 | November 30, 2021 – December 1, 2021 |
| Deadline to file Sale Order and transactional documents | November 30, 2021 | December 3, 2021 |
| Deadline to object to the Sale | December 6, 2021 at 5:00 p.m. CT | December 6, 2021 at 5:00 p.m. CT |
| Deadline to reply to objection(s) to the Sale | December 7, 2021 at 2:00 p.m. CT, subject to supplementation during Sale Hearing | December 7, 2021 at 2:00 p.m. CT, subject to supplementation during Sale Hearing |
| Sale Hearing (subject to Court availability) | December 7, 2021 | December 7, 2021, at 4:00 p.m. CT |
| Expected entry of Sale Order | December 9, 2021 | December 9, 2021 |
| Deadline for Winning Bidder to close sale transaction | December 10, 2021, at 5:00 p.m. CT | December 17, 2021, at 5:00 p.m. CT |
| Deadline for Back-up Bidder to close sale transaction (if applicable) | December 13, 2021, at 5:00 p.m. CT | TBD |
| Deadline to file Amended Notice of Potential Assumption and Assignment of Executory Contracts[9] | November 10, 2021 | April 8, 2022 |
| Contract Assumption Objection Deadline | December 6, 2021 at 5:00 p.m. CT | April 29, 2022 |
| Designation Deadline (per APA)[10] | N/A | May 16, 2022 (subject to extension per APA) |

---

[9] The deadlines to file Amended Designation of Winning Bid to add or remove Purchased Contracts are not consistent with the terms of the APA and, as such, have been deleted from the list of Bidding Procedures Deadlines; *provided*, that the removal of these deadlines shall not affect the rights of St. Croix to designate contracts for assumption and assignment in accordance with the terms of the APA and sale order.

[10] The Designation Deadline is not subject to the Bid Procedures Order and is included solely for reference. Under the APA, the Designation Deadline is subject to two (2) 90-day extensions, for a total of 180 days, beyond the initial term of 150 days (as noted above). The Designation Deadline is calculated based on an anticipated closing date of December 17, 2021.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| IN RE: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC,** *et al.*,[1] | **CASE NO.: 21-32351** |
| Debtors. | **(Jointly Administered)** |

**NOTICE OF EMERGENCY SALE HEARING ON
DECEMBER 7, 2021 AT 4:00 P.M. CENTRAL TIME**

**PLEASE TAKE NOTICE** that the final emergency hearing to consider the sale referenced in the *Debtors' Emergency Motion for Entry of Order: (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief* (Doc. No. 191) (the "**Motion**") is scheduled for **December 7, 2021 at 4:00 p.m. Central Time** before the Honorable David R. Jones, United States Bankruptcy Judge, 515 Rusk Street, Courtroom 400, Houston, Texas 77002 (the "**Sale Hearing**"). You may participate in the hearing either in person or by an audio and video connection.

**PLEASE TAKE FURTHER NOTICE** that **emergency relief has been requested. Relief is requested not later than 4:00 p.m. Central Time on December 7, 2021.**

**PLEASE TAKE FURTHER NOTICE** that the deadlines and milestones related to the Sale Hearing and Motion, including deadlines to object to the proposed sale, are included in the Debtor's *Notice of (I) Designation of Winning Bid and Back-Up Bids and (II) Sixth Notice of Extension of Milestones and Bid Procedures Deadlines* (Doc. No. 829) ("**Notice of Designation**"), which is being filed simultaneously with this Notice. If you object to the relief requested or you

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

believe that emergency consideration is not warranted, you must appear at the hearing and file a written response as outlined in the Notice of Designation. Otherwise, the Court may treat the matter as unopposed and grant the relief requested.

**PLEASE TAKE FURTHER NOTICE** that audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691. Once the code is entered, you will be connected **live** to the courtroom. You will be able to hear persons speaking in the courtroom and other persons on the call addressing the Court. You will be able to address the Court directly. The Court will hear all sound on your line. **PLEASE mute your line if you are not addressing the Court.**

**PLEASE TAKE FURTHER NOTICE** If there are multiple parties on the call, the Court may activate the "hand raise" feature. The system will announce that this feature has been activated. If the hand raise feature has been activated, you will not be able to address the Court until the Court addresses you or you request to speak and the Court grants the request. If you wish to address the Court, you must press 5*. Within 5 seconds, the Court will receive a signal that you wish to speak. When the Court calls on you, you will hear a recorded message that you have been recognized. When you are done, the Court will again mute your call. Details regarding the use of the conferencing system are available at https://www.conferencecalling.com/help

**PLEASE TAKE FURTHER NOTICE** Video participation is available via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application prior to the hearing. If a browser connection is used, Chrome is generally recommended. A mobile version of the application is also available. The meeting code is

4889-2313-8053.1

"judgejones". You may also connect directly by clicking the link on Judge Jones' home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.

**PLEASE TAKE FURTHER NOTICE** that hearing appearances must be made electronically in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu. Select "Judges' Procedures," then "View Home Page" for Judge Jones under "Electronic Appearance" select "Click here to submit Electronic Appearance." Select the case name, complete the required fields and click "Submit" to complete your appearance.

**PLEASE TAKE FURTHER NOTICE** that copies of documents can be obtained through the Bankruptcy Court's electronic case filing system at https://ecf.txsb.uscourts.gov or can be obtained free of charge on the website maintained by the Debtors' proposed claims and noticing agent at www.bmcgroup.com/limetree

Dated: November 30, 2021

**BAKER & HOSTETLER LLP**
*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
So. Dist. Fed ID 903144
**Jimmy D. Parrish, Esq.**
So. Dist. Fed ID 2687598
200 S. Orange Avenue
Suite 2300
Orlando, FL 32801
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
E-mail: egreen@bakerlaw.com
E-mail: jparrish@bakerlaw.com

4889-2313-8053.1

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com
*(Admitted Pro Hac Vice)*

*Counsel for the Debtors and Debtors in Possession*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on November 30, 2021, a true copy of the forgoing was filed with the Court using the CM/ECF System, which will provide notice of such filing to all parties requesting such notice.

*/s/ Elizabeth A. Green*
Elizabeth A. Green

4889-2313-8053.1

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

December 01, 2021

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*,[1]** | **CASE NO.: 21-32351 (DRJ)** |
| **Debtors.** | **(Jointly Administered)** |

**ORDER GRANTING DEBTORS' <u>EMERGENCY</u> MOTION
FOR AUTHORITY TO PAY FORBEARANCE FEE**

(Docket No. 724)

Upon the motion ("**Motion**")[2] of the debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**") for entry of an order (the "**Order**") authorizing, but not directing, the Debtors to pay the Forbearance Fee, as more fully set forth in the Motion; finding this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; finding that this matter is a core proceeding pursuant to 28 U.S.C. § 157; finding this Court may enter final orders in this matter consistent with Article III of the United States Constitution; finding that this matter is properly venued in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; finding notice of the Motion due and proper under the circumstances and in accordance with all applicable rules and orders, and no further or additional notice of the Motion being warranted; receiving no objections to the relief requested in the Motion; having considered the Motion, and all other documents submitted in support of the Motion; and, after due deliberation, finding that the relief requested by and through the Motion is due and proper, is premised on the Debtors' sound business judgment, and serves the best interests of the estates and their creditors; and sufficient cause appearing therefor,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

4882-9930-5987.1

**IT IS HEREBY ORDERED:**

1.      The Motion is hereby granted in its entirety.

2.      The Debtors shall have the authority, and are directed, to pay the Agent, on behalf of the Lenders, the Forbearance Fee, either in cash or in kind (in which case the Forbearance Fee will be added to the principal amount of the outstanding commitments under the DIP Loan Documents).

3.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

4.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

5.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.


    Signed:  November 30, 2021.

                                        _____
                                        DAVID R. JONES
                                        UNITED STATES BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| **LIMETREE BAY SERVICES, LLC,** *et al.*,[1] | **CASE NO.: 21-32351 (DRJ)** |
| Debtors. | **(Jointly Administered)** |

## BAY, LTD.'S PRELIMINARY OBJECTION TO THE PROPOSED SALE TO ST. CROIX ENERGY, LLLP AND <u>EMERGENCY</u> MOTION TO DELAY THE <u>DECEMBER 7 SALE HEARING TO PERMIT LIMITED DISCOVERY</u>
### [Relates to Docket No. 191, 829, & 830]

EMERGENCY RELIEF HAS BEEN REQUESTED.  RELIEF IS REQUESTED NOT LATER THAN DECEMBER 7, 2021 BEFORE ANY SALE HEARING IS CONDUCTED.

IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

A HEARING WILL BE CONDUCTED ON THIS MATTER AS SOON AS THE COURT CAN ACCOMMODATE IT.  YOU MAY PARTICIPATE IN THE HEARING BY AN AUDIO AND VIDEO CONNECTION.

AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT +1 (832) 917-1510.  ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE JONES' CONFERENCE ROOM NUMBER IS 205691. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE 'S HOME PAGE. THE MEETING CODE IS "JUDGE JONES". CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.

HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE 'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

Bay, Ltd. ("Bay") submits this: (i) preliminary objection to the proposed sale designation (the "Proposed Sale") of substantially all of the assets of the above-captioned debtors and debtors in possession (the "Debtors") to St. Croix Energy, LLLP ("St. Croix") and (ii) emergency motion to delay the Sale Hearing (as defined below) (the "Motion") to permit limited discovery to be taken; and in support thereof, Bay respectfully states as follows:

## Preliminary Statement[2]

1.      After multiple delays, last night, the Debtors filed a notice designating St. Croix as the Winning Bidder and the combined bids of Sabin Metal Corporation ("Sabin") and Bay as the Back-up Bidders (the "Winning Bidder Notice"). *See* Doc. No. 829.  Bay contends the designation should be reversed, with St. Croix as the Back-up Bidder.  By this Motion, Bay seeks entry of the Proposed Order briefly postponing the Sale Hearing currently scheduled for December 7, 2021 pending the Debtors' responses to Bay's (i) informal discovery requests submitted on November 30, 2021 before the designation was filed, for which no reply has yet been given, and (ii) formal discovery requests submitted on December 1, 2021.  As reflected by the attached **Exhibits 1 and 2**, Bay's discovery requests include depositions around the negotiation, preference, and approval by Debtors of St. Croix, before, during and now after the Auction.

2.      A serious dispute exists on the much delayed, but recently announced selection of St. Croix as the Winning Bidder, which ignores the higher and better bids from Bay and Sabin. There is a fundamental change in circumstances arising due to Bay's successful participation in the Auction (which ironically Bay had to prepare to fight to even participate in, which casts further doubt on the Sale Process seeming to preordain a preference for St. Croix as the winner, regardless

---

[2] Capitalized terms used in this Preliminary Statement but not otherwise defined shall have the meanings given to such terms below.

of the Auction results).  As a result of the Auction, it is now clear that the Back-up Bidders are actually for amounts far higher than for the St. Croix Bid, which was and appears to remain qualified and conditional before, during, and after the Auction.  Based on Bay's participation in the Sale Process and the Debtors' lack of engagement before and after the Auction, Bay's perception is the Sale Process was tilted from the start, and throughout, to benefit St. Croix, for reasons Bay cannot understand.  To the extent it represents an "option" to restart the refinery, the lack of engagement on the several agreements that are a prerequisite to this occurring make plain the bid really is simply another liquidation bid, only for less value that what is not provided by Bay and Sabin.  As such, Bay respectfully requests that the Court delay the Sale Hearing pending Bay's discovery requests being addressed, wherein Bay seeks evidence to (i) test the perplexing decision made to favor St. Croix before, during and after the Auction, even though it remains throughout conditional and likely just a disguised liquidation bid, and to test the value thereof, (ii) whether the St. Croix Bid is indeed funded and without conditions since the Winning Bidder Notice makes clear it faces substantial hurdles and remains uncommitted, and (iii) whether the Sale Process truly represents a fair market test confirmed by the Debtors' independent judgment.

3.      The Debtors originally represented in their Bid Procedures Motion that: "The paramount goal of any proposed sale of property of a debtor is to maximize the value received by the estate."  *See* Doc. No. 191, ¶ 52.  Moreover, a recent ruling from the Fifth Circuit makes clear that "The purpose of § 363 is to promote the finality of bankruptcy sales, thereby maximizing the purchase price of estate assets…. And ultimately, maximizing bidding on and the purchase price for a debtor's assets benefits a debtor's creditors."  *Matter of Walker Cty. Hosp. Corp.*, 3 F.4th 229, 234 (5th Cir. 2021).  While the Auction itself was capably handled, the events before and after the Auction appear to create more than a passing concern on whether a true market test was

sought, and in the end as reflected by the recently designated lead bidder, in fact the "best" bid put forth considering all circumstances, and realities.

4. The Debtors' delayed designation to date calls into question whether their business judgment in selecting St. Croix as the Winning Bidder was truly independent, fully informed, and free from other influences.  Through the Winning Bidder Notice, the Debtors seem to acknowledge that the Bay and Sabin bids, which yields together $39 million of value, seemingly swamps the true notional value of the St. Croix bid, characterized as $33 million (but which actually is far less, as Bay's chart below illustrates).  Moreover, the Bay and Sabin bids exclude several assets, which are left to the estate, that appear to be swept into the St. Croix Bid, effectively making the Bay and Sabin bids even more valuable.

5. Bay also wants it known that its bid is also in the interests of the Island itself, which while not a restart option for a perennially troubled refinery that sits idle and represents decades of pollution issues, involves a valuable opportunity for the island and its people.  In addition to facilitating eventual fixes for longstanding pollution and environmental concerns, the straightforward dismantlement of the plant by Bay will entail that Bay employs many from the Island to facilitate the decommissioning work that will span approximately three years.  While perhaps not a "value concern" in the strict sense for this bankruptcy, it should be considered that Bay's bid opens up new opportunities for the Island and will facilitate the resolution of longstanding federal and state concerns over the site, and the need to address—with the starting point being the removal of the twin refinery complexes.[3]  But, on the more direct value comparison issue here, there is one piece of these cases that is not complicated, and that is the Debtors'

---

[3] Further, prior to submitting its bid, had Bay been provided with the appropriate information on the real property assets held by the Debtors, which Bay repeatedly requested, a proper due diligence related to on-going business units could have been performed, which support healthy environmentally friendly opportunities for the Island and its residents, a process that is being conducted now should Bay prevail.

4

obligation to select the highest and best bid to bring the maximum value to their estates.   The

Debtors, however, have failed to do so, as shown below.  This chart compares the St. Croix Bid

and the Bay and Sabin bids.  The chart remains subject to update and discovery because (i) until

late last night the St. Croix Bid remains shrouded as to its details, (ii) the essential Transition

Services Agreement ("TSA") that has long been highly conditional for weeks is admitted to remain

still incomplete and unsee; and (iii) several other agreements are needed for a restart for which no

engagement has apparently occurred with counterparties, rendering the notion of a restart illusory:

| | St. Croix Bid | Bay and Sabin Combined Bid | Notes |
|---|---|---|---|
| Net Bid Amount | The face amount of the St. Croix Bid is listed for $20 million.   Certain amounts should be deducted, however, including<br><br>• (i) $15.1 million for St. Croix's acquisition of the Catalyst, without a separate value allocation[4]<br>• (ii) possible acquisition of unspecified A/R,<br>• (iii) acquisition of other unspecified assets reflected in the schedules at docket number 548 (Limetree Bay Refining Operating) and 550 (Limetree Bay Refining Marketing); and<br>• (iv) $1 million for the expense reimbursement.<br><br>In sum, the St. Croix Bid appears as one in which the Debtors are paying more than they are receiving. | The Winning Bidder Notice acknowledges (i) the Sabin bid is approximately $15.1 million and (ii) the Bay bid is approximately $24.8 million. | Bay and Sabin leave behind (i) all prepaids, deposits and inventory; and (ii) the underlying land other than access for the duration of dismantlement, which would be addressed only upon the dismantlement of the Plant over a period of three years.<br><br>Upon information and belief, at least $12 million of the "$14 million (est.) assumed and avoided liabilities and expense reimbursement pursuant to the [TSA]" includes expense reimbursements.  But there appear to be no contracts assumed, and it cannot be determined since the schedules are not included what this comprises.  As such, Bay asserts at least $12 million in expense reimbursement under the TSA is not creditable to the St. Croix Bid. |
| Total Value | Approximately $5.9 million[5] | Approximately $39.9 million | |

---

[4] As noted further below, nothing prevents St. Croix from selling the catalyst to anyone immediately after closing, thus reducing the value it actually is paying for this option.  In the absence of the competing higher bids, this might be permissible—but not now.

[5] St. Croix's APA filed at docket number 829-2 contemplates the inclusion of various schedules to fully describe the "Purchased Assets," including for example, business contracts, real property, leases, and permits.  These schedules are not included with the filed APA, so it is impossible to determine which additional assets are included or excluded from the St. Croix Bid for comparative purposes.  Thus, this total value amount may be even lower based on these missing schedules.  But what we do know now is that the $20 million bid is reduced by $1 million for St. Croix costs,

|  | St. Croix Bid | Bay and Sabin Combined Bid | Notes |
|---|---|---|---|
| The St. Croix Bid is Contingent on a TSA | As described in open Court[6], and as recalled to be essentially repeated at the Auction,[7] the St. Croix Bid was and remains uncommitted and conditional on several matters, including a needed TSA:  At the November 15 hearing at 19:40 [Counsel for lead bidder] "The other question that comes up is there is a transition services agreement that has to be negotiated and I believe the term lenders' counsel had asked about that.  Obviously your honor if we [walk[?]] and we can't do this deal because we can't reach a TSA that is acceptable on Thursday before the auction, then we are not expecting that expense reimbursement because there is not a $20 million deal.  We reserve the rights to bid less at the auction as if on terms such that we had not come to your honor today." | No contingencies. | When during the initial part of the Auction it was again stated by St. Croix that there must be a TSA in place which remained uncertain, Bay objected at the Auction to any efforts by St. Croix to have its bid considered if truly not committed and conditional, and to any effort to retract or reduce its bid, when this was initially presented at the opening of the Auction, and Bay reserved all rights. |
| The St. Croix Bid is Contingent on Regulatory Approvals | The restart of the refinery remains subject to required assumption of the EPA Consent Decree and related matters governing a restart, if it truly is a restart and not simply a disguised liquidation bid dressed as a restart to control the liquidation. Bay contends the evidence would show it is extremely unlikely, if not impossible, for any restart before the end of 2022, and more likely thereafter, entailing the proffered "carrot" of three months of funding post closing of $12 million is actually intended to promote a restart, rather than underwriting post closing costs. Moreover, any restart would require a prior commitment of hundreds of millions in further funding and expenditures by St. Croix, none of which is even in prospect, much less committed. | Bay and Sabin as dismantlement-oriented bids not involving operation of the refinery and have no similar restrictions. | The lack of any agreement on this with counterparties is indicative that the St. Croix bid is not a restart so much as an option which in reality masks it comprising a liquidation bid. |
| The St. Croix Bid is Contingent on Shared Services with Terminal Entities | As stated in the Terminal Entities' statement filed at docket number 822, the St. Croix Bid, as a restart bid, is subject to a shared services agreement with the Terminals, which apparently has not been negotiated, and which upon information and belief would necessarily be a required contract for a restart. | Bay and Sabine as dismantlement-oriented bids not involving operation of the refinery and have no similar restrictions. | The lack of any agreement on this with counterparties is indicative that the St. Croix bid is not a restart so much as an option which in reality masks it comprising a liquidation bid. |
| The St. Croix Restart is Contingent on Assuming the Refinery Operating | To implement the restart St. Croix must assume and perform this agreement, including cure payments for the amounts due the government as well as prospective amounts.  This presents another barrier to restart, and the failure to secure it in advance is proof the restart is illusory. | This is inapplicable to the dismantlement bid from Bay. | The lack of any agreement on this with counterparties is indicative that the St. Croix bid is not a restart so much as an option which in reality masks it comprising a liquidation bid. |

and another $15.1 million because St. Croix can simply sell the catalyst any time after closing, rendering the true worth of its bid in contrast to Bay far lower.

[6] Quote stated from audio file of the November 15, 2021 hearing.

[7] The Debtors had the open proceedings in the Auction transcribed; Bay currently lacks a copy and requests it be provided.

| | St. Croix Bid | Bay and Sabin Combined Bid | Notes |
|---|---|---|---|
| Agreement with the State Government | | | |

6.      Compounding this foregoing contrast in values emanating from the Auction, are other facts that question whether the process was unfairly tilted to the lower St. Croix Bid regardless of the Auction outcome.  The facts Bay would present to challenge this judgment call beyond the baseline value comparison include several matters that seem unique to this sale process, which has been marked by continual last-minute delays, deferrals and indulgences that always favored St. Croix.  Some of these objective facts that take this out of the routine sale process and which should be explored include:

- The Debtors' non-engagement to Bay's November 2 bid proposal, until preliminary comments were sent back after multiple inquiries late in the afternoon on November 14, 2021—mere days before the scheduled auction.

- The Debtors' non-engagement to Bay's further November 17 bid proposal, that was responsive to the preliminary Debtors comments from November 14, 2021, which lack of engagement has continued after the Auction.

   The Debtors' attempt starting the afternoon before the Auction to discourage or even prevent Bay from participating in the Auction, or cancelling the Auction altogether in favor of St. Croix, by questioning Bay's status as a Qualified Bidder, even though Bay submitted its bid, tendered its deposit, and notwithstanding the Debtors representatives had previously represented that Bay was already a Qualified Bidder well before November 17, 2021.

- The Debtors' suggesting the Auction could be cancelled entirely unless Bay *in advance of the Auction* submitted a bid exceeding the already conditional St. Croix notional Stalking Horse Bid.

- The Debtors' repeated unilateral extensions of the milestones and bid deadlines with little to no notice before the expiration of the actual deadline, and usually without any explanation.  The Debtors' eleventh-hour extensions of these deadlines have forced Bay (and presumably, other bidders) to operate on extremely compressed timelines.  Bay has received no comments to the most recent iteration of its Asset Purchase Agreement and no draft of a sale order, despite requests dating back to early November 2021 for a form of order to edit.

- Contrasting to the Debtors' repeated post Auction delays in designating a winning bidder, on November 18, 2021, St. Croix issued its own press release stating it was the winning bidder after the Auction closed, rendering more inexplicable the Debtors' delay until late on November 30 to file the Winning Bidder Notice, and suggesting that perhaps a decision made in its favor before the Auction even after the Auction turned out so much more favorable for the Debtors on the liquidation bids.

- The reality that the St. Croix bid, denominated as a "restart bid," appears to (i) lack funding for a restart; (ii) lack any engagement at all with the Terminal Entities on the shared services need for a restart, (iii) lack any realistic timetable for a restart when benchmarking it within three months of closing, (iv) lack engagement and agreement with the EPA on its requirements for a restart; (v) lack any assumption of the Refinery Operating Agreement, and (vi) that the issues and permits required to allow a restart, is proof a restart cannot be accomplished within the three-month window provided under the St. Croix Bid, much less any six or eight month period to continue to evaluate options. The St. Croix Bid's reliance on a series of as yet not agreed undertakings thus renders it a nullity and in reality, it is nothing more than a disguised dismantlement bid, entailing its $20 million notional but contingent amount must fall behind the Bay and Sabin bids, and be further discounted by the value of assets it takes which the Bay and Sabin bids leave behind.

7.      The Debtors' selection of St. Croix as the Winning Bidder even though (i) the St. Croix Bid is apparently admitted (at least to the Auction itself) subject to stated contingencies and (ii) that the Debtors have now received other bids at the Auction which are higher in value than the St. Croix Bid and which leave substantial assets for the estate to benefit from, make this an easier call—Bay and Sabin are the prevailing bidders and should have been designated as such.

**Jurisdiction, Venue, and Standing**

8.      The United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

9.      Venue is properly before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     Bay has standing to file this Motion as a creditor in these Chapter 11 Cases as a creditor and bidder.

**Background**

A.    **The Chapter 11 Cases**

11.    On July 12, 2021 (the "Petition Date"), Limetree Bay Services, LLC and certain of

its affiliates (collectively, the "Debtors") each filed voluntary petitions for relief under chapter 11

of title 11 of the United States Code (the "Bankruptcy Code") commencing the above-captioned

chapter 11 cases (the "Chapter 11 Cases").

12.    On July 26, 2021, the United States Trustee appointed the Official Committee of

Unsecured Creditors (the "Committee") in the Chapter 11 Cases.

B.    **The Events Leading up to the Auction Reveal a Sale Process Crafted to Cater to St. Croix**

        i.    *The Debtors Discouraged Bay from Participating in the Auction*

13.    On November 2, 2021, Bay submitted to the Debtors a timely Bid (the "Bay Bid")

for the purchase of certain of the Debtors' assets.   On November 3, 2021, Bay sent further

information regarding the Bay Bid, including information about Bay, its substance as a company

with experience in this area, and information to support schedules in the Asset Purchase

Agreement.   After delivering the Bay Bid, Bay was informed on several occasions it was a

Qualified Bidder.

14.    On November 10, 2021, the deadline to submit Good Faith Deposits under the first

extension notice [Doc. No. 696] (which was then reset to November 12, 2021 by the second

extension notice [Doc. No. 749]), Bay timely submitted its Good Faith Deposit to the Debtors,

only to then be informed (i) the deadline would be delayed a day due to the federal holiday on

November 11, 2021 and (ii) that the escrow account referenced in the Bidding Procedures did not

exist, but that the deposit could be wired to an account maintained by the financial advisor.

15.    On November 14, 2021—four days before the scheduled Auction—the Debtors belatedly provided Bay with comments to its Asset Purchase Agreement.  On November 17, 2021, in an effort to be responsive to the Debtors' comments, Bay submitted to the Debtors an updated Asset Purchase Agreement, with a redline against the Debtors' original proposed Asset Purchase Agreement.   To date, no comments back have been received.

16.    Mid-day on November 17, 2021, the Debtors informed Bay—for the first time— that it questioned if Bay was a Qualified Bidder, and thus called into question whether Bay could participate in the next morning's Auction.   Despite repeated requests to confirm this was inaccurate, whereby the Debtors would not confirm Bay why its status as a Qualified Bidder was in question, nor confirm its ability to participate, Bay needlessly spent most of the time until the morning of the Auction drafting pleadings for emergency relief to this sudden and new development if indeed it was cancelled out, or the auction cancelled itself.

17.    Ultimately, Bay was permitted to attend and participate in the auction on November 18.  As to the actual conduct of the Auction, it proceeded as it should, and the robust bidding for the decommissioning of the assets did occur after the prior pro forma acceptance by Debtors of the St. Croix bid, conditional as it was and apparently remains, as the "restart bid".  But Bay's insistence that it be permitted to attend the auction and it not be cancelled demonstrated why an Auction was useful.  The bidding went for hours and yielded bids that exceeded the St. Croix bid. Yet despite the extraordinary results obtained on that phase of the Auction, and the continuing equivocation of the St. Croix bid indicated in the last night notice, show Bay that the Auction results are now essentially ignored in favor of the inferior St. Croix bid.

### ii.  *The Repeated Extensions of Bid Deadlines and Milestones*

18.     This sale process has been fraught with procedural irregularities.  While this might be a difficult case, the process has been a tough one for bidders to participate in.  On August 11, 2021, this Court entered its *Order Granting Debtors' Emergency Motion for Entry of Order: (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief* [Docket No. 392] (the "<u>Bid Procedures Order</u>").[8]  Pursuant to the Bid Procedures Order, the Court approved the Bidding Procedures.  *See* Docket No. 392, pp. 13–32.  In the usual case, deadlines have importance and are not easily moved.  This has not been such a case, and it has created burdens for bidders.

19.     On September 10, 2021, the Debtors filed the *Debtors' Emergency Motion to Amend Milestones and Bid Procedures Deadlines* [Docket No. 565] (the "<u>Motion to Extend</u>").  On September 15, 2021, the Court entered its *Order Granting Emergency Motion to Amend Milestones and Bid Procedures Deadlines* [Docket No. 583] (the "<u>Extension Order</u>"), extending the deadlines in the Bid Procedures Order for approximately five weeks.  The Extension Order provided that the extensions granted therein were without prejudice and the Debtors and Prepetition Secured Parties (as defined in the Motion to Extend) could mutually agree to extend the milestones and bid procedures deadlines without further order of the Court, "subject only to the Debtors providing notice to the Court, the U.S. Trustee, the DIP Agent, and Committee of any further extensions." *See* Extension Order, ¶ 5.

20.     Since entry of the Extension Order, the Debtors have unilaterally extended the milestones and bid procedures deadlines by notice six additional times.  *See* Doc. Nos. 696, 749,

---

[8] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Bid Procedures Order.

761, 799, 819, & 829.  Each extension has occurred without any explanation, and if Bay was informed on any of them it would only have been in the midst of the deadline actually running. As a routine, the Debtors have filed various extension late in the day on same day as an existing deadline, causing Bay to scramble unnecessarily.[9]  Three of the extensions predated the Auction; three occurred after the Auction, which itself is extraordinary and likely inferential proof of the lack of ability by St. Croix to commit to any schedule or funding.  The current extension [Doc. No. 829] pushes various deadlines but all extensions proposed to maintain the Sale Hearing on December 7, 2021.  This creates great difficulty for the backup bidders, leaving them hanging with the omnipresent risk of loss of their deposits, which had been tendered in good faith.  Until the filing of the sixth extension notice, the deadline for the Winning Bidder to close was scheduled three days later on December 10, 2021, and the deadline for a Back-up Bidder to close was scheduled six days later on December 13, 2021.  Now, the Debtors have unilaterally deemed December 17, 2021 as the deadline for the Winning Bidder to close and "TBD" as the deadline for the Back-up Bidder to close.

21.    Under the Bidding Procedures, the Winning Bidder and the Back-Up Bidder are deemed to forfeit their deposit if they fail to close timely.  *See* Bid Procedures Order, pp. 28–29 of 30.  As of the date of this pleading, Bay has not received any comments from the Debtors to its revised form of Asset Purchase Agreement submitted on November 17, 2021.

---

[9] For example, under the first extension notice, the deadline to submit Good Faith Deposits was Wednesday, November 10, 2021 at 10:00 a.m. CT.  *See* Doc. No. 696-1.  On November 10, 2021, the Debtors filed the second extension notice pushing the deadline to submit Good Faith Deposits to Friday November 12, 2021 at 5:00 p.m. CT.  *See* Doc. No. 749-1.  Bay was previously negotiating with the Debtors to serve as a stalking horse bidder and thus would not have to submit a deposit.  On November 10, 2021 at 4:22 p.m. CT, the Debtors informed Bay the Debtors were not going to designate a stalking horse bidder.  Thus, Bay was left to scramble (unnecessarily) to submit a Good Faith Deposit, only to find out that the Debtors were further extending this deadline.

22.     Moreover, despite asking weeks ago, Bay has not received a form of a sale order from the Debtors from which it could provide comments and assure the usual protections in the purchase, if able to do so.  Yesterday, Bay was advised that now St. Croix is in charge of the form of sale order, so Bay hereby requests it be sent a draft so that regardless of its status as lead or back-up bidder, it be given a reasonable opportunity before any hearing to provide for review and comments.  This order is critically important in this case, where a dismantlement that would employ hundreds of locals and involve the decommissioning of two massive refinery complexes, and the offloading onto ocean going vessels the personal property, will take up to three years.  The Debtors' continued unilateral and last-minute extensions of the milestones and bid procedures deadlines, combined with the lack of engagement on the final asset purchase agreement form after the Auction, coupled with no draft sale order, places the prevailing bidders in an untenable position—if selected as the Winning Bidder (as it should be), Bay is forced to close on an extremely compressed timeline or forfeit its deposit.

### iii. *St. Croix is Designated as the Stalking Horse Bidder then Unilaterally Announces "we won" regardless of the auction outcome, the Debtors lack of timely notification, and the higher Piecemeal Bids*

23.     On November 14, 2021, the *Debtors filed the Debtors' Emergency Motion to Amend Bid Procedures Order and Other Related Relief* [Doc. No. 760] (the "Motion to Amend"), which was approved by the Court at Docket Number 813 (the "Amended Bid Procedures Order"). Pursuant to the Amended Bid Procedures Order, the Court authorized the designation of St. Croix as the Stalking Horse Bidder with a $20 million purchase price for substantially all of the Debtors' assets on a going-concern basis to restart the refinery (the "St. Croix Bid").  The St. Croix Bid includes a $1 million expense reimbursement (see Doc. No. 813, ¶ 2); thus, the estate theoretically nets approximately $19 million from the St. Croix Bid.  *But see supra* ¶ 5.

24.     The St. Croix Bid, however, has various material contingencies.  At the hearing on the Motion to Amend, counsel for St. Croix represented that the St. Croix Bid was contingent on "reach[ing] a transition services agreement that is acceptable. . . ."  *See* Nov. 15 Hr'g Courtspeak at 19:40.  At the Auction, counsel for Bay raised an objection when this same TSA issue presented itself, because it had previously been presented as a gating item, and it remained uncommitted. Remarkably, St. Croix even reserved the right to further reduce its bid, to which Bay reserved all rights.  Plainly, the St. Croix Bid remains uncommitted, as the Winning Bidder Notice indicates the TSA is still uncertain, though a soft commitment is made to assure it will be filed before the sale hearing.  As of the date of this Objection, Bay notes St. Croix and the Debtors have not finalized any "acceptable" transition services agreement.  Moreover, the filing by Terminal Entities at Docket 822 makes plain St. Croix has not engaged at all on the needed shared services agreement required for a restart.  Moreover, it is understood that engagement with the EPA on adherence to the Consent Order is also missing.

14

25.     The St. Croix Bid is promoted as a going-concern bid to restart the refinery operations.  But in reality, prudent business judgment alone would disqualify that bid because there is no practical reality that this bidder can restart the refinery anytime soon—both because (i) the EPA obligations have to be satisfied, and apparently the EPA has been stonewalled too, and (ii) there has been no coordination with the Terminal Entities.  Moreover, a restart would require massive added funding, which is nowhere in prospect.  In effect, the St. Croix bid smacks of nothing more than a disguised dismantlement bid, and in a head-to-head with Bay and Sabin, it falls far short.

26.     Although the Debtors did not file anything on the docket noticing the winning bid until November 30, 2021, on November 18, 2021, St. Croix curiously released its own statement stating that it "emerge[d] as the top bidder. . .for the Limetree Bay Refining assets."  See **Exhibit 3**.  This statement violated the Bid Procedures Order, which requires the Debtors to provide notice of the Winning Bid and Back-up Bid and may be another factor leaving the Debtors feeling cornered to push it through even though it is inferior.  But it also renders more inexplicable why the Debtors delayed several times in filing the Winning Bidder Notice, inferring to Bay it was trying to jam the designation closer to the sale hearing, in effect rendering the Debtors' designation a *fait accompli*, and correspondingly precluding discovery in regard to any objections.  That alone warrants some delay to accommodate the discovery Bay seeks.

### C.     After the Auction, the Combined Piecemeal Bids are the Highest Bids, but the Debtors Select St. Croix as the Winning Bidder

27.     On November 18, 2021, the Debtors held the auction (the "Auction").  The Auction was conducted in apparent compliance with the Bid Procedures.  Despite the Debtors' prior questioning of Bay's Qualified Bidder status, Bay participated in the Auction as a Qualified Bidder.

28.     During the Auction, St. Croix resubmitted its qualified $20 million Stalking Horse Bid.  But in doing so, the Auction transcript should reveal the same equivocations cited to this Court a few days earlier and quoted above—the bid was not committed, had outs, remained dependent on a TSA, and was hardly firm.  It then even reserved the right to *lower* its bid.  After quickly bypassing Bay's objection raised to this initial bid proceeding as somehow separate from the remaining bid process the Debtors and the potential of St. Croix lowering its bid, the parties then did the auction on the Catalyst, which Sabin won at a stated $15.1 million without further contest.  Once done, then the bidding on dismantlement proceeded whereby Bay emerged the highest and best after thirteen rounds that lasted until the evening.  As noted by the chart above (*supra* ¶ 5), the combined value of these bids exceeds the value of the St. Croix Bid.

### D.     Bay Serves Discovery Requests on the Debtors

29.     Given the lack of engagement, the delays, the numerous barriers to any St. Croix closing, and the foregoing concerns raised including the squeezed timeline before the upcoming sale hearing, Bay transmitted its concerns to the Debtors about the process on November 30, 2021. *See* **Exhibit 1.**  Because of its concerns, Bay included initial informal discovery requests on the Debtors.  Bay seeks to understand the internal business decisions made regarding the preferences for St. Croix as the preferred Winning Bidder, notwithstanding the auction results, and to depose representatives with knowledge.  Bay has received no response from the Debtors.  Given the exigencies, Bay has also issued a more formal requests in the absence of voluntary responses. **Exhibit 2.**

### <u>Relief Requested</u>

30.     By this Motion, Bay seeks entry of an order, substantially in the form attached hereto (the "<u>Proposed Order</u>"), postponing the Sale Hearing currently scheduled for 4:00 p.m. CT

on December 7, 2021 pending responses to Bay's discovery requests, which will permit evidence to be adduced in a form needed as part of the Court's review of these matters.  Documents focused on the issues herein should be produced, and a deposition permitted.  This is reasonable, and the need for time due to the Debtors' own unilateral delays in adhering to deadlines.  With a closing date now moved back another week, a sale hearing on December 13 or 14 will permit the needed discovery to occur next week.

## Basis for Emergency Relief

31.     Bay seeks emergency relief because the Sale Hearing is scheduled for December 7, 2021, which is less than twenty-one (21) days after the date of filing this Motion.  As a result, and to the extent the discovery is needed in connection with an irregular process and flawed decision, Bay seeks emergency consideration so that its discovery can be addressed before any consideration of approval of the sale.

## Notice

32.     Notice of this Motion will be provided to (i) counsel to the Debtors; (ii) counsel to the Committee; (iii) the Office of the United States Trustee; (iv) the Office of the United States Attorney; and (v) any other party entitled to notice pursuant to Local Rule 9013-1(d).

## Reservation of Rights

33.     Bay files this Motion to protect its rights in connection with the Bid Procedures Order and the Sale Process.  Bay expressly reserves, and does not waive, any further objections, claims, defenses, or other rights of any kind, relating to the Bid Procedures Order and the Sale Process.

## Conclusion

**WHEREFORE,** the Bay respectfully requests that the Court enter the Proposed Order (i) postponing the Sale Hearing currently scheduled for December 7, 2021 pending Bay's discovery requests; and (ii) granting any related relief to which Bay is justly entitled.

Respectfully submitted this 1st day of December 2021.

By: */s/ Patrick L. Hughes*

Patrick L. Hughes
Texas State Bar No. 10227300
Martha Wyrick
Texas State Bar No. 24101606
**HAYNES AND BOONE, LLP**
1221 McKinney, Suite 4000
Houston, TX 77010
Telephone No.: (713) 547-2000
Facsimile No.: (713) 547-2600
Email: patrick.hughes@haynesboone.com
Email: martha.wyrick@haynesboone.com

and

Butch Boyd
Texas Bar No. 00783694
Jeremy Stone
Texas Bar No. 24013577
**BUTCH BOYD LAW FIRM**
2905 Sackett Street
Houston, TX 77098
Telephone No.: (713) 589-8477
Facsimile No.: (713) 589-8563
Email: butchboyd@butchboydlawfirm.com
Email: jeremystone@butchboydlawfirm.com

**COUNSEL FOR BAY LTD.**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served by electronic mail via the Court's ECF system to all parties authorized to receive electronic notice in this case on December 1, 2021.

*/s/ Patrick L. Hughes*
Patrick L. Hughes

## **CERTIFICATE OF ACCURACY**

In accordance with Bankruptcy Local Rule 9013-1(i), I hereby certify the accuracy of the nature of the emergency described above.

*/s/ Patrick L. Hughes* _____
Patrick L. Hughes

## <u>Exhibits Referenced in the Motion</u>

Exhibit 1:     Email from Bay counsel to counsel to the Debtors, dated November 30, 2021

Exhibit 2:     Bay Ltd.'s Rule 30(b)(66) Notice of Deposition of Limetree Bay Services, et al. and Subpoena Duces Tecum

Exhibit 3:     St. Croix LLLP's November 18, 2021 Press Release

# EXHIBIT 1

| | |
|---|---|
| **From:** | Hughes, Patrick |
| **To:** | Rose, Jorian L.; Green, Elizabeth A. |
| **Cc:** | Butch Boyd (butchboyd@butchboydlawfirm.com); Wyrick, Martha |
| **Subject:** | Concerns over delays on post auction deadlines, the status of bids, and lack of detailed information |
| **Date:** | Tuesday, November 30, 2021 11:27:44 AM |

Dear Limetree Team

As you know we represent Bay, Ltd, a prevailing bidder at the auction conducted November 18. Despite its prevailing bid especially when combined with the Sabin bid exceeding the highly contingent bid proffered [and seemingly favored throughout] by SCE, Bay has not heard anything further regarding its bid, its status, any comments to its offer going into the auction, or even a draft copy of a proposed sale order promised three weeks ago. That is concerning on several levels.

First, while the actual conduct of the auction itself was capably done and resulted in Bay and Sabin emerging as the highest bidders for the assets, the process before and after was from a buyer's perspective chaotic and seems without precedent in disregarding or extending deadlines at will and often literally on the eve of the deadline, without explanation, and geared entirely to favor delivery of the assets to SCE, regardless of its highly conditioned proposals. That is troublesome, because the process before and now after the auction seems preordained to deliver the assets to SCE, even under the new circumstances of what came from the auction.

Second, the various deadlines for announcing the prevailing bidder have been unilaterally delayed several times, without explanation, before and after the auction. Yet the timeline for a sale hearing keeps being posted as "maybe" December 7, without any confirmed time, and the closing timelines at December 10 and 13, which are rapidly approaching. That unfairly jams prevailing bidders into reacting to an as yet undelivered form of sale order, critical to any buyer, as well as to even review as yet undelivered comments to the last form of APA. That is troublesome too.

Third, when viewing the foregoing against the chaotic 18 hours before the auction when Bay was overtly discouraged from even participating at the auction, and having the auction seemingly cancelled as a preferred path, necessitating preparation by Bay of emergency papers to file if the lack of admission to the auction occurred, the several delays and lack of communication since the auction appear from Bay's perspective to be tactical to somehow jam prevailing bidders into a fait accompli outcome they can never react to if indeed the sale hearing does proceed on December 7, and the closings forced as scheduled at risk of forfeit of deposit. That too is troubling.

Bay is concerned this process is flawed and outcome determinative, intended before and now after the auction to favor delivery of the assets to SCE, or to at every turn give SCE the benefit of the doubt on its highly conditional proposal which at this juncture offers less value, and seems more akin to a disguised liquidation bid perhaps. Before and during the auction, SCE statements made plain its bid was not firm, and remained conditional on other events, not least of which was a TSA that as of the auction other key participants had not yet reviewed.   Yet SCE remained as the ostensible lead bid, in circumstances where its willingness to close was in substantial doubt, and its ability to ever restart the refinery highly improbably for a host of reasons.

We have heard nothing since to change that, even though I just did wrap a call with Joe

Esmont on another matter where he did indicate that tonight's deadline to designate a lead bidder would not be further extended apparently.  But the fact as we understand it remains as before—the SCE bid is no more firm than before, it remains below the Bay and Sabin bids; and it seems that regardless of practical and legal impediments to any restart, it still is preferred.   That makes no sense to Bay at this juncture.

If there continues to be delays or a refusal to acknowledge Bay and Sabin as the prevailing bidder, then Bay may need to seek relief, and otherwise request an immediate production of limited documents concerning the foregoing matters and internal business decisions made, and a deposition of representatives with knowledge. Unless Bay can better understand what is going on, Bay also opposes, until that is provided, the current amorphous December 7 schedule. We will be forwarding a 30(b)(6) request later today, but we expect you can discern from the above the nature and types of materials relevant for gathering and identify the corporate representatives who can attest to the foregoing.

**HAYNES BOONE**

**Patrick L. Hughes**
Partner
patrick.hughes@haynesboone.com

**Haynes and Boone, LLP**
1221 McKinney Street
Suite 4000
Houston, TX 77010

(t) +1 713.547.2550
(f) +1 713.236.5401
(m) +1 832.722.8210

1050 17th Street
Suite 1800
Denver, CO 80265

(t) 303.382.6221

vCard | Bio | Website

# EXHIBIT 2

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*,**[1] | **CASE NO.: 21-32351 (DRJ)** |
| **Debtors.** | **(Jointly Administered)** |

**BAY, LTD.'S NOTICE OF DEPOSITION OF LIMETREE BAY**
**SERVICES, ET AL. AND SUBPOENA DUCES TECUM**

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(6), Bay, Ltd. will take the deposition upon oral examination of the Corporate Representative(s) of Limetree Bay Services, LLC, Limetree Bay Refining Holdings, LLC, Limetree Bay Refining Holdings II, LLC, Limetree Bay Refining, LLC, Limetree Bay Refining Operating, LLC, and Limetree Bay Refining Marketing, LLC (collectively referred to as "Debtors" or "Limetree") who are knowledgeable in topics described in **Exhibit A**.

The deposition will commence at 10:30 AM EST (9:30 AM CST) on December 6, 2021, or at a time, date, and place as the parties mutually agree in writing. Pursuant to Fed. R. Civ. P. 30(b)(6), Limetree is directed to designate one or more officers, directors, managing agents, or other persons to testify on its behalf and on behalf of its affiliated companies concerning the subject matters described on **Exhibit A**, attached hereto.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

By stipulation of the parties and pursuant to Fed. R. Civ. P. 30(b)(4), the deposition may be conducted via the Zoom webcast platform, or similar method.  Bay, Ltd. will provide a link and password to access the web conference in advance of the deposition. The deposition will be taken before a notary public or other officer authorized to administer oaths, who will appear remotely via the web conference. The deposition will be taken upon oral examination and shall continue from day to day until completed. The deposition may be videotaped pursuant to Federal Rules of Civil Procedure.

Deponents are requested to produce all of the documents described in the Subpoena Duces Tecum attached hereto as **Exhibit B**.  The documents should be produced in electronic form no later than 72 hours before the deposition commences.

Respectfully Submitted,


Dated:     December 1, 2021            */s/ Patrick L. Hughes*
              Patrick L. Hughes
              Texas State Bar No. 10227300
              Martha Wyrick
              Texas State Bar No. 24101606
              **HAYNES AND BOONE, LLP**
              1221 McKinney, Suite 4000
              Houston, TX 77010
              Telephone No.: (713) 547-2000
              Facsimile No.: (713) 547-2600
              Email: patrick.hughes@haynesboone.com
              Email: martha.wyrick@haynesboone.com

              and

Butch Boyd
Texas Bar No. 00783694
Jeremy Stone
Texas Bar No. 24013577
**BUTCH BOYD LAW FIRM**
2905 Sackett Street
Houston, TX 77098
Telephone No.: (713) 589-8477
Facsimile No.: (713) 589-8563
Email: butchboyd@butchboydlawfirm.com
Email: jeremystone@butchboydlawfirm.com

**COUNSEL FOR BAY, LTD.**

3

## DEFINITIONS FOR EXHIBITS A AND B

A.  "**Debtors**" or "**Limetree**" means Limetree Bay Services, LLC, a Delaware limited liability company ("**LBS**"), Limetree Bay Refining Holdings, LLC, a United States Virgin Islands limited liability company ("**LBRH**"), Limetree Bay Refining Holdings II, LLC, a United States Virgin Islands limited liability company ("**LBRH II**"), Limetree Bay Refining, LLC, a United States Virgin Islands limited liability company ("**LBR**"), Limetree Bay Refining Operating, LLC, a United States Virgin Islands limited liability company ("**LBRO**"), and Limetree Bay Refining Marketing, LLC, a United States Virgin Islands limited liability company ("**LBRM**").  This definition includes the Debtors' representatives, agents, and persons acting on its behalf.

B.  "**Communication**" means any transmission or receipt of facts, information, opinions, or thought, whether conveyed in writing, orally, electronically, or by any other means, including written memorializations or oral communications.

C.  "**Document**" shall mean the complete original and any non-identical copy (whether different from the original because of notations on the copy or otherwise), regardless of origin or location, of any written, typed, printed, transcribed, filmed, punched, or graphic matter of every type and description, however and by whomever prepared, produced, disseminated or made, including but not limited to any advertisement, book, pamphlet, periodical, contract, correspondence, file, invoice, memorandum, note, telegram, report, record, handwritten note, working paper, routing slip, chart, graph, paper, index, map, tabulation, manual, guide, outline, script, abstract, history, calendar, diary, agenda, minute, code book or label. "**Document**" shall also include all documents, materials, and information, including Electronically Stored Information, within the meaning of the Federal Rules of Civil Procedure.

D.  "**Electronically Stored Information**" or "**ESI**" shall mean the complete original and any non-identical copy (whether different from the original because of notations, different metadata, or otherwise), regardless of origin or location, of any writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any electronic medium from which information can be obtained either directly or, if necessary, after translation by you into a reasonably usable form. This includes, but is not limited to, electronic mail, instant messaging, videoconferencing, and other electronic correspondence (whether active,archived, or in a deleted items folder), word processing files, spreadsheets, databases, and video and sound recordings, whether stored on: cards; magnetic or electronic tapes; disks; computer harddrives, network shares or servers, or other drives; cloud-based platforms; cell phones, PDAs, computer tablets, or other mobile devices; or other storage media.

E.  "**Relate to,**" "**related to,**" "**relating to,**" **and** "**regarding**" mean in whole or in part, concerning, reflecting, alluding to, mentioning, regarding, discussing, bearing upon, commenting on, constituting, pertaining to, demonstrating, describing, depicting, directly or indirectly relating to, summarizing, containing, embodying, showing, comprising, evidencing, refuting, contradicting, analyzing, identifying, stating, dealing with, and/or supporting.

4

F. **"Include" and "Including"** shall mean including without limitation.

G. **"Communications"** means any transmission of information from one person to another, regardless of the medium of communication, and includes without limitation, both oral and written communications. A document or thing transferred, whether temporarily or permanently, from one person to another is deemed a communication between such persons whether or not such a document or thing was prepared or created by the transferor or addressed to the transferee.

H. **"St. Croix"** means **"St. Croix Energy LLLP"** and its representatives, agents, and persons acting on its behalf.

## INSTRUCTIONS FOR EXHIBITS A AND B

1. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this request all responses that might otherwise be construed to be outside of its scope.

2. "All" means any and all and shall be construed to include the term "each," and "each" shall be construed to include "all."

3. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

4. The use of the singular form of any word shall include the plural and vice versa.

5. The disjunctive includes the conjunctive and vice versa as necessary to bring within the scope of these Topics all responses that might otherwise be construed to be outside of its scope.

6. The use of any gender shall include all others as appropriate in context.

7. To the extent not otherwise defined or specifically limited herein, all words used shall be given their most expansive and inclusive definition consistent with the context of the sentence in which they are used, and each request is to be construed independently and not by reference to any other request for purposes of limiting the scope of the request.

8. For purpose of this deposition, unless otherwise specified, the applicable time period is September 1, 2021 to present.[2]

---

[2] This date is shortly before St. Croix filed its notice of appearance in the bankruptcy cases.

5

**INSTRUCTIONS FOR REQUEST FOR ELECTRONIC AND MAGNETIC DATA**

Electronically stored documents will be produced as electronically Bates-numbered in single page TIFF images with appropriate document breaks, corresponding load file for the images, and generic delimited data file for TIFF and corresponding metadata. The following metadata or fielded information, to the extent applicable to be produced electronic document, will be included in the generic delimited data file:

1. Beginning Production Number
2. Ending Production Number
3. Parent ID (if applicable)
4. Attachment ID (if applicable)
5. File Type (e.g., Word, Excel, email, etc.)
6. Last Modified Date (if collected from source system or custodian, rather than image)
7. Last Modified Time (if collected from source system or custodian, rather than image)
8. Sent Date
9. Sent Time
10. Document Author or From
11. To
12. cc
13. BCC
14. Subject Line (emails only)
15. Custodian or Source
16. Attachment Count
17. Native File Link
18. Fil e Na1ne
19. File path/folder
20. Received Date
21. Full text
22. De-duplicated instances (by full path)
23. Redacted flag
24. Embedded content flag

Documents that should not be rendered to TIFF images (i.e., Excel files, multimedia files, voice mail, sound files, databases, etc.) will be placed as native files in a separate folder. The files will be named by pre-pending a Bates number to the original file name. A confidentiality designation can also be inserted into the file name. A slip sheet will be providing containing the Bates number, the native file name, along with the note "Document Provided in Native Format." A link to the relative path of the natively produced document will be included in the metadata load file (Field no 17 in list above). All embedded content shall be provided, including tracked changes, hidden comments, speaker notes, etc.

Emails and their attachments will be referenced to each other in the generic delimited data file, and will be numbered sequentially wherein the attached Bates number follows the parent email Bates number. Emails and their attachments will be designated in the generic delimited data file by the

6

beginning and ending Bates numbers of the email or individual attachments (Fields nos. 1 and 2 in 9 list above), and those of the entire family (Fields nos. 3 and 4 in list above).

Multipage OCR or extracted text (i.e., TXT files) will be named to the corresponding TIFF images and placed in a separate folder named TEXT.

The searchable content of electronically stored documents will be extracted from the source documents, e.g., emails and their attachments, and will not be generated through optical character recognition (OCR) of the corresponding TIFF images, with the exception of redacted documents, which may be OCR-ed. Redacted documents will contain the searchable endorsement "Redacted".

## EXHIBIT A – TOPICS FOR EXAMINATION

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Limetree Bay Services, LLC, Limetree Bay Refining Holdings, LLC, Limetree Bay Refining Holdings II, LLC, Limetree Bay Refining, LLC, Limetree Bay Refining Operating, LLC, and Limetree Bay Refining Marketing, LLC (collectively referred to as "Debtors" or "Limetree") must designate one or more of its officers, directors, managing agents, or other persons to testify on its behalf at deposition about all information known or reasonably available to the Company on the matters set forth below.

1.      The auction conducted in the bankruptcy case jointly administered at number 21-32351, including the bid process and all related documents.

2.      The negotiations and communications with St. Croix, including all related documents (including but not limited to the Asset Purchase Agreement, schedules and exhibits to the Asset Purchase Agreement, the Transfer Services Agreement, and the Refinery Operating Agreement).

3.      The communications and interactions with the U.S. Environmental Protection Agency (EPA) and any of its representatives regarding the St. Croix bid and the St. Croix plans for restarting or dismantling the Debtors' refinery.

4.      The communications and interactions with Limetree Bay Terminals and its affiliates and any representatives or agents regarding the St. Croix bid and the St. Croix plans for restarting or dismantling the Debtors' refinery.

5.      The communications and interactions with any other creditor of the Debtors and any of its representatives regarding the St. Croix bid and the St. Croix plans for restarting or dismantling the Debtors' refinery.

6.      The communications and interactions with the Government of the U.S. Virgin Islands and any of its representatives regarding the St. Croix bid and the St. Croix plans for restarting or dismantling the Debtors' refinery.

7.      The due diligence conducted by the Debtors into St. Croix's background, financial capabilities, and ability to procure regulatory and other government approvals, to procure additional financing as needed, and to otherwise restart and operate the refinery.

8.      The due diligence conducted by the Debtors into the financial resources and wherewithal of St. Croix to close (i) the transactions set forth in its bid; (ii) to procure approvals as necessary to restart the refinery; and (iii) to otherwise procure financing as necessary after closing this transaction to restart and operate the refinery.

9.      The due diligence conducted by the Debtors of St. Croix's management and owners.

10.     All analyses of the bids received by the Debtors which are the subject of the sale hearing.

11.     The process, materials, analyses and considerations provided to the decision maker(s) of the Debtors in selecting the St. Croix bid as the preferred and winning bid.

## EXHIBIT B - DOCUMENTS TO BE PRODUCED –

1. Any and all communications with St. Croix.

2. Any and all communications with the U.S. Environmental Protection Agency (EPA) regarding St. Croix's plan to restart the refinery.

3. Any and all communications with Limetree Bay Terminals, LLC and its affiliates and any representatives or agents thereof regarding the St. Croix bid including, but not limited to the shared services agreement.

4. Any and all communications with the Government of the U.S. Virgin Islands and any representatives or agents thereof regarding the St. Croix bid including, but not limited to the refinery operating agreement.

5. Any and all communications with any advisor (financial, legal, or otherwise) for St. Croix.

6. Any and all documents including but not limited to drafts and redlines of the proposed asset purchase agreement, any transition services agreement, any refinery operating agreement, any schedules or exhibits to the foregoing documents, or any other agreement regarding the St. Croix bid.

7. The transcript of the auction.

8. The resolutions, minutes, board presentations, and other documents generated regarding any review or approval of bids for the Debtors' assets as set for approval at the sale hearing.

9. Documents including analyses or proposals relating to any St. Croix future liquidation or dismantlement of the refinery at any time.

10. The schedules and exhibits to the St. Croix asset purchase agreement.

11. The current version of the transition services agreement.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 1, 2021, a true and correct copy of the foregoing was filed with the Court using the CM/ECF System, which will provide notice of such filing to all parties requesting such notice.

Dated:   December 1, 2021.                    <u>*/s/ Patrick Hughes*</u>
                                              Patrick Hughes, Attorney-in-Charge

# EXHIBIT 3



**For Immediate Release**
November 18, 2021
Media Spokesperson: Ashley D. Scotland
340-513-1895
ascotland@stcroixenergy.com

### ST. CROIX ENERGY, LLLP WINS AUCTION OF LIMETREE BAY REFINING ASSETS

ST. CROIX, USVI – St. Croix Energy (SCE) emerges as the top bidder at the modified Chapter 11 Bankruptcy proceedings for the Limetree Bay Refining Assets. According to Communications and Public Relations Director Ashley Scotland, "Emerging as the top bidder for the LBR asset is a good thing, however SCE continues to remain focused and steadfast on accomplishing the other milestones necessary for our company and the US Virgin Islands community to see a safe and environmentally conscious restart of the LBR facility."

SCE remains committed to working with the local and statutory environmental regulatory bodies, including the Department of Planning and Natural Resources (DPNR) and the Environmental Protection Agency (EPA) in creating a restart plan that will address safety and environmental concerns, while allowing our company the opportunity to operate and provide economic growth opportunities for all Virgin Islanders.

The St. Croix Energy group looks forward to more and new engagement with the local community in the coming weeks, as we begin to roll out our senior leadership team and expound on our new business plan for the facility. This team of experienced industry, business and environmental professionals will shepherd the Refinery through the transitional and restart phases, back to a fully safe, operational facility.

SCE seeks to operate as a sustainability driven and environmentally conscientious energy solutions provider, committed to responsible, values and science-based stewardship of the resources under our care. SCE partners continue to be interested in what is best for the territory and being good fiduciaries of the natural resources of the Virgin Islands, which is ultimately an environmentally safe restart and enhanced, wise-use of the property.

###

**<u>PROPOSED ORDER</u>**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC,** *et al.*,[1] | **CASE NO.: 21-32351 (DRJ)** |
| Debtors. | **(Jointly Administered)** |

**ORDER GRANTING BAY LTD.'S EMERGENCY MOTION TO DELAY THE DECEMBER 7 SALE HEARING TO PERMIT LIMITED DISCOVERY**

**[Ref. Doc. No. ___]**

This matter coming before this Court upon the motion (the "Motion")[2] filed by Bay for entry of an order (this "Order") to delay the Sale Hearing scheduled for December 7, 2021 pending Bay's discovery requests which were made on November 30, 2021, as further described in the Motion; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Sale Hearing scheduled for December 7, 2021 is postponed pending the Debtors' response and compliance to Bay's informal and formal discovery requests.

2.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated:  December __, 2021

_____

THE HONORABLE DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| LIMETREE BAY SERVICES, LLC, *et al.*,[1] | CASE NO.: 21-32351 (DRJ) |
| Debtors. | (Jointly Administered) |

## CERTIFICATE OF SERVICE OF DISCOVERY ON DEBTORS

The undersigned hereby certifies that on December 1, 2021, a true and correct copy of *Bay, Ltd.'s Notice of Deposition of Limetree Bay Services, et al. and Subpoena Duces Tecum,* attached hereto as **Exhibit A,** was served by electronic mail via the Court's ECF system to all parties authorized to receive electronic notice in this case and by email to counsel for the Debtor.

Respectfully submitted this 1st day of December 2021.

By: */s/ Patrick L. Hughes*
Patrick L. Hughes
Texas State Bar No. 10227300
Martha Wyrick
Texas State Bar No. 24101606
**HAYNES AND BOONE, LLP**
1221 McKinney, Suite 4000
Houston, TX 77010
Telephone No.: (713) 547-2000
Facsimile No.: (713) 547-2600
Email: patrick.hughes@haynesboone.com
Email: martha.wyrick@haynesboone.com

and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

Butch Boyd
Texas Bar No. 00783694
Jeremy Stone
Texas Bar No. 24013577
**BUTCH BOYD LAW FIRM**
2905 Sackett Street
Houston, TX 77098
Telephone No.: (713) 589-8477
Facsimile No.: (713) 589-8563
Email: butchboyd@butchboydlawfirm.com
Email: jeremystone@butchboydlawfirm.com

**COUNSEL FOR BAY LTD.**

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC,** *et al.,*[1] | **CASE NO.: 21-32351 (DRJ)** |
| **Debtors.** | **(Jointly Administered)** |

**BAY, LTD.'S NOTICE OF DEPOSITION OF LIMETREE BAY**
**SERVICES, ET AL. AND SUBPOENA DUCES TECUM**

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(6), Bay, Ltd. will take the

deposition upon oral examination of the Corporate Representative(s) of Limetree Bay Services,

LLC, Limetree Bay Refining Holdings, LLC, Limetree Bay Refining Holdings II, LLC, Limetree

Bay Refining, LLC, Limetree Bay Refining Operating, LLC, and Limetree Bay Refining

Marketing, LLC (collectively referred to as "Debtors" or "Limetree") who are knowledgeable in

topics described in **Exhibit A**.

The deposition will commence at 10:30 AM EST (9:30 AM CST) on December 6, 2021,

or at a time, date, and place as the parties mutually agree in writing.  Pursuant to Fed. R. Civ. P.

30(b)(6), Limetree is directed to designate one or more officers, directors, managing agents, or

other persons to testify on its behalf and on behalf of its affiliated companies concerning the subject

matters described on **Exhibit A**, attached hereto.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

1

By stipulation of the parties and pursuant to Fed. R. Civ. P. 30(b)(4), the deposition may be conducted via the Zoom webcast platform, or similar method.  Bay, Ltd. will provide a link and password to access the web conference in advance of the deposition. The deposition will be taken before a notary public or other officer authorized to administer oaths, who will appear remotely via the web conference. The deposition will be taken upon oral examination and shall continue from day to day until completed. The deposition may be videotaped pursuant to Federal Rules of Civil Procedure.

Deponents are requested to produce all of the documents described in the Subpoena Duces Tecum attached hereto as **Exhibit B**.  The documents should be produced in electronic form no later than 72 hours before the deposition commences.

Respectfully Submitted,

Dated:     December 1, 2021

*/s/ Patrick L. Hughes*
Patrick L. Hughes
Texas State Bar No. 10227300
Martha Wyrick
Texas State Bar No. 24101606
**HAYNES AND BOONE, LLP**
1221 McKinney, Suite 4000
Houston, TX 77010
Telephone No.: (713) 547-2000
Facsimile No.: (713) 547-2600
Email: patrick.hughes@haynesboone.com
Email: martha.wyrick@haynesboone.com

and

2

Butch Boyd
Texas Bar No. 00783694
Jeremy Stone
Texas Bar No. 24013577
**BUTCH BOYD LAW FIRM**
2905 Sackett Street
Houston, TX 77098
Telephone No.: (713) 589-8477
Facsimile No.: (713) 589-8563
Email: butchboyd@butchboydlawfirm.com
Email: jeremystone@butchboydlawfirm.com

**COUNSEL FOR BAY, LTD.**

3

## DEFINITIONS FOR EXHIBITS A AND B

A.  "**Debtors**" or "**Limetree**" means Limetree Bay Services, LLC, a Delaware limited liability company ("**LBS**"), Limetree Bay Refining Holdings, LLC, a United States Virgin Islands limited liability company ("**LBRH**"), Limetree Bay Refining Holdings II, LLC, a United States Virgin Islands limited liability company ("**LBRH II**"), Limetree Bay Refining, LLC, a United States Virgin Islands limited liability company ("**LBR**"), Limetree Bay Refining Operating, LLC, a United States Virgin Islands limited liability company ("**LBRO**"), and Limetree Bay Refining Marketing, LLC, a United States Virgin Islands limited liability company ("**LBRM**").  This definition includes the Debtors' representatives, agents, and persons acting on its behalf.

B.  "**Communication**" means any transmission or receipt of facts, information, opinions, or thought, whether conveyed in writing, orally, electronically, or by any other means, including written memorializations or oral communications.

C.  "**Document**" shall mean the complete original and any non-identical copy (whether different from the original because of notations on the copy or otherwise), regardless of origin or location, of any written, typed, printed, transcribed, filmed, punched, or graphic matter of every type and description, however and by whomever prepared, produced, disseminated or made, including but not limited to any advertisement, book, pamphlet, periodical, contract, correspondence, file, invoice, memorandum, note, telegram, report, record, handwritten note, working paper, routing slip, chart, graph, paper, index, map, tabulation, manual, guide, outline, script, abstract, history, calendar, diary, agenda, minute, code book or label. "**Document**" shall also include all documents, materials, and information, including Electronically Stored Information, within the meaning of the Federal Rules of Civil Procedure.

D.  "**Electronically Stored Information**" **or** "**ESI**" shall mean the complete original and any non-identical copy (whether different from the original because of notations, different metadata, or otherwise), regardless of origin or location, of any writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any electronic medium from which information can be obtained either directly or, if necessary, after translation by you into a reasonably usable form. This includes, but is not limited to, electronic mail, instant messaging, videoconferencing, and other electronic correspondence (whether active,archived, or in a deleted items folder), word processing files, spreadsheets, databases, and video and sound recordings, whether stored on: cards; magnetic or electronic tapes; disks; computer harddrives, network shares or servers, or other drives; cloud-based platforms; cell phones, PDAs, computer tablets, or other mobile devices; or other storage media.

E.  "**Relate to,**" "**related to,**" "**relating to,**" **and** "**regarding**" mean in whole or in part, concerning, reflecting, alluding to, mentioning, regarding, discussing, bearing upon, commenting on, constituting, pertaining to, demonstrating, describing, depicting, directly or indirectly relating to, summarizing, containing, embodying, showing, comprising, evidencing, refuting, contradicting, analyzing, identifying, stating, dealing with, and/or supporting.

4

F.  **"Include" and "Including"** shall mean including without limitation.

G.  **"Communications"** means any transmission of information from one person to another, regardless of the medium of communication, and includes without limitation, both oral and written communications. A document or thing transferred, whether temporarily or permanently, from one person to another is deemed a communication between such persons whether or not such a document or thing was prepared or created by the transferor or addressed to the transferee.

H.  **"St. Croix"** means **"St. Croix Energy LLLP"** and its representatives, agents, and persons acting on its behalf.

## INSTRUCTIONS FOR EXHIBITS A AND B

1.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this request all responses that might otherwise be construed to be outside of its scope.

2.  "All" means any and all and shall be construed to include the term "each," and "each" shall be construed to include "all."

3.  The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

4.  The use of the singular form of any word shall include the plural and vice versa.

5.  The disjunctive includes the conjunctive and vice versa as necessary to bring within the scope of these Topics all responses that might otherwise be construed to be outside of its scope.

6.  The use of any gender shall include all others as appropriate in context.

7.  To the extent not otherwise defined or specifically limited herein, all words used shall be given their most expansive and inclusive definition consistent with the context of the sentence in which they are used, and each request is to be construed independently and not by reference to any other request for purposes of limiting the scope of the request.

8.  For purpose of this deposition, unless otherwise specified, the applicable time period is September 1, 2021 to present.[2]

---

[2] This date is shortly before St. Croix filed its notice of appearance in the bankruptcy cases.

5

## INSTRUCTIONS FOR REQUEST FOR ELECTRONIC AND MAGNETIC DATA

Electronically stored documents will be produced as electronically Bates-numbered in single page TIFF images with appropriate document breaks, corresponding load file for the images, and generic delimited data file for TIFF and corresponding metadata. The following metadata or fielded information, to the extent applicable to be produced electronic document, will be included in the generic delimited data file:

1. Beginning Production Number
2. Ending Production Number
3. Parent ID (if applicable)
4. Attachment ID (if applicable)
5. File Type (e.g., Word, Excel, email, etc.)
6. Last Modified Date (if collected from source system or custodian, rather than image)
7. Last Modified Time (if collected from source system or custodian, rather than image)
8. Sent Date
9. Sent Time
10. Document Author or From
11. To
12. cc
13. BCC
14. Subject Line (emails only)
15. Custodian or Source
16. Attachment Count
17. Native File Link
18. Fil e Na1ne
19. File path/folder
20. Received Date
21. Full text
22. De-duplicated instances (by full path)
23. Redacted flag
24. Embedded content flag

Documents that should not be rendered to TIFF images (i.e., Excel files, multimedia files, voice mail, sound files, databases, etc.) will be placed as native files in a separate folder. The files will be named by pre-pending a Bates number to the original file name. A confidentiality designation can also be inserted into the file name. A slip sheet will be providing containing the Bates number, the native file name, along with the note "Document Provided in Native Format." A link to the relative path of the natively produced document will be included in the metadata load file (Field no 17 in list above). All embedded content shall be provided, including tracked changes, hidden comments, speaker notes, etc.

Emails and their attachments will be referenced to each other in the generic delimited data file, and will be numbered sequentially wherein the attached Bates number follows the parent email Bates number. Emails and their attachments will be designated in the generic delimited data file by the

beginning and ending Bates numbers of the email or individual attachments (Fields nos. 1 and 2 in 9 list above), and those of the entire family (Fields nos. 3 and 4 in list above).

Multipage OCR or extracted text (i.e., TXT files) will be named to the corresponding TIFF images and placed in a separate folder named TEXT.

The searchable content of electronically stored documents will be extracted from the source documents, e.g., emails and their attachments, and will not be generated through optical character recognition (OCR) of the corresponding TIFF images, with the exception of redacted documents, which may be OCR-ed. Redacted documents will contain the searchable endorsement "Redacted".

## EXHIBIT A – TOPICS FOR EXAMINATION

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Limetree Bay Services, LLC, Limetree Bay Refining Holdings, LLC, Limetree Bay Refining Holdings II, LLC, Limetree Bay Refining, LLC, Limetree Bay Refining Operating, LLC, and Limetree Bay Refining Marketing, LLC (collectively referred to as "Debtors" or  "Limetree") must designate one or more of its officers, directors, managing agents, or other persons to testify on its behalf at deposition about all information known or reasonably available to the Company on the matters set forth below.

1. The auction conducted in the bankruptcy case jointly administered at number 21-32351, including the bid process and all related documents.

2. The negotiations and communications with St. Croix, including all related documents (including but not limited to the Asset Purchase Agreement, schedules and exhibits to the Asset Purchase Agreement, the Transfer Services Agreement, and the Refinery Operating Agreement).

3. The communications and interactions with the U.S. Environmental Protection Agency (EPA) and any of its representatives regarding the St. Croix bid and the St. Croix plans for restarting or dismantling the Debtors' refinery.

4. The communications and interactions with Limetree Bay Terminals and its affiliates and any representatives or agents regarding the St. Croix bid and the St. Croix plans for restarting or dismantling the Debtors' refinery.

5. The communications and interactions with any other creditor of the Debtors and any of its representatives regarding the St. Croix bid and the St. Croix plans for restarting or dismantling the Debtors' refinery.

6. The communications and interactions with the Government of the U.S. Virgin Islands and any of its representatives regarding the St. Croix bid and the St. Croix plans for restarting or dismantling the Debtors' refinery.

7. The due diligence conducted by the Debtors into St. Croix's background, financial capabilities, and ability to procure regulatory and other government approvals, to procure additional financing as needed, and to otherwise restart and operate the refinery.

8. The due diligence conducted by the Debtors into the financial resources and wherewithal of St. Croix to close (i) the transactions set forth in its bid; (ii) to procure approvals as necessary to restart the refinery; and (iii) to otherwise procure financing as necessary after closing this transaction to restart and operate the refinery.

9. The due diligence conducted by the Debtors of St. Croix's management and owners.

10. All analyses of the bids received by the Debtors which are the subject of the sale hearing.

11.     The process, materials, analyses and considerations provided to the decision maker(s) of the Debtors in selecting the St. Croix bid as the preferred and winning bid.

## EXHIBIT B - DOCUMENTS TO BE PRODUCED –

1. Any and all communications with St. Croix.

2. Any and all communications with the U.S. Environmental Protection Agency (EPA) regarding St. Croix's plan to restart the refinery.

3. Any and all communications with Limetree Bay Terminals, LLC and its affiliates and any representatives or agents thereof regarding the St. Croix bid including, but not limited to the shared services agreement.

4. Any and all communications with the Government of the U.S. Virgin Islands and any representatives or agents thereof regarding the St. Croix bid including, but not limited to the refinery operating agreement.

5. Any and all communications with any advisor (financial, legal, or otherwise) for St. Croix.

6. Any and all documents including but not limited to drafts and redlines of the proposed asset purchase agreement, any transition services agreement, any refinery operating agreement, any schedules or exhibits to the foregoing documents, or any other agreement regarding the St. Croix bid.

7. The transcript of the auction.

8. The resolutions, minutes, board presentations, and other documents generated regarding any review or approval of bids for the Debtors' assets as set for approval at the sale hearing.

9. Documents including analyses or proposals relating to any St. Croix future liquidation or dismantlement of the refinery at any time.

10. The schedules and exhibits to the St. Croix asset purchase agreement.

11. The current version of the transition services agreement.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 1, 2021, a true and correct copy of the foregoing was filed with the Court using the CM/ECF System, which will provide notice of such filing to all parties requesting such notice.


Dated:   December 1, 2021.                    */s/ Patrick Hughes*                         
                                              Patrick Hughes, Attorney-in-Charge

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| IN RE: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*,**[1] | **CASE NO.: 21-32351** |
| **Debtors.** | **(Jointly Administered)** |

### DEBTORS' WITNESS AND
### <u>EXHIBIT LIST FOR DECEMBER 7, 2021 HEARING</u>

Limetree Bay Services, LLC and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively the "**Debtors**") submit the following Exhibit and Witness List for the hearing at **4:00 p.m. Central Time on December 7, 2021**, to consider the sale referenced in the *Debtors' Emergency Motion for Entry of Order: (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief* (Doc. Nos. 191, 830) (the "**Sale Motion**") and the *Debtors' Motion for Entry of an Order (I) Authorizing and Approving the Settlement Agreement By and Among The Debtors, Official Committee of Unsecured Creditors, and BP Products North America Inc.* (Doc. No. 837) (the "**9019 Motion**") filed in the above-captioned bankruptcy case (the "**Bankruptcy Case**").

### <u>WITNESS LIST</u>

1.  Mark Shapiro, Chief Restructuring Officer

2.  Michael O'Hara, Managing Director, Jefferies LLC

3.  Any witness listed or called by any party.

4.  Any witness required for rebuttal.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC.(1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

4856-3213-7477.1

**DEBTORS' EXHIBIT LIST**

| Ex. # | Description | Offered | Objection | Admitted/ Not Admitted | Disposition |
|---|---|---|---|---|---|
| 1 | Transcript of Auction on November 18, 2021 (to be filed) | 12/7/2021 | | | |
| | Any document or pleading filed in the Bankruptcy Case. | | | | |
| | Any exhibit necessary for impeachment and/or rebuttal purposes. | | | | |
| | Any exhibit identified or offered by any other party. | | | | |

Debtors reserve the right to modify, amend or supplement this Exhibit and Witness List at any time. Debtors reserve the right to ask the Court to take judicial notice of pleadings, transcripts and/or documents filed in or in connection with the Bankruptcy Case, to offer rebuttal exhibits, and to supplement or amend this Witness and Exhibit List prior to the hearing. Designation of any exhibit above does not waive any objections Debtors may have to any exhibit listed on any other party's exhibit list.

Respectfully submitted this 3rd day of December 2021.

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
So. Dist. Fed ID 903144
**Jimmy D. Parrish, Esq.**
So. Dist. Fed ID 2687598
200 S. Orange Avenue
Suite 2300
Orlando, FL 32801
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
E-mail: egreen@bakerlaw.com
E-mail: jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com
*(Admitted Pro Hac Vice)*

*Counsel for the Debtors and Debtors in Possession*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on December 3, 2021, a true copy of the forgoing was filed with the Court using the CM/ECF System, which will provide notice of such filing to all parties requesting such notice.

*/s/ Elizabeth A. Green*
Elizabeth A. Green

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| LIMETREE BAY SERVICES, LLC, et al.,[1] | CASE NO.: 21-32351 |
| Debtors. | (Jointly Administered) |

**BAY, LTD.'S**
**WITNESS AND EXHIBIT LIST**
**FOR DEBTORS EMERGENCY SALE HEARING ON**
**DECEMBER 7, 2021 AT  P.M. (CENTRAL TIME)[2]**

Bay, Ltd. ("Bay") files this *Bay, Ltd.'s Witness and Exhibit List for Emergency Sale Hearing on December 7, 2021 at 4:00 p.m. (Central Time)* (the "Witness and Exhibit List") to consider the sale referenced in the *Debtors' Emergency Motion for Entry of Order: (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief* [Docket No. 191] (the "Motion") and with a full reservation of rights to supplement this list further pending provision of documents and discovery requests which remain pending, Bay respectfully designates the following initial witnesses and exhibits:

**WITNESSES**

1.    Peter A. Wisniewski

2.    Mark Shapiro

3.    Steven J. Pully

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] This Witness and Exhibit List is submitted notwithstanding the sale objection deadline is now December 6, 2021 at 5:00 p.m. Central Time.  Bay reserves the right to update, supplement and/or amend this Witness and Exhibit List prior to the deadline for objections.

4.      Michael O'Hara

5.      Any witness designated by any other party; and

6.      Any rebuttal or impeachment witnesses.

## **EXHIBITS**

| Ex. No. | Description | Mkd. | Off. | Obj. | Adm. | Date |
|---|---|---|---|---|---|---|
| 1. | Consent Decree filed on 6-7-11 in case styled *United States of America, et al v. Hovensa L.L.C.*, Case No. 11-cv-00006 in the District Court of the Virgin Islands, Division of St. Croix | | | | | |
| 2. | Refinery Operating Agreement with LOC and related documents: [BDR document indicates Confidential][3] | | | | | |
| | A – Letter of Credit dated 1-11-16 issued by Citibank, N.A. for $50 million | | | | | |
| | B – Letter dated April 2019 RE – Financial Assurance under Refinery Operating Agreement and Amended and Restated Terminal Operating Agreement | | | | | |
| | C – "Appendix A" – Amended and Restated Terminal Operating Agreement by and Among Virgin Islands and Limetree Bay Terminals, LLC dated 7-2-18 | | | | | |
| | D – "Appendix B" – Refinery Operating Agreement by and Among Virgin Islands and Limetree Bay Refining, LLC dated 7-2-18 | | | | | |
| 3. | Joint Stipulation dated 7-12-21 filed in case styled *United States of America v. Limetree Bay Refining, LLC and Limetree Bay Terminals, LLC*, Case No. Civ. A. No. 1:21-cv-00264, in the District Court of the Virgin Islands, Division of St. Croix | | | | | |
| 4. | Schedules filed on 9-7-21 for Limetree bay Refining Marketing, LLC, Case No. 21-32356 [Docket No. 550] | | | | | |
| 5. | Schedules filed on 9-7-21 for Limetree bay Refining, LLC, Case No. 21-32356 [Docket No. 546] | | | | | |

---

[3] For documents in BDR, it is unclear whether these are subject to confidentiality. Bay submits documents in this list not confidential and be freely available on docket.  A request to this effect is made to Debtors.

| Ex. No. | Description | Mkd. | Off. | Obj. | Adm. | Date |
|---------|-------------|------|------|------|------|------|
| 6. | List of Personal Property Provided to Bay, Ltd. of assets to be sold [BDR document indicates confidential] | | | | | |
| 7. | *Debtors' Motion to (I) Approve Sales of Goods Free and Clear of All Claims, Liens, and Encumbrances by NRI Industrial Sales, LLC and (II) Approve NRI's Commission for Sales* [Docket No. 701] | | | | | |
| 8. | Summary of Overlap on Exhibits 6 and 7 | | | | | |
| 9. | Letter dated 9-24-21 from US Environmental Protection Agency to All Potential Buyers of Limetree Bay Refinery | | | | | |
| 10. | Email dated 11-2-21 from B. Salehi to M. Shapiro and F. Cottrell RE: Bay Limited Bid Transmittal Letter, Revised APA, etc. referencing attachments | | | | | |
| 11. | Email dated 11-10-21 from F. Cottrell to P. Hughes et al RE: additional categories, we are courting specialized groups interested in these and not designating a stalker on this | | | | | |
| 12. | Email dated 11-14-21 from J. Esmont to F. Cottrell, P. Hughes, J. Rose, E. Green, Mark Shapiro and M. Delaney RE: Attaching draft APA comments from Debtors | | | | | |
| 13. | Audio recording of hearing held on 11-15-21 [Filed at Docket No. 772] | | | | | |
| 14. | Email dated 11-17-21 from B. Salehi to M. Shapiro and F. Cottrell RE: Updated Bay Limited Bid Transmittal Letter, Revised APA, etc. referencing attachments to respond to 11/14/21 comments | | | | | |
| 15. | Transcript of Auction held on 11-18-21 [Debtors have not yet provided despite request on 11/30/21] | | | | | |
| 16. | Press Release from St. Croix Energy dated 11-18-21 – "St. Croix Energy, LLLP Wins Auction of Limetree Bay Refining Assets" | | | | | |
| 17. | *The Terminal Entities' Statement and Reservation of Rights Concerning Proposed Sale* (Filed By the Terminal Entities, as defined therein) at Docket 822 | | | | | |
| 18. | Intentionally Omitted See Exhibit 32 | | | | | |

| Ex. No. | Description | Mkd. | Off. | Obj. | Adm. | Date |
|---------|-------------|------|------|------|------|------|
| 19. | Presentation [including drafts and emails regarding contents and recommendations] to the Debtors' Board regarding the bids [Debtors have not yet provided despite request on 12/1/21] | | | | | |
| 20. | Debtors Board minutes and resolution regarding the sale and approvals to SCE [Debtors have not yet provided despite request on 12/1/21] | | | | | |
| 21. | Email dated mid day 11-30-21 from P. Hughes to J. Rose and E. Green RE: Concerns over delays and lack of information on post auction deadlines, the status of bids and lack of detailed information | | | | | |
| 22. | *Notice of (I) Designation of Winning Bid and Back-Up Bids and (II) Sixth Notice of Extension of Milestones and Bid Procedures Deadlines* filed in the evening on 11-30-21 with St. Croix APA but lacking (i) schedules to APA and (ii) required Transition Services Agreement for bid to be effective [Docket No. 829] | | | | | |
| 23. | St. Croix APA schedules to APA [Debtors have not yet provided despite request on 12/1/21] | | | | | |
| 24. | St. Croix's required Transition Services Agreement [Debtors have not yet provided despite request on 12/1/21] | | | | | |
| 25. | The due diligence documents conducted by or provided to the Debtors into the financial resources and wherewithal of St. Croix to close (i) the transactions set forth in its bid; (ii) to procure approvals as necessary to restart the refinery; and (iii) to otherwise procure financing as necessary after closing this transaction to restart and operate the refinery. [Debtors have not yet provided despite request on 12/1/21] | | | | | |
| 26. | The due diligence conducted by or provided to the Debtors into St. Croix's background, financial capabilities, and ability to procure regulatory and other government approvals, to procure additional financing as needed, and to otherwise restart and operate the refinery.  [Debtors have not yet provided despite request on 12/1/21] | | | | | |

| Ex. No. | Description | Mkd. | Off. | Obj. | Adm. | Date |
|---|---|---|---|---|---|---|
| 27. | Any and all communications with the U.S. Environmental Protection Agency (EPA) regarding St. Croix's plan to restart the refinery [Debtors have not yet provided despite request on 12/1/21] | | | | | |
| 28. | Documents including analyses or proposals relating to any St. Croix future liquidation or dismantlement of the refinery at any time. [Debtors have not yet provided despite request on 12/1/21] | | | | | |
| 29. | *Notice of Emergency Sale Hearing on December 7, 2021 at 4:00 p.m. Central Time* filed on 11-30-21 [Docket No. 830] | | | | | |
| 30. | Email dated 11-3-21 from B. Salehi to M. Shapiro and F. Cottrell RE: Supplemental Info per RFP and Schedule 1.2(i) | | | | | |
| 31. | Limetree Bay Refinery Actual and Projected Results of Operations and Cash Flows [BDR document indicates confidential] | | | | | |
| 32. | Shared Services Systems Agreement by and between Limetree Bay Terminals, LLC and Limetree Bay Refining, LLC, and acknowledged by, Limetree Bay Refining Marketing, LLC dated as of November 30, 2018 [BDR document indicates confidential] | | | | | |
| 33. | Any exhibit designated by any other party | | | | | |
| 34. | Any pleading or other document filed with the Court on the docket of the above-captioned chapter 11 cases | | | | | |
| 35. | Any exhibit necessary to rebut the evidence or testimony of any witness offered or designated by any other party | | | | | |

Bay reserves the right to ask the Court to take judicial notice of pleadings and transcripts and/or documents filed in or in connection with the Debtors' bankruptcy cases, to offer rebuttal exhibits, and to supplement or amend this Witness and Exhibit List at any time prior to the Sale Hearing.  Designation of any exhibit above does not waive any objections Bay may have to any exhibit listed on any other party's exhibit list.

5

Dated:  December 3, 2021

Respectfully submitted,

By: */s/ Patrick L. Hughes*

| | |
|---|---|
| Patrick L. Hughes | Butch Boyd |
| Texas Bar No. 10227300 | Texas Bar No. 00783694 |
| Martha Wyrick | Jeremy Stone |
| Texas State Bar No. 24101606 | Texas Bar No. 24013577 |
| **HAYNES AND BOONE, LLP** | **BUTCH BOYD LAW FIRM** |
| 1221 McKinney Street, Suite 4000 | 2905 Sackett Street |
| Houston, Texas 77010 | Houston, Texas 77098 |
| Telephone.: (713) 547-2000 | Telephone: (713) 589-8477 |
| Facsimile: (713) 547-2600 | Facsimile: (713) 589-8563 |
| Email: patrick.hughes@haynesboone.com | Email: butchboyd@butchboydlawfirm.com |
| Email: martha.wyrick@haynesboone.com | Email: jeremystone@butchboydlawfirm.com |

**COUNSEL FOR BAY, LTD**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served by electronic transmission via the Court's ECF system to all parties authorized to receive electronic notice in this case on December 3, 2021.

<u>*/s/ Patrick L. Hughes*</u>
Patrick L. Hughes

# EXHIBIT 1

# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and | ) | |
| UNITED STATES VIRGIN ISLANDS | ) | |
| | ) | |
| Plaintiffs, | ) | CIV. NO.: 1:11-cv-00006 |
| v. | ) | |
| | ) | |
| HOVENSA L.L.C., | ) | |
| | ) | |
| Defendant. | ) | |

## **CONSENT DECREE**

# TABLE OF CONTENTS

I.  JURISDICTION AND VENUE ................................................................. - 6 -

II.  APPLICABILITY AND BINDING EFFECT ........................................... - 7 -

III.  OBJECTIVES ........................................................................................... - 8 -

IV.  DEFINITIONS ........................................................................................... - 8 -

V.  AFFIRMATIVE RELIEF/ENVIRONMENTAL PROJECTS .................. - 16 -

    A.  Control of NO$_x$ Emissions from the FCCU. .................................... - 16 -

    B.  Control of SO$_2$ Emissions from the FCCU. .................................... - 17 -

    C.  Control of PM Emissions from the FCCU. ....................................... - 18 -

    D.  Control of CO Emissions from the FCCU. ....................................... - 19 -

    E.  NSPS Subparts A and J Applicability to the FCCU Catalyst Regenerator ....... - 20 -

    F.  NO$_x$ Emission Reductions from Heaters, Boilers, Generating Turbines, and Compressor Engines .............................................................. - 21 -

    G.  SO$_2$ Emissions Reductions from, and NSPS Applicability to, Heaters, Boilers and Generating Turbines. ...................................................... - 28 -

    H.  Sulfur in Fuel Restrictions for Oil Burning ..................................... - 29 -

    I.  Sulfur Recovery Plants ..................................................................... - 32 -

    J.  Flaring Devices – NSPS Applicability .............................................. - 39 -

    K.  Control of Acid Gas Flaring Incidents and Tail Gas Incidents ......... - 41 -

    L.  Control of Hydrocarbon Flaring Incidents ....................................... - 55 -

    M.  Stipulated Penalties Under This Section ........................................... - 55 -

    N.  Certification ...................................................................................... - 58 -

    O.  CERCLA/EPCRA .............................................................................. - 58 -

    P.  Benzene Waste NESHAP Program .................................................... - 59 -

    Q.  NSPS QQQ ........................................................................................ - 74 -

    R.  Leak Detection and Repair ("LDAR") Program ............................... - 74 -

VI.  PERMITTING ........................................................................................... - 91 -

VII.  EMISSION CREDIT GENERATION ...................................................... - 92 -

VIII.  ADDITIONAL INJUNCTIVE RELIEF .................................................... - 95 -

    A.  Delayed Coker Unit .......................................................................... - 95 -

    B.  NSPS Applicability: Boilers and Generating Turbines ..................... - 96 -

IX.  TERRITORIAL SUPPLEMENTAL ENVIRONMENTAL PROJECT ....... - 96 -

i

X.      REPORTING AND RECORDKEEPING ................................................................ - 101 -

XI.     CIVIL PENALTY .................................................................................................. - 105 -

XII.    STIPULATED PENALTIES ................................................................................... - 106 -

        A.      Requirements for NO$_x$ Emissions Reductions from the FCCU ...................... - 107 -

        B.      Requirements for SO$_2$ Emissions Control from the FCCU ............................ - 107 -

        C.      Requirements for PM Emissions Control from the FCCU ............................. - 107 -

        D.      Requirements for CO Emissions Control from the FCCU ............................. - 107 -

        E.      Requirements Related to NSPS Applicability to FCCU Catalyst
                Regenerator. ................................................................................................. - 108 -

        F.      Requirements for NO$_x$ Emission Reductions from Heaters, Boilers,
                Generating Turbines and Compressor Engines ............................................. - 108 -

        G.      Requirements for SO$_2$ Emissions Reductions from Heaters, Boilers and
                Generating Turbines. ..................................................................................... - 109 -

        H.      Requirements for Sulfur Recovery Plants ...................................................... - 109 -

        I.      Requirements for Flaring Devices ................................................................. - 110 -

        J.      Requirements for Benzene Waste NESHAP Program ................................... - 111 -

        K.      Requirements for Leak Detection and Repair Program ................................ - 112 -

        L.      Requirements to Incorporate Consent Decree Requirements into
                Federally-Enforceable Permits ..................................................................... - 116 -

        M.      Requirements Related to Territorial Supplemental Environmental Project ... - 116 -

        N.      Requirements for Monitoring, Reporting and Recordkeeping ....................... - 116 -

        O.      Requirements to Pay Civil Penalty ............................................................... - 117 -

        P.      Requirement to Pay Stipulated Penalties ...................................................... - 118 -

        Q.      Requirements for Coker ................................................................................ - 118 -

        R.      General Provisions Related to Stipulated Penalties ...................................... - 118 -

XIII.   INTEREST ............................................................................................................. - 120 -

XIV.    RIGHT OF ENTRY ............................................................................................... - 120 -

XV.     FORCE MAJEURE ............................................................................................... - 121 -

XVI.    RETENTION OF JURISDICTION/DISPUTE RESOLUTION ............................... - 124 -

XVII.   EFFECT OF SETTLEMENT ................................................................................. - 126 -

XVIII.  GENERAL PROVISIONS ..................................................................................... - 138 -

XIX.    TERMINATION .................................................................................................... - 145 -

XX.     SIGNATORIES ..................................................................................................... - 149 -



**TABLE OF APPENDICES**

Appendix A    List of Heaters and Boilers Greater Than 40 mmBTU Per Hour, Generating Turbines and Compressor Engines

Appendix B    Predictive Emissions Monitoring System Requirements

Appendix C    NSPS Subparts J or Ja Compliance Schedule for Listed Fuel Gas Combustion Devices (Other than Flaring Devices)

Appendix D    List of Flaring Devices Subject to NSPS Subparts J/Ja

Appendix E    HOVENSA'S LDAR and BWON Training Program Summary

Appendix F    Method 21 Monitoring Locations for API Separators 1, 2 and 3

Appendix G    Valve Preventative Leak Maintenance Procedure Workflow Diagram

Appendix H    Additional Coker Project Injunctive Relief

Appendix I    Map of HOVENSA L.L.C.

WHEREAS, Plaintiff, the United States of America ("Plaintiff" or "United States"), by the authority of the Attorney General of the United States and through its undersigned counsel, acting at the request and on behalf of the United States Environmental Protection Agency ("EPA"), has simultaneously filed a Complaint against and lodged this Consent Decree against Defendant, HOVENSA L.L.C. ("HOVENSA"), for alleged environmental violations at the HOVENSA petroleum refinery in St. Croix, U.S. Virgin Islands ("Refinery");

WHEREAS, the United States alleges that HOVENSA has violated and/or continues to violate the following statutory and regulatory provisions of the Clean Air Act:

1)    Prevention of Significant Deterioration ("PSD") requirements found at Part C of Subchapter I of the Clean Air Act ("CAA" or the "Act"), 42 U.S.C. § 7475, and the regulations promulgated thereunder at 40 C.F.R. § 52.21 (the "PSD Rules");

2)    New Source Performance Standards ("NSPS") found at 40 C.F.R. Part 60, Subparts A and J promulgated pursuant to Section 111 of the Act, 42 U.S.C. § 7411 ("Refinery NSPS Regulations"), for sulfur recovery plants, fuel gas combustion devices, and fluid catalytic cracking unit catalyst regenerators;

3)    Leak Detection and Repair ("LDAR") requirements promulgated pursuant to Sections 111 and 112 of the Act, 42 U.S.C. §§ 7411 and 7412, and found at 40 C.F.R. Part 60 Subparts VV and GGG, 40 C.F.R. Part 61, Subparts J and V; and 40 C.F.R. Part 63, Subparts F, H, and CC ("LDAR Regulations");

4)    National Emission Standards for Hazardous Air Pollutants ("NESHAP") for Benzene Waste Operations promulgated pursuant to Section 112(e) of the Act, 42 U.S.C. § 7412(e), and found at 40 C.F.R. Part 61, Subpart FF ("Benzene Waste NESHAP Regulations");

- 1 -



WHEREAS, the United States also specifically alleges that, upon information and belief, HOVENSA has been and/or continues to be in violation of other territorial rules, regulations, and permits adopted or issued by the United States Virgin Islands to the extent that such rules, regulations, and permits implement, adopt, or incorporate the above-described federal requirements;

WHEREAS, the United States Virgin Islands ("Virgin Islands"), has sought to intervene in this matter alleging violations of its applicable State Implementation Plan ("SIP") provisions and/or other territorial rules, regulations, and permits incorporating and implementing the foregoing federal requirements;

WHEREAS, HOVENSA denies that it has violated and/or continues to violate the foregoing statutory and regulatory requirements, SIP provisions, and other territorial rules, regulations, and permits incorporating and implementing the foregoing federal requirements, and maintains that it has been and remains in compliance with all applicable statutes, regulations, and permits and is not liable for civil penalties and injunctive relief as alleged in the Complaint;

WHEREAS, the United States is engaged in a nationwide federal strategy for achieving cooperative agreements with U.S. petroleum refineries to achieve across-the-board reductions in emissions ("Global Settlement Strategy");

WHEREAS, HOVENSA consents to the simultaneous filing of the Complaint and lodging of this Consent Decree, despite its denial of the allegations in the Complaint, to accomplish its objective of cooperatively reconciling the goals of the United States, the Virgin Islands and HOVENSA under the Clean Air Act and the corollary territorial statute, and therefore agrees to undertake the installation of air pollution control equipment and

enhancements to its air pollution management practices to reduce air emissions by participating in the Global Settlement Strategy;

WHEREAS, by entering into this Consent Decree, HOVENSA is committed to proactively resolving environmental concerns relating to its operations;

WHEREAS, the United States and the Virgin Islands anticipate that the affirmative relief and environmental projects identified in Part V (Affirmative Relief/Environmental Projects) will reduce annual emissions from HOVENSA's Refinery by the following amounts: 1) nitrogen oxides by approximately 5,031 tons per year; and 2) sulfur dioxide by approximately 3,460 tons per year.

WHEREAS, with respect to the provisions of Section V.K (Control of Acid Gas Flaring Incidents and Tail Gas Incidents), EPA maintains that "[i]t is the intent of the proposed standard [40 C.F.R. § 60.104] that hydrogen-sulfide-rich gases exiting the amine regenerator [or sour water stripper gases] be directed to an appropriate recovery facility, such as a Claus sulfur plant," see Background Information for Proposed New Source Performance Standards: Asphalt Concrete Plants, Petroleum Refineries, Storage Vessels, Secondary Lead Smelters and Refineries, Brass or Bronze Ingot Production Plants, Iron and Steel Plants, Sewage Treatment Plants, Vol. 1, Main Text at 28;

WHEREAS, EPA further maintains that the failure to direct hydrogen sulfide-rich gases to an appropriate recovery facility – and instead to flare such gases under circumstances that are not sudden or infrequent or that are reasonably preventable – circumvents the purposes and intentions of the standards at 40 C.F.R. Part 60, Subpart J;

WHEREAS, EPA recognizes that "Malfunctions," as defined in Paragraph 10 and 40 C.F.R. § 60.2, of the "Sulfur Recovery Plants" or of "Upstream Process Units" may result in



flaring of "Acid Gas" or "Sour Water Stripper Gas" on occasion, as those terms are defined herein, and that such flaring does not violate 40 C.F.R. § 60.11(d) or NSPS Subpart J or Ja if the owner or operator, to the extent practicable, maintains and operates such units in a manner consistent with good air pollution control practice for minimizing emissions during these periods;

WHEREAS, EPA recognizes that the HOVENSA Refinery is located on an island in the Caribbean Sea which precludes the Refinery's access to natural gas and consequently its ability to limit burning fuel oil in Refinery heaters and boilers;

WHEREAS, as of the Date of Lodging, the Virgin Islands Territory is in attainment for all primary and secondary ambient air quality standards (40 C.F.R. § 81.356);

WHEREAS, Section 325 of the Clean Air Act provides that under certain circumstances an exemption for some requirements of the Act may be provided due to "unique geographical, meteorological, or economic factors of such [Virgin Islands] territory";

WHEREAS, discussions between the Parties have resulted in the settlement embodied in this Consent Decree;

WHEREAS, HOVENSA has waived any applicable federal, territorial or local requirements of statutory notice of the alleged violations;

WHEREAS, by signing this Consent Decree, HOVENSA has waived the right of service of process, and the United States agrees that HOVENSA need not answer the Complaint;

WHEREAS, EPA sought and HOVENSA provided a substantial amount of information concerning Refinery operations and configuration;

WHEREAS, the Parties engaged in numerous meetings over the past six (6) years to resolve this matter;

WHEREAS, the Parties acknowledge the following: (1) shortly before executing the Consent Decree, EPA adopted more stringent National Ambient Air Quality Standards (NAAQS) for $NO_2$ (75 Fed. Reg. 6474 (Feb. 9, 2010)), $SO_2$ (75 Fed. Reg. 35520 (June 22, 2010)), and issued a memorandum regarding demonstrating compliance with PM-2.5 NAAQS (March 23, 2010, "Modeling Procedures for Demonstrating Compliance with PM-2.5 NAAQS"); (2) the more stringent $NO_2$ and $SO_2$ NAAQS and PM-2.5 memorandum may affect HOVENSA's ability to timely obtain permits necessary to meet the compliance schedules set in Paragraphs 23 – 28, 34, 35, 135 (as to Boiler 5), and 136; and (3) the Parties do not intend to require the construction of any project required as a result of the $NO_2$ or $SO_2$ NAAQS or PM-2.5 memorandum to occur concurrently with the construction of projects required by Paragraphs 23 – 28, 34, 35, 135 (as to Boiler 5), and 136.

WHEREAS, notwithstanding the foregoing reservations, the Parties agree that: (i) settlement of the matters set forth in the Complaint is in the best interests of the Parties and the public; and (ii) entry of this Consent Decree without litigation is the most appropriate means of resolving this matter; and

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated at arms' length and in good faith and that this Consent Decree is fair, reasonable, and in the public interest;

WHEREAS, the Virgin Islands Department of Planning and Natural Resources ("VIDPNR") recognizes that, after the Date of Lodging of this Consent Decree, HOVENSA may seek to apply for a revised Permit to Operate (or Title V permit amendment) for the Coker to change, modify or delete certain provisions, in accordance with and as provided by applicable permitting regulations providing for such revisions;

- 5 -



WHEREAS, the Parties agree that nothing in this Consent Decree requires the aggregation of projects undertaken to implement the requirements of this Consent Decree for purposes of NSR/PSD permitting, and that such determinations shall be made in accordance with applicable EPA policy;

NOW THEREFORE, with respect to the matters set forth in the Complaint and in Part XVII (Effect of Settlement), and before the taking of any testimony, without adjudication of any issue of fact or law, and upon the consent and agreement of the Parties to this Consent Decree, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

## I.    JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action and over the Parties pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.  In addition, this Court has jurisdiction over the subject matter of this action pursuant to Sections 113(b) and 167 of the CAA, 42 U.S.C. §§ 7413(b) and 7477.  The United States' Complaint states a claim upon which relief may be granted for injunctive relief and civil penalties against HOVENSA under the Clean Air Act. Authority to bring this suit is vested in the United States Department of Justice by 28 U.S.C. §§ 516 and 519 and Section 305 of the CAA, 42 U.S.C. § 7605.

2.     Venue is proper in the District of the Virgin Islands pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a).  HOVENSA consents to the personal jurisdiction of this Court, waives any objections to venue in this District, and does not object to the Virgin Islands' participation in this action.

3.     Notice of the commencement of this action has been given to the Virgin Islands in accordance with Section 113(a)(1) of the Clean Air Act, 42 U.S.C. § 7413(a)(1), and as required by Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

- 6 -



## II.    **APPLICABILITY AND BINDING EFFECT**

4.    The provisions of this Consent Decree shall apply to the Refinery, and shall be binding upon the United States, the United States Virgin Islands, HOVENSA and its agents, successors, and assigns.

5.    HOVENSA agrees not to contest the validity of this Consent Decree in any subsequent proceeding to implement or enforce its terms. HOVENSA further agrees that, in any action to enforce this Consent Decree, it shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

6.    Effective from the Date of Entry of this Consent Decree until termination pursuant to Part XIX (Termination), HOVENSA agrees that the Refinery is covered by this Consent Decree. Effective from the Date of Entry, HOVENSA shall give written notice of this Consent Decree to any successors in interest to the Refinery prior to the transfer of ownership or operation of any portion of the Refinery and shall provide a copy of this Consent Decree to any successor in interest. HOVENSA shall notify the United States and the Virgin Islands, in accordance with the notice provisions set forth in Paragraph 225 ("Notice"), of any successor in interest at least thirty (30) Days prior to any such transfer.

7.    HOVENSA shall condition any transfer, in whole or in part, of ownership of, operation of, or other interest (exclusive of any non-controlling, non-operational shareholder or membership interest) in the Refinery upon the execution by the transferee of a modification to this Consent Decree, which makes the terms and conditions of this Consent Decree applicable to the transferee. By no earlier than thirty (30) Days after such notice, HOVENSA may file a motion to modify this Consent Decree with the Court to make the terms and conditions of this

- 7 -



Consent Decree applicable to the transferee. HOVENSA shall be released from the obligations and liabilities of this Consent Decree unless the United States or the Virgin Islands opposes the motion and the Court finds that the transferee does not have the financial and technical ability to assume the obligations and liabilities under this Consent Decree.

8.     Except as provided in Paragraph 7, HOVENSA shall be solely responsible for ensuring that performance of the work contemplated under this Consent Decree is undertaken in accordance with the deadlines and requirements contained in this Consent Decree and any appendices hereto. HOVENSA shall provide a copy of the applicable provisions of this Consent Decree to each consulting or contracting firm that is retained to perform work required under this Consent Decree upon execution of any contract relating to such work. Copies of the relevant portions of this Consent Decree do not need to be supplied to firms who are retained solely to supply materials or equipment to satisfy the requirements of this Consent Decree.

### III.     **OBJECTIVES**

9.     It is the purpose of the Parties to this Consent Decree to further the objectives of the Clean Air Act.

### IV.     **DEFINITIONS**

10.     Unless otherwise defined herein, terms used in this Consent Decree shall have the meaning given to those terms in the Clean Air Act and the implementing regulations promulgated thereunder. The following terms used in this Consent Decree shall be defined, solely for purposes of this Consent Decree and the reports and documents submitted pursuant thereto, as follows:

A.     "365-day rolling average" shall mean the average daily emission rate during the preceding 365 Operating Days.

- 8 -



B.    "7-day rolling average" shall mean the average daily emission rate during the preceding seven (7) Operating Days.

C.    "Acid Gas" shall mean any gas that contains hydrogen sulfide and is generated at a refinery by the regeneration of an amine scrubber solution but does not include Tail Gas.

D.    "Acid Gas Flaring" or "AG Flaring" shall mean the combustion of an Acid Gas and/or Sour Water Stripper Gas in an AG Flaring Device.

E.    "Acid Gas Flaring Device" or "AG Flaring Device" shall mean any device that is used for the purpose of combusting Acid Gas and/or Sour Water Stripper Gas, except facilities in which gases are combusted to produce sulfur or sulfuric acid.  The AG Flaring Devices currently in service are identified in Appendix D ("List of Flaring Devices Subject to NSPS Subparts J/Ja").  To the extent that, during the duration of the Consent Decree, the Refinery utilizes AG Flaring Devices other than those specified in Appendix D ("List of Flaring Devices Subject to NSPS Subparts J/Ja") for the purpose of combusting Acid Gas and/or Sour Water Stripper Gas, those AG Flaring Devices shall be covered under this Consent Decree.

F.    "Acid Gas Flaring Incident" or "AG Flaring Incident" shall mean an incident that results in the continuous or intermittent combustion of Acid Gas and/or Sour Water Stripper Gas in one or more AG Flaring Devices that results in the emission of sulfur dioxide equal to, or in excess of, 500 pounds in any 24-hour period; provided, however, that if 500 pounds or more of sulfur dioxide has been emitted in a 24-hour period and flaring continues into subsequent, contiguous, non-overlapping 24-hour period(s), each period of which results in emissions equal to, or in excess of, 500 pounds of sulfur dioxide, then only one AG Flaring Incident shall have occurred.  Subsequent, contiguous, non-overlapping periods are measured from the initial commencement of flaring within the AG Flaring Incident.  When AG Flaring occurs within a



24-hour period at more than one AG Flaring Device the quantity of sulfur dioxide attributable to AG Flaring emitted from each AG Flaring Device shall be added together for purposes of determining whether there is one AG Flaring Incident unless the root causes of the flaring at the various AG Flaring Devices are not related to each other.

G. "Calendar Quarter" shall mean the three month period ending on March 31st, June 30th, September 30th, and December 31st.

H. "CEMS" shall mean continuous emissions monitoring system.

I. "CO" shall mean carbon monoxide.

J. "Coker" shall mean the delayed coker unit commissioned on or about August 2002.

K. "Coker Steam Vents" shall mean the valves and associated pipe located on the coke drums that are used to vent exhaust gases from the coke drum to the atmosphere following water quench. This shall not include emergency pressure relief safety valves.

L. "Compressor Engines" shall mean the fuel-fired reciprocating engines that are coupled to the Nos. 2 and 4 desulfurizer unit compressors.

M. "COMS" shall mean continuous opacity monitoring system.

N. "Consent Decree" or "Decree" shall mean this Consent Decree, including any and all appendices attached to this Consent Decree.

O. "Current Generation Ultra-Low $NO_x$ Burners" or "Current Generation ULNBs" shall mean those burners that are designed to achieve a $NO_x$ emission rate of less than or equal to 0.040 lb $NO_x$/mmBTU (HHV) when firing natural gas at 3% stack oxygen at full design load without air preheat, even if upon installation actual emissions exceed 0.040 lb $NO_x$/mmBTU (HHV).

- 10 -

P.    "Date of Entry" shall mean the date on which this Consent Decree is approved and signed by a District Court Judge for the District of the Virgin Islands.

Q.    "Date of Lodging" shall mean the date this Consent Decree is lodged with the District Court of the Virgin Islands.

R.    "Day" or "Days" shall mean a calendar day or days unless expressly stated to be a Working Day or Working Days.  In computing any period of time under this Consent Decree (except for the calculation of rolling averages), where the last day would fall on a Saturday, Sunday, or federal or Virgin Islands territorial holiday, the period shall run until the close of business of the next Working Day.

S.    "EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

T.    "FCCU" shall include the riser, reactor, regenerator, air blower, spent catalyst stripper, catalyst recovery equipment, regenerator equipment for controlling air pollutant emissions, flue gas cooler, and the fractionator, its overhead condenser and associated wet gas compressor.

U.    "FCCU and Coker Drain Systems" means the individual drain systems (as defined in 40 CFR §60.691) and ancillary equipment which manage oily wastewater generated in the process units in the FCCU complex and the Coker.

V.    "FCCU Catalyst Regenerator" shall mean a fluid catalytic cracking unit catalyst regenerator, as defined in 40 C.F.R. § 60.101.

W.    "FCCU Turboexpander Vents" shall mean the vents used during maintenance after the turboexpander has been completely bypassed to safely depressurize the ductwork and turboexpander.

X.      "Flaring Device" shall mean an AG and/or a HC Flaring Device.

Y.      "Fuel Oil" shall mean any liquid fossil fuel with sulfur content of greater than 0.05% by weight.

Z.      "Generating Turbine" shall mean any gas or liquid fuel-fired combustion turbine of any size that is used to generate electricity or steam through the use of a heat recovery steam generator.

AA.      "HOVENSA" shall mean HOVENSA L.L.C. and its respective successors and assigns.

BB.      "Hydrocarbon Flaring" or "HC Flaring" shall mean the combustion of refinery-generated gases, except for Acid Gas, Sour Water Stripper Gas, and/or Tail Gas, in a Hydrocarbon Flaring Device.

CC.      "Hydrocarbon Flaring Device" or "HC Flaring Device" shall mean a flare used to safely control (through combustion) any excess volume of a refinery-generated gas other than Acid Gas and/or Sour Water Stripper Gas and/or Tail Gas.  The HC Flaring Devices currently in service are identified in Appendix D ("List of Flaring Devices Subject to NSPS Subparts J/Ja"). To the extent that, during the duration of the Consent Decree, the Refinery utilizes HC Flaring Devices other than those specified in Appendix D ("List of Flaring Devices Subject to NSPS Subparts J/Ja") for the purposes of combusting any excess volume of a refinery-generated gas other than Acid Gas and/or Sour Water Stripper Gas and/or Tail Gas, those HC Flaring Devices shall be covered under this Consent Decree.

DD.      "Hydrocarbon Flaring Incident" or "HC Flaring Incident" shall mean an incident that results in the continuous or intermittent Hydrocarbon Flaring, except for Acid Gas, Sour Water Stripper Gas, or Tail Gas, at a Hydrocarbon Flaring Device that results in the emission of

- 12 -

sulfur dioxide equal to or greater than five-hundred (500) pounds in any 24-hour period; provided, however, that if 500 pounds or more of sulfur dioxide has been emitted in any 24-hour period and flaring continues into subsequent, contiguous, non-overlapping 24-hour period(s), each period of which results in emissions equal to, or in excess of, 500 pounds of sulfur dioxide, then only one HC Flaring Incident shall have occurred. Subsequent, contiguous, non-overlapping periods are measured from the initial commencement of flaring within the HC Flaring Incident. When HC Flaring occurs within a 24-hour period at more than one HC Flaring Device the quantity of sulfur dioxide attributable to HC Flaring emitted from each HC Flaring Device shall be added together for purposes of determining whether there is one HC Flaring Incident unless the root causes of the flaring at the various HC Flaring Devices are not related to each other.

EE. "Malfunction" shall mean, as specified in 40 C.F.R. § 60.2, "any sudden, infrequent, and not reasonably preventable failure of air pollution control equipment, process equipment, or a process to operate in a normal or usual manner. Failures that are caused in part by poor maintenance or careless operation are not malfunctions."

FF. "Next Generation Ultra-Low $NO_x$ Burners" or "Next Generation ULNBs" shall mean those burners that are designed to achieve a $NO_x$ emission rate of less than or equal to 0.020 lb $NO_x$/mmBTU (HHV) when firing natural gas at 3% stack oxygen at full design load without air preheat, even if upon installation actual emissions exceed 0.020 lb $NO_x$/mmBTU (HHV).

GG. "$NO_x$" shall mean nitrogen oxides.

HH. "Operating Day" shall mean a Day on which a minimum of 18 hours of valid emissions data are obtained.

- 13 -

II. "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral.

JJ. "Part" shall mean a portion of this Consent Decree identified by a Roman numeral.

KK. "PEMS" shall mean predictive emissions monitoring systems developed in accordance with Appendix B ("Predictive Emissions Monitoring System Requirements") to this Consent Decree.

LL. "PM" shall mean particulate matter as measured by 40 C.F.R. Part 60, Appendix A, Method 5B or 5F (front half only).

MM. "Parties" shall mean the United States, the United States Virgin Islands, and HOVENSA L.L.C.

NN. "Refinery" shall mean the petroleum refining facility that is owned and operated by HOVENSA L.L.C. in St. Croix, U.S. Virgin Islands. The boundaries of the Refinery are shown in Appendix I ("Map of HOVENSA L.L.C."). The Refinery does not include Oxbow St. Croix L.L.C, VWNA Process Solutions/Texas L.L.C., Charlie's/Diamond Ready Mix, Inc., Spencer Ocean Services, or Linde Gas Puerto Rico, Inc., which are located within the Refinery's boundaries but are not part of the Refinery's operations as of the Date of Lodging.

OO. "Root Cause" shall mean the primary cause(s) of an AG Flaring Incident(s), Hydrocarbon Flaring Incident(s), or a Tail Gas Incident(s) as determined through a process of investigation.

PP. "Section" shall mean a portion of this Consent Decree identified by a capital letter.

- 14 -

QQ.    "Shutdown" as specified in 40 C.F.R. § 60.2, shall mean the cessation of operation of equipment for any purpose.

RR.    "Sour Water Stripper Gas" or "SWS Gas" shall mean the gas produced by the process of stripping refinery sour water.

SS.    "SO$_2$" shall mean sulfur dioxide.

TT.    "Startup" as specified in 40 C.F.R. § 60.2 shall mean the setting in operation of equipment for any purpose.

UU.    "Sulfur Recovery Plant" or "SRP" shall mean a process unit that recovers sulfur from hydrogen sulfide by a vapor phase catalytic reaction of sulfur dioxide and hydrogen sulfide.

VV.    "Tail Gas" ("TG") shall mean exhaust from the Claus trains and/or the Tail Gas Unit.

WW.    "Tail Gas Unit" or "TGU" shall mean a control system using a technology for reducing emissions of sulfur compounds from a Sulfur Recovery Plant.

XX.    "Tail Gas Incident" shall mean combustion of Tail Gas that either:

a.    Is combusted in a thermal incinerator and results in excess emissions of 500 pounds or more of SO$_2$ in any 24-hour period.  Only those time periods with emissions that are in excess of an SO$_2$ concentration of 250 ppm (rolling twelve-hour average) shall be used to determine the amount of excess SO$_2$ emissions from the incinerator; or

b.    Is emitted from the Tail Gas Unit and results in excess emissions of total reduced sulfur ("TRS") that are equivalent to 500 pounds or more of SO$_2$ emissions in any 24-hour period.  Only those time periods with emissions that are in excess of a TRS concentration of 300 ppm (rolling twelve-hour average) shall be used to determine the equivalent amount of excess SO$_2$ emissions.

- 15 -

HOVENSA shall use good engineering judgment and/or other monitoring data during periods in which the $SO_2$ continuous emission analyzer has exceeded the range of the instrument or is out of service.

YY.   "Upstream Process Units" shall mean all amine contactors, amine scrubbers, and sour water strippers, as well as all process units that produce gaseous or aqueous waste streams that are processed at amine contactors, amine scrubbers, or sour water strippers.

ZZ.   "VIDPNR" shall mean the Department of Planning and Natural Resources of the United States Virgin Islands.

AAA.  "Wet Injection" shall mean the injection of water or steam into the combustion section of a Generating Turbine for the purposes of $NO_x$ control.

BBB.  "Working Day" or "Working Days" shall mean any calendar day or days except Saturday, Sunday, federal holidays, or Virgin Islands territorial holidays.

## V.   AFFIRMATIVE RELIEF/ENVIRONMENTAL PROJECTS

### A.   Control of $NO_x$ Emissions from the FCCU.

Summary: HOVENSA shall implement a program as set forth herein with a goal to reduce $NO_x$ emissions from the FCCU. HOVENSA shall incorporate lower $NO_x$ emission limits into permit applications and will demonstrate future compliance with the lower emission limits through the use of CEMS.

11.   FCCU $NO_x$ Emission Limits. By no later than the Date of Entry, HOVENSA shall limit $NO_x$ emissions from the FCCU to 20 ppmvd or less on a 365-day rolling average and 40 ppmvd or less on a 7-day rolling average, each at 0% $O_2$. $NO_x$ emissions during periods of Startup, Shutdown or Malfunction of the FCCU shall not be used in determining compliance

with the 7-day rolling average $NO_x$ emission limit, provided that during such periods HOVENSA implements good air pollution control practices to minimize $NO_x$ emissions.

 12. <u>Demonstrating Compliance with FCCU $NO_x$ Emission Limits.</u> By no later than the Date of Lodging, HOVENSA shall continue to use $NO_x$ and $O_2$ CEMS to monitor performance of the FCCU and to report compliance with the terms and conditions of this Consent Decree. CEMS will be used to demonstrate compliance with the $NO_x$ emission limits established pursuant to Paragraph 11. HOVENSA shall make CEMS data available to EPA and VIDPNR upon request as soon as practicable. HOVENSA shall install, certify, calibrate, maintain, and operate all CEMS required by this Paragraph in accordance with the provisions of 40 C.F.R. § 60.13 that are applicable to CEMS (excluding those provisions applicable only to Continuous Opacity Monitoring Systems) and Part 60 Appendices A and F, and the applicable performance specification test of 40 C.F.R. Part 60 Appendix B. With respect to 40 C.F.R. Part 60, Appendix F, in lieu of the requirements of 40 C.F.R. Part 60, Appendix F §§ 5.1.1, 5.1.3 and 5.1.4, HOVENSA must conduct either a Relative Accuracy Audit ("RAA") or a Relative Accuracy Test Audit ("RATA") on each CEMS at least once every three (3) years. HOVENSA must also conduct Cylinder Gas Audits ("CGA") each calendar quarter during which a RAA or a RATA is not performed.

**B. Control of $SO_2$ Emissions from the FCCU.**

 <u>Summary:</u> HOVENSA shall limit $SO_2$ emissions from the FCCU, as required herein. HOVENSA has incorporated the $SO_2$ emission limits into permits and will continue to demonstrate compliance with the emission limits through the use of CEMS.

13. _FCCU SO$_2$ Emission Limits._ By no later than the Date of Entry, HOVENSA shall limit SO$_2$ emissions from the FCCU to 16 ppmvd or less on a 365-day rolling average and 25 ppmvd or less on a 7-day rolling average, each at 0% O$_2$.

14. _Demonstrating Compliance with FCCU SO$_2$ Emission Limits._ By no later than the Date of Entry, HOVENSA shall use an SO$_2$ (and O$_2$) CEMS to monitor the performance of the FCCU and to report compliance with the terms and conditions of this Consent Decree. HOVENSA shall make CEMS data available to EPA and VIDPNR upon request, as soon as practicable. SO$_2$ emissions during periods of Malfunction of the Wet Gas Scrubber ("WGS") shall not be used in determining compliance with the 7-day rolling average SO$_2$ emission limit established pursuant to Paragraph 13, provided that during such periods HOVENSA implements good air pollution control practices to minimize SO$_2$ emissions. HOVENSA shall install, certify, calibrate, maintain, and operate all CEMS required by this Paragraph in accordance with the provisions of 40 C.F.R. § 60.13 that are applicable to CEMS (excluding those provisions applicable only to Continuous Opacity Monitoring Systems) and Part 60 Appendices A and F, and the applicable performance specification test of 40 C.F.R. Part 60 Appendix B. With respect to 40 C.F.R. Part 60, Appendix F, in lieu of the requirements of 40 C.F.R. Part 60, Appendix F §§ 5.1.1, 5.1.3 and 5.1.4, HOVENSA must conduct either a Relative Accuracy Audit ("RAA") or a Relative Accuracy Test Audit ("RATA") on each CEMS at least once every three (3) years. HOVENSA must also conduct Cylinder Gas Audits ("CGA") each calendar quarter during which a RAA or a RATA is not performed.

**C.**   **Control of PM Emissions from the FCCU.**

Summary: HOVENSA shall continue to control and limit particulate matter ("PM") emissions from the Refinery FCCU.

- 18 -

15.     FCCU PM Emission Limits.  By no later than the Date of Entry, HOVENSA shall limit PM emissions from the FCCU to 0.5 pounds PM or less per 1,000 pounds of coke burned based on the average of three (3) 1-hour stack tests.

16.     PM Testing for FCCU.  HOVENSA shall follow the stack test methodology specified in 40 C.F.R. § 60.106(b)(2) to measure PM emissions from the FCCU.  HOVENSA shall propose and submit a stack test protocol to EPA and VIDPNR, for approval by EPA, not later than three (3) months after the Date of Entry.  HOVENSA shall conduct the first stack test no later than twelve (12) months after the Date of Entry.  HOVENSA shall conduct annual stack tests at the FCCU.  Upon demonstrating through at least three (3) annual tests that the PM limits are not being exceeded, HOVENSA may request EPA approval to conduct tests less frequently than annually.

17.     PM emissions during periods of Malfunction of the FCCU's WGS shall not be used in determining compliance with the emission limit of 0.5 pounds of PM per 1,000 pounds of coke burned, provided that during such periods HOVENSA implements good air pollution control practices to minimize PM emissions.

**D.     Control of CO Emissions from the FCCU.**

Summary:  HOVENSA shall continue to operate the FCCU in a manner that minimizes CO emissions while complying with the $NO_x$ limits as required herein.

18.     FCCU CO Emissions Limit.  By no later than the Date of Entry, HOVENSA shall limit CO emissions from the FCCU to 500 ppmvd or less on a 1-hour block average basis corrected to 0% $O_2$.

19.     At any time during the term of this Consent Decree, HOVENSA may accept a CO emissions limit of 100 ppmvd or less on a 365-day rolling average basis corrected to 0% $O_2$.

- 19 -

20. CO emissions during periods of Startup, Shutdown, or Malfunction of the FCCU shall not be used in determining compliance with the 1-hour 500 ppmvd emissions limit, provided that during such periods HOVENSA implements good air pollution control practices to minimize CO emissions.

21. <u>Demonstrating Compliance with FCCU CO Emission Limits</u>. By no later than the Date of Entry, HOVENSA shall continue to use a CO CEMS to monitor the performance of the FCCU and to report compliance with the terms and conditions of this Consent Decree. HOVENSA shall make CEMS and process data available to EPA and VIDPNR upon request, as soon as practicable. HOVENSA shall install, certify, calibrate, maintain, and operate all CEMS required by this Paragraph in accordance with the provisions of 40 C.F.R. § 60.13 that are applicable to CEMs (excluding those provisions applicable only to Continuous Opacity Monitoring Systems) and Part 60 Appendices A and F, and the applicable performance specification test of 40 C.F.R. Part 60 Appendix B. With respect to 40 C.F.R. Part 60, Appendix F, in lieu of the requirements of 40 C.F.R. Part 60, Appendix F §§ 5.1.1, 5.1.3 and 5.1.4, HOVENSA must conduct either a RAA or a RATA on each CEMS at least once every three (3) years. HOVENSA must also conduct Cylinder Gas Audits ("CGA") each calendar quarter during which a RAA or a RATA is not performed.

**E.  NSPS Subparts A and J Applicability to the FCCU Catalyst Regenerator.**

22. The HOVENSA FCCU Catalyst Regenerator shall continue to be an "affected facility," as that term is used in 40 C.F.R. Part 60, Subparts A and J, and therefore shall be subject to and continue to comply with, the requirements of 40 C.F.R. Part 60, Subparts A and J, for $SO_2$, PM (and opacity), and CO. HOVENSA shall comply with the monitoring requirements of NSPS Subparts A and J for opacity by submitting, by no later than sixty (60) Days following

- 20 -



the first stack test required by Paragraph 16, an Alternate Monitoring Plan (AMP) for EPA approval. Compliance at the FCCU Catalyst Regenerator with the provisions of NSPS Subpart Ja shall constitute compliance with the requirements of NSPS Subpart J as provided in 40 C.F.R. §60.100 (e) for the purposes of this Section and Paragraph 219.

      a.    If prior to the termination of this Consent Decree, the FCCU becomes subject to NSPS Subpart Ja for a particular pollutant due to a modification, the affected facility shall be subject to and comply with NSPS Subpart Ja in lieu of NSPS, Subpart J for that regulated pollutant to which a standard applies as a result of the modification.

      b.    If prior to the termination of this Consent Decree, the FCCU becomes subject to NSPS Subpart Ja due to a reconstruction, the affected facility shall be subject to and comply with NSPS Subpart Ja for all pollutants in lieu of Subpart J.

**F.**    **$NO_x$ Emission Reductions from Heaters, Boilers, Generating Turbines, and Compressor Engines.**

    <u>Summary</u>: As required herein, HOVENSA shall implement a program to reduce $NO_x$ emissions from Refinery heaters and boilers with a heat input of greater than 40 mmBTU/hr, Generating Turbines and Compressor Engines. $NO_x$ emission reductions will be accomplished through the designated installation of $NO_x$ controls and the acceptance of permit emission limits on the units controlled to meet the requirements of Paragraph 24 or the shutdown of certain units and the relinquishment of their permits. HOVENSA will monitor compliance with the emission limits through source testing, use of CEMS, and/or the use of a PEMS. CEMS required under this Section shall be operated and data recorded pursuant to applicable law.

    23.    Installation of $NO_x$ Control Technology. HOVENSA shall select one or any combination of the following "Qualifying Controls" to satisfy the requirements of Paragraphs 24, 26, 27, and 28:

- 21 -

a.    Current or Next Generation Ultra-Low $NO_x$ Burners;

b.    Selective Catalytic Reduction (SCR) or Selective non-Catalytic Reduction (SNCR);

c.    Wet injection applied to Generating Turbines to achieve 96 ppmvd @ 15% $O_2$ when firing vacuum gas oil (VGO) and 42 ppmvd @ 15% $O_2$ when firing any other fuels;

d.    Other technologies which HOVENSA demonstrates to EPA's satisfaction should reduce $NO_x$ emissions to 0.040 lb per million BTU or less when firing refinery fuel gas in heaters and boilers, to 0.150 lb per million BTU when firing Fuel Oil in heaters and boilers; and

e.    Permanent unit shutdown and relinquishment of permit.

24.    HOVENSA shall use Qualifying Controls to reduce $NO_x$ emissions from the heaters and boilers greater than 40 mmBTU per hour, Generating Turbines, and Compressor Engines listed in Appendix A ("List of Heaters and Boilers Greater Than 40 mmBTU Per Hour, Generating Turbines and Compressor Engines"), by the amounts and deadlines required in Paragraphs 26, 27 and 28 expressed as tons per year, and as determined by the total of the summations below:

$$\sum_{i=1}^{n} \left[ \left( E_{actual} \right)_i - \left( E_{allowable} \right)_i \right]$$

Where:

    for gas only fired combustion units

$(E_{allowable})_i$ = [(The permitted allowable pounds of $NO_x$ per million BTU for combustion unit i, or the requested portion of the permitted reduction pursuant to Paragraph 131.e)/(2000 pounds per ton)] x [(the lower of permitted or maximum heat input rate capacity in million BTU per hour for combustion unit i) x (the lower of 8760 or permitted hours per year)];

- 22 -

for oil capable combustion units

$$(E_{allowable})_i = [(PAF1)x(AAHIF1) + (PAF2)x(PMAAHI - AAHIF1)]x(8760/2000)$$

| | | |
|---|---|---|
| PAF1 | = | permitted allowable lb $NO_x$/mmBTU for higher emitting fuel #1 (e. g. VGO) |
| AAHIF1 | = | permitted annual average allowable heat input mmBTU/hr fuel #1 (e.g., VGO) |
| PAF2 | = | permitted allowable lb/mmBTU for lower emitting fuel #2 (e. g., refinery fuel gas and No. 2 oil) |
| PMAAHI | = | permitted maximum annual average allowable heat input mmBTU/hr for all fuels or reduced value if annual utilization is limited by permit |
| $(E_{actual})_i$ | = | The average tons of $NO_x$ per year prior actual emissions during calendar years 2004 and 2005 (unless prior actuals exceed allowable emissions, then use allowable) as shown in Appendix A ("List of Heaters and Boilers Greater Than 40 mmBTU Per Hour, Generating Turbines and Compressor Engines") for controlled heater or boiler i; and |
| $n$ | = | The number of combustion units with Qualifying Controls at the Refinery from those listed in Appendix A ("List of Heaters and Boilers Greater Than 40 mmBTU Per Hour, Generating Turbines and Compressor Engines") that are selected by HOVENSA to satisfy the requirements of the equation set forth in this Paragraph. |

Permit limits established to implement this Paragraph may use a 365-day rolling average for heaters, boilers, and Generating Turbines that use a CEMS or PEMS to monitor compliance. Otherwise, permit limits established to implement this Paragraph shall be based on the averaging periods set forth in the applicable reference test method.

25. Appendix A ("List of Heaters and Boilers Greater Than 40 mmBTU Per Hour, Generating Turbines and Compressor Engines") provides the following information for each of the heaters and boilers with a maximum heat input capacity greater than 40 mmBTU per hour, all Generating Turbines and Compressor Engines:

a. The maximum heat input capacity and, if less, the permitted allowable heat input capacity, in mmBTU/hr (HHV);

- 23 -

b.      The actual NO$_x$ emission rate for both calendar years 2004 and 2005 in lb/mmBTU (HHV) and tons per year; and

c.      The type of data used to derive the emission estimate (i.e., emission factor, stack test, or CEMS data) and the averaging period for the emissions data.

26.     By four (4) years from Date of Entry, HOVENSA shall install sufficient Qualifying Controls and have applied for emission limits from the appropriate permitting authority sufficient to achieve 1,079 tpy NO$_x$ emissions reductions as determined by the summation in Paragraph 24. By four (4) years and three (3) months from Date of Entry, HOVENSA shall provide EPA with a report showing how it satisfied the requirement of this Paragraph and Paragraph 23. For purposes of this Consent Decree, "applied for" shall mean that HOVENSA has submitted a complete and timely application for the appropriate permit, permit modification, and/or other enforceable permit vehicle.

27.     By five (5) years from Date of Entry, HOVENSA shall install sufficient Qualifying Controls and have applied for emission limits from the appropriate permitting authority sufficient to achieve 3,663 tpy NO$_x$ emission reductions as determined by the summation in Paragraph 24. By five (5) years and three (3) months from Date of Entry, HOVENSA shall provide EPA with a report showing how it satisfied the requirement of this Paragraph and Paragraph 23.

28.     By eight (8) years from Date of Entry, HOVENSA shall install sufficient Qualifying Controls and have applied for emission limits from the appropriate permitting authority sufficient to achieve 4,744 tpy NO$_x$ emission reductions as determined by the summation in Paragraph 24. By eight (8) years and three (3) months from Date of Entry,

HOVENSA shall provide EPA with a report showing how it satisfied the requirement of this Paragraph and Paragraph 23.

29.     HOVENSA shall submit a detailed $NO_x$ Control Plan ("Control Plan") to EPA for review and comment, and to VIDPNR, by no later than four (4) months after Date of Entry, with annual updates every twelve (12) months thereafter until HOVENSA has complied with the requirements of Paragraph 28. The Control Plan and its updates shall describe the achieved and anticipated progress of the $NO_x$ emission reductions program for heaters, boilers, Generating Turbines, and Compressor Engines and shall contain the following for each heater and boiler greater than 40 mmBTU/hr, all Generating Turbines, and Compressor Engines that HOVENSA plans to use to satisfy the requirements of Paragraphs 26, 27 or 28:

a.     All of the information in Appendix A ("List of Heaters and Boilers Greater Than 40 mmBTU Per Hour, Generating Turbines and Compressor Engines");

b.     Identification of the type of Qualifying Controls installed or planned with the date installed or planned;

c.     To the extent limits exist or are planned, the allowable $NO_x$ emission rates (in lbs/mmBTU (HHV), with averaging period) and allowable heat input rate (in mmBTU/hr (HHV)) obtained or planned with dates obtained or planned;

d.     The results of emissions tests conducted pursuant to Paragraph 30 and annual average CEMS or PEMS data (in ppmvd at 3% $O_2$, lbs/mmBTU), and tons per year; and

e.     The amount in tons per year applied or to be applied toward satisfying Paragraphs 24, 26, 27, and 28.

Appendix A ("List of Heaters and Boilers Greater Than 40 mmBTU Per Hour, Generating Turbines and Compressor Engines") and the Control Plan and updates required by

- 25 -

this Paragraph shall be for informational purposes only and may contain estimates. They shall not be used to develop permit requirements or other operating restrictions. HOVENSA may change any projections, plans, or information included in the Control Plan or updates.

30. Beginning no later than 180 Days after installing Qualifying Controls on and commencing operation of a heater, boiler, or Generating Turbine that will be used to satisfy the requirements of Paragraphs 24, 26, 27, and 28, HOVENSA shall monitor the heaters, boilers or Generating Turbines as follows:

a. For heaters, boilers, and Generating Turbines with a maximum heat input capacity of 150 mmBTU/hr (HHV) or greater, install or continue to operate a $NO_x$ CEMS;

b. For heaters and boilers with a maximum heat input capacity of less than 150 mmBTU/hr (HHV), but greater than or equal to 100 mmBTU/hr (HHV), or Generating Turbines, install or continue to operate a $NO_x$ CEMS, or monitor $NO_x$ emissions with a PEMS developed and operated pursuant to the requirements of Appendix B ("Predictive Emissions Monitoring System Requirements");

c. For heaters and boilers with a maximum heat input capacity of less than 100 mmBTU/hr (HHV), but greater than or equal to 40 mmBTU/hr (HHV), conduct an initial performance test and any periodic tests that may be required by EPA or VIDPNR under other applicable regulatory authority. The results of the initial performance testing shall be reported to EPA and VIDPNR.

HOVENSA shall use Method 7E, an EPA-approved, or a VIDPNR-approved alternate test method to conduct initial performance testing for $NO_x$ emissions required by this Subparagraph. Monitoring with a PEMS that is required by this Paragraph shall be conducted in accordance with the requirements of Appendix B ("Predictive Emissions Monitoring System

Requirements"). Units with Qualifying Controls installed before Date of Entry that are subject to this Paragraph shall comply with this Paragraph by three (3) years from Date of Entry.

31.     Beginning no later than 180 Days after installing Qualifying Controls and commencing operation of a heater, boiler or Generating Turbine that will be monitored by use of a $NO_x$ CEMS that is required by Paragraph 30, HOVENSA shall install, certify, calibrate, maintain, and operate all CEMS in accordance with the provisions of 40 C.F.R. § 60.13 that are applicable to CEMS (excluding those provisions applicable only to COMS) and Part 60 Appendices A and F, and the applicable performance specification test of 40 C.F.R. Part 60 Appendix B. With respect to 40 C.F.R. Part 60, Appendix F, in lieu of the requirements of 40 C.F.R. Part 60, Appendix F §§ 5.1.1, 5.1.3 and 5.1.4, HOVENSA must conduct either a RAA or a RATA on each CEMS at least once every three (3) years. HOVENSA must also conduct Cylinder Gas Audits ("CGA") each calendar quarter during which a RAA or a RATA is not performed. Nothing in this Paragraph shall affect any more stringent territorial or local monitoring requirements.

32.     The requirements of this Section do not exempt HOVENSA from complying with any and all Federal or territorial requirements that may require technology, equipment, monitoring, or other upgrades based on actions or activities occurring after the Date of Lodging, or based on new or modified regulatory, statutory, or permit requirements.

33.     HOVENSA shall retain all records required to support the reporting requirements under this Section until termination of the Consent Decree. HOVENSA shall submit such records to EPA or VIDPNR upon request.

**G.** **SO₂ Emissions Reductions from, and NSPS Applicability to, Heaters, Boilers and Generating Turbines.**

Summary: HOVENSA shall undertake measures to reduce $SO_2$ emissions from Refinery heaters, boilers and Generating Turbines by restricting $H_2S$ in refinery fuel gas that is combusted as specifically limited under the provisions set forth herein.

34.     NSPS Applicability to Heaters, Boilers, and Other Fuel Gas Combustion Devices (Other than Flaring Devices).  All heaters, boilers, and all other fuel gas combustion devices (other than Flaring Devices) shall be affected facilities, as that term is used in 40 C.F.R. Part 60, Subparts A and J (or Ja if Subparagraph a or b of this paragraph applies for a particular affected facility), and shall be subject to and comply with the applicable requirements of NSPS Subparts A and J (or Ja if Subparagraph a or b of this paragraph applies for a particular affected facility), for fuel gas combustion devices by the Date of Lodging, except for those heaters, boilers, and other fuel gas combustion devices listed in Appendix C ("NSPS Subpart J or Ja Compliance Schedule for Listed Fuel Gas Combustion Devices (Other than Flaring Devices)"), which shall comply with the dates specified in Appendix C.  Compliance of a fuel gas combustion device with the provisions of NSPS Subpart Ja for $SO_2$ emissions shall constitute compliance with the requirements of NSPS Subpart J as provided in 40 C.F.R. §60.100(e) for the purposes of this Section.

a.     If prior to the termination of this Consent Decree, any heater, boiler or other fuel gas combustion device (other than a Flaring Device) becomes subject to NSPS Subpart Ja for a particular pollutant due to a modification, the affected facility shall be subject to and comply with NSPS Subpart Ja in lieu of NSPS, Subpart J for that regulated pollutant to which a standard applies as a result of the modification.

- 28 -

b.      If prior to the termination of this Consent Decree, any heater, boiler or other fuel gas combustion device (other than a Flaring Device) becomes subject to NSPS Subpart Ja due to a reconstruction, the affected facility shall be subject to and comply with NSPS Subpart Ja for all pollutants in lieu of Subpart J.

35.      By no later than the date compliance is required pursuant to Paragraph 34, HOVENSA shall comply with the $H_2S/SO_2$ monitoring requirements of NSPS Subparts A and J or Ja, as applicable.  HOVENSA shall make monitoring data available to EPA and VIDPNR upon request as soon as practicable. HOVENSA shall install, certify, calibrate, maintain and operate all CEMS required by this Paragraph in accordance with the provisions of 40 C.F.R. § 60.13 that are applicable to CEMS (excluding those provisions applicable only to continuous opacity monitoring systems) and Part 60, Appendices A and F, and the applicable performance specification test of 40 C.F.R. Part 60, Appendix B.

36.      Compliance with Consent Decree Constitutes Compliance with Certain NSPS Subpart A Requirements. For each fuel gas combustion device that becomes an "affected facility," as that term is used in 40 C.F.R. Part 60, Subparts A and J or Ja, as applicable, pursuant to this Section, entry of this Consent Decree and compliance with the relevant monitoring requirements of this Consent Decree for such fuel gas combustion device will satisfy the notice requirements of 40 C.F.R. § 60.7(a) and the initial performance test requirement of 40 C.F.R. § 60.8(a).

## H.      Sulfur in Fuel Restrictions for Oil Burning.

Summary:  HOVENSA shall reduce $SO_2$ emissions by reducing the sulfur content of Fuel Oil combusted pursuant to the provisions set forth herein.

37.     Effective thirty (30) Days after the Date of Lodging, HOVENSA shall not burn Fuel Oil greater than 0.55 wt % sulfur at any time or 0.50 wt% on a 365-day rolling average basis in any heater, boiler, or Generating Turbine.

38.     HOVENSA shall switch the fuel supply for any units combusting Fuel Oil to a Fuel Oil with not greater than 0.3 wt % sulfur within one hour of when one of the following conditions occurs:

        a.      The hourly average winds blow from a 180° sector, defined as 90° to 270°, inclusive, where zero degrees is due North, for at least six (6) consecutive hours during a 24-hour block period, or any 12 non-consecutive hours during a 24-hour block period.  Wind direction will be monitored by a meteorological tower located on HOVENSA property, and will be collected and reported as 1-hour averages, starting on the hour.  If the average wind direction for a given hour is from within the 180° sector, the wind will be deemed to have flowed from within the designated sector for that hour.  A 24-hour block period is defined as beginning at midnight and ending on the following midnight.

        b.      HOVENSA's meteorological station is inoperable for six consecutive hours.

39.     HOVENSA may switch back to the higher sulfur content Fuel Oil (a Fuel Oil with a sulfur content of less than or equal to 0.55 wt%) in accordance with the following conditions:

        a.      The winds blow outside of the 180° sector, defined as 90° to 270°, for at least three (3) consecutive hours, following the period which the winds were blowing inside the 180° sector; or

      b.     When the meteorological station becomes operable, and three (3) consecutive hours of wind conditions outside the 90° to 270° sector have occurred.

40.     On a daily basis, HOVENSA shall monitor the sulfur content of all Fuel Oil burned pursuant to Paragraph 39 in accordance with ASTM D2622, D4294, or D5453, as follows:

      a.     Fuel Oil Supplied from Single Storage Tank:

         i.     If the Fuel Oil burned is supplied from a single storage tank for an entire day or part thereof, then HOVENSA shall test the contents of the storage tank once per day by a sample taken at three (3) levels in the storage tank (i.e., the bottom, middle, and top) which is then composited (Composite Sample).

        ii.     If the same storage tank is used for more than one day and no Fuel Oil is added to the storage tank, then HOVENSA may use the storage tank sample result from the previous day to demonstrate the sulfur content of the storage tank.

      b.     Fuel Oil Supplied from Multiple Storage Tanks:  If the Fuel Oil burned for one or more consecutive days is supplied from more than one storage tank, then HOVENSA shall sample each storage tank separately once per day by a Composite Sample taken at three (3) levels in the storage tank (i.e., the bottom, middle, and top).

      c.     In the event that Fuel Oil is added to any storage tank, HOVENSA shall sample the storage tank by a Composite Sample taken at three (3) levels in the storage tank (i.e., the bottom, middle, and top) before the storage tank is placed into service. HOVENSA shall record the quantity and sulfur content of all Fuel Oil burned pursuant to Paragraph 39, and shall include this data with the periodic (semi-annual) progress reporting in accordance with Part X (Reporting and Recordkeeping).

**I.** **Sulfur Recovery Plants:** The SRPs are or will be affected facilities under NSPS Subparts J or Ja, and are complying or will comply with all applicable requirements of 40 C.F.R. Part 60, Subparts A and J or Ja.

41. <u>Description of Sulfur Recovery Plants</u>. As of Date of Entry, HOVENSA owns and operates the following SRPs:

a. <u>East Side Sulfur Recovery Plant</u>: The East Side SRP consists of two Claus Trains, #3 SRU and #4 SRU. A single Beavon Stretford Tail Gas Unit ("Beavon #2") serves as the control device for both Claus Trains. During maintenance, Startup, Shutdown, and Malfunction of Beavon #2, TG is combusted in an incinerator (H-4745).

b. <u>West Side Sulfur Recovery Plant</u>: The West Side SRP consists of two Claus Trains, #1 SRU and #2 SRU. A single Beavon Stretford Tail Gas Unit ("Beavon #1") serves as the control device for both Claus Trains. During Startup, Shutdown, and Malfunction of Beavon #1, TG from SRUs #1 and #2 is combusted in separate dedicated incinerators (H-1032 and H-1042).

42. <u>NSPS Applicability for SRPs.</u> Effective on April 1, 2015, the East Side SRP shall be an "affected facility" as that term is used in 40 C.F.R. Part 60, Subparts A and Ja and shall become subject to the requirements of Subpart Ja. The West Side SRP is currently an "affected facility" as that term is used in 40 C.F.R. Part 60, Subparts A and J and is already subject to the requirements of Subpart J and shall be subject to Subpart Ja by no later than December 31, 2011.

43. <u>Sulfur Pit Emissions:</u> HOVENSA shall route or re-route all sulfur pit emissions so that they are eliminated or controlled, and included and monitored as part of the SRPs' emissions subject to the NSPS Subpart Ja limit for $SO_2$ or reduced sulfur compounds, 40 C.F.R.

§ 60.102a(f), by no later than December 31, 2014 at the East Side SRP and December 31, 2011 at the West Side SRP.

44. <u>Compliance with NSPS at the West Side SRP.</u>

a. As of the Date of Entry, the West Side SRP shall continue to comply with the applicable provisions of NSPS Subparts A and J except for $SO_2$ CEMS on the West Side incinerators, which shall be installed by December 31, 2010. As of December 31, 2011, the West Side SRP shall comply with NSPS Subpart Ja. The West Side SRP shall continue to comply with 40 C.F.R. § 60.104(a)(2) or 40 C.F.R. § 60.102a(f), as applicable, at all times except during periods of Startup, Shutdown, or Malfunction of the West Side SRP or during a Malfunction of the TGU. For purposes of determining compliance with the emission limits of 40 C.F.R. § 60.104(a)(2) or 40 C.F.R. § 60.102a(f), as applicable, the "start-up/shutdown" provisions set forth in NSPS Subpart A shall apply.

b. At all times, including periods of Startup, Shutdown, and Malfunction, HOVENSA shall, to the extent practicable, operate and maintain the West Side SRP and TGU and any supplemental control devices, in accordance with good air pollution control practices as required in 40 C.F.R. § 60.11(d).

c. HOVENSA shall monitor all non-fugitive emission points (stacks) to the atmosphere from the West Side SRP for Tail Gas emissions and shall monitor and report excess emissions, as required by 40 C.F.R. §§ 60.7(c), 60.13, and 60.105(a)(5, 6 or 7) or 60.106a, as applicable. HOVENSA shall conduct emission monitoring with CEMS at all such emission points. The requirement for continuous monitoring is not applicable to:

i. The Acid Gas Flaring Device(s) used to flare Acid Gas and/or Sour Water Stripper Gas diverted from the SRPs,

- 33 -

           ii.      The sulfur pit emissions prior to December 31, 2011.

45.     <u>Compliance with NSPS Emissions Limits at the East Side SRP.</u>

        a.      By no later than December 31, 2014, HOVENSA shall install at the East Side SRP a second TGU to control the emissions of sulfur compounds from the East Side SRP. By no later than December 31, 2011, HOVENSA shall submit to EPA and VIDPNR a compliance plan and schedule for the completion of installation of the second East Side TGU. By April 1, 2015, HOVENSA shall demonstrate compliance with NSPS Subparts A and Ja SRP requirements at the East Side SRP.

        b.      HOVENSA shall also implement the following interim performance standards at the East Side SRP:

           i.      HOVENSA shall continue to maintain and operate a TRS/$H_2S$ CEMS for monitoring the emissions from Beavon #2 in accordance with 40 C.F.R. Part 63, Subpart UUU, Table 40 and shall comply during the interim period with the specific monitoring and reporting provisions established in Subparagraph 45.b.iii.

           ii.      By no later than 180 Days after Date of Entry, HOVENSA shall complete an optimization study the objective of which is to minimize emissions of sulfur compounds and to maximize sulfur recovery efficiencies at the East Side SRP and shall submit a copy of that study to EPA. This study shall meet all of the requirements set forth in Paragraph 46. HOVENSA shall implement the recommendations of the study that could reasonably optimize the performance of the East Side SRP in accordance with the schedule proposed by HOVENSA.

- 34 -

iii.    By no later than twelve (12) months from Date of Entry, HOVENSA shall submit a report to EPA that proposes either a pounds of $SO_2$ per hour emission limit or a percent sulfur recovery standard as an interim performance standard when the TGU is being bypassed, appropriate monitoring and reporting requirements for the proposed interim performance standards and, if necessary, a schedule for implementing additional optimization study recommendations that would ensure that the East Side SRP complies with HOVENSA's proposed interim performance standard. Beginning with the date of such submission, HOVENSA shall comply with its proposed interim performance standard and, if necessary, implement its proposed schedule for additional optimization study recommendations.

iv.    If EPA determines, based on the results of the study and other available and relevant information, that more stringent interim performance standards and/or a different implementation schedule is appropriate and can be achieved with a reasonable certainty of compliance, EPA shall so notify HOVENSA. Unless HOVENSA disputes EPA's determination(s) within ninety (90) Days of its receipt of that notice, it shall comply with such new standards within ninety (90) Days or, if necessary, such other period as may be established by EPA consistent with any implementation schedule for additional optimization study recommendations proposed by HOVENSA. HOVENSA shall continue to comply with the interim performance standard until such time as HOVENSA completes installation of the new TGU in accordance with the schedule under

- 35 -

Paragraph 45.a and operates the East Side SRP in compliance with NSPS Subpart Ja.

      v.      During the period of time the interim performance standard in Subparagraph 45.b.iii or 45.b.iv are in effect, when Beavon #2 is not operating and Tail Gas is being vented to an incinerator, HOVENSA shall limit $SO_2$ emissions from the East Side SRP to a total of 30 tons per day. When Beavon #2 is not operating, Tail Gas shall not be vented to the East Side SRP incinerator for more than thirty (30) days (720 hours) per calendar year, with a maximum of 14 continuous days.

      c.      The interim performance standards established under this Paragraph terminate upon the date of Subpart Ja applicability for the East Side SRP.

46.      <u>Optimization:</u>

      a.      The optimization study required for the East Side SRP Claus trains shall meet the following requirements:

      i.      Detailed evaluation of plant design and capacity, operating parameters and efficiencies – including catalytic activity and material balances;

      ii.      An analysis of the composition of the Acid Gas and Sour Water Stripper Gas resulting from the processing of crude slate actually used, or the composition for a crude slate expected to be used;

      iii.      A thorough review of each critical piece of process equipment and instrumentation within the Claus train that is designed to correct deficiencies or problems that prevent the Claus train from achieving its optimal sulfur recovery efficiency and expanded periods of operation;

iv.    Establishment of baseline data through testing and measurement of key parameters throughout the Claus train;

v.    Establishment of a thermodynamic process model of the Claus train;

vi.    For any key parameters that have been determined to be at less than optimal levels, initiation of logical, sequential, or stepwise changes designed to move such parameters toward their optimal values;

vii.    Verification through testing, analysis of continuous emission monitoring data or other means of incremental and cumulative improvements in sulfur recovery efficiency, if any;

viii.    Establishment of new operating procedures for long term efficient operation; and

ix.    The study shall be conducted to optimize the performance of the Claus trains in light of the actual characteristics of the feeds to the East Side SRP.

b.    HOVENSA shall incorporate the results of its optimization study into the PMO Plan required under Paragraph 48.

47.    For the East Side SRP, which becomes an affected facility under NSPS Subpart Ja pursuant to Section V.I, entry of this Consent Decree and compliance with the relevant monitoring requirements of this Consent Decree shall satisfy the notice requirements of 40 C.F.R. § 60.7(a) and the initial performance test requirement of 40 C.F.R. § 60.8(a).

48.    <u>Good Operation and Maintenance.</u>

a.    By no later than six (6) months after the Date of Entry, HOVENSA shall submit to EPA and VIDPNR, a summary of the Refinery's **plan** for enhanced maintenance and

operation of the East Side SRP and the West Side SRP, the sulfuric acid plant, any supplemental control devices, and the appropriate Upstream Process Units, that has been or will be implemented. This plan shall be termed a Preventative Maintenance Operation Plan ("PMO Plan"). The PMO Plan shall be a compilation of HOVENSA's approaches for exercising good air pollution control practices and for minimizing TRS and $SO_2$ emissions. The PMO Plan will identify actions to promote the continuous operation of its SRPs between scheduled maintenance turnarounds with minimization of emissions, including the continued use of supplemental control devices, if any. The PMO Plan shall include, but not be limited to, sulfur shedding procedures, Startup and Shutdown procedures, hot standby procedures, emergency procedures, and schedules to coordinate maintenance turnarounds of the SRP Claus trains and any supplemental control device, if any, to coincide to the extent practicable with scheduled turnarounds of major Upstream Process Units. The PMO Plan shall have as a goal the elimination of Acid Gas Flaring. HOVENSA shall comply with the PMO Plan at all times, including periods of Startup, Shutdown and Malfunction of its SRPs. HOVENSA's changes to a PMO Plan related to minimizing Acid Gas Flaring and/or $SO_2$ emissions shall be summarized and reported to EPA and VIDPNR on an annual basis. This report may be included in the appropriate semi-annual report required under Paragraph 71.

      b.     EPA and VIDPNR do not, by their review of a PMO Plan and/or by their failure to comment on a PMO Plan, warrant or aver in any manner that any of the actions that HOVENSA may take pursuant to such PMO Plan will result in compliance with the provisions of the Clean Air Act or any another applicable federal, territorial, or local law or regulation. Notwithstanding EPA's or VIDPNR's review of a PMO Plan, HOVENSA shall remain solely responsible for compliance with the Clean Air Act and such other laws and regulations.

- 38 -

**J.**     <u>Flaring Devices – NSPS Applicability</u>.

     <u>Summary</u>: All Flaring Devices are identified in Appendix D ("List of Flaring Devices Subject to NSPS Subparts J/Ja"). These Flaring Devices are or will be affected facilities (as that term is used in 40 C.F.R. Part 60, Subparts J/Ja) by the dates listed in Appendix D ("List of Flaring Devices Subject to NSPS Subparts J/Ja"). As required herein, such Flaring Devices shall be subject to and required to comply with the fuel gas combustion device requirements of 40 C.F.R. Part 60, Subparts A and J/Ja; they may also be used as emergency control devices for the quick and safe release of gases generated as a result of Startup, Shutdown, and/or Malfunction.

     49.     All Flaring Devices listed in Appendix D ("List of Flaring Devices Subject to NSPS Subparts J/Ja") are affected facilities under NSPS Subparts J/Ja. By the dates listed in Appendix D, all Flaring Devices listed in Appendix D shall comply with the requirements of NSPS Subpart Ja that apply to flares that are constructed, modified, or reconstructed after the effective dates of May 14, 2007 and June 24, 2008.

     50.     For Flaring Devices 2, 3, 5, 6, 7 and the FCCU Low Pressure Flaring Device, HOVENSA will design, install, operate and maintain flare gas recovery system(s) to control all continuous and intermittent, routinely-generated refinery fuel gases (not including pilot, sweep, or molecular seal gases necessary to ensure safe operation of the Flaring Devices) that are combusted in the Flaring Device(s).

     51.     <u>Monitoring</u>. By no later than three (3) years from Date of Entry, HOVENSA shall comply with the applicable monitoring requirements of NSPS Subpart Ja for all Flaring Devices listed in Appendix D ("List of Flaring Devices Subject to NSPS Subparts J/Ja").

52. _Compliance Certification for Flaring Devices._ For each Flaring Device, HOVENSA will submit to EPA a compliance certification by thirty (30) Days following the dates listed in Appendix D ("List of Flaring Devices Subject to NSPS Subparts J/Ja") that the Flaring Devices comply with the emission standards and monitoring requirements of Subparts J/Ja, and specify the compliance method for each Flaring Device.

53. _Good Air Pollution Control Practices._ On and after the Date of Entry, HOVENSA shall at all times and to the extent practicable, including during periods of Startup, Shutdown, and/or Malfunction, implement good air pollution control practices for minimizing emissions from the Flaring Devices identified in Appendix D ("List of Flaring Devices Subject to NSPS Subparts J/Ja") consistent with 40 C.F.R. § 60.11(d).

54. _Refinery Fuel Gases_

    a. _Continuous or Intermittent, Routinely-Generated Refinery Fuel Gases._ For continuous or intermittent, routinely-generated refinery fuel gases that are combusted in any Flaring Device identified in Appendix D ("List of Flaring Devices Subject to NSPS Subparts J/Ja"), HOVENSA shall comply with 40 C.F.R. § 60.102a(g)(1) by the dates listed in Appendix D.

    b. _Non-Routinely Generated Gases._ The combustion of gases generated as a result of Startup, Shutdown, and/or Malfunction of a refinery process unit or released to a Flaring Device as a result of process upset or relief valve leakage or other emergency malfunction are exempt from the requirement to comply with 40 C.F.R. § 60.102a(g)(1).

55. _Compliance with Consent Decree Constitutes Compliance with Certain NSPS Subpart A Requirements._ For Flaring Devices subject to NSPS Subparts J/Ja (identified in Appendix D ("List of Flaring Devices Subject to NSPS Subparts J/Ja")) entry of this Consent

- 40 -

Case 1:21-cv-00085-RAM-EAH Document 7-8 Filed 02/05/21 Page 25 of 30
Case 1:11-cv-00006-RM-GWC Document 25-8 Filed 04/15/13 Page 40 of 680
2082

Decree and compliance with the relevant monitoring requirements of this Consent Decree for Flaring Devices will satisfy the notice requirements of 40 C.F.R. §60.7(a) and the initial performance test requirement of 40 C.F.R. § 60.8(a).

    56.    <u>Periodic Maintenance of Flare Gas Recovery Systems</u>.  The Parties recognize that periodic maintenance may be required for properly designed and operated flare gas recovery systems.  To the extent that HOVENSA may operate flare gas recovery systems, HOVENSA will take all reasonable measures to minimize emissions while such periodic maintenance is being performed.

    57.    <u>Safe Operation of Refining Processes</u>.  The Parties recognize that under certain conditions, a flare gas recovery system may need to be bypassed in the event of an emergency or in order to ensure safe operation of refinery processes.  Nothing in this Consent Decree precludes HOVENSA from temporarily bypassing a flare gas recovery system under such circumstances, provided that the measures to ensure safe operation are fully documented in the semi-annual report required pursuant to Part X (Reporting and Recordkeeping).

**K.**    **<u>Control of Acid Gas Flaring Incidents and Tail Gas Incidents.</u>**

    <u>Summary</u>:  HOVENSA agrees to implement a program as set forth herein to investigate the cause of future Acid Gas Flaring Incidents, to take reasonable steps to correct the conditions that have caused or contributed to such Acid Gas Flaring Incidents, and to minimize the flaring of Acid Gas and Sour Water Stripper Gases.  HOVENSA shall follow the procedures in this Section to evaluate Acid Gas/Sour Water Stripper Gas Flaring Incidents and Tail Gas Incidents occurring after the Date of Entry and whether they are due to Malfunctions or whether they are subject to stipulated penalties.  The investigative and evaluative procedures in this Section will be used to assess Tail Gas Incidents, as described in Paragraph 70, and whether they are due to

Malfunctions or whether they are subject to stipulated penalties. The procedures set forth in this Section require root cause analysis and corrective action for Acid Gas/Sour Water Stripper Gas Flaring Incidents and/or Tail Gas Incidents.

58. <u>Flaring History and Corrective Measures</u>. HOVENSA has conducted a look-back analysis of Acid Gas Flaring Incidents and Tail Gas Incidents that occurred from 2000 through 2005, and has submitted a report on such incidents to EPA. By Date of Entry, HOVENSA shall submit a corrective action report identifying such interim and/or long-term corrective actions, and schedule for implementation, to minimize the likelihood of a recurrence of the Root Cause of a flaring event identified in the look-back analysis.

59. <u>Acid Gas Flaring and Tail Gas Incidents</u>. After the Date of Entry, HOVENSA shall investigate the cause of Acid Gas Flaring Incidents and Tail Gas Incidents under Paragraph 60 and take corrective action as set forth in Paragraph 61. HOVENSA shall continue to follow the investigation and corrective action procedure after termination of the Consent Decree or such other investigation and corrective action procedure that complies with Subpart Ja or 40 C.F.R. §60.11(d), but the reporting and stipulated penalty provisions of this Section shall not apply after termination.

60. <u>Investigation and Recordkeeping</u>. No later than forty-five (45) Days following the end of an Acid Gas Flaring Incident occurring after the Date of Entry, HOVENSA shall conduct an investigation into the Root Cause(s) of the incident and record the findings of the investigations, in a report. The report for each incident shall include, at a minimum, the following:

a. The date and time that the Acid Gas Flaring Incident started and ended. To the extent that the Acid Gas Flaring Incident involved multiple releases either within a

twenty-four (24) hour period or within subsequent, contiguous, non-overlapping twenty-four (24) hour periods, HOVENSA shall set forth the starting and ending dates and times of each release;

      b.      An estimate of the quantity of $SO_2$ that was emitted and the calculations that were used to determine that quantity;

      c.      The steps, if any, that HOVENSA took to limit the duration and/or quantity of $SO_2$ emissions associated with the Acid Gas Flaring Incident;

      d.      A detailed analysis that sets forth the Root Cause and all significant contributing causes of that Acid Gas Flaring Incident, to the extent determinable;

      e.      An analysis of the measures, if any, that are available to reduce the likelihood of a recurrence of an Acid Gas Flaring Incident resulting from the same Root Cause or significant contributing causes in the future.  The analysis shall discuss all reasonable alternatives, if any, that are available, the probable effectiveness and cost of the alternatives, and whether an outside consultant should be retained to assist in the analysis.  Possible design, operation and maintenance changes shall be evaluated.  If HOVENSA concludes that corrective action(s) is (are) required under Paragraph 61, then the report of the Acid Gas Flaring Incident in the semi-annual report required by Paragraph 71 shall include a description of the action(s) and, if not already completed, a schedule for its (their) implementation, including proposed commencement and completion dates.   If HOVENSA concludes that corrective action is not required under Paragraph 61, the report shall explain the basis for that conclusion in that semi-annual report;

      f.      A statement that:

            i.      Specifically identifies each of the grounds for stipulated penalties in Paragraphs 63, 64, and 65 and describes whether the Acid Gas Flaring Incident

- 43 -

falls under any of those grounds, provided, however, that HOVENSA may choose to submit with the Root Cause analysis a payment of stipulated penalties in the nature of settlement without the need to specifically identify the grounds for the penalty. Such payment of stipulated penalties shall not constitute an admission of liability, nor shall it raise any presumption whatsoever about the nature, existence or strength of HOVENSA's potential defenses;

       ii.    If an Acid Gas Flaring Incident falls under Paragraph 65, describes which Subparagraph 65.a or 65.b applies and why; and

       iii.    If an Acid Gas Flaring Incident falls under either Paragraph 64 or 65.b, states whether or not HOVENSA asserts a defense to the Acid Gas Flaring Incident, and if so, a description of the defense;

       g.    To the extent that investigations of the causes and/or possible corrective actions still are underway on the due date of the report required by this Paragraph, a statement of the anticipated date by which a follow-up report fully conforming to the requirements of Subparagraphs 60.d and 60.e shall be completed; provided, however, if HOVENSA has not completed its report or a series of reports containing the information required under this Paragraph within the forty-five (45) Day time period (or such additional time as EPA may allow) after the due date for the initial report for the Acid Gas Flaring Incident, the stipulated penalty provisions of Section V.M shall apply, but HOVENSA shall retain the right to dispute, under the dispute resolution provisions of Part XVI (Retention of Jurisdiction/Dispute Resolution), any demand for stipulated penalties that was issued as a result of HOVENSA's failure to complete the report required under this Paragraph within the time frame set forth. Nothing in this Paragraph shall be deemed to excuse HOVENSA from its investigation, reporting, and corrective

- 44 -

action obligations under this Section for any Acid Gas Flaring Incident which occurs after an Acid Gas Flaring Incident for which HOVENSA has requested an extension of time under this Subparagraph; and

      h.     To the extent that completion of the implementation of corrective action(s), if any, is not finalized at the time of the completion of the report for the Acid Gas Flaring Incident required under this Paragraph, then, by no later than thirty (30) Days after completion of the implementation of corrective action(s), HOVENSA shall supplement the report to identify the corrective action(s) taken and the dates of commencement and completion of implementation.

     61.    <u>Corrective Action.</u>

      a.     In response to any Acid Gas Flaring Incident occurring after the Date of Entry, HOVENSA shall take, as expeditiously as practicable, such interim and/or long-term corrective actions, if any, as are consistent with good engineering practice to minimize the likelihood of a recurrence of the Root Cause and all significant contributing causes of that Acid Gas Flaring Incident.

      b.     EPA does not, by its agreement to the entry of this Consent Decree or by its failure to object to any corrective action that HOVENSA may take in the future, warrant or aver in any manner that any of HOVENSA's corrective actions in the future will result in compliance with the provisions of the Clean Air Act or its implementing regulations. Notwithstanding EPA's review of any plans, reports, corrective actions or procedures under this Section, HOVENSA shall remain solely responsible for non-compliance with the Clean Air Act and its implementing regulations. Nothing in this Paragraph shall be construed as a waiver of

EPA's rights under the Clean Air Act and its regulations for future violations of the Act or its regulations.

       c.      After a review of any report required by Paragraph 60 and submitted as required by Paragraph 71, EPA shall notify HOVENSA in writing of (1) any deficiencies in the corrective actions listed in the findings and/or (2) any objections to the schedules of implementation of the corrective actions and explain the basis for EPA's objections. HOVENSA will implement an alternative or revised corrective action or implementation schedule based on EPA's comments. If a corrective action that EPA has identified as deficient has already commenced or is already completed, then HOVENSA is not obligated to implement corrective action identified by EPA for that Acid Gas Flaring Incident provided that HOVENSA completes the corrective action that it has identified and commenced. For purposes of this Subparagraph, "commenced" means HOVENSA has (i) commenced actual physical construction on the corrective action, or (ii) completed the engineering design for the corrective action and has purchased or entered into a binding contractual obligation (with adverse consequences from its breach) to purchase equipment necessary to implement the corrective action. However, HOVENSA will be put on notice that such corrective action is deficient and not acceptable for remedying any subsequent, similar Root Cause(s) of any Acid Gas Flaring Incident. If EPA and HOVENSA cannot agree on the appropriate corrective action(s) or implementation schedule(s), if any, to be taken in response to a Root Cause, either party may invoke the Dispute Resolution provisions of Part XVI (Retention of Jurisdiction/Dispute Resolution).

       d.      Nothing in this Section shall be construed to limit the right of HOVENSA to take such corrective actions as it deems necessary and appropriate immediately following an

- 46 -

Acid Gas Flaring Incident or in the period during preparation and review of any reports required under this Paragraph.

62. <u>Stipulated Penalties for Acid Gas Flaring Incidents.</u> The provisions of Paragraphs 63 through 66 are to be used by EPA in assessing stipulated penalties for each Acid Gas Flaring Incident occurring after the Date of Entry and by the United States in demanding stipulated penalties under this Section. The provisions of Paragraphs 63 through 66 do not apply to Hydrocarbon Flaring Incidents.

63. The stipulated penalty provisions of this Paragraph through Paragraph 66 shall apply to each Acid Gas Flaring Incident for which the Root Cause was one or more or the following acts, omissions, or events:

      a.     Error resulting from careless operation by the personnel charged with the responsibility for a Sulfur Recovery Plant, TGU, or Upstream Process Unit;

      b.     Failure to follow written procedures; or

      c.     A failure of equipment that is due to a failure by HOVENSA to operate and maintain that equipment in a manner consistent with good engineering practice.

      d.     For Root Causes previously identified pursuant to Paragraph 58 that EPA agrees caused Malfunctions, unless the Acid Gas Flaring Incident had as its Root Cause the recurrence of a Root Cause for which HOVENSA had previously developed, or was in the process of developing, a corrective action plan and for which HOVENSA had not yet completed implementation.

64. If the Acid Gas Flaring Incident is not a result of one of the Root Causes identified in Paragraph 63, then the stipulated penalty provisions of Paragraph 73 shall apply if the Acid Gas Flaring Incident:

a.     Results in emissions of $SO_2$ at a rate greater than twenty (20.0) pounds per hour continuously for three (3) consecutive hours or more and HOVENSA failed to act in accordance with its PMO Plan and/or to take any action during the Acid Gas Flaring Incident to limit the duration and/or quantity of $SO_2$ emissions associated with such incident; or

b.     Causes the total number of Acid Gas Flaring Incidents in a rolling twelve (12) month period to exceed five (5).

65.     With respect to any Acid Gas Flaring Incident not falling under the provisions of either Paragraph 63 or 64, the following provisions shall apply:

a.     First Time:  If the Root Cause of the Acid Gas Flaring Incident was not a recurrence of the same Root Cause that resulted in a previous Acid Gas Flaring Incident that occurred since the Date of Entry, then:

i.     If the Root Cause of the Acid Gas Flaring Incident was sudden, infrequent, and not reasonably preventable through the exercise of good engineering practice, then that cause shall be designated as an agreed-upon Malfunction for purposes of reviewing subsequent Acid Gas Flaring Incidents and the stipulated penalty provisions of Paragraph 73 shall not apply.

ii.     If the Root Cause of the Acid Gas Flaring Incident was sudden and infrequent, and was reasonably preventable through the exercise of good engineering practice, then HOVENSA shall implement corrective action(s) pursuant to Paragraph 61, and the stipulated penalty provisions of Paragraph 73 shall not apply.

     b.     Recurrence:  If the Root Cause is a recurrence of the same Root Cause that resulted in a previous Acid Gas Flaring Incident that occurred since the Date of Entry, then HOVENSA shall be liable for stipulated penalties under Paragraph 73 unless:

         i.     The AG Flaring Incident resulted from a Malfunction; or

         ii.     The Root Cause previously was designated as an agreed-upon Malfunction under Subparagraph 65.a.i; or

         iii.     The Acid Gas Flaring Incident had as its Root Cause the recurrence of a Root Cause for which HOVENSA had previously developed, or was in the process of developing, a corrective action plan and for which HOVENSA had not yet completed implementation.

     66.     Defenses.  HOVENSA may raise the following affirmative defenses in response to a demand by the United States for stipulated penalties:

     a.     *Force Majeure*

     b.     Malfunction

     67.     In the event a dispute under Paragraphs 62 through 66 is brought to the Court pursuant to the dispute resolution provisions of Part XVI (Retention of Jurisdiction/Dispute Resolution), HOVENSA may also assert a Startup, Shutdown, and/or Malfunction defense (including for an individual SRP), but the United States shall be entitled to assert that such defenses are not available.  If HOVENSA prevails in persuading the Court that the defenses of Startup, Shutdown, and/or Malfunction are available for Acid Gas Flaring Incidents under 40 C.F.R. § 60.104(a)(1), then HOVENSA shall not be liable for stipulated penalties for emissions resulting from such Startup, Shutdown, and/or Malfunction.  If the United States

prevails in persuading the Court that the defenses of Startup, Shutdown, and/or Malfunction are not available or applicable, then HOVENSA shall be liable for such stipulated penalties.

68.     Other than for a Malfunction or Force Majeure, if no Acid Gas Flaring Incident occurs for a rolling 36-month period, then the stipulated penalty provisions of Paragraph 73 shall no longer apply.  EPA may elect to reinstate the stipulated penalty provision if the Refinery has an Acid Gas Flaring Incident which would otherwise be subject to stipulated penalties.  EPA's decision shall not be subject to dispute resolution.  Once reinstated, the stipulated penalty provision shall thereafter apply to future Acid Gas Flaring Incidents and continue for the remaining life of this Consent Decree.

69.     <u>Emission Calculations.</u>

a.     <u>Calculation of the Quantity of $SO_2$ Emissions Resulting from Acid Gas Flaring</u>.  For purposes of this Consent Decree, the quantity of $SO_2$ emissions resulting from an AG Flaring Incident shall be calculated by the following formula:

Tons of $SO_2$ = [FR][TD][ConcH$_2$S][8.44 x 105].

The quantity of $SO_2$ emitted shall be rounded to one decimal point.  (Thus, for example, for a calculation that results in a number equal to 10.050 tons, the quantity of $SO_2$ emitted shall be rounded to 10.1 tons.)  For purposes of determining the occurrence of, or the total quantity of $SO_2$ emissions resulting from, an Acid Gas Flaring Incident that is comprised of intermittent Acid Gas Flaring, the quantity of $SO_2$ emitted shall be equal to the sum of the quantities of $SO_2$ emitted during each 24-hour period starting when the Acid Gas was first flared.

b.     <u>Calculation of the Rate of $SO_2$ Emissions During Acid Gas Flaring</u>.  For purposes of this Consent Decree, the rate of $SO_2$ emissions resulting from an Acid Gas Flaring

Incident shall be expressed in terms of pounds per hour and shall be calculated by the following formula:

$$ER = [FR][ConcH_2S][0.169].$$

The emission rate shall be rounded to one decimal point. (Thus, for example, for a calculation that results in an emission rate of 19.95 pounds of $SO_2$ per hour, the emission rate shall be rounded to 20.0 pounds of $SO_2$ per hour; for a calculation that results in an emission rate of 20.05 pounds of $SO_2$ per hour, the emission rate shall be rounded to 20.1.)

      c.     <u>Meaning of Variables and Derivation of Multipliers Used in the Equations in this Paragraph:</u>

| | | |
|---|---|---|
| ER | = | Emission Rate in pounds of $SO_2$ per hour |
| FR | = | Average Flow Rate to AG Flaring Device(s) during AG Flaring Incident in standard cubic feet per hour |
| TD | = | Total Duration of AG Flaring Incident in hours |
| ConcH$_2$S | = | Average Concentration of Hydrogen Sulfide in gas during AG Flaring Incident (or immediately prior to AG Flaring Incident if all gas is being flared) expressed as a volume fraction (scf $H_2S$/scf gas) |
| $8.44 \times 10^{-5}$ | = | [lb mole $H_2S$/379 scf $H_2S$][64 lbs $SO_2$/lb mole $H_2S$][Ton/2000 lbs] |
| 0.169 | = | [lb mole $H_2S$/379 scf $H_2S$][1.0 lb mole $SO_2$/1 lb mole $H_2S$][64 lb $SO_2$/1.0 lb mole $SO_2$] |

The flow of gas to the Acid Gas Flaring Device(s) ("FR") shall be as measured by the relevant flow meter or reliable flow estimation parameters. Hydrogen sulfide concentration ("ConcH$_2$S") shall be determined from the Sulfur Recovery Plant feed gas analyzer, from knowledge of the sulfur content of the process gas being flared, by direct measurement by Draeger type tube analysis, or by any other method approved by EPA or the VIDPNR. In the event that any of

- 51 -

these data points is unavailable or inaccurate, the missing data point(s) shall be estimated according to best engineering judgment. The report required to be prepared under this Paragraph shall include the data used in the calculation and an explanation of the basis for any estimates of missing data points.

70. <u>Tail Gas Incidents.</u>

a. <u>Investigation, Reporting, Corrective Action, and Stipulated Penalties</u>. For Tail Gas Incidents, HOVENSA shall follow the same investigative, reporting, corrective action, and assessment of stipulated penalty procedures as those set forth in Paragraphs 60 through 68 for Acid Gas Flaring Incidents. Those procedures shall be applied to TGU shutdowns, bypasses of a TGU, or other events which result in a Tail Gas Incident, including scheduled and unscheduled Shutdowns of a Claus Sulfur Recovery Plant. Until the date for installation of a second TGU for the East SRP, this Paragraph shall not apply to Tail Gas Incidents involving combustion of Tail Gas during periods of planned routine maintenance on Beavon #2, including Startup and Shutdown of Beavon #2 for such routine maintenance, provided that HOVENSA is complying with the Beavon # 2 interim performance standards established pursuant to Subparagraph 45.b.iii, 45.b.iv, or 45.b.v. HOVENSA shall continue to follow the Tail Gas Incident investigation and corrective action procedure after termination of the Consent Decree, but the reporting and stipulated penalty provisions of this Section shall not apply after termination.

b. <u>Calculation of the Quantity of $SO_2$ Emissions Resulting from a Tail Gas Incident</u>. For the purposes of this Consent Decree, the quantity of $SO_2$ emissions resulting from a Tail Gas Incident shall be calculated by one of the following methods, based on the type of event:

- 52 -

i.  If Tail Gas is combusted in an SRP incinerator, the $SO_2$ emissions are calculated using the methods outlined in Paragraph 69;

or

ii.  If Tail Gas exceeding the 250 ppmvd $SO_2$ is emitted from a monitored SRP incinerator, then the following formula applies:

$$ER_{TGI} = \sum_{i=1}^{TD_{TGI}} [FR_{Inc.}]_i [Conc.\ SO_2 - 250]_i [0.169 \times 10^{-6}]_i [(20.9 - \%\ O_2)/20.9]_i$$

Where:

| | | |
|---|---|---|
| $ER_{TGI}$ | = | Emissions from Tail Gas at the SRP incinerator, $SO_2$ lb 24 hour period |
| $TD_{TGI}$ | = | Total Duration (number of hours) when the incinerator CEMS exceeded 250 ppmvd $SO_2$ corrected to 0% $O_2$ on a rolling twelve hour average, in each 24 hour period of the Incident |
| i | = | Each hourly average |
| $FR_{Inc.}$ | = | Incinerator Exhaust Gas Flow Rate (standard cubic feet per hour, dry basis) (actual stack monitor data or engineering estimate based on the acid gas feed rate to the SRP) for each hour of the Incident |
| Conc. $SO_2$ | = | Each actual 12 hour rolling average $SO_2$ concentration (CEMS data) that is greater than 250 ppm in the incinerator exhaust gas, ppmvd corrected to 0% $O_2$, for each hour of the Incident. |
| % $O_2$ | = | $O_2$ concentration (CEMS data) in the incinerator exhaust gas in volume % on dry basis for each hour of the Incident |
| $0.169 \times 10^{-6}$ | = | [lb mole of $SO_2$ / 379 $SO_2$ ] [64 lbs $SO_2$ / lb mole $SO_2$ ] [1 x $10^{-6}$ ] |

Standard conditions = 68 degree F; 14.7 $lb_{force}$/sq.in. absolute

In the event the concentration $SO_2$ data point is inaccurate or not available or a flow meter for FRInc does not exist or is inoperable, then estimates will be used based on best engineering judgment.

71.    <u>Semi-Annual Reporting.</u>  Within thirty (30) Days after the end of the first semi-annual period after the Date of Entry, and semi-annually on each subsequent January 31 and July 31 thereafter, HOVENSA shall submit a semi-annual report that includes copies of each and every report of all Acid Gas Flaring Incidents and Tail Gas Incidents, as required in Paragraph 60, that HOVENSA was required to prepare during the previous six-month period (e.g., July to December).  Each semi-annual report shall also include a summary of the incidents including the following:

  a.  Date;

  b.  Summary of Root Cause(s);

  c.  Duration;

  d.  Amount of $SO_2$ released;

  e.  Any associated penalties for each incident;

  f.  Corrective Action completed; and

  g.  A list of all Acid Gas Flaring Incidents and Tail Gas Incidents for which corrective actions are still outstanding.

Such semi-annual report shall also include a summary analysis of any trends identified by HOVENSA in the number, Root Cause, types of corrective action, or other relevant information regarding Acid Gas and Tail Gas Incidents during the previous six-month period.  HOVENSA shall submit the semi-annual Flaring Incident(s) reports as part of the semi-annual progress reports required pursuant to Part X (Reporting and Recordkeeping).

- 54 -

**L.  Control of Hydrocarbon Flaring Incidents.**

72.  For Hydrocarbon Flaring Incidents occurring after the Date of Entry, HOVENSA shall follow the same investigative, reporting, and corrective action procedures as those set forth in Paragraphs 60 and 61 for Acid Gas Flaring Incidents; provided however, that in lieu of analyzing possible corrective actions under Paragraph 61 and taking interim and/or long-term corrective action under Paragraph 61 for a Hydrocarbon Flaring Incident attributable to the Startup or Shutdown of a unit that HOVENSA has previously analyzed under this Paragraph, HOVENSA may identify such prior analysis when submitting the report required under this Paragraph.  HOVENSA shall submit the Hydrocarbon Flaring Incident(s) reports as part of the semi-annual progress reports required pursuant to Part X (Reporting and Recordkeeping).

**M.  Stipulated Penalties Under This Section.**

73.  Nothing in this Section shall be understood to subject HOVENSA to stipulated penalties for Hydrocarbon Flaring Incidents under Paragraph 72.  HOVENSA shall be liable for the following stipulated penalties for violations of the requirements of Section V.K.  For each violation, the amounts identified below apply on the first day of violation, and are calculated for each incremental period of violation (or portion thereof):

a.  Acid Gas Flaring Incidents for which HOVENSA is liable under this Section.

| Tons of SO$_2$ Emitted in Acid Gas Flaring Incident | Length of Time from Commencement of Flaring within the Acid Gas Flaring Incident to Termination of Flaring within the Acid Gas Flaring Incident is 3 hours or less | Length of Time from Commencement of Flaring within the Acid Gas Flaring Incident to Termination of Flaring within the Acid Gas Flaring Incident is greater than 3 hours but less than or equal to 24 hours | Length of Time from Commencement of Flaring within the Acid Gas Flaring Incident to Termination of Flaring within the Acid Gas Flaring Incident is greater than 24 hours |
|---|---|---|---|
| 5 Tons or Less | $500 per ton | $750 per ton | $1000 per ton |
| Greater than 5 tons, but less than or equal to 15 tons | $1,200 per ton | $1,800 per ton | $2,300 per ton, up to, but not exceeding, $32,500 in any one calendar day |
| Greater than 15 tons | $1,800 per ton, up to, but not exceeding, $32,500 in any one calendar day | $2,300 per ton, up to, but not exceeding, $32,500 in any one calendar day | $32,500 in any one calendar day |

      i.      For purposes of calculating stipulated penalties pursuant to this Subparagraph, only one cell within the matrix shall apply. Thus, for example, for an Acid Gas Flaring Incident in which the Acid Gas Flaring starts at 1:00 p.m. and ends at 3:00 p.m., and for which 14.5 tons of SO$_2$ are emitted, the penalty would be $17,400 (14.5 x $1,200); the penalty would not be $13,900 [(5 x $500) + (9.5 x $1200)].

      ii.      For purposes of determining which column in the table set forth in this Subparagraph applies under circumstances in which Acid Gas Flaring occurs intermittently during an Acid Gas Flaring Incident, the Acid Gas Flaring shall be deemed to commence at the time that the Acid Gas Flaring that triggers the initiation of an Acid Gas Flaring Incident commences, and shall be deemed to terminate at the time of the termination of the last episode of Acid Gas Flaring

within the Acid Gas Flaring Incident.  Thus, for example, for Acid Gas Flaring within an Acid Gas Flaring Incident that (i) starts at 1:00 p.m. on Day 1 and ends at 1:30 p.m. on Day 1; (ii) recommences at 4:00 p.m. on Day 1 and ends at 4:30 p.m. on Day 1; (iii) recommences at 1:00 a.m. on Day 2 and ends at 1:30 a.m. on Day 2; and (iv) no further Acid Gas Flaring occurs within the Acid Gas Flaring Incident, the AG Flaring within the AG Flaring Incident shall be deemed to last 12.5 hours – not 1.5 hours – and the column for Acid Gas Flaring of "greater than 3 hours but less than or equal to 24 hours" shall apply.

b.  For failure to timely complete or submit any report required by Section V.K , or for completing or submitting any report that does not conform substantially to its requirements:

| Period of Non-Compliance | Penalty per day |
|---|---|
| Days 1-30 | $750 |
| Days 31-60 | $1,500 |
| Over 60 days | $3,000 |

c.  For those corrective action(s) which HOVENSA (i) agrees to undertake following receipt of an objection by EPA pursuant to Paragraph 61; or (ii) is required to undertake following dispute resolution, then, from the date of EPA's receipt of HOVENSA's semi-annual report under Paragraph 71 until the date that either:  (i) a final agreement is reached between EPA and HOVENSA regarding the corrective action; or (ii) a court order regarding the corrective action is entered, HOVENSA shall be liable for stipulated penalties as follows:

| Period of Non-Compliance | Penalty per day |
|---|---|
| Days 1-120 | $50 |
| Days 121-180 | $100 |
| Days 181 - 365 | $300 |
| Over 365 days | $3,000 |

or

1.2 times the economic benefit resulting from HOVENSA's failure to implement the corrective action(s).

    d.      For failure to complete any corrective action under Paragraph 61 in accordance with the schedule for such corrective action agreed to by HOVENSA or imposed on HOVENSA pursuant to the dispute resolution provisions of this Consent Decree (with any such extensions thereto as to which EPA and HOVENSA may agree in writing):

| Period of Non-Compliance | Penalty per day |
| --- | --- |
| Days 1-30 | $1,000 |
| Days 31-60 | $2,000 |
| Over 60 days | $5,000 |

## N.    Certification.

74.    All notices, reports, or any other submissions required of HOVENSA by Sections V.K and V.L shall contain the following certification:

> "I certify under penalty of law that this information was prepared under my direction or supervision by personnel qualified to properly gather and evaluate the information submitted. Based on my directions and after reasonable inquiry of the person(s) directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate and complete."

75.    Except as otherwise provided herein, the reporting requirements set forth in Sections V.K and V.L do not relieve HOVENSA of its obligation to territorial authority or EPA to submit any other reports or information required by the CAA, or by any other territorial, federal or local requirements.

## O.    CERCLA/EPCRA.

76.    To the extent that, during the course of HOVENSA's development of the Root Cause failure analysis required by Sections V.K and V.L, HOVENSA discovers information demonstrating a failure to comply with the reporting requirements for continuous releases of $SO_2$

- 58 -

pursuant to Section 103(c) of CERCLA and/or Section 304 of EPCRA, including the regulations

promulgated thereunder, a voluntary disclosure by HOVENSA of any such violations will not be

deemed "untimely" under EPA's Audit Policy, solely on the ground that it is submitted more

than twenty-one (21) Days after it is discovered, provided all such disclosures are made by no

later than the date specified in Appendix D ("List of Flaring Devices Subject to NSPS

Subparts J/Ja") for compliance of the relevant Flaring Device with NSPS Subpart Ja.

**P.      Benzene Waste NESHAP Program.**

Summary: In addition to continuing to comply with all applicable requirements of

40 C.F.R. Part 61, Subpart FF ("Benzene Waste NESHAP" or "Subpart FF"), HOVENSA agrees

to undertake the measures set forth in Section V.P to ensure continuing compliance with

Subpart FF and to minimize or eliminate fugitive benzene waste emissions at the HOVENSA

Refinery.

77.      Current Subpart FF Status. HOVENSA has determined that the Refinery has a

TAB of greater than 10 Mg/yr. The Refinery shall continue to comply with the compliance

option set forth in 40 C.F.R. § 61.342(c) (hereinafter referred to as the "2 Mg Compliance

Option").

78.      Refinery Compliance Status Changes. On and after the Date of Lodging,

HOVENSA shall only be allowed to change its compliance option to the 6 BQ Compliance

Option set forth at 40 C.F.R. § 61.342(e).

79.      One-Time Review and Verification of the Refinery's TAB and Compliance with

the Benzene Waste NESHAP.

a.      Phase One of the Review and Verification Process. Within one (1) year of

the Date of Lodging, HOVENSA shall complete a review and verification of the Refinery TAB

- 59 -

and its compliance with the Benzene Waste NESHAP (Phase One Review and Verification). HOVENSA's review and verification process shall include, but not be limited to:

      i.    An identification of each waste stream that is required to be included in the Refinery's TAB where these waste streams meet the definition of a waste under 40 C.F.R. § 61.341 (e.g., slop oil, tank water draws, spent caustic, spent caustic hydrocarbon layer, desalter rag layer dumps, desalter vessel process sampling points, other sample wastes, maintenance wastes, and turnaround wastes);

      ii.    A review and identification of the calculations and/or measurements used to determine the flows of each waste stream for the purpose of ensuring the accuracy of the annual waste quantity for each waste stream;

      iii.    An identification of the benzene concentration in each waste stream, including sampling for benzene concentration at no less than 10 waste streams consistent with the requirements of 40 C.F.R. § 61.355(c)(1) and (3); provided however, that previous analytical data or documented knowledge of waste streams may be used, 40 C.F.R. § 61.355(c)(2), for streams not sampled;

      iv.    An identification of any existing noncompliance with the requirements of Subpart FF.

By no later than sixty (60) Days following the completion of Phase One Review and Verification, HOVENSA shall submit a Benzene Waste NESHAP Compliance Review and Verification report ("BWON Compliance Review and Verification Report") that sets forth and certifies the results of Phase One, including but not limited to the items identified in Subparagraphs (i) through (iv) of this Paragraph.

b.    Phase Two of the Review and Verification Process.  Based on EPA's review of the BWON Compliance Review and Verification Report(s), EPA may select up to 20 additional waste streams at HOVENSA for sampling for benzene concentration.  HOVENSA shall conduct the required sampling under representative conditions and submit the results to EPA within sixty (60) Days of receipt of EPA's request.  HOVENSA shall use the results of this additional sampling to recalculate the TAB and the uncontrolled benzene quantity and to amend the BWON Compliance Review and Verification Report, as needed.  To the extent that EPA requires HOVENSA to re-sample any waste stream sampled by HOVENSA on or after January 1, 2007, HOVENSA may average the results of such sampling events.  HOVENSA shall submit an amended BWON Compliance Review and Verification Report within ninety (90) Days following the date of the submittal of the required Phase Two sampling report, if Phase Two sampling is required by EPA.

80.    Implementation of Actions Necessary to Correct Non-Compliance or to Come Into Compliance.

a.    Amended TAB Reports.  If the results of the BWON Compliance Review and Verification Report(s) indicate(s) that the reports submitted by HOVENSA pursuant to 40 C.F.R. § 61.357(c) have not been filed or are inaccurate and/or do not satisfy the requirements of Subpart FF, HOVENSA shall submit, by no later than sixty (60) Days after completion of the BWON Compliance Review and Verification Report(s), an amended TAB report for the last year to EPA and the VIDPNR.

b.    Submittal of Compliance Plan.  If the results of the BWON Compliance Review and Verification Report identify any compliance issues, HOVENSA shall submit to EPA and the VIDPNR by no later than 180 Days after completion of the BWON Compliance Review



and Verification Report, a plan that identifies with specificity a schedule that HOVENSA will

implement to ensure that the Refinery complies with the 2 Mg Compliance Option, as soon as

practicable.

        c.      Review and Approval of Plans Submitted Pursuant to Subparagraph 80.b.

Any plan submitted pursuant to Subparagraph 80.b, shall be subject to approval, disapproval or

modification by EPA. Within sixty (60) Days after receiving any notification of disapproval or

request for modification from EPA, HOVENSA shall submit to EPA and the VIDPNR a revised

plan that responds to all identified deficiencies. Upon receipt of approval or approval with

conditions, or if no approval, disapproval, or approval with conditions is provided by EPA,

HOVENSA shall implement the plan according to the schedule provided in the plan. Disputes

arising under this Subparagraph shall be resolved in accordance with the dispute resolution

provisions of Part XVI (Retention of Jurisdiction/Dispute Resolution).

        d.      Certification of Compliance with the 2 Mg Compliance Option. By no

later than thirty (30) Days after completion of the implementation of all actions, if any, required

pursuant to Subparagraphs 80.b or 80.c to come into compliance with the 2 Mg Compliance

Option, HOVENSA shall submit a report to EPA and the VIDPNR certifying that the Refinery

complies with the Benzene Waste NESHAP.

        81.      Carbon Canisters and Individual Drain System Vents. As of the Date of Lodging,

HOVENSA shall continue to operate the three-tier system for control of vents associated with

the Subpart FF wastewater collection system. Vent controls are identified as either Type I (a

single flow indicator "breather valve"), Type II ("breather valve" connected to a single carbon

canister), or Type III (dual carbon canisters). All closed vent piping associated with these vent

control systems will be monitored in accordance with the provisions associated with 40 C.F.R. § 61.349. HOVENSA shall comply with the following:

a.    All Type I vents with flow indicators (40 C.F.R. § 61.346(b)) shall be visually inspected for flow on a daily schedule. Flow shall be indicated if the flow indicator on the breather valve has lifted. Any "breather valve" determined to relieve six or more times in any consecutive two-month period will be converted to a Type II control system. Installation of the carbon canister required by conversion to the Type II control shall be completed within two weeks. Daily visual inspection of the Type I control system will continue until conversion to a Type II control is completed.

b.    All Type II vent control systems ("breather valve" connected to a single carbon canister) shall be visually inspected on a daily schedule.

i.    If the "breather valve" is determined not to have relieved, no additional monitoring is required. Secondly, if the "breather valve" is visually inspected and determined to have relieved, then the discharge opening of the carbon canister will be immediately monitored for benzene. If benzene concentration of carbon canister discharge is determined to be less than 5 ppm, no additional actions are required. If the benzene concentration of the carbon canister discharge is determined to be equal to or greater than 5 ppm, the carbon canister will be replaced by the end of the next Day.

ii.    For any Type II vent control system, if carbon canister replacement is required two or more times in any four consecutive week period the control system will be converted to a Type III system. Installation of the dual carbon canister system required by conversion to the Type III control shall be completed

within two weeks.   Daily inspection and monitoring (if required) of the Type II control system will continue until conversion to a Type III control is completed.

c.      All Type III vent control systems will be operated in the manner described in Subparagraphs c.i. through c.vii.

i.      Except as expressly permitted under Subparagraph c.v, HOVENSA shall not use single carbon canisters for any new process units or installations that require controls pursuant to the Benzene Waste NESHAP.

ii.      For dual carbon canister systems, "breakthrough" between the primary and secondary canister is defined as any reading equal to or greater than 5 ppm benzene.

iii.      HOVENSA shall monitor for breakthrough between the primary and secondary carbon canisters in accordance with the frequency specified in 40 C.F.R. § 61.354(d), or monthly, whichever is more frequent.  This requirement shall commence within seven (7) Days after installation of a new, dual carbon canister system.

iv.      HOVENSA shall replace the original primary carbon canisters immediately when breakthrough is detected between the primary and secondary canister.  The original secondary carbon canister will become the new primary carbon canister and a fresh carbon canister will become the secondary canister, or both canisters may be replaced.  For purposes of this Subparagraph, "immediately" shall mean by the end of the next calendar Day.

v.      Temporary Applications.  HOVENSA may utilize properly sized single canisters for short-term operations such as with temporary storage tanks or

- 64 -

as temporary control devices. For canisters operated as part of a single canister system, breakthrough is defined for purposes of this Consent Decree as any reading of benzene above 5 ppm. HOVENSA shall monitor for breakthrough from single carbon canisters each calendar day. HOVENSA shall replace the single carbon canister with a fresh carbon canister, discontinue flow, or route the stream to an alternate, appropriate device immediately when breakthrough is detected. For this Subparagraph, "immediately" shall mean by the end of the next Day. If HOVENSA discontinues flow to the single carbon canister or routes the stream to an alternate, appropriate control device, such canister must be replaced before it is returned to service.

vi.     HOVENSA shall maintain a readily available supply of fresh carbon canisters at all times or otherwise ensure that such canisters are readily available to implement the requirements of this Paragraph.

vii.     HOVENSA shall maintain records associated with the requirements of this Paragraph in accordance with or as under 40 C.F.R. § 61.356(j)(10), including the monitoring readings observed and the constituents being monitored.

82.     Laboratory Audits. All laboratories that perform analyses of HOVENSA's Benzene Waste NESHAP samples shall be audited to ensure that proper analytical and quality assurance/quality control procedures are followed for such samples. For purposes of this Paragraph, audits can include audits conducted by parties other than HOVENSA.

a.     Prior to conducting its Phase One Review and Verification process set forth in Paragraph 79.a, audits shall be completed of all laboratories used to perform analyses of

benzene waste NESHAP samples to ensure that proper analytical and quality assurance/quality control procedures are followed. In addition, an audit shall be conducted of any laboratory used for analyses of benzene samples prior to such use.

b. Subsequent laboratory audits shall be conducted for each laboratory continuing to perform analyses of HOVENSA's Benzene Waste NESHAP samples, such that each laboratory is audited every two (2) years for the life of the Consent Decree.

83. <u>Annual Program</u>. After the Date of Lodging, HOVENSA shall continue to use its written management of change procedures to review process information and construction projects, to ensure that all new benzene waste streams are included in HOVENSA's waste stream inventory.

84. <u>Training</u>. HOVENSA shall implement the following training program at the Refinery:

a. Within ninety (90) Days from the Date of Lodging or from the installation of any new benzene control equipment, HOVENSA shall complete the development of standard operating procedures for all control equipment used to comply with the Benzene Waste NESHAP.

b. Within nine (9) months from the Date of Entry, HOVENSA shall develop the BWON training program pursuant to the criteria in Appendix E ("HOVENSA'S LDAR and BWON Training Program Summary") and submit it to EPA;

c. Within twelve (12) months from the Date of Entry, HOVENSA shall provide an annual (i.e., once each calendar year) training program for employees (which shall include contract employees for purposes of this Paragraph) asked to draw benzene waste samples

as specified in 40 C.F.R. § 61.355. Such employees shall be trained prior to collecting samples and receive training annually.

        d.      All employees assigned to operate control equipment shall complete an initial training program on procedures specified in Subparagraph 84.a. This training shall be provided within twenty-four (24) months from Date of Entry and "refresher" training shall be performed every three (3) years thereafter, until termination of this Decree.

        e.      Training comparable to that specified in Subparagraph 84.d. shall also be provided to any persons who subsequently become operators, prior to their assumption of this duty or the installation of the equipment.

        f.      As part of HOVENSA's training programs, HOVENSA must require any contractor hired to operate benzene control equipment or perform benzene sampling to receive the training required by this Paragraph and HOVENSA shall maintain records of such training.

      85.      <u>Waste/Slop/Off-Spec Oil Management.</u>

        a.      <u>Control Status of and Plan to Quantify Uncontrolled Waste/Slop/Off-Spec Oil Streams.</u>

Within one (1) year from the Date of Lodging, HOVENSA shall submit to EPA and the VIDPNR a plan for quantifying waste/slop/off-spec oil movements for all benzene waste streams which are not controlled at the Refinery, along with schematics that: (i) depict the waste management units (including sewers) that handle, store, and transfer waste/slop/off-spec oil streams; (ii) identify the control status of each waste management unit; and (iii) show how such oil is transferred. Representatives from HOVENSA and EPA thereafter may confer about the appropriate characterization of the waste/slop/off-spec oil streams as benzene waste streams and the necessary controls, if any, for the waste management units handling such oil streams for

- 67 -

purposes of the Refinery's TAB calculation and/or compliance with the 2 Mg Compliance Option. If requested by EPA, HOVENSA shall promptly submit revised schematics that reflect the Parties' agreements regarding the characterization of these oil streams and the appropriate control standards. HOVENSA shall use these plans and schematics in preparing the end-of-line sampling plans required under Paragraph 87.

       b.     <u>Non-Aqueous Benzene Waste Streams.</u> On and after the Date of Lodging, all waste management units handling non-exempt, non-aqueous benzene wastes, as defined in Subpart FF, shall meet the applicable control standards of Subpart FF.

       c.     <u>Aqueous Benzene Waste Streams.</u> For purposes of calculating the TAB pursuant to the requirements of 40 C.F.R. § 61.342(a), HOVENSA shall include all waste/slop/off-spec oil streams that become "aqueous" until such streams are recycled to a process or put into a process feed tank (unless the tank is used primarily for the storage of wastes). Appropriate adjustments shall be made to such calculations to avoid the double counting of benzene. For purposes of complying with the 2 Mg Compliance Option, all waste management units handling aqueous benzene waste streams shall either meet the applicable control standards of Subpart FF or shall have their uncontrolled benzene quantity count toward the applicable 2 Mg limit.

    86.    <u>Benzene Waste Operations Sampling Plans: General.</u> Within one (1) year of the Date of Lodging, HOVENSA will submit to EPA and the VIDPNR for EPA approval, benzene waste operations sampling plans designed to describe the sampling of benzene waste streams that HOVENSA will utilize to estimate quarterly and annual TABs.

    87.    <u>Benzene Waste Operations Sampling Plans: Content Requirements.</u>
The sampling plan shall include, but need not be limited to:

a. Quarterly sampling of all uncontrolled waste streams that count toward the 2 Mg/yr calculation and could contain greater than 0.05 Mg/yr or more.

b. Quarterly sampling of all uncontrolled waste streams that qualify for the 10 ppmw exemption (40 C.F.R. § 61.342(C)(2)) and contain greater than 0.1 Mg/yr of benzene.

c. The proposed End-of-Line (EOL) sampling locations and methods for flow calculations to be used in calculating projected quarterly and annual TAB calculations under the terms of Paragraph 90. Based on the current configuration of the Refinery's wastewater system, overflows from API separators 1, 2, and 3 are the only "routine" wastewater benzene streams not controlled in accordance with Subpart FF. Therefore, sampling of the three API overflow streams will constitute the individual EOL locations. The uncontrolled benzene contributions from these individual sources will be included in the calculations required by Paragraph 90.

d. The sampling plan will require HOVENSA to take, and have analyzed, in each Calendar Quarter, at least three representative samples from each sampling location identified in the plan required by this Paragraph.

88. <u>Benzene Waste Operations Sampling Plans: Timing for Implementation.</u> HOVENSA will implement the sampling required under the sampling plan during the first full Calendar Quarter after HOVENSA submits the plan. HOVENSA will continue to implement the sampling plan unless and until (a) EPA disapproves the plan; or (b) HOVENSA modifies the plan, with EPA's approval, under Paragraph 89.

89. <u>Benzene Waste Operations Sampling Plans: Modifications.</u>

a. <u>Changes in Processes, Operations, or Other Factors.</u> If changes in processes, operations, or other factors lead HOVENSA to conclude that the sampling plan may

no longer provide an accurate basis for estimating the Refinery's quarterly or annual uncontrolled benzene quantity under Paragraph 90, then by no later than ninety (90) Days after HOVENSA determines that the plan no longer provides an accurate measure, HOVENSA will submit to EPA and the VIDPNR a revised plan for EPA approval. In the first full Calendar Quarter after submitting the revised plan, HOVENSA will implement the revised plan. HOVENSA will continue to implement the revised plan unless and until EPA disapproves the revised plan.

        b.    <u>Requests for Modifications to the Sampling Frequency</u>. After two (2) years of implementing a sampling plan, HOVENSA may submit a request to EPA for approval, with a copy to the VIDPNR, to reduce the facility's sampling frequency. EPA will not unreasonably withhold its consent. HOVENSA will not implement any proposed revisions under this Subparagraph until EPA provides its approval.

        90.    <u>Quarterly and Annual Estimations of Uncontrolled Benzene Quantities</u>. At the end of each Calendar Quarter and based on sampling results and approved flow calculations, HOVENSA will calculate a quarterly and projected annual uncontrolled benzene quantity.

        91.    In making the calculations required by Paragraph 90, HOVENSA will use the average of the three samples collected at each sampling location. If these calculations do not identify any potential violations of the benzene waste operations NESHAP, HOVENSA will submit these calculations in the reports due under this Section.

        92.    <u>Corrective Measures: Basis</u>. If the quarterly or annual uncontrolled benzene calculations required pursuant to Paragraph 90 project or demonstrate that the uncontrolled benzene quantity exceeds 2 Mg/yr, then by no later than sixty (60) Days after the end of the Calendar Quarter, HOVENSA will submit a compliance assurance plan to EPA for approval,

with a copy to the VIDPNR. In that compliance assurance plan, HOVENSA will identify the quantity and cause(s) of the potentially-elevated benzene quantities, all corrective actions that HOVENSA has taken or plans to take to ensure that the cause(s) will not recur, and the schedule of actions that HOVENSA will take to ensure that the Refinery complies with the Benzene Waste Operations NESHAP for the calendar compliance year. HOVENSA will implement the plan unless and until EPA disapproves.

93. <u>Miscellaneous Measures.</u>

    a.    As of the Date of Lodging, HOVENSA shall:

        i.    Conduct monthly visual inspections of and, if appropriate, refill all water traps used to comply with Subpart FF within the Refinery's individual drain systems;

        ii.    Ensure that all segregated stormwater drains are marked at the drain (color coding may be used);

        iii.    Conduct monitoring of existing API Separators 1, 2, and 3 or any new Subpart FF-regulated oil/water separators as outlined below:

           (1)    Conduct semi-annual seal gap measurements on all floating roof portions in accordance with 40 C.F.R. § 60.693-2.

           (2)    The fixed roof portions of all Subpart FF regulated oil/water separators shall be monitored on a quarterly basis if Method 21 monitoring conducted pursuant 40 C.F.R. § 61.355(h) determine a leak rate of greater than one (1) percent. Monitoring of the fixed roof portion of all Subpart FF required oil/water separators will be conducted annually if Method 21 monitoring conducted pursuant to 40 C.F.R. § 61.355(h)

- 71 -

determine a leak rate of one (1) percent or less.

(3)     A current listing, as of Date of Lodging, of all Method 21 monitoring locations for API Separators 1, 2, and 3 is attached in Appendix F ("Method 21 Monitoring Locations for API Separators 1, 2 and 3"). When modifications to the API separators occur, HOVENSA shall update and maintain a current listing of all monitoring locations for API Separators 1, 2, and 3.

94.     Record Keeping and Reporting Requirements for this Section Outside of the Reports Required under 40 C.F.R. § 61.357 or under the Progress Report Procedures of Part X (Reporting and Recordkeeping). At the times specified in the applicable provisions of this Section, HOVENSA will submit, as and to the extent required, the following reports to EPA and the VIDPNR:

a.     BWON Compliance Review and Verification Report (Subparagraph 79.a), as amended, if necessary (Subparagraph 79.b);

b.     Amended TAB Report, if necessary (Subparagraph 80.a.);

c.     Plan for the Refinery to come into compliance with the 2 Mg Compliance Option upon discovering that the uncontrolled benzene quantity calculated for Paragraph 90, or through other means, exceeds 2 Mg/yr (Paragraph 92);

d.     Compliance certification, if necessary (Subparagraph 80.d);

e.     Schematics of waste/slop/off-spec oil movements (Subparagraph 85.a.), as revised, if necessary; and

f.     Sampling Plans (Paragraph 86), and revised Sampling Plans, if necessary (Subparagraph 89.a).

- 72 -

95. <u>Record Keeping and Reporting Requirements for this Section: As Part of Either the Reports Required under 40 C.F.R. § 61.357 or the Progress Report Procedures of Part X (Reporting and Recordkeeping).</u> HOVENSA will submit the following information as part of the information submitted in either the quarterly report required pursuant to 40 C.F.R. § 61.357(d)(6) and (7) or in the reports due pursuant to Part X (Reporting and Recordkeeping):

a. <u>Sampling Results under Paragraph 86.</u> The report will include a list of all waste streams sampled, the results of the benzene analysis for each sample, the computation of the quarterly and projected calendar year TAB, and the quarterly and projected calendar year uncontrolled benzene quantity;

b. <u>Training.</u> Initial and/or subsequent training conducted in accordance with Paragraph 84; and

c. <u>Laboratory Audits.</u> Initial and subsequent audits conducted pursuant to Paragraph 82 in the reporting period for which the report is due, including in each such report, at a minimum, the identification of each laboratory audited, a description of the methods used in the audit, and the results of the audit.

96. At any time after two (2) years of reporting pursuant to the requirements of Paragraph 95, HOVENSA may submit a request to EPA to modify the reporting frequency for any or all of the reporting categories of Paragraph 95. This request may include a request to report the projected calendar year TAB and uncontrolled benzene quantity in the annual report due on March 1st of each year required by 40 C.F.R. §61.357(d). HOVENSA will not change the due dates for its reports under Paragraph 95 unless and until EPA approves HOVENSA's request.

97.  Certifications Required in this Section.

Certifications required under this Section will be made in accordance with the provisions of Part X (Recording and Recordkeeping).

98.  Agencies to Receive Reports, Plans and Certifications Required in this Section; Number of Copies.  Unless otherwise specified in this Section, HOVENSA shall submit all reports, plans and certifications required to be submitted under this Section to EPA, EPA Region 2 and the VIDPNR.  For each submission, HOVENSA shall submit two copies to EPA, two copies to EPA Region 2, and two copies to the VIDPNR.  By agreement between HOVENSA and each of the offices that are to receive the materials in this Section, HOVENSA may submit the materials electronically with a single electronic submission.

Q.  NSPS QQQ.

99.  Within twelve (12) months of the Date of Lodging, HOVENSA shall prepare and submit to EPA a compliance plan specifying the projects necessary to bring the FCCU and Coker Drain Systems into compliance with 40 C.F.R. Subpart QQQ.  Such compliance plan shall include an implementation schedule, and HOVENSA shall complete the projects within the time provided by the compliance plan, but by no later than June 30, 2011.

R.  Leak Detection and Repair ("LDAR") Program.

100.  Introduction.  In order to minimize or eliminate fugitive emissions of volatile organic compounds (VOCs), benzene, volatile hazardous air pollutants (VHAPs), and organic hazardous air pollutants (HAPs) from equipment in light liquid and/or in gas/vapor service, HOVENSA shall comply with the leak detection and repair (LDAR) requirements of this Section.  The terms "in light liquid service" and "in gas/vapor service" shall have the definitions

- 74 -

set forth in the applicable provisions of 40 C.F.R. Part 60, Subpart VV and GGG; Part 61, Subparts J and V; Part 63, Subparts F, H, and CC.

101. No later than three (3) years after the Date of Lodging, the group of all equipment within each process unit (as "equipment" and "process unit" are defined by 40 C.F.R. § 60.591) and each compressor shall become affected facilities under 40 C.F.R. Part 60, Subpart GGG, and shall become subject to and comply with the requirements of 40 C.F.R. Part 60, Subpart GGG, and the requirements of this Section. Valves which HOVENSA currently monitors in these process units on a voluntary basis shall continue to be monitored, at least annually, until such process units have become affected facilities under NSPS Subpart GGG pursuant to this Paragraph. On and after the date the lower leak definitions in Paragraph 109 become effective, HOVENSA shall perform leak percentage calculations in NSPS Subpart GGG process units based on the total number of light liquid and gas/vapor service valves monitored in the process unit during the period.

102. No later than ninety (90) Days after the Date of Lodging, HOVENSA shall submit a plan and schedule, for review and approval by EPA, for bringing the Refinery into compliance with the requirements of 40 C.F.R. Part 60, Subpart GGG, and the requirements of this Section which will include interim milestone dates, designed to achieve full compliance within three (3) years after the Date of Lodging. EPA shall notify HOVENSA after the plan is approved. If the plan is not approved, HOVENSA shall modify and resubmit the plan as required by EPA.

103. Written Refinery-Wide LDAR Program. No later than nine (9) months after the Date of Lodging, HOVENSA shall develop and maintain a written refinery-wide program for compliance with applicable LDAR Regulations and the requirements of this Consent Decree, which shall include:

        a.     Procedures to identify all equipment in light liquid and/or in gas/vapor service that is subject to the LDAR regulations and has the potential to leak VOCs, HAPs, VHAPs, and benzene within process units;

        b.     Procedures for identifying leaking equipment within process units;

        c.     Procedures for repairing and keeping track of leaking equipment;

        d.     Procedures for identifying and including in the LDAR program new equipment; and

        e.     A process for evaluating new and replacement equipment to promote consideration and installation of equipment that will minimize leaks and/or eliminate chronic leakers.

HOVENSA shall submit to EPA a copy of the written refinery-wide LDAR program developed pursuant to this Paragraph in the next semi-annual report following the development of the program.

    104.    <u>Alternate Leak Detection Method.</u>  With EPA's written approval and regulations allowing for the substitution of an optical imaging technology-based LDAR program for a Method 21-based LDAR program have been adopted by EPA and are in effect, HOVENSA may begin using an alternate leak detection method. If necessary to implement this Paragraph, the Parties shall make appropriate modifications to this Consent Decree in accordance with Paragraph 228. EPA may request that HOVENSA submit a protocol demonstrating that an optical imaging-based LDAR program is equivalent to or better than a Method 21-based LDAR program.

    105.    <u>Training.</u>  HOVENSA shall implement the following training program at the Refinery:

     a.     Within nine (9) months from the Date of Entry, develop the LDAR training program pursuant to the criteria in Appendix E ("HOVENSA'S LDAR and BWON Training Program Summary") and submit it to EPA;

     b.     Within twelve (12) months from the Date of Entry, provide LDAR training to existing personnel assigned to LDAR responsibilities (including but not limited to monitoring, recordkeeping, reporting, or data management). For newly hired personnel with LDAR program responsibilities hired after twelve (12) months from Date of Entry, provide LDAR training prior to the personnel beginning work. All employees assigned to LDAR responsibilities shall receive training annually.

     c.     For other Refinery operations and maintenance personnel whose duties include limited LDAR responsibilities, provide training developed pursuant to the criteria in Appendix E ("HOVENSA'S LDAR and BWON Training Program Summary") that includes instruction on those aspects of LDAR relevant to the person's duties. This training shall be provided within twenty-four (24) months from Date of Entry, and every three (3) years thereafter, until termination of this Consent Decree. For newly hired operations and maintenance personnel hired after twenty-four (24) months from Date of Entry, such training shall be provided within six (6) months of hiring; and

     d.     If contractors are used to fulfill the requirements of this Section, HOVENSA shall require that such contractors shall be trained as required by this Paragraph, and HOVENSA shall maintain records of such training.

    106.    <u>LDAR Audits</u>. By no later than one (1) year from the Date of Lodging, HOVENSA shall implement the refinery-wide audits set forth in this Paragraph, to ensure the Refinery's compliance with all applicable LDAR Regulations and the requirements of this

Consent Decree. The LDAR audits shall include but shall not be limited to, comparative monitoring, records review to ensure monitoring and repairs were completed in the required periods, field reviews to ensure all regulated equipment is included in the LDAR program, a review to ensure records and reports have been maintained and submitted as required, and observation of the LDAR technicians' calibration and monitoring techniques. During the LDAR audits, leak rates shall be calculated for each process unit where comparative monitoring was performed.

      a.    <u>Initial Compliance Audit</u>. Within one (1) year from the Date of Lodging, HOVENSA shall complete a refinery-wide third-party audit of its compliance with the LDAR Regulations and the requirements of applicable Sections of this Consent Decree, which includes, at a minimum, each of the audit requirements set forth in this Paragraph. For purposes of this requirement, "third party" may include a qualified contractor, consultant, industry group, or trade association. Within thirty (30) Days of receipt of the completed audit, HOVENSA shall report to EPA and the VIDPNR any areas of non-compliance identified as a result of its audit and submit in writing a proposed compliance schedule for correcting the non-compliance. If the proposed compliance schedule extends greater than sixty (60) Days beyond the audit completion date, HOVENSA must seek approval of the compliance schedule from EPA. HOVENSA shall implement the compliance schedule as proposed until the schedule is approved or disapproved by EPA. Within one (1) year of Date of Entry, HOVENSA shall certify to EPA that the Refinery:

      i.    Is in compliance;

      ii.    Has completed related corrective action and/or is on a compliance schedule (if necessary); and

        iii.     Shall specifically certify that all existing equipment has been identified and included in the facility LDAR program, to the extent required by applicable regulations and this Consent Decree, as of the date such certification is made.

    b.    <u>Subsequent Audits.</u>

        i.     <u>Third-Party Audits</u>.  HOVENSA shall retain an independent contractor(s) to perform a third-party audit of its LDAR program compliance with applicable LDAR Regulations and the requirements under this Section, at least once every four (4) years, in the same Calendar Quarter.

        ii.     <u>Internal Audits</u>.  HOVENSA shall conduct internal audits by retaining third parties or having personnel from a refiner under common ownership with an entity that owns at least a 25% ownership stake in HOVENSA, provided that such refiner is a signatory to a global refinery Consent Decree, audit HOVENSA's LDAR program compliance with applicable LDAR Regulations and the requirements under this Section.  HOVENSA shall complete the first internal LDAR audit within the same Calendar Quarter and by no later than two (2) years after its initial third-party audit was conducted according to Subparagraph 106.a.  Internal audits shall be conducted, in the same Calendar Quarter, at least once every four (4) years thereafter.

    107.    <u>Implementation of Actions Necessary to Correct Non-Compliance</u>.  If the results of any of the audits conducted pursuant to this Section identify any area(s) of non-compliance, HOVENSA shall implement, as soon as practicable, all appropriate steps necessary to correct the area(s) of non-compliance and to prevent a recurrence of the cause of the non-compliance, to the

- 79 -

extent practicable. For purposes of this Paragraph, if a ratio of the process-unit valve leak percentage established through a comparative monitoring audit conducted pursuant to Paragraph 106, and the average valve leak percentage reported for the process unit for the last four (4) monitoring periods preceding the audit, is equal to or greater than 3.0, and provided the auditor identified at least three (3) leaking valves in the process unit, it shall be deemed an area of non-compliance and cause for corrective action. If the calculated ratio yields an infinite result, HOVENSA shall assume one (1) leaking valve was found in the process unit through its routine monitoring during the four (4) monitoring periods. In the Semi-Annual LDAR Report submitted pursuant to the provisions of Paragraph 123 covering the period when an audit was conducted, HOVENSA shall submit the results of the audit, and shall certify to EPA that the audit has been completed and that the Refinery is in compliance or on a compliance schedule.

108. <u>Retention of Audit Reports</u>. Until termination of the Consent Decree, HOVENSA shall retain the audit reports generated pursuant to this Section and shall maintain a written record of the corrective actions taken in response to any deficiencies identified in any audits.

109. <u>Internal Leak Definition for Valves and Pumps</u>. HOVENSA shall utilize the following internal leak definitions for valves and pumps in light liquid and/or gas/vapor service, unless a lower leak definition is established under applicable permit(s) or applicable LDAR Regulations, within three (3) years of the Date of Lodging:

a. <u>Leak Definition for Valves</u>. An internal leak definition of 500 ppm VOCs for refinery valves in light liquid and/or in gas/vapor service.

b. <u>Leak Definition for Pumps</u>. An internal leak definition of 2000 ppm VOCs for refinery pumps in light liquid and/or in gas/vapor service.

110.    <u>Reporting Leaks of Valves and Pumps.</u>  For regulatory reporting purposes, HOVENSA may continue to report leak rates in valves and pumps against the applicable regulatory leak definition, or may use the lower, internal leak definitions specified in Paragraph 109.

111.    <u>Recording, Tracking, Repairing and Remonitoring Leaks Based on the Internal Leak Definitions.</u>  HOVENSA shall record, track, repair and remonitor all leaks in excess of the internal leak definitions of Paragraph 109 (at such time as those definitions become applicable) in accordance with applicable provisions of the LDAR Regulations, except that HOVENSA shall have five (5) Days to make an initial attempt at repair, and fifteen (15) Days either to make final repairs and remonitor the leak or to manage the leak according to Paragraph 121.

112.    <u>HOVENSA Valve Preventative Leak Maintenance Program.</u>  Within eighteen (18) months of the Date of Lodging, HOVENSA shall implement a Valve Preventative Leak Maintenance Program according to Appendix G ("Valve Preventative Leak Maintenance Procedure Workflow Diagram") and this Paragraph.  In the event of any inconsistency between the language of this Paragraph and Appendix G ("Valve Preventative Leak Maintenance Procedure Workflow Diagram"), the provisions of this Paragraph shall control.

a.      Under the Valve Preventative Leak Maintenance Program, HOVENSA shall perform the following surveys, at the times and/or intervals established in Appendix G ("Valve Preventative Leak Maintenance Procedure Workflow Diagram"):

i.      <u>External Valve Survey.</u>  HOVENSA shall assess the external and process conditions of valves, including but not limited to the following:  condition of the valve stem (e.g., pitted, corroded, or scarred), condition of the packing gland, follower, and gland bolts (e.g., corroded, stripped threads, or bottomed-

- 81 -

out), the overall condition of the valve (e.g., corroded), and the design process temperature, pressure, and hydrocarbon service of the valve. HOVENSA shall also determine as part of the external valve survey whether or not the valve can be isolated for repair while in service, whether or not the valve can be repaired through back-seating, live-loading, or other on-line repair/repack techniques, and/or whether the valve requires a process unit shutdown for repair.

ii.     Stuffing Box Survey.  As provided in Appendix G ("Valve Preventative Leak Maintenance Procedure Workflow Diagram"), HOVENSA shall assess the valve stuffing box condition, including but not limited to the following:  inside diameter, outside diameter, depth of stuffing box, packing type, and amount of packing.

b.      HOVENSA shall repack or replace valves, prior to or during process unit turnarounds or tank outages, as outlined in Appendix G ("Valve Preventative Leak Maintenance Procedure Workflow Diagram").

c.      HOVENSA shall ensure all newly installed valves are fitted, prior to installation, with packing or valve technology which is designed by the manufacturer to prevent leaks above 100 ppm for a period of at least five (5) years after installation.

d.      HOVENSA shall establish a comprehensive tracking database to record the following Valve Preventative Leak Maintenance Program information:

i.      For newly-installed valves, the date each valve was installed and the type of packing present in the valve upon installation;

ii.     The results of all external valve surveys and stuffing box surveys with valve isolation determination;

- 82 -

iii.    For each valve required to undergo an external valve survey, the date and type of final repair action undertaken and the name of person performing the repair action.  If no repair action was taken, record the justification for why no action was taken; and

iv.    The feasibility of performing live-loading or back-seating repair techniques on equipment still in VOC-service.

e.    HOVENSA shall analyze the information collected under Subparagraph 112.d at least once every two (2) years after the requirements of this Paragraph become effective, and shall specifically analyze the information for trends in equipment failures, successful repair techniques, and other data to help increase the effectiveness of the Valve Preventative Leak Maintenance Program.  HOVENSA shall report the results of this evaluation to EPA in the next periodic report due after the analysis required by this Subparagraph.

113.    LDAR Monitoring Frequency.

a.    Pumps.  When the lower leak definition for pumps becomes applicable pursuant to Paragraph 109, HOVENSA shall monitor pumps at the lower leak definition on a monthly basis.

b.    Valves.  Unless more frequent monitoring is required by applicable federal requirements, HOVENSA shall monitor valves, at the internal leak definition under Paragraph 109, according to the monitoring frequencies required by 40 C.F.R. §§ 60.482-7 and 60.483-2, except that under Section 60.482-7(c)(2), if a leak is detected, the valve shall be monitored monthly until a leak is not detected for 12 consecutive months.

114.    Electronic Storage of LDAR Data.  On and after the Date of Lodging, HOVENSA shall record all LDAR monitoring and repair data in an electronic database.

- 83 -

115. <u>Electronic Monitoring and Reporting of LDAR Data.</u>  On and after the Date of Lodging, HOVENSA shall use dataloggers and/or electronic data collection devices during LDAR monitoring.  HOVENSA or contractor(s) retained by HOVENSA shall use their best efforts to transfer each monitoring reading to the database within five (5) Days of collecting the reading.  For all monitoring events in which an electronic data collection device is used, the collected monitoring data shall include a time and date stamp, screening value, operator identification, and instrument identification.  HOVENSA may use paper logs where necessary or more feasible (e.g., small rounds, remonitoring, or when dataloggers are not available or broken), and shall record the identification of the technician undertaking the monitoring, the date, time, screening value, and the identification of the monitoring equipment.  HOVENSA shall transfer any manually recorded monitoring data to the electronic database within seven (7) Days of monitoring.

116. <u>QA/QC of LDAR Data.</u>  By no later than ninety (90) Days after the Date of Lodging, HOVENSA shall develop and implement a procedure to ensure a quality assurance/quality control ("QA/QC") review of all data generated by each LDAR monitoring technician.   This QA/QC procedure shall require:

      a.      Monitoring technician(s) to review and certify the accuracy of the monitoring data they collected each week; and

      b.      Non-monitoring personnel to review monitoring data quarterly, including but not limited to, number of components monitored per technician, time between monitoring events, and abnormal data patterns.

117. <u>LDAR Personnel.</u>  By no later than the Date of Lodging, HOVENSA shall maintain its current program which holds HOVENSA LDAR personnel accountable for LDAR

- 84 -

performance.  HOVENSA shall maintain a position with responsibility for LDAR management and with the authority to implement improvements.

118.  <u>Adding New Valves and Pumps.</u>  On and after the Date of Lodging, HOVENSA shall continue to implement its tracking program for maintenance records (e.g., a Management of Change program) to ensure that valves and pumps subject to the LDAR Regulations and this Consent Decree, which are installed and placed into VOC service, are integrated into the LDAR program.

119.  <u>Calibration.</u>  HOVENSA shall conduct all calibrations of LDAR monitoring equipment using methane as the calibration gas, in accordance with 40 C.F.R. Part 60, EPA Reference Test Method 21.

120.  <u>Calibration Drift Assessment.</u>  Within six calendar months of the Date of Lodging, HOVENSA shall conduct calibration drift assessments of LDAR monitoring equipment at the end of each monitoring shift, at a minimum.  HOVENSA shall conduct the calibration drift assessment using a calibration gas corresponding to the then-applicable leak definition for valves.  If any calibration drift assessment after the initial calibration shows a negative drift of more than 10% from the previous calibration, HOVENSA shall remonitor the following equipment: (a) all valves subject to the LDAR Regulations and this Consent Decree that were monitored since the last calibration and that had a reading greater than 500 ppm if the applicable leak definition for valves is 10,000 ppm, or 100 ppm if the applicable leak definition for valves is 500 ppm; and (b) all pumps subject to the LDAR Regulations and this Consent Decree that were monitored since the last calibration and that had a reading greater than 2,000 ppm if the applicable definition for pumps is 10,000 ppm, or 500 ppm if the applicable leak definition for pumps is 2,000 ppm.

- 85 -

121. <u>Extended Maintenance and Delay of Repair.</u> Beginning no later than one (1) year from Date of Lodging, HOVENSA shall eliminate normal use of delay of repair exemptions for equipment in VOC service (as defined in 40 C.F.R. § 60.481) under applicable regulations and this Consent Decree, and shall perform monitoring and maintenance as follows: perform monitoring and "drill and tap" repairs according to Subparagraphs 121.a and b, and perform extended maintenance to attempt to stop the leak source as outlined under Subparagraph 121.c. If HOVENSA, after having implemented one or more of the extended maintenance leak repair techniques identified in Subparagraph 121.c, cannot repair the leak, HOVENSA may delay repair of the leak until the next process unit shutdown. Extended maintenance shall not be required where any of the following is the case: (i) for the period beginning no later than one (1) year from the Date of Lodging through five (5) years of the Date of Entry, the number of valves on the delay of repair list does not exceed 0.1 percent refinery-wide upon determination of delay of repair; and for the period beginning no later than five (5) years of the Date of Entry, the number of valves on the delay of repair list does not exceed 0.05 percent refinery-wide upon determination of delay of repair; or (ii) the feasible extended maintenance techniques listed in Subparagraph 121.c would result in a shutdown of a process unit or create an unsafe operating condition. HOVENSA shall report the circumstances (why it was required, what was actually performed, whether it was successful) of all leaks attempted to be repaired under Subparagraph 121.c in semi-annual reports required under Paragraph 71.

     a.     For all equipment:

            i.     Require sign-off by the Area Manager or designee by the 15th day after identification of the leak that the equipment cannot be removed from VOC

service and is technically infeasible to repair without implementation of extended maintenance as set forth in Subparagraph 121.c; and

   ii.  Monitor monthly equipment on the "delay of repair" list which remains in VOC service.

  b.  For valves: For valves, other than control valves and pressure relief valves, require use of "drill and tap" or similarly effective repairs, unless the valve can be repaired by other means or HOVENSA can demonstrate that there is a safety, mechanical, or adverse environmental concern posed by attempting to repair the leak in this manner. HOVENSA shall perform multiple "drill and tap" attempts (or similarly effective repairs) within fifteen (15) Days of identification of the leak, if necessary, to repair the valve. If a new method develops for repairing such valves, HOVENSA will advise EPA prior to implementing the use of such new method in place of drill and tap for repairs required under this Consent Decree.

  c.  If the repair methods undertaken pursuant to Subparagraph 121.b have not stopped the source of the leak, HOVENSA shall, within sixty (60) Days of identifying the leak, perform at least one extended maintenance attempt to stop the leak source, including building an enclosure for the equipment which meets 'no detectable emissions' standards under NSPS Subpart VV, line-stopping (i.e., inserting a plugging device inside the line so the contents can temporarily be held back while maintenance is performed on-line), hot-tapping (i.e., connecting a new piping service to an existing line with no interruption of flow), or pipe-freezing (i.e., holding back system pressure in a section of piping using freeze chambers which are installed over a short section of piping and injected with liquid nitrogen or $CO_2$). HOVENSA shall report the circumstances (why it was required, what was actually performed, was it successful) of all leaks attempted to be repaired or exempt from repair under this Subparagraph in semi-annual reports



required under Part X (Reporting and Recordkeeping). If HOVENSA applies a different extended repair technique than those listed in this Subparagraph, HOVENSA shall report such technique under Paragraph 123 and explain how it is similarly effective at stopping the leak, and shall specifically explain why this technique could not be applied within fifteen (15) Days of identification of the leak.

122. <u>Recordkeeping Requirements for this Section.</u> For at least two (2) years after termination of this Consent Decree, HOVENSA shall retain records to demonstrate its compliance with the requirements of this Section.

123. As part of the reports required under 40 C.F.R. §§ 60.487 and 63.654 (Semi-Annual LDAR Report), HOVENSA shall include the following information, at the following times:

    a. The next Semi-Annual LDAR Report after the applicable compliance date for each requirement shall include notification of the following:

        i. Implementation of the "Valve Preventative Leak Maintenance Program" of Paragraph 112;

        ii. Implementation of QA/QC procedures for review of data generated by LDAR technicians as required by Paragraph 116;

        iii. Development of a tracking program for new valves and pumps added during maintenance and construction (Management of Change Program) as required by Paragraph 118;

        iv. Implementation of the calibration and calibration drift assessment procedures of Paragraphs 119 and 120;

          v.      Implementation of the "delay of repair" procedures of

Paragraph 121;

          vi.     Utilization of electronic data collection devices during LDAR

monitoring, pursuant to the requirements of Paragraph 115;

          vii.    Implementation of the lower leak definitions pursuant to the

requirements of Paragraph 109; and

          viii.   Implementation of the monitoring requirements of

Subparagraphs 113.a and 113.b.

    b.     Until termination of this Section, each Semi-Annual LDAR Report that

HOVENSA submits shall include:

          i.      An identification of each audit, if any, that was conducted pursuant

to the requirements of Paragraph 106 in the previous semi-annual period.  For

each audit identified, the report shall include an identification of the auditors, a

summary of the audit results, and a summary of the actions that HOVENSA took

or intends to take to correct all deficiencies identified in the audits.

          ii.     Training.  Information identifying the measures taken to comply

with the provisions of Paragraph 105;

          iii.    Valve Preventative Leak Maintenance Program.  The results of

each evaluation performed according to Subparagraph 112.e during the previous

semi-annual period; and

          iv.    Monitoring.  The following information on LDAR monitoring:

          (1)    A list of the process units monitored during the reporting

period;

- 89 -

(2)     The number of valves and pumps present in each monitored process unit;

(3)     The number of valves and pumps monitored in each process unit and if less than the number in (2), include an explanation as to why;

(4)     The number of valves and pumps found leaking in each process unit during the period, and the valve leak percentage for each process unit;

(5)     The number of "difficult to monitor" pieces of equipment monitored;

(6)     The projected month of the next monitoring event for that unit;

(7)     A list of all equipment currently on the "delay of repair" list, the date each component was placed on the list, the date each such component was determined to be leaking above applicable leak definitions, the circumstances of any extended maintenance repairs under Subparagraph 121.c, the associated monitoring results for each piece of equipment, and whether such activities were completed in a timely manner;

(8)     The number of external valve surveys and the number of stuffing box surveys not completed and recorded as required under Paragraph 112;

(9)     The number of valves not repacked or replaced and recorded as required under Paragraph 112;

(10)     The number of valves which were newly installed without appropriate packing or valve technology, as required under Paragraph 112; and

(11)     The number of missed or untimely repairs under Paragraph 111.

## VI.     PERMITTING

124.     <u>Obtaining Permit Limits for Consent Decree Emission Limits That Are Effective Upon Date of Entry</u>.  Except as set forth below, by no later than 180 Days after the Date of Entry, HOVENSA shall submit applications to the relevant permitting authority to incorporate the emission limits and standards required by this Consent Decree that are effective as of the Date of Entry into federally enforceable minor or major new source review permits or other permits (other than Title V permits) that are federally enforceable.  However, if another application for a permit, permit renewal, or permit modification is due for the same emissions unit within 365 Days of the Date of Entry, HOVENSA shall submit both such applications or a combined application by the application/renewal date.  Upon issuance of such permits or in conjunction with such permitting, HOVENSA shall file any applications necessary to incorporate the requirements of those permits into the Title V permit for the Refinery when issued.

125.     <u>Obtaining Permit Limits For Consent Decree Emission Limits That Become Effective After Date of Entry</u>.  Except as set forth below, as soon as practicable, but in no event later than 180 Days after the effective date or establishment of any emission limits and standards required by this Consent Decree other than those effective as of the Date of Entry, HOVENSA

- 91 -

shall submit applications to the relevant permitting authority to incorporate those emission limits and standards into federally enforceable minor or major new source review permits, or other permits (other than Title V permits) that are federally enforceable. Upon issuance of such permit or in conjunction with such permitting, HOVENSA shall file any applications necessary to incorporate the requirements of those permits into the Title V permit for the Refinery when issued.

126. <u>Mechanism for Title V Incorporation</u>. The Parties agree that the incorporation of any emission limits or other standards into the Title V permit for the Refinery as required by Paragraphs 124 and 125 shall be in accordance with the applicable territorial Title V rules.

127. <u>Construction Permits</u>. HOVENSA agrees to obtain all required, federally enforceable permits for the construction of the pollution control technology and/or the installation of equipment necessary to implement the requirements of this Consent Decree.

**VII. EMISSION CREDIT GENERATION**

<u>Summary</u>. This Part addresses the use of emissions reductions that will result from the installation and operation of the controls required by this Consent Decree ("CD Emissions Reductions") for the purpose of emissions netting or emissions offsets.

128. <u>General Prohibition</u>. HOVENSA shall not generate or use any $NO_x$, $SO_2$, PM, PM-10, PM-2.5, VOC, or CO emissions reductions, or apply for and obtain any emission reduction credits, that result from any projects conducted or controls utilized pursuant to this Consent Decree as netting reductions or emissions offsets in any PSD, major non-attainment, and/or synthetic minor New Source Review permit or permit proceeding.

129. <u>Exception to General Prohibition</u>. Notwithstanding the general prohibition set forth in Paragraph 128, HOVENSA may use 41 tons per year of $NO_x$, 61 tons per year of CO,

and 14 tons per year of PM from CD Emissions Reductions as credits or offsets in any PSD,

major non-attainment and/or minor NSR permit or permit proceeding occurring after the Date of

Lodging with respect to the Refinery, provided that the new or modified emissions units at which

credits are being used: (1) is being constructed or modified for purposes of compliance with

clean fuels requirements (72 Fed. Reg. 8428, amending 40 C.F.R. Part 80); and (2) has a

federally enforceable, non-Title V permit that reflects the following requirements that are

applicable to the pollutants for which credits are being used:

        a.     For heaters and boilers, a limit of 0.027 lbs. $NO_x$ per million BTU on a 3-hour rolling average basis;

        b.     For heaters and boilers, a limit of 0.10 grains of hydrogen sulfide per dry standard cubic foot of fuel gas or 20 ppmvd $SO_2$ corrected to 0% $O_2$ both on a 3-hour rolling average;

        c.     For heaters and boilers, no liquid or solid fuel firing authorization;

        d.     For FCCUs, a limit of 20 ppmvd $NO_x$ or less on a 365-day rolling average basis corrected to 0% $O_2$;

        e.     For FCCUs, a limit of 25 ppmvd $SO_2$ or less on a 365-day rolling average basis corrected to 0% $O_2$;

        f.     For FCCUs, a limit of 0.5 pounds of PM per 1,000 pounds of coke burned on a 3-hour average basis; and

        g.     For SRPs, NSPS Subpart J limits.

    130.    <u>Conditions Precedent to Utilizing Exception to General Prohibition</u>.  Utilization

of the exception set forth in Paragraph 129 to the general prohibition against the generation or

utilization of CD Emissions Reductions set forth in Paragraph 128 is subject to the following conditions:

      a.     Under no circumstances shall HOVENSA use CD Emissions Reductions for netting and/or offsets prior to the time that actual CD Emissions Reductions have occurred;

      b.     CD Emissions Reductions may be used only at the HOVENSA Refinery;

      c.     The CD Emissions Reductions provisions of this Consent Decree are for purposes of this Consent Decree only and neither HOVENSA, nor any other entity may use CD Emissions Reductions for any purpose, including in any subsequent permitting or enforcement proceeding, except as provided herein; and

      d.     HOVENSA shall remain subject to all federal, territorial, and local regulations applicable to the PSD, major non-attainment and/or minor NSR permitting process.

131.    <u>Outside the Scope of the General Prohibition.</u>  Nothing in this Consent Decree is intended to prohibit HOVENSA from seeking to:

      a.     Use or generate netting reductions or emission offset credits from refinery units that are covered by this Consent Decree to represent the difference between the emissions limitations set forth in or established pursuant to this Consent Decree for such refinery units and the more stringent emissions limitations that HOVENSA may elect to accept for those refinery units in a permitting process;

      b.     Use or generate netting reductions or emission offset credits for refinery units that are not subject to an emission limitation pursuant to this Consent Decree;

      c.     Use emissions reductions from the installation of controls required by this Consent Decree in determining whether a project that (a) includes both the installation of

controls under this Consent Decree and other construction and (b) is permitted as a single project triggers major New Source Review requirements;

        d.      Use CD Emission Reductions for HOVENSA's compliance with any rules or regulations designed to address regional haze or the non-attainment status of any area (excluding PSD and Non-Attainment New Source Review rules) that apply to HOVENSA; provided, however, that HOVENSA shall not be allowed to trade or sell any CD Emissions Reductions; or

        e.      Use or generate netting reductions or emission offset credits for heaters, boilers, Generating Turbines and Compressor Engines on which Qualifying Controls, as defined in Paragraph 23, have been installed, provided that such reductions are not included in HOVENSA's demonstration of compliance with the requirements of Paragraphs 24, 26, 27 and 28.

## VIII.   ADDITIONAL INJUNCTIVE RELIEF

**A.**   **Delayed Coker Unit**

    132.   **Delayed Coker Unit Steam Vents Control Technology.**

        a.      **Interim Coker Steam Vents Limit.**  By no later than the Date of Entry, HOVENSA shall comply with a depressurization level of 10 psig for the Coker Steam Vents.

        b.      **Final Coker Steam Vents Limit.**  By no later than December 31, 2012, HOVENSA shall comply with a depressurization level of 2 psig for the Coker Steam Vents.

    133.   HOVENSA shall comply with the additional limits and requirements described in Appendix H ("Additional Coker Project Injunctive Relief") in accordance with the compliance schedule set forth in Appendix H.

134.    HOVENSA has tested and determined the VOC emissions from the coke cutting tank. HOVENSA provided EPA with a copy of the test protocol on September 29, 2009 and conducted the testing from December 8, 2009 through December 12, 2009. HOVENSA reported the results to EPA and the VIDPNR on March 1, 2010.

**B.    NSPS Applicability: Boilers and Generating Turbines.**

135.    As of the Date of Entry, Boilers 5, 8, and 9 are "affected facilities" as that term is used in 40 C.F.R. Part 60, NSPS Subparts A and D and by no later than July 31, 2012, shall be subject to and required to comply with the requirements of NSPS Subparts A and D. If HOVENSA elects to replace Boiler 5, the deadline for compliance with Subparts A and D for Boiler 5 shall be no later than December 31, 2015. HOVENSA shall notify EPA and VIDPNR by no later than July 31, 2012 if HOVENSA elects to replace Boiler 5.

136.    Generating Turbines 1 through 9 are "affected facilities" as that term is used in 40 C.F.R. Part 60, Subparts A and GG. By no later than five (5) years from Date of Entry, Generating Turbines 1 through 8 shall be subject to and comply with the requirements of NSPS Subparts A and GG. As of Date of Entry, Generating Turbine 9 shall be subject to and comply with the requirements of NSPS Subparts A and GG.

**IX.    TERRITORIAL SUPPLEMENTAL ENVIRONMENTAL PROJECT**

**A.    Territorial Supplemental Environmental Project**

137.    Virgin Islands Territorial SEP.

a.    HOVENSA shall undertake a SEP designed to benefit the U.S. Virgin Islands (the "Virgin Islands Territorial SEP"), as provided in this Part.

b.    Virgin Islands Territorial SEP Fund. HOVENSA shall provide funding to support one or more supplemental environmental projects to be implemented for the benefit of

the Virgin Islands. Within 120 Days of the Date of Entry, HOVENSA shall deposit no less than $4,875,000 into an escrow account established by HOVENSA for the purpose of implementing this SEP. Projects to be funded by the Virgin Islands Territorial SEP Fund are to be determined jointly by HOVENSA and the Virgin Islands, in consultation with EPA and in consideration of the environmental, public health, pollution prevention or reduction, or other benefits consistent with the objectives of the environmental protection laws of the United States.

        c.     Not later than ninety (90) Days prior to any request by the Virgin Islands for disbursement of funds pursuant to this Paragraph, the Virgin Islands (after consultation with EPA and HOVENSA) shall submit for review and comment by EPA and HOVENSA a written description of the project(s) to be funded, the purpose and anticipated environmental benefits of the project(s), the recipient(s) of the funding, and any other necessary and relevant information describing the project(s) to be funded. Following consultation, review and comment, the written description of the project(s) will be revised as needed by the Virgin Islands to reflect EPA's and HOVENSA's comments.

        d.     Upon written project approval by HOVENSA and the Virgin Islands, and within thirty (30) Days of the written request of the Virgin Islands, HOVENSA shall disburse such funds, as directed by the Virgin Islands for the purpose of implementing the project(s). Such funds disbursed pursuant to this Paragraph shall only be used for project(s) approved as provided in this Paragraph. Seven (7) Days prior to any such disbursement, HOVENSA shall notify the Parties pursuant to Paragraph 225 (Notice) of such intended disbursement.

    138.    In the event HOVENSA does not disburse the full amount of the escrow account including interest as required by Subparagraph 137.b on the project(s), HOVENSA shall pay as a penalty an amount equal to the difference between the amount disbursed for the project(s)

demonstrated in the certified cost report required by Paragraph 140, and the amount required by Subparagraph 137.b. This stipulated penalty shall be paid to the Virgin Islands as provided in Subparagraph 146.b.

139. By signing this Consent Decree, HOVENSA certifies that it is not required, and has no liability under any federal or territorial law or regulation or pursuant to any agreements or orders of any court, to undertake or develop the SEP. HOVENSA further certifies that it has not applied for or received, and will not in the future apply for or receive: (i) credit as a Supplemental Environmental Project or other penalty offset in any other enforcement action for the SEP; (ii) credit for any emissions reductions resulting from the SEP in any federal or territorial emissions trading or early reduction program; or (iii) a deduction from any federal or territorial tax based on its participation in, performance of, or incurrence of costs related to the SEP.

140. HOVENSA will include in each semi-annual report required by Paragraph 143 a progress report for the period during which the SEP is being implemented. In addition, for the semi-annual period in which the SEP is completed, the semi-annual report required by Part X (Reporting and Recordkeeping), will be a report detailing disbursements from the VI Territorial SEP Fund, certified as accurate by a responsible HOVENSA official.

**B.     Additional Work**

140A.   VIWAPA Emissions Monitoring Assistance. HOVENSA shall assist the Virgin Islands Water and Power Authority (VIWAPA) with respect to certain air emissions monitoring, as provided in this Paragraph.

a.      By no later than 180 Days of the Date of Entry, HOVENSA shall submit for EPA approval a Statement of Work (SOW) detailing technical and other assistance and

support to be provided by HOVENSA to VIWAPA for the operation and maintenance of opacity, NOx and CO continuous emissions monitoring systems (CEMS) at the VIWAPA facilities located at Estate Richmond, St. Croix, and Krum Bay, St. Thomas, U.S. Virgin Islands.

b.　　The assistance and support to be provided are intended to support VIWAPA's capacity to properly operate and maintain CEMS at its facility. Such support may include periodic technical and other training of VIWAPA employees, provision of manuals or similar materials, or consultation on request, concerning CEMS operation and maintenance, and such other support and assistance as HOVENSA and VIWAPA agree may be necessary and appropriate for the completion of the VIWAPA Emissions Monitoring Assistance. HOVENSA may use contractors and/or contractor support for the VIWAPA Emissions Monitoring Assistance. HOVENSA shall not itself perform, participate (physically or otherwise) in performing, or assume responsibility for, any work, tasks, or functions that VIWAPA is legally obligated to perform or performs in the ordinary course of its business.

c.　　HOVENSA shall consult with VIWAPA (and may consult with EPA) in its development of the SOW.

d.　　The SOW shall include, but need not be limited to, a detailed description of the technical and other assistance and support to be provided to VIWAPA, a schedule for implementation and an estimate of the costs.

e.　　The support to be provided by HOVENSA shall be provided for not less than one (1) year but not more than five (5) years, such period to commence upon a date agreed to by HOVENSA and VIWAPA, provided that the SOW has been approved by EPA, and after VIWAPA has installed the CEMS. In no event shall such support be required to be provided by HOVENSA after the termination of this Consent Decree. In the event VIWAPA has not

installed the CEMS and requested that the support commence within five (5) years of the Date of Entry, HOVENSA shall not be required to provide support services to VIWAPA pursuant to this Paragraph.

       f.      HOVENSA shall not be required to spend more than $500,000 in the execution of the VIWAPA Emissions Monitoring Assistance required by this Paragraph.

       g.      HOVENSA shall promptly report to EPA any impediments or difficulties that may delay the development or execution of the VIWAPA Emissions Monitoring Assistance. In such circumstances EPA may thereafter agree with HOVENSA, for good cause shown, to modify or otherwise revise the terms of the VIWAPA Emissions Monitoring Assistance's SOW.

       h.      HOVENSA will include in each semi-annual report required by Paragraph 143 a progress report for the period during which the VIWAPA Emissions Monitoring Assistance is being developed and implemented. In addition, for the semi-annual period in which the VIWAPA Emissions Monitoring Assistance is completed, the semi-annual report required by Part X (Reporting and Recordkeeping), will contain (i) a detailed description of the VIWAPA Emissions Monitoring Assistance as implemented, including expenditures, certified as accurate by a responsible company official; (ii) a brief description of any significant problems encountered, and solutions for such problems; and (iii) a certification that HOVENSA has completed its obligations for the VIWAPA Emissions Monitoring Assistance as required by this Consent Decree.

       i.      HOVENSA shall provide a copy of the applicable provisions of the VIWAPA Emissions Monitoring Assistance SOW to each consulting or contracting firm that is retained to perform work required by this Paragraph. This requirement shall apply in lieu of the

- 100 -

requirement in Paragraph 8 to provide a copy of relevant portions of this Consent Decree to any contractor retained by HOVENSA to perform work required by this Consent Decree.

## C.   **Public Statements.**

141.   HOVENSA agrees that in any public statements regarding the Territorial Supplemental Environmental Project(s) and the VIWAPA Emissions Monitoring Assistance required under this Part, HOVENSA must clearly indicate that these are being undertaken as part of the settlement of an enforcement action for alleged violations of the Clean Air Act and corollary Virgin Island laws and/or regulations.  However, it is expressly understood by the parties that the costs to implement the VIWAPA Emissions Monitoring Assistance is not a fine or a penalty and does not reduce any fine or penalty imposed by this Consent Decree.

## X.   **REPORTING AND RECORDKEEPING**

142.   HOVENSA shall retain all records required to be maintained in accordance with this Consent Decree for a period of five (5) years or until Termination, whichever is longer, unless applicable regulations require the records to be maintained longer.

143.   Beginning thirty (30) Days after the end of the first semi-annual period after the Date of Entry and semi-annually thereafter on January 31 and July 31 until termination of this Consent Decree, HOVENSA will submit to EPA and VIDPNR a progress report.  The reports will contain the following information:

   a.   General.  Each report will contain:

      i.   A progress report on the implementation of the requirements of Part V (Affirmative Relief/Environmental Projects);

        ii.      A summary of the emissions data that is specifically required by the reporting requirements of Part V (Affirmative Relief/Environmental Projects) for the period covered by the report;

        iii.     A description of any problems anticipated with respect to meeting the requirements of Part V (Affirmative Relief/Environmental Projects);

        iv.     A description of the status of the SEP being conducted under Part IX (Territorial Supplemental Environmental Project); and

        v.      Any such additional matters as HOVENSA believes should be brought to the attention of EPA and VIDPNR.

        b.     <u>Emissions Data.</u>  In the semi-annual report required to be submitted on July 31 of each year, HOVENSA shall provide a summary of annual emissions data for the prior calendar year. The summary shall include:

        i.      $NO_x$, $SO_2$, CO and PM emissions in tons per year as a sum for all heaters and boilers greater than 40 mmBTU/hr maximum fired duty listed in Appendix A ("List of Heaters and Boilers Greater Than 40 mmBTU Per Hour, Generating Turbines and Compressor Engines");

        ii.     $NO_x$, $SO_2$, CO and PM emissions in tons per year for the Generating Turbines listed in Appendix A ("List of Heaters and Boilers Greater Than 40 mmBTU Per Hour, Generating Turbines and Compressor Engines");

        iii.     $SO_2$ and TRS emissions in tons per year for each sulfur recovery plant;

        iv.     $SO_2$ emissions in tons per year from all Acid Gas Flaring and Tail Gas Incidents, by flare;

v.      $NO_x$, $SO_2$, CO and PM emissions in tons per year as a sum for all

other emissions units for which emissions information is required to be included

in HOVENSA's annual emissions summary required under 12 VIRR

Section 206-93 and are not identified in (i) through (vi) of this Paragraph; and

vi.      The basis for each estimate required in this Subparagraph

(i.e., stack tests, CEMS, PEMS, etc.) and an explanation of the methodology used

to calculate the tons per year emitted.

To the extent that the required emissions summary data is available in other reports generated by

HOVENSA, such other reports can be attached or the appropriate information can be extracted

from such other reports and attached to the semi-annual report to satisfy the requirement.

c.      Exceedances of Emission Limits. In each semi-annual report, HOVENSA

shall identify each exceedance of an emission limit required or established by this Consent

Decree that occurred during the previous semi-annual period. The semi-annual report shall

include the following information:

i.      For emissions units that are monitored with CEMS or PEMS, for

each CEMS or PEMS:

(1)      Total period where the emissions limit was exceeded, if

applicable, expressed as a percentage of operating time for each calendar

quarter;

(2)      Where the operating unit has exceeded the emissions limit

more than 1% of the total time of the calendar quarter, identification of

each averaging period that exceeded the limit by time and date, the actual

emissions of that averaging period (in the units of the limit), and any

- 103 -

identified cause for the exceedance (including startup, shutdown, maintenance or malfunction), and, if it was a malfunction, an explanation and any corrective actions taken;

(3)     Total downtime of the CEMS or PEMS, if applicable, expressed as a percentage of operating time for the calendar quarter;

(4)     Where the CEMS or PEMS downtime is greater than 5% of the total time in a calendar quarter for a unit, identify the periods of downtime by time and date, and any identified cause of the downtime (including maintenance or malfunction), and if it was a malfunction, an explanation and any corrective action taken;

(5)     If a report filed pursuant to another applicable legal requirement contains all of the information required by this Subparagraph 143.c.i in a similar or same format, the requirements of this Subparagraph 143.c.i may be satisfied by attaching a copy of such report.

ii.     For any exceedance of an emissions limit required or established by this Consent Decree that is monitored through stack testing:

(1)     A summary of the results of the stack test in which the exceedance occurred;

(2)     A copy of the full stack test report in which the exceedance occurred;

(3)     To the extent that HOVENSA has already submitted the stack test results, HOVENSA need not resubmit them, but may instead

- 104 -

reference the submission in the report (*e.g.*, date, addressee, reason for submission).

144.     Each report will be certified for HOVENSA by an officer of HOVENSA responsible for overseeing implementation of this Consent Decree, as follows:

> "I certify under penalty of law that this information was prepared under my direction or supervision by personnel qualified to properly gather and evaluate the information submitted. Based on my directions and after reasonable inquiry of the person(s) directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate and complete."

## XI.     CIVIL PENALTY

145.     In satisfaction of the civil claims asserted by the United States and the Virgin Islands in the Complaint filed in this matter, by no later than thirty (30) Days after the Date of Entry, HOVENSA shall pay a civil penalty of $5,125,000 to the United States and a civil penalty of $250,000 to the Virgin Islands.

146.     Payment.

a.       Payment to the United States. Payment to the United States shall be made by Electronic Funds Transfer ("EFT") to the United States Department of Justice, in accordance with current EFT procedures, referencing the USAO File Number 2010V00064, DOJ Case Number 90-5-2-08229/1, and the civil action case name and case number of this action in the District of the Virgin Islands. The costs of such EFT shall be the responsibility of HOVENSA. Payment shall be made in accordance with instructions provided to HOVENSA by the Financial Litigation Unit of the United States Attorney's Office for the District of the Virgin Islands. Any funds received after 11:00 a.m. (EDT) shall be credited on the next business day. HOVENSA shall provide notice of payment, referencing the USAO File Number 2010V00064, DOJ Case

Number 90-5-2-08229/1, and the civil action case name and case number, to the United States as provided in Paragraph 225 (Notice).

       b.    <u>Payment to the Virgin Islands</u>.  Payment to the Virgin Islands shall be made by certified check or checks or cashier's checks made payable to "Government of the Virgin Islands Department of Planning & Natural Resources," referencing the name and address of the party making payment, and the civil action number.  HOVENSA shall send the check(s) to:

> Government of the Virgin Islands
> Department of Planning & Natural Resources
> 8100 Lindberg Bay, Ste. #1
> Cyril E. King Airport, Terminal Bldg. Second Floor
> St. Thomas, V.I.  00802

    147.    The civil penalty set forth herein, as well as any stipulated penalty incurred pursuant to Part XII (Stipulated Penalties), is a penalty within the meaning of Section 162(f) of the Internal Revenue Code, 26 U.S.C. § 162(f), and, therefore, HOVENSA will not treat such penalty payment as tax deductible for purposes of federal or territorial law.

    148.    Upon the Date of Entry, this Consent Decree will constitute an enforceable judgment for purposes of post-judgment collection in accordance with Rule 69 of the Federal Rules of Civil Procedure, the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., and other applicable federal authority.  The United States will be deemed as judgment creditors for purposes of collecting any unpaid amounts of the penalty and interest pursuant to this Part, or any stipulated penalty owed pursuant to Part XII (Stipulated Penalties).

## XII.   STIPULATED PENALTIES

    149.    Except as otherwise provided in Paragraph 138 (Territorial Supplemental Environmental Project), HOVENSA shall pay stipulated penalties as provided in this Part to the

United States for each failure by HOVENSA to comply with the terms of this Consent Decree. Stipulated penalties shall be calculated in the amounts specified in this Part. For those provisions where a stipulated penalty of either a fixed amount or 1.2 times the economic benefit of delayed compliance is available, the decision of which alternative to seek shall rest exclusively within the discretion of the United States. Where a single event triggers more than one stipulated penalty provision, only the higher of the individual stipulated penalties shall apply.

**A.** **Requirements for NO$_x$ Emissions Reductions from the FCCU**

150. [Reserved]

151. For each failure to meet the FCCU NO$_x$ limit set forth in Paragraph 11: $750 for each day that the specified 7-day rolling average exceeds the applicable limit; and $2,500 for each day that the specified 365-day rolling average exceeds the applicable limit.

**B.** **Requirements for SO$_2$ Emissions Control from the FCCU**

152. For failure to meet any FCCU SO$_2$ limit set forth in Paragraph 13: $750 for each day that the specified 7-day rolling average exceeds the applicable limit; and $2,500 for each day that the specified 365-day rolling average exceeds the applicable limit.

**C.** **Requirements for PM Emissions Control from the FCCU**

153. For failure to meet the FCCU PM limit set forth in Paragraph 15: $500 for the first day of non-compliance with the limit, and $1,500 for each day thereafter until HOVENSA demonstrates compliance.

**D.** **Requirements for CO Emissions Control from the FCCU**

154. For each failure to meet any FCCU CO limit that HOVENSA accepts pursuant to Paragraph 18 or 19 (if applicable): $750 for each day that the specified 1-hour block average

exceeds the applicable limit; and $2,500 for each day that the specified 365-day rolling average

exceeds the applicable limit.

**E.**   **Requirements Related to NSPS Applicability to FCCU Catalyst Regenerator.**

155.   For failure to comply with NSPS Subparts A and J (or Ja, if applicable, for CO,

SO$_2$, or PM) limits applicable to the FCCU's catalyst regenerator, as specified in Paragraph 22,

per pollutant, per day:

| Period of Non-Compliance | Penalty per day |
|---|---|
| 1st through 30th day | $1,000 |
| 31st through 60th day | $2,000 |
| Over 60 days | $3,000, or an amount equal to 1.2 times the economic benefit of non-compliance, whichever is greater. |

**F.**   **Requirements for NO$_x$ Emission Reductions from Heaters, Boilers, Generating Turbines and Compressor Engines.**

156.

a.   For failure to install Qualifying Controls, submit permit applications or

incorporate emission limits into permits for heaters, boilers, Generating Turbines, or Compressor

Engines as required by Paragraphs 24, 26, 27 or 28:

| Period of Non-Compliance | Penalty per day |
|---|---|
| 1st through 30th day after deadline | $2,500 |
| 31st through 60th day after deadline | $6,000 |
| Beyond 60th day after deadline | $10,000, or an amount equal to 1.2 times the economic benefit of non-compliance, whichever is greater. |

b.   For failure to reduce NO$_x$ emissions from heaters, boilers, Generating

Turbines, or Compressor Engines, as required by Paragraphs 24, 26, 27 or 28:

| Period of Non-Compliance | Penalty per day |
|---|---|
| 1st through 30th day after deadline | $2,500 |
| 31st through 60th day after deadline | $6,000 |

- 108 -

Beyond 60th day after deadline $10,000, or an amount equal to 1.2 times the economic benefit of non-compliance, whichever is greater.

    c.    For failure to comply with any permit requirement (contained in permits required by Paragraphs 24, 26, 27 or 28) to control $NO_x$ emissions: $500 per unit, per day.

## G.    Requirements for $SO_2$ Emissions Reductions from Heaters, Boilers and Generating Turbines

    157.    For burning any fuel gas that contains $H_2S$ in excess of the applicable requirements of NSPS Subparts A and J (or Ja, as applicable) in one or more heaters or boilers or other identified equipment listed in Appendix C ("NSPS Subpart J or Ja Compliance Schedule for Listed Fuel Gas Combustion Devices (Other than Flaring Devices)"), per event, per day:

| Period of Non-Compliance | Penalty per day |
| --- | --- |
| 1st through 30th day | $2,500 |
| Beyond 31st day | $5,000 or an amount equal to 1.2 times the economic benefit of delayed compliance, whichever is greater. |

    158.    For burning Fuel Oil in any combustion unit in violation of Paragraphs 37, 38 or 39, per unit, per day:

| Period of Non-Compliance | Penalty per day |
| --- | --- |
| 1st through 30th day | $1,750 |
| Beyond 31st day | $5,000 or an amount equal to 1.2 times the economic benefit of delayed compliance, whichever is greater |

## H.    Requirements for Sulfur Recovery Plants

    159.    For failure to comply with the NSPS Subparts A and J (or Ja, as applicable) emission limits at the Sulfur Recovery Plants, as specified in Paragraphs 44 and 45, per unit, per day:

| Period of Non-Compliance | Penalty per day |
| --- | --- |
| 1st through 30th day | $1,000 |
| 31st through 60th day | $2,000 |

Over 60 days      $3,000 or an amount equal to 1.2 times the economic benefit of non-compliance, whichever is greater

160.     For failure to route or re-route all sulfur pit emissions in accordance with the requirements of Paragraph 43, per unit, per day:

| Period of Non-Compliance | Penalty per day |
|---|---|
| 1st through 30th day | $1,000 |
| 31st through 60th day | $1,750 |
| Beyond 60th day | $4,000 or an amount equal to 1.2 times the economic benefit of delayed compliance, whichever is greater |

161.     For failure to develop and implement a Preventative Maintenance Operation Plan, pursuant to Paragraph 48, per day:

| Period of Non-Compliance | Penalty per day |
|---|---|
| 1st through 30th day after deadline | $500 |
| 31st through 60th day after deadline | $1,500 |
| Beyond 60th day after deadline | $2,000 |

## I.    Requirements for Flaring Devices

162.     For failure to comply with applicable NSPS Subparts A and Ja requirements, at the flares listed on Appendix D ("List of Flaring Devices Subject to NSPS Subparts J/Ja") after the date on which HOVENSA has accepted NSPS applicability, as set forth in Paragraphs 49 and 50, per Flaring Device:

| Period of Non-Compliance | Penalty per day |
|---|---|
| 1st through 30th day after deadline | $500 |
| 31st through 60th day after deadline | $1,500 |
| Beyond 60th day after deadline | $2,000 |

163.     For failure to submit the NSPS Subparts J/Ja compliance certification as required by Paragraph 52, per Flaring Device:

| Period of Delay | Penalty per day |
|---|---|
| 1st through 30th day | $500 |
| 31st through 60th day | $1,500 |

Beyond 60th day                          $2,000

## J.    **Requirements for Benzene Waste NESHAP Program**

164.    For violations of the Paragraphs identified below, the amounts defined shall apply.

a.    Failure to conduct audit or compliance review and verification required by Paragraphs 79 and 82: $5,000 per month per review/audit.

b.    Failure to sample as required by Paragraph 88: $2,500 per week, per stream or $15,000 per quarter, per stream (whichever amount is greater, but not to exceed $75,000 per quarter).

c.    Failure to install carbon canister as required by Paragraph 81: $1,000 per day per canister.

d.    Failure to replace carbon canister as required by Paragraph 81: $1,000 per day per canister.

e.    Failure to perform monitoring as required by Paragraph 81: $500 per monitoring event.

f.    Failure to provide the training as required by Paragraph 84: $10,000 per quarter.

g.    If it is discovered by an EPA or territorial investigator or inspector, or their agent, that HOVENSA failed to include all benzene waste streams in its TAB, in accordance with Paragraph 79, for each waste stream that is:

| Less than 0.03 Mg/yr | $250 per stream |
| Between 0.03 and 0.1 Mg/yr | $1,000 per stream |
| Between 0.1 Mg/yr and 0.5 Mg/yr | $5,000 per stream |
| Greater than 0.5 Mg/yr | $10,000 per stream |

h.     Failure to monitor API separators as specified in Paragraph 93: $100 per missed monitoring location.

i.     Failure to monitor API separators quarterly if the leak rate exceeds one (1) percent, as specified in Subparagraph 93.a.iii.(2):  $10,000 per separator.

**K.     Requirements for Leak Detection and Repair Program**

165.     Requirements for Leak Detection and Repair Program (Section V.R):

a.     Failure to have the written LDAR program as required by Paragraph 103: $3,500 per week.

b.     Failure to provide the training required by Paragraph 105: $10,000 per quarter.

c.     Failure to implement the requirements of Paragraph 106 (Audits): $5,000 per month per audit.

d.     Failure to implement the requirements of Paragraph 109 (Leak Definitions): $100 per component, up to $10,000 per month per process unit.

e.     Failure to implement the requirements of Paragraph 112 (Valve Preventative Maintenance Program):

i.     For failure to perform and record external valve or stuffing box surveys according to Paragraph 112:  $300 per survey.

- 112 -

      ii.     For failure to install new or replacement valves with packing and/or valve technology and record information as required under Subparagraph 112.c: $300 per valve.

      iii.    For failure to repack/replace to the extent required by Subparagraph 112.b, and record relevant information on valves which leaked above applicable leak definitions, and which were determined to be in poor condition according to the external valve survey (if performed) under Subparagraph 112.a: $1200.

      iv.    For failure to repack/replace as required by Subparagraph 112.b, and record required information on valves which leaked above applicable leak definitions, and which were determined to be in good condition according to the external valve survey performed under Subparagraph 112.a: $1000.

      v.     For failure to repack/replace as required by Subparagraph 112.b, and record required information on valves which have not leaked above applicable leak definitions, and which were determined to be in poor condition according to the external valve survey (if performed) under Subparagraph 112.a: $800.

      vi.    For failure to repack/replace as required by Paragraph 112.b, and record required information on valves which have not leaked above applicable leak definitions, and which were determined to be in good condition according to the external valve survey performed under Subparagraph 112.a: $600. This provision shall only apply to a valve which has leaked above 100 ppm during the last monitoring period prior to the turnaround.

f.      Failure to implement the requirements under Subparagraphs 113.a and 113.b (LDAR Monitoring Frequency):  $100 per component, up to $10,000 per month per process unit.

g.      Failure to implement the requirements under Paragraphs 114 and 115 (Electronic Storage of LDAR Data/Electronic Monitoring and Reporting of the LDAR Data): $5,000 per month per process unit.

h.      Failure to implement the requirements under Paragraph 117 (LDAR Personnel): $3,750 per week.

i.      Failure to implement the requirements under Paragraph 116 (QA/QC of LDAR Data):  $1,000 per event.

j.      Failure to implement the requirements under Paragraphs 119 and 120 (Calibration/Calibration Drift Assessment):  $100 per missed event per day.

k.      Failure to implement the requirements under Paragraph 121 (Extended Maintenance and Delay of Repair): Subparagraph 121.a: $1000 per component; Subparagraph 121.b: $2500 per component; Subparagraph 121.c: $5,000 per component.

l.      If, after the initial audit required under Subparagraph 106.a., an EPA or territorial investigator or inspector, or their agent, discovers that HOVENSA failed to include a component in the LDAR program for monitoring within 120 Days of documented date of installation: $1500 per component.

m.      If, after the initial audit required under Subparagraph 106.a, HOVENSA discovers that it failed to include a component in the LDAR program for monitoring within 120 Days of documented date of installation:  $175 per component.

- 114 -

n. Failure to correctly perform EPA Test Method 21 (or the alternate leak detection method pursuant to Paragraph 104), as indicated by the leak percentage ratio determined through comparative monitoring and calculated as described in Paragraph 107, provided the auditor identified at least three (3) leaking valves in the process unit:

| Ratio process unit valve leak percentage to average valve leak percentage reported for process unit (Paragraph 107) | Stipulated Penalty for 4-monitoring periods, per process unit |
|---|---|
| 3.0 | $15,000 |
| 4.0 | $30,000 |
| 5.0 | $45,000 |
| 6.0 or greater | $60,000 |

o. For failure to comply with Paragraph 102:

| Period of Delay | Penalty per Day |
|---|---|
| 1st day through 30th day after deadline | $50 |
| 31st day through 60th day after deadline | $500 |
| Beyond 60th day after deadline | $1,000 |

p. Failure to comply with the requirements of 40 C.F.R. Part 60, Subpart GGG, as required in Paragraph 101 within three (3) years after the Date of Lodging:

| Period of Non-Compliance | Penalty per day |
|---|---|
| 1st through 30th day | $625 |
| 31st through 60th day | $1,500 |
| Beyond 60th day | $2,500 or an amount equal to 1.2 times the economic benefit of delayed compliance whichever is greater. |

**L.** **Requirements to Incorporate Consent Decree Requirements into Federally-Enforceable Permits**

166. For each failure to submit an application as required by Paragraphs 124, 125 and

127:

| Period of Delay | Penalty per day |
|---|---|
| 1st day through 30th day after deadline | $1,000 |
| 31st day through 60th day after deadline | $2,500 |
| Beyond 60th day after deadline | $5,000 |

**M.** **Requirements Related to Territorial Supplemental Environmental Project**

167. For failure to comply with any requirement for the Supplemental Environmental

Project under Part IX (Territorial Supplemental Environmental Project), per requirement, per

day:

| Period of Delay | Penalty per day |
|---|---|
| 1st day through 30th day after deadline | $1,000 |
| 31st day through 60th day after deadline | $2,500 |
| Beyond 60th day after deadline | $5,000 |

Such stipulated penalties shall be paid to the Virgin Islands.

**N.** **Requirements for Monitoring, Reporting and Recordkeeping**

168. For failure to install, certify, calibrate, maintain and/or operate a CEMS or PEMS,

as required by Paragraphs 12, 14, 21, per day:

| Period of Delay | Penalty per day |
|---|---|
| 1st through 30th day after deadline | $500 |
| 31st through 60th day after deadline | $1,000 |
| Beyond 60th day after deadline | $2,000 or an amount equal to 1.2 times the economic benefit of delayed compliance, whichever is greater |

169. For failure to conduct PM testing or comply with performance testing required by

Paragraph 16:

| Period of Non-Compliance | Penalty per day |
|---|---|
| 1st day through 30th day after deadline | $200 |
| 31st through 60th day after deadline | $500 |
| Beyond 60th day after deadline | $1,000 |

170.  For failure to comply with NSPS Subparts A and J monitoring requirements at the

Sulfur Recovery Plants, as specified in Paragraphs 44 and 45, per day:

| Period of Non-Compliance | Penalty per day |
|---|---|
| 1st day through 30th day after deadline | $500 |
| 31st through 60th day after deadline | $1,500 |
| Beyond 60th day after deadline | $2,000 |

171.  For failure to submit reports as required by Part X (Reporting and

Recordkeeping), per report, per day:

| Period of Non-Compliance | Penalty per day |
|---|---|
| 1st day through 30th day after deadline | $500 |
| 31st through 60th day after deadline | $1,000 |
| Beyond 60th day after deadline | $2,000 |

172.  For failure to submit any written deliverable required by this Consent Decree, per

deliverable, per day:

| Period of Delay | Penalty per day |
|---|---|
| 1st through 30th day after deadline | $200 |
| 31st through 60th day after deadline | $500 |
| Beyond 60th day after deadline | $1,000 |

## O.   Requirements to Pay Civil Penalty

173.  For failure to make any civil penalty payment required by Part XI (Civil Penalty)

HOVENSA shall be liable for:  $15,000 per day, and interest on the amount overdue at the rate

specified in 28 U.S.C. § 1961(a).

**P.** **Requirement to Pay Stipulated Penalties**

174. For failure to pay or escrow stipulated penalties as required by Paragraphs 176 and 177: $2,500 per day, per penalty, plus interest on the amount overdue at the rate specified in 28 U.S.C. § 1961(a).

**Q.** **Requirements for Coker**

175. For failure to comply with the interim depressurization level for the Coker, as specified in Subparagraph 132.a, or when applicable the final depressurization level, as specified in Subparagraph 132.b, per day:

| Period of Non-Compliance | Penalty per day |
|---|---|
| 1st through 30th day | $1,000 |
| 31st through 60th day | $2,000 |
| Over 60 days | $3,000 or an amount equal to 1.2 times the economic benefit of non-compliance, whichever is greater |

**R.** **General Provisions Related to Stipulated Penalties**

176. Payment of Stipulated Penalties. Stipulated penalties under this Part will begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and will continue to accrue until performance is satisfactorily completed or until the violation ceases. HOVENSA shall pay stipulated penalties upon written demand by the United States (or by the Virgin Islands pursuant to Paragraph 167) no later than sixty (60) Days after HOVENSA receives such demand. Stipulated Penalties shall be paid to the United States or the Virgin Islands (as applicable) in the manner set forth in Part XI (Civil Penalty). A demand for the payment of stipulated penalties will identify the particular violation(s) to which the stipulated penalty relates, the stipulated penalty amount for each violation (as can be best estimated), the calculation method underlying the demand, and the grounds upon which the demand is based.

The United States may, in its unreviewable discretion, waive payment of all or any portion of stipulated penalties that may accrue under this Consent Decree.

177. Stipulated Penalty Dispute. Should HOVENSA dispute the United States' or the Virgin Islands' demand for all or part of a stipulated penalty, it may avoid the imposition of a stipulated penalty for failure to pay a stipulated penalty under Paragraph 176 by placing the disputed amount demanded in a commercial escrow account pending resolution of the matter and by invoking the dispute resolution provisions of Part XVI (Retention of Jurisdiction/Dispute Resolution) within the time provided in Paragraph 176 for payment of stipulated penalties. If the dispute is thereafter resolved in HOVENSA's favor, the escrowed amount plus accrued interest shall be returned to HOVENSA; otherwise, EPA shall be entitled to the amount that was determined to be due by the Court, plus the interest that has accrued in the escrow account on such amount. The United States and the Virgin Islands reserve the right to pursue any other non-monetary remedies to which they are legally entitled, including, but not limited to, injunctive relief for HOVENSA's violations of this Consent Decree.

178. Where a violation of this Consent Decree is also a violation of the Clean Air Act, its regulations, or a federally-enforceable Territorial law, regulation, or permit, the United States will not seek civil penalties where it already has demanded and secured stipulated penalties from HOVENSA for the same violations nor will the United States demand stipulated penalties from HOVENSA for a Consent Decree violation if the United States has commenced litigation under the Clean Air Act for the same violations. Where a violation of this Consent Decree is also a violation of Territorial law, regulation, or a permit, VIDPNR will not seek civil penalties where it already has demanded and secured stipulated penalties from HOVENSA for the same

violations, nor will VIDPNR demand stipulated penalties from HOVENSA for a Consent Decree violation if VIDPNR has commenced litigation under the Clean Air Act for the same violations.

## XIII.  INTEREST

179.    HOVENSA shall be liable for interest on the unpaid balance of the civil penalty specified in Part XI (Civil Penalty), and/or interest on any unpaid balance of stipulated penalties to be paid in accordance with Part XII (Stipulated Penalties).  All such interest shall accrue at the rate established pursuant to 28 U.S.C. § 1961(a) – i.e., a rate equal to the coupon issue yield equivalent (as determined by the Secretary of Treasury) of the average accepted auction price for the last auction of 52-week U.S. Treasury bills settled prior to the Date of Lodging.  Interest shall be computed daily and compounded annually.  Interest shall be calculated from the date payment is due through the date of actual payment.  For purposes of this Paragraph, interest will cease to accrue on the amount of any stipulated penalty payment placed into an interest bearing escrow account as provided by Paragraph 177 (Stipulated Penalties Dispute).

## XIV.  RIGHT OF ENTRY

180.    Any authorized representative of EPA or VIDPNR, upon presentation of credentials, shall have a right of entry upon the premises of the facilities of the Refinery at any reasonable time for the purpose of monitoring compliance with the provisions of this Consent Decree, including inspecting plant equipment and systems, and inspecting and copying all records maintained by HOVENSA pursuant to this Consent Decree or deemed necessary by EPA or VIDPNR to verify compliance with the Decree.  Except where other time periods are specifically noted in this Consent Decree, HOVENSA shall retain such records for the period of this Consent Decree.  Nothing in this Consent Decree shall limit the authority of EPA or

VIDPNR to conduct tests, inspections, or other activities under any statutory or regulatory authority.

### XV.   **FORCE MAJEURE**

181.    For purposes of this Consent Decree, a "Force Majeure Event" shall mean an event that has been or will be caused by circumstances beyond the control of HOVENSA, or any contractor or other entity controlled by HOVENSA, that delays compliance with any provision of this Consent Decree or causes a violation of any provision of this Consent Decree despite HOVENSA's best efforts to fulfill the obligation. "Best efforts to fulfill the obligation" include using best efforts to anticipate any potential Force Majeure Event and all reasonable efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred, such that the delay or violation is minimized to the greatest extent possible. "Force Majeure" does not include HOVENSA's financial inability to perform any obligation under this Consent Decree.

182.    <u>Notice of Force Majeure Events</u>.  If any event occurs or fails to occur that may delay compliance with or otherwise cause a violation of any obligation under this Consent Decree, as to which HOVENSA intends to assert a claim of Force Majeure, HOVENSA shall notify the United States and VIDPNR in writing as soon as practicable, but in no event later than twenty (20) business days following the date HOVENSA first knew, or by the exercise of due diligence should have known, that the event caused or may cause such delay or violation.  If HOVENSA learns subsequent to its execution of the Consent Decree that impacts associated with the more stringent $NO_2$ or $SO_2$ NAAQS or PM-2.5 memorandum will or may cause delay or violation of any obligation under the Consent Decree, to which HOVENSA intends to assert a claim of Force Majeure, HOVENSA shall notify the United States and VIDPNR in writing, by the later of the two following dates: (1) within ten (10) business days of the Date of Entry; or (2)

- 121 -

within ten (10) business days of the date when HOVENSA first knew or should have known by the exercise of due diligence that the relevant impact associated with the more stringent $NO_2$ or $SO_2$ NAAQS or PM-2.5 memorandum will or may cause delay or impediment to performance in compliance with any provision of the Consent Decree. In any notice provided pursuant to either of the preceding two sentences, HOVENSA shall reference this Paragraph and describe the anticipated length of time that the delay or violation may persist, the cause or causes of the delay or violation, all measures taken or to be taken by HOVENSA to prevent or minimize the delay or violation, the schedule by which HOVENSA proposes to implement those measures, and HOVENSA's rationale for attributing a delay or violation to a Force Majeure Event. HOVENSA shall adopt all reasonable measures to avoid or minimize such delays or violations. HOVENSA shall be deemed to know of any circumstance of which HOVENSA, or any contractor or other entity controlled by HOVENSA, knew or should have known.

183. <u>Failure to Give Notice</u>. If HOVENSA materially fails to comply with the notice requirements of this Part, the United States may void HOVENSA's claim for Force Majeure as to the specific event for which HOVENSA has failed to comply with such notice requirement.

184. <u>Plaintiffs' Response</u>. The United States, after an opportunity to consult with the Virgin Islands, shall notify HOVENSA in writing regarding its claim of Force Majeure as soon as reasonably practicable. If the United States agrees that the delay in performance has been or will be caused by a Force Majeure Event, the United States and HOVENSA shall stipulate to an extension of deadlines(s) for performance of the affected Consent Decree requirement(s) by a period equal to the delay actually caused by the event (taking into account additional work HOVENSA may be required to perform due to the more stringent $NO_2$ or $SO_2$ NAAQS or PM-2.5 memorandum), or to the extent to which HOVENSA may be relieved of stipulated penalties

- 122 -

or other remedies provided under the terms of this Consent Decree. Such agreement shall be reduced to writing, and signed by the Parties. If the agreement results in a material change to the terms of this Consent Decree, an appropriate modification shall be made pursuant to Paragraph 228 (Modification). If such change is not material, no modification of this Consent Decree shall be required.

185. <u>Disagreement</u>. If the United States does not accept HOVENSA's claim of Force Majeure, or if the Parties cannot agree on the length of the delay actually caused by the Force Majeure Event, or the extent of relief required to address the delay actually caused by the Force Majeure Event, the matter shall be resolved in accordance with Part XVI (Retention of Jurisdiction/Dispute Resolution).

186. <u>Burden of Proof</u>. In any dispute regarding Force Majeure, HOVENSA shall bear the burden of proving that any delay in performance or any other violation of any requirement of this Consent Decree was caused by or will be caused by a Force Majeure Event. HOVENSA shall also bear the burden of proving that it gave the notice required by this Section and the burden of proving the anticipated duration and extent of any delay(s) attributable to a Force Majeure Event. An extension of one compliance date based on a particular event may, but does not necessarily, result in an extension of a subsequent compliance date.

187. <u>Events Excluded</u>. Unanticipated or increased costs or expenses associated with the performance of HOVENSA's obligations under this Consent Decree shall not constitute a Force Majeure Event.

188. <u>Potential Force Majeure Events</u>. Provided HOVENSA satisfied all requirements in Paragraphs 181 to 186 and other than as provided in Paragraph 187, the Parties agree that the kinds of events listed below are among those that could qualify as Force Majeure within the

meaning of this Part: construction, labor, or equipment delays; Malfunction of an emissions unit or emission control device; unanticipated fuel supply or pollution control reagent/catalyst delivery interruptions; acts of God; and acts of war or terrorism. Depending upon the circumstances and HOVENSA's response to such circumstances, failure of a permitting authority to issue a necessary permit in a timely fashion may constitute a Force Majeure Event where the failure of the permitting authority to act is beyond the control of HOVENSA and HOVENSA has taken all steps available to it to obtain the necessary permit, including, but not limited to: submitting a complete permit application; responding to requests for additional information by the permitting authority in a timely fashion; and accepting lawful permit terms and conditions after exhausting any legal rights to appeal terms and conditions imposed by the permitting authority.

189. As part of the resolution of any matter submitted to this Court under Part XVI (Retention of Jurisdiction/Dispute Resolution) regarding a claim of Force Majeure, the Parties (by agreement), or the Court (by order), may in appropriate circumstances only extend the schedule for completion of work under this Consent Decree to account for the delay in the work that occurred as a result of any delay agreed to by the Parties or approved by the Court. HOVENSA shall be liable for stipulated penalties for its failure thereafter to complete the work in accordance with the extended or modified schedule (provided that HOVENSA shall not be precluded from making a further claim of Force Majeure with regard to meeting any such extended or modified schedule).

## XVI. RETENTION OF JURISDICTION/DISPUTE RESOLUTION

190. This Court shall retain jurisdiction of this matter for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and adjudicating all disputes

- 124 -

between the United States, the Virgin Islands and HOVENSA that may arise under the provisions of this Consent Decree until the Decree terminates in accordance with Part XIX (Termination).

191.     The dispute resolution procedure set forth in this Part shall be available to resolve any and all disputes arising under this Consent Decree, provided that the Party making such application has made a good faith attempt to resolve the matter with the other Party.

192.     The dispute resolution procedure required herein shall be invoked by one Party giving to the other written notice of a dispute pursuant to this Part. The notice shall describe the nature of the dispute, and shall state the noticing Party's position with regard to such dispute. The Party receiving such a notice shall acknowledge receipt of the notice and the Parties shall expeditiously schedule a meeting to discuss the dispute informally no later than thirty (30) Days from the receipt of such notice.

193.     Disputes submitted to dispute resolution shall, in the first instance, be the subject of informal negotiations between the Parties. Such period of informal negotiations shall not extend beyond ninety (90) Days from the date of the first meeting between representatives of the Parties, unless the Parties agree in writing that this period should be extended.

194.     In the event that the Parties are unable to reach agreement during the informal negotiation period pursuant to Paragraph 193, the United States or the Virgin Islands, as applicable, shall provide HOVENSA with a written summary of its position regarding the dispute. The position advanced by the United States or the Virgin Islands, as applicable, shall be considered binding unless, within forty-five (45) Days of HOVENSA's receipt of the written summary of the United States' or the Virgin Islands' position, HOVENSA files with the Court a petition that describes the nature of the dispute. The United States or the Virgin Islands shall

respond to the petition within sixty (60) Days of the petition's filing. The Court shall decide all disputes pursuant to applicable principles of law for resolving such disputes. In their initial filings with the Court under this Paragraph, the disputing Parties shall state their respective positions as to the applicable standard of law for resolving the particular issue or issues in dispute.

195. In the event that the United States and the Virgin Islands make differing determinations or take differing action that affect HOVENSA's rights or obligations under this Consent Decree, the final decision of the United States shall take precedence.

196. Where the nature of the dispute is such that a more timely resolution of the issue is required, the time periods set forth in this Part may be shortened upon motion of one of the Parties.

197. The Parties do not intend that the invocation of this Part by a Party cause the Court to draw any inferences or establish any presumptions adverse to either Party.

198. As part of the resolution of any dispute under this Part, the Parties, by agreement, or the Court, by order, may, in appropriate circumstances, extend or modify the schedule for completion of work under this Consent Decree to account for the delay in the work that occurred as a result of the dispute resolution process. HOVENSA shall be liable for stipulated penalties for its failure thereafter to complete the work in accordance with the extended or modified schedule.

## XVII. **EFFECT OF SETTLEMENT**

199. Definitions. For purposes of this Part, the following definitions apply:

a. "Applicable NSR/PSD Requirements" shall mean:

    i.  PSD requirements at Part C of Subchapter I of the Act, 42 U.S.C.

§ 7475, and the regulations promulgated thereunder at 40 C.F.R. §§ 52.21 and

51.166; the portions of the applicable SIP and related rules adopted as required by

40 C.F.R. §§ 51.165 and 51.166;

    ii.  Any Title V regulations that implement, adopt, or incorporate the

specific regulatory requirements identified above; any applicable federally-

enforceable territorial regulations that implement, adopt, or incorporate the

specific federal regulatory requirements identified above; any Title V permit

provisions that implement, adopt, or incorporate the specific regulatory

requirements identified above; and

    iii.  Any applicable territorial laws or regulations that implement,

adopt, or incorporate the specific federal regulatory requirements identified above

regardless of whether such laws or regulations have been formally approved by

EPA as part of the applicable State Implementation Plan.

  b.  "Applicable NSPS Subparts A and J Requirements" shall mean the

standards, monitoring, testing, reporting, and recordkeeping requirements found at 40 C.F.R.

§§ 60.100 through 60.109 (Subpart J) relating to a particular pollutant and a particular affected

facility, and the corollary general requirements found at 40 C.F.R. §§ 60.1 through 60.19

(Subpart A) that are applicable to any affected facility covered by Subpart J. This term shall

also include the requirements of 12 VIRR Section 204-45, "Standards of Performance for Sulfur

Recovery Units at Petroleum Refineries."

  c.  "Applicable NSPS Subparts A and Ja Requirements" shall mean the

standards, monitoring, testing, reporting, and recordkeeping requirements found at 40 C.F.R.

§ 60.100a through 60.109a (Subpart Ja) relating to a particular pollutant and a particular affected facility, and the corollary general requirements found at 40 C.F.R. §§ 60.1 through 60.19 (Subpart A) that are applicable to any affected facility covered by Subpart Ja.

       d.     "Applicable NSPS Subparts A and D Requirements" shall mean the standards, monitoring, testing, reporting, and recordkeeping requirements found at 40 C.F.R. §§ 60.40 through 60.46 (Subpart D) relating to a particular pollutant and a particular affected facility, and the corollary general requirements found at 40 C.F.R. §§ 60.1 through 60.19 (Subpart A) that are applicable to any affected facility covered by Subpart D.

       e.     "Applicable NSPS Subparts A and GG Requirements" shall mean the standards, monitoring, testing, reporting, and recordkeeping requirements found at 40 C.F.R. §§ 60.330 through 60.335 (Subpart GG) relating to a particular pollutant and a particular affected facility, and the corollary general requirements found at 40 C.F.R. §§ 60.1 through 60.19 (Subpart A) that are applicable to any affected facility covered by Subpart GG.

       f.     "Applicable NSPS Subparts A and QQQ Requirements" shall mean the standards, monitoring, testing, reporting, and recordkeeping requirements found at 40 C.F.R. §§ 60.590 through 60.593 (Subpart QQQ) relating to a particular pollutant and a particular affected facility, and the corollary general requirements found at 40 C.F.R. §§ 60.1 through 60.19 (Subpart A) that are applicable to any affected facility covered by Subpart QQQ.

       g.     "Benzene Waste NESHAP Requirements" shall mean the requirements imposed by the National Emission Standard for Benzene Waste Operations, 40 C.F.R. Part 61, Subpart FF, and any applicable territorial regulations that implement, adopt or incorporate the Benzene Waste NESHAP.

h.     "Delayed Coker Unit Project" or "Coker Project" shall be the equipment that was newly constructed or modified between August 19, 1999 and May 8, 2002 as follows: Coker Unit process equipment and associated gas plant, process heaters, H-8501 and H-8502, Boiler No. 10, No. 7 Amine, No. 6 Sour Water Stripper, sour water tank, pitch storage tank, desalter effluent water tank, coke cutting water tank, coke pit, Nos. 1 and 2 Sulfur Recovery Plants and associated No. 1 Beavon, the process equipment located in the No. 5 Crude, No. 3 Vacuum, No. 3 Crude, No. 1 Vacuum, No. 1 Visbreaker, and Numbers. 2, 4, 6, and 7 Distillate Desulfurizing Units, and outside battery limit modifications to the terminal, tank farm and blending equipment.

i.     "FCCU" shall include the riser, reactor, regenerator, air blower, spent catalyst stripper, catalyst recovery equipment, regenerator equipment for controlling air pollutant emissions, flue gas cooler, and the fractionator, its overhead condenser and associated wet gas compressor.

j.     "HOVENSA" shall include HOVENSA L.L.C. and its predecessors in interest, except with respect to Paragraph 206.

k.     "LDAR Requirements" shall mean the requirements relating to equipment in light liquid service and gas/vapor service set forth at 40 C.F.R. Part 60, Subpart GGG; 40 C.F.R. Part 61, Subparts J and V; and 40 C.F.R. Part 63, Subparts F, H and CC; and any applicable territorial regulations or State Implementation Plan requirements that implement, adopt or incorporate those federal regulations or set similar standards.

l.     "Post-Lodging Compliance Dates" shall mean any dates in this Part after the Date of Lodging.  Post-Lodging Compliance Dates include dates certain (e.g., "December 31, 2007"), dates after Lodging represented in terms of "months after Lodging"

- 129 -

(e.g., "12 months after the Date of Lodging"), and dates after Lodging represented by actions taken (e.g., "Date of Certification"). The Post-Lodging Compliance Dates represent the dates by which work is required to be completed or an emission limit is required to be met under the applicable provisions of this Consent Decree.

200. <u>Liability Resolution Regarding the Applicable NSR/PSD Requirements</u>. With respect to emissions of the following pollutants from the following units, entry of this Consent Decree shall resolve all civil liability of HOVENSA to the United States and the Virgin Islands: (1) for violations of the Applicable NSR/PSD Requirements resulting from the construction or modification of the following units that occurred prior to the Date of Lodging, and that commenced and ceased prior to the Date of Lodging; and (2) for any violations of the Applicable NSR/PSD Requirements resulting from pre-Lodging construction or modification of the following units, that commenced prior to the Date of Lodging and continued up to the following dates:

| Unit | Pollutant | Date |
|------|-----------|------|
| FCCU | $NO_x$ | Date of Entry |
|      | $SO_2$ | Date of Entry |
|      | PM | Date of Entry |
| Heaters, boilers, Generating Turbines, and Compressor Engines | $NO_x$ | Eight (8) years from Date of Entry |
|      | $SO_2$ | Date of Entry |
| Coker Project | $H_2S$ | December 31, 2012 |

The limits for VOC, CO, $H_2S$, $NO_x$, $SO_2$, PM, PM-10, PM$_{2.5}$ and TRS contained in VIDPNR Permit STX-557A-E-02 for the Coker Project were intended to limit the emissions of these pollutants for purposes of avoiding permitting pursuant to 40 C.F.R. §52.21. Section VIII.A establishes injunctive relief to resolve EPA's September 18, 2007 NOV, CAA-02-2007-1313, issued to HOVENSA. HOVENSA may seek relaxation of the emissions limits in Permit

- 130 -

STX-557A-E 02 pertaining to VOC, CO, H₂S, NOₓ, SO₂, PM-10, PM, PM-2.5, or TRS upon

compliance with the interim limit for the Coker Steam Vents as specified in Subparagraph 132.a

and with the interim limit for Beavon Unit #1 as specified in Appendix H ("Additional Coker

Project Injunctive Relief"), and all other injunctive relief specified in Appendix H. Such

relaxations will not be deemed to constitute a major modification to the Refinery within the

meaning of 40 C.F.R. §52.21(r)(4) and the requirements of Subparagraphs (j) through (s) of

40 C.F.R. §52.21 shall not apply by virtue of such relaxations.

201. <u>Conditional Resolution of Liability for CO Emissions Under the Applicable</u>
<u>NSR/PSD Requirements.</u>  With respect to emissions of CO from the Refinery FCCU, if and

when HOVENSA accepts an emissions limit pursuant to Paragraph 19 and demonstrates

compliance using CEMS at the Refinery FCCU, then all civil liability of HOVENSA to the

United States and the Virgin Islands shall be resolved for violations of the Applicable NSR/PSD

Requirements relating to CO emissions at the Refinery FCCU resulting from pre-Lodging

construction or modification of the Refinery FCCU that either ceased prior to the Date of

Lodging or continued up to the date on which HOVENSA demonstrates compliance with such

CO emissions limit.

202. <u>Reservation of Rights Regarding Applicable NSR/PSD Requirements:  Release</u>
<u>for Violations Continuing After the Date of Lodging Can Be Rendered Void.</u>  Notwithstanding

the resolution of liability in Paragraphs 199, 200 and 201, the releases of liability by the United

States and the Virgin Islands to HOVENSA for violations of the Applicable NSR/PSD

Requirements during the period between the Date of Lodging and the Post Lodging Compliance

Dates shall be rendered void if HOVENSA materially fails to comply with the corresponding

obligations and requirements of Part V (Affirmative Relief/Environmental Projects), Sections

V.A through V.E (relating to the FCCU), Sections V.F through V.H (relating to heaters, boilers, Generating Turbines and Compressor Engines), and Part VIII (Additional Injunctive Relief), Sections VIII.A and VIII.B (relating to the Delayed Coker Unit), provided, however, that the releases in Paragraphs 199, 200, and 201 shall not be rendered void if HOVENSA remedies such material failure and pays any stipulated penalties due as a result of such material failure.

203. Exclusions from Release Coverage Regarding Applicable NSR/PSD Requirements: Construction and/or Modification Not Covered. Notwithstanding the resolution of liability in Paragraphs 199, 200, and 201, nothing in this Consent Decree precludes the United States or the Virgin Islands from seeking injunctive relief, penalties, or other appropriate relief from HOVENSA for violations by HOVENSA of the Applicable NSR/PSD Requirements resulting from: (i) construction or modification that commenced prior to the Date of Lodging, if the resulting violations relate to pollutants or units not covered by the Consent Decree; or (ii) any construction or modification that commences after the Date of Lodging.

204. Evaluation of Applicable NSR/PSD Requirements. Increases in emissions from units covered by this Consent Decree, where the increases result from the Post-Lodging construction or modification of any units within the Refinery, are beyond the scope of the release in Paragraphs 199, 200 and 201, and HOVENSA is not relieved from any obligation to evaluate any such increases in accordance with the Applicable NSR/PSD Requirements.

205. Resolution of Liability Regarding Applicable NSPS Requirements. With respect to emissions of the following pollutants from the following units, entry of this Consent Decree shall resolve all civil liability of HOVENSA to the United States and the Virgin Islands for violations of the applicable NSPS Subparts listed below from the date that the Pre-Lodging

claims of the United States and the Virgin Islands accrued up to the specified Post-Lodging
Compliance Date:

| Unit | Applicable Subpart | Pollutant | Date |
|---|---|---|---|
| FCCU | A and J | SO₂, CO, and PM | Date of Lodging |
| | | PM (opacity monitoring requirements) | Date of AMP approval receipt (see Paragraph 22) |
| FCCU Turboexpander Vents | A and J | SO₂, CO, PM (opacity) | Date of Lodging |
| All fuel gas combustion devices listed in Appendix C ("NSPS Subpart J or Ja Compliance Schedule for Listed Fuel Gas Combustion Devices (Other than Flaring Devices)") | A, J and Ja, as applicable | SO₂ | Dates listed in Appendix C ("NSPS Subpart J or Ja Compliance Schedule for Listed Fuel Gas Combustion Devices (Other than Flaring Devices)") |
| Flaring Devices | A, J, and Ja | SO₂ | Dates listed in Appendix D ("List of Flaring Devices Subject to NSPS Subparts J/Ja") |
| East Side SRP | A, J and Ja | SO₂ and TRS | April 1, 2015 |
| West Side SRP | A, J and Ja | SO₂ and TRS | December 31, 2011 |
| Generating Turbines 1-8 | A and GG | NOₓ and SO₂ | Five (5) years from Date of Entry |
| Generating Turbine 9 | A and GG | NOₓ and SO₂ | Date of Entry |
| Boilers 5, 8, and 9 | A and D | NOₓ, SO₂, and PM | July 31, 2012 (or 12/31/2015 for Boiler 5 if replaced) |
| The FCCU and Coker Drain Systems | A and QQQ | VOC | June 30, 2011 |

- 133 -

206. **Reservation of Rights Regarding Applicable NSPS Requirements: Release for Violations Continuing After the Date of Lodging Can Be Rendered Void.** Notwithstanding the resolution of liability in Paragraph 205, the releases of liability by the United States and the Virgin Islands to HOVENSA for violations of the applicable NSPS Subparts listed in Paragraph 205 shall be rendered void if HOVENSA fails to comply with the obligations and requirements of Parts V (Affirmative Relief/Environmental Projects), VI (Permitting) and VIII (Additional Injunctive Relief) (relating to NSPS requirements); provided, however, that the releases in Paragraph 205 shall not be rendered void if HOVENSA remedies such failure and pays any stipulated penalties due as a result of such failure.

207. **Resolution of Liability for Coker Project.** Entry of this Consent Decree shall resolve all civil and administrative liability, commencing with the beginning of construction of the Coker Project through completion of the injunctive relief required pursuant to Paragraphs 132 through 134, of HOVENSA to the United States and Virgin Islands for the following:

a. EPA's November 22, 2006 NOV, CAA-02-2007-1303, issued to HOVENSA for alleged violations arising under HOVENSA's Coker Operating Permit STX-557A-E-02, and HOVENSA's written notification dated January 9, 2008, to the Virgin Islands of calculated exceedances on January 2, 2008, of Coker Process Heater (B) of PM and VOC limits in the Coker Operating Permit;

b. The findings of violation in Paragraphs 49 through 55 of EPA's September 18, 2007 NOV, CAA-02-2007-1313, issued to HOVENSA, and any other violations of the permitting regulations cited in Paragraphs 49 through 55 of the NOV with respect to the Coker Project; and

    c.     EPA's March 20, 2007 Compliance Order, CAA-02-2007-1004, as amended on April 5, 2007 by Compliance Order, CAA-02-2007-1004a, arising from HOVENSA's alleged failure to provide complete responses to EPA's December 21, 2006 Information Request Letter, issued pursuant to § 114 of the Clean Air Act.

208.    <u>Resolution of Liability Regarding Benzene Waste NESHAP Requirements</u>.  Entry of this Consent Decree shall resolve all civil liability of HOVENSA to the United States and the Virgin Islands for violations of the statutory and regulatory requirements set forth below in Subparagraphs a. – c. that (i) commenced and ceased prior to the Date of Lodging, or (ii) commenced prior to the Date of Lodging and continued past the Date of Lodging, provided that the events giving rise to such post-Lodging violations are identified by HOVENSA in its Initial Compliance Audit Report submitted pursuant to Paragraph 79 and corrected by HOVENSA as required under Paragraph 80.

    a.     Benzene Waste NESHAP.  The National Emission Standard for Benzene Waste Operations, 40 C.F.R. Part 61, Subpart FF, promulgated pursuant to Section 112(e) of the Act, 42 U.S.C. § 7412(e), including any federal regulation that adopts or incorporates the requirements of Subpart FF by express reference, but only to the extent of such adoption or incorporation;

    b.     Any applicable, federally-enforceable permits or territorial regulations that implement, adopt, or incorporate the specific federal regulatory requirements identified in Subparagraph .a.

    c.     Any applicable territorial regulations enforceable by the Virgin Islands that implement, adopt, or incorporate the specific federal regulatory requirements identified in Subparagraph a.

- 135 -

209. <u>Resolution of Liability Regarding LDAR Requirements</u>. Entry of this Consent Decree shall resolve all civil liability of HOVENSA to the United States and the Virgin Islands for violations of the statutory and regulatory requirements set forth below in Subparagraphs a - c. that (i) commenced and ceased prior to the Date of Lodging, or (ii) commenced prior to the Date of Lodging and continued past the Date of Lodging, provided that the events giving rise to such post-Lodging violations are identified by HOVENSA in its Initial Compliance Audit Report submitted pursuant to Subparagraph 106.a and corrected by HOVENSA as required under Paragraph 107:

a. LDAR Requirements. For all equipment in light liquid and gas and/or vapor service, the LDAR requirements promulgated by EPA pursuant to Sections 111 and 112 of the Clean Air Act and codified at 40 C.F.R. Part 60, Subparts VV and GGG, 40 C.F.R. Part 61, Subparts J and V, and 40 C.F.R. Part 63, Subparts F, H, and CC;

b. Any applicable, federally-enforceable permits or territorial regulations that implement, adopt, or incorporate the specific regulatory requirements identified in Subparagraph a; and

c. Any applicable territorial regulations or permits enforceable by the Virgin Islands that implement, adopt, or incorporate the specific regulatory requirements identified in Subparagraph a.

210. <u>Reservation of Rights Regarding Benzene NESHAP and LDAR Requirements</u>. Notwithstanding the resolution of liability in Paragraphs 208 and 209, nothing in this Consent Decree precludes the United States and/or the Virgin Islands from seeking from HOVENSA injunctive and/or other equitable relief or civil penalties for violations by HOVENSA of Benzene Waste NESHAP and/or LDAR requirements that (i) commenced prior to the Date of Lodging

- 136 -

and continued after the Date of Lodging if HOVENSA fails to identify and address such violations as required by Paragraphs 80 and 107, or (ii) commenced after the Date of Lodging.

211. <u>Audit Policy</u>. Nothing in this Consent Decree is intended to limit or disqualify HOVENSA, on the grounds that information was not discovered and supplied voluntarily, from seeking to apply EPA's Audit Policy to any violations or noncompliance that HOVENSA discovers during the course of any investigation, audit, or enhanced monitoring that HOVENSA is required to undertake pursuant to this Consent Decree.

212. <u>Claim/Issue Preclusion</u>. In any subsequent administrative or judicial proceeding initiated by the United States or the Virgin Islands for injunctive relief, penalties, or other appropriate relief relating to HOVENSA for violations of the PSD/NSR, NSPS, NESHAP, and/or LDAR requirements not identified in this Part:

a. HOVENSA shall not assert, and may not maintain, in any subsequent administrative, civil, or criminal action commenced by the United States or the Virgin Islands any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, or claim-splitting. Nor may HOVENSA assert or maintain any other defenses based upon any contention that the claims raised by the United States or the Virgin Islands in the subsequent proceeding should have been brought in the instant case. Nothing in the preceding sentences is intended to affect the ability of HOVENSA to assert that the claims are deemed resolved by virtue of this Part.

b. Except as set forth in Subparagraph a, the United States and the Virgin Islands may not assert or maintain that this Consent Decree constitutes a waiver or determination of, or otherwise obviates, any claim or defense whatsoever, or that this Consent Decree

constitutes acceptance by HOVENSA of any interpretation or guidance issued by EPA related to the matters addressed in this Consent Decree.

213.  <u>Imminent and Substantial Endangerment</u>.  Nothing in this Consent Decree shall be construed to limit the authority of the United States and the Virgin Islands to undertake any action against any person, including HOVENSA, to abate or correct conditions which may present an imminent and substantial endangerment to the public health, welfare, or the environment.

## XVIII.  **GENERAL PROVISIONS**

214.  <u>Other Laws</u>.  Except as specifically provided by this Consent Decree, nothing in this Consent Decree shall relieve HOVENSA of its obligations to comply with all otherwise applicable federal and territorial laws and regulations, including, but not limited to, more stringent standards.  In addition, nothing in this Consent Decree shall be construed to prohibit or prevent the United States or the Virgin Islands from developing, implementing, and enforcing more stringent standards subsequent to the Date of Lodging through rulemaking, the permit process, or as otherwise authorized or required under federal or territorial laws and regulations.  Subject to Part XVII (Effect of Settlement) and Paragraphs 149 and 216, nothing contained in this Consent Decree shall be construed to prevent or limit any power of the United States to seek or obtain other remedies or sanctions available under federal or territorial statutes or regulations by virtue of HOVENSA's violation of this Consent Decree or of the statutes and regulations upon which this Consent Decree is based, or for HOVENSA's violations of any applicable provision of law.  This shall include the right of the United States or the Virgin Islands to invoke the authority of the Court to order HOVENSA's compliance with this Consent Decree in a subsequent contempt action.  The requirements of this Consent Decree do not exempt

HOVENSA from complying with any and all new or modified federal and/or territorial statutory or regulatory requirements that may require technology, equipment, monitoring, or other upgrades after the Date of Lodging.

215. <u>Startup, Shutdown, Malfunction</u>. Notwithstanding the provisions in this Consent Decree regarding Startup, Shutdown, and Malfunction, the Decree does not exempt HOVENSA from the requirements of territorial laws and regulations or from the requirements of any permits or plan approvals issued to HOVENSA as such laws, regulations, permits, and/or plan approvals may apply to Startups, Shutdowns, and Malfunctions at the Refinery.

216. <u>Post-Permit Violations</u>. Nothing in this Consent Decree shall be construed to prevent or limit the right of the United States or the Virgin Islands to seek injunctive or monetary relief for violations of limits that have been incorporated into permits pursuant to this Consent Decree; provided, however, that with respect to monetary relief, the United States and the Virgin Islands must elect between filing a new action for such monetary relief or seeking stipulated penalties under this Consent Decree, if stipulated penalties also are available for the alleged violation(s).

217. <u>Failure of Compliance</u>. The United States and the Virgin Islands do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that HOVENSA's complete compliance with the terms of the Decree will result in compliance with the provisions of the CAA or comparable territorial statutes and regulations. Notwithstanding the review or approval by EPA or VIDPNR of any plans, reports, policies, or procedures formulated pursuant to this Consent Decree, HOVENSA shall remain solely responsible for compliance with the terms of this Consent Decree, all applicable permits, and all applicable federal and territorial laws and regulations, except as provided in Part XV (Force Majeure).

218. <u>Changes to Law</u>. In the event that during the life of this Consent Decree there is change in the statutes or regulations that provide the underlying basis for the Consent Decree such that HOVENSA would not otherwise be required to perform any of the obligations herein or would have the option to undertake or demonstrate compliance in an alternative or different manner, HOVENSA may petition the Court for relief from any such requirements, in accordance with Rule 60 of the Federal Rules of Civil Procedures ("F.R.Civ.P."). However, if HOVENSA applies to the Court for relief under this Paragraph, the United States reserves the right to seek to void all or part of the Resolution of Liability reflected in Part XVII (Effect of Settlement). Nothing in this Paragraph is intended to enlarge the Parties' rights under F.R.Civ.P. Rule 60, nor is this Paragraph intended to confer on any Party any independent basis, outside of F.R.Civ.P. Rule 60, for seeking such relief.

219. <u>Alternative Monitoring Plans</u>. Pursuant to Paragraphs 22 or 35 of this Consent Decree, HOVENSA may submit an AMP to EPA for approval. HOVENSA shall comply with the proposed AMP pending EPA's approval or disapproval of the submitted AMP. If an AMP is not approved, then within ninety (90) Days of HOVENSA's receipt of disapproval, HOVENSA will submit to EPA for approval a plan and schedule that provide for compliance with the applicable monitoring requirements as soon as practicable. Such plan may include a revised AMP application, physical or operational changes to the equipment, or additional or different monitoring.

220. <u>Service of Process</u>. HOVENSA hereby agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rule 4 of the F.R.Civ.P. and any applicable local rules of this Court, including, but not limited to, service of a summons. The persons identified by

- 140 -

HOVENSA in Paragraph 225 (Notice) are authorized to accept service of process with respect to all matters arising under or relating to this Consent Decree.

221. <u>Post-Lodging, Pre-Entry Obligations</u>. Obligations of HOVENSA under this Consent Decree to perform duties after the Date of Lodging but prior to the Date of Entry shall be legally enforceable only on or after the Date of Entry. Liability for stipulated penalties, if applicable, shall accrue for violations of such obligations, and the United States or the Virgin Islands may demand payment as provided in the Decree, provided that stipulated penalties accruing between the Date of Lodging and the Date of Entry may not be collected unless and until this Decree is entered by the Court.

222. <u>Costs.</u> Each Party to this action shall bear its own costs and attorneys' fees.

223. <u>Public Documents</u>. All information and documents submitted by HOVENSA pursuant to this Consent Decree shall be subject to public inspection in accordance with applicable federal law, unless subject to legal privileges or protection, or identified and supported as trade secrets or confidential business information in accordance with the applicable federal statutes or regulations.

224. <u>Public Notice and Comment</u>. The Parties agree to this Consent Decree and agree that this Consent Decree may be entered upon compliance with the public notice procedures set forth at 28 C.F.R. § 50.7, and upon notice to the Court from the United States Department of Justice requesting entry of this Consent Decree. The United States reserves the right to withdraw or withhold its consent to this Consent Decree at any time prior to the Date of Entry if public comments disclose facts or considerations indicating that this Consent Decree is inappropriate, improper, or inadequate.

225. <u>Notice</u>. Unless otherwise provided herein, notifications to or communications between the Parties shall be deemed submitted on the date they are postmarked and sent by U.S. Mail or overnight mail, postage prepaid, except for notices under Part XV (Force Majeure) and Part XVI (Retention of Jurisdiction/Dispute Resolution), which shall be sent by overnight mail or by certified or registered mail, return receipt requested. Notifications to or communications mailed to HOVENSA shall be deemed to be received on the earlier of (i) actual receipt by HOVENSA or (ii) receipt of an electronic version sent to the addressees set forth in this Paragraph. Each report, study, notification, or other communication of HOVENSA shall be submitted as specified in this Consent Decree. If the date for submission of a report, study, notification, or other communication falls on a Saturday, Sunday, or federal or territorial holiday, the report, study, notification, or other communication will be deemed timely if it is submitted the next Working Day. Except as otherwise provided herein, all reports, notifications, certifications, or other communications required or allowed under this Consent Decree shall be addressed as follows:

<u>As to the United States</u>:

> Chief
> Environmental Enforcement Section
> Environment and Natural Resources Division
> U.S. Department of Justice
> P.O. Box 7611
> Ben Franklin Station
> Washington, DC 20044-7611
> Reference Case No. 90-5-2-1-08229/1

> Director
> Air Enforcement Division
> Office of Civil Enforcement (2242A)
> Office of Enforcement and Compliance Assurance
> U.S. Environmental Protection Agency
> 1200 Pennsylvania Ave., N.W.
> Washington, D.C. 20004

with a hard copy to:

> Director
> Air Enforcement Division
> Office of Civil Enforcement
> c/o Matrix New World Engineering, Inc.
> 120 Eagle Rock Ave., Suite 207
> East Hannover, NJ 07936-3159

As to EPA Region 2:

> Director, Division of Enforcement and Compliance Assistance
> U.S. EPA Region 2
> 290 Broadway, 21st Floor
> New York, NY 10007-1866

> Director, Caribbean Environmental Protection Division
> U.S. EPA Region 2
> Centro Europa Building, Suite 417
> 1492 Ponce De Leon Avenue
> Santurce, Puerto Rico 00907-4127

As to the United States Virgin Islands:

> Director, Division of Environmental Protection
> Virgin Islands Department of Planning and Natural Resources
> 45 Mars Hill
> Fredricksted, St. Croix, U.S. Virgin Islands 0084-4474

and an electronic copy, in .pdf format, to:
> csullivan@matrixneworld.com
> foley.patrick@epa.gov

As to HOVENSA:

> HOVENSA L.L.C.
> c/o Environmental Director
> One Estate Hope
> Christiansted, USVI  00820

and an electronic copy, in .pdf format, to:
> ccolman@hess.com
> Jdomike@wallaceking.com

Any Party may change either the notice recipient or the address for providing notices to it by serving the other Party with a notice setting forth such new notice recipient or address. In addition, the nature and frequency of reports required by this Consent Decree may be modified by mutual consent of the Parties. The consent of the United States to such modification must be in the form of a written notification from EPA, but need not be filed with the Court to be effective.

226. <u>Approvals</u>. All EPA approvals or comments required under this Consent Decree shall be in writing.

227. <u>Paperwork Reduction Act</u>. The information required to be maintained or submitted pursuant to this Consent Decree is not subject to the Paperwork Reduction Act of 1980, 44 U.S.C. § 3501 et seq.

228. <u>Modification</u>. This Consent Decree contains the entire agreement of the Parties and will not be modified by any prior oral or written agreement, representation, or understanding. Prior drafts of this Consent Decree will not be used in any action involving the interpretation or enforcement of the Consent Decree. Non-material modifications to this Consent Decree will be effective when signed by the United States and HOVENSA. The United States will file non-material modifications with the Court on a periodic basis. For purposes of this Paragraph, non-material modifications include, but are not limited to, modifications to the frequency of reporting obligations and modifications to schedules that do not extend the date for compliance with emissions limitations following the installation of control equipment, provided that such changes are agreed upon in writing between the United States and HOVENSA. Material modifications to this Consent Decree will be in writing, signed by the Parties, and will be effective upon approval by the Court. Specific provisions in this Consent Decree that govern

- 144 -

specific types of modifications shall be effective as set forth in the specific provision governing the modification.

229. <u>Effect of Shutdown</u>. The permanent Shutdown of an emissions unit or equipment and the surrender of all permits for that emissions unit or equipment shall be deemed to satisfy all requirements of this Consent Decree applicable to that emissions unit or equipment on and after the later of: (i) the date of the Shutdown of the emissions unit or equipment; or (ii) the date of the surrender of all permits applicable to the unit or piece of equipment. The permanent Shutdown of the Refinery and the surrender of all air permits for the Refinery shall be deemed to satisfy all requirements of this Consent Decree applicable to the Refinery on and after the later of: (i) the date of the Shutdown of the Refinery; or (ii) the date of the surrender of all air permits.

## XIX. **TERMINATION**

230. <u>Certification of Completion: Applicable Sections</u>. Prior to moving for termination under Paragraph 234, HOVENSA may seek to certify completion of one or more of the following Sections/Parts of the Consent Decree.

   a. Sections V.A through V.E - Fluid Catalytic Cracking Unit (including operation of the unit for one (1) year after completion in compliance with the emission limits established pursuant to this Consent Decree);

   b. Section V.F – $NO_x$ Emissions Reductions from Heaters, Boilers, Generating Turbines and Compressor Engines (including operation of the relevant units for one (1) year after installation of Qualifying Controls in compliance with the Consent Decree);

   c. Section V.G – $SO_2$ Emissions Reductions from, and NSPS Applicability to Heaters, Boilers and Generating Turbines (including operation of the relevant units for one (1) year after completion in compliance with the emission limit set pursuant to the Consent Decree);

    d.     Section V.H – Sulfur in Fuel Restrictions for Oil Burning (including operation of the relevant units for one (1) year after completion in compliance with the emission limit set pursuant to the Consent Decree);

    e.     Section V.I – Sulfur Recovery Plants (including operation of the relevant units for one (1) year after completion in compliance with the emission limit set pursuant to the Consent Decree);

    f.     Sections V.J through V.O - Flares; (including operation of the relevant units for one (1) year after completion in compliance with the emission limit set pursuant to the Consent Decree);

    g.     Sections V.P through V.R – Benzene, NSPS QQQ, and LDAR;

    h.     Part VIII – Additional Injunctive Relief (including operation of the relevant units for one (1) year after completion in compliance with the emission limit set pursuant to the Consent Decree); and

    i.     Part IX – Territorial Supplemental Environmental Project.

231.   <u>Certification of Completion: HOVENSA Actions</u>.  If HOVENSA concludes that any of the Section(s) or Part(s) identified in Paragraph 230 have been completed, HOVENSA may submit a written report to EPA and VIDPNR describing the activities undertaken and certifying that the applicable Section(s) or Part(s) have been completed in full satisfaction of the requirements of this Consent Decree, and that HOVENSA is in substantial and material compliance with all of the other requirements of the Consent Decree. The report will contain the following statement, signed by a responsible corporate official of HOVENSA.

> "I certify under penalty of law that this information was prepared under my direction or supervision by personnel qualified to properly gather and evaluate the information submitted.  Based on my directions and after reasonable inquiry of the person(s) directly responsible for gathering the information, the information

submitted is, to the best of my knowledge and belief, true, accurate and complete."

232. <u>Certification of Completion</u>: EPA Actions. Upon receipt of HOVENSA's certification, EPA will notify HOVENSA whether the requirements set forth in the applicable Section have been completed in accordance with this Consent Decree:

   a.   If EPA concludes that the requirements have not been fully complied with, EPA will notify HOVENSA as to the activities that must be undertaken to complete the applicable Section. HOVENSA will perform all activities described in the notice, subject to its right to invoke the dispute resolution procedures set forth in Part XVI (Dispute Resolution); and/or

   b.   If EPA concludes that the requirements of the applicable Section or Part have been completed in accordance with this Consent Decree, EPA will so certify in writing to HOVENSA. This certification will constitute the certification of completion of the applicable Section or Part for purposes of this Consent Decree.

The parties recognize that ongoing obligations under such Sections remain and necessarily continue (e.g., reporting, recordkeeping, training, auditing requirements), and that HOVENSA's certification is that it is in current compliance with all such obligations.

233. <u>Certification of Completion</u>: <u>No Impediment to Stipulated Penalty Demand</u>. Nothing in Paragraphs 230 and 231 will preclude the United States from seeking stipulated penalties for a violation of any of the requirements of the Consent Decree regardless of whether a Certification of Completion has been issued under Subparagraph 232.b. In addition, nothing in this Paragraph will permit HOVENSA to fail to implement any ongoing obligations under the Consent Decree regardless of whether a Certification of Completion has been issued.

- 147 -

234. <u>Termination: Conditions Precedent</u>. This Consent Decree will be subject to termination upon motion by the Parties or upon motion by HOVENSA acting alone under the conditions identified in this Paragraph. Prior to seeking termination, HOVENSA must have completed and satisfied all of the following requirements of this Consent Decree:

  a. Installation of control technology systems as specified in this Consent Decree;

  b. Compliance with all provisions contained in this Consent Decree; such compliance may be established for specific parts of the Consent Decree in accordance with Paragraphs 230 and 231;

  c. Payment of all penalties and other monetary obligations due under the terms of the Consent Decree; unless all penalties and/or other monetary obligations owed to the United States or the Virgin Islands are fully paid as of the time of the motion;

  d. Satisfaction of Part IX (Territorial Supplemental Environmental Project);

  e. Application for and receipt of permits incorporating the emission limits and standards established under this Consent Decree; and

  f. Operation for at least one (1) year of each unit in compliance with the emission limits established herein and certification of such compliance for each unit within the first progress report following the conclusion of the compliance period.

235. <u>Termination: Procedure</u>. At such time as HOVENSA believes that it has satisfied the requirements for termination set forth in Paragraph 234, HOVENSA will certify such compliance and completion to the United States and the Virgin Islands in accordance with the certification language of Paragraph 231. Unless either the United States or the Virgin Islands objects in writing with specific reasons within 120 days of receipt of HOVENSA's certification

- 148 -

under this Paragraph, the Court may upon motion by HOVENSA order that this Consent Decree be terminated. If either the United States or the Virgin Islands objects to the certification by HOVENSA, then the matter will be submitted to the Court for resolution under Part XVI (Retention of Jurisdiction/Dispute Resolution). In such case, HOVENSA will bear the burden of proving that this Consent Decree should be terminated

## XX.  SIGNATORIES

236.  Each of the undersigned representatives certifies that he or she is fully authorized to enter into this Consent Decree on behalf of the applicable Party, and to execute and to bind such Party to this Consent Decree.

Dated and entered this ____6th____ day of ___June___, 20_11_.

_____
VIRGIN ISLANDS DISTRICT JUDGE

- 149 -

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al. v. HOVENSA L.L.C.

FOR PLAINTIFF THE UNITED STATES OF AMERICA:

Date: _____1/16/11_____

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

Date: _____1/19/11_____

MYLES E. FLINT, II
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611
(202) 307-1859

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al. v. HOVENSA L.L.C.

FOR PLAINTIFF THE UNITED STATES OF AMERICA:

RONALD W. SHARPE
United States Attorney
United States Virgin Islands

JOYCELYN HEWLETT
Assistant United States Attorney
United States Virgin Islands

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of
United States, et al. v. HOVENSA L.L.C.

FOR PLAINTIFF THE UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY:

Date: 1/22/11

CYNTHIA GILES
Assistant Administrator
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
Washington, D.C. 20460

Date: January 19, 2011

ADAM M. KUSHNER
Director, Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
Washington, D.C. 20460

Date: 1/3/11

JOHN FOGARTY
Associate Director, Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
Washington, D.C. 20460

Date: 1/6/11

PHILLIP BROOKS
Director, Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
Washington, D.C. 20460

Case 1:12-cv-00090-RLF-GWC Document #: 24-2 Filed: 08/07/13 Page 453 of 1770
Case 1:12-cv-00090-RLF-GWC Document #: 24-2 Filed: 04/07/13 Page 453 of 1770
2194

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al. v. HOVENSA L.L.C.

FOR PLAINTIFF THE UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY,
REGION 2:

Date: 1/6/11     *Judith Enck*

JUDITH ENCK
Regional Administrator
United States Environmental Protection Agency
Region 2
290 Broadway
New York, New York 10007-1866

Date: 1/6/11     *Kara E. Murphy*

KARA MURPHY
Assistant Regional Counsel
United States Environmental Protection Agency
Region 2
290 Broadway
New York, New York 10007-1866

- 153 -

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United</u>

<u>States, et al v. HOVENSA L.L.C.</u>

FOR PLAINTIFF THE UNITED STATES
VIRGIN ISLANDS:

Date: _1-14-2011_

CARMELO RIVERA
Acting Commissioner
Government of the US Virgin Islands
Department of Planning & Natural Resources
Cyril E. King Airport,
Terminal Building, 2nd floor
St. Thomas, US Virgin Islands 00802

- 154 -

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al v. HOVENSA L.L.C.

FOR DEFENDANT HOVENSA L.L.C.:

Date: 04 Jan 11

JOHN W. GEORGE
Acting President and Chief Operating Officer

155

## APPENDIX A
## List of Heaters and Boilers Greater Than 40 mmBTU Per Hour, Generating Turbines, and Compressor Engines

| Source Code | Unit | Unit Size (mmBtu/hr) | 2004 | | 2005 | | Emissions Factor | |
|---|---|---|---|---|---|---|---|---|
| | | | (lb/mmBtu) | (tons/yr) | (lb/mmBtu) | (tons/yr) | Basis | Time Period |
| H-101 | 1 Vis. | 133.6 | 0.224 | 81.2 | 0.224 | 87.6 | Stack Test | 3 by 1-hr |
| H-104 | 1 Vis. | 99.4 | 0.179 | 48.3 | 0.179 | 52.1 | Stack Test | 3 by 1-hr |
| H-160 | Utl. Fract. | 112.5 | 0.275 | 37.0 | 0.275 | 71.9 | AP-42 Tbl 1.4-1 | |
| H-200 | Penex | 41.1 | 0.191 | 20.2 | 0.191 | 14.7 | Stack Test | 3 by 1-hr |
| H-201 | Penex | 42.6 | 0.150 | 16.4 | 0.150 | 11.9 | Stack Test | 3 by 1-hr |
| H-202 | Penex | 68.4 | 0.098 | 17.2 | 0.098 | 12.5 | AP-42 Tbl 1.4-1 | |
| H-401A | 2 CDU | 150.7 | 0.196 | 109.8 | 0.196 | 90.6 | Stack Test | 3 by 1-hr |
| H-401B | 2 CDU | 150.7 | 0.170 | 95.2 | 0.170 | 78.6 | Stack Test | 3 by 1-hr |
| H-401C | 2 CDU | 150.7 | 0.349 | 195.7 | 0.334 | 154.4 | AP-42 Tbls 1.3-1/1.4-1* | |
| H-600 | 2 Plat. | 48.1 | 0.098 | 8.1 | 0.098 | 5.3 | AP-42 Tbl 1.4-1 | |
| H-602 | 2 Plat. | 261.9 | 0.185 | 83.5 | 0.185 | 54.7 | Stack Test | 3 by 1-hr |
| H-603 | 2 Plat. | 72.0 | 0.185 | 23.0 | 0.185 | 15.0 | Stack Test | 3 by 1-hr |
| H-606 | 2 Plat. | 49.2 | 0.098 | 8.3 | 0.098 | 5.4 | AP-42 Tbl 1.4-1 | |
| H-801 | 2 DD | 79.0 | 0.095 | 19.4 | 0.095 | 15.6 | Stack Test | 3 by 1-hr |
| H-1401A | 3 CDU | 208.6 | 0.144 | 116.7 | 0.144 | 86.9 | Stack Test | 3 by 1-hr |
| H-1401B | 1 Vac. | 188.2 | 0.178 | 130.1 | 0.178 | 96.9 | Stack Test | 3 by 1-hr |
| H-1500 | 3 DD | 50.8 | 0.098 | 11.3 | 0.098 | 8.8 | AP-42 Tbl 1.4-1 | |
| H-1501 | 3 DD | 53.5 | 0.098 | 11.9 | 0.098 | 9.2 | AP-42 Tbl 1.4-1 | |
| H-2101 | 2 Vac. | 190.6 | 0.328 | 157.1 | 0.319 | 116.3 | AP-42 Tbls 1.3-1/1.4-1* | |
| H-2102 | 2 Vac. | 184.6 | 0.328 | 152.2 | 0.319 | 112.6 | AP-42 Tbls 1.3-1/1.4-1* | |
| H-2185 | 2 Vis. | 250 | 0.162 | 71.9 | 0.162 | 71.7 | CEM | Annual |
| H-2201A | 4 DD | 46.8 | 0.098 | 12.9 | 0.098 | 10.3 | AP-42 Tbl 1.4-1 | |
| H-2201B | 4 DD | 46.8 | 0.098 | 12.9 | 0.098 | 10.3 | AP-42 Tbl 1.4-1 | |
| H-2202 | 4 DD | 91 | 0.133 | 34.0 | 0.133 | 27.3 | Stack Test | 3 by 1-hr |
| H-2401 | 5 DD | 100.8 | 0.275 | 45.9 | 0.275 | 49.0 | AP-42 Tbl 1.4-1 | |
| H-2501 | Naph Frac | 113.6 | 0.085 | 23.7 | 0.085 | 23.0 | Stack Test | 3 by 1-hr |
| H-3101A | 5 CDU | 309.8 | 0.314 | 304.0 | 0.314 | 290.5 | Stack Test | 3 by 1-hr |
| H-3101B | 5 CDU | 309.8 | 0.223 | 215.9 | 0.223 | 206.3 | Stack Test | 3 by 1-hr |

* Denotes a combined fuel fired unit where the emissions factor shown is based on the ratio of the fuel specific AP-42 weight averaged based upon the units annual heat input

A - 1

# APPENDIX A
## List of Heaters and Boilers Greater Than 40 mmBTU Per Hour, Generating Turbines, and Compressor Engines

| Source Code | Unit | Unit Size (mmBtu/hr) | 2004 (lb/mmBtu) | 2004 (tons/yr) | 2005 (lb/mmBtu) | 2005 (tons/yr) | Emissions Factor Basis | Time Period |
|---|---|---|---|---|---|---|---|---|
| H-4101A | 6 CDU | 309.2 | 0.265 | 307.3 | 0.265 | 253.7 | Stack Test | 3 by 1-hr |
| H-4101B | 6 CDU | 309.2 | 0.304 | 352.5 | 0.304 | 291.0 | Stack Test | 3 by 1-hr |
| H-4201* | 3 Vac. | 227.6 | 0.411 | 264.3 | 0.392 | 240.4 | AP-42 Tbls 1.3-1/1.4-1* | |
| H-4202* | 3 Vac. | 220.4 | 0.411 | 255.9 | 0.392 | 233.8 | AP-42 Tbls 1.3-1/1.4-1* | |
| H-4301A | 7 DD | 47.9 | 0.098 | 12.5 | 0.098 | 10.9 | AP-42 Tbl 1.4-1 | |
| H-4301B | 7 DD | 51.1 | 0.098 | 13.3 | 0.098 | 11.6 | AP-42 Tbl 1.4-1 | |
| H-4302 | 7 DD | 135.2 | 0.105 | 37.7 | 0.105 | 32.9 | Stack Test | 3 by 1-hr |
| H-4401 | 3 Plat. | 127.3 | 0.130 | 48.6 | 0.130 | 43.3 | Stack Test | 3 by 1-hr |
| H-4402 | 3 Plat. | 77.9 | 0.098 | 22.4 | 0.098 | 20.0 | AP-42 Tbl 1.4-1 | |
| H-4451 | 3 Plat. | 351.6 | 0.154 | 158.9 | 0.154 | 141.6 | | |
| H-4452 | 3 Plat. | 251.2 | 0.154 | 113.5 | 0.154 | 101.2 | Stack Test | 3 by 1-hr |
| H-4453 | 3 Plat. | 115.6 | 0.154 | 52.2 | 0.154 | 46.6 | Stack Test | |
| H-4454 | 3 Plat. | 63.3 | 0.154 | 28.6 | 0.154 | 25.5 | | |
| H-4455 | 3 Plat. | 124 | 0.091 | 33.1 | 0.091 | 29.5 | Stack Test | 3 by 1-hr |
| H-4502 | 2 Sulf | 77.5 | 0.098 | 23.6 | 0.098 | 21.5 | AP-42 Tbl 1.4-1 | |
| H-4503 | 2 Sulf | 90.3 | 0.098 | 27.5 | 0.098 | 25.0 | AP-42 Tbl 1.4-1 | |
| H-4504 | 2 Sulf | 70.4 | 0.098 | 21.4 | 0.098 | 19.5 | AP-42 Tbl 1.4-1 | |
| H-4505 | 2 Sulf | 43.8 | 0.098 | 13.3 | 0.098 | 12.1 | AP-42 Tbl 1.4-1 | |
| H-4601A | 6 DD | 52.1 | 0.098 | 12.5 | 0.098 | 11.2 | AP-42 Tbl 1.4-1 | |
| H-4601B | 6 DD | 52.1 | 0.098 | 12.5 | 0.098 | 11.2 | AP-42 Tbl 1.4-1 | |
| H-4602 | 6 DD | 101.3 | 0.108 | 26.8 | 0.108 | 24.1 | Stack Test | 3 by 1-hr |
| H-5301A | 9 DD | 61.2 | 0.098 | 17.8 | 0.098 | 15.5 | AP-42 Tbl 1.4-1 | |
| H-5301B | 9 DD | 61.2 | 0.098 | 17.8 | 0.098 | 15.5 | AP-42 Tbl 1.4-1 | |
| H-5302 | 9 DD | 112 | 0.148 | 49.3 | 0.148 | 42.9 | Stack Test | 3 by 1-hr |
| H-5401 | 4 Plat. | 114.1 | 0.123 | 35.9 | 0.123 | 26.6 | Stack Test | 3 by 1-hr |
| H-5402 | 4 Plat. | 78.8 | 0.098 | 19.8 | 0.098 | 14.6 | AP-42 Tbl 1.4-1 | |
| H-5451 | 4 Plat. | 248 | 0.147 | 93.4 | 0.147 | 69.1 | Stack Test | 3 by 1-hr |
| H-5452 | 4 Plat. | 201.7 | 0.147 | 75.9 | 0.147 | 56.2 | Stack Test | 3 by 1-hr |

\* Denotes a combined fuel fired unit where the emissions factor shown is based on the ratio of the fuel specific AP-42 weight averaged based upon the units annual heat input

A - 2

## APPENDIX A
### List of Heaters and Boilers Greater Than 40 mmBTU Per Hour, Generating Turbines, and Compressor Engines

| Source Code | Unit | Unit Size (mmBtu/hr) | 2004 (lb/mmBtu) | 2004 (tons/yr) | 2005 (lb/mmBtu) | 2005 (tons/yr) | Emissions Factor Basis | Time Period |
|---|---|---|---|---|---|---|---|---|
| H-5453 | 4 Plat. | 114.4 | 0.147 | 43.1 | 0.147 | 31.9 | Stack Test | 3 by 1-hr |
| H-5454 | 4 Plat. | 64.7 | 0.147 | 24.4 | 0.147 | 18.0 | Stack Test | 3 by 1-hr |
| H-5455 | 4 Plat. | 129.2 | 0.121 | 40.0 | 0.121 | 29.6 | Stack Test | 3 by 1-hr |
| H-8501A | Coker | 195 | 0.019 | 15.9 | 0.019 | 14.0 | Stack Test | 3 by 1-hr |
| H-8501B | Coker | 195 | 0.018 | 15.1 | 0.018 | 13.3 | Stack Test | 3 by 1-hr |
| B-1151 | #1 F. Boiler | 205.4 | 0.261 | 108.9 | 0.261 | 114.6 | Stack Test | 3 by 1-hr |
| B-1153 | #3 F. Boiler | 205.4 | 0.245 | 118.2 | 0.245 | 98.4 | Stack Test | 3 by 1-hr |
| B-1154 | #4 F. Boiler | 202.7 | 0.247 | 98.9 | 0.247 | 97.6 | Stack Test | 3 by 1-hr |
| B-1155 | #5 F. Boiler | 405.4 | 0.372 | 352.5 | 0.336 | 257.6 | AP-42 Tbls 1.3-1/1.4-1* | 3 by 1-hr |
| B-3301 | #6 F. Boiler | 202.7 | 0.316 | 142.9 | 0.316 | 152.3 | Stack Test | 3 by 1-hr |
| B-3302 | #7 F. Boiler | 202.7 | 0.299 | 134.0 | 0.299 | 134.6 | Stack Test | 3 by 1-hr |
| B-3303 | #8 F. Boiler | 405.4 | 0.227 | 217.3 | 0.227 | 214.5 | Stack Test | 3 by 1-hr |
| B-3304 | #9 F. Boiler | 405.4 | 0.257 | 248.2 | 0.257 | 237.1 | Stack Test | 3 by 1-hr |
| B-3701 | #10 F. Boiler | 225 | 0.061 | 34.0 | 0.061 | 33.3 | Stack Test | 3 by 1-hr |
|  | No.1 Gas Turbine | 317.4 | 0.439 | 289.6 | 0.439 | 303.2 | Stack Test | 3 by 1-hr |
|  | No.2 Gas Turbine | 317.4 | 0.383 | 278.8 | 0.383 | 258.5 | Stack Test | 3 by 1-hr |
|  | No.3 Gas Turbine | 317.4 | 0.399 | 344.7 | 0.399 | 312.7 | Stack Test | 3 by 1-hr |
|  | No.4 Gas Turbine | 317.4 | 0.518 | 644.6 | 0.518 | 556.2 | Stack Test | 3 by 1-hr |
|  | No.5 Gas Turbine | 317.4 | 0.522 | 562.7 | 0.522 | 542.1 | Stack Test | 3 by 1-hr |
|  | No.6 Gas Turbine | 317.4 | 0.623 | 677.6 | 0.623 | 616.2 | Stack Test | 3 by 1-hr |
|  | No.7 Gas Turbine | 317.4 | 0.666 | 752.3 | 0.666 | 768.7 | Stack Test | 3 by 1-hr |
|  | No.8 Gas Turbine | 394.8 | 0.625 | 632.2 | 0.625 | 594.2 | Stack Test | 3 by 1-hr |
|  | No.9 Gas Turbine | 394.8 | 0.085 | 80.4 | 0.085 | 83.7 | Stack Test | 3 by 1-hr |
|  | No.10 Gas Turbine | 325.0 | 0.101 | 133.1 | 0.101 | 121.6 | Stack Test | 3 by 1-hr |
| 2DD | C-800A | 21.5 | 3.45 | 191.5 | 3.45 | 154.5 | Stack Test | 3 by 1-hr |
| 2DD | C-800B | 21.5 | 3.45 | 191.5 | 3.45 | 154.5 | Stack Test | 3 by 1-hr |
| 2DD | C-800C | 21.5 | 3.45 | 191.5 | 3.45 | 154.5 | Stack Test | 3 by 1-hr |
| 4DD | C-2201A | 21.4 | 3.45 | 207.2 | 3.45 | 166.5 | Stack Test | 3 by 1-hr |

* Denotes a combined fuel fired unit where the emissions factor shown is based on the ratio of the fuel specific AP-42 weight averaged based upon the units annual heat input

A - 3

# APPENDIX A
## List of Heaters and Boilers Greater Than 40 mmBTU Per Hour, Generating Turbines, and Compressor Engines

| Source Code | Unit | Unit Size (mmBtu/hr) | 2004 (lb/mmBtu) | 2004 (tons/yr) | 2005 (lb/mmBtu) | 2005 (tons/yr) | Emissions Factor Basis | Time Period |
|---|---|---|---|---|---|---|---|---|
| 4DD | C-2201B | 21.4 | 3.45 | 207.2 | 3.45 | 166.5 | Stack Test | 3 by 1-hr |
| 4DD | C-2201C | 21.4 | 3.45 | 207.2 | 3.45 | 166.5 | Stack Test | 3 by 1-hr |

* Denotes a combined fuel fired unit where the emissions factor shown is based on the ratio of the fuel specific AP-42 weight averaged based upon the units annual heat input

* Denotes a combined fuel fired unit where the emissions factor shown is based on the ratio of the fuel specific AP-42 weight averaged based upon the units annual heat input

A - 4

# APPENDIX B
## Predictive Emissions Monitoring Systems Requirements

A Predictive Emissions Monitoring Systems ("PEMS") is a mathematical model that predicts the gas concentration of $NO_x$ in the stack based on a set of operating data. Consistent with the CEMS data frequency requirements of 40 C.F.R. Part 60, the PEMS shall calculate a pound per million BTU value at least once every 15 minutes, and all of the data produced in a calendar hour shall be averaged to produce a calendar hourly average value in pounds per BTU.

The types of information needed for a PEMS are described below. The list of instruments and data sources shown below represent an ideal case. However, at a minimum, each PEMS shall include continuous monitoring for at least items 3-5 below. HOVENSA will identify and use existing instruments and refinery data sources to provide sufficient data for the development and implementation of the PEMS.

**Instrumentation:**

1. Absolute Humidity reading (one instrument per refinery, if available)
2. Fuel Density, Composition and/or specific gravity – On line readings (it may be possible if the fuel gas does not vary widely, that a grab sample and analysis may be substituted
3. Fuel Flow rate
4. Firebox temperature
5. Percent excess oxygen
6. Airflow to the firebox (if known or possibly estimated)
7. Process variable data – steam flow rate, temperature and pressure – process stream flow rate, temperature and pressure, etc

**Computers & Software:**

Relevant data will be collected and stored electronically, using computers and software. The hardware and software specifications will be specified in the source-specific PEMS.

**Calibration and Setup:**

1. Data will be collected for a period of 7 to 10 days of all the data that is to be used to construct the mathematical model. The data will be collected over an operating range that represents 80% to 100% of the normal operating range of the heater/boiler;
2. A "Validation" analysis shall be conducted to make sure the system is collecting data properly;
3. Stack Testing to develop the actual emissions data for comparison to the collected parameter data; and
4. Development of the mathematical models and installation of the model into the computer.

**APPENDIX B**
**Predictive Emissions Monitoring Systems Requirements**

**The elements of a monitoring protocol for a PEMS will include:**

1.  Applicability
    a.  Identify source name, location, and emission unit number(s);
    b.  Provide expected dates of monitor compliance demonstration testing.

2.  Source Description
    a.  Provide a simplified block flow diagram with parameter monitoring points and emission sampling points identified (e.g., sampling ports in the stack);
    b.  Provide a discussion of process or equipment operations that are known to significantly affect emissions or monitoring procedures (e.g., batch operations, plant schedules, product changes).

3.  Control Equipment Description
    a.  Provide a simplified block flow diagram with parameter monitoring points and emission sampling points identified (e.g., sampling ports in the stack);
    b.  List monitored operating parameters and normal operating ranges;
    c.  Provide a discussion of operating procedures that are known to significantly affect emissions (e.g., catalytic bed replacement schedules).

4.  Monitoring System Design
    a.  Install, calibrate, operate, and maintain a continuous PEMS;
    b.  Provide a general description of the software and hardware components of the PEMS, including manufacturer, type of computer, name(s) of software product(s), monitoring technique (e.g., method of emission correlation). Manufacturer literature and other similar information shall also be submitted, as appropriate;
    c.  List all elements used in the PEMS to be measured (e.g., pollutant(s), other exhaust constituent(s) such as $O_2$ for correction purposes, process parameter(s), and/or emission control device parameter(s));
    d.  List all measurement or sampling locations (e.g., vent or stack location, process parameter measurement location, fuel sampling location, work stations);
    e.  Provide a simplified block flow diagram of the monitoring system overlaying process or control device diagram (could be included in Source Description and Control Equipment Description);
    f.  Provide a description of sensors and analytical devices (e.g., thermocouple for temperature, pressure diaphragm for flow rate);
    g.  Provide a description of the data acquisition and handling system operation including sample calculations (e.g., parameters to be recorded, frequency of measurement, data averaging time, reporting units, recording process);
    h.  Provide checklists, data sheets, and report format as necessary for compliance determination (e.g., forms for record keeping).

B - 2

**APPENDIX B**
**Predictive Emissions Monitoring Systems Requirements**

5. Support Testing and Data for Protocol Design

    a. Provide a description of field and/or laboratory testing conducted in developing the correlation (e.g., measurement interference check, parameter/emission correlation test plan, instrument range calibrations);

    b. Provide graphs showing the correlation, and supporting data (e.g., correlation test results, predicted versus measured plots, sensitivity plots, computer modeling development data).

6. Initial Verification Test Procedures

    a. Perform an initial relative accuracy test (RA test) to verify the performance of the PEMS for the equipments operating range. The PEMS must meet the relative accuracy requirement of the applicable Performance Specification in 40 C.F.R. Part 60, Appendix B. The test shall utilize the test methods of 40 C.F.R. Part 60, Appendix A;

    b. Identify the most significant independently modifiable parameter affecting the emissions. Within the limits of safe unit operation, and typical of the anticipated range of operation, test the selected parameter for three RA test data sets at the low range, three at the normal operating range and three at the high operating range of that parameter, for a total of nine RA test data sets. Each RA test data set should be between 21 and 60 minutes in duration;

    c. Maintain a log or sampling report for each required stack test listing the emission rate;

    d. Demonstrate the ability of the PEMS to detect excessive sensor failure modes that would adversely affect PEMS emission determination. These failure modes include gross sensor failure or sensor drift;

    e. Demonstrate the ability to detect sensor failures that would cause the PEMS emissions determination to drift significantly from the original PEMS value;

    f. The PEMS may use calculated sensor values based upon the mathematical relationships established with the other sensors used in the PEMS. Establish and demonstrate the number and combination of calculated sensor values which would cause PEMS emission determination to drift significantly from the original PEMS value.

7. Quality Assurance Plan

    a. Provide a list of the input parameters to the PEMS (e.g., transducers, sensors, gas chromatograph, periodic laboratory analysis), and a description of the sensor validation procedure (e.g., manual or automatic check);

    b. Provide a description of routine control checks to be performed during operating periods (e.g., preventive maintenance schedule, daily manual or automatic sensor drift determinations, periodic instrument calibrations);

    c. Provide minimum data availability requirements and procedures for supplying missing data (including specifications for equipment outages for QA/QC checks);

B - 3

**APPENDIX B**
**Predictive Emissions Monitoring Systems Requirements**

d. List corrective action triggers (e.g., response time deterioration limit on pressure sensor, use of statistical process control (SPC) determinations of problems, sensor validation alarms);

e. List trouble-shooting procedures and potential corrective actions;

f. Provide an inventory of replacement and repair supplies for the sensors;

g. Specify, for each input parameter to the PEMS, the drift criteria for excessive error (e.g., the drift limit of each input sensor that would cause the PEMS to exceed relative accuracy requirements);

h. Conduct a quarterly electronic data accuracy assessment test of the PEMS;

i. Conduct semiannual RA tests of the PEMS. Annual RA tests may be conducted if the most recent RA test result is less than or equal to 7.5%. Identify the most significant independently modifiable parameter affecting the emissions. Within the limits of safe unit operation and typical of the anticipated range of operation, test the selected parameter for three RA test data pairs at the low range, three at the normal operating range, and three at the high operating range of that parameter for a total of nine RA test data sets. Each RA test data set should be between 21 and 60 minutes in duration.

8. PEMS Tuning

a. Perform tuning of the PEMS provided that the fundamental mathematical relationships in the PEMS model are not changed.

b. Perform tuning of the PEMS in case of sensor recalibration or sensor replacement provided that the fundamental mathematical relationships in the PEMS model are not changed.

B - 4

# APPENDIX C
## NSPS Subparts J or Ja Compliance Schedule for Listed Fuel Gas Combustion Devices
### (Other than Flaring Devices)[1]

| Unit | | Date of Compliance With Subpart J Fuel Gas Limit |
|---|---|---|
| 2 Vis. | H-2185 | Date of Lodging |
| Coker | H-8501 | Date of Lodging |
| Coker | H-8502 | Date of Lodging |
| LSG Heater | H-4901 | Date of Lodging |
| Sulf Acid* | STK-7801 | Date of Lodging |
| GT-13 / HRSG | G-3413 / H-3413 | Date of Lodging |
| VER-1* | VER-1 | Date of Lodging |
| VER-2* | VER-2 | Date of Lodging |

C - 1

# APPENDIX C
## NSPS Subparts J or Ja Compliance Schedule for Listed Fuel Gas Combustion Devices
## (Other than Flaring Devices)[1]

| Unit | | Date of Compliance With Subpart Ja Fuel Gas Limit |
|------|------|------|
| 1 Vis. | H-101 | 12/31/2015 |
| 1 Vis. | H-104 | 12/31/2015 |
| Utl. Fract. | H-160 | 12/31/2015 |
| Penex | H-200 | 12/31/2015 |
| Penex | H-201 | 12/31/2015 |
| Penex | H-202 | 12/31/2015 |
| Penex | C-200A | 12/31/2015 |
| Penex | C-200B | 12/31/2015 |
| Penex | C-200C | 12/31/2015 |
| 2 CDU | H-401A | 12/31/2015 |
| 2 CDU | H-401B | 12/31/2015 |
| 2 CDU | H-401C | 12/31/2015 |
| 2 Plat. | H-600 | 12/31/2015 |
| 2 Plat. | H-601 | 12/31/2015 |
| 2 Plat. | H-602 | 12/31/2015 |
| 2 Plat. | H-603 | 12/31/2015 |
| 2 Plat. | H-604 | 12/31/2015 |
| 2 Plat. | H-605 | 12/31/2015 |
| 2 Plat. | H-606 | 12/31/2015 |
| 2 DD | H-800A | 12/31/2015 |
| 2 DD | H-800B | 12/31/2015 |
| 2 DD | H-801 | 12/31/2015 |
| 3 CDU | H-1401A | 12/31/2015 |
| 1 Vac. | H-1401B | 12/31/2015 |
| 3 DD | H-1500 | 12/31/2015 |
| 3 DD | H-1501 | 12/31/2015 |
| 3 DD | C-1500A | 12/31/2015 |
| 3 DD | C-1500B | 12/31/2015 |
| 3 DD | C-1500C | 12/31/2015 |
| 2 Vac. | H-2101 | 12/31/2015 |
| 2 Vac. | H-2102 | 12/31/2015 |
| 4 DD | H-2201A | 12/31/2015 |
| 4 DD | H-2201B | 12/31/2015 |
| 4 DD | H-2202 | 12/31/2015 |
| 5 DD | H-2400 | 12/31/2015 |

**APPENDIX C**
**NSPS Subparts J or Ja Compliance Schedule for Listed Fuel Gas Combustion Devices**
**(Other than Flaring Devices)[1]**

| 5 DD | H-2401 | 12/31/2015 |
|---|---|---|
| 5 DD | C-2400A | 12/31/2015 |
| 5 DD | C-2400B | 12/31/2015 |
| Naph Frac | H-2501 | 12/31/2015 |
| 1 SRU | H-1032 | 12/31/2015 |
| 2 SRU | H-1042 | 12/31/2015 |
| 1 Beavon | H-1061 | 12/31/2015 |
| #1 F. Boiler | B-1151 | 12/31/2015 |
| #3 F. Boiler | B-1153 | 12/31/2015 |
| #4 F. Boiler | B-1154 | 12/31/2015 |
| #5 F. Boiler | B-1155 | 12/31/2015 |
| G.T. #1* | G-1101E | 12/31/2015 |
| G.T. #2* | G-1101F | 12/31/2015 |
| G.T. #3* | G-1101G | 12/31/2015 |

C - 3

**APPENDIX C**
**NSPS Subparts J or Ja Compliance Schedule for Listed Fuel Gas Combustion Devices**
**(Other than Flaring Devices)[1]**

| Unit | | Date of Compliance With Subpart J Fuel Gas Limit |
|---|---|---|
| 5 CDU | H-3101A | 12/31/15 |
| 5 CDU | H-3101B | 12/31/15 |
| 6 CDU | H-4101A | 12/31/15 |
| 6 CDU | H-4101B | 12/31/15 |
| 3 Vac. | H-4201 | 12/31/15 |
| 3 Vac. | H-4202 | 12/31/15 |
| 7 DD | H-4301A | 12/31/15 |
| 7 DD | H-4301B | 12/31/15 |
| 7 DD | H-4302 | 12/31/15 |
| 3 Plat. | H-4401 | 12/31/15 |
| 3 Plat. | H-4402 | 12/31/15 |
| 3 Plat. | H-4451 | 12/31/15 |
| 3 Plat. | H-4452 | 12/31/15 |
| 3 Plat. | H-4453 | 12/31/15 |
| 3 Plat. | H-4454 | 12/31/15 |
| 3 Plat. | H-4455 | 12/31/15 |
| 2 Sulf. | H-4502 | 12/31/15 |
| 2 Sulf. | H-4503 | 12/31/15 |
| 2 Sulf. | H-4504 | 12/31/15 |
| 2 Sulf. | H-4505 | 12/31/15 |
| 6 DD | H-4601A | 12/31/15 |
| 6 DD | H-4601B | 12/31/15 |
| 6 DD | H-4602 | 12/31/15 |
| 6 DD | C-4601A | 12/31/15 |
| 6 DD | C-4601B | 12/31/15 |
| 6 DD | C-4601C | 12/31/15 |
| 9 DD | H-5301A | 12/31/15 |
| 9 DD | H-5301B | 12/31/15 |
| 9 DD | H-5302 | 12/31/15 |
| 4 Plat. | H-5401 | 12/31/15 |
| 4 Plat. | H-5402 | 12/31/15 |
| 4 Plat. | H-5451 | 12/31/15 |
| 4 Plat. | H-5452 | 12/31/15 |
| 4 Plat. | H-5453 | 12/31/15 |
| 4 Plat. | H-5454 | 12/31/15 |

**APPENDIX C**
**NSPS Subparts J or Ja Compliance Schedule for Listed Fuel Gas Combustion Devices**
**(Other than Flaring Devices)[1]**

| | | |
|---|---|---|
| 4 Plat. | H-5455 | 12/31/15 |
| 3 & 4 SRU | H-4745 | 12/31/15 |
| 2 Beavon | H-4761 | 12/31/15 |
| #6 F. Boiler | B-3301 | 12/31/15 |
| #7 F. Boiler | B-3302 | 12/31/15 |
| #8 F. Boiler | B-3303 | 12/31/15 |
| #9 F. Boiler | B-3304 | 12/31/15 |
| #10 F. Boiler | B-3307 | 12/31/15 |
| G.T. #4 | G-3404 | 12/31/15 |
| G.T. #5 | G-3405 | 12/31/15 |
| G.T. #6 | G-3406 | 12/31/15 |
| G.T. #7 | G-3407 | 12/31/15 |
| G.T.#8* | G-3408 | 12/31/15 |
| G.T.#9* | G-3409 | 12/31/15 |
| G.T.#10* | G-3410 | 12/31/15 |
| * Compliance based upon AMP submittal for EPA approval | | |

[1] HOVENSA intends to meet the listed compliance schedule by making physical and operational changes (i.e., physical changes to the East and West refinery amine treating systems as well as a swap from monoethanol amine (MEA) to methyldiethanol amine (MDEA)) to the fuel gas treatment system as part of a single phased project.

C - 5

**APPENDIX D**
**List of Flaring Devices Subject to NSPS Subparts J/Ja**

| Flaring Device | Date | Compliance Method |
|---|---|---|
| FCCU Low Pressure Flare | Seven (7) years from Date of Entry | Flare Gas Recovery |
| FCCU High Pressure Flare | Five (5) years from Date of Entry | Combusts only fuel gas exempt from emissions limitation in 60.102a(g) pursuant to 60.102a(h) |
| LPG Flare | Five (5) years from Date of Entry | Combusts only fuel gas that complies with 60.102a(g) |
| Flares 2 and 3 | Seven (7) years from Date of Entry | Flare Gas Recovery |
| Flares 5, 6 and 7 | Ten (10) years from Date of Entry | Flare Gas Recovery |

Flares 1 and 4 are no longer in service and are not covered by this Consent Decree.

D - 1

**APPENDIX E**
**HOVENSA'S LDAR and BWON Training Program Summary**

The HOVENSA LLC training program will utilize a combination of training methods to educate refinery personnel on their roles and responsibilities within the LDAR and BWON programs. The extent of education on the programs (two hours, four hours, eight hours, etc.) will be based on the employee's job assignment within their respective department and the individual's management level.

All Environmental LDAR personnel will be trained on an annual basis on the requirements of their jobs through classroom based, computer-based, field-based, or other training methods. The training will consist of specific material and processes required for the knowledge of the program including certification testing. Listed below are some of the key elements and subjects of the training module that link to roles and responsibilities.

- knowledge of the refinery structure and systems
- refinery basics: process unit functions individually and how they work in partnership
- how to read and understand P&IDs and ISOS
- the applicable regulations
- the proper operation of monitoring equipment
- applicable LDAR procedures
- the systems in place to manage our data and compliance; electronic database such as LeakDAS and like systems
- the checks and balances required to maintain quality control and compliance
- the leadership skills required to manage and maintain a successful program

All other Operations, Maintenance and Contractor personnel will be trained on the requirements of their jobs through classroom based, computer-based, field-based, or other training methods. The training consists of material and processes required for their specific role and responsibility needed to ensure knowledge of the program including certification testing. Listed below are some of the key elements and subjects of the training module.

- knowledge of Environmental Department structure and contact information
- general knowledge of the environmental regulations (LDAR & BWON)
- knowledge of regulatory inspection, documentation and repair requirements
- knowledge of fugitive emissions procedures
- knowledge of the Valve Preventative Maintenance Program
- knowledge of how to utilize the refinery system, such as SAP, to create work notifications and approvals and electronic inspections

The requirements of this training will be incorporated into HOVENSA's job specific training. All training will be reviewed and updated on a reoccurring basis (at least once every three (3) years). The certification testing will be utilized to assess the effectiveness of the training products.

E - 1

**APPENDIX F**
**Method 21 Monitoring Locations for API Separators 1, 2 and 3**

| API #1, 2, & 3 | |
|---|---|
| **Emission Points** | **Total** |
| Access Hatch | 48 |
| Gauge Hatch | 45 |
| Fixed roof plates | 150 |
| Piping Penetration | 52 |
| Steel plate | 31 |
| Pump base | 22 |
| Hose connection | 2 |
| Conduit port | 10 |
| Valve stem port | 16 |
| **Total** | **376** |

F - 1

# APPENDIX G
## Valve Preventative Leak Maintenance Procedure Workflow Diagram

**Perform scheduled monitoring**

- Identify leaks above applicable leak definitions
- Fix leaks per applicable requirements
- Perform external valve survey on each valve that leaked by the end of the next calendar quarter after identification of the leak.

Is the valve in good condition based on external valve survey?

**No →**

Can the valve be isolated?

- Yes → Is the valve in the off-sites area?
  - Yes → Is there an opportunity for back-seating, live-loading or other on-line repack technique?
    - Yes → Repack/replace these valves, and perform stuffing box survey as per checklist in Procedure #4114 on valves to be repacked, during the next TA / tank outage. Valves 2 inches and smaller in diameter must be replaced.
    - No → Repack/replace these valves, and perform stuffing box survey as per checklist in Procedure #4114 on valves to be repacked, during the next TA / tank outage. Valves 2 inches and smaller in diameter must be replaced.
  - No → Repack/replace at least 80% of these valves (as determined by the end of each calendar quarter), and perform stuffing box survey as per checklist in Procedure #4114 on valves to be repacked, before the next TA / tank outage. Valves 2 inches and smaller in diameter must be replaced.

**Yes →** Can the valve be isolated?

- Yes → Is the valve in the off-sites area?
  - Yes → Is there an opportunity for back-seating, live-loading or other on-line repack technique?
    - Yes → Repack/replace at least 80% of these valves as per checklist in Procedure #4114 (as determined by the end of each calendar quarter), and perform stuffing box survey on valves to be repacked, during the next TA / tank outage. Valves 2 inches and smaller in diameter must be replaced.
    - No → Place on list for the next TA / tank outage.
  - No → Place on list for the next TA / tank outage.
- No → Place on list for the next TA / tank outage.

**Enter Valve Data into Maintenance LDAR database**

**Turnaround (TA) / Tank Outage Planned**

- Generate a list for the affected process unit which contains the most recent ppm reading, as determined at the end of the last calendar quarter prior to the final TA / tank scope outage meeting (before the TA), for each valve in the unit
- Sort the valves in descending order by ppm reading in the process unit
- Select either the highest-leaking 10% of valves (those with the greatest ppm readings) from the preceding step, or only those valves from the preceding step having ppm readings above 100 ppm
- Perform external valve survey, prior to TA / tank outage, on all valves from the preceding step, prior to TA / tank outage

Is the valve in good condition based on external valve survey?

- Yes

G - 1



# APPENDIX H
## Additional Coker Project Injunctive Relief

| Emissions Unit | Pollutant | Limit | Units | Averaging Time | Monitoring[a] | Reporting | Compliance Schedule |
|---|---|---|---|---|---|---|---|
| **Coker Heater (two units)** | CO | 0.030 | lb/mmBTU | Average of 3 1-hr samples | Annual Performance Test (EPA RM-10) | Within 60 Days of test | Date of Entry |
| | VOC | 0.0050 | lb/mmBTU | N/A | EPA RM-25 following any CO test exceedance | Within 60 Days of test | |
| **Boiler 10** | CO | 0.070 | lb/mmBTU | Average of 3 1-hr samples | Annual Performance Test (EPA RM-10) | Within 60 Days of test | Date of Entry |
| | VOC | 0.0050 | lb/mmBTU | N/A | EPA RM-25 following any CO test exceedance | Within 60 Days of test | Date of Entry |
| **SRUs 1&2/Beavon 1** | TRS (Interim) | 200 | ppmvd | Hourly rolling 12-hr average | NSPS TRS CEMS (40 C.F.R. 60 App A, B, & F) | NSPS quarterly reports | Date of Entry |
| | | 100 | ppmvd | Daily rolling 30 day average | NSPS TRS CEMS (40 C.F.R. 60 App A, B, & F) | NSPS quarterly reports | Date of Entry |
| | TRS (Final) | 162 | ppmvd | Hourly rolling 12-hr average | NSPS TRS CEMS (40 C.F.R. 60 App A, B, & F) | NSPS quarterly reports | 1/1/2014 |
| | | 66 | ppmvd | Daily rolling 30 day average | NSPS TRS CEMS (40 C.F.R. 60 App A, B, & F) | NSPS quarterly reports | 1/1/2014 |
| **Tanks** No. 6 Sour Water Stripper Sour Water Tank (TK-1071), Desalter Effluent Water (DEW) Tank (TK-1663) | VOC | Ext. Floating Roof Tank | | N/A | Subpart Kb monitoring (40 C.F.R. §60.113b(b)) for Ext. Floating Roof Kb requirements: Seal Gap Measurements (Secondary once/yr, Primary once/5 yrs). Inspect seals and fittings each time the vessel is emptied and degassed. | NSPS reports | Tank 1071: 12/31/2011 Tank 1663: Date of Entry |

H – 1

# APPENDIX H
## Additional Coker Project Injunctive Relief

| Emissions Unit | Pollutant | Limit | Units | Averaging Time | Monitoring[a] | Reporting | Compliance Schedule |
|---|---|---|---|---|---|---|---|
| Pitch Storage (TK-8501) | VOC | Fixed Roof Tank | | N/A | Subpart Kb monitoring (40 C.F.R. §60.110b-117b) Record and maintain records documenting the material stored in the hot pitch storage tank (TK-8501), showing that the tank remains exempt from control requirements in accordance with 40 C.F.R. 60, Subpart Kb, §60.110b(b). | NSPS reports | Date of Entry |
| Process equipment located in Coker Unit, Coker Gas Plant, No. 7 Amine, No. 5 Crude, No. 3 Vacuum, No. 3 Vacuum, No. 1 Vacuum, No. 1 Visbreaker, and No. 2, 4, 6, & 7 Distillate Desulfurizer Units and outside battery limit modifications to the terminal, tank farm & blending equipment | VOC | HON minus Connectors | | | Comply with 40 C.F.R. 63 Subpart H, except as noted below: -Leak testing is not required for connectors; -Use skip periods allowed in 40 C.F.R. Part 60 Subpart GGGa/VVa for leak testing valves and pumps. | | Date of Entry |

[a] For purposes of demonstrating compliance with limits which require an annual performance test, HOVENSA shall conduct the first performance test no later than twelve (12) months after the Date of Entry.

H – 2

APPENDIX H
Additional Coker Project Injunctive Relief

| Emissions Unit | Pollutant | Design/Work Practice Controls | Monitoring | Compliance Schedule |
|---|---|---|---|---|
| **Coke Handling, Storage and Loading Facility** | **PM (all species)** | | Maintain records documenting design | Date of Entry |
| Coke Cutting/Coke Pit | | High Pressure water cutting of coke & enclosed drop zones/coke pit (No roof) | | |
| Coke Crusher | | Enclosed[b] crusher structure, Moisture content control from initial cutting. | | |
| Coke Transfer to Storage | | Enclosed[b] conveyor to storage, Moisture content control from initial cutting. | | |
| Coke Storage | | Enclosed[b] storage buildings, baghouse for vent control, and moisture content control from initial cutting. | | |
| Coke Loading | | Enclosed[b] conveyor to loading dock. "Spout" containment loading to minimize drop emissions when loading ship. | | |

[b] Enclosed structures can have ventilation vents or access ways

H – 3

# APPENDIX I
## Map of HOVENSA L.L.C.



I - 1

# EXHIBIT 2

**Refinery Operating Agreement with LOC and related documents**

**(May be Confidential)**

**Will be made available at Hearing**

# EXHIBIT 3

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2220 of 2637
2220
Case: 1:21-cv-00264-WAL-GWC   Document #: 2   Filed: 07/12/21   Page 1 of 8

## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

|  |  |
|---|---|
| UNITED STATES OF AMERICA )  | |
| ) | |
| Plaintiff, ) | |
| ) | Civ. A. No.  1:21-cv-00264 |
| v. ) | |
| ) | |
| LIMETREE BAY REFINING, LLC ) | |
| ) | |
| and ) | |
| ) | |
| LIMETREE BAY TERMINALS, LLC ) | |
| ) | |
| Defendants. ) | |
| ) | |

### JOINT STIPULATION

WHEREAS, the United States of America, by the authority of the Attorney General of the United States, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA") filed a civil action against defendants Limetree Bay Refining, LLC and Limetree Bay Terminals, LLC (collectively, "Limetree Bay") under Section 303 of the Clean Air Act ("CAA"), 42 U.S.C. § 7603.

WHEREAS, the complaint seeks injunctive relief under Section 303 of the CAA requiring Limetree Bay to comply with a CAA Emergency Order ("EPA Order," Exhibit 1 hereto) that EPA issued on May 14, 2021, and other relief.

WHEREAS, on June 16, 2021, EPA issued an information request to Limetree Bay under Section 114(a) of the CAA, 42 U.S.C. § 7414(a) ("114 Request," Exhibit 2 hereto) requiring Limetree Bay to install and operate ambient air monitoring equipment for hydrogen sulfide ($H_2S$) and sulfur dioxide ($SO_2$) at nine specified locations.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2221 of 2637
2221
Case: 1:21-cv-00264-WAL-GWC   Document #: 2   Filed: 07/12/21   Page 2 of 8

WHEREAS, Limetree Bay began to idle the Refinery on May 12, 2021, and represents that it does not intend to restart the Refinery or any Refinery Process Unit at the current time, except as necessary to purge hydrocarbons from process units and other equipment as part of the process of bringing the Refinery to a state of indefinite shutdown.

WHEREAS, Limetree Bay continues to operate the Terminal and intends to conduct the activities identified in Paragraph 13.

WHEREFORE, the Parties hereby stipulate and agree as follows:

1.      Limetree Bay certifies that the Refinery[1] has been idled.

2.      Except as provided pursuant to Paragraphs 9, 10 and 13 below, Limetree Bay shall notify the United States and the Court not less than ninety (90) days before restarting the Refinery, or any Refinery Process Unit for any purpose.

3.      The Audit Reports required by Paragraph 115.d of the EPA Order were submitted to EPA by June 25, 2021, in compliance with the deadline set forth in Paragraph 115.d of the EPA Order.

4.      Except as provided pursuant to Paragraphs 9, 10 and 13 below, by no later than ninety (90) days prior to any restart of the Refinery or any refinery Process Unit, Limetree Bay shall submit to EPA the Plan required by Paragraph 115.*l* of the EPA Order (the "303 Order Plan") that addresses all findings, conclusions, and observations set forth in each Audit Report, with a schedule for implementation of all corrective measures.  The 303 Order Plan shall specify which measures must be completed prior to restart of the Refinery or any refinery Process Unit.

---

[1]Terms used in this Stipulation that are defined in the Clean Air Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in the Complaint, EPA Order, Consent Decree or First Modification of the Consent Decree.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2222 of 2637
2222
Case: 1:21-cv-00264-WAL-GWC   Document #: 2   Filed: 07/12/21   Page 3 of 8

5.      As part of the 303 Order Plan submitted under Paragraph 4, Limetree Bay shall identify

any changed conditions at the Refinery that occurred since May 12, 2021, including but not

limited to any corrective measures taken.

6.      Before Limetree Bay restarts the Refinery or any Refinery Process Unit, it shall complete

all measures necessary to eliminate any imminent and substantial endangerment to public health

or welfare or the environment posed by the Refinery or Refinery Process Unit.

7.      Except as provided pursuant to Paragraphs 9, 10 and 13, no later than ninety (90) days

prior to restart of the Refinery or any Refinery Process Unit, Limetree Bay shall submit to EPA

an ambient air monitoring plan ("Monitoring Plan") that includes the operation of $H_2S$ and $SO_2$

monitors at the nine (9) monitoring sites specified in Table A of the 114 Request ("Monitoring

Sites"), as required by the 114 Request.

8.      Except as provided pursuant to Paragraphs 9, 10 and 13, Limetree Bay shall install and

operate the $H_2S$ and $SO_2$ monitors at the Monitoring Sites, as well as a meteorological tower, as

required by the 114 Request, no later than thirty (30) days prior to any restart of the Refinery or

any refinery Process Unit.

9.      Limetree Bay shall submit to EPA a plan ("Hydrocarbon Purge Plan") for purging

hydrocarbons from Refinery Process Units and other equipment at the Refinery as part of the

process of bringing the Refinery to a state of indefinite shutdown. The Hydrocarbon Purge Plan

shall identify the activity or activities that Limetree Bay intends to undertake under the

Hydrocarbon Purge Plan, as well as the measures Limetree Bay has taken or will take prior to

restarting, or during the operation of, any Refinery Process Unit covered by the Hydrocarbon

Purge Plan, to ensure that the purging process and any associated activities do not present an

imminent and substantial endangerment to public health or welfare or the environment, including

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2223 of 2637
2223
Case: 1:21-cv-00264-WAL-GWC   Document #: 2   Filed: 07/12/21   Page 4 of 8

but not limited to measures in response to recommendations contained in the Audit Reports.  The
Hydrocarbon Purge Plan shall include, among other things: the operation of ambient air
monitoring during all purging operations and compliance with applicable requirements of 40
C.F.R. Part 60, Subpart Ja and 40 C.F.R. Part 63, Subpart CC.

10.     The purging process and any associated activities shall be conducted in accordance with
the EPA-approved Hydrocarbon Purge Plan, subject to any modifications necessary based on
monitoring data or other information received by EPA suggesting that operations under the
Hydrocarbon Purge Plan may present an imminent and substantial endangerment to public health
or welfare, or the environment.  Before EPA makes or requires any modifications to an approved
Hydrocarbon Purge Plan, the Parties shall meet and confer.  Any proposed modification by
Limetree Bay to the EPA-approved Hydrocarbon Purge Plan shall be subject to Paragraph 12,
below.  Limetree Bay shall not begin the purging process or any associated activities without
EPA's approval, nor shall Limetree Bay use any Refinery Process Unit other than as specified in
the EPA-approved Hydrocarbon Purge Plan.

11.     Limetree Bay may submit and EPA may approve one or more Hydrocarbon Purge Plans
subject to Paragraphs 9 and 10.

12.     Any plan required by this stipulation shall be submitted to EPA for its review, comment,
and approval or approval with modifications, and shall be sent by email to the EPA and VIDPNR
representatives listed in Paragraph 116 of the EPA Order.

13.     For the avoidance of doubt, nothing in the 303 Order or this Stipulation prevents
Limetree Bay from operating equipment necessary for Terminal operations, or necessary to
generate electricity or provide drinking water or wastewater management for the Facility, the
HOVENSA Environmental Response Trust, and for the worker residences dependent on the

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2224 of 2637
2224
Case: 1:21-cv-00264-WAL-GWC   Document #: 2   Filed: 07/12/21   Page 5 of 8

Facility for such services.

14.     The Parties agree that further proceedings in this case should be stayed for a period of ninety (90) days from the date of filing this Joint Stipulation, and Limetree Bay does not oppose the United States' Unopposed Motion for Stay filed simultaneously with this Stipulation; and the Parties shall submit a joint status report sixty days after the date this Stipulation is filed.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2225 of 2637
Case: 1:21-cv-00264-WAL-GWC   Document #: 2   Filed: 07/12/21   Page 6 of 8
2225

THE UNDERSIGNED PARTY enters into this Stipulation in the matter of United States v. Limetree Bay Refining LLC and Limetree Bay Terminals LLC.

FOR PLAINTIFF THE UNITED STATES
OF AMERICA:

JEAN WILLIAMS
Acting Assistant Attorney General
Environment and Natural Resources
Division
United States Department of Justice

Date: _July 12, 2021_

_Myles S. Flint, II_

MYLES E. FLINT, II, Senior Counsel
ERIC D. ALBERT, Senior Attorney
SHEILA McANANEY, Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources
Division
United States Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611
(202) 307-1859

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2226 of 2637
2226
Case: 1:21-cv-00264-WAL-GWC   Document #: 2   Filed: 07/12/21   Page 7 of 8

THE UNDERSIGNED PARTY enters into this Stipulation in the matter of United States v. Limetree Bay Refining LLC and Limetree Bay Terminals LLC.

FOR DEFENDANT LIMETREE BAY
TERMINALS, LLC:

Date: 07/12/2021

MARK CHAVEZ
General Counsel
Limetree Bay Terminals, LLC
One Estate Hope
Christiansted, USVI 00820

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2227 of 2637
2227
Case: 1:21-cv-00264-WAL-GWC   Document #: 2   Filed: 07/12/21   Page 8 of 8

THE UNDERSIGNED PARTY enters into this Stipulation in the matter of United States v. Limetree Bay Refining LLC and Limetree Bay Terminals LLC.

FOR DEFENDANT LIMETREE BAY REFINING, LLC:

Date:   _____07/12/2021_____   _____

MARK DELAQUIL
MATTHEW THURLOW
Baker & Hostetler LLP
Washington Square, Suite 1100
1050 Connecticut Avenue NW
Washington, D.C.  20036
(202) 861-1500

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2228 of 2637
2228
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 1 of 45

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**REGION 2**

|  |  |
|---|---|
| In the matter of ) | |
| ) | |
| **Limetree Bay Terminals, LLC** ) | |
| ) | **CLEAN AIR ACT** |
| 1 Estate Hope ) | **EMERGENCY ORDER** |
| Christiansted, Virgin Islands 00820 ) | **CAA-02-2021-1003** |
| ) | |
| And ) | |
| ) | |
| **Limetree Bay Refining, LLC** ) | |
| ) | |
| 1 Estate Hope ) | |
| Christiansted, Virgin Islands 00820 ) | |
| ) | |
| Respondents. ) | |
| ) | |
| Proceeding under Section 303 of ) | |
| the Clean Air Act, 42 U.S.C. § 7603 ) | |

## STATEMENT OF AUTHORITY

This emergency order ("Order") is issued to Limetree Bay Terminals, LLC ("LBT") and

Limetree Bay Refining, LLC ("LBR") (collectively, "Limetree" or "Respondents") pursuant to

the authority granted to the Administrator of the United States Environmental Protection Agency

("EPA") by Section 303 of the Clean Air Act ("CAA'" or "the Act"), 42 U.S.C. § 7603, to

protect public health or welfare, or the environment.  The authority to issue this Order has been

delegated by the Administrator of EPA to the Regional Administrator for EPA Region 2, and

redelegated to the Director of the Caribbean Environmental Protection Division, by Delegation

No. 7-49.  This Order is issued by the Director of the Caribbean Environmental Protection

Division, of EPA Region 2.

Section 303 of the Act provides that:

[T]he Administrator, upon receipt of evidence that a pollution source or

1

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2229 of 2637
2229
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 2 of 45

combination of sources (including moving sources) is presenting an imminent and substantial endangerment to public health or welfare, or the environment, may bring suit on behalf of the United States in the appropriate United States district court to immediately restrain any person causing or contributing to the alleged pollution to stop the emission of air pollutants causing or contributing to such pollution or to take such other action as may be necessary.  If it is not practicable to assure prompt protection of public health or welfare or the environment by commencement of such a civil action, the Administrator may issue such orders as may be necessary to protect public health or welfare or the environment.  Prior to taking any action under this section, the Administrator shall consult with appropriate State and local authorities and attempt to confirm the accuracy of the information on which the action proposed to be taken is based.  Any order issued by the Administrator under this section shall be effective upon issuance and shall remain in effect for a period of not more than 60 days, unless the Administrator brings an action pursuant to the first sentence of this section before the expiration of that period.  Whenever the Administrator brings such an action within the 60-day period, such order shall remain in effect for an additional 14 days or for such longer period as may be authorized by the court in which such action is brought.

## PARTIES BOUND

1.      This Order applies to and is binding upon the Respondents, their officers, directors, employees, agents, trustees, receivers, successors, assigns, and all other persons, including but not limited to firms, corporations, limited liability companies, subsidiaries, contractors, consultants, and lessees acting under or on behalf of Respondents in connection with the implementation of this Order.

2.      Respondents shall be responsible and liable for conducting the activities specified pursuant to this Order, regardless of who performs the activities.  Respondents shall be liable for the conduct of employees, agents, contractors, consultants, or lessees to satisfy the requirements of this Order.

3.      No change in the ownership of the facility affected by this Order or the ownership or corporate status of Respondents shall in any way alter, diminish, or otherwise affect the responsibilities of Respondents under this Order.  Respondents shall provide a copy of this Order to any successor(s) during the pendency of this Order.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2230 of 2637
2230
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 3 of 45

## FINDINGS OF FACT

The Director of the Caribbean Environmental Protection Division in EPA Region 2 makes the following Findings of Fact:

4.      Prior to issuing this Order, EPA consulted with representatives of the Virgin Islands Department of Planning and Natural Resources ("DPNR") as required by Section 303 of the Act.

5.      This Order concerns a facility located at 1 Estate Hope in Christiansted, Virgin Islands ("Facility").  The Facility includes a marine loading terminal (including storage capacity) and an integrated petroleum refinery ("Refinery" or "Refinery Operations").  The Facility is located on approximately 1,500 acres on the south central coast of St. Croix, U.S. Virgin Islands ("USVI").

6.      Limetree Bay Terminals, LLC is a corporation that owns and/or operates some or all of the Facility.  LBT is registered to do business in the U.S. Virgin Islands.

7.      The Facility operates under a number of air permits, such as Prevention of Significant Deterioration ("PSD") and CAA Title V operating permits.  LBT is named as the owner and/or operator of the Facility and responsible for Facility Clean Air Act compliance obligations, including for its Refinery Operations, in multiple air permits.

8.      The Facility's Title V operating permit is permit number STX-TV-003-10 (the "Title V Permit"), and it is currently issued to "Limetree Bay Terminals LLC."  The Title V Permit covers the Facility's Refinery Operations, among others.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2231 of 2637
2231
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 4 of 45

9. The Facility also operates under three PSD permits (the "PSD Permits") that were amended on November 5, 2018 to reflect the transfer of ownership of the Facility from HOVENSA, LLC to "Limetree Bay Terminals, LLC." Some or all of these PSD permits encompass Refinery Operations.

10. Limetree Bay Refining, LLC is a corporation that owns and/or operates some or all of the Facility, including its Refinery Operations. LBR is registered to do business in the U.S. Virgin Islands.

11. On its website, Limetree describes LBR as "executing a project to refurbish and restart its St. Croix, USVI, deep conversion [petroleum] refinery" with peak processing capacity of 650,000 barrels of petroleum feedstock per day.

12. On July 30, 2018, the Legislature of the Virgin Islands approved an agreement with LBR titled "Refinery Operating Agreement by and among the Government of the Virgin Islands and Limetree Bay Refining, LLC," dated July 2, 2018.

13. According to the Limetree Title V Permit, the Facility was originally owned and/or operated by Hess Oil Virgin Islands Corporation ("HOVIC"). Facility operations began in 1965. On October 30, 1998, Amerada Hess Corporation, the parent company of HOVIC, and Petroleos de Venezuela, S.A. ("PDVSA") formed a new corporation, HOVENSA L.L.C. ("HOVENSA"), which acquired ownership and operational control of the St. Croix Refinery formerly known as HOVIC. Limetree and/or its corporate parent or associated business entities acquired the Facility in 2016.

14. Petroleum refineries separate crude oil into a wide array of petroleum products through a series of physical and chemical separation techniques. These techniques include fractionation, cracking, hydrotreating, combination/blending processes, and manufacturing and transport.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2232 of 2637
2232
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 5 of 45

15.     Limetree has described the Facility's refining operations as being conducted in the East Refinery, which includes crude units, a vacuum unit, a delayed coker unit ("DCU"), platformers, hydrotreaters, fluid catalytic cracking ("FCC"), an alkylation complex, an ultra-low sulfur gasoline unit, and a sulfolane complex.  The East Refinery was developed in the 1970s, with the FCC added in 1993 and the DCU built in 2002.  LBR Refinery Operations also include two flares (Flare #3 and Flare #8), two sulfur recovery units, one incinerator and a power generation complex.

16.     According to Limetree, LBR started conducting activities to restart the operation of the Refinery in 2018.  Among the units that Limetree has since restarted were the following: crude units #5 and #6 (limited capacity), vacuum unit #3, par-isom unit, platformer unit, sulfur recovery units, east incinerator, DCU, hydro-treating units (6, 7, and 9), reverse osmosis water plant, and gas turbines (GT-8, GT-9, GT-10, GT-11, and GT-13).

17.     The Facility is located on the island of St. Croix.  St. Croix is an island in the Caribbean Sea that is approximately 22 miles long (east to west) and 7 miles wide (north to south).  As of the 2010 United States Census, the population of St. Croix was 50,601.  The island of St. Croix is divided into nine subdistricts (population): East End (2,453), Anna's Hope Village (4,041), Christiansted (2,626), Sion Farm (13,003), Southcentral (8,049), Northcentral (4,977), Northwest (4,863), Southwest (7,498) and Frederiksted (3,091).  The Facility is located on the southern shore of St. Croix, near the middle of the island east to west, within the Southcentral subdistrict.

18.     According to EPA review of the National Weather Service data for February through May 2021 for St. Croix's Henry E. Rohlsen Airport meteorological station, the prevailing wind blows from the east and east-southeast to the west and west-

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2233 of 2637
2233
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 6 of 45

northwest.  Wind direction prevalence indicates that communities located within Southcentral, Southwest, Frederiksted, Northwest, and portions of Northcentral are located downwind of the Facility.  Among such communities are the following: Clifton Hill, Profit Hills, Kingshill, University of Virgin Islands Campus, Hannah's Rest, Frederiksted, Estate Northside, Smithfield, Upper Bethlehem, Mars Hill, Estate Carlton, Golden Grove, Grove Place, Negro Bay, Williams Delight, Whim, Sandy Point, La Grange, and Prosperity.  Many residents live and work in these communities.

**The Limetree Refinery**

19.     Refineries in general emit a whole host of pollutants, ranging from nitrous oxides ("$NO_X$"), sulfur dioxide ("$SO_2$"), and carbon monoxide ("CO") to volatile organic compounds ("VOC"), hydrogen sulfide ("$H_2S$"), and particulate matter "(PM").  $NO_x$, $SO_2$, and CO are typically emitted from combustion sources such as heaters, boilers and gas turbines.  The VOCs contain light hydrocarbons.  During start up, any VOCs are usually conveyed to a flare to be combusted.

20.     The Refinery Operations separate crude oil into various components. Light ends (refinery fuel gas ("RFG")) are sent to the Facility's fuel gas system ("East Fuel Gas System"), while naphtha, jet fuel, kerosene, and No. 2 oil are further processed to remove sulfur.  The $H_2S$ gas generated from the desulfurization process is sent to the sulfur recovery plant to be treated by two sulfur recovery units.

21.     RFG is a mixture of $H_2S$ and other gases that is used to supply fuel to the various process heaters at the Refinery.  This RFG collection and distribution system is referred to as the East Fuel Gas System.  $H_2S$ is removed from the Refinery fuel gas system using amine scrubbers.  The gas that enters amine unit is high in $H_2S$, and is then processed in a sulfur recovery unit to convert $H_2S$ into elemental sulfur.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2234 of 2637
2234
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 7 of 45

22.     LBR uses a flare known as Flare #8 to combust excess Refinery gas that contains a mix of $H_2S$, $CO_2$, and other gases such as hydrocarbons.

23.     Emissions from flaring may include carbon particles (soot), unburned hydrocarbons, CO, partially burned and altered hydrocarbons, NOx and, if sulfur containing material such as hydrogen sulfide is flared, $SO_2$.

24.     Sulfur compounds going to a flare are converted to $SO_2$ when burned, though flare efficiency is not 100%.  The amount of $SO_2$ emitted depends directly on the quantity of sulfur in the flared gases.

25.     The Refinery has a flare header system that collects and routes gases from process units, ancillary equipment, and the fuel gas system from locations throughout the Refinery to Flare #8. The Flare #8 header system collects gases from numerous areas of the Refinery, including but not limited to the amine units (Nos. 4, 5, 6 and 7), the sulfur recovery units (Nos. 3 and 4), the Coker Unit, and the East Fuel Gas System.[1]

26.     Flare #8 is a steam assisted flare 230 feet above grade.  Gas enters the flare for burning up through 41 staged burner tips.

27.     Flare #8 is subject to an $H_2S$ concentration limit specified in 40 C.F.R. § 60.103a(h) (162 parts per million ("ppm")) determined hourly on a 3-hr rolling average basis), as well as total sulfur ("TS") root-cause analysis requirements and monitoring requirements specified in 40 C.F.R. § 60.103a(c), and operating limits specified in 40 C.F.R. § 63.670.

---

[1] The full list of areas that send gas to Flare #8 includes crude unit No. 5; liquified propane gas ("LPG") treater No. 1; utility area No. 3 (Boilers 6, 7, 8, and 9); powerhouse No. 2 (Gas Turbines); utility area No. 3 (Boiler 10); crude unit No. 6; lean oil absorber/disulfide oil recovery; LPG treater No. 2; amine units (No. 4, 5, 6 and 7); high pressure fuel gas treater; gas recovery unit No. 2; LPG fractionation unit No. 3; deisopentanizer/IC5 Sweetener; vacuum unit No. 3; distillate desulfurizers (No. 6, 7 and 9); platformer & hydrobon No. 3; platformer No. 4; dimersol; flare system (East); benzene stripper (East); sour water strippers (No. 3 and 4); sulfur recovery units (No. 3 and 4); tail gas treating unit; sour water stripper No. 5; flares – low and high pressures; coker unit; coker nitrogen system; west interconnects; East Fuel Gas System; hydrogen tie-ins (east); and butane and propane system.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2235 of 2637
2235
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 8 of 45

28.     Flare #8 has a maximum vent gas flow rate of 1,500,000 lb/hr, and is not equipped with a Flare Gas Recovery System ("FGRS").

29.     The Flare #8 header is equipped with monitoring instruments to measure volumetric flow, hydrogen sulfide content, total sulfur content, and vent gas composition, to demonstrate compliance with CAA requirements at 40 C.F.R. Part 60, Subpart Ja and 40 C.F.R. Part 63, Subpart CC.  The monitoring instrumentation also measures certain other Flare #8 vent gas constituents.

30.     The Facility's Title V permit, citing 40 C.F.R. § 60.104(a)(1), bars combustion in various locations at the Facility of fuel gas that contains hydrogen sulfide in excess of 0.1 gr/dscf.  Two of these locations include Flare #8 and the East Fuel Gas System.

**Refinery Restart**

31.     On February 1, 2021, EIG Global Energy Partners ("EIG"), a controlling investor in Limetree Bay Ventures, LLC[2], announced that the Refinery had successfully resumed operations and begun production and commercial sales of refined products.

32.     According to a recent statement from LBT and LBR, "Limetree Bay Refining, LLC, restarted [Refinery] operations in February 2021, and is capable of processing around 200,000 barrels per day.  Key restart work at the site began in 2018, including the 62,000 barrels per day modern, delayed Coker unit, extensive desulfurization capacity, and a reformer unit to produce clean, low-sulfur transportation fuels that will meet International Marine Organization ("IMO") standards required under

---

[2] Limetree's website describes Limetree Bay Ventures, LLC, as "a large-scale energy complex strategically located in St. Croix, U.S. Virgin Islands. The complex consists of Limetree Bay Refining, a refinery with peak processing capacity of 650 thousand barrels of petroleum feedstock per day, and Limetree Bay Terminal, a 34-million-barrel crude and petroleum products storage and marine terminal facility serving the refinery and third-party customers."

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2236 of 2637
2236
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 9 of 45

international law in 2020.  The restart project provided much needed economic

development in the U.S.V.I. and created more than 4,000 construction jobs at its peak and

more than 600 full-time jobs currently."

33.     Since February 1, 2021, at least four incidents have occurred at the

Facility that have each had an immediate and significant health impact on multiple

downwind communities.

**February 4, 2021 Incident**

34.     On February 4, a mixture of oil and water, in the form of an oily mist, was

emitted as air emissions from Flare #8 at the Facility (the "Feb. 4 Incident").  These

emissions included liquid droplets of oil.

35.     In a letter sent from Limetree to DPNR on March 3, 2021, Limetree

explained the cause of the Feb. 4 Incident as follows ("Limetree 3/3/21 Letter"):

> "On February 4, 2021, the Coker unit was shut down for repairs.  Operations was
> preparing to quench and open coke drum D-8504 as part of the normal shut down
> process.  At approximately 02:30hrs, the Coker Drum D-8504 was being prepared
> to start the procedure for water quenching.  The quench water control valve was
> 100% open, resulting in a large quantity of water entering the drum.  The water
> evaporated quickly after contacting the hot coke. . . . [T]he pressure safety valves
> opened to relieve pressure . . . A mixture of oil and water vapor was sent to the
> containment system, exceeding its capacity and ultimately exiting through the
> No.8 flare."

36.     The Limetree 3/3/21 letter further explains the immediate impact of the

Feb. 4 Incident on the surrounding community, stating:

> "Around 14:30 hrs, calls were received by the Limetree Command Center from
> residents in the Clifton Hill area complaining of oil droplets on their vehicles and
> homes.  Thereafter, Limetree immediately activated its Incident Command
> Response to address the impact on the community. . . . Complainants were
> contacted and told to disconnect their cisterns from the roof spouts if possible.  A
> total of 11 complaints were received on February 4, 2021.  On February 5, 2021,
> Limetree teams were dispatched to follow-up with residents in person and
> confirmed the presence of oil droplets on cars and homes.  Plans were put in place
> to clean residents' cars and roofs.  Additional complaints were made in following

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2237 of 2637
2237
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 10 of 45

days."

37.     Limetree was aware of the impact this event had on the surrounding

community, and paid for various cleaning and decontamination work and provided

bottled water to the community.  In a March 3, 2021 press release, Limetree stated,

"Limetree's environmental team was able to field verify the area impacted by the release,

which was determined to be the Clifton Hill community."

38.     As of March 16, 2021, Limetree had reported to EPA that the Feb. 4

Incident resulted in 193 residences with potential contamination and 148 roofs and 245

cars that required cleaning.  Samples were taken from 163 cisterns, and at the time the

results of 135 of those samples had been received.  70 of those 135 cisterns were

identified as contaminated.  At the time, 65 had been reportedly cleaned.

39.     Many in the community nearby the Facility rely on cisterns for their

household water use.  A March 21, 2021 news article explained that, "Ever since the

refinery contaminated St. Croix's groundwater [under HOVENSA's prior operation],

cisterns have become a necessity on the island—catching rain to provide water for

residents to drink, wash with or . . . irrigate their vegetable gardens."

40.     Residents also reported that the Feb. 4 Incident resulted in the oily mixture

depositing on their vegetable gardens.  One resident said that she and her husband ate

only from their garden, but that the Feb. 4, 2021 Incident "destroyed all our foods" and

"[e]verything was dead."

41.     In an April 29, 2021 meeting with EPA officials, another resident living in

the impacted Clifton Hill area explained that he collected water from his roof in a cistern,

for filtration for drinking water and for his sheep.  The Feb. 4 Incident resulted in oil on

his roof and in his cistern.  Limetree cleaned his cistern 2-3 weeks after the Feb. 4

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2238 of 2637
2238
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 11 of 45

Incident, but did not conduct follow-up sampling.  Limetree provided bottled water, but

he is concerned about the incident's impact on his plants and the produce he grows in his

garden.

42.      During an April 30, 2021, site visit to the Facility by staff from EPA and

DPNR, Limetree representatives said that Limetree believes that the release was a mist

with heavy oil in it, and acknowledged that the mist reached areas in Clifton Hill.  When

asked, Limetree representative said that the droplets passed through a lit flare flame,

though they did not believe that flaming droplets of oil had been recorded.

43.      Emissions of oil droplets from a flare is called "flare rainout."  Flare

rainout can create both environmental and physical safety hazards.  Oil contamination of

soil and water bodies creates environmental and public health hazards.  While there is no

evidence that "flaming rain" occurred during the Feb. 4 Incident, flare rainout can also

result in physical and safety hazards such as "flaming rain" where the oil droplets ignite

as they pass through the flare flame and rain down while on fire in the refinery and

nearby neighborhoods, creating sources of ignition for vapors in the refinery and igniting

combustible materials and starting fires inside the refinery and in adjacent

neighborhoods.  Because of these concerns, flare systems are designed with process

vessels called "knockout drums."  Knockout drums are vessels whose function is to

remove or "knockout" large liquid droplets from the gas sent to the flare.

44.      Knockout drums are sized for expected maximum load of liquid droplets.

When that capacity is exceeded, the liquid droplets pass through the knockout drum and

can cause flare rainout and flaming rain.  The rainout during the February 4, 2021

Incident may indicate the Flare #8 knockout drum(s) were not designed with sufficient

capacity to prevent liquid carryover to the flare.  This type of event is not common for a refinery startup.

**Refinery Operating Pause**

45.     In early April, the Refinery stopped operations for a period of time due to undisclosed operational issues.  LBR stated in a letter to EPA that the "refinery is shut down while we make operational adjustments."

**Late April 2021 Incident**

46.     After Refinery operations restarted, on April 19, 20, 21, 22, and 23, 2021, Limetree reported to DPNR exceedances of the 162 ppm emission standard for $H_2S$ concentrations measured at the flare header for Flare #8 at the Facility.

47.     According to the Agency for Toxic Substances and Disease Registry ("ATSDR") $H_2S$ is a flammable, colorless gas that smells like rotten eggs.  People can usually smell $H_2S$ at low concentrations in air when $H_2S$ concentrations are in the range of from 0.0005 to 0.3 ppm.  Exposure to low concentrations of $H_2S$ may cause irritation to the eyes, nose, or throat.  It may also cause difficulty in breathing for some asthmatics.  Respiratory distress or arrest has been observed in people exposed to very high concentrations of $H_2S$.

48.     According to ATSDR, $SO_2$ is a colorless gas with a pungent odor (often described as the smell of a struck match).  Exposure to very high levels of $SO_2$ can be life threatening.  Exposure to 100 ppm of $SO_2$ is considered immediately dangerous to life and health.  Burning of the nose and throat, breathing difficulties, and severe airway obstructions may occur.

49.     Between April 19 and April 22, 2021, hydrogen sulfide concentrations measured at the Flare #8 flare header rose to orders of magnitude above the limit of 162

12

ppm based on a 3-hr rolling average.  High hydrogen sulfide readings on each of those

four days, measured between 5 AM on April 19 and 5 PM on April 22, rose as high as

31,546.5, 39,475.7, 2,272.4, and 4,046.5 ppm, respectively (on a 3-hr rolling average

basis).

50.     Limetree has explained the exceedances on April 19-22, 2021 as follows:

"On April 19th, the Coker unit was starting up and off gases generated were
vented to the flare until the wet gas compressor was successfully brought online.
The wet gas compressor was brought online around 1:34 AM on April 20th and
the $H_2S$ in the flare decreased as startup progressed.  Since the $H_2S$ level did not
decrease below the emission limit once startup of the wet gas compressor was
complete, Operations immediately began their search for another source of the
$H_2S$ by methodically isolating each unit's battery flare valves.  On April 21st,
Operations discovered a malfunctioning pressure safety valve (PSV) on the low-
pressure flash drum (D-4603) at the No. 6 Distillate Desulfurizer Unit (DD6).
The PSV was taken out of service for maintenance."

51.     Limetree continued to measure high levels of hydrogen sulfide in excess

of the 162 ppm limit at the flare header for Flare #8 at the Facility during the evening of

April 22 and into April 23, 2021.  Hydrogen sulfide readings rose throughout the evening

on April 22, and peaked at a three-hour average of 91,649.0 ppm around 11 AM on April

23 – over 565 times higher than the concentration limit of 162 ppm.

52.     Limetree has explained the exceedances on these days as follows:

"At approximately 4:45 AM on April 23, 2021, the No. 4 Sulfur Recovery
Unit (4SRU) tripped due to both "fire-eye" flame scanners not detecting a
flame.  At about 5:29 AM, the 4SRU was re-lit and at 7:07 AM the Clean
Acid Gas (CAG) control valve at 4SRU started to slowly open but not quick
enough to alleviate the pressure in the CAG header.  Due to the backpressure
in the CAG header, a pressure safety valve (PSV) at the No. 5 Amine
Regeneration Unit (5ARU) relieved to the No. 8 Flare.  The $SO_2$ generated
from the combustion of the $H_2S$ in the flare header caused odors which
impacted our neighbors.  Further investigation showed that there was another
malfunctioning PSV at the No. 6 Distillate Desulfurizer Unit (DD6),
contributing to the elevated $H_2S$ before the 4SRU trip event.  The PSV was
taken out of service for maintenance."

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2241 of 2637
2241
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 14 of 45

$H_2S$ production units were shut down or placed on circulation to reduce the load on the amine regeneration system and the sulfur recovery plant. Limetree shut down 5ARU because the PSV continued to leak to the flare even below the PSV setpoint. Limetree stated that one of its corrective actions included responding to odor complaints.

53.     Two days later, on April 25, Limetree once again exceeded the 162 ppm limit for $H_2S$ at Flare #8 from 3 to 11 p.m. That day, Limetree also exceeded that limit at the East Fuel Gas System from 1-10 PM. The maximum 3-hour average concentrations for $H_2S$ that day were 842.4 ppm at Flare #8 and 629 ppm at the East Fuel Gas System.

54.     Limetree has explained these exceedances as follows:

"On April 25, 2021 the No. 3 and No. 4 Sulfur Recovery Units got contaminated with hydrocarbon carryover via the acid gas. Operations blocked in the acid gas header to the sulfur recovery units (SRUs) which overloaded the No. 4 Amine Regeneration unit (4ARU) preventing it from properly removing the $H_2S$ in the fuel gas. The No. 5 Amine Regeneration unit was not operational at the time. Soon after, the 4ARU reboilers overpressured and relieved to the flare."

55.     As a result of the "noxious" odor created by the Refinery's emissions, on April 23, 2021, the Virgin Islands Department of Education ("VIDOE") closed in-person instruction at three schools. In its press announcement, it stated that "[s]tudents and staff have reported feelings of nausea due to the smell, which was detected on April 22[, 2021]."

56.     A Reuters news article also reported the April 23, 2021, closing of a St. Croix community coronavirus vaccination center due to the odor.

57.     On April 23, 2021, DPNR issued a press release advising the community of "a foul, gaseous smell permeating throughout the Frederiksted area for the past few days." DPNR notes that it has been receiving citizen complaints, and that it "has discovered that the Limetree Bay Refinery is experiencing an exceedance of Hydrogen

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2242 of 2637
2242
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 15 of 45

sulfide."  DPNR advised that people with respiratory ailments such as allergies, lung

disease, and asthma should consider taking protective actions, including staying indoors

or relocating to less affected areas of the island.

58.     On April 24, 2021, the Virgin Island Department of Health ("VIDOH")

issued a press release alerting St. Croix residents to potential health effects from the

Facility's Refinery emissions.  It noted Limetree's confirmation of elevated hydrogen

sulfide concentrations from Flare #8 and said that a "foul, gaseous smell, which can smell

similar to rotten eggs, has permeated throughout the Frederiksted area for the past few

days."  It explained the potential health effects of breathing hydrogen sulfide, and

encouraged residents to report symptoms such as headaches, nausea, and symptoms of a

respiratory nature to their healthcare providers.

59.     On April 24, 2021, Limetree issued a press release denying any release of

hydrogen sulfide occurred from April 22 to 23, 2021.  Limetree claimed that the incident

involved only an unusually high level of sulfur dioxide emissions, and that the odor of

sulfur dioxide (similar to a struck match) can be smelled in amounts far below the level

normally considered dangerous to health.

60.     During an April 30, 2021, site visit to the Facility by staff from EPA and

DPNR ("April Site Visit"), Limetree staff explained that the April 23, 2021 incident was

related to the main sulfur recovery unit #4's fire eye detecting a lack of flame, and thus

diverting the acid gas to the flare rather than treating it.  The flare itself had a flame

burning at the time that would have burned the hydrogen sulfide, producing sulfur

dioxide.

61.     During the April Site Visit, Limetree staff said that, although the Facility's

Refinery Operations have two sulfur recovery units (SRUs Nos. 3 and 4), one (No. 3) was

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2243 of 2637
2243
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 16 of 45

out of service when the April 23, 2021 event occurred.  The out of service unit was thus unable to act as a backup when the operating unit (No. 4) malfunctioned.

62.     During the April Site Visit, EPA and DPNR were escorted by Limetree representatives to several areas of the Refinery, including the east part of the Facility where Flare #8 is located.   Based on conversation with Limetree staff  and EPA observation at the Facility, EPA staff learned that due to the significant elevation of Flare #8, the emissions from Flare #8 are often not measurable, nor are odors and other impacts from Flare #8's emissions detectable by olfaction on the grounds within the Facility's Refinery.  Rather, emissions plumes from Flare #8 downwash at (i.e. lowers to) ground level well beyond the Facility's fenceline.

63.     During the April Site Visit, DPNR staff noted that several residents provided very specific descriptions of odors and other impacts resulting from the April 23rd incident's emissions, and those odor characteristics and other impacts were consistent with both $H_2S$ and $SO_2$ being released.

64.     During the April Site Visit, EPA staff asked Limetree representatives if the Refinery was using a Sulfix$^{TM}$ $H_2S$ scavenger system to reduce the levels of $H_2S$ at the Flare #8 header.  Limetree representatives confirmed that the Refinery is using a Sulfix$^{TM}$ $H_2S$ scavenger system, and explained that it consists of the injection of an additive in several points of the Flare #8 header to absorb and recover some of the $H_2S$ in the gas that is conveyed through the Flare #8 header.  Limetree representatives informed EPA staff that although the $H_2S$ scavenger system was in operation during the Late April 2021 Incident, the system was not designed to manage the gas flow and $H_2S$ concentrations that were generated during the Incident.  According to Limetree

16

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2244 of 2637
2244
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 17 of 45

representatives, the system is designed to manage flow into the Sulfix$^{TM}$ system up to 1 million standard cubic feet (scf) and concentrations of no more than 1000 ppm of $H_2S$.

65.     During the April Site Visit, Limetree staff acknowledged that the Facility does not have any $SO_2$ monitor to measure concentrations of $SO_2$ entering the atmosphere from Flare #8 post-flaring.  Limetree believes the April 23, 2021 event only emitted $SO_2$ but does not know how much $SO_2$ was emitted.

66.     Limetree also does not conduct any fenceline monitoring for $SO_2$ or $H_2S$; it only conducts fenceline monitoring for benzene.  Limetree's predecessor, HOVENSA, operated five $SO_2$ monitors near the perimeter of the Facility, but those monitors have not been operated since 2013, after HOVENSA stopped operating the Facility's Refinery. Limetree has not restarted those $SO_2$ monitors.  On April 30, 2021, EPA issued a Notice of Violation ("NOV") to Limetree for its failure to operate the five $SO_2$ monitors.

67.     As indicated in EPA's AP-42 Chapter 13.5 (Industrial Flares), sulfur compounds contained in a flare gas stream are converted to $SO_2$ when burned.  The amount of $SO_2$ emitted depends directly on the quantity of sulfur in the flared gases.  The quantity of sulfur compounds and hydrocarbon emissions generated relate to the degree of combustion and the unit destruction efficiency.  The degree of combustion depends largely on the rate and extent of fuel-air mixing and on the flame temperature achieved and maintained.  A flare does not provide 100% destruction efficiency, so any changes in the degree of combustion, such as a sudden increase of flow and $H_2S$ concentrations such as the one reported on April 23, 2021, can trigger the release of unburned sulfur compounds such as $H_2S$, as well as hydrocarbons, and an increase in $SO_2$ emissions.

68.     Modeling of the Late April Incident by an expert EPA contractor showed that concentrations of sulfur dioxide exceed the Acute Exposure Guideline Level-1

(AEGL-1) for S at ground level.  Above AEGL-1 level, asthmatics are at risk of bronchoconstriction, which results in increased airway resistance. The expert determined that subsequently exposed individuals in the community were faced with imminent and substantial danger to their health.  The "notable discomfort, irritation, or certain asymptomatic non-sensory effects" associated with AEGL-1 exposure is consistent with citizen complaints received surrounding the Late April Event for the No. 8 Flare. Modeled 1-hour concentrations of SO2 also exceeded the lower bound of the taste threshold, and modeled 1-hour concentrations of H2S exceeded the odor threshold assuming a 98% conversion of H2S to SO2 associated with a well-operating flare (i.e., good combustion mechanics).

**May 5, 6, and 7, 2021 Incident ("First May Incident")**

69.     On May 5, 2021, community members began calling EPA to report that an odor was emitting from the Facility.  They described the odor as "sulfur," "gassy," "burnt eggs," and "rotten."  On May 6, 2021, community members continued to report odor emitting from the Facility.  At 7:08 PM est, a citizen caller reported that the odor was continuing and described the fumes as "noxious."  The caller also stated that the "materials in the air were causing health problems" for community members, including "head ache, sore throat, ear ache, nausea, and lips and tongue tingling."

70.     In an article published on May 7, 2021, the Washington Post reported that roughly 100 members of the community had contacted the Virgin Islands Territorial Emergency Management Agency ("VITEMA") describing a gaseous odor emitting from the Facility.

71.     Initially, on May 5, 2021, Limetree issued a statement on Facebook denying that there were any problems at the Facility.  Having received "several

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2246 of 2637
2246
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 19 of 45

community complaints of a strong odor," Limetree stated in its Facebook post that

Facility personnel had conducted a preliminary investigation, and Limetree had

concluded that "units are operating normally, and there is no activity that would result in

an odor."

72.     On May 5, 2021, Limetree environmental personnel reported to DPNR

and EPA that the Facility had exceeded the $H_2S$ limit at Flare #8 at approximately 9 PM

est on May 5.  At the time the email notification was sent to DPNR and EPA at 10:12 PM

est, Limetree environmental personnel stated that $H_2S$ was back below the limit.

73.     On May 6, 2021, at 12:45 pm, Limetree issued another statement

acknowledging that releases were occurring at the Facility.  The statement read:

> "Limetree Bay has become aware of an odor affecting areas west of the facility.
> We are conducting maintenance activity at the Coker unit, which has resulted in
> light hydrocarbon odors.  We will continue to monitor the situation, but there is
> the potential for additional odors while maintenance continues.  We apologize for
> any impacts this may have caused the community.  Thank you."

74.     On May 6, 2021, around 11 AM est, an EPA On Scene Coordinator

("OSC"), was driving towards the Facility in order to investigate the source of odor

complaints on May 5, 2021.  The OSC submitted the following summary of his

experience:

> While driving to the facilities, I intermittently had my car windows slightly open but at
> the time of this experience, my car windows were rolled up, with A/C circulating
> internally.  I noticed an odor and pulled over.  I rolled down my car window down to ask
> a worker on the side of the road what location I was at?  What facility was he working at?
> The worker informed me it was "Container Port.  I was surprised how unaffected the
> workers were by the odor.  As if there was nothing different going on.  They had no
> respiratory protection at all.  I immediately closed my window and pulled away driving
> north.  I determined that I was slightly west of the Limetree facility.  The odor I briefly
> encountered was overwhelming and nauseating.  I normally am suited up with respiratory
> protection and other [personal protective equipment] prior to being exposed to something
> like this.  It was unexpected.  The smell was gasoline-like in nature, but it was stronger
> than gasoline. I have experience inspecting refineries and other facilities, as well as
> general life experience mowing lawns and pumping gasoline, and I am familiar [with]

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2247 of 2637
2247
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 20 of 45

what gasoline smells like and what many other substances emitted by refineries smell like.  This odor was stronger, more pungent than others I have encountered.  The odor was overwhelming and felt as if I would be sick. I sent an email to EPA Region 02 [Regional Emergency Operations Center (REOC)] with a Google maps screenshot to my location.  The REOC was receiving multiple calls from the National Response Center regarding similar odor complaints.  The DPNR Environmental Director also contacted me with similar odor complaints.  I then planned to visit those two locations which were described as Whim Estates and Mars Hill.  As I drove away, even with the A/C on and recirculating air, I continued to smell the odor.  I did not detect any orders [sic] in the towns that I investigated which were on the southwest side of the island.  I did feel sick throughout the afternoon.  It was obvious[] to me the odor was emitting from Limetree and not the asphalt plant(s).  I could tell due to my location, the wind direction at the time, and other factors.  When I returned to the hotel, the woman at the front desk referenced the facility restarting the coker plant and said that it was the source of the smell.  Throughout the afternoon, my head felt 'cloudy' and [I] needed to shower because I felt 'contaminated.'"

75.    As a result of the odor, the Virgin Islands Department of Education closed

three schools on May 6, 2021.  Due to concerns of continuing odor releases, the school

closures remained in effect through May 7, 2021.

76.    Also as a result of the odor, the VI Bureau of Motor Vehicles ("VIBMV")

closed early on May 6, 2021 and remained closed on May 7, 2021.  The VIBMV stated

that, "[t]his closure is necessary because the employees at the BMV are affected by the

strong unpleasant, gas like odor, in the atmosphere surrounding the BMV."

77.    On May 7, 2021, VI Governor Albert Bryan activated the VI National

Guard and the VITEMA to address continuing reports of odor and heightened concern

from the community.  The Director of the VI Department of Health ("VIDOH") stated

during the same briefing that at least three members of the community had sought

medical attention at an area hospital for headaches and nausea allegedly caused by the

continuing odors.  VIDOH then advised residents with respiratory ailments to avoid

going outside or to temporarily relocate to areas of the island that were less affected by

the odors.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2248 of 2637
2248
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 21 of 45

78.     On May 7, 2021, Limetree environmental personnel reported to EPA that the Facility had exceeded the $H_2S$ limit at Flare #8 at approximately 11 PM EST on May 7, 2021. Limetree environmental personnel stated in the email that "there was an instrumentation/communications error that caused a short spike."  The notification did not indicate the extent of the exceedance.

**May 12, 2021 Incident ("Second May Incident")**

79.     On May 12, 2021 at approximately 5:30 PM, Limetree reported to EPA that around 3:15 PM EST a flaring incident occurred at the Refinery when the pressure in the coker drum rose, causing fire or flames.  At the time, Limetree was still unsure what specifically caused the flaring incident.  Limetree reported that during its investigation of the fire, Limetree discovered that liquid droplets of oil were on the road west of the Facility.  Limetree contacted VITEMA, and VITEMA had or was going to close the road. Liquid droplets of oil had also been reported on properties in the Enfield Green neighborhood.

80.     Photographs and video of the Second May Incident show a large flame coming off Flare #8, with a large trailing plume of visible emissions extending a long distance.

81.     At 4:15 PM on May 12, 2021, VITEMA issued an alert stating the following: "Limetree Bay Emergency Response Teams are responding to a fire onsite. DPNR has deployed the Virgin Islands Nation Guard for air quality monitoring and the VI Fire Service is standing by to support."

82.     At 6:55 PM on May 12, 2021, Limetree emailed EPA to report the following: "We exceeded the 162 ppm $H_2S$ limit in the flare header (3-hr average) starting on the hour of 3 to 4pm.  We will follow up with a letter."

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2249 of 2637
2249
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 22 of 45

83.     At 7:12 PM on May 12, 2021, Limetree sent EPA the following information by email: "At 6pm we exceeded the Reportable Quantity (RQ) of 500lbs of $SO_2$ in a 24hr period from a flaring event at Flare #8.  Limetree issued a statement on social media and is preparing a press release.  We temporarily suspended production in response to the incident."  In a subsequent email, Limetree clarified that it "temporarily suspended production on all process units."

84.     At 8:50 PM on May 12, 2021, Limetree staff told EPA staff by phone that Limetree was stopping production after such a "big" incident.  This would not be a full shutdown of the Refinery, but Limetree would stop production.  Limetree would run some units on circulation and the utilities/wastewater would still be in operation.  The Limetree staff was not sure how long production would be suspended.

85.     At 7:10 PM on May 12, 2021, an EPA employee currently deployed to St. Croix emailed colleagues and informed them that, "[t]here is oil on my windshield."

86.     During the evening of May 12, 2021, a Reuters news article reported the following: "'The troubled Limetree Bay refinery in St. Croix will temporarily suspend production activities until further notice after a flaring incident dropped oil on a nearby neighborhood', the company said on Wednesday.  The company urged residents in the nearby Enfield Green community not to consume the water following the incident.  'Water distribution will be established for affected communities,' the company said in a statement, adding that processing units will be brought to a 'safe, stable condition.'"

87.     During a call with EPA staff on the morning of May 13, 2021, Limetree staff said that at that time no oil was being added to the Refinery system.  The shutdown of production will take a couple of days.  The oil from the incident that was deposited on roads and neighborhoods to the west of the Facility or elsewhere was a heavy oil like

Case 4:22-cv-00040  Document 7  Filed on 02/08/22 in TXSD  Page 2250 of 2637
2250
Case: 1:21-cv-00264-WAL-GWC  Document #: 2-1  Filed: 07/12/21  Page 23 of 45

pitch oil, and not crude oil.  Limetree was, at this time, still using some pumps in generating electricity and running wastewater treatment operations.

88.     Later in the morning on May 13, 2021, around 11:40 AM, Limetree staff clarified to EPA staff that all process units at the Refinery are shut down with the exception of the platformer, which supplies hydrogen to the desulfurization unit and is needed during the ramping down process.  As soon as the Refinery is completely "ramped down", that unit will be shut down too.  Limetree staff stated that they expected this to be completed by the end of the day on May 13, 2021.

89.     The May 12, 2021 Incident resulted in flare rainout from Flare #8, and was likely caused by overloading the flare knockout drum with liquid droplets that reportedly originated from a process upset at the coker unit.  As discussed in paragraph 44 above, this type of event – let alone two such events in a few months – is not common for a refinery startup.

90.     Flare #8 has been the only flare in service at the Refinery, and refinery process units rely on it as a safeguard for process safety and environmental protection.  Based on photos of the Second May Incident, it appears that Flare #8's flare tip, flare riser, and/or associated components were likely damaged in the Second May Incident.  Due to the potential for release of uncombusted hydrocarbons and hydrogen sulfide, oil droplet rainout, and/or "burning rain", the refining process units that rely on Flare 8 may not be able to operate safely until Flare 8 is repaired and its capacity and fitness-for-service evaluated.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2251 of 2637
2251
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 24 of 45

**Limetree Environmental Staffing**

91.     During the April Site Visit, Limetree representatives stated that Limetree

has a single Environmental Department, known as the Health, Safety, and

Environmental ("HSE") Department, serving the entire Facility, including the Refinery

and marine loading terminal operations.  In addition to managing environmental

compliance at the Facility, the HSE department also oversees safety and implementation

of COVID-19-related procedures.  The entire HSE department consists of 5 employees.

Limetree representatives noted they did have consultant support.

92.     A Refinery of this size and complexity would be expected to have 10-20

full time onsite staff in its health, safety and environment department.

93.      On April 1, 2021, EPA issued a Clean Air Act § 114 information request

to Limetree that provided Limetree with 30 days to respond.  In an April 7, 2021 letter

from LBR, LBR expressed that, "this is a very intense time for the [environmental,

health, and safety] team in terms of work load in general."  In large part given the heavy

workload on its environmental, health, and safety staff, LBR requested that it be given

an extra 180 days to respond to the information request, an amount of time far exceeding

any extension typically provided by the EPA.

94.     On April 19, 2021, Limetree replaced its Refinery General Manager.

**Health and Welfare Risks of Hydrogen Sulfide, Sulfur Dioxide, and Fuel Oils**

95.     According to an April 24, 2021, DPNR advisory regarding the Late April

2021 incident, DNPR warned:

> "Exposure to low concentrations of hydrogen sulfide may cause irritation to
> the eyes, nose, or throat.  It may also cause difficulty in breathing for
> some asthmatics.  Respiratory distress or arrest has been observed in people
> exposed to very high concentrations of hydrogen sulfide.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2252 of 2637
2252
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 25 of 45

> Exposure to low concentrations of hydrogen sulfide may cause headaches, poor memory, tiredness, and balance problems.  Brief exposures to high concentrations of hydrogen sulfide can cause loss of consciousness.  In most cases, the person appears to regain consciousness without any other effects.  However, in some individuals, there may be permanent or long-term effects such as headaches, poor attention span, poor memory, and poor motor function.
>
> Individuals with respiratory ailments such as allergies, lung disease, or asthma should consider taking protective actions such as staying indoors or temporarily relocating to areas less affected."

This language echoes the information provided by ATSDR in its "TOXFAQ" and "Public Health Statement" (a summary about a hazardous substance taken from its ATSDR Toxicological Profile) documents for hydrogen sulfide.

96.     ATSDR's "TOXFAQ" for hydrogen sulfide further notes that "[s]tudies in humans suggest that the respiratory tract and nervous system are the most sensitive targets of hydrogen sulfide toxicity."

97.     According to ATSDR's "TOXFAQ" for hydrogen sulfide, while there is very little information on possible health problems in children who have been exposed to hydrogen sulfide, exposed children probably will experience effects similar to those experienced by exposed adults.  Whether children are more sensitive to hydrogen sulfide exposure than adults is not known.

98.     ATSDR's "Public Health Statement" on hydrogen sulfide further specifies that you can have respiratory and neurological effects if you are exposed to higher concentrations of hydrogen sulfide, at least 100 times higher than typical environmental levels.  The ATSDR Public Health Statement elsewhere says that, "[h]ydrogen sulfide air concentrations from natural sources range between 0.00011 and 0.00033 ppm.  In urban areas, the air concentrations are generally less than 0.001 ppm."

25

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2253 of 2637
2253
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 26 of 45

99.     ATSDR's "Public Health Statement" on hydrogen sulfide notes that, "If you are exposed to very high concentrations of hydrogen sulfide, you may have severe problems breathing even if you do not have a pre-existing respiratory condition.  You could lose consciousness if you are briefly exposed to very high concentrations (more than 1 million times higher than the amount typically found in the environment).  If this happens, you may regain consciousness without any other effects.  However, some people may have longer lasting effects such as headaches, poor attention span, poor memory, and poor motor function."

100.    ATSDR has also said that hydrogen sulfide can remain in the air from 1 to 42 days, depending on the season.

101.    Breathing high levels of $SO_2$ can cause immediate health impacts.  Short-term exposures to $SO_2$ can harm the human respiratory system and make breathing difficult.  People with asthma, particularly children, are sensitive to these effects of $SO_2$. $SO_2$ emissions that lead to high concentrations of $SO_2$ in the air generally also lead to the formation of other sulfur oxides ("SOx").  SOx can react with other compounds in the atmosphere to form small particles.  These particles contribute to particulate matter (PM) pollution.  Small particles may penetrate deeply into the lungs and in sufficient quantity can contribute to health problems.

102.    According to ATSDR's "Public Health Statement" on sulfur dioxide:

"Short-term exposures to high levels of sulfur dioxide can be life-threatening. Exposure to 100 parts of sulfur dioxide per million parts of air (ppm) is considered immediately dangerous to life and health.  Previously healthy nonsmoking miners who breathed sulfur dioxide released as a result of an explosion in an underground copper mine developed burning of the nose and throat, breathing difficulties, and severe airway obstructions.  Longterm exposure to persistent levels of sulfur dioxide can also affect your health.  Lung function changes have been observed in some workers exposed to 0.4–3.0 ppm sulfur dioxide for 20 years or more.  However, these workers were also exposed to

26

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2254 of 2637
2254
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 27 of 45

other chemicals, making it difficult to attribute their health effects to sulfur dioxide exposure alone. Additionally, exercising asthmatics are sensitive to the respiratory effects of low concentrations (0.25 ppm) of sulfur dioxide. . . .

Most of the effects of sulfur dioxide exposure that occur in adults (i.e., difficulty breathing, changes in the ability to breathe as deeply or take in as much air per breath, and burning of the nose and throat) are also of potential concern in children, but it is unknown whether children are more vulnerable to exposure. Children may be exposed to more sulfur dioxide than adults because they breathe more air for their body weight than adults do. Children also exercise more frequently than adults. Exercise increases breathing rate. This increase results in both a greater amount of sulfur dioxide in the lungs and enhanced effects on the lungs. . . .

Long-term studies surveying large numbers of children have indicated possible associations between sulfur dioxide pollution and respiratory symptoms or reduced breathing ability. Children who have breathed sulfur dioxide pollution may develop more breathing problems as they get older, may make more emergency room visits for treatment of wheezing fits, and may get more respiratory illnesses than is typical for children. However, studies like these are unable to provide conclusive evidence about sulfur dioxide's effects on children's health because many other pollutants are also present in the air. . . .

It is known that exercising asthmatics are sensitive to low concentrations of sulfur dioxide. Therefore, increased susceptibility is expected in children with asthma, but it is not known whether asthmatic children are more sensitive than asthmatic adults. Additionally, asthma occurs most often in African Americans, children between the ages of 8 and 11, and people living in cities. For unknown reasons, the death rates associated with asthma are also higher in non-Caucasian people. Therefore, it is expected that asthmatic, African American children living in urban areas have increased sensitivity to sulfur dioxide."

103.    The Center for Disease Control's ATSDR has developed a "ToxFAQ" document (a fact sheet that answers the most frequently asked questions about a contaminant and its health effects) for fuel oils. This document describes "fuels oils" as "a variety of yellowish to light brown liquid mixtures that come from crude petroleum. Some chemicals found in fuel oils may evaporate easily, while others may more easily dissolve in water. Fuel oils are produced by different petroleum refining processes, depending on their intended uses." The document notes that, "[d]rinking or breathing fuel oils may cause nausea or nervous system effects," although it also notes that, "[l]ittle

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2255 of 2637
2255
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 28 of 45

information is available about the health effects that may be caused by fuel oils."  It says

that "Breathing some fuel oils for short periods may cause nausea, eye irritation,

increased blood pressure, headache, light-headedness, loss of appetite, poor coordination,

and difficulty concentrating.  Breathing diesel fuel vapors for long periods may cause

kidney damage and lower your blood's ability to clot."

104.    According to an expert EPA contractor, for the oil droplets released during

two events, ". . . the oil [released during the Feb. 4 Incident and the Second May

Incident] is likely composed of a mixture of petroleum hydrocarbons. Potential exposures

include inhalation of volatile components, dermal contact with the residues, and ingestion

of or contact with impacted water. Human health impacts depend on the specific

petroleum constituents in a particular media or matrix, but total petroleum hydrocarbons

as well as individual constituents have been associated with a variety of adverse health

impacts. Skin and eye irritation, for example, are associated with short-term exposures to

different hydrocarbon fractions. Longer term oral exposures to the semi-volatile fractions

such as polyaromatic hydrocarbons (PAHs) have shown liver effects to be a common

endpoint. Dermal contact with some PAHs have been shown to elicit skin

hypersensitivity reactions. Some oil constituents have been classified as known or

possible carcinogens.

> The expert EPA contractor found that: "The information available to date
> indicates that the incidents which occurred at the Limetree Bay Terminals and
> Refining facility present an imminent and substantial endangerment to both public
> health and welfare. This conclusion is based on multiple lines of evidence that
> demonstrate that the facility has already placed the health and welfare of the
> nearby community at risk. Additionally, the repeated nature of the flare failures
> coupled with the events associated with the release of noxious sulfur compounds
> and other potential hazardous air pollutants elevates the degree of harm."

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2256 of 2637
2256
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 29 of 45

The expert EPA contractor noted that, in addition to the impacts on physical health, the repeated incidents emitting oil droplets in a short time period have resulted in fear and anxiety about the next possible event and the severity of that event. The frequency of Limetree flare incidents raises the concern that events could continue to escalate and result in an even more significant or catastrophic incident, which could lead to injury or loss of life. The contractor also notes that improper maintenance or process safety management of flare systems has historically caused serious harm to people (killing or injuring workers and people living and working off site) and the environment, as well as damage and loss to property.

## CONCLUSIONS OF LAW

EPA concludes the following:

105.    Respondent LBT is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e), against whom an Emergency Order may be issued under Section 303 of the Act, 42 U.S.C. § 7603.

106.    Respondent LBR is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e), against whom an Emergency Order may be issued under Section 303 of the Act, 42 U.S.C. § 7603.

107.    In its current state, the Facility is a "pollution source" or "combination of sources" within the meaning of Section 303 of the Act, 42 U.S.C. § 7603.

108.    The Feb. 4, 2021 Incident's emissions of an "oily mist," consisting in part of heavy oil, including a mixture of many heavy organic compounds; the Late April Incident emissions of $H_2S$ and/or $SO_2$; the First May Incident's emissions of light hydrocarbons and/or volatile organic compounds; and the Second May Incident's

Case 4:22-cv-00040    Document 7    Filed on 02/08/22 in TXSD    Page 2257 of 2637
2257
Case: 1:21-cv-00264-WAL-GWC    Document #: 2-1    Filed: 07/12/21    Page 30 of 45

emissions of heavy oil droplets, particulate matter, and visible emissions are all "air pollutants" within the meaning of Sections 302(g) and 303 of the Act, 42 U.S.C. §§ 7602(g) and 7603.

109.    Respondents are "causing or contributing" to the emission of air pollutants within the meaning of Sections 302(g) and 303 of the Act, 42 U.S.C. §§ 7602(g) and 7603, by continuing to operate the Facility's Refinery Operations in the current manner.

110.    EPA is in receipt of evidence that, in less than four months, the air emissions from the Facility's Refinery Operations have, on at least four occasions, harmed the public health, welfare or the environment, as described *supra* at Paragraphs 33-90, and 95-104.

111.    EPA is in receipt of evidence that the Refinery, if allowed to continue to operate as it is currently operated, presents an imminent and substantial endangerment to the public health or welfare or the environment.

112.    Issuance of this Order is necessary to assure prompt protection of public health or welfare or the environment because it is not practicable to wait for the commencement of a civil action in United States District Court to assure prompt protection from additional air emissions events.

113.    The Director of the Caribbean Environmental Protection Division has found that the Refinery's current operations, as described above, if allowed to continue, are presenting an imminent and substantial endangerment to public health or welfare or the environment, and it is therefore appropriate for the issuance of an Order under Section 303 of the Act, 42 U.S.C. § 7603.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2258 of 2637
2258
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 31 of 45

114.    The Director of the Caribbean Environmental Protection Division is vested with the authority of the Administrator under Section 303 of the Act, 42 U.S.C. § 7603.

## **ORDER**

115.    Based on the foregoing, and pursuant to Section 303 of the Act, 42 U.S.C. § 7603, in order to abate or prevent an imminent and substantial endangerment to public health or welfare or the environment, the Director of the Caribbean Environmental Protection Division hereby orders Respondents, their agents, employees, successors, and assigns, to address the endangerment posed by frequent incidents at the Refinery that have endangered public health and welfare, as follows:

   a.   Within one (1) business day of receipt of this Order, Respondents shall submit to EPA in writing a statement explaining whether Respondents intends to and is able to comply with this Order.

   b.   Upon receipt of this Order, Respondents shall ensure all Refinery Operations cease until the termination of this Order in accordance with paragraph 125 unless, based on the auditor reports and Respondents' implementation plan, EPA determines, in consultation with VIDPNR, that operations can resume before the expiration of the Order.

   c.   Respondents shall notify EPA electronically, in accordance with paragraph 116, as soon as possible once Refinery operations have ceased.

   d.   Respondents shall retain, at their expense, independent third party auditors ("Auditors") consistent with the requirements set forth below. The Auditors shall be retained to conduct one or more comprehensive

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2259 of 2637
2259
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 32 of 45

audits ("Audits"), to be completed by the earlier of 30 days after

EPA's approval of a list of auditors for a given Audit Category

pursuant to subparagraph (f) of this paragraph or 42 days after

issuance of this Order.  The Audits shall include a review of the items

specified in subparagraphs (i) and (j) of this paragraph.  Respondents

shall require that the Auditors act independently and objectively when

performing all activities.  Respondents shall provide the Auditors with

full access to the Facility and provide or otherwise make available any

necessary personnel, documents, and Facility environmental, health,

and safety training to fully perform all audit activities.

e.  Within 7 days of this Order's issuance, Respondents shall submit to

EPA the name and qualifications of at least three (3) proposed

Auditors (the "Proposed Auditors") in each Audit Category discussed

in subparagraphs (h), (i) and (j) of this paragraph – and more if

necessary to provide competency in all of an Audit Category's scope

– that Respondents certify meet the following conditions:

    i.  A Proposed Auditor for the Environmental Compliance Audit

      has demonstrated experience in audits for compliance with

      Clean Air Act regulations and has completed at least a

      bachelors degree in science or engineering.

    ii.  A Proposed Auditor for the Process Unit Audit has

      demonstrated experience in refinery process operation and

      optimization and has completed at least a bachelors degree in

      chemical or mechanical engineering.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2260 of 2637
2260
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 33 of 45

iii.   The Proposed Auditor and its personnel have not conducted research, development, design, construction, financial, engineering, legal, consulting nor other advisory services for Respondents or any other entity associated with the Refinery within the last three years.  However, a Proposed Auditor with personnel who, before working for the audit firm, conducted research, development, design, construction, or consulting services for Respondents (as an employee or contractor) may meet the requirements of independence by ensuring such personnel do not participate on, manage, or advise the audit team;

iv.   The Proposed Auditor was not involved in efforts since 2016 to restart or operate the Facility.

v.   The Proposed Auditor and its personnel will not provide any other commercial, business, or voluntary services to Respondents for a period of at least three years following the Proposed Auditor's submittal of the final Audit Report.

vi.   Respondents will not provide future employment to any of the Proposed Auditor's personnel who managed, conducted, or otherwise participated in the Audit for a period of at least three (3) years following the Proposed Auditor's submittal of its final Audit Report.

f.   EPA will notify Respondents in writing whether it approves of any of the three (3) proposed Auditors in each Audit Category.  Within 7

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2261 of 2637
2261
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 34 of 45

days of EPA approval, Respondents shall retain one or more of the EPA-approved Proposed Auditors for each Audit Category, who shall then become the Auditor(s) for that Audit Category, to perform the audit activities set forth in subparagraphs (i) and (j) of this paragraph of this Order.  Respondents shall ensure that all audit personnel who conduct or otherwise participate in audit activities shall certify that they satisfy the conditions set forth in subparagraph (e) of this paragraph above before receiving any payment from Respondents.

    i.   If EPA rejects all three of the Proposed Auditors proposed for an Audit Category, within 48 hours of receipt of EPA's rejection notification, Respondents shall submit to EPA for approval another three (3) Proposed Auditors that meet the qualifications set forth in subparagraph (e) of this paragraph. EPA will review the proposed replacements in accordance with this subparagraph (f).

g.  Each Auditor shall commence auditing onsite within 5 days of contracting.

h.  The Audit Categories shall include Category A (Environmental Compliance Audit) and Category B (Process Unit Audit).

i.  <u>Audit Category A: Environmental Compliance Audit</u>.  Respondents shall ensure that the contract with the Auditor(s) retained to perform the Environmental Compliance Audit explicitly requires the Auditor(s) to perform the activities specified in this paragraph and its subparagraphs.  However, the contents of the Audit shall not be

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2262 of 2637
2262
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 35 of 45

limited to the below items if the Auditor determines that additional evaluation should be conducted to prevent emissions or incidents that could endanger public health or welfare or the environment.

    i.   An evaluation of staffing within the environmental, health and safety program at the Refinery including staffing levels and whether staff have proper academic background, experience, and training to ensure the Refinery operates within required environmental, health, and safety limits and avoids situations or condition that endanger public health or welfare or the environment;

  ii.   A review of CAA compliance at the Refinery since February 2021, with a summary of all non-compliance and recommended steps to prevent future noncompliance, including at a minimum:

      1.   Exceedances of NSPS Subpart J and Ja and permit $H_2S$ limits at Flare #8 and the East Mix Drum and Coker Mix Drum Fuel Gas Systems;

      2.   Compliance with all NSPS Subpart Ja requirements for flare incidents that exceed the 500 pound per day threshold;

      3.   Compliance with the obligations of the Flare Management Plan submitted pursuant to NSPS Subpart Ja and NESHAP Subpart CC; and

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2263 of 2637
2263
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 36 of 45

    4.   An evaluation of compliance for releases at the coker unit with particular emphasis on the miscellaneous process vent requirements of NESHAP Subpart CC and the coker steam vent requirements of NESHAP Subpart CC.

j.   <u>Audit Category B: Process Area Audits</u>.  Respondents shall retain one or more Auditors, as necessary to ensure the Auditors have the requisite expertise to perform the activities in this paragraph and its subparagraphs.  Respondents shall ensure that its contract with each Auditor retained to perform Process Area Audits explicitly requires the Auditor to perform the activities specified in this paragraph and its subparagraphs.  However, the contents of the Audit shall not be limited to the below items if an Auditor determines that additional evaluation should be conducted to prevent emissions or incidents that could endanger public health or welfare or the environment.

    1.   Flare system audit.

        a.   An evaluation of the condition of the tip on Flare #8;

        b.   Capacity of the knockout pot to handle liquids loading to prevent flare rainout;

        c.   Capacity of flare #3 to serve as backup to Flare #8;

2264

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2264 of 2637
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 37 of 45

    d.   Other damage already incurred by and to the flare system due to high liquid loading or other causes;

    e.   Review of procedures that can be implemented to avoid and minimize the impact of future flaring events, including:

        i.   Operation of redundant amine treatment units and redundant SRU trains operated in hot standby; and

       ii.   Sulfur shedding practices;

    f.   A review of whether and how installation of a flare gas recovery system to eliminate or minimize Flare #8 non-compliance can be expedited; and

    g.   An evaluation of staffing with regard to the operation and maintenance of the process unit, including staffing levels and whether operators have proper experience and training to operate the process unit safely and within required environmental limits.

2.   Coker audit.

    a.   Releases to Flare #8, particularly high liquid loading that has occurred, what caused them,

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2265 of 2637
2265
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 38 of 45

and physical changes and operating changes to prevent them from happening in the future;

   b.  Releases since February 2021 of volatile organics directly to the atmosphere from the coker unit, and particularly from the steam vent prior to decoking, what caused them, and physical changes and operational changes to prevent such releases from happening again in the future; and

   c.  An evaluation of staffing with regard to the operation and maintenance of the process unit, including staffing levels and whether operators have proper experience and training to operate the process unit safely and within required environmental limits.

3.  Amine/Sulfur Recovery Unit (SRU).

   a.  Acid gas flaring events at Flare #8, particularly including hydrocarbon carryover from the amine units to the SRUs, what caused them, and physical changes and operational changes to prevent them from happening again in the future;

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2266 of 2637
2266
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 39 of 45

    b. Review of procedures that can be implemented to avoid and minimize the impact of future acid gas flaring events, including:

        i. Operation of redundant amine treatment units and redundant SRU trains operated in standby; and

        ii. Sulfur shedding practices; and

    c. An evaluation of staffing with regard to the operation and maintenance of the process unit, including staffing levels and whether operators have proper experience and training to operate the process unit safely and within required environmental limits.

k. Respondents shall ensure that its contract with each Auditor requires that the Auditor shall simultaneously submit an audit report ("Audit Report") to Respondents, EPA (at the contacts listed in paragraph 116 below), and VIDPNR (at the contacts listed in paragraph 117). Concurrently, Respondents shall represent that the Audit Report submittal meets the following requirements:

    i. Respondents shall ensure that the Auditor does not share any draft or preliminary audit findings or reports with Respondents in any format (electronic, paper, or verbal).

    ii. Respondents shall conduct no post-audit oral or written communications with the Auditor except to request, for the

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2267 of 2637
2267
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 40 of 45

purposes of the audit, additional audit-related data or

information.  EPA and VIDPNR shall be simultaneously

copied (at the contacts listed in paragraphs 116 and 117

below) on any such communication.

iii.   Respondents shall ensure that the Auditor does not share its

audit conclusions with Respondents until the Auditor submits

its Audit Report(s) to EPA and VIDPNR.

iv.   The Audit Report shall include all findings, conclusions,

monitoring results, and other observations of the Auditor.

v.   The Auditor shall provide EPA and VIDPNR with copies of

all documents reviewed and identify all Facility personnel

interviewed in support of the Audit Report.

vi.   Respondents shall require the Auditor to include in the final

Audit Report, submitted to EPA and VIDPNR pursuant to this

Order, a certification that the Auditor has remained in

compliance with all of the conditions set forth in subparagraph

(e) of this paragraph, above.

l.   Within 56 days of the issuance of this Order, Respondents shall submit to

EPA a detailed plan that addresses all findings, conclusions, and observations

set forth in each Audit Report, with an expeditious schedule for

implementation of all corrective measures ("the Plan").

i.   Respondents shall also describe each completed or proposed action to

correct each deficiency identified in each Audit Report submitted to

EPA, including the date(s) that such corrections occurred or are

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2268 of 2637
2268
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 41 of 45

scheduled to occur.  The Plan shall provide for the implementation of each Auditor's recommendations in each Audit Report or provide a detailed explanation for why an Auditor's given recommendation is impracticable.

ii.   The Plan shall ensure that the Refinery operates in a manner that complies with environmental statutory, regulatory and permit requirements such that said operation does not present an imminent and substantial endangerment to public health or welfare or the environment, and the Plan shall include adequate measures to protect the health and welfare of residents living near the Facility.

iii.   The Plan shall be submitted to EPA, for EPA review, comment, and approval, or approval with modifications.

m.  Upon commencing operation of any Refinery process unit following the ceasing of Refinery Operations required in subparagraph (b) of this paragraph, Respondents shall electronically notify EPA as soon as possible but no later than 24 hours after commencement.

116.   Note: Respondents shall submit all notices, schedules, work plans, analyses, certifications and documentation required by this Order by email to:

Robert Buettner, Chief
Air Compliance Branch
Enforcement and Compliance Assurance Division
buettner.robert@epa.gov

And

Nancy Rodríguez, Chief
Multimedia Permits and Compliance Branch
Caribbean Environmental Protection Division
U.S. Environmental Protection Agency, Region 2

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2269 of 2637
2269
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 42 of 45

rodriguez.nancy@epa.gov

And

Harish Patel, Team Leader
Air Compliance Branch
Enforcement and Compliance Assurance Division
Patel.harish@epa.gov

And

Patrick Foley, Senior Environmental Engineer
Air Enforcement Division
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Foley.patrick@epa.gov

And

Liliana Villatora, Chief, Air Branch
U.S. Environmental Protection Agency, Region 2
Office of Regional Counsel
villatora.liliana@epa.gov

And

Sara Froikin, Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 2
Office of Regional Counsel
froikin.sara@epa.gov

117.   Note: Whenever submittal to VIDPNR is required in paragraph 115,

Respondents shall submit all notices, schedules, work plans, analyses, certifications and

documentation required by this Order by email to:

Verline Marcellin, Air Program Supervisor
Virgin Island Department of Planning and Natural Resources
verline.marcellin@dpnr.vi.gov

And

Jean-Pierre Oriol, Commissioner
Virgin Island Department of Planning and Natural Resources
jp.oriol@dpnr.vi.gov

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2270 of 2637
2270
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 43 of 45

## ACCESS

118.     Respondents shall allow EPA and its authorized representatives and contractors to enter and freely move about all areas subject to this Order, using equipment to gather information, for the purposes of inspecting conditions, activities, records, and contracts related to the presence of emissions in the Facility and other CAA compliance concerns and operation of the Refinery.  Respondents shall allow EPA and its authorized representatives to enter the areas subject to this Order to inspect and copy all records, files, photographs, documents, sampling and monitoring data, and other writings related to carrying out this Order.

119.     Nothing in this Order is intended to limit, affect or otherwise constrain EPA's rights of access to property and records pursuant to applicable law.

## RESERVATION OF RIGHTS

120.     EPA reserves the right to take any necessary action to enforce this Order, including obtaining injunctive relief or civil or criminal penalties, in accordance with Section 113 of the CAA, 42 U.S.C. § 7413.

121.     Be advised that issuance of this Order does not preclude EPA from electing to pursue any other remedies or sanctions authorized by law that are available to address these and other violations.  This Order does not resolve Respondents' liability for past violations of the Act or for any violations that continue from the date of this Order up to the date of compliance.  At any time after the issuance of this Order, EPA may take any or all of the following actions: issue a further order requiring compliance with the Act; issue an administrative penalty order for up to $48,762 per day for each violation; or bring a civil or criminal action seeking an injunction and penalties.  See Sections 113(a)-

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2271 of 2637
2271
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 44 of 45

(d) of the CAA, 42 U.S.C. §§ 7413(a)-(d); 40 C.F.R. Part 19; and 85 Fed. Reg. 83818 (December 20, 2020) (raising CAA penalties to $48,762 for violations occurring after Nov. 2, 2015 and assessed on or after Dec. 23, 2020).

122.     Nothing in this Order shall limit the power and authority of EPA to take, direct or order all action necessary to protect public health or welfare or the environment to prevent, abate or minimize an imminent and substantial endangerment resulting from the continued operation of the Refinery as it is currently operated.  Further, nothing in this Order shall be construed to prevent EPA from seeking legal or equitable relief to enforce the terms of this Order, or from taking other legal or equitable action as EPA deems appropriate and necessary, pursuant to the CAA, and any other applicable law. Nothing herein shall be construed to prevent EPA from requiring Respondents to perform further actions pursuant to the CAA or other applicable law.

123.     Neither EPA nor the United States, by the issuance of this Order, assumes any liability for any acts or omissions by Respondents or Respondents' employees, agents, contractors or consultants engaged to carry out any action or activity pursuant to this Order; nor shall EPA or the United States be held as a party to any contract entered into by Respondents or Respondents' employees, agents, contractors or consultants engaged to carry out the requirements of this Order.

## EFFECTIVE DATE

124.     This Order is effective immediately upon issuance by EPA. Although this Order is effective immediately, Respondents may contact EPA to confer about compliance with the Order by contacting Sara Froikin, Esq. of EPA at 212-637-3263.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2272 of 2637
2272
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-1   Filed: 07/12/21   Page 45 of 45

125.   This Order shall be effective for a period of not more than 60 days unless

the United States files a civil action in the appropriate United States district court

pursuant to Section 303 of the Act, 42 U.S.C. § 7603.

CARMEN
GUERRERO
PEREZ

Digitally signed by CARMEN
GUERRERO PEREZ
Date: 2021.05.14 12:43:00
-04'00'

May 14, 2021

_____          _____
Carmen R. Guerrero, Director                              Date
Caribbean Environmental Protection Division
United States Environmental Protection Agency, Region 2

Case 4:22-cv-00040    Document 7    Filed on 02/08/22 in TXSD    Page 2273 of 2637
2273
Case: 1:21-cv-00264-WAL-GWC    Document #: 2-2    Filed: 07/12/21    Page 1 of 9



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION 2
290 BROADWAY
NEW YORK, NY  10007-1866

**VIA Electronic Mail – nmorgan@lbenergy.com & jhersperger@lbenergy.com**

Jeffrey Hersperger, Senior Vice President
Limetree Bay Terminals, LLC
1 Estate Hope
Christiansted, VI 00820
jhersperger@lbenergy.com

Neil Morgan, Vice President, Refinery and General Manager
Limetree Bay Refining, LLC
1 Estate Hope
Christiansted, VI 00820
nmorgan@lbenergy.com

**Re:**    **Request to Provide Information Pursuant to the Clean Air Act,**
**Reference Number: CAA-02-2021-1462**

Dear Messrs. Morgan and Hersperger:

The U.S. Environmental Protection Agency (EPA), Region 2 is requiring Limetree Bay Terminal, LLC & Limetree Bay Refining, LLC (Limetree) to submit certain information about your facility at 1 Estate Hope, Christiansted, VI 00820 (the Facility). Enclosure 1, Part I provides the instructions needed to answer this information request, including instructions for electronic submissions. Enclosure 1, Part III specifies the information and monitoring that you must submit and conduct as well as the reporting schedule.

We are issuing this information request under Section 114(a) of the Clean Air Act (CAA), 42 U.S.C. § 7414(a). Section 114(a) authorizes the Administrator of EPA to require the submission of information. This authority has been delegated to the Director of the Enforcement and Compliance Assurance Division. Limetree owns and operates emission sources at the Facility.

Limetree must send all required information to:

> Robert Buettner, Chief
> Air Compliance Branch
> U.S. Environmental Protection Agency
> Region 2
> 290 Broadway
> New York, New York 10007
> Buettner.Robert@epa.gov

Limetree must submit all required information under an authorized signature with the following certification:

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2274 of 2637
2274
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-2   Filed: 07/12/21   Page 2 of 9

I certify under penalty of law that I have examined and am familiar with the information in the enclosed documents, including all attachments. Based on my inquiry of those individuals with primary responsibility for obtaining the information, I certify that the statements and information are, to the best of my knowledge and belief, true and complete. I am aware that there are significant penalties for knowingly submitting false statements and information, including the possibility of fines or imprisonment pursuant to Section 113(c)(2) of the Clean Air Act and 18 U.S.C. §§ 1001 and 1341.

You may assert a claim of business confidentiality under 40 C.F.R. Part 2, Subpart B for any part of the information you submit to us. Information subject to a business confidentiality claim is available to the public only to the extent, and by means of the procedures, set forth at 40 C.F.R. Part 2, Subpart B. If you do not assert a business confidentiality claim when you submit the information, EPA may make this information available to the public without further notice. You should be aware, moreover, that pursuant to Section 114(c) of the CAA and 40 C.F.R. § 2.301(a) and (f), emissions data, standards and limitations are not entitled to confidential treatment.

This information request is not subject to the Paperwork Reduction Act, 44 U.S.C. § 3501 *et seq.*, because it seeks collection of information from specific individuals or entities as part of an administrative action or investigation.

We may use any information submitted in response to this request in an administrative, civil or criminal action.

Failure to comply fully with this information request may subject Limetree to an enforcement action under Section 113 of the CAA, 42 U.S.C. § 7413.

You should direct any questions about this information request to Harish Patel in the EPA Region 2 Air Compliance Branch at patel.harish@epa.gov or by phone at 212-637-4046.

Sincerely,

Dore LaPosta, Director
Enforcement and Compliance Assurance Division
Environmental Protection Agency – Region 2

Enclosures

Cc:    Catherine Elizee, Environmental Superintendent
       Limetree Bay Terminals LLC and Limetree Bay Refining LLC
       celizee@lbenergy.com

       Jean-Pierre Oriol, Commissioner
       US Virgin Islands Department of Planning and Natural Resources
       JP.Oriol@dpnr.vi.gov

CAA-02-2021-1462

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2275 of 2637
2275
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-2   Filed: 07/12/21   Page 3 of 9

Austin Callwood, Director of Environmental Protection
US Virgin Islands Department of Planning and Natural Resources
Austin.Callwood@dpnr.vi.gov

Verline Marcellin, Air Quality Program Manager
US Virgin Islands Department of Planning and Natural Resources
Verline.Marcellin@dpnr.vi.gov

CAA-02-2021-1462

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2276 of 2637
2276
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-2   Filed: 07/12/21   Page 4 of 9

## ENCLOSURE 1

## INFORMATION REQUEST PURSUANT TO SECTION 114 OF THE CLEAN AIR ACT

The U.S. Environmental Protection Agency (EPA) requires the submittal of information regarding operations and compliance of the Limetree facility located at 1 Estate Hope, Christiansted, St. Croix, VI.

## Part I: Instructions

In preparing your responses, please refer to the following instructions:

1.   A complete and separate response must be provided for each numbered information request paragraph below. Identify each response with the same paragraph number to which it corresponds.

2.   Provide all supporting documentation for each response. Supporting documentation includes, but is not limited to, company records (such as logs, receipts, ledgers, etc.), notifications or reports that have been submitted to EPA and/or the Virgin Islands Department of Planning and Natural and Resources (VIDPNR), manufacturer's equipment specifications and equipment certifications, and other similar types of documents. For each document submitted, indicate the paragraph number to which it responds.

3.   Provide as precise and complete a response as possible, even if the information sought was never documented in writing, or if the written documents are no longer available. Consult with all present and past employees and agents whom you or other employees or officers have reason to believe may be familiar with the matter to which the question pertains. Provide the name of each person responding to each information request paragraph, along with the names of all persons consulted in the preparation of each response.

4.   If the requested information or documentation cannot be made available, state the reason(s) why it cannot be made available, and provide all information that could lead to obtaining it. If you cannot provide a precise answer to a question, please approximate, but in any such instance, state the reason for your inability to be specific.

5.   In response to each question below, please provide, in detail, all relevant information. Please submit your responses to the EPA electronically. You may submit your responses electronically using any of the following methods: a) via electronic mail sent to Robert Buettner at the following address: buettner.robert@epa.gov; b) by providing the EPA with a link to the file sharing service of your preference where we may download the documents; or c) by requesting a link from the EPA to our file sharing service where you may upload the documents. If the information requested is not in existence or is not available, submit a statement certifying that fact, along with an explanation supporting such certification.

6.   Pursuant to Section 114 of the Clean Air Act (the Act), Limetree must supply the requested information. The requested information must be submitted in accordance with the schedules in Part III, Specific Information Request, unless EPA grants, in writing, an extension of time to respond.

CAA-02-2021-1462

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2277 of 2637
2277
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-2   Filed: 07/12/21   Page 5 of 9

## Part II: Definitions

All terms used in this Information Request will have their ordinary meaning unless such terms are defined in the Act, 42 U.S.C. § 7401 *et seq.*, and its implementing regulations. Where reference is made to the EPA regulatory provisions only, however, you should also apply the applicable federally approved state provisions when appropriate. Specific terms are defined as follows:

A.  The terms "document" and "documents" shall mean any object that records, stores, or presents information, and includes writings, memoranda, records, or information of any kind, formal or informal, whether wholly or partially handwritten or typed, whether in computer format, memory, or storage device, or in hardcopy, including any form or format of these.

B.  The term "Facility" shall mean the Limetree Bay Refining, LLC and Limetree Bay Terminals, LLC facility located at 1 Estate Hope, Christiansted, St. Croix, VI 00820.

C.  The terms "you," "your" or "Limetree" means the following: the addressees of this Information Request, Limetree Bay Refining, LLC and Limetree Bay Terminals, LLC.

CAA-02-2021-1462

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2278 of 2637
2278
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-2   Filed: 07/12/21   Page 6 of 9

## Part III: Specific Information Request

### Information Request

1. Within fifteen (15) days of receipt of this Request, Limetree shall submit for EPA review and approval an ambient air monitoring plan that includes the operations of sulfur dioxide ($SO_2$) and hydrogen sulfide ($H_2S$) monitors at the five existing air monitoring sites and an additional four offsite monitoring sites identified in Table A below (the Limetree Monitoring Plan). The $SO_2$ monitoring must be performed using an EPA approved methodology. Approved methodologies for $SO_2$ monitoring are available in the List of Designated Reference and Equivalent Methods: https://www.epa.gov/sites/production/files/2019-08/documents/designated_reference_and-equivalent_methods.pdf. The minimum specifications for the $H_2S$ monitor are: minimum detection level of 3 parts per billion (ppb), maximum span of 1000 ppb, and an accuracy factor of +/- 15-20 percent.

Table A

| Monitor Number | AQS Address | Coordinates |
|---|---|---|
| Site 1 | West Gate Martin Marietta | 17.706014   -64.781737 |
| Site 2 | Estate Anguilla, The Ruins | 17.717197   -64.774590 |
| Site 3 | Plot 25 Estate Clifton Hill | 17.718683   -64.776514 |
| Site 4 | Plot 487 Estate Barren Spot | 17.732244   -64.765214 |
| Site 5 | Plot 214 Estate Ruby | 17.736911   -64.751889 |
| Site 6 | Approx. 3.75 miles NNW of refinery | 17.7697       -64.7800 |
| Site 7 | Good Hope Country Day School 2.25 North of refinery | 17.7518       -64.7659 |
| Site 8 | St. Croix Educational Complex High School –2.50 miles WNW of refinery | 17.7223       -64.7985 |
| Site 9 | School of Good Shepherd 5.00 miles WSW of refinery | 17.7008       -64.8350 |

2. Limetree shall follow all monitoring, siting, and quality assurance criteria in 40 CFR Part 58.

3. EPA will review the Limetree Monitoring Plan and approve it, approve it with specified changes, or require Limetree to make changes to it and submit the revised version to EPA for review and approval. If EPA requires Limetree to make changes to the Limetree Monitoring Plan and submit the revised version to EPA, Limetree shall do so within seven (7) days of receiving such communication from EPA. Limetree shall implement the plan once it is approved by EPA.

4. Limetree shall commence monitoring at Sites 1-5 within thirty (30) days of the date of this Information Request. Limetree shall commence monitoring at Sites 6-9 within ninety (90) days of the date of this Information Request.

5. Limetree shall also follow the operating procedures identified in the "Quality Assurance Handbook for Air Pollution Measurement Systems, Volume II, Ambient Air Quality Measurement Program (EPA-454/B-17-001, January 2017)", located at http://www.epa.gov/amtic/ambient-air-monitoring-

CAA-02-2021-1462

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2279 of 2637
2279
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-2   Filed: 07/12/21   Page 7 of 9

quality-assurance#documents, 40 CFR Part 58, Appendix A, and any specified procedures in the manufacturer's maintenance manual for the units used to monitor $SO_2$ and $H_2S$.

6.  Limetree shall be responsible for all operation and maintenance associated with the $SO_2/H_2S$ monitors. Maintenance shall include, at a minimum, the replacement of any equipment and cleaning on a schedule specified in the manufacturer's maintenance manual and the EPA requirements as specified in the items above.

7.  All monitoring shall take place for as long as the refinery operations remain in service.

8.  Limetree shall re-install a meteorological tower at the Facility within thirty (30) days of the date of this Information Request and shall operate and maintain it. At a minimum, the meteorological tower must be comprised of instrumentation that continuously measures and records wind speed and wind direction at one-hour average intervals throughout the entire ambient monitoring period. Limetree shall correlate 1-hr ambient $SO_2/H_2S$ measurements with wind speed and wind direction data to determine source direction and the effects of wind speed on $SO_2/H_2S$ concentrations. The meteorological tower must also include calibrated ambient temperature and pressure instrumentation for purposes of determining corrected (actual) $SO_2/H_2S$ concentrations as recorded by the monitors. Limetree shall maintain and submit reports and records in accordance with the reporting requirements in this Information Request.

9.  With respect to the meteorological tower, Limetree shall follow the "Quality Assurance Handbook for Air Pollution Measurement Systems Volume IV: Meteorological Measurements Version 2.0 (Final)" (EPA -454/DB-068-0012), located at https://www.epa.gov/sites/production/files/2020-10/documents/volume_iv_meteorological_measurements.pdf, and the "Meteorological Monitoring Guidance for Regulatory Modeling Applications" (EPA-454/R-99-005), located at https://www.epa.gov/sites/production/files/2020-10/documents/mmgrma_0.pdf.

10. The internal clocks of all $SO_2/H_2S$ analyzers, data loggers, and the wind speed and wind direction data logger shall be synchronized to within 60 seconds of each other (local time and not adjusted for Daylight Savings Time) and shall be checked against a calibrated reference clock at least once every thirty (30) days. Instrument clocks that are not within 60 seconds from the reference clock shall be reset to within 60 seconds of the reference clock. Each of these inconsistencies and each reset time shall be noted in the study log.

11. Limetree shall be responsible for all operation and maintenance associated with the meteorological tower. Maintenance shall include, at a minimum, the replacement of any equipment and cleaning on a schedule specified in the manufacturer's maintenance manual.

12. Within 30 days of EPA approval of the Limetree Monitoring Plan, Limetree shall submit a Quality Assurance Project Plan (QAPP) to the EPA. The guidance document for writing a QAPP is "U.S. EPA Guidance for Quality Assurance Project Plans," EPA QA/G-S, EPA/600/R-02/009 - December 2002. The guidance is available at https://www.epa.gov/qualitv/guidance-preparing-qualitv-assurance-proiect-plan. Any measures identified by this Information Request should be incorporated into the QAPP.

13. Limetree shall provide the EPA and VIDPNR access to the monitor sites and expeditiously respond to any inquiries from the EPA and/or VIDPNR regarding monitor siting, operations, or maintenance.

CAA-02-2021-1462

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2280 of 2637
2280
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-2   Filed: 07/12/21   Page 8 of 9

In the event that an EPA and/or VIDPNR inspector or auditor identifies problems, Limetree shall take appropriate corrective actions.

14. Limetree shall keep a daily log and monthly reports (Calibration/Maintenance Reports) of the following information:
   a. Each site visit and operator activities at the monitors;
   b. Any monitoring system downtime (date, time, duration, and reason) along with any corrective actions taken; and
   c. Any calibration data provided by the manufacturer or performed by Limetree.

15. EPA will provide additional written instructions to Limetree regarding the reporting, submittal, uploading, and posting of data and reports gathered or compiled pursuant to this Information Request, and Limetree shall comply with those instructions.

16. Limetree shall retain all records related to this Information Request for as long as the refinery operations remain in service.

CAA-02-2021-1462

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2281 of 2637
2281
Case: 1:21-cv-00264-WAL-GWC   Document #: 2-2   Filed: 07/12/21   Page 9 of 9

**ATTACHMENT 1 TO ENCLOSURE 1**

**CERTIFICATION OF RESPONSE**

State/Territory of _____:

County of _____:

     I certify, under penalty of law, that I have personally examined and am familiar with the information submitted in response to the Information Request and all documents submitted with this response, and that based on my inquiry of those individuals immediately responsible for obtaining the information, I believe that the submitted information is true, accurate, and complete, and that all documents submitted with this response are complete and authentic unless otherwise indicated. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment. I am also aware that for one year from the date of the Information Request, I am under an obligation to supplement my response to the Information Request if any additional information relevant to the matters should become known or available to me.

_____
NAME (print or type)

_____
TITLE (print or type)

_____
SIGNATURE

Sworn to before me this ___ day of _____, 2021

_____
Notary Public

CAA-02-2021-1462

# EXHIBIT 4

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2283 of 2637
2283
Case 21-32351   Document 550   Filed in TXSB on 09/07/21   Page 1 of 40

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| LIMETREE BAY SERVICES, LLC, *et al.*,[1] | CASE NO.: 21-32351 |
| Debtors. | (Jointly Administered) |

## DISCLAIMER REGARDING DEBTORS' SCHEDULES AND SOFA

### General Disclaimer

1.      The Schedules and the SOFA are unaudited and subject to potential adjustment.  In preparing the Schedules and the SOFA, the CRO and his professionals relied on financial data derived from the Debtors' books and records that was available at the time of preparation.  The CRO and his professionals have made reasonable efforts to ensure that the Schedules and the SOFA are as accurate and complete as possible under the circumstances; however, subsequent information or discovery may result in changes to the Schedules and SOFA and errors or omissions may exist.

2.      The CRO reserves all rights to amend or supplement the Schedules and SOFA from time to time, in all respects, as may be necessary or appropriate, including the right to dispute or otherwise assert offsets or defenses to any claim reflected on the Schedules and SOFA as to any amount, liability, classification, identity of debtor or to otherwise subsequently designate any claim as "disputed", "contingent", or "unliquidated". Furthermore, nothing

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC.(1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2284 of 2637
2284
Case 21-32351   Document 550   Filed in TXSB on 09/07/21   Page 2 of 40

contained in the Schedules and SOFA shall constitute a waiver of any of the CRO's rights or

an admission with respect to these chapter 11 cases, including any issues involving objections

to claims, substantive consolidation, defenses, affirmative claims against third parties or rights

against third parties, other issues that typically arise under the Bankruptcy Code.

## Notes on Schedules of Assets and Liabilities

## Method of Valuation

3.      Unless otherwise noted, the carrying value on the Debtors' books and records

(net book value) as of the Petition Date, rather than the current market values, of the Debtors'

interest in the property and of the Debtors' liabilities, is reflected on the Debtors' Schedules and

SOFA.  The net book value may not correspond to market value, or liquidation value, of which

may be either higher or lower.

Dated: September 7, 2021                **BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
So. Dist. Fed ID 903144
**Jimmy D. Parrish, Esq.**
So. Dist. Fed ID 2687598
200 S. Orange Avenue
Suite 2300
Orlando, FL 32801
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
E-mail: egreen@bakerlaw.com
E-mail: jparrish@bakerlaw.com

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2285 of 2637
2285
Case 21-32351   Document 550   Filed in TXSB on 09/07/21   Page 3 of 40

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com
*(Admitted Pro Hac Vice)*

*Proposed Counsel for the Debtors and Debtors in Possession*

**Fill in this information to identify the case:**

Debtor name __**Limetree Bay Refining Marketing, LLC**__

United States Bankruptcy Court for the: __SOUTHERN DISTRICT OF TEXAS__

Case number (if known) __**21-32356**__

☐ Check if this is an
  amended filing

## Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals                    **12/15**

| Part 1: | **Summary of Assets** |
|---|---|

1.   ***Schedule A/B: Assets-Real and Personal Property*** (Official Form 206A/B)

  **1a. Real property:**
  Copy line 88 from *Schedule A/B*............................................................................   $ _____0.00_

  **1b. Total personal property:**
  Copy line 91A from *Schedule A/B*........................................................................   $ ____118,229,162.72_

  **1c. Total of all property:**
  Copy line 92 from *Schedule A/B*............................................................................   $ ____118,229,162.72_

| Part 2: | **Summary of Liabilities** |
|---|---|

2.   ***Schedule D: Creditors Who Have Claims Secured by Property*** (Official Form 206D)
  Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*....................................   $ __1,056,353,788.97_

3.   ***Schedule E/F: Creditors Who Have Unsecured Claims*** (Official Form 206E/F)

  **3a. Total claim amounts of priority unsecured claims:**
  Copy the total claims from Part 1 from line 5a of *Schedule E/F*............................................................   $ _____0.00_

  **3b. Total amount of claims of nonpriority amount of unsecured claims:**
  Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*...............................................   +$ ____198,765,709.12_

4.   Total liabilities ...............................................................................................
  Lines 2 + 3a + 3b

  $ __1,255,119,498.09__

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2287 of 2637
2287
Case 21-32351   Document 550   Filed in TXSB on 09/07/21   Page 5 of 40

**Fill in this information to identify the case:**

Debtor name __**Limetree Bay Refining Marketing, LLC**__

United States Bankruptcy Court for the: __SOUTHERN DISTRICT OF TEXAS__

Case number (if known) __**21-32356**__

☐ Check if this is an amended filing

## Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property          12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
| --- | --- |

1. **Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
■ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | | | Current value of debtor's interest |
| --- | --- | --- | --- |

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
| --- | --- | --- | --- | --- |
| 3.1. | **Deutsche Bank** | **Revenue Account** | **9721** | **$1,049,979.71** |
| 3.2. | **Deutsche Bank** | **O&M Operating Account** | **9722** | **$1.49** |
| 3.3. | **Deutsche Bank** | **Reinvestment & Repair Account** | **9723** | **$0.00** |
| 3.4. | **Deutsche Bank** | **Tolling Agreement Payment Account** | **9724** | **$0.00** |
| 3.5. | **Deutsche Bank** | **Capex Reserve Account** | **9725** | **$0.00** |
| 3.6. | **Deutsche Bank** | **Turn-Around Reserve Account** | **9726** | **$0.00** |
| 3.7. | **Deutsche Bank** | **Tolling Agreement Payment Sub-Account** | **9727** | **$0.00** |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

| Debtor | **Limetree Bay Refining Marketing, LLC** | | Case number *(if known)* **21-32356** |
|---|---|---|---|
| | Name | | |

| | | Gross Margin | | |
|---|---|---|---|---|
| 3.8. | **Deutsche Bank** | **Sub-Account** | **9728** | **$0.00** |

| 3.9. | **Oriental Bank** | **Checking Account** | **0986** | **$119,310.57** |
|---|---|---|---|---|

4. **Other cash equivalents** *(Identify all)*

5. **Total of Part 1.**

   Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

   **$1,169,291.77**

| Part 2: | **Deposits and Prepayments** |
|---|---|

6. **Does the debtor have any deposits or prepayments?**

☐ No.  Go to Part 3.
☑ Yes Fill in the information below.

7. **Deposits, including security deposits and utility deposits**
   Description, including name of holder of deposit

8. **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**
   Description, including name of holder of prepayment

| 8.1. | **Pre-Paid Insurance** | **$647,499.99** |
|---|---|---|

| 8.2. | **Pre-Paid Sundry** | **$162,083.17** |
|---|---|---|

| 8.3. | **Advances on Intermediation Agreement with J. Aron** | **$48,582,646.70** |
|---|---|---|

9. **Total of Part 2.**

   Add lines 7 through 8. Copy the total to line 81.

   **$49,392,229.86**

| Part 3: | **Accounts receivable** |
|---|---|

10. **Does the debtor have any accounts receivable?**

☐ No.  Go to Part 4.
☑ Yes Fill in the information below.

11. **Accounts receivable**

| 11a. 90 days old or less: | **10,548,277.11** | - | **0.00** | = .... | **$10,548,277.11** |
|---|---|---|---|---|---|
| | face amount | | doubtful or uncollectible accounts | | |

| 11b. Over 90 days old: | **20,872,917.89** | - | **0.00** | = .... | **$20,872,917.89** |
|---|---|---|---|---|---|
| | face amount | | doubtful or uncollectible accounts | | |

---

Official Form 206A/B                 Schedule A/B Assets - Real and Personal Property                 page 2

| Debtor | **Limetree Bay Refining Marketing, LLC** | Case number *(If known)* | **21-32356** |
|---|---|---|---|
| | Name | | |

| 12. | **Total of Part 3.** | | $31,421,195.00 |
|---|---|---|---|
| | Current value on lines 11a + 11b = line 12.  Copy the total to line 82. | | |

| **Part 4:** | **Investments** |
|---|---|

**13. Does the debtor own any investments?**

■ No.  Go to Part 5.
☐ Yes Fill in the information below.

| **Part 5:** | **Inventory, excluding agriculture assets** |
|---|---|

**18. Does the debtor own any inventory (excluding agriculture assets)?**

☐ No.  Go to Part 6.
■ Yes Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 19. | **Raw materials** | | | |
| 20. | **Work in progress** | | | |
| 21. | **Finished goods, including goods held for resale** | | | |
| 22. | **Other inventory or supplies Inventory (see attached list)** | | $1,707,323.09 | | $1,707,323.09 |

| 23. | **Total of Part 5.** | | $1,707,323.09 |
|---|---|---|---|
| | Add lines 19 through 22.  Copy the total to line 84. | | |

**24. Is any of the property listed in Part 5 perishable?**

■ No
☐ Yes

**25. Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

■ No
☐ Yes. Book value _____ Valuation method _____ Current Value _____

**26. Has any of the property listed in Part 5 been appraised by a professional within the last year?**

■ No
☐ Yes

| **Part 6:** | **Farming and fishing-related assets (other than titled motor vehicles and land)** |
|---|---|

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No.  Go to Part 7.
☐ Yes Fill in the information below.

| **Part 7:** | **Office furniture, fixtures, and equipment; and collectibles** |
|---|---|

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

■ No.  Go to Part 8.
☐ Yes Fill in the information below.

| **Part 8:** | **Machinery, equipment, and vehicles** |
|---|---|

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

Debtor   **Limetree Bay Refining Marketing, LLC**                    Case number *(If known)*  **21-32356**
         <sub>Name</sub>

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

  ■ No.  Go to Part 9.
  ☐ Yes Fill in the information below.

| Part 9: | Real property |
| --- | --- |

**54. Does the debtor own or lease any real property?**

  ■ No.  Go to Part 10.
  ☐ Yes Fill in the information below.

| Part 10: | Intangibles and intellectual property |
| --- | --- |

**59. Does the debtor have any interests in intangibles or intellectual property?**

  ■ No.  Go to Part 11.
  ☐ Yes Fill in the information below.

| Part 11: | All other assets |
| --- | --- |

**70. Does the debtor own any other assets that have not yet been reported on this form?**
  Include all interests in executory contracts and unexpired leases not previously reported on this form.

  ☐ No.  Go to Part 12.
  ■ Yes Fill in the information below.

|  | | Current value of debtor's interest |
| --- | --- | --- |
| 71. | **Notes receivable**<br>Description (include name of obligor) | |
| 72. | **Tax refunds and unused net operating losses (NOLs)**<br>Description (for example, federal, state, local) | |
| 73. | **Interests in insurance policies or annuities** | |
| 74. | **Causes of action against third parties (whether or not a lawsuit has been filed)** | |
| 75. | **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims** | |
| 76. | **Trusts, equitable or future interests in property** | |
| 77. | **Other property of any kind not already listed** *Examples:* Season tickets, country club membership | |
|  | **Catalyst - Precious Metal used in the refining process** | **$20,000,000.00** |
|  | **BP Oil - CMS Invoices** | **$14,539,123.00** |
|  | **Storage Tank Lease Under Terminal Services Agreement** | **Unknown** |
| 78. | **Total of Part 11.**<br>Add lines 71 through 77. Copy the total to line 90. | $34,539,123.00 |

Official Form 206A/B                    Schedule A/B Assets - Real and Personal Property                    page 4

Debtor    **Limetree Bay Refining Marketing, LLC**                    Case number *(If known)*  **21-32356**
          <sub>Name</sub>

79.    **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

       ■ No
       ☐ Yes

Debtor    **Limetree Bay Refining Marketing, LLC**                    Case number *(if known)*  **21-32356**
          Name

| Part 12: | Summary |

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | **$1,169,291.77** | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | **$49,392,229.86** | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | **$31,421,195.00** | |
| 83. **Investments.** *Copy line 17, Part 4.* | **$0.00** | |
| 84. **Inventory.** *Copy line 23, Part 5.* | **$1,707,323.09** | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | **$0.00** | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | **$0.00** | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | **$0.00** | |
| 88. **Real property.** *Copy line 56, Part 9*.....................................................> | | **$0.00** |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | **$0.00** | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + **$34,539,123.00** | |
| 91. **Total.** Add lines 80 through 90 for each column | **$118,229,162.72** | + 91b. **$0.00** |
| 92. **Total of all property on Schedule A/B**. Add lines 91a+91b=92 | | **$118,229,162.72** |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2293 of 2637
2293
Case 21-32351   Document 550   Filed in TXSB on 09/07/21   Page 11 of 40

**Limetree Bay Refining Marketing, LLC**
**Case No.: 21-32356**
**Detail of Inventory**

| Entity | Description | Amount |
|--------|-------------|--------|
| LBRM | LPG | 1,229,057.39 |
| LBRM | ULSD - Line Fill | 478,265.70 |
| | | $ 1,707,323.09 |

**Fill in this information to identify the case:**

Debtor name    **Limetree Bay Refining Marketing, LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF TEXAS

Case number (if known)    **21-32356**

☐ Check if this is an amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property    12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

   ☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

   ☐ Yes. Fill in all of the information below.

**Part 1:**    **List Creditors Who Have Secured Claims**

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>Amount of claim<br><br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim |
|---|---|---|---|
| **2.1**   **Goldman Sachs Bank USA**<br>Creditor's Name<br><br><br>**as Administrative Agent**<br>**200 West Street**<br>**New York, NY 10282**<br>Creditor's mailing address<br><br><br><br>Creditor's email address, if known<br><br>**Date debt was incurred**<br><br>**Last 4 digits of account number**<br><br>**Do multiple creditors have an interest in the same property?**<br>■ No<br>☐ Yes. Specify each creditor, including this creditor and its relative priority. | **Describe debtor's property that is subject to a lien**<br>**Certain accounts, chattel paper, deposit accounts, documents, equipment, fixtures, general intangibles, instruments, intellectual property, investment property, letters of credit, commercial tort claims...of any Senior Lenders Collateral**<br><br>**Describe the lien**<br>**Revolver Debt**<br>**Is the creditor an insider or related party?**<br>■ No<br>☐ Yes<br>**Is anyone else liable on this claim?**<br>☐ No<br>■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)<br><br>**As of the petition filing date, the claim is:**<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$50,320,833.33** | **Unknown** |
| **2.2**   **J. Aron & Company LLC**<br>Creditor's Name<br><br><br>**200 West Street**<br>**New York, NY 10282**<br>Creditor's mailing address<br><br><br>Creditor's email address, if known<br><br>**Date debt was incurred** | **Describe debtor's property that is subject to a lien**<br>**Accounts, accounts receivable, hydrocarbons and other inventory, deposit accounts, instruments, chattel paper, documents, tax refunds, commercial tort claims, and replacement proceeds of the J. Aron Collateral**<br><br>**Describe the lien**<br>**Estimate Safe Harbor Agreement**<br>**Is the creditor an insider or related party?**<br>■ No<br>☐ Yes<br>**Is anyone else liable on this claim?**<br>☐ No | **$221,952,054.00** | **Unknown** |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

| Debtor | **Limetree Bay Refining Marketing, LLC** | Case number (if known) | **21-32356** |
|---|---|---|---|
| | Name | | |

☑ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** Check all that apply |
|---|---|
| ☑ No | ☑ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☑ Unliquidated |
| | ☐ Disputed |

---

| 2.3 | **J. Aron & Company LLC** | Describe debtor's property that is subject to a lien | **$25,087,659.68** | Unknown |
|---|---|---|---|---|
| | Creditor's Name | **Accounts, accounts receivable, hydrocarbons and other inventory, deposit accounts, instruments, chattel paper, documents, tax refunds, commercial tort claims, and replacement proceeds of the J. Aron Collateral** | | |

**200 West Street**
**New York, NY 10282**

Creditor's mailing address

Describe the lien

**Term Debt**

**Is the creditor an insider or related party?**

☑ No

Creditor's email address, if known

☐ Yes

**Is anyone else liable on this claim?**

**Date debt was incurred**

☐ No

**Last 4 digits of account number**

☑ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** Check all that apply |
|---|---|
| ☑ No | ☐ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated |
| | ☐ Disputed |

---

| 2.4 | **Wilmington Trust, N.A.** | Describe debtor's property that is subject to a lien | **$758,993,241.96** | Unknown |
|---|---|---|---|---|
| | Creditor's Name | **Certain accounts, chattel paper, deposit accounts, documents, equipment, fixtures, general intangibles, instruments, intellectual property, investment property, letters of credit, commercial tort claims...of any Senior Lenders Collateral** | | |

**1100 N. Market Street**
**Wilmington, DE 19890**

Creditor's mailing address

Describe the lien

**Term Debt Guarantee**

**Is the creditor an insider or related party?**

☑ No

Creditor's email address, if known

☐ Yes

**Is anyone else liable on this claim?**

**Date debt was incurred**

☐ No

**Last 4 digits of account number**

☑ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** Check all that apply |
|---|---|
| ☑ No | ☑ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☑ Unliquidated |
| | ☐ Disputed |

---

| Debtor | **Limetree Bay Refining Marketing, LLC** | Case number (if known) | **21-32356** |
|---|---|---|---|
| | Name | | |

| 3. | Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any. | **$1,056,353,7 88.97** |
|---|---|---|

**Part 2:   List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name  and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|

**Fill in this information to identify the case:**

Debtor name **Limetree Bay Refining Marketing, LLC**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF TEXAS

Case number (if known)   **21-32356**

☐ Check if this is an amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims          12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

### Part 1:    List All Creditors with PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

   ☑ No. Go to Part 2.

   ☐ Yes. Go to line 2.

### Part 2:    List All Creditors with NONPRIORITY Unsecured Claims

3. **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

|  | | Amount of claim |
|---|---|---|

| 3.1 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$468,518.38** |
|---|---|---|---|
| | **AFCO Credt Insurance**<br>**4501 College Blvd**<br>**Suite 320**<br>**Leawood, KS 66211** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | **Basis for the claim:** __accrued insurance__ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ☑ No  ☐ Yes | |

| 3.2 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$162,083.17** |
|---|---|---|---|
| | **Argus Media, Inc**<br>**2929 Allen Parkway**<br>**Suite 700**<br>**Houston, TX 77019** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | **Basis for the claim:** __Trade Debt__ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ☑ No  ☐ Yes | |

| 3.3 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$12,561,991.38** |
|---|---|---|---|
| | **BP Oil Supply**<br>**501 Westlake Park Blvd**<br>**Houston, TX 77079** | ☑ Contingent<br>☑ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | **Basis for the claim:** __Trade Debt__ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ☑ No  ☐ Yes | |

| 3.4 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$49,280,992.12** |
|---|---|---|---|
| | **BP Products North America Inc**<br>**Attn: Head of Marketing/Origination**<br>**30 S. Wacker Drive**<br>**Suite 900**<br>**Chicago, IL 60606** | ☑ Contingent<br>☑ Unliquidated<br>☑ Disputed | |
| | Date(s) debt was incurred __ | **Basis for the claim:** __voucher accruals__ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ☑ No  ☐ Yes | |

| Debtor | **Limetree Bay Refining Marketing, LLC** | Case number *(if known)* | **21-32356** |
|---|---|---|---|
| | Name | | |

| 3.5 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $7,825,625.00 |
|---|---|---|---|

**BP Products North America Inc**
**Attn: Head of Marketing/Origination**
**30 S. Wacker Drive**
**Suite 900**
**Chicago, IL 60606**

■ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred __

Basis for the claim: __other AP__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.6 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $1,838,548.54 |
|---|---|---|---|

**BP Products North America Inc**
**Attn: Head of Marketing/Origination**
**30 S. Wacker Drive**
**Suite 900**
**Chicago, IL 60606**

■ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred __

Basis for the claim: __BP Oil AP__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.7 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $2,016,315.42 |
|---|---|---|---|

**Limetree Bay Refining, LLC**
**#1 Estate Hope**
**Christiansted, VI 00820-5652**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: __Intercompany Debt__

Last 4 digits of account number __

Is the claim subject to offset? ☐ No ■ Yes

---

| 3.8 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $105,962,726.20 |
|---|---|---|---|

**Limetree Bay Refining, LLC**
**1 Estate Hope**
**Christiansted, VI 00820**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: __Intercompany Debt__

Last 4 digits of account number __

Is the claim subject to offset? ☐ No ■ Yes

---

| 3.9 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $17,155,091.01 |
|---|---|---|---|

**Limetree Bay Terminals, LLC**
**#1 Estate Hope**
**Christiansted, VI 00820-5652**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred __

Basis for the claim: __Intercompany Debt__

Last 4 digits of account number __

Is the claim subject to offset? ☐ No ■ Yes

---

| 3.10 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $100,950.00 |
|---|---|---|---|

**Limetree Bay Terminals, LLC**
**#1 Estate Hope**
**Christiansted, VI 00820-5652**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred __

Basis for the claim: __Intercompany Debt__

Last 4 digits of account number __

Is the claim subject to offset? ☐ No ■ Yes

---

| 3.11 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $15,555.22 |
|---|---|---|---|

**Marjorie Rawls Roberts, P.C.**
**PO Box 6347**
**St. Thomas, VI 00804-6347**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: __Legal Fees__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Limetree Bay Refining Marketing, LLC** | | Case number (if known) | **21-32356** |
|---|---|---|---|---|
| | Name | | | |

| 3.12 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$331,885.03** |
|---|---|---|---|
| | **Quinn Emanuel Urquhart**<br>**865 S. Figueroa St.**<br>**10th Floor**<br>**Los Angeles, CA 90017** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Legal Fees** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.13 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$1,045,427.65** |
|---|---|---|---|
| | **Stroock & Stroock & Lavan LLP**<br>**180 Maiden Lane**<br>**New York, NY 10038-4982** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Legal Fees** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| **Part 3:** | **List Others to Be Notified About Unsecured Claims** |
|---|---|

4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

**If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.**

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|

| **Part 4:** | **Total Amounts of the Priority and Nonpriority Unsecured Claims** |
|---|---|

5. Add the amounts of priority and nonpriority unsecured claims.

| | | Total of claim amounts |
|---|---|---|
| **5a. Total claims from Part 1** | 5a. $ | **0.00** |
| **5b. Total claims from Part 2** | 5b. + $ | **198,765,709.12** |
| **5c. Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | 5c. $ | **198,765,709.12** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2300 of 2637
Case 21-32351   Document 550   Filed in TXSB on 09/07/21   Page 18 of 40

2300

**Fill in this information to identify the case:**

Debtor name     **Limetree Bay Refining Marketing, LLC**

United States Bankruptcy Court for the:     SOUTHERN DISTRICT OF TEXAS

Case number (if known)     **21-32356**

☐ Check if this is an
   amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases                 12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.  **Does the debtor have any executory contracts or unexpired leases?**
    ☐ No. Check this box and file this form with the debtor's other schedules.  There is nothing else to report on this form.
    ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal   Property* (Official Form 206A/B).

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| **2.1.** State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | **Standard Fire Insurance Policy No. 026 001001324-01-000000 expires 9/1/21**<br><br> | **AIG Insurance Company - Puerto Rico Marsh & Sterling 1336 Beljen Road Suite 300, Charlotte Amalie St Thomas, VI 00802** |
| **2.2.** State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | **Excess Liability Insurance Policy No. NAMBM2100005**<br><br>expires 6/1/22 | **Arcadia/Ark/Helix Lockton Companies, LLC - Houston 3657 Briarpark Drive Suite 700 Houston, TX 77042** |
| **2.3.** State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | **Combined Property Insurance Policy B0509ENGAO2000588**<br><br>expires 12/1/21 | **Atrium Underwriters Ltd Marsh USA 1166 Avenue of the Americs New York, NY 10036-2774** |
| **2.4.** State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | **Combined Property Insurance Policy 42-PRP-312023-01**<br><br> | **Berkshire Hathaway National Fire & Marine Ins Co 1314 Douglas Street Suite 1400 Omaha, NE 68102-1944** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2301 of 2637
2301
Case 21-32351   Document 550   Filed in TXSB on 09/07/21   Page 19 of 40

Debtor 1   **Limetree Bay Refining Marketing, LLC**

First Name   Middle Name   Last Name

Case number (*if known*)   **21-32356**



## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.5. | State what the contract or lease is for and the nature of the debtor's interest | **Feedstock Supply Agreement;, Amendment No. 1 to Feedstock Supply Agreement expires 11/15/25** | |
|---|---|---|---|
| | State the term remaining | | **BP Products North America Inc. Rhonda R. Trotter Arnold & Porter Kaye Scholer LLP 777 S. Figueroa St., 44th Floor Los Angeles, CA 90017** |
| | List the contract number of any government contract | | |

| 2.6. | State what the contract or lease is for and the nature of the debtor's interest | **Product Offtake Agreement, Amendment No. 1, Amendment #2 expires 11/15/25** | |
|---|---|---|---|
| | State the term remaining | | **BP Products North America Inc. Rhonda R. Trotter Arnold & Porter Kaye Scholer LLP 777 S. Figueroa St., 44th Floor Los Angeles, CA 90017** |
| | List the contract number of any government contract | | |

| 2.7. | State what the contract or lease is for and the nature of the debtor's interest | **Amended and Restated Tolling Agreement** | |
|---|---|---|---|
| | State the term remaining | | **BP Products North America Inc. Rhonda R. Trotter Arnold & Porter Kaye Scholer LLP 777 S. Figueroa St., 44th Floor Los Angeles, CA 90017** |
| | List the contract number of any government contract | | |

| 2.8. | State what the contract or lease is for and the nature of the debtor's interest | **Intermediation Facilitation Agreement** | |
|---|---|---|---|
| | State the term remaining | | **BP Products North America Inc. Rhonda R. Trotter Arnold & Porter Kaye Scholer LLP 777 S. Figueroa St., 44th Floor Los Angeles, CA 90017** |
| | List the contract number of any government contract | | |

| 2.9. | State what the contract or lease is for and the nature of the debtor's interest | **Limited Assignment Agreement** | |
|---|---|---|---|
| | State the term remaining | | **BP Products North America Inc. Rhonda R. Trotter Arnold & Porter Kaye Scholer LLP 777 S. Figueroa St., 44th Floor Los Angeles, CA 90017** |
| | List the contract number of any government contract | | |

| 2.10. | State what the contract or lease is for and the nature of the debtor's interest | **BP-LBRM Side Agreement** | |
|---|---|---|---|
| | State the term remaining | | **BP Products North America Inc. Rhonda R. Trotter Arnold & Porter Kaye Scholer LLP 777 S. Figueroa St., 44th Floor Los Angeles, CA 90017** |

Debtor 1 **Limetree Bay Refining Marketing, LLC**                                           Case number (*if known*)   **21-32356**
First Name                Middle Name                Last Name

## Additional Page if You Have More Contracts or Leases

**2. List all contracts and unexpired leases**

**State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease**

List the contract number of any government contract

| | | |
|---|---|---|
| 2.11. | State what the contract or lease is for and the nature of the debtor's interest | **Omnibus Amendment to BP Agreements** | |
| | State the term remaining | | **BP Products North America Inc.** |
| | | | **Rhonda R. Trotter** |
| | List the contract number of any government contract | | **Arnold & Porter Kaye Scholer LLP** |
| | | | **777 S. Figueroa St., 44th Floor** |
| | | | **Los Angeles, CA 90017** |

| | | |
|---|---|---|
| 2.12. | State what the contract or lease is for and the nature of the debtor's interest | **Policy # B0713ENCAS2000011** | |
| | State the term remaining | | **Chaucer/Apollo** |
| | | | **Lockton Companies, LLC - Houston** |
| | List the contract number of any government contract | | **3657 Briarpark Drive** |
| | | | **Suite 700** |
| | | | **Houston, TX 77042** |

| | | |
|---|---|---|
| 2.13. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy B0509ENGAO2000069** | |
| | State the term remaining | **expires 12/1/21** | **Convex Insurance UK Limited** |
| | | | **Marsh USA** |
| | List the contract number of any government contract | | **1166 Avenue of the Americas** |
| | | | **New York, NY 10036-2774** |

| | | |
|---|---|---|
| 2.14. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy B0509ENGAO2000563** | |
| | State the term remaining | **expires 12/1/21** | **Elseco Limited** |
| | | | **Marsh USA** |
| | List the contract number of any government contract | | **1166 Avenue of the Americas** |
| | | | **New York, NY 10036-2774** |

| | | |
|---|---|---|
| 2.15. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy B0509ENGAO2000613** | |
| | State the term remaining | **expires 12/1/21** | **Fidelis Underwriting Ltd.** |
| | | | **Marsh USA** |
| | List the contract number of any government contract | | **1166 Avenue of the Americas** |
| | | | **New York, NY 10036-2774** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2303 of 2637
2303
Case 21-32351   Document 550   Filed in TXSB on 09/07/21   Page 21 of 40

| Debtor 1 | Limetree Bay Refining Marketing, LLC | | | Case number (*if known*) | 21-32356 |
| --- | --- | --- | --- | --- | --- |
| | First Name | Middle Name | Last Name | | |

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
| --- | --- |

| 2.16. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy ENGAO2000069** | |
| --- | --- | --- | --- |
| | State the term remaining | expires 12/1/21 | **Great Lakes**<br>**Marsh USA**<br>**1166 Avenue of the Americas**<br>**New York, NY 10036-2774** |
| | List the contract number of any government contract | | |

| 2.17. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy B0509ENGAO2000576** | |
| --- | --- | --- | --- |
| | State the term remaining | expires 12/1/21 | **Guardian General Insurance Limited**<br>**Newton Centre**<br>**30-36 Maraval Road**<br>**Newton Port of Spain 190133**<br>**TRINDAD AND TOBAGO** |
| | List the contract number of any government contract | | |

| 2.18. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy ENGAO2000069** | |
| --- | --- | --- | --- |
| | State the term remaining | expires 12/1/21 | **Hannover Re/HDI Global Specialty SE**<br>**Marsh USA**<br>**1166 Avenue of the Americas**<br>**New York, NY 10036-2774** |
| | List the contract number of any government contract | | |

| 2.19. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy ENGAO2000069** | |
| --- | --- | --- | --- |
| | State the term remaining | expires 12/1/21 | **Helvetia Swiss Insurance Co**<br>**in Liechenstein Ltd**<br>**Marsh USA**<br>**1166 Avenue of the Americas**<br>**New York, NY 10036-2774** |
| | List the contract number of any government contract | | |

| 2.20. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy ENGAO2000069** | |
| --- | --- | --- | --- |
| | State the term remaining | expires 9/1/21 | **Houston Specialty Insurance Company**<br>**Marsh USA**<br>**1166 Avenue of the Americas**<br>**New York, NY 10036-2774** |
| | List the contract number of any government contract | | |

| 2.21. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy B0509ENGAO2000563** | |
| --- | --- | --- | --- |
| | State the term remaining | expires 12/1/21 | **Insurance General Insurance Co Ltd.**<br>**Marsh USA**<br>**1166 Avenue of the Americas**<br>**New York, NY 10036-2774** |
| | List the contract number of any | | |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                                Best Case Bankruptcy

Debtor 1  **Limetree Bay Refining Marketing, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)   **21-32356**

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

|  |  |  |
|---|---|---|
| | government contract | |
| 2.22. | State what the contract or lease is for and for the nature of the debtor's interest | **Monetization Master Agreement** |
| | State the term remaining | **expires 12/31/2021** |
| | List the contract number of any government contract | **J. Aron & Company LLC** **c/o Robin Spigel** **Baker Botts, LLC** **30 Rockefeller Plaza** **New York, NY 10112-4498** |
| 2.23. | State what the contract or lease is for and for the nature of the debtor's interest | **Inventory Sales Agreement** |
| | State the term remaining | |
| | List the contract number of any government contract | **J. Aron & Company LLC** **c/o Robin Spigel** **Baker Botts, LLC** **30 Rockefeller Plaza** **New York, NY 10112-4498** |
| 2.24. | State what the contract or lease is for and for the nature of the debtor's interest | **Supply and Offtake Agreement** |
| | State the term remaining | |
| | List the contract number of any government contract | **J. Aron & Company LLC** **c/o Robin Spigel** **Baker Botts, LLC** **30 Rockefeller Plaza** **New York, NY 10112-4498** |
| 2.25. | State what the contract or lease is for and for the nature of the debtor's interest | **Financing Agreement** |
| | State the term remaining | |
| | List the contract number of any government contract | **J. Aron & Company LLC** **c/o Robin Spigel** **Baker Botts, LLC** **30 Rockefeller Plaza** **New York, NY 10112-4498** |
| 2.26. | State what the contract or lease is for and for the nature of the debtor's interest | **Marketing and Sales Agreement** |
| | State the term remaining | |
| | List the contract number of any government contract | **J. Aron & Company LLC** **c/o Robin Spigel** **Baker Botts, LLC** **30 Rockefeller Plaza** **New York, NY 10112-4498** |
| 2.27. | State what the contract or lease is for and for the nature of the debtor's interest | **Intermediation Facilitation Agreement** | **J. Aron & Company LLC** **c/o Robin Spigel** **Baker Botts, LLC** **30 Rockefeller Plaza** **New York, NY 10112-4498** |

Official Form 206G          Schedule G: Executory Contracts and Unexpired Leases          Page 5 of 9

| Debtor 1 | **Limetree Bay Refining Marketing, LLC** | | Case number (*if known*) | **21-32356** |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

### Additional Page if You Have More Contracts or Leases

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|
| State the term remaining | |
| List the contract number of any government contract | _____ |

| 2.28. | State what the contract or lease is for and the nature of the debtor's interest | **Terminal Services Agreement (included locations) (same as 2.40)** | |
|---|---|---|---|
| | State the term remaining | | **J. Aron & Company LLC** |
| | List the contract number of any government contract | | **c/o Robin Spigel** |
| | | | **Baker Botts, LLC** |
| | | | **30 Rockefeller Plaza** |
| | | | **New York, NY 10112-4498** |

| 2.29. | State what the contract or lease is for and the nature of the debtor's interest | **Limited Assignment Agreement** | |
|---|---|---|---|
| | State the term remaining | | **J. Aron & Company LLC** |
| | List the contract number of any government contract | | **c/o Robin Spigel** |
| | | | **Baker Botts, LLC** |
| | | | **30 Rockefeller Plaza** |
| | | | **New York, NY 10112-4498** |

| 2.30. | State what the contract or lease is for and the nature of the debtor's interest | **Security Agreement** | |
|---|---|---|---|
| | State the term remaining | | **J. Aron & Company LLC** |
| | List the contract number of any government contract | | **c/o Robin Spigel** |
| | | | **Baker Botts, LLC** |
| | | | **30 Rockefeller Plaza** |
| | | | **New York, NY 10112-4498** |

| 2.31. | State what the contract or lease is for and the nature of the debtor's interest | **Master Buy/Sell Confirmation** | |
|---|---|---|---|
| | State the term remaining | | **J. Aron & Company LLC** |
| | List the contract number of any government contract | | **c/o Robin Spigel** |
| | | | **Baker Botts, LLC** |
| | | | **30 Rockefeller Plaza** |
| | | | **New York, NY 10112-4498** |

| 2.32. | State what the contract or lease is for and the nature of the debtor's interest | **Fee Letter** | |
|---|---|---|---|
| | State the term remaining | | **J. Aron & Company LLC** |
| | List the contract number of any government contract | | **c/o Robin Spigel** |
| | | | **Baker Botts, LLC** |
| | | | **30 Rockefeller Plaza** |
| | | | **New York, NY 10112-4498** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2306 of 2637
2306
Case 21-32351   Document 550   Filed in TXSB on 09/07/21   Page 24 of 40

Debtor 1   **Limitree Bay Refining Marketing, LLC**
First Name        Middle Name        Last Name

Case number (*if known*)   **21-32356**

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| **2.33.** State what the contract or lease is for and the nature of the debtor's interest — **Deposit Account Control Agreement** <br><br> State the term remaining <br><br> List the contract number of any government contract | **J. Aron & Company LLC** <br> **c/o Robin Spigel** <br> **Baker Botts, LLC** <br> **30 Rockefeller Plaza** <br> **New York, NY 10112-4498** |
| **2.34.** State what the contract or lease is for and the nature of the debtor's interest — **Funding Letter Agreement** <br><br> State the term remaining <br><br> List the contract number of any government contract | **J. Aron & Company LLC** <br> **c/o Robin Spigel** <br> **Baker Botts, LLC** <br> **30 Rockefeller Plaza** <br> **New York, NY 10112-4498** |
| **2.35.** State what the contract or lease is for and the nature of the debtor's interest — **Bailee's Letter (same as 2.41)** <br><br> State the term remaining <br><br> List the contract number of any government contract | **J. Aron & Company LLC** <br> **c/o Robin Spigel** <br> **Baker Botts, LLC** <br> **30 Rockefeller Plaza** <br> **New York, NY 10112-4498** |
| **2.36.** State what the contract or lease is for and the nature of the debtor's interest — **Combined Property Insurance Policy B0509ENGAO2000587** <br><br> State the term remaining — **expires 12/1/21** <br><br> List the contract number of any government contract | **Lancashire Insurance Company UK, Ltd** <br> **Marsh USA** <br> **1166 Avenue of the Americas** <br> **New York, NY 10036-2774** |
| **2.37.** State what the contract or lease is for and the nature of the debtor's interest — **Combined Property Insurance Policy LSMAEN143232A** <br><br> State the term remaining — **expires 12/1/21** <br><br> List the contract number of any government contract | **Liberty Specialty Markets Agency td** <br> **Liberty Specialty Markets** <br> **141 Front Street** <br> **Hamilton HM19** <br> **BERMUDA** |
| **2.38.** State what the contract or lease is for and the nature of the debtor's interest — **Shared Catalyst Agreement** <br><br> State the term remaining — **expires 3/2/23** <br><br> List the contract number of any | **Limetree Bay Refining, LLC** <br> **1 Estate Hope** <br> **Christiansted, VI 00820** |

Debtor 1  **Limetree Bay Refining Marketing, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)   **21-32356**



## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

|  |  |  |
|---|---|---|
|  | government contract | |
| 2.39. | State what the contract or lease is for and the nature of the debtor's interest | **Shared Services Agreement** |
|  | State the term remaining | |
|  | List the contract number of any government contract | **Limetree Bay Terminals, LLC**<br>**#1 Estate Hope**<br>**Christiansted, VI 00820-5652** |
| 2.40. | State what the contract or lease is for and the nature of the debtor's interest | **Terminal Services Agreement (not included locations) (same as 2.28)** |
|  | State the term remaining | |
|  | List the contract number of any government contract | **Limetree Bay Terminals, LLC**<br>**#1 Estate Hope**<br>**Christiansted, VI 00820-5652** |
| 2.41. | State what the contract or lease is for and the nature of the debtor's interest | **Bailee's Letter (same as 2.35)** |
|  | State the term remaining | |
|  | List the contract number of any government contract | **Limetree Bay Terminals, LLC**<br>**#1 Estate Hope**<br>**Christiansted, VI 00820-5652** |
| 2.42. | State what the contract or lease is for and the nature of the debtor's interest | **Terminal Services Agreement (included locations) (same as 2.222)** |
|  | State the term remaining | |
|  | List the contract number of any government contract | **Limetree Bay Terminals, LLC**<br>**#1 Estate Hope**<br>**Christiansted, VI 00820-5652** |
| 2.43. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy B0509ENGAO2000586** |
|  | State the term remaining | expires 12/1/21 |
|  | List the contract number of any government contract | **NOA/Lloyds of London**<br>**Marsh USA**<br>**1166 Avenue of the Americas**<br>**New York, NY 10036-2774** |
| 2.44. | State what the contract or lease is for and the nature of the debtor's interest | **Deposit Account Control Agreement** |

**Oriental Bank**
**254 Muñoz Rivera Ave.**
**San Juan, PR 00918**

Debtor 1  **Limetree Bay Refining Marketing, LLC**
_____
First Name        Middle Name        Last Name

Case number (*if known*)   **21-32356**
_____

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

|  |  |  |
|---|---|---|
| State the term remaining | | |
| List the contract number of any government contract | _____ | |

| 2.45. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property B0509ENGAO2000589** | |
|---|---|---|---|
| | State the term remaining | **expires 12/1/21** | **PartnerRe Ireland Insurance**<br>**Marsh USA**<br>**1166 Avenue of the Americas**<br>**New York, NY 10036-2774** |
| | List the contract number of any government contract | _____ | |

| 2.46. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy ENGAO2000069** | |
|---|---|---|---|
| | State the term remaining | **expires 12/1/21** | **QBE/Lloyds of London**<br>**Marsh USA**<br>**1166 Avenue of the Americas**<br>**New York, NY 10036-2774** |
| | List the contract number of any government contract | _____ | |

| 2.47. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy BO509ENGAO2000576** | |
|---|---|---|---|
| | State the term remaining | **expires 12/1/21** | **Rokstone/Guardian General Insurance**<br>**Marsh USA**<br>**1166 Avenue of the Americas**<br>**New York, NY 10036-2774** |
| | List the contract number of any government contract | _____ | |

| 2.48. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy OMP 2000425-00** | |
|---|---|---|---|
| | State the term remaining | **expires 12/1/21** | **Swiss Re/Westport Insurance Company**<br>**Westport Insurance Corporation**<br>**2 Waterside Crossing, Suite 2**<br>**Windsor, CT 06095** |
| | List the contract number of any government contract | _____ | |

| 2.49. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy BO509ENGAO2000576** | |
|---|---|---|---|
| | State the term remaining | **expires 12/1/21** | **WRB/Guardian General Insurance**<br>**Marsh USA**<br>**1166 Avenue of the Americas**<br>**New York, NY 10036-2774** |
| | List the contract number of any government contract | _____ | |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2309 of 2637
2309
Case 21-32351   Document 550   Filed in TXSB on 09/07/21   Page 27 of 40

**Fill in this information to identify the case:**

Debtor name    **Limetree Bay Refining Marketing, LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF TEXAS

Case number (if known)    **21-32356**

☐ Check if this is an amended filing

## Official Form 206H
## Schedule H: Your Codebtors

12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Do you have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

☑ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

Column 1: **Codebtor**

Column 2: **Creditor**

| | Name | Mailing Address | Name | Check all schedules that apply: |
|---|---|---|---|---|
| 2.1 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **J. Aron & Company LLC** | ☑ D   **2.2**<br>☐ E/F _____<br>☐ G _____ |
| 2.2 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **J. Aron & Company LLC** | ☑ D   **2.3**<br>☐ E/F _____<br>☐ G _____ |
| 2.3 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Goldman Sachs Bank USA** | ☑ D   **2.1**<br>☐ E/F _____<br>☐ G _____ |
| 2.4 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Wilmington Trust, N.A.** | ☑ D   **2.4**<br>☐ E/F _____<br>☐ G _____ |
| 2.5 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **J. Aron & Company LLC** | ☑ D   **2.2**<br>☐ E/F _____<br>☐ G _____ |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

| Debtor | **Limetree Bay Refining Marketing, LLC** | | Case number *(if known)* | **21-32356** |
|---|---|---|---|---|

▮  **Additional Page to List More Codebtors**

**Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.**

| | *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|---|
| 2.6 | **Limetree Bay Refining, LLC** | 1 Estate Hope Christiansted, VI 00820 | **J. Aron & Company LLC** | ▮ D  __2.3__  ☐ E/F  _____  ☐ G  _____ |
| 2.7 | **Limetree Bay Refining, LLC** | 1 Estate Hope Christiansted, VI 00820 | **Goldman Sachs Bank USA** | ▮ D  __2.1__  ☐ E/F  _____  ☐ G  _____ |
| 2.8 | **Limetree Bay Refining, LLC** | 1 Estate Hope Christiansted, VI 00820 | **Wilmington Trust, N.A.** | ▮ D  __2.4__  ☐ E/F  _____  ☐ G  _____ |
| 2.9 | **Limetree Bay Cayman II, LLC** | | **Arcadia/Ark/Helix** | ☐ D  _____  ☐ E/F  _____  ▮ G  __2.2__ |
| 2.10 | **Limetree Bay Cayman II, LLC** | | **Chaucer/Apollo** | ☐ D  _____  ☐ E/F  _____  ▮ G  __2.12__ |
| 2.11 | **Limetree Bay Cayman, LLC** | | **Arcadia/Ark/Helix** | ☐ D  _____  ☐ E/F  _____  ▮ G  __2.2__ |
| 2.12 | **Limetree Bay Cayman, LLC** | | **Chaucer/Apollo** | ☐ D  _____  ☐ E/F  _____  ▮ G  __2.12__ |
| 2.13 | **Limetree Bay Financing, LLC** | | **Arcadia/Ark/Helix** | ☐ D  _____  ☐ E/F  _____  ▮ G  __2.2__ |

Debtor  **Limetree Bay Refining Marketing, LLC**          Case number *(if known)*  **21-32356**

---

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|
| 2.14 **Limetree Bay Financing, LLC** | | **Chaucer/Apollo** | ☐ D _____<br>☐ E/F _____<br>■ G __2.12__ |
| 2.15 **Limetree Bay Refining Holdings II, LLC** | #1 Estate Hope Christiansted, VI 00820 | **Arcadia/Ark/Helix** | ☐ D _____<br>☐ E/F _____<br>■ G __2.2__ |
| 2.16 **Limetree Bay Refining Holdings II, LLC** | #1 Estate Hope Christiansted, VI 00820 | **Chaucer/Apollo** | ☐ D _____<br>☐ E/F _____<br>■ G __2.12__ |
| 2.17 **Limetree Bay Refining Holdings, LLC** | #1 Estate Hope Christiansted, VI 00820 | **Chaucer/Apollo** | ☐ D _____<br>☐ E/F _____<br>■ G __2.12__ |
| 2.18 **Limetree Bay Refining Holdings,, LLC** | #1 Estate Hope Christiansted, VI 00820 | **Arcadia/Ark/Helix** | ☐ D _____<br>☐ E/F _____<br>■ G __2.2__ |
| 2.19 **Limetree Bay Refining Operating, LLC** | 1 Estate Hope Christiansted, VI 00820 | **J. Aron & Company LLC** | ☐ D _____<br>☐ E/F _____<br>■ G __2.22__ |
| 2.20 **Limetree Bay Refining Operating, LLC** | #1 Estate Hope Christiansted, VI 00820 | **Arcadia/Ark/Helix** | ☐ D _____<br>☐ E/F _____<br>■ G __2.2__ |
| 2.21 **Limetree Bay Refining Operating, LLC** | #1 Estate Hope Christiansted, VI 00820 | **J. Aron & Company LLC** | ☐ D _____<br>☐ E/F _____<br>■ G __2.34__ |

| Debtor | **Limetree Bay Refining Marketing, LLC** | Case number *(if known)* | **21-32356** |

---

■ **Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

*Column 1:* **Codebtor** | *Column 2:* **Creditor**

| 2.22 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Chaucer/Apollo** | ☐ D ____ <br> ☐ E/F ____ <br> ■ G __2.12__ |
| 2.23 | **Limetree Bay Refining, LLC** | **11100 Brittmoore Park Drive Houston, TX 77041** | **BP Products North America Inc.** | ☐ D ____ <br> ☐ E/F ____ <br> ■ G __2.7__ |
| 2.24 | **Limetree Bay Refining, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **J. Aron & Company LLC** | ☐ D ____ <br> ☐ E/F ____ <br> ■ G __2.22__ |
| 2.25 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Arcadia/Ark/Helix** | ☐ D ____ <br> ☐ E/F ____ <br> ■ G __2.2__ |
| 2.26 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **WRB/Guardian General Insurance** | ☐ D ____ <br> ☐ E/F ____ <br> ■ G __2.49__ |
| 2.27 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Swiss Re/Westport Insurance Company** | ☐ D ____ <br> ☐ E/F ____ <br> ■ G __2.48__ |
| 2.28 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Rokstone/Guardian General Insurance** | ☐ D ____ <br> ☐ E/F ____ <br> ■ G __2.47__ |
| 2.29 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **QBE/Lloyds of London** | ☐ D ____ <br> ☐ E/F ____ <br> ■ G __2.46__ |

---

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com
Schedule H: Your Codebtors
Best Case Bankruptcy

| Debtor | **Limetree Bay Refining Marketing, LLC** | | Case number *(if known)* | **21-32356** |

▪ **Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| 2.30 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **PartnerRe Ireland Insurance** | ☐ D ____ ☐ E/F ____ ▪ G  **2.45** |
| 2.31 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **NOA/Lloyds of London** | ☐ D ____ ☐ E/F ____ ▪ G  **2.43** |
| 2.32 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Liberty Specialty Markets Agency td** | ☐ D ____ ☐ E/F ____ ▪ G  **2.37** |
| 2.33 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Lancashire Insurance Company UK, Ltd** | ☐ D ____ ☐ E/F ____ ▪ G  **2.36** |
| 2.34 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Insurance General Insurance Co Ltd.** | ☐ D ____ ☐ E/F ____ ▪ G  **2.21** |
| 2.35 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Houston Specialty Insurance Company** | ☐ D ____ ☐ E/F ____ ▪ G  **2.20** |
| 2.36 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Helvetia Swiss Insurance Co** | ☐ D ____ ☐ E/F ____ ▪ G  **2.19** |
| 2.37 | **Limetree Bay Refining, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Hannover Re/HDI Global Specialty SE** | ☐ D ____ ☐ E/F ____ ▪ G  **2.18** |

Debtor    **Limetree Bay Refining Marketing, LLC**          Case number *(if known)*    **21-32356**

___

| ■ | **Additional Page to List More Codebtors** |

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

*Column 1:* **Codebtor**                                                      *Column 2:* **Creditor**

| 2.38 | **Limetree Bay**<br>**Refining, LLC** | **1 Estate Hope**<br>**Christiansted, VI 00820** | **Great Lakes** | ☐ D _____<br>☐ E/F _____<br>■ G ___2.16___ |
| 2.39 | **Limetree Bay**<br>**Refining, LLC** | **1 Estate Hope**<br>**Christiansted, VI 00820** | **Fidelis Underwriting**<br>**Ltd.** | ☐ D _____<br>☐ E/F _____<br>■ G ___2.15___ |
| 2.40 | **Limetree Bay**<br>**Refining, LLC** | **1 Estate Hope**<br>**Christiansted, VI 00820** | **Elseco Limited** | ☐ D _____<br>☐ E/F _____<br>■ G ___2.14___ |
| 2.41 | **Limetree Bay**<br>**Refining, LLC** | **1 Estate Hope**<br>**Christiansted, VI 00820** | **Convex Insurance UK**<br>**Limited** | ☐ D _____<br>☐ E/F _____<br>■ G ___2.13___ |
| 2.42 | **Limetree Bay**<br>**Refining, LLC** | **1 Estate Hope**<br>**Christiansted, VI 00820** | **Guardian General**<br>**Insurance Limited** | ☐ D _____<br>☐ E/F _____<br>■ G ___2.17___ |
| 2.43 | **Limetree Bay**<br>**Refining, LLC** | **1 Estate Hope**<br>**Christiansted, VI 00820** | **Berkshire Hathaway** | ☐ D _____<br>☐ E/F _____<br>■ G ___2.4___ |
| 2.44 | **Limetree Bay**<br>**Refining, LLC** | **1 Estate Hope**<br>**Christiansted, VI 00820** | **Atrium Underwriters**<br>**Ltd** | ☐ D _____<br>☐ E/F _____<br>■ G ___2.3___ |
| 2.45 | **Limetree Bay**<br>**Refining, LLC** | **1 Estate Hope**<br>**Christiansted, VI 00820** | **AIG Insurance**<br>**Company - Puerto**<br>**Rico** | ☐ D _____<br>☐ E/F _____<br>■ G ___2.1___ |

Debtor      **Limetree Bay Refining Marketing, LLC**          Case number *(if known)*   **21-32356**

---

■ **Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| 2.46 | **Limetree Bay Refining, LLC** | **1 Estate Hope** Christiansted, VI 00820 | **J. Aron & Company LLC** | ☐ D ____ ☐ E/F ____ ■ G   **2.34** |
| 2.47 | **Limetree Bay Refining, LLC** | **1 Estate Hope** Christiansted, VI 00820 | **BP Products North America Inc.** | ☐ D ____ ☐ E/F ____ ■ G   **2.11** |
| 2.48 | **Limetree Bay Refining, LLC** | **1 Estate Hope** Christiansted, VI 00820 | **Limetree Bay Terminals, LLC** | ☐ D ____ ☐ E/F ____ ■ G   **2.39** |
| 2.49 | **Limetree Bay Refining, LLC** | **1 Estate Hope** Christiansted, VI 00820 | **Chaucer/Apollo** | ☐ D ____ ☐ E/F ____ ■ G   **2.12** |
| 2.50 | **Limetree Bay Services, LLC** | **11100 Brittmoore Park Drive** Houston, TX 77041 | **Arcadia/Ark/Helix** | ☐ D ____ ☐ E/F ____ ■ G   **2.2** |
| 2.51 | **Limetree Bay Services, LLC** | **11100 Brittmoore Park Drive** Houston, TX 77041 | **Chaucer/Apollo** | ☐ D ____ ☐ E/F ____ ■ G   **2.12** |
| 2.52 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **J. Aron & Company LLC** | ☐ D ____ ☐ E/F ____ ■ G   **2.29** |
| 2.53 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **BP Products North America Inc.** | ☐ D ____ ☐ E/F ____ ■ G   **2.9** |

---

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2316 of 2637
2316
Case 21-32351   Document 550   Filed in TXSB on 09/07/21   Page 34 of 40

| Debtor | **Limetree Bay Refining Marketing, LLC** | | Case number *(if known)* | **21-32356** |

---

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| 2.54 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Arcadia/Ark/Helix** | ☐ D ____ ☐ E/F ____ ■ G __2.2__ |
| 2.55 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **WRB/Guardian General Insurance** | ☐ D ____ ☐ E/F ____ ■ G __2.49__ |
| 2.56 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Swiss Re/Westport Insurance Company** | ☐ D ____ ☐ E/F ____ ■ G __2.48__ |
| 2.57 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Rokstone/Guardian General Insurance** | ☐ D ____ ☐ E/F ____ ■ G __2.47__ |
| 2.58 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **QBE/Lloyds of London** | ☐ D ____ ☐ E/F ____ ■ G __2.46__ |
| 2.59 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **PartnerRe Ireland Insurance** | ☐ D ____ ☐ E/F ____ ■ G __2.45__ |
| 2.60 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **NOA/Lloyds of London** | ☐ D ____ ☐ E/F ____ ■ G __2.43__ |
| 2.61 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Liberty Specialty Markets Agency td** | ☐ D ____ ☐ E/F ____ ■ G __2.37__ |

---

Schedule H: Your Codebtors

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

| Debtor | **Limetree Bay Refining Marketing, LLC** | | Case number *(if known)* | **21-32356** |

---

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|
| 2.62 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Lancashire Insurance Company UK, Ltd** | ☐ D _____ ☐ E/F _____ ■ G __2.36__ |
| 2.63 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Insurance General Insurance Co Ltd.** | ☐ D _____ ☐ E/F _____ ■ G __2.21__ |
| 2.64 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Houston Specialty Insurance Company** | ☐ D _____ ☐ E/F _____ ■ G __2.20__ |
| 2.65 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Helvetia Swiss Insurance Co** | ☐ D _____ ☐ E/F _____ ■ G __2.19__ |
| 2.66 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Hannover Re/HDI Global Specialty SE** | ☐ D _____ ☐ E/F _____ ■ G __2.18__ |
| 2.67 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Great Lakes** | ☐ D _____ ☐ E/F _____ ■ G __2.16__ |
| 2.68 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Fidelis Underwriting Ltd.** | ☐ D _____ ☐ E/F _____ ■ G __2.15__ |
| 2.69 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Elseco Limited** | ☐ D _____ ☐ E/F _____ ■ G __2.14__ |

---

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2318 of 2637
2318
Case 21-32351   Document 550   Filed in TXSB on 09/07/21   Page 36 of 40

Debtor __**Limetree Bay Refining Marketing, LLC**__         Case number *(if known)*   **21-32356**

| ▮ | **Additional Page to List More Codebtors** |
|---|---|

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|
| 2.70 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Convex Insurance UK Limited** | ☐ D ____ ☐ E/F ____ ▮ G   **2.13** |
| 2.71 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Guardian General Insurance Limited** | ☐ D ____ ☐ E/F ____ ▮ G   **2.17** |
| 2.72 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Berkshire Hathaway** | ☐ D ____ ☐ E/F ____ ▮ G   **2.4** |
| 2.73 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Atrium Underwriters Ltd** | ☐ D ____ ☐ E/F ____ ▮ G   **2.3** |
| 2.74 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **AIG Insurance Company - Puerto Rico** | ☐ D ____ ☐ E/F ____ ▮ G   **2.1** |
| 2.75 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Chaucer/Apollo** | ☐ D ____ ☐ E/F ____ ▮ G   **2.12** |
| 2.76 | **Limetree Bay Ventures, LLC** | | **Arcadia/Ark/Helix** | ☐ D ____ ☐ E/F ____ ▮ G   **2.2** |
| 2.77 | **Limetree Bay Ventures, LLC** | | **WRB/Guardian General Insurance** | ☐ D ____ ☐ E/F ____ ▮ G   **2.49** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2319 of 2637
2319
Case 21-32351   Document 550   Filed in TXSB on 09/07/21   Page 37 of 40

| Debtor | **Limetree Bay Refining Marketing, LLC** | Case number *(if known)* | **21-32356** |
|---|---|---|---|

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|

2.78 **Limetree Bay Ventures, LLC**

**Swiss Re/Westport Insurance Company**

☐ D _____
☐ E/F _____
■ G   **2.48**

2.79 **Limetree Bay Ventures, LLC**

**Rokstone/Guardian General Insurance**

☐ D _____
☐ E/F _____
■ G   **2.47**

2.80 **Limetree Bay Ventures, LLC**

**QBE/Lloyds of London**

☐ D _____
☐ E/F _____
■ G   **2.46**

2.81 **Limetree Bay Ventures, LLC**

**PartnerRe Ireland Insurance**

☐ D _____
☐ E/F _____
■ G   **2.45**

2.82 **Limetree Bay Ventures, LLC**

**NOA/Lloyds of London**

☐ D _____
☐ E/F _____
■ G   **2.43**

2.83 **Limetree Bay Ventures, LLC**

**Liberty Specialty Markets Agency td**

☐ D _____
☐ E/F _____
■ G   **2.37**

2.84 **Limetree Bay Ventures, LLC**

**Lancashire Insurance Company UK, Ltd**

☐ D _____
☐ E/F _____
■ G   **2.36**

2.85 **Limetree Bay Ventures, LLC**

**Insurance General Insurance Co Ltd.**

☐ D _____
☐ E/F _____
■ G   **2.21**

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2320 of 2637
2320
Case 21-32351   Document 550   Filed in TXSB on 09/07/21   Page 38 of 40

Debtor   **Limetree Bay Refining Marketing, LLC**          Case number *(if known)*   **21-32356**

---

▮ **Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

*Column 1:* **Codebtor**                                                                   *Column 2:* **Creditor**

---

2.86   **Limetree Bay Ventures, LLC**                    **Houston Specialty Insurance Company**
☐ D _____
☐ E/F _____
■ G   2.20

---

2.87   **Limetree Bay Ventures, LLC**                    **Helvetia Swiss Insurance Co**
☐ D _____
☐ E/F _____
■ G   2.19

---

2.88   **Limetree Bay Ventures, LLC**                    **Hannover Re/HDI Global Specialty SE**
☐ D _____
☐ E/F _____
■ G   2.18

---

2.89   **Limetree Bay Ventures, LLC**                    **Great Lakes**
☐ D _____
☐ E/F _____
■ G   2.16

---

2.90   **Limetree Bay Ventures, LLC**                    **Fidelis Underwriting Ltd.**
☐ D _____
☐ E/F _____
■ G   2.15

---

2.91   **Limetree Bay Ventures, LLC**                    **Elseco Limited**
☐ D _____
☐ E/F _____
■ G   2.14

---

2.92   **Limetree Bay Ventures, LLC**                    **Convex Insurance UK Limited**
☐ D _____
☐ E/F _____
■ G   2.13

---

2.93   **Limetree Bay Ventures, LLC**                    **Guardian General Insurance Limited**
☐ D _____
☐ E/F _____
■ G   2.17

---

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2321 of 2637
2321
Case 21-32351   Document 550   Filed in TXSB on 09/07/21   Page 39 of 40

| Debtor | **Limetree Bay Refining Marketing, LLC** | Case number *(if known)* | **21-32356** |

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | Column 2: **Creditor** |
|---|---|

2.94 **Limetree Bay Ventures, LLC** **Berkshire Hathaway**

☐ D _____
☐ E/F _____
■ G    **2.4**

2.95 **Limetree Bay Ventures, LLC** **AIG Insurance Company - Puerto Rico**

☐ D _____
☐ E/F _____
■ G    **2.1**

2.96 **Limetree Bay Ventures, LLC** **Atrium Underwriters Ltd**

☐ D _____
☐ E/F _____
■ G    **2.3**

2.97 **Limetree Bay Ventures, LLC** **Chaucer/Apollo**

☐ D _____
☐ E/F _____
■ G    **2.12**

**Fill in this information to identify the case:**

Debtor name **Limetree Bay Refining Marketing, LLC**

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF TEXAS

Case number (if known) 21-32356

☐ Check if this is an amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors 12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

|  | Declaration and signature |
|---|---|

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☑ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☑ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☑ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☑ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☑ *Schedule H: Codebtors* (Official Form 206H)
☑ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐ Amended *Schedule*
☐ *Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
☐ Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge based upon the information available to me at this time.

Executed on   September 7, 2021            X /s/ Mark Shapiro
                                          Signature of individual signing on behalf of debtor

                                          **Mark Shapiro**
                                          Printed name

                                          **Chief Restructuring Officer**
                                          Position or relationship to debtor

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

# EXHIBIT 5

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| LIMETREE BAY SERVICES, LLC, *et al.*,[1] | CASE NO.: 21-32351 |
| Debtors. | (Jointly Administered) |

## DISCLAIMER REGARDING DEBTORS' SCHEDULES AND SOFA

### General Disclaimer

1.       The Schedules and the SOFA are unaudited and subject to potential adjustment.  In preparing the Schedules and the SOFA, the CRO and his professionals relied on financial data derived from the Debtors' books and records that was available at the time of preparation.  The CRO and his professionals have made reasonable efforts to ensure that the Schedules and the SOFA are as accurate and complete as possible under the circumstances; however, subsequent information or discovery may result in changes to the Schedules and SOFA and errors or omissions may exist.

2.       The CRO reserves all rights to amend or supplement the Schedules and SOFA from time to time, in all respects, as may be necessary or appropriate, including the right to dispute or otherwise assert offsets or defenses to any claim reflected on the Schedules and SOFA as to any amount, liability, classification, identity of debtor or to otherwise subsequently designate any claim as "disputed", "contingent", or "unliquidated". Furthermore, nothing

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC.(1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2325 of 2637
2325
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 2 of 156

contained in the Schedules and SOFA shall constitute a waiver of any of the CRO's rights or

an admission with respect to these chapter 11 cases, including any issues involving objections

to claims, substantive consolidation, defenses, affirmative claims against third parties or rights

against third parties, other issues that typically arise under the Bankruptcy Code.

<u>**Notes on Schedules of Assets and Liabilities**</u>

<u>**Method of Valuation**</u>

3.      Unless otherwise noted, the carrying value on the Debtors' books and records

(net book value) as of the Petition Date, rather than the current market values, of the Debtors'

interest in the property and of the Debtors' liabilities, is reflected on the Debtors' Schedules and

SOFA.  The net book value may not correspond to market value, or liquidation value, of which

may be either higher or lower.

Dated: September 7, 2021

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
So. Dist. Fed ID 903144
**Jimmy D. Parrish, Esq.**
So. Dist. Fed ID 2687598
200 S. Orange Avenue
Suite 2300
Orlando, FL 32801
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
E-mail: egreen@bakerlaw.com
E-mail: jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com
*(Admitted Pro Hac Vice)*

*Proposed Counsel for the Debtors and Debtors in Possession*

**Fill in this information to identify the case:**

Debtor name    **Limetree Bay Refining, LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF TEXAS

Case number (if known)    **21-32354**

☐ Check if this is an amended filing

## Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals

12/15

| Part 1: | Summary of Assets |
| --- | --- |

1. ***Schedule A/B: Assets-Real and Personal Property*** (Official Form 206A/B)

   **1a. Real property:**
   Copy line 88 from *Schedule A/B*...........................................................................    $    **0.00**

   **1b. Total personal property:**
   Copy line 91A from *Schedule A/B*........................................................................    $    **274,453,886.26**

   **1c. Total of all property:**
   Copy line 92 from *Schedule A/B*.........................................................................    $    **274,453,886.26**

| Part 2: | Summary of Liabilities |
| --- | --- |

2. ***Schedule D: Creditors Who Have Claims Secured by Property*** (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*..................................    $    **1,160,056,794.65**

3. ***Schedule E/F: Creditors Who Have Unsecured Claims*** (Official Form 206E/F)

   **3a. Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F*........................................................    $    **0.00**

   **3b. Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*..............................................    +$    **271,768,751.13**

4. Total liabilities ....................................................................................................
   Lines 2 + 3a + 3b    $    **1,431,825,545.78**

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2328 of 2637
2328
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 5 of 156

**Fill in this information to identify the case:**

Debtor name **Limetree Bay Refining, LLC**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF TEXAS

Case number (if known) **21-32354**

☐ Check if this is an amended filing

# Official Form 206A/B

## Schedule A/B: Assets - Real and Personal Property

12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
| --- | --- |

1. **Does the debtor have any cash or cash equivalents?**

   ☐ No.  Go to Part 2.
   ☑ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
| --- | --- |

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
| --- | --- | --- | --- | --- |
| 3.1. | Deutsche Bank | Construction Account | 0110 | $107,845.03 |
| 3.2. | Deutsche Bank | Debt Service Reserve Account | 0111 | $3,533.42 |
| 3.3. | Oriental Bank | Operating | 0267 | $2,213,522.00 |
| 3.4. | Oriental Bank | Payroll | 0268 | $315.39 |

4. **Other cash equivalents** *(Identify all)*

5. **Total of Part 1.**
   Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

   $2,325,215.84

| Part 2: | Deposits and Prepayments |
| --- | --- |

6. **Does the debtor have any deposits or prepayments?**

   ☐ No.  Go to Part 3.
   ☑ Yes Fill in the information below.

| Debtor | **Limitree Bay Refining, LLC** | Case number *(If known)* **21-32354** |
|---|---|---|
| | Name | |

**7.  Deposits, including security deposits and utility deposits**
Description, including name of holder of deposit

| 7.1. | **Security Deposits** | **$88,400.00** |
|---|---|---|

**8.  Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**
Description, including name of holder of prepayment

| 8.1. | **Pre-Paid Licenses** | **$899,847.03** |
|---|---|---|
| 8.2. | **Pre-Paid Insurance** | **$6,302,171.93** |
| 8.3. | **Pre-Paid Rent** | **$15,465.01** |
| 8.4. | **Pre-Paid Sundry** | **$532,817.89** |

**9.  Total of Part 2.**
Add lines 7 through 8. Copy the total to line 81.

**$7,838,701.86**

| Part 3: | Accounts receivable |
|---|---|

**10.  Does the debtor have any accounts receivable?**

☐ No.  Go to Part 4.
■ Yes Fill in the information below.

**11.  Accounts receivable**

| 11a. 90 days old or less: | **190,698,303.00** | - | **0.00** | = .... | **$190,698,303.00** |
|---|---|---|---|---|---|
| | face amount | | doubtful or uncollectible accounts | | |
| 11b. Over 90 days old: | **26,989,791.00** | - | **0.00** | =.... | **$26,989,791.00** |
| | face amount | | doubtful or uncollectible accounts | | |

**12.  Total of Part 3.**
Current value on lines 11a + 11b = line 12.  Copy the total to line 82.

**$217,688,094.00**

| Part 4: | Investments |
|---|---|

**13.  Does the debtor own any investments?**

☐ No.  Go to Part 5.
■ Yes Fill in the information below.

| | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|

**14.  Mutual funds or publicly traded stocks not included in Part 1**

Debtor  **Limetree Bay Refining, LLC**
Name

Case number *(if known)* **21-32354**

Name of fund or stock:

| 15. | **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture** |
|---|---|

Name of entity:                                    % of ownership

| 15.1. | **Investment in Limetree Bay Refining Marketing, LLC** | **100%** % | | **$754,975.47** |
|---|---|---|---|---|
| 15.2. | **Investment in Limetree Bay Refining Operating, LLC** | **100%** % | | **Unknown** |

| 16. | **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1** |
|---|---|

Describe:

| 17. | **Total of Part 4.** | | **$754,975.47** |
|---|---|---|---|

Add lines 14 through 16. Copy the total to line 83.

| **Part 5:** | **Inventory, excluding agriculture assets** |
|---|---|

**18. Does the debtor own any inventory (excluding agriculture assets)?**

☐ No. Go to Part 6.
☑ Yes Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 19. **Raw materials** | | | | |
| 20. **Work in progress** | | | | |
| 21. **Finished goods, including goods held for resale** **Purchased Finished Products** | | **$849,064.90** | | **$849,064.90** |
| 22. **Other inventory or supplies** **Warehouse Inventory** | | **$23,796,155.37** | | **$23,796,155.37** |
| **Inventory Clearing** | | **$409,157.03** | | **$409,157.03** |
| **Spare Parts (see attached list)** | | **$1,775,233.60** | | **$1,775,233.60** |

| 23. | **Total of Part 5.** | | **$26,829,610.90** |
|---|---|---|---|

Add lines 19 through 22. Copy the total to line 84.

| 24. | **Is any of the property listed in Part 5 perishable?** |
|---|---|

☑ No
☐ Yes

| 25. | **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?** |
|---|---|

☑ No
☐ Yes. Book value _____  Valuation method _____  Current Value _____

Official Form 206A/B                Schedule A/B Assets - Real and Personal Property                page 3

| Debtor | **Limetree Bay Refining, LLC** | | Case number *(If known)* **21-32354** |
|---|---|---|---|
| | Name | | |

**26.** **Has any of the property listed in Part 5 been appraised by a professional within the last year?**
- ☑ No
- ☐ Yes

**Part 6:**   **Farming and fishing-related assets (other than titled motor vehicles and land)**

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

- ☑ No.  Go to Part 7.
- ☐ Yes Fill in the information below.

**Part 7:**   **Office furniture, fixtures, and equipment; and collectibles**

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

- ☐ No.  Go to Part 8.
- ☑ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **39.** **Office furniture** | | | |
| **40.** **Office fixtures**<br>**Modular Homes** | **$75,579,851.41** | | **Unknown** |

**41.** **Office equipment, including all computer equipment and communication systems equipment and software**

**42.** **Collectibles** *Examples*: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles

**43.** **Total of Part 7.**  

Add lines 39 through 42.  Copy the total to line 86. 

| | |
|---|---|
| | **$0.00** |

**44.** **Is a depreciation schedule available for any of the property listed in Part 7?**
- ☑ No
- ☐ Yes

**45.** **Has any of the property listed in Part 7 been appraised by a professional within the last year?**
- ☑ No
- ☐ Yes

**Part 8:**   **Machinery, equipment, and vehicles**

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

- ☐ No.  Go to Part 9.
- ☑ Yes Fill in the information below.

| General description<br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **47.** **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 47.1.  **Vehicles, Trailers (see attached list)** | **$188,679.81** | **Comparable sale** | **$835,020.02** |
| 47.2.  **2019 E-One Pumper Fire Truck, VIN 4EN6AHA83K2002326** | **$286,424.74** | | **$286,424.74** |

Debtor   **Limitree Bay Refining, LLC**                    Case number *(If known)*  **21-32354**
Name

48.  **Watercraft, trailers, motors, and related accessories** *Examples:* Boats, trailers, motors,
     floating homes, personal watercraft, and fishing vessels

49.  **Aircraft and accessories**

50.  **Other machinery, fixtures, and equipment (excluding farm
     machinery and equipment)**

| | | | |
|---|---|---|---|
| **Gas Turbines & Waste Heat Boilers** | $17,690,044.94 | | $17,690,044.94 |
| **Other Machinery & Equipment** | $205,798.49 | | $205,798.49 |

51.  **Total of Part 8.**                                                          | $19,017,288.19 |

     Add lines 47 through 50.  Copy the total to line 87.

52.  **Is a depreciation schedule available for any of the property listed in Part 8?**

     ■ No
     ☐ Yes

53.  **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

     ■ No
     ☐ Yes

| Part 9: | Real property |
|---|---|

54. **Does the debtor own or lease any real property?**

☐ No.  Go to Part 10.
■ Yes Fill in the information below.

55.  **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| | | | | |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

| Debtor | **Limetree Bay Refining, LLC** | Case number *(If known)* | **21-32354** |
|---|---|---|---|
| | Name | | |

| | | | | | |
|---|---|---|---|---|---|
| 55.1. | **Facilities, Buildings and Improvements for:**<br>**1) Plot No. 25 Estate Clifton Hill, King Quarter, St. Croix, US Virgin Islands**<br>**2) Plot No. 487-A Estate Strawberry Hill, Queen Quarter, St. Croix, US Virgin Islands**<br>**3) Plot 1-AB, Estates Blessing and Hope, King & Queen Quarters, St. Croix, US Virgin Islands**<br>**4) Plot 2, Estates Blessing, Hope and Jerusalem, King & Queen Quarters, St. Croix, US Virgin Islands**<br>**5) Plot 3, Estates Jerusalem, Figtree Hill and Castle Land, Queen Quarter, St. Croix, US Virgin Islands**<br>**6) Plot 214 Estate Ruby, Queen Quarter, St. Croix, US Virgin Islands** | Fee ownership | $13,247,724.03 | | Unknown |
| 55.2. | **Updates to Refinery** | | Unknown | | Unknown |

56. **Total of Part 9.**

Add the current value on lines 55.1 through 55.6 and entries from any additional sheets.
Copy the total to line 88.

| $0.00 |
|---|

57. **Is a depreciation schedule available for any of the property listed in Part 9?**

☑ No
☐ Yes

58. **Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☑ No
☐ Yes

**Part 10:    Intangibles and intellectual property**

59. **Does the debtor have any interests in intangibles or intellectual property?**

☑ No.  Go to Part 11.
☐ Yes Fill in the information below.

**Part 11:    All other assets**

70. **Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

| Debtor | **Limetree Bay Refining, LLC** | Case number *(If known)* | **21-32354** |
| | Name | | |

■ No.  Go to Part 12.
□ Yes Fill in the information below.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2335 of 2637
2335
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 12 of 156

Debtor    **Limetree Bay Refining, LLC**                    Case number *(If known)*  **21-32354**
          Name

| Part 12: | Summary |
|---|---|

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | **$2,325,215.84** | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | **$7,838,701.86** | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | **$217,688,094.00** | |
| 83. **Investments.** *Copy line 17, Part 4.* | **$754,975.47** | |
| 84. **Inventory.** *Copy line 23, Part 5.* | **$26,829,610.90** | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | **$0.00** | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | **$0.00** | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | **$19,017,288.19** | |
| 88. **Real property.** *Copy line 56, Part 9*.....................................................> | | **$0.00** |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | **$0.00** | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + **$0.00** | |
| 91. **Total.** Add lines 80 through 90 for each column | **$274,453,886.26** | + 91b. **$0.00** |
| 92. **Total of all property on Schedule A/B**. Add lines 91a+91b=92 | | **$274,453,886.26** |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                        Best Case Bankruptcy

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2336 of 2637
2336
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 13 of 156

**Limetree Bay Refining, LLC**
**Case No: 21-32354**

**Spare Parts**

| Entity | Date | Description | Amount |
|--------|------|-------------|--------|
| LBR | 8/5/2020 | TRBCHRGR:MODEL 412KVSR COMPRSR | 280,703.18 |
| LBR | 12/24/2020 | VLV:STOP,RADIO CNTRL OPERATED,CS, ASTM B | 198,500.00 |
| LBR | 11/16/2020 | CYL,COMPRESSOR:412KVSRA,14-1/2" | 147,548.90 |
| LBR | 12/11/2020 | COMPRSR:NASH-HYTOR,SERIES 652,CCW,SZ1002 | 65,643.50 |
| LBR | 6/16/2020 | COMPRSR:NASH-HYTOR,SERIES 652,CCW,SZ1002 | 65,643.50 |
| LBR | 6/16/2020 | COMPRSR:TEST CW,SZ 1002 | 65,643.50 |
| LBR | 12/11/2020 | COMPRSR:TEST CW,SZ 1002 | 65,643.50 |
| LBR | 8/26/2020 | ROD:PWR,50" OAL,CS | 108,295.46 |
| LBR | 9/18/2020 | COOLER:INTER COOLER ASSMBLY,PR-597688-1 | 48,254.00 |
| LBR | 6/12/2020 | COOLER:INTER COOLER ASSMBLY,PR-597688-1 | 48,254.00 |
| LBR | 9/18/2020 | BDY:INTER COOLER,52"OAL,STL,PR-597688-2 | 48,254.00 |
| LBR | 6/12/2020 | BDY:INTER COOLER,52"OAL,STL,PR-597688-2 | 48,254.00 |
| LBR | 8/29/2020 | SMO0413435 LHE LINERS (UNIT 226262) | 95,092.65 |
| LBR | 7/3/2020 | ROD:CONN | 79,607.26 |
| LBR | 11/16/2020 | CYL,COMPRESSOR:KVG,8-3/4" | 77,512.40 |
| LBR | 8/28/2020 | ROTOR,PUMP:CENTFGL PUMP,P/N:6HMTA-9 | 76,019.40 |
| LBR | 12/11/2020 | VANE:INLT GUIDE | 75,000.00 |
| LBR | 10/17/2020 | CYL,COMPRESSOR:KVG,6-1/2" | 70,085.35 |
| LBR | 11/20/2020 | MOTOR:TECO,600HP,WP2,1200RPM,4000V,400M | 59,738.00 |
| LBR | 12/2/2020 | ELEMENT:SUPERHEATER TUBES, BOILER 8, 9 | 51,541.00 |
| | | | **$ 1,775,233.60** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2337 of 2637
2337
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 14 of 156

**Limetree Bay Refining, LLC**
**Case No: 21-32354**

**Vehicles**

| Debtor | Vehicle Description | Cost | Depreciation | Book Value | FMV |
|--------|---------------------|------|-------------|-----------|-----|
| LBR | 1993 TRLR CZMZ120384  3H3C242S1PT203010 | $    2,500.00 | $    (416.67) | $   2,083.33 | 2,083.33 |
| LBR | 1993 TRLR CZMZ120384  3H3C242S3PT203817 | 2,500.00 | (416.67) | 2,083.33 | 2,083.33 |
| LBR | 1993 TRLR CZMZ120384  3H3C242S5PT203334 | 2,500.00 | (416.67) | 2,083.33 | 2,083.33 |
| LBR | 1993 TRLR CZMZ120384  3H3C242S6PT203567 | 2,500.00 | (416.67) | 2,083.33 | 2,083.33 |
| LBR | 1993 TRLR CZMZ120384  3H3C242S6PT203732 | 2,500.00 | (416.67) | 2,083.33 | 2,083.33 |
| LBR | 1999 TRLR CZMZ120384  1S12C235XB727042 | 2,500.00 | (416.67) | 2,083.33 | 2,083.33 |
| LBR | 2017 Ford F150 VIN 1FTEW1C81HKD27048 | 29,800.00 | (25,130.98) | 4,669.02 | 21,390.00 |
| LBR | 2017 Ford F150 VIN 1FTEW1C87HKC30985 | 29,800.00 | (25,130.98) | 4,669.02 | 21,390.00 |
| LBR | 2017 Ford F150 VIN 1FTEW1C89HFA35608 | 29,800.00 | (25,130.98) | 4,669.02 | 21,390.00 |
| LBR | 2017 Ford F150 VIN 1FTEW1C89HFA35723 | 29,800.00 | (25,130.98) | 4,669.02 | 21,390.00 |
| LBR | 2017 Ford F150 VIN 1FTEW1CF1HRB42344 | 29,800.00 | (25,130.98) | 4,669.02 | 21,390.00 |
| LBR | 2017 Ford F150 VIN 1FTEW1CG4HKD11448 | 29,800.00 | (25,130.98) | 4,669.02 | 21,390.00 |
| LBR | 2017 Ford F150 XLT S - VIN # 1FTEW1CG0HKD45743 | 22,720.00 | (19,160.26) | 3,559.74 | 22,714.00 |
| LBR | 2017 Ford F150 XLT S - VIN # 1FTEW1CG0HKD45743 | 5,908.92 | (4,983.12) | 925.80 | Duplicate |
| LBR | 2018 Chevrolet Equinox  VIN: 2GNAXSEV4J6299895 | 21,985.00 | (18,540.43) | 3,444.57 | 14,905.00 |
| LBR | 2018 Ford F150 VIN 1FTEW1CB2JFA19283 | 29,800.00 | (25,130.98) | 4,669.02 | 23,241.00 |
| LBR | 2018 Ford F150 VIN 1FTEW1CB7JFA08134 | 29,800.00 | (25,130.98) | 4,669.02 | 23,241.00 |
| LBR | 2018 Ford F150 XLT - VIN # 1FTEW1CB1JFA97585 | 5,908.94 | (4,983.14) | 925.80 | 26,221.00 |
| LBR | 2018 Ford F150 XLT S - VIN #1FTEW1CBXJFC80578 | 22,720.00 | (19,160.26) | 3,559.74 | 26,221.00 |
| LBR | 2018 Ford F150 XLT S - VIN #1FTEW1CBXJFC80578 | 5,908.92 | (4,983.12) | 925.80 | Duplicate |
| LBR | 2018 Ford F150 XLT S - VIN #  1FTEW1CBOJFC64910 | 22,720.00 | (19,160.26) | 3,559.74 | 26,221.00 |
| LBR | 2018 Ford F150 XLT S - VIN #  1FTEW1CBOJFC64910 | 5,993.90 | (5,054.78) | 939.12 | Duplicate |
| LBR | 2018 Ford F150 XLT S - VIN # 1FTEW1CB1JFA97585 | 22,720.00 | (19,160.26) | 3,559.74 | 26,221.00 |
| LBR | 2018 Ford F150 XLT S - VIN # 1FTEW1CB5JFC81122 | 22,720.00 | (19,160.26) | 3,559.74 | 26,221.00 |
| LBR | 2018 Ford F150 XLT S - VIN # 1FTEW1CB5JFC81122 | 5,908.92 | (4,983.12) | 925.80 | Duplicate |
| LBR | 2018 Jeep Compass - Sport -VIN #3C4NJDAB5J7481121 | 0.00 | 121.96 | 121.96 | 7 |
| LBR | 2018 Jeep Compass  VIN #3C4NJDAB7J7481122 ...OLIVE | 26,775.00 | (22,579.93) | 4,195.07 | 17,789.00 |
| LBR | 2018 Jeep Compass - VIN #3C4NJDABXJT418032...WHITE | 26,775.00 | (22,579.93) | 4,195.07 | 17,789.00 |
| LBR | 2018 Jeep Compass VIN #3C4NJDABXJT418032...WHITE | 26,775.00 | (22,579.93) | 4,195.07 | 17,789.00 |
| LBR | 2018 Used Ford F150 XL - VIN 1FTMF1C84HFA06951 | 19,840.00 | (16,731.50) | 3,108.50 | 23,241.00 |
| LBR | 2018 Used Ford F150 XL - VIN 1FTMF1C84HFA06951 | 5,188.94 | (4,375.95) | 812.99 | Duplicate |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTEW1C84HFB12062 | 22,720.00 | (19,160.26) | 3,559.74 | 26,221.00 |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTEW1C84HFB12062 | 5,908.94 | (4,983.14) | 925.80 | Duplicate |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTEW1CB1JFC55469 | 22,720.00 | (19,160.26) | 3,559.74 | 26,221.00 |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTEW1CB1JFC55469 | 5,908.94 | (4,983.14) | 925.80 | Duplicate |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTEW1CB4JFC64716 | 22,720.00 | (19,160.26) | 3,559.74 | 26,221.00 |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTEW1CB4JFC64716 | 5,908.94 | (4,983.14) | 925.80 | Duplicate |
| LBR | 2018 Used Ford F150 XLT S -VIN 1FTEW1CB5JFC80844 | 5,908.94 | (4,983.14) | 925.80 | Duplicate |
| LBR | 2018 Used Ford F150 XLT S -VIN 1FTEW1CB5JFC80844 | 22,720.00 | (19,160.26) | 3,559.74 | 26,221.00 |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTEW1CBXJFB88242 | 22,720.00 | (19,160.26) | 3,559.74 | 26,221.00 |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTEW1CBXJFB88242 | 5,908.94 | (4,983.14) | 925.80 | Duplicate |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTEW1CG4JKD85216 | 22,720.00 | (19,160.26) | 3,559.74 | 26,221.00 |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTEW1CG4JKD85216 | 5,908.94 | (4,983.14) | 925.80 | Duplicate |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTEW1CG6JFC79763 | 22,720.00 | (19,160.26) | 3,559.74 | 26,221.00 |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTEW1CG6JFC79763 | 5,908.94 | (4,983.14) | 925.80 | Duplicate |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTMF1C85HKD38565 | 19,840.00 | (16,731.50) | 3,108.50 | 26,221.00 |
| LBR | 2018 Used Ford F150 XLT S - VIN 1FTMF1C85HKD38565 | 5,188.94 | (4,375.95) | 812.99 | Duplicate |
| LBR | 2018 Used Ford F150 XLT S -VIN 1FTMF1C85JKD80607 | 19,940.00 | (16,815.83) | 3,124.17 | 26,221.00 |
| LBR | 2018 Used Ford F150 XLT S -VIN 1FTMF1C85JKD80607 | 5,188.94 | (4,375.95) | 812.99 | Duplicate |
| LBR | 2019 New Toyota Tac-VIN NUMBER: 5FTRX5GN2KX132673 | 27,137.00 | (22,885.21) | 4,251.79 | 26,116.00 |
| LBR | 2019 New Toyota Tac-VIN NUMBER: 5TFRX5GN7KX135178 | 27,137.00 | (22,885.21) | 4,251.79 | 26,116.00 |
| LBR | 2019 New Toyota Tac-VIN NUMBER: 5TFRX5GN7KX135424 | 27,137.00 | (22,885.21) | 4,251.79 | 26,116.00 |
| LBR | 2019 New Toyota Tac-VIN NUMBER: 5TFRX5GN8KX135304 | 27,137.00 | (22,885.21) | 4,251.79 | 26,116.00 |
| LBR | 2019 New Toyota Tac-VIN NUMBER: 5TFRX5GN9KX135179 | 27,137.00 | (22,885.21) | 4,251.79 | 26,116.00 |
| LBR | MIS 570CR Polaris 570 Crew Ranger ATV | 19,104.95 | (16,111.62) | 2,993.33 | 2,993.33 |
| LBR | Ram 1500 Tradesman - VIN#1C6RR7FG1KS577323 | 29,980.00 | (25,282.78) | 4,697.22 | 4,697.22 |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2338 of 2637
2338
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 15 of 156

**Limetree Bay Refining, LLC**
**Case No: 21-32354**

Vehicles

| Debtor | Vehicle Description | Cost | Depreciation | Book Value | FMV |
|--------|---------------------|------|--------------|------------|-----|
| LBR | Ram 1500 Tradesman - VIN#1C6RR7FG2KS544959 | 29,980.00 | (25,282.78) | 4,697.22 | 4,697.22 |
| LBR | Ram 1500 Tradesman - VIN#1C6RR7FG2KS544962 | 29,980.00 | (25,282.78) | 4,697.22 | 4,697.22 |
| LBR | Ram 1500 Tradesman - VIN#1C6RR7FG9KS544957 | 29,980.00 | (25,282.78) | 4,697.22 | 4,697.22 |
| LBR | Ram 1500 Tradesman - VIN#1C6RR7FG9KS544960 | 29,980.00 | (25,282.78) | 4,697.22 | 4,697.22 |
| LBR | TRAILER - ROCK SOLID CARGO ENCL #7H2BE1225MD030497 | 5,584.00 | (1,085.78) | 4,498.22 | 4,498.22 |
| LBR | TRAILER - ROCK SOLID CARGO ENCL #7H2BE1629MD030416 | 5,982.70 | (1,163.31) | 4,819.39 | 4,819.39 |
| **Total** | | **$ 1,090,785.65** | **$ (902,105.84)** | **$ 188,679.81** | **$ 835,020.02** |

| Fill in this information to identify the case: |
|---|

Debtor name **Limetree Bay Refining, LLC**

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF TEXAS

Case number (if known) **21-32354**

☐ Check if this is an
amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property                12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☑ Yes. Fill in all of the information below.

**Part 1:**  List Creditors Who Have Secured Claims

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | Column A | Column B |
|---|---|---|
| | **Amount of claim** | **Value of collateral that supports this claim** |
| | Do not deduct the value of collateral. | |

| 2.1 | **AltairStrickland V.I., LLC** | Describe debtor's property that is subject to a lien | $4,106,717.42 | Unknown |
|---|---|---|---|---|

Creditor's Name

**1605 S. Battleground Road
La Porte, TX 77571**

Creditor's mailing address

**Unknown**

Describe the lien
**Construction Lien**

Is the creditor an insider or related party?

☑ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?

☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**

As of the petition filing date, the claim is:
Check that all apply

**Do multiple creditors have an interest in the same property?**

☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Contingent
☐ Unliquidated
☑ Disputed

| 2.2 | **Christiansted Equipment Ltd.** | Describe debtor's property that is subject to a lien | $3,780,074.66 | Unknown |
|---|---|---|---|---|

Creditor's Name

**PO Box 368
Christiansted, St. Croix, VI 00820**

Creditor's mailing address

**Unknown**

Describe the lien
**Construction Lien**

Is the creditor an insider or related party?

☑ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?

☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**

As of the petition filing date, the claim is:
Check that all apply

**Do multiple creditors have an interest in the same property?**

| Debtor | **Limetree Bay Refining, LLC** | | Case number (if known) | **21-32354** |
|---|---|---|---|---|
| | Name | | | |

- ■ No
- ☐ Yes. Specify each creditor, including this creditor and its relative priority.

- ☐ Contingent
- ☐ Unliquidated
- ■ Disputed

---

| 2.3 | **Cleaver-Brooks Sales & Service Inc.** | Describe debtor's property that is subject to a lien **Unknown** | $120,738.00 | Unknown |
|---|---|---|---|---|

Creditor's Name

**1956 Singleton Blvd
Dallas, TX 75212**

Creditor's mailing address

Describe the lien
**Construction Lien**

Is the creditor an insider or related party?
- ■ No
- ☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?
- ■ No
- ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Date debt was incurred

Last 4 digits of account number

As of the petition filing date, the claim is:
Check all that apply
- ☐ Contingent
- ☐ Unliquidated
- ■ Disputed

**Do multiple creditors have an interest in the same property?**
- ■ No
- ☐ Yes. Specify each creditor, including this creditor and its relative priority.

---

| 2.4 | **Computer Solutions, Inc** | Describe debtor's property that is subject to a lien **Unknown** | $376,100.91 | Unknown |
|---|---|---|---|---|

Creditor's Name

**d/b/a CoStrack Project
Controls
3167 Energy Ln.
Casper, WY 82604**

Creditor's mailing address

Describe the lien
**Construction Lien**

Is the creditor an insider or related party?
- ■ No
- ☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?
- ■ No
- ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Date debt was incurred

Last 4 digits of account number

As of the petition filing date, the claim is:
Check all that apply
- ☐ Contingent
- ☐ Unliquidated
- ■ Disputed

**Do multiple creditors have an interest in the same property?**
- ■ No
- ☐ Yes. Specify each creditor, including this creditor and its relative priority.

---

| 2.5 | **Cust-O-Fab Specialty Services, LLC** | Describe debtor's property that is subject to a lien **Unknown** | $3,284,871.07 | Unknown |
|---|---|---|---|---|

Creditor's Name

**8888 W 21st St
Sand Springs, OK 74063**

Creditor's mailing address

Describe the lien
**Construction Lien**

---

Official Form 206D          Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**          page 2 of 9

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

Debtor   **Limetree Bay Refining, LLC**                                  Case number (if known)   **21-32354**
_____                                            _____
Name

| | |
|---|---|
| _____ | **Is the creditor an insider or related party?** |
| Creditor's email address, if known | ■ No |
| | ☐ Yes |
| **Date debt was incurred** | **Is anyone else liable on this claim?** |
| | ☐ No |
| **Last 4 digits of account number** | ■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) |
| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** Check all that apply |
| ■ No | ☐ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated |
| | ■ Disputed |

| | | | |
|---|---|---|---|
| 2.6 | **Cust-O-Fab, LLC** | Describe debtor's property that is subject to a lien | $2,064,855.00 |   Unknown |
| | Creditor's Name | **Unknown** | |
| | **8888 West 21st Street** **Sand Springs, OK 74063** | | |
| | Creditor's mailing address | **Describe the lien** **Construction Lien** | |
| | | **Is the creditor an insider or related party?** | |
| | | ■ No | |
| | Creditor's email address, if known | ☐ Yes | |
| | **Date debt was incurred** | **Is anyone else liable on this claim?** ☐ No | |
| | **Last 4 digits of account number** | ■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | |
| | **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** Check all that apply | |
| | ■ No | ☐ Contingent | |
| | ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated ■ Disputed | |

| | | | |
|---|---|---|---|
| 2.7 | **EnerMech Mechanical Services, Inc** | Describe debtor's property that is subject to a lien | $501,059.41 |   Unknown |
| | Creditor's Name | **Unknown** | |
| | **14000 West Road** **Houston, TX 77041** | | |
| | Creditor's mailing address | **Describe the lien** **Construction Lien** | |
| | | **Is the creditor an insider or related party?** | |
| | | ■ No | |
| | Creditor's email address, if known | ☐ Yes | |
| | **Date debt was incurred** | **Is anyone else liable on this claim?** ■ No | |
| | **Last 4 digits of account number** | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | |
| | **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** Check all that apply | |
| | ■ No | ☐ Contingent | |
| | ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated ■ Disputed | |

Debtor   **Limetree Bay Refining, LLC**
_____
Name

Case number (if known)   **21-32354**

| 2.8 | **Excel Construction & Maintenance VI** | **Describe debtor's property that is subject to a lien** | **$24,943,041.69** | **Unknown** |

Creditor's Name

**Unknown**

**8641 United Plaza Blvd**
**Baton Rouge, LA 70809**

Creditor's mailing address

**Describe the lien**

**Construction Lien**

Is the creditor an insider or related party?

Creditor's email address, if known

�True No
☐ Yes

Is anyone else liable on this claim?

**Date debt was incurred**

☐ No

☑ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**

☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☑ Disputed

---

| 2.9 | **Goldman Sachs Bank USA** | **Describe debtor's property that is subject to a lien** | **$50,320,833.33** | **Unknown** |

Creditor's Name

**Certain accounts, chattel paper, deposit accounts, documents, equipment, fixtures, general intangibles, instruments, intellectual property, investment property, letters of credit, commercial tort claims...of any Senior Lenders Collateral**

**as Administrative Agent**
**200 West Street**
**New York, NY 10282**

Creditor's mailing address

**Describe the lien**
**Revolver Debt Guarantee**

Is the creditor an insider or related party?

Creditor's email address, if known

☑ No
☐ Yes

Is anyone else liable on this claim?

**Date debt was incurred**

☐ No

☑ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**

☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☑ Contingent
☑ Unliquidated
☐ Disputed

---

| 2.1 0 | **Great Southern Technologies LLC** | **Describe debtor's property that is subject to a lien** | **$393,206.53** | **Unknown** |

Creditor's Name

**Unknown**

**Department 96-0504**
**Oklahoma City, OK**
**73196-0504**

Creditor's mailing address

**Describe the lien**
**Construction Lien**

Is the creditor an insider or related party?

☑ No
☐ Yes

Is anyone else liable on this claim?

Creditor's email address, if known

---

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2343 of 2637
2343
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 20 of 156

Debtor   **Limetree Bay Refining, LLC**                                   Case number *(if known)*   **21-32354**
_____
Name

| | |
|---|---|
| **Date debt was incurred** | ☐ No |
| | ■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) |
| **Last 4 digits of account number** | |

| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** |
|---|---|
| ■ No | Check all that apply |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Contingent |
| | ☐ Unliquidated |
| | ■ Disputed |

---

| 2.1 1 | **HKA Enterprises, LLC** | **Describe debtor's property that is subject to a lien** | $450,172.78 | Unknown |
|---|---|---|---|---|
| | Creditor's Name | **Unknown** | | |
| | **337 Spartangreen Blvd. Duncan, SC 29334** | | | |
| | Creditor's mailing address | **Describe the lien** | | |
| | | **Construction Lien** | | |
| | | **Is the creditor an insider or related party?** | | |
| | Creditor's email address, if known | ■ No | | |
| | | ☐ Yes | | |
| | | **Is anyone else liable on this claim?** | | |
| | **Date debt was incurred** | ■ No | | |
| | | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | | |
| | **Last 4 digits of account number** | | | |

| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** |
|---|---|
| ■ No | Check all that apply |
| ☐ Yes. Specify each creditor and its relative priority. | ☐ Contingent |
| | ☐ Unliquidated |
| | ■ Disputed |

---

| 2.1 2 | **InServ Field Services USVI, LLC** | **Describe debtor's property that is subject to a lien** | $19,670,362.10 | Unknown |
|---|---|---|---|---|
| | Creditor's Name | **Unknown** | | |
| | **1900 N 161st East Ave Tulsa, OK 74116** | | | |
| | Creditor's mailing address | **Describe the lien** | | |
| | | **Construction Lien** | | |
| | | **Is the creditor an insider or related party?** | | |
| | Creditor's email address, if known | ■ No | | |
| | | ☐ Yes | | |
| | | **Is anyone else liable on this claim?** | | |
| | **Date debt was incurred** | ☐ No | | |
| | | ■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | | |
| | **Last 4 digits of account number** | | | |

| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** |
|---|---|
| ■ No | Check all that apply |
| ☐ Yes. Specify each creditor and its relative priority. | ☐ Contingent |
| | ☐ Unliquidated |
| | ■ Disputed |

---

| 2.1 3 | **J. Aron & Company LLC** | **Describe debtor's property that is subject to a lien** | $221,952,054.00 | Unknown |
|---|---|---|---|---|

---

Debtor   **Limetree Bay Refining, LLC**                               Case number (if known)   **21-32354**
_____                                              _____
Name

| Creditor's Name | Accounts, accounts receivable, hydrocarbons and other inventory, deposit accounts, instruments, chattel paper, documents, tax refunds, commercial tort claims, and replacement proceeds of the J. Aron Collateral | | |

**200 West Street**
**New York, NY 10282**
Creditor's mailing address

Describe the lien
**Estimate Safe Harbor Agreement Guarantee**
Is the creditor an insider or related party?

Creditor's email address, if known
■ No
□ Yes
Is anyone else liable on this claim?

**Date debt was incurred**
□ No
■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

Do multiple creditors have an interest in the same property?

As of the petition filing date, the claim is:
Check all that apply

■ No
□ Yes. Specify each creditor, including this creditor and its relative priority.

■ Contingent
■ Unliquidated
□ Disputed

---

| 2.14 | **J. Aron & Company LLC** | Describe debtor's property that is subject to a lien | $25,087,659.68 | Unknown |

Creditor's Name

Accounts, accounts receivable, hydrocarbons and other inventory, deposit accounts, instruments, chattel paper, documents, tax refunds, commercial tort claims, and replacement proceeds of the J. Aron Collateral

**200 West Street**
**New York, NY 10282**
Creditor's mailing address

Describe the lien
**Tem Debt Guarantee**
Is the creditor an insider or related party?

Creditor's email address, if known
■ No
□ Yes
Is anyone else liable on this claim?

**Date debt was incurred**
■ No
■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

Do multiple creditors have an interest in the same property?

As of the petition filing date, the claim is:
Check all that apply

■ No
□ Yes. Specify each creditor, including this creditor and its relative priority.

■ Contingent
■ Unliquidated
□ Disputed

---

| 2.15 | **Panametrics, LLC** | Describe debtor's property that is subject to a lien | $21,844.00 | Unknown |

Creditor's Name
**1401 Elm St., 5th Floor**
**Lockbox**
**Dallas, TX 75284-8502**
Creditor's mailing address

Describe the lien
**Construction Lien**
Is the creditor an insider or related party?
■ No

---

Official Form 206D      Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**      page 6 of 9

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

Creditor's email address, if known

**Date debt was incurred**

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Yes
**Is anyone else liable on this claim?**

■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
■ Disputed

---

**2.16** | **Strategic Contract Resources, LLC** | Describe debtor's property that is subject to a lien | **$830,079.50** | **Unknown** |

Creditor's Name

**PO Box 823461**
**Philadelphia, PA 19182**

**Unknown**

Creditor's mailing address

**Describe the lien**
**Construction Lien**
**Is the creditor an insider or related party?**
■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
■ Disputed

---

**2.17** | **Universal Plant Services, (VI), LLC** | Describe debtor's property that is subject to a lien | **$26,263,226.16** | **Unknown** |

Creditor's Name

**806 Seaco Court**
**Deer Park, TX 77536**

**Unknown**

Creditor's mailing address

**Describe the lien**
**Construction Lien**
**Is the creditor an insider or related party?**
■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
■ Disputed

---

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

Case 4:22-cv-00040    Document 7    Filed on 02/08/22 in TXSD    Page 2346 of 2637
2346
Case 21-32351    Document 546    Filed in TXSB on 09/07/21    Page 23 of 156

Debtor  **Limetree Bay Refining, LLC**                                    Case number (if known)    **21-32354**
_____                                              _____
Name

| 2.1 8 | **V.I. Industrial Services, LLC** | Describe debtor's property that is subject to a lien | $4,466,993.76 | Unknown |

**2.1 8**

**V.I. Industrial Services, LLC**
Creditor's Name

**PMB #6002 Est. Diamond Ruby Christiansted, VI 00820**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

Describe debtor's property that is subject to a lien          $4,466,993.76          Unknown
**Unknown**

Describe the lien
**Construction Lien**
**Is the creditor an insider or related party?**
■ No
☐ Yes
**Is anyone else liable on this claim?**
☐ No
■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
■ Disputed

---

**2.1 9**

**Vivot Equipment Corporation**
Creditor's Name

**9010 Estate Cottage Christiansted, VI 00820**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

Describe debtor's property that is subject to a lien          $9,765,557.08          Unknown
**Unknown**

Describe the lien
**Construction Lien**
**Is the creditor an insider or related party?**
■ No
☐ Yes
**Is anyone else liable on this claim?**
☐ No
■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
■ Disputed

---

**2.2 0**

**Wilmington Trust, N.A.**
Creditor's Name

**1100 N. Market Street Wilmington, DE 19890**
Creditor's mailing address

Creditor's email address, if known

Describe debtor's property that is subject to a lien          $758,993,241.96          Unknown
**Certain accounts, chattel paper, deposit accounts, documents, equipment, fixtures, general intangibles, instruments, intellectual property, investment property, letters of credit, commercial tort claims...of any Senior Lenders Collateral**

Describe the lien
**Term Debt**
**Is the creditor an insider or related party?**
■ No
☐ Yes

---

Official Form 206D          Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**          page 8 of 9

Debtor  **Limetree Bay Refining, LLC**                                    Case number (if known)   **21-32354**

Name

| | |
|---|---|
| **Date debt was incurred** | **Is anyone else liable on this claim?** |
| | ☐ No |
| **Last 4 digits of account number** | ■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) |
| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** Check all that apply |
| ■ No | ☐ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated |
| | ☐ Disputed |

---

| 2.2 1 | **Worley Pan American Corporation** | **Describe debtor's property that is subject to a lien** | $2,664,105.61 | Unknown |
|---|---|---|---|---|
| | Creditor's Name | **Unknown** | | |
| | **f/k/a Jacobs Pan-Americasn Corp 5995 Rogerdale Road Houston, TX 77072** | | | |
| | Creditor's mailing address | **Describe the lien** | | |
| | | **Construction Lien** | | |
| | | **Is the creditor an insider or related party?** | | |
| | | ■ No | | |
| | Creditor's email address, if known | ☐ Yes | | |
| | | **Is anyone else liable on this claim?** | | |
| | **Date debt was incurred** | ■ No | | |
| | | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | | |
| | **Last 4 digits of account number** | | | |
| | **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** Check all that apply | | |
| | ■ No | ☐ Contingent | | |
| | ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated | | |
| | | ■ Disputed | | |

---

3.  Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.    **$1,160,056,794.65**

**Part 2:**  **List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name  and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| | | |

---

Official Form 206D              Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**                 page 9 of 9

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

| Fill in this information to identify the case: |
|---|

Debtor name  **Limetree Bay Refining, LLC**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF TEXAS

Case number (if known)   **21-32354**

☐ Check if this is an amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims          12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

### Part 1:    List All Creditors with PRIORITY Unsecured Claims

1.  **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

    ■ No. Go to Part 2.

    ☐ Yes. Go to line 2.

### Part 2:    List All Creditors with NONPRIORITY Unsecured Claims

3.  **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

| | | Amount of claim |
|---|---|---|
| **3.1** | **Nonpriority creditor's name and mailing address**<br>**Abatix Corp**<br>**PO Box 6712020**<br>**Dallas, TX 75267-1202**<br><br>Date(s) debt was incurred _<br><br>Last 4 digits of account number _ | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim: **Trade Debt**<br><br>Is the claim subject to offset? ■ No ☐ Yes | **$41,108.93** |
| **3.2** | **Nonpriority creditor's name and mailing address**<br>**ABC Janitors of St. Croix, Inc.**<br>**PO Box 24510**<br>**Christiansted, St. Croix, VI 00824**<br><br>Date(s) debt was incurred _<br><br>Last 4 digits of account number _ | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim: **Services**<br><br>Is the claim subject to offset? ■ No ☐ Yes | **$9,321.54** |
| **3.3** | **Nonpriority creditor's name and mailing address**<br>**AC Systems Integration Inc**<br>**10325 E. 58th St**<br>**Tulsa, OK 74147**<br><br>Date(s) debt was incurred _<br><br>Last 4 digits of account number _ | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim: **Trade Debt**<br><br>Is the claim subject to offset? ■ No ☐ Yes | **$40,548.75** |
| **3.4** | **Nonpriority creditor's name and mailing address**<br>**Access Sciences Corporation**<br>**1900 West Loop South**<br>**Suite 250**<br>**Houston, TX 77027**<br><br>Date(s) debt was incurred _<br><br>Last 4 digits of account number _ | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim: **Trade Debt**<br><br>Is the claim subject to offset? ■ No ☐ Yes | **$19,250.00** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2349 of 2637
2349
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 26 of 156

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
| --- | --- | --- | --- |

---

**3.5** | Nonpriority creditor's name and mailing address

**Acconda, LP**
**d/b/a Aqua Drill Internat**
**1300 FM 646 West**
**Dickinson, TX 77539**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

$164,787.82

---

**3.6** | Nonpriority creditor's name and mailing address

**Acuren Inspection, Inc.**
**PO Box 846313**
**Dallas, TX 75284-6313**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

$79,185.24

---

**3.7** | Nonpriority creditor's name and mailing address

**Adams Valves, Inc**
**12303 Cutten Road**
**Houston, TX 77066**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

$50,728.00

---

**3.8** | Nonpriority creditor's name and mailing address

**Advanced Electrical & Motor Control**
**1801 Hurd Drive**
**Irving, TX 75038**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

$284,227.00

---

**3.9** | Nonpriority creditor's name and mailing address

**Advanced Overhead Crane Services, Inc.**
**22531 FM 2100 Rd**
**Crosy, TX 77532**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

$420,437.78

---

**3.10** | Nonpriority creditor's name and mailing address

**AFCO Credit Insurance**
**4501 College Blvd**
**Suite 320**
**Leawood, KS 66211**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __trade debt__

Is the claim subject to offset? ■ No ☐ Yes

$913,105.04

---

**3.11** | Nonpriority creditor's name and mailing address

**AGI Industries, Inc**
**PO Box 3604**
**Lafayette, LA 70502**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

$30,791.35

---

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

| 3.12 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$188.30** |
|---|---|---|---|

**Air Cargo Carriers, LLC**
**4940 S. Howell Ave.**
**Milwaukee, WI 53207**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☑ No ☐ Yes

| 3.13 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$7,240.00** |
|---|---|---|---|

**Air Liquide America L.P.**
**PO Box 532609**
**Atlanta, GA 30353-2609**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☑ No ☐ Yes

| 3.14 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$50,000.00** |
|---|---|---|---|

**Aire Tech Mechanical Services, Inc**
**4362 Motorsports Dr**
**Concord, NC 28027**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☑ No ☐ Yes

| 3.15 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$7,131.00** |
|---|---|---|---|

**Akili, Inc.**
**901 W Walnut Hlll Lane**
**Suite 130-B**
**Irving, TX 75038-1001**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☑ No ☐ Yes

| 3.16 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$11,018.53** |
|---|---|---|---|

**Alfred Conhagen, Inc. of Louisiana**
**1020 Industry Road**
**Kenner, LA 70062**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☑ No ☐ Yes

| 3.17 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$91,862.53** |
|---|---|---|---|

**Allen's Electric Motor Service, Inc**
**400 Roy Hoppy Hopkins Dr**
**Vivian, LA 71082**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☑ No ☐ Yes

| 3.18 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$50,000.00** |
|---|---|---|---|

**Allison Industrial Services, LLC**
**19221 1-45 South**
**Shenandoah, TX 77385**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☑ No ☐ Yes

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

| 3.19 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**Allison Industrial Services, LLC**
19221 1-45 South
Shenandoah, TX 77385

■ Contingent
■ Unliquidated
■ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim:  **Completion Program Bonus**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.20 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

**AltairStrickland V.I., LLC**
1605 S. Battleground Road
La Porte, TX 77571

■ Contingent
■ Unliquidated
■ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim:  **Completion Program Bonus**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.21 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $79,875.00 |
|---|---|---|---|

**American Fuel & Petrochemical**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim:  **trade debt**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.22 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $379,535.29 |
|---|---|---|---|

**AMSPEC LLC**
3800 Highway 225
Pasadena, TX 77503

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.23 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $1,864,538.62 |
|---|---|---|---|

**Analytic Stress Relieving, Inc.**
3118 W. Pinhook Road
Lafayette, LA 70505

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.24 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $10,745.00 |
|---|---|---|---|

**Antillean Engineers, Inc.**
PO Box 3023
Kingshill, VI 00851

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.25 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $2,524.50 |
|---|---|---|---|

**Antilles Gas Corporation**
PO Box 5435
Christiansted, St. Croix, VI 00823

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim:  **Utilities**

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Limetree Bay Refining, LLC** | | Case number (if known) | **21-32354** |
|---|---|---|---|---|
| | Name | | | |

| 3.26 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $281,250.00 |
|---|---|---|---|
| | **Arclight Capital Partners, LLC** | ☐ Contingent | |
| | | ☐ Unliquidated | |
| | Date(s) debt was incurred _ | ☐ Disputed | |
| | Last 4 digits of account number _ | Basis for the claim: _ | |
| | | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.27 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $95,823.82 |
|---|---|---|---|
| | **Aries Worldwide Logistics** | ☐ Contingent | |
| | **1501 E. Richley Road** | ☐ Unliquidated | |
| | **Houston, TX 77073** | ☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.28 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $254,750.40 |
|---|---|---|---|
| | **Arvos Ljungstrom LLC** | ☐ Contingent | |
| | **3020 Truax Road** | ☐ Unliquidated | |
| | **Wellsville, NY 14895** | ☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.29 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $10,825.48 |
|---|---|---|---|
| | **ASGCO Manufacturing Inc** | ☐ Contingent | |
| | **301 W. Gordon Street** | ☐ Unliquidated | |
| | **Allentown, PA 18102** | ☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.30 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $207,211.00 |
|---|---|---|---|
| | **Aspen Technology, Inc.** | ☐ Contingent | |
| | **20 Crosby Drive** | ☐ Unliquidated | |
| | **Bedford, MA 01730** | ☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.31 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $102,391.20 |
|---|---|---|---|
| | **Atlantic Equipment Resources** | ☐ Contingent | |
| | **70 Kinderkamack Road** | ☐ Unliquidated | |
| | **Emerson, NJ 07630** | ☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.32 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $35,170.00 |
|---|---|---|---|
| | **Austin Fire Systems, LLC** | ☐ Contingent | |
| | **PO Box 411** | ☐ Unliquidated | |
| | **Prairieville, LA 70769** | ☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

---

| 3.33 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$576,127.00** |
|---|---|---|---|

**Aveva Software, LLC**
**26561 Rancho Parkway South**
**Lake Forest, CA 92630-8301**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** Trade Debt

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.34 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$325,978.56** |
|---|---|---|---|

**AWC INC**
**6655 Exchequer Dr**
**Baton Rouge, LA 70809**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** Trade Debt

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.35 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$535,821.39** |
|---|---|---|---|

**Axens NA**
**650 College Road East**
**Princeton, NJ 08540**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** Trade Debt

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.36 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$16,071.00** |
|---|---|---|---|

**Aztron Chemical Services, Inc.**
**4530 New West Drive**
**Pasadena, TX 77507**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** Trade Debt

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.37 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$70,000.00** |
|---|---|---|---|

**Badger Project Services LLC**
**2711 Lakeview Dr.**
**Rockport, TX 78382**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** Trade Debt

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.38 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$529,010.82** |
|---|---|---|---|

**Baker Hughes Energy Services LLC**
**17021 Aldine Westfield Road**
**Houston, TX 77073**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** Trade Debt

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.39 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$2,323,806.17** |
|---|---|---|---|

**Baker Hughes Oilfield Operations, Inc**
**PO Box 301057**
**Dallas, TX 75303-1057**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** Trade Debt

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

---

| 3.40 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$83,682.86** |
|---|---|---|---|

**Ballard Hospitality, LLC**
**180 New Camellia Blvd**
**Suite 100**
**Covington, LA 70433**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.41 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$190,741.45** |
|---|---|---|---|

**Ballard Hospitality-VI, LLC**
**180 New Camelia Blvd**
**Suite 100**
**Covington, LA 70433**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.42 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$29,873.92** |
|---|---|---|---|

**Barr Engineering Co.**
**4300 Market Pointe Dr.**
**Suite 200**
**Minneapolis, MN 55435**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.43 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$27,999.98** |
|---|---|---|---|

**Battery Backup Power, Inc**
**3183-F Airway Ave.**
**Suite 114**
**Costa Mesa, CA 92626**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.44 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$16,649.03** |
|---|---|---|---|

**Baytek International, Inc.**
**401 N. Shoreline Blvd.**
**Corpus Christi, VI 78401**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.45 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$559,705.71** |
|---|---|---|---|

**Becht Engineering Co Inc.**
**22 Church Street**
**Liberty Corner, NJ 07938**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.46 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$46,590.38** |
|---|---|---|---|

**Beville Engineering Co.**
**7087 Corporate Way**
**Dayton, OH 45459**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2355 of 2637
2355
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 32 of 156

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

| 3.47 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$125,493.00** |
|---|---|---|---|

**BGS, L.L.C.**
**PO Box 1329**
**Gonzales, LA 70707**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.48 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$900.00** |
|---|---|---|---|

**Bohlke, LLC**
**PO Box 9936**
**Kingshill, VI 00850**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.49 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$591,755.52** |
|---|---|---|---|

**Boulden Company Inc.**
**1013 Conshohocken Road**
**Conshohocken, PA 19428**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.50 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |
|---|---|---|---|

**Brand Safway Solutions USVI LLC**

☒ Contingent
☒ Unliquidated
☒ Disputed

Date(s) debt was incurred _

Basis for the claim: __Completion Program Bonus__

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.51 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |
|---|---|---|---|

**Broadband VI LLC**
**Attn: Michael**
**2163 Hospital St**
**Christiansted, VI 00820**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Internet Services - for notice purposes__

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.52 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$17,200.00** |
|---|---|---|---|

**Broadleaf IT, LLC**
**d/b/a Broadleaf Gro**
**13100  Wortham Center Drive**
**Houston, TX 77065**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.53 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$15,236.00** |
|---|---|---|---|

**BS&B Safety Systems, LLC**
**7455 E 46th Street**
**Tulsa, OK 74145**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|

| 3.54 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$272,657.49** |
|---|---|---|---|

**Cameron Solution Inc a Schlumberger**
**PO Box 731413**
**Dallas, TX 75373-1413**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.55 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$4,590.00** |
|---|---|---|---|

**Carrier Credit Services, Inc.**
**5350 W. Hillsboro Blvd.**
**Coconut Creek, FL 33073-4396**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.56 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$18,690.00** |
|---|---|---|---|

**Catalyst and Chemical Containers, L**
**4935 Timber Creek Dr**
**Houston, TX 77017**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.57 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$139,000.00** |
|---|---|---|---|

**Cembell Industries, Inc**
**PO Box 40**
**Norco, LA 70079**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.58 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$114,028.31** |
|---|---|---|---|

**Centerline Car Rentals, Inc.**
**PO Box 1529**
**Kingshill, St. Croix, VI 00851-1529**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.59 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$88,677.85** |
|---|---|---|---|

**CFGI Holdings**
**d/b/a CFGI, LLC**
**99  High Street**
**30th Floor**
**Boston, MA 02110**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.60 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$427,918.25** |
|---|---|---|---|

**Chalmers & Kubeck, Inc.**
**PO Box 2447**
**Aston, PA 19014-0447**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

---

**3.61**

**Nonpriority creditor's name and mailing address**
**Chalmers & Kubeck, Inc.**
**PO Box 2447**
**Aston, PA 19014-0447**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

■ Contingent
■ Unliquidated
■ Disputed

Basis for the claim: **Completion Program Bonus**

Is the claim subject to offset? ■ No ☐ Yes

**Unknown**

---

**3.62**

**Nonpriority creditor's name and mailing address**
**Champion Petroleum, Inc.**
**LOT #26 Julio N Matos Ind Park**
**Carolina, PR 00984**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$23,578.52**

---

**3.63**

**Nonpriority creditor's name and mailing address**
**Charter Brokerage LLC**
**383 Main Ave**
**Suite 400**
**Norwalk, CT 06851**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$2,680.49**

---

**3.64**

**Nonpriority creditor's name and mailing address**
**Classic Controls, Inc.**
**5095 S. Lakeland Drive**
**Lakeland, FL 33813**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$421,308.55**

---

**3.65**

**Nonpriority creditor's name and mailing address**
**Coking.com**
**3901 Kings Row**
**Reno, NV 89503**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$151,478.00**

---

**3.66**

**Nonpriority creditor's name and mailing address**
**Comdata Network, Inc.**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$105,623.21**

---

**3.67**

**Nonpriority creditor's name and mailing address**
**Complan USA LLC**
**16417 Squyres Road**
**Spring, TX 77379**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Trade Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$1,713,794.51**

---

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2358 of 2637
2358
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 35 of 156

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

| 3.68 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $142,967.03 |
|---|---|---|---|

**Compressed Air Corporation**
**450 West 27 Street**
**Hialeah, FL 33010**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.69 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $142,689.83 |
|---|---|---|---|

**Compressor Controls Corporation**
**4745 121st Street**
**Des Moines, IA 50323**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.70 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $122,770.00 |
|---|---|---|---|

**Concentric, LLC**
**6311 Antoine**
**Houston, TX 77091**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.71 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $29,728.05 |
|---|---|---|---|

**Concur Technologies, Inc.**
**62157 Collections Center Drive**
**Chicago, IL 60693**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.72 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $1,010,072.19 |
|---|---|---|---|

**Control Associates Caribe**
**475 Street C**
**Guayabo, PR 00969-4272**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.73 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $398,338.08 |
|---|---|---|---|

**Control System Technologies, LLC**
**PO Box 781686**
**Orlando, FL 32878**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.74 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $2,870.36 |
|---|---|---|---|

**Controls Southeast Inc.**
**PO Box 742669**
**Atlanta, GA 30374-2669**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

| Debtor | **Limetree Bay Refining, LLC** | | Case number (if known) | **21-32354** |
|---|---|---|---|---|
| | Name | | | |

---

| 3.75 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,634,277.00** |
|---|---|---|---|
| | **Coral Management Group LLC**<br>**435 N. 2nd Street**<br>**Lewiston, NY 14092** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | **Date(s) debt was incurred** _ | **Basis for the claim:** <u>Trade Debt</u> | |
| | **Last 4 digits of account number** _ | Is the claim subject to offset? ■ No ☐ Yes | |

---

| 3.76 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$99,274.50** |
|---|---|---|---|
| | **Core and Main LP**<br>**PO Box 28330**<br>**St. Louis, MO 63146** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | **Date(s) debt was incurred** _ | **Basis for the claim:** <u>Trade Debt</u> | |
| | **Last 4 digits of account number** _ | Is the claim subject to offset? ■ No ☐ Yes | |

---

| 3.77 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$15,946.00** |
|---|---|---|---|
| | **Cortelco Systems**<br>**PO Box 7076**<br>**Caguas, PR 00726-7076** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | **Date(s) debt was incurred** _ | **Basis for the claim:** <u>Trade Debt</u> | |
| | **Last 4 digits of account number** _ | Is the claim subject to offset? ■ No ☐ Yes | |

---

| 3.78 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$118,126.60** |
|---|---|---|---|
| | **Crawford Electric Supply**<br>**36426 Hwy 30**<br>**Geismar, LA 70734** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | **Date(s) debt was incurred** _ | **Basis for the claim:** <u>Trade Debt</u> | |
| | **Last 4 digits of account number** _ | Is the claim subject to offset? ■ No ☐ Yes | |

---

| 3.79 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$8,610.00** |
|---|---|---|---|
| | **Crowley Liner Services**<br>**9487 Regency Square Blvd**<br>**Jacksonville, FL 32225** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | **Date(s) debt was incurred** _ | **Basis for the claim:** <u>Trade Debt</u> | |
| | **Last 4 digits of account number** _ | Is the claim subject to offset? ■ No ☐ Yes | |

---

| 3.80 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$5,397.00** |
|---|---|---|---|
| | **Crucianpoint, LLC**<br>**PO Box 223062**<br>**Christiansted, VI 00822** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | **Date(s) debt was incurred** _ | **Basis for the claim:** <u>Trade Debt</u> | |
| | **Last 4 digits of account number** _ | Is the claim subject to offset? ■ No ☐ Yes | |

---

| 3.81 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$170,825.00** |
|---|---|---|---|
| | **Cruzan Environmental**<br>**PO Box 3018**<br>**St. Croix, VI 00851** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | **Date(s) debt was incurred** _ | **Basis for the claim:** <u>Trade Debt</u> | |
| | **Last 4 digits of account number** _ | Is the claim subject to offset? ■ No ☐ Yes | |

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

---

| 3.82 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $117,613.58 |
|---|---|---|---|

**Daily Thermetrics Corporation**
**5700 Hartsdale Drive**
**Houston, TX 77036**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _Trade Debt_

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.83 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $39,214.76 |
|---|---|---|---|

**Desalters-LLC**
**1947 Lago Vista Blvd**
**Palm Harbor, FL 34685**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _Trade Debt_

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.84 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $7,278.59 |
|---|---|---|---|

**DHL Express - USA**
**16592 Collections Center Drive**
**Chicago, IL 60693**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _Trade Debt_

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.85 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $569,424.84 |
|---|---|---|---|

**DNOW L.P.**
**PO Box 200822**
**Dallas, TX 75320-0822**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _Trade Debt_

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.86 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $75.00 |
|---|---|---|---|

**Don Peter**
**PO Box 5268**
**St. Croix, VI 00851**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _Trade Debt_

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.87 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $3,671,292.62 |
|---|---|---|---|

**Dresser-Rand Company**
**100 E Chemung St**
**Painted Post, NY 14870**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _Trade Debt_

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.88 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $12,949.84 |
|---|---|---|---|

**Dubois Chemicals Inc.**
**3630 East Kemper Road**
**Cincinnati, OH 45241**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _Trade Debt_

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

| 3.89 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$35,243.82** |
|---|---|---|---|

**Duke Earl Given**
**2839 W Kennewick Ave**
**#186**
**Kennewick, WA 99336**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  Trade Debt

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.90 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$7,071.04** |
|---|---|---|---|

**Dyer & Payne, Inc.**
**455 Plaza Drive**
**Atlanta, GA 30349**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  Trade Debt

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.91 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$1,364,132.41** |
|---|---|---|---|

**Dynamic Innovative Corporation**
**306 Williams Delight**
**Frederiksted, VI 00840**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  Trade Debt

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.92 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$138,175.59** |
|---|---|---|---|

**DYONYX, L.P.**
**13430 Northwest Freeway**
**Houston, TX 77040**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  Trade Debt

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.93 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$96,894.00** |
|---|---|---|---|

**Eaton Corporation**
**1000 Eaton Boulevard**
**Cleveland, OH 44122**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  Trade Debt

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.94 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$29,530.00** |
|---|---|---|---|

**Elastec Inc**
**1309 West Main Street**
**Carmi, IL 62821**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  Trade Debt

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.95 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$25,034,562.76** |
|---|---|---|---|

**Elite Turnaround Specialists, Ltd.**
**225 S 16th Street**
**La Porte, TX 77571**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  Trade Debt

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

| 3.96 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **Unknown** |
|---|---|---|---|

**Elite Turnaround Specialists, Ltd.**
225 S 16th Street
La Porte, TX 77571

■ Contingent
■ Unliquidated
■ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **Completion Program Bonus**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.97 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$73,410.00** |
|---|---|---|---|

**Elliott Company**
901 N. 4th Street
Jeannette, PA 15644

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.98 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$435,697.50** |
|---|---|---|---|

**Embark Consulting LLC**
2919 Commerce Street
Suite 400
Dallas, TX 75226

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.99 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$9,391.95** |
|---|---|---|---|

**Emerson Puerto Rico, Inc.**
475 Calle C Suite 501 Los Frailes
Guayabo, PR 00969

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.100 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$1,062.50** |
|---|---|---|---|

**Emic Communications, LLC**
863 Mission Hills Drive
New Braunfels, TX 78130

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.101 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$356,895.48** |
|---|---|---|---|

**Engineered Parts and Services, Inc.**
PO Box 1899
Vega Alta, PR 00692-1899

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.102 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$1,336,277.51** |
|---|---|---|---|

**Englobal U.S. Inc.**
225 Portwall St.
Houston, TX 77029

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No  ☐ Yes

---

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

---

| 3.103 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **Unknown** |
|---|---|---|---|

**Environmental Protection Agency**
**Region 2**
**290 Broadway**
**New York, NY 10007-1866**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **for notice purposes**

Last 4 digits of account number __

Is the claim subject to offset? ☐ No  ☐ Yes

---

| 3.104 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$126,390.00** |
|---|---|---|---|

**Environmental Systems Corporation**
**10801 N. Mopac Expressway**
**Bldg. 1, Suite 200**
**Austin, TX 78759**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **Trade Debt**

Last 4 digits of account number __

Is the claim subject to offset? ☐ No  ☐ Yes

---

| 3.105 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$6,160.00** |
|---|---|---|---|

**Envision VI**
**PO Box 7446**
**St. Thomas, VI 00801**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **Trade Debt**

Last 4 digits of account number __

Is the claim subject to offset? ☐ No  ☐ Yes

---

| 3.106 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$62,450.00** |
|---|---|---|---|

**Erichson Company Inc**
**3008 18th Street**
**Metarie, LA 70002**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **Trade Debt**

Last 4 digits of account number __

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.107 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$194,230.00** |
|---|---|---|---|

**ERP Software Services LLC**
**1309 Coffeen Avenue**
**Suite 1200**
**Sheridan, WY 82801**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **Trade Debt**

Last 4 digits of account number __

Is the claim subject to offset? ☐ No  ☐ Yes

---

| 3.108 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$434,206.64** |
|---|---|---|---|

**Evoqua Water Technologies LLC**
**28563 Network Place**
**Chicago, IL 60673-1285**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **Trade Debt**

Last 4 digits of account number __

Is the claim subject to offset? ☐ No  ☐ Yes

---

| 3.109 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **Unknown** |
|---|---|---|---|

**Excel Construction & Maintenance VI**
**8641 United Plaza Blvd**
**Baton Rouge, LA 70809**

■ Contingent
■ Unliquidated
■ Disputed

Date(s) debt was incurred __

Basis for the claim:  **Completion Program Bonus**

Last 4 digits of account number __

Is the claim subject to offset? ■ No  ☐ Yes

---

| Debtor | **Limetree Bay Refining, LLC** | | Case number (if known) | **21-32354** |
|---|---|---|---|---|
| | Name | | | |

| 3.110 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $85,750.00 |
|---|---|---|---|

**F&M Mafco, Inc.**
**9149 Dry Fork Road**
**Harrison, OH 45030**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.111 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $45,995.00 |
|---|---|---|---|

**Farrell Equipment & Controls, Inc.**
**263 Cox Street**
**Roselle, NJ 07203**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.112 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $2,010.81 |
|---|---|---|---|

**Federal Express (USVI)**
**701 Waterford Way**
**Miami, FL 33126**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.113 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $13,440.00 |
|---|---|---|---|

**Fern Engineering**
**PO Box 957**
**Wareham, MA 02571**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.114 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $70,000.00 |
|---|---|---|---|

**Fleetwood Project Services, LLC**
**5 Kagle Ct**
**Chapin, SC 29036**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.115 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $20,827.19 |
|---|---|---|---|

**Flemings' Transport Co., Inc.**
**PO Box 4310**
**St. Croix, VI 00851**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.116 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $18,750.00 |
|---|---|---|---|

**Flexicrew Technical, LLC**
**7047 Lee Hwy**
**Suite 100**
**Chattanooga, TN 37421**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

| 3.117 | **Nonpriority creditor's name and mailing address**<br>**Flexitank, Inc.**<br>**PO Box 51928**<br>**Toa Baja, PR 00950-1928** | **As of the petition filing date, the claim is:** Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$550.00** |
|---|---|---|---|
| | Date(s) debt was incurred _ | **Basis for the claim:** __Trade Debt__ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.118 | **Nonpriority creditor's name and mailing address**<br>**Flowserve US INC**<br>**4179 Collections Center Drive**<br>**Chcago, IL 60693** | **As of the petition filing date, the claim is:** Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$1,082,523.27** |
| | Date(s) debt was incurred _ | **Basis for the claim:** __Trade Debt__ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.119 | **Nonpriority creditor's name and mailing address**<br>**FMMVI, LLC**<br>**11634 Darryl Drive**<br>**Baton Rouge, LA 70815** | **As of the petition filing date, the claim is:** Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$325,027.14** |
| | Date(s) debt was incurred _ | **Basis for the claim:** __Trade Debt__ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.120 | **Nonpriority creditor's name and mailing address**<br>**FR Consulting LLC**<br>**Calle Sol A-6**<br>**Puertas Del Sol**<br>**Fajardo, PR 00738** | **As of the petition filing date, the claim is:** Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$51,870.00** |
| | Date(s) debt was incurred _ | **Basis for the claim:** __Trade Debt__ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.121 | **Nonpriority creditor's name and mailing address**<br>**Freepoint Commodities LLC**<br>**58 Commerce Road**<br>**Stamford, CT 06902** | **As of the petition filing date, the claim is:** Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$33,575.25** |
| | Date(s) debt was incurred _ | **Basis for the claim:** __Trade Debt__ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.122 | **Nonpriority creditor's name and mailing address**<br>**G.A.S. Global Services LLC**<br>**14100 Southwest Freeway**<br>**Suite 320**<br>**Sugar Land, TX 77479** | **As of the petition filing date, the claim is:** Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$9,415.00** |
| | Date(s) debt was incurred _ | **Basis for the claim:** __Trade Debt__ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.123 | **Nonpriority creditor's name and mailing address**<br>**G4S Secure Integration**<br>**PO Box 74008035**<br>**Chicago, IL 60674-8035** | **As of the petition filing date, the claim is:** Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$80,678.84** |
| | Date(s) debt was incurred _ | **Basis for the claim:** __Trade Debt__ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2366 of 2637
2366
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 43 of 156

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

| 3.124 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $492,093.00 |
|---|---|---|---|

**Gas Turbine Parts & Services, Inc.**
**421 Route 146**
**Halfmoon, NY 12065**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.125 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $464,696.17 |
|---|---|---|---|

**General Gases of the VI, Inc.**
**PO Box 363868**
**San Juan, PR 00936-3868**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.126 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $145,122.39 |
|---|---|---|---|

**Generator and Motor Services**
**601 Braddock Avenue**
**Turtle Creek, PA 15145**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.127 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $1,010,485.57 |
|---|---|---|---|

**Gibson, Dunn, & Crutcher LLP**
**811 Main Street**
**Houston, TX 77002**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Legal Fees**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.128 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $16,442.46 |
|---|---|---|---|

**Global Engagement Support Services**
**PO Box 964**
**Christiansted, VI 00821**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.129 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $251,423.20 |
|---|---|---|---|

**Gulf Oil Limited Partnership**
**80 Williams Street**
**Wellesley Hills, MA 02481**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.130 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $346,129.12 |
|---|---|---|---|

**H & K Engineering, LLC**
**2644 S. Sherwood Forest Blvd**
**Baton Rouge, LA 70816**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

| 3.131 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$202,692.40** |
|---|---|---|---|

**Hatfield and Company, Inc.**
2475 Discovery Blvd.
Rockwall, TX 75032

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☐ No ☐ Yes

| 3.132 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$2,557.69** |
|---|---|---|---|

**Heavy Materials, LLC**
1 Estate Montpellier
St. Croix, VI 00840

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☐ No ☐ Yes

| 3.133 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$135.26** |
|---|---|---|---|

**HireRight LLC**
PO Box 847891
Dallas, TX 75284-7891

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☐ No ☐ Yes

| 3.134 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$28,289.00** |
|---|---|---|---|

**HMT LLC**
24 Waterway Ave
The Woodlands, TX 77380

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☐ No ☐ Yes

| 3.135 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |
|---|---|---|---|

**HMT LLC**
24 Waterway Ave
The Woodlands, TX 77380

■ Contingent
■ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Completion Program Bonus__

Last 4 digits of account number _

Is the claim subject to offset? ☐ No ☐ Yes

| 3.136 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$826,490.20** |
|---|---|---|---|

**Honeywell Enraf Americas, Inc.**
2000 Northfield Court
Roswell, GA 30076

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☐ No ☐ Yes

| 3.137 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$326,646.21** |
|---|---|---|---|

**Honeywell International Inc (Proces**
1250 Sam Houston Parkway South
Houston, TX 77042

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2368 of 2637
2368
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 45 of 156

Debtor   **Limetree Bay Refining, LLC**          Case number (if known)   **21-32354**

Name

---

| 3.138 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $9,193.00 |

**Houston Dynamic Service, Inc.**
**8150 Lawndale**
**Houston, TX 77012**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.139 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $9,957.00 |

**Hudson Products Corporation**
**9660 Grunwald Rd**
**Beasley, TX 77417**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.140 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $33,881.36 |

**IHS Global Inc.**
**PO Box 847193**
**Dallas, TX 75284-7193**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.141 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $21,768.57 |

**Industrial Fittings & Valves**
**PO Box 2329**
**Toa Baja, PR 00951-2329**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.142 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |

**InServ Field Services USVI, LLC**
**1900 N 161st East Ave**
**Tulsa, OK 74116**

☒ Contingent
☒ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Completion Program Bonus**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.143 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $108,543.77 |

**Insulating Services, Inc.**
**10709 Granite St.**
**Suite H**
**Charlotte, NC 28273-6353**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.144 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $1,781,755.76 |

**Intertek USA, Inc.**
**200 Westlake Park Blvd.**
**Suite 400**
**Houston, TX 77079**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2369 of 2637
2369
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 46 of 156

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

| 3.145 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$9,998.20** |
|---|---|---|---|
| | **ISS Marine Services, Inc.** | ☐ Contingent | |
| | **11 North Water Street** | ☐ Unliquidated | |
| | **Mobile, AL 36602** | ☐ Disputed | |
| | Date(s) debt was incurred ___ | Basis for the claim: __Trade Debt__ | |
| | Last 4 digits of account number ___ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.146 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$712.70** |
|---|---|---|---|
| | **Jeffrey Rinker** | ☐ Contingent | |
| | **4410 Westheimer Rd.** | ☐ Unliquidated | |
| | **Apt. 1401** | ☐ Disputed | |
| | **Houston, TX 77027** | | |
| | Date(s) debt was incurred ___ | Basis for the claim: __Trade Debt__ | |
| | Last 4 digits of account number ___ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.147 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$70,000.00** |
|---|---|---|---|
| | **John C. Cothern** | ☐ Contingent | |
| | **8 Barberry Court** | ☐ Unliquidated | |
| | **Columbia, SC 29212** | ☐ Disputed | |
| | Date(s) debt was incurred ___ | Basis for the claim: __Trade Debt__ | |
| | Last 4 digits of account number ___ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.148 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$767,815.90** |
|---|---|---|---|
| | **John Crane Inc.** | ☐ Contingent | |
| | **24929 Network Place** | ☐ Unliquidated | |
| | **Chicago, IL 60673-1249** | ☐ Disputed | |
| | Date(s) debt was incurred ___ | Basis for the claim: __Trade Debt__ | |
| | Last 4 digits of account number ___ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.149 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$233,490.25** |
|---|---|---|---|
| | **John Crane Inc.** | ☐ Contingent | |
| | **24929 Network Place** | ☐ Unliquidated | |
| | **Chicago, IL 60673-1249** | ☐ Disputed | |
| | Date(s) debt was incurred ___ | Basis for the claim: __Trade Debt__ | |
| | Last 4 digits of account number ___ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.150 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$235,246.88** |
|---|---|---|---|
| | **John Zink Co LLC** | ☐ Contingent | |
| | **11920 E Apache St** | ☐ Unliquidated | |
| | **Tulsa, OK 74116** | ☐ Disputed | |
| | Date(s) debt was incurred ___ | Basis for the claim: __Trade Debt__ | |
| | Last 4 digits of account number ___ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.151 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$17,947.00** |
|---|---|---|---|
| | **Johnson Matthey Inc** | ☐ Contingent | |
| | **d/b/a TracerCo** | ☐ Unliquidated | |
| | **88724 Expedite Way** | ☐ Disputed | |
| | **Chicago, IL 60695** | | |
| | Date(s) debt was incurred ___ | Basis for the claim: __Trade Debt__ | |
| | Last 4 digits of account number ___ | Is the claim subject to offset? ■ No ☐ Yes | |

Debtor   **Limetree Bay Refining, LLC**                          Case number (if known)   **21-32354**
_____
Name

| 3.152 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $4,328.48 |
|---|---|---|---|

**Jones Diesel and Marine LLC**
**8510 SR 207**
**Hastings, FL 32145**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number  _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.153 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $59,942.66 |
|---|---|---|---|

**Kelvion Inc**
**Dept. 1195**
**Tulsa, OK 74182**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number  _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.154 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $685.40 |
|---|---|---|---|

**Law Office of Dougals L Capdeville**
**2107 Company Street**
**Suite 2**
**Christiansted, VI 00820**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  _

Basis for the claim:  **Legal Services**

Last 4 digits of account number  _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.155 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $48,142.50 |
|---|---|---|---|

**Law Offices of Roberta M. Rossi**
**101  Industrial Court**
**Conroe, TX 77301**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  _

Basis for the claim:  **Legal Fees**

Last 4 digits of account number  _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.156 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $2,553.66 |
|---|---|---|---|

**Limetree Bay Energy, LLC**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  _

Last 4 digits of account number  _

Basis for the claim:  **Intercompany Debt**

Is the claim subject to offset? ☐ No ■ Yes

---

| 3.157 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $30,936,683.40 |
|---|---|---|---|

**Limetree Bay Refining Marketing, LLC**
**#1 Estate Hope**
**Christiansted, VI 00820**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  _

Basis for the claim:  **Intercompany Debt**

Last 4 digits of account number  _

Is the claim subject to offset? ☐ No ■ Yes

---

| 3.158 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $93,570,563.51 |
|---|---|---|---|

**Limetree Bay Refining Operating, LLC**
**#1 Estate Hope**
**Christiansted, VI 00820**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  _

Basis for the claim:  **Intercompany Debt**

Last 4 digits of account number  _

Is the claim subject to offset? ☐ No ■ Yes

---

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

| 3.159 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$44,035,428.23** |
|---|---|---|---|

**Limetree Bay Terminals, LLC**
**#1 Estate Hope**
**Christiansted, VI 00820-5652**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Intercompany Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☐ No ■ Yes

---

| 3.160 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$1,024.00** |
|---|---|---|---|

**Lo-Rez Vibration Control Ltd.**
**186 W. 8th Ave.**
**Vancouver, BC V5Y 1N2**
**CANADA**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.161 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$65,000.00** |
|---|---|---|---|

**Lockton Companies, LLC**
**PO Box 123036**
**Dallas, TX 75312-3036**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.162 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$31,104.00** |
|---|---|---|---|

**Lucas Associates Temps, Inc.**
**950 East Paces Ferry Road**
**Suite 2300**
**Atlanta, GA 30326**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.163 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$89,598.81** |
|---|---|---|---|

**M. R. Franceshini, Inc**
**611 Condado Ave**
**San Juan, PR 00907**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.164 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$549,548.76** |
|---|---|---|---|

**Mammoet USA South, Inc.**
**20525 FM 521**
**Rosharon, TX 77583**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.165 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$173,233.63** |
|---|---|---|---|

**Marsh USA Inc.**
**PO Box 846015**
**Dallas, TX 75284-6015**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

| 3.166 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$37,900.00** |
|---|---|---|---|
| | **McDonough Construction Rentals, Inc**<br>**8400 Villa Dr**<br>**Houston, TX 77061** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.167 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$120.00** |
|---|---|---|---|
| | **Melissa Gilbert**<br>**P. O. Box 2676**<br>**Frederiksted, VI 00841** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.168 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$0.04** |
|---|---|---|---|
| | **MetLife - Group Benefits**<br>**PO Box 804666**<br>**Kansas City, MO 64180-4466** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.169 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$96,743.85** |
|---|---|---|---|
| | **Mistras Group, Inc.**<br>**PO Box 405694**<br>**Atlanta, GA 30384-5694** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.170 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$43,281.50** |
|---|---|---|---|
| | **Morcom International, Inc.**<br>**3656 Centerview Drive**<br>**Unit 1**<br>**Chantilly, VA 20151** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.171 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$66,356.75** |
|---|---|---|---|
| | **Mostardi Platt**<br>**888 Industrial Drive**<br>**Elmhurst, IL 60126** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.172 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$575,114.45** |
|---|---|---|---|
| | **Muse, Stancil & Co.**<br>**5080 Spectrum Drive**<br>**Addison, TX 75001** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

---

**3.173** | Nonpriority creditor's name and mailing address
**NAES Corporation**
**1180 NW Maple Street**
**Suite 200**
**Issaquah, WA 98027**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ☐ No ☐ Yes

**$61,767.56**

---

**3.174** | Nonpriority creditor's name and mailing address
**Nalco U.S. 2 Inc**
**1601 West Diehl Road**
**Naperville, IL 60563**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ☐ No ☐ Yes

**$137,940.41**

---

**3.175** | Nonpriority creditor's name and mailing address
**Nalco U.S. 2 Inc**
**1601 West Diehl Road**
**Naperville, IL 60563**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **trade debt**

Is the claim subject to offset? ■ No ☐ Yes

**$390,121.78**

---

**3.176** | Nonpriority creditor's name and mailing address
**National Electric Motor & Supply Co**
**PO Box 40443**
**Baton Rouge, LA 70835**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ☐ No ☐ Yes

**$12,035.00**

---

**3.177** | Nonpriority creditor's name and mailing address
**National Electric Motor & Supply Co**
**PO Box 40443**
**Baton Rouge, LA 70835**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade debt**

Is the claim subject to offset? ☐ No ☐ Yes

**$5,280.00**

---

**3.178** | Nonpriority creditor's name and mailing address
**National Industrial Services, LLC**
**PO Box 1545**
**Kingshill, St. Croix, VI 00851**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ☐ No ☐ Yes

**$13,132,667.83**

---

**3.179** | Nonpriority creditor's name and mailing address
**National Industrial Services, LLC**
**PO Box 1545**
**Kingshill, St. Croix, VI 00851**

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
■ Contingent
■ Unliquidated
☐ Disputed

Basis for the claim:  **Completion Program Bonus**

Is the claim subject to offset? ■ No ☐ Yes

**Unknown**

---

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

---

| 3.180 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $89,140.79 |
|---|---|---|---|

**National Parts**
455 Plaza Drive
Atlanta, GA 30349

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.181 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $2,673.00 |
|---|---|---|---|

**Nettime Solutions LLC**
1600 N. Desert Drive
Suite 125
Tempe, AZ 85281

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.182 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $2,242.50 |
|---|---|---|---|

**New York Wiping & Industrial Produc**
PO Box 2151
San Juan, PR 00922-2151

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.183 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $2,089.00 |
|---|---|---|---|

**O'Neale's Transport, Inc.**
PO Box 7550
Christiansted, VI 00823

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.184 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $350.00 |
|---|---|---|---|

**Ocean Systems Laboratory Inc.**
6194 ESTATE FRYDENHOJ
St Thomas, VI 00802

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.185 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $25,830.00 |
|---|---|---|---|

**Oliver Exterminating of St. Croix I**
PO Box 787
St. Croix, VI 00821

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.186 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $5,763.00 |
|---|---|---|---|

**Operation Technology, Inc**
17 Goodyear
Irvine, CA 92618

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: __Trade Debt__

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Limetree Bay Refining, LLC** | | Case number (if known) | **21-32354** |
|---|---|---|---|---|
| | Name | | | |

---

**3.187** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$48,195.00**
**Opportune LLP**
**711 Louisiana Street**
**Houston, TX 77002**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☐ No  ☐ Yes

---

**3.188** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown**
**ParFab Field Services, LLC**

■ Contingent
■ Unliquidated
■ Disputed

Date(s) debt was incurred _

Basis for the claim:  __Completion Program Bonus__

Last 4 digits of account number _

Is the claim subject to offset? ☐ No  ☐ Yes

---

**3.189** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,657.00**
**Paxton Van Lines, Inc.**
**5300  Port Royal Road**
**Springfield, VA 22151**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ☐ No  ☐ Yes

---

**3.190** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$0.00**
**Pem-Tech Inc**
**12144 Dairy Ashford**
**Bldg 2**
**Sugar Lane, TX 77478**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

---

**3.191** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$9,000.00**
**Pentair Filtrations Solutions, LLC**
**16622 Collections Center Dr**
**Chicago, IL 60693**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

---

**3.192** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$482,845.65**
**Perkins Coie LLP**
**1201 Third Avenue**
**Seattle, WA 98101**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  __Legal Fees__

Last 4 digits of account number _

Is the claim subject to offset? ☐ No  ☐ Yes

---

**3.193** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$200,000.00**
**Phil Badgwell II**
**1835 Langham Forest Blvd**
**Orange, TX 77630**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

---

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

| 3.194 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$14,095.00** |
|---|---|---|---|
| | **Piller TSC Blower Corp**<br>**445 Duane Avenue**<br>**Schenectady, NY 12304** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.195 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$9,000.00** |
|---|---|---|---|
| | **Pimsoft, Inc**<br>**14701 St. Mary's Lane**<br>**Suite 175**<br>**Houston, TX 77079** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.196 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$34,018.17** |
|---|---|---|---|
| | **Pinnacle Asset Integrity Services**<br>**d/b/a PinnacleArt**<br>**1 One Pinnacle Road**<br>**Pasadena, TX 77504** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.197 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$2,308,633.57** |
|---|---|---|---|
| | **Pinnacle Services, LLC**<br>**6002 Diamond Ruby**<br>**Christiansted, VI 00820** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.198 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **Unknown** |
|---|---|---|---|
| | **Pinnacle Services, LLC**<br>**6002 Diamond Ruby**<br>**Christiansted, VI 00820** | ■ Contingent<br>■ Unliquidated<br>■ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Completion Program Bonus** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.199 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$11,897.85** |
|---|---|---|---|
| | **Piping Technology & Products, Inc.**<br>**PO Box 34506**<br>**Houston, TX 77234-4506** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.200 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$41,678.96** |
|---|---|---|---|
| | **Polaris Engineering, Inc**<br>**PO Box 125**<br>**Lake Charles, LA 70602** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

| 3.201 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$8,513.88** |
|---|---|---|---|

**Powmat Ltd**
**321 Usgers Road**
**Ballston Lake, NY 12019**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

| 3.202 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$186,382.53** |
|---|---|---|---|

**Precision Engineering Inc**
**400 Saint Loius St**
**Mobile, AL 36602**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

| 3.203 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$160,589.09** |
|---|---|---|---|

**Precision Filtration Products**
**PO Box 218**
**Pennsburg, PA 18073-0218**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

| 3.204 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$109,609.46** |
|---|---|---|---|

**Premium Inspection & Testing, Inc**
**8225 Florida Blvd**
**Baton Rouge, LA 70806**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

| 3.205 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$88,285.91** |
|---|---|---|---|

**Prestige Technology Corp**
**1101 South Rogers Circle**
**Boca Raton, FL 33487**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

| 3.206 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$141,299.54** |
|---|---|---|---|

**Primaisla Inc**
**3009 Pamplico Hwy**
**Florence, SC 29505**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

| 3.207 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$57,033.00** |
|---|---|---|---|

**Priority Roro Services**
**PO Box 3251**
**Mayaguez, PR 00880**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

---

**3.208** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$114,641.96**

**Process Technical Services, Inc.**
14550 Torrey Chase Blvd
Suite 220
Houston, TX 77014

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: __Trade Debt__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

**3.209** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$284,600.00**

**Prometheus Group Enterpises, LLC**
1101 Haynes Street
Suite 218
Raleigh, NC 27604

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: __Trade Debt__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

**3.210** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$37,903.23**

**Puerto Rico Valve & Fitting, LLC**
393 Canas St
Estancias  Del Rio
Hormigueros, PR 00660

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: __Trade Debt__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

**3.211** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$1,032.50**

**Quality Electric Supply, Inc.**
6703 Peters Rest.
Christiansted, VI 00820

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: __Trade Debt__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

**3.212** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$38,936.75**

**RAC Enterprises, Inc.**
PO Box 6377
Caguas, PR 00726-6377

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: __Trade Debt__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

**3.213** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$38,790.62**

**Rafael Benitez Carrillo, Inc.**
PO Box 362769
San Juan, PR 00936-2769

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: __Trade Debt__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

**3.214** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$17,673.71**

**Ramboll US Corp**
4350 N Fairfax Drive
Arlington, TX 10167

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: __Trade Debt__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

---

**3.215** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$1,544,407.79**

**Reactor Resources LLC**
**3000 FM 517 W.**
**Alvin, TX 77511**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: _Trade Debt_

Is the claim subject to offset? ■ No  ☐ Yes

---

**3.216** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$1,586.10**

**RelaDyne Reliability Services Inc**
**15150 West Drive**
**Houston, TX 77053-4818**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: _Trade Debt_

Is the claim subject to offset? ■ No  ☐ Yes

---

**3.217** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$19,233.24**

**Relevant Industrial, LLC**
**PO Box 95605**
**Grapevine, TX 76099-9730**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: _Trade Debt_

Is the claim subject to offset? ■ No  ☐ Yes

---

**3.218** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$206,994.40**

**Resal Inc.**
**2900 Tuxedo Avenue**
**West Palm Beach, FL 33405**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: _Trade Debt_

Is the claim subject to offset? ■ No  ☐ Yes

---

**3.219** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$489,732.69**

**Rev1 Oil & Gas LLC**
**100 N Tampa St.**
**Suite 2300**
**Tampa, FL 33602**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: _Trade Debt_

Is the claim subject to offset? ■ No  ☐ Yes

---

**3.220** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$18,365.33**

**RIMCO**
**312 John F. Kennedy KM 3.7**
**San Juan, PR 00920**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: _Trade Debt_

Is the claim subject to offset? ■ No  ☐ Yes

---

**3.221** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$57,282.46**

**Ritz Instrument Transformers, Inc**
**25 Hamburg Ave**
**Lavonia, GA 30553**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: _Trade Debt_

Is the claim subject to offset? ■ No  ☐ Yes

---

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

| 3.222 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $1,360.00 |
|---|---|---|---|

**Rocco Colabella**
**13035 Royal George Avenue**
**Odessa, FL 33556**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.223 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $1,046,534.14 |
|---|---|---|---|

**Rockwell Automation Puerto Rico, Inc**
**Calle 1 Metro Office 6**
**Suite 304**
**Guayabo, PR 00968**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.224 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $30.00 |
|---|---|---|---|

**Roland Richardson**
**8A-1 Carlton**
**St. Croix, VI 00840**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.225 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $68,015.00 |
|---|---|---|---|

**Rotating Machinery Services, Inc.**
**2760 Baglyos Circle**
**Bethlehem, PA 18020**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.226 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $218,753.58 |
|---|---|---|---|

**RTP Environmental Associates, Inc.**
**304-A West Millbrook Road**
**Raleigh, NC 27609**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.227 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $21,080.00 |
|---|---|---|---|

**Sampling Systems**
**708 N Main St.**
**Sweeny, TX 77480**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

| 3.228 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $20,862.02 |
|---|---|---|---|

**Savage Services**
**PO Box 30015**
**Salt Lake City, UT 84130**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2381 of 2637
2381
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 58 of 156

| Debtor | **Limetree Bay Refining, LLC** | | Case number (if known) | **21-32354** |
|---|---|---|---|---|
| | Name | | | |

| 3.229 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$2,936,592.60** |
|---|---|---|---|
| | **Savage St. Croix, LLC**<br>**Dept. 418**<br>**Salt Lake City, UT 84130** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** _Trade Debt_ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.230 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$0.00** |
|---|---|---|---|
| | **Securities and Exchange Comm.**<br>**175 West Jackson Blvd.**<br>**Suite 900**<br>**Chicago, IL 60604** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** _for notice purposes_ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.231 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$1,155,000.00** |
|---|---|---|---|
| | **Sedgwick Claims Mgmt Services, Inc**<br>**1833 Centre Point Circle**<br>**Suite 139**<br>**Naperville, IL 60639** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** _Trade Debt_ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.232 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$153,111.54** |
|---|---|---|---|
| | **Sentinel Integrity Solutions VI**<br>**6606 Miller Road 2**<br>**Houston, TX 77049** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** _Trade Debt_ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.233 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$6,913.00** |
|---|---|---|---|
| | **SGS North America, Inc**<br>**6601 Kirkville Road**<br>**East Syracuse, NY 13057** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** _Trade Debt_ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.234 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$3,431.40** |
|---|---|---|---|
| | **Sherwin-Williams**<br>**35-36 Industrial Park**<br>**St. Croix, VI 00820** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** _Trade Debt_ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.235 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$32,121.00** |
|---|---|---|---|
| | **Sloan Schoyer**<br>**P. O. Box 280**<br>**Biddeford Pool, ME 04006** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | **Basis for the claim:** _Trade Debt_ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

---

| 3.236 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$24,985.12** |
|---|---|---|---|

**South Coast Fire & Safety**
**6230 Brookhill Dr.**
**Houston, TX 77087**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.237 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$4,106.25** |
|---|---|---|---|

**Southeast Rigging Inc.**
**429 Talleyrand Avenue**
**Jacksonville, FL 32202**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.238 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$17,897.50** |
|---|---|---|---|

**Spectrum Environmental Solutions**
**2340 W. Braker Lane**
**Austin, TX 78642**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.239 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$13,998.00** |
|---|---|---|---|

**Speed Valve & Specialty Infrared, Inc.**
**951  E FM 646**
**Dickinson, TX 77539**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.240 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$54,829.84** |
|---|---|---|---|

**Sprung Instant Structures, Inc.**
**5711 West Dannon Way**
**West Jordan, UT 84081**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.241 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$13,494.00** |
|---|---|---|---|

**Stantec Consulting Services Inc**
**13980 Collections Center Drive**
**Chicago, IL 60693**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.242 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$372,200.00** |
|---|---|---|---|

**Stanton Chase of Houston, LLC**
**11700 Katy Freeway**
**Suite 630**
**Houston, TX 77079**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

---

**3.243** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$16,090.00**

**Steel and Pipes Inc**
**PO Box 5309**
**Caguas, PR 00726**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.244** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$8,750.00**

**Stormgeo, Inc.**
**Dept. 3728**
**Dallas, TX 75312-3728**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.245** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$29,050.00**

**Stout Risius Ross, Inc.**
**1700  Pacific Avenue**
**Dallas, TX 75201**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.246** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$117,700.00**

**Sulphur Experts Inc.**
**12 Manning Close NE**
**Suite 102**
**Calgary, Alberta T2E 7N6**
**CANADA**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.247** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$118,569.38**

**Sulzer Pumps (US) Inc.**
**200 SW Market St**
**Portland, OR 97201**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.248** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$837,495.80**

**Sulzer Turbo Services Houston, Inc.**
**11518 Old La Porte Road**
**La Porte, TX 77571**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.249** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$137,080.62**

**Sulzer Turbo Services New Orleans I**
**1516 Engineers Road**
**Belle Chasse, LA 70037**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

---

**3.250**

**Nonpriority creditor's name and mailing address**
**Sunbelt Supply Co.**
**d/b/a Major Inc.**
**210 McGaw Drive**
**Edison, NJ 75395-1037**

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**  Trade Debt

Is the claim subject to offset? ☐ No ☐ Yes

**$38,000.58**

---

**3.251**

**Nonpriority creditor's name and mailing address**
**Supra Products of PR, Inc.**
**PO Box 810173**
**Carolina, PR 00981-0173**

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**  Trade Debt

Is the claim subject to offset? ☐ No ☐ Yes

**$102,377.50**

---

**3.252**

**Nonpriority creditor's name and mailing address**
**Synapse Consulting Services LLC**
**1227 Princeton St**
**Columbia, SC 29205**

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**  Trade Debt

Is the claim subject to offset? ■ No ☐ Yes

**$70,000.00**

---

**3.253**

**Nonpriority creditor's name and mailing address**
**Teledyne Instruments, Inc.**
**12497 Collections Center Dr**
**Chicago, IL 60693**

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**  Trade Debt

Is the claim subject to offset? ☐ No ☐ Yes

**$14,761.00**

---

**3.254**

**Nonpriority creditor's name and mailing address**
**The Dow Chemical Company**
**1 East Main Street**
**Bay City, MI 48708**

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**  Trade Debt

Is the claim subject to offset? ☐ No ☐ Yes

**$447,634.92**

---

**3.255**

**Nonpriority creditor's name and mailing address**
**The Gov't of The U.S. Virgin Islands**
**Department of Finance**
**2314 Kronprinsdens Gade**
**St. Thomas, VI 00804**

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**  Trade Debt

Is the claim subject to offset? ■ No ☐ Yes

**Unknown**

---

**3.256**

**Nonpriority creditor's name and mailing address**
**The Gov't of the U.S. Virgin Islands**
**Dept. of Planning & Natural Resources**
**Div. of Environmental Protection**
**45 Mars Hill**
**Frederiksted, St. Croix, VI 00840**

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**  for notice purposes

Is the claim subject to offset? ■ No ☐ Yes

**$0.00**

---

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

| 3.257 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$84,569.45** |
|---|---|---|---|
| | **Thermo Process Instruments L.P.** | ☐ Contingent | |
| | **27 Forge Parkway** | ☐ Unliquidated | |
| | **Franklin, MA 02038** | ☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.258 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$161,320.30** |
|---|---|---|---|
| | **Three L Inc** | ☐ Contingent | |
| | **12235 Robin Blvd** | ☐ Unliquidated | |
| | **Houston, TX 77045-4826** | ☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.259 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$70,833.00** |
|---|---|---|---|
| | **Three L Inc** | ☐ Contingent | |
| | **12235 Robin Blvd** | ☐ Unliquidated | |
| | **Houston, TX 77045-4826** | ☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.260 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$16,717.74** |
|---|---|---|---|
| | **ThunderCLouds Labs LLC** | ☐ Contingent | |
| | **20759 Fenwick Dr** | ☐ Unliquidated | |
| | **Ashburn, VA 20147** | ☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.261 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$754,982.37** |
|---|---|---|---|
| | **TISI VI, LLC** | ☐ Contingent | |
| | **13131 Dairy Ashford Rd** | ☐ Unliquidated | |
| | **Suite 600** | ☐ Disputed | |
| | **Sugar Land, TX 77478** | | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.262 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$7,316.07** |
|---|---|---|---|
| | **Tomas Cuerda, Inc** | ☐ Contingent | |
| | **Calle 2 #116 Villa Nevarez Commerci** | ☐ Unliquidated | |
| | **San Juan, PR 00927** | ☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.263 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$367,585.51** |
|---|---|---|---|
| | **Total Safety U.S., Inc.** | ☐ Contingent | |
| | **11111 Wilcrest Green Drive** | ☐ Unliquidated | |
| | **Dallas, TX 75265-4171** | ☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| Debtor | **Limetree Bay Refining, LLC** | | Case number (if known) | **21-32354** |
|---|---|---|---|---|
| | Name | | | |

| 3.264 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$22,857.00** |
|---|---|---|---|
| | **Trane Puerto Rico, Inc.**<br>**PO Box 9000**<br>**San Juan, PR 00908** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.265 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$1,205.08** |
|---|---|---|---|
| | **Tricor Direct Inc**<br>**d/b/a Seton**<br>**PO Box 95904**<br>**Chicago, IL 60694** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.266 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$37,495.76** |
|---|---|---|---|
| | **Trinity Consultants Inc**<br>**PO Box 972047**<br>**Dallas, TX 75397-2047** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.267 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$26,125.25** |
|---|---|---|---|
| | **Tropical Shipping Company Limited**<br>**PO Box 3003**<br>**Kingshill, VI 00851** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.268 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$139,900.80** |
|---|---|---|---|
| | **TRS Global Services, LLC**<br>**2105 Skinner Road**<br>**Houston, TX 77093** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.269 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **Unknown** |
|---|---|---|---|
| | **TTI-Peak** | ■ Contingent<br>■ Unliquidated<br>■ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Completion Program Bonus** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.270 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$621,953.17** |
|---|---|---|---|
| | **Turnaround Consulting Services, LLC**<br>**3618 Sierra Circle**<br>**Sulphur, LA 70665** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com | | Best Case Bankruptcy

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

---

**3.271** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **Unknown**

**Turnaround Consulting Services, LLC**
**3618 Sierra Circle**
**Sulphur, LA 70665**

☑ Contingent
☑ Unliquidated
☑ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim:   **Completion Program Bonus**

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.272** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$24,558.00**

**Twin City Clarage, LLC**
**5959 Trenton Lane**
**Minneapolis, MN 55442-3237**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim:   **Trade Debt**

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.273** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$12,600.00**

**Twin City Island Spirits, Inc**
**4000 Sion Farm**
**Christiansted, VI 00820**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim:   **Trade Debt**

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.274** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$37,013.75**

**Tysam Tech LLC**
**PO Box 8438**
**St. Croix, VI 00823**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim:   **Trade Debt**

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.275** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$0.00**

**U.S. Attorney's Office**
**Distrct of the Virgin Islands**
**1108 King Street**
**Suite 201**
**Christiansted, St. Croix, VI 00820-4951**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim:   **for notice purposes**

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.276** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$0.00**

**U.S. Attorney's Office**
**Southern District of Texas**
**1000 Louisiana Street**
**Suite 2300**
**Houston, TX 77002**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim:   **for notice purposes**

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.277** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **Unknown**

**UHP Projects, Inc.**

☑ Contingent
☑ Unliquidated
☑ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim:   **Completion Program Bonus**

Is the claim subject to offset? ☑ No ☐ Yes

---

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

---

| 3.278 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **Unknown** |

**Universal Plant Services, (VI), LLC**
**806 Seaco Court**
**Deer Park, TX 77536**

Date(s) debt was incurred _

Last 4 digits of account number _

■ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim:  **Completion Program Bonus**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.279 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$128,018.82** |

**URVI, Inc.**
**PO Box 100711**
**Atlanta, GA 30384-0071**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.280 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$0.00** |

**V.I. Bureau of Internal Revenue**
**4008 Estate Diamond**
**Plot 7-B**
**Christiansted, VI 00820-4421**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **for notice purposes**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.281 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **Unknown** |

**V.I. Industrial Services, LLC**
**PMB #6002 Est. Diamond Ruby**
**Christiansted, VI 00820**

Date(s) debt was incurred _

Last 4 digits of account number _

■ Contingent
■ Unliquidated
■ Disputed

Basis for the claim:  **Completion Program Bonus**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.282 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$619,690.00** |

**V.I. Recycling Company**
**PMB1026002 Diamond Ruby**
**Christiansted, VI 00820**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.283 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **Unknown** |

**V.I. Terminal Services (VITS)**

Date(s) debt was incurred _

Last 4 digits of account number _

■ Contingent
■ Unliquidated
■ Disputed

Basis for the claim:  **Completion Program Bonus**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.284 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$470.00** |

**Veconinter USA, LLC**
**7205NW 19th St.**
**Suite 303**
**Miami, FL 33126**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Trade Debt**

Is the claim subject to offset? ■ No  ☐ Yes

---

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2389 of 2637
2389
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 66 of 156

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

| 3.285 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $4,196,472.15 |
|---|---|---|---|

**Versa Integrity Group, Inc.**
**4301 Hwy 27 South**
**Sulphur, LA 70665**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.286 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $3,395.90 |
|---|---|---|---|

**Victory Energy Operations, LLC**
**10701 E. 126th ST N.**
**Collinsville, OK 74021**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.287 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $511,572.00 |
|---|---|---|---|

**Virgin Islands Paving, Inc.**
**PO Box 4720**
**Kingshill, VI 00851-4720**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.288 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $1,936.00 |
|---|---|---|---|

**Visual Edge Technology**
**d/b/a AXSA IMA**
**2100 N Reagan Blvd.**
**Longwood, FL 32750**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.289 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $0.00 |
|---|---|---|---|

**Viya**
**4006 Estate Diamond**
**Christiansted, VI 00820-4436**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.290 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $25,566.66 |
|---|---|---|---|

**Voith US Inc.**
**c/o GBS Accounting**
**PO Box 15639**
**York, PA 17405**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.291 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $1,175,932.76 |
|---|---|---|---|

**VWNA Caribbean, LLC**
**1131 King Street**
**Christiansted, VI 00820**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2390 of 2637
2390
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 67 of 156

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
| --- | --- | --- | --- |
| | Name | | |

| 3.292 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$30,565.24** |
| --- | --- | --- | --- |

**W.W. Grainger, Inc**
**2255 NW 89 Place**
**Miami, FL 33176**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.293 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$93,692.51** |
| --- | --- | --- | --- |

**Warren Del Caribe**
**PO Box 70217**
**San Juan, PR 00936-8612**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.294 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$100,800.00** |
| --- | --- | --- | --- |

**Weldship Industries**
**225 W 2nd Street**
**Bethlehem, PA 18015**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.295 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$495,860.22** |
| --- | --- | --- | --- |

**Wesco Distribution, Inc.**
**PO Box 676780**
**Dallas, TX 75267-6780**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.296 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$22,008.07** |
| --- | --- | --- | --- |

**Wesco Distribution, Inc.**
**PO Box 676780**
**Dallas, TX 75267-6780**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.297 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$36,000.00** |
| --- | --- | --- | --- |

**Whitaker IT, LLC**
**d/b/a Whitaker Techn**
**Dept 50**
**PO Box 4346**
**Houston, TX 77210-4346**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.298 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$8,855.00** |
| --- | --- | --- | --- |

**Wholesale Electric Supply Co.**
**4040 Gulf Freeway**
**Houston, TX 77004**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Trade Debt__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Limetree Bay Refining, LLC** | Case number (if known) | **21-32354** |
|---|---|---|---|
| | Name | | |

---

| 3.299 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$1,715.00** |
|---|---|---|---|
| | **Wilmington Trust, N.A.**<br>**246 Goose Lane**<br>**Guilford, CT 06437** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

---

| 3.300 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$260,738.00** |
|---|---|---|---|
| | **Windrock, Inc**<br>**24307 Network Place**<br>**Chicago, IL 60673** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

---

| 3.301 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$16,840.52** |
|---|---|---|---|
| | **Worley Pan American Corporation**<br>**4949 Essen Lane**<br>**Baton Rouge, LA 70809** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

---

| 3.302 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$10,120.00** |
|---|---|---|---|
| | **Wunderlich-Malec Engineering, Inc.**<br>**6101  Blue Circle Drive**<br>**Eden Prairie, MN 55343** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

---

| 3.303 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$21,786.63** |
|---|---|---|---|
| | **Xerox Corporation**<br>**PO Box 802555**<br>**Chicago, IL 60680-2555** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Trade Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

---

| **Part 3:** | **List Others to Be Notified About Unsecured Claims** |
|---|---|

**4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

**If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.**

| | Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|---|
| 4.1 | **Antilles Gas Corporation**<br>**19 Estate Pearl**<br>**Christiansted, St. Croix, VI 00823** | Line **3.25**<br><br>☐ Not listed. Explain ____ | _ |
| 4.2 | **Intertek USA, Inc.**<br>**Attn: Legal**<br>**545 E. Algonquin Road**<br>**Arlington Heights, IL 60005** | Line **3.144**<br><br>☐ Not listed. Explain ____ | _ |

---

| Debtor | **Limetree Bay Refining, LLC** | | Case number (if known) | **21-32354** |
|---|---|---|---|---|

| | Name | | | |

| | Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|---|
| 4.3 | **Office of the Attorney General**<br>**US Virgin Island Dept of Justice**<br>**34-38 Kronprindsens Gade**<br>**GERS Building, 2nd Floor**<br>**St Thomas, VI 00802** | Line  **3.255**<br><br>☐  Not listed. Explain ____ | _ |

---

| **Part 4:** | **Total Amounts of the Priority and Nonpriority Unsecured Claims** |
|---|---|

**5. Add the amounts of priority and nonpriority unsecured claims.**

| | | | Total of claim amounts | |
|---|---|---|---|---|
| **5a. Total claims from Part 1** | 5a. | $ | | **0.00** |
| **5b. Total claims from Part 2** | 5b. | + $ | | **271,768,751.13** |
| **5c. Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | 5c. | $ | | **271,768,751.13** |

**Fill in this information to identify the case:**

Debtor name      **Limetree Bay Refining, LLC**

United States Bankruptcy Court for the:     SOUTHERN DISTRICT OF TEXAS

Case number (if known)    **21-32354**

☐ Check if this is an
    amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases                    12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.    **Does the debtor have any executory contracts or unexpired leases?**
      ☐ No. Check this box and file this form with the debtor's other schedules.  There is nothing else to report on this form.
      ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal*    *Property*
      (Official Form 206A/B).

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| 2.1.  State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-211 and Change Orders** | |
| State the term remaining | | |
| List the contract number of any government contract | | **A&G Energy LLC**<br>**P.O. Box 70979**<br>**Houston, TX 77270** |
| 2.2.  State what the contract or lease is for and the nature of the debtor's interest | **Engineering Services Agreement Contract No. LTR-440** | |
| State the term remaining | **expires 4/11/22** | |
| List the contract number of any government contract | | **AC Systems Integration, Inc.**<br>**10325 E. 58th Street**<br>**Tulsa, OK** |
| 2.3.  State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LTR-262 with work releases and addenda - Aqua Milling®, Chemical Cleaning, and Low DeciblowSM Pipe Cleaning Services** | |
| State the term remaining | | **Acconda L.P.**<br>**d/b/a Aqua Drill International**<br>**1300 FM 646 West**<br>**Dickinson, TX 77539** |
| List the contract number of any government contract | | |
| 2.4.  State what the contract or lease is for and the nature of the debtor's interest | **Amendment and Joinder Agreement** | |
| State the term remaining | | **Acuren Inspection, Inc.**<br>**P.O. Box 846313**<br>**Dallas, TX 75284-6313** |
| List the contract number of any | | |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2394 of 2637
2394
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 71 of 156

Debtor 1   **Limetree Bay Refining, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)   **21-32354**

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| | government contract |

| | | | |
|---|---|---|---|
| 2.5. | State what the contract or lease is for and the nature of the debtor's interest | **IT Consulting Agreement - Addendum No. 14** | |
| | State the term remaining | **expires 8/31/21** | **Adrian Kubran** |
| | List the contract number of any government contract | | **12522 Gable Mills Dr** **Cypress, TX 77433** |
| 2.6. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-078 with addenda and work releases** | |
| | State the term remaining | | **Advanced Overhead Crane Services, Inc.** |
| | List the contract number of any government contract | | **22531 FM 2100 Road** **Crosby, TX 77532** |
| 2.7. | State what the contract or lease is for and the nature of the debtor's interest | **Software Service Agreement (LTR-099A)** | |
| | State the term remaining | | **Advisian Digital** |
| | List the contract number of any government contract | | **4949 Essen Lane** **Baton Rouge, LA 70809** |
| 2.8. | State what the contract or lease is for and the nature of the debtor's interest | **Standard Fire Insurance Policy No. 026 001001324-01-000000** | |
| | State the term remaining | **expires 9/1/21** | **AIG Insurance Company - Puerto Rico** **Marsh & Sterling** **1336 Beljen Road** **Suite 300, Charlotte Amalie** |
| | List the contract number of any government contract | | **St Thomas, VI 00802** |
| 2.9. | State what the contract or lease is for and the nature of the debtor's interest | **Evacuation Program Agreement LTR-289 for 2019 and 2020 and Terms and Conditions** | |
| | State the term remaining | **expires 7/31/21** | **Air Partner, Inc.** **1100 Lee Wagner Blvd** **Suite 328** |
| | List the contract number of any government contract | | **Ft. Lauderdale, FL 33315** |
| 2.10. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LTR-307** | **Aire Tech Mechanical Services, Inc** **4362 Motorsports Drive** **Concord, NC 28027** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| State the term remaining | |
| List the contract number of any government contract _____ | |

| 2.11. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement (LTR-378) - SAP Business Planning and Consolidations (BPC) solution -consulting** | |
|---|---|---|---|
| | State the term remaining | | **Akili, Inc.** |
| | List the contract number of any government contract _____ | | **901 W Walnut Hill Lane Suite 130-B Irving, TX 75038-1001** |

| 2.12. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-093 including all addenda and work releases) - Rotating Equipment Repairs** | |
|---|---|---|---|
| | State the term remaining | | **Alfred Conhagen, Inc. of LA** |
| | List the contract number of any government contract _____ | | **1020 Industry Road Kenner, LA 70062** |

| 2.13. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-079** | |
|---|---|---|---|
| | State the term remaining | | **Alimak Hek, Inc.** |
| | List the contract number of any government contract _____ | | **12552 Old Galveston Road Suite A-160 Webster, TX 77598** |

| 2.14. | State what the contract or lease is for and the nature of the debtor's interest | **Policy # USL00873320** | |
|---|---|---|---|
| | State the term remaining | | **Allianz** |
| | List the contract number of any government contract _____ | | **Lockton Companies, LLC - Houston 3657 Briarpark Drive Suite 700 Houston, TX 77042** |

| 2.15. | State what the contract or lease is for and the nature of the debtor's interest | **Amended Term Services Agreement (LTR-013 including all Work Releases and Addenda)** | |
|---|---|---|---|
| | State the term remaining | | **Allison Industrial Services, LLC** |
| | List the contract number of any | | **19221 1-45 South Shenandoah, TX 77385** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2396 of 2637
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 73 of 156
2396

Debtor 1 **Limetree Bay Refining, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)   **21-32354**

<div style="background:purple;"> </div> **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| | | |
|---|---|---|
| | government contract | |

| 2.16. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-144) including work releases** | |
|---|---|---|---|
| | State the term remaining | | **Analytic Stress Relieving, Inc.** |
| | List the contract number of any government contract | | **3118 W. Pinhook Road Lafayette, LA 70505** |

| 2.17. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement (LTR-192), Task Orders and Fee Schedule - Miscelleanous Engineering** | |
|---|---|---|---|
| | State the term remaining | | **Antillean Engineers Inc.** |
| | List the contract number of any government contract | | **PO Box 3023 Kingshill, VI 00851** |

| 2.18. | State what the contract or lease is for and the nature of the debtor's interest | **Policy # B0509BOWCN1800748** | |
|---|---|---|---|
| | State the term remaining | | **Apollo Lockton Companies, LLC - Houston** |
| | List the contract number of any government contract | | **3657 Briarpark Drive Suite 700 Houston, TX 77042** |

| 2.19. | State what the contract or lease is for and the nature of the debtor's interest | **Master Services Agreement LTR-427 On-Site Agreement** | |
|---|---|---|---|
| | State the term remaining | **expires 7/16/21** | **Applied Manufacturing Technologies LP** |
| | List the contract number of any government contract | | **3000 Wilcrest Drive Suite 145 Houston, TX 77042** |

| 2.20. | State what the contract or lease is for and the nature of the debtor's interest | **Excess Liability Insurance Policy No. NAMBM2100005** | |
|---|---|---|---|
| | State the term remaining | **expires 6/1/22** | **Arcadia/Ark/Helix Lockton Companies, LLC - Houston** |
| | List the contract number of any government contract | | **3657 Briarpark Drive Suite 700 Houston, TX 77042** |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2397 of 2637
2397
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 74 of 156

Debtor 1   **Limitree Bay Refining, LLC**                                    Case number *(if known)*   **21-32354**
First Name            Middle Name            Last Name

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.21. | State what the contract or lease is for and the nature of the debtor's interest | **Policy: URP0065257-00, ARGO-CAS-OR-001484 CX20-9216, 1454233-11636-UMB-20 20** | |
|---|---|---|---|
| | State the term remaining | | **Arch/ Argo/ Markel Bermuda / Hamilton Lockton Companies, LLC - Houston 3657 Briarpark Drive Suite 700** |
| | List the contract number of any government contract | | |

| 2.22. | State what the contract or lease is for and the nature of the debtor's interest | **Terms and Conditions (Houston Logistics)** | |
|---|---|---|---|
| | State the term remaining | | **Aries Worldwide Logistics 1501 E. Richley Road Houston, TX 77073** |
| | List the contract number of any government contract | | |

| 2.23. | State what the contract or lease is for and the nature of the debtor's interest | **Hysys Software License** | |
|---|---|---|---|
| | State the term remaining | **expires 6/14/26** | **Aspen Technology, Inc. 20 Crosby Drive Bedford, MA 01730** |
| | List the contract number of any government contract | | |

| 2.24. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy B0509ENGAO2000588** | |
|---|---|---|---|
| | State the term remaining | **expires 12/1/21** | **Atrium Underwriters Ltd Marsh USA 1166 Avenue of the Americs New York, NY 10036-2774** |
| | List the contract number of any government contract | | |

| 2.25. | State what the contract or lease is for and the nature of the debtor's interest | **Purchase Order Terms - Suppression System for the LBR Village** | |
|---|---|---|---|
| | State the term remaining | | **Austin Fire Systems, LLC PO Box 411 Prairieville, LA 70769** |
| | List the contract number of any government contract | | |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2398 of 2637
2398
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 75 of 156

Debtor 1    **Limetree Bay Refining, LLC**
_First Name_     _Middle Name_     _Last Name_

Case number _(if known)_    **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| **2.26.** State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-286) with work releases - ISBL Fire Protection Sprinkler System Revamp; Fixed Fire Equipment and Safety Showers and Suvery of Current Emergy Alarm System** | |
| State the term remaining | | **Austin Fire Systems, LLC** |
| List the contract number of any government contract | | **PO Box 411** |
| | | **Prairieville, LA 70769** |
| **2.27.** State what the contract or lease is for and the nature of the debtor's interest | **General Terms and Conditions  GTC# NA-KAP-5001 and Addenda** | |
| State the term remaining | | **AVEVA Software, LLC** |
| List the contract number of any government contract | | **26561 Rancho Parkway South** |
| | | **Lake Forest, CA** |
| **2.28.** State what the contract or lease is for and the nature of the debtor's interest | **LTR-156 Computer Program License Agreement NA/LLS/2605/SP and Amendments** | |
| State the term remaining | | **AVEVA Software, LLC** |
| List the contract number of any government contract | | **26561 Rancho Parkway South** |
| | | **Lake Forest, CA** |
| **2.29.** State what the contract or lease is for and the nature of the debtor's interest | **Semi-Regenerative Catalytic Reformer, Prime-K™, Prime-D™, VGO Mild Hydrocracking License Agreement** | |
| State the term remaining | | **Axens North America, Inc.** |
| List the contract number of any government contract | | **1800 St. James Place** |
| | | **Suite 500** |
| | | **Houston, TX 77056** |
| **2.30.** State what the contract or lease is for and the nature of the debtor's interest | **Process Book Supply Agreement Job #7719 and Amendment** | |
| State the term remaining | | **Axens North America, Inc.** |
| List the contract number of any government contract | | **650 College Road East** |
| | | **Princeton, NJ 08540** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2399 of 2637
2399
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 76 of 156

Debtor 1   **Limetree Bay Refining, LLC**                                    Case number (*if known*)   **21-32354**
_____
First Name          Middle Name          Last Name

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.31. | State what the contract or lease is for and the nature of the debtor's interest | **Guarantee Agreement Job #7719** | |
|---|---|---|---|
| | State the term remaining | | **Axens North America, Inc.**<br>**650 College Road East**<br>**Suite 1200**<br>**Princeton, NJ** |
| | List the contract number of any government contract | | |

| 2.32. | State what the contract or lease is for and the nature of the debtor's interest | **Technical Services Agreement N 7719** | |
|---|---|---|---|
| | State the term remaining | **expires 11/20/21** | **Axens North America, Inc.**<br>**650 College Road East**<br>**Princeton, NJ 08540** |
| | List the contract number of any government contract | | |

| 2.33. | State what the contract or lease is for and the nature of the debtor's interest | **Policy # EAU646295** | |
|---|---|---|---|
| | State the term remaining | | **AXIS**<br>**Lockton Companies, LLC - Houston**<br>**3657 Briarpark Drive**<br>**Suite 700**<br>**Houston, TX 77042** |
| | List the contract number of any government contract | | |

| 2.34. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract No. LTR-184 and work releases** | |
|---|---|---|---|
| | State the term remaining | | **AZZ WSI, LLC**<br>**560 Horizon Drive**<br>**Suite 100**<br>**Suwanee, GA 30024** |
| | List the contract number of any government contract | | |

| 2.35. | State what the contract or lease is for and the nature of the debtor's interest | **General Terms and Conditions For Sale of Products, Parts and/or Services - Flare Gas H2S Reduction Program** | |
|---|---|---|---|
| | State the term remaining | | **Baker Hughes Int'l Branches, Inc.**<br>**12645 West Airport Blvd.**<br>**Sugar Land, TX 77478** |
| | List the contract number of any government contract | | |

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.36. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement (LTR-381) - Manangement and Procurement Services** | |
| | State the term remaining | | **Ballard Hospitality LLC** |
| | List the contract number of any government contract | | **180 New Camellia Blvd Suite 100 Covington, LA 70433** |

| 2.37. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-355) including work releases and change orders - Village Operations and Admin Café** | |
| | State the term remaining | | **Ballard Hospitality VI, LLC** |
| | List the contract number of any government contract | | **180 New Camellia Blvd Suite 100 Covington, LA 70433** |

| 2.38. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-358 - Environmental Consulting** | |
| | State the term remaining | | **Barr Engineering Co.** |
| | List the contract number of any government contract | | **4300 Market Pointe Dr. Suite 200 Minneapolis, MN 55435** |

| 2.39. | State what the contract or lease is for and the nature of the debtor's interest | **Software Product License Agreement** | |
| | State the term remaining | | **Bayteck International, Inc.** |
| | List the contract number of any government contract | | **401 N. Shoreline Blvd Corpus Christi, TX 78401** |

| 2.40. | State what the contract or lease is for and the nature of the debtor's interest | **Baytek Product Support Agreement** | |
| | State the term remaining | | **Bayteck International, Inc.** |
| | List the contract number of any government contract | | **401 N. Shoreline Blvd. Corpus Christi, VI 78401** |

| 2.41. | State what the contract or lease is for and the nature of the debtor's interest | **Engineering Services Agreement (LTR-361) - engineering support** | **Becht Engineering Co., Inc 22 Church Street Liberty Corner, NJ 07938** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2401 of 2637
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 78 of 156

2401

Debtor 1  **Limetree Bay Refining, LLC**                                 Case number *(if known)*  **21-32354**
            First Name          Middle Name          Last Name

## Additional Page if You Have More Contracts or Leases

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

State the term remaining

List the contract number of any
government contract        _____

---

| 2.42. | State what the contract or lease is for and the nature of the debtor's interest | **Continuing Technical Services Agreement (Coker Consulting Services)** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **Bechtel Hydrocarbon Technology Solutions 3000 Post Oak Boulevard Houston, TX 77252-2166** |

---

| 2.43. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy 42-PRP-312023-01** | |
|---|---|---|---|
| | State the term remaining | **expires 9/1/21** | **Berkshire Hathaway National Fire & Marine Ins Co 1314 Douglas Street Suite 1400 Omaha, NE 68102-1944** |
| | List the contract number of any government contract | | |

---

| 2.44. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-140** | |
|---|---|---|---|
| | State the term remaining | | **Beville Engineering, Inc. 7087 Corporate Way Dayton, OH 45459** |
| | List the contract number of any government contract | | |

---

| 2.45. | State what the contract or lease is for and the nature of the debtor's interest | **Technology Services Agreement LTR-090** | |
|---|---|---|---|
| | State the term remaining | | **BHI FW Corporation 53 Frontage Road Hampton, NJ 08827** |
| | List the contract number of any government contract | | |

---

| 2.46. | State what the contract or lease is for and the nature of the debtor's interest | **Services Addendum No. 1 to Master Purchase and Sale Agreement Contract No. 356-LBR-LBT-P02** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **Black Diamond Automation, LLC** |

---

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2402 of 2637
2402
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 79 of 156

Debtor 1  **Limetree Bay Refining, LLC**
First Name      Middle Name      Last Name

Case number (*if known*)  **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

**2.47.** State what the contract or lease is for and the nature of the debtor's interest

**Data Processing Agreement and Service Order Q061772**

State the term remaining — expires 12/1/22

List the contract number of any government contract

**BlackLine Systems, Inc.**
**21300 Victory Blvd.**
**12th Floor**
**Woodland Hills, CA 91367**

**2.48.** State what the contract or lease is for and the nature of the debtor's interest

**Rental Agreement and Rental Schedule LTR-299**

State the term remaining

List the contract number of any government contract

**Blue Sky Real Estate**
**11 North Street**
**Christiansted, VI 00820**

**2.49.** State what the contract or lease is for and the nature of the debtor's interest

**Services Agreement Contract No. LTR-085**

State the term remaining

List the contract number of any government contract

**Bohlke Airways**
**RR#1, Box 9936**
**Kingshill, VI 00850**

**2.50.** State what the contract or lease is for and the nature of the debtor's interest

**Services Agreement (LTR-116) and addenda**

State the term remaining

List the contract number of any government contract

**Boulden Company Inc.**
**1013 Conshohocken Road**
**Conshohocken, PA 19428**

**2.51.** State what the contract or lease is for and the nature of the debtor's interest

**Amended and Restated Tolling Agreement**

State the term remaining

List the contract number of any government contract

**BP Products North America Inc.**
**Rhonda R. Trotter**
**Arnold & Porter Kaye Scholer LLP**
**777 S. Figueroa St., 44th Floor**
**Los Angeles, CA 90017**

**2.52.** State what the contract or lease is for and the nature of the debtor's interest

**Omnibus Amendment to BP Agreements**

State the term remaining

List the contract number of any

**BP Products North America Inc.**
**Rhonda R. Trotter**
**Arnold & Porter Kaye Scholer LLP**
**777 S. Figueroa St., 44th Floor**
**Los Angeles, CA 90017**

Debtor 1   **Limetree Bay Refining, LLC**

First Name    Middle Name    Last Name

Case number (*if known*)   **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| government contract | |

| 2.53. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LTR-263 with work releases** | |
|---|---|---|---|
| | State the term remaining | | **BrandSafway Solutions USVI LLC** |
| | List the contract number of any government contract | | **515 Anderson Drive Romeoville, IL 60446** |

| 2.54. | State what the contract or lease is for and the nature of the debtor's interest | **General Terms & Conditions dated 8/11/20** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **Brush Americas** |

| 2.55. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract LTR -418** | |
|---|---|---|---|
| | State the term remaining | | **BWC Technologies, Inc.** |
| | List the contract number of any government contract | | **2057 Kunkeltown Road Saylorsburg, PA 18353** |

| 2.56. | State what the contract or lease is for and the nature of the debtor's interest | **Master Services Agreement** | |
|---|---|---|---|
| | State the term remaining | **expires 8/26/21** | **Cadence Solutions, Inc. 3320A Parsons Road NW** |
| | List the contract number of any government contract | | **Edmonton, Alberta T6N 1B5 CANADA** |

| 2.57. | State what the contract or lease is for and the nature of the debtor's interest | **Residential Lease 5000 Coakley Bay, Unit F7** | |
|---|---|---|---|
| | State the term remaining | | **Calabash Real Estate LLC as agent for C Blue, LLC** |
| | List the contract number of any government contract | | **4126 La Grande Princesse Christiansted, VI 00820** |

| 2.58. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-419** | **Capital Records Management, Inc. 41 A Barren Spot No. 9 Kingshill, St. Croix, VI 00850** |
|---|---|---|---|

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2404 of 2637
2404
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 81 of 156

Debtor 1   **Limetree Bay Refining, LLC**                                   Case number (*if known*)   **21-32354**
First Name            Middle Name            Last Name

## ▉ Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| State the term remaining | |
| List the contract number of any government contract | |

| 2.59. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-257 - with novation and assigment** | |
|---|---|---|---|
| | State the term remaining | | **Capitol Ultrasonics, LLC f/k/a Infrared Thermal Imaging, Inc. 8225 Florida Boulevard Baton Rouge, LA 70806** |
| | List the contract number of any government contract | | |

| 2.60. | State what the contract or lease is for and the nature of the debtor's interest | **Terms of Rental - Flow bin rentals** | |
|---|---|---|---|
| | State the term remaining | | **Catalyst and Chemical Containers, Inc., a Hoover Ferguson company 4935 Timber Creek Dr Houston, TX 77017** |
| | List the contract number of any government contract | | |

| 2.61. | State what the contract or lease is for and the nature of the debtor's interest | **Consulting Agreement LTR-423** | |
|---|---|---|---|
| | State the term remaining | **expires 7/8/21** | **CFL Consulting, LLC 603 Happy Trail San Antonio, TX 78231** |
| | List the contract number of any government contract | | |

| 2.62. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-138) including all addenda, change orders, and work release - Inspection & Engineering Services** | |
|---|---|---|---|
| | State the term remaining | | **CFS International, LLC 13860 Ballantyne Corporate Place, S Charlotte, NC 28277** |
| | List the contract number of any government contract | | |

| 2.63. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-133) including all addenda and work releases - Valve Repairs** | |
|---|---|---|---|
| | State the term remaining | | **Chalmers & Kubeck, Inc. PO Box 2447 Aston, PA 19014-0447** |
| | List the contract number of any | | |

Debtor 1 **Limitree Bay Refining, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)   **21-32354**

<table>
<tr><td>■</td><td>**Additional Page if You Have More Contracts or Leases**</td></tr>
</table>

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|
| government contract | |

| 2.64. | State what the contract or lease is for and for the nature of the debtor's interest | **Policy # B0713ENCAS2000011** | |
| | State the term remaining | | **Chaucer/Apollo Lockton Companies, LLC - Houston 3657 Briarpark Drive Suite 700 Houston, TX 77042** |
| | List the contract number of any government contract | | |

| 2.65. | State what the contract or lease is for and for the nature of the debtor's interest | **(ENCAS2000020/627856 89)** | |
| | State the term remaining | | **Chaucer/Lex London Lockton Companies, LLC - Houston 3657 Briarpark Drive Suite 700 Houston, TX 77042** |
| | List the contract number of any government contract | | |

| 2.66. | State what the contract or lease is for and for the nature of the debtor's interest | **Master Equipment Lease Agreement** | |
| | State the term remaining | **expires 7/7/24** | **Christiansted Equipment, Ltd. P.O. Box 368 Christiansted, St. Croix, VI 00820-0000** |
| | List the contract number of any government contract | | |

| 2.67. | State what the contract or lease is for and for the nature of the debtor's interest | **Term Services Agreement Contract LTR-108 and work release** | |
| | State the term remaining | | **CIA Inspection (US), Inc. 2399 Golf Club Road Hannon Ontario L0R1P0 CANADA** |
| | List the contract number of any government contract | | |

| 2.68. | State what the contract or lease is for and for the nature of the debtor's interest | **Term Services Agreement (LTR-151 and Addenda - Evaluation of Bentley Nevada Systems (26 compressors)** | |
| | State the term remaining | | **Classic Controls, Inc. 5095 S. Lakeland Drive Lakeland, FL 33813** |
| | List the contract number of any government contract | | |

Debtor 1  **Limetree Bay Refining, LLC**

First Name        Middle Name        Last Name

Case number (*if known*)    **21-32354**



## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.69. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement** | |
|---|---|---|---|
| | State the term remaining | | **Coking.com** |
| | List the contract number of any government contract | | **3901 Kings Row** **Reno, NV 89503** |

| 2.70. | State what the contract or lease is for and the nature of the debtor's interest | **Framework Agreement - Temporary Staff and Related Services** | |
|---|---|---|---|
| | State the term remaining | **expires 2/3/24** | **Competencia Inc.** **11000 Equity Dr.** |
| | List the contract number of any government contract | | **Suite 150** **Houston, TX 77041** |

| 2.71. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services (LTR-146) including service  orders - Project Management Personnel** | |
|---|---|---|---|
| | State the term remaining | | **Complan USA LLC** |
| | List the contract number of any government contract | | **16417 Squyres Road** **Spring, TX 77379** |

| 2.72. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-351 - Restart compressor controls assist** | |
|---|---|---|---|
| | State the term remaining | | **Compressor Controls Corporation** |
| | List the contract number of any government contract | | **4745 121st Street** **Des Moines, LA 50323** |

| 2.73. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-011 including all task orders, liens and addenda** | |
|---|---|---|---|
| | State the term remaining | | **Computer Solutions, Inc.** **d/b/a CosTrack Project Controls** |
| | List the contract number of any government contract | | **3167 Energy Lane** **Casper, WY 82604** |

| 2.74. | State what the contract or lease is for and the nature of the debtor's interest | **Consulting Services Agreement Number: LTB-1019 LTR-336 - IT support** | **Consultants in Data Processing, Inc.** **PO Box 472046** **Charlotte, NC 28247** |
|---|---|---|---|
| | State the term remaining | | |

Debtor 1   **Limetree Bay Refining, LLC**                                   Case number (*if known*)   **21-32354**

First Name          Middle Name          Last Name

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

List the contract number of any government contract

| | | | |
|---|---|---|---|
| 2.75. | State what the contract or lease is for and the nature of the debtor's interest | **Terms and Conditions Applicable to Technical Advisory Services & Materials, CST 13 R.1** | |
| | State the term remaining | | **Control Systems Technologies, LLC P.O. Box 781686 Orlando, FL 32878** |
| | List the contract number of any government contract | | |
| 2.76. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy B0509ENGAO2000069** | |
| | State the term remaining | **expires 12/1/21** | **Convex Insurance UK Limited Marsh USA 1166 Avenue of the Americas New York, NY 10036-2774** |
| | List the contract number of any government contract | | |
| 2.77. | State what the contract or lease is for and the nature of the debtor's interest | **Freight Forwarding Agreement** | |
| | State the term remaining | | **Crane Worldwide Logistics, LLC 1500 Rankin Road Houston, TX 77073** |
| | List the contract number of any government contract | | |
| 2.78. | State what the contract or lease is for and the nature of the debtor's interest | **Terms and Conditions - Expediting Services** | |
| | State the term remaining | | **Crane Worldwide Logistics, LLC 1500 Rankin Road Houston, TX 77073** |
| | List the contract number of any government contract | | |
| 2.79. | State what the contract or lease is for and the nature of the debtor's interest | **Master Services Agreement - Logistics Services** | |
| | State the term remaining | **expires 11/30/22** | **Crowley Logistics, LLC Crowley Caribbean Logistics, LLC Crowley Caribbean Services, LLC 9487 Regency Square Blvd Jacksonville, FL 32225** |
| | List the contract number of any government contract | | |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2408 of 2637
2408
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 85 of 156

Debtor 1   **Limitree Bay Refining, LLC**                                     Case number *(if known)*   **21-32354**
First Name             Middle Name             Last Name



## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.80. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement (LTR-136) - Website Building/Maintenance** | |
|---|---|---|---|
| | State the term remaining | | **CrucianPoint, LLC** |
| | List the contract number of any government contract | | **2201 Church Street** |
| | | | **Christiansted, VI 00822** |

| 2.81. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement (LTR-175) - Sanitary Waste Disposal** | |
|---|---|---|---|
| | State the term remaining | | **Cruzan Environmental Services, Inc.** |
| | List the contract number of any government contract | | **PO Box 3018** |
| | | | **St. Croix, VI 00851** |

| 2.82. | State what the contract or lease is for and the nature of the debtor's interest | **Term Service Agreement (TR 223 with Novation Agreement and Work Releases - Exchanger Repairs and Fabrication** | |
|---|---|---|---|
| | State the term remaining | | **Cust-O-Fab Speciality Services, LLC** |
| | List the contract number of any government contract | | **8888 W 21st St** |
| | | | **Sand Springs, TX 74063** |

| 2.83. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement - Amendment and Joinder Agreement-LTS-077-JR (HVAC Project)** | |
|---|---|---|---|
| | State the term remaining | | **Demaco Corporation** |
| | List the contract number of any government contract | | **Road 127, KM 13,5** |
| | | | **Guayanilla, PR 00656** |

| 2.84. | State what the contract or lease is for and the nature of the debtor's interest | **Master Purchase and Sale Agreement - General Purchases** | |
|---|---|---|---|
| | State the term remaining | | **Dependable Power Systems** |
| | List the contract number of any government contract | | **4702 Traube Road** |
| | | | **Columbus, OH 43228** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|
| | First Name    Middle Name    Last Name | | | |

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.85. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract No. LTR-228 and work releases** | |
|---|---|---|---|
| | State the term remaining | | **DeSalters, LLC** |
| | List the contract number of any government contract | | **1947 Lago Vista Blvd Palm Harbor, FL 34685** |

| 2.86. | State what the contract or lease is for and the nature of the debtor's interest | **Engagement Letter** | |
|---|---|---|---|
| | State the term remaining | | **DHR International** |
| | List the contract number of any government contract | | **1300 Post Oak Blvd Suite 1100 Houston, TX 77056** |

| 2.87. | State what the contract or lease is for and the nature of the debtor's interest | **Terms and Conditions - 19-1200DL.REV.2** | |
|---|---|---|---|
| | State the term remaining | | **Doosan Turbomachinery Services, Inc.** |
| | List the contract number of any government contract | | **12000 North P. Street La Porte, TX 77571** |

| 2.88. | State what the contract or lease is for and the nature of the debtor's interest | **Terms and Conditions - 19-1216 DL Rev.1** | |
|---|---|---|---|
| | State the term remaining | | **Doosan Turbomachinery Services, Inc.** |
| | List the contract number of any government contract | | **12000 North P. Street La Porte, TX 77571** |

| 2.89. | State what the contract or lease is for and the nature of the debtor's interest | **Terms and Conditions - 19-1199 DL Rev.2** | |
|---|---|---|---|
| | State the term remaining | | **Doosan Turbomachinery Services, Inc.** |
| | List the contract number of any government contract | | **12000 North P. Street La Porte, TX 77571** |

| 2.90. | State what the contract or lease is for and the nature of the debtor's interest | **Terms and Conditions - 19-1218 DL Rev.1** | |
|---|---|---|---|
| | State the term remaining | | **Doosan Turbomachinery Services, Inc.** |
| | List the contract number of any | | **12000 North P. Street La Porte, TX 77571** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2410 of 2637
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 87 of 156
2410

Debtor 1  **Limetree Bay Refining, LLC**
First Name         Middle Name         Last Name

Case number (*if known*)   **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| government contract | |

| 2.91. | State what the contract or lease is for and for the nature of the debtor's interest | **Terms and Conditions - 19-1221 DL Rev.2** | |
|---|---|---|---|
| | State the term remaining | | **Doosan Turbomachinery Services, Inc.** |
| | List the contract number of any government contract | | **12000 North P. Street** **La Porte, TX 77571** |

| 2.92. | State what the contract or lease is for and for the nature of the debtor's interest | **Terms and Conditions - 19-1222 DL Rev.1** | |
|---|---|---|---|
| | State the term remaining | | **Doosan Turbomachinery Services, Inc.** |
| | List the contract number of any government contract | | **12000 North P. Street** **La Porte, TX 77571** |

| 2.93. | State what the contract or lease is for and for the nature of the debtor's interest | **Terms and Conditions - 19-1236 DL Rev.1** | |
|---|---|---|---|
| | State the term remaining | | **Doosan Turbomachinery Services, Inc.** |
| | List the contract number of any government contract | | **12000 North P. Street** **La Porte, TX 77571** |

| 2.94. | State what the contract or lease is for and for the nature of the debtor's interest | **Terms and Conditions - 19-1237 DL** | |
|---|---|---|---|
| | State the term remaining | | **Doosan Turbomachinery Services, Inc.** |
| | List the contract number of any government contract | | **12000 North P. Street** **La Porte, TX 77571** |

| 2.95. | State what the contract or lease is for and for the nature of the debtor's interest | **Term Services Agreement: Contract Number: LB-003 and work release (Roofing Contractor)** | |
|---|---|---|---|
| | State the term remaining | | **DSI Group, LLC** |
| | List the contract number of any government contract | | **4217 Buchanan Street** **New Orleans, LA 70122** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2411 of 2637
2411
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 88 of 156

Debtor 1  **Limetree Bay Refining, LLC**                     Case number *(if known)*  **21-32354**
First Name        Middle Name        Last Name

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.96. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LB-003 (Roof Repair & General Contractor)** | |
|---|---|---|---|
| | State the term remaining | | **DSI, LLC** |
| | List the contract number of any government contract | | **4217 Buchanan Street New Orleans, LA 70122** |

| 2.97. | State what the contract or lease is for and the nature of the debtor's interest | **Consulting Agreement LTR-246** | |
|---|---|---|---|
| | State the term remaining | | **Duke Given** |
| | List the contract number of any government contract | | **218 Lasiandra Ct. Richmond, WA 99336** |

| 2.98. | State what the contract or lease is for and the nature of the debtor's interest | **Amendment and Joinder Agreement  to Term Services Agreement (LTS-087); and all work releases expires 10/26/22** | |
|---|---|---|---|
| | State the term remaining | | **Dynamic Innovative Corporation** |
| | List the contract number of any government contract | | **306 Williams Delight Frederiksted, VI 00840** |

| 2.99. | State what the contract or lease is for and the nature of the debtor's interest | **Master Information Technology Services Agreement (MITSA), Schedules and other forms** | |
|---|---|---|---|
| | State the term remaining | | **DYONYX L.P.** |
| | List the contract number of any government contract | | **13430 Northwest Freeway Suite 1000 Houston, TX 77040** |

| 2.100. | State what the contract or lease is for and the nature of the debtor's interest | **Selling Policy 25-080 (Labor for Replacement Circuit Breakers )** | |
|---|---|---|---|
| | State the term remaining | | **Eaton Corporation** |
| | List the contract number of any government contract | | **1000 Cherrington Parkway Moon Township, PA 15108** |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                     Best Case Bankruptcy

Debtor 1  **Limetree Bay Refining, LLC**                    Case number (*if known*)  **21-32354**
First Name          Middle Name          Last Name



## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.101. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement, Contract Number: LTR-036 and addenda and work releases** | |
|---|---|---|---|
| | State the term remaining | | **Elite Turnaround Specialists, Ltd.** |
| | List the contract number of any government contract | | **225 South 16th Street** |
| | | | **La Porte, TX 77571** |

| 2.102. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy B0509ENGAO2000563** | |
|---|---|---|---|
| | State the term remaining | **expires 12/1/21** | **Elseco Limited** |
| | List the contract number of any government contract | | **Marsh USA** |
| | | | **1166 Avenue of the Americas** |
| | | | **New York, NY 10036-2774** |

| 2.103. | State what the contract or lease is for and the nature of the debtor's interest | **Consulting Services Agreement - Outsourced Accounting and Finance Services** | |
|---|---|---|---|
| | State the term remaining | **expires 1/9/22** | **Embark Consulting LLC** |
| | List the contract number of any government contract | | **2919 Commerce Street** |
| | | | **Suite 400** |
| | | | **Dallas, TX 75226** |

| 2.104. | State what the contract or lease is for and the nature of the debtor's interest | **Communications Consulting Agreement** | |
|---|---|---|---|
| | State the term remaining | | **EMIC Communications, LLC** |
| | List the contract number of any government contract | | **863 Mission Hills Drive** |
| | | | **New Braunfels, TX 78130** |

| 2.105. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-264) wth addenda, work releases, and change orders - Water Milling, Chemical Cleaning and Low Decible Pipe Cleaning Services** | |
|---|---|---|---|
| | State the term remaining | | **EnerMech Mechanical Services, Inc.** |
| | List the contract number of any government contract | | **2919 Commerce Street** |
| | | | **Houston, TX 77041** |

| Debtor 1 | Limetree Bay Refining, LLC | | | Case number (*if known*) | 21-32354 |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.106. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-414** | |
|---|---|---|---|
| | State the term remaining | | **Engineering Systems and Sales, Inc.** |
| | List the contract number of any government contract | | **#147 El Tuque Industrial Park** **Ponce, PR 00728** |

| 2.107. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-007 including all Addenda and Work Releases)** | |
|---|---|---|---|
| | State the term remaining | | **Englobal U.S. Inc.** |
| | List the contract number of any government contract | | **225 Portwall St.** **Houston, TX 77029** |

| 2.108. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-425** | |
|---|---|---|---|
| | State the term remaining | | **ERP Software Services, LLC** **1309 Coffeen Avenue** |
| | List the contract number of any government contract | | **Suite 1200** **Sheridan, WY 82801** |

| 2.109. | State what the contract or lease is for and the nature of the debtor's interest | **Policy # MKLV4EFX102259** | |
|---|---|---|---|
| | State the term remaining | | **Evanston (Markel)** **Lockton Companies, LLC - Houston** **3657 Briarpark Drive** |
| | List the contract number of any government contract | | **Suite 700** **Houston, TX 77042** |

| 2.110. | State what the contract or lease is for and the nature of the debtor's interest | **Rental Agreement - Dissolved Gas Flotation System - lease and service** | |
|---|---|---|---|
| | State the term remaining | | **Evoqua Water Technologies LLC** |
| | List the contract number of any government contract | | **28563 Network Place** **Chicago, IL 60673-1285** |

| 2.111. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-015); and all work releases** | |
|---|---|---|---|
| | State the term remaining | expires 8/2/23 | **Excel Construction & Maintenance VI** **8641 United Plaza Blvd** |
| | List the contract number of any | | **Baton Rouge, LA 70809** |

Debtor 1  **Limetree Bay Refining, LLC**                                              Case number (*if known*)   **21-32354**

First Name              Middle Name              Last Name

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| government contract | |

| 2.112. | State what the contract or lease is for and the nature of the debtor's interest | **Master Equipment Lease Agreement** | |
|---|---|---|---|
| | State the term remaining | **expires 7/7/24** | **F&M Mafco, Inc.** |
| | List the contract number of any government contract | | **9149 Dry Fork Road** |
| | | | **Harrison, OH 45030** |

| 2.113. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-304 (Engineering Assistance on Solar Grid Project)** | |
|---|---|---|---|
| | State the term remaining | | **FastGrid LLC** |
| | List the contract number of any government contract | | **225 E. Germann Road** |
| | | | **Ste 101** |
| | | | **Gilbert, AZ 85297** |

| 2.114. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy B0509ENGAO2000613** | |
|---|---|---|---|
| | State the term remaining | **expires 12/1/21** | **Fidelis Underwriting Ltd.** |
| | List the contract number of any government contract | | **Marsh USA** |
| | | | **1166 Avenue of the Americas** |
| | | | **New York, NY 10036-2774** |

| 2.115. | State what the contract or lease is for and the nature of the debtor's interest | **Master Recruiting Agreement** | |
|---|---|---|---|
| | State the term remaining | **expires 3/25/21** | **Flexicrew Technical, LLC** |
| | List the contract number of any government contract | | **4501 Napoleon Avenue** |
| | | | **Suite 200** |
| | | | **Metairie, LA 70001** |

| 2.116. | State what the contract or lease is for and the nature of the debtor's interest | **FLIR GF Cameras & Software License** | |
|---|---|---|---|
| | State the term remaining | **expires 2/21/23** | **FLIR Commercial Systems, Inc.** |
| | List the contract number of any government contract | | **9 Townsend W** |
| | | | **Nashua, NH 03063** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|
| | First Name    Middle Name    Last Name | | | |

 **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

| 2.117. | State what the contract or lease is for and the nature of the debtor's interest | **Contract For Purchase and Sale of Equipment and Support Services** | |
|---|---|---|---|
| | State the term remaining | | **Flowserve Corporation** |
| | List the contract number of any government contract | | **4179 Collections Center Drive Chcago, IL 60693** |

| 2.118. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-279) with work releases and addenda - Village Maintenance Contractor** | |
|---|---|---|---|
| | State the term remaining | | **FMMVI, LLC** |
| | List the contract number of any government contract | | **11634 Darryl Drive Baton Rouge, LA 70815** |

| 2.119. | State what the contract or lease is for and the nature of the debtor's interest | **Consulting Services Agreement and all addenda** | |
|---|---|---|---|
| | State the term remaining | **expires 12/31/21** | **FR Consulting LLC Calle Sol A-6** |
| | List the contract number of any government contract | | **Puertas Del Sol Fajardo, PR 00738** |

| 2.120. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-218** | |
|---|---|---|---|
| | State the term remaining | | **Frontline Data Solutions 101 Parklane Blvd** |
| | List the contract number of any government contract | | **Suite 204 Sugar Land, TX 77478** |

| 2.121. | State what the contract or lease is for and the nature of the debtor's interest | **Security System Support** | |
|---|---|---|---|
| | State the term remaining | **expires 10/31/24** | **G4S Secure Integration LLC, 1200 Landmark Center** |
| | List the contract number of any government contract | | **Suite 1300 Omaha, NE 68102-1892** |

| 2.122. | State what the contract or lease is for and the nature of the debtor's interest | **Insurance Consulting Agreement (LTR-051) and all addenda** | |
|---|---|---|---|
| | State the term remaining | **expires 12/31/21** | **Gary D. Morrow 15604 Hayes Street Overland Park, KS 66221** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2416 of 2637
2416
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 93 of 156

Debtor 1   **Limitree Bay Refining, LLC**                     Case number (*if known*)   **21-32354**
　　　　　First Name　　　　Middle Name　　　　　Last Name

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| | List the contract number of any government contract | |
|---|---|---|

| 2.123. | State what the contract or lease is for and the nature of the debtor's interest | **General Terms & Conditions for Sale of Products, Parts and/or Services** | |
|---|---|---|---|
| | State the term remaining | | **GE Oil & Gas LLC** |
| | List the contract number of any government contract | | **17021 Aldine Westfield Road**<br>**Houston, TX 77073** |

| 2.124. | State what the contract or lease is for and the nature of the debtor's interest | **Employment Agency Agreement** | |
|---|---|---|---|
| | State the term remaining | | **Global Edge Group, LLC** |
| | List the contract number of any government contract | | **2829 Technology Forrest Blvd.**<br>**Suite 280**<br>**The Woodlands, TX 77381** |

| 2.125. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement (LTR-161) and addenda - Rental of water trucks and provision of drivers** | |
|---|---|---|---|
| | State the term remaining | | **Global Engagement Support Services** |
| | List the contract number of any government contract | | **PO Box 964**<br>**Christiansted, VI 00821** |

| 2.126. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LTR-265 with work release** | |
|---|---|---|---|
| | State the term remaining | | **Global World Technologies** |
| | List the contract number of any government contract | | **4730 South Fort Apache Road**<br>**Suite 300**<br>**Las Vegas, NV 89147** |

| 2.127. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy ENGAO2000069** | |
|---|---|---|---|
| | State the term remaining | **expires 12/1/21** | **Great Lakes** |
| | List the contract number of any government contract | | **Marsh USA**<br>**1166 Avenue of the Americas**<br>**New York, NY 10036-2774** |

Official Form 206G       **Schedule G: Executory Contracts and Unexpired Leases**       Page 24 of 66

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2417 of 2637
2417
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 94 of 156

Debtor 1   **Limittree Bay Refining, LLC**                                        Case number *(if known)*   **21-32354**
First Name          Middle Name          Last Name

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.128. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy B0509ENGAO2000576** | |
|---|---|---|---|
| | State the term remaining | expires 12/1/21 | **Guardian General Insurance Limited Newton Centre 30-36 Maraval Road Newton Port of Spain 190133 TRINDAD AND TOBAGO** |
| | List the contract number of any government contract | | |

| 2.129. | State what the contract or lease is for and the nature of the debtor's interest | **Engineering Services Agreement (including all addenda)** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **H & K Engineering, LLC 2644 S. Sherwood Forest Blvd Baton Rouge, LA 70816** |

| 2.130. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy ENGAO2000069** | |
|---|---|---|---|
| | State the term remaining | expires 12/1/21 | **Hannover Re/HDI Global Specialty SE Marsh USA 1166 Avenue of the Americas New York, NY 10036-2774** |
| | List the contract number of any government contract | | |

| 2.131. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - Amendent and Joinder Agreement LTS-102-JR** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **Hargrove & Associates LLC 20 S. Royal Street Mobile, AL 36602** |

| 2.132. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-434** | |
|---|---|---|---|
| | State the term remaining | expires 3/29/22 | **Hazard Management Group of Texas LLC 2109 Olympic Drive League City, TX 77573** |
| | List the contract number of any government contract | | |

| 2.133. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy ENGAO2000069** | |
|---|---|---|---|
| | State the term remaining | expires 12/1/21 | **Helvetia Swiss Insurance Co in Liechenstein Ltd Marsh USA 1166 Avenue of the Americas New York, NY 10036-2774** |
| | List the contract number of any | | |

Debtor 1   **Limitree Bay Refining, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)   **21-32354**

**Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

|  | government contract |  |  |
|---|---|---|---|

| 2.134. | State what the contract or lease is for and the nature of the debtor's interest | **Construction Services Agreement [by Joinder Agreement]** |  |
|  | State the term remaining |  | **HMT LLC** |
|  | List the contract number of any government contract |  | **24 Waterway Ave** **The Woodlands, TX 77380** |

| 2.135. | State what the contract or lease is for and the nature of the debtor's interest | **Assignment and Novation Agreement of Technical Advisor Agreement dated 08/13/20** |  |
|  | State the term remaining |  | **Honeywell Enraf Americas** |
|  | List the contract number of any government contract |  | **2000 Northfield Court** **Rosewell, GA 30076** |

| 2.136. | State what the contract or lease is for and the nature of the debtor's interest | **Assignment and Novation Agreement of Technical Advisor Agreement dated 09/15/20** |  |
|  | State the term remaining |  | **Honeywell Enraf Americas** |
|  | List the contract number of any government contract |  | **2000 Northfield Court** **Rosewell, GA 30076** |

| 2.137. | State what the contract or lease is for and the nature of the debtor's interest | **Project Agreement for On-Island Services** |  |
|  | State the term remaining |  | **Honeywell Enraf Americas, Inc.** |
|  | List the contract number of any government contract |  | **2000 Northfield Court** **Roswell, GA 30076** |

| 2.138. | State what the contract or lease is for and the nature of the debtor's interest | **DCS Systems Project Agreement** |  |
|  | State the term remaining |  | **Honeywell International** |
|  | List the contract number of any government contract |  | **1250 Sam Houston Parkway South** **Houston, TX 77042** |

Debtor 1  **Limetree Bay Refining, LLC**                                    Case number (*if known*)   **21-32354**
First Name          Middle Name          Last Name

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.139. | State what the contract or lease is for and the nature of the debtor's interest | **Parent Guarantee for Enraf** | |
|---|---|---|---|
| | State the term remaining | | **Honeywell International** |
| | List the contract number of any government contract | | **1250 Sam Houston Parkway South** **Houston, TX 77042** |

| 2.140. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-148** | |
|---|---|---|---|
| | State the term remaining | | **Hopper Engineering Associates, Inc.** |
| | List the contract number of any government contract | | **300 Vista Del Mar** **Redondo Beach, CA 90277** |

| 2.141. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy ENGAO2000069** | |
|---|---|---|---|
| | State the term remaining | **expires 9/1/21** | **Houston Specialty Insurance Company** **Marsh USA** |
| | List the contract number of any government contract | | **1166 Avenue of the Americas** **New York, NY 10036-2774** |

| 2.142. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LTR-044** | |
|---|---|---|---|
| | State the term remaining | | **HPI, LLC** |
| | List the contract number of any government contract | | **15503 West Hardy Rd** **Houston, TX 77060** |

| 2.143. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement (LTR-127) and Addendum - Air Cooled Changer Rotating Elements** | |
|---|---|---|---|
| | State the term remaining | | **Hudson Products Corporation** |
| | List the contract number of any government contract | | **9660 Grunwald Road** **Beasley, TX 77417** |

| 2.144. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement, Contract Number: LTR-065, MOU and work releases** | |
|---|---|---|---|
| | State the term remaining | | **I-Tech Services, LLC** **P.O. Box 1437** **Kingshill, VI 00851** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2420 of 2637
2420
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 97 of 156

Debtor 1   **Limetree Bay Refining, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)   **21-32354**

## Additional Page if You Have More Contracts or Leases

**2. List all contracts and unexpired leases**

**State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease**

List the contract number of any government contract

| | | |
|---|---|---|
| **2.145.** | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement** |
| | State the term remaining | |
| | List the contract number of any government contract | **IBB Petroleum Services Inc.**<br>**22821 Dequindre Road**<br>**Hazel Park, MI 48030** |
| **2.146.** | State what the contract or lease is for and the nature of the debtor's interest | **Contract Number 00595545 and Data Terms and Conditions** |
| | State the term remaining | **expires 1/17/22** |
| | List the contract number of any government contract | **IHS Data Products**<br>**15 Inverness Way East**<br>**Englewood, CO 80112-5710** |
| **2.147.** | State what the contract or lease is for and the nature of the debtor's interest | **Order Form - Contract Number 00587428 and Data Terms and Conditions** |
| | State the term remaining | **expires 1/17/22** |
| | List the contract number of any government contract | **IHS Data Products**<br>**15 Inverness Way East**<br>**Englewood, CO 80112-5710** |
| **2.148.** | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Ageement (LTR-017 including all addenda and work releases)** |
| | State the term remaining | |
| | List the contract number of any government contract | **InServ Field Services USVI, LLC**<br>**1900 N 161st East Ave**<br>**Tulsa, OK 74116** |
| **2.149.** | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy B0509ENGAO2000563** |
| | State the term remaining | **expires 12/1/21** |
| | List the contract number of any government contract | **Insurance General Insurance Co Ltd.**<br>**Marsh USA**<br>**1166 Avenue of the Americas**<br>**New York, NY 10036-2774** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2421 of 2637
2421
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 98 of 156

Debtor 1  **Limetree Bay Refining, LLC**                                    Case number (*if known*)   **21-32354**
First Name          Middle Name          Last Name

<span style="background:purple">   </span>  **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

| 2.150. | State what the contract or lease is for and the nature of the debtor's interest | **Consulting Services Agreement** | |
|---|---|---|---|
| | State the term remaining | | **Intergraph Coporation d/b/a Hexagon PPM 305 Intergraph Way Madison, AL 35758** |
| | List the contract number of any government contract | | |

| 2.151. | State what the contract or lease is for and the nature of the debtor's interest | **Policy # USL00880520** | |
|---|---|---|---|
| | State the term remaining | | **Interstate Fire (Allianz) Lockton Companies, LLC - Houston 3657 Briarpark Drive, Suite 700 Suite 700 Houston, TX 77042** |
| | List the contract number of any government contract | | |

| 2.152. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-458 (Consulting - Flare)** | |
|---|---|---|---|
| | State the term remaining | | **ioMosaic Corporation 93 Stiles Road Salem, NH 03079** |
| | List the contract number of any government contract | | |

| 2.153. | State what the contract or lease is for and the nature of the debtor's interest | **Policy # 004380100** | |
|---|---|---|---|
| | State the term remaining | | **Ironshore Specialty Lockton Companies, LLC - Houston 3657 Briarpark Drive Suite 700 Houston, TX 77042** |
| | List the contract number of any government contract | | |

| 2.154. | State what the contract or lease is for and the nature of the debtor's interest | **Policy # 002626704** | |
|---|---|---|---|
| | State the term remaining | | **Ironshore Specialty Lockton Companies, LLC - Houston 3657 Briarpark Drive Suite 700 Houston, TX 77042** |
| | List the contract number of any government contract | | |

| 2.155. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement, Contract Number: LTR-038** | |
|---|---|---|---|
| | State the term remaining | | **Island Services Group, LLC 109-113 Castle Coakly Christiansted, VI 00820** |
| | List the contract number of any | | |

Official Form 206G                **Schedule G: Executory Contracts and Unexpired Leases**                Page 29 of 66

Debtor 1  **Limetree Bay Refining, LLC**
_____          Case number (*if known*)  **21-32354**
First Name        Middle Name        Last Name

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| government contract | |

| 2.156. | State what the contract or lease is for and the nature of the debtor's interest | **Port / Ship Agency Agreement** | |
|---|---|---|---|
| | State the term remaining | | **ISS Marine Services LLC** |
| | List the contract number of any government contract | | **1210 Hillcrest Road Suite 100 Mobile, AL 36695** |

| 2.157. | State what the contract or lease is for and the nature of the debtor's interest | **Engineering Services Agreement for #6 Crude Startup Project** | |
|---|---|---|---|
| | State the term remaining | | **J & W Virgin Islands, L.L.C.** |
| | List the contract number of any government contract | | **7825 Park Place Blvd. Houston, TX 77087** |

| 2.158. | State what the contract or lease is for and the nature of the debtor's interest | **Monetization Master Agreement** | |
|---|---|---|---|
| | State the term remaining | **expires 12/31/21** | **J. Aron & Company LLC c/o Robin Spigel Baker Botts, LLC** |
| | List the contract number of any government contract | | **30 Rockefeller Plaza New York, NY 10112-4498** |

| 2.159. | State what the contract or lease is for and the nature of the debtor's interest | **Refinery Facilities Agreement** | |
|---|---|---|---|
| | State the term remaining | | **J. Aron & Company LLC c/o Robin Spigel Baker Botts, LLC** |
| | List the contract number of any government contract | | **30 Rockefeller Plaza New York, NY 10112-4498** |

| 2.160. | State what the contract or lease is for and the nature of the debtor's interest | **Funding Letter Agreement** | |
|---|---|---|---|
| | State the term remaining | | **J. Aron & Company LLC Robin Spigel Baker Botts, LLC** |
| | List the contract number of any government contract | | **30 Rockefeller Plaza New York, NY 10112-4498** |

| 2.161. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement - Amendment and Joinder Agreement** | **J. Benton Construction, LLC 3000 Orange Grove Christiansted, VI 00820** |
|---|---|---|---|

Debtor 1   **Limetree Bay Refining, LLC**
First Name          Middle Name          Last Name

Case number (*if known*)   **21-32354**

**Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

State the term remaining

List the contract number of any government contract

---

2.162.  State what the contract or lease is for and the nature of the debtor's interest
**Services Agreement Contract No. LTR-403**

State the term remaining

List the contract number of any government contract

**James D. Acers Company, Inc.
1510 12th Street
Cloquet, MS 55720**

---

2.163.  State what the contract or lease is for and the nature of the debtor's interest
**Term Services Agreement (LTR-081 including all addenda and work releases)**

State the term remaining

List the contract number of any government contract

**John Crane Inc.
24929 Network Place
Chicago, IL 60673-1249**

---

2.164.  State what the contract or lease is for and the nature of the debtor's interest
**Consulting Services Agreement (Finance Consultant)**

State the term remaining
**expires 9/30/21**

List the contract number of any government contract

**John Dugas
5314 Sycamore Creek Drive
Kingwood, TX 77345-1462**

---

2.165.  State what the contract or lease is for and the nature of the debtor's interest
**Terms and Conditions (Emergency Scanning of T-4850)**

State the term remaining

List the contract number of any government contract

**Johnson Matthey Inc.
d/b/a Tracerco
88724 Expedite Way
Chicago, IL 60695**

---

2.166.  State what the contract or lease is for and the nature of the debtor's interest
**Services Agreement (LTR-187 )and addendum - Engine Pre Start Inspection and Basic Services**

State the term remaining

List the contract number of any government contract

**Jones Diesel and Marine, LLC
8510 SR 207
Hastings, FL 32145**

---

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2424 of 2637
2424
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 101 of 156

Debtor 1  **Limetree Bay Refining, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)  **21-32354**

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.167. | State what the contract or lease is for and the nature of the debtor's interest | **Master Engineering and Procurement Agreement  - LTR-207** | |
|---|---|---|---|
| | State the term remaining | | **JPS Cryogenics, Inc.** |
| | List the contract number of any government contract | | **3 Morris Drive** **Princeton, NJ 08540** |

| 2.168. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-188** | |
|---|---|---|---|
| | State the term remaining | | **Konecranes, Inc.** |
| | List the contract number of any government contract | | **d/b/a Crane Pro Services** **3115 LaPlace Lane** **La Place, LA 70068** |

| 2.169. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy B0509ENGAO2000587** | |
|---|---|---|---|
| | State the term remaining | **expires 12/1/21** | **Lancashire Insurance Company UK, Ltd** **Marsh USA** |
| | List the contract number of any government contract | | **1166 Avenue of the Americas** **New York, NY 10036-2774** |

| 2.170. | State what the contract or lease is for and the nature of the debtor's interest | **Policy # LSMAEC119907A; LBR-2144/XS004** | |
|---|---|---|---|
| | State the term remaining | | **Liberty Specialty (STARR)/ Chubb Bermuda** **Lockton Companies, LLC - Houston** **3657 Briarpark Drive,** |
| | List the contract number of any government contract | | **Suite 700** **Houston, TX 77042** |

| 2.171. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy LSMAEN143232A** | |
|---|---|---|---|
| | State the term remaining | **expires 12/1/21** | **Liberty Specialty Markets Agency Ltd** **Liberty Specialty Markets** |
| | List the contract number of any government contract | | **141 Front Street** **Hamilton HM19** **BERMUDA** |

| 2.172. | State what the contract or lease is for and the nature of the debtor's interest | **Shared Catalyst Agreement** | |
|---|---|---|---|
| | State the term remaining | | **Limetree Bay Refining Marketing, LLC** **#1 Estate Hope** |
| | List the contract number of any | | **Christiansted, VI 00820** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2425 of 2637
2425
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 102 of 156

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

### Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| | government contract | | |
|---|---|---|---|

| 2.173. | State what the contract or lease is for and the nature of the debtor's interest | **Shared Services Agreement** | |
|---|---|---|---|
| | State the term remaining | | **Limetree Bay Terminals, LLC** |
| | List the contract number of any government contract | | **#1 Estate Hope** **Christiansted, VI 00820-5652** |

| 2.174. | State what the contract or lease is for and the nature of the debtor's interest | **Policy # ENVX0000256-20** | |
|---|---|---|---|
| | State the term remaining | | **Lloyd's** **Lockton Companies, LLC - Houston** **3657 Briarpark Drive** **Suite 700** |
| | List the contract number of any government contract | | **Houston, TX 77042** |

| 2.175. | State what the contract or lease is for and the nature of the debtor's interest | **#ENVP0000296-20** | |
|---|---|---|---|
| | State the term remaining | | **Lloyd's** **Lockton Companies, LLC - Houston** **3657 Briarpark Drive** **Suite 700** |
| | List the contract number of any government contract | | **Houston, TX 77042** |

| 2.176. | State what the contract or lease is for and the nature of the debtor's interest | **Policy # B0713ENCAS2000021** | |
|---|---|---|---|
| | State the term remaining | | **Lloyd's 1886 (QBE)** **Lockton Companies, LLC - Houston** **3657 Briarpark Drive** **Suite 700** |
| | List the contract number of any government contract | | **Houston, TX 77042** |

| 2.177. | State what the contract or lease is for and the nature of the debtor's interest | **Policy # B0509BOWCN1800862** | |
|---|---|---|---|
| | State the term remaining | | **Lloyd's 1886 (QBE)** **Lockton Companies, LLC - Houston** **3657 Briarpark Drive** **Suite 700** |
| | List the contract number of any government contract | | **Houston, TX 77042** |

| 2.178. | State what the contract or lease is for and the nature of the debtor's interest | **Contract Fee Agreement (HR Temporary Staffing Agency)** | **Lucas Group** **950 East Paces Ferry Road** **Suite 2300** **Atlanta, GA 30326** |
|---|---|---|---|

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2426 of 2637
2426
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 103 of 156

Debtor 1   **Limetree Bay Refining, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)   **21-32354**

## Additional Page if You Have More Contracts or Leases

**2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease**

State the term remaining

List the contract number of any
government contract

| | | |
|---|---|---|
| 2.179. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-206** |
| | State the term remaining | |
| | List the contract number of any government contract | **Madison Plant Services, Inc.**<br>**3 Morris Drive**<br>**Princeton, NJ 08540** |
| 2.180. | State what the contract or lease is for and the nature of the debtor's interest | **Master Services Agreement LTR-294 - Heavy Equiment haul logistics** |
| | State the term remaining | |
| | List the contract number of any government contract | **Mammoet USA South, Inc.**<br>**20525 FM 521**<br>**Rosharon, TX 77583** |
| 2.181. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LTR-365** |
| | State the term remaining | |
| | List the contract number of any government contract | **Matrix North American Construction, Inc.**<br>**1510 Chester Pike**<br>**Suite 500**<br>**Eddystone, PA 19022** |
| 2.182. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract No. LTR-205 and Work Releases** |
| | State the term remaining | |
| | List the contract number of any government contract | **MGMGG Commissioning and Consulting Servi**<br>**5355 Downs Road**<br>**PO Box 20197**<br>**Beaumont, TX 77705** |
| 2.183. | State what the contract or lease is for and the nature of the debtor's interest | **Employment Agency Agreement** |
| | State the term remaining | |
| | List the contract number of any government contract | **Michael Page International, Inc.**<br>**622 Third Avenue**<br>**29th Floor**<br>**New York, NY 10017** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2427 of 2637
2427
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 104 of 156

Debtor 1   **Limetree Bay Refining, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)   **21-32354**

**Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.184. | State what the contract or lease is for and the nature of the debtor's interest | **Master Services Agreement (Cybersecurity Assessment) expires 3/31/25** | |
|---|---|---|---|
| | State the term remaining | | **Mission Secure Inc.** |
| | List the contract number of any government contract | | **300 Preston Avenue Suite 500 Charlottesville, VA 22902** |

| 2.185. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-183) and Work Release - PCMS Implementor and Administrator** | |
|---|---|---|---|
| | State the term remaining | | **Mistras Group, Inc.** |
| | List the contract number of any government contract | | **PO Box 405694 Atlanta, GA 30384-5694** |

| 2.186. | State what the contract or lease is for and the nature of the debtor's interest | **Amendment and Joinder Agreement (Environmental Services)** | |
|---|---|---|---|
| | State the term remaining | | **Mostardi Platt** |
| | List the contract number of any government contract | | **888 Industrial Drive Elmhurst, IL 60126** |

| 2.187. | State what the contract or lease is for and the nature of the debtor's interest | **Independent Engineering Services St. Croix Restart Project and Addenda** | |
|---|---|---|---|
| | State the term remaining | | **Muse, Stancil & Co.** |
| | List the contract number of any government contract | | **5080 Spectrum Drive Addison, TX 75001** |

| 2.188. | State what the contract or lease is for and the nature of the debtor's interest | **Operations O&M PHU - Limited Notice to Proceed** | |
|---|---|---|---|
| | State the term remaining | | **NAES Corporation** |
| | List the contract number of any government contract | | **1180 N.W. Maple Street Suite 200 Issaquah, WA 98027** |

| 2.189. | State what the contract or lease is for and the nature of the debtor's interest | **Managed Inventory and Onsite Services Agreement LTR-280 - Managed Chemical Contractor** | |
|---|---|---|---|
| | State the term remaining | | **Nalco U.S. 2, Inc. 1601 West Diehl Road Naperville, IL 60563** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

## Additional Page if You Have More Contracts or Leases

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

|  | List the contract number of any government contract | |
|---|---|---|

| 2.190. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-016); and all amendments and work releases expires 8/2/23** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **National Industrial Services, LLC<br>PO Box 1545<br>Kingshill, St. Croix, VI 00851** |

| 2.191. | State what the contract or lease is for and the nature of the debtor's interest | **Access Agreement Contract Number No. LTR-359 - Parts Delivery expires 1/9/22** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **National Parts<br>455 Plaza Drive<br>Atlanta, GA 30349** |

| 2.192. | State what the contract or lease is for and the nature of the debtor's interest | **Relocation Services Agreement LTR-225** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **NEI Global Relocation Company<br>2707 N 118th Street<br>Omaha, NE 68164** |

| 2.193. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy B0509ENGAO2000586** | |
|---|---|---|---|
| | State the term remaining | **expires 12/1/21** | |
| | List the contract number of any government contract | | **NOA/Lloyds of London<br>Marsh USA<br>1166 Avenue of the Americas<br>New York, NY 10036-2774** |

| 2.194. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement** | |
|---|---|---|---|
| | State the term remaining | **expires 12/31/22** | |
| | List the contract number of any government contract | | **North Atlantic Power Products<br>No.. 15 Continental Drive<br>Exeter, NH 03833** |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2429 of 2637
2429
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 106 of 156

Debtor 1   **Limitree Bay Refining, LLC**                                        Case number (*if known*)   **21-32354**

First Name          Middle Name          Last Name



## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.195. | State what the contract or lease is for and the nature of the debtor's interest | **Master Consignment Agreement (Excess Parts Sale Agreement)** | |
|---|---|---|---|
| | State the term remaining | expires 3/8/21 | |
| | List the contract number of any government contract | | **NRI Industrial Sales LLC**<br>**6401 Rogers Road**<br>**Delta, OH 43515** |

| 2.196. | State what the contract or lease is for and the nature of the debtor's interest | **Policy # U920968/EXC30001524 800** | |
|---|---|---|---|
| | State the term remaining | | **Oil/Edurance**<br>**Lockton Companies, LLC - Houston**<br>**3657 Briarpark Drive**<br>**Suite 700**<br>**Houston, TX 77042** |
| | List the contract number of any government contract | | |

| 2.197. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement (LTR.-349) - Exterminating for the Village** | |
|---|---|---|---|
| | State the term remaining | | **Oliver Exterminating of the V.I., Inc.**<br>**Plot 6x Peter's Rest**<br>**St. Croix, VI 00820** |
| | List the contract number of any government contract | | |

| 2.198. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement** | |
|---|---|---|---|
| | State the term remaining | | **OpenText**<br>**2950 S. Deleware Street**<br>**Bay Meadows Station 3 Building**<br>**San Mateo, CA 94403** |
| | List the contract number of any government contract | | |

| 2.199. | State what the contract or lease is for and the nature of the debtor's interest | **Electronic License Grant Terms - ETAP Software License Agreement** | |
|---|---|---|---|
| | State the term remaining | | **Operation Technology, Inc.**<br>**17 Goodyear**<br>**Irvine, CA 92618** |
| | List the contract number of any government contract | | |

| 2.200. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LTR-080 and addendum** | |
|---|---|---|---|
| | State the term remaining | | **OSR Services, LP**<br>**4734 Allen Circle**<br>**Baytown, TX 77523** |
| | List the contract number of any | | |

Official Form 206G                  Schedule G: Executory Contracts and Unexpired Leases                  Page 37 of 66

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2430 of 2637
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 107 of 156

2430

Debtor 1    **Limetree Bay Refining, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)    **21-32354**

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

government contract

| 2.201. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-446** | |
|---|---|---|---|
| | State the term remaining | | **Pace Analytical Services, LLC** |
| | List the contract number of any government contract | | **555 Absaraka Street** |
| | | | **Sheridan, WY 82801** |

| 2.202. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement and Work Releases Agreement LTR-003 with all work releases and addenda** | |
|---|---|---|---|
| | State the term remaining | | **ParFab Field Services, LLC,** |
| | List the contract number of any government contract | | **15615 E. 590 Rd** |
| | | | **Inola, OK 74036** |

| 2.203. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property B0509ENGAO2000589** | |
|---|---|---|---|
| | State the term remaining | **expires 12/1/21** | **PartnerRe Ireland Insurance** |
| | List the contract number of any government contract | | **Marsh USA** |
| | | | **1166 Avenue of the Americas** |
| | | | **New York, NY 10036-2774** |

| 2.204. | State what the contract or lease is for and the nature of the debtor's interest | **PAS Terms and Conditions for Services** | |
|---|---|---|---|
| | State the term remaining | | **PAS Global, LLC** |
| | List the contract number of any government contract | | **13100 Space Center Blvd.** |
| | | | **Suite 500** |
| | | | **Houston, TX 77059** |

| 2.205. | State what the contract or lease is for and the nature of the debtor's interest | **Household Goods Relocation & Cargo Services Agreement and Amendment and Joinder Agreement** | |
|---|---|---|---|
| | State the term remaining | **expires 7/17/21** | **Paxton International** |
| | List the contract number of any government contract | | **5300 Port Royal Road** |
| | | | **Springfield, VA 22151** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2431 of 2637
2431
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 108 of 156

Debtor 1   **Limetree Bay Refining, LLC**

First Name   Middle Name   Last Name

Case number *(if known)*   **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.206. | State what the contract or lease is for and the nature of the debtor's interest | **Equipment Rental Agreement** | |
|---|---|---|---|
| | State the term remaining | | **Pentair Filtration Solutions** |
| | List the contract number of any government contract | | **4301 West Davis**<br>**Conroe, TX 77304** |

| 2.207. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-387 (Gas Station Repairs)** | |
|---|---|---|---|
| | State the term remaining | | **Petroluem Site Specialist, LLC** |
| | List the contract number of any government contract | | **P.O. Box 1412**<br>**Glen Burnie, MD 21061** |

| 2.208. | State what the contract or lease is for and the nature of the debtor's interest | **Employment Agency Agreement** | |
|---|---|---|---|
| | State the term remaining | | **Petroplan Europe Limited**<br>**Mercury House** |
| | List the contract number of any government contract | | **117 Waterloo Road**<br>**London, England SE1 8UL**<br>**UNITED KINGDOM** |

| 2.209. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LTR-424** | |
|---|---|---|---|
| | State the term remaining | | **Phoenix High Temperature Repair, LLC** |
| | List the contract number of any government contract | | **6526 Old Brick Road**<br>**Suite 120-236**<br>**Windemere, FL 34786** |

| 2.210. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-416** | |
|---|---|---|---|
| | State the term remaining | | **Pillar Corp Tsc Blower Corp** |
| | List the contract number of any government contract | | **445 Duane Avenue**<br>**Schenectady, NY 12304** |

| 2.211. | State what the contract or lease is for and the nature of the debtor's interest | **Software License & Services Agreement** | |
|---|---|---|---|
| | State the term remaining | | **Pimsoft Inc.** |
| | List the contract number of any | | **14701 St. Mary's Lane**<br>**Suite 175**<br>**Houston, TX 77079** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2432 of 2637
2432
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 109 of 156

Debtor 1  **Limetree Bay Refining, LLC**
First Name          Middle Name          Last Name

Case number (*if known*)   **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

|  |  |  |
|---|---|---|
|  | government contract |  |

| 2.212. | State what the contract or lease is for and the nature of the debtor's interest | **General Industrial Maintenance Term Services Agreement [by Joinder Agreement]** |
|  | State the term remaining |  |
|  | List the contract number of any government contract | **Pinnacle Services LLC 6002 Diamond Ruby Christiansted, VI 00820** |

| 2.213. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-152 including all task orders, change orders, and memoranda of understanding** |
|  | State the term remaining |  |
|  | List the contract number of any government contract | **Pinncacle Asset Integrity Services d/b/a PinnacleART One Pinnacle Way Pasedena, TX 77504** |

| 2.214. | State what the contract or lease is for and the nature of the debtor's interest | **Medical Service Agreement** |
|  | State the term remaining | expires 7/15/19 |
|  | List the contract number of any government contract | **Plessen Healthcare 3004 Orange Grove Christiansted, VI 00820** |

| 2.215. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-429** |
|  | State the term remaining |  |
|  | List the contract number of any government contract | **Precision Engineering Inc. 400 Saint Louis St. Mobile, AL 36602** |

| 2.216. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement - LTR-398** |
|  | State the term remaining |  |
|  | List the contract number of any government contract | **Precision Filtration Products PO Box 218 Pennsburg, PA 18073** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |



### Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.217. | State what the contract or lease is for and the nature of the debtor's interest | **Master Services and Product Agreement, SOW and MOUs** | |
|---|---|---|---|
| | State the term remaining | | **Presidio Networked Solutions Group, LLC** |
| | List the contract number of any government contract | | **1955 Lakeway Dr Suite 220 Lewisville, TX 75057** |

| 2.218. | State what the contract or lease is for and the nature of the debtor's interest | **Engagement Letter - Automated Controls Evaluators ("ACE")** | |
|---|---|---|---|
| | State the term remaining | | **PriceWaterhouseCoopers LLC** |
| | List the contract number of any government contract | | **1000 Louisiana St. Suite 5800 Houston, TX 77002** |

| 2.219. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-200 and addenda** | |
|---|---|---|---|
| | State the term remaining | | **Primatech Inc.** |
| | List the contract number of any government contract | | **50 Northwoods Boulevard Columbus, OH 43235** |

| 2.220. | State what the contract or lease is for and the nature of the debtor's interest | **Commodity/Cargo Shipping Services - NVOCC Service Arrangement** | |
|---|---|---|---|
| | State the term remaining | | **Priority Roro Services Inc.** |
| | List the contract number of any government contract | | **P.O. Box 3251 Mayaguez, PR 00880** |

| 2.221. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-421) - Console Operations** | |
|---|---|---|---|
| | State the term remaining | | **Process Technical Services** |
| | List the contract number of any government contract | | **14550 Torrey Chase Blvd. Suite 220 Houston, TX 77014** |

| 2.222. | State what the contract or lease is for and the nature of the debtor's interest | **Software Master License Agreement** | |
|---|---|---|---|
| | State the term remaining | **expires 11/25/24** | **Prometheus Group Enterprises, LLC** |
| | List the contract number of any | | **1101 Haynes St Suite 218 Raleigh, NC 27604** |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

Debtor 1  **Limitree Bay Refining, LLC**                          Case number (*if known*)   **21-32354**
        First Name        Middle Name        Last Name

<div style="background:purple;"> </div>  **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| government contract | |

| | | | |
|---|---|---|---|
| 2.223. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-209 and Task Order** | |
| | State the term remaining | | **Provenance Consulting, LLC**<br>**301 W. 6th Street**<br>**Suite 200**<br>**Borger, TX 79007** |
| | List the contract number of any government contract | | |

| | | | |
|---|---|---|---|
| 2.224. | State what the contract or lease is for and the nature of the debtor's interest | **B0509BOWCN1800772** | |
| | State the term remaining | | **QBE**<br>**Lockton Companies, LLC - Houston**<br>**3657 Briarpark Drive**<br>**Suite 700**<br>**Houston, TX 77042** |
| | List the contract number of any government contract | | |

| | | | |
|---|---|---|---|
| 2.225. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy ENGAO2000069** | |
| | State the term remaining | expires 12/1/21 | **QBE/Lloyds of London**<br>**Marsh USA**<br>**1166 Avenue of the Americas**<br>**New York, NY 10036-2774** |
| | List the contract number of any government contract | | |

| | | | |
|---|---|---|---|
| 2.226. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract LTR-110 and work releases** | |
| | State the term remaining | | **Quest Integrity USA, LLC**<br>**17146 Feathercraft #350**<br>**Webster, TX 77598** |
| | List the contract number of any government contract | | |

| | | | |
|---|---|---|---|
| 2.227. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement (LTR-082 and all addenda) - TPDES Permit Services for Waste Water Treatment Plant** | |
| | State the term remaining | | **Ramboll US Corporation**<br>**4350 N Fairfax Drive**<br>**Suite 300**<br>**Arlington, VA 22203** |
| | List the contract number of any government contract | | |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2435 of 2637
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 112 of 156

2435

Debtor 1 **Limitree Bay Refining, LLC**

First Name                Middle Name                Last Name

Case number *(if known)*   **21-32354**



## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| **2.228.** State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LTR-318 - Sulfiding step for gas oil, diesel, kero, naphtha hydrotreaters** |
| State the term remaining | |
| List the contract number of any government contract | **Reactor Resources, LLC 3000 FM 517 W. Alvin, TX 77511** |
| **2.229.** State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LTR-450** |
| State the term remaining | |
| List the contract number of any government contract | **Refined Technologies, Inc Legal Department P.O. Box 132196 The Woodlands, TX 77393** |
| **2.230.** State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-436** |
| State the term remaining | |
| List the contract number of any government contract | **Rescue Concepts, Inc 293 Mann Road Huntsville, TX 77320** |
| **2.231.** State what the contract or lease is for and the nature of the debtor's interest | **LMS (Learning Management System) License and Support Agreement expires 12/31/21** |
| State the term remaining | |
| List the contract number of any government contract | **RISC, Inc. 718 FM 1959 Houston, TX 77034** |
| **2.232.** State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement (LTR-384) - Field Service Technician for SIS Bus Bar System** |
| State the term remaining | |
| List the contract number of any government contract | **Ritz Instrument Transformer, Inc 25 Hamburg Ave. Lavonia, GA 30553** |
| **2.233.** State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-075 and task order** |
| State the term remaining | **RMB Consulting & Research, Inc 5104 Bur Oak Circle Raleigh, NC 27612** |

Debtor 1  **Limetree Bay Refining, LLC**                     Case number *(if known)*  **21-32354**

First Name          Middle Name          Last Name

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

List the contract number of any government contract

| | | |
|---|---|---|
| 2.234. | State what the contract or lease is for and the nature of the debtor's interest | **Consulting Agreement** |
| | State the term remaining | |
| | List the contract number of any government contract | **Rocco Colabella**<br>**13035 Royal George Avenue**<br>**Odessa, FL 33556** |
| 2.235. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement (LTR-330) and Addenda - startup and loop tuning activities** |
| | State the term remaining | |
| | List the contract number of any government contract | **Rockwell Automation Puerto Rico, Inc.**<br>**Calle 1 Metro Office 6**<br>**Suite 304**<br>**Guayabo, PR 00968** |
| 2.236. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy BO509ENGAO2000576** |
| | State the term remaining | **expires 12/1/21** |
| | List the contract number of any government contract | **Rokstone/Guardian General Insurance**<br>**Marsh USA**<br>**1166 Avenue of the Americas**<br>**New York, NY 10036-2774** |
| 2.237. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Rooftops Silicone Distributors, Inc. LTS-049-JR Joinder Agreement** |
| | State the term remaining | |
| | List the contract number of any government contract | **Rooftops Silicone Distributors, Inc.**<br>**1 Estate Hope**<br>**Christiansted, VI 00820** |
| 2.238. | State what the contract or lease is for and the nature of the debtor's interest | **Purchase and Sale Agreement for Products, Parts, and Services including Amendment and Joinder** |
| | State the term remaining | |
| | List the contract number of any government contract | **Rotating Machinery Services, Inc.**<br>**2760 Baglyos Circle**<br>**Bethlehem, PA 18020** |

Case 4:22-cv-00040    Document 7    Filed on 02/08/22 in TXSD    Page 2437 of 2637
2437
Case 21-32351    Document 546    Filed in TXSB on 09/07/21    Page 114 of 156

Debtor 1   **Limetree Bay Refining, LLC**

First Name          Middle Name          Last Name

Case number *(if known)*   **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.239. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement LTS-125-JR (Title V Permitting Assistance)** | |
|---|---|---|---|
| | State the term remaining | | **RTP Environmental Associates 304-A West Millbrook Road Raleigh, NC 27609** |
| | List the contract number of any government contract | | |

| 2.240. | State what the contract or lease is for and the nature of the debtor's interest | **Company Guaranty** | |
|---|---|---|---|
| | State the term remaining | | **S&B Engineers and Constructors, Ltd. 7825 Park Place Blvd. Houston, TX 77087** |
| | List the contract number of any government contract | | |

| 2.241. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-143** | |
|---|---|---|---|
| | State the term remaining | | **S&H Inventory Services, LLC 220 Commons Way Building B Toms River, NJ 08755** |
| | List the contract number of any government contract | | |

| 2.242. | State what the contract or lease is for and the nature of the debtor's interest | **Data Processing Agreement for SAP Cloud Services, Reference No. 0221114662** | |
|---|---|---|---|
| | State the term remaining | **expires 11/3/22** | **SAP America 3999 West Chester Pike Newton Square, PA 19073** |
| | List the contract number of any government contract | | |

| 2.243. | State what the contract or lease is for and the nature of the debtor's interest | **Letter Agreement** | |
|---|---|---|---|
| | State the term remaining | | **Sard Verbinnen & Co., LLC 909 Third Avenue 32nd Floor New York, NY 10022** |
| | List the contract number of any government contract | | |

| 2.244. | State what the contract or lease is for and the nature of the debtor's interest | **Petroleum Coke and Sulphur Services Agreement - LTR-270 with amendments** | **Savage St. Croix, LLC Dept. 418 Salt Lake City, UT 84130** |
|---|---|---|---|
| | State the term remaining | | |

Debtor 1   **Limitree Bay Refining, LLC**

First Name            Middle Name            Last Name

Case number *(if known)*   **21-32354**

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| | List the contract number of any government contract | |
|---|---|---|

| 2.245. | State what the contract or lease is for and the nature of the debtor's interest | **Amended Term Services Agreement (LTR-005 including all addenda and work releases)** | |
|---|---|---|---|
| | State the term remaining | | **Sentinel Integrity Solutions, Inc** |
| | List the contract number of any government contract | | **6606 Miller Road 2** **Houston, TX 77049** |

| 2.246. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement and Work Releases Agreement LTR-010 addenda** | |
|---|---|---|---|
| | State the term remaining | | **Shermco Industries** |
| | List the contract number of any government contract | | **2425 East Pioneer Dr** **Irving, TX 75061** |

| 2.247. | State what the contract or lease is for and the nature of the debtor's interest | **Employment Agency Agreement** | |
|---|---|---|---|
| | State the term remaining | | **Shirley Parsons Inc.** |
| | List the contract number of any government contract | | **51 Melcher Street** **Boston, MA 02210** |

| 2.248. | State what the contract or lease is for and the nature of the debtor's interest | **Standard Terms and Conditions of Sale For Siemens Joint Product and Services Offering (Compressor and Rotating Equipment Repairs)** | |
|---|---|---|---|
| | State the term remaining | | **Siemen Industry, Inc.** |
| | List the contract number of any government contract | | **1200 W. Sam Houston Parkway N.** **Houston, TX 77043** |

| 2.249. | State what the contract or lease is for and the nature of the debtor's interest | **Siemens Standard Service Terms and Conditions and Work Orders, Insurance** | |
|---|---|---|---|
| | State the term remaining | | **Siemens Industry, Inc** |
| | List the contract number of any government contract | | **7000 Siemens Rd** **Wendell, NC 27591** |

Debtor 1   **Limetree Bay Refining, LLC**
First Name          Middle Name          Last Name

Case number (*if known*)   **21-32354**

### Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.250. | State what the contract or lease is for and the nature of the debtor's interest | **Consulting Services Agreement - Addendum No. 7** | |
|---|---|---|---|
| | State the term remaining | expires 12/31/21 | |
| | List the contract number of any government contract | | **Sloan Schoyer**<br>**124 Mile Stretch Road**<br>**Biddeford Pool, ME 04006** |

| 2.251. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-210 and Task Order** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **Smith & Burgess, LLC**<br>**7600 W Tidwell Road**<br>**Suite 600**<br>**Houston, TX 77040** |

| 2.252. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-428** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **Southshore Controls, Inc.**<br>**9395 Pinecone Drive**<br>**Mentor, OH 44060** |

| 2.253. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement (LTR 166) including work releases and memorandum of understanding -Technical support regarding flares, fenceline, energy assessments, general services** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **Spectrum Environmental Solution, LLC**<br>**2340 W. Braker Lane**<br>**Austin, TX 78642** |

| 2.254. | State what the contract or lease is for and the nature of the debtor's interest | **Services Addendum No. 1 to Master Purchase and Sale Agreement for Equipment or Material PO-4700006905** | |
|---|---|---|---|
| | State the term remaining | | **Speed Valve & Specialty Infrared, Inc.**<br>**951 FM 646 Rd E**<br>**Suite A26**<br>**Dickinson, TX 77539-2105** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2440 of 2637
2440
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 117 of 156

Debtor 1    **Limetree Bay Refining, LLC**                                    Case number (*if known*)    **21-32354**
　　　　　First Name　　　　　Middle Name　　　　　Last Name

### Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

List the contract number of any
government contract    _____

---

| 2.255. | State what the contract or lease is for and the nature of the debtor's interest | **General Agreement & SOW** | |
|---|---|---|---|
| | State the term remaining | | **Sphera Solutions, Inc.** |
| | List the contract number of any government contract | _____ | **130 E. Randolph Street Suite 2900 Chicago, IL 60601** |

---

| 2.256. | State what the contract or lease is for and the nature of the debtor's interest | **SAAS Order Form** | |
|---|---|---|---|
| | State the term remaining | **expires 1/31/23** | **Sphera Solutions, Inc.** |
| | List the contract number of any government contract | _____ | **130 E. Randolph Street Suite 2900 Chicago, IL 60601** |

---

| 2.257. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-445** | |
|---|---|---|---|
| | State the term remaining | | **Spirit Environmental, LLC** |
| | List the contract number of any government contract | _____ | **20465 State Highway 249 Suite 300 Houston, TX 77070** |

---

| 2.258. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LTR-431 (Crane and Door Services)** | |
|---|---|---|---|
| | State the term remaining | | **Standard Crane and Hoist, LLC** |
| | List the contract number of any government contract | _____ | **2160 Wellspring Beaumont, TX 77705** |

---

| 2.259. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-415 - HSE compliance** | |
|---|---|---|---|
| | State the term remaining | | **Stantec Consulting Services Inc.** |
| | List the contract number of any government contract | _____ | **13980 Collections Center Drive Chicago, IL 60693** |

---

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                           Best Case Bankruptcy

Case 4:22-cv-00040  Document 7  Filed on 02/08/22 in TXSD  Page 2441 of 2637
2441
Case 21-32351  Document 546  Filed in TXSB on 09/07/21  Page 118 of 156

Debtor 1 **Limetree Bay Refining, LLC**
First Name       Middle Name       Last Name

Case number (*if known*)  **21-32354**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

**2.260.** State what the contract or lease is for and the nature of the debtor's interest — **Letter Agreement (vendor terms)**

State the term remaining

List the contract number of any government contract

**Stanton Chase**
**11700 Katy Freeway**
**Suite 630**
**Houston, TX 77079**

**2.261.** State what the contract or lease is for and the nature of the debtor's interest — **Services Agreement Contract No. LTR-431**

State the term remaining

List the contract number of any government contract

**Stewart & Stevenson FDDA LLC**
**d/b/a Florida Detroit Diesel-Allison**
**6850 President's Drive**
**Orlando, FL 32809**

**2.262.** State what the contract or lease is for and the nature of the debtor's interest — **Professional Services Agreement - LTR-069 and task orders**

State the term remaining

List the contract number of any government contract

**Strategic Contract Resources, LLC**
**5655 Lake Acworth Dr.**
**Suite 350**
**Acworth, GA 30101**

**2.263.** State what the contract or lease is for and the nature of the debtor's interest — **Services Agreement Contract No. LTR-132**

State the term remaining

List the contract number of any government contract

**Stress Engineering Services, Inc.**
**13800 Westfair East Drive**
**Houston, TX 77041**

**2.264.** State what the contract or lease is for and the nature of the debtor's interest — **Professional Services Agreement (Consulting Amine and Sulphur)**

State the term remaining

List the contract number of any government contract

**Sulphur Experts, Inc.**
**12 Manning Close NE**
**Suite 102**
**Calgary, Alberta T2E 7N6**
**CANADA**

**2.265.** State what the contract or lease is for and the nature of the debtor's interest — **Term Services Agreement (LTR-117), including all addenda and work releases**

State the term remaining

List the contract number of any

**Sulzer Turbo Services Houston, Inc.**
**11518 Old La Porte Road**
**La Porte, TX 77571**

Debtor 1   **Limetree Bay Refining, LLC**
First Name        Middle Name        Last Name

Case number *(if known)*   **21-32354**

<table>
<tr><td style="background:#3d0033;"> </td><td>**Additional Page if You Have More Contracts or Leases**</td></tr>
</table>

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| | | |
|---|---|---|
| | government contract | |

| 2.266. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement LTR-297** | |
| | State the term remaining | | |
| | List the contract number of any government contract | | **Superior Laboratory Services Inc.**<br>**1710 Preston Suite A**<br>**Passadena, TX 77503** |

| 2.267. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy OMP 2000425-00** | |
| | State the term remaining | **expires 12/1/21** | |
| | List the contract number of any government contract | | **Swiss Re/Westport Insurance Company**<br>**Westport Insurance Corporation**<br>**2 Waterside Crossing, Suite 2**<br>**Windsor, CT 06095** |

| 2.268. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-433 (Continuous Opacity Monitoring System (COMS))** | |
| | State the term remaining | | |
| | List the contract number of any government contract | | **Teledyne Monitor Labs**<br>**35 Inverness Drive East**<br>**Englewood, CO 80112** |

| 2.269. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-089** | |
| | State the term remaining | | |
| | List the contract number of any government contract | | **Terminix International VI**<br>**6300 Suite 1 Estate Peter's Rest**<br>**Christiansted, VI 00820** |

| 2.270. | State what the contract or lease is for and the nature of the debtor's interest | **KnowBe4 Renewal 2020** | |
| | State the term remaining | | |
| | List the contract number of any government contract | | **The Broadleaf Group**<br>**13100 Worthan Center Dr.**<br>**Suite 150**<br>**Houston, TX 77065** |

| Debtor 1 | **Limetree Bay Refining, LLC** | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|
| | First Name   Middle Name   Last Name | | | |

## ■ Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.271. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-055** | |
| | State the term remaining | | **The Equity Engineering Group, Inc.**<br>**20600 Chagrin Boulevard**<br>**Suite 1200**<br>**Shaker Heights, OH 44122** |
| | List the contract number of any government contract | | |

| 2.272. | State what the contract or lease is for and the nature of the debtor's interest | **Refinery Operating Agreement and Citibank Letter of Credit**<br>**expires 7/4/41** | |
| | State the term remaining | | **The Gov't of the U.S. Virgin Islands**<br>**Attn: Office of the Governor**<br>**Government House**<br>**Charlotte Amalie**<br>**St Thomas, VI 00802** |
| | List the contract number of any government contract | | |

| 2.273. | State what the contract or lease is for and the nature of the debtor's interest | **Terms and Conditions of Sale for Products and Service** | |
| | State the term remaining | | **Thermo Fisher**<br>**27 Forge Parkway**<br>**Franklin, MA 02038** |
| | List the contract number of any government contract | | |

| 2.274. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract No. LTR-224, guarantee and work releases** | |
| | State the term remaining | | **TISI VI, LLC**<br>**f/k/a Team Industrial Services, Inc.**<br>**13132 Dairy Ashford**<br>**Suite 600**<br>**Sugar Land, TX 77478** |
| | List the contract number of any government contract | | |

| 2.275. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-066) and work releases** | |
| | State the term remaining | | **Total Safety Virgin Islands, LLC**<br>**3151 Briar Park Drive**<br>**Suite ???**<br>**Houston, TX 77042** |
| | List the contract number of any government contract | | |

| 2.276. | State what the contract or lease is for and the nature of the debtor's interest | **Software License, Support and Services Terms Agreement** | |
| | State the term remaining | **expires 12/10/21** | **Transpara LLC**<br>**15900 N. 78th Street**<br>**Suite 100**<br>**Scottsdale, AZ 85260** |
| | List the contract number of any | | |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2444 of 2637
2444
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 121 of 156

| Debtor 1 | **Limetree Bay Refining, LLC** | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

## Additional Page if You Have More Contracts or Leases

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

| | government contract | |
|---|---|---|

| 2.277. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement Contract No. LTR-405** | |
|---|---|---|---|
| | State the term remaining | | **Tri-State Bird Rescue & Research, Inc. 170 Possum Hollow Road Newark, DE 19711** |
| | List the contract number of any government contract | | |

| 2.278. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-216 and Task Orders** | |
|---|---|---|---|
| | State the term remaining | | **Turbine Controls & Excitation Services, PO Box 241 Yarmouth, ME 04096** |
| | List the contract number of any government contract | | |

| 2.279. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-068 including all addenda and work releases)** | |
|---|---|---|---|
| | State the term remaining | | **Turnaround Consulting Services, LLC 3618 Sierra Circle Sulphur, LA 70665** |
| | List the contract number of any government contract | | |

| 2.280. | State what the contract or lease is for and the nature of the debtor's interest | **Energy Consulting and Advisory - Develop Options & Restart Plan for Idled LBRefinery** | |
|---|---|---|---|
| | State the term remaining | | **Turner, Mason and Company P.O. Box 130808 Dallas, TX 75313** |
| | List the contract number of any government contract | | |

| 2.281. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement (LTR-174) and Task Orders - Environmental Consulting** | |
|---|---|---|---|
| | State the term remaining | | **Tysam Tech LLC 230 Work and Rest St. Croix, VI 00821** |
| | List the contract number of any government contract | | |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2445 of 2637
2445
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 122 of 156

Debtor 1 **Limetree Bay Refining, LLC**                          Case number (*if known*)   **21-32354**
First Name          Middle Name          Last Name

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| | | |
|---|---|---|
| 2.282. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract No. LTR-158 and Work Releases** |
| | State the term remaining | |
| | List the contract number of any government contract | **UHP Projects, Inc.**<br>**4811 Mercantile Drive**<br>**Newport News, VA 23607** |
| 2.283. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-139) including all addenda, work releases, and memoranda of understanding - Onsite Field Support Services** |
| | State the term remaining | |
| | List the contract number of any government contract | **Universal Plant Services, (VI), LLC**<br>**806 Seaco Court**<br>**Deer Park, TX 77536** |
| 2.284. | State what the contract or lease is for and the nature of the debtor's interest | **Par-Isom Process License Ageement** |
| | State the term remaining | |
| | List the contract number of any government contract | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5018** |
| 2.285. | State what the contract or lease is for and the nature of the debtor's interest | **Platforming Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for Platforming Process Unit Christiansted, USVI - Unit No. 4 - Limetree Unit 5400** |
| | State the term remaining | |
| | List the contract number of any government contract | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5018** |
| 2.286. | State what the contract or lease is for and the nature of the debtor's interest | **Merox Process Licensing Agreement between Limetree Bay Refining, LLC and UOP LLC for C3/C4 Merox Process Unit Christiansted, USVI - Unit No 3 (Unit 3201)** |
| | State the term remaining | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5019** |

Debtor 1   **Limitree Bay Refining, LLC**                         Case number (*if known*)   **21-32354**
_____
First Name        Middle Name        Last Name

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

List the contract number of any
government contract          _____

---

| 2.287. | State what the contract or lease is for and the nature of the debtor's interest | **Merox Process Licensing Agreement between Limitree Bay Refining, LLC and UOP LLC for LPG Merox Process Unit Christiansted, USVI - Unit No 5 (Unit 4820)** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC** |
| | List the contract number of any government contract | | **25 E. Algonquin Road** |
| | | | **Des Plaines, IL 60017-5020** |

---

| 2.288. | State what the contract or lease is for and the nature of the debtor's interest | **Merox Process Licensing Agreement between Limitree Bay Refining, LLC and UOP LLC for C5 Merox Process Unit Christiansted, USVI - (Unit 7590)** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC** |
| | List the contract number of any government contract | | **25 E. Algonquin Road** |
| | | | **Des Plaines, IL 60017-5021** |

---

| 2.289. | State what the contract or lease is for and the nature of the debtor's interest | **VGO Unionfining Process License Agreement between Limitree Bay Refining, LLC and UOP LLC for VGO Unionfining Process Unit Christiansted, USVI - Unit No. 6 (Unit 460 aka DD6)** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC** |
| | List the contract number of any government contract | | **25 E. Algonquin Road** |
| | | | **Des Plaines, IL 60017-5022** |

---

Debtor 1 **Limetree Bay Refining, LLC**

First Name ___ Middle Name ___ Last Name

Case number *(if known)* **21-32354**

### Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| **2.290.** State what the contract or lease is for and the nature of the debtor's interest | **Distillate Unionfining Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for Distillate Unionfining Process Unit Christiansted, USVI - Unit No. 7 (Unit 4300 aka DD7)** | |
| State the term remaining | | |
| List the contract number of any government contract | | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5023** |
| **2.291.** State what the contract or lease is for and the nature of the debtor's interest | **Distillate Unionfining Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for Distillate Unionfining Process Unit Christiansted, USVI - Unit No. 9 (Unit 5300 aka DD7)** | |
| State the term remaining | | |
| List the contract number of any government contract | | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5024** |
| **2.292.** State what the contract or lease is for and the nature of the debtor's interest | **Merox Process Licensing Agreement between Limetree Bay Refining, LLC and UOP LLC for I-C5 Merox Process Unit Christiansted, USVI - Process Units No 1, No 2 and No 4 (Unit 3202 aka i-C5 Sweetner)** | |
| State the term remaining | | |
| List the contract number of any government contract | | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5025** |
| **2.293.** State what the contract or lease is for and the nature of the debtor's interest | **Merox Process Licensing Agreement between Limetree Bay Refining, LLC and UOP LLC for FCC LPG Merox Process Unit Christiansted, USVI - Process Units No 6 (Unit 7500)** | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5026** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2448 of 2637
2448
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 125 of 156

Debtor 1   **Limetree Bay Refining, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)   **21-32354**

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

State the term remaining

List the contract number of any
    government contract

_____

| 2.294. | State what the contract or lease is for and the nature of the debtor's interest | **Merox Process Licensing Agreement between Limetree Bay Refining, LLC and UOP LLC for Light FCC Gasoline Merox Process Unit Christiansted, USVI - Process Units No 7 (Unit 7550)** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC** |
| | List the contract number of any government contract | | **25 E. Algonquin Road Des Plaines, IL 60017-5027** |

| 2.295. | State what the contract or lease is for and the nature of the debtor's interest | **Merox Process Licensing Agreement between Limetree Bay Refining, LLC and UOP LLC for Heavy FCC Gasoline Merox Process Unit Christiansted, USVI - Process Units No 9 (Unit 7570)** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC** |
| | List the contract number of any government contract | | **25 E. Algonquin Road Des Plaines, IL 60017-5028** |

| 2.296. | State what the contract or lease is for and the nature of the debtor's interest | **Butamer Process Licensing Agreement between Limetree Bay Refining, LLC and UOP LLC for Butamer Process Unit Christiansted, USVI** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC** |
| | List the contract number of any government contract | | **25 E. Algonquin Road Des Plaines, IL 60017-5029** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2449 of 2637
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 126 of 156
2449

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number (*if known*) | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.297. | State what the contract or lease is for and the nature of the debtor's interest | **Fluid Catalytic Cracking Process Licensing Agreement between Limetree Bay Refining, LLC and UOP LLC for Fluid Catalytic Cracking Process Unit Christiansted, USVI - Unit 7000** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5030** |

| 2.298. | State what the contract or lease is for and the nature of the debtor's interest | **Sulfolane Process Licensing Agreement between Limetree Bay Refining, LLC and UOP LLC for Sulfolane Process Unit Christiansted, USVI - Unit 4500** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5031** |

| 2.299. | State what the contract or lease is for and the nature of the debtor's interest | **VGO Unionfining Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for VGO Unionfining Process Unit Christiansted, USVI - Unit No. 2 (Unit 800 aka DD2)** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5032** |

| 2.300. | State what the contract or lease is for and the nature of the debtor's interest | **Platforming Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for Platforming Process Unit Christiansted, USVI - Unit No. 2 (Unit 600)** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5033** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2450 of 2637
2450
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 127 of 156

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

 **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

| 2.301. | State what the contract or lease is for and the nature of the debtor's interest | **Platforming Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for Platforming Process Unit Christiansted, USVI - Unit No. 3 (Unit 4400)** |
|---|---|---|
| | State the term remaining | **UOP LLC** |
| | List the contract number of any government contract | **25 E. Algonquin Road** |
| | | **Des Plaines, IL 60017-5034** |

| 2.302. | State what the contract or lease is for and the nature of the debtor's interest | **VGO Unionfining Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for VGO Unionfining Process Unit Christiansted, USVI - Unit No. 4 (Unit 2200 aka DD4)** |
|---|---|---|
| | State the term remaining | **UOP LLC** |
| | List the contract number of any government contract | **25 E. Algonquin Road** |
| | | **Des Plaines, IL 60017-5035** |

| 2.303. | State what the contract or lease is for and the nature of the debtor's interest | **Distillate Unionfining Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for Distillate Unionfining Process Unit Christiansted, USVI - Unit No. 5 (Unit 2400 aka DD5)** |
|---|---|---|
| | State the term remaining | **UOP LLC** |
| | List the contract number of any government contract | **25 E. Algonquin Road** |
| | | **Des Plaines, IL 60017-5036** |

Debtor 1  **Limetree Bay Refining, LLC**                                    Case number (*if known*)  **21-32354**
_____
First Name        Middle Name        Last Name

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.304. | State what the contract or lease is for and the nature of the debtor's interest | **Distillate Unionfining Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for Distillate Unionfining Process Unit Christiansted, USVI - Unit No. 3 (Unit 1500 aka DD3)** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5037** |

| 2.305. | State what the contract or lease is for and the nature of the debtor's interest | **Naphtha Unionfining Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for Naphtha Unionfining Process Unit Christiansted, USVI - Unit No. 2 (Unit 600)** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5038** |

| 2.306. | State what the contract or lease is for and the nature of the debtor's interest | **Naphtha Unionfining Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for Naphtha Unionfining Process Unit Christiansted, USVI - Unit No. 3 (Unit 4400)** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5039** |

| 2.307. | State what the contract or lease is for and the nature of the debtor's interest | **Naphtha Unionfining Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for Naphtha Unionfining Process Unit Christiansted, USVI - Unit No. 4 (Unit 5400)** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC**<br>**25 E. Algonquin Road**<br>**Des Plaines, IL 60017-5040** |

Debtor 1   **Limetree Bay Refining, LLC**

First Name            Middle Name            Last Name

Case number (*if known*)   **21-32354**

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

List the contract number of any government contract

| 2.308. | State what the contract or lease is for and the nature of the debtor's interest | **Naphtha Unionfining Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for Naphtha Unionfining Process Unit Christiansted, USVI - Unit No. 5 (Unit 2400)** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC** |
| | List the contract number of any government contract | | **25 E. Algonquin Road Des Plaines, IL 60017-5041** |

| 2.309. | State what the contract or lease is for and the nature of the debtor's interest | **Naphtha Unionfining Process License Agreement between Limetree Bay Refining, LLC and UOP LLC for Naphtha Unionfining Process Unit Christiansted, USVI - Unit No. 1 (Unit 1500)** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC** |
| | List the contract number of any government contract | | **25 E. Algonquin Road Des Plaines, IL 60017-5042** |

| 2.310. | State what the contract or lease is for and the nature of the debtor's interest | **License Transfer and Termination Agreement** | |
|---|---|---|---|
| | State the term remaining | | **UOP LLC / Hovensa LLC** |
| | List the contract number of any government contract | | **25 E. Algonquin Road Des Plaines, IL 60017-5017** |

| 2.311. | State what the contract or lease is for and the nature of the debtor's interest | **National Account Agreement** | |
|---|---|---|---|
| | State the term remaining | | **URVI, Inc.** |
| | List the contract number of any government contract | | **100 First Stamford Place Suite 700 Stamford, CT 06902** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2453 of 2637
2453
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 130 of 156

| Debtor 1 | **Limetree Bay Refining, LLC** | | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.312. | State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | **Services Agreement Contract No. LTR-444 (Expert Alarm Management Services) expires 5/5/22** | **User Centered Design Services, Inc.<br>3655 West Anthem Way<br>Suite A-109-400<br>Anthem, AZ 85086** |
|---|---|---|---|
| 2.313. | State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | **Term Services Agreement, Contract Number: LTR-066 and work releases** | **V. I. Recycling Company<br>6002 Estate Diamond Ruby<br>Suite 102<br>Christiansted, VI 00820** |
| 2.314. | State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | **Master Agreement for Sale of Scrap Metal** | **V.I. Recycling Company<br>6002 Estate Diamond Ruby<br>Suite 102<br>Christiansted, VI 00820** |
| 2.315. | State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | **Term Services Agreement (LTR-083 including all addenda and work releases) - NDT Inspection Services** | **Versa Integrity Group, Inc.<br>4301 Hwy 27 South<br>Sulphur, LA 70665** |
| 2.316. | State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | **Term Services Agreement and Work Releases Agreement LTR-001 with all work releases** | **Vesta Housing Solutions, LLC<br>335 East Maple Road<br>Suite 200<br>Birmingham, MI 48009** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2454 of 2637
2454
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 131 of 156

Debtor 1  **Limetree Bay Refining, LLC**                              Case number (*if known*)  **21-32354**

      First Name             Middle Name           Last Name

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| **2.317.** State what the contract or lease is for and the nature of the debtor's interest — **Term Services Agreement LTR-323 - (Motor Circuit Evaluation Service on all Electrical Motors)**<br><br>State the term remaining<br><br>List the contract number of any government contract | **VibrAnalysis, Inc.**<br>**323 Marginal Carr 199**<br>**San Juan, PR 00926** |
| **2.318.** State what the contract or lease is for and the nature of the debtor's interest — **Purchase Order Terms and Conditions Agreement 139-LBR-PO Addendum No. 1**<br><br>State the term remaining<br><br>List the contract number of any government contract | **Victory Energy Operations LLC**<br>**E. 126th Street N.**<br>**Collinsville, OK 74021** |
| **2.319.** State what the contract or lease is for and the nature of the debtor's interest — **Term Services Agreement Contract Number: LTR-064 with addenda and work releases**<br><br>State the term remaining<br><br>List the contract number of any government contract | **Virgin Islands Industrial Services, LLC**<br>**#6002 Estate Dimond Ruby**<br>**Ste. 3-103**<br>**Christiansted, VI 00829** |
| **2.320.** State what the contract or lease is for and the nature of the debtor's interest — **Services Agreement**<br><br>State the term remaining<br><br>List the contract number of any government contract | **Virgin Islands Paving, Inc.**<br>**13 GA Estate Bethlehem**<br>**Christiansted, VI 00820** |
| **2.321.** State what the contract or lease is for and the nature of the debtor's interest — **Services Agreement Contract No. LTR-094**<br><br>State the term remaining — **expires 8/13/2021**<br><br>List the contract number of any government contract | **Virgin Islands Telephone Corporation**<br>**d/b/a Viya**<br>**4006 Estate Diamond**<br>**Christiansted, VI** |
| **2.322.** State what the contract or lease is for and the nature of the debtor's interest — **Master Service Agreement, SOW and termination**<br><br>State the term remaining — **expires 8/13/21** | **Virgin Islands Telephone Corporation**<br>**d/b/a Viya**<br>**4006 Estate Diamond**<br>**St. Croix, VI 00820** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2455 of 2637
2455
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 132 of 156

Debtor 1   **Limetree Bay Refining, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)   **21-32354**

## Additional Page if You Have More Contracts or Leases

**2. List all contracts and unexpired leases**

**State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease**

List the contract number of any government contract

| | | | |
|---|---|---|---|
| 2.323. | State what the contract or lease is for and the nature of the debtor's interest | **Cable TV Bulk Service Subscription Agreement and SOW** | |
| | State the term remaining | **expires 8/13/21** | **Virgin Islands Telephone Corporation d/b/a Viya 4006 Estate Diamond St. Croix, VI 00820** |
| | List the contract number of any government contract | | |
| 2.324. | State what the contract or lease is for and the nature of the debtor's interest | **Master Services Agreement** | |
| | State the term remaining | | **VisiumKMS Inc. 2700 Post Oak Blvd. 21st Floor Houston, TX 77056** |
| | List the contract number of any government contract | | |
| 2.325. | State what the contract or lease is for and the nature of the debtor's interest | **Software Subscription Service Agreement** | |
| | State the term remaining | **expires 2/11/23** | **VisiumKMS Inc. 2700 Post Oak Blvd. 21st Floor Houston, TX 77056** |
| | List the contract number of any government contract | | |
| 2.326. | State what the contract or lease is for and the nature of the debtor's interest | **Services Agreement (LTR-092 and all addenda) - Printer/Scanner Maintenance** | |
| | State the term remaining | | **Visual Edge Technology d/b/a Axsa Imaging Solutions 2100 N Reagan Blvd. Longwood, FL 32750** |
| | List the contract number of any government contract | | |
| 2.327. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract No. LTR-100** | |
| | State the term remaining | | **Vital Industrial Solutions 960 Atkin Avenue Samia, Ontario N7W 1A7 CANADA** |
| | List the contract number of any government contract | | |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

Debtor 1 **Limetree Bay Refining, LLC**　　　　　　　　　　　Case number *(if known)*  **21-32354**
_____
First Name　　　　Middle Name　　　　Last Name

### Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.328. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-025); Addendum #1; Addendum #10** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **Vivot Equipment Corporation**<br>**9010 Estate Cottage**<br>**Christiansted, VI 00820** |

| 2.329. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement (LTR-356) including work releases and memoranda of understanding - Wastewater Treatment Plant Operations & Centifuge** | |
|---|---|---|---|
| | State the term remaining | **expires 1/1/2025** | |
| | List the contract number of any government contract | | **VWNA Caribbean, LLC**<br>**Attn: Todd Newman**<br>**1131 King Street**<br>**Christiansted, VI 00820** |

| 2.330. | State what the contract or lease is for and the nature of the debtor's interest | **Managed Inventory Agreement Limetree Agreement LTR-084** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **WDI USVI, LLC**<br>**225 W. Station Square Dr.**<br>**Suite 700**<br>**Pittsburgh, PA 15219** |

| 2.331. | State what the contract or lease is for and the nature of the debtor's interest | **Master Lease Agreement (No. LBR-2019) Limetree Agreement LTR-285 and corresponding lease schedules - N2 trailer lease (6 ea; 3 years)** | |
|---|---|---|---|
| | State the term remaining | **expires 8/15/2022** | |
| | List the contract number of any government contract | | **Weldship Industries, Inc.**<br>**225 W 2nd Street**<br>**Bethlehem, PA 18015** |

| 2.332. | State what the contract or lease is for and the nature of the debtor's interest | **Insurance Policy** | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | | **Westchester Surplus**<br>**Lockton Companies, LLC - Houston**<br>**3657 Briarpark Drive**<br>**Suite 700**<br>**Houston, TX 77042** |

Debtor 1  **Limetree Bay Refining, LLC**

First Name          Middle Name          Last Name

Case number (*if known*)   **21-32354**

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.333. | State what the contract or lease is for and the nature of the debtor's interest | **Agreement For Services - Contracting Staffing and Search** | |
|---|---|---|---|
| | State the term remaining | | **Whitaker IT, LLC d/b/a Whitaker Techincal 10375 Richmond Ave Suite 1700 Houston, TX 77042** |
| | List the contract number of any government contract | | |

| 2.334. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LB-006 (RRP Emergency and Fire Response)** | |
|---|---|---|---|
| | State the term remaining | | **WillFire HC, LLC d/b/a William Fire & Hazard Control 9605 Richard Wycoff Drive Port Arthur, TX 77640** |
| | List the contract number of any government contract | | |

| 2.335. | State what the contract or lease is for and the nature of the debtor's interest | **Term Services Agreement Contract Number: LTR-386 (A/C Maintenance & Repair)** | |
|---|---|---|---|
| | State the term remaining | | **William R. Nash V.I. Inc. c/o Timothy Gorman P.O. Box 4305 Kingshill, St. Croix, VI 00851** |
| | List the contract number of any government contract | | |

| 2.336. | State what the contract or lease is for and the nature of the debtor's interest | **Combined Property Insurance Policy BO509ENGAO2000576** | |
|---|---|---|---|
| | State the term remaining | expires 12/1/21 | **WRB/Guardian General Insurance Marsh USA 1166 Avenue of the Americas New York, NY 10036-2774** |
| | List the contract number of any government contract | | |

| 2.337. | State what the contract or lease is for and the nature of the debtor's interest | **Professional Services Agreement - LTR-410-JR** | |
|---|---|---|---|
| | State the term remaining | | **Wunderlich-Malec Engineering, Inc. 6101 Blue Circle Drive Eden Prairie, MN 55343** |
| | List the contract number of any government contract | | |

| 2.338. | State what the contract or lease is for and the nature of the debtor's interest | **Policy # XLUMB-2299784** | **XL Bermuda Lockton Companies, LLC - Houston 3657 Briarpark Drive Suite 700 Houston, TX 77042** |
|---|---|---|---|

Official Form 206G          Schedule G: Executory Contracts and Unexpired Leases          Page 65 of 66

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2458 of 2637
2458
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 135 of 156

Debtor 1   **Limetree Bay Refining, LLC**

First Name            Middle Name            Last Name

Case number (*if known*)   **21-32354**

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

State the term remaining

List the contract number of any
government contract

---

| 2.339. | State what the contract or lease is for and the nature of the debtor's interest | **Master Service Agreement and SOW** | |
|---|---|---|---|
| | State the term remaining | **expires 8/23/21** | **Yana Systems Inc.** **6860 North Dallas Parkway** **Suite 200** **Plano, TX** |
| | List the contract number of any government contract | | |

---

| 2.340. | State what the contract or lease is for and the nature of the debtor's interest | **Coaching Agreement** | |
|---|---|---|---|
| | State the term remaining | **expires 2/28/22** | **York Career Development, Inc.** **651 Bering Drive** **Suite 1304** **Houston, TX 77057** |
| | List the contract number of any government contract | | |

---

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2459 of 2637
2459
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 136 of 156

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **Limetree Bay Refining, LLC** |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF TEXAS |
| Case number (if known) | **21-32354** |

☐ Check if this is an amended filing

## Official Form 206H
## Schedule H: Your Codebtors

12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Do you have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

■ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| | Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|---|
| | Name | Mailing Address | Name | Check all schedules that apply: |
| 2.1 | Limetree Bay "Affiliates" | | InServ Field Services USVI, LLC | ■ D  **2.12** <br> ☐ E/F _____ <br> ☐ G _____ |
| 2.2 | Limetree Bay Energy, LLC | | Excel Construction & Maintenance VI | ■ D  **2.8** <br> ☐ E/F _____ <br> ☐ G _____ |
| 2.3 | Limetree Bay Refining Marketing, LLC | #1 Estate Hope Christiansted, VI 00820 | Wilmington Trust, N.A. | ■ D  **2.20** <br> ☐ E/F _____ <br> ☐ G _____ |
| 2.4 | Limetree Bay Refining Marketing, LLC | #1 Estate Hope Christiansted, VI 00820 | J. Aron & Company LLC | ■ D  **2.13** <br> ☐ E/F _____ <br> ☐ G _____ |
| 2.5 | Limetree Bay Refining Marketing, LLC | #1 Estate Hope Christiansted, VI 00820 | J. Aron & Company LLC | ■ D  **2.14** <br> ☐ E/F _____ <br> ☐ G _____ |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2460 of 2637
2460
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 137 of 156

| Debtor | **Limetree Bay Refining, LLC** | Case number *(if known)* | **21-32354** |

■ **Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| | Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|---|
| 2.6 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Goldman Sachs Bank USA** | ■ D __2.9__<br>☐ E/F _____<br>☐ G _____ |
| 2.7 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Wilmington Trust, N.A.** | ■ D __2.20__<br>☐ E/F _____<br>☐ G _____ |
| 2.8 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **J. Aron & Company LLC** | ■ D __2.13__<br>☐ E/F _____<br>☐ G _____ |
| 2.9 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **J. Aron & Company LLC** | ■ D __2.14__<br>☐ E/F _____<br>☐ G _____ |
| 2.10 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Goldman Sachs Bank USA** | ■ D __2.9__<br>☐ E/F _____<br>☐ G _____ |
| 2.11 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Great Southern Technologies LLC** | ■ D __2.10__<br>☐ E/F _____<br>☐ G _____ |
| 2.12 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Wholesale Electric Supply Co.** | ☐ D _____<br>■ E/F __3.298__<br>☐ G _____ |
| 2.13 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **V.I. Industrial Services, LLC** | ■ D __2.18__<br>☐ E/F _____<br>☐ G _____ |

| Debtor | **Limetree Bay Refining, LLC** | Case number *(if known)* | **21-32354** |

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| 2.14 **Limetree Bay Terminals, LLC** | #1 Estate Hope Christiansted, VI 00820-5652 | **Excel Construction & Maintenance VI** | ☐ D  **2.8**<br>☐ E/F _____<br>☐ G _____ |
| 2.15 **Limetree Bay Terminals, LLC** | #1 Estate Hope Christiansted, VI 00820-5652 | **Cust-O-Fab, LLC** | ☐ D  **2.6**<br>☐ E/F _____<br>☐ G _____ |
| 2.16 **Limetree Bay Terminals, LLC** | #1 Estate Hope Christiansted, VI 00820-5652 | **Cust-O-Fab Specialty Services, LLC** | ☐ D  **2.5**<br>☐ E/F _____<br>☐ G _____ |
| 2.17 **Limetree Bay Terminals, LLC** | #1 Estate Hope Christiansted, VI 00820-5652 | **Vivot Equipment Corporation** | ☐ D  **2.19**<br>☐ E/F _____<br>☐ G _____ |
| 2.18 **Limetree Bay Cayman II, LLC** | | **Arcadia/Ark/Helix** | ☐ D _____<br>☐ E/F _____<br>☐ G  **2.20** |
| 2.19 **Limetree Bay Cayman II, LLC** | | **Chaucer/Apollo** | ☐ D _____<br>☐ E/F _____<br>☐ G  **2.64** |
| 2.20 **Limetree Bay Cayman, LLC** | | **Arcadia/Ark/Helix** | ☐ D _____<br>☐ E/F _____<br>☐ G  **2.20** |
| 2.21 **Limetree Bay Cayman, LLC** | | **Chaucer/Apollo** | ☐ D _____<br>☐ E/F _____<br>☐ G  **2.64** |

| Debtor | **Limetree Bay Refining, LLC** | | Case number *(if known)* | **21-32354** |

---

■ **Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| 2.22 | **Limetree Bay Financing, LLC** | **1 Estate Hope Christiansted, VI 00820** | **Arcadia/Ark/Helix** | ☐ D _____ ☐ E/F _____ ■ G __2.20__ |
| 2.23 | **Limetree Bay Financing, LLC** | | **Chaucer/Apollo** | ☐ D _____ ☐ E/F _____ ■ G __2.64__ |
| 2.24 | **Limetree Bay Refining Holdings II, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Arcadia/Ark/Helix** | ☐ D _____ ☐ E/F _____ ■ G __2.20__ |
| 2.25 | **Limetree Bay Refining Holdings II, LLC** | | **Chaucer/Apollo** | ☐ D _____ ☐ E/F _____ ■ G __2.64__ |
| 2.26 | **Limetree Bay Refining Holdings, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Arcadia/Ark/Helix** | ☐ D _____ ☐ E/F _____ ■ G __2.20__ |
| 2.27 | **Limetree Bay Refining Holdings, LLC** | | **Chaucer/Apollo** | ☐ D _____ ☐ E/F _____ ■ G __2.64__ |
| 2.28 | **Limetree Bay Refining Marketing, LLC** | **11100 Brittmoore Park Drive Houston, TX 77041** | **BP Products North America Inc.** | ☐ D _____ ☐ E/F _____ ■ G __2.51__ |
| 2.29 | **Limetree Bay Refining Marketing, LLC** | **11100 Brittmoore Park Drive Houston, TX 77041** | **Limetree Bay Terminals, LLC** | ☐ D _____ ☐ E/F _____ ■ G __2.173__ |

---

Debtor   **Limetree Bay Refining, LLC**                          Case number *(if known)*   **21-32354**

▮   **Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

*Column 1:* **Codebtor**                                                                 *Column 2:* **Creditor**

| | | | | | |
|---|---|---|---|---|---|
| 2.30 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **J. Aron & Company LLC** | ☐ D _____ <br> ☐ E/F _____ <br> ▪ G   **2.158** |
| 2.31 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **AIG Insurance Company - Puerto Rico** | ☐ D _____ <br> ☐ E/F _____ <br> ▪ G   **2.8** |
| 2.32 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Arcadia/Ark/Helix** | ☐ D _____ <br> ☐ E/F _____ <br> ▪ G   **2.20** |
| 2.33 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **WRB/Guardian General Insurance** | ☐ D _____ <br> ☐ E/F _____ <br> ▪ G   **2.336** |
| 2.34 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Swiss Re/Westport Insurance Company** | ☐ D _____ <br> ☐ E/F _____ <br> ▪ G   **2.267** |
| 2.35 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Rokstone/Guardian General Insurance** | ☐ D _____ <br> ☐ E/F _____ <br> ▪ G   **2.236** |
| 2.36 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **QBE/Lloyds of London** | ☐ D _____ <br> ☐ E/F _____ <br> ▪ G   **2.225** |
| 2.37 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Partner Re/PartnerRe Ireland Insurance** | ☐ D _____ <br> ☐ E/F _____ <br> ▪ G   **2.203** |

| Debtor | **Limetree Bay Refining, LLC** | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|

■ **Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| 2.38 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **NOA/Lloyds of London** | ☐ D _____ ☐ E/F _____ ■ G __2.193__ |
| 2.39 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **LSM/Liberty Specialty Markets Agency td** | ☐ D _____ ☐ E/F _____ ■ G __2.171__ |
| 2.40 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Lancashire Insurance Company UK, Ltd** | ☐ D _____ ☐ E/F _____ ■ G __2.169__ |
| 2.41 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **IGI/Insurance General Insurance Co Ltd.** | ☐ D _____ ☐ E/F _____ ■ G __2.149__ |
| 2.42 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Houston Specialty Insurance Company** | ☐ D _____ ☐ E/F _____ ■ G __2.141__ |
| 2.43 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Helvetia Swiss Insurance Co** | ☐ D _____ ☐ E/F _____ ■ G __2.133__ |
| 2.44 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Hannover Re/HDI Global Specialty SE** | ☐ D _____ ☐ E/F _____ ■ G __2.130__ |
| 2.45 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Great Lakes** | ☐ D _____ ☐ E/F _____ ■ G __2.127__ |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2465 of 2637
2465
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 142 of 156

Debtor   **Limetree Bay Refining, LLC**                                                Case number *(if known)*   **21-32354**

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

Column 1: **Codebtor**                                                                       Column 2: **Creditor**

| | | | | |
|---|---|---|---|---|
| 2.46 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Fidelis Underwriting Ltd.** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.114** |
| 2.47 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Elseco Limited** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.102** |
| 2.48 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Convex Insurance UK Limited** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.76** |
| 2.49 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Guardian General Insurance Limited** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.128** |
| 2.50 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Berkshire Hathaway** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.43** |
| 2.51 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **Atrium Underwriters Ltd** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.24** |
| 2.52 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **J. Aron & Company LLC** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.160** |
| 2.53 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope Christiansted, VI 00820** | **BP Products North America Inc.** | ☐ D _____ <br> ☐ E/F _____ <br> ■ G   **2.52** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2466 of 2637
2466
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 143 of 156

Debtor   **Limetree Bay Refining, LLC**                        Case number *(if known)*   **21-32354**

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|
| 2.54 | **Limetree Bay Refining Marketing, LLC** | **#1 Estate Hope** Christiansted, VI 00820 | **Chaucer/Apollo** | ☐ D _____ ☐ E/F _____ ■ G   **2.64** |
| 2.55 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **J. Aron & Company LLC** | ☐ D _____ ☐ E/F _____ ■ G   **2.158** |
| 2.56 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope** Christiansted, VI 00820 | **J. Aron & Company LLC** | ☐ D _____ ☐ E/F _____ ■ G   **2.159** |
| 2.57 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope** Christiansted, VI 00820 | **Arcadia/Ark/Helix** | ☐ D _____ ☐ E/F _____ ■ G   **2.20** |
| 2.58 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope** Christiansted, VI 00820 | **J. Aron & Company LLC** | ☐ D _____ ☐ E/F _____ ■ G   **2.160** |
| 2.59 | **Limetree Bay Refining Operating, LLC** | **#1 Estate Hope** Christiansted, VI 00820 | **Chaucer/Apollo** | ☐ D _____ ☐ E/F _____ ■ G   **2.64** |
| 2.60 | **Limetree Bay Services, LLC** | **11100 Brittmoore Park Drive** Houston, TX 77041 | **Arcadia/Ark/Helix** | ☐ D _____ ☐ E/F _____ ■ G   **2.20** |
| 2.61 | **Limetree Bay Services, LLC** | **11100 Brittmoore Park Drive** Houston, TX 77041 | **Chaucer/Apollo** | ☐ D _____ ☐ E/F _____ ■ G   **2.64** |

| Debtor | **Limetree Bay Refining, LLC** | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| | Column 1: **Codebtor** | | Column 2: **Creditor** | | |
|---|---|---|---|---|---|
| 2.62 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Bayteck International, Inc.** | ☐ D ____ ☐ E/F ____ ■ G | **2.39** |
| 2.63 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **AIG Insurance Company - Puerto Rico** | ☐ D ____ ☐ E/F ____ ■ G | **2.8** |
| 2.64 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Arcadia/Ark/Helix** | ☐ D ____ ☐ E/F ____ ■ G | **2.20** |
| 2.65 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **WRB/Guardian General Insurance** | ☐ D ____ ☐ E/F ____ ■ G | **2.336** |
| 2.66 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Swiss Re/Westport Insurance Company** | ☐ D ____ ☐ E/F ____ ■ G | **2.267** |
| 2.67 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Rokstone/Guardian General Insurance** | ☐ D ____ ☐ E/F ____ ■ G | **2.236** |
| 2.68 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **QBE/Lloyds of London** | ☐ D ____ ☐ E/F ____ ■ G | **2.225** |
| 2.69 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Partner Re/PartnerRe Ireland Insurance** | ☐ D ____ ☐ E/F ____ ■ G | **2.203** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2468 of 2637
2468
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 145 of 156

| Debtor | **Limetree Bay Refining, LLC** | Case number *(if known)* | **21-32354** |

▮ **Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|
| 2.70 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **NOA/Lloyds of London** | ☐ D _____ ☐ E/F _____ ■ G   **2.193** |
| 2.71 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **LSM/Liberty Specialty Markets Agency td** | ☐ D _____ ☐ E/F _____ ■ G   **2.171** |
| 2.72 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **Lancashire Insurance Company UK, Ltd** | ☐ D _____ ☐ E/F _____ ■ G   **2.169** |
| 2.73 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **IGI/Insurance General Insurance Co Ltd.** | ☐ D _____ ☐ E/F _____ ■ G   **2.149** |
| 2.74 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **Houston Specialty Insurance Company** | ☐ D _____ ☐ E/F _____ ■ G   **2.141** |
| 2.75 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **Helvetia Swiss Insurance Co** | ☐ D _____ ☐ E/F _____ ■ G   **2.133** |
| 2.76 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **Hannover Re/HDI Global Specialty SE** | ☐ D _____ ☐ E/F _____ ■ G   **2.130** |
| 2.77 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **Great Lakes** | ☐ D _____ ☐ E/F _____ ■ G   **2.127** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2469 of 2637
2469
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 146 of 156

Debtor **Limetree Bay Refining, LLC**                                   Case number *(if known)*   **21-32354**

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

*Column 1:* **Codebtor**                                                 *Column 2:* **Creditor**

| | | | | |
|---|---|---|---|---|
| 2.78 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Fidelis Underwriting Ltd.** | ☐ D _____<br>☐ E/F _____<br>■ G  **2.114** |
| 2.79 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Elseco Limited** | ☐ D _____<br>☐ E/F _____<br>■ G  **2.102** |
| 2.80 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Convex Insurance UK Limited** | ☐ D _____<br>☐ E/F _____<br>■ G  **2.76** |
| 2.81 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Guardian General Insurance Limited** | ☐ D _____<br>☐ E/F _____<br>■ G  **2.128** |
| 2.82 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Berkshire Hathaway** | ☐ D _____<br>☐ E/F _____<br>■ G  **2.43** |
| 2.83 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Atrium Underwriters Ltd** | ☐ D _____<br>☐ E/F _____<br>■ G  **2.24** |
| 2.84 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Whitaker IT, LLC** | ☐ D _____<br>☐ E/F _____<br>■ G  **2.333** |
| 2.85 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Austin Fire Systems, LLC** | ☐ D _____<br>☐ E/F _____<br>■ G  **2.26** |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2470 of 2637
2470
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 147 of 156

Debtor   **Limetree Bay Refining, LLC**                              Case number *(if known)*   **21-32354**

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|

2.86   **Limetree Bay Terminals, LLC**   #1 Estate Hope Christiansted, VI 00820-5652   **Bayteck International, Inc.**   ☐ D _____ ☐ E/F _____ ■ G   **2.40**

2.87   **Limetree Bay Terminals, LLC**   #1 Estate Hope Christiansted, VI 00820-5652   **Christiansted Equipment, Ltd.**   ☐ D _____ ☐ E/F _____ ■ G   **2.66**

2.88   **Limetree Bay Terminals, LLC**   #1 Estate Hope Christiansted, VI 00820-5652   **F&M Mafco, Inc.**   ☐ D _____ ☐ E/F _____ ■ G   **2.112**

2.89   **Limetree Bay Terminals, LLC**   #1 Estate Hope Christiansted, VI 00820-5652   **Oliver Exterminating of the V.I., Inc.**   ☐ D _____ ☐ E/F _____ ■ G   **2.197**

2.90   **Limetree Bay Terminals, LLC**   #1 Estate Hope Christiansted, VI 00820-5652   **VWNA Caribbean, LLC**   ☐ D _____ ☐ E/F _____ ■ G   **2.329**

2.91   **Limetree Bay Terminals, LLC**   #1 Estate Hope Christiansted, VI 00820-5652   **Barr Engineering Co.**   ☐ D _____ ☐ E/F _____ ■ G   **2.38**

2.92   **Limetree Bay Terminals, LLC**   #1 Estate Hope Christiansted, VI 00820-5652   **National Parts**   ☐ D _____ ☐ E/F _____ ■ G   **2.191**

2.93   **Limetree Bay Terminals, LLC**   #1 Estate Hope Christiansted, VI 00820-5652   **Becht Engineering Co., Inc**   ☐ D _____ ☐ E/F _____ ■ G   **2.41**

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2471 of 2637
2471
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 148 of 156

Debtor   **Limetree Bay Refining, LLC**                          Case number *(if known)*   **21-32354**

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | | |
|---|---|---|---|---|

| 2.94 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Hargrove & Associates LLC** | ☐ D _____  ☐ E/F _____  ■ G __2.131__ |
|---|---|---|---|---|
| 2.95 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **TISI VI, LLC** | ☐ D _____  ☐ E/F _____  ■ G __2.274__ |
| 2.96 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Paxton International** | ☐ D _____  ☐ E/F _____  ■ G __2.205__ |
| 2.97 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **BrandSafway Solutions USVI LLC** | ☐ D _____  ☐ E/F _____  ■ G __2.53__ |
| 2.98 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Black Diamond Automation, LLC** | ☐ D _____  ☐ E/F _____  ■ G __2.46__ |
| 2.99 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Virgin Islands Paving, Inc.** | ☐ D _____  ☐ E/F _____  ■ G __2.320__ |
| 2.100 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **William R. Nash V.I. Inc.** | ☐ D _____  ☐ E/F _____  ■ G __2.335__ |
| 2.101 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Wunderlich-Malec Engineering, Inc.** | ☐ D _____  ☐ E/F _____  ■ G __2.337__ |

| Debtor | **Limetree Bay Refining, LLC** | Case number *(if known)* | **21-32354** |

---

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

*Column 1:* **Codebtor** | *Column 2:* **Creditor**

| 2.10 2 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Pillar Corp Tsc Blower Corp** | ☐ D ____ ☐ E/F ____ ■ G    **2.210** |
| 2.10 3 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Stewart & Stevenson FDDA LLC** | ☐ D ____ ☐ E/F ____ ■ G    **2.261** |
| 2.10 4 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **York Career Development, Inc.** | ☐ D ____ ☐ E/F ____ ■ G    **2.340** |
| 2.10 5 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Rooftops Silicone Distributors, Inc.** | ☐ D ____ ☐ E/F ____ ■ G    **2.237** |
| 2.10 6 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Mostardi Platt** | ☐ D ____ ☐ E/F ____ ■ G    **2.186** |
| 2.10 7 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **RTP Environmental Associates** | ☐ D ____ ☐ E/F ____ ■ G    **2.239** |
| 2.10 8 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **Pinnacle Services LLC** | ☐ D ____ ☐ E/F ____ ■ G    **2.212** |
| 2.10 9 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope Christiansted, VI 00820-5652** | **AC Systems Integration, Inc.** | ☐ D ____ ☐ E/F ____ ■ G    **2.2** |

---

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2473 of 2637
2473
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 150 of 156

| Debtor | **Limetree Bay Refining, LLC** | | Case number *(if known)* | **21-32354** |
|---|---|---|---|---|

■ **Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | | |
|---|---|---|---|---|
| 2.110 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **Acuren Inspection, Inc.** | ☐ D _____ ☐ E/F _____ ■ G ___**2.4**___ |
| 2.111 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **BWC Technologies, Inc.** | ☐ D _____ ☐ E/F _____ ■ G ___**2.55**___ |
| 2.112 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **Demaco Corporation** | ☐ D _____ ☐ E/F _____ ■ G ___**2.83**___ |
| 2.113 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **DSI Group, LLC** | ☐ D _____ ☐ E/F _____ ■ G ___**2.95**___ |
| 2.114 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **DSI, LLC** | ☐ D _____ ☐ E/F _____ ■ G ___**2.96**___ |
| 2.115 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **Flexicrew Technical, LLC** | ☐ D _____ ☐ E/F _____ ■ G ___**2.115**___ |
| 2.116 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **Hazard Management Group of Texas LLC** | ☐ D _____ ☐ E/F _____ ■ G ___**2.132**___ |
| 2.117 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** **Christiansted, VI 00820-5652** | **HMT LLC** | ☐ D _____ ☐ E/F _____ ■ G ___**2.134**___ |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2474 of 2637
2474
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 151 of 156

| Debtor | Limetree Bay Refining, LLC | | Case number *(if known)* | 21-32354 |
|---|---|---|---|---|

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| | Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|---|
| 2.118 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | IBB Petroleum Services Inc. | ☐ D _____ ☐ E/F _____ ■ G __2.145__ |
| 2.119 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | ISS Marine Services LLC | ☐ D _____ ☐ E/F _____ ■ G __2.156__ |
| 2.120 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | J. Benton Construction, LLC | ☐ D _____ ☐ E/F _____ ■ G __2.161__ |
| 2.121 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | North Atlantic Power Products | ☐ D _____ ☐ E/F _____ ■ G __2.194__ |
| 2.122 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | Priority Roro Services Inc. | ☐ D _____ ☐ E/F _____ ■ G __2.220__ |
| 2.123 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | Standard Crane and Hoist, LLC | ☐ D _____ ☐ E/F _____ ■ G __2.258__ |
| 2.124 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | Tri-State Bird Rescue & Research, Inc. | ☐ D _____ ☐ E/F _____ ■ G __2.277__ |
| 2.125 | Limetree Bay Terminals, LLC | #1 Estate Hope Christiansted, VI 00820-5652 | V.I. Recycling Company | ☐ D _____ ☐ E/F _____ ■ G __2.314__ |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2475 of 2637
2475
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 152 of 156

Debtor   **Limetree Bay Refining, LLC**                    Case number *(if known)*   **21-32354**

---

| | **Additional Page to List More Codebtors** |
|---|---|

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

*Column 1:* **Codebtor**                                                    *Column 2:* **Creditor**

| 2.12 6 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **VisiumKMS Inc.** | ☐ D _____ ☐ E/F _____ ■ G ___2.325___ |
|---|---|---|---|---|
| 2.12 7 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **WillFire HC, LLC** | ☐ D _____ ☐ E/F _____ ■ G ___2.334___ |
| 2.12 8 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Dynamic Innovative Corporation** | ☐ D _____ ☐ E/F _____ ■ G ___2.98___ |
| 2.12 9 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Rotating Machinery Services, Inc.** | ☐ D _____ ☐ E/F _____ ■ G ___2.238___ |
| 2.13 0 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Universal Plant Services, (VI), LLC** | ☐ D _____ ☐ E/F _____ ■ G ___2.283___ |
| 2.13 1 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **VisiumKMS Inc.** | ☐ D _____ ☐ E/F _____ ■ G ___2.324___ |
| 2.13 2 | **Limetree Bay Terminals, LLC** | **#1 Estate Hope** Christiansted, VI 00820-5652 | **Chaucer/Apollo** | ☐ D _____ ☐ E/F _____ ■ G ___2.64___ |
| 2.13 3 | **Limetree Bay Ventures, LLC** | | **AIG Insurance Company - Puerto Rico** | ☐ D _____ ☐ E/F _____ ■ G ___2.8___ |

---

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2476 of 2637
2476
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 153 of 156

| Debtor | **Limetree Bay Refining, LLC** | Case number *(if known)* | **21-32354** |
|---|---|---|---|

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | Column 2: **Creditor** | |
|---|---|---|
| 2.134 | **Limetree Bay Ventures, LLC** | **Arcadia/Ark/Helix** | ☐ D _____<br>☐ E/F _____<br>■ G    2.20 |
| 2.135 | **Limetree Bay Ventures, LLC** | **WRB/Guardian General Insurance** | ☐ D _____<br>☐ E/F _____<br>■ G    2.336 |
| 2.136 | **Limetree Bay Ventures, LLC** | **Swiss Re/Westport Insurance Company** | ☐ D _____<br>☐ E/F _____<br>■ G    2.267 |
| 2.137 | **Limetree Bay Ventures, LLC** | **Rokstone/Guardian General Insurance** | ☐ D _____<br>☐ E/F _____<br>■ G    2.236 |
| 2.138 | **Limetree Bay Ventures, LLC** | **QBE/Lloyds of London** | ☐ D _____<br>☐ E/F _____<br>■ G    2.225 |
| 2.139 | **Limetree Bay Ventures, LLC** | **Partner Re/PartnerRe Ireland Insurance** | ☐ D _____<br>☐ E/F _____<br>■ G    2.203 |
| 2.140 | **Limetree Bay Ventures, LLC** | **NOA/Lloyds of London** | ☐ D _____<br>☐ E/F _____<br>■ G    2.193 |
| 2.141 | **Limetree Bay Ventures, LLC** | **LSM/Liberty Specialty Markets Agency td** | ☐ D _____<br>☐ E/F _____<br>■ G    2.171 |

Debtor   **Limetree Bay Refining, LLC**                                    Case number *(if known)*   **21-32354**

---

| ■ | **Additional Page to List More Codebtors** |

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

*Column 1:* **Codebtor**                                                *Column 2:* **Creditor**

---

| 2.14 2 | **Limetree Bay Ventures, LLC** | **Lancashire Insurance Company UK, Ltd** | ☐ D ＿＿＿＿<br>☐ E/F ＿＿＿＿<br>■ G ＿＿**2.169**＿＿ |
| 2.14 3 | **Limetree Bay Ventures, LLC** | **IGI/Insurance General Insurance Co Ltd.** | ☐ D ＿＿＿＿<br>☐ E/F ＿＿＿＿<br>■ G ＿＿**2.149**＿＿ |
| 2.14 4 | **Limetree Bay Ventures, LLC** | **Houston Specialty Insurance Company** | ☐ D ＿＿＿＿<br>☐ E/F ＿＿＿＿<br>■ G ＿＿**2.141**＿＿ |
| 2.14 5 | **Limetree Bay Ventures, LLC** | **Helvetia Swiss Insurance Co** | ☐ D ＿＿＿＿<br>☐ E/F ＿＿＿＿<br>■ G ＿＿**2.133**＿＿ |
| 2.14 6 | **Limetree Bay Ventures, LLC** | **Hannover Re/HDI Global Specialty SE** | ☐ D ＿＿＿＿<br>☐ E/F ＿＿＿＿<br>■ G ＿＿**2.130**＿＿ |
| 2.14 7 | **Limetree Bay Ventures, LLC** | **Great Lakes** | ☐ D ＿＿＿＿<br>☐ E/F ＿＿＿＿<br>■ G ＿＿**2.127**＿＿ |
| 2.14 8 | **Limetree Bay Ventures, LLC** | **Fidelis Underwriting Ltd.** | ☐ D ＿＿＿＿<br>☐ E/F ＿＿＿＿<br>■ G ＿＿**2.114**＿＿ |
| 2.14 9 | **Limetree Bay Ventures, LLC** | **Elseco Limited** | ☐ D ＿＿＿＿<br>☐ E/F ＿＿＿＿<br>■ G ＿＿**2.102**＿＿ |

---

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2478 of 2637
2478
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 155 of 156

| Debtor | **Limetree Bay Refining, LLC** | Case number *(if known)* | **21-32354** |

**■ Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| *Column 1:* **Codebtor** | *Column 2:* **Creditor** | | |
|---|---|---|---|
| 2.150 | **Limetree Bay Ventures, LLC** | **Convex Insurance UK Limited** | ☐ D _____  ☐ E/F _____  ■ G  **2.76** |
| 2.151 | **Limetree Bay Ventures, LLC** | **Guardian General Insurance Limited** | ☐ D _____  ☐ E/F _____  ■ G  **2.128** |
| 2.152 | **Limetree Bay Ventures, LLC** | **Berkshire Hathaway** | ☐ D _____  ☐ E/F _____  ■ G  **2.43** |
| 2.153 | **Limetree Bay Ventures, LLC** | **Muse, Stencil & Co** | ☐ D _____  ☐ E/F _____  ■ G  **2.187** |
| 2.154 | **Limetree Bay Ventures, LLC** | **Atrium Underwriters Ltd** | ☐ D _____  ☐ E/F _____  ■ G  **2.24** |
| 2.155 | **Limetree Bay Ventures, LLC** | **Chaucer/Apollo** | ☐ D _____  ☐ E/F _____  ■ G  **2.64** |

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2479 of 2637
2479
Case 21-32351   Document 546   Filed in TXSB on 09/07/21   Page 156 of 156

**Fill in this information to identify the case:**

Debtor name  **Limetree Bay Refining, LLC**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF TEXAS

Case number (if known)   21-32354

☐ Check if this is an amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors      12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime.** Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☑ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☑ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☑ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☑ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☑ *Schedule H: Codebtors* (Official Form 206H)
☑ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐ Amended *Schedule*
☐ *Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
☐ Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge based upon the information available to me at this time.
.

Executed on   __September 7, 2021__          X __/s/ Mark Shapiro__
                                                    Signature of individual signing on behalf of debtor

                                              __Mark Shapiro__
                                              Printed name

                                              __Chief Restructuring Officer__
                                              Position or relationship to debtor

Official Form 202                    **Declaration Under Penalty of Perjury for Non-Individual Debtors**

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

# EXHIBIT 6

**List of Personal Property Provided to Bay, Ltd. of Assets to be Sold**

**(May be subject to Confidentiality)**

**Will be made available at Hearing**

# EXHIBIT 7

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2482 of 2637
2482
Case 21-32351   Document 701   Filed in TXSB on 10/29/21   Page 1 of 9

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | CHAPTER 11 |
| LIMETREE BAY SERVICES, LLC, *et al.*,[1] | CASE NO.: 21-32351 |
| Debtors. | (Jointly Administered) |

### DEBTORS' MOTION TO (I) APPROVE SALES OF GOODS FREE AND CLEAR OF ALL CLAIMS, LIENS, AND ENCUMBRANCES BY NRI INDUSTRIAL SALES, LLC AND (II) APPROVE NRI'S COMMISSION FOR SALES

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Limetree Bay Services, LLC and its debtor affiliates (collectively, the "**Debtors**"), as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**"), respectfully represent as follows in support of this motion (the "**Motion**").

### Introduction

1.       The Debtors require various materials, equipment, and machinery to maintain the operations of the refinery and related facilities.  Due to the remote location of the facility, the Debtors acquire and maintain an inventory of such materials, equipment, and machinery on site. Prior to the Petition Date (defined below), Limetree Bay Refining, LLC and NRI Industrial Sales

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2483 of 2637
2483
Case 21-32351   Document 701   Filed in TXSB on 10/29/21   Page 2 of 9

LLC ("**NRI**") entered into an agreement, pursuant to which NRI agreed to liquidate certain surplus or unnecessary materials, equipment, and machinery.  LBR and NRI entered into the Contract (defined below) and, following the commencement of the Chapter 11 Cases, continued performing in accordance therewith in the ordinary course of business.  Notwithstanding, out of an abundance of caution, the Debtors hereby seek approval of the ongoing sale of the Goods (defined below) and payment of the Commission (defined below) to NRI pursuant to the Contract.

<u>**Relief Requested**</u>

2.      Pursuant to Sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq*. (the "**Bankruptcy Code**"), and rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors request entry of an order (i) approving the sale of certain Goods (defined below) free and clear of any and all liens, claims, and encumbrances (collectively, the "**Liens**"), in any individual transaction or series of transactions to a single buyer or multiple buyers, without the need for further Court approval and with Liens attaching to the proceeds of such sale with the same validity, extent, and priority as such Liens attached to the subject asset(s) immediately prior to the sale or transfer; and (ii) approving the payment of any and all commissions, fees and reimbursements (the "**Commission**") required under the master consignment agreement (the "**Contract**") between Limetree Bay Refining, LLC ("**LBR**") and NRI for NRI's services in selling the Goods.

3.      A proposed form of order granting the relief requested herein is attached hereto as **Exhibit A** (the "**Proposed Order**").

4.      A discussion of the facts and circumstances surrounding the Contract and the sale of the Goods is set forth in the *Declaration of Mark Shapiro in Support of Debtors' Motion to (I) Approve Sales of Goods Free and Clear of All Claims, Liens, and Encumbrances by NRI Industrial*

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2484 of 2637
2484
Case 21-32351   Document 701   Filed in TXSB on 10/29/21   Page 3 of 9

*Sales, LLC and (II) Approve NRI's Commission for Sales* (the "**Shapiro Declaration**"), which is attached hereto as **Exhibit B** and incorporated herein by reference in its entirety.

## Jurisdiction and Venue

5.　　This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## Background

6.　　On July 12, 2021 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code—thereby commencing the above-captioned Chapter 11 Cases. The Debtors continue to operate their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases. On July 26, 2021, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (Doc. No. 189).

7.　　On July 13, 2021, this Court entered an order authorizing the joint administration of the Chapter 11 Cases (Doc. No. 20).

## The NRI Contract

8.　　On or about March 9, 2021, LBR and NRI entered into the Contract.  A true and correct copy of the Contract is attached as **Exhibit C**.  The Contract provides, in pertinent part, that NRI will market and sell certain surplus and used industrial materials, equipment, and machinery of the Debtors (collectively, the "**Goods**"), as further described in the Contract and identified on Exhibit A thereto. The Contract authorizes NRI to market and sell the Goods through an online platform or via an auction. In exchange for its services, NRI is entitled to receive forty

percent (40%) of gross proceeds from a sale via the NRI online platform and twenty percent (20%) of gross proceeds from a sale via an auction—in either case with the remainder of gross proceeds, net of certain reimbursements and deductions (e.g., transportation costs for the Goods), being payable to LBR. The Contract is for a term of twenty-four (24) months but provides that it may be terminated upon the occurrence of an Event of Default (as defined in the Contract). Additionally, the Contract provides that NRI shall pay LBR a guaranteed, non-refundable minimum payment of $2.6 million with respect to the sale of Goods under the Contract.

9.      NRI has continued to manage LBR's inventory and sold the Goods in the ordinary course of the Debtors' business post-petition. Out an abundance of caution, the Debtors seek Court approval of NRI's continued services under the Contract and for the payment of the Commission.

**Basis for Relief Requested**

10.      Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although Section 363 of the Bankruptcy Code does not set forth a specific standard, bankruptcy courts routinely authorize sales of estate assets outside the ordinary course of business if such sale is based upon the sound business judgment of the debtor. See *Asarco, Inc. v. Elliott Management (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011), (quoting *The Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986)) ("'[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.").

11.      In conducting such an evaluation, however, courts generally accord significant deference to a debtor's business judgment to use or sell estate assets outside the ordinary course

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2486 of 2637
2486
Case 21-32351   Document 701   Filed in TXSB on 10/29/21   Page 5 of 9

of business. *See In re ASARCO, L.L.C.*, 650 F.3d at 601 ("The business judgment standard in section 363 is flexible and encourages discretion."); *see also GBL Holding Co. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254 (N.D. Tex. 2005) ("Great judicial deference is given to the Trustee's exercise of business judgment."), (citing *In re Gulf States Steel, Inc. of Ala.*, 285 B.R. 497, 516 (Bankr. N.D. Ala.2002)); *see also In re W.A. Mallory Co., Inc.*, 214 B.R. 834, 836–37 (Bankr. E.D. Va. 1997) ("[G]reat deference is given to a business in determining its own best interests."); *see also In re Global Crossing, Ltd.*, 295 B.R. 726, 744 n. 58 (Bankr. S.D.N.Y. 2003) ("[T]he Court does not believe that it is appropriate for a bankruptcy court to substitute its own business judgment for that of the [d]ebtors and their advisors, so long as they have satisfied the requirements articulated in the case law.").

12.     The Debtors submit that the proposed sale of the Goods reflects a reasonable exercise of their business judgment. By selling the Goods, the Debtors will be able to obtain the value of these assets for the benefit of their estates and creditors. Further, authorizing the sale of the Goods through NRI's online platform or auction will ensure that the Debtors obtain the highest and best price for these assets in an efficient and cost-effective manner. Requiring the Debtors to file a motion with the Court each time the Debtors seek to dispose of a Good or group of Goods would cause the Debtors to incur unnecessary costs that would reduce the benefit to the estates. Additionally, NRI's Commission is reasonable and will allow the Debtors to realize the benefit of selling the Goods due to the commission-based compensation and guaranteed payment. Accordingly, the Debtors submit that the proposal to sell the Goods per the terms of the Contract reflects the Debtors' exercise of sound business judgment and, thus, may and should be approved under Section 363(b) of the Bankruptcy Code.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2487 of 2637
2487
Case 21-32351   Document 701   Filed in TXSB on 10/29/21   Page 6 of 9

13.     Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable non-bankruptcy law permits such a "free and clear" sale; (b) the holder of the interest consents; (c) the interest is a lien and the sales price of the property exceeds the value of all liens on the property; (d) the interest is in *bona fide* dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. 11 U.S.C. § 363(f). The Debtors request approval of a sale free and clear of any Liens to ensure the Debtors are able to market and convey clean title to the Goods.  The Debtors believe the Goods may be subject to certain Liens, including, without limitation, Liens of 405 Sentinel, LLC.

14.     Sale free and clear of Liens is warranted under Section 363(f) of the Bankruptcy Code. The Debtors propose to sell or transfer the Goods in a commercially reasonable manner and expect that the value of the proceeds from such sales or transfers will fairly reflect the value of the Goods sold. The Debtors further propose that any party with a Lien on Goods sold or transferred pursuant to this Motion shall have a corresponding security interest in the proceeds from the sale of the subject Goods. Moreover, the Debtors propose that the failure to file an objection to the entry of the Order approving this Motion following the provision of notice be deemed "consent" to any sales or transfers pursuant to the Order within the meaning of Section 363(f)(2) of the Bankruptcy Code. As such, the requirements of Section 363(f) of the Bankruptcy Code would be satisfied for any proposed sales or transfers of any Goods free and clear of Liens.

15.     Purchasers are entitled to treatment as good faith purchasers under Section 365(m) of the Bankruptcy Code. Section 363(m) of the Bankruptcy Code provides in relevant part that the reversal or modification on appeal of an authorization under Section 363(b) of the Bankruptcy Code of a sale or lease of property of the estate does not affect the validity of the subject sale or

lease as to a purchaser who bought or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless the subject authorization and sale or lease were stayed pending appeal. *See* 11 U.S.C. § 363(m). Although the Bankruptcy Code does not define "good-faith purchaser," "[t]he requirement that a purchaser act in good faith . . . speaks to the integrity of [purchaser's] conduct in the course of the sale proceedings." *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (internal citations omitted); *see Factory Mutual Insurance, Co. v. Panda Energy Int'l, Inc. (In re Hereford Biofuels, L.P.)*, 466 B.R. 841, 860 (Bankr. N.D. Tex. 2012). "Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders, or an attempt to take grossly unfair advantage of other bidders." *In re Hereford Biofuels, L.P.*, 466 B.R. at 860. The Debtors submit that the sale of any Goods will be the result of an arms'-length transaction through an online platform or auction open to any potential purchasers and, thus, the purchaser should be entitled to the protections of Section 363(m) of the Bankruptcy Code.

## **Bankruptcy Rules 6004(a) and 6004(h)**

16.     The Debtors also request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## **Notice**

17.     Notice of this Motion will be provided to the Master Service List, including: (a) the U.S. Trustee; (b) all secured creditors; (c) the Offices of the Attorney General of the State of Texas and the United States Virgin Islands; (d) the thirty (30) largest consolidated unsecured creditors for the Debtors; (e) the Debtors' identified, interested taxing authorities, including the Internal Revenue Service; (f) the Debtors' identified, interested government and regulatory entities; (g)

other interested parties as identified by the Debtors; (h) the Committee members and their counsel, if known; (i) proposed counsel to the Committee; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. Notice of this Motion will also be provided to *all creditors* in accordance with Bankruptcy Rule 2002(a)(2). The Debtors shall serve the Motion via U.S. Mail without a copy of Exhibit A to the NRI Contract due to its voluminous nature and the attendant costs of reproduction; however, any party in interest may obtain an electronic copy of Exhibit A to the NRI Contract by submitting a written request via email to dmerola@bakerlaw.com or by downloading the Motion through the website for the Debtors' claims agent at www.bmcgroup.com/limetree The method of service for each party will be described more fully in the certificate of service prepared by the Debtors' claims and noticing agent. The Debtors respectfully submit that, under the circumstances, such notice is sufficient and that no other or further notice of this Motion is required.

**WHEREFORE**, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and for all other relief that is appropriate under the circumstances.

RESPECTFULLY SUBMITTED this 29th day of October, 2021.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2490 of 2637
2490
Case 21-32351   Document 701   Filed in TXSB on 10/29/21   Page 9 of 9

BAKER & HOSTETLER LLP

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
**Jimmy D. Parrish, Esq.**
Fed. ID No. 2687598
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile: 407.841.0168
Email: egreen@bakerlaw.com
        jparrish@bakerlaw.com

BAKER & HOSTETLER LLP
**Jorian L. Rose, Esq.**
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com
*(Admitted Pro Hac Vice)*

*Proposed Counsel for the Debtors and Debtors
in Possession*

## Certificate of Service

I certify that on October 29, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Elizabeth A. Green*

Elizabeth A. Green

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | CHAPTER 11 |
| **LIMETREE BAY SERVICES, LLC,** *et al.* [2] | CASE NO.: 21-32351 |
| Debtors. | (Jointly Administered) |

**ORDER GRANTING DEBTORS' MOTION TO (I) APPROVE SALES OF GOODS FREE AND CLEAR OF ALL CLAIMS, LIENS, AND ENCUMBRANCES BY NRI INDUSTRIAL SALES, LLC AND (II) APPROVE NRI'S COMMISSION FOR SALES**

Upon the motion ("**Motion**")[3] of the debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**") for entry of an order (the "**Order**") approving NRI's sale of the Goods and payment of NRI's Commission in accordance with the terms and procedures described in the Motion; finding this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; finding that this matter is a core proceeding pursuant to 28 U.S.C. § 157; finding this Court may enter final orders in this matter consistent with Article III of the United States Constitution; finding that this matter is properly venued in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; finding notice of the Motion due and proper under the circumstances and in accordance with all applicable rules and orders, and no further or additional notice of the Motion being warranted; receiving no objections to the

---

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[3] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

4832-3564-7742.1
DOCS_NY:44274.3 52622/002
4869-4507-6737.1

relief requested in the Motion; having considered the Motion, the declaration of Mark Shapiro in support thereof, and all other documents submitted in support of the Motion; and, after due deliberation, finding that the relief requested by and through the Motion is due and proper, is supported by the Debtors' sound business judgement, and serves the best interests of the estates and their creditors; and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED:**

1.      The Motion is granted as set forth herein.

2.      Pursuant to Section 363(b) of the Bankruptcy Code, the Debtors, through NRI, are authorized (a) to sell and transfer the Goods, or any of them, by any commercially reasonably means through one or more transactions without further order of this Court and (b) to pay any commissions, fees and reimbursements to NRI provided under and per the terms of the Contract.

3.      Pursuant to Section 363(f) of the Bankruptcy Code, any sales or transfer of the Goods pursuant to this Order are, without need for any action by any party, free and clear of any and all Liens, with such Liens attaching to the proceeds of such sale or transfer with the same validity, extent, and priority as such Liens attached to the subject Goods immediately prior to such sale or transfer, subject to any claims and defenses the Debtors or any other party may possess with respect thereto.  The holder of any valid Lien or interest on such Goods shall, as of the effective date of such sale or transfer, be deemed to have waived and released such Lien, without regard to whether such holder has executed or filed any applicable release, and such Lien shall automatically, and with no further action by any party, attach to the proceeds of the sale of the Goods subject to such Lien(s), to the extent set forth herein. Notwithstanding the foregoing, any

holder of a Lien on any Goods is authorized and directed to execute and deliver any waivers, releases, or other related documentation, as reasonably requested by the Debtors. To the extent deemed necessary, the Debtors may file a copy of this order as conclusive evidence of the release of any and all Liens in the Goods.

4.      NRI shall be deemed to be a consignee of the Goods, which Goods shall remain property of the Debtors' estates until such time as such Goods are sold to a third-party buyer.  At no time shall NRI be deemed to be an owner of, or title holder to, any of the Goods and shall not have any authority to pledge or encumber any of the Goods, absent further order of this Court.

5.      The Debtors shall file with the Court a report (the "<u>NRI Report</u>") on the last business day of every other calendar month, concerning all transactions consummated during the two (2) calendar months immediately preceding the month in which the report is filed pursuant to the terms of this Order and/or the Contract; *provided*, *that*, the initial NRI Report shall include, to the extent known and not confidential, an itemized listing of any and all sales of Goods under the Contract from the Petition Date through and including October 31, 2021.  The initial NRI Report shall be due 30 calendar days following entry of this Order.  Each NRI Report shall include, to the extent known and not confidential, the following information with respect to each Good sold: (a) the purchaser's name; (b) the purchase price; (c) the book value of the subject Good; (d) the date on which payment of the purchase price was received by NRI, the means of sale (*i.e.*, online or auction format); and (e) any commission attributable thereto.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2494 of 2637
2494
Case 21-32351   Document 701-1   Filed in TXSB on 10/29/21   Page 4 of 5

6.      Any sales or transfers of Goods pursuant to this Order shall be deemed arms'-length transactions, and such purchasers and transferees of the Goods shall be entitled to the protections afforded to good-faith purchasers under Section 363(m) of the Bankruptcy Code.

7.      The Debtors and any purchasers of the Goods are authorized to take any and all actions and execute any and all documents necessary or appropriate to effectuate the sale or transfer of any Goods.

8.      Any sale transactions pursuant to this Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Order, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of such persons and entities is hereby directed to accept this Order as sole and sufficient evidence of such transfer of title and shall rely upon this Order in consummating the transactions contemplated hereby.

9.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

10.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

11.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

12.     This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

DATED:

_____
Honorable David R. Jones
United States Bankruptcy Judge

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2496 of 2637
2496
Case 21-32351   Document 701-2   Filed in TXSB on 10/29/21   Page 1 of 4

## EXHIBIT B

**DECLARATION OF MARK SHAPIRO IN SUPPORT OF MOTION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | CHAPTER 11 |
| LIMETREE BAY SERVICES, LLC, *et al.* [1] | CASE NO.: 21-32351 |
| Debtors. | (Jointly Administered) |

**DECLARATION OF MARK SHAPIRO IN SUPPORT OF DEBTORS' MOTION TO (I) APPROVE SALES OF GOODS FREE AND CLEAR OF ALL CLAIMS, LIENS, AND ENCUMBRANCES BY NRI INDUSTRIAL SALES, LLC AND (II) APPROVE NRI'S COMMISSION FOR SALES**

I, Mark Shapiro, declare as follows:

1.     I am a Senior Managing Director for GlassRatner Advisory & Capital Group LLC, d/b/a B. Riley Advisory Services ("**B. Riley**" or the "**CRO**").  On or about June 17, 2021, Limetree Bay Services,  LLC, Limetree Bay Refining Holdings, LLC, Limetree Bay Refining Holdings II, LLC, Limetree Bay Refining, LLC, Limetree Bay Refining Operating, LLC, and Limetree Bay Refining Marketing, LLC (collectively, the "**Debtors**") retained B. Riley as chief restructuring officer.  I am the principal representative of B. Riley in its capacity as CRO.

2.     I am a duly authorized representative of the Debtors for purposes of executing any and all documents in connection with the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**"), and representing the Debtors in the course of these Chapter 11 Cases and any related proceedings.  I am authorized to submit this Declaration on behalf of the Debtors.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

3.      I submit this Declaration in support of the *Debtors' Motion to (I) Approve Sale of Goods Free and Clear of All Claims, Liens, and Encumbrances by NRI Industrial Sales, LLC and (II) Approve NRI's Commission for Sales* (the "**Motion**").  Unless otherwise defined herein, all defined terms shall have the meanings ascribed to them in the Motion.

4.      I am familiar with the Debtors' businesses, day-to-day operations, and financial affairs.  Except as otherwise indicated, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents and records created and maintained by the Debtors in the ordinary course of business, information provided to me by employees and consultants working under my supervision with personal knowledge of the veracity of such information, and/or my opinion based on experience, knowledge, and information concerning the Debtors' operations and financial condition.  If called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

5.      LBR and NRI entered into the Contract in the ordinary course of business.  Under the Contract, NRI sells certain surplus and used industrial materials, equipment, and machinery (i.e., the Goods).  The Debtors do not require the Goods to idle the refinery or maintain the operation of the ancillary systems.  As such, the services of NRI are critical to the Debtors ability to liquidating unnecessary inventory and, thereby, maximize recoveries for creditors.

6.      In my sound business judgment, I believe it is in the best interest of the Debtors' estates to continue to sell the Goods pursuant to the terms set forth in the Motion, including paying NRI's Commission, which I believe to be fair and reasonable.

*[Remainder of Page Intentionally Blank]*

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2499 of 2637
2499
Case 21-32351   Document 701-2   Filed in TXSB on 10/29/21   Page 4 of 4

I declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

Dated: October 29, 2021                    _____/s/ Mark Shapiro_____

                                           Mark Shapiro, CRO

## EXHIBIT C

## NRI CONTRACT


**EXHIBIT A TO NRI CONTRACT IS NOT**

**BEING PROVIDED VIA U.S. MAIL BUT**

**MAY BE REQUESTED VIA EMAIL TO**

**DMEROLA@BAKERLAW.COM OR**

**DOWNLOADED FOR FREE AT**

**WWW.BMCGROUP.COM/LIMETREE**

# MASTER CONSIGNMENT AGREEMENT

---

**This Master Consignment Agreement is expressly limited to and made conditional upon the exclusivity of these terms and conditions. Any proposal for additional or different terms or any attempt to vary, in any degree, any of the terms of this Agreement shall be deemed a material alteration hereof and is expressly rejected. The terms and conditions of this Agreement may only be amended by the parties' specific, written assent to the change.**

---

This **MASTER CONSIGNMENT AGREEMENT** (the '*Agreement*') is made effective on the date indicated below (the "*Effective Date*") by and between NRI Industrial Sales LLC, a Delaware limited liability company with offices at 6401 Rogers Road, Delta, Ohio 43515 ("*NRI*", "*Consignee*", "*we*", and "*us*") and the person or entity identified below (the "*Consignor*", "*Limetree*", "*you*", and "*your*"). NRI and Consignor are hereinafter referred to jointly as the "*parties*" and individually as a "*party*".

| Consignor Information | | | |
|---|---|---|---|
| Name: Limetree Bay Refining, LLC. | | Type of Entity LLC. | |
| Street Address 1 Estate Hope | City Christiansted | District Virgin Islands | Mail Code 00820 |
| Telephone 340-692-3658 | | Fax Number | |
| Contact Name Michael Magill | | Email mmagill@lbenergy.com | |
| Business ID No. | Website Address | Effective Date March 9, 2021 | |

## RECITALS

**WHEREAS**, NRI is in the business of purchasing and selling surplus and used industrial equipment including electrical, hydraulic, pneumatic, power transmission, pumps, tools, valves, and instrumentation

**WHEREAS**, Consignor desires to consign to NRI certain goods for the purpose of facilitating a sale of such goods by NRI and to engage NRI to act as Consignor's exclusive agent for the sale of such consigned goods; and

**WHEREAS**, NRI is willing to accept delivery of the goods and to make necessary payment to the Consignor upon the sale of the goods on the terms and subject to the conditions set forth in this Agreement.

**NOW THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which the parties hereto both acknowledge, the Consignor and the Consignee hereby agree as follows:

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2502 of 2637
2502
Case 21-32351   Document 701-3   Filed in TXSB on 10/29/21   Page 3 of 47

1.      **Definitions.**  Terms not otherwise defined herein shall have the following meanings:

"*Consigned Goods*" or "*Goods*" means that equipment, products, or goods as set forth on the attached Exhibit A, as such Exhibit may from time to time be amended in writing, and any and all other equipment, products, or goods that you deliver to NRI and which NRI agrees to take possession.

"*Gross Proceeds*" means the aggregate of all revenue from the sale of the Goods actually received by NRI, but excluding (a) all refunds made in good faith, (b) any sales taxes that are collected by NRI for or on behalf of any governmental taxing authority and paid thereto, and (c) any shipping costs paid by the buyer of the Goods.

"*Premises*" means NRI's facility located at 6401 Rogers Road, Delta, Ohio, 43515, 4901 Rockaway Blvd, Bldg G, Rio Rancho, New Mexico, 87124, 2530 Speers Rd, Unit 8-9, Oakville, ON L6L 5K8, or such other facility designated by NRI in the continental United States, Canada or the United Arab Emirates as NRI may in its sole discretion provide. Notwithstanding the foregoing, NRI shall give Consignor written notice of the location of the Goods and any change thereto prior to sale.  NRI shall ensure that any such Premises is safe and secure and that the Goods are stored and handled in a manner to preserve their value.

2.      **Right to Sell.**  Throughout the Term of this Agreement (as hereafter defined), you agree that NRI shall be the sole Consignee of the Consigned Goods, and you shall assign NRI the exclusive right to sell the Consigned Goods in accordance with the terms of this Agreement.

3.      **Consignment of Goods.**

a.      NRI agrees to use its reasonable commercial efforts to sell the Goods, as a whole, on the most favorable terms. We shall have complete professional discretion as to the time and place of sale of the Goods, the sale and venue in which the Goods are offered, and the manner in which any sale is promoted and conducted. Notwithstanding the foregoing, NRI (i) shall use only such written sales materials provided by Consignor or approved by Consignor in writing (the "*Approved Sales Materials*"), and (ii) shall not make any promises or statements with respect to the Goods that are not expressly set forth in the Approved Sales Materials.  NRI shall have discretion to determine the manner in which items are grouped into auction lots (if any).

b.      Unless otherwise instructed in writing by Consignor, NRI may clean and dismantle any Goods for the purpose of making the Goods ready for sale. All detritus generated from above activities will be disposed of by NRI. Any scrap of value generated from above activities will be treated as Consigned Goods.

c.      Unless otherwise agreed in writing by the parties, NRI shall obtain custody and risk of loss of the Goods after NRI inspects the Goods and approves the loading methodology to be used by Consignor for loading of the Goods, at Consignor's refinery in St. Croix, USVI (the "*Receipt Point*").  NRI shall coordinate the transportation of the Goods to the Premises; provided that Consignor shall reimburse NRI for all reasonable and documented costs and expenses incurred by NRI in connection with the transportation of such goods to the Premises. Consignor shall insure the Goods while in transit and upon receipt of the Goods at the Receipt Point, NRI shall insure the Goods for their liquidation value, at its sole

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2503 of 2637
2503
Case 21-32351   Document 701-3   Filed in TXSB on 10/29/21   Page 4 of 47

cost and expense.  For purposes of this Agreement, the term "liquidation value" means eleven percent (11%) of the book value of the Goods.

d.  The Consigned Goods shall remain the sole property of Consignor until immediately prior to the sale of the Goods to a buyer. NRI hereby acknowledges that it takes possession of the Consigned Goods only on a consignment basis and it does not acquire any property right or security interest in the Consigned Goods. Your consignment is not a consignment intended as a security.

e.  NRI maintains a comprehensive return policy which allows buyers to return unwanted items within thirty (30) days. Any Goods which are returned will result in an adjustment of amounts to be paid pursuant to Section 4 below.

f.  You may choose to recall Goods that are not committed to sold at any time prior to sale through Consignee's web portal.  If the value of the Goods recalled is one percent or less of the total value of the Goods, as specified in Exhibit A, no adjustment shall be made to the Minimum Payment.  If the value of the recalled Goods is greater than one percent (1%), then the Minimum Payment will be adjusted on a pro rata basis. NRI will make the recalled items available for pickup by you and you agree to be responsible for all shipping costs associated with such recalled items.

g.  If sold at auction, neither you, your principal, if any, nor any other representative or agent of you or your principal shall bid for the Goods.  All bids to protect your reserves, if any, will be made at our discretion by our representatives.  If you violate your foregoing commitments and you (or your principal, agent or representative) become the successful bidder on your Goods, we may either return the Goods to you in exchange for the commissions set forth in Section 4 based on the bid price, or retain and sell the Goods without reserve in order to recover the commissions due from such sale and the commissions due on the sale concluded in violation of this paragraph including, in each case, all expenses to which we are entitled.

4.  **Proceeds and Terms of Sale.**

a.  Online Sales (Orderly Liquidation). NRI shall retain forty percent (40%) of the Gross Proceeds from the sale of each item Goods consigned and shall remit to Consignor an amount equal to sixty  percent (60%) of the Gross Proceeds, less any and all shipping charges paid by the customer, refund adjustments, or applicable sales taxes  on the Goods.

b.  Auction Sales (Forced Liquidation). NRI shall retain twenty percent (20%) of the Gross Proceeds from the sale of each item Goods consigned and shall remit to Consignor an amount equal to eighty percent (80%) of the Gross Proceeds, less any and all shipping charges paid by the customer or applicable sales taxes on the Goods. NRI maintains the right to collect a buyer's premium on any sales from the buyer.

c.  Subject to the provisions of Section 3f, NRI shall pay Consignee a guaranteed, non-refundable minimum payment of $2,600,000 (the "***Minimum Payment***"), with respect to all sales of Goods under this Agreement.  For purposes of this Section 4(c), the term "***Start Date***" means thirty (30) days after NRI has provided notice of signoff to Consignor and all of the Goods have been loaded onto containers. If twelve (12) months after the Start Date (the "***Payment Date***"), Consignor's

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2504 of 2637
2504
Case 21-32351   Document 701-3   Filed in TXSB on 10/29/21   Page 5 of 47

cumulative collected funds is less than the Minimum Payment, NRI shall pay Consignor an amount equal to the difference between the Minimum Payment and the cumulative collected funds disbursed to Consignor as of the Payment Date (such amount being referred to herein as the "***Payment Advance***"). NRI shall have the right to continue sales under this Agreement until the earlier of (i) twelve (12) months after the Payment Date, or (ii) the complete disposition of the Goods. For all periods after the Payment Date, additional sales of Goods shall be subject to the sharing ratios set forth in Sections 4(a) and 4(b) above, except that no funds will be due and payable to Consignor during such period until NRI's share of earned funds is equal to the Payment Advance.

d.   NRI shall be responsible for collecting all funds from its customers, the record of which shall be visible on the NRI Portal (as defined below). Within eight (8) days of the end of each calendar month, NRI shall disburse to Consignor its share, as specified in Sections 4(a) and 4(b), of the gross sales revenues received during the immediately prior month and NRI shall retain NRI's share, as specified in Sections 4(a) and 4(b), as NRI's commission (the "***Commission***") with respect to such sales. NRI shall pay Consignor its share via electronic transfer of same day funds in U.S. Dollars, to a bank account or accounts designated by Consignor. Each payment shall be in the full amount due to Consignor pursuant to the provisions of this Section 4. All payments under this Agreement not paid by the due date as defined herein shall accrue interest at the lesser of 1% per month or the highest rate permitted by applicable law. Interest shall run from, and including, the applicable due date of the payment to, but excluding, the date that payment is received.

e.   Goods that are not sold will be evaluated by both NRI and Consignor if not sold within twenty-four (24) months after acceptance by NRI. If you decide to remove the remaining consigned Goods after such period, you take responsibility for retrieving the Goods or for delivery costs that may result for such delivery.

**5.   NRI's Proprietary Consignment Portal.** In consideration of your agreement to retain NRI as your exclusive consignee for all sales of any Consigned Goods during the Term of this Agreement, NRI hereby grants you access to NRI's exclusive and proprietary consignment portal located at https://consignment.nriparts.com (the "***NRI Portal***"). The NRI Portal will enable you to monitor reports on the status of NRI's inventory of your Goods, the sales of Goods, payments, and other information. Your use of the NRI Portal shall at all times be subject to NRI's Terms of Use set forth at www.nriparts.com/terms and NRI's Privacy Policy set forth at www.nriparts.com/privacy as such terms may from time to time be modified and amended by NRI upon delivery of notice to you. NRI will provide you with unique, sign on identifications and passwords ("***IDs***") to enable you to access the NRI Portal. You and any authorized users shall maintain the confidentiality of the IDs. You agree to immediately notify NRI if a security breach occurs or if you suspect that a security breach may have occurred with respect to your license to use the NRI Portal.

**6.   Consignor's Warranties and Indemnity.**

a.   You represent and warrant that: (i) you have the right, power and authority to consign the Goods for sale, to enter into this Agreement and to perform all of your obligations hereunder; (ii) the Goods are, and until sold shall remain, free and clear of all liens, encumbrances or claims arising by, through and under you; (iii) you alone hold good title to the Goods, and good title will pass to any buyer upon sale, except for any liens created by, through or under NRI; (iv) to your knowledge, there are no legal, contractual or other restrictions on our right to exhibit the Goods or

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2505 of 2637
2505
Case 21-32351   Document 701-3   Filed in TXSB on 10/29/21   Page 6 of 47

reproduce images of the Goods or on our right to use or reproduce any images or materials provided by you to us for the purposes contemplated herein, and (v) to your knowledge, the Goods are not counterfeit.

b.  EXCEPT AS SPECIFICALLY SET FORTH IN <u>SECTION 6(A)</u> ABOVE, CONSIGNOR MAKES NO WARRANTIES OF ANY KIND OR NATURE (EXPRESS OR IMPLIED) REGARDING THE GOODS, AND NRI SHALL INFORM ALL POTENTIAL PURCHASERS THAT THE GOODS ARE BEING SOLD "AS IS, WHERE IS" WITHOUT ANY WARRANTIES OF ANY KIND WHATSOEVER (EITHER EXPRESS OR IMPLIED) AND THAT ALL WARRANTIES ARE EXPRESSLY DISCLAIMED (INCLUDING WARRANTIES OF MERCHANTABILITY, FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE).

c.  To the fullest extent permitted by applicable law, you agree to defend and indemnify NRI, its affiliates, and their directors, officers, employees, representatives, agents, and subcontractors against, and hold us and them harmless from, any and all claims, actions, damages, losses, liabilities, and expenses (including reasonable attorneys' fees for counsel of our choice, including in-house counsel) arising out of or concerning title to the Goods at the time of sale to NRI's purchaser.

d.  Your warranties and this indemnity shall survive the completion of the transactions contemplated by this Agreement for a period of two (2) years and shall be applicable to any Goods sold or consigned for sale hereunder.

**7.    NRI's Warranties, Obligations and Indemnity.**

a.  NRI represents and warrants that it shall not permit any liens to be placed on the Goods while in its custody and control.

b.  NRI shall comply with all applicable laws in performing its obligations under this Agreement, including all trade and export regulations.  Without limiting the foregoing, NRI represents and warrants that it is familiar with, and will comply with, all applicable laws concerning the sale of the Goods, including any laws concerning, relating to or affecting (i) the import and/or export thereof, (ii) sales to "restricted persons," and (iii) the U.S. Foreign Corrupt Practices Act and similar laws.

c.  NRI shall comply with Consignor's policies ("***Consignor's Policies***") concerning (i) gifts, kickbacks or other payments to Consignor's employees and contractors or any other person and (ii) access to and conduct on Consignor's property, including Consignor's St. Croix refinery.  In addition, at all times when NRI has access to Consignor's property, NRI shall maintain the insurance set forth in Exhibit B hereto. NRI acknowledges and recognizes the importance of the safety and health of all persons, including, but not limited to, employees of Consignor, NRI and other contractors.  NRI shall strictly and carefully comply with all requirements of this Agreement and all of Consignor's policies and procedures pertaining to safety, health and environmental matters.  NRI agrees to devote special care and attention to, and to exercise its best efforts to attain, the desired objective of performing the Services without injury to any person.

d.  If required under applicable law, NRI will hold a valid Virgin Islands Business License (a "VI License") in order to perform the Services.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2506 of 2637
2506
Case 21-32351   Document 701-3   Filed in TXSB on 10/29/21   Page 7 of 47

e.     Except as otherwise provided in this Agreement, NRI shall be responsible for the payment of the costs and expenses incurred or committed to in connection with the sale of the Goods, including all advertising and other costs and expenses, it being understood and agreed that the Commission includes the reimbursement of all of, and NRI shall not be entitled to reimbursement for any such costs and expenses.

f.     During the Term and for a period ending two (2) years after the termination of this Agreement, (a) NRI shall keep and maintain complete and accurate records (the "*Sales Records*") regarding the sale of the Goods, and (b) Consignor shall have the right (at its sole cost and expense) to inspect, copy and audit the Sales Records at NRI's offices and during NRI's normal business hours.  Access to such Sales Records may be provided via NRI's Portal.

g.     To the fullest extent permitted by applicable law, NRI shall defend, indemnify and hold harmless Consignor, its affiliates, and their directors, officers, employees, representatives, agents and contractors for and against any liabilities directly or indirectly arising out of (i) any breach by NRI of any covenant or agreement contained herein or any representation or warranty of NRI made herein proving to be false or misleading, (ii) any failure by NRI to comply with or observe any applicable law or Consignor's Policies, (iii) NRI's negligence or willful misconduct, (iv) injury, disease, or death of any person or damage to or loss of any property, fine or penalty, to the extent caused by NRI, its employees or representatives, and (v) any liabilities directly or indirectly arising out of or relating to the Goods on and after the date of receipt by NRI at the Receipt Point.  The foregoing indemnity shall survive termination of this Agreement for a period of two years.

h.     NRI's warranties and indemnity shall survive the completion of the transactions contemplated by this Agreement for a period of two (2) years and shall be applicable to any Goods sold or consigned for sale hereunder.

**8.     WAIVER AND RELEASE.** YOU HEREBY EXPRESSLY WAIVE AND RELEASE US (AND ALL OF OUR OFFICERS, STOCKHOLDERS, INSURERS, AGENTS AND EMPLOYEES) FROM ANY JOINT AND/OR SEVERAL LIABILITY WITH YOU OR ANY OTHER PERSON OR ENTITY TO ANY BUYER OF THE CONSIGNED GOODS RELATING TO OR ARISING FROM AN ALLEGED DEFECT IN THE TITLE, EXCEPT TO THE EXTENT THAT SUCH DEFECT IS CAUSE BY OR ARISES BY, THROUGH OR UNDER NRI.   The provisions of this Paragraph 8 shall survive the transactions covered by this Agreement.

**9.     Limitation of Liability.**

a.     NRI shall have risk of loss with respect to the Goods at all times after receipt at the Receipt Point and while under its care, custody and control.  During all such times, NRI shall insure the Goods for their liquidation value as set forth in Section 3(c) of this Agreement.  In the event of any casualty loss to the Goods while in NRI's custody, Consignor shall receive 60 percent of the insurance proceeds and NRI shall receive 40 percent of the insurance proceeds.

b.     IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES, INCLUDING WITHOUT LIMITATION, BUSINESS INTERRUPTION, DAMAGES FOR LOSS OF PROFITS, INCURRED BY THE OTHER PARTY ARISING OUT OF THE SERVICES PROVIDED UNDER THIS AGREEMENT,

EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

10.    **[Intentionally Deleted]**

11.    **Term.**  This Agreement is effective as of the Effective Date and shall continue for a period of twenty-four (24) months thereafter (the "***Term***").

12.    **Independent Contractor.**  NRI is, and shall remain, an independent contractor selling to third-party buyers the Consigned Goods. Nothing contained in this Agreement will be deemed to create any association, partnership, joint venture, or relationship of principal and agent between the parties.

13.    **Assignment.**  Neither party shall assign this Agreement, or any rights or obligation hereunder without the prior written consent of the other party and any attempted assignment shall be void and of no effect.

14.    **Events of Default**.  Notwithstanding any other provision of this Agreement, an event of default (an "***Event of Default***") shall be deemed to occur with respect to a party when:

   a.   Such party fails to make payment when due under this Agreement and such failure is not cured within five (5) days of receipt of written notice of nonpayment.

   b.   Other than a Default described in Sections 14(a) and (c), such party fails to perform any obligation or covenant to the other party under this Agreement, which failure is not cured to the satisfaction of the other party (in its sole discretion) within fifteen (15) business days from the date that such party receives written notice that corrective action is needed.

   c.   Such party breaches any material representation or material warranty made or repeated or deemed to have been made or repeated in this Agreement by such party, or any warranty or representation in this Agreement proves to have been incorrect or misleading in any material respect when made or repeated or deemed to have been made or repeated under this Agreement; *provided, however*, that if such breach is curable, it is only an Event of Default if such breach is not cured to the reasonable satisfaction of the other party (in its sole discretion) within ten (10) business days from the date that such party receives notice that corrective action is needed.

   d.   Such party (i) is dissolved, other than pursuant to a consolidation, amalgamation or merger, (ii) becomes insolvent or is unable to pay its debts or fails or admits in writing its inability generally to pay its debts as they become due, (iii) makes a general assignment, arrangement or composition with or for the benefit of its creditors, or (iv) institutes or has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law bankrupt.

15.    **Remedies**.  Notwithstanding any other provision of this Agreement, upon the occurrence of an Event of Default with respect to either party (the "***Defaulting Party***"), the other party (the "***Performing Party***") shall in its sole discretion, in addition to all other remedies available to it and without incurring any liabilities to the Defaulting Party or to third parties, be entitled to do one or more of the following: (a) suspend its performance under this Agreement without prior notice to the Defaulting Party, (b) proceed against the Defaulting Party for damages occasioned by the Defaulting Party's failure to perform, and (c) upon one (1) business day's notice to the Defaulting Party, terminate this Agreement. Notwithstanding the foregoing, in the case of an Event of Default described in Section

14(d), no prior notice shall be required. If NRI is the Defaulting Party and such default is material, Consignor shall have the right to enter NRI's Premises and remove all of its Goods.

16.     **Obligations upon Termination.**  If any Goods remain unsold at the expiration of this Agreement, Consignor shall, at its sole option, (i) instruct NRI to liquidate the remaining Goods pursuant to <u>Section 4(b)</u> at liquidation value with the parties to share the proceeds in accordance with <u>Section 4(b)</u> of this Agreement,  (ii) request that the remaining Goods be shipped back to Consignor's refinery, at Consignor's sole cost and expense, or (iii) dispose of the Goods for scrap value, all of the proceeds of which shall be for Consignor's account.  Consignor shall have no obligation to pay NRI any Commission with respect to any Goods returned to Consignor at the expiration of this Agreement or sold for scrap value.

17.     **Notices.**  Except as otherwise specifically provided, any notice required or permitted to be given under this Agreement shall be in writing and (i) delivered in person, which delivery the recipient agrees to acknowledge in writing; (ii) transmitted by e-mail with a confirming copy delivered on the next business day by a nationally recognized overnight courier service; (iii) deposited in the United States postal service mail (or, if outside the United States, such other country's postal service mail) postage fee prepaid, for mailing by first-class, registered or certified mail or (iv) sent by a nationally recognized overnight courier service, addressed as follows:

If to Consignor:
Director, Supply Chain Management
1 Estate Hope
Christiansted, U.S. Virgin Islands 00820-5652
Email: mmagill@lbenergy.com

With a copy to (which shall not constitute notice):

General Counsel
1 Estate Hope
Christiansted, U.S. Virgin Islands 00820-5652
Email: generalcounsel@lbenergy.com

If to NRI:

NRI Industrial Sales LLC
6401 Rogers Road
Delta, OH 43515
Attention:  Saif Syed
Title:  Vice President of Operations
E-Mail:  saif@nri-isd.com

18.     **Governing Law.**  The Agreement shall be construed and enforced in accordance with the laws of the State of Delaware, without reference to or inclusion of the principles of choice of law or conflicts of law of that jurisdiction.  Each party irrevocably agrees that any legal action, suit or proceeding brought by it in any way arising out of the Agreement must be brought solely and exclusively in any federal or state courts of the State of Delaware, and irrevocably accepts and submits to the sole and exclusive jurisdiction of each of the aforesaid courts in persona, generally and unconditionally with respect to any action, suit or proceeding in any way arising out of the Agreement brought by it or against it by the other party.  Each party hereto further irrevocably consents to the service of process from

any of the aforesaid courts by mailing copies thereof by registered or certified mail, postage prepaid, to its address designated pursuant to the Agreement.   To the fullest extent permitted by applicable law, each party waives its right to a trial by jury.

19.     **Severability.**  If any provision of this Agreement shall be held to be illegal, invalid or unenforceable under present or future laws, such provisions shall be fully severable, this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement; and, the remaining provisions of this Agreement shall remain in full force and effect.

20.     **Entire Agreement; Amendment.**  This Agreement is the final, complete and exclusive agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior or contemporaneous representations, discussions, proposals, negotiations, conditions, communications and agreements, whether written or oral, between the parties relating to the subject matter hereof and all past courses of dealing or industry custom. No modification of or amendment to this Agreement shall be effective unless in writing and signed by each of the parties.

21.     **Waiver.**  The waiver by either party of a breach of or a default under any provision of this Agreement shall not be effective unless in writing and shall not be construed as a waiver of any subsequent breach of or default under the same or any other provision of this Agreement, nor shall any delay or omission on the part of either party to exercise or avail itself of any right or remedy that it has or may have hereunder operate as a waiver of any right or remedy.

22.     **Captions.**  The headings used in this Agreement are for convenience only and shall not be used to limit or construe the contents of any of the sections of this Agreement.

23.     **Counterparts**.  This Agreement may be signed in several counterparts, each of which shall be deemed an original and all such counterparts together shall constitute one and the same instrument.   Delivery of an executed counterpart of a signature page of this Agreement electronically (including by fax, email or PDF) shall be effective as delivery of a manually executed counterpart of this Agreement.

24.     **Force Majeure**.  No party shall be liable or responsible to the other party, nor be deemed to have defaulted under or breached this Agreement, for any failure or delay in fulfilling or performing any term of this Agreement, when and to the extent such failure or delay is caused by or results from acts beyond the impacted party's ("**Impacted Party**") reasonable control, including, without limitation, the following force majeure events: (a) acts of God; (b) flood, fire, earthquake, or explosion; (c) war, invasion, hostilities (whether war is declared or not), terrorist threats or acts, riot or other civil unrest; (d) government order, law, or actions; (e) embargoes or blockades in effect on or after the date of this Agreement; (f) national or regional emergency; (g) strikes, labor stoppages or slowdowns, or other industrial disturbances; (h) shortage of adequate power or transportation facilities; and (i) other similar events beyond the reasonable control of the Impacted Party.   A party's performance hereunder shall be excused only if the Impacted Party gives the other party prompt written notice of such event and its expected duration and impact.   The Impacted Party shall also give the other party prompt written notice when such event has ended.

25.     **Interpretation**.  For purposes of this Agreement, (a) the word "dollars" shall mean United States dollars; (b) the words "include," "includes," and "including" are deemed to be followed by the words "without limitation"; (c) the word "or" is not exclusive; and (d) the words "herein," "hereof," "hereby," "hereto," and "hereunder" refer to this Agreement as a whole. Unless the context otherwise requires, references herein: (x) to sections, schedules,

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2510 of 2637
2510
Case 21-32351   Document 701-3   Filed in TXSB on 10/29/21   Page 11 of 47

and exhibits mean the sections of, and schedules and exhibits attached to, this Agreement; (y) to an agreement, instrument, or other document means such agreement, instrument, or other document as amended, supplemented, and modified from time to time to the extent permitted by the provisions thereof; and (z) to a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder. This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted. The schedules and exhibits referred to herein shall be construed with, and as an integral part of, this Agreement to the same extent as if they were set forth verbatim herein.

[Signature Page to Follow]

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2511 of 2637
Case 21-32351   Document 701-3   Filed in TXSB on 10/29/21   Page 12 of 47
2511

**IN WITNESS WHEREOF**, the parties have signed this Agreement as of the date first set forth above.

**NRI Industrial Sales LLC.**
("NRI")

By: _____

Print Name: ___Derrill Meyer___

Title: _Vice President, NRI Industrial Sales_

**Limetree Bay Refining, LLC**
("Consignor")

By: _____

Print Name: _MICHAEL F. MAGILL_

Title: _DIRECTOR, SUPPLY CHAIN MANAGEMENT_

**THE LIST OF GOODS ATTACHED TO THE NRI MOTION IS VOLUMINOUS AND CAN BE FOUND AT DOCKET NO. 701-3**

# EXHIBIT 8

| | $ Amt. | Comments |
|---|---|---|
| **Buildings** | | |
| Village/ Man Camp | $92,515,380 | |
| | **$92,515,380** | |
| | | |
| **Power Assets** | | |
| Turbine Generators & Boilers | TBD | |
| | **$0** | |
| | | |
| **Rolling Stock & Equipment** | | |
| Vehicles | $3,823,822 | |
| Cranes | TBD | |
| Equipment | $10,597,871 | |
| | **$14,421,693** | |
| | | |
| **INVENTORY** | | |
| Consigned with NRI | $45,458,919 | |
| Spares in Restart Warehouse | $7,957,040 | |
| Main Warehouse | $23,486,594 | Purchase value for items purchased 2018-2021 (in-stock) |
| Main Warehouse - Estimate for line items booked at <$.01 | $58,003,740 | Purchase value on 09/20/2012 for existing inventory |
| Savage Warehouse | $1,956,357 | |
| | **$136,862,650** | |
| | | |
| **Total Assets:** | **$243,799,723** | |

# EXHIBIT 9



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION 2
290 BROADWAY
NEW YORK, NY 10007-1866

September 24, 2021

***Via* Electronic Mail**
All Potential Buyers of Limetree Bay Refinery
c/o Elizabeth A. Green
egreen@bakerlaw.com

Re:     Environmental information about the Limetree Bay Refinery; *In re Limetree Bay Services, LLC, et al.*, Case No. 21-32351, pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

The United States Environmental Protection Agency ("EPA") provides this letter to potential buyers of the Limetree Bay Refinery in an attempt to provide a common base of information for all potential bidders and minimize the risk of misunderstanding or surprise.  This letter is merely informational, and buyers should not interpret it as designed to either encourage or discourage a sale or any particular use of the facility.  This letter is not intended to be nor should be read as an exhaustive list of environmental compliance, permitting, or liability issues related to the debtors or the refinery.

Limetree Bay Terminals, LLC, and Limetree Bay Refining, LLC (jointly, "Limetree Bay") are also subject to requirements contained in environmental permits issued by EPA and the Virgin Islands Department of Planning and Natural Resources ("VIDPNR"), including Prevention of Significant Deterioration permits issued by the EPA and a Clean Air Act Title V operating permit issued by VIDPNR.  Any potential purchaser of the facility will have to perform its own environmental due diligence, and any entity that becomes an owner/operator of the refinery will have to employ environmental compliance staff who maintain familiarity with all applicable environmental requirements and ensure that the refinery is operated in compliance with applicable law.

I.      **Audit Reports**

The EPA issued an emergency order on May 14, 2021, requiring the refinery to cease operations for sixty days.  This order also required the debtors to retain independent third-party auditors to conduct an environmental compliance audit and process area audits.

The debtors have obtained (a) an environmental compliance audit report, and (b) process area audits of (1) the flare system, (2) the amine unit and sulfur recovery unit system, and (3) the delayed coker system.  The EPA sent a letter to the debtors on July 28, 2021, concerning the environmental compliance audit report, and therein referenced a letter the EPA had sent to the debtors on June 9, 2021.

These audits and letters detail compliance issues under environmental law of which potential buyers should be aware.  The EPA recommends that any buyer review these documents.

## II.      2021 Complaint and Joint Stipulation

On July 12, 2021, the United States filed suit against Limetree Bay in the United States District Court for the Virgin Islands, for injunctive relief for compliance with environmental law.  Case No. 1:21-cv-264.  On the same day, the United States filed with the court a joint stipulation with Limetree Bay.

The joint stipulation requires Limetree Bay, among other things, to:

(a)      Submit a plan for purging hydrocarbons from the refinery to bring the refinery to an indefinite state of shutdown, including operation of ambient air monitors during the purging process;[1]

(b)      Conduct the purging process in accordance with the EPA-approved Hydrocarbon Purge Plan, subject to any modification necessary, and not begin purging without the EPA's approval;

(c)      Except as otherwise provided in the stipulation, at least ninety days before restarting the refinery or any refinery process unit:

(1)      Notify both the presiding court and the United States,
(2)      Submit the Corrective Action Plan required by the May 14 order to the EPA.  The plan must specify which measures must be completed before restarting the refinery or a refinery process unit, and
(3)      Submit an ambient air monitoring plan to the EPA that includes operation of hydrogen sulfide ($H_2S$) and sulfur dioxide ($SO_2$) monitors at nine EPA-identified monitoring sites;

(d)      Except as otherwise provided in the stipulation, at least thirty days before restarting the refinery or any refinery process unit, install and operate the nine ambient air monitoring sites plus a meteorological tower; and

(e)      Before restarting the refinery or any refinery process unit, complete all measures necessary to eliminate any imminent and substantial endangerment to public health or welfare or the environment.

## III.      2011 Consent Decree

On January 26, 2011, the United States and the United States Virgin Islands filed suit against HOVENSA in the United States District Court for the Virgin Islands seeking injunctive relief and civil penalties for alleged violations of the Clean Air Act, 42 U.S.C. §§ 7401-7671, and the Virgin Islands Air Pollution Control Act.  In conjunction with the filing of the complaint, the United States lodged a consent decree resolving the claims alleged in the complaint.  The court entered the consent decree on June 7, 2011. The claims addressed in the 2011 consent decree included alleged violations of the Clean Air Act and its

---

[1] Limetree has submitted to EPA, and EPA has approved, Phases 1 and 2 of the Hydrocarbon Purge Plan. Information about Phases 1 and 2 can be found on the EPA website at https://www.epa.gov/vi/limetree-bay-terminals-and-limetree-bay-refining-llc.  Limetree has indicated that it expects to provide at least one additional plan (Phase 3) to EPA for hydrocarbon purging, and that additional phases after Phase 3 may be necessary to fully complete the purging process.

implementing regulations, including prevention of significant deterioration provisions, the New Source Performance Standards ("NSPS"),  leak detection and repair ("LDAR") provisions for equipment leaks, and National Emission Standards for Hazardous Air Pollutants for benzene waste operations provisions. The 2011 consent decree required HOVENSA to: reduce nitrogen oxide ("NO$_x$") emissions and control SO$_2$, particulate matter ("PM"), and carbon monoxide ("CO") emissions from the refinery's fluid catalytic cracking unit; significantly reduce NO$_x$ emissions from the refinery's heaters, boilers, generating turbines, and compressor engines through the installation of pollution control equipment; reduce SO$_2$ emissions by burning lower sulfur fuel oil and complying with H$_2$S limits for fuel gas combustion requirements for heaters, boilers, flares, and sulfur recovery plants; comply with regulatory requirements for acid gas and hydrocarbon flaring, and implement a program to investigate and correct the causes of flaring incidents and take preventive action; create a preventive maintenance and operation plan for minimizing SO$_2$ emissions from the sulfur recovery plant; reduce emissions of volatile organic compounds ("VOCs") through stricter LDAR requirements for equipment leaks and by replacing valves that are leaking above a specified level with low emissions valves or low emissions valve packing; and reduce emissions of benzene by improving management of benzene waste streams.  The 2011 consent decree also required HOVENSA to pay $5,375,000 in civil penalties and deposit $4,875,000 into an escrow account to be used to implement Territorial Supplemental Environmental Projects.

## IV.    Modification of 2011 Consent Decree

On August 25, 2020, the United States lodged the proposed First Modification of the Consent Decree with the court.  The first modification was subject to a thirty day public comment period.  After reviewing and responding to public comments, the United States filed a motion to enter the First Modification of the Consent Decree on April 26, 2021.  The motion to enter is still pending before the court.  A second, non-material modification of the consent decree that does not require court approval was also submitted to the court on April 26, 2021.

The First Modification adds Limetree Bay and the Environmental Response Trust ("ERT") as parties to the consent decree and transfers uncompleted or ongoing decree responsibilities to Limetree Bay and the ERT, such that Limetree Bay and the ERT effectively step into the shoes of HOVENSA, and HOVENSA is released from its decree obligations and liabilities as of the date of entry of the First Modification.  The First Modification also modifies the following deadlines and injunctive relief obligations to reflect the changed operational realities of the refinery: (1) briefly extends the deadline for Limetree Bay to install Qualifying Controls and apply for emission limits from the appropriate permitting authority sufficient to achieve 3,663 tons per year of NO$_x$ emission reductions; (2) modifies the language to reflect the current configuration of the East Side sulfur recovery plant ("SRP") and extends the deadline for installing control technology to control the sulfur emissions from the East Side SRP and comply with NSPS Subparts A and Ja; (3) modifies the requirement to install and operate flare gas recovery systems ("FGRS") on certain flares in order to comply with NSPS Subpart Ja and potentially requires Limetree Bay to perform mitigation projects if emissions exceed a specified level.  Specifically, because the operational profile of the refinery is now significantly different as compared to when the consent decree was entered into in 2011, the First Modification conditions the installation of FGRS on the refinery's flaring emission levels after restart (as defined in the First Modification); providing that FGRS is not required if flaring emissions remain below specified gas flow rates, but requiring Limetree Bay to install and operate FGRS if the specified gas flow rates are exceeded[2], thereby ensuring the expected emission

---

[2] On April 13, 2021, Limetree Bay submitted a letter to EPA acknowledging that it had exceeded the specified gas flow rates, requiring Limetree Bay to install and operate FGRS on the FCCU Low Pressure Flare (Flare 8) by March 14, 2023.

reduction benefits that were required by the 2011 consent decree are obtained while taking into account the modified operating profile of the refinery; (4) modifies Section V.P (Benzene Waste NESHAP Program) to reflect that HOVENSA selected the 6 BQ compliance option set forth in 40 C.F.R. § 61.342(e), and that Limetree Bay has agreed to redo the one-time review and verification of the refinery's total annual benzene ("TAB") report following restart; (5) modifies Section V.R (LDAR Program) to make the terms consistent with the more recent LDAR regulations, including lower leak definitions, to ensure that a minimum of three audits will be conducted before the decree is terminated, and to update the Valve Preventative Leak Maintenance Program; (6) modifies Section VIII.B (NSPS Applicability: Boilers and Generating Turbines) to extend the deadline for demonstrating compliance with NSPS Subparts A and GG at GT-4, GT-7, and GT-8, and to reflect that Limetree Bay has installed combustion liner systems on GT-7 and GT-8 to reduce $NO_x$ emissions, and to operate at lower maximum load limits on GT-4, GT-7, and GT-8 until Limetree Bay demonstrates compliance with NSPS Subparts A and GG; (7) modifies Section IX.A (Territorial Supplemental Environmental Project) to reflect the transfer of HOVENSA's obligation to disburse monies for the Territorial Supplemental Environmental Project to the ERT; and (8) modifies Section IX.B (Additional Work) to reflect that HOVENSA's remaining obligations for the VIWAPA Emissions Monitoring Assistance Program were transferred to the ERT [First Modification ¶ 140A].

The consent decree conditions any transfer on the transferee executing a modification of the consent decree which makes the terms and conditions applicable to the transferee.

**V.       Prevention of Significant Deterioration Permit**

A prospective purchaser may also be required to obtain a Prevention of Significant Deterioration ("PSD") permit under the Clean Air Act to restart the refinery.  42 U.S.C. § 7475; 40 C.F.R. § 52.21.

A PSD permit is required to construct any new "major stationary source" of air pollutants, as defined by 40 C.F.R. § 52.21(b)(1), or to make a "major modification" to any existing major stationary source, as defined by 40 C.F.R. § 52.21(a)(2)(iii).  *See* 40 C.F.R. § 52.21(b)(2).  EPA has required PSD permits for restarting long-dormant facilities that qualify as major stationary sources because this action can qualify as either the construction of a new source or a major modification of an existing one.  PSD permits must include emission limits that constitute the Best Available Control Technology ("BACT") to minimize the emission of regulated pollutants.  42 U.S.C. §§ 7475(a)(4) and 7479(3); 40 C.F.R. § 52.21(b)(12), (j)(2)-(3).

PSD permitting is factually-driven.  If the refinery is required to obtain a PSD permit, the permit will require BACT to be installed and operational prior to restart of the refinery.

**VI.      Additional Clean Air Act Requirements**

As described in its complaint referenced in Section II, above, EPA has concerns about incidents of excess release of $H_2S$ and $SO_2$. The refinery must adhere to the $H_2S$ input gas concentration limit specified in 40 C.F.R. § 60.103a(h) and the refinery's Title V operating permit of (a) 162 parts per million volume, determined hourly on a 3-hour rolling average basis, for Flare #8 and the East Mix Drum Fuel Gas System, and (b) 75 parts per million volume at the Coker Mix Drum Fuel Gas System.  During incidents where emissions exceed the 500-lb. $SO_2$ threshold in a twenty-four hour period, the refinery is also subject to requirements in 40 C.F.R. Part 60, Subpart Ja.  Subpart Ja requires a regulated entity to conduct a root cause and corrective action analysis whenever $SO_2$ emissions from a flare exceed the 500-lb/day threshold.

The Environmental Compliance Audit Report and the Flare Systems Audit Report also identified a number of compliance issues related to Clean Air Act Risk Management Program (RMP) requirements, such as requirements relating to Process Safety Information, Process Hazard Analysis, Operating Procedures, and Training.  Potential issues in these RMP elements are intended to be captured during Prestartup Review, prior to introducing a regulated RMP substance to a process.  The recent release events at the refinery indicate potential failure of one or more RMP elements.  A new owner or operator would be responsible for ensuring that all RMP requirements are implemented and that the interconnections between the program elements have been characterized to ensure compliance.  Attention to Process Safety Information and Mechanical Integrity program elements, especially as they pertain to the safe design and maintenance of process areas in accordance with recognized and generally accepted good engineering practices, will be important for any future owner/operator of the refinery as they evaluate conformance with Prestartup Review and other program elements.

Prospective purchasers should evaluate the need for modifications to the facility's Title V operating permit under the Clean Air Act.

Finally, the EPA's Petroleum Refinery Sector Rule, NESHAP Subpart CC, requires, among other things, that oil refineries conduct fence line monitoring for benzene and that the annual average benzene emissions stay below 9 $\mu g/m^3$.  Any purchaser will need to ensure compliance with this requirement.

## VII.    Resource Conservation and Recovery Act

The Environmental Response Trust is addressing legacy contamination at the facility, in part with funding from Limetree Bay Terminals.  The trust is remediating contamination from HOVENSA's operations pursuant to a federal permit issued by EPA under the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6901, *et seq.*, under the oversight of EPA.  While the legacy contamination includes impacted groundwater subject to remediation under the permit, new contamination tied to refinery and/or terminal operations is not covered by the RCRA permit.  According to the ERT, new (non-legacy) contamination has been detected in the groundwater.  The ERT and Limetree Bay are working to gather and analyze data to determine whether the refinery, terminal, or both caused the release(s) resulting in the new contamination.  Any future refinery owner will be obligated under RCRA to remediate contamination on or migrating from the property it acquires.  A future owner subject to such obligations may seek contribution and/or cost recovery from any liable third party to the extent allowed by law, and may propose to reach an understanding, or enter into an agreement, with the federal and/or local government concerning such obligations.

## VIII.    Clean Water Act

On August 13, 2021, the EPA sent a letter to Limetree Bay notifying them of potential violations of Sections 301(a), 308, and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a), 1318(a) and 1342, and providing them with a copy of EPA's inspection report.  A purchaser of the refinery will need to comply with the Clean Water Act, including by correcting any violations that are ongoing at the time of the transfer.

IX.     **Additional Matters**

As previously stated, any prospective purchaser should carry out its own due diligence concerning potential environmental liabilities and obligations.  EPA has not performed a comprehensive environmental compliance review of the refinery facility, and EPA does not represent that the information contained in this letter identifies all environmental violations that a new owner would have to address, nor all environmental obligations for which a new owner would be responsible.

Sincerely,

DORE LAPOSTA

Digitally signed by DORE LAPOSTA
Date: 2021.09.24
17:02:31 -04'00'

Dore LaPosta, Director
Enforcement and Compliance Assurance Division

# EXHIBIT 10

## Hughes, Patrick

| | |
|---|---|
| **From:** | Bobby Salehi <Bobby.Salehi@lonestarports.com> |
| **Sent:** | Tuesday, November 2, 2021 6:05 PM |
| **To:** | Mark Shapiro; Frank Cottrell |
| **Cc:** | Lawrence Berry; Dennis Berry; Berry Marvin; Tonja Fulghum; Peter Wisniewski; Butch Boyd; McDonald, Bill; Wyrick, Martha; Hughes, Patrick |
| **Subject:** | Bay Limited - Bid Transmittal Letter, Revised APA, etc. |
| **Attachments:** | Limetree Bay - Bay Ltd. Bid Transmittal Letter 4893-3567-9233_2 (002) (002).pdf; Limetree Bay - Form of Asset Purchase Agreement, 4817-5780-1210_5.doc; Redline to Form APA.pdf; Schedule 1.2(a) to APA, 4882-5715-8145_2.docx; Schedule 1.2(c) to APA; LBR Consolidated Asset Details 10.21.2021.pdf |

**EXTERNAL:** Sent from outside Haynes and Boone, LLP

Mark/Frank –

Please see attached for the following attachments:
1. Bid Transmittal Letter in PDF
2. Revised Asset Purchase Agreement ("APA") in Word
3. Redline to the original Form APA in PDF
4. Two Schedules referenced in the APA (Schedule 1.2(a) in Word and Schedule 1.2(c) in PDF)

Please note that we will be sending a series of follow-up emails tomorrow that will include the remaining Schedules.

We look forward to discussing this with you tomorrow.

Best regards,

Bobby Salehi
Lone Star Ports
Chief Financial Officer
Office: (713) 623-2412
Cell: (832) 279-4814

< CONFIDENTIALITY NOTICE >

The information contained in this transmission is intended only for the person or entity to which it is addressed and may contain confidential, trade secret and/or privileged material. If you are not the intended recipient of this information, do not review, retransmit, disclose, disseminate, use, or take any action in reliance upon, this information. If you received this transmission in error, please contact the sender and destroy all printed copies and delete the material from all computers.

# EXHIBIT 11

**From:** Frank Cottrell <fcottrell@brileyfin.com>
**Sent:** Wednesday, November 10, 2021 4:22 PM
**To:** Hughes, Patrick <Patrick.Hughes@haynesboone.com>; Rose, Jorian L. <jrose@bakerlaw.com>; Green, Elizabeth A. <egreen@bakerlaw.com>; Mark Shapiro <mshapiro@brileyfin.com>; Delaney, Michael T. <mdelaney@bakerlaw.com>; Esmont, Joseph M. <jesmont@bakerlaw.com>
**Cc:** McDonald, Bill <Bill.McDonald@haynesboone.com>; Wyrick, Martha <Martha.Wyrick@haynesboone.com>
**Subject:** RE: Limetree Bay Pushes Out Auction 3 Days to Nov. 15--Auction, lead bid etc

---

**EXTERNAL:** Sent from outside Haynes and Boone, LLP

---

Pat,

Copying @Delaney, Michael T. and @Esmont, Joseph M. who I am meeting w/ this evening to discuss APA's.

Re: addl. categories, we are referencing catalyst and man camp – both items discussed at length w/ your commercial team and they have been aware we are courting specialized groups interested in these.

With everything submitted up to this time, doesn't look like we'll be designating a stalker on this and the procedures don't require sharing non-stalker APA's.

Definitely trying to be in position Sunday as opposed to Monday morning,



**Frank D. Cottrell**
Director

**Email:** fcottrell@brileyfin.com
**Direct:** (713) 226-4723
**Mobile:** (281) 725-8923

4400 Post Oak Pkwy, Suite 1400
Houston, TX 77027

VCard

www.brileyfin.com
NASDAQ: RILY

1

# EXHIBIT 12

## Hughes, Patrick

| | |
|---|---|
| **From:** | Esmont, Joseph M. <jesmont@bakerlaw.com> |
| **Sent:** | Sunday, November 14, 2021 4:03 PM |
| **To:** | Frank Cottrell; Hughes, Patrick; Rose, Jorian L.; Green, Elizabeth A.; Mark Shapiro; Delaney, Michael T. |
| **Cc:** | McDonald, Bill; Wyrick, Martha |
| **Subject:** | RE: Limetree Bay Pushes Out Auction 3 Days to Nov. 15--Auction, lead bid etc |
| **Attachments:** | Limetree Bay - Revised Form of APA - BH Draft.docx |

---

**EXTERNAL:** Sent from outside Haynes and Boone, LLP

---

Pat,

Revised draft APA attached, which is still subject to our comments. I'm having some issues with my redlining software but one will follow shortly.

---

**From:** Frank Cottrell <fcottrell@brileyfin.com>
**Sent:** Friday, November 12, 2021 11:49 AM
**To:** Hughes, Patrick <Patrick.Hughes@haynesboone.com>; Rose, Jorian L. <jrose@bakerlaw.com>; Green, Elizabeth A. <egreen@bakerlaw.com>; Mark Shapiro <mshapiro@brileyfin.com>; Delaney, Michael T. <mdelaney@bakerlaw.com>; Esmont, Joseph M. <jesmont@bakerlaw.com>
**Cc:** McDonald, Bill <Bill.McDonald@haynesboone.com>; Wyrick, Martha <Martha.Wyrick@haynesboone.com>
**Subject:** RE: Limetree Bay Pushes Out Auction 3 Days to Nov. 15--Auction, lead bid etc

[External Email: Use caution when clicking on links or opening attachments.]

Pat,

As committed to in hearing, we'll post the lead bid - still moving right now.



www.brileyfin.com
NASDAQ: RILY



**Frank D. Cottrell**
Director

**Email:** fcottrell@brileyfin.com
**Direct:** (713) 226-4723
**Mobile:** (281) 725-8923

4400 Post Oak Pkwy, Suite 1400
Houston, TX 77027

VCard

1



©2021 Fortune Media IP Limited. All rights reserved. Used under license.

PLEASE VISIT <https://brileyfin.com/disclosures/> FOR LEGAL DISCLOSURES.

**From:** Hughes, Patrick <Patrick.Hughes@haynesboone.com>
**Sent:** Thursday, November 11, 2021 4:36 PM
**To:** Frank Cottrell <fcottrell@brileyfin.com>; Rose, Jorian L. <jrose@bakerlaw.com>; Green, Elizabeth A. <egreen@bakerlaw.com>; Mark Shapiro <mshapiro@brileyfin.com>; Delaney, Michael T. <mdelaney@bakerlaw.com>; Esmont, Joseph M. <jesmont@bakerlaw.com>
**Cc:** McDonald, Bill <Bill.McDonald@haynesboone.com>; Wyrick, Martha <Martha.Wyrick@haynesboone.com>
**Subject:** RE: Limetree Bay Pushes Out Auction 3 Days to Nov. 15--Auction, lead bid etc

**[EXTERNAL]**
Will a lead bid be noticed?  Have not seen on the docket.  I have some contested hearings Monday afternoon and a deposition to handle Tuesday so trying to coordinate as I can if the auction drags Monday or gets pushed a day or 2.  Thanks.

## HAYNES BOONE

**Patrick L. Hughes** | Partner
patrick.hughes@haynesboone.com | (t) +1 713.547.2550 (m) +1 832.722.8210

**From:** Frank Cottrell <fcottrell@brileyfin.com>
**Sent:** Wednesday, November 10, 2021 3:22 PM
**To:** Hughes, Patrick <Patrick.Hughes@haynesboone.com>; Rose, Jorian L. <jrose@bakerlaw.com>; Green, Elizabeth A. <egreen@bakerlaw.com>; Mark Shapiro <mshapiro@brileyfin.com>; Delaney, Michael T. <mdelaney@bakerlaw.com>; Esmont, Joseph M. <jesmont@bakerlaw.com>
**Cc:** McDonald, Bill <Bill.McDonald@haynesboone.com>; Wyrick, Martha <Martha.Wyrick@haynesboone.com>
**Subject:** RE: Limetree Bay Pushes Out Auction 3 Days to Nov. 15--Auction, lead bid etc

**EXTERNAL:** Sent from outside Haynes and Boone, LLP

Pat,

Copying @Delaney, Michael T. and @Esmont, Joseph M. who I am meeting w/ this evening to discuss APA's.

Re: addl. categories, we are referencing catalyst and man camp – both items discussed at length w/ your commercial team and they have been aware we are courting specialized groups interested in these.

With everything submitted up to this time, doesn't look like we'll be designating a stalker on this and the procedures don't require sharing non-stalker APA's.

Definitely trying to be in position Sunday as opposed to Monday morning,



**Frank D. Cottrell**
Director

**Email:** fcottrell@brileyfin.com
**Direct:** (713) 226-4723
**Mobile:** (281) 725-8923

4400 Post Oak Pkwy, Suite 1400
Houston, TX 77027

VCard

www.brileyfin.com
**NASDAQ: RILY**





©2021 Fortune Media IP Limited. All rights reserved. Used under license.

PLEASE VISIT <https://brileyfin.com/disclosures/> FOR LEGAL DISCLOSURES.

**From:** Hughes, Patrick <Patrick.Hughes@haynesboone.com>
**Sent:** Wednesday, November 10, 2021 2:46 PM
**To:** Rose, Jorian L. <jrose@bakerlaw.com>; Green, Elizabeth A. <egreen@bakerlaw.com>; Mark Shapiro <mshapiro@brileyfin.com>; Frank Cottrell <fcottrell@brileyfin.com>
**Cc:** McDonald, Bill <Bill.McDonald@haynesboone.com>; Wyrick, Martha <Martha.Wyrick@haynesboone.com>
**Subject:** FW: Limetree Bay Pushes Out Auction 3 Days to Nov. 15--Auction, lead bid etc

**[EXTERNAL]**
LBT team—know there is a lot going on.  We have not had engagement on the specifics of the PSA but also wanted to understand the process since the auction is next Monday.

-Bidder categories?  Jimmy mentioned in the hearing there were 2 going concern and several liquidation bidders.  In order for bidders to understand what they are bidding against, are you contemplating 22 categories and do you plan to share the lead bid PSAs in advance?

-Deposit.  We have requested stalker status in our bid.  If not the case please let me know so we can decide on sending the bid deposit tomorrow.

-Auction rules.  Presume you all are working on them, but will they be emailed out Sunday or are you expecting to share Monday morning?

Thanks.

**HAYNES BOONE**

**Patrick L. Hughes** | Partner
patrick.hughes@haynesboone.com | (t) +1 713.547.2550 (m) +1 832.722.8210

**From:** Hughes, Patrick <Patrick.Hughes@haynesboone.com>
**Sent:** Wednesday, November 10, 2021 10:08 AM
**To:** Berry, Lawrence <alb@riverway.us>; Boyd, Butch <butchboyd@butchboydlawfirm.com>; Fulghum, Tonja
<tfulghum@riverway.us>; Hughes, Patrick <Patrick.Hughes@haynesboone.com>; McDonald, Bill
<Bill.McDonald@haynesboone.com>; Salehi, Bobby <Bobby.Salehi@lonestarports.com>; Stone, Jeremy
<jeremystone@butchboydlawfirm.com>; Wisniewski, Peter <pwisniewski@riverway.us>; Wyrick, Martha
<Martha.Wyrick@haynesboone.com>
**Subject:** Limetree Bay Pushes Out Auction 3 Days to Nov. 15--FYI as just filed


CONFIDENTIALITY NOTICE: This electronic mail transmission is confidential,
may be privileged and should be read or retained only by the intended
recipient. If you have received this transmission in error, please
immediately notify the sender and delete it from your system.

PLEASE VISIT <https://brileyfin.com/disclosures/> FOR LEGAL DISCLOSURES.


CONFIDENTIALITY NOTICE: This electronic mail transmission is confidential,
may be privileged and should be read or retained only by the intended
recipient. If you have received this transmission in error, please
immediately notify the sender and delete it from your system.

PLEASE VISIT <https://brileyfin.com/disclosures/> FOR LEGAL DISCLOSURES.


This email is intended only for the use of the party to which it is
addressed and may contain information that is privileged,
confidential, or protected by law. If you are not the intended
recipient you are hereby notified that any dissemination, copying
or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately
by replying to the message and deleting it from your computer.

Any tax advice in this email is for information purposes only. The content
of this email is limited to the matters specifically addressed herein
and may not contain a full description of all relevant facts or a
complete analysis of all relevant issues or authorities.

Internet communications are not assured to be secure or clear of
inaccuracies as information could be intercepted, corrupted, lost,
destroyed, arrive late or incomplete, or contain viruses. Therefore,
we do not accept responsibility for any errors or omissions that are
present in this email, or any attachment, that have arisen as a result
of e-mail transmission.

# EXHIBIT 13

**Audio Recording of Hearing Held on 11-15-21**

**[Filed at Docket No. 772]**

# EXHIBIT 14

**From:** Bobby Salehi <Bobby.Salehi@lonestarports.com>
**Sent:** Wednesday, November 17, 2021 4:33 PM
**To:** Frank Cottrell <fcottrell@brileyfin.com>; Mark Shapiro <mshapiro@brileyfin.com>; Project.COCONUT.Jr.2021 <Project.COCONUT.Jr.2021@jefferies.com>
**Cc:** Wyrick, Martha <Martha.Wyrick@haynesboone.com>; McDonald, Bill <Bill.McDonald@haynesboone.com>; Hughes, Patrick <Patrick.Hughes@haynesboone.com>; Lawrence Berry <alb@riverway.us>; Tonja Fulghum Riverway <tfulghum@riverway.us>; Butch Boyd <butchboyd@butchboydlawfirm.com>; Peter Wisniewski <pwisniewski@riverway.us>
**Subject:** Bay Ltd. Asset Purchase Agreement - Project Coconut 2021 - Limetree Bay Refinery

**EXTERNAL:** Sent from outside Haynes and Boone, LLP

B Riley / Jeffries Team –

Please see attached and the Google Drive link below for the Bay Ltd Asset Purchase Agreement ("APA") and corresponding schedules.

The attached documents include:
1. Our revised APA in Word format
2. Redlined APA in PDF format
3. An executed version of the APA in PDF format

Additionally, see hyperlink below for a list of our Schedules:

https://drive.google.com/drive/folders/1hwRnjK50jv-Imn9DChJtAufXbmAAUMTB?usp=sharing

Best regards,

Bobby Salehi
Lone Star Ports
Chief Financial Officer
Office: (713) 623-2412
Cell: (832) 279-4814

# EXHIBIT 15

**Transcript of Auction held on 11-18-21**

[Debtors have not yet provided despite request on 11/30/21]

# EXHIBIT 16



**For Immediate Release**
November 18, 2021
Media Spokesperson: Ashley D. Scotland
340-513-1895
ascotland@stcroixenergy.com

### ST. CROIX ENERGY, LLLP WINS AUCTION OF LIMETREE BAY REFINING ASSETS

ST. CROIX, USVI – St. Croix Energy (SCE) emerges as the top bidder at the modified Chapter 11 Bankruptcy proceedings for the Limetree Bay Refining Assets. According to Communications and Public Relations Director Ashley Scotland, "Emerging as the top bidder for the LBR asset is a good thing, however SCE continues to remain focused and steadfast on accomplishing the other milestones necessary for our company and the US Virgin Islands community to see a safe and environmentally conscious restart of the LBR facility."

SCE remains committed to working with the local and statutory environmental regulatory bodies, including the Department of Planning and Natural Resources (DPNR) and the Environmental Protection Agency (EPA) in creating a restart plan that will address safety and environmental concerns, while allowing our company the opportunity to operate and provide economic growth opportunities for all Virgin Islanders.

The St. Croix Energy group looks forward to more and new engagement with the local community in the coming weeks, as we begin to roll out our senior leadership team and expound on our new business plan for the facility. This team of experienced industry, business and environmental professionals will shepherd the Refinery through the transitional and restart phases, back to a fully safe, operational facility.

SCE seeks to operate as a sustainability driven and environmentally conscientious energy solutions provider, committed to responsible, values and science-based stewardship of the resources under our care. SCE partners continue to be interested in what is best for the territory and being good fiduciaries of the natural resources of the Virgin Islands, which is ultimately an environmentally safe restart and enhanced, wise-use of the property.

###

# EXHIBIT 17

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| LIMETREE BAY SERVICES, LLC, *et al.*,[1] | § | Case No. 21-32351 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

## THE TERMINAL ENTITIES' STATEMENT AND
## RESERVATION OF RIGHTS CONCERNING PROPOSED SALE
### [Relates to Docket No. 191]

The Terminal Entities[2] submit this statement and reservation of rights concerning the proposed sale (the "**Proposed Sale**") of substantially all of the assets of the above-captioned debtors and debtors in possession (the "**Debtors**") pursuant to the *Debtors Emergency Motion for Entry of Order: (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief* [Docket No. 191] and respectfully state as follows:

1.      The Terminal Entities welcome the Proposed Sale to St. Croix Energy, LLLP ("**SCE**"), or any other successful buyer, and stand ready to assist SCE or such other buyer in managing the transition and working to restart the Refinery.  The Terminal Entities have reached out to the Debtors and SCE on multiple occasions over the last month, both before and after the auction, to discuss how the Debtors and SCE intend to address the key provision of the Shared Services (as defined below) on a go-forward basis and the need to address such issues in a timely

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay  Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222).  The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX  77041.

[2] The Terminal Entities are: Limetree Bay Terminals, LLC ("**LBT**"), Limetree Bay Terminals Holdings, LLC, Limetree Bay Terminals Holdings II, LLC, Limetree Bay Cayman, Ltd., and Limetree Bay Financing, LLC.

EMF_US 87503615

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2540 of 2637
2540
Case 21-32351   Document 822   Filed in TXSB on 11/26/21   Page 2 of 4

fashion given the timeline for the Proposed Sale.  To date, the Terminal Entities have not received adequate information or engagement to address these issues.

2.       As the Court and other parties in interest are aware, the Terminal Entities supply critical services to the Debtors, including, but not limited to, power generation, wastewater treatment, lab facilities, administration buildings, and employee housing (the "**Shared Facilities**"). The Terminal Entities also currently provide a number of employees to the Debtors (the "**Shared Employees**")[3] and are named parties under certain of the governmental licenses, permits, and other authorizations required to operate the Debtors' and the Terminal Entities' assets (the "**Shared Permits**," and together with the Shared Facilities and the Shared Employees, the "**Shared Services**").

3.       The Terminal Entities provide the Shared Services to the Debtors under the terms of that certain Shared Services Systems Agreement dated as of November 30, 2018 (the "**Shared Services Systems Agreement**") by and among LBT, debtor Limetree Bay Refining, LLC, and debtor Limetree Bay Refining Marketing, LLC.  Under the terms of the Shared Services Systems Agreement, the Debtors are required to compensate the Terminal Entities for Shared Services provided by the Terminal Entities.  As of this date, the Debtors have not paid all their obligations on either a prepetition or postpetition basis due under the Shared Services Systems Agreement.

4.       The Proposed Sale raises a number of issues in connection with the provision of the Shared Services as well as the ongoing environmental issues being addressed through the hydrocarbon removal process, which is still not complete.  The Terminal Entities understand that SCE (or any other buyer) will need to continue receiving the Shared Services as it manages the

---

[3] The Debtors terminated substantially all of their operational employees at the end of September 2021.  Many of these employees were subsequently hired by LBT and continue to do work for the Debtors.

EMF_US 87503615

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2541 of 2637
2541
Case 21-32351   Document 822   Filed in TXSB on 11/26/21   Page 3 of 4

transition of the Refinery and takes steps to restart the Refinery.[4]  Even in a shutdown and potential liquidation scenario, certain Shared Services will still be needed.  As a result, the Debtors and SCE (or any other buyer) will need an agreement with the Terminal Entities for the provision of the Shared Services.  To date, however, the Terminal Entities have only seen a draft version of the asset purchase agreement with no schedules for the Proposed Sale, and there have been no substantive discussions with the Terminal Entities on the provision of Shared Services.

5.      It is unclear how SCE (or any other buyer) will be able to manage the Refinery and the transition to a potential restart of the Refinery without the Shared Services and working collaboratively with the Terminal Entities.  The Terminal Entities are supportive of a going concern sale of the Refinery and stand ready and willing to engage with the Debtors and SCE to address these issues.  However, in light of the timeline for the Proposed Sale, the Terminal Entities are concerned about the lack of engagement to date[5] and wanted to alert the Court and all parties in interest of these important issues.  The Terminal Entities reserve all rights with respect to the Proposed Sale and the Shared Services Systems Agreement, including their rights to object to the Proposed Sale on any grounds.

---

[4] *See* St. Croix Energy Issues Statement Following Successful Bid for Limetree Bay Refinery, The Virgin Islands Consortium, Nov. 18, 2021, https://viconsortium.com/vi-business/virgin-islands-st-croix-energy-issues-statement-following-successful-bid-for-limetree-bay-refinery.

[5] Objections to the Proposed Sale are currently due on December 6, 2021, and the Debtors have proposed a hearing date of December 7, 2021 to approve the Proposed Sale.

EMF_US 87503615

Dated:  November 26, 2021
       Houston, Texas

Respectfully Submitted,

*/s/  Timothy A. ("Tad") Davidson II*
Timothy A. ("Tad") Davidson II (TX Bar No. 24012503)
Joseph P. Rovira (TX Bar No. 24066008)
Ashley Harper (TX Bar No. 24065272)
Philip M. Guffy (TX Bar No. 24113705)
**HUNTON ANDREWS KURTH LLP**
600 Travis Street, Suite 4200
Houston, Texas  77002
Tel:    713-220-4200
Fax:    713-220-4285
Email:  taddavidson@HuntonAK.com
        josephrovira@HuntonAK.com
        ashleyharper@HuntonAK.com
        pguffy@HuntonAK.com

*Counsel for Limetree Bay Terminals, LLC, Limetree Bay Terminals Holdings, LLC, Limetree Bay Terminals Holdings II, LLC, Limetree Bay Cayman, Ltd., and Limetree Bay Financing, LLC*

## CERTIFICATE OF SERVICE

I certify that on November 26, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Timothy A. ("Tad") Davidson II*
Timothy A. ("Tad") Davidson II

EMF_US 87503615

# EXHIBIT 18

**Intentionally Omitted – See Exhibit 32**

# EXHIBIT 19

**Presentation [including drafts and emails regarding contents and recommendations] to the Debtors' Board regarding the bids**

[Debtors have not yet provided despite request on 12/1/21]

# EXHIBIT 20

**Debtors Board minutes and resolution regarding the sale and approvals to SCE**

[Debtors have not yet provided despite request on 12/1/21]

# EXHIBIT 21

| | |
|---|---|
| **From:** | Hughes, Patrick |
| **To:** | Rose, Jorian L.; Green, Elizabeth A. |
| **Cc:** | Butch Boyd (butchboyd@butchboydlawfirm.com); Wyrick, Martha |
| **Subject:** | Concerns over delays on post auction deadlines, the status of bids, and lack of detailed information |
| **Date:** | Tuesday, November 30, 2021 11:27:44 AM |

Dear Limetree Team

As you know we represent Bay, Ltd, a prevailing bidder at the auction conducted November 18. Despite its prevailing bid especially when combined with the Sabin bid exceeding the highly contingent bid proffered [and seemingly favored throughout] by SCE, Bay has not heard anything further regarding its bid, its status, any comments to its offer going into the auction, or even a draft copy of a proposed sale order promised three weeks ago. That is concerning on several levels.

First, while the actual conduct of the auction itself was capably done and resulted in Bay and Sabin emerging as the highest bidders for the assets, the process before and after was from a buyer's perspective chaotic and seems without precedent in disregarding or extending deadlines at will and often literally on the eve of the deadline, without explanation, and geared entirely to favor delivery of the assets to SCE, regardless of its highly conditioned proposals. That is troublesome, because the process before and now after the auction seems preordained to deliver the assets to SCE, even under the new circumstances of what came from the auction.

Second, the various deadlines for announcing the prevailing bidder have been unilaterally delayed several times, without explanation, before and after the auction. Yet the timeline for a sale hearing keeps being posted as "maybe" December 7, without any confirmed time, and the closing timelines at December 10 and 13, which are rapidly approaching. That unfairly jams prevailing bidders into reacting to an as yet undelivered form of sale order, critical to any buyer, as well as to even review as yet undelivered comments to the last form of APA. That is troublesome too.

Third, when viewing the foregoing against the chaotic 18 hours before the auction when Bay was overtly discouraged from even participating at the auction, and having the auction seemingly cancelled as a preferred path, necessitating preparation by Bay of emergency papers to file if the lack of admission to the auction occurred, the several delays and lack of communication since the auction appear from Bay's perspective to be tactical to somehow jam prevailing bidders into a fait accompli outcome they can never react to if indeed the sale hearing does proceed on December 7, and the closings forced as scheduled at risk of forfeit of deposit. That too is troubling.

Bay is concerned this process is flawed and outcome determinative, intended before and now after the auction to favor delivery of the assets to SCE, or to at every turn give SCE the benefit of the doubt on its highly conditional proposal which at this juncture offers less value, and seems more akin to a disguised liquidation bid perhaps. Before and during the auction, SCE statements made plain its bid was not firm, and remained conditional on other events, not least of which was a TSA that as of the auction other key participants had not yet reviewed.   Yet SCE remained as the ostensible lead bid, in circumstances where its willingness to close was in substantial doubt, and its ability to ever restart the refinery highly improbably for a host of reasons.

We have heard nothing since to change that, even though I just did wrap a call with Joe

Esmont on another matter where he did indicate that tonight's deadline to designate a lead bidder would not be further extended apparently.  But the fact as we understand it remains as before—the SCE bid is no more firm than before, it remains below the Bay and Sabin bids; and it seems that regardless of practical and legal impediments to any restart, it still is preferred.   That makes no sense to Bay at this juncture.

If there continues to be delays or a refusal to acknowledge Bay and Sabin as the prevailing bidder, then Bay may need to seek relief, and otherwise request an immediate production of limited documents concerning the foregoing matters and internal business decisions made, and a deposition of representatives with knowledge. Unless Bay can better understand what is going on, Bay also opposes, until that is provided, the current amorphous December 7 schedule. We will be forwarding a 30(b)(6) request later today, but we expect you can discern from the above the nature and types of materials relevant for gathering and identify the corporate representatives who can attest to the foregoing.

## HAYNES BOONE

**Patrick L. Hughes**
Partner
patrick.hughes@haynesboone.com

**Haynes and Boone, LLP**
1221 McKinney Street
Suite 4000
Houston, TX 77010

(t) +1 713.547.2550
(f) +1 713.236.5401
(m) +1 832.722.8210

1050 17th Street
Suite 1800
Denver, CO 80265

(t) 303.382.6221

vCard | Bio | Website

# EXHIBIT 22

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2550 of 2637
2550
Case 21-32351   Document 829   Filed in TXSB on 11/30/21   Page 1 of 3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| LIMETREE BAY SERVICES, LLC, *et al.*,[1] | CASE NO.: 21-32351 (DRJ) |
| Debtors. | (Jointly Administered) |

### NOTICE OF (I) DESIGNATION OF WINNING BID AND BACK-UP BIDS AND (II) SIXTH NOTICE OF EXTENSION OF MILESTONES AND BID PROCEDURES DEADLINES

**PLEASE TAKE NOTICE** that Limetree Bay Services, LLC and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of Texas (the "**Court**") on July 12, 2021 (the "**Petition Date**").

**PLEASE TAKE FURTHER NOTICE** that, on July 26, 2021, Debtors filed the *Debtors' Emergency Motion for Entry of Order: (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief* [Doc. No. 191] (the "**Bidding Procedures Motion**"), seeking entry of an order, among other things, (a) approving procedures for the solicitation of bids in connection with a sale of substantially all assets of the Debtors (the "**Sale**"), (b) approving the Sale of substantially all assets of the Debtors as a going concern or liquidation via one or more transactions, and (c) approving certain procedures for the assumption and assignment of executory contracts and unexpired leases pursuant to Section 365 of the Bankruptcy Code;

**PLEASE TAKE FURTHER NOTICE** that, on August 11, 2021, the Court entered an order granting the Bidding Procedures Motion (the "**Bid Procedures Order**") and approving the bidding procedures appended thereto as Appendix A (as amended, the "**Bidding Procedures**") [Doc. No. 392];[2]

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures Order, Debtors effectuated a broad marketing strategy in an effort to solicit qualified bids for the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Bid Procedures Order, Bidding Procedures, Bid Procedures Amendment Order, or *Debtors' Emergency Motion to Amend Milestones and Bid Procedures Deadlines* (Doc. No. 565), as applicable.

acquisition of some or all of the Debtors' assets, and as a result of these efforts, received multiple qualified bids under the Bidding Procedures;

**PLEASE TAKE FURTHER NOTICE** that, on November 18, 2021, Debtors conducted an auction in accordance with the Bidding Procedures (the "**Auction**") and, at the conclusion of the Auction, declared St. Croix Energy, LLLP ("**St. Croix**") as the Winning Bidder and, collectively, Sabin Metal Corporation ("**Sabin**") and Bay, Ltd. ("**Bay**") as the Back-up Bidders;

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bid Procedures Order and Paragraph 28 of the Bidding Procedures, Debtors hereby designate (a) St. Croix as the Winning Bidder and, (b) collectively, Sabin and Bay as the Back-up Bidders;

**PLEASE TAKE FURTHER NOTICE** that the terms of the Winning Bid and Back-up Bids are summarized on Exhibit A hereto (the "**Designation of Winning Bid**") and a copy of the asset purchase agreement memorializing the Winning Bid is attached hereto as Exhibit B;[3] and

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the *Order Granting Debtors' Emergency Motion to Amend Milestones and Bid Procedures Deadlines* [Doc. No. 583] (the "**Bid Procedures Amendment Order**"), and in accordance with the terms of the Winning Bid (as discussed in the Designation of Winning Bid), the Milestones and Bid Procedures Deadlines established therein are hereby amended in accordance with the attached Exhibit C, and except as amended or altered thereby, the Milestones and Bid Procedures Deadlines provided in the *Notice of Extension of Milestones and Bid Procedures Deadlines* [Doc. No. 696] filed on October 28, 2021 and the *Third Notice of Extension of Milestones and Bid Procedures Deadlines* [Doc. No. 761] filed on November 14, 2021, shall remain unchanged.

*[Signature Page Follows]*

---

[3] The Debtors shall serve the notice via U.S. Mail without a copy of Exhibit B due to its voluminous nature and the attendant costs of reproduction and postage; however, any party in interest may obtain an electronic copy of Exhibit B by submitting a written request via email to dmerola@bakerlaw.com or by downloading the Notice through the website for the Debtors' claims agent at www.bmcgroup.com/limetree.

Dated: November 30, 2021

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
**Jimmy D. Parrish, Esq.**
Fed. ID No. 2687598
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL  32801-3432
Telephone:  407.649.4000
Facsimile:   407.841.0168
Email:  egreen@bakerlaw.com
       jparrish@bakerlaw.com

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
*Admitted Pro Hac Vice*
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone:  212.589.4200
Facsimile:  212.589.4201
Email: jrose@bakerlaw.com

*Counsel for the Debtors and Debtors in
Possession*

## Certificate of Service

**I HEREBY CERTIFY** that on November 30, 2021, a true copy of the foregoing was filed with the Court using the CM/ECF System, which will provide notice of such filing to all parties requesting such service.

*/s/ Elizabeth A. Green*
Elizabeth A. Green

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2553 of 2637
2553
Case 21-32351   Document 829-1   Filed in TXSB on 11/30/21   Page 1 of 7

# EXHIBIT A

**DESIGNATION OF WINNING BID AND BACK-UP BIDS**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| **LIMETREE BAY SERVICES, LLC,** *et al.,*[4] | **CASE NO.: 21-32351 (DRJ)** |
| Debtors. | **(Jointly Administered)** |

## DESIGNATION OF WINNING BID AND BACK-UP BIDS

Limetree Bay Services, LLC and its debtor affiliates (collectively, the "**Debtors**") hereby designate the Winning Bid and Back-up Bids, as provided herein, in accordance with the *Order Granting Debtors'* Emergency *Motion for Entry of Order: (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief* [Doc. No. 392] (the "**Bid Procedures Order**") and Paragraph 28 of the Bidding Procedures attached thereto as Appendix A (the "**Bidding Procedures**").[5]

### I.      Summary of Winning Bid

St. Croix Energy, LLLP ("**St. Croix**") is the Winning Bidder.

The St. Croix transaction is structured as an asset sale with an expected continuation of the business operations as a going concern upon SCE retaining the requisite personnel and securing certain authorizations during the transition period.  The following is a summary of the principal terms of the Winning Bid, a copy of which is attached to the accompanying notice as Exhibit B (the "**APA**")[6] and incorporated herein by reference:

|   |   |
|---|---|
| Purchased Assets. | Substantially all assets of the Debtors, as identified in Sections 1.1 and 1.2 of the APA, exclusive of Excluded Assets.  The sale shall be free and clear of any interests in the Purchased Assets pursuant to Section 363(f) of the Bankruptcy Code on an "as is, where is" basis, without |

---

[4]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[5]  Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Bid Procedures Order, Bidding Procedures, *Debtors'* Emergency *Motion to Amend Milestones and Bid Procedures Deadlines* [Doc. No. 565], or the Bid Procedures Amendment Order, as applicable.

[6]  Unless otherwise defined herein, capitalized terms used in the summary shall have the meanings ascribed to them in the APA.  All section references in the summary shall refer to the referenced section of the APA.  The summary does not contain all material terms of the APA; accordingly, interested parties should review the APA in its entirety.  In the event of any inconsistency between the summary and the APA, the provisions of the APA shall control.

representations or warranties, except for the representations and warranties expressly set forth in the APA.

Without limiting the foregoing, the Purchased Assets to be acquired as of the Closing Date include: (a) all Improvements; (b) all Parts Inventory; (c) books and records of the Debtors related to the Purchased Assets, subject to Debtors' right to retain copies of pre-Closing books and records; (d) rights to Intellectual Property; (e) all Furniture and Equipment; (f) accounts receivables related to Purchased Assets; (g) rights, claims, causes of action, and insurance recoveries on account of Purchased Assets; and (h) any rights of the Debtors under any bids to acquire any of the Purchased Assets.

| | |
|---|---|
| Excluded Assets. | Excluded Asset are identified in <u>Section 1.3</u> of the APA, and include, among other things, (a) cash and cash equivalents, (b) Avoidance Actions and proceeds thereof, (c) certain rights, claims and causes of action identified in <u>Section 1.3(h)</u>, (d) certain rights, claims and causes of action under insurance policies as identified in <u>Section 1.3(i)</u>, (e) deposits and prepaid charges unrelated to any Purchased Assets, (f) tax refunds/credits unrelated to any Purchased Assets, (g) accounts receivable unrelated to the Purchased Assets, and including the J. Aron Receivables, the BP Receivables, and NRI Receivables, (h) all contract rights under the APA or any other Transaction Document or otherwise relating to the Excluded Assets or Excluded Liabilities, including rights under executory contracts and unexpired leases, and (i) all equity interests of the Debtors or any of their respective Affiliates.

Subject to the provisions of <u>Section 1.4</u> of the APA, St. Croix may designate Excluded Assets, including executory contracts and unexpired leases, for inclusion in the Purchased Assets without further consideration until the Designation Deadline. |
| Assumed Liabilities. | None as of Closing, subject to designation of Excluded Liabilities as Assumed Liabilities pursuant to <u>Section 1.4</u> and terms of the TSA (defined below). |
| Excluded Liabilities. | All liabilities as of Closing, subject to designation of Excluded Liabilities as Assumed Liabilities pursuant to <u>Section 1.4</u> and terms of the TSA. |
| Consideration. | **$33,000,000.00**, which is comprised of: |

6

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2556 of 2637
2556
Case 21-32351   Document 829-1   Filed in TXSB on 11/30/21   Page 4 of 7

|  | $20,000,000.00 in cash at the Closing, plus |
|--|--|
|  | $14,000,000.00 (est.) in assumed and avoided liabilities and expense reimbursement pursuant to the terms of a transition services agreement, minus |
|  | $1,000,000.00 in St. Croix expense reimbursement. |
| Executory Contracts and Unexpired Leases. | None as of Closing, subject to designation of executory contracts and unexpired leases for assumption and assignment under Section 1.4 and terms of the TSA.[7] |
|  | Under the terms of the TSA, St. Croix shall be liable for all costs associated with maintaining executory contracts and unexpired leases pending assumption or rejection and any cure costs, if any executory contracts or unexpired leases are ultimately assumed and assigned to St. Croix. |
| Transition Services. | The St. Croix transaction is predicated upon the Debtors continuing to provide or facilitating services in connection with the operation of the refinery pending St. Croix's designation of operational assets (e.g., permits, contractual rights, etc.) for acquisition.  The Debtors shall render the required services pursuant to a transition services agreement (the "**TSA**") with St. Croix.  St. Croix and the Debtors are finalizing the terms of the TSA and shall file a copy of the TSA prior to the Sale Hearing. |
|  | Certain material terms of the TSA are set forth in Section 1.4(i). |
| Sale Hearing. | December 7, 2021, at 4:00 p.m. CT. |
| Closing. | No later than December 17, 2021, at 5:00 p.m. ET |

The Debtors and St. Croix are presently finalizing certain documents pertaining to the APA and transaction, including the TSA; accordingly, pursuant to Exhibit C to this notice, the Debtors are extending the deadline to file such documents under the Bidding Procedures through and including December 3, 2021.  Additionally, the Debtors are extending the deadlines associated with the assumption and assignment of executory contracts and unexpired leases to comport with the terms of the APA.

---

[7] St. Croix does not seek the assumption or assignment of any executory contracts or unexpired leases on the Closing Date under the APA; rather, under Section 1.4 of the APA, St. Croix reserves the right to designate any executory contracts or unexpired leases for assumption and assignment at any time prior to the Designation Deadline.  The assumption and assignment of any contracts under the APA is premised upon satisfaction of the requirements of Section 365 of the Bankruptcy Code.  To comport with the APA, the Debtors are extending the dates and deadlines associated with the assumption and assignment of executory contracts and unexpired leases under the Bid Procedures to the Designation Deadline.

4883-4451-7636.6

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2557 of 2637
2557
Case 21-32351   Document 829-1   Filed in TXSB on 11/30/21   Page 5 of 7

II.      **Summary of Back-up Bids**

Sabin Metal Corporation ("**Sabin**") and Bay, Ltd. ("**Bay**") are the Back-up Bidders.

The bids presented by Sabin (the "**Sabin Bid**") and Bay (the "**Bay Bid**" and, together with the Sabin Bid, the "**Back-up Bids**") are piecemeal bids for the acquisition and/or liquidation of the subject assets.[8]  The following is a summary of the principal terms of the Back-up Bids, which remain subject to final negotiations.

A. **The Sabin Bid**

| | |
|---|---|
| <u>Purchased Assets</u>. | Catalyst |
| <u>Excluded Assets</u>. | All assets of the Debtors, excluding the Catalyst. |
| <u>Assumed Liabilities</u>. | None. |
| <u>Excluded Liabilities</u>. | All liabilities of the Debtors. |
| <u>Consideration</u>. | **$15,122,047.00**, which is payable in two installments—(i) 50% six (6) weeks after completion of sampling of the catalyst (approximately five (5) months post-closing) and (ii) 50% upon sale of the metals recovered from the catalyst (approximately eight (8) months post-closing). |
| | **<u>Caveat</u>**:  The consideration is an <u>estimate</u> of total recoveries from the processing of the catalyst <u>net</u> of processing costs and, as such, may vary depending upon, among other things, the total amount and condition of the catalyst, the amounts of precious metals recovered from the catalyst and the market value of the recovered precious metals at the time of the sale.  There is no minimum consideration under the Sabin Bid.  The above-described consideration is not the same as the value the Debtors ascribe to the bid, which must be adjusted to include factors such as the uncertainty in total recovery, the Debtors' cash flow needs, and the time-value of money. |
| <u>Executory Contracts and Unexpired Leases</u>. | None |
| <u>Closing</u>. | TBD |

---

[8] The consideration set forth in the summary of Back-up Bids is subject to certain offsets and adjustments under the proposed transaction, including, without limitation, adjustments to reflect the risks of recovery and present value of the proposed payments over time.  As such, the Debtors are not representing that the stated consideration is the net value of the Back-up Bids to the estates or that the estates are guaranteed to receive the estimated consideration.

4883-4451-7636.6

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2558 of 2637
2558
Case 21-32351   Document 829-1   Filed in TXSB on 11/30/21   Page 6 of 7

**B.  The Bay Bid**

| | |
|---|---|
| <u>Purchased Assets</u>. | All tangible personal property assets of the Debtors, excluding the Catalyst, subject to adjustment prior to Closing. |
| <u>Excluded Assets</u>. | All assets of the Debtors, other than Purchased Assets, including the Catalyst, real property, and intangible personal property assets; *provided* that Bay retains the rights to add or remove certain items from the Purchased Assets without further consideration. |
| <u>Assumed Liabilities</u>. | Limited assumption of liabilities, including Cure Amounts and certain adequate assurance payments related to any assumed and assigned contracts or leases; transfer taxes; and certain liabilities traceable to Purchaser's conduct. |
| <u>Excluded Liabilities</u>. | All other liabilities of the Debtors. |
| <u>Consideration</u>. | An amount up to **$24,760,000.00**, which is comprised of: |

$3,200,000.00 in cash at the Closing, <u>plus</u>

55% of net proceeds in excess of $3,000,000, not to exceed $21,560,000, from the liquidation of non-scrap assets, including equipment, inventory and rolling stock, subject to certain exclusions.

In addition to the foregoing, in the event that Bay is permitted to draw upon the USVI Letter of Credit, Bay agrees to pay Debtors 50% of any proceeds after deducting the expenses of removing Hazardous Materials, up to $3 million.  This recovery is, however, contingent on events outside the Debtors' control.

The Debtors anticipate that the consideration will be paid over a period of three (3) years following the closing date.

**Caveat**:  The consideration is an <u>estimate</u> of recoveries from the liquidation of Purchased Assets, subject to certain exclusions, and, as such, the ultimate consideration may vary depending upon the liquidation values of the subject Purchased Assets.   Further, the net consideration is dependent upon the payment of certain costs and expenses associated with the removal of the Purchased Assets, which are unknown and, as such, not factored into the gross consideration stated herein.   Accordingly, the above-described consideration is not the same as the value the Debtors ascribe to the bid, which must be adjusted to include those expenses and other factors such as the uncertainty in

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2559 of 2637
2559
Case 21-32351   Document 829-1   Filed in TXSB on 11/30/21   Page 7 of 7

|  | total recovery, the Debtors' cash flow needs, and the time value of money. |
|---|---|
| Executory Contracts and Unexpired Leases. | TBD |
| Closing. | TBD |

10

<u>**EXHIBIT B**</u>

**WINNING BID/ASSET PURCHASE AGREEMENT**

**ASSET PURCHASE AGREEMENT**

**by and among**

**LIMETREE BAY SERVICES, LLC,**

**LIMETREE BAY REFINING HOLDINGS, LLC,**

**LIMETREE BAY REFINING HOLDINGS II, LLC,**

**LIMETREE BAY REFINING, LLC,**

**LIMETREE BAY REFINING OPERATING, LLC, AND**

**LIMETREE BAY REFINING MARKETING, LLC,**

**as Sellers**

**and**

**ST. CROIX ENERGY, LLLP,**

**as Purchaser**

**Dated as of November [__], 2021**

Page

ARTICLE I PURCHASE AND SALE OF ASSETS ................................................................ 2
    1.1    Agreement to Purchase and Sell ............................................................ 2
    1.2    Description of Purchased Assets ............................................................ 2
    1.3    Excluded Assets .................................................................................... 4
    1.4    Contract and Asset Designation Rights ................................................ 6

ARTICLE II ASSUMPTION OF LIABILITIES .................................................................. 10
    2.1    Agreement to Assume .......................................................................... 10
    2.2    Description of Assumed Liabilities ...................................................... 11
    2.3    Excluded Liabilities ............................................................................. 12

ARTICLE III PURCHASE PRICE, MANNER OF PAYMENT; CLOSING; DEPOSIT ......... 13
    3.1    Purchase Price; Delivery of Funds ...................................................... 13
    3.2    Good Faith Escrow Deposit ................................................................. 13
    3.3    Time and Place of Closing ................................................................... 14
    3.4    Closing Deliverables ........................................................................... 14
    3.5    Allocation of Purchase Price ............................................................... 15

ARTICLE IV REPRESENTATIONS AND WARRANTIES OF SELLERS ............................ 15
    4.1    Due Organization, Good Standing and Limited Liability Company Power ........ 16
    4.2    Authorization; Noncontravention ........................................................ 16
    4.3    Governmental Consents and Approvals ............................................... 17
    4.4    Property ................................................................................................ 17
    4.5    Title to Purchased Assets .................................................................... 18
    4.6    Affiliate Transactions ......................................................................... 18
    4.7    Material Contracts ............................................................................... 19
    4.8    Intellectual Property Rights and Claims. ............................................. 20
    4.9    Tax Matters ......................................................................................... 21
    4.10    Financial Statements ............................................................................ 21
    4.11    Compliance with Laws ........................................................................ 22
    4.12    Environmental Matters ........................................................................ 22
    4.13    Permits ................................................................................................. 22
    4.14    Litigation ............................................................................................. 22
    4.15    Finders; Brokers .................................................................................. 23
    4.16    Exclusivity of Representations; Projections, Etc. ................................ 23

ARTICLE V REPRESENTATIONS AND WARRANTIES OF PURCHASER ....................... 23
    5.1    Due Organization, Good Standing and Power ..................................... 24
    5.2    Authorization; Noncontravention ........................................................ 24
    5.3    Governmental Consents and Approvals ............................................... 25
    5.4    Financing ............................................................................................. 25
    5.5    Solvency of Purchaser ......................................................................... 25
    5.6    Adequate Assurances .......................................................................... 25
    5.7    Litigation ............................................................................................. 25
    5.8    Finders; Brokers .................................................................................. 25

i

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2563 of 2637
2563
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 4 of 61

| | | | |
|---|---|---|---|
| | 5.9 | Investigation by Purchaser | 25 |
| **ARTICLE VI COVENANTS** | | | 26 |
| | 6.1 | Access to Information Concerning Properties and Records | 26 |
| | 6.2 | Conduct Prior to the Designation Deadline | 28 |
| | 6.3 | Efforts to Close | 29 |
| | 6.4 | Public Announcements | 30 |
| | 6.5 | Notification of Certain Matters | 30 |
| | 6.6 | Post-Closing Access to Records and Personnel; Litigation Support | 30 |
| | 6.7 | Tax Matters | 32 |
| | 6.8 | Bulk Sales Act | 32 |
| | 6.9 | Bankruptcy Action | 33 |
| | 6.10 | Sale Order | 33 |
| | 6.11 | [Reserved]. | 35 |
| | 6.12 | Transfer of Permits | 35 |
| | 6.13 | Expenses | 35 |
| | 6.14 | Confidentiality | 35 |
| **ARTICLE VII CONDITIONS TO CLOSING** | | | 35 |
| | 7.1 | Conditions to Sellers' Obligations | 35 |
| | 7.2 | Conditions to Purchaser's Obligations | 36 |
| | 7.3 | Frustration of Closing Conditions | 37 |
| **ARTICLE VIII TERMINATION** | | | 37 |
| | 8.1 | Termination Events | 37 |
| | 8.2 | Effect of Termination | 38 |
| **ARTICLE IX SURVIVAL** | | | 38 |
| | 9.1 | Survival; Certain Post-Closing Matters | 38 |
| **ARTICLE X MISCELLANEOUS** | | | 39 |
| | 10.1 | Notices | 39 |
| | 10.2 | Entire Agreement | 40 |
| | 10.3 | Severability | 40 |
| | 10.4 | Binding Effect; Benefit | 41 |
| | 10.5 | Assignability | 41 |
| | 10.6 | Amendments | 41 |
| | 10.7 | Non-Waiver | 41 |
| | 10.8 | Applicable Law | 41 |
| | 10.9 | Consent to Jurisdiction | 42 |
| | 10.10 | **WAIVER OF TRIAL BY JURY** | 42 |
| | 10.11 | Counterparts | 42 |
| | 10.12 | Headings | 42 |
| | 10.13 | Time of the Essence | 42 |
| | 10.14 | Rules of Construction | 42 |

4895-8439-9877.1

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2564 of 2637
2564
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 5 of 61

EXHIBITS AND SCHEDULES

Appendix 1          Defined Terms

Exhibit A           Budget
Exhibit B           Form of Bill of Sale and Assignment and Assumption Agreement
Exhibit C           Form of Transition Services Agreement

Schedule 1.2(a)     Business Contracts
Schedule 1.2(b)     Purchased Real Property
Schedule 1.2(d)     Real Property Leases
Schedule 1.2(g)     Business Permits
Schedule 1.2(h)     Business Intellectual Property
Schedule 1.2(i)     Business IT Assets
Schedule 1.3(p)     Excluded Furniture and Equipment
Schedule 3.4        Assignment, Transfer and Conveyance Instruments
Schedule 6.2        Conduct Prior to the Closing Date

Seller Disclosure Letter

4895-8439-9877.1

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2565 of 2637
2565
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 6 of 61

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT ("Agreement") is made as of November [__], 2021, by and among Limetree Bay Services, LLC, a Delaware limited liability company ("LBS"), Limetree Bay Refining Holdings, LLC, a United States Virgin Islands limited liability company ("LBRH"), Limetree Bay Refining Holdings II, LLC, a United States Virgin Islands limited liability company ("LBRH II"), Limetree Bay Refining, LLC, a United States Virgin Islands limited liability company ("LBR"), Limetree Bay Refining Operating, LLC, a United States Virgin Islands limited liability company ("LBRO"), Limetree Bay Refining Marketing, LLC, a United States Virgin Islands limited liability company ("LBRM", along with LBS, LBRH, LBRH II, LBR and LBRO, each a "Seller" and collectively, "Sellers"), and St. Croix Energy, LLLLP, a domestic limited liability limited partnership, and its permitted assignees pursuant to Section 10.5 (collectively, "Purchaser" and, the Purchaser together with Sellers, each a "Party" and collectively, the "Parties").  Capitalized terms used but not otherwise defined in the text of this Agreement have the meanings set forth in Appendix 1 attached hereto, which is incorporated herein and made a part of this Agreement.

## R E C I T A L S

A.      Sellers own and operate an oil refinery located on the island of St. Croix in the United States Virgin Islands (collectively, the "Business").

B.      On July 12, 2021 (the "Petition Date"), Sellers filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), which cases are jointly administered under *In re Limetree Bay Services, LLC*, Case No. 21-32351.

C.      On November 14, 2021, Purchaser presented an executed Asset Purchase Agreement, pursuant to which Purchaser presented an irrevocable offer to purchase from Sellers certain assets and assume from Sellers certain liabilities related thereto (the "Initial Asset Purchase Agreement"), subject to the terms of the proposed Initial Asset Purchase Agreement, the *Order Granting Debtors' Emergency Motion for Entry of Order: (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief* (the "Bid Procedures Order") and bidding procedures appended thereto (the "Bid Procedures").

D.      On or about November 14, 2021, Sellers filed a motion in the Bankruptcy Court to designate the Initial Asset Purchase Agreement as the stalking horse bid and approve certain buyer protections (described therein) under the terms of the Bid Procedures Order and Bid Procedures.

E.      On or about November 17, 2021, Sellers conducted an auction in accordance with the terms of the Bid Procedures, during which the Initial Asset Purchase Agreement was designated the Winning Bid and Purchaser the Winning Bidder (as such terms are defined in the Bid Procedures).

F.      On the terms and subject to the conditions set forth in this Agreement, (i) the Parties wish to enter into this Agreement to update and supersede the Initial Asset Purchase Agreement on the terms set forth herein, (ii) Purchaser desires to purchase from Sellers, and Sellers desire to

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2566 of 2637
2566
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 7 of 61

sell to Purchaser, the Purchased Assets and (iii) Purchaser desires to assume, and Sellers desire to assign and transfer to Purchaser, the Assumed Liabilities (the "Purchase").

G.      It is intended that the acquisition of the Purchased Assets will be accomplished through the sale, transfer and assignment of the Purchased Assets by Sellers to Purchaser, or its designee or designees, in a sale undertaken pursuant to Section 363 of the Bankruptcy Code and that certain executory contracts and unexpired leases will be assumed by Sellers and assigned to Purchaser pursuant to Section 365 of the Bankruptcy Code in connection therewith.

A G R E E M E N T S

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

ARTICLE I
Purchase and Sale of Assets

1.1      Agreement to Purchase and Sell.  On the terms and subject to the conditions contained in this Agreement, Purchaser agrees to purchase from Sellers, and Sellers agree to sell, transfer and convey to Purchaser, all of the Sellers' assets, properties, rights and interests identified in Section 1.2, effective as of the Closing Date, wherever situated or located (collectively, the "Purchased Assets").  The Purchased Assets shall be sold, transferred and conveyed to Purchaser free and clear of any and all Liens and Claims, in each case to the fullest extent permitted under the Bankruptcy Code and resulting from the Sale Order, other than Permitted Liens and Assumed Liabilities.

1.2      Description of Purchased Assets.  The Purchased Assets shall include the following assets owned by Sellers as of the entry of the Sale Order, except to the extent that any of the following are specifically enumerated in Section 1.3 as being Excluded Assets:

(a)      each Contract listed or described on Schedule 1.2(a) (collectively, the "Business Contracts");

(b)      the real property described on Schedule 1.2(b), together with such easements, appurtenances, right and other hereditaments appurtenant to such real property that are expressly described on Schedule 1.2(b) or otherwise imposed by Law (collectively, the "Purchased Real Property");

(c)      all Improvements;

(d)      each real property lease and sublease listed or described on Schedule 1.2(d) ("Real Property Leases");

(e)      all Parts Inventory;

(f)      the Files and Records, whether in hard copy or electronic format, except that, with respect to Files and Records that any Seller or any of its Affiliates is required by

2

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2567 of 2637
2567
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 8 of 61

Law or Order to retain, the Purchased Assets shall include copies of such Files and Records to the extent permitted by any applicable Law or Order; provided, that any Seller shall be permitted to retain a copy of any such Files and Records that such Seller requires in connection with any of the Excluded Assets;

(g)     all Permits (and any pending applications for Permits) described on Schedule 1.2(g) (the "Business Permits");

(h)     the rights to the Intellectual Property listed on Schedule 1.2(h) (the "Business Intellectual Property");

(i)     the rights to Information Technology listed on Schedule 1.2(i) (the "Business IT Assets");

(j)     all Furniture and Equipment owned by a Seller that is located at the Seller Facilities or that is otherwise primarily used or held for use in the Business (other than the Excluded Furniture and Equipment);

(k)     all accounts receivables, trade receivables, notes receivables, and other miscellaneous receivables, whether current or overdue, in each case, solely to the extent related to any of the Purchased Assets set forth in Section 1.2(a)-(j), and all pre-paid assets of any Seller, solely to the extent related to any of the Purchased Assets set forth in Section 1.2(a)-(j), which, for the avoidance of doubt, excludes any right to or interest in any Excluded Assets;

(l)     all rights, claims, defenses, causes of action, rights of offset and counterclaims (at any time or in any manner arising or existing, whether choate or inchoate, known or unknown, contingent or non-contingent) of each Seller, but excluding any Avoidance Actions and proceeds thereof, in each case solely (i) with respect to any of the Purchased Assets set forth in Sections 1.2(a)-(k) and (ii) to the extent first arising with respect to incidents, actions or omissions that occur on or after the Closing Date (the "Purchased Claims");

(m)     all insurance recoveries, other than the Excluded Insurance Recoveries, under each Seller's or its Affiliates' insurance policies, in each case solely with respect to any of the Purchased Assets set forth in Sections 1.2(a)-(k), and any rights to assert claims with respect to any such insurance recoveries;

(n)     all rights under and to any bids, offers, options, or other contracts to purchase or sell any Purchased Asset, including any of the offers received at the Auction; and

(o)     the general books and records and the books of account and books of original entry that comprise a Seller's permanent Tax records, in each case, solely to the extent related to the Purchased Assets or Assumed Liabilities; provided, that any Seller shall be permitted to retain a copy of any such pre-Closing books and records.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2568 of 2637
2568
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 9 of 61

1.3    <u>Excluded Assets</u>.  The "<u>Excluded Assets</u>" means all of the assets, properties, rights and interests of the Sellers as of the Closing Date, wherever situated or located, other than the Purchased Assets, including, but not limited to, the following items and assets:

(a)    all cash, certificates of deposit or other cash equivalents;

(b)    any real property other than the Business Real Property;

(c)    all personal property, equipment and inventory not included in the Purchased Assets;

(d)    notwithstanding anything to the contrary in Section 1.2, all Avoidance Actions and proceeds thereof;

(e)    all rights under any Contract to which any Seller is a party that is not a Business Contract or a Real Property Lease;

(f)    general books of account and books of original entry that comprise a Seller's permanent Tax records, corporate minute books, stock books and related organizational documents and the books and records that any Seller is required to retain pursuant to any Law or Order and the books and records solely to the extent not related to the Purchased Assets or the Assumed Liabilities;

(g)    all personnel records of employees, former employees or consultants of each Seller;

(h)    all rights, claims, causes of action, remedies, defenses, rights of offset and counterclaims (at any time or in any manner arising or existing, whether choate or inchoate, known or unknown, contingent or non-contingent) of each Seller or its estate against any Person, together with recoveries therefrom, including, without limitation, against any current or former equity holders, lenders, employees, professionals, advisors, agents, officers, directors, managers, contractors, suppliers or other contractual counterparties of any Seller or any Affiliate of any Seller relating to, without limitation, negligence, misrepresentation, fraud, malpractice, breach of contract, breach of fiduciary duty, breach of the duty of loyalty, breach of the duty of care, breach of the implied covenant of good faith and fair dealing, mandatory subordination, equitable subordination, equitable disallowance or recharacterization; <u>provided</u> that this <u>Section 1.3(h)</u> shall not include any Purchased Claims; <u>provided</u>, <u>further</u>, that any remaining rights of the Official Committee of Unsecured Creditors (the "<u>Committee</u>") to assert a "Challenge" under the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* (Doc. No. 495 filed in the Bankruptcy Cases) are fully preserved and shall not constitute Purchased Assets;

(i)    all rights, claims, causes of action, remedies, defenses, rights of offset and counterclaims (at any time or in any manner arising or existing, whether choate or inchoate, known or unknown, contingent or non-contingent) of each Seller or its estate against any Person, together with recoveries therefrom, under any insurance policies of any Seller or

Case 4:22-cv-00040 Document 7 Filed on 02/08/22 in TXSD Page 2569 of 2637
2569
Case 21-32351 Document 829-2 Filed in TXSB on 11/30/21 Page 10 of 61

any Affiliate of any Seller, to the extent related to or arising from any business interruption (including, without limitation, any business interruption coverage under any property damage policies), errors and omissions or directors' and officers' liability insurance policies, or property damage, and any rights to assert claims with respect to any such insurance recoveries; provided, that any recovery on account of property damage related to any Purchased Assets shall be limited solely to (i) recoupment of amounts actually paid (as evidenced by written invoices or receipts therefor or other written documentation thereof) by Sellers in connection with the repair, rehabilitation or remediation of the subject Purchased Assets, which amounts shall only be payable if (x) the Bankruptcy Court holds that Sellers are entitled to recovery of such amounts notwithstanding any unpaid self-insurance retention, or (y) Purchaser has recouped all amounts paid by Purchaser in connection with the repair, rehabilitation or remediation of the subject Purchased Assets and compensable under the subject insurance policy, and additional coverage remains under the applicable insurance policies, and (ii) any related business interruption claims (such rights, claims, causes of action, remedies, defenses, rights of offset, counterclaims and insurance recoveries pursuant to this Section 1.3(i), the "Excluded Insurance Recoveries");

(j)     all claims for refund or credit of (i) income Taxes of each Seller and its Affiliates for any taxable period and (ii) non-income Taxes of each Seller and its Affiliates with respect to a Pre-Closing Period;

(k)     the Excluded Intellectual Property;

(l)     the Excluded IT Assets;

(m)     each Seller's or any of its Affiliates' rights under this Agreement or any Transaction Document or relating to the Excluded Assets or the Excluded Liabilities;

(n)     all deposits (including security deposits, rent, electricity, telephone or otherwise and retainers held by attorneys, accountants, financial advisors and other professional advisors retained by any Seller or by any creditors' committee in the Bankruptcy Case) and other prepaid charges of each Seller, in each case other than with respect to the Purchased Assets described in Section 1.2(k), provided, for the avoidance of doubt, that any returned insurance premiums paid prior to the Closing Date shall constitute Excluded Assets;

(o)     any assets of each Seller in a directors and officers liability insurance policy, executive or incentive compensation, bonus, deferred compensation, pension, retiree medical, stock option or other stock purchase plan or other employee benefit plan;

(p)     the Furniture and Equipment set forth on Schedule 1.3(p) (the "Excluded Furniture and Equipment");

(q)     all accounts receivables, trade receivables, notes receivables, and other miscellaneous receivables, whether current or overdue, and all pre-paid assets of each Seller, in each case, except to the extent within the scope of Section 1.2(k), but including,

4895-8439-9877.1

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2570 of 2637
2570
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 11 of 61

for the avoidance of doubt, the J. Aron Receivables, the BP Receivables, and NRI Receivables;

(r)     all Permits (and any pending applications for Permits) other than the Business Permits;

(s)     all attorney client privilege and attorney work product protection of each Seller or associated with the Business (as currently or formerly conducted) as a result of legal counsel representing a Seller or the Business (as currently or formerly conducted), and all Files and Records related thereto subject to such attorney client privilege or work product protection; provided that any privilege or work product that exclusively relates to the Purchased Assets or the Assumed Liabilities or that is necessary to operate the Business (other than such privileges, protections and related Files and Records related to or in connection with the transactions contemplated by this Agreement or any Transaction Document) shall not be deemed to be an Excluded Asset whether or not in connection with the transactions contemplated by this Agreement or any Transaction Document; and

(t)     all shares of capital stock or other equity interests in any Seller or any Affiliate thereof or any securities convertible into, exchangeable or exercisable for shares of capital stock or other equity interests in any Seller or any Affiliate thereof.

For clarification purposes and without implication that the contrary would otherwise be true, it is understood and agreed that all rights and remedies with respect to the Excluded Assets or the Excluded Liabilities shall be retained by Sellers and shall not be transferred to Purchaser hereunder unless and until designated as a Purchased Asset or Assumed Liability pursuant to Section 1.4(h).

1.4     Contract and Asset Designation Rights.

(a)     No later than three (3) Business Days following the execution of this Agreement, Sellers shall deliver to Purchaser a list of any Contracts Sellers that are material to the Business, any Purchased Assets, and any Assumed Liabilities, including the Cure Amounts associated with each such Contract subject to Section 365 of the Bankruptcy Code. Sellers shall cooperate with, and, as promptly as practicable, provide Purchaser with such access and information reasonably requested by it in order for Purchaser to identify each of the material Contracts related to the Business, any Purchased Assets and any Assumed Liabilities, and subject to assumption or rejection hereunder, including providing copies of all such Contracts, and in order for Purchaser to confirm any associated Cure Amounts. Prior to the Designation Deadline (as defined below), Sellers shall supplement such list to add any Contracts entered into by Sellers during the pendency of the Bankruptcy Cases that are material to the Business, any Purchased Assets, or any Assumed Liabilities, and update any information pertaining to Contracts entered into prior to Closing.

(b)     Any motions filed by Sellers with, and any proposed orders submitted by Sellers to, the Bankruptcy Court seeking authorization after the date hereof to assume or reject any Contracts shall be satisfactory in form and substance to Purchaser in its reasonable discretion. No later than three (3) Business Days following Purchaser's designation of any Contract for assumption by the Sellers and assignment to Purchaser (each such Contract, a "Designated Contract"), the Sellers shall cause notice to be provided

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2571 of 2637
2571
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 12 of 61

to all known or reasonably ascertainable counterparties to such Contract regarding the (i) assumption and assignment to Purchaser of such Contract and (ii) setting forth the Cure Amounts associated with such Contract as of the Sale Hearing (or as of such later date reasonably acceptable to Purchaser and Sellers). If Purchaser is designated the Winning Bidder following the Auction, Sellers shall consult with, and give due consideration to the views and concerns of, Purchaser prior to compromising or commencing any Action with respect to any material payment required to be made under the Bankruptcy Code to effectuate the assumption of any such Contract, including using commercially reasonable efforts to provide no less than three (3) Business Days' notice of any such compromise or Action to Purchaser; provided, that Sellers shall not have any obligation to attempt to resolve any issues with respect to or commence or prosecute any Action concerning any material payment required to be made under the Bankruptcy Code to effectuate the assumption or assignment of any such Contract, it being acknowledged and agreed that Purchaser is solely responsible for resolving any disputes pertaining such payments, including the payment of any Cure Amounts.

(c)     For the purpose of determining whether a Contract of Sellers shall be included as a Purchased Asset or an Excluded Asset, from and after the filing of the Approval Motion, all such Contracts shall be treated as follows:

(i)     No later than one (1) Business Day prior to the Closing Date, Purchaser shall notify Sellers in writing of those Contracts which Purchaser desires to be designated to be assumed by Sellers and assigned to Purchaser on the Closing Date.

(ii)     No Contracts entered into during the pendency of the Bankruptcy Cases shall be designated to be assigned to Purchaser unless Purchaser notifies Sellers in writing that it will purchase such Contract prior to the Closing Date, in which case Sellers shall seek authority to assign such Contract to Purchaser.

(iii)     Until the date that is 150 days following the Closing Date (the "Designation Deadline"); provided that the Designation Deadline may be extended by Purchaser in its sole discretion for up to two successive 90 day periods subject to Purchaser's continued reimburse of Sellers for any and all costs and expenses of retaining Contracts, and all Liabilities that arise in the ordinary course of business, during such extension period, as provided in the Transition Services Agreement including all administrative costs of the Bankruptcy Cases (i.e., the U.S. Trustee's fees, and expenses of Sellers' professionals, including legal counsel) as and to the extent such costs are contemplated in the Sellers' Budget for the Bankruptcy Cases attached hereto as Exhibit A (the "Budget")). Purchaser shall have the right to designate additional Designated Contracts for no additional Consideration, except for the obligations set forth under the Transition Services Agreement and the payment of Cure Amounts associated with any Designated Contracts. Any such Designated Contracts will be deemed to be included as a Business Contract or a Real Property Lease, as applicable, and included as a Purchased Asset hereunder.

4895-8439-9877.1

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2572 of 2637
2572
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 13 of 61

(iv)    All other Contracts not expressly assumed by Purchaser prior to the Designation Deadline (each a "<u>Disclaimed Contract</u>") shall be deemed to be Excluded Assets.  With respect to each Contract that is an Excluded Asset, Sellers hereby agree that, without the prior written consent of Purchaser, they shall not, and shall not permit any of their respective Affiliates to, reject any such Contract prior to the earlier to occur of the expiration of (x) the Designation Deadline and (y) the date that Purchaser provides written notice designating such Contract as a Disclaimed Contract.

Purchaser shall provide, with respect to any Designated Contract, such information or documentation related to "adequate assurance of future performance" as shall be reasonably required in connection with the assumption and assignment of such Contract, and upon Bankruptcy Court approval for the assumption and assignment thereof to Purchaser, any such Designated Contract shall be deemed to be a Business Contract and to constitute a Purchased Asset hereunder.  Notwithstanding anything to the contrary set forth in this Agreement, to the extent that, prior to Closing, any Contract is not subject to an order of the Bankruptcy Court with respect to the assumption and assignment of such Contract, any Liabilities of Sellers related to such Contract shall be the responsibility of Sellers until such Contract is either assumed by Sellers and assigned to Purchaser or rejected by Sellers as permitted pursuant to this <u>Section 1.4(c)</u>; <u>provided</u> that, notwithstanding the foregoing, Purchaser shall reimburse Sellers for any and all costs and expenses of retaining such Contracts, and all Liabilities that arise in the ordinary course of business, as provided in the Transition Services Agreement until the earlier to occur of (x) five (5) Business Days following the date that Purchaser provides written notice designating any such Contract as a Disclaimed Contract and (y) the date that is five (5) Business Days after the Designation Deadline.

(d)    At Closing, to the extent not previously paid, Purchaser shall pay or cause to be paid (and shall reimburse or cause to be reimbursed to Sellers any amounts paid after the date hereof in respect of) any and all Cure Amounts in respect of all Designated Contracts then identified.  Additionally, following the Closing, Purchaser shall pay or cause to be paid (and shall reimburse or cause to be reimbursed to Sellers any amounts paid after the date hereof in respect of) any and all Cure Amounts in respect of all Designated Contracts as they become so designated and assigned to Purchaser.  Purchaser's obligations under this <u>Section 1.4(d)</u> shall be in addition to any obligations under the Transition Services Agreement.

(e)    Nothing in this Agreement shall be construed as an attempt by Sellers to assign any Contract to the extent that such Contract is not assignable under the Bankruptcy Code or otherwise without the consent of the other party or parties thereto, and the consent of such other party has not been given or received, as applicable.  With respect to any Contract for which the consent of a party thereto to the assignment thereof shall not have been obtained at Closing and any claim, right or benefit arising thereunder or resulting therefrom, Sellers and Purchaser shall use their reasonable good faith efforts to obtain as expeditiously as possible the written consent of the other party or parties to such Contract necessary for the assignment thereof to Purchaser; <u>provided</u> Purchaser shall be ultimately responsible for obtaining any such consent(s).  Unless and until any such consent, waiver,

confirmation, novation or approval is obtained, Sellers and Purchaser shall cooperate to establish an arrangement reasonably satisfactory to Sellers and Purchaser under which Purchaser would obtain the claims, rights and benefits and assume the corresponding Liabilities and obligations thereunder (including by means of any subcontracting, sublicensing or subleasing arrangement).  In such event, (i) Sellers will hold in trust for and promptly pay to Purchaser, when received, all moneys received by them under any such Contract or any claim, right or benefit arising thereunder, (ii) Purchaser will promptly pay, perform or discharge, when due, any and all obligations and Liabilities arising thereunder, other than those being contested in good faith, and (iii) Purchaser shall reimburse Sellers for all reasonable costs and expenses, including fees and costs of professionals, incurred by Sellers in connection with any such Contract.  Purchaser acknowledges that no adjustment to the Purchase Price shall be made for any such Contracts that are not assigned and that Purchaser shall have no claim against Sellers in respect of such unassigned Contracts. Nothing in this paragraph shall be deemed a waiver of Purchaser's right to receive an effective assignment of all of the Purchased Assets at Closing, save and except for any Contracts that Sellers are unable to assume or assign to Purchaser under applicable Law or order of any court of competent jurisdiction, nor shall any Contracts covered by this paragraph be deemed to constitute Excluded Assets solely by virtue of this paragraph.  Sellers' obligations under this paragraph shall terminate on the date that is 150 days after the Closing Date.

(f)     Promptly following the Designation Deadline, Purchaser shall file with the Bankruptcy Court a final list of all Business Contracts and Real Property Leases.

(g)     Notwithstanding anything to the contrary in this Section 1.4, Sellers shall have no obligation to renew, replace or extend the term of any Contracts or otherwise preserve or prevent the expiration of any Contracts, or incur any costs, expenses or other liabilities or obligations associated with any Contracts not reimbursable by Purchaser under this Agreement or the Transition Services Agreement.

(h)     Until the Designation Deadline, for no additional consideration, except for any obligations under the Transition Services Agreement or Cure Amounts due in connection with the subject assets, Purchaser shall be entitled to amend Schedules 1.2(b), 1.2(g), 1.2(h) and 1.2(i), or any other Schedule(s) affected by such designation, and to designate (by delivery of written notice to Sellers of such designation) additional assets and liabilities to assume and have assigned to Purchaser by Sellers, which assets and liabilities will thereinafter be deemed to constitute "Purchased Assets," and "Assumed Liabilities," hereunder, as appropriate, notwithstanding the fact that such assets and liabilities previously may have been considered Excluded Assets or Excluded Liabilities hereunder and any and all Schedule(s) affected by such designation shall be deemed amended automatically upon receipt of such notice without further action by the Parties or order of the Bankruptcy Court; provided, however, that Purchaser shall not be entitled to designate any Excluded Assets under Sections 1.3(a), (d), (j), (m), (n), (o), or (q) as Purchased Assets without the express prior written consent of Sellers and, until all obligations owing to the DIP Agent have been indefeasibly paid and discharged in full, DIP Agent; provided, further, that the Purchaser shall in no event be entitled to designate any Excluded Assets under Sections 1.3(h) or (i) as Purchased Assets, and any amendment

9

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2574 of 2637
2574
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 15 of 61

or waiver with respect to Sections 1.3(h) or (i) shall require the express prior written consent of the Prepetition Secured Parties and, until all obligations owing to the DIP Agent have been indefeasibly paid and discharged in full, DIP Agent.  In the event of any designation pursuant to Section 1.4, Sellers reserve the right to amend or supplement any Schedule(s) or disclosures under this Agreement or any Transaction Documents solely to account for such designation, which amendment or supplement shall be deemed made as of the date hereof.  For the avoidance of doubt, this Section 1.4(h): (i) shall not apply to designation of Contracts as assumed or excluded, which shall occur in accordance with the procedures set forth in Sections 1.4(a)-(g) above, and (ii) shall not result in any adjustments to the Purchase Price.

(i)     On the Closing Date, the Parties shall enter into a Transition Services Agreement, on terms mutually acceptable to the Parties, which shall provide, among other terms, (i) Purchaser shall perform any and all obligations of the Sellers under any Contracts from and after the Closing until such Contract is designated as a Disclaimed Contract, (ii) Purchaser shall pay certain expenses associated with the maintenance or operations of the Refinery or other assets of the Debtors from and after Closing until the date that is five (5) Business Days after the Designation Deadline (unless such asset is designated a Purchased Asset, which case Purchaser shall be exclusively responsible for such assets and any related costs and expenses on and after such designation), (iii) Purchaser shall reimburse Sellers for any and all costs and expenses incurred in connection with any Contract on or after the Closing Date until such Contract is designated as a Disclaimed Contract, (iv) Purchaser shall indemnify and hold harmless Sellers, and each of them, and each of their respective officers, directors, employees, agents, professionals and any other individual or entity acting by or through or on behalf of Sellers, or any of them (collectively, the "Indemnified Parties"), from any and all actions, causes of action, claims, demands, damages, judgments, Liabilities, debts, dues and suits of every kind, nature and description whatsoever, arising directly or indirectly out of the Purchaser's performance of any Contracts or Purchaser's or Sellers' actions that are required to be taken pursuant to the Transition Services Agreement on or after the Closing Date, (v) release of the Indemnified Parties from any and all actions, causes of action, claims, demands, damages, judgments, Liabilities, debts, dues and suits of every kind, nature and description whatsoever, arising directly or indirectly out of arising out of the Indemnified Parties' actions in connection with the Contracts or any actions taken pursuant to the Transition Services Agreement on or after the Closing Date, and (vi) the effectiveness of the Transition Services Agreement shall be subject to approval of the Bankruptcy Court as a Transaction Document.  For the avoidance of doubt, to the extent there is any conflict between the terms of this Section 1.4(i) and the terms of the Transition Services Agreement, the terms of the Transition Services Agreement shall govern.

ARTICLE II
Assumption of Liabilities

2.1     Agreement to Assume.  At the Closing, Purchaser shall assume and agree to pay, perform and discharge when due, solely the liabilities and obligations of Sellers described in Section 2.2 (the "Assumed Liabilities").  Purchaser shall only be liable for Assumed Liabilities.

10

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2575 of 2637
2575
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 16 of 61

All other liabilities and obligations of Sellers, including those enumerated in <u>Section 2.3</u>, are collectively referred to herein as "<u>Excluded Liabilities</u>".  Purchaser shall not assume, be deemed to have assumed, or otherwise be responsible for, any Excluded Liabilities unless and until designated as an Assumed Liability in accordance with Section 1.4(h).

      2.2    <u>Description of Assumed Liabilities</u>.  The following liabilities and obligations of Sellers (and only the following liabilities and obligations) shall constitute the Assumed Liabilities:

      (a)    all Liabilities (including for the avoidance of doubt, all Environmental Liabilities) relating to or arising out of the Purchased Assets on or after the Closing Date (or, in the case of any Purchased Assets that are designated for assignment or transfer to Purchaser following the Closing, after the date of such assignment or transfer, except as otherwise provided in the Transition Services Agreement);

      (b)    all Post-Closing Litigation Liabilities with respect to the Purchased Assets;

      (c)    all Cure Amounts with respect to the Business Contracts and the Real Property Leases;

      (d)    all costs and expenses necessary in connection with providing "adequate assurance of future performance" with respect to the Business Contracts and Real Property Leases (as contemplated by Section 365 of the Bankruptcy Code) for the period commencing on or after the Closing;

      (e)    all Liabilities related to the Business Contracts, Real Property Leases and Business Permits, arising out of or relating to any act, omission, circumstance or other Event occurring on or after the Closing Date (in the case of Contracts that are ultimately designated as Disclaimed Contracts, Purchaser shall reimburse Sellers for all Liabilities that arise in the ordinary course of business after the Closing through and including the earlier to occur of (x) five (5) Business Days following the date that Purchaser provides written notice designating any such Contract as a Disclaimed Contract and (y) the date that is five (5) Business Days after the Designation Deadline);

      (f)    all accounts payable to Sellers' third party trade creditors that relate to the Purchased Assets and are in respect of goods or services that are provided to or for the benefit of the Purchaser following the Closing (or, in the case of Purchased Assets that are designated as such after the Closing, following the date such Purchased Asset is transferred to Purchaser), including any unresolved vendor rebates or credits associated with such trade creditors that are unpaid, uncollected or unresolved, as the case may be, at the Closing (or, in the case of Purchased Assets that are designated as such after the Closing, following the date such Purchased Asset is transferred to Purchaser);

      (g)    any Transfer Taxes;

      (h)    any Liability for any Tax or Taxes arising out of or relating to the ownership of the Purchased Assets with respect to any Post-Closing Period (or, in the case of any Purchased Assets that are designated for assignment to Purchaser following the Closing, after the date of such assignment); <u>provided</u> that any liability under the Refinery Operating

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2576 of 2637
2576
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 17 of 61

Agreement for any Post-Closing Period shall not be considered a Tax Liability arising out of the ownership of the Purchased Assets unless and until the Refinery Operating Agreement is designated as a Designated Contract; and

(i)      all Environmental Liabilities arising out of or relating to any act, omission or circumstance that occurred solely with respect to the Purchased Assets prior to the Closing (or, in the case of any Purchased Assets that are designated for assignment to Purchaser following the Closing, prior to the date of such assignment), including for the avoidance of doubt, the presence of Hazardous Materials arising from Sellers' or its predecessors' former refinery operations and located at the Purchased Assets, solely to the extent such Liabilities are exacerbated, triggered, increased, or have their timing accelerated by any act or omission of, or any delay caused by, Purchaser or any of its Affiliates, their respective successors or assigns or their respective Representatives following the Closing (or, in the case of any Purchased Assets that are designated for assignment to Purchaser following the Closing, after the date of such assignment); provided, that, all Environmental Liabilities arising out of or relating to Events or conditions occurring or existing prior to Closing shall not be Assumed Liabilities solely by virtue of Purchaser discovering, identifying or quantifying such Environmental Liabilities through sampling of environmental media if such sampling is (i) required by Environmental Law or by a Governmental Entity, (ii) required to be conducted in response to a Third Party Claim alleging that Hazardous Materials have migrated offsite from the Business Real Property, or (iii) performed to assess known or reasonably suspected conditions that reasonably could be expected to result in imminent and substantial harm to human health or the environment.

2.3      Excluded Liabilities.  The Excluded Liabilities shall consist of all Liabilities other than the Assumed Liabilities.  The Excluded Liabilities shall include, but shall not be limited to, the following:

(a)      all Liabilities (other than Environmental Liabilities) relating to or arising out of any breach or violation of any Law (other than any Environmental Law), Business Contract, Real Property Lease or any Business Permit occurring prior to Closing (or, in the case of any Business Contract, Real Property Lease or Business Permit that is designated for assignment to Purchaser following the Closing, prior to the date of such assignment, except as otherwise provided in the Transition Services Agreement);

(b)      any Liability arising out of or relating to the Excluded Assets, except as otherwise provided in the Transition Services Agreement;

(c)      any Liability arising out of or relating to this Agreement or any Transaction Document for which any Seller has responsibility;

(d)      all Liabilities in respect of any employee or other service provider of Sellers or any of its Affiliates (whether arising prior to, on or after the Closing Date), including any severance obligations that accrue under any severance plan of any Seller with respect to any of such Seller's employees;

4895-8439-9877.1

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2577 of 2637
2577
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 18 of 61

(e)     all Environmental Liabilities that are not Assumed Liabilities;

(f)     all Liabilities for fees and expenses (i) relating to the negotiation and preparation of this Agreement and the Transaction Documents and (ii) relating to the transactions contemplated by this Agreement and the Transaction Documents, in each case, to the extent incurred by Sellers or their respective Affiliates;

(g)     any Liability for any Tax or Taxes of any Seller or its Affiliates for any taxable period;

(h)     any Liability for any Tax or Taxes arising out of or relating to the operation of the Business (as currently or formerly conducted) or the ownership of the Purchased Assets in any Pre-Closing Period (or, in the case of any Purchased Assets that are designated for assignment to Purchaser following the Closing, prior to the date of such assignment, except as otherwise provided in the Transition Services Agreement), including any Property Taxes;

(i)     any Liability for any Quarterly Refinery Payments incurred or accruing prior to the date that the Refinery Operating Agreement is designated for assignment to Purchaser, if ever; and

(j)     any Liability or obligation arising out of or relating to Indebtedness of any Seller or any of its Affiliates.

ARTICLE III
Purchase Price, Manner of Payment; Closing; Deposit

3.1     <u>Purchase Price; Delivery of Funds</u>.   At the Closing, Purchaser shall in full consideration for the sale and transfer by Sellers of the Purchased Assets (a) pay to Sellers an amount (such amount, the "<u>Closing Payment</u>") equal to (i) the Purchase Price, less (ii) the Good Faith Deposit Amount, by wire transfer of immediately available funds to an account or accounts designated by Sellers in writing to Purchaser at least three (3) Business Days prior to the Closing; (b) together with Sellers, execute and deliver a joint written instruction to the Escrow Agent instructing it to release from the Escrow Account to Sellers by wire transfer of immediately available funds to an account or accounts designated by Sellers, an amount equal to the Good Faith Deposit Amount, and (c) assume the Assumed Liabilities.

3.2     <u>Good Faith Escrow Deposit</u>.

(a)     Purchaser has paid to the Escrow Agent the Good Faith Deposit Amount and any Additional Deposit Amount, which funds shall be held in a segregated trust account by the Escrow Agent and released by the Escrow Agent only in accordance with the terms of this Agreement.

(b)     If the Closing occurs, then the Good Faith Deposit Amount, shall be paid to Sellers and the applicable Parties shall submit joint written instructions to the Escrow Agent (in accordance with <u>Section 3.1</u>) to give effect to the same.

13

Case 4:22-cv-00040 Document 7 Filed on 02/08/22 in TXSD Page 2578 of 2637
2578
Case 21-32351 Document 829-2 Filed in TXSB on 11/30/21 Page 19 of 61

(c)     If the Closing does not occur as a result of the termination of this Agreement pursuant to Section 8.1(e), then within five (5) Business Days of such termination, the Good Faith Deposit Amount shall be disbursed to Sellers by the Escrow Agent as liquidated damages and the applicable Parties shall submit joint written instructions to the Escrow Agent to give effect to the same.

(d)     If the Closing does not occur as a result of the termination of this Agreement for any reason other than as set forth in Section 3.2(c), then the Good Faith Deposit Amount shall be returned to Purchaser by the Escrow Agent within five (5) Business Days of such termination, and the applicable Parties shall submit joint written instructions to the Escrow Agent to give effect to the same.

(e)     The Parties acknowledge that the agreements contained in this Section 3.2 are an integral part of the transactions contemplated by this Agreement and that without these agreements neither Sellers nor Purchaser would enter into this Agreement.

3.3     Time and Place of Closing.  Subject to the satisfaction or waiver of all of the conditions set forth in Article VII, the closing of the Purchase (the "Closing") shall take place at the offices of Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, New York 10111, or such other location agreed upon by Sellers and Purchaser, as soon as practicable, but in any event within five (5) Business Days, after the last of the conditions set forth in Article VII is satisfied or waived (other than those conditions that by their nature are to be satisfied at the Closing, but subject to the fulfillment or waiver of those conditions), or at such other time, date or place as the Parties shall agree in writing; provided, however, that the Closing Date (defined hereinafter) shall occur no later than December 17, 2021, at 5:00 p.m. (New York City time), unless extended by Sellers, with the consent of the DIP Agent and Prepetition Secured Parties.  Such date of Closing is herein referred to as the "Closing Date".

3.4     Closing Deliverables.

(a)     At the Closing, Sellers shall deliver or cause to be delivered to Purchaser:

(i)     a certificate in a form reasonably satisfactory to Purchaser signed by an authorized officer of each Seller, dated as of the Closing Date, confirming the matters set forth in Sections 7.2(a) and (b) with respect to each Seller;

(ii)     counterparts to the assignment, transfer and conveyance instruments listed on Schedule 3.4, in each case, duly executed by each Seller (as applicable);

(iii)     a counterpart to the Bill of Sale and Assignment and Assumption Agreement, duly executed by each Seller;

(iv)     a counterpart to the Transition Services Agreement, duly executed by each Seller (or their applicable Affiliates); and

(v)     written instructions to the Escrow Agent to release the Good Faith Deposit Amount pursuant to Section 3.1.

14

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2579 of 2637
2579
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 20 of 61

(b)      At the Closing, Purchaser shall deliver or cause to be delivered to Sellers, and Sellers shall have received:

(i)      the Closing Payment by wire transfer of immediately available funds to an account or accounts designated by Sellers in writing to Purchaser at least three Business Days prior to the Closing;

(ii)      a certificate in a form reasonably satisfactory to Sellers signed by an authorized officer of Purchaser, dated as of the Closing Date, confirming the matters set forth in <u>Sections 7.1(a)</u> and <u>(b)</u>;

(iii)      counterparts to the assignment, transfer and conveyance instruments listed on <u>Schedule 3.4</u>, in each case, duly executed by Purchaser (as applicable);

(iv)      a counterpart to the Bill of Sale and Assignment and Assumption Agreement, duly executed by Purchaser;

(v)      a counterpart to the Transition Services Agreement, duly executed by Purchaser; and

(vi)      written instructions to the Escrow Agent to release the Good Faith Deposit Amount pursuant to <u>Section 3.1</u>.

3.5      <u>Allocation of Purchase Price</u>.  The purchase price (as determined for U.S. federal income Tax purposes) shall be allocated among the Purchased Assets within 120 days after the Closing in the manner required by Section 1060 of the Code, and as proposed by Sellers and consented to by Purchaser prior to the Closing (such consent to not be unreasonably withheld). Notwithstanding the foregoing, nothing in this Agreement shall be construed to mean that a Party hereto or other person must:  (a) use, for any one or more purposes, any price or other allocation set forth or provided for in this Agreement if such Party or person reasonably believes or reasonably is advised that such use is not in accordance with applicable Law; or (b) make or file, or cooperate in the making or filing of, any return or report to any Governmental Entity in any manner that such Party or person reasonably believes or is reasonably advised is not in accordance with applicable Law.


ARTICLE IV
Representations and Warranties of Sellers

Except as set forth in the disclosure letter delivered by Sellers to Purchaser (the "<u>Seller Disclosure Letter</u>") concurrently with the execution of this Agreement (it being agreed that any matter disclosed pursuant to any section of the Seller Disclosure Letter shall be deemed disclosed for purposes of any other section of the Seller Disclosure Letter to the extent the applicability of the disclosure to such other section is reasonably apparent on the face of such disclosure), as may be amended, Sellers hereby represent and warrant to Purchaser as follows as of the date hereof and as of the Closing Date (or as of such other date as may be specified herein):

Case 4:22-cv-00040  Document 7  Filed on 02/08/22 in TXSD  Page 2580 of 2637
2580
Case 21-32351  Document 829-2  Filed in TXSB on 11/30/21  Page 21 of 61

4.1  <u>Due Organization, Good Standing and Limited Liability Company Power</u>.  Each Seller is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization.  Each Seller has all requisite limited liability company power and authority to own, lease and operate its assets and properties and conduct its business as now being conducted. Each Seller is in good standing under the laws of each jurisdiction where the character of its assets or properties or the conduct of its business requires such qualification, except where the failure to be in good standing would not reasonably be expected to materially and adversely affect the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole, or prevent or materially delay beyond the Termination Date Sellers' ability to consummate the transactions contemplated by this Agreement or the Transaction Documents.

4.2  <u>Authorization; Noncontravention</u>.

(a)  Subject to obtaining Bankruptcy Court approval pursuant to the Sale Order, each Seller has the requisite limited liability company power and authority and has taken all limited liability company action necessary to execute and deliver this Agreement, the Transaction Documents and all other instruments and agreements to be delivered by Sellers as contemplated hereby, to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby.  Subject to obtaining Bankruptcy Court approval pursuant to the Sale Order, the execution, delivery and performance by Sellers of this Agreement, the Transaction Documents and all other instruments and agreements to be delivered by Sellers as contemplated hereby, the consummation by Sellers of the transactions contemplated hereby and thereby and the performance of its obligations hereunder and thereunder have been, and in the case of documents required to be delivered at the Closing will be, duly authorized and approved by all necessary limited liability company, member or other action.  This Agreement has been, and the Transaction Documents and all other instruments and agreements to be executed and delivered by Sellers as contemplated hereby will be, duly executed and delivered by Sellers.  Subject to obtaining Bankruptcy Court approval pursuant to the Sale Order, assuming that this Agreement, the Transaction Documents and all such other instruments and agreements constitute valid and binding obligations of Purchaser and each other Person (other than any Seller or any Affiliate thereof) party hereto and thereto, this Agreement, the Transaction Documents and all such other instruments and agreements constitute valid and binding obligations of Sellers, enforceable against each applicable Seller in accordance with the terms thereof, except to the extent that such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium  or other similar Laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether considered in a proceeding in equity or at law).

(b)  Except as a result of the Bankruptcy Cases and, subject to obtaining Bankruptcy Court approval pursuant to the Sale Order, the execution and delivery by Sellers of this Agreement, the Transaction Documents and all other instruments and agreements to be delivered by Sellers as contemplated hereby do not, and the consummation of the transactions contemplated hereby and thereby will not:

(i)  conflict with any of the provisions of any Seller's certificate of formation or other formational documents;

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2581 of 2637
2581
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 22 of 61

(ii)      except as provided in <u>Section 4.2(b)(ii)</u> of the Seller Disclosure Letter and subject to receipt of the Consents set forth in <u>Section 4.3</u> of the Seller Disclosure Letter, conflict with or result in a breach of, or constitute a default under or give rise to any right of termination, cancellation, modification or acceleration (including any right of first refusal or similar right) or the loss of a benefit under, or require the Consent of or giving of notice to any Person under any Business Contract, Real Property Lease or Business Permit (in each case, with or without notice or lapse or time or both); except, in the case of this clause (ii) for such conflicts or breaches or Consents or notices that (if not received) would not reasonably be expected to materially and adversely affect the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole, or prevent or materially delay beyond the Termination Date Sellers' ability to consummate the transactions contemplated by this Agreement or the Transaction Documents;

(iii)      subject to the receipt of the Consents referred to in <u>Section 4.3</u> of the Seller Disclosure Letter, contravene any Law or any Order applicable to Sellers or by which any of their properties or assets are bound except such contraventions that would not reasonably be expected to materially and adversely affect the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole, or prevent or materially delay beyond the Termination Date Sellers' ability to consummate the transactions contemplated by this Agreement or the Transaction Documents; or

(iv)      result in the creation or imposition of any Lien (other than a Permitted Lien) on any of the Purchased Assets.

4.3      <u>Governmental Consents and Approvals</u>.  Except as a result of the Bankruptcy Cases and, subject to obtaining Bankruptcy Court approval pursuant to the entry of the Sale Order and the expiration, or waiver by the Bankruptcy Court, of the 14-day period set forth in rules 6004(h) and 3020(e) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), as applicable, except as set forth in <u>Section 4.3</u> of the Seller Disclosure Letter, no Consent of or filing with any Governmental Entity must be obtained or made by Sellers in connection with the execution and delivery of this Agreement or any Transaction Document by Sellers or the consummation by Sellers of the transactions contemplated by this Agreement or any Transaction Document, except for any Consents that, if not obtained or made, would not reasonably be expected to materially and adversely affect the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole, or prevent or materially delay beyond the Termination Date Sellers' ability to consummate the transactions contemplated by this Agreement or the Transaction Documents.

4.4      <u>Property</u>.

(a)      Other than the Real Property, no Seller owns any other real property.  One or more Sellers has good and valid title to the Purchased Real Property (other than any Excluded Asset), subject to Permitted Liens.  There are no outstanding options, rights of first offer or rights of first refusal to purchase any Purchased Real Property or any portion thereof or interest therein.  No Seller has leased or otherwise granted to any Person the

4895-8439-9877.1

right to use or occupy the Purchased Real Property or any material portion thereof, except as set forth in <u>Section 4.4(a)</u> of the Seller Disclosure Letter.

(b)     <u>Section 4.4(b)</u> of the Seller Disclosure Letter contains an accurate and complete list as of the date hereof of all Real Property Leases and all other real property leases and subleases to which a Seller is a party.  With respect to each Real Property Lease pursuant to which a Seller is a lessee or sublessee, such Seller has valid leasehold interests in all leased real property described in such Real Property Lease, free and clear of any and all Liens, except for Permitted Liens.  Each Real Property Lease is a valid and binding obligation of the Seller party thereto and, to the Knowledge of Sellers, is enforceable against the other parties thereto in accordance with the terms thereof, in each case, except to the extent that such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium  or other similar Laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether considered in a proceeding in equity or at law).  Except as set forth in <u>Section 4.4(b)</u> of the Seller Disclosure Letter, there exists no material default or event of default (with or without notice or lapse of time or both) with respect to any Real Property Lease by a Seller or, to the Knowledge of Sellers, by any other party thereto, and no Seller has received or delivered any notice with respect to any alleged material default that has not been rescinded, completely cured, or will be cured on or before the Closing Date pursuant to §365 of the Bankruptcy Code or otherwise.

(c)     To the Knowledge of Sellers, there is no, and no Seller has received written notice of any, existing or threatened change in the zoning classification of any Business Real Property (or any portion thereof) from that in effect on the date of this Agreement, in each instance, which would reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.  All water, sewer, gas, electric, telephone and drainage facilities and all other utilities and public or quasi-public improvements related thereto required by Law with respect to, or required for the operation of, the Business at the Business Real Property, are installed and available to serve the Business Real Property.  No condemnation proceeding, lawsuit or administrative action or other matter affecting and adversely impairing the current use or occupancy of the Business Real Property is pending or, to the Knowledge of Sellers, threatened in writing with respect to any Business Real Property which has had or would reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.  There has been no casualty damage at any of the Business Real Property that has had or would reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

4.5     <u>Title to Purchased Assets</u>.  Except as set forth in <u>Section 4.5</u> of the Seller Disclosure Letter, and excluding Purchased Real Property (which is governed by <u>Section 4.4(a)</u>), one or more Sellers own and has good and valid title to, or a valid leasehold interest in, all personal property included in the Purchased Assets, free and clear of all Liens, except for Permitted Liens.

4.6     <u>Affiliate Transactions</u>.  Except as disclosed in <u>Section 4.6</u> of the Seller Disclosure Letter and except for employment and consultant relationships and compensation, benefits, travel advances and employee or consultant loans to any officer, director, employee or consultant of Seller, in each case, in the ordinary course of business, there is no Contract or Liability relating primarily to the Business, the Purchased Assets or the Assumed Liabilities between (a) a Seller,

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2583 of 2637
2583
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 24 of 61

on the one hand, and (b) any Affiliate, equity holder, option holder, officer, member, partner or director of a Seller (in each case that is not also a Seller), on the other hand, that remains in force and provides for obligations of any party from and after the Closing.

4.7     Material Contracts.

(a)     Section 4.7(a) of the Seller Disclosure Letter sets forth an accurate, correct and complete list of the following Contracts to which a Seller is a party and which are currently in effect as of the date hereof:

(i)     each Contract relating to Indebtedness of the Business or any of the Purchased Assets (in each case, whether incurred, assumed, guaranteed or secured by any asset);

(ii)    each Contract whereby a Seller has granted a Lien in respect of any of the Purchased Assets;

(iii)   each Contract containing any covenant limiting the freedom of a Seller or any of its Affiliates (A) to compete with any Person, engage in any line of business or exploit the Purchased Assets, in each case, in any geographic territory, (B) which grants to any Person any exclusivity with respect to any geographic territory, any customer or any product or service, or (C) to solicit for employment, hire or employ any Person;

(iv)    each Contract that requires capital expenditures or other outstanding payments to be made by a Seller in excess of $100,000, in each case, following the date hereof;

(v)     each Contract involving a joint venture, partnership, limited liability company or other arrangement providing for the sharing of profits, losses, costs or liabilities with any other Person relating to the Business, the Purchased Assets or the Assumed Liabilities;

(vi)    each Contract that requires (or may require in certain circumstances) in accordance with its terms the provision of credit support, collateral, a guarantee or similar financial assurance in respect of the Business, the Purchased Assets or the Assumed Liabilities;

(vii)   each Contract that (A) provides services for a fixed price or maximum fee, or pursuant to any cap or similar provisions; (B) grants "most favored nation" status (or similar status) to a Person (whether in respect of pricing or otherwise); or (C) provides any performance guarantee, material rebates, discounts, incentive or volume credits;

(viii)  each Contract with any Governmental Entity relating to the Business, the Purchased Assets or the Assumed Liabilities;

19

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2584 of 2637
2584
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 25 of 61

(ix)    Contracts relating to any interest rate, currency or commodity derivatives or hedging transaction;

(x)    Contracts containing any "change of control" or similar provisions; and

(xi)    Contracts with any employees or other service providers of the Business providing for any severance Liabilities.

(b)    The Contracts required to be listed in Section 4.7(a), together with the Business Contracts and the Real Property Leases are referred to as "Material Contracts". True, correct and complete copies of each Material Contract have been made available to Purchaser prior to the date hereof. Each Business Contract is a valid and binding obligation of a Seller (except for any breach or default that results from the insolvency of a Seller or the commencement of the Bankruptcy Cases and any breach or default to be cured through the payment of the Cure Amounts) and to the Knowledge of Sellers, enforceable against the other parties thereto in accordance with the terms thereof, except to the extent that such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar Laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether considered in a proceeding in equity or at law). Except as set forth in Section 4.7(b) of the Seller Disclosure Letter and any breach or default that results from the insolvency of a Seller or the commencement of the Bankruptcy Cases and any breach or default to be cured through the payment of the Cure Amounts, there exists no material default or event of default (with or without notice or lapse of time or both) with respect to any Business Contract by a Seller or, to the Knowledge of Sellers, by any other party thereto and no Seller has received or delivered any notice with respect to any alleged material default that has not been rescinded or cured.

4.8    Intellectual Property Rights and Claims.

(a)    The Intellectual Property set forth in Section 4.8(a) of the Seller Disclosure Letter identifies all registrations and applications for the Intellectual Property owned by each Seller and used or held for use by Sellers in the Business as presently conducted.  The Intellectual Property required to be set forth in Section 4.8(a) of the Seller Disclosure Letter is subsisting and has not been adjudicated to be invalid or unenforceable in whole or part, and to the Knowledge of Sellers, is valid and enforceable, and to the Knowledge of Sellers, no Seller is aware of any uses of any item of such Intellectual Property that could be expected to lead to such item becoming invalid or unenforceable.

(b)    Except as set forth in Section 4.8(b) of the Seller Disclosure Letter, one or more Sellers owns all right, title, and interest to or is licensed to use the Business Intellectual Property, free and clear of any Liens, other than Permitted Liens.

(c)    The operation of the Business as currently conducted and the use of the Intellectual Property in connection therewith, to the Knowledge of Sellers, do not conflict with, infringe, misappropriate, dilute, misuse or otherwise violate the intellectual property rights of any third-party.  No claim, action, suit, investigation, litigation or proceeding has

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2585 of 2637
2585
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 26 of 61

been asserted or is pending or, to the Knowledge of Sellers, threatened against any Seller with respect to the foregoing.  To the Knowledge of Sellers, no Third Party is infringing or misappropriating any Business Intellectual Property.

(d)     Except for claims that have since been satisfactorily resolved or for which the statute of limitations has lapsed, no Seller has received any written notice from any Third Party challenging the right of such Seller to use any of the Business Intellectual Property that would reasonably be expected to materially and adversely affect the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole.

(e)     There are no pending actions, suits or arbitrations by, or before any Governmental Entity for an infringement or misappropriation by any Seller of any Intellectual Property owned by any Third Party which would reasonably be expected to materially and adversely affect the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole.

4.9     <u>Tax Matters</u>.  Except as disclosed in <u>Section 4.9</u> of the Seller Disclosure Letter:

(a)     Sellers have timely filed or caused to be timely filed, taking into account any applicable extensions, with the appropriate taxing authorities all income Tax Returns and all material non-income Tax Returns with respect to the Business or the Purchased Assets.  All such Returns are correct and complete in all material respects.  No Seller is currently the beneficiary of any extension of time within which to file any material tax Return with respect to the Business or the Purchased Assets.  Since January 1, 2017, no written claim has been made by a Governmental Entity in a jurisdiction in which a Seller does not file Returns that such Seller is or may be subject to taxation by that jurisdiction with respect to Taxes that would be the subject of such Returns.

(b)     All income Tax Liabilities and all material non-income Tax Liabilities of each Seller due and payable with respect to the Business or the Purchased Assets, in each instance for all Pre-Closing Periods, have been timely paid, taking into account any applicable extensions, to the extent the non-payment of such Taxes could reasonably be expected to result in a Lien (other than a Permitted Lien) on the Purchased Assets.  There are no pending or, to the Knowledge of Sellers threatened in writing, audits, investigations, disputes, notices of deficiency, claims or other similar actions relating to Property Taxes or any other Taxes that are imposed on a periodic basis (which are not based on income) of a Seller with respect to the Business or the Purchased Assets.  No Seller has waived any statute of limitations in respect of non-income Taxes or agreed to any extension of time with respect to a non-income Tax assessment or deficiency.

4.10     <u>Financial Statements</u>.  Sellers have made available to Purchaser copies of the audited consolidated balance sheet of the Business as of December 31, 2020 (the "<u>Most Recent Balance Sheet</u>"), the related audited consolidated income statement and audited statement of cash flows for the twelve-month period ended December 31, 2020, together with the accompanying notes thereto (collectively, the "<u>Financial Statements</u>").  Each of the Financial Statements has been prepared in all material respects in conformity with U.S. generally accepted accounting principles ("<u>GAAP</u>") applied on a consistent basis during the periods involved (except as may be indicated

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2586 of 2637
2586
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 27 of 61

therein or in the notes thereto), and presents fairly in all material respects the consolidated financial position, results of operations and cash flows of the Business as at the dates and for the periods indicated therein.

4.11    Compliance with Laws.  Except as set forth in Section 4.11 of the Seller Disclosure Letter, (a) no Seller is, and no Seller has been in the past five (5) years, in material violation of any Law or Order applicable to the Business, the Purchased Assets or the Assumed Liabilities, and (b) no Seller has received any written notice alleging or, to the Knowledge of Seller, been subject to any investigation by any Governmental Entity concerning, any such material violation of a Law or Order.

4.12    Environmental Matters.    Except as disclosed in Section 4.12 of the Seller Disclosure Letter, with respect to the Business:

(a)    each Seller is in material compliance with all applicable Environmental Laws;

(b)    there are no Proceedings pending, or to the Knowledge of Sellers, threatened in writing, against any Seller that alleges any material violation of Environmental Law and no Seller has received from any Governmental Entity any written notice of material violation or alleged material violation of Environmental Law;

(c)    Sellers possess and are in material compliance with all Permits required under Environmental Laws to operate the Business as currently operated and as the Business is expected to be operated following the Closing as contemplated by the Transaction Documents ("Environmental Permits"), which such Environmental Permits are listed in Section 4.12(c) of the Seller Disclosure Letter, and there are no Proceedings pending, or to the Knowledge of Sellers threatened in writing, to modify, suspend, revoke or rescind any such Environmental Permits; and

(d)    from and after December 1, 2015, there have been no material releases of any Hazardous Materials (i) at, in, under, on, or from any Seller Facilities or (ii) at, in, under, on, or, from any third-party location for which a Seller has any material Liability under Environmental Law.

The representations and warranties in this Section 4.12 are the sole and exclusive representations and warranties of Sellers concerning any Environmental Law, Environmental Permits, Hazardous Material or other environmental matters.

4.13    Permits.    Except for matters that are the subject of the representations and warranties in Section 4.12 (Environmental Matters), which matters are covered solely by Section 4.12, Sellers possess all material Permits that are necessary for the lawful operation of the Business as currently conducted by Sellers in the ordinary course.  All such Permits are valid and have not lapsed, been cancelled, terminated or withdrawn.  Sellers are in compliance in all material respects with all such Permits.

4.14    Litigation.  Except as set forth in Section 4.14 of the Seller Disclosure Letter: (a) there is no Proceeding pending, or to the Knowledge of Sellers, threatened, against any Seller or

22

Case 4:22-cv-00040  Document 7  Filed on 02/08/22 in TXSD  Page 2587 of 2637
2587
Case 21-32351  Document 829-2  Filed in TXSB on 11/30/21  Page 28 of 61

its Affiliates in respect of the Business, the Purchased Assets or the Assumed Liabilities, and (b) there are no material Orders outstanding applicable to the Business, the Purchased Assets or the Assumed Liabilities that have not been fully satisfied.

4.15    Finders; Brokers.  Except for Jefferies LLC and GlassRatner Advisory & Capital LLC, doing business as B. Riley Advisory Services (whose fees are payable by Sellers), no agent, broker, Person or firm acting on behalf of Sellers is, or shall be, entitled to any broker's fees, finder's fees or commissions from Purchaser in connection with this Agreement or any Transaction Document or any of the transactions contemplated hereby or thereby.

4.16    Exclusivity of Representations; Projections, Etc..  The representations and warranties expressly made by Sellers in this Article IV and the Transaction Documents are the exclusive representations and warranties made by Sellers with respect to the Business, the Purchased Assets and the Assumed Liabilities.  Except for any representations and warranties expressly set forth in this Article IV (as qualified by the Seller Disclosure Letter) or the Transaction Documents, (a) the Purchased Assets and the Assumed Liabilities are sold "AS IS, WHERE IS," and Sellers expressly disclaim (on each of their own behalf and on behalf of each of their respective Affiliates) any other representations or warranties of any kind or nature, express or implied, as to Liabilities, operations of their businesses (as currently or formerly conducted), the title, condition, value or quality of assets of Sellers, or the prospects (financial and otherwise), risks and other incidents of Sellers and their businesses (as currently or formerly conducted), the Purchased Assets and the Assumed Liabilities, (b) SELLERS SPECIFICALLY DISCLAIM (ON EACH OF THEIR OWN BEHALF AND ON BEHALF OF EACH OF THEIR RESPECTIVE AFFILIATES), AND PURCHASER HEREBY WAIVES, ANY REPRESENTATION OR WARRANTY OF QUALITY, VALUE, DESIGN, OPERATION, MERCHANTABILITY, NON-INFRINGEMENT, FITNESS FOR A PARTICULAR PURPOSE, ELIGIBILITY FOR A PARTICULAR TRADE, CONFORMITY TO SAMPLES, OR CONDITION OF THE ASSETS OF SELLERS (INCLUDING THE PURCHASED ASSETS) OR ANY PART THEREOF, WHETHER LATENT OR PATENT, (c) no material or information provided by or communications made by any Seller or any of its Affiliates, or by any advisor thereof, whether by use of a "data room," or in any information memorandum, or otherwise, or by any broker or investment banker, will cause or create any warranty, express or implied, as to or in respect of any Seller, any Affiliate of any Seller or the title, condition, value or quality of their businesses (as currently or formerly conducted), the Purchased Assets or the Assumed Liabilities, and no other Person shall be deemed to have made, or shall be deemed to make, any other express or implied representation or warranty, either written or oral, on behalf of any Seller or any Affiliate thereof with respect to the subject matter contained herein, and (d) no Seller makes any representation or warranty whatsoever with respect to any estimates, projections and other forecasts and plans (including the reasonableness of the assumptions underlying such estimates, projections and forecasts).

ARTICLE V
Representations and Warranties of Purchaser

Purchaser hereby represents and warrants to Sellers as follows as of the date hereof and as of the Closing Date (or as of such other date as may be specified herein):

23

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2588 of 2637
2588
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 29 of 61

5.1     Due Organization, Good Standing and Power.   Purchaser organized, validly existing and in good standing under the laws of its jurisdiction of organization.  Purchaser has all requisite power and authority to own, lease and operate its assets and properties and conduct its business as now being conducted.  Purchaser is in good standing under the laws of each jurisdiction where the character of its assets or properties or the conduct of its business requires such qualification, except where the failure to be in good standing would not reasonably be expected to prevent, materially delay or impair Purchaser's ability to consummate the transactions contemplated by this Agreement or any Transaction Document.

5.2     Authorization; Noncontravention.

(a)     Purchaser has the requisite power and authority and has taken all action necessary to execute and deliver this Agreement, the Transaction Documents and all other instruments and agreements to be delivered by Purchaser as contemplated hereby, to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby. The execution, delivery and performance by Purchaser of this Agreement, the Transaction Documents and all other instruments and agreements to be delivered by Purchaser as contemplated hereby, the consummation by it of the transactions contemplated hereby and thereby and the performance of its obligations hereunder and thereunder have been, and in the case of documents required to be delivered at the Closing will be, duly authorized and approved by all necessary action of Purchaser. This Agreement has been, and the Transaction Documents and all other instruments and agreements to be executed and delivered by Purchaser as contemplated hereby will be, duly executed and delivered by Purchaser. Assuming that this Agreement, the Transaction Documents and all such other instruments and agreements constitute valid and binding obligations of Sellers and each other Person (other than Purchaser) party hereto and thereto, this Agreement and all such other instruments and agreements constitute valid and binding obligations of Purchaser, enforceable against Purchaser in accordance with the terms thereof, except to the extent that such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar Laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether considered in a proceeding in equity or at law).

(b)     Except as a result of the Bankruptcy Cases, the execution and delivery by Purchaser of this Agreement, the Transaction Documents and all other instruments and agreements to be delivered by Purchaser as contemplated hereby do not, and the consummation of the transactions contemplated hereby and thereby will not, (i) conflict with any of the provisions of the certificate of formation or governance documents of Purchaser, in each case, as amended to the date of this Agreement, (ii) conflict with or result in a breach of, or constitute a default under, any Contract or other instrument to which Purchaser is a party or by which Purchaser or any of its properties or assets are bound, or (iii) contravene any Law or any Order applicable to Purchaser or by which any of its properties or assets are bound, except in the case of clauses (ii) and (iii) above, for such conflicts, breaches, defaults, consents, approvals, authorizations, declarations, filings or notices which do not and would not reasonably be expected to, individually or in the aggregate, prevent or materially delay beyond the Termination Date Purchaser's ability to consummate the transactions contemplated by this Agreement.

24

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2589 of 2637
2589
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 30 of 61

5.3     Governmental Consents and Approvals.  Except as a result of the Bankruptcy Cases, no additional Consent of or filing with any Governmental Entity must be obtained or made by Purchaser in connection with the execution and delivery of this Agreement or any Transaction Document by Purchaser or the consummation by Purchaser of the transactions contemplated by this Agreement or any Transaction Document, except for any Consents which have been obtained or made or, if not made or obtained, do not and would not reasonably be expected to, individually or in the aggregate, prevent, materially delay or impair Purchaser's ability to consummate the transactions contemplated by this Agreement or any Transaction Document.

5.4     Financing.  Purchaser has sufficient funds to consummate the transactions contemplated hereby, to perform its obligations hereunder (including all payments to be made by it in connection herewith) and to pay its expenses related to this Agreement and the transactions contemplated hereby.  The obligations of Purchaser under this Agreement are not contingent on the availability of any equity or debt financing.

5.5     Solvency of Purchaser.  After giving effect to the transactions contemplated by this Agreement, Purchaser will not: (a) be insolvent (either because its financial condition is such that the sum of its debts is greater than the fair market value of its assets or because the fair saleable value of its assets is less than the amount required to pay its probable liabilities on its existing debts as they mature); (b) have unreasonably small capital with which to engage in its business; or (c) have incurred debts beyond its ability to pay as they become due.

5.6     Adequate Assurances.  Purchaser is and will be capable of satisfying the conditions contained in Section 365(b)(1)(C) and 365(f) of the Bankruptcy Code with respect to the Business Contracts and Real Property Leases.

5.7     Litigation.  There is no Proceeding pending against or affecting Purchaser, or any of its properties or rights, except as have not and would not reasonably be expected to, individually or in the aggregate, prevent, materially delay or impair Purchaser's ability to consummate the transactions contemplated by this Agreement or any Transaction Document. Purchaser is not subject to any Order which seeks to or would reasonably be expected to, individually or in the aggregate, prevent, materially delay or impair Purchaser's ability to consummate the transactions contemplated by this Agreement or any Transaction Document.

5.8     Finders; Brokers.  Other than Greenhill & Co., LLC, no agent, broker, Person or firm acting on behalf of Purchaser or any of its Affiliates is or shall be entitled to any broker's fees, finder's fees or commissions from Sellers or any of their respective Affiliates in connection with this Agreement or any Transaction Document or any of the transactions contemplated hereby or thereby.

5.9     Investigation by Purchaser.  Purchaser has conducted its own independent investigation, verification, review and analysis of the Business (as currently or formerly conducted) and results of operations, financial condition, technology and prospects, the Purchased Assets and the Assumed Liabilities, which investigation, review and analysis was conducted by Purchaser and its Affiliates and, to the extent Purchaser deemed appropriate, by Purchaser's Representatives. Purchaser acknowledges that it and its Representatives have been provided adequate access to Sellers' personnel, properties, premises and records, the Purchased Assets and the Assumed

4895-8439-9877.1

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2590 of 2637
2590
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 31 of 61

Liabilities.  In entering into this Agreement, Purchaser acknowledges that it has relied solely upon the aforementioned investigation, review and analysis and not on any factual representations or opinions of Sellers or any of their respective Affiliates (except the representations and warranties of Sellers set forth in <u>Article IV</u>), and Purchaser acknowledges and agrees, to the fullest extent permitted by Law, that:

       (a)    none of Sellers or any of their respective Affiliates, Representatives or any other Person makes or has made any oral or written representation or warranty, either express or implied, as to the accuracy or completeness of any information made available or delivered to Purchaser, or its Affiliates and Representatives, including any information, whether oral or written (including cost estimates, financial information and projections and other projections and forward-looking statements) included in management presentations, "break-out" discussions, responses to questions submitted by or on behalf of Purchaser or its Affiliates and Representatives, or any "data room" or court filings;

       (b)    none of Sellers or any of their respective equity holders, Affiliates, Representatives or any other Person shall have any Liability or responsibility whatsoever to Purchaser or its equity holders, Affiliates or Representatives on any basis (including in contract, tort or equity, under any securities Laws or otherwise) based upon any information described in <u>Section 5.9(a)</u>;

       (c)    without limiting the generality of the foregoing, none of Sellers or any of their respective equity holders, Affiliates, Representatives or any other Person makes any representation or warranty regarding (and Purchaser disclaims) any Third Party beneficiary rights or other rights which Purchaser might claim under any studies, reports, tests or analyses prepared by any Third Parties for any of Sellers or any of their respective Affiliates, even if the same were made available for review by Purchaser or its equity holders, Affiliates or Representatives; and

       (d)    without limiting the generality of the foregoing, Purchaser expressly acknowledges and agrees that none of the documents, information or other materials provided to it at any time or in any format by Sellers or any of their respective equity holders, Affiliates or Representatives constitutes legal advice, and Purchaser waives all rights to assert that it received any legal advice from any of Sellers or any of their respective equity holders, Affiliates, or any of their respective Representatives, or that it had any sort of attorney-client relationship with any of such Persons.

ARTICLE VI
<u>Covenants</u>

6.1   <u>Access to Information Concerning Properties and Records</u>.

       (a)    During the period from the date of this Agreement through and including the earlier of (i) the date this Agreement is terminated in accordance with <u>Article IX</u> and (ii) the Designation Deadline, (A) Sellers shall, upon reasonable prior notice and during regular business hours, afford Purchaser and its Representatives reasonable access to the personnel, properties, facilities, books and records and other Files and Records of Sellers,

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2591 of 2637
2591
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 32 of 61

the Purchased Assets and the Assumed Liabilities (provided that, prior to the Closing, Sellers shall not be required to conduct, or permit Purchaser or any of its Representatives, without the express written permission of Sellers, to conduct any Phase I environmental site assessment or Phase II environmental site assessment (or other similar environmental air, building materials, soil, soil gas, surface water, groundwater or other environmental media investigation, sampling or analysis on or relating to any real property owned by or leased to any Seller)), and (B) Sellers shall furnish to Purchaser access to all financial and operating data and other information of Sellers relating to the Purchased Assets and the Assumed Liabilities that are in the possession or control of Sellers as Purchaser may reasonably request.   Information obtained by Purchaser and its Representatives in connection with the transactions contemplated by this Agreement shall be subject to the provisions of the Confidentiality Agreement, which shall survive the termination of this Agreement in accordance with <u>Section 6.14</u>.

(b)     Purchaser hereby acknowledges that any access granted pursuant to <u>Section 6.1(a)</u> and utilized by Purchaser or any of its Representatives shall be at the sole risk, cost and expense of Purchaser.  Purchaser shall comply, and shall use commercially reasonable efforts to ensure that each of its Representatives complies, with all safety and similar requirements imposed by Sellers on their properties in the ordinary course of business. Purchaser shall indemnify, defend and hold harmless each of the Sellers and their respective Affiliates and their respective shareholders, partners, members, managers, officers and directors (the "<u>Seller Access Indemnitees</u>") from and against any Losses suffered, incurred or paid by them to the extent such Losses are a result of or arise out of Purchaser's or any of its Representatives' access granted pursuant to <u>Section 6.1(a)</u>; <u>provided</u>, that Purchaser shall not be required to indemnify and hold harmless any Seller Access Indemnitee to the extent any Losses incurred by such Seller Access Indemnitee arise due to the gross negligence or willful misconduct of such Seller Access Indemnitee. Notwithstanding anything to the contrary contained in this Agreement, the provisions of this <u>Section 6.1(b)</u> shall survive the Closing and any cancellation or termination of this Agreement.

(c)     Nothing contained in this Agreement shall be construed to give to Purchaser, directly or indirectly, rights to control or direct any Seller or any business or operations of any Seller prior to the Closing in a manner that would violate any Antitrust Laws.  Prior to the Closing, Sellers shall exercise, consistent with the terms and conditions of this Agreement, complete control and supervision of its business and operations.

(d)     Purchaser hereby acknowledges and agrees that it is not authorized to and shall not (and shall not permit any of its Representatives to), without the prior written consent of Sellers, contact any competitor, contractor, vendor, supplier, distributor or customer of the Sellers, in each case, with respect to Sellers, the Purchased Assets (including, for the avoidance of doubt, the Seller Facilities) or the Assumed Liabilities, prior to the Closing.  Purchaser shall keep Sellers informed on a reasonably current basis of any contact with any customers, competitors, vendors or suppliers of Sellers.

(e)     Notwithstanding anything to the contrary contained herein, no access or investigation by Purchaser, its Affiliates or their respective Representatives shall affect or

<div align="center">27</div>

Case 4:22-cv-00040  Document 7  Filed on 02/08/22 in TXSD  Page 2592 of 2637
2592
Case 21-32351  Document 829-2  Filed in TXSB on 11/30/21  Page 33 of 61

otherwise modify in any respect any of Purchaser's rights or benefits under this Agreement, including the conditions to Purchaser's obligation to consummate the transactions contemplated by the Agreement as set forth in Article VII.

6.2     Conduct Prior to the Designation Deadline.

(a)     Except (i) as set forth on Schedule 6.2(a), (ii) as may be expressly required by this Agreement, (iii) as required by Law or Order or by a Governmental Entity, (iv) as required by the Bankruptcy Court, or (v) as a consequence of the commencement and continuation of the Bankruptcy Cases, during the period commencing on the date hereof and ending on the earlier of the Designation Deadline and the termination of this Agreement pursuant to Article IX, Sellers shall use commercially reasonable efforts (x) to comply in all material respects with all Laws, Orders, Contracts, Permits and Environmental Permits applicable thereto and (y) to preserve, maintain and protect in all material respects the Purchased Assets, the current goodwill of the Business and Sellers' present relationships with Governmental Entities and other Persons having significant relationships with Sellers in connection with the Business (as currently conducted).

(b)     Except (i) as set forth Schedule 6.2(b), (ii) as may be expressly required by this Agreement, (iii) as required by Law or Order or by a Governmental Entity, (iv) as required or approved by the Bankruptcy Court, including pursuant to a confirmed chapter 11 plan, or (v) as a consequence of the commencement and continuation of the Bankruptcy Cases, during the period commencing on the date hereof and ending on the earlier of the Designation Deadline and the termination of this Agreement pursuant to Article IX, Sellers shall not effect any of the following (as each pertains to or is related to the Business, the Purchased Assets or the Assumed Liabilities) without the prior written consent of Purchaser (such consent not to be unreasonably withheld, conditioned or delayed):

(i)     sell, transfer, lease, license or otherwise dispose of any of its assets or properties prior to the Designation Deadline that would be, or could be, if designated in accordance with Sections 1.4(c) or 1.4(h) Purchased Assets under this Agreement, except for any sale, transfer, lease, license or other disposition under this Agreement or other Transaction Document;

(ii)     except as required by GAAP, make any change in any method of accounting or auditing practice with respect to the Business;

(iii)     fail to pay, discharge, settle or satisfy any Assumed Liabilities in accordance with the Budget, as such Assumed Liabilities become due, other than in connection with a good faith dispute; provided that such obligation shall terminate on the Closing Date notwithstanding anything to the contrary in this Section 6.2(b);

(iv)     create, permit, subject or allow to exist any Lien on any of the Purchased Assets other than a Permitted Lien and other than any Lien that will be extinguished at or prior to Closing;

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2593 of 2637
2593
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 34 of 61

(v)     extend, materially amend or terminate or grant any material waiver under any Business Contract or Real Property Lease or enter into any Contract that would be categorized as a Material Contract if in effect on the date hereof;

(vi)     abandon any rights under, request the rejection under Section 365 of the Bankruptcy Code of, or amend, modify or supplement the terms of, any of the Business Contracts or Real Property Leases;

(vii)     fail to take any reasonable action that would prevent the expiration, lapse, termination or abandonment of any Permit or Environmental Permit, in each case that is material to the Business;

(viii)     settle or compromise any Proceeding, or enter into any consent decree or settlement agreement with any Third Party, against or affecting the Business that, in each case, would constitute an Assumed Liability;

(ix)     waive any material claims or rights of material value that are included in the Purchased Assets;

(x)     incur, assume, or guarantee any Indebtedness or make any material capital expenditures that, in each case, would constitute an Assumed Liability; or

(xi)     authorize any of the foregoing or commit or agree to do any of the foregoing;

provided, that Purchaser is, and at all times remains, in full and complete compliance with its obligations under the Transition Services Agreement.  As more fully set further therein, if Purchaser defaults under the Transition Services Agreement, Sellers may take any actions necessary, notwithstanding this Section 6.2(b), to preserve and protect the Sellers or the Sellers' bankruptcy estates, including, without limitation, abandon, sell, transfer, lease, license or otherwise dispose of any of its assets or properties or reject any Contracts.

6.3     Efforts to Close.

(a)     Except as otherwise provided in this Section 6.3, the Parties shall, and shall cause their respective controlled Affiliates and Representatives to, and shall use commercially reasonable efforts to direct their respective equityholders to, cooperate and use their respective commercially reasonable efforts to take, or cause to be taken, all appropriate actions, and to make, or cause to be made, all filings necessary, proper or advisable under applicable Laws and to consummate and make effective the transactions contemplated by this Agreement, including their respective commercially reasonable efforts to obtain, prior to the Closing Date, all Permits, Consents and Orders of Governmental Entities as are necessary for consummation of the transactions contemplated by this Agreement and to fulfill the conditions to consummation of the transactions set forth in Article VII; provided, that (w) no Party or its Affiliates shall be required to make any concessions that would adversely affect its business or be materially more burdensome to such Party (including to amend any Contract to increase the amount payable thereunder, commence any litigation, settle or compromise any matter, offer or grant any

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2594 of 2637
2594
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 35 of 61

accommodation (financial or otherwise) to any Third Party or Governmental Entity, pay any amount or bear any other incremental economic burden to obtain any such Permit, Consent or Order), (x) no Party or its Affiliates shall incur any expense that would be payable or otherwise borne by the other Party or such other Party's Affiliates without the consent of such other Party, (y) Sellers shall not make any concessions that would be an Assumed Liability, and (z) Purchaser shall not make any concessions that would purport to bind any Seller or any of its Affiliates.

(b)     Notwithstanding anything to the contrary contained in this Agreement, no Seller nor any of its Affiliates or Representatives shall be required to repay any Indebtedness, amend or enter into any Contract or other arrangement, commence any litigation, settle or compromise any matter, offer or grant any accommodation (financial or otherwise) to any Third Party, pay any amount or bear any other incremental economic burden to procure any amendments, modification or termination of any Contract.

6.4     <u>Public Announcements</u>.  Each Party shall (a) consult with each other Party before issuing any press release or otherwise making any public statement with respect to the transactions contemplated by this Agreement or any Transaction Document, (b) provide to the other Parties for review a copy of any such press release or public statement and (c) not issue any such press release or make any such public statement prior to such consultation and review and the receipt of the prior consent of the other Parties, unless required by Laws or regulations applicable to such Party or its Affiliates, regulations of any stock exchange applicable to such Party or its Affiliates, or the Bankruptcy Court with respect to filings to be made with the Bankruptcy Court in connection with this Agreement, in which case, the Party required to issue the press release or make the public statement or filing shall, prior to issuing such press release or making such public statement or filing, use its commercially reasonable efforts to allow the other Parties reasonable time to comment on such release, statement or filing to the extent practicable and permitted by Law. Notwithstanding anything to the contrary contained in this Agreement, each of the Parties and its legal counsel and other Representatives shall be permitted to make filings on the docket of, or statements on the record before, the Bankruptcy Court relating to this Agreement and the transactions contemplated hereby without prior approval or consultation.

6.5     <u>Notification of Certain Matters</u>.  Sellers, on the one hand, and Purchaser, on the other hand, shall use their respective commercially reasonable efforts to promptly notify each other of any material Proceedings in connection with the transactions contemplated by this Agreement or the Transaction Documents commenced or, to the knowledge of Purchaser or the Knowledge of Sellers, threatened, against Sellers or Purchaser, as the case may be, or any of their respective Affiliates.

6.6     <u>Post-Closing Access to Records and Personnel; Litigation Support</u>.

(a)     Until the later of (i) three (3) years after the Closing Date and (ii) one (1) year after the closing or dismissal of the Bankruptcy Cases and all proceedings related to or arising out of the Bankruptcy Cases, or any of them), Purchaser shall preserve and retain all corporate, accounting, Tax, legal, auditing, human resources and other books and records, as well as all documents and communications, including, without limitation, any electronically-stored information, servers, electronic communications (e.g., e-mail,

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2595 of 2637
2595
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 36 of 61

instant messages, voicemails, etc.), and other digital information or data, relating to the Purchased Assets, the Assumed Liabilities, the Business, or any other assets of the Seller, including any Excluded Assets or Excluded Liabilities, with respect to periods prior to the Designation Deadline (including (i) any documents relating to any Proceeding or other dispute and (ii) all Returns, schedules, work papers and other material records or other documents relating to Taxes relating to the Purchased Assets and the Assumed Liabilities). At the end of such period, Purchaser may dispose of any such books and records only after they are first offered to and not accepted by Sellers.

(b)     Following the Closing, Purchaser shall allow Sellers, and their Affiliates successors, including, without limitation, any post-confirmation trustee appointed in the Bankruptcy Cases, and their respective Representatives, reasonable access to (i) all books and records related the Purchased Assets, the Assumed Liabilities, and the Business, including, without limitation, any electronically-stored information, servers, electronical communications (e.g., e-mail, instant messages, voicemails, etc.), and other digital information or data, and (ii) such personnel having knowledge of the location or contents of such books and records, in each case of the foregoing clauses (i) and (ii), for legitimate business reasons, including, without limitation, any matters arising out of or relating to the Bankruptcy Cases or any related proceedings; provided, that no such access shall unreasonably interfere with Purchaser's operation of the Business.

(c)     Following the Closing, Sellers shall allow Purchaser and its Affiliates and their respective Representatives, reasonable access to (i) all books and records related the Purchased Assets and the Assumed Liabilities and the Business and (ii) such personnel having knowledge of the location or contents of such books and records, in each case of the foregoing clauses (i) and (ii), for legitimate business reasons.

(d)     If and for so long as any Party (or any of its Affiliates) is actively prosecuting, contesting or defending any Proceeding brought against or by a Third Party in connection with (i) the Purchase or (ii) any fact, situation, circumstance, status, condition, activity, practice, plan, occurrence, event, incident, action, failure to act, or transaction on or prior to the Closing Date involving any Seller or the Business (as currently or formerly conducted), the Purchased Assets or the Assumed Liabilities, or for so long as the Bankruptcy Cases or any proceeding arising out of or related to the Bankruptcy Cases, or any of them, are pending, the non-contesting, non-defending, or non-debtor Person or Persons shall, at the sole cost and expense of the contesting or defending Person or Persons, (x) reasonably cooperate with the contesting or defending Person or Persons or Sellers, as applicable, and its or their counsel in the defense, contest, or prosecution of the matter, (y) make available its or their personnel during normal business hours and (z) provide such access to its or their books and records (including any electronically stored information, servers, electronic communications (e.g., e-mail, instant messages, voicemails, etc.), and other digital information or data) as shall be necessary or reasonably requested in connection with the prosecution, defense or contests, or administration of the Bankruptcy Cases; provided, that no such cooperation or access shall unreasonably interfere with the operation of the businesses of the non-contesting, non-defending, or non-debtor Person or Persons and no Party shall be required to cooperate or provide access to another Party in connection with a Proceeding between such Party and/or its Affiliates, on the one hand,

31

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2596 of 2637
2596
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 37 of 61

and any other Party and/or its Affiliates, on the other hand, except through the compliance with generally applicable laws, rules, statutes, and regulations.

(e)     Each of Purchaser, on the one hand, and Sellers, on the other hand, shall be entitled to recover from the other its reasonable out-of-pocket costs incurred in providing the foregoing access and personnel pursuant to Sections 6.6(a) through (d), inclusive, to the other.

(f)     The rights and obligations of a Party under this Section 6.6 shall inure to the benefit of and be binding upon the successors and assigns of such Party.  If a Party or any of its successors or assigns (i) consolidates with or merges into any other Person or (ii) with respect to Purchaser, transfers all or substantially all of the Purchased Assets or the Assumed Liabilities to any Person, in each case proper provision shall be made so that the successors and assigns of such Party honor the obligations set forth in this Section 6.6.

6.7     Tax Matters.

(a)     All stamp, transfer, documentary, sales and use, value added, registration and other such taxes and fees (including any penalties, interest and recording and filing fees) incurred in connection with the Purchase or otherwise in connection with this Agreement and not exempted under a Sale Order, whether or not customarily paid by sellers or purchasers (collectively, the "Transfer Taxes"), shall be borne by Purchaser. Purchaser shall properly file on a timely basis all necessary Returns and other documentation with respect to any Transfer Tax and provide to Sellers evidence of payment of all Transfer Taxes.

(b)     Purchaser and Sellers agree to furnish or cause to be furnished to each other, as promptly as reasonably practicable, such information and assistance relating to the Purchased Assets as is reasonably necessary for the preparation and filing of any Return, for the preparation for and proof of facts during any Tax audit, for the preparation for any Tax protest, for the prosecution or defense of any suit or other proceeding relating to Tax matters and for the answer of any governmental or regulatory inquiry relating to Tax matters.

(c)     For purposes of this Agreement, all Property Taxes and any other Taxes that are imposed on a periodic basis (which are not based on income) with respect to the Purchased Assets with respect to any taxable period that begins on or before and ends after the Closing Date shall be apportioned between the portion of such period that falls within the Pre-Closing Period and the portion of such period that falls within the Post-Closing Period proportionally in accordance with the number of days in each such portion of the period.

6.8     Bulk Sales Act.  Purchaser hereby waives compliance by Sellers with respect to any applicable bulk sale, bulk transfer, successor liability and similar Laws, or with any Laws triggered by a bulk sale or transfer of property, of any jurisdiction in connection with the transactions contemplated by this Agreement or similar Laws of any jurisdiction in connection with the Purchase.

Case 4:22-cv-00040  Document 7  Filed on 02/08/22 in TXSD  Page 2597 of 2637
2597
Case 21-32351  Document 829-2  Filed in TXSB on 11/30/21  Page 38 of 61

6.9    <u>Bankruptcy Action</u>.

(a)    The Parties shall comply in all material respects with the Bid Procedures Order and the Sale Order (after the entry of such Orders by the Bankruptcy Court).

(b)    Sellers shall use commercially reasonable efforts to comply (or obtain an Order from the Bankruptcy Court waiving compliance) with all requirements under the Bankruptcy Code and the Bankruptcy Rules in connection with obtaining approval of the transactions contemplated by this Agreement.  Sellers shall serve (i) all Persons who are known to possess or assert a Claim against or Interest in any of the Purchased Assets, (ii) the IRS, (iii) all applicable Governmental Entities, (iv) all applicable state and local Governmental Entities with taxing authority, (v) all other Persons required by any Order of the Bankruptcy Court, (vi) all parties to Business Contracts and Real Property Leases, and (vii) all Persons that request or are entitled to notice under Bankruptcy Rule 2002.

(c)    The Parties shall use their respective commercially reasonable efforts to have the Bankruptcy Court enter the Sale Order as promptly as possible.

(d)    Sellers and Purchaser shall consult with one another regarding pleadings which any of them intends to file with the Bankruptcy Court in connection with, or which might reasonably affect the Bankruptcy Court's approval of the Sale Order and shall provide each other with a reasonable opportunity to review and comment on such pleadings, related motions, applications, petitions schedules and supporting papers. Sellers shall promptly provide Purchaser and its counsel with copies of all notices, filings and orders of the Bankruptcy Court that Sellers have in their possession (or receive) pertaining to the Sale Motion, the Bid Procedures Order, the Sale Order, or any other order related to any of the transactions contemplated by this Agreement, but only to the extent such papers are not publicly available on the docket of the Bankruptcy Court or otherwise made available to Purchaser and its counsel.

(e)    If the Bid Procedures Order, the Sale Order, or any other orders of the Bankruptcy Court relating to this Agreement or the transactions contemplated hereby shall be appealed by any Person (or if any petition for certiorari or motion for reconsideration, amendment, clarification, modification, vacation, stay, rehearing or reargument shall be filed with respect to the Bid Procedures Order, the Sale Order, or other such order), subject to rights otherwise arising from this Agreement, Sellers and Purchaser shall use their commercially reasonable efforts to prosecute such appeal, petition or motion and obtain an expedited resolution of any such appeal, petition or motion.

6.10    <u>Sale Order</u>.

(a)    Sellers and Purchaser acknowledge that this Agreement and the sale of the Purchased Assets are subject to Bankruptcy Court approval.  Sellers and Purchaser acknowledge that (i) to obtain such approval, Sellers must demonstrate that they have taken steps to obtain the highest or otherwise best offer possible for the Purchased Assets including giving notice of the transactions contemplated by this Agreement to creditors and certain other interested parties as ordered by the Bankruptcy Court and, if necessary,

4895-8439-9877.1

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2598 of 2637
2598
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 39 of 61

conducting the Auction and (ii) Purchaser must provide adequate assurance of future performance under the Business Contracts and Real Property Leases included in the Purchased Assets.

(b)      The Sale Order shall, among other things:

(i)      approve, pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, (A) the execution, delivery and performance by Sellers of this Agreement, (B) the transfer of the Purchased Assets to Purchaser free and clear of all Liens, Claims, and Liabilities of any kind whatsoever (other than Permitted Liens), and (C) the timely performance by Sellers of their obligations under this Agreement;

(ii)      authorize and empower Sellers to assume and assign the Business Contracts and Real Property Leases to Purchaser;

(iii)      find that Purchaser is a "good faith" buyer within the meaning of Section 363(m) of the Bankruptcy Code and grant Purchaser the full benefits and protections of Section 363(m) of the Bankruptcy Code;

(iv)      find that this Agreement was negotiated, proposed and entered into by Sellers and Purchaser without collusion, in good faith and from arm's length bargaining positions;

(v)      find that due and adequate notice and an opportunity to be heard in accordance with all applicable Laws were given to the necessary parties in the Bankruptcy Cases;

(vi)      contain findings of fact and conclusions of law that Purchaser (A) is not a successor to, or subject to successor liability for, any Seller, (B) has not, de facto or otherwise, merged with or into any Seller, (C) is not an alter ego or a continuation of any Seller, and (D) does not have any responsibility for any obligations of any Seller based on any theory of successor or similar theories of liability;

(vii)      find that the Purchase Price is fair and reasonable;

(viii)      find that the Bankruptcy Court retains jurisdiction to resolve any claim or dispute arising out of or related to this Agreement; and

(ix)      contain such other terms and conditions as are acceptable to Sellers and Purchaser in their respective sole discretion.

(c)      Purchaser agrees that it will promptly take such actions as are reasonably requested by Sellers to assist in obtaining entry by the Bankruptcy Court of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for purposes, among others, of (i) demonstrating that Purchaser is a "good faith" purchaser and (ii) establishing "adequate assurance of future performance" within the meaning of Section 365 of the Bankruptcy Code.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2599 of 2637
2599
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 40 of 61

6.11    [Reserved].

6.12    Transfer of Permits.  Except for those Business Permits that are not transferable to Purchaser by Law, the Parties shall use commercially reasonable efforts to cause the issuance or transfer of all of the Business Permits described on Schedule 1.2(g) and shall give and make all notices and reports that such Party is required to make to the appropriate Governmental Entities and other Persons with respect to such Business Permits.  All costs and expenses associated with the issuance or transfer of the Business Permits shall be borne by Purchaser.

6.13    Expenses.  Except to the extent otherwise specifically provided herein, whether or not the transactions contemplated hereby are consummated, all fees, costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be borne by the Party incurring such fees, costs and expenses.

6.14    Confidentiality.  From and after the date of this Agreement, Purchaser and Sellers shall continue to be bound by and comply with the obligations of the Confidentiality Agreement except as otherwise required under or necessary to comply with any provision of the Bankruptcy Code, Bankruptcy Rules, applicable law, any order of the Bankruptcy Court, including, without limitation, the Bid Procedures Order, or the provisions of this Agreement. Except as specifically provided in the proviso to this sentence, unless otherwise agreed to by the Parties, at the later of (i) the Designation Deadline or (ii) the end of the remainder of the term set forth in the Confidentiality Agreement, the Confidentiality Agreement shall be deemed to have been terminated by the parties thereto and shall no longer be binding; provided, that notwithstanding anything in this Section 6.14 to the contrary, to the extent that Purchaser is in possession of any Information (as defined in the Confidentiality Agreement) regarding Sellers and their respective Affiliates, or the Excluded Assets or the Excluded Liabilities, Purchaser shall continue to be bound by the Confidentiality Agreement with respect to such Information until the date that is two years after the Closing, if the Closing occurs; provided, further, that notwithstanding anything in this Section 6.14 to the contrary, to the extent that any Seller is in possession of any Information (as defined in the Confidentiality Agreement) related to the Purchased Assets, the Assumed Liabilities, or the Business, such Seller and its respective Representatives shall continue to be bound by this Section 6.14 until the earlier of (a) the date that is two years after the Closing, if the Closing occurs, and (b) until such time as Sellers and their respective Representatives no longer retain copies of such Information.

ARTICLE VII
Conditions to Closing

7.1    Conditions to Sellers' Obligations.  The obligation of Sellers to consummate the transaction contemplated hereby is subject to the fulfillment of all of the following conditions on or prior to the Closing Date and as of the Closing Date, upon the non-fulfillment of any of which this Agreement may, at Sellers' option, be terminated to the extent permitted pursuant to and with the effect set forth in Article IX:

(a)    The representations and warranties of Purchaser contained in Article V shall be true and correct in all material respects at and as of the Closing Date as if made at and

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2600 of 2637
2600
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 41 of 61

as of such time (except to the extent such representations and warranties speak as of an earlier date, in which case, such representations and warranties shall be true and correct in all material respects as of such earlier date).

(b)     All obligations of Purchaser to be performed hereunder through, and including on, the Closing Date (including, without limitation, all obligations which Purchaser would be required to perform at the Closing if the transaction contemplated hereby was consummated) shall have been performed in all material respects, unless waived by Sellers.

(c)     Purchaser shall have delivered or caused to be delivered to Sellers each of the items set forth in Section 3.4(b).

(d)     No Governmental Entity of competent jurisdiction shall have entered a valid Order that is in effect and has the effect of making the Closing illegal or otherwise prohibiting the consummation of the Closing.

(e)     The Sale Order shall have been entered by the Bankruptcy Court approving the transactions contemplated under this Agreement.

7.2     Conditions to Purchaser's Obligations.  The obligation of Purchaser to consummate the transaction contemplated hereby is subject to the fulfillment of all of the following conditions on or prior to the Closing Date and as of the Closing Date (in each case, so long as Purchaser has complied with its obligations under this Agreement with respect to each of the matters set forth below), upon the non-fulfillment of any of which this Agreement may, at Purchaser's option, be terminated to the extent permitted pursuant to and with the effect set forth in Article IX:

(a)     The representations and warranties of Sellers in Article IV shall be true and correct in all respects as of the time of the Closing as though such representations and warranties were made at and as of such time (or, if made as of a specific date in the text of such representations and warranties, at and as of such date), interpreted without giving effect to any Material Adverse Effect or materiality qualifications or exceptions contained therein, except where the failure to be so true and correct would not have a Material Adverse Effect.

(b)     All obligations of Sellers to be performed hereunder through, and including on, the Closing Date (including, without limitation, all obligations which Sellers would be required to perform at the Closing if the transaction contemplated hereby was consummated) shall have been performed in all material respects.

(c)     Sellers shall have delivered or caused to be delivered to Purchaser each of the items set forth in Section 3.4(a).

(d)     No Governmental Entity of competent jurisdiction shall have entered a valid Order that is in effect and has the effect of making the Closing illegal or otherwise prohibiting the consummation of the Closing.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2601 of 2637
2601
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 42 of 61

(e)     The Sale Order shall have each been entered by the Bankruptcy Court approving the transactions contemplated under this Agreement.

7.3     <u>Frustration of Closing Conditions</u>.  No Party may rely on the failure of any condition set forth in this <u>Article VII</u> to be satisfied if such failure was caused by such Party's failure to act in good faith or such Party's failure to comply with <u>Section 6.3</u>.

<div align="center">

ARTICLE VIII
<u>Termination</u>

</div>

8.1     <u>Termination Events</u>.  This Agreement and the transaction contemplated hereby may only be terminated as follows, at any time prior to the Closing:

(a)     by the mutual written consent of Purchaser and Sellers;

(b)     by either Purchaser or Sellers upon (i) the issuance of a final and non-appealable Order by a Governmental Entity to restrain, enjoin or otherwise prohibit the purchase and sale transaction contemplated hereby, (ii) the appointment of an examiner with expanded powers or a Chapter 11 trustee in the Bankruptcy Cases, or (iii) the Bankruptcy Cases being converted into a case under Chapter 7 of the Bankruptcy Code or dismissed;

(c)     by either Purchaser or Sellers if the Bankruptcy Court has not entered the Sale Order by December 10, 2021, provided that such date may be extended as otherwise agreed to in writing by Purchaser and Sellers; <u>provided</u>, <u>however</u>, that Purchaser's right to terminate this Agreement under this <u>Section 8.1(c)</u> shall not be available to Purchaser if Purchaser's failure to fulfill any of its obligations under this Agreement has been the cause of, or resulted in, the failure of the Sale Order to have been entered on or prior to the aforesaid date;

(d)     by Purchaser, (i) if any condition set forth in <u>Sections 7.2(a)</u> through <u>(c)</u>, inclusive, becomes incapable of being satisfied prior to the Termination Date (other than through the failure of Purchaser to comply with its obligations under this Agreement) and Purchaser has not waived such condition,(ii) if the Closing shall not have occurred at or before 5:00 p.m. (New York City Time) on December 17, 2021, or such later date as extended in accordance with the Bid Procedures Order with the Purchaser's consent (such date, as may be extended, the "<u>Termination Date</u>"); <u>provided</u>, <u>however</u>, that Purchaser's right to terminate this Agreement under this clause (ii) of this <u>Section 8.1(d)</u> shall not be available to Purchaser if Purchaser's failure to fulfill any of its obligations under this Agreement has been the cause of, or resulted in, the failure of the Closing to occur on or prior to the Termination Date, (iv) at any time following the date that is November 30, 2021 if Purchaser is not declared the Winning Bidder, or (v) at any time if the Bankruptcy Court has not entered an order by 11:59 p.m. (New York City Time) on the date that is one (1) Business Day after the date of this Agreement approving the reimbursement of up to $1,000,000 of Purchaser's documented costs and expenses (including fees and expenses of legal counsel) incurred in connection with evaluating, negotiating and entering into this

<div align="center">37</div>

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2602 of 2637
2602
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 43 of 61

Agreement; provided, however, that Purchaser's right to terminate this Agreement under this clause (v) of this Section 8.1(d) shall not be available to Purchaser if Purchaser's failure to fulfill any of its obligations under this Agreement has been the sole cause of the failure of the Court to enter such an order by the prescribed deadline;

(e)     by Sellers, (i) if any condition set forth in Section 7.1(a) through (c), inclusive, becomes incapable of being satisfied prior to the Termination Date (other than through the failure of Sellers to comply with their obligations under this Agreement) and Sellers have not waived such condition, (ii) at any time following the date that is November 30, 2021 if Purchaser is not declared the Winning Bidder, or (iii) if the Closing shall not have occurred at or before 5:00 p.m. (New York City time) on the Termination Date; and

(f)     automatically upon Bankruptcy Court approval of an Alternative Transaction.

8.2     Effect of Termination.  In the event of the termination of this Agreement pursuant to Section 8.1 by Purchaser, on the one hand, or Sellers, on the other hand, written notice thereof shall forthwith be given to the other specifying the provision hereof pursuant to which such termination is made, and this Agreement shall be terminated and become void and have no effect and there shall be no Liability hereunder on the part of any Party, except that Section 3.2 (Good Faith Escrow Deposit), Section 6.14 (Expense), this Section 8.2 and Article X (Miscellaneous) and the defined terms and rules of construction used therein and set forth on Appendix I shall survive any termination of this Agreement; provided, however, that (a) subject to the terms and conditions of Section 3.2(c), no Party shall be relieved of or released from any Liability arising from any material breach by such Party of any provision of this Agreement, and (b) the Confidentiality Agreement shall remain in full force and effect.

ARTICLE IX
Survival

9.1     Survival; Certain Post-Closing Matters.  Purchaser and Sellers acknowledge and agree that: (a) the representations and warranties set forth in this Agreement and in the documents and instruments delivered or entered into in connection with this Agreement (other than the Transition Services Agreement) shall not survive the Closing and shall expire immediately upon the Closing; and (b) the covenants and agreements of Sellers set forth in this Agreement and in any documents and instruments delivered or entered into by the Parties in connection with this Agreement (other than the Transition Services Agreement), in each case that do not by their terms extend beyond the Closing, shall not survive the Closing and shall expire immediately upon the Closing.  Accordingly, for clarification purposes, it is acknowledged, understood and agreed by the Parties that no Party shall have any liability or other obligation following the Closing with respect to any breach by such Party or claimed breach by such Party of (x) except with respect to the Transition Services Agreement, any representations or warranties contained in this Agreement or any of the documents or instruments delivered or entered into by the Parties in connection with this Agreement or (y) any of the Parties' covenants and agreements contained in this Agreement or any of the documents or instruments delivered or entered into by the Parties in connection with this Agreement (other than the Transition Services Agreement) that do not by their terms extend

38

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2603 of 2637
2603
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 44 of 61

beyond the Closing.  Notwithstanding anything expressed or implied herein to the contrary, the Parties acknowledge and agree that (1) Purchaser shall be solely responsible for the ownership of the Purchased Assets from and after the Closing Date or the applicable date of designation (except as otherwise provided in the Transition Services Agreement), as applicable, and acts or omissions of Purchaser with respect thereto, and (2) Sellers shall have no responsibility or obligation with respect to, or arising out of, any of the foregoing.  Notwithstanding anything in this Agreement to the contrary, nothing herein shall operate in any manner to limit a claim or remedy for any actual and intentional fraud by any Person including any Party.

## ARTICLE X
### Miscellaneous

10.1    <u>Notices</u>.   All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given: (a) on the day of service if served personally on the party to whom notice is to be given; (b) on the day of transmission if delivered by electronic mail during regular business hours on a Business Day and, if not, then on the following Business Day; or (c) on the day of delivery (if a Business Day, and if not a Business Day, on the next Business Day) if sent by Federal Express or similar overnight courier or United States mail:

<u>If to Sellers</u>:

Addressed to:

Limetree Bay Services, LLC, et al.
c/o B. Riley Advisory Services
3500 Maple Avenue, Suite 420
Dallas, TX 75219
Attn:   Mark Shapiro
Email: mshapiro@brileyfin.com

with a copy to:

Baker & Hostetler LLP
200 South Orange Avenue
Suite 2300
Orlando, FL 32801
Attn:   Elizabeth A. Green
Email: egreen@bakerlaw.com

and

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
Attn:   Jorian L. Rose

Email: jrose@bakerlaw.com

If to Purchaser:

Addressed to:

St. Croix Energy, LLLP
5030 Anchor Way, Suite 13
Christiansted, VI 00920
Attn:   Yohana Manning
Email: ymanning@stcroixenergy.com

with a copy to:

Ropes & Gray LLP
1211 Avenue of the Americas
New York, New York 10036
Attention:      Gregg Galardi; Jonathan Gill; Matthew Roose
Email:   Gregg.Galardi@ropesgray.com; Jonathan.Gill@ropesgray.com;
            Matthew.Roose@ropesgray.com

Any Party may change its address for the purpose of this Section 10.2 by giving the other Party written notice of its new address in the manner set forth above.

10.2    Entire Agreement.  This Agreement, the agreements, documents and instruments to be delivered by the Parties pursuant to the provisions hereof, the Transaction Documents, and the Confidentiality Agreement, each as may be amended or supplemented, constitute the entire agreement between the Parties and shall be binding upon and inure to the benefit of the Parties hereto and their respective legal representatives, successors and permitted assigns.   This Agreement supersedes the Initial Asset Purchase Agreement.  Each Appendix, Exhibit, Schedule and the Seller Disclosure Letter, each as may be amended or supplemented, shall be considered incorporated into this Agreement.  The inclusion of any item in the Seller Disclosure Letter is not evidence of the materiality of such item for the purposes of this Agreement.  Purchaser acknowledges that any estimates, forecasts, or projections furnished or made available to it concerning Sellers or the Business or their properties, business or assets have not been prepared in accordance with GAAP or standards applicable under any securities laws, and such estimates, forecasts and projections, including any reflected in financial statements, reflect numerous assumptions, and are subject to material risks and uncertainties.  Purchaser acknowledges that actual results may vary, perhaps materially, and Purchaser is not relying on any such estimates, forecasts or projections.

10.3    Severability.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under any applicable law or rule in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision or any other jurisdiction, and, for purposes of such jurisdiction, such provision or

40

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2605 of 2637
2605
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 46 of 61

portion thereof shall be struck from the remainder of this Agreement, which shall remain in full force and effect.  This Agreement shall be reformed, construed and enforced in such jurisdiction so as to best give effect to the intent of the Parties under this Agreement.

10.4    Binding Effect; Benefit.  This Agreement shall inure to the benefit of and be binding upon the Parties hereto, and their successors and permitted assigns.  Nothing in this Agreement, express or implied, shall confer on any Person other than the Parties hereto, and their respective successors and permitted assigns any rights, remedies, obligations or liabilities under or by reason of this Agreement, including, without limitation, third party beneficiary rights.  Nothing in this Agreement is intended to relieve or discharge the obligations or liability of any third Persons to Sellers or Purchaser.  No provision of this Agreement shall give any third Persons any right of subrogation or action over or against Sellers or Purchaser.

10.5    Assignability.  This Agreement and the various rights and obligations arising hereunder inure to the benefit of and are binding upon Sellers and their respective successors and permitted assigns, and Purchaser and its successors and permitted assigns.  Neither this Agreement nor any of the rights, interests or obligations hereunder may be transferred or assigned (including by operation of law in connection with a merger or sale of stock, or sale of substantially all the assets, of a Person) by any of the Parties hereto without the prior written consent of the other Party or Parties (not to be unreasonably withheld, conditioned or delayed); provided that Purchaser may, without any required consent from any other Party, assign or transfer this Agreement or any of its rights or obligations hereunder (a) to any of its Affiliates, (b) to any acquirer of all or substantially all of the Purchased Assets or Purchaser after the Closing or (c) as a collateral assignment to its or its Affiliates lenders in connection with any debt financing arrangements of Purchaser or its Affiliates.  No assignment shall relieve a Party of its liability or obligations hereunder.  Notwithstanding anything expressed or implied herein to the contrary, following the Closing, Sellers (or any of them) may assign all or any portion of their rights hereunder in accordance with an Order of the Bankruptcy Court.

10.6    Amendments.  Except as otherwise authorized herein with respect to the Schedules and disclosures to this Agreement, this Agreement shall not be modified or amended except pursuant to an instrument in writing executed and delivered on behalf of each of the Parties hereto.

10.7    Non-Waiver.  Except as otherwise contemplated herein, the failure in any one or more instances of a Party to insist upon performance of any of the terms, covenants or conditions of this Agreement, to exercise any right or privilege in this Agreement conferred, or the waiver by such Party of any breach of any of the terms, covenants or conditions of this Agreement, shall not be construed as a subsequent waiver of any such terms, covenants, conditions, rights or privileges, but the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.

10.8    Applicable Law.  This Agreement shall be governed and controlled as to validity, enforcement, interpretation, construction, effect and in all other respects by the internal laws of the State of Texas applicable to contracts made in that state and the applicable provisions of the Bankruptcy Code, without giving effect to any choice of law or conflict of law provision or rule that would cause the application of laws of any other jurisdiction.

4895-8439-9877.1

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2606 of 2637
2606
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 47 of 61

10.9     Consent to Jurisdiction.  Purchaser and Sellers agree that the Bankruptcy Court shall retain sole jurisdiction over any legal action or proceeding with respect to this Agreement. Each of Purchaser and Sellers irrevocably waives any objection, including any objection to the laying of venue or based on the grounds of *forum non conveniens*, which it may now or hereafter have to the bringing of any action or proceeding in such jurisdiction in respect of this Agreement or the transactions contemplated hereby.  Purchaser and Sellers consent to the jurisdiction and authority of the Bankruptcy Court, including, without limitation, to the entry of final orders, decrees and judgments with respect to any matters arising under or relating to this Agreement or the transaction(s) contemplated hereby.

10.10     **WAIVER OF TRIAL BY JURY.  EACH OF THE PARTIES HERETO WAIVES THE RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY SUIT, ACTION OR PROCEEDING SEEKING ENFORCEMENT OF SUCH PARTY'S RIGHTS UNDER THIS AGREEMENT.**

10.11     Counterparts.  This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.  This Agreement may be executed through the exchange of scanned .pdf signature pages, which shall have the same legal effect as original signatures.

10.12     Headings.   The headings contained in this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.

10.13     Time of the Essence.  Time is of the essence of this Agreement.  When calculating the period of time before which, within which or following which, any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded.  If the last day of such period is a non-Business Day, the period in question shall end on the next succeeding Business Day.

10.14     Rules of Construction.  The Parties acknowledge and agree that each has negotiated and reviewed the terms of this Agreement, assisted by such legal and tax counsel as they desired, and has contributed to its revisions, and, as such, each of the Parties shall be deemed drafters of this Agreement and equally responsible for any ambiguities contained herein. The Parties further agree that the rule of construction that any ambiguities are resolved against the drafting party will be subordinated to the principle that the terms and provisions of this Agreement will be construed fairly as to all Parties and not in favor of or against any Party.  The word "including" means "including, without limitation."  The phrase "ordinary course of business" or words of similar import shall mean the ordinary course of business consistent with past custom and practice, subject, in the case of Sellers or the Business, to changes in the business, operations or custom or practice of Sellers to the extent resulting from matters arising as a result of, or in connection with, Sellers' status as filers under Chapter 11 of the Bankruptcy Code.

*[SIGNATURE PAGES FOLLOW]*

4895-8439-9877.1

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2607 of 2637
2607
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 48 of 61

IN WITNESS WHEREOF, the Parties have executed this Asset Purchase Agreement as of the date first above written.

**SELLERS**:

**Limetree Bay Services, LLC**

By: _____
Name:  Mark Shapiro
Title:  Chief Restructuring Officer

**Limetree Bay Refining Holdings, LLC**

By: _____
Name:  Mark Shapiro
Title:  Chief Restructuring Officer

**Limetree Bay Refining Holdings II, LLC**

By: _____
Name:  Mark Shapiro
Title:  Chief Restructuring Officer

**Limetree Bay Refining, LLC**

By: _____
Name:  Mark Shapiro
Title:  Chief Restructuring Officer

4895-8439-9877.1

**Limetree Bay Refining Operating, LLC**

By:_____

Name:  Mark Shapiro

Title:  Chief Restructuring Officer

**Limetree Bay Refining Marketing, LLC**

By:_____

Name:  Mark Shapiro

Title:  Chief Restructuring Officer

**PURCHASER**:

**St. Croix Energy, LLLP**

By:_____

Name:  Yohana Manning

Title:  Partner

Signature Page to Asset Purchase Agreement

4895-8439-9877.1

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2610 of 2637
2610
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 51 of 61

**APPENDIX 1**

**DEFINED TERMS**

As used in this Agreement, the following terms shall have the following meanings:

"Additional Deposit Amount" means the amount of any Additional Deposit, as that term is defined and used in the Bid Procedures Order.

"Affiliate" with respect to any Person means any other Person who directly or indirectly Controls, is Controlled by, or is under common Control with such Person including in the case of any Person who is an individual, his or her spouse, any of his or her descendants (lineal or adopted) or ancestors, and any of their spouses.

"Agreement" is defined in the Introduction to this Agreement.

"Alternative Transaction" means one or more sales, assignments, leases, transfers, or other dispositions of all or any material portion of the Purchased Assets to any Person (or group of Persons), whether in one transaction or a series of transactions, whether by merger, asset purchase, equity purchase or other similar transaction, in each case other than to Purchaser or its Affiliates.

"Antitrust Laws" means the Sherman Act, 15 U.S.C. §§ 1-7, as amended, the Clayton Act, 15 U.S.C. §§ 12-27, 29 U.S.C. §§ 52-53, as amended, the Hart-Scott-Rodino Antitrust Improvements Act of 1976, 15 U.S.C. § 18a et seq., as amended, the Federal Trade Commission Act, 15 U.S.C. § 41-58, as amended, and all other Laws and Orders that are designed or intended to prohibit, restrict or regulate actions having the purpose or effect of monopolization, restraint of trade, or lessening of competition through merger or acquisition.

"Assumed Liabilities" is defined in Section 2.1.

"Auction" means a sale in which the Purchased Assets shall be offered for sale to a bidder or bidders making the highest or best offer, which will be scheduled by the Bankruptcy Court in the Bankruptcy Cases.

"Avoidance Actions" means any and all claims and causes of action of a Seller arising under the Bankruptcy Code, including, without limitation, Sections 544, 545, 547, 548, 549 and 550 thereof.

"Bankruptcy Cases" means, individually and collectively, the following chapter 11 bankruptcy cases pending in the Bankruptcy Court: (i) *In re Limetree Bay Services, LLC*, case no. 21-32351; (ii) *In re Limetree Bay Refining Holdings, LLC*, case no. 21-32352; (iii) *In re Limetree Bay Refining Holdings II, LLC*, case no. 21-32353; (iv) *In re Limetree Bay Refining, LLC*, case no. 21-32354; (v) *In re Limetree Bay Refining Operating, LLC*, case no. 21-32355; and (vi) *In re Limetree Bay Refining Marketing, LLC*, case no. 21-32356.

"Bankruptcy Code" means the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101, et seq., as in effect on the Petition Date, and as amended effective as of the Petition Date.

"<u>Bankruptcy Court</u>" is defined in Recital B to this Agreement.

"<u>Bankruptcy Rules</u>" is defined in <u>Section 4.3</u>.

"<u>Bid Procedures Order</u>" means the order of the Bankruptcy Court, entered on August 11, 2021 at docket number 392 in the bankruptcy case of *In re Limetree Bay Services, LLC*, case no. 21-32351, as amended by the order of the Bankruptcy Court, entered on September 15, 2021 at docket number 583, authorizing, among other things, the sale of the Purchased Assets and assumption and assignment of the Business Contracts and Real Property Leases and the assumption of the Assumed Liabilities pursuant to the bid procedures and bid protections set forth therein.

"<u>Bill of Sale and Assignment and Assumption Agreement</u>" means that certain bill of sale and assignment and assumption agreement substantially in the form attached hereto as Exhibit B.

"<u>BP Receivables</u>" means any and all funds payable by BP Products North America, Inc., or any affiliate or subsidiary thereof, to Sellers, or any of them, arising out of or related to the IFF Property, the J. Aron Transaction Documents, the Tolling Agreement (as such terms are defined and used in the Stipulation by and among Debtors, Committee, J. Aron & Company LLC, and BP Products North America Inc. (appended to Doc. No. 697 filed in the Bankruptcy Cases) (the "<u>BP Stipulation</u>")), or any other agreement by and between Sellers, or any of them, and BP Products North America, Inc., or any affiliate or subsidiary thereof, dated on or before the Closing Date, including, without limitation, the Escrow Funds, Trade Contract Amounts, and Sale Reserve (as such terms are defined and used in the BP Stipulation).

"<u>Business</u>" is defined in Recital A of this Agreement.

"<u>Business Contracts</u>" is defined in <u>Section 1.2(a)</u>.

"<u>Business Day</u>" means any day other than Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in Houston, Texas are permitted or required to be closed.

"<u>Business Intellectual Property</u>" is defined in <u>Section 1.2(h)</u>.

"<u>Business IT Assets</u>" is defined in <u>Section 1.2(i)</u>.

"<u>Business Permits</u>" is defined in <u>Section 1.2(g)</u>.

"<u>Business Real Property</u>" means the Purchased Real Property and the real property subject to the Real Property Leases.

"<u>Claim</u>" means a claim against any or all of Sellers, whether or not asserted, as defined in Section 101(5) of the Bankruptcy Code.

"<u>Closing</u>" is defined in <u>Section 3.3</u>.

"<u>Closing Date</u>" is defined in <u>Section 3.3</u>.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2612 of 2637
2612
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 53 of 61

"Closing Payment" is defined in Section 3.1.

"Code" means the Internal Revenue Code of 1986, as amended.

"Confidentiality Agreement" means that certain Confidentiality Agreement entered into by and between Sellers and Purchaser on or about August 24, 2021.

"Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through ownership of securities, by contract or otherwise.

"Consent" means any authorization, approval, consent, ratification, negative clearance, waiver, notice or filing, or a Final Order of the Bankruptcy Court that deems, or renders unnecessary, the same.

"Contract" means any note, bond, mortgage, indenture, guaranty, license, franchise, permit, agreement, contract, commitment, lease, purchase order, or other instrument or obligation, and any amendments thereto.

"Cure Amounts" means with respect to any Business Contract or Real Property Lease, the amount of cash required to be paid with respect to such Business Contract or Real Property Lease to cure all defaults under such Business Contract or Real Property Lease to the extent required by Section 365 of the Bankruptcy Code and to otherwise satisfy all requirements imposed by Section 365 of the Bankruptcy Code in order to effectuate, pursuant to the Bankruptcy Code, the assumption by a Seller and assignment to Purchaser of such Business Contract or Real Property Lease.

"DIP Agent" shall have the meaning ascribed to such term in the Bid Procedures Order.

"Designated Contract" is defined in Section 1.4(b).

"Designation Deadline" is defined in Section 1.4(c).

"Disclaimed Contract" is defined in Section 1.4(c).

"Environmental Law" means any law, Order or other requirement of law for the protection of the environment, or for the manufacture, use, transport, treatment, storage, disposal, release or threatened release of Hazardous Materials, petroleum products, asbestos, urea formaldehyde insulation, polychlorinated biphenyls or any substance listed, classified or regulated as "hazardous" or "toxic" or any similar term under such Environmental Law.

"Environmental Liabilities" means all Liabilities (including the costs of any Remedial Action) arising in connection with or in any way relating to the Business (as currently or formerly conducted), the Purchased Assets or any property currently or formerly owned, leased or operated in connection with the Business (as currently or formerly conducted) or the Purchased Assets (including the activities and operations conducted by anyone thereon, offsite disposal therefrom and Hazardous Materials migrating thereto or therefrom), that in each case arise under or relate to any Environmental Law, Environmental Permit or a Hazardous Material, including Liabilities

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2613 of 2637
2613
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 54 of 61

arising from any Third Party claims for personal injury, death, or property damage caused by an actual or alleged release of, or exposure to, a Hazardous Material.

"Environmental Permits" means all environmental, health and safety permits, licenses, registrations, and approvals and authorizations from Governmental Entities.

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

"Escrow Agent" means GlassRatner Advisory & Capital LLC, doing business as B. Riley Advisory Services or, if GlassRatner Advisory & Capital LLC, doing business as B. Riley Advisory Services is unable or unwilling to act as the Escrow Agent, such other Person as is mutually agreed upon by Purchaser and Sellers.

"Event" means any action, omission, state of facts, condition, occurrence, result, circumstance, event, effect, development or change.

"Excluded Assets" is defined in Section 1.3.

"Excluded Furniture and Equipment" is defined in Section 1.3(p).

"Excluded Insurance Recoveries" is defined in Section 1.3(i).

"Excluded Intellectual Property" means all rights to Intellectual Property that are owned by a Seller, other than the Business Intellectual Property.

"Excluded IT Assets" means all rights to Information Technology that are owned by Seller, other than the Business IT Assets.

"Excluded Liabilities" is defined in Section 2.1.

"Excluded Real Property" means all real property owned by a Seller, other than the Purchased Real Property.

"Files and Records" means all current and historical information, data, databases, reports, plans, schedules, correspondence, files, documents, books and other records and information, including (a) customer, vendor, supplier, contractor and service provider lists and records, (b) sales, pricing and performance data and records generated from completed or active transactions (including billing, payment and dispute histories, credit information and similar data), (c) business plans, financial statements, corporate, Tax, human resource, legal, regulatory and financial data and records, (d) operating and production records, quality control records, market research reports, technical documentation (drawings, specifications, process instructions, statistics, functional requirements, operating instructions, manual, etc.) and user documentation (installation guides, manuals, training material working paper, etc.), (e) employment and personnel records, (f) all of the plant diagrams and drawings, equipment diagrams and drawings, equipment manuals, "as built" books, operating manuals, maintenance histories and records, civil engineering drawings, PFDs, PI&Ds and other such technical documents relating to the Seller Facilities and (g) regulatory filings, documents or other information relating to any Proceeding, in each case with respect to clauses (a) through (g), of Seller, whether in paper, electronic, digital or other form or medium,

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2614 of 2637
2614
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 55 of 61

and that relate primarily to the Purchased Assets or Assumed Liabilities; provided, that Files and Records shall not include (i) any files, documents, books or other records to the extent relating to any existing or anticipated Tax litigations or disputes (to the extent that such litigation or disputes are, or are related to any, Excluded Liabilities hereunder), (ii) any information which, if transferred to Purchaser or its Affiliates, would reasonably be expected to violate any applicable Law or Order or the terms of any Contract and (iii) any items described in clauses (a) through (g) that relate primarily to any Excluded Assets or any Excluded Liabilities.

"Final Order" means an order or judgment of the Bankruptcy Court (or any other court of competent jurisdiction) entered by the clerk of the Bankruptcy Court (or such other court) on the docket in the Bankruptcy Cases (or the docket of such other court), which is and remains in full force and effect, has not been modified, amended, reversed, vacated or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, re-argument or rehearing has expired and as to which no appeal, petition for certiorari or motion for new trial, re-argument or rehearing shall then be pending or (ii) if an appeal, writ of certiorari new trial, re-argument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, re-argument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, re-argument or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Federal Rules of Bankruptcy Procedure; provided, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure, may be filed relating to such order, shall not cause an order not to be a Final Order.

"Furniture and Equipment" means all furniture, furnishings, equipment, vehicles, machinery, cranes, forklifts, tools, truck racks, fixtures, consumables and other tangible personal property owned by a Seller, including artwork, desks, chairs, tables, miscellaneous office furnishings, copiers, scanners, printers, telephone lines and numbers, telecopy machines and other telecommunication equipment, cubicles and supplies.

"GAAP" means United States generally accepted accounting principles, applied in a manner consistent with the preparation of the Financial Statements.

"Good Faith Deposit Amount" means $2,000,000, which amount is to be deposited with the Escrow Agent in accordance with the terms of this Agreement and held and released pursuant to the terms and subject to the conditions set forth in this Agreement, plus an amount equal to any Additional Deposit Amount.

"Governmental Entity" means any multinational, United States or non-United States, federal, state, territory, provincial or local court (including, for the avoidance of doubt, the Bankruptcy Court), arbitral tribunal, administrative agency, legislature or commission or other governmental, quasi-governmental or regulatory agency or authority (including any bureau, division or department thereof) or any securities exchange.

"Hazardous Materials" means all explosive or radioactive substances or wastes, and all hazardous or toxic substances, wastes or other pollutants, including petroleum or petroleum

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2615 of 2637
2615
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 56 of 61

distillates, asbestos or asbestos containing materials, polychlorinated biphenyls, radon gas, infectious or medical wastes and all other substances or wastes of any nature regulated pursuant to any Environmental Law.

"Improvements" means any and all buildings, structures, fixtures or other improvements owned by or leased to a Seller that are attached or affixed to the Business Real Property (including all construction and work-in-progress), including above ground and underground piping and storage tanks, canopies, signage, terminals, fixtures, pumps and appurtenances, equipment, personal property of a permanent nature and other similar facilities; provided, however, that the Excluded Furniture and Equipment shall not be considered "Improvements".

"Indebtedness" of any Person means (a) any obligations or indebtedness (i) for borrowed money or indebtedness issued or incurred in substitution or exchange for indebtedness for borrowed money, (ii) evidenced by any note, bond, debenture, mortgage or other debt instrument or debt security, (iii) for the deferred purchase price of property or service, (iv) for the reimbursement of any obligor on any letter of credit, banker's acceptance, guarantee or similar credit transaction (but only to the extent drawn upon or if there has been a demand made for reimbursement thereunder) and (v) under any commodity, swap, derivative, currency, interest rate, call, hedge or similar agreement, (b) any obligations of any kind referred to in the foregoing clause (a) above guaranteed or secured, directly or indirectly, in any manner by such Person (including by a Lien on the assets or properties of such Person whether or not such obligations are assumed) ,and (c) any accrued and unpaid principal, interest, premiums, penalties, pre-payment penalties, fees, expenses, "make-whole" or similar payments, indemnities and breakage costs owing by such Person with respect to any indebtedness of a type described in clauses (a) or (b); provided, that Indebtedness of any Seller shall not include accounts payable to trade creditors or accrued expenses, in each case, arising in the ordinary course of business of any Seller.

"Indemnified Parties" is defined in Section 1.4(i).

"Information Technology" means all computers, computer systems, servers, workstations, databases, and software programs.

"Intellectual Property" means (a) patents and patent applications, (b)trademarks, service marks, trade dress, and all registrations and applications for the same, (c) Internet domain names, (d) registered and unregistered copyrights and applications for the same, and (e) trade secrets.

"Initial Asset Purchase Agreement" is defined in Recital C of this Agreement.

"IRS" means the United States Internal Revenue Service.

"J. Aron Receivables" means any and all amounts payable to Sellers, or any of them, directly or indirectly, under the J. Aron Transaction Documents (as defined in *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* entered in the Bankruptcy Cases), or any of them.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2616 of 2637
2616
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 57 of 61

"Knowledge of Sellers" means the actual knowledge of Sellers, or any of them, without giving effect to imputed knowledge or giving rise to any duty to investigate.

"Law" means any statute, law, ordinance, ruling, policy, rule or regulation of any Governmental Entity and all judicial or administrative interpretations thereof and any common law doctrine.

"Liabilities" means any and all Indebtedness, Taxes, losses, charges, debts, damages, obligations, payments, costs and expenses, bonds, indemnities, liabilities and obligations of any nature, including any unknown, undisclosed, unmatured, unaccrued, unasserted, contingent, indirect, conditional, implied, vicarious, derivative, joint, several or secondary liability, regardless of whether such claim, debt, obligation, duty or liability would be required to be disclosed on a balance sheet prepared in accordance with GAAP and regardless of whether such claim, debt, obligation, duty or liability is immediately due and payable.

"Liens" means any liens (as defined in Section 101(37) of the Bankruptcy Code), debts (as defined in Section 101(12) of the Bankruptcy Code), security interests, Claims, easements, mortgages, charges, indentures, deeds of trust, rights of way, encroachments, or any other encumbrances and other restrictions or limitations on ownership or use of real or personal property or irregularities in title thereto.

"Loss" or "Losses" means, without duplication, any and all Liabilities, judgments, awards, losses, costs or damages, including reasonable fees and expenses of attorneys, accountants and other professional advisors.

"Material Adverse Effect" means a material adverse effect on the business or financial condition of the Business, taken as a whole; provided that the foregoing shall not include any event, circumstance, change, occurrence, fact or effect resulting from or relating to (A) changes in economic conditions generally or in any region in which Sellers or the Business operate, (B) changes in United States or global financial markets in general, (C) changes, occurrences or developments in or related to the general industry or industries (or portions thereof) in which Sellers or the Business operate or are materially related thereto, (D) changes in law, GAAP or any authoritative interpretations thereof, (E) any action taken or failed to be taken by Sellers or any of their Affiliates or representatives at the request of Purchaser or that is required or contemplated by this Agreement, (F) a failure to meet Sellers' projections, or any changes in the prices or availability of raw materials used in the Business, (G) the identity of, or any action taken by, Purchaser or any of its Affiliates or representatives, (H) the Bankruptcy Cases, (I) the announcement and performance of this Agreement and the other transactions contemplated by this Agreement, including termination of, reduction in or similar negative impact on relationships, contractual or otherwise, with any customers, suppliers, distributors, partners, officers or employees of the Business, (J) any actions required under this Agreement to obtain any approval or authorization required under applicable antitrust or competition laws for the consummation of the transactions contemplated by this Agreement, (K) acts of war (whether or not declared), armed hostilities, sabotage or terrorism occurring after the date of this Agreement or the continuation, escalation or worsening of any such acts of war, armed hostilities, sabotage or terrorism threatened or underway as of the date of this Agreement, or (L) earthquakes, hurricanes, floods, or other natural disasters.

Appendix 1
7

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2617 of 2637
2617
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 58 of 61

"Material Contracts" is defined in Section 4.7(b).

"NRI Consignment Agreement" means that certain Master Consignment Agreement dated as of March 9, 2021 by and between Limetree Bay Refining, LLC and NRI Industrial Sales LLC.

"NRI Receivables" means any and all amounts payable to Sellers under the NRI Consignment Agreement.

"Order" means any judgment, order, injunction, decree, writ, permit or license issued or entered by or with any Governmental Entity or any arbitrator, whether preliminary, interlocutory or final, including any order entered by the Bankruptcy Court in the Bankruptcy Cases (including the Sale Order).

"Parts Inventory" means the inventories of supplies, maintenance and capital spares, joints, valves, parts and tools owned by a Seller as of the Closing that are (x) stored in the warehouses located on the Business Real Property or (y) used primarily in connection with the Business.

"Party" and "Parties" are defined in the Introduction to this Agreement.

"Permits" means all licenses, permits, registrations and approvals from or with a Governmental Entity other than the Environmental Permits.

"Permitted Liens" means (a) statutory Liens or other Liens arising in the ordinary course of business of Sellers (including by operation of law) securing payments not yet due, including mechanics', carriers', workmen's, repairmen's, materialmens' and maritime Liens, (b) Liens for Taxes not yet due and payable or for Taxes that may thereafter be paid without penalty or which are being contested in good faith and by appropriate Proceedings, (c) Liens set forth in Section 1.1 of the Seller Disclosure Letter, (d) Liens affecting the Business Real Property with respect to (i) zoning, building code or planning restrictions or regulations, servitudes, permits, licenses, surface leases, ground leases to utilities, municipal agreements, railway siding agreements and other similar rights, easements for streets, alleys, highways, telephone lines, gas pipelines, power lines and railways, and other easements and rights of way of public record on, over, or in respect of any such real property and (ii) encroachments and other matters that would be shown in an accurate survey or physical inspection of such real property that, in each case of (i) and (ii) of this clause (d) above, do not, individually or in the aggregate, materially interfere with the use, operation or occupancy of such real property for the Business, (e) Liens arising pursuant to any Environmental Permit, and (f) any Lien that will be extinguished at or prior to Closing.

"Person" means and include an individual, a partnership, a limited partnership, a limited liability partnership, a joint venture, a corporation, a limited liability company, an association, a trust, an unincorporated organization, a group and a Governmental Entity.

"Petition Date" is defined in Recital B of this Agreement.

"Post-Closing Litigation Liabilities" means all Liabilities arising from a Proceeding first commenced after the Closing (or, in the case of any Purchased Assets that are designated for assignment to Purchaser following the Closing, after the date of such designation and assignment) by a Third Party against Purchaser, a Seller or any of their respective Affiliates, in respect of the

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2618 of 2637
2618
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 59 of 61

Purchased Assets or the Assumed Liabilities that is based on any Event first existing, arising or occurring following the Closing (or, in the case of any Purchased Assets that are designated for assignment to Purchaser following the Closing, after the date of such designation and assignment); provided, that the Parties agree and acknowledge that Post-Closing Litigation Liabilities shall not include any Environmental Liabilities, which are separately addressed in this Agreement.

"Post-Closing Period" means all taxable years or other taxable periods that begin after the Closing Date and, with respect to any taxable year or other taxable period beginning on or before and ending after the Closing Date, the portion of such taxable year or period beginning on the day after the Closing Date.

"Pre-Closing Period" means all taxable years or other taxable periods that end on or before the Closing Date and, with respect to any taxable year or other taxable period beginning on or before and ending after the Closing Date, the portion of such taxable year or period ending on the Closing Date.

"Prepetition Secured Parties" shall have the meaning ascribed to such term in the Bid Procedures Order.

"Proceeding" means any claim, demand, action, arbitration, audit, hearing, investigation, litigation, suit or other proceeding (whether civil, criminal, administrative, investigative, or informal) commenced, brought, conducted, or heard by or before, or otherwise involving, any Third Party (including any Governmental Entity).

"Property Taxes" means all real property Taxes, personal property Taxes and other similar ad valorem Taxes, in each case, that are imposed with respect to the Purchased Assets.

"Purchase" is defined in Recital C of this Agreement.

"Purchase Price" means cash in an amount equal to $20,000,000, plus the assumption by Purchaser of the Assumed Liabilities.

"Purchased Assets" is defined in Section 1.1.

"Purchased Claims" is defined in Section 1.2(l).

"Purchased Real Property" is defined in Section 1.2(b).

"Purchaser" is defined in the Introduction to this Agreement.

"Quarterly Refinery Payments" has the meaning ascribed to such term in that certain Refinery Operating Agreement, dated July 2, 2018 (as amended, amended and restated or otherwise modified from time to time), by and among the Government of the U.S. Virgin Islands and LBR.

"Real Property" means the Purchased Real Property and the Excluded Real Property.

"Real Property Leases" is defined in Section 1.2(d).

"Released Claims" is defined in Section 9.2.

"Releasee" is defined in Section 9.2.

"Releasor" is defined in Section 9.2.

"Remedial Action" means any action to investigate, abate, clean up, remove or remediate (or words of similar import), or conduct remedial or corrective actions, including sampling and/or monitoring activities, with respect to Hazardous Materials in the environment.

"Representatives" of any Person means such Person's directors, managers, officers, employees, agents, attorneys, consultants, advisors, financing sources or other Persons acting on behalf of such Person.

"Returns" means all returns, statements, forms, reports and other similar documentation relating to Taxes, including any schedules, exhibits and other attachments thereto and any amendments thereof.

"Sale Motion" means Debtor's Motion for Entry of Orders (a)(i) Establishing Bidding Procedures Relating to the Sale of the Debtor's Assets, (ii) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts, (iii) Approving Form and Manner of Notice Relating Thereto, and (iv) Scheduling a Hearing to Consider the Proposed Sale; (b)(i) Approving the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (ii) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (c) Granting Related Relief filed by Sellers in the Bankruptcy Court on [_____] [__], 2021.

"Sale Order" means an Order of the Bankruptcy Court approving this Agreement, containing the findings and conclusions set forth in Section 6.11, and authorizing and directing Sellers to consummate the transactions contemplated by this Agreement (including, but not limited to, the assumption and assignment of the Business Contracts and Real Property Leases) under Sections 105, 363 and 365 of the Bankruptcy Code, in form and substance acceptable to Sellers and Purchaser in their respective sole discretion.

"Seller" and "Sellers" are defined in the Introduction to this Agreement.

"Seller Access Indemnitees" is defined in Section 6.1(b).

"Seller Disclosure Letter" is defined in Article IV.

"Seller Facilities" means the facilities and related equipment owned by a Seller located on the Business Real Property, including all Improvements related thereto; provided, that, for the avoidance of doubt, the Seller Facilities shall not include any Excluded Assets.

"Taxes" means (a) all taxes, however denominated, and all like charges, levies, duties, imposts, unclaimed property, escheat obligations or other assessments, including any interest, penalties or additions to tax that may become payable in respect thereof, imposed by any

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2620 of 2637
2620
Case 21-32351   Document 829-2   Filed in TXSB on 11/30/21   Page 61 of 61

Government, which taxes shall include all income taxes, payroll and employee withholding, unemployment insurance, social security (or similar), sales and use, excise, franchise, gross receipts, occupation, real and personal property, stamp, transfer, workmen's compensation, customs duties, registration, documentary, value added, alternative or add-on minimum, estimated, environmental (including taxes under Section 59A of the Code) and other obligations of the same or a similar nature, whether arising before, on or after the Closing Date and (b) any transferee, successor or other liability in respect of Taxes of another (whether by contract or otherwise) and any liability in respect of any Taxes as a result of any company being a member of any "affiliated group" as defined in Section 1504 of the Code, or any analogous combined, consolidated or unitary group defined under state, local or foreign Tax law.

"Termination Date" is defined in Section 9.1(d).

"Third Party" means any Person other than the Parties and their respective Affiliates (including, for the avoidance of doubt, any Governmental Entity).

"Transaction Documents" means the Sale Order, Transition Services Agreement, Bill of Sale and Assignment and Assumption Agreement, and any other documents executed by the Parties or orders entered by the Bankruptcy Court to facilitate the transaction(s) envisioned under this Agreement.

"Transfer Taxes" is defined in Section 6.8.

"Transition Services Agreement" means a Transition Services Agreement, to be entered into as of the Closing by and among Purchaser and the Sellers (or an appropriate Affiliate thereof), in substantially the form of Exhibit C.

"Winning Bid" shall have the meaning ascribed to such term in the Bid Procedures Order.

"Winning Bidder" shall have the meaning ascribed to such term in the Bid Procedures Order.

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2621 of 2637
Case 21-32351   Document 829-3   Filed in TXSB on 11/30/21   Page 1 of 1
2621

## EXHIBIT C

## AMENDED MILESTONES AND BID PROCEDURES DEADLINES

| Event | Current Milestone | New Milestone |
|---|---|---|
| Sale Milestone | December 14, 2021 | December 17, 2021 |

| Event | Current Date/Deadline | New Date/Deadline |
|---|---|---|
| Deadline to file the Designation of Winning Bid | November 30, 2021 | November 30, 2021 |
| Expected Service of Notice of Designation of Winning Bid and Sale Hearing | November 30, 2021 – December 1, 2021 | November 30, 2021 – December 1, 2021 |
| Deadline to file Sale Order and transactional documents | November 30, 2021 | December 3, 2021 |
| Deadline to object to the Sale | December 6, 2021 at 5:00 p.m. CT | December 6, 2021 at 5:00 p.m. CT |
| Deadline to reply to objection(s) to the Sale | December 7, 2021 at 2:00 p.m. CT, subject to supplementation during Sale Hearing | December 7, 2021 at 2:00 p.m. CT, subject to supplementation during Sale Hearing |
| Sale Hearing (subject to Court availability) | December 7, 2021 | December 7, 2021, at 4:00 p.m. CT |
| Expected entry of Sale Order | December 9, 2021 | December 9, 2021 |
| Deadline for Winning Bidder to close sale transaction | December 10, 2021, at 5:00 p.m. CT | December 17, 2021, at 5:00 p.m. CT |
| Deadline for Back-up Bidder to close sale transaction (if applicable) | December 13, 2021, at 5:00 p.m. CT | TBD |
| Deadline to file Amended Notice of Potential Assumption and Assignment of Executory Contracts[9] | November 10, 2021 | April 8, 2022 |
| Contract Assumption Objection Deadline | December 6, 2021 at 5:00 p.m. CT | April 29, 2022 |
| Designation Deadline (per APA)[10] | N/A | May 16, 2022 (subject to extension per APA) |

---

[9] The deadlines to file Amended Designation of Winning Bid to add or remove Purchased Contracts are not consistent with the terms of the APA and, as such, have been deleted from the list of Bidding Procedures Deadlines; *provided*, that the removal of these deadlines shall not affect the rights of St. Croix to designate contracts for assumption and assignment in accordance with the terms of the APA and sale order.

[10] The Designation Deadline is not subject to the Bid Procedures Order and is included solely for reference.  Under the APA, the Designation Deadline is subject to two (2) 90-day extensions, for a total of 180 days, beyond the initial term of 150 days (as noted above).  The Designation Deadline is calculated based on an anticipated closing date of December 17, 2021.

# EXHIBIT 23

**St. Croix APA schedules to APA**

[Debtors have not yet provided despite request on 12/1/21]

# EXHIBIT 24

**St. Croix required Transition Services Agreement**

[Debtors have not yet provided despite request on 12/1/21]

# EXHIBIT 25

**The due diligence documents conducted by or provided to the Debtors into the financial resources and wherewithal of St. Croix to close (i) the transactions set forth in its bid; (ii) to procure approvals as necessary to restart the refinery; and (iii) to otherwise procure financing as necessary after closing this transaction to restart and operate the refinery.**

[Debtors have not yet provided despite request on 12/1/21]

# EXHIBIT 26

**The due diligence conducted by or provided to the Debtors into St. Croix's background, financial capabilities, and ability to procure regulatory and other government approvals, to procure additional financing as needed, and to otherwise restart and operate the refinery.**

[Debtors have not yet provided despite request on 12/1/21]

# EXHIBIT 27

**Any and all communications with the U.S. Environmental Protection Agency (EPA)
regarding St. Croix's plan to restart the refinery**

[Debtors have not yet provided despite request on 12/1/21]

# EXHIBIT 28

**Documents including analyses or proposals relating to any St. Croix future liquidation or dismantlement of the refinery at any time.**

[Debtors have not yet provided despite request on 12/1/21]

# EXHIBIT 29

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2629 of 2637
2629
Case 21-32351   Document 830   Filed in TXSB on 11/30/21   Page 1 of 4

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| LIMETREE BAY SERVICES, LLC, *et al.*,[1] | CASE NO.: 21-32351 |
| Debtors. | (Jointly Administered) |

NOTICE OF EMERGENCY SALE HEARING ON
DECEMBER 7, 2021 AT 4:00 P.M. CENTRAL TIME

**PLEASE TAKE NOTICE** that the final emergency hearing to consider the sale referenced in the *Debtors' Emergency Motion for Entry of Order: (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief* (Doc. No. 191) (the "**Motion**") is scheduled for **December 7, 2021 at 4:00 p.m. Central Time** before the Honorable David R. Jones, United States Bankruptcy Judge, 515 Rusk Street, Courtroom 400, Houston, Texas 77002 (the "**Sale Hearing**"). You may participate in the hearing either in person or by an audio and video connection.

**PLEASE TAKE FURTHER NOTICE** that **emergency relief has been requested. Relief is requested not later than 4:00 p.m. Central Time on December 7, 2021.**

**PLEASE TAKE FURTHER NOTICE** that the deadlines and milestones related to the Sale Hearing and Motion, including deadlines to object to the proposed sale, are included in the Debtor's *Notice of (I) Designation of Winning Bid and Back-Up Bids and (II) Sixth Notice of Extension of Milestones and Bid Procedures Deadlines* (Doc. No. 829) ("**Notice of Designation**"), which is being filed simultaneously with this Notice. If you object to the relief requested or you

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

believe that emergency consideration is not warranted, you must appear at the hearing and file a written response as outlined in the Notice of Designation. Otherwise, the Court may treat the matter as unopposed and grant the relief requested.

**PLEASE TAKE FURTHER NOTICE** that audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691. Once the code is entered, you will be connected **live** to the courtroom. You will be able to hear persons speaking in the courtroom and other persons on the call addressing the Court. You will be able to address the Court directly. The Court will hear all sound on your line. **PLEASE mute your line if you are not addressing the Court.**

**PLEASE TAKE FURTHER NOTICE** If there are multiple parties on the call, the Court may activate the "hand raise" feature. The system will announce that this feature has been activated. If the hand raise feature has been activated, you will not be able to address the Court until the Court addresses you or you request to speak and the Court grants the request. If you wish to address the Court, you must press 5*. Within 5 seconds, the Court will receive a signal that you wish to speak. When the Court calls on you, you will hear a recorded message that you have been recognized. When you are done, the Court will again mute your call. Details regarding the use of the conferencing system are available at https://www.conferencecalling.com/help

**PLEASE TAKE FURTHER NOTICE** Video participation is available via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application prior to the hearing. If a browser connection is used, Chrome is generally recommended. A mobile version of the application is also available. The meeting code is

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2631 of 2637
2631
Case 21-32351   Document 830   Filed in TXSB on 11/30/21   Page 3 of 4

"judgejones". You may also connect directly by clicking the link on Judge Jones' home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.

**PLEASE TAKE FURTHER NOTICE** that hearing appearances must be made electronically in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu. Select "Judges' Procedures," then "View Home Page" for Judge Jones under "Electronic Appearance" select "Click here to submit Electronic Appearance." Select the case name, complete the required fields and click "Submit" to complete your appearance.

**PLEASE TAKE FURTHER NOTICE** that copies of documents can be obtained through the Bankruptcy Court's electronic case filing system at https://ecf.txsb.uscourts.gov or can be obtained free of charge on the website maintained by the Debtors' proposed claims and noticing agent at www.bmcgroup.com/limetree

Dated: November 30, 2021

**BAKER & HOSTETLER LLP**
*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
So. Dist. Fed ID 903144
**Jimmy D. Parrish, Esq.**
So. Dist. Fed ID 2687598
200 S. Orange Avenue
Suite 2300
Orlando, FL 32801
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
E-mail: egreen@bakerlaw.com
E-mail: jparrish@bakerlaw.com

4889-2313-8053.1

Case 4:22-cv-00040   Document 7   Filed on 02/08/22 in TXSD   Page 2632 of 2637
2632
Case 21-32351   Document 830   Filed in TXSB on 11/30/21   Page 4 of 4

**BAKER & HOSTETLER LLP**
**Jorian L. Rose, Esq.**
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com
*(Admitted Pro Hac Vice)*

*Counsel for the Debtors and Debtors in Possession*

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 30, 2021, a true copy of the forgoing was filed with the Court using the CM/ECF System, which will provide notice of such filing to all parties requesting such notice.

*/s/ Elizabeth A. Green*
Elizabeth A. Green

4889-2313-8053.1

# EXHIBIT 30

| **From:** | Bobby Salehi |
| **To:** | Mark Shapiro; Frank Cottrell |
| **Cc:** | Lawrence Berry; Dennis Berry; Berry Marvin; Tonja Fulghum; Peter Wisniewski; Butch Boyd; McDonald, Bill; Wyrick, Martha; Hughes, Patrick |
| **Subject:** | RE: Bay Limited - Bid Transmittal Letter, Revised APA, etc. |
| **Date:** | Wednesday, November 3, 2021 3:08:47 PM |
| **Attachments:** | Bay LTD - Supplemental Info per RFP.pdf |
|  | Schedule 1.2(i) - Limetree Bay Refining - Process Control System Description.pdf |

---

**EXTERNAL:** Sent from outside Haynes and Boone, LLP

Mark/Frank –

Per my email yesterday, please see attached for:
1. Bay LTD supplemental info per the RFP
2. Schedule 1.2(i)

Additionally, we have created a Google Drive link that consolidates all of the transmitted documents to date – see hyperlink below.

https://drive.google.com/drive/folders/1hEMcB-D217DPRyVhYp7w2OFpV6Rr3uHS?usp=sharing

Lastly, as it pertains to Schedule 1.2(b) Purchased Real Property, 1.2(d) Assumed Real Property Leases, 1.2(g) Assumed Permits, we still have not received a comprehensive list from the Seller and the associated ongoing expenses, cure amounts, etc.

Best regards,

Bobby Salehi
Lone Star Ports
Chief Financial Officer
Office: (713) 623-2412
Cell: (832) 279-4814

< CONFIDENTIALITY NOTICE >

The information contained in this transmission is intended only for the person or entity to which it is addressed and may contain confidential, trade secret and/or privileged material. If you are not the intended recipient of this information, do not review, retransmit, disclose, disseminate, use, or take any action in reliance upon, this information. If you received this transmission in error, please contact the sender and destroy all printed copies and delete the material from all computers.

---

**From:** Bobby Salehi

**Sent:** Tuesday, November 2, 2021 7:05 PM
**To:** Mark Shapiro <mshapiro@brileyfin.com>; Frank Cottrell <fcottrell@brileyfin.com>
**Cc:** Lawrence Berry <alb@riverway.us>; Dennis Berry <berryd@bayltd.com>; Berry Marvin
<captberry@aol.com>; Tonja Fulghum <tfulghum@riverway.us>; Peter Wisniewski
<pwisniewski@riverway.us>; Butch Boyd <butchboyd@butchboydlawfirm.com>; McDonald, Bill
<Bill.McDonald@haynesboone.com>; Martha.Wyrick@haynesboone.com; Hughes, Patrick
<Patrick.Hughes@haynesboone.com>
**Subject:** Bay Limited - Bid Transmittal Letter, Revised APA, etc.

Mark/Frank –

Please see attached for the following attachments:
1. Bid Transmittal Letter in PDF
2. Revised Asset Purchase Agreement ("APA") in Word
3. Redline to the original Form APA in PDF
4. Two Schedules referenced in the APA (Schedule 1.2(a) in Word and Schedule 1.2(c) in PDF)

Please note that we will be sending a series of follow-up emails tomorrow that will include the
remaining Schedules.

We look forward to discussing this with you tomorrow.

Best regards,

Bobby Salehi
Lone Star Ports
Chief Financial Officer
Office: (713) 623-2412
Cell: (832) 279-4814

< CONFIDENTIALITY NOTICE >

The information contained in this transmission is intended only for the person or entity to which it is
addressed and may contain confidential, trade secret and/or privileged material. If you are not the
intended recipient of this information, do not review, retransmit, disclose, disseminate, use, or take
any action in reliance upon, this information. If you received this transmission in error, please
contact the sender and destroy all printed copies and delete the material from all computers.

# EXHIBIT 31

**Limetree Bay Refinery Actual and Projected Results of Operations and Cash Flows**

**(May be subject to Confidentiality)**

**Will be made available at Hearing**

# EXHIBIT 32

**Shared Services Systems Agreement by and between Limetree Bay Terminals, LLC and Limetree Bay Refining, LLC, and acknowledged by, Limetree Bay Refining Marketing, LLC dated as of November 30, 2018**

**(May be Confidential)**

**Will be made available at Hearing**